ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **YUGA LABS, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND DISMISS** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, and DOES 1-10, | Date: Nov. 7, 2022 |
| Defendants. | Time: 1:30 p.m. |
| | Dept: Courtroom 7A |
| | Judge: Honorable John F. Walter |

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ......................................................................... 1

II. FACTUAL BACKGROUND ......................................................... 2

   A. Yuga Labs' Allegations Accepted as True ........................... 2

      1. Yuga Labs Alleges a Likelihood of Consumer Confusion ........ 3

      2. Yuga Labs Pleads Multiple Examples of Explicitly Misleading Activity Leading to Actual Confusion. ............. 4

III. LEGAL STANDARD ................................................................... 5

IV. ARGUMENT ............................................................................... 7

   A. Defendants' Infringing NFTs Are Not Protected Speech. ................. 7

      1. Defendants' Infringing NFTs Are Not "Expressive Works" and Do Not Warrant Application of the *Rogers* Test. ................ 8

      2. Defendants' Sale of Infringing RR/BAYC NFTs Are Not "Protected Activity" Under California's Anti-SLAPP Law. ................ 9

   B. Yuga Labs Plausibly Alleges Trademark Infringement. .................... 12

      1. Defendants' Use of BAYC Marks Is Not Artistically Relevant. ................ 13

      2. Defendants' Use of BAYC Marks Is Explicitly Misleading. ................ 13

      3. Defendants' Use of BAYC Marks Is Not A Fair Use. ............. 18

   C. Yuga Labs Has Pled Its Additional Federal and State Law Claims. ................ 19

      1. Yuga Labs Plausibly Alleges Cybersquatting and Unfair Competition. ................ 19

      2. Yuga Labs Plausibly Alleges False Advertising. .................... 20

      3. Yuga Labs Plausibly Alleges Conversion. .............................. 21

      4. Yuga Labs Plausibly Alleges Intentional Interference. ............ 22

      5. Yuga Labs Plausibly Alleges Negligent Interference. ............. 23

      6. Yuga Labs' Unjust Enrichment Claim Should Not Be Stricken by the Anti-SLAPP Statute. ........................................ 23

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**
**(continued)**

Page

D.     None of Yuga Labs' Claims May Be Stricken Under
        California's Anti-SLAPP Law...........................................................24

V.     CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACI Int'l. Inc. v. Adidas-Salomon AG,*
359 F. Supp. 2d 918 (C.D. Cal. 2005)...............................................................7, 12

*BMW of North America v. Mini Works, LLC,*
463 Fed. App'x. 689 (Fed. Cir. 2011) ...................................................................20

*Bonni v. St. Joseph Health Sys.,*
11 Cal. 5th 995 (2021).............................................................................6, 11, 12

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,*
174 F.3d 1036 (9th Cir. 1999) ...............................................................7, 12, 16

*Brother Recs., Inc. v. Jardine,*
318 F.3d 900 (9th Cir. 2003) ...............................................................................19

*Brown v. Elec. Arts, Inc.,*
722 F. Supp. 2d 1148 (C.D. Cal. 2010)................................................................25

*Calista Enterprises Ltd. v. Tenza Trading Ltd.,*
43 F. Supp. 3d 1099 (9th Cir. 2014) .....................................................................20

*Celebrity Chefs Tour, LLC v. Macy's, Inc.,*
16 F. Supp. 3d 1123 (S.D. Cal. 2014) ...................................................................20

*Chanel, Inc. v. Hsiao Yin Fu,*
No. 16-cv-02259, 2017 WL 1079544 (N.D. Cal. Mar. 22, 2017)........................7

*City of Cotati v. Cashman,*
29 Cal. 4th 69 (2002)............................................................................................11

*Dillon v. Legg,*
68 Cal.2d 728 (1968).............................................................................................23

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
300 F. Supp. 3d 1073 (S.D. Cal. 2017) .................................................................18

*DTS, Inc. v. Nero AG,*
No. 14-cv-9791, 2015 WL 12811268 (C.D. Cal. Dec. 3, 2015) ........................11

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
547 F.3d 1095 (9th Cir. 2008)...............................................................................18

*Eng. & Sons, Inc. v. Straw Hat Rests., Inc.,*
176 F. Supp. 3d 904 (N.D. Cal. 2016)...................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Episcopal Church Cases*,
   45 Cal. 4th 467 (2009) ....................................................................................... 24

*Fed. Deposit Ins. Corp. v. Dintino*,
   167 Cal. App. 4th 333 (2008) ............................................................................ 23

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019) ......................................................................................... 10

*Givenchy S.A. v. BCBG Max Azria Grp., Inc.*,
   No. CV 10-8394, 2012 WL 3072327 (C.D. Cal. Apr. 25, 2012) ...................... 16

*Gordon v. Drape Creative, Inc.*,
   909 F.3d 257 (9th Cir. 2018) ...................................................................*passim*

*Hard Rock Cafe Licensing Corp. v. Pac. Graphics, Inc.*,
   776 F. Supp. 1454 (W.D. Wash. 1991) .............................................................. 16

*Hermes International v. Rothschild*,
   No. 22-cv-384, 2022 WL 1564597 (S.D.N.Y. May 18, 2022) ......................... 15

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ........................................................................ 6, 24

*Hylton v. Frank E. Rogozienski, Inc.*,
   177 Cal. App. 4th 1264 (2009) .......................................................................... 11

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
   2 F.4th 1150 (9th Cir. 2021) .............................................................................. 12

*J'Aire Corp. v. Gregory*,
   24 Cal. 3d 799 (1979) ........................................................................................ 23

*Jaeyoung Nam v. Alpha Floors*,
   No. 16-cv-6810, 2017 WL 11635994 (C.D. Cal. Jan. 4, 2017) ........................ 21

*Jordan-Benel v. Universal City Studios, Inc.*,
   859 F.3d 1184 (9th Cir. 2017) .............................................................................. 9

*Kiedis v. Showtime Networks*,
   No. CV078185, 2008 WL 11173143 (C.D. Cal. Feb. 19, 2008) ...................... 17

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ........................................................................... 21

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000) .............................................................................. 24

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ....................................................................... 6

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013) (Kozinski, J., concurring)..................................... 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ..................................................................... 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ..................................................................... 6

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
No. 15-cv-03522, 2015 WL 5071977 (N.D. Cal. Aug. 27, 2015) .................. 6, 9

*New Kids on the Block v. News Am. Pub., Inc.*,
971 F.2d 302 (9th Cir. 1992) ..................................................................... 18

*Panavision Int'l, L.P. v. Toeppen*,
1996 WL 768036 (C.D. Cal. Nov. 27, 1996) ................................................. 23

*Perry v. Brown*,
No. CV 18-9543, 2019 WL 1452911 (C.D. Cal. Mar. 13, 2019)
(Walter, J.), *aff'd and remanded*, 791 F.App'x 643 (9th Cir. 2019)................. 18

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018), *amended*,
897 F.3d 1224 (9th Cir. 2018) ..................................................................... 6

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .................................................................*passim*

*Rousselot B.V. v. St. Paul Brands, Inc.*,
No. CV190458, 2019 WL 6825763 (C.D. Cal. July 24, 2019).......................... 17

*Settimo Assocs. v. Environ Sys., Inc.*,
14 Cal. App. 4th 842 (1993) ........................................................................ 22

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
875 F.3d 426 (9th Cir. 2017) ......................................................................... 3

*Summit Ent., LLC v. B.B. Dakota, Inc.*,
No. CV-10-04328, 2011 WL 13216987 (C.D. Cal. Nov. 21, 2011)................... 19

*Sybersound. Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ..................................................................... 23

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. Jan. 9, 2014) (Walter, J) ................................. 24

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
  221 F. Supp. 2d 410 (S.D.N.Y. 2002) ........................................................... 9

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) ................................................................. 18, 19

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ................................................................. 13, 14

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  143 F. Supp. 3d 982 (N.D. Cal. 2015) ........................................................ 12

*Vera Mona, LLC v. Dynasty Grp. USA LLC*,
  No. CV202615, 2021 WL 3623297 (C.D. Cal. Apr. 15, 2021) ........................ 23

*Wisk Aero LLC v. Archer Aviation Inc.*,
  No. 21-cv-02450, 2021 WL 4932734 (N.D. Cal. Sept. 14, 2021) ..................... 6

**STATUTES AND RULES**

Cal. Bus. & Prof. Code § 17200 ............................................................... 20

Cal. Code Civ. Proc. § 425.16 ............................................... 6, 10, 11, 25

Cal. Code Civ. Proc. § 425.17 ............................................................... 10

Fed. R. Civ. P. 12(b)(6) ..................................................................... 5, 6

Fed. R. Civ. P. 15(a)(2) ..................................................................... 25

**OTHER AUTHORITIES**

J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition
  § 23:20 (5th ed. 2018) ..................................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# I.  INTRODUCTION

Defendants' scam has explicitly misled consumers into thinking that their NFTs ("non-fungible tokens" or "tokens") are affiliated, sponsored, or associated with Yuga Labs.  Worse still: they intentionally cultivated and relished in the harm they caused by this confusion.  Defendants do not dispute that they are using Yuga Labs' BAYC Marks to sell identical NFT products on the same marketplaces Yuga Labs sells its NFTs.  This is textbook trademark infringement and explicitly misleading use of these marks.  *See Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 269-271 (9th Cir. 2018). Facing the Complaint's undisputed allegations of trademark infringement, Defendants cower behind their argument that their willful infringement is protected "art."   But the First Amendment does not protect scams designed to mislead consumers.  And, Defendants' actions are pure commerce, not protected speech.  They are using Yuga Labs' trademarks to sell their own competing products, trading off of Yuga Labs' goodwill, and misleading consumers about the source and features of their products.  If Defendants' motion is not denied, it would "turn trademark law on its head" (*id.* at 270) and allow anyone to rebut trademark infringement claims with the flimsy and false claim that the infringement is "art."

In just one example of Defendants' intentional and explicitly misleading trademark infringement, they marked their NFT's token tracker—which is used to help consumers verify the source of an NFT—with Yuga Labs' trademarks:  "Bored Ape Yacht Club (BAYC)."  Compl. ¶ 39.



There is no commentary on this page.  There is no art.  There is not even a reference

to Defendants.  Yuga Labs' trademark is the **only** trademark that consumers see to identify the source of Defendants' competing product.

Defendants' trademark infringement has caused, and continues to cause, actual confusion.  Yuga Labs states a claim for trademark infringement, and Defendants' purported defenses provide no escape.

Along with its trademark infringement claims, Yuga Labs sufficiently pled its cybersquatting, false advertising, unfair competition, conversion, tortious interference, and unjust enrichment claims.  Defendants registered and use, in bad faith, Yuga Labs' trademarks in the rrbayc.com and apemarket.com domains. Defendants falsely advertised that their infringing products were equivalent to Yuga Labs' authentic products to further scam consumers into buying their copycat NFTs. And Defendants interfered with Yuga Labs' actual and prospective economic advantage through trademark infringement, unfair competition, false advertising, and offering fake Yuga Labs NFTs.

With their motion, Defendants shirk from their infringing conduct by hiding behind the same false claims against Yuga Labs' founders that they peddle on social media.  The Court is not a sounding board for their bogus claims; this is not a defamation lawsuit, and Defendants' offensive and false accusations against Yuga Labs' founders are not the basis for any claim in this lawsuit.  Yuga Labs' founders will personally continue to respond to those actions in the public forum.  In this Court, Yuga Labs seeks relief from Defendants' explicit misleading of consumers through their infringement of BAYC Marks.

## II.    FACTUAL BACKGROUND

### A.    Yuga Labs' Allegations Accepted as True

Defendants have scammed consumers into buying RR/BAYC NFTs by misusing Yuga Labs' trademarks.  Compl. ¶ 2.  The RR/BAYC NFTs are merely a re-packaging of the exact same images underlying Yuga Labs' authentic BAYC NFTs.  *Id*.  Brazenly, Defendants promote and sell these RR/BAYC NFTs using the

FENWICK & WEST LLP
ATTORNEYS AT LAW

very same trademarks that Yuga Labs uses to promote authentic Bored Ape NFTs in the exact same marketplaces where Bored Ape NFTs are sold. *Id.* ¶¶ 2, 33. Even worse, Defendants market these copycats as falsely equivalent to authentic Bored Ape NFTs. *Id.* ¶ 2.

### 1.    Yuga Labs Alleges a Likelihood of Consumer Confusion.

Defendants' motion admittedly does not challenge that Yuga Labs adequately alleges a likelihood of confusion from their use of BAYC Marks. Decl. of Louis Tompros (Dkt. 36) ("Tompros Decl.") ¶ 6. Yuga Labs' "slam-dunk evidence of a conceptually strong mark together with the use of identical marks on identical goods" proves likelihood of confusion and infringement. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) (abrogated on other grounds).

Defendants do not deny "the strength of the mark[s]," nor that Yuga Labs has the exclusive right to use them. Compl. ¶¶ 23-32. As for the "relatedness of the goods," Defendants concede that they are selling the same type of product (NFTs) with the identical underlying Bored Ape images. Mot. at 6 ("The RR/BAYC project is a collection of NFTs that point to the same online digital images as the BAYC collection[.]"); *see also* Compl. ¶ 33. This is especially misleading to consumers who see what appears to be a Yuga Labs NFT displaying BAYC Marks. *Id.* ¶ 2. The "similarity of the marks" is indisputable, and Defendants concede that they used BAYC Marks, without modification in most instances, to sell RR/BAYC NFTs. Mot. at 18 ("Mr. Ripps's [sic] used BAYC's marks . . . ."); *see generally*, Compl. ¶¶ 33-47. Ripps himself "gloated that it is consumers' own fault for being confused by his fake NFTs, even though Ripps' actions lay bare that he welcomes the confusion." *Id.* ¶ 40. Defendants concede they sold their copycat NFTs using the same "marketing channels" as Yuga Labs. Mot. at 15-16; Compl. ¶ 33. RR/BAYC NFTs were even repeatedly removed from OpenSea, Foundation, and other marketplaces, as those marketplaces sought to protect their users from Defendants' explicitly misleading activities. *See id.* ¶¶ 33 n.1, 35-37, 54. Finally, Defendants concede that their intent

in using Yuga Labs' marks was to identify the BAYC collection—even though they were not selling genuine Yuga Labs products.  Mot. at 18; *see also* Compl. ¶ 52.

### 2.    Yuga Labs Pleads Multiple Examples of Explicitly Misleading Activity Leading to Actual Confusion.

Beyond creating a likelihood of confusion, Defendants' use of BAYC Marks is explicitly misleading.  Defendants "do not distinguish their use of Yuga Labs' BAYC Marks from the identical look, sound, and commercial impression of" BAYC Marks and "promote[] and sell[] these RR/BAYC NFTs using *the very same trademarks* that Yuga Labs uses to promote and sell authentic Bored Ape Yacht Club NFTs."  Compl. ¶¶ 2, 47.  This explicitly misleading conduct exacerbates Defendants' other uses of BAYC Marks "to trade on Yuga Labs' goodwill and confuse consumers" (*id.* ¶ 42), such as their misleading uses of BAYC Marks to promote RR/BAYC NFTs on Twitter (*id.* ¶¶ 42-46), their Ape Market NFT marketplace (*id.* ¶ 46), and the rrbayc.com website (*id.* ¶ 34), among others.

More specifically, Defendants "use[] every opportunity to make these RR/BAYC NFTs resemble the authentic Bored Ape NFTs as closely as possible to confuse consumers into buying them."  *Id.* ¶ 52.  As Defendants admit, the images underlying the RR/BAYC NFTs are purposefully *identical* to those used in Yuga Labs' BAYC NFTs, and contain BAYC Marks within the images.  *Id.* ¶ 34; Decl. of Ryder Ripps (Dkt. 48-1) ("Ripps Decl.") ¶ 8.  RR/BAYC #362 is one such copycat example; it uses the BAYC, BA YC Logo, and Ape Skull Logo marks.  Compl. ¶ 34. Relatedly, Defendants' use of Yuga Labs' "unique number[ing]" to identify and sell their RR/BAYC NFTs reflects Defendants' intentional effort to make their knockoff NFTs resemble Bored Ape NFTs in every possible way.  *Id.* ¶ 52.  Further evidencing Defendants' efforts to explicitly mislead consumers, Defendants marked the token tracker of their product with Yuga Labs' trademarks:  "Bored Ape Yacht Club (BAYC)."  *Id.* ¶ 39.  Token trackers are "important for validating the authenticity of an NFT."  *Id.* ¶¶ 39, 40.  So, Defendants made their competing product look identical

FENWICK & WEST LLP
ATTORNEYS AT LAW

to Yuga Labs', and in the place where a consumer could authenticate and check who created the NFT, (the token tracker), Defendants used Yuga Labs' trademarks to ensure the consumer was explicitly misled.

Defendants also sell these RR/BAYC NFTs on the same NFT marketplaces that Bored Ape NFTs are sold and under the same marks. *Id*. ¶ 33. For example, Defendants' "Foundation page was also deliberately misleading and confusing to consumers and used Yuga Labs' BAYC marks in an attempt to trick community members into buying their NFTs instead of the official BAYC NFTs." *Id*. ¶ 37. On this page, Defendants "prominently and confusingly used Yuga Labs' BORED APE YACHT CLUB trademark as the title of the page" and "used Yuga Labs' BAYC trademark in an unauthorized hyperlink labeled 'BAYC' and in the URL of the page." *Id*. "[E]ven the top result in a Google search for 'BAYC Foundation.app' or 'Bored Ape Yacht Club Foundation.app' was a misleading link titled 'Bored Ape Yacht Club – Foundation.app' that redirected to the fake RR/BAYC NFT collection." *Id*. When users hovered over the NFTs on this Foundation page, "the page displayed a miniature version of their warped BA YC BORED APE YACHT CLUB Logo mark. At such a small size, it is difficult for a consumer to tell the difference" between this knockoff and the real thing. *Id*. ¶ 38. Defendants' OpenSea pages, and other marketplaces, were also explicitly misleading by using "Yuga Labs' BAYC trademark in the title of the page, in the cover photo of the page, and in the page URL[.]" *Id*. ¶¶ 35-36, 41. Defendants even falsely claim that they own a trademark registration for RR/BAYC to explicitly mislead consumers about the legitimacy of their NFTs. *See id*. ¶ 46.

Defendants' intentional and explicitly misleading activities detailed in the Complaint were part of their efforts to profit from using Yuga Labs' exact marks to sell NFTs that ordinary consumers could have—and indeed have—mistaken for genuine BAYC NFTs.

### III. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks

a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (cleaned up).

California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, "does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). The threshold issue on an anti-SLAPP motion to strike state-law claims is whether Defendants made "a prima facie showing that the lawsuit arises from an act in furtherance of its First Amendment right to free speech." *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522, 2015 WL 5071977, at *3 (N.D. Cal. Aug. 27, 2015). However, "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1012 (2021). If the movant clears this first hurdle, then the plaintiff must "show a reasonable probability that it will prevail on its claim." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450, 2021 WL 4932734, at *4-5 (N.D. Cal. Sept. 14, 2021). Where, as here, Defendants contend that the claims are legally deficient, the court applies a Rule 12(b)(6) standard of review. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). And where, as here, Yuga Labs' complaint clearly states a claim, the anti-SLAPP motion fails.[1]

---

[1] Judges on the Ninth Circuit have at times called on the court to reconsider whether federal courts apply the anti-SLAPP statute. *See, e.g.*, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, J., concurring). And the Second, Fifth, and Eleventh Circuits have rejected the application of anti-SLAPP statutes in federal court. Yuga Labs reserves its argument that the anti-SLAPP statute is inapplicable in federal court.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## IV.    ARGUMENT

### A.    Defendants' Infringing NFTs Are Not Protected Speech.

Defendants may not use BAYC Marks to sell NFTs that admittedly use Yuga Labs' images (with no expressive content or transformation) in the sale of the same goods (NFTs) and on the same marketplaces where Yuga Labs' NFTs are sold.  This is true notwithstanding that Defendant Ripps is a claimed artist intent on publicizing falsehoods about Yuga Labs' founders, and it is undeniably true as to Defendant Cahen who makes no claim to creating any art.  If the Court accepts Defendants' argument that the trademark infringement *is* the art, it would create a gaping loophole in trademark law, as any street corner counterfeiter, and even direct business competitors, could sell knockoff products by claiming their sale is performance and appropriation art.   But just like common counterfeiters, Defendants' sale of RR/BAYC NFTs is a purely commercial enterprise which they use to profit off of Yuga Labs' goodwill.  This is commercial infringement; not art.

Defendants argue for an exemption for their infringement because some who bought an RR/BAYC NFT supposedly knew it was fake. Mot. at 7-8.  This is a factual issue the Court cannot resolve on a motion to dismiss.  Regardless, even if someone knows they are buying a knockoff, **the sale still infringes**.  *See Chanel, Inc. v. Hsiao Yin Fu*, No. 16-cv-02259, 2017 WL 1079544, at *4 (N.D. Cal. Mar. 22, 2017) (finding infringement even if purchasers of counterfeit Chanel handbags "know that they are [ ] purchasing nongenuine goods").   Thus, even if some purchasers knew the RR/BAYC NFTs were fake, Defendants' use of BAYC Marks infringed Yuga Labs' rights because Defendants traded on Yuga Labs' goodwill and explicitly misled other consumers through both initial interest and post-sale confusion.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999); *ACI Int'l. Inc. v. Adidas-Salomon AG*, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005).

FENWICK & WEST LLP
ATTORNEYS AT LAW

1.    **Defendants' Infringing NFTs Are Not "Expressive Works" and Do Not Warrant Application of the *Rogers* Test.**

The Ninth Circuit only applies the *Rogers v. Grimaldi* analysis when "artistic expression is at issue," requiring defendants to make a "threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon*, 909 F.3d at 264; *see also Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989).  Defendants' sale of a "collection of NFTs that point to the same online digital images as the BAYC collection, but use verifiably unique entries on the blockchain" (Mot. at 6) is not an expressive work protected by the First Amendment, and applying *Rogers* is improper.

In particular, the RR/BAYC NFTs do not express an idea or point of view. They are merely tokens that "point to the same online digital images associated with the BAYC collection." Mot. at 18-19.  Even Defendants' token tracker uses an exact copy of Yuga Labs' mark—**with no expressive content**.  Compl. ¶¶ 39-40.  Likewise, Defendants' NFT marketplace sales, copycat Twitter accounts, and Ape Market contain no "artistic expression or critical commentary." *Id*. ¶¶ 33, 37, 42-45, 46.  For example, the title of their Foundation sales page was simply "Bored Ape Yacht Club" (*id*. ¶ 37), and googling "BAYC Foundation.app" resulted in a misleading link entitled "Bored Ape Yacht Club – Foundation.app" that redirected to Defendants' Foundation sales page. *Id*.  The Ape Market website used a skull logo identical to Yuga Labs' skull logo and was established "solely to sell their RR/BAYC NFTs alongside authentic Yuga Labs NFTs." *Id*. ¶ 46, 55.  These are all commercial activities to sell infringing products.  Defendants even concede that Ape Market contained no speech because it "never had any content."  Mot. at 17.

The only claimed expression Defendants point to comes from material beyond the Complaint.  Indeed, Defendants filed two improper declarations and thirty-six exhibits to try to connect their defamation of Yuga Labs' founders to their unfair competition with Yuga Labs because the Complaint itself does not put those matters

Fenwick & West LLP
Attorneys at Law

at issue.  Defendant Ripps' so-called criticism is not the subject of the Complaint and is readily separated from the sales and marketing of RR/BAYC NFTs.  For instance, although Defendant Ripps' improper declaration cites his false assertions about Yuga Labs' founders, that same declaration separates those assertions from his creation of the infringement of Yuga Labs' marks.  *See* Ripps Decl. ¶¶ 5-9.[2]

Defendants' sale and promotion of the RR/BAYC NFTs is merely a business venture to trade on Yuga Labs' brand value, resulting in a massive windfall for Defendants.  Their sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag, making the *Rogers* test inapplicable.  *See, e.g.*, *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 415 (S.D.N.Y. 2002) (holding *Rogers* test inapplicable when trademark was "being used at least in part to promote a somewhat non-expressive, commercial product").

### 2.   Defendants' Sale of Infringing RR/BAYC NFTs Are Not "Protected Activity" Under California's Anti-SLAPP Law.

For similar reasons, Defendants' sale of infringing NFTs is not "protected activity" under the anti-SLAPP statute because Defendants fail to show that Yuga Labs' lawsuit arises from an act in furtherance of Defendants' "First Amendment right to free speech." *Nat'l Abortion Fed'n*, 2015 WL 5071977, at *3.  It is not enough for an anti-SLAPP movant to identify the existence of allegedly protected activity; the protected activity must at least partially form the basis of the claim. *See Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190, 1193 (9th Cir. 2017) ("[E]ven if a defendant engages in free speech activity that is relevant to a claim, that does not necessarily mean such activity is the basis for the claim.").

Here, Defendants' so-called "speech" is separate from the infringing NFT sales. *See* Ripps Decl. ¶¶ 5-9; *see also supra* § IV.A.1.  More importantly, the lawsuit does

---

[2]  If the Court considers Defendants' improper evidence of their attacks against Yuga Labs' founders, this factual dispute about how to define their commercial activity warrants denial of their motion to allow for discovery and expert testimony.

not arise out of Defendants' speech; it arises out of their garden-variety trademark infringement. Indeed, the Complaint does not seek to enjoin Defendants' defamatory speech. The anti-SLAPP motion fails at the outset for this reason. Additionally, the motion is deficient on several other grounds.

**First**, Defendants offer no argument that Cahen's activities were in furtherance of any expression. *See, e.g.*, Mot. at 1 ("Yuga sued Mr. Ripps not for defamation, but for trademark infringement."). Therefore, the motion must fail as to him.

**Second**, Defendants have not shown that the *sale and marketing* of thousands of infringing NFTs is protected activity. Any speech involved in the sale and promotion of NFTs is *commercial* speech not protected by the anti-SLAPP statute. Indeed, the anti-SLAPP statute contains an explicit exemption for causes of action based on "comparative advertising." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 147 (2019). And here, Yuga Labs' claims are exempt because Defendants' allegedly protected speech was (1) made when Defendants were selling their NFTs and (2) targeted to potential or actual buyers of BAYC NFTs. *Compare* Cal. Code Civ. Proc. § 425.17(c) (stating that § 425.16 does not apply to certain causes of action against businesses that make statements about the goods, services, or business operations of their competitors) *with* Compl. ¶ 33 ("Defendants . . . use *the very same marks* to promote their RR/BAYC NFT collection.") and *id.* ¶¶ 144-145 (Defendants "intentionally sought to . . . appropriat[e] Yuga Labs' trademarks . . . [resulting in] [a]ctual interference with the relationship between Yuga Labs and individuals who have purchased or might purchase Bored Ape NFTs . . . ."). But even if not explicitly exempted by § 425.17(c), the heavily commercial nature of Defendants' conduct weighs strongly in favor of finding that any speech associated with the sale is not the kind of public participation contemplated by the anti-SLAPP statute. *FilmOn.com Inc.*, 7 Cal. 5th at 148 ("[T]he very contextual cues revealing a statement to be 'commercial' in nature—whether it was private or public, to whom it was said, and for what purpose—can bear on whether it was made in furtherance of free speech in

connection with a public issue.").  Defendants' argument posits that *their* trademark infringement is a distinct, protected form of trademark infringement because they are critical of Yuga Labs' founders.  But their NFTs contain no commentary at all.  The act of infringement itself is not free speech—even if it is motivated by some criticism of Yuga Labs' founders—it is an infringing scheme to profit from the popularity of Bored Ape NFTs.

**Third**, even if Ripps engaged in *some* protected activity (Defendants make no argument that Cahen did), that activity is merely incidental to infringement.  Defendants "must identify the acts alleged in the complaint that [they] assert[] are protected and what claims for relief are predicated on them." *Bonni*, 11 Cal. 5th at 1010.  "[C]ollateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal. App. 4th 1264, 1272 (2009); *see also DTS, Inc. v. Nero AG*, No. 14-cv-9791, 2015 WL 12811268, at *3 (C.D. Cal. Dec. 3, 2015) ("The mere fact that a claim was triggered by protected activity or filed after protected activity took place does not mean that the claim arose from that activity for purposes of the anti-SLAPP statute.") (cleaned up).  Defendants base their motion not on any claim in the Complaint, but on a theory that this trademark case is pretextual or retaliatory.  Yet despite months of peddling his false claims, Yuga Labs only sued Ripps (among others) when he and others sold thousands of RR/BAYC NFTs using BAYC Marks.  As Defendants acknowledge, "Yuga sued Mr. Ripps not for defamation, but for **trademark** infringement."  Mot. at 1.  "The anti-SLAPP statute cannot be read to mean that any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 77 (2002) (cleaned up).

**Fourth**, this trademark case is not appropriate for anti-SLAPP because there is no risk that this lawsuit will chill constitutional rights.  Even when a defendant points

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  to allegations in the Complaint that involve protected activity, an anti-SLAPP motion
2  should not be entertained where the allegations about protected activity "are largely
3  superfluous to [the plaintiff's] primary allegations" and the claims do not risk chilling
4  constitutional rights. *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F.
5  Supp. 3d 982, 1022 (N.D. Cal. 2015).   Where such allegations "merely provide
6  context," an anti-SLAPP motion cannot prevail. *Bonni*, 11 Cal. 5th at 1012.   Here,
7  Yuga Labs' primary allegations of trademark infringement do not seek to stifle
8  Defendants' speech.  And indeed, Defendants' continued false attacks on Yuga Labs'
9  founders demonstrates that they are not stifled.

10     Defendants' motion to strike Yuga Labs' state-law claims under California's
11  anti-SLAPP statute has no merit from the outset and should be denied.

12  **B.    Yuga Labs Plausibly Alleges Trademark Infringement.**

13     Defendants do not contend that the Complaint fails to sufficiently allege
14  trademark infringement or deny Yuga Labs' ownership and priority of the BAYC
15  Marks.  By using BAYC Marks to sell identical products to the same consumers on
16  the same markets that Yuga Labs uses, Defendants created confusion that was
17  "explicitly misleading."  *Supra* § II.A.2; *Gordon*, 909 F.3d at 270-71.

18     Defendants' conduct led to actual confusion, initial interest confusion, and
19  post-purchase confusion.  *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150,
20  1165 (9th Cir. 2021) ("Evidence of actual confusion by consumers is strong evidence
21  of likelihood of confusion."); *Brookfield Commc'ns, Inc.*, 174 F.3d at 1062 (Initial
22  interest confusion occurs when the defendant uses the plaintiff's trademark "in a
23  manner calculated to capture initial consumer attention, even though no actual sale is
24  finally completed as a result of the confusion.") (cleaned up); *ACI Int'l. Inc.*, 359 F.
25  Supp. 2d at 921 ("The law in the Ninth Circuit is clear that 'post-purchase confusion,'
26  i.e., confusion on the part of someone other than the purchaser who, for example,
27  simply sees the item after it has been purchased, can establish the required likelihood
28  of confusion under the Lanham Act.").

Defendants cannot debate the wealth of allegations highlighting their misleading activity establishing a likelihood of confusion and thus Yuga Labs sufficiently pled its trademark infringement claims. *See, e.g.*, *supra* § II.A.

### 1.     Defendants' Use of BAYC Marks Is Not Artistically Relevant.

Knowing that they cannot dispute that they have confused consumers, Defendants grasp at the *Rogers* defense. But even if the *Rogers* defense applies, Defendants' use of BAYC Marks is not artistically relevant to Ripps' so-called "art" under the first prong of the *Rogers* test. While there is a low bar for artistic relevance, it is not infinitely low. For example, in *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017), the court found that using the "Empire" mark in the title of a TV show was artistically relevant, but contemplated that it would *not* be artistically relevant for a "pretextual expressive work meant only to disguise a business profiting from another's trademark . . . ." *Id.* That is exactly the situation here: Defendants saw a chance to make money by ripping off NFTs and calling their scam "performance art." Defendants claim that Yuga Labs "has conceded" artistic relevance by making oblique references to one of Defendant Ripps' social media posts and the rrbayc.com website in the Complaint. Mot. at 14. Not so. At most, they show Ripps' weak attempts to justify his infringements while commercially promoting them. This factual dispute may be resolved only after the Defendants' motion is denied.

### 2.     Defendants' Use of BAYC Marks Is Explicitly Misleading.

Yuga Labs sufficiently pled that Defendants' use of its trademarks is explicitly misleading under the *Rogers* test. The two considerations relevant to whether a mark is explicitly misleading are (1) "the degree to which the junior user uses the mark in the same way as the senior user" and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *Gordon*, 909 F.3d at 270-71. In *Gordon*, the Court analyzed these factors and found that

defendant's use of plaintiff's trademarked phrase in greeting cards involved minimal artistic expression, and using it in the same way that plaintiff was using it created a triable issue of fact on this point. *Id.* at 271.  As shown above (*supra* § II.A.2), Defendants admit they added *zero* expression to BAYC Marks and used them in *exactly* the same way that Yuga Labs is using them.  Ripps Decl. ¶ 8.

*Gordon* noted that in prior *Rogers* cases finding that use of a mark was not explicitly misleading, the junior user employed the mark in different contexts and markets than the senior users.  909 F.3d at 270.  For example, *Gordon* explained that in *Twentieth Century Fox* the mark of a record label was used in a television show, but if it had been used in the same way as the senior user, such as naming the television show after a preexisting one, "such identical usage could reflect the type of 'explicitly misleading description' of source that *Rogers* condemns." *Id*.  *Gordon* concluded that "the potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions." *Id*.  This is exactly what Defendants have done with their NFTs.  They used Yuga Labs' *exact same* marks on the *exact same* marketplaces to identify and sell NFTs bearing the *exact same* images underlying Yuga Labs' NFTs.  *See*, *e.g.*, Compl. ¶ 33; *supra* § II.A.2.  Allowing Defendants to use BAYC Marks to market their infringements would (as the Ninth Circuit observed) "turn trademark law on its head." *Gordon*, 909 F.3d at 270.  Indeed, "[i]f an artist pastes Disney's trademark at the bottom corner of a painting that depicts Mickey Mouse, the use of Disney's mark, while arguably relevant to the subject of the painting, could explicitly mislead consumers that Disney created or authorized the painting, even if those words do not appear alongside the mark itself." *Id*.  The same is true here with Defendants' infringement.

*Gordon* also observed that use of a mark is explicitly misleading when the mark is used "as the centerpiece of an expressive work itself, unadorned with any artistic contribution by the junior user, which may reflect nothing more than an effort to induce the sale of goods or services by confusion or lessen the distinctiveness and

thus the commercial value of a competitor's mark." *Id.* at 271 (cleaned up). Here, Defendants concede they are using BAYC Marks as the centerpiece of their tokens, including using "Bored Ape Yacht Club (BAYC)" to identify tokens with the exact same images Yuga Labs' Bored Ape Yacht Club uses. Mot. at 6. There is no artistic contribution on their part, and for the most part, the only embellishment they occasionally add is an "RR" or "Ryder Ripps" in front of BAYC Marks. *See, e.g.*, Compl. ¶¶ 33-36, 42-43. This spotlight on Yuga Labs' marks solely serves to "induce the sale of goods or services by confusion." *Gordon*, 909 F.3d at 271.

Faced with similar issues in an ongoing, first of its kind, NFT trademark case, the judge in *Hermes International v. Rothschild* denied defendants' motion to dismiss Hermes' trademark infringement lawsuit alleging that defendant's "Metabirkins" NFTs infringed on Hermes' "Birkins" mark. No. 22-cv-384, 2022 WL 1564597 at *1 (S.D.N.Y. May 18, 2022). After a thorough *Rogers* analysis, the Court determined that even though defendant altered the name of the mark (from Birkins to Metabirkins) and the appearance of the NFT images was different from the real bags, Hermes alleged sufficient facts of explicit misleadingness to survive a motion to dismiss. *Id.* at *7. In particular, Hermes alleged the strength of its own mark, evidence of actual confusion, and the junior user's bad faith in adopting the mark. *Id.* at *6. The allegations of Defendants' explicitly misleading conduct here is even stronger than in *Hermes*. Defendants did not even change the mark in many instances, the underlying images went unaltered, and they advertised the RR/BAYC NFTs, using BAYC Marks (often without any reference to "RR"), as equivalent to the official BAYC NFTs. These facts are enough to survive Defendants' motion to dismiss. But Yuga Labs alleges even more.

**First**, the Complaint alleges that Defendants' "fuck off" Tweets highlight that Defendants wanted to lure people into their knockoff products by using BAYC Marks and goodwill into purchasing what they falsely claim is an equivalent product. Compl. ¶¶ 53, 72, 116. That's false advertising and intentional infringement. For

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   purposes of the motion to dismiss, Yuga Labs' interpretation must control here, and

2   any factual disputes over what these Tweets meant cannot be decided at the motion

3   to dismiss stage.  Even so, the sales pages themselves did not contain criticism, and a

4   reasonably prudent consumer was likely to be confused, as Defendants intended.

5       **Second**, the existence of a disclaimer on the rrbayc.com reservation site does

6   not negate the confusion Defendants caused on other websites or other uses of BAYC

7   Marks where Defendants marketed or sold the infringing NFTs without the

8   disclaimer.  *See, e.g.*, Compl. ¶¶ 35-39.  The fact that Defendants felt the need to

9   include a disclaimer (however ineffectual) demonstrates their awareness that their use

10  of BAYC Marks was confusing.  Even more, sales on NFT marketplaces cause initial

11  interest confusion, for example, when purchasers who thought they were following

12  links on Google to official BAYC sales pages were actually going to RR/BAYC sales

13  pages.  Compl. ¶ 37; *see Brookfield Commc'ns, Inc.,* 174 F.3d at 1062.  Defendants

14  likewise caused post-sale confusion when they and other RR/BAYC token holders

15  displayed them on Twitter and elsewhere as if they were real BAYC NFTs.  Compl.

16  ¶ 53; *see Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, No. CV 10-8394, 2012 WL

17  3072327, at *6 n.8 (C.D. Cal. Apr. 25, 2012) (even if some consumers were not

18  confused, post-sale confusion could damage handbag manufacturer where

19  "consumers can acquire the prestige value of the [handbag] product by buying the

20  copier's cheaper imitation.") (citation omitted).

21      **Third**, Defendants make much of minor changes to the marks including by

22  *only sometimes* tacking on "RR" before "BAYC."  Mot. at 15-16.  But making only a

23  slight, and occasional, change to a mark is still likely to result in confusion.  *See* J.

24  Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:20 (5th ed.

25  2018) ("To find trademark infringement only by exact identity and not where the

26  junior user makes some slight modification would 'be in effect to reward the cunning

27  infringer and punish only the bumbling one.'"); *Hard Rock Cafe Licensing Corp. v.*

28  *Pac. Graphics, Inc.*, 776 F. Supp. 1454, 1462 (W.D. Wash. 1991) (changing the "Hard

Rock Cafe" mark to "Hard Rain Cafe" appropriated most of the mark, resulting in confusion.).  And consumers do not necessarily know what "RR" means and could reasonably assume it is a new product or co-branding.  *See Rousselot B.V. v. St. Paul Brands, Inc.*, No. CV190458, 2019 WL 6825763, at *12 (C.D. Cal. July 24, 2019) (denying motion to dismiss on trademark claims and finding that use of plaintiff's trademark "implies that they are part of [plaintiff's] co-branding program, even though they are not.").  For example, Yuga Labs has another NFT collection abbreviated "MAYC" and has marketed with brands like MTV.

Likewise, Defendants emphasize Ryder Ripps' account name on their Foundation NFT sales page, but it was far overshadowed by the massive text and logo bearing BAYC Marks.[3]  Mot. at 16; Compl. ¶ 37.  Indeed, Defendants had to blow up the size of this text in their motion to even show it was there.  *Id.*  Like Ripps' initials, the existence of the name does not conclusively prove that the NFTs came from another source, and reasonable consumers could assume it is co-branding.

Defendants also ignore the many other instances where they used BAYC Marks with no changes.  For example, their Foundation sales page directly co-opted BAYC Marks in several places.  Compl. ¶¶37-38.  As the Court in *Kiedis v. Showtime Networks* found, "certainly the potential for [] confusing similarity exists when the titles are exactly the same . . . ."  No. CV078185, 2008 WL 11173143, at *4 (C.D. Cal. Feb. 19, 2008) (alteration omitted).

**Finally,** to the extent there remains any uncertainty about how to interpret Defendants' actions, the Court should deny the motion to dismiss because these are "factual issue[s] not appropriate for resolution without examining the evidence." *Id. at *5* (denying motion to dismiss trademark claims about confusing similarity

---

[3] Contrary to Defendants' improper screenshots, the RR/BAYC contract did *not* show Ripps' name as the "contract creator" when he sold thousands of the infringing NFTs. *See* Compl. ¶ 39; Mot. at 16.  Defendants' newly manufactured image in the Motion appears to be an attempt to mislead the Court as to what the NFT contract looked like when Defendants explicitly misled consumers.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   between song and television show named "Californication.").

2   **3.     Defendants' Use of BAYC Marks Is Not A Fair Use.**

3       Defendants argue that their use of BAYC Marks is nominative fair use.  But

4   nominative fair use does *not* apply when a defendant uses a mark to "refer[] to

5   something other than the plaintiff's product[.]"  *New Kids on the Block v. News Am.*

6   *Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  Similarly, nominative fair use only

7   allows for "truthful use of a mark," for example a Lexus dealer who sells Lexus

8   vehicles at lexusbroker.com.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d

9   1171, 1177 (9th Cir. 2010).  Defendants' use of BAYC Marks is not "truthful" or

10  referential because Defendants are *not* selling Yuga Labs' BAYC NFTs.  Instead,

11  Defendants use BAYC Marks to market and sell their own competing knockoff NFTs.

12  Nor can they claim nominative fair use for their nonidentical modified versions of

13  BAYC Marks.  *See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095,

14  1099 (9th Cir. 2008) (nominative fair use defense did not apply when mark was "not

15  identical to the plaintiff's" mark).  Defendants also improperly raise the nominative

16  fair use affirmative defense at the motion to dismiss stage, which is "more

17  appropriately resolved on a motion for summary judgment."  *See Perry v. Brown*, No.

18  CV 18-9543, 2019 WL 1452911, at *12 (C.D. Cal. Mar. 13, 2019) (Walter, J.), *aff'd*

19  *and remanded,* 791 F.App'x 643 (9th Cir. 2019) (denying motion to dismiss).

20      Even so, Defendants do not establish each element of the defense.  *Dr. Seuss*

21  *Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1091 (S.D. Cal. 2017)

22  (defendant's failure to satisfy all *New Kids* factors warranted denial of their motion to

23  dismiss).  As to the first *New Kids* factor, BAYC has become well-known in the NFT

24  community and beyond (Compl. ¶¶ 19-22), and contrary to Defendants' contention,

25  is readily identifiable without the use of BAYC Marks.  For example, the cover of

26  *Rolling Stone* featured an article with Bored Ape images, titled "*How Four NFT*

27  *Novices Created a Billion-Dollar Ecosystem of Cartoon Apes*" that evoked the brand

28  without infringing BAYC Marks.  *Id.* ¶ 19.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Second, Defendants did not use BAYC Marks only to the extent reasonably necessary.   Instead, they frequently used the entirety of each mark without modification to confuse consumers and trade on Yuga Labs' goodwill.   In *Toyota Motor Sales*, the court found that defendants' use of not just the Lexus word mark, but the "stylized Lexus mark and 'Lexus L' logo was more use of the mark than necessary," where they could "adequately communicate their message without using the visual trappings of the Lexus brand." 610 F.3d at 1181; *see also Summit Ent., LLC v. B.B. Dakota, Inc.*, No. CV-10-04328, 2011 WL 13216987, at *9 (C.D. Cal. Nov. 21, 2011) ("extensive use" of film franchise's marks and images were not reasonably necessary to inform consumers jacket was worn in film).   Likewise, here, Defendants used direct copies of Yuga Labs' BAYC Marks.   Compl. ¶¶ 34, 36, 38, 42-44, 46.   And Defendants typically used BAYC Marks with Yuga Labs' NFT images and even mimicked Yuga Labs' social media posts to sell the RR/BAYC NFTs, further adding to the confusion.   *Id.* ¶¶ 33-47.   Their infringement was widespread across numerous social media accounts, NFT marketplaces, and NFT verification websites.   *Id*.   This excessive use of "the visual trappings of the [BAYC] brand" is more than necessary to identify Yuga Labs' NFTs.   *Toyota Motor Sales*, 610 F.3d at 1181.

Finally, Defendants used BAYC Marks "prominently and boldly," to market the RR/BAYC NFTs, thus "suggesting sponsorship." *Brother Recs., Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003); *see supra* § IV.B.2.   That Defendants in only some places criticized Yuga Labs and provided an ineffectual disclaimer does not prove that a "reasonably prudent consumer" could not be confused, especially where Defendants' use of BAYC Marks pervaded the stream of commerce.   *Supra* § IV.B.

## C.   Yuga Labs Has Pled Its Additional Federal and State Law Claims.

### 1.   Yuga Labs Plausibly Alleges Cybersquatting and Unfair Competition.

Defendants' only argument is that Yuga Labs' cybersquatting claim is

Fenwick & West LLP
Attorneys at Law

precluded by *Rogers* and nominative fair use.  Mot. at 13, 18.  But they cite no case applying the *Rogers* test to cybersquatting, and the case they do cite is inapposite.  *Calista Enterprises Ltd. v. Tenza Trading Ltd.* merely requires a likelihood of confusion, which Yuga Labs has sufficiently pled and which Defendants concede.  43 F. Supp. 3d 1099, 1031 (9th Cir. 2014); Compl. ¶¶ 81-82 (Defendants' domain names are "confusingly similar to Yuga Labs' BAYC and APE marks."); Tompros Decl. ¶ 6.  Likewise, Defendants' citation to *BMW of North America v. Mini Works, LLC* did not "apply[] nominative fair use to cybersquatting."  Mot. at 18.  That court only opined on the bad faith and safe harbor aspects of plaintiff's cybersquatting claim.  463 Fed. App'x. 689, 690 (Fed. Cir. 2011).  In any event, as shown above, these doctrines do not excuse Defendants' actions.  *See supra* § IV.B.  The Complaint has adequately pled cybersquatting.  *See* Compl. ¶¶ 77-85.

Similarly, Defendants' only argument to dismiss Yuga Labs' unfair competition claim is that it is precluded by *Rogers* and nominative fair use.  Mot. at 13, 18.  Because those defenses cannot be decided in Defendants' favor on their motion, the unfair competition claim must proceed.  Even still, Yuga Labs has sufficiently alleged unfair competition under common law and Cal. Bus. & Prof. Code § 17200.  *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1138 (S.D. Cal. 2014) ("The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct.").  Defendants' scam deceives consumers.  *See* Compl. ¶¶ 99-112; *supra* § IV.B.

### 2.     Yuga Labs Plausibly Alleges False Advertising.

Here too, Defendants contend that Yuga Labs' false advertising claim fails due to "deficiencies under the *Rogers* test and nominative fair use."  Again, these inapplicable defenses do not preclude Yuga Labs' claims.  *See supra* § IV.B.  Defendants also claim Yuga Labs has not plausibly alleged a misleading representation of fact in support of its false advertising claim.  To the contrary, the

FENWICK & WEST LLP
ATTORNEYS AT LAW

Complaint alleges that Defendants "advertised their copycat 'Ryder Ripps Bored Ape Yacht Club' as equivalent to the authentic Bored Ape Yacht Club" and stated, "[y]ou reserve an ape which you can choose." Compl. ¶ 72. Defendants' claims are false. And these false equivalences could make reasonable consumers "likely to believe that if they hold one of the RR/BAYC NFTs they will have access to the authentic Bored Ape Yacht Club (they will not), that they own rights to the underlying art (they do not), or that they will have access to exclusive launches by Yuga Labs for holders of authentic Bored Ape NFTs (they will not)." *Id*. ¶ 73. The "fuck off" Tweets do not "distinguish[]" RR/BAYC NFTs from the official Bored Ape NFTs (Mot. at 21), but rather falsely advertise their NFTs as a product equivalent to Yuga Labs' NFTs. Even Defendants' incorrect claim that they own a registered trademark for RR/BAYC is false advertising because it suggests a false equivalence and explicitly misleads consumers about legitimacy that they simply do not have. *See* Compl. ¶ 46.

### 3.    Yuga Labs Plausibly Alleges Conversion.

Yuga Labs' conversion claim is legally sufficient because (1) Yuga Labs has plausibly alleged wrongful disposition of property and (2) courts recognize that plaintiffs may state a claim for conversion of their trademarks.

First, to state a claim for conversion, a plaintiff must allege "right to possession of property" and "wrongful disposition of the property right[.]" *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003). Defendants do not deny the validity or Yuga Labs' right to possession of its BAYC trademarks. Yuga Labs alleges that Defendants "substantially interfered with Yuga Labs' ownership and rights in [the BAYC] marks by knowingly or intentionally using them to promote their own [infringing] RR/BAYC NFTs." Compl. ¶ 133. This is supported by substantial evidence of infringement. *See id.* ¶¶ 33-47. Yuga Labs sufficiently pled wrongful disposition.

Second, courts in this judicial district recognize claims for conversion of trademarks. *See Jaeyoung Nam v. Alpha Floors*, No. 16-cv-6810, 2017 WL 11635994, at *8 (C.D. Cal. Jan. 4, 2017) (rejecting *Meeker* and concluding that "a

FENWICK & WEST LLP
ATTORNEYS AT LAW

plaintiff may state a claim for conversion of a trademark.").  Contrary to Defendants'
misleading citations, the Northern District of California also recognizes claims for
conversion of trademarks.  *See Eng. & Sons, Inc. v. Straw Hat Rests., Inc.*, 176 F.
Supp. 3d 904, 923 (N.D. Cal. 2016) (rejecting *Meeker*).  Yuga Labs' trademark
conversion claim is adequately pled.

### 4.    Yuga Labs Plausibly Alleges Intentional Interference.

Yuga Labs' intentional interference claim is sufficient because it has plausibly
alleged an independently wrongful act and provided examples of actual disruption to
an economic relationship.

First, Yuga Labs sufficiently alleges trademark infringement and thus an
independently wrongful act.  *See*, *supra* §§ II.A, IV.B.  But aside from trademark
infringement, Yuga Labs also alleges three *additional* independently wrongful acts:
"(b) engaging in unfair competition, (c) engaging in false advertising, and/or
(d) offering a competing fake product to devalue Yuga Labs' authentic Bored Ape
NFTs and the goodwill associated with them."  Compl. ¶ 144.  Each of these
independent acts was wrongful and well-pled.  *See*, *supra* §§ IV.B, IV.C.1-2.

Second, the Complaint sufficiently alleges a business relationship with Bored
Ape holders.  Contrary to Defendants' contention, California law does not prohibit
alleging loss of customers for intentional interference claims.  Rather, the standard
involves use of "improper methods of disrupting or diverting the business relationship
of another *which fall outside the boundaries of fair competition*."  *Settimo Assocs. v.
Environ* Sys*., Inc.*, 14 Cal. App. 4th 842, 845 (1993) (emphasis added).  Yuga Labs
sufficiently alleges Defendants disrupted their business relationships through unfair
competition.  *See supra* §§ IV.B, IV.C.1; Compl. ¶¶ 139-149.  Defendants unfairly
competed and infringed by using BAYC Marks to sell copycat NFTs.  Compl. ¶ 145.

In any event, Yuga Labs also sufficiently alleges actual disruption to economic
relationships with Bored Ape holders.  *See id.* ¶¶ 141, 145.  These allegations are
based on specific examples and are far from the "conclusory" statement at issue in

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  *Sybersound.*  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir.

2  2008).  Yuga Labs can also readily amend to add even more examples.

3  **5.    Yuga Labs Plausibly Alleges Negligent Interference.**

4  Yuga Labs sufficiently alleges unreasonable conduct through trademark

5  infringement and other causes of action, and has demonstrated disruption of existing

6  business relationships with Bored Ape holders.  *See supra* § IV.B.

7  Yuga Labs has also sufficiently pled a special relationship with Defendants.

8  Specifically, Defendants had a duty not to infringe on Yuga Labs' intellectual

9  property.  Their intentional actions support the existence of a duty.  *See Panavision*

10  *Int'l, L.P. v. Toeppen*, 1996 WL 768036, at *3 (C.D. Cal. Nov. 27, 1996) (denying

11  motion to dismiss negligent interference claim, taking into account Defendant's intent

12  to infringe on plaintiff's marks).  That Defendants are competitors is distinguishable

13  from the duty analysis.  "Whether a duty is owed is simply a shorthand way of

14  phrasing what is 'the essential question—whether the plaintiff's interests are entitled

15  to legal protection against the defendant's conduct.'"  *J'Aire Corp. v. Gregory*, 24

16  Cal. 3d 799, 803 (1979) (quoting *Dillon v. Legg*, 68 Cal.2d 728, 734 (1968)).  Here,

17  Yuga Labs' trademark interests are legally protected from Defendants' infringement.

18  Notably too, whether the parties are competitors is not one of the criteria under

19  California law to determine the existence of a duty.  *Id.*  And caselaw in this district

20  does not recognize it as one.  *See*, *e.g.*, *Vera Mona, LLC v. Dynasty Grp. USA LLC*,

21  No. CV202615, 2021 WL 3623297, at *4 (C.D. Cal. Apr. 15, 2021) (finding

22  competitor who infringed plaintiff's trademark had special relationship sufficient to

23  support plaintiff's negligent interference claim, and denying motion to dismiss).

24  **6.    Yuga Labs' Unjust Enrichment Claim Should Not Be
        Stricken by the Anti-SLAPP Statute.**

25

26  This claim arises from equity and is unrelated to Defendants' purported speech.

27  *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).  It is a claim

28  for profits Defendants made by trading on Yuga Labs' goodwill; the basis for the

FENWICK & WEST LLP
ATTORNEYS AT LAW

claim is not Defendants' speech.  Moreover, Yuga Labs plausibly alleges trademark infringement (*supra* § IV.B), and has thus shown unjust retention of a benefit. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  Yet, given the split of authority in California about whether unjust enrichment is a cause of action, and the Court's prior rulings on this issue, Yuga Labs withdraws this claim but continues to seek unjust enrichment as a remedy.  *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 981 (C.D. Cal. Jan. 9, 2014) (Walter, J).

### D.   None of Yuga Labs' Claims May Be Stricken Under California's Anti-SLAPP Law.

Defendants have not established that they are being sued for protected activity, and thus the anti-SLAPP statute does not apply and the motion fails.  *Supra* § IV.A. The anti-SLAPP motion also fails because Yuga Labs states a claim for each state-law cause of action.  Thus, even if Defendants can establish that their sale of RR/BAYC NFTs is somehow a First Amendment protected activity (which it is not), Yuga Labs' claims easily possess the "minimal merit" needed to survive an anti-SLAPP motion.  *See Hilton*, 599 F.3d at 908.

Defendants are also not entitled to fees.  None of Yuga Labs' claims target Defendants' protected activity—the remedies sought are classic trademark infringement remedies.  Any conceivable protected activity is so incidental to these claims as to make application of anti-SLAPP unreasonable.  *Episcopal Church Cases*, 45 Cal. 4th 467, 478 (2009) ("The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit."); *see also Hilton*, 599 F.3d at 901-02 ("an anti-SLAPP motion requires the court to ask, first, whether the suit arises from the defendant's protected conduct and, second, whether the plaintiff has shown a probability of success on the merits.  If the first question is answered in the negative, then the motion must fail, even if the plaintiff stated no cognizable claim.").  Additionally, if any state-law claims are dismissed, the partial

FENWICK & WEST LLP
ATTORNEYS AT LAW

dismissal will be "so insignificant that [Defendants] did not achieve any practical benefit from bringing the motion," and such "technical victories" do not entitle Defendants to fees under the statute. *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010). Here, all of Yuga Labs' federal claims for Defendant's trademark infringement, which are the core claims at issue, are unaffected by Defendants' motion to strike.

On the other hand, "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion . . . ." Cal. Civ. Proc. Code § 425.16(c)(1). An award of fees for Yuga Labs is particularly warranted here, where Defendants abused the anti-SLAPP statute to air their false assertions against Yuga Labs' founders and distract from infringing actions they took against Yuga Labs that are the subject of this lawsuit. Indeed, their two declarations with 36 improper and objectionable exhibits reinforces a fee award. *See* Yuga Labs' Objections to Evidence. Defendants concede their motion is targeted at a non-existent defamation claim; this is a trademark dispute in which the anti-SLAPP statute has no business.

## V.   CONCLUSION

Defendants' motion presents no argument requiring the Court to strike or dismiss Yuga Labs' claims, and it should be denied. If the Court, though, determines that any aspect of Yuga Labs' Complaint is insufficient, Yuga Labs requests the opportunity to amend its Complaint. Under Rule 15, "court[s] should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

Dated:  October 17, 2022          FENWICK & WEST LLP


By:   */s/ Eric Ball*
         Eric Ball
         Attorneys for Plaintiff
         YUGA LABS, INC.