| | |
|---|---|
| 1 | Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com |
| 2 | Monica Grewal (*pro hac vice*)<br>monica.grewal@wilmerhale.com |
| 3 | Scott W. Bertulli (*pro hac vice*)<br>scott.bertulli@wilmerhale.com |
| 4 | **WILMER CUTLER PICKERING** |
| | **HALE AND DORR LLP** |
| 5 | 60 State Street<br>Boston, MA 02109 |
| 6 | Telephone: (617) 526-6000<br>Fax: (617) 526-5000 |
| 7 | |
| 8 | Derek Gosma (SBN 274515)<br>derek.gosma@wilmerhale.com |
| 9 | Henry Nikogosyan (SBN 326277)<br>henry.nikogosyan@wilmerhale.com |
| 10 | **WILMER CUTLER PICKERING**<br>**HALE AND DORR LLP** |
| 11 | 350 South Grand Ave., Suite 2400<br>Los Angeles, CA 90071 |
| 12 | Telephone: (213) 443-5300<br>Fax: (213) 443-5400 |
| 13 | Attorneys for Defendants |
| 14 | *Ryder Ripps and Jeremy Cahen* |

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen, Does 1-10,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**REPLY IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE AND MOTION TO DISMISS**<br><br>Hearing Date: Nov. 7, 2022, at 1:30p.m., Pursuant to Standing Order ¶ 5(a)<br>Judge: Hon. John F. Walter |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ........................................................................................................... 2

    A. The Entirety of the RR/BAYC Project Is Protected Speech ...................... 2

    B. Yuga's Claims Fail the *Rogers* Test .......................................................... 4

    C. Defendants' Conduct Is Protected as Nominative Fair Use ....................... 6

    D. Yuga's Cybersquatting Claim Also Fails The *Rogers* Test ....................... 8

    E. Yuga's False Advertising Claim Is Insufficiently Pleaded ........................ 8

    F. Yuga's Dropped Unjust Enrichment Claim Should Be Stricken ............... 9

    G. Yuga's Conversion Claim Is Not Cognizable ............................................ 9

    H. Yuga's Intentional and Negligent Interference Claims Are Deficient ................................................................................................... 10

    I. Yuga's Substantive Arguments in Its Objections to Defendants' Exhibits Should Be Rejected .................................................................... 11

III. CONCLUSION ..................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019)...............6, 7

*Battle v. Taylor James, LLC*, No. 21-cv-07915-FWS-KES, 2022 WL 2162930 (C.D. Cal. June 15, 2022) ................................................................................3

*Brown v. Electronic Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) ......................................8

*Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099 (9th Cir. 2014)............................................................................................................8

*Chanel, Inc. v. Hsio Yin Fu*, No. 16-cv-02259, 2017 WL 1079544 (N.D. Cal. Mar. 22, 2017) .........................................................................................4

*Dr. Suess Enteprises, L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) ................1

*E.S.S. Enterntainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008)..................................................................................................8

*Garcia v. Allstate Ins*, 1:12-cv-00609-AWI-SKO, 2012 WL 4210113 (E.D. Cal. Sep. 18, 2012)........................................................................................12

*Givenchy S.A. v. BCBG Max Azria Group., Inc.*, No. 10-cv-08394, 2012 WL 3072327 (C.D. Cal. Apr. 25, 2012) ...................................................................4

*Gordon v. Drape Creative, Inc*, 909 F.3d 257 (9th Cir. 2018).......................................4

*Gotham Inurance. Co. v. Shasta Techs., LLC*, No. 13-cv-3810-PJH, 2014 WL 1347766 (N.D. Cal. April 3, 2014)................................................................12

*Halle Proerties, L.L.C. v. Bassett,* No. 06-cv-7694-ABC-JWJ, 2007 WL
 2344931 (C.D. Cal. Aug. 14. 2007) ...................................................................... 11

*Hermes International v. Rothschild*, No. 22-CV-384 (JSR), 2022 WL 1564597
 (S.D.N.Y. May 18, 2022) ........................................................................................ 5

*Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988 (9th Cir. 2018) ............................ 3

*Kremen v. Cohen,* 337 F.3d 1024 (9th Cir. 2003) ......................................................... 9

*Nam v. Alpha Floors, Inc.*, No. 216CV6810JLSJCGX, 2017 WL 11635994
 (C.D. Cal. Jan. 4, 2017) ........................................................................................ 10

*New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, 2014 WL
 2988271 (C.D. Cal. June 30, 2014) ...................................................................... 11

*Scottsdale Ins. Co. v. Grant & Weber*, No. 2:16-cv-00610 (C.D. Cal. Feb 17,
 2017) (Dkt. Nos. 106, 107) ................................................................................... 12

*Settimo Association. v. Environ Sytem, Inc.*, 14 Cal. App. 4th 842 (1993) .................. 10

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ..................... 10

*Tatiana Sauquillo v. California Highway Patrol*, No. 2:19-cv-07651 (C.D. Cal.
 Sep 11, 2019) (Dkt. No. 11) ................................................................................. 12

*Tensor Law P.C. v. Rubin*, 2019 WL 3249595 (C.D. Cal. April 10, 2019) ................. 12

*Tethys Bioscience, Inc. v. Mintz*, No. 09–5115, 2010 WL 2287474 (N.D. Cal.
 June 4, 2010) ......................................................................................................... 10

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ................................................. 3

-iii-

Case No. 2:22-cv-04355-JFW-JEM REPLY ISO MOTION TO STRIKE

*Vaccarino v. Midland Nat. Life Ins. Co.*, No. 2:11-CV-05858-CAS, 2014 WL
    572365 (C.D. Cal. Feb. 3, 2014) ........................................................................ 11

*Word Aflame Tabernacle, Inc. v. City of La Habra Heights*, No. 2:20-cv-09899
    (C.D. Cal. Nov 5, 2021) (Dkt. Nos. 88, 90, 91) .................................................. 12

## I. INTRODUCTION

Trademark law cannot be used to silence free speech. The First Amendment limits a trademark holder's right to muffle its critics, and to survive dismissal under the *Rogers* test, Yuga would have had to plead that Mr. Ripps's and Mr. Cahen's use of its alleged marks either is "not artistically relevant" or "explicitly misleads consumers." *Dr. Suess Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020). Yuga's Opposition Brief confirms that it did not and cannot do either: its effort to contest the artistic relevance of its marks to the RR/BAYC project is weak, and it fails to identify even a ***single consumer*** that has ever been misled.

Instead, Yuga's Opposition Brief tries to save its futile trademark claims (Claims 1-7) by artificially separating the *sale* of RR/BAYC NFTs from Defendants' free speech activity associated with the RR/BAYC *project*. But artwork—especially performance and conceptual art—cannot be understood divorced from its context. As the allegations of the Complaint make clear, the *sale* of RR/BAYC NFTs *was* part of Defendants' protected speech. In fact, Yuga itself alleges that Mr. Ripps described the RR/BAYC project as "satire" and encouraged collectors to purchase RR/BAYC project NFTs specifically to protest Yuga. Dkt. No. 1. ¶¶ 5, 56, 72, 116. The Complaint, through its incorporation of the https://rrbayc.com website (Dkt. No. 1 ¶¶ 34, 36, 48, 81), also explains that "RR/BAYC uses satire and appropriation to protest and educate people regarding The Bored Ape Yacht Club and the framework of NFTs" and that "[t]he work is an extension of and in the spirit of other artists who have worked within the field of appropriation art." Yuga cannot escape the *Rogers* test by separating RR/BAYC sales from the overall RR/BAYC project—the sales were an integral part of the artistic project.

Yuga's Opposition Brief also attempts to dodge nominative fair use by claiming that the Defendants improperly used exact copies of the BAYC digital images. Dkt. No. 23 at 19. But Yuga ignores that Defendants' commentary required reference to

-1-

those exact images to express that NFTs are not themselves digital images, but rather are digital tokens that can point to digital images—a point that Mr. Ripps has emphasized in his work for years. Had the RR/BAYC project used different images, it could not have made the point that Yuga is not selling digital images when it sells BAYC NFTs (and of course, if Yuga's concern was that Mr. Ripps and Mr. Cahen were using copies of protected images, their remedy would be in copyright law, not a trademark action.) All claims should be dismissed.

## II. ARGUMENT

### A. The Entirety of the RR/BAYC Project Is Protected Speech

The allegations in the Complaint contradict Yuga's argument that that the RR/BAYC project has "no expressive content or transformation" and is unprotected "commercial speech." Dkt. No. 53 at 7, 10. Yuga can only reach this conclusion by artificially severing the *sale* of RR/BAYC NFTs from the public commentary by Mr. Ripps and Mr. Cahen in the RR/BAYC *project*. But the RR/BAYC project as a whole—which includes the sale of RR/BAYC NFTs—was created as an act of protest and criticism of Yuga, as the Complaint itself alleges. For example, the Complaint alleges that Mr. Ripps explained in a May 25th tweet "how the website rrbayc.com works" stating that you pick an ape "it will get transferred to your wallet, Then you can say fuck off to @BoredApeYC!" Dkt. No. 1 ¶ 53. This allegation shows that the *sale* of the RR/BAYC NFTs—the "transfer[] to your wallet"—was not a separate act distinct from the protest against Yuga but was inextricably intertwined with it.

The Complaint further alleges that Mr. Ripps has described RR/BAYC as "satire," stated that he "would like to illuminate what nfts are, and show bayc for what it really is," and has encouraged collectors to purchase RR/BAYC NFTs to protest Yuga's racist messages and imagery. Dkt. No. 1 ¶¶ 3, 5, 49, 56, 57, 72, 116. The Complaint also incorporates by reference https://rrbayc.com by repeatedly discussing and including hyperlinks to the webpage. *See Khoja v. Orexigen Therapeutics*, Inc.,

-2-

1 899 F.3d 988, 1007 (9th Cir. 2018) (affirming incorporation by reference of a document repeatedly referenced in the complaint); *Battle v. Taylor James, LLC*, No. 21-cv-07915-FWS-KES, 2022 WL 2162930, at *6 (C.D. Cal. June 15, 2022) (holding that a hyperlink in a complaint incorporated the linked document); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint"). The webpage explains:

> Through the process of "re-minting", the original BAYC images are recontextualized – illuminating truths about their origins and meanings as well as the nature of Web3 – the power of NFTs to change meaning, establish provenance and evade censorship.
>
> RR/BAYC uses satire and appropriation to protest and educate people regard The Bored Ape Yacht Club and the framework of NFTs. The work is an extension of and in the spirt of other artists who have worked within the field of **appropriation art**.

These allegations show that the sale RR/BAYC NFTs and the public commentary of the RR/BAYC project are inextricably linked. Specifically, The RR/BAYC project is performance and conceptual art that uses the *sale* of unique NFTs to recontextualize BAYC images in a manner that sheds light on Yuga's racist and neo-Nazi messaging.

Yuga also attempts to drive a wedge between the RR/BAYC's founders, suggesting that somehow only Mr. Ripps and not Mr. Cahen engaged in protected speech. Dkt. No. 53 at 10. But again, this contradicts the allegations of the Complaint. Yuga has alleged that "Ripps, Cahen, and Does 1-5 … promote *their* RR/BAYC NFT collection" and that "in May 2022, Ripps, Cahen, *and* Does 1-5 created a website that allows users 'reserve' RR/BAYC NFTS"—this is the same website (https://rrbayc.com) that explains the context behind the satirical RR/BAYC project. Dkt. No. 1 at ¶¶ 33, 34. According to the allegations of the Complaint, Mr. Cahen undoubtedly participated in the free speech activity alongside Mr. Ripps.

-3-

1    Last, Yuga argues that its silencing of First Amendment protected speech is somehow superfluous to this litigation, because Yuga is solely interested in enforcing trademark rights.  Dkt. No. 53 at 11.  But, as discussed in detail below, the enforcement of trademark rights stops at the door of the First Amendment—that is the point of the *Rogers* test and the nominative fair use doctrine.  Moreover, Yuga's argument that this lawsuit is about commercial protection flies in the face of its actual conduct: there are countless entities that profit from counterfeit BAYC or Yuga NFTs.  *See* Dkt. No. 48-2.  But Yuga has not sued any actual knock-offs.  Instead, it sued only Mr. Ripps and Mr. Cahen, who have been publicly criticizing Yuga's use of racist and neo-Nazi messages and imagery.

**B.    Yuga's Claims Fail the *Rogers* Test**

Yuga's trademark infringement claims (Claims 1-7) are fundamentally flawed because they do not and cannot allege that the underlying conduct was not artistically relevant.  Dkt. No. 53 at 13.  To the contrary, as explained above, the Complaint confirms that the RR/BAYC project is conceptual art aimed at criticizing Yuga's use of racist messages and imagery.  These allegations go well beyond the *Rogers* test's "above zero" requirement for artistic relevance.  *Gordon v. Drape Creative, Inc*, 909 F.3d 257, 268 (9th Cir. 2018).

Despite the Complaint's repeated allegations of artistic expression, Yuga argues that the RR/BAYC project "is no more artistic than the sale of a counterfeit handbag, making the *Rogers* test inapplicable."  Dkt. No. 53 at 9.  But the handbag cases that Yuga cites, such as *Chanel, Inc. v. Hsio Yin Fu*, No. 16-cv-02259, 2017 WL 1079544, at *4 (N.D. Cal. Mar. 22, 2017) and *Givenchy S.A. v. BCBG Max Azria Group., Inc.*, No. 10-cv-08394, 2012 WL 3072327, at *6 n.8 (C.D. Cal. Apr. 25, 2012), are inapposite.  These handbag cases involve garden-variety counterfeiting operations where there was no credible claim of artistic expression.  This is not such a case.  Here, the Defendants include a well-known artist, and their work has triggered

widespread public commentary about Yuga's use of racist and neo-Nazi messages and imagery and the nature of an emerging technology (NFTs).

The Complaint also fails to plead that the RR/BAYC project is explicitly misleading. Rather, Yuga concedes that use of a mark is **not** explicitly misleading when "the junior user employed the mark in **different contexts** and markets than the senior users." Dkt. No. 53 at 14 (emphasis added). Context matters. As explained earlier, the Complaint alleges that Mr. Ripps and Mr. Cahen created RR/BAYC to "show bayc for what it really is" and to allow collectors to say "fuck off to @BoredApeYC!" Dkt. No. 1 ¶¶ 53, 57. The Complaint also admits that Mr. Ripps and Mr. Cahen primarily marketed and sold RR/BAYC NFTs on their Twitter pages, https://rrbayc.com, and Foundation.app—none of which are marketplaces that sell any Yuga products and (but for Foundation.app) are replete with content critical of Yuga. *See, e.g., id*. ¶¶ 34, 48, 53, 57. These allegations contradict a claim of explicitly misleading conduct.

Yuga's reliance on the *Hermès* decision (Opp at 15) is likewise unavailing because it likewise ignores the context of the RR/BAYC project. In *Hermès*, the defendant made statements **praising** the Hermès brand, typical of those made when parties are working collaboratively. *Hermes Int'l v. Rothschild*, No. 22-CV-384 (JSR), 2022 WL 1564597, at *6 (S.D.N.Y. May 18, 2022). As a result, the *Hermès* complaint alleged multiple accounts of explicitly misleading use of the mark, including consumers posting that they believed there was an affiliation between Hermès and the NFT collection, and several news articles, including in *Elle* and the *New York Post*, that reported (incorrectly) the NFTs were made in partnership with Hermès. *Id*. at *2. Here, by contrast, the Complaint alleges that the RR/BAYC project has been heavily critical of Yuga (Dkt. No. 1 ¶¶ 3, 5, 49, 56, 57, 72), which precludes a reasonable consumer from believing that Yuga partnered with Mr. Ripps and Mr. Cahen for the RR/BAYC collection. Put more simply: who could ever

believe that Yuga was sponsoring the artists making "accusations of racism" and encouraging people to "say fuck off to @BoredApeYC!"?  Dkt. No. 1 ¶¶ 3, 49, 53.  And of course, the Complaint also fails to allege even a single instance of actual confusion; in fact, it fails to mention actual confusion entirely.

Finally, Yuga concedes that that collectors of RR/BAYC NFTs would sign a disclaimer that explained that RR/BAYC NFTs have no association with Yuga.  Dkt. No. 53 at 16.  This is an admission by Yuga that Defendants acted in good faith and explained to the public the context of RR/BAYC NFTs, how they criticize Yuga, and that they point to the same digital images as BAYC NFTs to educate the public about the framework of NFTs (that NFTs are not digital images).  Yuga tries to fix this hole in its Complaint by stating for the first time in their Opposition Brief that the RR/BAYC NFTs "explicitly misled other consumers through both initial interest and post-sale confusion."  Dkt. No. 53 at 7.  But the Complaint makes no such allegation.

**C.    Defendants' Conduct Is Protected as Nominative Fair Use**

Yuga argues that it is improper to address nominative fair use at the pleadings stage.  Yuga is wrong.  It is well-established that trademark claims can be dismissed pursuant to Rule 12(b)(6) under nominative fair use.  *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (affirming dismissal of complaint due to nominative fair use).  The Ninth Circuit held in *Applied Underwriters* that dismissal under nominative fair use was appropriate when (1) defendants were critical of plaintiff's products, (2) defendants used a disclaimer, and (3) defendants used plaintiff's mark in a manner that identified the defendants.  *Id*.

The allegations in this case plainly meet all three elements of the *Applied Underwriters* test.  With respect to the first factor (criticism), the Complaint itself confirms that RR/BAYC is critical of Yuga by alleging that it is "satire," meant to "show bayc for what it really is," that Mr. Ripps has made "accusations of racism," and that the project allows collectors to say, "fuck off to @BoredApeYC!"  Dkt. No. 1

¶¶ 5, 49, 53, 57. As to the second factor (disclaimer), the incorporated website https://rrbayc.com explains that RR/BAYC is not a Yuga affiliated project, and Yuga admits that collectors were required to acknowledge a disclaimer before purchasing RR/BAYC NFTs on https://rrbayc.com. And for the third factor (identification), the Complaint alleges that that the RR/BAYC project was carried out in a manner that identified Defendants, such as on their personal Twitter and Instagram accounts, and the website https://rrbayc.com. Dkt. No. 1 ¶¶ 5, 49, 57. Even the token tracker that the Complaint incorporates by discussing and hyperlinking (https://etherscan.io/address/0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73691e) identifies "*ryder-ripps.eth" as the creator. Compl. ¶ 39; Dkt. No. 48 at 16. And of course, the "RR" in the name of the project are Mr. Ripps' own initials.

Nor is Defendants' use of Yuga's exact marks[1] an issue. As alleged in the Complaint, the RR/BAYC project uses satire to criticize Yuga. That criticism cannot exist without referencing the BAYC collection by name, and the Ninth Circuit has recognized that nominative fair use protects this kind of referential use of trademarks so that defendants can identify specific brands or products without using descriptive phrases. *Applied Underwriters*, 913 F.3d at 894.

Further, the RR/BAYC project necessarily requires using pointers to digital images that include the entirety of Yuga's Nazi-derived logo. As explained on https://rrbayc.com, one of the purposes of RR/BAYC was to "educate[] people regarding . . . the framework of NFTs." The RR/BAYC project shows that NFTs offer no exclusivity with associated digital resources by using verifiably unique NFTs to point to the same (publicly available) digital images as the BAYC NFTs. Had Defendants altered the digital images (and the marks contained therein) in any way, the RR/BAYC project would no longer expose that Yuga is not selling digital images

---

[1] Notably, since filing its Complaint, Yuga has abandoned its application for federal registration of the asserted mark APE. (Dkt. No. 1 ¶ 27).

when it sells BAYC NFTs. In a similar vein, pointers to the BAYC digital images, and the Yuga marks contained therein, were necessarily used to identify the BAYC collection as the subject of this critique and to recontextualize "the original BAYC images … illuminating truths about their origins and meanings." Dkt. No. 48-4 (excerpt from https://rrbayc.com webpage).

### D. Yuga's Cybersquatting Claim Also Fails The *Rogers* Test

Contrary to Yuga's position, the Court can and should apply the *Rogers* test to the cybersquatting claim at issue here. The Ninth Circuit has held that the *Rogers* test "requires courts to construe the Lanham Act to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (internal quotation omitted). Thus, the root of the test is a balancing of First Amendment protections against "the public's right to be free from consumer confusion…." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1242 (9th Cir. 2013). The *Rogers* test, therefore, applies to any trademark-related claims that involve consumer confusion, and cybersquatting is undisputedly one of those claims. *See Calista Enters. Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099, 1031 (9th Cir. 2014) (holding that cybersquatting claims require likelihood of confusion).

### E. Yuga's False Advertising Claim Is Insufficiently Pleaded

Yuga fails to allege any misleading representations of fact to support its false advertising claim. Instead, Yuga's Opposition Brief offers the conclusory assertion that Defendants "advertised their copycat 'Ryder Ripps Bored Ape Yacht Club' as equivalent to the Bored Ape Yacht Club" without providing any statements or supporting allegations. Dkt. No. 53 at 21. And without presenting any statements where Defendants equated Defendants' artwork to Bored Ape Yacht Club, Yuga further argues that these "false equivalences" could deceive reasonable consumers. Dkt. No. 53 at 21.

Yuga's Opposition Brief conveniently ignores instances where Defendants expressly distinguished between RR/BAYC and Bored Ape Yacht Club. The Complaint alleges that Mr. Ripps set up a website for his RR/BAYC NFT collection (https://rrbayc.com) and, on its main page, informed potential consumers that the RR/BAYC project is satirical and uses appropriation to criticize Yuga and shed light on nature of NFTs. Dkt. No. 1 ¶¶ 34, 48. The Complaint further alleges that Mr. Ripps explained in a May 25th tweet that collectors can purchase RR/BAYC NFTs on his website to protest Yuga's use of racist and neo-Nazi messaging. Dkt. No. 1 ¶ 53. Yuga also admits that the website required consumers to acknowledge a disclaimer explaining that RR/BAYC NFTs are not associated with Yuga. Dkt. No. 53 at 16. Thus, according to the allegations in the Complaint, Mr. Ripps and Mr. Cahen's representations regarding the nature of the RR/BAYC artwork were not misleading.

### F. Yuga's Dropped Unjust Enrichment Claim Should Be Stricken

Because Yuga has stated in its Opposition Brief that it has withdrawn its unjust enrichment claim (but has not actually amended its Complaint), Defendants' motion to strike it on anti-SLAPP grounds is unopposed and should be granted.

### G. Yuga's Conversion Claim Is Not Cognizable

Yuga admits that its conversion claim rests on the premise that Defendants have misappropriated Yuga's trademarks. But as outlined in Defendants' initial brief and herein, Yuga has failed to plead an actionable claim of trademark infringement and, therefore, failed to establish a wrongful disposition of property necessary for conversion. *Kremen v. Cohen,* 337 F.3d 1024, 1029 (9th Cir. 2003) (to state a claim for conversion you must allege "right to possession of property, wrongful disposition of the property right and damages.") (internal citation and quotation omitted).

But even if Yuga had pleaded an actionable trademark infringement claim, its conversion claim should still be dismissed. Although courts have "split on whether [conversion] is a cognizable claim" in the trademark context (*Nam v. Alpha Floors,*

-9-

*Inc.*, No. 216CV6810JLSJCGX, 2017 WL 11635994, at *8 (C.D. Cal. Jan. 4, 2017)), the Court here should follow those cases that have found that the application of conversion to intangible property "should not be expanded to displace other, more suitable law." *Tethys Bioscience, Inc. v. Mintz*, No. 09–5115, 2010 WL 2287474, at *7 (N.D. Cal. June 4, 2010) (internal citation and quotation omitted). Accordingly, Yuga's should not be able to use conversion to supplant its trademark-related claims, which better address the nature of trademarks, the interests at stake, and the appropriate determination of remedies.

### H. Yuga's Intentional and Negligent Interference Claims Are Deficient

Yuga's Opposition provides no additional factual information regarding its intentional interference and negligent interference claims. Yuga largely rests on the arguments they already made in their Complaint and, thus, fails to plausibly allege intentional interference or negligent interference. Specifically, Yuga attempts to use their trademark infringement claims (Claims 1-7) to meet many of the elements of their interference claims (such as independent wrongful acts). Dkt. No. 53 at 22-23. But this attempt fails because, as stated above, Yuga has not plausibly alleged its trademark-related claims.

Yuga also ignores Defendants' argument that it is insufficient to plead a "market theory" of liability by suggesting that Defendants generally disrupted Yuga's relationship with the entire market of BAYC customers. Dkt. No. 48 at 24 (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008)). Instead, Yuga simply concludes, without citing any allegations, that their Complaint "sufficiently alleges a business relationship with Bored Ape holders." Dkt. No. 53 at 22. Yuga then cites to *Settimo Assocs. v. Environ Sys., Inc.*, 14 Cal. App. 4th 842, 846 (1993) to argue that "California law does not prohibit alleging loss of customers for intentional interference claims." Dkt. No. 53 at 22. But *Settimo Associates* dealt with a competitive bidding process among sub-contractors and is completely silent on

-10-

whether interference claims apply to the general market of costumers. *Settimo Assocs.*, 14 Cal. App. 4th at 845. Further, Yuga has yet to allege more than conclusory statements about their loss of customers. *See* Dkt. No. 1 ¶¶ 145, 157.

### I. Yuga's Substantive Arguments in Its Objections to Defendants' Exhibits Should Be Rejected

Yuga's objections should be ignored (if not stricken outright) for violating the Local Rules and this Court's Standing Order, which make clear that "oppositions to motions shall not exceed 25 pages." Dkt. No. 14 at ¶ 5(c); L.R. 11-6. Courts in this district recognize that litigants may not circumvent these page limits by making multiple filings. *Vaccarino v. Midland Nat. Life Ins. Co.*, No. 2:11-CV-05858-CAS, 2014 WL 572365, at *4 (C.D. Cal. Feb. 3, 2014); *New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, 2014 WL 2988271, at *1 (C.D. Cal. June 30, 2014). Here, in addition to Yuga's 25-page Opposition Brief, Yuga has filed a 51-page objection that packages substantive arguments that should have been in the Opposition Brief. For example, the objection raises arguments about (1) the veracity of Defendants' accusations of racism, (2) the relevance of Defendants' critical commentary to the RR/BAYC project, (3) whether the RR/BAYC project is artistic expression, (4) whether the court should take judicial notice of public documents, and (5) which documents have been incorporated by reference in the Complaint. *See, e.g.*, Dkt. No. 54 at 1-3, 8-9, 13, 14, 15, 17. At a minimum, Yuga should have sought leave of Court before filing such extensive additional briefing.

In any event, there was nothing improper about Defendants' use of exhibits in their motion. Defendants request relief from this Court based solely on the allegations in the Complaint and documents the Complaint incorporated by reference, such as https://rrbayc.com, https://etherscan.io/address/0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73691e, and https://apemarket.com/. *See* Dkt. No. 1 ¶¶ 34, 36, 39, 46, 48, 81; *see also Halle Props., L.L.C. v. Bassett,* No. 06-cv-7694-ABC-JWJ, 2007 WL 2344931, at *6 (C.D. Cal. Aug. 14, 2007) ("a court may consider documents which are not

-11-

physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'"); *Gotham Ins. Co. v. Shasta Techs., LLC*, No. 13-cv-3810-PJH, 2014 WL 1347766, at *3 (N.D. Cal. April 3, 2014) ("[T]he court may consider … documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims.").

Defendants attached additional exhibits to their motion only as background information and context to the First Amendment-protected activity in this case, as is typical for anti-SLAPP motions at the pleadings stage.[2] *See, e.g.*, *Tensor Law P.C. v. Rubin*, 2019 WL 3249595, at *4 (C.D. Cal. April 10, 2019) ("Although the Court provided an overview of Defendant's account of the facts in this Order, the Court need not refer to any of the evidence submitted by Defendant in deciding whether Plaintiff has set forth a legally sufficient claim against Defendant."); *Garcia v. Allstate Ins*, 1:12-cv-00609-AWI-SKO, 2012 WL 4210113, at *14 (E.D. Cal. Sep. 18, 2012) (granting anti-SLAPP motion at the pleadings stage "[b]ased on consideration of the declarations, pleadings, and exhibits to the present motion.").

## III. CONCLUSION

For the reasons set forth above, Yuga's objections (Dkt. No. 54) should be stricken under the Local Rules and Standing Order, Yuga's state law claims (Claims 4-11) should be stricken under the California anti-SLAPP statute, and Yuga's federal law claims (Claims 1-3) should be dismissed pursuant to Federal Rule 12(b)(6).

---

[2] It is routine practice to use exhibits in an anti-SLAPP motion at the pleadings stage when those exhibits solely serve as background information for the accused First Amendment activity and not as grounds for relief. *See e.g.*, *Tatiana Sauquillo v. California Highway Patrol*, No. 2:19-cv-07651 (C.D. Cal. Sep 11, 2019) (Dkt. No. 11); *Word Aflame Tabernacle, Inc. v. City of La Habra Heights*, No. 2:20-cv-09899 (C.D. Cal. Nov 5, 2021) (Dkt. Nos. 88, 90, 91); *Scottsdale Ins. Co. v. Grant & Weber*, No. 2:16-cv-00610 (C.D. Cal. Feb 17, 2017) (Dkt. Nos. 106, 107).

| | |
|---|---|
| Dated: October 24, 2022 | By: /s/ *Louis W. Tompros* |

        Louis W. Tompros (*pro hac vice*)
        louis.tompros@wilmerhale.com
        Monica Grewal (pro hac vice)
        monica.grewal@wilmerhale.com
        Scott W. Bertulli (pro hac vice)
        scott.bertulli@wilmerhale.com
        **WILMER CUTLER PICKERING HALE AND DORR LLP**
        60 State Street
        Boston, MA 02109
        Telephone: (617) 526-6000
        Fax: (617) 526-5000

        Derek Gosma (SBN 274515)
        derek.gosma@wilmerhale.com
        Henry Nikogosyan (SBN 326277)
        henry.nikogosyan@wilmerhale.com
        **WILMER CUTLER PICKERING HALE AND DORR LLP**
        350 South Grand Ave., Suite 2400
        Los Angeles, CA 90071
        Telephone: (213) 443-5300
        Fax: (213) 443-5400

        Attorneys for Defendants
        *Ryder Ripps and Jeremy Cahen*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on October 24, 2022.

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000