# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Ryder Ripps, Jeremy Cahen, Does 1-10,<br><br>Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**[PROPOSED] STATEMENT OF DECISION GRANTING MR. RIPPS AND MR. CAHEN'S ANTI-SLAPP MOTION TO STRIKE AND MOTION TO DISMISS**<br><br>Hearing Date: Nov. 7, 2022, at 1:30 p.m.<br><br>Judge: Hon. John F. Walter |

## I. INTRODUCTION

The Court has received a motion (Dkt. No. 48) from Defendants Ryder Ripps and Jeremy Cahen seeking to dismiss Plaintiff Yuga Labs, Inc.'s ("Yuga") federal trademark claims for failure to state a claim and to strike Yuga's state law claims under California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  Mr. Ripps and Mr. Cahen also seek attorney's fees.  Yuga filed a response (Dkt. No. 53) arguing that Mr. Ripps and Mr. Cahen's motion should be denied and a 51-page objection (Dkt. No. 54) to exhibits in Mr. Ripps and Mr. Cahen's anti-SLAPP motion.  Defendants filed a reply (Dkt. No. 58).  For the following reasons, the Court GRANTS Mr. Ripps and Mr. Cahen's motion to strike and motion to dismiss.  The Court also STRIKES Yuga's objections.

## II. BACKGROUND

### A. The Complaint

On July 24, 2022, Yuga filed a Complaint (Dkt. No. 1) alleging eleven causes of action against each of the defendants, including seven federal and state trademark infringement claims and four accompanying state law torts.

The Complaint alleges that Yuga marketed a collection of non-fungible tokens ("NFTs") known as the Bored Ape Yacht Club ("BAYC").  Dkt. No. 1 ¶¶ 16–18.  Each of these tokens is associated with a work digital art depicting anthropomorphized ape cartoons.  Dkt. No. 1 ¶¶ 21–22.  The Complaint alleges that Yuga holds several trademarks associated with the BAYC collection including BORED APE YACHT CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo.  Dkt. No. 1 ¶¶ 23–29

The Complaint further alleges that the Defendants created their own NFT collection called Ryder Ripps Bored Ape Yacht Club ("RR/BAYC") that used unique tokens on the Ethereum blockchain, but that use pointers to the same ape cartoons as the BAYC collection.  Dkt. No. 1 ¶ 33.  Yuga alleges that the Defendants used Yuga's

trademarks in connection with RR/BAYC in order to confuse consumers into believing that they were purchasing BAYC NFTs. Dkt. No. 1 ¶¶ 33–59. The Complaint also alleges that RR/BAYC contains criticism about Yuga, alleging that Mr. Ripps has described RR/BAYC as "satire" (Dkt. No. 1 ¶ 5), that he "would like to illuminate what nfts are, and show bayc for what it really is" (Dkt. No. 1 ¶ 57), has made "accusations of racism" directed at Yuga (Dkt. No. 1 ¶¶ 3, 49), and has encouraged collectors to purchase RR/BAYC NFTs to protest Yuga's racist messages and imagery (Dkt. No. 1. ¶¶ 56, 72, 116). Yuga also alleges that Mr. Ripps has conducted "an interview with a popular meme page" to discuss Yuga's use of racist dog whistles and that Mr. Ripps's message has "reached a significant number of people on social media." Dkt. No. 1 ¶¶ 50, 51.

The Complaint incorporates by reference https://rrbayc.com by repeatedly referencing, discussing, and including hyperlinks to that webpage.[1] Dkt. No. 1 ¶¶ 34, 36, 48, 81. The webpage explains that "RR/BAYC uses satire and appropriation to protest and educate people regarding The Bored Ape Yacht Club and the framework of NFTs" and that "[t]he work is an extension of and in the spirit of other artists who have worked within the field of **appropriation art**." Dkt No. 48-4 (emphasis in original). The Complaint similarly incorporates by reference and the Etherscan page: https://etherscan.io/address/0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73691e and

---

[1] A complaint incorporates by reference documents that it discusses, repeatedly references, or includes via hyperlink. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1007 (9th Cir. 2018) (affirming incorporation by reference of a document repeatedly referenced in the complaint); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint"); Battle v. Taylor James, LLC, No. 21-cv-07915-FWS-KES, 2022 WL 2162930, at *6 (C.D. Cal. June 15, 2022) (holding that a hyperlink in a complaint incorporated the linked document).

1 https://apemarket.com by discussing and including hyperlinks to the webpage.  Dkt.
2 No. 1 ¶¶ 39, 46.

### B. Mr. Ripps and the RR/BAYC project

Mr. Ripps is a visual artist and creative designer known for creating artwork that comments on the boundaries between art, the internet, and commerce.  His work examines popular culture and sheds light on how individuals move through our increasingly digitized world.

Mr. Ripps created the RR/BAYC project as a critique of Yuga's use of racist and neo-Nazi dog whistles.  The RR/BAYC project is a collection of NFTs that point to the same online digital images as the BAYC collection but use verifiably unique entries on the blockchain. Mr. Ripps's use of pointers to the same images is a form of "appropriation art" that serves several purposes: (1) to bring attention to Yuga's use of racist and neo-Nazi messages and imagery, (2) to expose Yuga's use of unwitting celebrities and popular brands to disseminate offensive material, (3) to create social pressure demanding that Yuga take responsibility for its actions, and (4) to educate the public about the technical nature and utility of NFTs.  Dkt. No. 48-4 at 1.

The RR/BAYC NFTs quickly became popular, and Mr. Ripps eventually set up the website https://rrbayc.com.  Dkt. No. 48-4.  The website ensured that collectors understood the satirical message of the project and that they were not purchasing a BAYC NFT.  The front page of the website explained that "RR/BAYC uses satire and appropriation to protest and educate people regarding the Bored Ape Yacht Club and the framework of NFTs." *Id.* at 1.  Mr. Ripps further required each purchaser to adopt the following disclaimer:



As shown above, the disclaimer required purchasers to acknowledge that RR/BAYC NFTs are "a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary[.]"

Mr. Ripps's criticism of Yuga has become well-known and public protest against Yuga led to the #BURNBAYC movement (spearheaded by the popular YouTuber Philion). Social media influencers and celebrity YouTubers have been using the #BURNBAYC hashtag, which began trending the same week the RR/BAYC collection sold out. The question of whether BAYC is racist has become a public viral debate

### C.  First Amendment Activity

The RR/BAYC project is replete with commentary directed at criticizing Yuga for its use of racist messages and imagery. For example, the RR/BAYC project's logo purports to illustrate that Yuga's "BAYC logo" imitates the Nazi Totenkopf emblem for the Schutzstaffel (SS), which was the Nazi organization primarily responsible for the Holocaust. Below is a comparison of the BAYC logo, the Nazi SS Totenkopf, and the satirical RR/BAYC logo:




### III. LEGAL STANDARD

#### A. Failure to State a Claim

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co.*, Inc., 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

#### B. Motion To Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The California Anti-SLAPP statute explains that Rule 12(f) can "allow for early dismissal of meritless First Amendment cases aimed at chilling expression through costly, time-consuming

litigation." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (internal brackets omitted). Courts grant anti-SLAPP motions to strike at the pleadings stage when (1) the defendant shows that "an act in furtherance of protected expression is being challenged" and (2) the plaintiff fails to demonstrate that "the complaint is legally sufficient." *Planned Parenthood Fed'n of America, Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).

## IV. ARGUMENT

The Complaint's federal law claims fail to plausibly allege a claim under Rule 12(b)(6) and the state law claims both fail to plausibly allege a claim and are barred under the California anti-SLAPP statute.

### A. Defendants' Exhibits Are Permissible For Background Information On First Amendment Activity

As a preliminary matter, Yuga filed a 51-page objection (Dkt. No. 54) without leave of this Court to impermissibly supplement its 25-page response with substantive arguments on the relevance of Defendants' criticism, incorporation by reference, and whether the accused activity involves artistic expression. *See, e.g.*, Dkt. No. 54 at 1-3, 8-9, 13, 14, 15, 17. Litigants may not circumvent these page limits by making multiple filings. *Vaccarino v. Midland Nat. Life Ins. Co.*, No. 2:11-CV-05858-CAS, 2014 WL 572365, at *4 (C.D. Cal. Feb. 3, 2014); *New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, 2014 WL 2988271, at *1 (C.D. Cal. June 30, 2014). The objections are stricken for violating the Local Rules and this Court's Standing Order, which make clear that "oppositions to motions shall not exceed 25 pages." Dkt. No. 14 at ¶ 5(c); L.R. 11-6.

Further, Defendants properly used exhibits in their anti-SLAPP motion to strike because the requested relief is based on only the Complaint and documents incorporated by reference in the Complaint, such as the https://rrbayc.com webpage. Dkt. No. 58 at 11. Defendants attached additional exhibits only as background

information to the alleged First Amendment activity in this case, as is typical for anti-SLAPP motions at the pleadings stage.[2] *See, e.g.*, *Tensor Law P.C. v. Rubin*, 2019 WL 3249595, at *4 (C.D. Cal. April 10, 2019) ("Although the Court provided an overview of Defendant's account of the facts in this Order, the Court need not refer to any of the evidence submitted by Defendant in deciding whether Plaintiff has set forth a legally sufficient claim against Defendant."); *Garcia v. Allstate Ins*, 1:12-cv-00609-AWI-SKO, 2012 WL 4210113, at *14 (E.D. Cal. Sep. 18, 2012) (granting anti-SLAPP motion at the pleadings stage "[b]ased on consideration of the declarations, pleadings, and exhibits to the present motion.").

The Court's analysis and granting of relief is based on the Complaint and materials incorporated by reference. *See Halle Props., L.L.C. v. Bassett,* No. 06-cv-7694-ABC-JWJ, 2007 WL 2344931, at *6 (C.D. Cal. Aug. 14. 2007) ("a court may consider documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'"); *Gotham Ins. Co. v. Shasta Techs., LLC*, No. 13-cv-3810-PJH, 2014 WL 1347766, at *3 (N.D. Cal. April 3, 2014) ("[T]he court may consider … documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims.").

---

[2] It is routine practice to use exhibits in an anti-SLAPP motion at the pleadings stage when those exhibits solely serve as background information. *See e.g.*, *Tatiana Sauquillo v. California Highway Patrol*, No. 2:19-cv-07651 (C.D. Cal. Sep 11, 2019), ECF Nos. 11, 11-2; *Word Aflame Tabernacle, Inc. v. City of La Habra Heights*, Docket No. 2:20-cv-09899 (C.D. Cal. Nov 5, 2021), ECF Nos. 88, 90, 91; *Scottsdale Ins. Co. v. Grant & Weber*, No. 2:16-cv-00610 (C.D. Cal. Feb 17, 2017), ECF Nos. 106, 107.

### B. Failure to Plead Federal Trademark Claims (Claims 1-3)

#### i. Yuga's Trademark Claims Do Not Survive The *Rogers* Test

The Ninth Circuit has held that the *Rogers* test "requires courts to construe the Lanham Act to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (internal quotation omitted). Thus, the root of the test is a balancing of First Amendment protections against "the public's right to be free from consumer confusion…." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1242 (9th Cir. 2013). The *Rogers* test, therefore, applies to any trademark-related claims that involve consumer confusion. Accordingly, to plausibly alleged federal claims for false designation of origin, false advertising, and cybersquatting, a plaintiff must allege that the claims are not barred by the *Rogers* test. *Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distrib. Corp.*, 875 F.3d 1192, 1195-99 (9th Cir. 2017) (applying *Rogers* test to false designation of origin, unfair competition, and false advertising under the Lanham Act and California Law); *see Calista Enters. Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099, 1031 (9th Cir. 2014) (holding that cybersquatting claims require likelihood of confusion).

Under the *Rogers* test, trademark claims are actionable only if the accused use of a trademark is "(1) not artistically relevant to the underlying work or (2) explicitly misleads consumers as to the source of the content of the work." *Dr. Suess Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020).

The *Rogers* test requires that "the level of relevance must merely be above zero[.]" *Gordon v. Drape Creative, Inc*, 909 F.3d 257, 268 (9th Cir. 2018) (citation and quotation marks omitted). The allegations in the Complaint satisfy the "above zero" threshold because they include Mr. Ripps' explanation that his project uses BAYC marks in his conceptual appropriation art as a "provocation" that serves "to

illuminate what nfts are and show bayc for what it really is." Dkt. No. 1 ¶ 57. Yuga also alleged that Mr. Ripps sold RR/BAYC NFTs so collectors can protest Yuga's racist references. Dkt. No. 1 ¶¶ 72, 116. Yuga even alleged that Mr. Ripps promoted his project with the statement, "LONG LIVE CONCEPTUAL ART." Dkt. No. 1 ¶ 57. The incorporated webpage https://rrbayc.com also explains that "RR/BAYC uses satire and appropriation to protest and educate people regarding The Bored Ape Yacht Club and the framework of NFTs" and that "[t]he work is an extension of and in the spirit of other artists who have worked within the field of appropriation art." Dkt. No. 48-4 at 1 (emphasis removed). These allegations in the Complaint satisfy (and, in fact, go well beyond) the "above zero" relevance requirement.

*Second*, Yuga has failed to allege that Mr. Ripps explicitly misled consumers as to the source of RR/BAYC NFTs. *Gordon*, 909 F.3d at 269 ("the key here is that the creator must explicitly mislead consumers[.]"). To the contrary, the Complaint alleges statements that RR/BAYC NFTs are intended to "show bayc for what it really is" and allow collectors to protest Yuga and "say fuck off to @BoredApeYC!" Dkt. No. 1 ¶¶ 57, 72, 116. According to these allegations, Mr. Ripps did not publicize the RR/BAYC NFTs as Yuga products, but instead as the antithesis to Yuga and its BAYC collection. The incorporated website, https://rrbayc.com, similarly shows that Mr. Ripps did not explicitly mislead consumers. Dkt. No. 1 ¶ 57. The website explains that Mr. Ripps was the creator of RR/BAYC NFTs and that the project uses "satire and appropriation" to criticize Yuga's BAYC collection. Dkt. No. 48-4 at 1. The Complaint also admits that Mr. Ripps and Mr. Cahen primarily marketed and sold RR/BAYC NFTs on their Twitter pages, https://rrbayc.com, and Foundation.app—none of which are marketplaces that sell any Yuga products and (but for Foundation.app) are replete with content critical of Yuga. *See, e.g., id.* ¶¶ 34, 48, 53, 57. Additionally, the token tracker that the Complaint incorporates by discussing and hyperlinking (https://etherscan.io/address/0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73

-9-
Case No. 2:22-cv-04355-JFW-JEM [PROPOSED] STATEMENT OF DECISION

691e) identifies "*ryder-ripps.eth" as the creator. Compl. ¶ 39; Dkt. No. 48 at 16. These allegations contradict a claim of explicitly misleading conduct.

Finally, Yuga concedes that that collectors of RR/BAYC NFTs would sign a disclaimer that explained that RR/BAYC NFTs have no association with Yuga. Dkt. No. 53 at 16. This is an admission by Yuga that Defendants acted in good faith and explained to the public the context of RR/BAYC NFTs, how they criticize Yuga, and that they point to the same public digital images as BAYC NFTs to educate the public about the framework of NFTs (that NFTs are not digital images).

In sum, under the *Rogers* test, Yuga's allegations render its trademark infringement claims legally insufficient.

### i. RR/BAYC Is Nominative Fair Use Of Yuga's Marks

The Ninth Circuit held in *Applied Underwriters* that dismissal under nominative fair use was appropriate when (1) defendants were critical of plaintiff's products, (2) defendants used a disclaimer, and (3) defendants used plaintiff's mark in a manner that identified the defendants. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 898 (9th Cir. 2019) (affirming dismissal of complaint due to nominative fair use).

The allegations in this case meet all three elements of the *Applied Underwriters* test. With respect to the first factor (criticism), the Complaint itself confirms that RR/BAYC is critical of Yuga by alleging that it is "satire," meant to "show bayc for what it really is," that Mr. Ripps has made "accusations of racism," and that the project allows collectors to say, "fuck off to @BoredApeYC!" Dkt. No. 1 ¶¶ 5, 49, 53, 57. As to the second factor (disclaimer), the incorporated website https://rrbayc.com explains that RR/BAYC is not a Yuga affiliated project, and Yuga admits that collectors were required to acknowledge a disclaimer before purchasing RR/BAYC NFTs on https://rrbayc.com. And for the third factor (identification), the Complaint alleges that that the RR/BAYC project was carried out in a manner that identified Defendants, such as on their personal Twitter and Instagram accounts, and

the website https://rrbayc.com. Dkt. No. 1 ¶¶ 5, 49, 57. Moreover, the "RR" in the title of the project refers to Mr. Ripps' initials and the token tracked identifies Mr. Ripps as the creator. Compl. ¶ 39; Dkt. No. 48 at 16.

Further, the RR/BAYC project necessarily requires using the entirety of Yuga's logo in the BAYC digital images. As explained on https://rrbayc.com, one of the purposes of RR/BAYC was to "educate[] people regarding … the framework of NFTs." The RR/BAYC project sheds light that NFTs offer no exclusivity with associated digital resources by using verifiably unique NFTs to point to the same digital images as the BAYC NFTs. Had Defendants altered the digital images, the RR/BAYC project would no longer expose that Yuga is not selling digital images when it sells BAYC NFTs. In a similar vein, the BAYC digital images, and the Yuga marks contained therein, were necessarily used to identify Yuga as the subject of this critique and to recontextualize "the original BAYC images … illuminating truths about their origins and meanings." Dkt. No. 48-4.

### C. Yuga's State Law Claims

Yuga's state law claims are stricken under the anti-SLAPP statute because (1) the RR/BAYC project is protected speech made in connection with a public issue and (2) the Complaint does not allege a legally sufficient cause of action. For the same reasons, Yuga's state law claims are dismissed for failure to plausibly allege a claim.

#### i. The RR/BAYC Project Is Protected Speech Made In Connection With A Public Issue

Anti-SLAPP immunity protects the accused RR/BAYC project because the project is performance and appropriation art that expresses criticism against Yuga's purported use of racist, neo-Nazi, and alt-right dog whistles. *Planned Parenthood, 890 F.3d at 832-33* (citing Cal. Civ. P. Code. § 425.16(b)(1)) (anti-SLAPP immunity applies to acts made (1) in furtherance of free speech and (2) in connection with a public issue).

### a) Mr. Ripps Created The RR/BAYC Project In Furtherance of His Constitutional Right of Free Speech

The First Amendment protects expressive works, and an artwork is expressive if it is "communicating ideas or expressing points of view." *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020) (citing *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002)). The RR/BAYC project protests Yuga's purported references to racist and neo-Nazi themes. Dkt. No. 1 ¶¶ 5, 49, 50, 51, 56, 72, 116. Further, the website incorporated by reference into the complaint (https://rrbayc.com) explained that RR/BAYC was a satirical work aimed at criticizing Yuga and educating the public on the framework of NFTs. *See* Dkt. No. 48-4 at 1. These allegations in the Complaint and the incorporated webpage are sufficient to satisfy the first prong of the anti-SLAPP analysis.

### b) The RR/BAYC Project Communicates Ideas In Connection With A Public Issue

A work is connected to a public issue if it involves (1) statements "concerning a person or entity in the public eye," (2) "conduct that could directly affect a large number of people beyond the direct participants," or (3) "a topic of widespread public interest." *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010). The RR/BAYC project is connected to a public issue for all three of these reasons.

First, the RR/BAYC project expresses commentary about an entity (Yuga) that is in the "public eye." Yuga is a $4 billion corporation that publicly sells NFTs and various related services. Dkt. No. 1 ¶ 20. Moreover, according to the Complaint, Yuga's BAYC collection has received "significant attention from the media" and "has generated massive public interest." Dkt. No. 1 ¶¶ 1, 19, 20

Second, Yuga has enlisted celebrities to promote BAYC and its purportedly racist imagery including Madonna, Jimmy Fallon, Shaquille O'Neal, Justin Bieber, Stephen Curry, Eminem, Serena Williams, Snoop Dog, and others. Dkt. No. 1 ¶ 21.

Yuga's BAYC has also worked with major brands including Adidas, Universal Music Group, and Arizona Iced Tea. Dkt. No. 1 ¶ 22. These public endorsements show that BAYC NFTs are affecting society at large, including American mainstream culture.

Third, Yuga's alleged connection to neo-Nazi and alt-right culture is a topic of widespread public interest. The Complaint acknowledges that Mr. Ripps' message has "reached a significant number of people on social media." Dkt. No. 1 ¶ 51. The incorporated website, https://rrbayc.com, also shows that the entire RR/BAYC collection is sold out.

### ii. The Complaint Does Not Support A Plausible Cause of Action

The Complaint is legally insufficient because Yuga has not alleged a plausible cause of action. *Planned Parenthood*, 890 F.3d at 832-33 (citing Cal. Civ. P. Code § 425.16(b)(1)) (holding the second step of anti-SLAPP requires plaintiffs to show that the complaint is legally sufficient).

#### a) State Trademark Infringement Claims (Claims 4-7)

The *Rogers* test and nominative fair use equally apply to Yuga's state trademark infringement claims. *Twentieth Century Fox*, 875 F.3d at 1195-99 (applying *Rogers* test to false designation of origin, unfair competition, and false advertising under California Law); *E.S.S. Ent. 200, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098, 1101 (9th Cir. 2008) (applying *Rogers* test to trademark infringement and unfair competition under California law); *Applied Underwriters*, 913 F.3d 884 at 893-98 (applying nominative fair use to unfair competition under California law); *New Kids on the Block v. News America Pub. Inc.*, 971 F.2d 302, 305-09 (9the Cir. 1992) (applying nominative fair use to trademark infringement and false advertising under California law); *BMW of N. America v. Mini Works, LLC*, 463 Fed. App'x. 689 (Fed. Cir. 2011) (nonprecedential) (applying nominative fair use to cybersquatting). Accordingly, for the reasons discussed above, Yuga failed to plausibly allege Claims 4-7 under the *Rogers* test and nominative fair use.

### b) Unjust Enrichment (Claim 8)

Yuga stated in its brief in opposition to Defendants' anti-SLAPP motion that it was withdrawing its unjust enrichment claim. Dkt. No. 53 at 24. The Court accordingly strikes the claim.

### c) Conversion (Claim 9)

To state a claim for conversion, Yuga must allege "right to possession of property" and "wrongful disposition of the property right[.]" *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (internal quotation omitted). Yuga alleges "wrongful disposition" by stating that Defendants "substantially interfered with Yuga's ownership and rights in these marks." Compl. ¶¶ 132-133. Again, Yuga has not plausibly alleged trademark-related claims (Claims 1-7) and therefore has failed to plausibly allege wrongful disposition of property.

### d) Intentional and Negligent Interference with Prospective Economic Advantage (Claims 10 and 11)

Claims for intentional and negligent interference with prospective economic advantage both require that a defendant engaged in an independently "wrongful" act as defined by some constitutional, statutory, regulatory, or other determinable legal standard. *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 831 (9th Cir. 2001); *Nat'l Med. Transp. Network v. Deloitte & Touche*, 72 Cal. Rptr. 2d 720, 736 (1998). Yuga relies on Defendants alleged conduct for its trademark-related claims as independently wrongful acts. Dkt. No. 1 ¶¶ 144, 156. But these allegations cannot serve as the independently wrongful act because Yuga has not plausibly alleged its trademark-related claims.

## V. CONCLUSION

For the reasons set forth above, the Court strikes Yuga's objections (Dkt. No. 54) for violating the Court's Standing Order and the Local Rules, dismisses Claims 1-3 pursuant to Federal Rule of Civil Procedure 12(b)(6), strikes Claims 4-11 under the

California anti-SLAPP statute (and, in the alternative, dismisses them). The Court awards Mr. Ripps and Mr. Cahen their fees and costs pursuant to Cal. Civ. Proc. Code. § 425.16(c). Within 30 days of the entry of this order, Defendants' shall submit a full accounting of fees and costs.

Dated: _____  _____

Hon. John F. Walter
United States District Jude

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on October 26, 2022.

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000