UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YUGA LABS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>RYDER RIPPS, JEREMY CAHEN, and DOES 1-10,<br><br>    Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**[PROPOSED] STATEMENT OF DECISION DENYING DEFENDANTS' MOTION TO STRIKE AND DISMISS**<br><br>Date:  Nov. 7, 2022<br>Time:  1:30 p.m.<br>Dept:  Courtroom 7A<br>Judge: Honorable John F. Walter |

On October 3, 2022, Defendants Ryder Ripps and Jeremy Cahen filed an Anti-SLAPP Motion to Strike and Motion to Dismiss Yuga Labs Inc.'s ("Yuga Labs") Complaint. On October 17, 2022, Plaintiff filed its opposition and objections to the evidence submitted by Defendants. On October 24, 2022, Defendants filed their reply. After considering the moving, opposing, and reply papers, the objections to evidence, and the arguments therein, the Court rules as follows:

**I.    BACKGROUND**

Unless otherwise indicated, the following factual allegations are taken from Plaintiff Yuga Labs' Complaint (Dkt. 1).

Yuga Labs is the creator of one of the world's most well-known and successful

Non-Fungible Token ("NFT") collections, known as the Bored Ape Yacht Club ("BAYC"). Compl. ¶ 1. BAYC NFTs have earned significant attention for their popularity and value: prominent celebrities are proud owners of Bored Ape NFTs, and individual Bored Ape NFTs have sold for hundreds of thousands, if not millions, of dollars. *Id*. ¶¶ 1, 16. Yuga Labs has used its BAYC Marks in connection with advertising, marketing, and promoting its products and services nationwide and internationally through multiple platforms, including the Bored Ape Yacht Club website; NFT markets such as OpenSea; and social media such as Facebook, Instagram, and Twitter. *Id*. ¶ 23.

Defendant Ripps worked with Defendant Cahen to create, promote, and sell a collection of NFTs they call "RR/BAYC." *Id*. ¶ 2. These NFTs use the exact same images underlying Yuga Labs' BAYC NFTs, are marketed using the exact same marks Yuga Labs uses to market its BAYC NFTs, and are sold on the exact same marketplaces Yuga Labs' BAYC NFTs are sold. *Id*. Defendants "use[] every opportunity to make these RR/BAYC NFTs resemble the authentic Bored Ape NFTs as closely as possible to confuse consumers into buying them," such as using identical underlying images and numbering schemes. *Id*. ¶¶ 32, 34, 52. Likewise, Defendants marked the token tracker of their product, which is important for validating its authenticity, with Yuga Labs' trademarks: "Bored Ape Yacht Club (BAYC)." *Id*. ¶¶ 39, 40. In an apparent attempt to mislead the Court, Defendants *twice* claimed that Ripps' name was included on this token tracker, ignoring Plaintiff's allegation supported by screenshots that for thousands of consumers the token tracker did not display Ripps' name. *Compare* Compl. ¶¶ 39, 57; Opp. (Dkt. 53) at 1 *with* Mot. (Dkt. 48) at 16; Reply (Dkt. 58) at 7. Defendants' NFT sales pages are "deliberately misleading and confusing . . . and use[] Yuga Labs' BAYC marks in an attempt to trick community members into buying their NFTs instead of the official BAYC NFTs." *Id*. ¶ 37. Defendants also use Yuga Labs' marks to promote their "Ape Market" NFT marketplace, which requires a person to purchase an RR/BAYC NFT to join. *Id*. ¶ 2.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Defendants' Motion does not challenge the key allegations supporting Plaintiff's claim of trademark infringement. They do not deny the strength of Yuga Labs' marks, nor that it has the right to use them. Compl. ¶¶ 23-32. Defendants sell the same type of product (NFTs) with identical underlying Bored Ape images and use BAYC marks, without modification in most instances, to sell RR/BAYC NFTs. Mot. at 6, 18; *see also* Compl. ¶¶ 33-47. Defendants admit their intent in using the BAYC marks was to identify the BAYC collection, even though they are not selling genuine Yuga Labs products. Mot. at 18; *see also* Compl. ¶ 52.

Instead, Defendants claim that their NFT sales, Ape Marketplace, and use of Yuga Labs' BAYC marks (even unmodified) is "conceptual art" making it "protected speech" under California's anti-SLAPP law and the *Rogers* test. Mot. at 1. In support, they provide two declarations and thirty-six exhibits in an attempt to connect this so-called "speech" to their use of Yuga Labs' marks. Defendants did not seek judicial notice of any of their purported evidence or otherwise justify to the Court why it was appropriate to submit evidence on their Motion.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (cleaned up). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994). In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

Defendants' declarations and related exhibits fail to meet these evidentiary rules of submission on a motion to dismiss. *See* Dkts. 48 to 48-39. They claim that including reams of evidence is "typical" for Anti-SLAPP motions at the pleadings

stage, but the cases they cite are inapposite. For example, *Tensor Law P.C. v. Rubin*, merely stands for the general rule that courts do not look beyond the pleadings in ruling on Anti-SLAPP motions to strike. 2019 WL 3249595, at *4 (C.D. Cal. April 10, 2019). And in *Tatiana Sauquillo v. California Highway Patrol*, the defendants filed a request for judicial notice, which Defendants have not done here. No. 2:19-cv-07651, at *2 (C.D. Cal. Sep 11, 2019) (Dkt. No. 11). Instead, Defendants' evidence appears to have been included for the improper purpose of airing Defendants' claims against Yuga Labs' founders in this forum and otherwise trying to distract from their alleged infringement.[1] By doing so, Defendants have wasted the Court's and Plaintiff's time. For the reasons set forth in Plaintiff's Objections to Defendants' Evidence (Dkt. 54), this evidence is improper and irrelevant, and will not be considered on the Motion.

## II. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, "does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). The threshold issue on an anti-SLAPP motion to strike state-law claims is whether Defendants made "a prima facie showing that the lawsuit arises from an act in furtherance of its First Amendment right to free speech." *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522, 2015 WL 5071977, at *3 (N.D. Cal. Aug. 27, 2015). However, "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1012 (2021). If the movant

---

[1] Indeed, Defendants claim to have included these exhibits "only as background information," yet this "background" takes up at least eight pages of their opening brief, with barely any reference to the Complaint. Reply at 12; Motion at 2-9.

FENWICK & WEST LLP
ATTORNEYS AT LAW

clears this first hurdle, then the plaintiff must "show a reasonable probability that it will prevail on its claim." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450, 2021 WL 4932734, at *4-5 (N.D. Cal. Sept. 14, 2021). Where, as here, Defendants contend that the claims are legally deficient, the court applies a Rule 12(b)(6) standard of review. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). And where the complaint clearly states a claim, the anti-SLAPP motion fails.

### III. DISCUSSION

Notwithstanding Defendants' meritless and pretextual arguments that RR/BAYC NFTs are "art," Plaintiff has sufficiently pled a textbook trademark infringement claim supported by "slam-dunk evidence of a conceptually strong mark together with the use of identical marks on identical goods." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) (abrogated on other grounds). Likewise, Plaintiff has sufficiently pled its cybersquatting, false advertising, unfair competition, conversion, and tortious interference claims.

### A. Defendants' Sale of Infringing RR/BAYC NFTs Are Not "Protected Activity" Under California's Anti-SLAPP Law.

Defendants' sale of infringing NFTs is not "protected activity" under California's anti-SLAPP statute (Cal. Civ. P. Code. § 425.16(b)(1)) because Defendants fail to show that Yuga Labs' lawsuit arises from an act in furtherance of Defendants' "First Amendment right to free speech." *Nat'l Abortion Fed'n*, 2015 WL 5071977, at *3. It is not enough for an anti-SLAPP movant to identify the existence of allegedly protected activity; rather the protected activity must at least partially form the basis of the claim. *See Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190, 1190 (9th Cir. 2017) ("[E]ven if a defendant engages in free speech activity that is relevant to a claim, that does not necessarily mean such activity is the basis for the claim."). Here, and notwithstanding Defendants' unsupported assertions that they are "linked," their so-called "speech" is entirely separate from their allegedly

infringing NFT sales. Reply at 3; *see* Ripps Decl. (Dkt. 48-1) ¶¶ 5-9. The lawsuit does not arise out of Defendants' speech, the Complaint does not seek to enjoin Defendants' speech, and the anti-SLAPP motion fails at the outset for this reason.

The Motion is also deficient on several other grounds. **First**, Defendants offer no argument that Cahen's activities were in furtherance of any expression. While the Complaint discusses Cahen's involvement in the infringement, it does not allege he (or Ripps) made any expressive contributions. Therefore, the motion fails as to him.

**Second**, Defendants have not shown that the *sale and marketing* of thousands of infringing NFTs—which were sold in separate transactions, each of which Defendants took part in—is protected activity. Any such speech is *commercial* speech not protected by the anti-SLAPP statute. Indeed, the anti-SLAPP statute contains an explicit exemption for causes of action based on "comparative advertising." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 147 (2019). And here, even if Defendants' allegedly protected speech was made in conjunction with the sale of NFTs (it was not), it was targeted at potential or actual buyers of BAYC NFTs for comparative purposes. *Compare* Cal. Code Civ. Proc. § 425.17(c) *with* Compl. ¶¶ 144-145. But even if not explicitly exempted by § 425.17(c), the heavily commercial nature of Defendants' conduct weighs strongly in favor of finding that any speech associated with the sale is not the kind of public participation contemplated by the anti-SLAPP statute. *FilmOn.com Inc.*, 7 Cal. 5th at 148. Here, not only was Defendants' conduct commercial, it used Yuga Labs' marks to sell NFTs with the same images, to the same customers, in the same markets used by Yuga Labs.

**Third**, even if Ripps engaged in *some* protected activity (Cahen did not), that activity is merely incidental to infringement. Defendants "must identify the acts alleged in the complaint that [they] assert[] are protected and what claims for relief are predicated on them." *Bonni*, 11 Cal. 5th at 1010. They have not done so. Instead, Defendants base their Motion on a theory that this trademark case is pretextual or retaliatory. Yet "[t]he anti-SLAPP statute cannot be read to mean that any claim

asserted in an action which arguably was filed in retaliation for the exercise of speech . . . falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 77 (2002) (cleaned up).

**Fourth**, this trademark case is not appropriate for anti-SLAPP because there is no risk that this lawsuit will chill constitutional rights. Even when a defendant points to allegations in the Complaint that involve protected activity, an anti-SLAPP motion should not be entertained where the allegations about protected activity "are largely superfluous to [the plaintiff's] primary allegations" and the claims do not risk chilling constitutional rights. *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1022 (N.D. Cal. 2015). Where such allegations "merely provide context," an anti-SLAPP motion cannot prevail. *Bonni*, 11 Cal. 5th at 1012. Here, there is no evidence that Yuga Labs' primary allegations of trademark infringement seek to stifle Defendants' speech. And no alleged fact supports any such intent.

The anti-SLAPP statute has no business in this trademark dispute.

### B. None of Yuga Labs' Claims May Be Stricken Under California's Anti-SLAPP Law.

The anti-SLAPP motion also fails because Yuga Labs states a claim for each state-law cause of action. Thus, even if Defendants' sale of RR/BAYC NFTs were a First Amendment protected activity, Yuga Labs' claims easily possess the "minimal merit" needed to survive an anti-SLAPP motion. *See Hilton*, 599 F.3d at 908. Any conceivable protected activity is so incidental to these claims as to make application of anti-SLAPP unreasonable. *Episcopal Church Cases*, 45 Cal. 4th 467, 478 (2009) ("The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit."); *see also Hilton*, 599 F.3d at 901-02.

Even if the court chose to dismiss any state law claims, a partial dismissal in this case would be "so insignificant that [Defendants] did not achieve any practical benefit from bringing the motion," and such "technical victories" do not entitle

Defendants to fees under the statute. *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010). Here, all of Yuga Labs' federal claims, including those for trademark infringement (the core claims at issue) are unaffected by the Motion.

Defendants' motion to strike Yuga Labs' state-law claims under California's anti-SLAPP statute has no merit and is denied.

### C. Yuga Labs Plausibly Alleges Trademark Infringement

The facts pled in the Complaint support Plaintiff's trademark infringement claims by showing a likelihood of confusion and an inference of actual confusion. Whether or not, as Defendants argue (Mot. at 7-8), some who bought RR/BAYC NFTs knew they were fake, is a factual issue the Court cannot resolve on a motion to dismiss. Regardless, even if someone knows they are buying a knockoff, the sale still infringes. *See Chanel, Inc. v. Hsiao Yin Fu*, No. 16-cv-02259, 2017 WL 1079544, at *4 (N.D. Cal. Mar. 22, 2017). Plaintiffs sufficiently allege a trademark infringement claim in pleading that Defendants' use of BAYC Marks infringed Yuga Labs' rights because Defendants traded on Yuga Labs' goodwill and explicitly misled consumers through both initial interest and post-sale confusion. Compl. ¶¶ 37, 53; *see Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999); *ACI Int'l. Inc. v. Adidas-Salomon AG*, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005).

Additionally, Defendants have not shown that the RR/BAYC NFTs are an "expressive work" warranting application of the *Rogers* test, and Plaintiff has shown, under the *Rogers* test, that the RR/BAYC NFTs are "(1) not artistically relevant to the work" and "(2) explicitly mislead[] consumers as to the source or the content of the work." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018). Likewise, nominative fair use does not apply here, and even if it did, Defendants have failed to satisfy its elements.

### 1. Defendants' NFTs Are Not "Expressive Works" and Do Not Warrant Application of the *Rogers* Test.

The Ninth Circuit only applies the *Rogers* analysis when "artistic expression is

at issue," requiring Defendants to make a "threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon*, 909 F.3d at 264; *see also Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989). Defendants' sale of a "collection of NFTs that point to the same online digital images as the BAYC collection" (Mot. at 6) is not an expressive work protected by the First Amendment, and applying *Rogers* is improper.

In particular, the RR/BAYC NFTs do not express an idea or point of view. They are merely tokens that "point to the same online digital images associated with the BAYC collection." Mot. at 18-19. Even Defendants' token tracker uses an exact copy of Yuga Labs' marks—with no expressive content. Compl. ¶¶ 39-40. Likewise, Defendants' NFT marketplace sales and Ape Market contain no "artistic expression or critical commentary." *Id*. ¶¶ 33, 37, 42-45, 46. For example, the title of their Foundation sales page was simply "Bored Ape Yacht Club" (*id*. ¶ 37), and googling "BAYC Foundation.app" resulted in a misleading link entitled "Bored Ape Yacht Club – Foundation.app" that redirected to Defendants' Foundation sales page. *Id*. The Ape Market website used a skull logo identical to Yuga Labs' skull logo and was established "solely to sell their RR/BAYC NFTs alongside authentic Yuga Labs NFTs." *Id*. ¶ 46, 55. These are all commercial activities to sell infringing products. Defendants even concede that Ape Market contained no speech because it "never had any content." Mot. at 17.

Indeed, the only claimed expression Defendants point to comes from beyond Plaintiff's Complaint, which is improper to consider on a motion to dismiss. And even so, Ripps' declaration separates that claimed expression from Ripps' creation of the RR/BAYC NFTs. *See* Ripps Decl. ¶¶ 5-9. Their sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag, making the *Rogers* test inapplicable. *See, e.g.*, *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 415 (S.D.N.Y. 2002).

### 2. Defendants' Use of BAYC Marks Is Not Artistically Relevant.

Even if this Court were to apply the *Rogers* test, Defendants' use of BAYC Marks is not artistically relevant to Ripps' so-called "art." While there is a low bar for artistic relevance, it is not infinitely low. For example, in *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017), the court found that using the "Empire" mark in the title of a TV show was artistically relevant, but contemplated that it would *not* be artistically relevant for a "pretextual expressive work meant only to disguise a business profiting from another's trademark . . . ." *Id.* That is exactly what Plaintiff alleges here.

### 3. Defendants' Use of BAYC Marks Is Explicitly Misleading.

Defendants' use of the BAYC marks is also explicitly misleading. The two considerations relevant to whether a mark is explicitly misleading are (1) "the degree to which the junior user uses the mark in the same way as the senior user" and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *Gordon*, 909 F.3d at 270-71. In *Gordon*, the Court analyzed these factors and found that defendant's use of plaintiff's trademarked phrase in greeting cards involved minimal artistic expression, and using it in the same way that plaintiff was using it created a triable issue of fact on this point. *Id.* at 271. Here, Defendants admit they added zero expression to BAYC Marks and used them in exactly the same way that Yuga Labs is using them. Ripps Decl. ¶ 8; *see also* Compl. ¶¶ 33-47. *Gordon* concluded that "the potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions." *Id.* This is what Defendants have done with their NFTs. They allegedly used Yuga Labs' *exact same* marks on the *exact same* marketplaces to identify and sell NFTs bearing the *exact same* images underlying Yuga Labs' NFTs. *See, e.g.,* Compl. ¶ 33.

*Gordon* also observed that use of a mark is explicitly misleading when the mark is used "as the centerpiece of an expressive work itself, unadorned with any artistic

contribution by the junior user, which may reflect nothing more than an effort to induce the sale of goods or services by confusion or lessen the distinctiveness and thus the commercial value of a competitor's mark." *Id*. at 271 (cleaned up).  Here, Defendants concede they are using BAYC Marks as the centerpiece of their tokens, including using "Bored Ape Yacht Club (BAYC)" to identify tokens with the exact same images Yuga Labs' Bored Ape Yacht Club uses.  Mot. at 6.  So, as Plaintiff alleges, Defendants made their competing product look identical to Yuga Labs', and in the place where a consumer could authenticate and check who created the NFT, (the token tracker), Defendants used Yuga Labs' trademarks to ensure the consumer was explicitly misled. *See, e.g.*, Compl. ¶¶ 2, 33-47, 52.  This spotlight on Yuga Labs' marks solely serves to "induce the sale of goods or services by confusion." *Gordon, 909 F.3d at 271*.  These facts are enough to survive Defendants' motion to dismiss.  However, the Court addresses Defendants' other arguments below.

**First**, Defendants claim that Plaintiff's inclusion of Tweets telling Yuga Labs to "fuck off" demonstrate that their use of its marks was not explicitly misleading. Mot. at 15.  To the contrary, Plaintiff states that it included these Tweets to show that Defendants wanted to lure people into their knockoff products by using BAYC Marks and goodwill into purchasing what they falsely claim is an equivalent product in support of their false advertising and infringement claims.  Opp. at 15.  For purposes of the motion to dismiss, Yuga Labs' interpretation must control here.

**Second**, Defendants claim that their disclaimer on the rrbayc.com reservation site negates any confusion (Mot. at 15), but they ignore the other websites where they marketed and sold RR/BAYC NFTs *without* the disclaimer. *See, e.g.*, Compl. ¶¶ 35-39.  Indeed, the fact that Defendants felt the need to include a disclaimer demonstrates their awareness that their use of BAYC Marks was explicitly misleading.

**Third**, Defendants make much of minor changes to the marks such as (only sometimes) tacking on "RR" before "BAYC."  Mot. at 15-16.  But making only a slight, and occasional, change to a mark is still likely to result in confusion.  And

consumers do not necessarily know what "RR" means and could reasonably assume it is a new product or co-branding. See *Rousselot B.V. v. St. Paul Brands, Inc.*, No. CV190458, 2019 WL 6825763, at *12 (C.D. Cal. July 24, 2019). Defendants also ignore the many other instances where they used BAYC Marks with no changes. For example, one of their sales pages directly co-opted BAYC Marks in several places. Compl. ¶¶37-38. As the Court in *Kiedis v. Showtime Networks* found, "certainly the potential for confusing similarity exists when the titles are exactly the same." No. CV078185, 2008 WL 11173143, at *4 (C.D. Cal. Feb. 19, 2008) (cleaned up).

### 4. Defendants' Use of BAYC Marks Is Not A Fair Use.

Nominative fair use does *not* apply when a defendant uses a mark to "refer[] to something other than the plaintiff's product[.]" *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Similarly, nominative fair use only allows for "truthful use of a mark," for example a Lexus dealer who sells Lexus vehicles at lexusbroker.com. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010). Defendants' use of BAYC Marks is not "truthful" or referential because Defendants are *not* selling Yuga Labs' BAYC NFTs. Instead, Defendants use BAYC Marks to market and sell their own competing knockoff NFTs. Nor can they claim nominative fair use for their nonidentical modified versions of BAYC Marks. See *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008). Defendants also improperly raise the nominative fair use affirmative defense at the motion to dismiss stage, which is "more appropriately resolved on a motion for summary judgment." See *Perry v. Brown*, No. CV 18-9543, 2019 WL 1452911, at *12 (C.D. Cal. Mar. 13, 2019) (Walter, J.).

Even so, Defendants do not establish each element of the defense. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1091 (S.D. Cal. 2017). As alleged, BAYC has become well-known in the NFT community and beyond and is readily identifiable without the use of BAYC Marks. (Compl. ¶¶ 19-22). Defendants frequently used the entirety of the BAYC Marks without modification, including the

FENWICK & WEST LLP
ATTORNEYS AT LAW

"visual trappings of the [ ] brand." *Toyota Motor Sales*, 610 F.3d at 1181. And their use of the BAYC marks "prominently and boldly," to market the RR/BAYC NFTs, "suggest[s] sponsorship." *Brother Recs., Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003). The Court rejects Defendants attempt to create a new fair use "test" based on *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019). Reply at 6-7. The so-called "elements" of this test were merely considerations the court took into account in considering the third *New Kids* factor, and the complaint in that case only had "scant, conclusory allegations of consumer confusion," unlike Plaintiff's robust description of explicitly misleading activity. *Applied Underwriters,* at 897.

### IV. Yuga Labs Pled Its Additional Federal and State Law Claims.

Plaintiff has sufficiently pled its cybersquatting, unfair competition and false advertising claims. Defendants argue that these claims are precluded by *Rogers* and nominative fair use. Mot. at 13, 18, 20. Yet, as shown above, those defenses cannot be decided in Defendants' favor on their motion, and the claims must proceed. Moreover, Defendants cite no case applying the *Rogers* test to cybersquatting, and their argument that *Rogers* applies to "any trademark-related claims that involve consumer confusion" is unfounded. Reply at 8. The Complaint has adequately alleged cybersquatting by showing that Defendants' domain names are confusingly similar to Plaintiff's marks, and that they registered these domain names with bad faith intent. *See* Compl. ¶¶ 77-85. In support of its unfair competition claim, Yuga Labs has adequately shown that "the public is likely to be deceived about the source of goods" sold by Defendants. *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1138 (S.D. Cal. 2014). The Complaint also sufficiently alleges Defendants made false statements in support of Plaintiff's false advertising claim. For example, saying "[y]ou reserve an ape which you can choose" is a false equivalence that implies Ripps' RR/BAYC "ape[s]" are the same as Yuga Labs' BAYC "ape[s]." Likewise, the Complaint asserts that Defendants falsely advertised by claiming they had registered "RR/BAYC" and "ApeMarket" as trademarks. Compl. ¶ 72. Notwithstanding any

FENWICK & WEST LLP
ATTORNEYS AT LAW

isolated instances where Defendants supposedly "distinguished" their NFTs, these claims are false. *Id.* ¶ 73; Reply at 9.

Courts in this district recognize claims for conversion of trademarks. *See Nam v. Alpha Floors*, No. 16-cv-6810, 2017 WL 11635994, at *8 (C.D. Cal. Jan. 4, 2017). Plaintiff successfully alleged "wrongful . . . disposition of property rights" in support of conversion when it alleged that Defendants "substantially interfered with Yuga Labs' ownership and rights in [the BAYC] marks by knowingly or intentionally using them to promote their own [infringing] RR/BAYC NFTs." *Id.*; Compl. ¶ 133.

Plaintiff's intentional interference claim is sufficiently pled because it has plausibly alleged not just one, but four independently wrongful acts: "(a) appropriating Yuga Labs' trademarks, (b) engaging in unfair competition, (c) engaging in false advertising, and/or (d) offering a competing fake product to devalue Yuga Labs' authentic Bored Ape NFTs and the goodwill associated with them." Compl. ¶ 144. Plaintiff has also alleged actual disruption to economic relationships with Bored Ape holders. *See id.* ¶¶ 141, 145. Contrary to Defendants' contention, California law does not prohibit alleging loss of customers for intentional interference claims. Rather, the standard involves use of "improper methods of disrupting or diverting the business relationship of another *which fall outside the boundaries of fair competition.*" *Settimo Assocs. v. Environ Sys., Inc.*, 14 Cal. App. 4th 842, 845 (1993) (emphasis added). Yuga Labs sufficiently alleges Defendants disrupted their business relationships through unfair competition. Compl. ¶¶ 139-149.

For the same reasons, Yuga Labs sufficiently alleges these aspects of its negligent interference claim. Yuga Labs has also sufficiently alleged a special relationship with Defendants. Specifically, Defendants had a duty not to infringe on Yuga Labs' intellectual property, and their intentional actions support the existence of a duty. *See Panavision Int'l, L.P. v. Toeppen*, 1996 WL 768036, at *3 (C.D. Cal. Nov. 27, 1996) (denying motion to dismiss negligent interference claim, taking into account Defendant's intent to infringe on plaintiff's marks). That Defendants are

competitors is distinguishable from the duty analysis. "Whether a duty is owed is simply a shorthand way of phrasing what is the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979) (cleaned up). Here, Yuga Labs' trademark interests are legally protected from Defendants' infringement. Whether the parties are competitors is not relevant under California law to determine the existence of a duty. *Id*. And caselaw in this district does not recognize it as one. *See*, *e.g.*, *Vera Mona, LLC v. Dynasty Grp. USA LLC*, No. CV202615, 2021 WL 3623297, at *4 (C.D. Cal. Apr. 15, 2021) (competitor who infringed plaintiff's trademark had special relationship to support negligent interference claim, and denying motion to dismiss).

The Court rejects Defendants' arguments that Yuga Labs' Unjust Enrichment claim should be stricken by the anti-SLAPP statute for the reasons above. Given the split of authority in California about whether unjust enrichment is a cause of action, Yuga Labs withdrew this claim but continues to seek unjust enrichment as a remedy. *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 981 (C.D. Cal. Jan. 9, 2014). That withdrawal is not on account of the anti-SLAPP statute.

## V.    CONCLUSION

For the reasons set forth above, Defendants' Motion is **DENIED**. Defendants' request for fees and costs is **DENIED**. In light of the frivolous nature of this motion, Plaintiff's request for costs and attorneys' fees is **GRANTED**. *See* Cal. Civ. Proc. Code § 425.16(c)(1). Plaintiff shall file a fee request, supported by adequate time records, within ten (10) days of this Order establishing its reasonable fees and costs.

**IT IS SO ORDERED.**

Dated: _____         _____
                                Honorable John F. Walter
                                United States District Court Judge