Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

Eric Ball (CSB No. 241327)
eball@fenwick.com
Kimberly Culp (CSB No. 238839)
kculp@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

Anthony M. Fares (CSB No. 318065)
afares@fenwick.com
Ethan M. Thomas (CSB No. 338062)
ethomas@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

*Attorneys for Plaintiff*
*Yuga Labs, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., | Case No.: 2:22-cv-4355-JFW-JEM |
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **LOCAL RULE 37 JOINT STIPULATION RE RYDER RIPPS AND JEREMY CAHEN'S MOTION TO COMPEL** |
| Ryder Ripps, Jeremy Cahen, | |
| Defendants. | Magistrate Judge: Hon. John E. McDermott |
| | Motion Hearing Date: January 24, 2023 |
| | Motion Hearing Time: 10:00 AM |
| | Discovery Cutoff Date: April 3, 2023 |
| | Pre-Trial Conference Date: June 9, 2023 |
| | Trial Date:     June 27, 2023 |

# TABLE OF CONTENTS

1.   MR. RIPPS AND MR. CAHEN'S INTRODUCTORY STATEMENT ........ 3

2.   YUGA LABS' INTRODUCTORY STATEMENT ....................................... 5

3.   ISSUES IN DISPUTE ........................................................................... 8

  A.   Interrogatory No. 14, Requests for Production Nos. 5, 7-9, 32-
       34, 39, 51, and 53 (discovery relating to Yuga's use of racist and
       neo-Nazi messages and imagery) ......................................................... 8

  B.   Interrogatory No. 2 (All persons involved in creating BAYC
       NFTs) .................................................................................................. 39

  C.   Requests for Production No. 48 (Yuga's damages) ........................... 43

  D.   Request for Production No. 17 (Yuga's document retention
       policy and practices) .......................................................................... 46

  E.   Requests for Production Nos. 28 and 29 (documents on lack of
       consumer confusion) .......................................................................... 48

  F.   Deposition Scheduling ....................................................................... 53

This Joint Stipulation is submitted by Defendants Ryder Ripps ("Mr. Ripps") and Jeremy Cahen ("Mr. Cahen") and Plaintiff Yuga Labs, Inc. ("Yuga") pursuant to Local Rule 37-2 in connection with Defendants' motion to compel Yuga to produce documents and supplement written discovery responses.  Defendants served their portion of this stipulation on December 19, 2022.  The Court's order establishing the case schedule is attached as Exhibit 1 to the Declaration of Derek Gosma.

## 1.    Mr. Ripps and Mr. Cahen's Introductory Statement

This lawsuit involves allegations that Mr. Ripps and Mr. Cahen's conceptual art project infringes Yuga's trademarks associated with its Bored Ape Yacht Club ("BAYC") NFT collection.  The Defendants created a satirical NFT collection named "RR/BAYC" to criticize the racist and neo-Nazi imagery in Yuga's NFT collection. For example, Yuga's "BA YC logo" imitates the Nazi Totenkopf emblem for the Schutzstaffel (SS), which was the Nazi organization primarily responsible for the Holocaust.  Below is a side-by-side comparison of the BA YC logo, the Nazi SS Totenkopf, and the satirical logo Defendants created to criticize Yuga:

  

The Defendants filed a motion to strike and dismiss asserting various First Amendment defenses because the purpose of this lawsuit is to harass and silence the Defendants' speech activity.  *See* Anti-SLAPP Mot. (Dkt. No. 48).  Taking the allegations of the complaint as true (which it was required to do), the Court denied the motion.  However, Defendants expect to dispute many of the factual allegations of the Complaint at trial, and their First Amendment defense will be among the expected central issues at trial.

Yuga has not complied with its discovery obligations.  Mr. Ripps and Mr. Cahen served interrogatories and document requests several months ago, on September 6, 2022.  But the entirety of Yuga's production as of December 19, 2022, consists of public materials already available and easily accessible to the Defendants.[1]  Gosma Decl., Ex. 8 (Dec. 1, 2022, Nikogosyan letter to Thomas) at 1.  In contrast, Mr. Ripps and Mr. Cahen have produced tens of thousands of communications including, for example, a December 1, 2022, production of 10,945 confidential communications with links to corresponding documents detailing the creation, design, development, marketing, sales, returns, revenue, and costs associated with RR/BAYC—Defendants' conceptual art project.

Yuga has also been using dilatory tactics to unnecessarily delay production of responsive materials and information.  On November 28, 2022, the parties conferred regarding Yuga's deficient interrogatory responses and document production.  Gosma Decl., Ex. 1 (Dec. 1, 2022, Nikogosyan letter to Thomas) at 1.  At the conference, Yuga promised to supplement its interrogatories and document production to include non-public materials well before the holidays in December.  *Id*.  Yuga also promised to give its position regarding several outstanding discovery disputes, including discovery relating to Yuga's use of racist messages and imagery.  *Id*.  Defendants sent a follow up letter on December 1, 2022, but Yuga waited until December 15, 2022, to respond.  Gosma Decl., Ex. 6 (Emails Regarding Nov. 28, 2022, conference) at 1.  Thus, as of December 19, 2022, more than ***100 days*** after Defendants served their discovery requests, Yuga has continued to withhold nearly all responsive, non-public materials within its possession.

Yuga has also improperly refused even to discuss deposition scheduling. The close of discovery is on April 3, 2023, and the parties must confer to schedule depositions in a timely manner.  However, Yuga disregarded Section 6 of California's

---

[1] Yuga produced 11,500 documents including Yuga's public marketing materials and 10,000 public images of ape cartoons associated with Yuga's NFT collection.

Attorney Guidelines of Civility and Professionalism by improperly noticing depositions for the Defendants without any prior discussion of scheduling.  Gosma Decl., Ex. 10 (Emails Regarding Dep. Scheduling) at 5.  Mr. Ripps and Mr. Cahen invited Yuga to follow the Civility Guidelines and schedule all depositions by agreement.  *Id.* at 5.  But Defendants had to send three follow up emails inviting Yuga to cooperate before getting a response.  *Id.* at 4-5.  And Yuga's belated response was a refusal to follow the Civility Guidelines with respect Defendants' depositions and Yuga further stated that it is was not ready to discuss scheduling depositions for Yuga's witnesses.  *Id.* at 3.

Yuga's goal is clear—to harass Defendants with discovery requests, depositions, and motions while refusing to produce any discovery of its own.

The close of discovery is fast approaching and Defendants need to schedule depositions soon.  But Yuga is refusing to cooperate with deposition scheduling and, as of December 19, 2022, Yuga has not disclosed ***any*** non-public information at all.  That is why Mr. Ripps and Mr. Cahen had no choice but to seek the Court's help to compel Yuga to comply with its discovery obligations—specifically as to Interrogatories Nos. 2 and 14, Document Requests Nos. 5, 7-9, 17, 28-29, 32-34, 39, 48, 51, and 53, and deposition scheduling.

## 2.    Yuga Labs' Introductory Statement

As Judge Walter recently explained, Yuga Labs' "claims are limited to Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image (Defendants admit that the RR/BAYC NFTs use pointers to the same ape cartoon images as the BAYC collection) to the same customers in the same markets as Plaintiff. Therefore, the Court concludes that Defendants have failed to make a prima facie showing that Plaintiff's claims 'arise from' an 'act in furtherance of [their] right of petition or free speech.'"  Thomas Decl. Exhibit 6 (Order Denying Motion to Dismiss ("Order") (ECF No. 62)).  Further, Judge Walter held that "Plaintiff has not brought claims against Defendants for

defamation, slander, or libel.  Instead, Plaintiff's claims are limited to and arise out of Defendant's unauthorized use of the BAYC Marks for commercial purposes." *Id*. Defendants seek to re-litigate issues already decided by Judge Walter.

Since this is a trademark infringement case concerning Defendants' heavily commercial use of the BAYC Marks when selling RR/BAYC NFTs (the "Counterfeit NFTs"), the extent to which Defendants' malicious claims about Yuga Labs' founders are false are not at issue.  Just as a counterfeiter cannot defend their sale of knock-off DVDs of Walt Disney classics by saying they are allowed to do so because they claim that Walt Disney is a Nazi, Defendants here cannot continue their infringement based on lies about Yuga Labs' founders.  This lawsuit is not about Defendants' harassing pursuit of Inflammatory Material[2] (or the fact that Defendants have concocted these claims) and there is nothing in Yuga Labs' possession about Defendants' intent when publishing their Inflammatory Material.

Instead, this trademark case is solely about Defendants' use of Yuga Labs' BAYC Marks to sell the Counterfeit NFTs, as already admitted by Defendants Ripps. Worse still, "Defendants admit that they have used the BAYC Marks in the same marketplaces to identify and sell NFTs bearing the exact same images underlying the BAYC NFTs and without adding any expressive content."  Order at 7.  There is no dispute as to whether Defendants used the BAYC Marks to sell the Counterfeit NFTs. Instead, Defendants purport to offer a *Rogers* or First Amendment defense.

But, Judge Walter already held that "the *Rogers* test does not apply" in this case.  *Id*. at 6.  Judge Walter reached that conclusion ***even after assuming as true*** Defendants' view of their infringing activity:  "Although Defendants' argue that the larger RR/BAYC 'project' is an expressive artistic work protected by the First

---

[2] Defendants define "Inflammatory Material" as "any content that that [sic] is racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial, including but not limited to content that appears to be or can be understood to be [the same]racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial." (Tompros Decl. Ex. 2).

Amendment, Defendants' sale of what is admittedly a 'collection of NFTs that point to the same online digital images as the BAYC collection' (Motion, 6:20-21) is the only conduct at issue in this action and does not constitute an expressive artistic work protected by the First Amendment." *Id.*  Similarly, after considering Defendants' evidence (two declarations and 36 exhibits), Judge Walter concluded that Defendants have not made a *prima facie* case that Yuga Labs' claims arise out of the Inflammatory Material: "the Court concludes that Plaintiff's claims do not arise out of Defendants' attempts to publicize and criticize Plaintiff's purported use of racist, neo-Nazi, or alt-right dog whistles." *Id.* at 11.  Defendants are not entitled to abuse the discovery process to continue to harass Yuga Labs about false claims of Inflammatory Material.

Even if Judge Walter had concluded that Defendants' *Rogers* or First Amendment defenses applied and that Defendants' sales of the Counterfeit NFTs are expressive, Defendants fail to present any authority in support of their position that the extent to which their Inflammatory Material is false is somehow relevant to their defense of this trademark litigation.  Rather, they seek this discovery to make a mockery of this Court and abuse the discovery process to wade through every unfounded allegation that they have ever concocted.[3]  Even worse, they are using the Court as a vehicle for a public relations and engagement campaign to further the sales of the Counterfeit NFTs.  Their objective with the discovery requests is not to defend against any element of a trademark infringement claim, but to harass Yuga Labs and its employees and sell more Counterfeit NFTs.  Nevertheless, to the extent Defendants can prove their efforts were made in the name of art (which they weren't), they need only their own testimony and documents to make that case.  Yuga Labs does not have any evidence that tends to prove **what Defendants intended** when

---

[3] This discovery motion is in service of that charade.  Even after losing their motion on this issue, Defendants made a point of putting a Nazi icon on the first page of their filing between the parties' two logos.  The Defendants, and Defendants alone, are the ones spreading Nazi iconography.

Defendants published their own Inflammatory Material.[4]  That evidence, if it exists, lies solely with Defendants.

Finally, Defendants are wasting the Court's and parties' time and resources. Four of the six issues Defendants bring to the Court relate to discovery where Yuga Labs supplemented its responses, exactly when and as it told Defendants it would.[5] For another one of the six issues that Defendants bring to the Court (deposition scheduling), Defendants never served a Local Rule 37-1 letter on Yuga Labs and, therefore, no Local Rule 37-1 conference of counsel took place.  In any event, the parties were conferring about scheduling of depositions at the time Defendants served their stipulation and have resolved most of their scheduling disputes.  The reason why Defendants did not follow up about the supplemental production (which was delivered, as promised, in December, Thomas Decl. ¶ 3) or wait to receive it, or serve a Local Rule 37-1 letter on any of the deposition issues they raise, is obvious — they seek to downplay and detract from their own dilatory conduct at issue in Yuga Labs' own joint stipulation (served on Defendants on December 13) which will be heard by the Court on January 17, 2023.  This is far from the "professional" demeanor Defendants swear they have engaged in.  *See generally* Tompros Decl.

Defendants' continued abuse of discovery does not warrant approval from this Court, and their motion should respectfully be denied as to all issues.

**3.     Issues in Dispute**

    **A.     Interrogatory No. 14, Requests for Production Nos. 5, 7-9, 32-34, 39, 51, and 53 (discovery relating to Yuga's use of racist and neo-Nazi messages and imagery)**

Interrogatory No. 14:

    Identify and describe in detail all actions Yuga has taken in response to

---

[4] But, even Defendants claim – outside of this litigation – that "NFTs are not art." Thomas Decl. Exhibit 11 (tweet by Cahen).

[5] Defendants falsely state that Yuga Labs would provide supplementation "well before the holidays."  *See* Thomas Decl. ¶ 22.  Yuga Labs committed to producing, and did produce, documents in December.

criticism of Yuga Founders and Yuga's actual or alleged use, display, or reference to Inflammatory Material, including but not limited to responses to statements, social media influencers, newspapers, journals, legal experts, or otherwise posted on any Digital Platform. Your answer should include all activities relating to third parties that Yuga has retained to respond or to develop strategy for responding to criticism of Yuga's actual or alleged use, display, or reference to Inflammatory Material.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this interrogatory as irrelevant to any claim or defense in this case, overbroad, not proportionate to the needs of the case, and unduly burdensome. Yuga Labs objects to this interrogatory as overbroad unduly burdensome, and not proportionate to the needs of the case to the extent it asks Yuga Labs to describe "in detail all actions taken." Yuga Labs objects to this interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this interrogatory to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

Yuga Labs further objects to this interrogatory to the extent it contains subparts, or a compound, conjunctive, or disjunctive question, and will treat each discrete subpart as a separate interrogatory against the limit of interrogatories for Defendants in this case. Yuga Labs interprets this interrogatory to consist of at least two separate requests: (1) "Identify and describe in detail all actions Yuga has taken . . ." and (2) "all activities relating to third parties that Yuga has retained . . ." Yuga Labs objects that Defendants

have exceeded the number of interrogatories permitted by Fed. R. Civ. P. 33.

As repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

Document Request No. 5:

All Documents relating to Yuga's decision to file this Litigation, including without limitation all Documents relating to plans, suggestions, decisions, discussions, or contemplated action regarding the bringing or institution of this or any action against Mr. Ripps and Mr. Cahen, including without limitation any Communication between Yuga and any other Person or Entity concerning the alleged infringement by Mr. Ripps and Mr. Cahen, all corporate minutes and all other Documents concerning meetings of the Board of Directors, Executive Committee, other board committees, stockholders or any other of Yuga's corporate boards, committees, or subcommittees.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as not relevant to any claim or defense and as not proportionate to the needs of the case. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents" where a subset of documents would be sufficient, should any response be required. Yuga Labs will not produce documents in response to

this objectionable and irrelevant request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

Document Request No. 7:

All Documents and Communications relating to the relationship between Yuga and any person or entity involved in Yuga's response to RR/BAYC NFTs, Mr. Ripps's commentary regarding Yuga, or the use of Inflammatory Material in connection with the BAYC NFTs collection.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as vague and ambiguous as to the terms "response" and "relationship." Yuga Labs objects to this request as not relevant to any claim or defense and as not proportionate to the needs of the case, especially to the extent it seeks all documents about relationships relating to issues irrelevant to any trademark claims. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" where a subset of documents would be sufficient, should any response be required. Yuga Labs will not produce documents in response to this objectionable and irrelevant request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product

11

doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control, and Yuga Labs objects to Defendants' unfounded and argumentative assertion regarding the "use of Inflammatory Material in connection with the BAYC NFTs collection." Yuga Labs objects to the extent that the requested documents are equally available to Defendants from other sources that are more convenient, less burdensome and/or less expensive, particularly to the extent the information sought is publicly available.

As repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

Document Request No. 8:

All Documents and Communications relating to Yuga's cooperation with third parties, including but not limited to press specialists, advertising agencies, and market research entities, for responding to the public criticism regarding Yuga's use of Inflammatory Material.

Response:

Yuga Labs incorporates by reference each of the General Objections set

forth above as if fully set forth herein. Yuga Labs objects to this request as vague and ambiguous as to the term "cooperation." Yuga Labs objects to the term "public criticism" as vague, ambiguous, and argumentative. Yuga Labs objects to this request as not relevant to any claim or defense and as not proportionate to the needs of the case. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" where a subset of documents would be sufficient, should any response be required. Yuga Labs will not produce documents in response to this objectionable and irrelevant request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information. Yuga Labs objects to the term "public criticism" as vague, argumentative, and calling for a legal conclusion. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control, and Yuga Labs objects to Defendants' unfounded and argumentative assertion regarding "Yuga's use of Inflammatory Material."

As repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly

increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

Document Request No. 9:

All Documents and Communications relating to Yuga's efforts to disprove, discredit, silence, or otherwise respond to persons or entities commenting on Yuga's use, or alleged use, of Inflammatory Material.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as vague, ambiguous, and argumentative. Yuga Labs objects to this request as not relevant to any claim or defense and as not proportionate to the needs of the case. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" where a subset of documents would be sufficient, should any response be required. Yuga Labs will not produce documents in response to this objectionable and irrelevant request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control, and Yuga Labs objects to Defendants' unfounded assertion regarding "Yuga's use, or alleged use, of Inflammatory Material."

As repeatedly explained to Defendants, their false and fantastical claims

are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

Document Request No. 32:

All Documents and Communications relating to Yuga Founders's activities on any Digital Platform, including but not limited to 4chan.org, Twitter, and Instagram, relating to Inflammatory Material, this Litigation, Mr. Ripps or Mr. Cahen, RR/BAYC NFTs, or any content relevant to any claim or defense in this Litigation.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as not relevant to any claim or defense, not proportionate to the needs of the case, and harassing. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" relating to all "activities" where a subset of documents would be sufficient, should any response be required. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or

business information. Yuga Labs objects to the extent that the requested documents are equally available to Defendants from other sources that are more convenient, less burdensome and/or less expensive, particularly to the extent the information sought is publicly available. Yuga Labs objects to this request as presented for an improper purpose, including to harass. Yuga Labs will not produce documents in response to this objectionable and harassing request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control, and Yuga Labs objects to Defendants' unfounded and argumentative assertion that such documents concerning Inflammatory Material exist in its possession, custody, or control.

As repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

Document Request No. 33:

All Documents and Communications identifying the public usernames that Yuga Founders have used or currently use on Digital Platforms, including but not limited to 4chan.org, Twitter, and Instagram, including the usernames for anonymous posts.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as not

relevant to any claim or defense, not proportionate to the needs of the case, and harassing. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" where a subset of documents would be sufficient, should any response be required. Yuga Labs objects to this request as presented for an improper purpose, including to harass. Yuga Labs will not produce documents in response to this objectionable and harassing request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control. Yuga Labs objects to the extent that the requested documents are equally available to Defendants from other sources that are more convenient, less burdensome and/or less expensive, particularly to the extent the information sought is publicly available.

As repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the

Court.

Document Request No. 34:

All Documents and Communications relating to requests with WaybackMachine, or archive.org/web/ relating to the removal of internet archives in connection with BAYC NFTs, Yuga Founders's User Accounts on Digital Platforms, Yuga Founders's anonymous posts on Digital Platforms, including archives of profiles, posts, and comments on Digital Platforms.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as not relevant to any claim or defense, not proportionate to the needs of the case, and harassing. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" where a subset of documents would be sufficient, should any response be required. Yuga Labs will not produce documents in response to this objectionable and irrelevant request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control.

As repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga

Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

Document Request No. 39:

All Documents and Communications using or relating to the use of any of the following terms: "RR/BAYC," "Ryder Ripps Bored Ape Yacht Club," "Ryder Ripps," "Ripps," "satire," "appropriation," "appropriation art," "conceptual art," "Philip Rusnack," "Rusnack," "Hyperborea," "Miguel Serrano," "Serrano," "Sunny," "Sonya," "Ariosophy," "Bronze Age Pervert," "Jordan Peterson," "Peterson," "Milady," "Charlie," "Brahmin," "Dugin," "Theozoology," "Thule," "Rudolf Hess," "Hess," "Online Ceramics," "Caste," "Manny," "Manual Marrero," "Marrero," "Churchill's," "Trump," "Peter Aufschnaiter," "Aufschnaiter," "Prussia," "Reich," "Kaliyug," "Andreessen," "Pearpop," "Bibles," "Terror House," "Matt Forney," "Forney," "Philion," "Kali Yuga," "Surf," "Guenon," "Sufi," "Indra," "Shiva," "Evola," "ride the tiger," "Kalki," "Cowabunga," "Boogaloo," "April 30," "Nazi," "neo-Nazi," "troll," or "#BURNBAYC."

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as not relevant to any claim or defense, harassing, overbroad, not proportionate to the needs of the case, and unduly burdensome, including to the extent it is requesting "[a]ll Documents and Communications" and to the extent it contains no limitation as to subject matter, where a subset of documents would be sufficient, should any response be required. Yuga Labs objects to the phrase

"using or relating to the use of" as vague, ambiguous, unintelligible, and overbroad. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

Additionally, Yuga Labs objects to the terms "RR/BAYC," "Ryder Ripps Bored Ape Yacht Club," "Ryder Ripps," "Ripps," and "#BURNBAYC" as overbroad, not proportionate to the needs of the case, and unduly burdensome. Yuga Labs objects to the terms "satire," "appropriation," "appropriation art," "conceptual art," "Philip Rusnack," "Rusnack," "Hyperborea," "Miguel Serrano," "Serrano," "Sunny," "Sonya," "Ariosophy," "Bronze Age Pervert," "Jordan Peterson," "Peterson," "Milady," "Charlie," "Brahmin," "Dugin," "Theozoology," "Thule," "Rudolf Hess," "Hess," "Online Ceramics," "Caste," "Manny," "Manual Marrero," "Marrero," "Churchill's," "Trump," "Peter Aufschnaiter," "Aufschnaiter," "Prussia," "Reich," Kaliyug," "Andreessen," "Pearpop," "Bibles," "Terror House," "Matt Forney," "Forney," "Philion," "Kali Yuga," "Surf," "Guenon," "Sufi," "Indra," "Shiva," "Evola," "ride the tiger," "Kalki," "Cowabunga," "Boogaloo," "April 30," "Nazi," "neo-Nazi," and "troll" as not relevant to any claim or defense, harassing, argumentative, based on false premises, overbroad, and not proportionate to the needs of the case.

Subject to and without waiving the foregoing objections, and subject to an appropriate protective order, Yuga Labs is willing to meet and confer with Defendants regarding the scope of a document search and a reasonable list of search terms that is not intended to harass or create misleading narratives and

is calculated to lead to the discovery of documents relevant to this trademark litigation, proportional to the needs of the case, and which Yuga Labs has not otherwise already agreed to produce. Yuga Labs' objections are not a representation that any responsive documents exist.

And as repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

Document Request No. 51:

All Documents and Communications of the Yuga Founders that involve or include Inflammatory Material.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as not relevant to any claim or defense, not proportionate to the needs of the case, and harassing. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" where a subset of documents would be sufficient, should any response be required. Yuga Labs will not produce documents in response to this objectionable and harassing request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request to the extent it seeks information that is subject to any privacy interest. Yuga Labs objects to this

request as calling for information not in Yuga Labs' possession, custody, or control, and Yuga Labs objects to Defendants' unfounded and argumentative assertion that such documents concerning Inflammatory Material exist in its possession, custody, or control.

As repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

Document Request No. 53:

All Documents and Communications that show the Yuga Founders association with any neo-Nazi, white power, or racist groups, including American National Socialist Party, American Nazi Party, National Socialist Movement, Aryan Freedom Network, the Proud Boys, the Boogaloo Boys, the Ku Klux Klan, Identity Evropa, League of the South.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as not relevant to any claim or defense, not proportionate to the needs of the case, and harassing. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control, and Yuga Labs objects to Defendants' unfounded and argumentative assertion that such documents concerning this subject matter exist in its possession, custody, or control. Yuga

Labs will not produce documents in response to this objectionable and harassing request, and Yuga Labs' objections are not a representation that any responsive documents exist.

As repeatedly explained to Defendants, their false and fantastical claims are not the basis for this trademark litigation. Yuga Labs will continue to debunk their lies in the public marketplace. Unlike Defendants though, Yuga Labs will not abuse this proceeding by submitting reams of false, irrelevant, and improper material. Nor will Yuga Labs respond to harassing and irrelevant requests based on Defendants' false claims. Defendants' attempt to abuse discovery on this topic is improper and serves only to harass and needlessly increase the cost of litigation, wasting the resources of Yuga Labs and the Court.

### 1.    Mr. Ripps and Mr. Cahen's Position

The RR/BAYC project that is the subject of this action is a criticism of racist and neo-Nazi messages and imagery embedded in Yuga's BAYC NFT collection.  A key aspect of Defendants' First Amendment defenses is that that criticism was genuine.   Yuga has repeatedly taken the position—including in the Complaint itself—that Defendants' First Amendment defense is pretextual because its BAYC NFT collection is not, in fact, racist and does not, in fact, include intentionally embedded racist and neo-Nazi whistles.   But despite injecting the veracity and accuracy of Mr. Ripps and Mr. Cahen's criticisms into this case, Yuga has refused to produce any discovery that bears on that issue.

Turning to the specific requests at issue, Interrogatory No. 14 and Document Requests Nos. 5, 7-9, 32-24, 39, 51, and 53 seek information relating to Mr. Ripps and Mr. Cahen's First Amendment defenses.   Specifically, the interrogatory and document requests seek discovery on (1) Yuga's use of racist and neo-Nazi messages and imagery and (2) Yuga's campaign of silencing any criticism regarding its use of

neo-Nazi messages and imagery.  Yuga has withheld discovery on these requests on the grounds that they are irrelevant to Yuga's trademark infringement claims.  Gosma Decl., Ex. 8 (Dec. 1, 2022, Nikogosyan Letter to Thomas) at 103; Gosma Decl., Ex. 9 (December 15, 2022, Thomas Letter to Nikogosyan) at 6-7.

These discovery requests, however, are well-within the scope of discovery because they are essential to key issues of disputed fact relating to Defendants' First Amendment defenses.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …"); *see also Lawless v. S.E.C.*, 5:21-cv-1637-JWH (SP), 2022 WL 2784771, at *2 (C.D. Cal. May 20, 2022) ("A 'relevant matter' under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *Martinez v. Knight Transportation, Inc.*, 5:21-cv-00572-JWH-SPx, 2022 WL 6632192, at *1 (C.D. Cal. Feb. 3. 2022) ("Relevancy should be construed liberally and with common sense and discovery should be allowed unless the information sought has no conceivable bearing on the case.").

***First***, Mr. Ripps and Mr. Cahen seek discovery into the truthfulness of their criticism because ***Yuga intends to dispute*** the truthfulness of that criticism at trial to argue that Defendants' speech activity is pretext.  Specifically, Mr. Ripps and Mr. Cahen intend to assert as a defense that Yuga's trademark infringement claims fail under the *Rogers* test (provided in *Dr. Suess Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020)) and nominative fair use—both of which serve to protect First Amendment speech made in connection with trademarks.  *See* Anti-SLAPP Mot. (Dkt. No. 48) at 13-20.  Yuga plans to seek to challenge these defenses at trial by arguing that Defendants are making "***baseless*** accusations of racism" as a pretext for trademark infringement.  *See* Compl. (Dkt. No. 1) ¶¶ 3, 5, 48-49 (emphasis added).  In fact, Yuga has already disputed the truthfulness of Defendants' speech

activity on several occasions.  *See* Resp. Br. (Dkt. No. 53) at 13 (arguing that Defendants created pretextual expressive work); Resp. Br. (Dkt. No. 53) at 2, 8, 11, 12, 25 (describing Defendants' speech as "false claims," "false attacks," "false accusations," and "false assertions" against Yuga Labs' founders).

Moreover, the Court has already confirmed in its December 16, 2022, order that Yuga intends to advance on its pretext argument by disputing the legitimacy of Defendants' First Amendment activity.  The Court held that speech "would not be artistically relevant for a 'pretextual expressive work meant only to disguise a business profiting from another's trademark,' **which is precisely what Plaintiff has alleged Defendants are doing in this case**."  Dkt. No. 62 at 7 (emphasis added).  And while the Court was required to take Yuga's allegations as true at the pleadings stage, Mr. Ripps and Mr. Cahen have the right to refute those allegations at trial.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 432 (1996) ("The federal system … assigns the decisions of disputed questions of fact to the jury." (quoting *Byrd v. Blue Ridge Rural Elec. Cooperative, Inc.* 356 U.S. 525, 537 (1958)).

The law is clear that the scope of discovery allows parties to develop the evidentiary record on factual disputes.  *Wallisa v. City of Hisperia*, No. 16-cv-02638-FMO-KK, 2018 Wl6071054, at *3 (C.D. Cal. Feb. 28, 2018) ("documents that have a direct bearing on factual disputes in this case are the subject of fact discovery"); *Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19-cv-1865-GPC-DEB, 2021 WL 4595005, at *1 (S.D. Cal. Oct. 5, 2021) ("Informing factual disputes is the precise purpose of discovery.").  Here, Yuga has repeatedly disputed the accuracy of Defendants' criticism to undermine the credibility of their First Amendment defenses.  Accordingly, Mr. Ripps and Mr. Cahen seek discovery that would allow for a developed evidentiary record on this factual issue at trial.  *See Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th Cir. 2004) ("An important purpose of discovery is to reveal what evidence the opposing party has, thereby helping determine which facts are undisputed ... and which facts must be resolved at trial.").

*Second*, Mr. Ripps and Mr. Cahen also seek discovery that would lead to evidence showing that this lawsuit is part of Yuga's campaign to discredit and silence the Defendants.  Specifically, Defendants seek evidence on how Yuga has responded to criticism for its use of racist and neo-Nazi imagery, including Yuga's efforts to attack and discredit the Defendants and the RR/BAYC conceptual art project to journalists, influencers, youtubers, and the media.  Mr. Ripps and Mr. Cahen also seek non-privileged materials disclosing the circumstances of Yuga's decision to file this lawsuit.

This evidence is also within the scope of discovery because concerns the disputed factual issue of pretext.  *See Risto v. Screen Actors Guild-AM. Fed'n of Television & Radio Artists*, No. 18-cv-7241-CAS-PLAx, 2021 WL 879105, at *4 (C.D. Cal. Jan 11, 202) (granting discovery relevant to whether defendants' service agreement was a pretext to divert funds); *Daniels v. G4s Secure Solutions USA, Inc.*, 8:20-cv-00283-JGB-JDEx, 2021 WL 3742039, at *12-13 (C.D. Cal. Jan. 4, 202) (granting discovery on whether reasons for not hiring where truthful or pretextual).  Specifically, Yuga's campaign against Mr. Ripps and Mr. Cahen shows that the RR/BAYC project involves genuine speech activity that caused Yuga to take extensive measures and expend significant resources in response to the satirical RR/BAYC project's commentary.  Defendants are entitled to rely on such evidence both at summary judgment and at trial to rebut Yuga's pretext argument aimed at undermining the legitimacy of Defendants' speech activity and their First Amendment defenses.

*Third*, evidence concerning the truthfulness of Mr. Ripps and Mr. Cahen's criticism and Yuga's campaign to discredit the Defendants is also relevant to Defendants' anti-SLAPP defense.  At summary judgment, Defendants may file a renewed motion to strike under California's anti-SLAPP statute.  California's anti-SLAPP statute is "designed to discourage suits that masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights

or to punish them for doing so." *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (further holding that "free speech under the United States Constitution" is among the protected rights).

Courts in this jurisdiction have a policy in favor of granting discovery when a motion at the summary judgment stage involves "latent fact issues such as motive, intent, knowledge, or credibility[.]" *Rogers v. Home Shopping Network, Inc.*, 57 S. Supp. 2d 973, 981 (C.D. Cal. 1999). Defendants' discovery requests concern these kinds of latent issues relevant to any anti-SLAPP motion Defendants may choose to file. Specifically, evidence relating to the truthfulness of Yuga's use of racist and neo-Nazi imagery would show that this case is a SLAPP suit because it would reveal Yuga's motivation and intent to silence the Defendants. Simply put, if the RR/BAYC project's criticism of Yuga's racist imagery is true, then continuation of that criticism would eventually expose Yuga's impropriety as a company to consumers, investors, and business partners. *See Burke v. Basil*, 8:20-cv-00635-JVS-JDEx, 2020 WL 7872965, at *2-3 (C.D. Cal. Nov. 16, 2020) (granting discovery on truthfulness of a party's misconduct as relevant to motive). In a similar vein, discovery into Yuga's campaign against the Defendants would show a pattern of behavior aimed at silencing the Defendants and that this lawsuit "masquerades" as a trademark action only to further attack Mr. Ripps and Mr. Cahen's speech activity.

**Fourth**, Yuga has failed to articulate a reasonable basis for withholding materials and information relating to Yuga's use of racist and neo-Nazi imagery. During the parties' November 28, 2022, meet and confer, Defendants repeatedly explained that Yuga must fulfill its discovery obligations relating to Defendants' First Amendment defenses otherwise it will be precluded from disputing Yuga's use of racist and neo-Nazi imagery. Gosma Decl., Ex. 8 (Dec. 1, 2022, Nikogosyan Letter to Thomas) at 2. Yuga disagreed and cited *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1992 (9th Cir. 2017) to argue that Yuga's pretext counterargument does not create discovery obligations relating to the veracity of

speech activity.  Gosma Decl., Ex. 8 at 2.  But *Twentieth Century* did not involve any criticism and the trademark holder did not dispute the truth and credibility of the alleged infringer's speech activity.  *Twentieth Century*, 875 F.3d at 1996-97.  Thus, this lawsuit is fundamentally different from *Twentieth Century* because Yuga itself plans to attempt to disprove Mr. Ripps and Mr. Cahen's First Amendment defenses by disputing at trial the truth and credibility of the RR/BAYC project's criticism.

*Lastly*, for the convenience of the Court, below is a request-specific explanation of how Mr. Ripps and Mr. Cahen's discovery requests are essential to Defendants' First Amendment defenses (either for truthfulness of Defendants' criticism or Yuga's campaign against the Defendants):

- <u>Interrogatory No. 14</u> seeks information relating to Yuga's campaign to against the Defendants by asking Yuga to identify and describe all its activities made in response to criticism for Yuga's use of racist and neo-Nazi imagery.

- <u>Document Request No. 5</u> seek information relating to Yuga's campaign to against the Defendants because it requests all non-privileged materials relating to Yuga's decision to file this action.

- <u>Document Request No. 7</u> seeks information relating to Yuga's campaign to against the Defendants because it requests materials disclosing Yuga's relationships with persons or entities involved in responding to criticism of Yuga's use of racist and neo-Nazi imagery.

- <u>Document Request No. 8</u> seeks information relating to Yuga's campaign to against the Defendants because it requests materials involving any person or entity that Yuga worked with to respond to criticism of Yuga's use of racist and neo-Nazi imagery.

- <u>Document Request No. 9</u> seeks information relating to Yuga's campaign against the Defendants because it requests materials relating to Yuga's efforts to disprove or silence persons or entities commenting on Yuga's use

of racist and neo-Nazi imagery.

- <u>Document Request No. 32</u> seeks information on the truthfulness of Defendants' criticism because it requests materials relating to the Yuga's co-founders activities on digital platforms relating to criticism of Yuga, Defendants, or the Defendants' conceptual art project.

- <u>Document Request No. 33</u> seeks information on the truthfulness of Defendants' criticism because it requests the public usernames for Yuga co-founders for digital platforms that include anonymous posts involving the same racist messages and imagery that is embedded in Yuga and Yuga's products.

- <u>Document Request No. 34</u> seeks information on the truthfulness of Defendants' criticism because it requests materials relating to Yuga's efforts to scrub the internet of evidence showing that Yuga or its co-founders used racist messaging and imagery.

- <u>Document Request No. 39</u> seeks information on the truthfulness of Defendants' criticism because it requests materials that include either (1) terms relating to Defendants' criticism of Yuga or (2) unique terms common in contemporary neo-Nazi and white supremacist lexicography.

- <u>Document Request No. 51</u> seeks information on the truthfulness of Defendants' criticism because it requests materials from Yuga's co-founders that relate to racist messaging and imagery.

- <u>Document Request No. 53</u> seeks information on the truthfulness of Defendants' criticism because it requests materials disclosing any association between the Yuga's co-founders and any racist groups.

Accordingly, Defendants request that the Court compel Yuga to provide a supplemental response to Interrogatory No. 14 and make full productions under Document Requests Nos. 5, 7-9, 32-24, 39, 51, and 53.

## 2.    Yuga Labs' Position

Judge Walter has held that "the *Rogers* test does not apply" in this case.  Order at 6.  Judge Walter also held that, after considering Defendants' threshold attempt to show that the Complaint arises from Defendants' free speech, that "Plaintiff's claims do not arise out of Defendants' attempts to publicize and criticize Plaintiff's purported use of racist, neo-Nazi, or alt-right dog whistles."  *Id.* at 11.  In light of Judge Walter's December 16 Order, these issues are moot: none of the discovery Defendants seek into their efforts to spread Inflammatory Material through their concocted and malicious claims is relevant to this trademark litigation.  *See, e.g., DC Comics v. Towle*, No. CV-11-03934-RSW-LOPX, 2012 WL 12884442, at *2 (C.D. Cal. Aug. 29, 2012) (denying motion to compel where plaintiff sought production regarding the "entirety" of the copyrighted subject matter while the legal standard required plaintiff to only establish the "overall concept and design or look and feel of the copyrighted works").

Judge Walter explained that, even accepting "Defendants' argue[ment] that the larger RR/BAYC 'project' is an expressive artistic work protected by the First Amendment," Defendants' activity "does not constitute an expressive artistic work protected by the First Amendment."  Order at 6.  Defendants' "admitted[]" promotion and sale of NFTs by infringing on Yuga Labs' trademarks does not "express an idea or point of view"; Defendants' actions at issue in this litigation "are all commercial activities designed to sell infringing products, not expressive artistic speech protected by the First Amendment."  *Id.* at 6–7.  In other words, "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag, making the *Rogers* test inapplicable."  *Id.* at 7.  Judge Walter further held, after considering Defendants' evidence (*id.* at 2 n. 1), that "Defendants' use of the BAYC Marks is not artistically relevant to Defendants' 'art,'" and "Defendants' use of the BAYC marks is explicitly misleading."  *Id.* at 6-7.  Finally, Judge Walter noted that "Defendants concede that the Ape Market contained no speech – artistic or otherwise – because it

'never had any content.'"  *Id.*  Defendants offer no evidence or argument in their stipulation that could impact that holding.

Defendants' other defenses were similarly rejected outright, as a matter of law, by Judge Walter.  "In this case, the Court concludes that Defendants' use of the BAYC Marks does not constitute nominative fair use.  Defendants are not using the BAYC Marks to sell Plaintiff's BAYC NFTs, but to sell their own competing RR/BAYC NFTs."  *Id.* at 8.  Defendants have admitted that core fact.  *See* Thomas Decl. Exhibit 3 (Defendants' Motion to Strike (ECF No. 48)) at 14-16 (admitting "the RR/BAYC project uses the asserted trademarks to express criticism"), 18 ("Mr. Ripps's used BAYC's marks"), 19 ("Mr. Ripps has been clear that RR/BAYC serves this goal by using the asserted marks").  And, because "Plaintiff's claims are limited to and arise out of Defendant's unauthorized use of the BAYC Marks for commercial purposes," Yuga Labs' claims "do not arise out of Defendants' attempts to publicize and criticize Plaintiff's purported use of racist, neo-Nazi, or alt-right dog whistles."  Order at 11.

Defendants nonetheless moved forward with their motion for discovery into these topics, blatantly ignoring the Court's order and stating "their First Amendment defense will be among the expected central issues at trial."  That is not so; Defendants' attempt to derail this trademark infringement case with their side show no longer has any good-faith basis (to the extent it ever had one).  These requests from Defendants have no relevance to any remaining claim or defense in this litigation because Judge Walter's Order decidedly narrowed the scope of the case.

But, even before Judge Walter's Order on this topic, Defendants have been unable to articulate a basis for obtaining discovery from Yuga Labs about Defendants' efforts to spread their own Inflammatory Material.  Defendants provide no authority that the extent to which their own Inflammatory Material is false is an element of a *Rogers* or First Amendment defense; it is not.  This is not a sprawling defamation case; it is a straightforward trademark case.

Just as troubling, Defendants' requests for Yuga Labs to boil the ocean in search of materials that Defendants might perceive to be "racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial" are patently overbroad, not proportionate to the needs of the case, and unduly burdensome.  Defendants have made their inflammatory statements without factual support, and they are hoping that a scorched-earth search of Yuga Labs' documents will reveal something that they can further twist as part of their false and fantastical claims.  They are attempting to hijack the discovery process to further promote the Counterfeit NFTs, delay this litigation while they profit from sales of their Counterfeit NFTs, and drive social media engagement to further those infringing sales.  Defendants offered no discovery compromise; nor could they, because their objective with the discovery requests is not to defend against any element of a trademark infringement claim, but to harass Yuga Labs and its employees and sell more Counterfeit NFTs.  Thus, Yuga Labs properly objected to Defendants' discovery into Defendants' Inflammatory Material.

Taking Defendants' arguments in turn:

**First**, Yuga Labs' response to Defendants' attempt at a *Rogers* defense is foremost that Defendants' commercial sales of the Counterfeit NFTs is not "art" and, as the Court has already held, *Rogers* does not apply.  *See e.g.*, Thomas Decl. Exhibit 4 (Opposition to Motion to Strike ("Opp.") (ECF No. 53)) at 7–8; Order at 6.  But, even if Defendants' commercial sales of the Counterfeit NFTs are somehow artistic, Defendants' *use* of Yuga Labs' BAYC Marks is not artistically relevant to that supposed art.  *See e.g.,* Opp. at 13; Order at 7.  The issues of what is and is not art and whether the use of Yuga Labs' BAYC Marks is somehow relevant to that supposed art are fact issues to be proven, or not, by Defendants' own evidence.  Judge Walter already concluded that Defendants' theories of what their evidence will show cannot, as a matter of law, prove either issue.  Yuga Labs will also show that Defendants' commercial sales of the Counterfeit NFTs are explicitly misleading.  *See*

*e.g.,* Opp. at 13; Order at 7.  This, issue, too, requires none of the abusive discovery Defendants seek from Yuga Labs.  Rather it is Defendants that are perpetuating the misleading activity that confuses consumers.  Similarly, Defendants' use of BAYC Marks is not nominative fair use because, among other things, Defendants are not using the BAYC Marks to sell authentic BAYC NFTs.  *See e.g.*, Opp. at 18; Order at 8.  So, as explained in unequivocal terms in Yuga Labs' opposition to the motion to strike and in Judge Walter's order denying that motion, the extent to which Defendants' Inflammatory Material is false is not one of the issues Judge Walter and the jury need to consider in this case.

Defendants' position comes down to an argument that if Yuga Labs has denied a public lie told by Defendants, that issue can be explored in discovery in this trademark case about Defendants' heavily commercial sales of the Counterfeit NFTs. Defendants are wrong to claim that because Yuga Labs' founders have publicly denied they are Nazi's or racists and because Yuga Labs' legal position in this case is that the falsity of Defendants' Inflammatory Material is irrelevant to this trademark infringement action, Yuga Labs has "inject[ed] the veracity and accuracy of Mr. Ripps and Mr. Cahen's criticisms into this case."  Defendants have repeatedly failed to identify any element of a claim or defense in this case that relies on the fact that Yuga Labs is not, as the Defendants claim, secretly broadcasting pro-Nazi messages. A knockoff handbag peddler in a trademark infringement case cannot seek discovery from the genuine manufacturer into the fantastical theories he has pitched to his customers any more than Defendants can legitimately defend against Yuga Labs' trademark claims by trying to turn this case into a trial about their fringe beliefs.  That handbag peddler (and Defendants) *certainly* is not entitled to discovery from the legitimate seller (Yuga Labs) about what that legitimate seller thinks about those false claims.

Defendants get it backward by saying that Yuga Labs intends to dispute the truthfulness of Defendants' criticisms at trial, and therefore Defendants can seek

discovery into the substance of any such criticism.  Defendants' criticism is not an element of any of Yuga Labs' claims.  To the extent Defendants intend to argue that they genuinely believed the content of their criticism, and it was not a pretext for their heavily commercial infringement of Yuga Labs' trademarks, the credibility of the genuineness of those beliefs lies entirely with Defendants.  Defendants know this; the same day that Defendants served this stipulation, their counsel told the press that "what Ryder was criticizing here was ***what he perceived*** as incredibly offensive, racist and neo-Nazi imagery and that that is an important part of the case."  Thomas Decl. Exhibit 13 (emphasis added).  Ripps' perception (and Cahen's, although Defendants generally do not argue that he engaged in protected speech) is known only to Ripps and can be proven only by his testimony and evidence.  *Rogers* does not rise and fall with the truth of the speaker's criticism, and this is transparently yet another effort by Defendants to harass Yuga Labs and litigate a non-existent defamation claim.

**Second,** Judge Walter already held that Defendants have not made even a *prima facie* showing that this lawsuit arises out of protected speech.  Order at 9-10.  Despite the Defendants' failure to meet this low bar, they continue to harass Yuga Labs with irrelevant discovery.

Defendants' allegedly protected speech must form at least part of the basis of Plaintiff's claims in order to prevail on an anti-SLAPP motion.  *Navellier*, 29 Cal. 4th 82, 89 (holding "that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such . . . [T]he critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity"); *City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002) ("[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity")."  Order at 10-11.  "In this case, the Court concludes that Plaintiff's claims do not arise out of Defendants' attempts to publicize and criticize Plaintiff's purported use of racist, neo-Nazi, or alt-right dog whistles. Indeed, despite

Ripps's public criticism of Plaintiff's use of purportedly racist, neo-Nazi, and alt-right dog whistles since approximately November 2021 through Twitter, Instagram, podcasts, and the website gordongoner.com, Plaintiff has not brought claims against Defendants for defamation, slander, or libel. Instead, Plaintiff's claims are limited to and arise out of Defendant's unauthorized use of the BAYC Marks for commercial purposes." *Id.* at 11. Thus, Judge Walter has already held, as a matter of law, that what Defendants allege was their protected speech does not form a basis of Plaintiff's claims. Because Defendants' supposed expression does not form a basis for Plaintiff's claims, there is no relevance to permitting discovery into how Yuga Labs decided to sue Defendants.

**Third**, eve after Judge Walter denied Defendants' anti-SLAPP motion, Defendants suggest they will file a successive anti-SLAPP motion on substantially the same grounds. This is meritless. "Nothing in the structure or the history of the California anti-SLAPP statute countenances this approach." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 714–15 (N.D. Cal. 2019), *aff'd*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022). Rather, "[o]nce the plaintiff's case has survived the motion, the anti-SLAPP statute no longer applies . . . ." *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003), *superseded in part by statute on other grounds*. Additionally, in federal court, a Rule 12(f) motion to strike is not permitted after a party files its answer. Fed. R. Civ. P. 12(f)(2). Defendants presumably agree that Judge Walter's order doomed their anti-SLAPP defense, because they have filed a notice of appeal of that decision. Thomas Decl. Exhibit 7.

Ignoring all of these realities, Defendants suggest they can resuscitate their failed anti-SLAPP motion by proving that Yuga Labs actually brought this litigation for reasons other than trademark infringement. The anti-SLAPP statute already accounts for this by requiring a defendant to prove that a plaintiff's case arises from protected activity *and* lacks minimal merit. A meritorious case, whatever the

motivation in bringing it, is not subject to being stricken by the anti-SLAPP statute. Here, in denying Defendants' motion, Judge Walter held that they failed at the threshold step of the anti-SLAPP analysis, because Defendants could not even make a *prima facie* case that Yuga Labs' claims arose from Defendants' purported speech. Order at 11. The anti-SLAPP statute does not apply to Yuga Labs' trademark claims. And Defendants are not entitled to any discovery on this issue given the holding that Yuga Labs' claims arise out of "Defendant's unauthorized use of the BAYC Marks for commercial purposes." *Id.*

Defendants cite *Burke v. Basil*, 8:20-cv-00635-JVS-JDEx, 2020 WL 7872965 (C.D. Cal. Nov. 16, 2020) in support of their requests. That case involved requests for admission, which are not at issue in Defendants' motion. In any event, Defendants' characterization of that case as "granting discovery on truthfulness of a party's misconduct as relevant to motive" is misleading. The plaintiff in that case sought to compel further responses to its requests for admission, which related to a claim for "negligent and intentional infliction of emotional distress allegedly arising from a false accusation of sexual abuse made by" the defendant. *Id.* at *1. The plaintiff's discovery requests at issue there concerned "a non-fraternization policy" and the "existence of improper contacts between [Defendants'] staff and students prior to Plaintiff's complaints." *Id.* at *2. The court found those requests to be relevant to plaintiff's "theory of motive underlying his claims" that defendants falsely accused him. *Id.* In other words, the "motive" at issue in that case was the defendant's potential motive to commit the tortious act; the court accepted that the defendant's potential "motive" making a false accusation was relevant evidence of whether the defendant indeed made a false accusation as plaintiff claimed, thereby inflicting emotional distress. *Burke* has nothing to do with documents about a party's motive for bringing a lawsuit. Instead, *Burke* is about what discovery a plaintiff can get into the defendant's motives for the defendant's actions. That's classic intent discovery. And any discovery into the defendant's intent for their actions is in

defendant's possession.   Conversely here, Yuga Lab's motivation for suing Defendants is not relevant to any element of any of Yuga Labs' claims.  Defendants tellingly cite no authority that motive in bringing a lawsuit is relevant to an anti-SLAPP motion — especially where, as here, the lawsuit has sufficient merit to overcome the motion.[6]  This argument too is meritless.

**Fourth**, Defendants put the burden of resisting discovery into irrelevant issues onto Yuga Labs.  Not so.  "[T]he party seeking discovery carries the burden of showing that the requested information is relevant and why any objections lack merit."  *Caravan Canopy Int'l, Inc v. Home Depot USA, Inc.*, No. 8:19-01072 PSG (ADS), 2020 WL 5985411, at *3 (C.D. Cal. Oct. 7, 2020) (granting motion to compel in part and denying in part where defendant failed to provide specific evidence regarding burden of producing the requested evidence).  Defendants have failed to do so, and Judge Walter's order confirms that Defendants' request are going down the wrong road.

**Finally**, Defendants admit in their position statement that each request at issue in this set is relevant only to (1) "truthfulness of Defendants' criticism" or (2) "Yuga's campaign against the Defendants."  In other words, Defendants admit that their requests are not relevant to whether they used the BAYC Marks in the heavily commercial sales of the Counterfeit  NFTs, whether their use of the BAYC Marks are likely to confuse consumers, or whether their use of the BAYC Marks have harmed Yuga Labs, which are the remaining issues for trial on Yuga Labs' trademark infringement claims.

Defendants also try to support their request for more documents by mischaracterizing their paltry efforts to comply with their discovery obligations.  As

---

[6] This result makes sense in view of the anti-SLAPP statute's framework in which cases will not be stricken where there is a "probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1).  A defendant does not attain immunity from civil liability for all causes of action merely by claiming to have offended a plaintiff with protected speech.

of the date Defendants served their joint stipulation on Plaintiff, Defendants had produced fewer than 100 documents in this litigation, consisting almost entirely of public materials (all but six documents).[7]  As of the date of Defendants' service of this stipulation, it had been *160* days since Yuga Labs served its initial discovery requests, for almost all of which Defendants had produced nothing.  The "10,945 confidential communications" Defendants purport to have produced are actually a single spreadsheet consisting of obscured messages from Defendants' group chat with the two software developers who helped them create the Counterfeit NFTs, as detailed in the motion to compel that Yuga Labs intends to file.  Defendants still refuse to produce that group chat in a usable format and Defendants exclude many key and relevant communications from the spreadsheet they produced, which Yuga Labs describes in the joint stipulation on its discovery issues.[8]  In fact, one of the developers produced a more complete copy of that group chat than did Defendants themselves, which is how Yuga Labs knows of Defendants' attempts to conceal this evidence.

During the Parties November 28, 2022 meet and confer, when pressed on their promises but failure to produce documents Defendants committed to producing the "lion's share" of their documents by December 1, 2022 (Tompros Decl., Exhibit 9 at 2), but have still failed to comply with discovery as to nearly every issue Yuga Labs has raised.  Now, only after Yuga Labs served papers in support of its motion to compel and its second Local Rule 37-1 letter, Defendants reversed course and promised to really produce responsive documents on December 23, 2022.  Thomas Decl. ¶ 19.  Then, when they did make that production, they indicated again that it was still not complete and that more materials are forthcoming.  Thomas Decl. ¶ 16.

---

[7] On the afternoon of December 23, 2022, Defendants served a supplemental document production which Yuga Labs is assessing.  Based on the categories of documents Defendants represented are contained in that production, it is obvious that Defendants continue to withhold the most relevant materials from Yuga Labs.

[8] Notably, Defendants' production on December 23 did not correct these omissions.

Defendants' eve of Christmas production three weeks after their "lion's share" production was promised to resolve these disputes is but one indication of their bad-faith, minimal participation in discovery.[9]  Defendants' purported urgency to move discovery along while delaying at every juncture (and while seeking a stay of these proceedings, Thomas Decl. ¶ 17) is not an accurate picture of their conduct throughout this litigation.

By contrast, Yuga Labs has produced nearly 12,000 documents consisting of over 29,000 pages – even excluding materials Yuga Labs has obtained from third parties and reproduced to Defendants.   Regardless though, the volume of each Parties' document productions is not a touchstone for whether the Court should order Yuga Labs to search for other irrelevant, harassing, overbroad, unduly burdensome and non-proportional documents, such as anonymous social media posts by Yuga Labs' founders (RFP 34), the terms "Milady" or "Charlie" in "all" of Yuga Labs' documents (RFP 39), or documents related any number of racist groups (RFP 53). Yuga Labs objects to Defendants' continued abuses of the discovery process to spread false and fantastical claims all in an attempt to harass Yuga Labs and advertise their Counterfeit NFTs. Notably, Defendants have earned more than $100,000 in revenue since the inception of this trademark action.

The Court should sustain Yuga Labs' objections to Defendants' discovery related to their Inflammatory Material and order that Yuga Labs does not need to respond further.

**B.    Interrogatory No. 2 (All persons involved in creating BAYC NFTs)**

Interrogatory No. 2:

Identify all persons who were or are responsible for or participating in the conception or creation of the BAYC NFTs and the Asserted Marks.

---

[9] As but one of many obvious examples, Defendants still have not produced the documents showing who registered the two domains at issue in Yuga Labs' cybersquatting cause of action (third cause of action), when those registrations took place, and what the intent was behind the registrations.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this interrogatory as vague and overbroad as to the terms "responsible for," "participating in," "conception," and "creation." Yuga Labs objects to this interrogatory as overbroad, unduly burdensome, and seeking information that is irrelevant, immaterial, and not proportional to the needs of this case to the extent it asks Yuga Labs to identify "all persons"; Yuga Labs will provide identifications that are representative, proportionate, and sufficient for the needs of the case. Yuga Labs objects to this interrogatory as irrelevant and overbroad to the extent it seeks information regarding the "conception and creation" of its BAYC NFT collection. Yuga Labs objects to this interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this interrogatory to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

Yuga Labs further objects to this interrogatory to the extent it contains subparts, or a compound, conjunctive, or disjunctive question, and will treat each discrete subpart as a separate interrogatory against the limit of interrogatories for Defendants in this case. Yuga Labs interprets this interrogatory to consist of at least two separate requests: (1) "all persons who were or are responsible for or participating in the conception or creation of the BAYC NFTs" and (2) "all persons who were or are responsible for or participating in the conception or creation of . . . the Asserted Marks."

Subject to and without waiving the foregoing objections, Yuga Labs states that representatives of Yuga Labs and a third-party engaged by Yuga

Labs participated in the design or creation of the Asserted Marks. Subject to an appropriate protective order, Yuga Labs will amend its response to provide the names of such individuals.

### 1. Mr. Ripps and Mr. Cahen's Position

Interrogatory No. 2 seeks the identity of all persons and entities involved in the creation of Yuga's Bored Ape Yacht Club ("BAYC") NFT collection and the trademarks associated with Yuga's NFT collection. Mr. Ripps and Mr. Cahen made this request because all individuals involved in the creation of BAYC NFTs and the asserted trademarks are likely to have unique knowledge and information regarding the creation of BAYC NFTs and Yuga's trademarks and products, including rights in the BAYC NFTs and corresponding marks that were or were not lawfully transferred to Yuga. This interrogatory further seeks the names of all artists involved in creating the images associated with BAYC NFTs as those artists would have unique information involving (1) the creation or implementation of any of the asserted marks in the BAYC digital images, (2) whether Yuga lawfully acquired rights in the digital images these artists created, and (3) the circumstances in which racists traits were systematically added to the BAYC digital images.

During our November 28, 2022, meet and confer, Yuga agreed to supplement this interrogatory by identifying documents that disclose all individuals involved in the creation of BAYC NFTs (including the corresponding digital images) and the trademarks asserted in this litigation. Gosma Decl., Ex. 8 (Dec. 1, 2022, Nikogosyan Letter to Thomas) at 3. However, Yuga then engaged in dilatory tactics to avoid its discovery obligations. Specifically, Yuga promised that it would make supplemental productions and supplemental interrogatory responses well before the holidays in December. *Id*. at 1. But instead, Yuga waited weeks before responding to Defendants' December 1, 2022, follow up letter and indicated in its response that Defendants should continue to wait for Yuga to fulfill its promise. As of December

19, 2022, Yuga has not produced any documents much less any supplemental response to Interrogatory No. 2.

Courts in this district have made clear that "counsel are expected to cooperate with each other ... to facilitate the exchange of discoverable information, and to reduce the costs of discovery." *Edge Sys. LLC v. Ageless Serums LLC*, No. 20-cv-9669-FLA-PVCx, 2022 WL 2093850, at *7 (C.D. Cal. Feb. 1, 2022) (further holding "[c]ounsel should respond to an email or telephone message from opposing counsel within a reasonable amount of time"). Yuga violated these rules by engaging in dilatory tactics aimed at evading discovery obligations. Yuga has waited weeks to respond to correspondence to delay and disregard its own commitments to produce responsive materials. This is discovery gamesmanship prohibited under Federal Rule of Civil Procedure 34. *See Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, at 311 (C.D. Cal. 2020) ("The 2015 Amendments to Rule 34 … marked an intentional break from the discovery gamesmanship of the past[.]").

Defendants accordingly request that this Court compel Yuga to fulfill its November 28, 2022, promise by (1) producing documents identifying all individuals by first and last name and all entities involved in the creation of BAYC NFTs, digital images associated with BAYC NFTs, and the asserted trademarks and (2) a supplemental response providing bates numbers for all responsive documents and providing any names that are not disclosed in Yuga's document production.

### 2. Yuga Labs' Position

At the Parties' meet and confer on November 28, 2022, Yuga Labs agreed to supplement this response before the New Year. On December 15, 2022, Yuga Labs confirmed in writing that promise to supplement, and it did supplement its response six days later, on December 21, 2022 to identify who participated in the design and creation of the asserted trademarks. Defendants admit that Yuga Labs made these assurances. And, yet, they rushed this issue to the Court. To the extent that Defendants contend this issue is not mooted by Yuga Labs' supplemental responses,

they have presented no argument for why the information they have received is insufficient.   This is especially true when Defendants have admitted to using the asserted marks, and there is no question that Defendants' marks are intentionally using Yuga Labs' marks.   *See* Thomas Decl. Exhibit 3 (Defendants' Motion to Strike (ECF No. 48)) at 14-16 (admitting "the RR/BAYC project uses the asserted trademarks to express criticism"), 18 ("Mr. Ripps's used BAYC's marks"), 19 ("Mr. Ripps has been clear that RR/BAYC serves this goal by using the asserted marks"); *see also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432, 434 (9th Cir. 2017) ("[I]dentical marks paired with identical goods can be case-dispositive" and "choosing a designation with knowledge that it is another's trademark permits a presumption of intent to deceive"), *abrogated on other grounds*; *Toyo Tire USA Corp. v. Mandala*, No. 8:20-CV-502-JLS-KES, 2020 WL 5371513, at *4 (C.D. Cal. Aug. 4, 2020) ("No in depth analysis is required" where "'virtually identical' marks are used with 'identical products or services'"); 4 McCarthy on Trademarks and Unfair Competition § 23:20 (5th ed.) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' . . . ."). The history of the asserted marks is therefore irrelevant when there is no dispute that Defendants are using the asserted marks to sell the Counterfeit NFTs.   Yuga Labs stands behind its objections that this interrogatory is overbroad, unduly burdensome, and seeking information that is irrelevant, immaterial, and not proportional to the needs of this case to the extent it asks Yuga Labs to identify "all persons."

## C.   Requests for Production No. 48 (Yuga's damages)

<u>Document Request 48:</u>

All Documents, audited or un-audited, sufficient to show Yuga's revenues, profits, and losses from inception to present in relation to BAYC NFTS, including but not limited to all income statements, balance sheets, and cashflow statements.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as not relevant to any claim or defense and overbroad. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents" where a subset of documents would be sufficient, should any response be required. Yuga Labs will not produce documents in response to this objectionable and irrelevant request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

## 1.    Mr. Ripps and Mr. Cahen's Position

Document Request No. 48 seeks information and materials relating to damages.  Specifically, these discovery requests seek information and materials that would be used in a damages analysis for Yuga's trademark infringement claims. Those materials include, for example, materials that document (1) Yuga's change in revenue since the release of Mr. Ripps and Mr. Cahen's conceptual art project, (2) costs associated any corrective advertising made to avoid consumer confusion, (3) royalties that Yuga typically receives for its trademarks, (4) loss of goodwill for the

BAYC NFT collection, and (5) any other materials that memorialize Yuga's damages.

On November 28, 2022, Yuga agreed to provide a production under Document Request No. 48 well before the holidays in December. Gosma Decl., Ex. 8 (Dec. 1, 2022, Nikogosyan Letter to Thomas) at 1, 3. But, as noted earlier, Yuga waited weeks before responding to Defendants' December 1, 2022, and then indicated that Defendants should continue to wait for Yuga's production. As of December 19, 2022, Yuga has produced no documents under Document Request No. 48.

Yuga's behavior is improper gamesmanship aimed at unnecessarily delaying discovery productions as means to the prejudice of Mr. Ripps and Mr. Cahen ability to have adequate time to prepare for depositions, take further discovery, and prepare its expert reports. *See Edge Sys. LLC*, 2022 WL 2093850, at *7 ("counsel are expected to cooperate with each other ... to facilitate the exchange of discoverable information, and to reduce the costs of discovery"); *see NW Pipe Co. v. DeWolff, Boberg & Ass., Inc.*, No. 10-cv-0840-GHK-DTB, 2012 WL137585, at *4 (C.D. Cal. Jan. 17, 2012) ("The Ninth Circuit has made clear that late disclosure of information required under Rule 26(a) is not harmless[.]"); *see also Infanzon.*, 335 F.R.D. at 311 ("The 2015 Amendments to Rule 34 ... marked an intentional break from the discovery gamesmanship of the past[.]").

Accordingly, Defendants request that this Court compel Yuga to fulfill its November 28, 2022, promise by producing all materials documenting changes in revenue, costs associated with corrective advertising relating to the RR/BAYC project, royalties Yuga typically receives for its trademarks, loss of goodwill, and any other documents relating to damages.

## 2.    Yuga Labs' Position

At the Parties' meet and confer on November 28, 2022, Yuga Labs agreed to supplement this response before the New Year. On December 15, 2022, Yuga Labs' confirmed in writing that promise to supplement, and it did supplement its response

six days later, on December 21, 2022 with further financial information.  Defendants admit that Yuga Labs made these assurances.  And, yet, they rushed this issue to the Court, wasting the parties' and the Court's time on an issue that is now moot.  To the extent that Defendants contend this issue is not mooted by Yuga Labs' supplemental responses, they have presented no argument for why the information they have received is insufficient.

### D.   Request for Production No. 17 (Yuga's document retention policy and practices)

Document Request No. 17:

All Documents and Things relating to Yuga's past and present procedures and policies for generating, maintaining, retaining, and disposing of Documents and Things (whether maintained in paper form or by other storage methods, such as electronically stored information).

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as overbroad, not relevant to any claim or defense and not proportionate to the needs of the case because Yuga Lab's "procedures and policies" sought by this request are not at issue in this litigation. Yuga Labs will not produce documents in response to this objectionable and irrelevant request, and Yuga Labs' objections are not a representation that any responsive documents exist. Yuga Labs objects to this request as seeking disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

### 1. Mr. Ripps and Mr. Cahen's Position

Document Request No. 17 requests production of materials relating to Yuga's document retentions procedures and policies. Mr. Ripps and Mr. Cahen served this document request to learn what discoverable materials exist, where they can be found, and whether Yuga has destroyed any responsive materials prior to distributing a litigation hold notice. Yuga initially refused to produce documents under this request, stating at the November 28, 2022, conference that it is withholding documents because this request is irrelevant for generally seeking Yuga's document retention practices. Gosma Decl., Ex. 8 (Dec. 1, 2022, Nikogosyan Letter to Thomas) at 4-5.

In response, Mr. Ripps and Mr. Cahen explained in a December 1, 2022, letter that it is well-established that discovery requests relating to document retention policies are within the scope of discovery in nearly all civil cases because they are likely to lead to discoverable information and admissible evidence. Gosma Decl., Ex. 8 (Dec. 1, 2022, Nikogosyan Letter to Thomas) at 4-5 (citing *Poulos v. City of Los Angeles*, No. 2:19-cv-00496-MWF-AFMx, 2020 WL 8509663, at *3 (C.D. Cal. July 15, 2020) ("In civil litigation, document retention policies are generally discoverable."); *Elkin v. New York Life Ins. Co.*, No. 16-cv-08703-DSF(AFMx), 2017 WL 4047235, at *3 (C.D. Cal. Sept. 8, 2017) (granting discovery into defendant's document retention policy as it is "likely to provide information concerning what documents should be found"); *In re Plascencia*, No. 08-cv-56305-ASW, 2012 WL 2161412, at *8 (N.D. Cal. June 12, 2012) (granting motion to compel discovery on document retention policy because it "may lead to admissible evidence")).

Two weeks later, Yuga changed its position and stated that it will produce documents "sufficient to show its general document retention policies." Gosma Decl., Ex. 9 (December 15, 2022, Thomas Letter to Nikogosyan) at 7. Again, this was another tactic by Yuga aimed at delaying the production of materials that are

undisputedly within the scope of discovery.  *See Edge Sys. LLC*, 2022 WL 2093850, at *7 ("counsel are expected to cooperate with each other ... to facilitate the exchange of discoverable information, and to reduce the costs of discovery").  To no surprise, as of December 19, 2022, more than 100 days after Defendants served this request, Yuga has still not produced the materials it is obligated to produce.  Thus, Mr. Ripps and Mr. Cahen request that this Court compel production of Yuga's document retention policy and practices.

### 2.    Yuga Labs' Position

Defendants clarified in the parties' meet and confer correspondence that they did not seek privileged material in this request, but only non-privileged, written document retention policies in place prior to this litigation.  Tompros Decl. Exhibit 5.  Defendants make this request even though they represented to the Court that they were not "aware of any unique issues concerning the disclosure, discovery, or preservation of electronically stored information."  Thomas Decl. Exhibit 9.

Nevertheless, as Yuga Labs told Defendants it would do, it has supplemented its discovery responses to address Defendants' dispute with Request for Production No. 17.  *See* Thomas Decl. Exhibit 1.  In particular, Yuga Labs has located no responsive documents concerning document retention policies in place "prior to distributing a litigation hold notice."  Once again, Defendants rushed to this Court on an issue that is now moot and which they had just been told would be moot.  To the extent that Defendants contend this issue is not mooted by Yuga Labs' supplemental responses, they have presented no argument for why the information they have received is insufficient.

### E.    Requests for Production Nos. 28 and 29 (documents on lack of consumer confusion)

Document Request No. 28:

All Documents and Communications in which any person or entity, including but not limited to Yuga's consumers and/or BAYC collectors,

distinguishes or differentiates RR/BAYC NFTs from BAYC NFTs.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as vague, ambiguous, and unintelligible. Yuga Labs objects to this request as calling for a legal conclusion. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" where a subset of documents would be sufficient, should any response be required. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information. Yuga Labs objects to the extent that the requested documents are equally available to Defendants from other sources that are more convenient, less burdensome and/or less expensive, particularly to the extent the information sought is publicly available.

Subject to and without waiving the foregoing objections, and subject to an appropriate protective order, Yuga Labs will produce non-privileged, relevant, responsive documents within its possession, custody, or control, if any, located after a reasonable search proportional to the needs of the case sufficient to show representative instances of confusion caused by Defendants' use of the Asserted Marks.

Document Request No. 29:

All Documents and Communications relating to any research on

consumers distinguishing RR/BAYC NFTs from BAYC NFTs, including but not limited to surveys, market studies, data collection/analytics, and analyses from third-parties, agencies, firms, or other entities.

Response:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as calling for a legal conclusion. Yuga Labs objects to this request as a premature demand for expert discovery and an expert report; Yuga Labs will produce any expert evidence regarding damages as required by Fed. R. Civ. P. 26(a)(2). Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Communications" where a subset of documents would be sufficient, should any response be required. Yuga Labs objects to this request as calling for information not in Yuga Labs' possession, custody, or control. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

Subject to and without waiving the foregoing objections, and subject to an appropriate protective order, Yuga Labs will produce non-privileged, relevant, responsive documents within its possession, custody, or control, if any, located after a reasonable search proportional to the needs of the case sufficient to show representative instances of confusion caused by Defendants' use of the Asserted Marks.

### 1.  Mr. Ripps and Mr. Cahen's Position

Document Requests No. 28 and 29 seek materials relating to instances where consumers have distinguished Yuga's BAYC NFTs from Defendants' RR/BAYC NFTs and any research relating to consumers making those distinction.  Mr. Ripps and Mr. Cahen served these document requests because they directly pertain to the issue of consumer confusion, which is an element of Yuga's trademark-related claims.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …"); *see also Lawless v. S.E.C.*, 5:21-cv-1637-JWH (SP), 2022 WL 2784771, at *2 (C.D. Cal. May 20, 2022) ("A 'relevant matter' under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Yuga initially refused to produce such material and instead committed to only produce "representative instances of confusion caused by Defendants' use of the Asserted Marks."  Gosma Decl., Ex. 4 (Yuga' Responses to Defendants' RFPs) at 34-35.  However, during the November 28, 2022, conference, Yuga changed its positions and agreed to produce all materials relating to public and non-public instances in which any person or entity implicitly or explicitly distinguishes RR/BAYC NFTs from BAYC NFTs.  Gosma Decl., Ex. 8 (Dec. 1, 2022, Nikogosyan Letter to Thomas) at 3.   Yuga further committed to make these productions well-before the holidays in December. *Id*. at 1.  But again, Yuga did not fulfill its promise and instead waited weeks to respond to Defendants' December 1, 2022, follow up letter and asked Defendants to continue waiting despite Yuga already having more than three months to produce.

Mr. Ripps and Mr. Cahen request that the Court halt Yuga's improper delay tactics and compel production of (1) all materials relating to public and non-public instances in which any person or entity implicitly or explicitly distinguishes

RR/BAYC NFTs from BAYC NFTs and (2) all research relating to RR/BAYC NFTs being distinguished from BAYC NFTs.

### 2. Yuga Labs' Position

Yuga Labs objected to this request as vague and ambiguous, primarily as to the action of "distinguishing." Following the parties' meet and confer, Defendants clarified that they seek — as they state above — "all materials relating to public and non-public instances in which any person or entity implicitly or explicitly distinguishes RR/BAYC NFTs from BAYC NFTs." This request is overbroad and not proportionate to the needs of the case, including because it purports to require Yuga Labs to speculate as to the intent of the speaker and because "implicitly or explicitly distinguishes" is vague, ambiguous, and fails to provide meaningful criteria from which Yuga Labs can identify responsive materials. *See Table de France, Inc. v. DBC Corp.*, No. EDCV19423-JGB-KKX, 2019 WL 6888043, at *4 (C.D. Cal. Aug. 1, 2019) ("Relevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case."). In this stipulation, Defendants characterize this request for this first time as seeking documents relating to "lack of consumer confusion." This request to prove a negative by documentary evidence is inherently unintelligible.

Nonetheless as Yuga Labs told Defendants it would do, it has supplemented its document production and discovery responses to address Defendants' dispute with Request Nos. 28 (by producing documents) and 29 (by confirming that no responsive documents were located following a reasonable search). *See* Thomas Decl. Exhibit 1. And, once again, Defendants rushed this issue to the Court on an issue that is now moot and which they had just been told would be moot. To the extent that Defendants contend this issue is not mooted by Yuga Labs' supplemental production and responses, they have presented no argument for why the information they have received is insufficient.

## F.     Deposition Scheduling

Scheduling Order (Page 5):

2. DISCOVERY

All discovery shall be completed by the discovery cut-off date specified on the last page of this Order. THIS IS NOT THE DATE BY WHICH DISCOVERY REQUESTS MUST BE SERVED; IT IS THE DATE BY WHICH ALL DISCOVERY, INCLUDING EXPERT DISCOVERY, SHALL BE COMPLETED. The Court does not enforce side agreements to conduct discovery beyond the discovery cut-off date.

Any motion challenging the adequacy of responses to discovery must be heard sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted.

In an effort to provide further guidance to the parties, the Court notes the following:

(a) Depositions

All depositions shall be scheduled to commence sufficiently in advance of the discovery cut-off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition prior to the cut-off date.

### 1.     Mr. Ripps and Mr. Cahen's Position

Yuga has repeatedly refused Mr. Ripps and Mr. Cahen's requests to confer and schedule depositions as contemplated under Section II(a) of the Court's Scheduling Order.  Gosma Decl., Ex. 1 (Scheduling Order) at 5.  Specifically, the parties have yet to take the depositions of both Defendants, Yuga's 30(b)(6) witness, and several Yuga employees including Wylie Aronow, Greg Solano, Kerem Atalay, Zeshan Ali, Nicole Muniz, Guys Oseary, and Noah Davis.  At the same time, Yuga has served numerous subpoenas on eight (8) third parties—most of which are entirely unrelated to the Yuga's claims in this litigation—and aggressively pursued depositions and

documents from them.   Gosma Decl., Ex. 16 (Oct. 31, 2022, Tompros Letter Regarding Subpoenas) at 1.

On December 5, 2022, Yuga served deposition notices for the Defendants without conferring to set a reasonable schedule for both parties.   Gosma Decl., Ex. 10 (Emails Regarding Dep. Scheduling) at 5.    Defendants immediately sent correspondence inviting Yuga to confer regarding the deposition schedule.  *Id*. at 5. Yuga ignored Defendants' invitation to confer.   Defendants then sent a second request for a conference on December 9, 2012, and a third request on December 12, 2022.  *Id*. at 4-5.  Yuga again improperly ignored both of these requests.  *See Edge Sys. LLC*, 2022 WL 2093850, at *8 ("Counsel should respond to an email or telephone message from opposing counsel within a reasonable amount of time[.]").

On December 13, 2022, Defendants sent a fourth follow up email regarding deposition scheduling, asking Yuga "When can we expect the courtesy of a response?" Gosma Decl., Ex. 10 (Emails Regarding Dep. Scheduling) at 4.    Yuga then responded that it was not prepared to discuss deposition scheduling and that it intended to move forward with both of Defendants' depositions on the noticed dates. *Id*. at 3.   Defendants responded that the parties should determine a reasonable schedule that works with everyone's availability and that it would take Yuga's "improper notices as requests for depositions." *Id*. at 2-3.

On December 15, 2022, Yuga sent another correspondence once again ignoring Defendants' repeated invitations for a conference and instead threatened to move *ex parte* to compel Defendants' depositions on the noticed dates without even requesting a conference as required under Local Rule 37-1.  *Id*. at 1-2.  Defendants responded by reminding Yuga of the outstanding requests to confer and noting problems with the noticed location for Mr. Cahen's deposition.   *Id*. at 1.   Due to Yuga's non-responsive conduct, Defendants were also forced to serve deposition notices for Wylie Aronow and Greg Solano.  *Id*. at 1.

Yuga's conduct is an abuse of the deposition scheduling process to force depositions of the Defendants at inconvenient times and locations while withholding its own witnesses for depositions.  First and foremost, Yuga's conduct violates this Court's Standing Order, which provides that "All depositions shall be scheduled to commence sufficiently in advance of the discovery cut-off date."  Gosma Decl., Ex. 1 at 5.  Yuga's conduct also violates clear law in this district providing that "counsel are expected to cooperate with each other ... to facilitate the exchange of discoverable information, and to reduce the costs of discovery."   *Edge Sys. LLC*, 2022 WL 2093850, at *7.

Yuga's abuse of the deposition scheduling process also offends the norms of professional conduct.  Section 6 of the California Attorney Guidelines of Civility and Professionalism Guidelines provides that attorneys "should schedule by agreement whenever possible, and should send formal notice after agreement is reached."[2]  The Central District of California's Civility and Professionalism Guidelines similarly provide that attorney's "will consult other counsel regarding scheduling matters in good faith effort to avoid scheduling conflicts."[3]

Defendants informed Yuga as early as December 5, 2022, that the Civility Guidelines encourage attorneys to behave professionally and schedule depositions by agreement.  But Yuga instead choose to ignore the Civility Guidelines as it did not comport with its continued strategy of misconduct aimed at increasing the costs of litigation and harassing both Mr. Ripps and Mr. Cahen.  Yuga has left Defendants with no other recourse than to request this Court to compel Yuga to confer in good faith and schedule all depositions in this matter on a mutually agreed upon schedule.

## 2.    Yuga Labs' Position

Defendants have not complied with Local Rule 37-1 or established good cause

---

[2] https://www.calbar.ca.gov/Portals/0/documents/ethics/Civility/Atty-Civility-Guide-Revised_Sept-2014.pdf
[3] https://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalism-guidelines#Depositions

for failing to do so.  They never served Yuga Labs with a letter pursuant to Local Rule 37-1 identifying each issue in dispute, supporting authority, and their proposed resolution.  Moreover, at the time they served Yuga Labs with their joint stipulation, the Parties were actively engaged in the resolution of scheduling party depositions.

Yuga Labs expected that when it served deposition notices, Defendants would raise and professionally confer regarding any legitimate conflicts.  Instead, Defendants responded with a slew of accusations regarding the California attorney oath, the attorney oath for this Court, and California's Attorney Guidelines of Civility and Professionalism.  This was done instead of merely confirming the location of the depositions and proposing alternative dates for the noticed witnesses.  Ultimately after stalling for two weeks to air their grievances, they agreed to the originally noticed date for Ripps and agreed for a date a day later for Cahen, and agreed that both Defendants would be deposed in the location originally noticed by Yuga Labs.  Yuga Labs likewise agreed to sit for a 30(b)(6) deposition one day later than originally noticed.  Though the issue of scheduling Defendants' depositions and Yuga Labs' 30(b)(6) deposition was capable of resolution by email (and indeed was resolved by email), Thomas Decl. Exhibit 14, Defendants appear more interested in airing their contrived grievances about civility on the public docket than achieving solutions.  Defendants' complaints were and are all a game to them.

Defendants' lecture about civility reeks of hypocrisy.  For example, Defendants sought and obtained an extension of time to respond to Yuga Labs' joint stipulation (albeit less than the 17 days Defendants requested, though the extension moved Yuga Labs' hearing date from Yuga Labs' preferred hearing date of January 10 to January 17).  Then, when Defendants served their own stipulation, Yuga Labs sought a reciprocal three-day extension to respond.  Defendants refused to provide one.  Thomas Decl. Exhibit 14.  *See* Section 6 of the California Attorney Guidelines of Civility and Professionalism Guidelines ("In considering requests for an extension of time, an attorney should consider . . . the ***willingness of others to grant reciprocal***

*extensions*") (emphasis added).  Defendants' refusal was especially egregious given that their joint stipulation was served on December 19 and required a response the day after the federal Christmas holiday — a tactic they had employed before and have, the day of this stipulation, employed again.  Thomas Decl. ¶ 28.  Defendants' characterization of the Parties' efforts to set depositions as lacking in civility is false.

Additionally, on December 15, 2022, Defendants noticed the depositions of two of Yuga Labs' founders.  Yuga Labs' co-founders are "apex witnesses" because they are high level executives.  *See Greer v. Cnty. of San Diego*, No. 19-CV-378-JO-DEB, 2022 WL 2134601, at *1 (S.D. Cal. June 14, 2022) *(*high-level executive or official is an apex witness); *K.C.R. v. Cnty. of Los Angeles*, No. CV 13-3806 PSG SSX, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) (same).   Defendants know this and repeatedly refer to these individuals by the founder titles.  *See generally* Anti-SLAPP Mot.  On December 19, 2022, Yuga Labs responded regarding those depositions that:

> [T]he case law is clear that Defendants must first take Yuga Labs' 30(b)(6) deposition, confer with Yuga Labs on the necessity and scope of apex depositions, and demonstrate that there are no non-apex witnesses from whom Defendants could obtain necessary information they still seek.  *See Greer v. Cnty. of San Diego*, No. 19-CV-378-JO-DEB, 2022 WL 2134601 (S.D. Cal. June 14, 2022) (denying Plaintiff's motion to compel apex depositions because "Plaintiff has not exhausted less intrusive methods for obtaining the information he seeks" and "Plaintiff has not pursued Rule 30(b)(6) depositions").  Once you have taken Yuga Labs' 30(b)(6) deposition, if you still believe apex depositions of Mr. Aronow and Mr. Solano are necessary, we will confer with you on the propriety and scope of those individual depositions.

Defendants want to depose Mr. Aronow and Mr. Solano regarding "BAYC NFTS, First Amendment activity, Nazi/Racist messaging and imagery."  Thomas Decl. Exhibit 8 (Defendants' Initial Disclosures).  They have not even attempted to show

how this same information is unattainable through a deposition of Yuga Labs or that those depositions are even relevant to the issues in this case.   Defendants transparently served these depositions notices for the sole purpose of harassing Mr. Aronow and Mr. Solano about issues having nothing to do with this trademark dispute, as Cahen immediately took to Twitter to promote:

**PAULY**
@Pauly0x                                                                    ...

Wylie Aronow will be deposed on January 9th.

Greg Solano will be deposed on January 11th.

For the first time ever, these two intellectual trolls will be forced to answer questions about their racist and Nazi Ponzi scheme.

They can no longer hide.

Thomas Decl. Exhibit 12 (cropped to omit image).

Defendants impliedly concede this point as they do not seek in their section of this stipulation the premature testimony of these apex witnesses.   Nor do Defendants offer any argument that they are prejudiced by waiting until after Yuga Labs' deposition to meet and confer on these depositions, because Defendants suffer no prejudice by waiting.   Rather, they seek an order that the parties meet and confer on the issue in the future; Yuga Labs will continue conferring with Defendants on that issue and expressly told Defendants of that intention.

Finally, Defendants attempt to mislead the Court by introducing their self-serving letter regarding Yuga Labs' subpoenas while omitting Yuga Labs' response (and by failing to tell the Court that they, too, have served subpoenas without conferring in advance with Yuga Labs about dates).   *See* Thomas Decl. Exhibit 10. As explained in that response, the materials Yuga Labs sought from third parties is relevant to its allegations.   Further, because of Defendants' obstructive discovery

tactics, those third parties have been critical in obtaining evidence that Defendants continue to improperly withhold.

Respectfully submitted,

Dated:  December 28, 2022

By: */s/   Derek Gosma*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

By: */s/ Ethan M. Thomas*
Eric Ball (CSB No. 241327)
eball@fenwick.com
Kimberly Culp (CSB No. 238839)
kculp@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

Anthony M. Fares (CSB No. 318065)
afares@fenwick.com
Ethan M. Thomas (CSB No. 338062)
ethomas@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

*Attorneys for Plaintiff
Yuga Labs, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Derek Gosma attests that concurrence in the filing of this document has been obtained from Ethan Thomas.

Dated:  December 28, 2022                    _/s/ Derek Gosma_____

Derek Gosma

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on December 28, 2022.

By: /s/ *Derek Gosma*

Derek Gosma