# Exhibit 3

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, Does 1-10, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **NOTICE OF MOTION; ANTI-SLAPP MOTION TO STRIKE AND MOTION TO DISMISS** <br><br> Filed Pursuant to Court Order (Dkt. 44). Hearing Date: Nov. 7, 2022, at 1:30 p.m., Pursuant to Standing Order ¶ 5(a) Judge: Hon. John F. Walter |

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 7, 2022, at 1:30 p.m., or at another time convenient for the Court, in Courtroom 7A of the First Street United States Courthouse at 350 W. 1st Street, Los Angeles, California, 90012 or in such manner as the Court directs, Defendants Ryder Ripps and Jeremy Cahen will move this Court to strike Yuga Labs, Inc.'s California law causes of action and award fees and costs pursuant to Cal. Civ. Proc. Code. § 425.16(c) and dismiss Yuga Labs Inc.'s federal law causes of action pursuant to Fed. R. Civ. P 12(b)(6), or in the alternative, to dismiss Yuga Labs, Inc.'s Complaint pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety.

This motion is made following conferences of counsel pursuant to L.R. 7-3 which took place on August 5, 2022, and August 23, 2022. Yuga Labs, Inc. indicated that it disagreed with the substance of Ryder Ripps and Jeremy Cahen's motion and was not willing to stipulate to dismissal. Defendants are re-filing their motion to strike and motion to dismiss as "previously filed" pursuant to the Court's September 26, 2022 order (Dkt. 44).

## STATEMENT OF RELIEF SOUGHT

Defendants Ryder Ripps and Jeremy Cahen respectfully request that the Court strike Yuga Labs, Inc.'s Claims 4-11 in the Complaint and award fees and costs pursuant to Cal. Civ. Proc. Code. § 425.16(c) and dismiss Yuga Labs, Inc.'s Claims 1-3 pursuant to Rule 12(b)(6), or in the alternative, dismiss Yuga Labs, Inc.'s Complaint pursuant to Rule 12(b)(6) in its entirety.

Dated: October 3, 2022   By: /s/ *Louis W. Tompros*

<div style="margin-left:4em">

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

</div>

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND .................................................................. 2

      A.   Mr. Ripps Is a Recognized Artist ............................................. 2

      B.   Yuga Systematically Embedded Racist Messages and Imagery in
           Its Trademarks and Products ................................................. 3

      C.   Mr. Ripps's Artistic Project Is a Protest of Yuga's Dog Whistles ........... 6

      D.   Yuga Is Attempting To Silence Mr. Ripps ................................... 9

III.  LEGAL STANDARD .......................................................... 10

IV.   ARGUMENT ..................................................................... 10

      A.   The RR/BAYC Project Is Protected Speech Made In Connection
           With A Public Issue ......................................................... 10

           i.    Mr. Ripps Created The RR/BAYC Project In Furtherance of
                 His Constitutional Right of Free Speech ......................... 11

           ii.   The RR/BAYC Project Communicates Ideas In Connection
                 With A Public Issue ........................................... 12

      B.   The Complaint Does Not Support A Plausible Cause of Action ............. 13

           i.    Yuga's Trademark Infringement Claims (Claims 4-7) Are
                 Legally Insufficient Under the *Rogers* Free Speech Test .............. 13

           ii.   Yuga's Trademark Infringement Claims Based on the
                 RR/BAYC Project (Claims 4-7) also Fail Because Use of
                 Yuga's Alleged Marks Is Nominative Fair Use ..................... 17

           iii.  Yuga Did Not Allege a Misleading Representation of Fact in
                 Support of Its False Advertising Claims (Claim 7) ...................... 20

           iv.   Yuga Has Failed To Plausibly Allege Unjust Enrichment
                 (Claim 8) ..................................................... 21

Case No. 2:22-cv-04355-JFW-JEM              NOTICE OF MOTION; MOTION TO STRIKE

v. Yuga Has Failed To Plausibly Allege Conversion (Claim 9) ....... 22

vi. Yuga Failed to Plausibly Allege Intentional Interference with Prospective Economic Advantage (Claim 10) ..................... 23

vii. Yuga Has Not Plausibly Alleged Negligent Interference With Prospective Economic Advantage (Claim 11)...................... 24

C. Dismissal Under Rule 12(b)(6) ................................................................ 25

V. CONCLUSION .................................................................................................. 25

# **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

*Adobe Systems Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015)..................18

*Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 889
    (9th Cir. 2019) ..............................................................................18, 19

*Battle v. Taylor James, LLC*, No. 21-cv-07915-FWS-KES, 2022 WL 2162930
    (C.D. Cal. June 15, 2022) ................................................................14

*BMW of North America v. Mini Works, LLC*, 463 Fed. App'x. 689 (Fed. Cir.
    2011) ................................................................................................18

*Cairns v. Franklin Mint Co.,* 292 F.3d 1139 (9th Cir. 2002) .......................................19

*Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099
    (9th Cir. 2014) ................................................................................13

*Denims v. Ram Imports, Inc*, No. CV 20-0254 DSF (JCx), 2021 WL 4814995
    (C.D. Cal. Mar. 5, 2021)...................................................................24

*Dr. Suess Enters., L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020)...................13

*E.S.S. Entertainment 200, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th
    Cir. 2008)........................................................................................13

*Gordon v. Drape Creative, Inc*, 909 F.3d 257 (9th Cir. 2018)..............................14, 15

*Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021) ..............................10

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010)............................................12

*Innospan Corp. v. Intuit, Inc.,* No. C 10-04422 WHA, 2010 WL 5017014 (N.D.
    Cal. Dec. 3, 2010)...........................................................................23

-iii-

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 598 P.2d 60 (1979) ....................................25

*Khoja v. Rexigen Therapeutics*, Inc., 899 F.3d 988 (9th Cir. 2018).............................14

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003).......................23

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) ........................................................22

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825 (9th Cir. 2001)...............................................................................................................................23

*Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) ........................................................................................17, 19, 20

*Mattel, Inc. v. MCA Records,* 296 F.3d 894 (9th Cir. 2002) ......................................11

*Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal. 1998), aff'd, 296 F.3d 894 (9th Cir. 2002) ......................................................................21, 22

*McBride v. Boughton,* 123 Cal. App. 4th 379, 20 Cal. Rptr. 3d 115 (2004)...............22

*Meeker v. Meeker*, No. C 02-00741 JSW, 2004 WL 2554452 (N.D. Cal. Nov. 10, 2004)..................................................................................................................22

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020)................................20

*National Med. Transportation Network v. Deloitte & Touche*, 72 Cal. Rptr. 2d 720 (1998)..................................................................................................................24

*New Kids on the Block v. New America Pub*, 971 F.2d 302 (9th Cir. 1992)....17, 18, 19

*Planned Parenthood Federation of America, Inc. v. Center for Medical. Progress*, 890 F.3d 828 (9th Cir. 2018) .................................................10, 13, 25

*Prager University v. Google* LLC, 951 F.3d 991 (9th Cir. 2020)...............................20

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ...................24

*Stolz v. Wong Comms. LP*, 25 Cal. App. 4th 181, 31 Cal. Rptr. 2d 229 (1994) ..........25

-iv-

*Tethys Bioscience, Inc. v. Mintz, et al.*, No. 09–5115, 2010 WL 2287474 (N.D. Cal. June 4, 2010) ............................................................................................... 23

*Toyota Motor Sales v. Tabari*, 610 F.3d 1171 (9 th Cir. 2010) ............................. 18, 20

*Travelers Casualty Insurance Company of America v. Hirsh*, 831 F.3d 1179 (9th Cir. 2016) ............................................................................... 21

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .................................. 10

## STATUTES, RULES, REGULATIONS

California Civil Procedure Code § 425.16(c) ............................................ 10, 11, 13, 25

Federal Rule of Civil Procedure 12(f) ......................................................................... 10

Federal Rule of Civil Procedure Rule 12(b)(6) ..................................................... 10, 25

# I.    INTRODUCTION

This lawsuit is an attempt to silence an artist who used his craft to call out a multi-billion-dollar company built on racist and neo-Nazi dog whistles.  Ryder Ripps used conceptual art to critique hateful imagery in the popular "Bored Ape Yacht Club" project—a commercially successful collection of "NFTs" sold by the plaintiff, Yuga Labs, Inc. ("Yuga").  When called out on their racism, Yuga sued Mr. Ripps not for defamation, but for ***trademark*** infringement.  The First Amendment and the *Rogers* test preclude exactly this kind of abusive trademark infringement lawsuit.

Mr. Ripps's artistic criticism is well founded and directly connected to Yuga's trademarks.  For example, Yuga's "BAYC logo" imitates the Nazi Totenkopf emblem for the Schutzstaffel (SS), which was the Nazi organization primarily responsible for the Holocaust.  Below is a side-by-side comparison of the BAYC logo, the Nazi SS Totenkopf, and the satirical logo Mr. Ripps created to criticize Yuga:

  

Yuga quietly embedded its company's trademarks, artwork, and products with these coded "dog whistles," drawing from neo-Nazi culture and racist communities within forums like 4chan.org/pol/—while simultaneously racking up celebrity endorsements.

Mr. Ripps brought attention to Yuga's conduct by creating the satirical NFT collection called the "Ryder Ripps Bored Ape Yacht Club" ("RR/BAYC").  Though Yuga never brought action against ***any*** of the dozens of commercial "ape" NFT collections, it did—without warning—bring this action against Mr. Ripps and his business partner, Jeremy Cahen.  Yuga's purpose was obvious: to bully Mr. Ripps and Mr. Cahen into silence.  But this is precisely why anti-SLAPP statutes exist.

Case No. 2:22-cv-04355-JFW-JEM          NOTICE OF MOTION; MOTION TO STRIKE

## II.    BACKGROUND

### A.    Mr. Ripps Is a Recognized Artist

Mr. Ripps is a visual artist and creative designer known for creating artwork that comments on the boundaries between art, the internet, and commerce.  Ripps Decl. ¶ 1.  His work examines popular culture and sheds light on how individuals move through our increasingly digitized world.  *Id*. at ¶ 2.  The *New York Times* has recognized Mr. Ripps's contribution to conceptual art, describing him as "An Artist of the Internet," and *Forbes* listed Mr. Ripps in the 2016 class of 30 under 30:  Art & Style.  Ex. 3 ("Ryder Ripps: An Artist of the Internet"); Ex. 4 (*Forbes* 30 Under 30: Art & Style).

Many important exhibits have showcased Mr. Ripps's work.  For example, in 2015, Mr. Ripps had an exhibition at Postmasters Gallery in New York City—a gallery well-known for representing artists at the cutting edge of technology.  Ex. 5 (Review in *The Brooklyn Rail*).  Mr. Ripps reappropriated Instagram posts from the model Adrienne Ho and digitally manipulated them with a liquefying photo editing tool.  *Id*. at 3.  Postmasters described the portraits as exposing how we "reflexively simulate reality online" and have "authenticity manipulated by multiple filters and amplified by mass circulation."  Ex. 6 (Postmasters Listing) at 1.  Mr. Ripps was also recognized in 2015 as a "bold digital artist and entrepreneur" for remaking the vast internet in miniature with an installation called *Alone Together*.  Ex. 7 (Review in *Complex*) at 1.

In addition to creating fine art, Mr. Ripps has also led creative direction and design projects for companies like Nike and Red Bull, developed branding for products such as Soylent meal replacements, worked closely with Kanye West at his creative agency *Donda*, and has created art and executed creative direction with many leading musicians such as Grimes, James Blake, MIA, Pop Smoke, Pusha T, Tame Impala, and Travis Scott.  Ripps. Decl. ¶ 3.

Conceptual, performance, and appropriation art are among Mr. Ripps's most important and popular modes of artistic expression. In 2021, Mr. Ripps used performance and appropriation art to comment on the purpose and nature of NFTs ("non-fungible tokens"). An NFT is an entry on a decentralized digital ledger known as a "blockchain." Each NFT is unique by design and cannot be copied. But NFTs also often link to other content, such as images, that are easily copied. A purported utility of NFTs in art is verifiable provenance that makes it possible to distinguish original digital works from otherwise perfect duplicates. Mr. Ripps created his own NFT that linked to a high-resolution version of the image associated with another NFT (the "CryptoPunk #3100 NFT"). Ex. 8 ("CryptoPunks Get Punked"). One element of this artwork was to comment on what it means to "own" an NFT—to control a digital token (data in a blockchain) but not the corresponding digital image. *Id*. at 2.

**B.** **Yuga Systematically Embedded Racist Messages and Imagery in Its Trademarks and Products**

Yuga sold a series of 10,000 NFTs known as the Bored Ape Yacht Club ("BAYC"). Each BAYC NFT is associated with an image of an anthropomorphized ape cartoon. The BAYC collection, related promotional activities, and Yuga's corporate designs are systematically embedded with dog whistles common among neo-Nazis, alt-right groups, and racist bulletins within websites like 4chan.org/pol/. The presence of this symbolism is too prevalent to be a coincidence.

As noted earlier, Yuga's BAYC logo imitates the Nazi SS Totenkopf. The BAYC logo simply replaces the human skull and bones with an ape skull and alters the text so that it refers to the BAYC collection. Ex. 2 (https://gordongoner.com) at 4. Yuga copied all salient features of the Totenkopf in the BAYC logo, including the stylization and orientation of the skull, rough edges around the emblem, text and image layout, and color scheme. The BAYC logo even copies the 18 teeth in the symbol's skull. The Anti-Defamation League has recognized that "18 is a white

supremacists alphanumeric code for Adolf Hitler" (because A and H are the first the eighth letters in of the alphabet). Ex. 9 (ADL: Hate Symbol 18).

The founders of Yuga also embedded a neo-Nazi dog whistle in the name of their company itself. The word "Yuga" references the alt-right phrase "Surf the Kali Yuga." Kali Yuga is the age of sin and conflict in Hinduism, and alt-right groups use the phrase "Surf the Kali Yuga" as an esoteric way of saying enjoy sin and embrace conflict. Ex. 10 (*Neoecofascism: The Example of the United States*) at 110; Ex. 11 ("The Secret Histories of the Radical Right on 4chan/pol") at 8; Ex. 12 ("The Alt-Right Apocalypse") at 1-2. High profile neo-Nazis, including white supremacist Richard Spencer, routinely discuss the "Kali Yuga" and admit that Yuga is "evoking Nazi iconography." Ex. 13 (July 31, 2022, 5:54 p.m. Spencer Twitter Post) at 1; Ex. 14 (August 22, 2022, 2:22 p.m. Brennan Twitter Post) at 1; Ex. 15 (Spencer Messages to Brennan) at 2. Yuga co-founder Wylie Aronow was aware of (and apparently embraced) this neo-Nazi dog whistle as part of his public Twitter profile, which in 2020 listed "Kali Yuga" as his location. Ex. 16 ("Thousands of Lies: Wylie Aronow Acknowledges Longtime Friendship with 'Alt-Right' Publisher") at 9; *see also id.* at 4, 5 (Aronow acknowledging that he is thanked in the book *Thousands of Lies*, which "runs rampant with racism, antisemitism, pedophilia, white supremacy, misogyny and rape fantasies," for being "instrumental to epiphanies that shape it fundamentally.").

The "Surf the Kali Yuga" dog whistle is also often used by neo-Nazis specifically in conjunction with parts of the Totenkopf, as shown in the neo-Nazi shirt:



2017 neo-Nazi protester wearing a "Surf the Kali Yuga" t-shirt.



YugaLabs BAYC logo

-4-

Ex. 17 ("Matthew Warner: From GamerGate to Identity Evropa") at 6; Ex. 18 (Kali Yuga shirt) at 1. The Totenkopf's skull and bones depicted on the shirt is one of the most frequently appearing images on 4chan.org/pol/ bulletins discussing the Kali Yuga. Ex. 11 at 9. In other words, the company name "Yuga" and the Bored Ape Yacht Club logo contain corresponding neo-Nazi dog whistles.

The BAYC collection itself also contains obvious racist messaging and imagery. The NFTs display anthropomorphized apes in an act of simianization—disparaging ethnic or racial groups by depicting them as apes. Ex. 2 at 2-3. Yuga's use of simianization has come under significant public scrutiny. Ex. 19 (Twitter Posts Compilation). Carla Hill, a senior researcher at the Anti-Defamation League's Center for Extremism, has criticized the BAYC's depiction of apes with hip hop traits and apes wearing a kamikaze headband. Ex. 20 ("Bored Ape Yacht Club finally responds to neo-Nazism accusation") at 6. Below are two NFTs that display these features:

 

BAYC #3721                    BAYC #6281

The image on the left (BAYC #3721) depicts a gold jacket and gold chain, which Yuga refers to as "Hip Hop" clothing, in reference to a popular musical genre and lifestyle pioneered by African Americans. Ex. 21 (BAYC #3721). The image on the right (BAYC #6281) depicts a kamikaze headband, which Yuga refers to as a "Sushi Chef Headband." Ex. 22 (BAYC #6281).

Case No. 2:22-cv-04355-JFW-JEM          NOTICE OF MOTION; MOTION TO STRIKE

The racist dog whistles that Yuga has embedded in BAYC and associated projects are too numerous to catalog here. For example, Yuga has gone so far as to create metadata that includes "Stone Hole Jackson" in reference to the confederate general Stonewall Jackson. Ex. 23 (Otherdeed Metadata Provenance Information). Yuga later changed the metadata to erase this offensive reference. *Id.* More examples can be seen in the YouTube video "*The Bored Ape Conspiracy (theory) - A Cultural Disease*" (available at https://www.youtube.com/watch?v=tRPHZQFuT24). But a key part of Mr. Ripps's work has been to document them, including at his website https://gordongoner.com/.

Yuga's systematic use of racist and neo-Nazi messages and imagery appears to be by deliberate design, and, by its co-founder's admission are not "just random." Greg Solano, Yuga's co-founder, stated in an interview that "[i]t's like Wittgenstein's 'let the unutterable be conveyed unutterably,' or Hemingway's iceberg theory. We knew all about what this world was, and why these apes are this way. And that somebody else might get a little tingle on their neck looking at it, thinking, 'Yeah, this is kind of different. ***This isn't just random.***'" Ex. 24 ("The Bored Ape Founders Haven't Yet Joined the Yacht Club") at 6 (emphasis added).

## C. Mr. Ripps's Artistic Project Is a Protest of Yuga's Dog Whistles

Mr. Ripps created the RR/BAYC project as a critique of Yuga's use of racist and neo-Nazi dog whistles. The RR/BAYC project is a collection of NFTs that point to the same online digital images as the BAYC collection but use verifiably unique entries on the blockchain. Ripps Decl. ¶ 8. Mr. Ripps's use of pointers to the same images is a form of "appropriation art" that serves several purposes: (1) to bring attention to Yuga's use of racist and neo-Nazi messages and imagery, (2) to expose Yuga's use of unwitting celebrities and popular brands to disseminate offensive material, (3) to create social pressure demanding that Yuga take responsibility for its actions, and (4) to educate the public about the technical nature and utility of NFTs.

Ripps Decl. ¶ 8; Ex. 1 (https://rrbayc.com/)  at 1; Ex. 25 (May 14, 2022, 9:52 p.m., Twitter Archive).

As early as November 2021, Mr. Ripps began exposing Yuga's misconduct through his Twitter and Instagram profiles, podcasts, and cooperation with investigative journalists, and by creating the website https://gordongoner.com.  Ripps Decl. ¶ 5.  Mr. Ripps criticized Yuga's use of neo-Nazi and alt-right dog whistles, and also spoke about the countless celebrities whom Yuga had promoting its offensive material including Tom Brady, Kevin Hart, Jimmy Fallon, Shaquille O'Neal, Mark Cuban, Justin Bieber, Serena Williams, Paris Hilton, LaMelo Ball, Timbaland, Stephen Curry, Eminem, Madonna, Post Malone, Ben Simmons, Steve Aoki, Neymar Jr., Gwyneth Paltrow, Snoop Dog, and others.  Ex. 26 ("The All-Star owners of the Bored Ape Yacht Club") at 2-6.

Mr. Ripps created the RR/BAYC project in connection with his efforts to expose Yuga's neo-Nazi and alt-right references.  The project began organically, with Mr. Ripps receiving requests for RR/BAYC NFTs on Twitter from like-minded users critical of Yuga.  Ripps Decl. ¶ 9.  Later, Mr. Ripps posted on Twitter that he would create his satirical NFTs for anyone who requested one for the price of 0.1 Ethereum (currently roughly $150).  Ex. 27 (May 14, 2022, 7:34 p.m., Mr. Ripps Twitter Post). He explained to his followers that "ryder ripps bayc vision is to create an army of educators" with respect to Yuga's connections to neo-Nazi and alt-right culture.  Ex. 28 (May 15, 2022, 1:21 a.m., Mr. Ripps Twitter Post).

The RR/BAYC NFTs quickly became popular, and Mr. Ripps eventually set up the website https://rrbayc.com.  Ex. 1.  The website ensured that collectors understood the satirical message of the project and that they were not purchasing a BAYC NFT. The front page of the website explained that "RR/BAYC uses satire and appropriation to protest and educate people regarding the Bored Ape Yacht Club and the framework

of NFTs." *Id.* at 1. Mr. Ripps further required each purchaser to adopt the following disclaimer:



Ripps Decl. ¶ 11. As shown above, the disclaimer required purchasers to acknowledge that RR/BAYC NFTs are "a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary[.]"

Mr. Ripps's criticism of Yuga has become well-known. Even Yuga's Complaint discusses the criticism Mr. Ripps has made about Yuga, alleging that Mr. Ripps has described RR/BAYC as "satire" (Compl. ¶ 5) and has encouraged collectors to purchase RR/BAYC NFTs to **protest** Yuga (Compl. ¶¶ 56, 72, 116). Yuga also concedes that Mr. Ripps has conducted "an interview with a popular meme page" to discuss Yuga's use of racist dog whistles. Compl. ¶ 50. The Complaint further acknowledges that Mr. Ripps's message has "reached a significant number of people on social media." Compl. ¶ 51.

The public protest against Yuga led to the #BURNBAYC movement (spearheaded by the popular YouTuber Philion). Social media influencers and celebrity YouTubers have been using the #BURNBAYC hashtag, which began trending the same week the RR/BAYC collection sold out. Ex. 29 ("Bored Ape Yacht

-8-

Club (BAYC) Propagating NFT Racism?") at 2; Ex. 30 ("Bored Ape Yacht Club's Creators Declared War on a Vocal Critic. Could it Backfire?") at 5. The question of whether BAYC is racist has become a "viral debate" and mainstream newspapers reported that #BURNBAYC is a "public opinion storm" and "too large to ignore." Ex. 31 ("Bored Ape Yacht Club Wants Ryder Ripps to Cease and Desist") at 5; Ex. 32 ("BAYC caught in public opinion storm over Nazi club NFT") at 1. Ex. 33 ("BAYC founders call Nazi conspiracy video 'crazy disinformation campaign'") at 1. As a result, Mr. Ripps's work is today described as being "pretty brilliant from an artistic point of view." Ex. 34 ("Yuga Fires Back at #BURNBAYC Creator") at 4.

### D. Yuga Is Attempting To Silence Mr. Ripps

Yuga has been on a campaign aimed at silencing Mr. Ripps's artistic expression and related criticism of Yuga's connections to neo-Nazi and alt-right culture. For example, when Mr. Ripps began to speak out about the BAYC collection, Yuga's talent manager, Guy Oseary, called Mr. Ripps to make vague threats. Ripps Decl. ¶ 7. Oseary stated that "I can be a nice guy or I can be a not nice guy" and that he could make Mr. Ripps's life hard if he continued to call out Yuga. *Id*. Oseary also offered to introduce Mr. Ripps to Kanye West (without realizing that Mr. Ripps had already worked with West) and added Mr. Ripps to a group text message with West's manager. *Id*. The next week Oseary left a voice memo thanking Mr. Ripps for remaining silent. *Id*. But Oseary's statements only galvanized Mr. Ripps to continue his criticism of Yuga and eventually to create the RR/BAYC work.

This lawsuit is the latest Yuga attempt to bully Mr. Ripps into silence. There are dozens of entities that create knock-off ape NFTs that make no artistic or critical commentary. Ripps Decl. ¶ 15, Ex. 1 (List of NFT Projects). Tellingly, Yuga has not sued *any* entities that are intentionally exploiting Yuga's goodwill. Instead, Yuga has sued only Mr. Ripps and Mr. Cahen for their successful protest and criticism of Yuga's systematic use of racist and neo-Nazi messages and imagery.

-9-

### III.  LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

The California Anti-SLAPP statute explains that Rule 12(f) can "allow for early dismissal of meritless First Amendment cases aimed at chilling expression through costly, time-consuming litigation."  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (internal brackets omitted).  The statute provides that a defendant may strike a complaint if it "'arises from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)).

Courts grant anti-SLAPP motions to strike at the pleadings stage when (1) the defendant shows that "an act in furtherance of protected expression is being challenged" and (2) the plaintiff fails to demonstrate that "the complaint is legally sufficient."  *Planned Parenthood Fed'n of America, Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).

### IV.  ARGUMENT

The Complaint's state law claims should be stricken under the anti-SLAPP statute because (1) the accused RR/BAYC project is protected speech made in connection with a public issue and (2) the Complaint does not allege legally sufficient facts to support a cause of action.  The Complaint, including Yuga's federal law claims, should also be dismissed under Rule 12(b)(6) for failure to state a claim.

#### A.  The RR/BAYC Project Is Protected Speech Made In Connection With A Public Issue

Anti-SLAPP immunity protects the accused RR/BAYC project because the project is performance and appropriation art that expresses criticism against Yuga's use of racist, neo-Nazi, and alt-right dog whistles.  *Planned Parenthood*, 890 F.3d at

-10-

832-33 (citing Cal. Civ. P. Code. § 425.16(b)(1)) (anti-SLAPP immunity applies to acts made (1) in furtherance of the constitutional right of free speech and (2) in connection with a public issue).

### i. Mr. Ripps Created The RR/BAYC Project In Furtherance of His Constitutional Right of Free Speech

The First Amendment protects expressive works, and an artwork is expressive if it is "communicating ideas or expressing points of view." *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020) (citing *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002)).  As explained below, the RR/BAYC project abundantly communicates protest and criticism of Yuga's references to racist and neo-Nazi themes.

Mr. Ripps created the RR/BAYC project with the specific aim of publicizing how Yuga's founders have embedded Yuga and the BAYC collection with racist and neo-Nazi dog whistles.  Ripps Decl. ¶ 8.  Before launching the RR/BAYC project, Mr. Ripps used his Twitter and Instagram profiles to expose Yuga.  Ripps Decl. ¶ 5.  Mr. Ripps also released the website https://gordongoner.com to document Yuga's references to neo-Nazi and alt-right culture.  *Id.*

The RR/BAYC project elevated Mr. Ripps's criticism of Yuga.  Collectors commissioned RR/BAYC NFTs as an act of protest against Yuga and to form a community that advances Mr. Ripps's messages regarding Yuga's use of racist dog whistles.  Ripps Decl. ¶ 9.  As Mr. Ripps explained on the website that sold his NFTs (https://rrbayc.com), "RR/BAYC uses satire and appropriation to protest and educate people regarding The Bored Ape Yacht Club and the framework of NFTs."  Ex. 1 at 1.  Mr. Ripps also ensured that collectors understood the satirical messages of his NFTs by requiring every purchaser to sign a disclaimer acknowledging that the RR/BAYC NFTs are "a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary."  Ripps Decl. ¶ 11.

-11-

The ideas that the RR/BAYC project expressed quickly gained notoriety.  Mr. Ripps's NFTs sold out within weeks and, as Yuga admits in the Complaint, Mr. Ripps's message "reached a significant number of people."  Compl. ¶ 51; Ripps Decl. at 10.  The public protest against Yuga eventually led to the #BURNBAYC movement, which demands that Yuga be held accountable for its offensive and racist behavior.  Ex. 29 at 2; Ex. 32 at 2.  For these reasons, the RR/BAYC project has been described as "pretty brilliant from an artistic point of view."  Ex. 34 at 4.

### ii.      The RR/BAYC Project Communicates Ideas In Connection With A Public Issue

A work is connected to a public issue if it involves (1) statements "concerning a person or entity in the public eye," (2) "conduct that could directly affect a large number of people beyond the direct participants," or (3) "a topic of widespread public interest." *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010).  The RR/BAYC project is connected to a public issue for all three of these reasons.

***First***, RR/BAYC NFTs express commentary about an entity (Yuga) that is in the "public eye."  Yuga is a $4 billion corporation that publicly sells NFTs and various related services.  Compl. ¶ 20.  Moreover, according to the Complaint, Yuga's BAYC collection has received "significant attention from the media" and "has generated massive public interest."  Compl. ¶¶ 1, 19, 20

***Second***, Yuga's coded racism and neo-Nazi messages affect a large number of people beyond Yuga, Mr. Ripps, and Mr. Cahen.  Yuga has enlisted celebrities to promote BAYC and its racist imagery including Tom Brady, Madonna, Kevin Hart, Jimmy Fallon, Shaquille O'Neal, Mark Cuban, Justin Bieber, Stephen Curry, Eminem, Serena Williams, Steve Aoki, LaMelo Ball, Snoop Dog, and others.  Ex. 26 at 2-6; Compl. at ¶ 21.  Yuga's BAYC has also worked with major brands including Adidas, Universal Music Group, Arizona Iced Tea, Gucci, Major League Soccer, and Old Navy.  Compl. at ¶ 22; Ripps Decl. ¶ 6.  These public endorsements show that BAYC NFTs are affecting society at large, including American mainstream culture.

-12-

**Third**, Yuga's connection to neo-Nazi and alt-right culture is a topic of widespread public interest. Yuga's use of racist messages and imagery has been repeatedly criticized publicly. Ex. 19. Activists, including some celebrities and social media influencers, are standing up against Yuga and participating in the #BURNBAYC movement. Ex. 29 at 1. Newspapers have commented on these events, reporting that there is now a "public opinion storm" surrounding Yuga and that #BURNBAYC has become "too large to ignore." Ex. 32 at 1; Ex. 33 at 1.

### B. The Complaint Does Not Support A Plausible Cause of Action

The Complaint is legally insufficient because Yuga has not alleged a plausible cause of action. *Planned Parenthood*, 890 F.3d at 832-33 (citing Cal. Civ. P. Code § 425.16(b)(1)) (holding the second step of anti-SLAPP requires plaintiffs to show that the complaint is legally sufficient).

#### i. Yuga's Trademark Infringement Claims Are Legally Insufficient Under the *Rogers* Free Speech Test (Claims 4-7)

Under the *Rogers* test that insulates artistic free speech from claims of trademark infringement, trademark claims are actionable only if the accused use of a trademark is "(1) not artistically relevant to the underlying work or (2) explicitly misleads consumers as to the source of the content of the work." *Dr. Suess Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020). The *Rogers* test applies to all of Yuga's trademark infringement causes of action. *Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distrib. Corp.*, 875 F.3d 1192, 1195-99 (9th Cir. 2017) (applying *Rogers* test to false designation of origin, unfair competition, and false advertising under the Lanham Act and California Law); *Dr. Suess Enters.*, 983 F.3d at 461 (*Rogers* test applies to common law trademark infringement); *see Calista Enters. Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099, 1031 (9th Cir. 2014) (holding that cybersquatting claims require likelihood of confusion); *E.S.S. Ent. 200, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098, 1101 (9th Cir. 2008) (applying *Rogers* test to trademark infringement and unfair

-13-

competition under Cal. Bus. & Pro. Code and California common law).  As explained below, Yuga has failed to plausibly allege both prongs of the *Rogers* test.

*First*, Yuga has conceded in its Complaint that the BAYC marks are artistically relevant to the RR/BAYC project.  The *Rogers* test requires that "the level of relevance must merely be above zero[.]"  *Gordon v. Drape Creative, Inc*, 909 F.3d 257, 268 (9th Cir. 2018) (citation and quotation marks omitted).  The allegations in the Complaint satisfy the "above zero" threshold because they include Mr. Ripps's explanation that his project uses BAYC marks in his conceptual appropriation art as a "provocation" that serves "to illuminate what nfts are and show bayc for what it really is."  Compl. ¶ 57.  Yuga also alleged that Mr. Ripps sold RR/BAYC NFTs so collectors can protest Yuga's racist references.  Compl. ¶¶ 72, 116.  Yuga even alleged that Mr. Ripps promoted his project with the statement, "LONG LIVE CONCEPTUAL ART."  Compl. ¶ 57.  The Complaint also incorporates by reference https://rrbayc.com by repeatedly referencing, discussing, and including hyperlinks to that webpage.[1]  Compl. ¶¶ 34, 36, 48, 81.  The webpage explains that "RR/BAYC uses satire and appropriation to protest and educate people regarding The Bored Ape Yacht Club and the framework of NFTs" and that "[t]he work is an extension of and in the spirit of other artists who have worked within the field of appropriation art."  Ex. 1 at 1 (emphasis removed).  These allegations in the Complaint go well beyond the "above zero" relevance requirement because they make clear that the RR/BAYC

---

[1] A complaint incorporates by reference documents that it discusses, repeatedly references, or includes via hyperlink.  *Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 1007 (9th Cir. 2018) (affirming incorporation by reference of a document repeatedly referenced in the complaint); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint"); *Battle v. Taylor James, LLC*, No. 21-cv-07915-FWS-KES, 2022 WL 2162930, at *6 (C.D. Cal. June 15, 2022) (holding that a hyperlink in a complaint incorporated the linked document).

-14-

NOTICE OF MOTION; MOTION TO STRIKE

project uses the asserted trademarks to express criticism of Yuga's use of racist dog whistles.  Compl. ¶¶ 34, 36, 48, 57, 72, 81, 116.

**Second**, Yuga has failed to allege (and cannot allege) that Mr. Ripps **explicitly** misled consumers as to the source of RR/BAYC NFTs.  *Gordon*, 909 F.3d at 269 ("the key here is that the creator must explicitly mislead consumers[.]").  To the contrary, Yuga repeatedly alleged that Mr. Ripps publicly communicated that RR/BAYC NFTs are not Yuga products.  The Complaint in fact alleges statements that RR/BAYC NFTs are intended to "show bayc for what it really is" and allow collectors to protest Yuga and "say fuck off to @BoredApeYC!"  Compl. ¶¶ 57, 72, 116.  According to these allegations, Mr. Ripps did not publicize the RR/BAYC NFTs as Yuga products but instead as the **antithesis** to Yuga and its offensive BAYC collection.  The incorporated website, https://rrbayc.com, similarly shows that Mr. Ripps did not explicitly mislead consumers.  Compl. ¶ 57.  The website explains that Mr. Ripps was the creator of RR/BAYC NFTs and that the project uses "satire and appropriation" to criticize Yuga's BAYC collection.  Ex. 1 at 1.  The website also required each purchaser to sign a disclaimer acknowledging that Yuga did not create RR/BAYC NFTs.  Thus, Yuga itself has alleged that Mr. Ripps took extensive steps to ensure that collectors understood the correct origin of RR/BAYC NFTs.

The Complaint also repeatedly alleges facts showing that RR/BAYC NFTs were differentiated from Yuga's NFTs in the marketplace.  For example, the OpenSea marketplace images in paragraph 33 show that Mr. Ripps's NFTs were labeled as part of the "RR/BAYC" collection and not the "Bored Ape Yacht Club" collection:



Compl. ¶ 33.  Paragraph 34 alleges that Mr. Ripps repeatedly used "RR/BAYC" in connection with his website https://rrbayc.com, where "RR" denoted "Ryder Ripps" to distinguish from Yuga's NFTs.  Compl. ¶ 34.  Paragraph 37 alleges that the Foundation page contained differentiating features including the RR/BAYC satirical logo and identifying "Ryder Ripps" as the creator:



Compl. ¶ 37.  The corresponding Foundation NFT image in paragraph 38 minimizes the image so that the logo and its slogan "THIS LOGO IS BASED ON THE SS TOTENKOPF" does not appear clearly in the Complaint.  Compl. ¶ 38.  And in paragraph 39, the Complaint discusses, hyperlinks, and incorporates by reference the Etherscan page: https://etherscan.io/address/0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73691e to allege that Defendants created misleading token trackers.  Compl. ¶ 39.  However, the page clearly and expressly identifies Mr. Ripps—not Yuga—as the token creator:



-16-

NOTICE OF MOTION; MOTION TO STRIKE

Yuga's allegations in relation to the Twitter pages @RR_BAYC and @BOREDAPEV3 similarly fail to allege explicitly misleading acts. The Complaint alleges no facts connecting Defendants to these accounts—which is no surprise because Defendants actually have nothing to do with these Twitter pages. Compl. ¶¶ 42, 44. The image in paragraph 42 of the Complaint even confirms the @RR_BAYC is "[c]ommunity ran." Compl. ¶ 42.

Lastly, Yuga fails to allege any explicitly misleading acts with regards to the website https://apemarket.com/. The Complaint does not allege that Yuga has any trademark in "Ape Market" with or without a skull logo. Further, the hyperlinked and thereby incorporated page shows that the alleged "apemarket.com" website is not yet operating and has never had any content, let alone any misleading content. Compl. ¶ 46; Ex. 35 (ApeMarket Webpage).

In sum, the Complaint consistently alleges that Mr. Ripps **differentiated** the RR/BAYC project from Yuga's NFTs. That is the opposite of the "explicitly misleading" use that *Rogers* requires. Thus, under the *Rogers* test, Yuga's allegations render its trademark infringement claims legally insufficient.

### ii. Yuga's Trademark Infringement Claims Based on the RR/BAYC Project also Fail Because Use of Yuga's Alleged Marks Is Nominative Fair Use (Claims 4-7)

Yuga's Complaint also alleges facts demonstrating that the alleged use of Yuga's marks qualifies as protected nominative fair use. A defendant's use of a mark is protected nominative fair use when (1) the plaintiff's product or service in question is not readily identifiable without use of the trademark; (2) only so much of the mark or marks is used as is reasonably necessary to identify the plaintiff's product or service; and (3) the user does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003) (quoting *New Kids on the Block v. News America Pub. Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)). Nominative fair use is

-17-

applicable to and defeats all of Yuga's trademark infringement causes of action. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 889, 893-98 (9th Cir. 2019) (applying nominative fair use to false designation of origin and unfair competition claims under the Lanham Act and unfair competition under California common law); *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (applying nominative fair use to a federal false advertising claim); *New Kids on the Block*, 971 F.2d at 305-09 (applying nominative fair use to common law trademark infringement and false advertising under California law); *BMW of N. America v. Mini Works, LLC*, 463 Fed. App'x. 689 (Fed. Cir. 2011) (nonprecedential) (applying nominative fair use to cybersquatting, but holding that defendant failed to show fair use).

*First*, Mr. Ripps's appropriation art project would not be readily identifiable, or even possible, without using Yuga's marks to conjure up the BAYC collection—the subject of Mr. Ripps's critique. As discussed above, the Complaint includes Mr. Ripps's explanation that his project uses BAYC marks in his conceptual appropriation art as a "provocation" that serves to "show bayc for what it really is." Compl. ¶ 57. Mr. Ripps's "needed to communicate" to his audience that the RR/BAYC project critiques Yuga and, in particular, its BAYC collection, and "so using the mark in the title and description of the program 'accomplished this goal.'" *Applied Underwriters*, 913 F.3d at 894 (quoting *Toyota Motor Sales v. Tabari*, 610 F.3d 1171, 1180 (9th Cir. 2010)). Courts have routinely determined that a descriptive alternative need not be employed where, as here, the use of a mark is necessary to refer to a ***specific brand or product***. *Applied Underwriters, Inc.* 913 F.3d at 893-94.

*Second*, Mr. Ripps's used BAYC's marks only to the extent reasonably necessary. The RR/BAYC project is a satirical work that uses unique and identifiable NFTs that point to the same online digital images associated with the BAYC collection. Compl. ¶ 57; Ex. 1 at 1. Thus, the nature of Mr. Ripps's performance and appropriation art project requires use of Yuga's marks in the digital images to which

-18-

his NFTs point, and in the title of the collection, to accomplish the use of satire to criticize Yuga. *Applied Underwriters*, 913 F.3d at 895 ("The second *New Kids* factor does not implicate the *number* of uses of a mark, but rather the *nature* of the uses."). Moreover, because the RR/BAYC project depends on using descriptions of Yuga and its BAYC collection, more use of Yuga's marks is reasonably necessary. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1154 (9th Cir. 2002) ("Where … the description of defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the description of the defendant's product does not depend on the description of the plaintiff's product.").

**Third**, Mr. Ripps's has done nothing to suggest sponsorship or endorsement by Yuga. The goal of a nominative use is typically for the "purposes of comparison, criticism [or] point of reference." *Mattel Inc.* 353 F.3d at 809. As detailed above, Mr. Ripps has been clear that RR/BAYC serves this goal by using the asserted marks to criticize Yuga's use of racist and neo-Nazi dog whistles. The Complaint alleges that RR/BAYC NFTs are intended to "show bayc for what it really is" and allow collectors to protest Yuga and "say fuck off to @BoredApeYC!" Compl. ¶¶ 57, 72, 116. Generally, one does not urge its audience to tell a sponsor to "fuck off." These allegations in the Complaint preclude any suggestion that Yuga sponsors or endorses the RR/BAYC project because they show that the content of RR/BAYC is replete with critical statements about Yuga and the BAYC collection. *See New Kids on the Block*, 971 F.2d at 308–09 ("[N]othing in the announcements suggests joint sponsorship or endorsement by the New Kids. The USA Today announcement implies quite the contrary by asking whether the New Kids might be 'a turn off.'")

Further, although "[t]his element does not require that the defendant make an affirmative statement that their product is not sponsored by the plaintiff" (*Mattel Inc.* 353 F.3d at 811), Mr. Ripps has repeatedly done so. As explained above, Yuga has

-19-

extensively alleged that Mr. Ripps made clear that he created the RR/BAYC NFTs as satirical art directed at criticizing Yuga.  Compl. ¶¶ 57, 72, 116.  Moreover, the Complaint incorporates by reference the RR/BAYC website in which Mr. Ripps further explains that the RR/BAYC project is satirical and required every purchaser of an RR/BAYC NFT to sign a disclaimer acknowledging that Mr. Ripps was the creator, not Yuga.  Compl. ¶¶ 34, 36, 48, 81.  Based on these allegations regarding the critical nature of the RR/BAYC, the content on the RR/BAYC website, and Mr. Ripps's repeated criticism of BAYC in RR/BAYC-related communications, Yuga has failed to plausibly alleged that a "reasonably prudent consumer" in the relevant marketplace (*Toyota Motor Sales*, 610 F.3d at 1176) could have interpreted RR/BAYC as being endorsed or sponsored by Yuga.

In sum, the Complaint contains only conclusory allegations of consumer confusion that are belied by the critical nature of the RR/BAYC project as described in the Complaint.  These allegations of Mr. Ripps's use of the asserted marks, when considered in the light most favorable to Yuga, is protected nominative fair use.  Accordingly, Yuga has failed to allege legally sufficient facts for its trademark infringement causes of action.

### iii. Yuga Did Not Allege a Misleading Representation of Fact in Support of Its False Advertising Claims (Claim 7)

Yuga's false advertising claims are legally insufficient, in addition to their deficiencies under the *Rogers* test and nominative fair use, for failure to allege advertising that is "misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020); *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020) (Under the Lanham Act, false advertising must include a "false or misleading representation of fact.").  The Complaint does not provide a single example of a misleading statement and instead merely concludes that Defendants advertised that "RR/BAYC NFTs are equivalent to authentic Bored Ape NFTs."  Compl. ¶¶ 72, 116.

To support this conclusion, the Complaint alleges the statement "To CLARIFY … how the website http://rrbayc.com works.  You reserve an ape which you can choose. @ryder_ripps will then mint it for you when he is able to. Then it will get transferred to your wallet Then you can say fuck off to @BoredApeYC!"  Compl. ¶¶ 72, 116.  But this statement **distinguishes** RR/BAYC NFTs from Bored Ape NFTs by clarifying that Mr. Ripps is the creator, not Yuga.  The Complaint also alleges that Mr. Ripps posted, "Looking at @ApeMarketplace and saying fuck you to @BoredApeYC who's with me?"  Compl. ¶¶ 72, 116.  This likewise is not and cannot be alleged to be misleading: it expresses that the RR/BAYC project is a protest against Yuga.  Moreover, as explained above, Yuga extensively pleaded that Mr. Ripps promoted the RR/BAYC project as distinct and antithetical to Yuga's NFTs, including on the RR/BAYC website and the disclaimer that every purchaser was required to sign.  Compl. ¶¶ 48, 53, 56, 57, 72, 116; Ex. 1 at 1.

### iv.    Yuga Has Failed To Plausibly Allege Unjust Enrichment (Claim 8)

Yuga's unjust enrichment claim is legally insufficient because (1) Yuga has not plausibly alleged unjust retention of a benefit and (2) the First Amendment precludes Yuga's unjust enrichment claim.

**First**, unjust enrichment requires the "unjust retention of the benefit at the expense of another."  *Travelers Cas. Ins. Co. of America v. Hirsh*, 831 F.3d 1179, 1182 (9th Cir. 2016).  Yuga's allegation of "unjust retention" is based on Mr. Ripps's use of "BAYC Marks without authorization."  Compl. ¶ 126.  However, as explained in Sections IV.B.i-ii, Yuga has not plausibly alleged trademark infringement and therefore has also failed to plausibly allege unjust enrichment.  *See Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120, 1157 (C.D. Cal. 1998), aff'd, 296 F.3d 894 (9th Cir. 2002) (holding that defendants' unjust enrichment claim failed where "defendants did not infringe or dilute plaintiff's trademark .…").

***Second***, under California Law, Yuga cannot claim unjust enrichment based on Mr. Ripps's exercise of his First Amendment rights. *See McBride v. Boughton*, 123 Cal. App. 4th 379, 387–88, 20 Cal. Rptr. 3d 115, 122 (2004) (explaining that unjust enrichment claims are denied "where application of the doctrine would involve a violation or frustration of the law or opposition to public policy"). The RR/BAYC project is a satirical artistic work protected under the First Amendment right of free speech. *See supra*-Sections IV.A, B.i-ii. Requiring Mr. Ripps to pay restitution under an unjust enrichment theory for profits received from the RR/BAYC project would frustrate the strong public policy in favor of First Amendment protections. *See Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120, 1157 (C.D. Cal. 1998), aff'd, 296 F.3d 894 (9th Cir. 2002) (denying unjust enrichment claim where "defendants have a strong… First Amendment interest in parodying a popular brand name .…").

### v.    Yuga Has Failed To Plausibly Allege Conversion (Claim 9)

Yuga's claim for conversion is legally insufficient because (1) Yuga has failed to allege wrongful disposition of a property and (2) the tort of conversion does not extend to trademarks in any event.

***First***, to state a claim for conversion, Yuga must allege "right to possession of property" and "wrongful disposition of the property right[.]" *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (internal quotation omitted). Yuga alleges "wrongful disposition" by stating that Defendants "substantially interfered with Yuga's ownership and rights in these marks." Compl. ¶¶ 132-133. However, because Yuga has not plausibly alleged trademark infringement, Yuga's has also failed to plausibly allege wrongful disposition of property via any such trademark infringement.

***Second***, courts have repeatedly declined to extend conversion to trademarks. *See Meeker v. Meeker*, No. C 02-00741 JSW, 2004 WL 2554452, at *6 (N.D. Cal. Nov. 10, 2004) (holding that "a claim for conversion should not be extended to reach the intangible intellectual property rights in a trademark"); *Innospan Corp. v. Intuit,*

*Inc.*, No. C 10-04422 WHA, 2010 WL 5017014, at *2 (N.D. Cal. Dec. 3, 2010) ("Plaintiff's complaint also alleges a claim for trade infringement under the Lanham Act. That claim is the appropriate legal avenue for trademark infringement, not conversion"); *Tethys Bioscience, Inc. v. Mintz, et al.*, No. 09–5115, 2010 WL 2287474, at *7 (N.D. Cal. June 4, 2010) (explaining that "California cases addressing the application of the conversion tort to intangible property have suggested that this theory should not be expanded to displace other, more suitable law"). As in those cases, the appropriate avenue for Yuga to remedy any supposed "conversion" would be its (baseless) trademark claims.

### vi.    Yuga Failed to Plausibly Allege Intentional Interference with Prospective Economic Advantage (Claim 10)

Yuga's intentional interference claim is legally insufficient because Yuga has not plausibly alleged (1) an independently wrongful act or (2) specific examples of actual disruption to an economic relationship.

***First***, to state a claim for intentional interference with prospective economic advantage, Yuga must plead that the defendant engaged in an independently "wrongful" act as defined by some constitutional, statutory, regulatory, or other determinable legal standard. *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 831 (9th Cir. 2001). Yuga alleges that Defendants engaged in an independently wrongful act by infringing Yuga's trademarks. Compl. ¶ 144. Again, these allegations cannot serve as the independently wrongful act because, for the reasons stated above, Yuga has not plausibly alleged trademark infringement.

***Second***, Yuga has failed to allege a specific economic relationship that Defendants disrupted. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (holding that intentional interference requires alleging specific examples of disruption). Yuga merely alleged that "[a]n economic relationship existed between Yuga Labs and individuals who have purchased Bored APE NFTs" and that "prior purchasers of Bored Apes 'dumped' Yuga Labs NFTs in favor of …

-23-

NOTICE OF MOTION; MOTION TO STRIKE

RR/BAYC NFTs." Compl. ¶¶ 141, 145. These allegations rely on an impermissible "market theory" of liability suggesting that Defendants disrupted Yuga relationship with the entire market of BAYC purchasers. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal of intentional interference claim when plaintiff merely alleged that "ongoing business and economic relationships with Customers have been disrupted.").

### vii. Yuga Has Not Plausibly Alleged Negligent Interference With Prospective Economic Advantage (Claim 11)

Yuga's negligent interference claim is also legally insufficient because Yuga has failed to allege (1) unreasonable conduct, (2) examples of any prospective or preexisting business relationships or (3) that Defendants owed a duty of care.

***First***, Yuga's negligent interference claim relies on its trademark infringement allegations. Compl. ¶ 156; *see Nat'l Med. Transp. Network v. Deloitte & Touche*, 72 Cal. Rptr. 2d 720, 736 (1998) (negligent interference requires an "independently wrongful" act). Again, Yuga failed to plausibly allege trademark infringement, which renders Yuga's negligent interference claim legally insufficient.

***Second***, to state a claim for negligent interference, Yuga must allege "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff." *Denims v. Ram Imports, Inc*, No. CV 20-0254 DSF (JCx), 2021 WL 4814995, at *3 (C.D. Cal. Mar. 5, 2021) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008)). Here, Yuga once again states in a general conclusory manner an existing business relationship with customers that "purchased Bored Ape NFTs." Compl. ¶¶ 152, 157. The law is clear that these kinds of conclusory "market theory" allegations cannot support a negligent interference claim. *Denims*, 2021 WL 4814995, at *3 (citing *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996)).

***Third***, Yuga failed to plead that Defendants owed a duty of care to Yuga. *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803, 598 P.2d 60 (1979) (negligent

-24-

interference requires duty of care); *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 621 (N.D. Cal. 2002) (same).  Yuga has alleged that Defendants are Yuga "competitors in the market for NFTs."  Compl. ¶¶ 66, 150.  This allegation precludes Yuga from plausibly alleging negligent interference because there cannot be a duty of care between competitors.  *See Stolz v. Wong Comms. LP*, 25 Cal. App. 4th 1811, 1825, 31 Cal. Rptr. 2d 229 (1994) ("The complaint did not allege such a duty, nor could it, since it was plain that plaintiff and defendants were competitors.").

### C. Dismissal Under Rule 12(b)(6)

Yuga's Complaint is subject to dismissal for failure to state a claim based on the reasons provided above in Section IV.B.  The test for legal sufficiency under the anti-SLAPP statute involves the same analysis as dismissing a cause of action for failure to state a claim.  *Planned Parenthood*, 890 F.3d at 834 ("If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)[.]").  Accordingly, Yuga's federal trademark infringement claims (Claims 1-3) should be dismissed for the reasons provided Sections IV.B.i-iii because, as explained above, the arguments provided in those sections apply equally to Yuga's federal law claims.  Yuga has also failed to plausibly plead its state law claims (Claims 4-11) for the reasons provided in Sections IV.B.i-vii.

## V. CONCLUSION

For the reasons set forth above, Mr. Ripps and Mr. Cahen respectfully request that the Court strike Claims 4-11 in Yuga's Complaint and award Mr. Ripps and Mr. Cahen their fees and costs pursuant to Cal. Civ. Proc. Code. § 425.16(c) and dismiss Claims 1-3 pursuant to Rule 12(b)(6), or in the alternative, dismiss Yuga's Complaint pursuant to Rule 12(b)(6) in its entirety.

1    Dated:  October 3, 2022            By: /s/ *Louis W. Tompros*

2                                       Louis W. Tompros (*pro hac vice*)
                                        louis.tompros@wilmerhale.com
3                                       Monica Grewal (pro hac vice)
                                        monica.grewal@wilmerhale.com
4                                       Scott W. Bertulli (pro hac vice)
                                        scott.bertulli@wilmerhale.com
5                                       **WILMER CUTLER PICKERING
                                          HALE AND DORR LLP**
6                                       60 State Street
                                        Boston, MA 02109
7                                       Telephone: (617) 526-6000
                                        Fax: (617) 526-5000
8
                                        Henry Nikogosyan (SBN 326277)
9                                       henry.nikogosyan@wilmerhale.com
                                        **WILMER CUTLER PICKERING
10                                         HALE AND DORR LLP**
                                        350 South Grand Ave., Suite 2400
11                                      Los Angeles, CA 90071
                                        Telephone: (213) 443-5300
12                                      Fax: (213) 443-5400

13                                      Attorneys for Defendants
                                        *Ryder Ripps and Jeremy Cahen*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on October 3, 2022.

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

-1-