ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>　　Plaintiff and<br>　　Counterclaim Defendant,<br><br>　　v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>　　Defendants and<br>　　Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF YUGA LABS, INC.'S *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER REGARDING APEX DEPOSITIONS**<br><br>Magistrate Judge:<br>Honorable John E. McDermott |

Pursuant to Local Rule 7-19 and Federal Rule of Civil Procedure 26(c), Plaintiff Yuga Labs, Inc. ("Yuga Labs") respectfully moves this Court for a protective order regarding Defendants Ryder Ripps' and Jeremy Cahen's attempts to

depose Yuga Labs' apex employees Wylie Aronow and Greg Solano prior to Defendants taking Yuga Labs' Fed. R. Civ. P. 30(b)(6) deposition and before showing good cause for deposing these apex witnesses.

Pursuant to Local Rule 7-19, the name, address, telephone number, and email address for the Defendants' counsel is:

> Louis Tompros
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA 02109
> Telephone: (617) 526-6886
> Email: louis.tompros@wilmerhale.com

## I.  BACKGROUND

While considered a startup, Yuga Labs is an international company doing business in seven countries and protecting its intellectual property with trademark filings in 120 countries. Declaration of Eric Ball ("Ball Decl.") ¶ 2. It has 128 employees worldwide and works directly with at least another 60 persons or companies on various projects all over the world. *Id.* Yuga Labs operates six brands, including the brand at issue in this litigation (the "Bored Ape Yacht Club"). *Id.*

Wylie Aronow and Greg Solano are co-founders of Yuga Labs and have been Co-Presidents and members of the Board of Directors (the "Board") since February 2022. *Id.* ¶ 3. As Co-Presidents, they are responsible for (subject to the control of the Board) the overall direction of the business; international partnerships; acting as general managers of Yuga Labs; exercising general supervision of the business, affairs and brands of Yuga Labs; presiding at all meetings of the stockholders; and having general charge of the property, agents and employees of Yuga Labs. *Id.* While they are responsible for general management of the business, they are not responsible for trademark filings or takedowns on the basis of trademark infringement. *Id.*

On December 5, 2022, Yuga Labs served deposition notices for Defendants Jeremy Cahen and Ryder Ripps, which are now confirmed for January 11 and January 12, 2023, respectively. *Id.* ¶¶ 4–6. Mr. Cahen's deposition was re-noticed from January 10 to 11 to accommodate his schedule. On December 9, 2022, Defendants served Yuga Labs with a Fed. R. Civ. P. 30(b)(6) notice of deposition. That deposition is now confirmed for January 24, 2023. *Id.* at ¶ 7.

On December 15, 2022, Defendants served deposition notices for Mr. Aronow and Mr. Solano, for January 9 and January 11, 2023, respectively. *Id.* at ¶¶ 8–9. Defendants know that Mr. Aronow and Mr. Solano are Yuga Labs' co-founders, having identified both individuals as "co-founder[s]" of Yuga Labs in their initial disclosures and throughout their submissions in this litigation. *See id.* Exhibit 7 (Defendants' Initial Disclosures). Though Defendants served the 30(b)(6) deposition notice before the individual deposition notices, Defendants still noticed these individual depositions for dates preceding the 30(b)(6) deposition of Yuga Labs itself and for dates that either precede or overlap with the depositions of Defendants. In addition to being apex witnesses, Mr. Aronow and Mr. Solano are not available for deposition on the dates and location noticed by Defendants; however, Defendants insist that Mr. Aronow and Mr. Solano appear on the noticed dates or else they intend to seek sanctions against Yuga Labs and the witnesses. *Id.* Exhibit 8. No party depositions have been taken in this litigation to date.

Defendants also, admittedly, do not seek these depositions to discover any facts related to their defense of the trademark infringement claims. Instead, Defendants seek to depose Mr. Solano and Mr. Aronow regarding "BAYC NFTS, First Amendment activity, Nazi/Racist messaging and imagery." *Id.* Exhibit 7 (Defendants' Initial Disclosures).

On December 19, 2022, counsel for Yuga Labs informed Defendants that these apex depositions were improper and provided case law establishing that "Defendants must first take Yuga Labs' 30(b)(6) deposition, confer with Yuga Labs on the

necessity and scope of apex depositions, and demonstrate that there are no non-apex witnesses from whom Defendants could obtain necessary information they still seek." *Id.* Exhibit 8. The parties have since corresponded in depth on this issue. Though Defendants have been unable to provide any authority in correspondence with Yuga Labs in support of their position that it is not their burden to show that they have exhausted less intrusive means of discovery before taking these apex depositions, they have insisted that they would not reschedule these depositions to a procedurally proper time and have threatened to "be there at the noticed time and location" and "make the appropriate record and pursue all available remedies against Mr. Aronow, Mr. Solano, and Yuga [Labs]." *Id.*

On December 28, 2022, Defendants filed their Joint Stipulation with the Court seeking an order that Yuga Labs meet and confer with them regarding these depositions. Joint Stipulation (ECF No. 69-1). As Yuga Labs articulated in its response, Defendants' motion to compel on the issue was procedurally improper because they had never served a Local Rule 37-1 letter on the issue. But, in any event, Yuga Labs has repeatedly confirmed it will meet and confer about the propriety of these depositions after the 30(b)(6) deposition of Yuga Labs.

On December 30, 2022, Yuga Labs again articulated its position that the meet and confer should proceed after the deposition of Yuga Labs, but if Defendants wanted to have the meet and confer sooner, they should have served a Local Rule 37-1 letter setting forth their legal position as to why these apex employees must sit for a deposition before Yuga Labs. Ball Decl. Exhibit 8. Defendants still have not served a Local Rule 37-1 letter on this issue. Yuga Labs also informed Defendants that, in any event, both Mr. Aronow and Mr. Solano had a schedule conflict during the week of the noticed depositions. *Id.* Yuga Labs also reminded Defendants that they already brought this issue to the Court, and so it believed motion practice on a protective order would be inefficient and premature in light of the pending motion. *Id.* Defendants refused to reschedule and wait for the Court's order on Defendants'

pending motion, stating that they would oppose any motion to prevent or postpone the depositions. *Id.* Defendants have persisted in this course despite (until yesterday) simultaneously proposing a stay of all proceedings.

Lead Counsel for the parties met and conferred on January 4, 2023, and counsel for Defendants confirmed that Defendants would oppose this application for a protective order. Ball Decl. ¶ 16.

## II.   STATEMENT OF GOOD CAUSE

Local Rule 7-19 permits applications for *ex parte* orders, and Local Rule 37-3 allows for *ex parte* discovery motions where the moving party will suffer "irreparable injury or prejudice not attributable to the lack of diligence of the moving party" or at the discretion of the Court. Such injury and prejudice are established here where Defendants improperly seek to depose Yuga Labs' apex witnesses without first taking Yuga Labs' deposition and without showing good cause for deposing these high-level employees, or without even waiting for an order from the Court on their own motion on this very issue. "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012). Once done, Yuga Labs cannot undo any abuse, harassment, or distraction from business operations that would occur from an improper, premature apex deposition. Yuga Labs has diligently attempted to resolve this concern with Defendants' counsel by seeking their justification for proceeding out of turn with these depositions, but an impasse in those discussions and Defendants' insistence and threat of sanctions, notwithstanding their pending motion, has necessitated this application.

Yuga Labs' position has been that Defendants bear the burden to move for an order compelling these out-of-order apex depositions, but out of abundance of caution and in light of Defendants' threat to move for sanctions, Yuga Labs moves

for this protective order. The procedural requirements of Local Rule 37 do not allow for an ordinary discovery motion to be filed in time to avoid the irreparable injury and prejudice that would result from these improper apex depositions, thus this application for an *ex parte* order is the only remedy available.

Counsel for Yuga Labs conferred by video with counsel for Defendants on January 4, 2023. Defendants are aware of and oppose this application. Ball Decl. ¶ 16.

### III. ARGUMENT

Under Fed. R. Civ. P. 26(c), courts may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "[F]or depositions of high-ranking executives or officials – so-called 'apex' witnesses – the burden is placed on the party seeking the deposition to show extraordinary circumstances justify the deposition. This rule arises out of the 'tremendous potential for abuse or harassment' inherent in such a deposition." *Greer v. Cnty. of San Diego*, No. 19-CV-378-JO-DEB, 2022 WL 2134601, at *1 (S.D. Cal. June 14, 2022) (citation omitted); *Pilot, Inc. v. Cub Elecparts, Inc.*, No. CV 14-9647-GW-PLAx, 2015 WL 13918235, at *2 (C.D. Cal. Dec. 7, 2015) (same). "The apex doctrine exists to protect officials from: (1) discovery that burdens the performance of their duties (especially given the frequency such officials are typically named in lawsuits); and (2) unwarranted inquiries into their decision-making process." *Greer v. Cnty. of San Diego*, 2022 WL 2134601, at *1; *Pilot, Inc. v. Cub Elecparts, Inc.*, 2015 WL 13918235, at *2 (granting protective order where the party seeking to depose apex witness had not "shown that it has exhausted other less intrusive discovery methods, such as noticing any other depositions, prior to attempting to depose" the apex witness). A party seeking apex depositions should therefore "first attempt to obtain the sought information through the less burdensome means of discovery . . ., including the Rule 30(b)(6) corporate deposition." *Gauthier v. Union Pac. R. Co.*, No. CIVA1:07CV12(TH/KFG), 2008 WL 2467016, at *4 (E.D. Tex.

FENWICK & WEST LLP
ATTORNEYS AT LAW

June 18, 2008); *see also Anderson v. Cnty. of Contra Costa*, No. 15-CV-01673-RS (MEJ), 2017 WL 930315, at *4 (N.D. Cal. Mar. 9, 2017) (party ordered to "first depose a Rule 30(b)(6) witness . . ., then meet and confer . . . about the necessity and scope of [the apex witness's] deposition."). The doctrine applies even where the witness formerly held an "apex" position in the company. *K.C.R. v. Cnty. of Los Angeles*, No. CV 13-3806 PSG-SSX, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) ("Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office.").

Defendants have not disputed, and do not appear now to dispute, any of this in their correspondence with Yuga Labs on this issue. Instead, they seek to avoid these well-established rules by arguing that (1) Mr. Aronow and Mr. Solano are not apex employees and (2) the case law on apex depositions does not apply to Yuga Labs due to the company's size. Each argument is flawed.

Mr. Aronow and Mr. Solano are co-founders and Co-Presidents of Yuga Labs, a business with international operations. Ball Decl. ¶ 2. For example, during the week of January 9 (when Defendants have noticed their depositions) Mr. Solano is meeting with international business partners traveling to meet with them from Hong Kong. Additionally, Mr. Aronow has a pre-existing medical appointment in South Carolina. It is burdensome and harassing to require Yuga Labs' co-founders and Co-Presidents to testify before Yuga Labs itself when those individuals are otherwise running a muti-national business. Moreover, Defendants have made no argument that either individual has information that a corporate representative of Yuga Labs would lack. Under the facts of this case, Defendants cannot make that showing before they have taken Yuga Labs' deposition.

There is no size requirement for a company to invoke appropriate protections against improper apex depositions. Regardless, Defendants have incorrectly stated that Yuga Labs is a company of eleven employees. Yuga Labs currently employs

128 individuals worldwide. Ball Decl. ¶ 2. Its two co-Presidents are exactly the type of witnesses who satisfy the definition of an "apex" witness.

The concerns about improper apex depositions are heightened here where Defendants' motivation for deposing Mr. Aronow and Mr. Solano before attempting to obtain useful testimony through a deposition of the company is suspect at best. For instance, Defendant Cahen publicly admits that the goal of the deposition is to force the witnesses to answer questions about whether Yuga Labs is a "racist and Nazi Ponzi scheme." *Id.* Exhibit 12. Since Defendants served their deposition notices, Defendant Cahen has posted content affirming the intent to harass Mr. Aronow and Mr. Solano, including an image of Mr. Aronow – who is Jewish – with a swastika overlaid on his arm and the caption "It's deposition szn bitch. Get ready."[1] *Id.* Exhibit 13. Further, Defendants admit that they only intend to ask Mr. Aronow and Mr. Solano about "BAYC NFTS, First Amendment activity, Nazi/Racist messaging and imagery." *Id.* Exhibit 7 (Defendants' Initial Disclosures). Clearly, Defendants do not seek to depose Mr. Aronow and Mr. Solano regarding Yuga Labs' trademarks in this trademark infringement case. Therefore, the harassment to Yuga Labs in producing these witnesses before its corporate representative testifies is compounded by the fact that Defendants openly seek to personally harass the witnesses.

Further, the intent of these depositions is to harass the witnesses with questions about material that the Court has already concluded is not relevant to Yuga Labs' claims. After considering Defendants' evidence (two declarations and 36 exhibits),

---

[1] To the extent that Defendants now claim that they require these depositions to seek discovery into their newly filed counterclaims, those claims are frivolous and subject to Yuga Labs' motion to dismiss which will be filed this month. It is also inappropriate to permit depositions on those counterclaims to proceed before depositions relevant to Defendants' trademark infringement, especially in light of Defendants' attempts to strategically time the depositions to precede and overlap with depositions noticed by Yuga Labs before Defendants noticed any depositions.

Judge Walter concluded that Defendants have not made a prima facie case that Yuga Labs' claims arise out of "Inflammatory Material"[2]: "the Court concludes that Plaintiff's claims do not arise out of Defendants' attempts to publicize and criticize Plaintiff's purported use of racist, neo-Nazi, or alt-right dog whistles." Dec. 16, 2022 Order (ECF No. 62) at 11.  Defendants nonetheless persist in their attempts to abuse the discovery process to continue to harass Yuga Labs, Mr. Aronow, and Mr. Solano about their false claims of Inflammatory Material.  At minimum, Defendants should be required to show that they have been unable to obtain the information they require for their defense to Yuga Labs' claims of trademark infringement through a 30(b)(6) deposition of Yuga Labs and other, less-intrusive means of discovery.

## IV.   CONCLUSION

Yuga Labs respectfully requests that the Court grant Yuga Labs' *Ex Parte* application for a protective order preventing Defendants from taking the depositions of Wylie Aronow and Greg Solano and ordering Defendants not to serve further notices of depositions of either individual until taking Yuga Labs' deposition and lead counsel meeting and conferring via video conference to determine the extent to which such depositions remain necessary, if at all.

Dated: January 5, 2023                                                        FENWICK & WEST LLP

By: */s/ Eric Ball*
Eric Ball

Attorneys for Plaintiff
YUGA LABS, INC.

---

[2] Defendants define "Inflammatory Material" as "any content that that [sic] is racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial, including but not limited to content that appears to be or can be understood to be racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial."  *See* ECF No. 69-4.