# Exhibit 4

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Ryder Ripps, Jeremy Cahen, Does 1-10,<br><br>Defendants. | Case No.  2:22-cv-04355-JFW-JEM<br><br>**RYDER RIPPS AND JEREMY CAHEN'S 30(b)(6) DEPOSITION NOTICE**<br><br>Judge: Hon. John F. Water |

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Ryder Ripps and Defendant Jeremy Cahen (collectively, "Defendants"), by and through their attorneys, will take the deposition

by oral examination of Yuga Labs, Inc., ("Yuga") commencing on January 23, 2023, at 9:00 a.m., or on such other date and time as to be mutually agreed between the parties, at the offices of Wilmer Cutler Pickering Hale & Door LLP, 350 Grand Ave., Suite 2400, Los Angeles, California 90071, and continuing day-to-day until completed, weekends and holidays excepted.

Yuga is required to designate, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, one or more of its officers, directors or managing agents, or other persons with knowledge of the matters set forth in Attachment A of this notice to appear and testify on its behalf at the deposition. The person(s) so designated shall testify as to matters known or reasonably available to Yuga. Mr. Ripps and Mr. Cahen request Yuga to provide as soon as reasonably possible, but no later than seven (7) business days before the deposition, written notice of the following: (a) the name and employment position of each designee; and (b) the topics in Attachment A for which each such designee has agreed to testify. Mr. Ripps and Mr. Cahen reserve the right to supplement or modify the topics listed in Attachment A or to serve additional Notice(s) of Deposition with additional topics at a later time.

The examination will be taken before an officer authorized to administer oaths and take testimony, and the deposition may be recorded by any means that the Federal Rules of Civil Procedure permit, including audio, video, and stenographic means, as well as means for the instant display of testimony on a computer.

Dated:  November 24, 2022

By: */s/   Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street

Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

MR. RIPPS AND MR. CAHEN'S
30(b)(6) DEPOSITION NOTICE

# ATTACHMENT A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Notice is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California.

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any Topic:

1.      "Yuga," "You," "Your," and/or "Plaintiff" mean Yuga Labs, Inc. and all predecessors, successors, predecessors-in-interest, successors-in-interest, subsidiary entities, divisions, parents, and/or affiliates, past or present, any companies that have a controlling interest in Plaintiff, and any current or former employee, founder, officer, director, principal, agent, consultant, representative, or attorney thereof, or anyone acting on their behalf.

2.      "Yuga Founders" or any other similar terms mean at least Wylie Aronow, Greg Solano, Zeshan Ali, Kerem Atalay, and any other person directly involved in creating Yuga.

3.      "Defendants" means Ryder Ripps and Jeremy Cahen and their present and former employees, representatives, agents, and anyone acting on their behalf.

4.      "Litigation" means the above-referenced action, 2:22-cv-04355-JFW-JEM, in the United States District Court for the Central District of California.

5.      "Complaint" shall mean Yuga's Complaint (Dkt. 1) in this Litigation, filed June 24, 2022, and any amendments thereto.

6.      The term "NFT" mean nonfungible token and any digital artwork or other asset identified by such nonfungible token.

MR. RIPPS AND MR. CAHEN'S
                                                                       30(b)(6) DEPOSITION NOTICE

7.    The term "BAYC NFT" refers to any NFT in the Bored Ape Yacht Club NFT series.

8.   The term "The Bored Ape Yacht Club" refers to the Bored Ape Yacht Club itself, including any goods and services currently or previously offered in connection with the Bored Ape Yacht Club.

9.    The term "RR/BAYC NFT" refers to any NFT in the "Ryder Ripps Bored Ape Yacht Club" NFT series.

10.    The term "BAYC Mark" refers to any mark in which Yuga claims to have intellectual property rights, including but not limited to the marks subject to pending federal trademark applications identified in the Complaint.

11.    The term "Asserted Mark" refers to all marks that Yuga accuses Mr. Ripps and Mr. Cahen of infringing.

12.    "Digital Platform" refers to Twitter, Discord, Instagram, the websites "www.4chan.org" and "www.4channel.org," and any other website/application on which users can post, regardless of whether such posts may be anonymous or not.

13.    "User Account" means an account for a Digital Platform that allows users to register, log in, and interact with or on the Digital Platform.

14.    "Inflammatory Material" means any content that that is racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial, including but not limited to content that appears to be or can be understood to be racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial.

15.    "Person(s)" means natural persons as well as business entities and associations of all sorts, including partnerships, companies, proprietorships, joint ventures, corporations, government agencies, and unincorporated associations.

16.    "Investor(s)" means any Person or Entity who either: (a) has a financial interest in or provides financial support to Yuga, or (b) at any time in the past, had a financial interest in or provided financial support to Yuga.

17.    "Interest" means a financial interest of any kind in the subject matter of this Litigation, any party to this Litigation or any other interest that could be substantially affected by the outcome of this Litigation.

18.    "Document(s)" has the broadest possible meaning permitted by Federal Rules of Civil Procedure Rules 26 and 34 and the relevant case law, and the broadest meaning consistent with the terms "writings" or "recordings" as set forth in Rule 1001 of the  Federal Rules of Evidence, and specifically and without limitation include tangible things and electronically stored information, including e-mail and information stored on computer disk or other electronic, magnetic, or optical data storage medium. "Document(s)" also includes all drafts or non-final versions, alterations, modifications, and amendments to any of the foregoing.

19.    "Communication(s)" means the transmittal of information in the form of facts, ideas, inquiries, and any exchange or transfer of information whether written, oral, electronic, or in any form.

20.    "Thing(s)" has the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and the relevant case law.

21.    "Date(s)" shall mean the exact date(s), if known, or the closest approximation to the exact date(s) as can be specified, including without limitation the year, month, week in a month, or part of a month.

22.    "Entity" or "Entities" means, including without limitation, corporation, company, firm, partnership, joint venture, association, governmental body or agency, or Persons other than a natural person.

23.     "Third Party" or "Third Parties" shall mean all Persons or Entities who are not parties to this Litigation, as well as their officers, directors, employees, agents, and attorneys.

24.     "Relating" means regarding, referring to, concerning, mentioning, reflecting, pertaining to, analyzing, evidencing, stating, involving, identifying, describing, discussing, documenting, commenting on, dealing with, embodying, responding to, supporting, contradicting, comprising, containing, or constituting (in whole or in part), as the context makes appropriate.

25.     The singular form of a word shall be interpreted as plural, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb includes also within its meaning all other tenses of the verb so used.

26.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively so as to acquire the broadest meaning possible, so as to bring within the scope of the Request all information that might otherwise be construed to be outside its scope.

27.     The term "all" is to be construed to mean "any" and "each" and vice versa.

28.     "Including" shall be construed to mean "including, without limitation" or "including, but not limited to."

29.     "Identify" means (1) when referring to a Person, the Person's full name, present or last known address and telephone number, and the last known title and place of employment; (2) when referring to non-trademark Documents, the production number or type of Document, its general nature and subject matter, date of creation, and all author(s), addresses(s), and recipient(s); (3) when referring to trademark Documents, the country, trademark and/or application number, dates of filing, publications, and grant, and the names of applicants; and (4) when referring to a

source or Thing, sufficient information to identify the location, ownership, and nature of such source or Thing.

30.    "Describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or communication, means (a) to state the date and place thereof; (b) to identify the individual participants; (c) to summarize separately for each individual participant what he said or did; and (d) to identify each Document used or prepared in connection therewith or making any reference thereto.

## TOPICS FOR EXAMINATION

1.   Yuga's business, including without limitation its formation, members, structure, employees, history, financing, revenues, profits, losses, assets, investments, business plans, business strategy, advertising, marketing, projections, budget, and capitalization.

2.   All Persons and Entities that have any kind of financial interest in Yuga.

3.   Yuga's motivation and ideological vision for creating the BAYC NFTs.

4.   Yuga's relationships with each celebrity holding BAYC NFTs.

5.   Yuga's relationships with Ape Foundation, ApeCoin DAO, FTX, and FTX Ventures.

6.   The acquisition, sale, license, assignment, and enforcement of the Asserted Marks, including without limitation all offers, demands, term sheets, agreements, assignments, licenses, settlements, and covenants Relating to any of the Asserted Marks, and including without limitation any related discussions, negotiations, agreements, terms (including payment terms), payments, and revenues.

7.   All agreements Relating to the Asserted Marks, including without limitation all licenses, assignments, joint venture agreements, technology transfer agreements, settlement agreements, research and development agreements, covenants not to sue, hold harmless agreements, indemnification agreements, grants of rights, or any other

MR. RIPPS AND MR. CAHEN'S
30(b)(6) DEPOSITION NOTICE

agreements or proposal, offers, or demands for agreements Relating to the Asserted Marks.

8.   The conception, creation, design, or activities leading to the creation of the Asserted Marks, including without limitation the associated dates, identification of the Persons and Entities involved in the same, and any supporting documentation, including without limitation notebooks, sketchbooks, memoranda, design reviews, progress reports, drawings, schematics, diagrams, electronically stored information, diaries, and calendars.

9.   Any pre-use or pre-application clearance search conducted with respect to the Asserted Marks.

10. Any of Yuga's activities relating to the adoption or use of any domain names including any of the Asserted Marks.

11. The first publicly known use of each of the Asserted Marks.

12. The conception, creation, design, or activities leading to the creation of the BAYC NFTs, including without limitation the associated dates, identification of the Persons involved in the same, and any supporting documentation, including without limitation notebooks, sketchbooks, memoranda, design reviews, progress reports, drawings, schematics, diagrams, electronically stored information, diaries, and calendars.

13. All writings, publications, abstracts, papers, presentations, memoranda, reports, or speeches (whether published or not) authored or given, in whole or in part, by any Yuga Founder, in whole or part, regarding BAYC NFTs.

14. The preparation, filing, and/or prosecution leading to each of the Asserted Marks, including without limitation the decision to seek trademark protection and all Persons involved in these activities and decisions.

15. The decision to withdraw or abandon any Related Marks or Applications, and all Persons involved in that decision.

16. Yuga's reasons for not pursuing trademark registration or any other rights with the United States Patent and Trademark Office for the APE mark asserted in this Litigation.

17. Each Yuga Founders' contribution to BAYC NFTs, including but not limited to their contribution to the design of digital images that the BAYC NFTs reference or point to.

18. Each Yuga Founders' activities on any Digital Platform relating to Inflammatory Material, RR/BAYC NFTs, Mr. Ripps, Mr. Cahen, or any other content relevant to the issues in this Litigation.

19. Each Yuga Founders' public usernames on Digital Platforms.

20. Each individual and entity involved in the design of digital images that BAYC NFTs reference or point to.

21. The circumstances under which each Yuga Founder obtained any BAYC NFTs.

22. Communications and collaborative efforts with each individual and entity involved in the design of digital images that BAYC NFTs reference or point to.

23. Yuga's responses to Mr. Ripps and Mr. Cahen's Interrogatories and any supplemental response(s).

24. All writings, publications, abstracts, papers, presentations, memoranda, reports, or speeches (whether published or not) authored or given, in whole or in part, by any Yuga Founder, in whole or part, regarding BAYC NFTs.

25. The preparation, filing, and/or prosecution leading to each of the Asserted Marks, including without limitation the decision to seek trademark protection and all Persons and Entities involved in these activities and decisions.

26. The decision to withdraw or abandon any Related Marks or Applications, and all Persons and Entities involved in that decision.

MR. RIPPS AND MR. CAHEN'S
30(b)(6) DEPOSITION NOTICE

27. Efforts by Yuga and/or any third party to commercialize the Asserted Marks and/or BAYC NFTs.

28. Any facts Relating to the harm (monetary or otherwise) that Yuga has purportedly sustained or will sustain as a result of Mr. Ripps and Mr. Cahen's alleged use of the Asserted Mark, including but not limited to any lost profits that Yuga associates with RR/BAYC NFTs.

29. All expenses Yuga has incurred relating to corrective advertising to distinguish BAYC NFTs from RR/BAYC NFTs.

30. All facts Relating to Yuga's knowledge of actual consumer confusion with regards to the origin of RR/BAYC NFTs.

31. All facts Relating to Yuga's knowledge of consumers distinguishing RR/BAYC NFTs from BAYC NFTs.

32. All facts Relating to Yuga's knowledge of any consumers that acquired RR/BAYC NFTs with the belief that they were purchasing a Yuga product.

33. All activities undertaken by Yuga to distinguish RR/BAYC NFTs from BAYC NFTs to BAYC NFT holders.

34. Any facts or evidence Relating to customer demand for BAYC NFTs including how customer demand has changed since the release of RR/BAYC NFTs.

35. Any facts or evidence Relating to overlap between consumers for RR/BAYC NFTs and consumers for BAYC NFTs.

36. Any facts or evidence Relating to returns of BAYC NFTs based on consumers incorrectly believing they were purchasing RR/BAYC NFTs.

37. Any facts or evidence Relating to consumers attempting to return RR/BAYC NFTs to Yuga under the mistaken belief that they were holding BAYC NFTs.

38. Any facts or evidence Relating to marketing of BAYC NFTs.

MR. RIPPS AND MR. CAHEN'S
30(b)(6) DEPOSITION NOTICE

39. Any facts or evidence Relating to Yuga's efforts to popularize BAYC NFTs.

40. Yuga's activities involving the use of celebrities, influencers, or other public persons in which a BAYC NFTs was given, exchanged, or sold, including but not limited to any non-disclosure agreements or arrangements with third parties/entities in furtherance of giving, exchanging, or selling a BAYC NFT to a celebrity, influencers, or any other public person.

41. All channels of trade that Yuga has used to sell BAYC NFTs.

42. Any facts or evidence regarding consumer sophistication for BAYC NFTs or any other product, good, service, or event that the Asserted Marks identify.

43. Yuga's intellectual property monetization reports and presentations, including without limitation any revenues, valuations, projections, meetings, negotiations, licenses, proposed licenses, sales, and/or proposed sales discussed therein.

44. Yuga's first awareness of the RR/BAYC project, RR/BAYC NFTs, Mr. Ripps, Mr. Cahen, and any other products or services accused of infringement in this Litigation.

45. All activities by Yuga, its representatives, or agents, including but not limited to Guy Oseary, directed at preventing Defendants or other individuals affiliated with RR/BAYC from commenting or criticizing Yuga's use of racist messaging and imagery.

46. All activities by Yuga, its representatives, or agents, including but not limited to Guy Oseary, directed at preventing members of the RR/BAYC community from commenting or criticizing Yuga's use of racist messaging and imagery.

47. All activities by Yuga, its representatives, or agents directed at silencing critical commentary regarding Yuga, including any activities taken on Discord,

Twitter, or other social media platforms to ban users, block users, turn of comments, or any other similar activities.

48. All activities by Yuga, its representatives, or agents directed at removing the sale of RR/BAYC NFTs from platforms, including but not limited to OpenSea and Foundation.

49. Communications with actual or potential Investors about this Litigation.

50. The circumstances under which Yuga determined that Yuga should or would sue Mr. Ripps and Mr. Cahen in the Litigation.

51. Yuga's knowledge regarding Mr. Ripps's work, experience, recognition, or accomplishments as an artist.

52. Yuga's knowledge of the #BURNBAYC movement.

53. Yuga's determination of any products, services, or other similar business activities from any Person or Entity that allegedly infringes the Asserted Marks.

54. Any facts or evidence Relating to litigation that Yuga has or has not initiated against entities selling knock-off BAYC NFTs or NFTs thematically based on Yuga's NFT collections.

55. Yuga's knowledge of any NFT collection with artwork that depicts images similar to those depicted in the BAYC NFTs.

56. All notices that Yuga has provided to Persons or Entities regarding the existence or alleged infringement of the Asserted Marks.

57. All of Yuga's agreements with any Person or Entity to not use a term or Mark identical to, similar to, or confusingly with any of the Asserted Marks.

58. All Persons or Entities that Yuga has given permission to use the Asserted Marks.

59. All of Yuga's activities involving Focus IP, Inc. dba Appdetex regarding the Defendants, the RR/BAYC NFT collection, Defendants' alleged use of the Asserted Marks, and Defendants' artwork corresponding to the BAYC NFTs.

Case No. 2:22-cv-04355-JFW-JEM

MR. RIPPS AND MR. CAHEN'S
30(b)(6) DEPOSITION NOTICE

60.  All allegations, facts, or evidence relating to Yuga's infringement, dilution, or any other violation of the trademark rights of any Person or Entity.

61.  All documents, communications, facts, and evidence Relating to Yuga's use of Inflammatory Material in connection with BAYC NFTs.

62.  Yuga's cooperation, engagement, and/or interaction with Third Parties, including press specialists, advertising agencies, and market research entities, for responding to the public criticism regarding Yuga's use of Inflammatory Material.

63.  Yuga's decision to not remove Inflammatory Material present in its goods, services, and marks after the public became aware of Yuga's use of Inflammatory Material.

64.  Actions taken by Yuga, including any Yuga employees, representatives, or agents, to harass, intimidate, threaten, or other similar action to the Defendants, Defendants' friends and family, any individuals involved in the RR/BAYC project, or any member of the RR/BAYC community.

65.  Actions taken by Yuga to stop or prevent its employees, representatives, or agents from harassing, intimidating, threatening, or engaging in any other similar acts at the Defendants, Defendants' friends and family, and individuals involved in the RR/BAYC project, or any member of the RR/BAYC community.

66.  Yuga's efforts to disprove or discredit Persons or Entities commenting on Yuga's use of Inflammatory Material.

67.  All communications directed towards the general public, media outlets, newspapers, magazines, and other similar communications relating to Ryder Ripps, Jeremy Cahen, or accusations relating to Yuga's use of Inflammatory Material.

68.  Yuga's efforts to criticize or discredit Ryder Ripps, including communications to the general public, media, and any non-public communications.

69. Yuga's efforts to retain third parties to criticize or discredit Ryder Ripps, including Yuga's retainer and activities associated with Stranger Brew Strategies and any other similar Persons or Entities.

70. All activities relating efforts by Yuga, any Yuga employees, representatives, or agents, to delete, take-down, or otherwise modify internet archives and Digital Platform accounts.

71. All non-disclosure agreements with artists involved in creating the BAYC NFT collection.

72. Any of Yuga's actual or planned transfer of rights in any of the Asserted Marks.

73. Yuga's activities associated with locking the metadata, burning ownership of the BAYC smart contract, or similar activities relating to the BAYC NFT collection.

74. All activities relating to Yuga's sensitivity readers or other employees involved in monitoring Yuga's content.

75. Yuga's release and release schedule for BAYC NFTS, including but not limited to the date the artwork corresponding to newly-minted BAYC NFTs was revealed and the launch date for "Otherside."

76. Yuga's knowledge of threats made by Yuga employees to family members of any Defendant.

77. The factual basis for Yuga's statement in its Complaint that "The Bored Ape NFTs [have been] dubbed 'the epitome of coolness for many' by *Forbes*."

78. The factual basis for Yuga's statement in its Complaint that Mr. Ripps has "reap[ed] millions of ill-gotten profit from these sales."

79. The factual basis for Yuga's statement in its Complaint that Mr. Ripps's "accusations of racism" are "false."

80.  The factual basis for Yuga's statement in its Complaint that Mr. Ripps has "rake[d] millions in ill-gotten profit from sales of the RR/BAYC NFTs."

81.  The factual basis for Yuga's statement in its Complaint that Mr. "Ripps has made well over $5 million through this scheme of pumping and dumping fake NFTs."

82.  The factual basis for Yuga's statement in its Complaint that Mr. Ripps's "accusations of racism over social media networks like Twitter and Instagram" are "baseless."

83.  Any policy, practice, or custom of Yuga regarding document retention, preservation, and/or destruction.

Case No. 2:22-cv-04355-JFW-JEM

MR. RIPPS AND MR. CAHEN'S
30(b)(6) DEPOSITION NOTICE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served via electronic mail on December 9, 2022, on counsel of record for Yuga Labs, Inc.  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: December 9, 2022                    By: <u>*/s/ Louis W. Tompros*    </u>

                                                            Louis W. Tompros