Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **DISCOVERY MATTER** <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER** <br><br> Judge: Hon. John F. Walter <br><br> Magistrate Judge: <br> Hon. John E. McDermott |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND .............................................................................................. 3

III. ARGUMENT .................................................................................................... 4

    A. The Apex Witness Doctrine Does Not Apply to Small Companies Like Yuga ............................................................................................... 4

    B. Mr. Aronow and Mr. Solano Are Not Apex Witnesses ............................ 6

    C. Mr. Aronow and Mr. Solano Have Personal Knowledge of Relevant Facts .......................................................................................... 7

    D. Yuga Has Made No Other Showing Warranting *Ex Parte* Relief ............. 8

IV. CONCLUSION ............................................................................................... 10

## I. INTRODUCTION

As Plaintiff Yuga Labs, Inc. ("Yuga") concedes, Defendants Ryder Ripps and Jeremy Cahen identified Yuga employees Wylie Aronow and Greg Solano more than a month ago (on December 5) and served deposition notices on them many weeks ago (on December 15). But rather than object at the time, identify any pre-existing scheduling conflict, or bring a motion under the Court's ordinary procedure for resolution of discovery disputes, Yuga waited until after 7:00 p.m. two business days before the first deposition to bring an *ex parte* motion for a protective order.

What Yuga omits is that Defendants specifically noticed the depositions of Mr. Aronow and Mr. Solano for the week of January 9th because it is critical to have their testimony prior to the parties' Court-ordered mediation the following week, on January 19th. As Yuga itself said when insisting on the depositions of Defendants prior to the parties' mediation, "Defendants' attendance at their depositions is necessary for the parties to engage in a meaningful mediation and to prepare expert reports." Ball Decl. Ex. 8 (Dkt. 75-10), at 9. So too it is critical for Defendants to have the pre-mediation depositions of Mr. Aronow and Mr. Solano, who are ***the only two Yuga employees that, by Yuga's own admission, "participated in the design or creation of the Asserted Mark" at issue in this case***. Dkt. No. 70-6 at 11 (Yuga's First Supp. to Inter.). And as if that were not enough, Mr. Aronow and Mr. Solano are ***expressly named in Defendants counterclaims*** as the two individuals who made statements giving rise to Mr. Ripps's and Mr. Cahen's counterclaims for intentional infliction of emotional distress, negligent infliction of emotional distress, and declaratory judgment of no defamation. *See* Dkt. 65, at 45, ¶ 64 ("On August 18, 2022, Yuga sent two of its co-founders, Greg Solano and Wylie Aronow, for a public interview to continue attacking Mr. Ripps and Mr. Cahen"); *see also id.* at ¶¶ 35, 65-66, 98. What is good for the goose is good for the gander: both parties noticed pre-

mediation, mid-January individual depositions of key witnesses, and those depositions should go forward as scheduled.

Nor is Yuga entitled to *ex parte* relief in the form of a protective order for a newly disclosed supposed "pre-existing" appointment or its "meeting with international business partners." *See* Yuga Br., Dkt. 75, at 7. Preliminarily, Yuga made no mention of this "pre-existing" appointment prior to filing its *ex parte* application. Rather, it referred only obliquely to a "personal commitment by Mr. Aronow on January 9"—which Defendants readily agreed to accommodate by starting the deposition early or ending it late (to which Yuga did not respond). *See* Dkt. 75-10, at 2. And notably, Yuga did not include with its *ex parte* motion any declaration from Mr. Aronow attesting to the fact that this appointment is genuine and was actually "pre-existing"—Yuga's brief simply asserts that there is a "pre-existing" conflict with no citation whatsoever. *See* Yuga Br., Dkt. 75, at 7 (citing nothing). Likewise, Yuga asserts that Mr. Aronow and Mr. Solano are "meeting with international business partners traveling to meet with them from Hong Kong" (Dkt. 75 at 7), but fails to mention that those meetings are in fact "***later that week***"—not actually in conflict with the noticed deposition dates (Dkt. 75-10 at 3). If Yuga had genuine conflicts, it could have and should have raised them back in December when Defendants asked for the dates and noticed the depositions.

Finally, Yuga's late-breaking reliance on the apex witness doctrine fails. As detailed below, neither Mr. Solano nor Mr. Aronow meet the high bar for immunity from a deposition as an apex witness. Mr. Aronow has candidly admitted that he is not the CEO of Yuga but rather "just work[s] here," and Mr. Solano admitted that his job responsibilities are such that he has been confused with an intern. Moreover, Yuga is an 11-person company; the apex witness doctrine is simply inapplicable. And even if it were applicable, it cannot be used to shied Mr. Aronow and Mr. Solano, whom Yuga itself identified as the ***sole employees*** in possession of key information

1  about the asserted trademarks in this case, and who are named individually in the
2  Answer as the Yuga employees responsible for the statements giving rise to
3  Defendants' counterclaims.  *See* Dkt. No. 70-6 at 11; Dkt. 65 at ¶¶ 35, 64-66, 98
4       Yuga's late-breaking motion does not meet the high bar for *ex parte* relief, and
5  the Court should deny it.
6  **II.    BACKGROUND**
7       Yuga's *ex parte* motion comes essentially on the eve of the scheduled
8  depositions of Mr. Aronow and Mr. Solano, more than a month after Defendants
9  requested those depositions.  Defendants have been diligently working to schedule
10 these and other depositions since December 5, 2022, seeking times and locations that
11 are accommodating to everyone.  By contrast, Yuga repeatedly refused to provide any
12 available dates for ***any*** individual employee witnesses (or even to have a phone call to
13 discuss dates).
14      Specifically, on December 5, 2022, Defendants sent correspondence inviting
15 Yuga to confer regarding the deposition schedule (after Yuga improperly noticed the
16 Defendants' depositions without first even asking for acceptable times and locations,
17 as required by the Court's Civility Guidelines).  Dkt. No. 69-12 (Emails Regarding
18 Dep. Scheduling) at 5.  Yuga ignored Defendants' invitation to confer.  Defendants
19 then sent a second request for a conference on December 9, 2012, and a third request
20 on December 12, 2022.  *Id*. at 4-5.  Yuga again improperly ignored both of these
21 requests.  *Cf. Edge Sys LLC v. Ageless Serums LLC*, 20-cv-9669-FLA, 2022 WL
22 2093850, at *8 (C.D. Cal. Feb. 1, 2022) ("Counsel should respond to an email or
23 telephone message from opposing counsel within a reasonable amount of time[.]").
24      Then, on December 13, 2022, Defendants sent a fourth follow-up email
25 regarding deposition scheduling, asking Yuga "When can we expect the courtesy of a
26 response?"  Dkt. No. 69-12 at 4.  Yuga at last responded that it was not prepared to
27 discuss deposition scheduling and that it intended to move forward with both of
28

1  Defendants' depositions on the noticed dates. *Id*. at 3.  Defendants responded that the
2  parties should agree on a reasonable schedule that accommodates everyone's
3  availability and that it would take Yuga's "improper notices as requests for
4  depositions." *Id*. at 2-3.

5        On December 15, 2022, Yuga sent another correspondence once again ignoring
6  Defendants' repeated invitations for a conference and instead threatened to move *ex*
7  *parte* to compel Defendants' depositions on the noticed dates. *Id*. at 1-2.  Defendants
8  responded by reminding Yuga of the outstanding requests to confer and noting
9  problems with the noticed location for Mr. Cahen's deposition.  *Id*. at 1.  Due to
10 Yuga's persistent refusal to identify any date for depositions of its own employees,
11 Defendants were also forced to serve deposition notices for Mr. Aronow and Mr.
12 Solano on dates that Defendants selected. *Id*. at 1.

13       Yuga has now moved *ex parte* for a protective order precluding the
14 depositions—after close of business two business days before Mr. Aronow's
15 deposition despite having received the deposition notices more than three weeks ago.
16 Yuga's untimely and meritless *ex parte* motion should be denied.

17 **III.  ARGUMENT**

18       The apex witness doctrine does not shield the depositions of Mr. Aronow and
19 Mr. Solano because (1) the apex witness doctrine does not apply to small, nascent
20 companies such as Yuga, (2) Mr. Aronow and Mr. Solano are not apex witnesses, and
21 (3) Mr. Aronow and Mr. Solano have unique personal knowledge of relevant facts in
22 this litigation.  And Yuga's late-breaking and unsupported claims of conflicts are no
23 basis for *ex parte* relief.

24       **A.  The Apex Witness Doctrine Does Not Apply to Small Companies
25           Like Yuga**

26       The apex witness doctrine was created to prevent depositions of high-ranking
27 officials "in the case of a large, multi-national corporation" or a "company of global

28

-4-

proportions." *Apple v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 163 (N.D. Cal. 2012). Courts do not apply the doctrine to small companies because executives in small companies often have relevant personal knowledge, rendering them proper deponents. *See Rosales v. FitFlop USA, LLC*, 11-cv-0973-W(KSC), 2013 WL 12416060, at *5 (S.D. Cal. Jan. 4, 2013) ("[G]iven the admittedly small size of the company …, there does not appear to be a viable reason why plaintiffs should be required to take the depositions of lower-level executives or employees first."); *Ray v. BlueHippo Funding, LLC*, 06-cv-1807-JSW-EMC, 2008 WL 4830747, at *2 (N.D. Cal. Nov. 6, 2008).

Yuga is not a large corporation of "global proportions." In fact, Yuga has publicly admitted that it has ***only 11-full time employees***:

> To date, we have 11 full-time employees and many contractors who work on every aspect of the BAYC, from video games to merch, digital and physical experiences, scavenger hunts, etc.
>
> 12:27 PM · Jan 3, 2022
>
> 37 Retweets   4 Quote Tweets   1,148 Likes

Dkt. No. 70-3 (Yuga's Jan. 3, 2022, Twitter Post). And even when counting part-time employees and other non-full-time workers, Yuga has only around 100 team members:

> Along the way, the Yuga team has grown from 4 to 100+ people, and we're still on the lookout for brilliant thinkers and doers who can grow alongside us, push us forward, and create work that makes history. If that sounds like you, apply to one of our open roles or reach out.

Dkt. No. 70-4 (Yuga's LinkedIn Profile).

In fact, Yuga is so small that it does not even have a document retention policy. Yuga has admitted that it has "no responsive documents concerning document retention policies." Dkt. No. 69-1 at 48. The idea that a company that is too small to

have a document retention policy should be afforded protections under the apex witness doctrine makes no sense.

Because, by Yuga's own public admissions, it is nowhere near a "company of global proportions," the apex witness doctrine does not apply from the outset.

### B. Mr. Aronow and Mr. Solano Are Not Apex Witnesses

Even if the "apex witness" doctrine could apply to a company of Yuga's small size, Wylie Aronow and Greg Solano are not apex witnesses. Mr. Aronow and Mr. Solano are two of four co-founders of a small company who, by their own admission, do not now occupy any high-ranking positions. Mr. Aronow has publicly admitted through his Twitter profile (@GordonGoner) that he "just works" at Yuga's corporation. Specifically, when a Twitter user asked Mr. Aronow to post more "family friendly music," he responded, "Hey maybe you can suck my dick." When another Twitter user responded by calling him out by stating "You're the CEO of Yuga Labs," Mr. Aronow responded, "*I just work here.*":



-6-

Dkt. No. 70-5 (Aronow Nov. 9, 2022, Twitter Post).

Mr. Solano has made similar public statements confirming that he is not an apex witness. For example, on August 18, 2022, Mr. Solano admitted on the Full Send Podcast (in an appearance that is the subject of Defendants' counterclaims), that he performed low-level tasks at company events, stating "I was out there, like, giving wristbands," "people thought I was an intern," and "that was the job every day."[1] Employees that "just work" at Yuga and that are confused with being "an intern" are not the type of high-ranking executives the apex witness doctrine is intended to shield.

### C. Mr. Aronow and Mr. Solano Have Personal Knowledge of Relevant Facts

Even if the apex witness doctrine did apply, it would not prevent the depositions of Mr. Aronow and Mr. Solano. The law is clear that "where a corporate officer may have first-hand knowledge of relevant facts, the deposition should be allowed." *Monster Energy Co. v. Vital Pharms., Inc.*, 5:18-cv-cv-01882-JGB-SHK, 2021 WL 3524128, at *3 (C.D. Cal. May 26, 2021). Here, an important issue in the case is the creation of the asserted trademarks and their development and use in commerce. Yuga has stated in an interrogatory response that "Wylie Aronow, Greg Solano, and a third-party designer engaged by Wylie Aronow and Greg Solano participated in the design or creation of the Asserted Marks." Dkt. No. 70-6 at 11 (Plaintiff's First Supp. to Inter.). In other words, the only two Yuga employees who "participated in the design or creation" of the very "Asserted Marks" at issue in the case are Mr. Aronow and Mr. Solano. They are thus necessarily the only employees with personal knowledge regarding the creation of the asserted marks—a critical issue in the case.

---

[1] Solano's admissions on the Full Send Podcast are located at 1:10 in the following publicly available video: https://www.youtube.com/watch?v=UeeEFDLaMYY.

1    Mr. Aronow and Mr. Solano also have unique personal knowledge regarding
2 Yuga's activities aimed at targeting and harassing the Defendants. Mr. Aronow and
3 Mr. Solano went on the Full Send Podcast and spent about five minutes attacking the
4 Defendants. Mr. Aronow and Mr. Solano accused the Defendants of defaming Yuga
5 by spreading a conspiracy theory regarding Yuga's use of neo-Nazi imagery, and
6 stated that Defendants are "scammers," "grifters," and the "Alex Jones of NFTs." Mr.
7 Aronow and Mr. Solano's statements on the Full Send Podcast had over 1.7 million
8 viewers. Because Defendants have asserted claims for intentional infliction of
9 emotional distress, negligent infliction of emotional distress, and declaratory judgment
10 of no defamation based in part on these statements by Mr. Aronow and Mr. Solano,
11 Mr. Aronow and Mr. Solano's personal acts and knowledge are highly relevant to this
12 case and thus render them appropriate deponents.

13    **D.    Yuga Has Made No Other Showing Warranting *Ex Parte* Relief**

14    Defendants noticed the depositions of Mr. Aronow and Mr. Solano for the week
15 of January 9th because of the importance of completing those depositions ahead of the
16 Court-ordered mediation on January 19th and the subsequent expert report deadline.
17 Yuga itself has emphasized (rightly) the importance of the completion of key
18 depositions "for the parties to engage in a meaningful mediation and to prepare expert
19 reports." Ball Decl. Ex. 8 (Dkt. 75-10), at 9.

20    Yuga has known about these depositions for more than a month and waited to
21 file an *ex parte* motion less than two business days before them. That is not a proper
22 use of *ex parte* relief. "Ex parte applications are 'rarely justified.'" *Chrome Hearts*
23 *LLC v. Styleworks Design Grp., Inc.*, No. 2:21-cv-08779-FWS-MRW, 2022 WL
24 3574424, at *1 (C.D. Cal. Aug. 2, 2022) (quoting *Mission Power Eng'g Co. v. Con'l*
25 *Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995); *see also Mission Power*, 883 F.
26 Supp. at 489 (explaining that to be proper, an *ex parte* application must demonstrate
27 that there is good cause to allow the moving party to "go to the head of the line in
28

-8-

front of all other litigants and receive special treatment"). "The use of such a procedure is justified only when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (i.e., to file an overlong brief or shorten the time within which a motion may be brought)." *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013). *Ex parte* applications should be rarely used, precisely because they "throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason. They demand priority consideration, where such consideration is seldom deserved. In effect, they put the applicant 'ahead of the pack,' without cause or justification." *Id.* (citation omitted).

Yuga offered no reason "why the underlying request could not be heard according to regular noticed procedures." *Chrome Hearts*, 2022 WL 3574424, at *2. It has known about Defendant's request to depose Mr. Aronow and Mr. Solano for more than a month—ample time to prepare a discovery motion on its "apex witness" theory in the ordinary course. Nor do Yuga's other bases for a protective order justify its request for *ex parte* relief. If there really was a "pre-existing" appointment preventing one of the depositions (an allegation for which Yuga provides no citation), it was surely "pre-existing" when the deposition dates were identified in early December—and Yuga could have raised the issue and/or sought relief from the Court then. *See* Yuga Br., Dkt. 75, at 7. And meetings with visiting business people **later in the week** provide no basis for a protective order to prevent an otherwise permissible deposition—much less satisfy the high bar for *ex parte* relief. *See* Dkt. 75-10 at 3.

As the *Mission Power* case put it, "filing an *ex parte* motion … is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'" and so "[t]here had

-9-

1 better be a fire." *Id. Mission Power*, 883 F. Supp. at 492. There is no fire, and Yuga's
2 motion should be denied.

3 **IV. CONCLUSION**

4     For the reasons set forth above, this Court should deny Yuga's *ex parte* motion
5 for a protective order regarding the depositions of Mr. Aronow and Mr. Solano.

6
7

8 Dated: January 6, 2023          By: /s/ *Louis W. Tompros*

9     Louis W. Tompros (*pro hac vice*)
    louis.tompros@wilmerhale.com
10     Monica Grewal (pro hac vice)
    monica.grewal@wilmerhale.com
11     Scott W. Bertulli (pro hac vice)
    scott.bertulli@wilmerhale.com
12     **WILMER CUTLER PICKERING**
      **HALE AND DORR LLP**
13     60 State Street
    Boston, MA 02109
14     Telephone: (617) 526-6000
    Fax: (617) 526-5000
15
    Derek Gosma (SBN 274515)
16     derek.gosma@wilmerhale.com
    Henry Nikogosyan (SBN 326277)
17     henry.nikogosyan@wilmerhale.com
    **WILMER CUTLER PICKERING**
18       **HALE AND DORR LLP**
    350 South Grand Ave., Suite 2400
19     Los Angeles, CA 90071
    Telephone: (213) 443-5300
20     Fax: (213) 443-5400

21     Attorneys for Defendants
    *Ryder Ripps and Jeremy Cahen*
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on January 6, 2023.

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000