ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>    Defendants and<br>    Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**PLAINTIFF YUGA LABS, INC.'S SPECIAL MOTION TO STRIKE COUNTERCLAIMS; PLAINTIFF YUGA LABS, INC.'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>Date:         February 27, 2023<br>Time:         1:30 p.m.<br>Courtroom: 7A<br>Judge:        Honorable John F. Walter |

FENWICK & WEST LLP
ATTORNEYS AT LAW

## NOTICE OF MOTIONS AND MOTIONS

PLEASE TAKE NOTICE that on February 27, 2023, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 7A of this Court, located at 350 W. 1st Street, Los Angeles, California 90012, Plaintiff and Counterclaim Defendant Yuga Labs, Inc. ("Yuga Labs") will and hereby does move this Court, pursuant to California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute"), for an order striking the state-law Counterclaims (Counts 4, 5, and 6) filed by Defendants and Counterclaim Plaintiffs Ryder Ripps and Jeremy Cahen ("Defendants").  In the alternative, to the extent necessary, Yuga Labs will and does move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), for an order dismissing those same Counterclaims.

Also, Yuga Labs will and does move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), for an order dismissing the federal-law Counterclaims (Counts 1, 2, and 3).

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 4, 2023 and the filing of a Joint Statement Re Local Rule 7-3 on January 9, 2023 (ECF 78).

These Motions are supported by this Notice; the memorandum of points and authorities filed herewith; the Declaration of Eric Ball; Yuga Labs' concurrently filed request for judicial notice; any other matters of which this Court may take judicial notice; all pleadings, files, and records in this action; and such other argument as this Court may receive at the hearing on this motion.

Dated:  January 18, 2023               FENWICK & WEST LLP

                                       By:  /s/ Eric Ball
                                            Eric Ball

                                       Attorneys for Plaintiff
                                       YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

NOTICE OF MOTIONS AND MOTIONS ............................................................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.     INTRODUCTION ...................................................................................... 1

II.    ARGUMENT ............................................................................................. 2

    A.    Defendants' "Emotional Distress" Claims Under Counts 4 and 5 Fail Under California's Anti-SLAPP Statute and Rule 12(b)(6). ......................................................................................... 2

        1.    California's Anti-SLAPP Statute applies to Defendants' "emotional distress" claims. ................................................... 3

        2.    Defendants fail to allege extreme and outrageous conduct. ................................................................................. 4

        3.    Defendants fail to sufficiently allege—and have not suffered—emotional distress. ........................................... 7

        4.    Count 5 for "negligent infliction of emotional distress" additionally fails because Yuga Labs owes Defendants no special duty and Defendants have suffered no injury ......... 11

    B.    Count 6 Fails to Present a Justiciable Case or Controversy and It Is Inconsistent with the Declaratory Judgment Act. ................. 13

        1.    Count 6 fails to present a justiciable case or controversy. ........................................................................ 15

        2.    Defendants' request is inconsistent with the purposes of the Declaratory Judgment Act. .......................................... 16

    C.    Count 1 (17 U.S.C. § 512(f)) Should Be Dismissed for Lack of Article III Standing. .................................................................... 18

    D.    Count 1 Should be Dismissed for Failure to Plausibly Plead Any Violation of Section 512(f). ............................................... 21

    E.    Counts 2 and 3 Should Be Dismissed for Lack of Subject Matter Jurisdiction Because Yuga Labs Does Not Have Copyright Registrations. ................................................................ 23

III.   CONCLUSION ........................................................................................ 24

FENWICK & WEST LLP
ATTORNEYS AT LAW

ii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*, No. 19-cv-00078,
2019 WL 4137605 (C.D. Cal. June 3, 2019)..........................................................7

*Allstate Indemnity Co. v. Collins*, No. C 10–2073,
2011 WL 941251 (N.D. Cal. 2011)......................................................................14

*Aluminium v. Hunter Eng'g Co.*,
655 F.2d 938 (9th Cir. 1981)................................................................................23

*Bolton v. Pentagroup Fin. Servs., LLC*, No. CIV-F-08–0218,
2009 WL 734038 (E.D. Cal. Mar.17, 2009) ..........................................................8

*Branch v. Homefed Bank*,
6 Cal. App. 4th 793 (1992)...................................................................................12

*Briggs v. Enden Council for Hope & Opportunity*,
969 P.2d 564 (1999) ...............................................................................................3

*Burgess v. Superior Court*,
2 Cal. 4th 1064 (1992)..........................................................................................11

*Cal. Furniture Collection, Inc. v. Harris Adamson Home, LLC*, No.
CV 19-06254,
2019 WL 7882081 (C.D. Cal. Oct. 18, 2019) ......................................................24

*Carroll v. White*, No. 16-cv-229,
2016 WL 7238914 (M.D. Ala. Nov. 21, 2016)......................................14, 15, 16

*Christensen v. Superior Court*,
54 Cal. 3d 868 (1991)......................................................................................6, 12

*Cochran v. Cochran*,
65 Cal. App. 4th 488 (1998)....................................................................4, 5, 6, 7

*Connell v. United States*, No. 08-CV-0062,
2010 WL 958269 (E.D. Cal. Mar. 12, 2010) ........................................................7

*Costa v. Nat'l Action Fin. Servs.*,
634 F. Supp. 2d 1069 (E.D. Cal. 2007)..................................................................8

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Cunningham Bros. Inc. v. Bail*,
   407 F.2d 1165 (7th Cir. 1969) ................................................................. 14

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
   47 Cal. App. 4th 777 (1996) ...................................................................... 3

*Dow Jones & Co. Inc. v. Harrods, Ltd.*,
   237 F. Supp. 2d 394 (S.D.N.Y 2002) ................................................... 14, 15

*Dushey v. Accu Bite, Inc.,* No. CIV. S-06-00834,
   2006 WL 1582221 (E.D. Cal. June 2, 2006) ........................................... 13

*Duste v. Chevron Prod. Co.*,
   738 F. Supp. 2d 1027 (N.D. Cal. 2010) ...................................................... 5

*Eastman v. Allstate Ins. Co.,* No. 14-cv-0703,
   2014 WL 5355036 (S.D. Cal. Oct. 20, 2014) .......................................... 13

*Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) ............................................................................. 13

*Faulks v. Wells Fargo & Co.*, No. 13-CV-02871,
   2015 WL 4914986 (N.D. Cal. Aug. 17, 2015) ......................................... 13

*Fintland v. Luxury Marine Grp., LLC*, No. CV 09-4267,
   2010 WL 758543 (C.D. Cal. Mar. 1, 2010) ............................................. 13

*Fourth Estate Public Benefit Corp. v. Wall-Street.com LLC*,
   139 S.Ct. 881 (2019) ............................................................................... 23

*Friedman v. Geller*,
   925 F. Supp. 611 (E.D. Wis. 1996) ......................................................... 14

*Girard v. Ball*,
   125 Cal. App. 3d 772 (1981) ...................................................................... 8

*Gordon v. Virtumundo*, No. 06-0204,
   2007 WL 1459395 (W.D. Wash. May 15, 2007) ..................................... 20

FENWICK & WEST LLP
ATTORNEYS AT LAW

iv

1

2

3

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Gov't Emps. Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ................................................................. 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1990) ................................................................. 23

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009) .............................................................. 5, 6, 7, 8

*Indus. Commc'ns Sys., Inc. v. Pacific Tel. & Tel. Co.*,
   505 F.2d 152 (9th Cir. 1974) ................................................................. 24

*ISE Ent. Corp. v. Longarzo*, No. CV 17-9132,
   2018 WL 11346736 (C.D. Cal. Dec. 11, 2018) ...................................... 19

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2008) ............................................................... 21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................... 19, 20

*Mandel v. Hafermann*,
   503 F. Supp. 3d 946 (N.D. Cal. 2020) ................................................... 12

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*,
   48 Cal.3d 583 (1989) .............................................................................. 12

*Molien v. Kaiser Found. Hosps.*,
   27 Cal. 3d 916 (1980) ............................................................................ 12

*Moonbug Enter. Limited v. Babybus (Fujian) Network Technology Co.*
   *Ltd.*, No. 21-CV-06536,
   2022 WL 580788 (N.D. Cal. Feb. 25, 2022) .......................................... 21

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002) ..................................................................... 2, 4, 16

*Paulson v. State Farm Mut. Auto. Ins. Co.*,
   867 F. Supp. 911 (C.D. Cal. 1994) .......................................................... 8

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Phyllis v. Super. Ct.*,
  183 Cal. App. 3d 1193 (1986) ............................................................................. 12

*Plater v. United States*,
  359 F. Supp. 3d 930 (C.D. Cal. 2018) .................................................................. 6

*Potter v. Firestone Tire & Rubber Co.*,
  6 Cal. 4th 965 .......................................................................................... 7, 11, 12

*Principal Life Ins. Co. v. Robinson*,
  394 F.3d 665 (9th Cir. 2005) .............................................................................. 17

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
  344 U.S. 237 (1952) ............................................................................................ 15

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
  391 F.3d 1000 (9th Cir. 2004) ............................................................................ 21

*Schneider v. TRW*,
  938 F.2d 986 (9th Cir. 1991) ................................................................................ 7

*Simo v. Union of Needletrades Indus. & Textile Emp.*,
  322 F.3d 602 (9th Cir. 2003) ................................................................................ 8

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
  506 F.3d 832 (9th Cir. 2007) .............................................................................. 20

*Sky Billiards, Inc., v. WolVol, Inc.*, No. 5:15–CV–02182,
  2016 WL 7479428 (C.D. Cal. July 11, 2016) ................................................... 24

*Sparrow LLC v. Lora*, No. CV-14-1188,
  2014 WL 12573525 (C.D. Cal. Dec. 4, 2014) ..................................................... 3

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................ 20

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir. 1989) .............................................................................. 19

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Thermolife Int'l LLC v. Vital Pharm. Inc.,* No. 19-cv-61380,
2019 WL 4954622 (S.D. Fla. Oct. 8, 2019) ................................................ 14, 15

*Thompson v. McCombe,*
99 F.3d 352 (9th Cir. 1996) ........................................................................ 18

*Twelve Inches Around Corp. v. Cisco Systems, Inc.,*
No. 08 Civ. 6896 (WHP) 2009 WL 928077
(S.D.N.Y. Mar. 12, 2009) ............................................................................ 19

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir.2003) ...................................................................... 21

*Wang v. Wal-Mart Real Estate Bus. Trust,*
153 Cal. App. 4th 790 (2007) ...................................................................... 4

*Weinberg v. Valeant Pharms. Int'l,* No. 15-CV-01260,
2017 WL 6543822 (C.D. Cal. Aug. 10, 2017), *aff'd sub nom.*
*Weinberg v. Valeant Pharms. N. Am., LLC,* 765 F. App'x 328
(9th Cir. 2019) ............................................................................................. 5

*Wong v. Jing,*
189 Cal. App. 4th 1354 (2010) .................................................................... 6

*Yurick v. Super. Ct.,*
209 Cal. App. 3d 1116 (1989) ..................................................................... 4, 6

**STATUTES AND RULES**

17 U.S.C. § 512(f) .............................................................................. 1, 18, 19, 21

Cal. Civ. Code § 47 ....................................................................................... 5

Cal. Civ. Code § 425.16 ......................................................................... 3, 4, 16

Cal. Civ. Proc. Code § 425.16(b) ............................................................ 3, 7, 13

Declaratory Judgment Act ...................................................................... 1, 14, 16, 23

Digital Millennium Copyright Act ("DMCA") ........................................... *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

Fed. R. Civ. P. 8(a) ................................................................................. 21

Fed. R. Civ. P. 9(b) ................................................................................ 21

Fed. R. Civ. P. 12(b) ........................................................................ *passim*

**OTHER AUTHORITIES**

10B Charles Alan Wright & Arthur R. Miller, *Federal Practice
    and Procedure* § 2751 (4th ed. 2022) .................................................... 14

Restatement (Second) of Torts, § 46, cmt. d (Am. L. Inst. 1965) ............................ 5

United States Constitution .......................................................................... 24

FENWICK & WEST LLP
ATTORNEYS AT LAW

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

After months of ripping off Yuga Labs' trademarks and gleefully promoting this litigation on social media to sell more counterfeit NFTs, Ryder Ripps and Jeremy Cahen have pulled their latest publicity stunt: filing bogus counterclaims seeking to litigate defenses to hypothetical claims that Yuga Labs has not brought (Counts 2, 3, and 6) and to rewrite history by painting themselves as victims allegedly suffering "severe emotional distress" because Yuga Labs defended its trademarks in court and itself against Defendants' relentless attacks (Counts 1, 4, and 5).  But this spectacle is woefully defective and must end.

As detailed below, Defendants' Counts 4, 5, and 6 complain of conduct that falls squarely within California's anti-SLAPP statute and for which they cannot show a "probability of success" (or any chance of success); therefore, the Court should strike them.  Defendants' claims for "emotional distress" (Counts 4 and 5) fail because they are based on alleged conduct that comes nowhere near the "extreme and outrageous" standard required to sustain such claims and because Defendants' own allegations and public statements establish that they have not suffered any injury as a result of Yuga Labs defending itself—let alone the "extreme emotional distress" required to sustain such claims.  The Court should reject Defendants' nonsensical request for a declaratory judgment for a defense to a defamation claim that the Court recently acknowledged has not been brought (Count 6), because it presents no "case or controversy" to invoke this Court's subject matter jurisdiction, and even if it did, is contrary to the purposes of the Declaratory Judgment Act.

Similarly, Defendants' federal claims (Counts 1, 2, and 3) fail because the Court lacks subject matter jurisdiction over them—Defendants have not been harmed by any copyright takedown, and there is no case or controversy as to hypothetical copyright infringement.  Defendants also fail to plead a viable Section 512(f) claim or that Yuga

FENWICK & WEST LLP
ATTORNEYS AT LAW

Labs has registered any copyright (it has not registered a copyright) such that it could bring a copyright infringement suit against Defendants.

As this Court recognized, this is a trademark case that will determine whether Ryder Ripps and Jeremy Cahen infringed Yuga Labs' trademarks for their own financial gain.[1]  Having failed to dramatically expand the scope of this case with their now-denied motion to dismiss, Defendants now seek to achieve the same ends with bogus counterclaims.  The Court should again decline that chicane invitation and dismiss Defendants' counterclaims so that this case can move forward judiciously.

## II.   ARGUMENT

### A.   Defendants' "Emotional Distress" Claims Under Counts 4 and 5 Fail Under California's Anti-SLAPP Statute and Rule 12(b)(6).

The California anti-SLAPP statute establishes "a two-step process for determining whether an action is a SLAPP.  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).  [Second, i]f the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) (cleaned up).

Yuga Labs satisfies the first prong because Ripps' and Cahen's counterclaims are squarely based on protected activity—Yuga Labs' filing of this lawsuit and making public statements about it.  In terms of the second step, the counterclaims for "emotional distress" fail for three primary reasons.  ***First***, the conduct Defendants allege simply is not "extreme and outrageous" as a matter of law.  ***Second***, Defendants have failed to plead that they experienced emotional distress of the degree required to establish a tort.  ***Third***, their own public statements prove that they were not

---

[1] ECF 62 at 11 ("Plaintiff's claims are limited to and arise out of Defendants' unauthorized use of the BAYC Marks for commercial purposes.").

FENWICK & WEST LLP
ATTORNEYS AT LAW

emotionally distressed by Yuga Labs fighting back, but rather viewed it as a business opportunity and a subject of fun; they have created silly memes, laughed to their Twitter followers, and continuously used the supposedly emotionally damaging conduct to sell counterfeit NFTs. They aren't wracked with emotional distress; they are laughing and scamming all the way to the bank.

### 1. California's Anti-SLAPP Statute applies to Defendants' "emotional distress" claims.

Defendants' claims for "emotional distress" fall within California's anti-SLAPP statute because they are based on Yuga Labs filing this lawsuit, submitting takedown notices to protect its brand, giving a public interview, engaging with media around the lawsuit, and tweeting about the Defendants. ECF 65 ("Countercl.") ¶¶ 70, 61, 63-67. All of this conduct falls squarely within the anti-SLAPP statute's protection for litigation-related activities, speech made "in a public forum in connection with an issue of public interest" and "any other conduct . . . in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(b), (e); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) ("[t]he constitutional right to petition includes the basic act of filing litigation[.]") (cleaned up); *Briggs v. Enden Council for Hope & Opportunity*, 969 P.2d 564, 569 (1999) ("communications preparatory to or in anticipation of the bringing of an action or other official proceeding are entitled to the benefits of section 425.16.") (cleaned up). Defendants have repeatedly claimed their dispute with Yuga Labs is a matter of public concern. *See, e.g.*, ECF 38 at 12-13 (arguing that the dispute falls within all three definitions of public issue).

That Defendants threw in a handful of other communications relating to their public dispute with Yuga Labs does not render the California anti-SLAPP statute inapplicable. Ripps and Cahen "cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining the allegations of protected and nonprotected activity under the label of one 'cause of action.'" *Sparrow LLC v. Lora*, No. CV-14-

FENWICK & WEST LLP
ATTORNEYS AT LAW

1188, 2014 WL 12573525, at *3 (C.D. Cal. Dec. 4, 2014) (quoting *Wang v. Wal-Mart Real Estate Bus. Trust*, 153 Cal. App. 4th 790, 801-02 (2007)).

Yuga Labs carries its burden under the first prong of the anti-SLAPP statute because the alleged other communications are "incidental or collateral to a cause of action based essentially on protected activity" and Yuga Labs' litigation activity and its public statements about this lawsuit, which Defendants concede is a topic of public concern, are the "principal thrust or gravamen" of Defendants' emotional distress claims. *Wang*, 153 Cal. App. 4th at 802.

### 2. Defendants fail to allege extreme and outrageous conduct.

Under the anti-SLAPP's second step, the counterclaims must be stricken and attorneys' fees awarded unless Defendants can "demonstrate[] a probability of prevailing on the claim[s]." *Navellier*, 29 Cal. 4th at 88; Cal. Civ. Code § 425.16.[2] But Defendants' own pleading establishes that they cannot demonstrate a "probability" that they will prevail under California's anti-SLAPP statute; in fact, they cannot even demonstrate a plausible right to relief under Rule 12(b)(6).[3] Thus, these claims fail as a matter of law.[4]

"An essential element of a cause of action for intentional infliction of emotional distress is extreme and outrageous conduct by the defendant." *Yurick v. Super. Ct.*, 209 Cal. App. 3d 1116, 1123 (1989) (cleaned up). The alleged conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citation omitted). The conduct must be "atrocious, and utterly intolerable." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998). Courts have explained this ***does not*** include "mere insults, indignities, threats, annoyances, petty oppressions, or

---

[2] The award of fees is mandatory. *Id.*

[3] If the Court does not agree that the anti-SLAPP statute applies, it should dismiss these counterclaims under 12(b)(6) for the same reasons as explained in the following sections.

[4] Also, with respect to only the NIED claim, Ripps and Cahen fail to plead a special relationship or other duty required to sustain the count.

other trivialities." *Id.* (cleaned up). It would not be enough even if Defendants alleged that Yuga Labs acted "with an intent which is tortious or even criminal, . . . intended to inflict emotional distress, or even that [its] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle [Defendants'] to punitive damages for another tort." *Id.* (quoting Restatement (Second) of Torts, § 46, cmt. d (Am. L. Inst. 1965)).

Here, even accepting all of Defendants' allegations as true, the alleged conduct amounts to garden-variety litigation-related activities, public relations activities, and a handful of other communications incidental to this public dispute between the parties. While Defendants claim that ***even the filing of this lawsuit is an actionable IIED*** (Countercl. ¶ 70), Yuga Labs' pursuit of this lawsuit is absolutely privileged under California's statutory litigation privilege. Cal. Civ. Code § 47. And none of the other alleged conduct even comes close to being "extreme and outrageous" enough to sustain a claim for emotional distress. In fact, courts have repeatedly dismissed emotional distress claims alleging conduct that is ***far more extreme and outrageous*** than the conduct Defendants allege here. For example, an irate telephone message left by plaintiff's former romantic partner, which plaintiff interpreted as a death threat, was not enough to support a claim for emotional distress. *Cochran,* 65 Cal. App. 4th at 494-95. Nor were sexually aggressive comments by a trustee who controlled plaintiff's child's trust, including "I'll get you on your knees eventually. I'm going to fuck you one way or another." *Hughes v. Pair,* 46 Cal. 4th 1035, 1049 (2009). Even false statements made with reckless disregard to a plaintiff's rights and feelings are not *per se* extreme and outrageous. *Duste v. Chevron Prod. Co.,* 738 F. Supp. 2d 1027 (N.D. Cal. 2010) (holding that false statements about plaintiff frequenting gentlemen's clubs and brothels made with the specific intent to cause him emotional distress and reckless disregard for the truth were not extreme and outrageous).[5]

---

[5] *See also Weinberg v. Valeant Pharms. Int'l,* No. 15-CV-01260, 2017 WL 6543822, at *14 (C.D. Cal. Aug. 10, 2017), *aff'd sub nom. Weinberg v. Valeant Pharms. N. Am.,*

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

Further, many courts have held that negative and threatening comments are non-actionable because they can reasonably be expected and are not uncommon between parties involved in protracted litigation or who are otherwise feuding. *See, e.g.*, *Hughes*, 46 Cal. 4th at 1051; *Cochran*, 65 Cal. App. 4th at 498. This is true here; Ripps and Cahen cannot complain that they are "distressed" that Yuga Labs is fighting back after they stole Yuga Labs' trademarks and repeatedly accused its founders of being Nazis (amongst other vile attacks) for more than a year.

Similarly, stating or posting a negative comment about an adversary "could hardly be considered atrocious and intolerable conduct that goes beyond the bounds of decency." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1379 n.7 (2010). Defendants have at best alleged to have been insulted when Yuga Labs, in defense of itself, called Defendants' claims a "conspiracy theory." Countercl. ¶ 65. But calling out someone's false claims as false does not rise to extreme and outrageous conduct to sustain a claim for emotional distress, especially where they are a legal adversary. *Yurick*, 209 Cal. App. 3d at 1129.

Moreover, Defendants' claims in Countercl. ¶¶ 59-60, 69 do not, and cannot as a matter of law, constitute "extreme and outrageous" conduct as the alleged statements were made to third parties. "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Even if a statement to a third party could support someone else's claim for emotional distress (it cannot), Defendants do not even allege that the alleged call to Cahen's sister was threatening in any way, and therefore it cannot be extreme or outrageous. Countercl. ¶60. And even if a phone call to Ripps' father was made

*LLC*, 765 F. App'x 328 (9th Cir. 2019) (holding that comments about engaging in blood sport were not outrageous); *Plater v. United States*, 359 F. Supp. 3d 930, 942 (C.D. Cal. 2018) (holding that TSA agents demanding plaintiff, a stroke victim who was partially paralyzed and unable to speak, either say or write her name for over one hour and forty-five minutes was merely "insensitive" and not actionable).

1    as alleged (which Yuga Labs hotly disputes), a single *telephone call* containing a

2    vague and non-imminent threat is not, as a matter of law, extreme or outrageous

3    conduct.  *See Cochran* at 494-95; *Hughes* at 1051; *Schneider v. TRW*, 938 F.2d 986,

4    992-93 (9th Cir. 1991).

5         While the anti-SLAPP statute permits the Court to consider evidence outside

6    the pleadings, Cal. Civ. Proc. Code § 425.16(b)(2), Defendants' emotional distress

7    claims should be stricken on the pleadings alone because the alleged conduct is not

8    extreme or outrageous as a matter of law.

9         **3.    Defendants fail to sufficiently allege—and have not**

10        **suffered—emotional distress.**

11        Defendants' emotional distress claims also fail because their conclusory

12   allegations of "severe emotional distress" are insufficient as a matter of law.  Severe

13   emotional distress needs to be "of such substantial quality or enduring quality that no

14   reasonable [person] in civilized society should be expected to endure it." *Hughes*, 46

15   Cal. 4th at 1051 (quoting *Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965,

16   1004)).  Defendants conclusorily allege that they "suffered severe emotional distress

17   because of Yuga's intimidation campaign," that their careers have been impacted

18   "which created significant stress for them," and that they are "deeply fearful, anxious,

19   and restless" and have "experienc[ed] severe stress and profound fear."  Countercl.

20   ¶ 89.

21        Even if these allegations were true (and as set forth below, they are not plausibly

22   true), at most, they are vague, "garden variety" distress, which is insufficient to plead

23   a claim for emotional distress.  *See Hughes* at 1051; *Connell v. United States*, No. 08-

24   CV-0062, 2010 WL 958269, at *5 (E.D. Cal. Mar. 12, 2010) (collecting cases); *Allied*

25   *Trend Int'l, Ltd. v. Parcel Pending, Inc.*, No. 19-cv-00078, 2019 WL 4137605, at *4

26   (C.D. Cal. June 3, 2019) (rejecting allegations as too "vague and diffuse" where

27   plaintiff alleged "conduct 'injured her in health, strength, and activity, sustaining

28   substantial shock and injury to her nervous system and person' and 'great mental

FENWICK & WEST LLP
ATTORNEYS AT LAW

distress, pain and suffering.'"). "Assertions that [a plaintiff] has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of a defendant's conduct do not" rise to the level of extreme emotional distress. *Hughes* at 1051 (cleaned up).[6]  Since Defendants' allegations of severe emotional distress are insufficient as a matter of law, the Court should strike (or in the alternative, dismiss) their claims for emotional distress on the pleadings alone.

To the extent the Court believes more information is necessary to determine if Defendants actually suffered severe emotional distress, then it should consider Defendants' own public statements and actions to the contrary, which Yuga Labs respectfully submits as evidence in support of its anti-SLAPP motion to strike and of which the Court may take judicial notice.  Far from suffering the alleged "extreme emotional distress" as a result of Yuga Labs' response to his attacks, Ripps' own tweets reveal that this is what he planned all along.  In December 2021, Ripps tweeted that he was going to intentionally copy the BAYC NFTs to "**get a DMCA, challenge it, then i would like to get sued**" (emphasis added) to challenge Yuga Labs' ownership of the work:[7]

---

[6] *See also Bolton v. Pentagroup Fin. Servs., LLC*, No. CIV-F-08–0218, 2009 WL 734038, at *24–25 (E.D. Cal. Mar.17, 2009) (holding that plaintiff who did not contact a doctor or take any prescription drugs for alleged distress did not suffer severe and extreme emotional distress to establish IIED) (citing *Girard v. Ball*, 125 Cal. App. 3d 772, 787–88 (1981) (sleeplessness, anxiety and nervousness for which plaintiff sought no medical treatment) & *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1079 (E.D. Cal. 2007) (stating plaintiff's sleeplessness, shaky hands and anxiety for which plaintiff did not see a doctor or take medication insufficient to establish severe emotional distress)); *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F. Supp. 911, 919 (C.D. Cal. 1994) (finding no severe emotional distress where plaintiff who claimed to suffer frustration, depression, nervousness and anxiety did not seek medical care); *Simo v. Union of Needletrades Indus. & Textile Emp.*, 322 F.3d 602, 622 (9th Cir. 2003) (claiming to be tense, nervous, and emotionally hurt does not satisfy this standard).

[7] Declaration of Eric Ball ("Ball Decl.") Ex. 1.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Similarly, on November 10, 2022, Cahen tweeted that he is "perfectly ok[ay]" with being known for the attack campaign against Yuga Labs.[8]  On Twitter, Defendants have called Yuga Labs' litigation and related activities "hysterical,"[9] "too funny and stupid,"[10] and "so silly."[11]  They made memes mocking Yuga Labs' legal counsel,[12] declared they "are looking forward to [their] 7 hour video depositions,"[13] posted photos of themselves posing outside the deposition location,[14] and have threatened Yuga Labs' founders.[15]  Defendants' own actions lack any indicia of emotional distress, much less severe emotional distress.

---

[8] Ball Decl. ¶ 14, Ex. 12.
[9] *Id.* ¶ 15, Ex. 13.
[10] *Id.* ¶ 16, Ex. 14.
[11] *Id.* ¶ 17, Ex. 15.
[12] *Id.* ¶ 18, Ex. 16.
[13] *Id.* ¶ 19, Ex. 17
[14] *Id.* ¶ 13, Ex. 11.
[15] *Id.* ¶ 20, Ex. 18.

FENWICK & WEST LLP
ATTORNEYS AT LAW






Defendants also allege that Yuga Labs' employee Noah Davis called and texted Rodney Ripps, the father of Ryder Ripps, and said that "You and your fucked up son are going to die" and "You guys are fucking pieces of shit."  Countercl. ¶ 69.  But Defendants intentionally conceal the fact that Rodney Ripps and Davis had a longstanding *personal* relationship (predating Davis' employment with Yuga Labs) that had turned ugly, and that the call was prompted by Rodney Ripps tweeting highly insulting statements about Davis' late father and Davis himself.[16]  Despite Defendants' claims of being emotionally distressed by this alleged occurrence, within five days, both Cahen and Rodney Ripps again publicly mocked Davis and the incident on Twitter.[17]

---

[16] Ball Decl. ¶ 21, Ex. 19.

[17] *Id.* ¶ 22, Ex. 20.



**4.    Count 5 for "negligent infliction of emotional distress" additionally fails because Yuga Labs owes Defendants no special duty and Defendants have suffered no injury.**

In addition to all the fatal deficiencies set forth above, Defendants' NIED claim fails because Defendants have not and cannot allege facts showing duty, breach of duty, causation, and damages.  *Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 1072 (1992) (noting California recognizes NIED only as a type of negligence and not an independent tort).

***First***, Defendants have not and cannot allege that Yuga Labs owes them a special duty.  "Damages for emotional distress are recoverable only if the defendant has breached some [] duty to the plaintiff."  *Potter,* 6 Cal. 4th at 984.  This duty may be imposed by law, assumed by the defendant, or exist by virtue of a special relationship between the parties.  *Id.* at 984–85; *Marlene v. Affiliated Psychiatric Med.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Clinic, Inc.*, 48 Cal. 3d 583, 590 (1989).[18]  Defendants certainly cannot claim that Yuga Labs assumed any duty to them, nor was there a special relationship between the parties.  Defendants make a single conclusory allegation that Yuga Labs "had a duty to refrain from engaging in unlawful and harassing activities aimed at retaliating against Mr. Ripps and Mr. Cahen's speech activity."  Countercl. ¶ 93.  This is not a "special duty" to Defendants, but a general (and legally incognizable) duty "to avoid negligently causing emotional distress to another." *Potter* at 984; *see also Mandel v. Hafermann,* 503 F. Supp. 3d 946, 984 (N.D. Cal. 2020) ("Absent allegations of threatened physical injury, allegations of defamation, theft, wrongful termination, and adversarial lawyering are not enough to make out the type of duty that California courts would find sufficient to state a claim for [NIED]." (cleaned up)).  The lack of a duty is fatal to Defendants' claim.

**Second**, even if Yuga Labs owed Defendants a duty (it does not), their claim for NIED would still fail, both because their alleged emotional distress is not severe (see above) and because they do not allege any physical injury.  Countercl. ¶ 95.  "[W]ith rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." *Potter* at 985.  The rare exceptions are "certain specialized classes of cases[, w]here the negligence is of a type which will cause highly unusual as well as predictable emotional distress." *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 800 (1992).  Here, Defendants fail to allege any current or threatened physical injury or any facts on which this Court could find an exception.

---

[18] Cases where courts have allowed plaintiffs to pursue claims include a doctor misdiagnosing a plaintiff's wife with syphilis, *see Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 930–31 (1980), a hired therapist sexually molesting a plaintiff's sons, *Marlene*, 48 Cal. 3d at 591, a school board failing to notify a plaintiff that her daughter was sexually molested by a fellow student, *Phyllis v. Super. Ct.*, 183 Cal. App. 3d 1193, 1197–98 (1986), a crematorium mishandling the remains of plaintiffs' close relative, *Christensen*, 54 Cal. 3d at 894–896), and a company's unlawful disposal of toxic waste which caused plaintiff to develop a fear of cancer after ingesting contaminated water, *Potter*, 6 Cal. 4th at 985.

Fenwick & West LLP
Attorneys at Law

Thus, there is no plausible argument for recovery. *See Faulks v. Wells Fargo & Co.,* No. 13-CV-02871, 2015 WL 4914986, at *7 (N.D. Cal. Aug. 17, 2015); *Dushey v. Accu Bite, Inc.,* No. CIV. S-06-00834, 2006 WL 1582221, at *2 (E.D. Cal. June 2, 2006)* ("Absent some threatened physical injury . . . or a contractual duty to protect plaintiffs' emotional tranquility, . . . plaintiffs cannot make out a claim for [NIED]." (cleaned up)); *Eastman v. Allstate Ins. Co.,* No. 14-cv-0703, 2014 WL 5355036, at *9 (S.D. Cal. Oct. 20, 2014)* ("emotional distress damages are not 'available in every case in which there is an independent cause of action founded upon negligence.'" (quoting *Erlich v. Menezes,* 21 Cal. 4th 543, 554 (1999)).

### B.    Count 6 Fails to Present a Justiciable Case or Controversy and It Is Inconsistent with the Declaratory Judgment Act.

Defendants' nonsensical request that the Court declare they have not defamed Yuga Labs should be stricken under California's anti-SLAPP statute, or in the alternative, dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

Defendants' own allegations establish that their reverse-defamation claim is subject to California's anti-SLAPP statute: as they put it, the Court should declare they "did not engage in any defamatory conduct" and their "criticism of Yuga is true and accurate" in order to rebut public defenses by Yuga Labs and its founders that Defendants are spreading "conspiracy theor[ies]" about them. Countercl. ¶¶ 98–102. If granted, such relief would improperly usurp the role of the jury as the fact-finder in a defamation claim and would be misconstrued as factual findings against individuals who are not parties to this lawsuit. But the conduct of Yuga Labs' founders—including appearing on a podcast and making other public statements to defend themselves in response to personal accusations that Defendants have made against them publicly—is protected activity under California's anti-SLAPP statute. Cal. Civ. Proc. Code § 425.16(e). And where, as here, the underlying relief sought in a declaratory judgment claim implicates an issue of state law (*e.g.*, defamation), federal courts apply the anti-SLAPP statute. *See*, *e.g.*, *Fintland v. Luxury Marine Grp., LLC,*

FENWICK & WEST LLP
ATTORNEYS AT LAW

No. CV 09-4267, 2010 WL 758543, at *6-7 (C.D. Cal. Mar. 1, 2010) (granting anti-SLAPP striking declaratory relief claim); *Allstate Indemnity Co. v. Collins*, No. C 10–2073, 2011 WL 941251 (N.D. Cal. 2011) (analyzing anti-SLAPP motion in pure declaratory relief action).

Defendants seek an advisory opinion granting them immunity from a hypothetical defamation claim. *See* ECF 62 at 11 ("Plaintiff has not brought claims against Defendants for defamation, slander, or libel."). But federal courts nationwide have held that a putative tortfeasor may not use the Declaratory Judgment Act to prospectively seek a declaration of non-liability. *See, e.g., Cunningham Bros. Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1969) (holding that a declaratory judgment action may not be used "to enable a prospective negligence action defendant to obtain a declaration of non-liability"); *Friedman v. Geller*, 925 F. Supp. 611, 613 (E.D. Wis. 1996) (rejecting request by attorney for declaratory judgment that he did not commit malpractice); 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2751 (4th ed. 2022) (explaining the application of the rule nationwide). This rule has been repeatedly applied in the defamation context. *See also, e.g., Dow Jones & Co. Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 402-03 (S.D.N.Y 2002); *Thermolife Int'l LLC v. Vital Pharm. Inc.*, No. 19-cv-61380, 2019 WL 4954622, at *3 (S.D. Fla. Oct. 8, 2019); *Carroll v. White*, No. 16-cv-229, 2016 WL 7238914, at *5 (M.D. Ala. Nov. 21, 2016).

There are two primary justifications for these decisions. ***First***, declarations of non-liability violate the "case or controversy" requirement of the Declaratory Judgment Act and Article III, and they are not ripe for adjudication, thereby depriving the court of subject-matter jurisdiction. ***Second***, allowing a defendant to preemptively seek relief on a hypothetical defense to an unfiled tort claim is inconsistent with the purpose of the Declaratory Judgment Act, which is to limit disputes (rather than expand them) and is typically used by contract parties to adjudicate rights when a concrete dispute has arisen, but no breach has occurred yet. To expand its application

FENWICK & WEST LLP
ATTORNEYS AT LAW

to tort suits would create a host of ills, including encouraging forum shopping and needlessly interjecting the federal courts into state-law claims.  Both rationales fully (and justly) apply here.  Defendants' request for declaratory relief should therefore be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and pursuant to California's anti-SLAPP statute.

### 1.    Count 6 fails to present a justiciable case or controversy.

As the Supreme Court has explained, for there to be a case or controversy ripe for adjudication under Article III of the Constitution, "[t]he disagreement must not be nebulous or contingent but must have taken a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on its adversaries, and some useful purpose to be achieved in deciding them."  *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952).   As many courts have held, prospectively ruling on a defense to a hypothetical defamation suit would violate the "case or controversy" requirement needed for a dispute to be justiciable, and thereby constitute an impermissible advisory opinion.

For example, in *Harrods*, the Dow Jones company was sued in London for an allegedly defamatory article.  Despite the existence of an actual lawsuit disputing a single article, the court held that declaratory relief of non-liability was "grounded on a string of apprehensions and conjectures about future possibilities" such as what portions of the article might be found defamatory, whether there would be a successful appeal, and whether the plaintiff might try to enforce a judgment.  237 F. Supp. 2d at 408.  Similarly, in *ThermoLife*, the court held that to issue a declaratory judgment that even a single, specific statement was not defamatory before suit was filed would be an "impermissible advisory opinion on a matter that is not ripe."  2019 WL 4954622, at *5 (collecting cases).  In *Carroll v. White*, the court rejected a journalist's request for a declaration that he could not be sued for defamation in a potential future action threatened against him, "[b]ecause plaintiff essentially seeks a declaratory judgment that possible defenses or affirmative defenses would be meritorious if he is sued by

the defendants for defamation *per se*, or as a means to thwart such a lawsuit before its inception, [so] plaintiff seeks an impermissible advisory opinion on a matter that is not ripe." *Carroll*, 2016 WL 7238914, at *5, *report and recommendation adopted*, 2016 WL 7234090 (M.D. Ala. Dec. 14, 2016).

The declaration Defendants seek from this Court is far more sweeping and problematic than the declarations requested in all of the foregoing cases. Each case involved ***a single*** allegedly defamatory article or statement, and either active defamation litigation or threats of imminent defamation litigation. These cases establish that it would be impermissible for the court to issue an advisory opinion even under these circumstances. But here, Defendants seek a declaration that ***none of their thousands of prior public statements about Yuga Labs or its founders are defamatory and that each of those statements were true***.

While these vile statements are not true, Yuga Labs has not brought a defamation claim, and therefore there is no actual "case or controversy" to adjudicate. Defendants' amorphous, unbounded request cannot provide a basis for the requested declaration, and it fails to present a ripe case or controversy as required for the Court to have subject-matter jurisdiction. Accordingly, the Court should dismiss Count 6 under Rule 12(b)(1). And, because the lack of subject-matter jurisdiction means that Defendants cannot "demonstrate[] a probability of prevailing on the claim" as required to survive Yuga Labs' anti-SLAPP motion to strike, Defendants are liable for Yuga Labs' attorneys' fees. *Navellier*, 29 Cal. 4th at 88; Cal. Civ. Code § 425.16 ("a prevailing defendant on a special motion to strike ***shall*** be entitled to recover his or her attorney's fees and costs").

### 2. Defendants' request is inconsistent with the purposes of the Declaratory Judgment Act.

Even if the Court had subject-matter jurisdiction over Defendants' request for a declaratory judgment (it does not), it should decline the request. The Declaratory Judgment Act is permissive and allows federal courts to reject requests for declaratory

judgments that are inconsistent with the purposes of the Act.  *See, e.g.*, *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005).  When deciding whether to exercise its jurisdiction, a district court is guided by the *Brillhart* factors, three of which the Ninth Circuit has described as especially important: "[1] the district court should avoid needless determination of state law issues; [2] it should discourage litigants from filing declaratory actions as a means of forum shopping and [3] it should avoid duplicative litigation." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  The Ninth Circuit has approved consideration of other factors including:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Id.* at 1225 n. 5.  Here, the *Brillhart* factors outlined above weigh strongly in favor of declining jurisdiction.

**First**, this is a trademark dispute, and expanding its scope to Defendants' reverse-defamation claim would involve *only* a "needless determination of state law issues," *i.e.*, substantive defamation law, for the thousands of statements Defendants have made.[19]

**Second**, the requested declaration will not "settle all aspects of the controversy"—in fact, it will settle no aspect of the controversy whatsoever—nor will it "serve a useful purpose in clarifying the legal relations at issue."  To put it plainly, Defendants' supposed "project" of "social commentary" is irrelevant to this trademark case, as the Court has recently remarked.  ECF 62 at 6 ("Defendants' sale of

---

[19] It should be noted that the Court would have to determine which state law properly applied to every statement Defendants have made about Yuga Labs.

FENWICK & WEST LLP
ATTORNEYS AT LAW

[RR/BAYC NFTs] is the only conduct in this action[.]").  And as the Court already recognized, "Plaintiff has not brought claims against Defendants for defamation, slander, or libel."  *Id.* at 11.

*Third*, Defendants have requested the declaratory judgment purely as a means of "procedural fencing" and to gain an unfair litigation advantage.  Rather than facing accountability for their trademark infringement at the scheduled trial, Defendants transparently seek to delay trial by flooding Yuga Labs with burdensome, time-consuming, and expensive discovery that is wholly irrelevant to the trademark dispute at issue in this case.  This is no idle fear: throughout discovery, Defendants have pursued vast document requests related to irrelevant "Inflammatory Material"[20] even though no reputational issues were at stake.[21]  Through their "no-defamation" counterclaim, Defendants attempt to legitimize a massive fishing expedition into defenses to a claim that Yuga Labs has not brought.

## C.    Count 1 (17 U.S.C. § 512(f)) Should Be Dismissed for Lack of Article III Standing.

Defendants' federal counterclaims are similarly defective and should be dismissed.  Courts must dismiss claims over which they lack subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Once Yuga Labs challenges subject matter jurisdiction, as it has here, Ripps and Cahen bear the burden of proving the existence of subject matter jurisdiction. *See* Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's jurisdiction has the burden of

---

[20] Defendants define "Inflammatory Material" as "any content that that [sic] is racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial, including but not limited to content that appears to be or can be understood to be racist, fascist, neo-Nazi, alt-right, hate speech, discriminatory, or otherwise racially/ethnically prejudicial." *See* ECF 69-4 (Ex. 2 to Declaration of Derek Gosma).

[21] Indeed, in recent meet-and-confers following the Court's holding that *Rogers* does not apply to this case, Defendants have shifted to arguing that these myriad, overbroad, and disproportionate requests are now relevant to their counterclaims.

FENWICK & WEST LLP
ATTORNEYS AT LAW

proving the actual existence of subject matter jurisdiction."). When Yuga Labs presents affidavits or other evidence disputing the truth of the allegations, as it has here, the court may review evidence beyond the complaint and Ripps and Cahen must "present affidavits or other evidence necessary to satisfy [their] burden of establishing subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

At the threshold, Defendants have no Article III standing to bring claims under Section 512 (the Digital Millennium Copyright Act, or "DCMA") for takedowns that occurred because of trademark concerns. There is no Section 512(f) claim for takedowns made to address trademark infringement, and it therefore follows that Defendants could not suffer any cognizable injury for Yuga Labs' takedown requests that were made (successfully) on the basis of trademark infringement (or other non-copyright bases). "By its express terms, the DMCA applies only to copyrights, not patents, trademarks, or other rights . . . ." *ISE Ent. Corp. v. Longarzo*, No. CV 17-9132, 2018 WL 11346736, at *8 (C.D. Cal. Dec. 11, 2018); *see also Twelve Inches Around Corp. v. Cisco Sys., Inc.*, No. 08 Civ. 6896 , 2009 WL 928077, at *4 (S.D.N.Y. Mar. 12, 2009) ("Reading Section 512(f) to cover misrepresentation of trademark infringement would be inconsistent with this carefully balanced intent. Accordingly, Plaintiff's claim that misrepresentation of trademark infringement is actionable under 17 U.S.C. § 512(f) is dismissed."). All but one of Yuga Labs' takedowns of the RR/BAYC NFTs were made (and made successfully) on the basis of trademark infringement or non-IP issues (*e.g.*, phishing and other abusive uses of domain names), and Ripps has admitted as much. *See* Ball Decl. ¶¶ 4, 11, Exs. 2 and 9.

Therefore, Defendants' Section 512 counterclaim rests solely on one DMCA takedown. Countercl. ¶ 62 (identifying only one DMCA takedown, despite stating there were "numerous" fraudulent notices). To have standing with respect to this one DMCA takedown, Article III requires that Ripps and Cahen allege they suffered a concrete and particularized injury in fact from it. *Lujan v. Defenders of Wildlife*, 504

Fenwick & West LLP
Attorneys at Law

U.S. 555, 561 (1992).   This injury must be "'actual . . . not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).  Bare procedural violations, without evidence of concrete harm, do not satisfy the injury-in-fact requirement of Article III.  *Id.*  But, Ripps and Cahen[22] do not plead any actual injury from the takedown because it lasted no more than a few hours; the collection was reinstated the same day through no effort by either Ripps or Cahen.  *See also* Ball Decl. ¶ 4. Ex. 2.  Neither they nor anyone acting on their behalf even responded to the takedown.  *Id.*; Countercl. ¶ 62.  Any injuries that they might try to claim (which they have not identified) are at most *de minimis*, merely procedural in nature, and insufficient to meet Article III's injury-in-fact requirement.  *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 840 (9th Cir. 2007) (finding no cognizable injury where a defendant's mistake is immediately corrected; "[t]he mere delay during the correction of the problem . . . is too trifling of an injury to support constitutional standing.").

Far from being injured by the takedown, Defendants used it to market their counterfeit NFTs and further engage with their followers.[23]  *See* Ball Decl. ¶ 8, Ex. 6.  For example, in reference to this single DMCA takedown request, Ripps publicly tweeted that it was the "***best thing that could have happened***" (emphasis added) and that the reinstatement of his collection was "historic."  *Id.*  Defendants repeatedly crowed that it was good marketing for them when the RR/BAYC NFT collection was

---

[22] For the one DMCA takedown, Cahen has no standing because that takedown was of Ryder Ripps' "Bored Ape Yacht Club" collection on Foundation.  *See* Countercl. ¶ 62; Ball Decl. ¶ 4, Ex. 2.; Ball Decl. ¶ 7, Ex. 5.  Cahen is not the owner of that collection on Foundation.  *See* Ball Decl. ¶ 7, Ex. 5.

[23] Before this takedown ever happened, Ripps wrote that he "would like to get a DMCA" on an RR/BAYC NFT.  *See* Ball Decl. ¶ 3, Ex. 1.  Receiving what you seek is not an injury.  *See Gordon v. Virtumundo*, No. 06-0204, 2007 WL 1459395, at *9 (W.D. Wash. May 15, 2007) (finding that plaintiffs lacked statutory standing, in part because plaintiffs' business benefitted from defendant's conduct "by way of their research endeavors and prolific litigation and settlements.").

FENWICK & WEST LLP
ATTORNEYS AT LAW

taken down for other reasons.  *See id.* ¶ 9, Ex. 7; *id.* ¶ 10, Ex. 8.  Ripps claimed that the takedowns were "funny [to] exploit for marketing." *Id.* ¶ 9, Ex. 7.  Cahen also referred to the takedowns as "free marketing." *Id.* ¶ 10, Ex. 8.  Rather than suffering an injury from the one DMCA takedown, Defendants gloat about being benefited by it and all takedowns by Yuga Labs.

**D.**   **Count 1 Should be Dismissed for Failure to Plausibly Plead Any Violation of Section 512(f).**

"[T]o state a § 512(f) claim, Defendant must allege (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith." *Moonbug Enter. Limited v. Babybus (Fujian) Network Technology Co. Ltd.*, No. 21-CV-06536, 2022 WL 580788, at *7 (N.D. Cal. Feb. 25, 2022).  "A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake.  *See* § 512(f).  Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004).  Defendants fail to plausibly allege either of those elements.

The Court can take judicial notice of Yuga Labs' one DMCA takedown notice, which is incorporated by reference into Defendants' counterclaim. *Moonbug*, 2022 WL 580788, at *8; Countercl. ¶ 62; *see also* Request for Judicial Notice filed concurrently herewith.  To the extent Defendants contend that "Yuga filed numerous DMCA takedown notices," their allegations fail to satisfy Rule 8(a) to put Yuga Labs on notice of what it must defend.  Defendants also fail to satisfy Rule 9(b), as they have alleged that the takedowns were "fraudulent" but do not plead this allegation with the specificity required for fraud claims.  Countercl. ¶ 62; *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2008) ("Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged." (*quoting Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003))).

As to the one DMCA takedown they do allege, Defendants state that "Yuga Labs fraudulently alleged in these notices that RR/BAYC NFTs are copies of Yuga's BAYC NFTs and therefore infringe Yuga's copyrights in BAYC NFTs."  Countercl. ¶ 62.  But the notice *said no such thing*.  *See* Ball Decl. ¶ 4, Ex. 2.  Rather, Yuga Labs wrote that "[t]he infringing *content* uses copyrighted material from https://opensea.io/collection/boredapeyachtclub produced by Yuga Labs without authorization."[24]  (emphasis added).

That statement in the notice was unquestionably true (despite Defendants' attempted discrepant interpretation) because Ripps' Foundation page for his counterfeit NFTs included *content* displaying Yuga Labs' *exact logo without any modification* as well as the Ape images associated with the genuine BAYC NFTs.  *See* Ball Decl. ¶ 5, Ex. 3; Ball Decl. ¶ 6, Ex. 4.  Therefore, Defendants cannot plausibly allege that Yuga Labs made a material misrepresentation in a copyright takedown.

Moreover, Defendants' only allegation about Yuga Labs' purported knowledge is threadbare.  Defendants do not (and cannot) allege that Yuga Labs had actual knowledge that it did not possess a copyright interest in its Bored Ape Yacht Club Logo.  *See generally* Countercl.  Because Defendants fail to address Ripps' improper use of a copy of Yuga Labs' Bored Ape Yacht Club logo on his Foundation page (Ball Decl. ¶ 5, Ex. 3; Ball Decl. ¶ 6, Ex. 4.), they fail to allege the essential element of Yuga Labs' knowledge that it had no copyright interest.  They also cannot allege that Yuga Labs had a subjective bad faith in its belief that it owned a copyright interest in its Bored Ape Yacht Club logo, which Ripps had copied without any modification.  Indeed, Yuga Labs had a good-faith belief that Ripps' use of Yuga Labs' Bored Ape Yacht Club logo was not a fair use—in the trademark context this Court has already confirmed Ripps' use was not a fair use.  ECF 62 at 11.

---

[24] The "infringing content" was defined in the takedown request as https://foundation.app/ collection/bayc?tab=artworks.  Ball Decl. ¶ 4, Ex. 2; *see also id.* ¶ 5, Ex. 3.

Fenwick & West LLP
Attorneys at Law

Thus, putting aside Defendants' allegations regarding Yuga Labs' copyright interest in the Ape images, Defendants' failure to address their use of Yuga Labs' unmodified logo devastates any plausibility to their claim that the sole DMCA notice did not concern any copyrighted material from Yuga Labs.

**E.    Counts 2 and 3 Should Be Dismissed for Lack of Subject Matter Jurisdiction Because Yuga Labs Does Not Have Copyright Registrations.**

Counts 2 and 3 ask the Court to declare that Yuga Labs does not possess a copyright in the Bored Ape images.  A copyright exists at the moment copyrightable material is fixed in any tangible medium of expression.  *Fourth Estate Public Benefit Corp. v. Wall-Street.com LLC*, 139 S.Ct. 881, 887 (2019).  Registration of a copyright is not required to own one; it is required to file suit on one.  *Id.*  The Court should not wade into whether Yuga Labs has a copyright in its Bored Ape images, because such an opinion would be merely advisory; Yuga Labs does not have a registered copyright,[25] and there is therefore no imminent threat of a lawsuit for copyright infringement.[26]

"The purpose of the Declaratory Judgment Act is 'to relieve potential defendants from the Damoclean threat of impending litigation over which a harassing adversary might brandish, while initiating suit at his leisure – or never." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990) (*citing Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981)).  "[T]he party seeking relief must still satisfy the 'case or controversy' requirement," which requires the party to show that "the controversy is of sufficient immediacy and reality to warrant declaratory relief."  *Id.*

---

[25] Ball Decl. ¶ 23.

[26] Because Defendants do not allege that Yuga Labs has registered a copyright on which it has threatened suit, Defendants also fail to plead Counts 2 and 3 under Rule 12(b)(6).

FENWICK & WEST LLP
ATTORNEYS AT LAW

But Yuga Labs does not possess a copyright registration for the Bored Ape images.  *See* Ball Decl. ¶ 23.  Defendants have publicly admitted this.  *Id.* ¶ 12, Ex. 10.  Therefore, there can be no case or controversy between Ripps and Cahen, on the one hand, and Yuga Labs, on the other hand, because Yuga Labs itself "cannot sue for infringement of a copyright" that it has not registered.  *Cal. Furniture Collection, Inc. v. Harris Adamson Home, LLC*, No. CV 19-06254, 2019 WL 7882081, at *2 (C.D. Cal. Oct. 18, 2019) (holding that the plaintiff did not have standing to seek declaratory relief of non-infringement because the defendant had neither applied for nor been granted copyright registrations); *see also Sky Billiards, Inc., v. WolVol, Inc.*, No. 5:15–CV–02182, 2016 WL 7479428, at *4 (C.D. Cal. July 11, 2016) (granting defendant's motion to dismiss as to plaintiff's claim for declaratory judgment of non-infringement because the defendant had no registered copyright and "Plaintiff does not have standing to seek declaratory judgment.").

Moreover, Defendants know and publicly admit that Yuga Labs has never brought copyright claims against them.  *See* Ball Decl. ¶ 12, Ex. 10.   Rather, Defendants again want an advisory opinion from the Court about copyright and NFTs. But the standing requirement of Article III prevents exactly this use of federal courts to adjudicate hypothetical questions, just as it does in the defamation context.  *See Indus. Commc'ns Sys., Inc. v. Pacific Tel. & Tel. Co.*, 505 F.2d 152, 155 (9th Cir. 1974) ("The United States Constitution limits the jurisdiction of the federal courts to the adjudication of 'cases or controversies.' [Citation omitted.]  This limitation bars federal courts from giving advisory opinions or from considering hypothetical cases.").

## III.   CONCLUSION

Defendants have brought a series of legally deficient and retaliatory counterclaims purely to gain a tactical litigation advantage unrelated to the trademark dispute before the Court.  This is wholly inappropriate, and for the foregoing reasons, Yuga Labs requests that the Court strike Defendants' state-law counterclaims under

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   California's anti-SLAPP statute and award Yuga Labs its mandatory attorneys' fees,

2   or in the alternative dismiss them, as well as dismiss the federal-law counterclaims.

3

4   Dated: January 18, 2023                    FENWICK & WEST LLP

5

6                                             By:  /s/ Eric Ball

7                                                  Eric Ball

8                                             Attorneys for Plaintiff
                                              YUGA LABS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW