1 ERIC BALL (CSB No. 241327)
  eball@fenwick.com
2 KIMBERLY CULP (CSB No. 238839)
  kculp@fenwick.com
3 FENWICK & WEST LLP
  801 California Street
4 Mountain View, CA 94041
  Telephone: 650.988.8500
5 Facsimile: 650.938.5200

6 ANTHONY M. FARES (CSB No. 318065)
  afares@fenwick.com
7 ETHAN M. THOMAS (CSB No. 338062)
  ethomas@fenwick.com
8 FENWICK & WEST LLP
  555 California Street, 12th Floor
9 San Francisco, CA 94104
  Telephone: 415.875.2300
10

11 *Additional Counsel listed on next page*

12 Attorneys for Plaintiff and
13 Counterclaim Defendant
   YUGA LABS, INC.

14

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
|---|---|
| Plaintiff and Counterclaim Defendant, | **PLAINTIFF YUGA LABS, INC.'S REPLY MEMORANDUM IN SUPPORT OF YUGA LABS, INC.'S SPECIAL MOTION TO STRIKE COUNTERCLAIMS; PLAINTIFF YUGA LABS, INC.'S MOTION TO DISMISS COUNTERCLAIMS** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, | |
| Defendants and Counterclaim Plaintiffs. | Date: February 27, 2023<br>Time: 1:30 p.m.<br>Courtroom: 7A<br>Judge: Honorable John F. Walter |

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA 90401
   Telephone: 310.434.4300
4
5  DAVID Y. SILLERS (*admitted pro hac vice*)
   david@clarelocke.com
6  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
7  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA 22314
   Telephone: 202.628.7400
10
11 Attorneys for Plaintiff and
   Counterclaim Defendant
12 YUGA LABS, INC.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................1

    A. The Anti-SLAPP Statute Applies to Counts 4-6, and the Court Should Order a Fee Award for Yuga Labs as Prevailing Party. ..............1

    B. Defendants Fail to Plead Extreme and Outrageous Conduct. ..................3

    C. Defendants Fail to Plead Sufficient Emotional Distress. .........................5

    D. Defendants Fail to Show Duty of Care as Required for Count 5. ............6

    E. Defendants Fail To Prove Standing For Their 512(f) Claim ...................7

    F. Defendants Admit They Only Pled One DMCA Takedown With Particularity And Could Not Plead Any Other ..........................................8

    G. Defendants Concede Yuga Labs Had a Good Faith Belief That Their Use Of Yuga Labs' Logo Infringed Yuga Labs' Copyright ..........9

    H. Defendants Admit They Seek An Advisory Opinion On Whether Yuga Labs Owns Any Copyrights, Which Article III Prohibits ............10

    I. Defendants Have Not Moved for an Untimely Amendment. ................11

    J. Yuga Labs' Motion Was Timely Filed ...................................................11

III. CONCLUSION...................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alvarez v. Bayer US, Inc.*,
  No. CV 21-5416, 2021 WL 8742153 (C.D. Cal. Dec. 15, 2021) ........................... 8

*Beckham v. Safeco Ins. Co. of Am.*,
  691 F.2d 898 (9th Cir. 1982) ................................................................................ 6

*Cabral v. Ralphs Grocery Co.*,
  248 P.3d 1170 (Cal. 2011) .................................................................................... 6

*Cal. Furniture Collection, Inc. v. Harris Adamson Home, LLC*,
  No. 19-cv-006254, 2019 WL 7882081 (C.D. Cal. Oct. 18, 2019) ...................... 10

*Cochran v. Cochran*,
  65 Cal. App. 4th 488 (1998) ............................................................................. 3, 4

*Coltrain v. Shewalter*,
  66 Cal. App. 4th 94 (1998) ................................................................................... 2

*Fletcher v. Western Nat'l Life Ins. Co.*,
  10 Cal. App. 3d 376 (1970) .................................................................................. 5

*Flores v. Popova*,
  No. CV 19-1379, 2019 WL 4238886 (C.D. Cal. Aug. 7, 2019) ........................... 8

*Gu v. BMW of N. Am., LLC*,
  132 Cal. App. 4th 195 (2005) ............................................................................... 6

*Hillblom v. Cnty. of Fresno*,
  539 F. Supp. 2d 1192 (E.D. Cal. 2008) ................................................................ 7

*In re Yahoo! Litig.*,
  251 F.R.D. 459 (C.D. Cal. 2008) ........................................................................ 12

*Ismail v. Montchak*,
  No. B284163, 2019 WL 2949863 (Cal. Ct. App. July 8, 2019) ........................... 5

*Lenz v. Universal Music Corp.*,
  815 F.3d 1145 (9th Cir. 2016) .............................................................................. 8

*MGA Ent., Inc. v. Louis Vuitton Malletier, S.A.*,
  No. 2:18-CV-10758, 2019 WL 2109643 (C.D. Cal. May 14, 2019) .................. 10

*Pistor v. Garcia*,
  791 F.3d 1104 (9th Cir. 2015) .............................................................................. 8

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Potter v. Firestone Tire & Rubber Co.*,
  6 Cal. 4th 965 (1993) ................................................................................... 6

*Robins v. Spokeo, Inc.*,
  867 F.3d 1108 (9th Cir. 2017) ...................................................................... 8

*Siam v. Kizilbash*,
  130 Cal. App. 4th 1563 (2005) ..................................................................... 6

*Sky Billiards, Inc. v. WolVol, Inc*,
  No. 5:15-cv-02182, 2016 WL 7479428 (C.D. Cal. July 11, 2016) .............. 10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016), *as revised* (May 24, 2016) ........................................ 8

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir. 1989) ....................................................................... 7

*Starbucks Corp. v. Heller*,
  No. CV 14-01383, 2014 WL 6685662 (C.D. Cal. Nov. 26, 2014) .............. 9

*Vigil v. Walt Disney Co.*,
  Nos. C-95-1790, C-95-1277, 1995 WL 621832 (N.D. Cal. Oct. 16, 1995) ... 9

*Winebarger v. Pennsylvania Higher Educ. Assistance Agency*,
  411 F. Supp. 3d 1070 (C.D. Cal. 2019) (Walter, J.) ..................................... 7

*Yuga Labs, Inc. v. Thomas Lehman*,
  1:23-cv-00085-MAD-TWD (N.D.N.Y. Feb. 6, 2022) (ECF 12) ................. 11

**STATUTES AND RULES**

California Civil Code § 1714(a) ........................................................................ 6

California Code of Civil Procedure § 527.6 ..................................................... 6

California Penal Code § 646.9 .......................................................................... 6

Federal Rule of Civil Procedure 6(a)(1) ........................................................... 12

Federal Rule of Civil Procedure 8 .................................................................... 8

Federal Rule of Civil Procedure 9(b) ............................................................ 8, 9

Federal Rule of Civil Procedure 12 .................................................................. 1

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

Federal Rule of Civil Procedure 12(b)(1) ........................................................ 8, 9, 12

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 9, 12

Federal Rule of Civil Procedure 12(h) ..................................................................... 12

Federal Rule of Civil Procedure 15 ............................................................................ 9

Lanham Act ............................................................................................................... 10

Local Rule 6-1 .......................................................................................................... 12

Local Rule 7-3 ............................................................................................................ 9

Local Rule 7-9 ............................................................................................................ 9

## I. INTRODUCTION

In retaliation for Yuga Labs publicly defending itself against baseless attacks on it and its founders, and for bringing this lawsuit to protect its intellectual property, Defendants filed a slew of meritless counterclaims, which is exactly the kind of litigation tactic that California's anti-SLAPP statute prohibits and disincentivizes with mandatory attorneys' fees. The Court should strike each state-law claim, award Yuga Labs attorneys' fees, and dismiss the federal-law claims.

Count 6, which Defendants withdrew, was for a non-existent claim of "No Defamation." From the outset, Yuga Labs explained to Defendants' counsel that "there is no claim for declaratory relief of non-defamation." Supplemental Declaration of Eric Ball ("Supp. Ball Decl.") ¶ 3, Ex. 1. Defendants have made no attempt to provide authority that they had a good-faith basis for filing it, and by withdrawing it have conceded that Yuga Labs prevailed on its anti-SLAPP motion.

In attempting to salvage their remaining Counterclaims, Defendants mischaracterize and deflect from Yuga Labs' arguments. They address only one prong of the anti-SLAPP statute, where Yuga Labs relies on three. They repeatedly fail to distinguish Yuga Labs' legal authority. They ignore the dozens of tweets showing that they are enjoying the controversy and public "tweet war." They present no evidence to establish subject matter jurisdiction as to Counts 1, 2, and 3 and necessarily fail to meet their burden. And they continue to pursue an advisory opinion on copyright issues they admit cannot presently be filed. These claims must be stricken under California's anti-SLAPP statute or dismissed under Rule 12.

Yuga Labs is entitled to recover its reasonable attorneys' fees for this Motion and to proceed with its trademark lawsuit unimpeded by a sideshow of bogus claims.

## II. ARGUMENT

### A. The Anti-SLAPP Statute Applies to Counts 4-6, and the Court Should Order a Fee Award for Yuga Labs as Prevailing Party.

In seeking to avoid the anti-SLAPP statute's ***mandatory*** fee-shifting provision,

Defendants advance an argument riddled with several fatal flaws.

The first fatal flaw is that Defendants pretend that Yuga Labs solely relies on the anti-SLAPP statute's protection of speech related to litigation (which they refer to as the "litigation privilege"), whereas in actuality, Yuga Labs relies on the statute's protection of litigation-related speech *and* public statements. ECF 89 ("Mot.") at 3 (challenged conduct "falls squarely within the anti-SLAPP's statute protection for litigation-related activities, **speech made 'in a public forum in connection with an issue of public interest' and 'any other conduct ... made in connection with a public issue or an issue of public interest**.") (emphasis added). In fact, most of the challenged conduct is protected public speech rather than litigation-related speech. Mot. 3-4; ECF 96 ("Opp.") at 21-23.[1] Yuga Labs was crystal clear on this (Mot. 3-4), and Defendants simply ignore it.[2] The "principal thrust or gravamen" of the relevant Counterclaims challenge protected activity. *Id.*

The second fatal flaw in Defendants' anti-SLAPP response is their implied position that they can avoid an award of attorneys' fees by belatedly withdrawing their "Declaration of No Defamation" Counterclaim (Count 6). That is not how it works—the Motion cited multiple federal courts applying the anti-SLAPP statute to a declaratory judgment involving an issue of state law. Mot. at 13-14. Defendants do not rebut those authorities, which carry the issue. Furthermore, Defendants cannot avoid anti-SLAPP attorneys' fees by withdrawing their claim right before an adverse decision—Yuga Labs is entitled to mandatory fees as the prevailing party where the outcome of the motion is to meaningfully narrow the issues in the case. *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107-108 (1998).

---

[1] The litigation anti-SLAPP portion applies to filing the Complaint (which Defendants argue was itself tortious) and the takedowns. The public interest/public statement portions of the anti-SLAPP statute apply to Yuga Labs' media outreach, its highly-viewed interviews about Defendants on YouTube, and the various portions alleging so-called campaign of "Public Lies" (Opp. at 4, Countercl. ¶ 63).

[2] Similarly, a belated request to amend to add boilerplate disclaimers that the claims are "not based on communications or speech made in course of this legal proceeding" (Opp. at 23) misses the point for the same reason.

This claim was frivolous from inception. While Defendants claim that there is a "split in authority" regarding whether the "declaratory judgment of no defamation" cause of action even exists, they are unable to identify a **single case** in their favor; indeed, the case they cite does not even contain the word "defamation." Opp. at 21. Likewise, Yuga Labs has been unable to identify a single case in which this theory survived a motion to dismiss. Yuga Labs warned Defendants of this, twice, yet they forced Yuga Labs to fully brief the issue, incurring substantial attorneys' fees. ECF 78; Supp. Ball Decl. ¶ 3, Ex. 1. Defendants only withdrew the claim after failing to persuade Judge McDermott that "discovery [] would show no defamation based on the affirmative defense of truth." ECF 80 at 4. The anti-SLAPP statute applies to Counts 4-6 and the Court should strike them and award attorneys' fees.

### B.  Defendants Fail to Plead Extreme and Outrageous Conduct.

Equally flawed is Defendants' paltry justification for their inability to plead "extreme and outrageous" conduct to support their emotional distress counterclaims. Opp. at 16. Yuga Labs cited **eight** analogous cases in which behavior equaling or worse than what Defendants alleged was held to not be actionable as a matter of law, yet **Defendants have not attempted to respond to or distinguish even one of them**. Mot. at 5-7; Opp. at 16-18.

*Cochran v. Cochran* is nearly identical to this case. 65 Cal. App. 4th 488 (1998). There, as here, the parties had been engaged in a bitter and public dispute, including prior litigation, and the most heavily scrutinized incident was a telephone communication the defendant intended to be taken as a death threat and which the plaintiff interpreted as a death threat.[3] There, as here, plaintiff pointed to *Kiseskey v. Carpenter's Trust* to argue that a statement interpreted by plaintiff as a death threat was actionable. Id. at 497. But *Kiseskey* involved a concerted campaign of credible threats of violence against plaintiff's family by those described by *Cochran* as "union goons,"

---

[3] Other statements were also strikingly similar to what Defendants complain of here, including "You know how powerful I am" and "you'll be sorry." Id. at 495.

resulting in plaintiff suffering a heart attack. *Id.* at 498. In *Cochran*—as should be the case here—the court sharply distinguished actionable death threats from someone blowing off "relatively harmless steam," observing that "feuds are often accompanied by an exchange of hostile unpleasantries which are intended to sting whoever sits at the delivery end[,]" but which are not actionable because such claims would "needlessly congest our courts with trials for hurts both real and imagined which are best resolved elsewhere." *Id*. As stated aptly by *Cochran*, the alleged "threat" was "**little more than the release of steam from the pressure cooker of the parties' ill will**" that were fundamentally different from those in *Kisekey*. *Id*. (emphasis added). Similarly, here, the alleged "threat" attributed to Noah Davis was nothing more than "relatively harmless steam" being blown off in response to public feuding and legal action. Moreover, there is uncontroverted evidence that the supposed victim did not take the exchange seriously; Ripps's father—within five days of the so-called "death threat"—tweeted "Nice" to Cahen's resumption of public harassment of Davis and his deceased father. Mot. at 10-11. That behavior is inconsistent with a credible threat, actual fear, or an actionable tort, and shows just how flimsy Defendants' position is. *Id.*

And while the parties agree that the Court must evaluate all the complained-of acts as a whole, Defendants omit that the behavior must be viewed through the "prism of the appraiser's values, sensitivity threshold, and standards of civility." *Cochran*, 65 Cal. App. 4th at 494 (citations omitted). The many examples of Defendants' instigation of and ongoing engagement in public Twitter attacks on Yuga Labs must be considered in judging whether Yuga Labs' attempts to defend itself against those sustained attacks were "extreme and outrageous." In this context, the acts complained of do not even approach actionable conduct. *See* Mot. at 5.

Finally, Defendants entirely ignore another dispositive reason why the alleged call to Ripps's father is not actionable; the alleged call was not made to Defendants or in their presence, which dooms the claim as a matter of law. *Id.* at 6-7.[4]

---

[4] The alleged call to Cahen's sister is not even alleged to have been threatening.

YUGA LABS' REPLY ISO SPECIAL MTN TO STRIKE
COUNTERCLAIMS; MTN TO DISMISS COUNTERCLAIMS    4    Case No. 2:22-cv-04355-JFW-JEM

In sum, Defendants have failed to plausibly allege extreme and outrageous conduct, and the Court should strike Counts 4 and 5 under the anti-SLAPP statute.

### C. Defendants Fail to Plead Sufficient Emotional Distress.

Defendants' failure to plead severe emotional distress is also independently fatal to Counts 4 and 5. As shown in the Motion, Defendants are profiting from their attack campaign.[5] In response, Defendants attempt to lower the relevant standard to include "any highly unpleasant mental reaction." Opp. at 18. But, once again, **Defendants fail to confront a single one of the cases cited by the Motion** establishing that they must suffer distress "of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it" and that nearly identical allegations have been held to be non-actionable, "garden variety" distress and insufficient as a matter of law. Mot. at 7-8.

Defendants' cited cases do not counsel otherwise. One of the two cases that Defendants cite is unpublished/non-citable under California law. *Ismail v. Montchak, No. B284163, 2019 WL 2949863, at \*6 (Cal. Ct. App. July 8, 2019)*. The other, *Fletcher v. Western Nat'l Life Ins. Co.*, is factually distinguishable where an insurance company denied a laborer's claim for disability compensation and does not establish a lower standard. *10 Cal. App. 3d 376, 386-94 (1970)*. The plaintiff had a fourth-grade education and the appeals court only needed to hold that there was sufficient evidence to sustain the award issued by the jury. *Id. at 397-98*.

Defendants have similarly failed to explain away any of the many tweets (cited in the Motion) in which they mercilessly mock Yuga Labs, call the dispute "hysterical," "silly," and "too funny and stupid" and which show that Defendants are not emotionally distressed but rather relish the fight they started. Mot. at 9-10. Tellingly, Defendants did not designate a single expert establishing the severity of Defendants' alleged harm

---

[5] Since the filing of this Motion, one of Defendants' former colleagues has made sworn statements in support of the money-making nature of the RR/BAYC NFT scheme and detailed the substantial wrongful gains associated with it. *See* Supp. Ball. Decl. ¶ 4, Ex. 2 at ¶¶ 2-4, 9-13, 18-28.

and they have not claimed (including in their proposed amended counterclaims) that they have visited a doctor or therapist because of the supposed "emotional distress" they claim to be suffering. Supp. Ball Decl. ¶ 5.

### D. Defendants Fail to Show Duty of Care as Required for Count 5.

In the Motion, Yuga Labs established that a separate reason Defendants cannot state an NIED claim as a matter of law is because they have failed to plead Yuga Labs owes them a special duty. Mot. at 4-5. In response, Defendants now allege Yuga Labs owes them a duty pursuant to three California Code Sections, none of which are mentioned in the Counterclaim. Opp. at 20-21. While the Court need not reach this ground, the argument fails for several reasons.

**First**, Defendants cite statutes that do not involve negligence; they involve willful and intentional conduct, making them entirely duplicative of the IIED claim and inapplicable to a negligence cause of action. *Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1579 (2005). **Second**, the cited statutes cannot be vindicated through an NIED claim; instead, they provide their own statutory penalties and/or remedies. *See Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 904 (9th Cir. 1982). It is telling that Defendants cannot point to any authority where a court imposed a special duty for a NIED claim based on these statutes; courts do not do so. **Finally**, the specific statutes are incompatible with serving as a hook for an NIED claim. Defendants cite *Cabral v. Ralphs Grocery Co.*, 248 P.3d 1170, 1172 (Cal. 2011) (which does not consider an NIED claim) and California Civil Code § 1714(a) for a "general duty of care" even though California courts have repeatedly held that "there is no duty to avoid negligently causing emotional distress to another." *Gu v. BMW of N. Am., LLC*, 132 Cal. App. 4th 195, 204 (2005) (holding no duty owed under § 1714(a) for NIED); *see also Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). California Code of Civil Procedure § 527.6 allows a litigant to apply for a **temporary restraining order** to stop harassment; it does not create a claim for money damages via NIED. California Penal Code § 646.9 is the criminal prohibition on stalking and has never

been applied to an NIED claim. Defendants also cannot use a criminal statute to invent a private right of action. See *Hillblom v. Cnty. of Fresno*, 539 F. Supp. 2d 1192, 1212 (E.D. Cal. 2008).

Because Defendants have no plausible argument that Yuga Labs owed them a special duty of care or negligently breached the same, and severe emotional distress has not been properly pleaded, Counts 4 and 5 must be stricken or dismissed.

### E. Defendants Fail To Prove Standing For Their 512(f) Claim

Defendants do not dispute that they "bear[] the burden of demonstrating that the Court has subject matter jurisdiction to hear the action." *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1081 (C.D. Cal. 2019) (Walter, J.). To overcome Yuga Labs' factual challenge, Defendants were required to "present affidavits or other evidence necessary to satisfy [their] burden of establishing subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); Mot. at 19. **They did not**. Instead, their argument is bereft of any evidence that they expended time or money. Their decision not to put those statements under penalty of perjury is telling, and dispositive.

The unrebutted evidence proves that as to the Foundation Takedown[6], "Defendants used it to market their counterfeit NFTs and further engage with their followers," and touted it as the "best thing that could have happened." Mot. at 20. Defendants' contemporaneous concession that the Foundation Takedown[7] was helpful for increasing sales of RR/BAYC NFTs is established by unrebutted evidence. Defendants offer no evidence that the *de minimis* time off the market on May 17, 2022 harmed their RR/BAYC NFT sales. Nor can they. *Id.*[8]

---

[6] The Court may take judicial notice of the "Foundation Takedown." ECF 89-1, 89-5, 89-6, and 89-7. Defendants do not dispute this.
[7] Foundation is the only platform Defendants identify that removed content in response to a takedown. Countercl. ¶ 62; *see also* Ball Decl. ¶ 6, Ex. 3 at ¶¶ 65-69.
[8] Defendants did not disclose any expert concerning their damages or identified any damages concerning their copyright claims, such as lost time in the market, in their amended initial disclosures. Supp. Ball Decl. ¶ 5 and ¶ 7, Ex. 4. Defendants' business partner also affirms that takedowns were used for marketing. *Id.* ¶ 4, Ex. 2. The Court,

Finally, Defendants' argument that they can show standing by way of *statutory* harm is meritless. "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016). Defendants offer no evidence of any harm resulting from their counterfeit collection being briefly "taken off the internet" and which they admitted was the "best thing that could have happened." Opp. at 10; ECF 89-9. And while Defendants opine that Section 512(f) is an exception, they provide no authority for their argument.[9]

### F. Defendants Admit They Only Pled One DMCA Takedown With Particularity And Could Not Plead Any Other

Defendants admit they pled only the Foundation Takedown with particularity. *See* Opp. at 12 n.6. Any other takedown they summarily allege does not survive the Rule 9(b) pleading standard (or even the Rule 8 standard). *See* Mot. at 21–22; *Flores v. Popova*, No. CV 19-1379, 2019 WL 4238886, at *3 (C.D. Cal. Aug. 7, 2019) (granting motion to dismiss under Rule 9(b) standard because "Plaintiff has provided no specific information as to the who, what, when, where, or how of the alleged fraud."); *Alvarez v. Bayer US, Inc.*, No. CV 21-5416, 2021 WL 8742153, at *5 (C.D. Cal. Dec. 15, 2021) (similar).

Even so, Defendants admit that the legal basis for the other takedowns they cursorily reference was **trademark infringement** and that Yuga Labs **did not allege**

---

in its discretion may consider evidence submitted on reply that does not go to "new" arguments, but rather pertains to the original Rule 12(b)(1) argument. *See Pistor v. Garcia*, 791 F.3d 1104, 1111-1112 (9th Cir. 2015).

[9] Defendants cite to *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1157 (9th Cir. 2016). Particulars of the holding aside, the Supreme Court's subsequent ruling in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) is controlling. Defendants also cite to *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) without further analysis. That holding is easily distinguished because the Court found standing based on specific and concrete risks of imminent harm. *Id.* at 1117.

**copyright infringement** in those takedowns. Opp. at 8 (claiming that Yuga Labs' other takedowns "attempt[] to improperly leverage the power of the DMCA for non-copyright claims"). This is fatal because trademark takedowns do not give rise to a Section 512(f) claim. Mot. at 19. Moreover, except as to the Foundation Takedown, Defendants do not even argue that any platform removed content by relying on an alleged misrepresentation of copyright by Yuga Labs.

Defendants also falsely state that "Yuga did not raise pleading with particularity during the parties' Local Rule 7-3 conference of counsel, as the parties' subsequent Joint Statement confirms." Opp. at 11. In fact, that very Joint Statement states "Plaintiff's counsel notified Defendants' counsel that Plaintiff would move to dismiss Defendants' counterclaims under Rules 12(b)(1), 12(b)(6), **9(b)** of the Federal Rules of Civil Procedure, and California's Anti-SLAPP law." ECF 78 (emphasis added); *see also* Supp. Ball Decl. at Ex. 1.[10]

### G. Defendants Concede Yuga Labs Had a Good Faith Belief That Their Use Of Yuga Labs' Logo Infringed Yuga Labs' Copyright

The Foundation Takedown shows that Defendants copied Yuga Labs' logo. ECF 89-5, 89-6, 89-7. It is uncontroversial that a logo can be protected as both a copyright and a trademark. *Vigil v. Walt Disney Co.*, Nos. C-95-1790, C-95-1277, 1995 WL 621832 (N.D. Cal. Oct. 16, 1995); *Starbucks Corp. v. Heller*, No. CV 14-01383, 2014 WL 6685662 (C.D. Cal. Nov. 26, 2014). By not addressing the logo, Defendants concede that Yuga Labs had a good faith belief in its ownership of a copyright for the logo and that they failed to allege a 512(f) violation for the Foundation Takedown.[11] *See* L.R. 7-9.

---

[10] Defendants elected not to amend their pleading as a matter of right within the period permitted by Fed. R. Civ. P. 15. Combined with their refusal to amend their counterclaims to cure the Rule 9(b) defects, the Court can infer that Defendants did not believe these defects were curable. *See* Standing Order (ECF 14) at 8–9.

[11] Yuga Labs also has a good faith belief that it owns a copyright in the Bored Ape images. Although Defendants do not seem to understand the legal difference between a copyright and a copyright registration (Opp. at 4), Yuga Labs does. *Id.*; ECF 96-4; *see also* https://ipandmedialaw.fkks.com/post/102i6pp/reflections-on-baycs-revolutionary-nft-license ("*Of course* Yuga owns the copyright in their artwork.)

### H. Defendants Admit They Seek An Advisory Opinion On Whether Yuga Labs Owns Any Copyrights, Which Article III Prohibits

Defendants' attempt to conflate copyrights with a copyright *registration* does not save their claim. They admit that Yuga Labs cannot presently sue Defendants for copyright infringement, which is fatal. Opp. at 15–16.[12] Though they argue that Yuga Labs *could* obtain a copyright registration, that kind of speculation leads to precisely the type of advisory opinion prohibited by Article III. *See* Mot. at 23–24. Indeed, any person *could* draft a complaint and file suit within "five working days" (Opp. at 16); this hypothetical risk has no limitation and is not the type of "impending litigation" required to seek declaratory judgment. Mot. at 23.

Moreover, although Defendants argue that they have "good reason to believe" that Yuga Labs will "use" the DMCA "unless a court definitively settles their right to any copyright" (Opp. at 15), they reference a list of takedowns they admit did not occur within the last eight months. *Id.* at 12-13. Even if any of those other takedowns were made on the basis of copyright (they were not), Defendants point to *no* "real and immediate" "actual" controversy. *MGA Ent., Inc. v. Louis Vuitton Malletier, S.A.*, No. 2:18-CV-10758, 2019 WL 2109643, at *4 (C.D. Cal. May 14, 2019). Furthermore, Defendants do not introduce *any* jurisdictional evidence of these takedowns to meet their burden of showing that Yuga Labs was using a claim of copyright infringement to support a takedown (because it was not).[13] There is no prohibition on Yuga Labs using the Lanham Act to support a takedown request. Defendants offer no other argument, and obviously no evidence, that there is any imminent controversy that the

---

(emphasis in original).
[12] Moreover, Defendants' discussion of *Cal. Furniture Collection, Inc. v. Harris Adamson Home, LLC*, No. 19-cv-006254, 2019 WL 7882081 (C.D. Cal. Oct. 18, 2019) and *Sky Billiards, Inc. v. WolVol, Inc*, No. 5:15-cv-02182, 2016 WL 7479428 (C.D. Cal. July 11, 2016) is inaccurate and misleading. These courts were expressly addressing the issue of a parties that did not have a copyright registration.
[13] The reason is obvious—regardless of the form the platform required Yuga Labs to use to request a takedown, Yuga Labs stated that the basis for the takedown was that "the RR/BAYC project used [Yuga Labs'] trademarks." Opp. at 12. Defendants also do not offer any evidence that these takedowns were successful or, if they were, that Defendants expended time or money to respond.

Court needs to resolve. Presumably, every party that has sought an advisory opinion believed it would serve a "useful purpose" (Opp. at 15) to them, but Defendants' belief that an advisory opinion would benefit them does not exempt them from the full requirements of Article III.

Moreover, although Yuga Labs has pursued and obtained relief in other courts on its theory that the RR/BAYC NFTs infringe its trademarks, it has not pursued a copyright claim there either. *See, e.g.*, Consent Judgment, *Yuga Labs, Inc. v. Thomas Lehman*, 1:23-cv-00085-MAD-TWD (Feb. 6, 2022) (ECF 12). Therefore, consistent with its lawsuit against Defendants, Yuga Labs has been and is pursuing its trademark claims in federal court.

### I. Defendants Have Not Moved for an Untimely Amendment.

Defendants make several references that they should be "allowed" an amendment in case Yuga Labs' Motion to Strike is granted. Opp. at 19, 23. Defendants have not formally sought leave for an amendment, which fails to satisfy the requirements of the Scheduling Order and the Standing Order to amended pleadings. ECF 57 at 8; ECF 14 at 12 (listing requirements for amended pleadings).

Regardless, any amendment would be futile.[14] With respect to the IIED/NIED claims, amendment would be futile because, among several reasons, the alleged conduct still could not approach the required "extreme and outrageous" standard or the necessary quantum of emotional distress. As to the copyright claims, amendment is futile because Yuga Labs does not have a copyright registration, has not threatened Defendants with a copyright lawsuit, and issued only one takedown based on copyright infringement where it is undisputed Yuga Labs owns the copyright and for which Defendants cannot plead harm.

### J. Yuga Labs' Motion Was Timely Filed

Yuga Labs first filed this Motion on January 16, 2023. ECF 86. That filing was

---

[14] A redline of Defendants' proposed changes to the Counterclaims, which show the futility of the proposed amendments, is filed herewith. Supp. Ball Decl. ¶ 6, Ex. 3.

made one day early. ECF 65. Yuga Labs filed on this date because February 20 is a federal holiday; filing on the due date of January 17 would require setting a hearing date of February 13 (contrary to L.R. 6-1) or February 27 (contrary to the Court's Standing Order (ECF 14)). Yuga Labs understood that a filing on January 16 would be treated as filed that day. Supp. Ball Decl. ¶ 8.[15] The Court struck the motion for "insufficient time." ECF 88. Understanding this order to direct Yuga Labs to notice a new hearing date, it refiled the identical motion a few hours later.

Defendants' request for an extraordinary remedy of a summary denial is unwarranted. First, Yuga Labs' Motion filed with a new hearing date relates back to the timely, original filing. Second, defenses under Rules 12(b)(1) and 12(b)(6) **cannot be waived**. *See* Fed. R. Civ. P. 12(h). Finally, Defendants have not been prejudiced; they had an extra 14 days to file their opposition.

If the Court nonetheless finds the Motion untimely, Yuga Labs respectfully requests that the Court exercise its discretion to adjudicate the motion, especially given the Catch-22 situation regarding an appropriate hearing date and Yuga Labs' reasonable efforts to abide by the Court's directives. *See, e.g.*, *In re Yahoo! Litig.*, 251 F.R.D. 459, 464 (C.D. Cal. 2008).

## III. CONCLUSION

The Court should strike or dismiss each counterclaim, with prejudice, and award mandatory attorneys' fees as required under the anti-SLAPP statute.

Dated: February 13, 2023　　　　　　　　FENWICK & WEST LLP

By: */s/ Eric Ball*
Eric Ball
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

---

[15] Yuga Labs then calculated that there was sufficient time for the motion to be heard in 28 days. The applicable rules do not exclude federal holidays from counting the time until a hearing unless the last day of the period is a holiday. Fed. R. Civ. P. 6(a)(1), and February 13 is 28 days after January 16. *See* L.R. 6-1.