# Exhibit 3

Exhibit 3
Pg. 19

# Exhibit 1

Exhibit 3
Pg. 20

1  Louis W. Tompros (*pro hac vice*)
   louis.tompros@wilmerhale.com
2  Monica Grewal (pro hac vice)
   monica.grewal@wilmerhale.com
3  Scott W. Bertulli (pro hac vice)
   scott.bertulli@wilmerhale.com
4  **WILMER CUTLER PICKERING HALE AND DORR LLP**
5  60 State Street Boston, MA 02109 6   Telephone: (617) 526-6000 Fax: (617) 526-5000
7
8  Derek Gosma (SBN 274515)
   derek.gosma@wilmerhale.com
   Henry Nikogosyan (SBN 326277)
9  henry.nikogosyan@wilmerhale.com
10 **WILMER CUTLER PICKERING HALE AND DORR LLP**
   350 South Grand Ave., Suite 2400
11 Los Angeles, CA 90071 Telephone: (213) 443-5300
12 Fax: (213) 443-5400
13 Attorneys for Defendants
   *Ryder Ripps and Jeremy Cahen*
14

15                **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                  **WESTERN DIVISION**

18

19   Yuga Labs, Inc., 20 21

22        v.

23   Ryder Ripps, Jeremy Cahen, 24 25

28

26   Case No. 2:22-cv-4355-JFW-JEM

27

MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

**Exhibit 3
Pg. 21**

Plaintiff,

Defendants.

**RYDER RIPPS AND
JEREMY CAHEN'S
AMENDED ANSWER,
DEFENSES, AND
COUNTERCLAIMS TO
COMPLAINT**

**JURY TRIAL DEMANDED**

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

**Exhibit 3
Pg. 22**

## NATURE OF THE CASE

1.    Ryder Ripps (Mr. Ripps) and Jeremy Cahen (Mr. Cahen) (collectively, "Defendants") deny that *Forbes* has described the Bored Ape NFTs as "the epitome of coolness for many" and that the collection's value arises from their rarity. Defendants admit that "only 10,000 Bored Ape NFTs exist, and each is entirely unique" insofar as all NFTs created under the same standard—ERC-721 (*see* https://ethereum.org/en/developers/docs/standards/tokens/erc-721/)—are unique. Defendants deny that the ape images associated with the Bored Ape NFTs are entirely unique. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1 of the Complaint, and therefore deny them.

2.    Defendants deny the allegations set forth in paragraph 2 of the Complaint.

3.    Defendants deny the allegations set forth in paragraph 3 of the Complaint.

4.    Defendants admit that Yuga Labs, Inc. ("Yuga") has filed this action against the Defendants and deny the remaining allegations in paragraph 4 of the Complaint.

5.    Defendants admit that they have described the RR/BAYC project as satire and deny the remaining allegations in paragraph 5 of the Complaint.

6.    Defendants deny the allegations set forth in paragraph 6 of the Complaint.

7.    Defendants deny the allegations set forth in paragraph 7 of the Complaint.

## THE PARTIES

8.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint, and therefore deny them. 28

9. Defendants admit the allegations in paragraph 9 of the Complaint.

10. Defendants deny the allegations in paragraph 10 of the Complaint.

11. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint, and therefore deny them.

12. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, and therefore deny them.

## JURISDICTION AND VENUE

13. Defendants admit that Mr. Ripps' place of residence is primarily in the Central District of California. Defendants deny that Mr. Cahen's place of residence is primarily in the Central District of California. Paragraph 13 sets forth conclusions of law to which no response is required. To the extent a response is deemed to be required, Defendants admit that this Court has personal jurisdiction over Defendants.

14. Defendants admit that this action purports to arise under the Lanham Act. Paragraph 14 sets forth conclusions of law to which no response is required. To the extent a response is deemed to be required, Defendants admit that this Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 and 1338(a).

15. Paragraph 15 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is deemed to be required, Defendants admit that venue is proper for this case in the Central District of California, Western Division. Defendants deny the remaining allegations in paragraph 15 of the Complaint.

## FACTUAL BACKGROUND

16. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint, and therefore deny them.

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint, and therefore deny them.

18.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint, and therefore deny them.

19.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint, and therefore deny them.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint, and therefore deny them.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint, and therefore deny them.

22.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint, and therefore deny them.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint, and therefore deny them.

24.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint, and therefore deny them.

25.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint, and therefore deny them.

Exhibit 3
Pg. 26

26.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint, and therefore deny them.

27.      Defendants deny the allegations in Paragraph 27 of the Complaint.

28.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint, and therefore deny them.

29.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint, and therefore deny them.

30.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint, and therefore deny them.

31.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Complaint, and therefore deny them.

32.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint, and therefore deny them.

33.      Paragraph 33 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in paragraph 33 of the Complaint.

34.      Paragraph 34 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants admit that they created a website with the domain name https://rrbayc.com, that the website allowed users to reserve RR/BAYC NFTs, and that the website displayed digital images

associated with the BAYC collection. Defendants deny the remaining allegations set forth in paragraph 34 of the Complaint.

35. Defendants deny the allegations set forth in in paragraph 35 of the Complaint.

36. Paragraph 36 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the Complaint, and therefore deny them.

37. Paragraph 37 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Complaint, and therefore deny them.

38. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of the Complaint, and therefore deny them.

39. Paragraph 39 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Complaint, and therefore deny them.

40. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Complaint, and therefore deny them.

41. Paragraph 41 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Complaint, and therefore deny them.

MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 28

42.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Complaint, and therefore deny them.

43.     Defendants admit that Mr. Ripps used the Twitter page @ryder_ripps as part of the RR/BAYC conceptual and performance art project. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 43 of the Complaint, and therefore deny them.

44.     Defendants deny the allegations set forth in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations set forth in Paragraph 45 of the Complaint.

46.     Paragraph 46 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint, and therefore deny them.

47.     Paragraph 47 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint, and therefore deny them.

48.     Defendants admit that the RR/BAYC Project is satire, and deny the remaining allegations set forth in paragraph 48 of the Complaint.

49.     Defendants deny the allegations set forth in paragraph 49 of the Complaint.

50.     Defendants deny the allegations set forth in paragraph 50 of the Complaint. 26

51. Defendants admit that they have at least tens of thousands of followers on social media. Defendants deny the remaining allegations set forth in paragraph 51 of the Complaint.

52. Defendants deny making the Twitter post included in paragraph 52 of the Complaint. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52 of the Complaint, and therefore deny them.

53. Defendants deny making the Twitter post included in paragraph 53 of the Complaint. Defendants also deny that they "equate buying an RR/BAYC NFT with buying an official BAYC NFT" and admit that they do not offer services that the Bored Ape NFTs offer. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 of the Complaint, and therefore deny them.

54. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54 of the Complaint, and therefore deny them.

55. Paragraph 55 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants admit that they announced the launch of "Ape Market." With respect to all remaining allegations in paragraph 55, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint, and therefore deny them.

56. Defendants deny making the Twitter posts included in paragraph 56 of the Complaint. Defendants admit they have made commentary against Yuga on Twitter in connection with the RR/BAYC project and deny all remaining allegations in paragraph 56.

Exhibit 3
Pg. 30

57.     Defendants deny engaging in any "scam." Defendants admit that Mr. Ripps made the Instagram post reproduced in paragraph 57 of the Complaint but deny the alleged misinterpretation of that post. Defendants otherwise deny the remaining allegations of this paragraph.

58.     Defendants deny the allegation set forth in paragraph 58 of the Complaint.

59.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the Complaint, and therefore deny them.

| | | **FIRST CAUSE OF ACTION** |
|---|---|---|
| | | **FALSE DESIGNATION OF ORIGIN** |
| | | ~~(15~~ <br> **(15 U.S.C. § 1125(A))** |
| | | **(Against All Defendants)** |
| | 60. | To the extent paragraph 60 requires a response, Defendants reassert their |

answers to all preceding paragraphs contained above as though fully set forth herein.

61.     Paragraph 61 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of the Complaint, and therefore deny them.

62.     Paragraph 62 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint, and therefore deny them.

63.     Paragraph 63 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations

27  in paragraph 63 of the Complaint, and therefore deny them.

28

Exhibit 3
Pg. 32

64.     Paragraph 64 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the Complaint, and therefore deny them.

65.     Paragraph 65 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the Complaint, and therefore deny them.

66.     Paragraph 66 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the Complaint, and therefore deny them.

67.     Paragraph 67 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Complaint, and therefore deny them.

68.     Paragraph 68 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in paragraph 68.

## SECOND CAUSE OF ACTION

## FALSE ADVERTISING

## (15 U.S.C. § 1125(A))

## (Against Defendants Ripps, Cahen, and Does 1-5)

69.     To the extent paragraph 69 requires a response, Defendants reassert their answers to all preceding paragraphs contained above as though fully set forth herein.

70.     Paragraph 70 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 33

28

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 34

knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 of the Complaint, and therefore deny them.

71.     Paragraph 71 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 of the Complaint, and therefore deny them.

72.     Paragraph 72 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants deny that they promoted the RR/BAYC conceptual art project with the statements, "To CLARIFY... how the website http://rrbayc.com works. You reserve an ape which you can choose. @ryder_ripps will then mint it for you when he is able to. Then it will get transferred to your wallet Then you can say fuck off to @BoredApeYC!" and "Looking at @ApeMarketplace and saying fuck you to @BoredApeYC who's with me?" Defendants also deny having ownership or control over @RR_BAYC and @BoredApeV3. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72 of the Complaint, and therefore deny them.

73.     Paragraph 73 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 of the Complaint, and therefore deny them.

74.     Paragraph 74 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74 of the Complaint, and therefore deny them.

75.     Paragraph 75 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without

Exhibit 3
Pg. 35

1  knowledge or information sufficient to form a belief as to the truth of the allegations

2  in paragraph 75 of the Complaint, and therefore deny them.

3       76.    Paragraph 76 of the Complaint sets forth conclusions of law to which no

4  response is required. To the extent a response is required, Defendants are without

5  knowledge or information sufficient to form a belief as to the truth of the allegations

6  in paragraph 76 of the Complaint, and therefore deny them.

7  <u>**THIRD CAUSE OF ACTION**</u>

8  <u>**CYBERSQUATTING**</u>

9  <u>**(15 U.S.C. § 1125(D))**</u>

10  <u>**(Against Defendants Ripps, Cahen, and Does 1-5)**</u>

11       77.    To the extent paragraph 77 requires a response, Defendants reassert their

12  answers to all preceding paragraphs contained above as though fully set forth herein.

13       78.    Paragraph 78 of the Complaint sets forth conclusions of law to which no

14  response is required. To the extent a response is required, Defendants are without

15  knowledge or information sufficient to form a belief as to the truth of the allegations

16  in paragraph 78 of the Complaint, and therefore deny them.

17       79.    Paragraph 79 of the Complaint sets forth conclusions of law to which no

18  response is required. To the extent a response is required, Defendants are without

19  knowledge or information sufficient to form a belief as to the truth of the allegations

20  in paragraph 79 of the Complaint, and therefore deny them.

21       80.    Paragraph 80 of the Complaint sets forth conclusions of law to which no

22  response is required. To the extent a response is required, Defendants are without

23  knowledge or information sufficient to form a belief as to the truth of the allegations

24  in paragraph 80 of the Complaint, and therefore deny them.

25       81.    Paragraph 81 of the Complaint sets forth conclusions of law to which no

26  response is required. To the extent a response is required, Defendants are without

27

28

knowledge or information sufficient to form a belief as to the truth of the allegations
in paragraph 81 of the Complaint, and therefore deny them.

82.    Paragraph 82 of the Complaint sets forth conclusions of law to which no
response is required. To the extent a response is required, Defendants are without
knowledge or information sufficient to form a belief as to the truth of the allegations
in paragraph 82 of the Complaint, and therefore deny them.

83.    Paragraph 83 of the Complaint sets forth conclusions of law to which no
response is required. To the extent a response is required, Defendants are without
knowledge or information sufficient to form a belief as to the truth of the allegations
in paragraph 83 of the Complaint, and therefore deny them.

84.    Paragraph 84 of the Complaint sets forth conclusions of law to which no
response is required. To the extent a response is required, Defendants are without
knowledge or information sufficient to form a belief as to the truth of the allegations
in paragraph 84 of the Complaint, and therefore deny them.

85.    Paragraph 85 of the Complaint sets forth conclusions of law to which no
response is required. To the extent a response is required, Defendants are without
knowledge or information sufficient to form a belief as to the truth of the allegations
in paragraph 85 of the Complaint, and therefore deny them.

## FOURTH CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT
### (Against All Defendants)

86.    To the extent paragraph 86 requires a response, Defendants reassert their
answers to all preceding paragraphs contained above as though fully set forth herein.

87.    Defendants are without knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 87 of the Complaint, and therefore
deny them.

88. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88 of the Complaint, and therefore deny them.

89. Paragraph 89 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89 of the Complaint, and therefore deny them.

90. Paragraph 90 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 of the Complaint, and therefore deny them.

91. Paragraph 91 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91 of the Complaint, and therefore deny them.

92. Paragraph 92 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 of the Complaint, and therefore deny them.

93. Paragraph 93 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 of the Complaint, and therefore deny them.

94. Paragraph 94 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94 of the Complaint, and therefore deny them.

MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 38

1    95.    Paragraph 95 of the Complaint sets forth conclusions of law to which no

2    response is required. To the extent a response is required, Defendants are without

3    knowledge or information sufficient to form a belief as to the truth of the allegations

4    in paragraph 95 of the Complaint, and therefore deny them.

5    96.    Paragraph 96 of the Complaint sets forth conclusions of law to which no

6    response is required. To the extent a response is required, Defendants are without

7    knowledge or information sufficient to form a belief as to the truth of the allegations

8    in paragraph 96 of the Complaint, and therefore deny them.

9    97.    Paragraph 97 of the Complaint sets forth conclusions of law to which no

10   response is required. To the extent a response is required, Defendants are without

11   knowledge or information sufficient to form a belief as to the truth of the allegations

12   in paragraph 97 of the Complaint, and therefore deny them.

13   98.    Paragraph 98 of the Complaint sets forth conclusions of law to which no

14   response is required. To the extent a response is required, Defendants are without

15   knowledge or information sufficient to form a belief as to the truth of the allegations

16   in paragraph 98 of the Complaint, and therefore deny them.

17                    **FIFTH CAUSE OF ACTION**

18             **COMMON LAW UNFAIR COMPETITION**

19                  **(Against All Defendants)**

20   99.    To the extent paragraph 99 requires a response, Defendants reassert their

21   answers to all preceding paragraphs contained above as though fully set forth herein.

22   100.   Paragraph 100 of the Complaint sets forth conclusions of law to which no

23   response is required. To the extent a response is required, Defendants are without

24   knowledge or information sufficient to form a belief as to the truth of the allegations

25   in paragraph 100 of the Complaint, and therefore deny

them. 26

27

28

101. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101 of the Complaint, and therefore deny them.

102. Paragraph 102 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102 of the Complaint, and therefore deny them.

103. Paragraph 103 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103 of the Complaint, and therefore deny them.

104. Paragraph 104 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 of the Complaint, and therefore deny them.

105. Paragraph 105 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105 of the Complaint, and therefore deny them.

## SIXTH CAUSE OF ACTION

## UNFAIR COMPETITION

## (CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*)

## (Against All Defendants)

106. To the extent paragraph 106 requires a response, Defendants reassert their answers to all preceding paragraphs contained above as though fully set forth herein.

Exhibit 3
Pg. 40

107.    Paragraph 107 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 of the Complaint, and therefore deny them.

108.    Paragraph 108 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of the Complaint, and therefore deny them.

109.    Paragraph 109of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 of the Complaint, and therefore deny them.

110.    Paragraph 110 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 of the Complaint, and therefore deny them.

111.    Paragraph 111 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111 of the Complaint, and therefore deny them.

112.    Paragraph 112 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112 of the Complaint, and therefore deny them.

## SEVENTH CAUSE OF ACTION

## FALSE ADVERTISING

## (CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*)

MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 41

**(Against Defendants Ripps, Cahen, and Does 1-5)**

113.    To the extent paragraph 113 requires a response, Defendants reassert their answers to all preceding paragraphs contained above as though fully set forth herein.

114.    Paragraph 114 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 of the Complaint, and therefore deny them.

115.    Paragraph 115 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115 of the Complaint, and therefore deny them.

116.    Paragraph 112 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants deny that they promoted the RR/BAYC conceptual art project with the statements, "To CLARIFY... how the website http://rrbayc.com works. You reserve an ape which you can choose. @ryder_ripps will then mint it for you when he is able to. Then it will get transferred to your wallet Then you can say fuck off to @BoredApeYC!" and "Looking at @ApeMarketplace and saying fuck you to @BoredApeYC who's with me?" Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 116 of the Complaint, and therefore deny them.

117.    Paragraph 117 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117 of the Complaint, and therefore deny them.

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 42

118.     Paragraph 118 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118 of the Complaint, and therefore deny them.

119.     Paragraph 119 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 119 of the Complaint, and therefore deny them.

120.     Paragraph 120 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120 of the Complaint, and therefore deny them.

121.     Paragraph 121 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121 of the Complaint, and therefore deny them.

122.     Paragraph 122 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122 of the Complaint, and therefore deny them.

## EIGHTH CAUSE OF ACTION

## UNJUST ENRICHMENT

### (Against All Defendants)

123.     To the extent paragraph 123 requires a response, Defendants reassert their answers to all preceding paragraphs contained above as though fully set forth herein.

124.   Paragraph 124 of the Complaint sets forth conclusions of law to which no response is required. Paragraph 124 also sets forth allegations that have been dismissed from this action. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124 of the Complaint, and therefore deny them.

125.   Paragraph 125 of the Complaint sets forth conclusions of law to which no response is required. Paragraph 125 also sets forth allegations that have been dismissed from this action. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125 of the Complaint, and therefore deny them.

126.   Paragraph 126 of the Complaint sets forth conclusions of law to which no response is required. Paragraph 126 also sets forth allegations that have been dismissed from this action. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126 of the Complaint, and therefore deny them.

127.   Paragraph 127 of the Complaint sets forth conclusions of law to which no response is required. Paragraph 127 also sets forth allegations that have been dismissed from this action. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127 of the Complaint, and therefore deny them.

128.   Paragraph 128 of the Complaint sets forth conclusions of law to which no response is required. Paragraph 128 also sets forth allegations that have been dismissed from this action. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128 of the Complaint, and therefore deny them.

129.   Paragraph 129 of the Complaint sets forth conclusions of law to which no response is required. Paragraph 129 also sets forth allegations that have been

Exhibit 3
Pg. 44

dismissed from this action. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129 of the Complaint, and therefore deny them.

### NINTH CAUSE OF ACTION

### CONVERSION

### (Against Defendants Ripps, Cahen, and Does 1-5)

130.     To the extent paragraph 130 requires a response, Defendants reassert their answers to all preceding paragraphs contained above as though fully set forth herein.

131.     Paragraph 131 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131 of the Complaint, and therefore deny them.

132.     Paragraph 132 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 132 of the Complaint, and therefore deny them.

133.     Paragraph 133 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133 of the Complaint, and therefore deny them.

134.     Paragraph 134 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134 of the Complaint, and therefore deny them.

135.     Paragraph 135 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without

knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 135 of the Complaint, and therefore deny them.

136. Paragraph 136 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 136 of the Complaint, and therefore deny them.

137. Paragraph 137 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137 of the Complaint, and therefore deny them.

138. Paragraph 138 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 138 of the Complaint, and therefore deny them.

## TENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

## (Against All Defendants)

139. To the extent paragraph 139 requires a response, Defendants reassert their answers to all preceding paragraphs contained above as though fully set forth herein.

140. Paragraph 140 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 140 of the Complaint, and therefore deny them.

141. Paragraph 141 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without

MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 46

1  knowledge or information sufficient to form a belief as to the truth of the allegations

2  in paragraph 141 of the Complaint, and therefore deny them.

3      142.    Paragraph 142 of the Complaint sets forth conclusions of law to which no

4  response is required. To the extent a response is required, Defendants are without

5  knowledge or information sufficient to form a belief as to the truth of the allegations

6  in paragraph 142 of the Complaint, and therefore deny them.

7      143.    Paragraph 143 of the Complaint sets forth conclusions of law to which no

8  response is required. To the extent a response is required, Defendants are without

9  knowledge or information sufficient to form a belief as to the truth of the allegations

10  in paragraph 143 of the Complaint, and therefore deny them.

11      144.    Paragraph 144 of the Complaint sets forth conclusions of law to which no

12  response is required. To the extent a response is required, Defendants are without

13  knowledge or information sufficient to form a belief as to the truth of the allegations

14  in paragraph 144 of the Complaint, and therefore deny them.

15      145.    Paragraph 145 of the Complaint sets forth conclusions of law to which no

16  response is required. To the extent a response is required, Defendants are without

17  knowledge or information sufficient to form a belief as to the truth of the allegations

18  in paragraph 145 of the Complaint, and therefore deny them.

19      146.    Paragraph 146 of the Complaint sets forth conclusions of law to which no

20  response is required. To the extent a response is required, Defendants are without

21  knowledge or information sufficient to form a belief as to the truth of the allegations

22  in paragraph 146 of the Complaint, and therefore deny them.

23      147.    Paragraph 147 of the Complaint sets forth conclusions of law to which no

24  response is required. To the extent a response is required, Defendants are without

25  knowledge or information sufficient to form a belief as to the truth of the allegations

26  in paragraph 147 of the Complaint, and therefore deny

them. 27

28

Exhibit 3
Pg. 47

148.     Paragraph 148 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148 of the Complaint, and therefore deny them.

149.     Paragraph 149 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148 of the Complaint, and therefore deny them.

## ELEVENTH CAUSE OF ACTION

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

## (Against All Defendants)

150.     To the extent paragraph 150 requires a response, Defendants reassert their answers to all preceding paragraphs contained above as though fully set forth herein.

151.     Paragraph 151 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 151 of the Complaint, and therefore deny them.

152.     Paragraph 152 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 152 of the Complaint, and therefore deny them.

153.     Paragraph 153 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153 of the Complaint, and therefore deny them.

Exhibit 3
Pg. 48

154.    Paragraph 154 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 154 of the Complaint, and therefore deny them.

155.    Paragraph 155 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 155 of the Complaint, and therefore deny them.

156.    Paragraph 156 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 156 of the Complaint, and therefore deny them.

157.    Paragraph 157 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 157 of the Complaint, and therefore deny them.

158.    Paragraph 158 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 158 of the Complaint, and therefore deny them.

159.    Paragraph 159 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 159 of the Complaint, and therefore deny them.

160.    Paragraph 160 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without 27

MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 49

knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 160 of the Complaint, and therefore deny them.

161.    Paragraph 161 of the Complaint sets forth conclusions of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161 of the Complaint, and therefore deny them.

## PRAYER FOR RELIEF

Defendants deny that Yuga is entitled to the relief requested or to any other relief.

Defendants deny all allegations of Yuga's Complaint not specifically admitted above.

## DEFENSES

By alleging the Defenses set forth below, Defendants does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part. For its Defenses to the causes of action in Yuga's Complaint, Defendants alleges as follows:

## FIRST DEFENSE
## (Failure to State a Claim)

1.    The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
## (First Amendment)

2.    Yuga's claims are barred by the First Amendment, including under the *Rogers* test.

## THIRD DEFENSE
## (Fair Use)

3.    The RR/BAYC project and Defendants' conduct associated with the RR/BAYC project constituted fair use of any Yuga trademarks.

**FOURTH DEFENSE**

**(No Distinctiveness)**

4.    The marks asserted in the Complaint are either generic or merely descriptive and have not acquired secondary meaning and therefore do not constitute distinctive, enforceable marks.

**FIFTH DEFENSE**

**(Abandonment)**

5.    Yuga forfeited its right to recover against the Defendants by abandoning the marks asserted in the Complaint through, at least, failure to enforce the asserted marks, failure to use the asserted marks in commerce, abandonment of trademark applications, and licensing any rights in the asserted marks without proper monitoring or quality control.

**SIXTH DEFENSE**

**(Acquiescence/Estoppel/Naked Licensing)**

6.    Yuga's claims are barred by the doctrines of acquiescence and/or16,estoppel, and/or naked licensing due to Yuga's activities that impliedly or explicitly permitted Defendants' to17 use the marks asserted in the Complaint.

**SEVENTH DEFENSE**

**(Unclean Hands)**

7.    The relief requested in the Complaint is barred in whole or in part by the doctrine of unclean hands based on various unlawful activities associated with the sale and promotion of BAYC NFTs including Yuga's misuse of BAYC NFTs as securities, undisclosed compensation for endorsements from celebrities, and/or unlawful acts directed towards the Defendants.

**EIGHTH DEFENSE**

**(Waiver)**

8.    The relief Yuga seeks is barred by the doctrine of waiver.

Exhibit 3
Pg. 51

Exhibit 3
Pg. 52

## NINTH DEFENSE

### (Equitable Estoppel)

9.      The relief Yuga seeks is barred by the doctrine of equitable estoppel.

## TENTH DEFENSE

### (Unjust Enrichment)

10.     Yuga's claims for relief are barred and precluded in whole or in part because the relief Yuga seeks would constitute unjust enrichment.

## ELEVENTH DEFENSE

### (Justification)

11.     Yuga's claims are barred based on Defendants' privilege to protect their own economic interest in the RR/BAYC conceptual and performance art project.

## TWELFTH DEFENSE

### (Right to Property)

12.     Yuga's claims are barred based on Defendants' right to use the disputed property in connection with the RR/BAYC conceptual and performance art project base on authority of law, abandonment, waiver, ratification, estoppel, consent, or approval.

## THIRTEENTH DEFENSE

### (Good Faith)

13.     Yuga's claims are barred because Defendants acted in good faith in their activities associated with the RR/BAYC project. If any conduct by Defendants is found to be unlawful, such conduct was not oppressive, fraudulent, or committed with malice.

## FOURTEENTH DEFENSE

### (Failure to Mitigate)

14.     To the extent Yuga has suffered any damages (which it has not), Yuga, although under a legal obligation to do so, has failed to take any reasonable steps to

mitigate any alleged damages and is therefore barred from recovering damages, if any, from Defendants.

## FIFTEENTH DEFENSE

### (Apportionment)

15.     Without admitting that any damages exist, if damages were suffered by Yuga as alleged in the Complaint, those damages were caused and contributed by persons other than Defendants. Any liability or damages, if they exist, should be apportioned and the liability of Defendants should be reduced accordingly.

## SIXTEENTH DEFENSE

### (Speculative Damages)

16.     Yuga is barred from recovering, in whole or in part, on any of the claims alleged in the Complaint because the damages are speculative.

## RESERVATION OF ADDITIONAL DEFENSES

17.     Defendants have not knowingly or intentionally waived any applicable affirmative defenses and reserve the right to assert and to rely upon such other defenses as may become available or apparent during further proceedings or discovery.

18.     Defendants reserves any and all additional defenses available under applicable rules, regulations, or laws related thereto, the Federal Rules of Civil Procedure, the Rules of this Court, and/or otherwise in law or equity, now existing, or later arising, as may be discovered.

MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 54

## COUNTERCLAIMS

For its counterclaims against Yuga, Counterclaim Plaintiffs Ryder Ripps and Jeremy Cahen (collectively and hereinafter, "Counterclaim Plaintiffs") allege as follows:

## NATURE OF THE CASE

1. This lawsuit involves Yuga's misconduct associated with its attempt to silence creators who used their craft to call out a multi-billion-dollar company built on racist and neo-Nazi dog whistles. Ryder Ripps and Jeremy Cahen used conceptual art to critique hateful imagery and fraud associated with the popular "Bored Ape Yacht Club" project—a commercially successful collection of "NFTs" sold by Yuga

2. Mr. Ripps and Mr. Cahen's artistic criticism is well -founded and directly connected to Yuga's trademarks. For example, Yuga's "BA YC logo" imitates the Nazi Totenkopf emblem for the Schutzstaffel (SS), which was the Nazi organization primarily responsible for the Holocaust. Below is a side-by-side comparison of the BAYC logo, the Nazi SS Totenkopf, and the satirical logo Mr. Ripps created to criticize Yuga:

  

Yuga quietly embedded its company's trademarks, artwork, and products with these coded "dog whistles," drawing from neo-Nazi culture and racist communities within forums like 4chan.org/pol/—while simultaneously racking up celebrity endorsements.

3. Mr. Ripps and Mr. Cahen brought attention to Yuga's conduct by creating a satirical conceptual art and performance project called the "Ryder Ripps

---

MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 55

Bored Ape Yacht Club," which included a collection of NFTs and associated online
commentary ("RR/BAYC" or the "RR/BAYC Project"). Though Yuga never acted
against any of the dozens of commercial "ape" NFT collections, it did engage in a
relentless and systematic campaign against Mr. Ripps and Mr. Cahen. This
Counterclaim Complaint asserts various causes of action associated with Yuga's
unlawful and immoral conduct aimed at abusing, bully, and harassing Mr. Ripps and
Mr. Cahen into silence regarding Yuga's fraud and its use of racist messages and
imagery.

## **PARTIES AND JURISDICTION**

4.      Ryder Ripps is an individual whose primary residence is in Acton,
California.

5.      Jeremy Cahen is an individual whose primary residence is in San Juan,
Puerto Rico.

6.      Yuga is a corporation duly organized and existing under the laws of the
State of Delaware.

7.      This is an action for various claims associated with Yuga's misconduct
directed against Mr. Ripps and Mr. Cahen. The claims against Yuga include causes of
action under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and declaratory judgment of
the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Thus, this Court has subject-
matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and
1338(a), in combination with 28 U.S.C. §§ 2201-2202. The Court also has
jurisdiction over Counterclaim Plaintiffs' state law claims under 28 U.S.C. §§ 1338(b)
and 1367. An actual controversy exists under the Copyright Act, the Declaratory
Judgment Act, and Counterclaim Plaintiffs' state law claims because those claims
arise from or are in relation to the RR/BAYC Project, which is the same event or
occurrence for which Yuga has asserted and is asserting various claims under the

Exhibit 3
Pg. 56

1  Lanham Act and California state law against Counterclaim Plaintiffs, and

2  Counterclaim Plaintiffs deny those assertions.

3      8.      Personal jurisdiction and venue in this District are proper because Yuga

4  sued the Counterclaim Plaintiffs in this Court

5                              **FACTUAL BACKGROUND**

6                        **Mr. Ripps Is A Recognized Artist**

7      9.      Mr. Ripps is a visual artist and creative director known for creating

8  artwork that comments on the boundaries between art, the internet, and commerce.

9  His work examines popular culture and sheds light on how individuals move through

10 our increasingly digitized world. The *New York Times* has recognized Mr. Ripps's

11 contribution to conceptual art, describing him as "An Artist of the Internet," and

12 *Forbes* listed Mr. Ripps in the 2016 class of 30 under 30: Art & Style.

13     10.     Many important exhibits have showcased Mr. Ripps's work. For

14 example, in 2015, Mr. Ripps had an exhibition at Postmasters Gallery in New York

15 City—a gallery well-known for representing artists at the cutting edge of technology.

16 Mr. Ripps reappropriated Instagram posts from the model Adrienne Ho and digitally

17 manipulated them with a liquefying photo editing tool. Postmasters described the

18 portraits as exposing how we "reflexively simulate reality online" and have

19 "authenticity manipulated by multiple filters and amplified by mass circulation." Mr.

20 Ripps was also recognized in 2015 as a "bold digital artist and entrepreneur" for

21 remaking the vast internet in miniature with an installation called *Alone Together*.

22     11.     In addition to creating fine art, Mr. Ripps has also led creative direction

23 and design projects for companies like Nike and Red Bull, developed branding for

24 products such as Soylent meal replacements, and has created art and executed creative

25 direction with many leading musicians such as Grimes, James Blake, MIA, Pop

26 Smoke, Pusha T, Tame Impala, and Travis Scott.

27

28

12.     Conceptual, performance, and appropriation art are among Mr. Ripps's most important and popular modes of artistic expression. In 2021, Mr. Ripps used performance and appropriation art to comment on the purpose and nature of NFTs ("non-fungible tokens").

13.     A purported utility of NFTs in art is verifiable provenance that makes it possible to distinguish original digital works from otherwise perfect duplicates. To demonstrate this notion, Mr. Ripps created his own NFT that linked to a high-resolution version of the image associated with another NFT (the "CryptoPunk #3100 NFT"). One element of this artwork was to comment on what it means to "own" an NFT—to control a digital token (data in a blockchain) but not the corresponding digital image and to establish that the power of NFTs is not the image (as all digital images by nature are copies) but in being able to establish an irrefutable indication of provenance and, correspondingly, context.

**Non-fungible Tokens ("NFTs")**

14.     An NFT is an entry on a decentralized digital ledger known as a "blockchain."

15.     NFTs are generated by code known as "smart contracts." Like the majority of NFTs, both the BAYC NFTs and RR/BAYC NFTs reside on the Ethereum blockchain and are based on the ERC-721 Non-Fungible Token Standard (https://ethereum.org/en/developers/docs/standards/tokens/erc-721/). When an ERC-721 smart contract generates (or "mints") an NFT, the smart contract assigns to the NFT a unique identification number or "tokenID" and associates an "owner" blockchain address through the "ownerOf" function to determine who controls the NFT. Any person or smart contract with access to the private key for the NFT's "owner" blockchain address has the power to control the NFT, and in that sense alone is its "owner."

16.     Each NFT is unique by design and cannot be copied.

17.     NFTs offer limited space in the blockchain for additional text, which is why terms relating to NFTs and NFT metadata are usually stored elsewhere, as they are with both the BAYC NFTs and RR/BAYC NFTs. This data is associated with these NFTs through a link or pointer known as a "tokenURI."

18.     In the case of both the BAYC NFTs and RR/BAYC NFTs, the NFT consists entirely of the tokenID, the generating smart contract, the tokenURI, and an associated owner blockchain address. Owner addresses and smart contract addresses both take the form of a zero followed by an "x" and then 40 hexadecimal digits, for example, 0xBC4CA0EdA7647A8aB7C2061c2E118A18a936f13D.

19.     The NFT's smart contract controls which elements of the NFT are immutable. For example, the smart contract for the BAYC NFTs allows its controller to change the tokenURI for each NFT using the "setBaseURI" function, meaning that the only immutable elements of a BAYC NFT are the smart contract itself and the NFT's tokenID. At some point, Yuga transferred control of the BAYC smart contract to the null address, effectively making further changes to BAYC NFT tokenURIs cryptographically impracticable.

20.     In the case of both the BAYC NFTs and RR/BAYC NFTs, the tokenURI points to a JSON file (for "JavaScript Object Notation") that stores what is known as the NFT's "metadata." For example, this is the JSON file for BAYC #364:

{"image": "ipfs://QmZrnxnqYwB6nW4PH3DZrQo4tXbaPRc6ZJkyoxTP4VHi32",
"attributes": [{"trait_type":"Earring","value":"Gold Stud"}, {"trait_type":
"Background", "value":"New Punk Blue"}, {"trait_type":"Eyes", "value":"Closed"},
{"trait_type":"Hat","value":"Sushi Chef Headband"}, {"trait_type": "Fur","value":
"Cheetah"}, {"trait_type": "Mouth","value": "Grin"}]}

Exhibit 3
Pg. 59

21.    Within the JSON file for each BAYC NFT and RR/BAYC NFT is an "image" identifier, of which the following is an example:

"image": "ipfs://QmZrnxnqYwB6nW4PH3DZrQo4tXbaPRc6ZJkyoxTP4VHi32"

22.    The link in the "image" identified points to a separate image associated with the NFT, which is not part of the NFT.

23.    The images that NFTs point to are usually publicly available and easily copied as they are with both BAYC NFTs and RR/BAYC NFTs. NFTs do not offer exclusivity to the linked content because they are simply entries in the blockchain.

**The BAYC NFT Series**

24.    Yuga sold a series of 10,000 NFTs known as the Bored Ape Yacht Club ("BAYC"). Each BAYC NFT is associated with an image of an anthropomorphized ape cartoon that includes certain traits that are programmatically assembled with a computer algorithm (each, a "BAYC Image").

25.    To produce the BAYC Images, Yuga created digital images of traits in the following categories: background, clothes, earring, eyes, fur, hat, and mouth. These categories contain a variety of possibilities, the number of which is shown in parentheses after each category as follows: background (8), clothes (43), earring (6), eyes (23), fur (19), hat (36), and mouth (33). Only traits from the following categories appear in all BAYC Images: background, eyes, fur, and mouth (the "Essential Categories"). Traits from the remaining categories (clothes, earring, and hat) were optional (the "Non-Essential Categories").

26.    Yuga used an automated computer algorithm to produce most if not all BAYC Images by assembling traits from each of the Essential Categories and either none, some, or all of the Non-Essential Categories. Using this process, a total of over 1.3 billion permutations were possible. No human was involved in determining which

Exhibit 3
Pg. 60

1   of the 10,000 BAYC Images were selected from among the more than 1.3 billion

2   possible permutations aside from designating how many BAYC Images would include

3   each trait.

4       27.    As Yuga states on its own website, "Each Bored Ape is unique and

5   programmatically generated from over 170 possible traits."

6       28.    When users purchased their BAYC NFTs from Yuga, they were

7   presented with the BAYC Terms & Conditions (https://boredapeyachtclub.com/#/term

8   s), which state that "Bored Ape Yacht Club is a collection of digital artworks (NFTs)

9   running on the Ethereum network…. You Own the NFT. Each Bored Ape is an NFT

10  on the Ethereum blockchain. When you purchase an NFT, you own the underlying

11  Bored Ape, the Art, completely." The BAYC Terms & Conditions also provide that

12  "at no point may we seize, freeze, or otherwise modify the ownership of any Bored

13  Ape."

14      29.    The BAYC Terms & Conditions operated as a written instrument signed

15  by Yuga for purposes of conveying copyright to BAYC NFT purchasers.

16      30.    Unlike a painting or other physical work of art, there is no corresponding

17  material object for the digital images associated with BAYC NFTs.

18      31.    Yuga retains no copyright in any BAYC Images associated with BAYC

19  NFTs it does not own.

20      32.    Yuga alleges in paragraph 73 of the Complaint that reasonable consumers

21  are likely to believe that "if they hold one of the RR/BAYC NFTs they will have

22  access to the authentic Bored Ape Yacht Club (they will not), that they own rights to

23  the underlying art."

24              **Yuga Is Systematically Embedded**

25              **With Racist Messages and Imagery**

26      33.    The BAYC collection, related promotional activities, and Yuga's

27  corporate designs are systematically embedded with dog whistles common among

28

Exhibit 3
Pg. 61

1   neo-Nazis, alt-right groups, and racist bulletins within websites like 4chan.org/pol/.

2   The presence of this symbolism is too prevalent to be a coincidence.

3       34.     Yuga's BAYC logo imitates the Nazi SS Totenkopf. The BAYC logo

4   replaces the human skull and bones with an ape skull and alters the text so that it

5   refers to the BAYC collection. Yuga copied all salient features of the Totenkopf in

6   the BAYC logo, including the stylization and orientation of the skull, rough edges

7   around the emblem, text and image layout, and color scheme. The BAYC logo even

8   copies the 18 teeth in the symbol's skull. The Anti-Defamation League has

9   recognized that "18 is a white supremacists alphanumeric code for Adolf Hitler"

10  (because A and H are the first the eighth letters in of the alphabet). After Mr. Ripps

11  and Mr. Cahen made public this fact, Yuga has made efforts to hide the 18th tooth in

12  its logo by altering its own pending trademark using the ape skull.

13      35.     The founders of Yuga also embedded a neo-Nazi dog whistle in the name

14  of their company itself. The word "Yuga" references the alt-right phrase "Surf the

15  Kali Yuga." Kali Yuga is the age of sin and conflict in Hinduism, and alt-right groups

16  use the phrase "Surf the Kali Yuga" as an esoteric way of saying enjoy sin and

17  embrace conflict. High profile neo-Nazis, including white supremacist Richard

18  Spencer, routinely discuss the "Kali Yuga" and admit that Yuga is explicitly "evoking

19  Nazi iconography." Yuga co-founder Wylie Aronow was aware of (and apparently

20  embraced) this neo-Nazi dog whistle as part of his public Twitter profile, which in

21  2020 listed "Kali Yuga" as his location. Aronow has further acknowledged that he is

22  thanked in the book *Thousands of Lies*, which "runs rampant with racism,

23  antisemitism, pedophilia, white supremacy, misogyny and rape fantasies," for being

24  "instrumental to epiphanies that shape it fundamentally."

25      36.     The "Surf the Kali Yuga" dog whistle is also often used by neo-Nazis

26  specifically in conjunction with parts of the Totenkopf, as shown in the neo-Nazi

shirt: 27

28





The Totenkopf's skull and bones depicted on the shirt is one of the most frequently appearing images on 4chan.org/pol/ bulletins discussing the Kali Yuga. In other words, the company name "Yuga" and the Bored Ape Yacht Club logo contain corresponding neo-Nazi dog whistles.

37.      The BAYC collection itself also contains obvious racist messaging and imagery. The BAYC Images display anthropomorphized apes in an act of simianization—disparaging ethnic or racial groups by depicting them as apes.

38.      Yuga's use of simianization has come under significant public scrutiny. Carla Hill, a senior researcher at the Anti-Defamation League's Center for Extremism, has criticized the BAYC's depiction of apes with hip-hop traits and apes wearing a kamikaze headband. Below are two BAYC Images that display these features:

**BAYC #3721**

**BAYC #6281**

The image on the left (BAYC #3721) depicts a gold jacket and gold chain, which

28

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 64

1   Yuga refers to as "Hip Hop" clothing, in reference to a popular musical genre and
2   lifestyle pioneered by African Americans. The image on the right (BAYC #6281)
3   depicts a kamikaze headband, which Yuga refers to as a "Sushi Chef Headband."

4       39.     The racist dog whistles that Yuga has embedded in BAYC and associated
5   projects are numerous. For example, Yuga has gone so far as to create metadata that
6   includes "Stone Hole Jackson" in reference to the confederate general Stonewall
7   Jackson. Yuga later changed the metadata to erase this offensive reference. More
8   examples can be seen in the YouTube video "*The Bored Ape Conspiracy (theory) - A
9   Cultural Disease*" (available at https://www.youtube.com/watch?v=tRPHZQFuT24).
10  But a key part of Mr. Ripps's work has been to document them, including at his
11  website https://gordongoner.com/.

12      40.     Yuga's use of racist messaging and imagery within BAYC has been
13  noted by prominent musicians Freddie Gibbs, Danny Brown and business leaders such
14  as Dame Dash and Tony Robinson.

15      41.     On information and belief, Yuga's systematic use of racist and neo-Nazi
16  messages and imagery was by deliberate design, and, by its co-founder's admission
17  not "just random." Greg Solano, Yuga's co-founder, stated in an interview that "[i]t's
18  like Wittgenstein's 'let the unutterable be conveyed unutterably,' or Hemingway's
19  iceberg theory. We knew all about what this world was, and why these apes are this
20  way. And that somebody else might get a little tingle on their neck looking at it,
21  thinking, 'Yeah, this is kind of different. ***This isn't just random***.'" *See* https://www.
22  coindesk.com/business/2021/09/01/the-bored-apes-founders-havent-yet-joined-the-
23  yacht-club/.

### Mr. Ripps and Mr. Cahen Created The
### RR/BAYC Protest Art To Criticize Yuga

26      42.     Mr. Ripps and Mr. Cahen created the RR/BAYC Project as a critique of
27  Yuga's use of racist and neo-Nazi dog whistles.

28

43.     The RR/BAYC Project is a collection of NFTs that point to the same online digital images as the BAYC collection but use verifiably unique entries on the blockchain (a different smart contract address and different tokenIDs).

44.     Mr. Ripps and Mr. Cahen's use of pointers to the same images is a form of "appropriation art" that serves several purposes: (1) to bring attention to Yuga's use of racist and neo-Nazi messages and imagery, (2) to expose Yuga's fraudulent activities including the use of unwitting celebrities and popular brands to disseminate offensive material, disguising its securities as digital art to unlawfully circumvent securities laws and regulations, and claiming to give intellectual property rights where none existed, (3) to create social pressure demanding that Yuga take responsibility for its actions, and (4) to educate the public about the technical nature and utility of NFTs.

45.     As early as November 2021, Mr. Ripps and Mr. Cahen began exposing Yuga's misconduct through his Twitter and Instagram profiles, podcasts, and cooperation with investigative journalists, and by creating the website https://gordongoner.com.

46.     Mr. Ripps and Mr. Cahen criticized Yuga's use of neo-Nazi and alt-right dog whistles, and also spoke about the celebrities whom Yuga had promoting its offensive material including Tom Brady, Kevin Hart, Jimmy Fallon, Shaquille O'Neal, Mark Cuban, Justin Bieber, Serena Williams, Paris Hilton, LaMelo Ball, Timbaland, Stephen Curry, Eminem, Madonna, Post Malone, Ben Simmons, Steve Aoki, Neymar Jr., Gwyneth Paltrow, Snoop Dog, and others.

47.     Mr. Ripps and Mr. Cahen created the RR/BAYC Project in connection with his efforts to expose Yuga's neo-Nazi and alt-right references. The project began organically, with Mr. Ripps receiving requests for RR/BAYC NFTs on Twitter from like-minded users critical of Yuga. Ripps Decl. ¶ 9. Later, Mr. Ripps posted on Twitter that he would create his satirical NFTs for anyone who requested one for the price of 0.1 Ethereum (currently roughly $120). He explained to his followers that

Exhibit 3
Pg. 66

"ryder ripps bayc vision is to create an army of educators" with respect to Yuga's connections to neo-Nazi and alt-right culture.

48.     The RR/BAYC NFTs quickly became popular, and Mr. Ripps and Mr. Cahen eventually set up the website https://rrbayc.com. The website ensured that collectors understood the satirical message of the project and that they were not purchasing a BAYC NFT. The front page of the website explained that "RR/BAYC uses satire and appropriation to protest and educate people regarding the Bored Ape Yacht Club and the framework of NFTs." Mr. Ripps further required each purchaser to adopt the following disclaimer:



As shown above, the disclaimer required purchasers to acknowledge that RR/BAYC NFTs are "a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary[.]"

49.     Each RR/BAYC NFT was hand-minted by the wallet of Mr. Ripps, and Mr. Ripps sold all RR/BAYC NFTs through only his personal Twitter account, Foundation, private sales, and the website https://rrbayc.com.

Exhibit 3
Pg. 67

1    50.    RR/BAYC NFTs were not sold through any primary channel of

2  commerce through which, at the time, BAYC NFTs were sold. However, many NFT

3  marketplaces like OpenSea aggregate all NFTs on the Ethereum blockchain.

4  RR/BAYC NFTs appeared on marketplaces such as OpenSea only for re-sale on the

5  secondary market.

6    51.    Confusion between RR/BAYC NFTs and BAYC NFTs was impossible

7  due to the project's request-to-mint process through Twitter, the reservation and

8  disclaimer process on https://rrbayc.com, and Foundation's exclusion of any Yuga

9  NFTs. Moreover, *ryder-ripps.eth is clearly shown as the creator of the RR/BAYC

10  NFTs (based on the tokens smart contract), which appears next to the token tracker

11  located at

https://etherscan.io/address/0x2EE6AF0dFf3A1CE3F7E3414C52c48fd 12

50d73691e: 13



14

15

16

17

18

19

20    52.    The entire RR/BAYC Project started on the Foundation marketplace,

21  where no Yuga assets exist, as Foundation does not support programmatically

22  generated NFTs (and associated images) like the BAYC NFT collection.

23    53.    No RR/BAYC buyer believed they were buying "fake" goods or that they

24  were buying a BAYC NFT.   To the contrary, NFT collectors were purchasing

25  RR/BAYC NFTs in protest of the BAYC collection as the RR/BAYC NFT was an

26  essential and inseparable part of the RR/BAYC expressive work as a whole.

27

28

1    54.    Mr. Ripps and Mr. Cahen also intended to open Ape Market as a market

2    for trading NFTs with reduced costs or fees. However, Ape Market was never

3    launched and it never offered any goods or services in commerce.

4    55.    Mr. Ripps and Mr. Cahen's criticism of Yuga has become well-known.

5    Even Yuga's Complaint discusses the criticism Mr. Ripps has made about Yuga,

6    alleging that Mr. Ripps has described RR/BAYC as "satire" (Compl. ¶ 5). Yuga also

7    concedes that Mr. Ripps has conducted "an interview with a popular meme page" to

8    discuss Yuga's use of racist dog whistles. Compl. ¶ 50. The Complaint further

9    acknowledges that Mr. Ripps's message has "reached a significant number of people

10   on social media." Compl. ¶ 51.

11   56.    The public protest against Yuga led to the #BURNBAYC movement

12   (spearheaded by the popular YouTuber Philion, but also covered by xQc, h3h3,

13   MoistCr1itkal, Vaush, Hasan Piker). Social media influencers and celebrity

14   YouTubers have been using the #BURNBAYC hashtag, which began trending the

15   same week the RR/BAYC collection sold out. The question of whether BAYC is

16   racist has become a "viral debate" and mainstream newspapers reported that

17   #BURNBAYC is a "public opinion storm" and "too large to ignore." As a result, Mr.

18   Ripps and Mr. Cahen's work is today described as being "pretty brilliant from an

19   artistic point of view."

20   **Yuga's Misconduct Aimed at Silencing**

21   **Mr. Ripps and Mr. Cahen's Protest Art**

22   57.    Yuga engaged in a campaign aimed at silencing Mr. Ripps and Mr.

23   Cahen's artistic expression and related criticism of Yuga's connections to neo-Nazi

24   and alt-right culture.

25   58.    When Mr. Ripps began to speak out about the BAYC collection, Yuga

26   agent Guy Oseary, called Mr. Ripps to make vague threats. Oseary stated that "I can

27   be a nice guy or I can be a not nice guy" and that he could make Mr. Ripps's life hard

28

Exhibit 3
Pg. 69

1  if he continued to call out Yuga. Oseary also offered to introduce Mr. Ripps to Kanye
2  West and added Mr. Ripps to a group text message with West's manager. The next
3  week Oseary left a voice memo thanking Mr. Ripps for remaining silent. But
4  Oseary's statements only galvanized Mr. Ripps to continue his criticism of Yuga and
5  eventually to create the RR/BAYC work.

6      59.     Oseary then contacted Mr. Ripps' client, Tame Impala, to pressure Tame
7  Impala to fire Mr. Ripps. Oseary's goal was to destroy the relationship between Mr.
8  Ripps and Tame Impala to retaliate and punish Mr. Ripps for speaking out against
9  Yuga's use of racist imagery and bullying behavior.

10     60.     Oseary also launched a campaign of intimidation against Mr. Cahen.
11 Although Oseary had the ability to directly speak with Mr. Cahen, he instead used his
12 contactedagent to contact Mr. Cahen's youngest sister on the pretense that he was
   trying to get
13 in touch with 13 Mr. Cahen. At the time, Mr. Cahen's youngerst sister nursing a
   newly-
14 born infant. Oseary's agent told Mr. Cahen's sister that Oseary was a billionaire and
15 that he would "come down hard" on Mr. Cahen if he continued to criticize Yuga's use
16 of racist messages and imagery.

17     61.     After Oseary contacted Mr. Cahen's sister via his agent, Mr. Cahen
18 reached out to Oseary on multiple occasions. Oseary never responded to Mr. Cahen,
19 confirming that Oseary never had any intention to actually speak with Mr. Cahen.

20     62.     On information and belief, Oseary chose to contact Mr. Cahen's sister as
21 a threatening tactic to communicate that Yuga can get to Mr. Cahen's family.

22     6163.  Yuga also repeatedly filed fraudulent DMCA takedown notices to
23 attempt to purge the internet of the RR/BAYC artworks. Both the RR/BAYC and the
24 BAYC collections are a series of roughly 10,000 NFTs. Each of these NFTs is an
25 entry on a decentralized digital ledger and entirely unique by design, making them
26 both non-fungible and impossible to copy. Yuga was aware of the nature of NFTs. In

28

fact, Yuga has defined in its own trademark applications that its goods are

1  "Downloadable image files containing artwork, memes, pictures, and trading cards

2  authenticated by non-fungible tokens (NFTs)." *See*, *e.g.*, U.S. Trademark App.

Ser. 233 No. 97/132,870.

4         6264.   Nevertheless, Yuga filed numerous DMCA takedown notices on online

5  NFT marketplaces such as Foundation and OpenSea to delist RR/BAYC NFTs.

6  Yuga's DMCA takedown notices were of two varieties. In some DMCA notices,

7  Yuga fraudulently alleged in these notices that RR/BAYC NFTs are copies of Yuga's

8  BAYC NFTS and therefore infringe Yuga's copyrights in BAYC NFTs. All the

Case 2:22-cv-04355-JFW-JEM Document 65 Filed 12/27/22 Page 45 of 55 Page ID #:1893

9  while, Yuga knew that it was impossible to copy an NFT and that RR/BAYC NFTs do

10  not actually infringe any copyright owned by Yuga. Yuga also knew that it did not

11  own any copyright in the associated BAYC Images and that its DMCA notices were

12  fraudulent as it rescinded some of the notices sent to Foundation. *See* https://i.imgur.

13  com/sACpGCp.gif.

14         65.    For example, on or about May 17, 2022, Appdetex, which was acting on

15  Yuga's behalf, submitted a DMCA takedown notice to Foundation.app. In that notice,

16  Yuga accused the RR/BAYC artworks as content that "uses copyrighted materials …

17  produced by Yuga Labs without authorization."

18         66.    Yuga also filed fraudulent DMCA takedown notices through its agent

19  Appdetex by co-opting the DMCA takedown process and making attestations under

20  §512(f) of the Copyright Act to assert that the RR/BAYC project used Yuga's

21  trademarks. For example, on or about June 22, 2022, Appdetex sent a DMCA notice

22  to Foundation.app in which it accused the RR/BAYC project of infringing Yuga's

23  trademarks while at the same time acknowledging that the takedown was being made

24  under the Copyright Act and attesting at "the Infringing Content in the manner

25  described above is not authorized by the copyright owner, Yuga Labs, or its agents,

27

28

---

Case No. 2:22-cv-4355-JFW-JEM       50       MR. RIPPS AND MR. CAHEN'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Exhibit 3 Pg. 72

26    nor is such permitted by law." Annatox further attested that "[a]s applicable under

Exhibit 3
Pg. 73

17 U.S.C. 512(f), we acknowledge that we may be subject to liability for damages if we knowingly materially misrepresent that material or activity is infringing."

67.     On June 22, 2022, Yuga also used its agent, Appdetex, to fraudulently co-opt the DMCA process to take down the webpage rrbayc.com, which was the website that sold the RR/BAYC artwork. The June 22 notice was titled "Yuga Labs, Inc. Notice under DMCA/rrbayc.com" and sent to namecheap.com. Yuga attested in the notice that it was making the DMCA notice under the Copyright Act by acknowledging that "the Infringing Content in the manner described above is not authorized by the copyright owner, Yuga Labs, or its agents, nor is such use permitted by law." Yuga further attested that "As applicable under 17 U.S.C. 512(f), we acknowledge that we may be subject to liability for damages if we knowingly materially misrepresent that material or activity is infringing." Despite all this, Yuga did not assert that "rrbayc.com" was infringing Yuga's copyright but instead alleged trademark infringement.

68.     On or about June 22, 2022, Yuga also sent a fraudulent DMCA takedown notice to X2Y2. On information and belief, this was another takedown notice that improperly asserted trademark infringement under the Copyright Act (with a 512(f) attestation) and its corresponding DMCA process.

69.     On June 28, 2022, Yuga once again used its agent, Appdetex, to fraudulently co-opt the DMCA process to take down the webpage rrbayc.com, which was the website that sold the RR/BAYC artwork. The June 22 notice was titled "Yuga Labs, Inc. Notice under DMCA/rrbayc.com." Appdetex further attested in the notice that it was making the DMCA notice under the Copyright Act by acknowledging, "As applicable under 17 U.S.C. 512(f), we acknowledge that we may be subject to liability for damages if we knowingly materially misrepresent that material or activity is infringing." Despite all this, Yuga did not assert that

1 "rrbayc.com" was infringing Yuga's copyright but instead alleged trademark
2 infringement.

3      63 70.   Yuga continued its abuse of Mr. Ripps and Mr. Cahen when trying to

4 shift the attention away from Yuga's racist messages and imagery. Yuga, both

5 directly and through various third parties, systematically contacted the media and

6 individuals with public speaking platforms, including at least four journalists, in an

7 effort to falsely portray Mr. Ripps and Mr. Cahen as scammers and liars. Yuga's

8 activities included making false accusations aimed at casting Mr. Ripps and Cahen as

9 being racist and criminal. Yuga unlawfully attacked Mr. Ripps and Mr. Cahen's

10 reputation by falsely accusing Mr. Ripps and Mr. Cahen of regularly and routinely

11 using the n-word, engaging in blackmail, and even exploiting sex workers. Yuga,

12 having extensively investigated Mr. Ripps and Mr. Cahen, made these accusations

13 despite knowing that they were not true or very unlikely to be true. On information

14 and belief, Yuga made these accusations to try to silence or deter criticism regarding

15 Yuga's fraud and use of racist messages and imagery by intentionally harming Mr.

16 Ripps and Mr. Cahen's reputation as well as their personal well-being.

17      64 71.   On August 18, 2022, Yuga sent two of its co-founders, Greg Solano and

18 Wylie Aronow, for a public interview to continue attacking Mr. Ripps and Mr. Cahen.

19 Solano and Aronow appeared on the Full Send Podcast, which purports to be the

20 biggest podcast on the internet with the largest number of views. The co-founders

21 used the platform as an opportunity to falsely represent that Mr. Ripps and Mr. Cahen

22 are scammers and liars.

23      65 72.   On the Full Send Podcast, Solano falsely stated that Mr. Ripps and Mr.

24 Cahen created the "knock-off" CryptoPhunks NFTs and further described Mr. Ripps

25 and Mr. Cahen as spreading a "conspiracy theory" regarding Yuga's racist messages

26 and imagery. Mr. Aronow then stated that Mr. Ripps and Mr. Cahen "could turn this

27 can into like seven degrees of Hitler," "the guy is a grifter," "he's a scammer," and

28

1  "he's like the Alex Jones of NFTs." On information and belief, Yuga co-founders

2  made these statements knowing that Mr. Ripps and Mr. Cahen are creators and not

3  engaging in a scam. Solano and Aronow also falsely stated that Mr. Ripps and Mr.

4  Cahen are liars spreading a conspiracy theory about Yuga's use of racist messages and

5  imagery, while also being well aware that Yuga does in fact use racist messages and

6  imagery.

7  66~~73~~.   Solano and Aronow's interview on the Full Send Podcast had more than

8  1.7 million viewers, evidencing the scale of damage Yuga's false statements made to

9  Mr. Ripps and Mr. Cahen's reputation and personal well-being.

10  67~~74~~.   Yuga also deployed its Community and Partnerships Lead, Ray Illya

11  Fraser, to silence Mr. Ripps and Mr. Cahen. Through his Twitter account,

12  @illaDaProducer, which has over thirty-five thousand followers, Fraser has

13  repeatedly harassed Mr. Ripps and Mr. Cahen. Fraser's tirade of tweets and

14  comments includes spreading the lie that Mr. Cahen owns and operates the ENS

15  (Ethereum Name Service) domain n*gger.eth [redacted].[1]  Mr. Cahen publicly

16  expressed on numerous occasions to Fraser and the public that he has no association

17  with the Ethereum address. *See* https://twitter.com/pauly0x/status/1569823198681907200?s=46&t=af99mHLlr1bCzmISRCMkqQ. In fact, the origin of the n*gger.eth

18  

19  [redacted] ENS domain is publicly available. The original creator of the address is or

20  has been an owner of Yuga Assets, and its current owner holds Yuga partner Full

21  Send assets. But Fraser continued to falsely state that Mr. Cahen operates the address.

~~25~~

~~26~~

~~27~~

Case 2:22-cv-04355-JFW-JEM Document 65 Filed 12/27/22 Page 47 of 55 Page ID #:1895

22  68~~75~~.   Fraser's activities were a pattern of conduct aimed at making insulting

---

[1] The name of the ENS domain that Fraser referred to is censored in this filing.

Exhibit 3
Pg. 76

23    statements to emotionally harass Mr. Cahen and Mr. Ripps, threatening physical

24    violence to intimidate Mr. Ripps and Mr. Cahen, and lying about Mr. Cahen's

25    ownership of n*gger.eth [redacted] ENS domain to wrongly portray him as a

racist. 26

27

28

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 77

1    Fraser's activities were motivated by Yuga's goal of diverting attention away from
2    and concealing criticism regarding its fraud and use of racist messages and imagery.

3        ~~69~~76.  On October 20, 2022, Yuga's Brand Lead, Noah Davis, participated in
4    Yuga's pattern of harassing and intimidating Mr. Ripps and Mr. Cahen. Davis called
5    and texted the 72-year-old father of Mr. Ripps, Rodney Ripps. During Davis' call
6    with Rodney Ripps, Davis said, "You and your fucked up son are going to die," and
7    "You guys are fucking pieces of shit." Rodney Ripps, for his safety and the safety of
8    his son, filed a police report. Rodney Ripps was living in fear as he resides only a ten-
9    minute walk away from Davis.

14   ~~70.      Yuga also filed this lawsuit against Mr. Ripps and Mr. Cahen to escalate~~
15   ~~its harassment of Mr. Ripps and Mr. Cahen. Yuga, which has suffered absolutely no~~
16   ~~financial harm due to the satirical RR/BAYC conceptual and performance art project,~~
17   ~~is spending disproportionately large resources to litigate trademark infringement~~
18   ~~claims. But Yuga has not identified a single instance of actual confusion or~~
19   ~~articulated how the lawsuit would advance Yuga's business interest. Instead, Yuga~~
20   ~~filed its suit simply to impose financial and emotional costs onto Mr. Ripps and Mr.~~
21   ~~Cahen for creating the RR/BAYC protest art.~~

22   ~~71.      Yuga's ulterior motive for filing suit is confirmed by the countless NFT~~
23   ~~projects that use BAYC marks that Yuga has ignored simply because they do not raise~~
24   ~~any critical commentary. For example, there are dozens of entities that create NFTs~~
25   ~~associated with BAYC marks and BAYC Images that make no artistic or critical~~
26   ~~commentary and over thirty-five NFT collections that duplicate the BAYC Images—~~
27   ~~some of which have generated millions of dollars. Tellingly, Yuga has not sued any~~

~~Case 2:22-cv-04355-JFW-JEM Document 65 Filed 12/27/22 Page 48 of 55 Page ID #:1896~~

28

Case No. 2:22-cv-4355-JFW-JEM        56        MR. RIPPS AND MR. CAHEN'S ANSWER,
                                              DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 78

of those entities that are intentionally exploiting Yuga's purported goodwill. Instead, Yuga has sued only Mr. Ripps and Mr. Cahen for their successful protest and criticism of Yuga's fraud and systematic use of racist and neo-Nazi messages and imagery.

472. Yuga's ulterior motive for filing this suit is further confirmed by its public tweet announcing that one of the goals of the suit is to "fight these slanderous claims." *See* https://twitter.com/yugalabs/status/1540509851641692160.

73 77. Yuga engaged in a pattern of misconduct aimed at silencing Mr. Ripps and Mr. Cahen with deliberateness, malice, oppression, in bad faith, and in order to conceal its use of racist and neo-Nazi messages and imagery.

**FIRST COUNT**

**Knowing Misrepresentation of Infringing Activity**

74 78. Counterclaim Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein, and further allege:

75 79. Yuga knowingly and materially misrepresented, in violation of 17 U.S.C. § 512(f), that the RR/BAYC NFTs and sales pages associated with RR/BAYC NFTs infringe a Yuga copyright by filing DMCA takedown notices to remove from various websites the RR/BAYC artworks.

76 80. Yuga knew that it was impossible to copy an NFT and that RR/BAYC NFTs do not actually infringe any of Yuga's copyright. Nevertheless, Yuga falsely alleged in multiple DMCA takedown notices that RR/BAYC NFTs are copies of Yuga's BAYC NFTs and therefore infringe one or more of Yuga's copyrights in BAYC NFTs. Yuga also unlawfully co-opted the DMCA process to allege trademark infringement while simultaneously making attestations that the accusations were made 27

1    in good faith under the Copyright Act. These takedown notices occurred on at

least 2                        May 17, 2022, June 22, 2022, and June 28, 2022.

3          ~~77~~81.   Yuga's misrepresentations harmed Mr. Ripps and Mr. Cahen by

4   silencing their artistic expression associated with RR/BAYC NFTs, loss of time

5   associated with dealing with Yuga's fraudulent DMCA takedown notices, personal

6   harm including harm to reputation, expenses associated with responding to fraudulent

7   DMCA takedown notices, financial damages including any financial harm to the

8   RR/BAYC collection. On information and belief, Yuga was aware that its DMCA

9   notices were fraudulent, as evidenced by its rescinding certain notices sent to

10   Foundation.

11                      **SECOND COUNT**

12     **Declaratory Judgment of No Copyright under 17 U.S.C. § 102(a)**

13          ~~78~~82.   Counterclaim Plaintiffs incorporate by reference all preceding allegations

14   as though fully set forth herein, and further allege:

15          ~~79~~83.   Based on Yuga's allegations in the Complaint (paragraphs 2, 12, 33, 44,

16   72, 73, and 166) and Counterclaim Plaintiffs' allegations in its counterclaims, an

17   actual case or controversy arising under the Copyright Act, 17 USC §§ 101 *et seq.*,

18   exists between Counterclaim Plaintiffs and Yuga as to whether the BAYC Images are

19   entitled to copyright protection due to the BAYC Images having been generated by an

20   automated computer algorithm where no humans were involved in determining which

21   of the 10,000 BAYC Images were selected from the more than 1.3 billion possible

22   permutations (except perhaps with respect to a few custom BAYC Images that Yuga

~~16~~23       may have produced with human involvement) the adjudication of which requires the

24   Court to apply and interpret the copyright ownership provisions of 17 U.S.C. § 102(a).

28

Exhibit 3
Pg. 80

25   Counterclaim Plaintiffs are suffering an ongoing injury in the form of

26   being unable to market the RR/BAYC NFTs based on Yuga's allegation that they

27   have copied the BAYC Images without Yuga's authorization.

28

Exhibit 3
Pg. 81

8185.  Counterclaim Plaintiffs are entitled to a declaration that there are no copyrights in the BAYC Images to the extent that they were not created by a human, as well as any necessary and proper relief based on that decree pursuant to 28 U.S.C. 244   § 2202.

25

26

27

Case 2:22-cv-04355-JFW-JEM Document 65 Filed 12/27/22 Page 50 of 55 Page ID #:1898

### THIRD COUNT

### Declaratory Judgment of No Copyright under 17 U.S.C. § 204(a)

8286.  Counterclaim Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein, and further allege:

8387.  Based on Yuga's allegations in the Complaint (paragraphs 2, 12, 33, 44, 72, 73, and 166) and Counterclaim Plaintiffs' allegations in its counterclaims, an actual case or controversy arising under the Copyright Act, 17 USC §§ 101 *et seq.*, exists between Counterclaim Plaintiffs and Yuga as to whether Yuga retains copyrights in BAYC Images associated with BAYC NFTs it does not own, including based on its BAYC Terms & Conditions and public statements that BAYC NFT holders retain all intellectual property rights in their NFTs, the adjudication of which requires the Court to apply and interpret the copyright ownership provisions of 17 1317 17U.S.C. § 204(a).

8488.  Counterclaim Plaintiffs are suffering an ongoing injury in the form of being unable to market the RR/BAYC NFTs based on Yuga's allegation that they have copied the BAYC Images without Yuga's authorization and Yuga's activities aimed at enforced copyrights in the BAYC Images.

8589.  Counterclaim Plaintiffs are entitled to a declaration that, to the extent copyright may exist in any BAYC Image, Yuga owns no such copyright except in

Exhibit 3
Pg. 82

24   BAYC Images associated with BAYC NFTs that Yuga owns, as well as any necessary

25   and proper relief based on that decree pursuant to 28 U.S.C. §

2202. 26

27

**FOURTH COUNT**

**Intentional Infliction of Emotional Distress**

~~86~~90.  Counterclaim Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein, and further allege:

~~87~~91.  Yuga has engaged in an outrageous retaliatory campaign against Mr. Ripps and Mr. Cahen. Yuga's campaign involved lying about Mr. Ripps and Mr.

~~Case 2:22-cv-04355-JFW-JEM Document 65 Filed 12/27/22 Page 51 of 55 Page ID #:1899~~

Cahen on digital media platforms and to the media, and has involved Yuga's employees intimidating and threatening Mr. Ripps, Mr. Cahen, and their families. Yuga's retaliatory campaign falls outside of the bounds of decency.

~~88~~92.  Yuga <u>year-long</u> pattern of harassing behavior against Mr. Ripps and Mr. Cahen

~~5~~~~over several months~~ and Yuga's motivation to conceal its own fraud and use of racist~~6~~ messages and

imagery confirm that Yuga's efforts to harass, bully, and silence Mr.~~7~~ Ripps and Mr. Cahen were intentional and/or committed with reckless disregard for~~8~~ the high probability that they would cause Mr. Ripps and Mr. Cahen to suffer severe~~9~~ emotional

distress as a result.

~~89~~93.  Mr. Ripps and Mr. Cahen suffered severe emotional distress because of Yuga's intimidation campaign. Yuga~~'s~~ <u>has been systematically targeting Mr. Ripps and</u>

<u>Mr. Cahen including by spreading</u> lies regarding Counterclaim Plaintiffs' beliefs~~12~~ and

behaviors ~~impacted~~, <u>threatening</u> their ~~careers, which created significant stress for them.~~

~~13~~~~Yuga's threats to their~~ safety~~,~~ and the safety of their families, ~~made them deeply~~<u>attacking their</u>

~~fearful, anxious~~<u>livelihood</u>, and ~~restless. Yuga has directly caused~~<u>making death threats.</u>

Exhibit 3
Pg. 84

21  As a result, Mr. Ripps and Mr. Cahen ~~to~~have been ~~experience severe stress and~~in a pro~~longe~~d state of profound fear and crippling anxiety, which has in turn ~~has~~ caused ~~other~~

22  devastating mental and~~16~~ emotional issues. ~~Mr. Ripps and Mr. Cahen were further harmed by Yuga's campaign~~Counterclaim Plaintiffs struggle to perform

23  routine activities such as sleeping and maintaining social relationships and are living

24  on the day-to-day basis without knowing how Yuga's next threat or harassment is

25  ~~to harass and intimidate them. They~~ going to impact their lives and their families. Counterclaim Plaintiffs have thus

26  suffered damages to their ~~emotional well-being~~

~~18and their~~ mental health~~.~~, causing them into a state of chronic

27  depression and stress. Mr. Ripps even purchased a firearm for the first time in his life

28

1  to protect himself against Yuga's threatening behavior. Counterclaim Plaintiffs'
2  suffering, depression, anxiety, and fear has been going on for longer than a year due to
3  Yuga's persistent threatening and harassing behavior.

4      90 94.   Yuga's blatant harassment, intimidation, bullying, and silencing of Mr.
5  Ripps and Mr. Cahen was committed with oppression and malice, warranting an
6  award of punitive damages.

7      95.      Mr. Ripps and Mr. Cahen's claim for intentional infliction of emotional
8  distress is not based on communications or speech made in course of this legal
9  proceeding.

10              **FIFTH COUNT**

11        **Negligent Infliction of Emotional Distress**

12      91 96.   Counterclaim Plaintiffs incorporate by reference all preceding allegations
13  as though fully set forth herein, and further allege:

14      92 97.   Yuga has engaged in a retaliatory campaign against Mr. Ripps and Mr.
15  Cahen. Yuga's campaign involved lying about Mr. Ripps and Mr. Cahen on media

Case 2:22-cv-04355-JFW-JEM Document 65 Filed 12/27/22 Page 52 of 55 Page ID #:1900

16  digital platforms and to the media, and has involved Yuga's employees intimidating
17  and threatening Mr. Ripps, Mr. Cahen, and their families.

18      93 98.   Yuga had a duty to refrain from engaging in unlawful and harassing
19  activities aimed at retaliating against Mr. Ripps and Mr. Cahen's speech activity.

20      94 99.   Yuga's year-long pattern of harassing behavior against Mr. Ripps and
21  Mr. Cahen
6  over several months and Yuga's motivation to conceal its own racist messages and 7
   imagery
22  confirm that Yuga's efforts to harass, bully, and silence Mr. Ripps and Mr. 8 Cahen
23  were made with negligent disregard to the high probability that they would 9 cause Mr.
24  Ripps and Mr. Cahen to suffer severe emotional distress as a result.

28

25   95.00 Mr. Ripps and Mr. Cahen suffered severe emotional distress ~~as a result~~ because of

26   Yuga's intimidation campaign. Yuga~~'s~~ has been systematically targeting Mr. Ripps and

27   Mr. Cahen including by spreading lies regarding ~~their~~ Counterclaim Plaintiffs' beliefs and ~~behaviors~~

~~12~~ ~~impacted their careers, which created significant stress for them. Yuga's threats to~~ ~~13~~

1 behaviors, threatening their safety, and the safety of their families, made them deeply fearful, anxiousattacking their

2 livelihood, and

14 restless. Yuga has directly caused making death threats. As a result, Mr. Ripps and Mr. Cahen to experience severehave been

3 stress andin a prolonged state of profound fear and crippling anxiety, which has in turn has caused other

4 devastating mental and emotional issues. Counterclaim Plaintiffs struggle to perform

5 routine activities such as sleeping and maintaining social relationships and are living

6 on the day-to-day basis without knowing how Yuga's next threat or harassment is

7 going to impact their lives and their families. Counterclaim Plaintiffs have thus

8 suffered damages to their mental health, causing them into a state of chronic

9 depression and stress. Mr. Ripps even purchased a firearm for the first time in his life

10 to protect himself against Yuga's threatening behavior. Counterclaim Plaintiffs'

11 suffering, depression, anxiety, and fear has been going on for longer than a year due to

12 Yuga's persistent threatening and harassing behavior.

13        96101. Counterclaim Plaintiff also suffered from Yuga's negligent conduct in

14 the form of loss of time and expenses associated with their emotional distress and

15 responding to Yuga's negligent conduct.

19 SIXTH COUNT

20 Declaratory Judgment of No Defamation

21 97.        Counterclaim Plaintiffs incorporate by reference all preceding allegations

22 as though fully set forth herein, and further allege:

23 98.        Yuga has falsely stated that Mr. Ripps and Mr. Cahen, including through

24 the RR/BAYC artwork, falsely criticize Yuga for using racist and neo-Nazi messages

25 and imagery. Yuga's appearance on the Full Send Podcast, where Solano and

26 Aronow described Mr. Ripps and Mr. Cahen as scammers and accused them of

27 spreading a "conspiracy theory" is one of such examples.

28

16 ~~99~~102. Mr. Ripps and Mr. Cahen ~~did not engage in any defamatory conduct in~~ ~~connection with the RR/BAYC Project's criticism of Yuga~~'s claim for ~~using racist messages~~

~~and imagery.~~

~~100.   The RR/BAYC Project's criticism of Yuga is true and accurate. Mr.~~ ~~Ripps and Mr. Cahen, as well as many others, conducted extensive research into Yuga~~ ~~and found many instances where Yuga embedded racist and neo-Nazi dog whistles in~~ ~~its goods, services, and brand. The scale and quantity of Yuga's use of racist~~ ~~messages and imagery leaves no doubt that Yuga is intentionally embedding itself~~ ~~with racist and neo-Nazi dog whistles.~~

~~101.   Yuga's use of racist messaging and imagery within BAYC has been~~ ~~noted by prominent musicians Freddie Gibbs, Danny Brown and business leaders such~~ ~~as Dame Dash and Tony Robinson.~~

~~102.   Counterclaim Plaintiffs are entitled to a declaration that their statements~~ ~~about Yuga are not and have not been defamatory, as well as any necessary and proper~~ ~~relief based on that decree pursuant to 28 U.S.C. § 2202~~negligent inflication of emotional distress is in not based on communications or speech made in course of this legal proceeding.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Defendants and Counterclaim Plaintiffs Mr. Ripps and Mr. Cahen demand a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiffs respectfully requests entry of judgment in their favor and against Yuga as follows:

a. Dismissing Yuga's Complaint in its entirety, with prejudice; 27

1         b. Declaring that Yuga knowingly misrepresented that the RR/BAYC artwork

2         infringes Yuga's copyrights.

3         c. Declaring that the BAYC Images are not entitled to copyright protection

4         because they were not created by a human.

Case 2:22-cv-04355-JFW-JEM Document 65 Filed 12/27/22 Page 54 of 55 Page ID #:1902

5         d. Declaring that, to the extent copyright may exist in any BAYC Image, Yuga

6         owns no such copyright except in BAYC Images associated with BAYC NFTs

7         that Yuga owns.

8         e. Declaring that Yuga's has intentionally and maliciously inflected severe

9         emotional distress onto Mr. Ripps and Mr. Cahen.

10         f. Declaring that Yuga has intentionally and maliciously defamed Mr. Ripps.

11         g. Awarding Counterclaim Plaintiffs any necessary and proper relief based on

12         that decree pursuant to 28 U.S.C. § 2202.

13         h. Awarding Counterclaim Plaintiffs actual damages for their loss time,

14         emotional distress, financial loss, and diminution in value for the RR/BAYC

15         artwork.

16         i. Awarding Counterclaim Plaintiffs punitive damages for Yuga's deliberate and

17         malicious conduct.

18         j. Awarding Counterclaim Plaintiffs their costs, expenses, and reasonable

19         attorneys' fees; and

20         k. Granting Counterclaim Plaintiffs such other and further relief as this Court

17/21         may deem just and proper in the

circumstances. 18/22

19
23

24   Dated: December 27February 6, 20222023                 By: /s/
     *Louis W. Tompros*
     _____

25                        Louis W. Tompros (*pro hac vice*)
28

Exhibit 3
Pg. 90

louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 91

1

2

26 3

27

4

Case 2:22-cv-04355-JFW-JEM Document 65 Filed 12/27/22 Page 55 of 55 Page ID #:1903

5

6

7

8

5 9

6 10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

28

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)

derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

---

Case No. 2:22-cv-4355-JFW-JEM     70

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 92

22

23

24

25

26

27

28

MR. RIPPS AND MR. CAHEN'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

Exhibit 3
Pg. 93

Document comparison by Workshare Compare on Thursday, February 9, 2023 7:46:48 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\jparsons\OneDrive - Fenwick & West\Desktop\V-12022 12 27 65_0 ANSWER and Counterclaim to Complaint.pdf |
| Description | V-12022 12 27 65_0 ANSWER and Counterclaim to Complaint |
| Document 2 ID | file://C:\Users\jparsons\OneDrive - Fenwick & West\Desktop\V-22023 02 06 96-2 Ex 1 to Tompros Dec (Proposed Am Answer  Counterclaims).pdf |
| Description | V-22023 02 06 96-2 Ex 1 to Tompros Dec (Proposed Am Answer  Counterclaims) |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 490 |
| Deletions | 435 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |

**Exhibit 3**
Pg. 94

| Format changes | 0 |
|---|---|
| Total changes | 925 |

Exhibit 3
Pg. 95