1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

13
14 Yuga Labs, Inc.,
15            Plaintiff and Counterclaim Defendant,
16    v.
17 Ryder Ripps, Jeremy Cahen,
18            Defendants and Counterclaim Plaintiffs.
19
20
21

Case No. 2:22-cv-04355-JFW-JEM

**[PROPOSED] STATEMENT OF DECISION DENYING YUGA LABS, INC.'S ANTI-SLAPP MOTION TO STRIKE AND MOTION TO DISMISS**

Hearing Date: February 27, 2023
Time: 1:30 p.m.,
Courtroom: 7A
Judge: Hon. John F. Walter

22
23
24
25
26
27
28

The Court has received a motion (Dkt. No. 89) from Counter-Defendants Yuga Labs, Inc. seeking to dismiss Counter-Plaintiffs Jeremy Cahen and Ryder Ripps's counter-complaint causes of action for federal declaratory judgment claim of no copyright, and Section 512(f) claim for filing a fraudulent takedown notice for failure to state a claim and to strike Counter Plaintiffs' state law claims under California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. Counter-Plaintiffs filed a response (Dkt. 96) arguing that Yuga's motion should be denied. Yuga filed a reply (Dkt. 97). Both parties seek attorney's fees.

For the following reasons, the Court DENIES Yuga's motion to strike and motion to dismiss. The Court also GRANTS Counter-Plaintiffs attorney's fees.

## I.  Factual and Procedural Background

### A.  The Counter-Complaint

On December 27, 2022, Counter-Plaintiffs filed an answer and counter-complaint (Dkt. 65) alleging six causes of action against Counter-Defendants. Specifically, Counter-Plaintiffs asserted two federal counts of declaratory judgment of no copyright, one federal count of intentional misrepresentation of infringing activity pursuant to Section 512(f) of the DMCA, one state law tort claim of intentional infliction of emotional distress, one state law tort claim of negligent infliction of emotional distress, and one claim for declaratory judgment of no defamation.[1]

---

[1] Counter-Plaintiffs voluntarily dismissed their claim for declaratory judgment of no defamation following Yuga's statement in its motion to dismiss that it "has not brought a defamation claim." (Dkt. 93 at 21). Counter-Plaintiffs acknowledged that there was a split in authority concerning the viability of the claim. Yuga has not cited any case in which such a claim was rejected; likewise, Counter-Plaintiffs have cited no case in which such a claim proceeded to trial. Given the absence of clear authority, Counter-Plaintiffs' withdrawal of the claim was appropriate. Yuga seeks attorneys' fees notwithstanding this voluntary dismissal. Allowing Yuga attorneys' fees for this voluntary dismissal would punish Counter-Plaintiffs for simplifying the case, and for taking the exact same action Yuga took earlier in this litigation when it voluntarily withdrew its unsupported claim for "Unjust Enrichment." (*See* Dkt. 53 at 24.) Accordingly, Yuga's request for attorneys' fees is denied.

The Counter-Complaint alleges that Yuga engaged on a concerted campaign to punish Counter-Plaintiffs and their families for talking about alleged racism associated with Yuga and its products. (Dkt. 65). Specifically, the Counter-Complaint alleges that Counter-Plaintiffs embarked on a public campaign to call out Yuga (Dkt. 65 ¶¶ 39-44), and, in response, Yuga threatened Counter-Plaintiffs and their families through death threats and rewards for silence (Dkt. 65 ¶¶ 58-60, 69). Counter-Plaintiffs also allege that Yuga improperly used the Digital Millennium Copyright Act in an attempt to take Counter-Plaintiffs' NFT collection off of the internet. (Dkt. 65 ¶¶ 61-62). In at least one example, Counter-Plaintiffs show that Yuga was successful in doing so. *Id.*

### B. Yuga's Motion to Dismiss and Motion to Strike

Yuga filed its Motion to Dismiss and Motion to Strike on January 18, 2023, 22 days after the Counter-Complaint was filed. Generally, parties have 21 days to file a response to an answer or counter-complaint. Fed. R. Civ. P. 12(a)(1)(B). Yuga was alerted of its untimeliness by counsel for Counter-Plaintiffs. (Dkt. 96-2.) Yuga never filed a motion for an extension of time or otherwise seek this Court's permission to file its motion out of time.

## II. LEGAL STANDARDS

### A. Timeliness

"A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim." Fed. R. Civ. P. 12(a)(1)(B). "When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1).

### B. Failure to State a Claim

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co.*, Inc., 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

### C.   Motion To Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The California Anti-SLAPP statute explains that Rule 12(f) can "allow for early dismissal of meritless First Amendment cases aimed at chilling expression through costly, time-consuming litigation."  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (internal brackets omitted).  Courts grant anti-SLAPP motions to strike at the pleadings stage when (1) the defendant shows that "an act in furtherance of protected expression is being challenged" and (2) the plaintiff fails to demonstrate that "the complaint is legally sufficient." *Planned Parenthood Fed'n of America, Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).

### III.  DISCUSSION

Yuga's response to the Counter-Complaint is untimely, and therefore must be DENIED in full.  Even if the Court were to consider Yuga's motion, it would reject it

on the merits. Further, because Yuga's anti-SLAPP motion is frivolous, the Court GRANTS reasonable attorney's fees to Counter-Defendants.

### A. Yuga's Motion is Untimely

Mr. Ripps and Mr. Cahen filed their counterclaims on December 27, 2022. *See* (Dkt. No. 65). Pursuant to Rule 12(a)(1)(B) Yuga had 21 days to file its response. Yuga filed its response on January 18, 2023, 22 days after the counterclaims were served. Yuga's motion was untimely under Federal Rule of Civil Procedure 12(a)(1)(B). Yuga did not seek, nor did this Court grant, leave to file a motion or answer out of time.

Yuga argues in its reply brief that it believed its ineffective January 16, 2023 filing would be accepted by the Court. (Dkt. 97 at 12). After that filing was rejected, Yuga determined unilaterally that it could refile on January 18, 2023. Yuga did so, without filing anything with the Court asking for an extension, answering Counter-Plaintiffs' request for an explanation for its untimeliness, or asking the Court how it ought to proceed.

Yuga instead argues that its "[u]nderstanding" of the Court's order striking its motion for insufficient time was actually an order permitting Yuga to re-file its motion on a new date. (Dkt. 97 at 12.) Yuga further complains that the Court placed it in a "Catch-22 situation." *Id.* But the "Catch-22" was of Yuga's own making: instead of filing its motion on Martin Luther King Day, it could have filed its motion on Friday, January 13th, and noticed its preferred February 13, 2023 hearing date. Or it could have filed a motion seeking leave of Court to notice a specific hearing date notwithstanding this Court's Standing Order. (Dkt. 14). Failing all of that, it could have done what Federal Rule of Civil Procedure 6(b)(1)(B) suggests—file a motion requesting an extension of time and accompanying declaration showing "excusable neglect." It was Yuga's choice, and Yuga's choice alone, to file an untimely motion and ask forgiveness rather than seek permission.

Yuga also argues that its defenses under Rules 12(b)(1) and 12(b)(6) cannot be waived under Rule 12(h). While Rule 12(h) permits a party who has moved or answered to subsequently raise a 12(b)(1) or 12(b)(6) defense, Yuga has not timely moved or answered—and nothing in Rule 12(h) permits an untimely and unauthorized Rule 12 *motion* or answer.

Rather, Federal Rule of Civil Procedure 6(b)(1)(B) governs motions for extension of time. Extensions may only be granted for "excusable neglect." Yuga never filed this motion. Even if Yuga's reasons for filing an untimely motion were excusable, Yuga's failure to avail itself of the proper procedure for fixing the problem was not. Now, many weeks after the initial timeliness problem was raised, Yuga has still not filed any such motion—and it is now far too late to call its neglect excusable. Therefore, this Court DENIES Yuga's motion in its entirety as untimely.

Given its untimeliness, the Court need not reach the merits of Yuga's motion. If this Court considered the Yuga's claims motion on the merits, it would DENY Yuga's motion to dismiss and motion to strike in full for the following reasons.

### B. The Federal Law Claims Are Adequately Pled

The DMCA protects copyright holders by offering a mechanism for copyright holders to take down offending uses of *copyrights* online. This imposes requirements for a variety of websites to respond to, and take down offending content. Counter-Plaintiffs contend that Yuga weaponized the DMCA by making copyright claims despite having no actionable copyright. Yuga primarily argues that Plaintiffs lack standing to make this claim. Yuga's position fails.

Yuga claims Counter-Plaintiffs needed to present "affidavits or other necessary evidence" to prove standing. *See* (Dkt. 89 at 19). Yuga confuses the exception for the rule. A party can prove standing through the allegations in its complaint alone, and courts "construe all material allegations of fact in the complaint in favor of the plaintiff." *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021).

In this case, the complaint supplies the necessary ingredients for standing. Plaintiffs allege cognizable harms, including loss of money, time, the ability to sell their expressive artworks, and reputational harm. These are all recognized concrete injuries. See Robins v. Spokeo, 867 F.3d 1108, 1115 (9th Cir. 2017). Ultimately, Yuga's argument appears to be that the injury was not large enough. But even small injuries are adequate for standing purposes. See Van v. LLR, Inc., 962 F.3d 1160, 1162 (9th Cir. 2020) (less than $4 is adequate harm for standing analysis).

Counter-Plaintiffs' cause of action is also otherwise well-pled. A Section 512(f) claim has only two elements, that defendant (1) made a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown was made in bad faith. Moonbug Entertainment Ltd. v. Babybus (Fujian) Network Technology Co., Ltd., No. 21-cv-06536-EMC, 2022 WL 580788 at *7 (N.D. Cal. 2022). If sounding in fraud, the allegations must be pled with particularity. Yuga itself concedes that Counter-Plaintiffs have pled at least one takedown request with particularity. (Dkt. 97 at 8).

The rest of Yuga's arguments amount to factual disputes about whether it had the requisite bad faith required under the statute. This is a disputed issue of fact inappropriate for resolution at the motion to dismiss stage.

### C. Counter-Plaintiffs' Claim Declaratory Judgment of No Copyright is Adequately Pled.

Counter-Plaintiffs seek a declaration that Yuga lacks a copyright interest in the BAYC collection. A declaratory judgment action is proper when "some useful purpose" is achieved by deciding the legal issue presented. See Public Service Commission v. Wycoff Co., 344 U.S. 237, 244 (1952). The action must also present an Article III case or controversy. See Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005). This requires a "real and reasonable apprehension" that the declaratory judgment plaintiff will be subject to liability. In the infringement context,

-6-

plaintiff must have a "real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Rhoades v. Avon Prods.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

Here, a declaratory judgment action serves a useful purpose because Yuga has pursued a pattern and practice of using the DMCA offensively against Counter-Plaintiffs, and Counter-Plaintiffs have good reason to believe this will continue unless a court definitively settles their right to any copyright. *Tine Bak LLC v. Selkatz, Inc.*, No. 20-cv-5065-DSF(SK), 2020 WL 9074806 (C.D. Cal. 2020), is instructive. Like Yuga, the defendant in *Tine Bak* argued that DMCA complaints fail to provide an immediate and real controversy to resolve. *See id.* at *4. The *Tine Bak* Court disagreed and held that a declaratory action was proper because the DMCA complaints called into question the defendant's underlying copyright, and that the complaints could prevent the plaintiff from conducting its business. Similarly, in *Beyond Blond Productions*, a court in this district held that DMCA complaints sufficiently led to a live controversy between the parties as to copyright. *See Beyond Blond Productions, LLC v. Heldman*, No. 20-cv-5581-DSF-GJSx, 2021 WL 9315215 at *5-6 (C.D. Cal. 2021). Likewise, in this case, given Yuga's practice of using the DMCA to take down Counter-Plaintiffs' NFT collection, a case or controversy exists surrounding the underlying copyright dispute.

Yuga also argues that Counter-Plaintiffs lack any apprehension of being sued pursuant to the Copyright Act because any copyrights that Yuga has are unregistered. (Dkt. 87 at 23). But having an unregistered copyright is not an obstacle to suit because it takes only five working days to register a copyright through the Copyright Office's special handling process. Moreover, Yuga misstates the holdings of *Cal. Furniture Collection* and *Sky Billiards*. These cases did not reject standing due to lack of copyright registration, but instead found no standing because the defendants did not own copyrights at all. *Cal. Furniture Collection, Inc. v. Harris Adamson Home*, LLC,

-7-

No.19-cv-06254, 2019 WL 7882081, at *2 (C.D. Cal. 2019) ("Defendant cannot sue for infringement of a copyright it does not own."); *Sky Billiards, Inc., v. WolVol, Inc.*, No. 5:15-cv-02182, 2016 WL 7479428, at *4 (C.D. Cal. 2016) ("WolVol cannot sue for infringement of a copyright it does not own….").

Here, whether Yuga owns copyrights at all is the dispute. Yuga compounded the threat to the Counter-Plaintiffs when, after filling its motion to dismiss, it stated publicly that it in fact ***does*** own the disputed copyrights. *See* Kyle Barr, "Yuga Labs Claims Its Bored Apes Have Copyright, Even if It Never Filed for Protection," Gizmodo, available at https://gizmodo.com/yuga-labs-nfts-bored-apes-copyright-1850042639. Yuga's motion to dismiss Counter-Plaintiffs' claims for a declaratory judgment of no copyright is DENIED.

## IV. Yuga's Anti-SLAPP Motion

Yuga's anti-SLAPP motion is DENIED because (1) the principle thrust and gravamen of the state law causes of action does not arise out of protected speech activity and (2) the state law causes of action are legally sufficient.

### A. The Principle Thrust of the State Law Claims Arise Out of Unprotected Activity

Anti-SLAPP motions are decided using a two-step framework. In the first step, the court determines whether the suit arises from protected expressive activity. *City of Cotati v. Cashman*, 29 Cal.4th 69, 77 (2002). In the second step, the court analyzes the complaint in a manner similar to assessing a motion for failure to state a claim. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010).

In assessing the first step, the courts ask whether the "principal thrust or gravamen" of the complaint is about protected expressive activity. *Martinez v. Metabolite Int'l Inc.*, 113 Cal. App. 4th 181, 188 (2004). In the litigation context, to arise from the protected litigation expression, the alleged expressive activity, "must be related to the substantive issues in the litigation" and "be directed to some persons

-8-

having an interest in the litigation." *McConnell v. Innovative Artists & Literary Agency, Inc.*, 175 Cal. App. 4th 169, 179 (2009). To determine this, courts look at "defendants allegedly wrongful acts" and the evidence that plaintiffs will use to prove those claims. See *Wang v. Wal-Mart Real Estate Business Trust*, 153 Cal. App. 4th 790, 806 (2007).

Even without looking at the merits of the claims, the emotional distress claims clearly do not arise from any protected litigation activity. Instead, they arise from other threatening actions. As a result, at minimum, Yuga's motion to strike fails because the claim does not arise out of protected expressive activity.

### B. The Emotional Distress Claims Are Otherwise Well Pled

The second prong of the Anti-SLAPP motion and the motion to dismiss are judged in substantially similar manners. To prevail, Yuga must demonstrate that Counter-Plaintiffs fail to allege a legally sufficient complaint.

In an IIED claim, a plaintiff must prove, (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). The Court concludes that the claims are adequately pled.

First, Counter-Plaintiffs have pled "extreme and outrageous conduct." One of these allegations is a death threat. By itself a death threat is sufficient for "extreme and outrageous conduct." *Kisecky v. Carpenters' Trust for So. Cal.*, 144 Cal. App. 3d 222, 229 (1983). Beyond that, the pleadings show a series of threatening acts toward Counter-Plaintiffs which combined satisfy the "extreme and outrageous" conduct element.

Yuga argues Counter-Plaintiffs do not allege a sufficient degree of emotional distress. "The requisite emotional distress for an IIED claim may consist of a highly

unpleasant mental reaction." *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970). Becoming "scared and shaking" after insults and threats is adequate. *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1598 (2012). Counter-Plaintiffs allege extreme fear and anxiety to the point that they have chronic anxiety and trouble sleeping. (Dkt. 65 at ¶ 95). This is a sufficient allegation of emotional distress at this stage in the proceedings.

Negligent Infliction of Emotional Distress (NIED) requires that a duty exists between the parties. Under California tort law, duties can be imposed by law. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993). Counter-Plaintiffs point to several laws which create this duty. The theme uniting these statutory provisions is a duty to not harass or threaten others. *See* Cal. Penal Code § 646.9; Cal. Civ. Code § 1714(a). The allegations of the Counter-Complaint all involve harassment or threats. Therefore, Counter-Plaintiffs have adequately alleged both NIED and IIED.

## V.   CONCLUSION

For the reasons set forth above, the Court DENIES Yuga's motion to dismiss and motion to strike as untimely.

The Court also finds, for the reasons described above, that Yuga's motion to strike is frivolous. Therefore, the Court exercises its power to grant attorneys; fees to Counter-Plaintiffs. Within 30 days of the entry of this order, Counter-Plaintiffs shall submit a full accounting of fees and costs.

Dated: _____       _____
                              Hon. John F. Walter
                              United States District Judge