UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YUGA LABS, INC.,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>    Defendants and Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**[PROPOSED] STATEMENT OF DECISION GRANTING PLAINTIFF YUGA LABS, INC.'S SPECIAL MOTION TO STRIKE COUNTERCLAIMS; PLAINTIFF YUGA LABS, INC.'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>Date:    February 27, 2023<br>Time:    1:30 p.m.<br>Courtroom: 7A<br>Judge:   Honorable John F. Walter |

    On January 16, 2023, Plaintiff Yuga Labs ("Yuga Labs") filed a Special Motion to Strike Counterclaims and Motion to Dismiss Counterclaims ("Motion").[1] On February 6, 2023, Defendants Ryder Ripps and Jeremy Cahen ("Defendants") filed their Opposition. On February 13, 2023, Yuga Labs filed its Reply. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

---

[1] Per the Court's Order (ECF 88), Yuga Labs refiled its Motion on January 18, 2023 to reflect a later hearing date. The Court finds that the Motion was timely.

## I. BACKGROUND

Yuga Labs, Inc. is the creator of one of the world's most well-known and successful non-fungible token collections, the "Bored Ape Yacht Club" (the "BAYC"). ECF 65 (Countercl.) at ¶ 2. Defendants created their own collection of NFTs using the exact same images as the BAYC, and which use Yuga Labs' asserted BAYC Marks. Defendants have marketed the RR/BAYC NFTs on Twitter and elsewhere. Defendants have admitted to this Court "that they have used the BAYC Marks in the same marketplaces to identify and sell NFTs bearing the exact same images underlying the BAYC NFTs and without adding any expressive content." ECF 62 at 7; *see also* ECF 65 (Countercl.) at ¶ 43; ECF 11 at 216 (admitting to using "modified versions of certain BAYC marks"). On June 24, 2022, Yuga Labs sued Defendants for infringing its alleged BAYC Marks, as well as asserting claims for false advertising and cyber-squatting. Yuga Labs did not bring a defamation claim or a copyright claim.

On December 27, 2022, Defendants filed their Answer and Counterclaims (ECF 65), asserting that various actions taken by Yuga Labs during the parties' dispute, including the June 24 lawsuit itself, caused them extreme emotional distress (Counts 4 and 5). Defendants also asked the Court to issue a "Declaratory Judgment of No Defamation" (Count 6), purportedly encompassing every statement that Defendants have made about Yuga Labs and declaring all such statements to be not defamatory, and which Defendants withdrew when they filed their opposition to this Motion. Defendants also brought various copyright-related counterclaims (Counts 1-3).

On January 18, 2023, Yuga Labs filed the Motion to strike Counts 4-6 under the California anti-SLAPP statute (or, in the alternative, to dismiss them if they are not stricken), and to dismiss the remainder of the Counterclaims. In connection with the anti-SLAPP portion, Yuga Labs seeks attorneys' fees under the statute.

Defendants' Counts 4, 5, and 6 complain of conduct that falls squarely within California's anti-SLAPP statute and for which they have not shown a "probability of success" (or any chance of success); therefore, the Court will strike them. Defendants'

claims for "emotional distress" (Counts 4 and 5) also fail because they are based on alleged conduct that comes nowhere near the "extreme and outrageous" standard required to sustain such claims. Defendants' own allegations and public statements establish that they have not suffered any injury as a result of Yuga Labs defending itself—let alone the "extreme emotional distress" required to sustain these claims. Although Defendants withdraw Count 6 in their Opposition, the Court concludes that Count 6 is still subject to the anti-SLAPP statute. Defendants' request for a declaratory judgment for a defense to a defamation claim that the Court previously acknowledged had not been brought (ECF 62 at 11) presents no "case or controversy" to invoke this Court's subject matter jurisdiction and, even if it did, is contrary to the purposes of the Declaratory Judgment Act. Yuga Labs is the prevailing party on Counts 4-6 and entitled to attorneys' fees pursuant to the California anti-SLAPP statute.

With respect to Defendants' federal claims (Counts 1, 2, and 3), the Court concludes that those fail for lack of subject matter jurisdiction—Defendants have not proven any harm from any DMCA takedown, and there can be no case or controversy for claims of hypothetical copyright infringement about which no suit could, admittedly, be filed at this time. Defendants also fail to plead a viable Section 512(f) claim. The only platform that they allege took down any content was Foundation, and there Yuga Labs admittedly had a good faith belief in its ownership of a copyright for its logo which Defendants copied.

Therefore, for the reasons that follow, the Court will strike the state law claims pursuant to the California anti-SLAPP statute, award Yuga Labs its attorneys' fees on that portion of its Motion, and dismiss with prejudice the copyright claims.

## II. LEGAL STANDARD

When a motion to strike under California's anti-SLAPP statute challenges the legal sufficiency of a claim, the court must first determine whether the moving party has made a threshold showing that the challenged cause of action is one arising from protected activity. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010)

(quoting Cal. Civ. Proc. Code § 425.16(b)(1)). Next, the court assesses whether the plaintiff has a probability of prevailing on claim. *Navellier v. Sletten*, 29 Cal. 4th 82, 95 (2002). The court does not weigh the credibility or comparative strength of the competing evidence, but instead should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (cleaned up). When an anti-SLAPP motion challenges a claim's legal sufficiency, the court applies the standard for a motion to dismiss for failure to state a claim and considers whether a claim is properly stated. *Stossel v. Meta Platforms, Inc.*, No. 21-cv-07385, 2022 WL 6791430, *6 (N.D. Cal. Oct. 11, 2022). The court considers the pleadings, supporting and opposing affidavits stating the facts upon which the liability or defense is based. *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1067 (N.D. Cal. 2018).

A motion to dismiss for failure to state a claim tests the formal sufficiency of a statement of claim for relief, and the court's inquiry is whether allegations sufficiently state a claim under Federal Rule of Civil Procedure 8 setting forth requirements for pleading and calling for "short and plain statement of the claim showing that the pleader is entitled to relief." *Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996). Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom. *See Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Tech., Inc.*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2008) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

2003)).

In moving to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the challenging party may either make a facial attack on the allegations of jurisdiction contained in the complaint or can instead take issue with subject matter jurisdiction on a factual basis. *Thornhill Publ'g Co. v. Gen. Tel. & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). When a party challenging subject matter jurisdiction presents affidavits or other evidence disputing the truth of the allegations, as Yuga Labs has here, the court may review evidence beyond the complaint and the party invoking the Court's jurisdiction, Defendants here, must "present affidavits or other evidence necessary to satisfy [their] burden of establishing subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

## III. DISCUSSION

### A. The State-Law Claims Shall Be Stricken Pursuant To The California anti-SLAPP Statute

The California anti-SLAPP statute establishes "a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e). [Second, i]f the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Navellier*, 29 Cal. 4th at 83 (cleaned up).

Under the first step, the Court determines that Counts 4–6 are subject to the anti-SLAPP statute. Defendants explicitly acknowledge in their Counterclaims that they filed their state-law claims based on Yuga Labs filing this lawsuit and takedown

notices, Yuga Labs' representatives giving a public interview on YouTube, and Yuga Labs tweeting about the Defendants. Countercl. ¶¶ 7, 61, 63-67, 70-73. The conduct challenged by these Counts falls within the anti-SLAPP statute's protection for litigation-related activities, speech made "in a public forum in connection with an issue of public interest," and "any other conduct ... in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(b), (e); Cal. Civ. Code §47(b).

Though Defendants point to certain allegations that they contend are not within the reach of the anti-SLAPP statute, the existence of allegedly non-protected activity is not enough to overcome the anti-SLAPP statute where the "principal thrust or gravamen" of their claims arises out of protected activities. *Wang v. Wal-Mart Real Estate Bus. Trust*, 153 Cal. App. 4th 790, 801–02 (2007). Courts reject such attempts to "frustrate the purposes of the SLAPP statute through a pleading tactic of combining the allegations of protected and nonprotected activity under the label of one cause of action." *Sparrow LLC v. Lora*, No. CV-14-1188, 2014 WL 12573525, at *3 (C.D. Cal. Dec. 4, 2014) (quoting *Wang*, 153 Cal. App. at 801–02). Defendants themselves make clear that the principal thrust or gravamen of their Counterclaims is the lawsuit and Yuga Labs' public statements (including those about the litigation). *See, e.g.*, ECF 65 ¶¶ 70 ("Yuga ... is spending disproportionately large resources to litigate trademark infringement claims. . . . Yuga filed its suit simply to impose financial and emotional costs onto Mr. Ripps and Mr. Cahen . . . ."); 71 ("Yuga has sued only Mr. Ripps and Mr. Cahen . . . ."); 72 ("Yuga's ulterior motive for filing this suit is further confirmed by its public tweet . . . ."); 63 ("Yuga, both directly and through various third parties, systematically contacted the media and individuals with public speaking platforms, including at least four journalists. . . ."); 64 ("Yuga sent two of its co-founders, Greg Solano and Wylie Aronow, for a public interview. . . . Solano and Aronow appeared on the Full Send Podcast, . . . .); 67 (alleging tweets by Yuga Labs' "Community and Partnerships Lead").[2] The Court therefore does not need to reach Defendants'

---

[2] Tellingly, in their proposed amendment to their counterclaims, Defendants now seek

arguments concerning Yuga Labs' alleged non-protected statements and activities, because they are "incidental or collateral to a cause of action based essentially on protected activity." *Wang*, 153 Cal.App.4th at 802. The anti-SLAPP statute applies.

Having established that the anti-SLAPP section applies, the Court proceeds to the second step, to determine whether there is a probability of success on the counterclaims. Here, the claims for intentional infliction of emotional distress ("IIED") (Count 4) and negligent infliction of emotional distress ("NIED") (Count 5) suffer from several fatal legal flaws, and therefore fail to plausibly state a claim or to have a probability of success under the anti-SLAPP statute. First, the allegations do not support a finding of "extreme or outrageous" conduct as a matter of law. *See, e.g.*, *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998); *Wong v. Jing*, 189 Cal. App. 4th 1354, 1379 n.7 (2010).[3] The conduct must be "atrocious, and utterly intolerable." *Cochran*, 65 Cal. App. 4th at 496. Courts have explained this does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (cleaned up). It would not be enough even if Defendants alleged that Yuga Labs acted "with an intent which is tortious or even criminal, . . . intended to inflict emotional distress, or even that [its] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle [Defendants'] to punitive damages for another tort." *Id.* (quoting Restatement (Second) of Torts, § 46, cmt. d (Am. L. Inst. 1965)). Defendants' claims fall far short of this standard. The parties are in the middle of a public litigation and dispute, and the conduct alleged, when viewed in its context, is simply not actionable. *Id.* at 496 ("[t]here must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible

---

to withdraw their factual allegations that their state-law harassment claims arise out of Yuga Labs' filing of this lawsuit. *See* ECF 97-4 at page 78. By doing so, Defendants impliedly concede that Counts 4 and 5 arise out of protected activity.

[3] While it is not necessary to this holding, the statements directed at third parties also cannot support these claims. "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).

tempers may blow off relatively harmless steam[.]").[4] Negative, and even allegedly threatening, comments are non-actionable because they can reasonably be expected and are not uncommon between parties involved in protracted litigation or who are otherwise feuding.

Counts 4 and 5 also fail because Defendants have only made conclusory allegations of "garden variety" distress insufficient to support a claim. Severe emotional distress is "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009). "Assertions that a plaintiff has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of a defendant's conduct do not" rise to the level of extreme emotional distress. *Id.* at 1051 (cleaned up). Defendants have not alleged emotional distress sufficient to support their claims. Defendants' insufficient allegations are further undermined by their repeated posting of combative and inflammatory material about Yuga Labs at the very same time they claim to be extremely emotionally distressed—conduct which they do not dispute.

Count 5 (NIED) also fails because Yuga Labs owes no duty to Defendants to support it. *Dushey v. Accu Bite, Inc.*, 2006 WL 1582221, at *2 (E.D. Cal. June 2, 2006) ("Absent some threatened physical injury ... or a contractual duty to protect plaintiffs' emotional tranquility, ... plaintiffs cannot make out a claim for [NIED]." (cleaned up)

Count 6 (the "Declaratory Judgment of No Defamation") was also beset by fatal legal flaws from the outset. Defendants failed to identify a single legal authority in their Opposition for a "no defamation" claim (even when asserting that there is a "split in authority," ECF 96 at 21)[5], nor did they identify any specific statements about which

---

[4] Similarly, Defendants' proposed amendment does not allege "extreme and outrageous" conduct necessary to sustain a cause of action, and the amendment would therefore be futile.
[5] The only case Defendants cite in support of their decision to file Count 6 does not include a claim for non-defamation; it does not even include the word "defamation" anywhere in the opinion. *IP Global Invs. America, Inc. v. Body Glove Ip Holdings, LP*, No. 17-cv-06189, 2019 WL 121191, at *2 (C.D. Cal. Jan. 7, 2019).

they believed the Court had jurisdiction to adjudicate the elements of defamation. While Defendants chose to withdraw Count 6 without substantively responding to the Motion, it is nonetheless subject to the anti-SLAPP statute and its mandatory attorneys' fees provision, as discussed further below. *See, e.g.*, *Fintland v. Luxury Marine Grp., LLC*, No. CV 09-4267, 2010 WL 758543, at *6-7 (C.D. Cal. Mar. 1, 2010) (granting anti-SLAPP striking declaratory relief claim); *Allstate Indemnity Co. v. Collins*, No. C 10-2073, 2011 WL 941251, at *3 (N.D. Cal. Mar. 18, 2011) (analyzing anti-SLAPP motion in pure declaratory relief action). Most of Defendants' counterclaims contained allegations relating to this claim in particular. *See, e.g.*, ECF 65 ¶¶ 1–3, 33–73 (alleging that Yuga Labs "quietly embedded" "coded" messages in its products, that Defendants' created their NFTs as "criticism," and that Yuga Labs denied and "engaged in a campaign aimed at silencing" such criticism). Therefore, by forcing Defendants to withdraw Count 6, Yuga Labs has substantively prevailed on its anti-SLAPP motion in connection with this counterclaim. Defendants also failed to demonstrate that Count 6 had a good-faith basis when filed, or why it was not withdrawn after the parties' meet-and-confer during which Yuga Labs identified the fatal flaws in Defendants "No Defamation" claim.[6]

The Court GRANTS Yuga Labs' motion to strike Counts 4-6 of Defendants' counterclaims pursuant to the California anti-SLAPP statute.

### B. The Court Does Not Have Subject Matter Jurisdiction Over Defendants' 17 U.S.C. § 512(f) Counterclaim (Count 1).

The Court lacks subject matter jurisdiction over Defendants' § 512(f) counterclaim because Defendants failed to establish Article III standing. To have standing under Article III, the party bringing the claim must establish that they suffered a concrete and particularized injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S.

---

[6] Before Yuga Labs filed this Motion, its counsel wrote to Defendants' counsel that, among other things, "there is no claim for declaratory relief of non-defamation." ECF 97-2. Counsel thereafter met and conferred about this Motion. ECF 78. Defendants did not withdraw Count 6 before Yuga Labs filed this Motion. ECF 96.

555, 560 (1992). This injury must be "'actual . . . not conjectural or hypothetical.'" *Spokeo v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560). Where, as here, the moving party has challenged subject matter jurisdiction with evidence, the non-moving party is required to "present affidavits or other evidence necessary to satisfy [its] burden of establishing subject matter jurisdiction." *St. Clair*, 880 F.2d at 201. The Court need not presume allegations to be true once a factual challenge to jurisdiction has been raised. *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1081 (C.D. Cal. 2019) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

Defendants have not met their burden of proof on Yuga Labs' motion to dismiss pursuant to Rule 12(b)(1) because they rely solely on conclusory statements unaccompanied by any evidentiary support.[7] As to Yuga Labs' one takedown made on the basis of copyright infringement,[8] Defendants argue, without evidence, that they were harmed by way of lost money and time or lost time in the market; however, Defendants have not submitted any evidence to support this assertion.[9] Moreover, the evidence Yuga Labs submitted demonstrates that Defendants were not harmed by the one takedown. Rather, the evidence establishes that the takedown lasted no more than a few hours and that instead of responding to the takedown, Defendants publicly celebrated it as the "best thing that could have happened." ECF 89-9. Because Defendants chose not to respond to the 12(b)(1) motion with evidence of their own demonstrating the Court's subject matter jurisdiction and because Yuga Labs' evidence shows that Defendants were not harmed by any DMCA takedown, the Court cannot

---

[7] Unlike a Rule 12(b)(6) motion, pleadings alone are insufficient to establish subject-matter jurisdiction once the moving party has raised a factual challenge. Defendants' reliance on their pleadings, *see* ECF 96 at 10, does not satisfy their factual burden and cannot save their § 512(f) counterclaim from dismissal.
[8] To the extent that Defendants assert that there were other DMCA takedown notices, Defendants also fail to provide evidence which would establish subject matter jurisdiction for any alleged § 512(f) violation concerning those other takedowns.
[9] Nor has Cahen established that he has any ownership interest in the Foundation account which was the subject of the DMCA takedown.

conclude that Defendants suffered harm sufficient to meet Article III's injury-in-fact requirement.[10] Therefore, this Court lacks subject matter jurisdiction over Defendants' § 512(f) counterclaim and GRANTS Yuga Labs' Motion as to this claim.

### C. Defendants Failed to Plead Their Counterclaim Under 17 U.S.C. § 512(f).

Even if the Court had subject matter jurisdiction over Defendants' first counterclaim, Defendants fail to state a claim for a violation of 17 U.S.C. § 512(f).[11] "[T]o state a § 512(f) claim, Defendant[s] must allege (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith." *Moonbug Enter. Limited v. Babybus (Fujian) Network Technology Co. Ltd.*, No. 21-CV-06536, 2022 WL 580788, at *7 (N.D. Cal. Feb. 25, 2022). To prove bad faith, "there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004). Because Defendants alleged that the takedowns were "fraudulent" they must also satisfy Rule 9(b). *See Flores v. Popova*, No. CV 19-1379, 2019 WL 4238886, at *3 (C.D. Cal. Aug. 7, 2019). Defendants only allege one takedown with such specificity.[12]

---

[10] Defendants argue without legal support that they need only plead a statutory violation to establish Article III standing for their § 512(f) claim. The Court finds no support for Defendants' position, which ignores controlling authority from the U.S. Supreme Court. *Spokeo, Inc.*, 578 U.S. at 341.

[11] In evaluating a motion to dismiss, courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" (or counterclaims) or documents that are proper subjects of judicial notice. *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998). Along with its Motion, Yuga Labs filed a Request for Judicial Notice of documents incorporated by reference in Defendants' first counterclaim for alleged violation of § 512(f). ECF 89-1. The Court has reviewed the documents and finds that they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. Therefore, the Court GRANTS Yuga Labs' request for judicial notice as to Exhibits 2-4 and 6 to the Declaration of Eric Ball (ECF 89-3).

[12] Although Defendants attempt to remedy these shortcomings in their Counterclaims by proposing various amendments (ECF 96 at 12-13), Defendants' proposed amendment fails to comply with this Court's Standing Order and Scheduling and Case Management Order. Even still, the proposed amendments demonstrate that Defendants cannot cure their failure to state a claim for a violation of § 512(f). First, Defendants' proposed allegations admit that the other takedowns were made on the basis of

Defendants identify only one alleged DMCA takedown, and they do not allege each element of a § 512(f) claim for this one takedown. That takedown stated that "[t]he infringing content uses copyrighted material from http://opensea.io/collection/boredapeyachtclub produced by Yuga Labs without authorization." ECF 89-5. Defendants do not dispute that the statement in Yuga Labs' notice was true—Defendant Ripps' Foundation page for his RR/BAYC NFT collection displayed Yuga Labs' exact logo without any modification. ECF 89-6, 89-7. Defendants also offer no argument or allegation that Yuga Labs did not possess a good faith belief that Defendants' use of Yuga Labs' logo indeed infringed its copyright. Defendants do not dispute that Yuga Labs' logo is capable of copyright protection.[13] See *Vigil v. Walt Disney Co.*, No. C-95-1790, 1995 WL 621832, *2 (N.D. Cal. Oct. 16, 1995). Therefore, this Court concludes that Defendants cannot plausibly allege that Yuga Labs made a material misrepresentation in a DMCA takedown that led to a takedown and that was made in bad faith under § 512(f). The Court GRANTS Yuga Labs' Motion as to Defendants' § 512(f) counterclaim and dismisses that claim with prejudice.

### D. The Court Does Not Have Subject Matter Jurisdiction Over Defendants 17 U.S.C. § 102(a) and 17 U.S.C. § 204(a) Counterclaims (Counts 2 and 3).

Courts may not issue declaratory relief merely because it would serve "some

---

trademark infringement. ECF 97-1, Ex. 3 at 72, ¶ 66. But, "[b]y its express terms, the DMCA applies only to copyrights, not patents, trademarks, or other rights . . . ." *ISE Ent. Corp. v. Longarzo*, No. CV 17-9132, 2018 WL 11346736, at *8 (C.D. Cal. Dec. 11, 2018); *see also Twelve Inches Around Corp. v. Cisco Sys., Inc.*, No. 08 Civ. 6896, 2009 WL 928077, at *4 (S.D.N.Y. Mar. 12, 2009) ("Reading Section 512(f) to cover misrepresentation of trademark infringement would be inconsistent with this carefully balanced intent. Accordingly, Plaintiff's claim that misrepresentation of trademark infringement is actionable under 17 U.S.C. § 512(f) is dismissed."). Additionally, Defendants do not even allege that any of the takedowns alleging trademark infringement were successful, which is itself independently fatal to a § 512(f) claim. ECF 97-1, Ex. 3 at 72, ¶¶ 66-69. Therefore, the Court finds that any amendment to the § 512(f) claim would be futile.

[13] The Court need not inquire into the validity of Yuga Labs' asserted copyrights because § 512(f) only requires that the accused have a *subjective* good faith belief that their copyright is being infringed; Defendants have not plausibly alleged otherwise. See *Moonbug*, 2022 WL 580788, at *7.

useful purpose" (ECF 96 at 14-15); rather, the party seeking declaratory relief must point to some "real and immediate," "actual" controversy. *MGA Entertainment, Inc. v. Louis Vuitton Malletier, S.A.*, 2019 WL 2109643, at *4 (C.D. Cal. May 14, 2019).

Yet again, Defendants failed to meet their burden to demonstrate that the Court has subject matter jurisdiction; it does not. Although Defendants accuse Yuga Labs of engaging in "a pattern and practice of using the Digital Millennium Copyright Act offensively against Counter-Plaintiffs," they offer no evidence whatsoever to satisfy their burden to support this contention. ECF 96 at 15. Except for Yuga Labs' one DMCA takedown in May 2022, Defendants have not shown that Yuga Labs used any claim of copyright infringement to form the basis of another takedown request. Indeed, they admit that all but the one DMCA takedown was made on the basis of non-copyright claims.[14] ECF 96 at 8.

Additionally, the parties agree that Yuga Labs does not possess copyright registrations. ECF 89 at 23-24; ECF 96 at 15-16. Thus, there can be no case or controversy on this issue between Defendants and Yuga Labs because Yuga Labs itself "cannot sue for infringement of a copyright" that it has not registered. *Cal. Furniture Collection, Inc. v. Harris Adamson Home, LLC*, No. CV 19-06254, 2019 WL 7882081, at *2 (C.D. Cal. Oct. 18, 2019) (holding that the plaintiff did not have standing to seek declaratory relief of non-infringement because the defendant had neither applied for nor been granted copyright registrations). Moreover, Defendants' assertion that "having an unregistered copyright is not an obstacle to suit because it takes ***only five working days*** to register a copyright through the Copyright Office's special handling process" (ECF 96 at 16 (emphasis in original)) is unpersuasive and precisely the kind of hypothetical question that federal courts are barred from adjudicating under Article III. *See Indus. Commc'ns Sys., Inc. v. Pacific Tel. & Tel. Co.*, 505 F.2d 152, 155 (9th Cir. 1974). The Court need not weigh in on whether Yuga Labs *could* obtain a

---

[14] "By its express terms, the DMCA applies only to copyrights, not patents, trademarks, or other rights . . . ." *ISE Ent. Corp*, 2018 WL 11346736, at *8; *see also Twelve Inches Around Corp.*, 2009 WL 928077, at *4.

copyright registration in finding that there is no imminent threat of a lawsuit for copyright infringement. The Court therefore GRANTS Yuga Labs' Motion as to Defendants' § 102(a) and § 204(a) counterclaims (Counts 2 and 3) with prejudice.

### E. Attorneys' Fees

As the "prevailing [counterclaim] defendant" on its anti-SLAPP motion, Yuga Labs is entitled to its attorneys' fees and costs in connection with bringing this Motion.

"The term 'prevailing party' must be 'interpreted broadly to favor an award of attorney fees to a partially successful defendant.'" *Lin v. City of Pleasanton,* 176 Cal. App. 4th 408, 425–26 (2009), *review denied,* No. S175754 (Cal. Oct. 14, 2009). When determining whether an anti-SLAPP movant has prevailed in bringing its motion, "[t]he crucial question is one of practicality; did anything of substance (technical victories notwithstanding) change in the posture of the case and the claims being lodged against the defendant after it brought the special motion to strike than were in existence beforehand." *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010). Relevant considerations are whether the "possible recovery," "factual allegations," or "work involved in trying the case" changed as a result of the motion. *Moran v. Endres,* 135 Cal. App. 4th 952, 955 (2006).

Yuga Labs unquestionably prevailed on its Motion, because all of Defendants' state-law claims have now been stricken. As a result of Defendants' IIED and NIED claims being stricken, Defendants' allegations in support of these claims are no longer at issue, and they are unable to recover for the various types of emotional and related harms they allege. The same is true for Defendants' "No Defamation" claim, the striking of which forecloses Defendants' requested declaratory judgment "that their statements about Yuga are not and have not been defamatory" (ECF 65 ¶ 102) and removes from dispute the question of whether Defendants "falsely criticize[d] Yuga for using racist and neo-Nazi messages and imagery" (ECF 65 ¶ 98).[15]

---

[15] Defendants suggest that their voluntary withdrawal of the "No Defamation" claim was equivalent to Yuga Labs' withdrawal of its Unjust Enrichment claim. ECF 96 at

Though the Court has not granted Defendants leave to amend their state-law claims, this would not impact Yuga Labs' entitlement to fees. Defendants had an opportunity to withdraw these claims before Yuga Labs filed its anti-SLAPP motion — including following the meet and confer process mandated by the Court's Standing Order — but chose not to do so. Consistent with the purpose of the anti-SLAPP statute to deter litigants from bringing meritless claims against a party engaging in protected activity, "even if the pleading is amended to remove the targeted claim, the moving party may still be entitled to attorneys' fees and costs incurred in bringing the anti-SLAPP motion, per section 425.16(c)." *Semiconductor Equip. & Materials Int'l, Inc. v. The Peer Grp., Inc.*, No. 15-CV-00866, 2015 WL 5535806, at *2 (N.D. Cal. Sept. 18, 2015).

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Yuga Labs' Motion to Dismiss Defendants' federal-law counterclaims (Counts 1-3). The Court **GRANTS** Yuga Labs' Special Motion to Strike Defendants' state-law counterclaims (Counts 4-6). As required under Cal. Civ. Code § 425.16, the Court **GRANTS** Yuga Labs' request for attorneys' fees. Yuga Labs shall file a fee request, supported by adequate time records, within fifteen (15) days of this Order establishing its reasonable fees and costs.

**IT IS SO ORDERED.**

Dated: _____

⸻⸻⸻⸻⸻⸻⸻⸻⸻
Honorable John F. Walter
United States District Court Judge

---

21. It is distinguishable, because the Court found that Yuga Labs' claims did not arise from protected activity and therefore were not subject to the anti-SLAPP statute. ECF 62 at 10-11. Moreover, Yuga Labs' withdrawal of that claim did not change the posture of the case, narrow the factual disputes, or remove a remedy from its Complaint. *See* ECF 53 at 24 ("Yuga Labs withdraws this claim but continues to seek unjust enrichment as a remedy"). The comparison is even less availing in light of Defendants' failure to identify any authority for a "No Defamation" cause of action, in this District or elsewhere.