# Exhibit 1

Exhibit 1
Pg. 5

Case 2:22-cv-04355-JFW-JEM Document 620-3 Filed 12/16/22 Page 12 of 16 Page ID
Case 2:22-cv-04355-JFW-JEM Document 103 Filed 12/16/22 Page 1 of 11 Page ID
#:4483

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

| | |
|---|---|
| Case No.   **CV 22-4355-JFW(JEMx)** | Date:  December 16, 2022 |

Title:     Yuga Labs, Inc. -v- Ripps, et al.

---

**PRESENT:**

      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

| | |
|---|---|
| PROCEEDINGS (IN CHAMBERS): | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' ANTI-SLAPP MOTION TO STRIKE AND MOTION TO DISMISS [filed 10/3/22; Docket No. 48] |

     On October 3, 2022, Defendants Ryder Ripps ("Ripps") and Jeremy Cahen ("Cahen") (collectively, "Defendants") filed an Anti-Slapp Motion to Strike and Motion to Dismiss ("Motion"). On October 17, 2022, Plaintiff Yuga Labs, Inc. ("Plaintiff") filed its Opposition. On October 24, 2022, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**

    **A.     The Parties**

     Plaintiff is the creator of one of the world's most well known and successful Non-Fungible Token ("NFT") collections, known as the Bored Ape Yacht Club ("BAYC"). According to Plaintiff, the BAYC NFTs have earned significant attention from the media for their popularity and value, including being featured on the cover of *Rolling Stone* magazine and being dubbed the "epitome of coolness for many" by *Forbes* magazine. Plaintiff alleges that BAYC NFTs often resell for hundreds of thousands, if not millions, of dollars, and prominent celebrities are holders of BAYC NFTs. In addition to certain benefits that come with being a member of the exclusive community of BAYC NFT holders, Plaintiff maintains that much of the BAYC NFT collection's value arises from their rarity because only 10,000 BAYC NFTs exist and each is entirely unique. Plaintiff has pending trademark applications with the U.S. Patent & Trademark Office for "BORED APE YACHT

CLUB," "BAYC," "BORED APE," the BAYC Logo, the BAYC BORED APE YACHT CLUB Logo, and the Ape Skull Logo (collectively, the "BAYC Marks"). Plaintiff has used the BAYC Marks since approximately April 2021 in connection with advertising, marketing, and promotion of its products and services nationwide and internationally through multiple platforms, including the BAYC website, NFT markets such as OpenSea, and social media platforms, such as Facebook, Instagram, and Twitter.

Ripps is a visual artist and creative designer who purports to create artwork that comments on the boundaries between art, the internet, and commerce. According to Defendants, Plaintiff has deliberately embedded racist, neo-Nazi, and alt-right dog whistles in the BAYC NFTs and associated projects.[1] Beginning in approximately November 2021, Ripps began criticizing Plaintiff's use of these purported racist, neo-Nazi, and alt-right dog whistles through his Twitter and Instagram profiles, podcasts, cooperation with investigative journalists, and by creating the website gordongoner.com.

In addition, in approximately May 2022, Defendants created their own NFT collection, known as the Ryder Ripps Bored Ape Yacht Club ("RR/BAYC"). According to Defendants, the RR/BAYC NFT collection "point to the same online digital images as the BAYC [NFT] collection but use verifiably unique entries on the [Ethereum] blockchain." Motion, 6:20-22. Defendants contend that their "use of pointers to the same images is a form of 'appropriation art' that serves several purposes," including: (1) bringing attention to Plaintiff's use of racist, neo-Nazi, and alt-right messages and imagery; (2) exposing Plaintiff's use of unwitting celebrities and popular brands to disseminate offensive material; (3) creating social pressure demanding that Plaintiff take responsibility for its actions; and (4) educating the public about the technical nature and utility of NFTs. Motion, 6:22-27.

### B. Defendants' Alleged Infringement

In its Complaint, Plaintiff alleges that Defendants have misused the BAYC Marks as part of a scheme to harass Plaintiff, mislead consumers, and unjustly enrich themselves. According to Plaintiff, in response to the popularity of the BAYC NFTs:

> Defendant Ryder Ripps, a self-proclaimed "conceptual artist," recently began trolling Yuga Labs and scamming consumers into purchasing RR/BAYC NFTs by misusing Yuga Labs' trademarks. He seeks to devalue the Bored Ape NFTs by flooding the NFT market with his own copycat NFT collection using the original Bored Ape Yacht Club images and calling his NFTs "RR/BAYC" NFTs. Brazenly, he promotes and sells these RR/BAYC NFTs using the very same trademarks that Yuga Labs uses to promote and sell authentic Bored Ape Yacht Club NFTs. He also markets these

---

[1] Although Defendants contend that Plaintiff's purported use of racist, neo-Nazi, and alt-right dog whistles are "too numerous to catalog," Defendants provide several examples in their Motion, including their claim that Plaintiff's BAYC Logo imitates the Nazi Totenkopf emblem for the Schutzstaffel and their claim that the name of Plaintiff's company includes a neo-Nazi dog whistle because the word "Yuga" is a reference to the phrase "Surf the Kali Yuga," which the alt-right uses as an esoteric way of saying enjoy sin and embrace conflict.

copycat NFTs as falsely equivalent to an authentic Bored Ape Yacht Club NFT. He
then goes on to use Yuga Labs' marks to promote his coming "Ape Market" NFT
marketplace, which requires a person to purchase one of his infringing NFTs to join
the Ape Market. This is no mere monkey business. It is a deliberate effort to harm
Yuga Labs at the expense of consumers by sowing confusion about whether these
RR/BAYC NFTs are in some way sponsored, affiliated, or connected to Yuga Labs'
official Bored Ape Yacht Club, in violation of the Lanham Act and related
state law.

Complaint, ¶ 2. Specifically, Plaintiff alleges that it "uses the trademarks BORED APE YACHT
CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and
the Ape Skull Logo, on a nationwide and international basis to identify its well-known Bored Ape
NFT collection" and that Defendants "use the very same marks to promote their RR/BAYC NFT
collection. Worse still, they attempt to sell these RR/BAYC NFTs on the same NFT marketplaces
that Yuga Labs uses to sell its Bored Ape NFTs, such as OpenSea." Complaint, ¶¶ 33 and 35-36.
In addition, Plaintiff alleges that, in approximately May 2022, Defendants "created a website that
allows users to 'reserve' RR/BAYC NFTs, which they then mint. The domain for this website is
https://rrbayc.com/. This website uses Yuga Labs' BAYC trademark in the title of the page
("RR/BAYC"), in the browser tab for the page ("RR/BAYC"), and in the domain for the page
(https://rrbayc.com/). The website also uses Yuga Labs' Ape Skull Logo mark . . . in the browser
tab icon." Complaint, ¶ 34. Plaintiff also alleges that the NFTs depicted on rrbayc.com "contain
BAYC Marks. For example, RR/BAYC #362 has the BAYC, BA YC Logo, and the Ape Skull Logo
marks on its hat and RR/BAYC #863 has the Ape Skull Logo mark on its shirt. Both of these fake
NFTs are identical to their official BAYC counterparts BAYC #362 and BAYC #863." *Id.* Moreover,
Plaintiff alleges that:

> Ripps, Cahen, and Does 1-5 created a sales page on Foundation, another NFT
> marketplace, to sell RR/BAYC NFTs. As of the filing of this Complaint, this page is
> no longer accessible on Foundation. On information and belief, Foundation removed
> this page. This page prominently and confusingly used Yuga Labs' BORED APE
> YACHT CLUB trademark as the title of the page . . . It also used Yuga Labs' BAYC
> trademark in an unauthorized hyperlink labeled "BAYC" and in the URL of the page
> (https://foundation.app/collection/bayc). And nothing about the URL indicated that it
> redirected to the RR/BAYC NFT collection, as opposed to the official BAYC NFT
> collection. Indeed, even the top result in a Google search for "BAYC Foundation.app"
> or "Bored Ape Yacht Club Foundation.app" was a misleading link titled "Bored Ape
> Yacht Club – Foundation.app" that redirected to the fake RR/BAYC NFT collection . .
> . Like their OpenSea page, Ripps, Cahen, and Does 1-5's Foundation page was also
> deliberately misleading and confusing to consumers and used Yuga Labs' BAYC
> marks in an attempt to trick community members into buying their NFTs instead of
> the official BAYC NFTs.

Complaint, ¶ 37. Furthermore, Plaintiff alleges that:

> The Foundation page's unauthorized BAYC hyperlink re-routed to the Etherscan
> page: https://etherscan.io/address/0x2EE6AF0dFf3A1CE3F7E3414C
> 52c48fd50d73691e for Defendants' RR/BAYC collection, which publicly tracks sales

and other information for these NFTs. Yuga Labs believes, and therefore alleges, that Ripps, Cahen, and Does 1-5 stole Yuga Labs' BORED APE YACHT CLUB and BAYC trademarks to misleadingly label the token tracker for these RR/BAYC NFTs as "Bored Ape Yacht Club (BAYC)."

Complaint, ¶ 39. Plaintiff alleges that the misleading labeling of the token tracker is important because:

Token trackers are important for validating the authenticity of an NFT. And when future buyers of Ripps, Cahen, and Does 1-5's fake NFTs review the token tracker and contract information for the RR/BAYC NFT, they will be misled into thinking that these NFTs were officially sold by Yuga Labs. Indeed Ripps has gloated that it is consumers' own fault for being confused by his fake NFTs, even though Ripps' actions lay bare that he welcomes the confusion

Complaint, ¶ 40. Plaintiff also alleges that Defendants used the BAYC Marks without authorization in other contexts, such as on various Twitter pages created by Defendants. *See* Complaint, ¶¶ 42-46.

### C. Procedural History

On July 24, 2022, Plaintiff filed a Complaint against Defendants, alleging causes of action for: (1) false designation of origin (15 U.S.C. § 1125(A)); (2) false advertising (15 U.S.C. § 1125(A)); (3) cybersquatting (15 U.S.C. § 1125(D)); (4) common law trademark infringement; (5) common law unfair competition; (6) unfair competition (Cal. Bus. & Prof. Code §§ 17200 *et seq*.); (7) false advertising (Cal. Bus. & Prof. Code §§ 17500 *et seq*.); (8) unjust enrichment; (9) conversion; (10) intentional interference with prospective economic advantage; and (11) negligent interference with prospective economic advantage.

## II. Discussion

In their Motion, Defendants seek an order striking Plaintiff's state law causes of action pursuant to California's anti-SLAPP statute, California Civil Procedure § 425.16(c), and dismissing Plaintiff's federal causes of action pursuant to Rule 12(b)(6) or, alternatively, dismissing Plaintiff's Complaint pursuant to Rule 12(b)(6).

### A. Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants argue that Plaintiff's trademark claims are insufficient. Defendants do not deny Plaintiff's ownership of and priority in the BAYC Marks or otherwise argue that Plaintiff failed to sufficiently allege trademark infringement. Instead, Defendants argue that Plaintiff's trademark infringement claims are legally insufficient under the free speech test in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and because Defendants' use

of the BYAC Marks constitute nominative fair use.[2] In its Opposition, Plaintiff argues that Defendants' RR/BAYC NFTs are not expressive works and do not warrant the application of the *Rogers* free speech test. Plaintiff also argues that Defendants' use of the BAYC Marks is not a fair use. In addition, Defendants argue that Plaintiff fails to sufficiently allege any of the other causes of action in the Complaint, which Plaintiff denies.[3]

### 1. Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

---

[2] In their Motion, Defendants identify Plaintiff's trademark infringement claims as Claims 4-7, and in their Reply, Defendants identify Plaintiff's trademark infringement claims as Claims 1-7. Because the Court has determined that the *Rogers* test does not apply in this case, Defendants' inconsistency as to which claims constitute Plaintiff's trademark claims is irrelevant to the Court's analysis.

[3] In its Opposition, Plaintiff states that "given the split of authority in California about whether unjust enrichment is a cause of action, and the Court's prior rulings on this issue, [Plaintiff] withdraws this claim but continues to seek unjust enrichment as a remedy." Opposition, 24:3-6. Accordingly, the Court **DISMISSES without prejudice** Plaintiff's eighth cause of action for unjust enrichment.

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### 2. The *Rogers* Test Does Not Apply to Plaintiff's Trademark Claims

With respect to the *Rogers* test, the Ninth Circuit in *Gordon v. Draper Creative, Inc.*, 909 F.3d 257, 260-61 (9th Cir. 2018), held, in relevant part that:

> We use the *Rogers* test to balance competing interests at stake when a trademark owner claims that an expressive work infringes on its trademark rights. The test construes the Lanham Act to apply to expressive works "only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." [875 F.2d] at 999. "[T]he balance will normally support application of the Act, unless the [use of the mark] has no artistic relevance to the underlying work whatsoever, or . . . explicitly misleads [consumers] as to the source or the content of the work." *Id.*

Under the *Rogers* tests, "[a]n artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable 'unless the use of the mark has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless it explicitly misleads as to the source or the content of the work.'" *E.S.S.*, 547 F.3d at 1099 (alternations omitted) (*quoting MCA Records*, 296 F.3d at 902).

In this case, the Court concludes that the *Rogers* test does not apply. The Ninth Circuit only applies the *Rogers* test when "artistic expression is at issue," and require defendants to make a "threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon*, 909 F.3d at 264; *see also Rogers*, 875 F.2d at 999. Although Defendants' argue that the larger RR/BAYC "project" is an expressive artistic work protected by the First Amendment, Defendants' sale of what is admittedly a "collection of NFTs that point to the same online digital images as the BAYC collection" (Motion, 6:20-21) is the only conduct at issue in this action and does not constitute an expressive artistic work protected by the First Amendment. In particular, the RR/BAYC NFTs do not express an idea or point of view, but, instead, merely "point to the same online digital images associated with the BAYC collection." Motion, 18:25-26. Indeed, even Defendants' token tracker uses an exact copy of Plaintiff's BAYC Marks without any expressive content. Complaint, ¶¶ 39-40. Similarly, Defendants' NFT marketplace sales and Ape Market website contain no "artistic expression or critical commentary." Complaint, ¶¶ 33, 37, 42-45, and 46. For example, the title of Defendants' Foundation sales page was simply "Bored Ape Yacht Club," and a Google search of "BAYC Foundation.app" resulted in a link entitled "Bored Ape Yacht Club – Foundation.app" that redirected to Defendants' Foundation sales page. Complaint, ¶ 37. In addition, Defendants' Ape Market website used a skull logo identical to Plaintiff's skull logo and was established "solely to sell their RR/BAYC NFTs alongside authentic

Yuga Labs NFTs." Complaint, ¶ 46 and 55. These are all commercial activities designed to sell infringing products, not expressive artistic speech protected by the First Amendment. Moreover, Defendants concede that the Ape Market contained no speech – artistic or otherwise – because it "never had any content." Motion, 17:10-11. Indeed, the only claimed artistic expression Defendants point to comes from beyond Plaintiff's Complaint. See Motion, 6-9. As Plaintiff points out, Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag, making the *Rogers* test inapplicable. See, e.g., *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC,* 221 F. Supp. 2d 410, 415 (S.D.N.Y. 2002).

In addition, even if the Court applied the *Rogers* test, the Court concludes that Defendants' use of the BAYC Marks is not artistically relevant to Defendants' "art." Although there is a low bar for artistic relevance, as Plaintiff points out, it is not infinitely low. For example, in *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017), the court found that using the "Empire" mark in the title of a TV show was artistically relevant, but contemplated that it would not be artistically relevant for a "pretextual expressive work meant only to disguise a business profiting from another's trademark," which is precisely what Plaintiff has alleged Defendants are doing in this case.

Moreover, even if the Court applied the *Rogers* test and concluded that the BAYC Marks are artistically relevant, the Court concludes that Defendants' use of the BAYC marks is explicitly misleading. In determining if the use of a mark is explicitly misleading, a court considers two factors: (1) "the degree to which the junior user uses the mark in the same way as the senior user"; and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *Gordon*, 909 F.3d at 270-71. In this case, Defendants admit that they have used the BAYC Marks in the same marketplaces to identify and sell NFTs bearing the exact same images underlying the BAYC NFTs and without adding any expressive content. Complaint, ¶¶ 33-47; *see also Gordon*, 909 F.3d at 270-71 (holding that "the potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions").

Furthermore, use of a senior user's mark is explicitly misleading when the mark is used "as the centerpiece of an expressive work itself, unadorned with any artistic contribution by the junior user, [which] may reflect nothing more than an effort to induce the sale of goods or services by confusion or lessen the distinctiveness and thus the commercial value of a competitor's mark." *Id*. at 271 (internal quotations omitted). In this case, Defendants concede they are using the BAYC Marks as the centerpiece of their RR/BAYC NFTs, including using "Bored Ape Yacht Club (BAYC)" to identify the RR/BAYC NFTs that "point to the same online digital images as the BAYC [NFT] collection." Motion, 6:20-21. Thus, as Plaintiff alleges, Defendants used Plaintiff's BAYC Marks to make their competing product looked identical to Plaintiff's product and ensure that the consumer was explicitly misled in the token tracker, which is the place where a consumer should be able to authenticate and verify who created the NFT. See, e.g., Complaint, ¶¶ 2, 33-47, 52. Indeed, although Defendants argue that their disclaimer on the rrbayc.com reservation site that Ripps was the creator of the RR/BAYC NFTs and that the project used "satire and appropriation" to criticize Plaintiff's BAYC collection negates any confusion, Defendants ignore the fact that they also used other websites to market and sell their RR/BAYC NFTs and those other websites did not include the disclaimer. See, e.g., Complaint, ¶¶ 35-39. Moreover, the fact that Defendants felt obliged to include a disclaimer demonstrates their awareness that their use of the BAYC Marks was

misleading.

### 3. Defendants' Use of the BAYC Marks Does Not Constitute a Fair Use

Even if a valid trademark exists, a competitor may make "fair use" of it. There are two types of fair use. The classic fair-use defense, a statutory defense, "in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevents others from accurately describing a characteristic of their goods." *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 306 (9th Cir.1992); *see also* 15 U.S.C. § 1115(b)(4). Nominative fair use, on the other hand, governs where the defendant uses a trademark to describe the plaintiff's product, rather than its own. *Id.* at 308. In explaining nominative fair use, the Ninth Circuit has held:

> We may generalize a class of cases where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one. Such nominative use of a mark-where the only word reasonably available to describe a particular thing is pressed into service-lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder.

*New Kids*, 971 F.2d at 307–308. To establish a nominative fair-use defense, a defendant must prove the following three elements:

> First, the [plaintiff's] product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiff's] product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*New Kids*, 971 F.2d at 308. This analysis involves multiple questions of fact. *See KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir.2005) (holding that there were genuine issues of fact that are appropriate for the fact-finder to determine in order to find that the defense of fair use has been established)

In this case, the Court concludes that Defendants' use of the BAYC Marks does not constitute nominative fair use. Defendants are not using the BAYC Marks to sell Plaintiff's BAYC NFTs, but to sell their own competing RR/BAYC NFTs. *New Kids*, 971 F.2d at 308 (holding that nominative fair use does not apply when a defendant uses a mark to refer "to something other than the plaintiff's product"); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010) (holding that nominative fair use allows for "truthful use of a mark, such as when a Lexus dealer uses the Lexus mark to sell Lexus vehicles at lexusbroker.com). In addition, Defendants have failed to establish all the elements of the nominative fair use defense. For example, Defendants frequently used the entirety of the BAYC Marks without modification, including the "visual trappings" of Plaintiff's brand. *Toyota Motor Sales*, 610 F.3d at 1181. Moreover, Defendants' use of the BAYC Marks "prominently and boldly," to market their RR/BAYC NFTs

"suggest[s] sponsorship." *Brother Recs., Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003).

### 4. Plaintiff's Other Claims Survive Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants argue that Plaintiff has failed to sufficiently allege the other, non-trademark federal and state causes of action alleged the Complaint. The Court concludes that the issues raised by Defendants with respect to Plaintiff's non-trademark causes of action in the Complaint are more appropriately resolved on a motion for summary judgment.

Accordingly, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is denied.

## B. Defendants' Anti-SLAPP Motion

In their Anti-SLAPP Motion, Defendants argue that Plaintiff's state law causes of action[4] should be stricken under California's anti-SLAPP statute because: (1) Defendants' RR/BAYC NFTs are protected speech made in connection with a public issue; and (2) the Complaint does not allege legally sufficient facts to support those causes of action. Specifically, Defendants argue that their RR/BAYC NFTs are performance and appropriation art that express criticism against Plaintiff's use of racists, neo-Nazi, and alt-right dog whistles. In its Opposition, Plaintiff argues that Defendants' RR/BAYC NFTs are not protected speech and Plaintiff has plausibly alleged its state law causes of action.

### 1. Legal Standard

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (*quoting Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)) (internal quotation marks omitted). Specifically, California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).

The Court must evaluate an anti-SLAPP motion in two steps. First, the defendant moving to strike must make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in [subsection (e) of]

---

[4] California's Anti-SLAPP statute "does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

the statute." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (*quoting* Cal. Civ. Proc. Code § 425.16(b)(1)). Second, "[i]f the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Navellier v. Sletten,* 29 Cal. 4th 82 (2002); see also *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 971 (9th Cir. 1999). "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (internal quotation marks omitted); *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003). "[T]hough the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Wilson*, 28 Cal. 4th at 821; Cal. Civ. Proc. Code § 425.16(b)(2). Thus, "[t]he statute 'subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim.'" *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002). "Only a cause of action that satisfies both prongs of the anti-SLAPP statute – *i.e.*, that arises from protected speech or petitioning and lacks even minimal merit – is a SLAPP, subject to being stricken under the statute." *Id.* at 89.

The anti-SLAPP motion is available in federal court. *Thomas v. Fry's Elec., Inc.*, 400 F.3d 1206 (9th Cir. 2005) (per curiam). Generally, defendants sued in federal court are entitled to bring anti-SLAPP motions to strike state law claims. *Verizon Del. Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

### 2. Defendants Failed to Demonstrate That Plaintiff's Claims "Arise From" Defendants' Protected Speech

In order to prevail in on their anti-SLAPP motion, Defendants must make a prima facie showing that Plaintiff's claims "arise from" an "act in furtherance of [their] right of petition or free speech." Cal. Civ. Proc. Code § 425.16(b) and (e); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). California courts have "interpreted the anti-SLAPP statute's 'arising from' language[ ] to mean that a claim is based on whatever conduct constitutes the 'specific act[ ] of wrongdoing' that gives rise to the claim." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017) (alteration in original) *(quoting Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 671 (2005)). "Put another way, a court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging." *Id.* (*citing Wang v. Wal-Mart Real Estate Bus. Trust,* 153 Cal. App. 4th 790 (2007)).

In their Motion, Defendants argue repeatedly that they created the RR/BAYC "project" with the specific aim of publicizing and criticizing Plaintiff's use of racist, neo-Nazi, and alt-right dog whistles. However, it is not enough for Defendants to simply state that they engaged in allegedly protected speech that is relevant to Plaintiff's claim to prevail on their anti-SLAPP motion. *See, e.g., Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017) ("[E]ven if a defendant engages in free speech activity that is relevant to a claim, that does not necessarily mean such activity is the basis for the claim"). Instead, Defendant's allegedly protected speech must form at least part of the basis of Plaintiff's claims. *Navellier*, 29 Cal. 4th 82, 89 (holding "that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such . . . [T]he critical consideration is whether the cause of action is based on the

defendant's protected free speech or petitioning activity"); *City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002) ("[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity").

In this case, the Court concludes that Plaintiff's claims do not arise out of Defendants' attempts to publicize and criticize Plaintiff's purported use of racist, neo-Nazi, or alt-right dog whistles. Indeed, despite Ripps's public criticism of Plaintiff's use of purportedly racist, neo-Nazi, and alt-right dog whistles since approximately November 2021 through Twitter, Instagram, podcasts, and the website gordongoner.com, Plaintiff has not brought claims against Defendants for defamation, slander, or libel. Instead, Plaintiff's claims are limited to and arise out of Defendant's unauthorized use of the BAYC Marks for commercial purposes. *Renewable Res. Coal., Inc. v. Pebble Mines Corp.*, 218 Cal. App. 4th 384 (2013) (explaining that "the gravamen of an action is the allegedly wrongful and injury-producing conduct that provides the foundation for the claims"); *Wang v. Wal-Mart Real Estate Bus. Trust,* 153 Cal. App. 4th 790 (2007) (holding that anti-SLAPP did not apply to a claim for breach of contract because "[t]he overall thrust of the complaint challenge[d] the manner in which the parties privately dealt with one another, on both contractual and tort theories, and d[id] not principally challenge the collateral activity of pursuing governmental approvals"). As Plaintiff makes clear in its Complaint and its Opposition, its claims are limited to Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image (Defendants admit that the RR/BAYC NFTs use pointers to the same ape cartoon images as the BAYC collection) to the same customers in the same markets as Plaintiff. Therefore, the Court concludes that Defendants have failed to make a prima facie showing that Plaintiff's claims "arise from" an "act in furtherance of [their] right of petition or free speech."

Accordingly, Defendants' Anti-SLAPP Motion is denied.

## IV.     Conclusion

For all the foregoing reasons, Defendants' Motion is **DENIED in part** and **GRANTED in part**. Defendants' Anti-SLAPP Motion is **DENIED**. Defendants' Motion to Dismiss is **DENIED**, except with respect to Plaintiff's eighth cause of action for unjust enrichment. Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's eighth cause of action for unjust enrichment, and that cause of action is **DISMISSED without prejudice**.

IT IS SO ORDERED.