# Exhibit 15

Exhibit 15
Pg. 329

KELLER / ANDERLE LLP
Jennifer L. Keller (SBN 84412)
jkeller@kelleranderle.com
Chase A. Scolnick (SBN 227631)
cscolnick@kelleranderle.com
Jay P. Barron (SBN 245654)
jbarron@kelleranderle.com
18300 Von Karman Ave., Ste. 930
Irvine, California 92612
Telephone: (949) 476-8700

UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Suite 750
Irvine, California 92614
Telephone: (949) 679-0052

*Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian*

MGA ENTERTAINMENT, INC.
Elizabeth Lachman (SBN 261644)
ELachman@mgae.com
Laurence Cheng (SBN 306299)
Laurence.cheng@mgae.com
9220 Winnetka Avenue
Chatsworth, California 91311
Telephone: (818) 894-2525

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>CLIFFORD "T.I." HARRIS, an individual; TAMEKA "TINY" HARRIS, an individual; OMG GIRLZ LLC, a Delaware limited liability company; and DOES 1 - 10 inclusive,<br><br>       Defendants, | Case No. 2:20-cv-11548-JVS-AGR<br>Assigned To: Hon James V. Selna<br><br>**PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL**<br><br>Complaint Filed: December 20, 2020<br>Trial Date: January 17, 2023 |
| GRAND HUSTLE, LLC, PRETTY HUSTLE, LLC, and OMG GIRLZ LLC,<br><br>       Counter-Claimants,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., ISAAC LARIAN and DOES 1 - 10, inclusive,<br><br>       Counter-Defendants. | |

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 330

# **TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................1

II. BACKGROUND ............................................................................................4

    A. Counter-Claimants Repeatedly Delayed And Played Games With Their Deposition Designations, Refusing to Engage in a Good Faith Exchange As Required by Local Rules, The Parties' Agreement, And This Court's Order ......................................................................................4

    B. Counter-Claimants Repeatedly Provide Revised—But Still Excess—Designations ..................................................................................5

    C. Counter-Claimants Continue To Modify Their Deposition Designations After Trial Began ......................................................................7

    D. After Unsuccessfully Attempted To Elicit Barred Testimony On Two Occasions, Counter-Claimants Present Plainly Barred Testimony From Campbell ...........................................................................................8

III. ARGUMENT .................................................................................................9

    A. Ninth Circuit Precedent Requires the Court Order a Mistrial ................9

    B. A Curative Instruction Will Not Unring the Bell Nor Alleviate the Prejudice to MGA ...............................................................................12

IV. CONCLUSION .............................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*B.K.B. v. Maui Police Dep't,*

    276 F.3d 1091 (9th Cir. 2002) ........................................................ 1, 10, 11, 13

*Lasar v. Ford Motor Co.,*

    399 F.3d 1101 (9th Cir. 2005) ................................................................ 2, 11, 13

*Mattel, Inc. v. Walking Mountain Productions,*

    353 F.3d 792 (9th Cir. 2003)........................................................................ 3, 13

ii

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 332

# I.     **INTRODUCTION**

Because of the incurably prejudicial cultural appropriation deposition testimony played to the jury by Counter-Claimants, this Court must declare a mistrial. The previously excluded testimony was nothing less than a rant by the witness about how she "stopped purchasing" the O.M.G. dolls "because [she] did not want to support a company that steals from African Americans and their ideas and profit off of it and don't give African Americans the profit;" how "hundreds of people" agree with her that the O.M.G. dolls' "idea is stolen from the OMG Girlz" because "people often steal from the black community and make money off of it;" and how the O.M.G. dolls were "stealing [O.M.G. Girlz's] likeness and making money off it, [which] happens everyday in the black community." Hearing the testimony was even worse than reading it in the cold print.

The prejudicial nature of this testimony accusing MGA of racist cultural appropriation cannot be understated. There is no unringing this bell, no way for MGA to counter the improper testimony, and no instruction the Court can give to cure this problem. The Court recognized this testimony was improper and unfairly prejudicial when granting MGA's Motion in Limine No. 3 targeted directly at this issue. Counter-Claimants introduced the testimony anyway. The Court's previous rulings, Ninth Circuit case law, and basic fairness necessitate granting this motion. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1106 (9th Cir. 2002) (reversing and remanding for a new trial after denial of a motion for mistrial based highly prejudicial evidence improperly offered by counsel).

The Court's order on Motion *in Limine* No. 3 was crystal clear that "statements regarding cultural appropriation have no bearing on any of the counterclaims, and…are accordingly immaterial and impertinent." Dkt. No. 502 at 6. Recognizing the severe, inflammatory nature of cultural appropriation and racism allegations, the Court further made clear that *any issues* regarding cultural appropriation must be raised "in advance outside the presence of the jury." *Id.*

1

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 333

This was no accident. This is the third time Counter-Claimants and their counsel have tried to introduce prohibited testimony in violation of the Court's order. Counter-Claimants' counsel, Erin Ranahan, conducted Ms. Campbell's deposition, elicited portions of the cultural appropriation testimony during the deposition, and saw Ms. Campbell testify firsthand; she was intimately familiar with Ms. Campbell's testimony before playing it this morning. While Counter-Claimants' other counsel represented to MGA's counsel that the portions of the deposition transcripts containing cultural appropriation testimony would be removed, when Counter-Claimants played the clips of Ms. Campbell's testimony that they prepared, the cultural appropriation and social media testimony remained intact. The Court's order on the Motion *in Limine* was served eleven days ago, and Counter-Claimants have been making changes to their designations throughout trial. Counter-Claimants counsel have had eleven days to remove these portions of Ms. Campbell's racism allegations from their deposition clips. Their failure to remove them in direct violation of the Court's *in liminie* ruling, contrary to their representation to MGA, and after two previous attempts to introduce prohibited evidence, leads to only one conclusion: Counter-Claimants intentionally violated the Court's order and deliberately included Ms. Campbell's cultural appropriation testimony in the deposition clips they played to the jury yesterday afternoon.

Unfortunately, the Court's proposed curative instruction will not alleviate the irreparable harm caused by Counter-Claimants' misconduct. It is the proverbial cure that is worse than the disease, and only brings more attention to Counter-Claimants' cultural appropriation argument and allegations that "MGA had stolen from the black community and culture in designing the OMG Dollz [sic]." The Ninth Circuit instructs that where curative instructions would bring additional attention to the issue, a mistrial is appropriate. *See, e.g.*, *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1115 n.13 (9th Cir. 2005). Given the racially charged nature of the testimony Counter-Claimants introduced there is no way to address the misconduct and cure the harm to

2

MGA without drawing more attention to Ms. Campbell's testimony. This is compounded by Ms. Campbell's effectively unchallengeable testimony regarding the social media comments, in which she claimed there were "hundreds of people" who agreed with her that the O.M.G. Dolls were stolen from the African-American community (this social media testimony also violates *a separate* Court order excluding such evidence as inadmissible hearsay).[1]

The proposed curative instruction also misstates the nature of this case. Counter-Claimants claim is not about "whether MGA improperly used the overall look, feel, and presentation of the OMG Girls [sic]." To prevail on their trade dress claim, Counter-Claimants must first prove whether the OMG Girlz have any trade dress rights at all. And, if they have any protectable trade dress rights, they must also prove: (1) whether some or all of the L.O.L. Surprise! O.M.G. dolls have used that trade dress; and, if so, (2) whether MGA's customers are likely to be confused as to the source or origin of some or all of MGA's dolls. *See, e.g.*, *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 808 (9th Cir. 2003). In addition to drawing more attention to the improper, effectively unchallengeable "stealing" testimony from Ms. Campbell, the Court's proposed instruction inadvertently characterizes the case in a manner that conflates the evidentiary showings required for Counter-Claimants' claims, conflicting with Ninth Circuit law and lightening Counter-Claimants' burden of proof.

Once again, Ms. Ranahan and Counter-Claimants have flouted the Federal Rules of Civil Procedure, this Court's clear order on the Motion *in Limine*, and their representations to MGA. They had eleven days to excise the testimony they played to the jury yesterday, but didn't. Ms. Campbell is not within the Court's subpoena power. Her improper testimony cannot be challenged, rebutted or cured without drawing further attention to it. MGA is now in the impossible position of remaining

---

[1] Barron Decl., Ex. 3 (RT 1/18/23 AM) at 23:17-24:21; 25:1-22; 32:4-24; Ex. 4 (RT 1/18/23 PM) at 50:1-14.

3

1  silent after these improper, baseless allegations, or changing tacks and trying to rebut

2  Ms. Campbell's allegations, drawing more attention to them in the process. This is

3  prototypical irreparable harm. Counter-Claimants are at fault for creating this

4  problem, and they should not be heard to complain about suffering any consequences

5  for their misconduct. The Court should grant this motion.

6  **II.    BACKGROUND**

7  **A.    Counter-Claimants Repeatedly Delayed And Played Games With Their**

8  **Deposition Designations, Refusing to Engage in a Good Faith Exchange**

9  **As Required by Local Rules, The Parties' Agreement, And This Court's**

10  **Order**

11  On December 5, 2022, the parties submitted their proposed Final Pretrial

12  Conference Order, which later was adopted by the Court. *See* Dkt. 421-1, 492. That

13  submission included the parties' agreement on a schedule for the exchange of

14  deposition designations: (1) designations due December 22, 2022, (2) counter-

15  designations due January 6, 2023, and (3) counter-counter designations due January

16  13, 2023. *Id.* The Final Pretrial Conference Order requires the parties to exchange

17  only the deposition designations "they intend to present as evidence in accordance

18  with L.R. 16-2.7." *Id.* at 25:14-15.

19  Counter-Claimants did not provide a list of its deposition designations in good

20  faith. Instead, on December 22nd, Counter-Claimants provided a flash roll of over

21  107-pages of page/line numbers across 20 deposition sessions. Scolnick Decl., ¶ 2;

22  Barron Decl., ¶ 2. For many witnesses, Counter-Claimants designated nearly the

23  entire transcript.

24  MGA immediately objected to Counter-Claimants overbroad designations

25  given their extreme overbreadth and asked Counter-Claimants' counsel, Erin

26  Ranahan, to provide revised designations compliant with the rules by December 27th.

27  Barron Decl., ¶ 2, Ex. 1. In response, Ms. Ranahan asserted Counter-Claimants'

28  designations were "proper" and that she had "no specifics about what you consider

4

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 336

1   improper about our designations." *Id.*  She insisted on a meet-and-confer call but the

2   earliest opportunity on which Counter-Claimants' counsel made themselves available

3   was January 2nd.  During that call, Ms. Ranahan conceded Counter-Claimants had

4   "over-designated" and did not actually intend to play the over 60 hours of video

5   testimony suggested by their designations.  *See* Dkt. 472-1 at ¶ 4; *see also id*.  But

6   she still refused to serve revised designations.  And despite MGA's urging that the

7   matter needed immediate action from Counter-Claimants, Ms. Ranahan insisted the

8   issue should be tabled until after the January 5th Final Pretrial Conference.  *Id*.

9   Following the meet and confer, MGA filed their Objections and Request to strike

10  Counter-Claimants' Deposition Designations.  *See* Dkt. 472.

11       At the January 5th Final Pretrial Conference, MGA raised the issue and asked

12  for the Court's guidance given Counter-Claimants' persistence in maintaining their

13  overbroad designations.  The Court ordered the parties to meet and confer about the

14  availability of the witnesses for whom Counter-Claimants designated deposition

15  testimony and about designations in general.

16  **B.    Counter-Claimants Repeatedly Provide Revised—But Still Excess—**

17  **Designations**

18       On January 6, the parties agreed to push the exchange of counter-designations

19  to January 9, in part due to MGA's need to insert counter-designations to Counter-

20  Claimants' flash roll of designations.  On January 9, after undertaking the laborious

21  and burdensome task of completing those counter-designations, MGA provided them

22  to Counter-Claimants as promised.  The parties also submitted a joint report to the

23  Court regarding the availability under Federal Rule of Civil Procedure 32 of the

24  individuals for whom designations were submitted.  Counter-Claimants continued to

25  list 16 witnesses (comprised 18 deposition transcripts) who they intended to call by

26  deposition designations, including Breaunna Womack.

27       The next day, January 10th, at 10:18 p.m.—one week before trial—Counter-

28  Claimants sent MGA what they styled as their "Amended Depo Designations."

5

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 337

Scolnick Decl., ¶ 3; Barron Decl., ¶ 3. These amended deposition designations still contained 56 pages of page/line designations and remained excessive and improper. *See* Dkt. 498; *see also id.* Then, on January 12th, Counter-Claimants sent yet another version of their amended deposition designations. *Id.* The parties also filed a Joint Report Re Parties' Further Discussion re Depositions Designations later that day. *Id.*

Then, on Friday, January 13th, counsel for the parties engaged in a meet and confer call. Scolnick Decl., ¶ 4; Barron Decl., ¶ 4. Chase Scolnick and Jay Barron participated for MGA, and Chante Westmoreland participated for Counter-Claimants. *Id.* MGA's counsel expressed concern that Counter-Claimants' designations were still excessive and that MGA was not informed of what had been changed. *Id.* In essence, they were forcing MGA to engage in the same burdensome process all over again, only days before trial.

During the call, Ms. Westmoreland also expressly confirmed that Counter-Claimants would ensure that all of their updated deposition designations would be fully compliant with the Court's final rulings on the various motions *in limine*, which had just been issued and released to that parties that morning, and would not be played at trial. *See id.*; *see also* Dkt. No. 502. Those rulings include the Court's order on MGA's Motion *in Limine* No. 3 to exclude any testimony, evidence, or referenced to cultural misappropriation or racism. *See* Dkt. No. 502 at 6. The Court expressly warned: "In addition to the Court's general admonition in bold below, counsel shall advise each witness of this portion of the Order specifically. Veiled, calculated remarks are no less objectionable than the attribution of the outright racist statements. If there is any doubt that specific inquiries will run afoul of the Court's rulings, counsel shall raise the issue in advance outside the presence of the jury." *Id.*

Later on January 13th, MGA filed its affirmative designations to the deposition of defendant Clifford Harris. *See* Dkt. No. 505. In that filing, MGA also updated the Court on the state of Counter-Claimants' designations and asked for various relief on the issue. *Id.*

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 338

## C. Counter-Claimants Continue To Modify Their Deposition Designations After Trial Began

Trial began on January 17. That morning, the Court heard argument on various matters. With respect to deposition designations, the Court limited Counter-Claimants to 300 pages of designations. See Barron Decl., Ex. 2 (RT 1/17/23 AM) at 48:22-24. The Court also required Counter-Claimants' to prioritize their designations and submit the "pared-down designations and objections" three days before any deposition is played. *Id.* at 49:1-11.

From January 17-19, Counter-Claimants periodically sent updated designations for several witnesses, including Christina Robinson, Breaunna Womack, Paula Garcia, Lora Stephens, Maxine Wagner, Moneice Campbell, and Maia Smith. Barron Decl., ¶ 5. Counter-Claimants asked MGA to prioritize the designations in that order. *Id.*

MGA sent Counter-Claimants counter-designations for Robinson on January 18th, and Counter-Claimants submitted that to the Court the next day. *Id.* ¶ 6. MGA also sent Counter-Claimants counter-designations for Womack (two volumes) and Garcia on Thursday, January 19th. *Id.* Counter-Claimants acknowledged receipt of those counter-designations that afternoon and filed Garcia—but not Womack—the following night. *Id.* Counter-Claimants also provided—for the first time—the charts of updated designations for Stephens, Wagner, Campbell, and Smith on Thursday, January 19th. *Id.* MGA sent Counter-Claimants objections and counter-designations for Stephens on Saturday, January 21st,[2] and MGA sent Counter-Claimants objections and counter-designations for Wagner, Campbell, and Smith on Sunday, January 22nd.[3] *Id.* These final sets of objections and counter-designations would have been provided even sooner had Counter-Claimants not first asked that the two-volume

---

[2] Counter-Claimants filed the Lora Stephens designations on Sunday, January 22nd.

[3] When submitting the deposition transcripts to the Court, Counter-Claimants appear to have filed them publicly in violation of the protective order in this case.

1  deposition of Womack be prioritized, despite Counter-Claimants' concealed

2  intention to call Womack as a live witness (which was first disclosed on Saturday,

3  January 22nd).

4       On Monday, January 23rd, Counter-Claimants filed the remaining set of

5  designations and objection, which were for the consumer witnesses, i.e., Wagner,

6  Campbell, and Smith. Later that day, Counter-Claimants asked the Court for an

7  urgent phone call to discuss the fact that Counter-Claimants had no witness to present

8  on January 24th unless the Court reviewed and ruled on the deposition designations.

9  Barron Decl., ¶ 7. The Court stated it would review and rule on the deposition

10 designations as quickly as possible.

11 **D.**     **After Unsuccessfully Attempted To Elicit Barred Testimony On Two**

12         **Occasions, Counter-Claimants Present Plainly Barred Testimony From**

13         **Campbell**

14      As the Court is aware, Counter-Claimants played deposition testimony from

15 Moneice Campbell on January 24th that plainly and repeatedly violated the Court's

16 order on MGA's MIL No. 3 re Cultural Misappropriation. The testimony was

17 objected to by MGA in its counter-designations, either specifically because it violated

18 the order on MIL No. 3 or other grounds including FRE 403.

19      Counter-Claimants' presentation of this prohibited testimony was no accident.

20 Notably, some of the offending testimony from Ms. Campbell was previously

21 undisclosed testimony added by Counter-Claimants as part of their purported

22 objections to MGA's counter-designations. For example, Counter-Claimants ***added***

23 testimony from page 153, lines 17-22 of Campbell's testimony stating, "I feel like

24 they did that for that specific, like, culture – like pop culture because they – they

25 asked African American people how to pop, want to take style, want to wear

26 extensions, all of that . . ." See, e.g., Dkt. 540; Barron Decl., ¶ 8. This designation

27 was not disclosed to MGA before the designations were filed on January 24th. *Id.*

28 Nor did MGA get an opportunity to object to it. And, critically, it shows that playing

8

CASE NO. 2:20-CV-11548-JVS-AGR

PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR M...

Exhibit 15
Pg. 340

1 the prohibited testimony was no mistake. Indeed, Counter-Claimants were adding

2 prohibited testimony never disclosed to MGA on the day before they played it in

3 court to the jury.

4      The Campbell testimony was the culmination of Counter-Claimaints'

5 persistent effort and plan to evade the Court's MIL orders. First, on January 19th, Ms.

6 Ranahan attempted to elicit testimony from Tameka Harris about other allegations of

7 infringement against MGA, which plainly barred the Court's ruling on MIL No. 2.

8 *See* Barron Decl., Ex. 5 (RT 1/19/23 PM) at 21:20-22:10, 64:13-65:25. Then, on

9 January 20th, Counter-Claimants attempted to elicit testimony from Windelyn

10 Osborne about cultural misappropriation that would have plainly barred the Court's

11 order on MIL No. 2. *See* Barron Decl., Ex. 6 (RT 1/20/23 AM) at 122:2-8, 123:16-

12 125:11. Specifically, Counter-Claimants wanted to elicit testimony from Ms.

13 Osborne that she did not purchase any more L.O.L. Surprise! O.M.G. dolls because

14 she felt it was an attempt to "steal from her community" based on her "personal

15 knowledge by being a member of the black community about what she has

16 experienced in the black community." *Id*.

17      Both of Counter-Claimants' prior attempts to evade the Court's rulings were

18 thwarted. But, by presenting Campbell's testimony, Counter-Claimants

19 surreptitiously snuck in barred and highly prejudicial testimony which has irreparably

20 tainted the fairness of this trial.

21 **III.**   **ARGUMENT**

22 **A.**    **Ninth Circuit Precedent Requires the Court Order a Mistrial**

23      Under Ninth Circuit precedent, Counter-Claimants' misconduct here

24 necessitates the Court order a mistrial. Ms. Campbell's testimony about cultural

25 appropriation and the "hundreds" of social media comments agreeing with her

26 constitute highly charged racial allegations against MGA in direct violation of the

27 Court's motion *in limine* ruling. She (falsely) accused MGA of stealing from the

28 African-American community to create the O.M.G. Dolls on multiple occasions,

9

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 341

1  interwoven with testimony that "hundreds of people" on social media agreed with her

2  belief.  *See* Campbell Dep. Tr. 151-152.  As the Court concluded at the end of the

3  trial day, portions of Ms. Campbell's deposition played by Counter-Claimants

4  violated the Court's order.  *See, e.g.*, Barron Decl., Ex. 7 (RT 1/24/2023 PM) at 17:3-

5  13.  But, there is no way for MGA to rebut or challenge these statements without

6  drawing further attention to them, and no way for the Court to cure the prejudice to

7  MGA without drawing attention to them as well.

8      Given the profound prejudice caused by Counter-Claimants' presentation of

9  the cultural appropriation testimony, a mistrial is necessary.  In a directly analogous

10  case, *B.K.B. v. Maui Police Department*, 276 F.3d 1091 (9th Cir. 2002), the Ninth

11  Circuit concluded a curative instruction would be insufficient given the "highly

12  prejudicial" nature of the improper testimony introduced, and reversed the district

13  court's denial of a mistrial motion, remanding the case for a new trial.  *Id.* at 1105-

14  06.  In *B.K.B.*, the plaintiff filed a sexual harassment claim against the Maui Police

15  Department.  *Id.* at 1095-96.  At trial, the defendants "flouted the[] procedural

16  guidelines" and twice tried to offer evidence of the plaintiff's sexual practices and

17  history; the trial court rejected both attempts.  *Id.* at 1104.  As the Ninth Circuit

18  described it:

19  > Having failed in two previous motions to obtain the court's approval to
20  > introduce Rule 412 material, the defendants instead simply sprang the
21  > offending testimony upon the court and then misrepresented the nature of
22  > Becraft's testimony to the trial judge in response to plaintiff's objections that
     > the defense intended to violate Rule 412.

23  *Id.* at 1104–05.  The plaintiff moved for a mistrial, but the district court denied the

24  motion and gave a curative instruction instead.  *Id.* at 1103-06.  The Ninth Circuit

25  reversed, finding that "*no matter what the instruction,* it was impossible to dispel the

26  effect of [the witness's] lurid and prejudicial testimony."  *Id.* at 1105-06 (emphasis

27  added).  Because the defendant "failed to establish that the probative value" of the

28  improper "testimony substantially outweighed its prejudicial effect," the Ninth

10

1    Circuit reversed the district court's decision denying the mistrial motion and

2    remanded for a new trial. *Id.* at 1106.

3        The testimony and conduct of Counter-Claimants' counsel is identical to that

4    from *B.K.B.* As in *B.K.B.*, Counter-Claimants have tried multiple times to introduce

5    cultural appropriation evidence and social media posts supporting their allegations.

6    And, like in *B.K.B.*, the Court has rejected those attempts in written and oral rulings.

7    *See, e.g.*, Dkt. 502; Barron Decl., Ex. 3 (RT 1/18/22 AM) at 23:17-24:21; 25:1-22;

8    32:4-24; Barron Decl., Ex. 4 (RT 1/18/22 PM) at 50:1-14. Finally, just like the *B.K.B.*

9    attorneys, when presented with the opportunity, Counter-Claimants' counsel

10   prepared and "simply sprang" deposition clips that included forbidden testimony and

11   included *additional* cultural appropriation testimony without even giving MGA a

12   chance to object.

13       Likewise, the Court already concluded there is *no probative value whatsoever*

14   to the cultural appropriation testimony. As the Court ruled on MGA's Motion to

15   Strike and again affirmed in its ruling on Motion in Limine No. 3 "statements

16   regarding cultural appropriation have no bearing on any of the counterclaims,

17   and…are accordingly immaterial and impertinent." Dkt. No. 502 at 6. Moreover,

18   the Court recognized the highly prejudicial nature of cultural appropriation and

19   racism allegations, ruling that *any issues* regarding cultural appropriation must be

20   raised "in advance outside the presence of the jury." *Id.* This case is procedurally

21   identical to *B.K.B.*, and, per the Ninth Circuit's ruling there, Counter-Claimants'

22   springing of improper, highly prejudicial testimony with zero probative value here

23   require this Court order a mistrial. *B.K.B.*, 276 F.3d at 1105-06; *see also Lasar v.

24   Ford Motor Co.*, 399 F.3d 1101, 1114–15, n.13 (9th Cir. 2005) (holding "[a] mistrial

25   was appropriate because the in limine order prohibiting references to [the excluded

26   evidence] was 'specific in its prohibition and the violation [was] clear").

27       A mistrial is particularly appropriate here given this was a willful violation of

28   multiple Court orders by Counter-Claimants. There can be no legitimate dispute

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 343

1    Counter-Claimants intended to play all of the improper testimony in front of the jury.

2    The Court issued its ruling eleven days ago, on January 13, 2023, after which MGA's

3    counsel immediately pressed Counter-Claimants' counsel to confirm they would

4    remove the portions of the deposition testimony regarding cultural appropriation.

5    Counter-Claimants represented that the portions of the deposition transcripts

6    containing cultural appropriation testimony would be removed.

7         But Counter-Claimants did not remove the improper testimony.  Rather, they

8    *added more cultural appropriation testimony* instead.   Counter-Claimants': (1)

9    failure to remove the prohibited testimony, in direct violation of the Court's *in limine*

10   ruling; (2) addition of more cultural appropriation testimony; and (3) reneging on

11   their agreement with MGA that they would remove all of the prohibited testimony;

12   and (4) their multiple previous attempts to introduce prohibited testimony in violation

13   of one or more Court orders leads to only one conclusion:   Counter-Claimants

14   intentionally included Ms. Campbell's cultural appropriation and social media

15   testimony in the deposition clips they played to the jury yesterday.

16   **B.**    **A Curative Instruction Will Not Unring the Bell Nor Alleviate the**

17          **Prejudice to MGA**

18        The improper testimony Counter-Claimants presented was not an errant

19   comment or minor mistake.  Ms. Campbell's testimony continued at length, angrily

20   and repeatedly explaining why she believed the dolls constituted cultural

21   appropriation.  Not only did she believe it, but she also testified that "hundreds of

22   people" who posted on social media believed it as well.  Tr. 151-153.  There can be

23   no dispute that cultural appropriation is a sensitive subject in American society.  Ms.

24   Campbell's testimony on this subject was emotional and passionate, and the jury has

25   now had the opportunity to reflect on it overnight.  This is not an ordinary case where

26   a curative instruction could possibly cause the jury to put the testimony aside.  Any

27   instruction will need to focus on—and remind the jury of—the improper portion of

28   Ms. Campbell's testimony accusing MGA of "stealing" from the African-American

CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 344

1   community, profiting off of African-American culture, and the hundreds of people

2   on social media who agree with her.  In other words, rather than alleviate the prejudice

3   caused by Counter-Claimants' violation of this Court's order, any instruction—

4   including the Court's proposed instruction circulated to counsel—would compound

5   the error by reiterating Ms. Campbell's inflammatory accusations.  *B.K.B.*, 276 F.3d

6   at 1105-06 (curative instruction insufficient and new trial necessary given highly

7   prejudicial nature of improper testimony adduced during trial); *see also Lasar*, 399

8   F.3d at 1115 n.13 (curative instructions should not emphasize the error).

9          The Court's proposed curative instruction also misstates the nature of this case.

10  Counter-Claimants claim is not about "whether MGA improperly used the overall

11  look, feel, and presentation of the OMG Girls".  To prevail on their trade dress claim,

12  Counter-Claimants must first prove whether the OMG Girlz have any trade dress

13  rights.  And, if they have any protectable trade dress rights, they must also prove: (1)

14  whether some or all of the L.O.L. Surprise! O.M.G. dolls have used that trade dress;

15  and, if so, (2) whether MGA's customers are likely to be confused as to the source or

16  origin of some or all of MGA's dolls.  *See, e.g.*, *Mattel, Inc. v. Walking Mountain*

17  *Productions*, 353 F.3d 792, 808, n.14 (9th Cir. 2003) (listing elements of trade dress

18  infringement); Ninth Cir. Model Jury Instr. 15.7 (same).  In addition to drawing more

19  attention to the improper, effectively unchallengeable testimony from Ms. Campbell,

20  the Court's proposed instruction inadvertently characterizes the case in a manner that

21  conflates the evidentiary showings required for Counter-Claimants' claims,

22  conflicting with Ninth Circuit law.

23  **IV.   CONCLUSION**

24         Since trial began, Counter-Claimants and their counsel have violated and tried

25  to violate this Court's evidentiary rulings with impunity. This time their misconduct

26  caused irreparable prejudice to MGA that cannot be cured.  There is no way to unring

27  the bell of the jury's hearing Ms. Campbell's emotionally charged accusations that

28  MGA has been "stealing" from the African-American community with its O.M.G.

13

1    Dolls, and that there are "hundreds of people" on social media who agree with her.

2    Her improper testimony cannot be challenged, rebutted or cured without drawing

3    further attention to it.  MGA is now in the impossible position of remaining silent

4    after these improper, baseless allegations, or changing tacks and trying to rebut Ms.

5    Campbell's allegations, drawing more attention to them in the process.   This is

6    prototypical irreparable harm.  There is only one way to cure the prejudice caused by

7    Counter-Claimants' intentional misconduct:  the Court should grant a mistrial.

8

9
     Dated: January 25, 2023              KELLER/ANDERLE LLP
10

11                                  By: _____

12                                       Chase A. Scolnick

                                         Attorneys for Plaintiff and Counter-
13                                       Defendant MGA Entertainment, Inc., and
                                         Counter-Defendant Isaac Larian
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         14
CASE NO. 2:20-CV-11548-JVS-AGR
PLAINTIFF AND COUNTER-DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF ORAL MOTION FOR MISTRIAL

Exhibit 15
Pg. 346

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian, certifies that this brief contains 4,131 words, which complies with the word limit of L.R. 11-6.1

Dated: January 25, 2023                KELLER/ANDERLE LLP

By: _____

Chase A. Scolnick

Attorneys for Plaintiff and Counter-Defendant MGA Entertainment, Inc., and Counter-Defendant Isaac Larian

Exhibit 15
Pg. 347