ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants and
Counterclaim Plaintiffs
RYDER RIPPS and JEREMY CAHEN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| YUGA LABS, INC., <br><br> Plaintiff and <br> Counterclaim Defendant, <br><br> v. <br><br> RYDER RIPPS, JEREMY CAHEN, <br><br> Defendants and <br> Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM <br><br> **DISCOVERY MATTER** <br><br> **LOCAL RULE 37 JOINT STIPULATION RE YUGA LABS, INC.'S MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE** <br><br> Magistrate Judge: Hon. John E. McDermott <br> Motion Hearing Date: March 21, 2023 <br> Motion Hearing Time: 10:00 AM <br> Discovery Cutoff Date: April 3, 2023 <br> Pre-Trial Conference Date: June 9, 2023 <br> Trial Date: June 27, 2023 |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: 202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

# TABLE OF CONTENTS

**YUGA LABS' INTRODUCTORY STATEMENT** ................................................. 2

**DEFENDANTS' INTRODUCTORY STATEMENT** ........................................ 4

**ISSUES IN DISPUTE** ........................................................................... 6

      A.     Defendants' Spoliation of Material Evidence ....................................... 6

**Yuga Labs' Introductory Statement**

Defendants have represented that they have produced everything relevant to this litigation and "emptied their files," with nothing left to give. Declaration of Ethan Thomas ("Thomas Decl.") Ex. 3. As ordered by the Court on January 10, 2023 (*Id*. Ex. 4), Ripps verified under penalty of perjury that he "produced all responsive documents" that he could locate and does "not have any further documents left to produce in response to Plaintiff's discovery requests." *Id*. Ex. 5. Yet despite these representations, both Defendants have (or had) possession of more responsive, material evidence while this litigation was pending than they have produced. For instance, in its memorandum filed on January 10, 2023, Yuga Labs identified categories of documents that it believed existed based on its investigation and discovery produced by third parties, including:

- Text messages between Ripps and Cahen;
- Text messages between Cahen and Defendants' software developer, Tom Lehman;
- Text messages between Ripps/Cahen and Defendants' software developer, Ryan Hickman;
- Emails (or other correspondence or documents) related to Defendants' registration of the domains in dispute, including rrbayc.com and apemarket.com;
- Private Discord channels relating to RR/BAYC, Ape Market, Yuga Labs, and/or BAYC NFTs, such as the private Discord channel between Cahen and Hickman; and
- Private Twitter direct messages between Defendants.

*Id*. Ex. 6 ¶ 5.

In a January 19 email, and again in a January 25 letter, Yuga Labs brought these missing documents to Defendants' attention. *Id*. Ex. 3, Ex. 7. Defendants purported to conduct another search and, on February 2, 2023, produced additional

materials (despite Ripps' previous sworn verification, as ordered by the Court, that he already produced all materials found through a reasonable search), purporting to reflect "the full universe of responsive materials within their possession[,]" but still failed to address these concerns.  *Id*. Ex. 8.  Moreover, what they *did* produce were direct Twitter messages with one of four members of "THE RRBAYC TEAM" (in Ripps' own words) that Yuga Labs had *already* received from that team member— but that Ripps repeatedly failed to produce.  *Id*. ¶ 10*, id*. Ex. 9.  There is no justification for having refused to produce those messages at the outset.[1]  On February 6, 2023, the parties met and conferred about the insufficiency of the production, and Defendants continued to maintain they had no further documents to produce.  *Id*. ¶ 12.

Accepting Defendants' representations (and Ripps' sworn statement) that there are no further materials to produce, the only conclusion is that Defendants have destroyed this evidence to the irreparable and severe prejudice of Yuga Labs.  That Defendants had a motive to destroy evidence is undeniable — the messages that Yuga Labs *has* seen reveal a rampant disregard, and at times disgust, for the "average joe" and whether Defendants' "scam"[2] would confuse consumers, and they have laughed about how confusing Ape Market is.  *See, e.g.*, *id*. Ex. 12 ¶ 17, Ex. 13 at 106-108, Ex. 14 at 116.  This is what is revealed by the documents that Yuga Labs has been able to discover (primarily because a third party produced them).  Yuga Labs (and the Court, and eventually the jury) are left to wonder what Defendants' most private communications with each other reveal.

---

[1] Indeed, Yuga Labs had been seeking these documents for months, and brought these missing documents to Defendants' attention as early as November 16, 2022.  *Id*. Ex. 10 (seeking "[a]ll text, SMS, Signal, Telegram, Discord, or other forms of communication amongst Ripps, Cahen, Ryan Hickman, and/or Tom Lehman").  And Yuga Labs again sought these documents in its December 27, 2022 Motion to Compel, which resulted in a court order requiring Ripps to verify that he didn't have them.  *Id*. Ex. 11, Ex. 4.

[2] Their own developer has called the RR/BAYC NFTs a "scam."  *Id*. Ex. 12 ¶ 17.

**Defendants' Introductory Statement**

This motion is the latest chapter in Plaintiff Yuga Labs' campaign of litigation harassment against Defendants.[3]   Defendants—two individuals—have done everything in their power to be open and transparent in this litigation, collectively spending over 100 hours to collect and produce documents.  As a result, Defendants have produced ***hundreds of thousands*** of private communications, going far beyond the obligation to conduct a reasonable search for responsive documents proportional to the needs of this case.  Despite these efforts, Yuga argues that Defendants should be sanctioned because they did not produce their own copies of documents and communications that Yuga has already obtained from a third party (and for which there can be no meaningful claim of prejudice).  Yuga's motion should be denied because Defendants search has been more than reasonable and proportionate.

Yuga's motion should also be denied because it is based on the deeply flawed premise that, because Defendants did not locate the specific documents cited in their motion, they ***must*** have been destroyed.  A much more reasonable inference (and the truth) is that despite their extensive search efforts, Defendants simply could not find every single communication they had about the RR/BAYC project.  What Defendants ***did*** do, however, was repeatedly ask Yuga during meet and confer correspondence what documents it believed were missing.  Despite those requests, Yuga never provided that specific information, relying instead on broad categories of documents, only to reveal the specifics when it served its section of this joint stipulation.  Yuga's refusal to identify specific documents appears to have been engineered to manufacture a controversy to serve as a pretext for this motion.

Had Yuga identified what specific documents it was seeking (*i.e.* the specific discord chats, text messages, and emails now identified in their motion), Defendants

---

[3] Previous chapters included seeking a protective order for depositions based on a frivolous claim that the deponents were "apex witnesses" and moving to compel documents without first meeting and conferring. Dkt. 77.

would have gone back to their files to try to locate those exact documents.   That is what Defendants have done in response to Yuga finally identifying those documents in this Joint Stipulation.  Although the vast majority of the documents Yuga identified are irrelevant (as explained below), Defendants have nonetheless produced them for the sake of transparency.  The fact that these materials have been produced directly refutes Yuga's claim that Defendants have destroyed evidence and voids any argument that Yuga has for seeking default judgment, adverse inferences, or a deeply invasive and privacy-trampling inspection of Defendants' personal devices.

Yuga also falsely complains that Defendants have destroyed all communications between Ryder Ripps and Jeremy Cahen.  Defendants possess these communications, but, unsurprisingly, their relevant communications in anticipation of and after the initiation of litigation are all protected by the attorney-client privilege and work product protection.  Yuga does not have a right to invade Defendants' privileged communications about this litigation.  And the parties are currently in the process of exchanging privilege logs, which renders this issue (at best) premature.

In addition to being pretextual, Yuga's motion is also hypocritical, since Yuga itself  has produced ***fewer than 200 non-public documents*** to date (and as of today continues to withhold its private Discord chat, which includes conversations regarding the transfer of intellectual property rights relevant to Yuga's trademarks).

This needless motion practice could have been avoided had Yuga—consistent with the Court's prior admonition[4]—conferred about this issue as required by the Local Rules.  But Yuga has repeatedly refused to do so, and instead chosen to pursue a scorched earth litigation strategy that leverages its significantly greater resources against two individual defendants.  Yuga's motion should be denied.

---

[4] Dkt. 77 at 1.

**Issues in Dispute**

    **A.**    **Defendants' Spoliation of Material Evidence**

          **1.**    **Yuga Labs' Position**

               **a.**    **Legal Standard**

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009).  The burden of proof for spoliation is a preponderance of the evidence.  *See Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052–53 (S.D. Cal. 2015).  "[I]f spoliation is proven, the burden shifts to the spoliating party to prove the lost information is not prejudicial." *Youngevity Int'l v. Smith*, No. 3:16-CV-704-BTM-JLB, 2020 WL 7048687, at *3 (S.D. Cal. July 28, 2020).

Federal courts can sanction parties for spoliating evidence under both their inherent power to curb abusive litigation practices and the authority of Fed. R. Civ. P. 37 to sanction a party that "fails to obey an order to provide or permit discovery." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting Fed. R. Civ. P. 37(b)(2)(A)).  Sanctions may include an adverse inference against the spoliating party, default judgment, and/or an award of attorneys' fees.  A party seeking "an adverse inference instruction based on the destruction of evidence must establish[:] (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989-90 (N.D. Cal. 2012); *Reinsdorf v. Skechers U.S.A. Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013).  Those elements are easily met here.

### b.  Defendants Destroyed, or at Least Failed to Preserve, Evidence

Throughout the course of discovery, it has become clear that Defendants had relevant evidence in their possession at one point that they have not produced. Based on their counsel's representation that they have both "emptied their files" and Mr. Ripps' sworn verification that he has nothing further to produce, it is evident that (if they are not willfully withholding material evidence) they have spoliated evidence. Thomas Decl. Exs. 3, 5. The categories of information where Yuga Labs has corroborating evidence (notwithstanding Defendants' attempts to conceal the existence of this evidence) that Defendants once had these documents in their possession, custody, or control include:

- <u>Text messages between Cahen and Tom Lehman</u>. Tom Lehman produced numerous text messages with Cahen from April 11, 2022 through at least September 26, 2022. Thomas Decl. ¶ 17. In these messages, Cahen and Lehman discuss, *inter alia*, confusion among consumers with regard to Yuga Labs' logo, and making changes to their marketing to avoid infringing on Yuga Labs' marks. *Id*. Ex. 14. Additionally, Cahen corroborated this when he testified in his deposition that he communicated with Lehman by text message. *Id*. Ex. 15 at 13:11-14. Defendants have produced none of these messages.

- <u>Text messages between Ripps and Ryan Hickman</u>. Ryan Hickman testified in his deposition that he corresponded with Cahen via text message, including during and about this litigation. *Id*. Ex. 16 at 84:21-85:1. Defendants have produced none of these messages.[5]

- <u>Messages between Defendants</u>.    Both Defendants testified in their

---

[5] Hickman, also a third party to this action, has not produced any of these communications either, although a motion to compel his records which he refused to produce is currently pending in the District of Nevada. *See Yuga Labs Inc. v. Ripps et al.*, 2:23-cv-00010-APG-NJK (D. Nev.).

depositions that they corresponded with each other via text message. *Id*. Ex. 15 at 68:6-14 and Ex. 17 at 271:20-25; 274:7-13. Defendants have produced none of these messages. The record is also replete with examples of Defendants' use of social media, specifically Twitter and Discord. Thomas Decl. ¶ 21. Although Defendants have produced some private Discord and Twitter messages (*see, e.g.*, *id*. ¶ 10), they did not produce any private messages exclusively with each other.[6] Similarly, although there is evidence of a variety of email addresses Defendants have used (*see, e.g.*, *id*. Ex. 17 at 11:11-16, Ex. 15 at 12:5-18), they have produced no emails between them. Defendants have not claimed that these messages are irrelevant to this case, and given the content and frequency of other messages between the two (e.g., in group chats) that Defendants and third parties have produced, as well as Defendants' prolific use of social media and Ripps' production of social media and email messages with third parties, Yuga Labs expects that some, if not most of the missing texts, social media messages, and emails, are relevant.

- Emails regarding the registration of infringing domain names. Ripps testified in his deposition that he registered the domain names rrbayc.com and apemarket.com, registering the latter at the end of December 2021. *Id*. Ex. 17 at 36:18-37:5. Additionally, Cahen stated in a Discord group chat with Ripps and others that "we have the apemarket.com domain as well." *Id*. Ex. 13 at 105. Lehman testified that "Defendants planned to use RR/BAYC NFTs to help launch Ape Market." *Id.* Ex. 12 at ¶ 10. As alleged in the Complaint, these domain names infringe on Yuga Labs' marks. *Id*. Ex. 18 ¶¶ 77-85. The public registration for apemarket.com

---

[6] Notably, Defendants withheld and did not produce their group Discord messages with Lehman and Hickman relating to the development of a marketplace to sell RR/BAYC NFTs, which were clearly relevant to this case, until a third party had already produced this material. *Id*. ¶ 21.

reveals that Defendants made *some* change to the domain information on December 28, 2022, after the litigation was initiated, but Defendants have produced no evidence related to the change. *Id.* Ex. 19.  Indeed, Defendants have not produced any communications (such as emailed confirmations of registration, invoices, or payment confirmations) related to the registration of those infringing domains.

- <u>Private Discord communications between Cahen and Tom Lehman</u>.  Tom Lehman produced private Discord messages between himself and Cahen from May 23-24, 2022, and a private group chat among Lehman, Cahen, Hickman, and another individual from June 23, 2022.  *Id*. Exs. 20 and 21. Both of these discussions relate to the development of platforms to sell RR/BAYC NFTs.   Defendants have produced none of these discord communications.

- <u>Private Discord communications between Cahen and Ryan Hickman</u>.  Ryan Hickman testified in his deposition that he communicated with Cahen via a private chat on Discord in relation to this lawsuit.  *Id*. Ex. 16 at 38:6-41:19.  Defendants have produced none of these Discord communications.

The evidence Yuga Labs has received in discovery points to gaping holes in Defendants' production, and their numerous assertions that they have produced all evidence in their possession demonstrate that they have either destroyed these documents or are in violation of the Court's Order.  *Id*. Ex. 4.

### c.   Defendants Had an Obligation to Preserve This Evidence

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *World Courier v. Barone*, No. C 06-3072 TEH, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007).  "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which

it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). This duty attaches when "a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Apple Inc.*, 888 F. Supp. 2d at 990.

Defendants were on notice of their duty to preserve on December 6, 2021, when Ripps indicated he was re-minting Yuga Labs' NFTs as a "test" because he "would like to get sued." Thomas Decl. Ex. 22. Accordingly, he was on notice to preserve documents from the date he formed that intent. Likewise, Defendants received a number of trademark infringement takedown notices from Yuga Labs in May and June 2022, which put them on notice to the possibility of trademark litigation. *See, e.g.*, *Id*. ¶ 27. As early as June 3, 2022, in their private "Team Ape Market" discord channel (which Yuga Labs only first received after serving a subpoena on Lehman), Defendants started joking with one another that Yuga Labs could not do anything to stop them, other than sue them. *Id*. Ex. 13 at 109. By June 23, 2022, Defendants understood they were infringing Yuga Labs' trademark and "may just need to change the skull [i]f we want to fight trademark." *Id.* at 110. By June 24, 2022, before they knew of Yuga Labs' lawsuit, they were considering that rrbayc.com might "ultimately" be taken down because of the "trademark issue." *Id.* at 111. They then learned of the lawsuit on the day it was filed. *Id.* Therefore, at the very latest, Defendants were on notice of their duty to preserve evidence when this litigation commenced on June 24, 2022.

### d. Defendants Destroyed Evidence with a Culpable State of Mind

To prove spoliation, Rule 37(e) requires that "the party acted with the intent to deprive another party of the information's use in the litigation." While this Rule does not define "intent," courts in the Ninth Circuit have found that "'intent' means the evidence shows, or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations. *Facebook, Inc. v. OnlineNIC Inc.*, No.

19-CV-07071-SI (SVK), 2022 WL 2289067, at *6 (N.D. Cal. Mar. 28, 2022), *report and recommendation adopted,* No. 19-CV-07071-SI, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022); *see also First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-CV-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding defendant's agents acted with intent in deleting text messages based on evidence of an "explicit agreement to avoid communicating electronically," which "suggest[ed] a shared intent to keep incriminating facts out of evidence"). A "conscious disregard" of discovery obligations is sufficient to show a culpable state of mind. *See Apple Inc. v. Samsung Elecs. Co.*, 888 F.Supp.2d 976, 998 (N.D. Cal. 2012); *see also Reinsdorf v. Sketchers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013) (culpable state of mind may be demonstrated by ordinary negligence).

Defendants were required to take active steps to prevent the destruction of relevant evidence. *Youngevity Int'l v. Smith*, No. 16-cv-704-BTM (JLBx), 2020 WL 7048687, at *2 (S.D. Cal. July 28, 2020) ("Even if the Court finds that the loss of text messages were due to 'ordinary circumstances of cell phone usage,' such losses do not justify the incomplete production of text messages because they could have been prevented with reasonable proactivity."). Once Defendants' duty to preserve took effect, Defendants were "required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Apple Inc.*, 888 F. Supp. 2d at 991.

Defendants knew of their duty to preserve evidence, as confirmed in a July 12, 2022 email from their counsel and in the parties' Rule 26(f) Joint Report. Thomas Decl. Ex. 23, Ex. 24. They also apparently understood that there was an advantage to communicating with each other in a form that was not preserved for discovery. On June 28 – four days after the lawsuit was filed and Defendants were aware of it – Ryder's brother Ezra suggested moving their written communications over to "telegram/signal" and volunteered to start the chat. *Id.* Ex. 13 at 112. Telegram and Signal are notoriously designed to allow users to automatically delete their messages.

*See Id*. Exs. 25, 26.  Although no Defendant, nor Lehman or Hickman, have admitted to the existence of this chat, Hickman admitted to using Telegram to communicate with Ripps and that after the lawsuit was filed he switched his Telegram app to autodelete messages every 28 days.  Thomas Decl. Ex. 16 at 49:21-51:5; 54:16-55:3.  Defendants understood that written evidence was important to this lawsuit, and they consciously disregarded their duty and did not preserve this evidence for litigation.

### e.    The Destroyed Evidence Was Relevant to Yuga Labs' Claims

By the nature of their spoliation, the content of these communications has been concealed from Yuga Labs, the Court, and the jury, forcing Yuga Labs to rely on "incomplete and spotty evidence."  *See Anheuser–Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir.1995) (prejudice found where party was forced to rely on incomplete and spotty evidence due to spoliation).  However, a preponderance of the evidence shows that these documents were relevant and material to Yuga Labs' claims.  Defendants, together with Ryan Hickman and Tom Lehman, collaborated in the design and promotion of counterfeit NFTs and a marketplace that would use Yuga Labs' marks to profit from these counterfeit products.  Any documents or communications relating to the domain names they registered, the software they designed, the marketing tactics they used, their intent, and their knowledge of likely confusion would have been relevant had they not been spoliated.  Evidence that Yuga Labs has been forced to obtain from third parties confirms that communications among Defendants, Lehman, and Hickman were indeed relevant and adverse to Defendants.  By virtue of their conscious destruction of this evidence, the Court should infer that Defendants knew these materials were relevant.

### f.    The Appropriate Remedy Includes Default Judgment (or Alternatively, an Adverse Inference) and an Award of Attorneys' Fees

"A court may sanction spoliation by:   imposing monetary sanctions;

1  instructing the jury to draw an adverse inference against the despoiling party;

2  excluding testimony based on despoiled evidence proffered by the despoiling party;

3  or, if willfulness is found, entering default judgment against the despoiling party."

4  *Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701, at \*4 (C.D. Cal. Dec. 13,

5  2007).  The remedy a court imposes "should be designed to:  (1) deter parties from

6  engaging in spoliation; (2) place the risk of an erroneous judgment on the party who

7  wrongfully created the risk; and (3) restore 'the prejudiced party to the same position

8  he would have been absent the wrongful destruction of evidence by the opposing

9  party."  *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal.

10  2012) (internal quotation marks omitted).

11       The Court should enter a default judgment against Defendants as to all of Yuga

12  Labs' claims for this brazen and unexcused spoliation of material evidence.  Entry of

13  a default judgment is permitted when the disobedient party has "willfully deceived

14  the court and engaged in conduct utterly inconsistent with the orderly administration

15  of justice."  *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

16  "[W]illfulness, bad faith, or fault does not require wrongful intent; rather, disobedient

17  conduct not shown to be outside the party's control is by itself sufficient to establish

18  willfulness, bad faith, or fault."  *Sanchez v. Rodriguez*, 298 F.R.D. 460, 463 (C.D.

19  Cal. 2014).  Such a sanction is appropriate where, as here, a party has deliberately

20  engaged in deceptive practices that 'undermine the integrity of judicial proceedings'

21  because courts have an inherent power to dismiss actions where parties engage in

22  conduct that is wholly inconsistent with the 'orderly administration of justice.'

23  *Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 118CV00536AWIBAM, 2022 WL

24  16551632, at \*24 (E.D. Cal. Oct. 31, 2022) quoting *Leon v. IDX Sys. Corp.*, 464 F.3d

25  951, 958 (9th Cir. 2006).

26       Alternatively, the Court should find that Yuga Labs is entitled to an adverse

27  inference as to the contents of the destroyed evidence.  "In the Ninth Circuit,

28  spoliation of evidence raises a presumption that the destroyed evidence goes to the

merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Perkins v. City of Modesto*, No. 119CV00126LJOEPG, 2020 WL 1333109, at *17 (E.D. Cal. Mar. 23, 2020) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012). "The purpose of an adverse inference is not to impose any moral blame but to restore evidentiary balance and the risk should fall on the party responsible for the loss." *Victorino v. FCA US LLC*, 2017 WL 4541653, at *9 (S.D. Cal. Oct. 11, 2017) (citation omitted); *see also Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 118CV00536AWIBAM, 2022 WL 16551632, at *18 (E.D. Cal. Oct. 31, 2022) ("It is not necessary to find bad faith for a court to impose an adverse inference sanction, however, a party's motive or degree of fault in the spoliation is relevant to determining what sanctions should be imposed."). Here, such a remedy is appropriate because Defendants have deprived Yuga Labs of evidence relevant to its case in chief, and the jury should therefore be instructed to infer that the destroyed evidence would show that Defendants intentionally infringed on Yuga Labs' marks and that they know their infringement was likely to cause confusion among customers of both Yuga Labs and Defendants.

In addition to either of the above sanctions, the Court should award Yuga Labs its attorneys' fees required to investigate Defendants' spoliation (including through the subpoenas and depositions of third parties) and to bring this motion. Monetary sanctions are available for a wide variety of costs incurred related to spoliation. *See, e.g.*, *Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 118CV00536AWIBAM, 2022 WL 16551632, at *18 (E.D. Cal. Oct. 31, 2022) (awarding monetary damages for forensic expert's analysis, time spent subpoenaing third parties, and attorney's fees for time spent on preparation of motion, but disallowing damages for depositions related to spoliated evidence); *Medina v. Boeing Co.*, No. 820CV00304JVSJEM, 2022 WL 599021, at *5 (C.D. Cal. Jan. 27, 2022) ("Given that Boeing incurred costs in retaining a forensic vendor to review a hard drive which was not the hard drive promised to be produced by Medina, the Court finds that monetary sanctions are

warranted here."). And, attorney's fees are available under Fed. R. Civ. P. 37. *See Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20-CV-01891-CRB (LB), 2022 WL 11270394, at *5 (N.D. Cal. Oct. 19, 2022) ("Attorney's fees may be awarded as a sanction under Rule 37(e)(1)."); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 118CV00536AWIBAM, 2022 WL 16551632, at *19 (E.D. Cal. Oct. 31, 2022) (awarding reasonable fees and costs under 37(e)(1)).

### g.  In the Alternative, Defendants Should Submit to a Forensic Inspection of Their Devices

Forensic examination is warranted when a party fails to comply with discovery obligations—including their obligations in response to a Court order. *See Ascar v. U.S. Bank, N.A.*, No. 213CV07496DSFVBK, 2014 WL 12639926, at *1 (C.D. Cal. Sept. 25, 2014) (ordering plaintiff to produce phone and other electronic devices with ESI for defendant and permitting defendant to identify a forensics expert where plaintiff failed to timely respond to discovery requests and failed to comply with a court order directing plaintiff to respond to the discovery requests); *Glob. Ampersand, LLC v. Crown Eng'g & Const., Inc.*, 261 F.R.D. 495, 501 (E.D. Cal. 2009) (ordering forensic examination where party "did not timely comply with its discovery obligations" resulting in the need for a motion to compel).

Should the Court find that there is insufficient evidence of spoliation to impose sanctions, the Court should order Defendants to submit all of their electronic communication devices, social media accounts, and email accounts to an independent forensic expert of Yuga Labs' choosing (and at Yuga Labs' cost) at Fenwick's Santa Monica office within ten (10) days of the Court's order. The purpose of the forensic examination will be to permit that expert to determine the extent and scope of Defendants' alleged spoliation or the existence of texts, emails, and private social media messages that Defendants have refused to turn over to Yuga Labs. If any texts, emails, or social media messages are found between them, Lehman, and/or Hickman from December 2021 through present, the expert is to turn those over to Yuga Labs

immediately.

If any evidence of spoliation is found, Yuga Labs should be permitted to file a supplemental memorandum with the Court, to be accompanied by a report of the findings from the forensic expert.

## 2. Defendants' Position

### a. Defendants Have Complied With Their Discovery Obligations Under The Rules of This Court

The Federal Rules and this Court's Local Rules require only that a party "make a reasonable effort to search for and obtain" responsive materials. *Addison v. Monarch & Ass., Inc.*, No. CV 14-00358-GW-JEM, 2016 WL 11530422, at *1 (C.D. Cal. Sep. 6, 2016) (J. McDermott); *In re Rivera*, No. CV 16-4676 JAK (SSx), 2017 WL 5163695, at *2 (C.D. Cal. Apr. 14, 2017) (holding that Federal Rule 34(b)(2) requires only "a reasonable investigation to locate responsive materials").

Defendants, who are two individuals, have done far more than a reasonable investigation. *See RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 505 (C.D. Cal. 2022) ("the Court should consider a party's sophistication"). As Defendants explain in the sworn declarations accompanying this stipulation, they have collectively searched for more than *100 hours* across multiple occasions, and produced all responsive materials that they have found. Cahen Decl. ¶ 5; Ripps Decl. ¶ 3. Their production has been extraordinary and extensive, including more than 200,000 private communications made via text messages, Discord, Telegram, Instagram, and email. For example, Defendants produced the entirety of their development chat on Discord (which includes nearly 11,000 communications and addresses the entirety of the RR/BAYC Project) and this was in the *very first* set of non-public materials that Defendants produced.

In addition to this extensive production, Mr. Ripps executed a verification on January 17, 2023, in which he confirmed that he "produced all responsive documents that I have been able to locate after a reasonable search" and further stated that "I

also understand that discovery obligations are continuing, and I will produce any additional responsive materials or information to the extent any are found based on a reasonable investigation." Gosma Decl. Ex. 3. And that is precisely what Mr. Ripps and Mr. Cahen have done. Upon receipt of Yuga's joint stipulation identifying specific documents, Defendants continued to investigate and managed to find a handful of lingering documents that did not come up in previous searches. Those materials totaled less than 100 documents and Defendants promptly produced those materials as well. Cahen Decl. ¶ 5; Ripps Decl. ¶ 8.

Discovery in this case has been highly burdensome on the Defendants because they had to manually collect and produce massive quantities of private materials. Cahen Decl. ¶ 5; Ripps Decl. ¶ 3. Defendants' transparency and cooperation is nothing close to conduct that would warrant terminating sanctions or any adverse inference.

### b.    Yuga Failed to Meet and Confer In Good Faith

Yuga did not seek relief based on any actual evidence of spoliation, but instead appears to have manufactured pretextual grounds to file this motion. Defendants asked Yuga on multiple occasions to identify its basis for contending that any evidence had been destroyed, including during the February 6, 2023, conference of counsel. Gosma Decl. ¶ 3. Yuga repeatedly refused to provide any basis. *Id*. Instead, Yuga waited until the conference was over and then (1) produced third party materials from Mr. Lehman that Yuga had previously intentionally withheld for more than three months and (2) used that belated production to argue that any inconsistency between the Mr. Lehman and Defendants' productions is evidence of spoliation. Gosma Decl. ¶ 4, Exs. 7 and 9. Had Yuga conferred as required under Local Rule 37-1, it would have learned that it has no basis to file the instant motion because, as explained below, there has been no spoliation of evidence.

### c.     Yuga's Motion Failed on the Merits

#### (1)     Yuga Applies the Wrong Law

As a preliminary matter, Yuga's motion incorrectly relies on legal authority that pre-dates the 2015 revision to the Federal Rules of Civil Procedure 37(e) and therefore seeks relief based on an incorrect analysis of the law.   Specifically, "Rule 37(e) was completely rewritten in 2015 to provide[ ] a nationally uniform standard for when courts can give an adverse inference instruction, or impose equally or more severe sanctions, to remedy the loss of ESI."   *Muhammad v. Jenkins*, No. CV 19-7970 JAK (PVC), 2022 WL 4292341, at \*5 (C.D. Cal. Aug. 26, 2022), report and recommendation adopted, No. CV 19-7970 JAK (PVC), 2022 WL 4292308 (C.D. Cal. Sept. 15, 2022) (internal quotations omitted) (citing *Fed. Trade Comm'n v. Noland*, 2021 WL 3857413, at \*5 (D. Ariz. Aug. 30, 2021)).

Following the language of the amended rule itself, courts have held that there are four criteria for determining if spoliation occurred: "(1) whether the information qualifies as electronically stored information ('ESI'); (2) whether the ESI is 'lost' and 'cannot be restored or replaced through additional discovery'; (3) whether the responding party took reasonable steps to preserve the ESI; and (4) that party was under a duty to preserve the ESI." *Gaina v. Northridge Hosp. Med. Ctr.*, No. CV 18-177-DMG (RAOX), 2019 WL 1751825, at \*2 (C.D. Cal. Feb. 25, 2019).  Once the court determines that criteria has been met, the court upon a finding of prejudice from the spoliation, "may 'order measures no greater than necessary to cure the prejudice.'" *Id.* (citing Fed. R. Civ. P. 37(e)(1)).[7]

Accordingly, Yuga's reliance on cases from 2012 and 2013 that set out three factors for determining remedies for spoliation of Electronically Stored Information

---

[7] Alternatively, if the court finds that "a spoliating party has acted with the intent to deprive another party of the information's use in the litigation, Rule 37(e)(2) authorizes more severe sanctions, including an adverse inference jury instruction." *Gaina v. Northridge Hosp. Med. Ctr.*, No. CV 18-177-DMG (RAOX), 2019 WL 1751825, at \*2 (C.D. Cal. Feb. 25, 2019) (internal quotations omitted).

("ESI") and cite to the court's "inherent power" to issue sanctions, is misplaced. Yuga's analysis fundamentally fails to consider wither any lost material "cannot be restored or replaced" and whether it is seeking relief "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). These shortcomings in Yuga's motion are critical because the 2015 revisions to the Federal Rules contemplate that courts "exercise caution … in using the measures specified in (e)(2)" as "[t]he remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." Fed. R. Civ. P. 37, 2015 advisory committee note.

As explained in greater detail below, no materials have been lost and the documents Yuga complains of are already in Yuga's possession, irrelevant, or privileged. Thus, default judgment, adverse inference, and forensic inspection of personal devices are disproportionate remedies because there has been no spoliation and Yuga has suffered no prejudice at all.

### (2)    There Has Been No Spoliation of Evidence

Defendants have not destroyed any evidence. Yuga could have learned of the relevant facts regarding Defendants documents had it conferred in good faith instead of sandbagging Defendants with its substantively unsupported motion for default judgment. Below are the specific reasons Yuga cites for believing there has been spoliation of evidence and Defendants explanation for each concern.

- <u>Text messages between Cahen and Tom Lehman</u>. Defendants are in possession of Mr. Cahen's texts with Mr. Lehman, but the overwhelming majority of those texts have nothing to do with RR/BAYC project. Cahen Decl. ¶ 9. They mostly involve topics such as getting food, family pictures, and other personal content that has nothing to do with this case. *Id*. Thus, when Mr. Cahen investigated the texts (which required manually scrolling through a large text thread), he did not see what Yuga claims are (at best

marginally relevant) responsive materials.   The production from Mr. Lehman that Yuga cites are  37 snips from that text thread that have limited conversations about the RR/BAYC Project.   Defendants have now collected those deeply-buried messages and produced those materials. Again, had Yuga simply stated during the February 6, 2023, conference its specific concerns as required under Local Rule 37-1, the parties could have resolved this issue without having to involve the Court.

- Text messages between Ripps and Ryan Hickman.  Yuga falsely states that Mr. Hickman testified about having text messages with Mr. Ripps and, in fact, a search of Exhibit 16 to the Thomas Declaration confirms that Mr. Hickman never made any such testimony (though he did testify to texting Mr. Cahen about the unrelated issue of being stressed about Yuga's subpoena to Mr. Hickman). *See* Thomas Decl. Ex. 16, 84:21-85:1. Further, Mr. Ripps is in possession of all his text messages and upon reviewing those texts he did not find messages with Mr. Hickman material to any of the trademark issues in this case.   Ripps Decl. ¶ 8.  Mr. Ripps primarily communicated with Mr. Hickman via the Discord development chat, which Defendants produced in early December 2022.  Beyond that chat, there are no responsive communication with Mr. Hickman that Mr. Ripps is currently aware of.

- Messages between Defendants.  Yuga does not have a right to the text messages between the Defendants relating to the RR/BAYC Project because those messages are privileged.  Defendants' messages disclose the mental impressions, conclusions, opinions, and legal strategies regarding this litigation, and therefore are protected work-product.  Moreover, the parties are currently in the process of exchanging privilege logs, which renders this issue premature and not a proper basis for a motion for default judgment.  Gosma Decl. ¶ 8.

- <u>Emails regarding the registration of infringing domain names</u>.  First and foremost, it is undisputed in this case that the Defendants own the domain registrations for rrbayc.com and apemarket.com.  Seeking default judgment over documents relating to an undisputed issue highlights the absurdity of Yuga's position.  Regardless, Defendants have produced documents confirming registration of the domain mains, refuting Yuga's false accusation of spoliation.

- <u>Private Discord communications between Cahen and Tom Lehman</u>.  The Discord communications that Yuga relies on are materials that have virtually no bearing on this litigation.  Exhibit 20 to the Thomas Declaration is a Discord chat that includes a total of eight messages.   These messages do not mention the RR/BAYC Project and do not appear to have any relevance to this litigation.  Similarly, Exhibit 21 to the Thomas Declaration has just three messages on a tangential development topic that is only remotely relevant, if at all, to the trademark issues in this case.  Despite this lack of relevance, Defendants have now produced these Discord communications and disproven Yuga's false accusation of spoliation.

- <u>Private Discord communications between Cahen and Ryan Hickman</u>.  Yuga falsely states that *pro se* third party Mr. Hickman testified about having a Discord communication with Mr. Cahen in relation to the RR/BAYC Project.  In reality, Mr. Hickman testified that he was unsure whether any Discord chat existed, and if it did exist that it wouldn't have any discussion involving the RR/BAYC Project:

> Q.   So you did not have – if I'm understanding your testimony correctly,  you  did  not  have  private  Discord communications with Mr. Cahen?
>
> A.   Did I have a one-to-one Discord?  It is possible I have a Discord chat with him."

. . .

Q.   And do you have a recollection of whether or not you determined there was one or there wasn't one?

A.   I don't – I don't remember.  I believe I have a chat.  I don't believe we had a discussion around this.

Thomas Decl. Ex. 16, 38:6-10; 38:23-39:3.  Further, Mr. Cahen specifically searched all his communications with Mr. Hickman using the search terms "rr/bayc" and "rrbayc" on his personal device.  His search results did not return a single hit, confirming that his one-to-one communications with Mr. Hickman are irrelevant to the RR/BAYC Project.  Cahen Decl. ¶ 10.

As explained above, there has been no spoliation of evidence because the very documents that Yuga complains of have already been produced, are irrelevant, or are privileged communications.  Yuga could have learned all these facts if it had been willing to confer in good faith on February 6, 2023.

### (3)   Yuga Fails to Show that Defendants Have a Culpable State of Mind

To apply the extraordinary sanctions that Yuga demands here, the court must find that Mr. Ripps and Mr. Cahen not only spoliated evidence but did so "with the intent to deprive another party of the information's use in the litigation…" *Gaina v. Northridge Hosp. Med. Ctr.*, No. CV 18-177-DMG (RAOX), 2019 WL 1751825, at *2 (C.D. Cal. Feb. 25, 2019).   As the Advisory Committee notes to the 2015 amendment to Rule 37(e) make clear, the rule "rejects cases … that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37, 2015 advisory committee note (internal citation omitted); *see also Muhammad v. Jenkins*, No. CV 19-7970 JAK (PVC), 2022 WL 4292341, at *6 (C.D. Cal. Aug. 26, 2022), report and recommendation adopted, No. CV 19-7970 JAK (PVC), 2022 WL 4292308 (C.D. Cal. Sept. 15, 2022) (finding that proof of an "intent to deprive establishes that the ESI's loss was not merely negligent

1  or even grossly negligent, but an intentional effort to keep the ESI from the opposing

2  party ....") (internal citations and quotations omitted).

3        Applying these principles courts have found that there must be evidence

4  beyond the fact information has been deleted or destroyed to prove that such actions

5  were done with the intent of depriving the other side of their use in litigation.  For

6  example, a court in this district found there was not sufficient evidence rising to

7  intentional spoliation of evidence even where a plaintiff knew there could be

8  evidence on his phone, preserved evidence on his phone favorable to him, and the

9  rest was destroyed when he "failed to back up the information before it was

10 automatically deleted."  *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020

11 WL 9066078, at *6 (C.D. Cal. July 22, 2020) (finding "although Defendants may

12 have established that [plaintiff] negligently destroyed relevant evidence, they have

13 not established that he did so with the specific intent to deprive Defendants of the use

14 of these text messages in this litigation.").

15       Here, Yuga has not proven that Mr. Ripps and Mr. Cahen have destroyed any

16 evidence, let alone that any (non-existent) destruction was done intentionally.  Yuga

17 mainly supports its argument by stating that Mr. Ripps and Mr. Cahen knew they had

18 a duty to preserve evidence and consciously disregarded this duty.  Yuga Br. 8-9.

19 While it is true that Mr. Ripps and Mr. Cahen understood that they had a duty to

20 preserve evidence, the series of productions of hundreds of thousands of private

21 communications and public posts responsive to Yuga's discovery requests support

22 the finding that they have fulfilled this obligation.  Cahen Decl. ¶ 7; Ripps Decl. ¶ 4.

23 Mr. Ripps and Mr. Cahen have clearly preserved, collected, and produced

24 information responsive to Yuga's requests that could be located after a reasonable

25 search.  The small categories of one-off messages Yuga states are missing were

26 specifically identified as missing items for the first time in this motion.  And those

27 items have now been collected and produced or are otherwise non-responsive or

28 privileged.  Even if the Court were to find that these now-produced one-off materials

have been lost or destroyed, there is no evidence to support the assertion that such destruction was done intentionally.  The evidence shows that Mr. Ripps and Mr. Cahen have undertaken a burdensome and good faith effort to provide all responsive material that they could locate. Cahen Decl. ¶ 5; Ripps Decl. ¶ 3.

Additionally, Yuga tries to support a finding of intentional destruction by citing to a document where Mr. Ripps's brother suggests they communicate on Telegram or Signal.  Yuga Br. 8-9.  In the communication cited by Yuga, no one responds to Mr. Ripps's brother's suggestion and the conversation moves to other topics.  Thomas Declaration Ex. 13.  Yuga suggests that because those platforms allow for automatically deleting messages, the proposal to communicate there somehow supports a finding that Mr. Ripps and Mr. Cahen "understood that there was an advantage to communicating with each other in a form that was not preserved for discovery," implying that they did communicate on that channel, and failed to produce it.  *See* Yuga Br. 8-9.  First, Yuga admits that "no Defendant, nor Lehman or Hickman, have admitted to the existence of this chat."  Yuga Br. 9.  Accordingly, they have no proof that such a group message ever existed.  Further, the implication that Mr. Ripps and Mr. Cahen would have communicated on Telegram or Signal to use automatic deletion settings to avoid producing such communications, is undermined by the fact Mr. Ripps and Mr. Cahen did produce thousands of private Telegram communications.  *See*, *e.g.*, Gosma Decl. Ex. 10.

In sum, Yuga has not provided evidence that supports a finding that Defendants lost or destroyed any evidence.  Beyond that, they present no evidence (beyond mere speculation) of ***intentional*** destruction of evidence as required by the updated Federal Rules.

### d.     Default Judgment, Adverse Inference, and Forensic Inspection Would be Improper

The record is clear that that Defendants have been forthcoming with discovery and that there has been no spoliation of evidence at all.  Yuga, which has suffered no

prejudice and itself has violated Local Rule 37-1 by filing this motion without adequately conferring.  Because Defendants have complied with their discovery obligations to the best of their abilities, Yuga has no basis to request the extraordinary remedies of default judgment, adverse inference, and highly intrusive forensic inspection of personal devices because Yuga has (1) suffered no prejudice and (2) the remedies Yuga demands would be excessive and improper.

### (1)   Yuga Has Suffered No Prejudice

Courts enter sanctions for spoliation of evidence upon a finding of prejudice and "order measures no greater than necessary to cure the prejudice." *Gaina v. Northridge Hosp. Med. Ctr.*, No. CV 18-177-DMG (RAOX), 2019 WL 1751825, at *2 (C.D. Cal. Feb. 25, 2019) (citing Fed. R. Civ. P. 37(e)(1)).  Prejudice cannot exist when the complaining party is in possession of the information that has allegedly been destroyed.  *See*, *e.g.*, *Gault v. United States*, No. CV 20-10687 PA (PVC), 2022 WL 4292340, at *6 (C.D. Cal. Aug. 23, 2022), report and recommendation adopted, No. CV 20-10687 PA (PVC), 2022 WL 4291320 (C.D. Cal. Sept. 15, 2022).

Here, Yuga has no credible claim of prejudice as it has twice received the very documents it complains of—from Mr. Lehman and from the Defendants.  Moreover, the fact that Defendants have produced these one-off, largely tangential documents proves that Yuga's accusations of spoliation are categorically false.

Further, even if these documents had been lost (which they were not), Yuga would still have no basis for bringing this motion for default judgment because (1) Yuga was already in possession of these materials before filing this motion and (2) the materials are largely tangential and do not make a difference to the core issues in this case, especially when considering that the Defendants had already produced hundreds of thousands of private communications regarding the RR/BAYC Project.

### (2)   Default Judgment or Adverse Inference Is Entirely Unwarranted

"A terminating sanction, whether default judgment against a defendant or

dismissal of a plaintiff's action is *very severe*." *Oppenheimer v. City of La Habra*, 2017 WL 1807596 at *3 (C.D. Cal. 2017) (emphasis in original).  It should only be imposed in "extreme circumstances" and courts must consider "less drastic alternative sanctions" before applying dismissal.  *Raiford v. Pounds*, 640 F.3d 944, 945 (9th Cir. 1981).  Generally, dismissal is available only if a party "has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Default judgment as a sanction is thus reserved for when "the transgression threatens to interfere with the rightful decision of the case." *Anheuser-Busch v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

Plaintiffs bear a heavy burden to prove bad faith necessary to justify a terminating sanction.  Courts will not grant terminating sanctions "because of a mere possibility" of misconduct.  *Oppenheimer v. City of La Habra*, 2017 WL 1807596 at *9 (C.D. Cal. 2017) (holding that deposition testimony did not establish necessary bad faith).  Yuga only presents speculation that documents were destroyed—speculation that has been undeniably refuted—and that Defendants, two individuals, have willfully destroyed evidence.  The fact of the matter is that Defendants have both acted transparently throughout the discovery process.  They have produced reams of private communications and documents which, in some cases, paint themselves in a bad light.  Unlike Yuga, they readily made themselves available for their depositions, and have been operating on the basis that they are not hiding anything.  These are not the actions of parties that are "willfully deceiving" the court in an attempt to avoid their discovery obligations.  Instead, like the plaintiff in *Oppenheimer*, Yuga is making claims of destruction of evidence without the necessary proof.

Further, Yuga failed to adequately meet and confer before filing this motion because it repeatedly refused to provide its basis for accusing Defendants of

destroying evidence.  Gosma Decl. ¶ 2.  Defendants, two individuals, were never made fully aware of what Yuga was requesting, and therefore they could not be hiding documents in bad faith.  Once Defendants were actually made aware of what Yuga was seeking, they produced responsive documents and were able to give clear explanations addressing Yuga's concerns.  As Defendants production makes clear, Defendants are not trying to "willfully deceive" anybody.  On the contrary, they are putting extensive effort and countless hours into producing relevant discovery.

Further, terminating sanctions are only appropriate when the spoiling party's actions either impair the non-spoiling party's ability to go to trial or interfere with the rightful decision in the case.  *United States ex rel. Wiltec Guam v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir.  1988).  For this to be true, there must be actual prejudice.  *Id.*  But as explained above, there is no prejudice because all of the complained of documents have been produced twice-over, are irrelevant, or are privileged.

Yuga alternatively seeks an adverse inference based on its demonstrably false accusation of spoliation.  But again, adverse inference is a sever sanction that is designed to have "prophylactic and punitive effects" that "presumably deters parties form destroying relevant evidence before it can be introduced at trial."  *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).  Imposition of such an extreme sanction makes no sense in a scenario where there has been absolutely no prejudice, no documents have been destroyed, and Defendants have been remarkably forthcoming and transparent with the discovery process.

### (3)   Yuga's Request for Forensic Inspection of Defendants' Personal Devices Is Also Unwarranted

Forensic inspection is also an "extraordinary remedy that requires substantial support."  *Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-cv-06637-RS-PSG, 2013 WL 1366041, at *2 (N.D. Cal. Apr. 3, 2013).  Courts are generally hesitant to permit a party unlimited access to an opposing party's electronic devices

in the absence of a discovery violation or the opposing party's consent. *United States v. California Inst. of Tech.*, No. CV185964CASRAOX, 2020 WL 13547790, at *7 (C.D. Cal. Nov. 18, 2020) (citing *Lincoln Benefit Life Co. v. Fundament*, Case No. SACV 18-00260-DOC (JDEx), 2018 WL 6133672, at *3 (C.D. Cal. Nov. 7, 2018)).

Here, forensic inspection is inappropriate because Yuga has failed to provide adequate evidence of any alleged discovery violations or spoliation. Defendants have made significant efforts to meet their discovery obligations and communicate efficiently with Yuga. Mr. Ripps and Mr. Cahen have collectively spent over 100 hours conducting reasonable searches for responsive documents, have produced hundreds of thousands of private communications, and have made every reasonable effort to address Yuga's follow up requests. On the other hand, Yuga has been very unclear and uncollaborative throughout discovery (including having produced less than 200 non-public documents to date). During the most recent meet and confer, Yuga was explicitly asked for its basis to contend that there has been any spoliation, and they declined to provide a clarification. Then, Yuga blindsided Defendants with a motion that had not been sufficiently discussed during a meet and confer in accordance with Local Rule 37-1.

Had Yuga properly conferred, it would have learned that Defendants are in possession of the specific documents on which its complaints are based, and Yuga could have received those documents without having to burden the Court and Defendants with this needless motion. But instead, Yuga refused to cooperate with Defendants in the meet and confer process, and now seeks unfettered access to "all of [Defendants'] electronic communication devices, social media accounts, and email accounts." Yuga Br. at 15. Yuga's motion practice is improper, and its request for highly intrusive forensic inspection of personal devices and accounts is entirely unjustified and harassing.

### e.    The Court Should Award Expenses to Defendants

*First*, Federal Rule of Civil Procedure 37(a)(5)(B) provides that when a court

denies a discovery motion that was not "substantially justified" it must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed to motion its reasonable expenses incurred in opposing the motion."

Yuga's motion for default judgment does not come close to being substantially justified. Yuga has requested terminating sanctions based on empty accusations of spoliation. Yuga's motion does not rely on any affirmative evidence of destruction, but instead relies on inconsistencies involving Mr. Lehman's production—inconsistences that Yuga itself brought about through its improper withholding of documents and refusal to confer.

The weak merits of Yuga's motion for default judgment are further evidenced by Yuga's reliance on documents that are already in its possession, which definitively confirms that Yuga has suffered no prejudice necessary for entry of default judgment. And after Yuga raised for the first time its specific spoliation concerns upon serving its portion of this Joint Stipulation, Defendants produced the very documents Yuga complains of and thus disproved that any materials had been lost. Yuga's demand that the Court should enter terminating sanctions under these circumstances makes no sense.

***Second***, Local Rule 37-4 provides that the failure to cooperate in the procedures under Local Rule 37-1 is an adequate basis for imposing sanctions. Here, Yuga violated Local Rule 37-1 by refusing confer regarding spoliation of evidence. The parties scheduled a conference on February 6, 2023, to discuss Defendants' document production. Gosma Decl. ¶ 2. During that conference, Defendant repeatedly asked Yuga to provide its basis for believing that any spoliation had occurred. *Id*. Yuga repeatedly refused to provide its bases and thus never actually conferred with Defendants regarding Yuga's motion for default judgment. *Id*.

Yuga also violated Local Rule 37-1 by withholding materials produced by Mr. Lehman until after the February 6, 2023, conference. Gosma Decl. ¶ 3. This was a tactic designed to deprive Defendants of the ability to meaningfully confer because

1    Yuga's spoliation argument relies on those withheld third-party documents.  Yuga's

2    deliberate concealment of evidence is particularly egregious given that Mr. Lehman

3    produced those materials in mid-October, and Yuga had been hiding those materials

4    for more than **three months** on the hopes that it could fabricate a narrative to support

5    its false accusations of evidence destruction.  *See* Gosma Decl. ¶¶ 3-4, Ex. 7, Ex. 9.

6         ***Third***, when deciding whether to impose sanctions, courts "properly consider

7    all of a party's discovery misconduct …, including conduct which has been the

8    subject of earlier sanctions." *In Heritage Bond Liti.*, 223 F.R.D. 527, 530 (C.D. Cal.

9    2004) (citing *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).  This Court

10   has recognized Yuga' prior violations of Local Rule 37-1.  On January 8, 2023, this

11   Court admonished Yuga for repeatedly ignoring Defendants requests to confer

12   regarding deposition scheduling.  Dkt. 77 at 1.  The Court noted that Yuga's "failure

13   to confer was a violation of Local Rule 37-1, itself sufficient to deny the Motion."

14   *Id*. at 1-2.  In that same order, the Court also ordered Yuga's employee Wylie Aronow

15   to appear for deposition on January 9, 2023, and that "Yuga will be responsible for

16   payment of any expenses associated with the failed deposition."  *Id*. at 2.  Mr.

17   Aronow did not appear, and Defendants intend to seek reimbursements.

18        Yuga does not appear to have taken this Court's January 8, 2023, order

19   seriously because it has committed the exact same Local Rule violation once again,

20   only this time there are aggravating factors present: (1) Yuga improperly withheld

21   third-party materials for more than three months, and (2) Yuga refused to confer in

22   order to artificially manufacture grounds for a motion for default judgment.

23   Defendants should not have to incur expenses when Yuga has engaged in

24   gamesmanship and Local Rule violations to file a frivolous motion for default

25   judgment.

26

27

28

Dated:  February 16, 2023        FENWICK & WEST LLP

By: _/s/ Ethan M. Thomas_
     Ethan M. Thomas
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

Dated:  February 16, 2023        WILMER CUTLER PICKERING
                            HALE AND DORR LLP

By: _/s/ Derek Gosma_
     Derek Gosma (*pro hac vice*)
Attorneys for Defendants and
Counterclaim Plaintiffs
RYDER RIPPS AND JEREMY CAHEN

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Ethan M. Thomas attests that concurrence in the filing of this document has been obtained from Derek Gosma.


Dated:  February 16, 2023        FENWICK & WEST LLP

By: _/s/ Ethan M. Thomas_
     Ethan M. Thomas
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.