ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>Defendants and Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF YUGA LABS, INC.'S OPPOSITION TO DEFENDANTS'** *EX PARTE* **APPLICATION FOR ORDER TO COMPEL DISCOVERY** |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: 202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

Defendants' *ex parte* application violates the Local Rules, presents no real emergency, and is strategically timed to harass and increase the cost of litigation. Rather than following the Court's discovery procedures, Defendants seek to deprive Plaintiff Yuga Labs, Inc. ("Yuga Labs") of a full and fair opportunity to respond to their discovery motion. The *ex parte* application should be denied, and Defendants should be sanctioned for this latest instance of misconduct.

**I.   DEFENDANTS' APPLICATION VIOLATES THE LOCAL RULES AND THIS COURT'S PROCEDURES.**

**A.   Defendants Did Not Comply with Local Rule 7-19**

Despite Yuga Labs agreement to meet and confer with Defendants pursuant to Local Rule 37-1, and ***without ever notifying Yuga Labs that they intended to file this ex parte application***, Defendants filed it. This Court's procedures require "[s]trict compliance with Local Rule 7-19" to file an *ex parte* application. http://www.cacd.uscourts.gov/honorable-john-e-mcdermott. Instead, Defendants brazenly ***violated nearly every requirement*** of Local Rule 7-19. Most severely, they were required "to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application." L.R. 7.19-1. They made no attempt to do so. Moreover, they never even mentioned an *ex parte* application in ***any*** of their correspondence to Yuga Labs. *See* ECF 108-2 ("Gosma Decl.") Ex. 8. Defendants were also required "to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." L.R. 7.19-1. They did not do this either. Gosma Decl. Ex. 8. And Defendants were required to advise the Court of the contact information of the opposing party. L.R. 7-19. Here, again, they failed to comply with the rules.

**B.   Defendants Did Not Comply with Local Rule 37**

This *ex parte* application also comes after Defendants refused to follow Local Rule 37. They did not serve a letter required by L.R. 37-1 "identify[ing] each issue and/or discovery request in dispute, stat[ing] briefly as to each such

issue/request the moving party's position (and provid[ing] any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify[ing] the terms of the discovery order to be sought." And until February 16, they did not even provide the required legal authority supporting their position until less than 24 hours before they filed this *ex parte* application. Gosma Decl. Ex. 8.

The dispute began on February 6 and 7 when Defendants asked Yuga Labs and Thomas Lehman, respectively, to produce their confidential settlement agreement and communications between them in connection with their settlement of their dispute in the Northern District of New York. *Id.*; Declaration of Eric Ball ("Ball Decl.") Ex. 2. At that time, Defendants shared no legal authority that Yuga Labs (or Mr. Lehman) were required to produce those documents. On February 9, Mr. Lehman objected to providing the requested documents, and Yuga Labs informed Defendants that it was assessing those objections. Ball Decl. Ex. 1 at 6, Ex. 3. On February 14, after it completed its assessment, Yuga Labs offered Defendants a compromise position — that it would allow the otherwise non-discoverable confidential settlement agreement to be produced if Defendants agreed not to seek production of any other irrelevant and protected communications related to the settlement. Gosma Decl. Ex. 8. Defendants refused. *Id.*

Instead, on February 14, Defendants demanded that Yuga Labs "[c]onsider yourselves on notice of this issue under Rule 37-1 as of February 6." *Id.* But as of February 14, Defendants *still* had not complied with Rule 37-1, including because they never provided Yuga Labs with any legal authority supporting their demand for confidential settlement communications. *Id.* So, that same day, February 14, Yuga Labs asked Defendants to provide authority supporting their position and to enable a meaningful meet and confer on Defendants' highly intrusive discovery request. *Id.* Defendants provided no legal authority on Tuesday, February 14. *Id.* Or on Wednesday, February 15. *Id.* Or on Thursday, February 16, **until 8:36 p.m.** — less than 24 hours before filing this *ex parte* application. *Id.*

The very next morning, February 17, counsel for Yuga Labs proposed to meet and confer, as Local Rule 37-1 requires. *Id.* Two hours later, Defendants refused that offer to meet and confer, and asked to meet and confer within one hour (and less than 24 hours after they shared any authority for their discovery request).[1] *Id.* Defendants' counsel's email suggested that they wanted an earlier meet and confer discussion. So, as a further compromise, Yuga Labs offered additional dates to meet and confer this coming week on Tuesday and Wednesday. *Id.* But rather than assess those dates, and properly meet and confer, Defendants were already in the rush of filing this procedurally and substantively defective *ex parte* application. Defendants could have avoided this unnecessary waste of resources by following Local Rule 37-1 from the start. Despite Yuga Labs' repeated offers to meet and confer, Defendants have not withdrawn their procedurally and substantively improper *ex parte* application.

Defendants took ten days from when they first asked Yuga Labs to produce the confidential settlement documents to when they ever provided a single authority to Yuga Labs which they claimed supported their request. Gosma Decl. Ex. 8. And, once they provided some authority, **Defendants gave Yuga Labs less time to evaluate those authorities and to meet and confer over the same, than they took to find and provide them**.[2]

### C. Defendants Did Not Comply with the Court's Procedures

This Court's procedures provide that "**absent an emergency, ex parte applications may not be used to obtain a ruling on a discovery**

---

[1] Not in that response (or elsewhere) did Defendants say they intended to file an *ex parte* application. *Id.*

[2] Even if Defendants believed — incorrectly — that their pre-February 16 emails complied with Local Rule 37-1 or that Yuga Labs was not complying with Local Rule 37-1, L.R. 37-2.4 provides their remedy was to file a declaration so stating and file an ordinary motion following the procedures in L.Rs. 6-1, 7-9 and 7-10. Local Rule 37-2.4 does not give Defendants permission to file an *ex parte* application under these circumstances, even had Defendants misunderstood the rules.

*dispute*." http://www.cacd.uscourts.gov/honorable-john-e-mcdermott (emphasis added). By their nature, *ex parte* applications are reserved solely for extraordinary relief. *See Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995); *see also* Standing Order (ECF 14) ¶ 6 (citing the same). Here, there is no emergency. Defendants noticed the hearing date for this potential dispute for March 21 — **over a month** from the date of filing this *ex parte* application. Further, their sense of urgency is artificial and one they created.[3]

After receiving Mr. Lehman's declaration, Defendants ultimately scheduled Mr. Lehman's deposition for March 2 — nearly two weeks from now — which is more than enough time for the parties to properly discuss any dispute, including under Local Rule 37-1. Defendants did not even seek deposition dates later in March that would allow them even more time to meet and confer on these issues and, if necessary, seek relief from the Court. Gosma Decl. Ex. 9.

They also could have — and should have — followed Local Rule 37 and requested an order shortening time, if necessary. Their supposed emergency results from their own actions and lack of diligence in observing the Court's discovery procedures. The Court should deny Defendants' *ex parte* application because it was filed in violation of this Court's rules and no emergency exists. The parties can and should continue to meet and confer on these issues.

**II.   THE COURT SHOULD REJECT DEFENDANTS' EFFORTS TO DISCOVER CONFIDENTIAL SETTLEMENT COMMUNICATIONS, WHICH WILL CHILL FURTHER SETTLEMENT EFFORTS**

Though the Court need not reach this issue on Defendants' procedurally

---

[3] It is also perplexing since at the same time Defendants are rushing to have this Court rule on an *ex parte* application over this holiday weekend, they are preparing to file a motion to stay this case. ECF 106. It is entirely reasonable for Yuga Labs to have understood that Defendants would pursue their dispute, if at all, through Local Rule 37-1 since at the same time the parties were emailing about these documents they were meeting and conferring about whether Judge Walter should order a stay. Moreover, Defendants' own communications reference Rule 37-1, not LR 7-19. Gosma Decl. Ex. 8.

inappropriate "emergency" request, Defendants' application is also meritless. They request confidential settlement communications with a third party relating to the resolution of a separate litigation (which the third party also objected to producing, Ball Decl. Ex. 3), which are irrelevant and not proportionate to the needs of the case. Though Defendants have strategically limited Yuga Labs' time to evaluate their proposed authorities, Yuga Labs' review so far reveals that Defendants have no basis for making this extraordinary request to invade confidential settlement negotiations and negotiations where the parties bargained for that very confidentiality and where both parties to that agreement have objected to Defendants' discovery into confidential settlement materials. Even in this early stage of review, Defendants' own authority undermines their position.

Specifically, Defendants' authority confirms that to obtain confidential settlement materials Defendants must make a "particularized and/or heightened showing that the settlement information sought is relevant and likely to lead to admissible evidence." *Peters v. Equifax Info. Servs. LLC*, No. 12-cv-01837-TJH (OPx), 2013 WL 12169355, at *2 (C.D. Cal. Dec. 13, 2013). Defendants have not met this high burden and make no attempt to meet it, except by a conclusory statement that Mr. Lehman's declaration contains statements that "have been taken out of context or are simply incorrect." Defendants' Application ("App.") (ECF 108-1 at 7). Tellingly, in *Peters*, which Defendants cite, the court found that vague allegations of credibility issues (such as those Defendants make here) did not meet this heightened standard. *Peters,* 2013 WL 12169355 at *3. Indeed, this is the same justification that any party seeking to discover confidential settlement agreements and communications would presumably use; it certainly does not rise to the level of a heightened showing.

"Judicial policy favors settlements and confidentiality promotes settlement." *Ironhawk Tech. v. Dropbox*, No. CV 18-01481-DDP (JEMx), 2019 WL 13032152, at *1 (C.D. Cal. Mar. 20, 2019). When weighing one party's "interest in preserving

the bargained for confidentiality of its settlement agreement" against the other party's "interest in discovery," courts regularly find that "expectations of confidentiality should be protected." *Id.* at *2. As courts in this district have noted, "the public policy favoring efficient settlements supports heightened scrutiny regarding their production." *Big Baboon Corp. v. Dell, Inc.*, No. CV 09-01198 SVW (SSx), 2010 WL 3955831, at *4 (C.D. Cal. Oct. 8, 2010). In light of this policy, courts routinely protect confidential settlement materials from discovery. *See e.g.*, *id.*; *Peters*, 2013 WL 12169355, at *3 (holding settlement agreements with co-defendants not discoverable); *Contreras v. Kohl's Dep't Stores, Inc.*, No. EDCV 16-2678-JGB (KKx), 2017 WL 6372646, at *3 (C.D. Cal. Dec. 12, 2017) (refusing to compel production of settlement agreements because not proportionate to needs of case); *Hem & Thread, Inc. v. Wholesalefashionsquare.com*, 2:19-cv-00283-CBM-AFMx, 2020 WL 5044610, at *3 (C.D. Cal. June 16, 2020) (protecting settlement negotiations and draft agreements because such disclosures "can have a 'chilling effect' on negotiations and may intrude into the settlement process."). Defendants have also failed to explain why their "need for such confidential documents outweighs the privacy interests of the parties who entered into them." *Marsh v. Bloomberg Inc*, No. 16-cv-02647-MEJ, 2017 WL 2224250, at *2 (N.D. Cal. May 22, 2017) (refusing to order the production of confidential settlement agreements).

Though it is not the only reason to deny Defendants' request, the risk of a chilling effect is not hypothetical here. Mr. Lehman "participated in a business venture" with Defendants that infringed the trademarks Yuga Labs asserts in this case. Gosma Decl. Exs. 5 and 7; *see also* ECF 62 ("In this case, the Court concludes that Defendants' use of the BAYC Marks does not constitute nominative fair use. Defendants are not using the BAYC Marks to sell Plaintiff's BAYC NFTs, **but to sell their own competing RR/BAYC NFTs**.") (emphasis added); ECF 98-9, Ex. 2 at page 11 (Defendant Cahen messaging to Defendant Ripps before this

lawsuit was filed that "per our attorney we may just need to change the skull If we want to fight trademark"). Defendants and Lehman also worked with another party who is a defendant in another court. *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev.)). Therefore, there will be a very real chilling effect on settlement discussions where one party wants a confidential settlement provision but knows that the agreed confidentiality may be hollow because the Court may order its production in other litigation. An order that Yuga Labs produce these confidential materials could render a common provision to achieve settlement meaningless. Moreover, there would be a further chilling of settlement discussions in this and other lawsuits if Defendants — and their cohorts — know what provisions, if any, Yuga Labs compromised on in its similar negotiations with other parties under similar facts.[4] Allowing discovery of the confidential settlement agreement and negotiations will prejudice settlement negotiations and deter all involved parties from candidly and earnestly approaching any efficient resolution. Defendants have provided no "particularized and/or heightened showing" to warrant departing from this sound policy encouraging candor and settlement.

### III. DEFENDANTS DO NOT NEED THE CONFIDENTIAL SETTLEMENT COMMUNICATIONS FOR ANY LEGITIMATE PURPOSE

Defendants do not even contend that the documents they seek in this improper *ex parte* application are relevant to any element of any party's claims or defenses. They also are inadmissible under Fed. R. Evid. 408. The only purpose even asserted is to test "the credibility of the statements in Mr. Lehman's affidavit." Gosma Decl. ¶ 3. But, Defendants do not need confidential settlement communications to do that.

---

[4] Defendants contend that the protective order in this case protects against any harm related to the disclosure of these confidential materials. Not so. In any negotiations between Defendants and Yuga Labs, Defendants' lawyers would unfairly benefit from knowing Yuga Labs' lawyers' and Mr. Lehman's lawyer's positioning and responses to each other in their negotiations. The net effect of ordering this production could be to doom discussions in this lawsuit by giving Defendants' counsel an improper advantage.

If Defendants think Mr. Lehman has perjured himself in his declaration, they should take a deposition (which they have scheduled) and prove that. Yuga Labs has not opposed, and does not oppose, that deposition; it has not sought, and does not seek, to prevent questions on this topic. *Id.* Ex. 9. Defendants have in their possession Mr. Lehman's written documents which are the source of the statements in his declaration. For example, Mr. Lehman swore in his declaration that "I wrote in the Team ApeMarket Discord that 'But yes, I guess RR/BAYC is low effort scam / art.'" *Id.* Ex. 7 at ¶ 17. Defendants can question Mr. Lehman regarding his admissions that the Defendants' actions were a scam. Defendants obviously have their Team ApeMarket Discord communications with Mr. Lehman. Confidential settlement communications are not relevant to whether Mr. Lehman's statement is true or not. This is true for the entire declaration. Although Defendants contend that many of the statements in Mr. Lehman's declaration "have been taken out of context or are simply incorrect," (App. at 7), they do not need confidential settlement communications to put Mr. Lehman's statements in the context they think is correct. The documents they need to try to prove that Mr. Lehman's declaration is false or out of context, which is their apparent purpose in seeking confidential settlement communications, are all already in their possession.[5]

In sum, Defendants' own case law demonstrates that they are not entitled to the discovery that they seek, this discovery is not relevant or likely to lead to admissible evidence, and the purposes for which they seek it are not proportionate to any legitimate need of the case, especially considering the evidence they have (*e.g.* Team ApeMarket Discord) and their scheduled deposition.

---

[5] Mr. Lehman is also not a secret witness. If they wanted to ensure they knew why he wrote these things in the Team ApeMarket Discord, they could have served him with a deposition subpoena long before February 7, 2023. Any urgency they feel in not understanding Mr. Lehman's testimony now is due to their own delay in not pursuing discovery from him sooner than February 2023.

## IV. THE COURT SHOULD AWARD YUGA LABS ITS ATTORNEYS' FEES AND COSTS AS A SANCTION TO DEFENDANTS FOR FILING THIS *EX PARTE* APPLICATION

A court may impose sanctions under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). A court may exercise this power by requiring the sanctioned party to pay the opposing party's attorney's fees. *Id.*; *see also William v. AES Corp.*, No. CV 13-2326 PSG (PLA), 2013 WL 12205039, at *2 (C.D. Cal. Dec. 11, 2013) ("*ex parte* applications are not vehicles for litigating new issues that should have initially been raised at a more appropriate time."). Although the relevant authority did not require it to do so, on February 14 Yuga Labs offered Defendants a compromise that would have obviated this discovery dispute; Defendants rejected it. Gosma Decl. Ex. 8. Instead, Defendants flouted the Court's rules and filed this *ex parte* application without notice one hour before close of business on a Friday afternoon before a holiday weekend. This application was served for improper purposes of harassment and increasing the cost of litigation, and it is an unexcused refusal to cooperate or follow the Court's discovery procedures. Therefore, the Court should award Yuga Labs its attorneys' fees and costs responding to this procedurally improper *ex parte* application. *See also* L.R. 37-4 ("The failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions.").

Moreover, consistent with their campaign of abusing the litigation and discovery process, including with the filing of frivolous counterclaims, this is not the first time that Defendants have tactically timed their filings to require responses during or immediately following holiday weekends, and it is not the first time they have violated the procedural rules for discovery disputes.[6] *See* ECF 98-1 at 8-9

---

[6] Defendants' first Local Rule 37-1 letter was sent such that the time to meet and confer overlapped completely with the Thanksgiving holiday and the meet and confer had to be completed on the Monday immediately following Thanksgiving. *See* ECF 69-9. Defendants then timed their first joint stipulation such that Yuga

(discussing Defendants' filing of a discovery motion without following the procedures of L.R. 37-1); *see generally* ECF 103-1 (discussing Defendants' filing of a discovery motion on several issues without conferring or cooperating in resolving mooted issues). If not sanctioned, it will likely not be the last.

Indeed, this is not Defendants' first open display of contempt for the Court's rules and procedures. Defendants filed a motion violating the Court's Standing Order twice in a row, resulting in an Order to Show Cause why the Court should not issue sanctions. ECF 33, 40. In response, Defendants assured the Court that "Lead Counsel and all counsel for Defendants understand the importance of complying with the Court's orders" and "will take additional care to follow the Court's rules and avoid such errors in the future." ECF 41 at 4. Lead Counsel for Defendants declared the same under penalty of perjury. ECF 42. Unlike those instances, there is no good-faith reading of the Court's rules that justify this *ex parte* filing and Defendants' violation of Local Rules 7-19 and 37. When Defendants do not like the rules, they simply do not follow them.

## V. CONCLUSION

Yuga Labs respectfully asks the Court to deny Defendants' application and award Yuga Labs' its attorneys' fees and costs incurred in responding to the application. In the alternative, Yuga Labs requests that the Court permit Yuga Labs to substantively respond by February 28, in accordance with L.R. 7-9 (allowing opposing papers to be filed "not later than twenty-one (21) days before the date designated for the hearing of the motion").

---

Labs' response was due the day after the Christmas holiday and refused to grant a three-day extension. *See* ECF 69-1, 69-36. Then, on December 27, 2022, Defendants filed counterclaims early, timed such that Yuga Labs' answer was due on the day after Martin Luther King Jr. Day, *see* ECF 65, and have subsequently taken the position that, as a result, Yuga Labs' last day to file their Motion to Dismiss was 17 (not 21) days after Defendants filed their counterclaims (ECF 101-1 at 4).

| | | |
|---|---|---|
| Dated: February 18, 2023 | | FENWICK & WEST LLP |

By: */s/ Eric Ball*
    Eric Ball
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.