ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

YUGA LABS, INC.,

Plaintiff and
Counterclaim Defendant,

v.

RYDER RIPPS, JEREMY CAHEN,

Defendants and
Counterclaim Plaintiffs.

Case No.: 2:22-cv-04355-JFW-JEM

**DISCOVERY MATTER**

**PLAINTIFF YUGA LABS, INC.'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR ORDER SHORTENING TIME**

Mag. Judge: Hon. John E. McDermott
Motion Hearing Date: March 21, 2023
Motion Hearing Time: 10:00 AM
Discovery Cutoff Date: April 3, 2023
Pre-Trial Conference Date: June 9, 2023
Trial Date: June 27, 2023

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: 202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

For the second time in five days, Defendants apply under this Court's emergency procedures "to obtain a ruling on a discovery dispute." *See* http://www.cacd.uscourts.gov/honorable-john-e-mcdermott. This is an improper and tactical abuse of *ex parte* applications to impose significant and unwarranted burden on Plaintiff Yuga Labs, Inc. ("Yuga Labs"), merely because Defendants prefer not to follow the Court's discovery procedures and have refused reasonable resolutions to the "emergency" of their own creation. The *ex parte* application should be denied, and Defendants should be meaningfully sanctioned.

## I. BACKGROUND

### A. Subpoenas to Thomas Lehman, Demands for Documents from Yuga Labs, and Defendants' First *Ex Parte* Application

On February 7, 2023, Defendants notified Yuga Labs that they would serve subpoenas on non-party Thomas Lehman and his attorney. Declaration of Eric Ball ("Ball Decl.") Exhibit 1. These subpoenas demanded production of documents within three days, including a confidential settlement agreement between Yuga Labs and Mr. Lehman in another lawsuit in the Northern District of New York, and confidential communications regarding that settlement ("Confidential Settlement Materials"). *Id.* They also noticed a deposition within six days. *Id.* Mr. Lehman and his attorney complied with Defendants' unnecessarily urgent request by serving responses and objections on February 9. Ball Decl. Exhibit 2. Defendants then agreed to reschedule Mr. Lehman's deposition for March 2. *See* Defendants' *Ex Parte* App. (Dkt. 115) ("*Ex Parte* App.") at 1.

Separately, Defendants demanded that Yuga Labs produce the Confidential Settlement Materials in discovery.[1] But, despite Yuga Labs' requests, Defendants

[1] Yuga Labs objects to Defendants' inaccurate and misleading characterization of events. Defendants misleadingly claim in their *ex parte* application and in the supporting declaration that Yuga Labs did not answer their email demands. Dkt. 115 at 1; *see also* Dkt. 115-1 ¶ 5. Defendants sent a two-sentence demand for documents on February 6, 2023 with no substantive explanation or supporting authority beyond their opinion that these materials were "obviously" responsive.

refused to serve a letter setting forth their position and authorities, as required under L.R. 37-1, and as necessary to allow for a meaningful meet and confer. Ball Decl. Exhibit 3 at 6, 7. After Yuga Labs' repeated requests for any authority, Defendants finally provided their purported authorities late on the evening of February 16, 2023. *Id.* Defendants then demanded an immediate meet and confer without giving Yuga Labs time to assess any of the authorities. Next, even after Yuga Labs agreed to meet and confer, and less than 24 hours after providing purported authority for their discovery demands, Defendants filed their first improper *ex parte* application to compel discovery. Dkt. 108. Defendants did so on the Friday afternoon before a federal holiday without following the Court's procedures for *ex parte* applications, including by failing to ever inform Yuga Labs of their intent to move *ex parte* for emergency relief. *See generally* Opp. to *Ex Parte* App. (Dkt. 113). Defendants then waited until Yuga Labs had undergone the burden of responding to Defendants' improper *ex parte* application before Defendants withdrew the application. Notice of Withdrawal (Dkt. 114). The Court has not yet ruled on whether Yuga Labs is entitled to its attorneys' fees and costs expended on responding to Defendants' improper emergency filing.

### B. Meet and Confer and Second *Ex Parte* Application

On February 21, 2023, the parties met and conferred on Defendants' requests for the Confidential Settlement Materials. *See* Ball Decl. Exhibit 3. Since filing their first *ex parte* application, Defendants formed an additional alleged basis for seeking the Confidential Settlement Materials. *Id.* Yuga Labs disputes Defendants' positions. *Id.*[2] Yuga Labs reiterated its objection to Defendants'

---

Dkt. 115-3. Thereafter, Mr. Lehman objected to the production. In their Exhibit 2, Defendants omit Yuga Labs' email stating that "[w]e are assessing your request, as well as Mr. Lehman's objections to your subpoenas, and we will provide you with a response next week." Ball Decl. Exhibit 3 at 8.

[2] Defendants do not seek an order on the substance of their forthcoming discovery motion, and therefore Yuga Labs does not address the substance of those arguments in this opposition. However, for the reasons discussed in its Opposition to the

claims that this dispute constituted an "emergency" issue for the Court, given that Defendants can depose Mr. Lehman on these topics (and, if desired, move his deposition). *Id.*

The same day as the meet and confer, Defendants indicated to Yuga Labs for the first time by email that the intended to file this *ex parte* application to shorten time. Defendants propose giving Yuga Labs ***two days and no supplemental briefing*** to respond to their arguments to compel production of the Confidential Settlement Materials. *Id.* Worse still, ***Defendants had at least four extra days to manufacture new arguments*** — and new purported case law — for their demands, and yet they demand that Yuga Labs receive only two days to respond to these new arguments. Yuga Labs did not agree to this proposal, including because the unilateral shortening of time to respond would be prejudicial and because the relief sought is unnecessary. In an email response Defendants omitted from their filing, Yuga Labs also warned Defendants that this filing was an improper use of the Court's *ex parte* procedures, and that Yuga Labs would seek attorneys' fees for responding to this (and the previous, withdrawn) *ex parte* application. *Id.* Defendants proceeded to file this *ex parte* application the same evening.

## II. ARGUMENT

### A. There Is No Emergency Justifying This *Ex Parte* Application

As with Defendants' previous filing, there is no emergency justifying this *ex parte* application. Defendants have not been prevented from deposing Mr. Lehman (including on the Confidential Settlement Materials). If they prefer to obtain an order on their discovery dispute before the deposition, which they voluntarily scheduled with knowledge of this dispute, they can file a motion to compel pursuant to Local Rule 37 and reschedule the deposition to first resolve that

---

original *ex parte* application (Dkt. 113), Defendants' requests have no merit. Defendants' conclusory assertion that "Mr. Lehman's settlement and the discussions surrounding the settlement likely contain highly relevant material," *Ex Parte* App. at 3, does not establish otherwise.

motion.[3] Defendants also could have served their joint stipulation and filed their motion in ordinary course and then sought to shorten time on the hearing (either by stipulation or by a narrower motion limited to shortening time on a hearing). Instead, they want to have their cake and eat it too, keeping their current deposition date and demanding disputed discovery within the "deadline" they arbitrarily set. Defendants have yet to offer ***any explanation*** as to why Mr. Lehman's deposition needs to happen immediately or any prejudice that would result from them taking that deposition later in discovery. Nor have they explained their delay in following Local Rule 37 in failing, despite Yuga Labs' request, to provide the requested purported authority until late last week, and then belatedly providing new supposed authority only yesterday. They use these delays and scheduling issues of their own making to impose the burdens of an emergency application on the Court and on Yuga Labs.

Defendants' arguments of irreparable harm are unjustified. It is not irreparable harm to have to wait the prescribed amount of time, or even to reschedule a deposition, to resolve a discovery dispute. *See Komaiko v. LegalZoom.com, Inc.*, No. CV 15-7877-R, 2016 WL 9023013, at *2 (C.D. Cal. May 24, 2016) ("a mere showing that the discovery may involve some inconvenience or expense does not suffice to establish good cause"). Though Defendants rely on *BF&W Assoc. v. Motorola, Inc.*, No. C5-02381 JF HRL, 2006 WL 8442394, at *2 (N.D. Cal. Aug. 28, 2006), the moving party there did not seek relief through an *ex parte* application, and that authority provides no excuse for Defendants' abuse of the *ex parte* process. Further, the court in that case shortened time to respond to a subpoena from 30 days to 19 days. Here, Defendants ask for an order forcing Yuga Labs to respond to a discovery motion in ***two days — even after Defendants had***

[3] Had Defendants not filed this *ex parte* application, Yuga Labs' response to their Joint Stipulation would be due next week, after which a motion could be filed with a hearing date of March 28 — before the close of discovery.

***had weeks to prepare their arguments***. Defendants' only claimed prejudice is having to follow the Court's rules for discovery. This is not a cognizable prejudice, and it certainly is not an irreparable one.

### B. Defendants' Requested Order Shortening Time Would Unfairly Prejudice Yuga Labs

*Mission Power* — the principal authority on which Defendants' *ex parte* application relies — warns of the perils of the very tactics Defendants employ here. "The fact that opposing parties are usually given an opportunity to argue or file opposing papers does not mask the plain truth: these hybrid ex parte motions [i.e., 'requests for action by the court made outside the framework of the rules'] are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, ***the parties' opportunities to prepare are grossly unbalanced***. Often, the moving party's papers reflect days . . . of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. ***The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice***." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995) (emphases added).

Here, Defendants filed their first *ex parte* application as a surprise motion forcing an immediate response. They then withdrew that application after forcing Yuga Labs to respond and realizing their various improprieties. Defendants at least nominally[4] observed the procedures for this present filing, but it is nonetheless an

[4] As Mr. Gosma's declaration (Dkt. 115-1) concedes, he did not attempt to provide oral notice of Defendants' current *ex parte* motion. Instead, only in an after-hours email, did Defendants provide notice of this latest *ex parte* motion. This failure to provide oral notice of the *ex parte* motion violates Local Rule 7-19.1.

unjustified attempt by Defendants to exempt themselves from the Court's rules at the expense of fairness. Defendants have continued to evolve their arguments in support of a motion to compel the Confidential Settlement Materials through the date of their second *ex parte* application, when they unveiled a new alternative theory and purported case law for discovery of the documents. Ball Decl. Exhibit 3. While they had the opportunity to distill these arguments into a L.R. 37-2 Joint Stipulation. Defendants ask the Court to impose an asymmetrical timing constraint on Yuga Labs, forcing a response in ***two days***, after which their motion would be deemed submitted with no additional memoranda (and apparently no hearing), contrary to the Court's discovery procedures. Ball Decl. Exhibit 4. Half of this response time will be consumed responding to Defendants' current *ex parte* application. Especially in light of the stakes — discovery that intrudes into the settlement negotiations and agreements of a non-party and Yuga Labs — it would be fundamentally unfair to proceed to hear this issue without the full briefing set forth by the Court's discovery procedures. *See In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) ("Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason.").

### C. The Court Should Sanction Defendants for Repeated Abuse of the *Ex Parte* Procedures

A court may impose sanctions under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (cleaned up). A court may exercise this power by requiring the sanctioned party to pay the opposing party's attorney's fees. *Id.*; *see also William v. AES Corp.*, No. CV 13-2326 PSG (PLA), 2013 WL

12205039, at *2 (C.D. Cal. Dec. 11, 2013) ("*ex parte* applications are not vehicles for litigating new issues that should have initially been raised at a more appropriate time.").

Defendants' first *ex parte* application violated nearly every applicable rule and procedure. *See generally* Opp. to *Ex Parte* App. (Dkt. 113). Defendants recognized this only as a result of Yuga Labs' briefing and withdrew their improper filing. Dkt. 114. Defendants now petition the Court for emergency relief on a discovery issue for the second time in two business days. As discussed above, this *ex parte* application is grossly improper as well. Defendants forced Yuga Labs to respond substantively to their improper filing, which they withdrew only after obtaining the tactical advantage of previewing Yuga Labs' positions — only to return to the Court asking to file a motion with new arguments seeking the same materials. Yuga Labs put Defendants on notice that this filing would expose them to sanctions. Ball Decl. Exhibit 3. As Yuga Labs pointed out in its previous filing, this "is not the first time [Defendants] have violated the procedural rules for discovery disputes," and as Yuga Labs accurately predicted in that same filing, "[i]f not sanctioned, it will likely not be the last." Opp. to *Ex Parte* App. (Dkt. 113) at 9–10.

The Court should award Yuga Labs its attorneys' fees and costs responding to both improper *ex parte* applications meant to needlessly circumvent the Court's discovery procedures. *See also* L.R. 37-4 ("The failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions.").

Given the back-to-back nature of these abusive *ex parte* applications, Yuga Labs also asks the Court to impose a meaningful prophylactic against further abusive discovery filings. For instance, Defendants should be required to seek leave from the Court before filing future *ex parte* applications for discovery issues and forcing Yuga Labs to expend resources on an emergency basis to respond.

## III. CONCLUSION

Yuga Labs respectfully asks the Court to deny Defendants' application and award Yuga Labs' its attorneys' fees and costs incurred in responding to Defendants' two improper *ex parte* applications, in addition to any further sanctions the Court deems necessary and appropriate.

Dated: February 22, 2023

FENWICK & WEST LLP

By: */s/ Eric Ball*
Eric Ball
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.