Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants/Counterclaim
Plaintiffs *Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>            Plaintiff and<br>            Counterclaim Defendant,<br><br>    v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>            Defendants and<br>            Counterclaim Plaintiffs. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**NOTICE OF MOTION; MOTION TO STAY PROCEEDINGS**<br><br>Hearing Date: Mar. 27, 2023, at 1:30p.m.<br>Judge: Hon. John F. Walter |

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 27, 2023, at 1:30 p.m., or at another time convenient for the Court, in Courtroom 7A of the First Street United States Courthouse at 350 W. 1st Street, Los Angeles, California, 90012 or in such manner as the Court directs, Defendants Ryder Ripps and Jeremy Cahen will move this Court to stay Yuga Labs, Inc.'s federal law causes of action pending appeal of its motion to strike pursuant to Cal. Civ. Proc. Code § 425.16(c).

This motion is made following conferences of counsel pursuant to L.R. 7-3 which took place on February 14, 2023.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF RELIEF SOUGHT

Defendants Ryder Ripps and Jeremy Cahen respectfully request that the Court stay Yuga Labs, Inc.'s Claims 1-3 in the Complaint pending appeal of the denial of Defendants' motion pursuant to Cal. Civ. Proc. Code. § 425.16(c).

Dated: February 23, 2023

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................... 1

II.    LEGAL STANDARD .................................................................... 2

III.   ARGUMENT ................................................................................. 3

    A.    The Orderly Course Of Justice Is Best Served By A Stay .................. 3

    B.    Both Parties, But Especially Defendants, Would Be Harmed In The Absence of a Stay ......................................................................... 6

    C.    The Efficiency of a Stay Far Outweighs Any Potential Harm to Yuga ....................................................................................................... 7

D.    CONCLUSION ............................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071 (9th Cir. 2015) ..............................4

*Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019) ............4

*Barbaria v. Blinken*, 22-cv-05521-SI, 2023 WL 187497 (N.D. Cal. Jan. 13, 2023) ........................................................................................................5

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ....................................................7

*Filtrol Corp. v. Kelleher*, 467 F.2d 242 (9th Cir. 1972) ............................................2

*Finder v. Leprino Foods Co.*, 1:13-cv-02059-AWI-BAM, 2017 WL 1355104 (E.D. Cal. Jan. 20, 2017) ................................................................6

*Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018) ................................5

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414 (9th Cir. 2014) ................................................................................3

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010)..........................................1

*Intel Corp. v. Tela Innovations, Inc.*, 2021 WL 783560 (N.D. Cal. Mar. 1, 2021) ..........................................................................................................6

*Knepper v. Equifax Info. Servs.*, LLC, 2:17-cv-02368-KJD-CWH, 2017 WL 4369473 (D. Nev. Oct. 2, 2017) ..............................................................6

*Kuang v. U.S. Dep't of Defense*, 2019 WL 1597495 (N.D. Cal. Apr. 15, 2019) ..........................................................................................................3

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................3

*Landis v. N. Am. Water Works & Elec. Co.*, 299 U.S. 248 (1936) ..........................3

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005)................................ 2-3, 3

*Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) .................4

*Peck v. County of Orange*, 528 F. Supp. 3d 1000 (C. D. Cal. 2021) ...................1, 7

*Punchbowl, Inc. v. AJ Press, LLC*, 52 F.4th 1091 (9th Cir. 2022) ..........................4

-ii-

*Reynolds v. Geico Corp.*, 2:16-cv-01940-SU, 2017 WL 815238 (D. Or.
   Mar. 1, 2017) ................................................................................................6

*Sarkar v. Garland*, 39 F.4th 611 (9th Cir. 2022) ......................................................3

*Tanedo v. East Baton Rouge Sch. Dist.*, 2012 WL 12920642
   (C.D. Cal. 2012) ..........................................................................................2

*Twentieth Century Fox Television v. Empire Distrib. Corp.*, 875 F.3d
   1192 (9th Cir. 2017) ....................................................................................4

*Varian Medical Sys. v. Delfino*, 35 Cal.4th 180 (2005) ..........................................6

*Youngevity Int'l v. Smith*, No. 16-cv-704-BTM-JLB, 2018 WL 3426266
   (S.D. Cal. 2018).......................................................................................3, 7

*Yuga Labs, Inc. v. Ripps & Cahen*, Case No. 22-56199, Dkt. 11 (9th Cir.)
   .......................................................................................................................3

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 1125(d)(1)(B)(i)(IV) ...............................................................................4

15 U.S.C. § 1125(d)(1)(B)(i)(V) ................................................................................4

## I.      INTRODUCTION

Defendants respectfully request that this Court stay Plaintiff Yuga Labs, Inc.'s three federal claims while the Ninth Circuit resolves Defendants' anti-SLAPP challenge to seven related state-law claims.  Given the substantial overlap between the issues Defendants raise on appeal and the federal claims over which this Court retains jurisdiction, judicial economy strongly counsels in favor of staying the federal claims pending resolution of the appeal.

Late last year, this Court denied Defendants' anti-SLAPP motion to strike Yuga's state-law causes of action.  *See* Dkt. 62 at 11.  In particular, the Court held that Yuga's claims targeted only Defendants' "commercial use of the BAYC Marks," rather than any "allegedly protected speech," and that Defendants had therefore failed to satisfy their initial burden to show that California's anti-SLAPP statute applies to Yuga's claims.  Dkt. 62 at 10-11.

Defendants promptly appealed, meaning that this Court has been "divest[ed] of its control over those aspects of the case involved in the appeal"—here, Yuga's state-law claims.  *See Peck v. County of Orange*, 528 F. Supp. 3d 1100, 1103 (C. D. Cal. 2021); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) (similar).[1]  However, because the anti-SLAPP statute only applies to state-law claims, Yuga's three federal claims—which implicate the same questions the Ninth Circuit is poised to address on appeal—remain pending, and trial is set for just four months from now, on June 27, 2023.

Allowing the case to proceed as currently scheduled will accordingly produce significant inefficiencies that disproportionately burden Defendants.  Defendants' appellate brief (filed on February 21, 2023) asks the Ninth Circuit to address the expressive content of Defendants' challenged conduct, as well as whether that conduct

---

[1] Yuga has not disputed that the state-law claims are automatically stayed pending appeal.

is protected under the First Amendment or the nominative fair use doctrine.  Because those questions bear equally on Yuga's federal claims, the Ninth Circuit's ruling is likely to at least clarify many of the issues that are currently set to go to trial—or, perhaps, obviate the need for a trial entirely if the Ninth Circuit agrees that either of Defendants' affirmative defenses apply.  But if the federal claims are not stayed in the meantime, a trial on those claims will almost certainly conclude before the Ninth Circuit renders its decision.  The burden of successive trials—or of a single trial that could have been avoided or simplified by waiting for the court of appeals—will fall disproportionately on Defendants, who lack the resources of a four-billion-dollar company like the Plaintiff in this case.  To avoid such inefficiency, the district court should temporarily stay these proceedings while the Ninth Circuit appeal is pending.

## II.  LEGAL STANDARD

"[T]he proper standard for determining whether to issue a stay pending appeal derives from [the] Court's inherent power to 'control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants.'" *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, No. LACV1001172JAKMLGX, 2012 WL 12920642, at *3 (C.D. Cal. Mar. 30, 2012) (quoting *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)).

In deciding whether to stay proceedings pending appeal, courts consider three factors: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer [if the case is allowed] to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to

result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).[2]
Those factors counsel in favor of a stay where a pending anti-SLAPP appeal "may
have a significant effect" on the district court's disposition of other claims over which
it retains jurisdiction. *Youngevity International v. Smith*, No. 16-cv-704-BTM-JLB,
2018 WL 3426266 (S.D. Cal. 2018).

### III. ARGUMENT

#### A. The Orderly Course Of Justice Is Best Served By A Stay

The "orderly course of justice" would be well-served by a stay in this case. *See
Lockyer*, 398 F.3d at 1110. Whatever the result of the Ninth Circuit appeal, this "case
will be easier to decide"—and potentially much easier—after the appellate court has
rendered its decision. *Sarkar v. Garland*, 39 F.4th 611, 619 (9th Cir. 2022).

On appeal, Defendants challenge the district court's holding, at step one of the
anti-SLAPP inquiry, that Yuga's claims target only Defendants' "commercial use of
the BAYC Marks," rather than any "allegedly protected speech." *See Yuga Labs, Inc.
v. Ripps & Cahen*, Case No. 22-56199, Dkt. 11 at 20-26 (9th Cir.) (quoting Dkt. 62 at
9). And, consistent with the Ninth Circuit's practice in prior cases, *see Greater L.A.
Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir.
2014), Defendants have also requested that the Ninth Circuit reach the second step of
the anti-SLAPP inquiry and decide whether Yuga has stated a claim with respect to its
state-law causes of action, *see Yuga Labs, Inc. v. Ripps & Cahen*, Case No. 22-56199,
Dkt. 11 at 26-40 (9th Cir.).

As a result, the Ninth Circuit's decision is likely to take up several important

---

[2] These are commonly known as the *Landis* factors. *See Landis v. N. Am. Water
Works & Elec. Co.*, 299 U.S. 248 (1936). Courts have "overwhelmingly concluded"
that "*Landis* applies to the decision to stay *proceedings*," while the test from *Nken v.
Holder*, 556 U.S. 418 (2009), applies "when there is a request to stay a district court's
*judgment or order*." *Kuang v. U.S. Dep't of Defense*, 18-cv-03698-JST, 2019 WL
1597495, at *3 (N.D. Cal. Apr. 15, 2019) (collecting cases).

-3-

1    questions.  As part of the threshold step one analysis, it is almost certain to address

2    whether and to what extent Defendants' NFT sales were "protected speech."  And

3    there is a reasonable prospect that it will also address whether Defendants' conduct is

4    protected under the First Amendment *Rogers* test or the nominative fair use doctrine,

5    because those defenses provide the basis for Defendants' step-two anti-SLAPP

6    arguments.  That will require the court to consider, among other things, whether

7    Defendants' NFTs misled consumers into believing that they were produced by

8    Plaintiffs or with Plaintiffs' approval.  *See Punchbowl, Inc. v. AJ Press, LLC*, 52 F.4th

9    1091, 1097 (9th Cir. 2022) (*Rogers* test requires a plaintiff to show that a challenged

10   work "explicitly misleads consumers as to the source or the content of the work");

11   *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003)

12   (nominative fair use is inapplicable where the user "suggest[s] sponsorship or

13   endorsement by the trademark holder").

14          Those are precisely the issues this court will be required to resolve with respect

15   to Yuga's federal claims for false designation of origin, false advertising, and

16   cybersquatting.  The *Rogers* test and nominative fair use doctrine apply directly to

17   Yuga's false designation of origin and false advertising claims.  *See Twentieth

18   Century Fox Television v. Empire Distrib. Corp.*, 875 F.3d 1192, 1195-1199 (9th Cir.

19   2017) (applying *Rogers* test to false designation of origin and false advertising

20   claims); *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 889, 893-898 (9th

21   Cir. 2019) (applying nominative fair use to false designation of origin claim); *Adobe

22   Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (applying nominative

23   fair use to false advertising claim).  And the statutory factors for assessing the "bad

24   faith" element of a cybersquatting claim turn on the very same questions—fair use and

25   likelihood of confusion—as do the *Rogers* and nominative fair use inquiries.  *See* 15

26   U.S.C. § 1125(d)(1)(B)(i)(IV) ("the person's bona fide … fair use of the mark");

27   § 1125(d)(1)(B)(i)(V) ("likelihood of confusion as to the source, sponsorship,

28

-4-

affiliation, or endorsement"). As a result, further litigation of Yuga's federal claims is likely to proceed more simply and efficiently if it is done with the benefit of the Ninth Circuit's ruling.

Even if the Ninth Circuit ends its inquiry at step one, its decision may still simplify or clarify issues in the district court. If it reverses and holds that Defendants' NFT sales were themselves "protected speech," rather than merely "commercial use[s]" of Yuga's marks, then its reasoning is likely to bear on the *Rogers* analysis. The threshold *Rogers* inquiry asks a nearly-identical question: whether an "allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018).

The Ninth Circuit is accordingly poised to address many of the same issues that this Court, and a jury, will have to resolve if no stay is granted. Rather than press ahead, this Court should wait for the appellate court to act—if the Ninth Circuit sides with Defendants, there may be no need for a trial at all, depending on how exactly the Ninth Circuit resolves the case. At a minimum, such a decision would substantially clarify and narrow the issues remaining to be tried. By contrast, if the federal claims proceed to trial before the Ninth Circuit rules, there is a very real possibility that its decision will precipitate a new trial and duplicative work for the parties and the court. *See Barbaria v. Blinken*, 22-cv-05521-SI, 2023 WL 187497, at *2 (N.D. Cal. Jan. 13, 2023) ("Many of the issues and legal theories being argued on appeal are identical to those raised in the case as a whole. … Waiting for the Ninth Circuit's decision would promote judicial economy by preventing the parties from litigating the same issues in multiple courts.").

The inefficiencies of parallel proceedings are no less if the Ninth Circuit sides with Yuga. In that event, the state-law claims would then return to the district court for additional proceedings on issues that overlap substantially with the already-litigated federal claims. A stay of the federal claims would ensure that, if Yuga

-5-

1  prevails on appeal, the state and federal claims can be litigated and tried together—as

2  makes sense, considering their substantial overlap.

3      Indeed, those claims share more than just legal questions in common—they are

4  also premised on virtually identical sets of facts relating to the RR/BAYC project.

5  Even if the Ninth Circuit's decision were not likely to shed light on common legal

6  questions, it would still not make sense to try this case twice.  Doing so would require

7  the parties to put on the same factual case in two separate trials to two separate juries.

8  There is no reason for such duplicative work when it can be easily avoided by means

9  of a stay.  *See, e.g.*, *Intel Corp. v. Tela Innovations, Inc.*, 3:18-cv-02848-WHO, 2021

10 WL 783560, at *12 (N.D. Cal. Mar. 1, 2021) (issuing a stay pending appeal where

11 there was "significant factual overlap" between appealed claims and claims set to be

12 tried, even though there was "no legal overlap").

13     **B. Both Parties, But Especially Defendants, Would Be Harmed In The**

14         **Absence of a Stay**

15     The same basic concerns about judicial efficiency discussed above weigh in

16 favor of a stay for another, independent reason—the lack of a stay would harm both

17 parties.  Unnecessary work—particularly duplicative or unnecessary trials—presents

18 substantial costs in the form of both time and resources.  *See Knepper v. Equifax Info.*

19 *Servs.,* LLC, 2:17-cv-02368-KJD-CWH, 2017 WL 4369473, at *2 (D. Nev. Oct. 2,

20 2017) (staying an action in order to "limit[] hardship or inequity … from unnecessary

21 proceedings, inconsistent rulings, duplicative discovery and having to relitigate

22 claims"); *Reynolds v. Geico Corp.*, 2:16-cv-01940-SU, 2017 WL 815238, at *5 (D.

23 Or. Mar. 1, 2017) ("hardship" includes "unnecessary discovery and trial preparation

24 on issues" that may be "modif[ied] or remove[d]" from the case by another decision);

25 *Finder v. Leprino Foods Co.*, 1:13-cv-02059-AWI-BAM, 2017 WL 1355104, at *4

26 (E.D. Cal. Jan. 20, 2017) ("'substantial, unrecoverable, and wasteful' discovery and

27 pretrial motions practice on matters that could be mooted by a pending appeal may

28

-6-

1   amount to hardship or inequity sufficient to justify a stay").  That is true for both sides
2   of this dispute, but the costs are likely to fall especially hard on Defendants as
3   individuals.  Defendants' capacity to weather multiple trials and redundant litigation is
4   naturally more limited than that of a multi-billion-dollar corporation like Yuga.

5       That dynamic is, indeed, just what California sought to address by enacting the
6   anti-SLAPP statute.  The statute aims to "prevent and deter lawsuits primarily brought
7   to chill the valid exercise of the constitutional freedoms of speech and petition for the
8   redress of grievances." *Varian Medical Sys. v. Delfino*, 35 Cal.4th 180, 192 (2005).  If
9   the Ninth Circuit ultimately agrees with Defendants that they have been subjected to
10  such a suit, its decision will do little good if it comes only after Defendants have
11  already been put through the personal and financial burdens of trial.

12      Numerous witnesses will also be required to testify multiple times to the same
13  facts.  Indeed, just yesterday, Yuga served initial supplemental disclosures identifying
14  more than *forty* witnesses (ten of which are still unidentified Does) that it claims have
15  relevant information about this case.  If all or even half of those witnesses testified
16  live, a stay could potentially prevent or at least mitigate the inconvenience to a large
17  group of individuals.

18  **C. The Efficiency of a Stay Far Outweighs Any Potential Harm to Yuga**

19      Courts must weigh the harm of failing to grant a stay with the harm deriving
20  from the stay.  The most common harm of a stay is delay.  But where "a stay will not
21  dramatically postpone the timeline of [a] case," delay does not counsel strongly
22  against pausing proceedings. *Peck*, 528 F. Supp. 3d at 1107.  And because
23  Defendants have already filed their opening brief, any delay in this case will be
24  measured in months, rather than years. *See Youngevity*, 2018 WL 3426266 at *1
25  ("[B]ecause an interlocutory appeal [of the denial of the anti-SLAPP motion] is
26  already pending, the Court does not find that a stay. . . would cause Counterclaimants
27  any prejudice.").  Furthermore, to justify denying a stay, a delay of proceedings must
28

-7-

threaten more harm than a somewhat longer wait to recover money damages.  *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268-269 (9th Cir. 1962).  But because Defendants are no longer selling any allegedly infringing NFTs, Yuga cannot make "a strong showing … that it will suffer irreparable damage [or] a miscarriage of justice" by delay.  *Id.*  To the contrary: speeding forward to trial is far more likely to subject *both* parties to unrecoverable expenditures and effort than would a temporary pause of district court proceedings.

**D.   CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court stay Plaintiff's federal claims while Defendants' appeal of this Court's anti-SLAPP decision is pending.

Dated:  February 23, 2023

By: /s/  *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

-8-

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on February 23, 2023.


By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000


**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Ryder Ripps and Jeremy Cahen, certifies that this brief contains 2378 words, which complies with the word limit of L.R. 11-6.1.


Dated: February 23, 2023          By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

-9-