1 | ERIC BALL (CSB No. 241327)
eball@fenwick.com
2 | KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
3 | FENWICK & WEST LLP
801 California Street
4 | Mountain View, CA  94041
Telephone:   650.988.8500
5 | Facsimile:   650.938.5200

6

7 | ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
8 | ethomas@fenwick.com
FENWICK & WEST LLP
9 | 555 California Street, 12th Floor
San Francisco, CA  94104
10 | Telephone:  415.875.2300

11 | *Additional Counsel listed on next page*

12 | Attorneys for Plaintiff and
Counterclaim Defendant
13 | YUGA LABS, INC.

14

15 | UNITED STATES DISTRICT COURT

16 | CENTRAL DISTRICT OF CALIFORNIA

17 | WESTERN DIVISION – Los Angeles

18

*Left margin, vertical:* FENWICK & WEST LLP
ATTORNEYS AT LAW

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff and Counterclaim Defendant, | **PLAINTIFF YUGA LABS, INC.'S OPPOSITION TO MOTION TO STAY PROCEEDINGS** |
| v. | Date:        March 27, 2023 |
| RYDER RIPPS, JEREMY CAHEN, | Time:        1:30 P.M.<br>Courtroom:  7A |
| Defendants and Counterclaim Plaintiffs. | Judge:        Hon. John F. Walter |

19, 20, 21, 22, 23, 24, 25, 26, 27, 28

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:   310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA  22314
Telephone:   202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................... 3

    A.    Yuga Labs' Business and Marks........................................... 3

    B.    Yuga Labs' Trademark Rights............................................. 4

    C.    Defendants' Blatant Infringement of the BAYC Marks........ 5

        1.    Defendants Admit to Using the BAYC Marks.............. 5

        2.    Defendants Sell the Exact Same Product (NFTs) as Yuga Labs in the Exact Same Marketing Channels.............................. 6

        3.    Defendants Caused Actual Confusion........................ 8

        4.    Defendants' Infringing Conduct Damaged Yuga Labs and Consumers. ................................................ 9

III.  PROCEDURAL HISTORY ............................................................... 10

IV.   ARGUMENT ................................................................................... 13

    A.    Defendants Fail to Establish that this Court Should Exercise Its Discretion to Stay the Federal Law Claims. ........................ 13

        1.    A Stay Will Result in Irreparable Harm to Yuga Labs and the Public. .................................................. 13

        2.    Defendants Face No Harm Absent a Stay. ................. 18

        3.    A Stay Would Not Serve the Orderly Course of Justice. ........... 20

            a.    Defendants' Appeal is Frivolous........................ 20

            b.    The Appeal Will Not Resolve Yuga Labs' Federal Claims. ................................................ 20

V.    CONCLUSION ................................................................................ 24

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anheuser-Busch Companies, LLC v. Clark*,
 622 F. App'x 671 (9th Cir. 2015)...........................................................................21

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
 No. 10-cv-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) ................ 16

*Babaria v. Blinken*,
 No. 22-cv-05521-SI, 2023 WL 187497 (N.D. Cal. Jan. 13, 2023) ...................... 23

*Bradberry v. T-Mobile USA, Inc.*,
 No. 06-cv-6567-CW, 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007).................... 17

*Breazeale v. Victim Servs., Inc.*,
 No. 14-cv-05266-VC, 2015 WL 13687730 (N.D. Cal. Sept. 14, 2015) ... 19, 21, 22

*Britton v. Co-op Banking Grp.*,
 916 F.2d 1405 (9th Cir. 1990) ............................................................................. 13

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
 174 F.3d 1054 (9th Cir. 1999) ............................................................................. 10

*CMAX, Inc. v. Hall*,
 300 F.2d 265 (9th Cir. 1962) ............................................................................... 15

*DBD Credit Funding LLC v. Silicon Labs., Inc.*,
 No. 16-cv-05111-LHK, 2016 WL 6893882 (N.D. Cal. Nov. 23, 2016).............. 17

*Exeltis USA Inc. v. First Databank, Inc.*,
 No. 17-cv-04810-HSG, 2018 WL 1989522 (N.D. Cal. Mar. 5, 2018) . 3, 13, 18, 20

*Finder v. Leprino Foods Co.*,
 No. 1:13-cv-02059-AWI-BAM, 2017 WL 1355104 (E.D. Cal. Jan. 20,
 2017)..................................................................................................................... 18

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
 742 F.3d 414 (9th Cir. 2014) ............................................................................... 21

*Intel Corp. v. Tela Innovations, Inc.*,
 No. 3:18-cv-02848-WHO, 2021 WL 783560 (N.D. Cal. Mar. 1, 2021).............. 23

*Internet Specialties West, Inc. v. Ispwest*,
 No. 05-cv-3296-FMC-AJWx, 2007 WL 9706068 (C.D. Cal. May 21, 2007)...... 14

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
 456 U.S. 844 (1982) ............................................................................................. 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Knepper v. Equifax Info. Servs., LLC*,
  No. 2:17-cv-02368-KJD-CWH, 2017 WL 4369473 (D. Nev. Oct. 2, 2017) ........ 18

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ...................................................................... 13, 18, 20, 23

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) .................................................... 16, 18, 20

*Makaeff v. Trump Univ., LLC*,
  No. 10-CV-940-IEG WVG, 2011 WL 613571 (S.D. Cal. Feb. 11, 2011) ........... 22

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................ 13

*Original Appalachian Artworks, Inc., v. Granada Elecs., Inc.*,
  640 F. Supp. 928 (S.D.N.Y. 1986) ........................................................ 14

*Peck v. Cnty. of Orange*,
  528 F. Supp. 3d 1100 (C.D. Cal. 2021) ............................................. 16, 17

*Phillip Morris USA Inc. v. Shalabi*,
  352 F. Supp. 2d 1067 (C.D. Cal. 2004) .................................................. 14

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991) ............................................................... 15

*Reynolds v. Geico Corp.*,
  No. 2:16-cv-01940-SU, 2017 WL 815238 (D. Or. Mar. 1, 2017) ...................... 18

*SMC Promotions, Inc. v. SMC Promotions*,
  355 F. Supp. 2d 1127 (C.D. Cal. 2005) .................................................. 15

*Sprint Solutions, Inc. v. Cell Wholesale, Inc.*,
  No. SACV 15-878-JLS, 2015 WL 13919095 (C.D. Cal. Dec. 10, 2015) ........... 15

**STATUTES AND RULES**

15 U.S.C. § 1116(a) ................................................................................ 15

Lanham Act ................................................................................. 9, 15, 19

Local Rule 7-3 ................................................................................. 12, 13

Trademark Modernization Act of 2020 .................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

Defendants' belated request for a stay is yet another example of their failure to litigate in good faith.  This case is proceeding under the expedited schedule that ***Defendants requested***.  Despite this, it has been nearly three months since Defendants filed their notice of appeal (Dkt. No. 63), and they first raised, and then abandoned, a potential motion to stay proceedings.  *See* Declaration of Eric Ball ¶¶ 3-6.  But Defendants' motion provides no explanation as to their delay.  Nor can they. Defendants' renewed interest to stay proceedings comes on the heels of the issuance of a consent judgment and permanent injunction against Defendants' co-conspirator and software developer.  *See id.*, Ex. 31.  Now that Defendants are having to answer for their scam without any viable defenses and trial mere months away, Defendants are desperate for a stay.

Even worse, despite indicating in the parties' meet and confer discussions and in the Joint Statement that Defendants were seeking a stay of *all* proceedings, (*see* Dkt. No. 106 at 1), Defendants now appear to request that this Court stay Yuga Labs' claims in their entirety while Defendants' counterclaims (to the extent any survive Yuga Labs' pending motions to strike and dismiss) proceed.  Meanwhile, Defendants continue their money-making scheme by promoting and collecting royalties on infringing "RR/BAYC" non-fungible tokens ("NFTs"), Yuga Labs continues to incur substantial harm to their brand, and consumers continue to be explicitly misled by Defendants' willful infringement.

Ever since Defendants notified Yuga Labs in early January that they were abandoning their stay motion, this case has been moving at a fast clip—indeed, the case docket has doubled since Defendants filed their notice of appeal.  *See* Ball Decl. ¶¶ 8-11.  More specifically:

- The parties are well into discovery:  Defendants have noticed fourteen depositions, and have threatened at least four more.  Of these, Defendants have taken four depositions (including depositions of Yuga Labs' 30(b)(6)

Fenwick & West LLP
Attorneys at Law

witness, former CEO, founders, and director), and have six scheduled to be taken.  Yuga Labs has noticed six depositions, have taken three depositions, and have at least three scheduled to be taken.  *Id.* ¶ 8.

- Defendants filed counterclaims, and then used those counterclaims to perpetuate their pattern of seeking discovery into topics targeted to harass Yuga Labs but that they have no intention of actually pursuing at trial.

- Because of Defendants' abusive litigation tactics, Yuga Labs was forced to file an anti-SLAPP motion and motion to dismiss on Defendants' counterclaims.  (Indeed, despite first seeking harassing discovery under their declaration of no defamation counterclaim, they dropped the counterclaim rather than respond to Yuga Labs' motion to dismiss (*see* Dkt No. 96 at 21)).

- In February, Yuga Labs served three expert reports, whose depositions are scheduled for March.  *See* Ball Decl. ¶ 11.  Defendants elected to forego any experts—either to rebut Yuga Labs' experts or to support their own frivolous defenses or counterclaims.  *Id.*

- Summary judgment motions are due by March 20 (a week before this motion is scheduled to be heard), discovery closes in less than a month on April 3, and trial is scheduled for June.

Despite the extensive resources that the Court and the parties have invested in this case, Defendants seek to put *all claims against them* on ice for at least a year while they pursue a frivolous appeal and while *their* meritless counterclaims proceed.  It is not surprising that Defendants want to run away from Yuga Labs' claims—as outlined in further detail below, the well-developed merits are not in their favor:

- Defendants admitted that they used the BAYC Marks;[1]

- Defendants' co-conspirator admitted that their business venture was designed to utilize Yuga Labs' widespread reputation and branding to

Fenwick & West LLP
Attorneys at Law

---

[1]  Yuga Labs' BORED APE YACHT CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and Ape Skull Logo trademarks.

maximize profits from the sale of the RR/BAYC NFTs;

- Yuga Labs' unrebutted survey expert observed a confusion rate of 40% among consumers as a result of Defendants' use of the BAYC Marks;

- Yuga Labs' unrebutted damages expert opined that Defendants made at least $2M from their scam built on infringing the BAYC Marks; and

- The harm to Yuga Labs and consumers is significantly higher and ongoing. *See infra* Section IV(A)(1).

Defendants' stay motion is inequitable and as meritless as their appeal. Defendants fail to establish any justification for a discretionary stay of Yuga Labs' federal law claims. *First*, Defendants are incapable of identifying any concrete harm that they would suffer if Yuga Labs' federal claims proceed. Defendants claim unspecified "inefficiencies" that would purportedly burden Defendants. But Defendants' claimed lack of resources is unsupported by any evidence and belied by Yuga Labs' expert's findings that Defendants have made and continue to make millions of dollars from their scam. And their claimed lack of resources is further contradicted by their expansion of this litigation. *Second*, and in contrast, Yuga Labs would suffer irreparable harm from a stay. Defendants are constantly (often daily) promoting and collecting royalties from the RR/BAYC NFTs, and as a result of their deceptive conduct, Yuga Labs and consumers continue to suffer significant harm. *Third*, a stay would not serve to promote an orderly course of justice. The only matter over which this Court lacks jurisdiction is whether Defendants are entitled to judgment on the state law claims under California's anti-SLAPP statute. The anti-SLAPP statute does not apply to federal law causes of action and those claims will necessarily survive regardless of the outcome of Defendants' appeal.

## II.   FACTUAL BACKGROUND

### A.   Yuga Labs' Business and Marks

In early 2021, Yuga Labs created, and developed the smart contract behind, the Bored Ape Yacht Club ("BAYC"), which consists of unique collectible works of

FENWICK & WEST LLP
ATTORNEYS AT LAW

digital art (each an NFT) when executed on the Ethereum blockchain.  Declaration of Greg Solano ¶ 3.  Yuga Labs sold licenses for users to mint these BAYC NFTs for approximately 0.08 Ethereum each, which amounted to approximately $169 to $236 USD, based on the price of Ethereum at the time.  *Id.* ¶ 4.  Only 10,000 unique BAYC NFTs were created as part of this collection.  *Id.* ¶ 5.

Once minted, a BAYC NFT confers on its holder certain commercial rights with respect to art associated with the NFT, as well as eligibility for other benefits and opportunities.  *Id.* ¶ 6.  For example, Yuga Labs maintains the website www.boredapeyachtclub.com, which includes a virtual clubhouse accessible only by individuals who hold a BAYC NFT.  *Id.* ¶ 7.  And Yuga Labs has hosted the acclaimed ApeFest, an event featuring music, merchandise, art, and more.  *Id.* ¶ 8; Ball Decl., Ex. 7 at 4; *see also* www.apefest.com.  Only holders of authentic Yuga Labs NFTs had access to request tickets to attend ApeFest.  Solano Decl. ¶ 8.  In March 2022, Yuga Labs announced a first-of-its-kind metaverse ("Otherside") that is closely connected to the BAYC brand.  *Id.* ¶ 9; Ball Decl., Ex. 7 at 2.

### B.     Yuga Labs' Trademark Rights

Yuga Labs uses its BAYC Marks in connection with advertising, marketing, and promoting its products and services nationwide and internationally through multiple platforms, including the BAYC website, NFT marketplaces such as OpenSea, and social media such as Facebook, Instagram, and Twitter.  Ball Decl., Exs. 6, 8, 9. Because of the advertising, promotion, and use of the BAYC Marks, Yuga Labs has developed recognition for its goods and services under the BAYC Marks and has acquired and enjoys significant goodwill for the BAYC Marks.  *See* Declaration of Jonah Berger ¶¶ 13-17.  The BAYC Marks have become Yuga Labs' core identity, much in the same way that marks identify other companies like Disney, Nike, Google, or Marvel.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

### C.   Defendants' Blatant Infringement of the BAYC Marks

#### 1.   Defendants Admit to Using the BAYC Marks.

Defendants operate a business venture to commercialize a scam that intentionally confuses and explicitly misleads consumers into thinking they are buying authentic BAYC NFTs when they are actually purchasing Defendants' counterfeit "RR/BAYC" NFTs.  Defendants use *the very same BAYC Marks* described above *in the very same markets* as Yuga Labs, to promote the *very same type of goods*.  *See* Ball Decl., Exs. 10-12.  Defendants' use is identical by design and is elementary level trademark infringement.  *Indeed, Defendants have admitted numerous times that they are using the BAYC Marks to sell their fake RR/BAYC NFTs.  See id.*, Ex. 30 at 9 ("in some circumstances the RR/BAYC project also displayed unmodified marks, so that the RR/BAYC project would be directly tied to Yuga, BAYC, and specific BAYC NFTs"), at 10 ("'BAYC' [in RR/BAYC] references the abbreviated title of Yuga's NFT collection"); *id.*, Ex. 32 ¶¶ 3, 9, 10, 18-19; *see also* Defendants' Motion to Strike (Dkt. No. 48) at 18 ("Mr. Ripps's appropriation art project would not be readily identifiable, or even possible, without using Yuga's marks"), at 19 ("the nature of Mr. Ripps's performance and appropriation art project requires use of Yuga's marks").

When Defendant Ripps created the smart contract for the RR/BAYC collection, he labeled the collection "Bored Ape Yacht Club," and the collection symbol "BAYC."  *See* Ball Decl., Exs. 17, 32 ¶ 8.  This metadata is publicly displayed as a "token tracker" and is visible on Etherscan, a public platform that allows consumers to track sales and other information for these NFTs.  *Id.*, Ex. 17; Declaration of Laura O'Laughlin., Ex. 1 ¶ 14.  Token trackers are important for validating the authenticity of an NFT.  O'Laughlin Decl., Ex. 1 ¶ 14.  And when buyers or potential buyers of Defendants' RR/BAYC NFTs review the token tracker and contract information, it indicates misleadingly that these NFTs were officially sold by Yuga Labs.  *See id.* Defendants even *admit* that they used Yuga Labs' BORED APE YACHT CLUB and BAYC trademarks to misleadingly label the token tracker for the RR/BAYC NFTs as

"Bored Ape Yacht Club (BAYC)." *See* Ball Decl., Exs. 35 at 106:2-14; 36 at 37:23-38:6; 37 at 143:18-144:3.

Defendants also created a website, https://rrbayc.com, that allows users to "reserve" their RR/BAYC NFTs. The website uses Yuga Labs' BAYC trademark in the title of the page ("RR/BAYC"), in the browser tab for the page ("RR/BAYC"), and in the domain for the page. It even uses Yuga Labs' Ape Skull Logo mark in the browser tab icon. *See id.*, Ex. 18. Many of the NFTs depicted on Defendants' website also contain BAYC Marks. For example, RR/BAYC #362 has the BAYC, BA YC Logo, and the Ape Skull Logo marks on its hat; and RR/BAYC #863 has the Ape Skull Logo mark on its shirt. Both of these RR/BAYC NFTs are identical to their official BAYC counterparts, BAYC #362 and BAYC #863. *See id.*, Ex. 16. Defendants have no excuse for their repeated use of the BAYC Marks. Further, Defendants continue to promote their website to further the sales of RR/BAYC NFTs. *See id.*, Ex. 38.

In another lawsuit for similar claims against Defendants' co-conspirator and software developer, who contributed to the business venture's infringement, the court entered a consent judgment and order for permanent injunction. *See id.*, Ex. 31. Specifically, the court noted that the defendant "adopted and began using the BAYC Marks to promote the [RR/BAYC NFTs and Defendants' websites]." *Id.* ¶ 5. And the co-conspirator admitted that the business venture's use of Yuga Labs' BAYC Marks was "intentional" despite repeated concerns being raised (by counsel for defendants and otherwise), that "using the 'BAYC' mark alongside the RR/BAYC NFTs could be confusing," and that a reason for the business venture "was for the purpose of making money." *Id.*, Ex. 32 ¶¶ 9, 18, 21.

### 2. Defendants Sell the Exact Same Product (NFTs) as Yuga Labs in the Exact Same Marketing Channels.

In May 2022, Defendants created a sales page on the online NFT marketplace Foundation to sell their RR/BAYC NFTs under Yuga Labs' BAYC Marks. *See id.*, Ex. 10; O'Laughlin Decl., Ex. 1 ¶ 12; *see also* Defendants' Answer, Defenses, and

FENWICK & WEST LLP
ATTORNEYS AT LAW

Fenwick & West LLP
Attorneys at Law

Counterclaims (Dkt. No. 65) ¶ 52.  In order to deceive consumers into thinking they were buying an authentic BAYC NFT, Defendants used Yuga Labs' BORED APE YACHT CLUB mark as the title of the page, the BA YC BORED APE YACHT CLUB Logo in the header of the page, and the BAYC mark in a hyperlink on the page labeled "BAYC" and in the URL of the page.  *See* Ball Decl., Ex. 10.  This page was so confusing that in viewing the page during his deposition, another one of Defendants' co-conspirators, Mr. Ryan Hickman, thought that the page was Yuga Labs' website, and not the scam website created by Defendants.  *See id.*, Ex. 37 at 150:4-6 (referring to deposition Exhibit 28).

Defendants also created a sales page on the online NFT marketplace OpenSea to sell the RR/BAYC NFTs.  *See id.*, Exs. 11; 35 at 81:6-11.  Again, Defendants used the BAYC mark in the title, cover photo, and URL of the sales page (https://opensea.io/collection/rrbayc) in order to deceive unsuspecting consumers into thinking they were purchasing an authentic Yuga Lab product.  *See id.*, Ex. 37 at 153:22-154:10 (referring to deposition Exhibit 29).  This page also used Defendants' infringing version of the BA YC BORED APE YACHT CLUB Logo mark, including the Ape Skull Logo mark, as part of its profile picture.  *See id.*, Ex. 11.  Even more, because Defendants' RR/BAYC NFTs point to the same exact online image as real BAYC NFTs, the RR/BAYC NFTs result in exact pictorial imitations of Yuga Labs' BAYC NFTs, and the resulting sales pages for each individual NFT appear nearly identical.  *See id.*, Ex. 14, 36 at 106:13–107:3; *see also* Declaration of Ryder Ripps (Dkt. No. 48-1) ¶ 8.  OpenSea removed Defendants' sales page from the marketplace multiple times to protect consumers from the confusion.  *See* Ball Decl., Ex. 35 at 14:23-15:3.   But Defendants continued to pursue their scam and posted their RR/BAYC NFTs on various marketplaces.  *See, e.g.*, *id.*, Ex. 12.

Adding to the confusion, Defendants and consumers referred to the RR/BAYC NFTs using the same ID numbers associated with BAYC NFTs.  *See id*., Exs. 32 ¶ 21(e); 37 at 146:21-147:10 and 149:16-21.  While Defendants could have used their

own, different, ID numbers for the RR/BAYC NFTs, their use of the BAYC "Ape ID"
was an intentionally confusing design choice by Defendants.  *See id.*

Still more, Defendants sought to establish an NFT marketplace (called "Ape
Market") to further their business venture, to compete with other popular NFT
marketplaces, and to help them market and sell the infringing RR/BAYC NFTs for
profit. *See id*, Exs. 13, 32 ¶¶ 11-13.  Defendants' Ape Market website uses Yuga Labs'
Ape Skull Logo mark in the browser tab icon, which is nearly identical to the browser
tab icon Yuga Labs used for its ApeFest 2022 website.  *See id.*, ¶ 27, Ex. 19.  Ape
Market also required a user to purchase a RR/BAYC NFT in order to access the
marketplace to encourage further sales and increase the value of their unsold
RR/BAYC NFTs, resulting in greater profit for the business venture. *See id.*, ¶ 21, Ex.
13; 32 ¶ 13.  And Defendants designed Ape Market to have lower transaction fees
typically incurred whenever a holder sells their NFTs, which was intended to attract
and incentivize BAYC NFT holders to use Ape Market to sell their authentic BAYC
NFTs in the same marketplace as the RR/BAYC NFTs.  *See id.*, ¶ 29, Ex. 21.
Defendants continue to promote their infringing Ape Market to further the sales of
RR/BAYC NFTs and their ill-gotten profits.  *See id.*, Exs. 25-27.

Furthermore, Defendants falsely advertised their infringing RR/BAYC NFTs.
For example, Defendants falsely claimed that they own a registered trademark for
RR/BAYC to explicitly mislead consumers about legitimacy that they simply do not
have.  *See id.*, ¶ 28, Ex. 20.  Defendants falsely claimed that royalties from the sale of
the RR/BAYC NFTs would be donated to charity.  *See id.*, ¶ 30, Ex. 22.  And
Defendants falsely claimed that each of the 10,000 RR/BAYC NFTs were hand minted
to deceive consumers and drive-up profits.  *See id.*, ¶ 31, Ex. 23.

### 3.     Defendants Caused Actual Confusion.

Defendants' use of the BAYC Marks outlined above has caused and continues
to cause actual confusion among consumers and market participants.  *See* Berger Decl.
¶¶ 27-34.  Indeed, Defendants and others involved in creating and selling RR/BAYC

Fenwick & West LLP
Attorneys at Law

NFTs were aware that their use of the BAYC marks had the potential to confuse and did actually confuse consumers.  *See id.*; *see also* Ball Decl., ¶ 41, Ex. 33; ¶ 42, Ex. 34; Ex. 37 at 150:1–6; Ex. 32 ¶¶ 21-22; Ex. 31 ¶¶ 5-6 (adjudging that Defendants' use of the BAYC Marks "have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public" in violation of the Lanham Act). Yuga Labs' survey expert, Laura O'Laughlin, conservatively found a net confusion rate of 40.4% relating to Defendants' use of the BAYC Marks in connection with the RR/BAYC Marks on the Foundation marketplace.  O'Laughlin Decl. ¶ 4.  O'Laughlin also found a meaningful likelihood of confusion rate of 20% for consumers who saw the BAYC Marks used in connection with the RR/BAYC NFT collection on OpenSea. *Id.* ¶ 5.  Her testimony is unrebutted.  Ball Decl. ¶ 11.

### 4. Defendants' Infringing Conduct Damaged Yuga Labs and Consumers.

As a result of this confusion, Defendants' explicitly misleading use of the BAYC Marks has caused and continues to cause harm to Yuga Labs and consumers. Specifically, as of February 1, 2023, Defendants' wrongful conduct is associated with over $2M in profits.  *See* Declaration of Lauren Kindler, Ex. 1 ¶ 75; *see also* Kindler Decl. ¶ 8.  Kindler also quantifies Yuga Labs' corrective advertising expenses associated with Defendants' trademark infringement as exceeding $2M.  *Id.* ¶¶ 3, 10-13.  Beyond these amounts, Defendants' use of the BAYC Marks caused and continues to cause additional types of unjust enrichment to Defendants and harm to Yuga Labs that are significant, including but not limited to, Defendants' avoided costs, damage to Yuga Labs' business (i.e., decreased interest in and sales of authentic BAYC NFTs), Yuga Labs' loss of partnership opportunities, and irreparable harm to Yuga Labs' goodwill.  *See id.* ¶¶ 14-18.  Defendants' actions have harmed and continue to harm the BAYC brand equity, which impacts Yuga Labs' sales, profits, and future earnings associated with the BAYC brand.  *See* Berger Decl. ¶¶ 35-39.  This evidence is unrebutted.  Ball Decl. ¶ 11.  Defendants' motive to stay proceedings is clear:  to stall

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    the rectification of this harm for Yuga Labs and consumers.

2         In sum, Defendants have engaged in textbook trademark infringement.  *See,*

3    *e.g.*, *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1054, 1056 (9th Cir.

4    1999) ("In light of the virtual identity of marks, if they were used with identical

5    products or services likelihood of confusion would follow as a matter of course").

6    Defendants intentionally caused the RR/BAYC NFTs to mirror the original BAYC

7    NFTs as much as possible and to use Yuga Labs' BAYC Marks and brand as the

8    centerpiece of the RR/BAYC NFTs to mislead purchasers.  Their business is designed

9    to capitalize on Yuga Labs' identity, efforts, and goodwill to scam consumers into

10   buying knockoff NFTs, and without any creative contribution of their own.

11   Defendants' conduct and the resulting confusion continues to mislead consumers and

12   cause damage and irreparable injury to Yuga Labs and to the reputation and identity

13   Yuga Labs has painstakingly built since its inception.

14   **III.   PROCEDURAL HISTORY**

15        Defendants pushed for an aggressive case schedule.  *See* Dkt. No. 55.  On

16   October 21, 2022, the Court entered a Scheduling and Case Management Order setting

17   the case for a three-day trial on June 27, 2023.  *See* Dkt. No. 57.  And now that they

18   are facing a judgment for their scam, they are attempting to reverse course and halt

19   these proceedings.

20        On December 16, 2022, the Court denied Defendants' anti-SLAPP motion to

21   strike and motion to dismiss, rejecting Defendants' defenses, and holding that Yuga

22   Labs stated a claim on all remaining claims.  Dkt. No. 62.  Specifically, on the anti-

23   SLAPP motion, the Court held Defendants "are using the BAYC Marks as the

24   centerpiece of their RR/BAYC NFTs, including using 'Bored Ape Yacht Club

25   (BAYC)'" in a clear effort to explicitly mislead consumers. *See id.* at 7.  The Court

26   further held that Yuga Labs' "claims are limited to Defendants' heavily commercial

27   use of the BAYC Marks to sell the same product—NFTs—with the same image

28   (Defendants admit that the RR/BAYC NFTs use pointers to the same ape cartoon

images as the BAYC collection) to the same customers in the same markets as Plaintiff. Therefore, the Court concludes that Defendants have failed to make a prima facie showing that Plaintiff's claims 'arise from' an 'act in furtherance of [their] right of petition or free speech.'" *Id.* at 11.

On December 21, 2022, Defendants filed a notice of appeal regarding the Court's ruling on the anti-SLAPP motion. Dkt. No. 63. That same day, Defendants informed Plaintiff that they planned to file a motion to stay *all proceedings* pending resolution of the appeal. Ball Decl. ¶ 3, Ex. 1. On January 3, 2023, Yuga Labs informed Defendants that it would oppose a motion to stay the case pending appeal—including because any stay would allow Defendants to further harm Yuga Labs and consumers. *Id.* ¶ 4. On January 4, 2023, Defendants informed Yuga Labs that they would not file an opposed motion to stay. *Id.* ¶ 5.

On December 27, 2022, Defendants filed their answer and counterclaims. Dkt. No. 65. Thereafter, Yuga Labs filed a special motion to strike counterclaims and motion to dismiss counterclaims (Dkt. No. 89), which is fully briefed by the parties and under submission. Dkt. No. 117.

Since December 2022, both parties have expended significant time and resources to meet the case schedule that Defendants requested. Both parties have been actively proceeding with discovery ahead of the April 3, 2023 discovery cutoff deadline. Defendants have noticed fourteen depositions and have threatened at least four more. Ball Decl. ¶ 8. Of these, Defendants have taken four depositions (including depositions of Yuga Labs' 30(b)(6) witness, former CEO, founders, and director), and have six scheduled to be taken. *Id.* Yuga Labs has noticed six depositions, have taken three depositions, and have at least three scheduled to be taken. *Id.*

The parties have also continued to engage in numerous discovery disputes given Defendants' failure to comply with Court orders regarding their production and Defendants' ongoing efforts to hide and further their scam. *See id.* ¶ 9. Additionally, pursuant to the case schedule, on February 6, 2023, Yuga Labs served three affirmative

FENWICK & WEST LLP
ATTORNEYS AT LAW

expert reports and the depositions of those experts are scheduled to take place in March. *Id.* ¶ 11. Defendants failed to serve any affirmative experts—despite their reliance on their affirmative defenses and counterclaims to pursue harassing discovery. *Id.* They also failed to serve any rebuttal expert reports on February 27. *Id.* On January 19, 2023, the parties also conducted mediation to explore settlement options, but did not reach a settlement. *Id.* ¶ 10. Motions for summary judgment are due by March 20, and trial is only a few months away, beginning on June 27.

Defendants have also initiated related disputes against Yuga Labs' ownership of its well-known BAYC Marks. Specifically, Defendant Cahen opposed Yuga Labs' trademark applications with the U.S. Patent & Trademark Office for the BAYC Marks, further interfering with Yuga Labs' BAYC Marks and its business. *Id.* ¶ 13, Exs. 4-5.

Over a month after Defendants decided that they would not be seeking a stay, on February 10, 2023, Defendants informed Yuga Labs that they changed their minds and intended to file a motion to stay *all proceedings* pending resolution of the appeal. *Id.* ¶ 6, Ex. 2. On February 14, 2023, lead counsel for the parties again conferred pursuant to Local Rule 7-3 regarding Defendants' renewed interest in filing a motion to stay all proceedings. *Id.* ¶ 7. During the call, Yuga Labs conveyed its position that Defendants' request to stay this case is inappropriate given that the case has been proceeding in earnest pursuant to the expedited schedule that Defendants requested. *Id.* Yuga Labs further explained that Defendants continue to promote and market their infringing products, so any proposed stay would substantially harm Yuga Labs and consumers, who continue to suffer from the resulting consumer confusion. *Id.* Yuga Labs then asked whether Defendants would agree to stop all marketing, sales, and promotion of the accused products pending a stay and place any funds received from the accused products in escrow. *Id.* Defendants refused to agree to these reasonable protections and did not make any counteroffer to address the ongoing consumer confusion or Defendants' efforts to hide the proceeds from their scam. *Id.* Defendants did, in fact, continue to market their scam. *See id.*, Exs. 25-27. On February 17, 2023,

the parties filed their Local Rule 7-3 Joint Statement and, again, Defendants indicated that they intended to seek a stay of *all proceedings*.  *See* Dkt. No. 106 at 1:15, 1:21, 2:5.

## IV.    ARGUMENT

### A.    Defendants Fail to Establish that this Court Should Exercise Its Discretion to Stay the Federal Law Claims.

Yuga Labs' federal claims are not stayed, and should not be stayed, pending Defendants' frivolous appeal.  *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) ("[A]n appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal.").   Acknowledging that the federal claims are not automatically stayed, Defendants argue that this Court should exercise its discretion to stay the federal claims under the factors articulated in *Landis v. North Am. Co.*, 299 U.S. 248 (1936).[2] Defendants fail to meet their burden to establish that those claims should be stayed.

### 1.    A Stay Will Result in Irreparable Harm to Yuga Labs and the Public.

Defendants' request should be denied because Yuga Labs and consumers will suffer significant irreparable harm from a delayed resolution of Yuga Labs' claims.

As an initial matter, Defendants have intentionally continued their infringing and misleading conduct throughout the course of these proceedings.   Defendants'

---

[2]   In determining whether to stay an action pending interlocutory appeal, courts typically apply one of two tests under Landis or Nken. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (outlining four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies").   The Ninth Circuit has not addressed which test applies for a motion to stay proceedings pending an appeal of an anti-SLAPP motion, and California district courts have applied both tests in that circumstance.  *See, e.g., Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810-HSG, 2018 WL 1989522, at *3 (N.D. Cal. Mar. 5, 2018) (applying *Nken* factors and denying motion to stay).  Yuga Labs will address the factors outlined in *Landis*, but Defendants fail to establish that a discretionary stay is warranted under either test.

Fenwick & West LLP
Attorneys at Law

contention that they are no longer "minting" RR/BAYC NFTs does not alleviate that harm. Defendants are still promoting their counterfeit RR/BAYC NFTs and receiving royalties from the secondary sales of those RR/BAYC NFTs. For example, on March 5, 2023, Defendant Ripps promoted Defendants' rrbayc.com website to further the sales of RR/BAYC NFTs. Ball Decl., Ex. 38. Also, on February 17, 2023 and February 20, 2023, Defendant Cahen retweeted the sales of its infringing NFTs, RR/BAYC's #2644 and #5296. *Id.*, Exs. 25, 26. And, the day after Defendants filed their stay motion, Defendant Cahen retweeted the sale of another of Defendants' infringing NFTs, RR/BAYC #3345. *Id.*, Ex. 27. Each of these retweets included a hyperlink to NFT marketplace, LooksRare, to promote further sales, and a hyperlink to Defendants' infringing Ape Market. *See id.*, Exs. 25-27. Defendants profited from these sales. *Id.* ¶¶ 33-35. Defendants also continue to leverage this lawsuit to promote and market their infringing products. *See, e.g., id.,* ¶ 32, Ex. 24.

Defendants' continued infringing use of the BAYC Marks (as exemplified above) continues to mislead and confuse consumers and market participants. *See supra* Section II(C)(3). Yuga Labs' survey expert, Laura O'Laughlin, conservatively found a very high confusion rate of 40.4% relating to Defendants' use of the BAYC Marks. O'Laughlin Decl. ¶ 4. Allowing this confusion and deception to continue harms consumers and the public interest aim of trademark law, which serves to promote clarity in the marketplace. *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004) ("It is well established that trademark law protects not only the private interests of the trademark owner but also the public's interest in not being confused by the infringing products."); *see also Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 n.14 (1982) ("[T]he infringer deprives consumers of their ability to distinguish among the goods" of competitors); *Original Appalachian Artworks, Inc., v. Granada Elecs., Inc.*, 640 F. Supp. 928, 932 (S.D.N.Y. 1986) ("[T]he purchasing public is an unnamed party in every action for trademark infringement."); *Internet Specialties West, Inc. v. Ispwest*, No. 05-cv-3296-FMC-AJWx, 2007 WL

FENWICK & WEST LLP
ATTORNEYS AT LAW

9706068, at *3 (C.D. Cal. May 21, 2007) ("It is clearly in the public interest to avoid confusion and deception as to the origin of products and services in the marketplace."). Indeed, in another case against Defendants' co-conspirator, the court recently issued a consent judgment and permanent injunction and held that the adoption and use of "the BAYC Marks to promote the [RR/BAYC NFTs and Defendants' websites] . . . have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public" in violation of the Lanham Act.  Ball Decl., Ex. 31.

As a result of Defendants' promotion and resulting confusion in the marketplace, Defendants' explicitly misleading use of the BAYC Marks has caused and continues to cause millions of dollars in harm to Yuga Labs.  Kindler Decl.  ¶¶ 3, 4, 8-9, 11-18.  Since the start of this litigation, Defendants have profited and will continue to profit from royalties they receive from secondary sales of their infringing RR/BAYC NFTs.  Kindler Decl. ¶ 6.  Because Defendants' infringing sales are ongoing, Yuga Labs will suffer additional financial harm from any delay in the resolution of its federal claims.  Similarly, Defendants' actions have also harmed and continue to harm the Bored Ape Yacht Club goodwill, reputation, and brand equity. *See* Berger Decl. ¶¶ 35-39.  This loss to reputation and goodwill is "irreparable because it is neither easily calculable [] nor easily compensable [.]" *Sprint Solutions, Inc. v. Cell Wholesale, Inc.*, No. SACV 15-878-JLS, 2015 WL 13919095, at *13 (C.D. Cal. Dec. 10, 2015) (citations omitted) (finding plaintiffs sufficiently showed irreparable harm); *see also SMC Promotions, Inc. v. SMC Promotions*, 355 F. Supp. 2d 1127, 1137 (C.D. Cal. 2005) (finding plaintiffs demonstrated that they will suffer irreparable injury and explaining that "[t]he Ninth Circuit has recognized that 'intangible injuries, such as damage to…goodwill, qualify as irreparable harm.'"); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).[3] Defendants' reliance on *CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962), to

---

[3]   Further, the Trademark Modernization Act of 2020 codified a presumption of irreparable harm on a finding of liability or a likelihood of success on the merits in the case of injunctive relief. 15 U.S.C. § 1116(a).

FENWICK & WEST LLP
ATTORNEYS AT LAW

suggest that a delay in recovering "money damages" alone may not warrant denying a stay does not alleviate the non-monetary irreparable injury that Yuga Labs has suffered and continues to suffer.  *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (holding that the potential delay of injunctive relief against ongoing and future harm is more than just a "fair possibility" of harm).  Yuga Labs should not be delayed in its efforts to end this irreparable harm.

As outlined above, this case has been proceeding in earnest pursuant to the schedule advocated by Defendants and Yuga Labs has invested substantial resources in this litigation to stop Defendants' infringing conduct.  Close of discovery is less than a month away, and trial is a little over three months away.  A stay of the federal claims now would result in substantial harm and prejudice to Yuga Labs.  A stay lasting for well over a year would require the parties to revisit, among other things, discovery, expert reports, and summary judgment motions once the case resumes.[4] And, throughout this time, Defendants would confuse consumers and pursue and profit from their scam.  Such an inequitable result counsels against a stay.  *See Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-cv-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) (denying motion to stay and explaining that ongoing "infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages" and "[s]taying a case while such harm is ongoing usually prejudices the [plaintiff] that seeks timely enforcement of its right to exclude").

Defendants' reliance on *Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1107 (C.D. Cal. 2021), which involved the appeal of a denial of qualified immunity on

---

[4]  Defendants' unsupported claim that any delay will be "measured in months, rather than years" is contrary to the current Ninth Circuit schedule, which is scheduling oral argument in civil appeals six to twelve months from the notice of appeal date.  *See* https://www.ca9.uscourts.gov/general/faq/.  Decisions are issued three months to a year after submission.  *Id.*  Indeed, Defendants have made no effort to advance the resolution of the anti-SLAPP appeal.  Defendants did not seek to expedite the appeal and filed their brief on the last possible day.

FENWICK & WEST LLP
ATTORNEYS AT LAW

plaintiff's section 1983 claim, not the appeal of an anti-SLAPP motion, is misplaced. In *Peck*, the court held that the trial, which had already been delayed due to the COVID-19 pandemic, could be rendered moot by the decision on the appeal. *Id.* But, here, there is no such existing delay and trial is scheduled to take place in a few months. Moreover, as discussed below, the issue on appeal is not dipositive of Yuga Labs' federal claims.

Finally, a stay also increases the risk of evidence loss, particularly by third parties. Yuga Labs' claims depend on information outside of its control, including but not limited to, documents and communications concerning the registration of the rrbayc.com and apemarket.com domains and Defendants' communications with its software developers and relevant third parties.[5] Additionally, over time, memories fade, witnesses become unavailable for innumerable reasons (e.g. death or disability, relocation, unwillingness to cooperate, etc.), the risk of accidental data loss increases, and third parties may delete or destroy relevant information out of ignorance of the pending litigation. Indeed, Defendants have already demonstrated an inability to remember important details in this case. Defendant Cahen admitted under oath that his "memory is just not good" and claimed to be incapable of remembering "anything" from the entire month of June 2022. Ball Decl., Ex. 36 at 125:8-9 and 201:9. Similarly, Defendant Ripps also admitted to struggling to recall conversations and facts from the most relevant time period of May to July 2022. *Id.*, Ex. 35 at 279:14-23. This "risk of lost evidence weighs against granting a stay[.]" *Bradberry v. T-Mobile USA, Inc.*, No. 06-cv-6567-CW, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007); *see DBD Credit Funding LLC v. Silicon Labs., Inc.*, No. 16-cv-05111-LHK, 2016 WL 6893882, at *13 (N.D. Cal. Nov. 23, 2016).

Defendants are uninterested in mitigating any of these various forms of harm

---

[5] This information is currently subject to Yuga Labs' pending motion to compel. Dkt. No. 71. Defendants' non-production and evasiveness about these core documents demonstrate that they cannot be relied upon to safeguard and be forthright in their production.

associated with a stay.  Yuga Labs raised to Defendants whether they would agree to stop all marketing, sales, and promotion of the accused products pending a stay and place the funds received by Defendants from the infringing products in escrow pending the appeal.  Ball Decl. ¶ 7.  Defendants rejected both requests.  *Id.*

In sum, given the actual harm to Yuga Labs and the public, the first *Landis* factor weighs against a stay of Yuga Labs' federal claims.

### 2.    Defendants Face No Harm Absent a Stay.

"[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."  *Landis*, 299 U.S. at 255.  Defendants fail to meet this burden as they do not establish any actual or likely harm absent a stay of Yuga Labs' federal claims.  Indeed, their motion lacks a single declaration or any piece of evidence supporting a claim of harm.  Instead, Defendants offer conclusory, speculative, and generic arguments that could be said about nearly every motion to stay a case pending appeal.[6]  At essence, Defendants complain about having to defend themselves in this lawsuit.  *See* Motion 6-7.  However, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."  *Lockyer*, 398 F.3d at 1112.

Defendants argue that generalized and logistical concerns, such as the potential for unnecessary trial prep and discovery, warrant a stay.  But these are not legally cognizable harms.  *See Exeltis*, 2018 WL 1989522, at *3 ("[P]articipating in discovery is not a 'harm' at all: it is the routine consequence of the denial of [defendant's] motion

---

[6]  Defendants' cited cases, none of which granted stays in the context of an anti-SLAPP appeal, to suggest that a denial of stay would cause them harm are inapplicable on their face.  *See Knepper v. Equifax Info. Servs., LLC*, No. 2:17-cv-02368-KJD-CWH, 2017 WL 4369473, at *1 (D. Nev. Oct. 2, 2017) (stay pending resolution of motion for consolidation and transfer of twenty-two separate actions); *Reynolds v. Geico Corp.*, No. 2:16-cv-01940-SU, 2017 WL 815238 (D. Or. Mar. 1, 2017) (stay pending resolution of consolidated action in D.C. Circuit to determine validity of an FCC declaratory ruling); *Finder v. Leprino Foods Co.*, No. 1:13-cv-02059-AWI-BAM, 2017 WL 1355104, at *1 (E.D. Cal. Jan. 20, 2017) (regarding stay pending resolution of certified question for interlocutory appeal).

FENWICK & WEST LLP
ATTORNEYS AT LAW

to dismiss the Lanham Act claim."); *Breazeale v. Victim Servs., Inc.*, No. 14-cv-05266-VC, 2015 WL 13687730, at *2 (N.D. Cal. Sept. 14, 2015) (calling "questionable" defendant's argument that the "additional expense and inconvenience of duplicative discovery and litigation" was "irreparable injury").  Moreover, such claims are at odds with the fact that Defendants have expanded this case and duplicated proceedings.  Defendants have filed counterclaims and engaged in extensive written discovery and motion practice, including two *ex parte* motions.  Indeed, contrary to Defendants' representations, Defendants appear eager and able to go to trial.  *See* Ball Decl., Ex. 24 (containing Twitter post from Defendant Cahen:  "In 122 days Yuga Labs will have to face us in Federal Court. Reality is sinking in for them. I'm looking forward to it.").  Defendants provide no basis for their claim that they would be harmed by proceeding with litigation.  Their frivolous and unsupported motion should be denied.

Next, Defendants' claim that "the costs are likely to fall especially hard on Defendants as individuals" is belied by the fact that Defendants have made millions of dollars from their infringing conduct and they continue to profit from secondary sales as this case proceeds.  Kindler Decl. ¶¶ 3, 4, 8, 9.  Indeed, Defendants have bragged and continue to brag about their ill-gained profits on their social media accounts.  Ball Decl., Exs. 28-29.  Defendants also have made, and continue to make, a conscious effort to enlarge the scope of this litigation.  Defendants' speculative claim that they lack resources is both unsupported by any evidence and contrary to the case record.

Finally, Defendants' concerns about "witnesses [being] required to testify multiple times" and a stay "potentially prevent[ing] or at least mitigate[ing] the inconvenience to a large group of individuals" is entirely speculative, unlikely for the reasons discussed below, and dwarfed by the risk of loss of relevant witness testimony and evidence and further harm to the larger public.[7]   Defendants' conclusory

---

[7] Defendants' reliance on the number of witnesses identified in Yuga's initial disclosures (Motion at 7) is a red herring.  The number of individuals that may have relevant information does not equate to the number of individuals who will be deposed or called at trial.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    arguments fall flat and the second *Landis* factor weighs against a stay.

2          **3.      A Stay Would Not Serve the Orderly Course of Justice.**

3          Defendants also fail to meet their burden of establishing that it would serve "the

4    orderly course of justice measured in terms of the simplifying or complicating of

5    issues, proof, and questions of law which could be expected to result from a stay."

6    *Lockyer*, 398 F.3d at 1110.  *First*, Defendants' appeal will not simplify any issues in

7    this case because the appeal is frivolous.  *Second*, it is unlikely that Defendants'

8    anti-SLAPP appeal will reach any issues that could potentially affect the federal

9    claims, let alone potentially affect any affirmative defenses that could impact the

10   federal claims as a matter of law.  The orderly course of justice is not served by pausing

11   Yuga Labs' federal claims to indulge Defendants' frivolous appeal, particularly at this

12   advanced stage of the case.

13          **a.      Defendants' Appeal is Frivolous.**

14          As a threshold matter, Defendants' appeal is frivolous.  Defendants'

15   anti-SLAPP motion was not a close call:  this Court held that "[Yuga Labs'] claims

16   are limited to Defendants' *heavily commercial use* of the BAYC Marks to sell the same

17   product – NFTs – with the same image (Defendants admit that the RR/BAYC NFTs

18   use pointers to the same ape cartoon images as the BAYC collection) to the same

19   customers in the same markets as Plaintiff."  Dkt. No. 62 at 11 (emphasis added).  The

20   Court further concluded that Defendants "failed to make a prima facie showing that

21   Plaintiff's claims 'arise from' an 'act of furtherance of [their] right of petition or free

22   speech."  *Id.*   This Court's holding described exactly what this case is about:

23   *Defendants' heavily commercial conduct.*  This is not a case about free speech.  The

24   Court's holding should be summarily affirmed on appeal.

25          **b.      The Appeal Will Not Resolve Yuga Labs' Federal**
26                    **Claims.**

27          Frivolousness aside, there is no outcome in which the appeal is dispositive of

28   Yuga Labs' federal claims.  Neither the outcome of the anti-SLAPP appeal nor the

Fenwick & West LLP
Attorneys at Law

result of proceeding with the federal claims would affect one another to warrant a stay.[8]  As such, there is no judicial economy saved by staying those claims.

Because Defendants' commercial conduct was not protected speech, this Court did not need to address the second prong of anti-SLAPP.  Dkt. No. 62.  The Ninth Circuit similarly does not need to reach the second step of the analysis and rule on any issues that could potentially affect the federal claims, let alone any affirmative defenses.  *See Anheuser-Busch Companies, LLC v. Clark*, 622 F. App'x 671 (9th Cir. 2015) (after ruling on first step of anti-SLAPP motion, "remand[ing] so that the district court may consider in the first instance whether [plaintiff] has established that there is a probability that it will prevail on the claim.").  Defendants cite *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014), for the point that the Ninth Circuit can reach the second step of the anti SLAPP inquiry.  However, the court did that ***at both "parties' urging"*** and "in the spirit of judicial economy."  *Id.*

Even under Defendants' unlikely hypothetical that the Ninth Circuit finds Defendants' conduct constitutes protected speech *and* also decides to analyze the second prong of the anti-SLAPP analysis as to the state law claims, that would not be decisive of the federal claims.  The likelihood that the Ninth Circuit decides *as a matter of law* that Defendants' *Rogers* and nominative fair use affirmative defenses are successful is next to none.  And any such holding would not be dispositive of the federal claims.  *See Breazeale*, 2015 WL 13687730, at *1 ("even if the Ninth Circuit reverses this Court's denial of the defendants' anti-SLAPP motion as to the plaintiffs' state law claims, the plaintiffs' [federal] claim will necessarily survive").  Thus, regardless of the Ninth Circuit's decision, the federal claims will proceed because

---

[8]  Defendants admit as much.  *See* Ball Decl., ¶ 12, Ex. 3 ("This means that Defendants will have no opportunity to take discovery after the stay is lifted and, as a result, suspending any non-party discovery would irreparably prejudice the Defendants.")  Apparent in Defendants' counsel email is a recognition that this case will proceed even after the appeal is done.

Fenwick & West LLP
Attorneys at Law

"[t]he outcome of the appeal of the denial of the anti-SLAPP motion [] can have no effect on the [federal] claim," and a stay is not warranted. *Id.*

Conversely, proceeding with Yuga Labs' federal claims would not harm Defendants since the anti-SLAPP appeal on state law issues would not be mooted. Any determination of the *Rogers* and nominative fair use defenses as to the federal claims will not be dispositive of the Ninth Circuit's anti-SLAPP analysis as to the state law claims. Accordingly, Yuga Labs' federal claims should not be stayed. *See Makaeff v. Trump Univ., LLC*, No. 10-CV-940-IEG WVG, 2011 WL 613571, at *3 (S.D. Cal. Feb. 11, 2011) (denying motion for stay and holding that "no potential resolution of Plaintiffs' claims can render the entire appeal moot").

Moreover, Yuga Labs' federal claims are not about the issues on appeal— protected free speech. Specifically, Yuga Labs' false advertising claim arises out of Defendants' commercial activities used to further their scam and market the RR/BAYC NFTs. Defendants' false statements to market, promote, and sell their infringing RR/BAYC NFTs include, for example, that they are donating profits to charity, that Defendant Ripps hand mints each RR/BAYC NFT, that they own trademark registrations for RR/BAYC and ApeMarket, and that they sell the RR/BAYC NFTs through a limited liability corporation. *See supra* Section II(C)(2); Ball Decl., Exs. 15, 20, 22, 23. Each of these false statements were made for commercial purposes—not in the furtherance of free speech.

Similarly, Yuga Labs' false designation of origin claim arises out of Defendants' commercial activities, not free speech. As this Court held, Yuga Labs' claims are based on textbook trademark infringement by Defendants: "[Yuga Labs'] claims are limited to Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff." Dkt. No. 62 at 11. There is no protected speech surrounding these commercial activities. Yuga Labs' cybersquatting claim likewise arises out of Defendants' use of the BAYC Marks to register domains (rrbayc.com and

apemarket.com) used to sell the RR/BAYC NFTs and promote their commercial activity. There is no protected speech surrounding these domain names. Indeed, Defendants **have not cited a single case** finding that a *Rogers* defense is applicable to an anti-cybersquatting claim. As this Court's Order made clear, the entirety of Yuga Labs' complaint is limited to Defendants' commercial activity. The federal claims do not arise out of any protected speech and will not be resolved by the appeal.

Defendants cite inapposite cases, in different procedural postures, to suggest that a stay would be more efficient due to any overlap in legal theory or facts. In *Babaria v. Blinken*, No. 22-cv-05521-SI, 2023 WL 187497, at \*1 (N.D. Cal. Jan. 13, 2023), the court granted a motion to stay proceedings, without opposition from the opposing party, pending appeal of a denial of a motion for preliminary injunction. Because the preliminary injunction appeal would decide the likelihood of success on the merits, the court held that it "may resolve Plaintiff's claims altogether." *Id.* at 2. Likewise, in *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-WHO, 2021 WL 783560, at \*11 (N.D. Cal. Mar. 1, 2021), the court stayed proceedings pending appeal of a decision on a motion for summary judgment. Here, Defendants' appeal will not resolve the merits of the federal claims altogether.

Finally, Defendants should not be permitted to abuse the anti-SLAPP appeal procedure by trying to loop in the federal claims that survived Defendants' motion to dismiss. This is an attempted end-run around the Federal Rules, and it should not be permitted. Accordingly, the third *Landis* factor also favors denial of a stay.

In summary, all three *Landis* factors weigh strongly in favor of denying a stay of the federal claims while Defendants' frivolous appeal is resolved by the Ninth Circuit. Defendants continue their money-making scheme promoting and collecting royalties on infringing RR/BAYC NFTs, Yuga Labs continues to incur substantial harm to their brand, and consumers continue to be explicitly misled by Defendants' willful infringement. Yuga Labs and consumers will suffer significant irreparable harm from a stay and delayed resolution of Yuga Labs' claims. Defendants' request

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   is a transparent attempt to perpetuate this ongoing harm.

2   **V.    CONCLUSION**

3       In light of the foregoing, Yuga Labs respectfully requests that this Court deny

4   Defendants' motion to stay Yuga Labs' federal claims pending their appeal.

5

6   Dated:  March 6, 2023                    FENWICK & WEST LLP

7

8                                           By:  */s/ Eric Ball*
                                                 Eric Ball
9
                                            Attorneys for Plaintiff and
10                                          Counterclaim Defendant
                                            YUGA LABS, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW