Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

Eric Ball (CSB No. 241327)
eball@fenwick.com
Kimberly Culp (CSB No. 238839)
kculp@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

Anthony M. Fares (CSB No. 318065)
afares@fenwick.com
Ethan M. Thomas (CSB No. 338062)
ethomas@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

*Additional Counsel listed on next page*

*Attorneys for Plaintiff*
*Yuga Labs, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>    Plaintiff and Counterclaim<br>    Defendant,<br><br>  v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>    Defendants and<br>    Counterclaim Plaintiffs. | Case No.: 2:22-cv-4355-JFW-JEM<br><br>**DISCOVERY MATTER**<br><br>**LOCAL RULE 37 JOINT STIPULATION RE DEFENDANTS RYDER RIPPS AND JEREMY CAHEN'S MOTION TO COMPEL**<br><br>Magistrate Judge: Hon. John E. McDermott<br>Motion Hearing Date: March 28, 2023<br>Motion Hearing Time: 10:00 AM<br>Discovery Cutoff Date: April 3, 2023<br>Pre-Trial Conference Date: June 9, 2023<br>Trial Date:     June 27, 2023 |

Melissa L. Lawton (CSB No. 225452)
mlawton@fenwick.com
**FENWICK & WEST LLP**
228 Santa Monica Boulevard, Suite 300
Santa Monica, CA 90401
Telephone: 310-434-5400
Fax: 650-938-5200

Megan L. Meier (*pro hac vice*)
megan@clarelocke.com
David Y. Sillers (*pro hac vice*)
david@clarelocke.com
Kathryn G. Humphrey (*pro hac vice*)
kathryn@clarelocke.com
**CLARE LOCKE LLP**
10 Prince Street
Alexandria, VA 22314
Telephone: 202-6288-7400
Fax:  N/A

*Attorneys for Plaintiff*
*Yuga Labs, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ............................................................................................. 3

I.   INTRODUCTORY STATEMENTS ................................................................ 1

    A.   Mr. Ripps and Mr. Cahen's Introductory Statement ............................ 1

    B.   Yuga Labs' Introductory Statement .................................................... 3

II.  ISSUES IN DISPUTE ..................................................................................... 6

    A.   Document Request Nos. 4, 24, 35.......................................................... 6

        1.   Mr. Ripps and Mr. Cahen's Position........................................... 9

        2.   Yuga Labs' Position ................................................................. 12

            a.   Defendants Have Not Made a Particularized and/or
                  Heightened Showing That They Need the
                  Confidential Settlement Materials.................................. 13

            b.   Defendants' Cases Do Not Support Compelling
                  Production of the Confidential Settlement Materials..... 15

            c.   Yuga Labs Will be Prejudiced if the Confidential
                  Settlement Materials Are Produced ................................ 17

            d.   If the Court Is Inclined to Order the Production of
                  the Settlement Agreement, It Should Examine the
                  Settlement Agreement *In Camera* First ......................... 18

STIPULATION REGARDING MOTION TO
COMPEL
          iii
          CASE NO. 2:22-CV-04355-JFW-JEM

This Joint Stipulation is submitted by Defendants and Counterclaim Plaintiffs Ryder Ripps ("Mr. Ripps") and Jeremy Cahen ("Mr. Cahen") and Plaintiff and Counterclaim Defendant Yuga Labs, Inc. ("Yuga" or "Yuga Labs") pursuant to Local Rule 37-2 in connection with Mr. Ripps and Mr. Cahen's motion to compel production of Lehman's settlement agreement and related communications.  The parties conferred regarding the production of these materials on February 21, 2023, and Defendants served their portion of this stipulation later that same day.  The Court's order establishing the case schedule is attached as Exhibit 1 to the Declaration of Derek Gosma.  Concurrent with the service of this stipulation, Defendants filed an *ex parte* motion to shorten time.

## I.    INTRODUCTORY STATEMENTS

### A.    Mr. Ripps and Mr. Cahen's Introductory Statement

Defendants are scheduled to take the deposition of third-party Thomas Lehman on March 2, 2023 and intend to ask questions regarding an affidavit that was secured through a February 3, 2023, settlement in a case involving trademark claims over the same RR/BAYC Project implicated in this litigation.  Yuga itself has placed that settlement at issue in this case by citing the related affidavit in support of its motion to dismiss Mr. Ripps and Mr. Cahen's counterclaims, and by having all three of its experts rely on it in their expert reports.  Defendants therefore need the settlement agreement and related communications to conduct the deposition of Mr. Lehman, but Yuga has refused to provide it, arguing that the documents are confidential and irrelevant.  Neither argument holds water, since the Court has entered a protective order in this case and Yuga has affirmatively relied on the affidavit in multiple ways.  Accordingly, the Court should order Yuga to immediately produce the settlement agreement and related communications.

Specifically, approximately seven months after Yuga initiated this litigation, Yuga filed a related case in the Northern District of New York against Mr. Lehman

(*Yuga Labs, Inc. v. Thomas Lehman*, Case No. 1:23-cv-000850-MAD-TWD), alleging trademark infringement claims regarding the RR/BAYC Project.  Gosma Decl. Ex. 5.  On February 3, 2023, Mr. Lehman and Yuga entered into a settlement agreement and on February 7, 2023, the N.D.N.Y. case was dismissed.  Gosma Decl. Ex. 6 at 1.  In connection with that settlement, Yuga obtained an affidavit from Mr. Lehman making a litany of controversial, out of context, and factually incorrect statements.  Gosma Decl. Ex. 7.  Yuga has since then used the declaration in this litigation as evidence, including by relying on the affidavit in three separate expert reports (damages, consumer survey, and brand equity).  Gosma Decl. ¶ 3.  Yuga has also relied on Mr. Lehman affidavit in its briefing before this Court, including in its reply in support of its motion to dismiss.  Dkt. 97, 97-3.

Defendants asked Yuga to produce the confidential settlement agreement and related communications/documents under this Court's Protective Order the same day its existence was made public.  The agreement and the communications related to it are highly relevant to, for example, the credibility of the statements in the affidavit (which Yuga and its experts have now relied on repeatedly).  Defendants contacted Yuga asking for the production of "all documents related to and communications with Mr. Lehman and/or his counsel … regarding the settlement[.]"  Gosma Decl. Ex. 8 at 11.  Defendants made this request under Documents Request Nos. 4 (documents regarding relevant lawsuits), 13 (documents produced by third parties), and 31 (documents relating to any determination/negotiation regarding trademark infringement), all of which plainly cover the document.  *Id.*  But Yuga refused to produce these materials, stating that the settlement "documents are not relevant or proportionate to the needs of this case" and are confidential.  Gosma Decl. Ex. 8 at 7.

On February 21, 2023, the parties conferred regarding the production of Mr. Lehman's settlement and related documents.  At the conference, Yuga again

refused to produce the materials Defendants requested and instead offered to produce only the settlement agreement and not the communications that would provide context for the agreement.  Gosma Decl. Ex. 8 at 2.  Defendants did not accept Yuga's offer because the communications are necessary to adequately test the credibility of Mr. Lehman's affidavit as they including additional information on the negotiation process that led to the affidavit and the underlying settlement agreement.  *Id*.

### B.   Yuga Labs' Introductory Statement

Defendants have not met their burden to justify the extraordinary discovery they request through this motion.  Defendants do not need settlement communications between Mr. Lehman and Yuga Labs, or the settlement agreement itself, to test the truthfulness of Thomas Lehman's sworn statements about his participation in Defendants' business venture.  They have always had everything they need to test his credibility.  They have known of Mr.  Lehman's involvement in their business venture longer than Yuga Labs has, but, nevertheless, Yuga Labs disclosed him in its October 2022 Initial Disclosures.  Mr. Lehman produced numerous highly relevant documents in response to the subpoena Yuga Labs served on him in September 2022, including the Team ApeMarket Discord and Team ApeMarket Telegram chat that Defendants withheld from Yuga Labs until after Mr. Lehman made his production.  These documents — documents that Defendants knew of longer than Yuga Labs — are contemporaneous records of Defendants' scam as it unfolded which provide all the evidence needed to support or impeach the claims in Mr. Lehman's declaration that Defendants now seek to challenge.

This is not a complicated or "perplexing" dispute.  Mr. Lehman was one of four main participants in Defendants' "business venture."  Based in part on the overwhelming evidence of Mr. Lehman's participation in Defendants' scam, as

demonstrated by the documents he produced, Yuga Labs filed a trademark
infringement lawsuit against him where he resides.[1]  Although Defendants refuse to
cease marketing their infringing products (ECF 106 at 4:20-23), Mr. Lehman was
willing to amicably, and confidentially, resolve Yuga Labs' dispute with him.
Indeed, the settlement agreement that Yuga Labs and Mr. Lehman negotiated
expressly includes a bargained-for confidentiality provision.  ECF 113-1 at ¶ 6.
Defendants nonetheless seek these materials not because they are relevant to any
claim or defense in this case, but on the claimed assumption that they may contain
evidence implicating the veracity of Mr. Lehman's sworn statement.

On February 6, 2023, Yuga Labs obtained a consent judgment against
Mr. Lehman.  Declaration of Ethan M. Thomas ("Thomas Decl.") Exhibit 1.
Mr. Lehman signed a declaration on February 3, 2023 (Gosma Decl. Exhibit 7),
which Yuga Labs produced to Defendants on February 6, 2023.  Defendants have
these documents and can question Mr. Lehman about them.

On February 7, 2023, Defendants subpoenaed Mr. Lehman (and his attorney)
for the confidential settlement agreement between Mr. Lehman and Yuga Labs and
confidential communications relating to the settlement (collectively, the
"**Confidential Settlement Materials")** by February 10, 2023, and commanded him
to appear for a deposition on February 15, 2023.  Thomas Decl. Exhibit 2.
Mr. Lehman and his counsel objected to these subpoenas.  Thomas Decl. Exhibit 3.
Defendants eventually rescheduled the deposition for March 2, 2023 and twice
petitioned the Court for emergency orders.  ECF Nos. 108, 115.

Through this Motion, Defendants seek the same documents from Yuga Labs
that Mr. Lehman also objected to producing.  Yuga Labs, likewise, properly made

---

[1] At the same time, Yuga Labs also filed suit against Defendants' other software
developer, Ryan Hickman, where he resides.

objections, including as to relevance or proportionality, to Defendants' discovery requests at issue in this Motion.[2]

Defendants do not need the Confidential Settlement Materials.  They will have the opportunity to ask questions and assess Mr. Lehman's credibility at the (now-rescheduled) deposition, and Yuga Labs has openly stated it does not and will not oppose Defendants' seeking to obtain testimony from Mr. Lehman as to the truthfulness of his sworn statements.  As noted above, Defendants have, and have had for some time, the documents on which Mr. Lehman based his sworn statement.  If Defendants wish to discredit Mr. Lehman, ***they already have all the tools they need to attempt to do so***.  Yet, rather than use the instruments already at their disposal, Defendants seek to invade upon the legitimate and bargained-for expectations of confidentiality that Mr. Lehman and Yuga Labs agreed-to, which, if ordered produced, would undoubtedly chill any further settlement discussions in this case and Yuga Labs' other proceedings.

Defendants' motion should also fail for other reasons.  Defendants acknowledge that their motion must clear a high bar of making a "particularized and/or heightened" showing that they need the Confidential Settlement Materials, but they offer the Court nothing from which to make that finding.  Their only basis for seeking this discovery is to assess Mr. Lehman's credibility as a witness — a generalized motivation that any party seeking discovery into confidential settlement communications would have.  While Defendants aver Mr. Lehman's declaration includes a "litany of controversial, out of context, and factually incorrect statements," their multiple filings and correspondences on this issue do not identify

---

[2] It is not entirely clear which requests Defendants seek the discovery through as they have cited different requests in their meet and confer (RFPs 4, 13, and 31) than they quote in the joint stipulation (RFPs 4, 13, and 35).  That is inconsequential, because the discovery sought is not relevant to any claim or defense or proportionate to the needs of the case, and Defendants fail to make a particularized showing of their need for the Confidential Settlement Materials.

a single such statement.  Because Defendants have made virtually no showing of *any* need for this evidence, they certainly fail the "particularized and/or heightened showing" requirement.  Moreover, none of Defendants' cases support ordering production of the Confidential Settlement Materials under these facts.

   For these reasons, the motion should be denied.

## II.   ISSUES IN DISPUTE

### A.   Document Request Nos. 4, 24, 35

Document Request No. 4

All Documents and Things relating to any lawsuit, judicial proceeding, administrative proceeding, U.S. Patent & Trademark Office or foreign trademark office proceeding, or arbitration relating to BAYC NFTs. This includes, without limitation, all pleadings; applications; motions and supporting Documents and exhibits; written discovery requests and responses thereto; privilege logs; deposition, trial, hearing, or other testimony; deposition, trial, hearing, or other exhibits; expert reports and materials; memoranda and points of authorities, including all supporting Documents and exhibits; rulings or orders; and all hearing transcripts.

Response to Document Request No. 4

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents and Things" where a subset of documents would be sufficient, should any response be required. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information. Yuga Labs objects to the extent that the requested documents are equally available to Defendants from other sources that are more convenient, less burdensome and/or less expensive, particularly to the extent the information sought is publicly available from the U.S. Patent & Trademark Office.

Subject to and without waiving the foregoing objections, and subject to the Protective Order in this Action (ECF No. 51), Yuga Labs will produce non-privileged, relevant, responsive documents within its possession, custody, or control, if any, located after a reasonable search proportional to the needs of the case sufficient to show its United States trademark applications for the Asserted Marks.

Subject to and without waiving the foregoing objections, after conducting a reasonable search proportional to the needs of the case for documents within its possession, custody, or control, Yuga Labs responds that it has no documents related to judicial proceedings, other than this litigation, which Yuga Labs has initiated regarding BAYC NFTs.

Document Request No. 13

All Documents produced or made available to Yuga by any non-party or Third Party relating to this Litigation.

Response to Document Request No. 13

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects

to this request as overbroad, not relevant to any claim or defense and not proportionate to the needs of the case as to the use of the term "relating to." Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

Subject to and without waiving the foregoing objections, and subject to the Protective Order in this Action (ECF No. 51), Yuga Labs will produce all documents produced to Yuga Labs by third parties or non-parties in response to subpoenas in this litigation.

Document Request No. 35:

All Documents relating to any determination, charge, contention, notification, negotiation, or assertion that any Person, Entity, logo, name, or product, infringes or might infringe any Asserted Mark. This includes, without limitation, all Documents relating to any meeting, discussion, or Communication with any Person or Entity relating to any Asserted Marks.

Response to Document Request No. 35:

Yuga Labs incorporates by reference each of the General Objections set forth above as if fully set forth herein. Yuga Labs objects to this request as overbroad, not proportionate to the needs of the case, and unduly burdensome to the extent it seeks "without limitation" documents and communications "relating to any Asserted Marks" in any way. Yuga Labs objects to this request as overbroad, not proportionate

to the needs of the case, and unduly burdensome, including because it requests "[a]ll Documents" and to the extent it qualifies categories of information with the term "any," where a subset of documents would be sufficient, should any response be required. Yuga Labs objects to this request to the extent it seeks disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Yuga Labs objects to this request to the extent it seeks information that is subject to any protective order, privacy interest, contractual obligation, other confidentiality obligation owed to any third party, or competitively sensitive or proprietary financial or business information.

Subject to and without waiving the foregoing objections, and subject to the Protective Order in this Action (ECF No. 51), Yuga Labs will produce non-privileged, relevant, responsive documents within its possession, custody, or control, if any, located after a reasonable search proportional to the needs of the case sufficient to show representative examples of Yuga Labs' enforcement of its rights in the Asserted Marks.

### 1.     Mr. Ripps and Mr. Cahen's Position

Yuga has taken the perplexing position that their settlement agreement and related documents with one of RR/BAYC's creators is not discoverable because it is (1) not relevant and (2) confidential.  Yuga's positions ring hollow considering that it repeatedly relies on a controversial affidavit that was secured through Mr. Lehman's settlement (under what conditions, Defendants still do not know).  And Yuga's confidentiality concerns are not a valid excuse for withholding highly relevant documents especially when considering that the Court has entered a Protective Order in this case precisely for this reason.  *See* Gosma Decl. Ex. 2.

As an initial matter, "there is no federal privilege preventing the discovery of settlement agreements and related documents." *Bd. Of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008). Thus, confidential settlement agreements must be produced upon a "particularized and/or heightened showing that the settlement information sought is relevant and likely to lead to admissible evidence." *Peters v. Equifax Info. Servs. LLC*, No. 12-cv-01837-TJH (OPx), 2013 WL 12169355, at *2 (C.D. Cal. Dec. 13, 2013). Further, the entry of a protective order, as there is in this case, "substantially mitigates" privacy concerns relating to disclosure of materials relating to a confidential settlement agreement. *O'Brien v. Johnson & Johnson Medical Devices Co.*, 19-cv-00619-CJC-(SPx), 2020 WL 5215384, at *5 (C.D. Cal. June 24, 2020).

Defendants' request for Mr. Lehman's settlement and related documents and communications satisfies these particularized relevance requirements because these materials shed light on the credibility of the assertions Mr. Lehman made in his February 3, 2023, affidavit. Mr. Lehman's affidavit includes several controversial statements regarding the purpose behind the RR/BAYC NFT Project, how the project came about, consumer confusion, trademark infringement risks, and Defendants' promotion of the RR/BAYC NFT Project. Many of these statements have been taken out of context or are simply incorrect. Yuga, after securing this affidavit through a settlement in the related N.D.N.Y. case, has repeatedly relied on the affidavit including in three expert reports and in its motion practice in this litigation. Yuga's systematic dependance on the affidavit confirms its importance to this case and that the document's credibility is a highly relevant issue.

Paradoxically, Yuga is now claiming that materials relating to Mr. Lehman's settlement agreement, which was ***finalized on the same day*** as Mr. Lehman's affidavit, is irrelevant to the contents of the affidavit. Yuga will likely continue to use Mr. Lehman's affidavit, including during summary judgement, and as things

stand Defendants will be unable to use Mr. Lehman's deposition to properly inquire regarding the interplay between his settlement and his affidavit.

Moreover, Defendants request for settlement materials in a related case involving trademark claims regarding the RR/BAYC Project is plainly relevant due to significant overlap of issues.  Courts in this jurisdiction have routinely required production of settlement agreements in similar circumstances.  For example, in *Board of Trustees of Leland Stanford Junior University*, the defendant in an IP infringement suit moved to compel production of a "settlement agreement … as well as the underlying negotiation and drafting documents" that the plaintiff entered with another defendant in the case. *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 522 (C.D. Cal. 2008) (emphasis added).  The court granted the motion in full because (1) "plaintiffs have relied upon and cited past settlement agreements to support their claims" and (2) the documents' "confidentiality does not shield it from discovery." *Id.*  And, although there is an interest in protecting the confidentiality of settlements, those privacy interests are sufficiently protected in cases, like ours, where a protective order has been entered. *O'Brien*, 2020 WL 5215384, at *5.

Indeed, countless cases can be found requiring the production of settlement agreements and related negotiation materials when there is an overlap in issues. *See, e.g.*, *Fresenius Medical Care Holding Inc. v. Baxter Intern., Inc.*, 224 F.R.D. 644, at 654 (N.D. Cal. 2004) (compelling production of "any negotiations, agreements, settlements including license agreements, settlement agreements an drafts thereof …"); *In re Google Litigation*, No. C-08-03172-RMW-PSG, 2011 WL 5190831, at *5-6 (N.D. Cal. Oct. 31, 2011) (compelling production of "[s]ettlement agreements or negotiations of settlements"); *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 583 (N.D. Cal. 2008) (compelling production of documents relating to "licensing/settlement negotiations");  *Lytel v. Simpson*, 2006

WL 8459764, at *2 (N.D. Cal. June 23, 2006); *In re Banc of California Sec. Litig.*, 2018 WL 1726237, at *1 (C.D. Cal. Apr. 6, 2018).

Accordingly, for the reasons set forth above, Yuga should be compelled to produce the settlement agreement in *Yuga Labs, Inc. v. Thomas Lehman*, Case No. 1:23-cv-000850-MAD-TWD and all related communications

### 2.    Yuga Labs' Position

This is a straightforward dispute and, as such, the motion to compel should be denied.  Defendants acknowledge that the applicable case law recognizes the extreme sensitivity of discovery into confidential settlement communications and therefore requires a "particularized and/or heightened showing that the settlement information sought is relevant and likely to lead to admissible evidence." *Peters v. Equifax Info. Servs. LLC*, No. 12-cv-01837-TJH (OPx), 2013 WL 12169355, at *2 (C.D. Cal. Dec. 13, 2013).  Yet, Defendants do not even attempt to meet this burden here, nor could they.

"Judicial policy favors settlements and confidentiality promotes settlement." *Ironhawk Tech. v. Dropbox*, No. CV 18-01481-DDP (JEMx), 2019 WL 13032152, at *1 (C.D. Cal. Mar. 20, 2019).  When weighing one party's "interest in preserving the bargained for confidentiality of its settlement agreement" against the other party's "interest in discovery," courts regularly find that "expectations of confidentiality should be protected." *Id.* at *2.  As courts in this district have noted, "the public policy favoring efficient settlements supports heightened scrutiny regarding their production." *Big Baboon Corp. v. Dell, Inc.*, No. CV 09-01198 SVW (SSx), 2010 WL 3955831, at *4 (C.D. Cal. Oct. 8, 2010).  In light of this policy, courts routinely protect confidential settlement materials from discovery. *See e.g.*, *id.*; *Peters*, 2013 WL 12169355, at *3 (holding settlement agreements with co-defendants not discoverable); *Contreras v. Kohl's Dep't Stores, Inc.*, No. EDCV 16-2678-JGB (KKx), 2017 WL 6372646, at *3 (C.D. Cal. Dec. 12, 2017) (refusing

to compel production of settlement agreements because not proportionate to needs of case); *Hem & Thread, Inc. v. Wholesalefashionsquare.com*, 2:19-cv-00283-CBM-AFMx, 2020 WL 5044610, at *3 (C.D. Cal. June 16, 2020) (protecting settlement negotiations and draft agreements because such disclosures "can have a 'chilling effect' on negotiations and may intrude into the settlement process."). Furthermore, Defendants have failed to explain why their "need for such confidential documents outweighs the privacy interests of the parties who entered into them." *Marsh v. Bloomberg Inc*, No. 16-cv-02647-MEJ, 2017 WL 2224250, at *2 (N.D. Cal. May 22, 2017) (refusing to order the production of confidential settlement agreements).

Based on these authorities and sound public policy favoring settlement, Defendants' request falls far short of the required standard.

### a. Defendants Have Not Made a Particularized and/or Heightened Showing That They Need the Confidential Settlement Materials

Defendants have offered no basis for the Court to find that they satisfied their burden to make a "particularized and/or heightened showing" that they need the Confidential Settlement Materials. Rather than demonstrate why this case is an exception, Defendants offer the same reasons that ***any litigant*** may want discovery into confidential settlement communications — i.e., generalized speculation that the materials might reveal credibility issues. Though Defendants aver that Mr. Lehman's declaration contains "controversial" statements and some that are "simply incorrect," Defendants have tellingly failed to identify a single such issue in any of their three filings on this topic.

Defendants also cannot meet this heightened standard because they have no need for the Confidential Settlement Materials even for their articulated purposes. As Defendants acknowledge, they are scheduled to depose Mr. Lehman. Neither

Yuga Labs nor Mr. Lehman has sought to prevent questioning on the lawsuit against Mr. Lehman, the disposition of that lawsuit, the settlement agreement, or the veracity of Mr. Lehman's declaration.  Defendants will have every opportunity to obtain testimony on the supposed inconsistencies or "controversial" statements they allege to be in the declaration.  They have Mr. Lehman's document production, which Mr. Lehman quotes verbatim in his declaration.  They can also use any communication they have made with Mr. Lehman to impeach any testimony they believe is false.  They offer no explanation as to why they need the Confidential Settlement Materials to test the truthfulness of a declaration indisputably in Defendants' possession and based on materials produced in discovery.[3]

While none of the Confidential Settlement Materials should be produced, documents representing Yuga Labs and Mr. Lehman's settlement negotiations warrant their own discussion.  This Court has acknowledged that settlement negotiations incorporate significant puffery; parties make concessions not because they reflect their actual belief but rather, they flow from a party's desire to avoid further litigation.  *See Wang Lab. Inc. v. Mitsubishi Elect. America Inc.*, 860 F. Supp. 1448, 1452 (C.D. Cal. 1993).  Therefore, any apparent inconsistencies arising from settlement negotiations would not demonstrate a lack of credibility, but would instead reflect the distinct set of circumstances under which the statements were made.  Indeed, any party earnestly engaging in settlement negotiations is likely to depart from their litigation positions.  Therefore, not only are the settlement negotiations irrelevant, but their production here would discourage Yuga Labs from making the concessions necessary to settle this matter, the matter involving Mr.

---

[3] It is important to note that the Confidential Settlement Materials are not admissible to prove or disprove any elements of the case.  Rule 408 mandates that settlement materials are never admissible "either to prove or disprove the validity or amount of a disputed claim."  Fed. R. Evid. 408(a).

Hickman, or other trademark matters Yuga Labs is currently pursuing.[4]  It would also provide an unfair advantage to Defendants in any negotiations with Yuga Labs, thus making it unlikely that the parties could ever negotiate a settlement where Defendants had an unfair advantage.

Because Defendants come nowhere close to satisfying the burden they admit is required, the inquiry ends here.  Still, their motion is deficient for other reasons.

### b.     Defendants' Cases Do Not Support Compelling Production of the Confidential Settlement Materials

Defendants' cases, which generally concern patent disputes and the resulting licensing agreements, do not support their position.  In *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l LTD.*, 253 F.R.D. 521 (C.D. Cal. 2014), the Court found a heightened showing that a settlement agreement was relevant in discovery because the plaintiff alleged in the complaint that other defendants had "stipulated to the judgments of infringement, enforceability and validity" of the asserted patents.  *Id.* at 522.  The terms of plaintiff's agreements themselves were therefore key evidence of a substantive element of the plaintiff's claim.  An equivalent scenario in a trademark infringement case would be, for example, a plaintiff claiming in its complaint that it obtained rights to the marks at issue through a confidential settlement with another party.  Yuga Labs has done no such thing.  The confidential settlement agreement with Mr. Lehman **is not** "at issue", as

---

[4] Indeed, even in those few cases where a court ordered production of a settlement agreement, settlement negotiations are routinely protected.  *See, e.g.*, *Sanofi-Aventis U.S. v. Genentech, Inc.*, No. CV 15–5685–GW (AGRx), 2016 WL 7444676, at *3 (C.D. Cal. Mar. 30, 2016) (ordering production of settlement agreement but not accompanying negotiations); *In re Mykey Tech., Inc. Patent Litig.*, No. CV 13-2461 AG (PLAx), 2016 WL 6681178, at *3 (C.D. Cal. Mar. 17, 2016) (same).

Defendants assert.[5]  The fact that Mr. Lehman's *declaration* contains relevant facts to this case in no way shows the *terms of the settlement agreement* prove Yuga Labs' claims.

In *Fresenius v. Med. Care Holding Inc. v. Baxter Int'l Inc.*, 224 F.R.D. 644 (N.D. Cal. 2004), the Court only considered an overbreadth challenge, so that case is inapposite to Defendants' burden to make a heightened or particularized showing of need for the Confidential Settlement Materials.  Even so, the settlement agreement ordered produced in that case included the terms of a licensing agreement for the asserted patents that related to the claimed damages.  There is not even a suggestion here that the Confidential Settlement Materials include a license agreement between the parties (and the Consent Judgment and resulting injunction, Thomas Decl. Exhibit 1, plainly shows that is not the case, since Mr. Lehman is prohibited from using Yuga Labs' marks).  *In re Google Litig.*, No. C–08–03172 RMW (PSG), 2011 WL 5190831 (N.D. Cal. Oct. 31, 2011) is similarly inapposite; though the court's analysis is not clear since the defendant did not assert relevance objections, the document production ordered there was "damages-related discovery" — not sought to show bias or purportedly contradictory testimony.  *Id.* at *6.  Indeed, the settlement with Mr. Lehman has no bearing on the claimed damages in this case because Yuga Labs only sought Mr. Lehman's own profits in that case, which it is not seeking in this case.

---

[5] Though Defendants do not argue that this is a basis for their motion, there is also no reason the Confidential Settlement Materials would be relevant for damages apportionment purposes.  Even in cases where the settlement involves a patent licensing fee (which, again, is clearly not the case here), that argument fails.  "It is a century-old rule that royalties paid to avoid litigation are not a reliable indicator of the value of" a party's intellectual property.  *Wang Lab. Inc.*, 860 F. Supp. at 1452 (C.D. Cal. 1993).  Such payments are motivated not by a fair appraisal of their value, but rather "reflect the licensee's desire to avoid the risk and exposure of litigation."  *Id.*; *see also Rude v. Wescott*, 130 U.S. 152, 164 (1889).  Defendants have the burden to rebut this presumption, but they have made no attempt to do so.  *See Universal Elec., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG (JPRx), 2014 WL 12586737, at *10 (C.D. Cal. Apr. 21, 2014).

The remainder of the cases string cited by Defendants similarly fail to support their position. *See Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568 (N.D. Cal. 2008) (concerning "settlement privilege," which is not the law in the Ninth Circuit and which Yuga Labs has not asserted); *In re Banc of California Sec. Litig.*, No. SA CV 17-00118-AG (DFMx), 2018 WL 1726237 (C.D. Cal. Apr. 6, 2018) (ordering production of an employment settlement agreement in a securities litigation case, based on prior finding that the document was factually relevant to an allegedly misleading statement in the company's proxy statement regarding employment history).

### c. Yuga Labs Will be Prejudiced if the Confidential Settlement Materials Are Produced

The judicial policies favoring confidentiality of settlement agreements and negotiations are especially important to enforce here.  Defendants participated in a "business venture" with Mr. Lehman and another third party, Ryan Hickman. Lehman Decl. (ECF 108-9) at ¶ 3; *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev.); *see also* ECF 62 ("In this case, the Court concludes that Defendants' use of the BAYC Marks does not constitute nominative fair use. Defendants are not using the BAYC Marks to sell Plaintiff's BAYC NFTs, ***but to sell their own competing RR/BAYC NFTs***.") (emphasis added).  Exposing settlement communications to discovery in this case would chill other non-parties' willingness to participate in the settlement process, and would inhibit Yuga Labs' ability to effectively negotiate future settlements by unfairly exposing Yuga Labs' negotiations and compromises in a case with similar facts.  This would prejudice settlement negotiations and deter all involved parties from openly and earnestly approaching any efficient resolution.  Defendants have provided no "particularized and/or heightened showing" to warrant departing from this sound policy encouraging candor and settlement.

The case Defendants cite for the proposition that a protective order mitigates privacy concerns, *see O'Brien v. Johnson & Johnson Med. Devices Co.*, No. ED CV 19-619-CJC (SPx), 2020 WL 5215384 (C.D. Cal. June 24, 2020), has no bearing on this issue, as the damage and chilling effects would result even if it were only Defendants' attorneys who were allowed to intrude upon the confidentiality of settlement negotiations and make tactical use of that information in this litigation. There will be a very real chilling effect on settlement discussions where one party wants a confidential settlement provision, and negotiates for it, but knows that the agreed upon confidentiality is hollow because the Court will order its production in other litigation.  Specifically, in this case, there is likely to be a freeze on settlement discussions if Defendants are afforded an unfair tactical advantage to understand how Yuga Labs negotiated its settlement with Mr. Lehman.  Allowing discovery of the confidential settlement agreement and negotiations will prejudice settlement negotiations and deter all involved parties from candidly and earnestly approaching any efficient resolution.

   **d. If the Court Is Inclined to Order the Production of the Settlement Agreement, It Should Examine the Settlement Agreement *In Camera* First**

While Defendants guess that settlement negotiations may reveal some unspecified credibility issue, they tacitly admit that the Confidential Settlement Materials themselves are not relevant to any claim or defense.  These materials are also undisputedly inadmissible under Fed. R. Evid. 408 for such purposes.

Though Yuga Labs maintains that Defendant have not satisfied their burden, should the Court find the record inadequate to deny Defendants' motion, Yuga Labs respectfully asks the Court to conduct an *in camera* review of the settlement agreement between Yuga Labs and Mr. Lehman and determine whether the contents are sufficiently necessary to the claims at issue in this litigation to warrant the

extraordinary step of piercing the parties' reasonably expected and bargained-for confidentiality surrounding those negotiations and the agreement. *See Big Baboon Corp.*, 2010 WL 3955831, at *4 ("in recognition of the federal policy favoring settlement agreements, this Court ordered Plaintiff to file a sealed copy of its settlement agreement with Honda for *in camera* review to allow for a particularized determination of its relevancy.").

&ast; &ast; &ast;

Based on this case law and Defendants' failure to show any legitimate need for the Confidential Settlement Materials — much less a heightened or particularized showing — the motion should be dismissed.

1

2   Respectfully submitted,

3   Dated: March 6, 2023

4   By: */s/  Derek Gosma*                    By: */s/ Ethan M. Thomas*
    Louis W. Tompros (*pro hac vice*)         Eric Ball (CSB No. 241327)
5   louis.tompros@wilmerhale.com              eball@fenwick.com
    Monica Grewal (*pro hac vice*)            Kimberly Culp (CSB No. 238839)
6   monica.grewal@wilmerhale.com              kculp@fenwick.com
    Scott W. Bertulli (*pro hac vice*)        **FENWICK & WEST LLP**
7   scott.bertulli@wilmerhale.com             801 California Street
    **WILMER CUTLER PICKERING**               Mountain View, CA 94041
8     **HALE AND DORR LLP**                   Telephone: 650.988.8500
    60 State Street                           Fax: 650.938.5200
9   Boston, MA 02109
    Telephone: (617) 526-6000                 Anthony M. Fares (CSB No. 318065)
10  Fax: (617) 526-5000                       afares@fenwick.com
                                              Ethan M. Thomas (CSB No. 338062)
11  Derek Gosma (SBN 274515)                  ethomas@fenwick.com
    derek.gosma@wilmerhale.com                **FENWICK & WEST LLP**
12  Henry Nikogosyan (SBN 326277)             555 California Street, 12th Floor
    henry.nikogosyan@wilmerhale.com           San Francisco, CA 94104
13  **WILMER CUTLER PICKERING**               Telephone: 415.875.2300
      **HALE AND DORR LLP**                   Fax: 415.281.1350
14  350 South Grand Ave., Suite 2400
    Los Angeles, CA 90071                     Melissa L. Lawton (CSB No. 225452)
15  Telephone: (213) 443-5300                 mlawton@fenwick.com
    Fax: (213) 443-5400                       **FENWICK & WEST LLP**
16                                            228 Santa Monica Boulevard, Suite 300
    Attorneys for Defendants                  Santa Monica, CA 90401
17  *Ryder Ripps and Jeremy Cahen*            Telephone: 310-434-5400
                                              Fax: 650-938-5200
18                                            Megan L. Meier (*pro hac vice*)
19                                            megan@clarelocke.com
                                              David Y. Sillers (*pro hac vice*)
20                                            david@clarelocke.com
                                              Kathryn G. Humphrey (*pro hac vice*)
21                                            kathryn@clarelocke.com
                                              **Clare Locke LLP**
22                                            10 Prince Street
                                              Alexandria, VA 22314
23                                            Telephone: 202-6288-7400
                                              Fax: N/A
24
25                                            *Attorneys for Plaintiff*
                                              *Yuga Labs, Inc.*
26

27

28
    STIPULATION REGARDING MOTION TO                      20                  CASE NO. 2:22-CV-04355-JFW-JEM
    COMPEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Derek Gosma attests that concurrence in the filing of this document has been obtained from Ethan Thomas.

Dated:  March 6, 2023                    _/s/ Derek Gosma_____

                                         Derek Gosma