ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>Defendants and Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF YUGA LABS, INC.'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**<br><br>Mag. Judge: Hon. John E. McDermott<br>Motion Hearing Date: March 21, 2023<br>Motion Hearing Time: 10:00 AM<br>Discovery Cutoff Date: April 3, 2023<br>Pre-Trial Conference Date: June 9, 2023<br>Trial Date: June 27, 2023 |

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA  90401
   Telephone:  310.434.4300
4
5  DAVID Y. SILLERS (*admitted pro hac vice*)
   david@clarelocke.com
6  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
7  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA  22314
   Telephone:  202.628.7400
10
11 Attorneys for Plaintiff and
   Counterclaim Defendant
12 YUGA LABS, INC.

## I. INTRODUCTION

Defendants' motion represents the most recent iteration of a constantly shifting rationale to obtain what they have been after since the beginning of this case: irrelevant, private, internal company records they evidently want to use to embarrass the company,[1] while exacting significant discovery costs along the way. This exercise has rightfully borne no fruit because Defendants' theories have no merit. More surprising are Defendants' inconsistent positions: that discovery should be dramatically expanded into areas of marketing disclosures and securities laws, but also that the case should be stayed (Dkt. 118); that evidence of their intentional infringement in this trademark case is too burdensome to collect, but Yuga Labs' production is insufficient, even when Defendants cannot specify what is missing and why they need it; and, most recently concocted, that Yuga Labs is engaging in unfair litigation tactics,[2] all while Defendants' misconduct is laid bare.

Like their prior attempts, the requests in Defendants' motion are without merit, and developments in discovery have only affirmed that reality. The motion should be denied, and Yuga Labs should be awarded its attorneys' fees and costs.

## II. DEFENDANTS' REQUESTS ARE MERITLESS

### A. Moot Requests (Topics A, C, F, H)[3]

As detailed in the parties' Joint Stipulation (Dkt. 103-1) ("Joint Stip."), Yuga Labs has searched for and produced responsive documents (if any) in response to Defendants' demands encompassed by Topics A, F, and H. Defendants knew this

---

[1] Defendants' use of this litigation to farm engagement on social media and promote their counterfeit NFTs has been a persistent theme and continues even now. *See, e.g.*, Supplemental Declaration of Ethan Thomas ("Supp. Thomas Decl.") Ex. 2.
[2] In the week preceding this filing, Defendants have sent a series of troubling emails containing false statements and accusations of "misconduct" or "abusive litigation conduct" in an apparent attempt to build a counter-narrative to their discovery failings. Should those documents be used to present these bad-faith accusations to the Court, since they were not found in the parties' Joint Stipulation, Yuga Labs intends to seek leave to file a brief reply addressing them
[3] The Joint Statement does not contain topics/headings lettered B, D, L, or M.

when they served the Joint Stipulation, and they knew it when they filed the motion, but they inexplicably proceeded. The motion should be denied as moot (or, to the extent Defendants raise new issues in their supplemental memorandum, not ripe) as to these topics.

As to Topic C, Defendants already moved on this request and had their motion denied. Dkt. 87. "[T]he origin of the marks is not in dispute and thus not relevant" and "[t]he origin of the marks only has relevance to the Inflammatory Material," to which Defendants are not entitled to further pursue discovery until the Court rules on Yuga Labs' motion to strike and motion to dismiss." *Id.* at 2. The successive motion on the same issue provides no reason for the Court to reconsider its previous Order. In any event, *even though they are not entitled to discovery on this topic*, Defendants have pursued and obtained the internal information they seek. Joint Stip. at 18 (summarizing and citing deposition testimony Defendants have obtained on this topic). This topic is moot as well.

### B. Requests for More Voluminous Discovery of Internal Documents (Topics E, I, J)

Defendants have made a point of counting documents in each of their recent discovery filings (which, of course, is not a metric for the quality of discovery provided, the validity of objections, or a party's compliance with its obligations more generally).[4] Relying on that and their conclusory insistence that *more internal* documents are a *necessary* component of a sufficient production, Defendants demand more voluminous discovery into internal records.

Critically, Defendants never explain ***why*** the internal records they seek would show anything that they have not obtained by Yuga Labs' already-produced internal, public, and third-party documents. *See* Joint Stip. at 21–23 (explaining that

---

[4] Defendants also artificially inflate their production volume by framing it in terms of "communications," which by their definition separately counts every line of an Excel spreadsheet as a separate "communication."

Defendants obtained sufficient evidence on Topic E); *id.* at 47–48 (same for Topic I); *id.* at 50–51 (same for Topic J). There is no further proportionate information to be obtained from the additional internal documents Defendants demand.

As explained in the Joint Stipulation, it should be unsurprising that evidence of Defendants' trademark infringement is mostly public and within Defendants' possession. This set of requests appears to be more of a fishing expedition in the hopes of finding something that could resuscitate Defendants' defensive case. But that is an improper use of discovery. *See, e.g.*, *In re Pioneer Corp.*, No. CV 18-4524 JAK (SSX), 2018 WL 4963126, at *5 (C.D. Cal. Aug. 27, 2018) (under "familiar standards of Rule 26," discovery is improper where it "reasonably appears to be a fishing expedition, either to determine whether new claims may exist or for alternative reasons, rather than a genuine search for evidence in support of" existing claims.). Especially at this late stage in discovery, Defendants should not be entitled to conduct such more invasive and burdensome additional discovery without justifying why it is relevant, proportionate to the needs of the case, and non-duplicative of discovery already in their possession.

### C. Request on Collateral Topics Stayed by PSLRA and Purportedly Relevant to "Unclean Hands" (Topic G)

For a variety of reasons explained in the Joint Stipulation that do not need to be rehashed in this supplemental memorandum, this topic is improper. The discovery sought is not only irrelevant and disproportionate, but it attempts to circumvent the PSLRA and the court's stay of discovery in a separate action. *See* Joint Stip. 31–41. These topics are also another attempt at the Inflammatory Material that has been Defendants' ulterior motive for all discovery efforts since the beginning of this case.

As to Defendants' unclean hands theory, in addition to the reasons articulated in the Joint Stipulation, Defendants cannot prove their defense. Regarding their securities fraud allegation, Defendants failed to disclose an expert to opine on this

topic and have no witnesses to prove their preposterous allegation that the BAYC NFTs are securities. Supp. Thomas Decl. ¶ 3. Furthermore,  *See* Thomas Decl. Ex. 22 (Dkt. 103-38) at 231:4–235:24 (testimony by Yuga Labs' former CEO); Supp. Thomas Decl. Exhibit 1 [5] Defendants have their answer; they just don't like it. Further discovery should be denied as to this topic.

### D. Requests to Compel Admissions (Topics K, N, O)

Defendants' topics concerning their requests for admission should be denied for the simple reason that they seek an undeterminable or unavailable remedy. Defendants appear to ask the Court to rewrite their questions and force Yuga Labs to admit them as re-written. This is a remedy available under Fed. R. Civ. P. 36 or 37.

Defendants' request that Yuga Labs adopt their interpretation of the requests for admission are also invalid. Because requests for admission seek to establish the proposed statement, parties cannot be expected to admit those facts while pretending to overlook technical issues with the request and flawed definitions. *See Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567-AHM (AGRX), 2010 WL 11523591, at *3 (C.D. Cal. Mar. 16, 2010) ("To facilitate clear and succinct responses, the facts stated within the request must be singularly, specifically, and carefully detailed."). By way of example, Defendants could not ask Yuga Labs to "admit that everyone owns an NFT" and then complain that a denial does not address some true, intended, narrower meaning. Though their time to do so has now expired, Defendants could have served new requests for admission at any time since their first

---

5 

set was served on August 15, 2022, and — though those requests may be subject to other objections, including owing to the volume and harassing nature of most of the requests — Defendants perplexingly chose not to make the requests that they now want answered. There is no remedy to be obtained here, and Defendants' motion should be denied, including because the requests are otherwise objectionable as set forth in the Joint Stipulation.

### III. DEFENDANTS' MOTION VIOLATES THE LETTER AND SPIRIT OF LOCAL RULE 37, AND SANCTIONS SHOULD BE IMPOSED

"The failure of any counsel to comply with or cooperate in the [Local Rule 37] procedures may result in the imposition of sanctions." L.R. 37-4; *see also Keshishian v. Aetna Life Ins. Co.*, No. 13-CV-957-FMO-JEMX, 2013 WL 12155723, at *1 (C.D. Cal. Aug. 23, 2013) ("Rule 37-4 provides that sanctions may be awarded for the alleged violations" of L.R. 37-1 and 37-2). Virtually all of the requests in this motion concern subjects that Defendants knew were moot, frivolous, or both, and Defendants filed the motion anyway. This is part of a broader pattern of an abuse of the discovery process to try to find some evidence to help Defendants further monetize their scam. Indeed, as set forth in Yuga Labs' opposition to Defendants' motion to stay (Dkt. 120), Defendants refused to stop marketing their scam and continued to market even after seeking the stay. They have also used the discovery process for promotional purposes. *E.g.*, Dkt. 89 at 19. The improper purpose of these filings to impose burden and to fish for documents to which Defendants are not entitled is apparent.

Under L.R. 37-4 and the Court's inherent sanction power, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (cleaned up), the Court has discretion to deter and to make right such abuses of the discovery process. For the reasons explained in the Joint Statement and herein, Yuga Labs respectfully submits that the time has come to exercise that authority and rectify the prejudice.

Dated: March 7, 2023

FENWICK & WEST LLP

By: */s/ Eric Ball*
    Eric Ball
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.