Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., | Case No. 2:22-cv-04355-JFW-JEM |
| Plaintiff and Counterclaim Defendant, | **Defendants' Reply to Yuga's Response Brief in Support of Defendants' Motion to Stay the Case Pending Appeal** |
| v. | |
| Ryder Ripps and Jeremy Cahen, | Hearing: Mar. 27, 2023 at 1:30 pm |
| Defendants and Counterclaim Plaintiffs. | |

# I.    INTRODUCTION

While Yuga may have a different view about Defendants' likelihood of success on appeal, it does not appear to dispute that, absent a stay, this Court will have to hold two separate trials on two closely related sets of claims—one on Yuga's federal claims and the other on its state law claims.  Nor does Yuga dispute that if the Ninth Circuit adopts Defendants' arguments regarding their affirmative defenses, it would at a minimum substantially narrow the issues remaining in front of this Court.  This is because, even though the Ninth Circuit does not have jurisdiction over the federal claims, its guidance on whether Defendants' conduct was protected speech (at anti-SLAPP step one) and on whether Defendants have established a First Amendment or fair use defense against the state claims (at anti-SLAPP step two) is highly relevant to whether Defendants can assert a First Amendment or fair use defense against the federal claims.  In short, unless the instant motion is granted, this Court and the parties will run the risk of having to go through successive trials and—worse still—having the results of the first trial partially or fully mooted by the Ninth Circuit's ultimate ruling.

Even setting aside the significant judicial efficiency concerns, the burden of successive trials—or of a single trial that could have been avoided or simplified by waiting for less than a year for the Ninth Circuit to act—will fall disproportionately on Defendants, who as individuals lack the resources of a four-billion-dollar company like Yuga.  But Yuga, too, would benefit from avoiding duplicative trials and simplifying the issues before this Court—particularly if (as Yuga insists) the Ninth Circuit will ultimately rule in its favor.  Moreover, Yuga's suggestion that it will suffer significant harm from a stay is illusory.  To be clear, Defendants are asking this Court to stay the full case (that is, *both* Plaintiff's federal claims and Defendants' counterclaims) and are willing to place all royalties received from secondary market sales of the RR/BAYC NFTs during the pendency of the appeal into escrow.  The

1  remainder of Yuga's harm arguments rely on cases that are wholly inapposite, as they

2  involve far longer anticipated delays than is likely here.

3      Defendants' motion for a stay of all proceedings pending the Ninth Circuit's

4  decision on appeal should be granted.

5  **II.    ARGUMENT**

6      **A.    The Orderly Course of Justice Is Best Served by a Stay**

7      As explained, a stay would serve the "orderly course of justice" because the

8  Ninth Circuit's decision is likely to make this case far "easier to decide." *Sarkar v.

9  Garland*, 39 F.4th 611, 619 (9th Cir. 2022).  Specifically, if the Ninth Circuit proceeds

10 to the second step of the anti-SLAPP inquiry, as it has in similar appeals, *see Greater

11 L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th

12 Cir. 2014), it will address the exact set of defenses—the *Rogers* test and nominative

13 fair use—that Defendants have offered against the federal claims remaining before

14 this Court.  Mot. 3-5.  And even if the Ninth Circuit ends its inquiry at step one, the

15 question of whether Defendants' challenged conduct was "protected speech" is likely

16 to bear on the *Rogers* inquiry's similar threshold question.  Mot. 5.

17     Yuga's principal response is to assert, without explanation, that Defendants'

18 appeal is "frivolous."  Opp. 20.  "Allegations of frivolous appeal are not taken

19 lightly," let alone allegations of frivolousness accompanied by such scant explanation.

20 *Tomer v. Gates*, 811 F.2d 1240, 1243 (9th Cir. 1987).  And here, Defendants have

21 explained why they respectfully disagree with this Court's anti-SLAPP decision in a

22 comprehensive brief that cites countervailing appellate authority.  Indeed, Yuga cites

23 no law supporting this Court's conclusion that the fact a person is paid for expressive

24 activity—i.e., that it is "heavily commercial"—renders the First Amendment

25 inapplicable.  The Supreme Court has expressly held to the contrary.  *See Board of

26 Trustees of State University of New York v. Fox*, 492 U.S. 469, 482 (1989) ("Some of

27 our most valued forms of fully protected speech are uttered for a profit."); *see also*

28

1    *Punchbowl, Inc. v. AJ Press, LLC*, 52 F.4th 1091, 1097 (9th Cir. 2022) ("A work … is

2    not rendered non-expressive simply because it is sold commercially.").  That Yuga

3    fails to cite any case law clearly supporting this Court's decision—and fails to

4    otherwise explain why the appeal is "frivolous," besides simply summarizing the

5    ruling—is a telling indication that it cannot do so.[1]

6         Yuga next contends that "there is no outcome in which the appeal is dispositive

7    of Yuga Labs' federal claims."  Opp. 20.  This is flat wrong.  Even if the Ninth Circuit

8    addresses only anti-SLAPP step one, such a ruling could still have a significant impact

9    on this Court's resolution of Defendants' affirmative defenses because it would

10   address whether Defendants' conduct at least implicates protected speech.  Mot. 5.

11   Yuga has no answer.

12        In any event, the Ninth Circuit has the power to address the legal sufficiency of

13   Yuga's state law claims if it so chooses, and the only published authority on point

14   suggests that judicial economy supports doing so.  *See Greater L.A. Agency on*

15   *Deafness*, 742 F.3d at 425.  *Agency on Deafness* at minimum stands for the

16   proposition that the Ninth Circuit has *authority* to reach Anti-SLAPP step two if it so

17   chooses—particularly where, as here, doing so would serve the purposes of judicial

18   efficiency.  *See id.*  Accordingly, Yuga's assertion (at 21) that the odds are "next to

19   none" that the Ninth Circuit will address Defendants' affirmative defenses is both bald

20   speculation and at odds with the Ninth Circuit's case law.

21        Yuga also (wrongly) argues that the Ninth Circuit's decision could not possibly

22   be "dispositive of the federal claims."  Opp. 21.  As already explained, the same

23   affirmative defenses Defendants press on appeal as to the state law claims likewise

24

25   _____

26   [1] While Yuga devotes nearly a third of its opposition brief to laying out *the affirmative
     case* it apparently intends to present at trial, Opp. 3-10, its summary of its trial

27   argument remarkably does not address the legal arguments on appeal, much less
     Defendants' affirmative arguments.

28

apply to—or at least bear substantially on—their defenses to Yuga's federal claims.

Mot. 4-5.  The district court decisions Yuga cites in support of its argument did not

address a situation like the one here—where the Ninth Circuit will have the

opportunity to directly address affirmative defenses that apply to state and federal

claims alike.  Opp. 21-22.  Rather, one of those decisions specifically noted that a stay

would be favored if (as here) it was likely that "success in the appeal would affect the

outcome of the federal claim" remaining before the district court.  *Breazeale v. Victim*

*Servs., Inc.*, 2015 WL 13687730, at *1 (N.D. Cal. Sept. 14, 2015).  Both decisions

also apply the *Nken* test rather than the *Landis* test for a stay of proceedings pending

appeal applicable here.  *See id.* at *1; *Makaeff v. Trump Univ., LLC*, 2011 WL

613571, at *3 (S.D. Cal. Feb. 11, 2011).  Yuga does not contest that *Landis* governs

here outside of a single sentence in a footnote, which is insufficient to preserve the

issue.  Opp. 13 n.2; *Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014)

("Arguments raised only in footnotes … are generally deemed waived.").  This is for

good reason—"district courts have … overwhelmingly concluded that" *Landis* applies

where, as here, the movant seeks a stay of "*proceedings*" rather than a stay of a final

"*judgment or order*."  *Kuang v. U.S. Dep't of Defense*, 18-cv-03698-JST, 2019 WL

1597495, at *3 (N.D. Cal. Apr. 15, 2019) (collecting cases).

Yuga's related assertion that the federal claims have nothing to do with free

speech is misleading for similar reasons.  Opp. 22.  Even if the underlying elements of

the claims do not implicate free speech, Defendants have raised the First Amendment

and nominative fair use as affirmative defenses—just as they have with Yuga's state

law claims.

Finally, the notion that Defendants' stay request is an "end-run" around the

Federal Rules is meritless.  Opp. 23.  Yuga is the master of its own complaint, and

chose to bring closely related state and federal claims arising from the same activity.

Had it wanted to avoid an anti-SLAPP motion—and the corresponding possibility of

1   an interlocutory appeal bearing substantially on its federal claims—it could have

2   elected to bring solely federal claims.

3   **B.    Both Parties Would Be Harmed in The Absence of a Stay**

4   As explained, a stay pending appeal will avoid significant, unnecessary work

5   and expense—namely, the possibility of duplicative or unnecessary trials.  Mot. 6.  If

6   Defendants prevail on appeal, a stay may well allow the parties to avoid a trial

7   entirely; if Yuga prevails, a stay will ensure the parties are subjected to only a single

8   trial.

9   Yuga does not contest that ample case law supports the legal principle that a

10  party is harmed by being subjected to an unnecessary or duplicative trial—and that

11  avoiding such harm is a sound basis on which to grant a stay.  Instead, it tries to

12  distinguish the cases Defendants cited because the *reason* a duplicative or needless

13  trial would be avoided by a stay was different than the reason here.  Opp. 18 n.18.  But

14  once again, Yuga does not explain why minor factual differences between decisions

15  matter when the basic legal rule cited is undisputedly good law.  And, in any event, at

16  least some of Defendants' cited authority involved *less* extreme facts than those

17  present there—e.g., in one such case, the appeal would have resolved "the validity of

18  *roughly half* of the Plaintiffs' claims," while here, the appeal could resolve *all* of

19  Yuga's claims.  *Finder v. Leprino Foods Co.*, 2017 WL 1355104, at *4 (E.D. Cal. Jan.

20  20, 2017) (emphasis added).  In both cases, the appeal is likely to avoid "'substantial,

21  unrecoverable, and wasteful'" litigation costs—discovery, pre-trial motions practice,

22  and trial itself—that constitute "hardship or inequity sufficient to justify a stay."  *Id.* at

23  *4.

24  Yuga next attacks a strawman, suggesting Defendants are concerned only with

25  avoiding unnecessary "trial prep and discovery."  Opp. 18.  That leaves out a critical

26  piece of Defendants' argument for a stay—that a stay would avoid a needless *trial* (or

27  duplicative trials), on *top* of duplicative discovery and trial preparation.  Mot. 6-7.

28

Regardless, the two cases Yuga cites for the proposition that litigation costs cannot justify a stay are inapposite.  Opp. 18-19 (citing *Exeltis USA Inc. v. First Databank, Inc.*, 2018 WL 1989522, at *3 (N.D. Cal. Mar. 5, 2018); *Breazeale*, 2015 WL 13687730, at *2).  For one thing, they applied a different standard (the *Nken* standard) than the one at issue here (the *Landis* standard).  See *supra* p.3 n.1.  Furthermore, although those decisions express some hesitance to issue a stay based on the costs of discovery alone, neither involved any argument that needless pre-trial motions practice and trial itself could also be avoided with a stay.  And finally, the great weight of authority takes the contrary view—that significant, avoidable litigation costs *can* establish sufficient harm to justify a stay pending appeal.  *See* Mot. 5-6 (collecting cases); *Silbersher v. Allergan Inc.*, 2021 WL 292244, at *3 (N.D. Cal. Jan. 28, 2021) (stay justified to avoid "burdensome and expensive discovery" that "may be needless, depending on the Ninth Circuit's decision"); *Burgan v. Nixon*, 2016 WL 6584478, at *5 (D. Mont. Nov. 7, 2016) ("To require the County to proceed with discovery … and to otherwise defend the claims against it, would … cause it irreparable harm[.]").

Finally, there is no real dispute that the harms the parties will face without a stay are likely to fall disproportionately hard on Defendants.  Yuga does not contest that there is a vast disparity of resources between the parties, nor that this court may take account of that disparity in assessing the balance of harms.  *See, e.g.*, *Hamilton v. TBC Corp.*, 2020 WL 5982391, at *2 (C.D. Cal. Feb. 13, 2020) ("economic disparity between the parties" supported staying taxation of costs pending appeal).  Instead, it argues merely that Defendants have too vigorously pursued their defense to now seek a stay.  Opp. 19.  But no case law suggests a defendant must abandon his defense in order to qualify for a stay.[2]

---

[2] Yuga also notes that Defendants previously considered moving for a stay in January.  Opp. 11.  But the fact that Defendants did not file this motion immediately makes no difference to whether the stay would serve the orderly course of justice.

**C.  The Efficiency of a Stay Far Outweighs Any Potential Harm to Yuga**

Where, as here, "a stay will not dramatically postpone the timeline of [a] case," delay does not counsel strongly against pausing proceedings.  *Peck v. County of Orange*, 528 F. Supp. 3d 1100, 1107 (C.D. Cal. 2021); *see also Youngevity Int'l v. Smith*, 2018 WL 3426266, at *1 (S.D. Cal. July 16, 2018) ("[B]ecause an interlocutory appeal [of the denial of the anti-SLAPP motion] is already pending, the Court does not find that a stay. . . would cause Counterclaimants any prejudice."); Mot. 7-8.

Yuga nonetheless claims that even the modest delay arising from a stay pending appeal would result in significant harm to the company.  Opp. 13-16.  But if Yuga really faced such pressing, ongoing harm—the kind requiring resolution with maximum speed—it could, and would, have sought a preliminary injunction.  It did not.  "'By sleeping on its rights," Yuga "demonstrate[d] the lack of need for speedy action.'"  *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). And it makes sense that, as its actions evidence, Yuga would not require urgent relief in this case.  It is, after all, a four-billion-dollar company complaining of, at most, a few million dollars in damages (a sum Defendants dispute).  Opp. 15.

In any event, the delay Yuga cites is too short to weigh heavily in the Court's analysis.  Ordinarily, an anticipated delay of less than a year does not justify denying a stay where the other stay factors favor granting one. *See, e.g.*, *Flores v. Collection Consultants of Cal.*, 2015 WL 12791371, at *2 (C.D. Cal. July 27, 2015) ("There is no showing that a stay will damage Plaintiff. … Assuming Plaintiff will prevail, a stay would merely delay Plaintiff's pursuit of compensation by, at most, one year."); *Larson v. Trans Union*, LLC, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015) ("competing interests … favor a stay" where case would likely resume "within one year").  And the Ninth Circuit's most recent statistics indicate that the "median time from filing notice of appeal to disposition" is thirteen months.  U.S. Courts of Appeal-Median Time Interval in Months for Civil and Criminal Appeals Terminated on the

1  Merits (Sept. 2022).[3]  Defendants' notice of appeal was filed in December 2022,

2  meaning that, on average, the parties can expect a decision by January 2024—i.e., ten

3  months from now.

4        Yuga cites an array of cases to suggest that the harm it (purportedly) faces from

5  Defendants' continuing actions nonetheless justifies denying a stay.  Opp. 15-16.  Not

6  a single one of those cases, however, involved a stay pending appeal—and in each of

7  them, the relevant time period for assessing a threatened harm was vastly longer than

8  the ten or so months of delay at issue here.  One case involved a request for a

9  *permanent* injunction—where the question was what harm would befall a plaintiff

10  from the challenged acts continuing in perpetuity.  *See Sprint Sols., Inc. v. Cell*

11  *Wholesale, Inc.*, 2015 WL 13919095, at *11 (C.D. Cal. Dec. 10, 2015).  Two involved

12  preliminary injunctions—where the question was not what harm would arise from an

13  incremental and discrete delay, but instead what harm would befall a party from

14  delaying relief for the entire, unpredictable life of a case.  *SMC Promotions, Inc. v.*

15  *SMC Promotions*, 355 F. Supp. 2d 1127 (C.D. Cal. 2005); *Rent-A-Ctr., Inc. v. Canyon*

16  *Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991).  A fourth

17  concerned a stay pending Chapter 11 Bankruptcy proceedings that had already

18  dragged on for over eighteen months, where the court concluded a stay would "entail

19  *considerable* delay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005)

20  (emphasis added).  And the last involved a stay pending conclusion of a Patent and

21  Trademark reexamination, where the court anticipated that, if a stay were granted,

22  "trial would be years away." *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics*

23  *Inc.*, 2011 WL 3267768, at *1 (N.D. Cal. July 28, 2011).  None of those cases

24  illuminates the extent of harm occasioned by a delay, like the one Yuga seeks to

25  avoid, of less than a year—let alone a delay, like this one, that would bring with it

26

27  _____

28  [3] https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2022.pdf

significant countervailing benefits from the avoidance of needlessly duplicative litigation expenses. And—as discussed above—whatever danger Yuga might face from a short delay is further mitigated by Defendants' willingness to put any royalties they earn from the RR/BAYC collection in escrow, and from Defendants' clarification that their counterclaims should likewise be stayed pending appeal. *Supra* p. 1.

Finally, Yuga falls back on the assertion that a ten-month delay will give rise to "risk of evidence loss." Opp. 17. But Yuga identifies no reason why this is likely or even possible in the ten months or so in which it is statistically likely that the pending appeal will be resolved. This is not a situation where, as in an example Yuga offers, litigation has "already been pending for two years." *DBD Credit Funding LLC v. Silicon Labs., Inc.*, 2016 WL 6893882, at *13 (N.D. Cal. Nov. 23, 2016). "[I]t is implausible that a one-year delay will cause" witnesses to "become difficult to locate" or "forget their testimony." *Larson*, 2015 WL 3945052, at *8. Moreover, Yuga offers only a boilerplate explanation for why destruction of evidence might matter here (i.e., "over time, memories fade, witnesses become unavailable for innumerable reasons … , the risk of accidental data loss increases, and third parties may delete or destroy relevant information out of ignorance of the pending litigation," Opp. 17). Such a "nebulous contention" is an insufficient ground on which to reject a stay—"just *what* evidence is at risk and *how* it could possibly be lost or destroyed is a mystery." *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014). That is not enough to overcome the substantial benefit to judicial efficiency—and to both parties—that a stay would offer.

## III. CONCLUSION

For the reasons set forth above and in Defendants' motion for a stay, Defendants respectfully request that the Court stay all proceedings before it while Defendants' appeal of this Court's anti-SLAPP decision is pending.

Dated: March 13, 2023

By: /s/  *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on March 13, 2023.

By: /s/  *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document is in compliance with the word limit of L.R. 11-6.1 and the word limit set by the Court's standing order.

By: /s/  *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000