UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., <br><br>     Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> RYDER RIPPS, JEREMY CAHEN, <br><br>     Defendants and Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM <br><br> **[PROPOSED] STATEMENT OF DECISION DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS** <br><br> Date:        March 27, 2023 <br> Time:       1:30 p.m. <br> Courtroom: 7A <br> Judge:      Honorable John F. Walter |

On February 23, 2023, Defendants Ryder Ripps and Jeremy Cahen ("Defendants") filed a Motion to Stay Proceedings ("Motion"). On March 6, 2023, Plaintiff Yuga Labs ("Yuga Labs") filed its Opposition. On March 13, 2023, Defendants filed their Reply. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

**I.      BACKGROUND**

Yuga Labs is the creator of one of the world's most well-known and successful non-fungible token collections, the "Bored Ape Yacht Club" (the "BAYC"). Defendants created their own collection of "RR/BAYC" NFTs using the exact same

images as the BAYC, and which use Yuga Labs' asserted BAYC Marks. On June 24, 2022, Yuga Labs sued Defendants for infringing its alleged BAYC Marks and for false advertising under federal law, for cybersquatting under federal law, and for other state law claims. *See generally* Compl.

On October 3, 2022, Defendants filed an anti-SLAPP motion to strike Yuga Labs' state law causes of action, and motion to dismiss Yuga Labs' federal claims. Dkt. No. 48. In their motion to dismiss, Defendants argued that their use of the BAYC Marks was free speech under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), as well as nominative fair use. Dkt. No. 48. In their anti-SLAPP motion, Defendants likewise argued that their RR/BAYC NFTs are protected speech. *Id.*

After considering the parties' briefing, on December 16, 2022, the Court denied Defendants' motion to dismiss and rejected their *Rogers* and fair use defenses. Dkt. No. 62. The Court also denied Defendants' anti-SLAPP motion, holding Yuga Labs' "claims are limited to Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff." *Id.* "Therefore, the Court concludes that Defendants have failed to make a prima facie showing that Plaintiff's claims 'arise from' an 'act in furtherance of [their] right of petition or free speech." *Id.*

On December 21, 2022, Defendants filed a notice of appeal regarding the Court's ruling on the anti-SLAPP motion. Dkt. No. 63. On that same day, Defendants informed Yuga Labs that they intended to file a motion to stay all proceedings pending resolution of the appeal but subsequently abandoned pursuing a motion to stay at that time. Then, on February 10, 2023, Defendants resurrected their plan, informing Yuga Labs that they again intended to file a motion to stay all proceedings pending resolution of the appeal.[1]

---

[1] While Defendants' opening brief requested that only Yuga Labs' federal claims be stayed, Defendants' clarified, for the first time in their reply brief, that they seek a stay of all proceedings (including both Yuga Labs' federal claims and Defendants' counterclaims).

This case has been proceeding in earnest pursuant to the expedited schedule that Defendants requested, and at the expense of significant time and resources from both parties. Beyond Yuga Labs' claims in its Complaint, Defendants have also filed counterclaims (Dkt. No. 65), which Yuga Labs has moved to strike and dismiss (Dkt. No. 89). Both parties have also actively been engaged in discovery, taking numerous depositions, and raising multiple disputes and motions to compel with the Court. All the while, Defendants continue to promote, market, and profit from their allegedly infringing products, and Yuga Labs allegedly continues to suffer irreparable harm from the resulting consumer confusion.

Accordingly, for the reasons that follow, the Court denies Defendants' Motion to Stay. Any delay in proceeding with the federal claims is unwarranted.

## II. LEGAL STANDARD

California's anti-SLAPP statute "does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). As a result, the appeal of the denial of an anti-SLAPP motion stays only proceedings "regarding the state law claims." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236-WHO, 2016 WL 8607505, at *1 (N.D. Cal. Dec. 22, 2016); *see also Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) ("[A]n appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal.").

Otherwise, an action may only be stayed pending interlocutory appeal by the court's discretion in weighing (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be

expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *Landis v. North Am. Co.*, 299 U.S. 248 (1936)).[2]

## III. DISCUSSION

### A. Defendants Fail to Establish that this Court Should Exercise Its Discretion to Stay the Federal Law Claims.

Acknowledging that the federal claims are not automatically stayed, Defendants ask the Court to exercise its discretion to stay the federal claims under the *Landis* factors. Defendants have not met their burden to establish that those claims should be stayed, and this Court therefore denies Defendants' request.

#### 1. A Stay Will Result in Irreparable Harm to Yuga Labs and the Public.

Yuga Labs and consumers will continue to suffer irreparable harm from a delayed resolution of Yuga Labs' claims. While Defendants contend that they are no longer "minting" RR/BAYC NFTs, Defendants still actively promote their RR/BAYC NFTS, receive royalties from their secondary sales, and leverage this lawsuit to promote and market their sale. *See, e.g.*, Dkt. Nos. 120-39, 120-26, 120-27, 120-28, 120-25.

Consumers will continue to be misled and confused by this conduct. Yuga Labs' survey expert conservatively found a very high confusion rate of 40.4% relating to Defendants' use of the BAYC Marks. *See* Dkt. No. 120-43. Allowing this confusion and deception to continue would harm consumers and the public interest

---

[2] In determining whether to stay an action pending interlocutory appeal, courts typically apply one of two tests under *Landis* or *Nken*. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (outlining four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies"). The Ninth Circuit has not addressed which test applies for a motion to stay proceedings pending an appeal of an anti-SLAPP motion, and California district courts have applied both tests in that circumstance. *See, e.g.*, *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810-HSG, 2018 WL 1989522, at *3 (N.D. Cal. Mar. 5, 2018) (applying *Nken* factors and denying motion to stay). Defendants fail to establish that a discretionary stay is warranted under either test.

aim of trademark law. *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004) ("It is well established that trademark law protects not only the private interests of the trademark owner but also the public's interest in not being confused by the infringing products."); *Internet Specialties West, Inc. v. Ispwest*, No. 05-cv-3296-FMC, 2007 WL 9706068, at *3 (C.D. Cal. May 21, 2007) ("It is clearly in the public interest to avoid confusion and deception as to the origin of products and services in the marketplace.").[3]

Defendants have profited and will continue to profit from royalties they receive from secondary sales of the RR/BAYC NFTs. *See id.* Because these sales are ongoing, Yuga Labs will continue to suffer additional financial harm from any delay in the resolution of its federal claims. Similarly, Yuga Labs continues to suffer harm to its goodwill, reputation, and brand equity. *See* Dkt. No. 120-41. This loss to reputation and goodwill is "irreparable because it is neither easily calculable [] nor easily compensable [.]" *Sprint Solutions, Inc. v. Cell Wholesale, Inc.*, No. SACV 15-878-JLS, 2015 WL 13919095, at *13 (C.D. Cal. Dec. 10, 2015) (citations omitted) (finding plaintiffs sufficiently showed irreparable harm); *see also SMC Promotions, Inc. v. SMC Promotions*, 355 F. Supp. 2d 1127, 1137 (C.D. Cal. 2005) (finding plaintiffs demonstrated that they will suffer irreparable injury and explaining that "[t]he Ninth Circuit has recognized that 'intangible injuries, such as damage to…goodwill, qualify as irreparable harm.'").[4] Defendants initially rejected Yuga Labs' offer to agree to a stay pending appeal if Defendants would agree to stop all marketing, sales, and promotion of the accused products pending a stay and to place

---

[3] In another case against Defendants' co-conspirator, the court issued a consent judgement and permanent injunction, holding that the adoption and use of "the BAYC Marks to promote the [RR/BAYC NFTs and Defendants' websites] . . . have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public" in violation of the Lanham Act. *Yuga Labs, Inc. v. Lehman*, Case No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023) (Dkt. No. 12).

[4] Further, the Trademark Modernization Act of 2020 codified a presumption of irreparable harm on a finding of liability or a likelihood of success on the merits in the case of injunctive relief. 15 U.S.C. § 1116(a).

the funds received by Defendants from the RR/BAYC NFTs in escrow pending the appeal. *See* Dkt. Nos. 106, 120-1. While Defendants, in their reply brief, belatedly offer to agree to place only the royalties from secondary sales into escrow, they did not agree to place all funds received by Defendants into escrow, nor did they agree to stop all marketing, sales, and promotion of the accused products. Accordingly, a stay would continue to subject Yuga Labs to irreparable harm.

Additionally, a stay would undercut the investment of substantial resources that the Court and both parties have expended to proceed with the case schedule that Defendants requested. Discovery closes on April 3, 2023, and trial is to begin on June 27, 2023. Any stay of the federal claims pending resolution of the anti-SLAPP appeal is likely to delay the case for well over a year.[5] That would require the parties to revisit, among other things, discovery, expert reports, and summary judgment motions once the case resumes.

Similarly, the "risk of lost evidence weighs against granting a stay[.]" *Bradberry v. T-Mobile USA, Inc.*, No. 06-cv-6567-CW, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007). A stay would increase the risk of evidence loss, particularly by third parties. Over time, memories fade, witnesses become unavailable for innumerable reasons (e.g. death or disability, relocation, unwillingness to cooperate, etc.), the risk of accidental data loss increases, and third parties may delete or destroy relevant information out of ignorance of the pending litigation. Defendants themselves have struggled to remember important details in this case. *See* Dkt. Nos. 120-36 and 120-37.

A stay of the federal claims now would result in substantial harm and prejudice to Yuga Labs. The first *Landis* factor weighs against a stay of Yuga Labs' federal claims.

---

[5] Currently, the Ninth Circuit is scheduling oral argument in civil appeals six to twelve months from the notice of appeal date. *See* https://www.ca9.uscourts.gov/general/faq/. Decisions are then issued three months to a year after submission. *Id.*

### 2. Defendants Face No Harm Absent a Stay.

Defendants do not meet their burden of establishing any harm to them absent a stay. Indeed, they fail to provide a single declaration or other evidentiary support for their claimed hardships. Instead, Defendants generally complain about having to defend themselves in this lawsuit. However, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." Lockyer, 398 F.3d at 1112.

As an initial matter, Defendants' purported concerns about the spectre of duplicative or unnecessary work assumes a loss after the Ninth Circuit's decision. Moreover, these generalized and logistical concerns, such as the potential for unnecessary trial prep and discovery, are also not legally cognizable harms warranting a stay of all proceedings. See Exeltis, 2018 WL 1989522, at *3 ("[P]articipating in discovery is not a 'harm' at all: it is the routine consequence of the denial of [defendant's] motion to dismiss the Lanham Act claim."); Breazeale v. Victim Servs., Inc., No. 14-cv-05266-VC, 2015 WL 13687730, at *2 (N.D. Cal. Sept. 14, 2015) (calling "questionable" defendant's argument that the "additional expense and inconvenience of duplicative discovery and litigation" was "irreparable injury"). Notably, such claims are at odds with the fact that Defendants have expanded this case and duplicated proceedings with their counterclaims, and they have engaged in extensive written discovery and motion practice. Contrary to Defendants' representations, Defendants appear eager, able, and "looking forward" to going to trial. *See* Dkt. No. 120-25.

Nor are Defendants' alleged concerns that "the costs are likely to fall especially hard on Defendants as individuals" well-taken. Defendants boast about making millions of dollars from their infringing conduct, and they continue to profit from secondary sales as this case proceeds. *See* Dkt. Nos. 120-45, 120-29, 120-30.

Defendants provide no basis for their claim that they would be harmed by proceeding with litigation. Defendants' conclusory arguments fall flat, and the second *Landis* factor weighs against a stay.

### 3. A Stay Would Not Serve the Orderly Course of Justice.

Defendants also do not meet their burden of establishing that it would serve "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110. *First*, Defendants' appeal will not simplify any issues in this case because the appeal is without merit. *Second*, it is unlikely that Defendants' anti-SLAPP appeal will reach any issues that could potentially affect the federal claims, let alone potentially affect any affirmative defenses that could impact the federal claims as a matter of law.

#### a. Defendants' Appeal Is Without Merit.

In denying Defendants' anti-SLAPP motion, this Court held that: "[Yuga Labs'] claims are limited to Defendants' *heavily commercial use* of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff." Dkt. No. 62 at 11 (emphasis added). That holding clearly described what this case is about: *Defendants' heavily commercial conduct*. After reviewing Yuga Labs' allegations in its Complaint, this Court held that the *Rogers* test did not apply, and that Defendants "failed to make a prima facie showing that Plaintiff's claims 'arise from' an 'act in furtherance of [their] right of petition or free speech." *Id.* This is not a case about free speech. There is no reason to delay this case while the decision on the anti-SLAPP motion is pending appeal.

#### b. The Appeal Will Not Resolve Yuga Labs' Federal Claims.

Neither the outcome of the anti-SLAPP appeal nor the result of proceeding with the federal claims would affect one another to warrant a stay. As such, there is no judicial economy saved by staying the federal claims.

1    Because this Court held that Defendants' commercial conduct was not protected speech, the order on the anti-SLAPP motion did not address the second prong of anti-SLAPP.  Dkt. No. 62.  Similarly, in reviewing that order, the Ninth Circuit does not need to reach the second prong of the anti-SLAPP analysis.  Thus, the Ninth Circuit does not need to rule on any issues that could potentially affect the federal claims, let alone any affirmative defenses.  See Anheuser-Busch Cos. v. Clark, 622 F. App'x 671 (9th Cir. 2015) (after ruling on first step of anti-SLAPP motion, "remand[ing] so that the district court may consider in the first instance whether [plaintiff] 'has established that there is a probability that it will prevail on the claim.'").

Even if the Ninth Circuit finds Defendants' conduct constitutes protected speech under the first prong *and* also decides to analyze the second prong of the anti-SLAPP analysis as to the state law claims, that would still not be decisive of the federal claims. See Breazeale, 2015 WL 13687730, at *1 ("even if the Ninth Circuit reverses this Court's denial of the defendants' anti-SLAPP motion as to the plaintiffs' state law claims, the plaintiffs' [federal] claim will necessarily survive").  Defendants do not dispute this.  Dkt. No. 137 at 2, 4 (arguing only that the Ninth Circuit's decision is "*likely* to make this case far 'easier to decide,'" "*likely* to bear on the Rogers inquiry," or "*at least* bear substantially on [the federal claims]") (emphasis added).

Similarly, there is no risk that proceeding with Yuga Labs' federal claims would moot the anti-SLAPP appeal on state law issues.  Any determination of the *Rogers* and nominative fair use defenses as to the federal claims will not be dispositive of the Ninth Circuit's anti-SLAPP analysis as to the state law claims.  See Makaeff v. Trump Univ., LLC, No. 10-CV-940-IEG, 2011 WL 613571, at *3 (S.D. Cal. Feb. 11, 2011) (denying motion for stay and holding that "no potential resolution of Plaintiffs' claims can render the entire appeal moot").

Moreover, Yuga Labs' federal claims are not about the issues on appeal— protected free speech.  For example, Yuga Labs' false advertising claim arises out of Defendants' false statements made for commercial purposes to further market and

promote the RR/BAYC NFTs. Yuga Labs' false designation of origin claim similarly arises out "Defendants' *heavily commercial use* of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff." Dkt. No. 62 at 11 (emphasis added). Likewise, Yuga Labs' cybersquatting claim arises out of Defendants' use of the BAYC Marks to register domains (rrbayc.com and apemarket.com) used to sell and promote the RR/BAYC NFTs. Consistent with this Court's prior holdings, there is no protected speech surrounding these commercial activities.

The orderly course of justice is not served by pausing Yuga Labs' federal claims, and the third *Landis* factor also favors denial of a stay.

In summary, all three *Landis* factors weigh against a stay of the federal claims while Defendants' appeal is resolved by the Ninth Circuit. A stay is not warranted, particularly at this advanced stage of the case.

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion to Stay Proceedings.

**IT IS SO ORDERED.**

Dated: _____

Honorable John F. Walter
United States District Court Judge