ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff and Counterclaim Defendant, | **PLAINTIFF YUGA LABS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | Date: April 17, 2023 |
| RYDER RIPPS, JEREMY CAHEN, | Time: 1:30 p.m. |
| Defendants and Counterclaim Plaintiffs. | Courtroom: 7A |
| | Judge: Honorable John F. Walter |
| | Trial Date: June 27, 2023 |

1 │ MELISSA L. LAWTON (CSB No. 225452)
    │ mlawton@fenwick.com
2 │ FENWICK & WEST LLP
    │ 228 Santa Monica Boulevard
3 │ Santa Monica, CA  90401
    │ Telephone:   310.434.4300
4 │
5 │ DAVID Y. SILLERS (*admitted pro hac vice*)
    │ david@clarelocke.com
6 │ KATHRYN HUMPHREY (*admitted pro hac vice*)
    │ kathryn@clarelocke.com
7 │ MEGAN L. MEIER (*admitted pro hac vice*)
    │ megan@clarelocke.com
8 │ CLARE LOCKE LLP
    │ 10 Prince Street
9 │ Alexandria, VA  22314
    │ Telephone:   202.628.7400
10 │
11 │ Attorneys for Plaintiff and
    │ Counterclaim Defendant
12 │ YUGA LABS, INC.
13 │
14 │
15 │
16 │
17 │
18 │
19 │
20 │
21 │
22 │
23 │
24 │
25 │
26 │
27 │
28 │

Fenwick & West LLP
Attorneys at Law

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 17, 2023, at 1:30 p.m., or as soon thereafter as this matter may be heard, before the Honorable John F. Walter in Courtroom 7A of this Court, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiff and Counterclaim Defendant Yuga Labs, Inc. ("Yuga Labs") hereby moves this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary adjudication in Yuga Labs' favor on its First Cause of Action for False Designation of Origin under 15 U.S.C. § 1125(a) that (1) it owns the BAYC Marks, which are valid and enforceable, (2) Defendants used the BAYC Marks to sell RR/BAYC NFTs, without the consent of Yuga Labs, in a manner that is likely to cause confusion; (3) Yuga Labs is entitled to damages and injunctive relief; and (4) this is an exceptional case.

Pursuant to Federal Rule of Civil Procedure 56, Yuga Labs also moves for an order granting summary judgment or, in the alternative, summary adjudication of a part of each claim or defense, in Yuga Labs' favor on its Third Cause of Action for Cybersquatting under 15 U.S.C. § 1125(D); against Defendants on their Second (First Amendment), Third (Fair Use), and Seventh (Unclean Hands) Affirmative Defenses; and against Defendants on their First Counterclaim (Knowing Misrepresentation of Infringing Activity).

Yuba Labs bases the motion on this notice and motion, the accompanying memorandum of points and authorities, the accompanying statement of uncontroverted facts and conclusions of law, the supporting declarations and exhibits that accompany the motion, all other pleadings and papers on file in this action, any matter of which this Court may take judicial notice, and any other evidence and materials as Yuga Labs may present to the Court before or during the hearing.

/ / /

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    This motion is made following the telephone conference of counsel pursuant

2  to L.R. 7-3, which took place on March 8, 2023 (ECF 139).

3

4  Dated: March 15, 2023              FENWICK & WEST LLP

5

6                                     By:  /s/ Eric Ball
                                          Eric Ball
7                                     Attorneys for Plaintiff and
                                      Counterclaim Defendant
8                                     YUGA LABS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

    A.  FACTUAL BACKGROUND ................................................................ 1

    B.  OVERVIEW OF ARGUMENTS ......................................................... 2

II.  ARGUMENT ................................................................................................ 3

    A.  YUGA LABS IS ENTITLED TO SUMMARY JUDGMENT ON ITS TRADEMARK INFRINGEMENT CLAIM ................................... 3

        1.  Yuga Labs owns the BAYC Marks, which are valid and protectable ...................................................................................... 3

        2.  Defendants used the BAYC Marks to sell RR/BAYC NFTs, without the consent of Yuga Labs, in a manner that is likely to cause (and has caused) confusion. ............................ 4

            a.  The BAYC Marks are Strong. .............................................. 5

            b.  Defendants are selling the same product—NFTs. .............. 6

            c.  Defendants sold identical NFTs using identical marks. ............................................................................... 6

            d.  Consumers were actually confused. ................................... 8

            e.  Defendants intentionally used the BAYC Marks. ............. 10

            f.  Defendants used the exact same marketing channels. ...... 10

            g.  Authenticating NFTs is complex, and Defendants understood reasonable consumers could be confused. ...... 11

            h.  Defendants are direct competitors in the NFT market. ................................................................................ 12

            i.  Other Relevant Factors ..................................................... 12

        3.  Yuga Labs is Entitled to Monetary and Injunctive Relief .......... 13

    B.  YUGA LABS IS ENTITLED TO SUMMARY JUDGMENT ON ITS ACPA CLAIM ............................................................................ 13

    C.  RR/BAYC NFTS ARE NOT ARTISTIC EXPRESSION AND A *ROGERS* DEFENSE IS NOT AVAILABLE TO DEFENDANTS. ..... 16

    D.  DEFENDANTS' NOMINATIVE FAIR USE DEFENSE IS NOT VIABLE. ............................................................................................ 18

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

<div align="center">

**TABLE OF CONTENTS**
**(Continued)**

</div>

2

Page

3

E.    DEFENDANTS' UNCLEAN HANDS DEFENSE IS NOT
VIABLE. ............................................................................................ 19

4

5

F.    YUGA LABS IS ENTITLED TO SUMMARY JUDGMENT ON
DEFENDANTS' 17 U.S.C. § 512(F) COUNTERCLAIM. .................. 21

6

III.    CONCLUSION ............................................................................................. 22

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*2Die4Kourt v. Hillair Cap. Mgmt., LLC*,
  No. SACV1601304JVSDFMX, 2016 WL 4487895 (C.D. Cal. Aug. 23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017) ..................................................... 20

*ACI Int'l. Inc. v. Adidas-Salomon AG*,
  359 F.Supp.2d 918 (C.D. Cal. 2005) ....................................................... 8

*Adray v. Adry-Mart, Inc.*,
  76 F.3d 984 (9th Cir. 1995) ..................................................... 13

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ..................................................... 4, 12

*Brookfield Commc'ns v. West Coast Ent.*,
  174 F.3d 1036 (9th Cir. 1999) ..................................................... 7, 10, 11

*Brother Recs., Inc. v. Jardine*,
  318 F.3d 900 (9th Cir. 2003) ..................................................... 19

*CG Roxane LLC v. Fiji Water Co. LLC*,
  569 F.Supp.2d 1019 (N.D. Cal. 2008) ..................................................... 4

*Chanel, Inc. v. Hsiao Yin Fu*,
  No. 16-cv-02259, 2017 WL 1079544 (N.D. Cal. Mar. 22, 2017) ......................... 11

*City of Carlsbad v. Shah*,
  850 F.Supp.2d 1087 (S.D. Cal. 2012) ..................................................... 16

*Credit One Corp. v. Credit One Financial, Inc.*,
  661 F.Supp.2d 1134 (C.D. Cal. 2009) ..................................................... 3

*DISC Intellectual Props. LLC v. Delman*,
  No. CV 07-5306 PA, 2007 WL 4973849 (C.D. Cal. Sept. 17, 2007) .................. 14

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
  142 F.3d 1127 (9th Cir. 1998) ..................................................... 5

*DSPT Int'l, Inc. v. Nahum*,
  624 F.3d 1213 (9th Cir. 2010) ..................................................... 13, 14

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008) ..................................................... 18

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) ..................................................... 20

FENWICK & WEST LLP
ATTORNEYS AT LAW

<div align="center">

**TABLE OF AUTHORITIES**
(Continued)

</div>

**Page**

*Givenchy S.A. v. BCBG Max Azria Grp., Inc.*,
No. CV 10-8394, 2012 WL 3072327 (C.D. Cal. Apr. 25, 2012) ........................ 11

*GoPets Ltd. v. Hise*,,
657 F.3d 1024 (9th Cir. 2011) ................................................................. 15

*Gordon v. Drape Creative, Inc.*,
909 F.3d 257 (9th Cir. 2018) ............................................................. 16, 17

*GoTo.com v. The Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000) .............................................................. 5, 7

*Haas Automation, Inc. v. Denny*,
No. 2:12-CV-04779 CBM, 2013 WL 6502876 (C.D. Cal. Dec. 4, 2013) ............ 14

*Halicki Films, LLC v. Sanderson Sales & Marketing*,
547 F.3d 1213 (9th Cir. 2008) ................................................................. 3

*Hermes Int'l v. Rothschild*,
No. 22-CV-384 (JSR), 2023 WL 1458126 (S.D.N.Y. Feb. 2, 2023) ..................... 6

*Intamin, Ltd. v. Magnetar Techs. Corp.*,
623 F.Supp.2d 1055 (C.D. Cal. 2009),
*aff'd*, 404 F. App'x 496 (Fed. Cir. 2010) .................................................. 19

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*,
559 F.3d 985 (9th Cir. 2009) ................................................................... 5

*Interstellar Starship Servs., Ltd. v. Epix Inc.*,
184 F.3d 1107 (9th Cir. 1999) ................................................................. 8

*ISE Ent. Corp. v. Longarzo*,
No. CV 17-9132, 2018 WL 11346736 (C.D. Cal. Dec. 11, 2018) ...................... 22

*Japan Telecom. Inc. v. Japan Telecom Am., Inc.*,
287 F.3d 866 (9th Cir. 2002) ................................................................. 20

*Kaiser Trading Co. v. Assoc. Metals & Mins.*,
321 F.Supp. 923 (N.D. Cal. 1970) ........................................................... 20

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
150 F.3d 1042 (9th Cir. 1998) ................................................................. 4

*La Quinta Worldwide v. Q.R.T.M.*,
762 F.3d 867 (9th Cir. 2014) ................................................................... 5

*Lahoti v. VeriCheck, Inc.*,
586 F.3d 1190 (9th Cir. 2009) ............................................................... 16

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
### (Continued)

Page

*Transgo Inc. v. Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985)................................................................4

*Matal v. Tam*,
582 U.S. 218 (2017) .............................................................................3

*Monster Energy Co. v. BeastUp LLC*,
395 F.Supp.3d 1334 (E.D. Cal. 2019)....................................................6

*Monster Energy Co. v. Integrated Supply Network, LLC*,
533 F.Supp.3d 928 (C.D. Cal. 2021)......................................................13

*Monster, Inc. v. Dolby Lab. Licensing Corp.*,
920 F.Supp.2d 1066 (N.D. Cal. 2013)....................................................12

*Moonbug Ent. Limited v. Babybus (Fujian) Network Technology Co. Ltd.*,
No. 21-CV-06536, 2022 WL 580788 (N.D. Cal. Feb. 25, 2022) ........................21

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011)................................................................12

*New Kids on the Block v. News Am. Pub., Inc.*,
971 F.2d 302 (9th Cir. 1992)............................................................18, 19

*Phillip Morris USA Inc. v. Shalabi*,
352 F.Supp.2d 1067 (C.D. Cal. 2004)....................................................13

*Playboy Enters. v. Netscape Comm'cns Corp.*,
354 F.3d 1020 (9th Cir. 2004)................................................................8

*Playmakers, LLC v. ESPN, Inc.*,
297 F.Supp.2d 1277 (W.D. Wash. 2003),
*aff'd*, 376 F.3d 894 (9th Cir. 2004) ......................................................5

*Rearden LLC v. Rearden Commerce, Inc.*,
683 F.3d 1190 (9th Cir. 2012)............................................................2, 3

*Rebelution, LLC v. Perez*,
732 F.Supp.2d 883 (N.D. Cal. 2010)......................................................10

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989)........................................................2, 16, 17, 18

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
391 F.3d 1000 (9th Cir. 2004)................................................................21

*S. Cal. Darts Ass'n v. Zaffina*,
762 F.3d 921 (9th Cir. 2014)................................................................20

FENWICK & WEST LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Super-Krete Intl Inc. v. Sadleir,*
   712 F.Supp.2d 1023 (C.D. Cal. 2010) ........................................................ 14, 15, 16

*Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator,*
   392 F.3d 248 (7th Cir. 2004) ................................................................................. 13

*Toyota Motor Sales, U.S.A., Inc. v. Tabari,*
   610 F.3d 1171 (9th Cir. 2010) ......................................................................... 18, 19

*Twelve Inches Around Corp v. Cisco Systems Inc.,*
   No. 08 Civ. 6896(WHP), 2009 WL 928077 (S.D.N.Y. March 12, 2009) ........... 22

*United Artists Corp. v. United Artist Studios LLC,*
   No. CV 19-828 MWF-MAA, 2020 WL 4369778 (C.D. Cal. July 7, 2020) ......... 15

*Warner Bros. Ent. v. Global Asylum, Inc.,*
   No. CV 12–9547 PSG, 2012 WL 6951315 (C.D. Cal. 2012) .............................. 13

*Wecosign, Inc. v. IFG Holdings, Inc.,*
   845 F.Supp.2d 1072 (C.D. Cal. 2012) .................................................................. 16

**STATUTES AND RULES**

15 U.S.C. §1116(a) ........................................................................................................ 13

15 U.S.C. §1117 ............................................................................................................. 13

15 U.S.C. §1117(d) ........................................................................................................ 16

15 U.S.C. §1125(d)(1)(A) .............................................................................................. 13

15 U.S.C. §1125(d)(1)(B) .............................................................................................. 15

17 U.S.C. §512(c)(3)(iii) ............................................................................................... 22

17 U.S.C. § 512(f) ............................................................................................... 3, 21, 22

Anti-cybersquatting Consumer Protection Act ......................................... 2, 13, 14, 16

Federal Rule of Civil Procedure 56 ................................................................................ 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is clear and incontrovertible:  Defendants admit they used Yuga Labs' trademarks to sell identical-looking NFTs in the exact same markets that Yuga Labs' Bored Ape Yacht Club ("BAYC") NFTs are sold.  Moreover, the record contains volumes of evidence that Defendants' infringement of the BAYC Marks[1] resulted in undisputed confusion, harming Yuga Labs' BAYC brand and the goodwill Yuga Labs has built in it through great effort and expense.  In the face of this overwhelming evidence that their NFT scam is blatant trademark infringement, Defendants resort to flimsy defenses and counterclaims, such as claiming that their intentionally competing NFTs are "art" or that Yuga Labs' efforts to protect its brand were improper.  These arguments are meritless, and the Court should grant summary judgment in Yuga Labs' favor on the issues raised in this motion.

### A.    Factual Background

Yuga Labs is the creator behind one of the world's most well-known and successful NFT collections, known as the Bored Ape Yacht Club.  Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶¶1, 13.  Only 10,000 unique BAYC NFTs exist, and they are among the most sought after NFTs.  *Id.*¶¶3, 9-10, 13.  In response to BAYC's popularity, Defendants launched a business venture to scam consumers into purchasing their "RR/BAYC" NFTs (the "Scam NFTs") by using the very same trademarks that Yuga Labs uses to identify the company and market the BAYC brand.  *Infra* II.A.2.c.  Defendants explicitly and intentionally mislead consumers into thinking that Scam NFTs are affiliated, sponsored, or associated with Yuga Labs.  SUF¶¶22-26, 69-75.  They also use the BAYC Marks to promote their coming "Ape Market" NFT marketplace, thus

---

[1] For purposes of this motion, the BAYC Marks are BORED APE YACHT CLUB, BAYC, BORED APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo.

FENWICK & WEST LLP
ATTORNEYS AT LAW

further suggesting affiliation, sponsorship, or association with Yuga Labs.  *Id.*¶¶30, 40, 44-46, 72.  Defendants' communications, and the admissions of one of their co-conspirators, show that the purpose of promoting and selling Scam NFTs was to profit off of Yuga Labs' BAYC brand, and that Defendants knew that some consumers would be confused into thinking they were purchasing an authentic BAYC NFT.  *Infra* II.A.2.d.  Defendants are running a ***SCAM*** (***S**ame **C**onsumers, **A**rt, **M**arks/**M**arketplace)*—based on theft and deception—to make ***money***.

### B.    Overview of Arguments

Yuga Labs' trademark infringement claims are undisputed:  the BAYC Marks are valid and protectable and Defendants' use of them is likely to cause confusion and has, in fact, already caused confusion.  *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012).  The BAYC Marks are conceptually and commercially strong and Yuga Labs' use of them over the past several years has built significant goodwill around them.  Defendants' use of the BAYC Marks to sell the same underlying product (NFTs), using the same underlying images as authentic BAYC NFTs ("BAYC Images"), marketing them with the same NFT IDs ("Ape IDs"), and selling them in the same NFT marketplaces resulted in actual confusion.  Indeed, Yuga Labs' survey expert found a staggering 40.4% confusion rate.  Defendants' textbook trademark infringement has caused millions of dollars of harm to Yuga Labs in this exceptional case.

Yuga Labs' claim under the Anti-cybersquatting Consumer Protection Act is similarly undisputed and ripe for summary judgment:  Defendants registered, and use, in bad faith to further their scam, infringing domain names–rrbayc.com and apemarket.com.

Defendants' defenses to Yuga Labs' claims are unavailing.  The undisputed evidence is overwhelming that the Scam NFTs are devoid of any artistic expression and Defendants' commercial use of the BAYC Marks was explicitly misleading, making any *Rogers* defense inapplicable.  Defendants' nominative fair use defense

FENWICK & WEST LLP
ATTORNEYS AT LAW

similarly fails—Defendants were not using the BAYC Marks to refer to BAYC

NFTs; they were using the BAYC Marks to refer to their Scam NFTs.  Defendants

have no evidence to support their unclean hands defense.  And Defendants' 17

U.S.C. § 512(f) counterclaim fails because Yuga Labs made no misrepresentation

of a copyright that led to a takedown on that basis.

For the reasons set forth below, the Court should grant summary judgment on

these issues in favor of Yuga Labs.

## II.  ARGUMENT

### A.  Yuga Labs is Entitled to Summary Judgment on Its Trademark Infringement Claim

Yuga Labs owns the BAYC Marks, which are valid and protectable,

SUF¶¶81, 122-123, and Defendants' admitted use of these marks without

permission is likely to cause (and has caused) confusion, *id.*¶124.  Accordingly,

Yuga Labs has proven Defendants' trademark infringement.  *See Credit One Corp.
v. Credit One Financial, Inc.*, 661 F.Supp.2d 1134, 1137 (C.D. Cal. 2009); *Rearden
LLC*, 683 F.3d at 1202.[2]

#### 1.  Yuga Labs owns the BAYC Marks, which are valid and protectable.

Yuga Labs owns the BAYC Marks.  "[A]n unregistered trademark can be

enforced against would-be infringers . . ." *Matal v. Tam*, 582 U.S. 218, 225 (2017).

"It is axiomatic in trademark law that the standard test of ownership is priority of

use. . . ." *Halicki Films v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir.
2008).  Yuga Labs started using the BAYC Marks long before Defendants began

their infringement.  *Compare* SUF¶¶4, 6 *with* ¶24.  Since Yuga Labs' first use in

April 2021, the BAYC brand has been the cornerstone of its business.  *Id.*¶¶2, 8-14.

Indeed, Defendants admit that the BAYC Marks identify Yuga Labs.  *Id.*¶70.

---

[2]  Yuga Labs seeks summary judgment on its trademark infringement claim, but
reserves the issue of the exact amount of damages to which it is entitled for trial.

FENWICK & WEST LLP
ATTORNEYS AT LAW

The BAYC Marks are valid and protectable.  "To be protected under § 2, a mark must be capable of distinguishing the applicant's goods from the goods of others.  In other words, the mark must be distinctive." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998) (cleaned up). The BAYC Marks are "inherently distinctive" "because their intrinsic nature serves to identify a particular source of a product," and thus they are neither generic nor descriptive. *Id.*; SUF¶¶7, 16-21.  Likewise, the BAYC Marks do not "communicate[] about a product without requiring any imagination on the consumer's part." *CG Roxane v. Fiji Water*, 569 F.Supp.2d 1019, 1030 (N.D. Cal. 2008).  The concepts of a "Bored Ape Yacht Club," "BAYC," an ape skull, or even an ape itself, do not evoke an NFT collection or the products and services related to it.

Even if the BAYC Marks were descriptive, they acquired a secondary meaning because "the public comes to associate the mark with a specific source"—Yuga Labs' products. *Kendall-Jackson Winery*, 150 F.3d at 1047; SUF¶¶8-15, 81, 86.  And Yuga Labs has spent tens of millions of dollars to associate these marks with its products.  SUF¶11.  Yuga Labs' priority of use and goodwill in the BAYC Marks, built through great expense and effort, proves its ownership of these marks. *Id.*¶1-21, 81.  Indeed, it is the well-known connection between the BAYC Marks and Yuga Labs that Defendants intentionally infringed to ride Yuga Labs' coattails and run their for-profit SCAM: selling their Scam NFTs to the **S**ame **C**onsumers with the same **A**rt using the same **M**arks in the same **M**arketplaces. *Transgo v. Transmission Parts*, 768 F.2d 1001, 1016 (9th Cir. 1985) ("Proof of exact copying, without any opposing proof, can be sufficient to establish a secondary meaning."); SUF¶¶25-27, 31-32.

**2.   Defendants used the BAYC Marks to sell RR/BAYC NFTs, without the consent of Yuga Labs, in a manner that is likely to cause (and has caused) confusion.**

In *AMF v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), the Ninth

Circuit identified eight non-exclusive factors that should be considered in determining whether there is a likelihood of confusion and infringement (see subheadings below).  In cases involving claims of trademark infringement on the Internet, the Ninth Circuit has affirmed the "internet troika"—(i) similarity of marks; (ii) relatedness of services; and (iii) simultaneous use of the Internet as a marketing channel—are of greater importance.  *Internet Specialties West v. Milon-DiGiorgio Enters.*, 559 F.3d 985, 989 (9th Cir. 2009).  Defendants' explicitly misleading use of the BAYC Marks evidences that a "reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks."  *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)* (cleaned up).  All relevant factors permit only one conclusion—that Yuga Labs has proven a likelihood of confusion based on the undisputed facts.  SUF¶124.

### a.    The BAYC Marks are Strong.

Courts evaluate a trademark's "strength" in terms of its (1) conceptual strength (the distinctiveness of the mark), and (2) commercial strength (the strength the mark acquires through use in the marketplace).  *GoTo.com v. The Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000); *La Quinta Worldwide v. Q.R.T.M.*, 762 F.3d 867, 874-875 (9th Cir. 2014).*  The BAYC Marks are both conceptually and commercially strong.  Conceptually, the BAYC Marks are arbitrary designations for the NFT-related products Yuga Labs offers.  *See, supra* at II.A.1.  Thus, the BAYC Marks are afforded some of the broadest protections.  *See Dreamwerks*, 142 F.3d at 1130.

Likewise, the marks are commercially strong, as evidenced by the length and manner of use of the marks, the amount of advertising, and the volume of sales. *Playmakers v. ESPN*, 297 F.Supp.2d 1277, 1281 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004).*  The NFT market is relatively new, but Yuga Labs has prominently used its BAYC Marks since April 2021.  SUF¶¶2, 4.  Moreover, Yuga

Labs' BAYC NFT collection is consistently one of the top-selling and highest-valued NFT collections. *Id.*¶¶9-10. And Yuga Labs has used its BAYC Marks to brand this success in connection with Yuga Labs' website, events, social media pages, marketing, partnerships, products, and services. *Id.*¶¶6, 11-15. As a result of its advertising, promotion, and use of these marks, Yuga Labs has developed recognition for its goods and services under the BAYC Marks and has acquired and enjoys significant goodwill for the BAYC Marks. *Id.*¶¶8-10, 13. It is this success and goodwill that Defendants have glommed onto to execute their business venture. This factor weighs in favor of finding a likelihood of confusion.

### b. Defendants are selling the same product—NFTs.

Defendants concede that the parties are selling the exact same product—NFTs that point to Yuga Labs' underlying BAYC Images. SUF¶¶22-23. When the products are identical, as here, courts find this factor weighs in favor of infringement. *See Monster Energy v. BeastUp*, 395 F.Supp.3d 1334, 1354 (E.D. Cal. 2019). Defendants even marketed each Scam NFT using the same corresponding BAYC Ape ID number used by Yuga Labs for legitimate BAYC NFTs (e.g., BAYC #1 is also RR/BAYC #1 even though that Scam NFT was not the first one minted off of the smart contract). SUF¶¶36-37. And some consumers ordered their Scam NFT by selecting a BAYC NFT Ape ID number. *Id.* This is all part of their business scheme to trick consumers into buying their knockoff goods. *See Hermes v. Rothschild*, 2023 WL 1458126, at *5 (S.D.N.Y. Feb. 2, 2023) ("Individuals do not purchase NFTs to own a 'digital deed' divorced from any other asset: they buy them precisely so that they can exclusively own the content associated with the NFT."). The goods that Defendants offer are not just close to what Yuga Labs offers, they are identical and competitive by design, favoring a finding of likelihood of confusion.

### c. Defendants sold identical NFTs using identical marks.

Similarity of the marks is "a critical question in the likelihood-of-confusion

FENWICK & WEST LLP
ATTORNEYS AT LAW

analysis. . . . [T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com*, 202 F.3d at 1205-1206. Here too, Defendants admit that they used identical marks to sell their identical-looking NFTs. SUF¶¶31, 69-70. This alone is enough to find likelihood of confusion. *Brookfield Commc'ns v. West Coast Ent.*, 174 F.3d 1036, 1056 (9th Cir. 1999).

Defendants' frequent use of the BAYC Marks to "prominently and boldly" market their Scam NFTs constitutes "explicitly misleading" commercial activity. Order on Motion to Strike/Dismiss (ECF 62) at 6-7. For example, Defendants' NFT contract name and symbol, as shown in the Etherscan token tracker, are exact copies of Yuga Labs' Bored Ape Yacht Club and BAYC Marks, "without any expressive content" added. *Id.*; SUF¶¶25-28. Ripps was responsible for entering the infringing name and symbol into the smart contract for the Scam NFTs. SUF ¶¶25-28. Likewise, "Defendants' NFT marketplace sales and Ape Market website contain no 'artistic expression or critical commentary." ECF 62 at 6-7; SUF¶¶31-35, 39, 42, 46, 84, 87. Ripps also omitted his name from the smart contract for his Scam NFTs. SUF¶25-28. And Defendants' Scam NFTs point to Yuga Labs' BAYC Images that contain exact copies of the BAYC Marks depicted on, e.g., an Ape's hat or t-shirt. *Id.*¶¶22, 23. If these misleading labels were not enough, Defendants even sold the Scam NFTs on Foundation alongside the display of unmodified versions of the BAYC Marks. *Id.*¶¶31-32, 87.

That Defendants *only sometimes* made a minor change to the marks, such as by simply tacking on "RR" before "BAYC," does not preclude a finding of infringement. *See* J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:20 (5th ed. 2018) ("To find trademark infringement only by exact identity and not where the junior user makes some slight modification would 'be in effect to reward the cunning infringer and punish only the bumbling one.'"). For example, although Defendants' OpenSea sales page added "RR" before BAYC this modification still resulted in at least a 20% net confusion rate. *See* SUF¶¶33-34,

FENWICK & WEST LLP
ATTORNEYS AT LAW

48.  Moreover, consumers do not necessarily know what "RR" means and could reasonably assume it is a new product or co-branding, which Yuga Labs has done in the past.  *Id.*¶14.  And in his marketing of the NFT collection, Ripps sometimes referred to the RR/BAYC NFTs as "Bored Ape Yacht Club V3," leading to confusion.  *Id.*¶¶38, 49.  Defendants' persistent use of Yuga Labs' BAYC Marks has only one plausible purpose and effect:  to profit from Yuga Labs' goodwill by confusing consumers.  This factor weighs in favor of finding a likelihood of confusion.

### d.    Consumers were actually confused.

"[A] showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion."  *Playboy v. Netscape Comm'cns*, 354 F.3d 1020, 1026 (9th Cir. 2004).  The record is replete with examples of actual, initial interest, and post-sale confusion.  *See Interstellar Starship Servs. v. Epix*, 184 F.3d 1107, 1110 (9th Cir. 1999); *ACI Int'l. v. Adidas-Salomon*, 359 F.Supp.2d 918, 921 (C.D. Cal. 2005).  Examples of consumer confusion on Twitter include:

- A Twitter account that tracks blockchain transactions mistakenly reported that a BAYC NFT was purchased for a low price of 5.99 ETH, when it was actually a Scam NFT.  SUF¶51.

- Consumers were also confused when Ripps used a Scam NFT as his profile picture on Twitter.  For example, one consumer, in response to Ripps' criticism of Yuga Labs, said "your profile pic is a BAYC, so I'm a bit confused here" and another said, "You have a bayc pfp though."  *Id.*¶52.

- One consumer stated that they are "so confused" by a Scam NFT, since "although it says 'bored ape'" it is "not real."  *Id.*¶53.

- A Twitter user responded to a post by Ripps on his Twitter account stating: "i bought an rr bayc because i thought it was made by yuga."  *Id.*¶54.

- Referring to a Scam NFT, a consumer said that they "just bought BAYC

FENWICK & WEST LLP
ATTORNEYS AT LAW

#4255 but now [is] thinking that it could be fake?" *Id.*¶55.

Media outlets that report on NFTs were also confused by Ripps' use of the BAYC Marks.  For example, Bloomberg mistakenly referenced Ripps' Scam NFT collection as "Bored Ape Yacht Club V3" in a list of "Top NFT Collections" during a Bloomberg Crypto segment on June 21, 2022.  *Id.*¶49; *see also id.*¶50.  Even Defendants and their associates were confused by Scam NFTs.  For example, when asked to identify Defendants' Foundation sales page that displayed and sold the Scam NFTs, Defendants' software developer, Ryan Hickman, initially stated that it "Looks to be Bored Ape Yacht Club."  *Id.*¶57.  And in a Twitter exchange where Cahen was criticized for his Tweet mocking Queen Elizabeth II's death, Cahen mistakenly referred to the critic's profile picture as a BAYC "racist monkey pfp." The critic corrected him that it was a Scam NFT.  *Id.*¶56.

Defendants were aware of how confusing the Scam NFTs were.  Defendants' software developer Tom Lehman testified that he believed "purchasers of RR/BAYC NFTs on Foundation.app might think they were buying authentic BAYC NFTs if they did not conduct further research."  *Id.*¶58.  In a text exchange between Lehman and a third party regarding the Scam NFTs, the third party stated "This is quite crazy definitely some people will buy thinking they are buying originals!"  *Id.*¶59.  Lehman also "repeatedly shared" his concern with Defendants that "using the 'BAYC' mark alongside the RR/BAYC NFTs could be confusing on Ape Market," and that they "should not under-estimate" this confusion.  *Id.*¶60.  He also stated "a normal person could be like 'I see where Yuga is coming from, it's confusing how close your logo is to theirs.'"  *Id.*¶61.  Ripps himself said that when others used the RR/BAYC name (just as he used the BAYC Marks), it caused "confusion."  *Id.*¶62.

Yuga Labs' survey found net confusion among consumers of 40.4%.  *Id.*¶47.  Confusion evidence this high is evidence of a substantial likelihood of confusion. *Id.*; *infra* at II.A.2.i.

FENWICK & WEST LLP
ATTORNEYS AT LAW

### e. Defendants intentionally used the BAYC Marks.

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Brookfield*, 174 F.3d at 1059. Defendants knowingly and intentionally used the BAYC Marks with the purpose of harming Yuga Labs and maximizing their profits. SUF¶¶ 69-75. Defendants admit that they intentionally used the BAYC Marks to promote their Scam NFTs. *Id.*¶69.

Defendants intentionally designed their Scam NFTs and sales websites to resemble Yuga Labs' branding as much as possible to confuse consumers and harm Yuga Labs. *Supra* at II.A.2.b. and c. For example, Defendants listed Scam NFTs on rrbayc.com using the very same Ape IDs associated with BAYC NFTs. SUF¶37. While they discussed listing both the RR/BAYC mint number and the BAYC mint number, they chose not to, which intentionally obfuscated one way to distinguish their Scam NFTs and BAYC NFTs. *Id.* They also sought to mimic Yuga Labs' marketing style for BAYC NFTs when advertising their Ape Market platform, which would sell BAYC NFTs alongside Scam NFTs. *Id.*¶72. This factor weighs in favor of finding a likelihood of confusion.

### f. Defendants used the exact same marketing channels.

When an alleged infringer uses the same marketing channels to sell their infringing products, courts find this factor weighs in favor of a finding of likelihood of confusion. *See Rebelution v. Perez*, 732 F.Supp.2d 883, 896-897 (N.D. Cal. 2010). Defendants promoted their knockoff NFTs through the exact same online NFT marketplaces (e.g., OpenSea and x2y2) that Yuga Labs promoted its BAYC NFTs. SUF¶39.

Defendants primarily promoted their NFTs on Twitter, where Yuga Labs also promotes its products. *Id.*¶¶40-41. Defendants even targeted BAYC holders by creating a marketplace where they could trade their BAYC NFTs with zero fees. *Id.*¶¶42-46. This factor favors finding a likelihood of confusion.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

### g.   Authenticating NFTs is complex, and Defendants understood reasonable consumers could be confused.

3    Likelihood of confusion is determined on the basis of a "reasonably prudent

4  consumer." *Brookfield*, 174 F.3d at 1060.  While the price of goods can affect a

5  consumer's degree of care in their purchasing, "confusion may often be likely even

6  in the case of expensive goods sold to discerning customers." *Id.*  Even with the

7  high price tag of some NFTs, confusion was likely given the level of Defendants'

8  deception.  Defendants themselves acknowledge that reading the blockchain is not

9  simple.  For example, in response to a question asking "[w]hat is the name of the

10  token for the RR BAYC NFTs," Cahen responded: "I take for granted a lot of this

11  stuff is very technical." SUF¶63.  Therefore, it can be challenging for consumers to

12  establish provenance for NFTs.  *Id.*¶64.

13    Yet, despite the required background research, in private chat conversations

14  discussing the development of Ape Market, Cahen stated "these users are too

15  unsophisticated by far." *Id.*¶65.  Lehman stated that use of Defendants' logo

16  alongside Yuga Labs' logo on the Ape Market website would be "too confusing to

17  the 'average joe'" and Cahen agreed.  *Id.*¶66.  Similarly, in a text message

18  exchange with Cahen discussing his concern over being sued for use of the BAYC

19  Marks, Lehman stated that "a normal person could be like 'I could see where Yuga

20  is coming from, it's confusing how close your logo is to theirs." *Id.*¶61.  And

21  Lehman discussed in a chat with Defendants that "[p]pl will not read the contract."

22  *Id.*¶67.  Worse still, even if a consumer checked Etherscan as part of this due

23  diligence, consumers would still be confused by the intentionally misleading use of

24  the BAYC Marks in the infringing token tracker name and symbol: "Bored Ape

25  Yacht Club (BAYC)." *Id.*¶¶25-28.

26    Finally, even if some who bought a Scam NFT supposedly knew it was fake,

27  the sale still infringes.  *See Chanel v. Hsiao Yin Fu*, 2017 WL 1079544, at *4 (N.D.

28  Cal. Mar. 22, 2017); *Givenchy S.A. v. BCBG Max Azria Grp.*, 2012 WL 3072327,

11

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   at *6 n.8 (C.D. Cal. Apr. 25, 2012).  Moreover, Defendants' attempt to hide behind

2   the disclaimer on their rrbayc.com website is futile given that this disclaimer was

3   not shown on all marketplaces or anywhere after the initial sale.  SUF¶68.  Indeed,

4   "the fact that Defendants felt obliged to include a disclaimer [on the RR/BAYC

5   website] demonstrates their awareness that their use of the BAYC Marks was

6   misleading."  ECF 62 at 7.

7        Because Defendants intended that some purchasers of the Scam NFTs would

8   have difficulty identifying their products as illegitimate, and in fact, NFT

9   purchasers were not able to discern the difference between the Scam NFTs and

10  authentic BAYC NFTs—a fact that Defendants were repeatedly made aware of—

11  this factor favors likelihood of confusion.  *See* SUF¶¶47-55, 60, 63-72.

12            **h.   Defendants are direct competitors in the NFT market.**

13       "Where two companies are direct competitors, this factor is unimportant."

14  *Network Automation v. Advanced Sys. Concepts*, 638 F.3d 1137, 1153 (9th Cir.

15  2011).  Here, Defendants are undeniably direct competitors selling identical looking

16  products, using identical marks, on the same marketplaces.  *Supra* II.A.2.b, c, f.

17  This factor favors a finding of likelihood of confusion.

18            **i.   Other Relevant Factors**

19       The eight *Sleekcraft* factors are "not exhaustive.  Other variables may come

20  into play depending on the particular facts presented."  *Sleekcraft*, 599 F.2d at 348

21  n.11.  Survey reports are also probative of likelihood of confusion.  *See Monster v.

22  Dolby Lab. Licensing*, 920 F.Supp.2d 1066, 1072 (N.D. Cal. 2013).  Yuga Labs'

23  survey expert found that there was a net confusion rate of 40.4% "for consumers

24  who saw the BAYC Marks used in connection with the at-issue RR/BAYC NFT

25  collection on the Foundation marketplace."  SUF¶48.  She likewise found a net

26  confusion rate of 20% "for consumers who saw the BAYC Marks used in

27  connection with the at-issue RR/BAYC NFT collection on the OpenSea

28  marketplace."  *Id.*¶47.  These results provide solid support for a finding of a

FENWICK & WEST LLP
ATTORNEYS AT LAW

likelihood of confusion.  *See Warner Bros. Ent. v. Global Asylum*, 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) (net confusion levels of 16 to 24 percent supported finding of likelihood of confusion).  The survey evidence favors a likelihood of confusion.

### 3.    Yuga Labs is Entitled to Monetary and Injunctive Relief

As a result of the confusion caused by Defendants' infringement of the BAYC Marks, Yuga Labs is entitled to monetary remedies in an amount to be proven at trial.  *See Adray v. Adry-Mart*, 76 F.3d 984, 989 (9th Cir. 1995); *Monster Energy Co. v. Integrated Supply Network*, 533 F.Supp.3d 928, 933 (C.D. Cal. 2021);* SUF¶¶76-78, 125.  Yuga Labs is also entitled to injunctive relief for the irreparable harm to its BAYC brand.  *Phillip Morris USA v. Shalabi*, 352 F.Supp.2d 1067, 1074-1075 (C.D. Cal. 2004); 15 U.S.C. §1116(a); SUF¶126.  Yuga Labs is entitled to enhanced damages under 15 U.S.C. §1117 and an award of its attorneys' fees because this is an exceptional case of intentional infringement.  SUF¶¶102, 104, 106 (Defendants calling Yuga Labs' counsel "criminals", asking them to "suck my dick", and claiming they support "racism, antisemitism, beastiality, pedophilia and using cartoons to market drugs to young children", amongst other heinous statements); *Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004) ("no difficulty" holding defendant's harassment and racist remarks towards plaintiff and their counsel during litigation made the case exceptional); *see also* SUF¶¶1-78, 102-21, 127-128.

### B.    Yuga Labs is Entitled to Summary Judgment on its ACPA Claim

Yuga Labs is entitled to summary judgment on its claim under the Anti-cybersquatting Consumer Protection Act ("ACPA") because the evidence is undisputed that Defendants (1) registered, trafficked in, or used a domain name, (2) that is confusingly similar to the plaintiff's trademark, and (3) had a bad faith intent to profit from that domain name.  *See* 15 U.S.C. §1125(d)(1)(A); *DSPT Int'l v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010).

FENWICK & WEST LLP
ATTORNEYS AT LAW

**First**, Defendants registered, used, and continue to use the domain names
https://rrbayc.com/ and https://apemarket.com/.  *See DSPT*, 624 F.3d at 1219
(because the statute states "registers, traffics in, or uses," with the word "or," a
violation occurs if any one of the acts is shown); SUF¶¶29-30.

**Second**, Defendants' domain names are confusingly similar to Yuga Labs'
trademarks.  "In determining whether there is confusing similarity under the ACPA,
courts compare the plaintiff's mark with the name of the website." *Super-Krete
Int'l v. Sadleir*, 712 F.Supp.2d 1023, 1031 (C.D. Cal. 2010).  This inquiry is
"narrower than the traditional multifactor likelihood of confusion test for trademark
infringement," as courts look solely at the domain name rather than also the content
of the website. *Id.*; *DISC Intellectual Props. v. Delman*, 2007 WL 4973849, at *5
(C.D. Cal. Sept. 17, 2007).  "Consequently, even if it might be evident from the
content of the website that it is not sponsored by or affiliated with the plaintiff,
there may nonetheless be a violation of the ACPA." *Super-Krete*, 712 F.Supp.2d at
1031-32.

Here, the domain names obviously and prominently incorporate Yuga Labs'
trademarks: https://rrbayc.com consists of only Yuga Labs' "BAYC" trademark
(and corresponding domain, https://bayc.com) with two added letters ("rr"), and
https://apemarket.com uses Yuga Labs' "BORED APE", "APE", and other "APE-
based" trademarks and adds the descriptive word "market." *See* SUF¶¶16-18, 83.
These superficial additions do not change the fact that the domain names are
confusingly similar to Yuga Labs' trademarks. *See Haas Automation v. Denny*,
2013 WL 6502876, at *3 (C.D. Cal. Dec. 4, 2013) (finding confusing similarity
where domain names all contained the plaintiff's mark "'haas' plus some additional
term or terms," such as haasplus.com, haasmillparts.com).

Further, "the likelihood for consumer confusion is exacerbated here by the
fact that both parties operate commercial websites marketing [the same] products in
the same specific market." *Super-Krete*, 712 F.Supp.2d at 1032.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**Third**, Defendants had a bad faith intent to profit from the registration and use of the domain names.  "In determining whether a person has a bad faith intent, a court may consider the nine non-exhaustive factors listed in 15 U.S.C. §1125(d)(1)(B))."  *United Artists v. United Artist Studios*, 2020 WL 4369778, at *42 (C.D. Cal. July 7, 2020).

Here, Defendants meet nearly all the factors in determining bad faith. Defendants have no evidence that they had trademark or other intellectual property rights in the domain names (Factor 1).  The domain names do not consist of the legal names of the Defendants (Factor 2).  SUF ¶¶79-80.  Defendants registered their domains *after* BAYC NFTs became well-known, and therefore Defendants could not have had prior use of the domains, let alone a *bona fide* one (Factor 3).  SUF¶¶2, 24, 81.  Defendants' websites were not for a noncommercial or fair use purpose (Factor 4).  *Supra* II.A.2. and *infra* II.C. and D.; ECF 62 at 8; *see* SUF¶¶42-46, 73.

Defendants' communications and public postings show that they registered their domains specifically for commercial gain to divert customers from purchasing BAYC NFTs (Factor 5).  SUF¶¶42-46, 73.  Even if they had not, courts routinely find a clear intent to divert customers for commercial gain where the defendant registers domain names with minor variation of the plaintiff's marks, as Defendants did here (Factor 6).  *GoPets v. Hise*, 657 F.3d 1024, 1033 (9th Cir. 2011); *Super-Krete*, 712 F.Supp.2d at 1033 (finding bad faith where "Defendants only interest in the domain name is to divert customers who may have been searching for Plaintiff's mark to their own commercial website").  It is undisputed that Defendants concealed their registration of the domain names through use of a proxy registration service (Factor 7).  SUF¶82.  Defendants registered multiple domain names—https://rrbayc.com, https://apemarket.com, and pages within OpenSea and Foundation—knowing that they are identical or confusingly similar to the distinctive BAYC Marks (Factor 8).  *See supra* II.A.1. and 2.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Given that Defendants meet eight out of the nine factors for bad faith, they

2    are not entitled to the ACPA's safe harbor defense.  *See Lahoti v. VeriCheck*, 586

3    *F.3d 1190, 1203 (9th Cir. 2009)* ("A defendant who acts ***even partially*** in bad faith

4    in registering a domain name is not, as a matter of law, entitled to benefit from the

5    ACPA's safe harbor provision.") (cleaned up) (emphasis added); *Super-Krete*, 712

6    *F.Supp.2d at 1035* (ruling the safe harbor defense inapplicable where defendant's

7    conduct met two of the nine factors of bad faith).

8    Because Defendants violated the ACPA as a matter of law and have no

9    applicable defenses, Yuga Labs is entitled to statutory damages and injunctive

10   relief.  SUF¶¶129-136.  The ACPA provides for statutory damages in an amount of

11   $1,000 to $100,000 per domain name, "as the court considers just."  15 U.S.C.

12   §1117(d); *City of Carlsbad v. Shah*, 850 F.Supp.2d 1087, 1108 (S.D. Cal. 2012).

13   Here, damages for $100,000 for each of the two domain names at issue is warranted

14   because Defendants' actions were egregious.  *See Wecosign v. IFG Holdings*, 845

15   *F.Supp.2d 1072, 1086 (C.D. Cal. 2012)* (concluding that $50,000 is an appropriate

16   award where Plaintiffs showed that Defendants provided false contact information

17   to the domain name registrar).

18   **C.    RR/BAYC NFTs are not artistic expression and a *Rogers* defense
19         is not available to Defendants.**

20   Defendants cannot hide behind a First Amendment/*Rogers* defense to excuse

21   their commercial infringement.  As an initial matter, the Ninth Circuit only applies

22   the *Rogers v. Grimaldi* analysis when "artistic expression is at issue," requiring

23   defendants to make a "threshold legal showing that its allegedly infringing use is

24   part of an expressive work protected by the First Amendment."  *Gordon v. Drape*

25   *Creative*, 909 F.3d 257, 269-271 (9th Cir. 2018); *see also Rogers v. Grimaldi*, 875

26   *F.2d 994, 999 (2d Cir. 1989).*  Here, the record shows that "the RR/BAYC NFTs do

27   not express an idea or point of view, but, instead, are a scam, that merely 'point to

28   the same online digital images associated with the BAYC collection'" —a fact

FENWICK & WEST LLP
ATTORNEYS AT LAW

Ripps has admitted to.  ECF 62 at 6; SUF¶22.  "Defendants' token tracker uses an exact copy of Plaintiff's BAYC Marks without any expressive content."  *Id.*; SUF¶¶25-27.  And Defendants' use of unmodified BAYC Marks on sales pages and Ape Market demonstrate that they have "no 'artistic expression or critical commentary.'"  *Id.* ("The title of Defendants' Foundation sales page was simply "Bored Ape Yacht Club."); SUF¶¶31, 32.  Even in Ripps' own words the alleged "art" is only the Scam NFT.  SUF¶84.  But, as the Court aptly stated: "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag, making the Rogers test inapplicable."  ECF 62 at 7.

Even if the Court finds that the Scam NFTs are "art," Defendants' *Rogers* defense also fails because their use of the BAYC Marks is not artistically relevant as required under the first prong of the *Rogers* test.  Defendants' use of these marks was no more than a "pretextual expressive work meant only to disguise a business profiting from another's trademark."  *Id.*; SUF¶85.  Defendants were motivated by economic gain to trade on Yuga Labs' goodwill.  SUF¶73.

Finally, Defendants' *Rogers* defense fails because Defendants' use of the BAYC Marks is explicitly misleading under the second prong of the *Rogers* test.  The two considerations relevant to whether a mark is explicitly misleading are (1) "the degree to which the junior user uses the mark in the same way as the senior user" and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself."  *Gordon*, 909 F.3d at 270-71.  If a junior user uses a mark in the same way as the senior user, "such identical usage could reflect the type of 'explicitly misleading description' of source that *Rogers* condemns."  *Id.* at 270.  "[T]he potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions."  *Id.*  This is exactly what Defendants have done with their NFTs.  Defendants "admit that they have used the BAYC Marks in the same marketplaces to identify and sell NFTs bearing the exact same images underlying

FENWICK & WEST LLP
ATTORNEYS AT LAW

the BAYC NFTs and without adding any expressive content."  ECF 62 at 7; *supra* at II.A.2.c., d., and e.  The evidence has proven this time and again.  SUF¶¶22-27, 31-34, 39.  Likewise, the evidence shows that Defendants use the BAYC Marks "as the centerpiece of their RR/BAYC NFTs."  ECF 62 at 7; SUF¶¶25-27, 31-34, 70.  Defendants' *Rogers* defense should be denied.  SUF¶¶137-139.

### D.  Defendants' Nominative Fair Use Defense Is Not Viable.

Defendants' blatant use of the BAYC Marks to market and sell ***their own*** NFTs does not constitute nominative fair use.  Nominative fair use does not apply when a defendant uses a mark to "refer[] to something other than the plaintiff's product[.]"  *New Kids on the Block v. News Am. Pub.*, 971 F.2d 302, 308 (9th Cir. 1992).  Nor does the defense apply where a defendant uses nonidentical, modified versions of a plaintiff's marks.  *See E.S.S. Ent. 2000 v. Rock Star Videos*, 547 F.3d 1095, 1099 (9th Cir. 2008).  Nominative fair use only allows for "truthful use of a mark," for example, a Lexus dealer who sells Lexus vehicles at lexusbroker.com.  *Toyota Motor Sales, U.S.A. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010).

Defendants are not using the BAYC Marks to sell Yuga Labs' BAYC NFTs, but to sell their own competing Scam NFTs.  ECF 62 at 8; SUF¶88.  For example, Defendant Ripps' Foundation page for the Scam NFT collection lists "Bored Ape Yacht Club" as the name of the page and displays Yuga Labs' ape skull logo.  SUF¶87.  Defendants themselves admit to using the BAYC Marks to sell their Scam NFTs on various NFT marketplaces.  SUF¶¶22-27, 31-34, 39.  Defendants' use of the BAYC Marks, as well as nonidentical, modified versions of the marks, is not referential to Yuga Labs' offerings, nor "truthful" because Defendants are *not* selling Yuga Labs' BAYC NFTs.  *See Toyota*, 610 F.3d at 1177.  These undisputed facts end the nominative fair use inquiry in favor of Yuga Labs.

Even so, Defendants cannot prove each element of the nominative fair use defense.  **First**, there is no genuine dispute that Yuga Labs' BAYC NFTs are "readily identifiable without use of the [BAYC Marks]."  *New Kids*, 971 F.2d at

308.  The BAYC brand has become well-known.  For example, in December 2021, Adidas Tweeted a Bored Ape image with the sole caption "#NewProfilePic," thereby identifying the BAYC brand without explicitly referencing BAYC or using any of the BAYC Marks.  SUF¶86.  Similarly, *Rolling Stone* magazine published an article titled "How Four NFT Novices Created a Billion-Dollar Ecosystem of Cartoon Apes" that featured an array of BAYC Images and evoked the BAYC brand without using BAYC Marks.  *Id*.¶13.

**Second**, Defendants did not use BAYC Marks only to the extent "reasonably necessary."  *New Kids*, 971 F.2d at 308.  Instead, they used *multiple* BAYC Marks, and they frequently used the *entirety* of each mark without modification.  *Supra* II.A.2.c.; SUF¶87; *Toyota*, 610 F.3d at 1181.  Defendants had every opportunity to avoid their confusingly similar use of the BAYC Marks but intentionally chose to not do so.  SUF¶¶60, 66, 71.

**Third**, Defendants used BAYC Marks "prominently and boldly" to market the Scam NFTs thereby "suggesting sponsorship."  *Brother Recs. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003).  For example, Defendants repeatedly promoted the Scam NFT collection on Twitter using the BAYC Marks.  SUF¶¶35, 26.  Defendants also repeatedly marketed their Scam NFTs as a required token to use Ape Market, which was itself marketed as an "Ape" marketplace where the only products were Yuga Labs' authentic NFTs and the Scam NFTs.  *Id*.¶¶42-46.  Therefore, Defendants cannot prove that they did "nothing" to suggest sponsorship or endorsement by Yuga Labs.  In sum, Defendants cannot prove, as is their burden, *each* of the three *New Kids* factors.  SUF¶140.

### E.    Defendants' Unclean Hands Defense Is Not Viable.

Defendants have no evidence to support an unclean hands defense.  *Id*.¶141.  A defendant asserting unclean hands must prove that "the plaintiff's conduct directly relates to the claim which it has asserted against the defendant."  *Intamin v. Magnetar Techs.*, 623 F.Supp.2d 1055, 1074 (C.D. Cal. 2009); *see also*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    *Fuddruckers v. Doc's B.R. Others*, 826 F.2d 837, 847 (9th Cir. 1987) ("the

2    defendant must demonstrate that the plaintiff's conduct is inequitable and that the

3    conduct relates to the subject matter of its claims").

4         And "the Ninth Circuit has significantly narrowed the unclean hands defense

5    in the trademark context." *2Die4Kourt v. Hillair Cap. Mgmt.*, 2016 WL 4487895,

6    at *9 (C.D. Cal. Aug. 23, 2016). For unclean hands to apply as a defense to

7    trademark infringement, "it is not enough that the trademark plaintiff engaged in

8    misconduct regarding the trademark generally. Rather, the trademark defendant

9    must also show that the plaintiff used the trademark with the specific intent to

10   deceive." *Id.* (citing *Japan Telecom. v. Japan Telecom Am.*, 287 F.3d 866, 870 (9th

11   Cir. 2002)); *see also Kaiser Trading Co. v. Assoc. Metals & Mins.*, 321 F.Supp.

12   923, 936 (N.D. Cal. 1970) ("The misconduct which brings the clean hands doctrine

13   into operation must relate directly to the transaction concerning which the

14   complaint is made, i.e., it must pertain to the very subject matter involved and

15   affect the equitable relations between the litigants.")

16        Yuga Labs does not have "unclean hands." In Defendants' answer and

17   counterclaims, Defendants allege that Yuga Labs is barred from relief because it

18   engaged in "various unlawful activities associated with the sale and promotion of

19   BAYC NFTs including Yuga's misuse BAYC NFTs as securities, undisclosed

20   compensation for endorsements from celebrities, and/or unlawful acts directed

21   towards the Defendants." ECF 65 ¶7. As an initial matter, Defendants have no

22   proof to support these allegations. Moreover, even if they could prove such

23   assertions, none of the alleged misconduct—securities fraud, celebrity

24   endorsements, and unspecified "unlawful acts" directed at Defendants—has

25   anything to do with the trademark dispute between the parties. *See S. Cal. Darts

26   Ass'n v. Zaffina*, 762 F.3d 921, 932-33 (9th Cir. 2014) (*where "the misconduct

27   alleged [by the plaintiff] does not bear any 'immediate and necessary relation'* to

28   the manner in which [the plaintiff] acquired its rights or to the equities of this case,

1    *the unclean hands doctrine is inapplicable*" (emphases added)).

2        Defendants do not have any evidence to prove these allegations.  Regarding

3    their securities fraud allegation, BAYC NFTs are not securities, and Defendants

4    have no evidence sufficient to take this sideshow to a jury.  Separately, the record

5    shows that Yuga Labs did not compensate celebrities for endorsements.  SUF¶¶89-

6    90.  Yuga Labs had acquired the BAYC Marks, and they became widely popular,

7    *before* many celebrities publicly declared their acquisition of a BAYC NFT.

8    *Id.*¶91.  Finally, Defendants failed to show that either of them ever purchased or

9    held a BAYC NFT, making clear that any undisclosed "unlawful acts directed

10   towards the Defendants" (of which there are none) have no relation to the claims at

11   issue.

### F.    Yuga Labs Is Entitled to Summary Judgment on Defendants' 17 U.S.C. § 512(f) counterclaim.

14       "[T]o state a §512(f) claim, Defendant[s] must allege (1) a material

15   misrepresentation in a takedown notice that led to a takedown, and (2) that the

16   takedown notice was submitted in subjective bad faith."  *Moonbug Ent.. Limited v.*

17   *Babybus (Fujian) Network Technology Co.*, 2022 WL 580788, at *7 (N.D. Cal.

18   Feb. 25, 2022).  To prove bad faith, "there must be a demonstration of some actual

19   knowledge of misrepresentation on the part of the copyright owner."  *Rossi v.*

20   *Motion Picture Ass'n of Am.*, 391 F.3d 1000, 1005 (9th Cir. 2004).  Defendants

21   cannot establish a material misrepresentation or any bad faith intent.  The basis for

22   Defendants' counterclaim is a single takedown notice sent to Foundation on behalf

23   of Yuga Labs relating to the Scam NFT collection.  SUF¶92.  However, Yuga Labs

24   did not misrepresent any information in that takedown notice, which stated: "[t]he

25   infringing content uses copyrighted material from

26   https://opensea.io/collection/boredapeyachtclub produced by Yuga Labs without

27   authorization."  *Id.*¶93.  The Foundation page for the Scam NFTs displayed Yuga

28   Labs' Ape Skull logo, which was also displayed on Yuga Labs' OpenSea page.

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Id.*¶¶94-95.  And Yuga Labs owns the copyright in its Ape Skull logo and has a good faith basis for believing it does.  *Id.*¶¶5, 96.

All other takedowns directed to Defendants' conduct were sent on other bases, including trademark infringement, and none of these identified that a copyrighted work had been infringed.  SUF¶¶97-98.  Accordingly, the DMCA (and thus Section 512(f)) does not apply to them.  *ISE Ent. Corp. v. Longarzo*, 2018 WL 11346736, at *8 (C.D. Cal. Dec. 11, 2018); *Twelve Inches Around Corp v. Cisco Systems Inc.*, 2009 WL 928077, at *3 (S.D.N.Y. Mar. 12, 2009) (quoting 17 U.S.C. §512(c)(3)(iii)).  Indeed, any takedowns resulting from such requests were not the result of any misrepresentation about a copyright, but of Yuga Labs' successful explanation that Defendants infringed its trademarks.  SUF¶¶99-101.  Thus, as a matter of law, Defendants cannot succeed on their Section 512(f) claim.  *Id.*¶¶142-143.

## III.   CONCLUSION

For the foregoing reasons, Yuga Labs respectfully requests that this Court grant its Motion for Summary Judgment.

Dated:  March 15, 2023                    FENWICK & WEST LLP


By: _/s/  Eric Ball_
   Eric Ball
   Attorneys for Plaintiff and
   Counterclaim Defendant
   YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="text-align:left; font-size:small;">
FENWICK & WEST LLP
ATTORNEYS AT LAW
</div>

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Yuga Labs, Inc., certifies that this brief contains 6,993 words, which:

 X   complies with the word limited of L.R. 11-6.1.

Dated:  March 15, 2023                FENWICK & WEST LLP


By:  /s/ Eric Ball
Eric Ball
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.