### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

Case No.    **CV 22-4355-JFW(JEMx)**                    Date:  March 17, 2023

Title:      Yuga Labs, Inc. -*v*- Ripps, et al.

**PRESENT:**

     **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

     **Shannon Reilly**                              **None Present**
     **Courtroom Deputy**                            **Court Reporter**


**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
     None                                           None


**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING PLAINTIFF YUGA LABS, INC.'S SPECIAL MOTION TO STRIKE COUNTERCLAIMS AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS [filed 1/18/23; Docket No. 89]**


On January 18, 2023, Plaintiff and Counterdefendant Yuga Labs, Inc. ("Yuga") filed a Special Motion to Strike Counterclaims and Motion to Dismiss Counterclaims ("Motion").[1]  On February 6, 2023, Defendants and Counterclaimants Ryder Ripps ("Ripps") and Jeremy Cahen ("Cahen") (collectively, "Counterclaimants") filed their Opposition.  On February 13, 2023, Yuga filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's February 27, 2023 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

### I.    Factual and Procedural Background

_____

[1]  In their Opposition, Counterclaimants argue that Yuga's Motion should be denied because it was filed one day late.  However, Yuga's Motion was originally filed on January 16, 2023, and stricken for "insufficient time" related to the hearing date.  Yuga re-filed its Motion within hours of the original Motion being stricken, and the re-filed Motion was identical to the original Motion, with only the hearing date changed.  Accordingly, the Court concludes that Yuga's original Motion was timely filed.  *Coughlin v. Tailhook Ass'n, Inc.*, 818 F.Supp. 1366, 1368 (D. Nev. 1993).  In addition, the Court concludes that a decision on the merits of Yuga's Motion is in the interest of judicial economy.  *Id.*

Initials of Deputy Clerk  _sr_

### A.     The Parties

Yuga is the creator of one of the world's most well known and successful Non-Fungible Token ("NFT") collections, known as the Bored Ape Yacht Club ("BAYC").  According to Yuga, the BAYC NFTs have earned significant attention from the media for their popularity and value, including being featured on the cover of *Rolling Stone* magazine and being dubbed the "epitome of coolness for many" by *Forbes* magazine.  Yuga alleges that BAYC NFTs often resell for hundreds of thousands, if not millions, of dollars, and prominent celebrities are holders of BAYC NFTs.  In addition to certain benefits that come with membership in the exclusive community of BAYC NFT holders, Yuga maintains that much of the BAYC NFT collection's value arises from their rarity because only 10,000 BAYC NFTs exist and each is entirely unique.  Yuga has pending trademark applications with the U.S. Patent & Trademark Office for "BORED APE YACHT CLUB," "BAYC," "BORED APE," the BAYC Logo, the BAYC BORED APE YACHT CLUB Logo, and the Ape Skull Logo (collectively, the "BAYC Marks").  Yuga has used the BAYC Marks since approximately April 2021 in connection with advertising, marketing, and promotion of its products and services nationwide and internationally through multiple platforms, including the BAYC website, NFT markets such as OpenSea, and social media platforms, such as Facebook, Instagram, and Twitter.

Ripps is a visual artist and creative designer who purports to create artwork that comments on the boundaries between art, the internet, and commerce.  According to Counterclaimants, Yuga has deliberately embedded racist, neo-Nazi, and alt-right dog whistles in the BAYC NFTs and associated projects.[2]  Beginning in approximately November 2021, Ripps began criticizing Yuga's use of these purported racist, neo-Nazi, and alt-right dog whistles through his Twitter and Instagram profiles, podcasts, cooperation with investigative journalists, and by creating the website gordongoner.com.

In addition, in approximately May 2022, Counterclaimants created their own NFT collection, known as the Ryder Ripps Bored Ape Yacht Club ("RR/BAYC").  According to Counterclaimants, the RR/BAYC NFT collection point to the same online digital images as the BAYC [NFT] collection but use verifiably unique entries on the Ethereum blockchain.  Counterclaimants contend that their "use of pointers to the same images is a form of 'appropriation art' that serves several purposes," including: (1) bringing attention to Yuga's use of racist, neo-Nazi, and alt-right messages and imagery; (2) exposing Yuga's use of unwitting celebrities and popular brands to disseminate offensive material; (3) creating social pressure demanding that Yuga take responsibility for its actions; and (4) educating the public about the technical nature and utility of NFTs.

### B.     Yuga's Alleged Conduct

---

[2]  Although Counterclaimants contend that Yuga's purported use of racist, neo-Nazi, and alt-right dog whistles are "too numerous to catalog," Counterclaimants have provided several examples, including their claim that Yuga's BAYC Logo imitates the Nazi Totenkopf emblem for the Schutzstaffel and their claim that the name of Yuga's company includes a neo-Nazi dog whistle because the word "Yuga" is a reference to the phrase "Surf the Kali Yuga," which the alt-right uses as an esoteric way of saying enjoy sin and embrace conflict.

Initials of Deputy Clerk   _sr_

According to Counterclaimants, "Yuga engaged in a campaign aimed at silencing Mr. Ripps and Mr. Cahen's artistic expression and related criticism of Yuga's connections to neo-Nazi and alt-right culture."  Counterclaim, ¶ 57.  Specifically, Counterclaimants claim that Guy Oseary ("Oseary"), one of Yuga's partners, called Ripps and allegedly made threats, including "I can be a nice guy or I can be a not nice guy."  *Id.*, ¶ 59.  Counterclaimants also allege that Oseary used an agent to contact members of Cahen's family and contacted his sister, telling her that Oseary would "come down" hard on Cahen.  *Id.*, ¶ 60.  In addition, Counterclaimants allege that Noah Davis, one of Yuga's employees, called Ripps's father, Rodney Ripps, and stated "[y]ou and your fucked up son are going to die" and "[y]ou guys are fucking pieces of shit."  *Id.* ¶ 69.

In addition, Counterclaimants allege that Yuga "both directly and through various third parties, systematically contacted the media and individuals with public speaking platforms, including at least four journalists, in an effort to falsely portray Mr. Ripps and Mr. Cahen as scammers and liars."  *Id.*, ¶ 63.  Counterclaimants also allege that Yuga accused Counterclaimants "of regularly and routinely using the n-word, engaging in blackmail, and even exploiting sex workers."  *Id.*  Moreover, Counterclaimants allege that Ray Illya Fraser, Yuga's Community and Partnerships lead, used his Twitter account to falsely accuse Cahen of owning and operating "the ENS (Ethereum Name Service) domain n*gger.eth [redacted]."  *Id.*, ¶ 67.

Counterclaimants also allege that, despite the fact that Yuga did not possess any copyright registrations, Yuga filed multiple Digital Millennium Copyright Act takedown notices with various NFT marketplaces in a "calculated effort to purge the internet" of the RR-BAYC NFTs.  Opposition, 4:6; Counterclaim, ¶ 62.  According to Counterclaimants, they suffered personal harm and financial damages responding to the takedown notices.  Counterclaim, ¶ 77.

## C.    Procedural History

On July 24, 2022, Yuga filed a Complaint against Counterclaimants, alleging causes of action for: (1) false designation of origin (15 U.S.C. § 1125(A)); (2) false advertising (15 U.S.C. § 1125(A)); (3) cybersquatting (15 U.S.C. § 1125(D)); (4) common law trademark infringement; (5) common law unfair competition; (6) unfair competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); (7) false advertising (Cal. Bus. & Prof. Code §§ 17500 *et seq.*); (8) unjust enrichment; (9) conversion; (10) intentional interference with prospective economic advantage; and (11) negligent interference with prospective economic advantage.  Docket No. 1.  On December 16, 2022, the Court issued an Order denying Counterclaimants' Anti-SLAPP Motion and denying Counterclaimants' Motion to Dismiss except with respect to Yuga's unjust enrichment cause of action, and that cause of action was dismissed without prejudice.  Docket No. 62.

On December 27, 2022, Counterclaimants filed their Answer and Counterclaim.  Docket No. 65.  Counterclaimants alleged six claims against Yuga: (1) knowing misrepresentation of infringing activity; (2) declaratory judgment of no copyright under 17 U.S.C. § 102(a); (3) declaratory judgment of no copyright under 17 U.S.C. § 204(a); (4) intentional infliction of emotional distress ("IIED"); (5) negligent infliction of emotional distress ("NIED"); and (6) declaratory judgment of no defamation.

Initials of Deputy Clerk __sr__

## II.    Discussion

In its Motion, Yuga seeks an order striking Counterclaimants' state law counterclaims pursuant to California's anti-SLAPP statute, California Civil Procedure § 425.16(c), or, in the alternative, dismissing the state law counterclaims pursuant to Rule 12(b)(1) and Rule 12(b)(6).[3] Yuga also seeks an order dismissing Counterclaimants' federal counterclaims pursuant to Rule 12(b)(1) and Rule 12(b)(6).[4]

### A.    Yuga's Special Motion to Strike

In its Special Motion to Strike, Yuga argues that Counterclaimants' IIED and NIED claims[5] should be stricken under California's anti-SLAPP statute because Yuga's conduct falls squarely within California's Anti-SLAPP statute and Counterclaimants cannot show a probability of success, or any chance of success, on those claims.  Specifically, Yuga argues that Counterclaimants' IIED and NIED claims fail because they are based on alleged conduct that is "nowhere near the 'extreme and outrageous' standard required to sustain such claims and because Counterclaimants' own allegations and public statements establish that they have not suffered any injury as a result of Yuga Labs defending itself."  Motion, 1:14-19.  In their Opposition, Counterclaimants argue that Yuga's conduct is not protected speech and Counterclaimants have plausibly alleged its state law claims.

### 1.    Legal Standard

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (*quoting Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)) (internal quotation marks omitted). Specifically, California's anti-SLAPP statute provides:

A cause of action against a person arising from any act of that person in furtherance

---

[3]  California's Anti-SLAPP statute "does not apply to federal law causes of action."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).  Counterclaimants state law counterclaims include the fourth counterclaim for IIED, the fifth counterclaim for NIED, and the sixth counterclaim for declaratory judgment of no defamation.

[4]  Counterclaimants federal counterclaims include the first counterclaim for knowing misrepresentation of infringing activity, second counterclaim for declaratory judgment of no copyright under 17 U.S.C. § 102(a), and third counterclaim for declaratory judgment of no copyright under 17 U.S.C. § 204(a).

[5]  In their Opposition, Counterclaimants "withdraw their declaratory judgment [of no defamation] claim to allow this matter to be more efficiently adjudicated."  Opposition, 19-21. Accordingly, the Court **DISMISSES without prejudice** Counterclaimants' sixth counterclaim for declaratory judgment of no defamation.

of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).

The Court must evaluate an anti-SLAPP motion in two steps. First, the defendant moving to strike must make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in [subsection (e) of] the statute." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (*quoting* Cal. Civ. Proc. Code § 425.16(b)(1)). Second, "[i]f the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Navellier v. Sletten,* 29 Cal. 4th 82 (2002); *see also U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 971 (9th Cir. 1999). "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (internal quotation marks omitted); *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003). "[T]hough the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Wilson*, 28 Cal. 4th at 821; Cal. Civ. Proc. Code § 425.16(b)(2). Thus, "[t]he statute 'subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim.'" *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002). "Only a cause of action that satisfies both prongs of the anti-SLAPP statute – *i.e.*, that arises from protected speech or petitioning and lacks even minimal merit – is a SLAPP, subject to being stricken under the statute." *Id.* at 89.

The anti-SLAPP motion is available in federal court. *Thomas v. Fry's Elec., Inc.*, 400 F.3d 1206 (9th Cir. 2005) (per curiam). Generally, parties sued in federal court are entitled to bring anti-SLAPP motions to strike state law claims. *Verizon Del. Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

### 2.    California's Anti-SLAPP Statute Applies to the IIED and NIED Counterclaims

In order to prevail in on an anti-SLAPP motion, Yuga must make a prima facie showing that Counterclaimants' claims "arise from" an "act in furtherance of [their] right of petition or free speech." Cal. Civ. Proc. Code § 425.16(b) and (e); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).  California courts have "interpreted the anti-SLAPP statute's 'arising from' language to mean that a claim is based on whatever conduct constitutes the 'specific act[ ] of wrongdoing' that gives rise to the claim."  *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017) (alteration in original) (*quoting Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 671 (2005)).  "Put another way, a court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging."  *Id.* (*citing Wang v. Wal-Mart Real Estate Bus. Trust,* 153 Cal. App. 4th 790 (2007)).

Initials of Deputy Clerk _sr_

In this case, the Court concludes that Counterclaimants' IIED and NIED claims are subject to California's Anti-SLAPP statute.  Counterclaimants acknowledge that they filed their IIED and NIED counterclaims based on Yuga filing this action, Yuga's takedown notices, Yuga's representatives giving a public interview on YouTube, and Yuga's tweets about Counterclaimants.  *See, e.g.,* Counterclaim, ¶¶ 7, 61, 63-67, and 70-73.  The conduct challenged by these claims falls squarely within the anti-SLAPP statute's protection for litigation-related activities, speech made "in a public forum in connection with an issue of public interest," and "any other conduct . . . in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(b), (e); Cal. Civ. Code §47(b).  Indeed, as Yuga points out, Counterclaimants have repeatedly claimed that their dispute with Yuga is a matter of public concern.

In addition, although Counterclaimants point to certain allegations that they contend are not within the reach of the anti-SLAPP statute, the existence of allegedly non-protected activity is not enough to overcome the anti-SLAPP statute where the "principal thrust or gravamen" of their claims arises out of protected activities.  *Wang v. Wal-Mart Real Estate Bus. Trust*, 153 Cal. App. 4th 790, 801–02 (2007).  Indeed, courts have rejected such attempts to "frustrate the purposes of the SLAPP statute through a pleading tactic of combining the allegations of protected and nonprotected activity under the label of one cause of action."  *Sparrow LLC v. Lora*, 2014 WL 12573525, at *3 (C.D. Cal. Dec. 4, 2014) (*quoting Wang*, 153 Cal. App. at 801–02).  In this case, Counterclaimants have made it clear that the "principal thrust or gravamen" of their IIED and NIED claims was the filing of this action and Yuga's subsequent public statements (including public statements about this action).  *See, e.g.*, Counterclaim, ¶ 70 ("Yuga . . . is spending disproportionately large resources to litigate trademark infringement claims . . . Yuga filed its suit simply to impose financial and emotional costs onto Mr. Ripps and Mr. Cahen"); ¶ 71 ("Yuga has sued only Mr. Ripps and Mr. Cahen"); ¶ 72 ("Yuga's ulterior motive for filing this suit is further confirmed by its public tweet"); ¶ 63 ("Yuga, both directly and through various third parties, systematically contacted the media and individuals with public speaking platforms, including at least four journalists"); ¶ 64 ("Yuga sent two of its co-founders, Greg Solano and Wylie Aronow, for a public interview . . . Solano and Aronow appeared on the Full Send Podcast"); ¶ 67 (alleging tweets by Yuga's "Community and Partnerships Lead").  As a result, the Court rejects Counterclaimants' arguments concerning Yuga's alleged non-protected statements and activities, because they are "incidental or collateral to a cause of action based essentially on protected activity."  *Wang,* 153 Cal. 4th at 802.

Accordingly, the Court concludes that California's Anti-SLAPP statute applies.

### 3.     Counterclaimants Have Failed to Allege "Extreme or Outrageous" Conduct Required to Prevail on Their IIED Counterclaim

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege facts demonstrating: (1) extreme and outrageous conduct by the defendant with the intention of causing or reckless disregard of the probability of causing, emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that the outrageous conduct actually and proximately caused the distress.  *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (*citing Christensen v. Sup. Ct.*, 54 Cal. 3d 868 (1991)); *see also Conley v. Roman Catholic Archbishop of San Francisco*, 85 Cal. App. 4th 1126 (2000).  In order to satisfy the extreme and

Initials of Deputy Clerk   sr

outrageous conduct element of an IIED claim, Yuga's conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 382-83 (C.D. Cal. 1995). It must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Helgeson v. American International Group, Inc.*, 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999). "'Severe emotional distress' means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Young v. City of Visalia*, 687 F.Supp. 2d 1155, 1168-69 (E.D. Cal. 2010). In addition, in alleging a claim for IIED, "[i]t is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Sup. Ct.*, 54 Cal. 3d 868, 903 (1991). As a result, Counterclaimants must allege facts to demonstrate that Yuga "directed [its] conduct at, and [was] in conscious disregard of the threat to," a particular individual. *Id.*

In this case, the Court concludes that Counterclaimants' allegations do not support a finding of "extreme or outrageous" conduct.[6] *See, e.g., Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (holding that an irate telephone message left by plaintiff's former romantic partner, which included statements such as "[y]ou know how powerful I am" and "you'll be sorry," was not enough to support a claim for emotional distress); *Hughes v. Pair*, 46 Cal. 4th 1035, 1049 (2009) (holding that sexually aggressive comments by a trustee who controlled the plaintiff's child's trust, including "I'll get you on your knees eventually. I'm going to fuck you one way or another," were not enough to support an IIED claim). In order to support a finding of "extreme or outrageous" conduct, the conduct must be "atrocious, and utterly intolerable." *Cochran*, 65 Cal. App. 4th at 496; *Duste v. Chevron Prod. Co.*, 738 F. Supp. 2d 1027 (N.D. Cal. 2010) (holding that false statements about plaintiff frequenting gentlemen's clubs and brothels made with the specific intent to cause him emotional distress and reckless disregard for the truth were not extreme and outrageous). As courts have explained, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not qualify as "extreme or outrageous" conduct. *Id.* (internal quotations and citations omitted); *Plater v. United States*, 359 F. Supp. 3d 930, 942 (C.D. Cal. 2018) (holding that TSA agents demanding plaintiff, a stroke victim who was partially paralyzed and unable to speak, either say or write her name for over one hour and forty-five minutes was merely "insensitive" and not actionable). The conduct alleged by Counterclaimants falls far short of the requisite standard, particularly in light of the fact that the parties are in the middle of a very contentious public litigation and dispute. *Id.* (holding that "[t]here must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam"). Instead, the alleged conduct in this case amounts to garden-variety litigation-related activities, public relations activities, and a handful of miscellaneous communications incidental to

---

[6] In addition, several of the alleged statements were made to third parties. *See, e.g.,* Counterclaim, ¶¶ 59-60 and 69. However, those statements cannot support Counterclaimants' IIED claim. *See, e.g., Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991) (holding that in order to support a claim for IIED, "[i]t is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware").

Initials of Deputy Clerk __sr__

this public dispute between the parties.[7]  Indeed, negative, and even allegedly threatening, comments are non-actionable because they can reasonably be expected and are not uncommon between parties involved in protracted contentious litigation or who are otherwise feuding.  *Id.* (holding that telephone communication that the defendant intended to be taken as a death threat and which the plaintiff interpreted as a death threat was not actionable because the statement was "little more than the release of steam from the pressure cooker of the parties' ill will").  As the court in *Cochran* observed:

> [F]euds are often accompanied by an exchange of hostile unpleasantries which are intended to sting whoever sits at the delivery end.  While the pain inflicted might be real, the tort of intentional infliction of emotional distress was never intended to remove all such barbs.  To hold otherwise would needlessly congest our courts with trials for hurts both real and imagined which are best resolved elsewhere.

*Cochran*, 65 Cal. App. 4th at 498; *see also Weinberg v. Valeant Pharms. Int'l*, 2017 WL 6543822, at *14 (C.D. Cal. Aug. 10, 2017), *aff'd sub nom. Weinberg v. Valeant Pharms. N. Am.,LLC*, 765 F. App'x 328 (9th Cir. 2019) (holding that comments about engaging in blood sport were not outrageous).

Accordingly, the Court concludes that Counterclaimants have failed to demonstrate the probability of prevailing on their IIED claim and, as a result, their IIED counterclaim must be struck pursuant to the California Anti-SLAPP statute.[8]

### 4.  Counterclaimants Have Failed to Allege That Yuga Owed Them a Special Duty as Required to Prevail on Their NIED Counterclaim

With respect to Counterclaimants' claim for NIED, there is no such "independent tort" and, instead, the claim is simply one of "negligence to which the traditional elements of duty, breach of duty, causation, and damages apply."  *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1165 (2021).  In order to allege a claim for negligent infliction of emotional distress, a plaintiff must demonstrate that: (1) the defendant owed her a duty; (2) the defendant breached that duty; (3) the plaintiff has suffered serious emotional distress as a result, which the defendants should have foreseen; and (4) damages.  *See Kasramehr v. Wells Fargo Bank N.A.*, 2011 WL 12473383, at *10 (C.D. Cal. May 18, 2011) (quotation omitted).  With respect to the duty owed, the duty may be imposed by law, assumed by the defendant, or exist by virtue of a special relationship between the parties.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984-85 (1993).  In addition, "with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests."  *Id.* at 985.  The rare exceptions are found in "certain specialized classes of

---

[7]  To the extent Counterclaimants argue that the filing of this action is an actionable (*see* Counterclaim, ¶ 70), Yuga's filing and pursuit of this action is privileged under California's Civil Code § 47.

[8]  To the extent Counterclaimants' IIED claim is not subject to California's Anti-SLAPP statute, the Court concludes that their IIED counterclaim should be dismissed pursuant to Rule 12(b)(6) on the same grounds.

Initials of Deputy Clerk _sr_

cases[, w]here the negligence is of a type which will cause highly unusual as well as predictable emotional distress." *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 800 (1992).

In this case, Counterclaimants have not, and cannot, allege that Yuga owes them a special duty. Counterclaimants have failed to allege, and cannot allege, that Yuga assumed any duty to them or that there was a special relationship between the parties. Instead, Counterclaimants make a single conclusory allegation that Yuga "had a duty to refrain from engaging in unlawful and harassing activities aimed at retaliating against Mr. Ripps and Mr. Cahen's speech activity." *See* Counterclaim, ¶ 93. However, this is not a "special duty" owed to Counterclaimants, but a general duty "to avoid negligently causing emotional distress to another." *See Potter* 6 Cal. 4th at 984; *see also Mandel v. Hafermann*, 503 F. Supp. 3d 946, 984 (N.D. Cal. 2020) (holding that "allegations of defamation, theft, wrongful termination, and adversarial lawyering are not enough to make out the type of duty that California courts would find sufficient to state a claim for [NIED]" unless there are also allegations that the defendant threatened serious physical injury).

In addition, even if Yuga owed Counterclaimants a "special duty," their NIED claim still fails, because their alleged emotional distress is not severe (for the reasons discussed with respect to their IIED counterclaim) and because they do not allege any physical injury. *See* Counterclaim, ¶ 95. In this case, Counterclaimants have failed to allege any current or threatened physical injury or any facts on which this Court could find an exception. *See, e.g., Faulks v. Wells Fargo & Co.*, 2015 WL 4914986, at *7 (N.D. Cal. Aug. 17, 2015) (holding that "even if Wells Fargo owed Plaintiff a duty of care in processing his loan modification application, Plaintiff has not pled facts showing this duty relating to Plaintiff's property and financial interests included a duty to protect him from emotional distress or physical harm"); *Dushey v. Accu Bite, Inc.*, 2006 WL 1582221, at *2 (E.D. Cal. June 2, 2006) ("Absent some threatened physical injury . . . or a contractual duty to protect plaintiffs' emotional tranquility, . . . plaintiffs cannot make out a claim for [NIED]"); *Eastman v. Allstate Ins. Co.*, 2014 WL 5355036, at *9 (S.D. Cal. Oct. 20, 2014) (holding that "emotional distress damages are not 'available in every case in which there is an independent cause of action founded upon negligence'") (*quoting Erlich v. Menezes*, 21 Cal. 4th 543, 554 (1999)).

Accordingly, the Court concludes that Counterclaimants have failed to demonstrate the probability of prevailing on their NIED claim and, as a result, their NIED counterclaim must be struck pursuant to the California Anti-SLAPP statute.[9]

### 5. Counterclaimants Have Failed to Allege That They Have Suffered Emotional Distress as Required to Prevail on Their IIED and NIED Counterclaims

Counterclaimants' IIED and NIED claims also fail because Counterclaimants have made only conclusory allegations of "garden variety" distress, which are wholly insufficient to support their claims. *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (holding that severe emotional distress is "emotional distress of such substantial quality or enduring quality that no reasonable [person] in

---

[9] To the extent Counterclaimants' NIED claim is not subject to California's Anti-SLAPP statute, the Court concludes that their NIED counterclaim should be dismissed pursuant to Rule 12(b)(6) on the same grounds.

Initials of Deputy Clerk _sr_

civilized society should be expected to endure it").  Indeed, "[a]ssertions that a plaintiff has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of a defendant's conduct do not" rise to the level of extreme emotional distress.  *Id.* at 1051.

In this case, Counterclaimants allege in conclusory fashion that they "suffered severe emotional distress because of Yuga's intimidation campaign," that their careers have been impacted "which created significant stress for them," and that they are "deeply fearful, anxious, and restless" and have "experience[d] severe stress and profound fear."  *See* Counterclaim, ¶ 89. However, these allegations, at most, describe vague, "garden variety" distress.  *See, e.g., Connell v. United States*, 2010 WL 958269, at *5 (E.D. Cal. Mar. 12, 2010) (holding that "any emotional distress suffered by plaintiff as a result of Dr. LiVolsi's comments was not emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it") (internal quotations and citations omitted); *Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*, 2019 WL 4137605, at *4 (C.D. Cal. June 3, 2019) (rejecting allegations as too "vague and diffuse" where the plaintiff's alleged "conduct 'injured her in health, strength, and activity, sustaining substantial shock and injury to her nervous system and person' and 'great mental distress, pain and suffering'"); *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F. Supp. 911, 919 (C.D. Cal. 1994) (finding no severe emotional distress where a plaintiff who claimed to suffer frustration, depression, nervousness and anxiety did not seek medical care); *see also Simo v. Union of Needletrades Indus. & Textile Emp.*, 322 F.3d 602, 622 (9th Cir. 2003) (holding that claiming to be tense, nervous, and emotionally hurt does not satisfy "severe or extreme emotional distress" standard).

In addition, Counterclaimants' own public statements and actions demonstrate that they have not suffered emotional distress, much less severe emotional distress.  For example, in December 2021, Ripps tweeted that he was going to intentionally copy the BAYC NFTs to "get a DMCA, challenge it, then I would like to get sued" in order to challenge Yuga's ownership of the work.  Similarly, on November 10, 2022, Cahen tweeted that he is "perfectly ok[ay]" with being known for "publicly destroying" Yuga.  In addition, on Twitter, Counterclaimants have called Yuga's litigation and related activities "hysterical," "too funny and stupid," and "so silly."  Counterclaimants also made memes mocking Yuga's legal counsel, declared that they were "looking forward to [their] 7 hour video depositions," posted photos of themselves posing outside the deposition location, and have publicly threatened Yuga's founders.

Accordingly, for this additional reason, the Court concludes that Counterclaimants have failed to demonstrate the probability of prevailing on their IIED and NIED claims and, as a result, their IIED and NIED counterclaims must be struck pursuant to the California Anti-SLAPP statute.[10]

### 6.    Yuga Is Entitled to Attorneys' Fees

Section 425.16(c) of the California Code of Civil Procedure provides that a prevailing party on a special motion to strike "shall be entitled to recover his or her attorney's fees and costs."  The

---

[10]  To the extent Counterclaimants' IIED and NIED claims are not subject to California's Anti-SLAPP statute, the Court concludes that their IIED and NIED counterclaims should be dismissed pursuant to Rule 12(b)(6) on this additional ground.

Initials of Deputy Clerk _sr_

California Supreme Court has noted that any party who "who brings a successful motion to strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001).  When determining whether an anti-SLAPP movant has prevailed in bringing its motion, "[t]he crucial question is one of practicality; did anything of substance (technical victories notwithstanding) change in the posture of the case and the claims being lodged against the defendant after it brought the special motion to strike than were in existence beforehand."  *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010).  Relevant considerations include whether the "possible recovery," "factual allegations," or "work involved in trying the case" changed as a result of the motion.  *Moran v. Endres*, 135 Cal. App. 4th 952, 955 (2006).

        In this case, because the Court grants Yuga's Special Motion to Strike with respect to Counterclaimants' IIED and NIED claims, the Court concludes that Yuga is the prevailing party on its Special Motion to Strike and, as a result, is entitled to its attorneys' fees costs incurred in moving to strike those claims.  Cal. Civ. Proc. Code § 425.16(c); *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail").

        In addition, the Court concludes that Yuga is also the prevailing party and entitled to attorneys' fees and costs with respect to Counterclaimants' "declaratory judgment of no defamation" counterclaim, which is a claim subject to California's Anti-SLAPP statute for the same reasons discussed with respect to Counterclaimants' IIED and NIED claims.  Because the purpose of California's Anti-SLAPP statute is to deter litigants from bringing meritless claims against a party engaging in protected activity, "even if the pleading is amended to remove the targeted claim, the moving party may still be entitled to attorneys' fees and costs incurred in bringing the anti-SLAPP motion, per section 425.16(c)."  *Semiconductor Equip. & Materials Int'l, Inc. v. The Peer Grp., Inc.*, 2015 WL 5535806, at *2 (N.D. Cal. Sept. 18, 2015); *see also Williams v. Stitt*, 2014 WL 3421122 at *5 (N.D.Cal. July 14, 2014) (holding that even if the offending claim is removed through amendment, although the court cannot rule on the anti-SLAPP motion itself, the court nevertheless has limited authority to consider whether, on account of the merits of the motion, movant is a prevailing party for purposes of attorney's fees and costs under § 425.16(c)); *Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211, 217 (2002) (holding that under California state court procedures, if a plaintiff voluntarily dismisses an alleged SLAPP lawsuit during the pendency of an anti-SLAPP motion, the court should nevertheless determine whether the defendant is the prevailing party for purposes of attorney's fees).  Although Counterclaimants withdrew their declaratory judgment of no defamation counterclaim, they did not do so after they met and conferred with Yuga and Yuga informed Counterclaimants that "there is no claim for declaratory relief of non-defamation.  Instead, Counterclaimants waited until they filed their Opposition to Yuga's Special Motion to Strike.  In addition, although Counterclaimants argue that there is a split of authority on whether a declaratory judgment claim of no defamation is actionable, Counterclaimants failed to provide a good-faith basis for that argument or explain why they waited until after Yuga incurred expenses in filing its Special Motion to Strike before withdrawing that claim.  Indeed, in arguing that there is a split of authority on whether a declaratory judgment claim of no defamation is actionable, Counterclaimants only cite to one case, and, as Yuga points out, that case never mentions the word "defamation."

        Accordingly, the Court conclude that Yuga is entitled to attorneys' fees and costs in

Initials of Deputy Clerk _sr_

connection with bringing its Special Motion to Strike.

### B.   Yuga's Motion to Dismiss

In its Motion to Dismiss, Yuga argues that Counterclaimants federal counterclaims fail because the Court lacks subject matter jurisdiction over them.  Specifically, Yuga argues that Counterclaimants have not been harmed by any copyright takedown notices and there is no case or controversy as to hypothetical copyright infringement.  Yuga also argues that Counterclaimants failed to plead a viable Section 512(f) claim or that Yuga has registered any copyright which would allow Yuga to bring a copyright infringement suit against Counterclaimants.  In their Opposition, Counterclaimants argue that they have standing to bring their federal counterclaims and that their federal counterclaims have been alleged with specificity.

#### 1.   Legal Standards

##### a.   Rule 12(b)(1)

The party mounting a Rule 12(b)(1) challenge to the Court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual").  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true.  *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment.  It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Pub. Co., Inc. v. General Tel & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. . . '[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'") (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (9th Cir. 1977)).  "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983).  It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

##### b.   Rule 12(b)(6)

Initials of Deputy Clerk __sr__

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations."  *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).  However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment.  *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility.  *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## 2.    Counterclaimants' Declaratory Judgment of No Copyright Counterclaims Must Be Dismissed

In their second and third counterclaims, Counterclaimants ask the Court to declare that Yuga does not possess a copyright in the Bored Ape images.  "The purpose of the Declaratory Judgment Act is 'to relieve potential defendants from the Damoclean threat of impending litigation over which a harassing adversary might brandish, while initiating suit at his leisure – or never."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990) (*citing Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981)).  "[T]he party seeking relief must still satisfy the 'case or controversy' requirement," which requires the party to show that "the controversy is of sufficient immediacy and reality to warrant declaratory relief."

Initials of Deputy Clerk _sr_

*Id.*; *MGA Entertainment, Inc. v. Louis Vuitton Malletier, S.A.*, 2019 WL 2109643, at *4 (C.D. Cal. May 14, 2019) (holding that the party seeking declaratory relief must point to some "real and immediate," "actual" controversy).

In this case, the parties agree that Yuga does not possess any copyright registrations.[11]  As a result, there can be no case or controversy as to the issue of copyright infringement between Yuga and Counterclaimants because Yuga "cannot sue for infringement of a copyright" that it has not registered.  *Cal. Furniture Collection, Inc. v. Harris Adamson Home, LLC*, 2019 WL 7882081, at *2 (C.D. Cal. Oct. 18, 2019) (holding that the plaintiff did not have standing to seek declaratory relief of non-infringement because the defendant had neither applied for nor been granted copyright registrations); *see also Sky Billiards, Inc., v. WolVol, Inc.*, 2016 WL 7479428, at *4 (C.D. Cal. July 11, 2016) (granting defendant's motion to dismiss as to plaintiff's claim for declaratory judgment of non-infringement because the defendant had no registered copyright and "Plaintiff does not have standing to seek declaratory judgment").  In addition, Counterclaimants' argument that "having an unregistered copyright is not an obstacle to suit because it takes only five working days to register a copyright through the Copyright Office's special handling process" is unpersuasive and precisely the kind of hypothetical question that federal courts are barred from adjudicating under Article III.  *See Indus. Commc'ns Sys., Inc. v. Pacific Tel. & Tel. Co.*, 505 F.2d 152, 155 (9th Cir. 1974).

Accordingly, Yuga's motion to dismiss the second and third counterclaims for declaratory judgment of no copyright is granted, and Counterclaimants' second and third counterclaims are dismissed.

### 3.    Counterclaimants' Knowing Misrepresentation of Infringing Activity Counterclaim

In their first counterclaim, Counterclaimants allege that Yuga knowingly and materially misrepresented, in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), that Counterclaimants' RR/BAYC NFTs, and the website pages associated with the sales of the RR/BAYC NFTs, infringed Yuga's copyright by filing DMCA takedown notices with various websites.  In order to hold internet service providers liable for copyright infringement, the DMCA requires that copyright owners that believe there is infringement of their copyrights must first provide notice to the internet service provider, or a DMCA "Take Down Notice," as provided in 17 U.S.C. 512(c)(1)(C).  *See Io Group, Inc. v. Veoh Networks, Inc.*, 586 F.Supp. 2d 1132, 1141–54 (N.D. Cal.2008) (explaining the structure and safe harbors created by the DMCA).  Section 512(f) of the DMCA provides that a person who "knowingly materially misrepresents under [Section 512] – (1) that material or activity is infringing . . . shall be liable for any damages . . . incurred by the alleged infringer . . . who is injured by such misrepresentation, as a result of the service provider relying on such misrepresentation in removing or disabling access to the material or activity claimed

---

[11]   A copyright exists at the moment copyrightable material is fixed in any tangible medium of expression.  *Fourth Estate Public Benefit Corp. v. Wall-Street.com LLC*, __ U.S. __, 139 S.Ct. 881, 887 (2019).  Although ownership of a copyright does not depend on the registration of a copyright, registration is required to file a copyright action.  *Id.*  Because Yuga does not have any registered copyrights, there is no imminent or viable threat of a lawsuit for copyright infringement against Counterclaimants.

Initials of Deputy Clerk  _sr_

to be infringing."  17 U.S.C. § 512(f).  The parties disagree on, among other issues, how many
Take Down Notices were sent pursuant to the DMCA, and how many were sent on grounds other
than copyright, including trademark infringement.

In this case, the Court concludes that the issues raised in Yuga's Motion to Dismiss with
respect to Counterclaimants' first counterclaim for knowing misrepresentation of infringing activity
are more appropriately resolved on a motion for summary judgment.  Accordingly, Yuga's Motion to
Dismiss is denied with respect to Counterclaimants' first counterclaim.

### 4.      Leave to Amend Would Be Futile

The Ninth Circuit has instructed that "a district court should grant leave to amend even if no
request to amend the pleading was made, unless it determines that the pleading could not possibly
be cured by the allegation of other facts."  *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.
2000) (*en banc*) (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  However, "[a]
district court may dismiss a complaint without leave to amend if amendment would be futile."  *Airs
Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc*., 744 F.3d 595, 600 (9th Cir.
2014) (citation and quotation marks omitted); *Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009)
(finding no abuse of discretion in denying leave to amend when amendment would be futile);
*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to
amend is not an abuse of discretion where the pleadings before the court demonstrate that further
amendment would be futile").

The Court concludes that this is a case where it would be futile and, thus, unnecessary to
provide Counterclaimants an opportunity to amend.  *See, e.g., Chaset v. Fleer/Skybox Int'l*, 300
F.3d 1083, 1087-88 (9th Cir. 2002) ("The basic underlying facts have been alleged by plaintiffs and
have been analyzed by the district court and us.  We conclude that the plaintiffs cannot cure the
basic flaw in their pleading.  Because any amendment would be futile, there is no need to prolong
the litigation by permitting further amendment"); *Lipton v. Pathogenesis Corp*., 284 F.3d 1027, 1039
(9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the
litigation by permitting further amendment"); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Med.
Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that "futile amendments should not be
permitted").  With respect to Counterclaimants' declaratory judgment of no copyright counterclaims,
amendment would be futile because Yuga does not have a copyright registration for its Bored Ape
images and, as a result, cannot file a copyright lawsuit.  Moreover, Yuga has not threatened
Counterclaimants with a copyright lawsuit.  With respect to Counterclaimants' IIED and NIED
counterclaims, amendment would be futile because Counterclaimants have failed to demonstrate,
either in their Opposition or their proposed amended Counterclaim, that they would be able to
successfully allege that Yuga engaged in "extreme and outrageous" behavior, that they suffered
severe or serious emotional distress, or that Yuga owed them a special duty.

Accordingly, Counterclaimants' second, third, fourth, and fifth counterclaims are dismissed
without leave to amend.

## III.    Conclusion

For all the foregoing reasons, Yuga's Special Motion to Strike is **GRANTED**.

Initials of Deputy Clerk __sr_

Counterclaimants' fourth counterclaim for IIED and fifth counterclaim for NIED are **STRICKEN and DISMISSED without leave to amend and with prejudice**.  Counterclaimants' sixth counterclaim for declaratory judgment of no defamation is **DISMISSED without prejudice**.  Yuga is entitled to its attorneys' fees and costs incurred in bringing its Special Motion to Strike.  Yuga's Motion to Dismiss is **GRANTED** with respect to Counterclaimants' second and third counterclaims for declaratory judgment of no copyright, and Counterclaimants' second and third counterclaims are **DISMISSED without leave to amend and with prejudice**.  Yuga's Motion to Dismiss Counterclaimants' first counterclaim for knowing misrepresentation of infringing activity is **DENIED**.

IT IS SO ORDERED.

Initials of Deputy Clerk _sr_