**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 22-4355-JFW(JEMx)** | Date: March 30, 2023 |
| Title: | Yuga Labs, Inc. -v- Ripps, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**     ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS [filed 2/23/23; Docket No. 118]

On February 23, 2023, Defendants and Counterclaimaints Ryder Ripps ("Ripps") and Jeremy Cahen ("Cahen") (collectively, "Defendants") filed a Motion to Stay Proceedings ("Motion"). On March 6, 2023, Plaintiff and Counter Defendant Yuga Labs, Inc. ("Yuga") filed its Opposition. On March 13, 2023, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's March 27, 2023 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**[1]

Yuga is the creator of one of the world's most well known and successful Non-Fungible Token ("NFT") collections, known as the Bored Ape Yacht Club ("BAYC"). Ripps is a visual artist and creative designer who purports to create artwork that comments on the boundaries between art, the internet, and commerce. In approximately May 2022, Ripps and Cahen created their own NFT collection, known as the Ryder Ripps Bored Ape Yacht Club ("RR/BAYC"). According to Yuga, Defendants have misused the BAYC trademarks as part of a scheme to harass Yuga, mislead consumers, and unjustly enrich themselves. According to Defendants, the RR/BAYC NFT collection is a form of "appropriation art" that serves several purposes, including bringing attention to Yuga's alleged use of racist, neo-Nazi, and alt-right messages and imagery.

---

[1] The facts are well known to the parties and will not be repeated here except where relevant to the Court's analysis of the issues presented by Defendants' Motion.

On July 24, 2022, Yuga filed a Complaint against Defendants, alleging causes of action for: (1) false designation of origin (15 U.S.C. § 1125(A)); (2) false advertising (15 U.S.C. § 1125(A)); (3) cybersquatting (15 U.S.C. § 1125(D)); (4) common law trademark infringement; (5) common law unfair competition; (6) unfair competition (Cal. Bus. & Prof. Code §§ 17200 *et seq*.); (7) false advertising (Cal. Bus. & Prof. Code §§ 17500 *et seq*.); (8) unjust enrichment; (9) conversion; (10) intentional interference with prospective economic advantage; and (11) negligent interference with prospective economic advantage.  Docket No. 1.  On December 16, 2022, the Court issued an Order denying Defendants' Anti-SLAPP Motion and denying Defendants' Motion to Dismiss except with respect to Yuga's unjust enrichment cause of action, and that cause of action was dismissed without prejudice.[2]  Docket No. 62.  With respect to Defendants' Motion to Dismiss, the Court rejected Defendants' *Rogers* and fair use defenses.  With respect to Defendants' Anti-SLAPP Motion, the Court held that Yuga's "claims are limited to Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff."  As a result, the Court concluded "that Defendants have failed to make a prima facie showing that [Yuga's] claims 'arise from' an 'act in furtherance of [their] right of petition or free speech.'"

On December 21, 2022, Defendants filed a Notice of Appeal, appealing the Court's denial of their Anti-SLAPP Motion.  Docket No. 63.  On that same day, Defendants informed Yuga that they intended to file a motion to stay all proceedings pending resolution of the appeal.  However, for some unknown reason, Defendants did not immediately file a motion to stay.  Instead, on December 27, 2022, Defendants filed their Answer and Counterclaim.  Docket No. 65.  Defendants alleged six claims against Yuga: (1) knowing misrepresentation of infringing activity; (2) declaratory judgment of no copyright under 17 U.S.C. § 102(a); (3) declaratory judgment of no copyright under 17 U.S.C. § 204(a); (4) intentional infliction of emotional distress ("IIED"); (5) negligent infliction of emotional distress ("NIED"); and (6) declaratory judgment of no defamation.[3]

On February 10, 2023, over six weeks later and after Yuga had filed its own Anti-SLAPP Motion and Motion to Dismiss with respect to Defendants' Counterclaim and while the parties were heavily involved in discovery (including extensive motion practice related to their numerous discovery disputes), Defendants again informed Yuga that they intended to file a motion to stay all proceedings pending resolution of the appeal.  On February 23, 2023, Defendants finally filed their Motion to Stay Proceedings.

---

[2] In their Anti-SLAPP Motion, Defendants sought an order striking Yuga's state law causes of action pursuant to California's anti-SLAPP statute, California Civil Procedure § 425.16(c) and argued that their RR/BAYC NFTs are protected speech.  Docket No. 48.  In their Motion to Dismiss, Defendants sought an order dismissing Yuga's federal causes of action pursuant to Rule 12(b)(6) or, alternatively, dismissing Yuga's Complaint pursuant to Rule 12(b)(6), and argued that their use of the BAYC trademarks was protected speech under *Rogers v. Grimaldi*, 87 F.2d 994 (2d Cir. 1989) as well as nominative fair use.  *Id.*

[3] On March 17, 2023, the Court issued an Order dismissing without leave to amend and with prejudice Defendants' second and third Counterclaims, striking and dismissing without leave to amend and with prejudice Defendants' fourth and fifth Counterclaims, and dismissing without prejudice Defendants' sixth Counterclaim.  Docket No. 156.

## II.   Legal Standard

The Court's power to stay its proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In exercising its discretion to grant or deny a stay of a pending action, courts should consider "competing interests" that include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."[4] *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).  In addition, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).  The proponent of a stay has the burden of proving that a stay is justified.  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

## III.   Discussion

Defendants move for a stay of all proceedings in this action pending the Ninth Circuit's decision on Defendants' appeal of the Court's denial of their Anti-SLAPP Motion with respect to Yuga's state law claims.  Defendants argue that there is substantial overlap between the state law issues raised by their appeal and Yuga's federal claims over which this Court retains jurisdiction, and, as a result, judicial economy strongly counsels in favor of staying the federal claims pending resolution of the appeal.  In its Opposition, Yuga argues that Defendants belated request for a stay is yet another example of Defendants' failure to litigate in good faith and is motivated by the recent issuance of a consent judgment and permanent injunction against Defendants' alleged co-conspirator and software developer.  Yuga argues that Defendants are unable to identify any

---

[4] It appears that the Ninth Circuit has not addressed whether the three-factor test derived from *Landis v. North American Co.*, 299 U.S. 248 (1936) or the four-factor test set forth in *Nken v. Holder*, 556 U.S. 418, 434 (09) applies to motions for stay pending an interlocutory appeal.  *See Kuang v. United States Department of Defense*, 2019 WL 1597495 (N.D. Cal. Apr. 15, 2019).  "Indeed, district courts in this circuit have catalogued a divide 'regarding the appropriate standard by which a district court is to exercise its discretion in whether to grant a stay pending an interlocutory appeal.'" *Id. (citing United States ex rel. Atlas Copco Compressors LLC v. Rwt LLC,* 2017 WL 2986586, at *11 n.11 (D. Haw. July 13, 2017)).  However, in the context of civil cases, several district courts within the Ninth Circuit have concluded had that the stay analysis set forth in *Landis*, not the stay analysis set forth in *Nken*, applies when a court is determining whether to stay a case pending the resolution of an interlocutory appeal.  *See, e.g., Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1105-06 (C.D. Cal. 2021) (*citing Kuang*, 2019 WL 1597495, at *3).  In contrast, in criminal cases, district courts considering requests to stay a case pending the resolution of an interlocutory appeal have generally applied the *Nken* analysis.  *See, e.g., United States v. DeFrance*, 2022 WL 3082410, at *1 (D. Mont. Aug. 3, 2022); *United States v. Olivar*, 2014 WL 12707482, at *1-2 (C.D. Cal. Mar. 31, 2014).  As a result, the Court will apply the *Landis* stay analysis in this case.  However, the Court concludes that Defendants have failed to establish that a stay is warranted under either the *Landis* or the *Nken* analysis.

concrete harm they will suffer if this case proceeds to trial on the federal claims. However, if a stay is issued, Yuga argues it will suffer irreparable harm to its reputation and brand and consumers will continue to be confused and misled by Defendants' infringing conduct.

It is undisputed that Defendants' appeal of the denial of their Anti-SLAPP Motion automatically stays all proceedings regarding Yuga's state law claims. *See, e.g., All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, 2009 WL 4907433, at *2 n. 2 (N.D. Cal. Dec. 14, 2009). However, California's anti-SLAPP statute "does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). However, Defendants' appeal does not automatically stay proceedings regarding Yuga's federal claims. *See, e.g., Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) ("[A]n appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2016 WL 8607505, at *1 (N.D. Cal. Dec. 22, 2016) (holding that the appeal of the denial of an anti-SLAPP motion only stays proceedings "regarding the state law claims").

In this case, the Court concludes that Defendants have failed to demonstrate that the Court should exercise its discretion and issue a stay of this action pending Defendants' appeal of the Court's denial of their Anti-SLAPP Motion. To the contrary, the Court concludes that all three *Landis* factors weight heavily against a stay for the reasons discussed below.

### A.   A Stay Will Result in Irreparable Harm to Yuga and the Public

Under the first *Landis* factor, the Court must consider the possible damage that may result from granting a stay of this action. *Landis*, 299 U.S. at 254-55. In this case, Yuga argues that it, along with consumers, will continue to suffer irreparable harm from a delayed resolution of Yuga's federal claims. The Court agrees. Although Defendants argue that they are no longer "minting" RR/BAYC NFTs, Defendants are still actively promoting their RR/BAYC NFTS, receiving royalties from the secondary sales of their RR/BAYC NFTs, and leveraging this litigation to promote and market those sales. This type of conduct is misleading and confusing to consumers. For example, Yuga's survey expert found a confusion rate of 40.4 percent relating to Defendants' use of the BAYC Marks. In addition, in a separate case brought by Yuga against Thomas Lehman, Defendants' alleged co-conspirator, in the United States District Court for the North District of New York, the court issued a consent judgement and permanent injunction, holding that the adoption and use of "the BAYC Marks to promote the [RR/BAYC NFTs and Defendants' websites] . . . have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public" in violation of the Lanham Act. *See* Consent Judgment and Order for Permanent Injunction Against Thomas Lehman in *Yuga Labs, Inc. v. Lehman*, Case No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023) (Docket No. 12). If this type of confusion and deception is allowed to continue, it will result in significant harm to consumers and adversely impact the public interest in protecting trademarks and preventing infringement. *See Phillip Morris USA Inc. v. Shalabi,* 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004) ("It is well established that trademark law protects not only the private interests of the trademark owner but also the public's interest in not being confused by the infringing products"); *Internet Specialties West, Inc. v. Ispwest*, 2007 WL 9706068, at *3 (C.D. Cal. May 21, 2007) ("It is clearly in the public interest to avoid confusion and deception as to the origin of products and services in the marketplace").

In addition, while Defendants have profited and will continue to profit from royalties they receive from secondary sales of the RR/BAYC NFTs[5], Yuga will continue to suffer harm to its goodwill, reputation, and brand equity if these proceedings are stayed and Yuga's federal claims are not promptly resolved. This loss to reputation and goodwill is "irreparable because it is neither easily calculable . . . nor easily compensable." *Sprint Solutions, Inc. v. Cell Wholesale, Inc.*, 2015 WL 13919095, at *13 (C.D. Cal. Dec. 10, 2015) (citations omitted); *see also* 15 U.S.C. § 1116(a) (the Trademark Modernization Act of 2020 codified a presumption of irreparable harm on a finding of liability or a likelihood of success on the merits in the case of injunctive relief).

Moreover, a stay would severely undercut the investment of substantial resources that the Court and both parties have expended to keep this case on the schedule requested by Defendants. Indeed, both parties have been actively been engaged in discovery, taking numerous depositions, and engaging in extensive motion practice before the Court. Under the current schedule, discovery closes in less than a week – on April 3, 2023 – and the trial will begin on June 27, 2023. Currently, the Ninth Circuit is generally scheduling oral argument in civil appeals six to twelve months from the date the Notice of Appeal is filed, and decisions are generally issued three to twelve months after submission. As a result, any stay of Yuga's federal claims pending resolution of Defendants' appeal is likely to delay the case for well over a year and require the parties to revisit, among other things, discovery, expert reports, and summary judgment motions once the case resumes. Similarly, the "risk of lost evidence weighs against granting a stay." *Bradberry v. T-Mobile USA, Inc.*, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007).

Accordingly, the Court concludes that the first *Landis* factor weighs heavily against a stay.

### B.     Defendants Will Not Be Harmed If a Stay Is Not Granted

Under the second *Landis* factor, the Court must consider the hardship or inequity that a party may suffer if a stay is not granted. *Landis*, 299 U.S. at 254-55. Although Defendants argue that they will be required to expend time, money, and resources to defend themselves in this action if a stay is not issued, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. In addition, these generalized and logistical concerns, such as the potential for unnecessary trial preparation and discovery, are not legally cognizable harms warranting a stay of all proceedings. *See Exeltis USA Inc. v. First Databank, Inc.*, 2018 WL 1989522, *3 (N.D. Cal. Mar. 5, 2018) ("[P]articipating in discovery is not a 'harm' at all: it is the routine consequence of the denial of [defendant's] motion to dismiss the Lanham Act claim"); *Breazeale v. Victim Servs., Inc.*, 2015 WL 13687730, at *2 (N.D. Cal. Sept. 14, 2015) (calling "questionable" defendant's argument that the "additional expense and inconvenience of duplicative discovery and litigation" was "irreparable injury"). Moreover, Defendants' argument regarding the time and expense necessary to defend this action is inconsistent with the fact that Defendants have attempted to greatly expand this action by filing their Counterclaims and with the nature and extent of Defendants' written discovery

---

[5] Although Defendants claims that they are no longer "minting" new RR/BAYC NFTs, Defendants are still promoting their RR/BAYC NFTs and receiving royalties from the secondary sales of those NFTs. For example, on February 17, 20, and 24, 2023, Cahen retweeted about the resale of RR/BAYC NFTs #2644, #5296, and #3345, respectively.

and motion practice. Indeed, despite Defendants' arguments to the contrary, Cahen has stated in a tweet that he is "looking forward" to going to trial.

Accordingly, the Court concludes that the second *Landis* factor weighs heavily against a stay.

### C. A Stay Would Not Serve the Orderly Course of Justice

Under the third *Landis* factor, the Court must consider "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110; *see also Landis*, 299 U.S. at 254-55. In this case, the Court concludes that Defendants' appeal will not simplify any issues. In denying Defendants' Anti-SLAPP Motion, the Court held that the *Rogers* test did not apply, and that Defendants "failed to make a prima facie showing that Plaintiff's claims 'arise from' an 'act in furtherance of [their] right of petition or free speech." In addition, the Court held that "[Yuga's] claims are limited to Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff." Because the Court has concluded that this action concerns Defendants' commercial conduct and not Defendants' free speech rights, the Court also concludes that the orderly course of justice will be best served by resolving Yuga's federal claims as expeditiously as possible.

In addition, the Court concludes that there will be no judicial economy by staying Plaintiff's federal claims. Because the Court held that Defendants' commercial conduct was not protected speech, the Order denying Defendants' Anti-SLAPP Motion did not address the second step of the anti-SLAPP analysis.[6] Thus, the Ninth Circuit will not be required to address the second step of the anti-SLAPP analysis. As a result, it is unlikely that the Ninth Circuit will rule on any issues that could potentially affect Plaintiff's federal claims, let alone any of Defendants' affirmative defenses. *See, e.g., Anheuser-Busch Cos. v. Clark*, 622 F. App'x 671 (9th Cir. 2015) (after ruling on first step of the anti-SLAPP analysis, "remand[ing] so that the district court may consider in the first instance whether [plaintiff] 'has established that there is a probability that it will prevail on the claim'").

Moreover, even if the Ninth Circuit determines that Defendants' conduct constitutes protected speech under the first prong of the anti-SLAPP analysis and concludes that Yuga's state law claims have minimal merit, that would not be determinative of Yuga's federal claims. *See, e.g., Breazeale v. Victim Services, Inc.*, 2015 WL 13687730, *1 (N.D. Cal. Sept. 14, 2015) (holding that "even if the Ninth Circuit reverses this Court's denial of the defendants' anti-SLAPP motion as to the plaintiffs' state law claims, the plaintiffs' [federal] claim will necessarily survive"); *see also Makaeff v. Trump Univ., LLC*, 2011 WL 613571, at *3 (S.D. Cal. Feb. 11, 2011) (denying motion for stay and holding that the plaintiff's appeal of the denial of her anti-SLAPP motion with respect to a defamation counterclaim "raise[d] issues distinct from those in Plaintiff's claims" and, as a result, "no potential resolution of Plaintiffs' claims can render the entire appeal moot"). Indeed, Yuga's

---

[6] Courts must evaluate anti-SLAPP motions in two steps. "Only a cause of action that satisfies both prongs of the anti-SLAPP statute – *i.e.*, that [1] arises from protected speech or petitioning and [2] lacks even minimal merit – is a SLAPP, subject to being stricken under the statute." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).

federal claims involve different issues than the discrete single issue on appeal – Defendants' purported free speech rights.  For example, Yuga's false advertising claim arises out of Defendants' purportedly false statements made for commercial purposes to further market and promote their RR/BAYC NFTs.  Similarly, Yuga's false designation of origin claim arises out "Defendants' heavily commercial use of the BAYC Marks to sell the same product – NFTs – with the same image . . . to the same customers in the same markets as Plaintiff."  Likewise, Yuga's cybersquatting claim arises out of Defendants' use of the BAYC Marks to register domain names (rrbayc.com and apemarket.com) used to sell and promote their RR/BAYC NFTs.

Accordingly, the Court concludes that the third *Landis* factor weights heavily against a stay.

## IV. Conclusion

For all the foregoing reasons, Defendants' Motion is **DENIED**.

IT IS SO ORDERED.