1  ERIC BALL (CSB No. 241327)
   eball@fenwick.com
2  KIMBERLY CULP (CSB No. 238839)
   kculp@fenwick.com
3  FENWICK & WEST LLP
   801 California Street
4  Mountain View, CA  94041
   Telephone:  650.988.8500
5  Facsimile:   650.938.5200

6
   ANTHONY M. FARES (CSB No. 318065)
7  afares@fenwick.com
   ETHAN M. THOMAS (CSB No. 338062)
8  ethomas@fenwick.com
   FENWICK & WEST LLP
9  555 California Street, 12th Floor
   San Francisco, CA  94104
10 Telephone:  415.875.2300

11 *Additional Counsel listed on next page*

12
   Attorneys for Plaintiff and
13 Counterclaim Defendant
   YUGA LABS, INC.
14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17             WESTERN DIVISION – Los Angeles

18

| | |
|---|---|
| 19  YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| 20          Plaintiff and | **YUGA LABS, INC.'S REPLY IN** |
| 21  Counterclaim Defendant, | **SUPPORT OF APPLICATION FOR LEAVE TO FILE UNDER SEAL** |
| 22      v. | **PURSUANT TO LOCAL RULE 79-5.2.2(A)** |
| 23  RYDER RIPPS, JEREMY CAHEN, | |
| 24          Defendants and | Date:        April 17, 2023 |
|     Counterclaim Plaintiffs. | Time:        1:30 p.m. |
| 25 | Courtroom:  7A |
|    | Judge:       Honorable John F. Walter |
| 26 | Trial Date:  June 27, 2023 |

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA  90401
   Telephone:  310.434.4300
4

5  DAVID Y. SILLERS (*admitted pro hac vice*)
   david@clarelocke.com
6  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
7  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA  22314
   Telephone:  202.628.7400
10

11  Attorneys for Plaintiff and
    Counterclaim Defendant
12  YUGA LABS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fenwick & West LLP
Attorneys at Law

1    Plaintiff Yuga Labs has demonstrated compelling reason to seal its

2    confidential documents — including protection against violating the intent of the

3    discovery stay imposed by the PSLRA, protecting Yuga Labs' proprietary and

4    competitively sensitive information, and protecting Yuga Labs from further abuse

5    of this litigation by Defendants.  Conversely, Defendants' violations of the

6    Protective Order (Dkt. 51), the Court's Standing Order (Dkt. 14), and the Court's

7    sealing order (Dkt. 153) are numerous, egregious, and unjustified.  Defendants filed

8    voluminous highly confidential materials on the public docket, in some instances

9    without consulting Yuga Labs *at all prior to filing* and in other instances by

10   directly disregarding Yuga Labs' specific request to redact or seal those materials

11   and references to them in Defendants' opposition papers.

12   ***Defendants and their counsel caused this situation*** through their flagrant

13   disregard of the Court's orders, their refusal to meet and confer in good faith, their

14   refusal to follow proper procedures for filing Protected Material, and their failure to

15   remedy known violations of the Protective Order in accordance with the clear

16   requirements of the Protective Order.  While Defendants' counsel initially owned

17   up to the mistake and claimed they were taking the matter seriously, their tune

18   abruptly changed, and they filed an opposition attempting to evade responsibility

19   and to shift the blame for their errors to Yuga Labs — the victim of the situation

20   they created.  The severe prejudice caused by Defendants' actions is concrete: the

21   press is planning to report on the highly confidential information that Defendants

22   disclosed in their filing, and Defendants have admittedly ***provided the same highly***

23   ***confidential information directly to reporters*** in violation of the Court's orders.

24   Defendants' knee-jerk response (Dkt. 176) to Yuga Labs raising Defendants'

25   violations contains several knowing and material falsehoods and demonstrates a

26   lack of diligence in following the Protective Order.  This is a particularly egregious

27   episode of Defendants' habitual disregard of this Court's rules and orders.  And it is

28

Fenwick & West LLP
Attorneys at Law

consistent with the Defendants' "leveraging this litigation to promote and market" their sales of their infringing products. *See* Dkt. 178 at 4.

Yuga Labs' Application to Seal should be granted in full for the reasons explained therein, and Defendants should be sanctioned under the Court's inherent authority to sanction misconduct and violations of its orders, including the Protective Order's monetary sanction of $10,000 per violation.

## I. Defendants and Their Counsel Filed Protected Material Publicly in Violation of the Protective Order and Local Rule 79-5.2.2(b)

As listed in the chart accompanying Yuga Labs' Application to Seal (Dkt. 173-3), Defendants filed at least the following Protected Material publicly *without ever notifying or consulting* Yuga Labs before filing as required under the Standing Order and the Local Rules:

- Yuga Labs 30(b)(6) Deposition at 227:19-25
- Wylie Aronow Deposition at 39:1-40:25
- Wylie Aronow Deposition at 69:18-25
- Wylie Aronow Deposition at 232:1-25
- Guy Oseary Deposition at 102:1-103:25
- Greg Solano Deposition at 62:25-66:16
- Greg Solano Deposition at 229:1-230:25
- Kerem Atalay Deposition at 38:1-39:25
- Kerem Atalay Deposition at 147:1-25

Defendants do not and cannot deny their violation of the Court's orders in failing to provide notice to Yuga Labs of Defendants' filing of this Protected Material, nor can they plausibly claim it was a mistake where, as here, their violations are strewn across multiple separate deposition transcripts.

Defendants also publicly filed the following Protected Material despite asking Yuga Labs and *receiving explicit instructions to file under seal* and make appropriate redactions in their opposition papers:

- Yuga Labs 30(b)(6) Deposition at 160:12-162:2
- Kerem Atalay Deposition at 127:4-133:1

Further, Defendants' Statement of Facts (Dkts. 163-1 and 164-3) quoted and (inaccurately) described material that was designated Highly Confidential — Attorneys' Eyes Only and ordered sealed by the Court (Dkt. 153) (sealing Ball Decl. Ex. 43 in Support of Yuga Labs' Motion for Summary Judgment). Defendants have provided no explanation for this admitted violation of the Court's orders. While Defendants did belatedly seal this document to attempt to mitigate that particular violation of the Court's orders (Dkt. 164), even their new filing (Dkt. 164-3) contains numerous unredacted quotations, citations, and references to the Protected Material enumerated above, including specific figures from Yuga Labs' highly confidential financial information and direct quotations from documents ordered sealed by the Court (Dkt. 153).[1]

## II. Defendants Compounded Their Violations of the Protective Order by Sharing Yuga Labs' Protected Material to Third Parties, Including Media Outlets, and Refusing to Adequately Remedy Those Violations

Paragraph 12 of the Protective Order provides:

> If a Receiving Party learns that, by inadvertence or otherwise, it has
> disclosed Protected Material to any person or in any circumstance
> not authorized under this Stipulated Protective Order, the Receiving
> Party immediately must (1) notify in writing the Designating Party

---

[1] Additionally, Defendants filed multiple pages of deposition testimony (for instance, the expert testimony of Laura O'Laughlin) that were still designated Highly Confidential — Attorneys' Eyes Only by the automatic 30-day designation under the Protective Order. Dkt. 51 ¶ 6.3(b). The parties acknowledged on the record that the testimony was Highly Confidential — Attorneys' Eyes Only until otherwise designated per the parties' Protective Order. Though Yuga Labs ultimately does not request that this testimony be sealed after conducting a good-faith review, Defendants' filing of such Protected Material without even asking the Designating Party is another blatant violation of the Protective Order.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

of the unauthorized disclosures, (2) use its best efforts to retrieve all unauthorized copies of the Protected Material, (3) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Stipulated Protective Order, and (4) request such person or persons to execute the "Acknowledgment and Agreement to be Bound" (Exhibit A).

Dkt. 51 at ¶ 12.  Though Defendants provided notice of only one violation, they failed to address (or even acknowledge) their multiple other violations enumerated above.  Despite Yuga Labs' reasonable attempts to mitigate the damage Defendants caused, Defendants and their counsel have failed to exercise the necessary diligence to determine to whom Protected Materials were provided and have refused to provide their communications with third parties containing Yuga Labs' Protected Material.  Worse still, Defendants refuse to provide any declaration that they have destroyed the sealed documents.  Nor will they provide any declaration or assurance that they will not share the sealed documents or discuss the Protected Material in the sealed documents with anyone for any purpose.  On this important matter of Yuga Labs' Protected Material, assurance through briefing by counsel is not enough in light of Defendants' propensity to make misrepresentations to this Court.[2]  Each Defendant should be required to verify under oath that they have complied with the Protective Order and provide details and documents relating to whom they have shared Yuga Labs' Protected Material (much of which Defendants themselves should have never been allowed to view).

---

[2] Defendants have lied before in response to orders from this Court, including in a Court-ordered verification under penalty of perjury by Ripps that he produced all relevant and non-privileged information.  Despite this verification, and only in the face of evidence that Mr. Ripps did not produce the court ordered materials, did Mr. Ripps provide multiple further productions.  Judge McDermott recently expressed the Court's "dim view of Defendants' blanket withholding of pre-litigation communications between Ripps and Cahen" even after Ripps verified under penalty of perjury that such documents were not being withheld.  Dkt. 145 at 3.

Concerns of compounded harm from Defendants' violations of the Protective Order are not hypothetical.  Defendants **admit they shared Protected Material** with individuals at CNN, Bloomberg, and the New York Times, and Yuga Labs is aware that the media plans to run a story citing the highly confidential information that they obtained from Defendants.

Remarkably, and falsely, Defendants deny that they communicated with others about Yuga Labs' confidential information even after Yuga Labs provided Defendants' counsel with evidence of Defendants' communications with other third parties.  Defendants' counsel has refused to further correspond with Yuga Labs' counsel after being confronted with this information, and Defendants' refusal to provide an accounting of who received Yuga Labs' Protected Material is an ongoing violation of the Protective Order.  Dkt. 51 ¶ 12.  Defendants' continued abuse of this litigation for their own games and marketing should not be allowed.

## III. Defendants and Their Counsel's Violations of the Protective Order Resulted from Their Own Refusal to Follow the Court's Procedures, and the Violations Were Not Justified

Defendants' response to Yuga Labs' Application to Seal seeks to deflect and blame-the-victim, rather than acknowledge the severe and injurious nature of their actions and attempt to remedy the harm they caused.  These accusations are unwarranted.

First, Defendants blame Yuga Labs for designating too much material under the Protective Order.  This is meritless.  The Protective Order provides a remedy for disputes about designations.  Dkt. 51 ¶ 7.  That remedy is not to ignore the Court's orders and Local Rules and file the materials publicly.  Not only does this argument fail to excuse the misconduct of Defendants and their counsel, but it is simply not true.  Yuga Labs' confidentiality assertions are justified as set forth in the Application to Seal, and Yuga Labs meticulously reviewed all of the materials Defendants proposed to file to reduce the need for sealing.  This excuse also fails to

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    explain why Defendants publicly filed materials that the Court ***already ordered***
2    ***sealed***.  Defendants' disagreement with the Court's orders should be addressed
3    through motion practice, not willful defiance.

4         <u>Second</u>, Defendants claim Yuga Labs did not follow the Court's sealing
5    procedures.  This is also wrong.  As Yuga Labs has pointed out several times to
6    Defendants, the Court's Standing Order requires a party who expected to file more
7    than three documents under seal to raise those documents "during the Local Rule
8    7-3 conference," "meet and confer" regarding each document, and then file a "joint
9    application."  Dkt. 14 at 17–18.  On March 2, 2023, Yuga Labs asked Defendants if
10   they intended to file more than three documents under seal, but Defendants would
11   not say and refused to meet and confer on the issue.  Declaration of Eric Ball ("Ball
12   Decl.") Exhibit 1.  Defendants did not raise an intention to file more than three
13   documents under seal at the parties' Local Rule 7-3 Conference.  Ball Decl. ¶ 6.
14   Instead, Defendants notified Yuga Labs on March 20, 2023 of their intention to file
15   10 documents and over 440 pages of deposition transcripts (from seven
16   depositions) that were Protected Material.  Ball Decl. Exhibit 2.  They then stated
17   that they expected Yuga Labs to move to seal these materials, despite the joint
18   application procedure set forth in the Protective Order.  Ball Decl. Exhibit 2.
19   Defendants raised no other concerns or arguments regarding Yuga Labs' sealing
20   requests and never attempted to arrange the required meet and confer.

21        Notwithstanding Defendants' violation of the Standing Order, Yuga Labs
22   diligently reviewed the voluminous proposed materials and provided clear, line-by-
23   line instructions on what to redact or seal.  Ball Decl. Exhibit 3.  Yuga Labs
24   promptly and timely filed its Application to Seal, after Defendants filed their
25   opposition papers, and responded to what Defendants actually filed.

26        Defendants want to ignore all of this process.  The absurdity of Defendants'
27   interpretation of the sealing procedures is only highlighted by their opposition
28   papers: had Yuga Labs filed an application to seal last week, it would have sought

sealing of dozens of pages that Defendants identified but *did not* rely on in their opposition, and it would have failed to apply to seal many more pages that Defendants did not identify, but *did* rely on in their opposition papers.  Defendants' March 20 notification was a waste of the parties' resources as it bared slim resemblance to the exhibits Defendants actually filed.

But even if Yuga Labs' interpretation of the Court's Standing Order was incorrect, Yuga Labs reasonably attempted to comply with L.R. 79-5.2.2(b).  Defendants' procedural excuse also fails to carry any weight where Defendants *filed Protected Material without asking, or against the express directions of, the Designating Party* — this is inexcusable under any interpretation of any applicable order or rule.

Third, Defendants blame Yuga Labs for producing unrelated documents on the date ordered by the Court (Dkt. 159) (ordering production within three days of March 21, 2023).[3]  Defendants also blame Yuga Labs for Defendants' counsel's need to attend the deposition *that Defendants noticed and in the location that Defendants selected*.  The rationale behind these excuses is unclear, but Defendants have a large team of attorneys; document review and their own scheduled deposition is not an adequate excuse for their misconduct.

In addition to the above, it bears emphasis that though Defendants created the "untenable circumstance" of which they complain, there were a number of ways to address it.  They did not ask for relief from the Court or even attempt to seek a resolution with Yuga Labs.  Indeed, ***they ignored Yuga Labs' invitation to meet***

---

[3] Defendants falsely characterize documents produced by Yuga Labs as showing that "critical materials showing that Yuga had coerced the deponent (Mr. Lehman) into signing a misleading affidavit."  Defendants and their counsel have these documents, and they know that there is no good-faith basis for making this claim.  Moreover, Defendants have now deposed Mr. Lehman and he repeatedly affirmed his declaration.

Fenwick & West LLP
Attorneys at Law

***and confer about sealing issues.***  They instead took the worst possible route at the expense of their adversary and simply broke the rules.  This is not excusable.

## IV.     Sanctions Are Warranted

A court may impose sanctions under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). A court may exercise this power by requiring the sanctioned party to pay the opposing party's attorney's fees. *Id.*  Specifically, Federal Rule of Civil Procedure 37(b)(2) authorizes a district court "to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules," including a protective order.  *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983); *see also Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd.*, No. 19-CV-02141-JM (JLB), 2021 WL 4993025, at *4 (S.D. Cal. Oct. 27, 2021) ("Rule 37 . . . grants courts the authority to impose sanctions where a party has violated . . . a protective order.").

Further, "[d]istrict courts have the inherent power to sanction a lawyer for a 'full range of litigation abuses,'" including violation of a protective order.  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1034–35 (9th Cir.2012) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)).  "'[A] district court may levy sanctions pursuant to its inherent power for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Id.* at 1035 (quoting *Fink v. Gomez*, 239 F.3d 989, 991-993 (9th Cir. 2001)).  "[A] 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately."  *Id.* at 1035.

Defendants and their counsel should be required, at minimum, to pay Yuga Labs' attorneys' fees and costs in connection with remedying the severe and

FENWICK & WEST LLP
ATTORNEYS AT LAW

irreparable prejudice associated with Defendants' willful violations.  In addition, the Protective Order provides that:

> Any violation of this Stipulated Order may be punished by any and all measures including, without limitation, contempt proceedings, default judgment, and/or monetary sanctions of at least $10,000 for each violation against both the Parties and Counsel.

Defendants should be assessed monetary sanctions of $10,000 per violation. This includes but is not limited to the 11 exhibits filed in violation of the protective order, the Statement of Facts which contains numerous violations, and the three instances Defendants have confirmed in which they disseminated this information to third parties.  The minimum monetary sanction is accordingly at least $150,000.

Defendants and their counsel should further be ordered to identify, under penalty of perjury, everyone who they know to have received Protected Material in violation of the Protective Order and to disclose any related communications.

## CONCLUSION

For the reasons stated above, Yuga Labs respectfully asks the Court to grant its Application to Seal and to award all remedies it deems appropriate, including sanctions of Defendants, sanctions of Defense counsel, and ordering each Defendant to verify under penalty of perjury that they have complied with the Protective Order and provide details and documents relating to whom they have shared Yuga Labs' Protected Material.

Dated:  March 30, 2023              FENWICK & WEST LLP


                                    By:/s/ Eric Ball
                                       Eric Ball
                                    Attorneys for Plaintiff and
                                    Counterclaim Defendant
                                    YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW