ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> RYDER RIPPS, JEREMY CAHEN, <br><br> Defendants and Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM <br><br> **PLAINTIFF YUGA LABS, INC.'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  May 1, 2023 <br> Time:  1:30 p.m. <br> Courtroom: 7A <br> Judge:  Honorable John F. Walter <br><br> Trial Date: June 27, 2023 |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: 202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 1, 2023, at 1:30 p.m., or as soon thereafter as this matter may be heard, before the Honorable John F. Walter in Courtroom 7A of this Court, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiff and Counterclaim Defendant Yuga Labs, Inc. ("Yuga Labs") hereby moves this Court, for an order compelling Defendants and Counterclaim Plaintiffs Ryder Ripps and Jeremy Cahen ("Defendants") to reimburse Yuga Labs:

For attorneys' fees in the amount of at least $223,231.25 incurred in connection with the Yuga Labs' Special Motion to Strike (the "anti-SLAPP Motion"), pursuant to the mandatory fee-shifting provision in California's anti-SLAPP statute, California Code of Civil Procedure § 425.16(c), and this Court's March 17, 2023 Order granting Yuga Labs' Motion to Strike. Dkt. 156.

The total amount of fees that Yuga Labs seeks (including time billed to prepare any Reply and for the hearing on this Motion) will be set forth in a supplemental declaration that will be filed concurrent with Yuga Labs' reply brief on this Motion.

Yuba Labs bases the motion on this notice and motion, the accompanying memorandum of points and authorities, the supporting declaration and exhibits that accompany the motion, all other pleadings and papers on file in this action, any matter of which this Court may take judicial notice, and any other evidence and materials as Yuga Labs may present to the Court before or during the hearing.

This motion is made following the video conference of counsel pursuant to L.R. 7-3, which took place on March 23, 2023 and via email thereafter.

Dated: March 31, 2023
                                                 FENWICK & WEST LLP

                                                 By: */s/ Eric Ball*
                                                          Eric Ball
                                                          Attorneys for Plaintiff and
                                                          Counterclaim Defendant
                                                          YUGA LABS, INC.

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................ 1

II. FACTUAL AND PROCEDURAL HISTORY .................................................. 2

III. ARGUMENTS AND AUTHORITIES ............................................................... 5

    A.  An Award of Attorney's Fees is Required Under the anti-SLAPP Statute ............................................................................................. 5

    B.  Yuga Labs' Fees Were Reasonable and Necessary. ............................. 5

        1.  The time spent by Yuga Labs' attorneys was reasonable and necessary. ................................................................................. 7

        2.  The hourly rates of Yuga Labs' attorneys are reasonable. ........ 10

IV. CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*700 Valencia Street LLC v. Farina Focaccia & Cucina Italiana, LLC*,
   No. 15-CV-04931-JCS, 2018 WL 783930 (N.D. Cal. Feb. 8, 2018).................. 11

*AECOM Energy & Constr., Inc. v. Topolewski*,
   No. CV17-5398-RSWL-AGRx, 2022 WL 1469501
   (C.D. Cal. May 9, 2022) ........................................................................................ 11

*Barry v. State Bar of Cal.*,
   2 Cal. 5th 318 (2017) ............................................................................................. 5

*Chieftain Royalty Co. v. SM Energy Co. et al.*,
   No. CIV-11-117-D (W.D. Ok. Aug. 17, 2018) (Dkt. 302-7) ............................... 6

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986) ............................................................................................... 9

*Flannery v. Cal. Highway Patrol*,
   61 Cal. App. 4th 629 (1998) ................................................................................ 10

*Fleming v. Impax Labs., Inc.*,
   No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ............. 11

*Hadley v. Krepel*,
   167 Cal. App. 3d 677 (1985) ................................................................................. 7

*Hogar v. Cmty. Dev. Com. of the City of Escondido*,
   157 Cal. App. 4th 1358 (2007) ............................................................................ 10

*Joseph S. v. Kijakazi*,
   No. CV 20-09138-DFM, 2023 WL 2628243 (C.D. Cal. Jan. 23, 2023) ............ 11

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ..................................................................................... 5, 7

*Marijanovic v. Gray, York & Duffy*
   137 Cal. App. 4th 1262 (2006) .............................................................................. 5

*Martino v. Denevi*,
   182 Cal. App. 3d 553 (1986) ................................................................................. 7

*Moore v. Liu*,
  69 Cal. App. 4th 745 (1999) ................................................................................ 5

*Nishiki v. Danko Meredith, APC*,
  25 Cal. App. 5th 883 (2018) .............................................................................. 10

*Parker v. Vulcan Materials Co. Long Term Disability Plan*,
  No. EDCV 07-1512 ABC (OPx), 2012 WL 843623
  (C.D. Cal. Feb. 16, 2012) .................................................................................. 12

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............... 11

*PLCM Group, Inc. v. Drexler*,
  22 Cal. 4th 1084 (2000) ................................................................................. 5, 6

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*,
  163 Cal. App. 4th 550 (2008) ............................................................................. 8

*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*,
  172 Cal. App. 3d 914 (1985) ............................................................................ 11

*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982) ...................................................................................... 10

*Stokus v. Marsh*,
  217 Cal. App. 3d 647 (1990) .............................................................................. 7

*Syers Properties III, Inc. v. Rankin*,
  226 Cal. App. 4th 691 (2014) ............................................................................. 7

**STATUTES**

California Code of Civil Procedure § 425.16 ............................................................. 5

California Code of Civil Procedure § 425.16(c) .................................................... 1, 5

**OTHER AUTHORITIES**

National Law Journal ........................................................................................ 11, 12

Vault Law Firm Survey ............................................................................................ 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Ryder Ripps and Jeremy Cahen filed meritless Counterclaims in an attempt to gain an unfair litigation advantage and burden Yuga Labs with millions of dollars of irrelevant discovery.  After Yuga Labs explained that they would have to pay Yuga Labs' attorneys' fees because their Counterclaims were fatally defective, Defendants refused to withdraw their Counterclaims, forcing Yuga Labs to incur needless expense researching and drafting a motion to strike Counterclaims that never should have been brought in the first place.  After Yuga Labs had incurred those expenses, Defendants then withdrew their meritless Counterclaim for "declaratory judgment of no defamation," chose to fully litigate the IIED/NIED claims, and the Court granted Yuga Labs' motion to strike, finding that Yuga Labs was entitled to its fees and costs.

Although Yuga Labs incurred and paid well over $250,000 in attorneys' fees and costs relating to Defendants' meritless Counterclaims and related discovery, it has elected to voluntarily forgo reimbursement of all fees paid to its lead counsel Fenwick & West LLP in connection with the anti-SLAPP issue, and to seek reimbursement of only those amounts paid to Clare Locke LLP—an elite boutique law firm specializing in reputational torts such as defamation and with particular experience in anti-SLAPP briefing.[1]  Clare Locke created a separate billing code to account precisely for amounts incurred solely in connection with the anti-SLAPP briefing.  Currently (including the amount spent drafting this fee application), that amount is approximately $223,231.25.[2]

Defendants indicate that they will argue that the fees sought are unreasonable, but they are mistaken.  First, the hours spent are reasonable because Defendants made

---

[1] Clare Locke and Yuga Labs have worked together on other matters other than the anti-SLAPP dispute.

[2] The application does not include fees incurred on March 31, 2023 or in the upcoming Reply, which will be included in a supplemental declaration with the Reply.

the Counterclaims as high-stakes and expensive for Yuga Labs as possible, and the substantial effort undertaken to defeating them is fully justified. Defendants' meritless counterclaims were a smattering of quasi-reputational torts intended to silence Yuga Labs and serve as a distraction from the core issue in this case—Defendants' theft of Yuga Labs' trademarks. Second, Defendants should not be heard to complain that Clare Locke's hourly rates—at or below the hourly rate of their own counsel and other comparable law firms—are unreasonable. Defendants knew they were gambling to impose unjustified costs on Yuga Labs, that gamble failed, and California law requires that they pay fees and costs as a result.

## II.    FACTUAL AND PROCEDURAL HISTORY

Yuga Labs filed a trademark suit in response to Defendants' illegal profiteering off of their counterfeit BAYC NFTs. In their own Motion to Strike, Defendants attempted to recast this trademark dispute into a defamation case entitling them to expansive, expensive, and burdensome discovery. The Court rejected that position on December 16, 2022, noting that this was a trademark case, that "Plaintiff has not brought claims against Defendants for defamation, slander or libel[,]" and denied Defendants' anti-SLAPP motion in its entirety. Dkt. 62.

Undeterred by the Court's order, Defendants again sought to recast this trademark dispute into a much broader dispute entitling them to an expansive fishing expedition, this time by filing Counterclaims having no basis in law or fact. Dkt. 65. For example, they sought a declaratory judgment that none of the thousands of public statements that Defendants made about Yuga Labs over the last year were defamatory. In their Intentional Infliction of Emotional Distress (IIED) and Negligent Infliction of Emotional Distress (NIED) Counts—contrary to their many irreverent Twitter posts reveling in this legal proceeding and the marketing it has brought them—Defendants proclaimed that they suffered "emotional distress." Defendants dressed up these deficient Counterclaims through skillful lawyering by counsel at WilmerHale's Boston office, an internationally recognized law firm

ranked the second best in Boston by one well-known survey.[3]

Defendants brought their Counterclaims for purely tactical reasons. First, they sought to burden Yuga Labs with expansive discovery that would burden Yuga Labs and distract from Defendants' theft of Yuga Labs' trademarks. Second, Defendants brought their Counterclaims for publicity and promotion: Ryder Ripps "pinned" the Counterclaims to the top of his Twitter page in order to generate more user engagement and sell more counterfeit RR-BAYC NFTs:

> 📌 Pinned Tweet
> RYDER RIPPS 🔜 ✅ @ryder_ripps · Dec 27, 2022
> Myself and @Pauly0x's response and counter claims to YugaLabs predatory lawsuit has just been filed here :
> storage.courtlistener.com/recap/gov.usco...
> 1/
> some highlights 🧵 :

The scope and breadth of Defendants' Counterclaim-dependent document requests bears special mention. Immediately after filing the Counterclaims, Defendants re-upped their previous demands for discovery into irrelevant "Inflammatory Material," arguing that **"[g]iven Mr. Ripps and Mr. Cahen's counterclaims, including their claims for intentional infliction of emotional distress and declaration of no defamation, Yuga's responses to accusations relating to Inflammatory Material are well within the scope of discovery."** Ball Decl. ¶ 11. These same justifications were parroted in Defendants' motions to compel the same information. *See, e.g.*, Dkt. No. 80 at 1. Yuga Labs was required to expend substantial resources conferring with Defendants about these requests, drafting a Joint Stipulation, and briefing the issues to the Court. Ball Decl. ¶ 12. In sum, Defendants sought to exploit their Counterclaims to impose burdensome and expensive discovery on Yuga Labs.

---

[3] The Vault Law Firm Survey, available at: https://firsthand.co/company-profiles/law/wilmerhale

Given the importance to Yuga Labs of defeating the Counterclaims and the specialized legal issues that the three reputational claims raised, Yuga Labs engaged Clare Locke to respond specifically to those claims. *See* Meier Decl. ¶¶ 4-7, 11-14. Because of Clare Locke's expertise in these issues, they were in the best position to lead on the anti-SLAPP motion efficiently and effectively. *Id.* ¶¶ 11-16.

On January 4, 2023, Plaintiff's counsel conferred with Defendants' counsel regarding the Counterclaims and the potential need for a Motion to Strike in an attempt to reach a resolution on behalf of the parties or at least narrow the scope of the dispute to avoid unnecessary litigation costs. At this conference, Defendants' counsel made clear that Defendants would not withdraw or amend any of their Counterclaims, despite the numerous pleading deficiencies that Yuga Labs raised, especially with respect to the lack of a legal basis for a "declaratory judgment of no defamation." Ball Decl. ¶¶ 4, 5; Ball Decl. Ex. 1.

On January 18, 2023, Yuga Labs filed a Motion to Strike the Counterclaims.

On February 6, 2023, Defendants filed a response brief to the Motion to Strike withdrawing the Count of "declaratory judgment of no defamation," arguing that the cause of action was "colorable" but that they had decided to withdraw it to streamline the case. Defendants fully defended every part of the IIED and NIED claims with extensive briefing. Defendants did not abandon their pending document requests into so-called "Inflammatory Material." On February 13, 2023, Yuga Labs filed its Reply to the Motion to Strike, noting that the voluntary withdrawal of Count 3 could not avoid the award of attorneys' fees as a matter of law.

On March 17, 2023, the Court granted Yuga Labs' Motion to Strike and awarding Yuga Labs its mandatory attorneys' fees and costs. Dkt. 156.

On March 23, 2023, and in email correspondence after that date, the Parties met and conferred about the fee application. Ball Decl. ¶ 13; Ball Decl. Ex. 3.

On March 31, 2023, Yuga Labs filed its fee application.

## III. ARGUMENTS AND AUTHORITIES

### A. An Award of Attorney's Fees Is Required Under the anti-SLAPP Statute.

Under Section 425.16, a "prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Code Civ. Proc., § 425.16(c). Section 425.16 "is designed to protect citizens in the exercise of their First Amendment constitutional rights of free speech and petition" while acting as "California's response to the problems created by meritless lawsuits brought to harass those who have exercised these rights." *Marijanovic v. Gray, York & Duffy* 137 Cal. App. 4th 1262, 1270 (2006).

The scope of the anti-SLAPP's fee-shifting provision "is consistent with its apparent purpose: namely, compensating the prevailing defendant for the undue burden of defending against litigation designed to chill the exercise of free speech and petition rights." *Barry v. State Bar of Cal.,* 2 Cal. 5th 318, 327-28 (2017). Thus, the very purpose of section 425.16 "is clearly to give relief, including financial relief in the form of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'participation in matters of public significance.'" *Moore v. Liu,* 69 Cal. App. 4th 745, 750 (1999). Accordingly, "[a]n adjudication in favor of the defendant on the merits of the defendant's motion to strike provides both financial relief in the form of fees and costs, as well as a vindication of society's constitutional interests." *Id.* at 752.

### B. Yuga Labs' Fees Were Reasonable and Necessary.

Courts use the lodestar method as a starting point for determining a reasonable fee award, multiplying the number of hours reasonably spent by the reasonable hourly rate for each attorney. See *PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1095 (2000). "[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum v. Moses,* 24 Cal. 4th 1122, 1133

FENWICK & WEST LLP

(2001). In determining the reasonableness of the fees sought, the Court should consider factors such as "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *PLCM Group*, 22 Cal. 4th at 1096.

Here, the fees Yuga Labs seeks are reasonable for several reasons. First, the number of hours expended in the portion covered by this fee request was reasonable given the stakes of the dispute and the high level of attention it deserved, Defendants' use of elite big-firm counsel to doggedly prosecute their Counterclaims, and Defendants' apparent instructions to deny all reasonable attempts at compromise. Second, the hourly rate charged by Clare Locke LLP involved reflects the prevailing market rate for highly-skilled legal representation, and indeed, is at or below the rate claimed by a recent successful fee application that Defendants' law firm—WilmerHale—recently filed.[4] Third, Yuga Labs is only seeking a portion of its attorneys' fees incurred in the anti-SLAPP process; it seeks only those fees incurred by Clare Locke LLP and not those incurred by Fenwick. Ball Decl. ¶¶ 5-10. It also has chosen not to seek more than $100,000 of fees in litigating that are inexorably intertwined with disputing document requests that were claimed relevant because of the now-stricken Counterclaims. Ball Decl. ¶¶ 11-12.

The fees that Yuga Labs is seeking in this matter are broken out by attorney in the chart that is included at Paragraph 20 of the Meier Declaration. Yuga Labs incurred $187,340 in professional fees, including attorney's fees, for 196 hours of work performed in connection with its successful anti-SLAPP motion and an additional $35,891.25 for 35.75 hours of work performed in connection with this motion. (Meier Decl. ¶ 20; Meier Decl. Ex. 2.) Yuga Labs is voluntarily not seeking

---

[4] *See Chieftain Royalty Co. v. SM Energy Co. et al.*, No. CIV-11-117-D (W.D. Ok. Aug. 17, 2018) (Dkt. 302-7) (WilmerHale seeking fees with rates of $1300 for senior counsel, $990 for partner in 2018).

to recover approximately $150,000 in Fenwick fees, or approximately 40% of the total amount.  Ball Decl. ¶¶ 10, 12.  The amount requested is reasonable and consistent with fee awards in similar cases in California.

### 1. The time spent by Yuga Labs' attorneys was reasonable and necessary.

The first step in a lodestar calculation is determining the total hours reasonably spent by the prevailing party's attorneys.  Ketchum, 24 Cal. 4th at 1133.  The party seeking an award of attorney's fees should document through evidence "the services actually performed[,] [including] the number of hours worked, billing rates, types of issues dealt with and appearances made on the client's behalf[.]"  See Martino v. Denevi, 182 Cal. App. 3d 553, 558-59 (1986).  Declarations documenting the number of hours worked are sufficient to prove the reasonableness of the time spent litigating the case.  See Syers Properties III, Inc. v. Rankin, 226 Cal. App. 4th 691, 698-99 (2014).

Yuga Labs includes a declaration detailing the time spent by each attorney and staff member on this matter and the qualifications and experience level of each individual.  Meier Decl. ¶¶ 8-10, ¶ 20 and Ex. 2. (detailed time records).  Yuga Labs has also submitted contemporaneous time entries explaining the services each professional performed, which demonstrate the necessity and reasonableness of the work.  Id.  These documents are *prima facie* evidence that the fees were necessarily incurred.  See Hadley v. Krepel, 167 Cal. App. 3d 677, 682 (1985) ("items on a verified cost bill are prima facie evidence the costs, expenses and services listed were necessarily incurred").  As evidenced by the supporting declaration and invoices, the services performed and fees incurred by Yuga Labs' attorneys were not only reasonable but also necessary and justified given the nature and gravity of the dispute. "The responsibility of the trial court is ... simply to determine whether the fees sought by the prevailing party are reasonable in light of the work to be done." Stokus v. Marsh, 217 Cal. App. 3d 647, 654 (1990).  In anticipation of a fee motion, Clare

Locke created a separate billing code solely for anti-SLAPP-related work and therefore all the fees being sought were actually incurred and were "directly related" to the anti-SLAPP motion proceedings. Meier Decl. ¶ 19; *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 561-62 (2008).

It was particularly important to Yuga Labs to have the Counterclaims stricken because Defendants sought to use those claims to impose burdensome discovery on Yuga Labs, to distract from Defendants' theft of trademarks and dilute from Yuga's presentation to the jury, and to potentially delay the trial, all of which would prejudice Yuga Labs. Meier Decl. ¶ 12. In addition, moving to strike the Counterclaims was time-consuming because Defendants filed 102-paragraph Counterclaims that complained about multiple alleged incidents. Dkt. 57. Yuga Labs' investigation revealed that Defendants had misrepresented or fabricated details in connection with those alleged incidents, but Yuga Labs was forced to incur expense investigating Defendants' fanciful allegations nonetheless. Meier Decl. ¶ 13. Defendants also claimed to be "emotionally distressed," but their voluminous Twitter postings showed otherwise; discovering that evidence required Yuga Labs to invest time and money reviewing Defendants' thousands of Twitter posts. Meier Decl. ¶ 13.

The legal aspects of this motion were also nuanced and complex. California anti-SLAPP law is itself complex. Meier Decl. ¶ 14. How to defeat Counterclaims that mixed public speech and private communications also required significant research and careful briefing. Meier Decl. ¶ 14. The Counterclaims also involved multiple and distinct areas of law; the Counterclaims were effectively defamation-like claims dressed up as IIED/NIED claims, and there was a strategic decision with respect to how best to characterize and respond to such claims. Meier Decl. ¶ 14. IIED/NIED cases are typically long and fact-intensive, and finding highly-analogous cases required significant research. Meier Decl. ¶ 14. Because of the importance of the Counterclaims and their wide-ranging legal flaws, Yuga Labs carefully researched California law to find the best legal authority both in its Motion and in its

Reply.  Meier Decl. ¶ 14.  Yuga Labs' careful research and briefing paid off, as the Court agreed with Yuga Labs' position on each anti-SLAPP issue in an extensive, well-reasoned opinion that relied in significant part on the cases cited in Yuga Labs' Motion and Reply.  Dkt. 156.  High-quality legal work against skilled opposing counsel takes time.

Defendants' litigation tactics also forced Yuga Labs to incur additional fees. For example, before and during the meet-and-confer, Yuga Labs specifically stated that a "declaratory judgment of no defamation" was not a cause of action and invited Defendants to voluntarily dismiss it.  Ball Decl. ¶ 4, Ball Decl. Ex. 1.  Defendants rejected that offer.  *Id.* ¶ 5.  Similarly, on January 18, 2023, Defendants' counsel wrote to Yuga Labs and asked "Can you please explain why this motion is not untimely" (without more such as an explanation why he was apparently taking that position), and then forced Yuga Labs to research and brief purported untimeliness despite having received copies of the motion and exhibits well before the deadline. Ball Decl. ¶ 7; Ball Decl. Ex. 2.  Defendants' time-intensive tactics extended to the meet-and-confer about this very fee motion; after Yuga Labs put together an accurate summary of the meet and confer, Defendants responded with "I do not think this accurately reflects the discussion on yesterday's call" without stating why, and then sent multiple inaccurate drafts of a draft joint statement **from a WilmerHale attorney who was not on the meet and confer discussion**.  Ball Decl. ¶ 13, Ball Decl. Ex. 3.  These are only examples of this type of behavior.

In sum, Defendants litigated this case "tenaciously" and cannot "be heard to complain about the time necessarily spent by [Yuga Labs] in response." *City of Riverside v. Rivera,* 477 U.S. 561, 580-81 fn. 11 (1986).  The hours spent by Plaintiff's attorneys were reasonable, and Plaintiff is entitled to recover all the attorney's fees sought in connection with the anti-SLAPP briefing.  Indeed, that Yuga Labs completely prevailed on the anti-SLAPP motion, without more, supports an award of the full amount of the fees incurred—even more relevant because Yuga

FENWICK & WEST LLP

Labs is only seeking part of its fees. *Hogar v. Cmty. Dev. Com. of the City of Escondido,* 157 Cal. App. 4th 1358, 1369 (2007) ("**Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.**") (emphasis added).

### 2. The hourly rates of Yuga Labs' attorneys are reasonable.

The second step in the lodestar analysis is determining the reasonable hourly rates for the attorneys engaged by the prevailing party. Yuga Labs is entitled to be reimbursed at hourly rates that reflect the "reasonable market value" of comparable legal services. See *Serrano v. Unruh,* 32 Cal. 3d 621, 643 (1982). Courts may further consider the attorneys' skill and experience, the nature and difficulty of the work performed, the relevant area of expertise, and the attorneys' customary billing rates. *Flannery v. Cal. Highway Patrol,* 61 Cal. App. 4th 629, 632-33 (1998) "The court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." *Nishiki v. Danko Meredith, APC,* 25 Cal. App. 5th 883, 898 (2018).

Clare Locke LLP is an elite boutique law firm which specializes in reputation-related torts. Meier Decl. ¶¶ 5-6. Its attorneys—including those litigating this issue—are from elite law schools and elite law firms and command fees that reflect their skill and market demand. Meier Decl. ¶¶ 5-10. Yuga Labs staffed the anti-SLAPP motion leanly, with one partner reviewing work product and one counsel and one associate researching and drafting to reduce the attorney fees. Meier Decl. ¶¶ 15-16, 20. And Yuga Labs chose to pay the fees being requested, further demonstrating their value. Meier Decl. ¶ 21.

For this matter, Clare Locke charged $375-425 for paralegals and other professionals, $810-1000 for one senior associate and one counsel, and $1250 for one partner. Meier Decl. ¶ 20. The qualifications of Clare Locke and its professionals are described in Paragraphs 4-10 of the Meier Declaration, and the rates charged by Clare Locke are comparable to, and often less than, those of other highly-qualified

attorneys with similar experience. Meier Decl. ¶ 6; *Fleming v. Impax Labs., Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding hourly rates of $760-$1,325 for partners and $895-$1,150 for counsel reasonable); *AECOM Energy & Constr., Inc. v. Topolewski*, No. CV17-5398-RSWL-AGRx, 2022 WL 1469501, at *4 (C.D. Cal. May 9, 2022) (finding hourly rates of $876 for senior associate and $1,116 for partner reasonable); *Joseph S. v. Kijakazi*, No. CV 20-09138-DFM, 2023 WL 2628243, at *3 (C.D. Cal. Jan. 23, 2023) ("Exercising its discretion, the Court finds reasonable the rate of $1,600 per hour for attorney time.").

The hourly rate of $375 - $400 for Clare Locke's paralegals also is comparable of those of paralegals in similar firms. *See, e.g.*, *700 Valencia Street LLC v. Farina Focaccia & Cucina Italiana, LLC,* No. 15-CV-04931-JCS, 2018 WL 783930, at *4 (N.D. Cal. Feb. 8, 2018) (finding hourly rate of $355 in 2018 reasonable for paralegal); *Perfect 10, Inc. v. Giganews, Inc.,* No. CV 11-07098-AB, 2015 WL 1746484, at *21 (C.D. Cal. Mar. 24, 2015) (upholding hourly rates of $240 to $345 in 2017 for paralegals as "consistent with prevailing market rates"). Yuga Labs is entitled to recover the hours billed by the paralegals, who provided necessary support services to, among other things, produce documents and prepare exhibits for filings and reduce attorneys' fees. (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914, 951 (1985) ("necessary support services for attorneys, e.g., secretarial and paralegal services, are includable within an award of attorney fees")).

The National Law Journal Billing Survey for 2017 provides further confirmation of the reasonableness of the rates for Clare Locke's professionals. Meier Decl. ¶ 21; Meier Decl. Ex. 3. That survey lists the following billing rates for certain California firms (and highly-regarded firms having substantial presence in California): Cooley LLP ($1,100 average rate for partners, $850-$1065 for counsel, and $595-$835 for associates), Kirkland and Ellis ($1,115-$1,410 for partners, up to $955 for associates), Jones Day ($700-$1,050 for partners, $850 for one counsel, and $300-$800 for associates), King & Spalding LLP ($775-$1,435 for partners and

$525-$790 for associates).  The rates reflected in the National Law Journal Billing Survey would be higher now because that survey was taken in 2017, and firms have significantly increased their fees in recent years.  See *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, at *7 (C.D. Cal. Feb. 16, 2012) ("[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice").  Furthermore, the skill and experience levels of Yuga Labs' attorneys justifies their hourly rates.  Clare Locke is an elite firm, and the attorneys involved collectively have decades of experience handling high-profile reputation-related litigation.   Meier Decl. ¶¶ 4-10.

## IV.  CONCLUSION

Defendants themselves chose to pick the fight and bring a gun; they should not be heard to complain that Yuga Labs should have brought a cheap knife to the gunfight Defendants initiated.  Defendants were warned that they would owe attorneys' fees if they did not withdraw their meritless Counterclaims, chose to ignore those warnings, and California law now requires them to pay the fees they caused to be incurred.

Dated: March 31, 2023                    FENWICK & WEST LLP

                                         By: */s/ Eric Ball*
                                             Eric Ball
                                             Attorneys for Plaintiff and
                                             Counterclaim Defendant
                                             YUGA LABS, INC.