ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:   650.988.8500
Facsimile:    650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>　　　Plaintiff and<br>　　　Counterclaim Defendant,<br><br>　　v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>　　　Defendants and<br>　　　Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**PLAINTIFF YUGA LABS, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　　April 17, 2023<br>Time:　　　　1:30 p.m.<br>Courtroom:　7A<br>Judge:　　　Honorable John F. Walter<br><br>Trial Date:　June 27, 2023 |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:   310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA  22314
Telephone:   202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

**TABLE OF CONTENTS**

                                                                                                     **Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ....................................................................................................... 1

      A.    DEFENDANTS FAIL TO RAISE AN ISSUE OF FACT AS TO YUGA LABS' TRADEMARK INFRINGEMENT CLAIM. ................ 1

           1.    Yuga Labs Owns the BAYC Marks. ............................................. 1

           2.    Defendants' Use of the BAYC Marks was Likely to Cause (and has Caused) Confusion. ...................................................... 4

                a.    The BAYC Marks Are Strong. ............................................. 4

                b.    Defendants Sell the Same Product—NFTs. ......................... 4

                c.    Defendants Used Identical Marks. ....................................... 4

                d.    Consumers Were Actually Confused. .................................. 5

                e.    Defendants Intentionally Used the BAYC Marks. .............. 6

                f.    Defendants Used the Same Marketing Channels. ................ 6

                g.    Authenticating the Source of NFTs Requires a High Degree of Care and Sophistication. ..................................... 6

                h.    Defendants Are Direct Competitors. .................................... 7

           3.    Yuga Labs Is Entitled to Monetary and Injunctive Relief. ............ 7

      B.    DEFENDANTS FAIL TO RAISE AN ISSUE OF FACT AS TO THE ACPA CLAIM. ..................................................................................... 8

      C.    DEFENDANTS FAIL TO RAISE AN ISSUE OF FACT AS TO THEIR INSUFFICIENT *ROGERS* DEFENSE. ................................... 8

      D.    DEFENDANTS FAIL TO RAISE AN ISSUE OF FACT AS TO THEIR INSUFFICIENT NOMINATIVE FAIR USE DEFENSE. ........ 9

      E.    DEFENDANTS FAIL TO RAISE AN ISSUE OF FACT AS TO THEIR INSUFFICIENT UNCLEAN HANDS DEFENSE. ................ 10

      F.    DEFENDANTS FAIL TO RAISE AN ISSUE OF FACT AS TO THEIR COUNTERCLAIM UNDER 17 U.S.C. § 512(F). ................... 11

**TABLE OF CONTENTS**
**(Continued)**

**Page**

1. The Trademark Takedown Notices Are Not Actionable............. 11

2. The One DMCA Takedown Notice Did Not Misrepresent a Copyright and Had a Good Faith Belief. ................................ 12

III. CONCLUSION ....................................................................................... 12

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Chanel, Inc. v. Hsiao Yin Fu*,
 No. 16-CV-02259-EMC, 2017 WL 1079544 (N.D. Cal. Mar. 22, 2017).............. 5

*Crossfit, Inc. v. Alvies,*
 No. 13-cv-3771-SC, 2014 WL 251760 (N.D. Cal. Jan. 22, 2014)...................... 12

*Downing v. Abercrombie & Fitch*,
 265 F.3d 994 (9th Cir. 2001)............................................................................... 9

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) ......................................................................................... 12

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
 139 S.Ct. 881 (2019) ........................................................................................ 12

*Friel v. Dapper Labs, Inc.*,
 No. 21 CIV. 5837 (VM), 2023 WL 2162747 (S.D.N.Y. Feb. 22, 2023) .............. 11

*Givenchy S.A. v. BCBG Max Azria Grp., Inc.*,
 No. CV 10-8394-GHK SHX, 2012 WL 3072327 (C.D. Cal. Apr. 25, 2012)......... 5

*Haas Automation, Inc. v. Denny*,
 No. 2:12-CV-04779 CBM, 2013 WL 6502876 (C.D. Cal. Dec. 4, 2013) ............. 8

*Hermes Int'l v. Rothschild*,
 No. 22-CV-384 (JSR), 2023 WL 1458126 (S.D.N.Y. Feb. 2, 2023)..................... 2

*Hirano v. Williams*,
 No. EDCV 13-2371-DMG (AGR), 2017 WL 11632461
 (C.D. Cal. Mar. 24, 2017).................................................................................. 6

*Int'l Unions, Security Police and Fire Professionals of America v. Maritas*,
 No. 2:19-cv-10743, 2023 WL 2726030 (E.D. Mich. Mar. 30, 2023) ................. 11

*Moonbug Enter. Ltd. v. Babybus (Fujian) Network Tech. Co.*,
 No. 21-CV-06536, 2022 WL 580788 (N.D. Cal. Feb. 25, 2022) ....................... 11

*Neo4j, Inc. v. PureThink, LLC*,
 480 F. Supp. 3d 1071 (N.D. Cal. 2020)............................................................... 3

*New Kids on the Block v. News Am. Pub., Inc.*,
 971 F.2d 302 (9th Cir. 1992).............................................................................. 9

*Perfect 10, Inc. v. CCBill LLC*,
 488 F.3d 1102 (9th Cir. 2007)........................................................................... 11

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Rock River Communications v. Universal Music Grp.*,
No. CV08-635 CAS, 2011 WL 1598916 (C.D. Cal. Apr. 27, 2011) .................... 11

*Rockland Mortg. Corp. v. S'holders Funding, Inc.*,
835 F. Supp. 182 (D. Del. 1993) ................................................................. 5

*S. California Darts Ass'n v. Zaffina*,
762 F.3d 921 (9th Cir. 2014) ..................................................................... 10

*San Diego Comic Convention v. Dan Farr Prods.*,
No. 14-CV-1865 AJB (JMA), 2017 WL 4227000
(S.D. Cal. Sept. 22, 2017), *aff'd,* 807 F. App'x 674 (9th Cir. 2020) ...................... 3

*Summit Ent., LLC v. B.B. Dakota, Inc.*,
No. CV1004328GAFRZX, 2011 WL 13216987 (C.D. Cal. Nov. 21, 2011) ....... 10

*Super-Krete Int'l, Inc. v. Sadleir*,
712 F. Supp. 2d 1023 (C.D. Cal. 2010) ........................................................ 8

*Synoptek, LLC v. Synaptek Corp.*,
309 F. Supp. 3d 825 (C.D. Cal. 2018) ......................................................... 7

*Twelve Inches Around Corp v. Cisco Sys., Inc.*,
No. 08 Civ. 6896(WHP), 2009 WL 928077 (S.D.N.Y. Mar. 12, 2009) ............... 12

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
161 F. Supp. 3d 902 (C.D. Cal. 2016), *aff'd,* 875 F.3d 1192 (9th Cir. 2017) ......... 8

**STATUTES**

17 U.S.C. § 512 ........................................................................... 1, 11, 12

**OTHER AUTHORITIES**

2 McCarthy on Trademarks and Unfair Competition § 16:18 (5th ed.) ................... 2

Restatement (Second) of Contracts § 203 (1981) ............................................. 3

## I. INTRODUCTION

Unable to raise any genuine factual dispute to defeat summary judgment, Defendants seek to distract the Court with fantastical theories that lack any factual support and are contrary to this Court's findings.

***First***, Defendants rely on their tired theory that their criticism of Yuga Labs somehow shields them from liability for their promotion and sales of the infringing Scam NFTs. But as this Court has found (and the facts show): (1) "Defendants concede they are using the BAYC Marks as the centerpiece of their [Scam] NFTs"; and (2) Defendants' "commercial activities designed to sell infringing products" "is the only conduct at issue in this action." ECF 62 at 6-7. Indeed, despite the reams of exhibits submitted by Defendants, they fail to offer any controverting evidence of their own for *more than seventy* of Yuga Labs' facts.

***Second***, even if the Court admitted and accepted Defendants' evidence and facts, it is undisputed that Defendants intentionally designed the Scam NFTs to be virtually indistinguishable from authentic BAYC NFTs, causing actual confusion of reasonable consumers, such as on OpenSea or Foundation. Likewise, even if Defendants could establish that their "artist statement" and purported "disclaimer" on the rrbayc.com website prevented confusion ***on that single website***—Defendants do not dispute the very real likelihood of (and actual) confusion elsewhere. No more is necessary to enter summary judgment for Yuga Labs.

***Third***, Defendants also fail to put forward material facts that would permit them to go to trial on their three key defenses (*Rogers*, nominative fair use, and unclean hands) or on their Section 512(f) counterclaim.

## II. ARGUMENT

### A. Defendants Fail to Raise an Issue of Fact as to Yuga Labs' Trademark Infringement Claim.

#### 1. Yuga Labs Owns the BAYC Marks.

Defendants admit they used the BAYC Marks to refer to Yuga Labs. *See* Opp.

at 16, 18; CSOF ¶¶69, 70, 215.  Their theories to downplay Yuga Labs' undisputable ownership in the BAYC Marks are red herrings that contradict the record and the law.[1]

***First***, trademark protection can extend to the NFT and the digital item it authenticates.  A trademark "should be understood to refer to both the NFT and the digital image with which it is associated."  *Hermes Int'l v. Rothschild*, 2023 WL 1458126, at *6 (S.D.N.Y. Feb. 2, 2023).  Indeed, "[i]ndividuals do not purchase NFTs to own a 'digital deed' divorced from any other asset: they buy them precisely so that they can exclusively own the content associated with the NFT."  *Id.* at *5.  Here, consumers purchased BAYC NFTs to receive a license to the BAYC Image along with other real-world benefits.  Indeed, the BAYC Marks have long been used with Yuga Labs' other products.  CSOF ¶¶1-3, 11, 14, 15, 22, 86.

***Second***, the record demonstrates Yuga Labs' continuous use of the BAYC Marks in commerce in connection with its goods and services, such as digital games, events, and consumer merchandise.  CSOF ¶¶1, 2, 4, 6, 15.  Defendants incorrectly assume that a rejected specimen of use or an intent-to-use status must mean that Yuga Labs has not used the BAYC Marks.  That is wrong and belied by the fact Yuga Labs has used the marks in commerce.  *See* 2 McCarthy on Trademarks and Unfair Competition § 16:18 (5th ed.) ("It is not federal registration, but use of a designation as a mark that creates trademark rights").  Indeed, Defendants' entire theory of using the BAYC Marks to identify Yuga Labs as a target of their criticism relies on the undisputed fact that Yuga Labs has built significant brand recognition and goodwill from its use in the marks.  *See* CSOF ¶215.  Further, Defendants offer a twisted theory that Yuga Labs' tremendous success in selling out of its exclusive set of 10,000 BAYC NFTs must mean Yuga Labs loses the rights in the BAYC Marks.  Opp. at 5.  That is nonsensical.

***Third***, Yuga Labs has not transferred or abandoned its trademark rights, despite Defendants' unsubstantiated theories.  *See* Opp. at 6-8.  Each fail:

---

[1] Yuga Labs does not move for summary judgment on its APE mark but reserves the right to assert it at any liability trial on its first or second claims.

(1) BAYC NFT holders are granted a ***copyright*** license to use their BAYC Image, ***not*** a trademark license to use the BAYC Marks independently. While the first two lines of the license state generally that BAYC NFT holders "own" the art completely (just like one who buys a poster at the mall owns that art completely), it goes against basic contract interpretation to reach a determination of "ownership" based only on these first two lines without reference to the next twenty-four lines that clearly specify the underlying image is subject to a personal and commercial use license, and does not give any right to use the BAYC Marks separately. *See* Restatement (Second) of Contracts § 203 (1981) ("specific terms and exact terms are given greater weight than general language"). And because there is no trademark license, Defendants' naked licensing theory must fail. *See Neo4j, Inc. v. PureThink, LLC*, 480 F. Supp. 3d 1071, 1077 (N.D. Cal. 2020) ("Naked licensing does not occur where there is no trademark license at issue."). In other words, while BAYC NFT holders can (and do) use their BAYC Images, they "do not have any right to use the [] trademark absent a separate trademark license agreement." *Id.* Thus, Yuga Labs is under no obligation to police BAYC NFT holders' use of their BAYC Images. *See id.* at 1078 (no "require[ment] [of] a trademark owner to police the quality of goods produced by a third party who has no right to use the trademark").

(2) Similarly, Yuga Labs did not license any trademark rights to APE Foundation, which administers the ApeCoin DAO. Defendants' evidence only shows that Yuga Labs "gifted" (not licensed) an NFT with an image of a rotating coin and ape skull (which NFT is differentiated from Yuga Labs' Ape Skull Logo by numerous visual aspects). CSOF ¶165. The sales page that Defendants proffer as a "convey[ance] [of] all rights and privileges of the logo's intellectual property" is not a trademark license or assignment and is hearsay. *See id.*

(3) Finally, Yuga Labs did not abandon its BAYC Marks because it enforces its rights in the BAYC Marks against infringing third-party uses. CSOF ¶97. Regardless, Yuga Labs is not required to police every third-party use that does not have Yuga Labs'

FENWICK & WEST LLP
ATTORNEYS AT LAW

approval. *See San Diego Comic Convention v. Dan Farr Prods.*, 2017 WL 4227000, at *12 (S.D. Cal. Sept. 22, 2017), *aff'd*, 807 F. App'x 674 (9th Cir. 2020) ("[d]efendants' attempt to argue abandonment through third party use or failure to police . . . are unquestionably meritless").[2]

### 2. Defendants' Use of the BAYC Marks was Likely to Cause (and has Caused) Confusion.

#### a. The BAYC Marks Are Strong.

Defendants fail to address the fact that the BAYC Marks are conceptually and commercially strong. This undisputed fact is established and negates Defendants' theories that Yuga Labs does not own its strong BAYC Marks. *See* ECF 65 at 29 ¶1 (counterclaims admitting "the popular 'Bored Ape Yacht Club' project—a commercially successful collection of 'NFTs' sold by Yuga"); ECF 156 at 1 ("Yuga is the creator of one of the world's most well known and successful Non-Fungible Token ('NFT') collections, known as the Bored Ape Yacht Club ('BAYC')"); ECF 62 at 1.

#### b. Defendants Sell the Same Product—NFTs.

Twice already this Court has found that Defendants "***sell the same product – NFTs – with the same image***." ECF 62 at 11; ECF 178 at 7 (emphases added).

Defendants make the strained suggestion that Scam NFTs are different products because they are from different Ethereum wallets with different contract addresses. That argument taken to its logical end would ***eviscerate*** a trademark owner's rights to prevent the sale of knockoffs merely because they were manufactured at a different factory or made of polyester instead of microfiber. Nor does it change the fact, as Defendants freely admit, that the Scam NFTs point to the same digital goods as the BAYC NFTs, and thus are the same product.

#### c. Defendants Used Identical Marks.

Defendants also fail to raise any material dispute as to their use of the BAYC

---

[2] Defendants cite no admissible evidence to support its false allegations as to Yuga Labs' purported lack of enforcement of misuse of its trademarks. *See* CSOF ¶162.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Marks. The record demonstrates that Defendants used unmodified versions of the BAYC Marks in their entirety when creating the Scam NFTs' smart contract, and these marks were then displayed on the Foundation marketplace. CSOF ¶¶25-27, 32. BAYC Marks in their entirety were also displayed on other secondary marketplaces, such as OpenSea and LooksRare. CSOF ¶¶33, 34.

### d. Consumers Were Actually Confused.

As this Court already found, Defendants' promotion and sale of their Scam NFTs is "misleading and confusing to consumers." ECF 178 at 4. Defendants cannot dispute that some consumers were actually confused. To be sure, even if some Twitter user comments suggest that they understood mistaken references to the Scam NFTs, **other comments** show consumers that **were confused**. CSOF ¶51. Defendants cannot create a genuine dispute by averring some of these statements were "jokes," and even so, that "does not remove the basis for the statement—actual confusion among consumers as to the source." *Rockland Mortg. Corp. v. S'holders Funding, Inc.*, 835 F. Supp. 182, 197 n.26 (D. Del. 1993). Nor can Defendants dispute that numerous statements of confusion were made.[3] And their own co-conspirator's initial confusion when describing Defendants' Foundation page (CSOF ¶57) is undisputable evidence of actual initial interest confusion.

Regardless of whether any initial purchase was by someone who was confused, the risk of post-sale confusion is sufficient to establish likelihood of confusion. *See Chanel, Inc. v. Hsiao Yin Fu*, 2017 WL 1079544, at *4 (N.D. Cal. Mar. 22, 2017); *Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, 2012 WL 3072327, at *6 n.8 (C.D. Cal. Apr. 25, 2012); CSOF ¶¶49, 51, 53. **Defendants do not offer any admissible evidence to rebut the actual risk of post-sale confusion.** Post-sale confusion is precisely what occurred when Bloomberg mistakenly referenced the Scam NFT collection as "Bored

---

[3] *See, e.g.*, CSOF ¶52 ("I'm a bit confused here"); ¶53 ("I'm so confused"); ¶54 ("I bought an rr bayc because I thought it was made by yuga"); ¶55 ("i just bought BAYC #4255 but now I'm thinking that it could be fake?").

Ape Yacht Club V3." CSOF ¶49. Worse yet, this mistaken reference endangers even more post-sale confusion by consumers watching the broadcast. Moreover, the risk of post-sale confusion is demonstrated by Yuga Labs' ***undisputed survey*** finding net confusion among consumers up to 40.4%. CSOF ¶¶47, 48; *see also* ECF 178 at 4.[4]

Defendants also raise no genuine dispute to the fact of Defendants' and Mr. Lehman's numerous statements regarding *their awareness* of likely consumer confusion. CSOF ¶¶58, 59, 60, 61, 62.[5] Thus, confusion is likely (and did) occur.

### e. Defendants Intentionally Used the BAYC Marks.

Defendants admit to intentionally using the BAYC Marks "so that the RR/BAYC project would be directly tied to Yuga, BAYC, and specific BAYC NFTs." CSOF ¶69. That ends the inquiry in favor of finding confusion.

### f. Defendants Used the Same Marketing Channels.

Defendants admit their Scam NFTs were sold on OpenSea—where BAYC NFTs are sold. CSOF ¶¶213, 214; *see also* ¶39. Defendants also fail to materially dispute that they promoted their Scam NFTs, rrbayc.com, and Ape Market on Twitter—where Yuga Labs promotes its BAYC NFTs and BAYC Marks in connection with its other goods and services. CSOF ¶¶40, 41.

### g. Authenticating the Source of NFTs Requires a High Degree of Care and Sophistication.

Defendants concede that authenticating NFTs requires sophistication. CSOF ¶63 ("Defendants do not dispute that some skill and research is required"). Defendants also fail to reasonably dispute that various statements were made regarding how reasonable

---

[4] Defendants offer no evidence to support a dispute of the survey methodology. *See* CSOF ¶237 (deposition excerpt does not reference the purported fact). Therefore, Defendants fail to raise a dispute as to the confusion established by the surveys.

[5] Defendants desperately object to Mr. Lehman's declaration as not "authentic." Mr. Lehman offered his testimony under penalty of perjury, and there is no dispute it is authentic and admissible. Defendants' purported dispute only goes to the weight of the evidence, but the Court does not weigh evidence on a motion for summary judgment. *See Hirano v. Williams*, 2017 WL 11632461, at *10 (C.D. Cal. Mar. 24, 2017) ("at the summary judgment stage the court does not make credibility determinations or weigh the evidence").

consumers could be confused because of the required skill.[6] Despite Ripps' inadmissible opinion that "NFT purchasers are almost universally familiar with blockchain technology and the verification tools for NFTs" (CSOF ¶222), likelihood of confusion still exists because of the undisputed similarity of the marks and goods. *See Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 840-41 (C.D. Cal. 2018) ("even if [] consumers are highly sophisticated" that "does not dispute that [consumers] are likely to be confused by the similar marks connected with similar services").[7] Further, Defendants falsely suggest that because Yuga Labs' expert (supported by analysts) could distinguish NFTs on the blockchain (CSOF ¶221), the same should apply to a reasonable consumer. That is wrong. Even a sophisticated consumer viewing a Scam NFT on Etherscan can be confused by the intentionally misleading use of the BAYC Marks in the token tracker, name, and symbol. CSOF ¶¶25-28.

### h. Defendants Are Direct Competitors.

Defendants do not dispute, or even address, the fact that they are direct competitors with Yuga Labs in the NFT market.

### 3. Yuga Labs Is Entitled to Monetary and Injunctive Relief.

Defendants fail to dispute the fact that Yuga Labs has suffered harm to its brand equity, sales, profits, business partnerships, and has had to expend resources to correct the confusion. CSOF ¶¶76-78; *see also* ECF 178 at 5 (holding Yuga Labs suffered "irreparable" harm to its "goodwill, reputation, and brand equity"). Defendants also fail to raise a dispute as to their heinous Twitter posts attacking Yuga Labs and its counsel. CSOF ¶¶102-120. And the undisputed facts show that Defendants' infringement was intentional. Indeed, Defendants admit to using Yuga Labs' BAYC

---

[6] *See, e.g.*, CSOF ¶65 ("these users are too unsophisticated by far"); ¶66 (Lehman stating, and Cahen agreeing, that Defendants' logo alongside Yuga Labs' logo on Ape Market would be "too confusing to the 'average joe'"); ¶61 ("a normal person could be like "I could see where Yuga is coming from, it's confusing how close your logo is to theirs"); ¶67 ("[p]pl will not read the contract").

[7] If these were counterfeit handbags, Defendants effectively argue that consumers must decipher UPC codes and not rely on a prominent trademark to identify source.

Marks. CSOF ¶¶26, 28-32, 215. Thus, Yuga Labs is entitled to monetary and injunctive relief, as well as attorneys' fees for this exceptional case.

### B. Defendants Fail to Raise an Issue of Fact as to the ACPA Claim.

Yuga Labs is entitled to summary judgment on its ACPA claim. Defendants raise no factual dispute as to any of its elements. **First**, Defendants do not dispute that they registered or used the rrbayc.com and apemarket.com domains. *See* Opp. at 14. **Second**, the domains are confusingly similar to Yuga Labs' trademarks. Defendants attempt to distract with third-party "ape" websites that are irrelevant, immaterial, and do not ultimately dispute the fact that Defendants' domains are confusingly similar. *See* CSOF ¶231. Indeed, Defendants' use of the domains was intended to evoke Yuga Labs. CSOF ¶46. **Third**, Defendants' bad faith is unquestionable. Defendants fail to address any of the numerous factors weighing in favor of finding their bad faith intent. *Compare* Mot. at 15-16, *with* Opp. at 14-15. Defendants even concede that they meet two of the nine factors. CSOF ¶¶80 (Factor 2 - undisputed), 81 (Factor 3 - undisputed). The Court may grant summary judgment as to Defendants' bad faith based on these alone. *See Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1035 (C.D. Cal. 2010) (finding bad faith from two factors). And contrary to Defendants' argument, their bad faith intent is appropriately resolved at summary judgment. *See Haas Automation, Inc. v. Denny*, 2013 WL 6502876, at *4-5 (C.D. Cal. Dec. 4, 2013) (finding bad faith intent under ACPA and granting summary judgment).

### C. Defendants Fail to Raise an Issue of Fact as to Their Insufficient *Rogers* Defense.

This Court has repeatedly held that *Rogers* is not a defense available to Defendants here. ECF 62 at 6; ECF 178 at 6. Defendants make no showing to change this conclusion. The "threshold for applying the *Rogers* test is whether the allegedly infringing use is contained in an expressive work." *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016), *aff'd*, 875 F.3d 1192 (9th Cir. 2017). As this Court has noted, the Scam NFTs are "no more artistic

than the sale of a counterfeit handbag." ECF 62 at 7.  Moreover, as Ripps testified, he believes the "***the artwork is an NFT***" —i.e., the smart contract, and ***not*** rrbayc.com or elsewhere.  CSOF ¶84 (emphasis added).  The Scam NFT smart contract contains no expressive content. *See* CSOF ¶¶25-28.  Instead, to confuse consumers, Ripps inputted "Bored Ape Yacht Club" as its name, and "BAYC" as its symbol. *See id.*  The Court's repeated holding that "this action concerns Defendants' ***commercial conduct*** and ***not*** Defendants' free speech rights" is supported by the undisputed facts.  ECF 178 at 6 (emphasis added).  Therefore, the Scam NFTs do not meet the threshold requirement as expressive work, and the Defendants' *Rogers* inquiry is cut off at its feet.  *See also* ECF 62 at 7 (the Court holding even if the Scam NFTs were expressive art, Defendants use of the BAYC Marks was not "artistically relevant" and was "explicitly misleading").

### D. Defendants Fail to Raise an Issue of Fact as to Their Insufficient Nominative Fair Use Defense.

Similarly, Defendants proffer no evidence to disturb this Court's rejection of their nominative fair use defense. *See* ECF 62 at 8.  Defendants' theory that they need to use the BAYC Marks or else "Yuga's BAYC NFT collection would not be identifiable as a target of their criticism" dubiously ignores the obvious fact that they use the BAYC Marks to sell and promote ***their infringing products***, completely separate from any critique of Yuga Labs.  Opp. at 18; CSUF ¶¶ 31-34, 87, 88; ECF 62 at 8.  Thus, Defendants cannot hide their plainly infringing conduct behind a nominative fair use defense. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001) (no nominative fair use defense where defendant "used [plaintiffs'] photograph in its catalog that was intended to sell its goods").  Regardless of any purported "disclaimer" or criticism of Yuga Labs, Defendants concede that their use of the BAYC Marks does ***not*** refer to Yuga Labs' products.  CSOF ¶88 (undisputed); *see New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

Additionally, Defendants' ***repeated*** use of ***multiple*** BAYC Marks exceeds any use reasonably necessary to identify Yuga Labs.  CSOF ¶¶26, 29, 30, 31, 32, 33, 34,

35, 38, 87. Contrary to Defendants' suggestion, this undisputed issue can be decided on summary judgment. *See Summit Ent., LLC v. B.B. Dakota, Inc.*, 2011 WL 13216987, at *9 (C.D. Cal. Nov. 21, 2011) (granting plaintiff's summary judgment motion where marks used beyond what was "reasonably necessary"). And Defendants cannot show that they did "nothing" to suggest sponsorship or endorsement by Yuga Labs. *Cf.* CSOF ¶46. Accordingly, the undisputed facts show Defendants cannot meet their burden of proving this defense.

### E. Defendants Fail to Raise an Issue of Fact as to Their Insufficient Unclean Hands Defense.

Defendants misapply the unclean hands defense to posit unsubstantiated allegations of generalized wrongdoing wholly unrelated this case. *See S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014) (alleged misconduct must bear an "immediate and necessary relation" to plaintiff's acquisition of its rights). Neither of Defendants' theories relate directly to the claims at issue, nor was either Defendant even affected by the alleged activity.

***First***, Defendants cannot dispute that Yuga Labs acquired the BAYC Marks and became well-known ***before*** many celebrities publicly declared their acquisition of a BAYC NFT. CSOF ¶91. The popularity of BAYC NFTs was publicly noted as early as May 2021. *See id.* Defendants' anecdote about Snoop Dogg's purchase of a BAYC NFT, tweet about it, music video, and MTV Video Music Awards performance (Opp. at 19) prove that all of these were done ***after*** the BAYC NFTs (and the BAYC Marks) already gained popularity. CSOF ¶¶253, 254. Moreover, Defendants fail to provide evidence that Yuga Labs did not disclose Snoop Dogg's affiliation with them; indeed, Yuga Labs did—many times and in many ways, all of which can be found by a simple Google search. *See, e.g.*, CSUF ¶90.

***Second***, BAYC NFTs are not securities, and thus Yuga Labs did not engage in any illegal sales of BAYC NFTs (*see* Opp. at 5) or illegal promotion of them (*see* Opp. at 20). A security requires "(1) an investment of money (2) in a common enterprise (3)

with the expectation of profit from the essential entrepreneurial or managerial efforts of others." *Friel v. Dapper Labs, Inc.*, 2023 WL 2162747, at *8 (S.D.N.Y. Feb. 22, 2023). Defendants fail to offer evidence that meets these criteria, let alone evidence sufficient to take this spurious theory to trial.

### F. Defendants Fail to Raise an Issue of Fact as to Their Counterclaim Under 17 U.S.C. § 512(f).

Defendants cannot meet their burden of proof at trial on their counterclaim.[8]

#### 1. The Trademark Takedown Notices Are Not Actionable.

Section 512 liability attaches only to a material misrepresentation of *copyright infringement* in a takedown request **under Section 512(c)(3) of the DMCA**. *See* 15 U.S.C. § 512(f); *Rock River Communications v. Universal Music Grp.*, 2011 WL 1598916, at *13, *16 (C.D. Cal. Apr. 27, 2011) (granting summary judgment against Section 512(f) claim because notice was "not a DMCA take-down notice pursuant to section 512(c)"). For a DMCA takedown notice to have any legal effect, it must comply substantially with the elements under 512(c)(3)(A). *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007).

Defendants admit that the three successful takedown notices were "based solely on ***trademark***, not ***copyright***" infringement, and thus lack an element of 512(c)(3)(A)— none identified a copyrighted work as allegedly infringed. Opp. at 21; *see* 17 U.S.C. § 512(c)(3)(A)(ii); CSOF ¶¶98, 99, 242, 246, 248. This dispositively ends the 512(f) inquiry. "A notification is not a DMCA notice under § 512 if the above elements are not 'substantially' included. [§ 512(c)(3)(A)]. And without a DMCA notice, § 512(f) does not apply." *Int'l Unions, Security Police and Fire Professionals of America v. Maritas*, 2023 WL 2726030, at *12 (E.D. Mich. Mar. 30, 2023) (dismissing § 512(f)

---

[8] Defendants admit that only four of Yuga Labs' takedown notices ever resulted in a takedown of content (three were trademark; one was a DMCA). CSOF ¶¶92, 99. Therefore, no other notice at issue is actionable. *See Moonbug Enter. Ltd. v. Babybus (Fujian) Network Tech. Co.*, 2022 WL 580788, at *7 (N.D. Cal. Feb. 25, 2022) (a § 512(f) claim must allege "a takedown notice ***that led to a takedown***") (emphasis added).

claim because "[m]issing from the copyright note" was the identification of "copyrighted work[s] claimed to have been infringed"); see also *Twelve Inches Around Corp v. Cisco Sys., Inc.*, 2009 WL 928077, at *3 (S.D.N.Y. Mar. 12, 2009).[9]

Moreover, the resulting takedowns were not ***the result of*** any misrepresentations of copyright infringement, but of allegations of Defendants' actual and obvious trademark infringement. See CSOF ¶¶99-101.

### 2. The One DMCA Takedown Notice Did Not Misrepresent a Copyright and Had a Good Faith Belief.

Defendants admit that Yuga Labs sent only one successful DMCA notice. Opp. at 22; CSOF ¶92. As to this single notice, Defendants have no evidence showing any misrepresentation by Yuga Labs. *See* Opp. at 22. On this basis alone their Section 512(f) claim fails for this DMCA notice.

Likewise, Defendants cannot prove that Yuga Labs submitted this DMCA notice in bad faith (because it did not). Yuga Labs unequivocally owns the copyright in the Ape Skull Logo, which was drawn and developed by a third-party designer for Yuga Labs and undoubtedly meets the low bar of creativity required to gain copyright protection. CSOF ¶¶5, 96; see *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). And contrary to Defendants' misguided assertions, registration of a copyright is not required to ***own*** one. *See* Opp. at 22; *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881, 887 (2019). Yuga Labs had a good faith belief of its copyright in the Ape Skull logo (which Defendants purposely used on their Foundation sales page before it was taken down), and Defendants offer no evidence to satisfy their burden on this issue.

## III. CONCLUSION

The Court should grant Yuga Labs' Motion for Summary Judgment.

---

[9] Defendants' reliance on *Crossfit, Inc. v. Alvies* is inapposite because the court assumed for purposes of the motion to dismiss that the takedown was a DMCA notice. 2014 WL 251760, at *2 (N.D. Cal. Jan. 22, 2014).

Dated: April 3, 2023                    FENWICK & WEST LLP

By: */s/ Kimberly Culp*
Kimberly Culp
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Yuga Labs, Inc., certifies that this brief contains 4,632 words, which:

  X   complies with the word limited of L.R. 11-6.1.

Dated: April 3, 2023                    FENWICK & WEST LLP

By: */s/ Kimberly Culp*
Kimberly Culp
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.