ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>    Defendants and Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF YUGA LABS, INC.'S STATUS REPORT**<br><br>Mag. Judge: Hon. John E. McDermott<br>Motion Hearing Date: N/A<br>Motion Hearing Time: N/A<br>Discovery Cutoff Date: April 3, 2023<br>Pre-Trial Conference Date: June 9, 2023<br>Trial Date: June 27, 2023 |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:  310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA  22314
Telephone:  202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

Pursuant to the Court's March 14, 2023 Order (Dkt. 145), Plaintiff Yuga Labs, Inc. ("Yuga Labs") respectfully submits this Status Report. Defendants have failed to comply with the Court's Order in several material respects by unjustifiably withholding highly relevant materials, as described below. Yuga Labs respectfully requests that the Court grant all relief it deems appropriate, or set a hearing date to resolve the issues described herein.

On March 14, 2023, the Court ordered Defendants to "produce any remaining relevant, nonprivileged documents responsive to categories 1, 4, 5, 6 and 7 in Yuga's Joint Stipulation (Dkt. 109-1 at 2, 7-9) **within 7 days of this Order**." Dkt 145 at 2 (emphasis in original). Categories 1 and 7 in that list are "Text messages between Ripps and Cahen" and "Private Twitter direct messages between Defendants," respectively. The Court's order came in response to Defendants' withholding of ***all pre-litigation communications*** between them based on a vaguely asserted privilege objection (despite no assertion that they had engaged counsel at any point pre-litigation). In its March 14 Order, the Court stated: "The Court takes a dim view of Defendants' blanket withholding of pre-litigation communications between Ripps and Cahen (category 1) in the absence of counsel. . . . The Court regards the communications between Ripps and Cahen as critical documents, and will not hesitate to order in camera review if Defendants continue their blanket withholding of those documents." *Id.* at 3. The Court's Order was, in part, a culmination of the Defendants' prior failures to comply with discovery obligations. The Court had previously ordered Ripps on January 10, 2023 to produce "all relevant non-privileged documents," Dkt. 79, which he verified under penalty of perjury that he did; that verification was false, as Defendants subsequently produced relevant, non-privileged documents on March 15, March 21, and March 29.[1]

---

[1] Defendants have not provided any reason this information was not provided prior to Ripps' verification. These productions included many responsive documents and communications (e.g., text messages and Twitter direct messages) from applications that Defendants previously alleged to have searched.

Consistent with this trend, Defendants also did not comply with the Court's March 14 Order. Defendants declared under penalty of perjury on March 21, 2023, that they each "produced all relevant, nonprivileged documents in categories 1, 4, 5, 6 and 7 in my custody, control or possession." Dkts. 157, 158. They have not. Most critically, they have unjustifiably withheld *every single communication* between them prior to May 14, 2022 — the date of the initial mint of the counterfeit NFTs. *See* Declaration of Ethan Thomas ("Thomas Decl.") Exhibit 1. In other words, Defendants have unilaterally decided to categorically withhold all communications regarding the planning of their infringing products. Yuga Labs raised this issue to Defendants' attention the day after their compliance with the March 14 Order was due, and their response was that "the RR/BAYC Project began in mid-May and so it should be no surprise that texts relevant to the RR/BAYC Project began at a similar time." Thomas Decl. Exhibit 2. This response is not credible, and it is inconsistent with Defendants' own admissions that, for instance, (1) Defendants began work on their infringing "Ape Market" NFT marketplace in December 2021 and (2) Defendants allege that they began their campaign against Yuga Labs "[a]s early as November 2021." Answer and Counterclaims (Dkt. 65) ¶ 45. Moreover, Defendants continue to resist producing their communications between them by now claiming that "nearly all the communications occurred on Discord," but they have produced no Discord communications whatsoever between the two of them directly (notwithstanding that discovery has shown that both Defendants communicated extensively with others on Discord). Additionally, Defendants continue to say that there are no "relevant, *nonprivileged* materials" they are withholding (emphasis added) — yet they have failed to identify a single assertion of privilege over such communications on a privilege log.

Defendants continue to conceal other relevant evidence as well, which Yuga Labs continues to learn about through third-party discovery and statements. For instance, recent public information reveals the existence of Twitter messages

involving Defendants about Yuga Labs that have not been disclosed. On the same day that Defendants submitted their declarations to the Court, they released and began promoting a document compiled to — in the words of a collaborator — "bring down [Yuga Labs]." Thomas Decl. Exhibits 1, 3. This collaborator — someone Defendants disclosed in their initial disclosures as an individual likely to have discoverable information — publicly acknowledged the existence of yet another source of information Defendants have wrongfully concealed entirely. In an exchange on Twitter with Ripps, he referenced a "group chat" that concerned Yuga Labs. *Id.* The tweet also mentions Cahen as a participant in that same group chat. These are messages between Defendants on Twitter (Category 7 of the Court's Order), and they are not available from any source other than Defendants. Thomas Decl. Exhibit 3 (stating Defendants removed the third party from the chat so that he could no longer access the messages). Ripps made comments about Yuga Labs in this same public Twitter thread, which he then deleted but has failed to produce. *See, e.g.*, Thomas Decl. Exhibit 4. These communications are plainly responsive to Yuga Labs' RFP No. 1 ("All documents and communications concerning Yuga Labs"), and they are relevant to Defendants' intentional infringement, their purported artistic motives, and whether this is an exceptional case under the Lanham Act. Defendants deny that these messages exist. Thomas Decl. Exhibit 2. But, given Defendants' numerous false representations to date about the existence of relevant discovery, which Yuga Labs has disproven through costly third-party discovery only for Defendants to later acknowledge and produce, this response is inadequate and not credible.

Yuga Labs requested significant remedies in its motion for sanctions (Dkt. 109), which the Court declined to grant at the time following Defendants' supplemental productions (Dkt. 145). Defendants have continued to make clear however that they will sidestep the Court's orders by hiding the ball and resisting discovery, and alternative options to address that noncompliance have again proven

inadequate. Discovery has now closed, Yuga Labs' motion for summary judgment is pending, and despite ample opportunity to come into compliance before the close of discovery, Defendants (1) have still withheld their most critical documents that likely show their intentional infringement and knowledge that consumers would be confused and (2) have not provided any privilege log to support their bald assertion of privilege.

Based on the category of documents Defendants refuse to produce — including communications between Defendants leading up to the public release and sale of their counterfeit NFTs — an appropriate adverse inference would be that Defendants (1) intended to infringe Yuga Labs' BAYC Marks, (2) knew that their use of the BAYC Marks was likely to cause confusion among Yuga Labs' consumers, and (3) knew that their use of the BAYC Marks was not expressive or artistic. In the alternative, Yuga Labs respectfully requests an alternative appropriate remedy the Court deems proper.

Dated: April 4, 2023          FENWICK & WEST LLP

By: */s/ Ethan M. Thomas*
    Ethan M. Thomas
    Attorneys for Plaintiff and
    Counterclaim Defendant
    YUGA LABS, INC.