UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>    v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>    Defendants and<br>    Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**[PROPOSED] STATEMENT OF DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     April 17, 2023<br>Time:    1:30 p.m.<br>Courtroom: 7A<br>Judge:   Honorable John F. Walter<br><br>Trial Date:  June 27, 2023 |

On March 15, 2023, Plaintiff Yuga Labs ("Yuga Labs") filed a Motion for Summary Judgment ("Motion"). On March 27, 2023, Defendants Ryder Ripps and Jeremy Cahen ("Defendants") filed their Opposition. On April 3, 2023, Yuga Labs filed its Reply. After considering the moving, opposing, and reply papers and the arguments therein, the Court **GRANTS** summary judgment on the following issues in favor of Yuga Labs:

## I. BACKGROUND

In April 2021, Yuga Labs created one of the world's most well-known and successful NFT collections, known as the Bored Ape Yacht Club. Combined Statement of Facts ("CSOF") ¶ 13. Subsequently, in May 2022, Defendants began to use Yuga Labs' BAYC Marks[1] to promote and sell their RR/BAYC NFTs. *Id.* ¶ 24, 215. The RR/BAYC NFTs point to the exact same images underlying Yuga Labs' BAYC NFTs, are marketed using the exact same marks Yuga Labs uses to market its BAYC NFTs and with the same NFT IDs ("Ape IDs"), and are sold on the exact same marketplaces Yuga Labs' BAYC NFTs are sold. *Id.* ¶¶ 22, 29-34, 37, 41. Defendants also used the BAYC Marks to promote their coming "Ape Market" NFT marketplace, which also used the BAYC Marks. *Id.* ¶¶ 30, 44-46. Additionally, Defendants registered and used the web domains rrbayc.com and apemarket.com to promote and sell the RR/BAYC NFTs.

On July 24, 2022, Yuga Labs filed a Complaint, alleging: (1) false designation of origin (15 U.S.C. § 1125(A)); (2) false advertising (15 U.S.C. § 1125(A)); (3) cybersquatting (15 U.S.C. § 1125(D)); (4) common law trademark infringement; (5) common law unfair competition; (6) unfair competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); (7) false advertising (Cal. Bus. & Prof. Code §§ 17500 *et seq.*); (8) unjust enrichment; (9) conversion; (10) intentional interference with prospective economic advantage; and (11) negligent interference with prospective economic advantage.

Defendants have raised several defenses to Yuga Labs' claims, including free speech under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), nominative fair use, and unclean hands; as well as various counterclaims.[2]

---

[1] For purposes of this Order, the "BAYC Marks" are Yuga Labs' BORED APE YACHT CLUB, BAYC, BORED APE, the BAYC Logo, the BAYC BORED APE YACHT CLUB Logo, and the Ape Skull Logo.

[2] On March 17, 2023, the Court granted Yuga Labs' Special Motion to Strike all of Defendants' state law counterclaims, and the Court granted Yuga Labs' Motion to Dismiss all of Defendants' federal counterclaims, except their counterclaim for

Yuga Labs moved for summary judgment on its First Cause of Action for False Designation of Origin under 15 U.S.C. § 1125(a) (i.e., trademark infringement), thus entitling Yuga Lags to damages and injunctive relief in this exceptional case. Yuga Labs also moved for summary judgment or, in the alternative, summary adjudication of a part of each claim or defense, on its Third Cause of Action for Cybersquatting under 15 U.S.C. § 1125(D); against Defendants on their Second (First Amendment), Third (Fair Use), and Seventh (Unclean Hands) Affirmative Defenses; and against Defendants on their First Counterclaim (Knowing Misrepresentation of Infringing Activity under 17 U.S.C. § 512(f)).

## II.   LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden of demonstrating the absence of a genuine issue of fact, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   DISCUSSION

### A.   Yuga Labs is Entitled to Summary Judgment on Its False Designation of Origin Claim.

To prevail on a claim for false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion. *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009). Yuga Labs has proven that there is no genuine dispute of material fact with respect to each of these and, therefore, is entitled to summary judgment on its trademark infringement claim.

---

Knowing Misrepresentation of Infringing Activity under 17 U.S.C. § 512(f). ECF 156.

The only issue that will remain for trial on this claim is the scope of Yuga Labs' damages and injunctive relief.

### 1. Yuga Labs' Ownership in the BAYC Marks

"[A]n unregistered trademark can be enforced against would-be infringers." *Matal v. Tam*, 582 U.S. 218, 225 (2017). "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Halicki Films v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008) (citation omitted). In this case, Yuga Labs started using the BAYC Marks in April 2021 and before Defendants began using the same. *Compare* CSOF ¶ 2 *with* ¶ 24. Therefore, there is no dispute that Yuga Labs has priority of use in the BAYC Marks.

The BAYC Marks are also valid, protectable, and have accrued goodwill among consumers. The BAYC Marks are inherently distinctive as the concepts of a "Bored Ape Yacht Club," "BAYC," an Ape Skull, or even an Ape itself, do not evoke an NFT collection or the products and services related to it, but require "imagination on the consumer's part." *CG Roxane v. Fiji Water*, 569 F. Supp. 2d 1019, 1030 (N.D. Cal. 2008). And Yuga Labs has spent tens of millions of dollars to associate these marks with its products. CSOF ¶ 11. Indeed, Defendants have admitted that the BAYC Marks identify Yuga Labs. *Id.* ¶ 70, 215.

Further, there is no genuine dispute as to Yuga Labs' ownership in the BAYC Marks. *First*, trademark protection extends to an NFT and the digital image sold with it. *See Hermes Int'l v. Rothschild*, No. 22-cv-384, 2023 WL 1458126, at *5-6 (S.D.N.Y. Feb. 2, 2023). *Second*, the record demonstrates that Yuga Labs has used, and continues to use, the BAYC Marks to market and sell its other goods and services. *Third*, Yuga Labs has not abandoned or transferred its trademark rights in the BAYC Marks. Yuga Labs is not required to police unlicensed use of its BAYC Marks, and it has not licensed its BAYC Marks to purchasers of BAYC NFTs. *See San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865, 2017 WL 4227000, at *12 (S.D. Cal. Sept. 22, 2017), *aff'd*, 807 F. App'x 674 (9th Cir. 2020) ("[d]efendants' attempt to

argue abandonment through third party use or failure to police . . . are unquestionably meritless").

Accordingly, the Court concludes that Yuga Labs owns the valid and protectable BAYC Marks.

### 2. The Likelihood of Confusion

"The test for likelihood of confusion is whether a reasonably prudent consumer in the market place is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (internal quotations omitted). The Ninth Circuit evaluates eight non-exclusive factors in determining whether there is a likelihood of confusion and infringement: (1) the strength of the plaintiff's mark; (2) the proximity or relatedness of the parties' goods; (3) the marks' similarity in appearance, sound, and meaning; (4) evidence of actual confusion; (5) evidence of the defendants' intention in selecting and using the allegedly infringing name; (6) the degree to which the parties' marketing channels converge; (7) the type of goods and the degree of care customers are likely to exercise in purchasing them; and (8) the likelihood that the parties will expand their product lines. *AMF v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). In cases involving claims of trademark infringement on the Internet, the Ninth Circuit has also affirmed the "internet troika"—(i) similarity of marks; (ii) relatedness of services; and (iii) simultaneous use of the Internet as a marketing channel—are of greater importance. *Internet Specialties West v. Milon-DiGiorgio Enters.*, 559 F.3d 985, 989 (9th Cir. 2009).

#### a. Strength of the BAYC Marks

Courts evaluate a trademark's strength by its (1) conceptual strength (the distinctiveness of the mark), and (2) commercial strength (the strength the mark acquires through use in the marketplace). *GoTo.com v. The Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000); *La Quinta Worldwide v. Q.R.T.M.*, 762 F.3d 867, 874-875 (9th Cir. 2014). Yuga Labs has proven the BAYC Marks are both conceptually and

commercially strong, and Defendants do not dispute this factor. CSOF ¶¶ 8-15. Accordingly, this factor weighs in favor of finding a likelihood of confusion.

### b. Proximity or Relatedness of the Goods

There is no dispute that Defendants are selling the exact same product—NFTs that point to Yuga Labs' BAYC Images. CSOF ¶¶ 22-23; see *Hermes*, 2023 WL 1458126, at *5 ("Individuals do not purchase NFTs to own a 'digital deed' divorced from any other asset: they buy them precisely so that they can exclusively own the content associated with the NFT."). Defendants also marketed their RR/BAYC NFTs using the same corresponding BAYC Ape ID number used by Yuga Labs for the authentic BAYC NFTs, and some consumers ordered their RR/BAYC NFT by selecting a BAYC NFT Ape ID number. CSOF ¶¶ 36-37.

Accordingly, this factor weighs heavily in favor of finding a likelihood of confusion. See *Monster Energy Co. v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1354 (E.D. Cal. 2019) (where "products are identical . . . there is no genuine dispute of material fact that the products are related" and favors finding likelihood of confusion).

### c. Similarity of the Marks

"[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com*, 202 F.3d at 1205-1206. Defendants admit that they intentionally used identical marks to sell their RR/BAYC NFTs, and the record demonstrates there is no dispute of this fact. CSOF ¶¶ 69-70, 215. For example, Defendants' NFT contract name and symbol, as shown in the Etherscan token tracker, are exact copies of Yuga Labs' Bored Ape Yacht Club and BAYC Marks. *Id.* ¶¶ 25-27. Defendants also sold the RR/BAYC NFTs on Foundation alongside the display of unmodified versions of the BAYC Marks. *Id.* ¶¶ 32.

Defendants' occasional, minor change to the marks, such as by tacking on "RR" before "BAYC," does not preclude a finding of infringement. See J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:20 (5th ed. 2018) ("To find trademark infringement only by exact identity and not where the junior user

STATEMENT OF DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    6    Case No. 2:22-cv-04355-JFW-JEM

makes some slight modification would 'be in effect to reward the cunning infringer and punish only the bumbling one.'"). Consumers do not necessarily know what "RR" means and could reasonably assume it is a new product or co-branding, which Yuga Labs has done in the past. CSOF ¶ 14.

Accordingly, this factor also weighs heavily in favor of finding a likelihood of confusion.

### d. Actual Confusion

"[A]ctual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act. Indeed, proving actual confusion is difficult." *Network Automation v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) (cleaned up) (citations omitted). But in this case, the record demonstrates actual, initial interest and post-sale confusion. *See Interstellar Starship Servs. v. Epix*, 184 F.3d 1107, 1110 (9th Cir. 1999); *ACI Int'l. v. Adidas-Salomon*, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005).

For example, the record shows at least some comments on Twitter indicating consumer confusion between Yuga Labs' authentic BAYC NFTs and Defendants' RR/BAYC NFTs. *See, e.g.*, CSOF ¶¶ 52, 54, 55. Defendants cannot create a genuine dispute by averring some of these statements were "jokes," and even so, that "does not remove the basis for the statement—actual confusion among consumers as to the source." *Rockland Mortg. Corp. v. S'holders Funding, Inc.*, 835 F. Supp. 182, 197 n.26 (D. Del. 1993).

Regardless of whether any initial purchase was by someone who was confused, the risk of post-sale confusion is sufficient to establish likelihood of confusion. *See Chanel, Inc. v. Hsiao Yin Fu*, No. 16-cv-02259, 2017 WL 1079544, at *4 (N.D. Cal. Mar. 22, 2017); *Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, No. CV 10–8394, 2012 WL 3072327, at *6 n.8 (C.D. Cal. Apr. 25, 2012); CSOF ¶¶ 49. Defendants do not offer any admissible evidence to rebut the actual risk of post-sale confusion. This is precisely what occurred when Bloomberg mistakenly referenced the RR/BAYC NFT

collection as "Bored Ape Yacht Club V3." *Id*. Moreover, the risk of post-sale confusion is demonstrated by Yuga Labs' unrebutted survey finding net confusion among consumers up to 40.4%. *Id*. ¶¶ 47, 48.[3]

The survey evidence is supported by other anecdotes of confusion in the record. For example, Defendants' software developer, Ryan Hickman, initially stated that Defendants' Foundation sales page "Looks to be Bored Ape Yacht Club." *Id*. ¶ 57. But it was not the official Bored Ape Yacht Club page. Mr. Hickman was confused. Similarly, in a text exchange between Defendants' software developer Thomas Lehman and a third party regarding the RR/BAYC NFTs, the third party stated "This is quite crazy definitely some people will buy thinking they are buying originals!" *Id*. ¶ 59. Based on the overwhelming evidence of confusion in the record, this factor weighs in favor of finding a likelihood of confusion.

### e. Defendants' Intent in Using the BAYC Marks

In this case, Defendants admit that they knowingly and intentionally used the BAYC Marks. CSOF ¶¶ 69, 70. Because Defendants knowingly and intentionally used Yuga Labs' BAYC Marks, and in the absence of any contrary evidence, the Court can only conclude that Defendants used marks to confuse customers. *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 1002 (C.D. Cal. 2002) (holding that "[k]nowing adoption of a mark closely similar to another is a sound basis for inferring an intent to deceive").

The record also shows that Defendants intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga Labs' branding. For example, Defendants

---

[3] Defendants object that Yuga Labs' survey expert Laura O'Laughlin lacks "personal knowledge" to attest to what OpenSea, Foundation, or Etherscan shows to consumers. ECF 163-2. Defendants do not challenge Ms. O'Laughlin's qualifications as a survey expert. *See generally id*. Ms. O'Laughlin is entitled to rely on facts in the record (Fed. R. Evid. 703) and each party submitted voluminous evidence of what consumers would see on OpenSea, Foundation, and Etherscan. Therefore, Defendants' objection goes to the weight and not the admissibility of Ms. O'Laughlin's opinions. Because the Court does not weigh evidence on a motion for summary judgment and because Defendants introduced no evidence to rebut Ms. O'Laughlin's opinion, there is no dispute that the net confusion among consumers was up to 40.4%. CSOF ¶¶ 47, 48.

listed the RR/BAYC NFTs on rrbayc.com under the very same Ape IDs associated with BAYC NFTs, despite having their very own unique and different ID number. CSOF ¶ 37.

Accordingly, this factor weighs in favor of finding a likelihood of confusion.

### f. Similarity of Marketing Channels

When an alleged infringer uses the same marketing channels to sell their infringing products, this factor weighs in favor of a finding of likelihood of confusion. *See Rebelution v. Perez*, 732 F. Supp. 2d 883, 896-897 (N.D. Cal. 2010). In this case, there is no dispute that Defendants promoted and sold their RR/BAYC NFTs through the same online NFT marketplaces (e.g., OpenSea and x2y2) that Yuga Labs promoted and sold its BAYC NFTs. CSOF ¶¶ 33, 34, 213, 214. Defendants also promoted the RR/BAYC NFTs on Twitter, where Yuga Labs also promotes its products. *Id.* ¶ 41.

Accordingly, this factor weighs in favor of finding a likelihood of confusion.

### g. Type of Goods and the Degree of Customer Care

Likelihood of confusion is determined on the basis of a "reasonably prudent consumer." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). In this case, confusion is likely given the complexity and required sophistication to understand the blockchain and verify provenance. CSOF ¶ 64. Defendants concede that authenticating NFTs requires specialized knowledge. *See id.* ¶ 63 ("Defendants do not dispute that some skill and research is required"); *see also* ¶ 58 (Lehman testifying: "purchasers of RR/BAYC NFTs on Foundation.app might think they were buying authentic BAYC NFTs if they did not conduct further research").

Because of the sophisticated knowledge required, Defendants knew of the likely confusion their RR/BAYC NFTs would cause. *See, e.g., id.* ¶ 65 (Cahen stating: "these users are too unsophisticated by far"); ¶ 67 (Lehman stating: "[p]pl will not read the contract"); ¶ 66 (Lehman stating, and Cahen agreeing that use of Defendants' logo alongside Yuga Labs' logo on Ape Market would be "too confusing to the 'average

joe'") and ¶ 46 (Defendants admitting they promoted RR/BAYC and Ape Market using the BAYC Marks by displaying an image of Ape Market showing Defendants' logo alongside Yuga Labs' logos); ¶ 66 (Lehman stating to Cahen: "a normal person could be like 'I could see where Yuga is coming from, it's confusing how close your logo is to theirs.'").

Defendants were aware that at least some purchasers of their RR/BAYC NFTs would have difficulty identifying their products as illegitimate. Accordingly, this factor weighs in favor of finding a likelihood of confusion. *See Brookfield*, 174 F.3d at 1060 ("confusion may often be likely even in the case of expensive goods sold to discerning customers").

### h. Likelihood of Expansion of Product Lines

Defendants also do not dispute that they directly compete with Yuga Labs. CSOF ¶¶ 22, 32-34, 213, 214. Accordingly, this factor weighs in favor of finding a likelihood of confusion. *Network Automation*, 638 F.3d at 1153 ("that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing").

### i. Other Relevant Factors

Survey reports are also probative of likelihood of confusion. *See Monster v. Dolby Lab. Licensing*, 920 F. Supp. 2d 1066, 1072 (N.D. Cal. 2013); *see also Sleekcraft*, 599 F.2d at 348 n.11 (noting the eight *Sleekcraft* factors are "not exhaustive. Other variables may come into play depending on the particular facts presented."). In this case, Yuga Labs' survey expert found that there was a net confusion rate of 40.4% "for consumers who saw the BAYC Marks used in connection with the at-issue RR/BAYC NFT collection on the Foundation marketplace." CSOF ¶ 48. She likewise found a net confusion rate of 20% "for consumers who saw the BAYC Marks used in connection with the at-issue RR/BAYC NFT collection on the OpenSea marketplace." *Id.* ¶ 47. These results are unrebutted.

Accordingly, the survey evidence favors a likelihood of confusion. *See Warner Bros. Ent. v. Global Asylum*, No. CV 12–9547, 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) (net confusion levels of 16 to 24 percent supported finding likelihood of confusion).

### j. Balancing the *Sleekcraft* Factors

The Court concludes that the *Sleekcraft* factors weigh so heavily in favor of Yuga Labs that a jury can only conclude that there is a likelihood of confusion. Although Defendants argue that consumers who purchased directly from them were not confused, that argument is unavailing where they fail to rebut the evidence that consumers on at least Foundation and OpenSea were likely confused. Defendants offer no evidence showing a material factual dispute that consumers on these marketplaces were likely confused. Accordingly, the Court concludes that Yuga Labs is entitled to summary judgment on this issue.

### 3. Yuga Labs is Entitled to Monetary and Injunctive Relief

As a result of the confusion caused by Defendants' infringement, the Court finds that Yuga Labs is entitled to monetary remedies in an amount to be proven at trial. *See Adray v. Adry-Mart*, 76 F.3d 984, 989 (9th Cir. 1995); *Monster Energy Co. v. Integrated Supply Network*, 533 F. Supp. 3d 928, 933 (C.D. Cal. 2021); CSOF ¶¶ 76-78. The Court also finds that Yuga Labs is entitled to injunctive relief for the irreparable harm to its BAYC brand. *Phillip Morris USA v. Shalabi*, 352 F. Supp. 2d 1067, 1074-1075 (C.D. Cal. 2004); 15 U.S.C. §1116(a).

Additionally, the Court finds that Yuga Labs is entitled to enhanced damages under 15 U.S.C. § 1117 and an award of its attorneys' fees because this is an exceptional case of intentional infringement. Defendants' conduct supporting such enhanced damages and attorneys' fees include the intentional infringement of Yuga Labs' BAYC Marks and Defendants' egregious harassment during the course of this litigation of Yuga Labs and its counsel, which harassment Defendants do not dispute. CSOF ¶¶ 102, 104, 106; *Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church*

*of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004) ("no difficulty" holding defendant's harassment and racist remarks towards plaintiff and their counsel during litigation made the case exceptional).

### B. Yuga Labs is Entitled to Summary Judgment on its ACPA Claim

To prevail on a claim under the Anti-cybersquatting Consumer Protection Act ("ACPA") a plaintiff must show that the defendant (1) registered, trafficked in, or used a domain name, (2) that is confusingly similar to the plaintiff's trademark, and (3) had a bad faith intent to profit from that domain name. *See* 15 U.S.C. § 1125(d)(1)(A); *DSPT Int'l v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010). The Court finds Yuga Labs has shown all three elements and is entitled to summary judgment on this claim.

*First*, Defendants registered, used, and continue to use the domain names https://rrbayc.com/ and https://apemarket.com/. CSOF ¶¶ 29-30.

*Second*, "[i]n determining whether there is confusing similarity under the ACPA, courts compare the plaintiff's mark with the name of the website." *Super-Krete Int'l v. Sadleir*, 712 F. Supp. 2d 1023, 1031 (C.D. Cal. 2010).

In this case, the Court finds Defendants' domain names to be confusingly similar to Yuga Labs' trademarks. The domain names incorporate Yuga Labs' trademarks: https://rrbayc.com consists of only Yuga Labs' "BAYC" trademark (and corresponding domain, https://bayc.com) with two added letters ("rr"); and https://apemarket.com uses Yuga Labs' "BORED APE", "APE", and other "APE-based" trademarks and adds the descriptive word "market." *See* CSOF ¶¶ 16-18, 83. These additions do not change the fact that the domain names are confusingly similar to Yuga Labs' trademarks. *See Haas Automation v. Denny*, No. 2:12–CV–04779, 2013 WL 6502876, at *3 (C.D. Cal. Dec. 4, 2013) (finding confusing similarity where domain names all contained the plaintiff's mark "'haas' plus some additional term or terms," such as haasplus.com, haasmillparts.com).

*Third*, "[i]n determining whether a person has a bad faith intent, a court may consider the nine non-exhaustive factors listed in 15 U.S.C. § 1125(d)(1)(B)." *United*

*Artists v. United Artist Studios*, No. CV 19-828, 2020 WL 4369778, at *42 (C.D. Cal. July 7, 2020).

In this case, the Court finds Defendants meet nearly all the factors. Defendants have no trademark or other intellectual property rights in the domain names (Factor 1). The domain names do not consist of the legal names of the Defendants (Factor 2). CSOF ¶¶ 79-80. Defendants did not have a *bona fide* prior use of the domains since they registered them *after* Yuga Labs launched its BAYC NFTs (Factor 3). *Id.* ¶¶ 2, 24, 81. Defendants' websites were not for a noncommercial or fair use purpose (Factor 4). ECF 62 at 8; *see* CSOF ¶¶ 43-46. Defendants registered their domains for commercial gain to divert customers from purchasing BAYC NFTs (Factor 5). CSOF ¶¶ 43-46. And even if Defendants did not intend to divert customers, the Court finds such intent here because Defendants registered domain names with only minor variations of the Yuga Labs' marks (Factor 6). *GoPets v. Hise*, 657 F.3d 1024, 1033 (9th Cir. 2011); *Super-Krete*, 712 F. Supp. 2d at 1033 (finding bad faith where "[d]efendants only interest in the domain name is to divert customers who may have been searching for [p]laintiff's mark to their own commercial website"). Additionally, Defendants concealed their registration of the domain names through use of a proxy registration service (Factor 7). CSOF ¶ 82. Further, Defendants registered multiple domain names—https://rrbayc.com, https://apemarket.com, and pages within OpenSea and Foundation—knowing that they are identical or confusingly similar to the distinctive BAYC Marks (Factor 8).

Defendants even concede that they meet two of the nine factors. *Id.* ¶ 80 (Factor 2 - undisputed); ¶ 81 (Factor 3 - undisputed), which is sufficient for the Court to enter summary judgment against them. *Super-Krete*, 712 F. Supp. 2d at 1035 (ruling the safe harbor defense inapplicable where defendant's conduct met two of the nine factors of bad faith). Given that Defendants meet eight out of the nine factors for bad faith, they are not entitled to the ACPA's safe harbor defense. *See Lahoti v. VeriCheck*, 586 F.3d 1190, 1203 (9th Cir. 2009) ("A defendant who acts ***even partially*** in bad faith in

registering a domain name is not, as a matter of law, entitled to benefit from the ACPA's safe harbor provision.") (cleaned up) (emphasis added). Accordingly, the Court concludes that Yuga Labs is entitled to summary judgment on this issue.

Because Defendants violated the ACPA as a matter of law and have no applicable defenses, the Court finds that Yuga Labs is entitled to statutory damages and injunctive relief. The ACPA provides for statutory damages in an amount of $1,000 to $100,000 per domain name, "as the court considers just." 15 U.S.C. § 1117(d); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1108 (S.D. Cal. 2012). Here, the Court determines that damages for $100,000 for each of the two domain names at issue is warranted because Defendants' actions were egregious.

### C. Defendants' *Rogers* Defense Is Not Viable.

The Ninth Circuit applies the Rogers test to "expressive works" where use of the mark has "artistic relevance" to the work and does not "explicitly mislead[]" consumers as the source of the work. *Gordon v. Drape Creative*, 909 F.3d 257, 269-271 (9th Cir. 2018); *see also Rogers*, 875 F.2d at 999. This Court previously found that, as a matter of law, the *Rogers* test did not apply to Yuga Labs' claims. ECF 62 at 6-7; ECF 178 at 6.

The "threshold for applying the *Rogers* test is whether the allegedly infringing use is contained in an expressive work." *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016), *aff'd*, 875 F.3d 1192 (9th Cir. 2017). The record shows that there is no artistic expression at issue when Defendants used the BAYC Marks to sell their RR/BAYC NFTs. Instead, "Defendants' sale of what is admittedly a 'collection of NFTs that point to the same online digital images as the BAYC collection' is the only conduct at issue." ECF 62 at 6 (internal citation omitted); CSOF ¶ 22. The lack of any artistic expression is exemplified by the fact that "Defendants' token tracker uses an exact copy of Plaintiff's BAYC Marks without any expressive content." ECF 62 at 6; CSOF ¶¶ 25-27. And Defendants' use of unmodified BAYC Marks on sales pages and Ape Market

demonstrate that they have "no 'artistic expression or critical commentary.'" ECF 62 at 6 ("The title of Defendants' Foundation sales page was simply "Bored Ape Yacht Club."); CSOF ¶ 32. Even in Ripps' own words, the alleged "art" is only the RR/BAYC NFT—i.e., the Ethereum blockchain smart contract itself. CSOF ¶ 84. As the evidence shows, the smart contract which contains the RR/BAYC NFTs contains no expressive content related to Defendants' criticism of Yuga Labs. *See* CSOF ¶¶ 25-27. Instead, the content that Defendant Ripps did input when creating that smart contract was "Bored Ape Yacht Club" as its name, and "BAYC" as its symbol. *See id.* As a result, the smart contract misleadingly displayed "Bored Ape Yacht Club (BAYC)" as the token tracker. *Id.* ¶ 27. Therefore, the RR/BAYC NFTs fail to meet *Roger's* threshold requirement as expressive work, and the Court concludes that *Rogers* does not apply to Defendants' sale of RR/BAYC NFTs. *See also* ECF 62 at 7 ("even if the Court applied the Rogers test and concluded that the BAYC Marks are artistically relevant, the Court concludes that Defendants' use of the BAYC marks is explicitly misleading."); *Gordon*, 909 F.3d at 269 ("Even if the use of the mark is artistically relevant to the work, the creator of the work can be liable under the Lanham Act if the creator's use of the mark is 'explicitly misleading as to source or content.'") (citation omitted).

### D. Defendants' Nominative Fair Use Defense Is Not Viable.

Nominative fair use does not apply when a defendant uses a mark to "refer[] to something other than the plaintiff's product." *New Kids on the Block v. News Am. Pub.*, 971 F.2d 302, 308 (9th Cir. 1992). Nor does the defense apply where a defendant uses nonidentical, modified versions of a plaintiff's marks. *See E.S.S. Ent. 2000 v. Rock Star Videos*, 547 F.3d 1095, 1099 (9th Cir. 2008). Nominative fair use only allows for "truthful use of a mark," for example, a Lexus dealer who sells Lexus vehicles at lexusbroker.com. *Toyota Motor Sales, U.S.A. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010). This Court previously found that, as a matter of law, Defendants' use of the BAYC Marks did not constitute fair use. ECF 62 at 8-9. Defendants provide

no evidence at this stage to disturb that finding.

Defendants are not using the BAYC Marks to sell Yuga Labs' BAYC NFTs, but to sell their own competing RR/BAYC NFTs. ECF 62 at 8; CSOF ¶ 88. Defendant Ripps' Foundation page for the RR/BAYC NFT collection lists "Bored Ape Yacht Club" as the name of the page and displays Yuga Labs' Ape Skull Logo. CSOF ¶ 87. Defendants themselves admit to using the BAYC Marks to sell their RR/BAYC NFTs on various NFT marketplaces. *See* CSOF ¶¶ 22-27, 32-34, 215.

Defendants argue they are entitled to a nominative fair use defense because their criticisms required use of the BAYC Marks. Defendants have been sued for their commercial sale of their RR/BAYC NFT, not for defamation, slander, or libel. Because Defendants used the BAYC Marks to sell and promote their products, their use of the BAYC Marks is not nominative fair use. *Id.* ¶¶ 32-34, 88; *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001) (finding defendant not entitled to the nominative fair use defense where it "used [plaintiffs'] photograph in its catalog that was intended to sell its goods").

Accordingly, the Court finds that Defendants are not entitled to a nominative fair use defense.

### E. Defendants' Unclean Hands Defense Is Not Viable.

A defendant asserting unclean hands must prove that "the plaintiff's conduct directly relates to the claim which it has asserted against the defendant." *Intamin v. Magnetar Techs.*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009); *see also Fuddruckers v. Doc's B.R. Others*, 826 F.2d 837, 847 (9th Cir. 1987) ("the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims"). Defendants claim that Yuga Labs is barred from relief because of alleged misconduct regarding celebrity endorsements and securities violations. However, neither of these allegations pertain to the trademark dispute between the parties. *See S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932-33 (9th Cir. 2014) (where "the misconduct alleged [by the plaintiff] does not bear any 'immediate

and necessary relation' to the manner in which [the plaintiff] acquired its rights or to the equities of this case, the unclean hands doctrine is inapplicable"). Defendants' theory of unclean hands would create a sideshow and collateral litigation over issues that are not germane to the trademark issues in this case. That is not the purpose of the unclean hands defense.

The record shows that Yuga Labs did not compensate celebrities for endorsements. CSOF ¶¶ 89-90. Rather Yuga Labs acquired the BAYC Marks and became well-known *before* many celebrities publicly declared their acquisition of a BAYC NFT. *Id.* ¶ 91.

Defendants have also not shown that the BAYC NFTs are securities. A security requires "(1) an investment of money (2) in a common enterprise (3) with the expectation of profit from the essential entrepreneurial or managerial efforts of others." *Friel v. Dapper Labs, Inc.*, No. 21 Civ. 5837, 2023 WL 2162747, at *8 (S.D.N.Y. Feb. 22, 2023). Defendants offer no evidence that meets these criteria.

None of Defendants' allegations of misconduct relate to Yuga Labs' trademark claims. Thus, Defendants are not entitled to an unclean hands defense.

### F. Yuga Labs Is Entitled to Summary Judgment on Defendants' 17 U.S.C. § 512(f) Counterclaim.

Defendants bring a counterclaim against Yuga Labs under 17 U.S.C. § 512(f). Defendants have the burden to show "(1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith." *Moonbug Ent. Limited v. Babybus (Fujian) Network Tech. Co.*, No. 21-cv-06536, 2022 WL 580788, at *7 (N.D. Cal. Feb. 25, 2022). As an initial matter, the record shows that only four of Yuga Labs' takedown notices ever resulted in any takedown of content, and thus no other notices are actionable. *See id.* (requiring a "takedown notice that *led to a takedown*") (emphasis added); CSOF ¶¶ 92, 99.

### 1. The Three Successful Trademark Takedown Notices Are Not Actionable under the DMCA.

Of the four notices, three of them relate to trademark (not copyright) infringement. Thus, they do not qualify as DMCA notices where any liability under § 512(f) can arise. Under the express statutory scheme of § 512 of the DMCA, liability attaches only to a knowingly false misrepresentation of *copyright infringement* made pursuant to a takedown request *under § 512(c)(3) of the DMCA*. See 17 U.S.C. § 512(f). For a DMCA takedown notice to have any legal effect, it must comply substantially with the elements under § 512(c)(3)(A). See *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007). In this case, these three notices did not identify a copyrighted work as allegedly infringed. See 17 U.S.C. § 512(c)(3)(A)(ii); CSOF ¶¶ 97, 242, 246, 248. To the contrary, the notices clearly stated that they were based on "[u]nauthorized use of Yuga Labs' trademarks." CSOF ¶ 99. Defendants even concede that these three notices were "based solely on **trademark**, not **copyright**" infringement. ECF 163 at 21 (emphasis in original). Accordingly, these notices lacked a required element of § 512(c)(3)(A) to qualify as a DMCA notice, and no liability can arise from § 512(f). See *Int'l Unions, Security Police and Fire Pros. of Am. v. Maritas*, No. 2:19-cv-10743, 2023 WL 2726030, at *11 (E.D. Mich. Mar. 30, 2023) ("A notification is not a DMCA notice under § 512 if the above elements are not 'substantially' included. [§ 512(c)(3)(A)]. And without a DMCA notice, § 512(f) does not apply."); *Twelve Inches Around Corp v. Cisco Systems Inc.*, No. 08 Civ. 6896, 2009 WL 928077, at *3 (S.D.N.Y. March 12, 2009) ("For a 'take down' notice to have any legal effect under Section 512 it must have an '[i]dentification of the copyrighted work claim[ed] to have been infringed'") (alteration in original) (citation omitted).

Further, the resulting takedowns from these three trademark-related notices were not *the result of* any misrepresentations of *copyright infringement*. See *Moonbug*, 2022 WL 580788, at *7. Rather, as Defendants concede, these three successful takedown notices were "based solely on **trademark**, not **copyright**." ECF 163 at 21

(emphasis in original). As such, these takedowns resulted from allegations against Defendants' trademark infringement, not copyright infringement (let alone any misrepresentation of it). *See* CSOF ¶¶ 99-101. Indeed, communications from two platforms (Foundation and x2y2) demonstrate that the takedowns were on the basis of trademark infringement. CSOF ¶¶ 100, 101. Defendants have not come forth with any evidence to show that any of these three takedowns were successful because of a misrepresentation about copyright infringement.

Finally, Defendants cannot prove that any of these three trademark takedowns were submitted in subjective bad faith. The evidence demonstrates that Yuga Labs believed Defendants infringed their trademarks and submitted takedown notices on that basis, which were understood by the platforms to be trademark takedowns. The evidence further demonstrates that Defendants were, in fact, infringing Yuga Labs' trademarks. Therefore, Defendants have not and cannot prove that Yuga Labs submitted the three trademark notices in bad faith.

For each of these reasons, the Court finds Defendants have no § 512(f) claim on the three trademark takedowns.

### 2. The One Successful DMCA Takedown Notice Did Not Misrepresent a Copyright and Yuga Labs Had a Good Faith Belief in Defendants' Copyright Infringement.

Similarly, as to the one successful notice Yuga Labs sent under the DMCA, Defendants cannot meet their burden to show a misrepresentation by Yuga Labs or that Yuga Labs had anything other than a good faith belief.

In the single DMCA notice, Yuga Labs did not misrepresent any information, and Defendants have not come forward with evidence to prove otherwise. Defendants do not dispute that the notice stated: "[t]he infringing content uses copyrighted material from https://opensea.io/collection/boredapeyachtclub produced by Yuga Labs without authorization." CSOF ¶ 93. Defendants also do not dispute that this OpenSea page displayed Yuga Labs' Ape Skull Logo. *Id.* ¶ 95. Likewise, the notice identified Defendants' Foundation sales page, which displayed Yuga Labs' Ape Skull

Logo. *Id.* ¶ 94. From the evidence, the Court finds that Defendants make no showing of any misrepresentation in the one DMCA notice.

Further, Defendants must prove that the DMCA notice was submitted in subjective bad faith. Defendants have not come forward with any evidence to dispute Yuga Labs' good faith belief in submitting the DMCA notice or its good faith belief in its copyright ownership in the Ape Skull Logo. A copyright exists at the moment copyrightable material is fixed in any tangible medium of expression. *See* *Fourth Estate Public Benefit Corp. v. Wall-Street.com LLC*, 139 S. Ct. 881, 887 (2019). To be copyrightable, a work need only possess "some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). And courts in the Ninth Circuit have held that a logo can receive both trademark and copyright protection. *See*, *e.g.*, *Vigil v. Walt Disney Co.*, Nos. C-95-1790, C-95-1277, 1995 WL 621832, at *3, 4 (N.D. Cal. Oct. 16, 1995). Here, Yuga Labs owns the copyright in the Ape Skull Logo, which undoubtedly meets the low bar of creativity required to gain copyright protection. CSOF ¶¶ 5, 96; *see also* *Feist*, 499 U.S. at 345. Yuga Labs therefore had a subjective good faith belief that it owns the copyright in the Ape Skull logo, and thereby had a good faith belief in submitting the DMCA notice. Defendants made no attempt to prove otherwise.

Accordingly, because Defendants have not demonstrated that they have any ability to meet their burden at trial, the Court concludes that Yuga Labs is entitled to summary judgment on Defendants' 17 U.S.C. § 512(f) counterclaim.

## IV. CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated:_____

                                            Honorable John F. Walter
                                            United States District Court Judge