1  ERIC BALL (CSB No. 241327)
   eball@fenwick.com
2  KIMBERLY CULP (CSB No. 238839)
   kculp@fenwick.com
3  FENWICK & WEST LLP
   801 California Street
4  Mountain View, CA  94041
   Telephone:   650.988.8500
5  Facsimile:    650.938.5200

6
   ANTHONY M. FARES (CSB No. 318065)
7  afares@fenwick.com
   ETHAN M. THOMAS (CSB No. 338062)
8  ethomas@fenwick.com
   FENWICK & WEST LLP
9  555 California Street, 12th Floor
   San Francisco, CA  94104
10 Telephone:  415.875.2300

11 *Additional Counsel listed on next page*

12
   Attorneys for Plaintiff and
13 Counterclaim Defendant
   YUGA LABS, INC.
14

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17             WESTERN DIVISION – Los Angeles

18

19 YUGA LABS, INC.,                      Case No.: 2:22-cv-04355-JFW-JEM

20          Plaintiff and               **PLAINTIFF YUGA LABS, INC.'S**
            Counterclaim Defendant,     **OPPOSITION TO DEFENDANTS'**
21                                       **EX PARTE APPLICATION FOR**
                                         **LEAVE TO FILE A SUR-REPLY**
22      v.
                                         Judge:  Honorable John F. Walter
23 RYDER RIPPS, JEREMY CAHEN,           Hearing: April 17, 2023 at 1:30 PM
                                         Pre-Trial Conference Date: June 9, 2023
24          Defendants and              Trial Date:  June 27, 2023
            Counterclaim Plaintiffs.
25

26

27         **REDACTED VERSION OF DOCUMENT PROPOSED**
                **TO BE FILED UNDER SEAL**
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:   310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA  22314
Telephone:   202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   ARGUMENT ...................................................................................... 5

    A.   Defendants Improperly Ask the Court to Weigh Mr. Lehman's Testimony ................................................................ 5

        1.   There Is No Factual Dispute About the Credibility of Mr. Lehman's Testimony or the Accuracy of his Declaration ................................................................ 5

        2.   None of Defendants' Cases Support Denying Yuga Labs' Motion by Attacking Mr. Lehman's Credibility ............. 7

    B.   The Court Can Ignore All of Mr. Lehman's Testimony and Still, Easily, Grant Summary Judgment to Yuga Labs. ....................... 9

    C.   The Court Can and Should Deny Defendants' Third Improper Ex Parte Application Without Reaching the Merits of a Sur-Reply. ................................................................ 13

        1.   Defendants' Ex Parte Application Does Not Demonstrate that They were "Without Fault" in Creating the Exigency; They Were Solely Responsible for the Exigency ................................................................ 13

        2.   Defendants' Latest In a String of Procedural Violations Caused Significant Prejudice to Yuga Labs ........... 19

III.  CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ...................................................................................... 19

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ............................................................... 19, 20

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ..................................................................... 19

*Hirano v. Williams*,
No. EDCV 13-2371-DMG (AGR), 2017 WL 11632461
(C.D. Cal. Mar. 24, 2017) ............................................................................ 5

*In re Wank*,
505 B.R. 878 (9th Cir. Br. 2014) .................................................................. 7

*Kim v. BMW of N. Am., LLC*,
No. CV 19-4209-JFW(GJSX), 2020 WL 13064697
(C.D. Cal. June 24, 2020) .......................................................................... 14

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) ....................................................... 13, 16

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Argonaut Ins. Co.*,
701 F.2d 95 (9th Cir. 1983) ......................................................................... 6

*Orlando v. Los Alamitos Racing Ass'n*,
No. SACV 13-1090 DOC(JPRx), 2015 WL 391958, at *4
(C.D. Cal. Jan. 28, 2015) ............................................................................. 6

*Ross v. City of Tustin*,
No. SACV 18-2219 JVS, 2020 WL 1269839 (C.D. Cal. Jan 7, 2020) ............... 7

*SEC v. Koracorp Indus., Inc.*,
575 F.2d 692 (9th Cir. 1978) ....................................................................... 8

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987) ....................................................................... 8

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States v. Two Tracts of Land in Cascade Cnty., Mont.*,
  5 F.3d 1360 (9th Cir. 1993) ................................................................................. 8

*Uschold v. Carriage Serv., Inc.*,
  No. 17-cv-04424-JSW, 2020 WL 1466172 (N.D. Cal. Mar. 6, 2020) ................ 8

*Washington v. Cambra*,
  No. C95-3412 TEH, 1996 WL 417245 (N.D. Cal. July 19, 1996) ..................... 6

**STATUTES AND RULES**

Fed. R. Civ. P. 56(d) .......................................................................................... 16

Fed. R. Evid. 609(a) ............................................................................................. 8

Local Rule 5-3.1.2 ............................................................................................... 19

Local Rule 7-3 ............................................................................................... 15, 16

Local Rule 79-5.3 ................................................................................................ 19

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.   INTRODUCTION

Defendants fail to justify bringing a last-minute application for ex parte relief and fail to show how their proposed new evidence would affect Yuga Labs' Motion for Summary Judgment ("Motion").  They make the specious argument that Mr. Lehman's testimony requires a credibility determination, even though his deposition testimony (made under penalty of perjury, like his declaration) was a repeated affirmation that his declaration was truthful.  This is the exact opposite of what Defendants expected to establish through Mr. Lehman's deposition.  But, once again, Defendants do not like the undisputed facts and so refuse to accept them. Indeed, they do not cite any single undisputed fact that they now contend is disputed because of something Mr. Lehman said at his deposition.

The facts are that Mr. Lehman signed his declaration (Dkt. 149-33 (Summary Judgment Exhibit 27)) under penalty of perjury and at his March 27, 2023 deposition he repeatedly affirmed the accuracy of his declaration:



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW



Declaration of Eric Ball ("Ball Decl.") Exhibit 1 (Thomas Lehman Deposition Transcript) at 251:14–17, 247:1–11, 123:25–124:9, 128:3–10, 248:4–11.  In the face of Mr. Lehman's sworn affirmation of his declaration, Defendants offer not one single piece of evidence to show that any aspect of the declaration is itself false.  The application is improper and should be denied for that reason alone, but this does not suggest Defendants' position has any merit — it does not.

First, Defendants admit they seek to create a dispute of fact solely by attacking Mr. Lehman's credibility.  (Dkt. 207 at 1).  This is not a valid argument at summary judgment and none of their cases hold that it is.  This is also not a new argument warranting a sur-reply; Defendants already argued in their Opposition papers that the Court should afford Mr. Lehman's declaration less weight based on

FENWICK & WEST LLP
ATTORNEYS AT LAW

their objection that is it not "authentic," and so their weight of the evidence argument has already been offered to the Court.

Second, their new argument that Mr. Lehman provided "context" to his declaration does not create a material dispute of fact because the unrebutted testimony of a witness does not become genuinely disputed merely by the addition of subsequent, non-contradictory statements adding "context" to the testimony.

Third, the Court can completely disregard Mr. Lehman's declaration and deposition testimony (or accept it all) and grant summary judgment in Yuga Labs' favor.  In their Opposition, ***Defendants did not dispute more than seventy facts in Yuga Labs' Motion.***  None of those undisputed facts rely solely on Mr. Lehman's declaration for evidentiary support.  *See generally* Combined Statement of Facts (Dkts. 193-2, 203 (sealed version)).  Indeed, the briefing on the Motion reveals that there is no dispute that Defendants used Yuga Labs' BAYC Marks to promote their RR/BAYC NFTs and trade off of Yuga Labs' goodwill and that they personally knew there was a possibility of consumer confusion on marketplaces, and they proceeded anyway in releasing and promoting those infringing RR/BAYC NFTs notwithstanding the actual and likely confusion in those other marketplaces.  While Mr. Lehman's testimony corroborates those undisputed facts, those facts do not hinge on his testimony.

Finally, by filing their ex parte application, Defendants impliedly concede that they did not support their Opposition to the Motion with evidence controverting any of Yuga Labs' material facts.  Defendants now improperly seek to undo hundreds of hours of work spent preparing and filing documents such as statements of decisions and memoranda of points and authorities required to properly file the Motion.  Defendants' several violations of the Court's orders to file their ex parte application is a last gambit to keep any defense alive.  Although the procedural impropriety of Defendants' latest holiday-weekend fire drill is inexcusable, it should not change the outcome of Yuga Labs' Motion.

## II.   ARGUMENT

### A.   Defendants Improperly Ask the Court to Weigh Mr. Lehman's Testimony.

#### 1.   There Is No Factual Dispute About the Credibility of Mr. Lehman's Testimony or the Accuracy of his Declaration

Mr. Lehman repeatedly testified at his deposition that his declaration reflects his truthful testimony.  He explained that ███████████████████████████ ███████████████████████████████████████ Ball Decl. Ex. 1 at 237:19-241:7. ████████████████████████████████████████ *Id.* 237:19-242:2.  And, ████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████ *Id.* (specifically at 239:7-14).

That Mr. Lehman said more in his documents (which, when printed, amount to more than 1,000 pages) than is contained in his declaration should surprise no one, except apparently Defendants.  In much the same way that a deposition is a distillation of the facts that a witness knows about the topics the attorney chose to ask about, so too is Mr. Lehman's declaration.

Defendants' arguments that there are other facts not included in Mr. Lehman's declaration, at best, go to the weight of his testimony, not its admissibility.  But, the Court does not weigh evidence on a motion for summary judgment.  *See Hirano v. Williams*, No. EDCV 13-2371-DMG (AGR), 2017 WL 11632461, at *10 (C.D. Cal. Mar. 24, 2017) ("at the summary judgment stage the court does not make credibility determinations or weigh the evidence").  Further, the law is clear that "a party opposing summary judgment cannot meet his burden simply by challenging the credibility of the moving party's evidence." *Washington v. Cambra*, No. C95-3412 TEH, 1996 WL 417245, at *3 (N.D. Cal. July 19, 1996).

FENWICK & WEST LLP
ATTORNEYS AT LAW

The result is no different merely because Defendants characterize their proposed new evidence as added "context."  By way of example, Yuga Labs has told this Court much about its BAYC Marks.  Yuga Labs' discussions of its ownership of the BAYC Marks does not mean that it does not own other trademarks.  It does.  The existence of the Mutant Ape Yacht Club, Meebits, or CryptoPunks brands that Yuga Labs owns and protects does not raise a dispute about its ownership and protection of its BAYC brand.  The same logic applies to Defendants' use of Mr. Lehman's deposition testimony — it does not controvert the truthful facts about which Mr. Lehman swore.  *See Orlando v. Los Alamitos Racing Ass'n*, No. SACV 13–1090 DOC(JPRx), 2015 WL 391958, at *4 (C.D. Cal. Jan. 28, 2015) (additional facts in plaintiff's declaration did not directly contradict deposition testimony and thus did not create genuine issue of material fact) (*quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment.")).  Defendants' arguments merely highlight their lack of diligence in conducting discovery in the first place, not a material dispute of fact.

**Defendants have Mr. Lehman's documents and have had them since 2022; they chose not to depose him about his documents until the eleventh hour.**  They assumed that Mr. Lehman would try to defend their scam to this Court.  Instead, Mr. Lehman accepted responsibility for his actions and allowed the court in New York to enter an injunction against him because of the actual confusion his actions caused.  Ball Decl. Exhibit 2 (Consent Judgment).  They also erred in assuming that settlement communications with Yuga Labs would prove the declaration was perjured; that assumption was wrong, as evidenced by Defendants' choice not to use a single such communication in the deposition or in their ex parte application.  Mr. Lehman's decision to settle with Yuga Labs also does not mean he lied in his declaration and again lied at his deposition about his belief that his declaration was

accurate.  The additional purported facts that Defendants think they learned when they finally took Mr. Lehman's deposition do not controvert his sworn declaration and, therefore, do not raise a material dispute of fact on Yuga Labs' Motion for Summary Judgment.  *See Ross v. City of Tustin*, No. SACV 18-2219 JVS (DFM), 2020 WL 1269839, at *5, *7 (C.D. Cal. Jan 7, 2020) (finding witness's testimony that they were unaware of training matching description of declarant did not contradict declarant's testimony that he attended such training; overruling objections to declaration because "a mere question as to the credibility of [the] declaration" did not make it inadmissible).

### 2.  None of Defendants' Cases Support Denying Yuga Labs' Motion by Attacking Mr. Lehman's Credibility

Defendants cite *In re Wank*, 505 B.R. 878 (9th Cir. Br. 2014) to attack the reliability of Mr. Lehman's declaration, but this case lends Defendants no support. The *Wank* declaration was more kompromat than a legitimate statement of facts. *Id.* at 882–83 ("The Settlement Agreement provided that the signed, original First Declaration would be kept in a sealed envelope by an escrow agent.  If Wank failed to make the $750,000 . . . and later filed for bankruptcy protection, the Settlement Agreement provided that the First Declaration would be unsealed and submitted to the bankruptcy court.").  Furthermore, the *Wank* declaration was drafted by opposing counsel and ***the declarant himself sought its repudiation***.  *Id.* at 889. Mr. Lehman has unwaveringly and repeatedly affirmed the truth of his declaration, and his extensive participation in its preparation.  There is no dispute on that fact.

1

2

Likewise, the other cases Defendants cite for the proposition that summary judgment is inappropriate where there is a purported issue of credibility are similarly inapposite.  In *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692 (9th Cir. 1978), the court was tasked with determining the "likelihood of recurrent violations" by each of the defendants to help it decide if it should issue an injunction.  *Id.* at 699.  The court found credibility material to that equitable determination because "[t]he allocation of responsibility depends heavily upon the credibility of the testimony of the several defendants." *Id.*  Therefore, unlike here, credibility was central to the merits of the motion before the court.  To the extent Defendants rely on *United States v. Two Tracts of Land in Cascade Cnty., Mont.*, 5 F.3d 1360 (9th Cir. 1993),[1] that case is similarly inapplicable because there ***the lower court erred by weighing the evidence at the summary judgment phase.*** *Id.* at 1362.  ***It was not the credibility of the affidavits*** that raised a genuine issue of material fact, ***it was the contents of those affidavits.*** *Id.*  In *Uschold v. Carriage Serv., Inc.*, No. 17-cv-04424-JSW, 2020 WL 1466172 (N.D. Cal. Mar. 6, 2020), the witness was previously convicted for "conspiracy to submit false claims," which spoke directly to the witness's honesty and credibility. *Id.* at *6.  The court therefore felt obligated under Fed. R. Evid. 609(a) to consider the conviction when deciding the motion. *Id.*  There is no such obligation here.[2]

---

[1] The parenthetical that Defendants attribute to this case does not appear in the case text.  It is therefore unclear whether Defendants intended to rely on this case.

[2] Defendants also cite to *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) for the proposition that "the judge [does not] make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions or depositions. These determinations are within the province of the factfinder at trial."  Yuga Labs does not contest that a judge's role on summary judgment is not to make credibility determinations.  This case is otherwise factually distinct and does not turn on any credibility issue.

8

FENWICK & WEST LLP
ATTORNEYS AT LAW

In short, Defendants offer not one case that permits the Court to deny Yuga Labs' Motion for the sole purpose of having a jury assess Mr. Lehman's credibility ██████████████████████████████████████████████████████████ ████████████████████████████████████████████ But, the Court could also completely ignore Mr. Lehman's declaration and Yuga Labs' Motion would remain undisputed on the material facts.

## B. The Court Can Ignore All of Mr. Lehman's Testimony and Still, Easily, Grant Summary Judgment to Yuga Labs.

Even if the Court were inclined to disregard the entirety of Mr. Lehman's declaration, the Court may still grant summary judgment for Yuga Labs because the facts remain materially undisputed based on all of the other evidence in the record. ████████████████████████████████████████████████████████ ████████████████████████████████████████

As an initial matter, Mr. Lehman's declaration has a narrow application in Yuga Labs' Motion for Summary Judgment.  Out of the 120 undisputed facts offered by Yuga Labs, Mr. Lehman's declaration was included as evidentiary support for *only seventeen*.[3]  Further, these facts pertain *only* to Yuga Labs' arguments regarding the likelihood of confusion from Defendants' use of the BAYC Marks.  Accordingly, the issues unrelated to consumer confusion — i.e., Yuga Labs' ownership of BAYC Marks and Defendants' cybersquatting, and the

---

[3] Defendants admit this.  (Dkt. 207 at 1:22-23).  They also use another misleading and confusing reference to "sixty times", which seems to be their count of every time an undisputed fact that is supported by Mr. Lehman's declaration is cited in Yuga Labs' two summary judgment briefs (e.g., its opening and its reply briefs). That triple counting is misleading because it fails to acknowledge that those facts are supported by more evidence than just Mr. Lehman's declaration.  That count also ignores that when Yuga Labs' summary judgment briefing cites an undisputed fact that is one of the seventeen supported by Mr. Lehman's declaration, Yuga Labs also often cites to additional undisputed facts that do not rely on Mr. Lehman's declaration.

FENWICK & WEST LLP
ATTORNEYS AT LAW

absence of evidence to support Defendants' affirmative defenses and Section 512(f) counterclaim — are not remotely disturbed by the proposed sur-reply.

Of Yuga Labs' seventeen facts where it cited Mr. Lehman's declaration for evidentiary support, none of them hinge only on Mr. Lehman's declaration, and they are all amply supported by other unrebutted evidence in the record. Sixteen of the statements of facts include multiple evidentiary cites from the record to support the fact. (*See* Abridged Chart of SUFs below)[4]. And the single statement of fact that cites only to Mr. Lehman's declaration (*see* SUF ¶ 71) is a compilation of facts found elsewhere in the record. *See, e.g.*, Ball Decl. Ex. 28 at RIPPSCAHEN00002561; Ex. 32; Ex. 33; and Ex. 39 at 330:3-12. Defendants' motion dubiously attempts to characterize Mr. Lehman's declaration as the proverbial tail that wags the undisputed nature of each of these facts. That theory is not consistent with the evidentiary record on Yuga Labs' Motion for Summary Judgment:

| SUF | UNCONTROVERTED FACTS | EVIDENCE ESTABLISHING UNCONTROVERTED FACTS |
|---|---|---|
| | **Defendants' Same Product** | |
| 22 | Defendants created the RR/BAYC NFTs, which point to the same online digital images as BAYC NFTS. | Ball Decl. Ex. 25 ¶ 8; Ex. 27 ¶ 5; Ex. 36 at Rog. 1; Ex. 37 at RFA 3; Ex. 39 at 106:23-107:3 <br><br> Muniz Decl. Ex. 70 |
| 25 | On May 13, 2022, Defendant Ripps created the Ethereum blockchain smart contract, 0x2ee6afildff3alce3f7e3414c52c48fd 50d73691e, which contains the RR/BAYC NFTs. | Ball Decl. Ex. 27 ¶ 8; Ex. 38 at 81:6-1 1, 106:2-14 <br><br> Atalay Decl. Exs. 5-7 |
| 26 | The Ethereum blockchain smart contract that contains the RR/BAYC NFTs has "Bored Ape Yacht Club" input as its name, and "BAYC" input as its symbol. | Ball Decl. Ex. 27 ¶ 8 <br><br> Atalay Decl. Exs. 5-8 |

---

[4] Mr. Lehman's declaration is highlighted for ease of reference.

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| 27 | Etherscan, a website that gathers metadata from the blockchain to track NFT transactions, displays the name and symbol for the Ethereum blockchain smart contract that contains the RR/BAYC NFTs as "Bored Ape Yacht Club" and "BAYC," respectively. It also displays "Bored Ape Yacht Club (BAYC)" as the token tracker. | Ball Decl. Ex. 27 ¶ 8; Ex. 38 at 81:6-11, 106:2-14; Ex. 39 at 37:23-38:6; Ex. 40 at 143:18-144:3 |
| | | Atalay Decl. Exs. 5-8 |
| | | O'Laughlin Decl. Ex. 105 ¶14 |
| 29 | Defendants registered and/or used the domain rrbayc.com. | Ball Decl. Ex. 26 ¶ 7; Ex. 27 ¶ 3; Ex. 34 at NAMECHEAP0000016 |
| | | Muniz Decl. Ex. 77 |
| 30 | Defendants registered and/or used the domain apemarket.com. | Ball Decl. Ex. 26 ¶ 7; Ex. 27 ¶ 3; Ex. 29; Ex. 34 at NAMECHEAP0000017; Ex. 40 at Hickman Ex. 64 |
| 31 | Unmodified versions of BAYC Marks, including Yuga Labs' "BAYC", "Bored Ape", "Bored Ape Yacht Club", "BA YC Bored Ape Yacht Club Logo", and "Ape Skull Logo" Marks, were displayed alongside the sale of RR/BAYC NFTs. | Ball Decl. Ex. 27 ¶ 18; Ex. 36 at Rog. 3 |
| | | Atalay Decl. Ex. 9 |
| | | Muniz Decl. Exs. 54, 55, 59, 60, 61 |
| **Defendants' Use of the Same Marketing Channels** | | |
| 42 | Defendants worked on developing and marketed an NFT Marketplace, Ape Market, where consumers could purchase and sell RR/BAYC NFTs and BAYC NFTs. | Ball Decl. Ex. 27 ¶ 15; Ex. 39 at 100:18-22; Ex. 40 at 207:23-212:7 |
| | | Muniz Decl. Exs. 80, 81, 82 |
| 44 | The Ape Market Twitter account @ApeMarketplace tweeted a post stating "Listing requires an RRBAYC token: rrbayc.com." It also has a June 2, 2022 tweet that states "Listing requires holding RR/BAYC." | Ball Decl. Ex. 27 ¶ 13 |
| | | Muniz Decl. Ex. 80 |

| 45 | The Twitter account @ApeMarketplace tweeted an image addressed to "Dear Yuga community" on June 2, 2022 and stated "ApeMarket will feature RR/BAYC, BAYC, MAYC, back & Otherdeeds" and "0% royalties. 0% fees." | Ball Decl. Ex. 27 ¶ 13<br><br>Muniz Decl. Ex. 81 |
|---|---|---|
| **Actual Confusion from Defendants' Use of the Same Marks** | | |
| 58 | Defendants' software developer, Tom Lehman, has sworn under oath that he believed "purchasers of RR/BAYC NFTs on Foundation.app might think they were buying authentic BAYC NFTs if they did not conduct further research." | Ball Decl. Ex. 27 ¶ 25; Ex. 33 |
| 60 | Defendants' software developer, Tom Lehman, has sworn under oath that he "repeatedly shared" his concern with Defendants that "using the 'BAYC' mark alongside the RR/BAYC NFTs could be confusing on Ape Market." | Ball Decl. Ex. 27 at ¶ 21; Ex. 28 at RIPPSCAHEN00002561 |
| **Customers' Degree of Care** | | |
| 68 | Defendants did not include a disclaimer to notify consumers that they were purchasing an RR/BAYC NFT rather than a BAYC NFT on any NFT marketplace or purchasing site, other than Defendants' rrbayc.com website. | Muniz Decl. Ex. 100<br><br>Ball Decl. Ex. 27 ¶ 25; Ex. 37 at RFA 27 |
| **Defendants' Intent** | | |
| 69 | Defendants' use of the BAYC Marks in connection with the RR/BAYC NFT collection was intentional. | Ball Decl. Ex. 27 ¶ 18; Ex. 36 at RFAs 1,3,4 |
| 71 | Defendants' software developer, Tom Lehman, raised concerns with Defendants that using the BAYC Marks in connection with the RR/BAYC NFT collection could cause confusion. | Ball Decl. Ex. 27 ¶¶ 21-25[5] |

[5] This fact is also supported by other evidence in the record, to wit:
- Ball Decl. Ex. 28 at RIPPSCAHEN00002561 ("we should not under-estimate how confusing using the BAYC logo alongside the RR/BAYC logo on Ape Market is" and "it is too confusing to the 'average joe'");
- Ball Decl. Ex. 32 (Lehman discussing with Cahen that they need a "new logo and branding direction in light of the trademark thing" because a "normal person could be like 'I see where Yuga is coming from, it's confusing how close your logo is to theirs'");
- Ball Decl. Ex. 33 (Lehman agreeing with the potential for confusion on Foundation.app if consumers did not conduct further research); and
- Ball Decl. Ex. 39 at 330:3-12 (Cahen agreed on at least one occasion to the potential for confusion).

| 73 | Defendants expected to make money from the sale and resale of RR/BAYC NFTs and from potentially generating transaction fees from the sale of NFTs on Ape Market. | Ball Decl. Ex. 27 ¶¶ 9-12; Ex. 40 at Hickman Exs. 49, 55 |
| 75 | Defendants' software developer, Ryan Hickman, wrote in a chat that included Defendants, "We're closing in on $10 million impact to yuga." | Ball Decl. Ex. 27 ¶ 15; Ex. 40 at Hickman Ex. 58 |

Thus, even if the Court declines to consider Mr. Lehman's declaration, the undisputed facts remain well-supported by the evidentiary record.

Remarkably, Defendants' ex parte application states that "the new evidence that Defendants seek to address is material to any summary judgment ruling" (Dkt. 207 at 7).  But, ***neither in their ex parte application nor in their proposed sur-reply do Defendants identify <u>even one single</u> deposition quote from Mr. Lehman that they contend controverts <u>even one</u> of the foregoing facts***.  Indeed, they do not cite any single undisputed fact that they now contend is disputed because of something Mr. Lehman said at his deposition.  Tellingly, Defendants also do not attempt to make any showing as to how any of the claims, defenses, or counterclaims at issue in Yuga Labs' Motion for Summary Judgment dispositively fail or succeed because of Mr. Lehman's deposition.  Without such a showing, Defendants' proposed sur-reply is merely a means to no end.

### C.   The Court Can and Should Deny Defendants' Third Improper Ex Parte Application Without Reaching the Merits of a Sur-Reply.

#### 1.   Defendants' Ex Parte Application Does Not Demonstrate that They were "Without Fault" in Creating the Exigency; They Were Solely Responsible for the Exigency

"Ex parte applications are solely for extraordinary relief."  Standing Order (Dkt. 14) at 13; *see also Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995).  "Ex parte practice is strongly discouraged" by this Court.  Case Management Order (Dkt. 57 at 7).  As such, an ex parte application must show that "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect . . . .  It is

FENWICK & WEST LLP
ATTORNEYS AT LAW

the creation of the crisis — the necessity for bypassing regular motion procedures — that requires explanation." *Kim v. BMW of N. Am., LLC*, No. CV 19-4209-JFW(GJSX), 2020 WL 13064697, at *1 (C.D. Cal. June 24, 2020).

In discovery, Defendants have already brought two improper and meritless ex parte applications concerning Mr. Lehman's testimony.  Dkts. 108, 115.  They withdrew the first application, which was wrought with procedural and substantive deficiencies.  Dkts. 113 (Yuga Labs' opposition), 114 (Defendants' notice of withdrawal).  The second was denied, with the Court noting that "[t]here was never any emergency or prejudice warranting *ex parte* relief" and that Defendants "essentially created their own non-existent emergency."  Dkt. 119 at 2.

Here again, Defendants waited until the eleventh hour to concoct an emergency and seek to leverage that supposed emergency to obtain an exemption from the rules.[6]  Defendants have known that Mr. Lehman's document production revealing their admissions was dispositive of Yuga Labs' case (in its favor) since 2022.  If they did not recognize that fact, they certainly knew Yuga Labs saw it that way given the numerous times Yuga Labs cited those documents during discovery. And, Defendants knew about Mr. Lehman's declaration since it was produced on February 6, 2023—two months ago.  They also knew that the testimony in his declaration was going to be used in this case, because they repeatedly told the Court as much.

Indeed, in Defendants' first improper ex parte application, filed on February 17, 2023, they noted that Yuga Labs had "three of its experts rely on it in their expert reports."  Dkt. 108-1 at 1; *id*. at 5 (stating Yuga Labs has "used the

---

[6] Defendants argue that filing an ex parte is the acceptable procedure for seeking a sur-reply.  This misses the point.  They could have and should have raised the conflict between their Opposition due date and the date they set for Mr. Lehman's deposition in early March so that the parties could attempt to resolve the conflict without the need for any sur-reply, or could identify an agreed procedure that avoided the need for any ex parte application.  They chose to keep silent about their intention with Mr. Lehman's deposition testimony.

FENWICK & WEST LLP
ATTORNEYS AT LAW

declaration in this litigation as evidence").  They then told the Court, in that same filing, that ***"Yuga will likely continue to use Mr. Lehman's affidavit, including during summary judgement."***  *Id*. at 8 (emphasis added).  On February 23, 2023, the Court advised Defendants that they would have a ruling on whether they would obtain the settlement agreement with Mr. Lehman and the related communications by "the last week of March before the . . . discovery cut-off date."  Dkt. 119 at 2. Defendants rescheduled Mr. Lehman's deposition for March 27, 2023.

Thus, by the time Yuga Labs told Defendants on **March 2, 2023** it intended to file a motion for summary judgment, Defendants knew that their deposition of Mr. Lehman would occur with insufficient time for them to use any testimony in their Opposition.  Not then or for nearly an entire month thereafter did Defendants ever once raise any issue regarding their potential desire to incorporate Mr. Lehman's deposition into their summary judgment opposition papers.

On **March 6, 2023**, when Defendants filed their motion to compel the settlement agreement and related communications with Mr. Lehman (Dkt. 121), they did not tell Judge McDermott about the conflict between the date they set for Mr. Lehman's deposition and the date their opposition papers would be due.[7]

When Defendants finally agreed to and did meet and confer on Yuga Labs' motion for summary judgment on **March 8, 2023**, Defendants did not raise the issue of potentially wanting to incorporate Mr. Lehman's deposition testimony into their opposition papers.  *See* Dkt. 139 (Joint Statement re Local Rule 7-3 Conference).  Therefore, they did not seek any proposed schedule with Yuga Labs to allow them to incorporate Mr. Lehman's deposition into their opposition papers.

---

[7] Given the Court's scheduling order setting the last date for hearing a motion for summary judgment as April 17, 2023 and the fact that Defendants still had not met and conferred with Yuga Labs on its motion on March 6, 2023, the only possible date their opposition would be due was March 27, 2023.

Fenwick & West LLP
Attorneys at Law

When Yuga Labs filed its motion on **March 15, 2023**, which used Mr. Lehman's declaration as an exhibit (Exhibit 27), Defendants did not raise the issue at this point either (or for another two weeks).

On **March 22, 2023**, after Yuga Labs filed its Motion for Summary Judgment and when counsel for Yuga Labs asked Defendants whether they still intended to take Mr. Lehman's deposition, Defendants did not raise the issue at this point either when they confirmed they would proceed with the deposition.

When Defendants filed their Opposition on **March 27, 2023**, even though they complained that they "have not yet had an opportunity [to] 'explore whether the Declaration was coerced or was a condition of settlement as seems likely,'" Dkt. 163 at 12 (emphasis removed), they did not raise the issue at this point either. Indeed, they also did not file an affidavit or declaration pursuant to rule 56(d) at that time (or any time) swearing that they could not present facts essential to justify their Opposition to Yuga Labs' Motion.

Later, on **March 27, 2023**, after Defendants completed Mr. Lehman's deposition and learned that there was no basis to argue that Mr. Lehman's declaration was perjured, Defendants did not raise the issue at this point either.

It was only on **March 30, 2023** — almost a month after learning of Yuga Labs' Motion and knowing the timing of Mr. Lehman's deposition — that Defendants informed Yuga Labs that they intended to file a sur-reply addressing the deposition testimony. Even then, they indicated that they planned to meet and confer with Yuga Labs pursuant to Local Rule 7-3 and file a regularly noticed motion. Dkt. 205-3 at 8 ("Please provide your availability for a L.R. 7-3 conference."). The parties then agreed on a date for that meet and confer of lead counsel to occur the following week after Defendants' lead counsel returned from his travel. It was only after the parties scheduled that meet and confer call and nearly one week later that Defendants then wrote that they planned to bring this issue to the Court through an ex parte application. Defendants' delay (both from

FENWICK & WEST LLP
ATTORNEYS AT LAW

when they learned of Yuga Labs' Motion and even after they took Mr. Lehman's deposition) is the sole reason for any crisis.  But fabricating a reason for their motion does not meet the ex parte standard.  *Mission Power Eng'g*, 883 F. Supp. at 493 (denying ex parte application where movant failed to "establish that it was without fault in creating whatever it is that it perceives as a crisis condition.").

Defendants also cannot credibly argue that they were surprised by Mr. Lehman's testimony, as their position since their February 17, 2023 ex parte application has been that Mr. Lehman's declaration is "important[t] to this case" and that its "credibility is a highly relevant issue," arguing that the statements in the declaration "have been taken out of context or are simply incorrect."  Dkt. 108-1 at 7–8.  Even if Mr. Lehman's testimony was a bombshell that affected the other evidence in this case (it was not, as explained above), Defendants have been representing all along that this is what they expected, and so they cannot now argue they were surprised that Yuga Labs relied on it for its Motion.  Of course, Mr. Lehman's testimony contained no such surprising revelations.

Defendants also did not use *a single settlement communication* during Mr. Lehman's deposition, even after arguing to the Court that "Defendants did not accept Yuga's offer [to produce the settlement agreement] because the communications are necessary to adequately test the credibility of Mr. Lehman's affidavit as they including [sic] additional information on the negotiation process that led to the affidavit and the underlying settlement agreement."  Dkt. 121-1 at 6.  Thus, they could have obtained the settlement agreement Yuga Labs offered to produce as a compromise position back in February and deposed Mr. Lehman in early March.  But, they insisted on seeking the confidential settlement communications between counsel for Mr. Lehman and counsel for Yuga Labs even

FENWICK & WEST LLP
ATTORNEYS AT LAW

after each of those attorneys had told them there was not going to be anything useful for them in those documents.[8]

Defendants' unnecessary and improper request to file a sur-reply, after Yuga Labs' Motion for Summary Judgment has been fully briefed with all accompanying documents submitted, would cause great prejudice to Yuga Labs and to the Court, who have already spent significant resources on this motion. And, as Yuga Labs has already raised as a concern, "Defendants' repeated violations of this Court's orders continues to needlessly increase the cost of this lawsuit." Dkt. 193-1 at 1:17-18.

Indeed, this application is part of Defendants' pattern of timing their filings with the Court to coincide with holidays as an abusive litigation tactic. Defendants' first Local Rule 37-1 letter was sent such that the time to meet and confer overlapped completely with the Thanksgiving holiday and the meet and confer had to be completed on the Monday immediately following Thanksgiving. Dkt. 69-9. Defendants then timed their first joint stipulation such that Yuga Labs' response was due the day after the Christmas holiday and refused to grant a three-day extension. See Dkt. 69-1, 69-36. Then, on December 27, 2022, Defendants filed counterclaims early, timed such that Yuga Labs' answer was due on the day after Martin Luther King Jr. Day. Dkt. 65. On February 17, 2023, Defendants filed a procedurally deficient ex parte application after close of business on the Friday before a federal holiday weekend. Dkt. 108. Now, Defendants have filed their third improper ex parte application in connection with yet another holiday weekend.[9] This harassing tactic is not a coincidence.

---

[8] Yuga Labs resisted their production because of the very real chilling effect of producing its confidential settlement communications when there is another, similar, pending lawsuit with one of Defendants' co-conspirators and where the emails provide Defendants' counsel with an unfair advantage in any settlement discussions the parties here might have.

[9] Only after Yuga Labs' team had canceled their Friday and Saturday plans to be prepared to respond within 24 hours to Defendants' latest abusive ex parte did Defendants indicate that they were willing to file on Monday instead of Friday. By that point, the harm had been inflicted on Yuga Labs' counsel.

## 2.   Defendants' Latest In a String of Procedural Violations Caused Significant Prejudice to Yuga Labs

Defendants' counsel's violations of this Court's orders and the local rules are persistent and prejudicial.  *See e.g.* Dkt. 40 (striking Defendants' anti-SLAPP motion for "violating paragraph 3(b) of the Courts Standing Order"); Dkt. 198 (Court order enforcing Defendants' agreement to pay $10,000 following their violation of the Court's sealing rules and the Protective Order).  Here, in their latest in their string of violations of the Court's orders, Defendants filed their ex parte application at 6:05 p.m., *but waited until 4:07 a.m. the next day* to email Yuga Labs some (but not all) of the unredacted copies of their papers.  Ball Decl. ¶ 5.  They sent the remaining papers at 12:32 p.m. on April 8.  *See* Local Rule 79-5.3 ("Because documents filed under seal (even those filed electronically) are visible on CM/ECF or PACER only to Court personnel and the person who filed the document, a person electronically filing a document under seal may not rely on the Court's CM/ECF System to effect service . . . .  At the time of filing, the documents must be accompanied either by a Proof of Service in the form required by L.R. 5-3.1.2 or by a declaration explaining why service is not required.").  Yuga Labs confirmed too that Defendants neither faxed nor hand served their ex parte papers on Yuga Labs' counsel on April 7.  Ball Decl. ¶ 6; Dkt. 14 at Section 6 ("In addition to electronic service, the moving party shall immediately serve the opposing party by fax or hand service . . .").  Defendants and their counsel have no excuse for the repeated violations of this Court's orders.  Defendants' proposed remedy for their violation (a stipulation of more time to respond) would require *more* work for Yuga Labs' team which would need to be done over the same holiday weekend.

A court may impose sanctions under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). A

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   court may exercise this power by requiring the sanctioned party to pay the opposing

2   party's attorney's fees. *Id.*

3       Further, "[d]istrict courts have the inherent power to sanction a lawyer for a

4   'full range of litigation abuses.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d

5   1015, 1034–35 (9th Cir.2012) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55

6   (1991)). "'[A] district court may levy sanctions pursuant to its inherent power for

7   'willful disobedience of a court order . . . or when the losing party has acted in bad

8   faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 1035 (quoting *Fink*

9   *v. Gomez*, 239 F.3d 989, 991-993 (9th Cir. 2001)). "[A] 'willful' violation of a

10  court order does not require proof of mental intent such as bad faith or an improper

11  motive, but rather, it is enough that a party acted deliberately." *Id.* at 1035.

12      Defendants' application lacks any substantive merit and should be denied for

13  that reason, but the procedural impropriety of Defendants' filing also warrants denial

14  and admonishment by the Court.  Defendants and their counsel should be required,

15  at a minimum, to pay Yuga Labs' attorneys' fees and costs in connection with

16  responding to this frivolous and procedurally improper ex parte application.

17  **III.   CONCLUSION**

18      Yuga Labs respectfully asks the Court to deny Defendants' application and

19  award Yuga Labs' its attorneys' fees and costs incurred in responding to Defendants'

20  improper ex parte application, in addition to any further sanctions the Court deems

21  necessary and appropriate.

22      To the extent the Court grants the ex parte application and determines that the

23  sur-reply may affect the outcome of Yuga Labs' Motion for Summary Judgment,

24  Yuga Labs respectfully requests an opportunity to be heard.

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

Dated:  April 8, 2023                    FENWICK & WEST LLP


                                         By: */s/ Eric Ball*
                                             Eric Ball
                                         Attorneys for Plaintiff and
                                         Counterclaim Defendant
                                         YUGA LABS, INC.

1

## CERTIFICATE OF COMPLIANCE

2  The undersigned, counsel of record for Plaintiff Yuga Labs, Inc., certifies

3  that this brief contains 6,060 words, which:

4     X   complies with the word limited of L.R. 11-6.1.

5

6  Dated:  April 8, 2023                    FENWICK & WEST LLP

7

8                                         By:  */s/ Eric Ball*

9                                           Eric Ball

10                             Attorneys for Plaintiff and
Counterclaim Defendant

11                             YUGA LABS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW