Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., | Case No. 2:22-cv-04355-JFW-JEM |
|                 Plaintiff and Counterclaim Defendant, | **DEFENDANTS' OPPOSITION TO YUGA'S MOTION FOR ATTORNEYS' FEES** |
|      v. | Judge: Hon. John F. Walter |
| Ryder Ripps, Jeremy Cahen, | Hearing: May 1, 2023, at 1:30 p.m. |
|                 Defendants and Counterclaim Plaintiffs. | Courtroom: 7A<br>Trial Date: June 27, 2023 |

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.     INTRODUCTION ................................................................................ 1

II.    ARGUMENT ....................................................................................... 2

    A.    Yuga's Billing Practices Require Across the Board Reduction, and Itemized Deductions ...................................................................... 2

    B.    Yuga Performed Unnecessary, Duplicative, and Excessive Work That Should Not Be Credited ...................................................... 6

    C.    Yuga Fails to Bear Burden That Its Claimed Rates are Reasonable for the Forum ........................................................................... 10

    D.    Final Fees Calculation .................................................................. 15

III.   CONCLUSION ............................................................................... 15

# **TABLE OF AUTHORITIES**

## **CASES**

Page No.

*AECOM Energy & Constr., Inc. v. Topolewski*, No. CV17-5398-RSWL-
   AGRx, 2022 WL 1469501 (C.D. Cal. May 9, 2022) .......................................... 11

*AT&T Mobility LLC v. Yeager*, No. 2:13-cv-00007-KJM-DB, 2018 WL
   1567819 (E.D. Cal. Mar. 30, 2018) ....................................................................... 7

*Blackburn v. ABC Legal Services, Inc.*, No. 11-cv-01298-JSW (NC),
   2012 WL 1067632 (N.D. Cal. 2012) ..................................................................... 4

*Blum v. Stenson,* 465 U.S. 886 (1984) ................................................................. 10, 14

*Brandt v. Astrue*, No. 08-CV-0658-TC 2009, 2009 WL 1727472 (D. Or.
   2009) ....................................................................................................................... 3

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir.2008) ........................ 10, 11

*Campbell v. National Passenger R.R. Corp.*, 718 F. Supp. 2d 1093 (N.D.
   Cal. 2010) ............................................................................................................... 3

*Christian Research Inst v. Alnor.*, 165 Cal. App. 4th 1315 (2008) ................... 2, 4, 7, 8

*CoreCivic Inc. v. Candide Group,* No. C-20-03792-WHA, 2022 WL
   16823696 (N.D. Cal. Nov. 8, 2022) ....................................................................... 8

*Crestmont Cap., LLC v. P.A.R. Consulting, LLC*, No.
   SACV191349JVSADSX, 2020 WL 6528418 (C.D. Cal. Sept. 17,
   2020) ..................................................................................................................... 12

*Fleming v. Impax Labs., Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496
   (N.D. Cal. July 15, 2022) ..................................................................................... 11

*G & G Closed Circuit Events v. Velasquez*, No. 1:20-cv-1736-JLT-SAB,
   2022 WL 348165 (E.D. Cal. Feb. 4, 2022) ............................................................ 6

*Gonzalez v. City of Maywood,* 729 F.3d 1196 (9th Cir. 2013) .............................. 14

*Grant & Eisenhofer, P.A. v. Brown*, No. CV175968PSGAFMX, 2018
   WL 4945303 (C.D. Cal. May 14, 2018) ............................................................... 12

*Hedley & Bennett, Inc. v. Mejico*, No. EDCV22816JGBKKX, 2022 WL 2309891 (C.D. Cal. June 24, 2022)..................................................12

*Hicks v. Toys 'R' Us-Delaware, Inc.*, No. CV13-1302-DSF, 2014 WL 4670896 (C.D. Cal. Sept. 2, 2014) .......................................................13

*Huhmann v. FedEx Corp.*, No.13-cv-00787-BAS(NLS) 2015 WL 6127198 (S.D. Cal. Oct. 16, 2015) ..........................................................4

*Hyan v. Liberty Surplus Ins. Corp.*, No. CV 14-2004-JVS-FFMx, 2020 WL 5092448 (C.D. Cal. Jan. 15, 2022).........................................2, 4, 5

*L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888 (E.D. Cal. 2009)....................................6

*Langer v. Gozon,* No. CV199190PSGMAAX, 2021 WL 5923578 (C.D. Cal. Aug. 25, 2021) ..............................................................................13

*Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 10817257 (C.D. Cal. Nov. 23, 2020) ...................................................10, 12, 14

*League of Latin Am. Citizens, Inc. v. Eureste*, No. 13-cv-04725-JSC, 2014 WL 5473560 (N.D. Cal. Oct. 28, 2014) ......................................10

*Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*, No. S-14-0666-KJM-CKD, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014).....................1, 7

*Maughan v. Google Tech. Inc.*, 143 Cal. App. 4th 1242 (2006) ...............................1, 7

*Mireskandari v. Daily Mail*, No. CV 12-02943-MMM-FFMx, 2014 WL 12586434 (C.D. Cal. Nov. 7, 2014) ...............................................4, 6

*Missouri v. Jenkins*, 491 U.S. 274 (1988) ....................................................6

*Moore v. Chase, Inc.*, No. 1:14-cv-01178-SKO, 2016 WL 3648949 (E.D. Cal. July 7, 2016)................................................................................6

*Mullan v. Daniels*, No. 19-cv-04058-KAW 2021 WL 4932726 (N.D. Cal. Apr. 7, 2021)................................................................................10

*Serrano v. Unruh*, 32 Cal.3d 621 (1982)...................................................2, 6

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (Gorsuch, J. concurring) .........................2

*United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100 (9th Cir. 2015)................................................................................10

*Welch v. Met. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) ........................................3, 4

## I.    INTRODUCTION

Yuga asks this Court to award it nearly a quarter of a million dollars in legal fees for preparing roughly 25 pages of briefing.  Yuga's request should be rejected as divorced from the accepted standards for reasonable fees.  An appropriate fee for the straightforward work that Yuga's lawyers performed is $26,400.[1]

Courts in California have repeatedly recognized that 40-75 hours is the expected range of hours for an anti-SLAPP motion and a corresponding motion for fees.  *See Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*, No. S-14-0666-KJM-CKD, 2014 WL 5698448 at *4 (E.D. Cal. Nov. 4, 2014) (collecting cases); *Maughan v. Google Tech. Inc.*, 143 Cal. App. 4th 1242, 1252 (2006) (affirming reduction of hours claimed by anti-SLAPP/defamation specialists from 200 hours to 50 hours).  Yuga, however, astonishingly claims a total of 235.5 hours—***four times the expected range***—and seeks the disproportionate award of $233,231.25.

When looking at Yuga's invoice, it is clear how Yuga inflated its bills.  Yuga billed by the .25 hour instead of the .1 hour, which the Ninth Circuit has held warrants a global 20-30% reduction in fees.  Yuga also claims 111.4 hours that were block-billed—another practice for which Courts apply a 20-30% reduction.  Not to mention that Yuga's invoice impermissibly includes tens of thousands of dollars for clerical tasks, research on unrelated issues, duplicative bills, and another $8,571.25 in fees that are aggressively or entirely redacted.  There are many more issues with Yuga invoice, all of which are discussed in greater detail below.

Moreover, Yuga's attorneys claim to be defamation specialists with strong anti-SLAPP experience; they have not demonstrated why writing an anti-SLAPP motion took so much of their time.  In fact, courts have recognized that experts would work more quickly and bill fewer hours than other firms.  *Maughan*, 143 Cal. App. 4th at

---

[1] Defendants expressly reserve their rights to appeal the grant of Yuga's anti-SLAPP motion to strike following entry of final judgment.

1251; *Lee-Tzu Lin*, 2014 WL 5698448 at *4. Remarkably, Yuga's invoice on its fees motion alone is nearly as much as the reasonable fees awarded in *Lee-Tzu* and *Maughan* for the entire lawsuit. The Court should not indulge Yuga's efforts to leverage the fee award system to create a windfall for attorneys and should instead award reasonable fees in the amount of $26,400.

## II.    ARGUMENT

### A.    Yuga's Billing Practices Require Across the Board Reduction, and Itemized Deductions

Courts look at the claiming party's billing practices as a factor in determining whether they carry their burden to prove that their request is reasonable. *Christian Research Inst v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). Poor billing practices and a lack of documentation specific enough for the court to discern what time was spent on which tasks is grounds for reducing a fee award. *Id.* at 1322; *Serrano v. Unruh*, 32 Cal.3d 621, 635 & n.19 (1982) (bad billing documentation is a way that parties can abuse fee process which can justify a trial court to "reduce the award or deny one all together"). Yuga's billing practices and submitted invoices are severely flawed and therefore require both specific and general deductions to their claimed fee award.

*First*, Yuga bore the burden to prove that the work was performed on the anti-SLAPP portions of the case and not on other work. *See Hyan v. Liberty Surplus Ins. Corp.*, No. CV 14-2004-JVS-FFMx, 2020 WL 5092448 at *3 (C.D. Cal. Jan. 15, 2022) (holding that fee seeker's invoices did not contain enough evidence to avoid reduction). Yuga submitted billing invoices rife with redacted entries. *See* Dkt. 182-2. Defendants cannot possibly challenge entries hidden behind a black box. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1228 (2018) (Gorsuch, J. concurring) (explaining that notice is the bedrock of due process). And there is no way for Defendants or this Court to know what lies behind redactions and whether the work claimed is relevant. Yuga claims $8,571.25 in fees on entries that include redactions

including several that are redacted in their entirety.  At the very least, the Court should deduct the fully redacted entries from Yuga's claimed award and severely reduce any time claimed on partially redacted entries.  Further, because the Court has the power to reduce a claimed award made in bad faith, this Court should exercise that option where Yuga claims fees that Defendants cannot possibly contest.

**Second**, Yuga's attorneys (Clare Locke) bills by the .25 hour instead of by the .1 hour as is industry standard, including as used by Fenwick and West.  *Compare* Ball Decl. ¶ 3 with Meier Decl. ¶ 17.  Courts have reduced fee awards on the basis that the billing fractions utilized by attorneys were too broad and thus inflated the bill. *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948-49 (9th Cir. 2007) (affirming global 20% reduction to fee award due to quarter hour billing); *Brandt v. Astrue*, No. 08-CV-0658-TC 2009, 2009 WL 1727472 (D. Or. 2009) (applying 30% global reduction). Following the *Welch* and *Brandt* rule, the court here should apply a similar universal reduction to the hours claimed.  The use of quarter-hour billing is especially troublesome in light of Clare Locke's pervasive use of block billing, discussed below. Because the bills are inflated by using quarter hour billing, Defendants respectfully request a global 30% reduction to the claimed hours or 68.84 hours out of 229.45 hours.

**Third**, Clare Locke also engages in improper block billing.  Block billing is the practice of entering an attorney's full day's work on a case without itemizing specific tasks, or billing multiple discrete tasks in one billing entry.  *Campbell v. National Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010).  The majority of invoice entries submitted by Yuga fit this definition to a tee.  For example, Yuga claims that it is entitled to David Sillers' work on March 28, 2023 in which he claims, "Research anti-SLAPP attorneys' fees cases, draft/revise anti-SLAPP fee motion and supporting affidavit, correspondence with Fenwick re: strategy and next steps; correspondence re: joint statement to court re: meet and confer."  This one entry

contains four different tasks and no way to discern which parts of the claimed time were spent on each of these four specific tasks.  This specific entry is not an aberration in Clare Locke's bills, but is instead the norm.  In fact, of the hours 235.5 hours claimed in their invoice, 111.4 of them (nearly 50%) derive from block billed entries.

Courts look dimly on block billing because it inflates fee awards by as much as 30%.  Both California state courts and courts in the Ninth Circuit often reduce over 20% on block billed hours because of the inflationary aspect of those awards.  *See Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (affirming district court's ability to reduce based on block billing, 20% reduction was justified); *Huhmann v. FedEx Corp.*, No.13-cv-00787-BAS(NLS) 2015 WL 6127198 at *8 (S.D. Cal. Oct. 16, 2015) (applying 20% reduction on block billed hours), *Christian Research Inst.*, 165 Cal. App. 4th at 1329 (approving practice of broad reduction for block billing).  Because improper block billing pervades the entirety of the invoice, Defendants respectfully request a reduction of Clare Locke's block billed hours by roughly 20%, or by 22.5 hours.

**Fourth**, the California anti-SLAPP law only applies to state law causes of action, which means that only fees for work spent on state law claims are eligible for the fees award.  But Yuga fails to prove that all of the claimed hours relate to the state law causes of action.  *See  Hyan*, 2020 WL 5092448 at *3 (C.D. Cal. 2020) (reducing fee award because fee requestor failed to demonstrate work was solely on anti-SLAPP motion when it brought an anti-SLAPP combined with a motion to dismiss).

Yuga bore the burden to prove that the work claimed was only on the state law causes of action or that the federal causes of action were so intertwined with the state causes of action that they could not be separated.  *Blackburn v. ABC Legal Services, Inc.*, No. 11-cv-01298-JSW (NC), 2012 WL 1067632 at *2 (N.D. Cal. 2012); *Mireskandari v. Daily Mail*, No. CV 12-02943-MMM-FFMx, 2014 WL 12586434 at *15 (C.D. Cal. Nov. 7, 2014).  Yuga does not claim that these parts of its motion are

so intertwined, nor could it.  The federal causes of action all focused on copyrights and facts related to copyrights.  The state law claims, do not involve copyright at all, and focus on the actions of various Yuga agents.  For claims to be intertwined they must share common facts and legal theories.  *Id*.  Notably, Yuga does not even attempt argue that the work was intertwined.  Even if Yuga is correct that the counterclaims are all variations of defamation, defamation style claims and copyright-related claims have different underlying facts and legal theories.

The supplied billing entries do not specify whether the time spent by the Clare Locke attorneys was solely on the state claims or the federal claims.  The invoices themselves are vague, referring to "drafting the anti-SLAPP motion" or "review Defendants opposition," but the motion and opposition implicate issues that are not fee eligible.  Courts in this district have held that similar entries are inadequate to prove that the work is fee eligible.  *See Hyan*, 2020 WL 5092448 at *3 (C.D. Cal. 2020).  Yuga's cursory explanation that Clare Locke had a special billing number for the motion does not prove that the work performed was not solely on the ***state law*** claims and not on the motion as a whole.  Further, merely stating that Fenwick "took the lead" on the federal counterclaims does not disclaim work on the federal counterclaims by Clare Locke.  Simply put, Clare Locke and Yuga's cursory explanations do not carry their burden to prove that the billed work was fee eligible.  Defendants propose that this Court follow its sister court by applying a percentage deduction against the claimed fee award.  Yuga divided the combined motion into the six original causes of action, three federal and three state law causes of action.  This means that half of the claims at issue were fee-eligible and half were not.  Courts routinely provide a reduction that estimates how much time was spent solely on the state law issues.  Given the amount of attention spent to the federal and state law issues in their anti-SLAPP motion, Defendants believe a reduction of 1/3 of the hours on the anti-SLAPP motions, or 65.92 hours, is appropriate.

**Fifth**, Clare Locke also improperly includes clerical or administrative tasks, and those too must be deducted from the total.  *See G & G Closed Circuit Events v. Velasquez*, No. 1:20-cv-1736-JLT-SAB, 2022 WL 348165 (E.D. Cal. Feb. 4, 2022).  Clerical tasks include updating files, filing emails, and sending correspondence.  *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009); *Moore v. Chase, Inc.*, No. 1:14-cv-01178-SKO, 2016 WL 3648949 at *3 (E.D. Cal. July 7, 2016).  Courts look at the task, and not who performs the task in determining whether it is non-billable clerical work.  *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1988).  Here Yuga claims time for tasks such as "managing the file" and "uploading documents" to a case management system, and preparing an invoice.  These are patently clerical tasks, and also deductible for being vague.  In total, Clare Locke claims that it is owed $1,315 for clerical duties across two hours of billed work that must be deducted.

**Lastly**, Yuga has included specific invoice hours that are not even facially relevant to the anti-SLAPP motion at issue or the fees motion.  This includes $1,215 researching Defendants' Motion to Stay.  *See* Dkt. 182-2 K. Humphrey entries on 3/7/23 and 3/13/23.  Other entries in that time period are too amorphous on their face to discern whether they are related to the fee-eligible portion of Defendants' motion to strike, or even if they relate to this case at all.  These entries include absolutely no reference to the underlying motion and they total $1,092.50 in fees.  Because the court is not supposed to award a windfall of fees, it should strike both the amorphous time entries and the facially invalid entries from the fees award.

**B.      Yuga Performed Unnecessary, Duplicative, and Excessive Work That Should Not Be Credited**

Yuga cannot claim fees for unnecessary, duplicative, or excessive work.  *See Mireskandari v. Daily Mail*, 2014 WL 12586434 at *17 (C.D. Cal. 2014).  Otherwise, the incentives for attorneys would be to rack up exorbitant bills in hope for a windfall.  *See Serrano v. Unruh*, 32 Cal.3d 621, 635 (1982) (decrying "greedy" fee requests).  In determining whether a fee award is reasonable, courts look at the complexity of the

matter and uses its own knowledge in assessing how long the work product should have taken.  *Christian Research Inst.*, 165 Cal. App. 4th at 1327.  One important guide in this analysis is similar cases and awards before other courts.  *See AT&T Mobility LLC v. Yeager*, No. 2:13-cv-00007-KJM-DB, 2018 WL 1567819 at *3 (E.D. Cal. Mar. 30, 2018) (comparing award amount to other cases).  Yuga claims an astonishing 197.75 hours worked on the anti-SLAPP motion and 35.75 hours on the fees motion, or 233.5 hours total.  Courts have held that 40-75 hours is the expected total range of claimed hours.  *See id*; *Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*, 2014 WL 5698448 at *4 (collecting cases); *Maughan v. Google Tech. Inc.*, 143 Cal. App. 4th 1242, 1252 (2006).  On its face, Yuga is claiming four times the standard amount of work and therefore needs to demonstrate that aspects of this anti-SLAPP are exceptionally complicated to justify such an award.

**First**, on the anti-SLAPP motion itself, the Clare Locke attorneys claim they spent an astounding 197.75 hours—over one hundred hours more than the high-end of normal as recognized by courts.  *See Lee-Tzu Lin*, 2014 WL 5698448 at *4.  While awards beyond 75 hours have been granted, it is generally because the movant demonstrates that the case itself, and therefore the motion, was unusually complex.  This case lacks that level of complexity.  None of the arguments advanced on the state law claims were particularly novel or unique.

Notably, Yuga does not even attempt to argue that the motion itself was complicated or complex beyond a cursory statement that California anti-SLAPP law is complex and that the basic state law torts brought by Defendants were complex.  *See* Dkt. 182 at *8.  California courts however, disagree with the contention that anti-SLAPP motions are *per se* complex.  *Christian Research Inst.*, 165 Cal. App. 4th at 1327 (describing anti-SLAPP claim related to defamation tort as "not complex" and reducing hours claimed to 71 hours); *CoreCivic Inc. v. Candide Group,* No. C-20-03792-WHA, 2022 WL 16823696 at *6 (N.D. Cal. Nov. 8, 2022) (holding that

defamation/anti-SLAPP case was not overly complex and spending over 200 hours on it was "excessive").  Yuga's anti-SLAPP motion related to the state law claims and this Court's decision granting Yuga's motion highlight this simplicity.  On the emotional distress claims, Yuga relied on basic principles of California tort law and arguments that the claims really arose out of Yuga's speech activities.  *See* Dkt. 89 at *3-13.  They advanced no novel or unique legal theories, nor are they claiming discovery costs on these claims.  *See Christian Research Inst.* 165 Cal. App. 4th at 1326.[2]  On the declaratory judgment for no defamation claim, Yuga advanced the most common argument against declaratory judgments: that there is no justiciable case or controversy.  Dkt. 89 at *13.  This too was not a particularly complicated or fact-bound inquiry.  All other contentions made by Yuga—including that WilmerHale is a high-quality firm—are irrelevant to whether Clare Locke inflated its bill.

Moreover, the billing invoices demonstrate unnecessary, duplicative, and excessive work.  Due to Clare Locke's use of block billing, it is hard to precisely determine how much work was spent on each specific task.  *See supra p.* 4.  On billing entries that include the words "draft" or "revise," Clare Locke claims it spent 113.45 hours on the relevant motions.  That total only includes entries which include active writing or revising.  This equates to three attorneys drafting full time every day for an entire week.  Spending that much time drafting simple motions is plainly excessive.  Beyond that, Clare Locke repeatedly claims that two people were drafting at the same time and logging full work-days on the same day.  For example, on January 4, 5, 6, and 13, both David Sillers and Kathryn Humphrey logged at least 7 hours each "drafting" the motion.  Assigning two lawyers, including one at the partner

---

[2] Yuga references "discovery" multiple times in its motion.  However, the submitted invoices do not reference "discovery" at all.  Therefore, they care not claiming discovery costs.  To the extent Yuga is claiming discovery costs, Yuga itself took discovery on Defendants counterclaims first, by asking Defendants probing questions about their emotional distress claims at deposition.

level, to do the exact same work on the exact same day for the entire day is definitionally "duplicative" work.  Courts have either reduced the duplicative work by eliminating the unnecessary work or reduced the overall hours to a reasonable amount.

Yuga's contention that it is not seeking its "full fees" does not deflect from Clare Locke's pattern of bad billing practices, routine duplicative work, and excessive amount of time spent.  The billing problems are endemic, and the duplicative and extra work claimed is extraordinary.  Defendants respectfully request that all duplicative entries be stricken and that the Court award no more than 40 hours in total. In the alternative, the court should reduce the total hours amount by 28.5 hours or $26,835 to reflect time entries where two Clare Locke attorneys were engaged in the same task, on the same day, at the same time—and reward only the work of one attorney for those hours.

***Second***, the fees on fees request is facially excessive.  Claire Locke claims they spent nearly the amount of a normal anti-SLAPP motion, over 30 hours, ***on the fees motion alone***.  Astonishingly, Clare Locke claims it spent this amount of time on the motion, but it is not even signed by them, it is signed by Eric Ball of Fenwick. Defendants cannot grasp how such a straightforward motion signed by co-counsel could have taken Clare Locke so much time.  It is even more confusing because Clare Locke is experienced in these matters and could likely draft the motion quickly.

Beyond claiming an excessive amount of hours spent by Clare Locke on the fees motion, Yuga makes no attempt to claim that this fees request is in any way complicated—because it simply is not.  The brief in support of the fees award is 12 straightforward pages.  No bizarre or complicated legal issues were implicated.  There is no reason in the brief or the invoices that show why Clare Locke attorneys had to spend more than the normal amount of time on this motion, much less over triple the amount of time it takes to litigate an entire anti-SLAPP motion on fees.  The burden is on Clare Locke to show the reasonableness, and they provide nothing in support.

Because the fees request on the fees motion is facially excessive and appears intentionally inflated, Defendants request that the Court strike most of the hours spent on the fees on fees portion of the case.  A reasonable amount spent on this straightforward motion is at most ten hours.  *See League of Latin Am. Citizens, Inc. v. Eureste*, No. 13-cv-04725-JSC, 2014 WL 5473560 at *3 (N.D. Cal. Oct. 28, 2014) (holding ten hours as reasonable); *Mullan v. Daniels*, No. 19-cv-04058-KAW 2021 WL 4932726 at *5 (N.D. Cal. Apr. 7, 2021).  As a result, Defendants respectfully request that this Court reduce the fees on fees hours to no more than ten hours.

### C.  Yuga Fails to Bear Burden That Its Claimed Rates are Reasonable for the Forum

The second component of the lodestar analysis requires a determination of a reasonable hourly rate "in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015) (internal quotations omitted) (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.2008)).  The burden of establishing the rates requested are reasonable is on the "party seeking attorneys' fees" who "must provide satisfactory evidence ... that the requested rates are in line with those prevailing in the community." *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 10817257, at *4 (C.D. Cal. Nov. 23, 2020) (internal quotations omitted) (citing *Blum v. Stenson,* 465 U.S. 886, 895-96 n. 11 (1984)). Yuga has not met that burden.

Further, "[w]hen applying the lodestar method to determine a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Laub*, 2020 WL 10817257, at *5 (C.D. Cal. Nov. 23, 2020) (internal quotations omitted) (citing *Camacho*, 523 F.3d at 979 (9th Cir. 2008)). Here, therefore, the reasonable rate in question is for attorneys working in Los Angeles on work similar to an anti-SLAPP motion.

Yuga seeks payment of fees for rates charged by a law firm based in Washington, D.C. that are incredibly high for a simple anti-SLAPP motion in Los Angeles. Specifically, Yuga seeks payment based on hourly rates of $1,250 for a partner, $1,000 for a counsel, and $810 for an associate. Dkt. 182-2 at 6. Additionally, Yuga seeks payment of the work of three individuals that are only obliquely referenced as "paralegals and other professionals" with hourly rates ranging from $375-425. Dkt. 182 at 10. Yuga does not provide sufficient evidence to support a finding that these inflated rates are reasonable for work performed on a motion in Los Angeles.

*First*, the rates Yuga seeks are not supported by the cases they cite to, which deal with dissimilar work. Specifically, Yuga cites to *Fleming* for support of hourly rates here, but that case was in another district and involved fees for work performed on ***an entire class action that resulted in a $33 million settlement***, which is an exceedingly more complex, time consuming, and risky representation than preparing a motion in a litigation against two individuals. *Fleming v. Impax Labs., Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *1, 7 (N.D. Cal. July 15, 2022). Additionally, even in that more involved case, the court found that a reasonable rate for associates ranged from $175-$520, which is substantially less than the $810 Yuga seeks here. *Id.* at *9. *See also* Dkt. 182 at 11 (citing to *AECOM* for comparable reasonable rates where the fees were based on a complex litigation surrounding discovery and motions occurring after the Ninth Circuit reversed and remanded a $1.8 billion damages award. *AECOM Energy & Constr., Inc. v. Topolewski*, No. CV17-5398-RSWL-AGRx, 2022 WL 1469501, at *2 (C.D. Cal. May 9, 2022)).

Instead, cases in this district that deal with other anti-SLAPP motions or similar motion practice have found that reasonable rates are considerably less than those Yuga seeks. *See Laub*, 2020 WL 10817257, at *6–7 (C.D. Cal. Nov. 23, 2020) (finding that $872 for partners, $715 for counsel, and $591 for associates were reasonable rates for

Davis Polk attorneys based on the court's "own familiarity with the billing rates of experienced complex business litigators the Los Angeles legal market"); *Crestmont Cap., LLC v. P.A.R. Consulting, LLC*, No. SACV191349JVSADSX, 2020 WL 6528418, at *3 (C.D. Cal. Sept. 17, 2020) (finding rates ranging from $360-$695 for a junior associate through a partner were reasonable for work done on several anti-SLAPP motions); *Hedley & Bennett, Inc. v. Mejico*, No. EDCV22816JGBKKX, 2022 WL 2309891, at *2 (C.D. Cal. June 24, 2022) (finding rate of $850 for a partner and $750 for counsel were reasonable for work done on an anti-SLAPP motion); *Grant & Eisenhofer, P.A. v. Brown*, No. CV175968PSGAFMX, 2018 WL 4945303, at *2 (C.D. Cal. May 14, 2018) (finding hourly rates of $600 for a partner, $500 for an associate, and $200 for a paralegal were reasonable for work done on an anti-SLAPP motion).  As those cases make clear, the rates Yuga seeks ($1,250 for partners and $810 for associates) are not even close to reasonable for the work done here.

  ***Second***, Yuga's reliance on the National Law Journal Billing survey to support a determination of a reasonable rate for attorneys performing work on a motion in a litigation in Los Angeles is misplaced.  As a court in this district has found, the National Law Journal Billing survey does nothing "to indicate that the rates are representative of the prevailing rates in the relevant community, i.e., Los Angeles" as it only includes a column identifying the "Largest U.S. Office City" for each firm and does not provide "what rates lawyers … charge in Los Angeles" nor does it "indicate whether the rates … include transactional attorneys as well as litigators." *Laub*, 2020 WL 10817257, at *5-6 (C.D. Cal. Nov. 23, 2020).  This source, therefore, is too general in the rates it provides and is not a useful tool for determining a reasonable rate in the community here.

  Additionally, Yuga purports to use that source to support their inflated rates by cherry picking a handful of firms with incredibly high rates from a list of 949 firms. Dk. 182 at 11-12.  And none of the four firms that Yuga cites to have Los Angeles

listed as their "Largest U.S. Office City."  Dkt. 182, Exhibit 3.  The non-specific

billing rates for out-of-jurisdiction firms does not provide support for whether the

rates Yuga seeks here are reasonable for work done in Los Angeles.  Even still, the

rates that Yuga requests here are **higher** than the firms they cite to or on the highest

end of the ranges listed.  *See*, *e.g.,* Dkt. 182 at 11 "Jones Day ($700-$1,050 for

partners, $850 for one counsel, and $300-$800 for associates)."

Instead, the Court should use the 2022 Real Rate Report as a benchmark for

typical rates in Los Angeles. Gosma Decl. Ex. 1. The Real Rate Report is often used

"as a useful guidepost to assess the reasonableness of these hourly rates in the Central

District" given the report "identifies attorney rates by location, experience, firm size,

areas of expertise and industry, as well as specific practice areas, and is based on

actual legal billing, matter information, and paid and processed invoices…" *Langer v.

Gozon,* No. CV199190PSGMAAX, 2021 WL 5923578, at *4 (C.D. Cal. Aug. 25,

2021)*. See also* *Hicks v. Toys 'R' Us-Delaware, Inc.,* No. CV13-1302-DSF (JCGx),

2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) (stating that the Real Rate Report

is "a much better reflection of true market rates than self-reported rates...").

The 2022 Real Rate Report provides several data points that are useful here,

including that the median hourly rate for a litigation partner in Los Angeles is $725

and $615 for an associate. Gosma Decl. Ex. 1 at 16.  It also includes adjustments for

years of experience, finding that an associate with 7 or more years of experience like

Kathryn Humphrey, Dkt. 182-2 at 3, has a median billable rate in Los Angeles of $550

(as opposed to Yuga's proposed rate of $810) and for partners with fewer than 21

years of experience like Megan Meier, Dkt. 182-2 at 2, the median rate is $801 (again,

far lower than the $1,250 that Yuga demands). Gosma Decl. Ex. 1 at 26, 32. Finally,

the report states that the median rate for paralegals nationally is $225 (again, much

lower than Yuga's $375-425), which is not community specific but a possibly useful

datapoint. Gosma Decl. Ex. 1 at 9. The rates that the 2022 Real Rate Report provide

are more reliable to show what a reasonable rate is for litigation services in Los Angeles—and provides rates much lower than Yuga's disproportionate and inflated invoice.

**Third**, Yuga has failed to provide any details on the three "paralegals and other professionals" they have included in their fees and, therefore, have not met their burden for the fees on those personnel.  Dkt. 182 at 10;  *Laub,* 2020 WL 10817257, at *4 (C.D. Cal. Nov. 23, 2020) (internal citations omitted) (citing *Blum,* 465 U.S. at 895-96 n. 11 (1984) (holding that the burden is on the moving party).  In determining if the rates are reasonable, the court needs to consider specific information about the individuals, including their skill and experience. *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1206 (9th Cir. 2013) (requiring consideration of "varied levels of skill, experience, and reputation" of each person).

Here, Defendants have provided no titles, experience, or other information about the three individuals listed in their bills at hourly rates ranging from $375-$425, besides referring to them as "paralegals and other professionals." Dkt. 182 at 10. Accordingly, Defendants have failed to meet their burden of proving those rates are reasonable as they have provided nothing to substantiate the experience or skill level of those individuals. The Court, therefore, should not consider any of their fees.

**Overall,** Yuga would have the Court believe that its rates are reasonable simply based on rates recorded on an invoice and the general experience of the attorneys, but that is not enough.  Yuga gives no basis for the Court to accept that Yuga's attorneys charged fair rates for a motion in Los Angeles or that it bills a reasonable number of hours.  Based on findings of reasonable fees for similar work to the simple motions made here and the 2022 Real Rate Report, the rates included by Yuga should be substantially reduced and the hourly rates should be $725 for Megan Meier's work, $675 for David Sillers, and $615 for Kathryn Humphrey. As discussed above, Yuga has provided no support for the experience, skill, or even titles of the other three

individuals who are included in their fee request, and, therefore, has not fulfilled its burden of proving the rates requested are reasonable.  If the Court decides to consider those fees anyway, based on the cases and 2022 Real Rate Report, the rates should be substantially reduced to $200.

### D.    Final Fees Calculation

Yuga Labs improperly seeks a windfall through inflated rates, disproportionate hours, endemic block-billing, unrelated work, and countless other defects in Yuga's submitted invoice—resulting over quadruple the reasonable hours billed and charging hours at exorbitant rates.  As such, Defendants respectfully request that the Court reduce the attorneys fee award to a reasonable amount to account for these deficiencies.  For the benefit of the Court, Defendants have attached an exhibit detailing reductions and deductions outlined in the brief above along with highlighted copies of Yuga's invoices showing specific objectionable entries.  *See* Gosma Decl. Exs. 2-7.

However, because 40 hours at the reasonable outlined rate is the proper amount, the Court need not engage in itemized deduction.  Defendants accordingly request that the award be reduced to **$26,400** reflecting 40 hours of work conducted by David Sillers (16 hours), Kathryn Humphrey (16 hours), and Megan Meier (8 hours) at a reasonable rate.

## III.    CONCLUSION

In light of the foregoing, Defendants request that the Court set fees in the amount of $26,400.


Dated: April 10, 2023          By: /s/  *Derek Gosma*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)

tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on April 10, 2023.

By: /s/ *Derek Gosma*

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the word limit set forth in Local Rule 11.6-1.

By: /s/ *Derek Gosma*

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400