ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>　　　Plaintiff and<br>　　　Counterclaim Defendant,<br><br>　v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>　　　Defendants and<br>　　　Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**PLAINTIFF YUGA LABS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Date:　　　May 1, 2023<br>Time:　　　1:30 p.m.<br>Courtroom:　7A<br>Judge:　　　Honorable John F. Walter<br><br>Trial Date:　June 27, 2023 |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:   310.434.4300

MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA  22314
Telephone:   202.628.7400

Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

## TABLE OF CONTENTS

Page

A. Defendants fail to analyze the factors California courts apply to fee applications. ................................................................................................ 1

B. California law does not support Defendants' proposed "across the board" reductions. ................................................................................... 3

C. Defendants have failed to show any fees sought were "unnecessary, duplicative, or excessive." ..................................................................... 6

D. Clare Locke's Rates Are Reasonable. ................................................... 8

CONCLUSION ................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brandt v. Astrue*,
  No. 08–0658, 2009 WL 1727472 (D. Or. June 16, 2009) .................................. 6

*Hallock v. Healy*,
  No. CV 20-02726, 2020 WL 12188989 (C.D. Cal. Nov. 2, 2020) ..................... 2

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..................................................................................... 2, 5

*Herring Networks, Inc. v. Maddow*,
  No. 3:19-cv-1713, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ........................... 4

*Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*,
  No. S-14-0666, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014) ............................ 3

*Maloney v. T3Media, Inc.*,
  No. CV 14–05048, 2015 WL 3879634 (C.D. Cal. May 27, 2015) .......... 2, 3, 4, 7

*Maughan v. Google Tech., Inc.*,
  143 Cal. App. 4th 1242 (2006) ......................................................................... 4

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .......................................................................... 4

*PLCM Group v. Drexler*,
  22 Cal. 4th 1084 (2000) .................................................................................... 1

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*,
  163 Cal. App. 4th 550 (2008) ........................................................................... 3

*Shepard v. Miler*,
  No. CIV. 2:10-1863, 2011 WL 1740603 (E.D. Cal. May 5, 2011) .................... 4

*United States v. $28,000.00 in U.S. Currency*,
  802 F.3d 1100 (9th Cir. 2015) .......................................................................... 8

*Welch v. Metro. Life. Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ......................................................................... 5, 6

FENWICK & WEST LLP

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT
OF IT'S MOTION FOR AN AWARD OF ATTORNEYS'    ii    Case No. 2:22-cv-04355-JFW-JEM
FEES AND COSTS

The Court should reject Defendants' Opposition to Yuga Labs' Motion for attorneys' fees because it fails to engage with the factors California courts consider during fee applications, and instead argues for a one-size-fits-all approach that is unsupported under California law.  The record is clear that Defendants used elite counsel to dress up meritless counterclaims with facial legitimacy that took significant time to dismantle.  It was reasonable and prudent for Yuga Labs to spend what it did defeating Counterclaims that would have radically changed the nature of the case and was the seed for millions of dollars of harassing discovery.  Defendants fought tooth and nail to save their deficient Counterclaims and have compounded their folly—and the fees—by continuing down an obstructionist path in their Opposition.

### A. Defendants fail to analyze the factors California courts apply to fee applications.

California courts are to consider a number of factors in determining whether a fee is reasonable, "including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1087 (2000), Mot. 6.  Defendants have utterly failed to address these factors, including by ignoring that the anti-SLAPP motion was critically important to Yuga Labs efforts to avoid millions of dollars of harassing and irrelevant discovery (Mot. 2-3, Dkt. No. 80 at 1), the employment of elite law firm counsel on both sides of the dispute (Mot. 6), the thorough legal researching and writing that was justified by the circumstances (Mot. 8, Meier Decl. ¶ 14, Dkt. No. 182-2), the complete success of the anti-SLAPP motion in achieving Yuga Labs' objectives (Mot. 8-9), the prompt payment of the requested fees by a satisfied client (Mot. 10), and how Defendants' own behavior made (and continues to make) the litigation more expensive than it needs to be (Mot. 9).  Notably, while Defendants repeatedly describe the motion as seeking a "windfall," Opp. 2, 6, 15,

FENWICK & WEST LLP

Yuga Labs has actually paid far *more* than it seeks to defeat Defendants' meritless counterclaims, making any "windfall" impossible. Far from a "windfall," Yuga Labs seeks a partial recovery of what it should never have had to spend and vigorously tried to avoid spending by informing Defendants multiple times of the flaws of their Counterclaims. Similarly, Defendants fail to acknowledge how courts properly review legal invoices submitted in support of a fee motion:

> [A] prevailing party "is not required to record in great detail how each minute of his time was expended." The prevailing party seeking attorneys' fees need only "identify the general subject matter of his time expenditures" to meet its burden of establishing its fee request is reasonable. This limited obligation reflects the broader policy that a "request for attorney's fees should not result in a second major litigation."

*Maloney v. T3Media, Inc.,* No. CV 14–05048, 2015 WL 3879634, at *3 (C.D. Cal. May 27, 2015) (quoting and citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). By submitting detailed invoices as well as explanatory declarations, Yuga Labs has done far more than is required. And as *Maloney* makes clear, the "party opposing a fee request **must meet that burden with specific objections to specific billing entries[,]**" *id.* at *4 (emphasis added), a burden which Defendants failed to even attempt to satisfy.

Instead of engaging with the law or objecting to "specific billing entries" as the law requires, Defendants invent a series of false propositions to advocate for large percentage discounts across the board.[1] As shown below, Defendants Opposition boils down to a series of "conclusory and unsubstantiated objections [that] do not warrant a fee reduction." *Hallock v. Healy*, No. CV 20-02726, 2020 WL 12188989 (C.D. Cal. Nov. 2, 2020). Of note, in *Hallock*, a California federal court found reasonable 268.55 hours and $159,949.50 expended in preparing a motion to strike two claims and awarded full fees because it had "no reason to doubt" the submissions of "sufficiently supported [] requested attorneys' fees." *Id.*

---

[1] To the very limited extent Defendants engage with specific entries it is only to advocate for across-the-board reductions.

at *2. There—as here—the fees sought are well-supported, fully justified, and should be awarded in full.

### B. California law does not support Defendants' proposed "across the board" reductions.

Defendants fundamentally misapprehend the facts and seek a number of "across the board" reductions that are not supported under California law. Opp. 2-5. This approach does not satisfy their burden to make "specific objections to specific billing entries," Maloney, 2015 WL 3879634, at *4, and the legal propositions they assert are not the law.

**First**, Defendants' purported bedrock legal proposition—that "**Courts in California have repeatedly recognized that 40-75 hours is the expected range of hours for an anti-SLAPP motion and a corresponding motion for fees**"—is wrong. Opp. 1. Instead, California courts apply a case-by-case approach, and have repeatedly rejected the exact "this type of motion should only take this long" argument that Defendants advance here:

> As we have discussed, each fee application under section 425.16, subdivision (c) must be assessed on its own merits according to the principles discussed in *Ketchum,* taking into account what is reasonable under the circumstances. A broad rule adopting a 50–hour limit would be contrary to this case-by-case approach.

Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n, 163 Cal. App. 4th 550, 561 (2008). Defendants' reliance on a supposedly "expected" or "normal" amount of fees pervades the Opposition. *See* Opp. 1, 7 ("four times the standard amount of work"); *id.* ("over one hundred hours more than the high-end of normal as recognized by courts"); Opp. at 9 ("no reason ... why Clare Locke attorneys had to spend more than the normal amount of time on this motion").

The two cases Defendants cite for their bedrock "expected range" proposition do not establish any type of "recognition" of an "expected" amount of hours.[2]

---

[2] Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento, No. S-14-0666, 2014 WL 5698448, at *4-7 (E.D. Cal. Nov. 4, 2014) (analyzing individual time

FENWICK & WEST LLP

Indeed, courts have repeatedly awarded fees for anti-SLAPP motions consisting of far ***more*** than the hours expended here.  *See, e.g.*, *Maloney*, 2015 WL 3879634, at *6 (finding 546.5 hours spent on anti-SLAPP motion reasonable); *Shepard v. Miler*, No. CIV. 2:10-1863, 2011 WL 1740603, at *6 (E.D. Cal. May 5, 2011) (finding 321.5 hours spent on anti-SLAPP motion reasonable); *Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713, 2021 WL 409724, at *10 (S.D. Cal. Feb. 5, 2021) (awarding fees for 363.1 hours spent on anti-SLAPP motion).  These are only examples.

In fact, the standard regarding the "right" amount of hours an attorney "should" spend is highly deferential, as the Ninth Circuit aptly remarked: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

**Second**, Defendants argue that "Yuga submitted billing invoices rife with redacted entries" to the level of raising a due process concern.  Opp. 2.  This assertion is belied by the invoices themselves.  Four entries on the first page of Exhibit 2 to the Motion are redacted but the amounts remain unredacted because those amounts are not included in the fee application.[3]  Other than those four, there is an extremely light redaction of a few words in a handful of entries to protect

---

entries and finding that many of the hours are non-recoverable because they were mixed between recoverable and non-recoverable subjects, among duplication and inefficiency, overstaffing, among other issues); *Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242, 1251-52 (2006) (upholding as not abuse of discretion that the specific anti-SLAPP motion should have taken a certain amount of time, that invoices were vague and potentially intermixed, and after considering record as a whole).

[3] The fees Yuga Labs seeks ($223,231.25) is less than the total of the invoices ($224,465), by the exact amount of the redacted entries ($1,233.75).  Writing off of those entries is evidence that Yuga Labs carefully scrutinized each entry and deleted those that were not devoted to the anti-SLAPP effort.  Meier Decl. ¶ 18.

privilege related to legal strategy. *See* Dkt. 182-2. Moreover, none of the redactions obscure that the time was spent on the anti-SLAPP briefing.

**Third**, Defendants' accusation that Yuga's counsel acted "in bad faith," Opp. 3, and "inflated" their hours, Opp. 1, 2, 4, 8, 10, 11, 12, 14, is not well taken. Yuga's counsel diligently and accurately recorded the time they were forced to spend responding to Defendants' meritless counterclaims. Meier Decl. ¶¶ 15-19.

**Fourth**, Defendants falsely assert that Clare Locke's billing practices are "improper" and assert Courts reduce bills as a matter of law based both on quarter hour billing and block billing. Opp. 3. Again, Defendants misapprehend the law. It is not block billing or quarter hour billing that is the cause of reductions, it is the individual courts' determinations that a party had not fulfilled its "burden of documenting the appropriate hours expended in the litigation and [to] submit evidence in support of those hours worked." *Welch v. Metro. Life. Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). In fact, quarter-hour billing is not "improper" or out of step with "industry standards," nor do courts apply a purported rule reducing fee requests based on it. Instead, Defendants cite a case in which the court "found [that] the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* at 949. But Defendants have not, and cannot, meet their burden of identifying any such instances here.

Block billing is sometimes cited in reduction of fee awards because "[m]uch of a counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 436. But here, Clare Locke created a specific billing code devoted solely to the anti-SLAPP briefing and did not work on the copyright-related claims, which is Fenwick's responsibility and area of expertise. Meier Decl. ¶¶ 11, 18-19. Therefore, no "intermixing" of recoverable and non-recoverable work occurred. Meier Decl. ¶ 19. Similarly, here, the attorneys did not "attempt[] to justify

including traditionally clerical functions in his attorney billing" using block bills (or otherwise). *Brandt v. Astrue*, No. 08–0658, 2009 WL 1727472, (D. Or. June 16, 2009). Defendants have pointed to no such entries, which was their burden.[4]

**Fifth**, Defendants baldly assert that "Yuga fails to prove that all of the claimed hours relate to [recoverable] state law causes of action." Opp. 4-5. Defendants speculate that Clare Locke attorneys spent 1/3 of their time analyzing copyright claims, Opp. 4-5, an assertion which is both false and disproven by the unrebutted evidence that Yuga submitted, which establishes that Clare Locke attorneys briefed only the anti-SLAPP issues now subject to mandatory fee recovery, and that the bills were specifically reviewed a second time to ensure that only recoverable amounts were included in the fee application. Meier Decl. ¶¶ 11, 18-19; *see also* n.3 *supra*.[5]

### C. Defendants have failed to show any fees sought were "unnecessary, duplicative, or excessive."

Defendants likewise fail to carry their burden to show that any entries contain "unnecessary, duplicative, or excessive work." Opp. 6-9. Defendants again rely heavily on their false premise that there is an "**expected total range of claimed hours,**" rather than conducting the required case-specific analysis based on the factors set forth under California law. Opp. 6.[6] Nor is it surprising or unjustified that "Clare Locke repeatedly claims that two people were drafting at the same time

---

[4] Defendants assert that there is a "rule" established by *Welch* and *Brandt* requiring "universal reduction to the hours claimed", Opp. 3, but no such "rule" exists, and it is in fact Defendants' burden to attack specific entries.

[5] Defendants also attack $1,315 for clerical tasks and $1092.50 for "researching Defendants' Motion to Stay." Defendants do not identify which entries make up their claimed $1,315, but the bills reflect that case-management tasks were performed by appropriate paraprofessionals. The "Motion to Stay" was based on the anti-SLAPP appeal. Dkt. 182-4 at 10.

[6] For the same reason, Defendants' assertions that "Yuga is claiming four times the standard amount of work" (Opp. 7), and that Yuga is claiming "over one hundred hours more than the high-end of normal as recognized by courts" (Opp. 7) should be entirely disregarded.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS — 6 — Case No. 2:22-cv-04355-JFW-JEM

and logging full work-days on the same day." Opp. 8. Clare Locke attorneys divided tasks to efficiently draft portions of the papers at the same time, as is not uncommon. It is in fact Defendants' actions—to litigate non-existent causes of actions and create other significant inefficiencies—that caused much of the legal fees in this case. *See* Dkt. 182 at 4 (discussing unsuccessful attempts to have Defendants drop "declaratory judgment of no defamation").

Defendants repeatedly assert that the legal and factual issues were "simple," Opp. 8, 11, and 14, but the Court can judge for itself the complexity and importance of this dispute.[7] In sum, Defendants' position is that it should have taken no more than "40 hours in total" to research, draft, and revise a critically important motion, reply, and multiple supporting documents (as well as related tasks such as meet and confers) against top-flight opposing counsel determined to fight every hedgerow. Opp. 8. This conclusory assertion disregards reality and the unrebutted evidence.

Next, Defendants—without citing to the record—assert that Clare Locke billed 30 hours to the fee motion alone. Opp. 9. That is again false, as Clare Locke engaged in multiple tasks during that time, including but not limited to multiple iterations of what should have been a simple joint statement on the disputed fee issues—transmitted by a junior WilmerHale attorney who was not present at meet-and-confers—and multiple rounds of settlement negotiations of the fee award. *See, e.g.*, Mot. 9 (explaining Defendants' actions that caused additional work), Dkt. 182-4 at 11 (showing the range of tasks related to the fee application). Furthermore, Defendants telegraphed that they were going to apply the same level of tenacity to the fee phase as they did to their Counterclaims and are the sole cause of the fees dispute resembling "a second major litigation." *Maloney,* 2015 WL 3879634, at *3. Finally, Defendants plumb the depths of irrelevance when pointing out that Eric

---

[7] Whoever wrote that "Yuga does not even attempt to argue that the motion itself was complicated or complex beyond [two] cursory statement[s]" may have missed Pages 8 and 9 of the Motion and Paragraphs 13-14 of the Meier Declaration, which extensively explain why the significant legal and factual research was justified.

Ball of Fenwick signed the fee motion, Opp. at 9, but he did not draft it—Clare Locke's attorneys did—and Mr. Ball reviewed, approved, and signed it as lead counsel.

### D. Clare Locke's Rates Are Reasonable.

Finally, Defendants' assertion that Clare Locke's fees are "incredibly high" is a supreme example of WilmerHale's pot calling Clare Locke's kettle black. In fact, **Defendants are currently billing their clients $1,060 an hour for the time of Henry Nikogosyan, an associate who graduated from law school in 2018.** Suppl. Ball Decl. ¶ 3, Ex. A. Defendants should be estopped from arguing that Clare Locke's highly qualified and substantially more senior attorneys (such as David Sillers, who has a full decade more experience than Mr. Nikogosyan) should be prevented from recovering even a lower hourly rate. Opp. 10-13, Meier Decl. ¶ 9. It speaks volumes about Defendants' overall approach that they simultaneously argue that Clare Locke charges an unreasonably high rate while seeking substantially higher legal rates for themselves. It is similarly silly for WilmerHale Boston attorneys practicing in this district to argue that Clare Locke's Washington D.C. rates are inappropriate for this district. Opp. 11.

The evidence instead supports that the hourly rates paid by Yuga are reasonable "for similar work performed by attorneys of comparable skill, expertise, and reputation." Opp. 10, *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015). Both WilmerHale and Clare Locke are elite firms who charge premium rates, and the Opposition's repeated references to the average paid in **other cases** to **other firms** does not reflect the reality of the quality of counsel, quality of work, or quality of results obtained in **this case**. Opp. 10-13. Defendants display their flawed methodology by pointing to the 2022 Real Rate Report's "median hourly rate" as none of the attorneys in this case are of "median" quality. Opp. 13. While Clare Locke's rates are on the higher end of the fee spectrum, WilmerHale's are even higher, and it is well within the Court's discretion to find

them reasonable in the circumstances.[8]

## CONCLUSION

Defendants have no one to blame but themselves for the substantial fees they now owe. When a client engages elite counsel to take every measure to obscure the law, misstate the facts, and to confuse the issues with meritless claims, it takes time to systematically defeat them. Similarly, Courts have warned not to transform fee disputes into a "second major litigation," but that is exactly what Defendants have chosen to do.

Yuga Labs took a reasonable and prudent path in response to Defendants' Counterclaims and is entitled to the entire fee award it seeks. Yuga Labs respectfully requests that the Court award attorneys' fees of $242,543.75, which include $22,437.50 spent on the final day filing the Motion and preparing this Reply and supporting materials. *See* Suppl. Meier Decl. ¶ 4, Ex. 1.

Dated: April 17, 2023            Clare Locke, LLP


By: */s/ David Sillers*
Megan Meier
David Sillers
Attorneys for Plaintiff and
Counterclaim Defendant
YUGA LABS, INC.

---

[8] Defendants' position that Yuga Labs should recover no fees for paralegal services is nonsensical, and the rates claimed are again reasonable and consistent with the higher end of the law firm market. Opp. 14. As shown by the Meier declaration, the entire amount of paralegal services billed for this dispute is $1,743.75. Meier Decl. ¶ 20.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS — 9 — Case No. 2:22-cv-04355-JFW-JEM

FENWICK & WEST LLP