UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YUGA LABS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> RYDER RIPPS, JEREMY CAHEN, <br><br> Defendants and Counterclaim Plaintiffs. | Case No.: 2:22-cv-04355-JFW-JEM <br><br> **[PROPOSED] STATEMENT OF DECISION GRANTING PLAINTIFF YUGA LABS, INC.'S MOTION FOR ATTORNEYS' FEES** <br><br> Date:  May 1, 2023 <br> Time:  1:30 p.m. <br> Courtroom: 7A <br> Judge:  Honorable John F. Walter <br><br> Trial Date:  June 27, 2023 |

On March 17, 2023, the Court granted Yuga Labs' Special Motion to Strike Defendants' Counterclaims 1-3 (the "anti-SLAPP Motion") and held that Yuga Labs is entitled to mandatory attorneys' fees as the prevailing party under Section 425.16(c) of the California Code of Civil Procedure. On March 31, 2023, Yuga Labs filed a motion for attorneys' fees and costs related to the anti-SLAPP Motion. On April 10, 2023 Defendants filed an Opposition, and on April 17, 2023, Yuga Labs filed a Reply. Having considered the moving, opposing, reply papers and the arguments therein, and the Court's docket in this matter, the Court rules as follows:

## I. LEGAL STANDARD

Under Section 425.16(c) of the California Code of Civil Procedure, a prevailing party on a special motion to strike "shall be entitled to recover his or her attorney's fees and costs." The California Supreme Court has noted that any party "who brings a successful motion to strike is entitled to mandatory attorneys fees." Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001).

District courts enjoy wide discretion in determining the reasonableness of an attorneys' fees request, but begin with the 'lodestar' calculation, which multiplies the reasonable number of hours expended by the reasonable hourly rate. See Maloney v. T3Media, Inc., No. CV 14–05048, 2015 WL 3879634, at *3 (C.D. Cal. May 27, 2015), (C.D. Cal. May 27, 2015) (citations omitted). In assessing reasonability, the Court should consider factors "including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." PLCM Group v. Drexler, 22 Cal. 4th 1084, 1087 (2000). While a party seeking fees bears the burden of providing evidence establishing the reasonableness of its fees, it only must "identify the general subject matter of his time expenditures" to meet its burden of establishing its fee request is reasonable. This limited obligation reflects the broader policy that a "request for attorney's fees should not result in a second major litigation." Maloney., 2015 WL 3879634, at *3 (quoting and citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

Once the movant has met the initial burden, the burden shifts to the opposing party, who bears a "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits." Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992). The party opposing a fee request must meet that burden with specific objections to specific billing entries. "Where the party makes only 'a generalized objection,' courts will generally only

reduce hours where the unreasonableness of the request "can be identified 'through a cursory examination of the bill." *Maloney*, at *4 (quoting *Natural Res. Def. Council v. Locke*, 771 F.Supp.2d 1203, 1214 (N.D.Cal.2011)).

## II. DISCUSSION

Yuga Labs has submitted unrebutted proof, through affidavits and detailed billing records, that it incurred $242,543.75 for the legal services of Clare Locke LLP litigating the anti-SLAPP issues, which included, among other things, factual investigation of the Counterclaims, legal research and analysis, drafting and revising the motion, reply, and supporting documents, as well as the motion for fees and tasks such as meeting and conferring and discussion potential resolution of the issues with opposing counsel. It has also submitted unrebutted proof that it has incurred, but has not sought from Defendants, substantial legal fees for the legal work of Fenwick & West LLP in connection with the anti-SLAPP issues.

In support of its fee request and the reasonableness of the hours expended, Yuga Labs asserts that the substantial effort on the anti-SLAPP motion was justified for several reasons, including but not limited to (1) that the Counterclaims were the vehicle for Defendants to expand the nature of the case beyond trademark issues to include inflammatory claims about Yuga Labs and potentially delay the trial; (2) that Defendants were trying to use the Counterclaims to justify substantial discovery whose only relevance was to the Counterclaims; (3) that Defendants employed highly qualified counsel from WilmerHale's Boston office to tenaciously litigate these issues; (4) that the legal and factual issues were complex and required substantial research; (5) that Defendants employed litigation tactics which caused there to be more time spent on this dispute than otherwise might have been necessary, including but not limited to Yuga Labs informing Defendants of specific defects in their Counterclaims in the meet-and-confer but Defendants refused to withdraw or amend them. Mot. 7-9. Yuga Labs asserts the hourly rates charged by Clare Locke LLP are reasonable, especially given the skill and experience of its

attorneys, the successful result obtained, and because WilmerHale attorneys charge similar, or even higher, rates. Mot. 10-12, Reply 8-9.

Defendants have opposed the size of the fee request, requesting that the fees be reduced to $26,400. Defendants repeatedly refer to an "expected" or "standard" rate of hours for an anti-SLAPP motion in the 40-75 hour range and argue that Yuga Labs exceeded this limit. Opp. 1, 7, 9. Defendants argue that Yuga "inflated" its bills through improper block billing and through billing a quarter of an hour rather than in tenth-hour increments, Opp. 2-4, that it has submitted invoices with redactions, Opp. 2, that Yuga Labs has not satisfied its burden to show that all the work was done on the anti-SLAPP portion of the dispute rather than the un-recoverable portions, Opp. 4-5, that Yuga Labs billed for unnecessary, duplicative, and/or excessive work, Opp. 6-9, and that Yuga Labs' rates are unreasonable. Opp. 9-11.

The Court holds that both the hours spent and the hourly rates proven by Yuga Labs are reasonable. While Defendants allege that there is a "rule" that states that block-billing or quarter-hour billing requires global reductions in hours claimed, that is not the rule in California; instead, "each fee application under section 4.25.16 subdivision (c) must be assessed on its own merits according to the principles discussed in *Ketchum*." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 561 (2008).

An examination of the lodestar factors demonstrates that this was a high-stakes, hotly-contested dispute between two elite law firms that each charge premium rates. Yuga Labs obtained a complete victory through the retention of highly qualified counsel, who submitted excellent briefing to the Court in order to obtain excellent results. There is no evidence that Yuga Labs "inflated" its bills as alleged by the Defendants, and the time it spent on this dispute is supported both through declarations and detailed billing records. Indeed, there is evidence that the attorneys at Fenwick & West performed work on the anti-SLAPP portions of the

motion which would be chargeable to Defendants but for which Yuga Labs has not sought compensation in its fee application. In other words, Yuga Labs' application demonstrates that it exercised restraint in its fee request. Moreover, Yuga Labs submitted competent proof that the time of Clare Locke LLP was spent ***only*** on recoverable anti-SLAPP portions of this case, and there is no evidence of the contrary; in sum, the Court has "no reason to doubt" the submissions of "sufficiently supported [] requested attorneys' fees." *Hallock v. Healy*, No. CV 20-02726, 2020 WL 12188989, at *2 (C.D. Cal. Nov. 2, 2020).

Similarly, while Defendants characterize the dispute as "simple," Yuga Labs submitted proof showing the scope of its factual and investigation, as well as legitimating the hours it spent on each phase of the litigation. Furthermore, Defendants have not disputed Yuga Labs' arguments that Defendants' own litigation tactics have made this dispute costlier and more time-intensive than was necessary. Defendants litigated this case "tenaciously" and cannot "be heard to complain about the time necessarily spent [] in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580-81 fn. 11 (1986). As Yuga Labs showed, and the docket entries in this case reflect, Defendants turned this fee dispute into a "second major litigation" by tenaciously opposing the significant majority of the fees sought by Yuga Labs. *Maloney.*, 2015 WL 3879634, at *3 .

Similarly, Clare Locke LLP's rates are reasonable. While both sides agree that the rates charged in this dispute are on the higher end of the spectrum of law firm rates, Yuga Labs' submissions show that other firms—including WilmerHale—are charging higher rates in this district than Clare Locke does. Especially because Yuga Labs has chosen not to seek a portion of its fees incurred on the anti-SLAPP motion (*e.g.* Fenwick & West's fees), the rates that it does seek recompense for are reasonable.

### III. CONCLUSION

Both sides devoted substantial resources to this high-stakes issue. Under California law, Yuga Labs is entitled to recover all the reasonable attorneys' fees it seeks, and what it seeks is reasonable. Based on the foregoing, the Court **GRANTS** Yuga Labs' Motion for Attorneys' fees in an amount of $242,543.75.

**IT IS SO ORDERED.**

Dated: _____

                                        Honorable John F. Walter
                                        United States District Court Judge