Fenwick & West LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

1.   PARTIES AND PLEADINGS ........................................................................ 1

2.   JURISDICTION AND VENUE .................................................................... 2

3.   TRIAL DURATION ....................................................................................... 2

4.   JURY TRIAL ................................................................................................... 2

5.   ADMITTED FACTS ...................................................................................... 2

6.   STIPULATED FACTS ................................................................................... 3

A.   EVIDENTIARY STIPULATIONS ............................................................. 4

7.   CLAIMS AND DEFENSES OF THE PARTIES ..................................... 5

8.   REMAINING TRIABLE ISSUES ............................................................ 19

9.   DISCOVERY ................................................................................................ 23

10.   DISCLOSURES AND EXHIBIT LISTS ................................................. 23

11.   WITNESS LISTS ......................................................................................... 24

12.   MOTIONS IN LIMINE ............................................................................. 25

13.   BIFURCATION OF ISSUES .................................................................... 25

14.   ADMISSIONS .............................................................................................. 25

FENWICK & WEST LLP

Pursuant to the Scheduling and Case Management Order, the parties held a L.R. 16-2 conference on April 28, 2023, attended by Eric Ball, Kimberly Culp, and Anthony Fares for Yuga Labs, Inc. ("Yuga Labs") and Louis Tompros, Derek Gosma, Henry Nikogosyan, and Ambroise Decilap for Defendants Ryder Ripps and Jeremy Cahen.

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

## 1.        PARTIES AND PLEADINGS

The parties are: Yuga Labs (Plaintiff) and Ryder Ripps and Jeremy Cahen (Defendants).

Each of these parties has been served and has appeared.  All other parties named in the pleadings and not identified in the preceding paragraph have been dismissed.

The pleadings which raise the issues are:

Plaintiff's Complaint (Docket No. 1); Defendants' Answer (Docket No. 65).

The following claims, counterclaims, and defenses have been dismissed, stricken, or abandoned:

<u>Plaintiff</u>: Plaintiff's Eighth Cause of Action (Unjust Enrichment).

<u>Defendants</u>: Defendants' First Counterclaim (Knowing Misrepresentation of Infringing Activity); Second Counterclaim (Declaratory Judgment of No Copyright Under 17 U.S.C. § 102(a)); Third Counterclaim (Declaratory Judgment of No Copyright Under 17 U.S.C. § 204(a)); Fourth Counterclaim (Intentional Infliction of Emotional Distress); Fifth Counterclaim (Negligent Infliction of Emotional Distress); Sixth Counterclaim (Declaratory Judgment of No Defamation); Defendants' First Defense (Failure to State a Claim); Defendants' Second Defense (First Amendment); Defendants' Third Defense (Fair Use); Defendants' Seventh Defense (Unclean Hands).

The following claims have been stayed pending Defendants' appeal in *Yuga*

FENWICK & WEST LLP

*Labs, Inc. v. Ryder Ripps, et al.*, No. 22-56199 (9th Cir. 2023): Plaintiff's Fourth Cause of Action (Common Law Trademark Infringement); Fifth Cause of Action (Common Law Unfair Competition); Sixth Cause of Action (Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*); Seventh Cause of Action (False Advertising under Cal. Bus. & Prof. Code §§ 17500 *et seq.*); Ninth Cause of Action (Conversion); Tenth Cause of Action (Intentional Interference with Prospective Economic Advantage); and Eleventh Cause of Action (Negligent Interference with Prospective Economic Advantage).

## 2. JURISDICTION AND VENUE

Federal jurisdiction and venue are invoked upon the grounds:

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. Yuga Labs' claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051, *et seq.* Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Defendants do not dispute that the Court has personal jurisdiction over them for this matter.

## 3. TRIAL DURATION

The trial is estimated to take three trial days, as scheduled by the Court for June 27-29, 2023.

## 4. JURY TRIAL

The trial is to be a jury trial. As required by the Scheduling Order (Dkt. No. 57), the parties will file proposed jury instructions on or before May 25, 2023 and will file any special questions requested to be asked on voir dire on or before June 6, 2023.

## 5. ADMITTED FACTS

The following facts are admitted and require no proof:

- Yuga Labs is the creator of the Non-Fungible Token ("NFT") collection known as the Bored Ape Yacht Club ("BAYC").
- Yuga Labs' "BAYC Marks" are BORED APE YACHT CLUB, BAYC,

BORED APE, the BA YC Logo, the BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo.

- Yuga Labs' BA YC Logo is:



- Yuga Labs' BA YC BORED APE YACHT CLUB Logo is:



- Yuga Labs' Ape Skull Logo is:



**6.      STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

- Yuga Labs released the BAYC NFT collection in April 2021.
- On May 13, 2022, Defendant Ripps created the Ethereum blockchain smart contract, 0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73691e, which is the smart contract for the RR/BAYC NFTs.
- Defendants have never registered or applied to register any trademarks associated with the RR/BAYC NFTs.
- Ryder Ripps holds the private keys to the wallet associated with the following address on the Ethereum blockchain:

1   0x592814ff14e030b51f6087032db0f88f4214f254.

2   • Ryder Ripps holds the private keys to the wallet associated with the following address on the Ethereum blockchain: 0xbaf287cb2281841d9f5ba929d7dde87048fcaf1b.

5   • Jeremy Cahen holds the private keys to the wallet corresponding to the following address on the Ethereum blockchain: 0x7D2550161E8A31D0b9585Bb9c88E63E9644af740.

## A.   EVIDENTIARY STIPULATIONS

In addition to the admitted and stipulated facts above, the parties hereby make the following evidentiary stipulations, which should not be read aloud at trial.

• YUGALABS_00000018 through YUGALABS_00000532, YUGALABS_00016914, YUGALABS_00016916 through YUGALABS_00026398, and YUGALABS_00029251 are Bored Ape images.

• All captures of Twitter posts and messages produced in discovery do not require authentication.

• Exhibits 800-804 are authentic and may be provided to the jury in native format.

• Neither party will introduce evidence or argument on the following topics: pedophilia, pedobear, the username "Emperor Tomato Ketchup," 4chan, 8chan, Fredrick Brennan, Richard Spencer, Yuga Labs' founders' family members or supposed family members, Manuel Marrero, Hawaiian shirts, and Roberto Bolano.  To the extent that any otherwise admissible exhibit, which is not excluded by Plaintiff's motions in limine, includes reference to any of these topics, the parties will meet and confer regarding an appropriate way to present any admissible evidence to the jury.

• Neither party will introduce evidence or argument personally attacking or criticizing opposing counsel, including their respective law firms, in an *ad*

FENWICK & WEST LLP

*hominem* way.  Both parties reserve the right to challenge or criticize the factual statements and legal arguments made by opposing counsel on behalf of their respective clients.

- Plaintiff will not introduce evidence or argument that it owns a copyright in the BAYC Marks or the images associated with the BAYC NFTs.  Defendants will not introduce evidence or argument that Yuga Labs does not own a copyright in the BAYC Marks or the images associated with the BAYC NFTs.

- Neither party will introduce evidence or argument that any of Yuga Labs' DMCA takedown notices previously issued to NFT marketplaces for the RR/BAYC NFTs were either lawful or unlawful.  The parties may still introduce evidence or argument regarding these takedowns without reference to their lawfulness or unlawfulness.

- Neither party will introduce evidence or argument relevant only to Defendants' emotional distress counterclaims, which were dismissed by the Court.

## 7.  CLAIMS AND DEFENSES OF THE PARTIES

### Plaintiff's Position

(a)  Plaintiff plans to pursue the following claims against all defendants at trial:[1]

**Claim 1** (False Designation of Origin (15 U.S.C. § 1125(a))): The Court determined that Defendants used Yuga Labs' BAYC Marks without authorization to falsely suggest that their RR/BAYC NFTs are connected with, sponsored by, affiliated with, or related to Yuga Labs in a way that was likely to and did cause confusion, and the issue of Yuga Labs' remedies is all that remains;

**Claim 2** (False Advertising (15 U.S.C. § 1125(a))): Defendants made false and misleading representations of fact in advertising their RR/BAYC NFTs.

---

[1] Given Defendants' pending appeal (*Yuga Labs, Inc. v. Ryder Ripps, et al.*, No. 22-56199 (9th Cir. 2023)), Yuga Labs is not currently pursuing the state law claims (Causes of Action 4-7, 9-11) set forth in its Complaint for this jury trial.  The non-inclusion of these claims here does not constitute waiver of the claims.

FENWICK & WEST LLP

**Claim 3** (Cybersquatting (15 U.S.C. § 1125(d))): The Court determined that Defendants registered and used the domain names rrbayc.com and apemarket.com with a bad faith intent to profit from their confusing similarity to Yuga Labs' BAYC Marks, and the issue of Yuga Labs' remedies is all that remains.

The Court found for Yuga Labs on Claims 1 and 3 in its Order on Yuga Labs' Motion for Summary Judgment.  Dkt. No. 225.  On Claims 1 and 3, the Court concluded that Yuga Labs is entitled to monetary remedies and injunctive relief. Yuga Labs intends to pursue its second claim, false advertising, at trial.  The issue of monetary remedies, including statutory damages, is an issue that has been reserved for trial.  The jury will be instructed to calculate Defendants' profits, although the decisions regarding whether to disgorge Defendants' profits and whether equity supports an upward or downward adjustment of the jury's calculation are equitable issues reserved for the Court.  15 U.S.C. § 1117(a).  The issues of injunctive relief and whether this is an exceptional case entitling Yuga Labs to enhanced damages and an award of attorneys' fees under 15 U.S.C. § 1117 are also reserved for the Court's determination in post-trial briefing.

Defendants' contention that Defendants' willfulness is an issue for the jury because it is relevant to the determination of damages and whether this is an exceptional case is wrong.  As the plaintiff, Yuga Labs can choose what claims it is presenting to the jury and Yuga Labs is not asking for and does not need a jury instruction on willfulness.  *See, e.g.*, *Feemster v. Dehntjer*, 661 F.2d 87, 90 (8th Cir. 1981) ("The plaintiff is master of his claim. He may abandon a theory of liability during the trial, and if he does the jury should be clearly instructed only on those issues that it will consider.").[2]  A willfulness finding is not necessary for the determination of actual damages.  *See* *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S.

---

[2] Willfulness is not an affirmative defense and Defendants' inclusion of a jury instruction on willfulness is an inappropriate attempt to heighten Yuga Labs' burden of proof.

FENWICK & WEST LLP

Ct. 1492, 1495-97 (2020) (a defendant's "mental state" may be relevant to whether the district court should disgorge defendants' profits; it is not, however, necessary for a finding of actual damages or profits).  Moreover, a jury determination of willfulness is not a required finding for the Court to conclude in post-trial briefing that this is an exceptional case.  *See*, *e.g.*, *SunEarth, Inc. v. Sun Earth Solar Power Co.,* 839 F.3d 1179, 1181 (9th Cir. 2016).   Regardless, this Court has already determined that Defendants acted here with the intent to deceive consumers.  *See* Dkt. 225 at 12.  Defendants do not get to re-litigate the issue of their intent at trial. To the extent that the Court allows Defendants to re-litigate their mental state, Yuga Labs' position is that this is an equitable issue for the Court to determine because whether to disgorge Defendants' profits is an equitable issue.  Yuga Labs does not seek a jury finding on whether Defendants' profits should be disgorged and what the final profits award should be.

There is likewise no basis for the Defendants' request for a judgment as a matter of law as to their willfulness.  The Defendants' willfulness is not an element of any of Plaintiff's claims.  Even more, the Court has already found that the Defendants were intentional infringers and bad faith cybersquatters.

(b)     The elements required to establish Plaintiff's claims are:

**Claim 1:** False Designation of Origin.  Yuga Labs has the burden of proving:

- Yuga Labs' BAYC Marks are valid, protectable trademarks;
- Yuga Labs owns the BAYC Marks; and
- Defendants used a BAYC Mark, or a mark similar to a BAYC Mark, without the consent of Yuga Labs in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.6

(modified).

The Court granted summary judgment in favor of Yuga Labs as to its first claim for false designation of origin and concluded that Yuga Labs is entitled to injunctive and monetary relief (Dkt. No. 225 at 13).  Accordingly, the only remaining issue to be proven at trial with respect to Yuga Labs' first cause of action is Yuga Labs' monetary remedies.  The issues of injunctive relief, the just award of Defendants' profits to Yuga Labs, and whether this is an exceptional case entitling Yuga Labs to enhanced damages and an award of attorneys' fees under 15 U.S.C. § 1117 are reserved for the Court.  Yuga Labs is not pursuing a finding of willful trademark infringement at trial.

**Claim 2:** False Advertising.  Yuga Labs must prove by a preponderance of the evidence:

- Defendant Ripps or Defendant Cahen made a false or misleading representation of fact in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of their or Yuga Labs' goods, services, or commercial activities;

- The false or misleading representation actually deceived or had the tendency to deceive a substantial segment of its audience (where an advertising is literally false, either on its face or by necessary implication, then consumer confusion is presumed and Yuga Labs does not have to prove this element);

- The deception was material in that it is likely to influence the purchasing decision;

- Defendant Ripps or Defendant Cahen caused the false or misleading representation to enter interstate commerce; and

- Yuga Labs was or is likely to be damaged by the false or misleading representation, either by direct diversion of sales from itself to Defendants or by a lessening of the goodwill associated with Yuga

FENWICK & WEST LLP

1  Labs' goods, services, or commercial activities.

2  <u>Source</u>: 15 U.S.C. § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*,

3  *108 F.3d 1134, 1139 (9th Cir. 1997)*; *Wells Fargo & Co. v. ABD Ins. & Financial*

4  *Servs., Inc.*, *758 F.3d 1069, 1071 (9th Cir. 2014)*; *Upper Deck Co. v. Panini America,*

5  *Inc.*, *469 F. Supp. 3d 963, 976 (S.D. Cal. 2020)*.

6  **Claim 3:** Cybersquatting.  Yuga Labs has the burden of proving:

7  • Defendant Ripps or Defendant Cahen registered, trafficked in, or

8     used a domain name;

9  • The domain name is identical or confusingly similar to a protected

10    mark owned by Yuga Labs; and

11  • Defendant Ripps or Defendant Cahen acted with bad faith intent to

12    profit from Yuga Labs' mark.

13  <u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions, Comment to

14  No. 15.31; 15 U.S.C. § 1125(d); *DSPT Int'l, Inc. v. Nahum*, *624 F.3d 1213, 1219 (9th*

15  *Cir. 2010)*.

16  The Court granted summary judgment in favor of Yuga Labs as to its third

17  cause of action for cybersquatting and concluded that Yuga Labs is entitled to

18  injunctive relief and damages (Dkt. No. 225 at 15).  Accordingly, the only remaining

19  issue to be proven at trial with respect to Yuga Labs' third cause of action is the

20  amount of statutory damages to which Yuga Labs is entitled.  The issues of injunctive

21  relief and whether this is an exceptional case entitling Yuga Labs to enhanced

22  damages and an award of attorneys' fees under 15 U.S.C. § 1117 are reserved for the

23  Court.  Yuga Labs is not pursuing a finding of willful cybersquatting at trial

24

25  (c)   In brief, the key evidence Plaintiff relies on for each of the claims is:

26

27  **Claim 1:** False Designation of Origin.

28  The Court has already found that Yuga Labs successfully proved each element

FENWICK & WEST LLP

of its False Designation of Origin claim on summary judgment. *See* Dkt 225. Yuga Labs requests that the established facts from the Court's Summary Judgment Order relating to the remaining triable issues in this case be read to the jury. To prove Yuga Labs' remedies with regard to this claim, Yuga Labs intends to use the following evidence.

- Evidence showing that Defendants' use of the BAYC Marks to sell the same underlying products (NFTs), using the same underlying images as authentic BAYC NFTs, marketing them with the same "Ape ID" identifying numbers, and selling them in the same NFT marketplaces was likely to and did cause confusion, including but not limited to surveys conducted by an independent expert, public statements by third parties, private communications among Defendants and their business partners, and witness testimony;

- Evidence that Yuga Labs suffered harm to its brand equity and goodwill as a result of Defendants' infringement and the resulting confusion, impacting its sales, profits, and future earnings, including but not limited to testimony and findings from independent experts and testimony from a founder of Yuga Labs and the former CEO of Yuga Labs;

- Evidence that Yuga Labs has experienced injury to its general business reputation, such as changed dynamics with its prospective business partners as a result of Defendants' infringement, including but not limited to testimony and findings from independent experts and testimony from the former CEO of Yuga Labs;

- Evidence showing Defendants' profits from the sales of the RR/BAYC NFTs, including but not limited to testimony and findings from an independent expert in the field;

- Evidence showing measures Yuga Labs would have to take in the

FENWICK & WEST LLP

future to correct and mitigate instances of confusion caused by Defendants' infringement, including but not limited to testimony and findings from an independent expert in the field;

- Evidence showing the additional unjust enrichment to Defendants as a result of their infringement, including but not limited to testimony and findings from an independent expert in the field.

**Claim 2:** False Advertising.

- Evidence of Defendants publicly referring to their RR/BAYC NFTs as "BAYC V3" and "Bored Ape Yacht Club V3", including but not limited to public statements by Defendants and witness testimony;

- Evidence of Defendants publicly implying that their RR/BAYC NFTs were equivalent goods to genuine BAYC NFTs (e.g., receive full commercial rights), including but not limited to public statements and witness testimony;

- Evidence of Defendants publicly claiming that they own a registered trademark in RR/BAYC and in Ape Market, including but not limited to public statements, private communications, and witness testimony;

- Evidence of Defendants publicly claiming that royalties gained from the sale of the RR/BAYC NFTs would be donated to charity, including but not limited to public statements and witness testimony;

- Evidence of Defendants publicly claiming that the RR/BAYC NFTs were all "hand-minted" by Ripps, including but not limited to public statements, private communications, and witness testimony;

- Evidence of Defendants publicly claiming on their rrbayc.com website that the RR/BAYC NFTs were done on behalf of LIVE9000 LLC, including but not limited to public statements, private communications, and witness testimony;

FENWICK & WEST LLP

- Testimony and communications that all such claims above are literally false.
- Evidence that Defendants paid promoters and influencers to, in their own words, "shill" the RR/BAYC NFTs and Ape Market by giving those influencers free RR/BAYC NFTs in exchange for positive promotion, including but not limited to public statements, private communications, and witness testimony;
- Evidence that Defendants would offer additional Yuga Labs-related goods such as merchandise and an Otherside game, including but not limited to public statements, private communications, and witness testimony;
- Evidence showing a likelihood of confusion and actual confusion caused by Defendants' use of the BAYC Marks, including but not limited to testimony and a survey conducted by an independent expert demonstrating confusion at the point of sale, public statements by third parties, private communications by Defendants acknowledging the likelihood of confusion, and witness testimony;
- Evidence of harm to Yuga Labs' brand equity and goodwill as a result of confusion caused by Defendants' deception, impacting Yuga Labs' sales, profits, and future earnings, including but not limited to testimony by Yuga Labs' former CEO and testimony and findings from independent experts in the field.
- Evidence that Yuga Labs has experienced changed dynamics with its prospective business partners as a result of Defendants' deception, including but not limited to testimony by Yuga Labs' former CEO and testimony and findings from independent experts in the field.
- Evidence showing Defendants' profits from the sales of RR/BAYC NFTs, including but not limited to testimony and findings from an

FENWICK & WEST LLP

1    independent expert in the field.

2    • Evidence showing measures Yuga Labs would have to take in the

3    future to correct and mitigate instances of confusion caused by

4    Defendants, including but not limited to testimony and findings from

5    an independent expert in the field;

6    **Claim 3:** Cybersquatting.

7    The Court has already found that Yuga Labs successfully proved each element

8    of its cybersquatting claim on summary judgment based on evidence in the record

9    showing that: Yuga Labs owns the BAYC Marks, which are valid and enforceable;

10   Defendants registered or used rrbayc.com and apemarket.com, which incorporate the

11   BAYC Marks; and Defendants had a bad faith intent to profit from their use of the

12   BAYC Marks. *See* Dkt. 225 at 6-10, 14, 15. Yuga Labs requests that the established

13   facts from the Court's Summary Judgment Order relating to the remaining triable

14   issues in this case be read to the jury. To prove Yuga Labs' remedies with regard to

15   this claim, Yuga Labs intends to use the following evidence.

16   • Evidence that Yuga Labs is entitled to statutory damages of

17   $200,000.00, including but not limited to court filings, public

18   statements, private communications, and witness testimony.

19   **Defendants' Position**

20   (a)   Defendants Ryder Ripps and Jeremy Cahen plan to dispute each of the

21   claims that plaintiff is pursuing at trial:[3]

22   _____

[3] The Court entered summary judgment in Yuga's favor on claims 1 and 3 and

23   concluded that Yuga is entitled to monetary damages and injunctive relief. *See* Dkt.

225 at 22. The Court also rejected Defendants' defense that Yuga's complaint

24   failed to state a claim on which relief could be granted (*see* Dkt. 62), dismissed or

struck each of Defendants' counterclaims (*see* Dkt. 156), and entered summary

25   judgment in Yuga's favor on Defendants' second defense (First Amendment), third

26   defense (fair use); and seventh defense (unclean hands). Defendants expect to

appeal these determinations following entry of final judgment. The non-inclusion

27   of these claims and defenses here does not constitute waiver of the appealability of

the Court's Order (Dkt. 225) regarding these claims or defenses, nor does it

28   constitute waiver of any of those claims or defenses for purposes of a retrial if the

FENWICK & WEST LLP

**Claim 1** (False Designation of Origin (15 U.S.C. § 1125(A))): It has been determined that Defendants used Yuga Labs' BAYC Marks without authorization to falsely suggest that their RR/BAYC NFTs are connected with, sponsored by, affiliated with, or related to Yuga Labs in a way that was likely to and did cause confusion;

**Claim 2** (False Advertising (15 U.S.C. § 1125(A))): Plaintiff alleges that Defendants made false and misleading representations of fact in advertising their RR/BAYC NFTs.

**Claim 3** (Cybersquatting (15 U.S.C. § 1125(D))): It has been determined that Defendants registered and used the domain names rrbayc.com and apemarket.com with a bad faith intent to profit from their confusing similarity to Yuga Labs' BAYC Marks.

The issue of damages has been reserved for trial.  *See* Dkt. 255, at 13. Additionally, whether this is an exceptional case, including whether any infringement was willful and intentional, was reserved for trial as part of Yuga's damages case. *See id.* (denying summary judgment on exceptional case); *see also* Dkt. 149, at 13 (Yuga arguing that "this is an exceptional case *of intentional infringement*") (emphasis added).

To the extent that Yuga's position is now that it is not pursuing its claim of willful or intentional infringement, Defendants are entitled to judgment as a matter of law that their infringement and any false advertising was not willful.  Otherwise, willful and intentional infringement is a question that the jury must resolve.

(b)   The elements required to establish Plaintiff's claims are:

**Claim 1:** False Designation of Origin. It has been determined that defendants infringed the BAYC Marks.

Source: Dkt. 225 at 22.

---

Court's Order (Dkt. 225) is reversed or vacated in whole or in part on appeal.

**Claim 2:** False Advertising.  Yuga has the burden of proving:

- In advertisements, Defendants made a false or misleading statement of fact about their own or another's product;

- That false or misleading statement of fact actually deceived or had the tendency to deceive a substantial segment of their audience;

- Such deception is material, in that it was likely to influence the purchasing decision;

- Defendants caused their falsely advertised goods to enter interstate commerce; and

- Yuga Labs has been injured as the result of the foregoing either by direct diversion of sales from itself to Defendants, or by lessening of the goodwill which its products enjoy with the buying public.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.5 & comment; *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989).

**Claim 3:** Cybersquatting.  It has been determined that Defendants' registration and use of the domain names domain names https://rrbayc.com/ and https://apemarket.com/ constituted cybersquatting under the Anti-Cybersquatting Consumer Protection Act.

Source: Dkt. 225 at 22.

**Willful Infringement:**  Yuga has the burden of showing:

- That Defendants were actually aware of the infringing activity, or

- That Defendants' actions were the result of willful blindness.

Source: *Romag Fasteners, Inc v. Fossil, Inc.*, No. 3:10-cv-1827 (D. Conn. 2014); *Romag Fastners, Inc. v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020).

**Damages:** Actual Damages.   Yuga may elect either actual damages or defendants' profits as damages for claim 1 and claim 2, but it cannot recover both.  If

FENWICK & WEST LLP

Yuga elects actual damages, Yuga has the burden of proving the amount of money which will reasonably and fairly compensate the plaintiff for any injury caused by the defendants' infringement of the plaintiffs' trademark and/or defendants' false advertising, but may not include any loss caused by other market factors and not as a result of defendants' infringement or false advertising, considering the following factors:

- The injury to the plaintiff's reputation;
- The injury to loss of plaintiff's goodwill, including injury to the plaintiff's general business reputation;
- The lost profits that the plaintiff would have earned but for the defendants' infringement, by deducting all expenses from gross revenue;
- The expense of preventing customers from being deceived; and
- The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.27; *TriPharma, LLC v. First Fruits Business Ministry*, SACV 12-4-4 JVS (ANx), 2013 WL 12129386, at *4 n.10 (C.D. Cal. Apr. 2, 2013); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).

**Damages:** Defendants' Profits. Yuga may elect either actual damages or defendants' profits as damages for claim 1 and claim 2, but it cannot recover both. If Yuga elects Defendants' profits, it may be entitled to any profits earned by the defendants that are attributable to the infringement or false advertising, which the plaintiff proves by a preponderance of the evidence. A trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate.

Source: Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.29; *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994);

FENWICK & WEST LLP

*Romag Fasteners, Inc v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020).

**Damages:** Statutory Damages for Cybersquatting.  Yuga has elected statutory damages for cybersquatting.  Yuga is entitled to damages of not less than $1,000 and not more than $100,000 for each of the two violations, as would be just.

(c)    Defendants expect to refute the evidence that plaintiff has identified in support of each of its claim.  In addition, the key evidence Defendants rely on for each of the claims is:

**Claim 1:** False Designation of Origin

- Evidence of lack of actual or likely confusion, including evidence that no customer was actually deceived, that Defendants' sale of RR/BAYC NFTs was part of a protest against Yuga, that the RR/BAYC project's criticism of Yuga was closely tied to the RR/BAYC NFTs, that the RR/BAYC NFTs were sold accompanied by express disclaimers and criticism of Yuga, that defendants and others commented publicly about the satirical nature of the RR/BAYC project, that NFTs are distinct tokens on the blockchain sold on different marketplaces, that the nature of the RR/BAYC collection was different from the nature of the BAYC collection, and that defendants' took steps to prevent confusion;

- Evidence, including the testimony of Yuga employees, that no customer has ever mistakenly purchased and RR/BAYC NFT believing it to be a BAYC NFT;

- Evidence, including the testimony of Yuga employees, that the harm that Yuga claims to have suffered as a result of any infringement was the result in whole or in substantial part of factors other than false advertising, including overall market decline, widespread use of Yuga's marks by others, and the calling out (by the RR/BAYC

project and others) of racist and other hateful tropes used by Yuga.

**Claim 2:** False Advertising

- Evidence, including the testimony of defendants, that the statements on which Yuga relies were not statements in advertisements;

- Evidence, including the testimony of defendants, concerning the context for the statements on which Yuga relies;

- Evidence, including the testimony of defendants, concerning the materiality of the statements on which Yuga relies;

- Evidence, including the testimony of Yuga employees, of lack of injury to Yuga as the result of any statement on which Yuga relies;

- Evidence, including the testimony of Yuga employees, that the harm that Yuga claims to have suffered as a result of any false advertising was the result in whole or in substantial part of factors other than false advertising, including overall market decline, widespread use of Yuga's marks by others, and the calling out (by the RR/BAYC project and others) of racist and other hateful tropes used by Yuga.

**Claim 3:** Cybersquatting

- Evidence, including the testimony of Yuga employees, that Yuga has suffered no harm as the result of Defendants' registration of rrbayc.com and apemarket.com;

- Evidence of Defendants' intent in registering rrbayc.com and apemarket.com;

- Evidence that Yuga is entitled to statutory damages of $1,000 per registration.

**Willful Infringement:**

- Evidence that defendants had a good faith belief that their activity was not improper;

- Evidence that defendants had a good faith belief that their activity

Fenwick & West LLP

was artistic expression;

- Evidence of defendants' intent with regard to each activity found to be infringement or false advertising.

**Damages:** Actual Damages

- Evidence, including the testimony of Yuga employees, that the harm that Yuga claims to have suffered as a result of any infringement or false advertising was the result in whole or in substantial part of factors other than infringement or false advertising, including overall market decline, widespread use of Yuga's marks by others, and the calling out (by the RR/BAYC project and others) of racist and other hateful tropes used by Yuga.

**Damages:** Defendants' Profits

- Evidence, including the testimony of defendants, concerning their mental state;
- Evidence, including the testimony of defendants, concerning costs associated with the RR/BAYC NFTs;
- Evidence, including the testimony of Yuga employees, that the harm that Yuga claims to have suffered as a result of any infringement or false advertising was the result in whole or in substantial part of factors other than infringement or false advertising, including the overall crypto market decline, widespread use of Yuga's marks by others and the calling out (by the RR/BAYC project and others) of racist and other hateful tropes used by Yuga.

## 8.     REMAINING TRIABLE ISSUES

In view of the Summary Judgment Order, the admitted and stipulated facts, and elements required to establish the claims, the Parties agree that the following issues remain to be tried:

- Whether Defendants engaged in false or misleading advertising in violation

FENWICK & WEST LLP

of the federal Lanham Act.

- The amount of Yuga Labs' monetary remedies for Trademark Infringement, Cybersquatting, and/or False Advertising.

The Parties disagree regarding the framing and elements of some of these issues and whether willfulness remains to be tried. Their respective positions are set forth below.

**Plaintiff's Positions**

- Whether Defendants engaged in false or misleading advertising in violation of the federal Lanham Act:
  - o Whether Defendant Ripps or Defendant Cahen made a false or misleading representation of fact in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of their or Yuga Labs' goods, services or commercial activities;
  - o Whether the false or misleading representation actually deceived or had the tendency to deceive a substantial segment of its audience;
  - o Whether the deception was material in that it is likely to influence the purchasing decision;
  - o Whether Defendant Ripps or Defendant Cahen caused the false or misleading representation or the advertised good or service to enter interstate commerce; and
  - o Whether Yuga Labs was or is likely to be damaged by the false or misleading representation, either by direct diversion of sales from itself to Defendants or by a lessening of the goodwill associated with Yuga Labs' goods, services, or commercial activities.
- The dollar amount of Yuga Labs' Actual Damages for Trademark Infringement and/or False Advertising, considering:
  - o The injury to Yuga Labs' reputation;
  - o The injury to or loss of Yuga Labs' goodwill, including injury to

FENWICK & WEST LLP

Yuga Labs' general business reputation;

- o The expense of preventing customers from being deceived;

- o The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement and/or false advertising.

- o The cost to Yuga Labs to purchase RR/BAYC NFTs on the secondary market.

- The dollar amount of Defendants' profits from sales of RR/BAYC NFTs.[4]

- The dollar amount of statutory damages (pursuant to 15 U.S.C. § 1117(d)) in violation of the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)).

### Defendants' Positions

- Whether Defendants engaged in false or misleading advertising in violation of the federal Lanham Act:

- o Whether, in advertisements, Defendants made a false or misleading statement of fact about their own or another's product;

- o Whether that false or misleading statement of fact actually deceived or had the tendency to deceive a substantial segment of their audience;

- o Whether such deception is material, in that it was likely to influence the purchasing decision;

- o Whether Defendants caused falsely advertised goods to enter

---

[4] Once the jury calculates the Defendants' profits, the Court determines the final amount of Defendants' profits to award Yuga Labs based upon what is "just." *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 39 (9th Cir. 2022) ("The parties agree that disgorgement of profits is an equitable issue ordinarily left to the court."); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("A claim for disgorgement of profits under § 1117(a) is equitable, not legal.").

FENWICK & WEST LLP

interstate commerce; and

- o Whether Yuga Labs has been injured as the result of the foregoing either by direct diversion of sales from itself to Defendants, or by lessening of the goodwill which its products enjoy with the buying public.

- Whether Defendants' infringement and/or false advertising was willful:
  - o Whether the Defendants were actually aware of the infringing activity, or
  - o Whether Defendants' actions were the result of willful blindness.

- The amount of actual damages for trademark infringement to which Yuga is entitled, considering:[5]
  - o The injury to Yuga Labs' reputation;
  - o The injury to or loss of Yuga Labs' goodwill, including injury to Yuga Labs' general business reputation;
  - o The lost profits that Yuga Labs would have earned but for Defendants' infringement;
  - o The expense of preventing customers from being deceived;
  - o The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

- Whether Yuga Labs is entitled to any profits earned by the Defendants that are attributable to Defendants' trademark infringement and/or false advertising and, if so, the amount of any such profits.

- The amount of statutory damages for Defendants' use of Yuga Labs' marks in violation of the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)), between $1,000 and $100,000 for each of two domains.

---

[5] Defendants maintain that Yuga Labs is required to elect either actual damages or disgorgement of profits for its infringement and false advertising claims, to avoid impermissible double recovery.

**9.      DISCOVERY**

All discovery is complete.

**10.      DISCLOSURES AND EXHIBIT LISTS**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of parties has been filed under separate cover as required by L.R. 16-6.1.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Plaintiff objects to Exhibit (JTX) Nos. 201, 203—205, 208—222, 224—227, 230—237, 240—242, 245, 248—251, 254, 255, 258—260, 262—270, 272—273, 275—299, 302—307, 312—313, 315, 317—320, 402—414, 2000—2276, 2278—2304, 2306—2437, 2439—2445, 2447—2460, 2462—2503, 2505—2507, 2513—2523, 2528—2543, 2545—2549, 2551—2558, 2561—2565, 2568—2603, 2605—2607, 2614—2677, 2684—2709.

Defendants object to Exhibit (JTX) Nos. 1, 2, 7—13, 15—17, 20—29, 31—36, 38—42, 44, 49—52, 54—56, 58—61, 63, 64, 66—69, 71, 72, 80—82, 84—92, 94—105, 107—111, 113—121, 123—138, 141, 144—148, 151—155, 157—163, 165—167, 169—183, 502, 504, 505, 513, 520—525, 600, 601, 603—608, 611—614, 616—621, 623, 627, 630, 631, 633, 642, 643, 670—673, 675—677, 682—692, 696—699, 701, 704—707, 709, 710, 713, 715, 719, 721—723, 806—809, 812—814, 817, 818, 831, 832, 841, 857, 869, 871, 874, 906, 908, 909, 911, 912, 914—919, 922—924, 938, 943, 957—975, 977—982, 985, 986, 1002, 1003, 1008—1024, 1027—1035, 1037—1043, 1045—1050, 1052—1066, 1068—1079, 1085—1135, 1139, 1142, 1143, 1145—1148, 1152—1168, 1170—1172, 1174, 1175—1179, 1192—1195, 1232—1243, 1249, 1262—1268, 1270, 1272—1277, 1279—1289, 1291—1294, 1296—1300, 1302—1306, 1308—1313, 1315—1320, 1412—1444, 1450, 1451, 1453, 1454, 1456—1464, 1467, 1469—1480, 1482—1498, 1510—1534, 1537—1568, 1573—1616.

The objections and grounds therefor are set forth in the Parties' Pre-Trial

FENWICK & WEST LLP

1  Exhibit Stipulation, filed under separate cover.

2  **11.  WITNESS LISTS**

3  Witness lists of the parties have been filed with the Court.  Only the witnesses

4  identified in the lists will be permitted to testify (other than solely for impeachment).

5  Each party intending to present evidence by way of deposition testimony has

6  marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the

7  following depositions shall be lodged with the Clerk as required by L.R. 32-1:

8  Tom Lehman, Wylie Aronow, Kerem Atalay, Patrick Ehrlund, Guy Oseary,

9  Nicole Muniz, Gregory Solano, Ryan Hickman, and Ian Garner.

10  Yuga Labs intends to call the following expert witnesses at trial: Jonah Berger,

11  Lauren Kindler, and Laura O'Laughlin.

12  Plaintiff objects to the presentation of any testimony by the following

13  witnesses: Damon Dash, Patrick Ehrlund, and Guy Oseary.  Plaintiff also objects to

14  the presentation of testimony on certain topics by: Wylie Aronow, Kerem Atalay,

15  Thomas Lehman, Nicole Muniz, and Gregory Solano, Jeremy Cahen, Ryan Hickman,

16  and Ryder Ripps.  Plaintiff also objects to the presentation of any testimony by

17  deposition of the following witnesses: Guy Oseary and Patrick Ehrlund.  Plaintiff has

18  further objected to certain deposition designations made by Defendants for the

19  following witnesses:  Wylie Aronow, Kerem Atalay, Thomas Lehman, Nicole

20  Muniz, Greg Solano.

21  Defendants object to the presentation of any testimony by the following

22  witnesses: Laura O'Laughlin and Rodney Ripps.  Defendants also object to the

23  presentation of testimony on certain topics by: Kerem Atalay.  Defendants also object

24  to Yuga presenting testimony by deposition of the following witnesses: Wylie

25  Aronow, Ian Garner, and Thomas Lehman.  Defendants have further objected to

26  certain deposition designations made by Plaintiffs for the following witnesses: Wylie

27  Aronow, Kerem Atalay, Jeremy Cahen, Patrick Ehrlund, Ian Garner, Ryan Hickman,

28  Thomas Lehman, Nicole Muniz, Guy Oseary, Ryder Ripps, Gregory Solano.

FENWICK & WEST LLP

FENWICK & WEST LLP

**12.     MOTIONS IN LIMINE**

The following law and motion matters and motions in limine, and no others, are pending or contemplated:

**A.     PLAINTIFF:** The parties have filed joint briefing on the following motions by Plaintiff:

> **1.**     Motion in Limine to Exclude "Inflammatory Material"
>
> **2.**     Motion in Limine to Exclude References to Defendants' Purported Artistic Intent
>
> **3.**     Motion in Limine to Exclude Evidence of Alleged Third-Party Use of Marks
>
> **4.**     Motion in Limine to Exclude Argument that Yuga Labs Harassed Defendants
>
> **5.**     Motion in Limine to Exclude Evidence that the BAYC Terms Devalued the BAYC Marks

**B.     DEFENDANTS:** The parties have filed joint briefing on the following motion by Defendant:

> **1.**     Motion *in Limine* to Exclude the Testimony of Laura O'Laughlin

**13.     BIFURCATION OF ISSUES**

Bifurcation of the following issues for trial is ordered: None.

**14.     ADMISSIONS**

The foregoing admissions have been made by the parties, and the parties have specified the foregoing issues remaining to be litigated, this final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Date: _____, 2023

_____
Honorable John F. Walter
UNITED STATES DISTRICT JUDGE

Approved as to form and content.


By: */s/ Eric Ball*
    Eric Ball
    Attorneys for Plaintiff
    YUGA LABS, INC.


By: */s/ Louis W. Tompros*
    Louis W. Tompros
    Attorneys for Defendants
    RYDER RIPPS and JEREMY CAHEN