1   ERIC BALL (CSB No. 241327)                Louis W. Tompros (*pro hac vice*)
    eball@fenwick.com                          louis.tompros@wilmerhale.com
2   KIMBERLY CULP (CSB No. 238839)             Monica Grewal (*pro hac vice*)
    kculp@fenwick.com                          monica.grewal@wilmerhale.com
3   FENWICK & WEST LLP                         Scott W. Bertulli (*pro hac vice*)
    801 California Street                      scott.bertulli@wilmerhale.com
4   Mountain View, CA  94041                   Tyler Carroll (*pro hac vice*)
    Telephone:   650.988.8500                  tyler.carroll@wilmerhale.com
5   Facsimile:   650.938.5200                  **WILMER CUTLER PICKERING**
6                                                 **HALE AND DORR LLP**
    ANTHONY M. FARES (CSB No. 318065)          60 State Street
7   afares@fenwick.com                         Boston, MA 02109
    ETHAN M. THOMAS (CSB No. 338062)           Telephone: (617) 526-6000
8   ethomas@fenwick.com                        Fax: (617) 526-5000
    FENWICK & WEST LLP
9   555 California Street, 12th Floor          Derek Gosma (SBN 274515)
    San Francisco, CA  94104                   derek.gosma@wilmerhale.com
10  Telephone:   415.875.2300                  Henry Nikogosyan (SBN 326277)
                                               henry.nikogosyan@wilmerhale.com
11  *Additional Counsel listed on next page*   **WILMER CUTLER PICKERING**
                                                  **HALE AND DORR LLP**
12  Attorneys for Plaintiff                    350 South Grand Ave., Suite 2400
13  YUGA LABS, INC.                            Los Angeles, CA 90071
                                               Telephone: (213) 443-5300
14                                             Fax: (213) 443-5400

15                                             Attorneys for Defendants
                                               RYDER RIPPS and JEREMY CAHEN
16

17              UNITED STATES DISTRICT COURT

18             CENTRAL DISTRICT OF CALIFORNIA

19             WESTERN DIVISION – LOS ANGELES

20

21   YUGA LABS, INC.,                          Case No.: 2:22-cv-04355-JFW-JEM

22              Plaintiff,                      **JOINT MEMORANDUM RE DISPUTED JURY INSTRUCTIONS**

23         v.                                   Judge: Hon. John F. Walter

24   RYDER RIPPS, JEREMY CAHEN,                 Pre-Trial Conference Date: June 9, 2023

25              Defendants.                     Trial Date: June 27, 2023

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA  90401
   Telephone:   310.434.4300
4
5  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
6  DAVID Y. SILLERS (*admitted pro hac ice*)
   david@clarelocke.com
7  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA  22314
   Telephone:   202.628.7400
10
11 Attorneys for Plaintiff
   YUGA LABS, INC.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

Case No. 2:22-cv-04355-JFW-JEM

1

# TABLE OF CONTENTS

Page

DISPUTED INSTRUCTION NO. 14 ................................................................. 1

    A.    Plaintiff's Proposed Instruction re Expert Opinion .............................. 1

    B.    Defendants' Proposed Instruction re Expert Opinion ........................... 1

    C.    Plaintiff's Legal Position .................................................................... 2

    D.    Defendants' Legal Position .................................................................. 2

DISPUTED INSTRUCTION NO. 25 ................................................................. 3

    A.    Plaintiff's Proposed Instruction re Prior Findings .............................. 3

    B.    Defendants' Proposed Instruction re Prior Findings ........................... 4

    C.    Plaintiff's Legal Position .................................................................... 4

    D.    Defendants' Legal Position .................................................................. 7

DISPUTED INSTRUCTION NO. 26 ............................................................... 10

    A.    Plaintiff's Proposed Instruction re False Advertising–Instruction on Elements ....................................................................................... 10

    B.    Defendants' Proposed Instruction re False Advertising– Instruction on Elements .................................................................... 10

    C.    Plaintiff's Legal Position .................................................................. 11

            1.    Element 1 – "nature, characteristics or qualities" and "goods, services or commercial activities" ............................. 12

            2.    Element 4 – Interstate commerce ............................................ 13

            3.    Element 5 – Injury ................................................................... 15

    D.    Defendants' Legal Position ................................................................ 17

DISPUTED INSTRUCTION NO. 27 ............................................................... 19

    A.    Plaintiff's Conditionally Counter-Proposed Instructions re Willfulness ......................................................................................... 19

            1.    Yuga Labs' Conditionally Counter-Proposed Instruction 27(a) ........................................................................................ 19

            2.    Yuga Labs' Conditionally Counter-Proposed Instruction 27(b) ........................................................................................ 19

    B.    Defendants' Proposed Instruction re Trademark Infringement– Deliberate or Willful ........................................................................ 20

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**TABLE OF CONTENTS**
**(Continued)**

2

Page

3

C.   Plaintiff's Legal Position ......................................................... 20

4

D.   Defendants' Legal Position ...................................................... 25

5

DISPUTED INSTRUCTION NO. 28 .......................................................... 27

6

A.   Plaintiff's Proposed Instruction re Damages–Plaintiff's Actual Damages ........................................................................... 27

7

8

B.   Defendants' Proposed Instruction re Damages–Plaintiff's Actual Damages ........................................................................... 28

9

C.   Plaintiff's Legal Position ......................................................... 29

10

D.   Defendants' Legal Position ...................................................... 32

11

DISPUTED INSTRUCTION NO. 29 .......................................................... 34

12

A.   Plaintiff's Proposed Instruction re Loss of Goodwill ......................... 34

13

B.   Defendants' Proposed Instruction re Loss of Goodwill .................... 34

14

C.   Plaintiff's Legal Position ......................................................... 34

15

D.   Defendants' Legal Position ...................................................... 35

16

DISPUTED INSTRUCTION NO. 30 .......................................................... 37

17

A.   Plaintiff's Proposed Instruction re Damages–Defendants' Profits ..... 37

18

B.   Defendants' Proposed Instruction re Damages–Defendants' Profits ........................................................................... 38

19

20

C.   Plaintiff's Legal Position ......................................................... 39

21

D.   Defendants' Legal Position ...................................................... 40

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

# TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4
5
*Allergan USA, Inc. v. Imprimis Pharmas., Inc.*,
   No. 8:17-cv-01551-DOC-JDE, Dkt. 223 (C.D. Cal. May 16, 2019) ................ 15

6
*Allergen USA, Inc. v. Imprimis Pharmaceuticals, Inc.*,
   No. 8:17-cv-01551 (C.D. Cal. May 16, 2019) ..................................................... 5

7
8
*Appliance Recycling Centers of Am., Inc. v. JACO Env't, Inc.*,
   378 F. App'x 652 (9th Cir. 2010) ................................................................. 15, 16

9
*Asberry v. City of Sacramento/Sanitation Dep't*,
   156 F. App'x 889 (9th Cir. 2005) .................................................................... 6, 8

10
11
*Asfall v. LAUSD*,
   No. 18-CV-00505-CBM, 2020 WL 2951920 (C.D. Cal. Feb. 11, 2020) .......... 26

12
13
*Bellagio Jewelry, Inc. v. Croton Watch Co.*,
   No. CV 06-6672 ODW, 2008 WL 3905895 (C.D. Cal. Aug. 20, 2008) ........... 30

14
*Curtis v. Loether*,
   415 U.S. 189 (1974) ......................................................................................... 31

15
16
*Deckers Outdoor Corp. v. Ego Shoes Ltd.*,
   No. CV 20-11351-MWF (EX), 2021 WL 5933111
   (C.D. Cal. Nov. 19, 2021) ............................................................................... 30

17
18
*Dermfx, Inc. v. Obagi Med. Prod., Inc.*,
   No. 15-cv-01999-JVS, 2017 WL 2684548 (C.D. Cal. Mar. 24, 2017) ............. 31

19
*Feemster v. Dehntjer*,
   661 F.2d 87 (8th Cir. 1981) ............................................................................. 23

20
21
*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
   778 F.3d 1059 (9th Cir. 2015) ....................................................... 22, 23, 24, 39

22
23
*Grasshopper House LLC v. Clean and Sober Media, LLC*,
   2021 WL 3702243 (9th Cir. 2021) .............................................................. 25, 40

24
*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
   28 F.4th 35 (9th Cir. 2022) ......................................................................... 22, 39

25
26
*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
   No. 8:17-cv-01613-CJC-DFM, 2019 WL 4570033
   (C.D. Cal. Aug 26, 2019) ..................................................................... 13, 15, 17

27
28
*Harper House, Inc. v. Thomas Nelson, Inc.*,
   889 F.2d 197 (9th Cir. 1989) ....................................................................... 16, 18

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

3

4

*Healthport Corp. v. Tanita Corp. of America*,
   563 F. Supp. 2d 1169 (D. Or. 2008), *aff'd on other grounds*,
   324 Fed. Appx. 921 (Fed. Cir. 2009) ................................................. 18

5

6

*Lahoti v. VeriCheck, Inc.*,
   586 F.3d 1190 (9th Cir. 2009) ........................................................... 6

7

8

*Lies v. Farrell Lines, Inc.*,
   641 F.2d 765 (9th Cir.1981) .............................................................. 6

9

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ...................................................... 23, 24

10

11

*Moore v. Richmond Police Dep't*,
   497 F. App'x 702 (9th Cir. 2012) .................................................... 7, 8

12

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*,
   782 F. Supp. 2d 1047 (C.D. Cal. 2011) ............................................ 4

13

14

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
   40 F.3d 1007 (9th Cir. 1994) ....................................................*passim*

15

*Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131 (C.D. Cal. 2004) ................................. 5, 23

16

17

*POM Wonderful LLC v. Purely Juice, Inc.*,
   No. CV-07-02633 CAS, 2008 WL 4222045 (C.D. Cal. July 17, 2008)
   *aff'd*, 362 F. App'x 577 (9th Cir. 2009) ...................................... 23, 29

18

19

*Pom Wonderful LLC v. Welch Foods, Inc.*,
   No. CV 09-567 AHM, 2010 WL 4794235 (C.D. Cal. Nov. 18, 2010) ............. 15

20

21

*Prager Univ. v. Google LLC*,
   951 F.3d 991 (9th Cir. 2020) ............................................................ 12

22

*Rice v. Fox*,
   330 F.3d 1170 (9th Cir. 2003) ......................................................... 14

23

24

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   140 S. Ct. 1492 (2020) .............................................................. 21, 40

25

*Romag Fasteners, Inc v. Fossil, Inc.*,
   No. 3:10-cv-1827 (D. Conn. 2014) .................................................. 40

26

27

*Shouse v. Ljunggren*,
   792 F.2d 902 (9th Cir. 1986) ......................................................... 7, 8

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

iv

1
2

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

3
4
*Singh v. George Washington Univ. Sch. Of Med. & Health Scis.*,
    508 F.3d 1097 (D.C. Cir. 2007) ............................................................. 5

5
*So. Cal. Retail Clerks Union & Food Employers Join Pension Trust Fund v. Bjorklund*, 728 F.2d 1262 (9th Cir. 1984) ........................................ 26

6
7
*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ....................................... 12, 14, 15, 16

8
*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
    944 F. Supp. 2d 830 (C.D. Cal. 2012) ................................................. 32

9
10
*Stone Brewing Co LLC v. MillerCoors LLC, Slip Op.*,
    Case No. 3:18-cv-00331-BEN-MDD (July 29, 2022) ......................... 25

11
12
*Strategic Partners Inc. v. Vestagen Protective Techs., Inc.*,
    No. 2:16-cv-05900-RGK-PLA, Dkt. 215 (C.D. Cal. Sept. 22, 2017) ...... 15

13
14
*TriPharma, LLC v. First Fruits Bus. Ministry*,
    SACV 12-404 JVS (ANx), 2013 WL 12129386
    (C.D. Cal. Apr. 2, 2013) ............................................................... 30, 32

15
*Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co.*,
    647 F.3d 780 (8th Cir. 2011) ................................................................ 6

16
17
*United States v. Vazquez-Hernandez*,
    849 F.3d 1219 (9th Cir. 2017) ............................................................ 35

18
19
*Upper Deck Co. v. Panini Am., Inc.*,
    469 F. Supp. 3d 963 (S.D. Cal. June 29, 2020) .................................. 13

20
*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014) ............................................................ 14

21
22
STATUTES AND RULES

23
15 U.S.C. § 1116 ................................................................................. 15, 16

24
15 U.S.C. § 1117 ................................................................................ *passim*

25
15 U.S.C. § 1125(a)(1) .................................................................. 12, 13, 15

26
15 U.S.C. § 1125(a)(1)(B) .................................................................. 10, 12

27
Anti-Cybersquatting Consumer Protection Act ......................................... 4

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

3

Copyright Act ................................................................................................ 30

4

Lanham Act...............................................................................................*passim*

5

6   **OTHER AUTHORITIES**

7
8

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,
  § 27:47, Effect on interstate commerce (5th ed.) ............................... 14

9

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 129:32 (6th
  ed.) ...................................................................................................... 35

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Yuga Labs, Inc. and Defendants Ryder Ripps and Jeremy Cahen, by and through their undersigned counsel, hereby submit their Joint Memorandum of Disputed Jury Instructions.  Pursuant to the Court's Scheduling and Case Management Order [Dkt. 57], this Joint Memorandum is organized by instruction number, quotes the text of each disputed instruction, and sets forth each Party's respective position and legal authority immediately after the text of each disputed instruction.

## DISPUTED INSTRUCTION NO. 14

### A.   Plaintiff's Proposed Instruction re Expert Opinion

You [have heard] [are about to hear] testimony from Jonah Berger*[name]* who [testified] [will testify] to opinions and the reasons for [his] [her] opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

You [have heard] [are about to hear] testimony from Lauren Kindler*[name]* who [testified] [will testify] to opinions and the reasons for [his] [her] opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

You [have heard] [are about to hear] testimony from Laura O'Laughlin*[name]* who [testified] [will testify] to opinions and the reasons for [his] [her] opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### B.   Defendants' Proposed Instruction re Expert Opinion

You [have heard] [are about to hear] testimony from Jonah Berger*[name]* who [testified] [will testify] to opinions and the reasons for [his] [her] opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

1    You [have heard] [are about to hear] testimony from Lauren Kindler*[name]*

2    who [testified] [will testify] to opinions and the reasons for [his] [her] opinions. This

3    opinion testimony is allowed, because of the education or experience of this witness.

4    Such opinion testimony should be judged like any other testimony. You may

5    accept it or reject it and give it as much weight as you think it deserves, considering

6    the witness's education and experience, the reasons given for the opinion, and all the

7    other evidence in the case.

8    **C.    Plaintiff's Legal Position**

9    Yuga Labs understands that Defendants' objection to Yuga Labs' proposed

10   instruction relates to Defendants' pending motion *in limine* to exclude Laura

11   O'Laughlin, which Yuga Labs has opposed. If the Court permits Laura O'Laughlin

12   to testify, Yuga Labs contends that its proposed instruction is accurate. If the Court

13   does not permit Laura O'Laughlin to testify, then Yuga Labs agrees to Defendants'

14   proposed Instruction No. 14.

15   **D.    Defendants' Legal Position**

16   Defendants have filed a motion *in limine* to exclude the testimony of Laura

17   O'Laughlin as unreliable. *See* Defendants MIL #1. If the Court grants Defendants'

18   motion and Ms. O'Laughlin's opinions are excluded, Ms. O'Laughlin will have no

19   admissible expert opinion to offer the jury. In that circumstance, her name should

20   not be included as an expert witness for purposes of instructing the jury.

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**DISPUTED INSTRUCTION NO. 25**

**A.     Plaintiff's Proposed Instruction re Prior Findings**

It was determined in a prior proceeding that Defendants intentionally infringed Plaintiff's BORED APE YACHT CLUB, BAYC, BORED APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and Ape Skull Logo trademarks ("the BAYC Marks"), and you must accept that determination as true.  It was also determined in a prior proceeding that Defendants committed cybersquatting with respect to their www.rrbayc.com and www.apemarket.com domains, and you must accept that determination as true.  Cybersquatting occurs when a person other than the owner of a well-known trademark registers that trademark as an internet domain name and then attempts to profit from it.

It was further determined in a prior proceeding that Yuga Labs is entitled to monetary damages for Defendants' trademark infringement and for their cybersquatting, and you must accept that determination as true.  Therefore, you must award Yuga Labs damages for Defendants' trademark infringement and cybersquatting.

In making these determinations, these findings were also established, which you must accept as true and not reconsider in your deliberations:

- Yuga Labs owns the BAYC Marks.
- Yuga Labs' BAYC Marks are valid and protectable marks.
- Yuga Labs has used the BAYC Marks in interstate commerce.
- Yuga Labs has not transferred or abandoned its trademark rights in the BAYC Marks.
- Defendants' use of Yuga Labs' BAYC Marks is likely to cause consumer confusion.
- Defendants knowingly and intentionally used Yuga Labs' BAYC Marks.

- Defendants' RR/BAYC NFTs are not "expressive works" and do not express an idea or point of view.
- Defendants' Ape Market website contains no artistic expression or critical commentary.
- Defendants used the BAYC Marks to sell and promote their own products.
- Defendants used the rrbayc.com and apemarket.com domains with a bad faith intent to profit from Yuga Labs' BAYC Marks.

**B.     Defendants' Proposed Instruction re Prior Findings**

It was determined in a prior proceeding that Defendants infringed Plaintiff's BORED APE YACHT CLUB, BAYC, BORED APE, the BA YC Logo, the BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo (the "BAYC Marks"), and you must accept that determination as true.

It was also determined in a prior proceeding that Defendants' registration and use of the domain names domain names https://rrbayc.com/ and https://apemarket.com/ constituted cybersquatting under the Anti-Cybersquatting Consumer Protection Act, and you must accept that determination as true.

It was also determined in a prior proceeding that Yuga Labs is entitled to monetary damages for trademark infringement and cybersquatting, and you must accept that determination as true.  You must determine the amount of Yuga Labs's damages.

**C.     Plaintiff's Legal Position**

The findings from the Court's Summary Judgment Order (Dkt. 225) ("Order") (some of which are listed as bullet points in Plaintiff's proposed instruction above) were conclusively established for purposes of trial and should be included with the jury instructions.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011) ("Under Federal Rules of Civil Procedure, Rule 56(g), a court may enter an order stating any material fact –

FENWICK & WEST LLP
ATTORNEYS AT LAW

including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."); *Singh v. George Washington Univ. Sch. Of Med. & Health Scis.*, 508 F.3d 1097, 1106 (D.C. Cir. 2007) ("Facts found on partial summary judgment are taken as established at trial."). Defendants' refusal to accept the Court's Order and include ***any*** of the Court's factual findings in an instruction to the jury will confuse the jury and almost certainly prejudice Yuga Labs.

The Court already determined that Defendants harmed Yuga Labs. As a result, the jury is tasked with determining the scope of that harm based on (1) the facts the Court has already determined, and (2) any other facts the jury may determine. The jury cannot efficiently perform its duties absent an understanding of what facts the Court already determined. As just one example, in granting summary adjudication on trademark infringement, the Court determined the Defendants used the BAYC Marks to sell their own products, and that Yuga Labs did not transfer or abandon these rights. These facts are necessary for the jury to understand why Yuga Labs is seeking the costs to repurchase and destroy the infringing RR/BAYC NFTs. Telling the jury what facts are already established focuses their attention on the issues that remain and is an efficient consequence of summary adjudication. Indeed, other courts in this district have extensively quoted from prior partial summary judgment rulings, albeit from stipulated facts, in their instructions to the jury. *See*, *e.g.*, *Allergen USA, Inc. v. Imprimis Pharmaceuticals, Inc.*, No. 8:17-cv-01551 (C.D. Cal. May 16, 2019) (Compare Dkt. No. 223 [Jury Instructions - Instruction No. 3] with Dkt. 138 [Order on Summary Judgment]).

Defendants' position rejects the very purpose of summary adjudication. Not only is their refusal to agree to allow the jury to know these or any other established facts a transparent attempt to relitigate facts that have been established, but Defendants' proposed instruction would waste the Court's and the jury's time and allow Defendants to relitigate issues that have already been decided. *See Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F.

Supp. 2d 1131, 1133 (C.D. Cal. 2004) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.1981)) (A partial summary judgment order is "'intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit.'").   This would prejudice Yuga Labs by requiring it to spend its time at trial re-proving facts it has already proven, as opposed to focusing on the issues that remain in dispute.

Defendants seek to obscure their obvious intent – to force Yuga Labs to use precious time at trial re-litigating established facts – with misleading citations.  First, *Asberry v. City of Sacramento/Sanitation Dep't* is an unpublished, nonprecedential opinion that has never been cited by any court.   156 F. App'x 889 (9th Cir. 2005). Even so, the section Defendants cite proves Yuga Labs' point: "[f]acts that a district court finds to be undisputed for purposes of summary judgment are not undisputed for all purposes ***unless the procedures for summary adjudication of facts in Rule 56(d) are followed.***"   *Id.* at 890 (emphasis added).   Outrageously, Defendants' parenthetical purporting to support their instruction stops before the highly relevant exception beginning at **"unless."**   The exception dismantles Defendants' position since it relates to when, as in this case, a Court makes findings on a motion for summary adjudication.

More specifically, although Rule 56(d) (at issue in *Asberry*) has been replaced by Rule 56(g), it and its successor authorize a Court to establish findings on summary judgment for trial, just as the Court did here.  *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 n.9 (9th Cir. 2009) ("The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case . . . and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.") (alteration in original) (quoting 1946 advisory committee note regarding then Rule 56(d)); *Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co.*, 647 F.3d 780, 785 (8th Cir. 2011) ("Revised Rule 56 (g) (formerly Rule 56(d)(1)) provides that if a district court does

FENWICK & WEST LLP
ATTORNEYS AT LAW

not grant 'all the relief requested' by a motion for summary judgment, the court may enter an order setting forth any material fact not in dispute. Fed. R. Civ. P. 56(g).")). This Court followed the procedures for rule 56(g) (formerly 56(d)) and conclusively established at summary judgment the factual findings listed in Yuga Labs' proposed jury instruction.

Defendants' other two case citations cited as support for their proposed instruction are likewise inapposite and unpersuasive. In *Moore v. Richmond Police Dep't*, the court rejected an argument that the "law of the case" doctrine required the inclusion of a prior judge's summary judgment ruling into jury instructions. 497 F. App'x 702, 704 (9th Cir. 2012) (non-precedential). Likewise, in *Shouse v. Ljunggren*, the court found that the law of the case doctrine did not apply to a prior summary judgment ruling by a different judge. 792 F.2d 902, 904 (9th Cir. 1986). These opinions carry no weight here because the summary judgment findings included in Yuga Labs' jury instructions were conclusively established ***in this case*** under Rule 56(g) by the same judge who will preside at trial.

The Court should instruct the jury on the ***established facts*** that underpin the Court's findings on summary judgment so that the jury has a fair and accurate understanding of what it does not have to determine to assess damages against Defendants.

**D.  Defendants' Legal Position**

Defendants' proposed instruction fully explains the Court's holding at summary judgment: that Defendants are liable for trademark infringement and cybersquatting, entitling Yuga Labs to damages. With that information in hand, the jury can, based on the evidence set forth during the trial, find the facts necessary to render a verdict on damages, an issue which the Court found Yuga expressly reserved "for trial." ECF 225, at 13.

Plaintiff's proposed instruction is contrary to law and will mislead the jury. Although the Court's findings of liability for infringement and cybersquatting are

FENWICK & WEST LLP
ATTORNEYS AT LAW

binding, Defendants are entitled to a jury that will find the facts relevant to the issue of damages.   The Ninth Circuit has made clear that judicial findings of fact at summary judgment are not "the law of the case" for all purposes.   *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) ("the law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment"); *see also Moore v. Richmond Police Dep't*, 497 F. App'x 702, 704 (9th Cir. 2012) (nonprecedential) (finding no error where "statements from an earlier summary judgment ruling" were not "incorporated in the jury instructions").   As such, the jury in this case will be charged with determining the amount of damages, including by finding the facts underlying that  determination.   Instructing the jury as to facts found or inferred by the Court for the purpose of deciding summary judgment on liability will improperly suggest to the jury that they cannot weigh the impact of the evidence on damages.

For example, although the Court found "in the absence of any contrary evidence" at the summary judgment stage that "Defendants used the BAYC Marks in an effort to confuse,", the jury is entitled to come to its own determination on intent for purposes of damages based on the evidence presented at trial, rather than on the summary judgment record.  Instructing the jury that the Court has already found that Defendants have "intentionally" used the marks will improperly suggest to the jury that the Court has already determined Defendants' level of culpability for all purposes at trial.  *See Asberry v. City of Sacramento/Sanitation Dep't*, 156 F. App'x 889, 890 (9th Cir. 2005) (nonprecedential) (explaining that "facts that a district court finds to be undisputed for purposes of summary judgment are not undisputed for all purposes").  Likewise, instructing the jury that Defendants' works are not "expressive works" or part of "critical commentary" (based on the summary judgment record) improperly usurps the jury's role in weighing the Defendant's intent as part of their determination of the appropriate damages.  Instructing the jury as to that finding would improperly suggest that they cannot weigh the Defendants' subjective belief that the RR/BAYC project was a form of self-expression in determining the

FENWICK & WEST LLP
ATTORNEYS AT LAW

appropriate amount of damages.   Similarly, instructing the jury concerning the Court's finding that, for cybersquatting liability, Defendants had a "bad faith intent to profit" from their use of rrbayc.com and apemarket.com domains again improperly suggests to the jury that the Court has already determined the level of culpability relevant to damages.

Accordingly, Defendants respectfully submit that their proposed jury instruction will provide the jury with the background needed to understand the Court's prior ruling, without improperly suggesting that the Court has made findings of fact binding on the jury probative of the amount of damages owed by Defendants.

**DISPUTED INSTRUCTION NO. 26**

**A.**    **Plaintiff's Proposed Instruction re False Advertising–Instruction on Elements**

Yuga Labs claims that Defendants engaged in false or misleading advertising in violation of the federal Lanham Act. To prove this claim, Yuga Labs must prove the following:

1.    Defendant Ripps or Defendant Cahen made a false or misleading representation of fact in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of their or Yuga Labs' goods, services or commercial activities;

2.    The false or misleading representation actually deceived or had the tendency to deceive a substantial segment of its audience;

3.    The deception was material in that it is likely to influence the purchasing decision;

4.    Defendant Ripps or Defendant Cahen caused the false or misleading representation or the advertised good or service to enter interstate commerce; and

5.    Yuga Labs was or is likely to be damaged by the false or misleading representation, either by direct diversion of sales from itself to Defendants or by a lessening of the goodwill associated with Yuga Labs' goods, services, or commercial activities.

If you find that Yuga Labs has proven each of these things by a preponderance of the evidence, then you must find for Yuga Labs.  If, on the other hand, Yuga Labs has failed to prove any of these elements, your verdict should be for the Defendants.

**B.**    **Defendants' Proposed Instruction re False Advertising–Instruction on Elements**

In order to prove a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), <u>Yuga Labs</u> *a claimant* must establish:

FENWICK & WEST LLP
ATTORNEYS AT LAW

1) in advertisements, D~~d~~efendant~~s~~ made a false or misleading statement of
fact about their ~~its~~ own or another's product;

2) that false or misleading statement of fact actually deceived or had the
tendency to deceive a substantial segment of their audience;

3) such deception is material, in that it was likely to influence the purchasing
decision;

4) D~~d~~efendant~~s~~ caused their falsely advertised goods to enter interstate
commerce; and

5) Yuga Labs *plaintiff* has been ~~*or is likely to be*~~ injured as the result of the
foregoing either by direct diversion of sales from itself to D~~d~~efendants, or by
lessening of the goodwill which its products enjoy with the buying public.

If you find that each of the elements on which Yuga Labs *the plaintiff* has the
burden of proof has been proved, your verdict should be for Yuga Labs *the plaintiff*.
If, on the other hand, Yuga Labs *the plaintiff* has failed to prove any of these
elements, your verdict should be for the D~~d~~efendant~~s~~.

**C.    Plaintiff's Legal Position**

There are three disputes regarding the proposed false advertising liability
instruction: (1) whether the Court should accurately instruct the jury that Yuga Labs
can prove its case by showing, as the statute plainly states, a "false or misleading
representation of fact in *commercial advertising or promotion that misrepresents the
nature, characteristics or qualities of their or Yuga Labs' goods, services or
commercial activities*" (first element); (2) whether there must be a product in
interstate commerce or if Yuga Labs can show that the false or misleading
representation was placed into interstate commerce (fourth element); and (3) whether
Yuga Labs can prove liability by showing, as the statute plainly states, that it has
been "or is likely to be" injured (fifth element). Yuga Labs' instruction accurately
reflects the law. Defendants' proposed instruction erroneously and prejudicially

FENWICK & WEST LLP
ATTORNEYS AT LAW

omits key language from the statute that causes the instruction to wrongly tip the scales in Defendants' favor.

**1.    Element 1 – "nature, characteristics or qualities" and "goods, services or commercial activities"**

First, Defendants' proposed language inappropriately narrows the statutory language to "product" while Defendants simultaneously dispute they sold or advertised products.  Under the Lanham Act, Defendants are liable for a "false or misleading representation of fact" (15 U.S.C. § 1125(a)(1)) which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" (15 U.S.C. § 1125(a)(1)(B)); *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 n.2 (9th Cir. 1997).  There is no dispute that Defendants' false advertising does not relate to false claims of "geographic origin," so Yuga Labs' proposed instruction does not include that phrase from the statute.  However, every other aspect of subsection (a)(1)(B) is in dispute and, therefore, the jury should be instructed on the statute's exact language – that Yuga Labs can prove its case by showing that the false or misleading misrepresentation of fact was about the "nature, characteristics, or qualities" of Defendants' or Yuga Labs' "goods, services, or commercial activities."

Defendants' proposed instruction wrongly suggests that they can only be found liable if the jury finds that they made "false statements of fact about their own or another's product."  This proposal is legally erroneous as it replaces the statutory words "goods, services, or commercial activities" with a singular "product."  This modification is not appropriate here, where Yuga Labs alleges (and Defendants dispute) that Defendants' false advertising was present in advertisements for or about "goods, services or commercial activities": (1) the RR/BAYC NFTs (goods); (2) the forthcoming "Ape Market" NFT marketplace (commercial activity or service); and (3) Yuga Labs' NFTs and related offerings (goods, services, and/or commercial

activities).  Indeed, during summary judgment Defendants argued that NFTs are not goods (or, by extension, products).  Therefore, Defendants' proposal erroneously modifies the ways in which Yuga Labs can prove its false advertising claim on issues that are disputed.  Yuga Labs' proposal, on the other hand, accurately tracks the statutory language.

In some cases, courts in this district have simplified the language of the statute for the jury where it would be uncontroversial to do so.  *See, e.g.*, *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. 8:17-cv-01613-CJC-DFM, Dkt. 259 at 16 (C.D. Cal. June 25, 2019) (in a false advertising case related to a service, jury was instructed that it must find that "defendants made a false or misleading statement of fact *about their services* in a commercial advertisement of their own services").  But, in cases where the nature of the advertising is in dispute, such as this case, the district court has recognized the breadth of the Lanham Act for a false advertising claim.  *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 976 (S.D. Cal. June 29, 2020) ("These cards also misrepresent the 'nature, characteristics, qualities or origin of [Defendant's] product, services, or commercial activities and/or [Plaintiff's] authorized products, services, or commercial activities.' . . . Plaintiff's allegations state an actionable false statement . . . .") (citation omitted).  Therefore, since the nature of Defendants' advertising is in dispute, the jury should be instructed as to the full scope of the statute.

## 2.    Element 4 – Interstate commerce

Second, Defendants rely on a prior version of the Lanham Act to support their position that the actual good or service at issue must be used in interstate commerce, as opposed to the statement.  However, the Lanham Act presently provides that to be liable for false advertising, a plaintiff must prove that a defendant "*in connection with any goods or services, or any container for goods, uses in commerce* . . . any false designation of origin, false or misleading description of fact, *or false or misleading representation of fact*." 15 U.S.C. § 1125(a)(1) (emphases added).  That is, what the

FENWICK & WEST LLP
ATTORNEYS AT LAW

defendant must use in commerce is a false or misleading statement about any good
or service.

Defendants rely on *Rice v. Fox*'s recitation of the false advertising elements,
which quotes these elements from a case that in turn quotes the elements from a 1974
Northern District of Illinois case. *See* 330 F.3d 1170, 1180 (9th Cir. 2003).  In 1974,
the false advertising statute was different than it is today—and specifically, the
interstate commerce requirement was materially different.  As *Southland Sod Farms*
points out, prior to the 1988 amendments to the Lanham Act, the interstate commerce
requirement was indeed associated with the relevant good or service.  But after those
amendments—which have not been substantively updated since—"***it is the statement***
itself, rather than the falsely advertised goods or services, that must be used in
interstate commerce." 108 F.3d at 1139 n.3 (comparing the statute as of 1982 to the
statute as of 1988) (emphasis added); *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.,
Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) ("the defendant caused its false statement
to enter interstate commerce"); *see also* J. Thomas McCarthy, McCarthy on
Trademarks and Unfair Competition, § 27:47, Effect on interstate commerce (5th ed.)
("In the 1989 amendment, the focus was shifted from the goods or services being
used in interstate commerce to the designation or advertisement being used in
interstate commerce.").

Yuga Labs' proposed instruction reflects the Lanham Act as it is written today,
with the specific change that was made in 1988 to clarify that the jury must find that
a defendant's statement was put in interstate commerce (not whether the relevant
goods or services were in interstate commerce) to find a defendant liable for false
advertising.  Nevertheless, as a compromise to Defendants' position, Yuga Labs
would accept allowing the jury to find either the statement or the product or service
to have been in interstate commerce.  Yuga Labs' proposed instruction reflects that
compromise.

### 3.     Element 5 – Injury

Finally, Defendants' proposed language improperly narrows the protections afforded under the Lanham Act, by once again ignoring the statute, and would limit Yuga Labs' right to seek injunctive relief.  The basic issue here is that Defendants are confusing and blurring together liability and remedies under the Lanham Act.

With respect to liability, the Lanham Act provides that any person who uses in commerce a false or misleading representation of fact which is likely to cause confusion "shall be *liable* in a civil action by any person who believes that he or she is *or is likely to be* damaged by such act." 15 U.S.C. § 1125(a)(1) (emphasis added). And the Ninth Circuit has repeatedly stated that one of the five elements in determining liability for a Lanham Act false advertising claim is that "the plaintiff has been *or is likely to be* injured as a result of the false statement." *See, e.g.*, *Southland Sod Farms*, 108 F.3d at 1139 (emphasis added); *Appliance Recycling Centers of Am., Inc. v. JACO Env't, Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010) (citing *Southland Sod Farms*, 108 F.3d at 1139).

Courts in this district thus routinely include this "has been or is likely to be injured" language in jury instructions for false advertising liability.  *See, e.g.*, *Harbor Breeze Corp.*, No. 8:17-cv-01613-CJC-DFM, Dkt. 259 at 16; *Allergan USA, Inc. v. Imprimis Pharmas., Inc.*, No. 8:17-cv-01551-DOC-JDE, Dkt. 223 at 3 (C.D. Cal. May 16, 2019); *Strategic Partners Inc. v. Vestagen Protective Techs., Inc.*, No. 2:16-cv-05900-RGK-PLA, Dkt. 215 at 16 (C.D. Cal. Sept. 22, 2017); *Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567 AHM (AGRx), 2010 WL 4794235, at *2 (C.D. Cal. Nov. 18, 2010).

Once liability is established, by proving a violation under Section 1125(a), a party may be entitled to damages, a disgorgement of defendants' profits, and/or injunctive relief.  15 U.S.C. §§ 1116, 1117.  But a party does not need to seek or receive every remedy.  Indeed, "'a competitor need not prove injury when suing to enjoin conduct that violates' the Act.  A plaintiff who shows that it 'is *likely to be*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  *injured* as a result of the false statement' may be eligible for injunctive relief."

2  *Appliance Recycling*, 378 Fed. Appx. at 655 (citing *Harper House, Inc. v. Thomas*

3  *Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) and *Southland Sod*, 108 F.3d at 1139);

4  *Harper House*, 889 F.2d at 210 ("Of course, because of the possibility that a

5  competitor may suffer future injury, as well as the additional rationale underlying

6  section 43(a)—consumer protection—a competitor need not prove injury when suing

7  to enjoin conduct that violates section 43(a).").  Thus, once a plaintiff establishes

8  liability, they are entitled to injunctive relief.  But, if they can additionally prove an

9  actual injury, then they may also recover damages.

10      In the jury instruction at issue, Defendants argue that a plaintiff must show

11  evidence of actual injury in a suit where the false advertising plaintiff seeks each

12  possible remedy available under the Lanham Act (e.g., damages, profits, and/or

13  injunctive relief) to establish liability, and therefore the "or is likely to be" language

14  from the statute must be omitted in this instruction.  This is legally erroneous.  This

15  jury instruction is about what Yuga Labs must prove to establish liability – and

16  receive, at a minimum, injunctive relief – not damages.  A plaintiff who proves a

17  violation under Section 1125(a) may be entitled to injunctive relief regardless of

18  whether they are entitled to monetary relief.  15 U.S.C. §§ 1116, 1117.

19      The fact that a plaintiff must prove actual injury to obtain damages is

20  uncontroversial and already considered by the Ninth Circuit in its separate model jury

21  instructions for damages.  *See* Ninth Circuit Manual of Model Civil Jury Instructions,

22  No. 15.27 ("The plaintiff has the burden of proving actual damages by a

23  preponderance of the evidence.").  Yuga Labs does not contest that it will only

24  receive injunctive relief if it does not show an actual injury.  But, the issue of proof

25  of actual injury is addressed in the actual damages instruction (Disputed Instruction

26  No. 28), not this liability instruction.

27      If, as Defendants propose, the jury is only instructed on the more stringent

28  standard for seeking damages in this instruction, Yuga Labs will be prejudiced and

FENWICK & WEST LLP
ATTORNEYS AT LAW

potentially stripped of its statutory right to injunctive relief.  For instance, if the jury finds the first four elements of the claim satisfied and finds that there is a likelihood of injury—but not actual injury—Yuga Labs would be deprived of a finding of liability and its statutory right to enjoin Defendants' behavior that the jury found likely to cause damage.  This is not a mere hypothetical; these are the exact findings that the jury made in *Harbor Breeze*, but because the court correctly instructed the jury that they can find either actual *or likely injury*, the defendants were still found liable for false advertising and the plaintiffs were still eligible for (and received) injunctive relief.  *See Harbor Breeze Corp.*, No. 8:17-cv-01613-CJC-DFM, Dkt. 271 (jury verdict form finding all five elements of false advertising liability met, but awarding $0 in actual damages and $0 in defendants' profits attributable to the false advertising); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. 8:17-cv-01613-CJC-DFM, 2019 WL 4570033, at *3-4 (C.D. Cal. Aug 26, 2019) (district court's order granting in part permanent injunction enjoining defendants from engaging in further false advertising even though "the jury was unable to find a reasonable basis to quantify Plaintiffs' damage and awarded no monetary relief").  As with *Harbor Breeze*, Yuga Labs' proposed instruction and its proposal of the Ninth Circuit's model instruction on Lanham Act damages together accurately state the law for establishing liability and damages.

## D.   Defendants' Legal Position

Although the parties largely agree on the language of this instruction, Plaintiff's proposal would erroneously instruct the jury that a mere **likelihood** of injury is sufficient to support a claim of false advertising, even when a plaintiff is seeking damages (and not solely an injunction).  *See, supra* Plaintiff's Proposed Instruction ("Plaintiff has been **or is likely to be injured** as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public").

FENWICK & WEST LLP
ATTORNEYS AT LAW

Plaintiff's instruction would be contrary to established law.  The Ninth Circuit has held that where, as here, a Plaintiff seeks actual damages for a false advertising claim, "actual evidence of some injury resulting from the deception is an essential element of the plaintiff's case." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989); *see also* *Healthport Corp. v. Tanita Corp. of America*, 563 F. Supp. 2d 1169 (D. Or. 2008), *aff'd on other grounds*, 324 Fed. Appx. 921 (Fed. Cir. 2009) (award of damages to a Lanham Act false advertising claimant was not warranted where the claimant *did not suffer any actual harm* (emphasis added)).  In addition, Defendants' proposed revision is also consistent with § 1117 of the Lanham Act, which allows for recovery of "any damages sustained by the plaintiff," that is, for harm *actually* caused by the defendants' conduct. 15 U.S.C. § 1117.  Any damages based on a mere "likelihood" of harm would be speculative and contrary to law. *Id.*

And although the Plaintiff here is *also* seeking an injunction—for which a showing mere likelihood of harm may be sufficient—Plaintiff's proposed instruction could nonetheless lead the jury to find that a merely likelihood of harm would be sufficient to support a finding of false advertising warranting an award of damages. That is, the jury could conclude that Plaintiff is only likely to be injured, read Plaintiff's proposed instruction, and conclude that an award of money damages was appropriate.  Accordingly, because Defendants proposed instruction is not susceptible to such an interpretation, it is preferable and should be adopted.

**DISPUTED INSTRUCTION NO. 27**

**A.     Plaintiff's Conditionally Counter-Proposed Instructions re Willfulness**

> **1.     Yuga Labs' Conditionally Counter-Proposed Instruction 27(a)**

It was determined in a prior proceeding that Defendants intentionally infringed the BAYC Marks, and you must accept that determination as true.  You must now determine whether Defendants acted willfully.

To prove willfulness, Plaintiff must show (1) that Defendants were aware of Yuga Labs and attempting to gain the value of the BAYC Marks, or (2) that Defendants' infringement was deliberate, false, misleading, or fraudulent, or (3) that Defendants' actions were the result of willful blindness.  Willful blindness means that Defendants knew they might be selling infringing goods but nevertheless intentionally shielded themselves from discovering the truth.

> **2.     Yuga Labs' Conditionally Counter-Proposed Instruction 27(b)**

If you find for the Plaintiff on the Plaintiff's false advertising claim, you must determine whether Defendants acted willfully.

To prove willfulness, Plaintiff must show (1) that Defendants were actually aware that their representation was false, or (2) that Defendants' false advertising was deliberate, false, misleading, or fraudulent, or (3) that Defendants' actions were the result of willful blindness to whether their representation was false or misleading. Willful blindness means that Defendants knew they might be making false or misleading representations but nevertheless intentionally shielded themselves from discovering the truth.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.    Defendants' Proposed Instruction re Trademark Infringement–Deliberate or Willful**

It was determined in a prior proceeding that Defendants infringed the BAYC Marks, and you must accept that determination as true.  You must determine whether Defendants acted willfully or deliberately.

Separately, if you find for the Plaintiff on the Plaintiff's false advertising claim, you must determine whether defendants acted willfully or deliberately.

To prove willfulness, Plaintiff must show (1) that Defendants were actually aware of the infringing activity, or (2) that Defendants' actions were the result of willful blindness.  Willful blindness means that Defendants knew they might be selling infringing goods but nevertheless intentionally shielded themselves from discovering the truth.

**C.    Plaintiff's Legal Position**

Following this Court's Order and in response to Defendants' objections that willfulness is not required for a Lanham Act plaintiff to receive a defendant's profits, Yuga Labs withdrew its proposed willfulness instructions.  This Court's Order disposed of any issues of Defendants' mental state that the jury needed to decide on Yuga Labs' Lanham Act claims.  Yuga Labs does not request an instruction to the jury on willfulness because there is no issue in dispute that the jury must decide on Defendants' state of mind.

Yet, after this Court's Order once again rejected Defendants' inflammatory material as relevant to this trademark and false advertising case, Defendants notably changed their tune regarding a willfulness instruction given that they previously objected that "the Ninth Circuit Manual of Model Civil Jury Instructions do not provide an instruction for willfulness because the Supreme Court has [sic] equivocally held that willfulness is not necessary for determining infringement or damages in trademark matters."  Declaration of Kimberly Culp in Support of Yuga Labs' Motion *In Limine* No. 2 (concurrently filed on May 25, 2023) at Exhibit 9 page 66.  They now ask the Court to instruct the jury on willfulness.  Their gambit is

FENWICK & WEST LLP
ATTORNEYS AT LAW

obvious – a willfulness instruction is their last remaining thread on which they might hang a relevance argument for their hundreds upon hundreds of exhibits of inflammatory material, in which they call Yuga Labs Nazis and make other heinous accusations.  But, Defendants' latest attempt to put this supposed evidence in front of the jury is as flawed as their prior efforts.  Their state of mind *is not at issue* for any of the claims that the jury will consider.  For any of several reasons below, the Court should decline Defendants' request to instruct the jury on willfulness and once again reject Defendants' attempts to parade their prejudicial theories before the jury.[1]

First, Defendants contend their intent is relevant to the question of damages and they rely solely on *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020) for their proposed willfulness instruction.  Defendants are wrong – *Romag* does not address Lanham Act damages.  Rather, the Supreme Court resolved a circuit split relating to whether a Lanham Act plaintiff had to prove a defendant's willfulness to recover a defendant's profits (it does not) and wrote that, nevertheless, "a trademark defendant's mental state is a highly important consideration in determining *whether an award of profits* is appropriate." *Id.* (emphasis added).  The Supreme Court's reference to "profits" in *Romag* does not encompass the separate issue of damages because "profits" are not "damages" under the Lanham Act.  The Lanham Act specifically distinguishes between damages and profits, both of which are recoverable by a successful plaintiff.  15 U.S.C. § 1117(a); *see also,* Plaintiff's proposed jury instructions Nos. 28 and 30 (which are based off of Ninth Circuit Model Jury Instructions 15.27 ("Plaintiff's Actual Damages") and 15.29 ("Defendant's Profits").  Therefore, Defendants' reliance on *Romag* to argue in favor of instructing the jury on willfulness is misplaced.

Second, the issue of *whether* to award profits has always been an issue for the *district court*, not a jury, because an award of profits under the Lanham Act is an

---

[1] By and through their Motions *In Limine* Nos. 1 and 2, Yuga Labs has also requested that the Court exclude evidence of Defendants' state of mind as, at least, irrelevant and prejudicial.

FENWICK & WEST LLP
ATTORNEYS AT LAW

equitable remedy. *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 39 (9th Cir. 2022) ("The parties agree that disgorgement of profits is an equitable issue ordinarily left to the court."); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("A claim for disgorgement of profits under § 1117(a) is equitable, not legal."). Therefore, it is this Court, not a jury, who may consider Defendants' mental state when determining whether to award Defendants' profits to Yuga Labs and how much to award Yuga Labs. *See also* 15 U.S.C. § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."). The jury's role in a profits award is to merely calculate Defendants' profits. Ninth Circuit Model Jury Instruction 15.29 – Trademark Damages – Defendant's Profits. Once the jury calculates the Defendants' profits, it is up to the Court to determine the final amount of Defendants' profits to award Yuga Labs based upon what is "just."

Third, this instruction is unnecessary (even if state of mind was an issue that goes to the jury; it is not) because the Court *already* determined Defendants' mental state when it found that they acted with the intent to deceive consumers:

> When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose:  that is, that the public will be deceived." . . . In this case, Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks.  Because Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks, and in the absence of contrary evidence, the Court concludes that Defendants used the BAYC marks in an effort to confuse consumers. . . . In addition, the Court concludes that Defendants intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   For example, Defendants listed the RR/BAYC NFTs on rrbayc.com

2   under the very same Ape ID number associated with BAYC NFTs,

3   despite having their very own unique and different ID numbers.

4   Order at 12 (citations omitted).  Therefore, to the extent that Defendants' mental state

5   was ever an element of Yuga Labs' first claim for relief (whether for the Court or the

6   jury), the Court's Order resolved that issue.[2]

7         Moreover, even if Yuga Labs had to prove "willfulness" (as opposed to merely

8   Defendants' "mental state" generally) the Court's Order also disposes of the need to

9   assess Defendants' "willfulness" because their intentional infringement is, as a matter

10  of law, "willful."  *Fifty-Six Hope Rd. Music, Ltd.*, 778 F.3d at 1074 (willfulness

11  encompasses a defendant's "awareness of its competitors and its actions at those

12  competitors' expense") (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400,

13  1406 (9th Cir. 1993)).  Thus, even if the Defendants' state of mind was a legal, not

14  equitable issue, the Court has already made factual findings that dispose of that issue.

15  Defendants, once again, improperly seek to re-litigate that issue by asking the jury to

16  be instructed on the issue of willfulness.  *See Peliculas Y Videos Internacionales,*

17  *S.A. de C.V.*, 302 F. Supp. 2d at 1133.

18        Finally, to the extent there is any claim on which a jury might decide

19  willfulness, Yuga Labs does not seek a jury determination as to whether Defendants'

20  Lanham Act violations were willful.  *See, e.g.*, *Feemster v. Dehntjer*, 661 F.2d 87,

21  90 (8th Cir. 1981) ("The plaintiff is master of his claim. He may abandon a theory of

22  liability during the trial, and if he does the jury should be clearly instructed only on

23  those issues that it will consider.").  Therefore, on that basis alone, the Court should

24  not instruct the jury on willfulness.  There is no need to burden the jury with

25

26  [2] Yuga Labs does not seek a jury determination of Defendants' mental state for
    purposes of an award of profits under its second claim for relief because

27  Defendants' state of mind is also not relevant to any element of Yuga Labs' false
    advertising case.  *See POM Wonderful LLC v. Purely Juice, Inc.*, 362 F. App'x.

28  577, 579 (9th Cir. 2009) ("It is settled that intent is not an element of a Lanham Act
    false advertising claim.").

FENWICK & WEST LLP
ATTORNEYS AT LAW

relitigating an issue already resolved by the Court, not necessary to Yuga Labs' claims, and for which Yuga Labs does not seek a determination.

Notwithstanding the foregoing reasons why it is improper for the Court to instruct the jury on willfulness, if the Court decides to instruct the jury on this issue, Defendants' instruction is flawed for two reasons.

First, Defendants combine willfulness with respect to trademark infringement and willfulness with respect to false advertising in a way that is confusing. The claims are separate and the facts that support them are not the same. This is particularly true where there is no "infringing activity" for the jury to consider with respect the false advertising claim. Thus, to the extent the Court finds it appropriate to instruct the jury on willfulness, the jury should be accurately instructed on the different facts that might support willfulness for each claim. And the jury should make that assessment separately – one consideration with respect to claim 1 and a separate assessment with respect to claim 2. Therefore, for clarity and to focus the separate inquiries, the Court should give two tailored instructions. Yuga Labs' proposed instructions in the event the Court decides to instruct the jury on willfulness appropriately make that separation.

Second, Defendants omit and misstate the case law. The Ninth Circuit has repeatedly held that willfulness "carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." *Lindy Pen*, 982 F.2d at 1405-06. Defendants' instruction omits this language. Similarly, willfulness has also been described as existing where there is "a connection between a defendant's awareness of its competitors and its actions at those competitors' expense" or "where the defendant is 'attempting to gain the value of an established name of another.'" *Fifty-Six Hope Rd.*, 778 F.3d at 1074 (quoting *Lindy Pen*, 982 F.2d at 1406). Defendants' proposed instruction also omits these ways in which a plaintiff has historically demonstrated willfulness. Yuga Labs' instructions on willfulness more closely track

the facts of this case and the law—especially where Defendants admit to knowledge of Yuga Labs and use of Yuga Labs' marks in Defendants' sales.  Therefore, if the Court is going to instruct the jury on willfulness over Yuga Labs' objection, then Yuga Labs contends its instruction more closely tracks the Ninth Circuit case law on what has been "willful" under the Lanham Act.

## D.   Defendants' Legal Position

Plaintiff has represented multiple times, including in its motion for summary judgment and as recently as its motions *in limine*, that it will seek enhanced damages and fees from Defendants on the basis of a claim of willful and intentional infringement.  *See, e.g.*, Dkt. 149, at 13 (Plaintiff arguing that "this is an exceptional case *of intentional infringement*" (emphasis added)); *see also* ECF 225 at 13 ("[T]he Court denies Yuga's Motion as to whether this is an exceptional case entitling Yuga to enhanced damages and attorneys' fees because Yuga has reserved the issue of damages for trial.").

The Lanham Act makes clear that an exceptional case finding depends in part on whether Defendants conduct was willful and intentional (*see* 15 U.S.C. §1117(b)(1)-(2)), and there is no dispute that willfulness is a factual question within the province of the jury.  *See Stone Brewing Co LLC v. MillerCoors LLC, Slip Op., Case No. 3:18-cv-00331-BEN-MDD (July 29, 2022)* (declining to enhance damages under Lanham Act based in part on defendant's subjective belief that it did not infringe); *Grasshopper House LLC v. Clean and Sober Media, LLC, 2021 WL 3702243 at *3 (9th Cir. 2021)* ("On remand, the district court should consider Defendants' mental state — whatever that may be — when determining what award of profits is appropriate.").  In fact, in an earlier iteration of its jury instructions, Plaintiff proposed the exact willfulness instruction that Defendants offer above.  *See* Plaintiff's Proposed Jury Instruction No. 32 (Apr. 14, 2023).  Accordingly, because Plaintiffs intend to seek enhanced damages and fees under the Lanham Act, Defendants are entitled to a jury finding on the question of willfulness to inform the

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Court's eventual ruling on the question of enhanced damages.

2          Apparently recognizing that proving willfulness to the jury will be exceedingly

3    difficult given the facts of this case, Plaintiff now states that it is "*not seeking a jury*

4    *determination of willfulness*" and that "*Defendant does not have the right to force*

5    *Plaintiff to put on a willfulness case.*"  But that characterization turns the issue on its

6    head.  The question is not whether Defendants can "*force*" Plaintiff to try willfulness,

7    but rather whether Plaintiff can, without consequence, avoid presenting to the jury

8    the factual question of willfulness that is the basis for its claim of enhanced damages.

9    But it is well-settled that where a party chooses not to present a claim or defense at

10   trial, the unpursued claim is "eliminated from the action".  *So. Cal. Retail Clerks*

11   *Union & Food Employers Join Pension Trust Fund v. Bjorklund*, 728 F.2d 1262,

12   1262 (9th Cir. 1984) (applying rule to claims not preserved in pretrial order); *Asfall*

13   *v. LAUSD*, No. 18-CV-00505-CBM, 2020 WL 2951920 at *2 (C.D. Cal. Feb. 11,

14   2020) (same).  Accordingly, if Plaintiff no longer intends to argue to the jury that

15   Defendants' conduct was willful, then the issue of willfulness is no longer part of the

16   case and it is established as true for purposes of any exceptional case analysis that

17   Defendants' conduct was not willful or intentional.  Plaintiff should not be allowed

18   to have their proverbial cake (avoid trying the issue of willfulness to the jury) and eat

19   it too (seek enhanced damages for a purportedly "exceptional case of intentional

20   infringement").

FENWICK & WEST LLP
ATTORNEYS AT LAW

**DISPUTED INSTRUCTION NO. 28**

**A.     Plaintiff's Proposed Instruction re Damages–Plaintiff's Actual Damages**

It was determined in a prior proceeding that plaintiff has proven Defendants' infringement of the BAYC Marks and is entitled to monetary damages, and you must accept that determination as true.  You must determine the plaintiff's actual damages from defendants' trademark infringement.

Separately, iIf you find for the plaintiff on the plaintiff's false advertising [infringement] [unfair competition] claim [and find that the defendant had statutory notice or actual notice of the plaintiff's registered trademark], you must determine the plaintiff's actual damages from Defendants' false advertising.

The plaintiff has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any [injury] [and] [or] [property damage] you find was caused by the defendants' defendant's infringement of the plaintiff's registered trademark and/or Defendants' false advertising.

You should consider the following:

1.     [The [injury to] [loss of] the plaintiff's reputation][;]

2.     [The [injury to] [loss of] plaintiff's goodwill, including injury to the plaintiff's general business reputation][;]

3.     [The expense of preventing customers from being deceived][;]

4.     [The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement and/or false advertising][;] [and]

5.     The cost to Yuga Labs to purchase RR/BAYC NFTs on the secondary market [*Insert any other factors that bear on plaintiff's actual damages*].

When considering prospective costs (e.g., cost of future advertising, expense

of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's marks at the time of the infringement and/or false advertising by the defendants.

## B. Defendants' Proposed Instruction re Damages–Plaintiff's Actual Damages

*Defendants' position is that this instruction should not be given.  If the Court gives an instruction on actual damages, Defendants propose the following instruction in the alternative:]*

It was determined in a prior proceeding that Defendants infringed the BAYC Marks and that Yuga Labs is entitled to monetary damages for trademark infringement, and you must accept that determination as true.  You must determine the amount of Yuga Labs's damages for trademark infringement.

Separately, iIf you find for the plaintiff on the plaintiff's false advertising [infringement] [unfair competition] claim [and find that the defendant had statutory notice or actual notice of the plaintiff's registered trademark], you must determine the plaintiff's actual damages you find was caused by the defendants' false advertising.

The plaintiff has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any [injury] [and] [or] [property damage] you find was caused by the defendants' defendant's infringement of the plaintiff's registered trademark and/or defendants' false advertising.

You should consider the following:

1.     [The [injury to] [loss of] the plaintiff's reputation][;]

2.     [The [injury to] [loss of] plaintiff's goodwill, including injury to the plaintiff's general business reputation][;]

FENWICK & WEST LLP
ATTORNEYS AT LAW

3.   [The lost profits that the plaintiff would have earned but for the defendants' ~~defendant's~~ infringement. Profit is determined by deducting all expenses from gross revenue][;]

4.   [The expense of preventing customers from being deceived][;] and

5.   [The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement][;] [and].

When calculating plaintiff's actual damages, you may not include any loss caused by other market factors and not as a result of defendants' infringement or false advertising.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's marks at the time of the infringement by the defendants.

## C.   Plaintiff's Legal Position

The Court should instruct the jury on both actual damages and Defendants' profits in accordance with the plain language of 15 U.S.C. § 1117(a), which provides that plaintiffs may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, *and* (3) the costs of the action." (emphasis added).  In contrast, Defendants' position that the Court should not instruct the jury on actual damages conflicts with both the Ninth Circuit Manual of Model Civil Jury Instructions and well-established case law.

First, Courts in this district have consistently permitted plaintiffs to recover both actual damages and defendants' profits on the Lanham Act claims.  *See POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633 CAS (JWJx), 2008 WL 4222045, at *14-15 (C.D. Cal. July 17, 2008) *aff'd*, 362 F. App'x 577 (9th Cir. 2009)

(awarding both lost profits and defendant's profits to the plaintiff in a Lanham Act false advertising claim); *Deckers Outdoor Corp. v. Ego Shoes Ltd*., No. CV 20-11351-MWF (EX), 2021 WL 5933111, at *2 (C.D. Cal. Nov. 19, 2021) (awarding Defendants' profits, plaintiff's actual damages, and attorney's fees and costs under 15 U.S.C § 1117(a)); *Bellagio Jewelry, Inc. v. Croton Watch Co.*, No. CV 06-6672 ODW (RZx), 2008 WL 3905895, at *13 (C.D. Cal. Aug. 20, 2008) (awarding plaintiff both lost royalties and defendants' profits under 15 U.S.C § 1117(a)).

Indeed, a court in this district has previously considered Defendants' argument and rejected it:

> Defendant argues that, in order to avoid double recovery, Plaintiffs must elect only one of the three forms of recover under § 1117(a).  The Court feels the language of the statute speaks for itself, however.  Plaintiffs can recover Defendant's profits, any damages sustained, *and* the costs of the action.

*Bellagio Jewelry, Inc.*, 2008 WL 3905895, at *11 (citations omitted).

Second, neither of Defendants' citations for their instruction hold that the Court cannot instruct the jury on both actual damages and Defendants' profits. Defendants' first reference is to *dicta* in a footnote where the court did not even reach the issue here – whether a party can recover both actual profits and damages under the Lanham Act.  *See TriPharma, LLC v. First Fruits Bus. Ministry*, SACV 12-404 JVS (ANx), 2013 WL 12129386, at *4 n.10 (C.D. Cal. Apr. 2, 2013).  Rather, the plaintiff elected to pursue only one measure of monetary recovery.

Defendants' only other case is similarly inapposite.  In *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, the Ninth Circuit addressed whether a plaintiff's recovery under the Copyright Act and the Lanham Act constituted a double recovery under the facts of that case.  40 F.3d 1007 (9th Cir. 1994).  In *dicta*, the Court noted that "the recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act."  *Id.* at 1010.  This statement

FENWICK & WEST LLP
ATTORNEYS AT LAW

was neither necessary to the decision nor a steadfast rule regarding the allocation of damages for subsequent cases.  As many subsequent cases have confirmed, some of which Yuga Labs cites above, there is no rule precluding an instruction on both actual damages and defendant's profits and *Nintendo* does not espouse such a rule.  Indeed, the Ninth Circuit model instructions include *both* an instruction for actual damages and an instruction for a defendant's profits, and the profits instruction specifically directs the jury not to double count harm they considered when making a damages assessment.  In other words, the Ninth Circuit has already considered the issue in *Nintendo* and addressed that concern in its model instructions.

Third, actual damages are a "traditional form of relief offered in the courts of law." *Curtis v. Loether*, 415 U.S. 189, 196 (1974).  A failure to instruct the jury on actual damages would effectively strip Yuga Labs of its right to a jury trial on damages in this case where, at least as to its infringement claim, Yuga Labs is entitled to recover damages.  *See* Dkt. 225 at 13 ("The Court concludes that Yuga is entitled to monetary damages and injunctive relief.").  Yuga Labs proposes that the Court use a modified version of the Ninth Circuit's model instruction on actual damages because it addresses the multiple sources of damages that a jury should ordinarily consider in a damages award, including injury to reputation and goodwill, expense of preventing consumers from being deceived, costs of future corrective advertising, and other factors that bear on a plaintiff's actual damages.[3]  Defendants' profits does not, and cannot, completely capture those harms.

Finally, Yuga Labs agrees with Defendants insofar as where a defendant's profits are used as a "proxy" for actual damages, it would be erroneous for a plaintiff to recover defendant's profits twice over.  *See Dermfx, Inc. v. Obagi Med. Prod., Inc.*, No. 15-cv-01999-JVS, 2017 WL 2684548, at *12 (C.D. Cal. Mar. 24, 2017)

---

[3] Yuga Labs' modifications primarily address the inclusion of the false advertising claim.  But, Yuga Labs will also present evidence on its costs to remove the infringing RR/BAYC NFTs from the market, and so has proposed an appropriate addition to the model instruction where the model indicates such addition belongs.

FENWICK & WEST LLP
ATTORNEYS AT LAW

("An alleged infringer's profits are recoverable in trademark cases on a disgorgement/unjust enrichment theory or as proxy for actual damages under 15 U.S.C. Section 1117(a)(2)."); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830, 839 (C.D. Cal. 2012) ("Under § 1117(a), a plaintiff may recover an infringing defendant's profits in two situations: (1) as a measure of the plaintiff's own damages; *or* (2) on a theory of disgorgement of the defendant's unjustly obtained profits.") (emphasis added).  However, double recovery issues are irrelevant here because Yuga Labs is not seeking a lost profits award as actual damages; it only seeks Defendants' profits, as it is entitled to do.  Moreover, Yuga Labs' instruction on Defendants' profits specifically instructs the jury not to double count.

Separately, Defendants' proposed modification on losses from market factors is an egregious misstatement of the Comment to Model Instruction No. 15.27 and should be rejected.  The Comment plainly states, "Defendant may argue that *plaintiff's loss in sales* may be caused by other market factors and not as a result of defendant's infringement."  Defendants' proposed addition to the model wrongly states that "When calculating *plaintiff's actual damages*, you may not include *any loss* caused by other market factors and not as a result of defendants' infringement or false advertising."  The Comment makes clear that market factors are relevant only to lost profits, not to the other forms of damages enumerated in the model instruction, including, injury to goodwill and reputation and future corrective advertising.  Moreover, because Yuga Labs is not seeking its lost profits as actual damages it is improper to modify this instruction to reference market factors.

**D.    Defendants' Legal Position**

Plaintiff's proposed instruction is contrary to law because it would, in the words of the Ninth Circuit effect "a double recovery under the Lanham Act." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994). Instead, Plaintiff must elect which form of damages it wishes to pursue at trial.  *See TriPharma, LLC v. First Fruits Business Ministry*, SACV 12-4-4 JVS (ANx), 2013

FENWICK & WEST LLP
ATTORNEYS AT LAW

WL 12129386, at *4 n.10 (C.D. Cal. Apr. 2, 2013) ("Notwithstanding the statutory language that appears to allow both 'defendant's profits' and plaintiff's actual 'damages' to be recovered, it is clear that both may not be recovered in the same action … Likely recognizing this, TriPharma seeks either 'Defendants' profits or actual damages' in specified ranges." (emphasis in original)). Whichever measure of damages Plaintiff selects, the jury should be instructed as to those damages and not any others.

Separately, if the Court for any reason instructs the jury on actual damages, its instruction should include language making clear that the jury is not to award damages for harm to Yuga unrelated to Defendants' actions. *See* Defendants' Proposed Instruction No. 28 ("When calculating plaintiff's actual damages, you may not include any loss caused by other market factors and not as a result of defendants' infringement or false advertising.")  Defendants intend to argue at trial that the claimed harm to Yuga's brand is attributable to other factors, including Yuga's failure to police the marketplace for violations of its marks by third parties, criticism of its marks and business practices by those in the marketplace, and a general decline of crypto asset prices since 2021, among other reasons.  The commentary to the Ninth Circuit model instructions makes clear that where a party makes such an argument, a specific instruction is warranted.  Comment to Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.27 ("Defendant may argue that plaintiff's loss in sales may be caused by other market factors and not as a result of defendant's infringement.  If defendant makes such an argument, an appropriate instruction should be drafted.").  Defendants proposed instruction makes clear why evidence concerning other market factors is relevant, and will aid the jury in assessing the facts and rendering a verdict.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**DISPUTED INSTRUCTION NO. 29**

**A.     Plaintiff's Proposed Instruction re Loss of Goodwill**

In determining general compensatory damages, you may consider whether plaintiff suffered any measurable loss to its goodwill.  The goodwill of a business is an intangible business value reflecting the basic human tendency to do business with a merchant who offers products of the type and quality the customer desires and expects.  Service to the customer and a willingness to stand behind a warranty and other representations about the quality of the products sold by a merchant are all factors in the goodwill of that business.

The goodwill attached to a particular product or a business may be symbolized in whole or in part by the consuming public's acceptance and recognition of the business.  The goodwill attached to a product is a part of the overall business value that is the goodwill of the that business.  It is possible, therefore, that the general goodwill of a business may be damaged by the loss of goodwill to a particular product.  Whether this has occurred is a question of fact for you to determine.

If you find plaintiff's goodwill has been damaged either by damage to the goodwill associated with a particular product or injury to its general business reputation, you may assess such compensatory damages as you may find shown by the evidence.  The measure of plaintiff's damage is the difference between such goodwill before and after the acts of the defendant.

**B.     Defendants' Proposed Instruction re Loss of Goodwill**

Defendants' Position is that this instruction should not be given and do not propose a competing instruction.

**C.     Plaintiff's Legal Position**

Defendants' position that the proposed instruction on Loss of Goodwill is unnecessary is meritless.  Goodwill is not a term easily comprehended by an average juror, which is why there are model instructions explaining what goodwill is.  Further, this proposed instruction is proper because it accurately defines "goodwill" and

FENWICK & WEST LLP
ATTORNEYS AT LAW

complies with this Court's Scheduling and Case Management Order.   Dkt. 57 ("Scheduling Order").   The Court should give this model instruction on "Loss of Goodwill" to the jury.

Instructing the jury on "Loss of Goodwill" is proper because it is not "a term that [is] within the comprehension of the average juror." *United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1225 n.3 (9th Cir. 2017).   Here, goodwill is a specific economic measure of damages and the term will be used by Yuga Labs' experts to explain Yuga Labs' damages.   The "average juror" is not an economist.   And in this case, the jury is not merely being asked to understand goodwill as a concept, but rather will be asked to assign a dollar amount to it.   Much like the added element of intent to the term "entry" in *Vazquez-Hernandez*, this additional step of quantifying Yuga Labs' goodwill takes the term outside of "the comprehension of the average juror." *Id.*   The jury should be instructed on "Loss of Goodwill."

The proposed instruction on Loss of Goodwill is proper under the Scheduling Order, which orders that, where possible, the parties shall utilize model instructions from the Ninth Circuit, the Judicial Council of California, or O'Malley, Grenig, and Lee.   Scheduling Order at 28.   Yuga Labs followed the Scheduling Order in proposing an instruction on Loss of Goodwill appropriately taken from O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 129:32 (6th ed.).   Further, the proposed instruction defines "goodwill" as "the basic human tendency to do business with a merchant who offers products of the type and quality the customer desires and expects."   Given that goodwill is an accepted harm in Lanham Act cases, this definition is applicable to this trademark and false advertising dispute, and defining the term will aid the jury in its deliberations. *See*, *e.g.*, Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.27.

**D.   Defendants' Legal Position**

As with the prior instruction, Defendants position is that this instruction should not be given because it would effect a "double recovery." *Nintendo of Am., Inc. v.*

*Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).  Because Yuga is not eligible to recover *both* disgorgement of Defendants profits and actual damages for harm suffered by Yuga, it should elect which form of damages it intends to pursue and the jury should be instructed as to the selected measure.

But even if Plaintiff elects to pursue actual damages, Plaintiff's instruction is unnecessary and duplicative of its other instructions on actual damages.  In particular, disputed instruction No. 33, *supra*, expressly states that the jury can award damages for "loss of plaintiff's goodwill, including injury to the plaintiff's general business reputation" as well as "injury to the plaintiff's reputation."  Additional instruction on the concept of goodwill is not necessary, and will place unnecessary emphasis on the issue with the jury.  That is presumably why the Ninth Circuit model instructions on trademark law do not include the instruction that the Plaintiff cites; rather, it is pulled from an entirely different model, addressing entirely different topics.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**DISPUTED INSTRUCTION NO. 30**

**A.    Plaintiff's Proposed Instruction re Damages–Defendants' Profits**

It was determined in a prior proceeding that plaintiff has proven Defendants' intentional infringement of the BAYC Marks, and you must accept that determination as true.  You must determine defendants' profits from their infringement of Yuga Labs' marks.

Separately, if you find for plaintiff on plaintiff's false advertising claim, you must determine defendants' profits from their false advertising.

In addition to actual damages, the plaintiff is entitled to any profits earned by the defendants that are attributable to the infringement and/or false advertising, which the plaintiff proves by a preponderance of the evidence.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of defendants' defendant's receipts from using the trademarks and/or false advertising in the sale of their a [product]. The plaintiff has the burden of proving the defendants' a defendant's gross revenue by a preponderance of the evidence.

Expenses are all [operating] [overhead] and production costs incurred in producing the gross revenue.  The defendants have has the burden of proving the expenses [and the portion of the profit attributable to factors other than use of the infringed trademarks] and/or false advertising by a preponderance of the evidence.

Unless you find that a portion of the profit from the sales of the RR/BAYC NFTs [specify goods] using the trademarks and/or false advertising is attributable to factors other than use of the trademarks and/or false advertising, you should find that the total profit is attributable to the infringement and/or false advertising.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.      Defendants' Proposed Instruction re Damages–Defendants' Profits**

It was determined in a prior proceeding that Defendants infringed the BAYC Marks and that Yuga Labs is entitled to monetary damages for trademark infringement, and you must accept that determination as true.  You must determine the amount of Yuga Labs's damages for trademark infringement.

~~In addition to actual damages, t~~The plaintiff may be ~~is~~ entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence.  ~~You may not, however, include in any award of profits any amount that you took into account in determining actual damages.~~

Separately, if you find for plaintiff on plaintiff's false advertising claim, the plaintiff may be entitled to any profits earned by the defendant that are attributable to the false advertising, which the plaintiff proves by a preponderance of the evidence.

A trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of defendant's receipts from using the trademark in the sale of a [product]. The plaintiff has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Expenses are all [operating], [overhead], and production costs incurred in producing the gross revenue. The defendant has the burden of proving the expenses [and the portion of the profit attributable to factors other than use of the infringed trademark] by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the RR/BAYC Project NFTs [specify goods] using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

## C.     Plaintiff's Legal Position

Defendants' proposed modification to the model jury instruction adding confusing language regarding the jury's consideration of Defendants' mental state is both prejudicial and plainly misstates the law.

As Yuga Labs explained *supra* with respect to the Defendants' proposed willfulness instruction, Defendants' state of mind is only relevant to equitable determinations made by the court (not the jury) in its determination of whether Yuga Labs is entitled to disgorgement of Defendants' profits. *See Fifty-Six Hope Rd. Music, Ltd.*, 778 F.3d at 1075 ("A claim for disgorgement of profits under § 1117(a) is equitable, not legal."). The jury should not be instructed on an equitable determination traditionally reserved for the court. *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 39 (9th Cir. 2022) ("The parties agree that disgorgement of profits is an equitable issue ordinarily left to the court."). And, the Court has already made those factual findings on Defendants' mental state. Therefore, for each of the reasons why the Court should not instruct the jury on willfulness, the Court should reject Defendants' proposed modification to the model instruction on how the jury is to calculate Defendants' profits.

Moreover, the mere fact that the model instruction *does not* include any instruction to the jury to assess Defendants' mental state or how to make that assessment is further indicative of the fact that the jury's only role in a profits award is to calculate the profits. Whether it is equitable to award Defendants' profits to Yuga Labs **is a question the Court answers, not the jury**.

Finally, Defendants' proposed modification to the instruction is confusing because it gives no guidance to the jury on how to make any consideration of mental state. Likewise, the proposed modification confusingly suggests that the jury should adjust its profits calculation based on some undefined mental state.

Defendants' proposed modification to the model instruction plainly misstates the law and is prejudicial. The Court should reject it. Instead, the Court should give

FENWICK & WEST LLP
ATTORNEYS AT LAW

Yuga Labs' proposed instruction on Defendants' profits, which uses the Ninth Circuit model instruction, and merely modifies the model instruction to account for the two Lanham Act claims which could be subject to a profits calculation.

**D.     Defendants' Legal Position**

As with the prior instruction, Defendants position is that this instruction should not be given because it would effect a "double recovery." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994). Because Yuga is not eligible to recover *both* disgorgement of Defendants profits and actual damages for harm suffered by Yuga, it should elect which form of damages it intends to pursue and the jury should be instructed as to the selected measure.

Additionally, Defendants' proposed instruction includes language needed to ensure that the jury does not improperly award Yuga damages for harm not caused by Defendants. Because Defendants will argue that Yuga's "loss in sales [were] caused by other market factors and not a result of defendant's infringement," the Ninth Circuit Model Civil Jury Instructions make clear that "an appropriate instruction should be drafted" to address the issue. *See* Comment to Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.27.

Defendants' instruction also makes clear to the jury that Defendants' intent in creating and promoting the RR/BAYC project is an important factor for damages that the jury must consider, which the Supreme Court has said has a bearing on recovery "[w]ithout question." *Romag Fasteners, Inc v. Fossil, Inc.*, No. 3:10-cv-1827 (D. Conn. 2014), *subsequent history at* 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020) ("Without question, a defendant's state of mind may have a bearing on what relief a plaintiff should receive."); *Grasshopper House LLC v. Clean and Sober Media, LLC*, 2021 WL 3702243 at *3 (9th Cir. 2021) ("On remand, the district court should consider Defendants' mental state — whatever that may be — when determining what award of profits is appropriate."). By contrast, Plaintiff's instruction does not address the required analysis of Defendants' intent at all.

1  Dated:  May 25, 2023                    FENWICK & WEST LLP

2

3                                          By: _/s/ Eric Ball_____
                                               Eric Ball
4                                          Attorneys for Plaintiff
                                           YUGA LABS, INC.
5

6

7  Dated:  May 25, 2023                    WILMER CUTLER PICKERING HALE
                                           AND DORR LLP
8

9
                                           By: _/s/ Louis W. Tompros_____
10                                             Louis W. Tompros
                                           Attorneys for Defendants
11                                         RYDER RIPPS and JEREMY CAHEN

12

13                   **ATTESTATION OF CONCURRENCE IN FILING**

14          Pursuant to the United States District Court for the Central District of

15  California's Civil L.R. 5-4.3.4(a)(2)(i), Eric Ball attests that concurrence in the filing

16  of this document has been obtained from Louis W. Tompros.

17

18                                         _/s/ Eric Ball_____
                                           Eric Ball
19

20

21

22

23

24

25

26

27

28

Fenwick & West LLP
Attorneys at Law