ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>　　　　Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**JOINT BRIEFING FOR YUGA LABS, INC.'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE "INFLAMMATORY MATERIAL"**<br><br>Date:　　　　June 16, 2023<br>Time:　　　　8 a.m.<br>Courtroom:　7A<br>Judge:　　　Honorable John F. Walter<br><br>Pretrial Conf. Date: June 9, 2023<br>Trial Date: June 27, 2023 |

1 | MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
2 | FENWICK & WEST LLP
228 Santa Monica Boulevard
3 | Santa Monica, CA  90401
Telephone:   310.434.4300
4 |

5 | DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
6 | KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
7 | MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
8 | CLARE LOCKE LLP
10 Prince Street
9 | Alexandria, VA  22314
Telephone:   202.628.7400
10 |

11 | Attorneys for Plaintiff
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

## TABLE OF CONTENTS

2

Page

3  I.   IDENTIFICATION OF THE MATTER IN DISPUTE.................................. 1

4  II.  YUGA LABS' MEMORANDUM OF POINTS AND
5      AUTHORITIES................................................................................ 6

6      A.   INTRODUCTION .................................................................... 6

7      B.   RELEVANT BACKGROUND .................................................. 9

8           1.   Defendants' Introduction of the Inflammatory Material
9                into Their Filings Has Been Pervasive .......................... 9

10          2.   Defendants Continued to Introduce Inflammatory
11               Material During Depositions ...................................... 10

12     C.   INFLAMMATORY MATERIAL IS NOT RELEVANT TO
13          THE ISSUES REMAINING FOR TRIAL ......................... 13

14     D.   THE DANGER OF UNFAIR PREJUDICE AND
           CONFUSION SIGNIFICANTLY OUTWEIGHS THE
15          NON-EXISTENT PROBATIVE VALUE OF THE
           INFLAMMATORY MATERIAL ...................................... 17
16

17     E.   DEFENDANTS ARE ESTOPPED FROM INTRODUCING
           EVIDENCE OF THEIR INTENT PRE-DATING THE
18          MAY 14, 2022 MINT OF THE RR/BAYC COLLECTION ............. 19
19
       F.   THE ALLEGED EVIDENCE IS CHARACTER OR
20          PROPENSITY EVIDENCE FOR WHICH NO PROPER
           PURPOSE EXISTS................................................................ 20
21

22     G.   CONCLUSION .................................................................... 21

23 III.  DEFENDANTS' MEMORANDUM OF POINTS AND
24      AUTHORITIES.............................................................................. 21

25     A.   INTRODUCTION ................................................................ 21

26     B.   EVIDENCE OF HATEFUL IMAGERY ASSOCIATED
27          WITH THE BORED APE YACHT CLUB IS RELEVANT
           TO INTENT AND DAMAGES ............................................ 23
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**
**(Continued)**

Page

1.   THE EVIDENCE YUGA SEEKS TO EXCLUDE IS
RELEVANT TO DEFENDANTS' MOTIVATION
AND INTENT ....................................................................... 23

2.   THE EVIDENCE THAT YUGA SEEKS TO
EXCLUDE EXPLAINS THE HARM YUGA CLAIMS
TO HAVE SUFFERED AND IS THUS ADMISSIBLE
TO SHOW LIMITED DAMAGES .......................................... 26

3.   THE COURT HAS NOT ALREADY DECIDED THE
ISSUES HERE ...................................................................... 28

C.   THE PROBATIVE VALUE OF THE EVIDENCE YUGA
SEEKS TO EXCLUDE OUTWEIGHS ANY UNFAIR
PREJUDICE ............................................................................. 29

D.   ESTOPPEL DOES NOT APPLY ................................................ 31

E.   RULE 404 IS INAPPLICABLE .................................................. 32

F.   CONCLUSION ........................................................................ 33

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bassett v. City of Burbank*,
    No. 2:14-CV-01348-SVW-CW, 2014 WL 12573395
    (C.D. Cal. Nov. 14, 2014) ................................................................. 30

*Calloway v. Hayward*,
    No. 08-CV-01896, 2017 WL 363000 (E.D. Cal. Jan. 24, 2017) ....................... 19

*Cox v. Continental Cas. Co.*,
    703 Fed. App'x. 491 (9th Cir. 2017) ................................................. 20

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
    No. 215CV02812ODWPLA, 2017 WL 5634993
    (C.D. Cal. Oct. 6, 2017) ................................................................... 22

*Digby Adler Group LLC v. Image Rent a Car*,
    79 F. Supp. 3d 1095 (N.D. Cal. 2015) ............................................... 25

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993), *overruled on other grounds*,
    *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ................................. 14

*Garcoa, Inc. v. All Clean Nat. Ltd.*,
    No. 220CV09827VAPSKX, 2021 WL 5994532
    (C.D. Cal. Nov. 5, 2021) ................................................................. 27

*Glow Industries, Inc. v. Lopez*,
    252 F. Supp. 2d 962 (C.D. Cal. 2002) .............................................. 28

*Grasshopper House, LLC v. Clean & Sober Media, LLC*,
    2021 WL 3702243 (9th Cir. 2021) .................................................... 24

*Grasshopper House, LLC v. Clean and Sober Media, LLC*,
    No. 2:18-cv-00923, 2019 WL 12074086 (C.D. Cal. July 1, 2019) ................... 16

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
    No. SACV 17-01613-CJC-DFMx, 2023 WL 2652855
    (C.D. Cal. 2023) ............................................................................. 24

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989) ............................................................ 27

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Lindy Pen Co., v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) (abrogated on other grounds) ........................... 27

*LivePerson, Inc. v. [24]7.at, Inc.*,
   No. 17-cv-01268, 2022 WL 3723117 (N.D. Cal. July 28, 2022)...................... 18

*Marez v. Bassett*,
   No. CV 06–0118, 2011 WL 13213813 (C.D. Cal. Oct. 3, 2011)...................... 18

*McCoy v. Kazi*,
   No. CV0807244SJOCWX, 2010 WL 11465179
   (C.D. Cal. Aug. 27, 2010) ................................................................................. 22

*MGA Ent. v. Harris*,
   No. 2:20-cv-11548 (C.D. Cal. Jan. 13, 2023), Dkt. 502 ................................... 14

*Monster Energy Co. v. Vital Pharma, Inc.*,
   No. EDCV 18-1882, 2022 WL 17218077 (C.D. Cal. Aug. 2, 2022)................. 14

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .......................................................................................... 19

*New Show Studios LLC v. Needle*,
   No. 214CV01250CASMRWX, 2016 WL 5745078
   (C.D. Cal. Sept. 29, 2016) ................................................................................. 30

*Peralta v. Dillard*,
   744 F.3d 1076 (9th Cir. 2014)........................................................................... 29

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003)........................................................................... 27

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   140 S.Ct. 1492 (2020) ................................................................................. 15, 24

*San Miguel Pure Foods v. Ramar Int'l Corp.*,
   625 F. App'x 322 (9th Cir. 2015)...................................................................... 25

*Shepard v. Bass*,
   No. 1:10–cv–00754, 2012 WL 6115675 (E.D. Cal. Dec. 10, 2012)............ 17, 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Shouse v. Ljunggren*,
   792 F.2d 902 (9th Cir. 1986) ................................................................. 29

*Stone Brewin Co., LLC v. MillerCoors LLC*,
   No. 3:18-cv-00331-BEN-MDD, 2022 WL 3021697 (S.D. Cal. 2022) ............. 24

*Strategic Partners, Inc. v. Figs, Inc.*,
   No. 2:19-CV-02286-JWH-KS, 2022 WL 18399950
   (C.D. Cal. Sept. 26, 2022) ...................................................................... 23

*Talent Mobile Development Group, Inc. v. Headios Group*,
   382 F. Supp. 3d 953 (C.D. Cal. 2019) ...................................................... 25

*U.S.A. v. Sahakian*,
   CR 02–938, 2008 WL 11383346 (C.D. Cal. July 28, 2008) .......................... 20

*United States v. Ibrahim*,
   522 F.3d 1003 (9th Cir. 2008) ................................................................ 31

*United States v. Johnson*,
   No. 14-cr-00412, 2015 WL 4747309 (N.D. Cal. Aug. 11, 2015),
   No. 14-CR-00412-TEH, 2015 WL 4999461 (N.D. Cal. Aug. 20, 2015) ..... 17, 30

*United States v. Skillman*,
   922 F.2d 1370 (9th Cir. 1990) ................................................................ 30

*Vasquez v. Leprino Foods Co.*,
   No. 1:17-cv-00796, 2023 WL 2167245 (E.D. Cal. Feb. 22, 2023) .................. 17

*Vaughn v. City of Los Angeles*,
   No. CV 16-03086, 2017 WL 8786868 (C.D. Cal. Oct. 30, 2017) ................... 17

*Watec v. Liu*,
   403 F.3d 645 (9th Cir. 2005) ............................................................... 7, 25

*Whaley v. Belleque*,
   520 F.3d 997 (9th Cir. 2008) ................................................................ 31

*William H. Morris Co. v. Group W, Inc.*,
   66 F.3d 255 (9th Cir. 1995) ................................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   No. 2:19-cv-04618, 2021 WL 4553186 (C.D. Cal. Oct. 5, 2021)........................7

**STATUTES AND RULES**

15 U.S.C. § 1117(a) ...................................................................................................25

Fed. R. Evid. 401 ................................................................................6, 13, 16, 23

Fed. R. Evid. 402 .....................................................................................6, 13, 15

Fed. R. Evid. 403 .............................................................................................*passim*

Fed. R. Evid. 404 .............................................................................................*passim*

L.R. 16-11.2 ..............................................................................................................2

L.R. 32-1 ...................................................................................................................2

Lanham Act................................................................................................................7, 16

## I.     IDENTIFICATION OF THE MATTER IN DISPUTE

Throughout this trademark and false advertising litigation Defendants Jeremy Cahen and Ryder Ripps ("Defendants") have repeatedly attempted to confuse the issues and prejudice Yuga Labs by arguing in their filings and soliciting and proffering purported evidence that Plaintiff Yuga Labs, Inc. ("Yuga Labs") is connected with, endorses, or spreads hidden messages about white supremacy, neo-Nazism, securities investigations, other lawsuits, or fraud. Worse yet, their efforts have not been limited to Yuga Labs; they have also repeatedly attacked Yuga Labs' employees, such as calling them "criminals" and "fraudsters," and making false allegations of harassment and threats (collectively, with the prior sentence, the "Inflammatory Material"). Defendants' motive is obvious: they hope to trick a jury into excusing their intentional infringement by inciting hatred of Yuga Labs' with false allegations.

These items appear in Defendants' pre-trial evidentiary disclosures and should be excluded from trial, including any similar evidence or argument on the same subjects and not yet disclosed by Defendants:

| Defendants' Exhibits[1] |
| --- |
| JTX-211–212; JTX-215; JTX-219; JTX-221; JTX-245; JTX-257; JTX-259; JTX-262–263; JTX-265–269; JTX-279; JTX-295; JTX-302–303; JTX-307; JTX-312; JTX-316; JTX-2005; JTX-2027; JTX-2037; JTX-2040–2044; JTX-2051; JTX-2085; JTX-2093; JTX-2096–2098; JTX-2102–2104; JTX-2123; JTX-2135; JTX-2145–1255; JTX-2160; JTX-2163–2168; JTX-2201–2202; JTX-2210; JTX-2212; JTX-2215–2219; JTX-2225; JTX-2227; JTX-2229; JTX-2306–2314; JTX-2320–2321; JTX-2324; JTX-2326–2330; JTX-2332–2333; JTX-2338; JTX-2441; JTX-2448; JTX-2450–2452; JTX-2455; JTX-2456–2458; JTX-2465; JTX-2468–2469; |

[1] Declaration of Kimberly Culp in support of Yuga Labs motion *in limine* No. 1 ("Culp Decl.") Ex. 1.

FENWICK & WEST LLP
ATTORNEYS AT LAW

JTX-2492–2493; JTX-2497; JTX-2499; JTX-2507; JTX-2521–2523; JTX-2534; JTX-2537; JTX-2539–2540; JTX-2569; JTX-2575–2576; JTX-2591; JTX-2597–2598; JTX-2600; JTX-2622–2628; JTX-2634–2637; JTX-2643–2646; JTX-2651–2652; JTX-2656; JTX-2658; JTX-2660–2662; JTX-2664–2666; JTX-2668; JTX-2670–2671; JTX-2675

| **Defendants' Deposition Designations[2]** | |
|---|---|
| Wylie Aronow | 12:24–25; 13:2–3, 22:24; 14:8–12; 16:23–25;17:1–3; 20:7–22; 26:19–25; 27:1–9, 23–25; 36:22–25; 37:1–3, 21–25; 38:1–7; 39:11–12, 15–16; 40:23–25; 41:1–2; 46:24–25; 47:1–3; 52:7–16, 20–22; 54:2–6, 18–25; 55:10–17; 58:25; 59:1–9, 15–25; 60:1–6; 62:14–17, 20–21; 69:16–25; 70:1–3; 71:14–25; 72:1–25; 73:1–25; 74:1–15; 75:13–25; 77:8–13, 16–25; 78:1–5; 79:4–10; 107 :6–8, 21–25; 108:2–3, 5, 8–23, 25; 109:1–10, 23–25; 110:1–8, 11–18, 21–25; 111:1–5, 8–9, 11–12, 16–22, 24–25; 112:2–3, 7–8, 10–11, 14–15, 17–18, 21–25; 113:1–5, 15–24; 114:12–19; 115:17–22; 116:5–7, 10–21, 23; 118:8–14; 119:7–25; 120:1–4, 14–25; 121:1, 4–25; 122:1, 5–15, 19–22; 123:22–25; 124:1–10, 14–15; 148:1–3, 5–6; 153:21–23, 25; 154:3–15; 209:1–11, 13–14; 210:20–22; 212:16–18; 236:1–8; 237:5–10, 19–22; 254:2–5, 18–22; 265:19–22, 24–25; 266:1–2, 7–8, 12–13, 15–21; 267:1–2; 273:2–4, 8 |

[2] Defendants' deposition designations that Yuga Labs seeks to exclude through this motion in limine are identified in Yuga Labs' portion of the Joint Motion as required by the Scheduling Order. Dkt. 57 at 20 ("The Joint Motion in Limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be inadmissible and/or prejudicial. . . ."). The original deposition transcripts will be lodged with this Court by June 6th, 2023 as required under the Local Rules. L.R. 32-1 ("The original deposition shall be lodged with the Clerk on or before the first day of a trial or at least ten (10) days before an evidentiary hearing unless required to be filed earlier under L.R. 16-11.2.").

| Kerem Atalay | 27:20–23; 33:1–5, 8–10, 13–16, 19–21, 24–25; 34:1–22, 25 35:1–3, 6–8, 10–16; 114:6–12, 15–22; 115:2–6, 10–22; 116:1–12, 17–23; 117:2–12, 16–24; 118:5–22, 23–24; 119:1–3, 6–7, 10–12, 15–18, 21–24; 120:2–6, 10–12, 15–19, 22; 121:3–8, 12–16, 21–25; 122:1, 8–16, 18–23; 123:1–9, 12–15, 18–21, 24–25; 124:1–10, 14–15, 19–22, 25; 125:1–7, 10–15, 19–25; 126:1–22; 127:2–7, 10–22, 25; 128:1–3, 6–11, 16–25; 129:1–8, 11–16, 19–23; 130:1–9, 12–18; 131:5–14, 17–25; 132:1, 4–13, 15–23; 133:1–2, 4–8, 11; 136:24–25; 137:1–4, 11–19, 24–25; 138:1–4, 6–21; 140:13–17, 21–24; 141:3–9, 12–14, 17–25; 142:4–12; 145:10–13, 16–25; 146:1–6, 8–15, 17, 24–25; 147:13–20, 24–25 148:1, 4–5, 9–12, 18–25; 149:1–8, 10–11; 154:15–25; 155:1–19, 22–25; 156:1–4; 166:13–14, 17–21, 24–25; 167:1–4, 7–11, 16–23; 168:2–6, 10–17, 18–25; 169:1–6, 9–16, 19–25; 170:1–3, 6–19, 23–25; 171:1–19, 23–25; 172:1–3, 5–13, 15–21, 25; 173:1–3; 6–8 |
|---|---|
| Patrick Ehrlund | 34:1, 5–7, 11–22, 25; 35:1–4 |
| Thomas Lehman | 47:20–25; 48:1–25; 49:1–22; 50:1–22; 52:1–25; 53:1–25; 54:1–25; 55:1–25 56:1–24; 57:15–25; 58:1–25; 59:1–25; 60:1–24; 90:1–24 98:9–25; 99:1–25; 100:1–17 |
| Nicole Muniz | 25:14–25; 26:1–12; 31:15–18, 20–25; 32:1–11; 39:25; 40:1–4, 13–15, 17; 41:6–9, 12–13; 44:8–10, 13–18; 48:21–23; 49:16–18; 51:20–25; 52:1–8, 10–16; 69:24–25; 70:2–12, 14; 76:7–25; 77:1–2; 78:21–25; 81:7–15, 17–20; 82:2–6; 83:2–3, 8–19; 84:1–11, 15–18; 85:1–2, 12–14; 91:2–4; 6–11; 14–15; 182:6–10; 183:10–11, 23–25; 184:1–5, 8; 203:5–13, 22–24; 207:25; 208:1, 6–7, 15–18, 21–23; 209:1–6, 7–13, 17–25; 210:1–9, 12– |

| | |
|---|---|
| | 25; 211:1–4, 6–8, 10–19; 212:25; 213:1–6, 23–25; 214:1; 214:22–25; 215:1–17; 227:19, 23–25; 228:1 |
| Guy Oseary | 12:3–6; 59:22–25; 60:1–9; 61:10–15; 62:22–23; 63:2–7; 65:13–17; 68:19–23; 69:1; 70:16–18; 70:23–25; 71:1–3; 72:9, 12; 172:11–13; 176:3–7; 200:22–5; 201:1–7; 202:4–6; 217:11–12 |
| Greg Solano | 30:10–12, 21–22, 25; 32:23, 25; 33:1–6; 45:11, 14–18, 21–22; 46:3–4; 47:18–19, 22–25; 48:19–20, 23–25; 62:71; 72:19–22;73:21–22, 25; 131:12–13, 16–17, 22–23; 132:1–5, 8–10; 134:2–3, 6–7, 19–21; 137:16–18; 138:4–5, 8–10; 147:17–18, 21–25; 184:19–24; 185:1; 206:17–20, 23–25; 207:1–2; 208:8–13, 22–23; 209:7–10; 212:1, 4–6, 8–16, 19–20, 23–25; 213:1–4, 23–25; 214:1–3, 6–7 |
| **Defendants' Witness Disclosures**[3] | |
| Ryder Ripps | "He will testify concerning the origin and intent behind the RR/BAYC Project (including RR/BAYC NFTs)"; "the intent behind representations made in connection with the RR/BAYC Project (including representations concerning RR/BAYC NFTs)"; and "Mr. Ripps's good faith in connection with the RR/BAYC Project (including RR/BAYC NFTs)." |
| Jeremy Cahen | "He will testify concerning the intent behind the RR/BAYC Project (including RR/BAYC NFTs)"; "the intent behind representations made in connection with the RR/BAYC Project (including representations concerning RR/BAYC NFTs)"; and "Mr. Cahen's good faith in connection with the RR/BAYC Project (including RR/BAYC NFTs)." |

[3] Culp Decl. Ex. 3.

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Ryan Hickman | "He will testify concerning the intent behind the RR/BAYC Project (including RR/BAYC NFTs)"; "the intent behind representations made in connection with the RR/BAYC Project (including representations concerning RR/BAYC NFTs)"; and "Mr. Ripps's and Mr. Cahen's good faith in connection with the RR/BAYC Project (including RR/BAYC NFTs)." |
|---|---|
| Thomas Lehman | "He will testify concerning the intent behind the RR/BAYC Project (including RR/BAYC NFTs)"; "the intent behind representations made in connection with the RR/BAYC Project (including representations concerning RR/BAYC NFTs)"; and "Mr. Ripps's and Mr. Cahen's good faith in connection with the RR/BAYC Project (including RR/BAYC NFTs)." |
| Damon Dash | "He will testify concerning his understanding of the intent behind the RR/BAYC Project (including RR/BAYC NFTs) as a consumer in the industry." |

Although this Court has repeatedly held that the Inflammatory Material is not relevant to Yuga Labs' trademark and false advertising claims, during the Parties' meet and confer on May 9, Defendants indicated that they intend to introduce the Inflammatory Material at trial notwithstanding Yuga Labs' well-founded objections. Indeed, they explicitly stated that, despite this Court's rulings, they would question Yuga Labs' witnesses regarding this Inflammatory Material as well as try to introduce testimony or evidence through their own witnesses.

Defendants' incredulousness has made this motion necessary. Regardless of their creative packaging, the Inflammatory Material has always been, and remains, irrelevant to this case, cannot be offered as character or propensity evidence, and would be substantially more prejudicial to Yuga Labs than probative if admitted. Yuga Labs respectfully requests an order to preclude Defendants from arguing or

FENWICK & WEST LLP
ATTORNEYS AT LAW

offering, or seeking to elicit, testimonial or documentary evidence relating to the Inflammatory Material, including but not limited to those items already disclosed by Defendants on this issue, pursuant to the Federal Rules of Evidence 401, 402, 403, and 404.

## II.   YUGA LABS' MEMORANDUM OF POINTS AND AUTHORITIES

### A.   INTRODUCTION

This Court has already found that Defendants intentionally infringed on Yuga Labs' trademarks.  And yet, Defendants continue their attempts to prejudice Yuga Labs and distract from the basic facts of their infringement with Inflammatory Material.

Defendants first sought to introduce the Inflammatory Material under the guise of a *Rogers* defense.  But this Court rejected this approach.  In denying Defendants' anti-SLAPP Motion to Strike ("Motion to Strike"), this Court held that Yuga Labs' claims were only about Defendants use of Yuga Labs' marks and not about Defendants' claimed speech.  Dkt. 62 at 11.

Then Defendants sought to waste this Court's time and Yuga Labs' resources by introducing the Inflammatory Material through the "backdoor of a counterclaim." Dkt. 87 at 2.  But this Court again rejected these tactics.

Defendants even brought, and withdrew, a frivolous counterclaim for "no defamation" asking this Court to validate their Inflammatory Material which is laced with conspiracy theories.  Dkt. 156 at 11 ("Counterclaimants failed to provide a good-faith basis for that argument or explain why they waited until after Yuga incurred expenses in filing its Special Motion to Strike before withdrawing that claim.").

Next, in their unsuccessful defense to Yuga Labs' motion for summary judgment, Defendants relied heavily upon Inflammatory Material.  And this Court again rejected the relevance of Inflammatory Material to this case.  In granting Yuga Labs' motion for summary judgment on affirmative defenses raised by Defendants, this Court held that "Defendants' sale of what is admittedly a collection of NFTs that

point to the same online digital images as the BAYC collection is the only conduct at issue in this action" (Order on Summary Judgment (Dkt. 225) ("Order") at 16)— not their purported efforts to identify "alleged use of racist, neo-Nazi, and alt-right messages" in Yuga Labs' NFTs (*Id.* at 9).

Finally, despite this Court's rulings, Defendants repeatedly—and improperly—sought to intertwine these irrelevant issues with the merits of the case throughout discovery. This has been a concerted effort by Defendants, enabled by counsel, to obfuscate the core issues in this case and prejudice and harass Yuga Labs. In depositions and requests for admissions, Defendants frequently hassled several of Yuga Labs employees, partners, and founders with the same irrelevant questions relating to Inflammatory Materials, including, but not limited to supposed neo-Nazi dog whistles and websites such as 4chan that have no bearing on the central issues of this case.[4]  And Defendants have not stopped at calling Yuga Labs and its founders Nazis; they have also commented repeatedly on one of Yuga Labs' co-founder's ongoing health issues, and they have accused Yuga Labs' counsel of supporting pedophilia and being criminals.[5]

Now, at trial, Defendants once more seek to introduce the same Inflammatory Material, where the only remaining issues are damages and false advertising. This Court should again reject Defendants' attempt to infect the trial record with irrelevant

[4] Defendants and their counsel have unnecessarily multiplied the litigation by pursuing conspiracy theories this Court has repeatedly rejected. Yuga Labs contends that their conduct throughout the litigation is but one reason supporting a finding by this Court that this is an "exceptional" case. The issue of whether this case is exceptional is one that will be decided by this Court, not a jury, after trial. This is proper because the determination of whether a case is exceptional under the Lanham Act is "a question of law for the district court, not the jury" that should be made by examining "the totality of the circumstances." *Y.Y.G.M. SA v. Redbubble, Inc.*, No. 2:19-cv-04618, 2021 WL 4553186, at *3 (C.D. Cal. Oct. 5, 2021) (quoting *Watec v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005)).

[5] During the parties' meet and confer regarding this motion *in limine*, the Defendants wisely agreed to drop their attacks about the health of Yuga Labs' co-founder, and they agreed to end their bad faith claims that Yuga Labs or its counsel support pedophilia or that Yuga Labs' counsel are criminals. Defendants maintain their stance, however, on raising the Inflammatory Material to the jury.

FENWICK & WEST LLP
ATTORNEYS AT LAW

and prejudicial Inflammatory Material.  The Inflammatory Material is not relevant to Yuga Labs' claims in this case, nor is it relevant to any surviving defense that Defendants may still pursue.  This Court need only continue to enforce its prior orders against the Defendants to make such a finding.   And given the Inflammatory Material's lack of probative value, the clear risk of extraordinary prejudice to Yuga Labs does not merely substantially outweigh any probative value, it completely eclipses it.   There is no doubt that hours of testimony and argument about circumstantial, and unfounded, allegations of racism, neo-Nazism, and any of the other heinous accusations that Defendants have lodged against Yuga Labs and its employees would bias the jury and waste significant time.  This is not a bug in the defense—it is a design by the Defendants to distract the jury and prejudice Yuga Labs.

Additionally, Defendants are estopped from making their intended argument, that their purported motives prior to creating the RR/BAYC collection are now relevant.  This Court previously accepted Defendants' argument that their infringing activity commenced on May 14, 2022, and denied Yuga Labs' motion to compel because, as Defendants argued, communications before that date *were not relevant*. Dkt. 145 at 2.  Having successfully argued to Judge McDermott that their own beliefs and motivations before May 14, 2022 were not relevant to the issues in dispute, they are estopped from arguing they are now relevant.  Defendants cannot now reverse course when it suits them and introduce the Inflammatory Material that they already have argued is irrelevant.

Yuga Labs asks this Court to end Defendants' games and shut down their attempt to confuse and prejudice the jury about the core issues in this case. Defendants must be barred from arguing or offering, or seeking to elicit, testimonial or documentary evidence relating to the "Inflammatory Material."

FENWICK & WEST LLP
ATTORNEYS AT LAW

## B.   RELEVANT BACKGROUND

### 1.   Defendants' Introduction of the Inflammatory Material into Their Filings Has Been Pervasive

Defendants have intentionally used their filings to galvanize this Court to ignore their infringement.  In support of their Motion to Strike, Defendants attached hundreds of pages of exhibits with Inflammatory Material that lobs baseless allegations of "dog whistles" and "racist messages" Defendants claim are hidden in Yuga Labs' Bored Ape Yacht Club ("BAYC") NFT collection.  Motion to Strike at 3–6; Dkt. 48-3.   None of this "evidence" was relevant to Defendants' claim of protected speech, which did not turn on the volume or truth of their claimed speech. It was only to besmirch and prejudice Yuga Labs.  This Court saw through this ploy and denied Defendants' Motion to Strike.  In its order, this Court correctly observed that Yuga Labs' "claims do not arise out of Defendants' attempts to publicize and criticize [Yuga Labs'] purported use of racist, neo-Nazi, or alt-right dog whistles." Dkt. 62 at 11.  Accordingly, Judge McDermott subsequently found Defendants' discovery requests pertaining to the purported criticisms underpinning Defendants' alleged "conceptual art project" were "moot, irrelevant and not proportionate to the needs of the case in view of the District Court's December 16, 2022 ruling." Dkt. 87 at 1; *see also* Dkt. 144 at 1.

Undeterred, Defendants continued to interject this Inflammatory Material into their filings in hopes this Court would not hold them accountable if the injured party—Yuga Labs—was racist or criminal.  Indeed, despite this Court's ruling on Defendants' Motion to Strike, Defendants relied on Inflammatory Material to oppose summary judgment.   In their Opposition to Yuga Labs' motion for summary judgment, Defendants continued to allege "problematic symbolism" in Yuga Labs' marks, Dkt. 171-2 at 17, and expanded the scope of their conspiracy theories by putting before this Court allegations of unrelated "fraudulent misrepresentation" and securities violations.  Dkt. 171-2 at 19–20.  Indeed, Defendants spent an entire page

FENWICK & WEST LLP
ATTORNEYS AT LAW

arguing that Yuga Labs misrepresented its business relationships with celebrities and that their NFTs were "illegal investment vehicles," notwithstanding that the Defendants were already in possession of evidence to the contrary.  Dkt. 171-2 at 19–20.  Once again, this Court rightfully rejected the irrelevant Inflammatory Material, confirmed the focus of this case, and disposed of Defendants' unclean hands defense, holding that the ugly allegations are not related to Defendants' underlying trademark infringement.  Order at 16.  Defendants' repeated attempts to confuse the issues and paint Yuga Labs in a negative light have been found multiple times to be irrelevant to the merits of any claim or defense.

### 2. Defendants Continued to Introduce Inflammatory Material During Depositions

Even though this Court had already held that this case is only related to Defendants' trademark infringement and their false advertising, Defendants continued to muddle the issues with the Inflammatory Material throughout discovery.[6]

Despite losing their anti-SLAPP motion and having their motion to compel Inflammatory Material denied, Defendants and their counsel leaned into Inflammatory Material during discovery, in particular during depositions.  Their bad faith actions during their own depositions were intended to waste Yuga Labs' time and resources, render it difficult (if not impossible) for Yuga Labs to use Defendants' testimony without risking the obvious prejudicial effect, and increase the likelihood Defendants could introduce Inflammatory Material into the record.

For example, during their depositions, Defendants often launched into lengthy, irrelevant soliloquies about Inflammatory Material.  Defendant Cahen testified in

---

[6] Throughout litigation, Defendants have also telegraphed their testimony on Twitter. For example, Defendant Cahen accused Yuga Labs of "racism, antisemitism, beastiality [sic], and using cartoons to market drugs to young children" and stated that, by representing Yuga Labs, Yuga Labs' counsel supports these atrocious things. Dkt. 149-030 Ex. 45.  Defendants should not be allowed to introduce these Tweets at trial, nor should they be allowed to proffer similar testimony.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  response to a question about whether "BAYC holder" referred to a Bored Ape Yacht

2  Club holder with this answer:

> 3  In the context of this image, yeah, I believe that is correct.

> 4  And I would say we should probably define what "holder" means.  To

> 5  be very specific, because I think it's important since I'm under oath, I

> 6  believe that means those who control wallets which hold racist, anti-

> 7  Semitic, pedophile-themed nonfungible tokens that are correlated to

> 8  that iconography made by Yuga Labs and their partners Fenwick &

> 9  West, OpenSea, Ape Coin and FTX.

10  Culp Decl. Ex. 6 (Cahen Depo Tr.) at 123:9-16.  A proper, and responsive answer,

11  would have been complete with the single word "correct."  But Mr. Cahen saw the

12  deposition as a game by which he could obscure the Defendants' infringement by

13  wasting time on irrelevant issues.  Mr. Cahen deployed this or a similar pre-prepared

14  monologue at least a dozen times throughout his deposition.[7]

15  Mr. Cahen also testified that he had conducted "research about Nazism,

16  pedophilia" implying that these issues have some bearing on Defendants' scam even

17  after this Court already ruled otherwise.  *Id.* at 90:9–17.  As if there was ambiguity

18  as to whether Mr. Cahen was referencing Inflammatory Material, he clarified his

19  position that "Neo-Nazism, racism, [and] pedophilia" were "all perpetuated by Yuga

20  Labs."  *Id.* at 91:25–92:9.  He called Yuga Labs' marks—the very marks that

21  Defendants  stole—"problematic  racist,  anti-Semitic,  pedophile-themed

22  iconography."  *Id.* at 198:2–12.

23  Defendants' counsel similarly pestered Yuga Labs' witnesses with irrelevant

24  questions pertaining to their other outlandish accusations about racism and "dog-

25  whistles" in their own depositions.  They questioned each witness about the

26

27  [7] Defendants publicly Tweeted that they prepared for their depositions with their

28  counsel the day before Cahen's deposition took place.  During Cahen's deposition, Defendants' counsel did not stop these non-responsive monologues.

FENWICK & WEST LLP
ATTORNEYS AT LAW

controversial website 4chan, a message board that has nothing to do with the sale or promotion of NFTs and has no bearing on the issues in this case. *See*, *e.g.*, Culp Decl. Ex. 3 (Aronow Depo. Tr.) at 12:24.   In these depositions, Defendants consistently veered away from the relevant inquiries and instead dedicated much of their time to Inflammatory Material, such as by questioning Yuga Labs' co–founder Greg Solano on the video game franchise The Legend of Zelda in a futile attempt to prove that the name Yuga Labs is somehow a white supremacist dog whistle.   Culp Decl. Ex. 4 (Solano Depo. Tr.) at 46:3–4.   Similarly, and even more inappropriately, counsel for Defendants questioned Mr. Aronow about alternative meanings for the term "Kali Yuga," that are derogative to and directly attack Mr. Aronow's publicly known religious beliefs.   Culp Decl. Ex. 3 (Aronow Depo Tr.) at 37:21–22.   In fact, Defendants' counsel often referenced an article that Mr. Aronow wrote where he specifically discussed his religious beliefs and why Defendants' counsel's position was a hateful twist thereon. *See e.g., id.* at 21:7–8.   These allegations are all without merit, but more importantly, the prejudicial effect this side-show would have on Yuga Labs if made in the presence of the jury severely outweighs the null probative value of the Inflammatory Material.

Defendants also improperly used Yuga Labs' and their own depositions as a bully pulpit to spread their irrelevant conspiracy theories about alleged fraudulent conduct by Yuga Labs.   In his own deposition, Defendant Ripps often proffered Inflammatory Material, including numerous baseless accusations of fraud against Yuga Labs and its partners, including counsel for Yuga Labs, Fenwick & West. *See*, *e.g.*, Culp Decl. Ex. 7 (Ripps Depo. Tr.) at 22:22–23:6.   Mr. Cahen made similar uses of Inflammatory Material, stating that his research was not just on "Nazism" and "pedophilia," but also encompassed "securities fraud [and] FTX."   Culp Decl. Ex. 6 (Cahen Depo Tr.) at 90:9–17.   The Defendants' tactics further included lines of questioning and accusations related to ApeCoin or the ApeCoin DAO, both topics that are wholly irrelevant to this trademark litigation.   Culp Decl. Ex. 4 (Solano Depo.

Tr.) at 138:4–5 (questioning about understanding of ApeCoin DAO); Culp Decl. Ex. 5 (Muniz Depo. Tr.) at 183:10–11 (questioning about Ms. Muniz's familiarity with ApeCoin DAO).  As this Court confirmed when granting summary judgment on Defendants' unclean hands defense, this Inflammatory Material has no bearing on any claim or defense that the jury will decide.

In sum, during discovery Defendants took advantage of every opportunity to provide testimony on the irrelevant and prejudicial Inflammatory Material and to otherwise attempt to inject the issue into the lawsuit even after this Court had rejected their *Rogers* defense and again after Judge McDermott denied their motion to compel evidence on the issue.

## C.   INFLAMMATORY MATERIAL IS NOT RELEVANT TO THE ISSUES REMAINING FOR TRIAL

The Inflammatory Material is not relevant to any triable issue in this case. "Relevant evidence" is evidence that tends to make the existence of any "fact that is of consequence" to the claims in the action "more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  While Yuga Labs maintains that the Inflammatory Material is false and fantastical, the dispositive point is that it has no bearing on any issue of consequence in this case.  Defendants should not be allowed to inject Inflammatory Material through their latest backdoor arguments.

First, the Inflammatory Material is not relevant to the only issues remaining in this case, namely Yuga Labs' damages resulting from Defendants' infringement and Yuga Labs' claim for false advertising.  This Court has consistently held as much. As discussed above, this Court blocked Defendants' attempts to confuse the issues and bias Yuga Labs with Inflammatory Material in denying Defendants' Motion to Strike, denying Defendants' motions to compel, and granting Yuga Labs' motion for summary judgment.  Nonetheless, hundreds of Defendants' proposed trial exhibits contain Inflammatory Material.  *See* Culp Decl. Ex. 1.  And yet, ***no aspect*** of the

Inflammatory Material is relevant to "Defendants' unauthorized use of the BAYC Marks for commercial purposes." (Dkt. 62 at 11). *See Monster Energy Co. v. Vital Pharma, Inc.*, No. EDCV 18-1882, 2022 WL 17218077, at *18 (C.D. Cal. Aug. 2, 2022) (holding plaintiff's alleged smear campaign irrelevant to defendant's acts of unfair competition). Similarly, the name Yuga Labs is not one of the marks at issue in this case, so Defendants' wild theories about the origins of the Yuga Labs name are again irrelevant and risk confusing the limited issues that will be decided by the jury. Culp Decl. Ex. 4 (Solano Depo. Tr.) at 46:3; *Monster Energy Co*, 2022 WL 17218077, at *18.

Second, Inflammatory Material, including Defendants' alleged criticism or commentary about Yuga Labs, is not relevant to any defense Defendants may assert—to the extent any remain—to these remaining triable issues. This Court has already rejected Defendants' *Rogers* defense, twice, and stated that "the RR/BAYC NFTs do not express an idea or point of view" and this Court's order granting Yuga Labs' motion for summary judgment confirmed that Defendants' infringing activities "contain no artistic expression or critical commentary."[8] Order at 16. Thus, Defendants' Inflammatory Material, including baseless claims about Yuga Labs, its founders, and its associates, are irrelevant, "immaterial," and "impertinent." *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (citations omitted) ("Immaterial" matters are those that have "no essential or important relationship to the claim for relief or defenses being pleaded" and "impertinent" matters are those "that do not pertain, and are not necessary, to the issues in question."); *see also* Culp Decl. Ex. 8 (Order re Motions in Limine, *MGA Ent. v. Harris*, No. 2:20-cv-11548 (C.D. Cal. Jan. 13, 2023), Dkt. 502, excluding "statements regarding cultural

_____

[8] Even before this holding, this Court dismissed the Defendants "no defamation" claim and ruled that Yuga Labs is not pursuing "defamation, slander, or libel" claims in this case. Dkt. 62 at 11.

FENWICK & WEST LLP
ATTORNEYS AT LAW

appropriation" as they "have no bearing on any of the counterclaims, and . . . are accordingly immaterial and impertinent."). Further, this Court granted summary judgment in favor of Yuga Labs on Defendants' unclean hands defense because Defendants' unsupported allegations of fraud or securities violations do not "relate to the trademark dispute between the parties." Order at 16. These allegations are not relevant and are therefore inadmissible. Fed. R. Evid. 402.

Third, while Yuga Labs does not concede that Defendants' intent is relevant to the issue of damages, to the extent that Defendants seek to introduce the Inflammatory Material to prove their intent, this matter is also well settled. In granting Yuga Labs' motion for summary judgment, this Court held that Defendants intended to deceive consumers:

> "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." . . . In this case, Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks. Because Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks, and in the absence of contrary evidence, the Court concludes that Defendants used the BAYC marks in an effort to confuse consumers. . . . In addition, the Court concludes that Defendants intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding. For example, Defendants listed the RR/BAYC NFTs on rrbayc.com under the very same Ape ID number associated with BAYC NFTs, despite having their very own unique and different ID numbers.

Order at 12 (citations omitted). And so, while Defendants stated during the May 9 meet and confer that they will argue that in some circumstances a trademark defendant's intent may be relevant to damages, this Court has *already* determined that Defendants acted here with the intent to deceive consumers. *Romag Fasteners,*

1   *Inc. v. Fossil, Inc.*, 140 S.Ct. 1492, 1497 (2020).  Therefore, Defendants' intent does

2   not speak to any "fact that is of consequence to the determination of the action"

3   because the issue of whether Defendants intended to deceive consumers has ***already***

4   been litigated and this Court found that they did.  Fed. R. Evid. 401.  Defendants do

5   not get to re-litigate the issue of their intent at trial.

6          The Inflammatory Material is likewise not relevant to the calculation of

7   damages.  Defendants have not and cannot show that any of the harm identified by

8   Yuga Labs' experts was attributable to Defendants' dissemination of the

9   Inflammatory Material.  And, they have no expert of their own on the matter of

10  damages through whom they might offer such evidence.

11         Finally, the Inflammatory Material is just as irrelevant to Yuga Labs' false

12  advertising claim, which seeks to prove that Defendants lied when they Tweeted that,

13  among other things, purchasers of RR/BAYC NFTs would receive all "commercial"

14  rights to develop their own merchandise, that Ape Market and RR/BAYC were

15  registered trademarks, that RR/BAYC NFTs were created for Live9000 LLC, and

16  that Defendant Ripps would donate his profits to charity.  These false commercial

17  statements have nothing to do with the Inflammatory Material.  And intent is not an

18  element of a false advertising claim, thus the Inflammatory Material is irrelevant to

19  show Defendants' purported intent in disseminating these false commercial

20  statements.  *Grasshopper House, LLC v. Clean and Sober Media, LLC*, No. 2:18-cv-

21  00923, 2019 WL 12074086, at *10 (C.D. Cal. July 1, 2019) ("Subjective intent

22  behind advertising material is not an element of a false advertising claim under the

23  Lanham Act.").

24         When laid bare, Defendants' argument is that the Inflammatory Material can

25  somehow excuse a Lanham Act violation.  Defendants cannot provide any authority

26  to support this unreasonable position because such authority does not exist.  Without

27  any valid, relevant purpose for Defendants to introduce the Inflammatory Material,

28  this Court should order it excluded.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**D.    THE DANGER OF UNFAIR PREJUDICE AND CONFUSION SIGNIFICANTLY OUTWEIGHS THE NON-EXISTENT PROBATIVE VALUE OF THE INFLAMMATORY MATERIAL**

Regardless, this Court should exercise its discretion to bar the introduction of Inflammatory Material under Rule 403.  Rule 403 allows for even relevant evidence, which the Inflammatory Material is not, to be excluded if its probative value is substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Rule 403 is a core protection against unfair prejudice as it disallows the introduction of evidence that has the tendency to "inflame and bias the jury" into a verdict based not on the facts of the case, but on the jury's own personal judgments on the character of the parties.  *Vasquez v. Leprino Foods Co.*, No. 1:17-cv-00796, 2023 WL 2167245, at *8 (E.D. Cal. Feb. 22, 2023).

As explained above, the Inflammatory Material does not have probative value with respect to Defendants' defense or to offset Yuga Labs' damages.  Rather these unproven allegations are "primed to inflame the jury and appeal to prejudice[.]"  *Vaughn v. City of Los Angeles*, No. CV 16-03086, 2017 WL 8786868, at *2 (C.D. Cal. Oct. 30, 2017).  Indeed, this Court has already held that Defendants' infringement was intentional, so the Inflammatory Material that allegedly indicates Defendants' intent is of **no probative value** as it simply purports to prove an **already proven** element.  Order at 12.  Even if this Court found that some minimal probative value is derived from the Inflammatory Material, that value is substantially outweighed by the high risk of unfair prejudice.  *United States v. Johnson*, No. 14-cr-00412, 2015 WL 4747309, at *9 (N.D. Cal. Aug. 11, 2015) (holding introduction of racist text messages of "very low probative value" and presents a "real danger that it will prejudice the jury.").  This is exactly the type of wasteful and prejudicial evidence that Fed. R. Evid. 403 was drafted to curtail.

The Inflammatory Material would immensely prejudice Yuga Labs if admitted.  *Shepard v. Bass*, No. 1:10–cv–00754, 2012 WL 6115675, at *2 (E.D. Cal.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

Dec. 10, 2012) (granting motion in limine to exclude evidence of racist gang of prison officers because irrelevant to claims and would confuse jury as to issues in case). Allegations of racism, dishonesty, or "evil" could have no effect but to subject Yuga Labs to unfair prejudice and cajole the jury into siding with Defendants on a false bias against Yuga Labs rather than on the merits.  *See LivePerson, Inc. v. [24]7.at, Inc.*, No. 17-cv-01268, 2022 WL 3723117 (N.D. Cal. July 28, 2022) (upholding exclusion of evidence of alleged racism in trade secrets case because danger of unfair bias substantially outweighed any probative value).  Indeed, the introduction of similar materials was found to be so prejudicial as to justify a mistrial.  Culp Decl. Ex. 9 (Memorandum in Support of Oral Motion for Mistrial, *MGA Ent.*, Dkt. 565, arguing "[t]he prejudicial nature of this testimony accusing MGA of racist cultural appropriation cannot be understated.  There is no unringing this bell, no way for MGA to counter the improper testimony, and no instruction this Court can give to cure this problem."); Culp Decl. Ex. 10 (Minutes of Order Granting Motion for Mistrial, *MGA Ent.*, Dkt. 569).

Lastly, allowing the admission of the Inflammatory Material would be a massive waste of time.  As noted above, Rule 403 can prevent the admission of evidence that would waste time without providing some counterbalancing probative value.  Fed. R. Evid. 403.  As this Court has ruled no less than three times, this is not a defamation trial and Defendants' false allegations of racism and fraud are irrelevant collateral matters not properly before this Court.  Forcing Yuga Labs to counter the prejudicial impact of the Inflammatory Material, or demanding the jury conduct a "mini-trial" to settle irrelevant factual issues about Defendants' conspiracy theories, would waste precious time and distract the jury from the limited issues they are left to decide.  *Marez v. Bassett*, No. CV 06–0118, 2011 WL 13213813, at *3 (C.D. Cal. Oct. 3, 2011) ("Even if such evidence were relevant, this [c]ourt would exclude it under Rule 403 because it risks unfair prejudice and delay or waste of time. . . . In addition, introducing evidence of those other trials is likely to give rise to time-

consuming tangents about the merits of those trials.").  This is especially true here, where the trial is only scheduled to last three days and Defendants' infringement has already been established and been found to be intentional.  Thus, there is no probative value in asking the jury to inquire again into Defendants' intent or to examine the Defendants' Inflammatory Material, such as Defendants' theories around how Yuga Labs was named and whether Hinduism somehow espouses white supremacy.  Order at 12.  The exclusion of the Inflammatory Material is thus paramount to keeping the jury on task and focused on the relevant issues during this three-day trial.

In sum, not only is Defendants' Inflammatory Material irrelevant to any pertinent issues in this case, if introduced it would also cause unfair prejudice, waste the jury's time, and confuse the issues.  *See Calloway v. Hayward*, No. 08-CV-01896, 2017 WL 363000, at *4 (E.D. Cal. Jan. 24, 2017) (precluding introduction of evidence of racial discrimination because probative value of evidence substantially outweighed by danger of prejudice).  To avoid this unfair prejudice to Yuga Labs, the Inflammatory Material should be excluded.

### E.   DEFENDANTS ARE ESTOPPED FROM INTRODUCING EVIDENCE OF THEIR INTENT PRE-DATING THE MAY 14, 2022 MINT OF THE RR/BAYC COLLECTION

Regardless of the foregoing, Defendants are estopped from introducing evidence of their purported motives predating the RR/BAYC mint.  Defendants have already conceded and convinced Judge McDermott that documents from before May 14, 2022 are not relevant to this action.  Dkt. 145 at 2.  They cannot now alter their position on relevance for a tactical advantage and present the jury with documents or testimony about their purported motive, which they now contend relates to facts predating the creation of the RR/BAYC NFTs.  *See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (a party is estopped from asserting an inconsistent position if that party "succeeded in persuading a court to accept that party's earlier position" and "would derive an unfair advantage or impose an unfair detriment on the opposing party.").

It would certainly prejudice Yuga Labs if Defendants were allowed to introduce evidence of their alleged intent through testimony or Tweets from before May 14, 2022, as they have said that they intend to do, when Yuga Labs was not afforded discovery into the context or communications surrounding those Tweets or that claimed intent. *See Cox v. Continental Cas. Co.*, 703 Fed. App'x. 491, 495 (9th Cir. 2017) (holding defendant's fraud defense judicially estopped where plaintiff had no opportunity for discovery because defendant argued documents relating to fraud were irrelevant and non-discoverable). The prejudice would be compounded by the fact that Defendants intend to admit evidence of their alleged intent through Inflammatory Material. Defendants should thus be estopped from introducing evidence from before May 14, 2022.

### F.   THE ALLEGED EVIDENCE IS CHARACTER OR PROPENSITY EVIDENCE FOR WHICH NO PROPER PURPOSE EXISTS

To the extent Defendants argue that the Inflammatory Material is relevant character evidence about Yuga Labs or its witnesses, any alleged prior acts put forth to show racial animus are excluded by Fed. R. Evid. 404(b). *U.S.A. v. Sahakian*, CR 02–938, 2008 WL 11383346, at *8 (C.D. Cal. July 28, 2008) (evidence of purported racially charged comments inadmissible to prove "general racial bias."). The crux of this exclusion must equally apply to similar animi, such as antisemitism, and pedophilia, which the Defendants have for self-interested purposes, falsely accused Yuga Labs, its witnesses, and its counsel of engaging in or supporting.

Defendants should not be allowed to present to the jury Inflammatory Material having this effect. For instance, a picture of Yuga Labs' logo side-by-side with an emblem purportedly associated with Nazis could have no other effect than to introduce outrage in the jury box and coax the jury into a verdict based on a preconceived animus rather than evidence. The same is true for alleging that the original pseudonyms used by Yuga Labs founders are hateful references. And even if Defendants do not argue that is the purpose for seeking to introduce such evidence

FENWICK & WEST LLP
ATTORNEYS AT LAW

or argument, as demonstrated above it would still have the same effect and be similarly improper.  This is precisely why purported and false character evidence such as this should be excluded.  Fed. R. Evid. 404(b)

### G.    CONCLUSION

This case is only about the extent of damage caused by Defendants' established, intentional trademark infringement and Defendants' false commercial statements to consumers.  The Inflammatory Material concerning Yuga Labs, its founders, or its counsel has no bearing on these issues, or any uses Defendants proposed during the May 9th meet and confer.  Defendants should not be permitted to distract and prejudice the jury through these irrelevant and unsubstantiated claims.

Accordingly, Yuga Labs respectfully requests that this Court preclude Defendants from introducing or attempting to use Inflammatory Material as evidence or argument, including but not limited to, false accusations that Yuga Labs is connected with, endorses, or spreads hidden messages about white supremacy, neo-Nazism, securities investigations, other lawsuits, or any other unsubstantiated fraud.

## III.   DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
### A.    INTRODUCTION

All five of Plaintiff Yuga Labs's ("Yuga") motions *in limine* share a common theme: Yuga seeks to present the false narrative that Defendants' infringement was solely motivated by financial gain, and solely responsible for Defendants' losses.  The truth is that the harms for which Yuga seeks damages are attributable to factors other than infringement, confusion, or false advertising: they are attributable to (1) backlash against Yuga when it was called out (by Defendants and others) for using racist and other hateful imagery in connection with its BAYC brand, and (2) Yuga's own decision to freely allow widespread use of its trademarks by others.  The truth is that the Defendants genuinely believed in their artistic criticisms of Yuga's content as racist and alt-right-inspired, and that intent is directly relevant to the availability

of disgorgement damages and any claim to enhanced damages as a result of willful infringement.  Thus, contrary to Yuga's suggestions, Defendants do not intend to introduce this evidence contradicting Yuga's preferred narrative for any improper purpose; rather, Defendants must be permitted to introduce evidence that Yuga's damages were the result of factors other than Defendants' infringement, and that the Defendants' intent was to criticize Yuga, not to cause confusion.

Yuga's first motion *in limine*, to exclude what Yuga calls "Inflammatory Material," fails for several reasons.  As an initial matter, the evidence that Yuga seeks to exclude is described in a way that is overbroad and vague.  Specifically, Yuga states that it seeks the exclusion of "Inflammatory Material" that it defines as any "evidence that Plaintiff Yuga Labs, Inc. … is connected with, endorses, or spreads hidden messages about white supremacy, neo-Nazism, securities investigations, other lawsuits, or fraud" or any evidence that "Yuga Labs' employees" are called "criminals" and "fraudsters," and have had "allegations of harassment and threats…" Br. 1.  The specific contours of what Yuga seeks to exclude are unclear and make even formulating a response to this request challenging.  The Court should thus deny this motion outright "for being vague and overbroad," and address specific objections to particular "inflammatory" evidence on a case-by-case basis at trial.  *McCoy v. Kazi*, No. CV0807244SJOCWX, 2010 WL 11465179, at *12 (C.D. Cal. Aug. 27, 2010).  *See also Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 215CV02812ODWPLA, 2017 WL 5634993, at *1 (C.D. Cal. Oct. 6, 2017) (explaining that "motions in limine that exclude broad categories of evidence are disfavored, and such issues are better dealt with during trial as the admissibility of evidence arises.") (internal quotation marks and citations omitted).

But even if the Court were to consider Yuga's request at the motion *in limine* stage, it should be denied as to each actually disputed category of evidence.  As outlined more fully below, each of the categories of the evidence that Yuga seeks to exclude is relevant to several outstanding issues in the case, and its probative value

FENWICK & WEST LLP
ATTORNEYS AT LAW

outweighs any unfair prejudice to Yuga.  Further, contrary to Yuga's misleading arguments, Defendants are not estopped from presenting the evidence they intend to introduce, nor do Defendants intend to introduce any such evidence as character evidence.

## B. EVIDENCE OF HATEFUL IMAGERY ASSOCIATED WITH THE BORED APE YACHT CLUB IS RELEVANT TO INTENT AND DAMAGES

The evidence Yuga seeks to exclude is relevant to several issues at trial, and Yuga's arguments to the contrary are misleading.  In order to be relevant, evidence only needs to have "any tendency to make a fact more or less probable than it would be without the evidence" and that said "fact is of consequence in determining the action." Fed. R. Evid. 401.  This low bar is met for the evidence Yuga seeks to exclude as it intends to prove both Defendants' intent and motivation in creating the RR/BAYC project and shows other likely causes for the harm for which Yuga seeks damages.  *See Strategic Partners, Inc. v. Figs, Inc*., No. 2:19-CV-02286-JWH-KS, 2022 WL 18399950, at *5 (C.D. Cal. Sept. 26, 2022) (denying a motion to exclude evidence of prior lawsuits finding that "[t]rial courts may allow evidence of a party's prior lawsuits when they are not intended to show litigiousness" and that the lawsuits were relevant to the opposing party's defenses).

## 1. THE EVIDENCE YUGA SEEKS TO EXCLUDE IS RELEVANT TO DEFENDANTS' MOTIVATION AND INTENT

First, the evidence that Yuga seeks to exclude helps establish what the Defendants intent and motivations were when creating the RR/BAYC Project at issue in this case.  For example, Yuga seeks to exclude a print out of the actual website that sold the RR/BAYC NFTs, because it includes a statement explaining Defendants' goals for the project (JTX-316), a news article because it addresses the origins of the name "Yuga Labs" (JTX-267), a tweet by Mr. Ripps that includes the disclaimer language for the RR/BAYC NFTs that states the project is a protest (JTX-

Fenwick & West LLP
Attorneys at Law

2660), and the actual logo used for the RR/BAYC NFTs (JTX-211) that the Court found to infringe.  These are just a small subset of the materials that Yuga seeks to exclude, each element of which provides context and explains the nature and intent behind Defendants' RR/BAYC Project.

Defendants' intent is relevant to several key issues outstanding in the case. First, Defendants' intent is essential for determining whether disgorgement is an available remedy here.  *See Romag Fasteners, Inc v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020) ("Without question, a defendant's state of mind may have a bearing on what relief a plaintiff should receive. An innocent trademark violator often stands in very different shoes than an intentional one. . . . Given these traditional principles, we do not doubt that a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate."); s*ee also Grasshopper House, LLC v. Clean & Sober Media, LLC,* 2021 WL 3702243 at *3 (9th Cir. 2021) ("On remand, the district court should consider Defendants' mental state-whatever that may be-when determining what award of profits is appropriate."); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. SACV 17-01613-CJC-DFMx, 2023 WL 2652855 at *4-5 (C.D. Cal. 2023) (discussing how mental state is a necessary component for the court to consider for damages); *Stone Brewin Co., LLC v. MillerCoors LLC*, No. 3:18-cv-00331-BEN-MDD, 2022 WL 3021697 at *1-2 (S.D. Cal. 2022) (holding that a Defendants' mental state is directly relevant to disgorgement of profits damages). Excluding evidence that tends to prove Defendants' "mental state" would preclude a finding on the availability of disgorgement.

Additionally, Defendants' intent is relevant to the second element of Yuga's false advertising claim.  The second element of false advertising allows for a presumption that consumers are deceived only if Defendants' ***intentionally*** misled consumers. *William H. Morris Co. v. Group W, Inc*., 66 F.3d 255, 258 (9th Cir. 1995) ("If [a person] intentionally misled consumers, we would presume consumers were

Fenwick & West LLP
Attorneys at Law

in fact deceived ….").  Yuga has no actual evidence of consumer confusion, and thus its false advertising claim is necessarily based on Defendants' intent.  Rebutting Yuga's claims about Defendants' intent is thus central to Defendants' defense.

Third, intent is a mandatory factor in assessing whether to award attorneys' fees, which Yuga seeks pursuant to 15 U.S.C. § 1117(a).  Under that statutory scheme, the Court "must consider several nonexclusive factors, such as (1) frivolousness; (2) *motivation*; (3) objective unreasonableness (both in the factual and in the legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence."  *Talent Mobile Development Group, Inc. v. Headios Group*, 382 F. Supp. 3d 953, 959 (C.D. Cal. 2019) (emphasis added).  Even commonplace intentional infringement "does not necessarily equate with the malicious, fraudulent, deliberate or willful conduct" required for finding a case exceptional. *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005).  Accordingly, evidence of Defendants' intent and motivations for creating the RR/BAYC Project are relevant for Yuga's exceptional case claim.

Fourth, whether Defendants' trademark infringement was willful is an outstanding issue in this case as it relates to Yuga's exceptional case claim. Defendants' intent is plainly relevant in assessing willfulness. *See San Miguel Pure Foods v. Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015) (holding that infringement is not willful if Defendants believed use of marks was not barred by law).

Finally, Defendants' intent is relevant to determining the amount of statutory damages to be awarded in connection with Yuga's cybersquatting claim here.  The cybersquatting statute states damages should be awarded "as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a).  *See also, Digby Adler Group LLC v. Image Rent a Car*, 79 F. Supp. 3d 1095, 1108 (N.D. Cal. 2015) (finding that "[i]n determining appropriate statutory damages for cybersquatting, courts generally consider a number of factors ... including the

FENWICK & WEST LLP
ATTORNEYS AT LAW

egregiousness or willfulness of the defendant's cybersquatting…") (internal quotations and citations omitted).  Evidence of Defendants' intent is, therefore, relevant toward determining Cybersquatting damages and should be admitted for that purpose.

Thus, the evidence Yuga seeks to exclude that tends to prove Defendants' intent and motivations for creating the project are clearly relevant to numerous issues outstanding in this case and Yuga's assertion that this evidence is irrelevant is baseless.

### 2.    THE EVIDENCE THAT YUGA SEEKS TO EXCLUDE EXPLAINS THE HARM YUGA CLAIMS TO HAVE SUFFERED AND IS THUS ADMISSIBLE TO SHOW LIMITED DAMAGES

The evidence that Yuga seeks to exclude is also relevant to show alternative causes for the harm Yuga claims to have suffered.  Yuga seeks to exclude any evidence that they are "connected" with securities investigations, other lawsuits, fraud, or neo-Nazism. Br. 1.  (It remains unclear from Yuga's brief whether they are conceding that the allegations of racist content found to be "problematic" in Yuga's BAYC collection are relevant and admissible; Yuga makes mention of those allegations at times throughout its brief, but does not expressly include racism in its definition of "Inflammatory Material.")

Evidence that the BAYC brand at issue was called out for association with hateful imagery and unlawful conduct tends to show that there are factors ***other than Defendants' use of Yuga's marks and alleged false advertising*** that account for the harm to the BAYC brand that Yuga asserts.  Alternative causes for damage are thus relevant to proving damages for trademark infringement as well as both damages and liability for false advertising.

To prove false advertising, Yuga must show that it has been "injured as the result of the [false advertising] either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying

FENWICK & WEST LLP
ATTORNEYS AT LAW

public." *Rice v. Fox Broad. Co., 330 F.3d 1170, 1180 (9th Cir. 2003)*; *see also Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 210 (9th Cir. 1989)* ("In a suit for damages under section 43(a), … actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case."). Yuga thus must prove that it has been injured by Defendants' alleged actions. Evidence that Yuga's claimed losses were caused by other factors—including damage to its reputation as the result of the class action brought against it by its consumers, investigations for securities fraud in connection with Yuga's NFTs by the Securities and Exchange Commission, or consumers electing to stop supporting Yuga's products because of the BAYC collection's problematic imagery—is relevant to undermining Yuga's claim that all of its harms were caused by false advertising.

Likewise, the evidence of other factors causing Yuga's asserted harm is relevant for actual damages both as to Yuga's trademark claim and as to its false advertising claim. Yuga must prove "both the fact and the amount of damage," "measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned ***but for the infringement***." *Lindy Pen Co., v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993)* (abrogated on other grounds) (emphasis added). When determining actual damages and lost profits, the jury must consider whether there are other sources that caused the damages. *See Garcoa, Inc. v. All Clean Nat. Ltd., No. 220CV09827VAPSKX, 2021 WL 5994532, at *11 (C.D. Cal. Nov. 5, 2021)* (granting a motion for summary judgment to Defendants for monetary recovery as they presented "evidence showing other factors contributed to the sales drop…."); *see also* Comment to Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.27 ("Defendant may argue that plaintiff's loss in sales may be caused by other market factors and not as a result of defendant's infringement. If defendant makes such an argument, an appropriate instruction should be drafted."). Here, there is an obvious reason why Yuga saw a decline in the value of BAYC NFTs after being called out for problematic racist and neo-Nazi imagery in their collection

and after allegations of securities fraud became public: customers were bothered by those allegations themselves.  These alternative explanations for the harm Yuga is alleging is plainly an "other market factor[]" on which Defendants are entitled to rely to rebut Yuga's claim that all of their harms are the result of consumer confusion and/or false advertising by Defendants.  The evidence that Yuga seeks to exclude is thus directly relevant to damages and should not be excluded.

### 3.  THE COURT HAS NOT ALREADY DECIDED THE ISSUES HERE

Yuga misleading argues that Defendants' intent is irrelevant because the Court has, in Yuga's view, already decided that the Defendants' acted with the intent to deceive consumers.  *See supra* at 15-16.  This is not true.  Rather, the Court held that "Defendants knowingly and intentionally ***used***" Yuga's BAYC marks, and then concluded that "in the absence of any contrary evidence" at the summary judgment stage, the Court would infer intent to confuse, citing precedent discussing circumstances in which "inferring an intent" in the absence of contradictory evidence is permissible.  *See* Dkt. 225 at 12 (emphasis added) (citing *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 1002 (C.D. Cal. 2002)).  The fact that Defendants knowingly and intentionally ***used*** Yuga's BAYC marks does not answer the relevant question for damages, and the exceptional case doctrine, which is what was Defendants' ***mental state*** when they used Yuga's marks.

Additionally, the Court has never addressed intent at all in connection with Yuga's false advertising claim, where it is again relevant to liability and damages for that separate cause of action (and separate alleged acts by the Defendants).  Because the Defendants' subjective intent issue has never been resolved for the issues of damages, exceptional case, or false advertising, the law of the case doctrine does not preclude Defendants from introducing evidence addressing it.

More fundamentally, even if the Court ***had*** made the broad determination on subjective intent that Yuga claims, law of the case doctrine does not apply in the

manner that Yuga suggests, and Yuga's case citations are inapposite.  The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**."  [Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986)](#) (emphasis added); *see also* [Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014)](#) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case.  Given the nature of such motions, it could not be otherwise.").  Yuga points to several pretrial motions, most notably the summary judgment ruling, to support its law of the case argument.  But under the "law of the case" doctrine, factual decisions made by the Court in those pretrial rulings are not binding on other issues—including here on the matter of intent as applied to damages, false advertising, and willful infringement/exceptional case.

Finally, even if the Court were to find that Defendants' intent was already conclusively decided as to damages (even in the absence of a summary judgment motion or opportunity for Defendants to be heard), that would not impact the relevance of the evidence that Yuga seeks to exclude for proving alternative sources of harm, as discussed above.  *See supra* at 26-28.

## C.   THE PROBATIVE VALUE OF THE EVIDENCE YUGA SEEKS TO EXCLUDE OUTWEIGHS ANY UNFAIR PREJUDICE

Yuga also argues that Rule 403 requires exclusion of evidence concerning what it defines as "Inflammatory."  But Rule 403 allows for the exclusion of relevant evidence *only* "if its probative value is *substantially* outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  [Fed. R. Evid. 403](#) (emphasis added).  Yuga's argument for exclusion under Rule 403 fails because, as outlined above, this evidence is highly relevant to Defendants' intent and motivation in creating the RR/BAYC Project, and to alternative causes of Yuga's claimed harm.  *See supra* at 23-28.  Contrary to Yuga's (baseless) assertions, Defendants do not seek to introduce evidence about offensive content in the BAYC

FENWICK & WEST LLP
ATTORNEYS AT LAW

collection or concerns about the propriety of Yuga's NFT sales to inflame the passions of the jury. *See supra* at 8. Instead, Defendants need to introduce this evidence to address precisely the intent and damages issues to which it is relevant.

Courts often hold that possibly prejudicial information—including "inflammatory" language—can be admitted where it is relevant to issues in the case. *See New Show Studios LLC v. Needle,* No. 214CV01250CASMRWX, 2016 WL 5745078, at *6 (C.D. Cal. Sept. 29, 2016) (allowing evidence of plaintiff's homicide investigation given it had "limited, albeit important, probative value to [the Defendants] state of mind at the time."); *Bassett v. City of Burbank*, No. 2:14-CV-01348-SVW-CW, 2014 WL 12573395, at *4-5 (C.D. Cal. Nov. 14, 2014) (denying a motion to exclude evidence of defendants "racially inflammatory statements" because "the remarks are central to Plaintiff's theory of the case…"); *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (upholding the district court's decision to allow evidence of defendants use of "skinhead" as it tended to establish a key issue of the case). Conversely, the cases to which Yuga cites involve situations where the evidence considered was peripheral and had minimal probative value. *See e.g., United States v. Johnson*, No. 14-CR-00412-TEH, 2015 WL 4747309, at *9 (N.D. Cal. Aug. 11, 2015), order clarified, No. 14-CR-00412-TEH, 2015 WL 4999461 (N.D. Cal. Aug. 20, 2015) (court excluded evidence of racists text messages of a police officer who "could not have affected either of [the] elements" at issue from the homicide investigation and so his texts had "very low probative value…"); *Shepard v. Bass,* No. 1:10-CV-00754-LJO, 2012 WL 6115675, at *2 (E.D. Cal. Dec. 10, 2012) (excluding evidence of a racist gang of prison officers in part because "Plaintiff has not produced any evidence that the [gang] exist as a gang or that Defendant is a member of any such group.").

Additionally, the timing concerns that Yuga raise are not supported. Defendants expect that the Court will limit each side's time equitably, so concerns about waste of time hold little weight. The evidence Defendants seek to include are

not "conspiracy theories" that require the jury to engage in a "mini-trial" to resolve. Nor will Defendants seek to introduce evidence about critiques of Yuga for their truth; instead, this evidence will be used to establish what Defendants' believed, their intent in creating the RR/BAYC Project, and that other factors were responsible for the decline in value of Yuga's BAYC collection that Yuga incorrectly attributes exclusively to confusion and alleged false advertising by Defendants.   The jury, therefore, will not need to engage in a "mini-trial" on the truth of any of these issues.

Finally, even if the Court were to decide that there are some aspects of the evidence that Yuga seeks to exclude that warrant exclusion under Rule 403, Yuga's overbroad and vague definition of "Inflammatory Material" prevents a meaningful balancing of probative value vs. prejudice at the *in limine* stage.   Deciding that all of the evidence Yuga objects to in this motion is equally unfairly prejudicial paints with too broad of a brush and will inevitably sweep in permissible evidence.   This further supports denial of Yuga's motion as impermissibly vague.

### D.   ESTOPPEL DOES NOT APPLY

Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008) (internal citations omitted). To determine if the doctrine applies, courts consider "(1) whether a party's later position is clearly inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party." *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (internal quotations omitted).   None of those factors are present here.

Yuga misleadingly states that Defendants have argued that "documents from before May 14, 2022 are not relevant to this action" and that Judge McDermott has agreed. *See supra* at 20.   This is inaccurate.   For support, Yuga cites to Judge

FENWICK & WEST LLP
ATTORNEYS AT LAW

McDermott's ruling denying Yuga's motion for sanctions—in which the Defendants' ***did not*** argue that all evidence pre-dating May 14, 2022 was irrelevant and the Court ***did not*** decide that issue.  Dkt. 145.  To the contrary, the Court held there that Defendants had to "produce any remaining relevant" documents and stated that "pre-litigation communications between [the Defendants]" are "critical documents." *Id.* at 2, 3.  Defendants searched for and produced all relevant documents, and there were no communications between the Defendants concerning the RR/BAYC Project prior to May 14, 2022.  Defendants will of course not rely on communications between the Defendants prior to May 14, 2022—***because there were no relevant communications***.  But that should not preclude either individual defendant from testifying about (and presenting other disclosed documentary evidence of) his individual intent prior to that date.  Estoppel is thus inapplicable, because this topic Yuga seeks to exclude was never raised to the Court, and the Court has not decided on it.

### E.  RULE 404 IS INAPPLICABLE

Rule 404 states that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404 (b)(1).  As outlined above, Defendants do not intend to enter the evidence that Yuga seeks to exclude for the truth of the matter asserted, much less to show that any person likely acted on an occasion in accordance with their character.  Rather, Defendants intend to use such evidence to show that there are other explanations for Yuga's asserted harm to the BAYC brand, and to show Defendants' intent and motivation in creating the RR/BAYC Project.  The examples Yuga provides for the evidence they wish to exclude as "character evidence" do not fall under Rule 404.  Rather, the evidence Yuga targets includes use of Yuga's logo and the pseudonyms of the Yuga founders (which appear in relevant Yuga documents), none of which is "[e]vidence of any

1  other crime, wrong, or act…" <u>Fed. R. Evid. 404 (b)(1)</u>; Br. 21.  Accordingly, Rule

2  404(b) does not apply.

3      **F.    CONCLUSION**

4      Yuga's overbroad motion to exclude "Inflammatory Material" should be

5  denied as it seeks to exclude evidence that is important to several outstanding issues

6  in this case.  Further, given the high probative value of this evidence, any prejudice,

7  confusion, or waste of time Yuga claims the evidence will cause, is outweighed.  All

8  of Yuga's remaining objections to this evidence fail, and the Court should deny this

9  motion.

10

11  Dated:  May 25, 2023              FENWICK & WEST LLP

12

13                                  By:  */s/ Kimberly Culp*
                                         Kimberly Culp
14                                       Attorneys for Plaintiff
                                         YUGA LABS, INC.
15

16  Dated:  May 25, 2023              WILMER CUTLER PICKERING HALE
                                      AND DORR LLP
17

18                                  By:  */s/ Louis W. Tompros*
                                         Louis W. Tompros
19                                       Attorneys for Defendants
                                         RYDER RIPPS AND JEREMY CAHEN
20

21

22      **ATTESTATION OF CONCURRENCE IN FILING**

23      Pursuant to the United States District Court for the Central District of

24  California's Civil L.R. 5-4.3.4(a)(2)(i), Kimberly Culp attests that concurrence in the

25  filing of this document has been obtained from Louis W. Tompros.

26

27                                  */s/ Kimberly Culp*
                                    Kimberly Culp
28

FENWICK & WEST LLP
ATTORNEYS AT LAW