ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **JOINT BRIEFING FOR YUGA LABS, INC.'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE REFERENCES TO DEFENDANTS' PURPORTED ARTISTIC INTENT** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, | |
| Defendants. | Date: June 16, 2023 |
| | Time: 8 a.m. |
| | Courtroom: 7A |
| | Judge: Honorable John F. Walter |
| | Pretrial Conf. Date: June 9, 2023 |
| | Trial Date: June 27, 2023 |

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA  90401
   Telephone:  310.434.4300
4
5  DAVID Y. SILLERS (*admitted pro hac vice*)
   david@clarelocke.com
6  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
7  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA  22314
   Telephone:  202.628.7400
10
11 Attorneys for Plaintiff
   YUGA LABS, INC.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

I.    IDENTIFICATION OF THE MATTER IN DISPUTE ................................... 1

II.   YUGA LABS' MEMORANDUM OF POINTS AND
      AUTHORITIES ................................................................................... 4

      A.    INTRODUCTION ...................................................................... 4

      B.    RELEVANT BACKGROUND ..................................................... 6

      C.    ARGUMENT ......................................................................... 11

            1.    Any Evidence Or Testimony Relating To Defendants'
                  Purported Artistic Intent Should Be Excluded Because
                  The Issue Is Irrelevant. ................................................ 11

            2.    Allowing Defendants To Introduce Evidence About
                  Their Purported Artistic Intent Or Refer To
                  RR/BAYC NFTs Or Ape Market As "Art" Presents A
                  Significant Danger Of Unfair Prejudice And Will
                  Confuse The Jury. ......................................................... 14

            3.    Testimony Characterizing The RR/BAYC NFTs Or
                  Ape Market As "Art" Will Not Help The Jury
                  Determine The Issues In Dispute And Is Improper
                  Expert Opinion ............................................................. 15

      D.    CONCLUSION ........................................................................ 17

III.  DEFENDANTS' MEMORANDUM OF POINTS AND
      AUTHORITIES ....................................................................................... 17

      A.    INTRODUCTION ...................................................................... 17

      B.    THE COURT'S SUMMARY JUDGMENT
            DETERMINATION DOES NOT PRECLUDE
            DEFENDANTS FROM ADDRESSING INTENT FOR
            WILLFULNESS AND DAMAGES ............................................... 19

      C.    DEFENDANTS' INTENT IS RELEVANT TO DAMAGES ........... 21

# TABLE OF CONTENTS
## (Continued)

Page

D.  DEFENDANTS' MENTAL STATE IS RELEVANT TO
    WILLFULNESS AND EXCEPTIONAL CASE..................................23

E.  DEFENDANTS' TESTIMONY AND EVIDENCE
    REGARDING THEIR OWN SUBJECTIVE BELIEF IS
    NOT EXPERT OPINION........................................................24

F.  DEFENDANTS' TESTIMONY AND EVIDENCE
    REGARDING THEIR OWN SUBJECTIVE BELIEF IS
    NOT UNFAIRLY PREJUDICIAL.................................................25

G.  CONCLUSION...................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4
5

*Deck v. Jenkins*,
  814 F.3d 954 (9th Cir. 2016) ................................................................. 25

6
7

*Digby Adler Group LLC v. Image Rent a Car*,
  79 F. Supp. 3d 1095 (N.D. Cal. 2015) ................................................... 22

8
9

*Glow Industries, Inc. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002) ................................................... 19

10
11

*GoDigital Media Group v. GoDigital, Inc.*,
  No. LACV-17-07796-VAP-MRWx, 2019 WL 1976452
  (C.D. Cal. Mar. 13, 2019) ...................................................................... 24

12
13

*Grasshopper House, LLC v. Clean & Sober Media, LLC*,
  2021 WL 3702243 (9th Cir. 2021) ......................................................... 22

14
15
16

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  No. SACV 17-01613-CJC-DFMx, 2023 WL 2652855
  (C.D. Cal. 2023) ..................................................................................... 22

17
18

*Ingle v. Circuit City*,
  No. 99-CV-1297-RHW, 2006 WL 6086293
  (S.D. Cal. Feb. 6, 2006) .................................................................. 11, 21

19
20
21

*J&J Sports Prods., Inc. v. Jimenez*,
  No. 10cv0866 DMS (RBB), 2010 WL 5173717
  (S.D. Cal. Dec. 15, 2010) ....................................................................... 13

22
23

*Liberty Mut. Ins. Co. v. E.E.O.C.*,
  691 F.2d 438 (9th Cir. 1982) .................................................................. 19

24
25
26

*Mag Instrument, Inc. v. Dollar Tree Stores Inc.*,
  No. CV 03-6215 RSWL (SHx), 2005 WL 5957825
  (C.D. Cal. Apr. 14, 2005)
  ............................................................................................................ 11, 20

27

*Novalogic, Inc. v. Activision Blizzard*,
  41 F. Supp. 3d 885 (C.D. Cal. 2013) ..................................................... 16

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Peralta v. Dillard,*
   744 F.3d 1076 (9th Cir. 2014) ................................................................ 20

*POM Wonderful LLC v. Purely Juice, Inc.,*
   362 F. App'x. 577 (9th Cir. 2009) .......................................................... 12

*Romag Fasteners, Inc. v. Fossil, Inc.,*
   140 S. Ct. 1492 (2020) ...................................................................... 13, 21

*Shouse v. Ljunggren,*
   792 F.2d 902 (9th Cir. 1986) ................................................................ 20

*Sienze v. Kutz,*
   No. 1:17-CV-0736 AWI SAB, 2019 WL 1332184
   (E.D. Cal. Mar. 25, 2019)
   ................................................................................................ 11, 21

*Stone Brewing Co., LLC v. MillerCoors LLC,*
   No. 3:18-cv-00331-BEN-MDD, 2022 WL 3021697 (S.D. Cal. 2022) ............. 22

*Talent Mobile Development Group, Inc. v. Headios Group,*
   382 F. Supp. 3d 953 (C.D. Cal. 2019) ................................................ 23, 24

*United States v. Alexander,*
   106 F.3d 874 (9th Cir. 1997) ................................................................ 19

*United States v. Ellis,*
   147 F.3d 1131 (9th. Cir. 1998) .............................................................. 14

*United States v. Hitt,*
   981 F.2d 422 (9th Cir. 1992) ................................................................ 15

*United States v. Noel,*
   581 F.3d 490 (7th Cir. 2009) ................................................................ 16

*Watec Co. v. Liu,*
   403 F.3d 645 (9th Cir. 2005) ................................................................ 23

*Weeks v. Angelone,*
   528 U.S. 225 (2000) ............................................................................ 25

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*William H. Morris Co. v. Group W, Inc.*,
  66 F.3d 255 (9th Cir. 1995) ................................................................. 20

*Williams v. Mary Diane Schwarz, P.A.*,
  No. 15 C 1691, 2018 WL 2463391 (N.D. Ill. June 1, 2018) .............................. 16

### STATUTES AND RULES

15 U.S.C. § 1117(a) .......................................................................... 23

Fed. R. Evid. 401 ..................................................................... 4, 5, 11

Fed. R. Evid. 402 ..................................................................... 4, 5, 11

Fed.R. Evid. 403 .......................................................................*passim*

Fed. R. Evid. 701 ................................................................ 4, 5, 15, 16

Fed. R. Evid. 702 ................................................................ 4, 5, 15, 16

L.R. 16-11.2 .................................................................................. 2

L.R. 32-1 ..................................................................................... 2

Lanham Act ................................................................................... 12

### OTHER AUTHORITIES

First Amendment ..................................................................... 4, 5, 7, 11

## I.   IDENTIFICATION OF THE MATTER IN DISPUTE

Yuga Labs seeks an *in limine* order that precludes Defendants Ryder Ripps ("Ripps") and Jeremy Cahen ("Cahen") (collectively "Defendants") from offering any evidence or argument as to their purported artistic intent in creating the RR/BAYC NFTs or Ape Market.   These items appear in Defendants' pre-trial evidentiary disclosures and should be excluded from trial, including any similar evidence or argument on the same subject and not yet disclosed by Defendants:

| Defendants' Exhibits[1] |
|---|
| JTX-215; JTX-219; JTX-249; JTX-262; JTX-313; JTX-316; JTX-2005; JTX-2025; JTX-2026; JTX-2028; JTX-2029; JTX-2030; JTX-2031; JTX-2032; JTX-2033; JTX-2034; JTX-2035; JTX-2036; JTX-2037; JTX-2038; JTX-2039; JTX-2045; JTX-2085; JTX-2086; JTX-2093; JTX-2095; JTX-2098; JTX-2099; JTX-2100; JTX-2101; JTX-2102; JTX-2103; JTX-2104; JTX-2105; JTX-2115; JTX-2121; JTX-2132; JTX-2139; JTX-2140; JTX-2141; JTX-2142; JTX-2143; JTX-2144; JTX-2162; JTX-2164; JTX-2165; JTX-2168; JTX-2283; JTX-2315; JTX-2316; JTX-2320; JTX-2321; JTX-2332; JTX-2333; JTX-2502; JTX-2518; JTX-2520; JTX-2586; JTX-2588; JTX-2589; JTX-2590; JTX-2591; JTX-2592; JTX-2593; JTX-2595; JTX-2596; JTX-2597; JTX-2598; JTX-2599; JTX-2600; JTX-2641; JTX-2643; JTX-2644; JTX-2645; JTX-2646; JTX-2649; JTX-2650; JTX-2653; JTX-2654; JTX-2657; JTX-2658; JTX-2659; JTX-2660; JTX-2661; JTX-2663; JTX-2664; JTX-2665; JTX-2666 |

| Defendants' Deposition Designations[2] | |
|---|---|
| Wylie Aronow | 127:8–9; 266:15–18 |

[1] Declaration of Kimberly Culp in support of Yuga Labs' motion *in limine* No. 2 ("Culp Decl.") Ex. 1.

[2] Defendants' deposition designations that Yuga Labs seeks to exclude through this motion *in limine* are identified in Yuga Labs' portion of the Joint Motion as required by the Scheduling Order. Dkt. 57 at 20 ("The Joint Motion in Limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be inadmissible and/or prejudicial . . . ."). The original deposition transcripts will be

1

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Kerem Atalay | 172:19–21, 25; 173:1–3, 6–8 |
|---|---|
| Thomas Lehman | 13:6–25;  14:5–25;  15:1–8;  21:7–17;  22:13–15;  38:22–25; 39:1–12;  41:6–25;  42:1–25;  43:1–25;  44:3–14;  46:12–23; 47:20–25;  48:1–25;  49:1–22;  50:1–22;  52:1–25;  53:1–25; 54:1–25;  55:1–25;  56:1–24;  57:15–25;  58:1–25;  59:1–25; 60:1–24;  70:10–25;  71:1–17;  72:22–23;  73:1–16;  79:10–25; 80:1–12;  139:9–24;  147:1–13, 21–25;  148:1–9;  151:5–25; 176:5–25;  177:1–5, 19–25;  178:1–25;  179:1–13;  193:13–25; 194:1–25; 195:1–9; 196:1–21 |
| Nicole Muniz | 255:19–20, 23–25; 256:1–6, 8–11 |
| Guy Oseary | 27:18–23; 30:5–12, 15–25; 31:1–4; 187:1–5, 7–10 |
| Greg Solano | 156:22–23, 25; 157:1–2, 5–6 |
| **Defendants' Witness Disclosures**[3] | |
| Ryder Ripps | "He will testify concerning the origin of and intent behind the RR/BAYC Project (including RR/BAYC NFTs). . .”; “the intent behind representations made in connection with the RR/BAYC Project (including representations concerning RR/BAYC NFTs)”, and “Mr. Ripps's good faith in connection with the RR/BAYC Project (including RR/BAYC NFTs).” |
| Jeremy Cahen | "He will testify concerning the intent behind the RR/BAYC Project (including RR/BAYC NFTs). . .”; “the intent behind representations made in connection with the RR/BAYC Project (including representations concerning RR/BAYC NFTs)”, and |

---

lodged with the Court by June 6, 2023 as required under the Local Rules.  L.R. 32-1 ("The original deposition shall be lodged with the Clerk on or before the first day of a trial or at least ten (10) days before an evidentiary hearing unless required to be filed earlier under L.R. 16-11.2.").

[3] Culp Decl. Ex. 2.

| | |
|---|---|
| | "Mr. Cahen's good faith in connection with the RR/BAYC Project (including RR/BAYC NFTs)." |
| Ryan Hickman | "He will testify concerning the intent behind the RR/BAYC Project (including RR/BAYC NFTs). . ."; "the intent behind representations made in connection with the RR/BAYC Project (including representations concerning RR/BAYC NFTs)", and "Mr. Ripps's and Mr. Cahen's good faith in connection with the RR/BAYC Project (including RR/BAYC NFTs)." |
| Thomas Lehman | "He will testify concerning the intent behind the RR/BAYC Project (including RR/BAYC NFTs). . ."; "the intent behind representations made in connection with the RR/BAYC Project (including representations concerning RR/BAYC NFTs)", and "Mr. Ripps's and Mr. Cahen's good faith in connection with the RR/BAYC Project (including RR/BAYC NFTs)." |
| Damon Dash | "He will testify concerning his understanding of the intent behind the RR/BAYC Project (including RR/BAYC NFTs) as a consumer in the industry." |

The proffered evidence is irrelevant to the remaining issues in this case in light of multiple orders from this Court. Specifically, the Court has already disposed of the issue of Defendants' intent, finding that Defendants intentionally infringed on Yuga Labs' trademarks, and denied their First Amendment *Rogers* defense because there is no artistic expression at issue in this case. Yet, Defendants confirmed during the May 9 meet and confer that they intend to present the jury with evidence and argument about Defendants' purported good faith intent in creating the RR/BAYC NFTs. Defendants cannot repackage and dress up their rejected arguments with superficial claims of "good faith" to introduce evidence that has no relevance to this case and would only serve to prejudice Yuga Labs by wasting time and confusing the

jury.  The evidence by third parties, such as Mr. Dash, about how they or consumers perceived Ripps' and Cahen's intent is also improper testimony insofar as Defendants expect the jury to extrapolate that to all consumers.  Accordingly, Yuga Labs asks that this Court bar Defendants from introducing argument or evidence about the purported artistic intent or purpose behind the RR/BAYC NFTs or Ape Market, or any statement to the effect that the RR/BAYC NFTs or Ape Market are or are related to "art," an "art project," a "project," or "the RR/BAYC Project," pursuant to Federal Rules of Evidence 401, 402, 403, 701, and 702.

## II.   YUGA LABS' MEMORANDUM OF POINTS AND AUTHORITIES

### A.   INTRODUCTION

Since the start of this case, Defendants have tried to turn this garden-variety trademark infringement and false advertising case into a First Amendment case about Ripps' purported artistic expression.[4]  In their mind, if Ripps is shown to be an artist, the jury might ignore that he has been found to have intentionally infringed Yuga Labs' BAYC Marks.  And so, Defendants refuse to accept the Court's express findings that "Defendants knowingly and intentionally used Yuga's BAYC Marks . . . in an effort to confuse consumers," and that Defendants' First Amendment *Rogers* defense does not apply to this case.  *See* Dkt. 62 ("December 16 Order" denying in part Defendants' Motion to Strike) at 6; Dkt. 225 ("Order" granting in part Yuga Labs' Motion for Summary Judgment) at 12, 16.  But the fact remains, this Court has already concluded at both the motion to dismiss stage and the summary judgment stage that "Defendants' sale of what is admittedly a 'collection of NFTs that point to the same online digital images as the BAYC collection' is the only conduct at issue in this action and does not constitute an expressive artistic work protected by the First Amendment."  Dkt. 62 at 6; *see also*, Dkt. 225 at 16.

---

[4] To date, Defendants have not offered a single argument that Cahen is an "artist" or that his activities were carried out with any "artistic intent."

FENWICK & WEST LLP
ATTORNEYS AT LAW

Despite this Court's orders, Defendants have multiplied this litigation and pushed a false narrative that their infringement is some kind of "art project."  As recently as the parties' May 9th meet and confer, Defendants confirmed what was already clear from their pre-trial disclosures—that Defendants still plan to try to convince the jury that their infringing activity was all just an art project (as they call it, "the RR/BAYC Project").  Their current legal theory for admitting this repeatedly rejected argument is that their supposed "good faith belief" that their infringing activity was an art project (and others' supposed similarly held beliefs) somehow justifies or excuses their infringement.  It does not, in law or in fact.  Defendants' supposed good faith and the testimony of third-parties purporting to corroborate their supposed good faith is not relevant to any issue the jury will decide; indeed, ***none of Plaintiff's proposed jury instructions asks the jury to consider the supposed good faith of the Defendants***, and the Court already disposed of this issue in finding that Defendants intended to infringe and confuse consumers and that the conduct at issue in this litigation does not relate to expressive speech.  Defendants cannot use supposed "good faith" as a backdoor for their rejected First Amendment defense. The evidence and arguments Defendants intend to make will only confuse the jury and prejudice Yuga Labs, who will have to take precious time from a three (3) day trial to prove, yet again, Defendants' bad faith, even though their alleged artistic intent is not at issue in this trial.

This Court has held as a matter of law that Defendants' scam is not art; however, unless explicitly barred by the Court from doing so, Defendants intend to continue to ignore the Court's orders.  By this Motion *in Limine* Number 2, Yuga Labs respectfully requests an order pursuant to Federal Rules of Evidence 401, 402, 403, 701, and 702, to preclude Defendants from offering, or seeking to elicit, testimonial or documentary evidence or any argument about Defendants' purported artistic intent or purpose in creating the RR/BAYC NFT collection or Ape Market, including but not limited to characterizations of the RR/BAYC NFTs or Ape Market

as "art," an "art project," a "project", or "the RR/BAYC Project," or that the RR/BAYC NFTs or Ape Market are anything other than an infringing NFT collection and commercial NFT marketplace.

## B.  RELEVANT BACKGROUND

Defendants have been relentless in seeking to exonerate their infringement by characterizing the RR/BAYC NFT collection and Ape Market as some sort of "art project."  In their Motion to Strike Yuga Labs' Complaint, Defendants spent over a page discussing how Ripps is a "recognized artist."  *See* Dkt. 38 at 2-3.  They then went on to claim that Ripps created the amorphous "RR/BAYC project" as a form of artistic expression to call out Yuga Labs' alleged "use of racist and neo-Nazi dog whistles."  *Id.* at 6.  However, Defendants themselves have exposed this window dressing for their infringement.  Notably, Defendants admitted in their motion that the purported art project is merely "a collection of NFTs that point to the same online digital images as the BAYC collection but use verifiably unique entries on the blockchain."  *Id.*  As the Court rightly concluded in denying Defendants' motion, "the *Rogers* test does not apply in this case"; "the RR/BAYC NFTs do not express an idea or point of view" and the "Ape Market website contain[s] no 'artistic expression or critical commentary.'"  Dkt. 62 at 6.  Rather, "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag."  *Id.* at 7.

Ignoring the Court's December 16 Order, Defendants continued to make alleged "artistic intent" a focal point of their defense.  For example, in their first Motion to Compel dated December 28, Defendants demanded discovery from Yuga Labs relating solely to their First Amendment *Rogers* defense on the basis that "[t]his lawsuit involves allegations that Mr. Ripps and Mr. Cahen's conceptual art project infringes Yuga's trademarks associated with its Bored Ape Yacht Club ('BAYC') NFT collection."  Dkt. 69-1 at 3.  Again, in their second Motion to Compel dated February 15, Defendants argued that "[t]his lawsuit involves Mr. Ripps and Mr. Cahen's RR/BAYC NFT project, which criticizes Yuga for its fraud and use racist

FENWICK & WEST LLP
ATTORNEYS AT LAW

and neo-Nazi imagery." Dkt. 103-1 at 4.  Defendants also made clear their intentions to raise such issues at trial, brazenly stating numerous times that "Defendants expect to dispute many of the factual allegations of the Complaint at trial, and their First Amendment defense will be among the expected central issues at trial." *Id.*; *see also*, Dkt. 80 at 1 (same); Dkt. 103-1 at 4 ("[Defendants'] First Amendment defenses to trademark infringement . . . are among the expected central issues at trial."). Defendants continued defiance compelled this Court to once again clarify that this case is only about trademark infringement and false advertising, not Defendants' alleged speech.  As such, the magistrate court found that Defendants' discovery requests pertaining to the purported criticisms underpinning Defendants' alleged 'conceptual art project' were "moot, irrelevant and not proportionate to the needs of the case in view of the District Court's December 16, 2022 ruling."  Dkt. 87 at 1; *see also*, Dkt. 144 at 1.

Instead of respecting this Court's December 16 Order holding Defendants' First Amendment *Rogers* defense to be irrelevant, Defendants continued to charge forward with their theories about "art."  At their depositions, Defendants and their collaborators inappropriately engaged in long-winded, self-serving tangents about the purported purpose and intent behind their "art project."  For instance, when questioned about Ape Market, Ripps responded:

> I think we wanted to show people that we're very much the underdogs
> here, you know what I mean?  We're very much people who don't care
> about money and do things because we love the expression, the art, the
> purpose.  We're driven by those things.  And as I've said before, I love
> satire.  And people in the NFT community have kind of come to
> understand me a certain way.  And everything that we do is the opposite
> of Yuga Labs.  So satirizing Yuga Labs in some sort of way to announce
> something that is the opposite of them, such as offering something
> without any royalties – which would be the antithesis of the kind of

FENWICK & WEST LLP
ATTORNEYS AT LAW

corporate fraud that's been conducted by the nepotistic relationship of

OpenSea and Yuga Labs in conjunction with FTX – is the exact opposite.

Culp Decl. Ex. 3 (Ripps Depo.) at 217:20–218:10.

This testimony from Ripps is riddled with brazen lies.  Contrary to the above, Defendants' contemporaneous private text messages reveal that they did, in fact, "care about money."  Immediately after Ripps started re-minting the BAYC NFT collection as his RR/BAYC NFT collection, Cahen texted Ripps:  "Dog Ur gonna make so much on this shit LMFAO," and in response to this and related messages on how to "make so much on this shit," Ripps texted "lol."  Culp Decl. Ex. 4.  They continued to text, with Cahen writing "You'll make like a million dollars" and "we already have ape market." *Id.*

During Ripps' deposition, he also made a point of inserting numerous non-responsive references to the RR/BAYC NFTs as "art," despite admitting that the purported artwork is merely "an NFT project, which is a non-fungible token, called 'RR/BAYC.'"  Culp Decl. Ex. 3 at 22:3–4.  When questioned about his promotional activities surrounding the RR/BAYC NFTs, Ripps responded:  "RR/BAYC is an art piece, and it's a performance, and it's an expression" (*Id.* at 15:23–24); ". . . promoting the ideas behind my art, which—which the artwork has actually been very effective in doing.  I think the artwork has helped people understand the insidious fraud behind Yuga Labs. . . ." (*Id.* at 22:23–23:1).  When asked about his use of the BAYC Marks on his Foundation page for the RR/BAYC NFT collection, Ripps responded, "Ryder Ripps/Bored Ape Yacht Club is the name of the art piece that is subject of this litigation." *Id.* at 61:2–4.

Cahen took a similar approach during his deposition, offering irrelevant and unprompted characterizations of the RR/BAYC NFTs as "art" on simple questions.  In one such tirade, Cahen claimed, "I believe that the RR BAYC is referring to Ryder Ripps Bored Ape Yacht Club, the art project, which is a criticism of the Neo-Nazism, racism, pedophilia, fraud, all perpetuated by Yuga Labs and their business partners

FENWICK & WEST LLP
ATTORNEYS AT LAW

like FTX and Fenwick & West and Ape Coin."  Culp Decl. Ex. 5 (Cahen Depo.) at 92:4–9.  In discussing the fact that the RR/BAYC NFTs point to the same underlying images as the authentic BAYC NFTs, Cahen stated, "I believe that Ryder Ripps's artwork is a very comparable—it's a very comparable execution of shining a light and magnifying unfortunate and disgusting atrocities."  *Id.* at 184:3–6.  And when asked about Defendants' use of the BAYC Marks on their rrbayc.com website, Cahen responded, "[t]he artistic intention, as I understand, Ryder had was largely to draw attention to this really problematic racist, anti-Semitic, pedophile-themed iconography that many experts around the world have unanimously agreed is real and prevalent."  *Id.* at 198:2–7.

Ryan Hickman, one of Defendants' business partners and a key collaborator on the RR/BAYC NFTs, made similar characterizations of the RR/BAYC NFTs as "art" during his deposition.  For example, when discussing rrbayc.com, Hickman stated "[t]he whole RR/BAYC site, at the top of the website, before you engage in any of the artwork below and connect your wallet, there's a story that explains the journey of discovery, links you to the GordonGoner website.  It shows you the logo that is a—where the words are changed as a reference to what the meaning of the Nazi symbolism was representing.  The protest was around you cannot copy an NFT."  Culp Decl. Ex. 6 (Hickman Depo.) at 173:18–174:1.  When asked about why Defendants chose to use the identical ID numbers of the BAYC NFTs to refer to their RR/BAYC NFTs, and potential consumer confusion, Mr. Hickman responded:

> [T]hey're experiencing something that they've never done.  This is different.  It's artistic.  Their processes in the past are security mints.  You go to the page, you click it, you get the item at that specific ID, and you speculate at that point.  Here you're participating in this reservation system where it's—you're supporting Ryder Ripps creating

Fenwick & West LLP
Attorneys at Law

a one-off—I use the term artisan often, but it's a hand-crafted mint that you're specifically commissioning, similar to a painting.

*Id.* at 198:18–199:4.

Even Defendants' counsel inappropriately insinuated that the RR/BAYC business venture is artistic in nature while deposing Yuga Labs' founders and former CEO, notwithstanding, at that point, two orders holding such issues to be irrelevant. *See* Dkt. 62 at 6; Dkt. 87 at 1.  For example, during Greg Solano's deposition, Defendants' counsel asked questions such as, "were you aware of Mr. Ripps's career in the art industry prior to the RR/BAYC project?"  Culp Decl. Ex. 7 (Solano Depo.) at 156:22–23.[5]  Subsequently, in another example, during Nicole Muniz's deposition, Defendants' counsel asked, "Foundation is organized by artists' collections; correct?"  Culp Decl. Ex. 8 (Muniz Depo.) at 255:19–20.

Most recently, ignoring yet a third order of this Court, this time denying Defendants' Requests for Production related to their *Rogers* defense as irrelevant (*see* Dkt. 144 at 1), on summary judgment Defendants pushed forward with arguing that their alleged artistic intent meant there was no likelihood of confusion.  Like a broken record, Defendants asserted that "RR/BAYC NFTs [were] launched as a protest against Yuga" and that "the project is 'appropriation art'" intended to "educate consumers concerning the nature of NFTs and call-out Yuga's imagery."  Dkt. 199-1 at 8, 12.  Boldly, Defendants argued that "there is a material dispute whether the RR/BAYC Project is an expressive work that must be resolved at trial."  This was untrue in light of this Court's three prior orders, so in granting Yuga Labs' Motion for Summary Judgment as to its claims for false designation of origin and cybersquatting, this Court once again held that the ***only conduct at issue*** is Defendants' "commercial activities designed to sell infringing products, not

---

[5] Judge McDermott's order was issued in the morning on January 17, 2023, during the deposition of Greg Solano.  This question, and many others like it, was asked during the afternoon session of Mr. Solano's deposition.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  expressive artistic speech protected by the First Amendment." Dkt. 225 at 16. This

2  Court further rejected any argument by Defendants that their infringement was

3  justified, concluding that "Defendants knowingly and intentionally used Yuga's

4  BAYC Marks . . . to confuse consumers." *Id.* at 12.

5      Defendants have an established pattern and practice of ignoring this Court's

6  orders to push their own agenda and confirmed they plan to carry this bad faith

7  approach into trial. Defendants' conduct necessitates yet another order expressly

8  barring their efforts to present irrelevant and prejudicial material to the jury.

9  **C.    ARGUMENT**

10      **1.    Any Evidence Or Testimony Relating To Defendants'**
   **Purported Artistic Intent Should Be Excluded Because The**
11  **Issue Is Irrelevant.**

12      Defendants should be precluded from introducing evidence or argument

13  seeking to establish their state of mind because this Court already foreclosed the

14  relevance of that evidence in its Order holding that Defendants' infringing conduct

15  was not expressive, it was intentional, and their cybersquatting was done in bad faith.

16  *See* Dkt. 225. Defendants should not get to relitigate issues the Court has already

17  decided and about which the jury will not receive an instruction.

18      The Federal Rules of Evidence provide that evidence is relevant only if "a) it

19  has any tendency to make a fact more or less probable than it would be without the

20  evidence; and b) the fact is of consequence in determining the action." Fed. R. Evid.

21  401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Courts in the Ninth

22  Circuit have routinely excluded evidence concerning issues resolved on summary

23  judgment. *See*, *e.g.*, *Mag Instrument, Inc. v. Dollar Tree Stores Inc.*, No. CV 03-

24  6215 RSWL (SHx), 2005 WL 5957825, at *2 (C.D. Cal. Apr. 14, 2005) (excluding

25  evidence concerning an argument that was mooted by summary adjudication); *Sienze*

26  *v. Kutz*, No. 1:17-CV-0736 AWI SAB, 2019 WL 1332184, at *3 (E.D. Cal. Mar. 25,

27  2019) ("Defendants are correct that evidence concerning issues resolved at summary

28  judgment is generally not relevant and should be excluded."); *Ingle v. Circuit City*,

FENWICK & WEST LLP
ATTORNEYS AT LAW

No. 99-CV-1297-RHW, 2006 WL 6086293, at *4 (S.D. Cal. Feb. 6, 2006) ("Defendant seeks to exclude all evidence regarding FNANB's alleged harassment of Plaintiff.  The Court dismissed Plaintiff's claims regarding this harassment in its summary judgment order, and it in no way relates to Plaintiff's remaining claims as outlined above.").

Following this Court's ruling on Yuga Labs' Motion for Summary Judgment, the only issues remaining for trial are the relief to which Yuga Labs is entitled for Defendants' intentional, unauthorized use of the BAYC Marks as well as Defendants' false advertising of the RR/BAYC NFTs and Ape Market. *See* Dkt. 225. Whether Defendants subjectively believe that their RR/BAYC NFTs are "art" or whether any friend of theirs perceived it that way has no relevance to these issues. Specifically, Defendants' purported beliefs and intentions behind the creation and promotion of the RR/BAYC NFTs and Ape Market do not negate the harm suffered by Yuga Labs as a result of Defendants' intentional trademark infringement, nor do such beliefs controvert the fact that Defendants lied to consumers in promoting their RR/BAYC NFTs and Ape Market on Twitter.  Allowing Defendants to introduce such irrelevant evidence as a backdoor to relitigate issues already decided by this Court would result in a time-wasting sideshow with Yuga Labs having to disprove Defendants' lies that the promotion and sale of RR/BAYC NFTs and Ape Market were "art" or done in good faith.

Defendants continue to concoct additional legal theories in hopes of making their alleged artistic intent relevant.  As indicated during the counsel's meet and confer on May 9, Defendants' latest legal theory is that their state of mind is relevant to damages.  It is not.[6]  Although, in some circumstances, a trademark defendant's intent may be relevant to an assessment of damages, such as a court's equitable

---

[6] Although they did not raise the argument, Defendants' state of mind is also not relevant to any element of Yuga Labs' false advertising case. *See POM Wonderful LLC v. Purely Juice, Inc.*, 362 F. App'x. 577, 579 (9th Cir. 2009) ("It is settled that intent is not an element of a Lanham Act false advertising claim.").

FENWICK & WEST LLP
ATTORNEYS AT LAW

determination of enhanced damages, it is not relevant to any determination to be made by the jury in this case. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1495-97 (2020).

First, the Court has already decided the issue of Defendants' intent, so such matters need not be re-examined by the jury. *See* Dkt. 225 at 12 (finding that Defendants used the BAYC Marks with the intent to deceive consumers).

Second, Defendants already successfully argued that the jury should *not* be instructed on willfulness. Yuga Labs withdrew its proposed jury instructions on willful trademark infringement because, among other things, Defendants argued "The Ninth Circuit Manual of Model Civil Jury Instructions do not provide an instruction for willfulness because the Supreme Court has [sic] equivocally held that ***willfulness is not necessary for determining infringement or damages in trademark matters***." Culp Decl. Ex. 9 ("Objections to Instruction 32") (emphasis added); *see J&J Sports Prods., Inc. v. Jimenez*, No. 10cv0866 DMS (RBB), 2010 WL 5173717, at *3 (S.D. Cal. Dec. 15, 2010) (striking Defendants' good faith affirmative defense when willfulness was not relevant to determining whether a violation under the statute had occurred).[7] Defendants should be held to their own arguments. Since the jury will not be instructed on the intent of Defendants, evidence and testimony regarding the same is irrelevant and should not be admitted at trial.

_____

[7] Even though Yuga Labs withdrew its proposed jury instructions on willfulness after Defendants objected to those instructions, Defendants have now reversed their position and ask the Court to instruct the jury on willfulness. *See* Culp Decl. Ex. 10 ("Disputed Instruction No. 32 Re Trademark infringement—Deliberate or Willful Proposed by Defendants"). Defendants' prior objections were correct insofar as a finding of willfulness is not required for the jury to award Yuga Labs Defendants' profits. *See Romag*, 140 S. Ct. at 1495-97. Yuga Labs' initial proposed jury instructions were served before the Court entered its Order holding that Defendants' infringement was intentional and their cybersquatting was done in bad faith. Accordingly, in light of Defendants' initial objections and the Court's Order, Yuga Labs does not require a finding from the jury on the issue of Defendants' willfulness because this issue is not relevant to any claim the jury will be asked to decide at trial. Defendants have no right to a finding of willfulness, and their new position is belied by their former one.

Fenwick & West LLP
Attorneys at Law

**2.    Allowing Defendants To Introduce Evidence About Their
Purported Artistic Intent Or Refer To RR/BAYC NFTs Or
Ape Market As "Art" Presents A Significant Danger Of
Unfair Prejudice And Will Confuse The Jury.**

In addition to being irrelevant to the issues for trial, evidence relating to
Defendants' purported artistic intent in creating and promoting the RR/BAYC NFTs
and Ape Market, including characterizations of them as "art" or an "art project"
would unfairly prejudice Yuga Labs, distract and confuse the jury, and waste time.
Federal Rule of Evidence 403 gives courts the inherent power to "exclude [even]
relevant evidence if its probative value is substantially outweighed by a danger of . .
. unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting
time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *see also*,
*United States v. Ellis*, 147 F.3d 1131, 1135 (9th. Cir. 1998) (Rule 403 is intended to
preclude evidence with an "undue tendency to suggest decision on an improper basis,
commonly, though not necessarily, an emotional one" or "evidence designed to elicit
a response from the jurors that is not justified by the evidence.") (citation omitted).

Here, allowing Defendants to introduce evidence or argument about why they
purportedly created the RR/BAYC NFTs and Ape Market or how others perceived
them would unfairly prejudice Yuga Labs in that the jury may determine that
Defendants' actions were somehow justified, contrary to what this Court has already
concluded and what the undisputed evidence shows.  There is no question that
"Defendants knowingly and intentionally used Yuga's BAYC Marks . . . in an effort
to confuse consumers," such as by "intentionally design[ing] the RR/BAYC NFTs
and sales websites to resemble Yuga's branding."  Dkt. 225 at 12.  Accordingly, it
does not matter *why* Ripps claims he created the RR/BAYC NFTs, or *why* he and
Cahen designed Ape Market, and his counsel should not ask them questions getting
at their supposed artistic intent, such as:

- Why did you create the RR/BAYC NFT collection?;
- What was the point of the RR/BAYC NFT collection?;

FENWICK & WEST LLP
ATTORNEYS AT LAW

- What message were you trying to convey with the RR/BAYC collection?;
- Why did you choose the Bored Ape Yacht Club for your NFT collection?; and
- Why did you acquire apemarket.com?

The answers to these questions and a multitude of others like them are irrelevant to the issues the jury must decide, and prejudicial to Yuga Labs because the reasons for Defendants' intentional infringement does not change the amount of harm they inflicted on Yuga Labs and may improperly suggest that the jury should relitigate the court's decision on Defendants' intentional infringement.  The jury should not, and this Court has rejected Defendants' arguments of such at every turn. *See* Dkt. 62 at 6-7; Dkt. 225 at 16-17.  Thus, an order excluding this evidence or argument is necessary because even Defendants' counsel's questions on these topics could imply to the jury that there is something to determine about Defendants' state of mind when there is not.  Similarly, defense counsel's questions may impliedly undermine this Court's instructions to the jury about what facts have already been determined to be true.  This is precisely the kind of questioning and evidence that must be excluded from trial.  *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value," evidence should be excluded under Rule 403 "if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.").

### 3.   Testimony Characterizing The RR/BAYC NFTs Or Ape Market As "Art" Will Not Help The Jury Determine The Issues In Dispute And Is Improper Expert Opinion.

A lay witness "opinion is limited to one that is:  a) rationally based on the witness's perception; b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Here, as discussed above, whether or not Defendants or their friends subjectively believe that the RR/BAYC NFTs or Ape Market are "art" has no bearing on any of the remaining claims or defenses at issue.  Similarly, any opinion testimony consisting of conclusory references to the RR/BAYC NFTs as "art" or "artwork" are not only irrelevant and prejudicial, but they impinge upon the duty of the trier of fact. To the extent that the jury considers whether the RR/BAYC NFTs or Ape Market are expressive or artistic in any way, that is within their sole discretion and an assessment to be made on the facts alone.  *See Williams v. Mary Diane Schwarz, P.A.*, No. 15 C 1691, 2018 WL 2463391, at *8 (N.D. Ill. June 1, 2018) (barring witness testimony opining that defendant was negligent because any such conclusory testimony would not help the jury and would "unnecessarily invade the province of the jury which must make the . . . determination based on its assessment of the evidence."); *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009) (reasoning that "[o]nce the evidence is presented, the jury is capable of examining it" and that "it does not need lay testimony to assist in making" a determination).  Any such references to "art" are therefore "meaningless assertions which amount to little more than choosing up sides" and should be excluded for lack of helpfulness pursuant to Rule 701.  Fed. R. Evid. 701(b) advisory committee's notes to proposed rules.

Furthermore, Defendants cannot circumvent this Court's orders and the Federal Rules of Evidence simply by stating, in a conclusory fashion, that "this is art."  Defendants did not disclose any experts in this case, and they and their friends should not be permitted to opine on matters requiring specialized knowledge about "art."  Defendants, their business partners, and friends are not experts on "art" for purposes of Federal Rule of Evidence 702, and they have provided no basis to conclude otherwise.  *See* Fed. R. Evid. 702 (setting forth requirements for proper expert testimony).  As such, Defendants should be precluded from offering what is essentially improper expert testimony on what constitutes "art."  *See Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 896 (C.D. Cal. 2013) ("Dr. Winer's

FENWICK & WEST LLP
ATTORNEYS AT LAW

attempt to offer opinions on artistic use which implicate the first prong of the *Rogers* test when he is admittedly not qualified to do so infects the balance of his opinions and further supports the Court's conclusion that his testimony is unreliable.").

### D.  CONCLUSION

For the foregoing reasons, Yuga Labs respectfully requests that the Court preclude Defendants and anyone on their behalf from introducing argument or evidence relating to Defendants' purported artistic intent in creating and promoting the RR/BAYC NFT collection or Ape Market, including but not limited to characterizations of the RR/BAYC NFTs and Ape Market as "art," an "art project," a "project," or "the RR/BAYC Project."

## III.  DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

### A.  INTRODUCTION

All five of Plaintiff Yuga Labs's ("Yuga") motions *in limine* share a common theme: Yuga seeks to present the false narrative that Defendants' infringement was solely motivated by financial gain, and solely responsible for Defendants' losses. The truth is that the harms for which Yuga seeks damages are attributable to factors other than infringement, confusion, or false advertising: they are attributable to (1) backlash against Yuga when it was called out (by Defendants and others) for using racist and other hateful imagery in connection with its BAYC brand, and (2) Yuga's own decision to freely allow widespread use of its trademarks by others.  The truth is that the Defendants genuinely believed in their artistic criticisms of Yuga's content as racist and alt-right-inspired, and that intent is directly relevant to the availability of disgorgement damages and any claim to enhanced damages as a result of willful infringement.  Thus, contrary to Yuga's suggestions, Defendants do not intend to introduce this evidence contradicting Yuga's preferred narrative for any improper purpose; rather, Defendants must be permitted to introduce evidence that Yuga's

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   damages were the result of factors other than Defendants' infringement, and that the

2   Defendants' intent was to criticize Yuga, not to cause confusion.

3       Defendants' subjective intentions, motivations, and state of mind in creating

4   the RR/BAYC Project are squarely at issue because issues of damages, willful

5   infringement, and "exceptional case" are still live issues.  All three of these issues

6   turn at least in part on Defendants' subjective thoughts and beliefs.  But Yuga would

7   preclude Defendants from answering even the most basic questions about their intent:

8   ***it goes so far as to ask for an order precluding Defendants from being asked even***

9   ***"Why did you create the RR/BAYC NFT collection?"***  In its attempt to exclude

10  Defendants from presenting evidence which directly bears on these still disputed

11  issues, Yuga's brief conflates different forms of intent, misconstrues the law of the

12  case doctrine, and ignores its own conduct placing intent squarely at issue.

13      Notably, Yuga elected not to seek a determination on damages at summary

14  judgment, and rightly so—because there remain significant factual disputes

15  concerning damages.  *See* Dkt. 149 at *3 n.2.  Yuga ***did***, however, ask the Court to

16  make an "exceptional case" determination at summary judgment (which involves

17  questions of willful infringement), and the Court rejected Yuga's request, precisely

18  because of the disputed damages questions to be resolved at trial.  Dkt. 255 at *13.

19  As a result, exceptional case—with underlying facts concerning willful

20  infringement—is still a live issue in the case.  Likewise, the Defendants' mental is an

21  extraordinarily important factor in assessing disgorgement damages (which Yuga

22  seeks).  Each of these issues directly relate to Defendants ***subjective*** intent, including

23  questions like "Why did you create the RR/BAYC NFT collection?"—as well as

24  whether the Defendants believed they were creating art, and whether they

25  subjectively believed that the purpose of the project was understandable.  Yuga's

26  motion *in limine* excluding all evidence of Defendants' intent should thus be denied.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.    THE COURT'S SUMMARY JUDGMENT DETERMINATION DOES NOT PRECLUDE DEFENDANTS FROM ADDRESSING INTENT FOR WILLFULNESS AND DAMAGES**

Yuga makes a "law of the case" argument when it claims the Court has already conclusively resolved all issues surrounding Defendants' mental states.  The "law of the case" doctrine generally precludes courts from reconsidering an issue that has already been decided at an earlier point in the case.  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  Critically, law of the case only applies to those issues actually decided.  *See Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982).  Even closely related but distinct matters are not covered by the law of the case doctrine.  *See id.*

As an initial matter, none of this Court's prior decisions have made a ruling on the actual factual issue presented here, which is whether Defendants harbored the ***subjective*** intent to create art criticizing Yuga.  (Nor would it be likely that the Court could have made such a ruling on subjective intent, since no factfinder has yet had the opportunity to hear testimony from Mr. Ripps and Mr. Cahen and assess their credibility on their own subjective beliefs.)  Rather, the Court held that "Defendants knowingly and intentionally used" Yuga's BAYC marks, and then concluded that "in the absence of any contrary evidence" at the summary judgment stage, the Court would infer intent to confuse, citing precedent discussing circumstances in which "inferring an intent" in the absence of contradictory evidence is permissible.  *See* Dkt. 225 at 12 (citing *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 1002 (C.D. Cal. 2002)).  In its briefing above, Yuga misleadingly omits by ellipses the portion of the Court's opinion discussing "the absence of any contrary evidence" at summary judgment.  The fact that Defendants knowingly and intentionally ***used*** Yuga's BAYC marks does not answer the relevant question for damages and willfulness: what was Defendants' ***mental state*** when they used Yuga's marks?  Additionally, the Court has never addressed intent at all in connection with Yuga's false advertising claim, where it is again relevant to damages for that separate cause of action (and separate alleged

FENWICK & WEST LLP
ATTORNEYS AT LAW

acts by the Defendants).  The second element of false advertising allows for a presumption that consumers are deceived only if Defendants' ***intentionally*** misled consumers.  *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) ("If [a person] intentionally misled consumers, we would presume consumers were in fact deceived ….").  Yuga has no actual evidence of consumer confusion, and thus its false advertising claim is necessarily based on Defendants' intent.  Because the Defendants' subjective intent issue has never been resolved for the issues of damages, exceptional case, or false advertising, the law of the case doctrine does not preclude Defendants from introducing evidence addressing it.

More fundamentally, even if the Court ***had*** made the broad determination on subjective intent that Yuga claims, law of the case doctrine does not apply in the manner that Yuga suggests, and Yuga's case citations are inapposite.  The "law of the case doctrine does not apply to pretrial rulings ***such as motions for summary judgment***."  *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case.  Given the nature of such motions, it could not be otherwise.").  Yuga points to several pretrial motions, most notably the Court's summary judgment ruling, to support its law of the case argument.  But under the "law of the case" doctrine, factual decisions made by the Court in those pretrial rulings are not binding on other issues—including on the matter of intent as applied to damages, false advertising, and willful infringement/exceptional case.

Yuga's cited cases all involve significantly different circumstances.  First in *Mag Instrument, Inc. v. Dollar Tree Stores, Inc.*, the Court had granted summary judgment on the affirmative defenses raised, including the one Defendants sought to introduce.  As such, Defendants had already lost on the issue of that affirmative defense and could not raise a wholly defeated claim at trial.  *See* No. 03-CV-6215-RLSW-SHx, 2005 WL 5957825 at *1 (C.D. Cal. Apr. 14, 2005).  Here, the Court

has not granted summary judgment on damages, willfulness, or false advertising.  In *Sienze v Kutz*, the Court reserved the motion *in limine* because, like this case, although **aspects** of an issue were decided at summary judgment for one purpose, the summary judgment order did not forbid evidence related to the issue in general.  *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to already decided issue that initial contact was not excessive force).  This case is just like *Sienze*: evidence of Defendants' subjective intent here may not be admissible to revisit the already-decided issue of infringement, but it is relevant and admissible as to damages, willful infringement/exceptional case, and false advertising.  Lastly, in *Ingle v. Circuit City*, the court was faced with a multiple-cause-of-action case and granted summary judgment for the defendants related to "credit card issues" but not to unrelated employment actions.  *See* No. 99-CV-1297-RHW, 2006 WL 6086293 at *4 (S.D. Cal. Feb. 6, 2006).  Because Defendants had lost on the credit card claims, they could not raise evidence solely related to those **claims** in the employment action.  Here, Defendants are not seeking to revisit the Court's judgment of infringement at trial; but damages, willfulness/exceptional case, and false advertising remain at issue, and Defendants' subjective intent is relevant to each.

## C.   DEFENDANTS' INTENT IS RELEVANT TO DAMAGES

The issue of damages stemming from trademark infringement is squarely before the Court for trial, and Defendants' intent is relevant.  Yuga misreads the Supreme Court's decision in *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492 (2020) by implying that, as a result of that case, Defendants' intent is now somehow irrelevant for damages.  *See* Yuga Mot. at *13.  Rather, the *Romag* Court expressly said the opposite: "we do not doubt that a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate" and that "[w]ithout question, a defendant's state of mind may have a bearing on what relief a plaintiff should receive." *Romag*, 140 S. Ct. at 1497.  Post-

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Romag* cases from the Ninth Circuit and its district courts have likewise consistently held that Defendants' intent is squarely relevant to damages. *See Grasshopper House, LLC v. Clean & Sober Media, LLC*, 2021 WL 3702243 at *3 (9th Cir. 2021) ("On remand, the district court should consider Defendants' mental state—whatever that may be—when determining what award of profits is appropriate."); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. SACV 17-01613-CJC-DFMx, 2023 WL 2652855 at *4-5 (C.D. Cal. 2023) (discussing how mental state is necessary component for court to consider when awarding disgorgement damages); *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 3:18-cv-00331-BEN-MDD, 2022 WL 3021697 at *1-2 (S.D. Cal. 2022) (holding that a Defendants' mental state is directly relevant to disgorgement of profits damages).

In fact, the Ninth Circuit rule is that consideration of Defendants' intent is **mandatory**. *See Grasshopper*, 2021 WL 3702243 at *3. If Defendants did not act with a willful mental state, then it would be highly unusual and discouraged under Circuit precedent to award any disgorgement damages. *See Harbor Breeze Corp.*, 2023 WL 2652855 at *4. Thus, because disgorgement damages are still at issue, Defendants' mental state is at issue.

Similarly, Yuga seeks statutory damages for its cybersquatting cause of action. Like its damages theory for trademark infringement, statutory damages for cybersquatting turns on Defendants' intent. *See Digby Adler Group LLC v. Image Rent a Car*, 79 F. Supp. 3d 1095, 1108 (N.D. Cal. 2015) ("In determining appropriate statutory damages for cybersquatting, courts generally consider a number of factors . . . including the egregiousness or willfulness of Defendant's cybersquatting.")

Thus, Defendants' subjective beliefs, motivation, and intent directly impact all aspects of Yuga's damages claims. Defendants are entitled to show that they had a subjective belief that they were using the marks in a permissible way, and that none of the statements Yuga identifies as false advertising were intentionally misleading. Although this Court disagreed with Defendants from an **objective** point of view,

Defendants *subjectively* believed that they were creating a work of conceptual art that criticized Yuga.[8]

Finally, Yuga's own motion betrays the centrality of Defendants' subjective beliefs related to the use of Yuga's marks.  As Yuga concedes, both of the Defendants and their colleague Mr. Hickman all stated that they honestly believed that they were creating art.   *See supra*. at *7-10 (highlighting RRBAYC project creators' explanation of their own motivations in creating project).  And there can be no doubt that Mr. Ripps is, in fact, a recognized artist, as Yuga's motion itself (not to mention mainstream media including the *New York Times*) confirms.  *See supra* at *6.   It cannot be that Yuga is allowed to argue that it is important that Defendants intended their project to be solely commercial, while Defendants are precluded from responding with testimony explaining that they intended it to be artistic.

## D.   DEFENDANTS' MENTAL STATE IS RELEVANT TO WILLFULNESS AND EXCEPTIONAL CASE

Yuga seeks a determination that this case is "exceptional" under 15 U.S.C. § 1117(a).  "In determining if fees are appropriate . . . the Court *must* consider several nonexclusive factors, such as (1) frivolousness; (2) *motivation*; (3) objective unreasonableness (both in the factual and in the legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence."  *Talent Mobile Development Group, Inc. v. Headios Group*, 382 F. Supp. 3d 953, 959 (C.D. Cal. 2019) (emphasis added).  Even intentional infringement "does not necessarily equate with the *malicious, fraudulent, deliberate or willful conduct*" required for finding a case exceptional.  *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005).  As such, considerations of the reasonableness of Defendants'

---

[8] While the parties disagree as to whether Defendants' work was art and whether Yuga's BAYC collection contains offensive imagery, whether Defendants are *correct* is different from whether they harbored a good-faith belief that they were creating art calling Yuga out.

FENWICK & WEST LLP
ATTORNEYS AT LAW

actions and their subjective motivations are mandatory factors for consideration of the Plaintiff's claim of exceptionality.

Here, whether Defendants subjectively believed they were engaged in artistic criticism of Yuga while using Yuga's marks is precisely the intent relevant to Yuga's exceptional case claim.  In fact, when Yuga moved for summary judgment on the issue of exceptional case, Yuga itself cited various documents directly related to Defendants' subjective intent—including numerous documents concerning Defendants' criticisms of Yuga as part of the RR/BAYC Project.  *See*, *e.g.*, Dkt. 149-1 ¶¶ 103; 106-110; 119.  Evidence from Defendants on their intent, including documents included in their group discord chat, statements on gordongoner.com, and Defendants' tweets are all relevant to understanding Defendants' actual intent (as Yuga itself has conceded).  Thus, because Yuga still maintains that it is seeking an exceptional case finding, Defendants' motivation—including their willfulness or lack of willfulness—is a relevant and necessary consideration.  *See Talent Mobile Dev. Grp.*, 382 F. Supp. 3d at 959.

### E.   DEFENDANTS' TESTIMONY AND EVIDENCE REGARDING THEIR OWN SUBJECTIVE BELIEF IS NOT EXPERT OPINION

Yuga argues that Defendants should not be able to refer to their project as something they believed to be art because it would constitute expert opinion as to whether the collection was objectively, actual art.  As an initial matter, whether Defendants' project is "actually art" is not why Defendants intend to introduce the evidence at issue; rather Defendants intend to demonstrate that they ***believed*** the project to be art and criticism.  A person's own subjective thought processes are within their personal knowledge.  *GoDigital Media Group v. GoDigital, Inc.*, No. LACV-17-07796-VAP-MRWx, 2019 WL 1976452 at *5 n.5 (C.D. Cal. Mar. 13, 2019)* ("[A]ny knowledge of one's own mental state is always personal knowledge.")

Yuga also claims that Defendants are trying to present evidence about the ontological nature of art and the RR/BAYC project's place within art.  That is not

FENWICK & WEST LLP
ATTORNEYS AT LAW

what Defendants intend to do.  Again, Defendants expect to present evidence that they **believed** they were engaged in creating art.  Defendants' subjective beliefs will involve testimony concerning their own thoughts, the actions of those they worked with, the actions of others who interacted with Defendants, and contemporaneous statements about the project at the time.  This evidence of intent is directly relevant to damages, willfulness/exceptional case, and intent for purposes of false advertising.  Defendants' testimony about their own personal knowledge and experience fall squarely outside of expert testimony.

### F.  DEFENDANTS' TESTIMONY AND EVIDENCE REGARDING THEIR OWN SUBJECTIVE BELIEF IS NOT UNFAIRLY PREJUDICIAL

Yuga also makes a cursory argument that Rule 403 requires exclusion of evidence of intent, because "the jury may determine that Defendants' actions were somehow justified."  *See supra* at 11.  Respectfully, Yuga gives the jury too little credit.  The Court will instruct the jury on the applicable law, and the issues to which Defendants' intent is relevant. "And under Supreme Court precedent, a jury is presumed to follow the trial court's instructions." *Deck v. Jenkins*, 814 F.3d 954, 979 (9th Cir. 2016) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).   Yuga's unsubstantiated fear that the jury will ignore those instructions is not the kind of "unfair prejudice" that Rule 403 is designed to remedy.  *See* Fed. R. Evid. 403.

### G.  CONCLUSION

Defendants respectfully request that Yuga's motion *in limine* to exclude references to Defendants' intent be denied.

Dated:  May 25, 2023                    FENWICK & WEST LLP


By:   /s/ Kimberly Culp
        Kimberly Culp
Attorneys for Plaintiff
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Dated:  May 25, 2023              WILMER CUTLER PICKERING HALE
                                       AND DORR LLP
2

3                                      By:  /s/ Louis W. Tompros
                                           Louis W. Tompros
4                                      Attorneys for Defendants
                                       RYDER RIPPS AND JEREMY CAHEN
5

6

7                    **ATTESTATION OF CONCURRENCE IN FILING**

8          Pursuant to the United States District Court for the Central District of

9    California's Civil L.R. 5-4.3.4(a)(2)(i), Kimberly Culp attests that concurrence in the

10   filing of this document has been obtained from Louis W. Tompros.

11

12                                     */s/ Kimberly Culp*
                                       Kimberly Culp
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28