1   ERIC BALL (CSB No. 241327)
eball@fenwick.com
2   KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
3   FENWICK & WEST LLP
801 California Street
4   Mountain View, CA  94041
Telephone:   650.988.8500
5   Facsimile:   650.938.5200

6
ANTHONY M. FARES (CSB No. 318065)
7   afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
8   ethomas@fenwick.com
FENWICK & WEST LLP
9   555 California Street, 12th Floor
San Francisco, CA  94104
10   Telephone:   415.875.2300

11   *Additional Counsel listed on next page*

12   Attorneys for Plaintiff
YUGA LABS, INC.
13

14

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | |
| v. | **JOINT BRIEFING FOR YUGA LABS, INC.'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE OF ALLEGED THIRD-PARTY USE OF MARKS** |
| RYDER RIPPS, JEREMY CAHEN, | |
| Defendants. | Date:          June 16, 2023 |
| | Time:          8:00 a.m. |
| | Courtroom:  7A |
| | Judge:         Honorable John F. Walter |
| | Pretrial Conf. Date:  June 9, 2023 |
| | Trial Date:    June 27, 2023 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA  90401
   Telephone:   310.434.4300
4
5  DAVID Y. SILLERS (*admitted pro hac vice*)
   david@clarelocke.com
6  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
7  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA  22314
   Telephone:   202.628.7400
10
   Attorneys for Plaintiff
11 YUGA LABS, INC.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.  IDENTIFICATION OF THE MATTER IN DISPUTE ................................. 1

II. YUGA LABS' MEMORANDUM OF POINTS AND AUTHORITIES ................................................................................ 5

    A.  INTRODUCTION ................................................................... 5

    B.  RELEVANT BACKGROUND ................................................ 7

    C.  ARGUMENT ........................................................................... 8

        1.  Defendants Have No Evidence That Any Alleged Third-Party Use of Marks Is Relevant To The Issues To Be Tried. ................................................................. 8

        2.  Any Alleged Third-Party Use of Marks Lacks Foundation And Authentication. ............................... 11

        3.  Defendants' Evidence of Alleged Third-Party Use of Marks Is Inadmissible Hearsay................................. 13

        4.  Permitting Defendants To Present Evidence, Argument, Or Cross-Examine Witnesses About Alleged Third-Party Use of Marks Would Be Substantially More Prejudicial Than Probative....................... 14

    D.  CONCLUSION ..................................................................... 15

III. DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ............................................................................. 15

    A.  INTRODUCTION ................................................................. 15

    B.  BACKGROUND ................................................................... 16

    C.  EVIDENCE OF THIRD-PARTY USE OF MARKS IS RELEVANT TO DAMAGES ............................................. 18

    D.  EVIDENCE OF THIRD-PARTY USE OF MARKS DOES NOT CATEGORICALLY LACK FOUNDATION OR AUTHENTICITY. .................................................................. 19

# TABLE OF CONTENTS
## (Continued)

Page

E.   EVIDENCE OF THIRD-PARTY USE OF MARKS IS NOT CATEGORICALLY INADMISSIBLE HEARSAY .......................... 20

F.   EVIDENCE OF THIRD-PARTY USE OF MARKS IS NOT UNFAIRLY PREJUDICIAL. ............................................. 22

G.   CONCLUSION ..................................................................... 23

Fenwick & West LLP
Attorneys at Law

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adray v. Adry-Mart, Inc.*,
76 F.3d 984 (9th Cir. 1995) ........................................................................ 18

*Am. Cir. Breaker Corp. v. Oregon Breakers Inc.*,
406 F.3d 577 (9th Cir. 2005) ...................................................................... 11

*Biooriginal Food & Sci. Corp. v. Biotab Neutraceuticals, Inc.*,
No. 2:13-CV-05704, 2015 WL 10733384 (C.D. Cal. Aug. 24, 2015) ......... 15, 22

*BuzzBallz, L.L.C. v. BuzzBox Beverages, Inc.*,
No. ED14CV01725, 2016 WL 7496769 (C.D. Cal. Apr. 12, 2016) ........ 9, 10, 11

*Cook v. J & J Snack Foods Corp.*,
No. 2:09-CV-02297, 2010 WL 3910478 (E.D. Cal. Jan. 28, 2010) ........... 13, 21

*Eclipse Associates Ltd. v. Data General Corp.*,
894 F.2d 1114 (9th Cir. 1990) ...................................................................... 9

*Electropix v. Liberty Livewire Corp.*,
178 F. Supp. 2d 1125 (C.D. Cal. 2001) ......................................................... 9

*Elliott v. Google, Inc.*,
860 F.3d 1151 (9th Cir. 2017) ..................................................................... 10

*F.T.C. v. Neovi, Inc.*,
No. 06-CV-1952, 2011 WL 1465590 (S.D. Cal. Apr. 18, 2011) ..................... 10

*Icon Enters. Int'l, Inc. v. Am. Prod. Co.*,
No. 04-cv-1240, 2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) ...................... 9, 11

*Internet Specialties W., Inc. v. ISPWest*,
No. CV 05-3296, 2006 WL 4568796 (C.D. Cal. Sept. 19, 2006) ............... 12, 13

*Jennings v. Prudential Ins. Co. of Am.*,
No. CV-05-4620, 2006 WL 8434409 (C.D. Cal. Apr. 13, 2006) ............... 13, 21

*Mag Instrument, Inc. v. Dollar Tree Stores Inc.*,
No. CV-03-6215, 2005 WL 5957825 (C.D. Cal. Apr. 14, 2005) ...................... 8

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Mckee v. Audible*,
   17-cv-01941-GW, 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017).......................21

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
   331 F. Supp. 2d 1214 (C.D. Cal. 2004)........................................................18, 19

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
   No. 14-cv-04853-PSG, 2015 WL 9266497 (N.D. Cal. Dec. 18, 2015 )............18

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   213 F. Supp. 2d 1146 (C.D. Cal. 2002)...........................................................21

*Positive Ions, Inc. v. Ion Media Networks, Inc.*,
   No. 06-cv-04296-ABC-FFM, 2007 WL 9701734
   (C.D. Cal. Nov. 7, 2007) ..............................................................................19, 22

*S10 Ent. & Media LLC v. Samsung Elecs. Co.*,
   2023 WL 2090703 (C.D. Cal. Feb. 14, 2023)....................................................22

*San Diego Comic Convention v. Dan Farr Prods.*,
   No. 14-cv-1865, 2017 WL 4227000 (S.D. Cal. Sept. 22, 2017)..........................8

*Sienze v. Kutz*,
   No. 1:17-CV-0736, 2019 WL 1332184 (E.D. Cal. March 25, 2019) .................9

*STX, Inc. v. Bauer USA, Inc.*,
   No. C-96-1140, 1997 WL 337578 (N.D. Cal. June 5, 1997) ..............................9

*Wady v. Provident Life and Accident Ins. Co. of America*,
   216 F. Supp. 2d 1060 (C.D. Cal. 2002)............................................................12

**STATUTES AND RULES**

Fed. R. Evid. 401 ...........................................................................7, 8, 10, 16

Fed. R. Evid. 402 ........................................................................................*passim*

Fed. R. Evid. 403 ........................................................................................*passim*

Fed. R. Evid. 602 ........................................................................................*passim*

Fed. R. Evid. 801 .................................................................................7, 13

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

Fed. R. Evid. 802 ........................................................................................... 7, 13

Fed. R. Evid. 901 ............................................................................. 7, 11, 12, 16

Fed. R. Evid. 902 ................................................................................. 7, 11, 12

L.R. 16-11.2 ............................................................................................................ 2

L.R. 32-1 .............................................................................................................. 2

**OTHER AUTHORITIES**

1 Jerome Gilson, *Trademark Protection and Practice*, § 4.05 [5] (2004) .............. 12

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.    IDENTIFICATION OF THE MATTER IN DISPUTE

Plaintiff Yuga Labs, Inc. ("Yuga Labs") seeks an *in limine* order that precludes Defendants Ryder Ripps and Jeremy Cahen ("Defendants") from offering any evidence or argument regarding alleged third-party use of the BAYC Marks,[1] or similar marks, and any purported effect of these alleged third-party uses on Yuga Labs' ownership of its trademarks or their strength.  Defendants have continued to put forth such evidence and argument even after this Court has held them to be irrelevant to the issues in this case.  *See* Order on Summary Judgment (Dkt. 225) ("Order") at 10.

These items appear in Defendants' pre-trial evidentiary disclosures and should be excluded from trial, including any similar evidence or argument on the same subject and not yet disclosed by Defendants:

| Defendants' Exhibits[2] |
| --- |
| JTX-219; JTX-234; JTX-235; JTX-236; JTX-237; JTX-240; JTX-241; JTX-242; JTX-259; JTX-263; JTX-264; JTX-281; JTX-282; JTX-283; JTX-284; JTX-285; JTX-286; JTX-287; JTX-288; JTX-289; JTX-290; JTX-291; JTX-292; JTX-293; JTX-294; JTX-295; JTX-304; JTX-403; JTX-404; JTX-405; JTX-406; JTX-407; JTX-408; JTX-409; JTX-410; JTX-411; JTX-412; JTX-413; JTX-414; JTX-317; JTX-318; JTX-319; JTX-320; JTX-2044; JTX-2046; JTX-2047; JTX-2048; JTX-2049; JTX-2050; JTX-2051; JTX-2052; JTX-2053; JTX-2054; JTX-2055; JTX-2056; JTX-2057; JTX-2058; JTX-2059; JTX-2060; JTX-2061; JTX-2062; JTX-2063; JTX-2064; JTX-2065; JTX-2066; JTX-2067; JTX-2068; JTX-2069; JTX-2070; JTX-2071; JTX-2072; JTX-2073; JTX-2074; JTX-2075; JTX-2076; JTX-2077; JTX-2078; JTX-2079; JTX-2080; JTX-2081; JTX-2082; JTX-2083; JTX- |

[1] The BAYC Marks are BORED APE YACHT CLUB, BAYC, BORED APE, APE, the BAYC Logo, the BAYC BORED APE YACHT CLUB Logo, and the Ape Skull Logo.

[2] Declaration of Kimberly Culp in support of Yuga Labs' motion *in limine* No. 3 ("Culp Decl.") Ex. 1.

FENWICK & WEST LLP
ATTORNEYS AT LAW

| 2084; JTX-2134; JTX-2138; JTX-2212; JTX-2213; JTX-2214; JTX-2215; JTX-2216; JTX-2217; JTX-2218; JTX-2219; JTX-2220; JTX-2221; JTX-2222; JTX-2223; JTX-2224; JTX-2225; JTX-2226; JTX-2241; JTX-2243; JTX-2244; JTX-2245; JTX-2246; JTX-2247; JTX-2280; JTX-2281; JTX-2282; JTX-2284; JTX-2287; JTX-2289; JTX-2291; JTX-2292; JTX-2293; JTX-2319; JTX-2339; JTX-2340; JTX-2341; JTX-2342; JTX-2343; JTX-2344; JTX-2345; JTX-2346; JTX-2347; JTX-2348; JTX-2349; JTX-2350; JTX-2351; JTX-2352; JTX-2353; JTX-2354; JTX-2355; JTX-2356; JTX-2357; JTX-2358; JTX-2359; JTX-2360; JTX-2361; JTX-2362; JTX-2363; JTX-2364; JTX-2365; JTX-2366; JTX-2367; JTX-2368; JTX-2369; JTX-2370; JTX-2371; JTX-2372; JTX-2373; JTX-2374; JTX-2375; JTX-2376; JTX-2377; JTX-2378; JTX-2379; JTX-2380; JTX-2381; JTX-2382; JTX-2383; JTX-2384; JTX-2385; JTX-2386; JTX-2387; JTX-2388; JTX-2389; JTX-2390; JTX-2391; JTX-2392; JTX-2393; JTX-2394; JTX-2395; JTX-2396; JTX-2397; JTX-2398; JTX-2399; JTX-2400; JTX-2401; JTX-2402; JTX-2403; JTX-2404; JTX-2405; JTX-2406; JTX-2407; JTX-2408; JTX-2409; JTX-2410; JTX-2411;JTX-2412; JTX-2413; JTX-2414; JTX-2415; JTX-2416; JTX-2417; JTX-2418; JTX-2419; JTX-2420; JTX-2421; JTX-2422; JTX-2423; JTX-2424; JTX-2425; JTX-2426; JTX-2427; JTX-2428 | | |
|---|---|---|
| **Defendants' Deposition Designations[3]** | | |
| Wylie Aronow | 137:19–20, 23–25; 138:1; 169:3–5, 7, 12–14, 17–25; 170:1–3, 6–10, 13; 171:9–21, 24–25; 174:17, 20–21; 175:6–8, 16–20; 176:5–17; 177:3–4, 6–17, 20–22; 180:23–25; 181:1–10, 14–25; | |

[3] Defendants' deposition designations that Yuga Labs seeks to exclude through this motion *in limine* are identified in Yuga Labs' portion of the Joint Motion as required by the Scheduling Order. Dkt. 57 at 20 ("The Joint Motion in Limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be inadmissible and/or prejudicial . . . ."). The original deposition transcripts will be lodged with the Court by June 6th, 2023 as required under the Local Rules. L.R. 32-1 ("The original deposition shall be lodged with the Clerk on or before the first day of a trial or at least ten (10) days before an evidentiary hearing unless required to be filed earlier under L.R. 16-11.2.").

| | |
|---|---|
| | 182:1–5, 8–24; 183:4–6, 19–22, 25; 184:1–3, 12–25; 185:1–11, 13–14, 23–25; 186:4–5, 8–12; 187:5–14, 17:25; 188:1–4, 7–25; 189:20–25; 190:1–7, 10–14, 17–20, 23–25; 191:1–3, 10–25; 192:1–2, 4, 7–16, 18–19, 22, 24–25; 193:1, 9–25; 195:4–18, 21–25; 196:1–3; 197:12–13, 16; 198:3–25; 199:1–6, 9–10, 12, 15–25; 200:1–5, 17–25; 201:1–17, 22–25; 202:3–6; 203:21–23; 204:1, 11–18, 23–25; 205:1–2, 4, 10; 209:1–11, 13–14; 211:20–22; 212:16–18; 220:8–14; 222:16–19; 226:5–8, 11 |
| Patrick Ehrlund | 37:1–11; 39:4–10, 13–15, 18–23; 40:1–11, 13–16, 22–24; 41:2–3, 5–7, 10–15, 18–19, 22–25; 42:2–8, 12–25; 43:4–7, 9–16, 20–25; 44:1–9, 13–16, 20–25; 45:4–9, 12–13, 16–22; 46:2–3; 48:15–24; 49:2–6, 8–23; 50:1–10, 14–19, 23–25; 51:13–25; 52:1–7, 10–14, 17–18; 53:10–25; 54:1–12, 15–19, 24–25; 55:1–2, 5–12, 15–16, 19–25; 56:1–2, 4–8, 11–15, 18–20, 24–25; 57:1–3, 7–11, 14–21, 23–25; 58:3–4; 59:1–21, 24–25; 60:2–3, 7–9, 12–14, 18–21, 25; 61:1–9, 12–24; 62:17–18, 21–25; 63:3–5, 9–14, 18–25; 64:3–10, 13–15, 18–25; 65:3–8, 12–20, 23–25; 66:1–6, 10–18, 21–25; 67:1–7, 10–16, 19–25; 68:1–3, 5–14, 16–25; 69:1–5, 8–16, 19–22, 25; 70:1–8, 11–16, 19–24; 71:4–23; 72:1–5, 8–12, 15–23; 73:4–8, 14–25; 74:3–4, 7–25; 75:1–2, 5–8, 12–14 |
| Nicole Muniz | 111:1–2, 5; 156:12–21; 157:1–8, 13–24; 158:1–5; 159:17–25; 160:1–13, 16–25; 161:1–4, 7–11, 15–19, 21–25; 162:1–8, 10–25; 163:16–25; 164:1, 3–25; 165:1–2, 5–9, 13–23, 25; 167:8–10, 13–15, 17–25; 168:1–5, 8–11, 13–19 |
| Greg Solano | 186:10–13, 15 |

Fenwick & West LLP
Attorneys at Law

| Defendants' Witness Disclosures[4] | |
|---|---|
| Nicole Muniz | "She will testify . . . about the topics designated in her deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |
| Greg Solano | "He will testify . . . about the topics designated in his deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |
| Wylie Aronow | "He will testify . . . about the topics designated in his deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |
| Kerem Atalay | "He will testify . . . about the topics designated in his deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |

[4] Culp Decl. Ex. 2.

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Patrick Ehrlund | "He will testify . . . about the topics designated in his deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |
|---|---|

On May 9, 2023, the parties met and conferred regarding their intended topics for motions *in limine*. Culp Decl. ¶ 4. Defendants proclaimed, over Yuga Labs' objections and in spite of this Court's prior findings, that they plan to present evidence and argument regarding alleged third-party use of the BAYC Marks. *Id.*

This case is limited and straightforward. The only issues that remain are the amount of Yuga Labs' monetary recovery and whether Defendants' false advertising is actionable. Any evidence or argument that Defendants would proffer regarding alleged third-party use of the BAYC Marks is irrelevant to these issues, lacks foundation and authentication, is inadmissible hearsay, and would be more prejudicial than probative for any issue at trial. Accordingly, Yuga Labs requests an *in limine* order to preclude Defendants from arguing or offering, or seeking to elicit, testimonial or documentary evidence relating to alleged third-party use of the BAYC Marks, or similar marks, including but not limited to those items already disclosed by Defendants on this issue.

## II. YUGA LABS' MEMORANDUM OF POINTS AND AUTHORITIES

### A. INTRODUCTION

As this Court has already affirmed, Yuga Labs owns the BAYC Marks, and those marks are valid and protectable. *See* Order at 6-10. Despite this Court's clear order, Defendants' pre-trial disclosures reveal their transparent attempt to conduct a sideshow into "unquestionably meritless" arguments in the hopes of reducing or avoiding accountability for their infringement. *Id.* at 10. Given the limited set of

FENWICK & WEST LLP
ATTORNEYS AT LAW

issues to be heard at trial, Defendants aim to present evidence of irrelevant issues that is likely to confuse the jury and prejudice Yuga Labs by forcing it to waste precious time during the three-day trial to correct those distractions.

Defendants' intentions come as no surprise, as throughout this case, Defendants have offered unsubstantiated theories questioning Yuga Labs' ownership and enforcement of the BAYC Marks in early filings, depositions, and now with more than 200 exhibits in pre-trial filings that attempt to introduce alleged third-party uses of the BAYC Marks.  All of this is Defendants' attempt to misdirect the factfinder from Defendants' blatant infringement—an issue this Court has already confirmed—by injecting their own allegations of claimed infringing uses.

Despite Defendants' false rhetoric, they have failed to produce any evidence that any alleged third party *actually uses* the marks in commerce.  Defendants' proffered evidence ***only*** shows unknown and unidentified third-party uses. Moreover, none of these alleged uses bear on the remaining issues for trial—namely, the amount of harm caused by Defendants' infringement, and whether Defendants are liable for false advertising.  For example, at issue is the harm caused by Defendants promoting themselves as the number one selling NFT in the market; not the promotions of any other alleged user.  Similarly, at issue is the harm caused by Defendants intentionally confusing the likes of reputable news outlets, such as Bloomberg, into thinking they were another version of Yuga Labs' successful products; not whether any other alleged user has caused confusion at some point. Thus, any evidence or argument by Defendants regarding their allegations of third-party use is inadmissible as irrelevant.

Further, any evidence or argument by Defendants regarding these alleged third-party uses is inadmissible as lacking foundation and authentication.  Indeed, during discovery, Defendants did not issue any subpoena to or take a single deposition from any of these alleged third parties.  Accordingly, Defendants cannot point to anyone at trial who can testify accurately and with personal knowledge as to

FENWICK & WEST LLP
ATTORNEYS AT LAW

these alleged third-party uses. Even more, Defendants have no expert witness testimony to testify as to the impact, or lack thereof, of any of these alleged third-party uses. In fact, Defendants offer no evidence of any market impact by these alleged third-party uses at all.

Even ignoring Defendants' irrelevance, foundation, and authentication issues, Defendants' exhibits—webpage printouts—are inadmissible hearsay as they are out of court statements offered for the truth of the matter asserted. That is, they are intended to *prove* that third parties used the BAYC Marks and that the use was in commerce in a way that impacted Yuga Labs.

In sum, Defendants' supposed evidence of alleged third-party use of the BAYC Marks is irrelevant (*see* Fed. R. Evid. 401, 402), lacking in foundation and authentication (*see* Fed. R. Evid. 602, 901, 902), and inadmissible hearsay (*see* Fed. R. Evid. 801, 802). Permitting Defendants to present such evidence or argument will only waste this Court's time and confuse the finder of fact through an issue that bears no relevance (*see* Fed. R. Evid. 403). Defendants' attempt to hide their own infringement behind their own, unsupported allegations of other third-party uses must be shut down. The alleged acts of others cannot excuse Defendants' own infringement, and this Court should preclude Defendants from introducing such evidence or argument at trial.

## B.   RELEVANT BACKGROUND

Yuga Labs filed this litigation on June 24, 2022. Dkt. No. 1. The parties have engaged in active discovery throughout this litigation, and fact discovery closed on April 3, 2023. Dkt. 57. During Defendants' depositions of Yuga Labs' witnesses, Defendants repeatedly referenced various third parties that Defendants claimed were using the BAYC Marks or similar marks. *See* Culp Decl. ¶ 6. Yuga Labs' witnesses had no personal knowledge of many of these alleged third-party uses. *See id.* Defendants also did not subpoena or depose any of these third parties. *See id.* Still,

FENWICK & WEST LLP
ATTORNEYS AT LAW

Defendants pointed to these unknown third-parties as an excuse that Defendants should be allowed to intentionally infringe on Yuga Labs' trademarks.

Defendants also submitted exhibits of alleged third-party uses of Yuga Labs' marks as part of their opposition to Yuga Labs' motion for summary judgment and in an effort to claim that Yuga Labs abandoned its rights in the BAYC Marks. Dkt. 163 at 7. This Court rightfully (and wholly) rejected Defendants' arguments. Order at 10 ("despite Defendants' attempt to argue abandonment through third party use or failure to police, these arguments are unquestionably meritless.") (quoting *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865, 2017 WL 4227000, at *12 (S.D. Cal. Sept. 22, 2017)). Accordingly, this Court concluded that Yuga Labs owns the BAYC Marks and those marks are valid and protectable. Order at 6-10.

Despite this Court's order, Defendants' trial exhibit list once again contains over 200 documents regarding alleged third-party use of the BAYC Marks or similar marks to relitigate the same issue. *See* Culp Decl. Ex. 1.

## C.   ARGUMENT

### 1.   Defendants Have No Evidence That Any Alleged Third-Party Use of Marks Is Relevant To The Issues To Be Tried.

Contrary to Defendants' allegations, any alleged third-party use of the BAYC marks, or similar marks, is irrelevant. "Relevant evidence" is evidence that tends to make the existence of any "fact that is of consequence" to the claims in the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

As this Court unequivocally found, "despite Defendants' attempt to argue abandonment through third party use or failure to police, these arguments are unquestionably meritless." Order at 10 (quoting *San Diego Comic Convention*, 2017 WL 4227000).[5] Indeed, the Ninth Circuit and district courts within the Ninth Circuit

---

[5] Courts in the Ninth Circuit have routinely excluded evidence concerning issues resolved on summary judgment. *See*, *e.g.*, *Mag Instrument, Inc. v. Dollar Tree Stores*

FENWICK & WEST LLP
ATTORNEYS AT LAW

have made clear that third-party use of a mark is irrelevant in a suit against a particular infringer.  *See*, *e.g.*, *Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990) (affirming district court's exclusion of evidence of third-party use of plaintiff's mark because "[e]vidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law"); *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1130 (C.D. Cal. 2001) (rejecting extensive third-party use of the allegedly infringed mark as irrelevant and weak in any event); *STX, Inc. v. Bauer USA, Inc.*, No. C-96-1140, 1997 WL 337578, at *13 (N.D. Cal. June 5, 1997) ("[E]vidence of other potential infringers is 'irrelevant' to a suit against a particular infringer.").  Thus, Defendants' evidence of alleged third-party uses of marks is irrelevant to this case and trial, and the Court should reject Defendants' attempt to introduce it.

Additionally, Defendants cannot prove that any of the alleged third-party marks are relevant because they cannot demonstrate their *actual use* in commerce.  *See* *BuzzBallz, L.L.C. v. BuzzBox Beverages, Inc.*, No. ED14CV01725, 2016 WL 7496769, at *3 (C.D. Cal. Apr. 12, 2016) ("[t]o show a mark is relevant to the confusion issue, a party must also demonstrate it was '*actually used*' in commerce") (emphases added).  In other words, a third-party mark's mere existence is irrelevant, and courts in this district preclude defendants facing a trademark infringement lawsuit from introducing evidence regarding third parties absent proof that they are *actually using* a similar mark in commerce.  *See*, *e.g.*, *Icon Enters. Int'l, Inc. v. Am. Prod. Co.*, No. 04-cv-1240, 2004 WL 5644805, at *30 (C.D. Cal. Oct. 7, 2004) (excluding evidence of third-party marks in an advertisement because "evidence of third-party use is not admissible unless the proponent can provide evidence that the

*Inc.*, No. CV-03-6215, 2005 WL 5957825, at *2 (C.D. Cal. Apr. 14, 2005) (evidence that concerns an argument mooted by summary adjudication is excluded); *Sienze v. Kutz*, No. 1:17-CV-0736, 2019 WL 1332184, at *3 (E.D. Cal. March 25, 2019) ("Defendants are correct that evidence concerning issues resolved at summary judgment is generally not relevant and should be excluded.").

trademarks were *actually used* by third parties, that they were well promoted or that they were recognized by consumers.") (cleaned up) (emphases added); *BuzzBallz, 2016 WL 7496769, at *3* (excluding evidence of third-party marks because defendants "presented no evidence showing *actual use*.") (emphases added).

Here, Defendants seek to introduce irrelevant evidence—*i.e.*, screenshots of various webpages of alleged third-party use of marks—but without any proof or witness who can testify that any of these third parties *actually used* the marks in commerce. Indeed, courts in this district have held screenshots of webpages to be insufficient to show actual use in commerce. *See Buzzballz, 2016 WL 7496769, at *3* ("Defendants must submit more than the homepage of a company's website and lay a foundation for it to show each Mark is actually used in commerce."). Nor does the volume of Defendants' over-200 documents regarding alleged third-party use of marks make them any more relevant. As the Ninth Circuit has said, a "sheer quantity of irrelevant evidence," which is "largely inapposite to the relevant inquiry," is meaningless. *Elliott v. Google, Inc.*, 860 F.3d 1151, 1159, 1162 (9th Cir. 2017); *see also F.T.C. v. Neovi, Inc.*, No. 06-CV-1952, 2011 WL 1465590, at *3 (S.D. Cal. Apr. 18, 2011) (precluding Defendants from "introducing into evidence . . . 'thousands of third-party webpages'" because they were irrelevant and thus inadmissible under FRE 401 and 402).

Further, Defendants' purported evidence is also irrelevant because they provide no evidence that the alleged third-party uses harmed or devalued Yuga Labs' BAYC Marks. Defendants **have no expert** who can offer a single moment of testimony, or offer a single shred of evidence, that the alleged third-party uses harmed Yuga Labs. Any attempt by Defendants to testify to this fact themselves would be no more than rank speculation. And any such speculative harm that Defendants attempt to conjure themselves pales in comparison to Defendants' established, intentional infringement of the BAYC Marks, which Yuga Labs has provided ample evidence showing caused actual harm.

1    Thus, without proper evidence of actual use or impact, Defendants have no

2    evidence that any alleged third-party use of the BAYC marks, or similar marks, is

3    relevant to the issues remaining in this case.  This Court should preclude Defendants

4    from arguing so based on inadmissible evidence.  *See* Fed. R. Evid. 402.

**2.    Any Alleged Third-Party Use of Marks Lacks Foundation And Authentication.**

7    Beyond the lack of relevance, Defendants cannot lay the proper foundation or

8    establish authentication as to any of their proffered evidence of alleged third-party

9    use of marks.  *See* Fed. R. Evid. 602, 901, 902.  For any third-party use to be

10   admissible, Defendants must "lay a foundation for it to show each Mark is actually

11   used in commerce." *Buzzballz*, 2016 WL 7496769, at *3; Fed. R. Evid. 602 ("A

12   witness may testify to a matter only if evidence is introduced sufficient to support a

13   finding that the witness has personal knowledge of the matter").  Indeed, evidence is

14   lacking in foundation when "Defendants cannot establish 1) when the [third-party]

15   began, 2) whether the word [] is actually used as a mark, 3) whether the [third-party]

16   sells products in the United States, or 4) how widespread its use of [the mark] is."

17   *Icon*, 2004 WL 5644805, at *29 (excluding evidence of third-party use).

18   Similar to the above, here Defendants have no proof or witness who can

19   establish any facts to lay a proper foundation for the alleged third-party uses.  Indeed,

20   Defendants did not subpoena or depose any of these third parties.  Culp Decl. ¶ 6.

21   And Defendants' proffered evidence only shows unknown and unidentified third-

22   party uses.  Thus, Defendants cannot point to anyone at trial who can prove that any

23   of the alleged uses are actually unauthorized.  Moreover, for all of Defendants'

24   proffered evidence of alleged third-party uses, Defendants cannot establish when the

25   use began, whether it was *actually used* as a mark (*see supra*), or how widespread

26   that use was.  *See Icon*, 2004 WL 5644805, at *29.  Nor can Defendants establish

27   whether the third-party uses are in the United States.  *See id.; see also Am. Cir.*

28   *Breaker Corp. v. Oregon Breakers Inc.*, 406 F.3d 577, 582 (9th Cir. 2005) ("Under

Fenwick & West LLP
Attorneys at Law

the territoriality principle, a 'trademark has a separate legal existence in each country and receives the protection afforded by the laws of that country.'") (citing 1 Jerome Gilson, *Trademark Protection and Practice*, § 4.05 [5] (2004)).

Additionally, Defendants' third-party webpages cannot be authenticated because no one can testify as to the accuracy of their contents. *See Internet Specialties W., Inc. v. ISPWest*, No. CV 05-3296, 2006 WL 4568796, at *2 (C.D. Cal. Sept. 19, 2006) (to authenticate third-party webpages "someone with knowledge of the accuracy of the contents of the internet print-outs must testify."). Again, because Defendants' proffered evidence only shows unknown and unidentified third-party uses, Defendants cannot point to anyone at trial who can verify the accuracy and truthfulness of any content Defendants proffer through the third-party webpages. Indeed, as this Court has repeatedly recognized, "It is now well recognized that '[a]nyone can put anything on the internet. No website is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation hackers can adulterate the content on any web-site from any location at any time. For these reasons, any evidence procured off the Internet is adequate for almost nothing." *Id.* at *1 (cleaned up) (granting in part motion *in limine* concerning third-party websites) (quoting *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1064 (C.D. Cal. 2002)). Thus, the unreliability of Defendants' evidence warrants exclusion.

Defendants hope that their own allegations of infringement by alleged third-party uses will be taken at face value. But because Defendants lack any proper foundation and cannot establish authentication, this Court should preclude Defendants from introducing any alleged third-party use of marks. *See* Fed. R. Evid. 602, 901, 902.

### 3. Defendants' Evidence of Alleged Third-Party Use of Marks Is Inadmissible Hearsay.

Likewise, Defendant's proffered evidence contains inadmissible hearsay for which no exception applies. *See* Fed. R. Evid. 801, 802.  This Court has made clear that "website printouts are hearsay, as they constitute out of court statements offered for the truth of the matters asserted therein." *Jennings v. Prudential Ins. Co. of Am.*, No. CV-05-4620, 2006 WL 8434409, at *4 (C.D. Cal. Apr. 13, 2006); *see also Cook v. J & J Snack Foods Corp.*, No. 2:09-CV-02297, 2010 WL 3910478, at *6 (E.D. Cal. Jan. 28, 2010) (printouts of websites showing third-party use are hearsay).

Here, Defendants' webpage printouts of alleged third-party use of marks are hearsay.  In particular, any attempt by Defendants to argue that the webpage printouts are admissible to support their unsubstantiated theories of abandonment or weakness in the BAYC Marks does not overcome their inadmissibility as hearsay.  As this Court has found:

> Defendant argues that the print outs of home pages are admissible to demonstrate that the parties are operating in a crowded field, thus diminishing the distinctiveness and protectability of plaintiff's mark. This argument is not well taken.  A crowded field of similar marks is only relevant if there are similar marks on similar goods.  Print outs of websites are not likely to demonstrate that the goods offered are similar, and to the extent that they do, *they are hearsay*.

*Internet Specialties West*, 2006 WL 4568796, at *2 (emphases added).

Accordingly, because Defendants' evidence of alleged third-party use of marks is hearsay, this Court should preclude Defendants from introducing it at trial. *See* Fed. R. Evid. 801, 802.

FENWICK & WEST LLP
ATTORNEYS AT LAW

4.      **Permitting Defendants To Present Evidence, Argument, Or Cross-Examine Witnesses About Alleged Third-Party Use of Marks Would Be Substantially More Prejudicial Than Probative.**

Assuming, *arguendo*, that there is some minimal relevance of these alleged third-party uses to the issues left to be tried (there is none), that Defendants could lay a proper foundation and establish authenticity to the proffered evidence (they cannot), *and* that they are not hearsay (they are hearsay), to permit Defendants to introduce such evidence would cause "unfair prejudice" to Yuga Labs, "confus[e] the issues," "mislead[] the jury," and cause "undue delay" and "wast[e] time" of the parties and this Court.  *See* Fed. R. Evid. 403.  Defendants' proffered evidence and arguments is a blatant attempt to hide their own infringement behind their allegations of other third-party uses.  This Court should prevent Defendants' spurious tactic to excuse Defendants' harmful conduct.

Without evidence of any actual use—including the length, reach, and consumer impact or harm from that use—the relevance of any alleged third-party use is minimal, if not non-existent.  Yet Yuga Labs would be forced to prepare its witnesses to address hundreds of alleged third-party uses.  And all the parties, as well as this Court, will be forced to steal time away from resolving the central issues at trial, and instead engage in multiple mini-trials to address Defendants' unsubstantiated arguments.  The parties would have to address extra issues regarding, for example:  (a) which alleged uses are in the United States; (b) whether the alleged use is still ongoing; (c) whether Yuga Labs ever authorized the alleged use; (d) whether the alleged use is actually of a similar mark, or whether it is different enough to be even more irrelevant; and (e) how many third-party uses would be sufficient to impact consumers and cause harm.  Yuga Labs would further be forced to dedicate time to present its evidence regarding all of its enforcement actions to successfully take down hundreds of unauthorized third-party uses.  These multiple mini-trials are highly wasteful in a three-day trial, especially where this Court has already found

FENWICK & WEST LLP
ATTORNEYS AT LAW

that Defendants intentionally infringed on Yuga Labs' trademarks.  *See Biooriginal
Food & Sci. Corp. v. Biotab Neutraceuticals, Inc.*, No. 2:13-CV-05704, 2015 WL
10733384, at *5 (C.D. Cal. Aug. 24, 2015) (granting motion *in limine* to exclude
evidence to avoid "a series of mini-trials on collateral matters that would be wasteful
of the Court's time.").

Thus, this Court should exclude Defendants' evidence or argument regarding
any alleged third-party use of marks because any probative value (there is none) is
substantially outweighed by undue prejudice against Yuga Labs.  *See* Fed. R. Evid.
403.

### D.    CONCLUSION

For the foregoing reasons, this Court should exclude any evidence or argument
by Defendants related to alleged third-party use of marks.

## III.    DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
### A.    INTRODUCTION

All five of Plaintiff Yuga Labs's ("Yuga") motions *in limine* share a common
theme: Yuga seeks to present the false narrative that Defendants' infringement was
solely motivated by financial gain, and solely responsible for Defendants' losses.
The truth is that the harms for which Yuga seeks damages are attributable to factors
other than infringement, confusion, or false advertising: they are attributable to (1)
backlash against Yuga when it was called out (by Defendants and others) for using
racist and other hateful imagery in connection with its BAYC brand, and (2) Yuga's
own decision to freely allow widespread use of its trademarks by others.  The truth
is that the Defendants genuinely believed in their artistic criticisms of Yuga's content
as racist and alt-right-inspired, and that intent is directly relevant to the availability
of disgorgement damages and any claim to enhanced damages as a result of willful
infringement.  Thus, contrary to Yuga's suggestions, Defendants do not intend to
introduce this evidence contradicting Yuga's preferred narrative for any improper

FENWICK & WEST LLP
ATTORNEYS AT LAW

purpose; rather, Defendants must be permitted to introduce evidence that Yuga's damages were the result of factors other than Defendants' infringement, and that the Defendants' intent was to criticize Yuga, not to cause confusion.

Defendants seek to introduce evidence regarding third-party use of marks to show that not all of the injuries that Yuga claims to have suffered are attributable to Defendants' use of Yuga's marks or alleged false advertising. There is significant evidence of third parties using the marks that Yuga asserted in this case, and Yuga elected to allow that marketplace activity to go on unchecked. As a result, any marketplace confusion resulting from Defendants' use of Plaintiff's marks is not the *only* source of harm to Yuga. Defendants should be permitted to introduce evidence concerning third-party use of the marks at issue to allow for calculation of damages that accounts for market conditions.

There are no evidentiary barriers that warrant the wholesale exclusion of evidence of third-party use that Yuga seeks. This evidence is admissible under Rule 401 and Rule 402 because it is relevant to damages. *See* Fed. R. Evid. 401; Fed. R. Evid. 402. Foundation and authentication can be established by witness testimony at trial (and for several instances of third-party use, is well established by existing deposition testimony). *See* Fed. R. Evid. 602; Fed. R. Evid. 901. Nor do Yuga's hearsay objections have any merit (much less counsel in favor of wholesale exclusion of all evidence of third-party use, rather than a case-by-case assessment of hearsay issues for particular exhibits). Finally, Yuga has failed to explain how it would be unfairly prejudiced by the admission of relevant evidence of third-party use in the market, as Rule 403 requires. *See* Fed. R. Evid. 403. Yuga's motion should therefore be denied.

## B.    BACKGROUND

Thousands of third parties are using the asserted marks to market and promote brands unrelated to Yuga—including over 9,000 competing NFT collections that use the BAYC, BORED APE, or APE marks asserted in this litigation. A few examples

FENWICK & WEST LLP
ATTORNEYS AT LAW

third-party brands are (1) HALF BAYCD, which uses the BAYC mark and the Ape Skull logo, (2) Bored Coffee, which displays the BAYC mark and the Ape Skull logo, (3) a notebook brand displaying BORED APE YACHT CLUB, BORED APE, BAYC, and the Ape Skull logo, and (4) Bored & Hungry, which uses the BA YC BORED APE YACHT CLUB mark.

 

 

Tompros Decl. Exs. 1-4.  These are only four examples of hundreds of brands and competing NFT collections currently using the marks to sell products unrelated to Yuga.  Tompros Dec. Ex. 5.

During this litigation, multiple deponents testified about this third-party use, confirming the authenticity of documents, laying foundation, and confirming that these competing brands do in fact operate in the marketplace and have no affiliation with Yuga.  These deponents include Yuga's own corporate representative and ex-CEO (Nicole Muniz), Yuga's co-founders (Greg Solano and Wylie Aronow), and Yuga's ex-Chief Creative Officer (Patrick Ehrlund).  Moreover, Defendants themselves and multiple third parties are active market participants (including as purchasers of many third-party products) and, as a result, have personal knowledge of these market activities, websites, and promotional materials.  There is therefore ample documentary and testimonial evidence both already in the record and anticipated at trial concerning third-party use of Yuga's marks.

## C.   EVIDENCE OF THIRD-PARTY USE OF MARKS IS RELEVANT TO DAMAGES

The widespread third-party use of the asserted marks in commerce is relevant to Yuga's damages claim because Yuga improperly seeks to recover from Defendants the damage that those third parties caused to the value of the marks.  The Ninth Circuit has confirmed that an award of damages should not include harm arising from activities unrelated to infringement.  *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988-89 (9th Cir. 1995) (holding the award should "restore the value plaintiff's trademark has lost ***due to defendants' infringement***" (emphasis added)).  Here, third-party use is relevant to Yuga's asserted claim to its lost profits, and to the alleged harm to the overall value of Yuga's brand in the marketplace.  Defendants accordingly seek to use this evidence at trial to show how public market activity had already significantly diminished the value of the asserted marks, refuting Yuga's excessive and unsupported damages allegations.  *Cf. Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224 (C.D. Cal. 2004) ("[E]ven an arbitrary mark may be classified as weak where there has been extensive third party use of similar marks on similar goods."); *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-

FENWICK & WEST LLP
ATTORNEYS AT LAW

04853-PSG,  2015 WL 9266497, at *5 (N.D. Cal. Dec. 18, 2015 ) ("Third-party use of similar marks may bear on the strength of Novadaq's marks.").

Yuga argues that *all* evidence of third-party use is irrelevant for *all* issues simply because the Court has concluded that Yuga's marks are valid and enforceable. But Defendants do not intend to introduce third-party use of the mark for purposes of proving abandonment (an issue on which the Court has already ruled).  Rather, Defendants will rely on third-party use to show the ***extent*** of Yuga's alleged harm that is unrelated to the Defendants' activities.  It is well-accepted that this kind of third-party use is admissible at trial to show the diminished value of a mark.  *See*, *e.g.*, *Positive Ions, Inc. v. Ion Media Networks, Inc.*, No. 06-cv-04296-ABC-FFM, 2007 WL 9701734, at *10 (C.D. Cal. Nov. 7, 2007) ("[E]vidence of third-party uses of the mark 'ion' in internet domain names consisting of the formula 'www.ion[].[]" is relevant and admissible."); *see also Moose Creek*, 331 F. Supp. 2d at 1224.

## D.   EVIDENCE OF THIRD-PARTY USE OF MARKS DOES NOT CATEGORICALLY LACK FOUNDATION OR AUTHENTICITY.

Defendants will lay sufficient foundation for the introduction of evidence regarding third-party use of the marks.  Under Rule 602, any witness with personal knowledge can lay foundation for evidence.  *See* Fed. R. Evid. 602.  Defendants, who are themselves market participants, have personal knowledge regarding third-party use of the asserted marks in the United States (including the purchase of more than three dozen third-party products in Southern California).  Accordingly, Defendants can lay foundation for testimony concerning at least some third-party public commercial activity.  Contrary to Yuga's assertions, Defendants need not bring in third parties to testify about public market activity—participants in the public market (like Defendants) can testify about activity that they have personally witnessed in the market.

Moreover, Yuga's own employees are familiar with Yuga's marks, Yuga's authorizations for third-party use, and public market activity relating to their marks.

Fenwick & West LLP
Attorneys at Law

For example, Yuga's co-founder Wyle Aronow testified extensively about multiple third parties using Yuga's marks. Tompros Decl. Ex. 6 at 176:9-177:23. Similarly, Patrick Ehrlund, Yuga's former Chief Creative Officer, identified third-party use of Yuga's marks in the "Bored Ape Tron Club" and "Mutant Ape Tron Club" NFT collections.  Tompros Decl. Ex. 7 at 63:19-65:12.  Mr. Aronow and Mr. Ehrlund authenticated and laid sufficient foundation for website screenshots depicting some of those uses—but, even if they had not, their ***testimony*** about that third-party use would be admissible independent of any specific exhibit for which Yuga plans to press any authenticity objection.

Yuga also improperly argues that all the documentary evidence of third-party use is categorically inauthentic—despite the fact that this evidence takes several different forms.  Some of the exhibits involve screenshots of websites, others involve images, some are documents created by the parties, and some are physical items. Yuga's baseless speculation that some of these documents and objects may not be authentic is no basis for wholesale exclusion of the entire topic of third-party use.  If Yuga has a genuine and good-faith authenticity objection (which would be surprising), it should press that objection at trial on an exhibit-by-exhibit basis

### E.    EVIDENCE OF THIRD-PARTY USE OF MARKS IS NOT CATEGORICALLY INADMISSIBLE HEARSAY

Defendants seek to introduce a wide range of evidence of third-party use that is not properly subject to a hearsay objection, including physical products that were sold in the United States and Defendants' own testimony about personal interactions with third-party marketing.  Yuga makes no argument as to why this evidence is hearsay.  And, in fact, it cannot be, because it is not an out-of-court statement offered to prove the matter asserted.  Thus, Yuga's argument that the entire category of third-party use should be excluded as hearsay is meritless.

Yuga also incorrectly argues that screenshots and website printouts are categorically hearsay regardless of what the documents include and regardless of the

FENWICK & WEST LLP
ATTORNEYS AT LAW

purpose for which they are offered.  To the contrary, screenshots and website printouts are routinely found not to be hearsay when used to show that images and text can be found on the website.  *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) ("To the extent these images and text are being introduced to show the images and text found on the websites, they are not statements at all—and thus fall outside the ambit of the hearsay rule."); *Mckee v. Audible*, 17-cv-01941-GW, 2017 WL 7388530, at *4 (C.D. Cal. Oct. 26, 2017) ("Plaintiffs' hearsay objections lack merit because the screenshots are not hearsay.").

Yuga misreads several cases in an attempt to side-step this well-established practice of using screenshots and website printouts to show that certain images and text can be found on the internet.  For example, Yuga cites *Jennings*, but that case involved screenshots of written statements regarding Pepperdine University's affiliation with a church and were being offered ***to prove that affiliation***.  *Jennings v. Prudential Ins. Co. of Am.*, 05-cv-04620-CBM, 2006 WL 8434409, at *4 (C.D. Cal. Apr. 13, 2006).  Here, Defendants do not intend to use any screenshots or website printout to prove that any statement within them is true.  Rather, Defendants intend to show that certain text and images—including the asserted BAYC marks—appeared on specific websites or marketing materials.  Yuga also cites to *Cook*, which held that printout of websites offered to prove similarity of goods was hearsay.  *Cook v. J & J Snack Foods Corp.*, 2010 WL 3910478, at *6 (E.D. Cal. Jan. 28, 2010).  But again, Defendants do not intend to use printouts of website to show similarity of goods.  Rather, Defendants only seek to show that text and images exist on public websites.  *See*, *e.g.*, *Perfect 10, Inc.*, 213 F. Supp. 2d at 1155.  At minimum, Yuga's hearsay objections should be addressed on a case-by-case basis, depending on the particular website at issue and the use to which it is being put.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**F.    EVIDENCE OF THIRD-PARTY USE OF MARKS IS NOT UNFAIRLY PREJUDICIAL.**

Yuga has failed to explain how the introduction of relevant evidence concerning third-party use would cause it unfair prejudice.  "Unfair" prejudice signifies that the evidence has an "undue tendency to suggest to a jury decision based on an improper basis, usually an emotional one." *S10 Ent. & Media LLC v. Samsung Elecs. Co.*, 2023 WL 2090703, at *2 (C.D. Cal. Feb. 14, 2023).  Evidence of third-party use is not "unfair" and does not encourage a decision on any "improper" or "emotional" basis.  Rather, third-party use is directly relevant to assessing the value of Yuga's marks to quantify damages.  And, in fact, third-party use of marks is regularly admissible evidence in trademark infringement cases, precluding Yuga's unsupported accusation of unfair prejudice.  *See*, *e.g.*, *Positive Ions*, 2007 WL 9701734, at *10.

Moreover, not only does Rule 403 require for prejudice to be "unfair," it also requires the unfair prejudice to "substantially" outweigh the probative value of the evidence.  Fed. R. Evid. 403.  Here, Yuga has relied on its own determination that evidence of third-party use of the marks is "minimally" relevant to its damages claim.  But it is for the jury, not Yuga, to decide whether to give minimal weight to facts directly relating to the diminished value of the marks in the marketplace.

Yuga also perplexingly argues that offering evidence of third-party use to diminish damages would result in a "mini-trial" of an unrelated issues.  But determining damages is a primary focus of this trial.  And Yuga's citation to *Bioriginal* does not nothing to address this flaw in Yuga's argument.  *Bioriginal* was a breach of contract case in which the court declined to admit evidence of a defendant's prior payment disputes with nonparties.  *Biooriginal Food & Sci. Corp. v. Biotab Neutraceuticals, Inc.*, No. 2:13-CV-05704, 2015 WL 10733384, at *5 (C.D. Cal. Aug. 24, 2015).  In that case, unrelated prior payment disputes had no bearing on the alleged breach of contract at issue, and therefore threatened to be wasteful of

FENWICK & WEST LLP
ATTORNEYS AT LAW

the court's time.  Here, Defendants seek to offer evidence of third-party use that directly undermines Yuga's excessive damages allegations—evidence which is directly relevant to rebut Yuga's damages claim

### G.    CONCLUSION

Defendants respectfully request that Yuga's motion *in limine* No. 3 be denied.

Dated:  May 25, 2023                    FENWICK & WEST LLP


                                        By:   /s/ Kimberly Culp
                                             Kimberly Culp
                                        Attorneys for Plaintiff
                                        YUGA LABS, INC.

Dated:  May 25, 2023                    WILMER CUTLER PICKERING HALE AND DORR LLP


                                        By:   /s/ Louis W. Tompros
                                             Louis W. Tompros
                                        Attorneys for Defendants
                                        RYDER RIPPS AND JEREMY CAHEN


### ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Kimberly Culp attests that concurrence in the filing of this document has been obtained from Louis W. Tompros.


                                        /s/ Kimberly Culp
                                        Kimberly Culp

FENWICK & WEST LLP
ATTORNEYS AT LAW