ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS AND JEREMY CAHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**JOINT BRIEFING FOR YUGA LABS, INC.'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE ARGUMENT THAT YUGA LABS HARASSED DEFENDANTS**<br><br>Date: June 16, 2023<br>Time: 8:00 a.m.<br>Courtroom: 7A<br>Judge: Honorable John F. Walter<br><br>Pretrial Conf. Date: June 9, 2023<br>Trial Date: June 27, 2023 |

1 MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
2 FENWICK & WEST LLP
228 Santa Monica Boulevard
3 Santa Monica, CA  90401
Telephone:   310.434.4300
4

5 DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
6 KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
7 MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
8 CLARE LOCKE LLP
10 Prince Street
9 Alexandria, VA  22314
Telephone:   202.628.7400
10

11 Attorneys for Plaintiff
YUGA LABS, INC.

**TABLE OF CONTENTS**

Page

I. IDENTIFICATION OF THE MATTER IN DISPUTE .................................. 1

II. YUGA LABS' MEMORANDUM OF POINTS AND AUTHORITIES ................................................................................................ 2

    A. INTRODUCTION ................................................................................. 2

    B. RELEVANT BACKGROUND ............................................................. 3

    C. EVIDENCE AND ARGUMENTS DESIGNED TO PORTRAY YUGA LABS AS HARASSING OR SEEKING TO SILENCE DEFENDANTS OR THEIR ASSOCIATES IS NOT RELEVANT AND IS PREJUDICIAL ................................. 5

        1. Whether Any Defendant or Witness Feels Burdened by the Lawsuit or Believes Yuga Labs Is Pursuing it to Silence Defendants (It Is Not) Is Irrelevant to Any Issue in Dispute ............................................................................ 5

        2. Evidence or Argument that Any Defendant or Witness Feels Burdened by the Lawsuit or Believes Yuga Labs Is Pursuing it to Silence Defendants (It Is Not) Is Unduly Prejudicial to Yuga Labs ............................................... 5

    D. CONCLUSION ..................................................................................... 7

III. DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ................................................................................................ 8

    A. INTRODUCTION ................................................................................. 8

    B. BACKGROUND .................................................................................... 9

    C. YUGA'S MOTION IN LIMINE NO. 4 WAS FILED IN VIOLATION OF THIS COURT'S SCHEDULING ORDER ........... 11

    D. YUGA'S SELECTIVE ENFORCEMENT OF ITS MARKS IS RELEVANT TO DAMAGES ..................................................... 12

**TABLE OF CONTENTS**
**(Continued)**

| | Page |
|---|---|
| E. NO UNDUE PREJUDICE WILL ARISE FROM EVIDENCE SHOWING THAT YUGA HAS PURSUED ONLY DEFENDANTS | 13 |
| F. CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*,
  No. 2:13-CV-05704-CAS(Ex), 2015 WL 10733384
  (C.D. Cal. Aug. 24, 2015) ................................................................................... 7

*Camper v. State Farm Fire and Casualty Co.*,
  No. 3:20-cv-5283-TLF, 2021 WL 5205608 (W.D. Wash. July 15, 2021) .......... 6

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *overruled on other grounds*,
  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) .................................................... 5

*Ingle v. Circuit City*,
  No. 99-cv-1297-RHW, 2006 WL 6086293 (S.D. Cal. Feb. 6, 2006) .................. 6

*Marez v. Bassett*,
  No. CV 06–0118 ABC, 2011 WL 13213813 (C.D. Cal. Oct. 3, 2011) ............... 7

*McClure v. State Farm Life Ins. Co.*,
  341 F.R.D. 242 (D. Ariz. 2022) .......................................................................... 6

**STATUTES AND RULES**

Fed. R. Evid. 401 ............................................................................... 2, 3, 5, 12

Fed. R. Evid. 402 ...................................................................................... 2, 3, 5

Fed. R. Evid. 403 ............................................................................................. *passim*

L.R. 16-11.2 ..................................................................................................... 1

L.R. 32-1 .......................................................................................................... 1

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I. IDENTIFICATION OF THE MATTER IN DISPUTE

Plaintiff Yuga Labs, Inc. ("Yuga Labs") moves *in limine* for an order to preclude Defendants Ryder Ripps and Jeremy Cahen ("Defendants") from presenting argument or offering, or seeking to elicit, evidence that Yuga Labs harassed Defendants Ryder Ripps, Jeremy Cahen, or others, such as by filing this lawsuit or pursuing discovery related to this lawsuit, or otherwise sought to "silence" Defendants through or in connection with this lawsuit. These items appear in Defendants' pre-trial evidentiary disclosures and should be excluded from trial, including any similar evidence or argument on the same subject and not yet disclosed by Defendants:

| Defendants' Exhibits[1] | |
|---|---|
| JTX-219, 257, 262, 2005, 2200, 2320, 2329, 2483, 2491, 2498, 2572, and 2671 | |
| **Defendants' Deposition Designations[2]** | |
| Wylie Aronow | 148:1–3, 5–6 |
| Kerem Atalay | 170:12–19, 23–25; 171:1–19, 23–25; 172:19–21 |
| Nicole Muniz & Yuga Labs | 99:25; 100:1–3; 154:24–25; 155:1, 4–13, 16; 165:22–23, 25; 167:8–10, 13–15 |
| Thomas Lehman | 92:8–25; 93:3–19; 94:6–25; 95:1–13; 98:9–25; 99:1–25; 100:1–17; 108:14–17, 24–25; 109:1–20; 118:2–15 |

---

[1] Declaration of Kimberly Culp in Support of Yuga Labs' Motion *in Limine* No. 4 ("Culp Decl. 4") Ex. 1.

[2] Defendants' deposition designations that Yuga Labs seeks to exclude through this motion *in limine* are identified in Yuga Labs' portion of the Joint Motion as required by the Scheduling Order. Dkt. 57 at 20 ("The Joint Motion in Limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be inadmissible and/or prejudicial. . . ."). The original deposition transcripts will be lodged with the Court by June 6, 2023 as required under the Local Rules. L.R. 32-1 ("The original deposition shall be lodged with the Clerk on or before the first day of a trial or at least ten (10) days before an evidentiary hearing unless required to be filed earlier under L.R. 16-11.2.").

| Defendants' Witness Disclosures[3] | |
|---|---|
| Thomas Lehman | "the circumstances under which Yuga obtained a declaration from him." |

Defendants confirmed at the May 9 meet and confer of counsel that they intend to offer evidence and argument to the effect that this lawsuit was filed to silence them. This argument is part of a concerted effort by Defendants, facilitated by counsel, to inflame the jury and prejudice Yuga Labs. This motion is made pursuant to the Federal Rules of Evidence 401, 402, and 403.

## II. YUGA LABS' MEMORANDUM OF POINTS AND AUTHORITIES

### A. INTRODUCTION

The Court has already held, when denying Defendants' motion to strike and motion to dismiss, that Yuga Labs' "claims are limited to and arise out of Defendants' unauthorized use of the BAYC Marks for commercial purposes." Dkt. 62 at 11. Yuga Labs went on to establish its trademark claims by undisputed evidence. Dkt. 225. Therefore, it is established that Yuga Labs had valid trademark claims against Defendants when it sued them in this Court. Any contrary claim by Defendants, such as a claim that Yuga Labs brought this action to silence or harass Defendants is moot, irrelevant, and intended to prejudice Yuga Labs.

In addition to confirming the merits of Yuga Labs' affirmative claims, the Court also held that Defendants "have failed to allege that they have suffered emotional distress." Dkt. 156 at 9. Therefore, any claim through which Defendants might argue that the purpose of the lawsuit was to harass them has been decided against Defendants. Moreover, any argument that established legal processes (such as subpoenas to their "partner's" and other third parties associated with them and the infringing activity) are similarly irrelevant and prejudicial if witnesses are questioned

---

[3] Culp Decl. 4 Ex. 2 (Defendants' Witness Summaries and Time).

on the topic because such questions undermine the legal process and call into doubt the validity of Yuga Labs' established claims.

Defendants' crocodile tears mask the truth – Defendants are upset that they are being held responsible for their intentional trademark infringement. Yuga Labs' appropriate use of the judicial system to pursue meritorious claims is not harassment. As such, any evidence or argument on the issue of whether the lawsuit was filed to harass Defendants or that the perceived effect was felt as harassment or silencing is irrelevant and barred under Fed. R. Evid. 401, 402, and 403.

### B. RELEVANT BACKGROUND

Defendants have confirmed they intend to argue that the lawsuit was filed to silence them and that its effect was felt by them and others as harassing. Defendants include examples of this kind of material on their exhibit list. *See*, *e.g.*, Culp Decl. Ex. 1 at JTX-2497 ("good god . . . yuga labs is so corrupt . . . processing these discoveries is insane.").

During discovery, Defendants also expounded on how they believed Yuga Labs had harassed them. Some examples of the kind of evidence the Court should exclude include, but are not limited to, the following quotes taken from Defendants' depositions:

a) "But we are being threatened by these people physically, emotionally, financially, reputationally, career-wise. And it extends to our friends and our family and our community members." Culp Decl. Ex. 3 (Cahen Depo.) at 316:11–15.

b) "You keep fuckin' harassing my family and shit." Culp Decl. Ex. 4 (Ripps Depo.) at 182:3.

Likewise, Defendants' counsel has argued that this lawsuit was filed to harass or silence Defendants. Some examples of the kinds of argument the Court should exclude include, but are not limited to, the following quotes taken from Defendants' filings with the Court:

a) "Mr. Ripps and his co-defendant, Mr. Cahen, are individuals who have been targeted by Yuga, a multi-billion dollar company, for their criticism of racist and neo-Nazi imagery in Yuga's Bored Ape Yacht Club series of NFTs." Dkt. 67 at 6.

b) "Yuga's pattern of harassment and bullying was aimed at silencing Defendants' criticism relating to Yuga's use of neo-Nazi messages and imagery." Dkt. 80 at 3.

c) "Yuga systematically bullied the defendants in an effort to silence their criticism, including by threatening to harm the Defendants' livelihood and their families." Dkt. 99-2 at 4.

d) "Counter-Plaintiffs Ryder Ripps and Jeremy Cahen called out Yuga Labs, Inc. ('Yuga') for the racist and alt-right messages embedded in the Bored Ape Yacht Club ('BAYC') NFT collection, and Yuga has done everything it can to try to silence them in response." Dkt. 96 at 1.

Similarly, at the depositions of third parties relevant to this case, Defendants' counsel asked questions of their cohorts and admitted "partners" designed to elicit testimony about the stress and harassment they felt from being deposed. For instance, at the deposition of Ian Garner (whose deposition was necessary because Ripps had falsely Tweeted that he was hand minting the RR/BAYC NFTs), Defendants' counsel asked whether it has been "a burden for you to show up here and testify today" and whether "this process" has "been stressful", amongst other similar questions. Culp Decl. Ex. 5 (Garner Depo.) at 189:3–24. Likewise, at the deposition of Ryan Hickman (one of Defendants' two software developers and admitted "partner"), Defendants' counsel asked similar questions, such as "Has the subpoena process been a burden on your life in any way?" Culp Decl. Ex. 6 (Hickman Depo.) at 276:20–21. Defendants have listed Ryan Hickman as someone whom they plan to examine live. *Culp* Decl. Ex. 2.

### C. EVIDENCE AND ARGUMENTS DESIGNED TO PORTRAY YUGA LABS AS HARASSING OR SEEKING TO SILENCE DEFENDANTS OR THEIR ASSOCIATES IS NOT RELEVANT AND IS PREJUDICIAL

#### 1. Whether Any Defendant or Witness Feels Burdened by the Lawsuit or Believes Yuga Labs Is Pursuing it to Silence Defendants (It Is Not) Is Irrelevant to Any Issue in Dispute

"Relevant evidence" is evidence that tends to make the existence of any "fact that is of consequence" to the claims in the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Defendants' allegations regarding harassment or feeling silence are both "immaterial" and "impertinent." See *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), overruled on other grounds, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("Immaterial" matters are those that have "no essential or important relationship to the claim for relief or the defenses being pleaded" and "impertinent" matters are those "that do not pertain, and are not necessary, to the issues in question."). This is especially true given this Court's dismissal of Defendants' unfounded allegations of harassment. Dkt. 156 at 9.

At trial, the jury will only be asked to determine the remedies Yuga Labs is entitled to because of Defendants' established, intentional trademark infringement and whether Defendants falsely advertised. What Defendants – or others – feel about the litigation is not relevant to any of these issues. Moreover, none of these allegations, or any proffered "evidence," could support any defense of Defendants or reduction in damages caused by Defendants' intentional trademark infringement.

#### 2. Evidence or Argument that Any Defendant or Witness Feels Burdened by the Lawsuit or Believes Yuga Labs Is Pursuing it to Silence Defendants (It Is Not) Is Unduly Prejudicial to Yuga Labs

Defendants' attacks on Yuga Labs and the judicial system are not relevant to this case. But, even if they were, even relevant evidence may be excluded if its probative value is substantially outweighed by "unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. All evidence favors one party or another, but it is "unfair[ly] prejudicial" when it "tends to suggest or encourage a decision on improper reasoning." *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 258 (D. Ariz. 2022).

Defendants perniciously seek to circumvent this Court's prior rulings that this case is not about speech. Facing failed defenses, Defendants now appear to hope that they can galvanize the jury to reduce the monetary award by painting themselves as the aggrieved party. As such, any evidence or argument that the lawsuit was filed to "silence" Defendants or had the effect of burdening them or their associates is likely to confuse the issues, mislead the jury, and waste time. *See*, *e.g.*, *Camper v. State Farm Fire and Casualty Co.*, No. 3:20-cv-5283-TLF, 2021 WL 5205608, at *4 (W.D. Wash. July 15, 2021) ("The expense of litigation and attorney's fees are not relevant to plaintiff's claims and would be unduly prejudicial to present to the jury."); *Ingle v. Circuit City*, No. 99-cv-1297-RHW, 2006 WL 6086293, at *4 (S.D. Cal. Feb. 6, 2006) ("Defendant seeks to exclude all evidence regarding FNANB's alleged harassment of Plaintiff. The Court dismissed Plaintiff's claims regarding this harassment in its summary judgment order, and it in no way relates to Plaintiff's remaining claims as outlined above.").

Further, the Court held that Yuga Labs filed meritorious trademark claims and that Defendants had no legal claim for harassment. Dkt. 156 at 10 ("Counterclaimants' own public statements and actions demonstrate that they have not suffered emotional distress, much less severe emotional distress."). Introducing evidence or argument to the contrary would prejudice Yuga Labs. Indeed, regardless of the answer to the question "Isn't it correct that Yuga Labs sued Defendants to silence them?", Defendants will have prejudiced Yuga Labs by implying that the case lacks merit by merely asking the question, even though Defendants have already been

found liable. Defendants' asked questions like this at depositions, and have indicated they plan to pursue this same line of questioning at trial.

Forcing the jury to conduct a "mini-trial" to settle irrelevant factual issues, such as why Yuga Labs chose to file some, but not other lawsuits, or depose some, but not other, witnesses, what a subpoena is, and how the discovery process works would be highly prejudicial and would waste the Court's, the jury's, and the parties' time when the only issues at trial are the extent of Yuga Labs' monetary recovery and Defendants' false advertising. *See Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*, No. 2:13-CV-05704-CAS(Ex), 2015 WL 10733384, at *5 (C.D. Cal. Aug. 24, 2015) (granting motion in limine to exclude evidence of alleged payment practices to avoid "a series of mini-trials on collateral matters that would be wasteful of the Court's time."); *Marez v. Bassett*, No. CV 06–0118 ABC (RCx), 2011 WL 13213813, at *3 (C.D. Cal. Oct. 3, 2011) ("Even if such evidence were relevant, the Court would exclude it under Rule 403 because it risks unfair prejudice and delay or waste of time. . . . In addition, introducing evidence of those other trials is likely to give rise to time-consuming tangents about the merits of those trials."). This prejudicial effect is compounded where, as is the case here, the trial is three (3) days. If Defendants' irrelevant allegations are proffered, Yuga Labs will be forced to choose between presenting evidence to undo the prejudice Defendants hope to cause, or pursuing its affirmative, relevant case.

### D.     CONCLUSION

Defendants' intentional trademark infringement is established, as is the fact that Defendants' speech is not at issue in this case. It does not matter what Yuga Labs' decision-making process was in deciding to sue them. Similarly, the fact that Yuga Labs gathered evidence in accordance with the Federal Rules of Civil Procedure is not something the jury should be primed to question. In sum, the Court should preclude Defendants from seeking or offering evidence or argument to the effect that Yuga Labs harassed Defendants Ryder Ripps, Jeremy Cahen, or others,

such as by filing this lawsuit or pursuing discovery related to this lawsuit, or otherwise sought to "silence" Defendants.

## III. DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

### A. INTRODUCTION

All five of Plaintiff Yuga Labs's ("Yuga") motions *in limine* share a common theme: Yuga seeks to present the false narrative that Defendants' infringement was solely motivated by financial gain, and solely responsible for Defendants' losses. The truth is that the harms for which Yuga seeks damages are attributable to factors other than infringement, confusion, or false advertising: they are attributable to (1) backlash against Yuga when it was called out (by Defendants and others) for using racist and other hateful imagery in connection with its BAYC brand, and (2) Yuga's own decision to freely allow widespread use of its trademarks by others. The truth is that the Defendants genuinely believed in their artistic criticisms of Yuga's content as racist and alt-right-inspired, and that intent is directly relevant to the availability of disgorgement damages and any claim to enhanced damages as a result of willful infringement. Thus, contrary to Yuga's suggestions, Defendants do not intend to introduce this evidence contradicting Yuga's preferred narrative for any improper purpose; rather, Defendants must be permitted to introduce evidence that Yuga's damages were the result of factors other than Defendants' infringement, and that the Defendants' intent was to criticize Yuga, not to cause confusion.

Yuga's motion *in limine* no. 4 is no exception. Yuga seeks to exclude evidence that Yuga filed suit against only Defendants' RR/BAYC Project ***and not against any of the thousands of other NFT collections that use the asserted marks***. But excluding this fact would give the false impression that the RR/BAYC Project was the only market use of the BAYC marks, and thus responsible for all harm to Yuga. The truth is very different. There are ***many*** third-party NFT collections that sold many more "BAYC" NFTs (at much greater profit) than the RR/BAYC Project.

Thus, Yuga's decision to pursue *only* the RR/BAYC Project through litigation suggests that Yuga's claim of harm is specious: the real reason that it filed this suit only was not because of harm caused by *confusion*, but because of other (perceived) harm caused Mr. Ripps and Mr. Cahen calling out the racist and hateful imagery associated with the Bored Ape Yacht Club brand. The Defendants should be permitted to present the basic fact that this is the only lawsuit Yuga elected to bring claiming that confusion resulting from use of its marks caused it any harm.

Tellingly, Yuga's motion does not directly address the evidence which it actually seeks to exclude—evidence that Yuga's decision to pursue only the RR/BAYC Project weighs against attributing its alleged damages to infringement by the RR/BAYC Project alone. Instead, the motion is replete with inflammatory statements and out-of-context material. For example, Yuga argues (wrongly) that Defendants intend to bring in evidence relating to Yuga's harassment of Defendants and their resulting emotional distress to cry "crocodile tears" in front of the jury. But as Yuga knows, during the parties' the May 9, 2023, conference of counsel, Defendants expressly *agreed* that they would not present evidence relating to Yuga's harassment and the resulting emotional distress (because the Court has dismissed those claims). Tompros Decl. ¶ 3. Yuga fails to mention this agreement in its motion or in its declaration.

Yuga's motion thus appears to be an effort to do one of two things: either waste the parties' and the Court's time with a motion to exclude evidence that Defendants have already agreed not to present, or to exclude relevant damages evidence of Yuga's selective enforcement of its asserted marks, in the guise of a motion purporting to be about harassment. Either way, Yuga's motion should be denied.

### B. BACKGROUND

Yuga's selective enforcement of its asserted marks is evidence that harms that Yuga has purportedly suffered are not wholly the result of confusion surrounding the RR/BAYC Project, as Yuga claims. Defendants' promotion and sales of RR/BAYC

NFTs is dwarfed by the commercial use of the asserted marks by numerous third parties. Many of these third parties used the marks in a high-profile way that generated publicly disclosed profits greater than those generated by the RR/BAYC Project. Thus, to the extent that confusion surrounding the RR/BAYC Project's caused any harm to Yuga, the materially identical activity of third parties caused equal or greater harm. But Yuga elected not to pursue any damages claim against any of those third parties—which suggests that marketplace confusion has not caused Yuga significant damages. Yuga's decision not to pursue actions against anyone using its marks except the Defendants suggests that the harms Yuga claims to have suffered arise primarily not from marketplace confusion associated with its marks (which is equally applicable to third party use), but rather from activities unrelated to infringement (including Defendants' criticism of racist and other hateful imagery associated with Yuga's BAYC brand). That harm unrelated to infringement cannot be included in Yuga's damages claim.

The evidentiary record is replete with evidence confirming lack of harm to Yuga when third parties use BAYC marks publicly and commercially. For example, Yuga's corporate representative testified that the NFT collection called "Bored Ape Solano Club" is not affiliated with Yuga Labs and uses Yuga's BORED APE mark. Tompros Decl., Ex. 1 at 160:7-17. Yuga's Chief Creative Officer testified that the Bored Ape Solano Club had a total volume of 106,558 "Solana"—which translates to $4,507,403—as of the date Yuga filed this lawsuit. Tompros Decl., Ex. 2 at 40:22-42:20. Thus, the Bored Ape Solano Club is an NFT collection using the asserted marks without authorization that is several times larger and more profitable than the RR/BAYC Project. Notably, the Bored Ape Solano Club is not critical of Yuga, and Yuga has not filed any action against the Bored Ape Solana Club seeking damages. Taken together, this suggests that it is not marketplace confusion associated with the RR/BAYC Project's use of the asserted marks that has caused the overwhelming majority of the harm that Yuga claims, but rather other factors.

There are numerous other examples about which Defendants' have personal knowledge, about which there was testimony during one or more depositions of Yuga employees or corporate representatives, or about which Defendants expect Yuga employees to concede during cross examination. There are at least 733 NFT collections that use the BAYC mark—none of which Yuga has sought damages from. Tompros Decl. Ex. 3. And there are another 8,847 NFT collections that use the BORED APE and APE marks—again none of which Yuga has sued for damages. Tompros Decl. Ex. 4. Yuga's election to target only Defendants suggests that something other than harm by confusion is the real cause of Yuga's alleged damages.

### C. YUGA'S MOTION IN LIMINE NO. 4 WAS FILED IN VIOLATION OF THIS COURT'S SCHEDULING ORDER

Preliminarily, the Court can deny Yuga's motion for failure to comply with the Court's scheduling order. This Court's scheduling order provides that "[b]efore filing any motion in limine, lead counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion in limine or to eliminate as many disputes as possible." Dkt. 57 at 19. The scheduling order further explains that a party should file a motion only "[i]f counsel are unable to resolve their differences[.]" *Id*.

On May 9, 2023, the parties conferred regarding Yuga's **eleven** planned motions *in limine*. (Despite Defendants' repeated requests, Yuga refused to identify which five of its originally noticed eleven motions it actually intended to bring, either prior to or during that conference.) During the conference of counsel, the Defendants agreed that they would not present evidence of Yuga causing Defendants emotional distress, Yuga's efforts to harass the Defendants' and third parties, or Yuga's efforts to otherwise bully the Defendants. Tompros Decl. ¶ 3. Yuga nevertheless included in this motion a request to exclude evidence regarding emotional distress, Yuga's harassment, and bullying. Yuga also omitted from its motion and corresponding

declaration any discussion of the agreement that was reached at the May 9 conference.

As a result, nearly the entirety of Yuga's motion focuses on evidence that Defendants have agreed to not introduce at trial. Yuga then *tangentially* references the actual dispute between the parties—whether Defendants should be permitted to introduce evidence that Yuga tolerated widespread use of its BAYC marks while only pursuing damages against Defendants. Yuga is wrongly suggesting that there is a dispute over issues that Defendants agree should not be presented at trial (harassment and emotional distress), in an apparent effort to have all evidence of Yuga's selective enforcement excluded. The Court can and should deny Yuga's motion on this basis, without even need to reach the merits.

### D. YUGA'S SELECTIVE ENFORCEMENT OF ITS MARKS IS RELEVANT TO DAMAGES

Yuga argues that the Court should grant its motion because the evidence in dispute is irrelevant under Federal Rule of Evidence 401. However, Yuga's relevance argument focuses solely on evidence relating to emotional distress, harassment, and bullying. But as discussed above, Defendants already agreed not present evidence to prove emotional distress, harassment, or bullying. Yuga does not appear to present any Rule 401 argument regarding the parties' actual evidentiary dispute—whether evidence of Yuga's selective enforcement of its marks against Defendants' only, despite widespread use by others, affects the appropriate amount of damages.

Evidence regarding Yuga's decision to pursue damages from only the Defendants is, of course, highly relevant to assessing Yuga's damages claim. That is, if Yuga truly suffered significant monetary harm as a result of confusion surrounding Defendants' use of its marks, then Yuga would also have suffered harm (likely greater harm) from the many other NFT collections that use Yuga's asserted marks—particularly since many of those collections were and are more successful

and more profitable than the RR/BAYC Project was. The fact that Yuga did not pursue damages against any of those third parties suggests that the bulk of the harm arising from the RR/BAYC Project stems not from any marketplace confusion, but rather from some other factor unique to the RR/BAYC Project.

Specifically, Yuga's election to target only the RR/BAYC Project suggests that the harm that it claims to have suffered is tied to the criticism that is part of that project—and not part of any other NFT collection that uses the asserted marks. Defendants have publicly stated their view that Yuga has used racist and other hateful imagery in connection with the BAYC brand. This call-out may have diminished the value of the BAYC brand, but that harm is unrelated to any confusion (or false advertising), and therefore cannot be included in the damages award. Yuga's election to target the RR/BAYC Project alone—the only NFT collection connected with messaging calling out Yuga—is relevant to showing that the harm alleged in this case is not related to infringement, but instead arises from Defendants' criticism. This distinction is important to the calculation of damages, which must be based on harm caused by confusion (or false advertising) alone, not harm caused by calling out Yuga's imagery and conduct.

### E. NO UNDUE PREJUDICE WILL ARISE FROM EVIDENCE SHOWING THAT YUGA HAS PURSUED ONLY DEFENDANTS

Yuga's unfair prejudice argument similarly focuses on evidence that Defendants agreed to not use at trial. Specifically, Yuga seeks to exclude evidence relating to Defendants' "legal claim for harassment" as it would be used to "galvanize the jury … by painting themselves as the aggrieved party." But Defendants already agreed during the May 9th conference of counsel that Defendants would not introduce evidence on their harassment claim.

Yuga, in its last breath, also argues that evidence on Yuga's decision to file this lawsuit should be excluded under Rule 403 as it would result in a "mini-trial" on irrelevant issues. But again, Yuga misstates Defendants' position and

mischaracterizes the damages-related evidence on which Defendants intend to rely. Defendants expect to challenge Yuga's contention that all harm to the BAYC brand was the result of confusion or Defendants' alleged false advertising. This includes evidence that Yuga suffered harm as a result of Defendants criticism, and that Yuga's decision to ignore other infringers (many of which are several times larger than the RR/BAYC Project) suggests that the harm for which it seeks damages does not arise from any confusion or false advertising. This evidence is not a "mini-trial" for "irrelevant factual disputes," as Yuga argues. To the contrary, it concerns the central dispute of the damages trial—to determine what alleged harm arises from confusion and/or false advertising, and what harm does not. There is nothing unfairly prejudicial about this evidence.

### F.  CONCLUSION

The Court should deny Yuga's motion *in limine* No. 4.

Dated: May 25, 2023

FENWICK & WEST LLP

By: */s/ Kimberly Culp*
Kimberly Culp
Attorneys for Plaintiff
YUGA LABS, INC.

Dated: May 25, 2023

WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Louis W. Tompros*
Louis W. Tompros
Attorneys for Defendants
RYDER RIPPS AND JEREMY CAHEN

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Kimberly Culp attests that concurrence in the filing of this document has been obtained from Louis W. Tompros.

*/s/ Kimberly Culp*
Kimberly Culp