ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS AND JEREMY CAHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **JOINT BRIEFING FOR YUGA LABS, INC.'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE THAT THE BAYC TERMS DEVALUED THE BAYC MARKS** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, | |
| Defendants. | Date:        June 16, 2023<br>Time:        8 a.m.<br>Courtroom:   7A<br>Judge:       Honorable John F. Walter |
| | Pretrial Conf. Date: June 9, 2023<br>Trial Date: June 27, 2023 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:   310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA  22314
Telephone:   202.628.7400

Attorneys for Plaintiff
YUGA LABS, INC.

# TABLE OF CONTENTS

**Page**

I.    IDENTIFICATION OF THE MATTER IN DISPUTE ................................... 1

II.   YUGA LABS' MEMORANDUM OF POINTS AND AUTHORITIES ................................................................................. 4

     A.    INTRODUCTION .......................................................................... 4

     B.    RELEVANT BACKGROUND .................................................... 5

     C.    ARGUMENTS ................................................................................ 6

     D.    CONCLUSION ............................................................................. 10

III.  DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ............................................................................... 10

     A.    INTRODUCTION ........................................................................ 10

     B.    BACKGROUND .......................................................................... 12

     C.    ARGUMENT ................................................................................ 14

          1.    THE TERMS & CONDITIONS ARE RELEVANT TO DAMAGES .................................................................... 15

          2.    THERE IS NO UNFAIR PREJUDICE ................................... 16

     D.    CONCLUSION ............................................................................. 16

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Adray v. Adry-Mart, Inc.*,
   76 F.3d 984 (9th Cir. 1995) ................................................................. 15

*Bell v. Boeing Co.*,
   No. 20-CV-01716-LK, 2022 WL 1607935
   (W.D. Wash. May 20, 2022) ............................................................. 10

*Mag Instrument, Inc. v. Dollar Tree Stores Inc.*,
   No. CV 03-6215, 2005 WL 5957825 (C.D. Cal. Apr. 14, 2005) ................. 6, 10

*McClure v. State Farm Life Ins.. Co.*,
   341 F.R.D. 242 (D. Ariz. 2022) ............................................................ 9

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
   331 F. Supp. 2d 1214 (C.D. Cal. 2004) ......................................... 15, 16

*Morgan v. City of Pleasant Hill*,
   268 F. App'x. 686 (9th Cir. 2008) ......................................................... 9

*Neo4j, Inc. v. PureThink, LLC*,
   480 F. Supp. 3d 1071 (N.D. Cal. 2020) .................................................. 7

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
   No. 14-cv-04853-PSG, 2015 WL 9266497 (N.D. Cal. Dec. 18, 2015 ) ............ 15

*Positive Ions, Inc. v. Ion Media Networks, Inc.*,
   No. 06-cv-04296-ABC-FFM, 2007 WL 9701734
   (C.D. Cal. Nov. 7, 2007) ........................................................... 15, 16

*Sienze v. Kutz*,
   No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184
   (E.D. Cal. Mar. 25, 2019) ................................................................ 10

*United States v. Ellis*,
   147 F.3d 1131 (9th. Cir. 1998) ............................................................ 9

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

### STATUTES AND RULES

Fed. R. Evid. 401 ...................................................................................................5, 6

Fed. R. Evid. 402 ...................................................................................................5, 6

Fed. R. Evid. 403 ...............................................................................................5, 9, 16

Fed. R. Evid. 602 ...................................................................................................5, 8

L.R. 16-11.2 ...............................................................................................................2

LR 32-1 ......................................................................................................................2

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.   IDENTIFICATION OF THE MATTER IN DISPUTE

Yuga Labs seeks an *in limine* order that precludes Defendants Ryder Ripps and Jeremy Cahen ("Defendants") from offering evidence or argument that the license provided for in Yuga Labs' BAYC Terms and Conditions ("BAYC Terms"), or any use under these terms, harmed or devalued the BAYC Marks.[1]  Defendants have continued to put forth such evidence and argument, despite having no evidence to support the alleged harm, and even after this Court rejected their naked licensing theory and held that the BAYC Terms do not confer trademark rights to BAYC NFT holders.  Order on Summary Judgment (Dkt. 225) ("Order") at 9-10.

These items appear in Defendants' pre-trial evidentiary disclosures and should be excluded from trial, including any similar evidence or argument on the same subject and not yet disclosed by Defendants:

| Defendants' Exhibits[2] |
|---|
| JTX-209; JTX-230; JTX-284; JTX-285; JTX-286; JTX-296; JTX-406; JTX-407; JTX-408; JTX-414; JTX-2075; JTX-2076; JTX-2078; JTX-2080; JTX-2081; JTX-2083; JTX-2088; JTX-2133; JTX-2134; JTX-2319; JTX-2339; JTX-2340; JTX-2344; JTX-2345; JTX-2346; JTX-2351; JTX-2352; JTX-2354; JTX-2356; JTX-2358; JTX-2359; JTX-2361; JTX-2362; JTX-2365; JTX-2373; JTX-2390; JTX-2393; JTX-2395; JTX-2414; JTX-2419; JTX-2420; JTX-2421; JTX-2672; JTX-2673; JTX-2674; JTX-2694; JTX-2695. |

---

[1] The BAYC Marks are BORED APE YACHT CLUB, BAYC, BORED APE, the BA YC Logo, the BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo.

[2] Declaration of Kimberly Culp in Support of Yuga Labs' Motion in Limine No. 5 ("Culp Decl.") Ex. 1.

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Defendants' Deposition Designations[3] | |
|---|---|
| Wylie Aronow | 184:12–25; 185:1–11, 13–14, 23–25; 186:4–5, 8–12; 187:5–14, 17–25; 188:1–4, 7–25; 228:19–22; 229:12–16, 19; 230:12–14, 20–22, 25; 231:2–21; 232:5–10, 14. |
| Patrick Ehrlund | 48:15–24; 49:2–6, 8–23; 50:1–10, 14–19, 23–25; 51:13–25; 52:1–7, 10–14, 17–18; 53:10–25; 54:1–12, 15–19, 24–25; 55:1–2, 5–12, 15–16; 73:17–25; 74:3–4, 7–25; 75:1–2, 5–8, 12–14. |
| Nicole Muniz | 131:18–25; 132:1–25; 133:1–25; 134:1–25; 135:1–25; 136:1–25; 137:1–25; 138:1–25; 139:1–25; 140:1–25; 141:1–13; 143:8–15, 19–21; 144:17–25; 145:1–25; 146:3–16; 149:8–10, 14–17, 19–20, 22–25; 151:19–21, 25; 152:10–15, 20–24. |
| Greg Solano | 134:2–3, 6–7, 19–21; 160:4–16; 162:21–22, 25; 163:1–3, 24–25; 164:3–15, 18–24; 170:19–20, 23–25; 174:5–7, 10–13, 15; 176:4–7, 14–15; 178:16–18, 21–22; 182:4–5, 7–9; 229:24–25; 230:1–8, 24–25; 231:3–4. |
| Defendants' Witness Disclosures[4] | |
| Nicole Muniz | "She will testify . . . about the topics designated in her deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products |

---

[3] Defendants' deposition designations that Yuga Labs seeks to exclude through this motion in limine are identified in Yuga Labs' portion of the Joint Motion, as required by the Scheduling Order. Dkt. 57 at 20 ("The Joint Motion in Limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be inadmissible and/or prejudicial. . . ."). The original deposition transcripts will be lodged with the Court by June 6th, 2023 as required under the Local Rules. LR 32-1 ("The original deposition shall be lodged with the Clerk on or before the first day of a trial or at least ten (10) days before an evidentiary hearing unless required to be filed earlier under L.R. 16-11.2.").

[4] Culp Decl. Ex. 2.

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | using purportedly confusingly similar marks and/or misleading statements." |
|---|---|
| Greg Solano | "He will testify . . . about the topics designated in his deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |
| Wylie Aronow | "He will testify . . . about the topics designated in his deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |
| Kerem Atalay | "He will testify . . . about the topics designated in his deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |
| Patrick Ehrlund | "He will testify . . . about the topics designated in his deposition transcript, including Yuga's abandonment of its rights in its intellectual property"; "the impact of competing products on Yuga"; "Yuga's responses to competing products using purportedly confusingly similar marks and/or misleading statements." |

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

During the Parties' May 9, 2023, meet and confer, Defendants indicated that they would re-package their naked licensing claim notwithstanding the Court's Summary Judgment Order.  They plan to argue that Yuga Labs' alleged failure to control BAYC NFT holders' use of their BAYC NFTs has devalued the BAYC Marks and reduces or nullifies the harm caused by Defendants' infringement of Yuga Labs' Trademarks ("Licensing Argument").   Culp Decl. ¶ 5.   The Licensing Argument invariably relies on the same evidence previously rejected by this Court and would amount to Defendants re-litigating the issue. *Id.*  Moreover, Defendants lack any expert testimony or other admissible evidence to support their bald argument that BAYC NFT holders' use of what this Court has ruled is a copyright license has devalued Yuga Labs' BAYC brand. *Id.* ¶ 7.

The Licensing Argument and any related evidence is irrelevant to this case, lacks foundation, and would be highly prejudicial to Yuga Labs if admitted. Accordingly, Yuga Labs requests an *in limine* order to preclude Defendants from arguing or offering, or seeking to elicit, testimonial or documentary evidence relating to the Licensing Argument and supporting evidence, including but not limited to those items already disclosed by Defendants on this issue.

## II.   YUGA LABS' MEMORANDUM OF POINTS AND AUTHORITIES

### A.   INTRODUCTION

Throughout this case, Defendants have repeatedly refused to accept this Court's orders, and once again, Defendants contort the facts in a blatant attempt to re-litigate arguments previously rejected by the Court.  This Motion *in limine* deals with another such instance.[5]  Defendants have confirmed their plans to repackage their naked licensing evidence to argue that, because the BAYC Terms grant a

---

[5] As another example of their refusal to accept the Court's orders, Defendants are attempting to sneak in unlicensed third-party uses of the BAYC Marks at trial even though the Court dismissed their defense that Yuga Labs abandoned its trademark rights due to an alleged failure to police third party uses of its marks.  The Court should not tolerate these tactics. *See* Yuga Labs' Motion *in Limine* No. 3 to Exclude Evidence of Third-Party Marks.

*copyright* license in the BAYC ape images, use of these images somehow resulted in *trademark* harm to Yuga Labs. They plan to present this argument to the jury notwithstanding that this Court previously rejected Defendants' naked licensing argument "[b]ecause Yuga has not granted BAYC NFT holders a trademark license . . ." Order at 9-10. Further, there is an absence of *any evidence* in the record from which the jury could conclude that Yuga Labs has been harmed by BAYC NFT holders' use of their copyright license. Any argument or attempt to elicit evidence in support of this argument should be excluded as irrelevant in light of the Court's Order, the lack of evidentiary support, and because it has a high risk of prejudicing the jury by inviting it to re-consider claims that were dismissed on Summary Judgment and speculate on theories that Defendants cannot support. Fed. R. Evid. 401, 402, 403, and 602.

## B.    RELEVANT BACKGROUND

In their Opposition to Yuga Labs' Motion for Summary Judgment, Defendants argued that the BAYC Terms gave away all rights to the BAYC ape images, including trademark rights, because some of the BAYC Marks are used in some of the ape images.[6] Dkt. 163-0 at 6-7. Defendants then claimed that Yuga Labs' failure to control these limited number of BAYC ape images resulted in a "naked license" and abandonment of the marks. *Id*. The Court rejected this argument, stating: "Under its Terms and Conditions, Yuga grants each BAYC NFT holder a copyright license for both personal use and commercial use with respect to their respective BAYC ape image, **but not a trademark license to use the BAYC Marks.**" Order at 9 (emphasis added).

Notwithstanding this clear finding from the Court, during the May 9, 2023, meet and confer, Defendants indicated they intend to revive their naked license

---

[6] Only Yuga Labs' BAYC, BA YC Logo, and Ape Skull Logo marks are used in the BAYC ape images. The BORED APE YACHT CLUB, BORED APE, and BA YC BORED APE YACHT CLUB Logo marks are not used in any of the BAYC ape images.

FENWICK & WEST LLP
ATTORNEYS AT LAW

argument at trial, but with new packaging. Culp Decl. ¶ 5. As before, they claim that the BAYC Terms provide for commercial use of the BAYC Marks because some of the BAYC ape images include some BAYC Marks within the images. *Id.* Likewise, as before, they claim Yuga Labs failed to control BAYC NFT holders' uses of these images. *Id.* However, instead of directly arguing that there has been an abandonment and a naked license, they now claim that the harm resulting from Defendants' infringement is outweighed or nullified because Yuga Labs' failure to control the quality of the goods and services sold using BAYC ape images devalued the BAYC Marks. *Id.* They reach this conclusion without any evidence to support it. *Id.* ¶ 7. This unfounded attempt to mislead and confuse the jury should not be permitted. But in any case, it is already disposed of by the Court's Order. Yuga Labs explained this fact to Defendants, noting that the Court's Order found that the BAYC Terms do not provide a trademark license, and so there is no obligation to monitor or control other uses of the BAYC Marks. *Id.* ¶¶ 3, 5. Defendants disagreed, arguing the Order was not applicable to their new theory, and Yuga Labs expressed its intent to proceed with this motion *in limine*. *Id.* ¶¶ 5, 7.

## C.   ARGUMENTS

Defendants' Licensing Argument is just old wine in new bottles. As with their naked licensing argument, it relies on the assumption that, because some of the BAYC ape images contain some (but not all) of the BAYC Marks, the BAYC Terms provide rights to use these marks *as marks* and, therefore, Yuga Labs gave them away. The Court already rejected this interpretation of the BAYC Terms in its Order, holding that the BAYC Terms only provide a copyright license in the images and that "Yuga has not granted BAYC NFT holders a trademark license." Order at 9-10. This finding alone is sufficient to exclude Defendants' latest argument and efforts to elicit evidence on the topic. Fed. R. Evid. 401, 402; *Mag Instrument, Inc. v. Dollar Tree Stores Inc.*, No. CV 03-6215 RSWL (SHx), 2005 WL 5957825, at *2 (C.D. Cal. Apr. 14, 2005) (evidence that concerns an argument mooted by summary adjudication is

FENWICK & WEST LLP
ATTORNEYS AT LAW

excluded).  And it is in line with other courts, which have also found that a copyright license like the one set forth in the BAYC Terms does not confer trademark rights. *See Neo4j, Inc. v. PureThink, LLC, 480 F. Supp. 3d 1071, 1077 (N.D. Cal. 2020)* (rejecting argument in support of naked license theory that software copyright licenses conferred trademark rights).

The BAYC Terms unambiguously give BAYC NFT holders the right to use their respective Bored Ape image, "the Art," for personal or commercial use, not the marks within the image.  Gosma Decl. ISO Opposition to Summary Judgment Ex. 245 at 41 (Dkt. 197-2).  Without a trademark license, Yuga Labs had no responsibility to control use of the BAYC ape images and marks.  *See Neo4j, Inc.*, 480 F. Supp. 3d at 1077.  Defendants' Licensing Argument, and any evidence used to support it, are thus irrelevant to the claims at issue in this case, and Defendants should be barred from using them at trial.

Moreover, there is *no evidence or expert testimony in the record* that third party use of the licensed BAYC ape images has somehow harmed or devalued the BAYC Marks.  Indeed, the only pertinent evidence Defendants have previously cited merely purports to show BAYC NFT holders using their copyright license to display BAYC ape images on their products, not any *trademark* harm therefrom.  *See* Combined Statement of Facts Re Yuga Labs' Motion for Summary Judgment (Dkt. 203) ¶ 156 ("BAYC NFT holders have prominently used ape images depicting Yuga's trademarks."); Ripps Decl. ISO Opposition to Summary Judgment Exs. 175, 182, 241 (Dkts. 163-71, 163-78, 163-137).  Moreover, Defendants **have no expert** who can fill this gaping evidentiary hole with testimony that BAYC NFT holders' use of their BAYC ape images harmed Yuga Labs' BAYC Marks.   Allowing Defendants to raise this notion without providing any evidentiary basis would clearly prejudice Yuga Labs, who would have to prove a negative – that all uses of BAYC Marks present in the ape images *did not* devalue the BAYC Marks.  That is not how logic or the judicial system works.   Absent any contravening evidence from

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   Defendants, Yuga Labs' expert testimony that Defendants' infringement caused

2   harm to the BAYC Marks is incontrovertible.  *See*, *generally*, Jonah Berger

3   Declaration ISO Motion for Summary Judgment (Dkt. 149-114) ("Berger Decl.");

4   Lauren Kindler Declaration ISO Motion for Summary Judgment (Dkt. 149-116)

5   ("Kindler Decl.").  And any attempt by Defendants to testify to this fact themselves

6   would be no more than rank speculation and is not permitted because they lack

7   personal knowledge.  Fed. R. Evid. 602.

8       Contrary to showing "harm," Yuga Labs' licensing of the BAYC ape images

9   is a positive attribute of the BAYC NFT community.  *See* Culp Decl Ex. 4 (Muniz

10  Deposition, Ex. 231) ("We want to promote an active, creative community.  Part of

11  that means making sure that if you own an ape, you can throw it on a T-shirt, make

12  a print, or create your own derivative NFT using your ape, and sell it.  We give a full

13  worldwide license only to the NFT holder to use, copy, and display the purchased

14  art, as well as use it to make any creative, derivative works based upon the NFT.").

15  One example of such positive use is the fast food restaurant Bored & Hungry, which

16  uses licensed BAYC ape images as part of its branding.  As Nicole Muniz, Yuga

17  Labs' former CEO testified, use of the BAYC ape images does not devalue the

18  BAYC Marks or confuse consumers.  *See* Culp Decl. Ex. 3 (Deposition of Nicole

19  Muniz at 134:2–6; 137:20–138:9) ("[Bored & Hungry] own Bored Apes, and they

20  can use Bored Apes as the, you know, visual [representation] of their brand.  Their

21  food is also really good."; "So Bored & Hungry don't say that they're . . . affiliated

22  with Bored Ape Yacht Club. . . .  They don't use our marks in any way, and they

23  make it a point to say that they're actually not. . . .  People in [] general look to, 'Is

24  this an official Bored Ape Yacht Club thing?' And that's where our logo comes in in

25  an official capacity and our marks overall.").

26      Other than evidence of BAYC NFT holders exercising their right to use ape

27  images under the BAYC Terms, ***Defendants' entire Licensing Argument rests on***

28  ***allegations without foundation or evidence***, namely: (a) their counsel's argument

FENWICK & WEST LLP
ATTORNEYS AT LAW

that Yuga Labs gave away its BAYC Marks to BAYC NFT holders, which argument was already rejected by the Court, and (b) their counsel's claim that this harmed Yuga Labs' BAYC Marks. And any speculative harm Defendants may attempt to show resulted from the BAYC Terms pales in comparison to Defendants' established, intentional infringement of BAYC Marks, which Yuga Labs has provided ample evidence showing actually caused harm. *See*, *generally*, Berger Decl., Kindler Decl. Indeed, the Court found that Defendants intentionally used all BAYC Marks "in the same marketplaces to identify and sell NFTs bearing the exact same images underlying the BAYC NFTs and without adding any expressive content" in order to confuse consumers. Order at 12, 17. Therefore, introducing evidence of other parties' use of the BAYC ape images and an argument that Yuga Labs gave away its rights will only distract the jury from Defendants' established infringement, and should therefore be excluded.

Even if the Licensing Argument and related evidence were relevant, it presents a high risk of unfair prejudice to Yuga Labs, as it would "encourage a decision on improper reasoning." *McClure v. State Farm Life Ins.. Co.*, 341 F.R.D. 242, 258 (D. Ariz. 2022). For instance, it might imply that, contrary to this Court's rulings, Yuga Labs does not actually have any ownership rights in its BAYC Marks, that Yuga Labs had an obligation to or has not protected its marks (and by proxy, Yuga Labs should not be protected from Defendants' infringement), and/or that BAYC NFT holders' compliance or noncompliance with the BAYC Terms is relevant to this case. Fed. R. Evid. 403; *see also United States v. Ellis*, 147 F.3d 1131, 1135 (9th. Cir. 1998) (Rule 403 is intended to preclude evidence with an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" or "evidence designed to elicit a response from the jurors that is not justified by the evidence"). Moreover, it could confuse the issues and indirectly invite the jury to re-litigate the naked licensing claim, which was dismissed at summary judgment. *Morgan v. City of Pleasant Hill*, 268 F. App'x. 686, 687 (9th Cir. 2008) (holding

district court did not err in excluding evidence that "could have confused the issues and indirectly invited the jury to re-litigate [a] claim, which was dismissed in summary judgment"). Furthermore, courts in the Ninth Circuit have routinely excluded evidence concerning issues resolved on summary judgment, and Defendants' attempt to "backdoor evidence that relates to claims dismissed on summary judgment" is improper. *Bell v. Boeing Co.*, No. 20-CV-01716-LK, 2022 WL 1607935, at *3 (W.D. Wash. May 20, 2022); *see*, *e.g.*, *Mag Instrument*, 2005 WL 5957825, at *2 (evidence that concerns an argument mooted by summary adjudication is excluded); *Sienze v. Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184, at *3 (E.D. Cal. Mar. 25, 2019) ("Defendants are correct that evidence concerning issues resolved at summary judgment is generally not relevant and should be excluded."). Defendants should not be able to sneak in their argument that Yuga Labs does not own the BAYC Marks, or gave their rights away, simply because they disagree with the Court's Order.

### D.    CONCLUSION

For the foregoing reasons, Yuga Labs respectfully requests that the Court preclude Defendants and anyone on their behalf from offering evidence or argument that the license provided for in Yuga Labs' BAYC Terms, or any use under the BAYC Terms, harmed or devalued the BAYC Marks.

## III.    DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

### A.    INTRODUCTION

All five of Plaintiff Yuga Labs's ("Yuga") motions *in limine* share a common theme: Yuga seeks to present the false narrative that Defendants' infringement was solely motivated by financial gain, and solely responsible for Defendants' losses. The truth is that the harms for which Yuga seeks damages are attributable to factors other than infringement, confusion, or false advertising: they are attributable to (1) backlash against Yuga when it was called out (by Defendants and others) for

FENWICK & WEST LLP
ATTORNEYS AT LAW

using racist and other hateful imagery in connection with its BAYC brand, and (2) Yuga's own decision to freely allow widespread use of its trademarks by others. The truth is that the Defendants genuinely believed in their artistic criticisms of Yuga's content as racist and alt-right-inspired, and that intent is directly relevant to the availability of disgorgement damages and any claim to enhanced damages as a result of willful infringement. Thus, contrary to Yuga's suggestions, Defendants do not intend to introduce this evidence contradicting Yuga's preferred narrative for any improper purpose; rather, Defendants must be permitted to introduce evidence that Yuga's damages were the result of factors other than Defendants' infringement, and that the Defendants' intent was to criticize Yuga, not to cause confusion.

Yuga's motion *in limine* no. 5 wrongly argues that Defendants are trying to back door a naked licensing defense, going so far as to claim (wrongly) that "Defendants indicated that they would re-package their naked licensing claim." But during the parties' May 9th conference, Defendants made clear that they ***do not plan to make a naked licensing argument*** to the jury. Defendants do, however, intend to refute Yuga's damages claim by showing that, as the result of Yuga's own actions, the market is crowded with third parties that also use Yuga's marks, which diminishes the harm caused by Defendants' use. Notably, Yuga does not dispute that the harm caused by infringement is significantly reduced when there are already many other third parties using the marks in the same or similar manner as an infringer. And this is no surprise, because, in a crowded market, the addition of a single additional actor has less impact than in a smaller market.

Here, Yuga itself invited wide-ranging third-party use of its marks through its own Terms & Conditions for BAYC NFTS. And the presence of literally thousands of third parties using the marks has weakened them, reducing the damages resulting from any confusion caused by Defendants' use.

Specifically, Yuga's Terms & Conditions provide that any of its 10,000 BAYC holders "own the underlying Bored Ape, the Art, completely." Tompros Decl. Ex. 1.

Fenwick & West LLP
Attorneys at Law

The Terms & Conditions further explain that BAYC holders are given "an unlimited, worldwide license to use, copy and display the purchased art for purposes of creating derivative works based upon the Art ('Commercial Use'). Examples of such Commercial Use would be e.g. be the use of the Art to produce and sell merchandise products (T-Shirts etc.) displaying copies of the Art." *Id*. But in many cases, the "Art" prominently displays one or more of the marks—which BAYC holders have used to market and promote brands entirely unrelated to Yuga. Thus, the Terms & Conditions have led to numerous companies and brands using Yuga's marks in commerce, diminishing the value of the BAYC brand.

This unfettered use of the marks by third parties reduces the harm caused by from Defendants' use of the marks. As Ninth Circuit's model instructions for trademark infringement make clear, "Damages means the amount of money which will reasonably and fairly compensate the plaintiff of any injury you find was ***caused by the defendant's infringement***." Ninth Circuit Model Civil Jury Instructions 15.27 (emphasis added). The commentary for this instruction explains "that plaintiff's loss in sales may be caused ***by other market factors*** and not as a result of defendant's infringement." *Id*. (emphasis added). This necessarily means that the jury must be allowed to consider how the marks are used in the market (including third-party use) to accurately scale the impact Defendants' activity had, as compared to losses caused "by other market factors." Defendants thus should be permitted to offer evidence of Yuga's decision to condone and encourage broad use of its marks to the jury, as it is relevant to determining actual damages.

## B.   BACKGROUND

Yuga, through its own conduct, has allowed and encouraged thousands of third parties to use its marks to market and promote brands unrelated to Yuga. This third-party market activity directly stems from the Terms & Conditions for BAYC NFTs, which provides NFT holders with a "worldwide, royalty-free license to use, copy and display the purchased Art" including for "commercial use." Tompros Decl. Ex. 1.

Fenwick & West LLP
Attorneys at Law

However, the "purchased Art" often depicts Yuga's marks, and the NFTs themselves include the "BAYC" and "BORED APE YACHT CLUB" marks.   BAYC NFT holders, relying on the Terms & Conditions, have used BAYC NFTs to prominently display Yuga's marks on their products and advertising materials.

A few examples of these third-party brands are (1) HALF BAYCD, which uses the BAYC mark and the Ape Skull logo, (2) Bored Coffee, which displays the BAYC mark and the Ape Skull logo, (3) a notebook brand displaying BORED APE YACHT CLUB, BORED APE, BAYC, and the Ape Skull logo, and (4) Bored & Hungry, which uses the BA YC BORED APE YACHT CLUB mark.

 

FENWICK & WEST LLP
ATTORNEYS AT LAW




Tompros Decl. Exs. 2-5.  (These are only four examples of hundreds of brands and competing NFT collections currently using the marks to sell products unrelated to Yuga.)  Tompros Dec. Ex. 6.   Many of these third parties use the marks under their rights to the "purchased art" in Yuga's Terms & Conditions, and Yuga affirmatively encourages these third parties to use the marks in such a manner.  In fact, in this very motion, Yuga describes Bored & Hungry as "[o]ne example of such positive use" and claims (citing solely the opinion of their ex-CEO) that it does not "devalue the BAYC Marks or confuse consumers."  *See supra* at 8.  But Bored and Hungry is commercially using a version of the BA YC BORED APE YACHT CLUB mark (as shown in the image above), just like the RR/BAYC Project.  Defendants should at minimum be entitled to have the factfinder determine whether other widespread use similar to the RR/BAYC Project's own use does or does not affect Yuga's damages.

## C.   ARGUMENT

The Terms & Conditions and related market activity should not be excluded because (1) the Terms & Conditions and market activity by Yuga licensees are relevant to damages and (2) there is no unfair prejudice, because third party market activity is highly relevant to the portion of any harm to Yuga that the RR/BAYC Project may have caused.

1.     **THE TERMS & CONDITIONS ARE RELEVANT TO DAMAGES**

The Ninth Circuit has made clear that an award of damages for trademark infringement should not exceed damages to the value of the infringed mark. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988-89 (9th Cir. 1995) (holding the award should "restore the value plaintiff's trademark has lost due to defendants' infringement"). The value of an infringed mark—and any corresponding damages—is largely dependent on how the mark is used in the marketplace.  When there are numerous third parties that use the relevant mark (lawfully or unlawfully), the value of the mark is significantly diminished because the mark is more loosely tied to the trademark holder.  *See Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224 (C.D. Cal. 2004) ("[E]ven an arbitrary mark may be classified as weak where there has been extensive third party use of similar marks on similar goods."); *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 WL 9266497, at *5 (N.D. Cal. Dec. 18, 2015 ) ("Third-party use of similar marks may bear on the strength of Novadaq's marks.").

Defendants intend to present evidence on the Terms & Conditions at trial because it is one of the mechanisms through which Yuga gave rights to third parties to display the marks in the marketplace, diminishing their value.  The transfer of rights in the Terms & Conditions lead to numerous third parties using the purchased art to prominently display Yuga's marks on their products and in their branding.  As a result, the marketplace has been flooded with hundreds of entities using Yuga's marks, diminishing the value of Yuga's marks and reducing any damages that confusion or false advertising resulting from the RR/BAYC Project could have caused.

It is well accepted that evidence of third-party use is admissible at trial.  *See*, *e.g.*, *Positive Ions, Inc. v. Ion Media Networks, Inc.*, No. 06-cv-04296-ABC-FFM, 2007 WL 9701734, at *10 (C.D. Cal. Nov. 7, 2007) ("[E]vidence of third-party uses

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  of the mark 'ion' in internet domain names consisting of the formula 'www.ion[].[]'

2  is relevant and admissible."); *see also* *Moose Creek*, 331 F. Supp. 2d at 1224.

3  Defendants' reliance on Yuga's encouragement of third-party use through its Terms

4  & Conditions is in line with this common practice in trademark litigation

5  **2.   THERE IS NO UNFAIR PREJUDICE**

6      Yuga perplexingly argues that that evidence of third-party use should be

7  excluded under Federal Rule of Evidence 403 because it would "encourage a decision

8  on improper reasoning."  *See supra* at 9.  But, as explained above, there is nothing

9  "improper" about considering third-party use to assess the value of a mark to

10 determine what damage may have arisen from infringement.  And, in fact, third-party

11 use is regularly admissible.  *See*, *e.g.*, *Positive Ions*, 2007 WL 9701734, at *10.

12     In fact, ***exclusion*** of evidence relating to the Terms & Conditions and third-

13 party use would result in ***unfair prejudice to the Defendants*** as it would force

14 Defendants to proceed with trial on damages without being able to present probative

15 evidence on the value of the marks.  It is the absence of this evidence that would

16 "encourage a decision on improper reasoning," if the jury were permitted to assess

17 damages based on the false narrative that the RR/BAYC Project was the only product

18 in the marketplace using the asserted marks.

19 **D.   CONCLUSION**

20     For the foregoing reasons, the Court should deny Yuga's motion *in limine*

21 No. 5.

22

23 Dated:  May 25, 2023                    FENWICK & WEST LLP

24

25                                        By:   */s/ Kimberly Culp*

26                                             Kimberly Culp
                                             Attorneys for Plaintiff
27                                           YUGA LABS, INC.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   Dated:  May 25, 2023          WILMER CUTLER PICKERING HALE
2                                 AND DORR LLP

3
4   By:  /s/ Louis W. Tompros
        Louis W. Tompros
5       Attorneys for Defendants
        RYDER RIPPS and JEREMY CAHEN
6

7           **ATTESTATION OF CONCURRENCE IN FILING**

8           Pursuant to the United States District Court for the Central District of

9   California's Civil L.R. 5-4.3.4(a)(2)(i), Kimberly Culp attests that concurrence in the

10  filing of this document has been obtained from Louis W. Tompros.

11

12                              /s/ Kimberly Culp
                                Kimberly Culp
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW