Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

Eric Ball (CSB No. 241327)
eball@fenwick.com
Kimberly Culp (CSB No. 238839)
kculp@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

Anthony M. Fares (CSB No. 318065)
afares@fenwick.com
Ethan M. Thomas (CSB No. 338062)
ethomas@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

Melissa L. Lawton (CSB No. 225452)
mlawton@fenwick.com
**FENWICK & WEST LLP**
228 Santa Monica Boulevard, Suite 300
Santa Monica, CA 90401
Telephone: 310-434-5400
Fax: 650-938-5200

*Additional Counsel listed on next page*

*Attorneys for Plaintiff
Yuga Labs. Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                              Plaintiff,<br><br>    v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                              Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Motion in Limine No. 6 by Defendants to Exclude the Testimony of Laura O'Laughlin**<br><br>Judge:  Hon. John F. Walter<br>Hearing: June 16, 2023, at 8:00 a.m.<br>Pre-Trial Conference: June 9, 2023, at 8:00 a.m.<br>Trial Date: June 27, 2023 |

Megan L. Meier (*pro hac vice*)
megan@clarelocke.com
David Y. Sillers (*pro hac vice*)
david@clarelocke.com
Kathryn G. Humphrey (*pro hac vice*)
kathryn@clarelocke.com
**CLARE LOCKE LLP**
10 Prince Street
Alexandria, VA 22314
Telephone: 202-6288-7400
Fax:  N/A

*Attorneys for Plaintiff*
*Yuga Labs, Inc.*

# TABLE OF CONTENTS

I.    DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES.........1

    A.    INTRODUCTION.......................................................................................1

    B.    ARGUMENT ..............................................................................................2

        i.    Ms. O'Laughlin's Opinion is Unreliable ........................................2

    C.    CONCLUSION ...........................................................................................4

II.   PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES.............4

    A.    Background ................................................................................................5

    B.    Standard ....................................................................................................6

    C.    Argument...................................................................................................7

        i.    Each Survey Was Conducted According to Accepted Principles..................................................................................................7

        ii.   Courts Find Consumer Confusion Testimony Reliable Where Experts Use Both Eveready and Squirt Formats in the Appropriate Contexts................................................................13

    D.    Conclusion...............................................................................................15

1

# TABLE OF AUTHORITIES

2

3
**Cases**

4
*BBK Tobacco & Foods LLP v. Central Coast Agriculture Inc.*, 615 F. Supp. 3d

5
982 (D. Ariz. 2002) ...........................................................................................1

6

7
*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001) ....................7

8
*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)...............2, 7

9

10
*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) ..........7

11
*Elevate Fed. Credit Union v. Elevations Credit Union*, No. 1-20-cv-00028-

12
DAK-JCB, 2022 WL 798901 (D. Utah Mar. 16, 2022)........................................2

13

14
*Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965 (D. Minn. 2017)............................13

15
*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d

16
1025 (9th Cir. 2010) ......................................................................................6, 8

17

18
*GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630 (S.D.N.Y. 2011)................................14

19
*Icleen Entwicklungs-Und Vertiebsanstalt Für Umweltprodukte v. Blueair AB*,

20
No. 21-cv-2236 DSF (ADS), 2021 WL 6104397 (C.D. Cal. Oct. 4, 2021).......13

21

22
*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and

23
Prod. Liab. Litig.*, 978 F. Supp. 2d 1053  (C.D. Cal. 2013)..............................12

24
*Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, No. 06-Civ.-550-

25
JFK, 2007 WL 2258688 (S.D.N.Y. Aug. 6 2007)..............................................3

26

27
*Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999) ......................................2, 12

28

*Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal. 1998)...................8

*Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, No. CV 13-02747 DMG
(AGRx), 2014 WL 5797541 (C.D. Cal. Oct. 7, 2014).........................................8

*Orgain, Inc. v. N. Innovations Holding Corp.,* No. 8:18-CV-01253-JLS-ADS,
2022 WL 2189648 (C.D. Cal. Jan. 28, 2022).......................................................8

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.,* No. CV 10-
00544 JW, 2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) ................................7

*Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150 (9th
Cir. 1982)..............................................................................................................7

*Safe Auto Ins. Co. v. State Auto. Mut. Ins. Co.*, No. 2:07-CV-1121, 2009 WL
3150328 (S.D. Ohio Sept. 30, 2009) ................................................................14

*Sports Mktg. Monterrey Grp., LLC v. Socios Servs. US Inc.*, No. 22-cv-08939-
SI, 2023 WL 2671379 (N.D. Cal. Mar. 27, 2023) ...........................................10

*Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002).........................6

*Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*, No. 20-CV-82296, 2022
WL 1013285 (S.D. Fla. Mar. 30, 2022) ..............................................................8

*Wendt v. Host Int'l, Inc.*, 125 F.3d 806 (9th Cir. 1997) ..............................................7

*YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL
429250 (W.D. Tex. 2017).................................................................................14

## I.     DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

### A.     INTRODUCTION

Defendants move *in limine* to exclude the opinion testimony of Laura O'Laughlin under Federal Rule of Evidence 702, because the methodology Ms. O'Laughlin used in reaching her opinions was inherently unreliable.

Ms. O'Laughlin was retained by Yuga to serve as a survey expert.  In her role as the survey expert, Ms. O'Laughlin conducted two different—and mutually exclusive—surveys to attempt to illustrate consumer confusion.  Specifically, she conducted both a "*Squirt*" survey and an "*Eveready*" survey.  *Squirt* surveys only apply where a trademark is weak, and where the goods are sold in close proximity. *See* Jerre B. Swan & R. Charles Henn Jr., *Likelihood of Confusion Surveys: The Ever Constant Eveready Format; The Ever-Evolving Squirt Format*, 109 The Trademark Rptr. 671, 676 (2019); *BBK Tobacco & Foods LLP v. Central Coast Agriculture Inc., 615 F. Supp. 3d 982, 1001 (D. Ariz. 2002)*.  *Eveready* surveys, by contrast, apply where the mark is "top of mind," not weak.  *See* Laura O'Laughlin et. al., *Which Method is for You? Not All Surveys are Made the Same*, Law Journal Newsletters: The Intellectual Property Strategist, Sept. 2020 at *2.

At her deposition, Ms. O'Laughlin refused to state which of the two conflicting surveys was the correct one.  But remarkably, Ms. O'Laughlin herself has published papers explaining when and how to choose between the two irreconcilable survey formats.  *Id.* at 1 (article aimed at practitioners explaining how they should "choose between" the two surveys).  Ms. O'Laughlin's use of ***both*** surveys, and her refusal to identify which one is correct for this case, renders her opinion internally inconsistent and groundless.  Because her use of two mutually exclusive survey formats renders her expert opinion inherently unreliable, her opinions based on that unreliable methodology must be excluded.

**B.     ARGUMENT**

**i.     Ms. O'Laughlin's Opinion is Unreliable**

The Federal Rules of Evidence require that an expert's opinion be "not only relevant, but reliable."  Fed. R. Evid. 702; *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  This requires the district court to act as a gatekeeper "to ensure the reliability and relevancy of expert testimony."  *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  The reliability component requires the court to probe the methods used by the specific expert in the case.  *See id.* at 153-54 (holding that although generally an expert's use of methodology at issue was reasonable, method specifically employed by expert was not).

Defendants do not contend that—standing alone—either the *Squirt* or *Eveready* surveys is inherently unreliable.  But each has its place depending on the fame of the mark at issue, and the two cannot be used together.  Ms. O'Laughlin's use of two mutually exclusive survey methods without choosing one of the survey methods or adequately articulating why she chose to deviate from her prior recommendation in her writings to select the survey method that applies, renders her methods unreliable.

The *Squirt* test involves showing an experiment and control group stimuli that is similar to conditions in the marketplace.  This presentation creates a "lineup" of products including both the accused mark and the plaintiff's mark.  This "lineup" is supposed to approximate how the products appear in the market.  *See Elevate Fed. Credit Union v. Elevations Credit Union*, No. 1-20-cv-00028-DAK-JCB, 2022 WL 798901, at *12 (D. Utah Mar. 16, 2022) (excluding Squirt survey for not replicating market conditions). The respondents are then asked whether the marks are from the same company.  This directly cues respondents to try to draw connections between different products within the group.  Courts have excluded *Squirt* surveys where the expert should have chosen to use an *Eveready* survey instead.  *See Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, No. 06-Civ.-550-JFK, 2007 WL 2258688, at

1  *8 (S.D.N.Y. Aug. 6 2007) (excluding Squirt survey employed at improper time).

2          By contrast, the *Eveready* is appropriate for major, recognizable brands.  *See*

3  Laura O'Laughlin et. al., *Which Method is for You? Not All Surveys are Made the*

4  *Same*, Law Journal Newsletters: The Intellectual Property Strategist, Sept. 2020 at *2.

5  Unlike *Squirt* surveys, *Eveready* surveys only show either the accused mark or a

6  control mark.  Respondents are then asked to identify who put out the marks or who

7  sponsored the marks.  The entire underpinning of *Eveready* is that the mark is, in fact,

8  a strong mark.  *See* Jerre B. Swann, *Likelihood of Confusion Studies and the*

9  *Straitened Scope of Squirt*, 98 The Trademark Rptr. 739, 740-45.

10         Courts and experts recognize that these tests serve different purposes for

11 different types of marks.  For this reason, experts in the field have published papers on

12 considerations in "choosing between" the tests.  *See*, *e.g.*, Laura O'Laughlin et. al,

13 *Which Method is for You? Not All Surveys are Made the Same*, Law Journal

14 Newsletters: The Intellectual Property Strategist, Sept. 2020 (guide for intellectual

15 property practitioners giving advice on how to choose the correct survey method

16 authored by O'Laughlin).  What is good in some scenarios creates confusion in other

17 scenarios.

18         Ms. O'Laughlin was offered the opportunity to choose between the surveys at

19 her deposition, which would have partially ameliorated the problem with presenting

20 both surveys.  *See* O'Laughlin Dep. Tr. 83:21-86:13.  Instead of following the best

21 practices of the field, Ms. O'Laughlin doubled down and stated that she was not going

22 to choose between the two tests.  Ms. O'Laughlin's insistence that both surveys are

23 applicable renders her opinion unreliable.

24         It would be inappropriate for the Court or Yuga to choose between the surveys,

25 because the very fact that Ms. O'Laughlin opined that both were applicable makes her

26 opinion necessarily unreliable.  The time for choosing the right methodology has long

27 passed.  Even if Ms. O'Laughlin were to choose between the surveys now, that choice

28

would not salvage her opinion.  She chose to rest her opinion on the use of ***both*** mutually exclusive surveys taken together; it was that decision that rendered her methodology unreliable and compels its exclusion.

### C.    CONCLUSION

In light of the foregoing, the Court should exclude the testimony of Laura O'Laughlin.

## II.    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

Defendants do not dispute that Yuga Labs' survey expert Laura O'Laughlin is qualified to present her opinion, that the opinion is relevant, or even that either survey she offers was reliable and conducted according to accepted principles.  Instead, Defendants seek to exclude Ms. O'Laughlin's expert report and testimony ***on the sole basis*** that the report relied on two consumer surveys—her Foundation Eveready survey and her OpenSea Squirt survey—which Defendants characterize as "mutually exclusive survey formats" and argue that her report is therefore "internally inconsistent."  Defendants' argument lacks merit.

According to well-established case law and academic literature, the "Squirt" and "Eveready" survey formats are both acceptable, and they are not mutually exclusive.  Ms. O'Laughlin used the two survey methodologies appropriately given that Defendants advertised and sold their NFTs under Yuga Labs' marks in more than one context.  For completeness, Ms. O'Laughlin conducted two independent surveys to assess the likelihood of confusion on the Foundation marketplace (where the parties' NFTs were not sold next to each other) and to assess likelihood of confusion on the OpenSea marketplace (where the parties' NFTs appeared next to each other).  It is no surprise that Defendants fail to cite a single case that holds that an expert report should be excluded for conducting two independent surveys with different methodologies to test for consumer confusion in two different contexts.  Their theory does not hold water, defies common sense, and asks the Court to create a new and

1   imprudent rule.

2        Defendants' motion is meritless and should be denied.

3   **A.    Background**

4        On February 6, 2023, Yuga Labs served Laura O'Laughlin's expert report.

5   Exhibit 105 to Yuga Labs' Motion for Summary Judgment (Dkt. 149-113) ("Report").

6   Ms. O'Laughlin is a Vice President at Analysis Group, Inc., and she has extensive

7   experience in the design, development, administration, and analysis of surveys and

8   experiments in a variety of matters, including antitrust, consumer protection, false

9   advertising, trademark infringement, and patent infringement.  Report ¶¶ 1-2.

10       Ms. O'Laughlin designed, conducted, and analyzed two independent consumer

11  confusion surveys as part of her expert engagement.  Report ¶ 16.  First, to assess

12  consumer confusion from Defendants' use of the BAYC Marks on the Foundation

13  marketplace, she used an "Eveready"-format survey with relevant marketplace context

14  and control stimuli and determined a net confusion rate of 40.4%.  *Id.*  Second, to

15  assess consumer confusion from Defendants' use of the BAYC Marks on the OpenSea

16  marketplace, she used a "Squirt"-format survey with relevant marketplace context and

17  control, and she determined a net confusion rate of 20.0%.  *Id.*  As to both surveys,

18  Ms. O'Laughlin found that "the majority of confused respondents exhibited strongly

19  held beliefs as to the source of the at-issue RR/BAYC NFT collection," confirming

20  her findings of a meaningful likelihood of confusion in both the Foundation and

21  OpenSea contexts.  *Id.*

22       The different survey methodologies were employed based on the context of

23  Defendants' misuse of the BAYC Marks.  First, "[i]n Eveready format surveys

24  involving forward confusion, respondents are presented with only the allegedly

25  infringing mark and asked open-ended questions to assess confusion."  Report ¶ 20

26  n.58.  Ms. O'Laughlin used this survey to test Defendants' advertising and sales on

27  Foundation, because the BAYC NFT collection was not being sold on Foundation at

28

the time.  Report ¶ 20.  Second, "[i]n Squirt format surveys involving forward
confusion, respondents are presented with both parties' marks and asked closed-ended
questions to assess confusion."  Report ¶ 21 n.60.  Ms. O'Laughlin used this format
for OpenSea, as both parties' NFTs were sold, and heavily promoted as top selling
products, at the same time on OpenSea.  Report ¶ 21.

Defendants did not designate or identify a survey expert of their own, nor did
they designate an expert to attempt to rebut Ms. O'Laughlin's findings.

On April 21, 2023, as part of its Order granting summary judgment on Yuga
Labs' claims for false designation of origin and cybersquatting, the Court found that
Defendants' use of the BAYC Marks was likely to cause confusion.  Dkt. 225 at 10-
13.  The Court did not discuss Ms. O'Laughlin's report in its Order but noted that
"even though Yuga has presented evidence of actual confusion, the Court does not
need to consider it because the other *Sleekcraft* factors weigh heavily in favor of a
likelihood of confusion."  *Id.* at 12.

### B.    Standard

Defendants do not dispute that consumer confusion surveys are regularly relied
on for evidence of actual confusion in Lanham Act cases.  *See, e.g.*, *Thane Int'l, Inc.
v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) ("Survey evidence may
establish actual confusion").  Courts in the Ninth Circuit hesitate to exclude this
testimony, instead allowing the factfinder to weigh any purported deficiencies in the
surveys or the expert's testimony.  Accordingly, whether the Eveready or Squirt
format is used, "***survey evidence should be admitted 'as long as [it is] conducted
according to accepted principles and [is] relevant*.'"  *Fortune Dynamic, Inc. v.
Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037 (9th Cir. 2010)
(alterations in original, emphasis added) (citation omitted) (finding district court
abused discretion in excluding expert survey).  "[I]ssues of methodology, survey
design, reliability, the experience and reputation of the expert, critique of conclusions,

1  and the like go to the weight of the survey rather than its admissibility.  These are

2  issues for a jury . . . ." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263

3  (9th Cir. 2001) (citation omitted); *see also Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814

4  (9th Cir. 1997) ("Challenges to survey methodology go to the weight given the

5  survey, not its admissibility."); *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of*

6  *Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Technical unreliability goes to the weight

7  accorded a survey, not its admissibility.").[1]

8  **C.    Argument**

9        Ms. O'Laughlin's testimony is undisputedly relevant to Yuga Labs' false

10 advertising claim as well as damages for its other Lanham Act claims.  Because

11 Ms. O'Laughlin's relevant consumer confusion surveys and her expert testimony

12 regarding the same follow accepted principles, they are therefore reliable and

13 admissible.  Defendants claim, however, that Ms. O'Laughlin's opinion is unreliable

14 solely because she conducted two separate surveys.  This claim is baseless.

15        **i.    Each Survey Was Conducted According to Accepted Principles**

16        Ms. O'Laughlin's report is neither unreliable nor contrary to accepted

17 principles.  Survey methodology is generally a question for a finder of fact, and

18 accordingly, expert survey testimony is admissible even if flawed.  *E. & J. Gallo*

19 *Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992); *see also, e.g., PixArt*

20 *Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.,* No. CV 10-00544 JW,

21 2011 WL 5417090, at *5 (N.D. Cal. Oct. 27, 2011) ("[T]echnical considerations []

22 affect only the weight, and not the admissibility of a survey.  In addition, each other

23 alleged deficiency is precisely the sort of deficiency that juries are expected to

24

25 _____

26 [1]  As these cases demonstrate, courts in this circuit assessing expert confusion surveys
employ this standard rather than explicitly weigh the five factors set forth in *Daubert*

27 *v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993).  Defendants do not appear to
dispute this as they do not discuss the *Daubert* factors, nor do they offer *any*

28 competing standard by which their motion should be evaluated.

evaluate in assessing the probative value of a survey.") (citation omitted);
*Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, No. CV 13-02747 DMG (AGRx),
2014 WL 5797541, at *9 (C.D. Cal. Oct. 7, 2014) ("In any case, the lack of a control
group alone does not render a confusion survey so fatally flawed as to be
inadmissible."); *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1135 (C.D.
Cal. 1998) ("Defendants also object that plaintiff did not use a control group . . . .
Although the survey contains flaws, 'technical unreliability' goes to the weight the
Court is to afford the survey, rather than its admissibility.") *aff'd*, 296 F.3d 894 (9th
Cir. 2002).

As outlined above and in Ms. O'Laughlin's report, she used appropriately
designed surveys with relevant marketplace context and control stimuli, and she
conducted her analyses using best practices for survey research.  Indeed, Defendants
do not dispute that both of Ms. O'Laughlin's surveys were each conducted according
to accepted principles,[2] and Defendants fail to identify any genuine deficiency in

---

[2]  Indeed, the Eveready and Squirt survey formats are widely accepted for assessing
consumer confusion in Lanham Act cases.  *See, e.g.*, 6 McCarthy on Trademarks and
Unfair Competition § 32:174 (5th ed.) ("The Eveready survey format is widely
regarded as an appropriate method of testing for likelihood of confusion."); *Fortune
Dynamic*, 618 F.3d at 1037-38 (district court abused discretion in excluding Squirt-
type survey that "compared the products side-by-side"); *Organ, Inc. v. N. Innovations
Holding Corp.,* No. 8:18-CV-01253-JLS-ADS, 2022 WL 2189648, at *5 (C.D. Cal.
Jan. 28, 2022) ("courts routinely admit Eveready surveys . . . even for products that
compete directly against one another in the marketplace."); *Organ, Inc. v. N.
Innovations Holding Corp.*, No. 8:18-CV-001253-JLS-ADS, 2021 WL 1321653, at
*16 (C.D. Cal. Mar. 22, 2021) (declining to disregard either survey format, holding
that arguments about methodologies for experts' competing Eveready and Squirt
surveys "go to the weight of the evidence not its admissibility"); *Therapeutics MD,
Inc. v. Evofem Biosciences, Inc.*, No. 20-CV-82296, 2022 WL 1013285, at *5 (S.D.
Fla. Mar. 30, 2022), *report and recommendation adopted in part, rejected in part on
other grounds*, No. 20-CV-82296-RAR, 2022 WL 1300064 (S.D. Fla. Apr. 28, 2022)
(holding "[b]oth the *Squirt* and *Eveready* methodologies have been deemed acceptable
by courts" and allowing factfinder to consider both surveys).

1   either survey, much less one that would render it inadmissible.

2           Without any basis to argue that either survey on its own is excludable,

3   Defendants ask to exclude evidence of *both* surveys by suggesting that

4   Ms. O'Laughlin did not follow accepted principles by conducting a separate survey

5   for each marketplace context.  Defendants do so by mischaracterizing Ms.

6   O'Laughlin's deposition testimony as a "refus[al] to state which of the two conflicting

7   surveys was the correct one."  In reality, in the answer apparently referred to by

8   Defendants, this is what she said:

9           Q:  And which survey is more appropriate for this case,

10          Eveready or Squirt?

11          A:  **I conducted both, both are appropriate.**

12   O'Laughlin Dep. Tr. 84:18-20 (emphasis added).

13          Defendants contort Ms. O'Laughlin's testimony to fit their misleading narrative

14   that her report is "internally inconsistent."  But there is no inconsistency.

15   Ms. O'Laughlin did not arbitrarily use two different survey methodologies; she used

16   the appropriate methodology for each marketplace context.  Moreover, each

17   methodology separately arrived at the *same* result—that there is a meaningful

18   likelihood of confusion for customers as a result of Defendants' use of the BAYC

19   Marks (on Foundation and on OpenSea) to promote their knockoff NFTs—further

20   showing the reliability of the surveys.

21          Ms. O'Laughlin determined that an Eveready survey was appropriate on

22   Foundation where the genuine BAYC collection was not listed at the time, and a

23   Squirt survey was appropriate on OpenSea where the genuine BAYC NFTs and the

24   knockoff NFTs were sold on the same platform.  *See* Report ¶¶ 20 n.58 (explaining

25   use of Eveready survey for Foundation), 21 n.60 (explaining use of Squirt survey for

26

27

28

1    OpenSea).[3]

2        Indeed, using both methods controls for additional variables and adds reliability

3    to the results of the survey.  *See* Jerre B. Swann, *Eveready and Squirt-Cognitively*

4    *Updated*, 106 Trademark Rep. 727, 737 (2016) ("even as to proximate marks, an

5    ***Eveready may always be offered*** (possibly in response to complaint allegations of

6    trademark strength) ***in conjunction with a Squirt*** to negate the reach capabilities of a

7    brand") (emphases added); *see also* <u>*Sports Mktg. Monterrey Grp., LLC v. Socios*</u>

8    <u>*Servs. US Inc.*, No. 22-cv-08939-SI, 2023 WL 2671379, at *19 (N.D. Cal. Mar. 27,</u>

9    <u>2023)</u> ("The Ninth Circuit has not decided whether the *Eveready* or *Squirt* survey

10   formats are more appropriate to use to test for likelihood of confusion in reverse

11   confusion cases but has held broadly that ***any type of survey evidence should be***

12   ***admitted 'as long as [it is] conducted according to accepted principles and [is]***

13   ***relevant***.'" (alterations in original, emphasis added) (citation omitted)).

14       Defendants cite to one of Ms. O'Laughlin's articles apparently suggesting that

15   it undermines her choice to use different surveys in different contexts, but the article

16   affirms the decisions she made in her report.  "Eveready and Squirt are two common

17   survey formats used in U.S. courts to assess potential confusion.  Courts generally

18   view trademark strength and marketplace proximity as factors to consider when

19   choosing between Eveready and Squirt."  Laura O'Laughlin, et al., *Which Method is*

20   *for You? Not All Surveys are Made the Same*, Law Journal Newsletters: The

21   Intellectual Property Strategist, Sept. 2020 at 1-2.  Ms. O'Laughlin considered

22   proximity as a factor when choosing the appropriate survey format to test likelihood

23   _____

24   [3] Defendants argue "the *Eveready* is appropriate for major, recognizable brands," but

25   stop short of saying which survey methodology they apparently believe should have
     been exclusively used in this case.  *Supra*, Defendants' Motion at Section B.i.

26   Whether a brand is top of mind for a consumer is only one factor used in determining
     which survey method to use (Defendants do not address proximity of the marks in the

27   market).  Even more critical to Defendants' motion, as the cases in this section above
     demonstrate, Defendants' criticism of survey choice is an issue for the jury.

28

of confusion in the Foundation and OpenSea marketplaces separately.

Though Defendants fail to candidly address it, Ms. O'Laughlin explained these same points to them during her deposition:

> Q:  And courts recommend different types of surveys for different types of matters; correct?
>
> A:  I suppose so. I don't know if a court specifically prescribes one thing or another, but **it's part of the job of the expert as well is to evaluate — evaluate the case and take a look and see what might be the most appropriate way to test for confusion given a particular context**.

O'Laughlin Dep. Tr. 84:7-17 (emphasis added).

> Q:  Okay. Which was the right survey methodology for this case?
>
> A:  As I mentioned, **the right survey methodology to address my assignment was to conduct two surveys. Two surveys were required. One was the Foundation Eveready Survey and another was the OpenSea Squirt Survey.**

*Id*. at 91:24-92:5 (emphasis added); *see also id.* at 90:23-91:2 ("I decided to conduct two online consumer surveys, one that took an Eveready approach and another that took a Squirt approach, given the marketplace context in which the marks appeared."); *id.* at 98:15-18 ("You need to think about whether the marks appear next to one another in the instance of assessing confusion in which — which is my assignment here, consumer confusion."); *id.* at 99:13-16 ("it's appropriate to use the Eveready Survey design [for the Foundation marketplace] because this is where only the junior user's use of the senior user's mark appears.").

Contrary to Defendants' proposition, there is nothing unscientific about

reaching the same result by two different, accepted methods in the appropriate contexts.  Indeed, the differences in the two surveys *reinforce* the reliability of the methods employed and the conclusion that Defendants confused consumers, even on different platforms.  The findings of one survey do not contradict or undermine the other, and therefore the report is not "internally inconsistent."

Defendants' authorities say nothing to support their argument and in fact demonstrate Yuga Labs' points.  For example, in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1085 (C.D. Cal. 2013), the court excluded expert testimony based on tire marks about whether a driver was "in control" of a vehicle at the time of an accident. The court noted that this opinion depended solely on a type of tire mark that the expert conceded was "not conclusive one way or another as to" control of the vehicle, and on that basis alone the court excluded this conclusion as "both internally inconsistent and unhelpful." *Id.*  Here, nothing in the record—and certainly not her own testimony— suggests that Ms. O'Laughlin's finding of meaningful likelihood of confusion point to two inconsistent conclusions.  To the contrary, the finding of actual confusion on two different platforms (tested using two appropriately tailored methodologies) provides further evidence to support her conclusions.

Additionally, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, the Supreme Court agreed with the district court's exclusion of expert testimony where the proffered testimony about a "visual and tactile inspection" of a tire was unreliable under all of the *Daubert* factors.  *Id.* at 156.  This decision does not hold that expert testimony should be excluded where "the report [i]s internally inconsistent with the opinion expressed at the deposition," as Defendants claim in their citation; rather, the Court said that the deposition testimony supported exclusion because the testimony confirmed the "subjective[ness]" of tire examination and revealed that the methodology was imprecise.  *Id.* at 154-155.  Defendants have identified no such

1  methodological flaws in Ms. O'Laughlin's report or testimony that suggests the

2  results of her surveys are subjective or imprecise.

3      **ii.**    **Courts Find Consumer Confusion Testimony Reliable Where**

4      **Experts Use Both Eveready and Squirt Formats in the**

    **Appropriate Contexts**

5

6        Notwithstanding the failure of Defendants' attacks against Ms. O'Laughlin's

7  report, their arguments are matters for the jury.  *E. & J. Gallo*, 967 F.2d at 1292.

8  There is no merit to Defendants' novel theory for excluding expert survey evidence

9  because it was essentially *overly* rigorous for testing confusion in two different

10  contexts.  Indeed, Defendants fail to identify a single case in which a court has done

11  so.  *See* Defendants' Motion at Section B.i (averring "the two cannot be used

12  together" without citing any authority).

13        Defendants' motion also fails to acknowledge that courts often permit and

14  credit expert testimony involving use of both Eveready and Squirt surveys.  In *Icleen*

15  *Entwicklungs-Und Vertiebsanstalt Für Umweltprodukte v. Blueair AB*, No. 21-cv-

16  2236 DSF (ADS), 2021 WL 6104397 (C.D. Cal. Oct. 4, 2021), the defendant's survey

17  expert conducted two consumer confusion surveys: "an Eveready survey to determine

18  the likelihood of confusion in situations, like this one, where [the parties'] products

19  are not proximate in the marketplace" because they are sold via different websites, and

20  "a Squirt survey to determine the likelihood of confusion in scenarios where the

21  parties' marks are considered proximate in the marketplace." *Id.* at *8 (cleaned up).

22  The court credited the surveys in ruling on a preliminary injunction, finding that the

23  opposing party "has not demonstrated the surveys are unreliable or provided a

24  competing survey." *Id.* at *9.  The same is true here.

25        In *Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965 (D. Minn. 2017), the

26  defendant similarly used both survey formats within the same case to address

27  likelihood of confusion in different contexts.  "The first survey—the *Eveready*

28

survey—establishes . . . [that a] consumer who is shown the Registered Mark is highly unlikely to think that it has anything to do with Snap. . . .  The second survey—the *Squirt* survey—purports to show that consumers who are shown the Spectacles Mark and the Registered Mark in close proximity do not confuse the two any more than they confuse a non-infringing control mark shown in close proximity with the Registered Mark." *Id.* at 977.  The court credited the surveys in ruling on a preliminary injunction over the opposing party's objections.  Likewise, Defendants' objections should be rejected.

*GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630 (S.D.N.Y. 2011), is yet another example of a court considering an Eveready survey and a "sequential lineup" (i.e., Squirt) survey from the same expert in order to "consider instances when the products are marketed in close physical proximity . . . and also in separate channels." *Id.* at 640.  The court credited these surveys in its preliminary injunction determination, finding that the opposing party "did not successfully impeach the survey's methodology or conclusions." *Id.* at 648.

Even more, Courts have rejected attempts to exclude experts' testimony and results where the expert used both the Squirt and Eveready survey methods *in the same survey*.  *See YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 429250, at *3 (W.D. Tex. 2017) (declining to exclude from trial a survey that joined the Eveready and Squirt survey methods); *Safe Auto Ins. Co. v. State Auto. Mut. Ins. Co.*, No. 2:07-CV-1121, 2009 WL 3150328, at *3 (S.D. Ohio Sept. 30, 2009) (declining to exclude from trial a survey, noting "[t]he Survey's methodology combined elements of both an *Eveready*-type approach and a *Squirt-type* approach, two approaches that have received court approval").

In sum, there is no authority to support Defendants' argument for a rule prohibiting the use of both the Eveready and Squirt survey formats to address use of the allegedly infringing marks in different contexts.

1

2

3

4

**D.    Conclusion**

Because Defendants fail to establish any ground on which Ms. O'Laughlin's rigorous and highly relevant survey evidence should be excluded, their motion should be denied.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Respectfully submitted,

2    Dated:  May 25, 2023

3

4    By: */s/   Louis W. Tompros*                    By: */s/ Eric Ball*

5    Louis W. Tompros (*pro hac vice*)               Eric Ball (CSB No. 241327)
     louis.tompros@wilmerhale.com                    eball@fenwick.com
6    Monica Grewal (*pro hac vice*)                  Kimberly Culp (CSB No. 238839)
     monica.grewal@wilmerhale.com                    kculp@fenwick.com
7    Scott W. Bertulli (*pro hac vice*)              **FENWICK & WEST LLP**
     scott.bertulli@wilmerhale.com                   801 California Street
8    Tyler Carroll (*pro hac vice*)                  Mountain View, CA 94041
     tyler.carroll@wilmerhale.com                    Telephone: 650.988.8500
9    **WILMER CUTLER PICKERING**                     Fax: 650.938.5200
       **HALE AND DORR LLP**
10   60 State Street                                 Anthony M. Fares (CSB No. 318065)
     Boston, MA 02109                                afares@fenwick.com
11   Telephone: (617) 526-6000                       Ethan M. Thomas (CSB No. 338062)
     Fax: (617) 526-5000                             ethomas@fenwick.com
                                                     **FENWICK & WEST LLP**
12   Derek Gosma (SBN 274515)                        555 California Street, 12th Floor
     derek.gosma@wilmerhale.com                      San Francisco, CA 94104
13   Henry Nikogosyan (SBN 326277)                   Telephone: 415.875.2300
     henry.nikogosyan@wilmerhale.com                 Fax: 415.281.1350
14   **WILMER CUTLER PICKERING**
       **HALE AND DORR LLP**                         Melissa L. Lawton (CSB No. 225452)
15   350 South Grand Ave., Suite 2400                mlawton@fenwick.com
     Los Angeles, CA 90071                           **FENWICK & WEST LLP**
16   Telephone: (213) 443-5300                       228 Santa Monica Boulevard, Suite 300
     Fax: (213) 443-5400                             Santa Monica, CA 90401
                                                     Telephone: 310-434-5400
17                                                   Fax: 650-938-5200
     Attorneys for Defendants
18   *Ryder Ripps and Jeremy Cahen*
                                                     Megan L. Meier (*pro hac vice*)
19                                                   megan@clarelocke.com
                                                     David Y. Sillers (*pro hac vice*)
20                                                   david@clarelocke.com
                                                     Kathryn G. Humphrey (*pro hac vice*)
21                                                   kathryn@clarelocke.com
                                                     **Clare Locke LLP**
22                                                   10 Prince Street
                                                     Alexandria, VA 22314
23                                                   Telephone: 202-6288-7400
                                                     Fax:  N/A
24

25                                                   *Attorneys for Plaintiff*
                                                     *Yuga Labs, Inc.*
26

27

28

# ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.


By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
    HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000


# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document is in compliance with the Court's Scheduling Order (Dkt. 57) and the Local Rules.


By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
    HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on May 25, 2023.


By: /s/  *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000