Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Ryder Ripps and Jeremy Cahen,<br><br>Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**MR. RIPPS AND MR. CAHEN'S MEMORANDUM OF CONTENTIONS OF FACTS AND LAW**<br><br>Judge: Hon. John F. Walter<br><br>Pre-Trial Conference Date: June 9, 2023<br>MIL Hearing Date: June 16, 2023<br>Trial Date: June 27, 2023 |

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. PLAINTIFF'S CLAIMS .......................................................................................1

    A. False Advertising (Claim 2) ......................................................................1

        i. Elements ...........................................................................................1

        ii. Key Evidence in Opposition ...........................................................2

    B. Willful or Intentional Infringement for Enhanced Damages ...............4

        i. Elements ...........................................................................................4

        ii. Key Evidence in Opposition ...........................................................5

    C. Damages (Claims 1 and 3, and Claim 2 if Liability Is Found) ............5

        i. Elements ...........................................................................................5

        ii. Key Evidence in Opposition ...........................................................6

III. DEFENDANTS' COUNTERCLAIMS AND AFFIRMATIVE DEFENSES ...................................................................................................9

IV. EVIDENTIARY ISSUES .....................................................................................9

V. ISSUES OF LAW ..................................................................................................9

Case No. 2:22-cv-04355-JFW-JEM      -i-      DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW

# TABLE OF AUTHORITIES

**Cases**

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989) ................... 2

*Nintendo of America, Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007 (9th Cir. 1994) ............. 6

*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170 (9th Cir. 2003) ....................................... 2

*Rolex Watch U.S.A., Inc. v. Zeotech Diamonds, Inc.*, No. CV 02-01089 GAF (VBKx), 2003 WL 23705746 (C.D. Cal. Mar. 7, 2003) ..................................... 6

*Romag Fasteners, Inc v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020) ................................................................................................... 5, 6, 8

*Romag Fasteners, Inc v. Fossil, Inc.*, No. 3:10-cv-1827, 2014 WL 4073204 (D. Conn. Aug. 14, 2014) ............................................................................................ 5

*New Kids on the Block v. News Am. Pub. Inc.*, 971 F.2d 302 (9th Cir. 1992) ............... 3

*TriPharma, LLC v. First Fruits Business Ministry*, SACV 12-4-4 JVS (ANx), 2013 WL 12129386 (C.D. Cal. Apr. 2, 2013) ..................................................... 6

**Statutes**

15 U.S.C. § 1117 ............................................................................................... 12, 14

17 U.S.C. § 512(f) ..................................................................................................... 14

C. Civ. Proc. § 425.16(c) .......................................................................................... 14

## I. INTRODUCTION

In May 2022, Defendants Ryder Ripps and Jeremy Cahen collaborated to create a parody NFT collection called the Ryder Ripps Bored Ape Yacht Club (RR/BAYC). Mr. Ripps, who is recognized as among the most influential digital artists of the past decade, worked with Mr. Cahen create the RR/BAYC Project as appropriation art, to encourage people to reflect on the nature of NFTs and the problematic content of Plaintiff Yuga Labs Inc.'s ("Yuga") Bored Ape Yacht Club ("BAYC") brand.

Yuga brought this action on June 24, 2022, asserting three federal causes of action and eight state-law causes of action related to the RR/BAYC Project. Dkt. 1. Defendants asserted six related counterclaims. Dkt. 65. Each of the counterclaims has been withdrawn, stricken, and/or dismissed (Dkt. 156), and Yuga's state law claims are stayed pending appeal of the denial of Defendants' anti-SLAPP motion (Dkt. 63). The Court granted in part Yuga's motion for summary judgment, finding for Yuga on Claim 1 (false designation of origin under 15 U.S.C. § 1125(a)) and Claim 3 (cybersquatting under 15 U.S.C. § 1125(d)). Dkt. 225 at 22. The Court denied Yuga's summary judgment motion as to whether the case was an exceptional case of intentional infringement and as to damages. *Id.* at 13, 22. The remaining issues for trial are therefore: (1) Yuga's Claim 2 for false advertising; (2) all factual issues underlying whether this case is exceptional because of intentional infringement; and (3) damages for Claims 1 and 3 and, if applicable, Claim 2.

## II. PLAINTIFF'S CLAIMS

### A. False Advertising (Claim 2)

#### i. Elements

Yuga must prove the following elements to establish its False Advertising claims for the asserted unregistered trademarks:

1. in advertisements, Defendants made a false or misleading statement of fact about their own or another's product;

2. that false or misleading statement of fact actually deceived or had the tendency to deceive a substantial segment of their audience;

3. such deception is material, in that it was likely to influence the purchasing decision;

4. Defendants caused their falsely advertised goods to enter interstate commerce; and

5. Yuga Labs has been injured as a result of the foregoing either by direct diversion of sales from itself to Defendants, or by lessening of the goodwill which its products enjoy with the buying public.

*See* Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.2 (modified as shown); comment to Ninth Circuit Model Jury Instruction 15.5 ("Elements required for a false advertising claim, cognizable under 15 U.S.C. § 1125(a)(1)(B), are set forth in *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003)."); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) ("In order to prove a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a claimant must establish: 1) in advertisements, defendant made false statements of fact about its own or another's product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public.") (modified as shown); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) ("In a suit for damages under section 43(a), however, actual evidence of some injury resulting from the deception is an essential element of the plaintiff's case.").

      **ii.**     **Key Evidence in Opposition**

        **a)**    **Defendants Did Not Make False or Misleading Statements of Fact in Advertisements**

The RR/BAYC Project was a parody project launched as a protest against Yuga. As testimony of Defendants and Yuga's own witnesses will make clear, the purportedly false or misleading statements that Yuga identifies as the basis for its false advertising claim were all made as part of that parody project, and were not made as statements of fact in advertisements. Testimony will show that the "full commercial rights" statement on which Yuga relies was made as part of an obvious joke. Likewise, testimony will show that the "®" symbol on which Yuga relies to claim that Defendants falsely claimed to own a registered trademark was part of a parody image made by a third party, and not a statement of fact in advertising made by Defendants. Similarly, the evidence will show that there were no false statements of fact in advertising relating to giving royalties to charity, hand-minting, "BAYC V3" or Yuga's "Otherside" game. Nor will Yuga be able to sustain any claim that the critical parody RR/BAYC Project was in any way believed to be sponsored by or affiliated with Yuga. *See New Kids on the Block v. News Am. Pub. Inc.*, 971 F.2d 302, 309 (9th Cir. 1992) ("Critical works are much less likely to have a perceived affiliation with the original work.").

        **b)**    **No Substantial Segment of the Audience Was Deceived**

Yuga elected not to conduct any survey evidence and has no evidence whatsoever showing that any substantial segment of the audience was deceived by any of what it alleges were Defendants' false statements in advertising. Defendants will confirm that they are aware of no one who believed their parody statements to be fact.

        **c)**    **No Alleged Deception Influenced Any Purchasing Decision**

Yuga has no evidence—nor are Defendants aware of any—that anyone who purchased an RR/BAYC NFT was influenced in any way by an of the alleged false statements that Yuga identifies. Additionally, Defendants' conduct shows that there

was no intent to confuse that could give rise to any presumption of influence.  Rather, Defendants took specific steps to prevent confusion.  Dkt. 197-1 ¶¶ 229-230.  Those steps include adding a lengthy explanation of the purpose of RR/BAYC on rrbayc.com as well as a disclaimer expressly requiring purchasers to acknowledge the artistic purpose of the project.  Dkt. 197-1 ¶¶ 201-202.   Moreover, Defendants' online discussion of the RR/BAYC Project focused on their criticism of Yuga, making clear that their intent was not to confuse, but rather to educate consumers concerning the nature of NFTs and to call out the BAYC collection's hateful imagery.  Dkt. 197-1 ¶¶ 203-04.

### d) Yuga Suffered No Injury as a Result of Defendants' Alleged False Advertisement

Yuga has suffered no injury as a result of Defendants advertising activities because the allegedly false statements on which Yuga's claims rest on did not lead to any consumers being deceived, much less to anyone purchasing an RR/BAYC instead of a BAYC or otherwise damaging Yuga's goodwill.   Yuga itself admitted that it is "not aware of any specific instance where a Person or Entity purchased a BAYC NFT believing that it was an RR/BAYC NFT."  Ex. 1194, at 16-17.  Nor is there any example of damage to goodwill as a result of the specific alleged false advertisements that Yuga asserts.

### B. Willful or Intentional Infringement for Enhanced Damages
#### i. Elements

Yuga must prove the following elements to establish willful infringement for enhanced damages:

1. Defendants were actually aware of the infringing activity, or
2. Defendants' actions were the result of willful blindness.

See *Romag Fasteners, Inc v. Fossil, Inc.*, No. 3:10-cv-1827, 2014 WL 4073204, at *4-5 (D. Conn. Aug. 14, 2014); *Romag Fastners, Inc. v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020).

### ii. Key Evidence in Opposition

Defendants intended the RR/BAYC Project as an artwork critical of Yuga, not to cause confusion. Defendants' conduct shows that they did not believe their conduct was infringing, nor were they willful blind: rather, they took specific steps to attempt to prevent confusion. Dkt. 197-1 ¶¶ 229-230. Those steps include adding a lengthy explanation of the purpose of RR/BAYC on rrbayc.com as well as a disclaimer expressly requiring purchasers to acknowledge the artistic purpose of the project. Dkt. 197-1 ¶¶ 201-202. Moreover, Defendants' online discussion of the RR/BAYC Project focused on their criticism of Yuga, making clear that their intent was not to confuse, but rather to educate consumers concerning the nature of NFTs and to call out the BAYC collection's hateful imagery. Dkt. 197-1 ¶¶ 203-04.

### C. Damages (Claims 1 and 3, and Claim 2 if Liability Is Found)
### i. Elements

Yuga may elect either actual damages or defendants' profits as damages for claim 1 and claim 2, but it cannot recover both. If Yuga elects actual damages, Yuga has the burden of proving the amount of money which will reasonably and fairly compensate the plaintiff for any injury caused by the defendants' infringement of the plaintiffs' trademark and/or defendants' false advertising, but may not include any loss caused by other market factors and not as a result of defendants' infringement or false advertising, considering the following factors:

1. The injury to the plaintiff's reputation;
2. The injury to loss of plaintiff's goodwill, including injury to the plaintiff's general business reputation;

3. The lost profits that the plaintiff would have earned but for the defendants' infringement, by deducting all expenses from gross revenue;

4. The expense of preventing customers from being deceived; and

5. The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

See Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.27; *TriPharma, LLC v. First Fruits Business Ministry*, SACV 12-4-4 JVS (ANx), 2013 WL 12129386, at *4 n.10 (C.D. Cal. Apr. 2, 2013); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).

If Yuga elects to pursue disgorgement of Defendants' profits, it may be entitled to any profits earned by the Defendants that are attributable to the infringement or false advertising, which Yuga proves by a preponderance of the evidence. A trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate. *See* Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.29; *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994); *Romag Fasteners, Inc v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020).

Yuga has elected statutory damages for Claim 3 (cybersquatting). Yuga has elected statutory damages for cybersquatting. Yuga is entitled to damages of not less than $1,000 and not more than $100,000 for each of the two violations, as would be just. *See Rolex Watch U.S.A., Inc. v. Zeotech Diamonds, Inc.*, No. CV 02-01089 GAF (VBKx), 2003 WL 23705746, *4 (C.D. Cal. Mar. 7, 2003) (in awarding statutory damages courts a court should "consider the defendant's profits, as well as saved expenses, the plaintiff's lost revenues, and the defendant's state of mind.").

### ii. Key Evidence in Opposition

If Yuga pursues actual damages, the evidence will show (by Yuga's own admission), the of lack of actual confusion, including evidence that no customer was

actually deceived, that Defendants' sale of RR/BAYC NFTs was part of a protest against Yuga, that the RR/BAYC Project's criticism of Yuga was closely tied to the RR/BAYC NFTs, that the RR/BAYC NFTs were sold accompanied by express disclaimers and criticism of Yuga, that Defendants and others commented publicly about the satirical nature of the RR/BAYC Project, that NFTs are distinct tokens on the blockchain such that the parties' products are sold on different marketplaces, that the nature of the RR/BAYC collection was different from the nature of the BAYC collection, that Defendants' took steps to prevent confusion, the lack of any harm to Yuga as the result of any of the specific acts of false advertising that Yuga asserts, and that the harm that Yuga claims to have suffered as a result of any infringement was the result in whole or in substantial part of factors other than false advertising, including overall market decline, widespread use of Yuga's marks by others, and the calling out (by the RR/BAYC Project and others) of racist and other hateful tropes used by Yuga.

Moreover, actions not attributable to Defendants are responsible for the harm claimed by Yuga. There are thousands of NFT collections and hundreds of brands that use the asserted marks and none of those third parties are associated with Yuga. Those third parties used the asserted marks to create many businesses selling many different types of goods, including clothes, alcohol, marijuana, and nicotine products. All this leads to consumer perception that the asserted trademarks are associated with hundreds of different sellers and are advertised as such by those hundreds of different sellers, weakening the strength of the marks and undermining any significant claim to damages.

Many of these third parties created independent brands that appear indistinguishable from the Bored Ape Yacht Club based on Yuga's Terms & Conditions for BAYC NFTs. As Yuga's CEO explained, in light of the Terms and conditions, "All IP rights are actually granted to the member and to the owner. We have none of those rights." Dkt. 197-1 ¶ 153. BAYC holders then went on to display

the "purchased art" in a manner that prominently displays the asserted marks in the art when marketing and promoting various brands and services unrelated to Yuga.

Moreover, Yuga's actual injury is limited because there has not been a single a consumer that has been deceived or has mistakenly purchased an RR/BAYC NFT without understanding its source of origin. Nor can Yuga claim injury for a third-party use of marks when it has affirmatively encouraged and allowed hundreds of third parties to use those same marks to promote a panoply of product, services, and NFT collections. As a result, Yuga has not lost significant profits, business reputation, or goodwill directly as a result of the sale of RR/BAYC NFTs. Similarly, as there has been absolutely no confusion or deception, Yuga has not incurred any corrective advertising costs attributable to the RR/BAYC Project, nor does it have any future corrective advertising expenses. Thus, the actual damages that Yuga is entitled to are minimal.

As to disgorgement of profits, Defendants expect to show that their mental state—which is "highly important consideration in determining whether an award of profits is appropriate"—counsels against an award of profits. See *Romag Fasteners, Inc v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020). Rather, as discussed above, because Defendants intended the RR/BAYC Project to be a project calling out Yuga's hateful imagery and educating consumers about NFTs, not any intentional form of confusion.

As to damages for Claim 3 (cybersquatting), Defendants expect to show that their registrations were part of the RR/BAYC Project and caused Yuga minimal harm. Yuga has already conceded that it "is not pursuing a finding of willful cybersquatting"

(*see* Final Pretrial Conference Order at 9), so an award at the high end of the statutory range is not permitted.

## III. DEFENDANTS' COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

The Court has stricken, dismissed, or entered judgment against Defendants on each of Defendants' counterclaims and affirmative defenses. Dkts. 156, 225. Defendants expect to appeal these determinations following entry of final judgment and reserve their rights. Given the Court's prior orders, no affirmative defenses or counterclaims are at issue in this trial.

## IV. EVIDENTIARY ISSUES

Apart from the issues raised and fully briefed in the parties' motions *in limine*, Defendants do not anticipate any significant evidentiary issues.

## V. ISSUES OF LAW

Apart from the issues raised and fully briefed in the parties' motions *in limine*, the parties' Joint Memorandum Regarding Jury Instructions, and the parties' Joint Memorandum Regarding the Parties' Proposed Verdict Forms (all fired concurrently), Defendants do not anticipate any issues of law requiring the Court's determination.

Dated: May 25, 2023

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Case No. 2:22-cv-04355-JFW-JEM  -9-  DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW

| | |
|---|---|
| 1 | Derek Gosma (SBN 274515) |
| 2 | derek.gosma@wilmerhale.com |
| | Henry Nikogosyan (SBN 326277) |
| 3 | henry.nikogosyan@wilmerhale.com |
| | **WILMER CUTLER PICKERING** |
| 4 | **HALE AND DORR LLP** |
| | 350 South Grand Ave., Suite 2400 |
| 5 | Los Angeles, CA 90071 |
| | Telephone: (213) 443-5300 |
| 6 | Fax: (213) 443-5400 |
| 7 | Attorneys for Defendants |
| | *Ryder Ripps and Jeremy Cahen* |

Case No. 2:22-cv-04355-JFW-JEM  -10-  DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's EFC system on May 25, 2023.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document is in compliance with the word limit for Points and Authorities set forth in Local Rule 11-6.1.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000