ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **PLAINTIFF YUGA LABS, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, | Pretrial Conf. Date: June 9, 2023 |
| Defendants. | Time: 8 a.m. |
| | Courtroom: 7A |
| | Judge: Hon. John F. Walter |
| | Hearing on Motions *in Limine*: June 16, 2023 |
| | Trial Date: June 27, 2023 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA  90401
   Telephone:  310.434.4300
4
5  DAVID Y. SILLERS (*admitted pro hac vice*)
   david@clarelocke.com
6  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
7  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA  22314
   Telephone:  202.628.7400
10
11 Attorneys for Plaintiff
   YUGA LABS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   SUMMARY OF THE CLAIMS PLAINTIFF HAS PLEADED AND INTENDS TO PURSUE ..................................................................... 2

    A.   False Designation of Origin (15 U.S.C. § 1125(A)) ............................ 3

        1.   Elements of Claim ................................................................ 3

        2.   Brief Description of Key Evidence in Support of Claim .......... 4

            a.   Yuga Labs' Remedies .................................................. 5

            b.   Exceptional Case ........................................................ 6

    B.   False Advertising (15 U.S.C. § 1125(A)) .......................................... 8

        1.   Elements of Claim ................................................................ 8

        2.   Brief Description of Key Evidence in Support of Claim .......... 9

    C.   Cybersquatting (15 U.S.C. § 1125(D)) ............................................ 11

        1.   Elements of Claim ................................................................ 11

        2.   Brief Description of Key Evidence in Support of Claim .......... 11

III.  SUMMARY OF AFFIRMATIVE DEFENSES DEFENDANTS HAVE PLED AND PLAN TO PURSUE ......................................... 12

IV.   ANTICIPATED EVIDENTIARY ISSUES ............................................ 14

    A.   Plaintiff's Motion *in Limine* #1 ..................................................... 14

    B.   Plaintiff's Motion *in Limine* #2 ..................................................... 14

    C.   Plaintiff's Motion *in Limine* #3 ..................................................... 14

    D.   Plaintiff's Motion *in Limine* #4 ..................................................... 14

    E.   Plaintiff's Motion *in Limine* #5 ..................................................... 14

    F.   Defendants' Motion *in Limine* ....................................................... 14

V.    YUGA LABS' REMEDIES .................................................................. 15

    A.   Monetary Remedies for False Designation of Origin and False Advertising Claims .................................................................. 15

    B.   Statutory Damages for Cybersquatting Claim ................................. 18

**TABLE OF CONTENTS**
(Continued)

Page

C.  Exceptional Case ..................................................................19

D.  Injunctive Relief ...................................................................20

VI.  BIFURCATION OF ISSUES ..........................................................21

VII.  JURY TRIAL ...................................................................................21

A.  Jury Issues .............................................................................21

B.  Court Issues ...........................................................................21

VIII.  ATTORNEYS' FEES .......................................................................22

IX.  ABANDONMENT OF ISSUES .....................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allergan USA, Inc. v. Imprimis Pharms., Inc.*,
    No. 8:17-cv-01551 (C.D. Cal. May 16, 2019) ..................................................... 4

*Avid Identification Sys., Inc. v. Schering-Plough Corp.*,
    33 Fed. Appx. 854 (9th Cir. 2002) ..................................................................... 8

*Bekins Holding Corp. v. BGT Trans, Inc.*,
    No. CV 09-08982 MMM, 2010 WL 11597623 (C.D. Cal. Nov. 19, 2010) ...... 18

*DSPT Int'l, Inc. v. Nahum*,
    624 F.3d 1213 (9th Cir. 2010) .......................................................................... 11

*eAdGear, Inc. v. Liu*,
    No. CV-11-05398 JCS, 2012 WL 2367805
    (N.D. Cal. June 21, 2012), report and recommendation adopted,
    2012 WL 4005454 (N.D. Cal. Sept. 11, 2012).................................................. 18

*Feemster v. Dehntjer*,
    661 F.2d 87 (8th Cir. 1981) .............................................................................. 16

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
    28 F.4th 35 (9th Cir. 2022).................................................................. 16, 17, 22

*Lies v. Farrell Lines, Inc.*,
    641 F.2d 765 (9th Cir.1981) ............................................................................... 4

*Mutual Pharm. Co. v. Ivax Pharm., Inc.*,
    459 F. Supp. 2d 925 (C.D. Cal. 2006)................................................................ 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*,
    782 F. Supp. 2d 1047 (C.D. Cal. 2011)............................................................... 4

*Nichia America Corp. v. Seoul Semiconductor Co., Ltd.*,
    No. CV 07–8354 PA, 2008 WL 11342571 (C.D. Cal. Oct. 7, 2008) ................. 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ...................................................................................... 19

*Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los
    Angeles, Inc.*,
    302 F. Supp. 2d 1131 (C.D. Cal. 2004)............................................................... 4

*Rio Properties, Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) .......................................................................... 19

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

Page

*Romag Fasteners, Inc. v. Fossil, Inc.*,
140 S. Ct. 1492 (2020) ................................................................. 16

*San Diego Comic Convention v. Dan Farr Prods.*,
807 F. App'x. 674 (9th Cir. 2020) ................................................. 20

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ......................................................... 9

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) ................................................. 19, 20

*Verizon California Inc. v. Onlinenic, Inc.*,
No. C 08–2832 JF (RS), 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009) ........... 18

*Watec v. Liu*,
403 F.3d 645 (9th Cir. 2005) ......................................................... 19

*Y.Y.G.M. SA v. Redbubble, Inc.*,
No. 2:19-cv-04618-RGK-JPR, 2021 WL 4553186
(C.D. Cal. Oct. 5, 2021) ................................................................. 19

**STATUTES AND RULES**

15 U.S.C. § 1116(a) ....................................................................... 3, 20

15 U.S.C. § 1117 .............................................................................. 22

15 U.S.C. § 1117(a) ........................................................... 3, 15, 19, 22

15 U.S.C. § 1125(A) ................................................................... 2, 3, 8

15 U.S.C. § 1125(a)(1)(B) .................................................................. 9

15 U.S.C. § 1125(D) ............................................................... 2, 11, 18

17 U.S.C. § 505 ............................................................................... 22

ACPA ................................................................................... 11, 18

Copyright Act ................................................................................ 22

Lanham Act .................................................................. 15, 19, 20, 21

Local Rule 16-4 ................................................................................. 1

FENWICK & WEST LLP
ATTORNEYS AT LAW

Pursuant to Local Rule 16-4 and the Court's Standing Order (Dkt. 14) and Scheduling and Case Management Order (Dkt. 57), Plaintiff Yuga Labs respectfully submits the following Memorandum of Contentions of Fact and Law.

## I.   INTRODUCTION

Yuga Labs is the creator behind one of the world's most well-known and successful NFT collections, known as the Bored Ape Yacht Club ("BAYC").  Only 10,000 unique BAYC NFTs exist, and they are among the most sought-after NFTs. Yuga Labs uses its BAYC Marks[1] in connection with its products and services nationwide and internationally through multiple platforms, NFT marketplaces, and social media.  Through this use, Yuga Labs has developed recognition for its goods and services and has acquired and enjoys significant goodwill for the BAYC brand. The BAYC Marks have become part of Yuga Labs' core identity, in the same way that marks identify other companies like Disney, Nike, Google, or Marvel.

In response to BAYC's popularity, Defendants launched a business venture to scam consumers into purchasing their "RR/BAYC" NFTs, which use the very same BAYC Marks and underlying images as BAYC NFTs.  As part of this profit-making scheme, Defendants falsely advertised that their infringing products were equivalent to Yuga Labs' authentic BAYC products and made other false claims in an effort to legitimize their products and further scam consumers into buying their scam NFTs. They also sought to establish an NFT marketplace ("Ape Market") to maximize profits, compete with other popular NFT marketplaces, and help them market and sell their scam NFTs alongside authentic BAYC NFTs.  To this day, and despite the Court's order finding their sales of the RR/BAYC NFTs to be infringing, Defendants continue to promote their infringing Ape Market to further the sales of RR/BAYC NFTs and increase their ill-gotten profits through royalties on the sales.  Defendants' use of the BAYC Marks has caused and continues to cause actual confusion in the

---

[1]  Yuga Labs' BORED APE YACHT CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and Ape Skull Logo trademarks.

FENWICK & WEST LLP
ATTORNEYS AT LAW

—

marketplace, which has resulted in damage and irreparable injury to Yuga Labs' hard-earned reputation.

Defendants' scam is textbook trademark infringement.  And recently, in its ruling on Yuga Labs' Motion for Summary Judgment, the Court agreed.  The Court found for Yuga Labs with respect to its claim for false designation of origin, concluding that Yuga Labs owns the BAYC Marks, which are valid and protectable; Defendants intentionally used the BAYC Marks to sell their scam NFTs in a manner likely to cause confusion; and Yuga Labs is entitled to damages and injunctive relief.  The Court also found for Yuga Labs on its claim for cybersquatting, holding that Defendants registered, used, and continue to use rrbayc.com and apemarket.com, which are confusingly similar to the BAYC Marks; Defendants acted with a bad faith intent to profit from their use of the marks; and Yuga Labs is also entitled to monetary and injunctive relief for this claim.  The Court rejected Defendants' asserted defenses and their remaining counterclaim.

## II.   SUMMARY OF THE CLAIMS PLAINTIFF HAS PLEADED AND INTENDS TO PURSUE

Yuga Labs has asserted the following claims against Defendants.[2]

- Claim 1 (False Designation of Origin (15 U.S.C. § 1125(A))): Defendants used Yuga Labs' BAYC Marks without authorization in a way that was likely to and did cause confusion;

- Claim 2 (False Advertising (15 U.S.C. § 1125(A))): Defendants made false and misleading representations of fact in advertising their RR/BAYC NFTs;

- Claim 3 (Cybersquatting (15 U.S.C. § 1125(D))): Defendants registered and used rrbayc.com and apemarket.com with a bad faith intent to profit

---

[2]  Given Defendants' pending appeal (*Yuga Labs, Inc. v. Ryder Ripps, et al.*, No. 22-56199 (9th Cir. 2023)), Yuga Labs' state law claims (Claims 4-7, 9-11) are currently stayed.  Yuga Labs does not waive, and expressly reserves, these claims.

Fenwick & West LLP
Attorneys at Law

from their confusing similarity to Yuga Labs' BAYC Marks.

The Court found for Yuga Labs on its first and third claims in its Order on Yuga Labs' Motion for Summary Judgment. *See* Dkt. 225 at 13, 15. On its first and third claims, the Court concluded that Yuga Labs is entitled to monetary and injunctive relief. *Id.* The issue of damages is an issue for the jury that has been reserved for trial. *Id.* The jury will be instructed to calculate Defendants' profits, although the decisions regarding whether to disgorge Defendants' profits and whether equity supports an upward or downward adjustment of the jury's calculation are equitable issues reserved for the Court. 15 U.S.C. § 1117(a). The issue of injunctive relief is for the Court's determination in post-trial briefing. *See* 15 U.S.C. § 1116(a). Whether this is an exceptional case entitling Yuga Labs to enhanced damages and attorneys' fees is also an issue for the Court in post-trial briefing. *See* 15 U.S.C. § 1117(a).[3] Yuga Labs intends to pursue its second claim, false advertising, at trial.

## A.   False Designation of Origin (15 U.S.C. § 1125(A))

### 1.   Elements of Claim

Yuga Labs has the burden of proving:

1. Yuga Labs' BAYC Marks are valid, protectable trademarks;

2. Yuga Labs owns the BAYC Marks; and

3. Defendants use a BAYC Mark, or a mark similar to a BAYC Mark, without the consent of Yuga Labs in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.6 (modified).

---

[3] Defendants argue that the jury should be instructed on willfulness for its assessment of Defendants' profits and whether this is an exceptional case. As discussed further in Section V.A. and V.C., a finding of willfulness is not necessary for the jury's calculation of Defendants' profits or the Court's determination of whether this is an exceptional case. And regardless, this Court has already determined that Defendants acted with the intent to deceive consumers. *See* Dkt. 225 at 12.

FENWICK & WEST LLP
ATTORNEYS AT LAW

The only remaining issue to be proven at trial with respect to Yuga Labs' first claim is a determination of the amount of Yuga Labs' monetary remedies.

### 2.    Brief Description of Key Evidence in Support of Claim

1.    In the Final Pretrial Conference Order, Defendants refused to stipulate to material facts that the Court established in its Summary Judgment Order (Dkt. 225), thereby delaying them from being read to the jury.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011)* ("Under Federal Rules of Civil Procedure, Rule 56(g), a court may enter an order stating any material fact-including an item of damages or other relief-that is not genuinely in dispute and treating the fact as established in the case.").  In the parties' meet and confer discussions relating to pretrial submissions, Defendants have repeatedly taken the position that, unless Defendants are permitted to relitigate this case in its entirety, the jury is not entitled to hear relevant facts relating to issues disposed of by the Court's Summary Judgment Order.  Defendants' refusal to accept the Court's ruling and agree to those facts is likely to confuse the jury and prejudice Yuga Labs.[4]  The jury is entitled to understand the reasons why they are assessing the damages caused by the Defendants, including the basis for the Court's prior findings.  Indeed, many of those facts relate directly to damages.  There is no need to waste the Court's and the jury's time with relitigating already adjudicated facts.  *See Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131, 1133 (C.D. Cal. 2004)* (quoting *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 769 (9th Cir.1981)*) (A partial summary judgment order "was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit.").  Other Courts in this district have approved of reading facts, albeit stipulated facts, drawn from their prior summary judgment rulings.  *See, e.g., Allergan USA, Inc. v. Imprimis*

---

[4]  This refusal is par for the course for Defendants and further supports a finding that this is an exceptional case, as discussed further in Section V.C.

Fenwick & West LLP
Attorneys at Law

*Pharms., Inc.*, No. 8:17-cv-01551 (C.D. Cal. May 16, 2019) (Compare Dkt. 223 [Jury Instructions - Instruction No. 3] with Dkt. 138 [Order on Summary Judgment]).  Yuga Labs requests that the Court read the established facts from the Court's Summary Judgment Order relating to the remaining triable issues in this case (*see* **Exhibit A**) to the jury before opening statements and provide a copy of Exhibit A to the jury to have with them in the jury room during deliberations.  Yuga Labs' Proposed Instruction re Prior Findings (Disputed Instruction No. 25) has been proposed to be read to the jury during closing jury instructions as a summary reminder of the established facts and the Court's findings.

### a.     Yuga Labs' Remedies

1.     Evidence showing that Defendant' use of the BAYC Marks to sell the same underlying products (NFTs), using the same underlying images as authentic BAYC NFTs, marketing them with the same "Ape ID" identifying numbers, and selling them in the same NFT marketplaces was likely to and did cause confusion and harm to Yuga Labs, including but not limited to:

- Two surveys conducted by independent expert Laura O'Laughlin and explained through her expert testimony;
- Public statements showing confusion, including (i) Tweets from third parties; (ii) Tweets from Defendants; and (iii) excerpts from a Bloomberg News segment referring to Defendants' RR/BAYC NFT collection as "Bored Ape Yacht Club V3";
- Testimony by Yuga Labs' former CEO Nicole Muniz regarding instances of actual confusion in the marketplace;
- Testimony by Defendants' business partners relating to confusion;
- Communications from Defendants and their business partners.

2.     Evidence that Yuga Labs has experienced harm to its brand equity and goodwill as a result of Defendants' infringement and the resulting confusion, including but not limited to:

FENWICK & WEST LLP
ATTORNEYS AT LAW

- Expert testimony and documentary evidence from Lauren Kindler regarding harm to Yuga Labs' business and lost business opportunities;
- Expert testimony and documentary evidence from Jonah Berger regarding the value of the BAYC brand, changed perceptions of the BAYC brand and the resulting harm;
- Testimony by Yuga Labs' former CEO Nicole Muniz regarding specific conversations with a prospective business partner and changed perceptions of the BAYC brand.

3.      Evidence showing Defendants' profits from the promotion and sales of the RR/BAYC NFTs, including but not limited to:

- Expert testimony and documentary evidence from Lauren Kindler regarding Defendants' profits from the promotion and sales of the RR/BAYC NFTs from May 2022 to February 2023.

4.      Evidence showing measures Yuga Labs would have to take in the future to correct and mitigate instances of confusion caused by Defendants' infringement, including but not limited to:

- Expert testimony and documentary evidence from Lauren Kindler regarding the cost to purchase and destroy all RR/BAYC NFTs currently in circulation.

5.      Evidence showing the amount of the additional unjust enrichment to Defendants as a result of their infringement, including but not limited to:

- Expert testimony and documentary evidence from Lauren Kindler regarding Defendants' avoided costs in leveraging Yuga Labs' goodwill and investments into the BAYC Marks for their own profit.

### b.      Exceptional Case

1.      In granting summary judgment in favor of Yuga Labs as to its claim for false designation of origin and cybersquatting, the Court found that "Defendants knowingly and intentionally used Yuga's BAYC Marks . . . in an effort to confuse

FENWICK & WEST LLP
ATTORNEYS AT LAW

consumers," "intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding," and "acted with a bad faith intent to profit" from their use of the BAYC Marks.   Dkt. 225 at 12, 15.   The Court's findings regarding Defendants' intentional and bad-faith infringement are supported by the evidence submitted in support of Yuga Labs' Motion for Summary Judgment.

2.      Evidence of Defendants' litigation and discovery misconduct, including but not limited to:

- Defendants' false representations to the Court regarding the existence of and their destruction of responsive documents;

- Defendants' filing of a frivolous counterclaim with no good-faith basis and refusal to withdraw it until unsuccessfully trying to leverage it for discovery and after Yuga Labs expended resources seeking its dismissal;

- Defendants' refusal to meaningfully and reasonably participate in settlement negotiations in good faith, including but not limited to, Defendants' nominal settlement "offer" on April 25, 2023, following the Court's Order granting Yuga Labs' Motion for Summary Judgment;

- Defendants' improper withholding of highly relevant documents, violation of the Court's orders to produce such documents, and last-minute production of such documents, thereby prejudicing Yuga Labs by depriving Yuga Labs of the ability to ask Defendants about such documents in their depositions or use them in connection with Yuga Labs' Motion for Summary Judgment;

- Defendants' repeated attempts to re-litigate issues already addressed and rejected by the Court in its Order denying Defendants' Motion to Dismiss and Motion to Strike (Dkt. 62);

- Defendants' filing of a meritless motion to stay proceedings after months of delay and after Yuga Labs invested extensive resources into the case;

- Defendants repeated harassing and knowingly irrelevant discovery requests

Fenwick & West LLP
Attorneys at Law

and deposition questions;

- Defendants' filing of baseless and procedurally improper ex parte applications solely to burden and harass Yuga Labs;

- Defendants' refusal to accept the Court's findings in its Order granting Yuga Labs' Motion for Summary Judgment (Dkt. 225) and intent to re-raise adjudicated issues at trial;

- Defendants' heinous attacks on Yuga Labs' counsel during the course of litigation and their use of the litigation to "farm" for engagement on social media.

## B.    False Advertising (15 U.S.C. § 1125(A))

### 1.    Elements of Claim

Yuga Labs must prove by a preponderance of the evidence:

1. Defendants made a false or misleading representation of fact in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of their or Yuga Labs' goods, services or commercial activities;

2. The false or misleading representation actually deceived or had the tendency to deceive a substantial segment of its audience (where an advertising is literally false, either on its face or by necessary implication, consumer confusion is presumed and Yuga Labs does not have to prove this element);[5]

3. The deception was material in that it is likely to influence the purchasing decision;

---

[5] Defendants argue that this presumption applies only if Defendants intentionally misled consumers.  Defendants are incorrect.  The case law unambiguously states that "consumer deception is presumed when the statement in question is literally false."  *Nichia America Corp. v. Seoul Semiconductor Co., Ltd.*, No. CV 07–8354 PA (CWx), 2008 WL 11342571, at *5 (C.D. Cal. Oct. 7, 2008) (citing *Mutual Pharm. Co. v. Ivax Pharm., Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006)); *see also*, *Avid Identification Sys., Inc. v. Schering-Plough Corp.*, 33 Fed. Appx. 854, 856 (9th Cir. 2002) (applying presumption).   Here, Defendants' advertisements were literally false, so the presumption of consumer confusion applies in this case without regard to Defendants' intent.

FENWICK & WEST LLP
ATTORNEYS AT LAW

4.  Defendants caused the false or misleading representation or the advertised product or service to enter interstate commerce; and

5.  Yuga Labs was or is likely to be damaged by the false or misleading representation, either by direct diversion of sales from itself to Defendants or by a lessening of the goodwill associated with Yuga Labs' goods, services, or commercial activities.

Source:  15 U.S.C. § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

### 2.    Brief Description of Key Evidence in Support of Claim

1.    Evidence showing that Defendants made false and misleading statements in advertising and promoting their RR/BAYC NFTs, including but not limited to:

- Documents showing Defendants publicly referring to their RR/BAYC NFTs as "BAYC V3" and "Bored Ape Yacht Club V3";

- Documents showing Defendants publicly implying that their RR/BAYC NFTs were equivalent goods to genuine BAYC NFTs, including Tweets by Defendants claiming that purchasers receive full commercial rights in their RR/BAYC NFTs and that RR/BAYC product offerings would expand to include gaming services and merchandise;

- Documents showing Defendants publicly claiming that they own a registered trademark in RR/BAYC and in Ape Market, including Tweets by Defendants promoting Ape Market;

- Documents showing Defendants publicly claiming that all royalties gained from the sale of the RR/BAYC NFTs would be donated to charity;

- Documents showing Defendants publicly claiming that the RR/BAYC NFTs were all "hand-minted" by Defendant Ripps;

- Documents showing Defendants publicly claiming that RR/BAYC NFTs were created and sold on behalf of Live9000 LLC;

FENWICK & WEST LLP
ATTORNEYS AT LAW

- Testimony and communications by Defendants showing that all such claims are literally false.

2.     Evidence that Defendants paid promoters and influencers to in their own words "shill" the RR/BAYC NFTs and Ape Market by giving those influencers free RR/BAYC NFTs in exchange for positive promotion, including but not limited to:

- Public statements and Tweets by Defendants;
- Private communications by Defendants;
- Testimony by Defendant Ripps.

3.     Evidence that Yuga Labs suffered harm to its brand equity and goodwill as a result of the confusion caused by Defendants' deception, including but not limited to:

- Expert testimony and documentary evidence from Laura O'Laughlin that at the point of sale on Foundation and OpenSea, consumer confusion was not dispelled;
- Expert testimony and documentary evidence from Lauren Kindler regarding harm to Yuga Labs' business and lost business opportunities;
- Expert testimony and documentary evidence from Jonah Berger regarding the value of the BAYC brand, changed perceptions of the BAYC brand and the resulting harm;
- Testimony by Yuga Labs' former CEO Nicole Muniz regarding specific conversations with a prospective business partner and changed perceptions of the BAYC brand.

4.     Evidence showing Defendants' profits from the promotion and sales of the RR/BAYC NFTs, including but not limited to:

- Expert testimony and documentary evidence from Lauren Kindler regarding Defendants' profits from the promotion and sales of the RR/BAYC NFTs from May 2022 to February 2023.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## C.   Cybersquatting (15 U.S.C. § 1125(D))

### 1.   Elements of Claim

Yuga Labs has the burden of proving:

1. Defendants registered, trafficked in, or used a domain name;

2. The domain name is identical or confusingly similar to a protected mark owned by Yuga Labs; and

3. Defendants acted with bad faith intent to profit from Yuga Labs' mark.

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions, Comment to No. 15.31; 15 U.S.C. § 1125(d); *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1219 (9th Cir. 2010).

The only remaining issue for trial with respect to Yuga Labs' third claim is the amount of statutory damages to which Yuga Labs is entitled.  The Court's findings on summary judgment, as read to the jury from Exhibit A, will show to the jury that Yuga Labs is entitled to $200,000 in statutory damages for its cybersquatting claim under the ACPA.

### 2.   Brief Description of Key Evidence in Support of Claim

1.   The Court has already found that Yuga Labs successfully proved each element of its cybersquatting claim on summary judgment based on evidence in the record showing that: Yuga Labs owns the BAYC Marks, which are valid and enforceable; Defendants registered or used rrbayc.com and apemarket.com, which incorporate the BAYC Marks; and Defendants had a bad faith intent to profit from their use of the BAYC Marks.  *See* Dkt. 225 at 6-10, 14, 15.  As noted above, in the Final Pretrial Conference Order, Defendants would not stipulate to a number of established facts that the Court found in its ruling on Yuga Labs' Motion for Summary Judgment.  Defendants' refusal to accept the Court's ruling and agree to such facts is unreasonable and prejudices Yuga Labs.  Yuga Labs requests that the facts supporting the Court's Summary Judgment Order on this claim be read to the jury.  *See* **Exhibit A**.

Fenwick & West LLP
Attorneys at Law

FENWICK & WEST LLP
ATTORNEYS AT LAW

## III.   SUMMARY OF AFFIRMATIVE DEFENSES DEFENDANTS HAVE PLED AND PLAN TO PURSUE

Defendants have pled the following sixteen affirmative defenses: First Affirmative Defense (Failure to State a Claim); Second Affirmative Defense (First Amendment); Third Affirmative Defense (Fair Use); Fourth Affirmative Defense (No Distinctiveness); Fifth Affirmative Defense (Abandonment); Sixth Affirmative Defense (Acquiescence/Estoppel); Seventh Affirmative Defense (Unclean Hands); Eighth Affirmative Defense (Waiver); Ninth Affirmative Defense (Equitable Estoppel); Tenth Affirmative Defense (Unjust Enrichment); Eleventh Affirmative Defense (Justification); Twelfth Affirmative Defense (Right to Property); Thirteenth Affirmative Defense (Good Faith); Fourteenth Affirmative Defense (Failure to Mitigate); Fifteenth Affirmative Defense (Apportionment); and Sixteenth Affirmative Defense (Speculative Damages).

The Court adjudicated and dismissed the following eight affirmative defenses:

- First Affirmative Defense: Failure to State a Claim.  *See* Dkt. 62 (denying Defendants' Motion to Dismiss and finding that Yuga Labs sufficiently pled the causes of action alleged in its Complaint);

- Second Affirmative Defense: First Amendment.  *See* Dkt. 225 at 16-17 ("Yuga is entitled to summary judgment on Defendants' First Amendment/*Rogers* affirmative defense.");

- Third Affirmative Defense: Fair Use.  *See id.* at 18-19 ("Yuga Labs is entitled to summary judgment on Defendants' fair use affirmative defense.");

- Fourth Affirmative Defense: No Distinctiveness.  *See id.* at 11 ("In this case, the Court agrees with Yuga and concludes that the BAYC Marks are both conceptually and commercially strong.");

- Fifth Affirmative Defense: Abandonment.  *See id.* at 9-10 ("Yuga has not transferred or abandoned its trademark rights in the BAYC Marks…Under

the Lanham Act, abandonment of a trademark only occurs by nonuse or by a mark becoming generic, and neither apply in this case.");

- Seventh Affirmative Defense: Unclean Hands.  *See id.* at 19 ("Yuga is entitled to summary judgment on Defendants' unclean hands affirmative defense.");
- Twelfth Affirmative Defense: Right to Property.  *See id.* at 4 ("Yuga owns the BAYC Marks" and "Defendants used the BAYC Marks to sell RR/BAYC NFTs, without the consent of Yuga.");
- Thirteenth Affirmative Defense: Good Faith.  *See id.* at 12 ("Defendants knowingly and intentionally used Yuga's BAYC Marks…in an effort to confuse consumers" and "intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding."); *id.* at 15 ("Defendants acted with a bad faith intent to profit.").

Defendants have waived the remaining eight affirmative defenses:

- Sixth Affirmative Defense: Acquiescence/Estoppel;
- Eighth Affirmative Defense: Waiver;
- Ninth Affirmative Defense: Equitable Estoppel;
- Tenth Affirmative Defense: Unjust Enrichment;
- Eleventh Affirmative Defense: Justification;
- Fourteenth Affirmative Defense: Failure to Mitigate;
- Fifteenth Affirmative Defense: Apportionment;
- Sixteenth Affirmative Defense: Speculative Damages.

This waiver is due to Defendants' failure to provide any supporting evidence or jury instructions as to these affirmative defenses and their failure to assert any defenses in Section 7 ("Claims and Defenses of the Parties") of the Final Pretrial Conference Order.  *See* Appendix A to Local Rules ("If a party chooses to abandon a claim or defense previously alleged, it may do so by not including it in this order, and the failure to include any pleaded claim or defense will be deemed to effect such

FENWICK & WEST LLP
ATTORNEYS AT LAW

a waiver.").

## IV.   ANTICIPATED EVIDENTIARY ISSUES

The following evidentiary issues are the subject of motions *in limine*:

### A.    Plaintiff's Motion *in Limine* #1

Yuga Labs moves to exclude evidence or argument regarding false accusations that Yuga Labs is connected with, endorses, or spreads hidden messages about white supremacy, neo-Nazism, securities investigations, celebrity endorsements, other lawsuits against Yuga Labs, or any other unsubstantiated fraud.

### B.    Plaintiff's Motion *in Limine* #2

Yuga Labs moves to exclude evidence or argument as to Defendants' purported artistic intent regarding the RR/BAYC NFTs or Ape Market, including references to "art," an "art project," a "project," or "the RR/BAYC Project."

### C.    Plaintiff's Motion *in Limine* #3

Yuga Labs moves to exclude evidence or argument purporting to demonstrate the use of Yuga Labs' marks or any allegedly similar marks by other brands, companies, collections, or individuals not before the Court.

### D.    Plaintiff's Motion *in Limine* #4

Yuga Labs moves to exclude evidence or argument about the purpose and effect of this litigation, including testimony that Defendants or their witnesses were burdened by the litigation or believe that Yuga Labs filed the lawsuit to "silence" Defendants.

### E.    Plaintiff's Motion *in Limine* #5

Yuga Labs moves to exclude evidence or argument purporting to demonstrate that the license provided for in Yuga Labs' Terms and Conditions, or any use under these terms, harmed or devalued the BAYC Marks.

### F.    Defendants' Motion *in Limine*

Defendants move to exclude the expert testimony of Laura O'Laughlin because she evaluated consumer confusion from Defendants' sales on both OpenSea

and Foundation using independent surveys, even though she used the appropriate survey methodology for each context. Defendants describe this as "internally inconsistent," though they do not dispute that courts accept both survey methodologies for establishing likelihood of confusion in Lanham Act cases. Defendants' motion should be denied for the reasons outlined in Yuga Labs' opposition.

## V.   YUGA LABS' REMEDIES

### A.   Monetary Remedies for False Designation of Origin and False Advertising Claims

Yuga Labs is entitled to actual damages and Defendants' profits as to its first claim for false designation of origin and second claim for false advertising. *See* 15 U.S.C. § 1117(A) (granting plaintiffs the right "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.").

Here, Defendants' explicitly misleading use of the BAYC Marks and false statements to promote and sell their scam NFTs resulted in widespread confusion that caused and continues to cause harm to Yuga Labs and consumers. Yuga Labs' monetary remedies for Defendants' infringement and false advertising include: (1) injury to Yuga Labs' reputation and goodwill; (2) the cost of future corrective advertising reasonably required to correct any public confusion caused by Defendants' infringement and/or false advertising, including but not limited to the cost to Yuga Labs to purchase and destroy RR/BAYC NFTs on the secondary market; (3) Defendants' profits; and (4) Defendants' unjust enrichment. *See* Ninth Circuit Manual of Model Civil Jury Instructions, No. 15.27 and 15.29.

Research conducted by Lauren Kindler, an independent expert in economics and damage calculations, shows that as of February 1, 2023, Defendants generated at least $1,589,455 in profits from the sale of their RR/BAYC NFTs. *See* Dkt. 149-117, Ex. 107 (Expert Report of Lauren Kindler) at 16. This amount is based on 1) Defendants' sales of the RR/BAYC NFTs since they were minted in May 2022, 2)

creator fees that Defendants collected from resales of RR/BAYC NFTs on secondary markets, 3) the value of RR/BAYC NFTs that Defendants hold or did not mint, and 4) appropriate deductions for known costs and transaction fees. *Id.* This calculation likely underestimates Defendants' actual profits because Defendants avoided certain costs by leveraging the investments and value created by Yuga Labs for its BAYC brand to sell their own scam NFTs. *Id.* at 58. Moreover, resales of RR/BAYC NFTs on secondary markets are ongoing and profits continue to accrue to Defendants. *Id.* at 16. Yuga Labs is entitled to a disgorgement of these profits.

Defendants contend that Defendants' willfulness is an issue for the jury because it is relevant to the determination of damages and, as discussed in Section V.C. below, whether this is an exceptional case. Defendants are wrong. As the plaintiff, Yuga Labs can choose what claims it is presenting to the jury and Yuga Labs is not asking for and does not need a jury instruction on willfulness. *See, e.g.*, *Feemster v. Dehntjer*, 661 F.2d 87, 90 (8th Cir. 1981) ("The plaintiff is master of his claim. He may abandon a theory of liability during the trial, and if he does the jury should be clearly instructed only on those issues that it will consider.").[6]   A willfulness finding is not necessary for the determination of lost profits. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1495-97 (2020). Regardless, this Court has already determined that Defendants acted here with the intent to deceive consumers. *See* Dkt. 225 at 12. Defendants do not get to re-litigate the issue of their intent at trial. To the extent that the Court allows Defendants to re-litigate their mental state, Yuga Labs' position is that this is an equitable issue for the Court to determine in assessing the disgorgement of profits. *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 39 (9th Cir. 2022).

Another measure of Yuga Labs' damages involves expenses associated with mitigating future harm. Specifically, Yuga Labs could purchase and destroy all

---

[6]  Willfulness is not an affirmative defense and Defendants' inclusion of a jury instruction on willfulness is an inappropriate attempt to heighten Yuga Labs' burden of proof.

FENWICK & WEST LLP
ATTORNEYS AT LAW

RR/BAYC NFTs currently in circulation; however, the cost to do so would be at least $1,792,704 and does not account for RR/BAYC NFT holders who may drive up costs to Yuga Labs by charging above-market prices.

In addition to these measurable damages and Defendants' profits, which amount to approximately $3,382,159, much of the harms suffered by Yuga Labs as a result of Defendants' infringement and false advertising, such as harm to the company's goodwill, are not readily quantifiable. For example, the evidence shows that just after the price for BAYC NFTs peaked on April 30, 2022, it began to decline in May 2022, right around the time when Defendants began minting and selling their RR/BAYC NFTs, resulting in lost creator fees and other revenues for Yuga Labs. *Id.* at 59. Yuga Labs' former CEO also testified that Defendants' infringement and false advertising negatively impacted the company's relationship with at least one prospective business partner. *See* Dkt. 149-52 (Declaration of Nicole Muniz in support of Motion for Summary Judgment) ¶ 12.

Jonah Berger, an expert in brand equity and consumer behavior, found that Defendants' minting and sales of RR/BAYC NFTs harmed the BAYC brand in multiple ways. *See* Dkt. 149-115, Ex. 106 (Expert Report of Jonah Berger) at 20-21, 51-71. First, the introduction of RR/BAYC NFTs into commerce increased the perceived supply and decreased the perceived exclusivity of authentic BAYC NFTs (much like the effect counterfeits have on high-end brands). *Id.* at 20. Second, the evidence shows that there was marketplace confusion following the minting and sales of RR/BAYC NFTs, largely because Defendants used the exact BAYC images, metadata, marks, and naming conventions for their RR/BAYC NFTs. *Id.* at 56. Third, consumer attitudes toward the BAYC brand became less positive as a result of Defendants' minting and sales of RR/BAYC NFTs. *Id.* at 20-21. Defendants were not only aware of such harm to Yuga Labs' brand and goodwill, but they in fact intended to bring about such harm. *See supra* Section II.A.2.b.

1

### B.   Statutory Damages for Cybersquatting Claim

2    Yuga Labs is entitled to monetary damages and injunctive relief for its

3    cybersquatting claim under the ACPA.  15 U.S.C. § 1125(D) allows a plaintiff "to

4    recover, instead of actual damages and profits, an award of statutory damages in the

5    amount of not less than $1,000 and not more than $100,000 per domain name, as the

6    court considers just."  *See* 15 U.S.C. § 1125(D).  "Of particular importance in

7    determining the proper amount of damages is the egregiousness of the defendant's

8    cybersquatting."  *Verizon California Inc. v. Onlinenic, Inc.*, No. C 08–2832 JF (RS),

9    2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009).

10    Here, the evidence shows that Yuga Labs is entitled to $200,000 in statutory

11    damages ($100,000 for each of Defendants' domain names that uses a BAYC Mark).

12    As the Court found in ruling on Yuga Labs' Motion for Summary Judgment, Yuga

13    Labs successfully proved every element of its cybersquatting claim.  *See* Dkt. 225 at

14    14, 15.  Further, in concluding that Defendants acted in bad faith, the Court found

15    that "Defendants registered their domains, which included Yuga's marks, for

16    commercial gain to divert customers from purchasing BAYC NFTs," "Defendants

17    concealed their registration of the domain names through the use of a proxy

18    registration service," and "Defendants registered multiple domain names—

19    https://rrbayc.com/, https://apemarket.com/, and pages within OpenSea and

20    Foundation—knowing that they were identical or confusingly similar to the BAYC

21    Marks." *Id.* at 15.  Such willful and deceptive acts rise to the level of egregiousness

22    that justifies statutory damages in the maximum amount of $100,000 per domain

23    name.  *See*, *e.g.*, *Bekins Holding Corp. v. BGT Trans, Inc.*, No. CV 09-08982 MMM

24    (MANx), 2010 WL 11597623, at *11 (C.D. Cal. Nov. 19, 2010) (awarding plaintiff

25    the maximum statutory damages of $100,000 where defendant violated ACPA

26    willfully and in bad faith); *eAdGear, Inc. v. Liu*, No. CV-11-05398 JCS, 2012 WL

27    2367805, at *19 (N.D. Cal. June 21, 2012), report and recommendation

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

adopted, 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012) ("Defendant's willfulness and deception justify statutory damages in the maximum amount of $100,000.").

### C.   Exceptional Case

Yuga Labs is entitled to enhanced damages and an award of attorneys' fees because this is an "exceptional case."  *See* 15 U.S.C. § 1117(a).  A case is considered exceptional if it is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). The issue of whether this case is exceptional is one that will be decided by this Court, not a jury, after trial based on the Court's finding of Defendants' intentional infringement and Defendants' conduct in this litigation.  *Y.Y.G.M. SA v. Redbubble, Inc.*, No. 2:19-cv-04618-RGK-JPR, 2021 WL 4553186, at *3 (C.D. Cal. Oct. 5, 2021) (quoting *Watec v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005)) (holding that the determination of whether a case is exceptional under the Lanham Act is "a question of law for the district court, not the jury" that should be made by examining "the totality of the circumstances").

Here, the Court's finding of Defendants' intentional infringement of the BAYC Marks makes this case exceptional and justifies an award of Yuga Labs' reasonable attorneys' fees.  *See supra* Section II.A.2.b.; *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) ("[A]ttorneys' fees are available in trademark infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful.").  As this Court already found on summary judgment, "Defendants knowingly and intentionally used Yuga's BAYC Marks…in an effort to confuse consumers," "intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding," and "acted with a bad faith intent to profit" in using the BAYC Marks.  Dkt. 225 at 12, 15.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Although Defendants' intentional infringement has been established, a jury's finding of willfulness is not necessary in determining that this is an exceptional case. *See*, *e.g.*, SunEarth, 839 F.3d at 1181. This case is also exceptional because Defendants and their counsel have established a pattern of highly unreasonable litigation conduct that consistently crossed the line from advocacy into bad faith. *See supra* Section II.A.2.b.[7] The examples listed above merely scratch the surface of the egregious conduct exhibited by Defendants and their counsel throughout this litigation. Even still, they make clear that Defendants have employed countless bad-faith tactics in litigating this case and have sought to burden Yuga Labs at every turn. Such improper displays of gamesmanship make this case exceptional and support an award of enhanced damages and attorneys' fees. *See* San Diego Comic Convention v. Dan Farr Prods., 807 F. App'x. 674, 676 (9th Cir. 2020) (holding that unreasonable litigation tactics, such as "failure to comply with court rules, persistent desire to re-litigate issues already decided, advocacy that veered into 'gamesmanship,' and unreasonable responses to the litigation" are grounds to find a case to be exceptional).

### D.   Injunctive Relief

The Lanham Act gives courts the exclusive "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" under the Act. *Id.*

Here, the Court concluded that Yuga Labs is entitled to injunctive relief for its first and third claims. As the evidence shows, Yuga Labs is also entitled to injunctive relief for its second claim for false advertising. Defendants promote and/or collect royalties from the RR/BAYC NFTs daily, while Yuga Labs and consumers continue

---

[7] This list is not exhaustive, and Yuga Labs reserves the right to present further evidence in support of its exceptional case argument in post-trial briefings.

FENWICK & WEST LLP
ATTORNEYS AT LAW

to suffer significant harm.  Accordingly, injunctive relief is appropriate to prevent irreparable injury to Yuga Labs.

## VI.   BIFURCATION OF ISSUES

The parties do not request a bifurcated trial.

## VII.   JURY TRIAL

### A.   Jury Issues

The issues for the jury include:

1.    The amount of actual damages to award Yuga Labs pursuant to the Court's Order granting summary judgment in favor of Yuga Labs as to its claim for false designation of origin;

2.    A calculation of Defendants' profits from their promotion and sale of RR/BAYC NFTs;

3.    Whether Defendants engaged in false or misleading advertising in violation of the federal Lanham Act;

4.    The amount of actual damages to award Yuga Labs should the jury find that Defendants engaged in false or misleading advertising in violation of the federal Lanham Act;

5.    The amount of statutory damages to award Yuga Labs pursuant to the Court's Order granting summary judgment in favor of Yuga Labs as to its claim for cybersquatting.

### B.   Court Issues

The issues for the Court, which Yuga Labs believes can be resolved solely through post-trial briefing, include:

1.    The nature of injunctive relief to grant Yuga Labs pursuant to the Court's Order granting summary judgment in favor of Yuga Labs as to its claims for false designation of origin and cybersquatting;

2.    Whether to permanently enjoin Defendants from engaging in false or misleading advertising in violation of the federal Lanham Act, including but not

FENWICK & WEST LLP
ATTORNEYS AT LAW

limited to the cessation of all false statements in the connection with the sale or promotion of any RR/BAYC NFTs;

3.    Whether this is an exceptional case in which the Court should enhance damages up to three times and award Yuga Labs its attorneys' fees;

4.    The amount of disgorgement of Defendants' profits. *See Harbor Breeze Corp.*, 28 F.4th at 39; 15 U.S.C. § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.");

5.    To the extent that the Court will allow Defendants to provide evidence of Defendants' mental state for purposes of determining damages, Yuga Labs' position is that this is an equitable issue for the Court to determine in assessing whether to increase or decrease the disgorgement of profits.

## VIII.  ATTORNEYS' FEES

Yuga Labs seeks reimbursement of its attorneys' fees under 15 U.S.C. § 1117, which provides that "[t]he court in exceptional cases may award reasonable attorney[s'] fees to the prevailing party." 15 U.S.C. § 1117. As discussed above, the Court's finding of Defendants' intentional infringement of the BAYC Marks and unreasonable litigation conduct makes this case exceptional and justifies an award of Yuga Labs' reasonable attorneys' fees. *See supra* Section II.A.2.b. and Section V.C. The amount in fees that Yuga Labs seeks will be based on post-trial briefing.

Yuga Labs will also seek its attorneys' fees pursuant to 17 U.S.C. § 505 of the Copyright Act because the Court dismissed two of Defendants' claims brought under the Copyright Act at the motion to dismiss stage and granted summary judgment in Yuga Labs' favor on the third counterclaim brought under the Copyright Act. Yuga Labs is thus the prevailing party on those counterclaims and, therefore, entitled to its attorneys' fees in defending against them.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## IX.    ABANDONMENT OF ISSUES

With the exception of Yuga Labs' unjust enrichment claims, which it dropped during motion to dismiss briefing but reserved as a remedy, none of Yuga Labs' claims have been abandoned.  Yuga Labs' state court claims have been stayed pending appeal, but Yuga Labs is continuing to pursue those claims.

The Court dismissed all of Defendants' counterclaims.  Accordingly, Yuga Labs abandons for trial purposes only any affirmative defenses previously asserted in response to those counterclaims.

Defendants have abandoned their affirmative defenses by failing to offer supporting evidence or any corresponding jury instructions and failing to assert any defenses in Section 7 ("Claims and Defenses of the Parties") of the Final Pretrial Conference Order.  *See* Appendix A to Local Rules ("If a party chooses to abandon a claim or defense previously alleged, it may do so by not including it in this order, and the failure to include any pleaded claim or defense will be deemed to effect such a waiver.").

Dated:  May 25, 2023                        FENWICK & WEST LLP

By:   */s/  Eric Ball*
           Eric Ball
           Attorneys for Plaintiff
           YUGA LABS, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Yuga Labs, Inc., certifies that this brief contains 6,715 words, which complies with the word limited of L.R. 11-6.1.


Dated:  May 25, 2023                    FENWICK & WEST LLP


                                        By:  _/s/  Eric Ball_
                                             Eric Ball
                                        Attorneys for Plaintiff
                                        YUGA LABS, INC.