Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA  90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> RYDER RIPPS, JEREMY CAHEN, <br><br> Defendants. | Case No.: 2:22-cv-04355-JFW-JEM <br><br> **JOINT STATEMENT RE YUGA LABS'S OFFER OF PROOF FOR LAURA O'LAUGHLIN** |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:  310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA  22314
Telephone:  202.628.7400

Attorneys for Plaintiff
YUGA LABS, INC.

Plaintiff Yuga Labs, Inc. and Defendants Ryder Ripps and Jeremy Cahen submit their joint statement as to Yuga Labs' Offer of Proof (Dkt. 265) for its expert Laure O'Laughlin.

Ms. O'Laughlin's testimony will consist of the following opinions, which are also set forth in Yuga Labs' Offer of Proof. Yuga Labs and Defendants were unable to resolve the following issues with respect to Yuga Labs' Offer of Proof, Motion *In Limine* No. 6, and the three opinions proffered by Laura O'Laughlin.

**Opinion No. 1:** Based on Ms. O'Laughlin's expertise and experience, her review of the relevant materials produced in this matter, and the results of the Eveready likelihood of confusion survey she designed, conducted, and analyzed, she reached the opinion that there is a meaningful likelihood of confusion for consumers who saw the BAYC Marks used in connection with the at-issue RR/BAYC NFT collection on the Foundation marketplace.

Specifically, using an appropriately designed "Eveready"-style survey with relevant marketplace context and control stimuli, she found a net confusion rate of 40.4%. That is, using an experimental design to control for any potential survey noise or bias, she found that 49.2% of respondents in the BAYC Group (test group) associated the at-issue RR/BAYC NFT collection with Bored Ape Yacht Club, and 8.8% of respondents in the CGBC Group (control group) associated the at-issue RR/BAYC NFT collection with Bored Ape Yacht Club. The net effect demonstrates likelihood of confusion among relevant consumers on the Foundation marketplace.

**Proffering Party (Yuga Labs):**

The basis for Ms. O'Laughlin's opinion is contained in her report at ¶¶ 1-4 (Qualifications); ¶ 5 (Assignment); ¶¶ 6-7 (Materials Considered); ¶¶ 8-15 (Background); ¶¶ 16(a), 17 (Summary of Opinions); ¶¶ 18-20, 22-52 (Assessment of Likelihood of Consumer Confusion); Exhibits 1-7; Appendices A-C, D.1-D.4; Supplemental Expert Report, Appendices A-B. *See* Dkt. 265-1, 265-2

Ms. O'Laughlin testified about her opinion in her deposition at: 12:7-20,

16:18-23, 26:2-27:7, 83:21-85:12, 87:25-88:24, 90:13-92:5, 95:6-20, 98:19-99:16, 120:11-15, 145:13-151:1, 155:20-157:9, and 159:2-160:18. *See* Dkt. 265-3.

In forming her opinion, Ms. O'Laughlin relied on the documents and statements contained in Dkt. 265-4.

**Non-Proffering Party (Defendants):**

Ms. O'Laughlin's Opinion No. 1—which is based on her methodological decision to use an *Eveready* survey applicable to marks that are strong and "top of mind"—is inadmissible under *Daubert* because it is internally inconsistent with her methodological decision to use a *Squirt* survey applicable to marks that are weak. Ms. O'Laughlin herself has counseled the public on how to choose *between* the *Eveready* survey (for strong marks) and the *Squirt* survey (for weak marks). *See* Laura O'Laughlin et. al., *Which Method is for You? Not All Surveys are Made the Same*, Law Journal Newsletters: The Intellectual Property Strategist, Sept. 2020 at *1-2. Courts and survey methodology experts have explained that the two survey types are appropriate at different times—the *Eveready* when the mark is "top of mind" and the *Squirt* survey when the marks is weak. *Id.* at *2; Jerre B. Swan & R. Charles Henn Jr., *Likelihood of Confusion Surveys: The Ever Constant Eveready Format; The Ever-Evolving Squirt Format*, 109 The Trademark Rptr. 671, 676 (2019); [BBK Tobacco & Foods LLP v. Central Coast Agriculture Inc., 615 F. Supp. 3d 982, 1001 (D. Ariz. 2002)](). Ms. O'Laughlin has publicly echoed the belief that an *Eveready* survey is for use when the mark is "top of mind." *Which Method Is For You?*, at *2.

Yuga's marks can only be one or the other—strong or weak—but Ms. O'Laughlin treated the marks as though they were both. In fact, she conceded that she did not determine whether the marks were strong or weak before conducting the surveys. O'Laughlin Depo Tr. 86:5-10. This fundamentally undermines her opinion applying the *Eveready* survey.

In its opposition to Defendants' motion *in limine* to exclude Ms. O'Laughlin's

opinion, Yuga cites a variety of cases in which experts were permitted to use separate survey types—but not a single one of those cases was a *Daubert* challenge to a single expert using both survey types without determining whether the asserted mark was strong or weak. Defendants are aware of no case—and Yuga has cited none—in which a court allowed an expert to testify about two surveys applying inconsistent surveys when the opposing party challenged that use. By contrast, there are cases in which courts have excluded one survey type when the other was appropriate. *See Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, No. 06-Civ.-550-JFK, 2007 WL 2258688, at *8 (S.D.N.Y. Aug. 6 2007).

Fundamentally, what is notable from Yuga's offer of proof is any predicate opinion from Ms. O'Laughlin as to whether the asserted marks are strong or weak. Absent this, it is impossible to determine which survey format is methodologically appropriate, and her opinions based on surveys should be excluded.

**Proffering Party's (Yuga Labs') Response:**

In trials such as this, "survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037 (9th Cir. 2010) (alterations in original, emphasis added) (citation omitted) (finding district court abused discretion in excluding expert survey); *Sports Mktg. Monterrey Grp., LLC v. Socios Servs. US Inc.*, No. 22-cv-08939-SI, 2023 WL 2671379, at *19 (N.D. Cal. Mar. 27, 2023) ("The Ninth Circuit has not decided whether the *Eveready* or *Squirt* survey formats are more appropriate to use to test for likelihood of confusion in reverse confusion cases but has held broadly that ***any type of survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant***.'") (alterations in original, emphasis added) (citation omitted). It is undisputed that Ms. O'Laughlin's testimony is relevant to the issues remaining for trial, namely, remedies for Yuga Labs' first claim for false designation of origin and both liability and remedies for Yuga Labs' second claim for false advertising.

Thus, Defendants' argument is based solely on their contention that Ms. O'Laughlin's two surveys—which found consumer confusion on both the Foundation and OpenSea NFT marketplaces—is "internally inconsistent" because she used the appropriate survey methodology for each respective marketplace. This novel argument finds no support in any authority Defendants have identified and is meritless.

**First**, the law in the Ninth Circuit is clear that questions of this sort go to the weight of a survey expert's testimony, not its admissibility. *See, e.g.*, *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) ("[I]ssues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. These are issues for a jury . . . ." ) (citation omitted); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) ("Challenges to survey methodology go to the weight given the survey, not its admissibility."); *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Technical unreliability goes to the weight accorded a survey, not its admissibility."). At the threshold, Defendants' argument about choice of methodology fails because this goes to the weight of the evidence.

**Second**, even if Defendants' criticism were grounds for the Court to consider excluding Ms. O'Laughlin's testimony, her decision to use a different survey methodology for the different NFT marketplaces is not "internally inconsistent." Fundamentally, Defendants have identified no inconsistency; this is not a case in which an expert conducted two surveys in the same marketplace and found opposite results that could not be explained; both surveys reached the ***same finding*** on ***different*** marketplaces of high net consumer confusion rates caused by Defendants' promotion and sale of their lookalike NFTs.

In fact, the legal and academic literature strongly support Ms. O'Laughlin's decision to vary her survey methodology where the proximity of the products differed

between marketplaces. Defendants misleadingly fail to even discuss proximity, but the proximity of the goods in the market is a key factor in choice of survey methodology: Ms. O'Laughlin thus appropriately used an Eveready survey where the parties' goods were not sold alongside each other (Foundation), and a Squirt survey where the goods were offered on the same marketplace at the same time (OpenSea). Squirt surveys should be used "where the stimuli proximately tested in the format appear, in fact, proximately in the marketplace." Jerre B. Swann, *Likelihood of Confusion Studies and the Straitened Scope of Squirt*, 98 Trademark Rep. 739, 740 (2008). "While a *Squirt* survey is sometimes used when the two marks are likely to be seen in the marketplace sequentially or side-by-side, there is no general rule that an *Eveready* survey cannot be used and admitted as evidence in these situations." 6 McCarthy on Trademarks and Unfair Competition § 32:173 (5th ed.); *see also id.* ("While a *Squirt* survey is sometimes used when the two marks are likely to be seen in the marketplace sequentially or side-by-side, there is no general rule that an *Eveready* survey cannot be used and admitted as evidence in these situations."); Laura O'Laughlin, et al., *Which Method is for You? Not All Surveys are Made the Same*, Law Journal Newsletters: The Intellectual Property Strategist, Sept. 2020 at 1-2 ("Courts generally view trademark strength **and marketplace proximity** as factors to consider when choosing between Eveready and Squirt.") (emphasis added); Jerre B. Swann, *Eveready and Squirt-Cognitively Updated*, 106 Trademark Rep. 727, 737 (2016) ("Where, in sum, marks are not *proximate*, an Eveready is likely the only format available; and even as to proximate marks, an Eveready may always be offered (possibly in response to complaint allegations of trademark strength) in conjunction with a Squirt to negate the reach capabilities of a brand.") (footnote omitted); *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1175 (C.D. Cal. 2017) (crediting Squirt survey in a preliminary injunction order because "consumers may encounter both marks in close proximity on the Internet on the same websites"); *cf. Isle of Capri Casinos, Inc. v. Flynt*, No. 2:16-CV-06148-CAS-

MRWX, 2016 WL 6495380, at *6 (C.D. Cal. Nov. 1, 2016) (giving little weight to Squirt survey in preliminary injunction order when the survey "did not replicate marketplace conditions", i.e., not in close proximity).

Defendants repeatedly assert that the choice between an Eveready and Squirt format for a survey depends on whether the plaintiff's marks are "strong or weak." *See supra*. This oversimplifies the distinction. As discussed above, whether a brand is top of mind for a consumer is only one factor used in determining which survey method to use. *See also, e.g.*, Swann, *Likelihood of Confusion Studies and the Straitened Scope of Squirt*, at 747 (2008) ("there may be no single survey for all strong mark likelihood of confusion cases"). Defendants' own authority recognizes as much: *BBK Tobacco & Foods LLP v. Central Coast Agriculture Inc.*, 615 F. Supp. 3d 982, 1001 (D. Ariz. 2002) (quoting Swann, *Eveready and Squirt-Cognitively Updated*, at 742 (the Squirt methodology is "appropriate in assessing the likelihood of whether brands that, in the real world, are frequently encountered in physical or temporal proximity will be seen as so physically or conceptually similar or related that they are deemed to go or belong together")). Yet, Defendants wholly ignore the proximity of the marks in the two different marketplaces, even though Ms. O'Laughlin repeatedly emphasized it to them during her deposition.[1] In fact, Defendants tried this same tactic of reducing a multi-factor decision to "strong or weak" in Ms. O'Laughlin's deposition, to no avail.

Q. So Eveready for strong, Squirt for weak; right?

[Objection]

---

[1] *See* O'Laughlin Dep. Tr. 91:24-92:5 (emphasis added); *see also id.* at 90:23-91:2 ("I decided to conduct two online consumer surveys, one that took an Eveready approach and another that took a Squirt approach, given the marketplace context in which the marks appeared."); *id.* at 98:15-18 ("You need to think about whether the marks appear next to one another in the instance of assessing confusion in which — which is my assignment here, consumer confusion."); *id.* at 99:13-16 ("it's appropriate to use the Eveready Survey design [for the Foundation marketplace] because this is where only the junior user's use of the senior user's mark appears.").

> A. That's not what I said. [navigating exhibit].
>
> So the idea is to give the reader an overview of different methods that are used in survey analysis that relate to intellectual property matters, and there are different factors that courts consider. There's no one-size-fits-all. ***The factors are weighed.*** There's consideration and thought that needs to be put into -- to the choice of the survey. It's not -- it's not a simple if-then statement. ***You need to think about the context. You need to think about how the marks appear.*** You need to think about whether the marks appear next to one another in the instance of assessing confusion in which -- which is my assignment here, consumer confusion.

O'Laughlin Dep. Tr. 97:18-98:18 (emphases added). If Defendants continue to believe that the strength of the BAYC Marks required an Eveready survey for both Foundation and OpenSea, notwithstanding the different context of those marketplaces, that argument is squarely a challenge to the weight (not admissibility) of the evidence.

Indeed, as explained in Yuga Labs' portion of Motion *In Limine* No. 6 (Dkt. 242), Courts not only permit but regularly give weight to survey expert testimony containing both Eveready and Squirt methodologies.[2] Though there appears to be no

---

[2] *See, e.g.*, *Icleen Entwicklungs-Und Vertiebsanstalt Für Umweltprodukte v. Blueair AB*, No. 21-cv-2236 DSF (ADS), 2021 WL 6104397 (C.D. Cal. Oct. 4, 2021) (crediting Eveready and Squirt surveys in ruling on a preliminary injunction); *Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965 (D. Minn. 2017) (same); *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630 (S.D.N.Y. 2011) (same); *see also YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 429250, at *3 (W.D. Tex. 2017) (declining to exclude from trial a survey that joined the Eveready and Squirt survey methods); *Safe Auto Ins. Co. v. State Auto. Mut. Ins. Co.*, No. 2:07-CV-1121, 2009 WL 3150328, at *3 (S.D. Ohio Sept. 30, 2009) (declining to exclude from trial a survey, noting "[t]he Survey's methodology

case law addressing these exact circumstances on a *Daubert* motion (the cases either concern different procedural postures or different circumstances), the one-sided approach of prior cases to credit survey evidence such as Ms. O'Laughlin's does not counsel in favor of excluding it entirely from a jury—a drastic measure no court has ever taken based on Defendants' reasoning. Exclusion of Ms. O'Laughlin's testimony would require the creation of a new and imprudent rule that would be contrary to Ninth Circuit authority reserving quibbles about the choice of methodology for the jury.

**Finally**, it bears emphasis that while exclusion of Ms. O'Laughlin's highly relevant testimony about her carefully conducted surveys would prejudice Yuga Labs, Defendants have identified no real unfairness in permitting Ms. O'Laughlin to testify. Both of her surveys found consumer confusion, which the Court has already found to be likely based on Defendants' actions. And, Defendants tellingly do not say that either survey was conducted in a flawed manner or that the results are unreliable—only that the use of both methodologies violated a rule they ask the Court to create ad hoc.

Because Ms. O'Laughlin's testimony is relevant and because Defendants have offered no meritorious reason that it is so unreliable to require exclusion under *Daubert*, the motion should be denied.

**Opinion No. 2:** Based on Ms. O'Laughlin's expertise and experience, her review of the relevant materials produced in this matter, and the results of the Squirt likelihood of confusion survey she designed, conducted, and analyzed, she reached the opinion that there is also a meaningful likelihood of confusion for consumers who saw the BAYC Marks used in connection with the at-issue RR/BAYC NFT collection on the OpenSea marketplace.

Specifically, using an appropriately designed "Squirt"-style survey with

---

combined elements of both an *Eveready*-type approach and a *Squirt-type* approach, two approaches that have received court approval").

relevant marketplace context and control stimuli, she found a net confusion rate of 20.0%. That is, using an experimental design to control for any potential survey noise or bias, she found that 21.2% of respondents in the BAYC Group (test group) associated the at-issue RR/BAYC NFT collection with Bored Ape Yacht Club, and 1.2% of respondents in the CGBC Group (control group) associated the at-issue RR/BAYC NFT collection with Bored Ape Yacht Club. The net effect demonstrates likelihood of confusion among relevant consumers on the OpenSea marketplace.

**Proffering Party (Yuga Labs):**

The basis for Ms. O'Laughlin's opinion is contained in her report at ¶¶ 1-4 (Qualifications); ¶ 5 (Assignment); ¶¶ 6-7 (Materials Considered); ¶¶ 8-15 (Background); ¶¶ 16(b), 17 (Summary of Opinions); ¶¶ 18-19, 21, 29-33, 53-78 (Assessment of Likelihood of Consumer Confusion); Exhibits 8-13; Appendices A-C, E.1-E.3b; Supplemental Expert Report, Appendices A-B. *See* Dkt. 265-1, 265-2.

Ms. O'Laughlin testified about her opinion in her deposition at 12:7-20, 16:18-23, 26:2-27:7, 83:21-85:12, 87:25-88:24, 90:13-92:5, 95:6-20, 163:23-164:23, 171:22-172:23, and 181:1-9. *See* Dkt. 265-3.

In forming her opinion, Ms. O'Laughlin relied on the documents and statements contained in Dkt. 265-5.

**Non-Proffering Party (Defendants):**

As with Opinion No. 1, Ms. O'Laughlin's Opinion No. 2—which is based on her methodological decision to use a *Squirt* survey applicable to marks that are "weak"—is inadmissible under *Daubert* because it is internally inconsistent with her methodological decision to use an *Eveready* survey applicable to marks that are strong. It is internally inconsistent with her Opinion No. 1 and lacks any foundational opinion as to whether the asserted marks are strong or weak.

**Proffering Party's (Yuga Labs') Response:**

As with Opinion No. 1, Ms. O'Laughlin's opinion is relevant and the surveys

were conducted according to accepted principles. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037 (9th Cir. 2010). It is not "internally inconsistent" and there is no basis to exclude the testimony from trial.

**Opinion No. 3:** To the extent that Yuga Labs' Motion *in Limine* No. 1 and/or 2 is denied and Defendants are entitled to discuss the purported "satirical" nature of the RR/BAYC NFT project, Yuga Labs will rely on the following opinion.

With the strong overlap and similarities in Defendants Ripps' and Cahen's use of the BAYC Marks and Defendants Ripps' and Cahen's claim that NFT consumers are aware of the "satirical" nature of the project, Ms. O'Laughlin took additional measures in both of her likelihood of confusion surveys to ensure that her net confusion findings were not an artifact of guessing or weakly held beliefs. Ms. O'Laughlin found the majority of confused respondents exhibited strongly held beliefs as to the source as to the source, affiliation, or sponsorship of the at issue RR/BAYC NFT collection. These results confirm her findings of a meaningful likelihood of confusion in both the Foundation and OpenSea contexts and undermine Defendants Ripps' and Cahen's claims that confusion was "impossible."

**Proffering Party (Yuga Labs):**

The basis for Ms. O'Laughlin's opinion is contained in her report at ¶¶ 1-4 (Qualifications); ¶ 5 (Assignment); ¶¶ 6-7 (Materials Considered); ¶¶ 8-15 (Background); ¶¶ 16(c), 17 (Summary of Opinions); ¶¶ 18-21, 38-41, 48-52, 69-70, 74-78 (Assessment of Likelihood of Consumer Confusion); Exhibits 1-13; Appendices A-E; Supplemental Expert Report, Appendices A-B. *See* Dkt. 265-1, 265-2.

Ms. O'Laughlin testified about her opinion in her deposition at: 47:2-48:5, 187:25-189:19, and 204:10-205:20. *See* Dkt. 265-3.

In forming her opinion, Ms. O'Laughlin relied on the documents and statements contained in Dkt. 265-6.

**Non-Proffering Party (Defendants):**

As with Opinion Nos. 1 and 2, Ms. O'Laughlin's Opinion No. 3—which is again based on her methodologically unsound decision to use two surveys with directly contrary predicate requirements (strong marks vs. weak marks)—is inadmissible under *Daubert*. It should be excluded for the same reasons as Opinion Nos. 1 and 2.

**Proffering Party's (Yuga Labs') Response:**

As with Opinion Nos. 1 and 2, Ms. O'Laughlin's opinion is relevant and the surveys were conducted according to accepted principles. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037 (9th Cir. 2010). It is not "internally inconsistent" and there is no basis to exclude the testimony from trial.

Dated: June 5, 2023

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ Louis W. Tompros
Louis W. Tompros
Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

Dated: June 5, 2023

FENWICK & WEST LLP

By: /s/ Eric Ball
Eric Ball
Attorneys for Plaintiff
YUGA LABS, INC.

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on June 5, 2023.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000