1  ERIC BALL (CSB No. 241327)
   eball@fenwick.com
2  KIMBERLY CULP (CSB No. 238839)
   kculp@fenwick.com
3  FENWICK & WEST LLP
   801 California Street
4  Mountain View, CA  94041
   Telephone:  650.988.8500
5  Facsimile:   650.938.5200
6
   ANTHONY M. FARES (CSB No. 318065)
7  afares@fenwick.com
   ETHAN M. THOMAS (CSB No. 338062)
8  ethomas@fenwick.com
   FENWICK & WEST LLP
9  555 California Street, 12th Floor
   San Francisco, CA  94104
10 Telephone:  415.875.2300

11 *Additional Counsel listed on next page*

12 Attorneys for Plaintiff
   YUGA LABS, INC.
13

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA  90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

14
15
16                    UNITED STATES DISTRICT COURT
17                   CENTRAL DISTRICT OF CALIFORNIA
18                  WESTERN DIVISION – Los Angeles
19

20 | YUGA LABS, INC.,              | Case No.: 2:22-cv-04355-JFW-JEM |
21 |              Plaintiff,        | **JOINT STATEMENT RE ISSUES THAT HAVE BEEN RESOLVED OR THAT REQUIRE A RULING BY THE COURT RE YUGA LABS, INC.'S MOTION *IN LIMINE* NO. 5** |
22 |         v.                     |
23 | RYDER RIPPS, JEREMY CAHEN,     |
24 |              Defendants.       |
25

26
27
28

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

DAVID Y. SILLERS (*admitted pro hac vice*)
david@clarelocke.com
KATHRYN HUMPHREY (*admitted pro hac vice*)
kathryn@clarelocke.com
MEGAN L. MEIER (*admitted pro hac vice*)
megan@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: 202.628.7400

Attorneys for Plaintiff
YUGA LABS, INC.

Plaintiff Yuga Labs, Inc. and Defendants Ryder Ripps and Jeremy Cahen submit their joint statement as to those issues that will require a ruling by the Court relating to Yuga Labs' Motion *In Limine* No. 5 to Exclude Evidence that the BAYC Terms Devalued the BAYC Marks (Dkt. 241) ("MIL 5").  The parties were unable to resolve the issues set forth in MIL 5, and their respective positions on these issues are set forth below.  A list of trial exhibits at issue is attached hereto as **Exhibit A**.

### A.    Yuga Labs' Position

Without re-stating the arguments set forth in Yuga Labs' MIL 5, which are expressly reserved, Yuga Labs further adds that the motion should be granted for the following reasons.

***Defendants' Licensing Argument is precluded by the Court's Summary Judgment Order.***  Defendants admit that they plan to re-litigate the issues the Court already decided on Yuga Labs' motion for summary adjudication by, among other things, seeking to argue and introduce evidence at trial that, because some of the BAYC ape images contain some (but not all) of the BAYC Marks, the BAYC Terms provide rights to use these marks *as marks*.  MIL 5 at 15.  The Court rejected this interpretation of the BAYC Terms in its Order on Yuga Labs' Motion for Summary Judgment (Dkt. 225) ("Order"), holding that "Yuga has not granted BAYC NFT holders a trademark license."  Order at 9-10; *see also Neo4j, Inc. v. PureThink, LLC, 480 F. Supp. 3d 1071, 1077 (N.D. Cal. 2020)*.  This finding alone is sufficient to exclude the Licensing Argument and evidence as irrelevant.  Fed. R. Evid. 401, 402; *Mag Instrument, Inc. v. Dollar Tree Stores Inc.*, No. CV 03-6215 RSWL (SHx), 2005 WL 5957825, at *2 (C.D. Cal. Apr. 14, 2005) (evidence that concerns an argument mooted by summary adjudication is excluded).  Defendants claim that they are not asserting this theory to argue naked licensing, but to demonstrate that licensed third-party use "diminishes the harm caused by Defendants' use" (MIL 5 at 11).  But they do not deny that this repackaged version of their naked licensing theory relies on the same premises and evidence that were previously rejected in the Court's Order.  The

1   Court should not allow Defendants to sneak irrelevant issues back into the case when

2   they have already been adjudicated.

3         ***Defendants' Licensing Argument lacks evidentiary support.***   Despite

4   multiple opportunities, Defendants *still* have not identified any evidence that third-

5   party use of licensed BAYC ape images actually caused harm.  No Yuga Labs fact

6   or expert witness testified that such uses harm Yuga Labs (indeed, they denied that

7   such uses harmed Yuga Labs), and Defendants have no expert to opine that such use

8   would have harmed Yuga Labs.  Defendants' claim that "Yuga does not dispute" that

9   third-party uses of the BAYC ape images "significantly reduce[]" the harm caused

10  by Defendants' own infringement is false.  Yuga Labs' evidence and testimony tie

11  damages directly to Defendants, and Yuga Labs even asserts that authorized and fair

12  third-party uses of Yuga Labs' BAYC ape images are a positive attribute of the

13  BAYC community.  MIL 5 at 8.  The only evidence in the record of trademark harm

14  arises from *Defendants'* infringement, which, in the absence of evidence of harm

15  caused by third parties, is uncontroverted.  MIL 5 at 7-8.  Defendants further claim

16  they are allowed to introduce evidence relevant to other "market factors" to inform

17  the jury's damages calculations (MIL 5 at 12), yet the "third party brands"

18  Defendants point to only purport to show authorized use of the BAYC ape images,

19  not any trademark harm arising from such use.[1]  MIL 5 at 13-14.  Moreover, the

20  Ninth Circuit's comment about other "market factors" upon which Defendants rely

21  relates *only* to damages claims for lost profits, *which Yuga Labs is not seeking*.

22  Finally, any evidence Defendants could offer in support of their claim that third-party

23  use caused harm would be no more than rank speculation barred by Fed. R. Evid.

24  602.

25

26  [1] Defendants' proposed jury instruction No. 28 would require the jury to consider
    "loss caused by other market factors" "when calculating damages," yet this is
27  impossible without any evidence in the record showing that third parties *caused*
    harm, let alone *how much* harm was "not [] a result of defendants' infringement or
28  false advertising."  Joint Jury Instructions (Dkt. No. 230) at 44.

***Third-party use is not relevant.***  Defendants broadly assert that "third-party use is admissible at trial," yet the cases they cite in support are inapposite.  MIL 5 at 15 (citing *Moose Creek*, *Novadaq Techs., Inc.*, and *Positive Ions, Inc.*).  All three cases found that evidence of third-party use of marks was admissible to refute the strength of a mark, *not* that such use diminished the harm caused by infringement. The strength of the BAYC Marks is not in dispute here because the Court already held on Summary Judgment that "the BAYC Marks are both conceptually and commercially strong."  Order at 11.

***Defendants' Licensing Argument is unfairly prejudicial to Yuga Labs.*** Introducing such evidence and argument could confuse the issues and lead the jury to assume, contrary to the Court's rulings, that Yuga Labs does not own the BAYC Marks, that these marks are otherwise not protectable, that third-party compliance with the BAYC Terms is somehow relevant to the determination of this case, and/or that dismissed theories like Defendants' naked licensing claim are still at issue.  Fed. R. Evid. 403; *United States v. Ellis*, 147 F.3d 1131, 1135 (9th. Cir. 1998); *Morgan v. City of Pleasant Hill*, 268 F. App'x. 686, 687 (9th Cir. 2008).  Defendants do not address these clear examples of prejudice, but instead fall back on their bald claim that "third-party use is regularly admissible."  MIL 5 at 16.  As explained above, this is false.  The Court should not tolerate Defendants' attempt to "backdoor evidence that relates to claims dismissed on summary judgment."  *Bell v. Boeing Co.*, No. 20-CV-01716-LK, 2022 WL 1607935, at *3 (W.D. Wash. May 20, 2022); *Mag Instrument*, 2005 WL 5957825, at *2.

For the foregoing reasons, Yuga Labs respectfully requests that the Court grant Yuga Labs' MIL 5.

### B.    Defendants' Position

Yuga seeks to exclude evidence relating to the Terms & Conditions for BAYC NFTs, which granted third-parties unfettered permission to used "purchased art" depicting Yuga's marks commercially and, as result, resulted in widespread

commercial use of the marks.[2]  Yuga wrongly argues that evidence relating to the Terms & Conditions would be unfairly prejudicial because Defendants are allegedly trying to back-door a "naked licensing" defense.  During the parties' conferences of lead counsel (both the pre-filing conference on May 9th, and the court-ordered conference on June 1), Defendants made clear that they do not plan to make any naked licensing argument and the Defendants also made clear that they are not advancing a trademark licensing argument either.  Rather, the Terms & Conditions are relevant because they show that Yuga allowed and encouraged widespread uncompensated commercial use that is practically indistinguishable in the marketplace from Yuga's products, thus reducing the value of Yuga's brand, any marks it relies on, and undermining Yuga's corresponding damages claim.

Yuga also improperly asks this Court to exclude evidence relating to the Terms & Conditions based on a "law of the case" argument, arguing that the Court's summary judgment order precludes any evidence relating to the Terms & Conditions authorizing third-party commercial use.   But, critically, law of the case only applies to those issues actually decided.  *See Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982).  And this Court has entered no decision relating to the actual factual issues presented here—the existence of widespread third-party use and the role the Terms & Conditions had in bringing about that third-party use.  Further, even if the Court **had** addressed this factual dispute, the "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the

---

[2] Yuga's requested relief is also improperly vague, as confirmed by Yuga's removal of several exhibits from its initial list and then adding five new exhibits for the first time with this joint statement.  Defendants object to the inclusion of these new additional 11 exhibits as untimely: JTX-232; JTX-233; JTX-2408; JTX-2409; JTX-2410.

case. Given the nature of such motions, it could not be otherwise."). Here, the Defendants do not rely on the Terms & Conditions to revisit any of the issues decided at summary judgment, but instead to provide context and marketplace activity relevant for determining the value of the marks and any corresponding damages.

As explained in Defendants section in Motion *in Limine* No. 5, the Terms & Conditions are highly relevant to refuting Yuga's damages claim because, as a result of Yuga's own actions, there has been widespread third-party use that has diminished the value of the marks. The Ninth Circuit has made clear that an award of damages for trademark infringement should not exceed damages to the value of the infringed mark caused solely by the defendants' infringement. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988-89 (9th Cir. 1995) (holding the award should "restore the value plaintiff's trademark has lost due to defendants' infringement"). The value of an infringed mark—and any corresponding damages—is largely dependent on how the mark is used in the marketplace. When there are numerous third parties that use the relevant mark (lawfully or unlawfully), the strength and value of the mark and the impact of any infringement are reduced, because the mark is more loosely tied to the trademark holder. *See Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224 (C.D. Cal. 2004) ("[E]ven an arbitrary mark may be classified as weak where there has been extensive third party use of similar marks on similar goods."); *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 WL 9266497, at *5 (N.D. Cal. Dec. 18, 2015 ) ("Third-party use of similar marks may bear on the strength of Novadaq's marks.").

The Terms & Conditions for BAYC NFTs, as a key mechanism through which Yuga authorized and encouraged widespread third-party commercial use, are highly relevant and material to third-party use and the diminished value of the marks. As a result of the Terms & Conditions, numerous third parties prominently displayed Yuga's marks on their products and in their branding. The marketplace has been flooded with hundreds of entities using Yuga's marks, diminishing the value of

Yuga's marks and reducing any damages that confusion or false advertising resulting from the RR/BAYC Project could have caused.   Thus, evidence relating to the Terms & Conditions for BAYC NFTs is highly relevant to adjudicating damages and would not cause any unfair prejudice.

Dated:  June 6, 2023                         FENWICK & WEST LLP


                                             By:  /s/ Eric Ball
                                                  Eric Ball
                                             Attorneys for Plaintiff
                                             YUGA LABS, INC.

Dated:  June 6, 2023                         WILMER CUTLER PICKERING HALE
                                             AND DORR LLP


                                             By:  /s/ Louis W. Tompros
                                                  Louis W. Tompros
                                             Attorneys for Defendants
                                             RYDER RIPPS and JEREMY CAHEN


**ATTESTATION OF CONCURRENCE IN FILING**

        Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Eric Ball attests that concurrence in the filing of this document has been obtained from Louis W. Tompros.


                                             /s/ Eric Ball
                                             Eric Ball