# Exhibit I

Exhibit I
Page 31

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:   650.988.8500
Facsimile:    650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **PLAINTIFF YUGA LABS, INC.'S AMENDED OFFER OF PROOF FOR LAUREN KINDLER** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, | |
| Defendants. | |

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA 90401
   Telephone:  310.434.4300
4
5  DAVID Y. SILLERS (*admitted pro hac vice*)
   david@clarelocke.com
6  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
7  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA 22314
   Telephone:  202.628.7400
10
11 Attorneys for Plaintiff
   YUGA LABS, INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to the Court's June 2, 2023 Order (Dkt. 264), Plaintiff Yuga Labs,
2 Inc. ("Yuga Labs") submits the following amended offer of proof for its expert
3 witness Lauren Kindler.

**I.    Opinion No. 1**

    **a.    Opinion from Ms. Kindler**

6    Based on Ms. Kindler's expertise and experience, her review of the relevant
7 materials produced in this matter, and an analysis of transactions on the Ethereum
8 blockchain, she reached the opinion that, as of February 1, 2023, Defendants earned
9 $1,589,455 in profits associated with their wrongful conduct (the promotion and sale
10 of RR/BAYC NFTs).  These profits were generated by 1) Defendants' sales of the
11 infringing RR/BAYC NFTs that they minted and began to sell in May 2022, 2) creator
12 fees that Defendants collected from resales of infringing RR/BAYC NFTs on
13 secondary markets, and 3) the value of infringing RR/BAYC NFTs that Defendants
14 hold or did not mint.  Defendants' profits of $1,589,455 likely underestimate Yuga
15 Labs' economic harm, in terms of lost profits, because had Yuga Labs, as opposed to
16 Defendants, minted additional NFTs with its marks, they likely would have sold at
17 higher prices.  Profits continue to accrue to Defendants, as resales on secondary
18 markets are ongoing.

    **b.    Relevance**

20    This opinion is relevant to Yuga Labs' remedies under Yuga Labs' first claim
21 for false designation of origin and its second claim for false advertising.

22    Ms. Kindler's testimony, among other evidence, will show the harm to Yuga
23 Labs as a result of Defendants' trademark infringement and false advertising in
24 relation to the promotion, marketing, and sale of the RR/BAYC NFTs.  Ms. Kindler's
25 testimony is also relevant to calculating Defendants' profits from the sale of
26 infringing RR/BAYC NFTs.

c.      **Basis for Opinion**

1.      **Report (Exhibit A)**

The basis for Ms. Kindler's opinion is contained in her report at ¶ 1 (Introduction and Assignment); ¶¶ 2-5 (Qualifications and Experience); ¶¶ 6-7 (Information Reviewed and Considered); ¶¶ 8, 9(a), 9(b) (Summary of Opinions); ¶¶ 11-40 (Background); ¶¶ 41-54 (Evidence of Consumer Confusion Resulting from the Wrongful Conduct); ¶¶ 57-78 (Evaluation of Yuga Labs' Damages Due to Defendants' Wrongful Conduct); Appendices A-C; Supplemental Expert Report, Appendices A-B.

2.      **Deposition Testimony (Exhibit B)**

Ms. Kindler testified about her opinion in her deposition at:

- 14:3-16
- 19:20-20:5
- 20:12-14
- 20:19-22
- 25:8-27:2
- 33:11-34:7
- 36:10-23
- 56:25-58:18
- 74:17-23
- 75:4-76:10
- 85:15-87:12
- 87:21-88:7
- 88:11-89:21
- 91:5-17
- 92:22-93:22
- 94:1-97:17
- 107:9-113:14

- 114:24-116:6
- 117:14-119:5
- 120:15-121:13
- 126:19-128:16
- 133:9-134:4
- 134:22-135:9
- 138:8-140:11
- 141:1-141:24
- 170:6-171:22

### 3.    Materials Relied On (Exhibit C)

In forming her opinion, Ms. Kindler relied on the documents and statements contained in Exhibit C.

## II.    Opinion No. 2

### a.    Opinion from Ms. Kindler

Based on Ms. Kindler's expertise and experience, her review of the relevant materials produced in this matter, and an analysis of relevant transactions on the Ethereum blockchain, she reached the opinion that Yuga Labs could, as an effort to mitigate further harm, purchase and destroy all infringing RR/BAYC NFTs and Yuga Labs' cost to do so would be $1,792,704.  Ms. Kindler opined that this estimate is very likely understated, as some RR/BAYC NFT owners (including the Defendants themselves) may be "holdouts" in this hypothetical buyback effort and drive up costs to Yuga Labs by charging above-market prices.  Any increase in the value of RR/BAYC NFTs would result in further unjust enrichment to Defendants.

Based on tweets posted by Defendants on June 6, 2023, and subsequent comments and retweets regarding the hypothetical buyback effort, Ms. Kindler has reached the opinion that awareness in the marketplace created by these tweets has led to (and likely will continue to lead to) an increase in the value of RR/BAYC NFTs,

and therefore an increase in the cost to purchase and destroy them.[1]  Immediately after Defendants tweets on June 6, 2023, the price and trading volume of RR/BAYC NFTs increased.  The newly offered and sold RR/BAYC NFTs were also posted at prices that were at or above the current floor price.  In addition, Twitter users claiming to hold RR/BAYC NFTs posted comments on Twitter in response to Defendants' tweets stating that they would only be willing to sell their RR/BAYC NFTs if offered anywhere between 10 and 120 ETH, or $18,374 – $220,484 at the current conversion rate of $1,837.37 per ETH.[2]  This new evidence confirms Ms. Kindler's original opinion that her calculation of $1,792,704 likely understated the cost to purchase and destroy all 9,496 outstanding RR/BAYC NFTs, and supports a cost to purchase and destroy the RR/BAYC NFTs of up to $797,183,838.[3]

### b.    Relevance

This opinion is relevant to Yuga Labs remedies under its first claim for false designation of origin and its second claim for false advertising.

Ms. Kindler's testimony, among other evidence, will show the expenses required for Yuga Labs to mitigate the ongoing harm caused by Defendants' trademark infringement and false advertising in relation to the promotion and sale of the infringing RR/BAYC NFTs.

---

[1]  As of June 8, 2023, the original tweets posted by Defendants on June 6, 2023 had nearly 60,000 views, over 250 likes, close to 100 replies, and over 50 retweets.  Ms. Kindler reserves the ability to supplement this offer of proof prior to trial should Defendants' activities on Twitter or other social media platforms further warrant it.

[2]  The original calculation performed by Ms. Kindler was based on a floor price of $188.79 per RR/BAYC NFT.

[3]  Based on the current floor price of authentic BAYC NFTs, which is 45.69 ETH, or $83,949 (which is lower than the indicated willingness to accept by at least some holders of RR/BAYC NFTs).  This calculation assumes that holders of RR/BAYC NFTs would be willing to accept a buyback offer at a price equivalent to an authentic BAYC NFT.  It is Ms. Kindler's opinion that if there are holdouts even at this price, consistent with the recent social media evidence, the cost to purchase and destroy all RR/BAYC NTFs could even be higher.

**Exhibit I
Page 37**

c.      **Basis for Opinion**

1.      **Report (Exhibit A)**

The basis for Ms. Kindler's opinion is contained in her report at ¶ 1 (Introduction and Assignment); ¶¶ 2-5 (Qualifications and Experience); ¶¶ 6-7 (Information Reviewed and Considered); ¶¶ 8, 9(c)(ii) (Summary of Opinions); ¶¶ 11-40 (Background); ¶¶ 41-54 (Evidence of Consumer Confusion Resulting from the Wrongful Conduct); ¶¶ 57, 85-86 (Evaluation of Yuga Labs' Damages Due to Defendants' Wrongful Conduct); Appendices A-C; Supplemental Expert Report, Appendices A-B.

2.      **Deposition Testimony (Exhibit B)**

Ms. Kindler testified about her opinion in her deposition at:

- 14:3-16
- 19:20-20:5
- 20:12-14
- 20:19-22
- 25:8-27:2
- 33:11-34:7
- 37:23-38:20
- 56:25-58:18
- 74:17-23
- 75:4-76:10
- 167:14-168:14
- 169:19-170:5
- 170:6-171:22

3.      **Materials Relied On (Exhibits D and G)**

In forming her opinion, Ms. Kindler relied on the documents and statements contained in Exhibits D and G.

## III.    Opinion No. 3

### a.    Opinion from Ms. Kindler

Based on Ms. Kindler's expertise and experience and her review of the relevant materials produced in this matter, she reached the opinion that, in addition to the measures of harm quantified above, Defendants' wrongful conduct caused (and continues to cause) additional types of unjust enrichment to Defendants that are significant, yet more difficult to quantify.  Specifically, Defendants have been able to "free ride" on Yuga Labs' investments in creating the BAYC brand.

### b.    Relevance

This opinion is relevant to Yuga Labs remedies under its first claim for false designation of origin and its second claim for false advertising.

Ms. Kindler's testimony, among other evidence, will show the extent of Defendants' ill-gotten gains as a result of their trademark infringement and false advertising in relation to the promotion and sale of the infringing RR/BAYC NFTs.

### c.    Basis for Opinion

#### 1.    Report (Exhibit A)

The basis for Ms. Kindler's opinion is contained in her report at ¶ 1 (Introduction and Assignment); ¶¶ 2-5 (Qualifications and Experience); ¶¶ 6-7 (Information Reviewed and Considered); ¶¶ 8, 10 (Summary of Opinions); ¶¶ 11-40 (Background); ¶¶ 41-54 (Evidence of Consumer Confusion Resulting from the Wrongful Conduct); ¶¶ 57, 89 (Evaluation of Yuga Labs' Damages Due to Defendants' Wrongful Conduct); Appendices A-B; Supplemental Expert Report, Appendices A-B.

#### 2.    Deposition Testimony (Exhibit B)

Ms. Kindler testified about her opinion in her deposition at:

- 14:3-16
- 19:20-20:5
- 20:12-14

Exhibit I
Page 39

- 20:19-22
- 25:8-27:2
- 33:11-34:7
- 74:17-23
- 75:4-76:10
- 128:24-131:1
- 132:22-133:8

### 3.      Materials Relied On (Exhibit E)

In forming her opinion, Ms. Kindler relied on the documents and statements contained in Exhibit E.

## IV.   Opinion No. 4

### a.      Opinion from Ms. Kindler

Based on Ms. Kindler's expertise and experience and her review of the relevant materials produced in this matter, she reached the opinion that, in addition to the measures of harm quantified above, Defendants' wrongful conduct caused (and continues to cause) additional types of harm to Yuga Labs that are significant, yet more difficult to quantify.  Specifically, (1) the confusion created by the wrongful conduct caused damage to Yuga Labs' business; (2) testimony from Yuga Labs' former CEO indicates that the wrongful conduct likely resulted in Yuga Labs' loss of at least one valuable partnership opportunity with another firm; (3) the wrongful conduct likely harmed Yuga Labs' goodwill.  In sum, Yuga Labs has suffered (and continues to suffer) harm as a result of Defendants' wrongful conduct, beyond the damages amounts calculated in Ms. Kindler's report.

### b.      Relevance

This opinion is relevant to Yuga Labs remedies under its first claim for false designation of origin and its second claim for false advertising.

Ms. Kindler's testimony, among other evidence, will show the extent of harm to Yuga Labs caused by Defendants' trademark infringement and false advertising in

relation to the promotion and sale of the RR/BAYC NFTs.

### c.    Basis for Opinion

#### 1.    Report (Exhibit A)

The basis for Ms. Kindler's opinion is contained in her report at ¶ 1 (Introduction and Assignment); ¶¶ 2-5 (Qualifications and Experience); ¶¶ 6-7 (Information Reviewed and Considered); ¶¶ 8, 10 (Summary of Opinions); ¶¶ 11-40 (Background); ¶¶ 41-54 (Evidence of Consumer Confusion Resulting from the Wrongful Conduct); ¶¶ 57, 90-93 (Evaluation of Yuga Labs' Damages Due to Defendants' Wrongful Conduct); Appendices A-B; Supplemental Expert Report, Appendices A-B.

#### 2.    Deposition Testimony (Exhibit B)

Ms. Kindler testified about her opinion in her deposition at:

- 14:3-16
- 19:20-20:5
- 20:12-14
- 20:19-22
- 25:8-27:2
- 33:11-34:7
- 74:17-23
- 75:4-76:10
- 177:2-178:24
- 185:9-186:2
- 186:15-190:14

#### 3.    Materials Relied On (Exhibit F)

In forming her opinion, Ms. Kindler relied on the documents and statements contained in Exhibit F.

**Exhibit I
Page 41**

1

Dated:  June 8, 2023                              FENWICK & WEST LLP

2

3                                                      By: _/s/ Eric Ball_____

4                                                         Eric Ball
                                                       Attorneys for Plaintiff
5                                                      YUGA LABS, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28