Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA  90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>  Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**JOINT STATEMENT RE NATURE AND SCOPE OF DEFENDANTS' PROPOSED TRIAL TESTIMONY** |

| | |
|---|---|
| 1 | MELISSA L. LAWTON (CSB No. 225452) |
| 2 | mlawton@fenwick.com |
| | FENWICK & WEST LLP |
| 3 | 228 Santa Monica Boulevard |
| | Santa Monica, CA 90401 |
| 4 | Telephone: 310.434.4300 |
| 5 | |
| | DAVID Y. SILLERS (*admitted pro hac vice*) |
| 6 | david@clarelocke.com |
| 7 | KATHRYN HUMPHREY (*admitted pro hac vice*) |
| 8 | kathryn@clarelocke.com |
| | MEGAN L. MEIER (*admitted pro hac vice*) |
| 9 | megan@clarelocke.com |
| 10 | CLARE LOCKE LLP |
| | 10 Prince Street |
| 11 | Alexandria, VA 22314 |
| 12 | Telephone: 202.628.7400 |
| 13 | Attorneys for Plaintiff |
| | YUGA LABS, INC. |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Plaintiff Yuga Labs, Inc. ("Yuga Labs") and Defendants Ryder Ripps and Jeremy Cahen (collectively, "Defendants") hereby submit this Joint Statement pursuant to the Court's June 12, 2023 Order (Dkt. 308).

## I. SUMMARY OF THE PARTIES' AGREEMENTS

**A. The Parties agree that Defendants may offer testimony:**

- That Ryder Ripps represents that he is an artist.
- That Defendants contend they created RR/BAYC NFTs and/or used the BAYC Marks with an intent to criticize Yuga Labs and BAYC NFTs.

## II. SUMMARY OF DISPUTED ISSUES

**A. Plaintiff proposes that Defendants may not offer or seek testimony:**

- Concerning the content or substance of Defendants' criticism of Yuga Labs or its founders.
- Stating or suggesting that Yuga Labs or its employees/agents support, condone, or are affiliated with Naziism, antisemitism, racism, alt-right ideology, or white supremacy.
- Stating or suggesting that Defendants or others believed Yuga Labs or its employees/agents support, condone, or are affiliated with any of the above ideologies.
- Stating or suggesting that Defendants created RR/BAYC NFTs, created Ape Market, and/or used the BAYC Marks based on a belief, or to call attention to allegations that, Yuga Labs or its employees/agents support, condone, or are affiliated with any of the above ideologies.
- Stating or suggesting that Yuga Labs' name, brands, goods, services, or artwork contain embedded or coded references to any of the above ideologies.

- Stating or suggesting that Defendants created RR/BAYC NFTs, created Ape Market, and/or used the BAYC Marks as an art project or with artistic intent.
- Stating or suggesting Yuga Labs or its employees/agents are or have been associated with FTX or its management.
- Stating or suggesting that Yuga Labs or its employees/agents have engaged in (or have been accused of engaging in) criminal, unlawful, or fraudulent conduct.
- Referencing litigation or any actual or purported government investigations involving Yuga Labs and any third party other than Thomas Lehman or Ryan Hickman.

**B.  Defendants propose limiting trail testimony in the following manner:**

- Absent Court Permission,[1] Defendants will not:
    - testify concerning alleged references to pedophilia
    - testify using the words "Nazi" or "Hitler"
    - refer in their testimony to Sam Bankman-Fried
    - refer in their testimony to allegations concerning death threats or harassment
    - refer in their testimony to the class action lawsuit brought against Yuga for securities fraud
    - refer in their testimony to the SEC investigation into Yuga for securities fraud

### III.  YUGA LABS' POSITION AS TO CONTESTED TOPICS

Yuga Labs' position is that Defendants' diversions into the contested topics would be irrelevant, unduly prejudicial, and a waste of time.  *See* Fed. R. Civ. P.

---

[1] Should Plaintiff's witness examination(s) open the door on a precluded topic, Defendants respectfully reserve the right to seek the Court's permission to respond.

401, 403. These risks are severely compounded if the remaining issues are tried before a jury, because such accusations present an unworkable dilemma: leave them unaddressed, which improperly suggests to the jury that the claims have merit, or defend against them, which creates precisely the mini-trial that the Court previously found irrelevant and sought to avoid. Worse still, Defendants' attacks would make the trial about animus and not evidence. But fortunately, this Pandora's box need not be opened, because there is no legitimate reason for Defendants to testify to the contested issues described above.

Yuga Labs has agreed that Defendants can answer the question of why they infringed Yuga Labs' marks by testifying that they wanted to criticize the original BAYC NFTs. They can testify that Ryder Ripps purports to be an artist, and end the testimony there. Given that liability has been established; this is now solely a trial on remedies. There is no legitimate reason to probe further and ask Defendants to repeat their false and irrelevant theories about Yuga Labs and purported hidden messages in its products, or to claim that Defendants' commercial infringement was a misguided art project and insinuate that there is still occasion to find a First Amendment justification.

### A. Evidence of Intent Is Not Relevant for Trial

The Court has already decided the issue of Defendants' intent. "Defendants knowingly and intentionally used Yuga's BAYC Marks" and "admitted that they intentionally used the BAYC Marks in their RR/BAYC NFTs." Summary Judgment Order (Dkt. 225) at 11-12. More specifically, "Defendants used the BAYC Marks in an effort to confuse consumers" and "intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding." *Id.* at 12. As to the registration of domain names using Yuga Labs' marks, Defendants "acted with a bad faith intent to profit." *Id.* at 15. Defendants' use of the BAYC Marks was not artistically relevant to their proclaimed "art" and their conduct was explicitly misleading. *Id.* at 16-17. As to Defendants' characterization of their

infringement as art, the Court's Order was similarly decisive.  Defendants' "conduct at issue in this action . . . does not constitute an expressive artistic work." *Id.* at 16.  "[T]he RR/BAYC NFTs do not express an idea or point of view," and their "NFT marketplace sales and Ape Market website contain no artistic expression or critical commentary." *Id.*  In other words, "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag . . . ." *Id.*  Though Defendants continue to attempt to bring in their falsehoods through various backdoor theories, the well has run dry: there is no merit for continuing to relitigate these issues at trial, even if Defendants cast it as "context" or "background."[2]  Defendants' vague proposals to exclude only certain words of phrases (e.g., not say "Nazi" but still say "racist," or "German Third Reich," or "SS") from their testimony is an invitation to once again relitigate these issues.  For instance, Defendants' proposal would permit them to repeat claims made just this week that one of Yuga Labs' witness's maternity dress was a coded reference to a "concentration camp gown."  Defendant Cahen's June 12, 2023 Tweet, https://twitter.com/Pauly0x/status/1668249155305631744.  No witness in a simple trademark remedies trial should be subject to such vile and baseless accusations.

Even still, further discussion of Defendants' subjective intent for infringing Yuga Labs' marks is not relevant to remedies.  Defendants make their latest attempt to bring their theories about Yuga Labs and their purported artistic mission into this case under the argument that they "genuinely believed in their artistic criticisms."  Motion in Limine No. 1 (Dkt. 232) at 21; Motion in Limine No. 2 (Dkt. 236) at 17 (same).  But the genuineness of their beliefs means nothing at this stage of the litigation, because they chose to rip off Yuga Labs' trademarks and enrich

---

[2] To the extent Defendants argue that findings from the Court's Summary Judgment Order are not binding and can be relitigated at trial, Yuga Labs disagrees for the reasons argued in its briefing around motions in limine nos. 1 and 2 and jury instructions.  *See* Dkt. 231 (briefing on proposed jury instructions), 232 (motion in limine no. 1), 233 (motion in limine no. 2), 274 (joint statement on motion in limine no. 1), 275 (joint statement on motion in limine no. 2).

themselves in the process rather than express those purportedly claimed beliefs through non-tortious means.  Defendants' profits are what they are, regardless of the willfulness of their infringement.  The harm done to Yuga Labs is likewise independent of Defendants' willfulness.  Their intent to harm does not increase the impact on the harm to Yuga Labs. Only the action and the result matter for those computations.   And, though this is a matter for the Court and not the jury, willfulness is not necessary to establish that this is an exceptional case. *See* [SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179, 1180 (9th Cir. 2016)](#) (explaining factors to consider as part of "the 'totality of the circumstances' to determine if the infringement was exceptional").

  Defendants' purported basis for introducing and discussing the substance of these topics is that by spreading their outrageous theories, Yuga Labs' brand value was damaged in a way that was merely amplified by their tortious conduct. Defendants have identified no evidence whatsoever and have no expert to support this theory.  They have no quantification.  And they have no evidence of causation.  Indeed, they sought to develop this theory through Dr. Jonah Berger's deposition, where it was squarely rejected. *See, e.g.*, Berger Dep. Tr. at 105:5-16 ("I believe that those allegations were made before the period that I look at in figure 7, for example.  And so if that was damaging the brand, people should already be aware of that information, that damage should have already occurred.  The fact that this damage seems to be localized to the period in which the RR/BAYCs were being minted, suggests that that is – provides evidence that that is what is driving the shift rather than something else."). Defendants' proffered, non-expert, testimony has no probative value and serves only as a longshot hope that the jury will essentially nullify the Court's liability findings by slashing damages.

  The cases Defendants cite in an effort to demonstrate probative value are inapposite, most simply because the racially charged materials in those cases were all relevant to liability (for, e.g., claims asserting racial discrimination or

deprivation of constitutional rights). This is and has always been a trademark infringement case, and liability is not an issue for trial. A more relevant precedent is *MGA Entertainment v. Harris*, No. 2:20-cv-11548-JVS-AGR (C.D. Cal.), a trademark infringement case in which the court granted a motion in limine to exclude allegations of cultural appropriation and then declared a mistrial when Defendants introduced such materials at trial. *Id.* (Dkt. 569) (granting motion for mistrial); *see also id.* (Dkt. 502) (C.D. Cal. Jan. 13, 2023) (excluding in limine "statements regarding cultural appropriation" as they "have no bearing on any of the counterclaims, and . . . are accordingly immaterial and impertinent.").

### B. Testimony as to the Contested Topics Is Inadmissible

Even if Defendants could establish some minimal relevance to these contested topics, that relevance is substantially outweighed by the prejudice, confusion, distraction, and waste of time these topics would introduce into trial. The prejudicial effect of these inflammatory accusations is self-evident: it threatens to taint factual findings about remedies by unfairly planting suspicions and reopening issues of liability under the guise of nullifying Yuga Labs' remedies. Introducing and responding to these claims would involve testimony, cross-examination, exhibits, objections, and deposition testimony that could otherwise be excised from trial to focus on the actual remaining issues. And, if remedies are tried to a jury, Yuga Labs should not have to waste its limited trial time responding to baseless accusations to keep the jury from drawing improper inferences. The testimony Defendants seek to introduce is quintessential Fed. R. Civ. P. 403 material that would result in a sideshow and threaten to derail the narrow remaining issues in this litigation.[3]

---

[3] Even if the Court does determine that testimony about any of the contested topics is admissible for an equitable issue or exceptional case determination, those are issues for the Court and not the jury. If such testimony is heard at all, it should not be heard in the presence of the jury where the prejudicial effect could not be cured.

Unfortunately, even after the Court's pretrial conference, Defendants have made clear that they intend to abuse this litigation and the trial to further their false claims and attack Yuga Labs as "racist fraudsters." *See* Defendant Cahen's June 12, 2023 Tweet, https://twitter.com/Pauly0x/status/1668435427819245569 ("They know that they will look like crazy, racist fraudsters in front of any California jury."). Defendants freely admit that they are not seeking to raise these topics for the truth of the matter. Motion in Limine No. 1 (Dkt. 232) at 31 (representing Defendants will not "seek to introduce evidence about critiques of Yuga for their truth"). Defendants know their allegations are not true, and their unsupported claims (and their efforts to parrot baseless claims by others) serve only to bias the jury.

Defendants' admitted intent to litigate not on the relevant evidence, but on animus, enhances the need for the Court to cabin Defendants' testimony to only the issues relevant for trial. The courtroom is not the Defendants' playground to peddle their lies. After repeated briefing and litigation on these issues, this trial is now the time for Defendants to take responsibility for their actions.

## IV.   DEFENDANTS' POSITION AS TO CONTESTED TOPICS

Yuga's contention that Defendants "intend to abuse this litigation and the trial" is unwarranted and unfair. Defendants position is and always has been that they should be able to explain their conduct to the jury that will determine the amount of damages. Yuga's motion as-filed sought to foreclose Defendants' ability to do so entirely.

Acknowledging the need for explanatory testimony, Yuga has rightly abandoned its position that Defendants could not testify at all about Defendants' artistic intent. Accordingly, the parties now agree that Defendants must be allowed to testify that Mr. Ripps is an artist, and that Defendants created RR/BAYC NFTs and/or used the BAYC Marks with an intent to criticize Yuga Labs and BAYC NFTs.

Unfortunately, the parties were unable to agree as to whether Defendants should be permitted to testify at all about the nature of that criticism, even at a general level. Yuga's proposal, which would limit Defendants to an artificial and sterile recitation that Defendants were protesting without any explanation for why, simply will not accurately present the facts of this case for the jury's consideration. To be clear: Defendants have no intent to have a "mini-trial" on the substance or *truth* of Defendants' criticisms. But the *fact* that there *were* criticisms of the content of Yuga's products and brand because of problematic imagery, content, and conduct is directly relevant to Yuga's damages claim. See *Romag Fasteners, Inc v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492, 1494, 1497 (2020) ("Without question, a defendant's state of mind may have a bearing on what relief a plaintiff should receive. An innocent trademark violator often stands in very different shoes than an intentional one. . . . Given these traditional principles, we do not doubt that a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate.").

Specifically, Yuga states that its marketing expert, Jonah Berger, "will show how the promotion, marketing, and sales of RR/BAYC NFTs changed consumer perception of the BAYC brand and caused confusion in the marketplace, resulting in negative consumer attitudes and harming Yuga Labs' brand equity and goodwill as a result of Defendants' promotion, marketing, and sales of RR/BAYC NFTs." Berger Offer of Proof, Dkt. 267, at 4. The problem, however, is that the "negative consumer attitudes" that purportedly arose from the RR/BAYC Project were not (or at minimum, not entirely) the result of "confusion in the marketplace," but instead the result of the substance of Defendants' criticisms of Yuga and the BAYC NFTs imagery. Although Dr. Berger contended at his deposition that he had not seen "any evidence that [Defendants'] allegations damaged the brand," the jury is entitled to determine whether that opinion is credible.

Defendants of course have no intention of making the damages trial a "mini-trial" about "animus" as Yuga contends. But Defendants must be allowed to testify about the nature of their criticism *at some level*, to show that Yuga's alleged damages do not come "from defendants' trademark infringement" (Yuga's Jury Instruction No. 28, Dkt. 230 at 41), but rather are attributable to negative sentiment in the market resulting from Defendants' criticisms of Yuga.

To fairly balance any theoretical undue prejudice to Yuga from such testimony against the clear unfair prejudice to Defendants if they are denied the ability to explain their own actions, Defendants proposed a reasonable set of limitations, under which Defendants would be able to testify generally that they were criticizing Yuga's company and product because of content that Defendants perceived to be racist and otherwise problematic, and that a portion of the harm that Yuga attributes to consumer confusion for purposes of damages is more correctly attributable to increased public awareness of that criticism. As discussed above and for the reasons explained in detail in Defendants' oppositions to Yuga's motions *in limine*, Defendants continue to maintain that evidence of sources of harm other than consumer confusion remains relevant to the calculation of damages.

The need to explain—at least at a high level—the nature of Defendants' criticism is not outweighed by unfair prejudice concerns. Even "inflammatory" material is admissible under Rule 403 when it goes directly to the theory of the case. *See, e.g.*, *Bassett v. City of Burbank*, No. 2:14-CV-01348-SVW-CW, 2014 WL 12573395, at *4-5 (C.D. Cal. Nov. 14, 2014) (denying a motion to exclude evidence of defendants' "racially inflammatory statements" because "the remarks are central to Plaintiff's theory of the case"); *United States v. Haig*, 365 F. Supp. 3d 1101, 1107-08 (D. Nev. 2019) (denying in part motion to exclude inflammatory evidence because the evidence was "uniquely probative" and granting the motion "would be nothing less than to exclude the heart of the government's case."); *Harris v. Lynwood Unified School District*, No. 07-cv-05058-DDP, 2009 WL

10673589, at *2 (C.D. Cal. Sep. 21, 2009) (denying motion to exclude "racially inflammatory language" because the "probative value of her statements weigh in favor of admitting them.").

The single case that Yuga cites, *MGA Entertainment v. Harris*, No. 2:20-cv-11548-JVS-AGR (C.D. Cal.), does not apply Rule 403 and is thus inapplicable. In *MGA*, the Harris Parties sought to introduce evidence of cultural appropriation simply to show the superiority of their product (for pursuing various diversity goals). *Id*. (Dkt. 502 at 7). The Court excluded the evidence after concluding it was "immaterial" to the trademark inquiry. *Id*. In contrast, the evidence at issue in this case directly relates to an alternative reason for the purported harm that Plaintiff alleges—the primary dispute at trial. That is, Defendants' criticism is uniquely probative because it shows that the purported harm was ***not*** due to consumer confusion—the basis upon which Plaintiff seeks to recover damages.

Further, Defendants have proposed reasonable guardrails to avoid the "mini-trial" on the substance of their claims as outlined in the Section II.B. of this submission. Fundamentally, Defendants' proposal in Section II.B. strikes a balance permitting Defendants to mount a fair defense that includes an explanation of the nature of their criticism and its impact on damages, without undue inflammatory testimony.

Dated: June 15, 2023

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ *Louis W. Tompros*
Louis W. Tompros(*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

Dated: June 15, 2023

FENWICK & WEST LLP

By: /s/ *Eric Ball*
Eric Ball
Attorneys for Plaintiff
YUGA LABS, INC.

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

/s/ *Louis Tompros*
Louis W. Tompros(*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via email June 15, 2023.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000