Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA  90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**JOINT NOTICE OF DEFENDANTS' DESIGNATED WITNESS TESTIMONY OF THOMAS LEHMAN**<br><br>Judge: John F. Walter<br><br>Trial Date: July 31, 2023 |

1     MELISSA L. LAWTON (CSB No. 225452)
2     mlawton@fenwick.com
      FENWICK & WEST LLP
3     228 Santa Monica Boulevard
      Santa Monica, CA 90401
4     Telephone: 310.434.4300

5     DAVID Y. SILLERS (*admitted pro hac vice*)
6     david@clarelocke.com
      KATHRYN HUMPHREY (*admitted pro*
7     *hac vice*)
      kathryn@clarelocke.com
8     MEGAN L. MEIER (*admitted pro hac vice*)
9     megan@clarelocke.com
      CLARE LOCKE LLP
10    10 Prince Street
      Alexandria, VA 22314
11    Telephone: 202.628.7400
12
13    Attorneys for Plaintiff
      YUGA LABS, INC.
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to the Court's Civil Trial Order of June 7, 2023 (Dkt. 284), Plaintiff Yuga Labs, Inc. and Defendants Ryder Ripps and Jeremy Cahen submit the following joint notice of Defendants' designation deposition testimony of Thomas Lehman.

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| *7:8–7:9 [Plaintiff's Counter Designations]*<br>*8 Q.    Are you under the influence of any substance*<br>*9  that would present you from answering truthfully?* | No Objection | |
| *7:11-7:15 [Plaintiff's Counter Designations]*<br><u>*11 Q.    How did you prepare for your deposition today?*</u><br>*12 A.    Talked to my lawyer, glanced at some of the*<br>*13  documents.*<br>*14 Q.    Did you speak to anyone besides Mr. Jacobs?*<br>*15 A.    No.* | No Objection | |
| *7:19–7:25*<br>19 Q.    Now you understand that this deposition relates<br>20  to a lawsuit filed by Yuga Lab against Ryder Ripps and<br>21  Jeremy Cahen?<br>22 A.    I do.<br>23 Q.    And Yuga Lab also filed a lawsuit against you<br>24  in late 2022, correct?<br>25 A.    That's correct. | No objection | |

---

[1] Objections stated on the record and included in the text of the designations are maintained.  No party intends to waive objections on the record by not restating them.

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 13:6–13:25<br>6  Q.     Let's start with Mr. Ripps.  How do you know<br>7  Mr. Ripps?<br>8  A.     Well oddly enough, sort of for this matter, I<br>9  first met Mr. Ripps I believe in 2015, around there, and<br>10  that was in connection with a project that my previous<br>11  company Genius was working on which was a sort of<br>12  expansion beyond music to allow people to annotate and<br>13  describe the meanings of any content on the internet,<br>14  any website.  And we did an event, and the event invited<br>15  artists to use the platform and to try interesting<br>16  things and it was like a party and Ryder Ripps was<br>17  involved in that, so I think I met him during that<br>18  event.<br>19          After that I didn't really talk to him or know<br>20  him for another, you know, until 2022, I guess.  And<br>21  then I interacted with him a little bit online because<br>22  he's been into NFTs and saying interesting things about<br>23  NFTs.  And then I first really connected with him again<br>24  personally about this project that's under consideration<br>25  in the deposition in this case, the RR/BAYC project. | FRE 401-403<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic intent is not relevant to this case and causes undue delay. Mr. Ripps' work as a claimed artist is not relevant to the issues in dispute. | The designated deposition testimony is relevant and would not result in undue delay because it pertains to the witness's knowledge and background in the NFT/cryptocurrency space.<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br>To the extent that it is covered by MIL 2 it is directly relevant for issues of disgorgement, intent, and alternative explanations for sales of RR/BAYC NFTs unrelated to confusion. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 14:5–15:8<br>5 Q.     Okay.  And what do you understand to be<br>6 Mr. Ripps' line of work?<br>7 A.     He is an artist. | FRE 401-404; 602<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic intent is not relevant to this case and causes undue delay. Further, Mr. Lehman's testimony about his understanding of Mr. Ripps' "line of work" is not relevant to any of the issues in dispute. | The designated deposition testimony is relevant and would not cause undue delay because it pertains to the witness's knowledge of Defendant Ryder Ripps and his history of working as an artist, which is relevant as to intent.<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>To the extent that it is covered by MIL 2 it is directly relevant for issues of disgorgement, intent, and alternative explanations for sales of RR/BAYC NFTs unrelated to confusion. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | This is clearly within the witness's personal knowledge as it establishes that he knows that Mr. Ripps is an artist. No one's character is involved in the testimony, much less the idea that anyone is acting in conformity with a character trait. |
| *19:19-19:25 [Plaintiff's Counter Designations to lines 20:1-20:7]*<br>*19 Q.     So I appreciate the detail.  Do I have it right*<br>*20 that an NFT is essentially a nugget that says this*<br>*21 person owns some piece of digital data and can transfer*<br>*22 it to someone else?*<br>*23 MS. CULP: Objection. Misstates*<br>*24 testimony.*<br>*25 A.     I think, yes.  But I think at the most basic* | No objection | |
| 20:1–20:7<br>1 level it wouldn't even be, like, a chunk of digital<br> 2 data.  It would just be a number.  Like you own<br> 3 something with ID 75, and everything beyond that notion,<br> 4 everything defining what that means is a level beyond<br> 5 the core concept of the NFT.  And that's kind of been<br> 6 the work that a bunch of people have done in 2021, 2022<br> 7 and now as kind of flushing that out. | FRE 401-403; 701-702<br><br>Defendants' trademark infringement has been established already and so this question is not relevant to the issues remaining for trial and will only serve to waste time and confuse the | The designated deposition testimony is relevant and would not waste time or confuse the issues because it provides background concerning the witness's knowledge about NFTs, which provides foundation for his later testimony concerning the role |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | issues. Mr. Lehman's understanding of what an NFT is irrelevant to the issues for trial. Its admission would confuse the issues and waste time. Mr. Lehman's explanation of the concept of an NFT is based on technical or specialized knowledge, and he is not qualified as an expert. | of the RR/BAYC NFTs in the NFT market (which is relevant to disgorgement). There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice. |
| 21:7–21:17<br>7 Q.    So do I have it correctly, the world of art has<br>8 been a big player in the NFT space, correct?<br>9         MS. CULP:  Objection.<br>10 A.    That's a little bit cumbersome, but I would say<br>11 yes, there has been a lot of NFT activity that is around<br>12 kind of artistic stuff, whether it's -- yeah, I guess I<br>13 would say that -- that's not the most eloquent -- but<br>14 you get my point.<br>15 Q.    Sure.  There's been a lot of NFT activity<br>16 around art, correct?<br>17 A.    Correct. | FRE 401-403; 602; 701-702<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic intent is not relevant to this case and causes undue delay. Defendants' trademark infringement has been established already and so this question is not | The designated deposition testimony is relevant and would not cause undue delay because it provides background concerning the role of the RR/BAYC NFTs in the NFT market (which is relevant to disgorgement). There is no undue prejudice or undue delay that could result from this testimony |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | relevant to the issues for trial and will confuse the issues and waste time. Mr. Lehman is testifying to the actions and intentions of third-parties not before the court and therefore lacks personal knowledge regarding the matter. Mr. Lehman's testimony pertaining to the art world and its overlap with the NFT space is based on specialized knowledge, and the witness is not qualified as an expert. | (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice. The question asks for information that is within the personal knowledge of the witness, which is partially explained in the witness's ability to give an answer. Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues). |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 22:13–22:15<br>13  Q.      So an NFT is not at its very root a digital art<br>14  artifact, correct?<br>15  A.      Correct. | FRE 401-403; 602; 701-702<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic intent is not relevant to this case and causes undue delay. Defendants' trademark infringement has been established already and so this question is not relevant to the issues for trial and will confuse the issues and waste time. Mr. Lehman lacks personal knowledge regarding the matter. Mr. Lehman's testimony pertaining to what an NFT is or is not is based on technical or specialized knowledge, and witness is not qualified as an expert. | The designated deposition testimony is relevant and would not result in undue delay because it provides foundation for his later testimony concerning the role of the RR/BAYC NFTs in the NFT market (which is relevant to disgorgement).<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness, which is partially explained in the witness's ability to give an answer. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues) |
| 38:14–43:25<br>14 Q.      What is the Ryder Ripps Bored Ape Yacht Club?<br>15              MS. CULP:  Objection. Calls for<br>16        speculation.  Vague.<br>17 A.      So I would say that on the most basic level it<br>18 is an NFT that Ryder created using the platform<br>19 Foundation, and so that is an NFT. That means it's a<br>20 smart contract in the ERC-721 standard as we discussed.<br>21 So on a technical level, it is that.<br>22      You know, beyond the technical level, it sort<br>23 of grew into this thing from the outset where Ryder, you<br>24 know, was again trying to kind of, like, troll people<br>25 and trying to make a point as well where he would sort<br> 1 of say, hey, this -- not famous person, but like, this<br> 2 person in NFT Twitter, this is where I'm going to create<br> 3 my Bored Ape Yacht Club contract, | 38:22–43:25<br>FRE 401-403; 602; 801-802<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as an artist or his purported artistic intent is not relevant to this case and causes undue delay. Mr. Lehman lacks personal knowledge of Mr. Ripps' personal intentions in creating the infringing NFT collection. Testimony as to Mr. Ripps' stated intentions to Mr. Lehman is inadmissible hearsay for which no exception | The designated deposition testimony is relevant to disgorgement and would not cause undue delay,, because it explains the specific NFT collection found to infringe, and the purpose and impact of that collection in the NFT market, which is relevant to disgorgement.  It is also relevant to Defendants' intent (which is relevant to disgorgement).<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| and I'm going to copy<br> 4  the image on your Bored Ape NFT which is the one from<br> 5  Yuga Labs, and I'm going to put that as my profile<br> 6  picture.  And, you know, hey, if you complain about<br> 7  this, then it means that you don't truly believe in the<br> 8  power of NFTs, because if you believe in the power of<br> 9  NFTs, you should believe that you're safe from having<br>10  your image copy/pasted because NFT itself can't be<br>11  copy/pasted.  So this was the point he was trying to<br>12  make.<br>13        He was also trolling people, and that's what it<br>14  was.  And then it kind of evolved and, you know, this<br>15  was all before I got involved.  I was just looking at it<br>16  in on Twitter and seeing it.  But when I got involved<br>17  there was this idea of evolving the project to be<br>18  something bigger, and the first step was selling more,<br>19  was basically instead of Ryder minting these and selling<br>20  these, you know, one by one just solo, what about using<br>21  technology to make that faster.<br>22        So this was a new smart contract that I wrote<br>23  with Ryan Hickman that was not part of the other thing.<br>24  The other thing was its own standalone contract, but | applies. | remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness, which is partially explained in the witness's ability to give an answer. Mr. Lehman is very aware of Crypto Twitter which drives the market.<br><br>Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues).<br><br>To the extent that answers would be rendered incomplete by the objections, Defendants ask that the answers not be cut in a way that leads to a misleading answer. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 25  this contract also kind of became an element of the<br>1  overall project which was a reservation system.  So<br>2  someone could go to this website RR/BAYC.com and they<br>3  could reserve the ape that they want. They could say I<br>4  want this picture, I want this token.  So the contract<br>5  would handle that.<br>6        And then beyond that, there was this idea to<br>7  create a marketplace, which was called something<br>8  different, called ape market.  But that was going to be<br>9  kind of an outgrowth of the RR/BAYC NFT and the<br>10  reservation contract and everything. So I consider that<br>11  part of the project as well.  And the idea behind that<br>12  website was to let people and -- you know, the idea<br>13  shifted a lot for what that was going to be, and I don't<br>14  think we had a concrete idea exactly of what it was<br>15  going to.<br>16        But one common theme was essentially lower or<br>17  no fees from a greater fee standpoint. And the other<br>18  common them I would say is that if you owned an RR/BAYC<br>19  token, of that ERC-721 NFT, that would give you some<br>20  benefit as related to the website, but it didn't launch.<br>21  Q.     So you mentioned that Mr. | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| Ripps was trying to<br>22  make a point.  Do you recall that?<br>23            MS. CULP:  Objection.  Calls for<br>24        speculation.<br>25  A.      Yeah.  I mean, I would say that -- well, again,<br>1  it's hard for me to -- what I took from when I first saw<br>2  it was that a point of the art thing, the project, was<br>3  that -- yeah, kind of what I just said, if you really<br>4  believe in NFTs, you should not have a -- because let<br>5  me --<br>6        Taking a step back here, there was a meme<br>7  within the NFT community called Right-Click, Save.<br>8  There was even a very famous piece of art created by<br>9  this called Right-Click, Save guy, by an artist called<br>10  XCOPY.  So this was like a meme criticism by normal<br>11  people, where they'd say, Why are you going to pay a<br>12  million dollars for that, a thousand dollars for that,<br>13  $10 for that?  I can just get the same image by copying<br>14  it to my local computer.<br>15        So this was something where all of NFT Twitter<br>16  united against the common enemy and said, no, no.  You<br>17  don't get it.  Right-Click, Save does not capture what<br>18  the point of this whole thing is.  So when I was looking | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 19  at this, I saw it in the context of that and said, if<br>20  you're arguing against the Right-Click, Save approach,<br>21  this is kind of a logical next step, and that's what I<br>22  took the -- initially when I first saw it, that's what I<br>23  took the point of it to be, and I thought it was sort of<br>24  interesting.<br>25  Q.     Let me try to break this down a little bit.<br> 1  You referred to a meme that was part of NFT Twitter<br> 2  called Right-Click, Save, right?<br> 3  A.     Yes.<br> 4  Q.     Right-Click, Save was the idea that if you have<br> 5  an NFT for an image, you can Right-Click and Save As and<br> 6  essentially take possession of that image; is that<br> 7  accurate?<br> 8  A.     Get the image for free without buying the NFT.<br> 9  Q.     And there's a counterargument to that<br>10  Right-Click, Save concept; is that fair?<br>11  A.     Yes.<br>12  Q.     Just in a few words, what is the<br>13  counterargument that proponents of NFTs make?<br>14             MS. CULP:  Objection. Calls for<br>15         speculation.<br>16  A.     So this kind of gets to the whole idea of NFTs<br>17  which is to say that if there is some agreed on way of<br>18  associating the image with the token, | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| which is -- there<br>19  are other standards.  It's not part of the core<br>20  standard, but there are other ways of doing that and<br>21  people believe in that way of drawing that line.  Then<br>22  the owner of the NFT will always have something that the<br>23  Right-Click, Save person doesn't have, which is to say,<br>24  this smart contract says this thing and people who use<br>25  explorers, like Etherscan, block explorers can see where<br>1  it came from, who minted it, you know, the chain of<br>2  ownership.<br>3        So you are getting something much richer and<br>4  the ability to also transfer this thing. You know, this<br>5  is kind of -- now some people might say, well, who cares<br>6  about that.  And then I would say, well, that's fair<br>7  enough.  A lot of people would consider art to be dumb<br>8  no matter what.  What's the difference between, you<br>9  know, the Mona Lisa and a perfect copy of the Mona Lisa?<br>10 You know, like, they look exactly the same.  Why not<br>11 just buy copies of famous paintings? Why buy the<br>12 original painting?  And many people would say, well, I<br>13 would never buy a painting or a copy, so fine.<br>14       But the reason that the original is | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| more<br>15  valuable than the copy is not just because it looks a<br>16  tiny bit better, which it probably doesn't.  It's<br>17  because of this whole backstory and -- it's the one<br>18  thing.  So maybe not the best explanation, but the idea<br>19  is if you believe that this row at the table can mean<br>20  something, then you can know that no one can ever<br>21  duplicate that, and the row in the table can mean a<br>22  bunch of different things.<br>23  Q.     So is it fair to say that the Ryder Ripps Bored<br>24  Ape Yacht Club was an extension of this discussion<br>25  relating to the Right-Click, Save As concept?<br>1 MS. CULP: Objection. Calls for<br>2 speculation. Misstates testimony. | | |
| 44:3–44:14<br>3 A.     That's how I -- when I initially saw it -- in<br>4  the initial thing, before I was involved in any way,<br>5  that's was my interpretation of it basically that it was<br>6  a -- you know, yeah, it was, if you don't -- I think one<br>7  of my friends at the time who was tweeting about it, he<br>8  said, well, if you don't care about Right-Click, Save,<br>9  what's the difference between Right-Click, Save and<br>10  Right-Click, mint.  You know, and I thought that was a<br>11  thing, a good question.  I don't know if even the<br>12  Right-Click, Save thing was going on in the minds of any | FRE 401-403; 602; 701-702<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic or critical intent is not relevant to this case and causes undue delay. Mr. Lehman lacks personal knowledge as to | The designated deposition testimony is relevant to disgorgement and would not cause undue delay, because it explains the specific NFT collection found to infringe, and the purpose and impact of that collection in the NFT market, which is relevant to disgorgement.  It is also relevant to |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 13  of the people involved.  That was just kind of what I<br>14  remember thinking when I saw the project initially. | why Mr. Ripps created the infringing NFT collection. Testimony is based on technical or specialized knowledge on NFTs, and witness is not qualified as an expert. | Defendants' intent (which is relevant to disgorgement).<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness, which is partially explained in the witness's ability to give an answer. Mr. Lehman is very aware of Crypto Twitter which drives the market.<br><br>Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | abandoned all legal remedies and jury issues). |
| | | None of the testimony is based on specialized knowledge, but rather is based on general knowledge of existing criticisms of NFTs. |
| 46:12-17; 46:25-49:22<br>12  Q.    And you said that your perception of the Ryder<br>13  Ripps Bored Ape Yacht Club was that it was part of this<br>14  discussion on the nature of NFTs.  Do you remember that?<br>15            MS. CULP:  Objection.  Misstates<br>16        testimony.<br>17  A.    Yes.<br>25  Q.    What was your role in Ryder Ripps Bored Ape<br>1  Yacht Club?<br>2  A.    So I was bought on to help with first the<br>3  development of a better way of preserving and minting<br>4  and selling these tokens, and then also there is the<br>5  understanding that we going to do something with a<br>6  marketplace after that.<br>7  Q.    And why did you choose to be part of Ryder<br>8  Ripps Bored Ape Yacht Club?<br>9  A.    I thought it was an interesting project.  I | 46:12–23<br>FRE 401-404<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as an artist or his purported artistic or critical intent is not relevant to this case and causes undue delay.  Further, the Court has already found that Defendants' intentionally infringed upon Yuga Labs' marks, so Defendants' intent is already decided and Therefore testimony on the issue is irrelevant. This testimony would confuse the issues and waste time. | The designated deposition testimony is relevant to disgorgement and would not cause undue delay, because it explains the specific NFT collection found to infringe, and the purpose and impact of that collection in the NFT market, which is relevant to disgorgement.  It is also relevant to Defendants' intent (which is relevant to disgorgement).<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 10 thought that it could be a way for me to make some<br>11 money, because I was going to be paid on a percentage<br>12 basis. I thought it'd be cool to build the technology,<br>13 that was under discussion. The more concrete first<br>14 thing we were doing, the reservation system hadn't<br>15 really been done before, and then I thought it would be<br>16 interesting to work with the team and in particular Ryan<br>17 because I had not really done any programming with<br>18 anyone else in the Web3 community, so I thought it would<br>19 be interesting to sort of see what that was like.<br>20 Q.     Did the Ryder Ripps Bored Ape Yacht Club have a<br>21 criticism element to it?<br>22              MS. CULP: Objection. Calls for<br>23        speculation. Vague.<br>24 A.     I -- well, so in the beginning there was a the<br>25 criticism, as I saw it, speaking from my own experience,<br>1 the criticism of like people who were upset by the<br>2 Right-Click, Save thing, as we discussed. I thought it<br>3 was a criticism of that. I think it also, you know --<br>4 once we were about putting up the website, you know, it<br>5 became clear -- and Ryder wanted it connected to the<br>6 previous things, criticisms he had | 47:20–25<br>FRE 401-403; 602;<br><br>This is subject to Yuga Labs' Motion *In Limine* No. 1 because issues of Inflammatory Material are not relevant to this case and causes undue delay. This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic or critical intent is not relevant to this case and causes undue delay. This testimony would confuse the issues and waste time. Mr. Lehman lacks personal knowledge of Mr. Ripps' intent in creating the infringing NFT collection.<br><br>48:1–49:22<br>FRE 401-403; 602; 801-802; | remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness, which is partially explained in the witness's ability to give an answer. Mr. Lehman is very aware of Crypto Twitter which drives the market.<br><br>Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues).<br><br>None of the testimony is based on specialized knowledge, but rather is based on general knowledge of existing criticisms of NFTs. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| about Yuga Labs Labs<br>7 and the Bored Ape Yacht Club and so we linked the<br>8 RR/BAYC artist statement linked to the -- his website<br>9 gordongoner.com and from there there was sort of a<br>10 connection where I believe the OpenSea page also<br>11 featured a link, so it kind of became part of that as<br>12 well.<br>13 Q.     You mentioned Mr. Ripps had other criticisms of<br>14 Yuga Labs outside of the Right-Click, Save As concept;<br>15 do you recall that?<br>16         MS. CULP:  Objection. Calls for<br>17     speculation.<br>18 A.     I think Ryder was sort of the towards the end<br>19 of 2021 when I was less engaged and the beginning of<br>20 2022 when I was more engaged with like NFT Twitter,<br>21 Ryder was sort of a very outspoken and kind of the main<br>22 person saying a line of criticism which was basically<br>23 that the Bored Ape Yacht Club had sort of basically<br>24 hidden messages in it in a way like what you might call<br>25 a dog whistle, and so he was basically saying that these<br>1 drawings aren't what they might look like on the<br>2 surface.  If you look closer you can see they contain<br>3 these hidden elements, and he also had | This is subject to Yuga Labs' Motion *In Limine* No. 1 because issues of Inflammatory Material are not relevant to this case and causes undue delay. Further testimony about "hidden messages" in Yuga Labs' NFTs is highly prejudicial and of no probative value. Mr. Lehman lacks personal knowledge of Mr. Ripps' intent in creating the infringing NFT collection. Mr. Lehman's testimony as to what Mr. Ripps has previously said about Yuga Labs is inadmissible hearsay for which no exception applies. | There is no FRE 404 propensity inference drawn as this discusses what Mr. Lehman's actions were in making the RR/BAYC NFTs.<br><br>To the extent this is covered by MIL 1 it is especially relevant to issues of disgorgement, intent, and alternative explanations for sales of RR/BAYC NFTs unrelated to confusion.  The probative value of this evidence outweighs any prejudice because this is evidence directly pertains to the reasons behind the RR/BAYC project and the reasons for sales of RR/BAYC NFTs.<br><br>To the extent that the objections would lead to a misleading testimony that does not capture the entire statement, the entire statement should be admitted for clarity. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| some criticisms<br> 4  of Yuga Labs broadly in terms of where the name Yuga<br> 5  Labs came from.  So those were some of the things I<br> 6  recall him saying.<br> 7  Q.      And you mentioned in a prior answer this<br> 8  website gordongoner.com.  Are you familiar with that?<br> 9  A.      Yes.  I am, yes.<br>10  Q.      What is gordongoner.com?<br>11              MS. CULP:  Objection.  Calls for<br>12          speculation.<br>13  A.      So Gordon Goner, is, I believe, one of the<br>14  online monikers of one of the founders, I think it's<br>15  Wylie -- I'm not super familiar with all of the details<br>16  here, but one of the founders of Yuga Labs and so that's<br>17  the dot com, and basically the site itself had a bunch<br>18  of, you know, contents sort of in support of his<br>19  criticisms or, you know, in support of what he was<br>20  trying to argue against Yuga Labs about.<br>21  Q.      And how if at all was the gordongoner.com<br>22  website related to the Ryder Ripps Bored Ape Yacht Club?<br>23  MS. CULP: Objection. Calls for speculation. Vague. Overbroad. Lacks foundation. | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 50:1-52:25; 53:24–54:17 <br> 1 A.     So speaking from my memory of the situation, I <br> 2 don't recall it being a major part when I first got <br> 3 involved, I don't think.  I don't remember that being a <br> 4 big source of discussion for what the project was going <br> 5 to be about, but then kind of as I mentioned, I think it <br> 6 evolved, and once the idea was -- because we didn't know <br> 7 really in the beginning what form exactly would be -- <br> 8 you know, what exactly this website would look like, <br> 9 because Ryder's initial method was very primitive in a <br> 10 way.  It was just Twitter, you tell me this, I do this <br> 11 thing, it's just very manual. <br> 12       So we were like we want to do something, but <br> 13 there was this whole big scope of what we could have <br> 14 done.  Before we ended up deciding on, what I ended up <br> 15 building, was this standalone site that had this whole <br> 16 array of display of the images and so forth, and so <br> 17 Ryder wanted to do artistic statement at the top, and <br> 18 that was, I believe, when the Gordon Goner side of <br> 19 things kind of took greater prominence in the thing <br> 20 because that was where Ryder linked to it, and you know, <br> 21 it was kind of a bigger thing, as I recall.  I wasn't so <br> 22 close to the project before that. <br> 23 Q.     So who designed the RR/BAYC.com website? <br> 24             MS. CULP:  Objection. Vague. <br> 25 A.     So it was, you know, small teams, so it was <br> 1 programmed by me and Ryan, and so we had some ideas for <br> 2 what we thought might be effective in | 50:1–22 <br> FRE 401-403; 602; 801-802 <br><br> This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as an artist or his purported artistic or critical intent is not relevant to this case and causes undue delay. This testimony would confuse the issues and waste time. Mr. Lehman lacks personal knowledge of Mr. Ripps' intent in creating the infringing NFT collection or website. Mr. Lehman's testimony about previous discussions is inadmissible hearsay for which no exception applies. <br><br> 52:5–53:25 <br> FRE 401-403; 602 <br><br> This is subject to Yuga Labs' Motion *In Limine* No. 1 because issues | The designated deposition testimony is relevant to disgorgement and would not cause undue delay, because it explains the specific NFT collection found to infringe, and the purpose and impact of that collection in the NFT market, which is relevant to disgorgement.  It is also relevant to Defendants' intent (which is relevant to disgorgement). The designated testimony also relates to alternative explanations for sales of RR/BAYC NFTs unrelated to confusion. <br><br> There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| thinking about<br>3  like performance in showing a bunch of things and how we<br>4  want the UI to look, but Ryder was the final say.  So<br>5  either he came up with ideas or he approved our ideas or<br>6  he told us what to change about our ideas, but he was<br>7  the creative lead on the thing.  He had the final say.<br>8  Q.      Now I think we discussed earlier that the<br>9  RR/BAYC NFTs were connected to certain digital images;<br>10  is that correct?<br>11  A.      Correct, yes.<br>12  Q.      What digital images did the RR/BAYC NFTs link<br>13  to?<br>14  A.      So there is a standard, beyond ERC-721, called<br>15  the ERC-721 metadata, which is an optional standard but<br>16  almost everyone uses it, and what that requires that you<br>17  do is, you expose a function that your computer program,<br>18  smart contract does, which is called, token. URI, and<br>19  URI is just a fancy way of saying URL.  And so what that<br>20  function spits back out, you type in a number like 5, ID<br>21  5, it spits back a URL that says go to this URL and find<br>22  the metadata for this token.  And so when you go to the<br>23  URL, find the metadata, that metadata is typically a<br>24  JSON file, like just a text file and within that<br>25  metadata is another URL that links to an image, and for<br>1  the Ryder project, when you went through those steps,<br>2  you would see at the very end the final URL, which was<br>3  the image.  That would be an image of a Bored Ape Yacht<br>4  Club ape.<br>5  Q.      And why did the RR/BAYC | of Inflammatory Material<br>are not relevant to this case and cause undue delay. This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic or critical intent is not relevant to this case and causes undue delay. This testimony would confuse the issues and waste time. Further, testimony that Yuga Labs' logo purportedly resembles an SS logo is highly prejudicial and of no probative value.<br>Mr. Lehman lacks personal knowledge of Mr. Ripps' intent in creating the infringing NFT collection or website. | prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness, which is partially explained in the witness's ability to give an answer. Mr. Lehman is very aware of Crypto Twitter which drives the market.<br><br>Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues).<br><br>None of the testimony is based on specialized knowledge, but rather is based on general knowledge of existing criticisms of NFTs.<br><br>There is no FRE 404 propensity inference drawn as this discusses what |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| NFTs include that link?<br>6          MS. CULP:  Objection. Calls for<br>7          speculation.<br>8  A.      So yeah, speaking from my understanding, you<br>9  know that was part of the Right-Click, Save thing,<br>10  certainly.  I think that, you know, you can't -- if you<br>11  modify the image, and you say -- well, the whole point<br>12  is you shouldn't be upset by Right-Click, Save even if<br>13  it's an exact duplicate.<br>14          I think it was also part of the other<br>15  criticism, in that by drawing attention to these images,<br>16  maybe that would help draw attention to the things that<br>17  Ryder was saying were in them that were hidden and bad,<br>18  so I think that was part of it.<br>19          But, my understanding and the reason I got<br>20  there was more for the first part to kind of, you know,<br>21  push this idea and also to some extent troll people<br>22  that, like, it looks the same, but it looks -- but you<br>23  should not be upset by that, if you understand anything<br>24  about NFTs.  I think that was kind of the initial<br>25  impetus for it, as I saw it.<br>24<br><br>9  Q.     And was the Yuga Labs skull logo a subject of<br>10  criticism by Mr. Ripps?<br>11          MS. CULP:  Objection. Calls for<br>12          speculation.  Vague.  Overbroad.<br>13  A.     Yes.  As I recall that was one of the<br>14  significant things that he was saying.  I think it was<br>15  higher up on gordongoner.com, if I remember, I don't<br>16  remember that well.  But yes, I think | | Mr. Lehman's actions were in making the RR/BAYC NFTs.<br><br>Yuga's Motion in Limine No. 1 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues).<br><br>To the extent that the objections would lead to a misleading testimony that does not capture the entire statement, the entire statement should be admitted for clarity. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| that was<br>17  definitely a thing he was talking about. | | |
| 57:15–60:24<br>15  Q.     Do you think the Ryder Ripps Bored Ape Yacht<br>16  Club project was successful in bringing attention to<br>17  these problematic images?<br>18              MS. CULP:  Objection. Lacks<br>19       foundation.  Calls for speculation.  Overbroad.<br>20       Vague.<br>21  A.     Yeah, I would say it was successful.  I would<br>22  say that, you know -- I don't know if it was -- it -- I<br>23  would say I don't know if it was successful at achieving<br>24  the specific aims of anyone involved in terms of it just<br>25  grew especially around the time of NFT NYC and the<br> 1  lawsuit.  And when it sort of sold out, there was a<br> 2  tremendous amount of online craziness about this, people<br> 3  talking about it from different perspectives.  It was a<br> 4  very frenetic online time.<br> 5       So in terms of the message everyone took home<br> 6  from it, I can't say, but I think people were paying<br> 7  attention to the project and to Ryder. | 57:15–59:25<br>FRE 401-403; 602<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as an artist or his purported artistic or critical intent is not relevant to this case and causes undue delay. This testimony is likely to confuse the issues and waste time. Mr. Lehman lacks personal knowledge about how consumers perceived the infringing collection or whether it was successful in achieving its purported goals.<br><br>60:1–60:24<br>FRE 401-403; | The designated deposition testimony is relevant to disgorgement and would not cause undue delay, because it explains the specific NFT collection found to infringe, and the purpose and impact of that collection in the NFT market, which is relevant to disgorgement.  It is also relevant to Defendants' intent (which is relevant to disgorgement). The designated testimony also relates to alternative explanations for sales of RR/BAYC NFTs unrelated to confusion.<br><br>There is no undue prejudice or undue delay that could result from this testimony |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 8  Q.      Now you mentioned RR/BAYC.com had an artist 9  statement? 10  A.      It did. 11  Q.      Who wrote the artist statement? 12  A.      Ryder. 13  Q.      Did RR/BAYC.com do anything to differentiate 14  the RR/BAYC project from Yuga Labs BAYCs? 15              MS. CULP:  Objection.  Calls for 16          speculation.  Vague. 17  A.      Yes, I think it did.  I think the artist 18  statement itself was a, you know, big kind of something 19  that Ryan and I were sort of critical of Ryder at the 20  time.  Sort of saying like from a web usability 21  standpoint, you don't want to have a big wall of text 22  that's small in front of the user when they show up. 23  So, you know, get people to read it.  If they read it, 24  they understood something.  But even just seeing this 25  big wall of text, you know, it's kind of like, okay, 1  what is this website? 2          And then, you know, the website sold only one 3  thing out of everything and it had a very peculiar 4  system, where typically with NFT mints you don't reserve 5  the one you want.  And that's not a good strategy if 6  you're trying to sell these things | 602; 801-802  This is subject to Yuga Labs' Motion *In Limine* No. 1 because issues of Inflammatory Material are not relevant to this case and cause undue delay. This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic or critical intent is not relevant to this case and causes undue delay. Whether the disclaimer made the website less user friendly is irrelevant to the issues in this case. This testimony is likely to waste time and confuse the issues. Mr. Lehman lacks personal knowledge of why Mr. Ripps chose to include the disclaimer. Mr. Lehman's testimony about Mr. Ripps' past | (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.  The question asks for information that is within the personal knowledge of the witness, which is partially explained in the witness's ability to give an answer. Mr. Lehman is very aware of Crypto Twitter which drives the market and the RRBAYC project of which he was a founding member.  Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues).  None of the testimony is based |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| because people will<br>7  just reserve the best ones.  They all cost the same<br>8  price.<br>9        So it had this weird element.  You could<br>10  reserve it and have your thing canceled, which is also a<br>11  weird element.  You could reserve it and someone else<br>12  reserve it first.  So there was something pretty weird<br>13  about this.  It was the first time I think anyone has<br>14  ever done this.  I was happy about participating in<br>15  that.  So it had this weirdness.<br>16        And then of course there was this disclaimer,<br>17  where if you selected an ape, you had to check a box<br>18  before it would let you reserve it.  And the box<br>19  basically said you, you know, you got to understand this<br>20  is like reusing the imagery in some way.  So I think the<br>21  overall effect of the site, as I, you know, tried to<br>22  design it and work on it and as I thought of the effect<br>23  that it had, was that it was, you know, distinguished<br>24  from the other type of NFTs with the same imagery.<br>25 Q.      Okay.  I appreciate the detail.  I want going<br>1  to break that down just a little bit.  So one of the<br>2  things that you mentioned was that you and Ryan made | statements on the disclaimer is inadmissible hearsay for which no exception applies. | on specialized knowledge, but rather is based on general knowledge of existing criticisms of NFTs.<br><br>There is no FRE 404 propensity inference drawn as this discusses what Mr. Lehman's actions were in making the RR/BAYC NFTs.<br><br>Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues)<br><br>To the extent that the objections would lead to a misleading testimony that does not capture the entire statement, the entire statement should be admitted for clarity. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 3  some suggestions from a web usability standpoint; is<br>4  that fair?<br>5  A.    Yes.<br>6  Q.    Because that was your role on the project was<br>7  to make this website useable; is that fair?<br>8  A.    Correct.<br>9  Q.    So from a web usability standpoint, you and<br>10  Mr. Hickman felt that the artist statement actually made<br>11  the website less user friendly; is that fair?<br>12  A.    Yeah.  Most the time you go to a website, you<br>13  don't see -- especially a mobile, you really have to<br>14  scroll.  So it was a very atypical and ill advised from<br>15  a pure usability standpoint way to set up a website.<br>16  Q.    But why was it ultimately included -- strike<br>17  that.<br>18        Why was the artist statement ultimately<br>19  included, if it had a negative impact on usability?<br>20              MS. CULP:  Objection.  Calls for<br>21        speculation.<br>22  A.    I don't know if it ended up having a negative<br>23  impact.  It had that risk as I saw.  But to answer your<br>24  question, Ryder wanted it and so he had the final call. | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 72:22–72:23<br>10      You were engaged with NFT Twitter while you<br>11  were working on the RR/BAYC project, correct?<br>12 A.      Correct.<br>13            MS. CULP:  Objection. Vague.<br>14 Q.      Did you have discussions with people on an NFT<br>15  Twitter about RR/BAYC?<br>16            MS. CULP:  Objection. Vague and<br>17            overbroad.<br>18 A.      I probably did, but I'm just not like super<br>19  active generally, so I was probably like looking at<br>20  stuff, and I probably did some Twitter spaces too, which<br>21  I like more where you're just talking, but, yeah.<br>22 Q.      Do you have a sense for what the response from<br>23  NFT Twitter was to the RR/BAYC project?<br>24 MS. CULP: Objection. Calls for<br>25 speculation. Vague. Overbroad.<br><br>73:1–73:16<br> 1 A.      First of all, there was just a lot, like there<br> 2  was a lot of people talking about it when it first<br> 3  launched.  Like the couple of days that first launch, a<br> 4  lot of people reserved stuff, a lot of people talked<br> 5  about it.  I think that, you know, there | FRE 401-403; 602; 701-702; 801-802<br><br>This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic or critical intent is not relevant to this case and causes undue delay. Mr. Lehman lacks personal knowledge of how individual twitter users responded to Defendants' infringing NFT collection, the question therefore calls for speculation. Testimony about how a group of Twitter users has reacted to events over time is based on technical or specialized knowledge, and witness is not qualified as an expert. Testimony about what unnamed Twitter users said or did in response to Defendants' | The designated deposition testimony is relevant and would not result in undue delay because it gives context to NFT-Twitter evidence on which Yuga's witnesses rely as part of Yuga's allegation of RR/BAYC sales associated with confusion, and pertains to the witness's knowledge about NFTs and the NFT world. It is also relevant to Mr. Lehman's actions with Ripps and Cahen.<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>Testimony about how NFTs work is |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| was a mix.<br>6      Like I think people thought it was cool, but<br>7  also, you know, a lot of people don't like Ryder, so I<br>8  think that Ryder also received a lot of criticism for<br>9  it.  You know, I think, yeah, it was like a very --<br>10  there was a lot of conversation around it.<br>11 Q.     So there was a lot of conversation around the<br>12  Ryder Ripps Bored Ape Yacht Club project, correct?<br>13          MS. CULP:  Same objections.<br>14 A.     Correct.  Well I was specifically talking about<br>15  around launch and also previous we talked about around<br>16  NFT NYC.  Those were the biggest times, but yes. | infringing NFT collection is inadmissible hearsay for which no exception applies. | not based on specialized knowledge, and is within Mr. Lehman's personal knowledge.<br><br>Defendants re-argue their opposition to MIL 2. Issues surrounding Mr. Ripps' motivation is directly relevant to disgorgement, the amount of sales arising from confusion, and intent.<br><br>The reaction of the market is directly relevant to sales unrelated to confusion as well. |
| 80:22–80:25<br>22 Q.     At the time that the RR/BAYC project was first<br>23  created using the Foundation contract, could you buy a<br>24  Yuga Labs BAYC NFT on Foundation?<br>25          MS. CULP:  Objection.  Calls for<br>1 speculation<br><br>81:2–81:4<br>2 A.     To my knowledge, I don't think you could ever | FRE 401-403; 602<br><br>The Court has already found that Defendants' infringing NFTs created a likelihood of confusion, therefore this testimony is irrelevant to the issues remaining in dispute. This testimony would | The designated deposition testimony is relevant because it pertains to the markets on which the RR/BAYC NFTs and BAYC NFTs were sold, which goes to Yuga's claim to disgorgement (sales unrelated to confusion). |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 3  buy a Yuga Labs NFT.  What I recall I think more<br>4  narrowly at that time, no, I don't think you could. | confuse the issues and waste time. Mr. Lehman lacks personal knowledge of every NFT listed on the Foundation website. | There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>Testimony about how NFTs work and the NFT market is within Mr. Lehman's personal knowledge as a software developer. Yuga's view of personal knowledge is unrealistic and does not comport with the real world. Using its standard, its own witnesses cannot testify on matters pertaining to Yuga because they do not know every single thing about the company. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 89:4–89:12<br>6 Q.     Using Etherscan, it is possible to<br>7 differentiate between Ryder Ripps Bored Ape Yacht Club<br>8 NFTs and Yuga Labs Bored Ape Yacht Club NFTs, correct?<br>9             MS. CULP:  Objection. Calls for<br>10         speculation.  Vague.  Overbroad. Incomplete<br>11         hypothetical.<br>12 A.     Correct. | FRE 401-403; 602<br><br>The Court has already found a likelihood of confusion, so testimony about whether a hypothetical third-party could differentiate between NFTs on Etherscan is irrelevant to the issues that remain in dispute and would confuse the issues. Mr. Lehman lacks personal knowledge about how hypothetical third-parties would perceive information on the Etherscan website. | The designated deposition testimony is relevant because it pertains to the witness's knowledge about NFTs, and the NFT world. It is also relevant to Mr. Lehman's actions with Ripps and Cahen.<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>How Etherscan operates is well within the lay knowledge of Mr. Lehman and anybody who uses NFTs. He can answer generally if it is possible to read Etherscan and tell the difference between RR/BAYC and |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | BAYC. |
| 90:1–90:24<br>1 Q.    Has Yuga Labs been the subject of criticism?<br>2        MS. CULP:  Objection, overbroad.<br>3        Vague.<br>4 A.    Yes, I would say so.<br>5 Q.    What criticisms are you aware of?<br>6 A.    So, I mean, there is the whole controversy<br>7 surrounding the Bored Ape Yacht Club and so forth that's<br>8 been discussed that's been partially and, of course,<br>9 Ryder is very outspoken and other people have said that<br>10 stuff too.<br>11        You know, I mean, I think the -- I think they<br>12 have also received some, you know, criticism around<br>13 their new you know, strategy of being a gaming company.<br>14 Are they going to be able to do a good job for this. | FRE 401-404; 602; 701-702<br><br>This is subject to Yuga Labs' Motion *In Limine* No. 1 because issues of Inflammatory Material are not relevant to this case and cause undue delay. This is the subject of Yuga Labs' Motion *In Limine* No. 2 because Mr. Ripps' status as a claimed artist or his purported artistic or critical intent is not relevant to this case and causes undue delay. Mr. Lehman's testimony about the propriety of Yuga Labs' business model | The designated testimony relates to intent and alternate explanations for sales of RR/BAYC NFTs unrelated to confusion—specifically sales that were made due to consumers wanting to protest against Yuga's problematic imagery.<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 15      Do they have to, you know, keep providing more<br>16  NFTs for their existing holders to make it worthwhile to<br>17  keep going.  I think it's also perceived by some to be<br>18  somewhat of an elitist thing.  There was a famous meme<br>19  where someone tweeted that unless you have a $100,000<br>20  profile picture, I don't want to talk to you.<br>21      And I think people associate that sometimes<br>22  with the Yuga community.  But they are also the biggest<br>23  player in the space, so they draw a ton of criticism.<br>24  It's hard to catalog it all. | and instances of criticism of Yuga Labs is speculative. Mr. Lehman's opinion testimony about why Yuga Labs would be criticized is not helpful or relevant to any issue. | prejudice.<br><br>Testimony about slang commonly used by a community of which Mr. Lehman is a member is not specialized knowledge.<br><br>Defendants re-argue their opposition to Yuga MIL 2. To the extent that this is covered by that MIL, the intent behind the project is relevant because it goes to the availability of disgorgement as a remedy. |
| 91:21–91:24<br>21 Q.     Now, Yuga filed a lawsuit against you, correct?<br>22  A.     Yes.<br>23  Q.     What was the nature of that lawsuit?<br>24          MS. CULP:  Objection. Calls for a<br>25 legal conclusion. Overbroad. | No objection | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 92:1–92:25 | FRE 401-403; 602 | |



The testimony about his own

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ██████████████████ | | beliefs about Yuga and others' perceptions of Yuga is not speculative because they are either his own opinions or his perceptions of statements others have made about his work. |

93:3–93:19

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |
| | No objection | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ███████████████ | | |
| ███████ | No objection | |
| ░░██████████ | | |
| ░░██████████ | | |
| ░░░██████ | | |
| ░██████████ | | |
| ░░██████ | | |
| ░░███████████ | | |
| ░░█████████ | | |
| ░░██████ | | |
| ░░███████████ | | |
| ░░█████ | | |
| ░░░███████ | | |
| ░░████ | | |
| ░░██████████ | | |
| ░░░███████ | | |
| ░██████ | | |
| ░██████████ | | |
| ░░████████ | | |
| ░░░██████ | | |
| ░░██████████ | | |
| ░░████ | | |
| ░░██████████ | | |
| ░░░████████ | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | FRE 401-403; 602 | |



The testimony about his own beliefs about Yuga and others' perceptions of Yuga is not

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
|  | speculative. | |
| | FRE 401-403 | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████████████████ | | ████████████ |
| ████ | | |
| ████████████ *to lines 116:21-116:25, 117:3-117:15* | No Objection | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |
| ████████████████ | | |



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | FRE 401-403 | |
| 1 MS. CULP: Objection.  Misstates<br>2 testimony. | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |
| | FRE 401-403 | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | ███████ |
| ███████ *to 117:3-117:15, 118:2-118:15* | No Objection | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | FRE 401-403 | |



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | █████ |
| | | |
| | | |
| | | |
| | | |
| | | |
| █████ *to 118:2-118:15* | No Objection | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| █████ | FRE 401-403 | █████ |
| | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | FRE 401-403<br><br>The chronology of and motivations behind Mr. Lehman's settlement and the drafting of his declaration are irrelevant.<br><br><br>would confuse the issues. | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | ■■■ |
| *123:25–124:9 [Plaintiff's Counter-Designation to Defendants' designations at lines 96:3-96:20, 97:15-98:8, 108:14-109:20, 115:10-116:6, 116:21-116:25, 117:3-117:15, 118:2-118:15, 120:16-120:18, 123:5-123:24, 124:10-124:13, 126:11-126:15, 126:20-127:3, 127:15-128:2, 164:14-165:12, 246:13-247:25, 248:3-249:24, 251:23-252:7]* | No Objection | |
| | No objection | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |
| _124:14–125:9 [Plaintiff's Counter-Designation to Defendants' designations at lines 96:3-96:20, 97:15-98:8, 108:14-109:20, 115:10-116:6, 116:21-116:25, 117:3-117:15, 118:2-118:15, 120:16-120:18, 123:5-123:24, 124:10-124:13, 126:11-126:15, 126:20-127:3, 127:15-128:2, 164:14-165:12, 246:13-247:25, 248:3-249:24, 251:23-252:7]_ | No Objection | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |
| | FRE 401-403 | |



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |
| | FRE 401-403 | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |
| ██████████ | 127:15–128:2 FRE 401-403; 602 | ██████████ |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | The question asks for information that is within the personal knowledge of the witness. |
| 132:9–133:15<br> 9  Q.     When you first joined the project, RR/BAYC.com<br>10  and the RSVP project were a separate contract from<br>11  ApeMarket.com, correct?<br>12            MS. CULP:  Objection. Lacks<br>13        foundation.<br>14  A.     Correct.<br>15  Q.     Ape Market only became an idea later on,<br>16  correct?<br>17            MS. CULP:  Objection. Lacks<br>18        foundation, misstates testimony.<br>19  A.     Yeah, after the project found some success and<br>20  we were thinking about ways in which | FRE 401-403<br><br>The Court has already found that Defendants used Yuga Labs' BAYC trademarks in commerce and also found a likelihood of confusion so this testimony is not relevant to any issue that remains in dispute. The testimony would confuse the issues and waste time. | The testimony is relevant to disgorgement and intent associated with ApeMarket and "apemarket.com."<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| we would take this<br>21  vague notion of doing a marketplace and making it<br>22  something real, the idea was to kind of tie it with<br>23  RR/BAYC and make it a broader project.  But when we were<br>24  just working or the website and contract for RR/BAYC,<br>25  Ape Market was a kind of a vague idea of something we<br> 1  wanted to do but really didn't know what it would be or | | prejudice. |
| 142:9–142:17<br>9  Q.     The ApeMarket.com marketplace never existed,<br>10  correct?<br>11             MS. CULP:  Objection. Asked and<br>12             answered.<br>13  A.     Correct.<br>14  Q.     You never made a penny from ApeMarket.com,<br>15  correct?<br>16             MS. CULP:  Objection lacks foundation.<br> 17  A.     Correct. | FRE 401-403<br><br>The Court has already found that Defendants used Yuga Labs' BAYC trademarks in commerce and found a likelihood of confusion so this testimony is not relevant to any issues that remain in dispute. The testimony would confuse the issues and waste time. | The testimony is relevant to disgorgement and intent associated with ApeMarket and "apemarket.com." The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC project, which is relevant to several outstanding issues.   .<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | testimony's probative value outweighs any prejudice. |
| 146:18–147:13<br>18 Q.     Paragraph 7 of Exhibit 1.  You say Ripps<br>19  oversaw the business venture in part by providing<br>20  guidance and input on the design of the website.<br>21        Do you see that?<br>22 A.     Yep.<br>23 Q.     And I think we talked about this a little bit<br>24  earlier today, right?<br>25 A.     Yes.<br>1 Q.     One of the things that Mr. Ripps did was he<br>2  directed the artistic statement to appear on<br>3  RR/BAYC.com, correct?<br>4 A.     Correct.<br>5 Q.     You discussed the disclaimer that appeared on<br>6  RR/BAYC.com?<br>7 A.     Yep.<br>8 Q.     Mr. Ripps directed you to include the<br>9  disclaimer?<br>10 A.     Yep.<br>11 Q.     And you said Mr. Ripps drafted the artistic<br>12  statement?<br>13 A.     Yep. | 147:1–13<br>FRE 401-403;<br>801-802<br><br>This testimony is subject to Yuga Labs' *Motion In Limine* No. 2 because Mr. Ripps purported artistic or critical intent is not relevant to this case and causes undue delay. Testimony about what Mr. Ripps told Mr. Lehman to do is inadmissible hearsay for which no exception applies. | The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC Project, which is relevant to disgorgement. The testimony is also relevant to scope of confusion, because it addresses the disclaimer presented to customers in connection with sales of the RR/BAYC NFTs (which goes to sales of RR/BAYC NFTs unrelated to confusion). There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | jury issues). The testimony's probative value outweighs any prejudice. |
| | | This deposition testimony is not covered by Yuga's MIL No. 2, which deals with the artistic intent behind the RR/BAYC collection. The breadth of Yuga's MILs cannot be read to cover all possible pieces of evidence that do not even cover the issues implicated by the MIL. |
| | | Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues). |
| | | This is not hearsay as the evidence is not being offered for the truth of the |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | matter asserted. |
| 157:22–158:2<br>22 Q.    Sure.  When you joined the project, did you<br>23  think that you were doing anything wrong?<br>24 A.    No.<br>25 Q.    You didn't set out to do anything wrong,<br> 1  correct?<br> 2 A.    Correct. | FRE 401-404; 602<br><br>Mr. Lehman's state of mind is not at issue and the Court has already adjudicated that Defendants' trademark infringement was intentional and their use of the BAYC trademarks in the rrbayc.com and apemarket.com domains was in bad faith.  There is no issue for trial related to state of mind of Mr. Lehman, or others, and this testimony will only confuse the issues and waste time. | The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC Project, which is relevant to several outstanding issues including disgorgement and intent.<br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>This is not evidence that is meant to draw an inference that Mr. Lehman |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | has any character trait, nor that he acted in conformity with that character trait. |
| | | The question asks for information that is within the personal knowledge of the witness. |
| | FRE 401-403 | The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC Project, which is relevant to several outstanding issues, including disgorgement. The testimony is also relevant to the intent behind ApeMarket and "apemarket.com." There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice. |
| | The Court has already found a likelihood of confusion so this testimony is irrelevant. Defendants' state of mind is not an issue in dispute anymore given the Court's finding that their infringement was intentional and the cybersquatting was in bad faith. | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ███████████ ███████████ ███████████ ███████████ ███████████ ███████████ ███████████ ███████████ ███████████ ███████████ ███████████ ███████████ ███████████ | | The question asks for information that is within the personal knowledge of the witness. |
| 171:2–171:24<br><br>2 Q.    All right.  Paragraph 15, there's some<br>3  discussion of this statement cutting Yuga to 0.  Do you<br>4  see that?<br>5 A.    Yep.<br>6 Q.    Was cutting Yuga to 0 something that you said<br>7  or that one of the other folks in the discord chat said?<br>8 A.    I think I might have said it actually.  I think<br>9  I said it in the context of a conversation around the<br>10  fee structure of, you know, one idea for Ape Market, and<br>11  so I was saying, so under this, you know, we're cutting<br>12  you to 0 with this?  And I think | FRE 401-404; 602<br><br>This testimony is the subject of Yuga Labs' Motion *In Limine* No. 2 because Defendants' purported artistic or critical intent is not relevant to this case and causes undue delay. Mr. Lehman's testimony about why third-parties purchase NFTs is speculative. | The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC Project, which is relevant to several outstanding issues, including disgorgement. The testimony is also relevant to the intent behind ApeMarket and "apemarket.com." There is no undue prejudice or undue delay that could result from this testimony |

| | Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | Jeremy or someone else | | (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice. |
| 4 | 13  said yes or something like that.  And so I think I might | | |
| 5 | 14  have said that, yeah, as a way of talking about this | | |
| 6 | 15  idea of lowering -- cutting out creator royalties from | | |
| 7 | 16  the marketplace. | | |
| 8 | 17  Q.     So cutting Yuga to 0 is talking about creator | | This is not evidence that is meant to draw an inference that Mr. Lehman has any character trait, nor that he acted in conformity with that character trait. |
| 9 | 18  fees, correct? | | |
| 10 | 19  A.     Yes, I think so, yeah. | | |
| 11 | 20  Q.     Decreasing the creator fees on Ape Market to 0 | | |
| 12 | 21  percent, correct? | | |
| 13 | 22  A.     Correct. | | |
| 14 | 23  Q.     You never actually cut Yuga to 0, correct? | | |
| 15 | 24  A.     Correct. | | The question asks for information that is within the personal knowledge of the witness. |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | The question asks for information that is within the personal knowledge of the witness. |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | This testimony is not subject to MIL No. 2, which seeks to exclude evidence of artistic intent behind the |
| 26 | | | |
| 27 | | | |
| 28 | | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | RR/BAYC collection. Further, if this testimony is subject to MIL No. 2, Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues).

This is not evidence that is meant to draw an inference that Mr. Lehman has any character trait, nor that he acted in conformity with that character trait.

This is not Hearsay as the evidence is not being offered for the truth of the matter asserted. |
| 175:23–179:13

23  Q.     All right.  Paragraph 17, these are quotes that
24  are attributed to you, correct?
25  A.     Yes.
 1  Q.     You state, "I wrote in the team Ape Market
 2  discord, but yes, I guess RR/BAYC is | 176:5–25
FRE 401-403; 602

The Court has already found a likelihood of confusion so this testimony is irrelevant. This | The testimony is relevant and would not cause undue delay because it relates to Defendants' intent and motivation in creating the RR/BAYC |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| a low effort 3  art/scam," correct? 4  A.    Yes. 5  Q.    I want to give you an opportunity to explain 6  what you meant by that. 7  A.    Sure.  So -- well, what I meant by the 8  statement is that it was literally -- it was verifying 9  that it was literally in the discord, and in the discord 10  the context for that is that there was a -- I think 11  there was a different project that had taken over the 12  news item before RR/BAYC was ever number one on OpenSea, 13  there was a different project that was you number one on 14  OpenSea and that was a project which was completely 15  disgusting and depicted -- I won't even get into it. 16  But it was just like a very low effort and not -- just 17  gross project.  And it was number one and it was number 18  one because people -- I don't know.  Who knows why. 19       I was just like why is this thing number one? 20  And I was sort of saying, well, you know, this thing 21  deserves to be number one and RR/BAYC, on the other hand 22  is the low effort art scam just like people say.  So I 23  was being sarcastic here.  I was using | testimony is the subject of Yuga Labs' Motion *In Limine* No. 2 because Defendants' purported artistic or critical intent is not relevant to this case and causes undue delay. Mr. Lehman lacks personal knowledge of why consumers were purchasing RR/BAYC NFTs so this testimony is speculative.  177:1–18 FRE 401-403; 602; 801-802  This testimony is the subject of Yuga Labs' Motion *In Limine* No. 2 because Defendants' purported artistic or critical intent is not relevant to this case and causes undue delay. Mr. Lehman lacks personal knowledge of his business associate's intent in making commentary. Mr. Lehman's | Project, which is relevant to several outstanding issues, including disgorgement. The testimony is also relevant to the intent behind ApeMarket and "apemarket.com." There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.  The question asks for information that is within the personal knowledge of the witness.  This testimony is not subject to MIL No. 2, which seeks to exclude evidence of artistic intent behind the RR/BAYC collection.  Further, if this testimony is subject to MIL No. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| it -- calling it<br>24  a low effort art scan and elevating a different more<br>25  disgusting project to say that I found it funny that<br> 1  this gross project was number one and RR/BAYC was<br> 2  frowned important.<br> 3  Q.    So when you said but yes, I guess RR/BAYC is a<br> 4  low effort art/scam, you were being sarcastic, correct?<br> 5  A.    Yes.<br> 6  Q.    Was sarcasm a common occurrence in the teammate<br> 7  market discord?<br> 8  A.    Yes.<br> 9  Q.    You made sarcastic comments in the teammate<br>10  market discord?<br>11  A.    Yes.<br>12  Q.    Other's made comments that were sarcastic?<br>13  A.    Yes.<br>14  Q.    You understood them to be sarcastic?<br>15  A.    Yes.<br>16  Q.    And in order to understand sarcastic comments<br>17  you often need context, right?<br>18  A.    Yes.<br>19  Q.    All right.  There's another quote in paragraph<br>20  17 that's attributed to you from a Twitter direct<br>21  message to a friend?<br>22  A.    Yes.<br>23  Q.    And it is, "I guess Ryder doing the full on | recollection of his associate's comments is inadmissible hearsay for which no exception applies.<br><br>178:1–179:13<br>FRE 401-404; 602<br><br>The Court has already found a likelihood of confusion so this testimony is irrelevant. This testimony is the subject of Yuga Labs' Motion *In Limine* No. 2 because Defendants' purported artistic or critical intent is not relevant to this case and causes undue delay. Mr. Lehman's testimony as to Mr. Ripps' intent is speculative. | 2, Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues).<br><br>This is not evidence that is meant to draw an inference that Mr. Lehman has any character trait, nor that he acted in conformity with that character trait.<br><br>This is not Hearsay as the evidence is not being offered for the truth of the matter asserted. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 24  scammer LARP, ha ha," right? | | |
| 25  A.      Yes. | | |
| 1  Q.      I'd like to give you an opportunity to explain | | |
| 2  the context for that comment. | | |
| 3  A.      Sure.  So LARP, is another meme.  It stands for | | |
| 4  live action role play, so it's like role playing, and | | |
| 5  this quote comes from a time before I was even involved, | | |
| 6  I believe.  This was from really in the beginning when | | |
| 7  Ryder was first launching and was first coming on my | | |
| 8  scene. | | |
| 9          Basically Ryder had sold some of these things | | |
| 10  and created somewhat of a stir, and then he got, you | | |
| 11  know, I guess it was a DMCA at that point from Yuga or | | |
| 12  some kind of take this down from Yuga thing, and so what | | |
| 13  I was looking at here was the idea that -- basically I | | |
| 14  was saying that if Ryder takes these people's money and | | |
| 15  creates this stir, but then runs away, if he gets | | |
| 16  threatened, and this is kind of also a reference to | | |
| 17  another, you know -- other stuff in the NFT community | | |
| 18  where this is considered to be a scammer thing, like a | | |
| 19  LARP, like a role play of the scammer, which the scammer | | |
| 20  will do something, maybe it's | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| transgressive, maybe the<br>21 scammer receives -- gets results and then the scammer<br>22 disappears, whether it's because of a legal threat or<br>23 something else.<br>24     So what I was saying is if Ryder disappears, he<br>25 will be doing a scammer role play because scammers take<br>1 people's money and then disappear when --<br>2 Q.   Ryder didn't disappear, correct?<br>3 A.   Correct.<br>4 Q.   You didn't mean to imply that Ryder was a<br>5 scammer, correct?<br>6 A.   Correct.<br>7 Q.   So any attempt to construe your statement<br>8 suggesting that you did think that Ryder was a scammer,<br>9 would be incorrect, right?<br>10 A.   Correct. I was staying that if Ryder does<br>11 these things, does X, Y, Z, then I will think of him as<br>12 a scammer LARP, but he did not do those things, so I<br>13 don't consider it that. | | |
| 181:21–182:7<br>21 Q.   All right.  Paragraph 18 talks about some Yuga<br>22 Labs trademarks, right?<br>23 A.   Yep.<br>24 Q.   And you say that the business venture used<br>25 those marks including in the name | 182:3–7<br>FRE 401-403<br><br>The Court has already found that Defendants are liable for false | The testimony is also relevant to the intent behind ApeMarket and "apemarket.com."<br><br>There is no undue prejudice or undue |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| RR/BAYC on RR/BAYC.com<br>1 and ApeMarket.com, correct?<br>2 A.　　Correct.<br>3 Q.　　You testified earlier that the only thing<br>4 that's ever been on ApeMarket.com is an emoji, right?<br>5 A.　　Right.  That's a good point.  I think -- I<br>6 think we -- I guess we used the word ape on a market dot<br>7 com, a domain. | designation of origin and cybersquatting, so this testimony is irrelevant to the issues that remain in dispute.  Yuga Labs has further elected statutory damages for its ACPA claim, so this testimony is not relevant to the egregiousness of Defendants' cybersquatting. | delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues).  The testimony's probative value outweighs any prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness. |
| <u>184:19–184:23</u><br>19 Q.　　RR/BAYC was never meant as an attempt to<br>20  replace the original BAYC NFTs, correct?<br>21　　　　　MS. CULP:  Objection.  Calls for<br>22　　speculation.<br>23 A.　　Correct.  To my knowledge, yeah. | FRE 401-403; 602<br><br>The Court has already found that Defendants acted with the intent to infringe so this testimony is irrelevant. It would confuse the issues. Mr. Lehman lacks personal knowledge of Defendants' intent so the testimony is speculative. | The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC Project, which is relevant to several outstanding issues, including disgorgement.<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | jury issues). The testimony's probative value outweighs any prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness. |
| 188:13–188:21<br>13 Q.    Paragraph 23, you talk about ways that you<br>14  propose to address the concerns that you raised with the<br>15  defendants, correct?<br>16 A.    Yes.<br>17 Q.    That's referring to concerns about Ape Market,<br>18  correct?<br>19 A.    Yes.<br>20 Q.    Ape Market never launched, correct?<br>21 A.    Yes. | FRE 401-403<br>The Court has already found that Defendants are liable for false designation of origin and cybersquatting, so this testimony is irrelevant to the issues that remain in dispute.  Yuga Labs has further elected statutory damages for its ACPA claim, so this testimony is not relevant to the egregiousness of Defendants' cybersquatting. | The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC Project, which is relevant to several outstanding issues, including disgorgement. The testimony is also relevant to the intent behind ApeMarket and "apemarket.com." The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC project, which is relevant to several outstanding issues.<br><br>There is no undue |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice. |
| 193:13–196:21<br>13 Q.    You mentioned that one of the ways that RR/BAYC<br>14 is differentiated from BAYC was this disclaimer that's<br>15 on RR/BAYC.com, right?<br>16 A.    Yes.<br>17 Q.    It's only one of the ways in which a person can<br>18 distinguish the collections, correct?<br>19              MS. CULP:  Objection. Incomplete<br>20        hypothetical.<br>21 A.    Yes.<br>22 Q.    What are some other ways?<br>23 A.    As I put in the statement, you can look at the<br>24 -- well, one thing is that you can look at Etherscan.<br>25 We talked about this.  I was noting in the statement<br> 1 here that you can look at this in foundation.<br> 2 Foundation, I believe, shows you the creator of this | FRE 401-403; 602<br><br>The Court has already found a likelihood of confusion and that Defendants used Yuga Labs' marks in commerce so this testimony is irrelevant. The testimony would confuse the issues and waste time. Mr. Lehman's testimony about how third-party consumers perceive information on Etherscan is speculative. | The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC Project, which is relevant to several outstanding issues including disgorgement, intent, and alternate explanations for sales of RR/BAYC NFTs unrelated to confusion.  This testimony is also relevant to the manner in which the RR/BAYC NFTs appeared in the market, which goes to the scope of confusion (and thus to |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 3  thing.<br>4        So even without leaving Foundation you can see<br>5  that and I think there's information on the main page,<br>6  on the token page, so you would have to look around at<br>7  what were you seeing.<br>8        You would not have an easier experience of<br>9  being forced to acknowledge something before you could<br>10  literally pay.<br>11  Q.    But it certainly wouldn't have been impossible<br>12  to differentiate the collections even on Foundation,<br>13  correct, sir?<br>14        MS. CULP:  Objection. Calls for<br>15        speculation.<br>16  A.    Correct.  In my opinion, that's correct.<br>17  Q.    In your statement in Paragraph 25 of your<br>18  concern, that only applies in a case where a person did<br>19  not conduct further research, correct?<br>20        MS. CULP:  Objection. Calls for<br>21        speculation.<br>22  A.    I think -- I would say that simply because the<br>23  disclaimer forced you to read and acknowledge something<br>24  before buying, that absent that, in order to come to the<br>25  same understanding, you would have to actively look at | | disgorgement).<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 1  something.<br>2        So in the case you did not do your own<br>3  research, you did not look at that thing and because you<br>4  were not forced to read it, because there was no<br>5  disclaimer, then there could be the confusion element.<br>6  Q.      But there would only be confusion if a person<br>7  did not conduct further research, correct?<br>8              MS. CULP:  Same objection.<br>9  A.      Correct.<br>10  Q.     One of the tools that you could use to conduct<br>11  further research is Etherscan, correct?<br>12              MS. CULP:  Objection. Asked and<br>13        answered.<br>14  A.      Yes.<br>15  Q.     And as we talked about earlier, Etherscan is<br>16  publicly available for anyone to use, correct?<br>17  A.      Yes.<br>18  Q.     For free, correct?<br>19  A.      Correct.<br>20  Q.     Now, this paragraph references -- strike that.<br>21        You talked a little bit about the disclaimer?<br>22  A.      Yes.<br>23  Q.     And that was one of the things that mitigated<br>24  your concern about confusion, correct? | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 25 A.    Yes.<br>1 Q.    Do you feel that the disclaimer was effective<br>2 in differentiating Yuga Labs BAYC NFTs from RR/BAYC<br>3 NFTs?<br>4          MS. CULP:  Objection.  Calls for<br>5      speculation.  Incomplete hypothetical.<br>6 A.    I mean, this is kind of my thought, it changed<br>7 over time what I thought I would be getting versus what<br>8 I found out later.<br>9      I would say yes, this disclaimer was effective<br>10 in the sense that I believe the end result was a -- one<br>11 that was not confusing.  I don't know the specific role<br>12 the disclaimer played.<br>13      Maybe -- contra to what I thought at the time,<br>14 maybe it was not actually important.  I don't know.  But<br>15 I certainly believe that it was, and even looking back<br>16 now, I'm glad that we had it, but I dont' know all the<br>17 factors.<br>18 Q.    But you personally believed that the disclaimer<br>19 was effective in differentiating the two collections,<br>20 correct?<br>21 A.    I did. | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| <u>210:16–214:7</u><br>16  Q.      For funds that were received before the RSVP<br>17  contract was implemented, how were those funds<br>18  distributed?<br>19  A.      So I or Ryan, I think it was me, made some kind<br>20  of calculation based on Etherscan or what mints that it<br>21  happened or something like this and sent a text message<br>22  and said here's how much Ryder needs to send for the<br>23  profits he made before this, and then looking forward.<br>24  It's all automatic.<br>25  Q.      And he did, in fact, send you those funds?<br>1  A.      Yes.<br>2  Q.      Approximately when?<br>3  A.      I want to say late May, like it was at the time<br>4  that we did the first withdraw from the RSVP contract<br>5  and then the idea was, well, while we're distributing<br>6  this, we might as well distribute the other thing and<br>7  that was how that went down.<br>8  Q.      And would that have been a direct transfer from<br>9  Ryder's wallet to your wallet?<br>10  A.      Yes.<br>11  Q.      So if I go on Etherscan and I look at either of<br>12  your wallets, I can find that transaction, right?<br>13  A.      Yes. | 211:17–25<br>FRE 401-403; 602<br><br>Mr. Lehman's ill-gotten profits are irrelevant. This testimony would waste time and confuse the issues. Mr. Lehman admittedly lacks personal knowledge of the amount for this transaction so the testimony is speculative.<br><br>212:1–214:7<br>FRE 401-403; 602<br><br>Mr. Lehman's ill-gotten profits are irrelevant. This testimony would waste time and confuse the issues. Mr. Lehman admittedly lacks personal knowledge of the amount for this transaction so the testimony is speculative. | The testimony is relevant to the calculation of disgorgement, specifically, profits attributable to Defendants' as opposed to other participants in the RR/BAYC Project. Mr. Lehman's testimony illustrates one reason why Ms. Kindler's profits calculation is too high.<br><br>There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice. The question asks for information that is within the personal knowledge of the witness, which is partially explained in the witness's ability to give an answer. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 14 Q.     Approximately how much was that? | | |
| 15 A.     30 for -- 50 -- 40 -- I've got to do my taxes | | |
| 16 on this, so you know, 10's of ether. | | |
| 17 Q.     Understood.  Would it stand out on your | | |
| 18 transactions as one of the largest ether amounts? | | |
| 19 A.     Yes. | | |
| 20 Q.     I'm going to screen share for a moment.  Can | | |
| 21 everybody see what I'm screen sharing? | | |
| 22 A.     Yep, I can. | | |
| 23            MR. JACOBS:  I can see. | | |
| 24 Q.     For the record, I've navigated my web browser | | |
| 25 to Etherscan.io.  Mr. Lehman, this is Etherscan, | | |
| 1 correct? | | |
| 2 A.     Yep. | | |
| 3 Q.     So in order to make a record, I'm going to | | |
| 4 navigate this to your Ethereum wallet page, okay? | | |
| 5 A.     Okay. | | |
| 6 Q.     So I'm going to go to the declaration first. | | |
| 7 And I'm going to grab your ETHE wallet address from | | |
| 8 there? | | |
| 9 A.     Yep. | | |
| 10 Q.     The first thing I'm going to have to do is OCR | | |
| 11 it so give me as second. | | |
| 12 A.     If you want, you can use my ENS. | | |
| 13 Q.     Okay. | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 14 A.    So just type in there middle March, M-I-D-D-L-E 15 M-A-R-C-H dot ETHE. 16 Q.    For the record, I'm navigating the web browser 17 on Etherscan to middle march dot ETHE? 18 A.    So you can see my resolved address there, DA97. 19 Q.    I'm going to navigate to the page for the 20 wallet ending in DA97 on Etherscan. Do you see here a 21 list of transactions? 22 A.    Yes. 23 Q.    Let's see if I can -- I'm going to filter this 24 by view incoming transactions.  And this -- May of 2022 25 is about 10 months ago.  So I'm going to try and find 1 that.  There's a transaction here on this page that's 2 32.398 from Ryder Ripps Studies.  Do you see that? 3 A.    I do. 4 Q.    Is that the transaction that we're referring 5 to? 6 A.    I can't say for sure, but it seems pretty 7 likely.  I can't see another reason why Ryan would be 8 sending me that amount of ETHE on that day, so yeah, 9 probably, I think that's a good -- 10 Q.    So if we look here, that is the single largest 11 incoming ETHE amount of any | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| transaction since May of<br>12  2022, correct?<br>13  A.    So it's the largest ETHE amount of anyone<br>14  transferring me ETHE.<br>15  Q.    Right.<br>16  A.    There can be the case of someone interacting<br>17  with a contract and as a side effect that sends me ETHE<br>18  and that won't show up in this exact view, but for<br>19  purpose of someone sending me ETHE, yes, that's<br>20  accurate.<br>21  Q.    So I'm going to navigate now to that<br>22  transaction hash and the ending transaction hash if<br>23  4B90.  And reflected here is a transfer from EMS domain,<br>24  RyderRipps.ETHE to MiddleMarch.ETHE on May 27, 2022.  Do<br>25  you see that?<br>1  A.    Yep.<br>2  Q.    And the amount is 32.398 ETHE, correct?<br>3  A.    Yep.<br>4          MR. GOSMA:  I am going to save that as<br>5      a PDF and I will drop it in the chat and we<br>6      will mark that as Exhibit 2.<br>7          (Whereupon, the Etherscan.io screenshot | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 214:15–217:6<br>15 Q.      Paragraph 37 you state, it's my understanding<br>16 that at least Ripps also received royalties from the<br>17 resell of RR/BAYC NFTs through NFT marketplaces<br>18 Foundation.  Do you see that?<br>19 A.      Yes.<br>20 Q.      You state that you have not received any of<br>21 those royalties, correct?<br>22 A.      Yes.<br>23 Q.      You don't know whether Mr. Ripps has received<br>24 any – strike that.<br>25      You don't know how much Mr. Ripps has received<br>1 in royalties from either marketplace, correct?<br>2 A.      I don't, correct.<br>3 Q.      The amount that he has received is a verifiable<br>4 number using the Blockchain, correct?<br>5 A.      Yes.<br>6 Q.      You don't know – strike that.<br>7      On Foundation and LooksRare, the creator fees<br>8 are an adjustable value, correct?<br>9 A.      My understanding that for these marketplaces,<br>10 you can't change them which is why he gets them versus<br>11 other places where he said he doesn't want them and they<br>12 respected that wish.<br>13 Q.      So on other platforms, Mr. Ripps did decline to<br>14 receive creator fees for RR/BAYC | 214:23–217:6<br>FRE 401-403; 602<br><br>This testimony is the subject of Yuga Labs' Motion *In Limine* No. 2 because Defendants' purported artistic or critical intent is not relevant to this case and causes undue delay. Mr. Lehman lacks personal knowledge of why Defendants chose to market and collect fees from their infringing NFTs. | This deposition testimony is not covered by Yuga's MIL No. 2. The breadth of Yuga's MILs cannot be read to cover all possible pieces of evidence that do not even cover the issues implicated by the MIL. Further, if it is subject to MIL No. 2, Yuga's Motion in Limine No. 2 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues).<br>The testimony is relevant to admissibility and validity of the declaration, which is relevant to several outstanding issues. The testimony is relevant to Defendants' intent and motivation in creating the RR/BAYC Project, which is relevant to several outstanding issues, including disgorgement. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| NFTs, correct?<br>15  A.      That's my understanding, yes.<br>16  Q.      What platforms?<br>17  A.      So that would be OpenSea X2Y2.  Those are the<br>18  big ones.  I guess, I'm not sure what's done on Blur.<br>19  Yeah, I think – but yeah, I think that was my<br>20  understanding of the dynamic at play that he tried to do<br>21  it and some places he couldn't and so that's where he<br>22  stands.<br>23  Q.      What's your understanding of why he chose not<br>24  take those creator fees?<br>25  A.      I don't know.  I mean, I think there's kind<br>1  of like – and now even more so, big debate on what<br>2  those even mean, should anyone be taking those.  I think<br>3  that part of the ethos of the project was sort of<br>4  saying, like, hey, shouldn't you just submit to some big<br>5  company taking a creator's fee.<br>6      And if you're not a big company, maybe it's<br>7  different, whatever, so I think there was some tension<br>8  there, and I think royalty free stuff goes back to the<br>9  crypto punks, again, they had this big royalty free<br>10  marketplace, the first one, so I think this appeals to<br>11  people. | | There is no undue prejudice or undue delay that could result from this testimony (particularly where Yuga has abandoned all legal remedies and jury issues). The testimony's probative value outweighs any prejudice.<br><br>The question asks for information that is within the personal knowledge of the witness. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| 12      And so I think that was part of the, you know, <br> 13  incidental ethos of the project, especially since we <br> 14  were launching a low to zero fee marketplace ourselves, <br> 15  but I also don't think it would have been inconsistent <br> 16  for Ryder to want to do that.  He just said that he <br> 17  didn't want to and that's what he did. <br> 18  Q.      Paragraph 38 talks about proposed splitting <br> 19  revenue from Ape Market, correct? <br> 20  A.      Yes. <br> 21  Q.      To be clear, the total revenues from Ape Market <br> 22  were zero, correct? <br> 23  A.      Correct. <br> 24  Q.      No Yuga Labs NFTs were ever sold on Ape Market, <br> 25  correct? <br> 1  A.      Correct. <br> 2  Q.      No RR/BAYC NFTs were ever sold on Ape Market, <br> 3  correct? <br> 4  A.      Correct. <br> 5  Q.      Ape Market was never launched, correct? <br> 6  A.      Correct. | | |
| ███████████ | 219:23–25 <br> FRE 401-403; 602 <br> ██████ | ██████ |



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | Mr. Lehman is testifying from his personal knowledge. |
| | FRE 401-403 | This deposition testimony is not covered by Yuga's MIL No. 1. The breadth of Yuga's MILs cannot be read to cover all possible pieces of evidence that do not even cover the issues implicated by the MIL. Further, if it is subject to MIL No. 1, as Yuga's Motion in Limine No. 1 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues). |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |
| | | The question asks for information that is within the personal knowledge of the witness. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
|  | FRE 401-403 | The question asks for information that is within the |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ███████ | | personal knowledge of the witness.<br><br>This deposition testimony is not covered by Yuga's MIL No. 1. The breadth of Yuga's MILs cannot be read to cover all possible pieces of evidence that do not even cover the issues implicated by the MIL. Yuga's Motion in Limine No. 1 should be denied for the reasons explained in Defendants' opposition (and are in any event moot because Yuga has abandoned all legal remedies and jury issues). |
| *237:19–25 [Plaintiff's Counter-Designation to Defendants' designations at lines 96:3-96:20, 97:15-98:8, 108:14-109:20, 115:10-116:6, 116:21-116:25, 117:3-117:15, 118:2-118:15, 120:16-120:18, 123:5-123:24, 124:10-124:13, 126:11-126:15, 126:20-127:3, 127:15-128:2, 164:14-165:12, 246:13-247:25, 248:3-249:24, 251:23-252:7]* ███████ | LEADING [Defendants' Objection] This answer was asked in a leading manner by counsel. The answer is wholly contained in the question. Fed. R. Evid. 611. | Defendants noticed the deposition and were taking the deposition and are offering the testimony in their affirmative case and so the form of the question as leading on cross-examination by Plaintiff's counsel is appropriate. Fed. R. Civ. P. 30(c)(1). Furthermore, |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ████████████████████ ██ ████████████████ ████████████████ | | Defendants admit that Mr. Lehman is their "partner" and so he is an adverse witness to Yuga Labs. |
| ████████████ *to Defendants' designations at lines 96:3-96:20, 97:15-98:8, 108:14-109:20, 115:10-116:6, 116:21-116:25, 117:3-117:15, 118:2-118:15, 120:16-120:18, 123:5-123:24, 124:10-124:13, 126:11-126:15, 126:20-127:3, 127:15-128:2, 164:14-165:12, 246:13-247:25, 248:3-249:24, 251:23-252:7* ████████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ | No Objection | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ███████████████ | | |
| *241:1–13 [Plaintiff's Counter-Designation to Defendants' designations at lines 96:3-96:20, 97:15-98:8, 108:14-109:20, 115:10-116:6, 116:21-116:25, 117:3-117:15, 118:2-118:15, 120:16-120:18, 123:5-123:24, 124:10-124:13, 126:11-126:15, 126:20-127:3, 127:15-128:2, 164:14-165:12, 246:13-247:25, 248:3-249:24, 251:23-252:7]* | LEADING [Defendants' Objection] This answer was asked in a leading manner by counsel. The answer is wholly contained in the question. Fed. R. Evid. 611. | Defendants noticed and were taking the deposition and are offering the testimony in their affirmative case and so the form of the question as leading on cross-examination by Plaintiff's counsel is appropriate. Fed. R. Civ. P. 30(c)(1). Furthermore, Defendants admit that Mr. Lehman is their "partner" and so he is an adverse witness to Yuga Labs. |
| ███████████████ | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ▮▮▮▮▮▮ | | |
| _to Defendants' designations at lines 96:3-96:20, 97:15-98:8, 108:14-109:20, 115:10-116:6, 116:21-116:25, 117:3-117:15, 118:2-118:15, 120:16-120:18, 123:5-123:24, 124:10-124:13, 126:11-126:15, 126:20-127:3, 127:15-128:2, 164:14-165:12, 246:13-247:25, 248:3-249:24, 251:23-252:7_ ▮▮▮▮▮▮▮▮▮▮ | 241:16–25 LEADING [Defendants' Objection] This answer was asked in a leading manner by counsel. The answer is wholly contained in the question. Fed. R. Evid. 611. | Defendants noticed and were taking the deposition and are also offering the testimony in their affirmative case and so the form of the question as leading on cross-examination by Plaintiff's counsel is appropriate. Fed. R. Civ. P. 30(c)(1). Furthermore, Defendants admit that Mr. Lehman is their "partner" and so he is an adverse witness to Yuga Labs. |



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | FRE 401-403 | |
| | This testimony would confuse the issues. | |
| | | The question asks for information that is within the personal knowledge of the witness. |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|


1 MS. CULP: Objection. Lacks
2 foundation. Misstates testimony.



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | FRE 401-403 | |
| | This testimony would confuse the issues. | |
| | | The question asks for information that is within the personal knowledge of the witness. |



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ███████████████ ██████████████ ██████████████ ████████████ | FRE 401-403 ████████████ ████████████ ████████████ ████████████ ████████████ | ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ The question asks for information that is within the personal knowledge of the witness. |
| *250:7–251:17 [Plaintiff's Counter-Designation to Defendants' designations at lines 96:3-96:20, 97:15-98:8, 108:14-109:20, 115:10-116:6, 116:21-116:25, 117:3-117:15, 118:2-118:15, 120:16-120:18, 123:5-123:24, 124:10-124:13, 126:11-126:15, 126:20-127:3, 127:15-128:2, 164:14-165:12, 246:13-247:25, 248:3-249:24, 251:23-252:7]* ██████ ██████████████ | No Objection | |

| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| ███████████████ | | |



| Defendants' Designations of Thomas Lehman | Objections & Grounds[1] | Response to Objections |
|---|---|---|
| | FRE 401-403 | |
| | This testimony would confuse the issues. | |
| | | The question asks for information that is within the personal knowledge of the witness. |

1    Dated:  June 30, 2023                WILMER CUTLER PICKERING HALE
                                          AND DORR LLP
2

3
                                          By:  /s/ Louis W. Tompros
4                                             Louis W. Tompros(*pro hac vice*)
                                              louis.tompros@wilmerhale.com
5                                             **WILMER CUTLER PICKERING
                                                HALE AND DORR LLP**
6                                             60 State Street
                                              Boston, MA 02109
7                                             Telephone: (617) 526-6000
                                              Fax: (617) 526-5000
8
                                              Attorneys for Defendants
9                                             RYDER RIPPS and JEREMY CAHEN

10

11   Dated:  June 30, 2023                FENWICK & WEST LLP

12

13                                        By:  /s/ Eric Ball
                                              Eric Ball
14                                            Attorneys for Plaintiff
                                              YUGA LABS, INC.
15

16
                     **ATTESTATION OF CONCURRENCE IN FILING**
17
            Pursuant to the United States District Court for the Central District of
18
     California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence
19
     in the filing of this document has been obtained from Eric Ball.
20

21                                            */s/ Louis Tompros*
22                                            Louis W. Tompros(*pro hac vice*)
                                              louis.tompros@wilmerhale.com
23                                            **WILMER CUTLER PICKERING
                                                HALE AND DORR LLP**
24                                            60 State Street
                                              Boston, MA 02109
25                                            Telephone: (617) 526-6000
                                              Fax: (617) 526-5000
26

27

28

1

## CERTIFICATE OF SERVICE

2     I hereby certify that a copy of the foregoing document was served on all

3 attorneys of record via email June 30, 2023.

4

5     By: /s/ *Louis W. Tompros*
      Louis W. Tompros (*pro hac vice*)
6     louis.tompros@wilmerhale.com
      **WILMER CUTLER PICKERING**
7     **HALE AND DORR LLP**
      60 State Street
8     Boston, MA 02109
      Telephone: (617) 526-6000
9     Fax: (617) 526-5000

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28