# Trial Exhibit JTX-1123

# TRADEMARK and DECEPTIVE ADVERTISING SURVEYS

SECOND EDITION

Law, Science, and Design

**Shari Seidman Diamond** and **Jerre B. Swann**
Editors

ABA AMERICAN**BAR**ASSOCIATION
Intellectual Property Law Section

U.S.D.C. CENTRAL DISTRICT OF CALIFORNIA
Case No. 2:22-cv-04355-JFW-JEM
Yuga Labs, Inc.
vs.
Ryder Ripps, Jeremy Cahen
JOINT EXHIBIT _____ JTX-1123 _____
DATE _____ IDEN.
DATE _____ EVID.
BY _____
Deputy Clerk

Cover design by Jill Tedhams/ABA Design

The materials contained herein represent the opinions of the authors and/or the editors and should not be construed to be the views or opinions of the law firms or companies with whom such persons are in partnership with, associated with, or employed by, nor of the American Bar Association or the Section of Intellectual Property Law, unless adopted pursuant to the bylaws of the Association.

Nothing contained in this book is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. This book is intended for educational and informational purposes only.

© 2022 American Bar Association. All rights reserved.

No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the publisher. For permission, complete the request form at www.americanbar.org/reprint or email ABA Publishing at copyright@americanbar.org.

Printed in the United States of America.

26 25 24 23 22     5 4 3 2 1

A catalog record for this book is available from the Library of Congress.

Discounts are available for books ordered in bulk. Special consideration is given to state bars, CLE programs, and other bar-related organizations. Inquire at Book Publishing, ABA Publishing, American Bar Association, 321 N. Clark Street, Chicago, Illinois 60654-7598.

www.shopABA.org

responses to a suggestive question as to only two marks, presented in the abstract,[88] and (ii) confusion detected by the District Court in responses to a "why" question. In its evolved form, the format is no longer the red-headed stepchild of the Eveready format, but where goods are competitively proximate, it is more than ever a necessary companion to an Eveready study (with its vagaries as to what is readily accessible) in any effort to prove that there is *no* likelihood of confusion as to lesser-known marks.

### The Cognitive Underpinnings of the Squirt Format

To assess the probability as to whether two objects, A and B, belong to the same class or originate from the same process, respondents or consumers may resort to a similarity analysis (analogous to the representativeness heuristic and pattern recognition) to reduce the complex task of assessing probabilities to simpler judgmental operations:

> [The probability is] evaluated by the degree to which A *resembles* B. For example, when A is highly *representative* of B, the probability that A originates from B is judged to be high. On the other hand, if A is not *similar* to B, the probability that A originates from B is judged to be low.[89]

In drawing inferences as to whether trademarks go or belong together, "[c]onsumers, *in addition to or apart from pattern matching*, may make computer-quick, automatic assessments of [their likenesses and differences. . . .]."[90] As in the Eveready format, respondents in the Squirt format may search for a fit (or the lack thereof) between *aided* memory of a senior mark (where aiding is reflective of marketplace reality) and a mark in a line-up.

The Eveready and Squirt formats are thus different sides of the same coin. In the Eveready format, respondents conduct a (similarity) comparison between an allegedly infringing mark and *internally accessible* information as to a senior mark (derived from its accessibility, similarity to the junior, salience, uniqueness, and the like). In the Squirt format, respondents conduct a (similarity) comparison between an allegedly infringing mark and an *externally available* senior mark as it exists in the real world.

In confusion factor terminology, both formats principally address similarity, the *sine qua non* of likelihood of confusion.[91] The Eveready format typically relies

---

88. *See Riviana Foods Inc. v. Société des Produits Nestle S.A.*, 33 U.S.P.Q.2d 1669, 1671 (S.D. Tex. 1994) (rejecting as leading the question "Do you think the weight loss product 'Sweet Success' and 'Success Rice' are more likely made by the same company or more likely made by different companies?"). A closed-ended question as to only two marks, presented back-to-back, suggests a relationship. *Kargo Glob.*, 2007 U.S. Dist. LEXIS 57320, at *24–25.
89. Amos Tversky & Daniel Kahneman, *Judgements under Uncertainties: Heuristics and Biases*, in SCIENCE vol. 185 (1947) (emphasis added).
90. E-mail from Jacob Jacoby to author (Nov. 1, 2014) (on file with the author) (discussing a derivation of the representativeness heuristic (emphasis added)). *Also see* DANIEL KAHNEMAN, THINKING FAST AND THINKING SLOW 71 (2001) ("[W]e have in our head a remarkably powerful computer . . . able [rapidly] to represent the structure of our world by various types of associative links in a vast network of ideas.").
91. Barton Beebe, *An Empirical Study of the Multifactor Tests for Trademark Infringement*, 94 CAL. L. REV. 1581, 1600, 1607 (2006) (stating "[t]he similarity of the marks factor is by far the most influential"; "a finding that the similarity of the marks factor does not favor likelihood of confusion is sufficient to

on the strength factor (the ready accessibility of trademark information in memory) to facilitate the similarity assessment. The Squirt format relies on the competitive proximity factor (the coexistence of the two marks in the real-world marketplace) for the same similarity assessment. Arguably, since a coexisting marketplace image is likely sharper than a dated mental image, the Squirt format produces a more accurate similarity assessment. At the very least, the reliability of the two formats (properly executed) is far more comparable than I once believed.

## COMPETITIVE PROXIMITY AND THE INTERNET[92]

Competition rages between the brick-and-mortar and the internet worlds. Where products exist in a brick-and-mortar outlet in a category likely to be competitively shopped on the internet, there may be competitive proximity between trademarks in the category. There likely would have been competitive proximity between JOULES and MASON JULES, for example, even if clothing of the former had been available only on the internet and clothing of the latter existed only in Macy's retail outlets. "Both product lines [were] target[ed] and . . . sold to young women . . . seek[ing] work- and week/end-appropriate clothing and who [were] likely to visit both [internet and retail] sales locations [for price and styling options]."[93]

As for the internet itself, many sites (e.g., Amazon) are cluttered, as are the results of many queries on search engines (e.g., Google), which can result in literally millions of listings.[94] On the internet, therefore, compliance with guiding principles as to competitive proximity must be stringently applied in replicating marketplace reality as to whether marks are likely sufficiently to exist for a comparison in cognitive workspace. The mere fact that a senior user's and a junior user's marks both appear somewhere on the internet is, by itself, basely insufficient to justify use of the Squirt format.[95]

Similarly, cluttered retail megasites such as Amazon or eBay are unlikely to produce appreciable proximity except as to closely competitive goods. In *Moroccanoil, Inc. v. Zotos Int'l, Inc.*,[96] for example, the court gave "less weight" to a Squirt survey despite the fact that "consumers *may* encounter both marks in close proximity (*i.e.*, on the same (physical) or serially-visited (temporal) web pages) on the same websites, such as Amazon, eBay, Sears, Wal-Mart and Sleekhair Beauty . . . [because] it

---

trigger an overall finding of no likelihood of confusion, regardless, it appears, of the outcomes of any other factors").

92. This section was prepared almost exclusively by R. Charles Henn, Jr. for *Ever-Constant Eveready*.
93. *Joules Ltd.*, 695 F. App'x at 637.
94. In *Simon*, as an example, plaintiffs proposed "Simon and shopping" search terms, produced plaintiff's and defendant's websites among 56 million responsive sites using one search engine, but did not produce both mySimon and Simon Property Group using another. 104 F. Supp. 2d at 1041–42.
95. Particularly disturbing is the TTAB's indirect finding in one proceeding that a Squirt format survey was "probative" because the parties' marks "may appear in close proximity . . . on the internet" without any showing that, *in fact*, they did so. Merchant & Gould P.C. v. MG-IP Law, P.C., No. 92057850, 2017 WL 3446801, at *14 (T.T.A.B. July 14, 2017).
96. 230 F. Supp. 3d 1161 (C.D. Cal. 2017).

JTX-1123.00004

YUGALABS_00034059