ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>              Plaintiff,<br><br>      v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>              Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**PLAINTIFF YUGA LABS, INC.'S TRIAL BRIEF**<br><br><br>Trial Date: July 31, 2023 |

1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA  90401
   Telephone:   310.434.4300
4
5  DAVID Y. SILLERS (*admitted pro hac vice*)
   david@clarelocke.com
6  KATHRYN HUMPHREY (*admitted pro hac vice*)
   kathryn@clarelocke.com
7  MEGAN L. MEIER (*admitted pro hac vice*)
   megan@clarelocke.com
8  CLARE LOCKE LLP
   10 Prince Street
9  Alexandria, VA  22314
   Telephone:   202.628.7400
10
11 Attorneys for Plaintiff
   YUGA LABS, INC.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

YUGA LABS' TRIAL BRIEF                                    Case No. 2:22-cv-04355-JFW-JEM

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................ 1

        A.      Defendants' False Designation of Origin ............................... 1

        B.      Defendants' Cybersquatting................................................... 2

        C.      Defendants' Profits ............................................................... 3

        D.      Defendants' Infringing Activities Harm Yuga Labs ............. 3

        E.      Defendants' Litigation Misconduct ....................................... 5

III.    ARGUMENT ....................................................................................... 6

        A.      Yuga Labs is Entitled to All of Defendants'
                Profits and Injunctive Relief. ............................................... 6

                1.      Yuga Labs is Entitled to Disgorge Defendants' Profits. ........... 6

                2.      Yuga Labs is Entitled to Statutory
                        Damages per the ACPA........................................... 8

                3.      Yuga Labs is Entitled to Its Requested Injunctive Relief. ........ 9

                        a.      Yuga Labs Meets All Requirements for an
                                Injunction. .............................................. 9

                        b.      Defendants Should Transfer to Yuga Labs Control
                                of the Infringing Web Domains, Social Media
                                Accounts, and Smart Contract........................ 11

        B.      Yuga Labs is Entitled to Costs for
                Defendants' Lanham Act Violations. .................................. 13

        C.      Yuga Labs is Entitled to Attorneys' Fees for Defendants'
                Lanham Act Violations Because this is an Exceptional Case. .......... 13

        D.      Yuga Labs is Entitled to Attorneys' Fees and Costs Related to
                Defendants' Dismissed and Adjudicated Copyright Claims. .......... 15

IV.     CONCLUSION ................................................................................. 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
 534 F. App'x. 633 (9th Cir. 2013) ............................................................. 10

*Athena Cosmetics, Inc. v. AMN Distribution Inc.*,
 No. 20-cv-05526-SVW-SHK, 2022 WL 4596549
 (C.D. Cal. Aug. 16, 2022) ........................................................................... 9

*Bekins Holding Corp. v. BGT Trans, Inc.*,
 No. CV 09-08982 MMM, 2010 WL 11597623
 (C.D. Cal. Nov. 19, 2010) ........................................................................... 8

*Brookfield Commc'n v. W. Coast Ent. Corp.*,
 No. CV98-9074 CM, 1999 U.S. Dist. LEXIS 23247
 (C.D. Cal. Sep. 9, 1999) ....................................................................... 11, 12

*Century 21 Real Estate Corp. v. Sandlin*,
 846 F.2d 1175 (9th Cir. 1988) .................................................................. 10

*eBay, Inc. v. MercExchange, LLC*,
 547 U.S. 388 (2006) ..................................................................................... 9

*Entrepreneur Media, Inc. v. Alfonso*,
 No. 8:21-cv-00644-DOC-(JDEx), 2021 WL 2941983
 (C.D. Cal. July 12, 2021) ........................................................................... 11

*Frank Lloyd Wright Found. v. Shmavonian*,
 No. 18-CV-06564-MMC, 2019 WL 3413479
 (N.D. Cal. July 29, 2019) ............................................................................. 7

*Gucci Am., Inc. v. Guess?, Inc.*,
 868 F. Supp. 2d 207 (S.D.N.Y. 2012) ......................................................... 7

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
 736 F.3d 1239 (9th Cir. 2013) ..................................................................... 9

*Jackson v. Gaspar*,
 No. 2:19-CV-10450-DOC-E, 2022 WL 2155975
 (C.D. Cal. Feb. 24, 2022) ..................................................................... 13, 14

*JUUL Labs, Inc. v. Chou*,
 No. CV 21-3056 DSF (PDX), 2023 WL 3886046
 (C.D. Cal. June 8, 2023) ......................................................................... 9, 10

*Leadership Studies, Inc. v. ReadyToManage, Inc.*,
 No. 2:15-cv-09459-CAS(AJWx), 2017 WL 2408118
 (C.D. Cal. June 2, 2017) ............................................................................ 10

FENWICK & WEST LLP
ATTORNEYS AT LAW

ii

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Left Coast Wrestling, LLC v. Dearborn Int'l, LLC*,
    No. 3:17-cv-00466-LAB-NLS, 2018 WL 2328471
    (S.D. Cal. May 23, 2018) ................................................................. 11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ....................................................................... 13

*San Diego Comic Convention v. Dan Farr Prods.*,
    807 F. App'x. 674 (9th Cir. 2020)...................................................... 14

*Smith v. Guerilla Union, Inc.*,
    No. CV 18-9902 DSF, 2019 WL 1517551 (C.D. Cal. Apr. 8, 2019) .............. 11

*St. Luke's Cataract and Laser Inst., P.A. v. Sanderson*,
    573 F.3d 1186 (11th Cir. 2009)............................................................ 9

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
    875 F.3d 426 (9th Cir. 2017) ............................................................. 14

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) ........................................................... 13

*Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*,
    392 F.3d 248 (7th Cir. 2004) ............................................................. 15

*Verizon Cal. Inc. v. OnlineNIC, Inc.*,
    No. C08-2832, 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009)........................... 9

*W. Watersheds Project v. Abbey*,
    719 F.3d 1035 (9th Cir. 2013)............................................................... 9

*Wecosign, Inc. v. IFG Holdings, Inc.*,
    845 F. Supp. 2d 1072 (C.D. Cal. 2012)................................................. 8

*Wilens v. Doe Defendant No. 1.*,
    No. 3:14–cv–02419–LB, 2015 WL 4606238 (N.D. Cal. July 31, 2015)........... 12

**STATUTES AND RULES**

15 U.S.C. § 1116............................................................................9, 11

15 U.S.C. § 1117............................................................................6, 8, 7, 13

15 U.S.C. § 1125(a), (d) ...............................................................11, 13

17 U.S.C. § 505 ..............................................................................15

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.   INTRODUCTION

In its April 21, 2023 Order on Summary Judgment ("SJ Order") (Dkt. 225), the Court found Defendants liable for Yuga Labs' claims of false designation of origin and cybersquatting.  For these claims, Yuga Labs is entitled to monetary remedies and injunctive relief.  Thus, the only issues remaining are (1) the just award of Defendants' profits for their false designation of origin of RR/BAYC NFTs, (2) the statutory damages to award Yuga Labs for Defendants' cybersquatting of two domains, (3) the scope of injunctive relief to address the harm to Yuga Labs from Defendants' two Lanham Act violations, and (4) whether this is an exceptional case entitling Yuga Labs to an award of attorneys' fees under the Lanham Act.

Defendants' intentionally infringing activities and their misconduct throughout this litigation entitle Yuga Labs to a disgorgement of their profits in the amount of at least $1,589,455, statutory damages of $200,000, injunctive relief that prevents Defendants from further harming or profiting off Yuga Labs' BAYC brand, costs, and Yuga Labs' attorneys' fees.

## II.   FACTUAL BACKGROUND

### A.   Defendants' False Designation of Origin

The Court has already determined that Defendants' promotion and sale of RR/BAYC NFTs is false designation of origin.  SJ Order at 13.  Defendants concede the Court's adjudication of their liability.  *See* Dkt. 320-1 at 13.  Yuga Labs owns and uses the BAYC Marks, which Defendants used to falsely suggest that RR/BAYC NFTs relate to Yuga Labs in a way that caused confusion.  SJ Order at 13.

The Court has also already determined that Defendants' false designation of origin was intentional.  First, "Defendants knowingly and intentionally used Yuga's BAYC Marks . . . in an effort to confuse consumers" and "intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding."  SJ Order at 12; *see also* JTX-671; JTX-686.  Indeed, "Defendants have admitted that they intentionally used the BAYC Marks in their RR/BAYC NFTs."  SJ Order at 11.

Second, "Defendants are selling the exact same product – NFTs that point to Yuga's BAYC images – and Defendants marketed their RR/BAYC NFTs using the same corresponding BAYC Ape ID number used by Yuga for the BAYC NFTs." SJ Order at 11; *see also* JTX-686. "Defendants used Yuga's BAYC Marks to make their competing product look identical to Yuga's product and ensure that the consumer will be explicitly misled in the token tracker, which is the place where a consumer should be able to authenticate and verify who created the NFT." SJ Order at 17; *see also* JTX-600; JTX-117; JTX-1146; JTX-36.

Third, "Defendants frequently used the entirety of the BAYC Marks without modification." SJ Order at 18; *see also* JTX-28; JTX-671; JTX-814. Defendant Ripps even promoted the RR/BAYC NFTs as "Bored Ape Yacht Club V3" and "BAYC V3." JTX-689; JTX-690.

Fourth, Defendants developed and marketed an NFT marketplace, Ape Market, where consumers could purchase and sell RR/BAYC NFTs alongside BAYC NFTs. *See* JTX-696; JTX-697; JTX-698; JTX-938. Defendants teased the release of Ape Market to drive up sales of RR/BAYC NFTs. *See* JTX-696; JTX-801.00170-178; JTX-801.00185. Defendants continued to promote Ape Market even after the filing of this lawsuit. *See* JTX-1048. And Defendants expected to profit off of their use of the BAYC Marks to sell and resell RR/BAYC NFTs and to generate transaction fees from sales on Ape Market. *See* JTX-1 at ¶¶ 10–13; JTX-49; JTX-1574; JTX-1586.

## B.    Defendants' Cybersquatting

The Court has already determined that Defendants are liable for cybersquatting. SJ Order at 15. Defendants concede the Court's adjudication of their liability. *See* Dkt. 320-1 at 13. "Defendants registered, used, and continue to use the domain names https://rrbayc.com/ and https://apemarket.com." SJ Order at 14. Moreover, "Defendants registered multiple domain names – https://rrbayc.com, https://apemarket.com, and pages within OpenSea and Foundation – knowing that

Fenwick & West LLP
Attorneys at Law

they were identical or confusingly similar to the BAYC Marks." SJ Order at 15.

Defendants also "acted with a bad faith intent to profit" from Yuga Labs' marks because they "registered their domains, which included Yuga's marks, for commercial gain to divert customers from purchasing BAYC NFTs." SJ Order at 14, 15. Further, Defendants concealed their registration of the domain names by using a proxy registration service. *Id.* at 15.

## C.    Defendants' Profits

Yuga Labs' expert, Lauren Kindler, an independent expert in economics and damages calculations, calculated that, as of February 1, 2023, Defendants generated **at least $1,589,455** in profits from the sale of their RR/BAYC NFTs. *See* Dkt. 149-117 ¶ 76; JTX-723 ¶ 76. All of Defendants' profits result from their infringing activity because each RR/BAYC NFT used the BAYC Marks. Each RR/BAYC NFT refers to a contract with a token tracker displaying "Bored Ape Yacht Club (BAYC)", and the NFT marketplaces where RR/BAYC NFTs were sold listed "bayc" in the URLs. Defendants offer no expert to rebut Ms. Kindler's calculations or opinions.

## D.    Defendants' Infringing Activities Harm Yuga Labs

Defendants' infringement and cybersquatting has caused irreparable harm to Yuga Labs' brand equity, goodwill, and its ability to control its reputation.

Defendants registered and used the rrbayc.com and apemarket.com domains, which incorporate the BAYC Marks in their name and favicons, to market and sell RR/BAYC NFTs directly alongside BAYC NFTs. SJ Order at 14–15; JTX-698. Further, Defendants' @ApeMarketplace Twitter account incorporates the BAYC Marks and was used to market Defendants' infringing RR/BAYC NFTs. *See* JTX-696. Defendants also created an @ApeMarketBot Twitter account that incorporates the BAYC Marks and was intended to help Defendants market Ape Market. JTX-801.00025. Defendants even incorporated the BAYC Marks into the rrbayc-v0.netlify.app domain name and webpage, which Defendants used to transfer

Fenwick & West LLP
Attorneys at Law

Fenwick & West LLP
Attorneys at Law

1    RR/BAYC NFTs to consumers. *See* JTX-167; JTX-171; JTX-1148.

2      In creating the RR/BAYC smart contract, Defendant Ripps also used Yuga

3 Labs' BORED APE YACHT CLUB and BAYC marks to display as the token

4 tracker. JTX-600; JTX-117. Consumers use token trackers to verify the source and

5 authenticity of the digital assets that they are viewing and purchasing. SJ Order at

6 17; *see also* Dkt. 149-113 ¶ 14; JTX-721 ¶ 14; JTX-1558. The RR/BAYC smart

7 contract is immutable and will display Yuga Labs' BORED APE YACHT CLUB

8 and BAYC marks in perpetuity. Dkt. 149-115 ¶ 71; JTX-722 ¶ 71.

9      As a result, consumers and Twitter bots tracking and posting about NFT

10 transfers falsely attribute sales of RR/BAYC NFTs as BAYC NFTs as they reflect

11 the BORED APE YACHT CLUB and BAYC marks in the RR/BAYC smart

12 contract's token tracker, which causes confusion among consumers. *See* JTX-1029;

13 *see also* JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035.

14      Yuga Labs' expert, Laura O'Laughlin, an expert in designing, administering,

15 and analyzing consumer surveys, conducted two independent surveys with results

16 showing confusion of the BAYC Marks used in connection with RR/BAYC NFTs at

17 net rates of 40.4% on Foundation and 20.0% on OpenSea, respectively. Dkt. 149-113

18 ¶¶ 16, 47, 73; JTX-721 ¶¶ 16, 47, 73.

19      Likewise, Yuga Labs' expert, Jonah Berger, an expert in brand equity and

20 consumer behavior, found that Defendants' minting and sales of RR/BAYC NFTs

21 harmed Yuga Labs' brand equity and goodwill. Dkt. 149-115 ¶¶ 11, 12, 64–92;

22 JTX-722 ¶¶ 11, 12, 64–92. First, the introduction of RR/BAYC NFTs into commerce

23 increased the perceived supply and decreased the perceived exclusivity of authentic

24 BAYC NFTs. *Id.* ¶ 11. Second, there was marketplace confusion following the

25 minting and sales of RR/BAYC NFTs, largely because Defendants used the exact

26 BAYC images, metadata, marks, and naming conventions for their RR/BAYC NFTs.

27 *Id*. Third, consumer attitudes toward the BAYC brand became less positive as a

28 result of Defendants' minting and sales of RR/BAYC NFTs. *Id.*

Still, Defendants continue to market their RR/BAYC NFTs and Ape Market. On April 4, 2023, Defendant Cahen tweeted an announcement that "RR/BAYC is trading on OpenSea Pro." JTX-1315; *see also* JTX-1317. Defendant Cahen also continues to retweet Twitter posts sharing the resale of RR/BAYC NFTs (*see* JTX-1615; JTX-1613; JTX-1614) as well as retweet Defendants' own tweets from its @ApeMarketplace Twitter account. JTX-1048.

### E.    Defendants' Litigation Misconduct

Throughout this case, Defendants have engaged in misconduct against the Court, Yuga Labs, and its counsel. First, Defendants filed a frivolous counterclaim for declaratory judgment of no defamation with no good-faith basis and solely to introduce their irrelevant and inflammatory theories through the "backdoor of a counterclaim." Dkt. 87 at 2; *see* Dkt. 80 at 1, 3–4. Defendants withdrew this counterclaim only after they were unsuccessful in their attempts to leverage it for discovery and Yuga Labs had already expended resources seeking its dismissal. *See* Dkt. 156 at 11.

Second, Defendants repeatedly attempted to re-litigate issues the Court rejected in its December 16, 2022, Order Denying Defendants' Motion to Dismiss and Motion to Strike (Dkt. 62). For example, Defendants filed numerous motions to compel documents and information explicitly premised on their rejected First Amendment *Rogers* defense. *See* Dkt. 69-1, Dkt. 103-1. The Court denied these motions and requests as "moot, irrelevant and not proportionate to the needs of the case in view of the District Court's December 16, 2022 ruling." Dkt. 87 at 1; *see also* Dkt. 144 at 1. Similarly, when Defendants filed a meritless motion to stay proceedings (Dkt. 118) after nearly three months of unnecessary delay, the Court reiterated that *Rogers* did not apply in this case due to Defendants' commercial conduct. Dkt. 178 at 6. Still, on summary judgment, Defendants maintained that "there is a material dispute whether the RR/BAYC Project is an expressive work that must be resolved at trial" (Dkt. 199-1 at 12–13), despite the Court's Orders otherwise.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Defendants again refused to accept the Court's SJ Order, instead indicating an intent to re-litigate adjudicated issues at trial.  *See* Culp Declarations ISO Motions *In Limine* Nos. 1–3, 5, Dkt. 232-2; Dkt. 236-2; Dkt. 239-2; Dkt. 241-2.  As a result, Yuga Labs was forced to file motions *in limine* on previously-adjudicated issues.

Third, Defendants filed baseless and procedurally improper *ex parte* applications, which increased the costs of this litigation and burden on the Court. *See*, *e.g.*, Dkt. 108-1; Dkt. 114; Dkt. 115; Dkt. 119; Dkt. 207.

Fourth, Defendants were obstructive and evasive throughout their depositions, wasting time with rehearsed, non-responsive monologues on the same issues the Court already deemed irrelevant.  *See*, *e.g.*, Dkt. 271; Dkt. 321, Cahen Depo. Tr. at 101:7-102:4; 163:13-23; Dkt. 323, Ripps Depo. Tr. at 35:2-11; 44:19-45:11.

Fifth, Defendants made heinous attacks on Yuga Labs and its counsel throughout this litigation.  *See, e.g.*, Dkt. 149-50; Dkt. 149-51.

Sixth, Defendants used the litigation to "farm" for engagement on social media and harm Yuga Labs.  *See* JTX-938, JTX-1475, JTX-1568, JTX-1617, JTX-1620. They admit that "engagement = currency."  JTX-1603.  Worse still, Defendants' public disclosure of confidential material violated this Court's Protective Order (Dkt. 51) and intentionally harmed Yuga Labs.  *See* Dkt. 183; Dkt. 194.

## III.   ARGUMENT

### A.   Yuga Labs is Entitled to All of Defendants' Profits and Injunctive Relief.

#### 1.   Yuga Labs is Entitled to Disgorge Defendants' Profits.

The Lanham Act permits a prevailing plaintiff, "to recover . . . defendant's profits."  15 U.S.C. § 1117(a).  Because the Court has found Defendants liable for intentional infringement (SJ Order at 12), Yuga Labs is entitled to Defendants' profits from their infringing acts.

Ms. Kindler's calculations of $1,589,455 in Defendants' profits are unrebutted.  Accordingly, these profits are "presumed to be the result of the infringing

FENWICK & WEST LLP
ATTORNEYS AT LAW

activity," and Defendants fail to meet their "burden of showing which, if any, of its total sales are not attributable to the infringing activity." *Frank Lloyd Wright Found. v. Shmavonian*, No. 18-CV-06564-MMC, 2019 WL 3413479, at *1 n.2 (N.D. Cal. July 29, 2019). Without their own expert, any testimony by Defendants' witnesses attempting to describe any sales of RR/BAYC NFTs as not attributable to the infringing activity would be mere speculation. Instead, because *each* RR/BAYC NFT used the BAYC Marks, Defendants *cannot* show that any RR/BAYC NFT sale (or re-sale) was *not* the result of their infringing activity. Nevertheless, Yuga Labs is entitled to Defendants' profits due to their infringing activity regardless of whether purchasers were actually confused. *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one").

Regardless, $1,589,455 in Defendants' profits is a just award. *See* 15 U.S.C. § 1117(a). In fact, Ms. Kindler's calculation likely underestimates Defendants' actual profits to date because RR/BAYC NFTs remain available for resale on secondary markets, and thus Defendants can continue to accrue creator fees for these ongoing resales. Further, Defendants were unjustly enriched by avoided costs. Yuga Labs invested significant resources to develop its BAYC brand, trademarks, and NFTs. But Defendants effectively "free ride" on Yuga Labs' investments to attract consumers to their RR/BAYC NFTs. Defendants have also used their infringing activity to, admittedly, build themselves a bigger platform from which they can (and do) profit.

Thus, Yuga Labs is entitled to recover $1,589,455 in Defendants' profits.

**2.      Yuga Labs is Entitled to Statutory Damages per the ACPA.**

The Court should award Yuga Labs $200,000 in statutory damages for Defendants' cybersquatting violations under the ACPA.  *See* 15 U.S.C. § 1117(d).

Courts have "'wide discretion' in determining an appropriate amount of damages" under the ACPA.  *Bekins Holding Corp. v. BGT Trans, Inc.*, No. CV 09-08982 MMM (MANx), 2010 WL 11597623, at *10 (C.D. Cal. Nov. 19, 2010).  "'[C]ourts generally consider a number of factors . . ., including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities . . . and other behavior by the defendant evidencing an attitude of contempt towards the court.'"  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086 (C.D. Cal. 2012).

Here, Defendants' cybersquatting was willful and egregious.  Defendants intentionally infringed the BAYC Marks to deceive consumers.  *See* SJ Order at 12. Moreover, "Defendants acted with a bad faith intent to profit" from Yuga Labs' marks, including by "register[ing] multiple domain names—https://rrbayc.com/, https://apemarket.com/, and pages within OpenSea and Foundation—knowing that they were identical or confusingly similar to the BAYC Marks" and by "register[ing] their domains . . . for commercial gain to divert customers from purchasing BAYC NFTs." *See id.* at 15.  These circumstances alone support Yuga Labs' request for $200,000 in statutory damages.  *See Bekins*, 2010 WL 11597623, at *11 (defendant's willful and bad faith cybersquatting supported maximum amount of statutory damages).  Even more, Defendants concealed their infringing activities by registering the domain names through a proxy registration service.  SJ Order at 15.

Defendants also display a clear contempt towards the Court.  Despite the Court finding Defendants liable for cybersquatting (SJ Order at 15), they have continued to use and promote the domains to advertise their infringing RR/BAYC NFTs. Defendants' pattern of abusive and bad-faith litigation conduct and disregard of the authority of this Court and its proceedings warrants a high statutory damages award.

FENWICK & WEST LLP
ATTORNEYS AT LAW

See also infra Section III.C; *St. Luke's Cataract and Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1206 (11th Cir. 2009)* ("We agree and conclude that an ACPA statutory damages award . . . serves as a sanction to deter wrongful conduct"); *Verizon Cal. Inc. v. OnlineNIC, Inc.*, No. C08-2832, 2009 WL 2706393, at *6 (N.D. Cal. Aug. 25, 2009)* (awarding $50,000 per-violation award because of "noncompliance with court orders, as well as its systematically deceptive behavior").

### 3.    Yuga Labs is Entitled to Its Requested Injunctive Relief.

#### a.    Yuga Labs Meets All Requirements for an Injunction.

The Court has already determined that Yuga Labs is entitled to injunctive relief.  SJ Order at 13, 15.  A plaintiff is entitled to a permanent injunction where: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)*; *W. Watersheds Project v. Abbey, 719 F.3d 1035, 1054 (9th Cir. 2013)*; *JUUL Labs, Inc. v. Chou, No. CV 21-3056 DSF (PDX), 2023 WL 3886046, at *15 (C.D. Cal. June 8, 2023)* (granting permanent injunction where all four factors met).

First, Yuga Labs has suffered irreparable injury.  "Congress has recently made it easier for trademark plaintiffs to obtain an injunction, amending the Lanham Act to provide that such plaintiffs 'shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation.'" *Athena Cosmetics, Inc. v. AMN Distribution Inc.*, No. 20-cv-05526-SVW-SHK, 2022 WL 4596549, at *12 (C.D. Cal. Aug. 16, 2022)* (quoting 15 U.S.C. § 1116(a)).  Here, the Court found that Defendants infringed Yuga Labs' trademarks, and thus irreparable injury is presumed.  *See* SJ Order at 13.  Moreover, Defendants' infringing conduct has irreparably injured Yuga Labs by hindering its ability to control its reputation and brand.  *See* Dkt. 149-115 ¶¶ 11, 12; JTX-722 ¶¶ 11, 12; *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business
2  reputation and damage to goodwill could constitute irreparable harm.").

3     Second, monetary damages are inadequate to compensate for the irreparable
4  injury. "Injunctive relief is the remedy of choice for trademark . . . cases, since there
5  is no adequate remedy at law for the injury caused by a defendant's continuing
6  infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th
7  Cir. 1988). In addition, "[d]amage to reputation and loss of customers are intangible
8  harms not adequately compensable through monetary damages." Leadership Studies,
9  Inc. v. ReadyToManage, Inc., No. 2:15-cv-09459-CAS(AJWx), 2017 WL 2408118,
10  at *6 (C.D. Cal. June 2, 2017). Here, money alone cannot remedy Yuga Labs or
11  extinguish the ongoing harm and the continued threat that Defendants will repeat
12  their fraud. Indeed, Defendants' conduct suggests that they will continue to harm
13  Yuga Labs and use the very same web accounts that use the BAYC Marks to
14  accomplish that activity. See, e.g., JTX-1315, JTX-1317, JTX-1615, JTX-1613,
15  JTX-1614, JTX-1048. Defendants should not be able to retain those web accounts.

16     Third, the balance of hardships weighs heavily in favor of Yuga Labs.
17  Defendants have no legitimate interest in remaining free and able to readily infringe
18  Yuga Labs' trademarks, whereas Yuga Labs has a strong interest in being protected
19  from Defendants' illegal conduct that continues to harm its reputation and goodwill.
20  See JUUL Labs, 2023 WL 3886046, at *15 ("The balance of hardships weighs in
21  favor of an injunction. By granting injunctive relief, the Court is merely prohibiting
22  [defendant] from infringing [plaintiff's] trademarks").

23     Fourth, injunctive relief will serve the public interest by preventing consumer
24  confusion. See Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co., 534 F. App'x. 633, 636
25  (9th Cir. 2013) ("An injunction that prevents consumer confusion in trademark cases
26  . . . serves the public interest.").

27     Accordingly, Defendants should be permanently enjoined from creating,
28  marketing, promoting, or selling products or services (including RR/BAYC NFTs

FENWICK & WEST LLP
ATTORNEYS AT LAW

and Ape Market) that use the BAYC Marks.

> **b.** **Defendants Should Transfer to Yuga Labs Control of the Infringing Web Domains, Social Media Accounts, and Smart Contract.**

Yuga Labs is further entitled to injunctive relief requiring Defendants to transfer control of rrbayc.com, apemarket.com, rrbayc-v0.netlify.app, the @ApeMarketplace Twitter account, the @ApeMarketBot Twitter account, and the RR/BAYC smart contract (0x2EE6AF0dFf3A1CE3F7E3414C52c48fd50d73691e) to Yuga Labs. Without this injunctive remedy, allowing Yuga Labs to regain control over the instrumentalities of commerce that bear its BAYC trademarks, Yuga Labs cannot protect its brand and prevent future harm.

Courts routinely invoke the Lanham Act to order the transfer of domain names and social media accounts to remedy trademark infringement and cybersquatting injuries. *See* 15 U.S.C. § 1116; *Smith v. Guerilla Union, Inc.*, No. CV 18-9902 DSF (AGRx), 2019 WL 1517551, at *4 (C.D. Cal. Apr. 8, 2019) (granting permanent injunction to transfer infringing social media accounts and domain names); *Entrepreneur Media, Inc. v. Alfonso*, No. 8:21-cv-00644-DOC-(JDEx), 2021 WL 2941983, at *5 (C.D. Cal. July 12, 2021) (same).

In trademark cases involving infringing internet accounts, it is established that mark holders have a superior claim of ownership to those accounts relative to the infringer. *See Brookfield Commc'n v. W. Coast Ent. Corp.*, No. CV98-9074 CM (AJWx), 1999 U.S. Dist. LEXIS 23247, at *30 (C.D. Cal. Sep. 9, 1999) ("West Coast has been found to have infringed Brookfield's trademark rights; relative to West Coast, Brookfield is the domain name's rightful owner."); *Left Coast Wrestling, LLC v. Dearborn Int'l, LLC*, No. 3:17-cv-00466-LAB-NLS, 2018 WL 2328471, at *7, 17 (S.D. Cal. May 23, 2018) (ordering transfer of domain names and social media accounts bearing plaintiff's marks because plaintiff had "right to possession").[1]

---

[1] Independently, Defendants' cybersquatting also entitles Yuga Labs to an injunction ordering transfer of the domain names. *See* 15 U.S.C. § 1125(d)(1)(C) ("In any civil

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

The same logic extends to the NFT smart contracts.  Like domain names, smart contracts give consumers confidence in the authenticity and source of digital accounts.  Thus, mark holders have a superior claim of title to smart contracts bearing its trademarks.  Even more, smart contracts are immutable and live on in perpetuity. Defendants' infringing smart contract will always reference Yuga Labs' BORED APE YACHT CLUB and BAYC marks, and resulting confusion and harm will continue.  For example, consumers and Twitter bots tracking NFT transfers will continue to confuse sales of RR/BAYC NFTs as BAYC NFTs as they reflect the BORED APE YACHT CLUB and BAYC marks in the RR/BAYC smart contract's token tracker.  Thus, even if Defendants cease actively promoting their infringement of Yuga Labs' marks, and even if Defendants transfer the domain names and social media accounts to Yuga Labs, confusion from their infringement will continue unless Yuga Labs owns and controls the smart contract.[2]  *See Brookfield*, 1999 U.S. Dist. LEXIS 23247, at *29-30 (noting transfer should be granted even if some non-infringing use could be made).

Additionally, because nearly 500 RR/BAYC NFTs remain available to mint through the RR/BAYC smart contract, Defendants retain the tool to continue their infringement.  An injunction merely ordering Defendants to stop is insufficient, as demonstrated by their disregard of the Court's orders and authority.  Thus, Yuga Labs should own the smart contract to prevent any further infringing NFTs to exist.

Accordingly, the Court should order Defendants to transfer to Yuga Labs control of rrbayc.com, apemarket.com, rrbayc-v0.netlify.app, the @ApeMarketplace

---

action involving the registration, trafficking, or use of a domain name . . . a court may order . . . the transfer of the domain name to the owner of the mark."); *Wilens v. Doe Defendant No. 1.*, No. 3:14–cv–02419–LB, 2015 WL 4606238, at *18 (N.D. Cal. July 31, 2015) (holding transfer of domain names appropriate due to cybersquatting and "refusal to desist from" intentionally operating the infringing domains).

[2] It is also equitable to order transfer of the RR/BAYC smart contract to Yuga Labs when one of the reasons Yuga Labs changed its own BAYC smart contract to limit its ability to mint more BAYC NFTs was to combat the perceived lack of exclusivity of BAYC NFTs in light of the presence of RR/BAYC NFTs in the market.

Twitter account, the @ApeMarketBot Twitter account, and the RR/BAYC smart contract (0x2EE6AF0dFf3A1CE3F7E3414C52c48fd50d73691e).

### B.    Yuga Labs is Entitled to Costs for Defendants' Lanham Act Violations.

The prevailing party of a Section 1125 Lanham Act claim is entitled to "the costs of the action."  15 U.S.C. § 1117(a).  This Court determined that Defendants intentionally infringed the BAYC Marks in violation of 15 U.S.C. § 1125(a) (SJ Order at 12), and that Defendants cybersquatted with bad faith intent in violation of 15 U.S.C. § 1125(d) (SJ Order at 14–15).  Thus, Yuga Labs is entitled to its costs.

### C.    Yuga Labs is Entitled to Attorneys' Fees for Defendants' Lanham Act Violations Because this is an Exceptional Case.

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  A case is exceptional if, under the "totality of the circumstances," it is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *SunEarth, Inc. v. Sun Earth Solar Power Co.,* 839 F.3d 1179, 1180 (9th Cir. 2016); *Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *4 (C.D. Cal. Feb. 24, 2022).  Courts consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need . . . to advance considerations of compensation and deterrence."  *SunEarth*, 839 F.3d at 1181 (cleaned up).

Here, the totality of circumstances make for an exceptional case.  First, Defendants intentionally infringed Yuga Labs' BAYC Marks and acted with a bad-faith intent to profit from their use of the marks.  SJ Order at 12, 15; *see also* JTX-1574.  Even after the filing of this lawsuit, Defendants continued to promote their infringing RR/BAYC NFTs and Ape Market.  *See*, *e.g.*, JTX-1048.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

Second, Yuga Labs' substantive strength in its litigating position, as evidenced by the Court's Order on Summary Judgment, stands out from the bulk of trademark cases. *See* SJ Order at 22; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'"). Ignoring the clear strength of Yuga Labs' case, Defendants relentlessly advanced frivolous legal theories (*e.g.*, RR/BAYC NFTs as an "art" project intended to criticize Yuga Labs, Yuga Labs abandoned its rights to the BAYC Marks, a frivolous counterclaim for declaratory judgment of no defamation, etc.) that were rendered moot and irrelevant by multiple Orders from the Court (*see*, *e.g.*, Dkt. 62 and SJ Order). Defendants' repeated attempts to re-litigate issues already addressed and rejected by the Court unnecessarily complicated litigation and make this an exceptional case. *See San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x. 674, 676 (9th Cir. 2020) (affirming exceptional case where defendants litigated in an "unreasonable manner" such as its "failure to comply with court rules" and "persistent desire to re-litigate issues already decided").

Third, Defendants and their counsel engaged in a pattern of unreasonable and obstructive litigation and discovery conduct that consistently crossed the line from advocacy into bad faith. For instance, Defendants filed baseless and procedurally improper *ex parte* applications, increasing the costs of this litigation and the burden on the Court. Defendants also filed a meritless motion to stay proceedings (Dkt. 118) after months of unnecessary delay. Further, Defendants were obstructive and evasive throughout their depositions, which unnecessarily complicated the preparation of this case for trial. *See* Dkt. 271, 321, 323. Such conduct supports an exceptional case finding. *See Jackson*, 2022 WL 2155975, at *5 (finding exceptional case from "antagonistic discovery conduct" that was "improperly motivated and sought to drag out or obfuscate proceedings," such as deposition conduct where the defendant's "preparation, recollection and candor appear to have been marginal at best").

Fourth, Defendants' heinous statements about Yuga Labs and its counsel during litigation, including calling Yuga Labs' counsel "criminals" who support "racism, antisemitism, beastiality, pedophilia and using cartoons to market drugs to young children" (Dkt. 149-51), were egregious and far exceed the bounds of acceptable conduct. *See Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004) (finding "no difficulty" holding defendant's harassing and racist remarks towards plaintiff and their counsel an exceptional case). Throughout this case, Yuga Labs' counsel asked opposing counsel to reason with their clients and turn down the temperature of the improper attacks and threats to our safety. Defense counsel failed to take any responsibility or control, and Defendants maintained their tactics of ridiculous attacks throughout the entire case.

Due to the exceptional nature of this case, the Court should award Yuga Labs its reasonable attorneys' fees for its Lanham Act claims.

### D. Yuga Labs is Entitled to Attorneys' Fees and Costs Related to Defendants' Dismissed and Adjudicated Copyright Claims.

The Copyright Act provides for an award of full costs and reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505. Here, the Court granted Yuga Labs' motion to dismiss Defendants' two counterclaims of non-infringement under the Declaratory Judgment Act (Dkt. 156 at 13–14). The Court also granted Yuga Labs' motion for summary judgment on Defendants' counterclaim under Section 512(f) of the Digital Millennium Copyright Act (SJ Order at 21). Accordingly, because Yuga Labs is the prevailing party on Defendants' copyright counterclaims, it is entitled to its full costs and fees for those claims.

## IV. CONCLUSION

For the foregoing reasons, Yuga Labs requests the Court award it $1,589,455 in Defendants' profits; $200,000 in statutory damages; its costs and fees, and any interest. Yuga Labs also requests the Court grant its injunctive relief request.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Dated:  July 17, 2023         FENWICK & WEST LLP

2

3                             By: */s/ Eric Ball*

4                                 Eric Ball
                                Attorneys for Plaintiff

5                                 YUGA LABS, INC.

6

7 **CERTIFICATE OF COMPLIANCE**

8       The undersigned, counsel of record for Plaintiff Yuga Labs, Inc., certifies that

9 this brief contains <u>4,828</u> words, which:

10       <u>XX</u> complies with the word limited of L.R. 11-6.1.

11

12 Dated:  July 17, 2023         FENWICK & WEST LLP

13

14                             By: */s/ Eric Ball*

15                                 Eric Ball
                                Attorneys for Plaintiff

16                                 YUGA LABS, INC.

17

18

19

20

21

22

23

24

25

26

27

28