Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                    Plaintiff,<br><br>        v.<br><br>Ryder Ripps and Jeremy Cahen,<br><br>                    Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**MR. RIPPS AND MR. CAHEN'S INITIAL PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW**<br><br>Judge: Hon. John F. Walter<br><br>Trial Date:  July 31, 2023 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

This matter is before the Court following the trial of *Yuga Labs, Inc. v. Ryder Ripps and Jeremy Cahen*, 2:22-cv-04355-JFW-JEM.   The Court held a one-day bench trial on the issue of equitable remedies.  The Court, having considered the pleadings and evidence presented at trial as well as the arguments of both parties' counsel, makes the following findings of facts and conclusions of law:

## I.      FINDINGS OF FACT

1.      In May 2022, Defendants Ryder Ripps and Jeremy Cahen collaborated on what they intended to be a satirical parody NFT collection called the "Ryder Ripps Bored Ape Yacht Club" ("RR/BAYC").

2.      Mr. Ripps and Mr. Cahen intended RR/BAYC as a form of protest designed to educate people on the nature of non-fungible tokens ("NFTs"), and what they saw as problematic content in Plaintiff Yuga Labs, Inc.'s ("Yuga") "Bored Ape Yacht Club" ("BAYC") NFT collection.

3.      Mr. Ripps has had a career as an artist, during which he had previously created satirical art projects spotlighting problematic societal issues.  Ripps Decl. ¶¶ 15-26.

4.      Mr. Ripps's artistic contributions have been recognized by the media.  He was called by the *New York Times* "one of the most influential digital artists of the past decade," based in part on his work on the RR/BAYC project.  Ripps Decl. ¶ 21; JTX-2333.

5.      Defendants' contemporaneous communications about the RR/BAYC Project confirm that their intent was to use RR/BAYC to criticize rather than to confuse.  For example, in private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Defendants discussed their intended artistic purpose of the project, their intention that it would spread criticism of Yuga, and their intention that

social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct.  Ripps Decl. ¶¶ 144, 147; Cahen Decl. ¶ 131.

6.     Defendants took steps to make clear to collectors and to the public that RR/BAYC was intended as a protest art project.  Ripps Decl. ¶¶ 158-176; Cahen Decl. ¶¶ 158-176; Dkt. 197-1 ¶ 230.

7.     For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred (Ripps Decl. ¶ 110; Cahen Decl. ¶ 144)—included an explanation of the artistic intent for the project.  Ripps Decl. ¶¶ 101-103; Cahen Decl. ¶¶ 138-139, 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085.

8.     Collectors using the rrbayc.com website were required to read and click through a disclaimer acknowledging the artistic purpose of the project before they were allowed to commission an NFT.  *See* Ripps Decl. ¶¶ 106-109

9.     Although Defendants understood that these requirements made it harder for collectors to commission an NFT piece through the project, Mr. Ripps insisted on them so that the artistic purpose of his work would be clear to participants.  *See* Lehman Depo. 59:25-60:24 ("Q. … Why was the artist statement ultimately included, if it had a negative impact on usability? …  A.   … Ryder wanted it and so he had the final call.").

10.     Defendants' online discussion of the RR/BAYC project confirms their intent.  In those discussions, Defendants discussed what they believed to be inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157; Cahen Decl. ¶¶ 151, 208-209; Dkt. 197-1 ¶¶ 203-04.

11.     Defendants had a reasonable belief that the use of Yuga's marks in the RR/BAYC project was permissible as protest art.  At the time Defendants launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191; Hickman Decl. ¶ 33; JTX 2243; JTX 2244.  Before

suing Defendants over the RR/BAYC project, Yuga had not taken steps to stop these third-party projects from using Yuga's marks.  Ripps. Decl. ¶ 185; Cahen Decl. ¶ 206; Muniz Depo. at 155:9-16.

12.     Yuga encouraged the public to use the BAYC artwork and to be creative with BAYC's intellectual property, including publicly stating "we have none of those rights" in the Bored Ape Yacht Club.  Cahen Decl. ¶ 189; Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673.

13.     Ryan Hickman, who collaborated with Defendants on the RR/BAYC project, owned a BAYC NFT at the time of the project.  Hickman Decl. ¶¶ 19-22.

14.     Based on Yuga's conduct, Defendants reasonably believed that the RR/BAYC project was permissible.  Ripps Decl. ¶ 191; Cahen Decl. ¶¶ 206, 212; Hickman Decl. ¶¶ 24-40.

15.     None of the correspondence that Defendants received from actual RR/BAYC NFT collectors indicated that any commissions or secondary sales were due to confusion as to the source or the nature of the RR/BAYC NFTs.  Ripps Decl. ¶¶ 196-207

16.     Rather, these correspondence from collectors expressed gratitude and support for the artistic project, the artistic statement, and the Defendants' criticism of Yuga.  Ripps Decl. ¶¶ 198-205.

17.     For example, one collector wrote:

> Hope this email convinces you to accept my reservation for rrbayc 4878.  I'm an artist, professor and I've been interested in the work you've been doing.  Glad you're pointing out what bayc is doing and glad you make the art you do.

Ripps Decl. ¶ 199; JTX-2592.

18.     Another collector wrote:

> You have done a very positive thing bringing attention to BAYC.  These people need to be shown for what they are!  I

bought one of yours on the secondary, and it is a protest purchase!

Ripps Decl. ¶ 204, JTX-2035.

19.     A supporter stated that Defendants were "truly iconic in my eyes and something that the true artist[s] in this space deserve."  Ripps Decl. ¶ 202; JTX-2595.

20.     Collectors of RR/BAYC NFTs referred to the project as "art" or to Mr. Ripps's "work."  Ripps Decl. ¶ 203; JTX-2590.

21.     Collectors of RR/BAYC NFTs encouraged the project's goals of criticizing Yuga's imagery and educating people about the nature of NFTs.  Ripps Decl. ¶¶ 200-201; JTX-2596; JTX-2599.

22.     As its corporate representative confirmed, Yuga has not identified a single person who actually obtained an RR/BAYC NFT that was confused about its origin. Muniz Depo. at 260:9-19 ("Whether there is a specific person that was confused and purchased, I don't know of any at this exact time.").

23.     Yuga's alleged evidence of profits resulting from actual confusion is a set of social media "bot" accounts, out-of-context jokes, sarcastic comments made by fans of the Defendants (Cahen Decl. ¶¶ 226-253; Ripps Decl. ¶¶ 210-222).  They do not show profits resulting from actual confusion.

24.     Profits for all RR/BAYC NFT reservations were split with Mr. Hickman and Mr. Lehman—including for pre-RSVP contract reservations that Yuga's calculations fail to apportion—both of each receiving 15% of profits.  Ripps Decl. ¶¶ 129-135; Cahen Decl. ¶¶ 177-178.

25.     Yuga's expert, Laura Kindler, was incorrect in her calculation that Defendants earned a total of $1,589,455 in profits. Dkt-287-10, p. 1.

26.     Yuga seeks $106,055 amount for alleged theoretical value of NFTs that, either, Defendants currently hold and have never sold, or, for NFTs Defendants have

never actually made.  Dkt. 149-117 ¶ 74.  The value of these unmade and unsold potential NFTs is not profit.

27.    Prior to implementation of the RSVP contract, Mr. Ripps distributed Mr. Hickman and Mr. Lehman's share of profits in the amount of $108,344.  Ripps Decl. ¶¶ 132-135.  Yuga improperly includes in its profits calculation $108,344 in pre-RSVP contract transfers for Mr. Hickman and Mr. Lehman.  Ripps Decl. ¶¶ 132-135.

28.    The RSVP contract also distributed $93,135.62 in automated refunds. Ripps Decl. ¶¶ 174-175.  Yuga improperly includes in its profits calculation $93,135.62 in automated refunds executed through the RSVP reservation contract. Ripps Decl. ¶¶ 174-175.

29.    Defendants also incurred $15,136.14 is miscellaneous expenses associated with wages, a computer, and travel expenses.  Ripps Decl. ¶ 136; Cahen Decl. ¶¶ 174-176.  Yuga improperly includes into its profits calculation this $15,136.14 that were spent on compensation to Mr. Ripps's assistant on the project, computing expenses associated with creating the NFTs, or travel expenses for the project.  Ripps Decl. ¶ 136; Cahen Decl. ¶¶ 174-176.

30.    Defendants' liability arguments, though ultimately unsuccessful on Defendants' motion to dismiss and at summary judgment, were made reasonably and in good faith.

31.    Defendants infringement was not willful infringement.  *See* Dkt. 149 at 13 (Yuga seeking at summary judgment a finding of exceptional case of "intentional infringement"); Dkt. 225 at 13 (denying Yuga's motion); Dkt. 236 at 13 (Yuga conceding that it is not pursuing a claim of willful infringement); Dkt. 315-1 at 2 ("Yuga Labs is withdrawing all legal remedies").

32.    Defendants have not engaged in litigation misconduct.

33.    Yuga originally asserted and then later withdrew a claim for the legal remedy of actual damages.  Dkt. 315-1 at 2 ("Yuga Labs is withdrawing all legal

remedies and will proceed to trial solely on its prayer for equitable remedies as to the remaining active claims – Claim 1 and Claim 3").

34.    In the course of this litigation, Yuga has made settlement demands including conditions that are unreasonable.  Hearing Transcript June 16, 2023, at 9:9-12.

35.    Yuga engaged in conduct in the litigation of this case that precludes a finding of exceptional case in its favor.

36.    For example, Yuga tried to preclude relevant discovery by invoking the "apex witness" rule improperly.  The Court found Yuga's motion "deficient on the merits" because the witnesses at issue were "the only people who have knowledge of the creation of the marks."  Dkt. 77 at 2.  The Court accordingly ordered that Yuga employees Wylie Aronow and Greg Solano appear for depositions on January 9 and 11 respectively (excusing Mr. Solano only if he had medical complications).  *Id.*  Neither witness appeared as ordered.

37.    Yuga also improperly designated the entirety of third-party Ryan Hickman's deposition testimony as HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY in violation of the Court's protective order.  *See* Dkt. 123-2.  The Court ordered complete de-designation of the transcript and found that Yuga was wrong to "hold the transcript hostage."  Dkt. 133 at *2.

38.    Throughout the course of this litigation, Yuga also made repeated improper requests for sanctions against the individual defendants.  Specifically, Yuga unsuccessfully asked the Court to impose sanctions six times.  *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. Each request was denied.

## II.   CONCLUSIONS OF LAW

### A.   Disgorgement of Profits Is Not Available as a Remedy

39.   An infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).

40.   Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022).

41.   Disgorgement is not an available remedy because neither Defendant is a "conscious wrongdoer."

42.   Separately, disgorgement is also unavailable because Yuga has not shown "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962).

43.   Legal remedies were available in this case:  Yuga expressly asserted and offered expert testimony in support of legal remedies (including a claim for actual damages), which it then voluntarily relinquished.  Dkt. 315-1 at 2 ("Yuga Labs is withdrawing all legal remedies").

44.   Having abandoned available legal remedies, Yuga cannot obtain disgorgement.  *See Hunting World Inc. v. Reboans, Inc.*, No. C 92-1519 (BAC), 1994 WL 763408, at *2-3 (N.D. Cal. Oct. 26, 1994) ("[A]lthough Plaintiff has waived the right to collect damages, this does not render the claim purely equitable because, as discussed above, this is a statutory claim.  Again, because the statutes provide adequate remedies, a purely equitable claim may not be maintained.").

### B.   No Profits Are Attributable to Infringement

45.   Even if disgorgement of profits were available, Yuga would only be entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds

by *SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) versus revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id*.

46. None of the revenue on which Yuga bases its claim of profits is "attributable to the infringing activity" *Lindy Pen,* 982 F.2d at 1408, or to the "appeal of [Yuga's] symbol," *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942).

**C.   Only the Statutory Minimum Cybersquatting Damages Are Available**

47. Statutory damages are a legal remedy for which there is a jury trial right. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998) ("The right to a jury trial includes the right to have a jury determine the *amount* of statutory damages") (emphasis in original).

48. A jury is not required when a plaintiff elects to accept the minimum amount of statutory damages for cybersquatting. *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011). Awarding anything more than the statutory minimum is a legal remedy. *See Versace v. Awada*, CV 03-3254-GAF, 2009 WL 10673371, at *7 (C.D. Cal. Sep. 4, 2009) ("Strictly construing Rule 38, the Court will not permit Plaintiff to withdraw its demand for a jury trial because Defendants do not consent, and because the law holds clearly that Defendant has a right to a jury determination of statutory damages.").

49. Having abandoned "all legal remedies," Yuga cannot obtain more than the statutory minimum on its cybersquatting claim. *See Daimler AG v. A-Z Wheels LLC,* 498 F. Supp. 3d 1282, 1290 (S.D. Cal. 2020) (holding that award above minimum is a jury issue) (citing *Dream Games of Ariz. Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009)); *Curtis v. Illumination Arts, Inc.*, 957 F. Supp. 2d 1252,

1  1260 (W.D. Wash. 2013) (holding that statutory damages are a jury issue) (citing

2  *BMG Music v. Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005)).

3      50.    Yuga is entitled to the statutory minimum damages of $1,000 for each of

4  the two cybersquatting violations that the Court found (Dkt. 225 at 13-15), for a total

5  of $2,000.  *See* 15 U.S.C. § 1117(d) (permitting "award of statutory damages in the

6  amount of not less than $1,000").

7  **D.**    **This Case is Not Exceptional**

8      51.    Exceptional case findings are rare and not the norm.  *Octane Fitness,*

9  *LLC*, 572 U.S. at 553 (defining exceptional as "uncommon, rare and not ordinary")

10  (internal quotations omitted).

11      52.    Courts determine if a case is exceptional by considering the totality of the

12  circumstances and evaluating whether the case is "one that stands out from others with

13  respect to the substantive strength of a party's litigation position (considering both the

14  governing law and the facts of the case) or the unreasonable manner in which the case

15  was litigated."  *SunEarth, Inc.*, 839 F.3d at 1180 (quoting *Octane Fitness, LLC v.*

16  *ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

17      53.    As the name implies, the case must present something "exceptional" to

18  depart from the normal rule that parties pay their own costs.  *See Watec Co. v. Liu*, 403

19  F.3d 645, 656 (9th Cir. 2005) (reversing district court because it was only based on a

20  finding of intentional infringement, but not the kind of extreme conduct necessary for

21  an exceptional case finding).

22      54.    Plaintiffs bear the burden to prove that a case is exceptional.  *Caiz v.*

23  *Roberts*, No. 15-CV-09044-RSWL-AGRx, 2017 WL 830386 at *5 (C.D. Cal. Mar. 2,

24  2017).

25      55.    This is not an exceptional case.

26      56.    Defendants put forward defenses that were objectively reasonable, and

27  Defendants were justified in defending this litigation through trial, particularly given

28

1  Yuga's demand for terms that Yuga could never attain through this litigation.  *See*
2  *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058-ODW (JPRx), 2021 WL
3  2414856 at *2 (C.D. Cal. June 14, 2021) ("Courts in this district have held that a
4  party's litigation position must be objectively meritless for a case to be
5  exceptional…").

6      57.    Defendants advanced reasonable arguments in favor of their positions on
7  both liability and damages.  *See Caiz*, 2017 WL 830386, at *5 (holding that mere
8  "lack of success" does not support an exceptional case finding).

9      58.    Yuga's own conduct in this litigation precludes a finding that this case is
10  exceptional in Yuga's favor.  *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022) ("When
11  a party seeking equitable relief has violated conscience, or good faith, or other
12  equitable principle, in his prior conduct, then the doors of the court will be shut against
13  him.") (internal quotations and citations omitted); *SunEarth, Inc.*, 839 F.3d at 1180-81
14  (holding that an exceptional case finding is an exercise of the court's equitable
15  powers).

19  Dated: _____        _____
20                           Hon. John F. Walter
                    United States District Jude

Dated: July 17, 2023

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document is in compliance with the word limit for Points and Authorities set forth in Local Rule 11-6.1.

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Case No. 2:22-cv-04355-JFW-JEM       -11-       PROPOSED FINDINGS OF FACTS AND
                                                CONCLUSIONS OF LAW

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's EFC system on July 17, 2023.


By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000