UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

-oOo-

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

YUGA LABS, INC.

    Plaintiff/Counter-Defendant,

    v.                                         No. 2:22-cv-04355-JFW

RYDER RIPPS, JEREMY CAHEN,

    Defendants/Counter-Plaintiffs.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

COURT TRIAL - VOLUME 2

LOS ANGELES, CALIFORNIA

JULY 31, 2023

_____

SUZANNE M. McKENNON, CRR, RMR
UNITED STATES COURT REPORTER

UNITED STATES COURTHOUSE
350 W 1st STREET, ROOM 3411
LOS ANGELES, CALIFORNIA 90012
(213) 894-3913
suzanne@ears2hands.com

```
1    APPEARANCES:

2


3    On Behalf of the Plaintiff and Counter-Defendant:

4         ERIC J. BALL, Attorney at Law
          KIMBERLY I. CULP CLOYD, Attorney at Law
5             Fenwick and West LLP
              801 California Street
6             Mountain View, California 94041

7


8         MOLLY R. MELCHER, Attorney at Law
          ETHAN M. THOMAS, Attorney at Law
9         ANTHONY M. FARES, Attorney at Law
              Fenwick and West LLP
10            555 California Street, 12th Floor
              San Francisco, California 94104
11

12


13   On Behalf of the Defendants and Counter-Plaintiffs:

14        LOUIS W. TOMPROS, Attorney at Law (pro hac vice)
              Wilmer Cutler Pickering Hale and Dorr LLP
15            60 State Street
              Boston, Massassuchetts 02109
16

17
          DEREK A. GOSMA, Attorney at Law
18            Wilmer Cutler Pickering Hale and Dorr LLP
              350 South Grand Avenue, Suite 2400
19            Los Angeles, California 90071

20

21

22

23

24

25
```

**INDEX**

**WITNESSES**

FOR THE DEFENSE:

|  | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| **JEREMY CAHEN** |  |  |  |  |
| By Mr. Gosma |  | 260 |  |  |
| **RYDER RIPPS** |  |  |  |  |
| By Mr. Tompros | 266 |  | 269 |  |
| By Mr. Ball |  | 267 |  |  |

**EXHIBITS**

RECEIVED

Docket 346
Exhibits JTX-801, page 39, though JTX-2599, page 41     11

Suzanne M. McKennon, CSR, CRR, RMR
United States Court Reporter
suzanne_mckennon@cacd.uscourts.gov    (213) 894-3913

```
 1        (Proceedings commenced on July 31, 2023, at 2:24 p.m.)
 2                            JEREMY CAHEN,
 3   previously sworn, called on behalf of the Defense, testified:
 4            THE COURT:  All right.  You may resume your
 5   examination of this witness.
 6            MS. CULP:  Thank you, Your Honor.  I have no further
 7   questions for Mr. Cahen.
 8            THE COURT:  I take it you have some questions.
 9            MR. GOSMA:  Yes, Your Honor.
10                        REDIRECT EXAMINATION
11   BY MR. GOSMA:
12   Q.   Ready?
13   A.   Yes, sir.
14            MR. GOSMA:  May I proceed, Your Honor?
15            THE COURT:  Yes.
16   BY MR. GOSMA:
17   Q.   Good afternoon, Mr. Cahen.
18   A.   Hello.
19   Q.   I would like to start with JTX-801 at 185, please.
20   A.   It's quite small on my screen here.
21   Q.   Sure.  If we can zoom in on the portion that begins with
22   the world "goals" so it's one of your -- you were asked about
23   these statements on Cross-examination; correct?
24   A.   I think I was specifically asked about the first line of
25   this here.
```

```
1   Q.   Right.  You were asked about your motivation for minting
2   out the RR/BAYC collection.
3        Do you recall that?
4   A.   Yes, sir.
5   Q.   What was your motivation for wanting to mint out the
6   collection?
7   A.   Well, I think the way that I testified about this
8   specifically is that my motivation was about bringing awareness
9   to a protest and bringing awareness to, you know, a protest and
10  a parity and a satire, among other things, anti-Semitism,
11  racism, and mass financial fraud.  That's how I recall my
12  response.
13  Q.   Sure.  Now, if we could, turn to JTX-801 at 375.
14       And if we could scroll down, there is a text from Mr. --
15  yeah, so it starts --
16            THE COURT:  If you walk away from the microphone, we
17  can't understand what you are saying.
18            MR. GOSMA:  Apologies, Your Honor.  Now I'll get too
19  close to it.
20       If we can start with the Tweet of the text from Mr. Ripps
21  that says, "Are they minted out?" and then the following
22  response.
23            THE COURT:  This is 801-375?
24            MR. GOSMA:  Yes, Your Honor.
25            THE COURT:  All right.
```

```
1    BY MR. GOSMA:
2    Q.   So you were asked about this statement on
3    Cross-examination as well; right, Mr. Cahen?
4    A.   Yes, sir, that's correct.
5    Q.   And you had a disagreement about whether the collection,
6    in fact, did mint out or not?
7         Do you recall that?
8    A.   Disagreement with who?
9              THE COURT:  Why don't you just ask a question?
10             MR. GOSMA:  Okay.
11   Q.   Did you, in fact, mint out the RR/BAYC collection?
12   A.   No.
13   Q.   And why not?
14   A.   I don't remember the specific reason why, but we just
15   didn't do it.  There's 10,000 of them total that could be
16   minted in theory, and there is not 10,000 in circulation.  So
17   that is an easy question to answer.
18   Q.   Now, you were asked about a lot of social media posts and
19   Tweets on Cross-examination; right?
20   A.   Yes, sir.
21   Q.   And what social media platform do you primarily use?
22   A.   Twitter, definitely.  Well, I guess now they call it X as
23   of like a week ago, but I think it's the same thing.
24   Q.   And how frequently do you post on Twitter?
25   A.   Sometimes hundreds of times a day.
```

```
 1  Q.   And what type of content do you post?
 2  A.   I post a wide variety of content.  Sometimes it's
 3  educational, sometimes it satirical, sometimes it's technical,
 4  sometimes it's about news, posting conversations, creating
 5  awareness about different subjects, occasionally it involves
 6  activism and protests as well, so all kinds of different
 7  things.  And sometimes it can be provocative as well.
 8  Q.   And so you talked about activism and protests.  What
 9  specifically do you find yourself protesting against?
10  A.   In the context of Twitter --
11          THE COURT:  Are talking about just in general what he
12  protests on a weekly, daily basis?
13          MR. GOSMA:  Yes, Your Honor.  I am trying to explain
14  the context of Mr. Cahen's involvement in this project --
15          THE COURT:  Well, you have to be more specific to the
16  question.  I am not going to sit here and listen to what he
17  Tweets for the last month.
18          MR. GOSMA:  Sure.
19  Q.   Well, with respect to RR/BAYC, in particular, what was
20  your motivation for getting involved with the project?
21          THE COURT:  That's been asked and answered.  We've
22  already went over that.
23  BY MR. GOSMA:
24  Q.   Okay.  You were asked about ApeMarket on Cross-examination
25  extensively; right, sir?
```

```
1    A.   Yes.
2    Q.   Briefly what is ApeMarket?
3    A.   ApeMarket was a concept for an NFT marketplace that we
4    wanted to create which would have created an opportunity for
5    people to transact with watching assets at significantly
6    reduced fees, basically infrastructure to help save people in
7    the community money.
8    Q.   Before this lawsuit did you think there was any issue with
9    using the word "ape"?
10   A.   In my opinion, there is no issue with using the word
11   "ape."
12   Q.   Why not?
13   A.   Because it is a word that describes, like, one of the most
14   common animals on the entire plant.  What?  Am I not going to
15   be allowed to say "apple" or "cucumber"?  You know, it seems
16   pretty reasonable that I would be allowed to say the word
17   "ape."
18   Q.   What about in the context of crypto?  What does "ape"
19   mean?
20   A.   I think it means different things.  But I think there is a
21   colloquialism used which people use as like "I aped into
22   something."
23   Q.   And what does that mean?
24   A.   Like, I invested or I participated.  Like, I just jumped
25   in.  Maybe, like, a synonym for it.
```

```
 1   Q.    And where else have you seen the word "ape" used in the
 2   crypto context?
 3   A.    Definitely in the context of Bored Ape Yacht Club.
 4   Q.    Anywhere else?
 5   A.    Other pieces of artwork or NFT collections, I guess, you
 6   could say.
 7   Q.    Sure.  And last question, did you make any money from
 8   ApeMarket?
 9   A.    ApeMarket never existed so I did not make any money from
10   it and neither did anyone else.
11   Q.    And did you intend to confuse anyone with RR/BAYC?
12   A.    Not only did I not intend to confuse anyone, but I know
13   for certain that there was never a single instance of confusion
14   as well.
15   Q.    So are you aware of anyone anywhere who bought an RR/BAYC
16   believing it was made by Yuga?
17   A.    The logo for RR/BAYC essentially says, "This is a Nazi
18   log," so definitely and resolutely, no.
19              MR. GOSMA:  Thank you.  No further questions.
20              THE COURT:  All right.  May this witness step down?
21              MS. CULP:  From the plaintiff's perspective, yes,
22   Your Honor.
23              THE COURT:  All right.  Call your next witness.
24              MR. TOMPROS:  Your Honor, for its final witness, the
25   defendants call Ryder Ripps.
```

```
1              THE COURTROOM DEPUTY:  Raise your right hand.
2         Do you solemnly swear that the testimony you shall give in
3    the cause now before this Court shall be the truth, the whole
4    truth, and nothing but the truth so help you God?
5              THE WITNESS:  I do.
6              THE COURTROOM DEPUTY:  Thank you.  Be seated.  Please
7    state and spell your name for the record.
8              THE WITNESS:  My name is Ryder, R-Y-D-E-R; Ripps,
9    R-I-P-P-S.
10             THE COURT:  All right.  You may proceed.
11                            RYDER RIPPS,
12    called by and on behalf of the Defense, testified as follows:
13                         DIRECT EXAMINATION
14   BY MR. TOMPROS:
15   Q.   Mr. Ripps, in the table in front of you is a Declaration.
16        Do you have that?
17   A.   I do.
18   Q.   Would you turn to page 27 and let us know whose signature
19   that is.
20   A.   That is my signature.
21   Q.   Did you sign this signature -- strike that.
22        Did you sign this document under penalty of perjury?
23   A.   I did.
24             THE COURT:  All right.  The Declaration will be
25   received into evidence as well as the exhibits, and those
```

1  exhibits begin with JTX-801 on page 39 through and including
2  JTX-2599 on page 41.
3       And there are no objections to the Declaration, so you may
4  cross-examine.
5       (Declaration [Docket 346] and Exhibits JTX-801, page 39,
6       though JTX-2599, page 41, were received into evidence.)
7                         CROSS-EXAMINATION
8  BY MR. BALL:
9  Q.   Good afternoon, Mr. Ripps.
10 A.   Good afternoon.
11 Q.   On January 17, 2023, you filed a Declaration under penalty
12 of perjury testifying that you did not have further documents
13 responsive to discovery requests; right?
14 A.   I believe so.
15 Q.   Yet you continued to produce documents after that
16 Declaration; correct?
17 A.   I don't feel that they were relevant if I have produced
18 documents after.
19 Q.   On February 2, you produced documents responsive to the
20 discovery requests.
21 A.   Again, I think the question was if I had produced
22 everything I thought was relevant, and I believe I did.
23 Q.   And again on March 23, 2023, you produced more documents,
24 didn't you?
25 A.   We produced everything your guys asked for, yes.

1  Q.    But you didn't produce -- on March 23, 2023, you produced
2  some of your texts with Mr. Cahen; correct?
3  A.    I would have to clarify the dates again, but I did produce
4  a lot of text messages with Mr. Cahen about this project.
5  Q.    You produced those text messages, that you withheld
6  throughout this case, including when you testified that you had
7  no responsive documents on January 17, 2023; correct?
8  A.    I think what we -- the question was all communications
9  that relate to the creation of RR/BAYC, which we felt was very
10 much in the group chat that was called RR/BAYC.  And we
11 produced that, which you guys have extensively relied on.
12 Q.    And in that production on May 23, 2023, months after you
13 testified that you had produced all responsive documents, you
14 included a text from Mr. Cahen where he said, "You'll make,
15 like, a million dollars straight up," didn't you?
16 A.    Okay.
17 Q.    So you withheld that text until two months after you said
18 under oath that you had produced all responsive documents?
19 A.    I don't find that fact to be -- one, I don't find it to be
20 relevant to this nor do I really find it to have anything to do
21 with the RR/BAYC project.
22 Q.    When he says, "You'll make, like, a million dollars
23 straight up from selling out your collection," you don't
24 have -- that has nothing to do with the RR/BAYC project?
25 A.    Not the development or anything like that.

1 Q. That was two months after your Declaration where you said
2 to the Court and to us that you had produced all the responsive
3 documents?
4 A. Okay.
5     MR. BALL: Nothing further, Your Honor.
6     THE COURT: All right. Redirect?
7     MR. TOMPROS: Yes, Your Honor.
8                   REDIRECT EXAMINATION
9 BY MR. TOMPROS:
10 Q. Mr. Ripps, are you aware that there were motions to compel
11 document productions that happened in the course of this case?
12 A. Yes, I am aware.
13 Q. And did you read all of the Court's orders in this case?
14 A. No. I hire lawyers to do that.
15 Q. And did you in -- review what happened in response to
16 those motions to compel?
17 A. Can you repeat that again?
18 Q. Sure. You know there were motions to compel. Do you know
19 whether those motions to compel were granted or denied or what?
20 A. No, not really.
21 Q. Do you know whether Yuga sought sanctions against you in
22 this case?
23 A. I have heard that. I heard it was six times or something
24 like that.
25 Q. And were the motions -- were Yuga's motions for sanctions

```
1   on these discovery issues granted or denied?
2   A.   I believe they were denied.
3   Q.   And, Mr. Ripps, the text messages that you produced in
4   this case include the RR/BAYC chat; right?
5   A.   Yes.  We produced everything that we could, despite the
6   fact that Yuga produced nothing?
7   Q.   Exhibit Number JTX-801 is the RR/BAYC -- one of the
8   RR/BAYC chats that you produced; right?
9   A.   I don't have it on the screen, but I see you holding them,
10  and I see them --
11  Q.   Do you see it now?
12  A.   Yes.  We produced hundreds of thousands possibly of
13  messages that all were between the four people involved in the
14  final state of the project and basically everything to do with
15  the development of this project.
16  Q.   Did you believe, in good faith, that you had given Yuga
17  everything that had to do with the development of this project?
18  A.   Yes, I did.
19           MR. TOMPROS:  I don't have anything further, Your
20  Honor.
21           THE COURT:  All right.  May this witness be excused?
22           MR. BALL:  Yes, Your Honor.
23           THE COURT:  All right.  You may step down.
24       Any additional evidence on behalf of the defense.
25           MR. TOMPROS:  With the note, Your Honor, that Your
```

```
 1  Honor was going to review the deposition designations after we
 2  resubmit them.
 3          THE COURT:  Right.
 4          MR. TOMPROS:  And that we would reserve the right to
 5  rely on things that Your Honor ultimately admits.  And the
 6  defense rests, Your Honor.
 7          THE COURT:  All right.
 8     Any rebuttal?
 9          MR. BALL:  No rebuttal, Your Honor.
10          THE COURT:  All right.  Then the evidence is closed.
11     What I am going to do is, obviously, I will take this
12  under submission, but I am going to issue a post-trial -- a
13  Minute Order requiring post-trial findings of fact and
14  conclusions of law.  And I was going to require the first
15  filing due on August 14, but that may be too short of a period
16  of time.
17     How long is it going to take you to come up with a joint
18  statement with respect to the deposition designations that you
19  want me to consider, because those should be finalized so that
20  they can be incorporated in the findings of fact and
21  conclusions of law.
22          MR. BALL:  I appreciate Your Honor's timing.  The
23  teams have been working really hard.  I would like maybe until
24  Friday of next week.
25          THE COURT:  Okay.
```

1            MR. TOMPROS:  And that's certainly fine by us, Your
2    Honor.
3            THE COURT:  And so what do I expect to receive by
4    Friday of next week?
5            MR. BALL:  That would be the joint statement.
6            THE COURT:  All right.  And how long is the joint
7    statement going to be?  Typically, I don't -- the last one, I
8    think, was 400 pages long.
9            MR. TOMPROS:  It will not be like that, Your Honor.
10   I think there is a reasonably number of deposition designations
11   already.  We certainly wouldn't be adding to that.  We would
12   just be subtracting based on things that occurred today.  So I
13   think it will -- it is just a matter of making sure that we
14   have compared the transcript here to that which is why we need
15   a little bit of time, and I agree with Mr. Ball that, if we can
16   have until the end of next week, that would be helpful.  And
17   then we would want to ideally, after that, prepare the proposed
18   finding.
19           THE COURT:  Okay.  Because it occurs to me that what
20   may be beneficial is a rulings chart with respect to the
21   deposition designations, because I found that very helpful.
22   Although I didn't get it until Friday, I did use it over the
23   weekend in making the rulings on the objections.  But that way,
24   if I have the proposed order for the deposition designations, I
25   can then make rulings, and I can file that proposed order which

```
 1   will then let you know what is in and what is out.  So when you
 2   are preparing the findings of fact and conclusions of law, it
 3   will be capturing all of the evidence in the case.
 4              MR. TOMPROS:  We can absolutely submit a proposed
 5   order along with the joint statement.
 6              THE COURT:  So I don't want to impose any artificial
 7   deadlines on Counsel.  Maybe the best thing to do is to -- I
 8   think next Friday is a good date for the deposition
 9   designations.
10        I guess it's then going to be up to me in terms of how
11   long it's going to take me to rule on those before we can start
12   the findings of fact.  All right.  Let's do that.  Let's set
13   next Friday for the date for the post-trial designation of
14   deposition testimony with a proposed ruling chart.
15        And then I'll take a look at it, and I'll try to get it
16   done the following week and get the order out to you.  And then
17   you can expect to receive the Minute Order with respect to the
18   findings of fact and conclusions of law and the meet and confer
19   on the joint statement.
20        And there is no sense setting dates on that until I see
21   the deposition transcripts and rule on the deposition
22   transcripts.  That's going to then trigger the date by which
23   the initial findings of fact will be due.
24        How does that sound?  Is that acceptable to plaintiff?
25              MR. BALL:  Very much.  Thank you.
```

```
1              MR. TOMPROS:  Fine with us, Your Honor.
2              THE COURT:  All right.  With respect to the --
3    Shannon, we're going to keep the original exhibits?
4              THE COURTROOM DEPUTY:  Sure.
5              THE COURT:  Okay.  So Shannon has all of the original
6    exhibits, and the Court will keep those original exhibits.  And
7    make sure that you check with Shannon that all of the exhibits
8    that you think are in evidence that should be in evidence are
9    in evidence.  I think we moved them all in, but I don't know.
10         And other than that, I don't think I have anything else.
11   I appreciate Counsel's hard work in this case.  It's been a
12   journey.  And I appreciate the good efforts of Counsel in
13   complying with the Court's rules and deadlines.  I know that
14   those procedures can be onerous.  But I think, as you can see,
15   for purposes of the trial, it makes the trial go a lot quicker.
16         So I don't know what you are going to do with the physical
17   exhibits.  You can take those.
18         I couldn't figure out the winery that produces the wine,
19   so I wasn't going to have Counsel break open the bottle.
20         So anyway are you going to take those back?
21             MR. TOMPROS:  If that is acceptable with you, Your
22   Honor.
23             THE COURT:  Sure.  No.  But the ones that are in
24   evidence are in evidence, but you can take the rest of them
25   back.
```

1   MR. TOMPROS:  Thank you, Your Honor.
2   THE COURT:  All right.  Anything else from plaintiff?
3   MR. BALL:  No, Your Honor.
4   THE COURT:  Anything else from the defense.
5   MR. TOMPROS:  Nothing else, your Honor.
6   THE COURT:  Thank you very much.
7       And you still have work to do.
8   MS. CULP:  Thank you, Your Honor.
9   MR. GOSMA:  Thank you, Your Honor.
10                  -oOo-

15                REPORTER'S CERTIFICATE

18   I certify that the foregoing is a correct transcript of
19   proceedings in the above-entitled matter.

21   /s/ Suzanne M. McKennon, CSR, CRR, RMR
     _____         Date:  08/03/2023
22   United States Court Reporter