**Defendants' Disputed Post Trial Finding of Fact No. 3:**

During the course of trial, Plaintiff Yuga Labs, Inc. ("Yuga") did not cross-examine Mr. Ripps on any portion of his declaration and left the entirety of the declaration unchallenged. Trial Tr. [Ripps] 267:8-269:5.

**Plaintiff's Basis for Dispute:**

Yuga Labs did not leave Mr. Ripps' declaration "unchallenged." Evidence admitted at trial disproves the core of Mr. Ripps' testimony. One of the glaring instances where the evidence contradicts Mr. Ripps' testimony is when, in his trial declaration, Mr. Ripps testified that he "never reached a conclusion on what ApeMarket would actually be . . . ." Ripps Decl. (Dkt. 346) ¶ 178. However, at trial Mr. Cahen confirmed that ApeMarket was ready to launch within a matter of days. Trial Tr. at 247:10-12 ("Q: And there was a ready-to-go Ape Market by February – excuse me – by June 24, 2022? A: Among other things, yes[.]"). Another glaring contradiction is that Mr. Ripps testified that his "intention in making the RR/BAYC artwork was not to monetize Yuga Labs' brand." Ripps Decl. (Dkt. 346) ¶ 182. However, text messages entered into evidence demonstrated that Defendants intended to "make like a million dollars" off of their infringement. JTX-1574. Evidence further entered at trial depicted Mr. Ripps publicly bragging about the millions of dollars he made off of his use of Yuga Labs' marks. *See* Solano Decl. (Dkt. 342) ¶ 72 ("Based on my review of public Twitter posts produced in discovery, Mr. Ripps boasted that he made over $1.2 million on his scam, implying that no one could stop him from counterfeiting NFTs and harming the goodwill of the BAYC brand."). Mr. Ripps' associates also confirmed this financial motive. JTX-801.208 (Mr. Cahen: "priorities: getting RRBAYC to sell out by creating demand + getting BAYC and MAYC users to call our marketplace their new home [] and collecting royalties at a fraction of what the other big dogs are charging [] which will be considerable passive income if we strike the right balance"); Hickman Depo. Designations (Dkt. 394) at 129:3-6 ("My

financial arrangement for this whole thing is about as a software developer being compensated for making software"); JTX-1 at ¶ 11 ("I understood, based on more than a few conversations with Defendants, that the Business Venture was expected to make money by selling RR/BAYC NFTs and by potentially generating transaction fees from the sale of NFTs on Ape Market.").  Mr. Ripps can attempt to couch his lies in "sarcasm," but the ultimate result was confusion in the marketplace and a substantial payday for Defendants.  Simply repeating falsehoods and repeatedly rejected immaterial claims, as Mr. Ripps does in his declaration, does not make them true or material to the Court's remaining decisions.

Moreover, at trial, Yuga Labs demonstrated that Mr. Ripps is an unreliable witness.  During cross-examination, Mr. Ripps admitted to his dishonesty during discovery and his lies in prior declarations submitted under oath.  Trial Tr. at 268:12-25; *see also* JTX-1541 (Jan. 17, 2023 Ripps verification stating under penalty of perjury that he has "produced all responsive documents that I have been able to locate after a reasonable search"); Dkt. 109-42 (Feb. 17, 2023 Ripps declaration stating under penalty of perjury that he has "re-investigated my platforms and taken reasonable efforts to search for additional material for collection" and "[a]ll responsive materials that I have collected during my investigation has been provided to my attorneys and I have given permission to produce those materials with appropriate confidentiality designations"); Dkt. 158 (Mar. 21, 2023 Ripps declaration stating under penalty of perjury that he has "produced all relevant, nonprivileged documents" subject to Court's order compelling production).  Despite the repeated, under-oath, and Court-ordered assurances, that they had searched for and produced all relevant documents, Defendants withheld numerous documents (including their text messages with each other) until March 21, 2023 — after Yuga Labs had filed its motion for summary judgment.  The wrongly withheld documents include communications with BAYC NFT holders and communications about Defendants' profit intent.

Yuga Labs' cross-examination demonstrated that Mr. Ripps lacks credibility as a witness.  If Mr. Ripps lied before in multiple declarations under penalty of perjury, to evade his discovery obligations and hide incriminating evidence, it is reasonable to conclude that he lied to avoid the consequences of his infringement. Therefore, ***his entire declaration*** cannot be relied upon.  Yuga Labs sufficiently challenged Mr. Ripps' declaration, and its contradictions by the evidentiary record show it is unreliable.  It should not be accepted as fact.

**Defendants' Response:**

Mr. Ripps's declaration was uncontested because Yuga elected to forego any substantive cross-examination of Mr. Ripps on ***any*** portion of Mr. Ripps's declaration.  *See* Trial Tr. [Ripps] 267:7-271:9.  As the Supreme Court has explained, "[c]ross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  This is because the purpose of cross-examination is "the direct and personal putting of questions and obtaining immediate answers." *Id.*; *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004) ("One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information[.]").   Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that "principle means" of testing Mr. Ripps credibility weighs decisively in favor of accepting Mr. Ripps's declaration.

Yuga incorrectly argues that Mr. Ripps's declaration was challenged by other evidence in the trial record.  Yuga did not show at trial that any of this other evidence in the trial record undermines Mr. Ripps's testimony, because Yuga never addressed that purported other evidence in any way at trial.  This is precisely why Yuga's failure to cross-examine Mr. Ripps is fatal to their new post-trial challenges to his testimony.  Having failed to challenge Mr. Ripps's testimony at trial, Yuga now seeks to take evidence out of context and mischaracterize documents.  This cannot remediate their election not to contest Mr. Ripps's credibility at trial.

For example, Yuga incorrectly argues that Mr. Ripps's testimony that ApeMarket was in the ideation stage and that he had not decided on what ApeMarket would be was somehow contradicted by Mr. Cahen's testimony. Contrary to Yuga's argument, Mr. Cahen repeatedly testified that ApeMarket was in the ideation stage:

> Q. You used the prospect of a marketplace to drive sales of RR/BAYC NFTs; correct?
>
> A. What I would say I did was use the prospect of a potential marketplace **which we were in the ideation phase of**, I would say that I absolutely 100 percent used the prospect of that to draw attention to my protest of racism, anti-Semitism, and financial fraud being committed by Yuga Labs and Bored Ape Yacht Club.

Trial Tr. [Cahen] 231:21-232:3 (emphasis added).

> 258. We discussed the idea of creating a system that would allow holders of popular NFT collections to trade their NFTs without being fleeced by centralized parties charging exorbitant fees.
>
> 259. Ultimately, **we never agreed on what ApeMarket would be**.

Cahen Decl. ¶¶ 258-259 (Dkt. 344) (emphasis added). Other witness corroborated Mr. Ripps's testimony that he had not decided what ApeMarket would be. Mr. Hickman testified about his ongoing discussion on potential designs of ApeMarket, explaining:

> Q. BY MR. BALL: You state here, "It's difficult to make the collection coexist without adding a friction step."
>
> A. This is a discussion, **an ideation of different ideas, none of which were actualized**.

Trial Tr. [Hickman] 211:19-22 (emphasis added).

Yuga also incorrectly argues that the trial record contradicts Mr. Ripps's declaration regarding his intent in creating the RR/BAYC collection. The full testimony that Yuga cites provides:

182. My intention in making the RR/BAYC artwork was not to monetize Yuga's brand but instead to criticize Yuga's use of objectionable imagery and to educate the public about the nature of NFTs.

183. As an artist, I believed that I could create an "army of educators" through my art.

184. I believed that use of art to criticize Yuga and its imagery was protected by the First Amendment.

Ripps Decl. ¶¶ 182-184 (Dkt. 346) (uncontested). Significant evidence in the record corroborates Mr. Ripps's statements. Mr. Ripps's and Mr. Cahen's contemporaneous communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize. For example, in private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic purpose of the project, their intention that it would spread criticism of Yuga, and their intention that social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct. JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30. Defendants' online discussion, which consisted of nearly the entirety of Defendants' public activities associated with RR/BAYC, confirms their intent. In those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04. And lastly, the voluminous correspondence that Defendants received shows that they did in fact create a "community of educations" as Mr. Ripps intended, who have written letters expressing gratitude and support for the criticism of Yuga. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX-2590; JTX-2592; JTX-2595; JTX-2596; JTX-2599.

Yuga incorrectly argues that this evidence regarding Mr. Ripps's intent has been refuted by citing JTX-1574 to suggest that Mr. Ripps privately said that he

1   intended to make a million dollars from the RR/BAYC artwork.  But in reality, ***the***
2   ***document contains no such statement from Mr. Ripps***.  The entirety of Mr. Ripps
3   statements in JTX-1574 were "lolol" (which stands for "laugh out loud" repeated
4   twice).  In other words, Mr. Ripps was laughing at a ***joke*** made by Mr. Cahen.
5   And Mr. Ripps in the same exchange later stated that he needs "to get a front end"
6   in response to more jokes from Mr. Cahen (again, not a reference to any intent to
7   profit).  *See* JTX-1574.

8         Yuga also cites the unreliable Declaration of Gregory Solano.  Mr. Solano is
9   not credible given the many false and misleading statements contained in his
10  declaration.  For example, Mr. Solano was forced to concede on cross-examination
11  that his sworn declaration included a false statement claiming that Defendants
12  continue to receive royalties from sales on secondary marketplaces:

13      Q.    And you understand that Mr. Ripps and Mr. Cahen have testified
14              that they do not currently receive any royalties or creator fees from
                sales on secondary marketplaces; right?

15      A.    Yes.

16      Q.    So you don't have any basis for your statement that their profits
17              continue to increase; correct?

18      A.    It's my understanding that they were collecting royalties or creator
19              fees from LooksRare for quite a while.  Although, those were
                supposed to be donated to charity and never were.

20      Q.    ***They don't continue to increase; correct, sir?***

21      A.    ***Correct.***

22      Q.    ***That statement, that part of your witness statement is incorrect;***
23              ***right?***

24      A.    ***Yes.***

25  Trial Tr. [Solano] 48:15-49:4 (emphasis added).  Mr. Solano also relied on the
26  phrase "business venture" in Mr. Lehman's declaration, without having considered
27  that the phrase "business venture" was selected by Yuga's counsel, and that Mr.
28

Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial.  Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes.").  Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted.  Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1.  In fact, no one has been able to identify a single confused consumer in the entirety of this case.  *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

Yuga then incorrectly argues that Mr. Ripps's statement about his intent is refuted by comments from other members of the RR/BAYC project.  But these statements show no such thing.  For example, Yuga's cites JTX-801.208 in which

1  Mr. Cahen states that a priority is "getting RR/BAYC to sell out."  But as Mr.

2  Cahen explained at trial, the whole point of broad exposure through the RR/BAYC

3  collection (including getting people to reserve NFTs) was "spreading and

4  magnifying criticism of Yuga."  Cahen Decl. (Dkt. 344) ¶ 98.  And Mr. Cahen's

5  private communications in the same exhibit (JTX-801) confirm that the RR/BAYC

6  collection was created for artistic criticism: "… we actually all dig the idea of

7  Ryder literally hand minting these things.  It's quite funny and artistic." (JTX-

8  801.00010); "I love it. It puts the primary focus on the art … and is a conceptual

9  commentary." (JTX-801.00012-13); "It makes a strong statement.  This is art, not

10  Pokemon cards." (JTX-801.00013); "Because that's where the real importance lies.

11  RR/BAYC truly is very important conceptual art imo.  And now we are all helping

12  shape that art further." (JTX-801.00196).

13      Yuga also cites Mr. Hickman's deposition testimony in which he stated that

14  his "financial arrangement" was "a software developer being compensated for

15  making software."  Hickman Depo. Designations (Dkt. 394) at 129:3-6.  But Mr.

16  Hickman's testimony about this topic at trial was unequivocal about his purpose in

17  participating in the RR/BAYC project:

18      Q.  Why did you expect to make less from your work on this RSVP
19          contract than your normal rate?

20      A.  I was contributing because I believe in standing up for the
           illegitimate business practices and imagery in this Yuga Labs
21          BAYC NFT collection.

22  Trial Tr. [Hickman] 221:11-15.  Mr. Hickman further explained, "We are selling a

23  receipt that says *I committed to this protest* that points to the same public [images]

24  that a lot of different collections point to including Yuga Labs point to the same

25  resource."  Trial Tr. [Hickman] 222:18-21 (emphasis in original).

26      Yuga also cites to Mr. Lehman's declaration to suggest that Defendants

27  considered the RR/BAYC collection to be a "business venture."  Defendants never

28  used the term "business venture" to describe the RR/BAYC project.  In fact, the

only place where the term appears is in Mr. Lehman's declaration, which was a document drafted by Yuga and signed under coercion and under threat to Mr. Lehman's family.  Yuga's attorneys, not the Defendants, coined the term "business venture."  As demonstrated during trial, Mr. Solano relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that Yuga's counsel drafted the declaration and selected the phrase "business venture," and without having considered that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 37:20-22; [Solano] 40:3-14.  Mr. Solano also relied on the declaration without having considered that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won.  Trial Tr. [Solano] 38:17-19.

Lastly, Yuga argues that it somehow challenged Mr. Ripps's trial declaration through its cross-examination of Mr. Ripps concerning his earlier January 17, 2023, verification.  But Yuga's cross-examination did not result in any impeachment or inconsistency:

> Q.   You produced those text messages, that you withheld throughout this case, including when you testified that you had no responsive documents on January 17, 2023; correct?
>
> A.   I think that we – the question was all communications that relate to the creation of RR/BAYC, which we felt was very much in the group chat that was called RR/BAYC.  And we produced that, which you guys have extensively relied on.

Trial Tr. [Ripps] 268:5-11.  Mr. Ripps further explained:

> Q.   And, Mr. Ripps, the text messages that you produced in this case include the RR/BAYC chat; right?
>
> A.   Yes.  We produced everything that we could, despite the fact that Yuga produced nothing.
>
> Q.   Exhibit Number JTX-801 is the RR/BAYC – on of the RR/BAYC chats that you produced; right?

A.   I don't have it on the screen, but I see you holding them, and I see them –

Q.   Do you see it now?

A.   Yes.  We produced hundreds of thousands possibly of messages that all were between the four people involved in the final state of the project and basically everything to do with the development of this project.

Q.   Did you believe, in good faith, that you had given Yuga everything that had to do with the development of this project?

A.   Yes, I did.

Trial Tr. [Ripps] 270:3-18.  Mr. Ripps further testified that Yuga had sought sanctions multiple times based on Yuga's false accusations of discovery misconduct, and that this Court denied all of Yuga's baseless motions.  Trial Tr. [Ripps] 269:21-270:2.  Mr. Ripps's trial testimony is no surprise given that the verification stated "[I] produced all responsive documents that I have been able to locate after a reasonable search" and further stated "I also understand that discovery obligations are continuing, and I will produce any additional responsive materials or information to the extent any are found based on a reasonable investigation.  *I reserve the right to make changes or additions to any of these answers or document productions* if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available." Dkt. 109-33 (emphasis added).  Mr. Ripps fulfilled his discovery obligations and upheld his verification by providing all the responsive material he located after a reasonable search to the best of his knowledge.

The context and accurate content of the evidence Yuga cites shows that the trial record does not contradict any portion of Mr. Ripps's declaration.  Yuga had an opportunity to fully vet its false allegations at trial through cross-examination of Mr. Ripps but elected not to do so.  Mr. Ripps's testimony was therefore unchallenged.

**Plaintiff's Reply:**

Mr. Ripps' trial declaration is neither unchallenged nor uncontested.  Yuga Labs' cross-examination of Mr. Ripps and the evidence admitted at trial demonstrate that Mr. Ripps lied to protect his profitable scam.  That Yuga Labs opted not to give Mr. Ripps a bully pulpit to extrapolate on his already inaccurate testimony does not alter the fact that his declaration is unreliable.

The Court should reject Defendants' responses because (1) evidence admitted at trial discredits Mr. Ripps' trial declaration, (2) Defendants' attempts to pass their infringement off as a joke are unavailing, (3) Defendants fail to rebut Mr. Ripps' profit motives as evidenced in his text messages, (4) Ape Market was operational and ready to launch, (5) Defendants were not motivated by artistic intent, (6) Defendants' unreliable communications with third-parties do not negate evidence of actual confusion or the likelihood of post-sale confusion, (7) there is ample evidence of actual confusion in the record, (8) Mr. Ripps' excuses for his discovery violation are not credible, (9) Defendants fail to impeach Mr. Solano's accurate testimony, and (10) Mr. Lehman's declaration is truthful.

**Evidence Admitted At Trial Demonstrates That Mr. Ripps' Declaration Is Not Reliable:**  Mr. Ripps' testimony conflicts with significant documentary and testimonial evidence admitted at trial and is therefore unreliable.  Defendants' argument that the Court must accept Mr. Ripps' testimony as true violates the basic judicial tenet that a finder of fact shall weigh the evidence and assess the credibility of witnesses.  *Murray v. U.S.*, No. C-04-3707 SC, 2006 WL 1708220, at *2 (N.D. Cal. June 19, 2006) ("In bench trials, it is the judge's duty to weigh the evidence, assess the credibility of witnesses, and decide questions of fact and issues.").  Defendants cannot divest the Court of this duty.  Defendants further ignore the fact that all trial declarations sworn to in this case are part of the trial record and were entered into evidence prior to the cross-examination of each witness.  *See, e.g.*, Trial Tr. 11:19-20 ("All right.  The Court will receive the declaration of Mr. Solano

into evidence.").  Defendants similarly ignore that their own contemporaneous statements form part of the evidence at trial that the Court can consider.  *See e.g.* JTX-801.  Therefore, it is not true that Yuga Labs "never addressed that purported other evidence in any way at trial," on the contrary and as explained above the trial record is filled with evidence, both documentary and testimonial, that undercuts Mr. Ripps' self-serving narrative.

**Defendants' Infringement Was Not A Joke:**  Defendants' attempts to laugh off Mr. Ripps' profit motive are unavailing.  Even a cursory review of the text messages contained in JTX-1574 demonstrate that this was not a sarcastic conversation.  To begin, Mr. Ripps said "lolol" ***before*** Mr. Cahen told him that he would "make like a million dollars" by airdropping NFTs to RR/BAYC purchasers.  Indeed, Mr. Cahen explicitly states that he "honestly" believes that Mr. Ripps stood to make a million dollars.  *Id.*  This was no joke, rather it was Mr. Cahen's genuine business proposition.  Mr. Ripps' reply is likewise serious, stating that Defendants "need to get a front end for this shit" in order to facilitate that payday.  *Id.*  Mr. Cahen then responded that they "already have ape market" to further their business payday.  Mr. Cahen's admission on Ape Market further undermines Mr. Ripps' declaration and Defendants' response to this objection, as well as Defendants' repeated refrain that Ape Market was not ready to launch.  *Id.*  Other text messages confirm Defendants' profit motive.  In one such exchange Mr. Cahen tells Mr. Ripps that he thinks Mr. Ripps is "gonna make like millions" followed up by "no cap."  JTX-1586.  No cap is colloquial for "no joke," which directly rebuts Defendants' self-serving humor narrative.  Mr. Ripps responded with "ok cool" indicating that he was pleased to be making so much money.  *Id.*  There is no indication that these text messages were meant to be jokes, because they were not. And even if Defendants found what they were doing funny, that does not excuse their intentional use of the BAYC Marks in a manner likely to confuse consumers.

**Defendants' Internal Discussions Confirm Their Profit Motive:**

Defendants' public statements represented what they needed to say to market their product. Any scam requires an appearance of legitimacy. Like most online influencers, Defendants' social media pages contain organic posts mixed in with their marketing to obfuscate their commercial motives. Defendants' public comments about their artistic goal (to ensure they "look really sympathetic to people" if caught, in the words of their partner (JTX-918.00036)), contradict their internal discussions that overwhelmingly focus on a business venture to sell RR/BAYC NFTs and launch Ape Market, their profit motive, and riding on the coattails of the BAYC brand for their own unjust enrichment. *See, e.g.*, JTX-1 (Lehman Decl.) ¶¶ 10-13 (Defendants "expected the Business Venture to make money"); JTX-801.144 ("One thing we can do to stimulate the rsvp completing is to tease apemarket.com"); JTX-801.185 (Mr. Cahen: "Goal: mint out the remainder of the collection + incentivize people to use the marketplace, specifically the BAYC original side"); *id.* (Mr. Cahen: "More royalties for us . . . More work for sure, but much higher likelihood of generating more royalties and users"); *id.* at 208 (Mr. Cahen: "we need a very delicious value proposition [] to bring in users . . . but not so low that we dont make anything"); *id.* (Mr. Cahen: "priorities: getting RRBAYC to sell out by creating demand + getting BAYC and MAYC users to call our marketplace their new home [] and collecting royalties at a fraction of what the other big dogs are charging [] which will be considerable passive income if we strike the right balance"); JTX-801.237 (Mr. Lehman: "I'm just concerned about launching something with low prospect for recurring revenue"; Mr. Cahen: "I agree"); JTX-803 at 66-67; JTX-1574 (Mr. Cahen to Mr. Ripps: "Ur gonna make so much on this shit LMFAO"; "It will sell out within 48 hours I think [] You'll make like a million dollars [] Straight up"); JTX-1586 (Mr. Cahen to Mr. Ripps: "I t[h]ink you are gonna make millions too man"); Hickman Depo.

Designations (Dkt. 394) at 238:12-40 (discussing profit motive and desire to charge royalties).  Defendants knew they were stealing from Yuga Labs.

That Mr. Hickman leaned on Defendants' self-serving artistic narrative does not negate the fact that he stood to make at least hundreds of thousands of dollars off of Defendants' infringement.  *See* Trial Tr. at 220:3-221:5.  Defendants' may have attempted to make themselves look more sympathetic, but the evidence discussed above makes it clear that they sought to profit through their infringement of the BAYC Marks.

**Evidence Admitted At Trial Confirms That Ape Market Was Ready To Launch:**  Despite Defendants' attempts to argue otherwise, the evidence shows that Ape Market was ready to launch.  *See* JTX-1574 ("we already have ape market"); *see also* Trial Tr. at 137:23-24 ("The code was in such a state of completion that it was operational."); JTX-807; JTX-808; JTX-809.  Indeed, at trial Mr. Cahen confirmed that Ape Market was ready to launch within a matter of days.  Trial Tr. at 247:10-12 ("Q:  And there was a ready-to-go Ape Market by February – excuse me – by June 24, 2022?  A:  Among other things, yes[.]").  Mr. Cahen later confirmed that he had "no reason to doubt" that the marketplace could be launched within a matter of 48 hours.  *Id.* at 248:7-9.  Defendants' rebuttal that Mr. Cahen's testimony pertains to the quality of his engineers is inapposite.  It does not matter why the website was ready to launch, it is only pertinent that there existed an "operational" website.  Trial Tr. at 137:23-24.  Defendants' argument does not rebut Yuga Labs' objection, it proves it.

That fact is also supported by documentary evidence submitted at trial.  *See* JTX-1027 (post from Ape Market twitter account advertising that "ApeMarket.com will go live within 24 hours of the final mint, which we will announce shortly"); *see also* JTX-801.370 (Mr. Lehman stating "[s]hould finish minting between 8-10 hours from now . . . so per our 24 hour commitment Friday afternoon would be the release" and Mr. Cahen responding "I think it makes sense to launch a bit earlier

imo if we are comfortable doing so."); JTX-938 (Tweet from Mr. Cahen stating "[w]e built a marketplace for every YugaLabs asset . . . [a]nd we got sued for it."). Ape Market existed as a commercial endeavor actively marketing on social media to increase the sales of RR/BAYC NFTs; and the online marketplace was ready to launch, and would have launched but for this litigation.  JTX-1 at ¶ 12.

**Defendants' Infringement Was Intentional And Not An Art Project:**  In granting Yuga Labs' motion for summary judgment, this Court held that Defendants intended to deceive consumers:

> When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose:  that is, that the public will be deceived." . . .  In this case, Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks.  Because Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks, and in the absence of contrary evidence, the Court concludes that Defendants used the BAYC marks in an effort to confuse consumers. . . .  In addition, the Court concludes that Defendants intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding.  For example, Defendants listed the RR/BAYC NFTs on rrbayc.com under the very same Ape ID number associated with BAYC NFTs, despite having their very own unique and different ID numbers.

SJ Order at 12 (citations omitted).  Similarly, the Court already determined that "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag."  *Id.* at 16.  To the contrary, the relevant evidence demonstrates that Defendants intended to use Yuga Labs' BAYC Marks to profit through their commercial promotion and sale of RR/BAYC NFTs.  *See, e.g.*, JTX-1; JTX-1574; JTX-1586; JTX-801.239; JTX-801.192; JTX-801.196; JTX-696.1; JTX-801.371.  Indeed, Defendants' infringement could not have been in good faith because, even after the Court found their infringement was likely to cause confusion and was not art protected by *Rogers* and the First Amendment,

Defendants intentionally continued to infringe on Yuga Labs' Marks and promote RR/BAYC NFTs.  Solano Decl. (Dkt. 342) ¶ 74.  Even after trial, Defendants' @ApeMarketplace Twitter account continues to promote rrbayc.com and link to a marketplace on which RR/BAYC NFTs are still available for sale.  Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.

Moreover, Defendants' *Rogers* and First Amendment defenses have already been rejected by the Court.  SJ Order (Dkt. 225) at 15-17.  Defendants' actions were commercial trademark infringement.  *Id*.  And, the Court has already decided the issue of Defendants' intent, finding that Defendants **knowingly and intentionally** infringed Yuga Labs' BAYC Marks to deceive consumers and acted with a bad-faith intent to profit from their use of the marks.  SJ Order (Dkt. 225) at 12-15.

**Defendants' Anecdotal Evidence Of Individuals Stating They Support Defendants' Infringement Are Irrelevant And Immaterial:**  A handbag counterfeiter may have distributors, and those distributors may even profess to believe in a cause, but that does not excuse the counterfeiter's wrongdoing or mitigate the likelihood of confusion in the marketplace.  *See* SJ Order (Dkt. 225) at 16 ("Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag.").  And Defendants do nothing to rebut the likelihood of initial interest or post-sale confusion.  *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one"); *see also* Trial Tr. at 16:13-15 ("As I mentioned, there's a number of people that bought these that knew that this was a scam and that were buying them to sell on a secondary market").  Further, confused consumers are unlikely to admit that they have fallen for Defendants' scam.  As Mr. Solano explained, being

scammed is "super embarrassing" and consumers who were tricked "weren't going to, you know, raise their hand and shout about it." Trial Tr. at 54:10-16. Nonetheless, Defendants' admission that they processed over $90,000 in refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75) undermines Defendants' suggestion that purchasers of their infringing NFTs were universally supportive and that no one was confused.

**Yuga Labs Has Produced Ample Evidence Of Actual Confusion:** Defendants' anecdotal and unreliable "evidence" does nothing to rebut the Court's finding of a likelihood of confusion or the incidents of actual confusion in the record. Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion. SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Depo. Designations at 290:4-9; JTX-1049; Berger Declaration (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7. Defendants were aware of the confusion. *See, e.g.*, JTX-801.195 (Mr. Lehman noting that people "making mistakes with apes is already a huge meme" and "Remember the 'average joes'?", and Cahen responding, "I mean that is unavoidable"). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341)¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

There is a clear likelihood of confusion as well, given Defendants' use of the same marks and images, which the Court already determined.  SJ Order (Dkt. 225) at 10-13; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'") (citation omitted).  In any event, actual confusion is not required; and the Court already found Defendants' use of BAYC Marks to be infringing.  SJ Order (Dkt. 225) at 12.  Yuga Labs is thus entitled to Defendants' profits due to their infringing activity regardless of whether purchasers were actually confused.  As Ms. Muniz testified at trial, "people came that were lured in because they believed it was a BAYC and then were, like, oh, it's not.  But it's a really, really good fake.  And it's such a good fake that it actually convinced Twitter and I mean Twitter from a front-end user interact platform but also Twitter as individuals and people in a community and consumers.  So I believe people were lured in thinking it was authentic BAYC then realized, oh, wait, it's not, but it's a cheap version that's really, really good.  It's a really good fake."  Trial Tr. at 83:19-84:3; *see also* JTX-801.371 (Cahen to Ripps:  "per our attorney we may just need to change the skull [] If we want to fight trademark").  Confusion in the marketplace is abundant throughout the trial record.

**Mr. Ripps' Excuses For Withholding Relevant Evidence Are Not Persuasive:**  Defendants claim that Mr. Ripps' withholding of relevant evidence was excused by the fact that he eventually produced certain documents.  This argument ignores the fact that the initial withholding forced Yuga Labs to engage in expensive motion practice to seek documents that should have been produced in the first place and ignores the multiple declarations signed by Mr. Ripps stating that he had fulfilled his discovery obligations.  *See* JTX-1541 (Jan. 17, 2023 Ripps verification stating under penalty of perjury that he has "produced all responsive documents that I have been able to locate after a reasonable search"); Dkt. 109-42

(Feb. 17, 2023 Ripps declaration stating under penalty of perjury that he has "re-investigated my platforms and taken reasonable efforts to search for additional material for collection" and "[a]ll responsive materials that I have collected during my investigation has been provided to my attorneys and I have given permission to produce those materials with appropriate confidentiality designations"); Dkt. 158 (Mar. 21, 2023 Ripps declaration stating under penalty of perjury that he has "produced all relevant, nonprivileged documents" subject to Court's order compelling production).

It was ***never*** credible for Mr. Ripps to testify that a text message exchange about the money that Mr. Ripps stood to make off of the sales of RR/BAYC NFTs did not "have anything to do with the RR/BAYC project."  Trial Tr. at 268:17-21; JTX-1574.  This text exchange discussed airdropping NFTs to purchasers, monetizing Defendants' scam, the existence of Ape Market as a "front end" marketplace, and the development of a bot to announce the sale of Defendants' infringing NFTs.  *Id.*  There is no reasonable basis to believe that this conversation would not pertain to the RR/BAYC NFTs.  Mr. Ripps' testimony claiming otherwise is a lie.  Furthermore, his withholding of these texts until after a *series* of requests for relief before Judge McDermott underscore Defendants' bad faith litigation approach throughout this case.

Defendants further point to the fact that Mr. Ripps swore that he had conducted a "reasonable search" and reserved the right to supplement his responses, but a reasonable search would have included a search of his correspondence with his business associate and co-defendant Mr. Cahen.  Text messages directly between the two defendants about their infringing acts should have been among the first documents produced, not the last.  Defendants' attempts to explain away these discovery violations and the lie in Mr. Ripps' declaration are unavailing.

**Mr. Solano Is A Credible Witness:**  Mr. Solano's testimony is credible. The vast majority of Mr. Solano's testimony detailing the harm to Yuga Labs

because of Defendants' intentional and repeated use of the BAYC Marks is undisputed and went unchallenged by Defendants. Nevertheless, the arguments Defendants raise are themselves meritless.

First, Mr. Solano's testimony that Defendants collected royalties off secondary sales was supported by Defendants' own testimony, Ms. Kindler's testimony, and the possibility of further royalties on LooksRare or other new marketplaces if Defendants continued to control the RR/BAYC smart contract. Ripps Depo. Designations (Dkt. 396) at 89:19-21; Cahen Depo. Designations (Dkt. 395) at 209:2-3; Kindler Decl. (Dkt. 338) at ¶ 23. Apparently, Defendants' argument is that Mr. Solano's testimony is correct that Defendants continued to profit from their royalties after February until at least May. *See, e.g.*, Cahen Decl. (Dkt. 344) ¶ 171 ("LooksRare finally honored our request in May 2023 and has shut off royalties on secondary sales"). And Mr. Solano's testimony is correct that Defendants can continue to profit from royalties in the future if they hold the RR/BAYC smart contract. But somehow Mr. Solano's testimony should be discredited because Defendants claim they were not profiting off royalties in June or July of 2023. And even this claim stands on dubious ground as Defendants' counsel represented as recently as the June 9 pretrial conference that Defendants were still receiving royalties from LooksRare. PTC Hrg. Tr. at 43:22-24 ("They are [still collecting royalties] only in the sense of this very minimum set of LooksRare royalties."). Even if Defendants' claim is true, that they are not at this very moment collecting royalties, it is immaterial. Defendants' own admissions highlight their actual and ongoing potential to profit from royalties.

Second, Mr. Solano's testimony that Defendants' activities constitute a business venture is amply supported by Defendants' own actions that Mr. Solano personally observed. Defendants' attempts to discredit Mr. Solano's reliance on Mr. Lehman's declaration by arguing that Mr. Solano did so without reading Mr. Lehman's entire deposition are without merit. Mr. Lehman repeatedly testified to

1   the accuracy of his declaration, regardless of how he may have felt about the

2   process of being sued for his role in Defendants' scam.  Lehman Depo.

3   Designations (Dkt. 404-2) at 124:5-9.  The Lehman declaration stands on its own,

4   and Mr. Solano had reviewed the declaration based upon his testimony about its

5   contents in his own trial declaration.  *See, e.g.*, Solano Decl. (Dkt. 342) at ¶ 71.

6         Third, Defendants fail to impeach Mr. Solano's statement at Trial Tr. 32:19-

7   33:11 regarding Bored Ape V3, because the "Bored Ape V3" referenced in Mr.

8   Solano's deposition is different than the "Bored Ape Yacht Club V3" at issue in the

9   cited line of trial testimony.  Mr. Solano cannot be impeached by reference to

10  deposition testimony covering an entirely different topic.  To be clear, the quoted

11  deposition testimony relates to a Twitter page titled "@BoredApeV3," which Mr.

12  Ripps claims he does not control, and which was not at issue at trial.  Solano Depo.

13  (Dkt. 271) at 151:2-152:24.  But, the cited trial testimony, discusses a section of

14  Mr. Solano's declaration relating to Mr. Ripps naming his NFT collection "Bored

15  Ape Yacht Club V3."  *Cf.* Trial Tr. at 31:6-33:11.  Defendants do not even attempt

16  to address the fact that the testimony was on two different topics.

17        Finally, Defendants likewise fail to impeach Mr. Solano's statement at Trial

18  Tr. 34:9-19 regarding ApeMarket.com.  As he explained, Mr. Solano "review[ed] []

19  the webpages generated by running the source code for the planned

20  ApeMarket.com website," informing his response that Yuga Labs obtained the code

21  from Mr. Lehman.  Solano Decl. ¶ 49; *see also* ; JTX-806–JTX-809.  Those

22  webpages were not generated from the source code produced by Mr. Lehman until

23  *after* Mr. Solano's deposition.  Mr. Solano gained knowledge of these pages, and

24  he was able to truthfully testify at trial as to that knowledge.  Defendants fail to

25  impeach Mr. Solano's accurate knowledge.

26        **Mr. Lehman's Declaration Is Reliable And Contradicts Defendants:**

27  Yuga Labs has demonstrated that Mr. Lehman's declaration is truthful and reliable.

28  Mr. Lehman testified that he toiled to make sure that everything included in his

declaration was truthful and adequately supported by documentary evidence. Lehman Depo. Designations (Dkt. 404-2) at 241:21-24.  And regardless of whether Mr. Lehman negotiated his declaration with Yuga Labs, Mr. Lehman testified in his deposition that his declaration is truthful and reliable.  Lehman Depo. Designations (Dkt. 404-2) at 124:5-9; *see also* Dkt. 209-1 at 5-9 (explaining why documents produced by Mr. Lehman and his deposition testimony confirm the truthfulness of his declaration).  Defendants fail to discredit their own business partner.