**Defendants' Disputed Post Trial Finding of Fact No. 4:**

The Court accepts the substance of Mr. Ripps's unchallenged declaration as true, because Yuga elected to not challenge any aspect of it at trial. Trial Tr. [Ripps] 267:8-269:5.

**Plaintiff's Basis for Dispute:**

Yuga Labs did not leave Mr. Ripps' declaration "unchallenged." Evidence admitted at trial disproves the core of Mr. Ripps' testimony. One of the glaring instances where the evidence contradicts Mr. Ripps' testimony is when, in his trial declaration, Mr. Ripps testified that he "never reached a conclusion on what ApeMarket would actually be . . . ." Ripps Decl. (Dkt. 346) ¶ 178. However, at trial Mr. Cahen confirmed that ApeMarket was ready to launch within a matter of days. Trial Tr. at 247:10-12 ("Q: And there was a ready-to-go Ape Market by February – excuse me – by June 24, 2022? A: Among other things, yes[.]"). Another glaring contradiction is that Mr. Ripps testified that his "intention in making the RR/BAYC artwork was not to monetize Yuga Labs' brand." Ripps Decl. (Dkt. 346) ¶ 182. However, text messages entered into evidence demonstrated that Defendants intended to "make like a million dollars" off of their infringement. JTX-1574. Evidence further entered at trial depicted Mr. Ripps publicly bragging about the millions of dollars he made off of his use of Yuga Labs' marks. *See* Solano Decl. (Dkt. 342) ¶ 72 ("Based on my review of public Twitter posts produced in discovery, Mr. Ripps boasted that he made over $1.2 million on his scam, implying that no one could stop him from counterfeiting NFTs and harming the goodwill of the BAYC brand."). Mr. Ripps' associates also confirmed this financial motive. JTX-801.208 (Mr. Cahen: "priorities: getting RRBAYC to sell out by creating demand + getting BAYC and MAYC users to call our marketplace their new home [] and collecting royalties at a fraction of what the other big dogs are charging [] which will be considerable passive income if we strike the right balance"); Hickman Depo. Designations (Dkt. 394) at 129:3-6 ("My

1 financial arrangement for this whole thing is about as a software developer being

2 compensated for making software"); JTX-1 at ¶ 11 ("I understood, based on more

3 than a few conversations with Defendants, that the Business Venture was expected

4 to make money by selling RR/BAYC NFTs and by potentially generating

5 transaction fees from the sale of NFTs on Ape Market."). Mr. Ripps can attempt to

6 couch his lies in "sarcasm," but the ultimate effect was confusion in the

7 marketplace and a substantial payday for Defendants. Simply repeating falsehoods

8 and repeatedly rejected immaterial claims, as Mr. Ripps does in his declaration,

9 does not make them true or material to the Court's remaining decisions.

10        Moreover, Yuga Labs demonstrated that Mr. Ripps' is an unreliable witness.

11 During cross-examination Mr. Ripps admitted to his dishonesty during discovery

12 and his lies in connection with prior declarations submitted under oath. Trial Tr.at

13 268:12-25; *see also* JTX-1541 (Jan. 17, 2023 Ripps verification stating under

14 penalty of perjury that he has "produced all responsive documents that I have been

15 able to locate after a reasonable search"); Dkt. 109-42 (Feb. 17, 2023 Ripps

16 declaration stating under penalty of perjury that he has "re-investigated my

17 platforms and taken reasonable efforts to search for additional material for

18 collection" and "[a]ll responsive materials that I have collected during my

19 investigation has been provided to my attorneys and I have given permission to

20 produce those materials with appropriate confidentiality designations"); Dkt. 158

21 (Mar. 21, 2023 Ripps declaration stating under penalty of perjury that he has

22 "produced all relevant, nonprivileged documents" subject to Court's order

23 compelling production). Despite the repeated, under-oath, and Court-ordered

24 assurances, that they had searched for and produced all relevant documents,

25 Defendants continued to produce responsive documents that they had improperly

26 withheld. The wrongly withheld documents include communications with BAYC

27 NFT holders and communications about Defendants' profit intent.

28        This cross-examination demonstrated that Mr. Ripps lacks credibility as a

witness.  Therefore, **his entire declaration** cannot be relied upon.  If Mr. Ripps lied before in multiple declarations under penalty of perjury, to evade his discovery obligations and hide incriminating evidence, it is reasonable to conclude that he lied to avoid the consequences of his infringement.  Yuga Labs sufficiently challenged Mr. Ripps' declaration, and its contradictions by the evidentiary record show it is unreliable.  It should not be accepted as fact.

**Defendants' Response:**

The Court should accept Mr. Ripps's declaration because Mr. Ripps's declaration was uncontested because Yuga elected to forego any substantive cross-examination of Mr. Ripps on **any** portion of Mr. Ripps's declaration.  *See* Trial Tr. [Ripps] 267:7-271:9.  As the Supreme Court has explained, "[c]ross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  This is because purpose of cross-examination is "the direct and personal putting of questions and obtaining immediate answers." *Id.*; *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004) ("One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information[.]").  Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that "principle means" of testing Mr. Ripps credibility weighs decisively in favor of accepting Mr. Ripps's declaration.

Yuga incorrectly argues that Mr. Ripps's declaration was challenged by other evidence in the trial record.  Yuga did not show at trial that any of this other evidence in the trial record undermines Mr. Ripps's testimony, because Yuga never addressed that purported other evidence in any way at trial.  This is precisely why Yuga's failure to cross-examine Mr. Ripps is fatal to their new post-trial challenges to his testimony.  Having failed to challenge Mr. Ripps's testimony at trial, Yuga now seeks to take evidence out of context and mischaracterizes documents.  This cannot remediate their election not to contest Mr. Ripps's credibility at trial.

For example, Yuga incorrectly argues that Mr. Ripps's testimony that ApeMarket was in the ideation stage and that he had not decided on what ApeMarket would be was somehow contradicted by Mr. Cahen's testimony. Contrary to Yuga's argument, Mr. Cahen repeatedly testified that ApeMarket was in the ideation stage:

> Q.   You used the prospect of a marketplace to drive sales of RR/BAYC NFTs; correct?
>
> A.   What I would say I did was use the prospect of a potential marketplace **which we were in the ideation phase of**, I would say that I absolutely 100 percent used the prospect of that to draw attention to my protest of racism, anti-Semitism, and financial fraud being committed by Yuga Labs and Bored Ape Yacht Club.

Trial Tr. [Cahen] 231:21-232:3 (emphasis added).

> 258.   We discussed the idea of creating a system that would allow holders of popular NFT collections to trade their NFTs without being fleeced by centralized parties charging exorbitant fees.
>
> 259.   Ultimately, **we never agreed on what ApeMarket would be**.

Cahen Decl. ¶¶ 258-259 (Dkt. 344) (emphasis added).  Other witness also corroborated Mr. Ripps's testimony that he had not decided what ApeMarket would be.  Mr. Hickman testified about his ongoing discussion on potential designs of ApeMarket, explaining:

> Q.   BY MR. BALL:   You state here, "It's difficult to make the collection coexist without adding a friction step."
>
> A.   This is a discussion, **an ideation of different ideas, none of which were actualized**.

Trial Tr. [Hickman] 211:19-22 (emphasis added).

Yuga also incorrectly argues that the trial record contradicts Mr. Ripps's declaration regarding his intent in creating the RR/BAYC collection.  The full testimony that Yuga cites provides:

> 182.  My intention in making the RR/BAYC artwork was not to monetize Yuga's brand but instead to criticize Yuga's use of objectionable imagery and to educate the public about the nature of NFTs.
>
> 183.  As an artist, I believed that I could create an "army of educators" through my art.
>
> 184.  I believed that use of art to criticize Yuga and its imagery was protected by the First Amendment.

Ripps Decl. ¶¶ 182-184 (Dkt. 346) (uncontested).  Significant evidence in the record corroborates Mr. Ripps's declaration.  Mr. Ripps's and Mr. Cahen's contemporaneous communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize.  For example, in private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic purpose of the project, their intention that it would spread criticism of Yuga, and their intention that social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct.  JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.  Defendants' online discussion, which consisted of nearly the entirety of Defendants' public activities associated with RR/BAYC, confirms their intent.  In those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.  And lastly, the voluminous correspondence that Defendants received

1  shows that they did in fact create a "community of educations" as Mr. Ripps

2  intended, who have written letters expressing gratitude and support for the criticism

3  of Yuga.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035,

4  JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

5      Yuga incorrectly argues that this evidence regarding Mr. Ripps's intent has

6  been refuted by citing JTX-1574 to suggest that Mr. Ripps privately said that he

7  intended to make a million dollars from the RR/BAYC artwork.  But in reality, ***the***

8  ***document contains no such statement from Mr. Ripps***.  The entirety of Mr. Ripps

9  statements in JTX-1574 were "lolol" (which stands for "laugh out loud" repeated

10  twice).  In other words, Mr. Ripps was laughing at a ***joke*** made by Mr. Cahen.

11  And Mr. Ripps in the same exchange later stated that he needs "to get a front end"

12  in response to more jokes from Mr. Cahen (again, not a reference to any intent to

13  profit).  *See* JTX-1574.

14      Yuga also cites the unreliable Declaration of Gregory Solano.  Mr. Solano is

15  not credible given the many false and misleading statements contained in his

16  declaration.  For example, Mr. Solano was forced to concede on cross-examination

17  that his sworn declaration included a false statement claiming that Defendants

18  continue to receive royalties from sales on secondary marketplaces:

19  Q.   And you understand that Mr. Ripps and Mr. Cahen have testified
20      that they do not currently receive any royalties or creator fees from
21      sales on secondary marketplaces; right?

22  A.   Yes.

23  Q.   So you don't have any basis for your statement that their profits
24      continue to increase; correct?

25  A.   It's my understanding that they were collecting royalties or creator
26      fees from LooksRare for quite a while.  Although, those were
27      supposed to be donated to charity and never were.

28  Q.   ***They don't continue to increase; correct, sir?***

A.   *Correct.*

Q.   *That statement, that part of your witness statement is incorrect; right?*

A.   *Yes.*

Trial Tr. [Solano] 48:15-49:4 (emphasis added).  Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial.  Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that

1   question, and did you give that answer? A Yes.").  Mr. Solano's testimony

2   regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been

3   rebutted.  Mr. Solano could not identify a single person that ever bought an

4   RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1.  In

5   fact, no one has been able to identify a single confused consumer in the entirety of

6   this case.  *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

7          Yuga then incorrectly argues that Mr. Ripps's statement about his intent is

8   refuted by comments from other members of the RR/BAYC project.  But these

9   statements show no such thing.   For example, Yuga's cites JTX-801.208 in which

10  Mr. Cahen states that a priority is "getting RR/BAYC to sell out."  But as Mr.

11  Cahen explained at trial, the whole point of broad exposure through the RR/BAYC

12  collection (including getting people to reserve NFTs) was "spreading and

13  magnifying criticism of Yuga."  Cahen Decl. (Dkt. 344) ¶ 98.  And Mr. Cahen's

14  private communications in the same exhibit (JTX-801) confirm that the RR/BAYC

15  collection was created for artistic criticism: "… we actually all dig the idea of

16  Ryder literally hand minting these things.  It' quite funny and artistic." (JTX-

17  801.00010); "I love it. It puts the primary focus on the art … and is a conceptual

18  commentary." (JTX-801.00012-13); "It makes a strong statement.  This is art, not

19  Pokemon cards." (JTX-801.00013); "Because that's where the real importance lies.

20  RR/BAYC truly is very important conceptual art imo.  And now we are all helping

21  shape that art further." (JTX-801.00196).

22         Yuga also cites Mr. Hickman's deposition testimony in which he stated that

23  his "financial arrangement" was "a software developer being compensated for

24  making software."  Hickman Depo. Designations (Dkt. 394) at 129:3-6.  But Mr.

25  Hickman's testimony about this topic at trial was unequivocal about his purpose in

26  participating in the RR/BAYC project:

27

28

Q.   Why did you expect to make less from your work on this RSVP contract than your normal rate?

A.   I was contributing because I believe in standing up for the illegitimate business practices and imagery in this Yuga Labs BAYC NFT collection.

Trial Tr. [Hickman] 221:11-15.  Mr. Hickman further explained, "We are selling a receipt that says *I committed to this protest* that points to the same public [images] that a lot of different collections point to including Yuga Labs point to the same resource."  Trial Tr. [Hickman] 222:18-21 (emphasis in original).

Yuga also cites to Mr. Lehman's declaration to suggest that Defendants considered the RR/BAYC collection to be a "business venture."  Defendants never used the term "business venture" to describe the RR/BAYC project.  In fact, the only place where the term appears is in Mr. Lehman's declaration, which was a document drafted by Yuga and signed under coercion and under threat to Mr. Lehman's family.  Yuga's attorneys, not the Defendants, coined the term "business venture."  As demonstrated during trial, Mr. Solano relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that Yuga's counsel drafted the declaration and selected the phrase "business venture," and without having considered that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 37:20-22; [Solano] 40:3-14.  Mr. Solano also relied on the declaration without having considered that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won.  Trial Tr. [Solano] 38:17-19.

Lastly, Yuga argues that it somehow challenged Mr. Ripps's trial declaration through its cross-examination of Mr. Ripps concerning his earlier January 17, 2023,

verification.  But Yuga's cross-examination did not result in any impeachment or inconsistency:

> Q.    You produced those text messages, that you withheld throughout this case, including when you testified that you had no responsive documents on January 17, 2023; correct?
>
> A.    I think that we – the question was all communications that relate to the creation of RR/BAYC, which we felt was very much in the group chat that was called RR/BAYC.  And we produced that, which you guys have extensively relied on.

Trial Tr. [Ripps] 268:5-11.  Mr. Ripps further explained:

> Q.    And, Mr. Ripps, the text messages that you produced in this case include the RR/BAYC chat; right?
>
> A.    Yes.  We produced everything that we could, despite the fact that Yuga produced nothing.
>
> Q.    Exhibit Number JTX-801 is the RR/BAYC – on of the RR/BAYC chats that you produced; right?
>
> A.    I don't have it on the screen, but I see you holding them, and I see them –
>
> Q.    Do you see it now?
>
> A.    Yes.  We produced hundreds of thousands possibly of messages that all were between the four people involved in the final state of the project and basically everything to do with the development of this project.
>
> Q.    Did you believe, in good faith, that you had given Yuga everything that had to do with the development of this project?
>
> A.    Yes, I did.

1  Trial Tr. [Ripps] 270:3-18.  Mr. Ripps further testified that Yuga had sought

2  sanctions multiple times based on Yuga's false accusations of discovery

3  misconduct, and that this Court denied all of Yuga's baseless motions.  Trial Tr.

4  [Ripps] 269:21-270:2.  Mr. Ripps's trial testimony is no surprise given that the

5  verification stated "[I] produced all responsive documents that I have been able to

6  locate after a reasonable search" and further stated "I also understand that discovery

7  obligations are continuing, and I will produce any additional responsive materials

8  or information to the extent any are found based on a reasonable investigation.  ***I***

9  ***reserve the right to make changes or additions to any of these answers or***

10 ***document productions*** if it appears at any time that errors or omissions have been

11 made or if more accurate or complete information becomes available." Dkt. 109-33

12 (emphasis added Mr. Ripps fulfilled his discovery obligations and upheld his

13 verification by providing all the responsive material he located after a reasonable

14 search to the best of his knowledge.

15      The context and accurate content of the evidence Yuga cites shows that the

16 trial record does not contradict any portion of Mr. Ripps's declaration.  Yuga had

17 an opportunity to fully vet its false allegations at trial through cross-examination of

18 Mr. Ripps but instead elected not to do so.  The reliability of Mr. Ripps's testimony

19 was therefore unchallenged.

20      **Plaintiff's Reply:**

21      Defendants again ask the Court to relinquish its role as finder or fact in

22 assessing the credibility of witnesses and the weight of evidence.  *See Murray,*

23 *2006 WL 1708220, at *2*.  This attempt is unavailing in light of significant evidence

24 demonstrating that Mr. Ripps was chronically dishonest throughout this litigation.

25      As discussed *supra* ¶ 3, Defendants' responses lack merit.  Specifically:  (1)

26 evidence admitted at trial adequately discredits Mr. Ripps' trial declaration, (2)

27 Defendants fail to rebut Mr. Ripps' profit motives as evidenced in his text

28 messages, (3) Ape Market was operational and ready to launch, (4) Defendants

were motivated by profit not artistic intent, (5) there is ample evidence of confusion and post-sale confusion is actionable, (6) Mr. Ripps' excuses for his discovery violation are not credible, (7) Defendants fail to impeach Mr. Solano's accurate testimony, and (8) Mr. Lehman's declaration is truthful.