**Defendants' Disputed Post Trial Finding of Fact No. 7:**

The Court finds Defendants' witnesses Ryder Ripps, Jeremy Cahen, and Ryan Hickman credible.  Trial Tr. [Defendants' witnesses] 204:21-270:23; Ripps Decl. (uncontested); Cahen Decl.; Hickman Decl.

**Plaintiff's Basis for Dispute:**

Each of Defendants' witnesses lack credibility and Mr. Ripps' declaration is undermined entirely by his lack of credibility, documentary evidence, and testimony from witnesses who are credible.  Defendants' witnesses' testimony often conflicted with both their prior testimony and the testimony proffered at trial by the other two witnesses.  As such, they have been shown to be unreliable and should not be the basis of the Court's findings of facts or conclusions of law.

Mr. Cahen's testimony was littered with contradictions and demonstrated an attitude of disrespect towards the Court and these proceedings, which is part of the reason his testimony lacks credibility.  For example, in his trial declaration, Mr. Cahen testified that the ApeMarket marketplace was "just in the ideation phase." Cahen Decl. (Dkt. 344) ¶ 263.  However, at trial Mr. Cahen confirmed that there was a "ready-to-go Ape Market by . . . June 24, 2022."  Trial Tr.  at 247:10-12.  Mr. Cahen later confirmed that he had "no reason to doubt" that the marketplace could be launched within a matter of 48 hours.  *Id.* at 248:7-9.  That fact is also supported by documentary evidence submitted at trial.  *See* JTX-1027 (post from Ape Market twitter account advertising that "ApeMarket.com will go live within 24 hours of the final mint, which we will announce shortly").

Similarly, Mr. Cahen testified in his trial declaration that he "did not expect the project would result in consumer confusion," Cahen Decl. (Dkt. 344) ¶ 155, however Mr. Cahen's communications in the Team ApeMarket discord chat demonstrate that he was aware of the likelihood of confusion.  *See* JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.196 (Mr.

Lehman noting, "we should not under-estimate how confusing it is" and Mr. Cahen responding, "yeah."). This demonstrates that not only was Mr. Cahen aware of the likelihood of confusion—he was apathetic to it.

Mr. Cahen's testimony should also be given little weight due to his disrespect for the Court, the seriousness of this litigation, and his obligation to be truthful but failure to be so. Indeed, at trial Mr. Cahen repeatedly offered non-responsive rants in response to unrelated questions such as whether he "stimulated the sales of RR/BAYC NFTs by tweeting" about ApeMarket. Trial Tr. at 237:14-238:1. This is consistent with his hostile and obstructive deposition misconduct. *See e.g.*, Cahen Depo. Designations (Dkt. 395) at 80:5-7 ("Q: What is one thing [RR/BAYC] could stand for? A: It could be Ronald Reagan bought apples yesterday, classy. I don't know."). Mr. Cahen's lack of respect for the Court and its truth-finding processes should prevent any finding that he is credible.

Mr. Cahen also contradicted himself by claiming that he purchased a computer to help create the RR/BAYC collection several months prior to the conception of the project. Cahen Decl. (Dkt. 344) ¶ 174. Mr. Cahen tried to explain this at trial by stating that the "project" began before May of 2022, Trial Tr. at 229:5-13, but his latest tale contradicts the prior testimony by Defendants that they began working on the RR/BAYC NFTs in May of 2022. *See* Dkt. 200-3; Dkt. 200-4. When Defendants sought to skirt their discovery obligations and hide their communications about the real intent of their infringement, they claimed that the project began in May of 2022, but when they tried to claim expenses related to the project they claim that it began in 2021. Mr. Cahen either lied at trial or he lied to the Court during discovery. He is therefore discredited.

Finally, in both his declaration and at trial, Mr. Cahen testified that none of the Defendants had ever used the term "BAYC v3" to refer to their infringing NFTs and that the name was only used after Yuga Labs sent DMCA takedown notices to combat the infringement. Cahen Decl. (Dkt. 344) ¶ 253; Trial Tr. at 252:2-253:8.

This testimony is false.  Documentary evidence shows Mr. Ripps referring to his infringing NFTs as BAYC V3, before Yuga Labs had sent a single notice.  JTX-689 (tweet from Mr. Ripps promoting infringing NFTs as "bayc v3").  Given his myriad contradictions, non-responsive and truth-hiding rants, and omissions, the only conclusion is that Mr. Cahen is an unreliable witness.

Mr. Ripps also lacks credibility.  For instance, in his trial declaration Mr. Ripps testified that he "never reached a conclusion on what ApeMarket would actually be . . . ."  Ripps Decl. (Dkt. 346) ¶ 178.  However, as discussed above, ApeMarket was ready to launch within a matter of days.  Trial Tr. at 247:10-12 ("Q: And there was a ready-to-go Ape Market by February – excuse me – by June 24, 2022? A: Among other things, yes[.]").  And Defendants were marketing ApeMarket, and their plans to sell Yuga Labs NFTs alongside RR/BAYC NFTs as a way to increase the sales of the infringing RR/BAYC NFTs.  JTX 696 (posts from Ape Market Twitter account).

Mr. Ripps also testified that his "intention in making the RR/BAYC artwork was not to monetize Yuga Labs' brand."  Ripps Decl. (Dkt. 346) ¶ 182.  However, documents entered into evidence at trial showed that Defendants' intended to "make like a million dollars."  JTX-1574; Solano Decl. (Dkt. 342) at ¶ 72 ("Based on my review of public Twitter posts produced in discovery, Mr. Ripps boasted that he made over $1.2 million on his scam, implying no one could stop him from counterfeiting NFTs and harming the goodwill of the BAYC brand.").  And Mr. Ripps testified that he minted the RR/BAYC NFTs to his "personal wallet, ryder-ripps.eth" despite the fact that his wallet was named "ryder-ripps.eth" only *after* minting, most if not all of, the infringing NFTs.  *Compare* JTX-25, *with* JTX-36.  Thus, the narrative that customers would not be confused because they could see the NFTs were minted from Mr. Ripps' wallet is dismantled by the fact that it only bore Mr. Ripps' name **after** the initial mint and customers would not encounter the "ryder-ripps.eth" creator tag had they even tried to look.  Mr. Ripps can attempt to

couch his lies in "sarcasm," but the ultimate effect was confusion in the marketplace and a significant payday for Defendants.

Finally, Mr. Ripps repeatedly lied about his discovery obligations. Throughout discovery Mr. Ripps signed no fewer than three declarations (two of which were Court-ordered), under penalty of perjury, stating that he had searched his records and produced all responsive documents related to the RR/BAYC NFTs. JTX-1541 (Jan. 17, 2023); Dkt. 109-42 (Feb. 17, 2023); Dkt. 158 (Mar. 21, 2023). After each of these three declarations, however, Defendants continued to produce responsive documents after Yuga Labs independently discovered evidence of improper withholding. *See, e.g.*, JTX-1574-JTX- 1591 (text messages between Mr. Ripps and Mr. Cahen, withheld until March 21, 2023, discussing relevant topics such as Defendants' infringing NFT collection, Yuga Labs, Defendants' profit intent, Ape Market, and marketing). Defendants withheld documents such as ***hundreds of pages of text messages between*** them until March 21, 2023 — after Mr. Ripps verified under penalty of perjury that he produced all responsive documents, after the Court had to order responsive documents produced twice in response to Yuga Labs' discovery motions, and after Yuga Labs had already filed its motion for summary judgment. *See* Dkt. 145 (order requiring Defendants to produce communications). Defendants also produced responsive documents even after their March 21, 2023 declaration; for example, on April 11, 2023, Defendants produced messages with a BAYC NFT holder to whom Defendants were trying to provide an infringing NFT. Defendants have no excuse for their repeated improper withholding of material evidence and repeated lies under oath.

Mr. Ripps' testimony that the text message presented to him at trial did not have anything to do with the RR/BAYC project is another blatant lie. These documents that Mr. Ripps wrongly withheld until after Yuga Labs' summary judgment submission included text messages discussing airdropping more of Defendants' infringing NFTs to the wallets of those who have already purchased

them.  Thus, Mr. Ripps' testimony that he did not "really find it to have anything to do with the RR/BAYC project" is unbelievable.  Trial Tr. at 268:17-21; JTX-1574 (text messages in which Mr. Cahen suggests Mr. Ripps "airdrop like 10 more to each person who already bought one" and that if Mr. Ripps airdropped "20-30" he would "sell out within 48 hours" and "make like a million dollars").  Mr. Ripps' testimony reiterates what is obvious from the record: Defendants' stories change based on what is convenient for them at the time.  Mr. Ripps, a proven liar, is not a credible witness.

Mr. Hickman similarly lacks credibility.  Mr. Hickman also testified that ApeMarket was not ready to launch and was merely in the ideation phase.  Trial Tr. at 210:1-2.  As discussed above, this was proven false at trial.  Mr. Hickman testified in his trial declaration that he was unaware of instances of confusion stemming from the infringing NFTs.  Hickman Decl. (Dkt. 345) ¶ 92.  However, Mr. Hickman discussed with Defendants that consumers were confused by Defendants' misleading use of authentic BAYC NFT token IDs.  JTX-44.  Further, Mr. Hickman was an active participant in the Team ApeMarket discord chat where Defendants, Mr. Lehman, and Mr. Hickman himself raised the likelihood of confusion many times.  *See, e.g.*, JTX-801.195 (Mr. Lehman noting that people "making mistakes with apes is already a huge meme" and "Remember the 'average joes'?", and Cahen responding, "I mean that is unavoidable"); *infra* Paragraph 10.

Further, in his trial declaration Mr. Hickman testified about his and a family member's purportedly adverse reactions to the Bored Ape Yacht Club images, Hickman Decl. (Dkt. 345) ¶¶ 41-58, but when questioned by the Court at trial Mr. Hickman testified that he does not have any problem with selling NFTs that point to those exact same images.  Trial Tr. at 222:24.  Mr. Hickman's testimony that he found Yuga Labs' NFTs problematic is even more difficult to reconcile with the fact that he claimed to purchase a Bored Ape Yacht Club NFT after forming the supposed belief that it was problematic, and continued to purportedly own one up

until trial.  Hickman Decl. (Dkt. 345) ¶¶ 18-19, 21.  Finally, despite Mr. Hickman's testimony at trial that he did not want to profit off the RR/BAYC NFTs, Trial Tr. at 209:21-23, Mr. Hickman testified at deposition that he was financially motivated to develop the software that facilitated Defendants' infringement.  Hickman Depo. Designations (Dkt. 394) at 128:25-129:6 ("In this reference I'm specifically stating that I'm a developer.  I make software.  I charge to make software.  I have a record, a history, of charging to make software.  My financial arrangement for this whole thing is about a software developer being compensated for making software.").  Mr. Hickman lacks credibility.

Defendants' testimony was also contradicted by the declaration of their co-conspirator:  Mr. Lehman.  As noted above, Defendants frequently testified that they did not intend to profit from their infringement, but Mr. Lehman testified "based on more than a few conversations with Defendants, that the Business Venture was expected to make money by selling RR/BAYC NFTs and by potentially generating transaction fees from the sale of NFTs on Ape Market." JTX-1 at ¶ 11.  Despite Mr. Cahen's testimony that he did not anticipate his infringement to cause confusion in the marketplace, Mr. Lehman testified that "[o]n at least one occasion, Defendant Cahen affirmatively agreed with the concern about underestimating how confusing it would be to use the BAYC logo alongside the RR/BAYC logo on Ape Market." *Id.* at ¶ 22.  Indeed, all three witnesses testified that they did not expect their products to cause confusion even though Mr. Lehman testified that he "repeatedly shared [his] concerns with Defendants" that the RR/BAYC NFTs would cause confusion and lead to a lawsuit.  *Id.* at ¶ 21.  Mr. Lehman's testimony is corroborated by the documentary evidence, including principally the Team ApeMarket Discord (JTX-801).  The contradictions with Mr. Lehman's testimony and the documentary evidence highlight the dishonesty of Defendants' testimony and Mr. Hickman's testimony and demonstrate why the Court should discount their trial testimony completely.

**Defendants' Response**:

Yuga failed to impeach Mr. Ripps, Mr. Cahen, or Mr. Hickman during trial and the trial record does not contain any evidence showing that these witnesses are not credible or that they did not give truthful testimony.

Yuga tries to mischaracterize Mr. Cahen's testimony to suggest that he was contradicting himself.   But there is nothing inconsistent about Mr. Cahen testimony.   He testified that ApeMarket was in the ideation phase, which means that anything under development was subject to substantive changes pending Mr. Ripps's review and signoff on the website.  But simply because Mr. Ripps had not reviewed and signed off on anything in connection with ApeMarket did not mean that the RR/BAYC team was not working on the website and exploring different ideas to implement.

Yuga mischaracterized Mr. Cahen as saying that ApeMarket was "ready to go" by June 24, 2022.  But what Mr. Cahen actually said is that he did not know if ApeMarket was "ready to go" by June 24, 2022.  Mr. Cahen then also stated that he works with the high skilled engineers that can implement nearly any project within days and that ApeMarket did not require much work in the first place as it used open-source code:

> Q.    Sure.  By Friday, June 24, ,2022, you and your associates had built a functioning ApeMarket?
>
> A.    I'm not certain to answer that.  But I believe with the quality of engineers that I work with, we could pretty much deploy anything within reason within a 48-hour window.  So I always feel like the people that I work with are ready to go at the drop of a hat.  That's kind of how I look at that.
>
> Q.    And there was a ready-to-go ApeMarket by February – excuse me – by June 24, 2022?

A.   Among other things, yes, because this – a lot of the code used is open source.   And ApeMarket is very similar to other marketplaces.  The only differences that we were discussing that are really worth noting would be that it would be a cheaper source of infrastructure for the public to be able to utilize.

Trial Tr. [Cahen] 247:1-17.  And finally, ApeMarket was never released, and there was no evidence that the webpage apemarket.com was a functioning website.  Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested).

Yuga also accused Mr. Cahen of "disrespect for the Court" by making "non-responsive rants" in response to questions about ApeMarket stimulating sales of RR/BAYC NFTs.  But the trial transcript shows otherwise:

Q.   And in May and June of 2022, one of your goals for that apemarket.com domain was to use it to mint out the remainder of the RR/BAYC NFT collection; correct?

A.   *No.   That's theoretically impossible because doing that – creating an NFT marketplace would offer absolutely no functionality in terms of minting an already existing NFT contract.*

Q.   You used the prospect of the marketplace to drive sales of RR/BAYC NFTs; correct?

A.   There never existed a marketplace.

Q.   You used the prospect of a marketplace to drive sales of RR/BAYC NFTs; correct?

A.   What I would say I did was use the prospect of a potential marketplace which we were in the ideation phase of, I would say that I absolutely 100 percent used the prospect of that to draw attention to my protest of racism, anti-Semitism, and financial fraud being committed by Yuga Labs and Bored Ape Yacht Club.

Q.    You used the prospect of that marketplace to mint out the remained of the RR/BAYC NFT collection; correct?

A.    ***No, I did not.***

Trial Tr. [Cahen] 231:8-232:6 (emphasis added).   Yuga's citation to Mr. Cahen's deposition similarly cherry picks one question from a full-day of deposition testimony, and even then, the testimony Mr. Cahen gave is responsive to Yuga's question to give a hypothetical answer to "things" RR/BAYC could stand for.

Yuga further mischaracterized Mr. Cahen's testimony by incorrectly suggesting that he did not purchase a computer to work on the RR/BAYC project. The trial testimony shows that the 2021 purchase date is consistent with Mr. Cahen's work in connection with the RR/BAYC project and its protest of Yuga:

Q.    Would it surprise you that the date for that computer is December 2021?

A.    That would not surprise me at all, no.

Q.    Why?

A.    Because it's a date on a receipt.  I'm not sure what the point is, but I'm hearing you, yeah.

Q.    Okay.  So either the RR/BAYC project started in May 2022 or the RR/BAYC project started in December 2021, and you bought a computer for it; correct?

A.    The RR/BAYC project is a protest project.  And the protest began well, well before the RR/BAYC project did.  So if you are asking me why I make a connection between earlier dates and that project, it's because we spent about a year protesting in different ways before we released any sort of nonfungible token and rather, before Ryder did and I decided to join and help him expand his vision and protest.

Trial Tr. [Cahen] 227:11-228:1.

Finally, Yuga incorrectly argues that Mr. Cahen is not credible because he testified that Defendants never used the term "bayc v3" to refer to the RR/BAYC collection.   But Yuga was unable to impeach this testimony during cross-examination of Mr. Cahen and Yuga did not even attempt to cross-examine Mr. Ripps on this issue.  The exhibit that Yuga cites, JTX-689, also confirms that Mr. Cahen's testimony was true.  JTX-689 is a reply Mr. Ripps made on Twitter on May 13, 2022 to Mr. McNelis's question on what NFTs people are buying.  Mr. Ripps's reply is a satirical comment that has absolutely nothing to do with the RR/BAYC collection and, in fact, the comment was made before Mr. Ripps even started taking commissions for RR/BAYC NFTs.

Yuga also incorrectly argues that Mr. Ripps lacks credibility by stating that Mr. Ripps's testimony that ApeMarket was in the ideation stage and that he had not decided on what ApeMarket would be was somehow contradicted by Mr. Cahen's testimony.  But contrary to Yuga's argument Mr. Cahen repeatedly testified that ApeMarket was in the ideation stage:

> Q.   You used the prospect of a marketplace to drive sales of RR/BAYC NFTs; correct?
>
> A.   What I would say I did was use the prospect of a potential marketplace **which we were in the ideation phase of**, I would say that I absolutely 100 percent used the prospect of that to draw attention to my protest of racism, anti-Semitism, and financial fraud being committed by Yuga Labs and Bored Ape Yacht Club.

Trial Tr. [Cahen] 231:21-232:3 (emphasis added).

> 258.   We discussed the idea of creating a system that would allow holders of popular NFT collections to trade their NFTs without being fleeced by centralized parties charging exorbitant fees.

259.   Ultimately, *we never agreed on what ApeMarket would be*.

Cahen Decl. ¶¶ 258-259 (Dkt. 344) (emphasis added).  Other witness also corroborated Mr. Ripps's testimony that he had not decided what ApeMarket would be.  Mr. Hickman testified about his ongoing discussion on potential designs of ApeMarket, explaining:

> Q.   BY MR. BALL:  You state here, "It's difficult to make the collection coexist without adding a friction step."
>
> A.   This is a discussion, *an ideation of different ideas, none of which were actualized*.

Trial Tr. [Hickman] 211:19-22 (emphasis added).

Yuga also incorrectly argues that the trial record contradicts Mr. Ripps's declaration regarding his intent in creating the RR/BAYC collection.   The full testimony that Yuga cites provides:

> 182.   My intention in making the RR/BAYC artwork was not to monetize Yuga's brand but instead to criticize Yuga's use of objectionable imagery and to educate the public about the nature of NFTs.
>
> 183.   As an artist, I believed that I could create an "army of educators" through my art.
>
> 184.   I believed that use of art to criticize Yuga and its imagery was protected by the First Amendment.

Ripps Decl. ¶¶ 182-184 (Dkt. 346) (uncontested).  Significant evidence in the record corroborates Mr. Ripps's declaration.  Mr. Ripps's and Mr. Cahen's contemporaneous communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize.  For example, in private group chats

among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic purpose of the project, their intention that it would spread criticism of Yuga, and their intention that social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct.  JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.  Defendants' online discussion, which consisted of nearly the entirety of Defendants' public activities associated with RR/BAYC, confirms their intent.  In those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.  And lastly, the voluminous correspondence that Defendants received shows that they did in fact create a "community of educations" as Mr. Ripps intended, who have written letters expressing gratitude and support for the criticism of Yuga.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

Yuga incorrectly argues that this evidence regarding Mr. Ripps's intent has been refuted by citing JTX-1574 to suggest that Mr. Ripps privately said that he intended to make a million dollars from the RR/BAYC artwork.  But in reality, ***the document contains no such statement from Mr. Ripps***.  The entirety of Mr. Ripps statements in JTX-1574 were "lolol" (which stands for "laugh out loud" repeated twice).  In other words, Mr. Ripps was laughing at a ***joke*** made by Mr. Cahen.  And Mr. Ripps in the same exchange later stated that he needs "to get a front end" in response to more jokes from Mr. Cahen (again, not a reference to any intent to profit).  *See* JTX-1574.

Yuga also cites the unreliable Declaration of Gregory Solano. Mr. Solano is not credible given the many false and misleading statements contained in his declaration.  For example, Mr. Solano was forced to concede on cross-examination

that his sworn declaration included a false statement claiming that Defendants continue to receive royalties from sales on secondary marketplaces:

> Q.   And you understand that Mr. Ripps and Mr. Cahen have testified that they do not currently receive any royalties or creator fees from sales on secondary marketplaces; right?
>
> A.   Yes.
>
> Q.   So you don't have any basis for your statement that their profits continue to increase; correct?
>
> A.   It's my understanding that they were collecting royalties or creator fees from LooksRare for quite a while.   Although, those were supposed to be donated to charity and never were.
>
> Q.   ***They don't continue to increase; correct, sir?***
>
> A.   ***Correct.***
>
> Q.   ***That statement, that part of your witness statement is incorrect; right?***
>
> A.   ***Yes.***

Trial Tr. [Solano] 48:15-49:4 (emphasis added).  Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility

as a result of his repeated impeachment at trial.  Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes.").  Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted.  Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1.  In fact, no one has been able to identify a single confused consumer in the entirety of this case. *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

Yuga similarly attempts to argue that Mr. Ripps's narrative that the RR/BAYC collection being minted from his personal wallet is "dismantled" based on JTX-25 and JTX-26.  But these exhibits are printouts of the Etherscan website and how Etherscan chose to display the RR/BAYC collection.  In JTX-26, Etherscan represents Mr. Ripps's unique walled with "ryder-ripps.eth" and in JTX-25 Etherscan represents Mr. Ripps's unique wallet with a unique alpha-numeric identified that Etherscan itself allows you to verify through use of the website.  Critically, Defendants have not control over Etherscan or how it chooses to represent the RR/BAYC collection.  And, as Yuga's Chief Technical Officer admitted at trial, consumers of NFTs do not use wallet names to verify NFTs but

instead rely on marketplaces or by checking the associated smart contract address. Trial Tr. [Atalay] 135:2-25.

Lastly, Yuga argues that it somehow challenged Mr. Ripps's trial declaration through its cross-examination of Mr. Ripps concerning his earlier January 17, 2023, verification. But Yuga's cross-examination did not result in any impeachment or inconsistency:

> Q.   You produced those text messages, that you withheld throughout this case, including when you testified that you had no responsive documents on January 17, 2023; correct?
>
> A.   I think that we – the question was all communications that relate to the creation of RR/BAYC, which we felt was very much in the group chat that was called RR/BAYC. And we produced that, which you guys have extensively relied on.

Trial Tr. [Ripps] 268:5-11. Mr. Ripps further explained:

> Q.   And, Mr. Ripps, the text messages that you produced in this case include the RR/BAYC chat; right?
>
> A.   Yes. We produced everything that we could, despite the fact that Yuga produced nothing.
>
> Q.   Exhibit Number JTX-801 is the RR/BAYC – on of the RR/BAYC chats that you produced; right?
>
> A.   I don't have it on the screen, but I see you holding them, and I see them –
>
> Q.   Do you see it now?
>
> A.   Yes. We produced hundreds of thousands possibly of messages that all were between the four people involved in the final state of the project and basically everything to do with the development of this project.

Q.    Did you believe, in good faith, that you had given Yuga everything that had to do with the development of this project?

A.    Yes, I did.

Trial Tr. [Ripps] 270:3-18.  Mr. Ripps further testified that Yuga had sought sanctions multiple times based on Yuga's false accusations of discovery misconduct, and that this Court denied all of Yuga's baseless motions.  Trial Tr. [Ripps] 269:21-270:2.  Mr. Ripps's trial testimony is no surprise given that the verification stated "[I] produced all responsive documents that I have been able to locate after a reasonable search" and further stated "I also understand that discovery obligations are continuing, and I will produce any additional responsive materials or information to the extent any are found based on a reasonable investigation. *I reserve the right to make changes or additions to any of these answers or document productions* if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available." Dkt. 109-33 (emphasis added Mr. Ripps fulfilled his discovery obligations and upheld his verification by providing all the responsive material he located after a reasonable search to the best of his knowledge.

Lastly, Yuga also incorrectly asserts that Mr. Hickman is not credible. Yuga's basis for this accusation is simply because Mr. Hickman testified that ApeMarket was in the ideation stage.  But, as discussed above, the trial evidence consistently shows that the ApeMarket *was* in the ideation stage and still subject to Mr. Ripps's review and approval.

Yuga also argues that Mr. Hickman is not credible because he purportedly "wrongly" testified that he is not aware of any actual instance of confusion.  But the trial record confirmed that *no one* is aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).  Yuga then cites to various documents (JTX-44, JTX-

801.195) to argue that Mr. Hickman purportedly believed that consumers would be confused by the RR/BAYC project. But these documents involve discussion in how to design **ApeMarket** to ensure that the website design was not confusing to users of the website. And, in fact, Yuga cross-examined Mr. Hickman about this issue and confirmed that Mr. Hickman and other members of the RR/BAYC project were not discussing confusion regarding the source of RR/BAYC NFTs. Instead, as Mr. Hickman explained, "[t]his is our attempt to make it as clear as possible. We are having discussion on how to make sure it was very clear for users." Trial Tr. [Hickman] 212:22-24.

Yuga also argues that Mr. Hickman is not credible because he did not have a problem working on an NFT project that points to public digital images that he finds to be offensive. But Yuga's argument missing the mark. As Mr. Hickman explained, the whole purpose of his work on the RR/BAYC collection was to protest the offensive imagery that Yuga had been normalizing:

| | |
|---|---|
| THE COURT: | When you are selling defendants' NFTs, you are selling Yuga's images. |
| THE WITNESS: | *No. We are selling the record.* |
| THE COURT: | Okay. But the record points to and displays those images. |
| THE WITNESS: | *So the images are public.* They are available for anybody to navigate to on the Internet. |
| THE COURT: | Right |
| THE WITNESS: | *We are selling a receipt that says I committed to this protest that points to the same public [image] that a lot of different collections point to* including Yuga Labs pointing to the same resource. |

Trial Tr. [Hickman] 222:10-22 (emphasis added). Yuga then suggests that Mr. Hickman is not credible because he himself owns a BAYC NFT even though he

finds the images offense.  But Mr. Hickman's declaration explains, "When I first saw Bored Ape Yacht Club images, I found the imagery problematic, but I did not originally pay I much attention."  Hickman Decl. ¶ 18.   Only later, when speaking with is great aunt, did Mr. Hickman realize how harmful and dangerous Yuga's misconduct is:

48.   We then had a long discussion about why Yuga's use of ape images was a serious issue.

49.   My great aunt explained to me the history of siminaization, which involved depicting African Americans as apes to dehumanize them.

50.   My great aunt also explained how African Americans are often called "monkeys" as a deeply offensive insult.

51.   My great aunt also reminded me that our family had dealt with and had to overcome these kinds of acts of racism over many generations

52.   My great aunt explained that, if simianization is becoming popular again, normalized, and incentivized, this would be very dangerous for African Americans.

53.   ***My great aunt described Yuga's acts as "a step back 100 years."***

54.   ***This conversation with my great aunt caused me to think more critically about Yuga's offensive imagery and why it needs to be taken seriously.***

Hickman Decl. ¶¶ 48-54 (emphasis added).  There is nothing about Mr. Hickman's conversation with his great aunt and how he became part of the RR/BAYC movement that makes him an untrustworthy witness.

And finally, Yuga argues that Defendants are not credible because their testimony is contradicted by Mr. Lehman's declaration, which was signed under threat and coercion.  Defendants never used the term "business venture" to describe

the RR/BAYC project.  In fact, the only place where the term appears is in Mr. Lehman's declaration, which was a document drafted by Yuga and signed under coercion and under threat to Mr. Lehman's family.  Yuga's attorneys, not the Defendants, coined the term "business venture."  As demonstrated during trial, Mr. Solano relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that Yuga's counsel drafted the declaration and selected the phrase "business venture," and without having considered that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 37:20-22; [Solano] 40:3-14.  Mr. Solano also relied on the declaration without having considered that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won.  Trial Tr. [Solano] 38:17-19.

Yuga also references Mr. Lehman statement regarding the design of ApeMarket, but again, as Mr. Hickman confirmed during trial, these are statements on selecting a design for ApeMarket that would ensure that users of the website would not be confused by the website design.

**Plaintiff's Reply:**

Defendants' attempts to rehabilitate their witnesses are unavailing. Defendants and their business partner lied; repeatedly.  Rather than accept the obvious facts and do the best they can with them, Defendants lean into their lies. Defendants' attempt to manufacture facts should be rejected for what it is.

Additionally, as discussed *supra* ¶ 3, Defendants' responses lack merit. Specifically:  (1) evidence admitted at trial proves Mr. Ripps' trial declaration is littered with falsities, (2) Defendants fail to rebut Defendants' obvious profit motives, (3) Ape Market was operational and ready to launch, (4) Defendants were not motivated by artistic intent, (5) Defendants' unreliable communications with third-parties do not negate evidence of actual confusion or the likelihood of post-sale confusion, (6) Mr. Ripps' excuses for his discovery violation are not credible,

(7) Defendants fail to impeach Mr. Solano's accurate testimony, and (8) Mr.
Lehman's declaration is truthful.

The Court also should reject Defendants' responses because (1) Defendants
lied about "Bored Ape Yacht Club V3," (2) Defendants admit that Mr. Ripps'
wallet only displayed "ryder-ripps.eth" after minting the infringing NFTs, (3) Mr.
Cahen's testimony is not credible, (4) Mr. Hickman's testimony is not credible, and
(5) Defendants knew that confusion was the likely result of their infringement.

**Defendants Continue To Lie About "Bored Ape Yacht Club V3":**
Defendants' ever-shifting narrative, trying to find an explanation for "BAYC V3"
and "Bored Ape Yacht Club V3" that will withstand scrutiny, is transparently false.

Defendants first claimed that some marketplaces used "Bored Ape Yacht Club
V3" in response to dozens of takedown notices. *See* Cahen Decl. (Dkt. 344) ¶ 253.
The evidence definitively disproves that, and Defendants seem to no longer stand
by Mr. Cahen's sworn testimony on this point.  The record shows that the first
takedown of the collection occurred on May 17, 2022.  Dkt. 149-5 (table of
takedown requests in summary judgment record).  ***Every single takedown request***
occurs after Defendants were using the "V3" name to promote their infringing NFT
collection.  JTX-689 (May 13, 2022 tweet by Mr. Ripps using "bayc v3"); JTX-
1249 (May 14, 2022 tweet by Mr. Ripps showing "Bored Ape Yacht Club V3" as
the name of his NFT); *see also* JTX-690 (Mr. Ripps sharing a link to the X2Y2
marketplace with "bored-ape-yacht-club-v3" in the URL on May 17, 2022, before a
single takedown request was sent to X2Y2).

After that takedown explanation fell apart, Mr. Cahen claimed that "I myself,
nor anyone on the team, ever used that label or name or whatever you want to call
it.  V3 is something that we have absolutely nothing to do with."  Trial Tr. 255:4-7.
This sworn testimony in open court reaffirmed his commitment to the story told in
his declaration that he and his partners "did not promote the RR/BAYC collection
as BAYC V3 or Bored Ape Yacht Club V3 and it is not the name of a project that

we have ever been involved with or familiar with."  Cahen Decl. (Dkt. 344) ¶ 251.

And again at trial, he testified "the V3 thing is never something that I used or Ryder

used or Ryan Hickman used or Mr. Lehman used."  Trial Tr. 253:15-21.  When

asked again about Mr. Ripps' use of the name "BAYC V3," Mr. Cahen testified "I

literally just told you a moment ago that we never used that nomenclature."  Trial

Tr. 254:22-25.  Yet, documentary evidence shows Mr. Ripps using the BAYC V3

on the ***same day he created the RR/BAYC smart contract***.  JTX-689 (Ripps' use of

"bayc v3" on May 13, 2023); JTX-600 (showing creation of the RR/BAYC smart

contract on the same date).  It is a provable lie that Mr. Ripps "never used" and had

"absolutely nothing to do with" the BAYC V3 name.

Pivoting again to reframe this lie, Defendants now seem to concede that Mr.

Cahen lied under oath when he testified that the BAYC name was the result of 27

takedowns, and again when he testified that none of the Defendants or their co-

conspirators ever used the name, but instead they now claim that "[BAYC V3] has

nothing to with the RR/BAYC" NFTs and that it was simply an off-the-cuff joke.

This explanation strains credulity.  Not only did Defendants never offer this

explanation until their other explanations fell apart and they needed to fall back on

claiming it was all a joke, but no evidence in the record supports how it was a joke

for Defendants to refer to their infringing NFTs by a name that coincidentally came

into existence the same day their collection was created.  And even if Defendants

were promoting their collection by the Bored Ape Yacht Club V3 name as a joke,

they fail to explain how X2Y2 (JTX-690), Bloomberg (JTX-701), and OpenSea

(JTX-1249) all coincidentally used the same name to refer to their NFT collection

that was first coined by Mr. Ripps ***on the day he created the immutably infringing

smart contract***.  And, their explanations aside, Defendants fail to explain how their

now-conceded use of the Bored Ape Yacht Club V3 name to refer to their

infringing NFTs, and linking to sales pages using that name, is anything other than

Defendants using the V3 name to promote the sales of RR/BAYC NFTs.

Defendants ask the Court to abandon reason in favor of their farcical narrative of jokes and coincidences.  And now, recognizing how incredible their story has become, Defendants blame Yuga Labs for not cross-examining Mr. Ripps on Mr. Cahen's obvious lies.  But Mr. Ripps says nothing about this topic in his trial declaration, remarkably failing to address under oath his use of "BAYC V3" and "Bored Ape Yacht Club V3" to market RR/BAYC NFTs.  Instead, he left it to Mr. Cahen to provide the cover story, but Mr. Cahen's lies fail to withstand scrutiny.

**Defendants Admit Mr. Ripps' Wallet Did Not Display His Name Until After Minting The RR/BAYC NFTs:**  Defendants now admit that Mr. Ripps' wallet address did not identify him until after the RR/BAYC NFTs were minted.  But, they claim that they "have not control over Etherscan or how it chooses to represent the RR/BAYC collection."  That is beside the point—Defendants have argued that consumers would have known that the infringing NFTs were not authentic BAYC NFTs by looking at the creator name.  *See* Ripps Decl. (Dkt. 346) ¶ 161 ("Anyone with access to *etherscan.io* could see that the collection and the minting contract were minted by me, and not by Yuga Labs.").  Defendants' admission confirms the falsity of that statement and concedes that consumers would have been confused prior to the creator field showing Mr. Ripps' name.

But even after the creator field was changed, Defendants have no evidence that this field was sufficient to dispel the confusion they created.  This field does nothing to address initial-interest confusion, post-sale confusion, or confusion as to sponsorship or affiliation.  This is in part because, as the evidence admitted at trial shows, Mr. Ripps immutably labeled the infringing collection with the name "Bored Ape Yacht Club" and the Symbol "BAYC."  *See* JTX-600; *see also* Trial Tr. 130:19-22.  And while not responsive to the issue of Mr. Ripps' credibility, Defendants misrepresent Mr. Atalay's testimony pertaining to how consumers verify their NFTs.  *See infra*, ¶ 68.

**Defendants Fail To Rehabilitate Mr. Cahen:**  Defendants' attempts to rehabilitate Mr. Cahen fall far short of their goal.  Mr. Cahen's testimony that Ape Market was still in the "ideation" stage is false for the reasons outlined *supra* ¶ 3. That Defendants and their business partner are aligned on this dishonest characterization does not make it true.  None of these witnesses are credible, and Mr. Lehman's testimony and the written record prove the truth.  And as explained above, Mr. Cahen's testimony about "BAYC V3" is plainly dishonest.

Defendants accuse Yuga Labs of cherry-picking quotes to demonstrate Mr. Cahen's deposition misconduct, but Mr. Cahen launched into non-responsive rants no less than 18 times over the course of his deposition, and he was similarly non-responsive at trial.  *See* Dkt. 271 (notice of lodging marked up copy of Mr. Cahen's deposition testimony).  Defendants' argument that Mr. Cahen's testimony that RR/BAYC could stand for "Ronald Reagan bought apples yesterday, classy" was responsive to the question in a lawsuit about the RR/BAYC NFTs is flatly bad faith.  Mr. Cahen has consistently proven himself to be evasive, non-responsive, dishonest, and disrespectful to the Court and judicial process.

Defendants' attempts to rehabilitate Mr. Cahen's testimony about his purchase of a computer purportedly to use on the RR/BAYC NFTs is also unavailing.  Mr. Cahen's pattern of contradictory and vacillating testimony proves that he lied to the Court repeatedly and without trepidation.  First, Defendants swore under oath that they had produced communications from "mid-May, 2022, which is also the same time period that the RR/BAYC Project began."  *See* Dkt. 200-3; Dkt. 200-4.  But at trial Mr. Cahen testified that the project began "well, well before" the minting of the RR/BAYC NFTs.  Trial Tr. at 227:20-21. Defendants' rebuttal misses the point, Mr. Cahen's testimony that the computer he purchased in 2021 was "for the project" directly contradicts his previous testimony that "the RR/BAYC project began" in "mid-May, 2022."  *Compare* Cahen Decl. (Dkt. 344) ¶ 174; Dkt. 200-3.  Here again, Defendants' story changes based upon

1   their desired outcome.  Whether the "project" began in 2021 or 2022, Mr. Cahen

2   lied.

3          **Defendants Fail To Rehabilitate Mr. Hickman:**  Defendants' rehabilitation

4   of Mr. Hickman similarly falls flat, and Mr. Hickman has more recently attempted

5   to deceive Judge Mahan in the District of Nevada, which further serves to

6   undermine his testimony in this case.

7          Mr. Hickman's testimony pertaining to Ape Market is discredited for the

8   reasons discussed *supra* ¶ 3.  Contrary to Defendants' assertion that Mr. Hickman

9   was "not aware of a single instance of confusion," Mr. Hickman's communications

10  with Defendants demonstrate that he was aware that their infringement would cause

11  confusion.  *See* JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was

12  "difficult to make the collections coexist" because "they are the same art" and

13  "same logos"); JTX-801.196 (Mr. Lehman demonstrating what an overlay might

14  look like and recommending not to "in the marketing show screenshots like the

15  ones [Mr. Hickman] showed" "[b]ecause it Is too confusing to the 'average joe'");

16  *see also* JTX-44 ("people believe the tokenId should match the RR ID.  that is

17  where they get confused").  While Mr. Hickman's conversations may have been

18  geared towards designing Ape Market, these conversations were necessary because

19  of the similarities between Yuga Labs' NFTs and Defendants' infringing NFTs that

20  would be sold on Ape Market just as they were confusingly sold on other

21  marketplaces.  If Mr. Hickman was aware that consumers would be confused on

22  Ape Market, he would be aware that they would also be confused elsewhere.

23         Defendants also fail to rehabilitate Mr. Hickman's testimony about his belief

24  that Yuga Labs' NFTs were "problematic."  Mr. Hickman allegedly bought a Bored

25  Ape Yacht Club NFT, held that NFT, and sold infringing NFTs that point to the

26  exact same images as the Bored Ape Yacht Club NFTs all *after* he purported found

27  the images problematic, Hickman Decl. (345) ¶ 18, and *after* he purportedly had a

28

1  conversation with his great-aunt about the images.  *Id.* at ¶¶ 48-54.  Mr. Hickman's

2  *conduct* contradicts his testimony rendering it not credible.

3      Mr. Hickman's recent sworn statements in the related lawsuit against him

4  also demonstrate that he is not a credible witness, and that he is willing to lie under

5  oath where it best serves him.  In Yuga Labs' lawsuit against Mr. Hickman that is

6  currently pending in the District of Nevada, Mr. Hickman makes false

7  representations to the court and disclaims his role as one of the lead developers in

8  the RR/BAYC scam.  Specifically, in an effort to vacate the default judgment

9  entered against him, Mr. Hickman states under oath, "I previously provided

10 testimony in the *Yuga Labs, Inc., v. Ryder Ripps, Jeremy Cahen*, Case No. 2:22-cv-

11 04355-JFW-JEM (C.D. Cal. 2022) case that my only involvement in the websites

12 located at the domain names <rrbayc.com> and <apemarket.com> ('Domain

13 Names') included making some contributions to the 'RSVP Smart

14 Contract.'").  Hickman Decl. ISO Reply to Motion to Vacate Default Judgment

15 (Dkt. 38-1), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev.

16 Sept. 20, 2023), at ¶ 3.

17     This statement is demonstrably false and directly contradicted by the record

18 in this case.  In Mr. Hickman's prior testimony before ***this*** Court, he claimed to be a

19 major contributor to the development and implementation of the RR/BAYC and

20 Ape Market websites.  *See* Hickman Depo. Designations (Dkt. 394) at 42:17-19

21 ("[T]he smart contract coders and website developers in that context is myself and

22 Tom."); *see also* Dkt. 271 (notice of lodging Mr. Hickman's marked up deposition

23 transcript) at 211:1-4 ("Q: Technically, as of the 21st of June you're the primary

24 person that's working on Ape Market? / A: That's fair to say. That's fair to say");

25 Hickman Decl. (Dkt. 345) ¶ 69 ("I also helped Mr. Ripps by working on developing

26 the rrbayc.com website, which was where collectors would be able to use the RSVP

27 program to make reservations."); ¶ 70 ("Mr. Ripps explained what he wanted the

28 rrbayc.com website to look like, and I did my best to implement his creative

vision.").  Mr. Hickman's blatant contradictions and willingness to lie for personal gain demonstrate his lack of credibility as a witness and render his declaration unreliable.

**Defendants Knew That Their Infringement Would Result In Confusion:** Defendants were repeatedly warned that their infringing NFTs would cause confusion.  Their refusal to heed these warnings demonstrate their intent to infringe and cause confusion.  Indeed, significant evidence shows that Defendants knew they were infringing and creating confusion.  JTX-801.371 (Cahen to Ripps:  "per our attorney we may just need to change the skull / If we want to fight trademark"); JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated.  A lot of people don't have the technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker).  Instead of making changes, such

as those recommended by their lawyer or Mr. Lehman, Defendants continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs.  Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").