**<u>Defendants' Disputed Post Trial Finding of Fact No. 8</u>:**

The Court finds the testimony of Plaintiff's witness Greg Solano lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition – and we can pull it up on the screen – at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes.").

**<u>Plaintiff's Basis for Dispute</u>:**

Defendants fail in attempting to impeach Mr. Solano on the basis that his deposition testimony on two topics is allegedly inconsistent with his testimony on those topics months later.  Mr. Solano's acquisition of further knowledge about the facts of this case after his deposition is not impeachment.

The number of documents at issue in this case is voluminous, and discovery was just beginning at the time of his deposition on January 17, 2023.  Since then, Mr. Solano has continued to learn and better understand the evidence in this case. Importantly, since his deposition, the issues in this case have become more focused and certain evidence has become more important and well known.  So, it should come as no surprise that, in preparation for trial, Mr. Solano reviewed documents that were not used as exhibits at his deposition.  For example, he "reviewed many of Defendants' tweets marketing their infringing NFT collection" (Solano Decl.

1  (Dkt. 342) ¶ 35), some of which demonstrated that Mr. Ripps created an NFT

2  collection originally called "Bored Ape Yacht Club V3" or "bayc v3." *Id.* ¶ 65

3  (citing exhibits); JTX-689 (tweet from Mr. Ripps promoting infringing NFTs as

4  "bayc v3"); JTX-690, JTX-1249.

5       Defendants fail to impeach Mr. Solano's statement at Trial Tr. 32:19-33:11

6  regarding Bored Ape V3, because the "Bored Ape V3" referenced in Mr. Solano's

7  deposition is different than the "Bored Ape Yacht Club V3" at issue in the cited line

8  of trial testimony. Mr. Solano cannot be impeached by reference to deposition

9  testimony covering an entirely different topic. To be clear, the quoted deposition

10  testimony relates to a Twitter page titled "@BoredApeV3," which Mr. Ripps claims

11  he does not control, and which was not at issue at trial. Solano Depo. (Dkt. 271) at

12  151:2-152:24. But, the cited trial testimony, discusses a section of Mr. Solano's

13  declaration relating to Mr. Ripps naming his NFT collection "Bored Ape Yacht

14  Club V3." *Cf.* Trial Tr. at 31:6-33:11.

15       Defendants likewise fail to impeach Mr. Solano's statement at Trial Tr. 34:9-

16  19 regarding ApeMarket.com. As he explained, Mr. Solano "review[ed] [] the

17  webpages generated by running the source code for the planned ApeMarket.com

18  website," informing his response that Yuga Labs obtained the code from Mr.

19  Lehman. Solano Decl. ¶ 49. Mr. Solano cited the referenced source code in

20  connection with this topic and based his knowledge on these exhibits. *Id.* JTX-

21  806–JTX-809. Those webpages were not generated from the source code produced

22  by Mr. Lehman until ***after*** Mr. Solano's deposition. Mr. Solano gained knowledge

23  of these pages, and he was able to truthfully testify at trial as to that knowledge.

24  Defendants did not ask Mr. Solano where or how he came to his knowledge, but he

25  attaches the basis for that knowledge to his declaration. Solano Decl. (Dkt. 342)

26  ¶ 49 (citing JTX-806–JTX-809, to which Defendants did not object). The two

27  examples of supposed impeachment to which Defendants point fail to impeach Mr.

28  Solano's accurate knowledge.

**Defendants' Response**:

Yuga ignores the substance of Greg Solano's cross-examination, which demonstrated that Mr. Solano's declaration included numerous false statements. Mr. Solano's cross-examination also included multiple examples of impeachment. For example, Mr. Solano was forced to concede on cross-examination that his sworn declaration included a false statement claiming that Defendants continue to receive royalties from sales on secondary marketplaces:

> Q.    And you understand that Mr. Ripps and Mr. Cahen have testified that they do not currently receive any royalties or creator fees from sales on secondary marketplaces; right?
>
> A.    Yes.
>
> Q.    So you don't have any basis for your statement that their profits continue to increase; correct?
>
> A.    It's my understanding that they were collecting royalties or creator fees from LooksRare for quite a while.   Although, those were supposed to be donated to charity and never were.
>
> Q.    ***They don't continue to increase; correct, sir?***
>
> A.    ***Correct.***
>
> Q.    ***That statement, that part of your witness statement is incorrect; right?***
>
> A.    ***Yes.***

Trial Tr. [Solano] 48:15-49:4 (emphasis added).  Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr.

Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).

Mr. Solano lacks credibility also because his allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted. Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. In fact, no one has been able to identify a single confused consumer in the entirety of this case. *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

Mr. Solano was also repeatedly impeached at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes.").

Yuga attempts to rehabilitate Mr. Solano's declaration by pointing to JTX-689 and JTX-690 as supporting his false accusation that Defendants used "bayc v3" and "Bored Ape Yacht Club V3" in connection with the RR/BAYC collection. However, those exhibit only provide further support showing that Mr. Solano's declaration is misleading and that he is not a credible witness. JTX-689 is a reply Mr. Ripps made on Twitter on May 13, 2022 to Mr. McNelis's question on what NFTs people are buying. Mr. Ripps's reply is a satirical comment that has nothing to do with the RR/BAYC collection and, in fact, the comment was made before Mr.

Ripps even started taking commissions for RR/BAYC NFTs.  JTX-690 is a Twitter post by Mr. Ripps of the link to the x2y2.io page for the RR/BAYC collection.  At no point did Mr. Ripps state "BAYC V3" or "Bored Ape Yacht Club V3" in this post as it simply contains a link.  And while the URL does contain "bored-ape-yacht-club-v3," Mr. Ripps had no control over the URL that x2y2.io used or how it chose to auto-populate pages.

Mr. Solano similarly gave untrue testimony regarding ApeMarket.   Trial Tr. [Solano] 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes.").  Yuga attempts to rehabilitate Mr. Solano's testimony regarding ApeMarket by arguing that Mr. Solano gained knowledge regarding the existence of the website after his deposition.  But Yuga's explanation does not make sense because Mr. Solano has no personal knowledge regarding ApeMarket, is not competent to testify about the contents of source code, and further lacks the requisite knowledge regarding Defendants' ideation of the website.  And, in fact, the trial record shows that Mr. Solano's testimony regarding the existence of ApeMarket is demonstrably false.  ApeMarket was never released, the development of the website apemarket.com was never completed, and there was never a functioning marketplace.  Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested).  In fact, Mr. Ripps had never decided on what he wanted ApeMarket to be and had never signed off any proposed marketplace worked on by the RR/BAYC team.  Ripps Decl. ¶ 178 (Dkt. 346) (uncontested).  Mr. Cahen and Mr. Hickman also confirmed that ApeMarket never made it past the ideation stage.  Cahen Decl. ¶¶ 258-259 (Dkt. 344); Trial Tr. [Hickman] 211:21-22.

**Plaintiff's Reply:**

Defendants fail to impeach Mr. Solano's testimony. Defendants' cross-examination of Mr. Solano demonstrates only that Mr. Solano updated his testimony to reflect further fact discovery over the course of litigation. This is unsurprising and unspectacular. Mr. Solano is a reliable witness.

As discussed *supra*, Defendants' responses lack merit. Specifically, (1) Defendants fail to impeach Mr. Solano's accurate testimony (*supra* ¶ 3), (2) Mr. Lehman's declaration is truthful (*Id.*), (3) Ape Market exists and was ready to launch (*Id.*); (4) Defendants continue to lie about "BAYC V3" (*supra* ¶ 7).

Additionally, the Court should reject Defendants' responses because (1) there is ample evidence of confusion in the record, and (2) Ape Market was a marketing tool used to promote the RR/BAYC NFTs.

**There Is Ample Evidence Of Confusion In The Record:** Defendants' attempt to impeach Mr. Solano by claiming that he was unaware of confusion in the marketplace is unavailing. Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion. SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Deposition at 290:4-9; JTX-1049; Berger Declaration (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7. Defendants were aware of the confusion. *See, e.g.*, JTX-801.195 (Mr. Lehman noting that people "making mistakes with apes is already a huge meme" and "Remember the 'average joes'?", and Cahen responding, "I mean that is unavoidable"). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341)¶¶ 13.a-c, 16, 47, 48, 73, 81, 82.

Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

As Ms. Muniz testified at trial, "people came that were lured in because they believed it was a BAYC and then were, like, oh, it's not. But it's a really, really good fake. And it's such a good fake that it actually convinced Twitter and I mean Twitter from a front-end user interact platform but also Twitter as individuals and people in a community and consumers. So I believe people were lured in thinking it was authentic BAYC then realized, oh, wait, it's not, but it's a cheap version that's really, really good. It's a really good fake." Trial Tr. at 83:19-84:3. Confusion in the marketplace is evident throughout the trial record.

**The @ApeMarketplace Twitter Account And The Ape Market NFT Marketplace Were Used To Promote RR/BAYC:** Defendants created the @ApeMarketplace Twitter account to promote the Ape Market marketplace and their infringing RR/BAYC NFTs. The Tweets from the account confirm that Defendants used @ApeMarketplace to promote Ape Market. One such Tweet on June 20 asks, "Are you ready for ApeMarket.com, anon?" and another on June 13 teases the release of Ape Market stating "Get Ready" alongside a screenshot of Ape Market. JTX-696. This purely commercial endeavor highlights Defendants' intent to profit, not criticize or make art. And Mr. Cahen lied at trial when, under oath, he stated that he did not "plan to stimulate the sales of RR/BAYC NFTs by teasing the future release of ApeMarket." Trial Tr. at 234:15-18. Mr. Cahen tweeted from @ApeMarketplace a link to reserve an RR/BAYC on multiple occasions and on June 2 he tweeted that "[l]isting requires holding RR/BAYC." JTX-696. Defendants' own internal communications confirm the lie. On June 1 Mr. Cahen stated, "my goal for today is to create an announcement that will create hype and volume, we want to mint out the remainder of that collection." JTX-801.221. On

that same day Mr. Cahen tweeted from @ApeMarketplace a screenshot of Ape Market with an image of an RR/BAYC and a link to reserve an RR/BAYC. JTX-696. This was a direct attempt to use the prospect of Ape Market to promote Defendants' infringing NFTs. Defendants' claim that Ape Market, @ApeMarketplace, and RR/BAYC are not connected is obviously false. The Tweets in JTX-696 repeatedly show the look, functionality, and intent of Ape Market and the infringing RR/BAYC NFTs within Ape Market.