**Defendants' Disputed Post Trial Finding of Fact No. 11:**

<u>Mr. Ripps is an artist, and has previously created satirical art projects spotlighting problematic societal issues. Ripps Decl. ¶¶ 15-26 (uncontested).</u>

**Plaintiff's Basis for Dispute:**

Mr. Ripps' declaration does not establish that Mr. Ripps has created satirical art projects that spotlight problematic societal issues. At best, his declaration establishes that he believes he has done this and, even then, Mr. Ripps is not a credible witness. Regardless, the RR/BAYC NFTs were not satirical or art. *See supra* ¶¶ 9-10.

**Defendants' Response:**

Yuga admits that Mr. Ripps is an artist and that Mr. Ripps's artistic contributions have been recognized by mainstream media. Dkt. 419-1 at 3. Despite these admissions, Yuga disputes that Mr. Ripps has a history of creating satirical art projects without providing any evidence to rebut Mr. Ripps's unchallenged declaration. If Yuga truly believes that Mr. Ripps's declaration contains untrue statements about his career as one of the most recognized digital artists in the world, then it could have tested those statement on cross-examination. As the Supreme Court has explained, "[c]ross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). This is because purpose of cross-examination is "the direct and personal putting of questions and obtaining immediate answers." *Id.*; *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004) ("One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information[.]"). Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that "principle means" of testing Mr. Ripps credibility weighs decisively in favor of accepting Mr. Ripps's declaration.

Thus, Yuga's election to not cross-examine Mr. Ripps has left Mr. Ripps's declaration uncontested, including the following statement:

> 24. My artwork intentionally pushes the boundaries of what is deemed socially or artistically "acceptable," particularly when critiquing internet culture.
>
> 25. One of my most well-known works, *Diventare Schiavo*, involved having people pack boxes through a VR set to demonstrate how the modern internet has reduced us all to "packing boxes."
>
> 26. Other works I created that comment on the internet include: *Barbara Lee*, a commentary on the interplay between truth and clickbait online, and *Ho*, an exhibit I created for the Postmasters Gallery which explores how social media uses manipulated images to mediate perception of self.
>
> 27. My art is meant to be interactive, and to be discussed and critiqued.
>
> 28. Much of my work has been the source of criticism and controversy. I welcome this as new ideas are often controversial or else they would not be new.

Ripps Decl. (Dkt. 346) ¶¶ 24-28. And critically, publications such as the *New York Times* have recognized how Mr. Ripps's work has allowed Mr. Ripps to shape internet culture as we know it:

> And it has forced **one of the defining internet artists of the 2010's** into conflict with a culture he helped shape, one in which the boundaries among trolling, art and commerce are irrelevant.

JTX-2332 at 6 (emphasis added); JTX-2333 at 2 (overlayed by image).[1] This record, which Yuga has not rebutted, shows that Mr. Ripps has been remarkably

---

[1] JTX-2333 is in the trial record, but due to formatting issues associated with the *New York Times* website, the PDF has an image covering the text. JTX-2332 is the same article with modified formatting so that the image from the article does not cover the text. Moreover, the *New York Times* quote is also publicly accessible at https://www.nytimes.com/2023/03/30/style/ryder-ripps-bored-apes-kanye.html.

influential in the field of digital art and using satire to comment on the boundaries between trolling, art, and commerce.

Further, as discussed above, the RR/BAYC collection was yet another satirical art project as the voluminous emails from collectors show that the NFTs were reserved for the purpose of protesting and criticizing Yuga. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX-2590; JTX-2592; JTX-2595; JTX-2596; JTX-2599.

**Plaintiff's Reply:**

Mr. Ripps' declaration is not uncontested for all the reasons stated *supra* ¶ 3. Moreover, Mr. Ripps' declaration provides no evidence, other than self-serving statements, to establish the alleged fact that he has "created satirical art projects spotlighting problematic societal issues." Rather, Mr. Ripps lies in his declaration with falsely attributed statements. For example, Mr. Ripps' declaration declares under oath that he has been, quote, "described in *The New York Times* as 'one of the most influential digital artists of the past decade.'" Ripps Decl. ¶ 21 (citing JTX-2333). *The New York Times* article (JTX-2333) does not call Mr. Ripps "one of the most influential digital artists of the past decade." There is no documentary evidence of *The New York Times* so labeling Mr. Ripps. This again highlights the unreliability of Mr. Ripps' testimony and his loose connection to the truth.

Instead of Mr. Ripps' fake quote, *The New York Times* article notes that members of design world "dismiss him out of hand." It also notes that Ripps has falsely claimed credit for himself in other scandals, for instance when he "created a website that falsely claimed to be the first public project of" Kanye West's creative agency.

In their response, Defendants' attempt to proffer other statements allegedly from *The New York Times* are similarly unavailing as they are merely hearsay and are not part of the record. *See* JTX-2333 (proffered statement omitted); JTX-2332 (not admitted into evidence or on parties' final joint trial exhibit list (Dkt. 376)).

1    Regardless, whether or not Mr. Ripps believes he is an artist is immaterial
2  and irrelevant.  As the Court has already held in granting Yuga Labs' motion for
3  summary judgment, Defendants' actions "are all commercial activities designed to
4  sell infringing products, not expressive artistic speech protected by the First
5  Amendment."  SJ Order (Dkt. 225) at 16.  Thus, Defendants' conduct was not art
6  and was in no way an excuse for their infringement.

7    Further, Defendants' anecdotal evidence of individuals sending emails of
8  alleged support of Defendants' infringement is also irrelevant and immaterial.  A
9  handbag counterfeiter may have distributors, and those distributors may even
10 profess to believe in a cause, but that does not excuse the counterfeiter's
11 wrongdoing or mitigate the likelihood of confusion in the marketplace.  *See* SJ
12 Order (Dkt. 225) at 16 ("Defendants' sale of RR/BAYC NFTs is no more artistic
13 than the sale of a counterfeit handbag.").  And Defendants do nothing to rebut the
14 likelihood of post-sale confusion, such as through survey or expert analysis.  *See*
15 *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012)
16 (granting defendant's profits even where infringement claims premised solely on
17 post-sale confusion where a "potential purchaser, knowing that the public is likely
18 to be confused or deceived by the allegedly infringing product, [] choose[s] to
19 purchase that product instead of a genuine one").  Further, confused consumers are
20 unlikely to admit that they have fallen for Defendants' scam.  As Mr. Solano
21 explained, being scammed is "super embarrassing" and consumers who were
22 tricked "weren't going to, you know, raise their hand and shout about it."  Trial Tr.
23 at 54:10-16.  Nonetheless, Defendants' admission that they processed over $90,000
24 in refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75) undermines Defendants' suggestion
25 that purchasers of their infringing NFTs were universally supportive of, or even
26 were aware of, any alleged artistic purpose.