**<u>Defendants' Disputed Post Trial Finding of Fact No. 28</u>:**

<u>Yuga encouraged the public to use the BAYC artwork and to be creative with BAYC's intellectual property. For example, Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3-73:17; Cahen Decl. ¶ 189; Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673.</u>

**Plaintiff's Basis for Dispute:**

To the extent that Defendants seek to rehash their argument that the BAYC Terms gave BAYC NFT holders any and all trademark rights, the Court already found on summary judgment that the BAYC Marks are valid trademarks and that Yuga Labs granted BAYC holders a valid copyright license, not a trademark license. SJ Order (Dkt. 225) at 9-10 ("Yuga has not granted BAYC NFT holders a trademark license."). The BAYC Terms give BAYC NFT holders a copyright license to use their respective Bored Ape image for personal or commercial use, not the marks within the image. *See* Trial Tr. at 70:1-4, 70:18-23; Solano Decl. ¶ 25. Yuga Labs explains this not just in the Terms, but in FAQs and in Discord. Trial Tr. at 70:18-23.

Ms. Muniz explained that in the one interview where she mentioned "IP" rights, she was referring to copyrights and that the context is clear to that effect. *Id.* at 72:3-18. Moreover, this interview is immaterial and irrelevant to Defendants' intent—it occurred in November 2022—long after Defendants made the majority of their sales and after this lawsuit was filed. Regardless, there is no reasonable interpretation of Ms. Muniz' interview that could lead someone to believe Yuga Labs was giving permission to create and sell exact copies of their NFTs using the exact same marks.

**Defendants' Response:**

Yuga's activities of encouraging the public to use the Bored Ape Yacht Club brand to create NFT collections, products, and services unaffiliated with Yuga is

1  material to Defendants' intent because it shows that Defendants had a reasonable
2  belief that the RR/BAYC collection was permissible.

3      Specifically, BAYC NFTs had Terms & Conditions, and the intent behind
4  the Terms & Conditions for BAYC NFTs was to allow people to be able to
5  commercialize their NFTs.  Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the
6  terms and conditions was to allow people to be able to commercialize their NFTs.
7  We can agree on that; right? A. Yes.  That is covered in the terms.").  Yuga
8  encouraged the public to use the BAYC artwork and to be creative with BAYC's
9  intellectual property.  For example, Yuga's CEO Nicole Muniz had publicly
10  represented that BAYC NFT holders received all IP rights and that Yuga has none
11  of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344);
12  Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673.  Ms. Muniz confirmed that
13  someone listening to her public statement about Yuga not having any IP rights
14  would not have heard the word copyright.  Trial Tr. [Muniz] 72:19-22.

15      Yuga's Terms & Conditions along with its public activities amounted to
16  authorization of RR/BAYC collection and the other collections that use the asserted
17  marks.  At the time Mr. Ripps and Mr. Cahen launched the RR/BAYC project,
18  there were more than 9,000 other third-party projects using Yuga's marks.  Ripps
19  Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX
20  2243; JTX 2244.  Before suing Mr. Ripps and Mr. Cahen over the RR/BAYC
21  project, Yuga had not taken steps to stop these third-party projects from using
22  Yuga's marks.  Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. (Dkt.
23  344) ¶ 206.  There were hundreds of NFT collections unaffiliated with Yuga that
24  use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea.  Trial Tr.
25  [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted that Mr.
26  Ripps, Mr. Cahen, and Mr. Hickman would have probably seen these collections
27  using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC
28  project.  Trial Tr. [Muniz] 77:19-23. 26.  There are "literally thousands" of products

1     that use Yuga trademarks without sponsorship or affiliation with Yuga.  Trial Tr.

2     [Muniz] 81:18-22.  For example, there are published notebooks with ISBN

3     numbers, commemorative coins, alcohol products, skateboards, cereal brands,

4     restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use

5     Yuga's trademarks.  *See*, *e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

6        Moreover, Mr. Hickman, a member of the RR/BAYC project team, was a

7     holder of a BAYC NFT containing the asserted marks and having received IP rights

8     associated with the Bored Ape Yacht Club.  Ryan Hickman, who collaborated with

9     Mr. Ripps and Mr. Cahen on the RR/BAYC project, owned a BAYC NFT at the

10     time of the project.  Hickman Decl. ¶¶ 19-22 (Dkt. 345).

11        Yuga attempts to ignore this evidence showing Defendants' good faith by

12     incorrectly invoking the law of the case doctrine by citing to this Court's summary

13     judgment order.  *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis

14     added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial

15     rulings, often based on incomplete information, don't bind district judges for the

16     remainder of the case.  Given the nature of such motions, it could not be

17     otherwise.").  For example, in *Sienze v Kutz*, the Court held that although ***aspects*** of

18     an issue were decided at summary judgment for one purpose, the summary

19     judgment order did resolve the issue generally or as to other topics.  *See* No. 1:17-

20     CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding

21     that evidence of initial police contact was relevant as background, but not to already

22     decided issue that initial contact was not excessive force).  This case is just like

23     *Sienze*: the summary judgment ruling on the BAYC Terms & Conditions and

24     Yuga's public activities applies only the issue of infringement and is not adequate

25     support on these issues generally or as applied to availability of disgorgement as a

26     remedy (including Defendants' mental state as applied to disgorgement),

27     apportionment, and an exceptional case analysis.

28

And, as noted above, Yuga's contention that the Terms & Conditions applied only to copyrights was rebutted by Ms. Muniz's own testimony. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673.  Ms. Muniz confirmed during cross-examination that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright. Trial Tr. [Muniz] 72:19-22.  Moreover, the word copyright appears nowhere in Yuga's terms and conditions.  *See generally*, JTX-209.

**Plaintiff's Reply:**

Defendants' responses rehash the same tired arguments without adequately addressing the evidence and caselaw refuting them.  They should be rejected because (1) they seek to relitigate issues already adjudicated by the Court (*see supra* ¶ 9), (2) the record shows that Defendants intended to confuse consumers (*see id*.), (3) Defendants were well aware that their infringement would cause confusion (*see infra* ¶ 24), (4) the record shows ample actual confusion and likelihood of confusion (*see supra* ¶ 3), (5) Defendants did not take steps to avoid confusion (*see supra* ¶ 9), (6) Yuga Labs did not license Defendants' infringement, and Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks (*see id.*); and (7) other alleged infringers do not negate Defendants' infringement (*see id.*).

Defendants' responses should also be rejected because (1) the BAYC Terms only provide a copyright license and (2) Yuga Labs did not encourage the public to use the BAYC brand.

**The BAYC Terms Only Provide A Copyright License:**  Defendants' argument claiming that "the Terms & Conditions applied only to copyrights was rebutted by Ms. Muniz's own testimony" is patently false.  It is not just "Yuga's contention," that the BAYC Terms applied only to copyrights, it is the Court's

order.  *See* SJ Order (Dkt. 225) at 9 ("Yuga grants each BAYC NFT holder a copyright license for both personal use and commercial use with respect to their respective BAYC ape image, but not a trademark license to use the BAYC Marks.").  Moreover, it is clear that this license applies only to the image itself, not the marks within the image.  *See* Trial Tr. at 70:1-4, 70:18-23; Solano Decl. ¶ 25. Yuga Labs explains this not just in the Terms, but in FAQs, and in Discord.  *Id*. at 70:18-23; 73:1-6 ("This video "doesn't stand alone as the only form of communication from the company.  We have our terms.  We have our FAQ.  We have our Discord.  We have every other thing that we have provided to make sure that the terms are clear.").

Defendants attempt to take a video clip of Ms. Muniz out of context, but in the context of the larger discussion, Ms. Muniz was clearly referring to granting BAYC NFT holders copyright licenses, not trademark rights.  *Id*. at 73:1-3 ("No one has ever come to me and said, 'We were confused about what you meant in that video.'"); 73:14-17.  Notably, Defendants do not even address the fact that this interview, which occurred in November 2022, long after Defendants made the majority of their sales and after this lawsuit was filed, is immaterial and irrelevant to their intent.  Regardless, there is no reasonable interpretation of Ms. Muniz's interview that could lead someone to believe Yuga Labs was giving permission to create and sell exact copies of their NFTs using the exact same marks.

**Yuga Labs Did Not Encourage The Public To Use The BAYC Brand:** Defendants cite no evidence that Yuga Labs "encouraged the public to use the Bored Ape Yacht Club brand to create NFT collections, products, and services unaffiliated with Yuga."  As explained, Yuga Labs grants BAYC NFT holders a copyright license to use the ape image underlying their NFT.  Period.  *See supra* ¶ 24.  Defendants' contention that Yuga Labs encouraged people who do not own BAYC NFTs—including Mr. Ripps and Mr. Cahen—to use the BAYC brand, especially to mint new NFT collections, is absurd.  The Court has already found

1  that Defendants are infringers, and there is no good-faith basis for Defendants to

2  dispute this or to reargue that Yuga Labs somehow granted Defendants a license to

3  infringe.