1    **Defendants' Disputed Post Trial Finding of Fact No. 39:**

2    Collectors of RR/BAYC NFTs intended their purchases to support the

3    project's goals of criticizing Yuga's imagery and educating people about the nature

4    of NFTs. Ripps Decl. ¶¶ 200-201 (uncontested); JTX-2033, JTX-2035, JTX-2039,

5    JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

6    **Plaintiff's Basis for Dispute:**

7    Defendants did not conduct a survey about what "collectors" of RR/BAYC

8    NFTs thought.  Instead, they cherry-picked a handful of emails from a self-selecting

9    group, ignoring the ample confusion on Twitter and other sources that Yuga Labs

10   has identified.  SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701;

11   JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-

12   1035; Ripps Depo. Designations (Dkt. 396) at 290:4-9; JTX-1049; Berger Decl.

13   (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341)

14   ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at

15   53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt.

16   416) at ¶¶ 4-7.  Defendants were aware of the confusion.  *See, e.g.*, *supra* at ¶ 24

17   (collecting examples).  And Yuga Labs' survey evidence demonstrated significant

18   confusion among consumers who incorrectly believed RR/BAYC was sponsored by

19   or affiliated with Yuga Labs.  JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341)

20   ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82.  Defendants do not offer any admissible or credible

21   evidence to rebut the evidence that consumers believed, or were likely to believe,

22   RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut

23   evidence of initial interest or post-sale confusion.  Moreover, there is no reliable

24   evidence in the record that the individuals identified in the cited emails, or all other

25   purchasers, are "collectors" as Defendants contend.

26   There is a clear likelihood of confusion as well, given Defendants' use of the

27   same marks and images, which the Court already determined.  SJ Order (Dkt. 225)

28   at 10-13.  In any event, actual confusion is not required; and the Court already

1  found Defendants' use of BAYC Marks to be infringing.  SJ Order (Dkt. 225) at 12.

2  Yuga Labs is thus entitled to Defendants' profits due to their infringing activity

3  regardless of whether purchasers were actually confused.  *See Levi Strauss & Co. v.*

4  *Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980) (finding post-sale confusion

5  actionable since use of similar labeling on jeans "is likely to cause confusion among

6  prospective purchasers who carry even an imperfect recollection of Strauss's mark

7  and who observe Wrangler's projecting label after the point of sale."); J. Thomas

8  McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 23:6 (5th ed.)

9  ("Infringement can be based upon confusion that creates initial customer interest,

10  even though no actual sale is finally completed as a result of the confusion.").

11  Moreover, Defendants' *Rogers* and First Amendment defenses have already

12  been repeatedly rejected by the Court, which held that "Defendants' sale of

13  RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag."  *Id.* at

14  16.  SJ Order (Dkt. 225) at 15-17; *see also* Dkt. 62 at 6.  And, the Court has already

15  decided the issue of Defendants' intent, finding that Defendants intentionally

16  infringed Yuga Labs' BAYC Marks to deceive consumers and acted with a bad-

17  faith intent to profit from their use of the marks.  SJ Order (Dkt. 225) at 12-15.

18  But, to the extent Defendants seek to relitigate this issue, Defendants'

19  contention that their infringing NFTs were an art project does not prove it to be

20  true.  To the contrary, the relevant evidence demonstrates that Defendants intended

21  to use Yuga Labs' BAYC Marks to profit through their commercial promotion and

22  sale of RR/BAYC NFTS.  *See supra* ¶¶ 9-10, 13, 17-19.  Indeed, Defendants'

23  infringement could not have been in good faith because, even after the Court found

24  their infringement was likely to cause confusion and was not art protected by

25  *Rogers* and the First Amendment, Defendants continued to infringe on Yuga Labs'

26  Marks and promote RR/BAYC NFTs.  Solano Decl. (Dkt. 342) ¶ 74.  And

27  Defendants' @ApeMarketplace Twitter account continues to promote rrbayc.com

28

1    and link to a marketplace on which RR/BAYC NFTs are still available for sale.

2    Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.

3         Additionally, while Defendants publicly claim there was an artistic goal (to

4    "look really sympathetic to people" if caught, in the words of their partner (JTX-

5    918.00036)), their internal communications overwhelmingly focus on a business

6    venture to sell Ape Market, their profit motive, and riding on the coattails of the

7    BAYC brand for their own enrichment.  *See, e.g.*, JTX-1 (Lehman Declaration)

8    ¶¶ 10-13 (Defendants "expected the Business Venture to make money"); JTX-

9    801.144 ("One thing we can do to stimulate the rsvp completing is to tease

10   apemarket.com"); JTX-801.185 (Mr. Cahen: "Goal: mint out the remainder of the

11   collection + incentivize people to use the marketplace, specifically the BAYC

12   original side"); *id.* (Mr. Cahen: "More royalties for us . . . More work for sure, but

13   much higher likelihood of generating more royalties and users"); JTX-801.208 (Mr.

14   Cahen: "we need a very delicious value proposition [] to bring in users . . . but not

15   so low that we I make anything"); *id.* (Mr. Cahen: "priorities: getting RRBAYC to

16   sell out by creating demand + getting BAYC and MAYC users to call our

17   marketplace their new home [] and collecting royalties at a fraction of what the

18   other big dogs are charging [] which will be considerable passive income if we

19   strike the right balance"); JTX-801.237 (Mr. Lehman: "I'm just concerned about

20   launching something with low prospect for recurring revenue"; Mr. Cahen: "I

21   agree"); JTX-803 at 66-67; JTX-1574 (Mr. Cahen to Mr. Ripps: "Ur gonna make so

22   much on this shit LMFAO"; "It will sell out within 48 hours I think [] You'll make

23   like a million dollars [] Straight up"); JTX-1586 (Mr. Cahen to Mr. Ripps: "I

24   t[h]ink you are gonna make millions too man"); Hickman Depo. Designations (Dkt.

25   394) at 238:12-40 (discussing profit motive and desire to charge royalties).

26   Defendants knew they were stealing from Yuga Labs regardless of what any single

27   consumer may have believed.

28

1    Finally, JTX-2589 and JTX-2591 are not in evidence, and not proper for

2    consideration on this issue.

3    **Defendants' Response:**

4    This finding of fact addresses correspondences which Defendants received

5    from collectors of RR/BAYC NFTs and the views expressed within those

6    correspondences.  Yuga falsely states that these are "cherry-picked

7    communications."   Mr. Ripps testified in his declaration: "I received ***hundreds of***

8    ***letters*** thanking me for creating the RR/BAYC artwork and for standing up against

9    a corporation that had used hateful references in its brand" and then went on to give

10   eight specific examples of the letters he received.  Ripps Decl. ¶¶ 196-207 (Dkt.

11   346) (uncontested) (emphasis added).  At no point during trial did Yuga dispute this

12   fact.  Yuga did not present any rebuttal evidence at trial and Yuga elected to not

13   cross-examine Mr. Ripps on this issue.   Thus, the uncontested evidence at trial

14   shows that Mr. Ripps received hundreds of letters from RR/BAYC participants

15   expressing support for the project and its criticism.

16   Yuga has also failed to present evidence disputing the fact that collectors

17   purchased RR/BAYC NFTs in order to support the project's goals of criticizing

18   Yuga's imagery and educating people about the nature of NFTs.  Ripps Decl. ¶¶

19   200-201 (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX-2590; JTX-2592;

20   JTX-2595; JTX-2596; JTX-2599.  Instead of addressing correspondences from

21   collectors, Yuga attempts to point to indications of consumer confusion.  However,

22   none of Yuga's alleged indications of confusion are credible.

23   First, Yuga's evidence does not indicate there was confusion on Twitter.  For

24   example, Yuga cites to JTX-1029, which includes a tweet from GemBot, which is

25   an automated software application and not evidence of a real person's confusion.

26   *See* Cahen Decl. ¶¶ 226-227.  The very first comments included on that tweet

27   include users identifying that the Mr. Ripps is the source of the NFT not Yuga.

28   Further, there is no indication that any of the Twitter users commenting actually

1   reserved an RR/BAYC NFT.  This evidence provides no support for an argument

2   that this finding of fact is inaccurate.  *See also* JTX-1030, JTX-1032 (Tweets where

3   the users are quickly identifying Mr. Ripps as the source of the NFT); JTX-1031,

4   JTX-1034, JTX-1035 (Out of context one off tweets of users, that there is no

5   evidence to believe purchased an RR/BAYC NFT, replying to GemBot).

6          Second, Yuga also cites to private chats that the RR/BAYC creators used.

7   These exhibits are unsupportive of a finding that there was actual confusion.  For

8   example, JTX-109 includes a discussion where Mr. Lehman raises concerns about

9   how the marketplace is designed and may cause confusion.  Mr. Cahen responds

10  and provides suggestions about what they could do to make it even more clear.

11  Further, this chat focused on the creation of ApeMarket, which never was launched

12  and could, therefore, never have caused any actual consumer confusion. Cahen

13  Decl. ¶¶ 257-262; *see also* JTX-801.185 (again including a discussion about how to

14  make ApeMarket clearer).

15         Third, Ms. O'Laughlin's survey evidence is unreliable.  Ms. O'Laughlin

16  conducted two flawed surveys that failed to measure confusion.  Ms. O'Laughlin

17  acknowledged that she used an overly expansive definition of the market that

18  included people who did not have any interest in purchasing an NFT, much less

19  knowledge of what an NFT is.  Trial Tr. [O'Laughlin] 150:2-151:16 (discussing

20  survey qualification flow); 152:4-10.  She acknowledged that she changed the

21  survey population after running pretests to make it more inclusive.  *Id.* at 144:25-

22  146:7.  Ms. O'Laughlin also acknowledged that she lacked basic knowledge about

23  the NFT market, admitting to erroneously believing that cryptocurrency was an

24  NFT when she formulated her surveys and her reports.  *Id.* at 147:12-14.  The result

25  of her lack of knowledge was an inherently flawed survey that could not show

26  confusion because the market was too broad.  This was despite her

27  acknowledgement that choosing the right sample population "matters for the

28

1  analysis" and choosing an improper sample population would be a mistake.  *Id.* at

2  146:18-25.

3          Fourth, Yuga incorrectly relies on the law of the case doctrine by citing to

4  this Court's summary judgment order.  The "law of the case doctrine does not apply

5  to pretrial rulings ***such as motions for summary judgment***."  *Shouse v. Ljunggren,*

6  *792 F.2d 902, 904 (9th Cir. 1986)* (emphasis added); *see also Peralta v. Dillard,*

7  *744 F.3d 1076, 1088 (9th Cir. 2014)* ("Pretrial rulings, often based on incomplete

8  information, don't bind district judges for the remainder of the case.  Given the

9  nature of such motions, it could not be otherwise.").  For example, in *Sienze v Kutz*,

10  the Court held that although ***aspects*** of an issue were decided at summary judgment

11  for one purpose, the summary judgment order did resolve the issue generally or as

12  to other topics.  *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D.

13  Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as

14  background, but not to already decided issue that initial contact was not excessive

15  force).  This case is just like *Sienze*: the summary judgment ruling on likelihood of

16  confusion only applies to the issue of infringement and is not adequate support for a

17  determination of how to apportion disgorgement of profits attributable to

18  infringement.

19          Fifth, Yuga's citations to *Levi* is inapplicable here, given the evidence shows

20  consumers reserved RR/BAYC NFTS as part of a protest against Yuga.  *See* Ripps

21  Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-

22  2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  The evidence, therefore, does

23  not support a finding that these reservations were made so that the buyer could then

24  confuse someone else in secondary sales.  Also, as mentioned above, there is no

25  evidence that anyone who reserved an RR/BAYC NFT, on either initial or

26  secondary sales, was confused about its origin.  Ripps Decl. ¶¶ 101-103 (Dkt. 346)

27  (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202;

28  JTX-2085; Trial Tr. [Solano] 63:1-10. Ripps Decl. ¶ 223 (uncontested) (Dkt. 346);

1   Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr.

2   [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

3          Sixth, evidence at trial showed that Defendants were not primarily motivated

4   by profits.  Defendants explained that profits were a concern, but not the primary

5   motive of the project.  Cahen Decl. ¶ 156 (Dkt. 344).  Profits helped offset costs

6   and sustain Defendants' artistic project.  Cahen Decl. ¶ 173 (Dkt. 344).

7   Defendants' decisions surrounding refunds and royalties confirm that they were not

8   primarily motivated by profits.  Ripps Decl. ¶ 116-118 (uncontested) (Dkt. 346);

9   Cahen Decl. ¶ 158-171 (Dkt. 344).  The RR/BAYC project allowed for a full

10  refund, for any reason.  Ripps Decl. ¶ 119 (uncontested) (Dkt. 346); Cahen Decl. ¶

11  159 (Dkt. 344).  Additionally, the Defendants' declined taking royalties on transfers

12  of RR/BAYC NFTs whenever possible.  Ripps Decl. ¶¶ 116-118 (uncontested)

13  (Dkt. 346); Cahen Decl. ¶¶ 166-171 (Dkt. 344).

14         Defendants have provided extensive evidence to rebut Yuga's allegations of

15  confusion. Defendants took multiple steps to make clear that the RR/BAYC

16  collection was not related to Yuga in any way.  For example, the rrbayc.com

17  website—through which the majority of RR/BAYC commissions occurred and the

18  vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346)

19  (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic

20  intent for the project.  Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen

21  Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr.

22  [Solano] 63:1-10.  Collectors using the rrbayc.com website were also required to

23  read and click through a disclaimer acknowledging the artistic purpose of the

24  project before they were allowed to commission an NFT.  *See* Ripps Decl. ¶¶ 106-

25  109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps

26  insisted on these requirement and additional steps so that the artistic purpose of the

27  work would be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-

28

1    60:24] ("Q. … Why was the artist statement ultimately included, if it had a negative

2    impact on usability? …  A.   … Ryder wanted it and so he had the final call.").

3         The evidence presented at trial shows that many people who reserved

4    RR/BAYC NFTs did so out of a protest against Yuga.  *See* Ripps Decl. ¶¶ 198-205

5    (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592,

6    JTX-2595, JTX-2596; JTX-2599.  Furthermore, none of the parties in this case can

7    identify a single person who purchased an RR/BAYC NFT believing it to be

8    sponsored by Yuga.  Mr. Ripps and Mr. Cahen are not aware of a single instance of

9    actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen]

10   265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).  Buttressing this fact, Yuga's

11   founders were also not aware of a single instance of actual confusion. Trial Tr.

12   [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think,

13   what you were focused on. Yuga Labs has been unable to identify even[] a single

14   person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs;

15   right? A Correct.").

16        Additionally, Defendants cite Mr. Ripps's uncontested declaration in support

17   of this finding of fact. This Court is entitled to accept Mr. Ripps's declaration

18   because the trial transcript shows that Yuga elected to forego any substantive cross-

19   examination of Mr. Ripps on any portion of Mr. Ripps's declaration that Yuga now

20   challenges.  *See* Trial Tr. [Ripps] 267:7-271:9.  As the Supreme Court has

21   explained, "[c]ross-examination is the principal means by which the believability of

22   a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316

23   (1974).  This is because purpose of cross-examination is "the direct and personal

24   putting of questions and obtaining immediate answers."  *Id.*; *Murdoch v. Castro*,

25   365 F.3d 699, 702 (9th Cir. 2004) ("One longstanding purpose of cross examination

26   is to expose to the fact-finder relevant and discrediting information[.]").  Yuga's

27   decision to not cross-examine Mr. Ripps regarding any portion of his declaration

28

1   means that "principle means" of testing Mr. Ripps credibility weighs decisively in

2   favor of accepting Mr. Ripps's declaration.

3          Defendants withdraw their citations to JTX-2589 and JTX-2591.  This

4   finding of fact is adequately supported by Defendants' other citations.

5          **Plaintiff's Reply:**

6          Defendants' unreliable communications with purported distributors or

7   purchasers of their infringing products are immaterial.  Defendants have still failed

8   to provide evidence that the purported communications were with "collectors" or

9   that "collectors" were their primary purchasers.  The Court has also already found a

10  likelihood of confusion and these correspondences do not rebut that finding.  SJ

11  Order. (Dkt. 225) at 13.  And Defendants admit that they cherry-picked eight out of

12  allegedly hundreds of e-mails to use as purported evidence of their alleged protest.

13  These attempts to obfuscate the issues are unavailing.

14         As discussed *supra*, Defendants' responses lack merit.  Specifically, (1)

15  Defendants' anecdotal evidence of communications with purported purchasers is

16  unpersuasive (*supra* ¶ 3), (2) whether a handful of initial purchasers were confused,

17  post-sale and initial interest confusion are nonetheless actionable (*supra* ¶¶ 32, 33),

18  (3) Yuga Labs adequately demonstrated that Mr. Ripps lacks credibility (*supra* ¶ 3),

19  (4) Defendants were motivated by an intent to profit (*supra* ¶7), (5) the @0xGem

20  Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (6) Ms.

21  O'Laughlin's report is reliable and accurate (*Id.*), (7) the Court's summary

22  judgment order establishes Defendants' liability (*Id.*), (8) Defendants' "disclaimer"

23  did not prevent confusion, (*Id.*), (9) most of Defendants' infringing NFTs did not

24  sell on rrbayc.com (*Id.*), (10) the record shows multiple instances of actual

25  confusion (*supra* ¶ 3), (11) Defendants failed to take steps to avoid confusion

26  (*supra* ¶ 33), and (12) the refunds Defendants issued demonstrate consumer

27  confusion (*Id.*).

28

1    Additionally, the Court should reject Defendants' responses because (1) the

2    evidence Defendants cite do not support their finding of fact.

3    **Defendants' Evidence Does Not Support Their Finding Of Fact:**

4    Defendants' evidence does not prove this fact.  As explained *supra* ¶ 3, Defendants'

5    cherry-picked communications with purported purchasers of RR/BAYC NFTs do

6    not rebut the Court's finding of a likelihood of confusion.  SJ Order (Dkt. 225).

7    Unlike Yuga Labs, Defendants have no survey or other expert evidence to support

8    their contention that consumers were not confused.  Indeed, Defendants claim that

9    it is not feasible for Defendants to speak with all or even most of the purchasers of

10   their infringing products and thus they cannot support the statement "[c]ollectors of

11   RR/BAYC NFTs intended their purchases to support the project's goals[.]"

12   Defendants' contention is also rebutted by Ms. O'Laughlin's survey evidence

13   showing that there was up to a 40.4% net confusion rate among consumers.

14   O'Laughlin Decl. (Dkt. 341) ¶¶ 13 (b)-(c).  Defendants also fail to rebut Mr.

15   Solano's testimony that "there's a number of people that bought these that knew

16   that this was a scam and that were buying them to sell them on a secondary

17   market." Trial Tr. 16:13-15.  Defendants fail to support their finding of fact with

18   evidence admitted at trial.

19

20

21

22

23

24

25

26

27

28