**Defendants' Disputed Post Trial Finding of Fact No. 42:**

Mr. Hickman was not aware of a single instance of actual confusion. Trial Tr. [Hickman] 219:13-19.

**Plaintiff's Basis for Dispute:**

Mr. Hickman's claim that he was not aware of any instances of confusion is belied by the ample evidence of confusion on Twitter and other sources that Yuga Labs has identified. SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Depo. Designations (Dkt. 396) at 290:4-9; JTX-1049; Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7. Indeed, Mr. Hickman was confused by Mr. Ripps' use of the BAYC Marks when he misidentified the RR/BAYC sales page on Foundation as "Bored Ape Yacht Club." Trial Tr. at 213:4-14; Hickman Deposition at 149:24-150:10; Dkt. 415. He and Defendants were aware of the confusion. *See, e.g.*, *supra* ¶ 24 (collecting examples). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

There is a clear likelihood of confusion as well, given Defendants' use of the same marks and images, which the Court already determined. SJ Order (Dkt. 225) at 10-13; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and

shut.'"). In any event, actual confusion is not required; and the Court already found Defendants' use of BAYC Marks to be infringing. SJ Order (Dkt. 225) at 12. Yuga Labs is thus entitled to Defendants' profits due to their infringing activity regardless of whether purchasers were actually confused. *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one"); *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980) (finding post-sale confusion actionable since use of similar labeling on jeans "is likely to cause confusion among prospective purchasers who carry even an imperfect recollection of Strauss's mark and who observe Wrangler's projecting label after the point of sale.").

**Defendants' Response:**

Yuga's objection is unfounded. First, as Mr. Hickman credibly testified, he is not aware of a single instance of actual confusion. Trial Tr. [Hickman] 219:13-19 ("Q Are you aware of anyone whoever obtained an RR/BAYC from Foundation believing that it was sponsored by Yuga? A Absolutely not. Q Were are you aware of anyone who ever received an RR/BAYC from anywhere believing it was sponsored by Yuga? A No."). Buttressing this fact, Mr. Ripps, Mr. Cahen, and Yuga's founders were also not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").

Second, there is ample evidence that there was not consumer confusion. Defendants took multiple steps to make clear that the RR/BAYC collection was not

1  related to Yuga in any way.  For example, the rrbayc.com website—through which
2  the majority of RR/BAYC commissions occurred and the vast majority of alleged
3  profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144
4  (Dkt. 344)) included an explanation of the artistic intent for the project.  Ripps
5  Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344),
6  147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Collectors
7  using the rrbayc.com website were also required to read and click through a
8  disclaimer acknowledging the artistic purpose of the project before they were
9  allowed to commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346)
10 (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these
11 requirement and additional steps so that the artistic purpose of the work would be
12 clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why
13 was the artist statement ultimately included, if it had a negative impact on usability?
14 … A.  … Ryder wanted it and so he had the final call.").
15        Unsurprisingly, therefore, the evidence presented at trial shows that many
16 people who reserved RR/BAYC NFTs did so out of a protest against Yuga.  *See*
17 Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039,
18 JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.
19        Yuga misleadingly cites to a portion of Mr. Hickman's deposition and trial
20 testimony to support their assertion that he was confused and misidentified the
21 RR/BAYC sales page on Foundation.  This is inaccurate.  As Mr. Hickman credibly
22 testified at trial, he was not confused, and his deposition video shows him
23 reviewing and describing all portions of the exhibit. Trial Tr. [Hickman] 219:3-12
24 ("Q Were you at your deposition confused about whether the page that you were
25 shown was indeed a Yuga Labs page or a page by Mr. Ripps? A I was not
26 confused. The video shows me describe all of the aspects of the page real time. Q
27 And were you—what was your level of confidence that this Foundation page that
28 you were shown at your deposition was indeed a page for the RR/BAYC

collection? A It was that it was actually Ryder's creator page for the RR/BAYC collection.").

Third, the evidence Yuga cites to is not supportive of a finding that there was consumer confusion. Specifically, Yuga relies on survey evidence provided by Ms. O'Laughlin. As demonstrated at trial, however, Ms. O'Laughlin conducted two flawed surveys that failed to measure confusion. Ms. O'Laughlin acknowledged that she used an overly expansive definition of the market that included people who did not have any interest in purchasing an NFT, much less knowledge of what an NFT is. Trial Tr. [O'Laughlin] 150:2-151:16 (discussing survey qualification flow); 152:4-10. She acknowledged that she changed the survey population after running pretests to make it more inclusive. *Id.* at 144:25-146:7. Ms. O'Laughlin also acknowledged that she lacked basic knowledge about the NFT market, admitting to erroneously believing that cryptocurrency was an NFT when she formulated her surveys and her reports. *Id.* at 147:12-14. The result of her lack of knowledge was an inherently flawed survey that could not show confusion because the market was too broad. This was despite her acknowledgement that choosing the right sample population "matters for the analysis" and choosing an improper sample population would be a mistake. *Id.* at 146:18-25.

Ms. O'Laughlin also erred by producing two contradictory surveys. In 2020 she authored an article titled, "Which Method is For You? Not All Surveys Are Made the Same" JTX-314. In that article she discusses choosing between the Squirt and Eveready surveys on the basis of the strength of the mark. In this case, however, she ignored her own advice and operated both surveys. This was despite acknowledging that at deposition she agreed with her earlier advice that the Eveready survey is most appropriate when the mark is strong, and the Squirt survey when the mark is weak. Trial Tr. [O'Laughlin] 143:9-144:6. All the while, she never discerned the strength of the mark. *Id.* at 144:12-18. This broke with her prior practice as well, as it was the first case she personally testified in where she

offered an opinion based on both surveys. *Id.* at 144:19-24. Ms. O'Laughlin should have chosen between the surveys, but by not doing so she did not produce a finding of value on either survey.

Ms. O'Laughlin also could not explain the extremely strong priming effect which influenced her results to her Everready survey. In that survey, people were split into those who saw a version of the RR/BAYC Foundation page that included the words "Bored Ape Yacht Club." Those in the control group of the experience would see the words "Chill Gorilla Boat Crew." Those in the experiment group who wrote the words "Bored Ape Yacht Club" verbatim and were counted as confused, but those in the control group who copied down the words "Chill Gorilla Boat Crew" were not counted as confused. Trial Tr. [O'Laughlin] 154:24-157:14. Twenty-seven percent of those in the control group wrote "Chill Gorilla Boat Crew" verbatim, but were not counted as confused. *Id.* at 157:9:14; 158:20-159:1. Ms. O'Laughlin admitted that she did not account for this extreme priming effect calling it "not particularly relevant." *Id.* at 158:20-159:1.

Lastly, Ms. O'Laughlin acknowledged that she could not attest to how long the versions of the websites she used existed. *See* Trial Tr. [O'Laughlin] 161:12-163:10; 163:13-163:20; 165:12-22. At most, to the extent that her survey is not fundamentally flawed, she can attest to confusion on two websites for only a matter of days. *Id.* Overall, her surveys were so fundamentally flawed with errors this Court should reject them and provide them no weight.

Further, this unreliable survey evidence, again does not show that anyone who actually reserved an RR/BAYC NFT was confused about its origin and, therefore, does not undermine the accuracy of this finding of fact.

Secondly, the documentary evidence Yuga cites to is unsupportive. For example, Yuga cites to JTX-1029, which includes a tweet from GemBot, which is an automated software application and not evidence of a real person's confusion. *See* Cahen Decl. ¶¶ 226-227. bThe very first comments included on that tweet

include users identifying that Mr. Ripps is the source of the NFT not Yuga. Further, there is no indication that any of the Twitter users commenting actually reserved an RR/BAYC NFT.  This evidence provides no support for an argument that this finding of fact is inaccurate.  *See also* JTX-1030, JTX-1032 (Tweets where users are quickly identifying Mr. Ripps as the source); JTX-1031, JTX-1034, JTX-1035 (Out of context one off tweets of users, that there is no evidence to believe purchased an RR/BAYC NFT, replying to GemBot).

Yuga also cites to private chats that the RR/BAYC creators used.  These exhibits are unsupportive of a finding that there was actual confusion.  For example, JTX-109 includes a discussion where Mr. Lehman raises concerns about how the marketplace is designed and may cause confusion.  Mr. Cahen responds and provides suggestions about what they could do to make it even more clear.  Further, this chat focused on the creation of ApeMarket, which never was launched and could, therefore, never have caused any consumer confusion. Cahen Decl. ¶¶ 257-262; *see also* JTX-801.185 (again including a discussion about how to make ApeMarket clearer).

Yuga cites to a screenshot, JTX-701, of a Bloomberg newscast.  This exhibit does not support a finding of actual confusion.  The chart separately lists both "Bored Ape Yacht Club" and "Bored Ape Yacht Club V3" indicating that the anchor understood that these were two different projects.  Additionally, as Mr. Cahen testified, he is not aware of anyone who watched the Bloomberg program and reserved an RR/BAYC NFT believing it to be a Yuga collection.  Cahen Decl. ¶ 252.

Additionally, Yuga cites to the Lehman Declaration, JTX-1, the accuracy and credibility of which are tainted by Mr. Lehman's motivations to settle his ongoing case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's case against Mr. Lehman, JTX-621, which is immaterial to this matter and again was entered after Mr. Lehman settled his own case with Yuga.

Yuga also cites to Mr. Ripps's deposition transcript where he discusses how the LooksRare platform that sold RR/BAYC NFTs looked like at one point in time. Ripps Depo. Designations (Dkt. 396) at 290:4-9. Again, this does nothing to support a finding of confusion given the ability of any consumer to determine the provenance of an RR/BAYC NFT through Etherscan. Ripps Decl. ¶¶ 88-89 (Dkt. 346) (uncontested). Further, this does not support a finding that this fact is inaccurate and does not prove that anyone who reserved an RR/BAYC NFT was confused about its origin.

Finally, Yuga cites to its own declarations and trial testimony where their witnesses make conclusory and unfounded statements about possible confusion. *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22. These statements do not support a finding, however, that anyone who bought an RR/BAYC NFT was actually confused.

Fourth, Yuga states that Mr. Ripps and Mr. Cahen did not offer admissible evidence that consumers believed RR/BAYC NFTs were not affiliated with Yuga. This is categorically false. The evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest against Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Accordingly, there was ample evidence presented at trial that showed consumers were not confused about the source of the RR/BAYC NFTs.

Fifth, Yuga's objection is inaccurate given Defendants used modified versions of the alleged BAYC Marks in their reservations. For example, the logo used states "This Logo is Based on the SS Totenkopf; 18 Teeth." *See* JTX-2085. Also, the website for the project, rrbayc.com, used the modified "RR/BAYC" throughout. *Id.*

Sixth, Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings *such as motions for summary judgment*." *Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986)* (emphasis added); *see also Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014)* ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze v Kutz*, the Court held that although *aspects* of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling on likelihood of confusion only applies to the issue of infringement and is not adequate support for a determination of how to apportion disgorgement of profits attributable to infringement.

   Finally, if Yuga is entitled to disgorgement of Mr. Ripps and Mr. Cahen's profits, which is something Defendants argue they are not, Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir. 1993)*, abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.* And as outlined above, there was no evidence presented that a single purchase of RR/BAYC NFTs was made by someone thinking it was sponsored by Yuga.

Yuga's citations to *Gucci* and *Levi* are inapplicable here, given the evidence shows consumers reserved RR/BAYC NFTS as part of a protest against Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. The evidence, therefore, does not support a finding that these reservations were made so that the buyer could then confuse someone else in secondary sales. Also, as mentioned above, there is no evidence that anyone who reserved an RR/BAYC NFT, on either initial or secondary sales, was confused about its origin. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Ripps Decl. ¶ 223 (uncontested) (Dkt. 346); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct."). Finally, the portion of profits attributable to secondary sales of RR/BAYC NFTs according to Yuga's own expert is limited to $117,309. *See* Dkt. 418-1 at 6.

**Plaintiff's Reply:**

Defendants' response is largely inapt. Defendants' internal communications, and Mr. Hickman's reaction to Defendants' Foundation page, demonstrate that Defendants were aware that their infringement would confuse consumers and refused to take steps to avoid that confusion. Rather than confront this fact, Defendants engage in collateral disputes to obfuscate the issues. These responses should be rejected.

As discussed *supra*, Defendants' responses lack merit. Specifically, (1) Defendants' anecdotal evidence of communications with purported purchasers is unpersuasive (*supra* ¶ 3), (2) Defendants fail to demonstrate that "many" consumers purchased Defendants' infringing NFTs out of protest (*supra* ¶ 39), (3)

the @0xGem Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (4) Ms. O'Laughlin's report is reliable and accurate (*Id.*), (5) Defendants' assertion that the Bloomberg segment would not cause confusion because both collections were listed lacks credibility (*supra* ¶ 32), (6) the Court's summary judgment order establishes Defendants' liability (*Id.*), (7) Defendants' "disclaimer" did not prevent confusion, (*Id.*), (8) most of Defendants' infringing NFTs did not sell on rrbayc.com (*Id.*), (9) consumers verifying Defendants' infringing NFTs on Etherscan would still be confused (*Id.*), (10) all of Defendants' profits are attributable to their infringement (*Id.*), (11) the record shows multiple instances of actual confusion (*supra* ¶ 3), (12) Defendants used Yuga Labs marks (*supra* ¶ 32), (13) Defendants failed to take steps to avoid confusion (*supra* ¶ 33), (14) Mr. Lehman's declaration is accurate and contradicts Defendants (*supra* ¶ 3), (15) Defendants fail to recognize the likelihood of confusion as to sponsorship or affiliation (*supra* ¶ 40), (16) Defendants fail to rebut Yuga Labs' witness testimony (*supra* ¶40), (17) Defendants fail to support Mr. Ripps' deposition testimony about LooksRare (*Id.*), (18) Defendants fail to account for ongoing harm (*Id.*).

Additionally, The Court should reject Defendants' responses because (1) Mr. Hickman was aware of at least one instance of actual confusion—his own.

**Mr. Hickman Was Aware That Defendants' Infringement Was Confusing Because He Himself Was Confused:** Mr. Hickman was clearly confused when he viewed Defendants' infringing Foundation webpage. When asked to identify the source of the NFTs for sale in JTX-28 (the sales page of his partners' own infringing NFTs) he paused for around five seconds, examined the page closely and stated that the page "looks to be Bored Ape Yacht Club." Trial Tr. 213:9-13 (lodged at Dkt. 415); *id.* His body language and demeanor showed that, after this examination, Mr. Hickman genuinely believed that he was looking at a Bored Ape Yacht Club sales page. It was only after around fifteen seconds of a second, long, pause and closer examination that Mr. Hickman amended his answer

and identified the page as Defendants' infringing website. Dkt. 415. Mr. Hickman's testimony at trial that he was not confused lacks credibility in light of his testimony and his demeanor when giving his deposition testimony. His self-serving denial contradicts what was clear in his video-taped deposition and at trial. Dkt. No. 415 (notice of lodging of video testimony); Trial Tr. 213:13. Mr. Hickman's bias explains why he would falsely deny his confusion: if even an insider like Mr. Hickman was confused by Defendants' use of Yuga Labs' marks on Defendants' marketplace page, the "nonexpert, nontechnical public" stood no chance when presented with Defendants' scam. Trial Tr. at 135:18-19.

Mr. Hickman is not credible, so his testimony that he was not confused should be given no weight. *See supra* ¶ 7. And Mr. Hickman's recent sworn statements in the related lawsuit against him demonstrate that he is not a credible witness, and that he is willing to lie under oath where it best serves him. In Yuga Labs' lawsuit against Mr. Hickman that is currently pending in the District of Nevada, Mr. Hickman makes false representations to the court and disclaims his role as one of the lead developers in the RR/BAYC scam. Specifically, in an effort to vacate the default judgment entered against him, Mr. Hickman states under oath, "I previously provided testimony in the *Yuga Labs, Inc., v. Ryder Ripps, Jeremy Cahen*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. 2022) case that my only involvement in the websites located at the domain names <rrbayc.com> and <apemarket.com> ('Domain Names') included making some contributions to the 'RSVP Smart Contract.'"). Hickman Decl. ISO Reply to Motion to Vacate Default Judgment (Dkt. 38-1), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Sept. 20, 2023), at ¶ 3.

This statement is demonstrably false and directly contradicted by the record in this case. In Mr. Hickman's prior testimony before *this* Court, he claimed to be a major contributor to the development and implementation of the RR/BAYC and Ape Market websites. *See* Hickman Depo. Designations (Dkt. 394) at 42:17-19

("[T]he smart contract coders and website developers in that context is myself and Tom."). *See also*, Hickman Decl. (Dkt. 345) ¶ 69 ("I also helped Mr. Ripps by working on developing the rrbayc.com website, which was where collectors would be able to use the RSVP program to make reservations."); ¶ 70 ("Mr. Ripps explained what he wanted the rrbayc.com website to look like, and I did my best to implement his creative vision."). Mr. Hickman's blatant contradictions and willingness to lie for personal gain demonstrate his lack of credibility as a witness and render his declaration unreliable.