**Defendants' Disputed Post Trial Finding of Fact No. 48:**

<u>Yuga could not identify a single e-mail or text message that shows Yuga engaged in advertising work in **response** to the RR/BAYC project. Trial Tr. [Muniz] 89:7-13.</u>

**Plaintiff's Basis for Dispute:**

Likelihood of confusion has already been established in this case. SJ Order (Dkt. 225) at 10-13. Yuga Labs is not currently seeking damages for past corrective advertising. Defendants' insinuation that no such costs exist, however, is incorrect and immaterial to the current issues in this case. *See* JTX-723 (Kindler Expert Report) ¶¶ 80-84.

Even so, Yuga Labs provided abundant and unrebutted evidence of its efforts to address Defendants' infringing NFTs. For instance, Ms. Muniz specifically testified that Yuga Labs "increased its focus on marketing the BAYC brand, hoping to drown out the noise of RR/BAYC NFTs." Muniz Decl. (Dkt. 340) ¶ 22. Ms. Muniz also testified that Yuga Labs "tried to work with third parties to remove the RR/BAYC NFT collection from the marketplace," but "had limited success with our takedown efforts on third-party platforms. This is because, Defendants kept making limited changes to their sales pages to try to get them put back up. And each time they made a change, they still used the BAYC trademarks to sell the RR/BAYC NFT collection. They had to use Yuga Labs' BAYC trademarks to make the RR/BAYC NFT collection noticeable and attractive to customers." Muniz Decl. (Dkt. 340) ¶ 19. Yuga Labs also "burned" the BAYC smart contract "to address perceived concerns about exclusivity in the marketplace" that resulted from Defendants' infringement. *Id.* ¶ 20. Defendants have not rebutted or discredited any of this evidence, or evidence in the record reflecting the costs of such efforts.

**Defendants' Response:**

The evidence at trial showed that Yuga could not identify a single e-mail or text message at Yuga discussing the alleged confusion and harm that the RR/BAYC collection caused despite the fact that Yuga is a self-proclaimed multi-billion dollar corporation. Yuga admits that it used e-mail and instant messaging to communicate for business. Trial Tr. [Muniz] 85:24-86:4. And yet, Yuga could not identify a single e-mail or text message discussing (1) confusion associated with the RR/BAYC project, Trial Tr. [Muniz] 86:14-87:6, or (2) how RR/BAYC uniquely caused any problems in the day-to-day business operations of Yuga. Trial Tr. [Muniz] 87:17-88:6. Yuga was also unable to identify any documentation of any press inquiries related to the RR/BAYC collection. Trial Tr. [Muniz] 88:7-89:2. Further, Yuga could not identify a single email, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions changes in negotiating dynamics with brand partners as a result of the RR/BAYC collection. Trial Tr. [Muniz]101:7-12. ("Q. Did you identify a single e-mail, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions any of these concerns at all? A No, it was phone calls and e-mails -- I mean, phone calls and Zooms."). Ultimately, Yuga did not mention RR/BAYC in any of its quarterly reports to its investors. Trial Tr. [Muniz] 89:18-23.

Yuga attempts to rebut the evidentiary record by referencing this Court's summary judgment order even though this Court did not make any finding at summary judgment on this particular issues. Further, relying on this Court's summary judgment order is an incorrect use of the law of the case doctrine. The "law of the case doctrine does not apply to pretrial rulings ***such as motions for summary judgment***." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014)

("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze v Kutz*, the Court held that although **aspects** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to already decided issue that initial contact was not excessive force). This case is just like *Sienze*: even if the summary judgment order ruled on Yuga having no internal document indicating any confusion or harm associated with RR/BAYC NFTs (which the summary judgement order did not rule on) such a ruling would apply only the issue of infringement and is not adequate support for this topic as applied to availability of disgorgement as a remedy (including Defendants' mental state as applied to disgorgement), apportionment, and an exceptional case analysis.

Yuga then incorrectly argues that it has provided "abundant" evidence of its internal documents associated with the RR/BAYC collection and the alleged confusion that it caused. But, critically, Yuga does not cite to a single contemporaneous internal document to corroborate its self-serving statement. Yuga simply cites Ms. Muniz's testimony that she worked with third parties to take down the RR/BAYC NFT collection from marketplaces. But Yuga's improper use of DMCA takedown notices is not evidence of any internal records discussing confusion associated with the RR/BAYC collection. Yuga then references that it had to "burn" the BAYC smart contract to avoid confusion. But again, this is a self-serving statement. Yuga has not submitted any evidence showing that moving the BAYC contract to the "burn" address would help avoid any alleged confusion. In fact, it would not. The only thing "burning" the BAYC smart contract accomplished was ensuring that the offensive content in the smart contract could never be removed.

**Plaintiff's Reply:**

As with their previous response (*supra* ¶ 47), Defendants' argument lacks merit because the Court has already adjudicated the ultimate issue of likelihood of confusion and infringement, and because the Court agreed such internal communications about confusion were unnecessary in light of substantial other evidence of confusion. Dkt. 87 at 2 (denying motion to compel production of further "documents on lack of consumer confusion").

Additionally, Yuga Labs did not seek damages for past corrective advertising at trial, so there is no reason that an "e-mail or text message that shows Yuga engaged in advertising work in response to the RR/BAYC project" should have been in the trial record. Defendants' finding of fact that Yuga Labs "could not identify" documents in this arbitrary category is incorrect and immaterial, as is their argument that the Court should draw any inference from the absence of these irrelevant materials the trial record.

Finally, Defendants do not dispute that Yuga Labs burned the BAYC smart contract in response to their actions, but they incorrectly argue that there is no evidence that this action was necessary to address their infringement. In fact, Ms. Muniz explained this in her declaration. The result of burning the smart contract was "to prevent its ability to ever mint another BAYC NFT," and Yuga Labs did so to signal that "Yuga Labs could never mint more BAYC NFTs to generate revenue. Muniz Decl. (Dkt. 340) ¶ 20. This was necessary because of Defendants' wrongdoing and to "address perceived concerns about exclusivity in the marketplace." *Id.*