**Defendants' Disputed Post Trial Finding of Fact No. 51:**

Yuga's President, Mr. Solano, could not identify a single instance in which Mr. Ripps sold an RR/BAYC NFT on a marketplace where a BAYC NFT was also sold. Trial Tr. [Solano] 44:6-24.

**Plaintiff's Basis for Dispute:**

This statement is contrary to the evidence and Mr. Solano's testimony.  Both genuine BAYC NFTs and RR/BAYC NFTs were sold on OpenSea, for instance. SJ Order (Dkt. 225) (Dkt. 225) at 12 ("it is not surprising that both Yuga and Defendants promoted and sold their NFTs through the same online NFT marketplaces – OpenSea and x2y2."); Solano Decl. (Dkt. 342) ¶ 42 ("In the case of OpenSea and LooksRare NFT marketplaces, Defendants used the BAYC Marks to sell their scam NFTs alongside authentic Yuga Labs BAYC NFTs . . . ."). Defendants mischaracterize Mr. Solano's testimony.  Mr. Ripps *directly* sold the infringing NFTs on Foundation before genuine BAYC NFTs were available on that platform in mass.  Trial Tr. at 44:10-11.  This was confusing, because Yuga Labs did not have a sales page for BAYC NFTs on Foundation at the time of Defendants' launch.  Muniz Decl. (Dkt. 340) ¶ 14 ("because Yuga Labs did not have a branded page on Foundation, but did on OpenSea, Defendants' launch of the RR/BAYC NFT collection on Foundation using Yuga Labs' BAYC trademarks was particularly confusing because it looked like a branded Yuga Labs page").  Further, Defendants' claim that Ripps did not personally, directly sell the infringing NFTs on certain marketplaces is immaterial to Yuga Labs' claim for equitable relief, because Defendants actively marketed secondary sales of their infringing NFTs on OpenSea and pushed for such sales to continue.  *See, e.g.*, JTX-683 (tweet from Mr. Cahen stating "RR/BAYC is officially the highest 24h volume . . . IN THE WORLD!"; JTX-685 (tweet from Mr. Cahen stating "RR/BAYC about to become the first project ever to top both the @foundation and the @opensea charts."); Cahen Decl. (Dkt. 344) ¶ 253 (Mr. Cahen's testimony that he continued to attempt

to sell the infringing NFTs even though he believed they were subject to over two dozen takedowns); Dkt. 163-95 (Mr. Ripps' tweet advertising infringing NFTs on OpenSea). Mr. Ripps even had control over a sales page for the sale of RR/BAYC NFTs on OpenSea. *See* Ripps Depo. Designations (Dkt. 396) at 81:3-81:14. As such, Defendants promoted and had control over the harmful secondary market of Defendants' infringing NFTs sold on the OpenSea platform alongside the genuine BAYC NFTs. Trial Tr. at 44:11-15; Solano Decl. (Dkt. 342) ¶ 42; JTX-684 (sales chart from OpenSea showing both NFT collections among the "top collections"). Finally, in addition to Mr. Ripps, Mr. Cahen did directly, and repeatedly, sell the infringing NFTs on OpenSea. Trial Tr. at 202:24-25 ("Mr. Cahen has sold through OpenSea, LooksRare, and even Foundation.").

**Defendants' Response**:

The evidence at trial showed that Mr. Solano could not identify a single instance where Mr. Ripps sold an RR/BAYC NFT on a marketplace that also sold BAYC NFTs:

Q.     You have not identified a single instance in which Mr. Ripps sold an RR/BAYC NFT on any marketplace where Yuga sold a BAYC NFT; correct?

A.     I already explained why that would be. Foundation did not – could not list Bored Apes until the very moment that they decided to run the scam on that website. And then, of course, yes, then their secondaries are being sold on OpenSea. It's like getting together with your friends, buying a bunch of counterfeit bags, and then you take them to the swap meet.

Q.     Sir, I'm focused on whether the statements in your witness statement are true or not. You have not identified a single instance in which Mr. Ripps sold an RR/BAYC on any marketplace where Yuga sold BAYC NFT; correct?

A.     These marketplaces have done thousands of these in volume on both brands' NFTs.

Q.    Is that your best answer to my question sir?

A.    Yes.

Q.    Okay.  Now, Yuga never had a page on Foundation for the Bored Ape Yacht Club, right?

A.    Yes.

Trial Tr. [Solano] 44:6-45:2.  Mr. Solano similarly admitted that his declaration falsely attributed Defendants with selling RR/BAYC NFTs based on documents showing that some anonymous, third-part was re-selling the NFTs:

Let's look specifically at JTX-686, which is excerpted in your witness statement.  And if we can maybe blow up what you've put there.   This is one of the documents you rely on in your witness statement; right?

A.    Yes.

Q.    And you say that this image from JTX-686 shows Defendants using the BAYC marks to sell their NFTs alongside authentic Yuga Labs BAYC NFTs; right?

A.    Yes.

Q.    ***This side-by-side image, JTX-686, never appeared on OpenSea, did it?***

A.    ***This side-by-side image, no.***  But these are two different pages that look exactly the same.

Q.    It never appeared – this side-by-side image never appeared on any website selling NFTs; right?

A.    I don't know if that's true.  But this is a crop of two different pages that look exactly the same.

Q.    It never appeared side-by-side, correct?

MR. BALL:  Objection.  Vague

THE COURT:  Overruled.

THE WITNESS:  I just answered the question.

Q.    BY MR. TOMPROS:  *Where did you get this image, JTX-686.*

A.    *It was prepared for us.  Counsel prepared it.*

Q.    You didn't find it on OpenSea; right?

A.    I did not specifically screenshot this image, no.

Q.    This image, the combined image like this – strike that.  It's hard to see.  But if we could blow up on the right-hand side, there's a "Created By" section.  And it's hard to see, but it looks like it says – sorry, "owned by," not "created by," "Owned by Safo214"; right?

A.    I'll take your word for it that that's what it says. But yes, it's owned by a username.

Q.    *That's not Mr. Ripps or Mr. Cahen; right?*

A.    *No.* This had already been sold to that person by them.

Trial Tr. [Solano] 45:12-46:24 (emphasis added).

Yuga incorrectly argues that this trial testimony by Mr. Solano admitting that he could not identify a single instance where Mr. Ripps sold RR/BAYC NFTs on the same marketplace as BAYC NFTs should be ignored by referring back to this Court's summary judgment order.  But relying on this Court's summary judgment order is an incorrect use of the law of the case doctrine.  The "law of the case doctrine does not apply to pretrial rulings *such as motions for summary judgment*." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis

1    added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial

2    rulings, often based on incomplete information, don't bind district judges for the

3    remainder of the case.  Given the nature of such motions, it could not be

4    otherwise.").  For example, in *Sienze v Kutz*, the Court held that although **aspects** of

5    an issue were decided at summary judgment for one purpose, the summary

6    judgment order did resolve the issue generally or as to other topics.  *See* No. 1:17-

7    CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding

8    that evidence of initial police contact was relevant as background, but not to already

9    decided issue that initial contact was not excessive force).  This case is just like

10   *Sienze*: even if the summary judgment order ruled on marketplace activity applies

11   only the issue of infringement and is not adequate support for this topic as applied

12   to availability of disgorgement as a remedy (including Defendants' mental state as

13   applied to disgorgement), apportionment, and an exceptional case analysis.

14            Yuga also attempts to rehabilitee Mr. Solano (and his admissions during

15   cross-examination) by reference back to the very declaration that had been

16   impeached during trial, including impeached on this exact topic based on the

17   portion to the transcript quoted above.  Moreover, Mr. Solano's declaration was

18   globally impeached and shows to be untrustworthy.  For example, Mr. Solano was

19   forced to concede on cross-examination that his sworn declaration included a false

20   statement claiming that Defendants continue to receive royalties from sales on

21   secondary marketplaces:

22        Q.    And you understand that Mr. Ripps and Mr. Cahen have testified
23              that they do not currently receive any royalties or creator fees from
24              sales on secondary marketplaces; right?

25        A.    Yes.

26        Q.    So you don't have any basis for your statement that their profits
27              continue to increase; correct?

28

A. It's my understanding that they were collecting royalties or creator fees from LooksRare for quite a while.  Although, those were supposed to be donated to charity and never were.

Q. **They don't continue to increase; correct, sir?**

A. **Correct.**

Q. **That statement, that part of your witness statement is incorrect; right?**

A. **Yes.**

Trial Tr. [Solano] 48:15-49:4 (emphasis added).  Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial.  Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at

your deposition? A Yes."); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes."). Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted. Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. In fact, no one has been able to identify a single confused consumer in the entirety of this case. *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

Yuga also argues that the fact Defendants never sold RR/BAYC NFTs on the same marketplaces that sold BAYC NFT does not matter because Defendants' tweeted about marketplace listings created by third parties.   But Yuga fails to mention that a simple tweet does not amount to "marketing activities" because it is simply reporting what is going on in the crypto space.  Moreover, those tweets make clear to identify RR/BAYC NFTs as having been created by Mr. Ripps and not Yuga by pointing out their satirical content and purpose.  For example, Yuga cites to JTX-683, which makes clear that Defendants' NFT collection is not the same as Yuga's—it states "RR/BAYC is official the highest 24h volume on @opensea … We passed BAYC in the middle of Apefest!"  JTX-719 is similarly a tweet by Mr. Ripps stating, "very much winning this battle, will continue to fight" with a link to the Foundation page for the RR/BAYC collection.  Again, this is an exhibit that directly expresses the protest purpose of the RR/BAYC NFT collection. Similarly, JTX-685 is a tweet of the top NFTs on OpenSea and identifies RR/BAYC collection as "RR/BAYC" along with the satirical logo saying, "THIS LOGO IS BASED ON THE SS TOTENKOPF."  The post also differentiates RR/BAYC from BAYC NFTs by having separate entries for them on the chart. JTX-684 is an exhibit from an unidentified website again stating the top collection,

once again identifying the RR/BAYC collection as "RR/BAYC" along with the satirical logo saying, "THIS LOGO IS BASED ON THE SS TOTENKOPF."

Yuga also false states that Mr. Ripps admitted at his deposition at 81:3-81:14 controlled the OpenSea page that Yuga complains of in this litigation.  But the deposition transcript that Yuga cites actual confirms that Mr. Ripps did not have page on OpenSea:

> Q.    Were – were RR/BAYC NFTS available for transfer on OpenSea?
>
> A.    Not by me.
>
> Q.    **But you had a page on OpenSea?**
>
> A.    **I had a page?  Did I have a page?  No**.  Perhaps RR/BAYC collection had a page on OpenSea.
>
> Q.    And who ran that collection?
>
> A.    Who ran that collection?  I did because I have the keys to the RR/BAYC.
>
> Q.    **And what did the RR/BAYC collection on OpenSea look like?**
>
> A.    **I'm not sure.**

Ripps Depo. Designations (Dkt. 396) at 81:3-81:14 (emphasis added).  Mr. Ripps at most admits that he has the keys to the digital wallet that holds the smart contract for RR/BAYC and not that he controls the OpenSea page for the RR/BAYC collection.  Mr. Ripps further testified at his deposition about how he had limited say in how OpenSea would display the collection, but that he still made every effort he could to make sure the page OpenSea designed was a clear as possible:

> Q.    Do you have any images of what the RR/BAYC NFT page looked like on OpenSea?

A.   ***I do remember at one point making the background image the banner, if you will, to say "Long Live Conceptual Art,"*** or something like that, or "You can't copy an NFT," or something along those lines, or – and ***I do remember making sure that people had a link to RRBAYC.com***, which is the artist statement at which all the RR/BAYCs – or, I would say, ***the vast majority of them were sold through RRBAYC.com.***

Ripps Depo. Designations (Dkt. 396) at 81:22-82:7 (emphasis added).

**Plaintiff's Reply:**

Defendants' response contains a series of sideshows to distract from the fact that Defendants' infringing RR/BAYC NFTs were sold in the same marketplaces as Yuga Labs' official BAYC NFTs.  The Court explicitly held that "Defendants promoted and sold their NFTs through the same online NFT marketplaces" as Yuga Labs.  SJ Order (Dkt. 225) at 12.  Defendants' attempt to re-litigate this issue is meritless.

As discussed *supra*, Defendants' response fails to rebut the objection because: (1) the response seeks to relitigate issues already adjudicated by the Court (*supra* ¶ 9), and (2) Defendants fail to impeach Mr. Solano's accurate testimony (*supra* ¶ 3).

Additionally, the Court should reject Defendants' response because, as discussed further below, (1) Defendants promoted and had control over secondary marketplaces where RR/BAYC NFTs were sold alongside BAYC NFTS, and (2) the exhibits to which Yuga Labs cites are not misleading.

**Defendants Promoted And Had Control Over Secondary Marketplaces Where RR/BAYC NFTs Were Sold Alongside BAYC NFTs:**  Defendants' claim that Mr. Ripps did not personally, directly sell the infringing NFTs on certain marketplaces is immaterial.  As discussed above, the record is replete with examples demonstrating how Defendants actively marketed secondary sales of their

infringing NFTs on OpenSea and pushed for such sales to continue.  Moreover, Mr. Ripps admitted that he controlled the OpenSea sales page and made changes to it. Ripps Depo. Designations (Dkt. 396) at 81:3-81:14 (" Q. But you had a page on OpenSea?  A. I had a page?  Did I have a page?  No.  ***Perhaps RR/BAYC collection had a page on OpenSea***.  Q. And who ran that collection?  A. ***Who ran that collection?  I did because I have the keys to the RR/BAYC***.") (emphasis added); *id.* at 81:22-82:7 ("A. ***I do remember at one point making the background image the banner***, if you will, to say 'Long Live Conceptual Art,' or something like that, or 'You can't copy an NFT,' or something along those lines . . .") (emphasis added).  Further, as Mr. Atalay testified, the owner of the RR/BAYC smart contract controls how the collection is displayed in secondary marketplaces such as OpenSea.  Trial Tr. at 136:13-16.  In other words, since Mr. Ripps owns the RR/BAYC smart contract, he also controls it on marketplaces such as OpenSea. Accordingly, Mr. Ripps' promotion of RR/BAYC NFT secondary sales on OpenSea and control of the website demonstrate his actions to sell RR/BAYC NFTs on the same marketplace as genuine BAYC NFTs.

Additionally, Defendants' attempt to characterize Defendants' tweets (e.g., JTX-683, JTX-719, JTX-685) as "simply reporting what is going on in the crypto space" or as adequately identifying Mr. Ripps as the creator is misleading at best. These tweets are all marketing tactics to promote and sell the RR/BAYC NFTs by advertising their success in NFT marketplaces and thereby attract consumers to purchase their infringing NFTs.  Defendants' claim of using a modified version of Yuga Labs' logo also does not support their position.  Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs, including when testing Defendants' alleged modified use of the BAYC Marks.  JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341)¶¶ 13.a-c, 16, 47, 48, 73, 81, 82.

**The Exhibits To Which Yuga Labs Cites Are Not Misleading:** Nothing is misleading about JTX-686.  That document shows a comparison of a genuine BAYC NFT listed on OpenSea and one of Defendants' infringing NFTs listed on OpenSea.  Defendants do not and cannot dispute that both NFTs appeared on OpenSea at the same time.  Even though Mr. Cahen admits that he did sell Defendants' infringing NFTs directly on OpenSea, (*see* Trial Tr. at 202:18-25); JTX-686 includes a listing on the secondary market by a third party, which is not surprising as a significant portion of the trading volume put into motion and actively promoted by Defendants' infringement took place on secondary markets. *See* Trial Tr. 202:4-12 ("The majority of the sales are taking place on secondary markets.").  The fact also remains that Defendants actively marketed secondary sales of their infringing NFTs on OpenSea and pushed for such sales to continue. *See, e.g.*, JTX-683 (tweet from Mr. Cahen stating "RR/BAYC is officially the highest 24h volume . . . IN THE WORLD!"; JTX-685 (tweet from Mr. Cahen stating "RR/BAYC about to become the first project ever to top both the @foundation and the @opensea charts.").  It simply lacks credibility for Defendants to claim otherwise.