**Defendants' Disputed Post Trial Finding of Fact No. 55:**

<u>Some third-party resellers also auto-generated the terms "Bored Ape Yacht Club V3" or "BAYC V3," including when generating a new name space after resolution of requests pursuant to the Digital Millennium Copyright Act. Trial Tr. [Cahen] 253:22-254:7. Mr. Ripps and Mr. Cahen had no control over and no affiliation with those third-parties who auto-generated "Bored Ape Yacht Club V3" or "BAYC V3." Trial Tr. [Cahen] 254:3-7.</u>

**Plaintiff's Basis for Dispute:**

Evidence admitted at trial demonstrates that Mr. Ripps used the term BAYC V3 before Yuga Labs sent a single DMCA notice to enforce its trademark rights against Defendants' infringement. JTX-689 (tweet from Mr. Ripps on May 13, 2022, promoting infringing NFTs as "bayc v3"); Dkt. 193-2 ¶ 93 (undisputed fact that the first takedown notice issued against the RR/BAYC NFTs occurred on May 17, 2022). Defendants also lack personal knowledge as to why certain third-party marketplaces purportedly used the same terminology as Mr. Ripps to refer to Defendants' infringing NFTs—which is a dubious coincidence. And even if some marketplaces adopted the name *first used by Mr. Ripps* in response to Yuga Labs' takedown notices, it merely demonstrates that these marketplaces were confused and associated Defendants' infringing NFTs with Yuga Labs' Bored Ape Yacht Club brand. This was compounded by the fact that Mr. Ripps marketed his infringing NFTs by tweeting links to marketplaces selling the NFTs under the "Bored Ape Yacht Club V3" name. JTX-690. This repeated false association in turn amplified confusion in the marketplace to the point that even Bloomberg, a national media company, attributed Defendants' infringing products to the Yuga Labs' Bored Ape Yacht Club brand. *See* JTX-701. This confusion was also compounded by the fact that the RR/BAYC token tracker immutably copies Yuga Labs' marks so even if someone tried to determine if Mr. Ripps' use of BAYC V3 referred to some unaffiliated NFT collection they would still encounter Yuga Labs'

marks and attribute the infringing NFTs to Yuga Labs. JTX-117. All of this confusion flows directly from Defendants' deliberate decision to steal Yuga Labs' BAYC Marks and adopt the same images for their infringing NFTs.

**Defendants' Response:**

As explained above JTX-689 is a sarcastic response to j1mmy.eth (Mr. McNelis) a Twitter user with longstanding and public disagreements with Mr. Ripps. Mr. Ripps discussed this in his declaration. Ripps Decl. ¶¶ 73-80 (Dkt. 346) (uncontested). Anybody seeing that Tweet—which did not link to any RR/BAYC NFT materials—would understand that it was sarcastic and meant to mock j1mmy.eth. Further, it was common on the internet to reference things jokingly as "v3" so this was a common joke that the average crypto enthusiast would understand. *See* Trial Tr. [Cahen] 255: 1-3 (explaining that it is a common joke that others may have engaged with). The timing in relationship to the DMCA has no bearing on the proposed finding of fact.

Yuga claims that Defendants lack personal knowledge as to "why certain third-party marketplaces purportedly used the same terminology as Mr. Ripps to refer to Defendants' infringing NFTs." First, Yuga did not object to any portion of Defendants' testimony on this regard. Thus, to the extent they are making an evidentiary objection it is waived. *See Fenton v. Freedman*, 748 F.3d 1358, 1360 (9th Cir. 1984). Further, Defendants do not need to know *why* certain third-party websites took an action, it is sufficient for them to state that third-party websites took an action. Yuga presented no evidence contradicting this testimony that third-party websites "version up" names of NFT collections.

Lastly, the argument that the marketplaces were "confused" by the use of BAYC is presented without evidence. In fact, Yuga presented no evidence about any confusion by any market that believed that the RR/BAYC project was associated with it. As such, the fact that the Token Tracker contained the term "BAYC" has no bearing on whether Defendants used the term "Bayc v3" with the

intent to confuse consumers.  Finally, for the reasons stated above, Yuga did not prove that Bloomberg was confused, nor that it was confused by Defendants' use of the term "Bayc v3".  Trial Tr. [Solano] 31:3-17.

**Plaintiff's Reply:**

Defendants' response states "[t]he timing [of Defendants' use of V3] in relationship to the DMCA has no bearing on the proposed finding of fact."  But that is precisely the causal relationship that Defendants' proposed finding of fact contends.  Caught in their lies, Defendants' attempt to walk back their position.

The record shows that the first takedown of the RR/BAYC collection occurred on May 17, 2022.  Dkt. 149-5 (table of takedown requests in summary judgment record).  ***Every single takedown request*** occurs after Defendants were using the "V3" name to promote their infringing NFT collection.  JTX-689 (May 13, 2022 tweet by Mr. Ripps using "bayc v3"); JTX-1249 (May 14, 2022 tweet by Mr. Ripps showing "Bored Ape Yacht Club V3" as the name of his NFT).  Defendants' testimony is a knowing lie, and a failed attempt to mislead the Court about their intentional use of Yuga Labs' BAYC Marks to sell their infringing NFTs.  Defendants' persistent shifting of stories to try to hide their blatant lies and intent is telling.  Defendants are bad-faith infringers and this is an exceptional case.

Nevertheless, even accepting as true Defendants' contention that third-party marketplaces would "version up" the BAYC name used by Defendants, that necessitates that Defendants first used the confusingly similar name.  Defendants prove Yuga Labs' point.  Defendants' use of the BAYC Marks caused the marketplace to confuse and associate Defendants' NFTs with Yuga Labs' Bored Ape Yacht Club brand.  That is the infringement that must be remedied through disgorgement of Defendants profits and injunctive relief, including transferring the RR/BAYC smart contract to Yuga Labs so that Yuga Labs can prevent or address further confusion on these marketplaces.

Defendants' actions caused third-party marketplaces to associate Defendants' infringement with Yuga Labs' BAYC marks, which furthered the confusion in the marketplace. Defendants have no response to these facts.

Finally, as discussed *supra*, the rest of Defendants' response is unavailing. Specifically: (1) Defendants continue to lie about their use of BAYC V3 and Bored Ape Yacht Club V3 (*supra* ¶ 7), and (2) Defendants' use of Bored Ape Yacht Club V3 caused confusion (*supra* ¶ 53, 54).