**Defendants' Disputed Post Trial Finding of Fact No. 66:**

<u>Yuga also relied on the "token tracker" or "token name" for the RR/BAYC as purported evidence of sales attributable to consumer confusion. Yuga's former Chief Technical Officer Kerem Atalay explained that using token trackers or token names to distinguish NFTs is not "how most people would do that, and . . . I don't think that would be a surefire way of distinguishing between two smart contracts." Trial Tr. [Atalay] 132:21-133:8.</u>

**Plaintiff's Basis for Dispute:**

This assertion is immaterial. Whether or not relying upon a token tracker or token name is a "surefire" way to verify the provenance of an NFT does not impact the remedies in this case. Indeed, Defendants testified the tracker is a "very common" way that consumers refer to their NFTs. Cahen Depo. Designations (Dkt. 395) at 148:12-13 ("Oh, yes. I believe that it's very common for people to do that."). Mr. Cahen reiterated this testimony at trial. Trial Tr. at 225:25-226:2. And as Defendants admit, the token tracker for their infringing NFTs is "Bored Ape Yacht Club" which led third-party websites to also refer to Defendants' infringing NFTs using Yuga Labs' marks. *Id.* at 149:12-13; JTX-117; JTX-138; JTX-671. Not only were third-party websites confused by this false affiliation, but the token tracker also caused the Twitter bot @0xGem to falsely report sales of RR/BAYC NFTs as sales of legitimate Bored Ape Yacht Club NFTs, propagating confusing in the marketplace and diluting Yuga Labs' exclusivity. JTX-705; JTX-1029; Berger Decl. (Dkt. 339) at ¶ 8(i) ("First, the introduction of RR/BAYC NFTs increased the perceived supply and decreased the perceived exclusivity of authentic BAYC NFTs"). Regardless of whether a token tracker is the "surefire" way to verify an NFT the parties agree that it is a way used by consumers and the market to potentially identify the source of an NFT. Indeed, the Court has already found that "Defendants used Yuga's BAYC Marks to . . . ensure that the consumer will be explicitly misled in the token tracker, which is the place where a consumer should

be able to authenticate and verify who created the NFT." SJ Order (Dkt. 225) at 17. Defendants cannot avoid this finding by now asserting that the token tracker is not the best way to verify an NFT when they have already conceded that it is a very common way that consumers identify NFTs.

Defendants' RR/BAYC NFTs are also immutably linked to Yuga Labs' Bored Ape Yacht Club brand through the RR/BAYC smart contract and token tracker. Trial Tr. at 134:1-8 (Mr. Atalay testifying that "[i]n this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance."). By creating this link, Defendants divested Yuga Labs of its ability to properly control its brand. Trial Tr. at 100:10-14 (Ms. Muniz testifying that "more than anything, we need to control our brand. We need to have our brand back."). This ongoing harm can only be remedied by injunctive relief.

**Defendants' Response:**

Yuga's response is improper because it is not a basis to oppose a finding of fact that Mr. Atalay made the quoted statement.

Yuga's response also completely ignores Mr. Atalay's statement that "most people" *would not* use the token tracker to differentiate an NFT collection—a fact that directly undercuts Yuga's claim that the token tracker drove widespread confusion among consumers. *Compare* Trial Tr. [Atalay] 132:21-133:8 *with* Atalay Decl. ¶ 7 ([Token Tracker] is a critical piece of data the NFT community uses when they are buying on the secondary market.")

**Plaintiff's Reply:**

Defendants' response fails to dispute their own admissions that token trackers are a common way for consumers to identify the source of NFTs. Defendants' attempt to contend the opposite is unavailing, particularly in light of the Court's finding that token trackers authenticate and verify NFTs, and

Defendants' use of BAYC Marks in the RR/BAYC smart contract's token tracker was explicitly misleading.

Defendants' cited testimony from Mr. Atalay does not disprove the potential for confusion in this case resulting in the need to rely on token trackers.  At trial, Mr. Atalay confirmed that for the "average person" the "most straightforward way [] to distinguish two NFTs from each other is just to look at them on a marketplace like OpenSea."  Trial Tr. at 135:5-10.  But that is not possible in this case due to Defendants' causing confusion with their promotion of the use of the same exact BAYC Marks on OpenSea (*see* O'Laughlin Decl. (Dkt. 341) ¶ 13(b)); *see also* JTX-686.  Thus, because an average person would not be able to discern between RR/BAYC and genuine BAYC just by looking at the marketplace, they would need to verify another way, such as by the token tracker.  But there too, Defendants' use of the BAYC Marks caused confusion.