**Defendants' Disputed Post Trial Finding of Fact No. 71:**

Ms. O'Laughlin's surveys included people who considered purchasing digital art irrespective of whether they were considering purchasing an NFT. Trial Tr. [O'Laughlin] 149:17-21.

**Plaintiff's Basis for Dispute:**

The survey audience for both of Ms. O'Laughlin's surveys consisted of individuals who indicated that they "(i) have purchased an NFT in the past year using Ethereum," "(ii) are considering purchasing an NFT using cryptocurrency in the next year," "(iii) have purchased digital art as a collectible in the past year," or "(iv) are considering doing so in the next year." O'Laughlin Decl. (Dkt. 342) ¶¶ 31, 68-69. Defendants' proposed finding oversimplifies the selection criteria by ignoring consumers who purchase NFTs as digital collectibles or art. *See also* Berger Report at 5 n.2 (observing "NFTs have mostly been associated with digital items such as artwork, images, or videos"); SJ Order (Dkt. 225) at 7 (citing Andrea McCollum, *Treating Non-Fungible Tokens as Digital Goods Under the Lanham Act*, 63 IDEA: L. Rev. Franklin Pierce Center for Intell. Prop. 415 (2023) ("While virtual goods are intangible items that exist in a digital space, they are also items that have specific uses and values that are dependent on the consumer")); *Hermès International v. Rothschild*, No. 22-CV-384-JSR, 2023 WL 1458126, at *5 (S.D.N.Y. Feb. 2, 2023) ("Individuals do not purchase NFTs to own a 'digital deed' divorced from any other asset: they buy them precisely so that they can exclusively own the content associated with the NFT.").

**Defendants' Response:**

Defendants' proposed finding of fact is that the survey selection criteria included those who were interested in purchasing digital art irrespective of whether they were interested in an NFT. Two of the survey flow options that would qualify a respondent are, ""(iii) have purchased digital art as a collectible in the past year," or "(iv) are considering doing so in the next year." O'Laughlin Decl. (Dkt. 342).

Neither of these qualification screens has anything to do with "consumers who purchase NFTs as digital collectibles or art." Lastly, Ms. O'Laughlin directly confirmed that her purchase flow would qualify people "irrespective of whether they were considering purchasing an NFT". *See* Trial Tr. [O'Laughlin] 149:17-20 ("Q: You qualified people who were considering purchasing digital artwork, irrespective of whether they were considering purchasing an NFT, didn't you? A: **That's correct.**"). Yuga dismissal of this material testimony is an attempt to avoid the clear implication that this admission means that O'Laughlin's survey sweeps far broader than the NFT market.

**Plaintiff's Reply:**

Defendants have no evidence establishing that Ms. O'Laughlin's survey population was overbroad. To the contrary, as discussed *supra* ¶ 70, Ms. O'Laughlin's opinion consists of an appropriately defined survey population that is consistent with the evidence. Indeed, Mr. Ripps' own testimony supports Ms. O'Laughlin's opinion. *Id.*