**Defendants' Disputed Post Trial Finding of Fact No. 78:**

Ms. O'Laughlin's survey methodology was flawed from the outset because she did not determine which survey format she should use, but instead used two different surveys that are appropriate for different uses in different and mutually exclusive circumstances. *See* Trial Tr. [O'Laughlin] 142:24-144:14.

**Plaintiff's Basis for Dispute:**

The Court considered Defendants' argument and rejected it when the Court determined that Ms. O'Laughlin's testimony and the findings in her expert report are "relevant, reliable, and admissible." Trial Tr. at 141:3–5. Defendants offer no evidence or expert testimony to the contrary.

Though Defendants complain that Ms. O'Laughlin "used two different surveys that are appropriate for different uses," that is exactly the approach called for where—as here—two different marketplaces are being tested for likelihood of confusion. There is no principle dictating that the same survey format must be used in every circumstance, regardless of context in which the marks appear. *See* Trial Tr. at 142:18-23 ("Q And it is important to be able to identify the right survey methodology for the matter at hand; correct?" / "A I would generally agree with that. However, it's possible that one or many methodologies may be appropriate for a particular matter. So it's not a one or none. It could be a one, many, or none.").

Ms. O'Laughlin surveyed two different contexts in which Defendants misappropriated the BAYC Marks. She used accepted principles in choosing which survey methodology to use in each context. On the Foundation marketplace where the parties' NFT collections were not sold at the same time, she used an Eveready survey, which presents participants with only the junior mark. O'Laughlin Decl. (Dkt. 341) ¶ 17; *see also id.* ¶ 17 n.6 ("In Eveready format surveys involving forward confusion, respondents are presented with only the allegedly infringing mark and asked open-ended questions to assess confusion."). On the OpenSea marketplace, where the parties NFT collections were sold at the same time, she

used a Squirt survey, which presents participants with both the junior and the senior mark. *Id.* ¶ 18; *see also* ¶ 18 n.7 ("In Squirt format surveys involving forward confusion, respondents are presented with both parties' marks and asked closed-ended questions to assess confusion."). There is nothing inconsistent about using the appropriate survey in the appropriate context to best replicate market conditions.

Accordingly, Courts regularly credit survey expert testimony that employs both Eveready and Squirt survey formats in the same litigation. *See, e.g.*, *Icleen Entwicklungs-Und Vertiebsanstalt Für Umweltprodukte v. Blueair AB*, No. 21-cv-2236 DSF (ADS), 2021 WL 6104397, at *8-9 (C.D. Cal. Oct. 4, 2021) (crediting testimony relying on both Eveready and Squirt formats in ruling on a preliminary injunction); *Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965, 977 (D. Minn. 2017) (same); *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630, 642-43 (S.D.N.Y. 2011) (same).

Though strength of the marks is one factor that can guide the choice of survey methodology, it is not determinative as Defendants suggest. *See, e.g.*, Jerre B. Swann, *Eveready and Squirt-Cognitively Updated*, 106 Trademark Rep. 727, 737 (2016) ("Where, in sum, marks are not *proximate*, an Eveready is likely the only format available; and even as to proximate marks, an Eveready may always be offered (possibly in response to complaint allegations of trademark strength) in conjunction with a Squirt to negate the reach capabilities of a brand.") (footnote omitted). Defendants' argument that Ms. O'Laughlin should have based her choice of methodology on strength of the marks alone contradicts established principles.

**Defendants' Response:**

Yuga misconstrues the Court's own words. The Court specifically stated, "[W]hether the methodology chosen by this witness to conduct both the Squirt and Eveready Surveys ***goes to the weight of the witness's testimony***, not to its

admissibility. And counsel will have an opportunity to fully expose any limitations or flaws on cross-examination." Trial Tr. 141:5-10 (emphasis added).

The cross-examination of Ms. O'Laughlin fully "expose[d]" limitations and flaws with using both methodologies. Ms. O'Laughlin's testimony fundamentally changed between her deposition and trial on this matter. At trial, she began by saying that while it is generally important to chose the correct methodology, there could be one, two or no methodologies that are applicable. Trial Tr. [O'Laughlin] 142:24-143:5. She then refused to acknowledge that an Eveready survey is most accepted when the asserted mark is "top of mind" despite testifying to that at her deposition. *Id.* at 143:6-144:1. This is in context to a *Squirt* survey which is to be used when marks are weak. *See id.* at 144:4-6. In fact, Ms. O'Laughlin herself has counseled other practitioners on how to choose *between* the two surveys. JTX-314. However, in this case she decided she would break from her prior practice and advice. Trial Tr. [O'Laughlin] 144:19-23.

Yuga's citation to case law does not assist its position. While some courts have credited expert opinions relying on both *Squirt* and *Eveready* surveys, those decisions should be given little weight. First, they all implicate preliminary injunctions. *See Icleen Entwicklungs-Und Vertiebanstalt Fur Umweltprodukte v. Blueair AB*, 2021 WL 6104397 (C.D. Cal. 2021) (accepting surveys at preliminary injunction stage). Ms. O'Laughlin's consistent position has been that mark strength is the most important factor for choosing surveys. *Id.* at 143:6-144:6. Although her choice to not choose between the two surveys did not render her opinion inadmissible, her cross-examination revealed that it should be afforded little to no weight.

**Plaintiff's Reply:**

Defendants' tired argument is not supported by law or fact. The only evidence in the record about the proper methodology is Ms. O'Laughlin's. It is possible that more than one methodology is appropriate for a given case. Trial Tr.

at 142:18-23. Defendants' cross-examination of Ms. O'Laughlin did not "expose" any limitations. To the contrary, it reinforced that since Foundation and OpenSea are two *different* NFT marketplaces with *different* ecommerce designs, two *different* survey methodologies were appropriate for this case where Ms. O'Laughlin conducted a survey of each *different* marketplace.