**Defendants' Disputed Post Trial Finding of Fact No. 79:**

<u>The *Eveready* survey format is most accepted when the asserted mark is top of mind. Trial Tr. [O'Laughlin] 143:6-144:3</u>

**Plaintiff's Basis for Dispute:**

This is an inaccurate statement of the accepted methodology for conducting consumer confusion surveys, as discussed *supra* ¶ 78. In fact, as Ms. O'Laughlin explains in the testimony Defendants cite, "I believe it depends on a few factors. I think the choice of Eveready is often used for marks that are top of mind. However, the Eveready studies can also be used depending on the context in which a particular good is offered." Trial Tr. at 143:8-11. Defendants cite no expert testimony or law to support their position. Once again, Ms. O'Laughlin's survey remains unrebutted.

Nevertheless, the strength of Yuga Labs' mark is no longer at issue. The court has already found that that "the BAYC Marks are both conceptually and commercially strong," SJ Order (Dkt. 225) at 10-11. And Defendants agreed. Dkt. 418-1 ¶ 1 (admitting "Yuga Labs is the creator of one of the most well-known and successful NFT collections, known as the Bored Ape Yacht Club ('BAYC')"). An Eveready survey is thus one available survey.

**Defendants' Response:**

Everready surveys apply when a mark is "top of mind." Marks that are top of mind are those that appear "readily accessible in memory." Jerre B. Swann & R. Charles Henn Jr., 109 Trademark Rptr 671, 672. A paradigmatic example of a "top of mind" mark is McDonalds. "Relatively few trademarks, however, are readily accessible in memory". *Id.* This is of course, different than whether a mark is "conceptually and commercially strong" as a mark can be conceptually and commercially strong but not be on top of the average consumer's memory. For example, the term "Yuga" is likely conceptually and commercially strong, but only two out of 505 respondents associated it with the BAYC pictures. *See* Trial Tr.

[O'Laughlin] 155:25-156:1.  Given Ms. O'Laughlin's prior representations that fame of the mark is the most important aspect of choosing between the surveys, she should have determined the fame of Yuga's marks.  Instead, she chose not to conduct a fame survey.  *Id.* at 144:12-18.  This court should weigh that methodological decision and give her surveys little weight.

**Plaintiff's Reply:**

Once again, Defendants' argument is not supported by any evidence, law, or even basic survey methodology.  They have presented no evidence that Eveready surveys are rejected or discounted when there is no fame survey.  Defendants chose not to offer a rebuttal survey expert at their peril.  The evidence demonstrates that Ms. O'Laughlin used the appropriate survey methodology.  *See supra* ¶ 78.