**Defendants' Disputed Post Trial Finding of Fact No. 83:**

<u>Yuga's brand equity expert, Dr. Jonah Berger, offered a flawed and unreliable opinion that the RR/BAYC project caused harm to Yuga's brand equity.</u> *See* Trial Tr. [Berger] 103:23-104:4.

**Plaintiff's Basis for Dispute:**

Dr. Berger's unrebutted testimony explains that he "conducted a number of analyses, not just one," which helps to rule out the alternative theories that Defendants hypothesize might explain Dr. Berger's findings. Trial Tr. at 107:8-108:1; 114:15-115:25; 121:23-125:1. Defendants offered no expert of their own to support any of their other hypothetical causes of brand harm to Yuga Labs. Without an expert of their own to support their theories and in light of Dr. Berger's reasonable and rational explanation of what he found in the data, Dr. Berger's opinions should be accepted.

Defendants did not object to the admissibility of Dr. Berger's testimony. Dkt. 366.

**Defendants' Response:**

Using its superior resources, Yuga hired an expert and paid him at least tens of thousands of dollars to offer an opinion that its brand suffered some unquantified amount of harm. Trial Tr. [Berger] 104:5-9. An expert's testimony is not *per se* reliable just because the opposing party does not retain an expert. Indeed, the evidence at trial shows that Dr. Berger's limited analysis did not establish that the minting of RR/BAYC NFTs was the source of the alleged brand harm. Although Dr. Berger acknowledged that several different causes could have impacted Yuga's brand equity, Dr. Berger declined to consider alternative causes of harm in his analysis. Trial Tr. [Berger] 108:7-109:4; 115:16-25. He limited his analysis to the period from May 6, 2022, to late June, and completely disregarded events leading up to that period. Trial Tr. [Berger] 106:1-3. For instance, Dr. Berger's analysis ignored the Otherside scandal, which occurred mere days before his chosen analysis

period.  Trial Tr. [Berger] 113:10-114:2; JTX-2715.  Dr. Berger even ignored events, like the general downturn of the cryptocurrency market, which occurred during his analysis period.  Trial Tr. [Berger] 109:5-110:5; JTX-306.

At trial, Dr. Berger claimed that the presence of other potential causes of brand harm does not dilute his hypothesis that the minting of RR/BAYC NFTs caused brand harm.  Trial Tr. [Berger] 115:19-25.  However, in ignoring other potential causes of harm, Dr. Berger cannot definitively establish which factors caused harm or quantify how much harm was attributable to any given factor.  *See* Trial Tr. [Berger] 108:16-109:4 ("I don't mean to suggest that any single one of them is the only reason for the harm.  All of them could be -- all of the things that I stated in my answer a couple minutes ago could be contributing to the harm, among other things.").  Indeed, Dr. Berger failed to quantify any alleged harm to Yuga's brand equity, goodwill, or reputation.  *See generally* Berger Decl.; Dkt. 343 at 15.

**Plaintiff's Reply:**

Dr. Berger—a brand equity expert, not a financial expert—observed harm to Yuga Labs' BAYC brand in the marketplace.  Ms. Kindler—an economics expert, not a brand equity expert—testified as to why that harm to Yuga Labs' BAYC brand was unquantifiable.

The fact of harm caused by Defendants' infringing activities is proven by, at least, Dr. Berger's testimony.  Defendants however, without evidence or an expert of their own, offer alternative theories that they believe might also have accounted for some of the harm that Dr. Berger observed.  The evidence shows, however, that Dr. Berger's methodologies ruled out these alternative theories of harm that Defendants posit.  Trial Tr. at 107:8-108:1; 114:15-115:25; 121:23-125:1.  Defendants also have no evidence that any other supposed harms would explain the harms Dr. Berger observed in the data.  Dr. Berger explained why the data does not support Defendants' theories.  Defendants' unsupported theories, and counsel argument, do not amount to evidence.  Moreover, Defendants' attacks on Dr.

Berger's sentiment analysis have no impact on his independent opinion that he observed evidence that the BAYC brand has brand premium and that Defendants' infringing activities harmed that premium. Berger Decl. (Dkt. 339) at ¶¶ 6-76, 93-95.

Defendants had a chance to hire an expert, if they could have found someone to support their position. *See e.g.* JTX-1171, 1567. But they chose not to. As such, Defendants have no evidence to negate or undermine Dr. Berger's observation and opinion that Defendants' infringing activities harmed Yuga Labs.