**Defendants' Disputed Post Trial Finding of Fact No. 92:**

<u>Yuga's damages expert, Lauren Kindler, was able to quantify the alleged damages Yuga suffered. Trial Tr. [Kindler] 172:14-17.</u>

**Plaintiff's Basis for Dispute:**

Ms. Kindler stated throughout her testimony that, although she was able to calculate certain profits accrued by Defendants, the extent of harm to Yuga Labs was not practically quantifiable. *See* Kindler Decl. (Dkt. 338) ¶ 62 ("In addition to the measures of harm quantified above, Defendants' wrongful conduct caused (and continues to cause) unjust enrichment to Defendants and harm to Yuga Labs that are significant, yet more difficult to quantify."); *id.* ¶ 63 ("The confusion created by the wrongful conduct caused harm to Yuga Labs' business that I have not attempted to quantify."); *id.* ¶ 64 ("I have not quantified the extent to which the confusion impacted Yuga Labs' business partnerships"); *id.* ¶ 65 ("I have not quantified the extent to which Defendants' wrongful conduct negatively impacted the value of Yuga Labs' goodwill, but directionally, it would decrease the value."); *id.* ¶ 67 ("Defendants also benefited from their conduct in ways that are not quantified by my profit analysis"); *id.* ¶ 75 ("it is my opinion that there is no economically feasible option for removing the RR/BAYC NFTs from the marketplace entirely or ensuring that Yuga Labs receives adequate monetary compensation for the harm it has suffered and will suffer by having RR/BAYC NFTs exist in the marketplace, which supports Yuga Labs' position that the harm caused by Defendants' infringing NFTs is irreparable through economic means alone."); Trial Tr. at 176:14-22 ("I computed other potential measures of harm, and I also discussed at length in my report other significant areas of harm that would not be easily quantifiable, such as harm to goodwill, harm to brand equity, and things of that nature.").

**Defendants' Response:**

This objection is misleading and raises irrelevant testimony. Without question, Ms. Kindler did calculate Yuga's damages. *See, e.g.,* Trial Tr. [Kindler]

173:1-8 ("This figure depicts the different damages calculations that you performed in this case; correct? A Yes, at the time of my report which was in February of this year. Q And you stand by those figures as accurate; correct? A Yes. I have no reason to believe sitting here that they are not.").

Yuga's citations to Ms. Kindler's testimony on other areas of possible damages that Ms. Kindler was not asked to evaluate or chose not to quantify are irrelevant to the accuracy of this finding of fact, which is that there were damages that Ms. Kindler could quantify.  *See* Kindler Decl. ¶64 ("I have not quantified the extent to which the confusion impacted Yuga Labs' business partnerships…"); Kindler Decl. ¶65 ("I have not quantified the extent to which Defendants' wrongful conduct negatively impacted the value of Yuga Labs' goodwill…"); Kindler Decl. ¶67 ("Defendants also benefited from their conduct in ways that are not quantified by my profit analysis…").

**Plaintiff's Reply:**

The evidence Defendants cite includes the reason their proposed fact is inaccurate—Ms. Kindler testified that in February 2023 her report included certain damages calculations related to specific harms and remedies.  Her report did not state that she "was able to quantify the alleged damages."  Trial Tr. 173:1-8. Rather, as Ms. Kindler testified, there were certain aspects of harm to Yuga Labs that were unquantifiable.  Kindler Decl. (Dkt. 338) ¶¶ 62-65, 67, 72.  Moreover, Defendants ignore Ms. Kindler's testimony that as a result of Defendants' actions after February 2023, Ms. Kindler reached the opinion "that there is no economically feasible option for removing the RR/BAYC NFTs from the marketplace entirely or ensuring that Yuga Labs receives adequate monetary compensation for the harm it has suffered and will suffer by having RR/BAYC NFTs exist in the marketplace, which supports Yuga Labs' position that the harm caused by Defendants' infringing NFTs is irreparable through economic means alone."  Kindler Decl. (Dkt. 338) ¶ 75.  Ms. Kindler also testified it was her opinion that injunctive relief in the form

of transfer of the smart contract was necessary because it was not "economically feasible" to buyback the infringing RR/BAYC NFTs from the market. Trial Tr. 184:13-185:4. This testimony further confirms that Ms. Kindler was not able to quantify all of the harm to Yuga Labs from Defendants' trademark infringement because there was irreparable harm.