**Defendants' Disputed Post Trial Finding of Fact No. 101:**

Ms. Kindler failed to perform any apportionment of her profits calculation to determine profits attributable to infringement and profits not attributable to infringement. Trial Tr. [Kindler] 189:16-25.

**Plaintiff's Basis for Dispute:**

Ms. Kindler did not "fail" to apportion profits. She determined: "Based on my review of evidence produced in this case and blockchain data I analyzed, ***these profits are all traceable to Defendants' uses of Yuga Labs' BAYC Marks***." Kindler Decl. (Dkt. 338) ¶ 61 (emphasis added). Indeed, she testified at trial when asked why she did not apportion less than all of Defendants' profits to their infringement: "I don't think that would be appropriate because they all were sold using the infringing marks. And in the first instance, even if there's not confusion because people might believe or agree with the premise under which the tokens are being sold, that doesn't mean in the second and third and fourth instance that there isn't confusion occurring in the marketplace." Trial Tr. at 189:4-10. Defendants provided no affirmative or rebuttal expert to rebut this testimony.

Defendants' pervasive use of the BAYC Marks related to every sale of RR/BAYC NFT. The smart contract underlying each of Defendants' infringing NFTs is immutably titled "Bored Ape Yacht Club" and given a contract symbol "BAYC," which is replicated on the Etherscan token tracker and anywhere that systems pull information directly from the blockchain. Kindler Decl. (Dkt. 338) ¶ 61; Atalay Decl. (Dkt. 337) ¶ 4; *see also* Solano Decl. (Dkt. 342) ¶¶ 46-47 (explaining that Defendants caused websites such as Etherscan to "prominently display[] the token as 'Bored Ape Yacht Club'" due to "the way Mr. Ripps created the infringing NFTs and his specific use of the BAYC brand as the NFT Collection's smart contract name and symbol"). Additionally, some of the NFTs that were offered for sale were reserved on the infringing rrbayc.com website. Kindler Decl. (Dkt. 338) ¶ 61. So again, Defendants were using Yuga Labs' BAYC

Marks in the marketing of the infringing RR/BAYC NFTs.  "[O]ther RR/BAYC NFTs were sold on marketplaces such as OpenSea and Foundation, which used the BAYC Marks." *Id.* (citing JTX-29; JTX-670).  Defendants also "used the BAYC Marks to sell and promote their own product." SJ Order (Dkt. 255) at 18.  And finally, "[t]he NFTs held by Defendants or not yet minted derive their value from being part of the broader RR/BAYC NFT collection, the value of which has accrued through the sale and promotion of RR/BAYC NFTs that are already in the market." Kindler Decl. (Dkt. 338) ¶ 61.  All profits Defendants derived from their RR/BAYC NFTs were ill-gotten from their willful infringement of Yuga Labs' BAYC Marks.  Defendants are not allowed to retain the fruits of unauthorized trademark use. *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015).

Ms. Kindler's conclusion is consistent with the law.  Yuga Labs is entitled to disgorgement of profits that are derived "from the infringement." *Id.* at 1076.  The RR/BAYC NFTs are infringing goods—the Court has already determined that they are likely to confuse consumers, SJ Order (Dkt. 225) at 10-13—and so profits derived from the sale of those goods resulted from Defendants' infringement. There is no requirement for Yuga Labs to go beyond that and prove that every dollar was attributable to instances of "actual confusion," which is not even a required element of an infringement case.  SJ Order (Dkt. 225) at 10 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

Profits from the sales of Defendants' infringing NFTs, each of which Defendants admit used the BAYC Marks, are necessarily attributable to Defendants' infringement of the BAYC Marks.  Dkt. 418-1 ¶ 7(c) (admitting "Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks").

**Defendants' Response**:

Ms. Kindler's conclusion that "all" profits are "traceable to Defendants' uses of Yuga's BAYC Marks" makes clear that she failed to perform the required

apportionment of the profits down to those attributable to confusion.  *See* Trial Tr. [Kindler] 189:16-20 ("My question was did you or did you not perform an apportionment for people who were not confused? A Again, I don't think that that would be appropriate here.").  It is not enough for a sale to be "traceable" to the use of Yuga's marks.  Yuga is only entitled to disgorgement of profits "attributable to the infringing activity."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016).  Yuga incorrectly argues that any sale that uses a BAYC mark is attributable to the infringing activity.  "If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol" then they cannot be disgorged as "[t]he plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark."  *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942).  This fundamental principle clearly prevents Yuga from receiving profits that were made for reasons beyond the appeal of its symbol, namely the profits attributable to those who reserved an RR/BAYC NFT as a protest against Yuga or to support Mr. Ripps and his renowned reputation as a conceptual artist.  *See* Ripps Decl. ¶ 21 (Dkt. 346) (uncontested); JTX-2333.

The record in this case is clear that *many* sales of RR/BAYC NFTs were not the result of confusion, but genuine protest.  Indeed, Mr. Ripps received dozens of letters from supporters of his artwork indicating that they purchased the NFTs not because they were confused, but because they genuinely wanted to protest Yuga.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX-2590; JTX-2592; JTX-2595; JTX-2596; JTX-2599.  Although Ms. Kindler could not deny that some purchasers bought the RR/BAYC NFTs out of genuine protest of Yuga (Tria. Tr. 189:1-10), she nevertheless argued that apportioning out

1  those purchases was unnecessary since *subsequent* purchasers may have been

2  confused (an assertion for which she offered no evidence).  But that explanation

3  makes little sense, and certainly does not justify her failure to apportion. To the

4  contrary, in the hypothetical scenario where an initial purchaser *was not* confused

5  and a subsequent purchaser was, a proper damages analysis would apportion out the

6  profits accrued from the original sale and only count the profits from the sale that

7  was attributable to confusion.  *See Mishawaka Rubber*, 316 U.S. at 206.

8       Accordingly, because at least some number of sales were not attributable to

9  confusion, Ms. Kindler's conclusion that "all" profits should be disgorged is

10 erroneous because it fails to apportion out the profits that are not attributable to

11 confusion.

12     **Plaintiff's Reply:**

13     Defendants' response admits the fallacy in their logic.  They admit that the

14 profits to be disgorged are from the "infringing activity."  *Lindy Pen Co. v. Bic Pen*

15 *Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993).  But, then they say that Ms. Kindler

16 "failed to perform the required apportionment of the profits down *to those*

17 *attributable to confusion*."  That is not the correct legal standard.

18     Moreover, Defendants do not dispute—but rather have admitted—that each

19 and every single NFT that they created uses (and will always use) two of the BAYC

20 Marks at issue: BORED APE YACHT CLUB and BAYC.  Dkt. 418-1 ¶ 7(c)

21 (admitting "Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks").

22 Of course, Defendants also used the BAYC Marks in other infringing ways (such

23 as, on their sales pages on at least Foundation and OpenSea and in their marketing

24 and promotion of RR/BAYC).  *See e.g.* JTX-29; JTX-670; JTX-696; Kindler Decl.

25 (Dkt. 338) ¶ 61; Atalay Decl. (Dkt. 337) ¶ 4; Solano Decl. (Dkt. 342) ¶¶ 46-47.

26 Indeed, there is a likelihood of confusion for every resale of RR/BAYC NFTs

27 because of how Defendants created their infringing NFTs.  O'Laughlin Decl. (Dkt.

28 341).  Because likelihood of confusion is the touchstone for what is infringing

1  activity, Yuga Labs met its burden of showing that all of Defendants' profits

2  derived from infringing activity. *See e.g.* SJ Order (Dkt. 225) at 10 (citing *AMF*

3  *Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

4        There is a clear likelihood of confusion given Defendants' use of the same

5  marks and images, which the Court already determined.  SJ Order (Dkt. 225) at 10-

6  13; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir.

7  2017) ("[C]ases involving identical marks on competitive goods are rare and

8  'hardly ever find their way into the appellate reports' because liability is 'open and

9  shut.'") (citation omitted).  Thus, Yuga Labs is entitled to Defendants' profits due

10  to their infringing activity regardless of whether purchasers were actually confused.

11  *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012)

12  (granting defendant's profits even where infringement claims premised solely on

13  post-sale confusion where a "potential purchaser, knowing that the public is likely

14  to be confused or deceived by the allegedly infringing product, [] choose[s] to

15  purchase that product instead of a genuine one").

16        Defendants were also unjustly enriched by their ability to "free ride" on Yuga

17  Labs' investment in the BAYC Marks.  Kindler Decl. (Dkt. 338) at ¶ 68; Trial Tr.

18  35:10-16 (Mr. Solano describing how Defendants were riding on Yuga Labs'

19  "coattails").  There is no evidence that consumers would have purchased

20  Defendants' infringing NFTs if they had named them "Ryder Ripps'" or *anything*

21  *else* that did not use the BAYC Marks.

22        Defendants fail to rebut this proof with evidence that their profits do not

23  derive from infringing activity.

24

25

26

27

28