**Defendants' Disputed Post Trial Finding of Fact No. 114:**

The term "ape" in the crypto context is a colloquialism used in expressions like "I aped into something," which means to just jump in. Trial Tr. [Cahen] 264:18-25.

**Plaintiff's Basis for Dispute:**

Defendants offer no expert testimony or other credible evidentiary support for this representation. As shown above, Mr. Cahen's testimony is not credible. *See supra* ¶¶ 7, 113. To the extent the Court finds that the Defendants' claim is material to any relevant issue, it does not negate the Court's findings and the Defendants' admission that Yuga Labs owns the BAYC Marks. SJ Order (Dkt. 225) at 6-10; Dkt. 320-1 (Proposed Revised Pretrial Conference Order) at 2-3. Nor does it negate the Court's findings that the Defendants had a bad faith intent to profit from and infringe Yuga Labs' BAYC Marks. SJ Order (Dkt. 225) at 12-15.

**Defendants' Response:**

The trial evidence shows that "ape" is a term commonly used in crypto and that it means to just jump in. Mr. Cahen testified (and Yuga did not rebut) Mr. Cahen's history and personal knowledge in the crypto industry, which was admitted into evidence without objection:

> 8. After working in film, I transitioned to the cryptocurrency industry, which involves digital currency that is secured by cryptography to make it all but impossible to counterfeit.
>
> 9. I have worked on numerous influential cryptocurrency projects.
>
> 10. My roles on these projects are varied, but include business strategy, project management, art/content creation, and promotion through community building and social engagement.
>
> 11. Some of my work relates to non-fungible tokens ("NFTs").

Cahen Decl. ¶¶ 8-11.  Based on Mr. Cahen's personal knowledge of the crypto industry, he testified about the term "ape" and his personal knowledge on how it is used:

> Q. Before this lawsuit did you think there was any issue with using the word "ape"?
>
> A. In my opinion, there is no issue with using the word "ape."
>
> Q. Why not?
>
> A. Because it is a word that describes, like, one of the most common animals on the entire planet.  What? Am I not going to be allowed to say "apple" or "cucumber"?  You know, it seems pretty reasonable that I would be allowed to say the word "ape."
>
> Q. What about in the context of crypto?  What does "ape" mean?
>
> A. I think it means different things.  But I think there is a colloquialism used which people use as like "I aped into something."
>
> Q. And what does that mean?
>
> A. Like, I invested or I participated.  Like, I just jumped in. Maybe, like, a synonym for it.
>
> Q. And where else have you seen the word "ape" used in the crypto context?
>
> A. Definitely in the context of the Bored Ape Yacht Club.
>
> Q. Anywhere else?
>
> A. Other pieces of artwork or NFT collections, I guess, you could say.

Trial Tr. [Cahen] 264:8-265:6.

Yuga now asks that the Court reject this unrebutted, uncontested evidence based on an improper use of the law of the case doctrine. Specifically, Yuga asks this Court to reject this finding based on the Court's summary judgment order, even though the order did not address the use of "ape" in the crypto industry prior to the Bored Ape Yacht Club. Moreover, the "law of the case doctrine does not apply to pretrial rulings ***such as motions for summary judgment***." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze v Kutz*, the Court held that although ***aspects*** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling on prior use of the asserted marks applies to only the issue of infringement and is not adequate support finding on prior use of the marks by third parties as applied to availability of disgorgement as a remedy (including Defendants' mental state as applied to disgorgement), apportionment, and an exceptional case analysis.

**Plaintiff's Reply:**

Defendants again seek to relitigate decided issues. Defendants infringed upon Yuga Labs' marks, and Mr. Cahen's self-serving and inappropriate expert testimony does not change this fact.

As discussed *supra*, Defendants' responses lack merit. Specifically: (1) Defendants' liability has already been established through the Court's summary judgment order (*supra* ¶ 32).

Additionally, the Court should reject Defendants' responses because (1) Mr. Cahen is not qualified to provide expert testimony, (2) Yuga Labs owns its marks, and (3) Defendants have already admitted to Yuga Labs' ownership of the marks in the pre-trial conference order.

**Mr. Cahen's Improper Expert Testimony Does Not Support This Finding Of Fact:** Mr. Cahen's testimony about how individuals in the cryptocurrency community use the term "ape" is improper expert testimony. Fed. R. Evid. 702. Mr. Cahen lacks any "scientific, technical, or other specialized knowledge" of the cryptocurrency industry and its consumers. *Id.* Defendants only cite to Mr. Cahen's work in the industry to prop up his expert testimony, but these three paragraphs do not qualify Mr. Cahen as an expert. Cahen Decl. (Dkt. 344) ¶¶ 8-11. Nor did Defendants ever designate Mr. Cahen as an expert.

Defendants offer no other evidence aside from Mr. Cahen's improper expert testimony to support this finding of fact. If Defendants wanted testimony as to how cryptocurrency consumers interact, they should have called an expert to proffer such testimony. Defendants instead opted to rely on their lay-witnesses. Defendants may not now attempt to slip inaccurate expert testimony in through these lay-witnesses.

**Yuga Labs Owns Its Marks:** The Court has already decided that Yuga Labs owns its marks. *See* Order on Motion for Summary Judgment (Dkt. 225) ("SJ Order") at 6. "[A]n unregistered trademark can be enforced against would-be infringers . . . ." *Matal v. Tam*, 582 U.S. 218, 225 (2017). "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Halicki Films v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008). Yuga Labs started using the BAYC Marks long before Defendants began their infringement. *Compare* Dkt. 193-2 ¶¶4, 6 *with* ¶24. Since Yuga Labs' first use in April 2021, the BAYC brand has been the cornerstone of its business. *Id.* ¶¶2, 8-14; *see also* Muniz Decl. (Dkt. 340) at ¶ 7 ("The BAYC brand is the tentpole brand for Yuga

Labs. . . . Yuga Labs' marketing of the BAYC brand includes, among other things, its operation of social media accounts, hosting community events, and its brand collaboration and high-profile partnerships"); Solano Decl. (Dkt. 342) at ¶ 16 ("Part of the reason Yuga Labs was able to reach such a large audience is due to significant effort, time and money we spent promoting the BAYC brand."). Indeed, Defendants admit that the BAYC Marks identify Yuga Labs. Dkt. 193-2 at ¶ 70.

**Defendants' Response Improperly Contradicts Facts Stipulated To In The Pre-Trial Conference Order:** Defendants' response contradicts their own stipulations in the proposed pre-trial conference order. *See* Dkt. 320-1 at 2-3. In that order, Defendants admitted that Yuga Labs is the creator of the Bored Ape Yacht Club NFT collection and owner of the BAYC Marks. *Id.* Defendants further admitted that "[t]he Court has determined that Defendants infringed the BAYC Marks" and "that Defendants' registration and use of the domain names https://rrbayc.com and https://apemarket.com constituted cybersquatting under the Anti-Cybersquatting Consumer Protection Act." *Id.* at 13. As such, Defendants have waived their right to now argue that they were not liable for infringing upon Yuga Labs' marks or cybersquatting under the ACPA. *See U.S. v. First Nat. Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) ("[N]or may a party offer evidence or advance theories at the trial which are not included in the [pre-trial conference] order *or which contradict its terms.*") (emphasis added). Defendants' attempt to now avoid liability after admitting to it clearly contradict the terms of the pre-trial conference order. Defendants' sudden refusal to accept a stipulated fact is a dilatory and abusive litigation tactic that unjustifiably increases the cost of resolving this case. Defendants' actions again make this an exceptional case. The Court should reject Defendants' response.