1   **<u>Defendants' Disputed Post Trial Finding of Fact No. 121</u>:**

2   <u>Defendants have not engaged in litigation misconduct. *See generally* Dkt. 348</u>

3   <u>at 11-15.</u>

4   **<u>Plaintiff's Basis for Dispute</u>:**

5   Defendants engaged in egregious litigation misconduct justifying a finding

6   that this is an exceptional case.

7   First, Yuga Labs' case is particularly strong on the merits.  As evinced by the

8   Court's Order granting summary judgment as to liability, this case stands out from

9   the bulk of trademark infringement cases.  Ignoring the clear strength of Yuga

10   Labs' case, Defendants relentlessly advanced frivolous legal theories (e.g.,

11   RR/BAYC NFTs as an "art" project intended to criticize Yuga Labs, Yuga Labs

12   abandoned its rights to the BAYC Marks, a frivolous counterclaim for declaratory

13   judgment of "no defamation") that were rendered moot and irrelevant by multiple

14   orders from the Court.  *See, e.g.*, Dkt. 62 (rejecting Defendants' First Amendment

15   arguments), SJ Order (Dkt. 225) (granting summary judgment in favor of Yuga

16   Labs and against Defendants' affirmative defenses).

17   Second, notwithstanding the strength of Yuga Labs' case, Defendants refused

18   to engage in reasonable settlement discussions.  For instance, Defendants demanded

19   payment in excess of $5 million to cease their infringement, demanded that Yuga

20   Labs pay Defendants' attorneys' fees even after losing the merits of the case on

21   summary judgment, refused to agree to any monetary settlement terms for their

22   infringement even after the Court's Summary Judgment Order, and even demanded

23   that Yuga Labs dismiss claims against their partners in other courts.

24   Third, Defendants repeatedly sought (and continue to seek) to re-litigate

25   issues already addressed and rejected by the Court, unnecessarily complicating and

26   increasing the cost of litigation.  For example, Defendants filed numerous motions

27   to compel documents and information explicitly premised on their rejected First

28   Amendment *Rogers* defense.  *See* Dkt. 69-1, Dkt. 103-1.  The Court denied these

1   motions and requests as "moot, irrelevant and not proportionate to the needs of the
2   case in view of the District Court's December 16, 2022 ruling." Dkt. 87 at 1; *see*
3   *also*, Dkt. 144 at 1.  Similarly, when Defendants filed a meritless motion to stay
4   proceedings (Dkt. 118) after nearly three months of unnecessary delay, the Court
5   reiterated that *Rogers* did not apply in this case due to Defendants' commercial
6   conduct.  Dkt. 178 at 6.  Still, on summary judgment, Defendants maintained that
7   "there is a material dispute whether the RR/BAYC Project is an expressive work
8   that must be resolved at trial" (Dkt. 199-1 at 12-13), despite the Court's orders
9   otherwise.  Defendants then indicated they planned to re-litigate, again at trial, the
10  issues decided on summary judgment, necessitating that Yuga Labs file Motions In
11  Limine.  *See* Dkts. 232-2, 236-2, 239-2, 241-2 (Culp Declarations in Support of
12  Motions In Limine Nos. 1-3, 5).  This pattern of conduct justifies finding this to be
13  an exceptional case.  *San Diego Comic Convention v. Dan Farr Prods.*, 807 F.
14  App'x. 674, 676 (9th Cir. 2020) (affirming exceptional case where defendants
15  litigated in an "unreasonable manner" such as its "failure to comply with court
16  rules" and "persistent desire to re-litigate issues already decided").

17          Fourth, Defendants and their counsel engaged in a pattern of unreasonable
18  and obstructive discovery conduct that consistently crossed the line from advocacy
19  into bad faith.  Defendants were obstructive and intentionally evasive throughout
20  their depositions and at trial, wasting time with rehearsed, non-responsive
21  monologues on the same issues the Court already deemed irrelevant.  *See, e.g.*,
22  Trial Tr. at 229:3-13, 231:21-232:3, 234:24-235:5, 237:14-238:7; Cahen Depo.
23  Designations (Dkt. 395) at 101:7-102:4, 163:13-23; Ripps Depo. Designations
24  (Dkt. 396) at 35:2-11, 44:19-45:11.  *See Jackson v. Gaspar*, No. 2:19-CV10450-
25  DOC, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022) (finding exceptional case
26  from "antagonistic discovery conduct" that was "improperly motivated and sought
27  to drag out or obfuscate proceedings," such as deposition conduct where the
28  defendant's "preparation, recollection and candor appear to have been marginal at

best").  Defendants also made false representations to the Court regarding the existence and production of documents during discovery.  For example, Mr. Ripps swore under penalty of perjury in a verification dated January 17, 2022 that he had produced all documents responsive to Yuga Labs' discovery requests.  Trial Tr. at 267:11-14.  This was a lie.  As just one example, Mr. Ripps was asked at trial about a text message from Mr. Cahen stating "It will sell out within 48 hours I think You'll make like a million dollars Straight up."  JTX-1574.  Mr. Ripps claimed he did not produce that text message because he did not "really find it to have anything to do with the RR/BAYC project."  Trial Tr. at 268:17-21.  This explanation is not credible given the communication's clear relation to the sale of infringing NFTs, nor does it explain his withholding of every other text message with Mr. Cahen about the RR/BAYC NFTs.  *See* Dkt. 145 at 2-3 ("The Court takes a dim view of Defendants' blanket withholding of pre-litigation communications between Ripps and Cahen . . . ."); *see also supra* ¶ 7 (describing Defendants' false sworn statements regarding their document productions).  Yuga Labs was forced to file numerous motions and obtain repeated sworn declarations from Defendants confirming their compliance with discovery obligations, because Defendants were continually caught concealing additional documents.  *See* Dkt. 79 at 2 (Jan. 10, 2023 order requiring Ripps to verify that he has produced "all relevant non-privileged documents"); Dkt. 145 (order requiring Defendants to file a declaration that they have produced relevant documents).  Even Defendants' Discord chat (JTX-801)—cited extensively by both parties in the summary judgment and trial record, and even in both parties' proposed findings of fact and conclusions of law— had to be obtained through third-party discovery before Defendants voluntarily produced it.  *See* Dkt. 67 at 77 (joint stipulation regarding Yuga Labs' motion to compel, noting Telegram and Discord chats were produced by a third party, even after which Defendants still failed to produce them in a usable format).

Fifth, Defendants repeatedly attacked Yuga Labs, its representatives, and its counsel in an egregious and unacceptable manner.  Defendants' heinous statements about Yuga Labs and its counsel during litigation, including calling Yuga Labs' counsel "criminals" who support "racism, antisemitism, beastiality, pedophilia and using cartoons to market drugs to young children," *see* Dkt. 149-50, Dkt. 149-51, far exceed the bounds of acceptable conduct.  *See Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004) (finding "no difficulty" holding defendant's harassing and racist remarks towards plaintiff and their counsel an exceptional case); *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, 894 (9th Cir. 2002) (affirming exceptional case where "defendant acted deliberately to and intended to harm the plaintiff by using its mark" which was "especially egregious" because defendant "continue[d] to use the mark after notice of violation" and continued to "harass[] the plaintiff").  Throughout this case, Yuga Labs' counsel asked opposing counsel to reason with their clients and turn down the temperature of the improper attacks and threats to our safety.  Defense counsel failed to take any responsibility or control.  And so, Defendants maintained their tactics of ridiculous attacks throughout the entire case.

Further representative of the lack of control and respect for counsel and the Court, Defendants promised to Yuga Labs and the Court that they would not offer testimony on irrelevant and inflammatory issues at trial.  *See* Dkt. 320-1 ¶ 6(A) (agreeing in proposed pretrial conference order not to introduce evidence or argument regarding "pedophilia," "4chan," or Defendants' "emotional distress counterclaims"); Dkt. 314 (agreeing in Defendants' proposal that they will not offer testimony regarding "the words 'Nazi' or 'Hitler'," "allegations concerning death threats or harassment," the "class action lawsuit brought against Yuga for securities fraud," or "the SEC investigation into Yuga for securities fraud"); Dkt. 334 at 60:13-14 (representing to Court "We don't want a mini trial on Naziism for sure"); *id.* at 61:9-11 ("I agree they should stand up and object if we start -- if anybody

starts talking about -- ranting about how everybody at Yuga are a bunch of Nazis. That is clearly inappropriate and shouldn't be done."). Yet Defendants repeatedly violated these promises. *See* Cahen Decl. (Dkt. 344) ¶¶ 60, 65, 66, 67, 75, 90. 91, 96; Hickman Decl. (Dkt. 345) ¶¶ 55, 58, 59; Ripps Decl. (Dkt. 346) ¶¶ 59, 69, 152; Trial Tr. at 265:17-18 (characterizing logo as a "Nazi log[o]"), 215:2-3 ("Pictures of monkeys represent racism"), 118:18-120:22 (Defendants' counsel referring to "racism," "racist imagery," and "hate speech"); Dkt. 395 at 9-10 (Defendants' designation of testimony from Mr. Cahen accusing Yuga Labs of "Nazism, racism, financial fraud, pedophilia").

Sixth, Defendants used the litigation to "farm" for engagement on social media with the intent to further harm Yuga Labs and profit from their misconduct. See JTX-938, JTX-1568, JTX-1617, JTX-1620.

Finally, Defendants' public disclosure of confidential material violated this Court's Protective Order (Dkt. 51) and intentionally harmed Yuga Labs. *See* Dkts. 180, 183, 194. Defendants failed to take responsibility for this violation, instead blaming Yuga Labs. Dkt. 176. This disclosure resulted in Highly Confidential – Attorneys' Eyes Only materials being inaccurately reported in national media such as CNN and falsely cited in other meritless litigation against Yuga Labs.

### **Defendants' Response:**

Yuga's arguments that Defendants engaged in litigation misconduct are all baseless. Defendants—two individuals—sued by a multi-billion dollar company litigated this case reasonably and in good faith.

First, Yuga attempts to use the fact that it was successful at summary judgment and on Defendants' motion to dismiss to take the leap that Defendants' positions were "frivolous." A defeated position, is of course not automatically frivolous. *Anhing Corp. v. Viet Phu, Inc.*, No 13-CV-04348-BRO-JCGx 2017 WL 11630841 at *4-5 (C.D. Cal. 2017) (rejecting exceptional case finding in trademark case because claims were not "frivolous"); *D.N. v. Los Angeles Unified Sch. Dist.,*

No. 18-cv-01582-AB-AFMx, 2019 WL 7841083 at *2 (C.D. Cal. Sept. 25, 2019).
Merely pointing to success is simply insufficient to carry its burden to prove that
Defendants' legal positions were frivolous in the exceptional case context.

Second, Yuga is the party that failed to engage in good faith settlement
negotiations.  In fact, this Court noted that Yuga's settlement terms were "quite
frankly unreasonable."  Dkt. 334 at 9:9-12.  Yuga sought to have Defendants sign
away their right to criticize the company.  Defendants cherish their right to speak.
Not acquiescing to Yuga's "unreasonable" demands was entirely reasonable.

Third, as stated above and in several other places, there was no re-litigation
of issues in this case.  Yuga is pressing an overly expansive "law of the case"
argument which would hold that when a decision is made in one context, anything
vaguely similar to that decision apply for the rest of the case.  However, the "law of
the case doctrine does not apply to pretrial rulings *such as motions for summary
judgment*."  *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis
added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial
rulings, often based on incomplete information, don't bind district judges for the
remainder of the case.  Given the nature of such motions, it could not be
otherwise.").  For example, in *Sienze v Kutz*, the Court held that although *aspects* of
an issue were decided at summary judgment for one purpose, the summary
judgment order did resolve the issue generally or as to other topics.  *See* No. 1:17-
CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding
that evidence of initial police contact was relevant as background, but not to already
decided issue that initial contact was not excessive force).  All of the issues
identified by Yuga are issues of intent.  Yuga is seeking disgorgement damages, so
intent remains a relevant issue that has not been decided for disgorgement damages.
*See Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020) (referring to
intent as a "highly important consideration"); *MGA Ent. Inc. v. Harris*, No. 2:20-

cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022) (limiting disgorgement to conscious wrongdoers).

Fourth, Yuga wrongly attacks both Defendants and counsel for discovery. But Yuga sought sanctions against Defendants six time—and six times Yuga was denied.  Trial Tr. [Ripps] 269:21-270:2.  It is undisputed that Defendants produced "possibly hundreds of thousands" of documents to Yuga.  *Id.* at 270:12-15. Further, Defendants believed in good faith that they handed all of the documents over to Yuga.  *Id.* at 270:16-18.  This of course includes the chat reflected in JTX-801.  *Id.* at 270:7-15.  It further alleges that trial testimony by Mr. Cahen was "rehearsed" or "irrelevant."  But Yuga failed to object each time on relevance so any relevance objection is waived.  *See* Trial Tr. [Cahen] at 229:3-13, 231:21-232:3, 234:24-235:5, 237:14-238:7.  Beyond that, each of the cited portions of the trial transcript are about issues of intent—an issue that is still a pertinent part of the case.  Likewise, the portions of deposition designations are unlike what happened in *Jackson v. Gaspar,* because in that case the parties were previously chastised for their conduct at deposition.  *Jackson v. Gaspar*, No. 2:19-cv-10450-DOC-E 2022 WL 2155975 at *5 (C.D. Cal. 2022) (citing prior docket entry sanctioning party). Nor did Yuga ever bring any motion to reopen any deposition.

Fifth, Yuga's attempt to use easily distinguishable cases to leverage Defendants criticism of Yuga into an exceptional case finding lacks merit.  Yuga primarily invokes an out-of-circuit case about a white supremacist murderer making threats against his opposition in a lawsuit to support its case.  *Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 251-52 (7th Cir. 2004) (calling opposition in lawsuit a "race traitor" and threatening to place them in Concentration camps).  Defendants' tweets referenced by Mr. Ball in his declaration in support of the summary judgment motion are simply different in kind to the threats in *Te-Ta-Ma*.  *Compare* Dkts 149-50; 149-51 with *Te-Ta-Ma*, 392 F.3d at 251.  *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893,

1   (9th Cir. 2002), also provides no support for Yuga.  It involved a party showing up

2   pretending to be the plaintiff at trade shows.  *Id.* at 894.  Nothing similar to that

3   occurred in this case.

4        Sixth, Defendants did not violate any promises made in pre-trial filings or at

5   the pre-trial hearing.  Defendants' intent is relevant to damages.  *See Romag*

6   *Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020) (referring to intent as a

7   "highly important consideration"); *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-

8   JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022) (limiting

9   disgorgement to conscious wrongdoers).  The paragraphs that Yuga cites from

10  Defendants' declarations are explanations of their motivations or about confusion.

11  This is equally true for the designated deposition testimony that Yuga cites.  The

12  same is true for all of the deposition testimony cited by Yuga.  *See e.g.*, Trial Tr.

13  [Hickman] 215:1-3 (answering question "What do you mean protest the imagery?";

14  [Cahen] 265:15-18 (explaining why nobody would buy RR/BAYCs as confused

15  because of words on *RR/BAYC* logo).  References to Yuga and its agents

16  threatening actions is relevant to whether Yuga is entitled to equitable relief.  *See*

17  *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022) ("When a party seeking equitable

18  relief has violated conscience, or good faith, or other equitable principle, in his

19  prior conduct, then the doors of the court will be shut against him.") .

20       Lastly, Yuga's accusation that Defendants violated the protective order so

21  they could intentionally harm Yuga is not well-taken.  Yuga is aware that

22  Defendants worked hard to fully redact their summary judgment response in good

23  faith despite Yuga's exceedingly tardy request to seal.  *See* Dkt. 176 (explaining

24  situation).  This was despite being given ample time to provide their redaction

25  requests.  *See* 176-1 (explaining Yuga did not act for over one week).  There is

26  absolutely no evidence that Defendants did anything to intentionally harm Yuga.

27  To the extent that Yuga was harmed, it was through inadvertence (and was

28  addressed fully in the Court's order, Dkt. No. 194).

1    **Plaintiff's Reply:**

2        Defendants' response fails to justify their conduct throughout the course of

3    this litigation.  The circumstances of this litigation, independently and certainly in

4    totality, demonstrate that this is an exceptional case.

5        **First**, Defendants misstate the law in proposing that Lanham Act cases are

6    only exceptional where the losing party's position is "frivolous."  The correct

7    standard is whether, based on the "totality of the circumstances, the case "stands out

8    from others with respect to the substantive strength of a party's litigating position

9    (considering both the governing law and the facts of the case) or the unreasonable

10   manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power

11   Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON

12   Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  Indeed, the Supreme Court

13   rejected the frivolousness standard Defendants propose in their response.  *Octane

14   Fitness*, 572 U.S. at 545 (reversing Circuit Court standard for exceptional case that

15   applied where "the litigation was both 'brought in subjective bad faith' and

16   'objectively baseless.").

17       The Court should instead ask whether the relative strength of the claims and

18   defenses in this litigation were exceptional.  Given the rejection of Defendants'

19   principal defenses at the motion to dismiss stage, the adjudication of liability

20   against Defendants and dismissal of their affirmative defenses at the summary

21   judgment stage (a rarity in trademark infringement litigation), and Defendants'

22   persistence in fighting those same claims and defenses through trial, this is an

23   exceptional case.  *See Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL

24   2155975, at *5 (C.D. Cal. Feb. 24, 2022) (finding exceptional case where "it was

25   objectively unreasonable for Defendants to litigate as aggressively as they did on

26   the issue of liability.  There was no basis for Defendants to believe in success on the

27   merits on the issue of liability.").

28

*Anhing Corp. v. Viet Phu, Inc.*, No 13-CV-04348-BRO-JCGx, 2017 WL 11630841 at *4-5 (C.D. Cal. 2017) does not help Defendants. Though the prevailing defendant there argued that the claim was frivolous, the Court did not actually hold that to be the standard. And in any event, that case is distinguishable, including because the prevailing defendants "did not bring a dispositive motion" allowing the Court to evaluate the sufficiency of the evidence before trial and because the plaintiff proved several aspects of its case in chief. *Id.* at *4-5. Here, by contrast, Defendants lost three dispositive motions on every element of liability for the parties' claims and defenses, and they still unreasonably proceeded to trial, seeking to relitigate those same issues. Similarly, *D.N. v. Los Angeles Unified Sch. Dist.*, No. 18-cv-01582-AB-AFMx, 2019 WL 7841083 at *2 (C.D. Cal. Sept. 25, 2019), cited by Defendants, is of no help. It is a case about the Individuals with Disabilities Education Act and a motion for fees under a completely different statute.

Defendants' stubborn refusal to accept the court's summary judgment order and re-litigation of settled issues, all the way through trial, makes this an exceptional case. Here, the case is even more exceptional given the strength of Yuga Labs' case of straightforward trademark infringement. So, even if Defendants' arguments were not frivolous to start, Defendants continued pursuit of rejected arguments is frivolous now.

**Second**, the transcript that Defendants cite does not contain the words they attribute to the Court. Their argument is also a misrepresentation of Yuga Labs' settlement offer and substantively unpersuasive. *See infra* ¶ 123. Defendants do not dispute that they unreasonably demanded Yuga Labs to pay them even after losing the case on summary judgment. And they never so much as offering a dollar in monetary terms to address their liability for trademark infringement.

**Third**, Defendants' argument that they were free to ignore the Court's summary judgment order and pretend it had no effect is baseless, as discussed

1   throughout this filing where Defendants make the same argument.  *See, e.g.*, *supra*

2   ¶ 9.  Defendants' position is also contrary to what the Court signaled to the parties

3   in the pretrial conference.  Pretrial Conference Tr. at 4:5-8 ("What I want to try to

4   accomplish today is to discuss the remaining claims in light of the Court's grant of

5   summary judgment . . . .").  Defendants never sought any relief from the summary

6   judgment order or leave to rechallenge those holdings at trial, but unilaterally

7   decided to waste time and resources rehashing these issues at trial.

8   **Fourth**, even though Defendants were not "previously chastised for their

9   conduct at deposition," that does not make their conduct acceptable.  Nor do

10  Defendants offer any authority that they must have been previously sanctioned for

11  improper conduct in order for that conduct to contribute to the totality of the

12  circumstances constituting an exceptional case.  Defendants fail to dispute the

13  remainder of their discovery misconduct or attempt to justify their improper

14  concealment of relevant evidence, which similarly makes this an exceptional case.

15  **Fifth**, Defendants do not even attempt to frame their attacks on Yuga Labs,

16  its employees, and its counsel as anything appropriate; they only argue that their

17  conduct is not as bad as "a white supremacist murderer" in the cited case.  But they

18  underplay the severity of Defendants' conduct.  This was not mere criticism as

19  Defendants contend; it was cruel-hearted harassment to intimidate Yuga Labs and

20  its counsel.  *See* Dkt. 334 (When Yuga Labs' counsel raised this issue at the June 9

21  pretrial conference, claiming that criticism is different that Defendants' attacks

22  against Yuga Labs and its attorneys, the Court responded:  "I understand their

23  conduct is absolutely horrible, and you know, I don't disagree.").  For example, Mr.

24  Ripps called Yuga Labs "demonic evil liars," comparing the company to Jeffrey

25  Epstein. Dkt. 149-50. Defendants threatened Yuga Labs with images portraying

26  Mr. Cahen next to a grave marked "Yuga Labs," Mr. Ripps and Mr. Cahen holding

27  a gun and a knife up to Yuga Labs, and Mr. Cahen hoisting the severed head of one

28  of the founders' apes over his head.  *Id.*  Mr. Cahen targeted another Yuga Labs

1  founder by falsely tweeting:  "[h]e's named after [a] banned 1971 child porn film."

2  [3]  He further tweeted that the founder "REFUSES to change his name,"[4] based on

3  the founder's response to a question from an ongoing Highly Confidential –

4  Attorneys' Eyes Only deposition.  *See* Atalay Depo. (Dkt. 271) at 157-160

5  (showing testimony and break taken 42 minutes prior to Mr. Cahen's Tweet).

6       Defendants targeted Yuga Labs' counsel too, accusing Yuga Labs' lead

7  attorney of supporting "racism, antisemitism, beastiality, pedophilia, and using

8  cartoons to market drugs to young children."  Dkt. 149-51.  Mr. Ripps likewise sent

9  a "personal message" to the attorney, posting an image stating:  "Hey maybe you

10  can suck my d**k."  *Id.* (censored).  This offensive and harassing conduct is par for

11  the course for Defendants.  Mr. Ripps' tumblr account is plastered with racist and

12  offensive content.[5]  And near the end of August 2023, Mr. Ripps was permanently

13  suspended from Twitter for sending violent death threats.[6]

14       Whether or not Defendants' conduct is "typical" in their circles (an

15  unsupported proposition that Yuga Labs disputes), in federal court, it is "egregious

16  and beyond the pale of acceptable litigation conduct."  *See TE-TA-MA*, 392 F.3d at

17  264; *see also AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893,

18  894 (9th Cir. 2002) (affirming exceptional case where "defendant acted deliberately

19  to and intended to harm the plaintiff by using its mark" which was "especially

20  egregious" because defendant "continue[d] to use the mark after notice of

21  violation" and continued to "harass[] the plaintiff").  And despite it all, Defendants'

22  counsel did not stop Defendants' egregious conduct.  Instead, even in the post-trial

23  briefing, they seem to condone it.  Defense counsel's failure to work with Plaintiff's

24  counsel to bring the temperature down in this case, and litigate on the facts, rather

25

26  [3] https://twitter.com/Pauly0x/status/1620158732872331264

27  [4] *Id.*
   [5] https://twitter.com/nft_decency/status/1538961466015076352

28  [6] https://twitter.com/PopPunkOnChain/status/1700226047612977249

than Defendants' attacks, is exceptional.  Defendants' conduct warrants a finding that this is an exceptional case.

**Sixth**, Defendants defend their misrepresentation to Yuga Labs and the Court about the scope of evidence and testimony they would offer at trial by vaguely stating their baseless accusations put into the trial record about racism, Naziism, antisemitism, pedophilia, and other inflammatory topics relate to "confusion" or their motivations.  Critically, even if there were a colorable basis for that argument, Defendants do not explain why they represented to the Court that they would not offer this testimony and did so anyway.  Defendants' refusal to honor their promises and statements to the Court make this an exceptional case.

**Finally**, Defendants continue to admit their violation of the Protective Order while failing to explain why, for instance, they immediately and intentionally sent Highly Confidential Attorneys' Eyes Only materials to reporters after failing to redact it.  Defendants also disclosed Highly Confidential - Attorneys' Eyes Only materials in their filing that were not even part of the redaction requests they had sent before filing.  As such, Defendants' admitted breach of the Protective Order cannot be explained through their inaccurate claim that Yuga Labs contributed to their violation.

This pattern of conduct is not typical and it is not excusable—especially where the strength of Yuga Labs' affirmative case and the weakness of Defendants' defenses was clear from the outset.  Defendants' tactics served only to raise the temperature of the litigation and exact additional cost at every turn.  This conduct certainly "stands out" from other cases and warrants a finding that the case is exceptional, both to compensate Yuga Labs for the unnecessarily high cost of this litigation and to deter others from acting in such a manner in future proceedings.