**Defendants' Disputed Post Trial Finding of Fact No. 125:**

Yuga engaged in conduct in the litigation of this case that precludes an exceptional case finding in its favor.

**Plaintiff's Basis for Dispute:**

Defendants' attempts to evade responsibility for their egregious litigation misconduct by pointing a finger at Yuga Labs fail. The losing party in a Lanham Act case cannot defend against an exceptional case finding by accusing the prevailing party of engaging in similar misconduct. *See Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022) (finding exceptional case amidst allegations that "[b]oth parties conducted themselves poorly at times throughout litigation" where "Defendants' conduct was worse and more frequent than [plaintiff's].").

Defendants' persistent refusal to take any responsibility for their conduct merely highlights how their tactics have increased the time and expense of this litigation.

**Defendants' Response:**

Yuga is incorrect as a matter of law. Their cited case actually directly stands for the proposition that Defendants advance stating, "The Court also considers the conduct of **both parties** throughout the case." *Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022). This makes sense, because an exceptional case finding is equitable relief. *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022) ("When a party seeking equitable relief has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him.") (internal quotations and citations omitted); *SunEarth, Inc.*, 839 F.3d at 1180-81 (holding that an exceptional case finding is an exercise of the court's equitable powers).

Yuga's actions in this litigation have been reprehensible. Two of their key witnesses blew off their depositions despite being ordered to attend. Dkt. 77 at 2;

Trial Tr. [Solano] 49:8-21 (acknowledging non-attendance at deposition *after* being ordered by court to attend). Yuga was ordered to pay the costs associated with their non-attendance. They have not. Yuga also served depositions and facially invalid subpoenas on people largely or entirely unrelated to the case, including Ryder's father. Yuga attempted to hide Ryan Hickman's deposition testimony from public view by marking it entirely highly confidential-attorney's eyes only. The Court ordered them to be more reasonable and not "hold the transcript hostage." Dkt. 133 at *2. Lastly, Yuga made a pattern and practice of seeking sanctions and losing. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. These requests for sanctions were obviously intended to overwhelm two individual Defendants into a place a panic and fear. In short, the Court should consider Yuga's litigation misconduct in determining whether they are entitled to the equitable exceptional case finding.

**Plaintiff's Reply:**

Defendants' finger-pointing does not excuse their contemptuous conduct toward the legal system and their adversaries. Yuga Labs litigated this case fairly and successfully, and Defendants' various complaints have no merit.

In *Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975 (C.D. Cal. Feb. 24, 2022), the court did consider the conduct of both parties. But even in that case, where the plaintiff *did* engage in poor conduct, the court found an exceptional case in the plaintiff's favor. *Id.* at *5 ("Both parties conducted themselves poorly at times throughout litigation. However, Defendants' conduct was worse and more frequent than [Plaintiff]'s. Therefore, the Court finds that based on the conduct of the parties, this case is exceptional under the Lanham Act and will award [Plaintiff] attorneys' fees.") (citations omitted). Even where there was a finding that the plaintiff engaged in bad litigation conduct, that did not preclude a finding of exceptional case where the defendant's conduct was, as here, "worse and more frequent." The frequency and degree of Defendants' litigation

conduct (including refusing to accept court orders and concealing discovery) far outweighs even their mischaracterization of the discovery skirmishes Defendants complain of here.

First, Yuga Labs' witnesses did not "bl[o]w off" their depositions. Yuga Labs informed Defendants prior to the deposition that Mr. Aronow had a medical emergency for what he has now publicly announced was heart failure. Defendants took his deposition at a later date. As to Mr. Solano, "the Court direct[ed] the parties to meet and confer in good faith" on arrangements for his deposition; and the deposition was taken less than a week after it was originally scheduled. Yuga Labs has not paid costs associated with the depositions because Defendants ignored Yuga Labs last correspondence on the issue and have not filed any application for their reasonable costs with the Court. Defendants also have not paid Yuga Labs the higher costs that Defendants owe under Fed. R. Civ. P. 26(b)(4)(E) for the depositions of Yuga Labs' experts.

Second, Yuga Labs did not serve any inappropriate subpoenas. Yuga Labs pursued discovery from a number of third parties largely due to Defendants' obstructive approach toward discovery, and indeed the subpoena recipients produced documents that Defendants had withheld. For example, Yuga Labs received the code for Ape Market and the Ape Market chat that is frequently cited herein (JTX-801) long before Defendants produced the records. Mr. Hickman provided a financial accounting of the group's scam before Defendants did. Other third parties revealed the scope of Defendants' intentionally confusing activities and marketing efforts.

Defendants allege falsely that Mr. Ripps' father was "entirely unrelated" to this litigation but fail to disclose that ***defendants themselves identified him*** on their Fed. R. Civ. P. 26 disclosures as a person with relevant information. Rodney Ripps was also a co-member with Defendants Ripps in Live9000 LLC, a Nevada limited liability company, Mr. Ripps used as an attempt to avoid being sued personally for

Defendants' scam (JTX-801.57 ("i think we should add on the site somewhere [] LIVE9000 LLC [] i dont want to get sued personally")) and to which Defendant Ripps transferred proceeds from his infringement. Defendants have no basis to suggest that Yuga Labs should not seek discovery from witnesses Defendants themselves identified for trial.

Third, Yuga Labs did not attempt to "hide" Mr. Hickman's deposition testimony, but rather asked Defendants to first clarify which portions of their materials contained therein were Highly Confidential – Attorneys' Eyes Only. Defendants refused to do so, leading to a dispute in which the Court ordered Defendants' compliance with the Protective Order, after which Yuga Labs would be required to de-designate the transcript—which the Court observed was "a result Yuga recommended" for an outcome of the dispute. Dkt. 133 at 3.

Fourth, Yuga Labs' requests for discovery sanctions were appropriate and consistent with Fed. R. Civ. P. 37 and the Court's Local Rules. Yuga Labs prevailed to some degree on *every single motion* Defendants reference, but the Court did not impose sanctions. Dkt. 133 (order on Defendants' motion to de-designate Mr. Hickman's deposition); Dkt. 145 (order compelling Defendants' to produce documents, requiring Defendants to submit declarations, and warning Defendants of "monetary sanctions" for failure to comply); Dkt. 114 (Defendants' withdrawal of ex parte application); Dkt. 119 (order denying Defendants' ex parte application to shorten time); Dkt. 215 (order denying Defendants' ex parte application to file a sur-reply). The requests were not improper merely because the Court declined to impose sanctions; they were attempts to enforce the rules against Defendants who had bragged about making millions from their infringement but who failed to engage fairly in discovery and motion practice. And, far from being in a "panic and fear" as a result of Yuga Labs' meritorious discovery motions, Defendants frequently sought to capitalize on this litigation by using it as a

marketing opportunity. *See, e.g.*, *supra* ¶ 121 (discussing Defendants' social media engagement farming).

None of Yuga Labs' conduct in appropriately litigating its meritorious case is "reprehensible" and Defendants' attempt to muddy the waters through false equivalences merely highlights their dishonest approach to this litigation.