**Defendants' Disputed Post Trial Conclusion of Law No. 135:**

Even if disgorgement of profits were available, Yuga would only be entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.*

**Plaintiff's Basis for Dispute:**

In a trademark infringement case, "[t]he plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity." *Lindy Pen Co.*, 982 F.2d at 1408. From there, *Defendants*, not Plaintiff, "bear[] the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *Id.*; *Frank Lloyd Wright Found. v. Shmavonian*, No. 18-CV-06564-MMC, 2019 WL 3413479, at *1 n.2 (N.D. Cal. July 29, 2019). Yuga Labs has established that Defendants' profits are attributable to their infringing activity, and that these NFTs sold due to the appeal of the BAYC Marks. *See* Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 11-13, 32-37. Defendants do not provide any credible evidence undermining this presumption.

Defendants' "infringing activity" was use of the BAYC Marks. They admit that "[e]ach of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks." Dkt. 418-1 at 3:15-16. Accordingly, each and every RR/BAYC NFT sale is a result of Defendants' infringing activity and subject to disgorgement. *See* Kindler Decl. (Dkt. 338) ¶ 61 ("Based on my review of evidence produced in this case and

blockchain data I analyzed, these profits are all traceable to Defendants' uses of Yuga Labs' BAYC Marks."). Yuga Labs' evidence shows that consumers bought RR/BAYC NFTs because of the appeal of the BAYC Marks. Kindler Decl. (Dkt. 338) ¶ 61; Berger Decl. (Dkt. 339) ¶¶ 71-76. If the NFTs just said "Ryder Ripps," consumers would not have bought them. Indeed, even Defendants admit that they had to use the BAYC Marks in their infringing products. Dkt. 149-42 at 9-10 (Mr. Ripps' second supplemental response to interrogatory 3 states: "Mr. Ripps's RR/BAYC project . . . displayed unmodified marks, so that the RR/BAYC project would be directly tied to Yuga, BAYC, and specific BAYC NFTs that were the target of Mr. Ripps's commentary."); Cahen Decl. (Dkt. 344) ¶ 109 ("Mr. Ripps wanted to call the collection the "Ryder Ripps Bored Ape Yacht Club" ("RR/BAYC") both to emphasize the subject of our criticism and the artistic origin of the collection."). This is because the appeal of the BAYC Marks was core to their infringement and profits. Yuga Labs should be awarded the full amount of Defendants' profits so Defendants may "not retain the fruits, if any, of unauthorized trademark use or continue that use . . . ." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073 (9th Cir. 2015).

Yuga Labs has established that it is entitled to at least $1,375,361.92 of Defendants' profits (after deducting payments to Defendants' business partners and the amount of RR/BAYC NFTs that they hold or did not mint). Dkt. 416 at 6:23. Defendants provided no expert witness testimony, consumer survey, or financial analysis to the contrary. Since they cannot rebut these calculations, Yuga Labs is entitled to the *Lindy Pen* presumption that Defendants made $1,375,361.92 as a result of infringing activity.

Defendants have failed to carry their burden to show that even one of these sales is not attributable to their infringing NFTs. Instead, they contend that, even though they used—and had to use—the BAYC Marks to sell their counterfeit NFTs, their profits were somehow not attributable to the BAYC Marks. Yet again,

Defendants cite no case law, expert testimony, or survey evidence to support this claim, and their baseless argument fails. See *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015) (affirming holding that defendant failed to meet burden to prove a 40% royalty was a proper deduction, where "the documentary evidence leaves uncertainty as to the amount of royalty fees paid" and defendant "did not produce sufficient documentation to prove the specific amounts"). Indeed, the Ninth Circuit has rejected similar arguments before, finding that "where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (rejecting argument that "multiple-game format and Nintendo-compatibility were the cartridges' selling point, not the use of the Nintendo trademark").

Defendants may point to a few cherry-picked emails as examples of consumers who were purportedly not confused. Yuga Labs doubts the credibility of these documents, but even taken at face value, they establish no more than a handful of consumers who were not confused. They do not show that the BAYC Marks were not part of the appeal of the RR/BAYC NFTs. Without any evidence to carry Defendants' burden, the Court can continue to presume that Defendants' profits were attributable to the infringing activity. See *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015).

Additionally, rather than decreasing the profits award, the evidence shows that the Court should use its discretion "to increase the profit award above the net profits proven '[i]f the court shall find . . . the amount of the recovery . . . inadequate.'" *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015) ("district court should award actual, proven profits unless the defendant infringer gained more from the infringement than the defendant's profits reflect"); 15 U.S.C. § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its

discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

Ms. Kindler stated throughout her testimony that, although she was able to calculate certain profits accrued by Defendants, the extent of harm to Yuga Labs was not practically quantifiable including because of unjust enrichment to Defendants, additional harm to Yuga Labs' business, harm to Yuga Labs' business partnerships, harm to Yuga Labs' brand, and harm to Yuga Labs by the presence of RR/BAYC NFTs in the marketplace. *See* Kindler Decl. (Dkt. 338) ¶¶ 62-65, 67, 75; Trial Tr. at 176:14-22 ("I computed other potential measures of harm, and I also discussed at length in my report other significant areas of harm that would not be easily quantifiable, such as harm to goodwill, harm to brand equity, and things of that nature."); *see also* Berger Decl. (Dkt. 339) ¶¶ 62-92.

**Defendants' Response:**

This objection is unfounded. First, as Defendants have proven, there is ample evidence to support a finding that those who reserved RR/BAYC NFTs did so as a protest *against* Yuga and are not attributable to the infringing activity. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. As Mr. Ripps testified in his declaration: "I received **hundreds of letters** thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested) (emphasis added). At no point during trial did Yuga dispute this fact. Yuga did not present any rebuttal evidence at trial and Yuga elected to not cross-examine Mr. Ripps on this issue. Thus, the uncontested evidence at trial shows that Mr. Ripps received hundreds of letters from RR/BAYC collectors indicating that they acquired RR/BAYC NFTs to support Defendants' protest.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were also required to read and click through a disclaimer acknowledging the artistic purpose of the project before they were allowed to commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these requirement and additional steps so that the artistic purpose of the work would be clear to participants. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement ultimately included, if it had a negative impact on usability? … A. … Ryder wanted it and so he had the final call.").

Unsurprisingly, given these measures, the evidence presented at trial showed, Yuga has not identified even a single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").

Yuga's continued assertions that there is no credible evidence showing sales were made not attributable to the infringing activity is unfounded and inaccurate. These are not "cherry picked" pieces of evidence, but the breadth of evidence presented at trial makes clear that there was no actual confusion.

Second, Defendants do not admit that they used Yuga's marks. Evidence at trial showed that Yuga does not own the alleged BAYC Marks. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673. That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs. We can agree on that; right? A. Yes. That is covered in the terms.").

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. And, as Yuga's CEO admitted, there are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22. For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks. *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Further, Yuga does not own the asserted marks because NFTs are not eligible for trademark protection. The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). Misrepresentation of the origins of a

*communicative* work is a dispute relegated to the confines of copyright law, not trademark. *Id.* at 33-35; *see also* Pulse Entm't Corp. v. David, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014) (*Dastar* bars trademark claims based on origin of hologram, as it is "likened to a cartoon animation"). Here, the "goods" for which Yuga claims trademark rights are NFTs, which are comparable to certificates of authenticity/ownership and are not digital goods in themselves. Trial Tr. [Atalay] 127:9-16.

Additionally, Mr. Ripps and Mr. Cahen used modified versions of the alleged BAYC Marks in their reservations. For example, the logo used states "This Logo is Based on the SS Totenkopf; 18 Teeth." *See* JTX-2085. Also, the website for the project, rrbayc.com, used the modified "RR/BAYC" throughout. *Id.*

Third, Yuga is only entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co.,* 839 F.3d 1179 (9th Cir. 2016). Yuga incorrectly argues that any sale that uses a BAYC mark is attributable to the infringing activity. "If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol" then they cannot be disgorged as "[t]he plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942). This fundamental principle clearly prevents Yuga from receiving profits that were made for reasons beyond the appeal of its symbol, namely the profits attributable to those who reserved an RR/BAYC NFT as a protest against Yuga or to support Mr. Ripps and his renowned reputation as a conceptual artist. *See* Ripps Decl. ¶ 21 (Dkt. 346) (uncontested); JTX-2333. As discussed above, there is ample evidence in the record to support a finding that all

of the RR/BAYC NFT sales were, therefore, not attributable to the infringing activity.

Further, to support their assertion that every RR/BAYC NFT sold was attributable to infringement, Yuga cites to Ms. Kindler's conclusory statements. But Ms. Kindler's opinion does not include any apportionment to determine what profits were attributable to infringement. Trial Tr. [Kindler] 189:16-25.

Fourth, Yuga's statements regarding Defendants' use of the alleged marks are misleading. As those statements clearly show, Mr. Ripps and Mr. Cahen made the RR/BAYC Project as a protest against Yuga and it is pretty difficult to criticize someone without saying who they are. This does not support, as Yuga falsely asserts, that the profits made from RR/BAYC NFTs were due to the appeal of the BAYC Marks. It shows the opposite.

Fifth, disgorgement is not an available remedy here. An infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022). Disgorgement is, therefore, not an available remedy here because – as the evidence showed at trial - neither Mr. Ripps nor Mr. Cahen is a "conscious wrongdoer." *See* Ripps Decl. ¶¶ 144, 147, 158-176 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131, 145-155 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Disgorgement is also unavailable here because Yuga has not shown "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Legal remedies were available in this case. Yuga expressly asserted and offered expert testimony in support of legal remedies (including a claim for actual damages that its expert was able to quantify), which it then voluntarily relinquished. Dkt. 315-1 at 2 ("Yuga Labs is withdrawing all legal remedies");

Trial Tr. [Kindler] 172:14-17, 173:1-8, 174:4-7, 175:17-19. Having abandoned available legal remedies, Yuga cannot obtain disgorgement. *See Hunting World Inc. v. Reboans, Inc.,* No. C 92-1519 (BAC), 1994 WL 763408, at *2-3 (N.D. Cal. Oct. 26, 1994) ("[A]lthough Plaintiff has waived the right to collect damages, this does not render the claim purely equitable because, as discussed above, this is a statutory claim. Again, because the statutes provide adequate remedies, a purely equitable claim may not be maintained.").

Sixth, if the court decides to award disgorgement, Yuga is not entitled to more than Mr. Ripps and Mr. Cahen's profits as Yuga's objection now suggests. Yuga's objection here is inconsistent with their own trial brief, which clearly stated that for infringement they were only seeking an award of "Defendants' profits." *See* Dkt. 343 at 15. This is also inconsistent with Yuga's Findings of Fact, which clearly state that "[t]he sum of Defendants' profits to be disgorged is $1,375,361.92" and that said disgorgement sum is "adequate to address Defendants' unjust enrichment in the form of avoided costs." *See* Dkt. 418-1 at 11(e), 13, and Conclusion at 20. To try to raise after trial has concluded in an objection to Defendants' findings of fact that they are entitled to broader damages than those sought in their trial brief or findings of fact is untimely, unfounded, and inconsistent.

Further, to support a finding that disgorgement of Defendants' profits should be higher, Yuga relies on Ms. Kindler's vague assertions of additional harm that she failed to quantify, that have nothing to do with a calculation of profit. *See* Kindler Decl. ¶64 ("I have not quantified the extent to which the confusion impacted Yuga Labs' business partnerships…"); Kindler Decl. ¶65 ("I have not quantified the extent to which Defendants' wrongful conduct negatively impacted the value of Yuga Labs' goodwill…"); Kindler Decl. ¶67 ("Defendants also benefited from their conduct in ways that are not quantified by my profit analysis…").

Additionally, the section of the Lanham Act that Yuga cites to is inapplicable here and misleading. As the full portion of Section 1117(a) states "[i]f the court shall find that the amount of the recovery based on profits is either inadequate *or excessive* the court may in its discretion enter judgment for such sum as the court shall find to be just, *according to the circumstances of the case. Such sum* in either of the above circumstances *shall constitute compensation and not a penalty*." 15 U.S.C. § 1117(a) (emphasis added). Here, the circumstances of the case support a finding that any recovery of profits beyond those Mr. Ripps and Mr. Cahen received would be excessive. For example, as outlined above, the evidence shows that the intent of the RR/BAYC project was to criticize Yuga's problematic imagery and educate consumers about the nature of NFTs—the exact opposite of confusing consumers. Cahen Decl. ¶¶ 97-98, 133 (Dkt. 344); Ripps Decl. ¶¶ 137-139 (Dkt. 346) (uncontested); JTX-2033.

Given these circumstances, if the Court finds that disgorgement is appropriate, the Court should not find disgorgement of Mr. Ripps and Mr. Cahen's profits to be inadequate and require additional disgorgement of profits. Such a decision would go beyond compensation and veer into punishment, impermissible under the statute.

Finally, the $1,375,361.92 figure itself is an incorrect calculation of the profits Mr. Ripps and Mr. Cahen have received from the RR/BAYC project. First, the evidence presented at trial showed that the RSVP contract also distributed $93,135.62 in automated refunds. Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested). This figure improperly includes in its profits calculation $93,135.62 in automated refunds executed through the RSVP reservation contract. Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested). Also, Mr. Ripps and Mr. Cahen incurred approximately $15,100.00 in miscellaneous expenses associated with wages, a computer, and travel expenses. Ripps Decl. ¶ 136 (Dkt. 346) (uncontested); Cahen

Decl. ¶¶ 174-176 (Dkt. 344). This figure fails to exclude those expenses from the profit calculation.

**Plaintiff's Reply:**

Defendants' response rehashes the same tired arguments without adequately addressing Yuga Labs' arguments. Defendants' response should be rejected because (1) they seek to relitigate issues already adjudicated by the Court (*see supra* ¶ 9), (2) the record shows that Defendants intended to confuse consumers (*see id.*), (3) Defendants' commercial infringement was not protected "art" (*see id.*), (4) Defendants intended to profit off of their infringement (*see id.*), (5) Defendants were well aware that their infringement would cause confusion (*see supra* ¶ 24), (6) the record shows ample actual confusion and likelihood of confusion (*see supra* ¶ 3), (7) Defendants' "disclaimers" did not dispel likelihood of confusion (*see supra* ¶ 9), (8) the majority of the sales of Defendants' infringing NFTs did not occur on rrbayc.com (*see supra* ¶ 76), (9) Defendants did not take steps to avoid confusion (*see supra* ¶ 9), (10) Yuga Labs did not license Defendants' infringement, and Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks (*see id.*), (11) other alleged infringers do not negate Defendants' infringement (*see id.*), (12) Defendants' unreliable communications with third-parties does not negate the Court's finding that there was a likelihood of confusion (*see supra* ¶ 3); (13) Mr. Ripps' declaration is not credible (*see supra* ¶¶ 3, 7); (14) Mr. Ripps' Declaration is not uncontested (*see supra* ¶ 3); (16) the record shows that Yuga Labs in fact owns the BAYC Marks (*see supra* ¶ 23); (17) disgorgement is available as a remedy (*see supra* ¶ 132); and (18) Defendants' additional arguments challenging disgorgement are wrong (*see supra* ¶¶ 131, 132, 135; *infra* ¶ 136).

In addition, Defendants' response should be rejected because: (1) Defendants stipulated to Yuga Labs' ownership of the BAYC Marks; (2) the Court has already found that NFTs are eligible for trademark protection; (3) Defendants used

unmodified versions of the BAYC Marks; (4) all RR/BAYC NFT sales were attributable to Defendants' infringing activity; and (5) the profit award should be adjusted upward; and (6) Yuga Labs correctly calculated Defendants' profits.

**Defendants Stipulated To Yuga Labs' Ownership Of The BAYC Marks:** Defendants' response contradicts their own stipulations in the proposed pre-trial conference order. *See* Dkt. 320-1 at 3. In that stipulation and proposed order, Defendants admitted that Yuga Labs is the creator of the Bored Ape Yacht Club NFT collection and owner of the BAYC Marks. *Id.* at 2-3. Defendants further admitted that "[t]he Court has determined that Defendants infringed the BAYC Marks" and "that Defendants' registration and use of the domain names https://rrbayc.com and https://apemarket.com constituted cybersquatting under the Anti-Cybersquatting Consumer Protection Act." *Id.* at 13. Defendants have waived their right to now argue that they were not liable for infringing upon Yuga Labs' marks or cybersquatting under the ACPA. *See U.S. v. First Nat. Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) ("[N]or may a party offer evidence or advance theories at the trial which are not included in the [pre-trial conference] order *or which contradict its terms.*") (emphasis added). Defendants' attempt to now avoid liability after admitting to it clearly contradict the terms of the pre-trial conference order.

Defendants' sudden refusal to accept a stipulated fact is a dilatory and abusive litigation tactic that unjustifiably increases the cost of resolving this case. Defendants' actions again make this an exceptional case. The Court should reject Defendants' contentions.

**NFTs Are Eligible For Trademark Protection:** Additionally, the Court has already held that NFTs are goods, as consumers understand them, that are subject to trademark protection under the Lanham Act. SJ Order (Dkt. 225) at 6-8; *see also Hermès International v. Rothschild*, 590 F. Supp. 3d 647, 655 (S.D.N.Y. 2022).

Defendants offer no reason for the Court to reconsider or vacate this portion of its prior ruling.

**Defendants Used Unmodified Versions Of Yuga Labs' BAYC Marks:**
Defendants contention to the contrary is contradicted by the evidence in the record. *See, e.g.*, JTX-25, JTX-80, JTX-82, JTX-138, JTX-670, JTX-675, JTX-677, JTX-972, JTX-1595. Mr. Ripps even admitted that the "RR/BAYC project . . . displayed unmodified marks, so that the RR/BAYC project would be directly tied to Yuga, BAYC, and specific BAYC NFTs…." Dkt. 149-42 at 9-10.

**Defendants' Profits Are All Attributable To Their Infringement:**
Defendants' pervasive use of the BAYC Marks related to every sale of RR/BAYC NFTs. Defendants admit Yuga Labs' proposed finding of fact that "Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks". *See* Dkt. 418-1 ¶ 7(c). The smart contract underlying each of Defendants' infringing NFTs is immutably titled "Bored Ape Yacht Club" and given a contract symbol "BAYC," which is replicated on the Etherscan token tracker and anywhere that systems pull information directly from the blockchain. Kindler Decl. (Dkt. 338) ¶ 61; Atalay Decl. (Dkt. 337) ¶ 4; *see also* Solano Decl. (Dkt. 342) ¶¶ 46-47 (explaining that Defendants caused websites such as Etherscan to "prominently display[] the token as 'Bored Ape Yacht Club'" due to "the way Mr. Ripps created the infringing NFTs and his specific use of the BAYC brand as the NFT Collection's smart contract name and symbol"). Additionally, some of the NFTs that were offered for sale were reserved through the infringing rrbayc.com domain. Kindler Decl. (Dkt. 338) ¶ 61. So again, Defendants were using Yuga Labs' BAYC Marks in the marketing of the infringing RR/BAYC NFTs.

More still, "other RR/BAYC NFTs were sold on marketplaces such as OpenSea and Foundation, which used the BAYC Marks." *Id.* (citing JTX-29; JTX-670). Defendants also "used the BAYC Marks to sell and promote their own product." SJ Order (Dkt. 255) at 18. And finally, "[t]he NFTs held by Defendants

or not yet minted derive their value from being part of the broader RR/BAYC NFT collection, the value of which has accrued through the sale and promotion of RR/BAYC NFTs that are already in the market." Kindler Decl. (Dkt. 338) ¶ 61. All profits Defendants derived from their RR/BAYC NFTs were ill-gotten from their willful infringement of Yuga Labs' BAYC Marks. Defendants are not allowed to retain the fruits of unauthorized trademark use. *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015).

Yuga Labs is entitled to disgorgement of profits that are derived "from the infringement." *Id.* at 1076. The RR/BAYC NFTs are infringing goods that Defendants created and placed into interstate commerce—the Court has already determined that these goods are likely to confuse consumers, SJ Order (Dkt. 225) at 10-13—and so profits derived from the sale of those goods resulted from Defendants' infringement. There is no requirement for Yuga Labs to go beyond that and prove that every dollar was attributable to instances of "actual confusion," which is not even a required element of an infringement case. SJ Order (Dkt. 225) at 10 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

Ms. Kindler's testimony to this effect is not "conclusory," as Defendants state. She explained all of these considerations in her trial declaration, assessing NFTs "reserved on Mr. Ripps' website, rrbayc.com"; "sold on marketplaces such as OpenSea and Foundation"; sold "without the use of either rrbayc.com or an NFT marketplace"; and "held by Defendants or not yet minted." Kindler Decl. (Dkt. 338) ¶ 61. Indeed, Ms. Kindler testified at trial when asked why she did not apportion less than all of Defendants' profits to their infringement: "I don't think that would be appropriate because they all were sold using the infringing marks. And in the first instance, even if there's not confusion because people might believe or agree with the premise under which the tokens are being sold, that doesn't mean in the second and third and fourth instance that there isn't confusion occurring in the marketplace." Trial Tr. at 189:4-10. This opinion is further supported by the

consumer surveys conducted by Ms. O'Laughlin, which demonstrate a substantial likelihood of confusion on secondary marketplaces. O'Laughlin Decl. (Dkt. 341) . Defendants provided no affirmative or rebuttal expert to rebut any of this testimony.

In sum, profits from the sales of Defendants' infringing NFTs, each of which Defendants admit used the BAYC Marks, are necessarily attributable to Defendants' infringement of the BAYC Marks.

**The Court Should Increase The Profit Award:** Contrary to Defendants' claim that 15 U.S.C. § 1117(a) is "inapplicable" and "misleading", this is exactly the type of case where a profits award is inadequate, justifying an increase to compensate Yuga Labs for the egregious harm Defendants have caused. *See* 15 U.S.C. § 1117(a); *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015). The timing of Yuga Labs' request does nothing to diminish the Court's authority in granting such a discretionary award. *See* 15 U.S.C. § 1117(a). Regardless, this request is not inconsistent with Yuga Labs' trial brief and proposed findings of fact and conclusions of law because an increase in the profit award goes beyond mere profits and avoided costs, and is targeted at making Yuga Labs whole for the unquantifiable harms Defendants have caused. *See supra* ¶ 135. For example, the disgorgement award should be adjusted to compensate Yuga Labs for loss of goodwill and business partnerships caused by Defendants' infringement. Muniz Decl. (Dkt. 340) ¶¶ 16-17; Solano Decl. (Dkt. 342) ¶ 27. Likewise, the disgorgement award should be adjusted to account for the $10 million "impact to Yuga" through secondary sales Defendants caused. JTX-801.376.

**Yuga Labs Properly Calculated Defendants' Profits:** Ms. Kindler correctly deducted refunds despite Defendants' false claim to the contrary, and Defendants failed to justify their other proposed deductions. *See supra* ¶ 100.