1 | **Defendants' Disputed Post Trial Conclusion of Law No. 137:**

2 |     Statutory damages are a legal remedy for which there is a jury trial right. *See*

3 | *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998) ("[t]he

4 | right to a jury trial includes the right to have a jury determine the *amount* of

5 | statutory damages") (emphasis in original).

6 |     **Plaintiff's Basis for Dispute:**

7 |     Courts are given "wide discretion" in determining the appropriate amount of

8 | ACPA damages. *Bekins Holding Corp. v. BGT Trans, Inc.*, No. CV 09-08982

9 | MMM (MANx), 2010 WL 11597623, at *10 (C.D. Cal. Nov. 19, 2010). Statutory

10 | damages are an equitable remedy and courts are not required to refer the issue of

11 | statutory damages to a jury. *See Two Plus Two Pub., LLC v. Jacknames.com*, 572

12 | F. App'x 466, 467 (9th Cir. 2014) ("The district court did not err in calculating

13 | statutory damages rather than holding a jury trial on that issue because the ACPA

14 | allows for statutory damages between $1,000 and $100,000, 'as the court considers

15 | just.' 15 U.S.C. § 1117(d)."); *Acad. of Motion Picture Arts & Scis. v. GoDaddy,*

16 | *Inc.*, No. CV 10-3738-AB (CWX), 2015 WL 12697732, at *3 (C.D. Cal. Apr. 10,

17 | 2015) ("[T]here is no right to a jury trial for the assessment of statutory damages.").

18 | "'[C]ourts generally consider a number of factors . . ., including the egregiousness

19 | or willfulness of the defendant's cybersquatting, the defendant's use of false contact

20 | information to conceal its infringing activities . . . and other behavior by the

21 | defendant evidencing an attitude of contempt towards the court.'" *Wecosign, Inc. v.*

22 | *IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086 (C.D. Cal. 2012).

23 |     Here, Defendants' cybersquatting was willful and egregious. Defendants

24 | intentionally infringed the BAYC Marks to deceive consumers. *See* SJ Order (Dkt.

25 | 225) at 12. Moreover, "Defendants acted with a bad faith intent to profit" from

26 | Yuga Labs' marks, including by "register[ing] multiple domain names—

27 | https://rrbayc.com/, https://apemarket.com/, and pages within OpenSea and

28 | Foundation—knowing that they were identical or confusingly similar to the BAYC

1   Marks" and by "register[ing] their domains . . . for commercial gain to divert

2   customers from purchasing BAYC NFTs." *See id.* at 15.  These circumstances

3   alone support Yuga Labs' request for $200,000 in statutory damages.  *See Bekins,*

4   *2010 WL 11597623, at \*11* (defendant's willful and bad faith cybersquatting

5   supported maximum amount of statutory damages); *eAdGear, Inc. v. Liu,* No. CV-

6   *11-05398 JCS, 2012 WL 2367805, at \*19 (N.D. Cal. June 21, 2012)*, report and

7   recommendation adopted, *2012 WL 4005454 (N.D. Cal. Sept. 11, 2012)*

8   ("Defendant's willfulness and deception justify statutory damages in the maximum

9   amount of $100,000.").  Even more, Defendants concealed their infringing

10  activities by registering the domain names through a proxy registration service.  SJ

11  Order (Dkt. 225) at 15.

12       Defendants also display a clear contempt towards the Court.  Despite the

13  Court finding Defendants liable for cybersquatting (SJ Order (Dkt. 225) at 15), they

14  have continued to use and promote the domains to advertise their infringing

15  RR/BAYC NFTs.  Defendants' pattern of abusive and bad-faith litigation conduct

16  and disregard of the authority of this Court and its proceedings warrants a high

17  statutory damages award.  *See also infra* Section III.C; *St. Luke's Cataract and*

18  *Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1206 (11th Cir. 2009)* ("We agree

19  and conclude that an ACPA statutory damages award . . . serves as a sanction to

20  deter wrongful conduct"); *Verizon Cal. Inc. v. OnlineNIC, Inc.,* No. C08-2832,

21  *2009 WL 2706393, at \*6 (N.D. Cal. Aug. 25, 2009)* (awarding $50,000 per-

22  violation award because of "noncompliance with court orders, as well as its

23  systematically deceptive behavior").

24       **Defendants' Response:**

25       A court's discretion in awarding damages is curbed by Defendants' rights,

26  including Defendants' Seventh Amendment right to a jury trial.  Statutory damages

27  are legal remedies for which there is a right to a jury trial.  *See Feltner v. Columbia*

28  *Pictures Television, Inc., 523 U.S. 340, 353 (1998)* ("[t]he right to a jury trial

1   includes the right to have a jury determine the amount of statutory damages")

2   (emphasis in original).  However, a jury trial is not required in instances when a

3   plaintiff elects to accept the minimum amount of statutory damages.  *See GoPets*

4   *Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011).  Here, the Court has discretion to

5   award statutory minimum damages of $1,000 for each of the two cybersquatting

6   violations that the Court found (Dkt. 225 at 13-15), for a total of $2,000.  *See* 15

7   U.S.C. § 1117(d) (permitting "award of statutory damages in the amount of not less

8   than $1,000").

9         Yuga improperly relies on *Bekins*, a default judgement case, to argue that this

10   Court has wide discretion to award cybersquatting damages above the statutory

11   minimum.  *Bekins Holding Corp. v. BGT Trans, Inc.*, 2010 WL 11597623, at *1

12   (C.D. Cal. Nov. 19, 2010).  In *Belkins,* the defendant ignored the complaint and

13   continued to use the domain name in question.  *Id*.  As a result, the court applied the

14   *Eitel* factors to determine whether entry of default judgement was justified.  *Id.* at 3.

15   Our facts are completely distinct from *Belkins.*  Here*,* Yuga waited until after the

16   summary judgement stage to waive "all legal remedies."  Yuga's decision to forgo

17   a jury trial does not impact Defendants right to have a jury determine the amount of

18   statutory damages.  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S.

19   340, 353 (1998).

20         Yuga also relies on two unpublished cases (*Two Plus Two Pub* and *Acad. Of*

21   *Motion Pictur of Arts*), which are not binding precedent on this Court, to argue that

22   statutory damages are an equitable remedy.  District Courts have declined to follow

23   these unpublished decisions and instead held that determination of statory damages

24   is a jury issue.  *See*, *e.g.*, *Daimler AG*, 498 F. Supp. 3d at 1290 (S.D. Cal. 2020)

25   (holding in 2020 that an award above the statutory minimum is a jury issue).

26         Further, Yuga waived its right to any claim of willful infringement, and there

27   has been no finding of willfulness.  To the contrary, because Yuga gave up all legal

28   remedies, Defendants are entitled to judgment of no willfulness.  Furthermore,

1   Yuga points the Court to its summary judgement order and incorrectly suggests that

2   this Court is tied to its previous findings regarding Defendants' intent.  That is not

3   the case.  Yuga has incorrectly relied on the law of the case doctrine.  The "law of

4   the case doctrine does not apply to pretrial rulings *such as motions for summary*

5   *judgment*."  Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis

6   added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial

7   rulings, often based on incomplete information, don't bind district judges for the

8   remainder of the case.  Given the nature of such motions, it could not be

9   otherwise.").  For example, in *Sienze v Kutz*, the Court held that although *aspects* of

10  an issue were decided at summary judgment for one purpose, the summary

11  judgment order did resolve the issue generally or as to other topics.  *See* No. 1:17-

12  CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding

13  that evidence of initial police contact was relevant as background, but not to already

14  decided issue that initial contact was not excessive force).

15        Yuga presents no evidence that Defendants continued to use and promote the

16  rrbayc.com domain after this Court's summary judgement order.  Instead, Yuga

17  merely speculates about Defendants continued activities.  Yuga's speculation is not

18  sufficient grounds to go above the statutory minimum.  Furthermore, Yuga's

19  argument that this Court should award higher statutory damages to deter wrongful

20  conduct further underscores that statutory damages is a legal remedy.  *Feltner v.*

21  *Columbia Pictures Television, Inc.*, 523 U.S. 340, 345–47 (1998) (explaining that

22  "monetary relief is legal ... and an award of statutory damages may serve purposes

23  traditionally associated with legal relief, such as compensation and punishment.").

24        Defendants have not engaged in any litigation misconduct.  *See generally*

25  Dkt. 348 at 11-15.  Defendants' defenses were made reasonably and in good faith.

26  *Id*.  All of Defendants' efforts to litigate and settle in good faith were impacted by

27  Yuga's unreasonable demands, including Yuga's demand for a non-disparagement

28  clause and Yuga's ever fluctuating assessment of actual damages.  *See* Dkt 286 at

2-3 (asserting damages of $1,792,704 on June 7); Dkt. 287-10 at 4 (asserting damages of $797,183,838 on June 8); Dkt. 315-1 at 2 (dropping actual damages on June 15).  This Court acknowledged that Yuga's demand for a non-disparagement clause was "a condition that is quite frankly unreasonable."  Hearing Transcript June 16, 2023, at 9:9-12.  Furthermore, Yuga has failed to present evidence which shows that Defendants lack respect for this Court or the rule of law.  To the contrary, both Defendants fully participated in the pre-trial litigation process, appeared for trial, conducted themselves respectfully, and testified truthfully under oath, as any reasonable litigant would.

**Plaintiff's Reply:**

Defendants' response should be rejected because (1) the Court has found Defendants willfully cybersquatted (*supra* ¶ 131); (2) the Court's order finding that Defendants' cybersquatting was willful is binding (*supra* ¶ 9) and (3) Defendants' excuses for their litigation misconduct are unavailing (*supra* ¶ 121).

Their new arguments should also be rejected because:  (1) statutory damages are an equitable remedy and the Court may award more than the minimum statutory damages; and (2) Defendants continue to use and promote rrbayc.com.

**The Court May Award More Than The Minimum Statutory Damages:** The ACPA expressly delegates the issue of statutory damages to the Court, stating that they are allowed up to the maximum $100,000 "as *the Court* considers just." 15 U.S.C. § 1117(d) (emphasis added).  Statutory damages are an equitable remedy and courts are not required to refer the issue of statutory damages to a jury.  *See Two Plus Two Pub., LLC v. Jacknames.com*, 572 F. App'x 466, 467 (9th Cir. 2014) ("The district court did not err in calculating statutory damages rather than holding a jury trial on that issue because the ACPA allows for statutory damages between $1,000 and $100,000, 'as the court considers just.' 15 U.S.C. § 1117(d)."); *Acad. Of Motion Picture Arts & Scis. v. GoDaddy, Inc.*, No. CV 10-3738-AB (CWX), 2015 WL 12697732, at *3 (C.D. Cal. Apr. 10, 2015) ("[T]here is no right to a jury trial

1   for the assessment of statutory damages."). "[C]ourts generally consider a number

2   of factors, including the egregiousness or willfulness of the defendant's

3   cybersquatting, the defendant's use of false contact information to conceal its

4   infringing activities and other behavior by the defendant evidencing an attitude of

5   contempt towards the court." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp.

6   2d 1072, 1086 (C.D. Cal. 2012) (cleaned up) (citation omitted).

7        Accordingly, Defendants' contention that this Court may only award the

8   statutory minimum damages is wrong. To the contrary, Ninth Circuit precedent

9   demonstrates that Courts have the authority to award more than the minimum

10  statutory damages for ACPA claims, even after a bench trial. *Two Plus Two Pub.,*

11  *LLC v. Jacknames.com*, 572 F. App'x 466, 467 (9th Cir. 2014); *see also City of*

12  *Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1108 (S.D. Cal. 2012) (after bench trial,

13  awarding plaintiff $100,000 under ACPA for infringing uses of marks); *Flow*

14  *Control Indus. Inc. v. AMHI Inc.*, 278 F. Supp. 2d 1193, 1201 (W.D. Wash. 2003)

15  (An award of statutory damages under the ACPA "requires *the Court* to balance the

16  equities of the situation in determining the amount.") (emphasis added). This is

17  consistent with the statute, which provides that the amount of statutory damages is

18  based on what "the court considers just." 15 U.S.C. § 1117(d).

19       Additionally, *Daimler AG*, a non-binding case from another judicial district,

20  concerned statutory damages under 15 U.S.C. § 1117(c)(2), *not* under 15 U.S.C. §

21  1117(d), the statute at issue here. Significantly, this case found that a jury was

22  required to determine willfulness as a precondition to awarding statutory damages,

23  as required by § 1117(c)(2). *See Daimler AG*, 498 F. Supp. 3d at 1290; 15 U.S.C. §

24  1117(c)(2) ("*if the court finds that the use of the counterfeit mark was willful*, not

25  more than $2,000,000 per counterfeit mark . . . .") (emphasis added). 15 U.S.C. §

26  1117(d) has no such willfulness requirement. While willfulness can be a

27  consideration in awarding maximum statutory damages, *see Bekins Holding Corp.*

28  *v. BGT Trans, Inc.*, No. CV 09–08982, 2010 WL 11597623, at *9 (C.D. Cal. Nov.

1  19, 2010), it is not a pre-requisite under § 1117(d).  And while other cases may hold

2  that a jury *may* decide statutory damages under 15 U.S.C. § 1117(d), they do not

3  establish it *as of right*.  *See GoDaddy*, 2015 WL 12697732, at *3.

4       Defendants' attempt to distinguish *Bekins* is unavailing.  The procedural

5  posture of that case is irrelevant because the court analyzed the "substantive merits

6  and sufficiency of the claims," determining that the defendant was liable for

7  trademark infringement and cybersquatting.  *Bekins Holding Corp.*, 2010 WL

8  11597623, at *3-*6.  While the defendant in *Bekins* "ignored the complaint and

9  continued to use the domain name in question," Mr. Ripps and Mr. Cahen went a

10  step further and ignored the Court's summary judgment order finding they were

11  liable for cybersquatting and continued to promote the rrbayc.com domain (*see*

12  *below*).  This egregious litigation conduct justifies a maximum award of statutory

13  damages.

14       **Defendants Continue to Use and Promote rrbayc.com:**  Contrary to

15  Defendants' allegations of "mere speculation," Yuga Labs' unrefuted evidence in

16  the record demonstrates Defendants' continued use and promotion of the

17  rrbayc.com domain.  *See* Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6,

18  58:20-59:19.  Even a month after trial, Defendants still advertise rrbayc.com in the

19  profile heading of the Ape Market Twitter profile.  *See*

20  https://twitter.com/ApeMarketplace.

21

22

23

24

25

26

27

28