**Defendants' Disputed Post Trial Conclusion of Law No. 143:**

Yuga improperly seeks injunctive relief that would curtail Mr. Ripps's and Mr. Cahen's First Amendment right to criticize Yuga and its products by name. Yuga has proposed injunctive relief that, by its own admission, would take away "the right to say 'Bored Ape Yacht Club' again.". Trial Tr. [Muniz] 94:5-13.

**Plaintiff's Basis for Dispute:**

Yuga Labs' former CEO did not testify that Yuga Labs intends to "curtail" any first amendment rights.  Rather, the context of Ms. Muniz's testimony is clear that she was speaking about Defendants' use of Yuga Labs' Bored Ape Yacht Club trademark to promote infringing products.  Trial Tr. at 94:5-13.  There is no debate that Yuga Labs is seeking an injunction to stop Defendants' infringement of their marks.  The terms of the injunction that Yuga Labs contends is appropriate in this case are clear from its proposed findings of fact and conclusions of law.  Dkt. 416.  Yuga Labs has not sought to limit Defendants' criticisms of Yuga Labs through its proposed injunction.  What is also clear is that Defendants refuse to accept any injunctive relief, even though the Court has already found that Yuga Labs is entitled to injunctive relief.  Dkt. 418-1.

**Defendants' Response:**

Injunctive relief must be "tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).  "An overbroad injunction is an abuse of discretion."  *Id.*  Here, the specific harm alleged is Defendants' use of Yuga's marks to sell products.  *See* Dkt. 1 at ¶ 5 (complaint is about sales of RR/BAYC NFTs).  Therefore, any injunction must be tailored to only that harm, and not the ancillary issues such as Defendants' free speech rights that Yuga has wrongfully tried to introduce into the injunction.

Ms. Muniz's testimony is not limited to the use of Yuga's marks in commerce.  Instead, she was asked "Do you want them to never say 'Bored Ape Yacht Club' again?"  And she responded that "***They should not have the right to***

*say "Bored Ape Yacht Club" again*." Trial Tr. [Muniz] 91:10-13. This is an unqualified statement. Taken at its meaning, it would prevent criticism that includes the words "Bored Ape Yacht Club." That is definitionally overbroad.

**Plaintiff's Reply:**

Defendants' response should be rejected because Yuga Labs' proposed injunction does not seek to curtail Defendants' First Amendment rights. Defendants did not infringe Yuga Labs' BAYC Marks by merely selling NFTs. They infringed Yuga Labs' NFTs by creating the RR/BAYC NFTs (the Foundation contract), creating NFT marketplaces on which to sell the NFTs (e.g. the Foundation sales page), giving away infringing NFTs to get people to market or support their business venture, promoting their NFTs, marketing them through @ApeMarketplace and developing an NFT marketplace (Ape Market) to "stimulate" the sales of their infringing NFTs, by selling their NFTs to initial purchasers, and by driving up the price of their NFTs and then re-selling those they hold for a further profit. Defendants continue to infringe by marketing RR/BAYC NFTs—for example advertising rrbayc.com on their @ApeMarketplace Twitter page alongside a link to an NFT marketplace where users can still purchase RR/BAYC NFTs. *See* Solano Decl. ¶ 77. Yuga Labs' proposed injunction would put an end to that marketing by transferring control of these instrumentalities of infringement to Yuga Labs.

The terms of the injunction that Yuga Labs contends is appropriate in this case are clear from its proposed findings of fact and conclusions of law, and nowhere in those terms does Yuga Labs seek to limit Defendants' criticism of Yuga Labs. Dkt. 416; Trial Tr. 51:11-52:1, 64:3-15. Defendants' contention that their ongoing infringement constitutes "criticism" demonstrates why a court order "enjoining them from using the mark" alone would not stop their infringement. *See* Dkt. 419-1 at 3:25-4:6. Yuga Labs must be given the instrumentalities of their infringement so that they cannot continue to infringe and claim it is criticism and so

Yuga Labs could potentially offset future irreparable harm by changing the confusing information shown on secondary marketplaces. *See* Ripps Depo. Designations (Dkt. 396) 289:7-11 (***admitting Mr. Ripps has control over aspects of secondary marketplace listings***) ("Q: So you signed in with a wallet to LooksRare, and they permitted you to make changes to the page dedicated to the RR/BAYC NFTs? / A:  The change of this redacted thing, it's something that I have done, yeah/"); Ripps Depo. Designations (Dkt. 396) at 81:3-81:14 (***admitting Mr. Ripps controls the OpenSea sales page and has made changes to it***) (" Q. But you had a page on OpenSea? A. I had a page?  Did I have a page?  No.  Perhaps RR/BAYC collection had a page on OpenSea.  Q. And who ran that collection?  A. Who ran that collection?  I did because I have the keys to the RR/BAYC."); *id.* at 81:22-82:7 ("A. I do remember at one point making the background image the banner, if you will, to say 'Long Live Conceptual Art,' or something like that, or 'You can't copy an NFT,' or something along those lines . . .").

What is nevertheless clear is that Defendants refuse to accept any reasonable injunctive relief, even though the Court has already found that Yuga Labs is entitled to injunctive relief.  Dkt. 418-1.  Defendants did not even submit a proposed order for injunctive relief, and when Yuga Labs' counsel requested that they submit one, they refused.

Defendants' fixation on an out of context statement from Ms. Muniz is immaterial because Yuga Labs' proposed injunction "taken at its meaning" does not seek to curtail Defendants' first amendment rights.  As Mr. Solano testified, Yuga Labs is not seeking an injunction preventing Defendants from criticizing Yuga Labs or using the terms "BAYC" and "Bored Ape Yacht Club" altogether.  Trial Tr. at 64:3-15.  Yuga Labs' proposed injunction instead seeks to stop current and future infringement.