**Defendants' Disputed Post Trial Conclusion of Law No. 145:**

Accordingly, appropriately tailored injunctive relief should be limited to: (1) prohibiting Defendants from using the domain "rrbayc.com" or the domain "apemarket.com"; and (2) prohibiting Defendants from selling or promoting the sale of RR/BAYC NFTs.

**Plaintiff's Basis for Dispute:**

A properly tailored injunction must end the irreparable harm done to Yuga Labs' BAYC brand and allow it to regain control of the brand. This includes putting an end to Defendants' sales, promotion, and marketing of infringing NFTs; preventing Defendants from creating any future confusion by minting new infringing NFTs or improperly using Yuga Labs' Marks; alerting consumers that the RR/BAYC NFTs are a scam; and transferring the smart contract and other infringing domains and instrumentalities to Yuga Labs so it once again has sole control over its marks. The injunctive relief set forth in Yuga Labs' Proposed Findings of Fact and Conclusions of Law would accomplish this. *See* Dkt. 416 at 14-17, 20-23. Indeed, two other courts have entered similar injunctions against Defendants' business partners. *See* Judgment and Order for Permanent Injunction Against Ryan Hickman (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023); JTX-621 (Consent Judgment and Order for Permanent Injunction Against Thomas Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023)). Defendants' proposed injunction is too narrow. For example, it does not prohibit Defendants from marketing RR/BAYC NFTs. Dkt. 418-1 at 20:21-21:5, 22:7-10. Likewise, simply eliminating confusion does not protect Yuga Labs from the irreparable harm done by Defendants' infringement. *Id.* ¶¶ 45-56. Defendants' proposed injunctions would also not transfer over control of the RR/BAYC smart contract to Yuga Labs. Defendants have no basis for continuing to hold on to the instrumentalities of their bad faith infringement—namely the RR/BAYC smart contract used to manufacture

and sell the infringing NFTs and the cybersquatting domains rrbayc.com and apemarket.com.

**Defendants' Response:**

Yuga argues that this Court should adopt its injunctive relief terms and cite to the Lehman consent judgment—which was a condition of settlement—and the injunction entered against Mr. Hickman—which was attained via a default judgment. Neither Mr. Lehman and Mr. Hickman were defending themselves against the terms of the overbroad injunction. Yuga cites to its *own* proposed terms to argue that Defendants' terms are in some way unreasonable. *See* Dkt 418 20:21-23:28. Defendants objected to the injunction as a whole because it is not tailored to the specific harm. Yuga's attempt to remediate it by pointing to specific terms is unavailing.

Yuga also focuses on its term that it be given the smart contract. That would serve no purpose of addressing infringement might not be technically feasible. But Yuga has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it. *See* Trial Tr. [Atalay] 134:11-20. However, an order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case. Further, it would be enforceable in court. Likewise, a prohibition from using the rrbayc.com and apemarket.com domains—both of which are inactive—would suffice and fit the scope of the injury found by the court in this case.

**Plaintiff's Reply:**

Defendants' response should be rejected because (1) Yuga Labs' proposed injunction does not seek to curtail Defendants' First Amendment rights and (2) Yuga Labs' proposed injunction is tailored to address the irreparable harm done to Yuga Labs and allow it to regain control of its brand. *See supra* ¶¶ 143, 144.

Initially, Yuga Labs notes that Defendants admit the injunctive relief should include not only use of the infringing domains and a prohibition against selling or promoting RR/BAYC NFTs, but also a prohibition against minting new RR/BAYC NFTs. *See supra* ¶ 145 (Defendants admitting that "an order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case.").

As explained above, both Mr. Lehman and Mr. Hickman defended themselves against the Terms of Yuga Labs' proposed injunction, and a federal court granted these injunctions as appropriate and narrowly tailored. *See supra* ¶ 144.

And as explained above, the RR/BAYC smart contract should be transferred to Yuga Labs, the rightful owner of the marks that are indelibly printed on the contract. *Id.* Only the transfer of the infringing instrumentalities—e.g. the counterfeit plates—will allow Yuga Labs to regain control of its brand and stop future confusion in the marketplace. *See* Solano Decl. (Dkt. 342) ¶ 81; Ripps Depo. Designations (Dkt. 396) 289:7-11 (***admitting Mr. Ripps has control over aspects of secondary marketplace listings***) ("Q: So you signed in with a wallet to LooksRare, and they permitted you to make changes to the page dedicated to the RR/BAYC NFTs? / A: The change of this redacted thing, it's something that I have done, yeah/"); Ripps Depo. Designations (Dkt. 396) at 81:3-81:14 (***admitting Mr. Ripps controls the OpenSea sales page and has made changes to it***) (" Q. But you had a page on OpenSea? A. I had a page? Did I have a page? No. Perhaps RR/BAYC collection had a page on OpenSea. Q. And who ran that collection? A. Who ran that collection? I did because I have the keys to the RR/BAYC."); *id.* at 81:22-82:7 ("A. I do remember at one point making the background image the banner, if you will, to say 'Long Live Conceptual Art,' or something like that, or 'You can't copy an NFT,' or something along those lines . . .").