**Defendants' Disputed Post Trial Conclusion of Law No. 150:**

This is not an exceptional case in Yuga's favor. *See supra* ¶¶ 118-127.

**Plaintiff's Basis for Dispute:**

This is an exceptional case because, under the "totality of the circumstances," it is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016); *Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *4 (C.D. Cal. Feb. 24, 2022); *see supra* ¶¶ 118-127. In determining whether a case is exceptional, courts consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need . . . to advance considerations of compensation and deterrence." *SunEarth*, 839 F.3d at 1181 (cleaned up). Each of the following bases is sufficient justification for a finding that this is an exceptional case, but taking the totality of these circumstances together, such a finding is undeniable.

- Yuga Labs' substantive strength in its litigating position, as evidenced by the Court's Order on Summary Judgment, stands out from the bulk of trademark cases. *See* SJ Order at 22; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'"); *supra* ¶ 121.
- Ignoring the clear strength of Yuga Labs' case, Defendants litigated in an "unreasonable manner" including a "failure to comply with court rules" and "persistent desire to re-litigate issues already decided." *San Diego*

*Comic Convention v. Dan Farr Prods.*, 807 F. App'x. 674, 676 (9th Cir. 2020).

- o Defendants relentlessly advanced frivolous legal theories, even after they were rendered moot and irrelevant by multiple orders from the Court. *Supra* ¶ 121.
- o Defendants refused to engage in reasonable settlement discussions. *Supra* ¶ 121.
- o Defendants' repeated attempts to re-litigate issues already addressed and rejected by the Court unnecessarily complicated and increased the cost of litigation. *Supra* ¶ 121.
- o Defendants used the litigation to "farm" for engagement on social media with the intent to further harm Yuga Labs. *Supra* ¶ 121.
- o Defendants' public disclosure of confidential material violated this Court's Protective Order (Dkt. 51) and intentionally harmed Yuga Labs. *Supra* ¶ 121.

- Defendants engaged in "antagonistic discovery conduct" that was "improperly motivated and sought to drag out or obfuscate proceedings," such as deposition conduct where the defendant's "preparation, recollection and candor appear to have been marginal at best." *Jackson*, 2022 WL 2155975, at *5; *see supra* ¶ 121.
- Defendants leveled heinous statements against Yuga Labs and its counsel during litigation. See *Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004) (finding "no difficulty" holding defendant's harassing and racist remarks towards plaintiff and their counsel an exceptional case); *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, 894 (9th Cir. 2002) (affirming exceptional case where "defendant acted deliberately to and intended to harm the plaintiff by using its mark" which was "especially

egregious" because defendant "continue[d] to use the mark after notice of violation" and continued to "harass[] the plaintiff").

Defendants should not be allowed to intentionally infringe on Yuga Labs' marks and then cause further harm to Yuga Labs and the Court by abusing the legal process that enforces these marks. The Court should find this an exceptional case to compensate Yuga Labs for Defendants' conduct and deter future infringers from pursuing such unreasonable litigation tactics. *SunEarth*, 839 F.3d at 1181.

**Defendants' Response:**

Yuga is not entitled to any attorneys' fees or an exceptional case finding. The factual allegations underlying this are erroneous or misstated, Yuga has failed to carry its burden that it is entitled to an exceptional case finding. *See Caiz v. Roberts*, No. 15-cv-09044-RSWL-AGRx, 2017 WL 830386 at *5 (C.D. Cal. 2017) (movant bears burden on exceptional case). Further, it is rank speculation that Defendants will abuse the legal process used to enforce an injunction.

Even if Yuga's factual contentions are accepted by this Court, it has failed to carry its burden of proof. An exceptional case is abnormal. The Supreme Court has defined exceptional to mean, "uncommon," "rare," or "not ordinary." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). In determining whether a case is exceptional, courts consider all of the circumstances in making the equitable determination, including a defendant's intent. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020) ("a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate."). As an equitable determination, the conduct of the party seeking equity must also be considered. *Ramirez v. Collier,* 142 S. Ct. 1264, 1282 (2021) ("[w]hen a party seeking equitable relief "has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him.") (citations omitted). Here, Defendants' litigation conduct was justified in light of a corporate opponent bent on making

litigation as costly and unreasonable as possible. Defendants were asked to sign away their constitutional rights. Trial Tr. [Muniz] 94:5-13.

Yuga's legal contentions also fail. Yuga cites to *Te-Ta-Ma Truth Found.- Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004) in a strained argument that critical Tweets entitle it to fees. *Te-Ta-Ma* involved a white supremacist making threats. *See id.* at 251 ("Race Traitors, We will include you in the concentration camps next time around, so you can be with the jews you so love."). *Te-Ta-Ma* is factually not even close to the First Amendment protected criticism of a large company and cannot serve as the basis of fees. *See* JTX-2096; Ripps Decl. ¶¶ 150-52 (Dkt. 346) (uncontested).

The prevailing party is not, as Yuga suggests, entitled to attorneys' fees in trademark actions without a showing that the opposing party's claims were frivolous. *See Anhing Corp. v. Viet Phu, Inc.*, No 13-CV-04348-BRO-JCGx 2017 WL 11630841 at *4-5 (rejecting exceptional case finding in trademark case because claims were not "frivolous"). Yuga ignores this exceedingly high burden, and Defendants claims were not objectively meritless. This case did not rise to the level of an "exceptional case" and therefore Yuga is not entitled to attorney's fees.

Yuga's contention about "discovery misconduct" is also unfounded. Yuga made a pattern and practice of seeking sanctions and losing. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. At trial, Mr. Ripps explained that he produced everything. Trial Tr. [Ripps] 269:10-270:18. Further, Yuga alleges that Defendants engaged in antagonistic depositions and cites to *Jackson v. Gaspar*, 2022 WL 2155975, at *5 but in that case the Court had already chastised the defendant for not participating in her depositions. The quoted language is a quote the court pulled from a docket filed earlier in the case. Here by contrast, the Court did not mention anything about Defendants' deposition conduct.

Lastly, Yuga's accusation that Defendants violated the protective order so they could intentionally harm Yuga is not well-taken. Yuga is aware that Defendants worked hard to fully redact their summary judgment response in good faith despite Yuga's exceedingly tardy request to seal. *See* Dkt. 176 (explaining situation). This was despite being given ample time to provide their redaction requests. *See* 176-1 (explaining Yuga did not act for over one week). There is absolutely no evidence that Defendants did anything to intentionally harm Yuga. To the extent that Yuga was harmed, it was through inadvertence.

Yuga's litigation misconduct likewise precludes an award of costs under the principles of equity. For example, Yuga used this litigation as means to harass Mr. Ripps's 72-year-old father, Rodney Ripps. During this lawsuit, a Yuga employee threatened the life of Mr. Ripps's father (ultimately forcing Mr. Ripps's father to file a police report). *See* Ripps Depo. 181:15-182:3 ("He said, 'You and your son should die.' You said that. And my dad is … freaked out, you know … he really is scared, you know … You keep … harassing my family[.]"). Yuga's counsel Yuga initially brushed off the issue, then later conceded that a threat did in fact occur. Dkt. 97 at 4. But Yuga's harassment of Mr. Ripps's father continued, including serving a facially invalid subpoena on him seeking to compel his trial attendance (notwithstanding his complete irrelevance to any issue in the case).

Yuga served more than sixteen subpoenas in this action, nearly all of them facially irrelevant and procuring no useful discovery, apparently to harass anyone that is in any way associated with the Defendants. For example, Yuga targeted people on Twitter whose sole relevance was apparently having "liked" the RR/BAYC project, Defendants' personal accountants, and Mr. Ripps's gallerist. These parties repeatedly commented on how Yuga's behavior in this lawsuit impacted them personally, including for example Mr. Ripps's part-time, one-week general assistant (whom Yuga insisted on deposing) who called Yuga's conduct "quite predatory, honestly." Garner Depo. at 190:9-17.

Yuga also improperly tried to preclude relevant discovery by making a baseless apex witness argument in an *ex parte* motion for a protective order. The Court rejected Yuga's baseless arguments, finding Yuga's motion "deficient on the merits" because the co-founders were "the only people who have knowledge of the creation of the marks." Dkt. 77 at 2. The Court accordingly ordered that Yuga employees Wylie Aronow and Greg Solano appear for depositions on January 9 and 11 respectively (excusing Mr. Solano only if he had medical complications). *Id.* Yet, despite this Court's order, **neither witness appeared**. Yuga has never identified any medical reason why Mr. Solano could not attend. The Court was clear that failing to appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did not show up. Dkt. 77 at *2. Yuga has not done so.

Yuga also flouted this Court's Protective Order by improperly designating the entirety of third-party Ryan Hickman's deposition testimony as HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY to hide Mr. Hickman's testimony from the public. This deposition involved no Yuga confidential information; instead, it was the testimony of a Black Jewish third party that included discussion of racism and antisemitism in Yuga's branding. *See* Dkt. 123-2. Defendants were forced to bring a motion to address Yuga's misuse of the Protective Order, which the Court granted ordering complete de-designation of the transcript and finding that Yuga was wrong to "**hold the transcript hostage**." Dkt. 133 at *2 (emphasis added).

Yuga also baselessly refused to produce materials relating to third-party Thomas Lehman's settlement-procured declaration to run the clock on the discovery schedule. Defendants filed a motion to compel once Yuga disclosed the declaration and sought expedited review of that motion to allow time for its use in a deposition of Mr. Lehman. The Court declined to consider the motion on an expedited basis, stating that Defendants could instead depose Mr. Lehman in "the last week of March before the April 1, 2023 discovery cut-off date." Dkt. 119 at 2.

1  The Court ultimately granted Defendants' motion, holding that Yuga waived any
2  claim to confidentiality due to its "unfettered use of Lehman's declaration[.]" Dkt.
3  159 at 2. After Yuga belatedly made its court-ordered production, Defendants
4  took Mr. Lehman's deposition in the final week of discovery as suggested by the
5  Court. But because of Yuga's delay, the deposition testimony—which raised
6  disputes of fact regarding Defendants' infringement and Yuga's credibility—was
7  unavailable for consideration in opposition to Yuga's motion for summary
8  judgment. *See* Dkt. 215 at 2.

9  Throughout the course of this litigation, Yuga also made repeated baseless
10 threats of fees and sanctions. In total, Yuga has unsuccessfully asked the Court to
11 impose sanctions ***six times***. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116
12 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. Every request was
13 denied. This kind of scorched-earth litigation strategy is improper in any context,
14 but particularly problematic where Defendants are two individuals attempting to
15 respond to claims brought by an uncompromising multi-billion-dollar corporate
16 plaintiff.

17 **Plaintiff's Reply:**

18 As demonstrated above, Defendants engaged in egregious litigation
19 misconduct, warranting a finding of exceptional case in Yuga Labs' favor. *See*
20 *supra* ¶ 121.

21 Additionally, Defendants' response should be rejected because (1)
22 Defendants' infringement is ongoing; (2) *Te-Ta-Ma* is similar to this case; (3)
23 Defendants brought frivolous claims; (4) Defendants engaged in discovery
24 misconduct; and (5) Yuga Labs has not engaged in litigation misconduct.

25 **Defendants' Infringement Is Ongoing:** It is more than "rank speculation"
26 that Defendants will abuse the legal process used to enforce an injunction; it is a
27 near certainty. Their conduct in this case demonstrates this:

28 • Defendants needlessly relitigated issues throughout this case and to this day

refuse to acknowledge the authority of the Court's SJ Order. *See supra* ¶ 121.

- They have ignored Court orders in the past. Even after the Court's Order finding that Defendants infringed on the BAYC Marks and that Yuga Labs was entitled to an injunction, Defendants continued to "purposely infringe" on Yuga Labs' marks. *TE-TA-MA*, 392 F.3d at 264; Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.

- Despite the Court's Order finding that Yuga Labs is entitled to injunctive relief, Defendants refuse to even submit a proposed injunction for the Court's consideration.

- They are already trying to slip out of the terms of the injunction, claiming that Mr. Cahen's promotion of RR/BAYC NFT sales is "reporting news." *See supra* ¶ 9.

- Indeed, Defendants' contention that their ongoing commercial infringement, including promoting sales, is "criticism" demonstrates why a court order "enjoining them from using the mark" alone would not stop their infringement. *See* Dkt. 419-1 at 3:25-4:6.

Yuga Labs must be given the instrumentalities of their infringement so that Defendants cannot ignore the injunction and/or continue to infringe and claim it is criticism, and Yuga Labs could potentially offset future irreparable harm by changing the confusing information shown on secondary marketplaces. *See* Ripps Depo. Designations (Dkt. 396) 289:7-11 (***admitting Mr. Ripps has control over aspects of secondary marketplace listings***) ("Q: So you signed in with a wallet to LooksRare, and they permitted you to make changes to the page dedicated to the RR/BAYC NFTs? / A: The change of this redacted thing, it's something that I have done, yeah/"); Ripps Depo. Designations (Dkt. 396) at 81:3-81:14 (***admitting Mr. Ripps controls the OpenSea sales page and has made changes to it***) (" Q. But you had a page on OpenSea? A. I had a page? Did I have a page? No. Perhaps

RR/BAYC collection had a page on OpenSea.  Q. And who ran that collection?  A. Who ran that collection?  I did because I have the keys to the RR/BAYC."); *id.* at 81:22-82:7 ("A. I do remember at one point making the background image the banner, if you will, to say 'Long Live Conceptual Art,' or something like that, or 'You can't copy an NFT,' or something along those lines . . .").

*TE-TA-MA* **Is Instructive:**  Defendants claim that *Te-Ta-Ma* is distinct from the facts of this case, but to the contrary, both cases involve conduct that was "egregious and beyond the pale of acceptable litigation conduct."  *See Te-Ta-Ma*, 392 F.3d at 264.  Like *Te-Ta-Ma*, Defendants "purposely orchestrated a campaign of harassment throughout the litigation below which targeted [Yuga Labs] and its attorneys."  *Id*.  Much of this harassment consisted of "explicit threats of violence" (*id*.), such as when they threatened Yuga Labs with images portraying Mr. Cahen next to a grave marked "Yuga Labs," Mr. Ripps and Mr. Cahen holding a gun and a knife up to Yuga Labs, and Mr. Cahen hoisting the severed head of one of the founders' apes over his head.  Dkt. 149-50; *supra* ¶ 29.  They also accused Yuga Labs and its counsel of supporting "racism, antisemitism, beastiality, pedophilia, and using cartoons to market drugs to young children."  Dkt. 149-51.  And, like the defendant in *Te-Ta-Ma*, Defendants in effect called one of Yuga Labs' founders a race traitor, accusing him, a man of Jewish ancestry, of being a Nazi.  *Te-Ta-Ma*, 392 F.3d at 251.

Moreover, they made these accusations at trial despite their promise not to make such accusations.  *See, e.g.*, Dkt. 320-1 ¶ 6(A); Dkt. 314; Dkt. 334 at 60:13-14, 61:9-11.  And Defendants made these accusations to promote their RR/BAYC NFTs and Ape Market.  Notably, this is the same marketplace where they planned to sell Yuga Labs NFTs, which they incredibly claimed were offensive.  *See, e.g.*, JTX-696; JTX-806-JTX-809.

Even putting aside *Te-Ta-Ma*, Defendants ignore other caselaw finding exceptional use where "defendant acted deliberately to and intended to harm the plaintiff by using its mark" which was "especially egregious" because defendant "continue[d] to use the mark after notice of violation" and continued to "harass[] the plaintiff" *just as Defendants did*. *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, 894 (9th Cir. 2002).

**Defendants Brought Frivolous Claims:** *Anhing* does not hold that a finding of frivolousness is necessary for an exceptional case. It is merely one of the numerous "factors the district court *may* consider when deciding whether to grant attorneys' fees." *Anhing Corp. v. Viet Phu, Inc.*, 2017 WL 11630841, at *3. As described above, however, Defendants' repeated re-litigating of settled issues made their claims frivolous. But they were also frivolous from the beginning, when they sought to raise arguments that their infringement was art, in the face of Yuga Labs' "slam-dunk evidence of a conceptually strong mark together with the use of identical marks on identical goods" proving their infringement. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'").

**Defendants Engaged In Discovery Misconduct:** Defendants' argument that Yuga Labs made a "pattern and practice of sanctions" ignores the fact that Yuga Labs sought sanctions for discovery motions because it *kept winning* discovery motions. *See supra* ¶ 125. Yuga Labs was forced to file these motions because Defendants withheld crucial evidence during discovery.

Mr. Ripps' statement at trial that he "produced everything" is false. Trial Tr. 269:10-270:18. Even recently, Defendants revealed they are in the possession of new material information relevant to this case. For example, at trial, Defendants used two screenshots of Etherscan purportedly showing payments to Mr. Lehman and Mr. Hickman. *See* JTX-2710, JTX-2711. These were never produced in

discovery, as evidenced by their lack of a Bates number and July 2023 date. Instead, Defendants sprung them on Yuga Labs on the eve of trial. If these exhibits had been produced earlier (as they should have been in response to Yuga Labs' discovery requests), the parties may have been able to reach a solution on the issue of monetary remedies (*see supra* ¶¶ 109, 111) without needing to involve the Court. Defendants' games of hide and seek with crucial documents are par for the course in this case. Even after Mr. Ripps lied under oath in a declaration filed with this Court that he had produced all relevant documents, Defendants made numerous additional productions of documents. *See supra* ¶ 121. For example, even after submitting repeated declarations that they had produced all relevant evidence (including declarations submitted to the Court on March 21, 2023 (Dkts. 157, 158)), on April 11, 2023, Defendants produced messages with a BAYC NFT holder to whom Defendants were trying to provide an infringing NFT. Defendants have no excuse for their repeated improper withholding of material evidence and repeated lies under oath. If Mr. Ripps lied under oath before, his word at trial on the very same subject cannot be trusted.

Defendants continue to admit their violation of the Protective Order while failing to explain why, for instance, they immediately and intentionally sent Highly Confidential Attorneys' Eyes Only materials to reporters after failing to redact it. Defendants also disclosed Highly Confidential - Attorneys' Eyes Only materials in their filing that were not even part of the redaction requests they had sent before filing. As such, Defendants' admitted breach of the Protective Order cannot be explained through their inaccurate claim that Yuga Labs contributed to their violation.

Defendants' tactics, which served only to raise the temperature of the litigation and increase costs at every turn, warrant a finding that the case is exceptional.

**Yuga Labs Has Not Engaged In Litigation Misconduct:**

JOINT STMT. RE DEFENDANTS' PROPOSED POST-TRIAL CONCLUSION OF LAW NO. 150    11    Case No. 2:22-cv-04355-JFW-JEM

discovery, as evidenced by their lack of a Bates number and July 2023 date. Instead, Defendants sprung them on Yuga Labs on the eve of trial. If these exhibits had been produced earlier (as they should have been in response to Yuga Labs' discovery requests), the parties may have been able to reach a solution on the issue of monetary remedies (*see supra* ¶¶ 109, 111) without needing to involve the Court. Defendants' games of hide and seek with crucial documents are par for the course in this case. Even after Mr. Ripps lied under oath in a declaration filed with this Court that he had produced all relevant documents, Defendants made numerous additional productions of documents. *See supra* ¶ 121. For example, even after submitting repeated declarations that they had produced all relevant evidence (including declarations submitted to the Court on March 21, 2023 (Dkts. 157, 158)), on April 11, 2023, Defendants produced messages with a BAYC NFT holder to whom Defendants were trying to provide an infringing NFT. Defendants have no excuse for their repeated improper withholding of material evidence and repeated lies under oath. If Mr. Ripps lied under oath before, his word at trial on the very same subject cannot be trusted.

Defendants continue to admit their violation of the Protective Order while failing to explain why, for instance, they immediately and intentionally sent Highly Confidential Attorneys' Eyes Only materials to reporters after failing to redact it. Defendants also disclosed Highly Confidential - Attorneys' Eyes Only materials in their filing that were not even part of the redaction requests they had sent before filing. As such, Defendants' admitted breach of the Protective Order cannot be explained through their inaccurate claim that Yuga Labs contributed to their violation.

Defendants' tactics, which served only to raise the temperature of the litigation and increase costs at every turn, warrant a finding that the case is exceptional.

**Yuga Labs Has Not Engaged In Litigation Misconduct:**

Defendants' persistent refusal to take any responsibility for their conduct merely highlights how their tactics have increased the time and expense of this litigation. All their false examples of "litigation misconduct" are a mere distraction from their own misconduct.

Defendants' dubious claim of a threat against Rodney Ripps is not in the record; Yuga Labs disputes it and Defendants' assertion that Yuga Labs has ever "conceded" is false. Defendants' claims on this issue were also already dismissed by the Court as lacking any plausibility. *See* Order on Yuga Labs' Motion to Strike/Dismiss (Dkt. 156) at 6-10 (denying Defendants' intentional and negligent infliction of emotional distress claims, which were based in part on this alleged threat). And Defendants noticeably do not mention the death threats they and their associates leveled against Yuga Labs, its counsel, and their families. Even so, it is irrelevant because it did not come from Yuga Labs and was not directed to Defendants.

Defendants also cry foul over Yuga Labs' subpoena of Rodney Ripps, when *they* designated him in their amended initial disclosures as a person with knowledge of "RR/BAYC NFTs." And the document subpoena Yuga Labs issued to Mr. Rodney Ripps sought relevant information related to his role as an officer of LIVE9000, Ryder Ripps' defunct limited liability company, which he used to try to hide the ill-gotten profits from the RR/BAYC NFTs when he knew he was being sued.

Yuga Labs' other subpoenas in this action were also targeted at relevant parties that Yuga Labs reasonably believed had information relevant to the litigation. Mr. Ripps' gallerist, for example, was designated in Defendants' amended initial disclosures as individuals with knowledge of the RR/BAYC NFTs. Likewise, Defendants indicated in their depositions that their accountants had relevant information. *See* Cahen Deposition at 24:18-25 ("Like I said, I think that would probably be an easier question for my accountant or someone like that.");

Ripps Deposition at 235:1-24. Defendants cannot complain that Yuga Labs subpoenaed their own identified witnesses. Moreover, the vast majority of subpoenas issued by Yuga Labs were document subpoenas, which stands in stark contrast to the sixteen depositions and deposition subpoenas Defendants threatened and issued to Yuga Labs' founders and employees, and more. Finally, Defendants' position that Mr. Garner is relevant to the litigation as Mr. Ripps' assistant for purposes of deducting from their profits contradicts their prior position that he is irrelevant and that he should not have been deposed. This again highlights their willingness to lie to get what they want.

Yuga Labs never attempted to preclude depositions of its witnesses. Yuga Labs asked Defendants to complete a Rule 30(b)(6) deposition before deciding whether it was necessary to depose Mr. Solano and Mr. Aronow, and it sought a protective order when Defendants refused. Dkt. 75. The Court disagreed, and Yuga Labs produced both witnesses for deposition. Mr. Aronow was unable to appear for his deposition the day after the Court's Order because of a medical emergency. The Court ordered the parties to meet and confer on an appropriate date for the deposition for Mr. Solano, Dkt. 77 at 2, which Yuga Labs did, and Mr. Solano appeared for his deposition a few days after the Court's Order. Defendants' attempt to label this short delay of a matter of days into full blown "litigation misconduct" is absurd.

As to Defendants' contention that Yuga Labs has not paid attorneys' fees related to Mr. Solano's deposition, Defendants omit that Yuga Labs has a pending objection to Defendants' claimed attorneys' fees. Moreover, Defendants have failed to file any motion for attorneys' fees or even respond to Yuga Labs' request for an accounting to offset any attorneys' fees given the substantially more and unpaid expert deposition fees that Defendants still have not paid.

Next, with respect to the discovery dispute with Mr. Hickman, the Court observed that, "Defendants, not Yuga, designated the documents discussed at Ryan

Hickman's deposition as highly confidential ('HC') and attorneys' eyes only ('AEO')." Dkt. 133 at 1. Consistent with Yuga Labs' reading of the Protective Order, Yuga Labs kept the deposition transcript under similar protection "because HC/AEO documents were discussed at the deposition," *id.*, and Defendants refused to specify which portions of those underlying documents they contended were no longer HC/AEO. The Court noted Defendants' indiscriminate confidentiality designations, holding that Yuga Labs was "not wrong that Defendants are obliged by the Protective Order to ensure HC/AEO material is 'clearly so designated.'" *Id.* at 3. Accordingly, the Court ordered the transcript to be made public and ordered Defendants to comply with the Protective Order by "reproduc[ing] and redesignat[ing] the HC/AEO documents discussed at the deposition to 'clearly identify the protected portion(s)'"—the "result Yuga recommended if the Motion was granted." *Id.* In other words, the Court ordered what Yuga Labs had asked the Defendants to do from the start. This was another problem all of the Defendants' own making.

Yuga Labs contested the discovery of documents reflecting settlement negotiations with Mr. Lehman in good faith. Mr. Lehman's settlement materials expressly included a confidentiality provision, and Yuga Labs sought to have that bargained-for confidentiality protected. *See* Dkt. 121-01 at 17-18. Yuga Labs briefed the issues in good faith and, although the Court ultimately ordered the materials to be produced, there was no finding of bad faith. *See* Dkt. 159 (ordering Yuga Labs to produce settlement materials without finding bad faith). That is because there was no bad faith. Of course, consistent with Defendants creating unnecessary disputes, Defendants did not use a single one of the settlement communications in the deposition with Mr. Lehman or at trial. Here too, this dispute could have been avoided if the Defendants had accepted Yuga Labs' pre-motion offer.

Yuga Labs was forced by Defendants' discovery misconduct to file numerous discovery motions, which were overwhelmingly successful, justifying its requests for sanctions. For example, Yuga Labs was forced to obtain repeated sworn declarations from Defendants confirming their compliance with discovery obligations, because Defendants were continually caught concealing additional documents. *See* Dkt. 79 at 2 (Jan. 10, 2023 Order requiring Ripps to verify that he has produced "all relevant non-privileged documents"); Dkt. 145 (Order requiring Defendants to file a declaration that they have produced relevant documents). Although the Court did not award Yuga Labs fees for these discovery violations, each fee request was nonetheless in response to Defendants' egregious and repetitive discovery violations. If Defendants took issue with Yuga Labs' discovery strategy, they should have raised it with the Court during discovery, yet they did not, and thus Defendants waived this issue.

None of this is litigation misconduct and should not be weighed against Defendants' misconduct.