Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>               Plaintiff,<br><br>    v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>               Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Table of Contents regarding Their Joint Statement (Dkt. 420)**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following table of contents for each objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Finding of Fact No. 1, lines 1:21-24 | Yuga Labs owns and uses trademarks associated with its BAYC NFT collection, including BORED APE YACHT CLUB, BAYC, BORED APE, the BA YC Logo, the BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo (collectively, the "BAYC Marks"). SJ Order at 6-10; Dkt. 342 ¶3. | Pg. 1-21 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 1, lines 1:24-2:1 | Yuga Labs has used the BAYC Marks for advertising, marketing, and promoting its products and services nationwide through multiple platforms, including the BAYC website, NFT marketplaces, and social media. SJ Order at 2; Dkt. 342 ¶¶4-33; JTX-607; JTX-608; JTX-1302; JTX-1306. | Pg. 21-33 |
| Plaintiff's Disputed Post Trial Finding of | Defendants created an NFT collection known as Ryder Ripps Bored Ape Yacht Club ("RR/BAYC") that uses the BAYC Marks and points to the same | Pg. 33-60 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Fact No. 2, lines 4, 6-7 | online digital images as Yuga Labs' BAYC NFT collection. SJ Order at 2. Defendants promoted and/or sold RR/BAYC NFTs on the same NFT marketplaces where BAYC NFTs are sold, social media, and with their websites rrbayc.com and apemarket.com. *Id*. at 12; JTX-696. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 3 | Yuga Labs proved every element of its false designation of origin claim and is entitled to monetary remedies and injunctive relief. SJ Order at 13. | Pg. 60-64 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 4 | Defendants used Yuga Labs' BAYC Marks without authorization to falsely suggest that RR/BAYC NFTs relate to Yuga Labs in a way that was likely to cause, and actually caused, confusion. *Id*. at 12-13; Dkts. 342 ¶¶34-35, 63; 392 (Trial Tr. Vol. 1) at 53:14-54:22. | Pg. 64-116 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 5, lines 2:16-19 | Confusion was likely, in part, because of the "complexity and required sophistication to understand the blockchain and verify provenance." SJ Order at 12. Defendants were also aware of likely confusion resulting from their actions, but they still continued with their infringement. *See,* | Pg. 116-131 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | *e.g.*, JTX-801.15 (Regarding the use of unaltered BAYC Marks on the RR/BAYC Foundation page, Mr. Lehman, one of the Defendants' partners, wrote, "I mean how do they not shut this down at some point haha."); JTX-801.196 (Mr. Lehman writing, "we should not under-estimate how confusing it is" and Mr. Cahen responding, "yeah."); *see also* Dkt. 392 at 211:17-212:24. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 6, lines 2:25-27 | Defendants knew that "at least some purchasers of their RR/BAYC NFTs would have difficulty identifying the RR/BAYC NFTs as a different and distinct product from Yuga's BAYC NFTs." SJ Order at 13; *see also* JTX-801.185 (Mr. Cahen writing, "these users are too unsophisticated by far"); Dkt. 395 (Cahen Depo. Designations) at 59:7-59:16. | Pg. 131-141 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 6, lines 3:1-3 | Further, Mr. Hickman, another one of Defendants' partners, confused the listing for RR/BAYC NFTs on Foundation as being for genuine BAYC NFTs during his deposition. JTX-28; Dkt. 392 at 213:4-14. | Pg. 141-144 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Finding of Fact No. 6 n.2 | Although Mr. Hickman testified at trial that he was not confused, after viewing Mr. Hickman's video deposition (149:24-150:10), the Court concludes that Mr. Hickman's demeanor, body language, and tone of voice reflect that he was initially confused. This deposition testimony also supported Yuga Labs' motion for summary judgment. *See, e.g.*, Dkt. 141-2 CSUF 57 at page 40. | Pg. 144-147 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(preamble) | Defendants' infringement was intentional. The Court's findings on summary judgment, in addition to evidence presented at trial, illustrate Defendants' intent to deceive consumers, including: | Pg. 147-156 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(a) | "Defendants knowingly and intentionally used Yuga's BAYC Marks . . . in an effort to confuse consumers" and "intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding." SJ Order at 12; *see also* JTX-671; JTX-686; Dkt. 392 at 52:6-21. | Pg. 156-169 |
| Plaintiff's Disputed Post | "Defendants have admitted that they intentionally used the BAYC Marks in their RR/BAYC NFTs." | Pg. 169-176 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Trial Finding of Fact No. 7(b) | SJ Order at 11; Dkt. 396 (Ripps Depo. Designations) at 149:18-150:10. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(c), lines 3:16-17 | Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks, which Defendant Ripps intentionally coded into the smart contract, and many of the associated images contained the BAYC Marks. Dkts. 342 ¶36; 337 (Atalay Decl.) ¶¶2-6 (admitted into evidence in Dkt. 392 at 125:22-126:11); JTX-600; JTX-687; JTX-688; JTX-1146. | Pg. 176-186 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(d), lines 3:20-23 | "Defendants are selling the exact same product – NFTs that point to Yuga Labs' BAYC images – and Defendants marketed their RR/BAYC NFTs using the same corresponding BAYC Ape ID number used by Yuga Labs for the BAYC NFTs." SJ Order at 11; Dkts. 342 ¶37; 392 at 56:3-10, 221:16-222:24; 396 at 169:4-6, 184:14-186:19; JTX-44.2; JTX-669; JTX-686. | Pg. 186-201 |
| Plaintiff's Disputed Post Trial Finding of | Though Mr. Ripps and Mr. Hickman testified that they were averse to the BAYC imagery ((Dkts. 345 (Hickman Decl.) ¶41 (admitted into evidence in Dkt. 392 at 204:21-205:14); 346 (Ripps Decl.) | Pg. 201-204 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Fact No. 7(d), lines 4:3-6 | ¶139 (admitted into evidence in Dkt. 406 at 266:15-267:6)), they nonetheless sought to profit from spreading the same imagery. Defendants' creation and marketing of RR/BAYC NFTs was commercial activity designed to sell infringing products, not expressive artistic speech protected by the First Amendment. SJ Order at 16. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(e) | "Defendants used Yuga Labs' BAYC Marks to make their competing product look identical to Yuga Labs' product and ensure that the consumer will be explicitly misled in the token tracker, which is the place where a consumer should be able to authenticate and verify who created the NFT." SJ Order at 17; *see also* JTX-117; JTX-600; JTX-972; Dkts. 342 ¶44; 392 at 130:23-131:2, 138:6-20; 394 (Hickman Depo. Designations) at 143:15-144:16; 395 at 148:10-13. | Pg. 204-221 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(f), lines 14-15 | "Defendants frequently used the entirety of the BAYC Marks without modification." SJ Order at 18. | Pg. 221-224 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(f), lines 15-16 | They marketed their RR/BAYC NFTs as "Bored Ape Yacht Club" and used Yuga Labs' logo and marks to sell the NFTs. JTX-28; JTX-133; JTX-137; JTX-138; JTX-671; JTX-719; Dkts. 342 ¶¶35, 42-43; 392 at 47:18-48:4; 396 at 60:18-61:4, 71:9-12. | Pg. 224-243 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(g) | Mr. Ripps promoted the RR/BAYC NFTs as "Bored Ape Yacht Club V3" and "BAYC V3." JTX-689; JTX-690; JTX-1249; JTX-1556.3-4; Dkts. 340 ¶10; 342 ¶¶65-67; 392 at 53:7-13. | Pg. 243-254 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(h), lines 4:22-25 | Defendants developed and marketed an NFT marketplace, Ape Market, where consumers could, as Defendants intended, purchase and sell RR/BAYC NFTs alongside BAYC NFTs, and which used BAYC Marks in a manner likely to confuse consumers. *See* Dkts. 337 ¶9; 392 at 136:23-138:5; JTX-696; JTX-806-JTX-809. | Pg. 255-267 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(h), lines 4:26-28 | To stimulate sales of RR/BAYC NFTs, Defendants advertised that consumers were required to purchase one of Defendants' RR/BAYC NFTs to use Ape Market. JTX-696; Dkt. 396 at 46:2-7. | Pg. 267-275 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(h), lines 5:2-4 | They even targeted this marketplace at Yuga Labs NFT holders, for example, by directing their marketing to the "Yuga community." Dkts. 342 ¶49; 392 at 51:11-21; JTX-114; JTX-697; JTX-804.00048. | Pg. 275-280 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(i) | Defendants treated RR/BAYC as a business venture and expected to profit from using Yuga Labs' BAYC Marks to sell and resell RR/BAYC NFTs, and to use those sales to build Ape Market, from which they expected to further profit. *See* JTX-1 at ¶¶10-13; JTX-801.185; JTX-801.208 ("considerable passive income"); JTX-801.237; JTX-801.156; JTX-1574; JTX-1586; Dkt. 394 at 238:12-240:20; JTX-801.144; JTX-803.66-JTX-803.67. | Pg. 280-287 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 7(j) | Despite multiple successful takedowns on third-party marketplaces on the basis of trademark infringement, Defendants persisted in attempting to promote and sell their RR/BAYC NFTs by circumventing those takedowns and relisting their NFTs.  Dkt. 344 (Cahen Decl.) ¶253 (admitted into | Pg. 287-291 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
|  | evidence in Dkt. 392 at 223:25-224:14); JTX-801.305. |  |
| Plaintiff's Disputed Post Trial Finding of Fact No. 8 | Yuga Labs successfully proved every element of its cybersquatting claim and is entitled to damages and injunctive relief. SJ Order at 14-15. | Pg. 291-297 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 9, line 5:20 | "Defendants registered, used, and continue to use the domain names https://rrbayc.com/ and https://apemarket.com." *Id*. at 14; Dkts. 346 ¶100; 396 at 36:18-37:8. | Pg. 297-299 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 10 | And Defendants "acted with a bad faith intent to profit" from Yuga Labs' marks in registering the infringing domains. SJ Order at 14-15. | Pg. 299-306 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 11(b), lines 6:5-7 | Removing the "gas" transaction costs and profits accrued to non-defendants, Mr. Lehman and Mr. Hickman, reflects the amount of profits that accrued to Defendants only from the initial sales of RR/BAYC NFTs, totaling $1,366,090. JTX-723 ¶¶75-76; Dkt. 338 ¶¶57-60. | Pg. 306-314 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Finding of Fact No. 11(c), line 6:14 | Defendants' profits from royalties or creator fees from resales of RR/BAYC NFTs totaled at least $117,309. JTX-723 ¶68; Dkt. 338 ¶¶45-50. | Pg. 314-316 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 11(d), lines 16-17 | The value of RR/BAYC NFTs that Defendants hold or did not mint totals $106,055. JTX-723 ¶74; Dkt. 338 ¶¶51-57. | Pg. 316-320 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 11(d), lines 18-20 | This amount shall not be disgorged because the Court finds it appropriate to transfer the RR/BAYC smart contract to Yuga Labs and Ms. Kindler agreed that Yuga Labs should not receive this sum if it received the smart contract. Dkt. 392 at 198:18-25. | Pg. 320-326 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 11(d), lines 20-21 | But for the transfer of the RR/BAYC smart contract, Yuga Labs would be entitled to $106,055 as disgorgement. | Pg. 326-345 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Finding of Fact No. 11(e) | The sum of Defendants' profits to be disgorged is $1,375,361.92. | Pg. 345-357 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 12, lines 6:24-25 | All of Defendants' profits result from their infringing activity because each RR/BAYC NFT used the BAYC Marks. Dkts. 338 ¶61 ("these profits are all traceable to Defendants' uses of Yuga Labs' BAYC Marks"); 342 ¶36; 392 at 188:15-25, 203:1-17. | Pg. 357-370 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 12, lines 6:27-28 | Each RR/BAYC NFT refers to a contract with a token tracker displaying "Bored Ape Yacht Club (BAYC)"… | Pg. 370-376 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 12, lines 6:28-7:1-2 | … and NFT marketplaces where RR/BAYC NFTs were sold listed "bayc" in the URLs and identified the infringing NFTs as "Bored Ape Yacht Club." See, e.g., JTX-117; JTX-138; JTX-671; see also Dkt. 337 ¶5. | Pg. 376-379 |
| Plaintiff's Disputed Post | Defendants were also unjustly enriched in the form of avoided costs. JTX-723 ¶89; Dkt. 338 ¶68; Dkt. | Pg. 379-383 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Trial Finding of Fact No. 13 | 342 ¶¶35, 39, 40, 52, 72. Yuga Labs' investment in developing its BAYC brand, including its marks, are costs that Defendants were able to avoid in generating their profits. JTX-723 ¶89. Defendants leveraged the value created by Yuga Labs to effectively "free ride" on the BAYC brand. Yuga Labs' investments in the BAYC brand are thus costs that Defendants would otherwise have had to invest themselves to attract consumers to their RR/BAYC NFTs. JTX-723 ¶89; Dkt. 338 ¶68. The Court finds that disgorgement of Defendants' profits in the amount of $1,375,361.92 is adequate to address Defendants' unjust enrichment in the form of avoided costs. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 14, lines 7:15, 7:16-18 | Defendants registered and used the infringing rrbayc.com and apemarket.com domains, and created the @ApeMarketplace Twitter account, to market and sell RR/BAYC NFTs by directly incorporating Yuga Labs' BAYC Marks. SJ Order at 14-15; Dkts. 342 ¶48; 346 ¶100; JTX-94; JTX-95; JTX-696. | Pg. 383-390 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Finding of Fact No. 15, lines 7:19-20 | The token tracker for the RR/BAYC smart contract uses Yuga Labs' BORED APE YACHT CLUB and BAYC marks. JT X-117; JTX-600; JTX-1146; Dkts. 337 ¶¶4, 5; 392 at 130:23-131:2. | Pg. 390-395 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 15, lines 7:21-22 | Consumers use token trackers to verify the source and authenticity of the digital assets that they are viewing and purchasing. SJ Order at 17; *see also* JTX-721 ¶14; JTX-1558; Dkts. 337 ¶7; 392 at 138:6-20; 395 at 148:10-13. | Pg. 395-398 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 16 | Consumers and Twitter bots tracking and posting about NFT transfers falsely attribute sales of RR/BAYC NFTs as BAYC NFTs as they reflect the BORED APE YACHT CLUB and BAYC marks in the RR/BAYC smart contract's token tracker, which causes confusion among consumers as to source, sponsorship, or affiliation. *See, e.g.,* JTX-705; JTX-722 ¶¶71-72; JTX-1029 See, e.g., JTX-705; JTX-722 ¶¶71-72; JTX-1029. Even more, whenever (now, or in the future) a consumer shares links to the RR/BAYC Etherscan page on | Pg. 398-403 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | Twitter, the resulting image displays Yuga Labs' BAYC Marks. Dkt. 342 ¶¶46-47. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 17 | Indeed, Bloomberg aired a news segment that reported Defendants' infringing NFT collection, under the name "Bored Ape Yacht Club V3," as a top-performing collection. JTX-701, JTX-1049; Dkt. 342 ¶66. The segment discussed only Yuga Labs and Bored Ape Yacht Club. *See* Dkt. 340 ¶10; Dkt. 342 ¶67. As such, the segment made no distinction that this "Bored Ape Yacht Club V3" collection was not associated with the genuine Bored Ape Yacht Club collection, nor did it reference either Defendant. It is apparent that Bloomberg News was under the impression (and giving viewers the impression) that Defendants' infringement was affiliated with or a new "version" of the genuine Bored Ape Yacht Club. | Pg. 403-407 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 18, lines 8:13-22 | The Court does not credit Mr. Cahen's testimony that the "V3" designation was "the result of Yuga having repeatedly filed twenty-seven Digital Millennium Copyright Act takedowns directed to the RR/BAYC artwork." Dkt. 344 ¶253. More | Pg. 406-411 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | credible evidence establishes that Mr. Ripps used the "V3" designation before even the first takedown Yuga Labs issued toward the RR/BAYC NFT collection. JTX-689; Dkt. 193-2 ¶93 (undisputed fact that the first takedown notice issued against the RR/BAYC NFTs occurred on May 17, 2022). Mr. Cahen's testimony is not only false as to the timing of the "V3" name, but also as to the causal relationship, as the "V3" name was used by Defendants before any takedown had occurred. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 18, lines 8:22-24 | Further, Mr. Cahen's testimony that "the V3 thing is never something that I used or Ryder used or Ryan Hickman used or Mr. Lehman used" (Dkt. 392 at 253:18-21, 254:24-255:7) is demonstrably false. JTX-689; JTX-1249. | Pg. 411-414 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 19, lines 8:25, 8:27-9:1 | Further demonstrating confusion, Laura O'Laughlin, an expert in designing, administering, and analyzing consumer surveys, conducted two unrebutted surveys with results showing confusion of the BAYC Marks used in connection with RR/BAYC NFTs at net rates of 40.4% on | Pg. 414-424 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | Foundation and 20.0% on OpenSea, respectively. JTX-721 ¶¶16, 47, 73; Dkt. 341 (O'Laughlin Decl.) ¶¶13.ac, 16, 47, 48, 73, 81, 82 (admitted into evidence in Dkt. 392 at 140:9-141:13). | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 19, lines 9:2-4 | The Court concludes that the sale and promotion of RR/BAYC NFTs on secondary marketplaces was likely to cause confusion among purchasers. | Pg. 424-426 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 20, lines 9:5-9 | This confusion resulted in harm to Yuga Labs. As Ms. Muniz testified, she received reports and concerns about confusion and the BAYC NFT collections' loss of exclusivity caused by Defendants' NFT collection, including because it was misleadingly labeled as the same as the BAYC collection (or at times, a "V3" of BAYC). Dkt. 340 ¶¶11, 16, 17. | Pg. 426-432 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 20, lines 9:9-11 | These instances of marketplace confusion harmed the perception of the BAYC brand and Yuga Labs' negotiating position in obtaining new deals under the BAYC brand. *See* Dkts. 340 ¶¶15-17; 342 ¶29. | Pg. 432-436 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Finding of Fact No. 21, lines 9:13-14 | Professor Jonah Berger, an expert in brand equity and consumer behavior, found that Defendants' minting and sales of RR/BAYC NFTs harmed Yuga Labs' brand equity, goodwill, and reputation. JTX-722 ¶¶11, 12, 64-92; Dkts. 271; 339 ¶¶62-92; 340 ¶¶16-17; Dkt. 342 ¶¶62-87. | Pg. 436-439 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 22, lines 9:16-18, 23-25 | Finally, throughout this litigation and even after the summary judgment order confirming their infringement, Defendants continued to market their RR/BAYC NFTs and Ape Market and harm Yuga Labs. On April 4, 2023, Mr. Cahen tweeted an announcement that "RR/BAYC is trading on OpenSea Pro." JTX1315; see also JTX-1317. Mr. Cahen also continued to retweet Twitter posts sharing the resale of RR/BAYC NFTs (see JTX-1613; JTX-1614; JTX-1615), as well as retweet Defendants' own tweets from the @ApeMarketplace Twitter account. JTX1048; Dkt. 342 ¶¶74-76. As recently as the day before trial, @ApeMarketplace continued to advertise rrbayc.com and link to a marketplace on which | Pg. 439-445 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | RR/BAYC NFTs were still available for sale. JTX-696; Dkts. 342 ¶77; 392 at 57:8-58:6, 58:20-59:19 | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 23 | The RR/BAYC smart contract is immutable and will use Yuga Labs' BORED APE YACHT CLUB and BAYC marks in perpetuity, which will continue to cause consumer confusion, unless, at a minimum, Yuga Labs obtains control of the contract. JTX-722 ¶71; JTX-1146; *see also* JTX-1249; Dkts. 337 ¶¶2-6; 342 ¶80; 392 at 133:24-134:20. | Pg. 445-457 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 24, lines 10:5, 6-10: | Defendants filed a frivolous counterclaim for declaratory judgment of no defamation with no good-faith basis; instead, it was filed to introduce irrelevant and inflammatory theories through the "backdoor of a counterclaim." Dkts. 87 at 2; 80 at 1, 3-4. Defendants withdrew this counterclaim only after they were unsuccessful in their attempts to leverage it for discovery and after Yuga Labs had already expended resources seeking its dismissal. *See* Dkt. 156 at 11. | Pg. 457-459 |
| Plaintiff's Disputed Post | Defendants repeatedly attempted to re-litigate issues the Court rejected in its December 16, 2022 | Pg. 459-461 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Trial Finding of Fact No. 25 | Order Denying Defendants' Motion to Dismiss and Motion to Strike (Dkt. 62). See Dkts. 69-1, 103-1, 118, 199-1 at 12-13. But the Court repeatedly rebuffed these attempts. *See, e.g.*, Dkts. 87 at 1 (rejecting motion to compel premised on Defendants' rejected First Amendment *Rogers* defense as "moot, irrelevant and not proportionate to the needs of the case in view of the District Court's December 16, 2022 ruling."); 144 at 1; 178 at 6. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 26 | Defendants again refused to accept the Court's findings in its SJ Order, instead indicating an intent to re-litigate adjudicated issues at trial. See, e.g., Dkt. 320-1 at 11-12 (Proposed Pretrial Conference Order in which Defendants argued that their infringement was not intentional/willful despite the Court's holding otherwise). As a result, Yuga Labs was forced to prepare for trial on previously adjudicated issues. | Pg. 461-464 |
| Plaintiff's Disputed Post | Defendants were obstructive and intentionally evasive throughout their depositions and at trial, wasting time with rehearsed, non-responsive | Pg. 464-473 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Trial Finding of Fact No. 27 | monologues on the same issues the Court already deemed irrelevant. *See, e.g.*, Dkts. 392 at 229:3-13, 231:21-232:3, 234:24-235:5, 237:14-238:7; 395 at 101:7-102:4, 163:13-23; 396 at 35:2-11, 44:19-45:11. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 28, lines 11:1-4, 5-6, 7-12, 14-15 | Defendants made false representations to the Court regarding the existence and production of documents during discovery. For example, Mr. Ripps swore under penalty of perjury in a verification dated January 17, 2022 that he had produced all documents responsive to Yuga Labs' discovery requests. Dkt. 406 (Trial Tr. Vol. 2) at 267:11-14. Mr. Ripps was asked at trial about a text message from Mr. Cahen stating "It will sell out within 48 hours I think You'll make like a million dollars Straight up." JTX-1574. Mr. Ripps claimed he did not produce that text message because he did not "really find it to have anything to do with the RR/BAYC project." Dkt. 406 at 268:17-21. The Court does not find this explanation to be credible given its clear relation to the sale of infringing NFTs, nor does it explain his withholding of every | Pg. 473-477 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | other text message with Mr. Cahen about the RR/BAYC NFTs. *See* Dkt. 145 at 2-3 (finding "The Court takes a dim view of Defendants' blanket withholding of pre-litigation communications between Ripps and Cahen . . . ."). Mr. Ripps' misrepresentation demonstrates his disrespect for the judicial process and willingness to lie under oath. | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 29 | Defendants made heinous attacks on Yuga Labs and its counsel throughout litigation. *See, e.g.*, Dkts. 149-50; 149-51. | Pg. 477-483 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 30 | Defendants used the litigation to "farm" for engagement on social media with the intent to further harm Yuga Labs. *See* JTX-938, JTX-1568, JTX-1617, JTX-1620. | Pg. 483-486 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 31, line 11:22 | Defendants' public disclosure of confidential material violated this Court's Protective Order (Dkt. 51) and intentionally harmed Yuga Labs. *See* Dkts. 180, 183, 194. | Pg. 486-488 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Conclusion of Law No. 33, line 12:1 | Defendants acted with intent to deceive consumers.[3] *See* SJ Order at 12; *see supra* Section II.B. | Pg. 488-520 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 33, lines 12:2-5 and n.3: | *Footnote 3*<br>Mr. Ripps' testimony as to his intent and "good faith" is not credible, as many of the statements in his declaration are contradicted by the documentary evidence. The Court therefore finds Mr. Ripps' characterization of his actions when they do not suit present purposes, to be unavailing. *Cf. supra* Section II.B.<br>Similarly, the Court finds Mr. Hickman's testimony as to his and Defendants' intent to not be credible. *See* JTX-2723; Dkt. 392 at 206:8–207:20. While Mr. Hickman testified his compensation was tied to his belief in Mr. Ripps' alleged protest art (Dkt. 345 ¶¶75-76; Dkt. 392 at 221:11-15), Mr. Hickman's deposition testimony contradicts that assertion. *See* Dkt. 394 at 129:3-6 ("My financial | Pg. 520-547 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | arrangement for this whole thing is about as a software developer being compensated for making software.") <br> *Lines 12:2-5* <br> The Court finds Defendants, and their business partner Ryan Hickman, to be uncredible witnesses. The evidence admitted at trial establishes that Defendants' use of Yuga Labs' BAYC Marks was intentional and was done with the expectation of profiting from such use. *See supra* ¶¶7, 10 | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 33, lines 12:5-8 | The evidence further establishes that Defendants were aware of the likelihood of consumer confusion based on their use of the BAYC Marks and nevertheless proceeded to use them in a manner likely to confuse consumers. *See supra* ¶¶5-6. | Pg. 547-564 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 34 | All profits identified by Yuga Labs are attributable to Defendants' sales (and profits from resales) of the infringing RR/BAYC NFTs. Equity does not permit Defendants to retain profits from the sale of an infringing product that is likely to confuse | Pg. 564-587 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | consumers, as is the case with the infringing RR/BAYC NFTs. | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 35 | Defendants were also unjustly enriched, including by avoided costs. | Pg. 587-590 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 36, lines 12:16-17, 19-13:2 | Defendants offer additional deductions from Ms. Kindler's profit calculations, none of which the Court finds persuasive. | Pg. 590 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 36, lines 12:19-13:2 | Defendants offer no documentary evidence of these expenses and do not attempt to show how they were necessary to earn revenue from the RR/BAYC NFTs. Further, the Court does not find this testimony credible, because Mr. Cahen conceded that he purchased the computer in December 2021 for the RR/BAYC "project" that | Pg. 590-594 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | purportedly started in May 2022. Dkts. 200-3, 200-4; 344 ¶174; see also Dkt. 200 at 3 (arguing "[t]he RR/BAYC Project began in mid-May"). | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 36, lines 13:5-7 | Again, however, Defendants provide no documents showing this payment was made or explanation of how it was entirely relevant to the revenue generated by their infringing activities. | Pg. 594-596 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 37 | Therefore, the Court deems it just to award Yuga Labs $1,375,361.92 of Defendants' profits (consisting of $1,258,052.92 of profits from initial sales and $117,309 of profits from secondary sales) to account for Defendants' profits and unjust enrichment. See 15 U.S.C. § 1117(a). | Pg. 596-602 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 39 | Courts have "'wide discretion' in determining an appropriate amount of damages" under the *ACPA*. *Bekins Holding Corp. v. BGT Trans, Inc.*, No. CV 09-08982 MMM, 2010 WL 11597623, at *10 (C.D. Cal. Nov. 19, 2010) (citation omitted). | Pg. 602-605 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Conclusion of Law No. 40 | Statutory damages are an equitable remedy and may be decided by the Court. *See Two Plus Two Pub., LLC v. Jacknames.com*, 572 F. App'x. 466, 467 (9th Cir. 2014); *Acad. Of Motion Picture Arts & Scis. V. GoDaddy, Inc.*, No. CV 10-3738-AB, 2015 WL 12697732, at *4 (C.D. Cal. Apr. 10, 2015). | Pg. 605-609 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 41 | Defendants' cybersquatting was willful and egregious. Defendants intentionally infringed Yuga Labs' BAYC Marks. *See* SJ Order at 12. Moreover, "Defendants acted with a bad faith intent to profit" from Yuga Labs' marks, including by "register[ing] multiple domain names—https://rrbayc.com/, https://apemarket.com/, and pages within OpenSea and Foundation—knowing that they were identical or confusingly similar to the BAYC Marks" and by "register[ing] their domains . . . for commercial gain to divert customers from purchasing BAYC NFTs." *See id*. at 15; JTX-670; JTX-677. These circumstances support Yuga Labs' request for $200,000 in statutory damages. *See Belkins*, 2010 WL 11597623, at *11. | Pg. 609-617 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Conclusion of Law No. 42 | Defendants' bad-faith litigation conduct also evidences their contempt of the Court. Despite the Court finding Defendants liable for cybersquatting, they continued to use and promote the rrbayc.com domain to advertise their infringing RR/BAYC NFTs. Defendants' disregard for the authority of this Court and its proceedings warrants a high statutory damages award, given the policy interest in deterring such wrongful and sanctionable conduct. *See infra* Section III.C; *St. Luke's Cataract and Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009); *Verizon Cal. Inc. v. OnlineNIC, Inc.*, No. C 08-2832, 2009 WL 2706393, at *6 (C.D. Cal. Jan. 3, 2013). | Pg. 617-619 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 43 | Therefore, Yuga Labs is entitled to the maximum amount of $200,000 in statutory damages for Defendants' cybersquatting. | Pg. 619-620 |
| Plaintiff's Disputed Post Trial Conclusion of | Yuga Labs is entitled to injunctive relief. SJ Order at 13, 15. | Pg. 620-625 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Law No. 44, line 14:24 | | |
| Plaintiff's Disputed Post Trial Finding of Fact No. 45, lines 15:8-10 | Defendants have presented no persuasive argument or evidence rebutting that presumption. Moreover, Defendants' infringing conduct caused irreparable injury to Yuga Labs by hindering its ability to control its reputation and brand. *See*, e.g., JTX-722 ¶¶11, 12; Dkts. 392 at 95:17-99:7; 340 ¶16-17; *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir.2001). | Pg. 625-631 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 46, lines 15:13-14 | Monetary damages are inadequate to compensate for the irreparable injury. | Pg. 631-635 |
| Plaintiff's Disputed Post Trial Finding of Fact No. 46, Lines 15:20-16:3 | Here, money alone cannot remedy Yuga Labs or extinguish the ongoing harm and the continued threat that Defendants will repeat their fraud. Ms. Kindler's testimony corroborated this point. One potential measure of damages assessed was the cost for Yuga Labs to purchase the infringing NFTs and | Pg. 635-642 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | remove them from the market. However, her calculations showed that a "hypothetical buyback effort is not economically feasible" because some RR/BAYC NFT holders will demand prices beyond market value, and other likely holdouts will not give Yuga Labs an "opportunity [] to go back and just purchase the infringing NFTs." Dkt. 392 184:17-185:4. And Defendants' conduct suggests that they will continue to harm Yuga Labs. *See, e.g.,* JTX-1048, JTX-1315, JTX-1613, JTX-1615; Dkt. 342 ¶¶76-77, 79. In the absence of a permanent injunction, Yuga Labs is likely to be exposed to further irreparable harm. | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 47, lines 16:4-6 | Third, the balance of hardships weighs heavily in Yuga Labs' favor. Yuga Labs has a strong interest in being protected from Defendants' unlawful conduct that continues to harm its reputation and goodwill. | Pg. 642-643 |
| Plaintiff's Disputed Post Trial | Injunctive relief will serve the public interest by preventing consumer confusion, and it will vindicate the Lanham Act by protecting Yuga | Pg. 643-649 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Conclusion of Law No. 48 | Labs' trademark rights against Defendants' continued infringement. *See Am. Rena Int'l Corp. v. SisJoyce Int'l Co.*, 534 F. App'x. 633, 636 (9th Cir. 2013); Dkts. 342 ¶¶62, 78, 79; 392 at 100:6-14; 136:5-18; 138:6-139:11. | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 49 | Accordingly, Yuga Labs has met all four requirements for a permanent injunction against Defendants to prevent them from infringing Yuga Labs' trademarks and otherwise deceiving the public by impersonating or claiming a false association with Yuga Labs. | Pg. 649-650 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 50 | An injunction ordering Defendants to transfer domain names and social media accounts to remedy their trademark infringement and cybersquatting is an appropriate form of relief. *See* 15 U.S.C. § 1116; *Smith v. Guerilla Union, Inc.*, No. CV 18-9902 DSF, 2019 WL 1517551, at *4 (C.D. Cal. Apr. 8, 2019); *Entrepreneur Media, Inc. v. Alfonso*, No. 8:21-cv-00644-DOC-(JDEx), 2021 WL 2941983, at *5 (C.D. Cal. July 12, 2021). | Pg. 650-653 |
| Plaintiff's Disputed Post | The same logic extends to the NFT smart contracts. Like domain names and social media accounts, | Pg. 654-658 |

Case 2:22-cv-04355-JFW-JEM   Document 426   Filed 10/02/23   Page 32 of 45   Page ID
#:33392

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Trial Conclusion of Law No. 52 | smart contracts give consumers confidence in the authenticity and source of digital accounts. Thus, Yuga Labs has a superior claim of title to the RR/BAYC smart contract bearing its trademarks. | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 53, lines 17:8-10, 12-14 | Defendants' infringing smart contract is the source of the infringing NFTs and immutably uses Yuga Labs' BORED APE YACHT CLUB and BAYC marks in the manufacture, sale, and promotion of the infringing RR/BAYC NFTs. *See supra* ¶¶7c, 7e, 12, 15, 23; Dkt. 392 at 59:20-60:12, 133:24-134:20, 138:6- 139:11; *see also* Dkt. 337 ¶¶2-6; Dkt. 342 ¶80; JTX-1616. Therefore, the RR/BAYC smart contract harms the perceived exclusivity of genuine BAYC NFTs, and fosters confusion, if left in the control of anyone other than Yuga Labs. | Pg. 658-667 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 54, lines 17:16-18 | Defendants retain the tool to continue their infringement. See Dkt. 337 ¶8. Thus, Yuga Labs should own the smart contract to prevent any further infringing NFTs to exist. | Pg. 667-670 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Conclusion of Law No. 55 | The terms of the permanent injunction are described in the Conclusion below. The Court finds these terms reasonable and necessary to protect Yuga Labs from irreparable harm. | Pg. 670-671 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 56 | Under the Lanham Act, the prevailing party of a Section 1125 claim is entitled to "the costs of the action." 15 U.S.C. § 1117(a). | Pg. 671-672 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 57 | Yuga Labs is the prevailing party. *See, e.g.*, SJ Order at 13, 15, 22. Thus, Yuga Labs is entitled to recover its costs. | Pg. 672-680 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 59 | Here, Yuga Labs is the prevailing party on its claims for false designation of origin and cybersquatting. *See* SJ Order at 13, 15, 22. | Pg. 680-682 |
| Plaintiff's Disputed Post | Based on the totality of the circumstances, the Court concludes that this is an exceptional case. | Pg. 682-705 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Trial Conclusion of Law No. 61 | | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 62, lines 18:19-22 | For example, Defendants intentionally infringed Yuga Labs' BAYC Marks to deceive consumers and acted with a bad-faith intent to profit from their use of the marks. SJ Order at 12, 15. This intent is evident throughout their internal communications. *See, e.g.,* JTX-801.155, JTX-801.185, JTX-801.208, JTX801.237, JTX-801.238, JTX-801.239, JTX-1574, JTX-1586. | Pg. 705-735 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 62, lines 18:23-25 | Even after the filing of this lawsuit and the SJ Order, Defendants continued to promote their infringing RR/BAYC NFTs and Ape Market. *See AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, 894 (9th Cir. 2002); *see, e.g.*, JTX-1048; Dkt. 342 ¶77. | Pg. 735-740 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 63 | Next, Yuga Labs' substantive strength in its litigating position, as evidenced in the Court's Order on Summary Judgment, stands out from the bulk of trademark cases. *See* SJ Order at 22; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d | Pg. 740-743 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | 426, 436 (9th Cir. 2017). Ignoring the clear strength of Yuga Labs' case, Defendants relentlessly advanced frivolous legal theories (e.g., calling RR/BAYC NFTs an "art" project, arguing Yuga Labs abandoned its rights to the BAYC Marks, a frivolous counterclaim for declaratory judgment of no defamation, etc.) that were rendered moot and irrelevant by multiple orders from the Court (*see, e.g.*, Dkt. 62 and SJ Order). Defendants' repeated attempts to re-litigate issues already addressed and rejected by the Court unnecessarily complicated litigation and make this an exceptional case. See *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x. 674, 676 (9th Cir. 2020). | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 64 | Additionally, Defendants and their counsel have engaged in a pattern of unreasonable and obstructive litigation conduct that crossed the line from advocacy into bad faith. *See supra* ¶¶27. Such obstructive and antagonistic conduct supports a finding that this is an exceptional case. *See Jackson* | Pg. 743-754 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | *v. Gaspar*, No. 2:19-CV10450-DOC, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022). | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 65, lines 19:16-18 | And Defendants' statements on Twitter about Yuga Labs and its counsel throughout litigation (*see, e.g.*, Dkts. 149-50, 149-51) were egregious and far exceeded the bounds of acceptable conduct. *See Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator, 392 F.3d 248, 263-64 (7th Cir. 2004).* | Pg. 754-758 |
| Plaintiff's Disputed Post Trial Conclusion of Law 65, lines 19:20-23 | Moreover, even after representing numerous times to the Court that they would not do so, Defendants introduced trial declarations and gave live trial testimony to make irrelevant and prejudicial claims regarding the same inflammatory material that the Court has repeatedly found to be immaterial to this litigation. *See*, e.g., Dkt. 395 n.1. | Pg. 758-760 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 66 | Therefore, Yuga Labs is entitled to its reasonable attorneys' fees. | Pg. 760-765 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Conclusion of Law No. 67 | The Copyright Act provides for the award of full costs and reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505. | Pg. 766-773 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. 68, lines 20:5-7 | Accordingly, because Yuga Labs is the prevailing party on Defendants' copyright counterclaims, it is entitled to its full costs and fees for those claims. | Pg. 773-777 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. IV Conclusion | For the reasons explained above, it is hereby ORDERED THAT Defendants pay to Plaintiff: 1. $1,375,361.92 in Defendants' profits; 2. $200,000 in statutory damages; 3. Attorneys' fees; 4. Costs; and 5. Pre- and post-judgment interest. The amount of Yuga Labs' fees and costs shall be determined after Yuga Labs files a separate fee application no later than thirty (30) days from the date of this order and judgment. | Pg. 777-794 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Conclusion of Law No. IV.1 | Defendants, their agents, employees, and attorneys, and anyone in active concert or participation with Defendants, their agents, employees, and attorneys, are hereby permanently restrained and enjoined from, directly or indirectly, or authorizing or assisting any third-party to engage in: a. Manufacturing, minting, issuing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, loaning, renting, or otherwise disposing of the RR/BAYC NFTs (except as provided in this Judgment) and any other products or merchandise related to the RR/BAYC NFTs, including without limitation, listing the RR/BAYC NFTs or related products or merchandise for sale on any marketplace, and/or collecting royalties in connection with the RR/BAYC NFTs; b. Using in any manner any logo, trade name, trademark, or designation confusingly similar to any of the BAYC Marks or any other Yuga Labs source identifier, alone or in combination with other words or designs, as a trademark, trade name | Pg. 794-801 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | component, or otherwise, to market, advertise, promote, or identify any good and/or service not produced, offered, or authorized by Yuga Labs, or to falsely represent or have the effect of falsely representing that the goods or services of any Defendant or of others are sponsored by, authorized by, or in any way associated with Yuga Labs, or to otherwise unfairly compete with Yuga Labs in manufacturing, selling, offering for sale, distributing, or advertising goods or services; c. Registering, owning, using, or trafficking any other website, domain name, e-commerce page or account, digital marketplace page or account, licensing business or other business, or any entity or store whose name or d.b.a. confusingly uses and/or incorporates any of the BAYC Marks, or includes "BAYC", "Bored Ape", or "Yuga" or any other Yuga Labs source identifier, or that is confusingly similar to any of the BAYC Marks, or that is calculated to or reasonably likely to confuse consumers into believing that Defendant is Yuga | |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | Labs, or is in any manner associated or connected with Yuga Labs when it is not;<br><br>d. Registering, owning, using, or trafficking any social media account, including but not limited to www.discord.com or www.twitter.com account(s), that purports to originate from Yuga Labs, or to be sponsored or licensed by, or affiliated with Yuga Labs or uses and/or incorporates any portion of the BAYC Marks within its name, when it is not;<br><br>e. Using the infringing "RR/BAYC" and "APE MARKET" marks on social media platforms to facilitate the manufacture, circulation, sale, transfer, marketing, advertising, promoting, and/or renting of RR/BAYC NFTs or related goods or services;<br><br>f. Providing any benefits to holders of the RR/BAYC NFTs, such as airdrops, or otherwise creating incentives for third parties to sell, purchase, trade, transfer, loan, rent, and/or profit from RR/BAYC NFTs.<br><br>g. Further infringing any BAYC Mark and/or any other Yuga Labs source identifier; | |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Conclusion of Law No. IV.2 | 2. Within fourteen (14) days after entry of this Order, Defendants shall:<br>a. Transfer to Yuga Labs, including by facilitating the transfer of rights with any necessary third-party host website, registrar, or other entity, rrbayc.com, apemarket.com, the @ApeMarketplace Twitter account, and the RR/BAYC smart contract (0x2EE6AF0dFf3A1CE3F7E3414C52c48fd50d73691e); together with all codes, passwords, credentials, or other information necessary for Yuga Labs to fully and solely access and operate the same;<br>b. If Defendants own any RR/BAYC NFT, they shall destroy (e.g., "burn") that NFT or provide it to Yuga Labs to burn;<br>c. Except as provided in subsections (a) and (b) of this section, destroy any other infringing materials, including NFTs, articles, documents, software, promotional items, or advertisements in their possession or control using any BAYC Mark or any other mark confusingly similar with the BAYC Marks; | Pg. 801-809 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| | d. To give practical effect to this Order, any third-party host website, registrar, or other entity related to any of the domains, social media account, or digital accounts subject to this Order shall, within fourteen (14) days of receipt of this Order, transfer or otherwise assign those subject domains, social media accounts, or digital accounts to Yuga Labs if Defendants have not already done so. | |
| | e. Contact by e-mail, text, or other written form of communication all persons to whom Defendants gave, sold, issued, or distributed a RR/BAYC NFT, and provide each of those persons with solely a copy of this Order; | |
| | f. Airdrop to all RR/BAYC NFT holders a copy of this Order. | |
| Plaintiff's Disputed Post Trial Conclusion of Law No. IV.3 | 3. Upon entry of this Order, Defendants shall be deemed to have actual notice of the issuance and terms of the permanent injunction, and any act in violation of any of the terms of the permanent injunction may be considered and prosecuted as contempt of Court, and such other, further relief this Court deems just and proper. | Pg. 809-810 |

| Finding of Fact & Conclusion of Law | Statement | Citation (D.I. 240) |
|---|---|---|
| Plaintiff's Disputed Post Trial Conclusion of Law No. IV.4 | 4. Within thirty (30) days after entry of this Order, Defendants shall file with the Court and serve upon Yuga Labs' counsel a declaration under oath setting forth in detail the manner and form in which Defendants have complied with this Order. | Pg. 810-812 |
| Plaintiff's Disputed Post Trial Conclusion of Law No. IV.5 | 5. This Court shall retain jurisdiction over this action for the purpose of implementing and enforcing this injunction. | Pg. 812-813 |

Dated: October 2, 2023

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on October 2, 2023.

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000