Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 1, 1:24-2:1**<br><br>Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM　　　　　　　　　　　　　DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 1, lines 1:24-2:1:**

Yuga Labs has used the BAYC Marks for advertising, marketing, and promoting its products and services nationwide through multiple platforms, including the BAYC website, NFT marketplaces, and social media. SJ Order at 2; Dkt. 342 ¶¶4-33; JTX-607; JTX-608; JTX-1302; JTX-1306.

**Defendants' Basis of Dispute:**

The evidence at trial failed to show that Yuga has used in commerce the marks in connection with NFTs. "Use in commerce" requires that a mark be "placed in any manner on the goods or their containers or displays associated therewith." *Social Techs. LLC v. Apple Inc.*, 4 F.4th 811, 817 (9th Cir. 2021). The cited portion of Greg Solano's Declaration does not contain any testimony relating to placing the asserted marks on any BAYC NFTs, BAYC NFT containers (which do not exist), or displays associated with BAYC NFTs. The cited exhibits similarly fail to show "use in commerce." JTX-607 is a webpage that generally discusses Yuga and does not contain any BAYC NFTs or displays associated with any BAYC NFT. JTX-608 is the webpage for the Bored Ape Yacht Club, which also does not contain BAYC NFTs, has not been used to sell BAYC NFTs since April 30, 2021, and does not show any displays associated with BAYC NFTs that contain any of the asserted marks within the display. JTX-1302 is the Bored Ape Yacht Club Twitter page and JTX-1306 is the Yuga Twitter page, both of which do not contain BAYC NFTs or any display associated with BAYC NFTs that contain any of the asserted marks within the display.

The evidence at trial also failed to establish "that such use has continued to the present," another condition of "use in commerce." *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005); *see Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820-21 (9th Cir. 1996) (continuous use applies to unregistered trademarks). If the marks were ever used for NFTs, the usage was not "maintained without interruption" because Yuga has not sold a single BAYC NFT since May 1, 2021. Berger Decl. ¶ 38; *see Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974).

Yuga's activities associated with BAYC NFTs also cannot form the basis for a "use in commerce" claim because the sale of BAYC NFTs were illegal under 17 U.S.C. § 77e and thus not a lawful use in commerce. See *Kiva Health Brands v. Kiva Brands, Inc.*, 402 F. Supp. 3d 877, 888 (N.D. Cal. 2019) ("[O]ne cannot claim first use based on an illegal product"); *S. Cal. Darts Ass'n v. Saffina*, 762 F.3d 921, 931 (9th Cir. 2014) ("[O]nly *lawful* use in commerce can give rise to trademark priority"). BAYC NFTs were unregistered investment vehicles, with a roadmap (created by Yuga) promising purchasers an expectation of future profits by (1) stating that Yuga was "in this for the long haul" and (2) identifying future benchmarks such liquidity polls that would allow BAYC NFT holders to treat their NFTs as investments. JTX-608. Yuga also promised purchasers an expectation of future profits by promoting its open-source IP business model, which attracted investors such as Samsung. *See* Hickman Decl. ¶¶ 23-28, 34-39 (Dkt.345). These activities make clear that BAYC NFTs, like other similar collections launched around the same time, were unregistered securities under 17 U.S.C. § 77e. *See, e.g.*, *Friel v. Dapper Labs, Inc.* -- F. Supp. 3d --, 2023 WL 2162747 at *22 (S.D.N.Y. 2023) (rejecting motion to dismiss claim because an NFT is a security). This is precisely why there are wide reports of an SEC investigation and a securities fraud class action against Yuga. Cahen Decl. ¶ 75 (Dkt. 344).

Yuga also incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); see also Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in Sienze v Kutz, the Court held that although **aspects** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. See No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling on Yuga's "use in commerce" applies to only the issue of infringement and is not adequate support for Yuga's "use-in commerce" as applied to availability of disgorgement as a remedy (including Defendants' mental state as applied to disgorgement), apportionment, and an exceptional case analysis.

Yuga also relies on the unreliable Declaration of Greg Solano to argue that Yuga owns the asserted marks. Greg Solano's testimony is not credible given the many false and misleading statements contained in his declaration, as well as his repeated impeachment at trial. For example, Mr. Solano was also forced to concede on cross examination that his sworn declaration included a false statement claiming that "Defendants continue to receive royalties or creator fees from sales on secondary marketplaces." Trial Tr. [Solano] 48:15-49:4. Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman

would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could.  You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION:  Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER:  I don't know.' Was that your testimony at your deposition? A Yes." ); *id*. at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION:  Do you know whether Ape Market exists? 'ANSWER:  I don't recall.' Were you asked that question, and did you give that answer? A Yes.").

**Plaintiff's Response:**

Defendants' objection should be rejected because (1) the objection seeks to relitigate issues already adjudicated by the Court, (2) the record shows that Yuga Labs uses the BAYC Marks in commerce, and (3) Defendants failed to impeach Mr. Solano's accurate testimony.

**The Court's Summary Judgment Order Establishes Liability:** Defendants' objection improperly disputes facts already adjudicated in the Court's Summary Judgment Order (Dkt. 225).  In that order, the Court held that Yuga Labs owns its

1 BAYC Marks, that NFTs are goods for the purpose of the Lanham Act, that Yuga
2 Labs used those marks in commerce, and that Yuga Labs has not abandoned its marks.
3 *Id.* at 6-10.  The Court also held that "Defendants have admitted that they intentionally
4 used the BAYC Marks in their RR/BAYC NFTs." *Id.* at 11.  The Court "easily
5 conclude[d]" that Defendants' use of identical marks, on identical products, in
6 identical markets supported a finding of a likelihood of confusion.  *Id.* at 10-13.  That
7 order establishes the matters adjudicated therein for purposes of this case.  Fed. R.
8 Civ. P. 56(g) (district courts partially adjudicating case on a summary judgment
9 motion may "enter an order stating any material fact — including an item of damages
10 or other relief — that is not genuinely in dispute and treating the fact as established in
11 the case"); accord *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods,*
12 *Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011); *Singh v. George Washington Univ.*
13 *Sch. Of Med. & Health Scis.*, 508 F.3d 1097, 1106 (D.C. Cir. 2007) ("Facts found on
14 partial summary judgment are taken as established at trial.").

15 Defendants did not move the Court to reconsider its holdings.  Nevertheless,
16 Defendants refuse to accept the Court's order, unnecessarily burdening the Court and
17 Yuga Labs by attempting to relitigate these issues at trial and in post-trial filings as if
18 the Court's order does not exist.  Defendants' tactics are inconsistent with the very
19 purpose of a partial summary judgment order, which is "intended to avoid a ***useless***
20 ***trial of facts and issues over which there was really never any controversy*** and
21 which would tend to confuse and complicate a lawsuit." *Peliculas Y Videos*
22 *Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d
23 1131, 1133 (C.D. Cal. 2004) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769
24 n.3 (9th Cir.1981)) (emphasis added).  Defendants' authorities do not support their
25 position.  See *Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3
26 (E.D. Cal. Mar. 25, 2019) ("evidence concerning issues resolved at summary
27 judgment is ***generally not relevant and should be excluded***" at trial) (emphasis
28

1  added); *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (discussing applicability of the law of the case doctrine where a case is assigned to a new judge).

"The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 n.9 (9th Cir. 2009) (alteration and citation omitted). Defendants' repeated attempts to ignore or undo the Court's Order "speeding up litigation" is a dilatory and abusive litigation tactic that has unjustifiably increased the cost of resolving this case.

Nevertheless, Defendants forced the Court and the parties to re-litigate this decided issue. As discussed below, the evidence the Court can consider following the trial amply supports this factual finding. Thus, the outcome on this issue after trial is no different than it was after Yuga Labs' Motion for Summary Judgment.

**Yuga Labs Uses Its Marks In Commerce:** The Court has already determined that Yuga Labs used its marks in commerce. SJ Order (Dkt. 225) at 8. Defendants have admitted that Yuga Labs has proven all of the elements of its false designation of origin claim. Dkt. 320-1 at 13. Indeed, Yuga Labs has marketed its products in the exact same marketplaces as Defendants' infringing products. SJ Order (Dkt. 225) at 12 ("Yuga and Defendants promoted and sold their NFTs through the same online NFT marketplaces – OpenSea and x2y2.").

Although not at issue at trial, in her trial declaration, Ms. Muniz confirmed the Court's finding. Muniz Decl. (Dkt. 340) at ¶ 7 ("The BAYC brand is the tentpole brand for Yuga Labs."); *id.* ("Yuga Labs' marketing of the BAYC brand includes, among other things, its operation of social media accounts, hosting community events, and its brand collaboration and high-profile partnerships"). Mr. Solano also testified to Yuga Labs' use of the BAYC brand in commerce. Solano Decl. (Dkt. 342) at ¶ 16 ("Part of the reason Yuga Labs was able to reach such a large audience is due to

1 significant effort, time and money we spent promoting the BAYC brand."). Even a
2 mere cursory scan of the Bored Ape Yacht Club Twitter page shows countless
3 instances of Yuga Labs marketing and promotion using the BAYC Marks and brand.
4 *See* JTX-1233.

5 Finally, Defendants have already stipulated that Yuga Labs owns the BAYC
6 Marks and the Court has already found that Yuga Labs' owns the BAYC Marks. SJ
7 Order (Dkt. 225) at 6; Dkt. 320-1 at 2-3. The Court has also rejected Defendants'
8 unclean hands affirmative defense. SJ Order (Dkt. 225) at 8 (finding that Defendants'
9 allegations regarding securities violations did not relate to the trademark dispute
10 between the parties.).

11 **Mr. Solano Is A Credible Witness:** Mr. Solano's testimony is credible. The
12 vast majority of Mr. Solano's testimony detailing the harm to Yuga Labs because of
13 Defendants' intentional and repeated use of the BAYC Marks is undisputed and went
14 unchallenged by Defendants. Indeed, many of Defendants' objections to Mr. Solano's
15 trial declaration based on a purported lack of personal knowledge were overruled at
16 trial, "including JTX-1," Mr. Lehman's declaration. Trial Tr. 12:10-12. This is
17 because Mr. Solano was referring to Defendants' own words promoting their
18 infringement.

19 Nevertheless, the arguments Defendants raise are themselves meritless. First,
20 Mr. Solano's testimony that Defendants collected royalties off secondary sales was
21 supported by Defendants' own testimony, Ms. Kindler's testimony, and the possibility
22 of further royalties on LooksRare or other new marketplaces if Defendants continued
23 to control the RR/BAYC smart contract. Ripps Depo. Designations (Dkt. 396) at
24 89:19-21; Cahen Depo. Designations (Dkt. 395) at 209:2-3; Kindler Decl. (Dkt. 338)
25 at ¶ 23. Mr. Solano testified truthfully based on the information available to him at
26 the time of his declaration and trial.

Second, Mr. Solano's testimony that Defendants' activities constitute a business venture is amply supported by Defendants' own actions that Mr. Solano personally observed. It does not matter that Mr. Lehman agreed to call it a business venture. But, he did. Defendants' attempts to discredit Mr. Solano's reliance on Mr. Lehman's declaration by arguing that Mr. Solano did so without reading his entire deposition are without merit. Mr. Lehman testified to the accuracy of his declaration, regardless of how he may have felt about the process of being sued for his role in Defendants' scam. Lehman Depo. Designations (Dkt. 404-2) at 124:5-9. The veracity of Mr. Lehman's declaration was also corroborated by the consent judgment entered against him. JTX-621. The Lehman declaration stands on its own, and Mr. Solano had clearly reviewed the declaration based upon his testimony about its contents in his own trial declaration. *See, e.g.*, Solano Decl. (Dkt. 342) at ¶ 71 ("In his declaration under oath, Defendants' co-conspirator Mr. Lehman described Mr. Ripps' commercialization and sale of RR/BAYC NFTs as a 'business venture' that 'was expected to make money by selling RR/BAYC NFTs and by potentially generating transaction fees from the sale of NFTs on ApeMarket.'").

Third, Defendants fail to impeach Mr. Solano's statement at Trial Tr. 32:19-33:11 regarding Bored Ape V3, because the "Bored Ape V3" referenced in Mr. Solano's deposition is different than the "Bored Ape Yacht Club V3" at issue in the cited line of trial testimony. Mr. Solano cannot be impeached by reference to deposition testimony covering an entirely different topic. To be clear, the quoted deposition testimony relates to a Twitter page titled "@BoredApeV3," which Mr. Ripps claims he does not control, and which was not at issue at trial. Solano Depo. (Dkt. 271) at 151:2-152:24. But, the cited trial testimony, discusses a section of Mr. Solano's declaration relating to Mr. Ripps naming his NFT collection "Bored Ape Yacht Club V3." *Cf.* Trial Tr. at 31:6-33:11.

Finally, Defendants fail to impeach Mr. Solano's statement at Trial Tr. 34:9-19 regarding ApeMarket.com. As he explained, Mr. Solano "review[ed] [] the webpages generated by running the source code for the planned ApeMarket.com website," informing his response that Yuga Labs obtained the code from Mr. Lehman. Solano Decl. ¶ 49. Mr. Solano cited the referenced source code in connection with this topic and based his knowledge on these exhibits. *Id.*; JTX-806–JTX-809. Those webpages were not generated from the source code produced by Mr. Lehman until **after** Mr. Solano's deposition. Mr. Solano gained knowledge of these pages, and he was able to truthfully testify at trial as to that knowledge. Defendants did not ask Mr. Solano where or how he came to his knowledge, but he attaches the basis for that knowledge to his declaration. Solano Decl. (Dkt. 342) ¶ 49 (citing JTX-806–JTX-809, to which Defendants did not object). Defendants fail to impeach Mr. Solano's accurate knowledge.

**Defendants' Reply:**

Yuga's response completely ignores the central issue raised by Defendants' objection: that Yuga has not used the BAYC marks in commerce in connection with *NFTs* because (1) Yuga has not sold a BAYC NFT since May 1, 2021, and therefore does not have "continuous" use and (2) Yuga has not shown "lawful" use in commerce given that BAYC NFTs are illegal, unregistered securities under 17 U.S.C. § 77e. Additionally, as explained above, the evidence Yuga cites in its proposed finding of fact does not show use of the BAYC Marks on a BAYC NFT or any associated display.

*First*, Defendants do not dispute that this Court has entered summary judgment in this case. However, in their summary judgment briefing, Defendants made clear that there is a material evidentiary dispute on whether Yuga actually owns the BAYC marks (including due to lack of "use in commerce") and Defendants reserve the right to raise this issue on appeal and in all other proceedings involving the BAYC marks.

1  And while ownership of the marks is not an issue relevant to the remedies trial in this
2  case, Yuga has for some reason affirmatively raised the issue and asked the Court to
3  unnecessarily make a finding of fact regarding "use in commerce" in a trial that was
4  limited to determination of remedies. Yuga's decision to affirmatively raise the issue
5  of "use in commerce" has forced Defendants to re-articulate their position for
6  preservation purposes.

7  Defendants are not asking that this Court reconsider its holding, because this
8  under the law of the case doctrine this Court has not made a holding on "use in
9  commerce" for purposes of determining availability of disgorgement as a remedy
10 (including Defendants' mental state as applied to disgorgement), apportionment, and
11 an exceptional case analysis. The "law of the case doctrine does not apply to pretrial
12 rulings **such as motions for summary judgment**." Shouse v. Ljunggren, 792 F.2d
13 902, 904 (9th Cir. 1986) (emphasis added); see also Peralta v. Dillard, 744 F.3d 1076,
14 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't
15 bind district judges for the remainder of the case. Given the nature of such motions, it
16 could not be otherwise."). For example, in Sienze v Kutz, the Court held that although
17 *aspects* of an issue were decided at summary judgment for one purpose, the summary
18 judgment order did resolve the issue generally or as to other topics. See No. 1:17-CV-
19 0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that
20 evidence of initial police contact was relevant as background, but not to the already
21 decided issue that initial contact was not excessive force). This case is just like
22 *Sienze*: the summary judgment ruling on use in commerce for the asserted marks is
23 limited to infringement and cannot be applied more broadly. Again, Defendants make
24 clear that the "use in commerce" dispute is an unnecessary issue that Yuga did not
25 need to raise at this stage in this case. But to the extent the Court addresses this issue,
26 it cannot rely on the summary judgment order and the evidence at trial weighs against
27 a finding of ownership.
28

1   *Second*, the evidence at trial showed that Yuga has failed to satisfy the "use in commerce" requirement for trademark ownership. In addition to Yuga's failure to cite evidence showing use of the asserted marks directly on BAYC NFTs or associated display, the evidence also affirmatively shows that any use by Yuga (1) has not continued to the present and (2) was not lawful.

The evidence at trial did not establish "that such use has continued to the present," another condition of "use in commerce." *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005); *see Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820-21 (9th Cir. 1996) (continuous use applies to unregistered trademarks). If the marks were ever used for NFTs, the usage was not "maintained without interruption" because Yuga has not sold a single BAYC NFT since May 1, 2021. Berger Decl. ¶ 38; *see Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974).

Further, Yuga's activities associated with BAYC NFTs also cannot form the basis for a "use in commerce" claim because the sale of BAYC NFTs were illegal under 17 U.S.C. § 77e and thus not a lawful use in commerce. *See Kiva Health Brands v. Kiva Brands, Inc.*, 402 F. Supp. 3d 877, 888 (N.D. Cal. 2019) ("[O]ne cannot claim first use based on an illegal product"); *S. Cal. Darts Ass'n v. Saffina*, 762 F.3d 921, 931 (9th Cir. 2014) ("[O]nly *lawful* use in commerce can give rise to trademark priority"). BAYC NFTs were unregistered investment vehicles, with a roadmap (created by Yuga) promising purchasers an expectation of future profits by (1) stating that Yuga was "in this for the long haul" and (2) identifying future benchmarks such liquidity polls that would allow BAYC NFT holders to treat their NFTs as investments. JTX-608. Yuga also promised purchasers an expectation of future profits by promoting its open-source IP business model, which attracted investors such as Samsung. *See* Hickman Decl. ¶¶ 23-28, 34-39 (Dkt.345). These activities make clear that BAYC NFTs, like other similar collections launched around

the same time, were unregistered securities under 17 U.S.C. § 77e.  See, e.g., *Friel v. Dapper Labs, Inc.* -- F. Supp. 3d --, 2023 WL 2162747 at *22 (S.D.N.Y. 2023) (rejecting motion to dismiss claim because an NFT is a security).  This is precisely why there are wide reports of an SEC investigation and a securities fraud class action against Yuga.  Cahen Decl. ¶ 75 (Dkt. 344).

Yuga did not present any evidence rebutting (1) Yuga's failure to use BAYC NFTs in commerce after their final sale on May 1, 2021, or (2) that Yuga's BAYC NFT offering amounts to an illegal sale of unregistered securities for which there is a pending SEC investigation and an ongoing class action lawsuit for securities fraud.

**Third,** Mr. Solano is not a credible witness.  At trial, Mr. **Solano admitted to testifying falsely** in his sworn declaration of trial testimony when he was forced to concede on cross-examination that his sworn declaration included a false statement claiming that Defendants continue to receive royalties from sales on secondary marketplaces:

> Q.   And you understand that Mr. Ripps and Mr. Cahen have testified that they do not currently receive any royalties or creator fees from sales on secondary marketplaces; right?
>
> A.   Yes.
>
> Q.   So you don't have any basis for your statement that their profits continue to increase; correct?
>
> A.   It's my understanding that they were collecting royalties or creator fees from LooksRare for quite a while.  Although, those were supposed to be donated to charity and never were.
>
> Q.   **They don't continue to increase; correct, sir?**
>
> A.   **Correct.**
>
> Q.   **That statement, that part of your witness statement is incorrect; right?**

A. **Yes.**

Trial Tr. [Solano] 48:15-49:4 (emphasis added). Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words. Trial Tr. [Solano] 40:3-14. Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19). Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id*. at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes."). Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted. Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. In fact,

1  no one has been able to identify a single confused consumer in the entirety of this
2  case.  *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.