Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                Plaintiff,<br><br>  v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 5, lines 2:16-19**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 5, lines 2:16-19:**

Confusion was likely, in part, because of the "complexity and required sophistication to understand the blockchain and verify provenance." SJ Order at 12. Defendants were also aware of likely confusion resulting from their actions, but they still continued with their infringement. *See*, *e.g.*, JTX-801.15 (Regarding the use of unaltered BAYC Marks on the RR/BAYC Foundation page, Mr. Lehman, one of the Defendants' partners, wrote, "I mean how do they not shut this down at some point haha."); JTX-801.196 (Mr. Lehman writing, "we should not under-estimate how confusing it is" and Mr. Cahen responding, "yeah."); *see also* Dkt. 392 at 211:17-212:24.

**Defendants' Basis of Dispute:**

The evidence at trial did not show that confusion was likely.  To the contrary, As Mr. Cahen explained:

> At the time of the RR/BAYC artwork, the price of an RR/BAYC NFT was not even 1/1000th the price of a Bored Ape Yacht Club NFT.  A collector being confused about RR/BAYC would be akin to a consumer thinking they are able to purchase a Lamborghini that normally costs $300,000 for $300, which no person in their right mind would ever believe is possible.

Cahen Decl. ¶ 225 (Dkt. 344).  Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way.  Defendants included an artistic disclaimer on rrbayc.com, on which over 80% of reservations occurred, explaining the artistic intent of the project.  Ripps Decl. ¶¶ 101-103 (Dkt. 346)

1  (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Defendants also required collectors on rrbayc.com to read and click through a disclaimer acknowledging the artistic purpose of the project.  *See* Ripps Decl. ¶¶ 106-109 (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Defendants also engaged in extensive online discussion confirming and raising awareness about the satirical nature of the RR/BAYC project.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

As a result of Defendants activities, the RR/BAYC collection did not cause any actual confusion and was not likely to lead to confusion.  Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales.  Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested).  To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  Indeed, neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are aware of a single instance of confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19.  Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7 ("Q.  Now let's focus on, I think, what you were focused on.  Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").  Mr. Solano, Yuga's President, similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1.  Given Defendants public discussions, steps taken to clarify the origin and purpose of the RR/BAYC collection, and the fact that there was not even a single confused consumer confirms

that confusion was not likely nor were Defendants aware of any likelihood of confusion.

Yuga also fails to cite adequate evidence in support of its allegations. Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings *such as motions for summary judgment*." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in Sienze v Kutz, the Court held that although *aspects* of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling on likelihood of confusion applies only the issue of infringement and is not adequate support for these issues generally or as applied to availability of disgorgement as a remedy (including Defendants' mental state as applied to disgorgement), apportionment, and an exceptional case analysis.

Yuga also misleadingly cites to JTX-801. The statement at JTX-801.196 that Yuga relies on to argue that RR/BAYC was likely to cause confusion is actually discussing how to create a design for the never-released ApeMarket that would not be confusing for users of the website. *See* JTX-801-196 (Mr. Cahen wrote, "I think we could also have a label under the logo that denotes which collection you are viewing or something" and further stating "[b]ecause that's where the real importance lies[,] rrbayc truly is very important conceptual art …"). Similarly, the statement at JTX-801.15 that Yuga relies on was a question from Mr. Lehman regarding whether

RR/BAYC's page will be shut down. Mr. Cahen response shows that he did not believe there was anything wrong with the page, stating "[t]hey can't imo." JTX-801.15.

Yuga also misleadingly cites to the trial testimony of Mr. Hickman. The portion of the transcript that Yuga relies on (Trial Tr. [Hickman] 211:17-212:24) involves questions regarding Defendants desire to add a "friction step" to the never-released "ApeMarket" to ensure that the design of the website would not cause confusion. Mr. Hickman explains, "This is our attempt to make it as clear as possible. We are having discussion on how to make sure it was very clear for users." Trial Tr. [Hickman] 212:22-24.

**Plaintiff's Response:**

Defendants do not dispute that they used Yuga Labs' BAYC Marks, nor could they. Instead, they argue either that their use was not confusing or was permitted.

Defendants' objections should be rejected for the same reasons discussed *supra* ¶ 4; specifically: (1) the objection seeks to relitigate issues already adjudicated by the Court, (2) the record shows that Defendants intended to confuse consumers, (3) Defendants' commercial infringement was not protected "art," (4) Defendants intended to profit off of their infringement, (5) the record shows ample actual confusion and likelihood of confusion, (6) Defendants' "disclaimers" did not dispel likelihood of confusion, (7) the majority of the sales of Defendants' infringing NFTs did not occur on rrbayc.com, (8) Defendants did not take steps to avoid confusion, (9) Yuga Labs did not license Defendants' infringement, and Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks, (10) Defendants fail to impeach Mr. Solano's credible testimony.

Additionally, as described below, Defendants' objection should be rejected because (1) Defendants' anecdotal evidence of purported supporters does not negate the Court's finding that there was a likelihood of confusion, (2) the record shows that

1  Defendants promoted their infringing NFTs using Yuga Labs' marks in the same
2  marketplaces as Yuga Labs, and (3) Defendants were well aware that their
3  infringement would cause confusion.

4      **Defendants' Anecdotal Evidence Of Individuals Stating They Support**
5  **Defendants' Infringement Are Irrelevant And Immaterial:**  A handbag
6  counterfeiter may have allies or distributors, and those allies / distributors may even
7  profess to believe in a cause, but that does not excuse the counterfeiter's wrongdoing
8  or mitigate the likelihood of confusion in the marketplace.  See SJ Order (Dkt. 225) at
9  16 ("Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a
10 counterfeit handbag.").  And Defendants do nothing to rebut the likelihood of post-
11 sale confusion.  See *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255
12 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims
13 premised solely on post-sale confusion where a "potential purchaser, knowing that the
14 public is likely to be confused or deceived by the allegedly infringing product, []
15 choose[s] to purchase that product instead of a genuine one").  Further, confused
16 consumers are unlikely to admit that they have fallen for Defendants' scam.  As Mr.
17 Solano explained, being scammed is "super embarrassing" and consumers who were
18 tricked "weren't going to, you know, raise their hand and shout about it."  Trial Tr. at
19 54:10-16.  Nonetheless, Defendants' admission that they processed over $90,000 in
20 refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75) undermines Defendants' suggestion that
21 purchasers of their infringing NFTs were universally supportive and that no one was
22 confused.

23     **Defendants Promoted Their Infringing NFTs On The Same Marketplaces**
24 **As Yuga Labs:**  Defendants' infringing NFTs were promoted and sold in the same
25 marketplaces as genuine BAYC NFTs *without* the additional friction steps Defendants
26 allegedly contemplated for Ape Market, highlighting how the likely confusion from
27 Defendants' actions had already pervaded the secondary markets.  See Solano Decl.
28

1  (Dkt. 342) ¶ 42 ("In the case of OpenSea and LooksRare NFT marketplaces, Defendants used the BAYC Marks to sell their scam NFTs alongside authentic Yuga Labs BAYC NFTs . . . ."); Kindler Decl. (Dkt. 338) ¶ 61 ("RR/BAYC NFTs were reserved on Mr. Ripps' website, rrbayc; other RR/BAYC NFTs were sold on marketplaces such as OpenSea and Foundation which used the BAYC Marks"); *see also* JTX-29; JTX-670.  Mr. Ripps even had control over a sales page for the sale of RR/BAYC NFTs on OpenSea.  *See* Ripps Depo. Designations (Dkt. 396) at 81:3-81:14.  And yet there were no friction steps.

**Defendants Knew That Their Infringement Would Result In Confusion:** The evidence shows that Defendants knew they were infringing and creating confusion.  JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"); JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated.  A lot of people don't have the

technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker).  Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

Defendants' objection admits what Mr. Hickman's testimony says: when designing the forthcoming Ape Market to sell their infringing NFTs alongside authentic BAYC NFTs, Defendants knew affirmative "friction step[s]" would be required to prevent the obvious risk of confusion.  As Mr. Hickman told Mr. Cahen, "[t]hey are the same art."  Trial Tr. at 212:17-24.  Thus, Defendants and their partners worried over how to "make it as clear as possible" the two were different.  *Id.*  This is because selling the same products under the same marks is confusing.  And yet, Defendants' continued ahead without any changes in their sales and promotion of the RR/BAYC NFTs.

**Defendants' Reply:**

Yuga's response fails to adequately address Defendants' objections and the trial evidence that supports Defendants' objections.  For reasons provided in *supra* ¶ 4 (both in Defendants' objections and Defendants' reply in support of their objections), the evidence showed that confusion was not likely and in fact there was not a single actual RR/BAYC NFT consumer that was confused regarding the source of origin for the NFTs.  Defendants' reply in *supra* ¶ 4 similarly explains that (1) this Court's summary judgment cannot be used to support a finding of fact a trial, (2) Defendants did not intend to confuse consumers, (3) Defendants' intent was to protest and criticize Yuga, (4) the record shows ample evidence of *no* actual confusion, (5) the disclaimer was evidence of Defendants' good faith intent to protest and further

decreased any likelihood of confusion, (6) more than 80% of Defendants' sales occurred on rrbayc.com (as corroborated by Yuga's own expert), (7) Defendants took many steps to avoid confusion including through the use of an artistic statement, disclaimer, and Twitter activity critical of Yuga, (8) Yuga surrendered to the world "all IP rights" associated with the Bored Ape Yacht Club, and (9) Mr. Solano is not a credible witness given his many false statements and his admission at trial that he testified falsely.

Yuga's additional responses similarly fail to identify evidence showing that Defendants' profits were a result of confused consumers:

***First,*** Yuga effectively admits that there is no evidence of actual confused consumers and tries to explain away this gaping hole in their evidence by arguing that the world is hiding evidence of actual confusion from Yuga because it would be "super embarrassing" to admit being confused. Not only does this response lack merit, but it is also an admission that there is insufficient evidence in the record to support a finding that any sales were a result of actual confusion.

And Defendants' evidence from actual consumers of RR/BAYC NFTs is sweeping, involving hundreds of actual consumers admitting that they were not confused and supported Defendants' protest. Mr. Ripps testified in his declaration: "I received ***hundreds of letters*** thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received. Ripps Decl. ¶¶ 196-207 (uncontested) (emphasis added). At no point during trial did Yuga dispute this fact. Yuga did not present any rebuttal evidence at trial and Yuga elected to not cross-examine Mr. Ripps on this issue. Thus, the uncontested evidence at trial shows that Mr. Ripps received hundreds of letters from RR/BAYC participants expressing support for the project and its criticism.

Yuga has also failed to present evidence disputing the fact that none of these correspondences indicated that commissions or secondary sales were due to confusion. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested). Instead of addressing correspondences from collectors, Yuga attempts to point to indications of consumer confusion.

**Second,** the evidence at trial showed that Defendants did not sell RR/BAYC NFTs on the same marketplaces as Yuga. Over 80% of commissions for RR/BAYC NFTs occurred on rrbayc.com, which has never sold BAYC NFTs at any time. Ripps Decl. Dkt. 346 ¶ 110 (uncontested). The fact that over 80% of sales occurred on rrbayc.com is substantially corroborated by Yuga's own expert who admits that ***7,028 out of the total 9,415 RR/BAYC NFTs (more than 74% of sales RR/BAYC reservations) were sold through the RSVP Contract***, ***which was only available and usable through rrbayc.com***. Kindler Decl. ¶ 36 (Dkt. 338). Yuga expert also admits that the ***RSVP Contract sales amounted to 981 Eth out of 1196 Eth of Defendants' total profits (which is more than 82% of all profits)***. Kindler Decl. ¶ 40 (Dkt. 338). To note, rrbayc.com also allowed reservations for the purchase of RR/BAYC NFTs ***before the RSVP contract was ever implemented***, meaning that the actual sales on rrbayc.com is larger than the sales through the RSVP Contract alone.

The remaining reservations for RR/BAYC NFTs were made through Defendants' personal Twitter accounts, which also have never been used to sell BAYC NFTs. Ripps Decl. ¶ 111 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344). Defendants also had a Foundation page for RR/BAYC NFTs, but Yuga did not present any evidence of having a Foundation page for the Bored Ape Yacht Club at the time of the RR/BAYC project because it simply did not have a Foundation page at the time.

Yuga attempts to rebut this direct trial evidence by relying on this Court's summary judgment order. But the "law of the case doctrine does not apply to pretrial

1. rulings **such as motions for summary judgment**." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); see also *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze v Kutz*, the Court held that although **aspects** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. See No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force). This case is just like *Sienze*: even if the summary judgment order ruled on marketplace activity applies only the issue of infringement and is not adequate support for this topic as applied to availability of disgorgement as a remedy (including Defendants' mental state as applied to disgorgement), apportionment, and an exceptional case analysis.

Yuga similarly attempts to argue that Defendants sold RR/BAYC NFTs on OpenSea and LooksRare, but Yuga has pointed to absolutely no evidence of Defendants actually making any sales on either platform. In fact, Mr. Solano was cross-examined on OpenSea sales, to which he admitted that he falsely attributed Defendants with selling RR/BAYC NFTs based on documents showing that some anonymous, third-part was re-selling the NFTs:

> Let's look specifically at JTX-686, which is excerpted in your witness statement. And if we can maybe blow up what you've put there. This is one of the documents you rely on in your witness statement; right?
>
> A.  Yes.
>
> Q.  And you say that this image from JTX-686 shows Defendants using the BAYC marks to sell their NFTs alongside authentic Yuga Labs BAYC NFTs; right?

| | | |
|---|---|---|
| 1 | A. | Yes. |
| 2 | | |
| 3 | Q. | ***This side-by-side image, JTX-686, never appeared on OpenSea, did it?*** |
| 4 | | |
| 5 | A. | ***This side-by-side image, no.***  But these are two different pages that look exactly the same. |
| 6 | | |
| 7 | Q. | It never appeared – this side-by-side image never appeared on any website selling NFTs; right? |
| 8 | | |
| 9 | A. | I don't know if that's true.  But this is a crop of two different pages that look exactly the same. |
| 10 | | |
| 11 | Q. | It never appeared side-by-side, correct? |
| 12 | | MR. BALL:  Objection.  Vague |
| 13 | | |
| 14 | | THE COURT:  Overruled. |
| 15 | | THE WITNESS:  I just answered the question. |
| 16 | Q. | BY MR. TOMPROS:  ***Where did you get this image, JTX-686.*** |
| 17 | | |
| 18 | A. | ***It was prepared for us.  Counsel prepared it.*** |
| | Q. | You didn't find it on OpenSea; right? |
| 19 | | |
| 20 | A. | I did not specifically screenshot this image, no. |
| 21 | Q. | This image, the combined image like this – strike that.  It's hard to see. But if we could blow up on the right-hand side, there's a "Created By" section.  And it's hard to see, but it looks like it says – sorry, "owned by," not "created by," "Owned by Safo214"; right? |
| 22 | | |
| 23 | | |
| 24 | A. | I'll take your word for it that that's what it says. But yes, it's owned by a username. |
| 25 | | |
| 26 | Q. | ***That's not Mr. Ripps or Mr. Cahen; right?*** |
| 27 | | |
| 28 | A. | ***No.*** This had already been sold to that person by them. |

Trial Tr. [Solano] 45:12-46:24 (emphasis added).

And as for LooksRare, again, Yuga presented no evidence at trial that Defendants actually made any sales on LooksRare. Yuga is instead conflating the record regarding Defendants' receipt of limited royalties for sales conducted by third parties on LooksRare. Notably, Defendants were forced to receive these royalties because LooksRare did not honor Defendants request to shut off royalties for secondary sales until May 2023. Cahen Decl. ¶¶ 169-171 (Dkt. 344).

And finally, Yuga references a string of cites to Defendants' Twitter posts (such as JTX-683, Dkt. 163-95) in which they report news involving RR/BAYC NFTs. Reporting news on Twitter is not the sale of NFTs and Yuga is improperly attempting to conflate the two.

Yuga also falsely asserts that Mr. Ripps had control of the RR/BAYC sales page on OpenSea. But the deposition transcript that Yuga cites actual confirms that Mr. Ripps did not have page on OpenSea:

Q. Were – were RR/BAYC NFTS available for transfer on OpenSea?

A. Not by me.

Q. **But you had a page on OpenSea?**

A. **I had a page? Did I have a page? No**. Perhaps RR/BAYC collection had a page on OpenSea.

Q. And who ran that collection?

A. Who ran that collection? I did because I have the keys to the RR/BAYC.

Q. **And what did the RR/BAYC collection on OpenSea look like?**

A. **I'm not sure.**

Ripps Depo. Designations (Dkt. 396) at 81:3-81:14 (emphasis added).  Mr. Ripps at most admits that he has the keys to the digital wallet that holds the smart contract for RR/BAYC and not that he controls the OpenSea page for the RR/BAYC collection. Mr. Ripps further testified at his deposition about how he had limited say in how OpenSea would display the collection, but that he still made every effort he could to make sure the page OpenSea designed was a clear as possible:

> Q. Do you have any images of what the RR/BAYC NFT page looked like on OpenSea?
>
> A. ***I do remember at one point making the background image the banner, if you will, to say "Long Live Conceptual Art,"*** or something like that, or "You can't copy an NFT," or something along those lines, or – and ***I do remember making sure that people had a link to RRBAYC.com***, which is the artist statement at which all the RR/BAYCs – or, I would say, ***the vast majority of them were sold through RRBAYC.com.***

Ripps Depo. Designations (Dkt. 396) at 81:22-82:7 (emphasis added).

*Third,* the evidence presented at trial shows that there was not any actual confusion and that Defendants did not know of any confusion. First, to support this assertion about Defendants' knowledge of confusion, Yuga cites to documents it argues show that the Defendants intended to make a profit.  Intending to profit from your artwork is not the same thing as intending to confuse consumers and one does not weigh toward the other.

Further, the evidence at trial showed that Defendants were not primarily motivated by profits.  Defendants explained that profits were a concern, but not the primary motive of the project.  Cahen Decl. ¶ 156 (Dkt. 344).  Profits helped offset costs and sustain Defendants' artistic project.  Cahen Decl. ¶ 173 (Dkt. 344). Defendants' decisions surrounding refunds and royalties confirm that they were not primarily motivated by profits. Ripps Decl. ¶ 116-118 (uncontested) (Dkt. 346);

1  Cahen Decl. ¶ 158-171 (Dkt. 344).  The RR/BAYC project allowed for a full refund,
2  for any reason.  Ripps Decl. ¶ 119 (uncontested) (Dkt. 346); Cahen Decl. ¶ 159 (Dkt.
3  344).  Additionally, the Defendants' declined taking royalties on transfers of
4  RR/BAYC NFTs whenever possible.  Ripps Decl. ¶¶ 116-118 (uncontested) (Dkt.
5  346); Cahen Decl. ¶¶ 166-171 (Dkt. 344).
6       Additionally, as Defendants credibly testified, Mr. Ripps and Mr. Cahen are not
7  aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346)
8  (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).
9  Buttressing this fact, Yuga's founders were also not aware of a single instance of
10  actual confusion.  Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now
11  let's focus on, I think, what you were focused on. Yuga Labs has been unable to
12  identify even[] a single person who purchased an RR/BAYC believing it to be
13  sponsored by Yuga Labs; right? A Correct.").
14       Further, the evidence that Yuga cites does not rebut the overwhelming evidence
15  of Defendants' intent to protest and criticize and Yuga instead relies on
16  mischaracterizing and taking out of context evidence.  For example, Yuga repeatedly
17  cites to various pages of JTX-801 to argue that Defendants were aware of the alleged
18  confusion.  But those pages are internal discussion about the design of the ApeMarket
19  website to ensure that users of apemarket.com were not confused by the website
20  design.  Yuga even cross-examined Mr. Hickman about these communications and
21  received the same explanation: "This is our attempt to make it as clear as possible.
22  We are having discussion on how to make sure it was very clear for users."  Trial Tr.
23  [Hickman] 212:22-24.
24       Yuga similarly takes out of context exhibits such as JTX-44.00002 to
25  incorrectly argue that that Defendants were knowingly causing confusion.  In JTX-
26  44.00002, Mr. Hickman stated that "people believe the tokenId should match the RR
27  ID.  that is where they get confused."  This statement is not discussing confusion
28

1  regarding the source of origin for RR/BAYC NFTs.  Instead, it is discussing how the
2  RR/BAYC collection used a different numbering system that BAYC NFTs, and that
3  consumers expected the numbers match as a shorthand manner of cataloguing the
4  digital pointers contained within the RR/BAYC NFTs.  That is, due to the different
5  numbering system, some consumers were confused as to which RR/BAYC NFT they
6  received but they understood very well that they received an NFT created by Mr.
7  Ripps that protests and criticizes Yuga.

9       The record clearly shows that Defendants did not know that there were any
10 confused consumers and further there is no evidence presented that anyone was
11 actually confused.  *See* Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen]
12 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial
13 Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think,
14 what you were focused on. Yuga Labs has been unable to identify even[] a single
15 person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs;
16 right? A Correct.").