Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>               Plaintiff,<br><br>  v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>               Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 6, lines 2:25-27**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 6, lines 2:25-27:**

Defendants knew that "at least some purchasers of their RR/BAYC NFTs would have difficulty identifying the RR/BAYC NFTs as a different and distinct product from Yuga's BAYC NFTs." SJ Order at 13; *see also* JTX-801.185 (Mr. Cahen writing, "these users are too unsophisticated by far"); Dkt. 395 (Cahen Depo. Designations) at 59:7-59:16.

**Defendants' Basis of Dispute:**

The evidence at trial did not show that Defendants knew purchasers would have difficulty identifying RR/BAYC NFTs. Defendants unrebutted testimony confirms that Defendants understood that confusion was not likely. As Mr. Cahen explained:

> At the time of the RR/BAYC artwork, the price of an RR/BAYC NFT was not even 1/1000th the price of a Bored Ape Yacht Club NFT. A collector being confused about RR/BAYC would be akin to a consumer thinking they are able to purchase a Lamborghini that normally costs $300,000 for $300, which no person in their right mind would ever believe is possible.

Cahen Decl. ¶ 225 (Dkt. 344). Moreover, Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. Defendants included an artistic disclaimer on rrbayc.com, on which over 80% of reservations occurred, explaining the artistic intent of the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Defendants also required collectors on rrbayc.com to read and click through a disclaimer acknowledging the artistic purpose

of the project.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Defendants also engaged in extensive online discussion confirming and raising awareness about the satirical nature of the RR/BAYC project. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

     As a result of Defendants activities, the RR/BAYC collection did not cause any actual confusion and was not likely to cause confusion.  Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested).  To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  Indeed, neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are aware of a single instance of confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19.  Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7 ("Q.  Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").  Mr. Solano, Yuga's President, similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1. Given Defendants public discussions, steps taken to clarify the origin and purpose of the RR/BAYC collection, and the fact that there was not even a single confused consumer confirms that Defendants reasonably believed that the RR/BAYC collection would not cause confusion.

1	Yuga also fails to cite adequate evidence in support of its allegations.  Yuga
2	incorrectly relies on the law of the case doctrine by citing to this Court's summary
3	judgment order.  The "law of the case doctrine does not apply to pretrial rulings **such**
4	**as motions for summary judgment**." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th
5	Cir. 1986) (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th
6	Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind
7	district judges for the remainder of the case.  Given the nature of such motions, it
8	could not be otherwise.").  For example, in *Sienze v Kutz*, the Court held that although
9	***aspects*** of an issue were decided at summary judgment for one purpose, the summary
10	judgment order did resolve the issue generally or as to other topics.  *See* No. 1:17-CV-
11	0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that
12	evidence of initial police contact was relevant as background, but not to the already
13	decided issue that initial contact was not excessive force).  This case is just like
14	*Sienze*: the summary judgment ruling on Defendants knowledge applies only the issue
15	of infringement and is not adequate support for these issues generally or as applied to
16	availability of disgorgement as a remedy (including Defendants' mental state as
17	applied to disgorgement), apportionment, and an exceptional case analysis.
18	Yuga also misleadingly cites to JTX-801 to argue that Defendants knew that
19	confusion was likely.  The statement that Yuga relies on at JTX-801.185 was made in
20	the context of designing the never-released ApeMarket with a wrapper on the website.
21	Mr. Cahen stated at JTX-801.185, "I don't want to start implementing a wrapper."
22	Mr. Lehman responds, "Agreed."  And Mr. Cahen explains, "these users are too
23	unsophisticated by far."  As is apparent from the exhibit, statement Yuga cites does
24	not relate to knowledge of confusion but instead discusses whether users of a
25	marketplace would be sophisticated enough to correctly utilize a wrapper, which
26	Defendants were considering using on ApeMarket.
27
28

Yuga's citation to Mr. Cahen deposition designations are similarly misleading. At 59:7-59:16 of Mr. Cahen's designations, Mr. Cahen is commenting on the knowledge of the general public (which does not engage in the crypto industry, much less in the purchase or sale of NFTs). Yuga improperly uses this testimony to suggest that Mr. Cahen was discussing typical consumers of NFTs, which he was not. Tellingly, Yuga had the opportunity to cross-examine Mr. Cahen regarding this issue at trial but instead chose not to because it is undisputed that NFT purchasers (which includes purchasers of NFTs costing hundreds of thousands of dollars) have a greater level of sophistication about NFTs than the general public.

**Plaintiff's Response:**

Defendants do not dispute that they used Yuga Labs' BAYC Marks, nor could they. Instead, they argue either that their use was not confusing or was permitted.

Defendants' objections should be rejected for the same reasons discussed *supra* ¶ 4; specifically: (1) the objection seeks to relitigate issues already adjudicated by the Court, (2) the record shows that Defendants intended to confuse consumers, (3) Defendants' commercial infringement was not protected "art," (4) Defendants intended to profit off of their infringement, (5) the record shows ample actual confusion and likelihood of confusion, (6) Defendants' "disclaimers" did not dispel likelihood of confusion, (7) the majority of the sales of Defendants' infringing NFTs did not occur on rrbayc.com, (8) Defendants did not take steps to avoid confusion, (9) Yuga Labs did not license Defendants' infringement, and Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks, (10) other alleged infringers do not negate Defendants' infringement, (11) Defendants fail to impeach Mr. Solano's credible testimony.

Additionally, as described below, Defendants' objection should be rejected because (1) Defendants' anecdotal evidence of purported supporters does not negate the Court's finding that there was a likelihood of confusion, (2) Defendants were well

aware that their infringement would cause confusion, and (3) Defendants believed that consumers lacked the sophistication to verify the authenticity of their NFTs and their assertions to the contrary are not credible.

**Defendants' Anecdotal Evidence Of Individuals Stating They Support Defendants' Infringement Are Irrelevant And Immaterial:** Defendants' anecdotal evidence of individuals stating they support Defendants' infringement are irrelevant and immaterial. A handbag counterfeiter may have allies or distributors, and those allies / distributors may even profess to believe in a cause, but that does not excuse the counterfeiter's wrongdoing or mitigate the likelihood of confusion in the marketplace. *See* SJ Order (Dkt. 225) at 16 ("Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag."). And Defendants do nothing to rebut the likelihood of post-sale confusion. *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one"). Defendants' admission that they processed over $90,000 in refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75) undermines Defendants' suggestion that purchasers of their infringing NFTs were universally supportive and that no one was confused.

**Defendants Knew That Their Infringement Would Result In Confusion:** The evidence shows that Defendants knew they were infringing and creating confusion. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"); JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and

writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated.  A lot of people don't have the technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker).  Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

**Defendants Believed That Consumers Lacked Sophistication:**  Defendants argue that Mr. Cahen only called their consumers "unsophisticated" in the context of understanding certain aspects of NFTs, which they say does not equate to consumers having difficulty distinguishing two different NFTs.  But in other cases, Defendants admitted exactly that.  *See, e.g.*, JTX-801.195 (Mr. Lehman noting that people "making mistakes with apes is already a huge meme" and "Remember the 'average joes'?", and Cahen responding, "I mean that is unavoidable"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and stating, "Ppl will not read the contract"); *see also* Cahen Depo. Designations (Dkt. 395) at 59:7-59:16

1  (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is
2  complicated.  A lot of people don't have the technical expertise or knowledge to be
3  able to have a conversation about crypto technology and blockchain technology.");
4  Trial Tr. at 225:25-226:2 (Mr. Cahen testifying that it is common for consumers to
5  refer to NFTs by token name).   Additionally, there is nothing "telling" regarding
6  Yuga Labs' decision not to cross examine Mr. Cahen regarding his deposition
7  testimony, especially where the issue relates to a matter already adjudicated by the
8  Court and Yuga Labs proved that Mr. Cahen is an uncredible witness.

**Defendants' Reply:**

Yuga's response fails to adequately address Defendants' objections and the trial evidence that supports Defendants' objections.   For reasons provided in *supra* ¶ 4 (both in Defendants' objections and Defendants' reply in support of their objections), the evidence showed that confusion was not likely and in fact there was not a single actual RR/BAYC NFT consumer that was confused regarding the source of origin for the NFTs.  Defendants' reply in *supra* ¶ 4 similarly explains that (1) this Court's summary judgment cannot be used to support a finding of fact a trial, (2) Defendants did not intend to confuse consumers, (3) Defendants' intent was to protest and criticize Yuga, (4) the record shows ample evidence of *no* actual confusion, (5) the disclaimer was evidence of Defendants' good faith intent to protest and further decreased any likelihood of confusion, (6) more than 80% of Defendants' sales occurred on rrbayc.com (as corroborated by Yuga's own expert), (7) Defendants took many steps to avoid confusion including through the use of an artistic statement, disclaimer, and Twitter activity critical of Yuga, (8) Yuga surrendered to the world "all IP rights" associated with the Bored Ape Yacht Club, and (9) Mr. Solano is not a credible witness given his many false statements and his admission at trial that he testified falsely.

Yuga's additional responses similarly fail to identify evidence showing that Defendants' profits were a result of confused consumers:

***First,*** Yuga effectively admits that there is no evidence of actual confused consumers and tries to explain away this gaping hole in their evidence by arguing that the world is hiding evidence of actual confusion from Yuga because it would be "super embarrassing" to admit being confused. Not only does this response lack merit, but it is also an admission that there is insufficient evidence in the record to support a finding that any sales were a result of actual confusion.

And Defendants' evidence from actual consumers of RR/BAYC NFTs is sweeping, involving hundreds of actual consumers admitting that they were not confused and supported Defendants' protest. Mr. Ripps testified in his declaration: "I received ***hundreds of letters*** thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received. Ripps Decl. ¶¶ 196-207 (uncontested) (emphasis added). At no point during trial did Yuga dispute this fact. Yuga did not present any rebuttal evidence at trial and Yuga elected to not cross-examine Mr. Ripps on this issue. Thus, the uncontested evidence at trial shows that Mr. Ripps received hundreds of letters from RR/BAYC participants expressing support for the project and its criticism.

Yuga has also failed to present evidence disputing the fact that none of these correspondences indicated that commissions or secondary sales were due to confusion. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested). Instead of addressing correspondences from collectors, Yuga attempts to point to indications of consumer confusion.

***Second,*** the evidence presented at trial shows that there was not any actual confusion and that Defendants did not know of any confusion. First, to support this assertion about Defendants' knowledge of confusion, Yuga cites to documents it

1 argues show that the Defendants intended to make a profit.  Intending to profit from
2 your artwork is not the same thing as intending to confuse consumers and one does
3 not weigh toward the other.

4 　　　　Further, the evidence at trial showed that Defendants were not primarily
5 motivated by profits.  Defendants explained that profits were a concern, but not the
6 primary motive of the project.  Cahen Decl. ¶ 156 (Dkt. 344).  Profits helped offset
7 costs and sustain Defendants' artistic project.  Cahen Decl. ¶ 173 (Dkt. 344).
8 Defendants' decisions surrounding refunds and royalties confirm that they were not
9 primarily motivated by profits. Ripps Decl. ¶ 116-118 (uncontested) (Dkt. 346);
10 Cahen Decl. ¶ 158-171 (Dkt. 344).  The RR/BAYC project allowed for a full refund,
11 for any reason.  Ripps Decl. ¶ 119 (uncontested) (Dkt. 346); Cahen Decl. ¶ 159 (Dkt.
12 344).  Additionally, the Defendants' declined taking royalties on transfers of
13 RR/BAYC NFTs whenever possible.  Ripps Decl. ¶¶ 116-118 (uncontested) (Dkt.
14 346); Cahen Decl. ¶¶ 166-171 (Dkt. 344).

15 　　　　Additionally, as Defendants credibly testified, Mr. Ripps and Mr. Cahen are not
16 aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346)
17 (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).
18 Buttressing this fact, Yuga's founders were also not aware of a single instance of
19 actual confusion.  Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now
20 let's focus on, I think, what you were focused on. Yuga Labs has been unable to
21 identify even[] a single person who purchased an RR/BAYC believing it to be
22 sponsored by Yuga Labs; right? A Correct.").

23 　　　　Further, the evidence that Yuga cites does not rebut the overwhelming evidence
24 of Defendants' intent to protest and criticize and Yuga instead relies on
25 mischaracterizing and taking out of context evidence.  For example, Yuga repeatedly
26 cites to various pages of JTX-801 to argue that Defendants were aware of the alleged
27 confusion.  But those pages are internal discussion about the design of the ApeMarket
28

1 website to ensure that users of apemarket.com were not confused by the website
2 design. Yuga even cross-examined Mr. Hickman about these communications and
3 received the same explanation: "This is our attempt to make it as clear as possible.
4 We are having discussion on how to make sure it was very clear for users." Trial Tr.
5 [Hickman] 212:22-24.
6      Yuga similarly takes out of context exhibits such as JTX-44.00002 to
7 incorrectly argue that that Defendants were knowingly causing confusion. In JTX-
8 44.00002, Mr. Hickman stated that "people believe the tokenId should match the RR
9 ID. that is where they get confused." This statement is not discussing confusion
10 regarding the source of origin for RR/BAYC NFTs. Instead, it is discussing how the
11 RR/BAYC collection used a different numbering system that BAYC NFTs, and that
12 consumers expected the numbers match as a shorthand manner of cataloguing the
13 digital pointers contained within the RR/BAYC NFTs. That is, due to the different
14 numbering system, some consumers were confused as to which RR/BAYC NFT they
15 received but they understood very well that they received an NFT created by Mr.
16 Ripps that protests and criticizes Yuga.
17      The record clearly shows that Defendants did not know that there were any
18 confused consumers and further there is no evidence presented that anyone was
19 actually confused. *See* Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen]
20 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial
21 Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think,
22 what you were focused on. Yuga Labs has been unable to identify even[] a single
23 person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs;
24 right? A Correct.").
25      **Third,** Yuga improperly takes exhibits out of context to falsely accuse
26 Defendants of stating that they believed consumers lacked sophistication. For
27 example, Yuga misleadingly cites to JTX-801 to argue that Defendants said that
28

consumers of NFTs are too unsophiticated.  The statement that Yuga relies on at JTX-801.185 was made in the context of designing the never-released ApeMarket with a wrapper on the website.  Mr. Cahen stated at JTX-801.185, "I don't want to start implementing a wrapper."  Mr. Lehman responds, "Agreed."  And Mr. Cahen explains, "these users are too unsophisticated by far."  As is apparent from the exhibit, statement Yuga cites does not relate to knowledge of confusion but instead discusses whether users of a marketplace would be sophisticated enough to correctly utilize a wrapper, which Defendants were considering using on ApeMarket.  Yuga also cites to various documents (JTX-801.195, JTX-801.279), but these pages of JTX-801 also involve discussions in how to design *ApeMarket* to ensure that the website design was not confusing to users of the website.  Yuga even cross-examined Mr. Hickman about these communications and received the same explanation: "This is our attempt to make it as clear as possible.  We are having discussion on how to make sure it was very clear for users."  Trial Tr. [Hickman] 212:22-24.