Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                     Plaintiff,<br><br>       v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                     Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(a)**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Finding of Fact No. 7(a):

"Defendants knowingly and intentionally used Yuga's BAYC Marks . . . in an effort to confuse consumers" and "intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding." SJ Order at 12; *see also* JTX-671; JTX-686; Dkt. 392 at 52:6-21.

### Defendants' Basis of Dispute:

The evidence at trial showed that Defendants are not intentional infringers and did not intend to suggest that RR/BAYC was related to Yuga in any way.  Mr. Ripps's and Mr. Cahen's contemporaneous communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize rather than to confuse.  For example, in private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic purpose of the project, their intention that it would spread criticism of Yuga, and their intention that social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct.  Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way.  For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project.  Ripps

1  Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147;
2  Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Collectors using the
3  rrbayc.com website were also required to read and click through a disclaimer
4  acknowledging the artistic purpose of the project before they were allowed to
5  commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-
6  2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these requirement and
7  additional steps so that the artistic purpose of the work would be clear to participants.
8  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement
9  ultimately included, if it had a negative impact on usability? …  A.   … Ryder wanted
10 it and so he had the final call.").

11      Defendants' online discussion, which consisted of nearly the entirety of
12 Defendants' public activities associated with RR/BAYC, confirms their intent.  In
13 those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be
14 inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows
15 that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested);
16 Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

17      Defendants also created the RR/BAYC collection based on a good faith belief
18 that Yuga had given authorization for the creation of projects like RR/BAYC.  At the
19 time Mr. Ripps and Mr. Cahen launched the RR/BAYC project, there were more than
20 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt.
21 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  Before
22 suing Mr. Ripps and Mr. Cahen over the RR/BAYC project, Yuga had not taken steps
23 to stop these third-party projects from using Yuga's marks.  Ripps. Decl. ¶ 185 (Dkt.
24 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344).  There were hundreds of NFT
25 collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the
26 NFT marketplace OpenSea.  Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz]
27 80:3-13. Ms. Muniz admitted that Mr. Ripps, Mr. Cahen, and Mr. Hickman would
28

have probably seen these collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project. Trial Tr. [Muniz] 77:19-23. 26. There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22. For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks. *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Moreover, Mr. Hickman, a member of the RR/BAYC project team, was a holder of a BAYC NFT containing the asserted marks and having received IP rights associated with the Bored Ape Yacht Club. Ryan Hickman, who collaborated with Mr. Ripps and Mr. Cahen on the RR/BAYC project, owned a BAYC NFT at the time of the project. Hickman Decl. ¶¶ 19-22 (Dkt. 345). BAYC NFTs had Terms & Conditions, and the intent behind the Terms & Conditions for BAYC NFTs was to allow people to be able to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs. We can agree on that; right? A. yes. That is covered in the terms."). Yuga encouraged the public to use the BAYC artwork and to be creative with BAYC's intellectual property. For example, Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673. Ms. Muniz confirmed that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright. Trial Tr. [Muniz] 72:19-22.

Yuga also fails to reference adequate evidence in support of its allegation of intentional infringement. Yuga, by arguing that the Court's summary judgment order supports a finding of intentional infringement, has incorrectly relied on the law of the

case doctrine. The "law of the case doctrine does not apply to pretrial rulings *such as motions for summary judgment*." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in Sienze v Kutz, the Court held that although *aspects* of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. See No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling on intent applies only the issue of infringement and is not adequate support for intent generally or as applied to availability of disgorgement as a remedy, apportionment, and an exceptional case analysis.

Yuga also misleading relies on JTX-671 and JTX-686 to argue that Defendants intentionally tried to confuse consumers into thinking that Yuga was the source of origin for RR/BAYC NFTs. JTX-671 is a Twitter post from Ryder Ripps containing the Foundation page for the RR/BAYC collection. Nowhere in the post does Mr. Ripps suggest that Yuga sponsored RR/BAYC and the image in the post clearly shows "@ryder_ripps" as the creator of the collection. Futher, it is undisputed that Mr. Ripps's Twitter page contained numerous posts criticizing Yuga, the Bored Ape Yacht Club, discussion of RR/BAYC as a conceptual artwork that amplified Mr. Ripps's criticism. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested). No consumer of NFTs that navigated to Mr. Ripps Twitter and saw this post would have reasonably believed that Mr. Ripps was trying to confuse anyone as to the source of origin for RR/BAYC NFTs.

Similarly, Yuga has cited to JTX-686 is a misleading manner as well. Mr. Solano admitted during trial that JTX-686 never appeared on any website selling NFTs:

> Q. This side-by-side image, JTX-686, never appeared on OpenSea, did it?
>
> A. This side-by-side image, no. But these are two different pages that look exactly the same.

Trial Tr. [Solano] 45:22-25. In fact, Mr. Solano admitted that JTX-686 is a document that Yuga's attorneys created for purposes of this litigation.

> Q. Where did you get this image, JTX-686?
>
> A. It was prepared for us. Counsel prepared it.

Trial Tr. [Solano] 46:9-11. The cropped images in JTX-686 shows that some unidentified third-party, not the Defendants, was selling an RR/BAYC NFT.

> Q. This image, the combined image like this – strike that. It's hard to see. But if we could blow up on the right-hand side, there's a "Created By" section. And it's hard to see, but it looks like it says – sorry, "owned by," not "created by," "Owned by Safo214; right?
>
> A. I'll take your word for it that that's what it says. But, yes, it's owned by a username.
>
> Q. That's not Mr. Ripps or Mr. Cahen; right?
>
> A. No. This had already been sold to that person by them.

Trial Tr. [Solano] 46:16-24.

Yuga also cites to the unreliable trial testimony of Greg Solano. The cited testimony is a string of conclusory statements about what Defendants allegedly did

and is not based on any personal knowledge. Moreover, Mr. Solano's testimony is not credible given the many false and misleading statements contained in his declaration. For example, Mr. Solano was also forced to concede on cross examination that his sworn declaration included a false statement claiming that "Defendants continue to receive royalties or creator fees from sales on secondary marketplaces." Trial Tr. [Solano] 48:15-49:4. Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words. Trial Tr. [Solano] 40:3-14. Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19). Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition – and we can pull it up on the screen – at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id*. at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes.").

**Plaintiff's Response:**

Defendants dispute an exact quote from the Court, underscoring their bad-faith efforts to multiply the cost of this litigation by rehashing decided issues. **Forcing Yuga Labs to respond to an objection based purely on the fact that Defendants disagree with the Court's binding order is another example of Defendants' oppressive litigation tactics supporting a finding that this is an exceptional case.** This objection should be rejected.

Defendants' objections should be rejected for the same reasons discussed *supra* ¶ 4; specifically: (1) the objection seeks to relitigate issues already adjudicated by the Court, (2) the record shows that Defendants intended to cause confusion, (3) Defendants' commercial infringement was not protected "art," (4) Defendants' "disclaimer" did not dispel likelihood of confusion, (5) Defendants took no steps to avoid confusion in the marketplace, (6) Yuga Labs did not authorize Defendants' infringement and, to the contrary, had implemented a robust enforcement program to shut down infringers like Defendants, (7) Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks, (8) Defendants intended to profit off of their infringement, (9) Defendants' fail to impeach Mr. Solano's credible testimony, and (10) there is ample evidence of confusion in the record.

Additionally, as described below, Defendants' objection should be rejected because (1) Defendants' characterization of the evidence is unpersuasive and (2) Defendants were well aware that their infringement would cause confusion.

**The Exhibits To Which Yuga Labs Cites Are Not Misleading:** Nothing is misleading about JTX-686. That document shows a comparison of a genuine BAYC NFT listed on OpenSea and one of Defendants' infringing NFTs listed on OpenSea. Defendants do not and cannot dispute that both NFTs appeared on OpenSea at the same time. While Mr. Cahen did sell Defendants' infringing NFTs directly on OpenSea, (*see* Trial Tr. at 202:18-25); JTX-686 includes a listing on the secondary

1  market by a third party, which is not surprising as a significant portion of the trading
2  volume put into motion and actively promoted by Defendants' infringement took
3  place on secondary markets.  *See* Trial Tr. 202:4-12 ("The majority of the sales are
4  taking place on secondary markets.").
5       There is also nothing misleading about JTX-671—a promotion by Mr. Ripps of
6  Defendants' infringing NFT collection on Foundation with the URL
7  foundation.app/collection/bayc, the symbol "BAYC," and the name "Bored Ape
8  Yacht Club."  Mr. Ripps repeatedly used Yuga Labs' marks – without any
9  modification – to promote his sale of infringing products.  The fact that Defendants'
10 infringing NFTs directly copied Yuga Labs' marks necessarily implies an affiliation
11 between Defendants and Yuga Labs.  That Mr. Ripps associated his name with his
12 infringement does not cure this affiliation, it exacerbates it by immutably connecting
13 Mr. Ripps with the Bored Ape Yacht Club brand.  And Defendants' direct copying of
14 Yuga Labs marks supported a finding that there was a likelihood of confusion.  *Stone*
15 *Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases
16 involving identical marks on competitive goods are rare and 'hardly ever find their
17 way into the appellate reports' because liability is 'open and shut.'") (citation
18 omitted); SJ Order (Dkt. 225) at 13 ("Therefore, the Court easily concludes that
19 Defendants' use of Yuga's BAYC Marks was likely to cause confusion.").  This
20 confusion existed even if consumers were too ashamed to admit it.  Finally,
21 Defendants' assertion that a consumer who navigated to Mr. Ripps' Twitter page
22 would not be confused is unsupported by the record.  Mr. Ripps' Tweets also reached
23 a broader audience.  *See* Muniz Decl. (Dkt. 340) ¶ 13 ("[Defendants] directed their
24 Tweets not just to their followers, but to the NFT community and Board Ape Yacht
25 Club members generally."); *see also* Trial Tr. at 233:17-18 ("You can't tweet to
26 someone in particular.  You can just tweet to the general public, yes.")
27
28

Case No. 2:22-cv-04355-JFW-JEM              -8-                DEFENDANTS' OBJECTIONS

**Defendants Knew That Their Infringement Would Result in Confusion:**
Defendants' internal communications do not "confirm[] their intent," rather they demonstrate that Defendants knew they were infringing and creating confusion. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"); JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated. A lot of people don't have the technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker). Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

|   |   |
|---|---|
| 1 | **Defendants' Reply:** |
| 2 | Defendants do not dispute that this Court has entered summary judgment in this |
| 3 | case. However, in their summary judgment briefing, Defendants made clear that there |
| 4 | is a material evidentiary dispute regarding Defendants intent and knowledge and |
| 5 | Defendants reserve the right raise this issue for purposes of determining remedies, on |
| 6 | appeal, and in all other proceedings involving the BAYC marks. Defendants are not |
| 7 | asking that this Court reconsider its holding, because this under the law of the case |
| 8 | doctrine this Court has not made a holding on Defendants' intent for purposes of |
| 9 | determining availability of disgorgement as a remedy (including Defendants' mental |
| 10 | state as applied to disgorgement), apportionment, and an exceptional case analysis. |
| 11 | The "law of the case doctrine does not apply to pretrial rulings *such as motions for* |
| 12 | *summary judgment*." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) |
| 13 | (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) |
| 14 | ("Pretrial rulings, often based on incomplete information, don't bind district judges for |
| 15 | the remainder of the case. Given the nature of such motions, it could not be |
| 16 | otherwise."). For example, in Sienze v Kutz, the Court held that although *aspects* of |
| 17 | an issue were decided at summary judgment for one purpose, the summary judgment |
| 18 | order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736- |
| 19 | AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence |
| 20 | of initial police contact was relevant as background, but not to the already decided |
| 21 | issue that initial contact was not excessive force). This case is just like *Sienze*: the |
| 22 | summary judgment ruling on intent is limited to infringement and cannot be applied |
| 23 | more broadly. |
| 24 | Additionally, Yuga's reference back to its responses in *supra* ¶ 4 do not provide |
| 25 | adequate grounds to accept Yuga's erroneous proposed finding of fact. For reasons |
| 26 | provided in *supra* ¶ 4 (both in Defendants' objections and Defendants' reply in |
| 27 | support of their objections), the evidence showed that Defendants did not act with |
| 28 |   |

1  intent to cause confusion or to infringe.  Defendants' reply in *supra* ¶ 4 similarly
2  explains that (1) this Court's summary judgment cannot be used to support a finding
3  of fact a trial, (2) Defendants did not intend to confuse consumers, (3) Defendants'
4  intent was to protest and criticize Yuga, (4) Defendants' disclaimer evidence
5  Defendants' good faith attempt to creating protest art and decreasing any likelihood of
6  confusion, (5) Defendants took many steps to avoid confusion including through the
7  use of an artistic statement, disclaimer, and Twitter activity critical of Yuga, (6) Yuga
8  surrendered to the world "all IP rights" associated with the Bored Ape Yacht Club, (7)
9  Mr. Hickman was a BAYC holder that officially received the transfer of "all IP right"
10  that Yuga had made, (8) Defendants did not intend to profit off confusion as the
11  record shows they took many steps to avoid confusion and there is ample evidence of
12  *no* actual confusion, (9) Mr. Solano is not a credible witness given his many false
13  statements and his admission at trial that he testified falsely, and (10) the trial revealed
14  that there is no evidence of a confused purchaser of RR/BAYC NFTs.

15    Yuga similarly fails to show that it's exhibits are not misleading.  For the
16  reasons explained in Defendants' objection, (1) JTX-686 is of Defendants selling
17  RR/BAYC NFTS on OpenSea but rather a lawyer created document showing market
18  activated by an anonymous third party and (2) JTX-671 is a tweet on Mr. Ripps's
19  personal Twitter account of the Foundation page clearly showing that Mr. Ripps was
20  the creator and not Yuga.

21    Yuga also incorrectly accuses Defendants of "knowing" that RR/BAYC would
22  cause confusion. The evidence presented at trial shows that there was not any actual
23  confusion and that Defendants did not know of any confusion. First, to support this
24  assertion about Defendants' knowledge of confusion, Yuga cites to documents it
25  argues show that the Defendants intended to make a profit.  Intending to profit from
26  your artwork is not the same thing as intending to confuse consumers and one does
27  not weigh toward the other.
28

1        The evidence at trial showed that Defendants were not primarily motivated by
2 profits.  Defendants explained that profits were a concern, but not the primary motive
3 of the project.  Cahen Decl. ¶ 156 (Dkt. 344).  Profits helped offset costs and sustain
4 Defendants' artistic project.  Cahen Decl. ¶ 173 (Dkt. 344).  Defendants' decisions
5 surrounding refunds and royalties confirm that they were not primarily motivated by
6 profits. Ripps Decl. ¶ 116-118 (uncontested) (Dkt. 346); Cahen Decl. ¶ 158-171 (Dkt.
7 344).  The RR/BAYC project allowed for a full refund, for any reason.  Ripps Decl. ¶
8 119 (uncontested) (Dkt. 346); Cahen Decl. ¶ 159 (Dkt. 344).  Additionally, the
9 Defendants' declined taking royalties on transfers of RR/BAYC NFTs whenever
10 possible.  Ripps Decl. ¶¶ 116-118 (uncontested) (Dkt. 346); Cahen Decl. ¶¶ 166-171
11 (Dkt. 344).
12        Additionally, as Defendants credibly testified, Mr. Ripps and Mr. Cahen are not
13 aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346)
14 (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).
15 Buttressing this fact, Yuga's founders were also not aware of a single instance of
16 actual confusion.  Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now
17 let's focus on, I think, what you were focused on. Yuga Labs has been unable to
18 identify even[] a single person who purchased an RR/BAYC believing it to be
19 sponsored by Yuga Labs; right? A Correct.").
20        Further, the evidence that Yuga cites does not rebut the overwhelming evidence
21 of Defendants' intent to protest and criticize and Yuga instead relies on
22 mischaracterizing and taking out of context evidence.  For example, Yuga repeatedly
23 cites to various pages of JTX-801 to argue that Defendants were aware of the alleged
24 confusion.  But those pages are internal discussion about the design of the ApeMarket
25 website to ensure that users of apemarket.com were not confused by the website
26 design.  Yuga even cross-examined Mr. Hickman about these communications and
27 received the same explanation: "This is our attempt to make it as clear as possible.
28

1  We are having discussion on how to make sure it was very clear for users." Trial Tr.
2  [Hickman] 212:22-24.
3    Yuga similarly takes out of context exhibits such as JTX-44.00002 to
4  incorrectly argue that that Defendants were knowingly causing confusion.  In JTX-
5  44.00002, Mr. Hickman stated that "people believe the tokenId should match the RR
6  ID.  that is where they get confused."  This statement is not discussing confusion
7  regarding the source of origin for RR/BAYC NFTs.  Instead, it is discussing how the
8  RR/BAYC collection used a different numbering system that BAYC NFTs, and that
9  consumers expected the numbers match as a shorthand manner of cataloguing the
10 digital pointers contained within the RR/BAYC NFTs.  That is, due to the different
11 numbering system, some consumers were confused as to which RR/BAYC NFT they
12 received but they understood very well that they received an NFT created by Mr.
13 Ripps that protests and criticizes Yuga.
14   The record clearly shows that Defendants did not know that there were any
15 confused consumers and further there is no evidence presented that anyone was
16 actually confused.  *See* Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen]
17 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial
18 Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think,
19 what you were focused on. Yuga Labs has been unable to identify even[] a single
20 person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs;
21 right? A Correct.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28