Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                    Plaintiff,<br><br>      v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                    Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(c), lines 3:16-17**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 7(c), lines 3:16-17:**

Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks, which Defendant Ripps intentionally coded into the smart contract, and many of the associated images contained the BAYC Marks. Dkts. 342 ¶36; 337 (Atalay Decl.) ¶¶2-6 (admitted into evidence in Dkt. 392 at 125:22-126:11); JTX-600; JTX-687; JTX-688; JTX-1146.

**Defendants' Basis of Dispute:**

The evidence at trial did not show that Defendants intentionally coded into the RR/BAYC smart contract the asserted marks and the Bored Ape images. Mr. Ripps's uncontested declaration explains that the idea behind the RR/BAYC collection arose when the NFT community asked Mr. Ripps to mint RR/BAYC NFTs after observing a public exchange between Mr. Ripps and Mr. McNelis where Mr. Ripps used NFTs to demonstrate provenance by using verifiably unique NFTs to point to the same digital images. Ripps Decl. ¶ 73-81 (Dkt. 346) (uncontested). Further, RR/BAYC NFTs do not have "coded in" digital ape images but instead have digital pointers to bored ape images that "are public" and "available for anyone to navigate to on the Internet." Trial Tr. [Hickman] 222:15-16. Mr. Ripps's creation of these verifiably unique NFTs with digital pointers to public images did not involve any activities suggesting intentional infringement but instead show Defendants' belief that they were engaging in artistic commentary.

The evidence that Yuga relies on does not show that Defendants coded the RR/BAYC project to intentionally infringe on the asserted marks. For example, Yuga

1  cites to the unreliable Declaration of Greg Solano, specifically pointing to a paragraph
2  contain bare allegations not rooted in any of Mr. Solano's personal knowledge to
3  argue that Defendants engage in activities of intentional infringement.  Mr. Solano's
4  testimony is not credible given the many false and misleading statements contained in
5  his declaration.  For example, Mr. Solano was also forced to concede on cross
6  examination that his sworn declaration included a false statement claiming that
7  "Defendants continue to receive royalties or creator fees from sales on secondary
8  marketplaces."  Trial Tr. [Solano] 48:15-49:4.  Mr. Solano also relied on the phrase
9  "business venture" in Mr. Lehman's declaration, without having considered that the
10 phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman
11 would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also
12 relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew
13 he could not settle his case without executing a declaration concerning matters of
14 Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his
15 family at the time he signed his declaration, because Yuga's lawsuit against him
16 would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr.
17 [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated
18 impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't
19 even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A
20 Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a
21 deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same
22 oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up
23 on the screen -- at page 152, starting at line 13 'QUESTION:  Was the Bored Ape V3
24 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER:  I
25 don't know.' Was that your testimony at your deposition? A Yes." ); *id*. at 34:9-19
26 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market
27 from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through
28

1  6. 'QUESTION:  Do you know whether Ape Market exists? 'ANSWER:  I don't
2  recall.' Were you asked that question, and did you give that answer? A Yes.").
3         Yuga's citation to the Declaration of Mr. Atalay also fails to show intentional
4  infringement because Mr. Atalay lacks personal knowledge regarding the creation of
5  the RR/BAYC project and of Defendants' intent.  Further, the paragraphs of Mr.
6  Atalay's declaration that Yuga cites discusses how Etherscan (a third-party website)
7  display the RR/BAYC contract on the Ethereum network in part by using a token
8  tracker or token name.  Atalay Decl. ¶¶ 4-6.  But Defendants have no control over the
9  Etherscan website, what it displays, and how it chooses to show the RR/BAYC
10 collection.  And, in fact, Mr. Atalay himself has admitted that consumers of NFTs do
11 not use Etherscan's token tracker/token name but instead rely on marketplaces or by
12 checking the associated smart contract address.  Trial Tr. [Atalay] 135:2-25.  Mr.
13 Atalay explained that using token names to distinguish NFTs "would be a fairly weak
14 way to do so because often those things are mutable.  They can be changed after the
15 fact.  Also, there's no guarantee of uniqueness."  Trial Tr. [Atalay] 133:12-23.
16        The corresponding exhibits that Yuga cited also fail to show any such intent.
17 JTX-600 and JTX-1146 are printouts of "Etherscan" pages that identify "*ryder-
18 ripps.eth" as the creator of the RR/BAYC collection.  Etherscan is a third-party
19 website that Defendants have no control over.  Defendants have no say in the
20 activities of Etherscan and Yuga has made no efforts to ask Etherscan to change how
21 it displays content on its website.  JTX-687 and JTX-688 are merely bored ape images
22 that Yuga does not own and are, in fact, public domain images that anyone one the
23 internet can navigate to and use.  None of these exhibits suggests that Defendant
24 created the RR/BAYC smart contract to intentionally infringe the asserted marks.
25        **Plaintiff's Response:**
26        Defendants' objection should be rejected for the same reasons discussed *supra* ¶
27 7(a); specifically:  (1) the objection seeks to relitigate issues already adjudicated by
28

the Court, (2) the record shows that Defendants intended to cause confusion, (3) Defendants' commercial infringement was not protected "art," (4) Defendants' "disclaimer" did not dispel likelihood of confusion, (5) Defendants took no steps to avoid confusion in the marketplace, (6) Yuga Labs did not authorize Defendants' infringement and, to the contrary, had implemented a robust enforcement program to shut down infringers like Defendants, (7) Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks, (8) Defendants' fail to impeach Mr. Solano's credible testimony, and (9) Defendants intended to profit off of their infringement.

Additionally, as described below, Defendants' objection should be rejected because (1) Defendants' characterization of the evidence is unpersuasive, (2) Defendants misrepresent Mr. Atalay's testimony, (3) Defendants coded the smart contract to cause Etherscan and other websites to attribute Defendants' NFTs to Yuga Labs, (4) that attribution is immutable, and (5) the Bored Ape Yacht Club images are not public.

**Defendants' Characterization Of The Evidence In This Objection Is Incorrect:** It is undisputed that Mr. Ripps created the RR/BAYC smart contract, and that the marks "Bored Ape Yacht Club" and "BAYC" are immutably coded into the smart contract. *See* JTX-600; *see also* (Atalay Decl.) ¶¶2-6 (admitted into evidence in Dkt. 392 at 125:22-126:11). Mr. Ripps does not deny this fact. And Defendants' vague, unsupported assertion that someone other than Mr. Ripps put those terms into the smart contract that Mr. Ripps created is contrary to the evidence and is not credible. Indeed, their assertion is contradicted by their own objection, where Defendants admit that JTX-600 "is an Etherscan page recording a transaction between Mr. Ripps and Foundation." *Infra* ¶ 7(e).

The reason Mr. Ripps is unwilling to directly admit the obvious—that he typed "Bored Ape Yacht Club" and "BAYC"—is because this fact disproves the lie that Mr.

1  Ripps tried to use his name "whenever possible" (*see infra* Defendants' response to ¶
2  7(e)).

3  **Defendants Misrepresent Mr. Atalay's Testimony:** Mr. Atalay's testimony
4  does not say "that consumers of NFTs do not use Etherscan's token tracker/token
5  name" as Defendants attribute to it. What Mr. Atalay actually testified is that "for the
6  average person who is not an expert in blockchain technology," viewing NFTs on a
7  marketplace such as OpenSea "is probably the most straightforward way to
8  distinguish two NFTs." Trial Tr. at 135:5-10. And, Mr. Atalay testified that users on
9  such secondary markets typically refer to the token name to identify NFTs. Trial Tr.
10 at 132:3-5 ("Q  And you also agree that the NFT community uses the token name
11 when it's buying on secondary markets; correct?" / "A  Yes."); *see also* JTX-1558
12 (tweet from third party stating "If you were curious to see how malicious this scam is,
13 check out the token tracker/ID name that he chose to use on the smart contract. This is
14 a critical piece of data the NFT community uses when they are buying on the
15 secondary market."). Even if a consumer were to view an RR/BAYC on OpenSea
16 they would still be confused because listings for RR/BAYC NFTs were virtual
17 identical to a listing for an authentic Bored Ape Yacht Club NFT. *See* JTX-686.

18 **Defendants Caused Sources Such As Etherscan To Identify Their**
19 **Infringing NFTs With The BAYC Marks:** Defendants say that the evidence at trial
20 shows they were not responsible for token trackers such as Etherscan's identifying
21 Defendants' NFTs with the BAYC Marks. There is no such evidence to support this
22 argument, and Defendants cite none. JTX-600 shows "Bored Ape Yacht Club" and
23 "BAYC" coded into the RR/BAYC smart contract as source identifiers, and
24 Defendants admit that JTX-600 "is an Etherscan page recording a transaction between
25 Mr. Ripps and Foundation." *Infra* ¶ 7(e). In other words, Mr. Ripps admits that he
26 launched the smart contract with the BAYC Marks coded into it, which caused
27 websites such as Etherscan to confusingly display those marks to the public as if the
28

smart contract was created by Yuga Labs. These marks can never be removed from the smart contract, causing hyperlinks and other references to the collection to display the BAYC Marks. Atalay Decl. (Dkt. 337) ¶ 6; Solano Decl. ¶¶ 46-47, 78. And despite Mr. Ripps testimony that he minted the RR/BAYC NFTs to his "personal wallet, ryder-ripps.eth," the "ryder-ripps.eth" name did not appear on Etherscan until *after* minting, most if not all of, the infringing NFTs. *Compare* JTX-25, *with* JTX-36. Defendants therefore caused their infringement of Yuga Labs' marks to be an inherent and unchangeable part of their NFT collection, in turn causing third party systems and observers to confusingly associate the two, resulting in more downstream marketplace confusion. The permanent existence of Yuga Labs' marks in association with the RR/BAYC smart contract is why, like a domain name, the smart contract should be transferred to Yuga Labs so that Yuga Labs can retain some control of the use of its their marks.

**The RR/BAYC Smart Contract Is Immutably Linked To Yuga Labs:** Defendants' assertion regarding mutability of token trackers is immaterial and misleading because the token tracker for Defendants' infringing NFTs is not "mutable." Indeed, in response to the question directly after the response cited in Defendants' objection, Mr. Atalay explained that "[i]n this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance. So this isn't entirely relevant." Trial Tr. at 134:1-8. Mr. Solano testified to the same in his trial declaration. Solano Decl. (Dkt. 342) at ¶ 80 ("My understanding is that Defendants cannot change the name of their Etherscan contract bearing the BAYC Marks, nor can the RR/BAYC smart contract be destroyed."). Thus, the RR/BAYC smart contract will display "Bored Ape Yacht Club" and "BAYC" as the contract name and the contract symbol, respectively, in perpetuity, and without a transfer of the smart contract to Yuga Labs, confusion from Defendants infringing NFTs will

1  continue. *Id.* ("By transferring the RR/BAYC smart contract to Yuga Labs, the
2  Defendants' association with the BAYC brand will no longer be 'forever' as Mr.
3  Ripps proclaimed it would be."). Therefore, as Mr. Atalay testified, this misleading
4  counterfactual is neither relevant nor material.

5  **The Bored Ape Yacht Club Images Are Not Public:** Yuga Labs' Bored Ape
6  Yacht Club images are not available for "public" ownership. While anyone may *view*
7  a Bored Ape Yacht Club NFT and the associated image (like any image on the
8  internet), Yuga Labs goes to great lengths to combat the unauthorized use of its marks
9  and images. *See* Trial Tr. at 82:1-2 (Ms. Muniz testifying that Yuga Labs has "a
10 pretty robust process for takedowns. And we spend, at least in my tenure as CEO, a
11 million dollars a year doing it."). Further, this objection is immaterial because this is
12 a case for trademark, not copyright, infringement. And even so, the Court has already
13 held that Defendants' direct appropriation of Yuga Labs' images favored a finding
14 that there was a likelihood of confusion. SJ Order (Dkt. 225) at 11 ("Indeed,
15 Defendants are selling the exact same product – NFTs that point to Yuga's BAYC
16 images – and Defendants marketed their RR/BAYC NFTs using the same
17 corresponding Ape ID number used by Yuga for the BAYC NFTs. Accordingly, the
18 second *Sleekcraft* factor weighs in favor of Yuga."). Thus, regardless of whether the
19 Bored Ape Yacht Club images are viewable by the public, it is impermissible to sell
20 infringing NFTs using Yuga Labs' marks and creating a likelihood of confusion. This
21 objection should be rejected as misleading and immaterial.

22 **Defendants' Reply:**

23 Yuga's reference back to its responses in *supra* ¶ 7(a) do not provide adequate
24 grounds to accept Yuga's erroneous proposed finding of fact. For reasons provided in
25 *supra* ¶ 4 (both in Defendants' objections and Defendants' reply in support of their
26 objections), the evidence showed that Defendants did not act with intent to cause
27 confusion or to infringe. Defendants' reply in *supra* ¶ 4 similarly explains that (1) this
28

Court's summary judgment cannot be used to support a finding of fact a trial, (2) Defendants did not intend to confuse consumers, (3) Defendants' intent was to protest and criticize Yuga, (4) Defendants' disclaimer evidence Defendants' good faith attempt to creating protest art and decreasing any likelihood of confusion, (5) Defendants took many steps to avoid confusion including through the use of an artistic statement, disclaimer, and Twitter activity critical of Yuga, (6) Yuga surrendered to the world "all IP rights" associated with the Bored Ape Yacht Club, (7) Mr. Hickman was a BAYC holder that officially received the transfer of "all IP right" that Yuga had made, (8) Mr. Solano is not a credible witness given his many false statements and his admission at trial that he testified falsely, and (9) Defendants did not intend to infringe or otherwise profit off infringement, but were instead creating a satirical collection aimed at protesting Yuga.

 Yuga's additional responses to this objection similarly fail because (1) Yuga has mischaracterized and misrepresented the trial evidence and (2) that Mr. Atalay's testimony is clear that token trackers do not matter, (3) Defendants did not cause Etherscan and other website to attribute RR/BACY to Yuga, and (4) the undisputed evidence shows that BAYC images are public.

 ***First,*** as explained in Defendants' objection, Yuga has mischaracterized documents to improperly suggest that Mr. Ripps coded the RR/BAYC smart contract to "intentionally" infringe or cause confusion.  The Etherscan pages that Yuga cites (JTX-600 and JTX-1146) clearly identify Mr. Ripps as the creator of the RR/BAYC contract and the Bored Ape images that Yuga cites (JTX-687 and JTX-688) are public images that are not contained in the RR/BAYC contract.

 Moreover, Mr. Ripps's uncontested declaration explains that the idea behind the RR/BAYC collection arose when the NFT community asked Mr. Ripps to mint RR/BAYC NFTs after observing a public exchange between Mr. Ripps and Mr. McNelis where Mr. Ripps used NFTs to demonstrate provenance by using verifiably

unique NFTs to point to the same digital images. Ripps Decl. ¶ 73-81 (Dkt. 346) (uncontested). Mr. Ripps's creation of these verifiably unique NFTs with digital pointers to public images did not involve any activities suggesting intentional infringement but instead show Defendants' belief that they were engaging in artistic commentary.

**Second,** Mr. Atalay clearly and unequivocally testified at trial that token trackers/token names are not used to identify NFTs. If there was anything wrong with Mr. Atalay's admission, then Yuga should have rehabilitated the witness on re-direct. Yuga did not, because Mr. Atalay's admission is clear. He admitted that using token names or token trackers to distinguish NFTs "would be a fairly weak way to do so because often those things are mutable. They can be changed after the fact. Also, there's no guarantee of uniqueness." Trial Tr. [Atalay] 133:12-23. Indeed, as Mr. Atalay admitted, consumers of NFTs rely on marketplaces or by checking the associated smart contract address. Trial Tr. [Atalay] 135:2-25.

**Third,** Defendants did not cause Etherscan and other websites to attribute the RR/BAYC collection to Yuga. Mr. Ripps explained, in his uncontested declaration, that the smart contract was coded so that it would be specifically attributable to him through his personal smart wallet and identify a unique smart contract address:

> 89. The RR/BAYC collection was minted from my personal Ethereum blockchain "wallet," ryder-ripps.eth, was located at a unique "contract" address, and was minted on different dates and with different token IDs than Yuga's Bored Ape Yacht Club NFTs.

Ripps Decl. ¶ 89 (Dkt. 346). This information was always coded into the RR/BAYC contract, giving any third party a surefire way to know that RR/BAYC NFTs were created by Mr. Ripps and not by Yuga.

Third party websites, such as Etherscan, always displayed the RR/BAYC collection in a manner that disclosed Mr. Ripps's unique personal wallet (either by

name or by alphanumeric code verifiable on Etherscan itself) and also disclosing the unique smart contract address for the RR/BAYC collection.  As Mr. Atalay admitted, it is the unique smart contract address that is critical to identifying NFTs.  Trial Tr. [Atalay] 135:2-25.  Moreover, it is undisputed that Defendants do not own or operate Etherscan or any of the other third-party websites that displayed information about RR/BAYC NFTs.  Defendants cannot be responsible for the actions of third parties, especially when the code for the RR/BAYC collection provided to all third parties a definite source identifier and a verifiably unique smart contract address.

*Fourth,* The RR/BAYC collection is not immutably linked to Yuga.  In fact, it is not linked to Yuga at all.  As explained in Mr. Ripps's uncontested declaration, the RR/BAYC collection contains in its permanent code that it was minted from Mr. Ripps's wallet and contains a verifiably unique smart contract address (Ripps Decl. ¶ 89 (Dkt. 346)), which permanently and definitively identifies that RR/BAYC was created by Mr. Ripps and not Yuga.

*Fifth,* the evidence at trial showed that the BAYC digital images are public. Mr. Hickman's unrebutted trail testimony explained that the images are public, which is why it is possible for RR/BAYC and many other NFT collection to point to those digital images:

> THE COURT: When you are selling defendants' NFTs, you are selling Yuga's images.
>
> THE WITNESS: ***No. We are selling the record.***
>
> THE COURT: Okay.  But the record points to and displays those images.
>
> THE WITNESS: ***So the images are public.***  They are available for anybody to navigate to on the Internet.
>
> THE COURT: Right

THE WITNESS: ***We are selling a receipt that says I committed to this protest that points to the same public [image] that a lot of different collections point to*** including Yuga Labs pointing to the same resource.

Trial Tr. [Hickman] 222:10-22 (emphasis added). Yuga elected to not cross-examine Mr. Hickman on this testimony that the BAYC images are readily accessible and usable by anyone with internet. Further. Yuga presented no evidence at trial to rebut or contest this testimony—and Yuga's counter-factual arguments after the matter cannot serve a basis for ignoring the clear trial evidence on this issue. Moreover, as Mr. Hickman clarified to this Court, Defendants are not selling images but instead are selling a record on the blockchain associated with Defendants' and their protest of Yuga and its use of offensive imagery.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28