Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| Yuga Labs, Inc.,<br><br>                     Plaintiff,<br><br>        v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                     Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(d), lines 3:20-23**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 7(d), lines 3:20-23:**

"Defendants are selling the exact same product – NFTs that point to Yuga Labs' BAYC images – and Defendants marketed their RR/BAYC NFTs using the same corresponding BAYC Ape ID number used by Yuga Labs for the BAYC NFTs." SJ Order at 11; Dkts. 342 ¶37; 392 at 56:3-10, 221:16-222:24; 396 at 169:4-6, 184:14-186:19; JTX-44.2; JTX-669; JTX-686.

**Defendants' Basis of Dispute:**

The evidence at trial showed that the RR/BAYC collection is not the "exact same product" as Yuga NFTs and is more accurately described as antithetical or the opposite of Yuga's NFTs. The RR/BAYC project was created as a form of satire intended to protest NFTs linked to what defendants believed were antisemitic or racist imagery. Ripps Decl. ¶¶ 87-94 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 97-103 (Dkt. 344); Hickman Decl. ¶¶ 62-66 (Dkt. 345). The RR/BAYC NFTs included verifiably unique NFTs with digital pointers to Bored Ape images, which "are public" and "available for anyone to navigate to on the Internet." Trial Tr. [Hickman] 222:15-16. The RR/BAYC NFTs were effectively a "receipt that says I committed to this protest that points to the same public [image] that a lot of different collections point to including Yuga Labs." Trial Tr. [Hickman] 222:18-21.

Defendants' internal communications confirm that RR/BAYC NFTs were the opposite products of Yuga's NFTs. For example, Mr. Ripps pointed out at JTX-801 that RR/BAYC "doesn't impact Yuga" and that "the clients buying rrbaycs are legit the opposite [of clients buying BAYC NFTs]." JTX-801-376; Hickman Decl. ¶ 95(b)

| Case No. 2:22-cv-04355-JFW-JEM | -1- | DEFENDANTS' OBJECTIONS |

(Dkt. 345). And reserving of RR/BAYC NFT on rrbayc.com, where more than 80% of reservations occurred, required reading a clicking through a disclaimed stating that "By purchasing this Ryder Ripps artwork in the form of an NFT, you understand that this is a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary." Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086.

Yuga also fails to cite adequate evidence in support of its incorrect allegation that RR/BAYC NFTs are the exact same product as Yuga NFTs. First, Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze v Kutz*, the Court held that although ***aspects*** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling regarding RR/BAYC NFTs applies only to the issue of infringement and is not adequate support for this issue as applied to availability of disgorgement as a remedy (including Defendants' mental state as applied to disgorgement), apportionment, and an exceptional case analysis.

Yuga also cites the unreliable Declaration and trial testimony of Greg Solano to argue that RR/BAYC NFTs are the same product as Yuga's NFT. Tellingly, the portions of Mr. Solano's testimony that Yuga cites completely ignores the many

aspects of RR/BAYC NFTs that were unique, such as their verifiable uniqueness on the Etherscan blockchain, the satirical commentary the NFTs raised, how Defendants presented RR/BAYC NFTs in the market (on Twitter and rrbayc.com) as protest art that criticizes Yuga.  Moreover, Mr. Solano is not credible given the many false and misleading statements contained in his declaration.  For example, Mr. Solano was forced to concede on cross examination that his sworn declaration included a false statement claiming that "Defendants continue to receive royalties or creator fees from sales on secondary marketplaces." Trial Tr. [Solano] 48:15-49:4.  Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14. Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposit–n -- and we can pull it up on the scr–n -- at page 152, starting at line 13 'QUESTION:  Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER:  I don't know.' Was that your testimony at your deposition? A Yes." ); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116,

1 lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists?
2 'ANSWER: I don't recall.' Were you asked that question, and did you give that
3 answer? A Yes.").

4     Yuga also misleadingly cites to the trial testimony of Mr. Hickman to argue that
5 RR/BAYC NFTs were the same products as Yuga's NFTs because they point to the
6 same digital images. But Mr. Hickman made clear during trial that (1) RR/BAYC
7 NFTs do not involve the sale of digital images, (2) there are numerous other NFT
8 collections that point to the Bored Ape digital images, and (3) the Bored Ape digital
9 images are public and not owned by Yuga:

10     THE COURT:    When you are selling defendant's NFTs, you are selling
11                                 Yuga's images.

12     THE WITNESS:  *No. We are selling the record.*
13

14     THE COURT:    Okay. But the record points to and displays those images.

15     THE WITNESS:  *So the images are public.* They are available for anybody to
16                                 navigate to on the Internet.

17     THE COURT:    Right
18
19     THE WITNESS:  *We are selling a receipt that says I committed to this
20                               protest that points to the same public [image] that a lot of
                              different collections point to* including Yuga Labs pointing
21                               to the same resource.

22 Trial Tr. [Hickman] 222:10-22 (emphasis added).

23     Yuga also cites to Mr. Ripps's deposition designation, but again refers to
24 deposition testimony that does not show the RR/BAYC NFTs are the same product.
25 For example, Yuga cites to Dkt. 396 at 396 at 169:4-6 in which Mr. Ripps testifies
26 about his conversation with someone reserving a RR/BAYC NFT and asking for an
27 NFT that points to a particular Bored Ape image. In the counter-designation, Mr.
28

1  Ripps explains that this consumer is reserving an RR/BAYC NFT for the purpose of
2  protesting Yuga and not to have the same product of a Yuga NFT:

3
4
5
6
> … she's someone who – says right there. **She's a survivor**, she's someone who is – is in favor of decentralize. **You see the emoji with the fist**. So this is someone who is very much a part, I think, of this speech and movement that RR/BAYC is within.

7  Dkt. 396 at 169:21-25 (emphasis added). Mr. Ripps also explains that his
8  understanding is that this participate was likely interested in a RR/BAYC NFT
9  pointing to a particular public bored ape image due to its offensive content:

10
11
12
13
14
15
> … it's a specific one and she is within the community that I am in as well, that there is specific really disgusting, vile aspects to that. Maybe it has Prussian helmet, maybe it has a sushi chef headband that actually says "kamikaze" and she wants that to be solidified and looked at an – and – and interrogated more, with more scrutiny. So perhaps that's why she wanted that specific Bored Ape Yacht Club image and that's why she wanted to create a new mint of it.

16 Dkt. 396 at 169:8-17. Again, this testimony confirms that purchasers of RR/BAYC
17 NFTs are the exact opposite of purchasers of Yuga NFTs, and that the NFT
18 collections themselves are also the exact opposite.
19     Similarly, the counter-designation to Yuga's citation to Dkt. 396 at 184:14-
20 186:19 makes clear that the two NFT collection are not the same product. Mr. Ripps
21 testified that "I feel like I've – you know, we've spoken now for, like, four hours, and
22 I feel like I've kind of laid out what the artwork of RR/BAYC is. It's many things:
23 It's an NFT; it's a performance; it's a statement. So it's – it's a lot of things." Dkt.
24 396 at 193:8-13. Critically, Yuga's NFTs are not a performance or a statement.
25     The exhibits to which Yuga cites similarly fail to show that RR/BAYC NFTs
26 are the same as Yuga NFTs. JTX-44 is an internal communication in which Mr.
27 Hickman discusses how RR/BAYC NFTs have different IDs than Yuga's NFTs.
28

JTX-669 is a Twitter post from Mr. Ripps saying that he will mint RR/BAYC NFTs for .1 ethereum, which is price that is nearly 1/1,000th of the price Yuga NFTs sold for. And JTX-686 is a document that Yuga's attorneys created for purposes of this litigation (Trial Tr. [Solano] 46:9-11) and involves cropped images of an unidentified third-party selling an RR/BAYC NFT in manner that labels the sale with "RR/BAYC" (Trial Tr. [Solano] 46:16-24; see JTX-686).

**Plaintiff's Response:**

Defendants dispute an exact quote from the Court, underscoring their bad-faith efforts to multiply the cost of this litigation by rehashing decided issues.

Defendants' objection should be rejected for the same reasons discussed *supra* ¶ 7(a); specifically: (1) the objection seeks to relitigate issues already adjudicated by the Court, (2) Defendants' infringement was not an art project, (3) Yuga Labs' Bored Ape Yacht Club images are not public, (4) Yuga Labs did not authorize Defendants' infringement and, to the contrary, had implemented a robust enforcement program to shut down infringers like Defendants, and (5) Defendants failed to impeach Mr. Solano's accurate testimony.

Additionally, as described below, Defendants' objection should be rejected because (1) Defendants' definition of an NFT is artificially narrow, (2) actual confusion is not necessary and post-sale confusion is actionable, (3) Defendants sold their NFTs at the same price that Yuga Labs has sold its NFTs, and (4) Defendants' cherry-picked communications with alleged consumers does not negate the confusion in the marketplace.

**Defendants' Definition Of An NFT Is Too Narrow:** An NFT is more than merely a proof of ownership. The Court has already found as much on Yuga Labs' Motion for Summary Judgment, for example, writing that "viewing the NFTs as ownership receipts treats the NFTs as mere written instructions while ignoring their documented commercial value." SJ Order (Dkt. 225) at 7. NFTs are sold

1  "specifically for their connection to a particular brand, creator, or associated creative
2  work." *Id.* at 8.  Moreover, "'individuals do not purchase NFTs to own a digital deed
3  divorced from any other asset; they buy them precisely so that they can exclusively
4  own the content associated with the NFT.'"  *Id.* (*quoting* *Hermès International v.*
5  *Rothschild*, No. 22-CV-384-JSR, 2023 WL 1458126, at *5 (S.D.N.Y. Feb. 2, 2023))
6  (cleaned up).

7       The evidence introduced at trial also establishes that Defendants' definition of
8  an NFT is too narrow.  Mr. Solano explained that NFTs "are units of data stored on a
9  blockchain that are created to transfer ownership of either physical things or digital
10 media—here digital images of cartoon apes. The term 'NFT' commonly refers to both
11 the token stored on the blockchain and the digital image with which it is associated."
12 Solano Decl. ¶ 2 n 1.  And Mr. Solano further testified that purchasers of BAYC NFTs
13 purchased for different reasons, including how the BAYC NFT image resonated with
14 them, showing that for some people an NFT includes the image associated with it.  *Id*.
15 ¶ 12.  Mr. Atalay also testified that there is "probably more that you could say than
16 that…" in reference to Defendants' limited definition.  Trial Tr. at 127:9-13.  Mr.
17 Atalay went on to explain that NFTs include metadata and other data that is not
18 metadata but may be on the blockchain.  *Id.* 128:8-24.

19      **Post-Sale Confusion Supports The Court's Finding That Confusion Is**
20 **Likely:**  There is a clear likelihood of confusion as well, given Defendants' use of the
21 same marks and images, which the Court already determined.  SJ Order (Dkt. 225) at
22 10-13; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir.
23 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly
24 ever find their way into the appellate reports' because liability is 'open and shut.'")
25 (citation omitted).  In any event, actual confusion is not required; and the Court
26 already found Defendants' use of BAYC Marks to be infringing.  SJ Order (Dkt. 225)
27 at 12.  Yuga Labs is thus entitled to Defendants' profits due to their infringing activity
28

1  regardless of whether purchasers were actually confused.  See *Gucci Am., Inc. v.*
2  *Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's
3  profits even where infringement claims premised solely on post-sale confusion where
4  a "potential purchaser, knowing that the public is likely to be confused or deceived by
5  the allegedly infringing product, [] choose[s] to purchase that product instead of a
6  genuine one").

7  **Whether Defendants' Infringing NFTs Often Sell For Less Than Authentic**
8  **Bored Ape Yacht Club NFTs Re-Sale For Is Immaterial:** The difference in price
9  between re-sales of authentic Bored Ape Yacht Club NFTs and the mint price for
10 Defendants' fakes did not prevent confusion in the marketplace.  To begin, the Court
11 has already found a likelihood of confusion.  SJ Order (Dkt. 225) at 13 ("Therefore,
12 the Court easily concludes that Defendants' use of Yuga's BAYC Marks was likely to
13 cause confusion.").  Nonetheless, as Mr. Solano explained, authentic Bored Ape Yacht
14 Club NFTs were launched at a price similar to the initial price of Defendants'
15 infringing NFTs.  Trial Tr. at 58:9-11 ("The original Bored Apes sold for $200.  And
16 we've done other sales over the past two years that are for lower prices."); *see also*
17 Solano Decl. (Dkt. 342) at 4 ("We initially sold each BAYC NFT for .08 Ether, which
18 was approximately $169 to $236 USD, based on the price of Ether at the time.").
19 Therefore, that some Bored Ape Yacht Club NFTs re-sell for larger sums is
20 immaterial – those consumers who might know the re-sale price of an authentic
21 BAYC also likely know there is a history of these NFTs selling for prices near the
22 initial sales price of Defendants' infringing NFTs.  Consumers could be, and indeed
23 were, confused.

24 **Defendants' Third-Party, Unreliable Communications Do Not Negate The**
25 **Court's Findings Or Yuga Labs' Experts' Opinions:**  Defendants' cherry-picked
26 communications from a self-selecting group are far from a comprehensive survey of
27 consumer confusion in the market.  Defendants have no evidence supporting a claim
28

that a statistically significant number of consumers were not confused. Indeed, the hundreds of refunds they provided at consumers' requests suggest that some purchasers were confused. *See, e.g.*, Kindler Decl. (Dkt. 338) ¶ 44. At least some of those hundreds of refund demands could have been from confused consumers who "weren't going to, you know, raise their hand and shout about it." Trial Tr. at 54:10-16. Moreover, they ignore the ample confusion on Twitter and other sources that Yuga Labs identified. SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Depo. Designations (Dkt. 396) at 290:4-9; JTX-1049; Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7. Defendants were aware of the confusion. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"); JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the Bored Ape

1  Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at 59:7-59:16
2  (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is
3  complicated. A lot of people don't have the technical expertise or knowledge to be
4  able to have a conversation about crypto technology and blockchain technology."), at
5  148:10-13 (testifying it is "very common" for people to refer to NFT collections by
6  the token tracker).

7      Yuga Labs' survey evidence demonstrated significant confusion among
8  consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with
9  Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48,
10 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the
11 evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated
12 with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-
13 sale confusion. Moreover, there is no reliable evidence in the record that the
14 individuals identified in the cited emails, or all other purchasers, are "collectors" as
15 Defendants contend.

16     **Defendants' Reply:**

17     Yuga's reference back to its responses in *supra* ¶ 7(a) do not provide adequate
18 grounds to accept Yuga's erroneous proposed finding of fact. For reasons provided in
19 *supra* ¶ 4 (both in Defendants' objections and Defendants' reply in support of their
20 objections), the evidence showed that RR/BAYC NFTs are not the exact same as
21 Yuga's NFTs. Additionally, Defendants' reply in *supra* ¶ 4 similarly explains that (1)
22 this Court's summary judgment cannot be used to support a finding of fact a trial, (2)
23 Defendants did not intend to confuse consumers, (3) Defendants' intent was to protest
24 and criticize Yuga, (4) Yuga surrendered to the world "all IP rights" associated with
25 the Bored Ape Yacht Club, and (5) Mr. Solano is not a credible witness given his
26 many false statements and his admission at trial that he testified falsely.

27
28

Yuga's additional responses to this objection similarly fail because (1) Defendants use the definition of NFTs advance by both Mr. Atalay and Mr. Hicman, (2) none of Defendants profits were attributable to confusion, (3) Defendants did not sell RR/BAYC NFTs as the same price as Yuga NFTs, (4) and Defendants did not "cherry-pick" communications from actual RR/BAYC purchasers.

***First,*** Yuga incorrectly argues that an NFT is more than just a certificate of ownership of unique data on a blockchain (which is essentially a digital spreadsheet). Yuga's contention is inconsistent with the trial record. Yuga's Chief Technical Officer was asked to explain to the Court what an NFT is, and he confirmed it is a certificate of ownership:

> Q.  An NFT is an on-chain representation of ownership; right, sir?
>
> A.  ***I would say that's accurate.***  There's probably more that you could say than that, but that's generally accurate, yeah.
>
> Q.  It's ownership of a unique piece of data; right, sir?
>
> A.  ***Yes.***

Trial Tr. [Atalay] 127:9-16 (emphasis added). Mr. Atalay's testimony, and the fact than an NFT is simply a certificate of ownership of data on the blockchain and does not include associated public images readily accessible and usable by anyone with internet, was further corroborated by Mr. Hickman's trial testimony:

> THE COURT:   ***When you are selling defendants' NFTs, you are selling Yuga's images.***
>
> THE WITNESS:   ***No.  We are selling the record.***
>
> THE COURT:   Okay.  But the record points to and displays those images.

| | | |
|---|---|---|
| THE WITNESS: | | So the images are public. They are available for anybody to navigate to on the internet. |
| THE COURT: | | Right. |
| THE WITNESS: | | ***We are selling a receipt that says I committed to this protest*** that points to the same public [images] that a lot of different collections point to including Yuga Labs pointing to the same resource. |

Trial Tr. [Hickman] 222:10-21 (emphasis added).

Thus, the only two engineers that testified during trial provided the Court with the same substantive testimony—that an NFT is a certificate of ownership and does not include the images that an NFT often points to. Yuga attempts to rebut this evidence (including the testimony of its own Chief Technical Officer) by citing to the Declaration of Greg Solano. But Mr. Solano is not credible given the many false and misleading statements contained in his declaration.

***Second,*** the trial evidence showed that there was no confusion or post-sale confusion associated with the RR/BAYC collection, meaning that none of Defendants' profits are attributable to infringement. Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested). To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Indeed, neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are aware of a single instance of confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19. Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a

1  single person who purchased an RR/BAYC believing it to be sponsored by Yuga
2  Labs; right? A Correct."). Mr. Solano, Yuga's President, similarly could not identify
3  a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.
4  Trial Tr. [Solano] 18:23-19:1.  Given Defendants public discussions, steps taken to
5  clarify the origin and purpose of the RR/BAYC collection, and the fact that there was
6  not even a single confused consumer confirms that there was no likelihood of
7  consumer confusion and no actual consumer confusion.
8       Defendants also took multiple steps to make clear that the RR/BAYC collection
9  was not related to Yuga in any way.  For example, the rrbayc.com website—through
10 which the majority of RR/BAYC commissions occurred and the vast majority of
11 alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶
12 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps
13 Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147;
14 Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the
15 rrbayc.com website were also required to read and click through a disclaimer
16 acknowledging the artistic purpose of the project before they were allowed to
17 commission an NFT.  See Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-
18 2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these requirement and
19 additional steps so that the artistic purpose of the work would be clear to participants.
20 See Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement
21 ultimately included, if it had a negative impact on usability? … A.  … Ryder wanted
22 it and so he had the final call.").
23      ***Third,*** RR/BAYC NFTs sold for approximately 1/1000th the price of Yuga's
24 NFTs.  This drastic difference in price all but confirms that it was practically
25 impossible for any consumers to be confused. As Mr. Cahen explained:

26
27     At the time of the RR/BAYC artwork, the price of an RR/BAYC NFT was
    not even 1/1000th the price of a Bored Ape Yacht Club NFT.  A collector
28     being confused about RR/BAYC would be akin to a consumer thinking

they are able to purchase a Lamborghini that normally costs $300,000 for $300, which no person in their right mind would ever believe is possible.

Cahen Decl. ¶ 225 (Dkt. 344).

And while the significant difference in price alone was likely enough to guarantee no confusion, Defendants still took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. Defendants included an artistic disclaimer on rrbayc.com, on which over 80% of reservations occurred, explaining the artistic intent of the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Defendants also required collectors on rrbayc.com to read and click through a disclaimer acknowledging the artistic purpose of the project. *See* Ripps Decl. ¶¶ 106-109 (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Defendants also engaged in extensive online discussion confirming and raising awareness about the satirical nature of the RR/BAYC project. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

*Fourth,* Yuga falsely states that these Defendants relies on "cherry-picked communications" from actual purchasers of RR/BAYC NFTs. Mr. Ripps testified in his declaration: "I received **hundreds of letters** thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received. Ripps Decl. ¶¶ 196-207 (uncontested) (emphasis added). At no point during trial did Yuga dispute this fact. Yuga did not present any rebuttal evidence at trial and Yuga elected to not cross-examine Mr. Ripps on this issue. Thus, the uncontested evidence at trial shows that Mr. Ripps received hundreds of letters from RR/BAYC participants expressing support for the project and its criticism.

1   Yuga has also failed to present evidence disputing the fact that none of these
2   correspondences indicated that commissions or secondary sales were due to
3   confusion. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested). Instead of addressing
4   correspondences from collectors, Yuga attempts to point to indications of consumer
5   confusion.

6   Further, Yuga's reliance on experts to make false accusations are not credible.
7   Yuga's citation to Ms. Kindler's declaration does not support their allegations that
8   Defendants provided "hundreds of refunds" or that those alleged refunds indicate
9   confusion. *See* Kindler Decl. ¶ 44 (Dkt. 338) ("When calculating Defendants' profits,
10  transactions that were refunded through Defendants' RSVP smart contract were
11  omitted. Specifically, transactions that were refunded through the RefundIssued and
12  RSVPCanceled functions in the RSVP smart contract were not included in my
13  calculation of profits. To my knowledge, Defendants have not produced any records
14  of other refunds related to the sale of RR/BAYC NFTs."). Mr. Ripps never received a
15  refund request from anyone stating they were confused or thought that they were
16  reserving a Yuga product. Ripps Decl. ¶ 122 (Dkt. 346) (uncontested).

17  And Ms. O'Laughlin's survey evidence is unreliable. Ms. O'Laughlin
18  conducted two flawed surveys that failed to measure confusion. Ms. O'Laughlin
19  acknowledged that she used an overly expansive definition of the market that included
20  people who did not have any interest in purchasing an NFT, much less knowledge of
21  what an NFT is. Trial Tr. [O'Laughlin] 150:2-151:16 (discussing survey qualification
22  flow); 152:4-10. She acknowledged that she changed the survey population after
23  running pretests to make it more inclusive. *Id.* at 144:25-146:7. Ms. O'Laughlin also
24  acknowledged that she lacked basic knowledge about the NFT market, admitting to
25  erroneously believing that cryptocurrency was an NFT when she formulated her
26  surveys and her reports. *Id*. at 147:12-14. The result of her lack of knowledge was an
27  inherently flawed survey that could not show confusion because the market was too
28

1  broad.  This was despite her acknowledgement that choosing the right sample
2  population "matters for the analysis" and choosing an improper sample population
3  would be a mistake.  *Id.* at 146:18-25.