Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| Yuga Labs, Inc.,<br><br>                   Plaintiff,<br><br>    v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                 Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(f), lines 15-16**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

<u>**Plaintiff's Disputed Post Trial Finding of Fact No. 7(f), lines 15-16:**</u>

<u>They marketed their RR/BAYC NFTs as "Bored Ape Yacht Club" and used Yuga Labs' logo and marks to sell the NFTs.</u> JTX-28; JTX-133; JTX-137; JTX-138; JTX-671; JTX-719; Dkts. 342 ¶¶35, 42-43; 392 at 47:18-48:4; 396 at 60:18-61:4, 71:9-12.

<u>**Defendants' Basis of Dispute:**</u>

The evidence at trial did not show that Defendants "marketed their RR/BAYC NFTs as 'Bored Ape Yacht Club.'" To the contrary, Defendants constantly referred to the collection as RR/BAYC or as having been created by Ryder Ripps. Nearly the entirety of Defendants activities associated with publicly discussing the RR/BAYC NFT collection occurred online, where Defendants addressed the project as having been created by Mr. Ripps for the purpose for of criticizing Yuga. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04. In these public, undisputed activities, Defendants popularized the RR/BAYC collection by referring to its satirical nature by making clear it was Mr. Ripps's collection. Mr. Ripps confirmed at his deposition that this was his consistent practice:

> Q.   And you use the phrase "Bored Ape Yacht Club"?
>
> A.   Not by itself ever. It's always been in the context of Ryder Ripps. Just like the name of the project is Ryder Ripps/Bored Ape Yacht Club.

Dkt. 369 [Ripps Depo. Designation] 61:5-9.

The evidence at trial also showed that collectors reserved and purchased RR/BAYC NFTs specifically due to their artistic commentary.  The correspondence Mr. Ripps received from collectors of RR/BAYC NFTs confirm that they purchased the NFTs (including on secondary markets) as an act of protest.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599

Further, the exhibits that Yuga cites do not show that Defendants marketed the RR/BAYC collection as "Bored Ape Yacht Club" or that they relied on infringement to sell their NFTs.  JTX-28, JTX-133, JTX-671, and JTX-671 show Foundation pages associated with the RR/BAYC collection.  Foundation decides how to format collections presented on its website.  Dkt. 369 [Ripps Depo. Designations] 70:19-25 ("Q. And who created this page for you?  A. Who created this page for?  Q. Uh-huh A. *I guess Foundation helped make it because I didn't design [it]*.  Like, that's not my logo in the corner, and I, you know, I probably would have designed it bit different.  So Foundation.").  Within Foundation's chosen design, the exhibits show that the RR/BAYC collection was listed under Mr. Ripps's creator page.  As Mr. Ripps explained at this deposition, the Foundation page (based on the way it organizes content) was showing the NFT collection as Ryder Ripps's Bored Ape Yacht Club which is simply the long-form of "RR/BAYC":

> Q.     On this Foundation page.
>
> A.     Well, this is my Foundation page.  So it already says "Ryder Ripps/Bored Ape Yacht Club." You can see it right there, Ryder Ripps/Bored Ape Yacht Club. So I wouldn't write "Ryder Ripps, Ryder Ripps, Ryder Ripps/Bored Ape yacht Club."  It already says "Ryder Ripps/Bored Ape Yacht Club."
>
> Q.     Can you show me where it says "Ryder Ripps/Bored Ape Yacht Club."
>
> A.     Ryder Ripps/Bore Ape Yacht Club.

Dkt. 369 [Ripps Depo. Designations] 76:13-22.  Further, JTX-137 is a page created by some unidentified third party on LooksRare and JTX-138 is also a page created by an unidentified third party on a website also unidentified in the exhibit.  Defendants did not create these pages, did not decide how they would appear or be formatted, and had no control over what was displayed on these third-party websites.

Yuga also cites to snippets of Mr. Ripps's deposition testimony while conveniently omitting portions of Mr. Ripps's testimony showing that Mr. Ripps always presented his NFT collection under his name and relied on the satirical nature of the artwork to popularize the collection.  Dkt. 369 [Ripps Depo. Designations] 35:2-11, 61:5-9, 76:13-22; 169:6-25.

Lastly, Yuga also cites to the unreliable declaration and trial testimony of Gregory Solano.  Mr. Solano's testimony was not credible given the many false and misleading statements contained in his declaration.  For example, Mr. Solano was forced to concede on cross examination that his sworn declaration included a false statement claiming that "Defendants continue to receive royalties or creator fees from sales on secondary marketplaces."  Trial Tr. [Solano] 48:15-49:4. Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14. Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder

Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION:  Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER:  I don't know.' Was that your testimony at your deposition? A Yes." ); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION:  Do you know whether Ape Market exists? 'ANSWER:  I don't recall.' Were you asked that question, and did you give that answer? A Yes.").

Moreover, Yuga cites to portion of Mr. Solano's testimony that are particularly unreliable.  For example, at pages 47:18-48:4 of the trial transcript, Mr. Solano is testifying as to his reliance of a document that was created by Yuga's attorneys for purposes of this litigation and that the document refers to the activity of some unidentified third party and not any activity of the Defendants.

### **Plaintiff's Response:**

Here too, Defendants have no good faith basis to challenge this admitted finding of fact.  Defendants admit with respect to Finding of Fact 7(c):  **"Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks."**

Defendants' objection should be rejected for the same reasons discussed *supra* ¶ 7(a); specifically:  (1) the objection seeks to relitigate issues already adjudicated by the Court, (2) the record shows that Defendants' commercial infringement was not protected "art," and (3) Defendants fail to impeach Mr. Solano's accurate testimony.

Additionally, as described below, Defendants' objection should be rejected because (1) Defendants did not use Mr. Ripps' name as the creator of their infringing NFT collection "whenever possible," (2) Defendants' alternative explanation for why

1   the RR/BAYC Foundation page displayed Yuga Labs' marks is not credible, (3) Mr.

2   Ripps testimony is not credible, and (4) Defendants' cherry-picked communications

3   with alleged customers to do not discredit the Court's finding that confusion was

4   likely.

5       **Defendants Did Not Attribute RR/BAYC NFTs To Mr. Ripps Whenever**

6   **Possible:**  Defendants did not attempt to avoid confusion, on the contrary Defendants

7   deliberately designed and marketed their infringing NFTs to confuse consumers.

8   Defendants could have called their NFT collection something other than "Bored Ape

9   Yacht Club" with the symbol "BAYC" ***immutably*** in the metadata for the NFT smart

10   contract, but they chose not to.  Atalay Decl. ¶¶ 3-6; JTX-600; JTX-1146.  Defendants

11   could have called their Foundation page anything other than "Bored Ape Yacht Club,"

12   but chose not to.  JTX-28.  Mr. Ripps could have replied to the @j1mmy.eth Tweet

13   asking what NFTs consumers were buying with any phrase other than "bayc v3," but

14   he chose not to.  JTX-689.  Defendants could have used different images or overlaid

15   some commentary on the images they did use, but they chose not to.  *See, e.g.*, JTX-

16   801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because

17   "it's just insane to have the same art"); JTX-801.196 (Mr. Lehman demonstrating

18   what an overlay might look like and recommending not to "in the marketing show

19   screenshots like the ones [Mr. Hickman] showed" "[b]ecause it is too confusing to the

20   'average joe'"); JTX-696.1 (tweet showing screenshot of Ape Market).  Defendants

21   could have attacked Yuga Labs in countless non-infringing ways.  But they did not.

22   Instead, they used Yuga Labs' marks, commercially, in the way that would make

23   Defendants the most money by selling counterfeit NFTs that confused consumers.

24   O'Laughlin Decl. (Dkt. 341).

25       **Defendants' Alternative Explanation For Why The RR/BAYC Foundation**

26   **Page Bore Yuga Labs' Marks Lacks Credibility:**  Defendants ask the Court to

27   believe that Foundation unilaterally chose to brand their infringing NFT collection

28

with Yuga Labs' marks.  This explanation is implausible.  Even if Mr. Ripps did not personally make the decision for Foundation to display Yuga Labs marks, and even if he could not have edited it after the fact (like he admits he could on other marketplaces), the use of Yuga Labs's marks likely occurred because Mr. Ripps chose to use Yuga Labs' marks for the RR/BAYC token name and token tracker.  Atalay Decl. (Dkt. 337) ¶ 4.  Thus, even if Foundation did decide to name Defendants' infringing NFTs "Bored Ape Yacht Club," that fact neither cuts against the Court's finding of intent and in fact supports the Court's finding of a likelihood of confusion by showing that even the Foundation website was confused by the RR/BAYC's deceptive token name and token tracker.

It is implausible and uncredible for Mr. Ripps to claim that he had zero insight into or control over the look and feel of the website through which each of his infringing NFTs were sold.  Ripps Depo. Designation (Dkt. 396) at 82:12-13 ("Well, technically, all of them were [sold through Foundation] because it was a Foundation contract").  Mr. Ripps' testimony is a lie.

**Mr. Ripps' Testimony Is Not Credible:**  Mr. Ripps' testimony is not credible, as demonstrated by its contradictions by the evidentiary record, other testimony, and impeachment at trial.  For instance, in his trial declaration Mr. Ripps testified that he "never reached a conclusion on what ApeMarket would actually be . . . ."  Ripps Decl. (Dkt. 346) ¶ 178.  However, ApeMarket was ready to launch within a matter of days. *See* Trial Tr. at 247:10-12 ("Q:  And there was a ready-to-go Ape Market by February – excuse me – by June 24, 2022? A:  Among other things, yes[.]"); JTX-1027 (post from Ape Market twitter account advertising that "ApeMarket.com will go live within 24 hours of the final mint, which we will announce shortly"); JTX 696 (posts from Ape Market Twitter account).  This confirms Mr. Atalay's testimony that the Ape Market source code "was in such a state of completion that it was operational."  Trial Tr. at 137:23-24.

1    Mr. Ripps also testified that his "intention in making the RR/BAYC artwork

2 was not to monetize Yuga Labs' brand."  Ripps Decl. (Dkt. 346) ¶ 182.  However,

3 documents entered into evidence at trial showed that Defendants intended to "make

4 like a million dollars."  JTX-1574; *see also* Solano Decl. (Dkt. 342) at ¶ 72 ("Based

5 on my review of public Twitter posts produced in discovery, Mr. Ripps boasted that

6 he made over $1.2 million on his scam, implying no one could stop him from

7 counterfeiting NFTs and harming the goodwill of the BAYC brand.").  And, as a

8 further example, Mr. Ripps testified that he minted the RR/BAYC NFTs to his

9 "personal wallet, ryder-ripps.eth" despite the fact that the "ryder-ripps.eth" name did

10 not appear on Etherscan until *after* minting, most if not all of, the infringing NFTs.

11 *Compare* JTX-25, *with* JTX-36.  Thus, Defendants' narrative that customers would

12 not be confused because they could see the NFTs were minted from Mr. Ripps' wallet

13 is belied by the fact that the wallet displayed Mr. Ripps' name *after* the initial mint

14 and customers would not encounter the "ryder-ripps.eth" creator tag had they even

15 tried to look.  While Mr. Ripps attempts to couch his lies in "sarcasm," the ultimate

16 effect was confusion in the marketplace and a significant payday for Defendants.

17    Mr. Ripps also repeatedly lied about his discovery obligations.  Throughout

18 discovery Mr. Ripps signed no fewer than three declarations (two of which were

19 Court-ordered), under penalty of perjury, stating that he had searched his records and

20 produced all responsive documents related to the RR/BAYC NFTs.  JTX-1541 (Jan.

21 17, 2023); Dkt. 109-42 (Feb. 17, 2023); Dkt. 158 (Mar. 21, 2023).  After each of these

22 three declarations, however, Defendants continued to produce responsive documents

23 after Yuga Labs independently discovered evidence of improper withholding.  *See,*

24 *e.g.*, JTX-1574-JTX- 1591 (text messages between Mr. Ripps and Mr. Cahen,

25 withheld until March 21, 2023, discussing relevant topics such as Defendants'

26 infringing NFT collection, Yuga Labs, Defendants' profit intent, Ape Market, and

27 marketing).  Defendants withheld documents such as ***hundreds of pages of text***

28

*messages* them until March 21, 2023 — after Mr. Ripps verified under penalty of perjury that he produced all responsive documents, after the Court had to order responsive documents produced twice in response to Yuga Labs' discovery motions, and after Yuga Labs had already filed its motion for summary judgment. *See* Dkt. 145 (order requiring Defendants to produce communications). Defendants also produced responsive documents even after their March 21, 2023 declaration; for example, on April 11, 2023, Defendants produced messages with a BAYC NFT holder to whom Defendants were trying to provide an infringing NFT. Defendants have no excuse for their repeated improper withholding of material evidence and repeated lies under oath.

Mr. Ripps' testimony that the text message presented to him at trial did not have anything to do with the RR/BAYC project is another blatant lie. These documents that Mr. Ripps wrongly withheld until after Yuga Labs' summary judgment submission included text messages discussing airdropping more of Defendants' infringing NFTs to the wallets of those who have already purchased them. Thus, Mr. Ripps' testimony that he did not "really find it to have anything to do with the RR/BAYC project" is unbelievable. Trial Tr. at 268:17-21; JTX-1574 (text messages in which Mr. Cahen suggests Mr. Ripps "airdrop like 10 more to each person who already bought one" and that if Mr. Ripps airdropped "20-30" he would "sell out within 48 hours" and "make like a million dollars"). Mr. Ripps' testimony reiterates what is obvious from the record: Defendants' stories change based on what is convenient for them at the time. Mr. Ripps, a proven liar, is not a credible witness.

And Mr. Ripps' testimony that he never marketed his infringing NFTs with the "Bored Ape Yacht Club" marks is also not credible. Ripps Depo. Designations (Dkt. 369) 61:5-9. Significant evidence proves the contrary. *See, e.g.,* JTX-28 (Defendants' Foundation page listing their infringing NFTs as "Bored Ape Yacht Club").

**Defendants' Third-Party, Unreliable Communications Do Not Negate The Court's Findings Or Yuga Labs' Experts' Opinions:** As discussed further *supra*

¶ 7(d) (lines 3:20-23), Defendants' cherry-picked communications from a self-selecting group are far from a comprehensive survey of consumer confusion in the market.  Defendants have no evidence supporting a claim that a statistically significant number of consumers were not confused.  Indeed, the hundreds of refunds they provided at consumers' requests suggest that some purchasers were confused.  And, there is no reliable evidence in the record that the individuals identified in the cited emails, or all other purchasers, are "collectors" as Defendants contend.

### Defendants' Reply:

Yuga's reference back to its responses in *supra* ¶ 7(a) do not provide adequate grounds to accept Yuga's erroneous proposed finding of fact.  For reasons provided in *supra* ¶ 4 (both in Defendants' objections and Defendants' reply in support of their objections), the evidence showed that Defendants did not market RR/BAYC NFTs as Bored Ape Yacht Club NFTs and did not rely on Yuga's marks to sell the NFTs.  Additionally, Defendants' reply in *supra* ¶ 4 similarly explains that (1) this Court's summary judgment cannot be used to support a finding of fact a trial, (2) Defendants acted in a good faith belief that the RR/BAYC collection was protest art and consumers understood the satirical nature of RR/BAYC NFTs, and (3) Mr. Solano is not a credible witness including because he admitting at trial that he testified falsely.

Yuga's additional responses to this objection similarly fail because (1) the Defendants always identified Mr. Ripps as the creator of RR/BAYC collection whenever it was possible to do so, (2) the Foundation page for RR/BAYC always identified Mr. Ripps as the creator, (3) Mr. Ripps is a credible witness and was unimpeached, and (4) Defendants received hundreds of letters from actual purchasers of RR/BAYC NFTs showing that purchasers were not confused.

***First,*** Defendants attributed RR/BAYC NFTs to Mr. Ripps whenever it was possible to do so.   Defendants controlled their personal Twitter accounts and rrbayc.com—and Defendants also included the name of Ryder Ripps (not Yuga) as

the creator of RR/BAYC NFTs, including on rrbayc.com (JTX-2085, JTX-2086), Twitter posts (Ripps Decl. ¶ 111 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344); JTX-671).  All other platforms were owned and operated by third parties, which put restraints on what Defendants could do.  Still, even though Defendants did not have control over third party platforms, they used what little abilities they had to ensure that, for example, Foundation identified Mr. Ripps as the creator.  JTX-671. Likewise, Etherscan identified Mr. Ripps as the create either by his wallet name or unique wallet address.  JTX-600; JTX-1146.  And even OpenSea clearly labeled the NFT collection as "RR/BAYC" and stated that it is "By ryder_ripps."  JTX-28.

     ***Second,*** the uncontested evidence at trial, including Mr. Ripps's designated deposition testimony, show that Mr. Ripps did not design the Foundation page for RR/BAYC.  Dkt. 369 [Ripps Depo. Designations] 70:19-25 ("Q. And who created this page for you?  A. Who created this page for?  Q. Uh-huh A. ***I guess Foundation helped make it because I didn't design [it]***.  Like, that's not my logo in the corner, and I, you know, I probably would have designed it bit different.  So Foundation."). Within Foundation's chosen design, the exhibits show that the RR/BAYC collection was listed under Mr. Ripps's creator page.  As Mr. Ripps explained at this deposition, the Foundation page (based on the way it organizes content) was showing the NFT collection as Ryder Ripps's Bored Ape Yacht Club which is simply the long-form of "RR/BAYC":

    Q.    On this Foundation page.

    A.    Well, this is my Foundation page.  So it already says "Ryder Ripps/Bored Ape Yacht Club." You can see it right there, Ryder Ripps/Bored Ape Yacht Club. So I wouldn't write "Ryder Ripps, Ryder Ripps, Ryder Ripps/Bored Ape yacht Club."  It already says "Ryder Ripps/Bored Ape Yacht Club."

    Q.    Can you show me where it says "Ryder Ripps/Bored Ape Yacht Club."

A.      Ryder Ripps/Bore Ape Yacht Club.

Dkt. 369 [Ripps Depo. Designations] 76:13-22.

**Third,** Mr. Ripps is a credible witness.  Mr. Ripps's declaration was uncontested because Yuga elected to forego any substantive cross-examination of Mr. Ripps on **any** portion of Mr. Ripps's declaration.  *See* Trial Tr. [Ripps] 267:7-271:9. As the Supreme Court has explained, "[c]ross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  This is because the purpose of cross-examination is "the direct and personal putting of questions and obtaining immediate answers." *Id.*; *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004) ("One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information[.]").   Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that "principle means" of testing Mr. Ripps credibility weighs decisively in favor of accepting Mr. Ripps's declaration.

Yuga incorrectly argues that Mr. Ripps's declaration was challenged by other evidence in the trial record.  Yuga did not show at trial that any of this other evidence in the trial record undermines Mr. Ripps's testimony, because Yuga never addressed that purported other evidence in any way at trial.  This is precisely why Yuga's failure to cross-examine Mr. Ripps is fatal to their new post-trial challenges to his testimony. Having failed to challenge Mr. Ripps's testimony at trial, Yuga now seeks to take evidence out of context and mischaracterize documents.  This cannot remediate their election not to contest Mr. Ripps's credibility at trial.

For example, Yuga incorrectly argues that Mr. Ripps's testimony that ApeMarket was in the ideation stage and that he had not decided on what ApeMarket would be was somehow contradicted by Mr. Cahen's testimony.  Contrary to Yuga's argument, Mr. Cahen repeatedly testified that ApeMarket was in the ideation stage:

> Q.   You used the prospect of a marketplace to drive sales of RR/BAYC NFTs; correct?
>
> A.   What I would say I did was use the prospect of a potential marketplace **which we were in the ideation phase of**, I would say that I absolutely 100 percent used the prospect of that to draw attention to my protest of racism, anti-Semitism, and financial fraud being committed by Yuga Labs and Bored Ape Yacht Club.

Trial Tr. [Cahen] 231:21-232:3 (emphasis added).

> 258.   We discussed the idea of creating a system that would allow holders of popular NFT collections to trade their NFTs without being fleeced by centralized parties charging exorbitant fees.
>
> 259.   Ultimately, **we never agreed on what ApeMarket would be**.

Cahen Decl. ¶¶ 258-259 (Dkt. 344) (emphasis added).  Other witness corroborated Mr. Ripps's testimony that he had not decided what ApeMarket would be.  Mr. Hickman testified about his ongoing discussion on potential designs of ApeMarket, explaining:

> Q.   BY MR. BALL:  You state here, "It's difficult to make the collection coexist without adding a friction step."
>
> A.   This is a discussion, **an ideation of different ideas, none of which were actualized**.

Trial Tr. [Hickman] 211:19-22 (emphasis added).

Yuga also incorrectly argues that the trial record contradicts Mr. Ripps's declaration regarding his intent in creating the RR/BAYC collection.   The full testimony that Yuga cites provides:

> 182.   My intention in making the RR/BAYC artwork was not to monetize Yuga's brand but instead to criticize Yuga's use of objectionable imagery and to educate the public about the nature of NFTs.

183. As an artist, I believed that I could create an "army of educators" through my art.

184. I believed that use of art to criticize Yuga and its imagery was protected by the First Amendment.

Ripps Decl. (Dkt. 346) ¶¶ 182-184.  Significant evidence in the record corroborates Mr. Ripps's statements.  Mr. Ripps's and Mr. Cahen's contemporaneous communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize.  For example, in private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic purpose of the project, their intention that it would spread criticism of Yuga, and their intention that social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct.  JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.  Defendants' online discussion, which consisted of nearly the entirety of Defendants' public activities associated with RR/BAYC, confirms their intent.  In those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.  And lastly, the voluminous correspondence that Defendants received shows that they did in fact create a "community of educations" as Mr. Ripps intended, who have written letters expressing gratitude and support for the criticism of Yuga.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX-2590; JTX-2592; JTX-2595; JTX-2596; JTX-2599.

Yuga incorrectly argues that this evidence regarding Mr. Ripps's intent has been refuted by citing JTX-1574 to suggest that Mr. Ripps privately said that he intended to make a million dollars from the RR/BAYC artwork.  But in reality, ***the***

***document contains no such statement from Mr. Ripps***.  The entirety of Mr. Ripps

statements in JTX-1574 were "lolol" (which stands for "laugh out loud" repeated

twice).  In other words, Mr. Ripps was laughing at a ***joke*** made by Mr. Cahen.   And

Mr. Ripps in the same exchange later stated that he needs "to get a front end" in

response to more jokes from Mr. Cahen (again, not a reference to any intent to profit).

*See* JTX-1574.

Yuga also cites the unreliable Declaration of Gregory Solano. Mr. Solano is not

credible given the many false and misleading statements contained in his declaration.

For example, Mr. Solano was forced to concede on cross-examination that his sworn

declaration included a false statement claiming that Defendants continue to receive

royalties from sales on secondary marketplaces:

> Q.   And you understand that Mr. Ripps and Mr. Cahen have testified that
> they do not currently receive any royalties or creator fees from sales
> on secondary marketplaces; right?
>
> A.   Yes.
>
> Q.   So you don't have any basis for your statement that their profits
> continue to increase; correct?
>
> A.   It's my understanding that they were collecting royalties or creator
> fees from LooksRare for quite a while.  Although, those were
> supposed to be donated to charity and never were.
>
> Q.   ***They don't continue to increase; correct, sir?***
>
> A.   ***Correct.***
>
> Q.   ***That statement, that part of your witness statement is incorrect;
> right?***
>
> A.   ***Yes.***

Trial Tr. [Solano] 48:15-49:4 (emphasis added).  Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial.  Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id*. at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes.").  Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted.  Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1.  In fact, no one has been able to identify a single confused consumer in the entirety of this case.  *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

1    Yuga then incorrectly argues that Mr. Ripps's statement about his intent is

2 refuted by comments from other members of the RR/BAYC project.  But these

3 statements show no such thing.   For example, Yuga's cites JTX-801.208 in which

4 Mr. Cahen states that a priority is "getting RR/BAYC to sell out."  But as Mr. Cahen

5 explained at trial, the whole point of broad exposure through the RR/BAYC collection

6 (including getting people to reserve NFTs) was "spreading and magnifying criticism

7 of Yuga."  Cahen Decl. ¶ 98 (Dkt. 344).  And Mr. Cahen's private communications in

8 the same exhibit (JTX-801) confirm that the RR/BAYC collection was created for

9 artistic criticism: "… we actually all dig the idea of Ryder literally hand minting these

10 things.  It's quite funny and artistic." (JTX-801.00010); "I love it. It puts the primary

11 focus on the art … and is a conceptual commentary." (JTX-801.00012-13); "It makes

12 a strong statement.  This is art, not Pokemon cards." (JTX-801.00013); "Because

13 that's where the real importance lies.  RR/BAYC truly is very important conceptual

14 art imo.  And now we are all helping shape that art further." (JTX-801.00196).

15 Yuga also cites Mr. Hickman's deposition testimony in which he stated that his

16 "financial arrangement" was "a software developer being compensated for making

17 software."  Hickman Depo. Designations (Dkt. 394) at 129:3-6.  But Mr. Hickman's

18 testimony about this topic at trial was unequivocal about his purpose in participating

19 in the RR/BAYC project:

20 Q.    Why did you expect to make less from your work on this RSVP
21        contract than your normal rate?

22 A.    I was contributing because I believe in standing up for the illegitimate
23        business practices and imagery in this Yuga Labs BAYC NFT
24        collection.

25 Trial Tr. [Hickman] 221:11-15.  Mr. Hickman further explained, "We are selling a

26 receipt that says *I committed to this protest* that points to the same public [images] that

1   a lot of different collections point to including Yuga Labs point to the same resource."

2   Trial Tr. [Hickman] 222:18-21 (emphasis in original).

3        Yuga also cites to Mr. Lehman's declaration to suggest that Defendants

4   considered the RR/BAYC collection to be a "business venture."  Defendants never

5   used the term "business venture" to describe the RR/BAYC project.  In fact, the only

6   place where the term appears is in Mr. Lehman's declaration, which was a document

7   drafted by Yuga and signed under coercion and under threat to Mr. Lehman's family.

8   Yuga's attorneys, not the Defendants, coined the term "business venture."  As

9   demonstrated during trial, Mr. Solano relied on the phrase "business venture" in Mr.

10  Lehman's declaration, without having considered that Yuga's counsel drafted the

11  declaration and selected the phrase "business venture," and without having considered

12  that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 37:20-

13  22; [Solano] 40:3-14.  Mr. Solano also relied on the declaration without having

14  considered that Mr. Lehman was afraid for his family at the time he signed his

15  declaration, because Yuga's lawsuit against him would be disastrous to his family and

16  himself, even if Mr. Lehman won.  Trial Tr. [Solano] 38:17-19.

17       Lastly, Yuga argues that it somehow challenged Mr. Ripps's trial declaration

18  through its cross-examination of Mr. Ripps concerning his earlier January 17, 2023,

19  verification.  But Yuga's cross-examination did not result in any impeachment or

20  inconsistency:

21       Q.   You produced those text messages, that you withheld throughout this
22            case, including when you testified that you had no responsive
23            documents on January 17, 2023; correct?

24       A.   I think that we – the question was all communications that relate to
25            the creation of RR/BAYC, which we felt was very much in the group
26            chat that was called RR/BAYC.  And we produced that, which you
             guys have extensively relied on.

27

28  Trial Tr. [Ripps] 268:5-11.  Mr. Ripps further explained:

Q.   And, Mr. Ripps, the text messages that you produced in this case include the RR/BAYC chat; right?

A.   Yes.  We produced everything that we could, despite the fact that Yuga produced nothing.

Q.   Exhibit Number JTX-801 is the RR/BAYC – on of the RR/BAYC chats that you produced; right?

A.   I don't have it on the screen, but I see you holding them, and I see them –

Q.   Do you see it now?

A.   Yes.  We produced hundreds of thousands possibly of messages that all were between the four people involved in the final state of the project and basically everything to do with the development of this project.

Q.   Did you believe, in good faith, that you had given Yuga everything that had to do with the development of this project?

A.   Yes, I did.

Trial Tr. [Ripps] 270:3-18.  Mr. Ripps further testified that Yuga had sought sanctions multiple times based on Yuga's false accusations of discovery misconduct, and that this Court denied all of Yuga's baseless motions.  Trial Tr. [Ripps] 269:21-270:2.  Mr. Ripps's trial testimony is no surprise given that the verification stated "[I] produced all responsive documents that I have been able to locate after a reasonable search" and further stated "I also understand that discovery obligations are continuing, and I will produce any additional responsive materials or information to the extent any are found based on a reasonable investigation.  ***I reserve the right to make changes or additions to any of these answers or document productions*** if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes

1  available." Dkt. 109-33 (emphasis added).  Mr. Ripps fulfilled his discovery

2  obligations and upheld his verification by providing all the responsive material he

3  located after a reasonable search to the best of his knowledge.

4      The context and accurate content of the evidence Yuga cites shows that the trial

5  record does not contradict any portion of Mr. Ripps's declaration.  Yuga had an

6  opportunity to fully vet its false allegations at trial through cross-examination of Mr.

7  Ripps but elected not to do so.  Mr. Ripps's testimony was therefore unchallenged.

8      ***Fourth,*** Yuga falsely states that these Defendants relies on "cherry-picked

9  communications" from actual purchasers of RR/BAYC NFTs.   Mr. Ripps testified in

10  his declaration: "I received ***hundreds of letters*** thanking me for creating the

11  RR/BAYC artwork and for standing up against a corporation that had used hateful

12  references in its brand" and then went on to give eight specific examples of the letters

13  he received.  Ripps Decl. ¶¶ 196-207 (uncontested) (emphasis added).  At no point

14  during trial did Yuga dispute this fact.  Yuga did not present any rebuttal evidence at

15  trial and Yuga elected to not cross-examine Mr. Ripps on this issue.   Thus, the

16  uncontested evidence at trial shows that Mr. Ripps received hundreds of letters from

17  RR/BAYC participants expressing support for the project and its criticism.

18  Yuga has also failed to present evidence disputing the fact that none of these

19  correspondences indicated that commissions or secondary sales were due to

20  confusion.  Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested).  Instead of addressing

21  correspondences from collectors, Yuga attempts to point to indications of consumer

22  confusion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28