Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(h), lines 4:22-25**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 7(h), lines 4:22-25:**

Defendants developed and marketed an NFT marketplace, Ape Market, where consumers could, as Defendants intended, purchase and sell RR/BAYC NFTs alongside BAYC NFTs, and which used BAYC Marks in a manner likely to confuse consumers. *See* Dkts. 337 ¶9; 392 at 136:23-138:5; JTX-696; JTX-806-JTX-809.

**Defendants' Basis of Dispute:**

The trial evidence did not show that Defendants developed an NFT marketplace that was likely to confuse consumers. ApeMarket was never released, the development of the website apemarket.com was never completed, and there was never a functioning marketplace. Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested). In fact, Mr. Ripps had never decided on what he wanted ApeMarket to be and had never signed off proposed or worked on by the RR/BAYC team. Ripps Decl. ¶ 178 (Dkt. 346) (uncontested). Mr. Cahen and Mr. Hickman also confirmed that ApeMarket never made it past the ideation stage. Cahen Decl. ¶¶ 258-259 (Dkt. 344); Trial Tr. [Hickman] 211:21-22.

Moreover, the trial evidence showed that in the ideation process for ApeMarket, the RR/BAYC team discussed extensively how to ensure that apemarket.com would not be confusing. For example, Mr. Cahen discussed with Mr. Lehman the idea of using a wrapper on apemarket.com to determine whether it would be an effective way to ensure that website was clear for users. JTX-801.185. Mr. Cahen also discussed with the RR/BAYC team the idea of using labels on apemarket.com. *See* JTX-801-

1  196 (Mr. Cahen wrote, "I think we could also have a label under the logo that denotes
2  which collection you are viewing or something" and further stating "[b]ecause that's
3  where the real importance lies[,] rrbayc truly is very important conceptual art …").
4       Yuga also misleadingly cites to the trial testimony of Mr. Hickman.  The
5  portion of the transcript that Yuga relies on (Trial Tr. [Hickman] 211:17-212:24)
6  involves questions regarding Defendants desire to add a friction step to the never
7  released ApeMarket to ensure that the design of the website would not cause
8  confusion.  Mr. Hickman explains, "This is our attempt to make it as clear as
9  possible.  We are having discussion on how to make sure it was very clear for users."
10 Trial Tr. [Hickman] 212:22-24.
11      Yuga ignores the trial evidence showing that apemarket.com was in the ideation
12 stage and was never released—the testimony of Mr. Atalay where he falsely states that
13 the marketplace was ready to be deployed.  Mr. Atalay made this testimony having no
14 personal knowledge about the RR/BAYC team's work in connection with ApeMarket,
15 on how it was still in the ideation stage, on how Mr. Ripps had not even decided what
16 apemarket.com would be, and that Defendants never actually released ApeMarket.
17      Yuga also cites to several exhibits that fail to show that Defendants designed
18 ApeMarket to be confusing to users.  For example, JTX-696 is not apemarket.com but
19 is instead the ApeMarket Twitter page (which Yuga has not alleged in this case as
20 infringing any of the asserted marks).  JTX-696 does not show what apemarket.com
21 displayed, what functionalities it had, and whether it has ever had any content that was
22 confusing in any way.  As noted above, ApeMarket was never released (Trial Tr.
23 [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps
24 Decl. ¶ 180 (Dkt. 346) (uncontested) and no evidence shows that the website domain
25 apemarket.com displayed anything that would confuse NFT collectors.  JTX-806 is
26 the source code for the unreleased ApeMarket that Mr. Ripps never approved and was
27 still subject to substantial changes that would have been necessary during the
28

RR/BAYC team's ongoing ideation stage.  And JTX-809 is a screenshot of mock-up of apemarket.com that Mr. Ripps did not approve and that was still subject to substantial changes from the ongoing ideation process for apemarket.com.

**Plaintiff's Response:**

Defendants' objection should be rejected because (1) the record shows that Ape Market was ready to launch, (2) Defendants promoted Ape Market and the RR/BAYC NFTs through the @ApeMarketplace Twitter account, and (3) Defendants' disclaimer demonstrates the likelihood of confusion and did nothing to dispel confusion.

**Evidence Admitted At Trial Confirms That Ape Market Was Ready To Launch:** Despite Defendants' attempts to argue otherwise, the evidence shows that Ape Market was ready to launch. *See* Trial Tr. at 137:23-24 ("The code was in such a state of completion that it was operational."); *see also* JTX-807; JTX-808; JTX-809. Indeed, at trial Mr. Cahen confirmed that Ape Market was ready to launch within a matter of days. Trial Tr. at 247:10-12 ("Q:  And there was a ready-to-go Ape Market by February – excuse me – by June 24, 2022? A:  Among other things, yes[.]").  Mr. Cahen later confirmed that he had "no reason to doubt" that the marketplace could be launched within a matter of 48 hours. *Id.* at 248:7-9.  That fact is also supported by documentary evidence submitted at trial.  See JTX-1027 (post from Ape Market twitter account advertising that "ApeMarket.com will go live within 24 hours of the final mint, which we will announce shortly"); *see also* JTX-801.370 (Mr. Lehman stating "[s]hould finish minting between 8-10 hours from now . . . so per our 24 hour commitment Friday afternoon would be the release" and Mr. Cahen responding "I think it makes sense to launch a bit earlier imo if we are comfortable doing so."); JTX-938 (Tweet from Mr. Cahen stating "[w]e built a marketplace for every YugaLabs asset . . . [a]nd we got sued for it.").  Ape Market existed as an entity actively marketing on social media, and the actual online marketplace was ready to launch.

**The @ApeMarketplace Twitter Account And The Ape Market NFT Marketplace Are Clearly Related And Both Were Used To Promote RR/BAYC:** Defendants created the @ApeMarketplace Twitter account to promote the Ape Market marketplace and their infringing RR/BAYC NFTs. The fact that the Twitter handle solely controlled by Mr. Cahen contains "ApeMarket" alone demonstrates the connection between the Twitter account and marketplace, but the Tweets from the account confirm that Defendants used @ApeMarketplace to promote Ape Market. Cahen Depo. Designations (Dkt. 395) at 126:5-7 (Q: And you are the sole operator of the Ape Marketplace account? A: That is correct, yes."). One such Tweet on June 20 asks, "Are you ready for ApeMarket.com, anon?" and another on June 13 teases the release of Ape Market stating "Get Ready" alongside a screenshot of Ape Market. JTX-696. And Mr. Cahen lied at trial when, under oath, he stated that he did not "plan to stimulate the sales of RR/BAYC NFTs by teasing the future release of ApeMarket." Trial Tr. at 234:15-18. Mr. Cahen tweeted from @ApeMarketplace a link to reserve an RR/BAYC on multiple occasions and on June 2 he tweeted that "[l]isting requires holding RR/BAYC." JTX-696. Defendants' own internal communications confirm the lie. On June 1 Mr. Cahen stated, "my goal for today is to create an announcement that will create hype and volume, we want to mint out the remainder of that collection." JTX-801.221. On that same day Mr. Cahen tweeted from @ApeMarketplace a screenshot of Ape Market with an image of an RR/BAYC and a link to reserve an RR/BAYC. JTX-696. This was a direct attempt to use the prospect of Ape Market to promote Defendants' infringing NFTs. Defendants' claim that Ape Market, @ApeMarketplace, and RR/BAYC are not connected is obviously false. The Tweets in JTX-696 repeatedly show the look, functionality, and intent of Ape Market and the infringing RR/BAYC NFTs within Ape Market.

**Defendants' "Disclaimer" Does Not Negate The Court's Finding That Consumers Were Likely To Be Confused:** With respect to the supposed disclaimer

Case 2:22-cv-04355-JFW-JEM   Document 427-20   Filed 10/02/23   Page 6 of 15   Page ID
 #:33707

on rrbayc.com, "the fact that Defendants concluded it was necessary to include a disclaimer demonstrates their awareness that their use of the BAYC Marks was misleading."  SJ Order (Dkt. 225) at 17.  Defendants knew they were infringing and creating confusion, as they acted contrary to their attorneys' advice.  JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark").  Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs.  Solano Decl. (Dkt. 342) ¶ 70; see also Ripps Decl. (Dkt. 346) ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

Defendants also knew that what they were doing was likely to lead to a lawsuit.  For instance, Mr. Ripps asked for a reference to his limited liability company, Live9000 LLC, to be added to the rrbayc.com because he did not "want to get sued personally."  JTX-803.57.  And, Mr. Lehman was still advocating for a "new logo and branding direction in light of the trademark thing" to Mr. Cahen before they learned of this lawsuit (JTX-918.00035) because "I don't want to get sued, OR, if get do get sued, for us to look really sympathetic to everyone" (JTX-918.0036).  That Defendants took some steps to try to conceal their intent when they were inevitably sued does not make the infringing activity less confusing; it just demonstrates their culpability.

The public was not required to read and click a disclaimer.  Indeed, even on rrbayc.com, Defendants could not enforce any requirement that users "read" what Mr. Hickman and Mr. Lehman referred to as a "wall of text" that they agreed "no one" would read (JTX-801.128).  And, this wall of text did nothing to dispel confusion amongst the general public when every single RR/BAYC NFT sold (or that ever will sell in the future) uses the trademarks BORED APE YACHT CLUB and BAYC— without any alleged disclaimer.  Atalay Decl. (Dkt. 337) at ¶¶ 3-6; Trial Tr. at 133:12-

1  134:20; JTX-600; JTX-1146. Defendants also did not include any similar disclaimer on Foundation or other secondary marketplaces, nor was there one on Etherscan. The majority of the sales of RR/BAYC NFTs have been on secondary marketplaces where there was no disclaimer. Kindler Decl. (Dkt. 338) at ¶ 69; JTX-801.376 ($10 million impact).

Defendants have no survey, or material consumer evidence, that users of the infringing rrbayc.com website read any disclaimer. This is not surprising since the vast majority of sales occurred outside of the rrbayc.com website. Indeed, Mr. Ripps admitted that all sales went through Foundation—where there was no disclaimer. Ripps Depo. Designations (Dkt. 396) at 82:8-13.

Finally, every single RR/BAYC NFT sold (or that ever will sell in the future) uses the trademarks BORED APE YACHT CLUB and BAYC. Atalay Decl. (Dkt. 337) at ¶¶ 3-6; Trial Tr. at 133:12-134:20; JTX-600; JTX-1146. Indeed, a user today linking to Etherscan will not see Ryders Ripps' Bored Ape Yacht Club, but will see Bored Ape Yacht Club and will not see RR/BAYC but will see BAYC. Trial Tr. at 52:6-21, 53:14-54:22, 138:6-20; JTX-117; Atalay Decl. ¶¶ 3-6; Solano Decl. ¶¶ 46-47, 78; *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1078 (9th Cir. 2006) (finding that disclaimers on packaging, but not on infringing product, did "nothing to dispel post-purchase confusion). Defendants' claimed disclaimer is non-existent to ineffective at best.

**Defendants' Reply:**

Yuga's responses to Defendants' objection fails because (1) the trial evidence shows that ApeMarket was in the ideation stage, (2) Defendants did not use ApeMarket to pomote the sale of RR/BAYC NFTs, and (3) Defendants' disclaimer shows that Defendants acted in good faith and that they took steps to decrease any likelihood of confusion.

***First,*** Yuga incorrectly argues that ApeMarket was ready to launch. Mr. Cahen repeatedly testified that ApeMarket was in the ideation stage:

> Q. You used the prospect of a marketplace to drive sales of RR/BAYC NFTs; correct?
>
> A. What I would say I did was use the prospect of a potential marketplace ***which we were in the ideation phase of***, I would say that I absolutely 100 percent used the prospect of that to draw attention to my protest of racism, anti-Semitism, and financial fraud being committed by Yuga Labs and Bored Ape Yacht Club.

Trial Tr. [Cahen] 231:21-232:3 (emphasis added).

> 258. We discussed the idea of creating a system that would allow holders of popular NFT collections to trade their NFTs without being fleeced by centralized parties charging exorbitant fees.
>
> 259. Ultimately, ***we never agreed on what ApeMarket would be***.

Cahen Decl. ¶¶ 258-259 (Dkt. 344) (emphasis added). Other witness corroborated Mr. Ripps's testimony that he had not decided what ApeMarket would be. Mr. Hickman testified about his ongoing discussion on potential designs of ApeMarket, explaining:

> Q. BY MR. BALL: You state here, "It's difficult to make the collection coexist without adding a friction step."
>
> A. This is a discussion, ***an ideation of different ideas, none of which were actualized***.

Trial Tr. [Hickman] 211:19-22 (emphasis added). To rebut this clear evidence that ApeMarket was in the ideation stage by mischaracterizing Mr. Cahen's testimony as saying that ApeMarket was "ready to go" by June 24, 2022. But what Mr. Cahen

actually said is that he did not know if ApeMarket was "ready to go" by June 24, 2022. Mr. Cahen then also stated that he works with the high skilled engineers that can implement nearly any project within days and that ApeMarket did not require much work in the first place as it used open-source code:

> Q. Sure. By Friday, June 24, ,2022, you and your associates had built a functioning ApeMarket?
>
> A. I'm not certain to answer that. But I believe with the quality of engineers that I work with, we could pretty much deploy anything within reason within a 48-hour window. So I always feel like the people that I work with are ready to go at the drop of a hat. That's kind of how I look at that.
>
> Q. And there was a ready-to-go ApeMarket by February – excuse me – by June 24, 2022?
>
> A. Among other things, yes, because this – a lot of the code used is open source. And ApeMarket is very similar to other marketplaces. The only differences that we were discussing that are really worth noting would be that it would be a cheaper source of infrastructure for the public to be able to utilize.

Trial Tr. [Cahen] 247:1-17. And finally, ApeMarket was never released, and there was no evidence that the webpage apemarket.com was a functioning website. Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested).

as saying that ApeMarket was "ready to go" by June 24, 2022. But what Mr. Cahen actually said is that he did not know if ApeMarket was "ready to go" by June 24, 2022. Mr. Cahen then also stated that he works with the high skilled engineers that can implement nearly any project within days and that ApeMarket did not require much work in the first place as it used open-source code:

> Q. Sure. By Friday, June 24, ,2022, you and your associates had built a functioning ApeMarket?
>
> A. I'm not certain to answer that. But I believe with the quality of engineers that I work with, we could pretty much deploy anything within reason within a 48-hour window. So I always feel like the people that I work with are ready to go at the drop of a hat. That's kind of how I look at that.
>
> Q. And there was a ready-to-go ApeMarket by February – excuse me – by June 24, 2022?
>
> A. Among other things, yes, because this – a lot of the code used is open source. And ApeMarket is very similar to other marketplaces. The only differences that we were discussing that are really worth noting would be that it would be a cheaper source of infrastructure for the public to be able to utilize.

Trial Tr. [Cahen] 247:1-17. And finally, ApeMarket was never released, and there was no evidence that the webpage apemarket.com was a functioning website. Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested).

***Second,*** the evidence at trial showed that Defendants did not use ApeMarket to stimulate sales of RR/BAYC NFTs. Yuga cross-examined Mr. Cahen about this very topic and was unable to show any evidence during that cross-examination showing that Defendant used ApeMarket with the intention to stimulate sales of RR/BAYC NFTs:

> Q. And in May and June of 2022, one of your goals for that apemarket.com domain was to use it to mint out the remainder of the RR/BAYC NFT collection; correct?
>
> A. ***No. That's theoretically impossible because doing that – creating an NFT marketplace would offer absolutely no functionality in terms of minting an already existing NFT contract.***

Case No. 2:22-cv-04355-JFW-JEM  -9-  DEFENDANTS' OBJECTIONS

| | | |
|---|---|---|
| Q. | | You used the prospect of the marketplace to drive sales of RR/BAYC NFTs; correct? |
| A. | | There never existed a marketplace. |
| Q. | | You used the prospect of a marketplace to drive sales of RR/BAYC NFTs; correct? |
| A. | | What I would say I did was use the prospect of a potential marketplace which we were in the ideation phase of, I would say that I absolutely 100 percent used the prospect of that to draw attention to my protest of racism, anti-Semitism, and financial fraud being committed by Yuga Labs and Bored Ape Yacht Club. |
| Q. | | You used the prospect of that marketplace to mint out the remained of the RR/BAYC NFT collection; correct? |
| A. | | ***No, I did not.*** |

Trial Tr. [Cahen] 231:8-232:6 (emphasis added).

The evidence that Yuga cites does not rebut this trial testimony. Yuga cites to JTX-696 to incorrectly argue that apemarket.com was used to promote and sell RR/BAYC NFTs. JTX-696 is not apemarket.com but is instead the ApeMarket Twitter page (which Yuga has not alleged in this case as infringing any of the asserted marks). JTX-696 does not show what apemarket.com displayed, what functionalities it had, and whether it has ever promoted or sold RR/BAYC NFTs. In fact, ApeMarket was never released (Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested) and no evidence shows that the website domain apemarket.com was ever used for the promotion or sale of anything. And moreover, the ApeMarket Twitter page was tied, as Mr. Cahen testified at trial, to the criticism of the RR/BAYC project, by posting links to rrbayc.com which contained a length artistic statement and incorporated gordongoner.com, which reveals Yuga use of racist imagery in length. And further,

the deposition testimony of Mr. Ripps that Yuga cites does not address using ApeMarket to stimulate sales of RR/BAYC NFTs but instead merely asked if Mr. Ripps ever made a statement tying the release schedule for ApeMarket to the minting out of RR/BAYC NFTs.

**Third,** Yuga fails to rebut that Defendants use of disclaimer is evidence of their good faith and was an act that reduced any likelihood of confusion. Yuga incorrectly cites to this Court's summary judgment order to suggest that use of a disclaimer is not a step taken to avoid confusion. The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in Sienze v Kutz, the Court held that although **aspects** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling the Defendants' disclaimer applies only the issue of infringement and is not adequate support for use of a disclaimer generally or as applied to availability of disgorgement as a remedy, apportionment, and an exceptional case analysis.

Yuga incorrectly argues that the disclaimer "did nothing to dispel confusion." This is inaccurate and unfounded. As Mr. Ripps's testimony makes clear, the rrbayc.com website "required collectors to acknowledge and accept a disclaimer before they were able to commission an RR/BAYC NFT." Ripps Decl. ¶ 105 (Dkt. 346) (uncontested). Further that disclaimer stated "By purchasing this Ryder Ripps

artwork in the form of an NFT, you understand that this is a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary. You cannot copy an NFT. Please see the RR/BAYC contract here to verify provenance: Etherscan. By reserving your RR/BAYC you are purchasing a hold for an order that will be fulfilled or rejected/refunded by Ryder within 24h (Depending on the vibe of your wallet and the mood of Ryder at the time)." *Id.* at ¶ 106.

Further, Defendants' disclaimer did require all commissions of RR/BAYC NFTs on rrbayc.com to view and click through the disclaimer.  Further, it is apparent that NFT collectors read the disclaimer because the disclaimer, and Defendants' remaining activities aimed at preventing confusion, were successful.  The evidence at trial also showed that the RR/BAYC collection did not cause any actual confusion and was not likely to cause confusion.  Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales.  Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested).  To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  Indeed, neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are aware of a single instance of confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19.  Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga.  Trial Tr. [Muniz] 85:3-7 ("Q.  Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").  Mr. Solano, Yuga's President, similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano]

1    18:23-19:1.  The fact that there was not even a single confused consumer confirms
2    that the disclaimer was read by collectors and that Defendants were successful in
3    identifying for consumers Mr. Ripps as the source of origin for RR/BAYC NFTs.
4         Yuga also cites to correspondence among the creators discussing a possible fear
5    of litigation.  These discussions are taken out of a broader context of hundreds of
6    thousands of communications the creators made.  Further, whether the Defendants
7    feared possible litigation from a multi-billion-dollar company does not establish that
8    they intended confuse anyone.
9         And Yuga's complaint that Defendants did not use a disclaimer on Foundation,
10   Etherscan, or any other third-party website is inapposite.  Defendants have no control
11   over third party websites such as Etherscan and do not have the ability to design the
12   pages third-party websites use or how they choose to display the RR/BAYC NFT
13   collection.  It simply was not possible for Defendants to add a disclaimer on
14   Foundation or Etherscan because they do not control those websites.
15        Further, while there may have been many sales on secondary marketplaces as
16   Yuga alleges, as the evidence at trial showed, Mr. Ripps and Mr. Cahen earned little
17   profit from the sales that occurred on secondary markets.  As Mr. Ripps and Mr.
18   Cahen's testimony make clear, they tried to turn off royalties from the secondary sales
19   of RR/BAYC NFTs, as part of a criticism of Yuga's policy to receive 2.5% of
20   royalties on their secondary sales.  See Cahen Decl. ¶¶ 166-167 (Dkt. 344); Ripps
21   Decl. ¶¶ 116, 118 (Dkt. 346) (uncontested).  Further, their testimony credibly states
22   that they received only a small amount of royalties from Foundation before they shut
23   it off, around $1,000, and some from LooksRare, as that marketplace initially refused
24   to turn off the royalties, around $77,000.  See Cahen Decl. ¶¶ 168-172 (Dkt. 344).
25   Accordingly, sales of RR/BAYC NFTs on secondary markets is minimally relevant to
26   the analysis of Defendants' profits and the fact Mr. Ripps and Mr. Cahen purposefully
27
28

1  shut off royalties from such sales yet again supports a finding that they did not intend
2  to confuse and were motivated by their protest of Yuga not to profit.