Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Finding of Fact No. 11(c), Line 6:14** <br><br> Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Finding of Fact No. 11(c), line 6:14:

Defendants' profits from royalties or creator fees from resales of RR/BAYC NFTs totaled at least $117,309. JTX-723 ¶68; Dkt. 338 ¶¶45-50.

### Defendants' Basis of Dispute:

This finding of fact is misleading.  Yuga's finding of fact states that the profits Mr. Ripps and Mr. Cahen received from royalties for the secondary sale of RR/BAYC NFTs are "at least" $117,309, which implies that Mr. Ripps and Mr. Cahen are still receiving royalties and that the figure could be even higher.  As the evidence at trial showed, Mr. Ripps and Mr. Cahen purposefully shut off the royalties they received from marketplaces as a criticism of Yuga's practice of receiving a 2.5% royalty on their secondary sales.  Ripps Decl. ¶ 118 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 166-167 (Dkt. 344).  Yuga's president, Mr. Solano, was also forced to concede on cross examination that his sworn declaration is false in its claim that "Defendants continue to receive royalties or creator fees from sales on secondary marketplaces." Trial Tr. [Solano] 48:15-49:4.  Further, the evidence showed that Mr. Ripps and Mr. Cahen turned off the royalties they received from any marketplace that would allow them to do so.  Ripps Decl. ¶¶ 116-117 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 166-169 (Dkt. 344).  The only marketplace that initially would not allow them to turn off royalties, LooksRare, eventually honored Mr. Ripps and Mr. Cahen's request and shut off secondary sale royalties in May 2023.  Cahen Decl. ¶¶ 170-171 (Dkt. 344). Accordingly, royalties from secondary sales of RR/BAYC NFTs are not ongoing.

1   Additionally, Mr. Cahen testified that the total royalties he and Mr. Ripps

2   received were around $78,000 (at most $1,000 through Foundation and $77,000 from

3   LooksRare, before they were shut off).  Cahen Decl. ¶¶ 168, 172 (Dkt. 344).  This

4   evidence further supports a finding that the total royalties Mr. Ripps and Mr. Cahen

5   have received for the RR/BAYC Project are not more than $117,309, as this finding of

6   fact misleading implies.

7   The portions of Ms. Kindler's declaration that Yuga cites to for support also

8   note that Mr. Ripps and Mr. Cahen only received royalties from two NFT

9   marketplaces, LooksRare and Foundation.  Kindler Decl. ¶ 48 (Dkt. 338).

10  Accordingly, the evidence cited to here does not support this misleading finding of

11  fact.

12  **Plaintiff's Response:**

13  Defendants' objection is largely non-sequitur.  Defendants concede they made

14  at least $117,309 in royalties on secondary market sales, but they dispute that it could

15  possibly be more than that.  However, Defendants admit they accrued profits from

16  Looksrare until May 2023—i.e., for at least three months after Ms. Kindler's

17  blockchain transaction analysis.  *See* Kindler Decl. ¶ 5 ("These datasets were

18  extracted on February 1, 2023 and contain transactions from May 13, 2022 (when Mr.

19  Ripps began to mint RR/BAYC NFTs) through February 1, 2023."); *id.* ¶ 50 ("My

20  calculation, which was as February 1, 2023, does not fully capture the total profits

21  earned by Defendants from resales of RR/BAYC NFTs since then, and it does not

22  capture future potential profits and other benefits that would accrue to Defendants as

23  purchasers continue to buy and sell RR/BAYC NFTs.").  There is no basis for

24  Defendants' objection.

25  **Defendants' Reply:**

26  This Response is unsupported.  Defendants do not concede that they made at

27  least $117,309 in royalties from the secondary market sales.  As outlined in the

28

objection, Mr. Ripps and Mr. Cahen credibly testified about the steps they took to prevent the accrual of royalties and how they no longer receive any.   Ripps Decl. ¶¶ 116-117 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 166-171 (Dkt. 344).  Further, Mr. Cahen testified, and the documentary evidence supports a finding, that he calculated the total royalties received from secondary sales was around $78,000.  *See* JTX-103 (calculating that by June 20, 2022 royalties from LooksRare were 70 ETH or $77,000).  Further, that determination of ETH received from LooksRare is higher than the amount Ms. Kindler calculated, which could account for any delta in time period between when Ms. Kindler made her calculations and when LooksRare royalties were shut off.  *See* Kindler Decl. ¶ 49 (Dkt. 338) ("Defendants estimated that they earned 70 ETH from LooksRare creator fees, which is higher than my calculation of 65 ETH.").