Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 11(d), lines 18-20**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 11(d), lines 18-20:**

This amount shall not be disgorged because the Court finds it appropriate to transfer the RR/BAYC smart contract to Yuga Labs and Ms. Kindler agreed that Yuga Labs should not receive this sum if it received the smart contract. Dkt. 392 at 198:18-25.

**Defendants' Basis of Dispute:**

Given the evidence presented at trial, the Court should not find that it is appropriate to transfer the RR/BAYC smart contract to Yuga.[1] "A trademark injunction . . . can raise serious First Amendment concerns because it can interfere with truthful communication between buyers and sellers in the marketplace. Accordingly, we must ensure that the injunction is tailored to eliminate only the specific harm alleged." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010) (cleaned up). Here, a properly tailored injunction must be targeted to eliminate any confusion resulting from the sale of RR/BAYC NFTs, or the use of the "rrbayc.com" and "apemarket.com" domains. Transferring the RR/BAYC smart contract to Yuga is not tailored to eliminate the harm alleged and could have a stifling effect on Mr. Ripps and Mr. Cahen's First Amendment rights as the minting of the RR/BAYC NFTs is intricately connected to their protest against Yuga. Ripps Decl. ¶ 87 (Dkt. 346) (uncontested); Cahen Decl. ¶ 97 (Dkt. 344). Further, as the

---

[1] No injunction should enter in this case, and nothing in this document should be construed to suggest that Defendants believe any injunction is proper or as a waiver of any right to contest on appeal the entry of an injunction.

1  evidence presented at trial indicated, Yuga has not identified even a single person who
2  obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr.
3  Cahen, and Mr. Hickman are not aware of a single instance of actual confusion. Ripps
4  Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶
5  222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1;
6  Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on.
7  Yuga Labs has been unable to identify even[] a single person who purchased an
8  RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct."). 
9  Accordingly, there is no evidence of actual confusion resulting from the sale of
10 RR/BAYC NFTs that an injunction transferring the RR/BAYC smart contract would
11 eliminate.  Finally, the RR/BAYC smart contract already clearly indicates the creator
12 is Mr. Ripps.  Ripps Decl. ¶¶ 88-90 (Dkt. 346).  Transferring the smart contract to
13 Yuga, therefore, would not help eliminate any of the alleged confusion resulting from
14 the sale of RR/BAYC NFTs.
15      Finally, the evidence Yuga cited is misleading.  Ms. Kindler testified if Yuga
16 receives an injunction preventing Mr. Ripps and Mr. Cahen from minting any new
17 RR/BAYC NFTs or selling the ones they currently hold, Yuga is not entitled to the
18 estimated value of these NFTs in disgorgement. Trial Tr. [Kindler] 198:18-25 ("Q
19 Now, if the Court orders an injunction prohibiting minting of any new RR/BAYC
20 NFTs, the value of the unminted NFTs is zero; correct? A I don't know that -- maybe.
21 I would agree with you that it would not need to be included in an unjust enrichment
22 monetary compensation to Yuga. Q Yuga doesn't get to double-dip; right? A Yes.
23 Absolutely.").  Even if the Court limits its order to preventing the creation or sale of
24 RR/BAYC NFTs, this figure should be considered outside what Yuga can seek in
25 disgorgement.
26      **Plaintiff's Response:**
27
28

Case No. 2:22-cv-04355-JFW-JEM          -2-          DEFENDANTS' OBJECTIONS

Transferring control of the smart contract to Yuga Labs would allow it to regain control over its brand. The injunctive relief proposed by Yuga Labs is specifically tailored to accomplish this. *Infra* Conclusion of Law No. IV.2. Indeed, although two other courts have entered similar injunctions against Defendants' business partners. *See* Judgment and Order for Permanent Injunction Against Ryan Hickman (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023); JTX-621 (Consent Judgment and Order for Permanent Injunction Against Thomas Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023)), only this Court can order the transfer of RR/BAYC smart contract to Yuga Labs because only this Court has jurisdiction over Mr. Ripps. Mr. Lehman has, however, transferred control of the RR/BAYC RSVP smart contract (the contract that interfaced with the RR/BAYC smart contract and rrbayc.com) to Yuga Labs because he controlled that contract.

"Unless Yuga Labs has control of the RR/BAYC smart contract, Yuga Labs' brand will be forever tied to Mr. Ripps," Solano Decl. (Dkt. 342) ¶ 47, because he and Mr. Cahen still control the smart contract used to create the infringing NFTs that are permanently embedded with Yuga Labs' brand. Transfer of the smart contract will mean that "all uses of the BAYC Marks are under the control of the rightful owner of these marks. As long as Defendants own the RR/BAYC smart contract bearing the BAYC Marks, they will continue to confuse consumers by associating the BAYC Marks with themselves and their copycat NFTs." *Id.* ¶ 79. "If Yuga Labs had control of the RR/BAYC Smart Contract, it could limit the minting cap to 9,546 RR/BAYC NFTs to ensure that no additional NFTs were minted using the RR/BAYC Smart Contract." Atalay Decl. (Dkt. 337) ¶ 8. In addition, if Yuga Labs has control of the RR/BAYC smart contract, it will allow Yuga Labs to work with the NFT marketplaces to ensure that the human readable elements of the marketplace clearly indicate that RR/BAYC NFTs are not authentic BAYC NFTs. *See* Trial Tr. 136:9-18

1  ("But if Yuga Labs had control . . . we would have a much greater flexibility in
2  controlling how the collection is displayed in marketplaces, including OpenSea."); *see*
3  *also* Trial Tr. 100:6-14; Trial Tr. 138:6-139:11.  As long as Defendants retain control
4  of the smart contract, "Yuga Labs does not have the ability to exclusively control its
5  BAYC brand."  Muniz Decl. (Dkt. 340) ¶ 22.

6      There is also a concrete risk that Defendants will find ways to continue their
7  infringement if anything less than transfer of the smart contract is ordered by the
8  injunction.  Indeed, in these very objections, Defendant ***admit they intend to mint*** the
9  remainder of the infringing NFTs in their collection and insist they have a
10 constitutional right to do so.  *Infra* ¶ 11(d), lines 18-20 (arguing that surrendering
11 control of the smart contract to Yuga Labs would "have a stifling effect on Mr. Ripps
12 and Mr. Cahen's First Amendment rights as the minting of the RR/BAYC NFTs is
13 intricately connected to their protest against Yuga").  Defendants should not be able to
14 retain their ill-gotten profits and the means to continue profiting from their
15 infringement.

16     Finally, Defendants' argument that their infringement did not cause "actual
17 confusion" is irrelevant because (1) actual confusion is not a required element under
18 the Lanham Act to obtain equitable relief and (2) even so, there is ample evidence of
19 confusion in the record.  *See supra* ¶ 4.

20     **Defendants' Reply:**

21     Yuga's Response is unsupported.  First, as outlined above, we "must ensure that
22 the injunction is tailored to eliminate only the specific harm alleged." *Toyota Motor*
23 *Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010) (cleaned up).
24 Including a transfer of the smart contract would not be tailored to address the harm
25 alleged here.  Further, Yuga's citations to the decisions other courts have held with
26 regard to cases against Mr. Lehman (who settled with Yuga) and Mr. Hickman (who
27
28

had a default judgment entered against him) are dissimilar to the posture in this case, not binding, and irrelevant.

Second, the testimony Yuga cites to for support is unconvincing. Specifically, Yuga cites to Mr. Solano's declaration where he asserts that the smart contract uses the BAYC Marks and that it has caused and will continue to cause confusion. This is not supported. The smart contract that Yuga seeks to obtain clearly indicates the source of the RR/BAYC NFTs is Mr. Ripps's wallet and not Yuga. *See* JTX-1146. Therefore, the smart contract does not contribute to the alleged confusion. Additionally, the smart contract is, even according to Yuga's own witness's testimony, immutable and cannot be changed even if transferred to Yuga. *See* Trial Tr. [Atalay] 133:24-8. Accordingly, an injunction transferring the contract to Yuga would not be tailored to eliminate the alleged harm of infringement.

Additionally, as the evidence presented at trial indicated, Yuga has not identified even a single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct."). Accordingly, there is no evidence of actual confusion resulting from the sale of RR/BAYC NFTs that an injunction transferring the RR/BAYC smart contract would eliminate.

Yuga also cites to Mr. Atalay's declaration, which states that Yuga could limit any additional RR/BAYC NFTs that were minted if they had the contract. This same goal could be reached by less restrictive means, however, such as an injunction that prohibits Mr. Ripps and Mr. Cahen from selling RR/BAYC NFTs. *See* Dkt. 419-1,

CL 145.  Accordingly, the injunctive relief Yuga seeks is not tailored to address the harm alleged here.

Third, acknowledging that minting RR/BAYC NFTs is intricately connected to Mr. Ripps and Mr. Cahen's protest against Yuga is in no way an admission that Defendants intend to mint more RR/BAYC NFTs and Yuga's assertion that it is, is unfounded and misleading.  That portion of Defendants' objection shows the important First Amendment considerations at play in issuing an injunction that involves the transfer of the smart contract that the court must weigh.

Fourth, Mr. Solano's testimony was not credible given the many false and misleading statements contained in his declaration, as well as his repeated impeachment at trial.  For example, Mr. Solano was also forced to concede on cross-examination that his sworn declaration included a false statement claiming that "Defendants continue to receive royalties or creator fees from sales on secondary marketplaces."  Trial Tr. [Solano] 48:15-49:4. Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same

1  oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up
2  on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3
3  created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't
4  know.' Was that your testimony at your deposition? A Yes."); *id*. at 34:9-19 ("[Q] Do
5  you know whether Ape Market exists? A We have the code for Ape Market from Tom
6  Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6.
7  'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.'
8  Were you asked that question, and did you give that answer? A Yes.").

9        Finally, *see supra* ¶ 4, for Defendants' fulsome reply to Yuga's unfounded and
10 inaccurate response concerning actual confusion.