Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Finding of Fact No. 12, Lines 6:27-28** <br><br> Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 12, lines 6:27-28:**

Each RR/BAYC NFT refers to a contract with a token tracker displaying "Bored Ape Yacht Club (BAYC)"…

**Defendants' Basis of Dispute:**

This statement is misleading given the other indicators used in the RR/BAYC NFT contract that clearly indicate the source of the NFT was not Yuga. For example, the NFT collection was minted from Mr. Ripps's wallet, identified as "ryder-ripps.eth," was located at a unique "contract" address, and was minted on different dates and with different token IDs than Yuga's Bored Ape Yacht Club NFTs. *See* Ripps Decl. ¶ 89 (Dkt. 346) (uncontested); *see also* JTX-1146 cited in Atalay Decl. ¶ 5 (Dkt. 337).

Additionally, relying on the token tracker is misplaced. Yuga's former Chief Technical Officer, Kerem Atalay, explained that using token trackers or token names to distinguish NFTs is not "how most people would do that, and . . . I don't think that would be a surefire way of distinguishing between two smart contracts." Trial Tr. [Atalay] 132:21-133:8.

Finally, the evidence Yuga cites to is misleading. JTX-117 shows that the "Contract Creator" field in the Etherscan website can be selected and would allow any user to determine and confirm the provenance of the NFT contract. Finally, the portion of Mr. Atalay's declaration Yuga cites to, Dkt. 337, only includes a description of JTX-1146, which is a smart contract on Etherscan that includes "ryder-ripps.eth" as the Contract Creator. Accordingly, this evidence is misleading.

1 **Plaintiff's Response:**

2 It is undisputed that Mr. Ripps created the RR/BAYC smart contract, and that the marks "Bored Ape Yacht Club" and "BAYC" are immutably coded into the smart contract. Every RR/BAYC NFT to ever exist will refer to this smart contract and thus the BAYC Marks. The infringement is inseparable from the product. To remedy this irreparable harm, Yuga Labs should be given control of the smart contract for these infringing NFTs and regain "the ability to exclusively control its BAYC brand." Muniz Decl. (Dkt. 340) ¶ 22.

JTX-600 shows "Bored Ape Yacht Club" and "BAYC" coded into the RR/BAYC smart contract as source identifiers, and Defendants admit that JTX-600 "is an Etherscan page recording a transaction between Mr. Ripps and Foundation." *Supra* ¶ 7(e). In other words, Mr. Ripps admits that he launched the smart contract with the BAYC Marks coded into it, which caused websites such as Etherscan to confusingly display those marks to the public as if the smart contract was created by Yuga Labs. These marks can never be removed from the smart contract, causing hyperlinks and other references to the collection to display the BAYC Marks. Atalay Decl. (Dkt. 337) ¶ 6; Solano Decl. ¶¶ 46-47, 78. And despite Mr. Ripps testimony that he minted the RR/BAYC NFTs to his "personal wallet, ryder-ripps.eth," the "ryder-ripps.eth" name did not appear on Etherscan until *after* minting, most if not all of, the infringing NFTs. *Compare* JTX-25, *with* JTX-36. Defendants therefore caused their infringement of Yuga Labs' marks to be an inherent and unchangeable part of their NFT collection, in turn causing third party systems and observers to confusingly associate the two, resulting in more downstream marketplace confusion. The permanent existence of Yuga Labs' marks in association with the RR/BAYC smart contract is why, like a domain name, the smart contract should be transferred to Yuga Labs so that Yuga Labs can retain some control of the use of its marks.

1      Separately, whether or not relying upon a token tracker or token name is a
2   "surefire" way to verify the provenance of an NFT does change the fact that
3   Defendants caused the token tracker for their NFTs to use the BAYC Marks.  Even so,
4   Defendants testified the tracker is a "very common" way that consumers refer to their
5   NFTs.  Cahen Depo. Designations (Dkt. 395) at 148:12-13 ("Oh, yes.  I believe that
6   it's very common for people to do that.").  Mr. Cahen reiterated this testimony at trial.
7   Trial Tr. at 225:25-226:2.  And as Defendants admit, the token tracker for their
8   infringing NFTs is "Bored Ape Yacht Club" which led third-party websites to also
9   refer to Defendants' infringing NFTs using Yuga Labs' marks.  *Id.* at 149:12-13; JTX-
10  117; JTX-138; JTX-671.  Not only were third-party websites confused by this false
11  affiliation, but the token tracker also caused the Twitter bot @0xGem to falsely report
12  sales of RR/BAYC NFTs as sales of legitimate Bored Ape Yacht Club NFTs,
13  propagating confusion in the marketplace and diluting Yuga Labs' exclusivity.  JTX-
14  705; JTX-1029; Berger Decl. (Dkt. 339) at ¶ 8(i) ("First, the introduction of
15  RR/BAYC NFTs increased the perceived supply and decreased the perceived
16  exclusivity of authentic BAYC NFTs").  Indeed, the Court has already found that
17  "Defendants used Yuga's BAYC Marks to . . . ensure that the consumer will be
18  explicitly misled in the token tracker, which is the place where a consumer should be
19  able to authenticate and verify who created the NFT."  SJ Order (Dkt. 225) at 17.
20      **Defendants' Reply:**
21      First, as stated in our objection, this finding of fact is misleading given the other
22  indicia of provenance included in the smart contract for RR/BAYC NFTs, including
23  the contract address. *See* Ripps Decl. ¶ 89 (Dkt. 346) (uncontested); *see also* JTX-
24  1146 cited in Atalay Decl. ¶ 5 (Dkt. 337).
25      Second, we "must ensure that the injunction is tailored to eliminate only the
26  specific harm alleged."  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171,
27  1176 (9th Cir. 2010) (cleaned up).  Including a transfer of the smart contract would
28

Case No. 2:22-cv-04355-JFW-JEM           -3-           DEFENDANTS' OBJECTIONS

not be tailored to address the harm alleged here.  The smart contract that Yuga seeks to obtain clearly indicates the source of the RR/BAYC NFTs is Mr. Ripps's wallet and not Yuga.  *See* JTX-1146.  Even JTX-600, clearly shows that the transactions is from Mr. Ripps's wallet.  Therefore, the smart contract does not contribute to the alleged confusion.  Additionally, the smart contract is, even according to Yuga's own witness's testimony, immutable and cannot be changed even if transferred to Yuga. *See* Trial Tr. [Atalay] 133:24-8.  Accordingly, an injunction transferring the contract to Yuga would not be tailored to eliminate the alleged harm of infringement.

Additionally, as the evidence presented at trial indicated, Yuga has not identified even a single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A. Correct.").  Accordingly, there is no evidence of actual confusion resulting from the sale of RR/BAYC NFTs that an injunction transferring the RR/BAYC smart contract would eliminate.

Contrary to Yuga's assertions, Mr. Ripps and Mr. Cahen do not admit that the smart contract has the BAYC Marks coded into it. Evidence at trial showed that Yuga does not own the alleged BAYC Marks.  Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club.  Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673.  That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted

1 with the intent to allow people to commercialize their NFTs.  Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs.  We can agree on that; right?  A. Yes.  That is covered in the terms.").

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea.  Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13.  And, as Yuga's CEO admitted, there are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga.  Trial Tr. [Muniz] 81:18-22.  For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks.  *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Also, Yuga does not own the asserted marks because NFTs are not eligible for trademark protection.  The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).  Misrepresentation of the origins of a ***communicative*** work is a dispute relegated to the confines of copyright law, not trademark.  *Id.* at 33-35; *see also Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014) (*Dastar* bars trademark claims based on origin of hologram, as it is "likened to a cartoon animation").  Here, the "goods" for which Yuga claims trademark rights are NFTs, which are comparable to certificates of authenticity/ownership and are not digital goods in themselves.  Trial Tr. [Atalay] 127:9-16.

Case 2:22-cv-04355-JFW-JEM   Document 427-35   Filed 10/02/23   Page 7 of 8   Page ID
#:33852

Third, contrary to what Yuga argues, there is ample evidence that there was not confusion. Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were also required to read and click through a disclaimer acknowledging the artistic purpose of the project before they were allowed to commission an NFT. See Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these requirement and additional steps so that the artistic purpose of the work would be clear to participants. See Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement ultimately included, if it had a negative impact on usability? … A. … Ryder wanted it and so he had the final call.").

Unsurprisingly, therefore, the evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest against Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Additionally, as mentioned above, Mr. Ripps, Mr. Cahen, and Yuga's founders are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344). Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").

Fourth, the evidence Yuga relies on to establish confusion is unsupportive. For example, they point to tweets made from "GemBot," which is an automated software application and not evidence of a real person's confusion. *See* Cahen Decl. ¶¶ 226-227. Accordingly, its tweets do not prove any confusion.

Finally, Yuga improperly responds by arguing that the Court's summary judgment order supports a finding of what injunctive relief is available, incorrectly relied on the law of the case doctrine. The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze v Kutz*, the Court held that although *aspects* of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling is not supportive of a finding of what injunctive relief is appropriate.