Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 16**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Finding of Fact No. 16:

Consumers and Twitter bots tracking and posting about NFT transfers falsely attribute sales of RR/BAYC NFTs as BAYC NFTs as they reflect the BORED APE YACHT CLUB and BAYC marks in the RR/BAYC smart contract's token tracker, which causes confusion among consumers as to source, sponsorship, or affiliation. *See, e.g.*, JTX-705; JTX-722 ¶¶71-72; JTX-1029 See, e.g., JTX-705; JTX-722 ¶¶71-72; JTX-1029. Even more, whenever (now, or in the future) a consumer shares links to the RR/BAYC Etherscan page on Twitter, the resulting image displays Yuga Labs' BAYC Marks. Dkt. 342 ¶¶46-47.

### Defendants' Basis of Dispute:

Yuga has been unable to identify a single person who commissioned an RR/BAYC NFT thinking they were purchasing one of Yuga's Bored Ape Yacht Club NFTs. *See, e.g.*, Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Muniz] 85:3-7; Trial Tr. [Solano] 18:23-19:1. Instead, Yuga points to tweets by Twitter bots and other users to suggest that consumers were confused. This ignores the fact that Twitter bots, like @0xGem, are not consumers. Twitter Bots are pieces of software that read the blockchain and tweet about transactions. Furthermore, Twitter users who replied to Twitter bot tweets were able to discern between RR/BAYC NFTs and Bored Ape Yacht Club NFTs. JTX-705; JTX-1029.

In both JTX-705 and JTX-1029, Twitter users are quick to remark that the Twitter bot falsely indicated a Bored Ape Yacht Club transaction. JTX-705; JTX-

1029.  Users replied to the bot by saying "It's a RR ape" or "RRBAYC > BAYC." JTX-705. Another twitter user replied to the bot and mentioned this litigation, clearly indicating their ability to differentiate between RR/BAYC NFTs and Bored Ape Yacht Club NFTs.  JTX-1029.

Actual consumers have shown overwhelming support and appreciation for Defendants' art project.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  One collector stated that he was "glad [Mr. Ripps was] pointing out what bayc was doing."  Ripps Decl. ¶ 199 (Dkt. 346) (uncontested); JTX-2592. Another collector stated that Mr. Ripps did a "very positive thing" by "bringing attention to BAYC" and showing "what they are."  Ripps Decl. ¶ 204 (Dkt. 346) (uncontested), JTX-2035.

With respect to the marks, Defendants dispute that Yuga owns the referenced marks.  Yuga Labs gave away all intellectual property rights associated with the Bored Ape Yacht Club.  Yuga Labs' CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673.

**Plaintiff's Response:**

Defendants' objection concedes both that Twitter bots misreport sales of Defendants' infringing NFTs as genuine BAYC NFTs (due to Defendants' choice to name their infringing NFTs with the BAYC Marks, *see supra* ¶ 15) and that certain commenters on such posts felt the need to explain to others that these were indeed scam NFTs.  Such explanation was warranted, because other users in JTX-705 and JTX-1029 clearly exhibit confusion.  Even the tweet that Defendants note "mentioned this litigation" does so by saying "[t]he confusion in these comments will be prime evidence in the RR v Yuga case."  JTX-1029.  The fact that some consumers

eventually realized that Defendants' scam was a scam does not make it legitimate or any less likely to cause confusion.

Defendants' anecdotal evidence of individuals stating they support Defendants' infringement are irrelevant and immaterial.  A handbag counterfeiter may have allies or distributors, and those allies / distributors may even profess to believe in a cause, but that does not excuse the counterfeiter's wrongdoing or mitigate the likelihood of confusion in the marketplace.  *See* SJ Order (Dkt. 225) at 16 ("Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag.").  Further, confused consumers are unlikely to admit that they have fallen for Defendants' scam.  As Mr. Solano explained, being scammed is "super embarrassing" and consumers who were tricked "weren't going to, you know, raise their hand and shout about it." Trial Tr. at 54:10-16.  Nonetheless, Defendants' admission that they processed over $90,000 in refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75) undermines Defendants' suggestion that purchasers of their infringing NFTs were universally supportive and that no one was confused.

Defendants' argument that their infringement did not cause "actual confusion" is irrelevant because (1) actual infringement is not a required element under the Lanham Act to obtain equitable relief and (2) there is ample evidence of confusion in the record.  *See supra* ¶ 4.

Finally, Defendants' argument that Yuga Labs does not own the BAYC Marks is irrelevant, contrary to the Court's Summary Judgment Order, and precluded by their own stipulation.  *Supra* ¶ 1.

**Defendants' Reply:**

Twitter bots, like GemBot, are automated software applications and not evidence of a real person's confusion.  *See* Cahen Decl. ¶¶ 226-227.  Yuga has failed to present any credible evidence demonstrating consumer confusion.

None of Yuga's witnesses have been able to identify a single confused consumer who purchased an RR/BAYC NFT believing it was sponsored by Yuga. *See* Trial Tr. [Yuga's witnesses] 11:3-203:24. Instead, Yuga attempts to fabricate confusion by pointing to twitter bots and twitter users replying to twitter bots. However, these twitter replies demonstrate that users were not confused and able to distinguish between NFT collections. *See* JTX-1030, JTX-1032 (Tweets where the users are quickly identifying Mr. Ripps as the source of the NFT); JTX-1031, JTX-1034, JTX-1035 (Out of context one off tweets of users, that there is no evidence to believe purchased an RR/BAYC NFT, replying to GemBot).

Yuga cites Mr. Solano's testimony to argue that confused consumers are too embarrassed to admit that they were misled by the Defendants' art project. However, Mr. Solano has already demonstrated that his speculations are inaccurate. Trial Tr. [Solano] 48:15-49:4. Furthermore, if there were as many confused consumers as Yuga alleges, it is reasonable to believe that Yuga would be able to identify at least one.

Additionally, the evidence at trial showed that Yuga does not own the BAYC marks because (1) Yuga has either given away or abandoned its rights in the marks and (2) NFTs are not eligible for trademark protection. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt 344); Hickman Decl. ¶¶ 25-26 (Dkt 345); JTX 2672; JTX 2673. That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs. We can agree on that; right? A. Yes. That is covered in the terms.").

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. And, as Yuga's CEO admitted, there are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22. For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks. *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075. Further, Yuga does not own the asserted marks because NFTs are not eligible for trademark protection. The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). Misrepresentation of the origins of a ***communicative*** work is a dispute relegated to the confines of copyright law, not trademark. *Id.* at 33-35; *see also Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014) (*Dastar* bars trademark claims based on origin of hologram, as it is "likened to a cartoon animation"). Here, the "goods" for which Yuga claims trademark rights are NFTs, which are comparable to certificates of authenticity/ownership and are not digital goods in themselves. Trial Tr. [Atalay] 127:9-16.

Defendants have never stipulated to Yuga's Ownership of the BAYC Marks. Defendants hotly disputed ownership of the BAYC marks at summary judgment. Dkt. 163 at 2-8. And while ownership of the marks is not an issue relevant to the remedies trial in this case, Yuga has for some reason affirmatively raised the

issue—forcing Defendants to re-articulate their dispute for purposes of preserving their position for appeal and all other proceedings involving the BAYC marks. Yuga attempts to mischaracterize the Court record by citing to the pre-trial conference order. But *nowhere* in the pre-trial conference order did Defendants stipulate to ownership of the BAYC marks. Section 6 of the order contains all stipulated facts and those stipulated facts include only that Yuga released the BAYC collection and various facts about Defendants' activities associated with the RR/BAYC collection. Dkt. 320-1 at 3-4. Yuga points to Section 5, which is the admitted facts section, but this section again does not contain any admissions regarding "ownership" of the marks. Rather it merely identifies the asserted marks at issue for the remedies trial—something that Defendants admitted in light of the scope of the remedies trial and to ease this Court's work in adjudicating the remaining issues. Dkt. 32-1 at 2-3. Lastly, Yuga cites to Defendants' statement that the "Court has determined that Defendants infringed the BAYC Marks." Dkt. 320-1 at 13. But again, this is not an admission of ownership, it is a statement regarding the procedural history in this case that explains that the scope of trial is limited to remedies and does not include infringement. Had Defendants wanted to stipulate to ownership, they would have clearly and expressly done so—they have not. Defendants reserve the right to dispute ownership on appeal and in any other proceedings involving the BAYC marks.