Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 20, Lines 9:9-11**<br><br>Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM                    DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 20, lines 9:9-11:**

These instances of marketplace confusion harmed the perception of the BAYC brand and Yuga Labs' negotiating position in obtaining new deals under the BAYC brand. *See* Dkts. 340 ¶¶15-17; 342 ¶29.

**Defendants' Basis of Dispute:**

These reports of harm are unsubstantiated and not credible and Yuga provides no documentary support for them. Specifically, Yuga used e-mail and instant messaging to communicate for business. Trial Tr. [Muniz] 85:24-86:4. And yet, Yuga could not identify a single e-mail or text message discussing (1) confusion associated with the RR/BAYC project, Trial Tr. [Muniz] 86:14-87:6, or (2) how RR/BAYC uniquely caused any problems in the day-to-day business operations of Yuga. Trial Tr. [Muniz] 87:17-88:6. Yuga was also unable to identify any documentation of any press inquiries related to the RR/BAYC collection. Trial Tr. [Muniz] 88:7-89:2. Further, Yuga could not identify a single email, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions changes in negotiating dynamics with brand partners as a result of the RR/BAYC collection. Trial Tr. [Muniz] 101:7-12. ("Q. Did you identify a single e-mail, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions any of these concerns at all? A No, it was phone calls and e–ails -- I mean, phone calls and Zooms."). Ultimately,

1  Yuga did not mention RR/BAYC in any of its quarterly reports to its investors.  Trial
2  Tr. [Muniz] 89:18-23.
3       Finally, the evidence Yuga cites to is unsupportive as it includes only Ms.
4  Muniz and Mr. Solano's unsubstantiated reports of concerns raised, none of which
5  appeared in even a single piece of contemporaneous documentation.
6       **Plaintiff's Response:**
7       Likelihood of confusion is an adjudicated issue that is only reinforced by the
8  evidence at trial.  *See also supra* ¶ 4 (ample evidence in the record of likelihood of
9  confusion, as well as actual confusion).
10       Additionally, Yuga Labs' evidence of harm to its brand is overwhelming,
11  credible, and unrebutted.  *Supra* ¶ 20 (lines 9:5-9).
12       Dr. Berger's unrebutted expert report (JTX-722) and testimony further explain
13  how Defendants' "minting and sales of RR/BAYC NFTs using Yuga Labs' marks
14  harmed the brand equity of BAYC for multiple reasons," including by diminishing the
15  "perceived exclusivity of authentic BAYC NFTs," causing confusion, and damaging
16  "consumer attitudes toward the BAYC brand."  JTX-722 ¶ 11; *see also* Berger Decl.
17  (Dkt. 339) ¶¶ 62-92; 340.
18       Furthermore, it is a red herring that Yuga Labs did not produce emails and texts
19  of internally discussion of confusion—Yuga Labs was not required to do so in
20  discovery, and the absence of such documents at trial proves nothing.  The Court
21  previously ruled that given the publicly available evidence of confusion and the
22  evidence within Defendants' possession, it was not proportionate to the needs of the
23  case for Yuga Labs to search its internal communications regarding confusion.  Dkt.
24  87 at 2 (denying motion to compel production of further "documents on lack of
25  consumer confusion").  As the Court found, Yuga Labs' extensive enforcement efforts
26  "related to Defendants' confusing use of Yuga's marks," among other evidence, was
27  sufficient to demonstrate confusion.  *Id.*  Further, there is abundant evidence of actual
28

confusion in this case unique to Defendants' infringing NFTs.  *See, e.g.*, JTX-701 and JTX-1049 (Bloomberg news segment reporting Defendants' infringing NFT collection, under the name "Bored Ape Yacht Club V3"); JTX-705 (Twitter bot misreporting sale of Defendants' infringing NFT as "Bored Ape Yacht Club" NFT); JTX-1029 (noting "confusion in these comments" in response to JTX-705); JTX-1030 (comment indicating confusion).  Even Defendants' business partner, Mr. Lehman admitted to confusion, agreed to a consent judgment admitting to this confusion, and warned Defendants about the confusion.  JTX 1; JTX 621.  That Yuga Labs did not produce further documentation of confusion does not establish that confusion did not exist or undermine the substantial other evidence.

**Defendants' Reply:**

Yuga's response is inaccurate.  As discussed above, the record shows that there was no evidence of confusion presented at trial and that the issue of confusion and its relation to damages was not an adjudicated issue.  *See supra* ¶ 4.

Second, evidence of harm to Yuga's brand is certainly not "overwhelming, credible, and unrebutted."  Specifically, Yuga relies on the unsubstantiated testimony of Ms. Muniz about various interactions she had with brands that she has no documentary support for.  *See* Trial Tr. [Muniz] 101:7-12.  Additionally, Yuga cites to Mr. Solano's unfounded assumption about when the RR/BAYC NFT collection was released.  Solano Decl. (Dkt. 342) ¶¶ 39-40.  Further, Ms. Kindler did not quantify this supposed harm.  *See* Kindler Decl. ¶ 64 (Dkt. 338) ("I have not quantified the extent to which the confusion impacted Yuga Labs' business partnerships…"); Kindler Decl. ¶ 65 (Dkt. 338) ("I have not quantified the extent to which Defendants' wrongful conduct negatively impacted the value of Yuga Labs' goodwill…").

Third, Yuga incorrectly argues that Dr. Berger's report explains how Yuga's brand was harmed.  The evidence at trial showed that Dr. Berger's limited analysis did not establish that the minting of RR/BAYC NFTs was the source of the alleged brand

1  harm.  Although Dr. Berger acknowledged that several different causes could have
2  impacted Yuga's brand equity, Dr. Berger declined to consider alternative causes of
3  harm in his analysis.  Trial Tr. [Berger] 108:7-109:4; 115:16-25.  He limited his
4  analysis to the period from May 6, 2022, to late June, and completely disregarded
5  events leading up to that period.  Trial Tr. [Berger] 106:1-3.  For instance, Dr.
6  Berger's analysis ignored the Otherside scandal, which occurred mere days before his
7  chosen analysis period.  Trial Tr. [Berger] 113:10-114:2; JTX-2715.  Dr. Berger even
8  ignored events, like the general downturn of the cryptocurrency market, which
9  occurred during his analysis period. Trial Tr. [Berger] 109:5-110:5; JTX-306.
10 At trial, Dr. Berger claimed that the presence of other potential causes of brand harm
11 does not dilute the hypothesis that the minting of RR/BAYC NFTs caused brand
12 harm.  Trial Tr. [Berger] 115:19-25.  However, in ignoring other potential causes of
13 harm, Dr. Berger has not been able to establish which factors caused harm or quantify
14 the harm of any given factor.  Indeed, Dr. Berger failed to quantify any alleged harm
15 to Yuga's brand equity, goodwill, or reputation.  *See generally* Berger Decl.; Dkt. 343
16 at 15.
17        Fourth, Yuga's citations to the Court's order on motions to compel document
18 production in this case miss the mark.  Not only did Yuga not produce any
19 documentary evidence to support these claims of brand harm, Ms. Muniz testified that
20 none existed despite the companies use of various platforms of communication.  Trial
21 Tr. [Muniz] 101:7-12. ("Q. Did you identify a single e-mail, text message, or any
22 other contemporaneous written communication from any brand partner or repeating
23 any communication from any brand partner that mentions any of these concerns at all?
24 A No, it was phone calls and e–ails -- I mean, phone calls and Zooms.").
25        Fifth, as explained *supra* ¶ 4, there is extensive evidence that there was no
26 confusion, and the exhibits Yuga cites to are unsupportive.  Yuga cites to a screenshot,
27 JTX-701, of a Bloomberg newscast.  This exhibit does not support a finding of actual
28

1  confusion. The chart separately lists both "Bored Ape Yacht Club" and "Bored Ape
2  Yacht Club V3" indicating that the anchor understood that these were two different
3  projects. Additionally, as Mr. Cahen testified, he is not aware of anyone who watched
4  the Bloomberg program and reserved an RR/BAYC NFT believing it to be a Yuga
5  collection. Cahen Decl. ¶ 252 (Dkt. 344).
6        Additionally, Yuga cites to the Lehman Declaration, JTX-1, the accuracy and
7  credibility of which are tainted by Mr. Lehman's motivations to settle his ongoing
8  case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's
9  case against Mr. Lehman, JTX-621, which is immaterial to this matter and again was
10 entered after Mr. Lehman settled his own case with Yuga.
11       Yuga also cites to JTX-1029, which includes a tweet from GemBot, which is
12 an automated software application and not evidence of a real person's confusion. *See*
13 Cahen Decl. ¶¶ 226-227. The very first comments included on that tweet include users
14 identifying that Mr. Ripps is the source of the NFT not Yuga. Further, there is no
15 indication that any of the Twitter users commenting actually reserved an RR/BAYC
16 NFT.