Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 21, lines 9:13-14**<br><br>Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM　　　　　　　　　　　　　　DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 21, lines 9:13-14:**

Professor Jonah Berger, an expert in brand equity and consumer behavior, found that Defendants' minting and sales of RR/BAYC NFTs harmed Yuga Labs' brand equity, goodwill, and reputation. JTX-722 ¶¶11, 12, 64-92; Dkts. 271; 339 ¶¶62-92; 340 ¶¶16-17; Dkt. 342 ¶¶62-87.

**Defendants' Basis of Dispute:**

Evidence at trial shows that Dr. Berger's limited analysis did not establish that the minting of RR/BAYC NFTs was the source of the alleged brand harm.  Although Dr. Berger acknowledged that several different causes could have impacted Yuga's brand equity, Dr. Berger declined to consider alternative causes of harm in his analysis.  Trial Tr. [Berger] 108:7-109:4; 115:16-25.  He limited his analysis to the period from May 6, 2022, to late June, and completely disregarded events leading up to that period.  Trial Tr. [Berger] 106:1-3.  For instance, Dr. Berger's analysis ignored the Otherside scandal, which occurred mere days before his chosen analysis period.  Trial Tr. [Berger] 113:10-114:2; JTX-2715.  Dr. Berger even ignored events, like the general downturn of the cryptocurrency market, which occurred during his analysis period. Trial Tr. [Berger] 109:5-110:5; JTX-306.

At trial, Dr. Berger claimed that the presence of other potential causes of brand harm does not dilute the hypothesis that the minting of RR/BAYC NFTs caused brand harm.  Trial Tr. [Berger] 115:19-25.  However, in ignoring other potential causes of harm, Dr. Berger has not been able to establish which factors caused harm or quantify the harm of any given factor.  Indeed, Dr. Berger failed to quantify any alleged harm

1  to Yuga's brand equity, goodwill, or reputation.  *See generally* Berger Decl.; Dkt. 343
2  at 15.

3        **Plaintiff's Response:**

4        **Dr. Berger's Report Discredited Defendants' Alternative Harms
5  Argument:**  Dr. Berger testified that, hypothetically, there could be multiple different
6  causes of harm, but his data revealed that "the only factor that can distribute to that
7  outcome is the minting and publication of RR/BAYCs."  Trial Tr. at 115:16-117:10;
8  121:23-123:8.  Dr. Berger specifically considered, and rejected, whether the share of
9  Tweets expressing negative sentiment toward BAYC was increasing between May 6,
10 2022 and May 12, 2022 (i.e., before the release of RR/BAYC NFTs) and whether the
11 share of positive sentiment was decreasing; he found that the data are inconsistent
12 with that alternate hypothesis, thus ruling out any supposed alternative causes
13 preceding the release of RR/BAYC NFTs.  Berger Decl. (Dkt. 339) at n.55.

14       In addition, Dr. Berger has not seen any evidence to support Defendants'
15 hypothesis.  Trial. Tr. 119:21-25.  Nevertheless, as the Court has already found this
16 case is about Defendants' commercial infringement.  SJ Order (Dkt. 255) at 16
17 ("These are all commercial activities designed to sell infringing products, not
18 expressive artistic speech protected by the First Amendment."); *see also* June 9, 2023
19 Pretrial Conference Tr. at 8–10 (Defense counsel acknowledging "there is a difference
20 between the criticism and the sales of the product.").  Nothing in Defendants'
21 supposed false criticism negates that:  (1) Defendants should not profit from their
22 infringing NFTs; and (2) Defendants should be enjoined from continued infringement.

23       Defendants did not object to the admissibility of Dr. Berger's testimony.  Dkt.
24 366.

25       **Defendants' Reply:**

26       Using its superior resources, Yuga hired an expert and paid him at least tens of
27 thousands of dollars to offer an opinion that its brand suffered some unquantified

28

amount of harm.  Trial Tr. [Berger] 104:5-9.  An expert's testimony is not *per se* reliable just because the opposing party does not retain an expert.  Furthermore, The cited "say-so" testimony that "the only factor that can distribute to that outcome is the minting and publication of RR/BAYCs" is belied by the numerous holes in Dr. Berger's analysis, revealed during cross-examination, including his failure to consider other controversies involving Yuga before, during, and after the narrow timeframe that he considered.  *See* Trial Tr. [Berger] 106:1-3, 108:7-110:5, 113:10-114:2, 115:16-25.

Dr. Berger's analysis of negative sentiment trends in his limited sample of tweets, between May 6 and May 12, did not allow him to discern whether other sources caused harm to Yuga's brand equity or attribute any specific harm to Defendants.  Again, Dr. Berger limited his analysis to the period from May 6, 2022, to late June, and completely disregarded events leading up to that period.  Trial Tr. [Berger] 106:1-3.  Although Dr. Berger claimed to have reviewed tweets from before that period, he admittedly did not actually conduct any empirical analysis on those tweets.  Trial. Tr. [Berger] 105:14-106:3 ("Q Your empirical analysis was limited to the period from May 6, 2022, to late June 2022; correct? A For a number of reasons, that's the period that I focused on…").  Dr. Berger further did not review any tweets from after June of 2022 to determine whether there was any ongoing brand damage due to RR/BAYC or any other factor, and whether the BAYC brand recovered value after that period.  *See* Trial Tr. [Berger] 106:4-10.

Yuga fails to cite any legal authority to support a waiver argument. Defendants did not waive any arguments regarding the scope of Dr. Berger's analysis. Defendants are not required to object to admissibility of Dr. Berger's testimony in order to argue that Dr. Berger's analysis was limited and failed to demonstrate that Defendants caused harm.