Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
    HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
    HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Finding of Fact No. 22, Lines 9:16-18, 23-25** <br><br> Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 22, lines 9:16-18, 23-25:**

Finally, throughout this litigation and even after the summary judgment order confirming their infringement, Defendants continued to market their RR/BAYC NFTs and Ape Market and harm Yuga Labs. On April 4, 2023, Mr. Cahen tweeted an announcement that "RR/BAYC is trading on OpenSea Pro." JTX1315; see also JTX-1317. Mr. Cahen also continued to retweet Twitter posts sharing the resale of RR/BAYC NFTs (see JTX-1613; JTX-1614; JTX-1615), as well as retweet Defendants' own tweets from the @ApeMarketplace Twitter account. JTX1048; Dkt. 342 ¶¶74-76. As recently as the day before trial, @ApeMarketplace continued to advertise rrbayc.com and link to a marketplace on which RR/BAYC NFTs were still available for sale. JTX-696; Dkts. 342 ¶77; 392 at 57:8-58:6, 58:20-59:19

**Defendants' Basis of Dispute:**

ApeMarket never launched. *E.g.*, Ripps Decl. ¶ 180-81 (Dkt. 346) (uncontested). In fact, it never got beyond the idea stage. *Id.* at ¶ 178. There have been no sales of any kind on ApeMarket at any time. *Id.* at 178-181; Trial Tr. [Muniz] 85:8-23. Defendants abandoned their plans for ApeMarket well before the summary judgment stage.

The ApeMarket Twitter page has not tweeted since February 10, 2023, before summary judgment was granted. This paragraph gives the misimpression that ApeMarket as an account was still sending Tweets and promoting itself. Of the

Tweets made after the ApeMarket idea was abandoned, they were mainly criticisms of Yuga.  Once again, Yuga is trying to silence any criticism about its company.

Yuga's citations to the record do not help it.  JTX-696 is a screenshot of the @ApeMarket Twitter from July 2022, and therefore cannot serve as proof that Defendants were still using the Twitter account after summary judgment.  *See* JTX-696.  There is no advertisement of RR/BAYC NFTs on the ApeMarket Twitter account.

Yuga Labs also failed to prove that they were harmed in any way from the alleged marketing.  Because Yuga surrendered its legal remedies, it is seeking the only equitable remedies.  *See* Dkt. 315; 316.  This limits their proof of harm to proving that Defendants were profiting *because of* their infringement and not some other reason such as protest against Yuga's problematic conduct.  *See* [Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir. 1993),](url)*abrogated on other grounds by* [SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179 (9th Cir. 2016).](url)  Yuga fails to prove that royalties are continuing to accrue for Defendants.  *See* Trial Tr. [Solano] 48:15-49:4. Yuga therefore fails to prove the correct type of harm that would entitle them to equitable damages related to any marketing to the extent that Defendants actually marketed.

**Plaintiff's Response:**

Defendants' objection should be rejected because (1) the record shows that the @ApeMarketplace Twitter account was used to promote Ape Market and the RR/BAYC NFTs, and (2) Defendants' profits are traceable to their infringement.

Defendants' refrain that "Apemarket never launched" is a beside the point.  *See supra* ¶ 7(h).  Defendants have and continue to use Ape Market to market their infringing NFTs, and indeed they do not dispute the portion of this finding of fact stating that Mr. Cahen continued to promote sales information about RR/BAYC

NFTs.  Defendants also tweeted a screen shot of the finished Ape Market to entice people to buy RR/BAYC NFTs.  JTX-696.

**The @ApeMarketplace Twitter Account And The Ape Market NFT Marketplace Are Clearly Related And Both Were Used To Promote RR/BAYC:** Defendants created the @ApeMarketplace Twitter account to promote the Ape Market marketplace and their infringing RR/BAYC NFTs.  The fact that the Twitter handle solely controlled by Mr. Cahen contains "ApeMarket" alone demonstrates the connection between the Twitter account and marketplace, but the Tweets from the account confirm that Defendants used @ApeMarketplace to promote Ape Market. Cahen Depo. Designations (Dkt. 395) at 126:5-7 (Q:  And you are the sole operator of the Ape Marketplace account? A:  That is correct, yes.").  Mr. Cahen lied at trial when, under oath, he stated that he did not "plan to stimulate the sales of RR/BAYC NFTs by teasing the future release of ApeMarket."  Trial Tr. at 234:15-18.  Mr. Cahen tweeted from @ApeMarketplace a link to reserve an RR/BAYC on multiple occasions and on June 2 he tweeted that "[l]isting requires holding RR/BAYC."  JTX-696. Defendants' own internal communications confirm the lie.  On June 1 Mr. Cahen stated, "my goal for today is to create an announcement that will create hype and volume, we want to mint out the remainder of that collection."  JTX-801.221.  On that same day Mr. Cahen tweeted from @ApeMarketplace a screenshot of Ape Market with an image of an RR/BAYC and a link to reserve an RR/BAYC.  JTX-696.  This was a direct attempt to use the prospect of Ape Market to promote Defendants' infringing NFTs.  Whether or not Defendants continue to post new Tweets from the account, these Tweets remain public and thus the account continues to promote Ape Market and RR/BAYC.  Defendants' claim that Ape Market, @ApeMarketplace, and RR/BAYC are not connected is obviously false.  The Tweets in JTX-696 repeatedly show the look, functionality, and intent of Ape Market and the infringing RR/BAYC NFTs within Ape Market.

Now, even a month after trial, Defendants still advertise rrbayc.com in the profile heading of the Ape Market Twitter profile.  *See* https://twitter.com/apemarketplace and screenshot below.  That same Twitter account remains live, with promotions of apemarket.com, the infringing rrbayc.com domain, and their promotion of the infringing RR/BAYC NFTs on Looksrare.  Defendants' claims to the contrary are not in good faith and contrary to the evidence.  *See* Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.  In any event, Defendants have not transferred ownership of either domain, continuing their cybersquatting.  15 U.S.C. § 1125(d)(1)(a)(ii) (liability established when Defendant "***registers***, traffics in, or uses a domain name" as specified in statute).



There is similarly no credible dispute that Defendants' marketing and promotion of RR/BAYC NFTs, including by using the promise of Ape Market to "stimulate" sales of RR/BAYC NFTs, harmed Yuga Labs' brand equity.  *See, e.g.*, *supra* ¶¶ 20-21.  Likewise, there is no credible dispute that Defendants earned royalties at least through May 2023.  Defendants admit to this fact.  Cahen Decl. (Dkt.

344) ¶ 171.  Defendants also do not deny that the RR/BAYC smart contact allows them to receive royalties in the future if the marketplaces provided them royalties. Defendants provide no basis for why the Court should not disgorge the royalties from the sales of RR/BAYC NFTs that they admit use Yuga Labs marks.

**All of Defendants' Profits Are Attributable To Their Infringing Activity:**
Yuga Labs has shown that Defendants' profits are attributable to Defendants' infringing activity – each and every single RR/BAYC NFT uses the marks BORED APE YACHT CLUB and BAYC, to say nothing of how Defendants sold, marketed, and promoted these NFTs.  In a trademark infringement case, "[t]he plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty.  Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity." *Lindy Pen Co.*, 982 F.2d at 1408. From there, *Defendants*, not Plaintiff, "bear[] the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *Id.*; *Frank Lloyd Wright Found. v. Shmavonian*, No. 18-CV-06564-MMC, 2019 WL 3413479, at *1 n.2 (N.D. Cal. July 29, 2019).  Yuga Labs has established that Defendants' profits are attributable to their infringing activity, and that these NFTs sold due to the appeal of the BAYC Marks. *See* Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) ¶¶ 7, 11-13, 32-37.  Defendants do not provide any credible evidence undermining this presumption.

Defendants' "infringing activity" was use of the BAYC Marks.  They admit that "[e]ach of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks." Dkt. 418-1 at 3:15-16.  Accordingly, each and every RR/BAYC NFT sale is a result of Defendants' infringing activity and subject to disgorgement. *See* Kindler Decl. (Dkt. 338) ¶ 61 ("Based on my review of evidence produced in this case and blockchain data I analyzed, these profits are all traceable to Defendants' uses of Yuga Labs'

BAYC Marks.").  Yuga Labs' evidence shows that consumers bought RR/BAYC NFTs because of the appeal of the BAYC Marks.  Kindler Decl. (Dkt. 338) ¶ 61; Berger Decl. (Dkt. 339) ¶¶ 71-76.  If the NFTs just said "Ryder Ripps," consumers would not have bought them.  Indeed, even Defendants admit that they had to use the BAYC Marks in their infringing products.  Dkt. 149-42 at 9-10 (Mr. Ripps' second supplemental response to interrogatory 3 states:  "Mr. Ripps's RR/BAYC project . . . displayed unmodified marks, so that the RR/BAYC project would be directly tied to Yuga, BAYC, and specific BAYC NFTs . . ."); Cahen Decl. (Dkt. 344) ¶ 109 ("Mr. Ripps wanted to call the collection the "Ryder Ripps Bored Ape Yacht Club" ("RR/BAYC") both to emphasize the subject of our criticism and the artistic origin of the collection.").  This is because the appeal of the BAYC Marks was core to their infringement and profits.  Yuga Labs should be awarded the full amount of Defendants' profits so Defendants may "not retain the fruits, if any, of unauthorized trademark use or continue that use . . . ."  *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073 (9th Cir. 2015).

### Defendants' Reply:

Yuga is still relying on JTX-696 to support a finding that apemarket.com, is still being used to promote RR/BAYCs.  This is fundamentally flawed.  First, ApeMarket was never released. Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested)).  JTX-696 is a screenshot of the @ApeMarket Twitter from July 2022, and therefore cannot serve as proof that Defendants were still using the Twitter account after summary judgment.  *See* JTX-696.  Yuga misleadingly (and intentionally) omits the year when recounting the various Apemarket Tweets when it walks through ApeMarket's June 2022 tweets.  The fact of the matter, and it is undisputed, is that the @apemarket account, has not tweeted since before summary judgment was granted.  It is incorrect to say that it is

1 being used to continue to market RR/BAYCs.  It is more akin to a defeated election

2 candidate's old campaign page remaining online years after the race ended.

3       Yuga, perhaps discusses issues unrelated to this proposed finding of fact which

4 is whether Plaintiffs continued to market rrbayc NFTs on ApeMarket because of the

5 lack of evidence to support its claims.  This includes whether they properly

6 apportioned damages.  While Defendants have proven that sales stem from protest

7 against Yuga and not infringement, that is simply irrelevant to Yuga's proposed

8 finding of fact which is that Defendants continue to market ApeMarket.

9 However, as to the actual proposed finding of fact, Yuga fails to answer the second

10 issue that Defendants raise which is that its finding of fact does not support its

11 equitable remedy claims.  *See* Dkt. 315; 316 (disclaiming legal remedies).  This limits

12 their proof of harm to proving that Defendants were profiting *because of* their

13 infringement and not some other reason such as protest against Yuga's problematic

14 conduct.  *See* *Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1408 (9th Cir.

15 1993),*abrogated on other grounds by* *SunEarth, Inc. v. Sun Earth Solar Power Co.,*

16 839 F.3d 1179 (9th Cir. 2016).  Yuga provides no evidence that it was harmed by the

17 alleged continuing marketing.  Yuga fails to prove that royalties are continuing to

18 accrue for Defendants.  *See* Trial Tr. [Solano] 48:15-49:4.  In fact, they admit that the

19 remedies ceased for Defendants before trial   Yuga therefore fails to prove the correct

20 type of harm that would entitle them to equitable damages related to any marketing to

21 the extent that Defendants actually marketed.  Cahen Decl. (Dkt. 344) ¶ 171.

22

23

24

25

26

27

28