Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>             Plaintiff,<br><br>    v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>             Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 37**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. 37:

Therefore, the Court deems it just to award Yuga Labs $1,375,361.92 of Defendants' profits (consisting of $1,258,052.92 of profits from initial sales and $117,309 of profits from secondary sales) to account for Defendants' profits and unjust enrichment. See 15 U.S.C. § 1117(a).

### Defendants' Basis of Dispute:

Disgorgement is not an available remedy here. An infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.,* 140 S. Ct. 1492, 1497 (2020). Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022). Disgorgement is, therefore, not an available remedy here because – as the evidence showed at trial – neither Mr. Ripps nor Mr. Cahen is a "conscious wrongdoer." *See* Ripps Decl. ¶¶ 144, 147, 158-176 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131, 145-155 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Disgorgement is also unavailable here because Yuga has not shown "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Legal remedies were available in this case. Yuga expressly asserted and offered expert testimony in support of legal remedies (including a claim for actual damages that its expert was able to quantify), which it then voluntarily relinquished. Dkt. 315-1 at 2 ("Yuga Labs is withdrawing all legal remedies"); Trial Tr. [Kindler]

172:14-17, 173:1-8, 174:4-7, 175:17-19.  Having abandoned available legal remedies, Yuga cannot obtain disgorgement.  See *Hunting World Inc. v. Reboans, Inc.,* No. C 92-1519 (BAC), 1994 WL 763408, at *2-3 (N.D. Cal. Oct. 26, 1994) ("[A]lthough Plaintiff has waived the right to collect damages, this does not render the claim purely equitable because, as discussed above, this is a statutory claim.  Again, because the statutes provide adequate remedies, a purely equitable claim may not be maintained.").

Finally, even if disgorgement were available here, Yuga would only be entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by* *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016).  This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs.  *See id.*

Yuga has failed to show that any portion of this $1,375,361.92 figure is attributable to the infringing activity.  As the evidence presented at trial showed, Yuga has not identified even a single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").  Conversely, the evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest *against* Yuga.  *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039,

JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  Given the evidence, Yuga has not shown that they are entitled to any portion of profit from the RR/BAYC project as there was no profit made that was attributable to the infringing activity.

Finally, the $1,375,361.92 figure itself is an incorrect calculation of the profits Mr. Ripps and Mr. Cahen have received from the RR/BAYC project.  First, the evidence presented at trial showed that the RSVP contract also distributed $93,135.62 in automated refunds.  Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested).  This figure improperly includes in its profits calculation $93,135.62 in automated refunds executed through the RSVP reservation contract.  Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested).  Also, Mr. Ripps and Mr. Cahen incurred approximately $15,100.00 in miscellaneous expenses associated with wages, a computer, and travel expenses.  Ripps Decl. ¶ 136 (Dkt. 346) (uncontested); Cahen Decl. (Dkt. 344) ¶¶ 174-176.  This figure fails to exclude those expenses from the profit calculation.

**Plaintiff's Response:**

Defendants' objections should be rejected for the same reasons discussed *supra* ¶ 34; specifically:  (1) there is ample evidence of confusion; (2) disgorgement is available as a remedy; (3) all of Defendants' profits are attributable to infringing activity; (4) Defendants' additional arguments challenging disgorgement are unpersuasive; and (5) the Court should increase the disgorgement award.

Additionally, as described below, Defendants' objection should be rejected because (1) Defendants intended to confuse consumers in order to turn a profit, and (2) Yuga Labs correctly calculated Defendants' profits.

**Defendants Intended To Confuse Consumers:**  Defendants' private communications show they knew they were using the BAYC Marks in a way that was likely to confuse consumers and did so with the intent to profit from their infringement.  Defendants discussed making "like a million dollars."  JTX-1574; *see*

*also* JTX-1586 (Mr. Cahen to Mr. Ripps: "I tbink you are gonna make millions too man"); JTX-801.239 (Mr. Cahen to Mr. Lehman: "I think we will make alot of money tbh"; "Potentially a lot"). And despite being urged to use different images or overlay some commentary on the images they did use to avoid confusion, Defendants chose not to. *See. e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"); JTX-801.196 (Mr. Lehman demonstrating what an overlay might look like and recommending not to "in the marketing show screenshots like the ones [Mr. Hickman] showed" "[b]ecause it is too confusing to the 'average joe'"); JTX-696.1 (tweet showing screenshot of Ape Market). They also discussed that they knew they were infringing and creating confusion, as they acted contrary to their attorneys' advice. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"). Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 (Dkt. 346) (uncontested) ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

Defendants also knew that what they were doing was likely to lead to a lawsuit. For instance, Mr. Ripps asked for a reference to his limited liability company, Live9000 LLC, to be added to rrbayc.com because he did not "want to get sued personally." JTX-803.57. And, Mr. Lehman was still advocating for a "new logo and branding direction in light of the trademark thing" to Mr. Cahen before they learned of this lawsuit (JTX-918.00035) because "I don't want to get sued, OR, if we do get sued, for us to look really sympathetic to everyone" (JTX-918.0036) and that "now with the logo thing we don't look sympathetic to everyone" (JTX-918.0037), to which Mr. Cahen agreed (*id.*). But they changed nothing about their use of Yuga Labs' marks to minimize the confusion and their infringement.

  Privately, Defendants also discussed strategies to "cannibalize" the secondary NFT market with Ape Market, which Defendants used to stimulate sales of RR/BAYC NFTs. JTX-801.203; JTX-801.144. Mr. Cahen bragged about being "pretty elite at getting engagement on twitter." JTX-801.203. Defendants brainstormed about needing some "controversy," "art press," "law stuff," "some unexpected event," or "yuga dirt" in order to complete the first sale ("mint") of each infringing RR/BAYC NFT. JTX-801.289-290. They also agreed that "[r]eleasing [Ape Market] will have an effect" on their ability to "mint out" the RR/BAYC NFTs. *Id.*

  Publicly, Defendants made false representations about the RR/BAYC NFTs that implied owning one offered equivalent benefits to owning a genuine BAYC NFT. JTX-1037. Defendants published their promotions from their individual Twitter accounts and from the commercial @ApeMarketplace account advertising their forthcoming NFT marketplace. These advertisements were also directed at BAYC NFT owners specifically. Muniz Decl. (Dkt. 340) ¶ 13; Solano Decl. (Dkt. 342) ¶¶ 46, 49. Defendants were aware of the harm that RR/BAYC NFT sales would have on Yuga Labs. JTX-42; Trial Tr. at 208:16-209:6. Through their communications, Defendants revealed their true intent to profit from the infringing use of Yuga Labs' BAYC Marks.

  **Yuga Labs Properly Calculated Defendants' Profits:** Ms. Kindler correctly deducted refunds despite Defendants' false claim to the contrary, and Defendants failed to justify their proposed deductions, *supra* ¶ 11(b) (lines 6:5-7).

  **Defendants' Reply:**

  To be eligible for equitable relief, Yuga must prove that there is no adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This principle bars equitable relief where a party is able to name a sum certain for the amount of harm it suffered. *Id.* (denying equitable relief to a party that pled legal damages and "fail[ed] to explain how the same amount of money for the exact same

harm is inadequate or incomplete"). Yuga failed to show that their legal remedies were inadequate, and therefore cannot rely on Ms. Kindler's reports—which underlay their legal remedy theory—to support their claim for equitable remedies.

Until shortly before trial, Yuga represented that it *could* calculate damages and placed monetary amounts on its damages. *See* JTX-308 (Kindler expert report); Dkt 268 (offer of proof Ms. Kindler affirming $1.7m damages total); Dkt. 287-I (amending damages figure to $787,183,838). Although these damages figures fluctuated wildly over a span of three days, *See* Dkt. 268 (June 5, 2023) and Dkt. 287-I (June 8, 2023), Yuga was able to place a monetary amount on its damages. In order to avoid a jury trial, Yuga changed its position one week later and argued that it could not discern the monetary amount of damages it suffered despite having recently provided a damages calculation. *See* Dkt. 315-1. In Yuga's own theory of the case, there were adequate monetary damages and Yuga failed to explain what changed between which rendered these damages unavailing. Instead, Yuga seeks to use disgorgement to avoid trial. However, because they could not show that a legal remedy was inadequate, they cannot claim an equitable one.

Even if Yuga has shown that they are generally entitled to an equitable remedy, they have not proven that they entitled to disgorgement in this case. Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022). Yuga's citation to the record does not demonstrate conscious wrongdoing.

For example, all of the citations to Mr. Lehman's discussions in the chat do not change the fact that **Defendants** were intending to make a statement in protest of Yuga and its actions. *See* Ripps Decl. (Dkt. 346) ¶¶ 137-57 (uncontested); Cahen Decl. (Dkt. 344) ¶¶ 180-212; Trial Tr. [Hickman] 214:23-215:3; 222:13-222:24. It is not inconsistent with art to make a money. Mr. Ripps after all, is an artist by trade. Ripps Decl. ¶¶ 1-3 (Dkt. 346) (uncontested). Therefore, texts about money he might make

show little in terms of not having a good faith artistic intent. Likewise, discussions of gaining attention for the RR/BAYC project getting attention do not show any lack of good faith artistic intent.  It is axiomatic that art is only as good as people's interations with it.  Further, Mr. Ripps had an unrebutted intention to make an "army of educators" about Yuga.  *Id.* at ¶ 183 (uncontested).

   Lastly, Ms. Kindler's calculation is incorrect in that it failed to deduct refunds, payments to Mr. Lehman and Mr. Hickman, and Defendants expenses.  These deductions were properly proven at trial and as discussed above.