Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                    Plaintiff,<br><br>    v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                    Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 44, Line 14:24**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Conclusion of Law No. 44, line 14:24:**

Yuga Labs is entitled to injunctive relief. SJ Order at 13, 15.

**Defendants' Basis of Dispute:**

While Defendants reserve their right to appeal the Court's summary judgment determination (and thus dispute that Yuga is entitled to any injunctive relief), Defendants concede that if the Court's summary judgment order were to stand Yuga would be entitled to reasonable injunctive relief.  Yuga however seeks an extraordinarily broad injunction that would prevent Defendants from making criticism about Yuga's business practices.  *See* Trial Tr. [Muniz] 94:12-13 ("They should not have the right to say Bored Ape Yacht Club again.").  Yuga's proposed injunction is far too broad and should be rejected.

Injunctive relief must be "tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).  "An overbroad injunction is an abuse of discretion." *Id.*  Here, the specific harm alleged is Defendants' use of Yuga's marks to sell products.  *See* Dkt. 1 at ¶ 5 (complaint is about sales of RR/BAYC NFTs).  Therefore, the injunction must be tailored to only that harm, and not the ancillary issues such as Defendants' free speech rights that Yuga has wrongfully tried to introduce into the injunction.

**Plaintiff's Response:**

Defendants' objection should be rejected because (1) Yuga Labs' proposed injunction does not seek to curtail Defendants' First Amendment rights and (2) Yuga

Labs' proposed injunction is tailored to address the irreparable harm done to Yuga Labs and allow it to regain control of its brand.

**Yuga Labs' Proposed Injunction Does Not Seek To Curtail Defendants' First Amendment Rights:**  Defendants did not infringe Yuga Labs' BAYC Marks by merely selling NFTs.  They infringed Yuga Labs' NFTs by creating the RR/BAYC NFTs (the Foundation contract), creating NFT marketplaces on which to sell the NFTs (e.g. the Foundation sales page), giving away infringing NFTs to get people to market or support their business venture, promoting their NFTs, marketing them through @ApeMarketplace and developing an NFT marketplace (Ape Market) to "stimulate" the sales of their infringing NFTs, by selling their NFTs to initial purchasers, and by driving up the price of their NFTs and then re-selling those they hold for a further profit.  Defendants continue to infringe by marketing RR/BAYC NFTs—for example advertising rrbayc.com on their @Ape Market Twitter page alongside a link to an NFT marketplace where users can still purchase RR/BAYC NFTs.  *See* Solano Decl. ¶ 77.  Yuga Labs' proposed injunction would put an end to that marketing by transferring control of these instrumentalities of infringement to Yuga Labs.  The terms of the injunction that Yuga Labs contends is appropriate in this case are clear from its proposed findings of fact and conclusions of law.  Dkt. 416.  Yuga Labs has not sought to limit Defendants' criticisms of Yuga Labs through its proposed injunction.  Indeed, Defendants' contention that their ongoing infringement constitutes "criticism" demonstrates why a court order "enjoining them from using the mark" alone would not stop their infringement.  *See* Dkt. 419-1 at 3:25-4:6.  Yuga Labs must be given the instrumentalities of their infringement so that they cannot continue to infringe and claim it is criticism.

Yuga Labs' former CEO did not testify that Yuga Labs intends to silence Defendants.  Rather, the context of Ms. Muniz's testimony is clear that she was speaking about Defendants' use of Yuga Labs' Bored Ape Yacht Club trademark to

promote products.  Trial Tr. at 94:5-13.  There is no debate that Yuga Labs is seeking an injunction to stop Defendants' infringement of its marks.  Yuga Labs has not, however, sought to limit Defendants' criticisms of Yuga Labs through its proposed injunction.  What is nevertheless clear is that Defendants refuse to accept any reasonable injunctive relief, even though the Court has already found that Yuga Labs is entitled to injunctive relief.  Dkt. 418-1.

**Yuga Labs' Proposed Injunction Is Proper:**  A properly tailored injunction must end the irreparable harm done to Yuga Labs' BAYC brand and allow it to regain control of the brand.  This includes putting an end to Defendants' sales, promotion, and marketing of infringing NFTs; preventing Defendants from creating any future confusion by minting new infringing NFTs or improperly using Yuga Labs' Marks; alerting consumers that the RR/BAYC NFTs are a scam; and transferring the smart contract and other infringing domains and instrumentalities to Yuga Labs so it once again has sole control over its marks.  It is unrebutted that transferring the smart contract to Yuga Labs would allow it to regain control over its brand.  The injunctive relief set forth in Yuga Labs' Proposed Findings of Fact and Conclusions of Law is specifically tailored to accomplish this.  *See* Dkt. 416 at 14-17, 20-23.  Indeed, two other courts have entered similar injunctions against Defendants' business partners. *See* Judgment and Order for Permanent Injunction Against Ryan Hickman (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023); JTX-621 (Consent Judgment and Order for Permanent Injunction Against Thomas Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023)).

### Defendants' Reply:

Yuga argues that this Court should adopt its injunctive relief terms and cite to the Lehman consent judgment—which was a condition of settlement—and the injunction entered against Mr. Hickman—which was attained via a default judgment.

---

1    Neither Mr. Lehman and Mr. Hickman were defending themselves against the terms
2    of the overbroad injunction.   And Mr. Hickman's default judgment was improperly
3    obtained under false pretenses because Yuga never served the complaint in Mr.
4    Hickman's case and instead left it on his porch unattended after the server told Mr.
5    Hickman's twelve-year-old daughter that he could not serve her.  *Yuga Labs, Inc. v.*
6    *Hickman*, 2:23-cv-00111-JCM-NJK, Dkt. 31-1 at 2 (D. Nev.) ("6.  I told the stranger
7    that my parents were not home, and that I was twelve years old.  7.  The stranger told
8    me he could not leave the papers with me, and left.  I did not see the stranger return.").
9    Yuga then submitted an affidavit ***falsely stating*** to the court that it had served Mr.
10   Hickman's fifteen-year-old daughter.  *See Yuga Labs, Inc. v. Hickman*, 2:23-cv-
11   00111-JCM-NJK, Dkt. 31 at 7 (D. Nev.) ("Plaintiff fraudulently represented to the
12   Court that Hickman's daughter was fifteen and that the process server delivered copies
13   of the Complaint and summons to her. … This is blatantly false, and was undoubtedly
14   asserted by Plaintiff in an effort to obtain a favorable Default Judgment ruling.").
15   The Court in Mr. Hickman's case has stayed judgment to reassess the validity of
16   default judgment.  *Yuga Labs, Inc. v. Hickman*, 2:23-cv-00111-JCM-NJK, Dkt. 37 (D.
17   Nev.) (granting emergency motion to stay enforcement of default judgment).
18       Just because courts entered overbroad stipulated injunction, or an *ex parte*
19   injunction obtained under false pretenses in other cases does not mean that the Court
20   can or should enter an overbroad injunction in this case over Defendants' objections.
21       Ms. Muniz explained ***precisely*** what Yuga wants, for Defendants to lose their
22   right to say "Bored Ape Yacht Club" ever again.  Trial Tr. [Muniz] at 94:5-13.  As
23   Yuga's proposed injunction is written, there is a high likelihood that basic criticisms
24   of Yuga and its marks would be covered by the injunction.
25       To the extent Yuga is demanding the smart contract, doing so might not be
26   technically feasible and it is futile.  As such, this term runs a high risk of being set as a
27   "trap" for Defendants to fall into as compliance might not be possible.  Further, Yuga
28

has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it.  *See* Trial Tr. [Atalay] 134:11-20.  An order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case.  Further, it would be enforceable in court. Likewise, a prohibition from using the rrbayc.com and apemarket.com domains—both of which are inactive—would suffice and fit the scope of the injury found by the court in this case (subject to Defendants' right to appeal).  Yuga's argument that an injunction that prevents Defendants from using the marks and domain names in commerce would be insufficient without the smart contract is speculative and wrongly assumes that Defendants would not comply with a court order.