Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 48**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. 48:

<u>Injunctive relief will serve the public interest by preventing consumer confusion, and it will vindicate the Lanham Act by protecting Yuga Labs' trademark rights against Defendants' continued infringement.</u> *See Am. Rena Int'l Corp. v. SisJoyce Int'l Co.*, 534 F. App'x. 633, 636 (9th Cir. 2013); Dkts. 342 ¶¶62, 78, 79; 392 at 100:6-14; 136:5-18; 138:6-139:11.

### Defendants' Basis of Dispute:

There is no "continued infringement" by Defendants. In support of there being "continued infringement" Yuga cites to sections of the trial transcript referencing the smart contract. Defendants oppose a transfer of the smart contract to Yuga because a transfer would serve no effective purpose. The Court can simply enjoin the Defendants from making more RR/BAYC NFTs. Likewise, even though Defendants do not own the "live version" of the Apemarket website, which the parties agree never sold a single NFT, enjoining them from using the mark is sufficient to serve the purposes of the injunction. Lastly, there is no evidence that Defendants have minted any more RR/BAYC NFTs recently.

To the extent that the "continued infringement" is Defendants' continued criticism of Yuga, its marks, and its business practices, the proposed injunction is far too broad. The legal authority that Yuga cites in support of its severe and overly broad injunction actually supports Defendants' position because it affirms an injunction as not overly-broad because, "it does not prevent Sis–Joyce from selling non-infringing products or ***from engaging in speech that does not constitute***

1  *infringement* or intentional interference with economic advantage." *American Rena-
2  Int'l Corp. v. Sis-Joyce Int'l Co. Ltd.*, 435 F. App'x 633, 636 (9th Cir. 2013)
3  (emphasis added).  Yuga's proposed injunction would try to stop Defendants' non-
4  infringing speech.

5                      **Plaintiff's Response:**

6        Defendants' objection should be rejected because (1) Yuga Labs' proposed
7  injunction does not seek to curtail Defendants' First Amendment rights, (2)
8  Defendants' proposed injunctive relief is too narrow, (3) Yuga Labs' proposed
9  injunction is tailored to address the irreparable harm done to Yuga Labs and allow it
10 to regain control of its brand.

11       **Yuga Labs' Proposed Injunction Does Not Seek To Curtail Defendants'**
12 **First Amendment Rights:**  Defendants' did not infringe Yuga Labs' BAYC Marks
13 by merely selling NFTs.  They infringed Yuga Labs' NFTs by creating the RR/BAYC
14 NFTs (the Foundation contract), creating NFT marketplaces on which to sell the NFTs
15 (e.g. the Foundation sales page), giving away infringing NFTs to get people to market
16 or support their business venture, promoting their NFTs, marketing them through
17 @ApeMarketplace and developing an NFT marketplace (Ape Market) to "stimulate"
18 the sales of their infringing NFTs, by selling their NFTs to initial purchasers, and by
19 driving up the price of their NFTs and then re-selling those they hold for a further
20 profit.  Defendants continue to infringe by marketing RR/BAYC NFTs—for example
21 advertising rrbayc.com on their @Ape Market Twitter page alongside a link to an
22 NFT marketplace where users can still purchase RR/BAYC NFTs.  *See* Solano Decl. ¶
23 77.  Yuga Labs' proposed injunction would put an end to that marketing by
24 transferring control of these instrumentalities of infringement to Yuga Labs.  The
25 terms of the injunction that Yuga Labs contends is appropriate in this case are clear
26 from its proposed findings of fact and conclusions of law.  Dkt. 416.  Yuga Labs has
27 not sought to limit Defendants' criticisms of Yuga Labs through its proposed
28

1  injunction. Indeed, Defendants' contention that their ongoing infringement constitutes
2  "criticism" demonstrates why a court order "enjoining them from using the mark"
3  alone would not stop their infringement. *See* Dkt. 419-1 at 3:25-4:6. Yuga Labs must
4  be given the instrumentalities of their infringement so that they cannot continue to
5  infringe and claim it is criticism.

6  Yuga Labs' former CEO did not testify that Yuga Labs intends to silence
7  Defendants. Rather, the context of Ms. Muniz's testimony is clear that she was
8  speaking about Defendants' use of Yuga Labs' Bored Ape Yacht Club trademark to
9  promote products. Trial Tr. at 94:5-13. There is no debate that Yuga Labs is seeking
10 an injunction to stop Defendants' infringement of its marks. The terms of the
11 injunction that Yuga Labs contends is appropriate in this case are clear from its
12 proposed findings of fact and conclusions of law. Dkt. 416. Yuga Labs has not
13 sought to limit Defendants' criticisms of Yuga Labs through its proposed injunction,
14 only Defendants' commercial infringement, which is the focus of this case, as the
15 Court has found many times. *See* Dkt. 62 at 7 ("These are all commercial activities
16 designed to sell infringing products, not expressive artistic speech protected by the
17 First Amendment"); Dkt. 178 at 6 ("[T]he Court has concluded that this action
18 concerns Defendants' commercial conduct and not Defendants' free speech rights");
19 Dkt. 225 at 16 (same as Dkt. 62). What is also clear is that Defendants refuse to
20 accept any reasonable injunctive relief, even though the Court has already found that
21 Yuga Labs is entitled to injunctive relief. Dkt. 418-1.

22 **Defendants' Proposed Injunction Is Too Narrow:** Defendants' proposed
23 injunction does not prohibit Defendants from marketing, licensing, or manufacturing
24 RR/BAYC NFTs. Dkt. 418-1 at 20:21-21:5, 22:7-10. It also does not prohibit them
25 from promoting RR/BAYC NFTs if someone else is selling the NFT. Likewise,
26 simply eliminating Defendants' direct sales of their infringing NFTs does not protect
27 Yuga Labs from the irreparable harm done by Defendants' infringement. *Id.* ¶¶ 45-
28

56. Part of this irreparable harm derives from the fact that the RR/BAYC NFTs are immutably linked to Yuga Labs' Bored Ape Yacht Club brand through the RR/BAYC smart contract and token tracker. Trial Tr. at 134:1-8 (Mr. Atalay testifying that "[i]n this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance."). Defendants' proposed injunction would also not transfer control of the RR/BAYC smart contract to Yuga Labs. Without transfer of the contract, the Defendants would forever have control over and a connection to Yuga Labs' BAYC Marks. *See* Solano Decl. (Dkt. 342) ¶ 79. However, transferring control of the contract to Yuga Labs allows Yuga Labs to work with NFT marketplaces to address the confusion on their marketplace through changes to the marketplace itself. Trial Tr. 100:6-14 (having control of the contract allows Yuga Labs to "change the front-facing terminology so that people could at least be aware of the fact that this is fraudulent in an easier capacity"); Trial Tr. 136:9-18 ("But if Yuga Labs had control, was the owner of the smart contract, we would have a much greater flexibility in controlling how the collection is displayed in marketplaces, including OpenSea."); Trial Tr. 138:6-139:11 (Mr. Atalay detailing the how control of the smart contract will allow Yuga Labs to combat consumer confusion). Defendants have no basis for continuing to hold on to the instrumentalities of their bad faith infringement—namely the RR/BAYC smart contract used to manufacture and sell the infringing NFTs and the cybersquatting domains rrbayc.com and apemarket.com. Each of these instrumentalities should be under the control of Yuga Labs as the rightful owner of the BAYC Marks.

**Yuga Labs' Injunction Is Properly Tailored:** A properly tailored injunction must end the irreparable harm done to Yuga Labs' BAYC brand and allow it to regain control of the brand. This includes putting an end to Defendants' sales, promotion, and marketing of infringing NFTs; preventing Defendants from creating any future

1 confusion by minting new infringing NFTs or improperly using Yuga Labs' Marks;
2 alerting consumers that the RR/BAYC NFTs are a scam; and transferring the smart
3 contract and other infringing domains and instrumentalities to Yuga Labs so it once
4 again has sole control over its marks.  It is unrebutted that transferring the smart
5 contract to Yuga Labs would allow it to regain control over its brand.  The injunctive
6 relief set forth in Yuga Labs' Proposed Findings of Fact and Conclusions of Law
7 would accomplish this.  *See* Dkt. 416 at 14-17, 20-23.  Indeed, two other courts have
8 entered similar injunctions against Defendants' business partners.  *See* Judgment and
9 Order for Permanent Injunction Against Ryan Hickman (Dkt. 30), *Yuga Labs, Inc. v.*
10 *Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023); JTX-621 (Consent
11 Judgment and Order for Permanent Injunction Against Thomas Lehman (Dkt. 12),
12 *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023)).

13 **Defendants' Reply:**

14 Yuga's proposed injunctive relief is too broad.  First, citations to the Lehman
15 consent judgment—which was a condition of settlement—and the injunction entered
16 against Mr. Hickman—which was attained via a default judgment.  Neither Mr.
17 Lehman and Mr. Hickman were defending themselves against the terms of the
18 overbroad injunction.   And the injunction in Mr. Hickman's case was obtained under
19 false pretenses because Yuga never served the complaint in Mr. Hickman's case and
20 instead left it on his porch unattended after the server told Mr. Hickman's twelve-
21 year-old daughter that he could not serve her.  *Yuga Labs, Inc. v. Hickman*, 2:23-cv-
22 00111-JCM-NJK, Dkt. 31-1 at 2 (D. Nev.) ("6.  I told the stranger that my parents
23 were not home, and that I was twelve years old.  7.  The stranger told me he could not
24 leave the papers with me, and left.  I did not see the stranger return.").  Yuga then
25 submitted an affidavit ***falsely stating*** to the court that it had served Mr. Hickman's
26 fifteen-year-old daughter.  *See Yuga Labs, Inc. v. Hickman*, 2:23-cv-00111-JCM-NJK,
27 Dkt. 31 at 7 (D. Nev.) ("Plaintiff fraudulently represented to the Court that Hickman's

daughter was fifteen and that the process server delivered copies of the Complaint and summons to her. … This is blatantly false, and was undoubtedly asserted by Plaintiff in an effort to obtain a favorable Default Judgment ruling."). The Court in Mr. Hickman's case has stayed judgment to reassess the validity of default judgment. *Yuga Labs, Inc. v. Hickman*, 2:23-cv-00111-JCM-NJK, Dkt. 37 (D. Nev.) (granting emergency motion to stay enforcement of default judgment). Thus, these stipulated, and *ex parte*, injunctions do not set the standard for what a reasonable injunction should be.

Instead, a well-tailored injunction would instead focus on Yuga's complaint, which focused on the use of Yuga's marks in domain names and in commerce. *See* Dkt. 1 at *5. Any injunction must be technologically feasible, and also fit the substance of the complaint. Further, the Court would have the ability to enforce anything, so a court order barring Defendants from using or selling products with and a prohibition against using rrbayc.com and apemarket.com domains would be sufficient to fit the alleged harms.

Yuga focuses much of its dispute on being given the smart contract. That would serve no purpose of addressing infringement might not be technically feasible. But Yuga has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it. *See* Trial Tr. [Atalay] 134:11-20. However, an order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case. Further, it would be enforceable in court. Likewise, a prohibition on minting—something Defendants have never claimed having any interest in doing—would be enforceable and effectively give Yuga its proposed relief while being technologically feasible.

Lastly, Yuga is focused on alleged continued sales of RR/BAYC NFTs. Defendants are not involved in (or making money off of) continued sales of

RR/BAYC NFTs.  Like its fear about future minting, any concern about Defendants being engaged in the future sales of RR/BAYC NFTs is speculative and not based on anything that Defendants have said.