Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>     Plaintiff,<br><br> v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>     Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 52**<br><br>Judge: Hon. John F. Walter |

Case 2:22-cv-04355-JFW-JEM   Document 427-82   Filed 10/02/23   Page 2 of 6   Page ID
#:34211

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. 52:

The same logic extends to the NFT smart contracts. Like domain names and social media accounts, smart contracts give consumers confidence in the authenticity and source of digital accounts. Thus, Yuga Labs has a superior claim of title to the RR/BAYC smart contract bearing its trademarks.

### Defendants' Basis of Dispute:

This conclusion of law seeks an overly restrictive injunction that is not tailored to remedy the alleged harm and is impermissible. Specifically, "[a] trademark injunction . . . can raise serious First Amendment concerns because it can interfere with truthful communication between buyers and sellers in the marketplace. Accordingly, we must ensure that the injunction is tailored to eliminate only the specific harm alleged." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010) (cleaned up). "Prohibition of . . . truthful and non-misleading speech does not advance the Lanham Act's purpose of protecting consumers and preventing unfair competition; in fact, it undermines that rationale by frustrating honest communication . . . ." *Id.* at 1176-77.

The smart contract that Yuga seeks to obtain clearly indicates the source of the RR/BAYC NFTs is Mr. Ripps's wallet and not Yuga. *See* JTX-1146. Therefore, the smart contract does not contribute to the alleged confusion. Additionally, the smart contract is, even according to Yuga's own witness's testimony, immutable and cannot be changed even if transferred to Yuga. *See* Trial Tr. [Atalay] 133:24-8.

1  Accordingly, an injunction transferring the contract to Yuga would not be tailored to
2  eliminate the alleged harm of infringement.

3          **Plaintiff's Response:**

4          Defendants' objection should be rejected because (1) Yuga Labs' proposed
5  injunction is tailored to address the irreparable harm done to Yuga Labs and allow it
6  to regain control of its brand and (2) obtaining the RR/BAYC smart contract is an
7  important part of addressing that harm.

8          **Yuga Labs' Proposed Injunction Is Properly Tailored:**  A properly tailored
9  injunction must end the irreparable harm done to Yuga Labs' BAYC brand and allow
10 it to regain control of the brand.  This includes putting an end to Defendants' sales,
11 promotion, and marketing of infringing NFTs; preventing Defendants from creating
12 any future confusion by minting new infringing NFTs or improperly using Yuga
13 Labs' Marks; alerting consumers that the RR/BAYC NFTs are a scam; and
14 transferring the smart contract and other infringing domains and instrumentalities to
15 Yuga Labs so it once again has sole control over its marks.  It is unrebutted that
16 transferring the smart contract to Yuga Labs would allow it to regain control over its
17 brand.  The injunctive relief set forth in Yuga Labs' Proposed Findings of Fact and
18 Conclusions of Law would accomplish this.  *See* Dkt. 416 at 14-17, 20-23.  Indeed,
19 two other courts have entered similar injunctions against Defendants' business
20 partners.  *See* Judgment and Order for Permanent Injunction Against Ryan Hickman
21 (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug.
22 25, 2023); JTX-621 (Consent Judgment and Order for Permanent Injunction Against
23 Thomas Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-
24 TWD (N.D.N.Y Feb. 6, 2023)).

25         **Obtaining The RR/BAYC Smart Contract Is An Important Part Of The
26 Injunction:**  The immutability of the RR/BAYC NFT contract is a major reason the
27 contract should be transferred to Yuga Labs.  Without transfer of the contract, the

28

Defendants would forever have control over and a connection to Yuga Labs' BAYC Marks.  *See* Solano Decl. (Dkt. 342) ¶ 79.  Defendants have no basis for continuing to hold on to the instrumentalities of their bad faith infringement—namely the RR/BAYC smart contract used to manufacture and sell the infringing NFTs, the cybersquatting domains rrbayc.com and apemarket.com, and the @ApeMarketplace account used exclusively to promote RR/BAYC NFTs and Ape Market.  Each of these instrumentalities should be under the control of Yuga Labs as the rightful owner of the BAYC Marks.

Defendants' contention that the smart contract indicates the source of the RR/BAYC NFTs as Mr. Ripps' wallet is misleading.  The "ryder-ripps.eth" name did not appear on Etherscan until *after* minting, most if not all of, the infringing NFTs.  *Compare* JTX-25, *with* JTX-36.  More directly, though, the contract will always say Bored Ape Yacht Club and BAYC – Mr. Ripps has no right to forever associate himself with Yuga Labs' trademarks.  On the contrary, Yuga Labs explained at trial how ownership of the smart contract will allow Yuga Labs to work with the NFT marketplaces to ensure that the human readable elements of the marketplace clearly indicate that RR/BAYC NFTs are not authentic BAYC NFTs.  Thus, transferring the RR/BAYC smart contract from the infringer, Mr. Ripps, to the rightful owner, Yuga Labs will help reduce future confusion.

Defendants' claim that retaining the smart contract would not result in further infringement is facially invalid.  As long as they have the RR/BAYC smart contract, they will continue to be infringing on the BAYC Marks in it.  Moreover, ownership and control of the smart contract could allow Defendants to obtain royalties or mint new RR/BAYC NFTs in the future.  Thus, transferring the RR/BAYC smart contract from the infringer, Mr. Ripps, to the rightful owner, Yuga Labs, will help reduce future confusion and reduce the risk of future ill-gotten gains to Mr. Ripps.

**Defendants' Reply:**

It is undisputed that the wallet connected to the contract says "ryderripps.eth" JTX-1146. Yuga has not proven how the smart contract itself will cause confusion. Further, to the extent it relies on vague concerns that Defendants will remint or mint RR/BAYC NFTs this is without any backing in the record. An order barring such minting would also suffice to ameliorate any possible harm.

Likewise ordering transfer of the smart contract might not be technically feasible and it is futile. As such, this term runs a high risk of being set as a "trap" for Defendants to fall into as compliance might not be possible. Further, Yuga has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it. *See* Trial Tr. [Atalay] 134:11-20. An order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case. Further, it would be enforceable in court. Likewise, a prohibition from using the rrbayc.com and apemarket.com domains—both of which are inactive—would suffice and fit the scope of the injury found by the court in this case (subject to Defendants' right to appeal). Yuga's argument that an injunction that prevents Defendants from using the marks and domain names in commerce would be insufficient without the smart contract is speculative and wrongly assumes that Defendants would not comply with a court order.

Yuga also misleadingly references the injunctions entered in the related cases against Mr. Lehman and Mr. Hickman. First, the injunction entered in Mr. Lehman's case as entered via consent judgment that was obtained through the same settlement that resulted in Mr. Lehman's coerced declaration to which Yuga repeatedly cites. Mr. Lehman, in order to save his family and himself, agreed to Yuga's overbroad terms.

Case No. 2:22-cv-04355-JFW-JEM -4- DEFENDANTS' OBJECTIONS

And in Mr. Hickman's case, Yuga obtained a default judgment by submitting a false affidavit to the court in Nevada, which has resulted in a stay in enforcing the injunction.  Specifically, Yuga never served the complaint in Mr. Hickman's case and instead left it on his porch unattended after the server told Mr. Hickman's twelve-year-old daughter that he could not serve her.  *Yuga Labs, Inc. v. Hickman*, 2:23-cv-00111-JCM-NJK, Dkt. 31-1 at 2 (D. Nev.) ("6.  I told the stranger that my parents were not home, and that I was twelve years old.  7.  The stranger told me he could not leave the papers with me, and left.  I did not see the stranger return.").  Yuga then submitted an affidavit ***falsely stating*** to the court that it had served Mr. Hickman's fifteen-year-old daughter.  See *Yuga Labs, Inc. v. Hickman*, 2:23-cv-00111-JCM-NJK, Dkt. 31 at 7 (D. Nev.) ("Plaintiff fraudulently represented to the Court that Hickman's daughter was fifteen and that the process server delivered copies of the Complaint and summons to her. … This is blatantly false, and was undoubtedly asserted by Plaintiff in an effort to obtain a favorable Default Judgment ruling.").  The Court in Mr. Hickman's case has stayed the injunction to reassess the validity of default judgment.  *Yuga Labs, Inc. v. Hickman*, 2:23-cv-00111-JCM-NJK, Dkt. 37 (D. Nev.) (granting emergency motion to stay enforcement of default judgment).