Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                          Plaintiff,<br><br>        v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                          Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 53, Lines 17:8-10, 12-14**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

## Plaintiff's Disputed Post Trial Conclusion of Law No. 53, lines 17:8-10, 12-14:

Defendants' infringing smart contract is the source of the infringing NFTs and immutably uses Yuga Labs' BORED APE YACHT CLUB and BAYC marks in the manufacture, sale, and promotion of the infringing RR/BAYC NFTs. *See supra* ¶¶7c, 7e, 12, 15, 23; Dkt. 392 at 59:20-60:12, 133:24-134:20, 138:6- 139:11; *see also* Dkt. 337 ¶¶2-6; Dkt. 342 ¶80; JTX-1616. Therefore, the RR/BAYC smart contract harms the perceived exclusivity of genuine BAYC NFTs, and fosters confusion, if left in the control of anyone other than Yuga Labs.

## Defendants' Basis of Dispute:

Evidence at trial showed that Yuga does not own the alleged BAYC Marks. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673. That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs. We can agree on that; right? A. Yes. That is covered in the terms.").

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346)

1   (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  There were

2   hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht

3   Club Brand on the NFT marketplace OpenSea.  Trial Tr. [Muniz] 77:19-23; [Muniz]

4   78:7-21; [Muniz] 80:3-13.  And, as Yuga's CEO admitted, there are "literally

5   thousands" of products that use Yuga trademarks without sponsorship or affiliation

6   with Yuga.  Trial Tr. [Muniz] 81:18-22.  For example, there are published notebooks

7   with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal

8   brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that

9   use Yuga's trademarks.  *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

10         Further, Yuga does not own the asserted marks because NFTs are not eligible

11  for trademark protection.  The Supreme Court has held that trademarks are limited to

12  "tangible goods that are offered for sale, and not the author of any idea, concept, or

13  communication embodied in those goods."  *Dastar Corp. v. Twentieth Century Fox*

14  *Film Corp.*, 539 U.S. 23, 37 (2003).  Misrepresentation of the origins of a

15  ***communicative*** work is a dispute relegated to the confines of copyright law, not

16  trademark.  *Id.* at 33-35; *see also Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-

17  SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014) (*Dastar* bars trademark claims

18  based on origin of hologram, as it is "likened to a cartoon animation").  Here, the

19  "goods" for which Yuga claims trademark rights are NFTs, which are comparable to

20  certificates of authenticity/ownership and are not digital goods in themselves.  Trial

21  Tr. [Atalay] 127:9-16.

22         Second, Mr. Ripps and Mr. Cahen used modified versions of the alleged BAYC

23  Marks in their reservations.  For example, the logo used states: "This Logo is Based

24  on the SS Totenkopf; 18 Teeth."  *See* JTX-2085.  Also, the website for the project,

25  rrbayc.com, used the modified "RR/BAYC" throughout. *Id.*

26

27

28

Third, the smart contract for the RR/BAYC NFTs clearly indicates that the creator is Mr. Ripps's wallet, and not Yuga's. *See* JTX-1146. Accordingly, there is no support for the statement that the smart contract fosters confusion.

Finally, as the evidence presented at trial indicated, Yuga has not identified even a single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct."). Accordingly, there is no evidence of actual confusion resulting from the sale of RR/BAYC NFTs that an injunction transferring the RR/BAYC smart contract would eliminate.

Finally, the evidence Yuga cites to does not support this conclusion of law as they do not show any consumer was actually confused by the smart contract when reserving an RR/BAYC NFT nor do they show how the transferring an immutable smart contract to Yuga will help prevent confusion going forward. *See* Dkt. 392 at 59:20-60:12, 133:24-134:20, 138:6- 139:11; *see also* Atalay Decl. ¶¶ 2-6 (Dkt. 337); Solano Decl. ¶ 80 (Dkt. 342); JTX-1616.

### **Plaintiff's Response:**

Defendants' objections should be rejected because (1) the Court has rejected Defendants' arguments that Yuga Labs does not own the BAYC Marks, and the evidence shows that Yuga Labs owns these marks; (2) Defendants used unmodified marks many times; (3) The RR/BAYC contract only showed Mr. Ripps' name after minting; (4) Yuga Labs has provided ample evidence of actual confusion; (5) Yuga Labs' proposed injunction is tailored to address the irreparable harm done to Yuga

1  Labs and allow it to regain control of its brand; and (6) Obtaining the RR/BAYC

2  smart contract is an important part of the injunction.

3        **Defendants Cannot Relitigate Issues Decided On Summary Judgment:**  The

4  Court has already adjudicated these issues in its Summary Judgment Order (Dkt. 225).

5  In that order, the Court held that Yuga Labs owns its BAYC Marks, that NFTs are

6  goods for the purpose of the Lanham Act, that Yuga Labs used those marks in

7  commerce, and that Yuga Labs has not abandoned its marks.  *Id.* at 6-10.  The Court

8  also held that "Defendants have admitted that they intentionally used the BAYC

9  Marks in their RR/BAYC NFTs."  *Id.* at 11.  The Court "easily conclude[d]" that

10  Defendants' use of identical marks, on identical products, in identical markets

11  supported a finding of a likelihood of confusion.  *Id.* at 10-13.  Additionally, the Court

12  has already held that NFTs are goods that are subject to trademark protection under

13  the Lanham Act.  SJ Order (Dkt. 225) at 6-8; *see also Hermès International v.*

14  *Rothschild*, 590 F. Supp. 3d 647, 655 (S.D.N.Y. 2022).

15        The SJ Order establishes the matters adjudicated therein for purposes of this

16  case.  Fed. R. Civ. P. 56(g) (district courts partially adjudicating case on a summary

17  judgment motion may "enter an order stating any material fact — including an item of

18  damages or other relief — that is not genuinely in dispute and treating the fact as

19  established in the case"); *accord Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready*

20  *Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011); *Singh v. George*

21  *Washington Univ. Sch. Of Med. & Health Scis.*, 508 F.3d 1097, 1106 (D.C. Cir. 2007)

22  ("Facts found on partial summary judgment are taken as established at trial.").

23        Defendants did not move the Court to reconsider its holdings.  Nevertheless,

24  Defendants refuse to accept the Court's order, unnecessarily burdening the Court and

25  Yuga Labs by attempting to relitigate these issues at trial and in post-trial filings as if

26  the Court's order does not exist.  Defendants' tactics are inconsistent with the very

27  purpose of a partial summary judgment order, which is "intended to avoid a ***useless***

28

1  *trial of facts and issues over which there was really never any controversy* and

2  which would tend to confuse and complicate a lawsuit." *Peliculas Y Videos*

3  *Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d

4  1131, 1133 (C.D. Cal. 2004) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769

5  n.3 (9th Cir.1981)) (emphasis added).  Defendants' authorities do not support their

6  position.  *See Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3

7  (E.D. Cal. Mar. 25, 2019) ("evidence concerning issues resolved at summary

8  judgment is *generally not relevant and should be excluded*" at trial) (emphasis

9  added); *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (discussing

10  applicability of the law of the case doctrine where a case is assigned to a new judge).

11  "The partial summary judgment is merely a pretrial adjudication that certain

12  issues shall be deemed established for the trial of the case and likewise serves the

13  purpose of speeding up litigation by eliminating before trial matters wherein there is

14  no genuine issue of fact." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 n.9 (9th Cir.

15  2009) (alteration and citation omitted).  Defendants' repeated attempts to ignore or

16  undo the Court's Order "speeding up litigation" is a dilatory and abusive litigation

17  tactic that has unjustifiably increased the cost of resolving this case.

18  **Defendants Used Unmodified Versions Of Yuga Labs' BAYC Marks:**

19  Defendants contention to the contrary is contradicted by the evidence in the record.

20  *See, e.g.*, JTX-25, JTX-80, JTX-82, JTX-138, JTX-670, JTX-675, JTX-677, JTX-972,

21  JTX-1595.  Mr. Ripps even admitted that the "RR/BAYC project . . . displayed

22  unmodified marks, so that the RR/BAYC project would be directly tied to Yuga,

23  BAYC, and specific BAYC NFTs...."  Dkt. 149-42 at 9-10.

24  **The RR/BAYC Contract Only Showed Mr. Ripps' Name After Minting:**

25  Mr. Ripps testified that he minted the RR/BAYC NFTs to his "personal wallet, ryder-

26  ripps.eth", but the "ryder-ripps.eth" name did not appear on Etherscan until *after*

27  minting, most if not all of, the infringing NFTs.  *Compare* JTX-25, *with* JTX-36.

28

Thus, Defendants' narrative that customers would not be confused because they could see the NFTs were minted from Mr. Ripps' wallet is belied by the fact that the wallet displayed Mr. Ripps' name *after* the initial mint and customers would not encounter the "ryder-ripps.eth" creator tag had they even tried to look.

**Yuga Labs Has Provided Ample Evidence Of Actual Confusion:**  Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion.  SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Deposition at 290:4-9; JTX-1049; Berger Declaration (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7.  Defendants were aware of the confusion. *See, e.g.*, JTX-801.195 (Mr. Lehman noting that people "making mistakes with apes is already a huge meme" and "Remember the 'average joes'?", and Cahen responding, "I mean that is unavoidable").  And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs.  JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341)¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

There is a clear likelihood of confusion as well, given Defendants' use of the same marks and images, which the Court already determined.  SJ Order (Dkt. 225) at 10-13; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'")

1  (citation omitted).  In any event, actual confusion is not required; and the Court

2  already found Defendants' use of BAYC Marks to be infringing.  SJ Order (Dkt. 225)

3  at 12.  Yuga Labs is thus entitled to Defendants' profits due to their infringing activity

4  regardless of whether purchasers were actually confused.  *See Gucci Am., Inc. v.*

5  *Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's

6  profits even where infringement claims premised solely on post-sale confusion where

7  a "potential purchaser, knowing that the public is likely to be confused or deceived by

8  the allegedly infringing product, [] choose[s] to purchase that product instead of a

9  genuine one").

10      **Yuga Labs' Proposed Injunction Is Properly Tailored:**  A properly tailored

11  injunction must end the irreparable harm done to Yuga Labs' BAYC brand and allow

12  it to regain control of the brand.  This includes putting an end to Defendants' sales,

13  promotion, and marketing of infringing NFTs; preventing Defendants from creating

14  any future confusion by minting new infringing NFTs or improperly using Yuga

15  Labs' Marks; alerting consumers that the RR/BAYC NFTs are a scam; and

16  transferring the smart contract and other infringing domains and instrumentalities to

17  Yuga Labs so it once again has sole control over its marks.  It is unrebutted that

18  transferring the smart contract to Yuga Labs would allow it to regain control over its

19  brand.  The injunctive relief set forth in Yuga Labs' Proposed Findings of Fact and

20  Conclusions of Law would accomplish this.  *See* Dkt. 416 at 14-17, 20-23.  Indeed,

21  two other courts have entered similar injunctions against Defendants' business

22  partners.  *See* Judgment and Order for Permanent Injunction Against Ryan Hickman

23  (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug.

24  25, 2023); JTX-621 (Consent Judgment and Order for Permanent Injunction Against

25  Thomas Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-

26  TWD (N.D.N.Y Feb. 6, 2023)).

27

28

1    **Obtaining the RR/BAYC smart contract is an important part of the**

2  **injunction:**  The immutability of the RR/BAYC NFT contract is a major reason the

3  contract should be transferred to Yuga Labs.  Without transfer of the contract, the

4  Defendants would forever have control over and a connection to Yuga Labs' BAYC

5  Marks.  *See* Solano Decl. (Dkt. 342) ¶ 79.  Defendants have no basis for continuing to

6  hold on to the instrumentalities of their bad faith infringement—namely the

7  RR/BAYC smart contract used to manufacture and sell the infringing NFTs, the

8  cybersquatting domains rrbayc.com and apemarket.com, and the @ApeMarketplace

9  account used exclusively to promote RR/BAYC NFTs and Ape Market.  Each of these

10 instrumentalities should be under the control of Yuga Labs as the rightful owner of the

11 BAYC Marks.

12    Defendants' contention that the smart contract indicates the source of the

13 RR/BAYC NFTs as Mr. Ripps' wallet is misleading.  The "ryder-ripps.eth" name did

14 not appear on Etherscan until *after* minting most, if not all, of the infringing NFTs.

15 *Compare* JTX-25, *with* JTX-36.  More directly, though, the contract will always say

16 Bored Ape Yacht Club and BAYC – Mr. Ripps has no right to forever associate

17 himself with Yuga Labs' trademarks.  On the contrary, Yuga Labs explained at trial

18 how ownership of the smart contract will allow Yuga Labs to work with the NFT

19 marketplaces to ensure that the human readable elements of the marketplace clearly

20 indicate that RR/BAYC NFTs are not authentic BAYC NFTs.  Defendants'

21 conclusory statements fail to rebut any of these basic facts.

22    **Defendants' Reply:**

23    The Smart contract clearly indicates that it is owned by Ryder Ripps.  *See* JTX-

24 1146; Trial Tr. [Atalay] 130:19-131:6.  Further, Yuga has not proven that anybody

25 was confused by the smart contract.  This is especially pertinent because the Ryder

26 Ripps smart contract is a different smart contract than Yuga's and therefore

27

28

necessarily implied that the NFTs underlying the contracts had different sources. *Id.* at 135:22-25.

Defendants acknowledge this Court's finding on summary judgment. However, Yuga affirmatively raised some of these issues here, and to the extent anything in Defendants' objection is in disagreement with the Court's legal findings at summary judgment, Defendants are contesting the legal findings to preserve for appeal. However, to the extent Defendants objections implicate issues of intent, Defendants had a good-faith intent to believe that Yuga surrendered its marks to the world generally and to them specifically through Mr. Hickman's ownership of a BAYC. *See* Trial Tr. [Solano] 24:3-11; *id.* at 28:6-9; 76:5-15 [Muniz]. The Court never considered or decided how Mr. Hickman's ownership of a BAYC had any effect on Defendants' intent.

Regardless, Yuga's demand for the smart contract not be technically feasible and it is futile. As such, this term runs a high risk of being set as a "trap" for Defendants to fall into as compliance might not be possible. Further, Yuga has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it. *See* Trial Tr. [Atalay] 134:11-20. An order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case. Likewise, a prohibition from using the rrbayc.com and apemarket.com domains—both of which are inactive—fit the scope of the injury found by the Court at summary judgment (subject to Defendants' right to appeal). Yuga's argument that an injunction that prevents Defendants from using the marks and domain names in commerce would be insufficient without the smart contract is speculative and wrongly assumes that Defendants would not comply with a court order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28