Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 57**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. 57:

Yuga Labs is the prevailing party. *See*, *e.g.*, SJ Order at 13, 15, 22. Thus, Yuga Labs is entitled to recover its costs.

### Defendants' Basis of Dispute:

Defendants acknowledge that this Court granted summary judgment in Yuga's favor on Yuga's false designation claim and Yuga's cybersquatting claim. However, this Court made no determination regarding costs in its summary judgement order. Dkt. 225. Furthermore, Defendants dispute that Yuga satisfied the summary judgment standard and reserve the right to appeal the Court's order. Because the final remedies in this action will be subject to the outcome of any appeal, Defendants dispute that Yuga has proven its claims and that it is entitled to monetary remedies, injunctive relief, or costs.

An appellee is no longer a "prevailing party" when a favorable judgment on the merits in a lower proceeding is reversed on appeal. *See*, *e.g.*, ., *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 373–74 (9th Cir. 1996) (directing award of attorneys' fees in district court to be vacated once appellees lost on their appeal); *Turner v. McMahon*, 830 F.2d 1003, 1009 (9th Cir. 1987) (same).

Moreover, Yuga is not entitled to any costs because the equities of this case weight against the award of any costs. Here, Defendants were forced to advance with litigation to trial because of Yuga's unreasonable settlement demand that Defendants surrender their speech rights to criticize Yuga. As the Court itself noted, Yuga's demand for a non-disparagement clause was "a condition that is quite frankly

1  unreasonable." Hearing Transcript June 16, 2023, at 9:9-12.  The reason that this case
2  has continued as far as it has is Yuga's insistence on silencing Defendants.

3  　　　Defendants also advanced good faith arguments in favor of their positions on
4  both liability and damages.  Defendants made a good-faith argument that they were
5  entitled to a *Rogers* defense on free speech grounds— a common defense in
6  trademark cases involving artists and their creations.  While this Court disagreed,
7  Defendants advanced this defense based on relevant evidence.  *See, e.g.*, Dkt. 163;
8  Dkt. 163-17-31 (fifteen unsolicited letters applauding the RR/BAYC project as
9  protest art that criticizes Yuga); Dkt. 163-80 (artist's statement); Dkt. 163-81
10 (disclaimer).

11 　　　Yuga's litigation misconduct likewise precludes an award of costs under the
12 principles of equity.  For example, Yuga used this litigation as means to harass Mr.
13 Ripps's 72-year-old father, Rodney Ripps.  During this lawsuit, a Yuga employee
14 threatened the life of Mr. Ripps's father (ultimately forcing Mr. Ripps's father to file
15 a police report).  *See* Ripps Depo. 181:15-182:3 ("He said, 'You and your son should
16 die.'  You said that.  And my dad is … freaked out, you know … he really is scared,
17 you know … You keep … harassing my family[.]").  Yuga's counsel Yuga initially
18 brushed off the issue, then later conceded that a threat did in fact occur.  Dkt. 97 at 4.
19 But Yuga's harassment of Mr. Ripps's father continued, including serving a facially
20 invalid subpoena on him seeking to compel his trial attendance (notwithstanding his
21 complete irrelevance to any issue in the case).

22 　　　Yuga served more than sixteen subpoenas in this action, nearly all of them
23 facially irrelevant and procuring no useful discovery, apparently to harass anyone that
24 is in any way associated with the Defendants.  For example, Yuga targeted people on
25 Twitter whose sole relevance was apparently having "liked" the RR/BAYC project,
26 Defendants' personal accountants, and Mr. Ripps's gallerist.  These parties
27 repeatedly commented on how Yuga's behavior in this lawsuit impacted them
28

1  personally, including for example Mr. Ripps's part-time, one-week general assistant
2  (whom Yuga insisted on deposing) who called Yuga's conduct "quite predatory,
3  honestly." Garner Depo. At 190:9-17.

4      Yuga also improperly tried to preclude relevant discovery by making a
5  baseless apex witness argument in an *ex parte* motion for a protective order.  The
6  Court rejected Yuga's baseless arguments, finding Yuga's motion "deficient on the
7  merits" because the co-founders were "the only people who have knowledge of the
8  creation of the marks."  Dkt. 77 at 2.  The Court accordingly ordered that Yuga
9  employees Wylie Aronow and Greg Solano appear for depositions on January 9 and
10 11 respectively (excusing Mr. Solano only if he had medical complications).  *Id*.  Yet,
11 despite this Court's order, **neither witness appeared**.  Yuga has never identified any
12 medical reason why Mr. Solano could not attend.  The Court was clear that failing to
13 appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did
14 not show up.  Dkt. 77 at *2.  Yuga has not done so.

15     Yuga also flouted this Court's Protective Order by improperly designating the
16 entirety of third-party Ryan Hickman's deposition testimony as HIGHLY
17 CONFIDENTIAL-ATTORNEYS EYES ONLY to hide Mr. Hickman's testimony
18 from the public.  This deposition involved no Yuga confidential information; instead,
19 it was the testimony of a Black Jewish third party that included discussion of racism
20 and antisemitism in Yuga's branding.  *See* Dkt. 123-2.  Defendants were forced to
21 bring a motion to address Yuga's misuse of the Protective Order, which the Court
22 granted ordering complete de-designation of the transcript and finding that Yuga was
23 wrong to "**hold the transcript hostage**."  Dkt. 133 at *2 (emphasis added).

24     Yuga also baselessly refused to produce materials relating to third-party
25 Thomas Lehman's settlement-procured declaration to run the clock on the discovery
26 schedule.  Defendants filed a motion to compel once Yuga disclosed the declaration
27 and sought expedited review of that motion to allow time for its use in a deposition of
28

1  Mr. Lehman.  The Court declined to consider the motion on an expedited basis,
2  stating that Defendants could instead depose Mr. Lehman in "the last week of March
3  before the April 1, 2023 discovery cut-off date."  Dkt. 119 at 2.  The Court ultimately
4  granted Defendants' motion, holding that Yuga waived any claim to confidentiality
5  due to its "unfettered use of Lehman's declaration[.]"  Dkt. 159 at 2.  After Yuga
6  belatedly made its court-ordered production, Defendants took Mr. Lehman's
7  deposition in the final week of discovery as suggested by the Court.  But because of
8  Yuga's delay, the deposition testimony—which raised disputes of fact regarding
9  Defendants' infringement and Yuga's credibility—was unavailable for consideration
10 in opposition to Yuga's motion for summary judgment.  *See* Dkt. 215 at 2.

11       Throughout the course of this litigation, Yuga also made repeated baseless
12 threats of fees and sanctions.  In total, Yuga has unsuccessfully asked the Court to
13 impose sanctions **six times**.  *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at
14 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20.  Every request was denied.
15 This kind of scorched-earth litigation strategy is improper in any context, but
16 particularly problematic where Defendants are two individuals attempting to respond
17 to claims brought by an uncompromising multi-billion-dollar corporate plaintiff.

18       Because Defendants advanced good faith arguments, because Defendants'
19 positions were reasonable and their defense of this litigation was necessitated by
20 Yuga's unreasonable settlement requirements, and because Yuga does not come to
21 the Court with clean hands as result of its litigation misconduct, Defendants
22 respectfully request that the Court hold that the principles of equity mandate an
23 award of costs.

24       **Plaintiff's Response:**
25       Defendants' objection should be rejected because (1) the Court has already
26 found Yuga Labs to be the prevailing party; (2) Defendants' exceptional case
27
28

objections are irrelevant and lack merit; and (3) Defendants improperly contradict facts stipulated to in the Pre-Trial Conference Order.

**The Court Has Already Found Yuga Labs To Be The Prevailing Party:** In that order, the Court held that Yuga Labs owns its BAYC Marks, that NFTs are goods for the purpose of the Lanham Act, that Yuga Labs used those marks in commerce, and that Yuga Labs has not abandoned its marks. *Id*. at 6-10. The Court also held that "Defendants have admitted that they intentionally used the BAYC Marks in their RR/BAYC NFTs." *Id*. at 11. The Court "easily conclude[d]" that Defendants' use of identical marks, on identical products, in identical markets supported a finding of a likelihood of confusion. *Id*. at 10-13. That order establishes the matters adjudicated therein for purposes of this case. Fed. R. Civ. P. 56(g) (district courts partially adjudicating case on a summary judgment motion may "enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case"); *accord Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011); *Singh v. George Washington Univ. Sch. Of Med. & Health Scis.*, 508 F.3d 1097, 1106 (D.C. Cir. 2007) ("Facts found on partial summary judgment are taken as established at trial.").

Defendants did not move the Court to reconsider its holdings. Nevertheless, Defendants refuse to accept the Court's order, unnecessarily burdening the Court and Yuga Labs by attempting to relitigate these issues at trial and in post-trial filings as if the Court's order does not exist. Defendants' tactics are inconsistent with the very purpose of a partial summary judgment order, which is "intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." *Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131, 1133 (C.D. Cal. 2004) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.1981))

1  (emphasis added).  Defendants' authorities do not support their position.  See *Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) ("evidence concerning issues resolved at summary judgment is ***generally not relevant and should be excluded***" at trial) (emphasis added); *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (discussing applicability of the law of the case doctrine where a case is assigned to a new judge).

"The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact."  *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 n.9 (9th Cir. 2009) (alteration citation omitted).  Defendants' repeated attempts to ignore or undo the Court's Order "speeding up litigation" is a dilatory and abusive litigation tactic that has unjustifiably increased the cost of resolving this case.

Nevertheless, Defendants forced the Court and the parties to re-litigate this decided issue.  As discussed herein, the evidence the Court can consider following the trial amply supports this factual finding.  Thus, the outcome on this issue after trial is no different than it was after Yuga Labs' Motion for Summary Judgment.  Defendants' objection should be rejected because the evidence shows that Defendants intended to confuse consumers.

Defendants have no basis to dispute that Yuga Labs prevailed on its false designation of origin and cybersquatting claims.  The authorities cited by Defendants do not support their absurd position that a prevailing party can only be determined on appeal or that only circuit courts have authority to award attorneys' fees.  *Cf. San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x. 674, 676 (9th Cir. 2020) (affirming district court's award of attorneys' fees in exceptional case).

**Defendants' Exceptional Case Objections Are Irrelevant And Lack Merit:**  The remainder of Defendants' objections are irrelevant to this issue and, in any event,

lacks any merit. *See infra* ¶¶ 61-66. For instance, Defendants complain that Yuga Labs subpoenaed Mr. Ripps' "gallerist" neglecting to mention that Defendants first disclosed this person as a witness on their own initial disclosures; Defendants also complain that Yuga Labs took the deposition of Mr. Ripps' "part-time, one-week general assistant (whom Yuga insisted on deposing)," even though they now claim that trial that Mr. Garner's services were essential expenditures such that a deduction in disgorgement is warranted. These are not good-faith positions.

**Defendants Improperly Contradict Facts Stipulated to in the Pre-Trial Conference Order**: Defendants' objections contradict their own stipulations in the proposed pre-trial conference order. *See* Dkt. 320-1. In that order, Defendants admitted that Yuga Labs is the creator of the Bored Ape Yacht Club NFT collection and owner of the BAYC Marks. *Id.* at 2-3. Defendants further admitted that "[t]he Court has determined that Defendants infringed the BAYC Marks" and "that Defendants' registration and use of the domain names https://rrbayc.com and https://apemarket.com constituted cybersquatting under the Anti-Cybersquatting Consumer Protection Act." *Id.* at 13. As such, Defendants have waived their right to now argue that they were not liable for infringing upon Yuga Labs' marks or cybersquatting under the ACPA. *See U.S. First Nat. Bank or Circle*, 652 F.2d 882, 886 (9th Cir. 1981) ("[N]or may a party offer evidence or advance theories at the trial which are not included in the [pre-trial conference] order *or which contradict its terms*.") (emphasis added). Defendants' attempt to now avoid liability after admitting to it clearly contradict the terms of the pre-trial conference order. Defendants' sudden refusal to accept a stipulated fact is a dilatory and abusive litigation tactic that unjustifiably increases the cost of resolving this case. Defendants' actions again make this an exceptional case. The Court should reject Defendants' objection.

**Defendants' Reply:**

|   |   |
|---|---|
| 1 | Yuga provides almost no context for its litigation misconduct.  This is |
| 2 | unsurprising because its repeated abuses of the litigation process were unreasonable |
| 3 | and unjustifiable.  Yuga has engaged in several egregious acts in this litigation |
| 4 | including (1) threatening to kill Mr. Ripps and his 72-year-old father, (2) harassing |
| 5 | sixteen facially irrelevant third parties, (3) improperly holding the deposition |
| 6 | transcript of Mr. Hickman "hostage" as this Court has described it, (4) not showing up |
| 7 | to deposition despite Court orders requiring them to do so, (5) baselessly refusing to |
| 8 | produce materials, (6) Yuga's demand for a non-disparagement clause in an effort to |
| 9 | take away Defendants' speech rights, and (7) having made six baseless threats of fee |
| 10 | and sanctions, all of which the Court has denied.  Given Yuga's numerous instances |
| 11 | of litigation misconduct, the principles of equity mandate against an award of costs. |

Yuga's response also fails to rebut that a party is no longer a "prevailing party" when a favorable judgment on the merits in a lower proceeding is reversed on appeal. *See*, *e.g.*, ., *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 373–74 (9th Cir. 1996) (directing award of attorneys' fees in district court to be vacated once appellees lost on their appeal); *Turner v. McMahon*, 830 F.2d 1003, 1009 (9th Cir. 1987) (same). Defendants do not dispute that summary judgment has been entered in this case. However, Defendants reserve the right to appeal and the outcome the appeal may change who is the prevailing party in this action.

And lastly, Defendants do not contradict the pre-trial conference order. Yuga attempts to mischaracterize the Court record by citing to the pre-trial conference order.  But **nowhere** in the pre-trial conference order did Defendants stipulate to ownership of the BAYC marks.  Section 6 of the order contains all stipulated facts and those stipulated facts include only that Yuga released the BAYC collection and various facts about Defendants' activities associated with the RR/BAYC collection. Dkt. 320-1 at 3-4.  Yuga points to Section 5, which is the admitted facts section, but this section again does not contain any admissions regarding "ownership" of the

1  marks.  Rather it merely identifies the asserted marks at issue for the remedies trial—
2  something that Defendants admitted in light of the scope of the remedies trial and to
3  ease this Court's work in adjudicating the remaining issues.   Dkt. 32-1 at 2-3.  Lastly,
4  Yuga cites to Defendants' statement that the "Court has determined that Defendants
5  infringed the BAYC Marks" and similar statements involving Yuga's cybersquatting
6  claim.  Dkt. 320-1 at 13.  But again, this is not an admission of ownership or
7  infringement, it is a statement regarding the procedural history in this case that
8  explains that the scope of trial is limited to remedies and does not include
9  infringement.  Had Defendants wanted to stipulate to ownership or infringement, they
10 would have clearly and expressly done so—they have not.  Defendants reserve the
11 right to dispute ownership and infringement on appeal and in any other proceedings
12 involving the BAYC marks.