Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Conclusion of Law No. 61** <br><br> Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Conclusion of Law No. 61:**

Based on the totality of the circumstances, the Court concludes that this is an exceptional case.

**Defendants' Basis of Dispute:**

The totality of circumstances show that this is not an exceptional case. Courts determine if a case is exceptional by considering the totality of the circumstances and evaluating whether the case is "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc.*, 839 F.3d at 1180 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Exceptional case findings are rare and not considered the norm. *Octane Fitness, LLC*, 572 U.S. at 553 (defining exceptional as "uncommon, rare and not ordinary") (internal quotations omitted). As the name implies, the case must present something "exceptional" to depart from the normal rule that parties pay their own costs. *See Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005) (reversing district court because it was only based on a finding of intentional infringement, but not the kind of extreme conduct necessary for an exceptional case finding). Plaintiffs bear the burden to prove that a case is exceptional. *Caiz v. Roberts*, No. 15-CV-09044-RSWL-AGRx, 2017 WL 830386 at *5 (C.D. Cal. Mar. 2, 2017).

This is not an "exceptional case" under these exacting standards. Defendants put forward reasonable defenses and were justified in defending this litigation,

particularly given Yuga's demand for terms that Yuga could never attain through this litigation.  *See* *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058-ODW (JPRx), 2021 WL 2414856 at *2 (C.D. Cal. June 14, 2021) ("Courts in this district have held that a party's litigation position must be objectively meritless for a case to be exceptional…").  Here, Defendants' litigation position has been defined by Yuga's unreasonable settlement demand that Defendants surrender their speech rights to criticize Yuga.  As the Court itself noted, Yuga's demand for a non-disparagement clause was "a condition that is quite frankly unreasonable."  Hearing Transcript June 16, 2023, at 9:9-12.  The reason that this case has continued as far as it has is Yuga's insistence on silencing Defendants.

Defendants have advanced good faith arguments in favor of their positions on both liability and damages.  *See* *Caiz,* 2017 WL 830386, at *5 (holding that mere "lack of success" does not support an exceptional case finding).  Defendants made a good-faith argument that they were entitled to a *Rogers* defense on free speech grounds— a common defense in trademark cases involving artists and their creations.  While this Court disagreed, Defendants advanced this defense based on relevant evidence.  *See, e.g.*, Dkt. 163; Dkt. 163-17-31 (fifteen unsolicited letters applauding the RR/BAYC project as protest art that criticizes Yuga); Dkt. 163-80 (artist's statement); Dkt. 163-81 (disclaimer).

Defendants' litigation conduct also does not support an exceptional case finding.  Defendants are entitled to mount a vigorous defense (especially given Yuga's settlement conditions) both on the merits and during the burdensome discovery process.  Yuga brought motion after motion in discovery, only to have their arguments repeatedly rejected.  *See, e.g.*, Dkt. 77 (rejecting Yuga's "apex witness" argument); Dkt. 133 (rejecting Yuga's attempt to seal the entirety of the deposition transcript of a witness critical of Yuga); Dkt. 159 (ordering production of materials

1 │ Yuga improperly withheld); Dkt. 145 (denying Yuga's baseless motion for

2 │ sanctions).

3 │      Further, Defendants have also had to defend against moving targets.  For

4 │ example, within a span of ten days, Yuga first claimed damages of roughly $2 million

5 │ in actual damages, to a claim of nearly ***$800 million*** in actual damages, to complete

6 │ abandonment of all actual damages.  *See* Dkt 286 at 2-3 (asserting damages of

7 │ $1,792,704 on June 7); Dkt. 287-10 at 4 (asserting damages of $797,183,838 on June

8 │ 8); Dkt. 315-1 at 2 (dropping actual damages on June 15).  Defendants have made

9 │ reasonable offers of settlement and put forward reasonable legal arguments in the

10 │ face of Yuga's shifting claims.

11 │      Yuga's litigation misconduct likewise precludes a finding that this case is

12 │ exceptional in Yuga's favor.  *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022)

13 │ ("When a party seeking equitable relief has violated conscience, or good faith, or

14 │ other equitable principle, in his prior conduct, then the doors of the court will be shut

15 │ against him.") (internal quotations and citations omitted); *SunEarth, Inc.*, 839 F.3d at

16 │ 1180-81 (holding that an exceptional case finding is an exercise of the court's

17 │ equitable powers).  For example, Yuga used this litigation as means to harass Mr.

18 │ Ripps's 72-year-old father, Rodney Ripps.  During this lawsuit, a Yuga employee

19 │ threatened the life of Mr. Ripps's father (ultimately forcing Mr. Ripps's father to file

20 │ a police report).  *See* Ripps Depo. 181:15-182:3 ("He said, 'You and your son should

21 │ die.'  You said that.  And my dad is … freaked out, you know … he really is scared,

22 │ you know … You keep … harassing my family[.]").  Yuga's counsel Yuga initially

23 │ brushed off the issue, then later conceded that a threat did in fact occur.  Dkt. 97 at 4.

24 │ But Yuga's harassment of Mr. Ripps's father continued, including serving a facially

25 │ invalid subpoena on him seeking to compel his trial attendance (notwithstanding his

26 │ complete irrelevance to any issue in the case).

27 │

28 │

1    Yuga served more than sixteen subpoenas in this action, nearly all of them

2    facially irrelevant and procuring no useful discovery, apparently to harass anyone that

3    is in any way associated with the Defendants.  For example, Yuga targeted people on

4    Twitter whose sole relevance was apparently having "liked" the RR/BAYC project,

5    Defendants' personal accountants, and Mr. Ripps's gallerist.  These parties

6    repeatedly commented on how Yuga's behavior in this lawsuit impacted them

7    personally, including for example Mr. Ripps's part-time, one-week general assistant

8    (whom Yuga insisted on deposing) who called Yuga's conduct "quite predatory,

9    honestly." Garner Depo. At 190:9-17.

10    Yuga also improperly tried to preclude relevant discovery by making a

11    baseless apex witness argument in an *ex parte* motion for a protective order.  The

12    Court rejected Yuga's baseless arguments, finding Yuga's motion "deficient on the

13    merits" because the co-founders were "the only people who have knowledge of the

14    creation of the marks." Dkt. 77 at 2.  The Court accordingly ordered that Yuga

15    employees Wylie Aronow and Greg Solano appear for depositions on January 9 and

16    11 respectively (excusing Mr. Solano only if he had medical complications).  *Id*.  Yet,

17    despite this Court's order, ***neither witness appeared***.  Yuga has never identified any

18    medical reason why Mr. Solano could not attend.  The Court was clear that failing to

19    appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did

20    not show up.  Dkt. 77 at 2.  Yuga has not done so.

21    Yuga also flouted this Court's Protective Order by improperly designating the

22    entirety of third-party Ryan Hickman's deposition testimony as HIGHLY

23    CONFIDENTIAL-ATTORNEYS EYES ONLY to hide Mr. Hickman's testimony

24    from the public.  This deposition involved no Yuga confidential information; instead,

25    it was the testimony of a Black Jewish third party that included discussion of racism

26    and antisemitism in Yuga's branding.  *See* Dkt. 123-2.  Defendants were forced to

27    bring a motion to address Yuga's misuse of the Protective Order, which the Court

28

granted ordering complete de-designation of the transcript and finding that Yuga was wrong to "***hold the transcript hostage***."  Dkt. 133 at *2 (emphasis added).

Yuga also baselessly refused to produce materials relating to third-party Thomas Lehman's settlement-procured declaration to run the clock on the discovery schedule.  Defendants filed a motion to compel once Yuga disclosed the declaration and sought expedited review of that motion to allow time for its use in a deposition of Mr. Lehman.  The Court declined to consider the motion on an expedited basis, stating that Defendants could instead depose Mr. Lehman in "the last week of March before the April 1, 2023 discovery cut-off date."  Dkt. 119 at 2.  The Court ultimately granted Defendants' motion, holding that Yuga waived any claim to confidentiality due to its "unfettered use of Lehman's declaration[.]"  Dkt. 159 at 2.  After Yuga belatedly made its court-ordered production, Defendants took Mr. Lehman's deposition in the final week of discovery as suggested by the Court.  But because of Yuga's delay, the deposition testimony—which raised disputes of fact regarding Defendants' infringement and Yuga's credibility—was unavailable for consideration in opposition to Yuga's motion for summary judgment.  *See* Dkt. 215 at 2.

Throughout the course of this litigation, Yuga also made repeated baseless threats of fees and sanctions.  In total, Yuga has unsuccessfully asked the Court to impose sanctions ***six times***.  *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20.  Every request was denied. This kind of scorched-earth litigation strategy is improper in any context, but particularly problematic where Defendants are two individuals attempting to respond to claims brought by an uncompromising multi-billion-dollar corporate plaintiff.

Because Yuga has abandoned its claim that Defendants' infringement was willful, because Defendants' positions were reasonable and their defense of this litigation was necessitated by Yuga's unreasonable settlement requirements, and because Yuga does not come to the Court with clean hands as result of its litigation

misconduct, Defendants respectfully request that the Court reject Plaintiff's claim that this case is "exceptional" warranting an award of attorneys' fees in Yuga's favor.

### Plaintiff's Response:

Defendants' objection should be rejected because (1) Defendants' actions make this an exceptional case; (2) Yuga Labs has not engaged in litigation misconduct; (3) Ms. Kindler properly updated her calculations with new information; (4) Defendants Intentionally and Willfully Confused Consumers.

**This Is An Exceptional Case:**  Defendants engaged in egregious litigation misconduct justifying a finding that this is an exceptional case.

First, Yuga Labs' case is particularly strong on the merits.  As evinced by the Court's Order granting summary judgment on liability, this case stands out from the bulk of trademark infringement cases.  Ignoring the clear strength of Yuga Labs' case, Defendants relentlessly advanced frivolous legal theories (e.g., RR/BAYC NFTs as an "art" project intended to criticize Yuga Labs, Yuga Labs abandoned its rights to the BAYC Marks, a frivolous counterclaim for declaratory judgment of "no defamation") that were rendered moot and irrelevant by multiple orders from the Court. *See, e.g.*, Dkt. 62 (rejecting Defendants' First Amendment arguments), SJ Order (Dkt. 225) (granting summary judgment in favor of Yuga Labs and against Defendants' affirmative defenses).

Second, notwithstanding the strength of Yuga Labs' case, Defendants refused to engage in reasonable settlement discussions.  For instance, Defendants demanded payment in excess of $5 million to cease their infringement, demanded that Yuga Labs pay Defendants' attorneys' fees even after losing the merits of the case on summary judgment, refused to agree to any monetary settlement terms for their infringement even after the Court's Summary Judgment Order, and even demanded that Yuga Labs dismiss claims against their partners in other courts.

Third, Defendants repeatedly sought (and continue to seek) to re-litigate issues already addressed and rejected by the Court, unnecessarily complicating and increasing the cost of litigation.  For example, Defendants filed numerous motions to compel documents and information explicitly premised on their rejected First Amendment *Rogers* defense.  *See* Dkt. 69-1, Dkt. 103-1.  The Court denied these motions and requests as "moot, irrelevant and not proportionate to the needs of the case in view of the District Court's December 16, 2022 ruling."  Dkt. 87 at 1; *see also*, Dkt. 144 at 1.  Similarly, when Defendants filed a meritless motion to stay proceedings (Dkt. 118) after nearly three months of unnecessary delay, the Court reiterated that *Rogers* did not apply in this case due to Defendants' commercial conduct.  Dkt. 178 at 6.  Still, on summary judgment, Defendants maintained that "there is a material dispute whether the RR/BAYC Project is an expressive work that must be resolved at trial" (Dkt. 199-1 at 12-13), despite the Court's orders otherwise. Defendants then indicated they planned to re-litigate, again at trial, the issues decided on summary judgment, necessitating that Yuga Labs file Motions In Limine.  *See* Dkts. 232-2, 236-2, 239-2, 241-2 (Culp Declarations in Support of Motions In Limine Nos. 1-3, 5).  And even in these objections, Defendants again advance these frivolous and rejected theories.  This pattern of conduct justifies finding this to be an exceptional case.  *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x. 674, 676 (9th Cir. 2020) (affirming exceptional case where defendants litigated in an "unreasonable manner" such as its "failure to comply with court rules" and "persistent desire to re-litigate issues already decided").

Fourth, Defendants and their counsel engaged in a pattern of unreasonable and obstructive discovery conduct that consistently crossed the line from advocacy into bad faith.  Defendants were obstructive and intentionally evasive throughout their depositions and at trial, wasting time with rehearsed, non-responsive monologues on the same issues the Court already deemed irrelevant.  *See, e.g.*, Trial Tr. at 229:3-13,

231:21-232:3, 234:24-235:5, 237:14-238:7; Cahen Depo. Designations (Dkt. 395) at 101:7-102:4, 163:13-23; Ripps Depo. Designations (Dkt. 396) at 35:2-11, 44:19-45:11.  *See Jackson v. Gaspar*, No. 2:19-CV10450-DOC, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022) (finding exceptional case from "antagonistic discovery conduct" that was "improperly motivated and sought to drag out or obfuscate proceedings," such as deposition conduct where the defendant's "preparation, recollection and candor appear to have been marginal at best").  Defendants also made false representations to the Court regarding the existence and production of documents during discovery.  For example, Mr. Ripps swore under penalty of perjury in a verification dated January 17, 2022 that he had produced all documents responsive to Yuga Labs' discovery requests.  Trial Tr. at 267:11-14.  This was a lie.  As just one example, Mr. Ripps was asked at trial about a text message from Mr. Cahen stating "It will sell out within 48 hours I think You'll make like a million dollars Straight up." JTX-1574.  Mr. Ripps claimed he did not produce that text message because he did not "really find it to have anything to do with the RR/BAYC project."  Trial Tr. at 268:17-21.  This explanation is not credible given the communication's clear relation to the sale of infringing NFTs, nor does it explain his withholding of every other text message with Mr. Cahen about the RR/BAYC NFTs.  *See* Dkt. 145 at 2-3 ("The Court takes a dim view of Defendants' blanket withholding of pre-litigation communications between Ripps and Cahen . . . .");  *see also supra* ¶ 7 (describing Defendants' false sworn statements regarding their document productions).  Yuga Labs was forced to file numerous motions and obtain repeated sworn declarations from Defendants confirming their compliance with discovery obligations, because Defendants were continually caught concealing additional documents.  *See* Dkt. 79 at 2 (Jan. 10, 2023 order requiring Ripps to verify that he has produced "all relevant non-privileged documents"); Dkt. 145 (order requiring Defendants to file a declaration that they have produced relevant documents).  Even Defendants' Discord chat (JTX-801)—cited

extensively by both parties in the summary judgment and trial record, and even in both parties' proposed findings of fact and conclusions of law—had to be obtained through third-party discovery before Defendants voluntarily produced it.  *See* Dkt. 67 at 77 (joint stipulation regarding Yuga Labs' motion to compel, noting Telegram and Discord chats were produced by a third party, even after which Defendants still failed to produce them in a usable format).  This misconduct justified Yuga Labs' requests for sanctions.

Fifth, Defendants repeatedly attacked Yuga Labs, its representatives, and its counsel in an egregious and unacceptable manner.  Defendants' heinous statements about Yuga Labs and its counsel during litigation, including calling Yuga Labs' counsel "criminals" who support "racism, antisemitism, beastiality, pedophilia and using cartoons to market drugs to young children," *see* Dkt. 149-50, Dkt. 149-51, far exceed the bounds of acceptable conduct.  *See Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004) (finding "no difficulty" holding defendant's harassing and racist remarks towards plaintiff and their counsel an exceptional case); *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, 894 (9th Cir. 2002) (affirming exceptional case where "defendant acted deliberately to and intended to harm the plaintiff by using its mark" which was "especially egregious" because defendant "continue[d] to use the mark after notice of violation" and continued to "harass[] the plaintiff").  Throughout this case, Yuga Labs' counsel asked opposing counsel to reason with their clients and turn down the temperature of the improper attacks and threats to our safety.  Defense counsel failed to take any responsibility or control.  Just as bad, even in these objections, Defense counsel seem to argue that the Defendants' threats and vile harassment is all part of the litigation game and permissible tactics.  And so, Defendants maintained their tactics of ridiculous attacks throughout the entire case.

Further representative of the lack of control and respect for counsel and the Court, Defendants promised to Yuga Labs and the Court that they would not offer testimony on irrelevant and inflammatory issues at trial.  *See* Dkt. 320-1 ¶ 6(A) (agreeing in proposed pretrial conference order not to introduce evidence or argument regarding "pedophilia," "4chan," or Defendants' "emotional distress counterclaims"); Dkt. 314 (agreeing in Defendants' proposal that they will not offer testimony regarding "the words 'Nazi' or 'Hitler'," "allegations concerning death threats or harassment," the "class action lawsuit brought against Yuga for securities fraud," or "the SEC investigation into Yuga for securities fraud"); Dkt. 334 at 60:13-14 (representing to Court "We don't want a mini trial on Naziism for sure"); *id*. at 61:9-11 ("I agree they should stand up and object if we start – if anybody starts talking about – ranting about how everybody at Yuga are a bunch of Nazis. That is clearly inappropriate and shouldn't be done.").  Yet Defendants repeatedly violated these promises.  *See* Cahen Decl. (Dkt. 344) ¶¶ 60, 65, 66, 67, 75, 90. 91, 96; Hickman Decl. (Dkt. 345) ¶¶ 55, 58, 59; Ripps Decl. (Dkt. 346) ¶¶ 59, 69, 152; Trial Tr. at 265:17-18 (characterizing logo as a "Nazi log[o]"), 215:2-3 ("Pictures of monkeys represent racism"), 118:18-120:22 (Defendants' counsel referring to "racism," "racist imagery," and "hate speech"); Dkt. 395 at 9-10 (Defendants' designation of testimony from Mr. Cahen accusing Yuga Labs of "Nazism, racism, financial fraud, pedophilia").  Similarly, Defendants stipulated to certain facts which they now dispute and dispute factual findings in the Court's Summary Judgment Order, all of which unnecessarily and unjustifiably multiplies this litigation.

Sixth, Defendants used the litigation to "farm" for engagement on social media with the intent to further harm Yuga Labs and profit from their misconduct.  See JTX-938, JTX-1568, JTX-1617, JTX-1620.  For instance, Mr. Cahen tweeted about their subpoena of Paris Hilton and Jimmy Fallon to drum up engagement on Twitter,

retweeting it from his @apemarketplace account in order to promote Ape Market.[1] These subpoenas themselves were facially invalid and Defendants only served them in order to get attention from the news media.

Finally, Defendants' public disclosure of confidential material violated this Court's Protective Order (Dkt. 51) and intentionally harmed Yuga Labs.  *See* Dkts. 180, 183, 194.  Defendants failed to take responsibility for this violation, instead blaming Yuga Labs.  Dkt. 176.  Defendants publicly filed numerous Yuga Labs' Highly Confidential – Attorneys' Eyes Only materials, and immediately and intentionally sent these Highly Confidential materials to prominent news outlets. These actions are difficult to reconcile with Defendants' position that these materials were merely "inadvertently filed . . . not fully redacted."  *See* Docket 180 at 5. Defendants' intentional actions caused harm to Yuga Labs when these materials were inaccurately reported in national media such as CNN and falsely cited in other meritless litigation against Yuga Labs.  As another example, Mr. Cahen targeted another Yuga Labs founder by falsely tweeting:  "[h]e's named after [a] banned 1971 child porn film."[2]  He further tweeted that the founder "REFUSES to change his name,"[3] based on the founder's response to a question from an ongoing Highly Confidential – Attorneys' Eyes Only deposition.  *See* Atalay Depo. (Dkt. 271) at 157-160 (showing testimony and break taken 42 minutes prior to Mr. Cahen's Tweet).

**Yuga Labs Has Not Engaged In Litigation Misconduct:**  Defendants' attempts to evade responsibility for their egregious litigation misconduct by pointing a finger at Yuga Labs has no relevance.  The losing party in a Lanham Act case cannot defend against an exceptional case finding by accusing the prevailing party of engaging in similar misconduct.  *See Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022) (finding exceptional case

---

[1] https://twitter.com/Pauly0x/status/1602819954335748098
[2] https://twitter.com/Pauly0x/status/1620158732872331264
[3] *Id*.

amidst allegations that "[b]oth parties conducted themselves poorly at times throughout litigation" where "Defendants' conduct was worse and more frequent than [plaintiff's]."). Even so, Defendants' contention that Yuga Labs engaged in misconduct is incorrect and filled with multiple false claims.

During the course of settlement discussions, Yuga Labs initially sought a reasonable non-disparagement clause to protect the company's representatives, their families, and counsel given Defendants' history of making personal, targeted, heinous claims and in the context of foregoing certain other relief to which it would be entitled through litigation, as one proposed compromise. Non-disparagement clauses are typical in litigation settlements. Defendants however claimed that a non-disparagement clause was a barrier to them entering into a settlement. This proved to be another lie by Defendants. After Yuga Labs **withdrew its request for a non-disparagement clause,** Defendants still refused to negotiate a settlement in good faith. In particular, Defendants refused to offer a single dollar in settlement to pay for their profits or statutory damages, even after being held liable. Defendants likewise refused to agree to stop promoting their infringing NFTs or Ape Market, which promoted sales of RR/BAYC NFTs. *See* JTX-1048. For example, the @ApeMarketplace Twitter account continues to promote rrbayc.com and link to a marketplace on which RR/BAYC NFTs are still available for sale. Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19. After the Court found that Defendants infringed on Yuga Labs' BAYC Marks, including through the RR/BAYC NFT smart contract and cybersquatting of rrbayc.com and apemarket.com, they still refused to transfer control of this smart contract or domains to Yuga Labs.

Yuga Labs never attempted to preclude depositions of its witnesses. Yuga Labs asked Defendants to complete a Rule 30(b)(6) deposition before deciding whether it was necessary to depose Mr. Solano and Mr. Aronow, and it sought a protective order when Defendants refused. Dkt. 75. The Court disagreed, and Yuga Labs produced

both witnesses for deposition.  Mr. Aronow was unable to appear for his deposition the day after the Court's order because of a medical emergency.  The Court ordered the parties to meet and confer n an appropriate date for the deposition for Mr. Solano, Dkt. 77 at 2, which Yuga Labs did, and Mr. Solano appeared for his deposition a few days after the Court's order.

As to Defendants' contention that Yuga Labs has not paid attorneys' fees related to Mr. Solano's deposition, Defendants omit that Yuga Labs has a pending objection to Defendants' claimed attorneys' fees.  Moreover, Defendants have failed to file any motion for attorneys' fees or even respond to Yuga Labs' request for an accounting to offset any attorneys' fees given the substantial and unpaid expert deposition fees that Defendants still have not paid.

Defendants' dubious claim of a threat against Rodney Ripps is not in the record; Yuga Labs disputes it and Defendants' false claim that it has ever been "conceded." Defendants' claims on this issue were also already dismissed by the Court as lacking any plausibility.  *See* Order on Yuga Labs' Motion to Strike/Dismiss (Dkt. 156) at 6-10 (denying Defendants' intentional and negligent infliction of emotional distress claims, which were based in part on this alleged threat).  And Defendants noticeably do not mention the death threats they and their associates leveled against Yuga Labs, its counsel, and their families.  Even so, it is irrelevant because it did not come from Yuga Labs and was not directed to Defendants.  Defendants cry foul over Yuga Labs' subpoena of Rodney Ripps, when it is they who designated him in their amended initial disclosures as a person with knowledge of "RR/BAYC NFTs."  And the document subpoena Yuga Labs issued for Mr. Rodney Ripps sought relevant information related to his role as an officer of LIVE9000, Ryder Ripps' defunct limited liability company to which he tried to hide the ill-gotten profits from the RR/BAYC NFTs when he knew he was being sued.

1    Yuga Labs' other subpoenas in this action were also targeted at relevant parties

2    whom Yuga Labs reasonably believed had information relevant to the litigation.

3    Many of them, including Mr. Ripps' gallerist, were subpoenas to individuals

4    designated in Defendants' amended initial disclosures as individuals with knowledge

5    of the RR/BAYC NFTs.  Likewise, Defendants indicated in their depositions that their

6    accountants had relevant information.  *See* Cahen Deposition at 24:18-25 ("Like I

7    said, I think that would probably be an easier question for my accountant or someone

8    like that."); Ripps Deposition at 235:1-24.  Defendants cannot complain that we

9    subpoenaed their own identified witnesses.  Moreover, the vast majority of subpoenas

10   issued by Yuga Labs were document subpoenas, which stands in stark contrast to the

11   sixteen depositions and deposition subpoenas Defendants threated and issued to Yuga

12   Labs' founders and employees, and more.  Finally, Defendants' position that Mr.

13   Garner is relevant to the litigation as Mr. Ripps' assistant for purposes of deducting

14   from their profits contradicts their position that Yuga Labs' deposition of him was

15   irrelevant.  This again highlights their willingness to lie to get what they want.

16   Next, with respect to the discovery dispute with Mr. Hickman, the Court

17   observed that, "Defendants, not Yuga, designated the documents discussed at Ryan

18   Hickman's deposition as highly confidential ('HC') and attorneys' eyes only

19   ('AEO')."  Dkt. 133 at 1.  Consistent with Yuga Labs' reading of the Protective Order,

20   Yuga Labs kept the deposition transcript under similar protection "because HC/AEO

21   documents were discussed at the deposition," *id.*, and Defendants refused to specify

22   which portions of those underlying documents they contended were no longer

23   HC/AEO.  The Court noted Defendants' indiscriminate confidentiality designations,

24   holding that Yuga Labs was "not wrong that Defendants are obliged by the Protective

25   Order to ensure HC/AEO material is 'clearly so designated.'"  *Id.* at 3.  Accordingly,

26   the Court ordered the transcript to be made public and ordered Defendants to comply

27   with the Protective Order by "reproduc[ing] and redesignat[ing] the HC/AEO

28

1    documents discussed at the deposition to 'clearly identify the protected portion(s)'" –

2    the "result Yuga recommended if the Motion was granted." *Id.* In other words, the

3    Court ordered what Yuga Labs had asked the Defendants to do from the start. This

4    was another problem all of the Defendants' own making.

5          Yuga Labs contested the discovery of documents reflecting settlement

6    negotiations with Mr. Lehman in good faith. Mr. Lehman's settlement materials

7    expressly included a confidentiality provision, and Yuga Labs sought to have that

8    bargained-for confidentiality protected. *See* Dkt. 121-01 at 17-18. Yuga Labs briefed

9    the issues in good faith and, although the Court ultimately ordered the materials to be

10   produced, there was no finding of bad faith. *See* Dkt. 159 (ordering Yuga Labs to

11   produce settlement materials without finding bad faith). That is because there was no

12   bad faith. Of course, symbolic of Defendants creating unnecessary disputes, the

13   Defendants did not use a single one of the settlement communications in the

14   deposition with Mr. Lehman or at trial. Here too, this dispute could have been

15   avoided if the Defendants had accepted Yuga Labs' pre-motion offer.

16         Yuga Labs was overwhelmingly successful in its own discovery motions. Yuga

17   Labs was forced to file numerous motions and obtain repeated sworn declarations

18   from Defendants confirming their compliance with discovery obligations, because

19   Defendants were continually caught concealing additional documents. *See* Dkt. 79 at

20   2 (Jan. 10, 2023 order requiring Ripps to verify that he has produced "all relevant non-

21   privileged documents"); Dkt. 145 (order requiring Defendants to file a declaration that

22   they have produced relevant documents). Although the Court did not award Yuga

23   Labs fees for these discovery violations, each fee request was nonetheless in response

24   to Defendants' egregious and repetitive discovery violations. If Defendants took issue

25   with Yuga Labs' discovery strategy, they should have raised it with the Court during

26   discovery, yet they did not, and thus this issue is waived.

27

28

Defendants' persistent refusal to take any responsibility for their conduct merely highlights how their tactics have increased the time and expense of this litigation.

**Ms. Kindler Properly Updated Her Calculations With New Information:** Ms. Kindler supplemented her damages calculation with new information once it became available; she did not change her prior analysis. *See* Trial Tr. 179:2-5 ("based on additional events that had transpired and available market data, that I could then update my analysis to show the impact of what I had already identified previously as likely holdouts in the marketplace."). Ms. Kindler initially calculated "a 'floor' for what a buyback would cost at minimum," i.e., "a low-end market price of the RR/BAYC NFT collection." Kindler Decl. (Dkt. 338) ¶ 72. Then, based on new data made available by Defendants' posts to their followers regarding the buyback estimate (which also prompted an increase in the price and trading volume of the infringing NFTs), Ms. Kindler determined that "[t]his new evidence confirmed that the floor value for a hypothetical buyback significantly underestimated the actual cost of such an exercise, as I originally opined." *Id.* ¶¶ 73-74. "Based on these materials and available market data, my assignment was to estimate a 'ceiling' for what a buyback would cost. I determined the cost to purchase and destroy all RR/BAYC NTFs could even be higher than $797,183,838 . . . based on the then-current floor price of authentic BAYC NFTs." *Id.* ¶ 74.

**Defendants' Intentionally and Willfully Confused Consumers:** Defendants' contention that Yuga Labs abandoned its claim of willfulness is irrelevant because the Court already found Defendants willfully infringed. *See supra* ¶ 7; SJ Order at 12 (citations omitted); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) ("[w]illful infringement carries a connotation of deliberate intent to deceive."). Likewise, Defendants' private communications show they knew they were using the

BAYC Marks in a way that was likely to confuse consumers and did so with the intent to profit from their infringement.

### Defendants' Reply:

First, Yuga ignores the requirement that the losing party's position in this case must be "objectively meritless" or frivolous to support an exceptional case finding in this district.  *See Anhing Corp. v. Viet Phu, Inc.*, No 13-CV-04348-BRO-JCGx 2017 WL 11630841 at *4-5 (C.D. Cal. 2017) (rejecting exceptional case finding in trademark case because claims were not "frivolous"); *D.N. v. Los Angeles Unified Sch. Dist.*, No. 18-cv-01582-AB-AFMx, 2019 WL 7841083 at *2 (C.D. Cal. Sept. 25, 2019); *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058-ODW (JPRx), 2021 WL 2414856 at *2 (C.D. Cal. June 14, 2021) ("Courts in this district have held that a party's litigation position must be objectively meritless for a case to be exceptional…").  They focus their criticisms on Defendants' *Rogers* defense.  As explained above, a *Rogers* defense is a common defense in trademark defense.  Further, there was evidentiary support that Defendants believed in good faith that they were in good faith involved in an act of protected speech through art.  *See* Ripps Decl. ¶¶ 180-91 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 208-12 (Dkt. 344); JTX-2086 (disclaimer identifying Ryder as artist and Yuga as subject of criticism); JTX-801.000508; 804.008; Hickman Decl. (Dkt. 245) ¶¶ 190-205.  Although ultimately unsuccessful, the *Rogers* claim was not frivolous as is required to support an exceptional case finding.

Second, Defendants engaged in good faith settlement discussions given that their rights were on the line and a good faith belief in the substantive strength of their possible success on appeal.  Instead, it was Yuga how proposed settlement terms that this Court informed it were unavailable and "quite frankly unreasonable."  Dkt. 334 at 9:9-12.  Yuga cannot offer unreasonable terms and then claim that it was Defendants who offered unreasonable terms.  Despite any claim to the contrary, Yuga did not

1  withdraw its unreasonable terms, it merely moved them into their proposed injunctive

2  relief.  As such, any action by Defendants cannot support entering an exceptional case

3  finding against Defendants.

4          Third, Yuga's argument that Defendants have re-litigated issues in this case is

5  incorrect because it both ignores the relevance of intent to the case even as it went to

6  trial and also confuses different aspects of intent.  On the contrary, Defendants made

7  clear that they were *not* re-litigating the issues decided at summary judgment, namely

8  liability.  However, Defendants were—as is their right—defending themselves from

9  paying an inordinate amount on the claim.  The majority of Yuga's argument about re-

10 litigation revolves around issues of intent.  Yuga is attempting to win excessively

11 broad injunctive relief and disgorgement.  *See* Dkt. 315-I.  Intent is an important

12 factor for disgorgement damages.  *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct.

13 1492, 1497 (2020).  Disgorgement is only warranted in cases of "conscious

14 wrongdoers."  *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL

15 4596697, at *17 (C.D. Cal. July 29, 2022).  Further, to the extent Yuga is making a

16 law of the case argument, it is misplaced because, a summary judgment decision is a

17 preliminary decision, so law of the case does not apply.  *Shouse v. Ljunggren*, 792

18 F.2d 902, 904 (9th Cir. 1986).  It is also true that even if it did apply, a factual finding

19 can matter for one issue—for example the *Rogers* defense—but does not apply to a

20 different issue, for example damages.  *See Sienze v Kutz*, No. 1:17-CV-0736-AWI-

21 SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that preliminary

22 decision on one issue does not bind court as to similar issue later in case).  As such,

23 Defendants were correct to be able to continue to press matters that are still relevant to

24 the case.

25         Fourth, Yuga's contention that it is entitled to an exceptional case finding based

26 on allegedly rehearsed and non-responsive monologues at trial is incorrect and

27 waived.  First, its citations to the record implicate issues of intent.  *See e.g.* Trial Tr.

28

[Cahen] 229:3-13 (explaining the point of the project was protest); *Id.* 231:21-232:3
(explaining how Apemarket fit into protest intent).   Regardless, Yuga never objected
to Defendants objections on relevance grounds.  Thus, to the extent they are making
an evidentiary objection it is waived.  *See* *Fenton v. Freedman*, 748 F.3d 1358, 1360
(9th Cir. 1984).  Further, Yuga never sought to reopen any depositions.  Yuga's
citation to *Jackson v. Gaspar*, does not assist it, because in that case the parties were
previously chastised for their conduct at deposition.  *Jackson v. Gaspar*, No. 2:19-cv-
10450-DOC-E 2022 WL 2155975 at *5 (C.D. Cal. 2022) (citing prior docket entry
sanctioning party).  That kind of history within this case is simply not present.
Notably, Yuga  never brought any motion to reopen any deposition.

Yuga's argument that Defendants failed to produce documents is incorrect and
rebutted both in the record and at trial.  At trial, Mr. Ripps explained that he produced
everything to the best of his ability.  Trial Tr. [Ripps] 269:10-270:18.  Mr. Ripps
further testified that Yuga had sought sanctions multiple times based on Yuga's false
accusations of discovery misconduct, and that this Court denied all of Yuga's baseless
motions.  Trial Tr. [Ripps] 269:21-270:2.  Mr. Ripps's trial testimony is no surprise
given that the verification stated "[I] produced all responsive documents that I have
been able to locate after a reasonable search" and further stated "I also understand that
discovery obligations are continuing, and I will produce any additional responsive
materials or information to the extent any are found based on a reasonable
investigation.  ***I reserve the right to make changes or additions to any of these
answers or document productions*** if it appears at any time that errors or omissions
have been made or if more accurate or complete information becomes available." Dkt.
109-33 (emphasis added).  Mr. Ripps fulfilled his discovery obligations and upheld
his verification by providing all the responsive material he located after a reasonable
search to the best of his knowledge.  In short, Yuga has not produced any evidence

that Mr. Ripps did not produce documents in bad faith, nor has it shown that Mr. Ripps was dishonest on the stand.

Yuga once again relies on the easily distinguishable cases. *Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 251-52 (7th Cir. 2004) (calling opposition in lawsuit a "race traitor" and threatening to place them in Concentration camps). Defendants' tweets referenced by Mr. Ball in his declaration in support of the summary judgment motion are simply different in kind to the threats in *Te-Ta-Ma*. *Compare* Dkts 149-50; 149-51 with *Te-Ta-Ma*, 392 F.3d at 251. *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, (9th Cir. 2002), also provides no support for Yuga. It involved a party showing up pretending to be the plaintiff at trade shows. *Id.* at 894. Nothing similar to that occurred in this case. Yuga's accusation that this was all simply "the litigation game" to Defendants and their counsel is improper, especially because it was clearly seeking shelter from good-faith criticism.

Likewise, the argument that Defendants have somehow breached an agreement not to bring up issues of "inflammatory" material is factually incorrect and ignores the well-trodden discussion that intent is still at issue. All of Yuga's citations to the record involve discussions of intent. As Yuga is seeking intent-laden damages, Defendants should be able to explain their intentions. As such, Defendants were permitted to discuss their motivations. Beyond that, to the extent there was an error, it was an evidentiary issue as Yuga admits. *See Citation to* Dkt. 334 at 61:9-11. Yuga never objected to *any* of this testimony as improper or irrelevant and therefore they cannot be heard now to complain about it. *Fenton v. Freedman*, 748 F.3d 1358, 1360 (9th Cir. 1984).

Yuga's claim that Defendants were engaged in using this litigation in an effort of "engagement farming" is also unsupported. They cite several Tweets including JTX-938, JTX-1568, and JTX-1617. JTX-938 is a Twitter post by Mr. Cahen

commenting on a news article that failed to mention that Yuga stole Defendants' idea for ApeMarket.  JTX-1568 is a post where Mr. Cahen states his opinion that this lawsuit was a poor business decision.  JTX-1617 and JTX-1620 are posts reporting the filing of specific public documents in this case.  These are all ordinary reporting/commentary activities that numerous users on Twitter routinely engage in.  Nothing in these exhibits contains evidence of "intent to harm" or anything out of the norm for Twitter activity.  Further, subpoenas served on Paris Hilton and Jimmy Fallon and Mr. Cahen's Tweets about them do not serve as the basis for an accusation of "engagement farming."  Like the other Tweets, this was nothing out of the norm for Twitter activity.  Lastly, at the time of the Tweets, ApeMarket was no longer in existence.

Yuga's accusation that Defendants violated the protective order so they could intentionally harm Yuga is not well-taken.  Yuga is aware that Defendants worked hard to fully redact their summary judgment response in good faith despite Yuga's exceedingly tardy request to seal.  *See* Dkt. 176 (explaining situation).  This was despite being given ample time to provide their redaction requests.  *See* 176-1 (explaining Yuga did not act for over one week).  There is absolutely no evidence that Defendants did anything to intentionally harm Yuga.  To the extent that Yuga was harmed, it was through inadvertence (and was addressed fully in the Court's order, Dkt. No. 194).  Likewise, Yuga is aware that Defendants have *long* criticized the name choices of its co-founders.  On May 15, 2022 Mr. Ripps tweeted out a tweet which corresponds with the four co-founders names.  JTX-2097; Ripps Decl. ¶¶ 155-56 (Dkt. 346) (uncontested).  These criticisms *far* pre-date Mr. Atalay's deposition.  The fact that Mr. Cahen was parroting prior made accusations on a day where they were likely on his mind does not prove that he revealed information that was not publicly known.  In fact, Mr. Atalay and Yuga have both publicly acknowledged his use of the "Emperor Tomato Ketchup" moniker.

1    Yuga then claims that this court cannot consider Yuga's litigation misconduct.

2  "The Court also considers the conduct of **both parties** throughout the case." *Jackson*

3  *v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24,

4  2022). Therefore, it is proper for this Court to consider Yuga's actions and whether it

5  is entitled to injunctive relief. Yuga's litigation actions preclude it from injunctive

6  relief because they engaged in scorched Earth tactics in an attempt to coerce

7  Defendants into signing away their rights.

8    First, Yuga has acknowledged that a Yuga employee threatened Rodney Ripps,

9  but instead argues that it was nothing more than "blowing off steam." Dkt. 97 at 4.

10  Rodney Ripps felt threatened enough to file a police report in response to this action.

11  Yuga now states—without evidence—that Defendants have committed death threats

12  against Yuga parties. This should be disregarded as without evidentiary support.

13  Yuga also never remediates the fact that its subpoena to Rodney Ripps was facially

14  invalid. It was instead intended to bring the case "close to home" for Mr. Ripps and

15  cause him fear and discomfort. As for the other subpoenas served by Yuga they

16  sought documents and information far beyond what the witnesses would know and

17  witnesses such as Ian Garner commented on Yuga's aggression in discovery as "quite

18  predatory." Garner Depo. at 190:9-17.

19    Yuga attempts to flip its effort to wrongfully conceal Ryan Hickman's

20  deposition as Defendants' fault. A quick glance at the Court's order quickly disabuses

21  that notion. The Court was clear that Yuga took an untenable position regarding its

22  over-designation of Mr. Hickman's deposition. *See* Dkt 133 at 2 ("The Court does not

23  understand why Yuga designated the entire Hickman deposition transcript as

24  HC/AEO, even the portions not discussing HC/AEO documents. The Court also faults

25  Yuga for conditioning de-designation of the Hickman deposition transcript on

26  obtaining de-designation of the HC/AEO documents discussed at the Hickman

27  deposition.). It clearly held Yuga at fault for its actions, chastising Yuga for "holding

28

1  the transcript hostage." *Id.*  The fact that the Court granted relief that Yuga suggested

2  if it lost the motion does not change the fact that Yuga acted wrongfully and did, in

3  fact, lose and wrongfully hold the transcript hostage.

4         Yuga claims that its improper hiding of materials related to Mr. Lehman's

5  settlement was permissible because were not accused of good faith similarly tries to

6  ignore something fundamental about the decision.  It in all bold it demands that Yuga

7  produce the withheld documents within three days.  Dkt. 159 at *1.  The court noted

8  that all of Yuga's arguments against disclosing this evidence was "fatally

9  undermined" by Yuga's "unfettered use of Lehman's declaration" to support its

10  positions.  *Id.* at *3.  In short, Defendants' motion to compel the Lehman materials

11  was an unmitigated victory for Defendants.

12         Yuga tries to argue that its pattern and practice of seeking sanctions and failing

13  somehow denotes success, and cites to two docket entries.  The Court did not, in fact,

14  grant Yuga's motion to compel and stated that it "cannot discern what discovery

15  requests remain in dispute" when rejecting Yuga's position.  Dkt. 79 at *1.  Dkt. 145

16  also rejects Yuga's spoliation sanctions request as being made "with no direct

17  evidence."  Dkt. 145 at *1.  Further, as mentioned above, Defendants complied with

18  discovery obligations to the best of their ability and explained as much at trial.  Trial

19  Tr. [Ripps] 269:10-270:18.  Yuga cannot escape the fact that it used baseless claims

20  for sanctions as a litigation technique.  This Court should take that into consideration

21  when considering Yuga's request for relief.

22         Yuga tries to defend its 400-fold increase of its damages estimate from Ms.

23  Kindler by calling it proper.  The 400-fold increase was absurd on its face.  Notably,

24  Yuga backed down from this number for the purposes of trial.  *See* Trial Tr. [Kindler]

25  174:14-18.  Yuga attempts to remediate this by pointing out that the floor price had

26  increased.  But Yuga fails to grapple with the fact that the floor price had actually

27  *fallen* from the time of her first report.  *Id.* at 186:2-12.  The $787 million figure was a

28

figure that Yuga certainly knew it was never going to receive.  Instead it was obviously intended to scare Defendants into settling.

Lastly, Yuga falsely claims that this Court found "willful infringement."  ***That is false.***  The Court expressly rejected Yuga's request for a willful infringement finding at summary judgment, and the Court cannot find willful infringement at trial without violating the Defendants' Seventh Amendment rights.  Courts have repeatedly recognized that "willfulness is an issue for the jury." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Group, LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018).  Yuga's waiver of "all legal remedies" thus waived any claim of willful infringement, and Defendants are thus entitled to a judgment of no willfulness.  *See also* Dkt. 236 at 13 (Yuga conceding that it is not pursuing a claim of willful infringement).  Likewise, Yuga this court never made a finding on willfulness.  In fact, the terms "willful", "willfulness" or "willful infringement" never appear in the Summary Judgment motion.  *See* Dkt. 225.  Willfulness is its own legal concept that appears in the Lanham Act.  *See* 15 U.S.C. 1117(c)(2).  Infringement is not willful if the alleged infringer has a good faith belief that they were not infringing.  *See SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 882 (N.D. Cal. 2022).  The Court simply never discussed Defendants good faith.