Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 64**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. 64:

Additionally, Defendants and their counsel have engaged in a pattern of unreasonable and obstructive litigation conduct that crossed the line from advocacy into bad faith. *See supra* ¶¶27. Such obstructive and antagonistic conduct supports a finding that this is an exceptional case. *See Jackson v. Gaspar*, No. 2:19-CV10450-DOC, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022).

### Defendants' Basis of Dispute:

Defendants—two individuals sued by a $4 billion corporation defended this case to the best of their ability. Unlike Yuga's witnesses, Defendants attended their depositions and gave good faith answers to the questions Yuga. Yuga also claims that Defendants' answers on the stand were "obstructive" and "rehearsed" without evidence. The case cited by Yuga in support of its contention is different in kind. In that case, the defendant was previously chastised by the Court for giving Deposition answers that showed her "preparation, recollection and candor appear to have been marginal at best." *See Jackson v. Gaspar*, No. 2:19-cv-10450-DOC-E 2022 WL 2155975 (C.D. Cal. 2022) (citing to the record and previous docket entries as proof of Defendant's misconduct). By way of contrast, Defendants have not been sanctioned in this way, nor were they sanctioned for any deposition related misconduct. The only deposition related misconduct that the Court had to remedy in this case was committed by Yuga—who skipped its depositions and improperly tried to designate all of Ryan Hickman's deposition transcript. *See* Dkt. 77 (order denying motion to avoid attendance at deposition); Dkt. 133 (order compelling de-designation of

deposition transcript).  Defendants gave testimony and documents—even those that were eventually damaging to their case—to Yuga.

Yuga's contentions about Counsel are also without any foundation, and without any support.  Counsel for Defendants operated honestly and in good faith throughout this case.

In contrast, Yuga, through its counsel, has engaged in a pattern of litigation misconduct.  For example, Yuga used this litigation as means to harass Mr. Ripps's 72-year-old father, Rodney Ripps.  During this lawsuit, a Yuga employee threatened the life of Mr. Ripps's father (ultimately forcing Mr. Ripps's father to file a police report).  *See* Ripps Depo. 181:15-182:3 ("He said, 'You and your son should die.' You said that.  And my dad is … freaked out, you know … he really is scared, you know … You keep … harassing my family[.]").  Yuga's counsel Yuga initially brushed off the issue, then later conceded that a threat did in fact occur.  Dkt. 97 at 4.  But Yuga's harassment of Mr. Ripps's father continued, including serving a facially invalid subpoena on him seeking to compel his trial attendance (notwithstanding his complete irrelevance to any issue in the case).

Yuga served more than sixteen subpoenas in this action, nearly all of them facially irrelevant and procuring no useful discovery, apparently to harass anyone that is in any way associated with the Defendants.  For example, Yuga targeted people on Twitter whose sole relevance was apparently having "liked" the RR/BAYC project, Defendants' personal accountants, and Mr. Ripps's gallerist.  These parties repeatedly commented on how Yuga's behavior in this lawsuit impacted them personally, including for example Mr. Ripps's part-time, one-week general assistant (whom Yuga insisted on deposing) who called Yuga's conduct "quite predatory, honestly." Garner Depo. at 190:9-17.

Yuga also improperly tried to preclude relevant discovery by making a baseless apex witness argument in an *ex parte* motion for a protective order.  The

1  Court rejected Yuga's baseless arguments, finding Yuga's motion "deficient on the
2  merits" because the co-founders were "the only people who have knowledge of the
3  creation of the marks." Dkt. 77 at 2.  The Court accordingly ordered that Yuga
4  employees Wylie Aronow and Greg Solano appear for depositions on January 9 and
5  11 respectively (excusing Mr. Solano only if he had medical complications).  *Id*.  Yet,
6  despite this Court's order, **neither witness appeared**.  Yuga has never identified any
7  medical reason why Mr. Solano could not attend.  The Court was clear that failing to
8  appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did
9  not show up.  Dkt. 77 at *2.  Yuga has not done so.
10        Yuga also flouted this Court's Protective Order by improperly designating the
11  entirety of third-party Ryan Hickman's deposition testimony as HIGHLY
12  CONFIDENTIAL-ATTORNEYS EYES ONLY to hide Mr. Hickman's testimony
13  from the public.  This deposition involved no Yuga confidential information; instead,
14  it was the testimony of a Black Jewish third party that included discussion of racism
15  and antisemitism in Yuga's branding.  *See* Dkt. 123-2.  Defendants were forced to
16  bring a motion to address Yuga's misuse of the Protective Order, which the Court
17  granted ordering complete de-designation of the transcript and finding that Yuga was
18  wrong to "**hold the transcript hostage**." Dkt. 133 at *2 (emphasis added).
19        Yuga also baselessly refused to produce materials relating to third-party
20  Thomas Lehman's settlement-procured declaration to run the clock on the discovery
21  schedule.  Defendants filed a motion to compel once Yuga disclosed the declaration
22  and sought expedited review of that motion to allow time for its use in a deposition of
23  Mr. Lehman.  The Court declined to consider the motion on an expedited basis,
24  stating that Defendants could instead depose Mr. Lehman in "the last week of March
25  before the April 1, 2023 discovery cut-off date." Dkt. 119 at 2.  The Court ultimately
26  granted Defendants' motion, holding that Yuga waived any claim to confidentiality
27  due to its "unfettered use of Lehman's declaration[.]" Dkt. 159 at 2.  After Yuga
28

1  belatedly made its court-ordered production, Defendants took Mr. Lehman's
2  deposition in the final week of discovery as suggested by the Court.  But because of
3  Yuga's delay, the deposition testimony—which raised disputes of fact regarding
4  Defendants' infringement and Yuga's credibility—was unavailable for consideration
5  in opposition to Yuga's motion for summary judgment.  *See* Dkt. 215 at 2.

6  Throughout the course of this litigation, Yuga also made repeated baseless
7  threats of fees and sanctions.  In total, Yuga has unsuccessfully asked the Court to
8  impose sanctions **six times**.  *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-
9  8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20.  Every request was denied.  This
10 kind of scorched-earth litigation strategy is improper in any context, but particularly
11 problematic where Defendants are two individuals attempting to respond to claims
12 brought by an uncompromising multi-billion-dollar corporate plaintiff.

13 Because Yuga has abandoned its claim that Defendants' infringement was
14 willful, because Defendants' positions were reasonable and their defense of this
15 litigation was necessitated by Yuga's unreasonable settlement requirements, and
16 because Yuga does not come to the Court with clean hands as result of its litigation
17 misconduct, Defendants respectfully request that the Court reject Plaintiff's claim
18 that this case is "exceptional" warranting an award of attorneys' fees in Yuga's favor.

19 **Plaintiff's Response:**

20 Defendants' objection should be rejected because (1) Yuga Labs has not
21 engaged in litigation misconduct and (2) Defendants ignore the many instances of
22 unreasonable litigation misconduct that they engaged in.

23 **Yuga Labs Has Not Engaged In Litigation Misconduct:**  Defendants'
24 attempts to evade responsibility for their egregious litigation misconduct by pointing
25 a finger at Yuga Labs has no relevance.  The losing party in a Lanham Act case
26 cannot defend against an exceptional case finding by accusing the prevailing party of
27 engaging in similar misconduct.  *See Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-
28

1  E, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022) (finding exceptional case
2  amidst allegations that "[b]oth parties conducted themselves poorly at times
3  throughout litigation" where "Defendants' conduct was worse and more frequent than
4  [plaintiff's]."). Even so, Defendants' contention that Yuga Labs engaged in
5  misconduct is incorrect and filled with multiple false claims.

6      During the course of settlement discussions, Yuga Labs initially sought a
7  reasonable non-disparagement clause to protect the company's representatives, their
8  families, and counsel given Defendants' history of making personal, targeted, heinous
9  claims and in the context of foregoing certain other relief to which it would be entitled
10 through litigation, as one proposed compromise.  Non-disparagement clauses are
11 typical in litigation settlements.  Defendants however claimed that a non-
12 disparagement clause was a barrier to them entering into a settlement.  This proved to
13 be another lie by Defendants.  After Yuga Labs **withdrew its request for a non-**
14 **disparagement clause,** Defendants still refused to negotiate a settlement in good faith.
15 In particular, Defendants refused to offer a single dollar in settlement to pay for their
16 profits or statutory damages, even after being held liable.  Defendants likewise refused
17 to agree to stop promoting their infringing NFTs or Ape Market, which promoted
18 sales of RR/BAYC NFTs.  *See* JTX-1048.  For example, the @ApeMarketplace
19 Twitter account continues to promote rrbayc.com and link to a marketplace on which
20 RR/BAYC NFTs are still available for sale.  Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at
21 57:8-58:6, 58:20-59:19.  After the Court found that Defendants infringed on Yuga
22 Labs' BAYC Marks, including through the RR/BAYC NFT smart contract and
23 cybersquatting of rrbayc.com and apemarket.com, they still refused to transfer control
24 of this smart contract or domains to Yuga Labs.

25     Yuga Labs never attempted to preclude depositions of its witnesses.  Yuga Labs
26 asked Defendants to complete a Rule 30(b)(6) deposition before deciding whether it
27 was necessary to depose Mr. Solano and Mr. Aronow, and it sought a protective order
28

1  when Defendants refused.  Dkt. 75.  The Court disagreed, and Yuga Labs produced
2  both witnesses for deposition.  Mr. Aronow was unable to appear for his deposition
3  the day after the Court's order because of a medical emergency.  The Court ordered
4  the parties to meet and confer on an appropriate date for the deposition for Mr.
5  Solano, Dkt. 77 at 2, which Yuga Labs did, and Mr. Solano appeared for his
6  deposition a few days after the Court's order.  As to the dispute on attorneys' fees
7  related to the Defendants' motion, Defendants know that Yuga Labs has a pending
8  objection to Defendants' claimed attorneys' fees, Defendants have failed to file any
9  motion for attorneys' fees, and Defendants have failed to respond to Yuga Labs'
10 request for an accounting to offset any attorneys' fees given the substantial and unpaid
11 expert deposition fees that Defendants still have not paid.

12      Defendants' dubious claim of a threat against Rodney Ripps is not in the record;
13 Yuga Labs disputes it and Defendants' false claim that it has ever been "conceded."
14 *See* Ripps Designated Deposition Testimony (Dkt. 342).  Defendants' claims on this
15 issue were also already dismissed by the Court as lacking any plausibility.  *See* order
16 on Yuga Labs' Motion to Strike/Dismiss (Dkt. 156) at 6-10 (denying Defendants'
17 intentional and negligent infliction of emotional distress claims, which were based in
18 part on this threat).  And Defendants noticeably do not mention the death threats they
19 and their associates leveled against Yuga Labs, its counsel, and their families.  Even
20 so, it is irrelevant because it did not come from Yuga Labs and was not directed to
21 Defendants. Defendants cry foul over Yuga Labs' subpoena of Rodney Ripps, when
22 it is they who designated him in their amended initial disclosures as a person with
23 knowledge of "RR/BAYC NFTs."  And the document subpoena Yuga Labs issued for
24 Mr. Rodney Ripps sought relevant information related to his role as an officer of
25 LIVE9000, Ryder Ripps' defunct limited liability company to which he tried to hide
26 the ill-gotten profits from the RR/BAYC NFTs when he knew he was being sued.
27
28

1         Yuga Labs' other subpoenas in this action were also targeted at relevant parties
2   whom Yuga Labs reasonably believed had information relevant to the litigation.
3   Many of them, including Mr. Ripps' gallerist, were designated in Defendants'
4   amended initial disclosures as individuals with knowledge of the RR/BAYC NFTs.
5   Likewise, Defendants indicated in their depositions that their accountants had relevant
6   information.  *See* Cahen Deposition at 24:18-25 ("Like I said, I think that would
7   probably be an easier question for my accountant or someone like that."); Ripps
8   Deposition at 235:1-24.  Defendants cannot complain that we subpoenaed their own
9   identified witnesses.  Moreover, the vast majority of subpoenas issued by Yuga Labs
10  were document subpoenas, which stands in stark contrast to the sixteen depositions
11  and deposition subpoenas Defendants threated and issued to Yuga Labs' founders and
12  employees.  Finally, Defendants' position that Mr. Garner is relevant to the litigation
13  as Mr. Ripps' assistant for purposes of deducting from their profits contradicts their
14  position that Yuga Labs' deposition of him was irrelevant.  This again highlights their
15  willingness to lie to get what they want.
16        Next, with respect to the discovery dispute with Mr. Hickman, the Court
17  observed that "Defendants, not Yuga, designated the documents discussed at Ryan
18  Hickman's deposition as highly confidential ('HC') and attorneys' eyes only
19  ('AEO')." Dkt. 133 at 1.  Consistent with Yuga Labs' reading of the Protective Order,
20  Yuga Labs kept the deposition transcript under similar protection "because HC/AEO
21  documents were discussed at the deposition," *id.*, and Defendants refused to specify
22  which portions of those underlying documents they contended were no longer
23  HC/AEO.  The Court noted Defendants' indiscriminate confidentiality designations,
24  holding that Yuga Labs was "not wrong that Defendants are obliged by the Protective
25  Order to ensure HC/AEO material is 'clearly so designated.'" *Id.* at 3.  Accordingly,
26  the Court ordered the transcript to be made public and ordered Defendants to comply
27  with the Protective Order by "reproduc[ing] and redesignat[ing] the HC/AEO
28

1  documents discussed at the deposition to 'clearly identify the protected portion(s)'" –
2  the "result Yuga recommended if the Motion was granted." *Id.*  In other words, the
3  Court ordered what Yuga Labs had asked the Defendants to do from the start.  This
4  was another problem all of the Defendants' own making.

5       Yuga Labs contested the discovery of documents reflecting settlement
6  negotiations with Mr. Lehman in good faith.  Mr. Lehman's settlement materials
7  expressly included a confidentiality provision, and Yuga Labs sought to have that
8  bargained-for confidentiality protected.  *See* Dkt. 121-01 at 17-18.  Yuga Labs briefed
9  the issues in good faith and, although the Court ultimately ordered the materials to be
10 produced, there was no finding of bad faith.  *See* Dkt. 159 (ordering Yuga Labs to
11 produce settlement materials without finding bad faith).  That is because there was no
12 bad faith.  Of course, symbolic of Defendants creating unnecessary disputes, the
13 Defendants did not use a single one of the settlement communications in the
14 deposition with Mr. Lehman or at trial.  Here too, this dispute could have been
15 avoided if the Defendants had accepted Yuga Labs' pre-motion offer.

16      Yuga Labs was overwhelmingly successful in its own discovery motions.  Yuga
17 Labs was forced to file numerous motions and obtain repeated sworn declarations
18 from Defendants confirming their compliance with discovery obligations, because
19 Defendants were continually caught concealing additional documents.  *See* Dkt. 79 at
20 2 (Jan. 10, 2023 order requiring Ripps to verify that he has produced "all relevant non-
21 privileged documents"); Dkt. 145 (order requiring Defendants to file a declaration that
22 they have produced relevant documents).  Although the Court did not award Yuga
23 Labs fees for these discovery violations, each fee request was nonetheless in response
24 to Defendants' egregious and repetitive discovery violations.  If Defendants took issue
25 with Yuga Labs' discovery strategy, they should have raised it with the Court during
26 discovery, yet they did not, and thus this issue is waived.

27
28

1  Defendants' persistent refusal to take any responsibility for their conduct
2  merely highlights how their tactics have increased the time and expense of this
3  litigation.

4  **Defendants' Litigation Misconduct:** Defendants ignore their own egregious
5  actions in this case, including Defendants' refusal to engage in reasonable settlement
6  discussions, seeking to re-litigate issues already decided, engaging in a pattern of
7  unreasonable and obstruct discovery, attacks against Yuga Labs and its associates,
8  farming for engagement on social media, and public disclosure of protected material
9  in violation of the protective order. *See supra* ¶ 61.

10  **Defendants' Reply:**

11  Yuga is incorrect as a matter of law. Their cited case actually directly stands
12  for the proposition that Defendants advance stating, "The Court also considers the
13  conduct of **both parties** throughout the case." *Jackson v. Gaspar*, No. 2:19-CV-
14  10450-DOC-E, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022). This makes
15  sense, because an exceptional case finding is equitable relief. *Ramirez v. Collier*, 142
16  S. Ct. 1264, 1282 (2022) ("When a party seeking equitable relief has violated
17  conscience, or good faith, or other equitable principle, in his prior conduct, then the
18  doors of the court will be shut against him.") (internal quotations and citations
19  omitted); *SunEarth, Inc.*, 839 F.3d at 1180-81 (holding that an exceptional case
20  finding is an exercise of the court's equitable powers).

21  First, Yuga has acknowledged that a Yuga employee threatened Rodney Ripps,
22  but instead argues that it was nothing more than "blowing off steam." Dkt. 97 at 4.
23  Rodney Ripps felt threatened enough to file a police report in response to this action.
24  Yuga now states—without evidence—that Defendants have committed death threats
25  against Yuga parties. This should be disregarded as without evidentiary support.
26  Yuga also never remediates the fact that its subpoena to Rodney Ripps was facially
27  invalid. It was instead intended to bring the case "close to home" for Mr. Ripps and
28

1  cause him fear and discomfort.  As for the other subpoenas served by Yuga they
2  sought documents and information far beyond what the witnesses would know and
3  witnesses such as Ian Garner commented on Yuga's aggression in discovery as "quite
4  predatory." Garner Depo. at 190:9-17.

5     Yuga attempts to flip its effort to wrongfully conceal Ryan Hickman's
6  deposition as Defendants' fault.  A quick glance at the Court's order quickly disabuses
7  that notion.  The Court was clear that Yuga took an untenable position regarding its
8  over-designation of Mr. Hickman's deposition.  *See* Dkt 133 at 2 ("The Court does not
9  understand why Yuga designated the entire Hickman deposition transcript as
10 HC/AEO, even the portions not discussing HC/AEO documents. The Court also faults
11 Yuga for conditioning de-designation of the Hickman deposition transcript on
12 obtaining de-designation of the HC/AEO documents discussed at the Hickman
13 deposition.).  It clearly held Yuga at fault for its actions, chastising Yuga for "holding
14 the transcript hostage." *Id*.  The fact that the Court granted relief that Yuga suggested
15 if it lost the motion does not change the fact that Yuga acted wrongfully and did, in
16 fact, lose and wrongfully hold the transcript hostage.

17    Yuga claims that its improper hiding of materials related to Mr. Lehman's
18 settlement was permissible because were not accused of good faith similarly tries to
19 ignore something fundamental about the decision.  It in all bold it demands that Yuga
20 produce the withheld documents within three day.  Dkt. 159 at *1.  The court noted
21 that all of Yuga's arguments against disclosing this evidence was "fatally
22 undermined" by Yuga's "unfettered use of Lehman's declaration" to support its
23 positions. *Id.* at *3.  In short, Defendants' motion to compel the Lehman materials
24 was an unmitigated victory for Defendants.

25    Yuga tries to argue that its pattern and practice of seeking sanctions and failing
26 denotes success and cites to two docket entries.  Instead of a hugely successful
27 motion, the Court did not grant Yuga's motion to compel and stated that it "cannot
28

| Case No. 2:22-cv-04355-JFW-JEM | -10- | DEFENDANTS' OBJECTIONS |
|---|---|---|

1  discern what discovery requests remain in dispute" when rejecting Yuga's position.
2  Dkt. 79 at *1.  Dkt. 145 also rejects Yuga's spoliation sanctions request as being made
3  "with no direct evidence." Dkt. 145 at *1.  Further, as mentioned above, Defendants
4  complied with discovery obligations to the best of their ability and explained as much
5  at trial. Trial Tr. [Ripps] 269:10-270:18.  Yuga cannot escape the fact that it used
6  seeking sanctions as a litigating technique and that is wrongful.  This court should
7  take that into consideration when considering Yuga's request for relief.
8        Lastly, Defendants have not engaged in litigation misconduct in this case.
9  While contentious, the examples of alleged litigation misconduct alleged by Yuga
10 show no such thing.  For reasons stated above, Defendants never re-litigated a matter,
11 complied with discovery to the best of their ability including attendance at their
12 noticed depositions (unlike Yuga's executives), and their public criticism of Yuga was
13 not impermissible—but Yuga's argument against the criticism betrays that this case
14 was truly about silencing Defendants.  Defendants do not "ignore" their own litigation
15 misconduct; and the Court should not ignore Yuga's.