Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| Yuga Labs, Inc., | Case No. 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **Defendants' Objections to Disputed Conclusion of Law No. IV Conclusion** |
| v. | Judge:  Hon. John F. Walter |
| Ryder Ripps, Jeremy Cahen, | |
| Defendants. | |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Conclusion of Law No. IV Conclusion:**

For the reasons explained above, it is hereby ORDERED THAT Defendants pay to Plaintiff:

1. $1,375,361.92 in Defendants' profits;

2. $200,000 in statutory damages;

3. Attorneys' fees;

4. Costs; and

5. Pre- and post-judgment interest.

The amount of Yuga Labs' fees and costs shall be determined after Yuga Labs files a separate fee application no later than thirty (30) days from the date of this order and judgment.

**Defendants' Basis of Dispute:**

Yuga's proposed award is inconsistent with the evidence at trial and applicable law. *First*, Yuga is not entitled to any disgorgement of profits because Yuga advanced concerned numbers for actual damage and thereby failed to show "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Because Yuga's remedies at law were available but waived, Yuga can no longer obtain disgorgement. *See Hunting World Inc. v. Reboans, Inc.*, No. C 92-1519 (BAC), 1994 WL 763408, at *2-3 (N.D. Cal. Oct. 26, 1994) ("[A]lthough Plaintiff has waived the right to collect damages, this does not render the claim purely equitable because, as discussed above, this is a statutory claim. Again,

1    because the statutes provide adequate remedies, a purely equitable claim may not be

2    maintained.").

3        ***Second***, Yuga cannot obtain disgorgement because Defendants' intent was to

4    protest against Yuga, not to cause confusion.  *Romag Fasteners, Inc v. Fossil, Inc.,*

5    *140 S. Ct. 1492, 1497 (2020)* (holding that an infringer's mental state is a "highly

6    important consideration in determining whether an award of profits is appropriate.").

7    Here, disgorgement is not an appropriate remedy because the intent of the RR/BAYC

8    project was to criticize Yuga's problematic imagery and educate consumers about the

9    nature of NFTs—the exact opposite of confusing consumers.  Cahen Decl. ¶¶ 97-98,

10   133 (Dkt. 344); Ripps Decl. ¶¶ 137-139 (Dkt. 346) (uncontested); JTX-2033.  Mr.

11   Ripps has had a long and successful career as an artist, during which he has created

12   numerous satirical art projects spotlighting problematic societal issues.  Ripps Decl.

13   ¶¶ 15-26 (Dkt. 346) (uncontested).  Mr. Ripps's first solo exhibition commented on

14   how social media uses manipulated images of women to influence our perception of

15   beauty.  Ripps Decl. ¶ 26 (Dkt. 346) (uncontested).  Mr. Ripps's artistic contributions

16   have been widely acknowledged and celebrated; he is, as the *New York Times*

17   explained that he is one of the most prominent digital artists of the 2010's.  Ripps

18   Decl. ¶ 21 (Dkt. 346) (uncontested); JTX-2333.

19       Defendants also took multiple steps to make clear that the RR/BAYC collection

20   was not related to Yuga in any way.  For example, the rrbayc.com website—through

21   which the majority of RR/BAYC commissions occurred and the vast majority of

22   alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶

23   144 (Dkt. 344)) included an explanation of the artistic intent for the project.  Ripps

24   Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344);

25   Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Collectors using the

26   rrbayc.com website were also required to read and click through a disclaimer

27   acknowledging the artistic purpose of the project before they were allowed to

28

1    commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-

2    2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these requirement and

3    additional steps so that the artistic purpose of the work would be clear to participants.

4    *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement

5    ultimately included, if it had a negative impact on usability? …  A.   … Ryder wanted

6    it and so he had the final call.").

7            Defendants' online discussion, which consisted of nearly the entirety of

8    Defendants' public activities associated with RR/BAYC, confirms their intent.  In

9    those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be

10   inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows

11   that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested);

12   Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

13           The evidence at trial also shows that Yuga's public activities amounted to

14   authorization of RR/BAYC collection and the numerous other collections that use the

15   asserted marks.  At the time Mr. Ripps and Mr. Cahen launched the RR/BAYC

16   project, there were more than 9,000 other third-party projects using Yuga's marks.

17   Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345);

18   JTX 2243; JTX 2244.  Before suing Mr. Ripps and Mr. Cahen over the RR/BAYC

19   project, Yuga had not taken steps to stop these third-party projects from using Yuga's

20   marks.  Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344).

21   There were hundreds of NFT collections unaffiliated with Yuga that use the Bored

22   Ape Yacht Club Brand on the NFT marketplace OpenSea.  Trial Tr. [Muniz] 77:19-

23   23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted that Mr. Ripps, Mr.

24   Cahen, and Mr. Hickman would have probably seen these collections using the Bored

25   Ape Yacht Club trademarks at the time they created the RR/BAYC project.  Trial Tr.

26   [Muniz] 77:19-23. 26.  There are "literally thousands" of products that use Yuga

27   trademarks without sponsorship or affiliation with Yuga.  Trial Tr. [Muniz] 81:18-22.

28

1  For example, there are published notebooks with ISBN numbers, commemorative

2  coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana

3  products that are unaffiliated with Yuga that use Yuga's trademarks. *See*, *e.g.*, JTX-

4  2398; JTX-2134; JTX-2410; JTX-2075.

5        Moreover, Mr. Hickman, a member of the RR/BAYC project team, was a

6  holder of a BAYC NFT containing the asserted marks and having received IP rights

7  associated with the Bored Ape Yacht Club.  Ryan Hickman, who collaborated with

8  Mr. Ripps and Mr. Cahen on the RR/BAYC project, owned a BAYC NFT at the time

9  of the project.  Hickman Decl. ¶¶ 19-22 (Dkt. 345).  BAYC NFTs had Terms &

10  Conditions, and the intent behind the Terms & Conditions for BAYC NFTs was to

11  allow people to be able to commercialize their NFTs.  Trial Tr. [Solano] 25:1-4 ("Q.

12  Your intent in writing the terms and conditions was to allow people to be able to

13  commercialize their NFTs.  We can agree on that; right? A. Yes.  That is covered in

14  the terms.").  Yuga encouraged the public to use the BAYC artwork and to be creative

15  with BAYC's intellectual property.  For example, Yuga's CEO Nicole Muniz had

16  publicly represented that BAYC NFT holders received all IP rights and that Yuga has

17  none of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344);

18  Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673.  Ms. Muniz confirmed that

19  someone listening to her public statement about Yuga not having any IP rights would

20  not have heard the word copyright.  Trial Tr. [Muniz] 72:19-22.

21        All of these facts proven at trial preclude the conclusion that Defendants had the

22  mental state necessary to render disgorgement an available remedy.

23        ***Third***, Yuga is not entitled to disgorgement because Yuga failed to show that

24  any of the profits associated with the RR/BAYC collection are "attributable to the

25  infringing activity." *Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir.*

26  *1993), abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.,*

27  *839 F.3d 1179 (9th Cir. 2016)*.  The evidence at trial showed that RR/BAYC NFTs

28

1   were reserved in protest **against** Yuga and to support Defendants' artistic criticism,

2   not in response to the "appeal of [Yuga's] symbol." *Mishawaka Rubber & Woolen*

3   *Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942).

4        The evidence at trial did not reveal even a single transaction associated with the

5   RR/BAYC collection that was a result of confusion or a result of appeal to the BAYC

6   marks.  Neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are aware of a single instance

7   of confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-

8   18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19.  Yuga itself

9   was also unable to identify a single person who obtained an RR/BAYC NFT believing

10  it to be sponsored by Yuga.  Trial Tr. [Muniz] 85:3-7 ("Q.  Now let's focus on, I

11  think, what you were focused on. Yuga Labs has been unable to identify even[] a

12  single person who purchased an RR/BAYC believing it to be sponsored by Yuga

13  Labs; right? A Correct.").  Mr. Solano, Yuga's President, similarly could not identify

14  a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.

15  Trial Tr. [Solano] 18:23-19:1.

16        Furthermore, the trial record included many letters directly from actual

17  consumers of RR/BAYC NFTs.  From these voluminous correspondence from

18  RR/BAYC Participants, none indicated any confusion from primary sales or

19  secondary sales.  Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested).  To the contrary,

20  the correspondence expressed gratitude and support for the criticism of Yuga. Ripps

21  Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-

22  2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

23        This evidence shows that none of the profits associated with the RR/BAYC

24  collection arose from consumer confusion or appeal of the BAYC marks.  Which

25  means under appropriate apportionment, Yuga is not entitled to any disgorgement of

26  profits.

27

28

1    **_Fourth_**, Yuga is not entitled to more than the statutory minimum for its

2    cybersquatting claim because Yuga has withdrawn and waived "all legal remedies."

3    Statutory damages are a legal remedy (for which there is a jury trial right).  *See*

4    *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998) ("The right

5    to a jury trial includes the right to have a jury determine the *amount* of statutory

6    damages") (emphasis in original).  Under Ninth Circuit law, a jury is not required

7    when a plaintiff elects to accept the minimum amount of statutory damages for

8    cybersquatting.  *See GoPets Ltd. V. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011).  But

9    awarding anything more than the statutory minimum is a legal remedy, which Yuga

10   has foregone.  *See Versace v. Awada*, CV 03-3254-GAF, 2009 WL 10673371, at *7

11   (C.D. Cal. Sep. 4, 2009) ("Strictly construing Rule 38, the Court will not permit

12   Plaintiff to withdraw its demand for a jury trial because Defendants do not consent,

13   and because the law holds clearly that Defendant has a right to a jury determination

14   of statutory damages.").

15        Having abandoned "all legal remedies," Yuga cannot obtain more than the

16   statutory minimum on its cybersquatting claim.  *See Daimler AG v. A-Z Wheels LLC*,

17   498 F. Supp. 3d 1282, 1290 (S.D. Cal. 2020) (holding that award above minimum is

18   a jury issue) (citing *Dream Games of Ariz. Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th

19   Cir. 2009)); *Curtis v. Illumination Arts, Inc.*, 957 F. Supp. 2d 1252, 1260 (W.D.

20   Wash. 2013) (holding that statutory damages are a jury issue) (citing *BMG Music v.*

21   *Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005)).  The Court should thus enter judgment

22   of $2,000 on cybersquatting (the minimum statutory amount of $1,000 for each of the

23   two cybersquatting violations that the Court has found).

24        **_Fifth_**, Yuga is not entitled to any costs or fees because this is not an

25   exceptional case.  Courts determine if a case is exceptional by considering the totality

26   of the circumstances and evaluating whether the case is "one that stands out from

27   others with respect to the substantive strength of a party's litigation position

28

Case No. 2:22-cv-04355-JFW-JEM          -6-          DEFENDANTS' OBJECTIONS

1   (considering both the governing law and the facts of the case) or the unreasonable

2   manner in which the case was litigated." *SunEarth, Inc.*, 839 F.3d at 1180 (quoting

3   *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

4   Exceptional case findings are rare and not considered the norm. *Octane Fitness,*

5   *LLC*, 572 U.S. at 553 (defining exceptional as "uncommon, rare and not ordinary")

6   (internal quotations omitted).  As the name implies, the case must present something

7   "exceptional" to depart from the normal rule that parties pay their own costs. *See*

8   *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005) (reversing district court because

9   it was only based on a finding of intentional infringement, but not the kind of extreme

10  conduct necessary for an exceptional case finding).  Plaintiffs bear the burden to

11  prove that a case is exceptional. *Caiz v. Roberts*, No. 15-CV-09044-RSWL-AGRx,

12  2017 WL 830386 at *5 (C.D. Cal. Mar. 2, 2017).

13       This is not an "exceptional case" under these exacting standards.  Defendants

14  put forward reasonable defenses and were justified in defending this litigation,

15  particularly given Yuga's demand for terms that Yuga could never attain through this

16  litigation. *See Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058-ODW

17  (JPRx), 2021 WL 2414856 at *2 (C.D. Cal. June 14, 2021) ("Courts in this district

18  have held that a party's litigation position must be objectively meritless for a case to

19  be exceptional…").  Here, Defendants' litigation position has been defined by Yuga's

20  unreasonable settlement demand that Defendants surrender their speech rights to

21  criticize Yuga.  As the Court itself noted, Yuga's demand for a non-disparagement

22  clause was "a condition that is quite frankly unreasonable."  Dkt. 334 at 9:9-12.  The

23  reason that this case has continued as far as it has is Yuga's insistence on silencing

24  Defendants.

25       Defendants have advanced good faith arguments in favor of their positions on

26  both liability and damages. *See Caiz,* 2017 WL 830386, at *5 (holding that mere

27  "lack of success" does not support an exceptional case finding).  Defendants made a

28

1  good-faith argument that they were entitled to a *Rogers* defense on free speech

2  grounds— a common defense in trademark cases involving artists and their creations.

3  While this Court disagreed, Defendants advanced this defense based on relevant

4  evidence.  *See, e.g.*, Dkt. 163; Dkt. 163-17-31 (fifteen unsolicited letters applauding

5  the RR/BAYC project as protest art that criticizes Yuga); Dkt. 163-80 (artist's

6  statement); Dkt. 163-81 (disclaimer).

7  　　　Defendants' litigation conduct also does not support an exceptional case

8  finding.  Defendants are entitled to mount a vigorous defense (especially given

9  Yuga's settlement conditions) both on the merits and during the burdensome

10  discovery process.  Yuga brought motion after motion in discovery, only to have their

11  arguments repeatedly rejected.  *See, e.g.*, Dkt. 77 (rejecting Yuga's "apex witness"

12  argument); Dkt. 133 (rejecting Yuga's attempt to seal the entirety of the deposition

13  transcript of a witness critical of Yuga); Dkt. 159 (ordering production of materials

14  Yuga improperly withheld); Dkt. 145 (denying Yuga's baseless motion for

15  sanctions).

16  　　　Further, Defendants have also had to defend against moving targets.  For

17  example, within a span of ten days, Yuga first claimed damages of roughly $2 million

18  in actual damages, to a claim of nearly ***$800 million*** in actual damages, to complete

19  abandonment of all actual damages.  *See* Dkt 286 at 2-3 (asserting damages of

20  $1,792,704 on June 7); Dkt. 287-10 at 4 (asserting damages of $797,183,838 on June

21  8); Dkt. 315-1 at 2 (dropping actual damages on June 15).  Defendants have made

22  reasonable offers of settlement and put forward reasonable legal arguments in the

23  face of Yuga's shifting claims.

24  　　　Yuga's litigation misconduct likewise precludes a finding that this case is

25  exceptional in Yuga's favor.  *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022)

26  ("When a party seeking equitable relief has violated conscience, or good faith, or

27  other equitable principle, in his prior conduct, then the doors of the court will be shut

28

1   against him.") (internal quotations and citations omitted); *SunEarth, Inc.*, 839 F.3d at

2   1180-81 (holding that an exceptional case finding is an exercise of the court's

3   equitable powers).  For example, Yuga used this litigation as means to harass Mr.

4   Ripps's 72-year-old father, Rodney Ripps.  During this lawsuit, a Yuga employee

5   threatened the life of Mr. Ripps's father (ultimately forcing Mr. Ripps's father to file

6   a police report).  *See* Ripps Depo. 181:15-182:3 ("He said, 'You and your son should

7   die.'  You said that.  And my dad is … freaked out, you know … he really is scared,

8   you know … You keep … harassing my family[.]").  Yuga's counsel Yuga initially

9   brushed off the issue, then later conceded that a threat did in fact occur.  Dkt. 97 at 4.

10  But Yuga's harassment of Mr. Ripps's father continued, including serving a facially

11  invalid subpoena on him seeking to compel his trial attendance (notwithstanding his

12  complete irrelevance to any issue in the case).

13       Yuga served more than sixteen subpoenas in this action, nearly all of them

14  facially irrelevant and procuring no useful discovery, apparently to harass anyone that

15  is in any way associated with the Defendants.  For example, Yuga targeted people on

16  Twitter whose sole relevance was apparently having "liked" the RR/BAYC project,

17  Defendants' personal accountants, and Mr. Ripps's gallerist.  These parties

18  repeatedly commented on how Yuga's behavior in this lawsuit impacted them

19  personally, including for example Mr. Ripps's part-time, one-week general assistant

20  (whom Yuga insisted on deposing) who called Yuga's conduct "quite predatory,

21  honestly."  Garner Depo. at 190:9-17.

22       Yuga also improperly tried to preclude relevant discovery by making a

23  baseless apex witness argument in an *ex parte* motion for a protective order.  The

24  Court rejected Yuga's baseless arguments, finding Yuga's motion "deficient on the

25  merits" because the co-founders were "the only people who have knowledge of the

26  creation of the marks."  Dkt. 77 at 2.  The Court accordingly ordered that Yuga

27  employees Wylie Aronow and Greg Solano appear for depositions on January 9 and

28

1   11 respectively (excusing Mr. Solano only if he had medical complications). *Id*. Yet,

2   despite this Court's order, **neither witness appeared**. Yuga has never identified any

3   medical reason why Mr. Solano could not attend. The Court was clear that failing to

4   appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did

5   not show up. Dkt. 77 at *2. Yuga has not done so.

6          Yuga also flouted this Court's Protective Order by improperly designating the

7   entirety of third-party Ryan Hickman's deposition testimony as HIGHLY

8   CONFIDENTIAL-ATTORNEYS EYES ONLY to hide Mr. Hickman's testimony

9   from the public. This deposition involved no Yuga confidential information; instead,

10  it was the testimony of a Black Jewish third party that included discussion of racism

11  and antisemitism in Yuga's branding. *See* Dkt. 123-2. Defendants were forced to

12  bring a motion to address Yuga's misuse of the Protective Order, which the Court

13  granted ordering complete de-designation of the transcript and finding that Yuga was

14  wrong to "**hold the transcript hostage**." Dkt. 133 at *2 (emphasis added).

15         Yuga also baselessly refused to produce materials relating to third-party

16  Thomas Lehman's settlement-procured declaration to run the clock on the discovery

17  schedule. Defendants filed a motion to compel once Yuga disclosed the declaration

18  and sought expedited review of that motion to allow time for its use in a deposition of

19  Mr. Lehman. The Court declined to consider the motion on an expedited basis,

20  stating that Defendants could instead depose Mr. Lehman in "the last week of March

21  before the April 1, 2023 discovery cut-off date." Dkt. 119 at 2. The Court ultimately

22  granted Defendants' motion, holding that Yuga waived any claim to confidentiality

23  due to its "unfettered use of Lehman's declaration[.]" Dkt. 159 at 2. After Yuga

24  belatedly made its court-ordered production, Defendants took Mr. Lehman's

25  deposition in the final week of discovery as suggested by the Court. But because of

26  Yuga's delay, the deposition testimony—which raised disputes of fact regarding

27

28

1   Defendants' infringement and Yuga's credibility—was unavailable for consideration

2   in opposition to Yuga's motion for summary judgment.  *See* Dkt. 215 at 2.

3          Throughout the course of this litigation, Yuga also made repeated baseless

4   threats of fees and sanctions.  In total, Yuga has unsuccessfully asked the Court to

5   impose sanctions ***six times***.  *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at

6   6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20.  Every request was denied.

7   This kind of scorched-earth litigation strategy is improper in any context, but

8   particularly problematic where Defendants are two individuals attempting to respond

9   to claims brought by an uncompromising multi-billion-dollar corporate plaintiff.

10          Yuga exacerbated its litigation misconduct by presenting false testimony at trial

11   in the form of its Declaration of Greg Solano.  Mr. Solano conceded on cross

12   examination that his declaration included untrue statements, and he was repeatedly

13   impeached at trial.  For example, Mr. Solano was also forced to concede on cross

14   examination that his sworn declaration included a false statement claiming that

15   "Defendants continue to receive royalties or creator fees from sales on secondary

16   marketplaces."  Trial Tr. [Solano] 48:15-49:4.  Mr. Solano was likewise repeatedly

17   impeached. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know,

18   sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q

19   Let's see what you said at your deposition, if we could. You gave a deposition in this

20   case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today;

21   right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen --

22   at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder

23   Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that

24   your testimony at your deposition? A Yes." ); *id*. at 34:9-19 ("[Q] Do you know

25   whether Ape Market exists? A We have the code for Ape Market from Tom Lehman,

26   yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do

27

28

1   you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked

2   that question, and did you give that answer? A Yes.").

3        Because Yuga has abandoned its claim that Defendants' infringement was

4   willful, because Defendants' positions were reasonable and their defense of this

5   litigation was necessitated by Yuga's unreasonable settlement requirements, and

6   because Yuga does not come to the Court with clean hands as result of its litigation

7   misconduct, Defendants respectfully request that the Court reject Plaintiff's claim

8   that this case is "exceptional" warranting an award of attorneys' fees in Yuga's favor.

9        ***Sixth***, Yuga's proposed judgment improperly omits that Defendants are

10  entitled to a finding of no willfulness. Yuga put Defendants' willfulness at issue as a

11  factual matter by requesting a finding at summary judgment that "this is an

12  exceptional case ***of intentional infringement***."  Dkt. 149 at 13 (emphasis added).

13  The Court denied Yuga's summary judgment motion on this issue.  Courts have

14  repeatedly recognized that "willfulness is an issue for the jury." *Exmark Mfg. Co. Inc.*

15  *v. Briggs & Stratton Power Prods. Group, LLC*, 879 F.3d 1332, 1353 (Fed. Cir.

16  2018).  Yuga's waiver of "all legal remedies" thus waived any claim of willful

17  infringement, and Defendants are thus entitled to a judgment of no willfulness.  *See*

18  *also* Dkt. 236 at 13 (Yuga conceding that it is not pursuing a claim of willful

19  infringement).

20       **Plaintiff's Response:**

21       Defendants' objection should be rejected because (1) the availability of actual

22  damages is not a bar to recovery for disgorgement; (2) Defendants were intentional

23  infringers; (3) there is ample evidence of confusion in the record, which is unrebutted

24  by Defendants' evidence; (4) the Court may award more than the minimum statutory

25  damages; (5) Yuga Labs has proven that this is an exceptional case; (6) willfulness is

26  no longer at issue in this case, and (7) Defendants fail to impeach Mr. Solano's

27  accurate testimony.

28

**The Availability Of Actual Damages Is Not A Bar To Recovery For Disgorgement:**  There is no requirement for an absence of an "adequate remedy at law" to obtain disgorgement.  *See supra* ¶ 31.  To receive Defendants' profits, Yuga Labs' only burden is to "establish[] the defendant's gross profits from the infringing activity with reasonable certainty."  *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1408 (9th Cir. 1993).  Through at least the testimony of Ms. Kindler, Yuga Labs has met its burden.  *See supra* ¶¶ 31, 36.

**Defendants Were Intentional Infringers:**  In granting Yuga Labs' motion for summary judgment, this Court held that Defendants intended to deceive consumers.  SJ Order (Dkt. 225) at 12; *supra* ¶ 7.  Likewise, Defendants' private communications show they knew they were using the BAYC Marks in a way that was likely to confuse consumers and did so with the intent to profit from their infringement.  *See supra* ¶ 7.  Defendants' attempts to shift the blame onto third party infringers, claim that they believed they had the right to use the BAYC Marks, or claim that their infringement is "art" have all been rejected, and should be rejected once again.  *Id*.

**There Is Ample Evidence Of Confusion In The Record, Which Is Unrebutted By Defendants' Evidence:**  Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion.  *See supra* ¶ 4.  Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.  *Id*.

**The Court May Award More Than The Minimum Statutory Damages:**  Statutory damages are an equitable remedy and courts are not required to refer the issue of statutory damages to a jury.  *See Two Plus Two Pub., LLC v. Jacknames.com,* 572 F. App'x 466, 467 (9th Cir. 2014); *Acad. of Motion Picture Arts & Scis. v. GoDaddy, Inc.*, No. CV 10-3738-AB (CWX), 2015 WL 12697732, at *3 (C.D. Cal.

1   Apr. 10, 2015); *See supra* ¶ 39.  To the contrary, Ninth Circuit precedent demonstrates

2   that Courts have the authority to award more than the minimum statutory damages for

3   ACPA claims, even after a bench trial.  *See Bekins Holding Corp. v. BGT Trans, Inc.,*

4   *No. CV 09-08982, 2010 WL 11597623, at \*10 (C.D. Cal. Nov. 19, 2010); City of*

5   *Carlsbad v. Shah,* 850 F. Supp. 2d 1087, 1108 (S.D. Cal. 2012).  The Court may

6   award statutory damages as "the court considers just."  15 U.S.C. § 1117(d).

7        **Yuga Labs Has Proven That This Is An Exceptional Case:**  Defendants

8   engaged in egregious litigation misconduct justifying a finding that this is an

9   exceptional case.  *See supra* ¶ 61-66.  And Defendants' attempts to evade

10  responsibility for their egregious litigation misconduct by pointing a finger at Yuga

11  Labs has no relevance.  *Id*.  The losing party in a Lanham Act case cannot defend

12  against an exceptional case finding by accusing the prevailing party of engaging in

13  similar misconduct.  *See Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL

14  2155975, at \*5 (C.D. Cal. Feb. 24, 2022).

15       **Willfulness Is No Longer At Issue In This Case:**  The Court has already

16  found Defendants' infringement was willful.  *See* SJ Order at 12; *see also Lindy Pen,*

17  982 F.2d at 1405-06 (willfulness "carries a connotation of deliberate intent to deceive.

18  Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or

19  'fraudulent' to conduct that meets this standard.").  Regardless, Defendants intended

20  to confuse consumers.  *See supra* ¶ 7.

21       **Mr. Solano Is A Credible Witness:**  Mr. Solano's testimony is credible.  *See*

22  *supra* ¶ 1 (lines 1:21-24).  The vast majority of Mr. Solano's testimony detailing the

23  harm to Yuga Labs because of Defendants' intentional and repeated use of the BAYC

24  Marks is undisputed and supported by other record evidence.  *Id*.  The few arguments

25  Defendants raise claiming his testimony is not credible are meritless.  *Id*.

26       **Defendants' Reply:**

27

28

1    Contrary to Yuga's argument, the Supreme Court has held that disgorgement is

2  not available unless there is "the absence of an adequate remedy at law." *Dairy

3  Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962).   And the rule set forth in *Dairy

4  Queen* has been applied to awarding defendant's profits under the Lanham Act.  *See*

5  *Hunting World Inc. v. Reboans, Inc.*, No. C 92-1519 (BAC), 1994 WL 763408, at *2-

6  3 (N.D. Cal. Oct. 26, 1994).

7    Legal remedies were available in this case.  Yuga expressly asserted and offered

8  expert testimony in support of legal remedies (including a claim for actual damages

9  that its expert was able to quantify), which it then voluntarily relinquished.  Dkt. 315-

10 1 at 2 ("Yuga Labs is withdrawing all legal remedies"); Trial Tr. [Kindler] 172:14-17,

11 173:1-8, 174:4-7, 175:17-19.  Having abandoned available legal remedies, Yuga

12 cannot obtain disgorgement.  *See Hunting World Inc.*, 1994 WL 763408, at *2-3

13 ("[A]lthough Plaintiff has waived the right to collect damages, this does not render the

14 claim purely equitable because, as discussed above, this is a statutory claim.  Again,

15 because the statutes provide adequate remedies, a purely equitable claim may not be

16 maintained.").

17    Yuga's discussion about whether Defendants were "intentional infringers" is

18 irrelevant and highlights that Yuga failed to show the proper type of intent for

19 disgorgement damages.  Disgorgement is only warranted in cases of "conscious

20 wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL

21 4596697, at *17 (C.D. Cal. July 29, 2022).  Disgorgement is, therefore, not an

22 available remedy here because – as the evidence showed at trial - neither Mr. Ripps

23 nor Mr. Cahen is a "conscious wrongdoer."  *See* Ripps Decl. ¶¶ 144, 147, 158-176

24 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131, 145-155 (Dkt. 344); JTX-801.00010,

25 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.  Likewise

26 whether Defendants acted willfully is at issue, except to the extent that Yuga failed to

27

28

1    seek it.  Regardless, Defendants intent is at issue because Yuga seeks intent-laden

2    relief.  *See Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).

3           Yuga's right to statutory damages is capped at the minimum because it elected

4    to surrender legal remedies.  *See* Dkt. 315-I.  A court's discretion in awarding

5    damages is curbed by Defendants' rights, including Defendants' Seventh Amendment

6    right to a jury trial.  Statutory damages are legal remedies for which there is a right to

7    a jury trial.  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353

8    (1998) ("[t]he right to a jury trial includes the right to have a jury determine the

9    amount of statutory damages") (emphasis in original).  However, a jury trial is not

10   required in instances when a plaintiff elects to accept the minimum amount of

11   statutory damages.  *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011).

12   Here, the Court has discretion to award statutory minimum damages of $1,000 for

13   each of the two cybersquatting violations that the Court found (Dkt. 225 at 13-15), for

14   a total of $2,000.  *See* 15 U.S.C. § 1117(d) (permitting "award of statutory damages in

15   the amount of not less than $1,000").  Defendants never surrendered their right to a

16   jury trial, and therefore this Court has no discretion to award more than what Yuga

17   implicated elected—the minimum.

18          Yuga has failed to prove that it is entitled to an exceptional case finding.  First,

19   the case they cite in favor of ignoring their own misconduct holds precisely the

20   opposite.  That case holds, "The Court also considers the conduct of **both parties**

21   throughout the case."  *Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL

22   2155975, at *5 (C.D. Cal. Feb. 24, 2022).  Yuga has done no more than demonstrate

23   that it won at summary judgment and not that Defendants put forward frivolous

24   arguments.  Yuga's misconduct should also preclude such a finding.

25          Mr. Solano is not a credible witness.   At trial, Mr. Solano admitted that he

26   committed a mistruth in his sworn declaration of trial testimony when he was forced

27   to concede on cross-examination that his sworn declaration included a false statement

28

1  claiming that Defendants continue to receive royalties from sales on secondary

2  marketplaces.  *See* Trial Tr. [Solano] 48:14-49:4.  Mr. Solano also premised much of

3  his declaration on Mr. Lehman's extraordinarily flawed declaration to support his

4  sweeping assertions without realizing that it was drafted by Yuga's counsel, as a

5  condition of settlement, using words that Mr. Lehman would not use.  *Id.* at 38:14-19;

6  40:3-14.  Overall, Mr. Solano was caught in several mistruths on the stand and was

7  exposed for relying on unreliable information that was outside of his knowledge.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28