Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Conclusion of Law No. IV.1** <br><br> Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. IV.1

1. Defendants, their agents, employees, and attorneys, and anyone in active concert or participation with Defendants, their agents, employees, and attorneys, are hereby permanently restrained and enjoined from, directly or indirectly, or authorizing or assisting any third-party to engage in:

    a. Manufacturing, minting, issuing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, loaning, renting, or otherwise disposing of the RR/BAYC NFTs (except as provided in this Judgment) and any other products or merchandise related to the RR/BAYC NFTs, including without limitation, listing the RR/BAYC NFTs or related products or merchandise for sale on any marketplace, and/or collecting royalties in connection with the RR/BAYC NFTs;

    b. Using in any manner any logo, trade name, trademark, or designation confusingly similar to any of the BAYC Marks or any other Yuga Labs source identifier, alone or in combination with other words or designs, as a trademark, trade name component, or otherwise, to market, advertise, promote, or identify any good and/or service not produced, offered, or authorized by Yuga Labs, or to falsely represent or have the effect of falsely representing that the goods or services of any Defendant or of others are sponsored by, authorized by, or in any way associated with Yuga Labs, or to otherwise unfairly compete with Yuga Labs in

    manufacturing, selling, offering for sale, distributing, or advertising goods or services;

  c. Registering, owning, using, or trafficking any other website, domain name, e-commerce page or account, digital marketplace page or account, licensing business or other business, or any entity or store whose name or d.b.a. confusingly uses and/or incorporates any of the BAYC Marks, or includes "BAYC", "Bored Ape", or "Yuga" or any other Yuga Labs source identifier, or that is confusingly similar to any of the BAYC Marks, or that is calculated to or reasonably likely to confuse consumers into believing that Defendant is Yuga Labs, or is in any manner associated or connected with Yuga Labs when it is not;

  d. Registering, owning, using, or trafficking any social media account, including but not limited to www.discord.com or www.twitter.com account(s), that purports to originate from Yuga Labs, or to be sponsored or licensed by, or affiliated with Yuga Labs or uses and/or incorporates any portion of the BAYC Marks within its name, when it is not;

  e. Using the infringing "RR/BAYC" and "APE MARKET" marks on social media platforms to facilitate the manufacture, circulation, sale, transfer, marketing, advertising, promoting, and/or renting of RR/BAYC NFTs or related goods or services;

  f. Providing any benefits to holders of the RR/BAYC NFTs, such as airdrops, or otherwise creating incentives for third parties to sell, purchase, trade, transfer, loan, rent, and/or profit from RR/BAYC NFTs.

  g. Further infringing any BAYC Mark and/or any other Yuga Labs source identifier;

**Defendants' Basis of Dispute:**

Yuga proposed injunction is impermissibly overbroad. Injunctive relief must be "tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). "An overbroad injunction is an abuse of discretion." *Id.* Here, the specific harm alleged is Defendants' use of Yuga's marks to sell products. *See* Dkt. 1 at ¶ 5 (complaint is about sales of RR/BAYC NFTs). Therefore, the injunction must be tailored to only that harm, and not the ancillary issues such as Defendants' free speech rights that Yuga has wrongfully tried to introduce into the injunction.

Section 1 of Yuga's proposed injunction is overbroad because it seeks to backdoor a non-disparagement clause by seeking injunction terms that would also prevent Defendants from being able to criticize Yuga. Yuga made clear at trial that it wishes to silence the Defendants' criticism:

> Q. Yuga Labs has asked for an injunction that would prevent Mr. Ripps and Mr. Cahen from using any of those words in any way to promote anything; right?
>
> A. They have taken our brand and stolen it. We want our brand out of their hands in every capacity.
>
> Q. Do you want them never to say "Bored Ape Yacht Club" again?
>
> A. ***They should not have the right to say "Bored Ape Yacht Club" again.*** They have stolen from us.

Trial Tr. [Muniz] 94:5-13 (emphasis added).

Yuga's proposed injunction includes terms that would allow Yuga to realize its wish to silence the Defendants. The injunction is not reasonably tailored to cover RR/BAYC NFTs. Rather, section 1(a) seeks to enjoin Defendants from "Manufacturing, minting, issuing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, loaning, renting, or otherwise

disposing of … any other product or merchandise related to the RR/BAYC NFTs ….." The "related to" language is impermissibly vague and broad. As a result, this injunction could be read to prohibit Defendants from creating any non-infringing products or merchandise that would advance the protest and criticism of the RR/BAYC project. For example, this provision could be read to restrict Mr. Ripps from continuing or expanding his criticism on gordongoner.com, could restrict Mr. Ripps from talking about that prior criticism, or promoting that criticism on Twitter or elsewhere.

Section 1(b) of the Yuga's proposed injunction is similarly vague overbroad. It prohibits Defendants from using "any other Yuga Labs source identifier, alone or in combination with other words … to market, advertise, promote, or identify any good and/or service not produced, offered, or authorized by Yuga Labs." This provision could be read to restrict Defendants from referencing the Bored Ape Yacht Club at all in connection with any service not sponsored by Yuga Labs. For example, this provision could be read to preclude Mr. Ripps from using the words "Bored Ape Yacht Club"—or even "ape"—when promoting his criticism on gordongonner.com or any other criticism or artwork critiquing Yuga. It goes even further with its broad "source identifier" language—it would preclude Mr. Ripps from even saying "Yuga" when critiquing Yuga. This is overbroad restriction consistent with Yuga's stated goal of preventing Mr. Ripps from ever uttering the words "Bored Ape Yacht Club" again. *See* Trial Tr. [Muniz] 94:5-13. But it is wholly inconsistent with the First Amendment.

Section 1(d) similarly prohibits Defendants from "[r]egistering, owning, using, or trafficking any social media account, including but not limited to www.discord.com or www.twitter.com account(s), that … or uses and/or incorporates any portion of the BAYC Marks within its name …" This provision would prohibit Defendants from creating any social media account that includes even only a portion of a BAYC Mark

within its name.  For example, Defendants could not create a social media account with the name, "Online Bulletin for Ryder Ripps's Criticism of the Bored Ape Yacht Club."  But again, doing so is precisely the kind of critical activity that the First Amendment protects.

And Section 1(e) seeks to restrict Defendants from "[u]sing the infringing "RR/BAYC" and "APE MARKET" marks on social media platforms to facilitate the manufacture, circulation, sale, transfer, marketing, advertising, promoting, and/or renting of RR/BAYC NFTs or related goods or services."  This provision likewise could be read to restrict use of any goods or services "related" to RR/BAYC NFTs in any way.  This would wrongly preclude Defendants from discussing on social media artworks or writings that discuss the RR/BAYC project and its criticism of Yuga.  Once again, this is inconsistent with both the First Amendment and established law curtailing the scope of trademark injunctions.  See *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).

There is no reasonable basis the Yuga should be given an injunction that has these kinds of overbroad terms.  They do nothing to serve the purposes of the Lanham act and instead were drafted to realize Yuga's goal of taking away Defendants' "right to say 'Bored Ape Yacht Club.'"  Trial Tr. [Muniz] 94:12-13.

**Plaintiff's Response:**

Defendants' objection should be rejected because (1) Yuga Labs' proposed injunction is tailored to address the irreparable harm done to Yuga Labs and allow it to regain control of its brand and (2) Yuga Labs' proposed injunction does not seek to curtail Defendants' First Amendment rights.

**Yuga Labs' proposed injunction is properly tailored:**  Defendants do not object to sections 1(c), 1(f), or 1(g).  Defendants thus concede that these provisions are appropriate injunctive relief.

   The remainder of Yuga Labs' proposed injunction is likewise properly and narrowly tailored. An injunction must end the irreparable harm done to Yuga Labs' BAYC brand and allow it to regain control of the brand. This includes putting an end to Defendants' sales, promotion, and marketing of infringing NFTs; preventing Defendants from creating any future confusion by minting new infringing NFTs or improperly using Yuga Labs' Marks; alerting consumers that the RR/BAYC NFTs are a scam; and transferring the smart contract and other infringing domains and instrumentalities to Yuga Labs so it once again has sole control over its marks. It is unrebutted that transferring the smart contract to Yuga Labs would allow it to regain control over its brand. Solano Decl. (Dkt. 342) ¶ 79; Muniz Decl. (Dkt. 340) ¶ 22; Trial Tr. 100:6-14; Trial Tr. 136:9-18; Trial Tr. 138:6-139:11. The injunctive relief set forth in Yuga Labs' Proposed Findings of Fact and Conclusions of Law would accomplish this. *See* Dkt. 416 at 14-17, 20-23. Indeed, two other courts have entered similar injunctions against Defendants' business partners. *See* Judgment and Order for Permanent Injunction Against Ryan Hickman (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023); JTX-621 (Consent Judgment and Order for Permanent Injunction Against Thomas Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023)).

   **Yuga Labs' Proposed Injunction Does Not Seek To Curtail Defendants' First Amendment Rights:** Yuga Labs does not seek to "backdoor" a non-disparagement clause. Defendants intentionally misread sections 1(a) and 1(e) of Yuga Labs' proposed injunction. Section 1(a) prohibits Defendants from creating, marketing, etc., any products "related to the RR/BAYC NFTs." Likewise, section 1(e) prohibits Defendants from using RR/BAYC and Ape Market to create, market, etc. "RR/BAYC NFTs or related goods and services." Neither of these prohibit Defendants' so-called "protest and criticism" of Yuga Labs, as they contend. Rather, they are narrowly tailored to enjoin Defendants from creating or marketing their

1 infringing NFTs or further creating or marketing other infringing products associated
2 with the RR/BAYC NFTs.

3       Defendants also intentionally misread section 1(b), which is targeted at
4 prohibiting Defendants to from using any Yuga Labs source identifier to identify
5 goods not produced by Yuga Labs. Again, this is not aimed at stopping Defendants
6 from criticizing Yuga Labs, but merely from creating further infringing products.
7 Section 1(d) likewise is aimed at preventing Defendants from creating social media
8 accounts that could confuse consumers into thinking they are from Yuga Labs or
9 affiliated with Yuga Labs. Again, this is not intended to stifle Defendants' use of the
10 BAYC Marks to criticize Yuga Labs.

11       Yuga Labs' former CEO did not testify that Yuga Labs intends to silence
12 Defendants. Rather, the context of Ms. Muniz's testimony is clear that she was
13 speaking about Defendants' use of Yuga Labs' Bored Ape Yacht Club trademark to
14 promote products. Trial Tr. at 94:5-13. There is no debate that Yuga Labs is seeking
15 an injunction to stop Defendants' infringement of its marks. The terms of the
16 injunction that Yuga Labs contends is appropriate in this case are clear from its
17 proposed findings of fact and conclusions of law. Dkt. 416. Yuga Labs has not
18 sought to limit Defendants' criticisms of Yuga Labs through its proposed injunction.
19 What is also clear is that Defendants refuse to accept any reasonable injunctive relief,
20 even though the Court has already found that Yuga Labs is entitled to injunctive relief.
21 Dkt. 418-1.

22 **Defendants' Reply:**

23 Defendants object to Yuga's proposed injunctive relief in its entirety and
24 instead propose that if the Court enters an injunction (which it should not), it be
25 limited to reasonable terms. *See* Dkt. 417 ¶ 145. Yuga's citations to the decisions
26 other courts have held with regard to cases against Mr. Lehman (who settled with
27 Yuga) and Mr. Hickman (who had a default judgment entered against him) are
28

dissimilar to the posture in this case, not binding, and irrelevant and therefore cannot support its overly broad injunctive relief claim.

What is clear is that Yuga has long sought to silence Defendants and are attempting to do so through this overly broad injunctive relief proposal. *See* Trial Tr. [Muniz] 94:5-13 (expressing wish that Defendants never say "Bored Ape Yacht Club" ever again). As written, this broad injunctive relief clause would infringe on Defendants' rights to criticize Yuga's marks. Instead, this Court if it were to enter an injunction should tailor it to the two major issues identified in Yuga's complaint (1) the sale of RR/BAYC NFTs and (2) the use of rrbayc.com and apemarket.com.

Yuga's claim for the smart contract should be rejected because it might not be technically feasible and is futile. As such, this term runs a high risk of being set as a "trap" for Defendants to fall into as compliance might not be possible. Further, Yuga has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it. *See* Trial Tr. [Atalay] 134:11-20. An order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case. Further, it would be enforceable in court. Likewise, a prohibition from using the rrbayc.com and apemarket.com domains—both of which are inactive—would suffice and fit the scope of the injury found by the court in this case (subject to Defendants' right to appeal). Yuga's argument that an injunction that prevents Defendants from using the marks and domain names in commerce would be insufficient without the smart contract is speculative and wrongly assumes that Defendants would not comply with a court order. Defendants are aware that this Court has held that Yuga is entitled to some injunctive relief. But any such relief must be well-tailored and reasonable.

Case No. 2:22-cv-04355-JFW-JEM -9- DEFENDANTS' OBJECTIONS