Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Conclusion of Law No. IV.2** <br><br> Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Conclusion of Law No. IV.2**

2. Within fourteen (14) days after entry of this Order, Defendants shall:
   a. Transfer to Yuga Labs, including by facilitating the transfer of rights with any necessary third-party host website, registrar, or other entity, rrbayc.com, apemarket.com, the @ApeMarketplace Twitter account, and the RR/BAYC smart contract (0x2EE6AF0dFf3A1CE3F7E3414C52c48fd50d73691e); together with all codes, passwords, credentials, or other information necessary for Yuga Labs to fully and solely access and operate the same;
   b. If Defendants own any RR/BAYC NFT, they shall destroy (e.g., "burn") that NFT or provide it to Yuga Labs to burn;
   c. Except as provided in subsections (a) and (b) of this section, destroy any other infringing materials, including NFTs, articles, documents, software, promotional items, or advertisements in their possession or control using any BAYC Mark or any other mark confusingly similar with the BAYC Marks;
   d. To give practical effect to this Order, any third-party host website, registrar, or other entity related to any of the domains, social media account, or digital accounts subject to this Order shall, within fourteen (14) days of receipt of this Order, transfer or otherwise assign those subject domains, social media accounts, or digital accounts to Yuga Labs if Defendants have not already done so.

    e.    <u>Contact by e-mail, text, or other written form of communication all persons to whom Defendants gave, sold, issued, or distributed a RR/BAYC NFT, and provide each of those persons with solely a copy of this Order;</u>

    f.    <u>Airdrop to all RR/BAYC NFT holders a copy of this Order.</u>

**Defendants' Basis of Dispute:**

Like its other terms, these terms Yuga proposed injunction are impermissibly overbroad. Injunctive relief must be "tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). "An overbroad injunction is an abuse of discretion." *Id.* Here, the specific harm alleged is Defendants' use of Yuga's marks to sell products. *See* Dkt. 1 at ¶ 5 (complaint is about sales of RR/BAYC NFTs). Therefore, the injunction should be tailored to only that harm, and not the ancillary issues that impact Defendants' free speech rights.

Section 2 of Yuga's proposed injunction is overbroad because it seeks to backdoor a non-disparagement clause by seeking injunction terms that would also prevent Defendants from being able to criticize Yuga. As Yuga made clear at trial, its goal is to silence the Defendants:

> Q.    Yuga Labs has asked for an injunction that would prevent Mr. Ripps and Mr. Cahen from using any of those words in any way to promote anything; right?
>
> A.    They have taken our brand and stolen it. We want our brand out of their hands in every capacity.
>
> Q.    Do you want them never to say "Bored Ape Yacht Club" again?
>
> A.    ***They should not have the right to say "Bored Ape Yacht Club" again.*** They have stolen from us.

Trial Tr. [Muniz] 94:5-13 (emphasis added).

Yuga's proposed injunction includes terms that would allow Yuga to realize its wish to silence the Defendants.  Section 2(c) seeks to require Defendants to "destroy any other infringing materials, including NFTs, articles, documents, software, promotional items, or advertisements in their possession or control using any BAYC Mark or any other mark confusingly similar with the BAYC Marks."  This term could be read to force Defendants to destroy their social media posts that criticize the Bored Ape Yacht Club and Yuga's misconduct by name.  It would also force Defendants to destroy gordongoner.com, which Yuga does not allege infringes any Yuga mark.  It could also be read to force Defendants to never say "Bored Ape Yacht Club" again—just as Yuga testified at trial that it desires to do.  Trial Tr. [Muniz] 94:12-13.  There is no justification for this Court to enjoin Defendants lawful First Amendment activity in such a broad and sweeping manner.

Section 2 also contains terms (Sections 2(a), 2(b), 2(e), and 2(f)) that serve no purpose of addressing infringement and/or that are not even practically possible.  Yuga has included in Section 2(a) of its proposed injunction that Defendants transfer the RR/BAYC smart contract to Yuga.  But Yuga has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it.  Thus, if the Court elects to enter an injunction precluding the Defendants from making further RR/BAYC NFTs, transferring the contract to Yuga would serve no purpose.

Similarly, Section 2(b) would require Defendants to "destroy (e.g., "burn") that NFT or provide it to Yuga Labs to burn."  But transferring an NFT to a burn address does not actually "destroy" the NFT.  All it does is transfer the NFT to a digital wallet that is not owned or controlled by any person or entity.  The NFT even after being sent to a burn address continues to exist on the blockchain and is readily accessible to anyone that has internet access.  Thus, such an injunction term serves no propose.

Section 2(e) is impractical because it would require that Defendants contact in written communications all persons that commissioned RR/BAYC NFTs and provide them with a copy of the injunction order. Defendants do not have the contact information for all individuals that commissioned RR/BAYC NFTs and therefore do not have the ability to contact by written communication all persons that commissioned RR/BAYC NFTs.

Lastly, Section 2(f) is a term that serves no purpose. Section 2(f) would require Defendants to "airdrop" the Court's injunction order to all RR/BAYC NFT holders. But doing so would not ensure that those holders learn about the order, because most active cryptocurrency wallets regularly receive thousands of "airdrops" (including airdrops of potentially dangerous tokens that can comprise financial assets). Thus, RR/BAYC NFT holders would almost certainly ignore whatever has been unilaterally airdropped into their wallets and, thus, Section 2(f) would achieve nothing. Moreover, Yuga itself has the ability to issue such an "airdrop" to RR/BAYC holders (the addresses of whom are publicly known), and Yuga is better positioned than Defendants to airdrop whatever it likes, including the Court's injunction order, to all RR/BAYC NFT holders at any time it pleases.

**Plaintiff's Response:**

Defendants' objection should be rejected because (1) Yuga Labs' proposed injunction is tailored to address the irreparable harm done to Yuga Labs and allows it to regain control of its brand and (2) Yuga Labs' proposed injunction does not seek to curtail Defendants' First Amendment rights.

**Yuga Labs' Proposed Injunction Is Properly Tailored:** Defendants do not object to sections 2(c) or 2(d). Defendants thus concede that these provisions are appropriate injunctive relief.

The remainder of Yuga Labs' proposed injunction is likewise properly and narrowly tailored. An injunction must end the irreparable harm done to Yuga Labs'

BAYC brand and allow it to regain control of the brand. This includes putting an end to Defendants' sales, promotion, and marketing of infringing NFTs; preventing Defendants from creating any future confusion by minting new infringing NFTs or improperly using Yuga Labs' Marks; alerting consumers that the RR/BAYC NFTs are a scam; and transferring the smart contract and other infringing domains and instrumentalities to Yuga Labs so it once again has sole control over its marks. It is unrebutted that transferring the smart contract to Yuga Labs would allow it to regain control over its brand. The injunctive relief set forth in Yuga Labs' Proposed Findings of Fact and Conclusions of Law would accomplish this. *See* Dkt. 416 at 14-17, 20-23. Indeed, two other courts have entered similar injunctions against Defendants' business partners. *See* Judgment and Order for Permanent Injunction Against Ryan Hickman (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023); JTX-621 (Consent Judgment and Order for Permanent Injunction Against Thomas Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023)).

**Yuga Labs' Proposed Injunction Does Not Seek To Curtail Defendants' First Amendment Rights:** Yuga Labs does not seek to "silence" Defendants, but rather destroy any infringing materials. Defendants misinterpret section 2(c), which requires Defendants to "destroy any other infringing materials" in their possession. Criticism, such as a social media post saying "BAYC sucks" does not count as infringement, and thus it would not be covered by Section 2(c). And Defendants misrepresent section 2(e). While an NFT cannot technically be destroyed, burning that NFT will prevent it from ever being owned, bought, or sold again, mitigating the pervasive harm Defendants have caused by taking it out of circulation. Regarding section 2(f), Defendants furnish no admissible evidence that RR/BAYC NFT holders would "almost certainly ignore" any airdrop. Indeed, Yuga Labs is dubious that the

average NFT holders receives "thousands of airdrops." Finally, airdropping to NFT holders costs money, and as the infringers, Defendants should bear this burden.

Defendants predictably do not want to transfer the RR/BAYC contract to Yuga Labs because the smart contract is immutable (and so, they seem to argue, there is no point in ordering the transfer). The immutability of the RR/BAYC NFT contract is, however, the major reason why the contract should be transferred to Yuga Labs. Without transfer of the contract, the Defendants would forever have control over and a connection to Yuga Labs' BAYC Marks. *See* Solano Decl. (Dkt. 342) ¶ 79. Defendants have no basis for continuing to hold on to the instrumentalities of their bad faith infringement—namely the RR/BAYC smart contract used to manufacture and sell the infringing NFTs, the cybersquatting domains rrbayc.com and apemarket.com, and the @ApeMarketplace account used exclusively to promote RR/BAYC NFTs and Ape Market. Each of these instrumentalities should be under the control of Yuga Labs as the rightful owner of the BAYC Marks.

Defendants' contention that the smart contract indicates the source of the RR/BAYC NFTs as Mr. Ripps' wallet is misleading. The "ryder-ripps.eth" name did not appear on Etherscan until *after* minting, most if not all of, the infringing NFTs. *Compare* JTX-25, *with* JTX-36. Mr. Ripps can change the wallet name in the future, too. More directly and by contrast, though, the RR/BAYC contract will always say Bored Ape Yacht Club and BAYC – Mr. Ripps has no right to forever associate himself with Yuga Labs' trademarks. Transferring the contract away from Mr. Ripps is, therefore, one first step to breaking that connection. Moreover, Yuga Labs explained at trial how ownership of the smart contract will allow Yuga Labs to work with the NFT marketplaces to ensure that the human readable elements of the marketplace clearly indicate that RR/BAYC NFTs are not authentic BAYC NFTs. *See* Trial Tr. 136:9-18 ("But if Yuga Labs had control . . . we would have a much

1  greater flexibility in controlling how the collection is displayed in marketplaces,
2  including OpenSea."); *see also* Trial Tr. 100:6-14; Trial Tr. 138:6-139:11.

3       Yuga Labs' former CEO did not testify that Yuga Labs intends to silence
4  Defendants. Rather, the context of Ms. Muniz's testimony is clear that she was
5  speaking about Defendants' use of Yuga Labs' Bored Ape Yacht Club trademark to
6  promote products. Trial Tr. at 94:5-13. There is no debate that Yuga Labs is seeking
7  an injunction to stop Defendants' infringement of its marks. The terms of the
8  injunction that Yuga Labs contends is appropriate in this case are clear from its
9  proposed findings of fact and conclusions of law. Dkt. 416. Yuga Labs has not
10 sought to limit Defendants' criticisms of Yuga Labs through its proposed injunction.
11 What is also clear is that Defendants refuse to accept any reasonable injunctive relief,
12 even though the Court has already found that Yuga Labs is entitled to injunctive relief.
13 Dkt. 418-1.

14      **Defendants' Reply:**

15      Defendants object to Yuga's proposed injunctive relief in its entirety and
16 instead propose that if the Court enters an injunction (which it should not), it be
17 limited to reasonable terms. *See* Dkt. 417 ¶ 145. Yuga's citations to the decisions
18 other courts have held with regard to cases against Mr. Lehman (who settled with
19 Yuga) and Mr. Hickman (who had a default judgment entered against him) are
20 dissimilar to the posture in this case, not binding, and irrelevant and therefore cannot
21 support its overly broad injunctive relief claim.

22      What is clear is that Yuga has long sought to silence Defendants and are
23 attempting to do so through this overly broad injunctive relief proposal. *See* Trial Tr.
24 [Muniz] 94:5-13 (expressing wish that Defendants never say "Bored Ape Yacht Club"
25 ever again). As written, this broad injunctive relief clause would infringe on
26 Defendants' rights to criticize Yuga's marks. Instead, if this Court elects to enter an
27 injunction, it should be tailored to one that implicates two major issues identified in
28

Yuga's complaint (1) the sale of RR/BAYC NFTs and (2) the use of rrbayc.com and apemarket.com.

Yuga's claim for the smart contract should be rejected because its proposed relief might not be technically feasible and is futile. As such, this term runs a high risk of being set as a "trap" for Defendants to fall into as compliance might not be possible. Further, Yuga has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it. *See* Trial Tr. [Atalay] 134:11-20. An order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case. Further, it would be enforceable in court. Likewise, a prohibition from using the rrbayc.com and apemarket.com domains—both of which are inactive—would suffice and fit the scope of the injury found by the court in this case (subject to Defendants' right to appeal). Yuga's argument that an injunction that prevents Defendants from using the marks and domain names in commerce would be insufficient without the smart contract is speculative and wrongly assumes that Defendants would not comply with a court order.

Yuga also does not address Defendants' arguments that many of their terms including the air-drop term are practically impossible and would accomplish little. Yuga merely claims without evidence that these terms are possible and proportionate. Seeking functionally impossible but ultimately not very useful relief is an overarching theme to Yuga's proposed injunctive relief terms which are not intended to ameliorate the harms Yuga identified in its complaint, but instead to make compliance with an injunction as difficult as possible.