**Defendants' Disputed Post Trial Finding of Fact No. 3:**

During the course of trial, Plaintiff Yuga Labs, Inc. ("Yuga") did not cross-examine Mr. Ripps on any portion of his declaration and left the entirety of the declaration unchallenged. Trial Tr. [Ripps] 267:8-269:5.

**Plaintiff's Basis for Dispute:**

Yuga Labs did not leave Mr. Ripps' declaration "unchallenged." Evidence admitted at trial disproves the core of Mr. Ripps' testimony. One of the glaring instances where the evidence contradicts Mr. Ripps' testimony is when, in his trial declaration, Mr. Ripps testified that he "never reached a conclusion on what ApeMarket would actually be . . . ." Ripps Decl. (Dkt. 346) ¶ 178. However, at trial Mr. Cahen confirmed that ApeMarket was ready to launch within a matter of days. Trial Tr. at 247:10-12 ("Q: And there was a ready-to-go Ape Market by February – excuse me – by June 24, 2022? A: Among other things, yes[.]"). Another glaring contradiction is that Mr. Ripps testified that his "intention in making the RR/BAYC artwork was not to monetize Yuga Labs' brand." Ripps Decl. (Dkt. 346) ¶ 182. However, text messages entered into evidence demonstrated that Defendants intended to "make like a million dollars" off of their infringement. JTX-1574. Evidence further entered at trial depicted Mr. Ripps publicly bragging about the millions of dollars he made off of his use of Yuga Labs' marks. *See* Solano Decl. (Dkt. 342) ¶ 72 ("Based on my review of public Twitter posts produced in discovery, Mr. Ripps boasted that he made over $1.2 million on his scam, implying that no one could stop him from counterfeiting NFTs and harming the goodwill of the BAYC brand."). Mr. Ripps' associates also confirmed this financial motive. JTX-801.208 (Mr. Cahen: "priorities: getting RRBAYC to sell out by creating demand + getting BAYC and MAYC users to call our marketplace their new home [] and collecting royalties at a fraction of what the other big dogs are charging [] which will be considerable passive income if we strike the right balance"); JTX-1 at ¶ 11 ("I understood, based on more than a few

conversations with Defendants, that the Business Venture was expected to make money by selling RR/BAYC NFTs and by potentially generating transaction fees from the sale of NFTs on Ape Market."). Mr. Ripps can attempt to couch his lies in "sarcasm," but the ultimate result was confusion in the marketplace and a substantial payday for Defendants.

Moreover, at trial, Yuga Labs demonstrated that Mr. Ripps is an unreliable witness. During cross-examination, Mr. Ripps admitted to his dishonesty during discovery and his lies in prior declarations submitted under oath. Trial Tr. at 268:12-25; *see also* JTX-1541 (Jan. 17, 2023 Ripps verification stating that he has "produced all responsive documents that I have been able to locate after a reasonable search"); Dkt. 109-42 (Feb. 17, 2023 Ripps declaration stating that he has "re-investigated my platforms and taken reasonable efforts to search for additional material for collection"); Dkt. 158 (Mar. 21, 2023 Ripps declaration stating under penalty of perjury that he has "produced all relevant, nonprivileged documents"). Despite the repeated, under-oath, and Court-ordered assurances, that they had searched for and produced all relevant documents, Defendants withheld numerous documents (including their text messages with each other) until March 21, 2023 — after Yuga Labs had filed its motion for summary judgment. The wrongly withheld documents include communications with BAYC NFT holders and communications about Defendants' profit intent.

Yuga Labs' cross-examination demonstrated that Mr. Ripps lacks credibility as a witness. If Mr. Ripps lied before in multiple declarations under penalty of perjury, to evade his discovery obligations and hide incriminating evidence, it is reasonable to conclude that he lied to avoid the consequences of his infringement. Therefore, ***his entire declaration*** cannot be relied upon. Yuga Labs sufficiently challenged Mr. Ripps' declaration, and its contradictions by the evidentiary record show it is unreliable. It should not be accepted as fact.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement Regarding Objections (Dkt. 421)

Mr. Ripps's declaration was uncontested because Yuga elected to forego any substantive cross-examination of Mr. Ripps on *any* portion of Mr. Ripps's declaration. Trial Tr. [Ripps] 267:7-271:9. "Cross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004). Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that "principle means" of testing Mr. Ripps credibility weighs decisively in favor of accepting Mr. Ripps's declaration.

Yuga incorrectly argues that Mr. Ripps's declaration was challenged by other evidence in the trial record. Yuga did not show at trial that any of this other evidence in the trial record undermines Mr. Ripps's testimony. Having failed to challenge Mr. Ripps's testimony at trial, Yuga now seeks to take evidence, and testimony out of context and mischaracterize documents. This cannot remediate their election not to contest Mr. Ripps's credibility at trial.

Yuga incorrectly argues that Mr. Ripps's testimony that ApeMarket was in the ideation stage and that he had not decided on what ApeMarket would be was somehow contradicted by Mr. Cahen's testimony. Mr. Cahen repeatedly testified that ApeMarket was in the ideation stage. Trial Tr. [Cahen] 231:21-232:3; Cahen Decl. ¶¶ 258-259 (Dkt. 344). Other witness corroborated Mr. Ripps's testimony that he had not decided what ApeMarket would be. Trial Tr. [Hickman] 211:19-22.

Yuga also incorrectly argues that the trial record contradicts Mr. Ripps's declaration regarding his intent in creating the RR/BAYC collection. Ripps Decl. ¶¶ 182-184 (Dkt. 346) (uncontested). Significant evidence in the record corroborates Mr. Ripps's statements that the project was artistic. Defendants' communications about the RR/BAYC project confirm that their intent. In private

group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic purpose, their intent to criticize Yuga, and their intent that social media platforms be used educationally. JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.  Defendants' online discussion also confirms their intent.  In those discussions, Defendants discussed what they believed to be inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.  The correspondence that Defendants received shows that their goals were successful.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX-2590; JTX-2592; JTX-2595; JTX-2596; JTX-2599.

Yuga incorrectly argues that this evidence regarding Mr. Ripps's intent has been refuted citing JTX-1574 to suggest that Mr. Ripps privately said that he intended to make a million dollars from the RR/BAYC artwork.  But in reality, the document contains no such statement from Mr. Ripps.  Mr. Ripps only said. Mr. Ripps was laughing at a joke made by Mr. Cahen.   And Mr. Ripps in the same exchange later stated that he needs "to get a front end" in response to more jokes from Mr. Cahen.  *Id*.

Yuga also cites the unreliable Declaration of Mr. Solano. Mr. Solano is not credible given the many false and misleading statements contained in his declaration and repetitive impeachment at trial.  Trial Tr. [Solano] 48:15-49:4; 38:14-16; 38:17-19; 32:19-33:11; 34:9-19. Mr. Solano and Yuga rely on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  *Id* at 40:3-14, and thus it does not undermine Mr. Ripps's intent.

Yuga then incorrectly argues that Mr. Ripps's statement about his intent is refuted by comments from other members of the RR/BAYC project. But these statements show no such thing. Yuga's cites Mr. Cahen's statement in JTX-801.208 to undermine intent. Mr. Cahen explained the whole point of broad exposure through the RR/BAYC collection was "spreading and magnifying criticism of Yuga." Cahen Decl. (Dkt. 344) ¶ 98. Mr. Cahen's private communications in the same exhibit (JTX-801) confirm that the RR/BAYC collection was created for artistic criticism. JTX-801.00010; 00012-13; 00196)

Yuga also cites to Mr. Lehman's declaration to suggest that Defendants considered the RR/BAYC collection to be a "business venture." Defendants never used the term "business venture" to describe the RR/BAYC project. In fact, the only place where the term appears is in Mr. Lehman's declaration, which Mr. Lehman felt compelled to sign. This fact was not considered by Mr. Solano when he used introduced the term into trial. Trial Tr. [Solano] 37:20-22; 40:3-14. Yuga's attorneys, not Mr. Lehman or the Defendants, coined the term "business venture" and therefore it cannot be used as evidence of intent to confuse.

Lastly, Yuga argues that it somehow challenged Mr. Ripps's trial declaration through its cross-examination of Mr. Ripps concerning his earlier January 17, 2023, verification. But Yuga's cross-examination did not result in any impeachment or inconsistency. Mr. Ripps testified that he believed he produced all documents relating to the creation of RR/BAYC. Trial Tr. [Ripps] 268:5-11. Mr. Ripps further explained that he produced everything despite possible harm from it. *Id.* at 270:3-18. Mr. Ripps further testified that Yuga had sought sanctions multiple times based on Yuga's false accusations of discovery misconduct, and that this Court denied all of Yuga's baseless motions. Trial Tr. [Ripps] 269:21-270:2. Mr. Ripps's trial testimony is no surprise given that the verification stated "[I] produced all responsive documents that I have been able to locate after a reasonable search" and further stated "I also understand that discovery obligations are continuing, and I

will produce any additional responsive materials or information to the extent any are found based on a reasonable investigation. ***I reserve the right to make changes or additions to any of these answers or document productions*** if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available." Dkt. 109-33 (emphasis added). Mr. Ripps fulfilled his discovery obligations and upheld his verification by providing all the responsive material he located after a reasonable search to the best of his knowledge.

The context and accurate content of the evidence Yuga cites shows that the trial record does not contradict any portion of Mr. Ripps's declaration. Yuga had an opportunity to fully vet its false allegations at trial through cross-examination of Mr. Ripps but elected not to do so. Mr. Ripps's testimony was therefore unchallenged.

Ultimately, there is no evidence of intent to confuse. In fact, the trial record confirmed that ***no one*** is aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct."). Instead the trial record, including Mr. Ripps's uncontested declaration that was not contradicted or subject to cross-examination, shows an intent to create art.

**Plaintiff's Reply:**

Mr. Ripps' trial declaration is neither unchallenged nor uncontested. Yuga Labs' cross-examination of Mr. Ripps and the evidence admitted at trial demonstrate that Mr. Ripps lied to protect his profitable scam. That Yuga Labs opted not to give Mr. Ripps a bully pulpit to extrapolate on his already inaccurate testimony does not alter the fact that his declaration is unreliable.

The Court should reject Defendants' responses because, as discussed herein, (1) evidence admitted at trial discredits Mr. Ripps' trial declaration and (2) Defendants' attempts to pass their infringement off as a joke are unavailing. Additionally, as addressed more directly in relevant sections: (1) Defendants' attempts to pass their infringement off as a joke are unavailing (*infra* ¶ 4), (2) Defendants fail to rebut Mr. Ripps' profit motives as evidenced in his text messages (*infra* ¶ 4), (3) Ape Market was operational and ready to launch (*infra* ¶ 116), (4) Defendants were not motivated by artistic intent (*infra* ¶ 10), (5) Defendants' unreliable communications with third-parties do not negate evidence of actual confusion or the likelihood of post-sale confusion (*infra* ¶ 11), (6) there is ample evidence of actual confusion in the record (*infra* ¶ 32), (7) Defendants fail to impeach Mr. Solano's accurate testimony (*infra* ¶ 8), (8) Mr. Lehman's declaration is truthful (*infra* at ¶ 58), (9) confused consumers are unlikely to admit that they have fallen for Defendants' scam (*infra* ¶ 11), and (10) Mr. Ripps' excuses for his discovery violation are not credible (*infra* ¶ 4).

**Evidence Admitted At Trial Demonstrates That Mr. Ripps' Declaration Is Not Reliable:** Mr. Ripps' testimony conflicts with significant documentary and testimonial evidence admitted at trial and is therefore unreliable. Defendants' argument that the Court must accept Mr. Ripps' testimony as true violates the basic judicial tenet that a finder of fact shall weigh the evidence and assess the credibility of witnesses. *Murray v. U.S.*, No. C-04-3707 SC, 2006 WL 1708220, at *2 (N.D. Cal. June 19, 2006) ("In bench trials, it is the judge's duty to weigh the evidence, assess the credibility of witnesses, and decide questions of fact and issues.").

**Defendants' Infringement Was Not A Joke:** Defendants' attempts to laugh off Mr. Ripps' profit motive are unavailing. Even a cursory review of the text messages contained in JTX-1574 demonstrate that this was not a sarcastic conversation. To begin, Mr. Ripps said "lolol" **before** Mr. Cahen told him that he would "make like a million dollars" by airdropping NFTs to RR/BAYC purchasers.

1  Indeed, Mr. Cahen explicitly states that he "honestly" believes that Mr. Ripps stood
2  to make a million dollars. *Id.* This was no joke, rather it was Mr. Cahen's genuine
3  business proposition. Mr. Ripps' reply is likewise serious, stating that Defendants
4  "need to get a front end for this shit" in order to facilitate that payday. *Id.* Mr.
5  Cahen then responded that they "already have ape market" to further their business
6  payday. Mr. Cahen's admission on Ape Market further undermines Mr. Ripps'
7  declaration and Defendants' response to this objection, as well as Defendants'
8  repeated refrain that Ape Market was not ready to launch. *Id.* Other text messages
9  confirm Defendants' profit motive. In one such exchange Mr. Cahen tells Mr.
10 Ripps that he thinks Mr. Ripps is "gonna make like millions" followed up by "no
11 cap." JTX-1586. No cap is colloquial for "no joke," which directly rebuts
12 Defendants' self-serving humor narrative. Mr. Ripps responded with "ok cool"
13 indicating that he was pleased to be making so much money. *Id.* There is no
14 indication that these text messages were meant to be jokes, because they were not.
15 And even if Defendants found what they were doing funny, that does not excuse
16 their intentional use of the BAYC Marks in a manner likely to confuse consumers.