**Defendants' Disputed Post Trial Finding of Fact No. 4:**

The Court accepts the substance of Mr. Ripps's unchallenged declaration as true, because Yuga elected to not challenge any aspect of it at trial. Trial Tr. [Ripps] 267:8-269:5.

**Plaintiff's Basis for Dispute:**

Yuga Labs did not leave Mr. Ripps' declaration "unchallenged." Evidence admitted at trial disproves the core of Mr. Ripps' testimony. Mr. Ripps' repetition of falsehoods and repeatedly rejected immaterial claims, as Mr. Ripps does in his declaration, does not make them true or material to the Court's remaining decisions.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement Regarding Objections (Dkt. 421).

The Court should accept Mr. Ripps's declaration because Mr. Ripps's declaration was uncontested because Yuga elected to forego any substantive cross-examination of Mr. Ripps on any portion of his declaration. *See* Trial Tr. [Ripps] 267:7-271:9. "Cross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004). Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that "principle means" of testing Mr. Ripps credibility weighs decisively in favor of accepting Mr. Ripps's declaration. Simply calling the true claims in his declaration "falsehoods and repeatedly rejected immaterial claims", does not make it so. Yuga had a chance to expose anything they disagree with at trial through cross-examination. But now they are left to complain after the fact.

Yuga incorrectly argues that Mr. Ripps's declaration was challenged by other evidence at trial. As shown above, no evidence at trial undermines Mr. Ripps's testimony. This is precisely why Yuga's failure to cross-examine Mr. Ripps is fatal to their new post-trial challenges to his testimony.

If Yuga is arguing that this evidence was through the minimal, non-substantive cross-examination it conducted, it fails. Yuga argues that it somehow challenged Mr. Ripps's trial declaration through its cross-examination of Mr. Ripps concerning his earlier January 17, 2023, verification. But Yuga's cross-examination did not result in any impeachment or inconsistency:

> Q. You produced those text messages, that you withheld throughout this case, including when you testified that you had no responsive documents on January 17, 2023; correct?
>
> A. I think that we – the question was all communications that relate to the creation of RR/BAYC, which we felt was very much in the group chat that was called RR/BAYC. And we produced that, which you guys have extensively relied on.

Trial Tr. [Ripps] 268:5-11. Mr. Ripps further explained:

> Q. And, Mr. Ripps, the text messages that you produced in this case include the RR/BAYC chat; right?
>
> A. Yes. We produced everything that we could, despite the fact that Yuga produced nothing.
>
> Q. Exhibit Number JTX-801 is the RR/BAYC – on of the RR/BAYC chats that you produced; right?
>
> A. I don't have it on the screen, but I see you holding them, and I see them –
>
> Q. Do you see it now?
>
> A. Yes. We produced hundreds of thousands possibly of messages that all were between the four people involved in the final state of the project and basically everything to do with the development of this project.
>
> Q. Did you believe, in good faith, that you had given Yuga everything that had to do with the development of this project?

A. Yes, I did.

Trial Tr. [Ripps] 270:3-18. Mr. Ripps further testified that Yuga had sought sanctions multiple times based on Yuga's false accusations of discovery misconduct, and that this Court denied all of Yuga's baseless motions. *Id.* at 269:21-270:2. Mr. Ripps's trial testimony is no surprise given that the verification stated "[I] produced all responsive documents that I have been able to locate after a reasonable search" and further stated "I also understand that discovery obligations are continuing, and I will produce any additional responsive materials or information to the extent any are found based on a reasonable investigation. ***I reserve the right to make changes or additions to any of these answers or document productions*** if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available." Dkt. 109-33 (emphasis added Mr. Ripps fulfilled his discovery obligations and upheld his verification by providing all the responsive material he located after a reasonable search to the best of his knowledge.

The context and accurate content of the evidence Yuga cites shows that the trial record does not contradict any portion of Mr. Ripps's declaration. Yuga had an opportunity to fully vet its false allegations at trial through cross-examination of Mr. Ripps but instead elected not to do so. The reliability of Mr. Ripps's testimony was therefore unchallenged.

**Plaintiff's Reply:**

Defendants again ask the Court to relinquish its role as finder or fact in assessing the credibility of witnesses and the weight of evidence. *See Murray, 2006 WL 1708220, at *2*. This attempt is unavailing in light of significant evidence demonstrating that Mr. Ripps was chronically dishonest throughout this litigation.

Defendants' responses lack merit. As discussed herein, (1) Defendants fail to

rebut Mr. Ripps' profit motives as evidenced in his text messages and (2) Mr. Ripps' excuses for his discovery violation are not credible. Additionally, as addressed more directly in relevant sections, (1) evidence admitted at trial adequately discredits Mr. Ripps' trial declaration (*supra* ¶ 3, *infra* ¶ 18).

**Defendants' Internal Discussions Confirm Their Profit Motive:** Yuga Labs is not simply calling Defendants' claims "falsehoods and repeatedly rejected immaterial claims" as they state. For example, there is significant evidence confirming their profit motive. Defendants' public statements represented what they needed to say to market their product. Any scam requires an appearance of legitimacy. Like most online influencers, Defendants' social media pages contain organic posts mixed in with their marketing to obfuscate their commercial motives. Defendants' public comments about their artistic goal (to ensure they "look really sympathetic to people" if caught, in the words of their partner (JTX-918.00036)), contradict their internal discussions that overwhelmingly focus on a business venture to sell RR/BAYC NFTs and launch Ape Market, their profit motive, and riding on the coattails of the BAYC brand for their own unjust enrichment. *See, e.g.*, JTX-1 (Lehman Decl.) ¶¶ 10-13 (Defendants "expected the Business Venture to make money"); JTX-801.144 ("One thing we can do to stimulate the rsvp completing is to tease apemarket.com"); JTX-801.185 (Mr. Cahen: "Goal: mint out the remainder of the collection + incentivize people to use the marketplace, specifically the BAYC original side"); *id.* (Mr. Cahen: "More royalties for us . . . More work for sure, but much higher likelihood of generating more royalties and users"); *id.* at 208 (Mr. Cahen: "we need a very delicious value proposition [] to bring in users . . . but not so low that we dont make anything"); *id.* (Mr. Cahen: "priorities: getting RRBAYC to sell out by creating demand + getting BAYC and MAYC users to call our marketplace their new home [] and collecting royalties at a fraction of what the other big dogs are charging [] which will be considerable passive income if we strike the right balance"); JTX-801.237 (Mr. Lehman: "I'm

just concerned about launching something with low prospect for recurring revenue"; Mr. Cahen: "I agree"); JTX-803 at 66-67; JTX-1574 (Mr. Cahen to Mr. Ripps: "Ur gonna make so much on this shit LMFAO"; "It will sell out within 48 hours I think [] You'll make like a million dollars [] Straight up"); JTX-1586 (Mr. Cahen to Mr. Ripps: "I t[h]ink you are gonna make millions too man"); Hickman Depo. Designations (Dkt. 394) at 238:12-40 (discussing profit motive and desire to charge royalties). Defendants knew they were stealing from Yuga Labs. That Mr. Hickman leaned on Defendants' self-serving artistic narrative does not negate the fact that he stood to make at least hundreds of thousands of dollars off of Defendants' infringement. *See* Trial Tr. at 220:3-221:5. Defendants' may have attempted to make themselves look more sympathetic, but the evidence discussed above makes it clear that they sought to profit through their infringement of the BAYC Marks.

**Mr. Ripps' Excuses For Withholding Relevant Evidence Are Not Persuasive:** Defendants claim that Mr. Ripps' withholding of relevant evidence was excused by the fact that he eventually produced certain documents. This argument ignores the fact that the initial withholding forced Yuga Labs to engage in expensive motion practice to seek documents that should have been produced in the first place and ignores the multiple declarations signed by Mr. Ripps stating that he had fulfilled his discovery obligations. It was ***never*** credible for Mr. Ripps to testify that a text message exchange about the money that Mr. Ripps stood to make off of the sales of RR/BAYC NFTs did not "have anything to do with the RR/BAYC project." Trial Tr. at 268:17-21; JTX-1574. This text exchange discussed airdropping NFTs to purchasers, monetizing Defendants' scam, the existence of Ape Market as a "front end" marketplace, and the development of a bot to announce the sale of Defendants' infringing NFTs. *Id.* There is no reasonable basis to believe that this conversation would not pertain to the RR/BAYC NFTs. Mr. Ripps' testimony claiming otherwise is a lie. Furthermore, his withholding of

these texts until after a *series* of requests for relief before Judge McDermott underscore Defendants' bad faith litigation approach throughout this case. Defendants further point to the fact that Mr. Ripps swore that he had conducted a "reasonable search" and reserved the right to supplement his responses, but a reasonable search would have included a search of his correspondence with his business associate and co-defendant Mr. Cahen. Text messages directly between the two defendants about their infringing acts should have been among the first documents produced, not the last. Defendants' attempts to explain away these discovery violations and the lie in Mr. Ripps' declaration are unavailing.