**Defendants' Disputed Post Trial Finding of Fact No. 9:**

The evidence presented at trial establishes that the RR/BAYC project was created as a form of satire intended to protest NFTs linked to what defendants believed were antisemitic or racist injury. Trial Tr. [Defendants' witnesses] 204:21-270:23; Ripps Decl. (uncontested); Cahen Decl.; Hickman Decl.

**Plaintiff's Basis for Dispute:**

In granting Yuga Labs' motion for summary judgment, this Court held that Defendants intended to deceive consumers:

> When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose:  that is, that the public will be deceived." . . . In this case, Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks.  Because Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks, and in the absence of contrary evidence, the Court concludes that Defendants used the BAYC marks in an effort to confuse consumers. . . . In addition, the Court concludes that Defendants intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding.  For example, Defendants listed the RR/BAYC NFTs on rrbayc.com under the very same Ape ID number associated with BAYC NFTs, despite having their very own unique and different ID numbers.

Order on Motion for Summary Judgment (Dkt. 225) ("SJ Order") at 12 (citations omitted).  Similarly, the Court already determined that "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag." *Id.* at 16.  Indeed, the accused actions "are all commercial activities designed to sell infringing products, not expressive artistic speech protected by the First Amendment." *Id.*  Defendants' infringement is thus not art.  Instead, "Defendants' use of the BAYC marks is explicitly misleading." *Id.* at 17.  Finally, the Court determined that Defendants' use of the rrbayc.com and apemarket.com domains was "with a bad faith intent to profit." *Id.* at 15.  Despite these holdings,

Defendants have continually disregarded this order and compounded this litigation by relitigating these settled issues.  Nevertheless, the evidence admitted at trial proves that these settled issues should remain settled—Defendants were not motivated by a desire to create satire, they were motivated by greed.

The evidence presented at trial establishes that, from the outset, this was no satirical project.  It was a business venture where the Defendants were interested in making "like a million dollars."  JTX-1574; *see also* JTX-1586 (Mr. Cahen to Mr. Ripps:  "I tbink [*sic*] you are gonna make millions too man"); JTX-801.239 (Mr. Cahen to Mr. Lehman: "I think we will make alot of money tbh"; "Potentially a lot"); JTX 1; JTX 621.  Defendants did not create their infringing NFTs "as a form of satire."  Defendants could have called their NFT collection something other than "Bored Ape Yacht Club" with the symbol "BAYC" immutably in the metadata for the NFT smart contract, but they chose not to.  Atalay Decl. ¶¶ 3-6; JTX-600; JTX-1146.  Defendants could have used different images or overlaid some commentary on the images they did use, but they chose not to.  *See, e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"); JTX-801.196; JTX-696.1.

The evidence presented at trial also proves that Defendants knew they were infringing and creating confusion, as they acted contrary to their attorneys' advice.  JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"); *see also* JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189; JTX-801.279; JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued); JTX-44.00002; Hickman Depo. Designations (Dkt. 394) at

143:15-144:16; Cahen Depo. Designations (Dkt. 395) at 59:7-59:16, at 148:10-13;
Dkt. 416 at ¶ 7.  Instead of making changes, such as those recommended by their
lawyer or Mr. Lehman, Defendants continued to use Yuga Labs' BAYC Marks to
promote and sell the RR/BAYC NFTs.  Solano Decl. ¶ 70; *see also* Ripps Decl. ¶
55 ("In my experience, when designing logos and imagery for brands, every choice
is intentional.").

Worse still, throughout this litigation and even after the summary judgment
order confirming their infringement, Defendants continued to market their
RR/BAYC NFTs and Ape Market and harm Yuga Labs.  On April 4, 2023, Mr.
Cahen tweeted an announcement that "RR/BAYC is trading on OpenSea Pro."
JTX-1315; *see also* JTX-1317.  Mr. Cahen also continued to retweet Twitter posts
sharing the resale of RR/BAYC NFTs (*see* JTX-1613; JTX-1614; JTX-1615), as
well as retweet Defendants' own tweets from the @ApeMarketplace Twitter
account.  JTX-1048; Solano Decl. (Dkt. 342) ¶¶ 74-76.  As recently as the day
before trial, the @ApeMarketplace Twitter account continued to promote the
infringing rrbayc.com and link to a marketplace on which RR/BAYC NFTs were
still available for sale.  Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-
59:19.  In sum, Defendants repeatedly demonstrated their intent to infringe and
knowledge of a likelihood of confusion.  *See, e.g.*, Dkt. 416 at ¶ 7.

The Court should not find satire to be the reason Defendants created and
marketed their commercially infringing RR/BAYC NFTs.  Trial Tr. at 17:20-18:14
and 63:11-23 ("It does not use satire and protest.  It is the exact same artwork and
the exact same logo").

**Defendants' Response**:

Defendants expressly reserve and reassert all responses made in the parties'
Joint Statement Regarding Objections (Dkt. 421).

Yuga has incorrectly relies on the law of the case doctrine.  The "law of the
case doctrine does not apply to pretrial rulings such as motions for summary

judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).  In *Sienze v Kutz*, the Court held that although *aspects* of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019).  This case is just like *Sienze*: the summary judgment ruling on intent applies only the issue of infringement and is not adequate support for findings on intent relevant to the remaining issues of the case.

The evidence at trial showed that Defendants are not intentional infringers and did not intend to suggest that RR/BAYC was related to Yuga in any way. Defendants' communications about the RR/BAYC project confirm that their intent was to criticize, not confuse.  In private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Defendants discussed their artistic purpose, intent that it would spread criticism of Yuga, and intent that social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct.  Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way.  For example, the rrbayc.com website, where most RR/BAYC commissions and alleged profits occurred, (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project.  Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Collectors using rrbayc.com were also required to acknowledge the artistic purpose of the project before they could commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on this requirement so the

artistic purpose of the work would be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Defendants' online discussions confirm their intent.  Defendants discussed inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Defendants also created the RR/BAYC collection based on a good faith belief that Yuga had authorized the creation of projects like RR/BAYC.  When Defendants launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  Before suing Defendants over the RR/BAYC project, Yuga had not taken steps to stop these third-party projects from using Yuga's marks.  Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344).  There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the OpenSea.  Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted that Defendants, and Mr. Hickman would have probably seen these collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project.  Trial Tr. [Muniz] 77:19-23. 26.  There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22; *See* JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Mr. Hickman, a member of the RR/BAYC project team, owned a BAYC NFT at the time of the project along with the attendant IP rights.  Hickman Decl. ¶¶ 19-22 (Dkt. 345).  BAYC NFTs had Terms & Conditions, and the intent behind the Terms & Conditions for BAYC NFTs was to allow people to be able to commercialize their NFTs.  Trial Tr. [Solano] 25:1-4.  Yuga encouraged the public to use the BAYC artwork and intellectual property.  For example, Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP

rights and that Yuga has none of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673.  Ms. Muniz confirmed that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright.  Trial Tr. [Muniz] 72:19-22.

The evidence that Yuga cites does not rebut this overwhelming evidence of Defendants' intent to protest and criticize.  Yuga repeatedly cites to various pages of JTX-801 to argue that Defendants were aware of the Yuga's alleged confusion.  But those pages are internal discussion about the design of the ApeMarket website to ensure that users of apemarket.com were not confused by the website design.  Yuga even cross-examined Mr. Hickman about these communications and received the same explanation.  Trial Tr. [Hickman] 212:22-24.

Yuga similarly takes out of context exhibits such as JTX-44.00002 to incorrectly argue that that Defendants were knowingly causing confusion.  In JTX-44.00002, Mr. Hickman stated that "people believe the tokenId should match the RR ID.  that is where they get confused."  This statement is not discussing confusion regarding the source of origin for RR/BAYC NFTs.  Instead, it is discussing how the RR/BAYC collection used a different numbering system that BAYC NFTs, and that consumers expected the numbers match as a shorthand manner of cataloguing the digital pointers contained within the RR/BAYC NFTs.  That is, due to the different numbering system, some consumers were confused as to which RR/BAYC NFT they received but they understood very well that they received an NFT created by Mr. Ripps that protests and criticizes Yuga.

Yuga also alleges that Etherscan's creation of a token tracker is evidence of Defendants' intent confuse.  Defendants do not control the Etherscan website or how Etherscan chooses to display the RR/BAYC NFT collection.  Yuga's own witness, Mr. Atalay, himself admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or by

checking the associated smart contract address because it would be a weak way to distinguish NFTs.  Trial Tr. [Atalay] 135:2-25; 133:12-23.

Yuga also incorrectly asserts that Defendants continued to market RR/BAYC NFTs even after the summary judgment order in this case.  The exhibits Yuga cites (JTX-1315, JTX-1317, JTX-1613, JTX-1614, JTX-1615) are tweets that Mr. Cahen made reporting news on what is occurring in relation to the RR/BAYC collection: specifically, that certain third-party marketplaces were trading the NFTs despite Yuga's efforts to silence Defendants' criticism and public reports of certain transactions occurring in connection with the RR/BAYC collection.  As Mr. Cahen explained in his declaration, "Overall, I would consider myself a very active community member in the cryptocurrency space, which is something that I take pride in.  A lot of the work I do takes place over social media."  Cahen Decl. ¶ 50 (Dkt. 344).  Mr. Cahen further explained, "I often use my social media accounts to report on crypto news or other topics I find noteworthy to help spread awareness."  Cahen Decl. ¶ 52 (Dkt. 344).  These tweets are not "marketing" activities but simply report news/crypto events in relation to the RR/BAYC collection.

Yuga incorrectly alleges that Defendants continued to market ApeMarket after entry of summary judgment in this case.  This argument makes no sense because Defendants never released ApeMarket.  The exhibit that Yuga cites (JTX-1048) is dated January 18, 2023, which is before the entry of summary judgment

The evidence that Yuga has cherry-picked and mischaracterized are not sufficient to rebut the overwhelming evidence showing Defendants' intent to protest and criticize Yuga through satire.

**Plaintiff's Reply:**

Defendants' response is unavailing because, as discussed herein, the response seeks to relitigate issues already adjudicated by the Court.  Additionally, as addressed more directly in relevant sections, (1) the record shows that Defendants intended to confuse consumers (*infra* ¶ 19), (2) Defendants' commercial

infringement was not protected "art" (*infra* ¶ 10), (3) Defendants intended to profit off of their infringement (*infra* ¶ 13), (4) Defendants did not take steps to avoid confusion (*infra* ¶ 33), (5) Defendants' "disclaimers" did not dispel likelihood of confusion (*infra* ¶ 20), (6) Yuga Labs did not license Defendants' infringement (*infra* ¶ 115), (7) Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks (*infra* ¶ 10), and (8) other alleged infringers do not negate Defendants' infringement (*infra* ¶ 24), and (9) Defendants continued to infringe after their conduct was found infringing (*infra* ¶ 10).

**The Court's Summary Judgment Order Establishes Liability:**

Defendants' response improperly disputes facts already adjudicated in the Court's Summary Judgment Order (Dkt. 225).  As discussed above, in that order, the Court held that Defendants intended to deceive consumers "with a bad faith intent to profit."  *Id.* at 15.  That order establishes the matters adjudicated therein for purposes of this case.  Fed. R. Civ. P. 56(g) (district courts partially adjudicating case on a summary judgment motion may "enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case"); *accord Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011).

Defendants did not move the Court to reconsider its holdings.  Nevertheless, Defendants refuse to accept the Court's order, unnecessarily burdening the Court and Yuga Labs by attempting to relitigate these issues at trial and in post-trial filings as if the Court's order does not exist.  Defendants' tactics are inconsistent with the very purpose of a partial summary judgment order, which is "intended to avoid a ***useless trial of facts and issues over which there was really never any controversy*** and which would tend to confuse and complicate a lawsuit."  *Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131, 1133 (C.D. Cal. 2004).