**Defendants' Disputed Post Trial Finding of Fact No. 10:**

In May 2022, Ryder Ripps and Jeremy Cahen collaborated on what they intended to be a satirical parody NFT collection called the "Ryder Ripps Bored Ape Yacht Club" ("RR/BAYC"). Ripps Decl. ¶¶ 87-94 (uncontested); Cahen Decl. ¶¶ 97-103; Hickman Decl. ¶¶ 62-66.

**Plaintiff's Basis for Dispute:**

For the reasons discussed in response to Defendants' Disputed Post Trial Finding of Fact No. 9, *supra*, Defendants' Finding of Fact No. 10 is wrong. The evidence shows an intent to infringe and profit from that infringement.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement Regarding Objections (Dkt. 421). Yuga reiterates its response to Paragraph 9 above, specifically.

As explained above, Yuga has incorrectly relies on the law of the case doctrine. The "law of the case doctrine does not apply to pretrial rulings ***such as motions for summary judgment***." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014). For example, in *Sienze v Kutz*, the Court held that although ***aspects*** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019). This case is just like *Sienze*: the summary judgment ruling on intent applies only the issue of infringement and is not adequate support on intent generally or as applied to availability of disgorgement as a remedy, apportionment, and an exceptional case analysis.

Moreover, the evidence at trial as listed above, showed that Defendants are not intentional infringers and did not intend to suggest that RR/BAYC was related to Yuga in any way. Mr. Ripps's and Mr. Cahen's contemporaneous

communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize not confuse.  For example, in private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intentions for the project.  Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way.  For example, the rrbayc.com website, where most RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project.  Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Collectors using the rrbayc.com website were also required acknowledge the artistic purpose of the project before they could commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these requirement and additional steps so that the artistic purpose of the work would be clear to participants.  *See* Dkt. 401 at 21.

Defendants' online discussion also confirms their intent.  In those discussions, Mr. Ripps and Mr. Cahen discussed their views about NFTs and Yuga.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Defendants also created the RR/BAYC collection based on a good faith belief that Yuga had given authorization for the creation of projects like RR/BAYC.  When Defendants launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  Before suing Defendants over the RR/BAYC project, Yuga had not taken steps to stop these

third-party projects from using Yuga's marks. Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344). There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; 78:7-21; 80:3-13. Ms. Muniz admitted that Defendants, and Mr. Hickman would have probably seen these collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project. *Id.* at 77:19-23. 26. There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. *Id.* at 81:18-22. For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks. *See*, *e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Mr. Hickman, a member of the RR/BAYC project team, was a holder of a BAYC NFT containing the asserted marks and having received IP rights associated with the Bored Ape Yacht Club. Hickman Decl. ¶¶ 19-22 (Dkt. 345). BAYC NFTs had Terms & Conditions, and the intent behind the Terms & Conditions for BAYC NFTs was to allow people to be able to commercialize their NFTs. Trial Tr. [Solano] 25:1-4. Yuga encouraged the public to use the BAYC artwork and intellectual property. Yuga's CEO Nicole Muniz publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673. Ms. Muniz confirmed that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright. Trial Tr. [Muniz] 72:19-22.

Yuga does not rebut this overwhelming evidence of Defendants' intent to protest and criticize because Yuga relies on mischaracterizing and taking out of context evidence. Yuga repeatedly cites to various pages of JTX-801 to argue that Defendants were aware of the Yuga's alleged confusion. But those pages are

internal discussion about the design of the ApeMarket website to ensure that users of apemarket.com were not confused by the website design. Yuga even cross-examined Mr. Hickman about these communications and received the same explanation: "This is our attempt to make it as clear as possible. We are having discussion on how to make sure it was very clear for users." Trial Tr. [Hickman] 212:22-24.

For reasons stated above, Yuga's arguments surrounding JTX-44.00002 are improper and out of content.

Yuga also alleges that Etherscan's creation of a token tracker is evidence of Defendants' intent to cause confusion. But Defendants do not control the Etherscan website or how Etherscan chooses to display the RR/BAYC NFT collection. Moreover, Yuga's own witness, Mr. Atalay, himself has admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or by checking the associated smart contract address. Trial Tr. [Atalay] 135:2-25. Mr. Atalay explained that using token names to distinguish NFTs "would be a fairly weak way to do so because often those things are mutable. They can be changed after the fact. Also, there's no guarantee of uniqueness." Trial Tr. [Atalay] 133:12-23.

Any evidence of a profit intent subordinate to the art does not show an intent to deceive. Mr. Ripps is an artist by *trade*, he generally expects to make money at his job. Also the profits sustained the art and were a motive, just not the primary motive. Cahen Decl. ¶ 156; 173 (Dkt. 344).

No witness is aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344). Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

The evidence that Yuga has cherry-picked and mischaracterized are not sufficient to rebut the overwhelming evidence showing Defendants' intent to protest and criticize Yuga.

**Plaintiff's Reply:**

Defendants' sale and promotion of RR/BAYC NFTs was intended to cause confusion among consumers in order to gain profit.

Defendants' response is unavailing for the same reasons discussed *supra* ¶ 9, specifically because (1) the response seeks to relitigate issues already adjudicated by the Court, (2) the record shows that Defendants intended to confuse consumers, (3) Defendants intended to profit off of their infringement, (4) Defendants did not take steps to avoid confusion, (5) Defendants' "disclaimers" did not dispel likelihood of confusion, (6) Yuga Labs did not license Defendants' infringement, and (7) other alleged infringers do not negate Defendants' infringement.

Further, (1) as the Court has already found, Defendants' infringement was not art, and (2) Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks.

**Defendants' Infringement Was Not An Art Project:** Defendants' contention that their infringing NFTs were an art project is not supported by the evidence. To the contrary, the relevant evidence demonstrates that Defendants intended to use Yuga Labs' BAYC Marks to profit through their commercial promotion and sale of RR/BAYC NFTs. *See, e.g.*, JTX-1; JTX-1574; JTX-1586; JTX-801.239; JTX-801.192; JTX-801.196; JTX-696.1; JTX-801.371. Indeed, Defendants' infringement could not have been in good faith because, even after the Court found their infringement was likely to cause confusion and was not art protected by *Rogers* and the First Amendment, Defendants intentionally continued to infringe on Yuga Labs' Marks and promote RR/BAYC NFTs. Solano Decl. (Dkt. 342) ¶ 74. Even now, Defendants' @ApeMarketplace Twitter account continues to promote rrbayc.com and link to a marketplace on which RR/BAYC NFTs are still available for sale. Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19. And as discussed above, Mr. Cahen continued to tweet and retweet posts about RR/BAYC NFTs trading on NFT marketplaces as well as their

resales. Defendants' attempt to characterize the posts as "reporting news" is merely pretext for all of their marketing tactics to promote and sell the RR/BAYC NFTs. This was not news. Mr. Cahen's posts were retweets of bots posting about RR/BAYC NFT sales, which provide no other content, summary, or analysis that could reasonably constitute news reporting. *See, e.g.*, JTX 1613; JTX-1614; JTX-1615. Nor does Mr. Cahen's tweet merely stating "RR/BAYC is trading on OpenSea Pro" amount to anything more than convenient advertising. JTX-1315. Defendants' response fails to raise any credible reason to believe that their infringement was motivated by anything other than money and greed.

**Mr. Hickman's Purported BAYC NFT Ownership Did Not License Him to Infringe:** Additionally, the record disproves that Defendants actually believed Hickman's purported ownership of a BAYC NFT was a justification for their actions, because even as of June 9, 2022, Mr. Ripps ***did not know*** that one of his partners allegedly owned a BAYC NFT and expressed his desire to have access to one:

> maybe we buy a mutant [i.e., Yuga Labs Mutant Ape Yacht Club NFT]
> or some dogs [i.e., Yuga Labs Bored Ape Kennel Club NFT]
> and put them on the marketplace
> so people trust it?
> i don't think buying a BAYC makes sense
> unless it's for a deal..
> [third party] sold his ape
> s
> sucks
> that would have been perfect marketing
> wish i spoke to him before he sold

JTX-801.332. Defendants' contrived defense—and their false claim that they contemporaneously believed they had a license, despite the lack of a single

1 communication to that effect—has no merit and further highlights their lack of
2 credibility.