**Defendants' Disputed Post Trial Finding of Fact No. 13:**

Mr. Ripps and Mr. Cahen intended RR/BAYC as a form of protest designed to educate people on the nature of non-fungible tokens ("NFTs"), and what they saw as problematic content in Yuga's "Bored Ape Yacht Club" ("BAYC") NFT collection. Ripps Decl. ¶¶ 87-94 (uncontested); Cahen Decl. ¶¶ 97-103; Hickman Decl. ¶¶ 62-66; Trial Tr. [Cahen] 229:9-13.

**Plaintiff's Basis for Dispute:**

The Court's findings at summary judgment and the evidence at trial confirms that Defendants' infringing and commercial NFTs were not created and marketed as a protest or for educational purposes. Trial Tr. at 17:20-18:14 and 63:11-23 ("It does not use satire and protest. It is the exact same artwork and the exact same logo"); *supra* ¶ 9. They were created as part of the business venture, including as an enticement to launch Ape Market. JTX-1; JTX-696; JTX-801.144 (Mr. Cahen: "One thing we can do to stimulate the rsvp is to tease apemarket.com"); JTX-696 ("Listing requires holding RR/BAYC").

Defendants' infringement was motivated by a desire to profit off of Yuga Labs' marks. Defendants' public statements represented what they needed to say to market their product. Any scam requires an appearance of legitimacy. Like most online influencers, Defendants' social media pages contained organic posts mixed in with their marketing to obfuscate their commercial motives. For example, despite Mr. Ripps' promise to donate the royalties earned from sales of RR/BAYC NFTs to charity, no proceeds were donated, and Defendants' kept the profits for themselves. *See* Solano Decl. (Dkt. 342) ¶ 28 (citing JTX-1045). Moreover, Defendants' public comments about their artistic goal (to ensure they "look really sympathetic to people" if caught, (JTX-918.00036)), contradict their internal discussions that overwhelmingly focus on a business venture to sell RR/BAYC NFTs and launch Ape Market, their profit motive, and riding on the coattails of the BAYC brand for their own unjust enrichment. *See, e.g.*, JTX-1 (Lehman Decl.)

¶¶ 10-13 (Defendants "expected the Business Venture to make money"); JTX-801.144 ("One thing we can do to stimulate the rsvp completing is to tease apemarket.com"); JTX-801.185 (Mr. Cahen: "Goal: mint out the remainder of the collection + incentivize people to use the marketplace, specifically the BAYC original side"); *id.* (Mr. Cahen: "More royalties for us . . . More work for sure, but much higher likelihood of generating more royalties and users"); *id.* at 208 (Mr. Cahen: "we need a very delicious value proposition [] to bring in users . . . but not so low that we dont make anything"); *id.* (Mr. Cahen: "priorities: getting RRBAYC to sell out by creating demand + getting BAYC and MAYC users to call our marketplace their new home [] and collecting royalties at a fraction of what the other big dogs are charging [] which will be considerable passive income if we strike the right balance"); JTX-801.237 (Mr. Lehman: "I'm just concerned about launching something with low prospect for recurring revenue"; Mr. Cahen: "I agree"); JTX-803 at 66-67; JTX-1574 (Mr. Cahen to Mr. Ripps: "Ur gonna make so much on this shit LMFAO"; "It will sell out within 48 hours I think [] You'll make like a million dollars [] Straight up"); JTX-1586 (Mr. Cahen to Mr. Ripps: "I t[h]ink you are gonna make millions too man"); Hickman Depo. Designations (Dkt. 394) at 238:12-40 (discussing profit motive and desire to charge royalties). Defendants knew they were stealing from Yuga Labs for profit.

**Defendants' Response**:

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement Regarding Objections (Dkt. 421).

Yuga has incorrectly relies on the law of the case doctrine. It does not apply to "pretrial rulings such as motions for summary judgment." *Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986)*; *Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014)*. In *Sienze v Kutz*, the Court held that although aspects of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See No. 1:17-CV-0736-AWI-SAB,*

2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019). This case is like *Sienze*: the summary judgment ruling on intent applies only the issue of infringement and not the other issues in the case.

The evidence at trial showed that Defendants are not intentional infringers and did not intend to suggest that RR/BAYC was related to Yuga in any way. Defendants' communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize rather than to confuse. In private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Defendants discussed their artistic, educational and critical intent. Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. For example, rrbayc.com through where most RR/BAYC commissions and alleged profits occurred (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were also required acknowledge the artistic purpose of the project before they could to commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these requirement and additional steps so that the artistic purpose of the work would be clear to participants. *See* Dkt. 401 at 21.

Defendants' public statements also confirms their intent. In those statements, Defendants discuss what they believed to be inappropriate messaging in Yuga's imagery and educate on NFTs. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Defendants also created the RR/BAYC collection with a good faith belief that Yuga had authorized the creation of projects like RR/BAYC. At the time Defendants launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. Before suing Defendants over the RR/BAYC project, Yuga had not taken steps to stop these third-party projects from using Yuga's marks. Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344). There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; 78:7-21; 80:3-13. Ms. Muniz admitted that Defendants, and Mr. Hickman would have probably seen these collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project. Trial Tr. [Muniz] 77:19-23. 26. There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22; *See* JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Mr. Hickman, a member of the RR/BAYC project team, was a holder of a BAYC NFT owned a BAYC NFT at the time of the project with its IP rights attached. Hickman Decl. ¶¶ 19-22 (Dkt. 345). BAYC NFTs had Terms & Conditions, and the intent behind the Terms & Conditions for BAYC NFTs was to allow people to be able to commercialize their NFTs. Trial Tr. [Solano] 25:1-4. Yuga encouraged the public to use the BAYC artwork and intellectual property. Yuga's CEO Nicole Muniz publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673. Ms. Muniz confirmed that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright. Trial Tr. [Muniz] 72:19-22.

Yuga cites does not rebut this overwhelming evidence of Defendants' intent to protest and criticize. Yuga repeatedly cites to various pages of JTX-801 to argue that Defendants were aware of the Yuga's alleged confusion. But those pages are internal discussion about the design of the ApeMarket website to ensure that users of apemarket.com were not confused by the website design. Yuga even cross-examined Mr. Hickman about these communications and received the same explanation: "This is our attempt to make it as clear as possible. We are having discussion on how to make sure it was very clear for users." Trial Tr. [Hickman] 212:22-24.

The evidence that Yuga has cherry-picked and mischaracterized are not sufficient to rebut the overwhelming evidence showing Defendants' intent to protest and criticize Yuga. Yuga did not show that Defendants knew they behaving wrongfully. The only uncontradicted evidence actually shows the opposite.

**Plaintiff's Reply:**

Defendants' sale and promotion of RR/BAYC NFTs was intended to cause confusion among consumers in order to gain profit. As the Court has already found, Defendants' infringement is not art.

Defendants' response is unavailing because (1) the response seeks to relitigate issues already adjudicated by the Court (*supra* ¶ 9), (2) the record shows that Defendants intended to confuse consumers (*infra* ¶ 19), (3) Defendants' commercial infringement was not protected "art" (*supra* ¶ 10) (4) Defendants intended to profit off of their infringement (*supra* ¶ 13), (5) Defendants did not take steps to avoid confusion (*infra* ¶ 33), (6) Defendants' "disclaimers" did not dispel likelihood of confusion (*infra* ¶ 20), (7) Yuga Labs did not license Defendants' infringement (*infra* ¶ 115), (8) Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks (*infra* ¶ 10), and (9) other alleged infringers do not negate Defendants' infringement (*infra* ¶ 24).

Additionally, the Court should reject Defendants' arguments because (1) Defendants knew that their infringement would result in confusion and (2) Mr. Hickman lied about his financial motivation and is not credible.

**Defendants Knew That Their Infringement Would Result In Confusion:** Defendants were repeatedly warned that their infringing NFTs would cause confusion. Their refusal to heed these warnings demonstrate their intent to infringe and cause confusion. Indeed, significant evidence shows that Defendants knew they were infringing and creating confusion. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"); JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated. A lot of people don't have the technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker). Instead of making changes, such

as those recommended by their lawyer or Mr. Lehman, Defendants continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

**Mr. Hickman Lied About His Financial Motivation And Is Not Credible:** Defendants cite to Mr. Hickman's testimony, but Mr. Hickman is not credible. *See supra* ¶ 7. Mr. Hickman testified at trial that he did not want to profit off the RR/BAYC NFTs, Trial Tr. at 209:21-23, but contrarily testified at deposition that he was financially motivated to develop the software that facilitated Defendants' infringement. Hickman Depo. Designations (Dkt. 394) at 128:25-129:6 ("In this reference I'm specifically stating that I'm a developer. I make software. I charge to make software. I have a record, a history, of charging to make software. My financial arrangement for this whole thing is about a software developer being compensated for making software.").