**Defendants' Disputed Post Trial Finding of Fact No. 16:**

<u>The RR/BAYC NFTs were effectively a "receipt that says I committed to this protest that points to the same public [image] that a lot of different collections point to including Yuga Labs." Trial Tr. [Hickman] 222:18-21</u>.

**Plaintiff's Basis for Dispute:**

An NFT is more than a "receipt," and therefore this contention should be rejected. In granting Yuga Labs' Motion for Summary Judgment, the Court held that "viewing the NFTs as ownership receipts treats the NFTs as mere written instructions while ignoring their documented commercial value." SJ Order (Dkt. 225) at 7. And the evidence introduced at trial also establishes that Defendants' definition of an NFT is too narrow. Mr. Solano explained that NFTs "are units of data stored on a blockchain that are created to transfer ownership of either physical things or digital media—here digital images of cartoon apes. The term 'NFT' commonly refers to both the token stored on the blockchain and the digital image with which it is associated." Solano Decl. (Dkt. 342) ¶ 2 n.1. Similarly, in *Hermès* the court held that "the title 'MetaBirkins' should be understood to refer to both the NFT and the digital image with which it is associated." *Hermès Int'l. v. Rothschild, No. 22-CV-384-JSR, 2023 WL 1458126, at *6 (S.D.N.Y. Feb. 3, 2023)*. Mr. Atalay also testified that there is "probably more that you could say than that . . ." in reference to Defendants' limited definition. Trial Tr. at 127:9-13. He went on to explain that NFTs include metadata and other data that is not metadata but may be on the blockchain. *Id.* 128:8-24. Therefore, the RR/BAYC NFTs consist of more than simply a "receipt."

Defendants' repeated reference to the RR/BAYC NFTs as a "protest" also flies in the face of the significant evidence that Defendants sought to profit from their infringement. *See* JTX-1 at ¶ 11 ("I understood, based on more than a few conversations with Defendants, that the Business Venture was expected to make money by selling RR/BAYC NFTs and by potentially generating transaction fees

1  from the sale of NFTs on Ape Market."); JTX-1574 (Text message from Mr. Cahen
2  to Mr. Ripps stating that he will "make like a million dollars" off of his
3  infringement); JTX-1586 (Mr. Cahen to Mr. Ripps: "I tbink you are gonna make
4  millions too man"); JTX-801.239 (Mr. Cahen to Mr. Lehman: "I think we will
5  make alot of money tbh"; "Potentially a lot"). And the Court has already found that
6  "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a
7  counterfeit handbag." SJ Order (Dkt. 225) at 16. The RR/BAYC NFTs are
8  infringing products created to generate profit through the use of Yuga Labs' BAYC
9  Marks. They are not a mere receipt, they are not a protest, and they are not art. *See*
10 SJ Order at 16.

**Defendants' Response:**

12  Defendants expressly reserve and reassert all responses made in the parties'
13 Joint Statement Regarding Objections (Dkt. 421).

14  Yuga has incorrectly relies on the law of the case doctrine to prove that an
15 NFT is more than a receipt showing provenance. The "law of the case doctrine
16 does not apply to pretrial rulings such as motions for summary judgment." *Shouse
17 v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076,
18 1088 (9th Cir. 2014). In *Sienze v Kutz*, the Court held that although aspects of an
19 issue were decided at summary judgment for one purpose, the summary judgment
20 order did resolve the issue generally. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL
21 1332184 at *3 (E.D. Cal. Mar. 25, 2019). This case is just like *Sienze*: the summary
22 judgment ruling the nature of NFT applies only the issue of infringement and is not
23 adequate support on intent generally or as applied to the remaining issues.

24  Yuga's argues that an NFT is inconsistent with the record. Mr. Atalay was
25 asked to explain to the Court what an NFT is, and he confirmed it is essentially a
26 certificate of ownership. Trial Tr. [Atalay] 127:9-16. Mr. Atalay's testimony, and
27 the fact than an NFT is simply a certificate of ownership and does not include

associated public images readily accessible and usable by anyone with internet, was further corroborated by Mr. Hickman's trial testimony:

> THE COURT: *When you are selling defendants' NFTs, you are selling Yuga's images.*
>
> THE WITNESS: *No. We are selling the record.*
>
> THE COURT: Okay. But the record points to and displays those images.
>
> THE WITNESS: So the images are public. They are available for anybody to navigate to on the internet.
>
> THE COURT: Right.
>
> THE WITNESS: *We are selling a receipt that says I committed to this protest* that points to the same public [images] that a lot of different collections point to including Yuga labs pointing to the same resource.

Trial Tr. [Hickman] 222:10-21 (emphasis added).

The only two engineers that testified during trial provided the Court with the same substantive testimony—that an NFT is a certificate of ownership and does not include the public images that it points to.

Yuga attempts to rebut this evidence with the Declaration of Greg Solano. But Mr. Solano is not credible given the many false and misleading statements, and repetitive impeachment contained in his declaration. Trial Tr. [Solano] 48:15-49:4; 32:19-33:11; 34:9-19. Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words. *Id.* 40:3-14. Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial

Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19). Yuga and Mr. Solano's reliance on Mr. Lehman's statements should not be credited.

The trial record establishes that Defendants' intent behind the RR/BAYC collection was to protest and criticize Yuga. Defendants communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize not confuse. In private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic critical and education intents. Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. For example, the rrbayc.com website where most RR/BAYC commissions and alleged profits occurred (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were also required acknowledge the artistic purpose of the project before they could commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on this requirement. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement ultimately included, if it had a negative impact on usability? … A. … Ryder wanted it and so he had the final call.").

Defendants' public statements associated with RR/BAYC, confirm their intent. Defendants publicly criticized Yuga and educated on the nature of NFTs.

Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Defendants also created the RR/BAYC collection based on a good faith belief that Yuga had given authorization for the creation of projects like RR/BAYC. At the time Mr. Ripps and Mr. Cahen launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. Before suing Mr. Ripps and Mr. Cahen over the RR/BAYC project, Yuga had not taken steps to stop these third-party projects from using Yuga's marks. Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344). There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted that Mr. Ripps, Mr. Cahen, and Mr. Hickman would have probably seen these collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project. Trial Tr. [Muniz] 77:19-23. 26. There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22; *See*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Moreover, Mr. Hickman, a member of the RR/BAYC project team, was a holder of a BAYC NFT containing the asserted marks and having received IP rights associated with the Bored Ape Yacht Club. Ryan Hickman, who collaborated with Mr. Ripps and Mr. Cahen on the RR/BAYC project, owned a BAYC NFT at the time of the project. Hickman Decl. ¶¶ 19-22 (Dkt. 345). BAYC NFTs had Terms & Conditions, and the intent behind the Terms & Conditions for BAYC NFTs was to allow people to be able to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs. We can agree on that; right? A. Yes. That is covered in the terms."). Yuga encouraged the public to use the BAYC artwork and to be

creative with BAYC's intellectual property.  For example, Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673.  Ms. Muniz confirmed that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright.  Trial Tr. [Muniz] 72:19-22.

**Plaintiff's Reply:**

Defendants' response is largely inapposite.  The Court's summary judgment order has already determined the fact of what constitutes an NFT to establish Defendants' liability.  The summary judgment order also found Defendants' infringement to be commercial, not protest or art.  Rather than confront the Court's ruling, Defendants engage in collateral disputes to obfuscate the issues.  These responses should be rejected and again highlight that Defendants' litigation tactics make this an exceptional case.

As discussed *supra* ¶ 14, Defendants' response lacks merit.  Specifically: (1) the Court's summary judgment order already ruled on basic facts establishing Defendants' liability (*supra* ¶ 3), and in support of that holding, found Defendants' definition of an NFT too narrow, (2) Defendants fail to impeach Mr. Solano's accurate testimony (*supra* ¶ 8), and (3) Defendants mischaracterize the evidence presented at trial proving what an NFT encompasses (*supra* ¶ 14).

Defendants' additional arguments do not directly address this issue, but in any event they are rebutted elsewhere: (1) the record shows that Defendants intended to confuse consumers (*infra* ¶ 19), (2) Defendants' commercial infringement was not protected "art" (*supra* ¶ 10), (3) Defendants intended to profit off of their infringement (*supra* ¶ 13), (4) Defendants did not take steps to avoid confusion (*infra* ¶ 33), (5) Defendants' "disclaimers" did not dispel likelihood of confusion (*infra* ¶ 20), (6) Yuga Labs did not license Defendants' infringement (*infra* ¶ 115), and Mr. Hickman did not have (or convey to Defendants) the right to

infringe Yuga Labs' BAYC Marks (*supra* ¶ 10), and (7) other alleged infringers do not negate Defendants' infringement (*infra* ¶ 24).

Defendants claim that they could create an exact copy of Yuga Labs' well-known BAYC NFTs and market and sell that copy for a profit is not credible.