**Defendants' Disputed Post Trial Finding of Fact No. 17:**

<u>The evidence presented at trial establishes that defendants did not intend to infringe Yuga's trademarks or create confusion regarding the origin of the RR/BAYC NFTs. Trial Tr. [Defendants' witnesses] 204:21-270:23; Ripps Decl. (uncontested); Cahen Decl.; Hickman Decl.</u>

**Plaintiff's Basis for Dispute:**

The evidence in this case establishes that Defendants intentionally infringed and caused confusion. *See supra* ¶ 9. This is demonstrated, in part by the fact that Defendants did not take steps to avoid confusing consumers. On the contrary Defendants deliberately designed and marketed their infringing NFTs to confuse consumers. Defendants could have called their NFT collection something other than "Bored Ape Yacht Club" with the symbol "BAYC" ***immutably*** in the metadata for the NFT smart contract, but they chose not to. Atalay Decl. ¶¶ 3-6; JTX-600; JTX-1146. Defendants could have used different images or overlaid some commentary on the images they did use, but they chose not to. *See, e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"); JTX-801.196 (Mr. Lehman demonstrating what an overlay might look like and recommending not to "in the marketing show screenshots like the ones [Mr. Hickman] showed" "[b]ecause it is too confusing to the 'average joe'"); JTX-696.1 (tweet showing screenshot of Ape Market). Defendants could have attacked Yuga Labs in countless non-infringing ways. But they did not. Instead, they used Yuga Labs' marks, commercially, in the way that would make Defendants the most money by selling counterfeit NFTs that confused consumers. *See* O'Laughlin Decl. (Dkt. 341).

Furthermore, Mr. Ripps represented that by owning an RR/BAYC NFT, a consumer would own commercial rights in Yuga Labs' underlying artwork—a representation that was not only false, but further misleading because owners of genuine BAYC NFTs do own certain commercial rights in the underlying images.

1  Muniz Decl. (Dkt. 340) ¶ 13; JTX-1037; JTX-857; Solano Decl. (Dkt. 342)¶ 25 n.2.
2  Adding to this confusion, Mr. Ripps connected an RR/BAYC NFT to his Twitter
3  account and used a feature on Twitter that displayed Yuga Labs' artwork as his
4  profile picture with a hexagon border, signaling that Twitter had "verified" his
5  ownership of the NFT and misleadingly suggesting his ownership of a BAYC NFT.
6  Muniz Decl. (Dkt. 340) ¶ 12.  This confused some viewers on Twitter.  *Id.* ¶ 12;
7  JTX-1556; JTX-524; JTX-525; Solano Decl. (Dkt. 342) ¶ 63; JTX-709; JTX-710.
8  This caused further confusion as RR/BAYC NFT holders used the NFTs as their
9  profile pictures as well.  *See, e.g.*, JTX-522, JTX-523.  Beyond their confusing
10 promotion on Twitter, Defendants promoted their infringing collection on platforms
11 such as OpenSea and Foundation, on which the collection appeared almost identical
12 to Yuga Labs' genuine BAYC collection.  JTX-28; JTX-29; JTX-683; JTX-719.  In
13 sum, Defendants repeatedly demonstrated their intent to infringe and knowledge of
14 a likelihood of confusion.  *See, e.g.*, Dkt. 416 at ¶¶ 5-7.

15 **Defendants' Response:**

16 Defendants expressly reserve and reassert all responses made in the parties'
17 Joint Statement Regarding Objections (Dkt. 421) and all responses made in
18 Paragraph 9.

19 The "law of the case doctrine does not apply to pretrial rulings such as
20 motions for summary judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir.
21 1986); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).  In *Sienze v*
22 *Kutz*, the Court held that although aspects of an issue were decided at summary
23 judgment for one purpose, the summary judgment order did resolve the issue
24 generally or as to other topics.  *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL
25 1332184 at *3 (E.D. Cal. Mar. 25, 2019).  This case is like *Sienze*: the summary
26 judgment ruling on intent applies only the issue of infringement and is not adequate
27 support on intent generally or as applied to availability of disgorgement as a
28 remedy, apportionment, and an exceptional case analysis.

      The evidence shows that Defendants are not intentional infringers and did not intend to suggest that RR/BAYC was related to Yuga in any way. Defendants' communications about the RR/BAYC project confirm that their intent was criticize rather not confuse. In private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic purpose of the project, their intention that it would spread criticism of Yuga, and their intention that social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct. Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

      Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were required to acknowledge the artistic purpose of the project before they could commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on this requirement so that the artistic purpose of the work would be clear to participants. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

      Defendants' public statements about RR/BAYC, confirm their intent. In those discussions, Defendants discussed inappropriate messaging in Yuga's imagery and educated on NFTs. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Defendants also created the RR/BAYC collection based on a good faith belief that Yuga authorized the creation of projects like RR/BAYC. When Defendants launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. Before suing Defendants over the RR/BAYC project, Yuga had not stopped these third-party projects from using Yuga's marks. Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344). There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on OpenSea. Trial Tr. [Muniz] 77:19-23; 78:7-21; 80:3-13. Ms. Muniz admitted that Defendants, and Mr. Hickman would have probably seen these collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project. Trial Tr. [Muniz] 77:19-23-26. There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22 *See*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Mr. Hickman, a member of the RR/BAYC project team, holds a BAYC NFT containing the asserted marks received IP rights associated with the Bored Ape Yacht Club. Hickman Decl. ¶¶ 19-22 (Dkt. 345). BAYC NFTs had Terms & Conditions, and the intent behind the Terms & Conditions for BAYC NFTs was to allow people to be able to commercialize their NFTs. Trial Tr. [Solano] 25:1-4. Yuga encouraged the public to use the BAYC artwork and intellectual property. For example, Yuga's CEO Nicole Muniz publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673. Ms. Muniz confirmed that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright. Trial Tr. [Muniz] 72:19-22.

Yuga cites does not rebut this overwhelming evidence of Defendants' intent to protest and criticize. Yuga repeatedly cites to various pages of JTX-801 to argue that Defendants were aware of the Yuga's alleged confusion. But those pages are internal discussion about the design of the ApeMarket website to ensure that users of apemarket.com were not confused by the website design. Yuga even cross-examined Mr. Hickman about these communications and received the same explanation. Trial Tr. [Hickman] 212:22-24.

Yuga also alleges that Etherscan's creation of a token tracker is evidence of Defendants' intent to cause confusion. But Defendants do not control the Etherscan website or how Etherscan chooses to display the RR/BAYC NFT collection. Moreover, Yuga's own witness, Mr. Atalay, himself has admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or by checking the associated smart contract address and it would be a weak way to check uniqueness. Trial Tr. [Atalay] 135:2-25; 133:12-23.

**Plaintiff's Reply:**

As the Court's summary judgment order explicitly held, Defendants' sale and promotion of their infringing RR/BAYC NFTs was intended to cause confusion among consumers in order to gain profit. Defendants' attempt to disregard the Court's order is unavailing.

Defendants' response lacks merit. Specifically: (1) the response seeks to relitigate issues already adjudicated by the Court (*supra* ¶ 9), (2) the record shows that Defendants intended to confuse consumers (*infra* ¶ 19), (3) Defendants' commercial infringement was not protected "art" (*supra* ¶ 10), (4) Defendants intended to profit off of their infringement (*supra* ¶ 13), (5) Defendants did not take steps to avoid confusion (*infra* ¶ 33), (6) Defendants' "disclaimers" did not dispel likelihood of confusion (*infra* ¶ 20), (7) Yuga Labs did not license Defendants' infringement (*infra* ¶ 115), and Mr. Hickman did not have (or convey to

Defendants) the right to infringe Yuga Labs' BAYC Marks (*supra* ¶ 10), and (8) other alleged infringers do not negate Defendants' infringement (*infra* ¶ 24).

Additionally, Defendants' intent is shown by their use of the Ape Market NFT marketplace to promote RR/BAYC, regardless of whether the marketplace was ever released. Defendants created the @ApeMarketplace Twitter account to promote the Ape Market marketplace and their infringing RR/BAYC NFTs. The Tweets from the account confirm that Defendants used @ApeMarketplace to promote Ape Market. One such Tweet on June 20 asks, "Are you ready for ApeMarket.com, anon?" and another on June 13 teases the release of Ape Market stating "Get Ready" alongside a screenshot of Ape Market. JTX-696. This purely commercial endeavor highlights Defendants' intent to profit, not criticize or make art. And Mr. Cahen lied at trial when, under oath, he stated that he did not "plan to stimulate the sales of RR/BAYC NFTs by teasing the future release of ApeMarket." Trial Tr. at 234:15-18. Mr. Cahen tweeted from @ApeMarketplace a link to reserve an RR/BAYC on multiple occasions and on June 2 he tweeted that "[l]isting requires holding RR/BAYC." JTX-696. Defendants' own internal communications confirm the lie. On June 1 Mr. Cahen stated, "my goal for today is to create an announcement that will create hype and volume, we want to mint out the remainder of that collection." JTX-801.221. On that same day Mr. Cahen tweeted from @ApeMarketplace a screenshot of Ape Market with an image of an RR/BAYC and a link to reserve an RR/BAYC. JTX-696. This was a direct attempt to use the prospect of Ape Market to promote Defendants' infringing NFTs. Defendants' claim that Ape Market, @ApeMarketplace, and RR/BAYC are not connected is obviously false. The Tweets in JTX-696 repeatedly show the look, functionality, and intent of Ape Market and the infringing RR/BAYC NFTs within Ape Market.