**Defendants' Disputed Post Trial Finding of Fact No. 19:**

Mr. Ripps and Mr. Cahen took steps to make clear to collectors and to the public that RR/BAYC was intended as a protest art project. Ripps Decl. ¶¶ 158-176 (uncontested); Cahen Decl. ¶¶ 145-155; Dkt. 197-1 ¶ 230.

**Plaintiff's Basis for Dispute:**

Defendants did not take steps to "make clear" to the public that "RR/BAYC was intended as a protest art project." To the contrary, Defendants took many steps to ensure that the public was and would remain confused.

First, Defendants named their NFT collection "Bored Ape Yacht Club" with the symbol "BAYC" immutably in the metadata for the NFT smart contract, when they could have named it anything else. Atalay Decl. ¶¶ 3-6; JTX-600; JTX-1146.

Second, Defendants could have used, but chose not to use, different images or overlaid some commentary on the images they did use. *See e.g.* JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"); JTX-801.196; JTX-696.1.

Third, Defendants prominently and without commentary used Yuga Labs' BAYC Marks in their marketing efforts. JTX-28; JTX-29; JTX-683; JTX-719; JTX-696. This use on Twitter and secondary marketplaces, such as Foundation and OpenSea, was likely to and intended to cause confusion. JTX-721; SJ Order (Dkt. 225) at 13.

Fourth, Mr. Ripps took further steps to confuse the public. For example, Mr. Ripps represented that by owning an RR/BAYC NFT, a consumer would own commercial rights in Yuga Labs' underlying artwork—a representation that was not only false, but further misleading because owners of genuine BAYC NFTs do own certain commercial rights in the underlying images. Muniz Decl. (Dkt. 340) ¶ 13; JTX-1037; JTX-857; Solano Decl. (Dkt. 342) ¶ 25 n.2. Adding to this confusion, Mr. Ripps connected an RR/BAYC NFT to his Twitter account and used a feature on Twitter that displayed Yuga Labs' artwork as his profile picture with a hexagon

border, signaling that Twitter had "verified" his ownership of the NFT and misleadingly suggesting his ownership of a BAYC NFT. Muniz Decl. (Dkt. 340) ¶ 12. This confused some viewers on Twitter. Muniz Decl. (Dkt. 340) ¶ 12; JTX-1556; JTX-524; JTX-525; Solano Decl. (Dkt. 342) ¶ 63; JTX-709; JTX-710. This caused further confusion as RR/BAYC NFT holders used the NFTs as their profile pictures as well. *See, e.g.*, JTX-522, JTX-523.

Fifth, it is not credible that Defendants were not trying to confuse the public when throughout this litigation and even after the summary judgment order confirming their infringement, Defendants continued to market their RR/BAYC NFTs and Ape Market and harm Yuga Labs. *See supra* ¶ 9.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement Regarding Objections (Dkt. 421).

The trial record shows that Defendants took significant steps ensure that collectors understood the satirical nature of the RR/BAYC project. Mr. Ripps explained that he never sold an RR/BAYC NFT to somebody he believed was confused, believed that consumers could not be confused, took steps to avoid confusion, and that he chose to make his project an NFT collection because that was the only way his criticisms would make sense. JTX-2085; JTX-2086; Ripps Decl. ¶¶ 92-94; 102-109; 113-114; 137-53; 159-76 (Dkt. 346) (uncontested). Yuga did not challenge these statements when it elected not to cross-examine Mr. Ripps.

The rrbayc.com website where most RR/BAYC commissions and alleged profits occurred (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of artistic intent. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were required to acknowledge the artistic purpose of the project before they could commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested);

JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on this requirement so the artistic purpose of the work would be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Defendants' public statements, also inform the public about the satirical nature of RR/BAYC NFTs.  Defendants discussed inappropriate messaging in Yuga's imagery educate on NFTs.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Yuga argues that this evidence of efforts to not confuse is rebutted by Etherscan's token tracker for the RR/BAYC NFT collection.  But Defendants have no control over the Etherscan website, what it displays, and how it chooses to show the RR/BAYC collection.  Regardless, it is not an indicator used by consumers.  Mr. Atalay admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or by checking the associated smart contract address and that it would not be a good way to check an NFT's origin.  Trial Tr. [Atalay] 135:2-25; 133:12-23.

Yuga also misleadingly cites internal chats, and falsely states that Defendants discussed using different images overlaid with commentary.  The communications that Yuga cites are internal discussions about ApeMarket and how to design the website so as to ensure that users would not be confused by the design of website.  The statement at JTX-801.196 that Yuga relies on to argue that RR/BAYC was likely to cause confusion is actually discussing how to create a design for the never-released ApeMarket that would not be confusing for users of the website.  *See* JTX-801-196.  Yuga attempted to cross-examine Mr. Hickman regarding these communications, and Mr. Hickman explained it was about making the webpage clear. Trial Tr. [Hickman] 212:22-24.  Yuga's evidence does nothing to prove source confusion.

Yuga also falsely argues that Defendants' marketing efforts did not indicate that RR/BAYC was an NFT collection created by Mr. Ripps for satirical purposes.

Yuga cites JTX-29, which is an OpenSea page that Mr. Ripps did not create. The page clearly labels the NFT collection as "RR/BAYC" and "By ryder_ripps." The exhibit also has Defendants' satirical, modified logo. JTX-28. Similarly Mr. Ripps did not design the Foundation page, but that page states that the collection was created by "@ryder_ripps." JTX-683 also makes clear that Defendants' NFT collection is not the same as Yuga's because it compares against Yuga. JTX-719 directly expresses protest sentiment. JTX-696 is simply the ApeMarket Twitter page, which links to rrbayc.com and states in the first post, "Make sure to join the RR/BAYC community discord!" These exhibits do not show that Defendants hid the satirical nature of the project. Yuga similarly takes out of context Mr. Ripps satirical posts, such as JTX-1037. This was a tweet making fun of Yuga's Terms & Conditions, which has caused thousands of third parties to use the Bored Ape Yacht Club and its marks for projects and products unaffiliated with Yuga. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244; JTX-2398; JTX-2134; JTX-2410; JTX-2075. The trial record contains no evidence that there was ever a website selling RR/BAYC clothes, and tweets poking fun at Yuga's Terms & Conditions do not amount to representing that RR/BAYC granted commercial rights.

Yuga also incorrectly asserts that Defendants continued to market RR/BAYC NFTs even after the summary judgment order. The exhibits Yuga cites (JTX-1315, JTX-1317, JTX-1613, JTX-1614, JTX-1615) are tweets that Mr. Cahen made reporting news on what is occurring in relation to the RR/BAYC collection: specifically, that certain third-party marketplaces were trading the NFTs despite Yuga's efforts to silence Defendants. Mr. Cahen is a vocal member of the cryptocurrency community who constantly tweets on crypto news stories Cahen Decl. ¶ 50 (Dkt. 344); *Id.* at ¶ 52 (Dkt. 344). These tweets are not "marketing" activities but simply report news/crypto events relating to the RR/BAYC collection.

Efforts Defendants made to ensure that nobody was confused were successful. The evidence showed that the RR/BAYC collection did not cause any actual confusion. Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales but instead expressed support. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Neither Defendants nor Mr. Hickman are aware of a single instance of confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19. Yuga was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7' Trial Tr. [Solano] 18:23-19:1. Simply put, there is no evidence of confusion.

**Plaintiff's Reply:**

Contrary to Defendants' suggestion, they failed to take steps to avoid confusion when selling the infringing RR/BAYC NFTs, creating further potential for actionable initial interest and post-sale confusion.

As discussed *supra*, Defendants' response is unavailing because (1) the Court's summary judgment order established liability, even in the face of Defendants' alleged disclaimer (*supra* ¶ 9), (2) Defendants intended to confuse consumers and refused to implement "friction steps" to avoid confusion (*supra*, Yuga Labs' objection), (3) Defendants' "disclaimer" does not negate the Court's finding that consumers were likely to be confused (*supra* ¶ 9), (4) Defendants' unreliable communications with third-parties do not negate evidence of actual confusion or the likelihood of post-sale confusion (*supra* ¶ 11), (5) Defendants' infringement was not an art project or "reporting news" (*supra* ¶ 10), (6) Ape Market was operational and ready to launch (*infra* ¶¶ 116), and (7) Defendants ignore post-sale confusion as actionable (*infra* ¶¶ 22, 37).

Additionally, the Court should reject Defendants' responses because, as discussed further below, (1) confusion over sponsorship or affiliation is actionable (2) most RR/BAYC NFTs were sold on secondary marketplaces without a disclaimer, and (3) Defendants intended to confuse consumers and had control over third-party websites and marketplaces.

Further, Defendants' attempts to rebuff their false misrepresentation that "RR/BAYC grants to 100% commercial rights" as a joke merely concedes the point that Defendants' representations are lies and they are not credible.

**Confusion Over Sponsorship Or Affiliation Is Actionable:** The Lanham Act expressly applies where the appropriation of one's marks "is likely to cause confusion . . . as to the affiliation, connection, or association of such person with another person, or as to the or as to the origin, sponsorship, or approval of his or her goods[.]" 15 U.S.C. § 1125(a)(1)(A).  Therefore, regardless of whether a consumer saw Mr. Ripps' name or "RR/BAYC" on OpenSea or Foundation sales pages, their confusion as to whether Defendants' were associated with Yuga Labs and Bored Ape Yacht Club is nonetheless actionable.  Such confusion was likely, as the Court has already held.  SJ Order (Dkt. 225) at 13.  And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs, including when testing Defendants' alleged modified use of the BAYC Marks.  JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341)¶¶ 13.a-c, 16, 47, 48, 73, 81, 82.  Indeed, Mr. Hickman was clearly confused when he viewed Defendants' infringing Foundation webpage. When asked to identify the source of the NFTs for sale in JTX-28 (the sales page of his partners' own infringing NFTs) he paused for around five seconds, examined the page closely and stated that the page "looks to be Bored Ape Yacht Club." Trial Tr. 213:9-13 (lodged at Dkt. 415).

**Most RR/BAYC NFTs Were Sold On Secondary Marketplaces Without A Disclaimer:** Defendants acknowledge that their alleged disclaimer was only on

rrbayc.com, but Ms. Kindler's unrebutted analysis of sales data demonstrates that for Defendants' infringing NFTs, "[t]he majority of the sales are taking place on secondary markets. . . . [T]he vast majority of them are occurring in secondary markets and not from just the initial sale." Trial Tr. at 202:4-17; *see also* JTX-723 (Kindler Expert Report) at 49. These secondary markets did not involve a disclaimer. Thus, the vast majority of market activity involving Defendants' infringing NFTs took place on the secondary market, including platforms such as Foundation and OpenSea. These secondary marketplaces are one place where consumer confusion is likely to result from Defendants' actions to flood the market with their infringing products. These secondary marketplaces are also a prominent source of confusion going forward—especially since they are where Defendants continue to market their infringing NFTs for sale. Solano Decl. (Dkt. 342) ¶ 78 ("RR/BAYC NFTs continue to be sold on websites like LooksRare and NFTx"); Trial Tr. at 58:23-25 ("the Ape Market Twitter [account], that actually links directly to LooksRare where these NFTs are still selling"). Defendants' contention is therefore incorrect and misleading.

**Defendants Intended To Confuse Consumers And Had Control Over Third-Party Websites And Marketplaces:** Defendants had control over their infringing use of the BAYC Marks on websites and marketplaces. *Infra* ¶ 51. But even if Defendants falsely claim they had no control over these websites and marketplaces, the point remains that their confusing use of the BAYC Marks can never be removed from the smart contract, causing hyperlinks and other future references to the collection to display the BAYC Marks. Atalay Decl. (Dkt. 337) ¶ 6; Solano Decl. ¶¶ 46-47, 78. The permanent existence of Yuga Labs' marks in association with the RR/BAYC smart contract is why, like a domain name, the smart contract should be transferred to Yuga Labs. Without the RR/BAYC smart contract, Yuga Labs cannot retain control of the use of its marks. *See* Trial Tr. 134:4-7 ("In this particular instance, upon inspection of the Foundation smart

contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance."); *see also* Solano Decl. (Dkt. 342) ¶ 47 ("Unless Yuga Labs has control of the RR/BAYC smart contract, Yuga Labs' brand will be forever tied to Mr. Ripps").