**Defendants' Disputed Post Trial Finding of Fact No. 20:**

<u>For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (uncontested); Cahen Decl. ¶ 144) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (uncontested); Cahen Decl. ¶¶ 138-139, 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.</u>

**Plaintiff's Basis for Dispute:**

Yuga Labs agrees with Defendants' admission that they made profits from the infringing RR/BAYC NFTs, though Yuga Labs does not concede the remainder of this paragraph.

Defendants did not take steps to "make clear" to the public that "RR/BAYC was intended as a protest art project." To the contrary, Defendants took many steps to ensure that the public was and would remain confused. *See supra* ¶ 19.

Additionally, with respect to the supposed disclaimers on rrbayc.com, "the fact that Defendants concluded it was necessary to include a disclaimer demonstrates their awareness that their use of the BAYC Marks was misleading." SJ Order (Dkt. 225) at 17. And Defendants did not include any similar disclaimer on Foundation or other secondary marketplaces, nor was there one on Etherscan. Indeed, a user today linking to Etherscan will not see Ryders Ripps' Bored Ape Yacht Club or RR/BAYC for the infringing NFTS, but instead will see "Bored Ape Yacht Club" and "BAYC" as the contract name and contract symbol, respectively. Trial Tr. at 52:6-21, 53:14-54:22, 138:6-20; JTX-117; Atalay Decl. ¶¶ 3-6; Solano Decl. ¶¶ 46-47, 78; *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006) (finding that disclaimers on packaging, but not on infringing product, did "nothing to dispel post-purchase confusion).

The public was not required to read and click a disclaimer. Indeed, even on rrbayc.com, Defendants could not enforce any requirement that users "read" what

1  Mr. Hickman and Mr. Lehman referred to as a "wall of text" that they agreed "no
2  one" would read (JTX-801.128).  And, this wall of text did nothing to dispel
3  confusion amongst the general public when every single RR/BAYC NFT sold (or
4  that ever will sell in the future) uses the trademarks BORED APE YACHT CLUB
5  and BAYC—without any alleged disclaimer.  Atalay Decl. (Dkt. 337) at ¶¶ 3-6;
6  Trial Tr. at 133:12-134:20; JTX-600; JTX-1146.  The public was not required to
7  read and click a disclaimer because Defendants did not include any similar
8  disclaimer on Foundation or other secondary marketplaces, nor was there one on
9  Etherscan.  The majority of the sales of RR/BAYC NFTs have been on secondary
10 marketplaces where there was no disclaimer.  Kindler Decl. (Dkt. 338) at ¶ 69;
11 JTX-801.376 ($10 million impact).

12      Defendants have no survey, or material consumer evidence, that users of the
13 infringing rrbayc.com website read any disclaimer.  This is not surprising since the
14 vast majority of sales occurred outside of the rrbayc.com website.  Indeed, Mr.
15 Ripps admitted that all sales went through Foundation—where there was no
16 disclaimer.  (Ripps Deposition Designations) at 82:8-13.

17      **Defendants' Response:**

18      Defendants expressly reserve and reassert all responses made in the parties'
19 Joint Statement (Dkt. 421).

20      The trial record shows that Defendant had taken significant steps to make
21 clear that collectors understood the satirical nature of the RR/BAYC project. Mr.
22 Ripps explained that he never sold an RR/BAYC NFT to somebody he believed
23 was confused, believed that consumers could not be confused, took steps to avoid
24 confusion, and that he chose to make his project an NFT collection because that
25 was the only way his criticisms would make sense.  JTX-2085; JTX-2086; Ripps
26 Decl. ¶¶ 92-94; 102-109; 113-114; 137-53; 159-76 (Dkt. 346) (uncontested).  Yuga
27 did not challenge these statements when it elected not to cross-examine Mr. Ripps.
28

The rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were also required to read and click through a disclaimer acknowledging the artistic purpose of the project. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these additional steps so that the artistic purpose of the work would be clear to participants. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Indeed, over 80% of commissions for RR/BAYC NFTs occurred on rrbayc.com. Ripps Decl. Dkt. 346 ¶ 110 (uncontested). This fact is substantially corroborated by Yuga's own expert who admits that 7,028 out of the total 9,415 RR/BAYC NFTs (more than 74% of commissions) were sold through the RSVP Contract, which was available and usable only on rrbayc.com. Kindler Decl. ¶ 36 (Dkt. 338). Yuga expert also admits that the RSVP Contract sales amounted to 981 Eth out of 1196 Eth of Defendants' total profits (which is more than 82% of total profits). Kindler Decl. 40 (Dkt. 338). Further, rrbayc.com also allowed commissions for RR/BAYC NFTs before the RSVP contract was implemented, meaning that the total sales on rrbayc.com is larger than the RSVP Contract sale.

Defendants' online discussion, which consisted of nearly the entirety of Defendants' public activities associated with RR/BAYC, also consists of acts taken that inform the public regarding the satirical nature of RR/BAYC NFTs. Defendants discussed inappropriate messaging in Yuga's imagery and how RR/BAYC shows that NFTs are not digital images. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

1    Yuga argues that this evidence of efforts to not confuse is rebutted by Etherscan's token tracker for the RR/BAYC NFT collection. But Defendants have no control over the Etherscan website, what it displays, and how it chooses to show the RR/BAYC collection. Mr. Atalay himself has admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or check the associated smart contract address. Trial Tr. [Atalay] 135:2-25. Mr. Atalay explained that using token names "would be a fairly weak way to do so because often those things are mutable. They can be changed after the fact. Also, there's no guarantee of uniqueness." Trial Tr. [Atalay] 133:12-23.

Yuga also misleadingly cites to internal chats. Yuga's cites are in fact internal discussions about ApeMarket and how to ensure that users would not be confused by the design of website. The statement at JTX-801.196 that Yuga relies on to argue that RR/BAYC was likely to cause confusion is actually discussing how to create a design for the never-released ApeMarket that would not be confusing for users of the website. *See* JTX-801-196. Yuga cross-examined Mr. Hickman regarding these communications, and Mr. Hickman explained, "This is our attempt to make it as clear as possible. We are having discussion on how to make sure it was very clear for users." Trial Tr. [Hickman] 212:22-24.

Yuga also falsely argues that Defendants' marketing efforts did not indicate that RR/BAYC was an NFT collection created by Mr. Ripps and for satirical purposes. Yuga cites to JTX-29, which is an OpenSea page that Mr. Ripps did not create. Regardless, the page clearly labels the NFT collection as "RR/BAYC" and stated that it is "By ryder_ripps." The exhibit also has Defendants' satirical logo stating, "THIS LOGO IS BASED ON THE SS TOTENKOPF." JTX-28, similarly, is the Foundation page which Mr. Ripps also did not design. But regardless, the page states that the collection was created by "@ryder_ripps." JTX-683 also makes clear that Defendants' NFT collection is not the same as Yuga's—it states "RR/BAYC is official the highest 24h volume on @openseas … We passed BAYC

in the middle of Apefest!" JTX-719 is similarly a tweet by Mr. Ripps stating, "very much winning this battle, will continue to fight" with a link to the Foundation page for the RR/BAYC collection. And JTX-696 is simply the ApeMarket Twitter page, which links to rrbayc.com and states in the first post, "Make sure to join the RR/BAYC community discord!" Again, Yuga is wrong to assert that these exhibits show that Defendants marketed the RR/BAYC collection without commentary.

Yuga also incorrectly cites to this Court's summary judgment order to suggest that use of a disclaimer is not a step taken to avoid confusion. The "law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

And Yuga's complaint that Defendants did not use a disclaimer on Foundation, Etherscan, or any other third-party website is inapposite. Defendants have no control over third party websites such as Etherscan and do not have the ability to design the pages third-party websites use or how they choose to display the RR/BAYC NFT collection. It simply was not possible for Defendants to add a disclaimer on Foundation or Etherscan because they do not control those websites.

And lastly, efforts Defendants made to ensure that nobody was confused were clearly done in good faith because those efforts were successful. The evidence at trial also showed that the RR/BAYC collection did not cause any actual confusion and was not likely to cause confusion and that participants supported the protest. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Indeed, neither Defendants nor Mr. Hickman are aware of a single instance of confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19. Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7. Mr. Solano, Yuga's President,

similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1.  Given Defendants public discussions, steps taken to clarify the origin and purpose of the RR/BAYC collection, and the fact that there was not even a single confused consumer confirms that there was no likelihood of consumer confusion and no actual consumer confusion.

Indeed, Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales.  Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested).  To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga.  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

**Plaintiff's Reply:**

Contrary to Defendants' suggestion, they failed to take steps to avoid confusion when selling the infringing RR/BAYC NFTs, creating further potential for actionable initial interest and post-sale confusion.

As with Defendants' previous response (*supra* ¶ 19), Defendants' response is unavailing because (1) the Court's summary judgment order established liability, even in the face of Defendants' alleged disclaimer (*supra* ¶ 9), (2) Defendants intended to confuse consumers and refused to implement "friction steps" to avoid confusion (*supra* ¶ 19), (3) Defendants' unreliable communications with third-parties do not negate evidence of actual confusion or the likelihood of post-sale confusion (*supra* ¶ 11), (4) Defendants' infringement was not an art project (*supra* ¶ 10), (5) it ignores post-sale confusion as actionable (*infra* ¶¶ 22, 37), (6) confusion over sponsorship or affiliation is actionable (*supra* ¶ 19), (7) most RR/BAYC NFTs were sold on secondary marketplaces without a disclaimer (*supra* ¶ 19), and (8) Defendants intended to confuse consumers and had control over third-party websites and marketplaces (*supra* ¶ 19).

Defendants' response also lacks merit because, as discussed further below, Defendants fail to disprove that any RR/BAYC purchasers were confused.

**Defendants Fail To Disprove That Any RR/BAYC Purchasers Were Confused:** Defendants present no evidence to show that no consumers purchased their infringing NFTs out of confusion. Defendants' anecdotal evidence of purported support from purchasers does not rebut the evidence of actual confusion in the record, as explained *supra* ¶ 11. Defendants admit that they processed over $90,000 in refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75) which undermines Defendants' suggestion that purchasers of their infringing NFTs were universally supportive and that no one was confused. Defendants also claim that it is not feasible for them to contact every consumer who requested a refund or purchased an RR/BAYC NFT and therefore Mr. Ripps lacks knowledge of why each refund was issued or why each purchase was made. And as discussed *supra* there is ample evidence of consumer confusion in the record. *See infra* ¶ 32; *see also* O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14 (discussing survey evidence finding that Defendants' infringement caused confusion). In sum, Defendants do not have a survey of or even communications from the majority of purchasers to prove no confusion; there is thus no basis for their claim that no one was confused.