**Defendants' Disputed Post Trial Finding of Fact No. 21:**

<u>Collectors using the rrbayc.com website were required to read and click through a disclaimer acknowledging the artistic purpose of the project before they were allowed to commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.</u>

**Plaintiff's Basis for Dispute:**

The public was not required to read and click a disclaimer. Indeed, even on rrbayc.com, Defendants could not enforce any requirement that users "read" what Mr. Hickman and Mr. Lehman referred to as a "wall of text" that they agreed "no one" would read (JTX-801.128). And, this wall of text did nothing to dispel confusion amongst the general public when *every single* RR/BAYC NFT sold (or that ever will sell) uses the trademarks BORED APE YACHT CLUB and BAYC—without any alleged disclaimer. Atalay Decl. (Dkt. 337) at ¶¶ 3-6; Trial Tr. at 133:12-134:20; JTX-600; JTX-1146. The public was not required to read and click a disclaimer because Defendants did not include any similar disclaimer on Foundation or other secondary marketplaces, nor was there one on Etherscan. The majority of the sales of RR/BAYC NFTs have been on secondary marketplaces where there was no disclaimer. Kindler Decl. (Dkt. 338) at ¶ 69; JTX-801.376 ($10 million impact).

Defendants have no survey, or material consumer evidence, that users of the infringing rrbayc.com website read any disclaimer. This is not surprising since the vast majority of sales occurred outside of the rrbayc.com website. Indeed, Mr. Ripps admitted that all sales went through Foundation—where there was no disclaimer. Dkt. 396 (Ripps Deposition Designations) at 82:8-13.

Additionally, with respect to the supposed disclaimers on rrbayc.com, "the fact that Defendants concluded it was necessary to include a disclaimer demonstrates their awareness that their use of the BAYC Marks was misleading." SJ Order (Dkt. 225) at 17.

**Defendants' Response:**

Yuga once again takes out of context and mischaracterizes exhibits to incorrectly argue that RR/BAYC participants did not read the RR/BAYC disclaimer. Yuga incorrectly states that Defendants described the disclaimer as a "wall of text" that no one would read. Those statements in the cited exhibit (JTX-801.128) are not discussing the disclaimer. The "wall of text" comment was made by Mr. Lehman in reference to a potential design of rrbayc.com (*a design that was never actually implemented*) where the lengthy artist statement on the website included a window and inside that window was an actual copy of a DMCA takedown notice that Yuga had voluntarily withdrawn. Mr. Lehman stated that no-one would read the text showing withdrawal of Yuga's DMCA notice that was contained within a window embedded in the middle of Mr. Ripps's lengthy artist statement. Yuga's attempt to attribute this statement to the disclaimer is a gross mischaracterization of the exhibit because the disclaimer is separate and apart from the never-implement version of Mr. Ripps's artist statement that contained Yuga's withdrawal of its DMCA takedown notice.

Additionally, Defendants' disclaimer did require all commissions of RR/BAYC NFTs on rrbayc.com to view and click through the disclaimer. Further, it is apparent that NFT collectors read the disclaimer because the disclaimer, and Defendants' remaining activities aimed at preventing confusion, were successful. The evidence at trial also showed that the RR/BAYC collection did not cause any actual confusion and was not likely to cause confusion. Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested). To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Indeed, neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are

aware of a single instance of confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19.  Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7 ("Q.  Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").  Mr. Solano, Yuga's President, similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1.  The fact that there was not even a single confused consumer confirms that the disclaimer was ready by collectors and that Defendants were successful in identifying for consumers Mr. Ripps as the source of origin for RR/BAYC NFTs.

Yuga also incorrectly cites to this Court's summary judgment order to suggest that use of a disclaimer is not a step taken to avoid confusion.  The "law of the case doctrine does not apply to pretrial rulings *such as motions for summary judgment*."  Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case.  Given the nature of such motions, it could not be otherwise.").  For example, in *Sienze v Kutz*, the Court held that although *aspects* of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics.  *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to already decided issue that initial contact was not excessive force).  This case is just like *Sienze*: the summary judgment ruling the Defendants' disclaimer applies only the issue of infringement and is not adequate support on use of a disclaimer generally

or as applied to availability of disgorgement as a remedy, apportionment, and an exceptional case analysis.

**Plaintiff's Reply:**

Defendants' reliance on an alleged disclaimer is misguided. Defendants provide no evidence that every, or any, consumer read the disclaimer. And the majority of RR/BAYC NFT sales took place on websites without the disclaimer. As the Court has held in its summary judgement order, Defendants' alleged disclaimer fails to disprove their infringement. *See* SJ Order (Dkt. 225) at 12.

As discussed *supra*, Defendants' response is unavailing. Specifically: (1) the Court's summary judgment order established liability, even in the face of Defendants' alleged disclaimer (*supra* ¶ 9), (2) Defendants' "disclaimer" does not negate the Court's finding that consumers were likely to be confused (*supra* ¶ 20); (3) most RR/BAYC NFTs were sold on secondary marketplaces without a disclaimer (*supra* ¶ 19), (4) Defendants' unreliable communications with third-parties do not negate evidence of actual confusion or the likelihood of post-sale confusion (*supra* ¶ 11), (5) there is ample evidence of actual confusion in the record (*infra* ¶ 32), and (6) post-sale confusion is actionable (*infra* ¶¶ 22, 37).

Additionally, Defendants concede the fact that Mr. Lehman stated "no one" would read the "wall of text" of Mr. Ripps' alleged artist statement. Defendants' attempt to distinguish between the alleged artist statement and disclaimer is immaterial where, as Defendants contend, both had lengthy text purportedly explaining the alleged artistic purpose of RR/BAYC. *See* Def's Proposed Findings of Fact ¶¶ 20, 21.