**Defendants' Disputed Post Trial Finding of Fact No. 36:**

Another collector wrote:

> You have done a very positive thing bringing attention to BAYC. These people need to be shown for what they are! I bought one of yours on the secondary, and it is a protest purchase!

Ripps Decl. ¶ 204, JTX-2035 (uncontested).

**Plaintiff's Basis for Dispute:**

Defendants' cherry-picked communications from a self-selecting group are far from a comprehensive survey of consumer confusion in the market. Meanwhile, they ignore the ample confusion on Twitter and other sources that Yuga Labs has identified. *See supra* ¶ 32. Defendants were aware of the confusion. *See, e.g.*, *supra* at ¶ 24 (collecting examples). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion. Moreover, there is no reliable evidence in the record that the individuals identified in the cited emails, or all other purchasers, are "collectors" as Defendants contend.

Moreover, Defendants' *Rogers* and First Amendment defenses have already been rejected by the Court. SJ Order (Dkt. 225) at 15-17. Defendants' actions were commercial trademark infringement. *Id*. And, the Court has already decided the issue of Defendants' intent, finding that Defendants intentionally infringed Yuga Labs' BAYC Marks to deceive consumers and acted with a bad-faith intent to profit from their use of the marks. SJ Order (Dkt. 225) at 12-15. But, to the extent Defendants seek to relitigate this issue, Defendants' contention that their infringing

NFTs were an art project does not prove it to be true, as the evidence including internal communications reveals.  *See supra* ¶ 34.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

This finding of fact addresses a correspondence which Defendants received from an RR/BAYC NFT collector.  Ripps Decl. ¶ 204 (uncontested); JTX-2035.  Yuga falsely states that these are "cherry-picked communications."  Mr. Ripps testified in his declaration: "I received **hundreds of letters** thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received.  Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested) (emphasis added).  At no point during trial did Yuga dispute this fact.  Yuga did not present any rebuttal evidence and did not cross-examine Mr. Ripps on this issue.

Yuga has also failed to present evidence disputing the fact that the quoted language is accurate.  Instead of addressing this correspondence, Yuga attempts to point to indications of consumer confusion.  However, none of Yuga's alleged indications of confusion are credible.

First, Yuga's evidence does not indicate there was confusion on Twitter.  For example, Yuga cites to JTX-1029, which includes a tweet from GemBot, which is an automated software application and not evidence of a real person's confusion.  *See* Cahen Decl. ¶¶ 226-227.  The very first comments included on that tweet include users identifying that the Mr. Ripps is the source of the NFT not Yuga.  Further, there is no indication that any of the Twitter users commenting actually reserved an RR/BAYC NFT.  This evidence provides no support for an argument that this finding of fact is inaccurate.  *See* JTX-1030, JTX-1032; JTX-1031, JTX-1034, JTX-1035.

Second, Yuga also cites to private chats that the RR/BAYC creators used.

These exhibits are unsupportive of a finding that there was actual confusion. For example, JTX-109 includes a discussion where Mr. Lehman raises concerns about the design of ApeMarket and Mr. Cahen provides suggestions on how to make it clearer. Further, ApeMarket was never launched and could never have caused any actual consumer confusion. Cahen Decl. ¶¶ 257-262; *see* JTX-801.185.

Third, Ms. O'Laughlin's survey evidence is unreliable. Ms. O'Laughlin conducted two flawed surveys that failed to measure confusion. Ms. O'Laughlin acknowledged that she used an overly expansive definition of the market that included people who did not have any interest in purchasing an NFT, much less knowledge of what an NFT is. Trial Tr. [O'Laughlin] 150:2-151:16; 152:4-10. She acknowledged that she changed the survey population after running pretests to make it more inclusive. *Id.* at 144:25-146:7. Ms. O'Laughlin also acknowledged that she lacked basic knowledge about the NFT market, admitting to erroneously believing that cryptocurrency was an NFT when she formulated her surveys and her reports. *Id.* at 147:12-14. The result of her lack of knowledge was an inherently flawed survey that could not show confusion because the market was too broad. This was despite her acknowledgement that choosing the right sample population "matters for the analysis" and choosing an improper sample population would be a mistake. *Id.* at 146:18-25.

Fourth, Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings ***such as motions for summary judgment***." *Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986)* (emphasis added); *see also Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014)* ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze v Kutz*, the Court held that although ***aspects*** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as

to other topics.  See No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to already decided issue that initial contact was not excessive force).  This case is just like *Sienze*: the summary judgment ruling on likelihood of confusion only applies to the issue of infringement and is not adequate support for a determination of how to apportion disgorgement of profits attributable to infringement.

Fifth, evidence at trial showed that Defendants were not primarily motivated by profits.  Defendants explained that profits were a concern, but not the primary motive of the project.  Cahen Decl. ¶ 156 (Dkt. 344).  Profits helped offset costs and sustain Defendants' artistic project.  Cahen Decl. ¶ 173 (Dkt. 344). Defendants' decisions surrounding refunds and royalties confirm that they were not primarily motivated by profits.  Ripps Decl. ¶ 116-118 (uncontested) (Dkt. 346); Cahen Decl. ¶ 158-171 (Dkt. 344).  The RR/BAYC project allowed for a full refund, for any reason.  Ripps Decl. ¶ 119 (uncontested) (Dkt. 346); Cahen Decl. ¶ 159 (Dkt. 344).  Additionally, the Defendants' declined taking royalties on transfers of RR/BAYC NFTs whenever possible.  Ripps Decl. ¶¶ 116-118 (uncontested) (Dkt. 346); Cahen Decl. ¶¶ 166-171 (Dkt. 344).

Defendants have provided extensive evidence to rebut Yuga's allegations of confusion. Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way.  For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project.  Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Collectors using the rrbayc.com website were also required to read and click through a disclaimer acknowledging the artistic purpose of the

project before they were allowed to commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these additional steps so that the artistic purpose of the work would be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

The evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest against Yuga.  *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  None of the parties in this case can identify a single person who purchased an RR/BAYC NFT believing it to be sponsored by Yuga.  Defendants are not aware of a single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).  Yuga's founders were also not aware of a single instance of actual confusion. Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

Additionally, Defendants cite Mr. Ripps's uncontested declaration in support of this finding of fact. This Court is entitled to accept Mr. Ripps's declaration because the trial transcript shows that Yuga elected to forego any substantive cross-examination of Mr. Ripps on any portion of Mr. Ripps's declaration that Yuga now challenges.  *See* Trial Tr. [Ripps] 267:7-271:9.  As the Supreme Court has explained, "[c]ross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  This is because purpose of cross-examination is "the direct and personal putting of questions and obtaining immediate answers." *Id.*; *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004) ("One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information[.]").  Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that "principle means" of testing Mr. Ripps credibility weighs decisively in favor of accepting Mr. Ripps's declaration.

**Plaintiff's Reply:**

Defendants' unreliable communications with purported distributors or purchasers of their infringing products are immaterial. The Court has already found a likelihood of confusion and these correspondences do not rebut that finding. SJ Order. (Dkt. 225) at 13. And Defendants admit that they cherry-picked eight out of allegedly hundreds of e-mails to use as purported evidence of their alleged protest. These attempts to obfuscate the issues are unavailing.

As discussed *supra*, Defendants' responses lack merit. Specifically, (1) Defendants' anecdotal evidence of communications with purported purchasers is unpersuasive (*supra* ¶ 3), (2) whether a handful of initial purchasers were confused, post-sale and initial interest confusion are nonetheless actionable (*supra* ¶¶ 22, 37), (3) Yuga Labs adequately demonstrated that Mr. Ripps lacks credibility (*supra* ¶ 3), (4) Defendants were motivated by an intent to profit (*supra* ¶¶ 4, 13, 23), (5) the @0xGem Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (6) Ms. O'Laughlin's report is reliable and accurate (*infra* ¶ 41), (7) the Court's summary judgment order establishes Defendants' liability (*supra* ¶ 9), (8) Defendants' "disclaimer" did not prevent confusion (*supra* ¶ 20), (9) most of Defendants' infringing NFTs did not sell on rrbayc.com (*infra* ¶¶ 19, 103), (10) the record shows multiple instances of actual confusion (*supra* ¶ 32), (11) Defendants failed to take steps to avoid confusion (*supra* ¶ 33), and (12) the refunds Defendants issued demonstrate that consumers were confused (*Id.*).