**Defendants' Disputed Post Trial Finding of Fact No. 38:**

<u>Collectors of RR/BAYC NFTs referred to the project as "art" or to Mr. Ripps's "work." Ripps Decl. ¶ 203 (uncontested); JTX-2590.</u>

**Plaintiff's Basis for Dispute:**

Defendants did not conduct a survey about what "collectors" of RR/BAYC NFTs thought, nor do they have any other basis to claim that these NFTs were perceived as "art" by consumers in general. Instead, they cherry-picked a handful of emails from a self-selecting group, ignoring the ample confusion on Twitter and other sources that Yuga Labs identified. SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Depo. Designations (Dkt. 396) at 290:4-9; JTX-1049; Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7. Defendants were aware of the confusion. *See, e.g.*, *supra* ¶ 24 (collecting examples). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion. Moreover, there is no reliable evidence in the record that the individuals identified in the cited emails, or all other purchasers, are "collectors" as Defendants contend.

There is a clear likelihood of confusion as well, given Defendants' use of the same marks and images, which the Court already determined. SJ Order (Dkt. 225) at 10-13. In any event, actual confusion is not required; and the Court already

found Defendants' use of BAYC Marks to be infringing. SJ Order (Dkt. 225) at 12. Yuga Labs is thus entitled to Defendants' profits due to their infringing activity regardless of whether purchasers were actually confused. *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one").

Moreover, Defendants' *Rogers* and First Amendment defenses have already been rejected by the Court. SJ Order (Dkt. 225) at 15-17. Defendants' actions were commercial trademark infringement. *Id*. And, the Court has already decided the issue of Defendants' intent, finding that Defendants intentionally infringed Yuga Labs' BAYC Marks to deceive consumers and acted with a bad-faith intent to profit from their use of the marks. SJ Order (Dkt. 225) at 12-15.

But, to the extent Defendants seek to relitigate this issue, Defendants' contention that their infringing NFTs were an art project does not prove it to be true. To the contrary, the relevant evidence demonstrates that Defendants intended to use Yuga Labs' BAYC Marks to profit through their commercial promotion and sale of RR/BAYC NFTS. *See supra* ¶¶ 9-10, 13, 17-19. Indeed, Defendants' infringement could not have been in good faith because, even after the Court found their infringement was likely to cause confusion and was not art protected by *Rogers* and the First Amendment, Defendants continued to infringe on Yuga Labs' Marks and promote RR/BAYC NFTs. Solano Decl. (Dkt. 342) ¶ 74. And Defendants' @ApeMarketplace Twitter account continues to promote rrbayc.com and link to a marketplace on which RR/BAYC NFTs are still available for sale. Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.

Finally, while Defendants claim there was an artistic goal (to "look really sympathetic to people" if caught, in the words of their partner (JTX-918.00036)),

their internal communications overwhelmingly focus on a business venture to sell Ape Market, their profit motive, and riding on the coattails of the BAYC brand for their own enrichment.  *See, e.g.*, JTX-1 (Lehman Decl.) ¶¶ 10-13 (Defendants "expected the Business Venture to make money"); JTX-801.144 ("One thing we can do to stimulate the rsvp completing is to tease apemarket.com"); JTX-801.185 (Mr. Cahen: "Goal: mint out the remainder of the collection + incentivize people to use the marketplace, specifically the BAYC original side"); *id.* (Mr. Cahen: "More royalties for us . . . More work for sure, but much higher likelihood of generating more royalties and users"); JTX-801.208 (Mr. Cahen: "we need a very delicious value proposition [] to bring in users . . . but not so low that we dont make anything"); *id.* (Mr. Cahen: "priorities: getting RRBAYC to sell out by creating demand + getting BAYC and MAYC users to call our marketplace their new home [] and collecting royalties at a fraction of what the other big dogs are charging [] which will be considerable passive income if we strike the right balance"); JTX-801.237 (Mr. Lehman: "I'm just concerned about launching something with low prospect for recurring revenue"; Mr. Cahen: "I agree"); JTX-803 at 66-67; JTX-1574 (Mr. Cahen to Mr. Ripps: "Ur gonna make so much on this shit LMFAO"; "It will sell out within 48 hours I think [] You'll make like a million dollars [] Straight up"); JTX-1586 (Mr. Cahen to Mr. Ripps: "I t[h]ink you are gonna make millions too man"); Hickman Depo. Designations (Dkt. 394) at 238:12-40 (discussing profit motive and desire to charge royalties).  Defendants knew they were stealing from Yuga Labs regardless of what any single consumer may have believed.

**Defendants' Response:**

This finding of fact addresses correspondences which Defendants received from collectors of RR/BAYC NFTs and the views expressed within those correspondences.  Yuga falsely states that these are "cherry-picked communications."  Mr. Ripps testified in his declaration: "I received **hundreds of letters** thanking me for creating the RR/BAYC artwork and for standing up against

a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested) (emphasis added). At no point during trial did Yuga dispute this fact. Yuga did not present any rebuttal evidence at trial and Yuga elected to not cross-examine Mr. Ripps on this issue. Thus, the uncontested evidence at trial shows that Mr. Ripps received hundreds of letters from RR/BAYC participants expressing support for the project and its criticism.

Yuga has also failed to present evidence disputing the fact that collectors of RR/BAYC NFTs referred to the project as "art" or to Mr. Ripps's "work." Ripps Decl. ¶ 203 (uncontested); JTX-2590. Instead of addressing correspondences from collectors, Yuga attempts to point to indications of consumer confusion. However, none of Yuga's alleged indications of confusion are credible.

First, Yuga's evidence does not indicate there was confusion on Twitter. For example, Yuga cites to JTX-1029, which includes a tweet from GemBot, which is an automated software application and not evidence of a real person's confusion. *See* Cahen Decl. ¶¶ 226-227. The very first comments included on that tweet include users identifying that the Mr. Ripps is the source of the NFT not Yuga. Further, there is no indication that any of the Twitter users commenting actually reserved an RR/BAYC NFT. This evidence provides no support for an argument that this finding of fact is inaccurate, therefore. *See also* JTX-1030, JTX-1032 (Tweets where the users are quickly identifying Mr. Ripps as the source of the NFT); JTX-1031, JTX-1034, JTX-1035 (Out of context one off tweets of users, that there is no evidence to believe purchased an RR/BAYC NFT, replying to GemBot).

Second, Yuga also cites to private chats that the RR/BAYC creators used. These exhibits are unsupportive of a finding that there was actual confusion. For example, JTX-109 includes a discussion where Mr. Lehman raises concerns about how the marketplace is designed and may cause confusion. Mr. Cahen responds and provides suggestions about what they could do to make it even more clear.

Further, this chat focused on the creation of ApeMarket, which never was launched and could, therefore, never have caused any actual consumer confusion. Cahen Decl. ¶¶ 257-262; *see also* JTX-801.185 (again including a discussion about how to make ApeMarket clearer).

Third, Ms. O'Laughlin's survey evidence is unreliable. Ms. O'Laughlin conducted two flawed surveys that failed to measure confusion. Ms. O'Laughlin acknowledged that she used an overly expansive definition of the market that included people who did not have any interest in purchasing an NFT, much less knowledge of what an NFT is. Trial Tr. [O'Laughlin] 150:2-151:16 (discussing survey qualification flow); 152:4-10. She acknowledged that she changed the survey population after running pretests to make it more inclusive. *Id.* at 144:25-146:7. Ms. O'Laughlin also acknowledged that she lacked basic knowledge about the NFT market, admitting to erroneously believing that cryptocurrency was an NFT when she formulated her surveys and her reports. *Id.* at 147:12-14. The result of her lack of knowledge was an inherently flawed survey that could not show confusion because the market was too broad. This was despite her acknowledgement that choosing the right sample population "matters for the analysis" and choosing an improper sample population would be a mistake. *Id.* at 146:18-25.

Fourth, Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze v Kutz*, the Court held that although **aspects** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the

issue generally or as to other topics. See No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling on likelihood of confusion only applies to the issue of infringement and is not adequate support for a determination of how to apportion disgorgement of profits attributable to infringement.

Fifth, evidence at trial showed that Defendants were not primarily motivated by profits. Defendants explained that profits were a concern, but not the primary motive of the project. Cahen Decl. ¶ 156 (Dkt. 344). Profits helped offset costs and sustain Defendants' artistic project. Cahen Decl. ¶ 173 (Dkt. 344). Defendants' decisions surrounding refunds and royalties confirm that they were not primarily motivated by profits. Ripps Decl. ¶ 116-118 (uncontested) (Dkt. 346); Cahen Decl. ¶ 158-171 (Dkt. 344). The RR/BAYC project allowed for a full refund, for any reason. Ripps Decl. ¶ 119 (uncontested) (Dkt. 346); Cahen Decl. ¶ 159 (Dkt. 344). Additionally, the Defendants' declined taking royalties on transfers of RR/BAYC NFTs whenever possible. Ripps Decl. ¶¶ 116-118 (uncontested) (Dkt. 346); Cahen Decl. ¶¶ 166-171 (Dkt. 344).

Defendants have provided extensive evidence to rebut Yuga's allegations of confusion. Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were also required to read and click through a disclaimer acknowledging the artistic purpose of the

project before they were allowed to commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these requirement and additional steps so that the artistic purpose of the work would be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement ultimately included, if it had a negative impact on usability? …  A.   … Ryder wanted it and so he had the final call.").

The evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest against Yuga.  *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  Furthermore, none of the parties in this case can identify a single person who purchased an RR/BAYC NFT believing it to be sponsored by Yuga.  Mr. Ripps and Mr. Cahen are not aware of a single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).  Buttressing this fact, Yuga's founders were also not aware of a single instance of actual confusion. Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A. Correct.").

Additionally, Defendants cite Mr. Ripps's uncontested declaration in support of this finding of fact. This Court is entitled to accept Mr. Ripps's declaration because the trial transcript shows that Yuga elected to forego any substantive cross-examination of Mr. Ripps on any portion of Mr. Ripps's declaration that Yuga now challenges.  *See* Trial Tr. [Ripps] 267:7-271:9.  As the Supreme Court has explained, "[c]ross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  This is because purpose of cross-examination is "the direct and personal putting of questions and obtaining immediate answers." *Id.*; *Murdoch v. Castro,*

365 F.3d 699, 702 (9th Cir. 2004) ("One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information[.]"). Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that "principle means" of testing Mr. Ripps credibility weighs decisively in favor of accepting Mr. Ripps's declaration.

**Plaintiff's Reply:**

Defendants' unreliable communications with purported distributors or purchasers of their infringing products are immaterial. Defendants have still failed to provide evidence that the purported communications were with "collectors" or that "collectors" were their primary purchasers. The Court has also already found a likelihood of confusion and these correspondences do not rebut that finding. SJ Order. (Dkt. 225) at 13. And Defendants admit that they cherry-picked eight out of allegedly hundreds of e-mails to use as purported evidence of their alleged protest. These attempts to obfuscate the issues are unavailing.

As discussed *supra*, Defendants' responses lack merit. Specifically, (1) Defendants' anecdotal evidence of communications with purported purchasers is unpersuasive (*supra* ¶ 3), (2) whether a handful of initial purchasers were confused, post-sale and initial interest confusion are nonetheless actionable (*supra* ¶¶ 37), (3) Yuga Labs adequately demonstrated that Mr. Ripps lacks credibility (*supra* ¶ 3), (4) Defendants were motivated by an intent to profit (*supra* ¶7), (5) the @0xGem Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (6) Ms. O'Laughlin's report is reliable and accurate (*Id.*), (7) the Court's summary judgment order establishes Defendants' liability (*Id.*), (8) Defendants' "disclaimer" did not prevent confusion, (*Id.*), (9) most of Defendants' infringing NFTs did not sell on rrbayc.com (*Id.*), (10) the record shows multiple instances of actual confusion (*supra* ¶ 3), (11) Defendants failed to take steps to avoid confusion (*supra* ¶ 33), and (12) the refunds Defendants issued demonstrate consumer confusion (*Id.*).