**Defendants' Disputed Post Trial Finding of Fact No. 40:**

<u>Mr. Ripps was not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (uncontested).</u>

      **Plaintiff's Basis for Dispute:**

Mr. Ripps' claim that he was not aware of any instances of confusion is belied by the ample evidence of confusion on Twitter and other sources that Yuga Labs has identified. *See supra* ¶ 32. Defendants were aware of the confusion. *See, e.g.*, *supra* ¶ 24 (collecting examples). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

There is a clear likelihood of confusion as well, given Defendants' use of the same marks and images, which the Court already determined. *See supra* ¶ 32.

  **Defendants' Response**:

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

Yuga's objection is unfounded. First, as Defendants credibly testified, Mr. Ripps and Mr. Cahen are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344). Yuga and Mr. Solano were also not aware of a single instance of actual confusion. Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

Second, Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. The rrbayc.com website—through which the majority of RR/BAYC commissions occurred (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the

artistic intent. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were also required to read and click through a disclaimer before they were allowed to commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these additional steps so that the artistic purpose of the work would be clear. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Unsurprisingly, the trial evidence shows that people reserved RR/BAYC NFTs out of protest. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595-2596, JTX-2599.

Third, the evidence Yuga does not show consumer confusion. Specifically, Yuga relies on O'Laughlin's flawed survey evidence. For the reasons provided in Defendants' response in *supra* ¶ 32, Ms. O'Laughlin's surveys do not show any actual or likely consumer confusion because they (1) used an overly broad population that included people that don't even know what an NFT is, (2) used two contradictory surveys, (3) failed to account for strong priming effects based on the survey format, and (4) applied to market conditions that lasted only a matter of days. Further, this unreliable survey evidence, again does not show that anyone who actually reserved an RR/BAYC NFT was confused about its origin and, therefore, does not undermine the accuracy of this finding of fact.

The documentary evidence Yuga cites to is unsupportive. Yuga relies on JTX-1029, which includes a tweet from GemBot, which is an automated software application and not a real person. *See* Cahen Decl. ¶¶ 226-227. The very first comments included on that tweet include users identifying that Mr. Ripps is the source of the NFT not Yuga. Further, there is no indication that any of the Twitter users commenting actually reserved an RR/BAYC NFT. *See* JTX-1030, JTX-1032 ; JTX-1031, JTX-1034, JTX-1035.

Yuga also relies on private chats that the RR/BAYC creators used. But these chats do not show actual confusion. JTX-109 includes a discussion where Mr. Lehman raises concerns about the design of ApeMarket and Mr. Cahen makes suggestions on how to make it clearer. Further, ApeMarket was never never was launched and could never have caused any consumer confusion. Cahen Decl. ¶¶ 257-262; *see also* JTX-801.185.

Yuga relies on a screenshot, JTX-701, of a Bloomberg newscast. This exhibit does not show actual confusion. The chart separately lists both "Bored Ape Yacht Club" and "Bored Ape Yacht Club V3" indicating that the anchor understood that these were two different projects. Additionally, as Mr. Cahen testified, he is not aware of anyone who watched the Bloomberg program and reserved an RR/BAYC NFT believing it to be a Yuga collection. Cahen Decl. ¶ 252.

Additionally, Yuga relies on the Lehman Declaration, JTX-1, the accuracy and credibility of which are tainted by Mr. Lehman's motivations to settle his case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's case against Mr. Lehman, JTX-621, which was entered after Mr. Lehman settled.

Yuga also relies on Mr. Ripps's deposition transcript where he discusses how the LooksRare platform that sold RR/BAYC NFTs looked like at one point in time. Ripps Depo. Designations (Dkt. 396) at 290:4-9. This does nothing to support a finding of confusion given the ability of any consumer to determine the provenance of an RR/BAYC NFT through Etherscan. Ripps Decl. ¶¶ 88-89 (Dkt. 346) (uncontested). Further this does nothing to undermine this finding of fact, which states that Mr. Ripps is not aware of any actual confusion.

Finally, Yuga relies on witnesses that made conclusory and unfounded statements about possible confusion. *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22. These statements do not support a finding of actual confusion or likelihood of confusion.

Fourth, Yuga states that Defendants did not offer admissible evidence that consumers believed RR/BAYC NFTs were not affiliated with Yuga. Not true. The evidence presented at trial shows that people reserved RR/BAYC NFTs out of protest. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595-2596; JTX-2599.

Fifth, Yuga's objection is inaccurate given Defendants used modified versions of the alleged BAYC Marks in their reservations. The logo used states "This Logo is Based on the SS Totenkopf; 18 Teeth" and rrbayc.com used "RR/BAYC" throughout. *See* JTX-2085.

Sixth, Yuga incorrectly uses the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

Finally, if Yuga is entitled to disgorgement of Defendants' profits, Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.* And as outlined above, there is no evidence that a single RR/BAYC purchaser was confused.

Yuga's citations (from non-abridged objections) to *Levi* are inapplicable here, given the evidence shows consumers reserved RR/BAYC NFTS as part of a protest against Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Also, as mentioned above, there is no evidence that anyone who reserved an

RR/BAYC NFT, on either initial or secondary sales, was confused about its origin. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Ripps Decl. ¶ 223 (uncontested) (Dkt. 346); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.  Finally, the portion of profits attributable to secondary sales of RR/BAYC NFTs according to Yuga's own expert is limited to $117,309. *See* Dkt. 418-1 at 6.

**Plaintiff's Reply:**

Defendants' response is largely inapt.  Defendants' internal communications demonstrate that Defendants were aware that their infringement would confuse consumers and refused to take steps to avoid that confusion.  Rather than confront this fact, Defendants engage in collateral disputes to obfuscate the issues.  These responses should be rejected.

As discussed *supra*, Defendants' responses lack merit.  Specifically, (1) Defendants' anecdotal evidence of communications with purported purchasers is unpersuasive (*supra* ¶ 11), (2) Yuga Labs adequately demonstrated that Mr. Ripps lacks credibility (*supra* ¶ 3), (3) Yuga Labs adequately demonstrated that Mr. Cahen lacks credibility (*supra* ¶ 7), (4) Defendants fail to demonstrate that "many" consumers purchased Defendants' infringing NFTs out of protest (*supra* ¶ 39), (5) Defendants' assertion that the Bloomberg segment would not cause confusion because both collections were listed lacks credibility (*supra* ¶ 32), (6) the @0xGem Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (7) Ms. O'Laughlin's report is reliable and accurate (*infra* ¶ 41), (8) the Court's summary judgment order establishes Defendants' liability (*supra* ¶ 9), (9) Defendants' "disclaimer" did not prevent confusion, (*supra* ¶ 20), (10) most of Defendants' infringing NFTs did not sell on rrbayc.com (*infra* ¶¶ 19, 103), (11) consumers verifying Defendants' infringing NFTs on Etherscan would still be confused (*supra*

¶ 32), (12) all of Defendants' profits are attributable to their infringement (*infra* ¶ 103), (13) the record shows many instances of actual confusion (*supra* ¶¶ 22, 32, 37), and (14) Defendants failed to take steps to avoid confusion (*supra* ¶ 33), (15) Mr. Lehman's declaration is accurate and contradicts Defendants (*supra* ¶ 22, *infra* ¶ 58), (16) Ape Market existed as a commercial endeavor and the marketplace was ready to launch (*infra* ¶ 116), (17) Defendants fail to rebut the likelihood of confusion as to sponsorship or affiliation (*supra* ¶ 19), (18) Defendants fail to rebut the likelihood of post-sale and initial interest confusion (*supra* ¶¶ 22, 37), and (19) Defendants' fail to account for ongoing harm (*supra* ¶ 32).

Additionally, the Court should reject Defendants' responses because (1) Defendants' fail to support Mr. Ripps' deposition testimony about LooksRare, and (2) Defendants' used Yuga Labs' marks without altering them.

**Defendants Fail To Explain Away Mr. Ripps' Testimony About LooksRare:** Defendants cannot keep their story straight about where consumers should look to verify their NFTs.  To begin, Mr. Ripps' testimony demonstrates that the LooksRare sales page misidentified Defendants' infringing NFTs as "Bored Ape Yacht Club," so the testimony clearly supports a finding of likelihood of confusion.  *See* Ripps Depo. Designations (Dkt. 396) 290:4-12; *see also* Stone Creek, Inc. v. Omnia Italian Design, Inc., 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'"). And the full testimony demonstrates that, contrary to Defendants' assertions, they do have the ability to alter the display of Yuga Labs' marks on secondary marketplaces.  *See* Ripps Depo. Designations (Dkt. 396) 289:7-11 ("Q: So you signed in with a wallet to LooksRare, and they permitted you to make changes to the page dedicated to the RR/BAYC NFTs? / A:  The change of this redacted thing, it's something that I have done, yeah/"). ***This testimony directly refutes Defendants' claim that they have no control over the RR/BAYC sales pages on***

*secondary marketplaces.* See Dkt. 419-1 ¶ 55 ("Mr. Ripps and Mr. Cahen had no control over and no affiliation with those third-parties who auto-generated "Bored Ape Yacht Club V3" or "BAYC V3."); *see also* Ripps Depo. Designations (Dkt. 396) at 81:7-8, 81:22-82:7 (admitting to changing the OpenSea marketplace page for RR/BAYC NFTs). Defendants could have taken steps to make their secondary marketplace pages less confusing, but they chose not to.

Further, as discussed *supra* ¶ 32, even if a consumer were to navigate to Etherscan to verify their NFTs they would still be confused. *See* JTX-117 (Etherscan screenshot showing "Bored Ape Yacht Club" and "BAYC" as token tracker and contract name respectively). By Defendants' own admission, consumers should look to the immutably infringing Etherscan page to verify their NFTs, thus highlighting the importance of an injunction that would transfer control of that contract to Yuga Labs. Trial Tr. 134:4-7 ("In this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance."); *see also* Solano Decl. (Dkt. 342) ¶ 47 ("Unless Yuga Labs has control of the RR/BAYC smart contract, Yuga Labs' brand will be forever tied to Mr. Ripps").

**Defendants Used Yuga Labs' Marks Without Altering Them:** Defendants' response misleading implies that Defendants did not use Yuga Labs' marks without alteration. This is false. "Indeed, Defendants have admitted that they intentionally used the BAYC Marks in their RR/BAYC NFTs." SJ Order (Dkt. 225) at 11. And there is significant documentary evidence supporting this finding. *See, e.g.*, JTX-600 (showing "BAYC" and "Bored Ape Yacht Club" input to Defendants' smart contract"); JTX-28 (Defendants' Foundation page marketing their NFTs as "BAYC" and "Bored Ape Yacht Club" using a direct copy of Yuga Labs' ape skull logo). Thus, whether Defendants modified Yuga Labs' marks at times, they nonetheless used Yuga Labs' unaltered marks to market their infringing

NFTs. "Therefore, the Court easily conclude[d] that Defendants' use of Yuga's BAYC Marks was likely to cause confusion." SJ Order (Dkt. 225) at 13.