**Defendants' Disputed Post Trial Finding of Fact No. 42:**

<u>Mr. Hickman was not aware of a single instance of actual confusion. Trial Tr. [Hickman] 219:13-19.</u>

**Plaintiff's Basis for Dispute:**

Mr. Hickman's claim that he was not aware of any instances of confusion is belied by the ample evidence of confusion on Twitter and other sources that Yuga Labs has identified.  SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Depo. Designations (Dkt. 396) at 290:4-9; JTX-1049; Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7.  Indeed, Mr. Hickman was confused by Mr. Ripps' use of the BAYC Marks when he misidentified the RR/BAYC sales page on Foundation as "Bored Ape Yacht Club."  Trial Tr. at 213:4-14; Hickman Deposition at 149:24-150:10; Dkt. 415.  He and Defendants were aware of the confusion. *See, e.g.*, *supra* ¶ 24 (collecting examples).  And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs.  JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82.  Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

Yuga's objection is unfounded.  First, as Mr. Hickman credibly testified, he is not aware of a single instance of actual confusion.  Trial Tr. [Hickman] 219:13-

19. Mr. Ripps, Mr. Cahen, and Yuga's founders were also not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

Second, there is ample evidence that there was not consumer confusion. Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga. The rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. The rrbayc.com website were also required reading and clicking through a disclaimer before they could commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these additional steps so that the artistic purpose of the work would be clear. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Unsurprisingly, therefore, the evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest against Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

Yuga misleadingly cites to a portion of Mr. Hickman's deposition and trial testimony to argue that he was confused about the RR/BAYC sales page on Foundation. This is inaccurate. As Mr. Hickman credibly testified at trial, he was not confused, and his deposition video shows him reviewing and describing all portions of the exhibit. Trial Tr. [Hickman] 219:3-12 ("Q Were you at your deposition confused about whether the page that you were shown was indeed a Yuga Labs page or a page by Mr. Ripps? A I was not confused. The video shows me describe all of the aspects of the page real time. Q And were you—what was

1  your level of confidence that this Foundation page that you were shown at your
2  deposition was indeed a page for the RR/BAYC collection? A It was that it was
3  actually Ryder's creator page for the RR/BAYC collection.").

4  Third, the evidence Yuga cites to is not supportive of a finding that there was
5  consumer confusion. Specifically, Yuga relies on survey evidence provided by Ms.
6  O'Laughlin. For the reasons provided in Defendants' response in *supra* ¶ 32, Ms.
7  O'Laughlin's surveys do not show any actual or likely consumer confusion because
8  they (1) used an overly broad population that included people that don't even know
9  what an NFT is, (2) used two contradictory surveys, (3) failed to account for strong
10 priming effects based on the survey format, and (4) applied to market conditions
11 that lasted only a matter of days. Further, this unreliable survey evidence does not
12 show that anyone who actually reserved an RR/BAYC NFT was confused about its
13 origin and, therefore, does not undermine the accuracy of this finding of fact.

14 The documentary evidence Yuga relies on is unsupportive. Yuga relies on
15 JTX-1029, which includes a tweet from GemBot, which is an automated software
16 application and not a real person. *See* Cahen Decl. ¶¶ 226-227. The very first
17 comments are users identifying that Mr. Ripps is the source of the NFT. There is
18 no indication that any of the Twitter users commenting actually reserved an
19 RR/BAYC NFT. *See* JTX-1030, JTX-1032; JTX-1031, JTX-1034, JTX-1035.

20 Yuga also relies on private chats that the RR/BAYC creators used. But these
21 chats do not show actual confusion. JTX-109 includes a discussion where Mr.
22 Lehman raises concerns about the design of ApeMarket and Mr. Cahen makes
23 suggestions on how to make it clearer. Further, ApeMarket was never was
24 launched and could never have caused any consumer confusion. Cahen Decl. ¶¶
25 257-262; *see also* JTX-801.185.

26 Yuga also relies on a screenshot, JTX-701, of a Bloomberg newscast. This
27 exhibit does not support a finding of actual confusion. The chart separately lists
28 both "Bored Ape Yacht Club" and "Bored Ape Yacht Club V3" indicating that the

anchor understood that these were two different projects. Additionally, as Mr. Cahen testified, he is not aware of anyone who watched the Bloomberg program and reserved an RR/BAYC NFT believing it to be a Yuga NFT. Cahen Decl. ¶ 252.

Additionally, Yuga cites to the Lehman Declaration, JTX-1, the accuracy and credibility of which are tainted by Mr. Lehman's motivations to settle his ongoing case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's case against Mr. Lehman, JTX-621, which was entered after Mr. Lehman settled.

Yuga also relies on Mr. Ripps's deposition transcript where he discusses how the LooksRare platform that sold RR/BAYC NFTs looked like at one point in time. Ripps Depo. Designations (Dkt. 396) at 290:4-9. This does nothing to support a finding of confusion given the ability of any consumer to determine the provenance of an RR/BAYC NFT through Etherscan. Ripps Decl. ¶¶ 88-89 (Dkt. 346) (uncontested). Further this does nothing to undermine this finding of fact, which states that Mr. Ripps is not aware of any actual confusion.

Finally, Yuga also relies on witnesses that made conclusory and unfounded statements about possible confusion. *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22. These statements do not support a finding of actual confusion or likelihood of confusion.

Fourth, Yuga states that Mr. Ripps and Mr. Cahen did not offer admissible evidence that consumers believed RR/BAYC NFTs were not affiliated with Yuga. Not true. The trial evidence shows that people reserved RR/BAYC NFTs out of protest. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

Fifth, Yuga's objection is inaccurate given Defendants used modified versions of the alleged BAYC Marks in their reservations. For example, the logo used states "This Logo is Based on the SS Totenkopf; 18 Teeth" and the rrbayc.com website use "RR/BAYC" throughout. *See* JTX-2085.

Sixth, Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014). For example, in *Sienze v Kutz*, the Court held that although **aspects** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019). This case is just like *Sienze*: the summary judgment ruling on likelihood of confusion only applies to the issue of infringement and is not adequate support for a determination of how to apportion disgorgement of profits attributable to infringement.

Finally, if Yuga is entitled to disgorgement of Mr. Ripps and Mr. Cahen's profits, which is something Defendants argue they are not, Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.* And as outlined above, there was no evidence presented that a single purchase of RR/BAYC NFTs was made by someone thinking it was sponsored by Yuga.

**Plaintiff's Reply:**

Defendants' internal communications, and Mr. Hickman's reaction to Defendants' Foundation page, demonstrate that Defendants were aware that their infringement would confuse consumers and refused to take steps to avoid that confusion. Rather than confront this fact, Defendants engage in collateral disputes to obfuscate the issues. These responses should be rejected.

As discussed *supra*, Defendants' responses lack merit.  Specifically, (1) Defendants' anecdotal evidence of communications with purported purchasers is unpersuasive (*supra* ¶ 11), (2) Defendants fail to demonstrate that "many" consumers purchased Defendants' infringing NFTs out of protest (*supra* ¶ 39), (3) the @0xGem Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (4) Ms. O'Laughlin's report is reliable and accurate (*supra* ¶ 41), (5) Defendants' assertion that the Bloomberg segment would not cause confusion because both collections were listed lacks credibility (*supra* ¶ 32), (6) the Court's summary judgment order establishes Defendants' liability (*supra* ¶ 9), (7) Defendants' "disclaimer" did not prevent confusion (*supra* ¶ 20), (8) most of Defendants' infringing NFTs did not sell on rrbayc.com (*infra* ¶¶ 19, 103), (9) consumers verifying Defendants' infringing NFTs on Etherscan would still be confused (*supra* ¶ 32), (10) all of Defendants' profits are attributable to their infringement (*infra* ¶ 103), (11) the record shows multiple instances of actual confusion (*supra* ¶ 32), (12) Defendants used Yuga Labs marks (*supra* ¶ 32), (13) Defendants failed to take steps to avoid confusion (*supra* ¶ 33), (14) Mr. Lehman's declaration is accurate and contradicts Defendants (*supra* ¶ 22, *infra* ¶ 58), (15) Defendants fail to recognize the likelihood of confusion as to sponsorship or affiliation (*supra* ¶ 19), (16) Defendants fail to rebut Yuga Labs' witness testimony (*supra* ¶ 44), (17) Defendants fail to support Mr. Ripps' deposition testimony about LooksRare (*supra* ¶ 40), (18) Defendants fail to account for ongoing harm (*supra* ¶ 32).

Additionally, The Court should reject Defendants' responses because (1) Mr. Hickman was aware of at least one instance of actual confusion—his own.

**Mr. Hickman Was Aware That Defendants' Infringement Was Confusing Because He Himself Was Confused:** Mr. Hickman was clearly confused when he viewed Defendants' infringing Foundation webpage.  When asked to identify the source of the NFTs for sale in JTX-28 (the sales page of his partners' own infringing NFTs) he paused for around five seconds, examined the

page closely and stated that the page "looks to be Bored Ape Yacht Club." Trial Tr. 213:9-13 (lodged at Dkt. 415); *id.* His body language and demeanor showed that, after this examination, Mr. Hickman genuinely believed that he was looking at a Bored Ape Yacht Club sales page. It was only after around fifteen seconds of a second, long, pause and closer examination that Mr. Hickman amended his answer and identified the page as Defendants' infringing website. Dkt. 415. Mr. Hickman's testimony at trial that he was not confused lacks credibility in light of his testimony and his demeanor when giving his deposition testimony. His self-serving denial contradicts what was clear in his video-taped deposition and at trial. Dkt. No. 415 (notice of lodging of video testimony); Trial Tr. 213:13. Mr. Hickman's bias explains why he would falsely deny his confusion: if even an insider like Mr. Hickman was confused by Defendants' use of Yuga Labs' marks on Defendants' marketplace page, the "nonexpert, nontechnical public" stood no chance when presented with Defendants' scam. Trial Tr. at 135:18-19.

Mr. Hickman is not credible, so his testimony that he was not confused should be given no weight. *See supra* ¶ 7, 8. And Mr. Hickman's recent sworn statements in the related lawsuit against him demonstrate that he is not a credible witness, and that he is willing to lie under oath where it best serves him. In Yuga Labs' lawsuit against Mr. Hickman that is currently pending in the District of Nevada, Mr. Hickman makes false representations to the court and disclaims his role as one of the lead developers in the RR/BAYC scam. Specifically, in an effort to vacate the default judgment entered against him, Mr. Hickman states under oath, "I previously provided testimony in the *Yuga Labs, Inc., v. Ryder Ripps, Jeremy Cahen*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. 2022) case that my only involvement in the websites located at the domain names <rrbayc.com> and <apemarket.com> ('Domain Names') included making some contributions to the 'RSVP Smart Contract.'"). Hickman Decl. ISO Reply to Motion to Vacate Default

1  Judgment (Dkt. 38-1), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Sept. 20, 2023), at ¶ 3.

This statement is demonstrably false and directly contradicted by the record in this case. In Mr. Hickman's prior testimony before *this* Court, he claimed to be a major contributor to the development and implementation of the RR/BAYC and Ape Market websites. *See* Hickman Depo. Designations (Dkt. 394) at 42:17-19 ("[T]he smart contract coders and website developers in that context is myself and Tom."). *See also*, Hickman Decl. (Dkt. 345) ¶ 69 ("I also helped Mr. Ripps by working on developing the rrbayc.com website, which was where collectors would be able to use the RSVP program to make reservations."); ¶ 70 ("Mr. Ripps explained what he wanted the rrbayc.com website to look like, and I did my best to implement his creative vision."). Mr. Hickman's blatant contradictions and willingness to lie for personal gain demonstrate his lack of credibility as a witness and render his declaration unreliable.