**Defendants' Disputed Post Trial Finding of Fact No. 43:**

Yuga was unable to identify even a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").

**Plaintiff's Basis for Dispute:**

As Mr. Solano explained, being scammed is "super embarrassing" and consumers who were tricked "weren't going to, you know, raise their hand and shout about it." Trial Tr. at 54:10-16. Nonetheless, Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion. *See, e.g.*, *supra* ¶ 32 (collecting examples). Defendants were aware of the confusion. *See, e.g.*, *supra* at ¶ 24 (collecting examples). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

Yuga's objection is unfounded. First, there is ample evidence that there was not consumer confusion. Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. The rrbayc.com website—through which the majority of RR/BAYC commissions occurred (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested);

Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  The rrbayc.com website also required reading and clicking through a disclaimer before being able to commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these additional steps so that the artistic purpose of the work would be clear.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Unsurprisingly, therefore, the evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest against Yuga.  *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

Second, as Defendants credibly testified, Mr. Ripps and Mr. Cahen are not aware of a single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).  Buttressing this fact, Yuga's founders were also not aware of a single instance of actual confusion.  Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

To help explain why no one in this case has been able to identify a single confused consumer, Yuga relies on testimony from Mr. Solano, a lay person, that he thinks people may be embarrassed to admit they were confused.  The weight of Mr. Solano's undocumented and unsupported beliefs is negligent.  It also fails to rebut the fact that Yuga cannot identify any instance of actual confusion.

Third, the evidence Yuga cites to is not supportive of a finding that there was consumer confusion.  Specifically, Yuga relies on survey evidence provided by Ms. O'Laughlin. For the reasons provided in Defendants' response in *supra* ¶ 32, Ms. O'Laughlin's surveys do not show any actual or likely consumer confusion because they (1) used an overly broad population that included people that don't even know what an NFT is, (2) used two contradictory surveys, (3)failed to account for strong priming effects based on the survey format, and (4) applied to market conditions that lasted only a matter of days.  Further, this unreliable survey evidence does not

1  show that anyone who actually reserved an RR/BAYC NFT was confused about its
2  origin and, therefore, does not undermine the accuracy of this finding of fact.
3      The documentary evidence Yuga relies on is unsupportive. Yuga relies on
4  JTX-1029, which includes a tweet from GemBot, which is an automated software
5  application and not a real person. *See* Cahen Decl. ¶¶ 226-227. The very first
6  comments are users identifying that Mr. Ripps is the source of the NFT. There is
7  no indication that any of the Twitter users commenting actually reserved an
8  RR/BAYC NFT. *See* JTX-1030, JTX-1032; JTX-1031, JTX-1034, JTX-1035.
9      Yuga also relies on private chats that the RR/BAYC creators used. But these
10 chats do not show actual confusion. JTX-109 includes a discussion where Mr.
11 Lehman raises concerns about the design of ApeMarket and Mr. Cahen makes
12 suggestions on how to make it clearer. Further, ApeMarket was never was
13 launched and could never have caused any consumer confusion. Cahen Decl. ¶¶
14 257-262; *see also* JTX-801.185.
15     Yuga also relies on a screenshot, JTX-701, of a Bloomberg newscast. This
16 exhibit does not support a finding of actual confusion. The chart separately lists
17 both "Bored Ape Yacht Club" and "Bored Ape Yacht Club V3" indicating that the
18 anchor understood that these were two different projects. Additionally, as Mr.
19 Cahen testified, he is not aware of anyone who watched the Bloomberg program
20 and reserved an RR/BAYC NFT believing it to be a Yuga NFT. Cahen Decl. ¶ 252.
21     Additionally, Yuga cites to the Lehman Declaration, JTX-1, the accuracy and
22 credibility of which are tainted by Mr. Lehman's motivations to settle his ongoing
23 case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's
24 case against Mr. Lehman, JTX-621, which was entered after Mr. Lehman settled.
25     Yuga also relies on Mr. Ripps's deposition transcript where he discusses how
26 the LooksRare platform that sold RR/BAYC NFTs looked like at one point in time.
27 Ripps Depo. Designations (Dkt. 396) at 290:4-9. This does nothing to support a
28 finding of confusion given the ability of any consumer to determine the provenance

of an RR/BAYC NFT through Etherscan. Ripps Decl. ¶¶ 88-89 (Dkt. 346) (uncontested). Further this does nothing to undermine this finding of fact, which states that Mr. Ripps is not aware of any actual confusion.

Finally, Yuga also relies on witnesses that made conclusory and unfounded statements about possible confusion. *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22. These statements do not support a finding of actual confusion or likelihood of confusion.

Fourth, Yuga states that Mr. Ripps and Mr. Cahen did not offer admissible evidence that consumers believed RR/BAYC NFTs were not affiliated with Yuga. Not true. The evidence presented at trial shows that many people reserved RR/BAYC NFTs out of a protest. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595-2596; JTX-2599. Accordingly, there was ample evidence presented at trial that showed consumers were not confused about the source of the RR/BAYC NFTs.

Fifth, Yuga's objection is inaccurate given Defendants used modified versions of the alleged BAYC Marks in their reservations. For example, the logo used states "This Logo is Based on the SS Totenkopf; 18 Teeth." *See* JTX-2085. Also, the website for the project, rrbayc.com, used the modified "RR/BAYC" throughout. *Id.*

Sixth, Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

Seventh, if Yuga is entitled to disgorgement of Mr. Ripps and Mr. Cahen's profits, which is something Defendants argue they are not, Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*,

982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.* And as outlined above, there was no evidence that a single purchase of RR/BAYC NFTs was made by a confused consumer.

Finally, Yuga also relies on the Declaration of Greg Solano to argue that Yuga owns the asserted marks. But Mr. Solano's testimony was not credible given the many false and misleading statements contained in his declaration, as well as his repeated impeachment at trial. For example, Mr. Solano was also forced to concede on cross-examination that his sworn declaration included a false statement claiming that "Defendants continue to receive royalties or creator fees from sales on secondary marketplaces." Trial Tr. [Solano] 48:15-49:4; *see also* Trial Tr. [Solano] 40:3-14; Trial Tr. [Solano] 38:14-16; Trial Tr. [Solano] 38:17-19. Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11; *id.* at 34:9-19.

**Plaintiff's Reply**:

Defendants repetitive and non-responsive briefing should be rejected. As discussed *supra*, Defendants' responses lack merit. Specifically, (1) Defendants' anecdotal evidence of communications with purported purchasers is unpersuasive (*supra* ¶ 11), (2) Defendants fail to demonstrate that "many" consumers purchased Defendants' infringing NFTs out of protest (*supra* ¶ 39), (3) the @0xGem Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (4) Ms. O'Laughlin's report is reliable and accurate (*supra* ¶ 41), (5) the Court's summary judgment order establishes Defendants' liability (*supra* ¶ 9), (6) Defendants' "disclaimer" did not prevent confusion (*supra* ¶ 20), (7) most of Defendants' infringing NFTs did not sell on rrbayc.com (*infra* ¶¶ 19, 103), (8) consumers verifying Defendants'

infringing NFTs on Etherscan would still be confused (*supra* ¶ 32), (9) all of Defendants' profits are attributable to their infringement (*infra* ¶ 103), (10) the record shows multiple instances of actual confusion (*supra* ¶ 32), (11) Defendants used Yuga Labs' marks (*supra* ¶ 40), (12) Defendants failed to take steps to avoid confusion (*supra* ¶ 33), (13) Mr. Lehman's declaration is accurate and contradicts Defendants (*supra* ¶ 22, *infra* ¶ 58), (14) Defendants fail to recognize the likelihood of confusion as to sponsorship or affiliation (*supra* ¶ 19), (15) Defendants fail to rebut Yuga Labs' witness testimony (*supra* ¶ 44), and (16) Defendants fail to support Mr. Ripps' deposition testimony about LooksRare (*supra* ¶ 40).

Additionally, the Court should reject Defendants' responses because (1) Mr. Solano is a credible witness and his testimony is supported by Yuga Labs' experts, and (2) Defendants' testimony that they were unaware of the confusion lacks credibility.

**Mr. Solano's Accurate Testimony Is Supported By Yuga Labs' Experts:** Mr. Solano is credible for the reasons discussed *supra* ¶ 3. Additionally, Defendants' attempts to impeach Mr. Solano in these responses fall short. Defendants' repetitive and non-responsive questioning of Mr. Solano did not impeach his testimony. *See* Trial Tr. at 34:9-19 ("Q: Do you know whether Ape Market exists? / A: We have the code for Ape Market from Tom Lehman, yes. / Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? / A Yes"). This does not impeach Mr. Solano, it merely demonstrates that as the case progressed and new information was discovered, it became evident to Mr. Solano that Ape Market does in fact exist as a marketing platform, and the marketplace was ready to launch. *See* Atalay Decl. (Dkt. 337) ¶ 9; *see also* JTX-807; JTX-808. Mr. Atalay confirmed this fact in his trial testimony. Trial Tr. at 137:23-24 ("The code was in such a state of completion

that it was operational."). That Mr. Solano's testimony evolved as new facts were discovered is unremarkable.

Mr. Solano's experience as the President of the company that created the most successful NFT project of all time allowed him to testify as to his own experience that consumers are hesitant to admit to being scammed. The Court will weigh the value of Mr. Solano's testimony in light of this personal knowledge. Nevertheless, Yuga Labs offered survey expert testimony to support its witnesses' lay-testimony. Yuga Labs' experts testified to the confusion in the marketplace. *See* O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14 (finding confusion based on survey evidence); Berger Decl. (Dkt. 339) ¶¶ 71-76 (outlining instances of confusion in the marketplace). Defendants again do nothing to discredit Mr. Solano's testimony.

**Defendants' Witnesses Are Not Credible:** Defendants' witnesses are not credible for the reasons discussed *supra* ¶¶ 3, 7, 18, 41. Defendants' testimony that they were unaware of instances of confusion lacks credibility and is contradicted by evidence admitted at trial. *See supra* ¶ 3; *see also* JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"). Indeed, as discussed *supra* ¶ 43, even Mr. Hickman was confused by Defendants' infringement. Trial Tr. 213:9-13 (lodged at Dkt. 415) (Mr. Hickman testifying "looks to be Bored Ape Yacht Club" when viewing Defendants' Foundation page).