**<u>Defendants' Disputed Post Trial Finding of Fact No. 44</u>:**

<u>Gregory Solano, Yuga's President, could not identify a single person who ever bought an RR/BAYC made by Ryder Ripps believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1.</u>

**Plaintiff's Basis for Dispute:**

As Mr. Solano explained, being scammed is "super embarrassing" and consumers who were tricked "weren't going to, you know, raise their hand and shout about it."  Trial Tr. at 54:10-16.  Nonetheless, Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion. *See, e.g.*, *supra* ¶ 32 (collecting examples).    Defendants were aware of the confusion. *See, e.g.*, *supra* at ¶ 24.  And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs.  JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

Yuga's objection is unfounded.  First, there is ample evidence that there was no consumer confusion.  Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way.  Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344); Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10; Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these

1  requirement and additional steps so that the artistic purpose of the work would be

2  clear to participants. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

3      Unsurprisingly, therefore, the evidence presented at trial shows that many

4  people who reserved RR/BAYC NFTs did so out of a protest against Yuga. *See*

5  Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039,

6  JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

7      Second, as Defendants credibly testified, Mr. Ripps and Mr. Cahen are not

8  aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346)

9  (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).

10  Buttressing this fact, Yuga's founders were also not aware of a single instance of

11  actual confusion. Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

12      To help explain why no one in this case has been able to identify a single

13  person who reserved an RR/BAYC NFT because they were confused about its

14  origin, Yuga cites to testimony from Mr. Solano, a lay person, that he thinks people

15  may be embarrassed to admit they were confused. The weight of Mr. Solano's

16  undocumented and unsupported beliefs is negligent. Further, said beliefs do

17  nothing to combat the accuracy of this finding of fact, which is that Mr. Solano has

18  not been able to identify any instance of actual confusion.

19      Third, the evidence Yuga cites to is not supportive of a finding that there was

20  consumer confusion. Specifically, Yuga relies on survey evidence provided by Ms.

21  O'Laughlin to demonstrate confusion. As demonstrated at trial, however, Ms.

22  O'Laughlin conducted two flawed surveys that failed to measure confusion. Ms.

23  O'Laughlin acknowledged that she used an overly expansive definition of the

24  market that included people who did not have any interest in purchasing an NFT,

25  much less knowledge of what an NFT is. Trial Tr. [O'Laughlin] 150:2-151:16;

26  152:4-10. She acknowledged that she changed the survey population after running

27  pretests to make it more inclusive. *Id*. at 144:25-146:7. Ms. O'Laughlin also

28  acknowledged that she lacked basic knowledge about the NFT market, admitting to

erroneously believing that cryptocurrency was an NFT when she formulated her surveys and her reports.  *Id.* at 147:12-14.  The result of her lack of knowledge was an inherently flawed survey that could not show confusion because the market was too broad.  This was despite her acknowledgement that choosing the right sample population "matters for the analysis" and choosing an improper sample population would be a mistake.  *Id.* at 146:18-25.

Ms. O'Laughlin also erred by producing two contradictory surveys.  In 2020 she authored an article titled, "Which Method is For You? Not All Surveys Are Made the Same" JTX-314.  In that article she discusses choosing between the Squirt and Eveready surveys on the basis of the strength of the mark.  In this case, however, she ignored her own advice and operated both surveys.  This was despite acknowledging that at deposition she agreed with her earlier advice that the Eveready survey is most appropriate when the mark is strong, and the Squirt survey when the mark is weak.  Trial Tr. [O'Laughlin] 143:9-144:6.  All the while, she never discerned the strength of the mark.  *Id.* at 144:12-18.  This broke with her prior practice as well, as it was the first case she personally testified in where she offered an opinion based on both surveys.  *Id*. at 144:19-24.  Ms. O'Laughlin should have chosen between the surveys, but by not doing so she did not produce a finding of value on either survey.

Ms. O'Laughlin also could not explain the extremely strong priming effect which influenced her results to her Everready survey.  In that survey, people were split into those who saw a version of the RR/BAYC Foundation page that included the words "Bored Ape Yacht Club."  Those in the control group of the experience would see the words "Chill Gorilla Boat Crew."  Those in the experiment group who wrote the words "Bored Ape Yacht Club" verbatim and were counted as confused, but those in the control group who copied down the words "Chill Gorilla Boat Crew" were not counted as confused.  Trial Tr. [O'Laughlin] 154:24-157:14.  Twenty-seven percent of those in the control group wrote "Chill Gorilla Boat

1   Crew" verbatim, but were not counted as confused.  *Id*. at 157:9:14; 158:20-159:1.

2   Ms. O'Laughlin admitted that she did not account for this extreme priming effect

3   calling it "not particularly relevant."  *Id.* at 158:20-159:1.

4        Lastly, Ms. O'Laughlin acknowledged that she could not attest to how long

5   the versions of the websites she used existed.  *See* Trial Tr. [O'Laughlin] 161:12-

6   163:10; 163:13-163:20; 165:12-22.  At most, to the extent that her survey is not

7   fundamentally flawed, she can attest to confusion on two websites for only a matter

8   of days.  *Id*.  Overall, her surveys were so fundamentally flawed with errors this

9   Court should reject them and provide them no weight.

10        Further, this unreliable survey evidence, again does not show that anyone

11   who actually reserved an RR/BAYC NFT was confused about its origin and,

12   therefore, does not undermine the accuracy of this finding of fact.

13        Fourth, Yuga cites to its own declarations and trial testimony where their

14   witnesses make conclusory and unfounded statements about possible confusion.

15   *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin

16   Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial

17   Tr. (Dkt. 392) at 53:14-54:22.  These statements do not support a finding, however,

18   that anyone who bought an RR/BAYC NFT was actually confused.

19        Fifth, Yuga states that Mr. Ripps and Mr. Cahen did not offer admissible

20   evidence that consumers believed RR/BAYC NFTs were not affiliated with Yuga.

21   This is categorically false.  The evidence presented at trial shows that many people

22   who reserved RR/BAYC NFTs did so out of a protest against Yuga.  *See* Ripps

23   Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-

24   2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.   Accordingly, there was ample

25   evidence presented at trial that showed consumers were not confused about the

26   source of the RR/BAYC NFTs.

27        Finally, Mr. Solano's testimony was not credible given the many false and

28   misleading statements contained in his declaration, as well as his repeated

impeachment at trial.  Trial Tr. [Solano] 48:15-49:4, 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11, 34:9-19.

**Plaintiff's Reply:**

As discussed *supra*, Defendants' responses lack merit.  Specifically, (1) Defendants' anecdotal evidence of communications with purported purchasers is unpersuasive (*supra* ¶ 11), (2) Defendants fail to demonstrate that "many" consumers purchased Defendants' infringing NFTs out of protest (*supra* ¶ 39), (3) the @0xGem Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (4) Ms. O'Laughlin's report is reliable and accurate ( *supra* ¶ 41), (5) the Court's summary judgment order establishes Defendants' liability (*supra* ¶ 9), (6) Defendants' "disclaimer" did not prevent confusion (*supra* ¶ 20), (7) most of Defendants' infringing NFTs did not sell on rrbayc.com (*infra* ¶¶ 19, 103), (8) consumers verifying Defendants' infringing NFTs on Etherscan would still be confused (*supra* ¶ 32), (9) all of Defendants' profits are attributable to their infringement (*infra* ¶ 103), (10) the record shows multiple instances of actual confusion (*supra* ¶ 32), (11) Defendants used Yuga Labs' marks (*supra* ¶ 40), (12) Defendants failed to steps to avoid confusion (*supra* ¶ 33), (13) Mr. Lehman's declaration is accurate and contradicts Defendants (*supra* ¶ 22, *infra* ¶ 58), (14) Defendants fail to recognize the likelihood of confusion as to sponsorship or affiliation (*supra* ¶ 19), (15) Defendants fail to support Mr. Ripps' deposition

testimony about LooksRare (*supra* ¶ 40), and (16) Mr. Solano is a credible witness and his testimony is supported by Yuga Labs' experts (*supra* ¶¶ 3, 8, 44).

Additionally, the Court should reject Defendants' responses because (1) evidence admitted at trial demonstrates that Defendants were apathetic to the likelihood of confusion and (2) Defendants fail to rebut Yuga Labs' Witnesses.

**Defendants Were Aware Of Confusion But Chose Not To Act:**  The evidence shows that Defendants were aware of confusion for the reasons discussed *supra* ¶ 7.  Defendants' internal communications demonstrate that, despite this knowledge, they were apathetic to consumer confusion.  *See* JTX-801.196 (Mr. Lehman noting, "we should not under-estimate how confusing it is" and Mr. Cahen responding, "yeah.").  Indeed, Defendants were warned by their attorney that they needed to make changes to their infringing products in order to avoid confusion. *See* JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark").  Yet Defendants still used Yuga Labs' unaltered marks on, among other places, their Foundation page and in the RR/BAYC smart contact, despite the warning from their attorney.  JTX-28. Defendants cannot now claim ignorance when they were warned, repeatedly, by their attorney and their co-conspirators that their infringing NFTs were confusing.

**Defendants Fail To Rebut Yuga Labs' Witnesses:**  Defendants' contention that Yuga Labs' witness testimony was "conclusory" is unfounded.  Indeed, Defendants' contention itself is conclusory as they fail to cite evidence in the record to support their claim.  The Court rejected the vast majority of Defendants' voluminous objections to Yuga Labs' trial declarations, including those made on the basis that the witnesses lacked personal knowledge or were speculating.  See, e.g., Trial Tr. at 69:8-12 (the Court overruling all but three of Defendants' thirty-eight objections to Ms. Muniz's testimony).  Yuga Labs' witnesses' testimony supports a likelihood that at least some portion of RR/BAYC purchasers were confused.  See, e.g., Solano Decl. ¶ 42 ("Time and time again, Defendants used the

BAYC Marks to sell identical-looking NFTs in the exact same markets that Yuga Labs' BAYC NFTs are sold."); see also SJ Order (Dkt. 225) at 11-13;  ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'").  This testimony speaks directly to the likelihood that consumers were confused, and is supported by significant documentary evidence.  JTX-29; JTX-137, JTX-670.  Mr. Solano cited to all of these exhibits in his declaration.  This testimony is not "conclusory," it is well supported and directly on point.