**Defendants' Disputed Post Trial Finding of Fact No. 45:**

<u>No sales of RR/BAYC NFTs were the result of actual consumer confusion.</u> *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

**Plaintiff's Basis for Dispute:**

Defendants offer no evidence to support this contention and Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion. *See, e.g.*, *supra* ¶ 32 (collecting examples). Defendants did not introduce a single piece of expert testimony or other market analysis. They do not have a survey of or even communications from the majority of purchasers. Instead, they have admitted that a substantial number of purchasers demanded a refund. Ripps Decl. (Dkt. 346) ¶¶ 119, 170, 172, 174-175. At least some of those hundreds of refund demands could have been from confused consumers who "weren't going to, you know, raise their hand and shout about it." Trial Tr. at 54:10-16. Even more, Defendants were aware of the confusion. *See, e.g.*, *supra* ¶ 24 (collecting examples). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

Yuga's objection is unfounded. First, there is ample evidence that there was no consumer confusion. Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344); Ripps Decl. ¶¶ 101-103 (Dkt.

346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10; Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these requirements and additional steps so that the artistic purpose of the work would be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

The evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest against Yuga.  *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

Second, as Defendants credibly testified, Mr. Ripps and Mr. Cahen are not aware of a single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344). Buttressing this fact, Yuga's founders were also not aware of a single instance of actual confusion.  Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

Yuga cites to Mr. Ripps's declaration's discussion of offering refunds for the RR/BAYC NFTs to support an argument that some of those refunds came from consumers that were confused about the NFT's origin.  This is inaccurate and unfounded speculation.  Ripps Decl. ¶ 121 (Dkt. 346) (uncontested).  Further, Mr. Ripps's also testified that he never received a refund request from anyone stating they were confused or thought that they were reserving a Yuga product. Ripps Decl. ¶ 122 (Dkt. 346) (uncontested).

Third, the evidence Yuga cites to is not supportive of a finding that there was consumer confusion.  Specifically, Yuga relies on survey evidence provided by Ms. O'Laughlin.  As demonstrated at trial, however, Ms. O'Laughlin conducted two flawed surveys that failed to measure confusion.  Trial Tr. [O'Laughlin] 150:2-151:16; 152:4-10, 144:25-146:7, 147:12-14, 146:18-25.

Ms. O'Laughlin also erred by producing two contradictory surveys.  In 2020 she authored an article titled, "Which Method is For You? Not All Surveys Are

Case 2:22-cv-04355-JFW-JEM   Document 429-39   Filed 10/05/23   Page 3 of 7   Page ID
#:34676

Made the Same" JTX-314. In that article she discusses choosing between the Squirt and Eveready surveys on the basis of the strength of the mark. In this case, however, she ignored her own advice and operated both surveys. This was despite acknowledging that at deposition she agreed with her earlier advice that the Eveready survey is most appropriate when the mark is strong, and the Squirt survey when the mark is weak. Trial Tr. [O'Laughlin] 143:9-144:6. All the while, she never discerned the strength of the mark. *Id.* at 144:12-18. This broke with her prior practice as well, as it was the first case she personally testified in where she offered an opinion based on both surveys. *Id*. at 144:19-24. Ms. O'Laughlin should have chosen between the surveys, but by not doing so she did not produce a finding of value on either survey.

Ms. O'Laughlin also could not explain the extremely strong priming effect which influenced her results to her Everready survey. In that survey, people were split into those who saw a version of the RR/BAYC Foundation page that included the words "Bored Ape Yacht Club." Those in the control group of the experience would see the words "Chill Gorilla Boat Crew." Those in the experiment group who wrote the words "Bored Ape Yacht Club" verbatim and were counted as confused, but those in the control group who copied down the words "Chill Gorilla Boat Crew" were not counted as confused. Trial Tr. [O'Laughlin] 154:24-157:14. Twenty-seven percent of those in the control group wrote "Chill Gorilla Boat Crew" verbatim, but were not counted as confused. *Id.* at 157:9:14; 158:20-159:1. Ms. O'Laughlin admitted that she did not account for this extreme priming effect calling it "not particularly relevant". *Id.* at 158:20-159:1.

Lastly, Ms. O'Laughlin acknowledged that she could not attest to how long the versions of the websites she used existed. *See* Trial Tr. [O'Laughlin] 161:12-163:10; 163:13-163:20; 165:12-22. At most, to the extent that her survey is not fundamentally flawed, she can attest to confusion on two websites for only a matter

JOINT STMT. RE DEFENDANTS' PROPOSED POST-
TRIAL FINDING OF FACT NO. 45                     3                    Case No. 2:22-cv-04355-JFW-JEM

of days. *Id.* Overall, her surveys were so fundamentally flawed with errors this Court should reject them and provide them no weight.

Further, this unreliable survey evidence, again does not show that anyone who actually reserved an RR/BAYC NFT was confused about its origin and, therefore, does not undermine the accuracy of this finding of fact.

Also, the documentary evidence Yuga cites to is unsupportive. For example, Yuga cites to JTX-1029, which includes a tweet from GemBot, which is an automated software application and not evidence of a real person's confusion. *See* Cahen Decl. ¶¶ 226-227. This evidence provides no support for an argument that this finding of fact is inaccurate. *See also* JTX-1030, JTX-1032 (Tweets of users that are quickly identifying Mr. Ripps as the source); JTX-1031, JTX-1034, JTX-1035.

Yuga also cites to private chats that the RR/BAYC creators used. These exhibits are unsupportive of a finding that there was actual confusion. For example, JTX-109 includes a discussion where Mr. Lehman raises concerns about how the marketplace is designed and may cause confusion. Mr. Cahen responds and provides suggestions about what they could do to make it even more clear.

Yuga cites to a screenshot, JTX-701, of a Bloomberg newscast. This exhibit does not support a finding of actual confusion. As, Mr. Cahen testified, he is not aware of anyone who watched the Bloomberg program and reserved an RR/BAYC NFT believing it to be a Yuga collection. Cahen Decl. ¶ 252.

Yuga cites to Mr. Ripps's deposition transcript where he discusses how the LooksRare platform that sold RR/BAYC NFTs looked like at one point in time. Ripps Depo. Designations (Dkt. 396) at 290:4-9. Again, this does nothing to support a finding of confusion given the ability of any consumer to determine the provenance of an RR/BAYC NFT through Etherscan. Ripps Decl. ¶¶ 88-89 (Dkt. 346) (uncontested).

Yuga also cites to its own declarations and trial testimony where their witnesses make conclusory and unfounded statements about possible confusion. *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22. These statements do not support a finding, however, that anyone who bought an RR/BAYC NFT was actually confused.

Additionally, Yuga states that Mr. Ripps and Mr. Cahen did not offer admissible evidence that consumers believed RR/BAYC NFTs were not affiliated with Yuga. This is categorically false. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

Finally, if Yuga is entitled to disgorgement of Mr. Ripps and Mr. Cahen's profits, which is something Defendants argue they are not, Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir. 1993)*, abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 839 F.3d 1179 (9th Cir. 2016)*. This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.* And as outlined above, there was no evidence presented that a single purchase of RR/BAYC NFTs was made by someone thinking it was sponsored by Yuga.

**Plaintiff's Reply:**

Defendants again engage in non-responsive argument and soliloquy to attempt to rebut Yuga Labs' objection. Defendants' responses fall short of proving that no sales of Defendants' infringing NFTs were attributable to confusion. Defendants have not and cannot prove this fact. Confusion was likely, and evident,

in the marketplace and Defendants' anecdotal evidence of purported support does not rebut this fact. Defendants' responses should be rejected.

As discussed *supra*, Defendants' responses lack merit. Specifically, (1) Defendants' anecdotal evidence of communications with purported purchasers is unpersuasive (*supra* ¶ 11), (2) Defendants fail to demonstrate that "many" consumers purchased Defendants' infringing NFTs out of protest (*supra* ¶ 39), (3) the @0xGem Tweet and replies demonstrate consumer confusion (*supra* ¶ 32), (4) Ms. O'Laughlin's report is reliable and accurate (*supra* ¶ 41), (5) the Court's summary judgment order establishes Defendants' liability (*supra* ¶ 9), (6) Defendants' "disclaimer" did not prevent confusion (*supra* ¶ 20), (7) most of Defendants' infringing NFTs did not sell on rrbayc.com (*infra* ¶¶ 19, 103), (8) consumers verifying Defendants' infringing NFTs on Etherscan would still be confused (*supra* ¶ 32), (9) all of Defendants' profits are attributable to their infringement (*infra* ¶ 103), (10) the record shows multiple instances of actual confusion (*supra* ¶ 32), (11) Defendants used Yuga Labs' marks (*supra* ¶ 40), (12) Defendants failed to take steps to avoid confusion (*supra* ¶ 33), (13) Mr. Lehman's declaration is accurate and contradicts Defendants (*supra* ¶ 22, *infra* ¶ 58), (14) Defendants fail to recognize the likelihood of confusion as to sponsorship or affiliation (*supra* ¶ 19), (15) Defendants fail to rebut Yuga Labs' witness's testimony (*supra* ¶ 44), (16) Defendants fail to support Mr. Ripps' deposition testimony about LooksRare (*supra* ¶ 40), and (17) evidence admitted at trial demonstrates that Defendants' were apathetic to the likelihood of confusion (*supra* ¶ 44).

Additionally, The Court should reject Defendants' responses because (1) Defendants fail to disprove that any consumer purchased their infringing NFTs out of confusion.

**Defendants Fail To Disprove That Any RR/BAYC Purchasers Were Confused:** Defendants present no evidence to show that no consumers

1  purchased their infringing NFTs out of confusion.  Defendants' anecdotal evidence
2  of purported support from purchasers does not rebut the evidence of actual
3  confusion in the record as explained *supra* ¶ 3.  Defendants also admit that they
4  processed over $90,000 in refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75) which
5  undermines Defendants' suggestion that purchasers of their infringing NFTs were
6  universally supportive and that no one was confused.  Mr. Ripps' self-serving
7  testimony that he created the refund process to "ensure that every person that
8  received one was happy with the work they got" does not prove that no consumer
9  that requested a refund was confused.  Ripps. Decl. (Dkt. 246) ¶ 121.  Defendants
10 claim it is not feasible for Defendants to contact every consumer who requested a
11 refund or purchased an RR/BAYC NFT and therefore Mr. Ripps lacks knowledge
12 of why each refund was issued or why each purchase was made.  In any event, a
13 consumer who purchased an RR/BAYC NFT thinking they were purchasing the
14 real thing would certainly not be "happy with the work they got."  And as discussed
15 *supra* there is ample evidence of consumer confusion in the record.  *See supra* ¶ 3;
16 *see also* O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14 (discussing survey evidence finding
17 that Defendants' infringement caused confusion).  Defendants fail to support this
18 finding of fact.