**Defendants' Disputed Post Trial Finding of Fact No. 47:**

<u>Yuga could not identify a single e-mail or text message discussing (1) confusion associated with the RR/BAYC project, Trial Tr. [Muniz] 86:14-87:6, or (2) how RR/BAYC uniquely caused any problems in the day-to-day business operations of Yuga. Trial Tr. [Muniz] 87:17-88:6. Yuga was also unable to identify any documentation of any press inquiries related to the RR/BAYC collection. Trial Tr. [Muniz] 88:7-89:2.</u>

**Plaintiff's Basis for Dispute:**

Likelihood of confusion has already been established in this case. SJ Order (Dkt. 225) at 10-13. Even to the extent Defendants seek to relitigate this issue, this statement is incorrect and misleading. The Court previously ruled that given the publicly available evidence of confusion and the evidence within Defendants' possession, it was not proportionate to the needs of the case for Yuga Labs to search its internal communications regarding confusion. Dkt. 87 at 2 (denying motion to compel production of further "documents on lack of consumer confusion"). As the Court found, Yuga Labs' extensive enforcement efforts "related to Defendants' confusing use of Yuga's marks," among other evidence, was sufficient to demonstrate confusion. *Id.* Further, there is abundant evidence of actual confusion in this case unique to Defendants' infringing NFTs. *See, e.g.*, JTX-701 and JTX-1049 (Bloomberg news segment reporting Defendants' infringing NFT collection, under the name "Bored Ape Yacht Club V3"); JTX-705 (Twitter bot misreporting reporting sale of Defendants' infringing NFT as "Bored Ape Yacht Club" NFT); JTX-1029 (noting "confusion in these comments" in response to JTX-705); JTX-1030 (comment indicating confusion). Even Defendants' business partner, Mr. Lehman admitted to confusion, agreed to a consent judgment admitting to this confusion, and warned Defendants about the confusion. JTX 1; JTX 621. That Yuga Labs did not produce further

documentation of confusion does not establish that confusion did not exist or undermine the substantial other evidence.

Yuga Labs also provided persuasive and unrebutted evidence of harm and confusion unique to Defendants' infringement. Dr. Berger's unrebutted expert report (JTX-722) and testimony explain how Defendants' "minting and sales of RR/BAYC NFTs using Yuga Labs' marks harmed the brand equity of BAYC for multiple reasons," including by diminishing the "perceived exclusivity of authentic BAYC NFTs," causing confusion, and damaging "consumer attitudes toward the BAYC brand." JTX-722 ¶ 11; *see also* Berger Decl. (Dkt. 339) ¶¶ 62-92; 340. Additionally, Ms. O'Laughlin's unrebutted survey evidence determined that there was actual confusion in the marketplace, finding net confusion rates of 40.4% on Foundation and 20.0% on OpenSea, respectively. JTX-721 (O'Laughlin Expert Report) ¶¶ 16, 47, 73; *see also* O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

The evidence at trial showed that Yuga could not identify a single e-mail or text message at Yuga discussing the alleged confusion and harm that the RR/BAYC collection caused despite the fact that Yuga is a self-proclaimed multi-billion dollar corporation. Yuga admits that it used e-mail and instant messaging to communicate for business. Trial Tr. [Muniz] 85:24-86:4. And yet, Yuga could not identify a single e-mail or text message discussing (1) confusion associated with the RR/BAYC project, Trial Tr. [Muniz] 86:14-87:6, or (2) how RR/BAYC uniquely caused any problems in the day-to-day business operations of Yuga. Trial Tr. [Muniz] 87:17-88:6. Yuga was also unable to identify any documentation of any press inquiries related to the RR/BAYC collection. Trial Tr. [Muniz] 88:7-89:2. Further, Yuga could not identify a single email, text message, or any other

contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions changes in negotiating dynamics with brand partners as a result of the RR/BAYC collection. Trial Tr. [Muniz]101:7-12. Ultimately, Yuga did not mention RR/BAYC in any of its quarterly reports to its investors. Trial Tr. [Muniz] 89:18-23.

Yuga attempts to rebut the evidentiary record by referencing this Court's summary judgment order even though this Court did not make any finding at summary judgment on this particular issue. Further, Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

Yuga then incorrectly argues that the fact it has no internal documents indicating confusion can be ignored given the "abundance" of evidence of confusion. But the examples Yuga cites are not actually evidence of confusion. For example, Yuga relies on a Bloomberg news segment. But the Bloomberg news segment did not discuss RR/BAYC NFTs or even the BAYC V3 label that Yuga complains about. The Bloomberg Crypto segment centered on the recent cryptocurrency market crash and its impact on the valuation of various cryptocurrency assets. JTX-1049. During a discussion of the NFT market, Bloomberg news reporters highlighted that NFT valuation had dropped in 2022, along with the valuation of other cryptocurrency assets. *Id.* However, during a brief discussion of an "eight percent jump in the NFT index," a chart listing NFT collections appeared behind the Bloomberg reporter. *Id.* While the chart was displayed, the reporter did not discuss any of the collections. Instead, she highlighted market changes such as volume drops on OpenSea of "almost 200%." *Id.* As the NFT collections chart was taken down, the reporter said "let's talk a second longer about the Bored Ape Yacht Club collection" before discussing how

drops in valuation across the cryptocurrency market have also impacted that Bored Ape Yacht Club's valuation.

Although the NFT collections chart shown during the Bloomberg segment listed "Bored Ape Yacht Club V3" as a "Top NFT Collection," the news reporter did not spend any time discussing and analyzing the chart. *Id.* She never referenced the Defendants by name, she never referenced Defendants' criticisms of Yuga, and she never even mentioned Yuga. Instead, she briefly mentioned the Bored Ape Yacht Club as the chart was taken down. *Id.* This is unsurprising since the Bored Ape Yacht club was one of the collections listed on the chart. *Id.* However, nothing that the reporter said characterized Defendants' RR/BAYC project as being affiliated with Yuga or the Bored Ape Yacht Club. In fact, the reporter did not compare or contrast any of the listed collections. *Id.* She simply continued to her other talking points. *Id.* Thus, the Bloomberg news segment has not indication that anyone was confused regarding the Bored Ape Yacht Club NFTs listed on the chart and the V3 NFTs listed on the chart—the same chart that was never discussed by anyone at any point during the news segment.

Yuga also misleadingly cites to posts by Twitter bots as "evidence of confusion." But in these posts by Twitter bots, users are quick to remark that the Twitter bot falsely indicated a Bored Ape Yacht Club transaction. JTX-705; JTX-1029. Users replied to the bot by saying "It's a RR ape" or "RRBAYC > BAYC." JTX-705. Another twitter user replied to the bot and mentioned this litigation, clearly indicating their ability to differentiate between RR/BAYC NFTs and Bored Ape Yacht Club NFTs. JTX-1029. These posts by bots, thus, also are not actually evidence of confusion. To the contrary, they show lack of confusion because users were readily able to identify that the bots were posting about RR/BAYC NFTs.

Yuga then cites to the Lehman declaration (which was signed under coercion) as evidence of confusion, which Yuga and Mr. Solano have relied in this litigation to advance false claims of actual confusion. As demonstrated during trial,

Mr. Solano also relied on the declaration without having considered that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won. Trial Tr. [Solano] 38:17-19. Mr. Solano also relied on the declaration without considering that Mr. Lehman explained under oath that he was intimated by Yuga's lawsuit and that his understanding was "No declaration. No settlement." Trial Tr. [Solano] 38:11-16. A coerced declaration such as this is not probative evidence of confusion, especially given that Yuga has absolutely no internal documentation of confusion and that none of the parties have been able to identify a single confused consumer.

Yuga also incorrectly argues that there is "abundant" evidence of confusion because of Dr. Berger and Dr. O'Laughlin's expert reports. But the evidence at trial showed that Dr. Berger's limited analysis did not establish that the minting of RR/BAYC NFTs was the source of the alleged brand harm. Although Dr. Berger acknowledged that several different causes could have impacted Yuga's brand equity, Dr. Berger declined to consider alternative causes of harm in his analysis. Trial Tr. [Berger] 108:7-109:4; 115:16-25. He limited his analysis to the period from May 6, 2022, to late June, and completely disregarded events leading up to that period. Trial Tr. [Berger] 106:1-3. For instance, Dr. Berger's analysis ignored the Otherside scandal, which occurred mere days before his chosen analysis period. Trial Tr. [Berger] 113:10-114:2; JTX-2715. Dr. Berger even ignored events, like the general downturn of the cryptocurrency market, which occurred during his analysis period. Trial Tr. [Berger] 109:5-110:5; JTX-306.

At trial, Dr. Berger claimed that the presence of other potential causes of brand harm does not dilute the hypothesis that the minting of RR/BAYC NFTs caused brand harm. Trial Tr. [Berger] 115:19-25. However, in ignoring other potential causes of harm, Dr. Berger has not been able to establish which factors caused harm or quantify the harm of any given factor. Indeed, Dr. Berger failed to

quantify any alleged harm to Yuga's brand equity, goodwill, or reputation. *See generally* Berger Decl.; Dkt. 343 at 15.

As for O'Laughlin, her survey evidence is unreliable and was rebutted on several grounds. For the reasons provided in Defendants' response in *supra* ¶ 32, Ms. O'Laughlin's surveys do not show any actual or likely consumer confusion because they (1) used an overly broad population that included people that don't even know what an NFT is, (2) used two contradictory surveys, (3) failed to account for strong priming effects based on the survey format, and (4) applied to market conditions that lasted only a matter of days. Further, this unreliable survey evidence does not show that anyone who actually reserved an RR/BAYC NFT was confused about its origin and, therefore, does not undermine the accuracy of this finding of fact.

**Plaintiff's Reply:**

Defendants' arguments are merely a distraction because they argue a decided issue. Defendants infringed Yuga Labs' marks in a manner that was likely to cause confusion, as the Court has already adjudicated. SJ Order (Dkt. 225) at 10-13. Defendants have not sought relief from that order and cannot seek to undo it through their submissions following trial on the issue of remedies. Similarly, because likelihood of confusion had already been established and trial was limited to the issue of remedies, there is no basis for Defendants' argument that the Court should make any factual inferences because Yuga Labs did not burden the Court with cumulative evidence of adjudicated issues. See *Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131, 1133 (C.D. Cal. 2004) (partial summary judgment is "intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit.") (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.1981)).

Defendants' response completely fails to address the other fatal flaw of their objection: they already sought these materials, and the Court held that they were not needed in light of existing evidence of confusion, including evidence that was publicly available or in their possession. Dkt. 87 at 2 (denying motion to compel production of further "documents on lack of consumer confusion"). Defendants cannot demand disproportionate discovery and then argue that the Court's agreement that the discovery is inappropriate warrants a factual inference in their favor.

Because Yuga Labs has proven likelihood of confusion before trial (and reiterated by the evidence presented at trial), and because this evidence was determined to be unnecessary even before the Court's summary judgment order, Defendants' proposed finding of fact that Yuga Labs "could not identify" evidence within their arbitrary categories is incorrect and immaterial.

Defendants' additional arguments do not directly address this issue, but in any event they are rebutted elsewhere. *See supra* ¶¶ 8, 22, 32, 37, *infra* ¶¶ 53-56 (rebutting Defendants' arguments regarding lack of confusion, including with respect to Bloomberg and Defendants' "Bored Ape Yacht Club V3"); *infra* ¶¶ 41, 70-80 (rebutting Defendants' arguments regarding Ms. O'Laughlin's expert testimony), 83-91 (objection and reply rebutting Defendants' arguments regarding Dr. Berger's expert testimony).