**Defendants' Disputed Post Trial Finding of Fact No. 49:**

<u>Yuga could not identify a single email, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions changes in negotiating dynamics with brand partners as a result of the RR/BAYC collection.</u> Trial Tr. [Muniz]101:7-12. ("Q. Did you identify a single e-mail, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions any of these concerns at all? A No, it was phone calls and e-mails – I mean, phone calls and Zooms.").

**Plaintiff's Basis for Dispute:**

Likelihood of confusion has already been established in this case. SJ Order (Dkt. 225) at 10-13. Even to the extent Defendants seek to relitigate this issue, this statement is incorrect and misleading. The Court previously ruled that given the publicly available evidence of confusion and the evidence within Defendants' possession, it was not proportionate to the needs of the case for Yuga Labs to search its internal communications regarding confusion. Dkt. 87 at 2 (denying motion to compel production of further "documents on lack of consumer confusion"). As the Court found, Yuga Labs' extensive enforcement efforts "related to Defendants' confusing use of Yuga's marks," among other evidence, was sufficient to demonstrate confusion. *Id.* Further, there is abundant evidence of actual confusion in this case unique to Defendants' infringing NFTs. *See, e.g.*, JTX-701 and JTX-1049 (Bloomberg news segment reporting Defendants' infringing NFT collection, under the name "Bored Ape Yacht Club V3"); JTX-705 (Twitter bot misreporting reporting sale of Defendants' infringing NFT as "Bored Ape Yacht Club" NFT); JTX-1029 (noting "confusion in these comments" in response to JTX-705). That Yuga Labs did not produce further documentation of confusion does not establish that confusion did not exist or undermine the substantial other evidence.

Further, testimony from Yuga Labs' witnesses demonstrate harm to the company's business relationships due to Defendants' infringement. Ms. Muniz's testimony describes how three separate significant business relationships were damaged by Defendants' infringement. Muniz Decl. (Dkt. 340) ¶ 16. It also harmed relationships with investors (*id.* ¶ 17) and community members (*id.* ¶ 15). Mr. Solano testified how Defendants' infringing NFT collection was launched to coincide with ApeFest 2022 and to interfere with Yuga Labs' branding efforts within the NFT community. Solano Decl. (Dkt. 342) ¶¶ 39-40. This testimony is credible and unrebutted.

**Defendants' Response:**

The evidence at trial showed that Yuga could not identify a single e-mail or text message at Yuga discussing the alleged confusion and harm that the RR/BAYC collection caused despite the fact that Yuga is a self-proclaimed multi-billion dollar corporation. Yuga admits that it used e-mail and instant messaging to communicate for business. Trial Tr. [Muniz] 85:24-86:4. And yet, Yuga could not identify a single e-mail or text message discussing (1) confusion associated with the RR/BAYC project, Trial Tr. [Muniz] 86:14-87:6, or (2) how RR/BAYC uniquely caused any problems in the day-to-day business operations of Yuga. Trial Tr. [Muniz] 87:17-88:6. Yuga was also unable to identify any documentation of any press inquiries related to the RR/BAYC collection. Trial Tr. [Muniz] 88:7-89:2. Further, Yuga could not identify a single email, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions changes in negotiating dynamics with brand partners as a result of the RR/BAYC collection. Trial Tr. [Muniz]101:7-12. ("Q. Did you identify a single e-mail, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions any of these concerns at all? A No, it was phone calls and e-mails -- I mean, phone calls and Zooms.").

Ultimately, Yuga did not mention RR/BAYC in any of its quarterly reports to its investors. Trial Tr. [Muniz] 89:18-23.

Yuga attempts to rebut the evidentiary record by referencing this Court's summary judgment order even though this Court did not make any finding at summary judgment on this particular issues. Further, relying on this Court's summary judgment order is an incorrect use of the law of the case doctrine. The "law of the case doctrine does not apply to pretrial rulings *such as motions for summary judgment*." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in Sienze v Kutz, the Court held that although *aspects* of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to already decided issue that initial contact was not excessive force). This case is just like *Sienze*: even if the summary judgment order ruled on Yuga having no internal document indicating any confusion or harm associated with RR/BAYC NFTs (which the summary judgement order did not rule on) such a ruling would apply only the issue of infringement and is not adequate support for this topic as applied to availability of disgorgement as a remedy (including Defendants' mental state as applied to disgorgement), apportionment, and an exceptional case analysis.

Yuga then incorrectly argues that the fact it has no internal documents indicating confusion can be ignored given the "abundance" of evidence of confusion. But the examples Yuga cites are not actually evidence of confusion. For example, Yuga relies on a Bloomberg news segment. But the Bloomberg news segment did not discuss RR/BAYC NFTs or even the BAYC V3 label that Yuga

complains about. The Bloomberg Crypto segment centered on the recent cryptocurrency market crash and its impact on the valuation of various cryptocurrency assets. JTX-1049. During a discussion of the NFT market, Bloomberg news reporters highlighted that NFT valuation had dropped in 2022, along with the valuation of other cryptocurrency assets. *Id.* However, during a brief discussion of an "eight percent jump in the NFT index," a chart listing NFT collections appeared behind the Bloomberg reporter. *Id.* While the chart was displayed, the reporter did not discuss any of the collections. Instead, she highlighted market changes such as volume drops on OpenSea of "almost 200%." *Id.* As the NFT collections chart was taken down, the reporter said "let's talk a second longer about the Bored Ape Yacht Club collection" before discussing how drops in valuation across the cryptocurrency market have also impacted that Bored Ape Yacht Club's valuation.

Although the NFT collections chart shown during the Bloomberg segment listed "Bored Ape Yacht Club V3" as a "Top NFT Collection," the news reporter did not spend any time discussing and analyzing the chart. *Id.* She never referenced the Defendants by name, she never referenced Defendants' criticisms of Yuga, and she never even mentioned Yuga. Instead, she briefly mentioned the Bored Ape Yacht Club as the chart was taken down. *Id.* This is unsurprising since the Bored Ape Yacht club was one of the collections listed on the chart. *Id.* However, nothing that the reporter said characterized Defendants' RR/BAYC project as being affiliated with Yuga or the Bored Ape Yacht Club. In fact, the reporter did not compare or contrast any of the listed collections. *Id.* She simply continued to her other talking points. *Id.* Thus, the Bloomberg news segment has not indication that anyone was confused regarding the Bored Ape Yacht Club NFTs listed on the chart and the V3 NFTs listed on the chart—the same chart that was never discussed by anyone at any point during the news segment.

Yuga also misleadingly cites to posts by Twitter bots as "evidence of confusion." But in these posts by Twitter bots, users are quick to remark that the Twitter bot falsely indicated a Bored Ape Yacht Club transaction. JTX-705; JTX-1029. Users replied to the bot by saying "It's a RR ape" or "RRBAYC > BAYC." JTX-705. Another twitter user replied to the bot and mentioned this litigation, clearly indicating their ability to differentiate between RR/BAYC NFTs and Bored Ape Yacht Club NFTs. JTX-1029. These posts by bots, thus, also are not actually evidence of confusion. To the contrary, they show lack of confusion because users were readily able to identify that the bots were posting about RR/BAYC NFTs.

Yuga then incorrectly argues that it has provided evidence of its internal activities associated with the RR/BAYC collection and the alleged confusion that it caused by citing Ms. Muniz's self-serving testimony that certain business relationships were damaged due to the RR/BAYC collection. But Yuga has provided no contemporaneous document discussing or commenting on how this "damage" occurred. Presumably, if the RR/BAYC collection was harming relationship with investors, community members, and business partners, there would be at least one contemporaneous internal document address these alleged problems.

Yuga also cites to the unreliable Declaration of Mr. Solano as basis for excusing that Yuga has zero internal documents addressing the alleged confusion associated with the RR/BAYC collection. Mr. Solano is not credible given the many false and misleading statements contained in his declaration. For example, Mr. Solano was forced to concede on cross-examination that his sworn declaration included a false statement claiming that Defendants continue to receive royalties from sales on secondary marketplaces:

> Q. And you understand that Mr. Ripps and Mr. Cahen have testified that they do not currently receive any royalties or creator fees from sales on secondary marketplaces; right?

|   |   |   |
|---|---|---|
| 1 | | |
| 2 | A. | Yes. |
| 3 | Q. | So you don't have any basis for your statement that their profits continue to increase; correct? |
| 5 | A. | It's my understanding that they were collecting royalties or creator fees from LooksRare for quite a while. Although, those were supposed to be donated to charity and never were. |
| 8 | Q. | ***They don't continue to increase; correct, sir?*** |
| 9 | A. | ***Correct.*** |
| 10 | Q. | ***That statement, that part of your witness statement is incorrect; right?*** |
| 12 | A. | ***Yes.*** |

Trial Tr. [Solano] 48:15-49:4 (emphasis added). Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words. Trial Tr. [Solano] 40:3-14. Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19). Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And

you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I do't know.' Was that your testimony at your deposition? A Yes."); *id*. at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes."). Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted. Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. In fact, no one has been able to identify a single confused consumer in the entirety of this case. *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

**Plaintiff's Reply:**

Emails are not the *sine qua non* of proof of likelihood of confusion, as Defendants appear to suggest. Indeed, during discovery, the Court ruled that given the publicly available evidence of confusion and the evidence within Defendants' possession, it was not proportionate to the needs of the case for Yuga Labs to search its internal communications regarding confusion. Dkt. 87 at 2 (denying motion to compel production of further "documents on lack of consumer confusion"). As the Court found, Yuga Labs' extensive enforcement efforts "related to Defendants' confusing use of Yuga's marks," among other evidence, was sufficient to demonstrate confusion. *Id.*

Yuga Labs cannot be faulted for not producing cumulative evidence of confusion that the Court held was not proportionate to the needs of the case. It should be no surprise that Yuga Labs would not volunteer internal communications it is not obligated, especially to these particular Defendants, who have repeatedly

made up lies about the Company, its founders, its employees, its investors, and its attorneys. Yuga Labs also had legitimate concerns about Defendants' willingness to comply with the Court's Protective Order. Yuga Labs produced substantial *other* evidence of confusion sufficient to prove its case. Therefore, it is immaterial that the evidence at trial does not include internal Yuga Labs communications.

Moreover, as with their previous responses (*supra* ¶¶ 47, 48), Defendants' argument lacks merit because the Court has already adjudicated the ultimate issue of likelihood of confusion and infringement. Regardless, the evidence remains uncontested that Defendants' infringing activities harmed Yuga Labs' relationships with its brand partners.

Ms. Muniz testified as to how Yuga Labs entered into many brand partnerships prior to Defendants' infringement, but since Defendants flooded the market with their infringing NFTs, those deals slowed; business partners remain willing to enter into partnerships with Yuga Labs, but not the BAYC brand. Trial Tr. at 98:14-99:7. The brand's loss of perceived exclusivity and resultant "back-foot negotiations" are reflected in the different dynamic with potential partners. Trial Tr. at 98:12-18. Defendants have no evidence which could possibly prove the contrary.

Defendants' additional arguments do not directly address this issue, but in any event they are rebutted elsewhere. *See supra* ¶ 32 (objection and reply rebutting Defendants' arguments regarding lack of confusion, including with respect to Bloomberg and Defendants' "Bored Ape Yacht Club V3"); ¶ 3 (objection and reply rebutting Defendants' allegations about the reliability of Mr. Solano's testimony); *id.* (objection and reply rebutting Defendants' allegations about the reliability of Mr. Lehman's declaration).