**Defendants' Disputed Post Trial Finding of Fact No. 50:**

<u>Yuga did not mention RR/BAYC in any of its quarterly reports to its investors. Trial Tr. [Muniz] 89:18-23.</u>

**Plaintiff's Basis for Dispute:**

Yuga Labs' decision not to further broadcast Defendants' infringing products is not relevant to any issue, especially where awareness of Defendants' confusingly similar NFTs was already widespread and damaging the BAYC brand. Ms. Muniz's testimony specifically describes how three separate significant business relationships were damaged by Defendants' infringement. Muniz Decl. (Dkt. 340) ¶ 16. It also harmed relationships with investors (*id.* ¶ 17) and community members (*id.* ¶ 15). Indeed, Defendants are well aware of investors' knowledge of the harm caused by Defendants, as Defendants harassed and deposed Yuga Labs' investors during this litigation.

Defendants persisted in pushing their harmful infringing NFTs despite numerous pre-litigation efforts to limit them, circumventing takedowns and continuing their infringement even after this lawsuit was filed. Trial Tr. at 96:19:97:8. *See also* Solano Decl. (Dkt. 342) ¶ 74 ("Yuga Labs has asked Defendants to stop promoting the RR/BAYC NFTs, but they have refused. And not only have they refused to stop infringing, they are deliberately taking steps to make it difficult if not impossible, for us to remove these infringing products from the public."). This testimony is credible and unrebutted.

**Defendants' Response:**

The evidence at trial showed that Yuga did not mention the RR/BAYC, its harms to Yuga, and business concerns relating to the RR/BAYC collection in quarterly reports even though Yuga almost certainly would have had an obligation to do so if any of that alleged harm or confusion existed:

| | | |
|---|---|---|
| Q. | | Focusing again on your claim that Yuga uniquely caused problems in the day-to-day business operations of Yuga. You were CEO at the time of those unique problems; correct? |
| A. | | Yes. |
| Q. | | And you made quarterly reports to your investors at that time; correct? |
| A. | | Yes |
| Q. | | **RR/BAYC was not mentioned even once in any of those quarterly reports; correct?** |
| A. | | *I don't believe it was*. |

Trial Tr. [Muniz] 89:14-23 (emphasis added). In fact, Yuga was not able to identify any internal documents at all discussing the RR/BAYC collection. Yuga could not identify a single e-mail or text message at Yuga discussing the alleged confusion and harm that the RR/BAYC collection caused despite the fact that Yuga is a self-proclaimed multi-billion dollar corporation. Yuga admits that it used e-mail and instant messaging to communicate for business. Trial Tr. [Muniz] 85:24-86:4. And yet, Yuga could not identify a single e-mail or text message discussing (1) confusion associated with the RR/BAYC project, Trial Tr. [Muniz] 86:14-87:6, or (2) how RR/BAYC uniquely caused any problems in the day-to-day business operations of Yuga. Trial Tr. [Muniz] 87:17-88:6. Yuga was also unable to identify any documentation of any press inquiries related to the RR/BAYC collection. Trial Tr. [Muniz] 88:7-89:2. Further, Yuga could not identify a single email, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions changes in negotiating dynamics with brand partners as a result of the RR/BAYC collection. Trial Tr. [Muniz]101:7-12. ("Q. Did you identify a single e-

mail, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions any of these concerns at all? A No, it was phone calls and e-mails -- I mean, phone calls and Zooms.").

Yuga incorrectly argues that it has provided evidence of its internal activities associated with the RR/BAYC collection and the alleged confusion that it caused by citing Ms. Muniz's self-serving testimony that certain business relationships were damaged due to the RR/BAYC collection. But Yuga has provided no contemporaneous document discussing or commenting on how this "damage" occurred. Presumably, if the RR/BAYC collection was harming relationship with investors, community members, and business partners, there would be at least one contemporaneous internal document address these alleged problems.

Yuga also cites to the unreliable Declaration of Mr. Solano as basis for excusing that Yuga has zero internal documents addressing the alleged confusion associated with the RR/BAYC collection. Mr. Solano is not credible given the many false and misleading statements contained in his declaration. For example, Mr. Solano was forced to concede on cross-examination that his sworn declaration included a false statement claiming that Defendants continue to receive royalties from sales on secondary marketplaces:

> Q. And you understand that Mr. Ripps and Mr. Cahen have testified that they do not currently receive any royalties or creator fees from sales on secondary marketplaces; right?
>
> A. Yes.
>
> Q. So you don't have any basis for your statement that their profits continue to increase; correct?
>
> A. It's my understanding that they were collecting royalties or creator fees from LooksRare for quite a while. Although, those were supposed to be donated to charity and never were.

> Q.   *They don't continue to increase; correct, sir?*
>
> A.   *Correct.*
>
> Q.   *That statement, that part of your witness statement is incorrect; right?*
>
> A.   *Yes.*

Trial Tr. [Solano] 48:15-49:4 (emphasis added).  Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial.  Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You do't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look

at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes."). Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted. Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. In fact, no one has been able to identify a single confused consumer in the entirety of this case. *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

**Plaintiff's Reply:**

Throughout Defendants' questioning at trial, proposed finding of fact, and response, they never once explained why Yuga Labs should be expected to have "quarterly reports to its investors" that discuss Defendants' infringing NFTs or the harm they have done to the brand. Defendants cite no authority or even explain their bare "presump[tion]" that Yuga Labs—which is not a publicly traded company— "almost certainly would have had an obligation to do so." Defendants' proposed finding is irrelevant and immaterial—especially to the extent it related to the adjudicated issue of likelihood of confusion—and their suggested inference that any brand harm would be highlighted in investor reports is unsupported. Regardless, as disputed *supra* ¶ 50 in Yuga Labs' objection, Defendants know that Yuga Labs discussed the harm caused by Defendants with Yuga Labs' investors, because Defendants deposed a Yuga Labs investor.

Defendants' additional arguments do not directly address this issue, but in any event they are rebutted elsewhere. *See supra* ¶ 32 (objection and reply rebutting Defendants' arguments regarding lack of confusion, including with respect to Bloomberg and Defendants' "Bored Ape Yacht Club V3"); ¶ 3 (objection and reply rebutting Defendants' allegations about the reliability of Mr. Solano's testimony); *id.* (objection and reply rebutting Defendants' allegations about the reliability of Mr. Lehman's declaration).