**Defendants' Disputed Post Trial Finding of Fact No. 52:**

Yuga's allegations that Mr. Ripps and Mr. Cahen obtained profits resulting from actual confusion relies on a set of social media "bot" accounts, out-of-context jokes, and sarcastic comments made by fans of Mr. Ripps and Mr. Cahen (Cahen Decl. ¶¶ 226-253; Ripps Decl. ¶¶ 210-222 (uncontested)). They do not show profits resulting from actual confusion.

**Plaintiff's Basis for Dispute:**

Defendants offer no support for their self-serving claim that evidence unfavorable to them is "sarcastic" or a "joke." Nor does that persuasively demonstrate that the confused parties were friends or supporters who were merely in on the joke and perpetuating the confusion (rather than being confused themselves).

Defendants' RR/BAYC NFTs are infringing goods to which they are not entitled to retain profits. All of the NFTs incorporate the BAYC Marks by virtue of the immutable traits coded into the smart contract, Atalay Decl. (Dkt. 337) ¶ 4, and they are all part of a collection that the Court has already ruled was likely to cause consumer confusion. SJ Order (Dkt. 225) at 10-13. There is no requirement for Yuga Labs to prove that all of Defendants' profits resulted from "actual confusion"; the standard under the Lanham Act is likelihood of confusion, which has already been established. All profits Yuga Labs seeks to disgorge are attributable to Defendants' infringing products—each of which use the BAYC Marks in the marketing and sale of the infringing products. *See* Kindler Decl. (Dkt. 338) ¶ 61 (Defendants' profits are "are all traceable to Defendants' uses of Yuga Labs' BAYC Marks" because the marks are used on rrbayc.com, other marketplaces, "on the Etherscan token tracker, in the RR/BAYC smart contract, and in their promotions" (citation omitted)). Just as a counterfeit handbag peddler is not entitled to keep any ill-gotten profits from their sale of infringing goods, it is not a defense for Defendants to claim that some purchasers were in on the infringement.

*See, e.g.*, *Gucci Am., Inc.*, 868 F. Supp. 2d at 238, 255 (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one").  Ultimately, it is up to the court to "ensure that the defendant may not retain the fruits, if any, of unauthorized trademark use or continue that use . . . ." *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015) (cleaned up).

Even so, there is abundant evidence of actual confusion in this case unique to Defendants' infringing NFTs.  *See, e.g.*, JTX-701 and JTX-1049 (Bloomberg news segment reporting Defendants' infringing NFT collection, under the name "Bored Ape Yacht Club V3"); JTX-705 (Twitter bot misreporting reporting sale of Defendants' infringing NFT as "Bored Ape Yacht Club" NFT); JTX-1029 (noting "confusion in these comments" in response to JTX-705).  Defendants' choice to market their infringing NFTs with Yuga Labs' BAYC Marks directly caused bots, sales pages, and other consumers to refer to the infringing NFTs with the BAYC and Bored Ape Yacht Club names.  *See, e.g.,* Solano Decl. (Dkt. 342) ¶¶ 63 (describing confusion caused by bot posts about sales of Defendants' infringing NFTs) (citing JTX-311, JTX-523, JTX-705, JTX-709, JTX-710, JTX-1030), 42 (discussing OpenSea listings of both genuine BAYC NFTs and Defendants' infringing NFTs) (citing JTX-686, JTX-611, JTX-684).  Worse still, for these downstream uses of the BAYC Marks, there was no disclaimer or evidence to suggest association with anyone other than Yuga Labs.

**Defendants' Response**:

Yuga does not offer any evidence to show that its use of sarcastic comments aimed at criticizing Yuga (such as JTX-1037, explained above) or jokes entirely unrelated to RR/BAYC NFTs (such as JTX-689, explained above) were in fact serious statement taken seriously by the public.  These exhibit, both facially and

when considered in the context of the Twitter users involved, are clearly sarcastic comments and jokes. But despite this, Yuga has taken these posts out of context and mischaracterized them to create false arguments that there were actions aimed at causing confusion.

Critically, the evidence at trial also showed that the RR/BAYC collection did not cause any actual confusion and was not likely to cause confusion. Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested). To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Indeed, neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are aware of a single instance of confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19. Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct."). Mr. Solano, Yuga's President, similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. Given Defendants public discussions, steps taken to clarify the origin and purpose of the RR/BAYC collection, and the fact that there was not even a single confused consumer confirms that there was no likelihood of consumer confusion and no actual consumer confusion.

The absolute lack of any actual confusion is critical to Yuga's request for disgorgement. This is because Yuga is not entitled to disgorgement because Yuga failed to show that any of the profits associated with the RR/BAYC collection are

"attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). The evidence at trial showed that RR/BAYC NFTs were reserved in protest ***against*** Yuga and to support Defendants' artistic criticism, not in response to the "appeal of [Yuga's] symbol." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942).

Further, Yuga does not offer any evidence to show that its use of sarcastic comments or jokes were improper, but again refers to exhibits that are not actually evidence of confusion. For example, Yuga relies on a Bloomberg news segment. But the Bloomberg news segment did not discuss RR/BAYC NFTs or even the BAYC V3 label that Yuga complains about. The Bloomberg Crypto segment centered on the recent cryptocurrency market crash and its impact on the valuation of various cryptocurrency assets. JTX-1049. During a discussion of the NFT market, Bloomberg news reporters highlighted that NFT valuation had dropped in 2022, along with the valuation of other cryptocurrency assets. *Id.* However, during a brief discussion of an "eight percent jump in the NFT index," a chart listing NFT collections appeared behind the Bloomberg reporter. *Id.* While the chart was displayed, the reporter did not discuss any of the collections. Instead, she highlighted market changes such as volume drops on OpenSea of "almost 200%." *Id.* As the NFT collections chart was taken down, the reporter said "let's talk a second longer about the Bored Ape Yacht Club collection" before discussing how drops in valuation across the cryptocurrency market have also impacted that Bored Ape Yacht Club's valuation.

Although the NFT collections chart shown during the Bloomberg segment listed "Bored Ape Yacht Club V3" as a "Top NFT Collection," the news reporter did not spend any time discussing and analyzing the chart. *Id.* She never referenced the Defendants by name, she never referenced Defendants' criticisms of

Yuga, and she never even mentioned Yuga.  Instead, she briefly mentioned the Bored Ape Yacht Club as the chart was taken down.  *Id.*  This is unsurprising since the Bored Ape Yacht club was one of the collections listed on the chart.  *Id.*  However, nothing that the reporter said characterized Defendants' RR/BAYC project as being affiliated with Yuga or the Bored Ape Yacht Club.  In fact, the reporter did not compare or contrast any of the listed collections.  *Id.*  She simply continued to her other talking points.  *Id.*  Thus, the Bloomberg news segment has not indication that anyone was confused regarding the Bored Ape Yacht Club NFTs listed on the chart and the V3 NFTs listed on the chart—the same chart that was never discussed by anyone at any point during the news segment.

Yuga also misleadingly cites to posts by Twitter bots as "evidence of confusion."  But in these posts by Twitter bots, users are quick to remark that the Twitter bot falsely indicated a Bored Ape Yacht Club transaction.  JTX-705; JTX-1029.  Users replied to the bot by saying "It's a RR ape" or "RRBAYC > BAYC."  JTX-705.  Another twitter user replied to the bot and mentioned this litigation, clearly indicating their ability to differentiate between RR/BAYC NFTs and Bored Ape Yacht Club NFTs.  JTX-1029.  These posts by bots, thus, also are not actually evidence of confusion.  To the contrary, they show lack of confusion because users were readily able to identify that the bots were posting about RR/BAYC NFTs.

Yuga also cites to the unreliable Declaration of Mr. Solano as evidence of actual confusion associated with the RR/BAYC collection.  Mr. Solano is not credible given the many false and misleading statements contained in his declaration.  For example, Mr. Solano was forced to concede on cross-examination that his sworn declaration included a false statement claiming that Defendants continue to receive royalties from sales on secondary marketplaces:

> Q.   And you understand that Mr. Ripps and Mr. Cahen have testified that they do not currently receive any royalties or creator fees from sales on secondary marketplaces; right?

A.    Yes.

Q.    So you don't have any basis for your statement that their profits continue to increase; correct?

A.    It's my understanding that they were collecting royalties or creator fees from LooksRare for quite a while.  Although, those were supposed to be donated to charity and never were.

Q.    ***They don't continue to increase; correct, sir?***

A.    ***Correct.***

Q.    ***That statement, that part of your witness statement is incorrect; right?***

A.    ***Yes.***

Trial Tr. [Solano] 48:15-49:4 (emphasis added).  Mr. Solano also relied on the phrase "business venture" in Mr. Lehman's declaration, without having considered that the phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew he could not settle his case without executing a declaration concerning matters of Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his family at the time he signed his declaration, because Yuga's lawsuit against him would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr. [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated impeachment at trial.  Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a deposition in this case; right? A Yes. Q And

you swore an oath to tell the truth, same oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3 created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't know.' Was that your testimony at your deposition? A Yes."); *id.* at 34:9-19 ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6. 'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.' Were you asked that question, and did you give that answer? A Yes."). Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted. Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. In fact, no one has been able to identify a single confused consumer in the entirety of this case. *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

**Plaintiff's Reply:**

Ample evidence of actual confusion has been presented at trial. Defendants' response merely relies on their self-serving, fallback claim that they are jokes or sarcasm. Defendants do not and cannot offer any substantiating proof. Confusion was likely, and evident, in the marketplace and Defendants' anecdotal evidence of purported support does not rebut this fact. Defendants continue to fail to offer any consumer or survey expert or even any larger market analysis. Defendants' responses should be rejected.

As discussed *supra*, Defendants' response is unavailing. Specifically: (1) there is ample evidence of actual confusion in the record (*supra* ¶ 3), (2) the Gem Bot tweet and replies demonstrated confusion (*supra* ¶ 32), (3) Defendants fail to disprove that any RR/BAYC purchasers were confused (*supra* ¶ 45), (4) Defendants' unreliable communications with third-parties do not negate evidence of actual confusion or the likelihood of post-sale confusion (*supra* ¶ 11), (5)

1   Disgorgement is warranted because Defendants' profits are all attributable to their

2   infringement and actual confusion is not necessary (*supra* ¶ 32), (6) Confusion

3   based on affiliation or sponsorship is actionable regarding "Bored Ape Yacht Club

4   v3" on Bloomberg (*supra* ¶ 32), and (7) Defendants fail to impeach Mr. Solano's

5   accurate testimony (*supra* ¶ 3).