**Defendants' Disputed Post Trial Finding of Fact No. 56:**

<u>Yuga's alleged evidence of confusion also relies on a Bloomberg News clip with "Bored Ape Yacht Club V3" written in the background.</u> <span style="color:red"><u>Yuga's President, Mr. Solano, could not identify any basis for Yuga's contention that the background image references the RR/BAYC project. Trial Tr. [Solano] 30:22-31:5.</u></span>

**Plaintiff's Basis for Dispute:**

This contention is contradicted by testimonial and documentary evidence. Contrary to Defendants' assertions, Mr. Solano's testimony demonstrates that he knew that "Bored Ape Yacht Club V3" referred to Defendants' infringing NFTs because Defendants promoted the RR/BAYC NFTs under that misleading title. Trial Tr. at 32:5-8 ("And, yeah, the whole way that we're describing it as RR/BAYC, of course they are not saying that because it said Bored Ape Yacht Club V3. That's how [Defendants] were promoting it."). As Mr. Solano testified, Mr. Ripps has referred to and marketed his infringing NFTs under the names "BAYC V3" and "Bored Ape Yacht Club V3." JTX-689 (tweet from Mr. Ripps promoting infringing NFTs as "bayc v3"); JTX-690.

Additionally, the Bloomberg segment lists NFT collections by their trading volume. JTX-701. Mr. Cahen bragged that Defendants' infringing NFTs were trading at the highest volume on OpenSea in a Tweet the day before the Bloomberg segment aired. JTX-683 (June 20, 2022 Cahen Tweet stating that "RR/BAYC is officially the highest 24h volume… IN THE WORLD" and that RR/BAYC "passed BAYC in the middle of ApeFest!"). OpenSea's own data also confirm that at the time that Bloomberg was reporting that "Bored Ape Yacht Club V3" NFTs were trading at the highest volume, so too were Defendants' infringing RR/BAYC NFTs. JTX-684. Thus, it is disingenuous at best for Defendants to now claim that the Bloomberg segment did not refer to the RR/BAYC NFTs when, as Mr. Solano noted, Defendants "bragged that RR/BAYC NFTS were the number on NFT collection in the world" at the same time that OpenSea reported that "Bored Ape

Yacht Club V3" was trading at the highest volume globally.  Solano Decl. (Dkt. 342) at ¶ 72.  Tellingly, Defendants offered no alternative explanation for what "Bored Ape Yacht Club V3" referred to if not the RR/BAYC NFTs.  That is because "Bored Ape Yacht Club V3" and RR/BAYC are one and the same.  Defendants' false contention should be rejected.

**Defendants' Response:**

Yuga's attempt to parlay a clip which they admitted never actually says the term "BAYC v3" or any variant thereof into proof that Bloomberg News had somehow seen one of the very few incidents they could find referencing "v3" [Solano] 30:22-31:5.  Tellingly, Mr. Solano materially changed his testimony between trial where he tried to claim that "v3" was made by Defendants and his deposition.  He was impeached over this gross inconsistency.  Trial Tr. [Solano] 33:4-11 (admitting that he did not know whether v3 was made by Defendants).

Yuga points to specific testimony from Mr. Solano to buttress its claim that he was able to testify that "Bayc v3" is the same as "RR/BAYC."  *See* Trial Tr. [Solano] 32:5-8.  However, that relies upon evidence that Defendants "were promoting" the collection as such.  Yuga can only cite to two solitary Tweets to support its claim, JTX-689 and JTX-690.  JTX-689 is a reply Mr. Ripps made on Twitter on May 13, 2022 to Mr. McNelis's question on what NFTs people are buying.  Mr. Ripps's reply is a satirical comment that has absolutely nothing to do with the RR/BAYC collection and, in fact, the comment was made before Mr. Ripps even started taking commissions for RR/BAYC NFTs.  Thus, JTX-689 was an obvious joke reply to j1mmy.eth (Mr. McNelis), who Mr. Ripps explained he had a pre-existing relationship with.  Dkt. 346 Ripps Decl. ¶¶ 73-80 (Dkt. 346) (uncontested).  And JTX-690 is a Twitter post by Mr. Ripps of the link to the x2y2.io page for the RR/BAYC collection.  At no point did Mr. Ripps state "BAYC V3" or "Bored Ape Yacht Club V3" in this post as it simply contains a link.  And

while the URL does contain "bored-ape-yacht-club-v3," Mr. Ripps had no control over the URL.

By way of comparison Defendants used the term "RR/BAYC" numerous times in connection with the Project including in promotion. *See e.g.*, JTX-2102 (promoting project using term RR/BAYC); JTX-2085 (rrbayc.com); JTX-2086 (disclaimer reference "RR/BAYC"); Ripps Decl. ¶¶ 87-91 (Dkt. 346) (uncontested) (explaining choice to name collection "RR/BAYC).

So contrary to the argument that "RR/BAYC" and "BAYC v3" are the same thing, the evidence indicates that Bayc v3 is **not** a name that Defendants would have ever chosen.

**Plaintiff's Reply:**

Defendants do not dispute the fact that Mr. Cahen tweeted that RR/BAYC NFTs were trading at the highest volume on OpenSea the day before Bloomberg reported "Bored Ape Yacht Club V3" as the top NFT collection. Defendants also do not dispute the fact that Mr. Ripps tweeted posts stating "BAYC V3" and a URL containing "Bored Ape Yacht Club V3." Nor do Defendants offer any alternative explanation for what "Bored Ape Yacht Club V3" could have referred to. That is because "Bored Ape Yacht Club V3" is RR/BAYC. Defendants' responses lack merit. Worse still Defendants' claim that "Bayc v3 is not a name that Defendants would have ever chosen" is a lie. The evidence shows that it was Mr. Ripps and only Mr. Ripps that was the first to use the Bayc v3 moniker. Despite their shifting stories, they haven't been able to run from this fact.

Further, Defendants suggest that their use of the term "RR/BAYC" precludes the possibility that they also used "Bored Ape Yacht Club V3." That is non-sensical. Defendants can, and have, used multiple terms using the BAYC Marks to identify and promote their infringement.

Defendants' response is unavailing for the same reasons discussed *supra*, specifically because (1) Defendants continue to lie about their use of BAYC V3 and

Bored Ape Yacht Club V3 (*supra* ¶ 7), (2) Defendants' use of Bored Ape Yacht Club V3 caused confusion (*supra* ¶ 53), (3) Defendants fail to impeach Mr. Solano's accurate testimony (*supra* ¶ 3), and (4) Defendants intended to confuse consumers and had control over third-party websites and marketplaces (*supra* ¶ 9). But even if Defendants had no control over these websites and marketplaces, the point remains that their confusing use of the BAYC Marks can never be removed from the smart contract, causing hyperlinks and other future references to the collection to display the BAYC Marks.  Atalay Decl. (Dkt. 337) ¶ 6; Solano Decl. ¶¶ 46-47, 78.  The permanent existence of Yuga Labs' marks in association with the RR/BAYC smart contract is why, like a domain name, the smart contract should be transferred to Yuga Labs.  Without the RR/BAYC smart contract, Yuga Labs cannot retain control of the use of its marks.  *See* Trial Tr. 134:4-7 ("In this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance."); *see also* Solano Decl. (Dkt. 342) ¶ 47 ("Unless Yuga Labs has control of the RR/BAYC smart contract, Yuga Labs' brand will be forever tied to Mr. Ripps").

      Indeed, the immutability of the RR/BAYC NFT contract is not an impediment to transferring the contract to Yuga Labs, but a major reason the contract *should* be transferred to Yuga Labs.  As long as Defendants have the RR/BAYC smart contract, they will continue to be infringing on the BAYC Marks in it.  More directly, though, the contract will always say Bored Ape Yacht Club and BAYC—Mr. Ripps has no right to forever associate himself with Yuga Labs' trademarks.  If Defendants maintain control of the RR/BAYC smart contract consumers may still be confused as to the source of the NFTs – Defendants have argued that consumers will see Mr. Ripps' name as the creator of the NFTs and thus know that his NFTs are not Yuga Labs' NFTs.  Defendants have no survey concluding this is likely; it is equally possible that consumers see his name and

think he is somehow related to Yuga Labs because the contract prominently uses two BAYC Marks.

Moreover, if Defendants maintain ownership and control over the smart contract, they could continue to obtain royalties or mint new RR/BAYC NFTs in the future (even if ordered not to do so). Thus, transferring the RR/BAYC smart contract from the infringer, Mr. Ripps, to the rightful owner, Yuga Labs, will help reduce future confusion and reduce the risk of future ill-gotten gains to Mr. Ripps. An order solely prohibiting Defendants from minting RR/BAYC NFTs would not accomplish this.