**Defendants' Disputed Post Trial Finding of Fact No. 67:**

Mr. Atalay also explained that using token names to distinguish NFTs "would be a fairly weak way to do so because often those things are mutable. They can be changed after the fact. Also, there's no guarantee of uniqueness." Trial Tr. [Atalay] 133:12-23.

**Plaintiff's Basis for Dispute:**

This assertion is immaterial and misleading because the token tracker for Defendants' infringing NFTs is not "mutable." Indeed, in response to the question directly after the response cited in Defendants' contention, Mr. Atalay testified that "[i]n this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance. So this isn't entirely relevant." Trial Tr. at 134:1-8. Mr. Solano testified to the same in his trial declaration. Solano Decl. (Dkt. 342) at ¶ 80 ("My understanding is that Defendants cannot change the name of their Etherscan contract bearing the BAYC Marks, nor can the RR/BAYC smart contract be destroyed."). Thus, the RR/BAYC smart contract will display "Bored Ape Yacht Club" and "BAYC" as the contract name and the contract symbol, respectively, in perpetuity, and without a transfer of the smart contract to Yuga Labs, confusion from Defendants' infringing NFTs will continue. *Id.* ("By transferring the RR/BAYC smart contract to Yuga Labs, the Defendants' association with the BAYC brand will no longer be 'forever' as Mr. Ripps proclaimed it would be."). Therefore, as Mr. Atalay testified, this misleading counterfactual is neither relevant nor material.

**Defendants' Response:**

Yuga's response is improper because it is not a basis to oppose a finding of fact that Mr. Atalay made the quoted statement. Moreover, even if Mr. Atalay was previously mistaken that the RR/BAYC token tracker was mutable, that does not negate his admission that "most people" would not use the token tracker to

differentiate NFT contracts.  Trial Tr. [Atalay] 132:21-133:8.  Indeed, that Mr. Atalay had to look closely at the smart contract to determine whether the field was mutable or not suggests that it is generally ***not*** a reliable way to differentiate smart contracts.

**Plaintiff's Reply:**

Yuga Labs properly disputes this proposed finding of fact.  Defendants mischaracterize Mr. Atalay's testimony to suggest that Defendants' use of the BAYC Marks as the RR/BAYC smart contact's token tracker would not cause confusion.  The response also contradicts Defendants' own admissions that token trackers are a common way for consumers to identify the source of NFTs.  *See* Cahen Depo. Designations (Dkt. 395) at 148:12-13; Trial Tr. at 225:25-226:2.  Defendants' response and proposed finding of fact should be rejected.

Mr. Atalay never testified that the token tracker in the RR/BAYC smart contract is mutable.  Thus, contrary to Defendants' mischaracterization, Mr. Atalay was not "previously mistaken" in the RR/BAYC token tracker's mutability.  As Mr. Atalay stated at trial, "[i]n this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance."  Trial Tr. at 134:1-7.  This immutability highlights the ongoing harm to Yuga Labs' ability to control its brand and the need for Yuga Labs to own the smart contract.

Indeed, the immutability of the RR/BAYC NFT contract is not an impediment to transferring the contract to Yuga Labs, but a major reason the contract *should* be transferred to Yuga Labs.  As long as Defendants have the RR/BAYC smart contract, they will continue to be infringing on the BAYC Marks in it.  More directly, though, the contract will always say Bored Ape Yacht Club and BAYC—Mr. Ripps has no right to forever associate himself with Yuga Labs' trademarks.  If Defendants maintain control of the RR/BAYC smart contract consumers may still be confused as to the source of the NFTs – Defendants have

argued that consumers will see Mr. Ripps' name as the creator of the NFTs and thus know that his NFTs are not Yuga Labs' NFTs. Defendants have no survey concluding this is likely; it is equally possible that consumers see his name and think he is somehow related to Yuga Labs because the contract prominently uses two BAYC Marks.

Moreover, if Defendants maintain ownership and control over the smart contract, they could continue to obtain royalties or mint new RR/BAYC NFTs in the future (even if ordered not to do so). Thus, transferring the RR/BAYC smart contract from the infringer, Mr. Ripps, to the rightful owner, Yuga Labs, will help reduce future confusion and reduce the risk of future ill-gotten gains to Mr. Ripps. An order solely prohibiting Defendants from minting RR/BAYC NFTs would not accomplish this.

If, however, Yuga Labs owns the RR/BAYC smart contract, ownership will allow Yuga Labs to work with the NFT marketplaces to ensure that the human readable elements of the marketplace clearly indicate that RR/BAYC NFTs are not authentic BAYC NFTs. Trial Tr. at 136:9-139:11. Defendants admit this essential fact. *See* Ripps Depo. Designations (Dkt. 396) 289:7-11 (***admitting Mr. Ripps has control over aspects of secondary marketplace listings***).

Finally, as discussed *supra* ¶ 66, Defendants' contention that "most people" would not identify NFTs by the contract's token tracker fails to recognize how an "average person" would still be confused in viewing RR/BAYC NFTs and BAYC NFTs on a marketplace such as OpenSea.