**Defendants' Disputed Post Trial Finding of Fact No. 73:**

<u>Ms. O'Laughlin modified her survey eligibility following pre-tests (to which members of her team had access) to expand the survey population.</u> Trial Tr. [O'Laughlin] 145:21-146:7; [O'Laughlin] 146:10-25.

**Plaintiff's Basis for Dispute:**

Yuga Labs objects to this finding to the extent Defendants suggest the modification was improper or that it diminishes the reliability of her survey findings.

Pretests are part of accepted methodology in conducting consumer confusion surveys, as Ms. O'Laughlin testified. O'Laughlin Decl. (Dkt. 341) ¶ 30 n.12; *see also* JTX-1612 at 388-89 ("Texts on survey research generally recommend pretests as a way to increase the likelihood that questions are clear and unambiguous, and some courts have recognized the value of pretests."). Ms. O'Laughlin conducted pretests for her Foundation/Eveready survey, as disclosed to Defendants. O'Laughlin Decl. (Dkt. 341) ¶ 30 n.14. As a result of the pretest feedback, she "made minor changes to the survey instrument." *Id.* ¶ 30. "The minor modification made to the Foundation Eveready Survey included updating the screening questions to allow respondents to qualify as either a past or potential NFT purchaser." JTX-721 at 31 (O'Laughlin Expert Report) n.72.

Defendants offer no evidence or expert testimony to suggest this modification was in any way improper or that it affects the reliability of Ms. O'Laughlin's findings.

**Defendants' Response:**

The pretest led to changes that "made it easier for a certain subset" of people to qualify for the survey. Trial Tr. [O'Laughlin] 167:13-17. As stated above, this decision to broaden the survey population was made *after* her team accessed survey results. *Id.* at 145:21-146:7.

  Ms. O'Laughlin acknowledges that the survey population matters for her analysis. *Id.* at 146:18-20. She also stated that the appropriate population is "past and potential purchasers of NFTs." *Id.* at 146:21-25. Broadening the population of the survey after accessing initial results calls into question the validity of that survey, especially where the changes allowed those who may not even be aware of NFTs to participate in the survey.

  **Plaintiff's Reply:**

  As discussed, *supra* ¶ 72, Defendants have no support for their proposition that Ms. O'Laughlin's changes following the pretest affect the weight of the survey; they do not.