**Defendants' Disputed Post Trial Finding of Fact No. 84:**

Dr. Berger's analysis was limited to a two-month time period and thus did not consider broadly how Yuga Lab's brand equity was impacted outside of that period. Specifically, Dr. Berger did not evaluate any brand harm prior to May 6, 2022 or after late June 2022. Trial Tr. [Berger] 106:1-3.

**Plaintiff's Basis for Dispute:**

Defendants' contention is incorrect and not based on the evidence. Dr. Berger's analysis included an examination of tweets referencing "BAYC" or "Bored Ape" and that also included a reference to Mr. Ripps or RR/BAYC for the period December 1, 2021 through May 5, 2022. Berger Decl. (Dkt. 339) ¶ 83. Based on this analysis, he noted that the discussion around the BAYC brand did not begin to incorporate Mr. Ripps until May 2022. *Id.* He then looked at how the attitudes toward BAYC changed between May 6, 2022 and June 27, 2022. *Id.* at ¶ 88. Dr. Berger's analysis of this time period concluded that the sale and marketing of RR/BAYC NFTs harmed Yuga Labs' brand value. *Id.* at ¶ 92. Dr. Berger further opined that harm to Yuga Labs' brand value during that time frame can harm the value of its future projects. *Id.* at ¶ 95.

**Defendants' Response:**

Plaintiff's dispute ignores Dr. Berger's unambiguous testimony that his "analysis was limited to the period from May 6, 2022 to late June." Trial Tr. [Berger] 106:1-3. Although Dr. Berger claimed to have reviewed tweets from before that period, he admittedly did not actually conduct any empirical analysis on those tweets. Trial. Tr. [Berger] 105:14-106:3 ("Q Your empirical analysis was limited to the period from May 6, 2022, to late June 2022; correct? A For a number of reasons, that's the period that I focused on…"). Dr. Berger further did not review any tweets from after June of 2022 to determine whether there was any ongoing brand damage due to RR/BAYC or any other factor, and whether the BAYC brand recovered value after that period. *See* Trial Tr. [Berger] 106:4-10.

Although Dr. Berger opined that harm during the examined timeframe *could have* harmed the value of Yuga's future projects, he offered no opinion (and in fact did not even analyze) whether such harm in fact occurred after June of 2022. *Id.* at 106:4-10.

**Plaintiff's Reply:**

Defendants ignore the plain language of Dr. Berger's declaration and report. Further, Dr. Berger's answer at trial, quoted above, was in response to a question about his sentiment analysis specifically, not all of the data he considered in forming his opinions. Trial Tr. 105:4-6 ("you conducted an analysis of social media posts *as part of your work on this case*") (emphasis added). Moreover, Dr. Berger's analysis established a base line for sentiment before Defendants commenced their infringing activity, which would have captured any alleged harms pre-dating the first mint, and also correlated Defendants' marketing activities and promotion of RR/BAYC NFTs on Twitter to the expressed sentiment of Yuga Labs on Twitter. The harm to Yuga Labs' brand equity did not evaporate overnight; it persists. Trial Tr. 95:17-96:15; 97:9-99:7 (Ms. Muniz testifying about the failure of Yuga Labs to extend the BAYC brand following Defendants' infringing activities); Berger Decl. (Dkt. 339) at ¶ 34 ("brand equity premium manifests itself through brand extensions"), ¶¶ 47-70 (the presence of counterfeits in the marketplace has a negative impact on brand equity and can create confusion, which is what Defendants' infringing activities did to the BAYC brand). Thus, Dr. Berger's analysis does consider a broader time period, and the evidence certainly supports the conclusion that Yuga Labs' goodwill continues to be harmed by Defendants' infringing activities.