**Defendants' Disputed Post Trial Finding of Fact No. 98:**

Ms. Kindler further changed her damages calculation in her trial testimony, opining that "the cost to purchase and destroy all RR/BAYC NFTs could *even be higher* than $797,183,838." Kindler Decl. ¶ 74.

**Plaintiff's Basis for Dispute:**

Ms. Kindler did not change her analysis. The amended offer of proof for Ms. Kindler explicitly states: "It is Ms. Kindler's opinion that if there are holdouts even at this price, consistent with the recent social media evidence, the cost to purchase and destroy all RR/BAYC [NFTs] *could even be higher*." Dkt. 287-10 at 4 n.3 (emphasis added). This is consistent with her trial testimony. Kindler Decl. (Dkt. 338) ¶ 74 (hypothetical buyback price "could even be higher than $797,183,838"). In other words, Ms. Kindler calculated a "ceiling" for what a hypothetical buyback could cost, but acknowledged that the ceiling figure could be higher based on the factors she discussed.

**Defendants' Response:**

Yuga's "dispute" is little more than an exercise in semantics. There is no dispute that the $797 million figure was nowhere to be found in Ms. Kindler's original expert report. Trial Tr. [Kindler] 175:17-179:8. The $797 million figure, 400 times greater than her original damages estimate, first appeared in Ms. Kindler's amended offer of proof more than four months after her original damages report. Dkt. 287-10 at 4 n.3.

The $797 million figure is facially unreasonable, as there has never, to Defendants knowledge, ever been an award of trademark infringement damages that even approaches that amount. The $797 million number is also unreasonable because of what Ms. Kindler claims precipitated it. That is, during the trial Ms. Kindler confirmed that the entire basis for increasing the damages by more than 400 times was a series of tweets made by Mr. Cahen and others on Twitter. Trial Tr. 179:12-14 ('Q Your new opinion was based on Tweets posted by defendants on

    June 6, 2023, and some responses; correct? A Yes. That was the events that had transpired."). In those tweets, Twitter users claimed they would not sell their RR/BAYCs. *See* Dkt. 287-10 at 4. But Ms. Kindler acknowledged that the possibility of a holdout was not a new thing that came into existence at the time of Mr. Cahen's tweet. *Id.* at 180:3-10. More likely, Ms. Kindler's opinion was an attempt to scare Defendants into settling before the trial. When that effort failed, Yuga quickly withdrew its claim for a jury trial and legal damages.

    Ms. Kindler's shifting opinion—driven by Yuga's concurrent decision to drop all legal remedies on the eve of trial—undermines her credibility as a witness.

**Plaintiff's Reply:**

As discussed *supra* ¶ 96, Ms. Kindler did not "change" her opinion.