**Defendants' Disputed Post Trial Finding of Fact No. 108:**

Ms. Kindler agrees that the $106,0555 amount that she included in her calculation should be excluded if the Court enters an injunction. Trial Tr. [Kindler] 198:18-25.

**Plaintiff's Basis for Dispute:**

Should Defendants be ordered to burn the NFTs they currently hold and transfer control of the smart contract of their infringing NFTs to Yuga Labs, Ms. Kindler agreed (and it is Yuga Labs' position) that Defendants should not be required to disgorge profits from their currently held NFTs and not yet minted NFTs, respectively. *See* Trial Tr. at 198:18-25.  Should an injunction issue that allows Defendants to retain either of these benefits, however, the value of the benefits enjoyed by Defendants should still be disgorged.

**Defendants' Response:**

Yuga's objection misleadingly characterizes Ms. Kindler's testimony.  Ms. Kindler testified if Yuga receives an injunction preventing Mr. Ripps and Mr. Cahen *from minting any new RR/BAYC NFTs or selling the ones they currently hold*, Yuga is not entitled to the estimated value of these NFTs in disgorgement. Trial Tr. [Kindler] 198:18-25 ("Q Now, if the Court orders an injunction prohibiting minting of any new RR/BAYC NFTs, the value of the unminted NFTs is zero; correct? A I don't know that -- maybe. I would agree with you that it would not need to be included in an unjust enrichment monetary compensation to Yuga. Q Yuga doesn't get to double-dip; right? A Yes. Absolutely.").  Ms. Kindler did not additionally opine that Mr. Ripps and Mr. Cahen would need to transfer control of the smart contract all together for these damages to be outside of Yuga's reach.

Further, Yuga is incorrect in stating that absent such an injunction, they are entitled to disgorgement of the value Ms. Kindler calculated for these NFTs Mr. Ripps and Mr. Cahen hold or have not minted.  Disgorgement is inappropriate here. An infringer's mental state is a "highly important consideration in determining

whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022). Disgorgement is, therefore, not an available remedy here because – as the evidence showed at trial - neither Mr. Ripps nor Mr. Cahen is a "conscious wrongdoer." *See* Ripps Decl. ¶¶ 144, 147, 158-176 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131, 145-155 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Disgorgement is also unavailable here because Yuga has not shown "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Legal remedies were available in this case. Yuga expressly asserted and offered expert testimony in support of legal remedies (including a claim for actual damages that its expert was able to quantify), which it then voluntarily relinquished. Dkt. 315-1 at 2 ("Yuga Labs is withdrawing all legal remedies"); Trial Tr. [Kindler] 172:14-17, 173:1-8, 174:4-7, 175:17-19. Having abandoned available legal remedies, Yuga cannot obtain disgorgement. *See Hunting World Inc. v. Reboans, Inc.*, No. C 92-1519 (BAC), 1994 WL 763408, at *2-3 (N.D. Cal. Oct. 26, 1994) ("[A]lthough Plaintiff has waived the right to collect damages, this does not render the claim purely equitable because, as discussed above, this is a statutory claim. Again, because the statutes provide adequate remedies, a purely equitable claim may not be maintained.").

Even if disgorgement were available here, Yuga would only be entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about

Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.* Here, Yuga seeks disgorgement related to RR/BAYC NFTs that either Mr. Ripps and Mr. Cahen hold themselves or ones that do not yet exist. Mr. Ripps and Mr. Cahen obviously did not reserve the RR/BAYC NFTs they hold mistakenly believing they were sponsored by Yuga. *See* Trial Tr. [Kindler] 198:13-17 ("Q As the creator of the NFTs, Mr. Ripps was certainly not confused about the source of those NFTs; correct? A I would hope not. Q And neither was Mr. Cahen; correct? A I would agree."). Accordingly, they would never properly be considered as part of a disgorgement analysis.

Finally, even if the court were to find that disgorgement were appropriate for these NFTs, the $106,055 figure is not correct. In the course of Ms. Kindler's calculation of the value of these NFTs, she uses the floor price for RR/BAYC NFTs based on the secondary markets for them on January 27, 2023. Kindler Decl. ¶54 (Dkt. 338). Ms. Kindler opines that the floor price at that time was 0.115 ETH. *Id.* As the trial testimony indicated, however, the floor price for RR/BAYC NFTs has gone down and the floor price on June 7, 2023 was only 0.07 ETH. JTX-1624, Dkt. 287-1, Trial Tr. [Kindler] 182:11-13. Despite this considerable decrease in value, Ms. Kindler testified that she did not update her calculation to reflect the new floor price. Trial Tr. [Kindler] 198:2-12. Using the updated floor price of RR/BAYC NFTs the value of the 590 NFTs would be 41.3 ETH or around $82,600. *See* Trial Tr. [Kindler] 182:14-22 (Ms. Kindler agreeing that a current conversion rate of 1 ETH for $2,000 "sounds right.").

**Plaintiff's Reply:**

Defendants should not be allowed to retain benefits from their intentional infringement. Should Defendants retain their infringing NFTs they will continue to reap the benefits of their promotion and marketing efforts. And as long as Defendants remain in possession of the smart contract, the risk remains that they

will mint even more infringing products. Defendants' responses fail to rebut this fact.

As discussed *supra*, Defendants' responses lack merit. Specifically: (1) all of Defendants' profits are attributable to their infringement (*infra* ¶ 103), (2) Defendants intended to infringe and cause confusion (*supra* ¶ 3), and (3) Yuga Labs' is entitled to a disgorgement of Defendants' profits (*infra* ¶ 131).

Additionally, the Court should reject Defendants' responses because (1) Defendants are not entitled to their ill-gotten profits, (2) Ms. Kindler's calculations were conservative, and (3) Defendants' citation to *Dairy Queen* and *Hunting World* are unpersuasive.

**Defendants Are Not Entitled To Retain The Fruits Of Their Infringement:** Evidence admitted at trial demonstrates that the NFTs held by Defendants derive value even if not yet sold. *See* Kindler Decl. (Dkt. 338) ¶ 61 ("[t]he NFTs held by Defendants or not yet minted derive their value from being part of the broader RR/BAYC NFT collection, the value of which has accrued through the sale and promotion of RR/BAYC NFTs that are already in the market."). Defendants have no expert to rebut this finding. Thus, as long as Defendants hold these NFTs, Defendants continue to reap the benefits of this value. This value is ill-gotten and a direct result of Defendants' infringement. Defendants are not allowed to retain the fruits of unauthorized trademark use. *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015).

Further, as long as Defendants maintain control over the smart contract, the risk remains that they will mint more infringing NFTs and gain more from their infringement. This not only profits Defendants, but also further divests control from Yuga Labs over its brand. Solano Decl. (Dkt. 342) ¶ 47 ("Unless Yuga Labs has control of the RR/BAYC smart contract, Yuga Labs' brand will be forever tied to Mr. Ripps."). This association must be ended and Defendants must not be

allowed to retain their ill-gotten gains. Yuga Labs is entitled to Defendants' total profits and to gain control over the RR/BAYC smart contract.

**By Defendants' Own Admission Ms. Kindler's Calculations Were Conservative:** Ms. Kindler's unrebutted testimony provides a conservative calculation of these NFTs as providing $106,055 in profit to Defendants. Kindler Decl. (Dkt. 338) ¶¶ 51-57. The floor price of NFTs fluctuates over time, and the change in the floor price of Defendants' infringing NFTs does not render Ms. Kindler's valuation of the unminted and unsold NFTs unreasonable. Ms. Kindler's estimate is consistent with Mr. Cahen's own estimate of 0.1-0.15 ETH. Kindler Decl. (Dkt. 338) ¶ 52 (quoting Cahen Deposition Tr. at 255:25-256:7). Ms. Kindler arrived at this estimate by using the floor price (i.e., the lowest market value of any NFT in the entire collection at a given time) as a low-end valuation of the remaining NFTs in the collection. Her conservative valuation of 0.115 ETH remains reasonable, even if the floor price of the collection has fluctuated. As Ms. Kindler testified at trial, "[t]hat data changes on a daily basis. I think at the time there was testimony from both defendants about the pricing that I used being a reasonable price generally as to how to value their NFTs. So I still think it's a reasonable approximation of value." Trial Tr. 198:8-12. This 0.115 ETH figure is also significantly lower (by about 23%) than the price charged by the RSVP contract for newly minted NFTs (0.15 ETH). *See* Kindler Decl. (Dkt. 338) ¶ 36. Moreover, the evidence shows that Defendants are readily able to drive up the floor price and the transaction volume if they choose to do so. *See id.* ¶ 73. The unrebutted evidence shows a conservative estimate of the profit Defendants would reap should they retain the ability to mint and sell.

Should Defendants, however, be ordered to burn the NFTs they currently hold and transfer control of the smart contract for their infringing NFTs to Yuga Labs, it is Yuga Labs' position that Defendants should not be required to disgorge profits, respectively, from their currently held NFTs and their not yet minted NFTs.

**Defendants' Citation To *Dairy Queen* and *Hunting World* Are Unpersuasive:** Yuga Labs is entitled to Defendants' profits for the reasons outlined *infra* ¶ 131. Defendants' case law does not change this fact. *Dairy Queen* does not impose any different burden, nor did it hold that disgorgement in a Lanham Act case is unavailable in the absence of an adequate remedy at law. *Dairy Queen* did not involve a disgorgement claim under the Lanham Act, but rather an "equitable accounting" claim. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). "[T]he Supreme Court characterizes the *Dairy Queen* claim as a legal claim for damages (not disgorgement of profits)." *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998)). As a result, *Dairy Queen* does not apply to Yuga Labs' disgorgement claim under the Lanham Act.

Further, the Lanham Act and model jury instructions are more authoritative on the issue of disgorgement than *Hunting World*, an unpublished case from another judicial district that has been rejected in C.D. Cal. *See Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*, No. EDCV1001858VAPDTBX, 2012 WL 12893524, at *6 n.5 (C.D. Cal. June 27, 2012). There is no requirement for an absence of an "adequate remedy at law" to obtain disgorgement, and even if there were, Yuga Labs' actual damages would not be sufficient to compensate for the irreparable harm Defendants caused. *See infra* ¶ 132.

JOINT STMT. RE DEFENDANTS' PROPOSED POST-TRIAL FINDING OF FACT NO. 108      6      Case No. 2:22-cv-04355-JFW-JEM