**Defendants' Disputed Post Trial Finding of Fact No. 109:**

Profits for all RR/BAYC NFT reservations were split with Mr. Hickman and Mr. Lehman—including for pre-RSVP contract reservations that Yuga's calculations fail to apportion—with each receiving 15% of profits. Ripps Decl. ¶¶ 129-135 (uncontested); Cahen Decl. ¶¶ 177-178; Trial Tr. [Kindler] 196:22-197:2.

**Plaintiff's Basis for Dispute:**

Data available on the blockchain only shows $419,733 transferred to Mr. Hickman and Mr. Lehman (collectively) through the RSVP contract. Kindler Decl. (Dkt. 338) ¶ 59. Defendants failed to provide evidence of manual profit-sharing payments to Mr. Hickman and Mr. Lehman in discovery. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015) (affirming holding that defendant failed to meet burden to prove a 40% royalty was a proper deduction, where "the documentary evidence leaves uncertainty as to the amount of royalty fees paid" and defendant "did not produce sufficient documentation to prove the specific amounts"). After Defendants identified the purpose of certain payments for the first time in their trial testimony, *see* Ripps Decl. (Dkt. 346) ¶¶ 132-135, Ms. Kindler testified that those figures were likely appropriate deductions from a disgorgement judgment. Trial Tr. at 195:3-7 ("If it is established that that money is, in fact, profit sharing that's tied to the work on this case involving the infringing marks, then I would have no problem deducting that from my ultimate conclusion. I just have not seen any evidence to suggest that it would be appropriate to do that.").

However, even considering Defendants' new position that these payments constitute profit-sharing, these payments are arguably not proper cost deductions, but shared profit that Defendants must collect if at all through a claim against Mr. Lehman and/or Mr. Hickman for contribution. The Court may therefore hold that they should still be disgorged from Defendants. Alternatively, even if Defendants

could satisfy their burden to prove these deductions, the Lanham Act authorizes the Court to modify the award to Yuga Labs upward to account for shortfalls such as this. *See also* 15 U.S.C. § 1117(a) (authorizing Court to "find that the amount of the recovery based on profits is [] inadequate" and "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

**Defendants' Response:**

Yuga's objection inaccurately describes the documents in evidence. As JTX-2710 and JTX-2711 demonstrate, data available on the blockchain show that there were additional payments made from Mr. Ripps to Mr. Lehman and Mr. Hickman. That blockchain data has been publicly accessible since those transactions were made.

Further, it is inaccurate to say Defendants did not provide evidence of this profit sharing until trial. Deposition testimony made clear and supported this finding that there were individual transfers made to account for profit-sharing before the RSVP contract was put in place. *See* Lehman's Depo. 210:16-214:7 (Dkt. 411) (confirming that a payment received by Mr. Ripps for 32.98 ETH was for "the profits [Mr. Ripps] made before [the RSVP contract], and then looking forward. It's all automatic."). Defendants also produced spreadsheets of internal reporting and profit splitting, including JTX-103, which shows a 15% split with both Mr. Lehman and Mr. Hickman. Finally, even Mr. Lehman's declaration, which Yuga was intimately involved in drafting, that was signed on February 3, 2023, clearly stated that the profit share included profits received before the RSVP contract was put in place. *See* JTX-001, ¶33 ("In exchange for developing the RSVP Contract and rrbayc.com website for the Business Venture, I was to receive 15% of the combined revenue of the RR/BAYC mints with and without the RSVP Contract."). Accordingly, Yuga's claim there was not evidence presented to support pre-RSVP contract profit splitting before trial is patently false.

Second, as Ms. Kindler's calculations of Mr. Ripps and Mr. Cahen's profits show, she determined that the proper way to calculate their profit from the sales of RR/BAYC NFTs was to remove the profits that Mr. Lehman and Mr. Hickman received. Kindler Decl. ¶ 59 (Dkt. 338). Yuga itself relies on that figure, and by extension the analysis underlying its calculation, in its request for damages. Dkt. 343 at 15. Ms. Kindler also testified at trial that these additional profit-sharing transfers should be removed from her profit calculation if they are established. Trial Tr. [Kindler] 195:3-7. As outlined above, these transfers have properly been proven to be profit sharing and should, therefore, be removed.

Third, Yuga's objection here is inconsistent with their own Findings of Fact and their trial brief. Specifically, in their Findings of Fact, Yuga agrees that their calculation of Defendants' profits needs to be reduced by $108,037.08 to determine the accurate amount of profits Mr. Ripps and Mr. Cahen received from the initial sales. *See* Yuga's Proposed Finding of Fact 11(b) (Dkt. 418-1). To state in this objection that the transfers made to Mr. Lehman and Mr. Hickman should not be excluded is inconsistent, unfounded, and misleading.

Also, Yuga stated in its trial brief that the damages they seek include only disgorgement of Mr. Ripps and Mr. Cahen's profits from the sales of RR/BAYC NFTs, not Mr. Lehman and Mr. Hickman's. To raise an argument that Yuga is entitled to receive profits received by Mr. Lehman and Mr. Hickman and possibly more for the first time after trial has been completed in an objection to Defendants' finding of fact is prejudicially too late. *See* Dkt. 343 at 15.

Finally, the section of the Lanham Act that Yuga cites to is inapplicable here and misleading. As the full portion of Section 1117(a) states "[i]f the court shall find that the amount of the recovery based on profits is either inadequate *or excessive* the court may in its discretion enter judgment for such sum as the court shall find to be just, *according to the circumstances of the case. Such sum* in either of the above circumstances *shall constitute compensation and not a*

*penalty.*" 15 U.S.C. § 1117(a) (emphasis added).  Here, the circumstances of the case support a finding that any recovery of profits beyond those Mr. Ripps and Mr. Cahen received would be excessive.  For example, the evidence shows that the intent of the RR/BAYC project was to criticize Yuga's problematic imagery and educate consumers about the nature of NFTs—the exact opposite of confusing consumers.  Cahen Decl. ¶¶ 97-98, 133 (Dkt. 344); Ripps Decl. ¶¶ 137-139 (Dkt. 346) (uncontested); JTX-2033.  Mr. Ripps has had a long and successful career as an artist, during which he has created numerous satirical art projects spotlighting problematic societal issues.  Ripps Decl. ¶¶ 15-26 (Dkt. 346) (uncontested).

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way.  For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project.  Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Collectors using the rrbayc.com website were also required to read and click through a disclaimer acknowledging the artistic purpose of the project before they were allowed to commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these requirement and additional steps so that the artistic purpose of the work would be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement ultimately included, if it had a negative impact on usability? …  A.   … Ryder wanted it and so he had the final call.").

Defendants' online discussion, which consisted of nearly the entirety of Defendants' public activities associated with RR/BAYC, confirms their intent.  In those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows

that NFTs are not digital images. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

The evidence at trial also shows that Yuga's public activities amounted to authorization of RR/BAYC collection and the numerous other collections that use the asserted marks. At the time Mr. Ripps and Mr. Cahen launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. Before suing Mr. Ripps and Mr. Cahen over the RR/BAYC project, Yuga had not taken steps to stop these third-party projects from using Yuga's marks. Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344). There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted that Mr. Ripps, Mr. Cahen, and Mr. Hickman would have probably seen these collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project. Trial Tr. [Muniz] 77:19-23. 26. There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22. For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks. *See*, *e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Given these circumstances, if the court finds that disgorgement is appropriate, the court should not find disgorgement of Mr. Ripps and Mr. Cahen's profits to be inadequate and require additional disgorgement of profits the evidence shows went to Mr. Hickman and Mr. Lehman. Such a decision would go beyond compensation and veer into punishment, impermissible under the statute.

**Plaintiff's Reply:**

Defendants' belated and purported "evidence" of profit sharing does not rebut Yuga Labs' experts. Defendants failed to call expert witnesses to corroborate their profits calculations and instead attempt to spring unreliable new evidence on the Court and the parties at trial. Yuga Labs' experts have provided detailed reports outlining their findings, Defendants' self-serving spreadsheet does not rebut these expert opinions.

As discussed *supra*, Defendants' responses lack merit. Specifically: (1) Defendants intended to infringe (*supra* ¶ 3); (2) Defendants' online discussions prove their profit motive (*Id.*), (3) Defendants' "disclaimer" does not negate the likelihood of confusion (*infra* ¶ 132), (4) the majority of Defendants' infringing NFTs were not sold on rrbayc.com (*Id.*), (5) Defendants failed to take steps to make their infringement less confusing (*Id.*), and (6) Yuga Labs did not abandon its marks or license Defendants' infringement (*Infra* ¶ 114).

Additionally, the Court should reject Defendants' responses because (1) Defendants' belated evidence does not rebut Yuga Labs' experts, and (2) Defendants are not entitled to their ill-gotten gains.

**Defendants' Late And Self-Serving Documents Do Not Demonstrate A Need For A Reduction In Disgorgement:** The spreadsheet Defendant has provided to prove their deductions is unreliable. Defendants did not cite to this document in any of the witness declarations. *See* Ripps Decl. (Dkt. 346); Cahen Decl. (Dkt. 344); Hickman Decl. (Dkt. (345). This made-for litigation spreadsheet is unreliable, and Defendants offer no expert testimony to corroborate its accuracy. *See* JTX-103. Rather, Defendants offer only JTX-2710 and JTX-2711 as corroboration. These were never produced in discovery, as evidenced by their lack of a Bates number and July 2023 date. Instead, Defendants sprung them on Yuga Labs on the eve of trial. If these exhibits had been produced earlier, the parties may have been able to reach a solution on the issue of monetary remedies (*see infra* ¶

111) without needing to involve the Court. Instead, these exhibits represent Defendants' last-ditch effort to rebut Yuga Labs' well-reasoned expert reports. But this last-ditch effort must fail in light of Ms. Kindler's expert opinion. *See* Kindler Decl. (Dkt. 338) ¶¶ 58-61. Defendants, not Plaintiff, "bear[] the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *Lindy Pen Co.*, 982 F.2d at 1408; *Frank Lloyd Wright Found. V. Shmavonian*, No. 18-CV-06564-MMC, 2019 WL 3413479, at *1 n.2 (N.D. Cal. July 29, 2019). Defendants' self-serving documents do not meet this burden.

Because this late, purported evidence need not be considered, Defendants failed to provide evidence of manual profit-sharing payments to Mr. Hickman and Mr. Lehman in discovery. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015) (affirming holding that defendant failed to meet burden to prove a 40% royalty was a proper deduction, where "the documentary evidence leaves uncertainty as to the amount of royalty fees paid" and defendant "did not produce sufficient documentation to prove the specific amounts"). Nevertheless, after Defendants identified the purpose of certain payments for the first time in their trial testimony, *see* Ripps Decl. (Dkt. 346) ¶¶ 132-135, Ms. Kindler testified that those figures may be appropriate deductions from a disgorgement judgment. Trial Tr. at 195:3-7 ("If it is established that that money is, in fact, profit sharing that's tied to the work on this case involving the infringing marks, then I would have no problem deducting that from my ultimate conclusion. I just have not seen any evidence to suggest that it would be appropriate to do that."). Even if the Court finds that Defendants' belated, self-serving statements proved their entitlement to these deductions, the Court may adjust the profits award "to be just." 15 U.S.C. § 1117(a) (authorizing Court to "find that the amount of the recovery based on profits is [] inadequate" and "enter judgment for such sum as the court shall find to be just, according to the

circumstances of the case."). Therefore, Yuga Labs may be awarded these profits regardless of whether Defendants' belated document is found persuasive.

**Defendants Are Not Entitled To Retain Their Ill-Gotten Gains:** Defendants' argument that justice requires their profits to be lowered is unsupported by evidence. It is patently unjust for Defendants to retain the profits from their scam. All profits Defendants derived from their RR/BAYC NFTs were ill-gotten from their willful infringement of Yuga Labs' BAYC Marks. Defendants are not allowed to retain the fruits of unauthorized trademark use. *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015). This is especially so where, and contrary to Defendants' argument, Defendants intended to infringe and confuse consumers. *See supra* ¶ 3, SJ Order. (Dkt. 225) at 16 ("Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag."). Yuga Labs is entitled to all of Defendants' profits.