**Defendants' Disputed Post Trial Finding of Fact No. 116:**

<u>Mr. Cahen believed it was appropriate to use the term "ape" in a project called "ApeMarket" and explained at trial that "it is a word that describes, like one of the most common animals on the entire planet. What? Am I not going to be allowed to say 'apple' or 'cucumber'? You know, it seems pretty reasonable that I would be allowed to say the word 'ape.'" Trial Tr. [Cahen] 264:13-17.</u>

**Plaintiff's Basis for Dispute:**

Yuga Labs does not seek to stop Mr. Cahen from being "allowed to say the word 'ape,'" but rather to stop him from using it as a part of Yuga Labs' BAYC Marks to confuse consumers into purchasing counterfeit NFTs for profit. The confusion Defendants caused is a violation of trademark law. Specifically, Defendants developed and marketed an NFT marketplace, Ape Market, where consumers could purchase and sell RR/BAYC NFTs alongside BAYC NFTs on a platform that implied it originated from, was sponsored by, or approved by Yuga Labs. *See* JTX-696; JTX-697; JTX-698; JTX-807 ("Trade Yuga NFTs for free"); JTX-938; Solano Decl. (Dkt. 342) ¶ 49. Defendants teased the release of Ape Market to drive up sales of RR/BAYC NFTs. *See* JTX-696; JTX-801.170-178; JTX-801.185. As Mr. Cahen stated: "One thing we can do to stimulate the rsvp completing is to tease apemarket.com." JTX-801.144. Defendants even continued to promote Ape Market after the filing of this lawsuit. *See* JTX-1048. For example, the @ApeMarketplace Twitter account continues to promote rrbayc.com and link to a marketplace on which RR/BAYC NFTs are still available for sale. Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19. And Defendants expected to profit off of their use of the BAYC Marks to sell and resell RR/BAYC NFTs and to generate transaction fees from sales on Ape Market. *See* JTX-1 at ¶¶ 10-13; JTX-49; JTX-1574; JTX-1586. They even targeted Ape Market at Yuga Labs NFT holders to harm Yuga Labs, directing their marketing to the "Yuga community." Solano Decl. (Dkt. 342) ¶ 49; JTX-697.

Their promotion of Ape Market used "ape" and Yuga Labs' BAYC Marks as trademarks to market infringing NFTs. For example, through their "@ApeMarketplace" Twitter account, and their website "apemarket.com" which used Yuga Labs' Ape Skull Logo in its favicon. JTX-95, JTX-696. As Mr. Ripps admits, these marks and logos were chosen by Defendants for a reason. Ripps Tr. Decl. (Dkt. 346) ¶ 55. That reason was to intentionally deceive consumers, with a bad faith intent to profit off of Yuga Labs' goodwill in the BAYC Marks. SJ Order (Dkt. 225) at 12-15.

Contrary to Mr. Cahen's inapt analogy, Defendants' actions are more akin to using the "Apple" mark and logo to sell computers that are identical to Apple computers, at computer stores alongside real Apple computers.

**Defendants' Response:**

The evidence at trial shows that Mr. Cahen testified (and Yuga did not cross-examine or attempt to rebut) his belief that it was appropriate use the term ape:

Q. Before this lawsuit did you think there was any issue with using the word "ape"?

A. *In my opinion, there is no issue with using the word "ape."*

Q. Why not?

A. *Because it is a word that describes, like, one of the most common animals on the entire planet. What? Am I not going to be allowed to say "apple" or "cucumber"? You know, it seems pretty reasonable that I would be allowed to say the word "ape."*

Q. What about in the context of crypto? What does "ape" mean?

A. *I think it means different things. But I think there is a colloquialism used which people use as like "I aped into something."*

Q. And what does that mean?

|   |   |   |
|---|---|---|
| A. | | Like, I invested or I participated. Like, I just jumped in. Maybe, like, a synonym for it. |
| Q. | | And where else have you seen the word "ape" used in the crypto context? |
| A. | | Definitely in the context of the Bored Ape Yacht Club. |
| Q. | | Anywhere else? |
| A. | | *Other pieces of artwork or NFT collections, I guess, you could say*. |

Trial Tr. [Cahen] 264:8-265:6 (emphasis added).

Moreover, the common use of "ape" and other assert marks by third parties further justified Mr. Cahen's good faith belief that there was nothing wrong with using the term "ape." At the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. And, as Yuga's CEO admitted, there are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22. For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks. *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Yuga's claims against the website "apemarket.com" is an effort to prohibit from using the word "ape" despite the hundreds of third-party projects that have

been using, and that Yuga is permitting to use, "ape" and other asserted mark in connection with NFTs before this lawsuit was filed.

ApeMarket never suggested any sponsorship or affiliation with Yuga. ApeMarket was never released, and there was no evidence that the webpage apemarket.com was a functioning website that could sell or promote anything. Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested). And the exhibits Yuga cites do not show otherwise. For example, JTX-696 does not show what apemarket.com displayed, what functionalities it had, and whether it has ever promoted or sold RR/BAYC NFTs. As noted above, ApeMarket was never released (Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested)) and no evidence shows that the website domain apemarket.com was ever used for the promotion or sale of anything. And JTX-801 shows that Defendants were in the ideation process for ApeMarket, the RR/BAYC team discussed extensively how to ensure that apemarket.com would not be confusing. For example, Mr. Cahen discussed with Mr. Lehman the idea of using a wrapper on apemarket.com to determine whether it would be an effective way to ensure that website was clear for users. JTX-801.185. Mr. Cahen also discussed with the RR/BAYC team the idea of using labels on apemarket.com. *See* JTX-801-196 (Mr. Cahen wrote, "I think we could also have a label under the logo that denotes which collection you are viewing or something" and further stating "[b]ecause that's where the real importance lies[,] rrbayc truly is very important conceptual art …"). And JTX-809 is a screenshot of mock-up of apemarket.com that Mr. Ripps did not approve and that was still subject to substantial changes from the ongoing ideation process for apemarket.com.

And Yuga's analogy to the technology company Apple in inapposite. What Mr. Cahen is was testifying to was that the term "ape" was readily used broadly, in crypto, and in connection with NFT collection. He did not see anything wrong with

using "ape" as it would just be one of many crypto projects that use the term. Moreover, at the time of the RR/BAYC collection, Yuga did not have any NFT marketplace and the idea that Yuga can use a generic term like "ape" to enforce trademark rights in business areas that Yuga at the time did not operate in was something that Mr. Cahen believed was inappropriate. It would be similar to the company Apple using its trademark for mobile phone/computer/stores to prohibit someone from use the word "Apple" in a line of business for which the company Apple does not operate, such as a gardening service or a repair shop for off-road vehicles. Mr. Cahen's belief that this would not be appropriate activity is reasonable.

**Plaintiff's Reply:**

Defendants' infringement was not in good faith. Notably, Defendants argue that only Mr. Cahen had a belief that his use of "Ape" was in good faith, apparently conceding that Mr. Ripps had no such good faith belief. Regardless, evidence admitted at trial demonstrates that neither Defendant acted in good faith. Defendants' infringement is not akin to opening a "gardening service or repair shop[.]" In Defendants' universe of trademark law, they believe they should be allowed to open a store that sells counterfeit iPhones next to the real thing and call it an "Apple Store." That is not something the Lanham Act allows.

As discussed *supra*, Defendants' responses lack merit. Specifically: (1) Defendants' liability has already been established through the Court's summary judgment order (*supra* ¶¶ 9, 32), (2) Defendants acted with the intent to confuse, not in good faith, (*supra* ¶¶ 17, 115), (3) Yuga Labs did not abandon its marks (*Id.*), (4) Yuga Labs did not grant Defendants a license to infringe (*Id.*), and (5) the Ape Market Twitter account showed the infringing website and promoted Defendants' infringing NFTs (*supra* ¶ 17).

Additionally, the Court should reject Defendants' responses because (1) Mr. Cahen's testimony that he thought he could use the APE mark is not credible, (2)

Ape Market has already been found infringing, and (3) Ape Market exists and the website was ready to launch.

**Mr. Cahen's Testimony Is Not Credible:** Mr. Cahen is not credible for the reasons discussed *supra* ¶¶ 7, 18, 41.  Mr. Cahen's testimony that he thought he could infringe upon Yuga Labs' marks is a clear attempt to come up with a *post hoc* justification for his infringement.  Mr. Cahen was aware that he was infringing. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark").  Yet, despite this advice from his attorney, the rrbayc.com and Ape Market favicons consisted of that very logo. JTX-94; JTX-95.  Mr. Cahen's testimony that he chose the word "Ape" because it is purportedly common in the cryptocurrency community is also farcical, Mr. Cahen's plan was to use Ape Market to promote his infringing NFTs, NFTs that point to the exact same ape images as legitimate Bored Ape Yacht Club NFTs. JTX-801.221 ("so basically my goal for today is to create an announcement that will create hype and volume, we want to mint out the remainder of that collection [] thats our primary goal . . . I really want to tweet an image like this today to create major hype and speculation [followed by image of Ape Market webpage]").  Mr. Cahen's testimony to the contrary is not credible.

**Ape Market Confusingly Incorporates Yuga Labs Marks:** The Court has already found that Defendants' use of Ape Market is confusing in granting Yuga Labs' summary judgment motion.  SJ Order (Dkt. 225) at 14 (apemarket.com uses Yuga's "BORED APE and other "APE"-based marks and merely adds the descriptive work "market."  These additions do not change the fact that Defendants' domain names are confusingly similar to Yuga's trademarks.").  Defendants stipulated to this fact in the pre-trial conference order. Dkt. 320-1 at 13.  Yuga Labs is not seeking to preclude Defendants from using the word "ape," it is trying to regain control over its brand and end Defendants' ongoing infringement.  Trial Tr. at 64:8-11 ("[Defendants] can criticize Bored Ape Yacht Club and use those

words. But if you are trying to say that criticism also means selling exact same NFTs to exact same people on the exact same marketplaces, that's absurd.").

Defendants' argument that Ape Market does not suggest an affiliation with Yuga Labs is also false. The favicon for the Ape Market web domain directly copies Yuga Labs' ape skull logo. JTX-95. Using Yuga Labs' trademarks necessarily infers an affiliation. And Defendants marketed their infringing products side-by-side with Yuga Labs' legitimate Bored Ape Yacht Club NFTs on the Ape Market website. *See* JTX-696; Atalay Decl. ¶ 9 ("JTX-808 is a copy of the rendering of source code contained in JTX-806 for the ApeMarket homepage, containing an overview of the top Ape Market Collections and the dropdown menu at the top of that page, titled "Collections," which lists "Bored Ape Yacht Club," "Mutant Ape Yacht Club," Otherdeed for Otherside," "Bored Ape Kennel Club," and "RR/BAYC."). Defendants' own internal discussions also show that Defendants' co-conspirators suggested several ways to try to avoid confusion due to this obvious affiliation. *See, e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"). But Defendants chose to disregard the advice of the lawyer and their co-conspirators and designed Ape Market to reinforce that clear affiliation.

**Evidence Admitted At Trial Confirms That Ape Market Was Ready To Launch:** Despite Defendants' attempts to argue otherwise, the evidence shows that Ape Market was ready to launch. *See* Trial Tr. at 137:23-24 ("The code was in such a state of completion that it was operational."); *see also* JTX-807; JTX-808; JTX-809. Indeed, at trial Mr. Cahen confirmed that Ape Market was ready to launch within a matter of days. Trial Tr. at 247:10-12 ("Q: And there was a ready-to-go Ape Market by February – excuse me – by June 24, 2022? A: Among other things, yes[.]"). Mr. Cahen later confirmed that he had "no reason to doubt" that the marketplace could be launched within a matter of 48 hours. *Id.* at 248:7-9. That fact is also supported by documentary evidence submitted at trial. See JTX-

1027 (post from Ape Market twitter account advertising that "ApeMarket.com will go live within 24 hours of the final mint, which we will announce shortly"); *see also* JTX-801.370 (Mr. Lehman stating "[s]hould finish minting between 8-10 hours from now . . . so per our 24 hour commitment Friday afternoon would be the release" and Mr. Cahen responding "I think it makes sense to launch a bit earlier imo if we are comfortable doing so."); JTX-938 (Tweet from Mr. Cahen stating "[w]e built a marketplace for every YugaLabs asset . . . [a]nd we got sued for it."). Ape Market existed as a commercial endeavor actively marketing on social media, and the online marketplace was ready to launch, and would have launched but for this litigation. JTX-1 at ¶ 12.