**Defendants' Disputed Post Trial Conclusion of Law No. 131:**

<u>Disgorgement is not an available remedy because—for all the reasons explained above—neither Mr. Ripps nor Mr. Cahen is a "conscious wrongdoer."</u> *See supra* ¶¶ 17-31.

**Plaintiff's Basis for Dispute:**

The Lanham Act does not contain a willfulness requirement; Yuga Labs' only burden is to prove Defendants' sales. 15 U.S.C. § 1117(a) (allowing plaintiff "to recover . . . defendant's profits."). Defendants cite no case to the contrary. Because the Court has found Defendants liable for intentional infringement (SJ Order (Dkt. 225) at 12), Yuga Labs is entitled to Defendants' profits from their infringing acts. *See supra* ¶¶ 17-31; *see also* Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 11-13, 32-37.

Ms. Kindler's calculations of $1,375,361.92 in Defendants' profits are unrebutted. Accordingly, these profits are "presumed to be the result of the infringing activity," and Defendants fail to meet their "burden of showing which, if any, of its total sales are not attributable to the infringing activity." *Frank Lloyd Wright Found. v. Shmavonian*, No. 18-CV-06564-MMC, 2019 WL 3413479, at *1 n.2 (N.D. Cal. July 29, 2019). As Defendants admit, *each* RR/BAYC NFT used the BAYC Marks (Dkt. 418-1 at 3:15-16), so Defendants *cannot* show that any RR/BAYC NFT sale (or re-sale) was *not* the result of their infringing activity.

Nevertheless, Yuga Labs is entitled to Defendants' profits due to their infringing activity regardless of whether purchasers were actually confused. *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238-39, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one"); *see also* J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 23:7 (5th ed.) (Post-sale

confusion damages trademark holders because "consumers could acquire the prestige value of the senior user's product by buying the copier's cheap imitation. Even though the knowledgeable buyer knew that it was getting an imitation, viewers would be confused."); Berger Decl. ¶¶ 44-92.

Even though a finding of willfulness is not necessary for disgorgement, Defendants' infringement was willful. *See supra* ¶¶ 9, 17, 120; *see also supra* ¶ 115 (discussing bad-faith intent to infringe in reply).

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

The Supreme Court has undisputedly held that an infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). And courts in this jurisdiction have recognized that disgorgement is appropriate in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022).

Yuga incorrectly argues that Ms. Kindler's profits calculation is unrebutted because, critically, Ms. Kindler did not correctly apportion what portion of those profits are attributable to confusion—especially given that there is not a single case of actual confusion in this case. Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). Regardless, this issue is a separate reason for why Yuga is not entitled to disgorgement apart from the fact that Defendants' mental state just not justify disgorging profits under *Romag Fasteners*.

Yuga wrongly uses the law of the case doctrine by relying on this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial

rulings such as motions for summary judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

Moreover, the trial evidence showed that Defendants are not intentional infringers and did not intend to suggest that RR/BAYC was related to Yuga. Defendants' contemporaneous communications confirm that their intent was to use RR/BAYC to criticize rather than confuse. JTX-801, 803-804; Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344; Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10; Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these requirements so the artistic purpose of the work would be clear. Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Defendants' online discussion, which consisted of nearly the entirety of Defendants' public activities associated with RR/BAYC, confirms their intent. Defendants discussed the inappropriate messaging in Yuga's imagery and how RR/BAYC shows that NFTs are not digital images. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Defendants also created the RR/BAYC collection based on a good faith belief that Yuga authorized the creation of projects like RR/BAYC. At the time Defendants launched RR/BAYC, there were more than 9,000 third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243-2244. Before suing Defendants, Yuga had not taken steps to stop these third-party projects. Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344). There were hundreds of NFT collections unaffiliated with Yuga that use the asserted marks on OpenSea. Trial

Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted that Defendants and Mr. Hickman would have probably seen these collections at the time they created RR/BAYC.  Trial Tr. [Muniz] 77:19-23. 26.  There are "literally thousands" of products that use the asserted marks without affiliation with Yuga.  Trial Tr. [Muniz] 81:18-22; JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Moreover, Ryan Hickman owned a BAYC NFT at the time of the project.  Hickman Decl. ¶¶ 19-22 (Dkt. 345).  BAYC NFTs had Terms & Conditions that allowed people to commercialize their NFTS. Trial Tr. [Solano] 25:1-4.  Yuga encouraged the public to use the BAYC artwork and to be creative with BAYC's intellectual property.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26; JTX 2672; JTX 2673.  Ms. Muniz confirmed that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright.  Trial Tr. [Muniz] 72:19-22.

The evidence that Yuga cites does not rebut this overwhelming evidence of Defendants' intent to protest and criticize because Yuga relies on mischaracterizing evidence.  Yuga repeatedly cites to various pages of JTX-801 to argue that Defendants were aware of the Yuga's alleged confusion.  But those pages are internal discussion about the design of the ApeMarket website to ensure that users would not be confused by the website design.  Yuga cross-examined Mr. Hickman about these communications and received the same explanation: "This is our attempt to make it as clear as possible.  We are having discussion on how to make sure it was very clear for users."  Trial Tr. [Hickman] 212:22-24.

Yuga similarly takes out of context exhibits such as JTX-44.00002 to incorrectly argue that that Defendants were knowingly causing confusion.  In JTX-44.00002, Mr. Hickman stated that "people believe the tokenId should match the RR ID.  that is where they get confused."  This statement is not discussing confusion regarding the source of origin for RR/BAYC NFTs.  Instead, it discusses how the RR/BAYC collection used a different numbering system.  Due to the

numbering system, some consumers were confused as to which RR/BAYC NFT they received but they understood that they received an NFT created by Mr. Ripps.

Yuga also alleges that Etherscan's creation of a token tracker is evidence of Defendants' intent to confuse. But Defendants do not control the Etherscan website or how Etherscan chooses to display the RR/BAYC collection. Mr. Atalay himself admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or check smart contract addresses. Trial Tr. [Atalay] 135:2-25. Mr. Atalay explained that token names "would be a fairly weak way to do so because often those things are mutable. They can be changed after the fact. Also, there's no guarantee of uniqueness." Trial Tr. [Atalay] 133:12-23.

Yuga also incorrectly asserts that Defendants continued to market RR/BAYC NFTs even after the summary judgment order in this case. The exhibits Yuga cites (JTX-1315, JTX-1317, JTX-1613-1615) are tweets that Mr. Cahen made reporting news in relation to the RR/BAYC collection: specifically, that certain third-party marketplaces were trading the NFTs. As Mr. Cahen explained in his declaration, "Overall, I would consider myself a very active community member in the cryptocurrency space, which is something that I take pride in. A lot of the work I do takes place over social media." Cahen Decl. ¶ 50 (Dkt. 344). Mr. Cahen further explained, "I often use my social media accounts to report on crypto news or other topics I find noteworthy to help spread awareness." Cahen Decl. ¶ 52 (Dkt. 344).

Yuga also incorrectly alleges that Defendants continued to market ApeMarket after entry of summary judgment. This argument makes no sense given ApeMarket was never released. Further, Yuga cites an exhibit (JTX-1048) that is dated January 18, 2023, which was before entry of summary judgment.

Yuga also cites the unreliable Declaration of Gregory Solano. Mr. Solano is not credible given the many false and misleading statements contained in his declaration. Trial Tr. [Solano] 48:15-49:4, 40:3-14, 38:14-16, 38:17-19. Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano

Decl.; Trial Tr. [Solano] 32:19-33:11, 34:9-19. Mr. Solano's testimony regarding allegations of confusion (Trial Tr. [Solano] 5:14-54:22) have also been rebutted. Mr. Solano could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. In fact, no one has been able to identify a single confused consumer in the entirety of this case. *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.

**Plaintiff's Reply:**

Despite the fact that the Court has already held that Defendants intended to infringe, Defendants seek another bite at the apple. SJ Order (Dkt. 225) at 12. Disgorgement is available and proper as a remedy for Defendants' infringement. Defendants' responses are just another attempt to avoid the Court's summary judgment ruling and relitigate closed issues.

As discussed *supra*, Defendants' responses lack merit. Specifically: (1) the Court's summary judgment order is controlling (*supra* ¶ 9), (2) Defendants intended to infringe and their infringement was not an art project (*supra* ¶ 10), (3) Defendants' internal discussions confirm their profit motive (*supra* ¶ 4, 13), (4) Defendants' "disclaimers" did not negate confusion (*supra* ¶ 20), (5) the majority of RR/BAYC NFTs were not sold on rrbayc.com (*infra* ¶¶ 19, 103), (6) Defendants failed to take steps to avoid confusion, (*supra* ¶ 33), (7) Yuga Labs did not abandon its marks (*supra* ¶ 114), (8) Yuga Labs did not license Defendants' infringement (*supra* ¶ 115), (9) Defendants failed to impeach Mr. Solano (*supra* ¶ 8), and (10) Defendants misrepresent Mr. Atalay's testimony (*supra* ¶ 68).

Additionally, the Court should reject Defendants' responses because all of Defendants' profits are attributable to their infringing activity (*supra* ¶ 103) and because Yuga Labs is entitled to disgorgement of Defendants' profits.

**Yuga Labs Is Entitled to Disgorgement of Defendants' Profits:** Yuga Labs' only burden is to prove Defendants' sales to obtain disgorgement. 15 U.S.C. § 1117(a) (allowing plaintiff "to recover . . . defendant's profits."). Defendants cite

no case to the contrary.  Defendants wrongly claim that *MGA* holds that disgorgement is "only" warranted in cases of conscious wrongdoers.  To the contrary, *MGA* found that willfulness is a sufficient, **but not necessary**, condition to a disgorgement finding.  *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548, 2022 WL 4596697, at *17.   Because the Court has found Defendants liable for intentional infringement (SJ Order (Dkt. 225) at 12), Yuga Labs is entitled to Defendants' profits from their infringing acts.  *See supra* ¶¶ 34; *see also* Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) ¶¶ 7, 11-13, 32-37.