**Defendants' Disputed Post Trial Conclusion of Law No. 135:**

Even if disgorgement of profits were available, Yuga would only be entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.,* 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.*

**Plaintiff's Basis for Dispute:**

In a trademark infringement case, "[t]he plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. *Supra* ¶¶ 132 (reply); 134. *See supra* ¶¶ 131, 132. Yuga Labs has established that it is entitled to at least $1,375,361.92 of Defendants' profits (after deducting payments to Defendants' business partners and the amount of RR/BAYC NFTs that they hold or did not mint). Dkt. 416 at 6:23. Defendants provided no expert witness testimony, consumer survey, or financial analysis to the contrary. Since they cannot rebut these calculations, Yuga Labs is entitled to the *Lindy Pen* presumption that Defendants made $1,375,361.92 as a result of infringing activity.

Defendants have failed to carry their burden to show that even one of these sales is not attributable to their infringing NFTs. Instead, they contend that, even though they used—and had to use—the BAYC Marks to sell their counterfeit NFTs, their profits were somehow not attributable to the BAYC Marks. Yet again, Defendants cite no case law, expert testimony, or survey evidence to support this claim, and their baseless argument fails. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,* 778 F.3d 1059, 1076 (9th Cir. 2015) (affirming holding that defendant failed to meet burden to prove a 40% royalty was a proper deduction,

where "the documentary evidence leaves uncertainty as to the amount of royalty fees paid" and defendant "did not produce sufficient documentation to prove the specific amounts"). Indeed, the Ninth Circuit has rejected similar arguments before, finding that "where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (rejecting argument that "multiple-game format and Nintendo-compatibility were the cartridges' selling point, not the use of the Nintendo trademark").

Defendants may point to a few cherry-picked emails as examples of consumers who were purportedly not confused. Yuga Labs doubts the credibility of these documents, but even taken at face value, they establish no more than a handful of distributors who were not confused. They do not show that the BAYC Marks were not part of the appeal of the RR/BAYC NFTs. Without any evidence to carry Defendants' burden, the Court can continue to presume that Defendants' profits were attributable to the infringing activity. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015).

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

This objection is unfounded. First, there is ample evidence showing that people reserved RR/BAYC NFTs to protest *against* Yuga and are not attributable to the infringing activity. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. As Mr. Ripps testified in his declaration: "I received **hundreds of letters** thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested) (emphasis added). At no point during trial did Yuga dispute this

fact. Yuga did not present any rebuttal evidence at trial and Yuga elected to not cross-examine Mr. Ripps on this issue.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga. Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344); Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10; Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these steps so that his artistic purpose would be clear. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Unsurprisingly, the evidence presented at trial showed that Yuga has not identified even a single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga, and Defendants and Mr. Hickman are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

Second, Defendants do not admit that they used Yuga's marks. Defendants used modified versions of the asserted mark—the logo states, "This Logo is Based on the SS Totenkopf; 18 Teeth" and the rrbay.com used "RR/BAYC" throughout. JTX-2085. Further, Yuga does not own the alleged Marks. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Ms. Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673. That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which allowed people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4.

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. There were

hundreds of unaffiliated NFT collections that use the asserted marks on OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted there are "literally thousands" of unaffiliated products that use the asserted marks. Trial Tr. [Muniz] 81:18-22; JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Further, Yuga does not own the asserted marks because NFTs are not eligible for trademark protection. The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). Misrepresentation of the origins of a ***communicative*** work is a dispute relegated to copyright law, not trademark. *Id.* at 33-35; *Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014). Here, the "goods" for which Yuga claims trademark rights are NFTs, which are comparable to certificates of authenticity/ownership and are not digital goods in themselves. Trial Tr. [Atalay] 127:9-16.

Third, Yuga is only entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). Yuga incorrectly argues that all sales are attributable to infringing activity. "If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol" then they cannot be disgorged as "[t]he plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942). This principle prevents disgorging profits from those that reserved RR/BAYC NFTs as a protest or for Mr. Ripps's reputation as a renowned artist. *See* Ripps Decl. ¶ 21 (Dkt. 346) (uncontested); JTX-2333.

Further, to support their assertion that every RR/BAYC NFT sold was attributable to infringement, Yuga cites to Ms. Kindler's conclusory statements. But Ms. Kindler's opinion does not include any apportionment to determine what profits were attributable to infringement. Trial Tr. [Kindler] 189:16-25.

Fourth, Yuga's statements regarding Defendants' use of the alleged marks are misleading. As those statements clearly show, Defendants created RR/BAYC to protest Yuga and you cannot criticize someone without saying who they are. This shows that profits were not derived from appeal of the asserted marks.

Fifth, disgorgement is not an available remedy here. An infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022). Disgorgement is not available because neither Defendant is a "conscious wrongdoer." *See* Ripps Decl. ¶¶ 144, 147, 158-176 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131, 145-155 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Disgorgement is also unavailable here because Yuga has not shown "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Legal remedies were available in this case. Yuga expressly asserted and offered expert testimony in support of legal remedies (including a claim for actual damages that its expert was able to quantify), which it then voluntarily relinquished. Dkt. 315-1 at 2; Trial Tr. [Kindler] 172:14-17, 173:1-8, 174:4-7, 175:17-19. Having abandoned available legal remedies, Yuga cannot obtain disgorgement. *See Hunting World Inc. v. Reboans, Inc.*, No. C 92-1519 (BAC), 1994 WL 763408, at *2-3 (N.D. Cal. Oct. 26, 1994).

Given these circumstances, if the Court finds that disgorgement is appropriate, the Court should appropriately apportion disgorgement so that it does

1 not include profits attributable to protest and criticism of Yuga. Notably, Yuga's
2 expert admits that more than 82% of total profits were on rrbayc.com (Kindler
3 Decl. 40 (Dkt. 338)), which included an artists' statement and disclaimer.
4   Finally, the $1,375,361.92 figure itself is an incorrect calculation of profits.
5 The evidence presented at trial showed that the RSVP contract also distributed
6 $93,135.62 in automated refunds. Ripps Decl. ¶¶ 174-175 (Dkt. 346)
7 (uncontested). This figure improperly includes in its profits calculation $93,135.62
8 in automated refunds executed through the RSVP reservation contract. Ripps Decl.
9 ¶¶ 174-175 (Dkt. 346) (uncontested). Also, Defendants incurred approximately
10 $15,100.00 in expenses associated with wages, a computer, and travel expenses.
11 Ripps Decl. ¶ 136 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 174-176 (Dkt. 344).
12 This figure fails to exclude those expenses from the profit calculation.
13   **Plaintiff's Reply:**
14   Defendants' response rehashes the same tired arguments without adequately
15 addressing Yuga Labs' arguments. Defendants' response should be rejected
16 because (1) they seek to relitigate issues already adjudicated by the Court (*supra*
17 ¶ 9), (2) the record shows that Defendants intended to confuse consumers (*supra*
18 ¶ 19), (3) Defendants' commercial infringement was not protected "art" (*supra*
19 ¶ 10), (4) Defendants intended to profit off of their infringement (*supra* ¶ 13), (5)
20 Defendants were well aware that their infringement would cause confusion (*supra*
21 ¶ 24), (6) the record shows ample actual confusion and likelihood of confusion
22 (*supra* ¶¶ 22, 32, 37), (7) Defendants' "disclaimers" did not dispel likelihood of
23 confusion (*supra* ¶ 20), (8) the majority of the sales of Defendants' infringing NFTs
24 did not occur on rrbayc.com (*supra* ¶¶ 76, 103), (9) Defendants did not take steps to
25 avoid confusion (*supra* ¶ 33), (10) Yuga Labs did not license Defendants'
26 infringement, and Mr. Hickman did not have (or convey to Defendants) the right to
27 infringe Yuga Labs' BAYC Marks (*supra* ¶¶ 9, 10, 115), (11) other alleged
28 infringers do not negate Defendants' infringement (*supra* ¶ 24), (12) Defendants'

unreliable communications with third-parties does not negate the Court's finding that there was a likelihood of confusion (*supra* ¶ 11); (13) Mr. Ripps' declaration is not credible (*supra* ¶¶ 3, 7); (14) Mr. Ripps' Declaration is not uncontested (*supra* ¶ 3); (16) the record shows that Yuga Labs in fact owns the BAYC Marks (*supra* ¶ 23); (17) disgorgement is available as a remedy (*supra* ¶ 132); (18) Defendants' additional arguments challenging disgorgement are wrong (*supra* ¶¶ 131, 132; *infra* ¶ 136); (19) Defendants stipulated to Yuga Labs' ownership of the BAYC Marks (*supra* ¶ 23); (20) Defendants used unmodified versions of the BAYC Marks (*supra* ¶ 40); and (21) Yuga Labs correctly calculated Defendants' profits (*supra* ¶ 100).

In addition, Defendants' response should be rejected because: (1) the Court has already found that NFTs are eligible for trademark protection (SJ Order (Dkt. 225) at 6-8; *see also* *Hermès International v. Rothschild*, 590 F. Supp. 3d 647, 655 (S.D.N.Y. 2022)) and (2) all profits were attributable to Defendants' infringement.

**Defendants' Profits Are All Attributable To Their Infringement:** Defendants' pervasive use of the BAYC Marks related to every sale of RR/BAYC NFTs. Defendants admit Yuga Labs' proposed finding of fact that "Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks". *See* Dkt. 418-1 ¶ 7(c). The smart contract underlying each of Defendants' infringing NFTs is immutably titled "Bored Ape Yacht Club" and given a contract symbol "BAYC," which is replicated on the Etherscan token tracker and anywhere that systems pull information directly from the blockchain. Kindler Decl. (Dkt. 338) ¶ 61; Atalay Decl. (Dkt. 337) ¶ 4; *see also* Solano Decl. (Dkt. 342) ¶¶ 46-47 (explaining that Defendants caused websites such as Etherscan to "prominently display[] the token as 'Bored Ape Yacht Club'").

Additionally, some of the NFTs that were offered for sale were reserved through the infringing rrbayc.com domain. Kindler Decl. (Dkt. 338) ¶ 61. More still, "other RR/BAYC NFTs were sold on marketplaces such as OpenSea and Foundation, which used the BAYC Marks." *Id.* (citing JTX-29; JTX-670).

Defendants also "used the BAYC Marks to sell and promote their own product." SJ Order (Dkt. 255) at 18. And finally, "[t]he NFTs held by Defendants or not yet minted derive their value from being part of the broader RR/BAYC NFT collection, the value of which has accrued through the sale and promotion of RR/BAYC NFTs that are already in the market." Kindler Decl. (Dkt. 338) ¶ 61. All profits Defendants derived from their RR/BAYC NFTs were ill-gotten from their willful infringement of Yuga Labs' BAYC Marks. Defendants are not allowed to retain the fruits of unauthorized trademark use. *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015).

Yuga Labs is entitled to disgorgement of profits that are derived "from the infringement." *Id.* at 1076. The RR/BAYC NFTs are infringing goods that Defendants created and placed into interstate commerce—the Court has already determined that these goods are likely to confuse consumers, SJ Order (Dkt. 225) at 10-13—and so profits derived from the sale of those goods resulted from Defendants' infringement. There is no requirement for Yuga Labs to go beyond that and prove that every dollar was attributable to instances of "actual confusion," which is not a required element of an infringement case. *See* SJ Order (Dkt. 225) at 10 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

Ms. Kindler's testimony to this effect is not "conclusory," as Defendants state. She explained all of these considerations in her trial declaration, assessing NFTs "reserved on Mr. Ripps' website, rrbayc.com"; "sold on marketplaces such as OpenSea and Foundation"; sold "without the use of either rrbayc.com or an NFT marketplace"; and "held by Defendants or not yet minted." Kindler Decl. (Dkt. 338) ¶ 61. Indeed, Ms. Kindler testified at trial when asked why she did not apportion less than all of Defendants' profits to their infringement. Trial Tr. at 189:4-10.

In sum, profits from the sales of Defendants' infringing NFTs, which each used the BAYC Marks, are necessarily attributable to Defendants' infringement.