**Defendants' Disputed Post Trial Conclusion of Law No. 136:**

As discussed above, none of the revenue on which Yuga bases its claim of profits is "attributable to the infringing activity" *Lindy Pen,* 982 F.2d at 1408, or to the "appeal of [Yuga's] symbol," *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942). Rather, there is no evidence that any purchaser of the RR/BAYC NFTs was confused about their origin or believed that they came from someone other than Mr. Ripps and Mr. Cahen. Ripps Decl. ¶¶ 196-207 (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224; Trial Tr. [Hickman] 219:13-19; Trial Tr. [Muniz] 85:3-7; Trial Tr. [Solano] 18:23-19:1; JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599.

**Plaintiff's Basis for Dispute:**

In a trademark infringement case, "[t]he plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. *See supra* ¶¶ 131, 135.

Finally, Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion. *See, e.g.*, *supra* ¶ 32 (collecting examples). Defendants were aware of the confusion. *See supra* ¶ 24. And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. *See supra* ¶ 32. There is a clear likelihood of confusion as well, given Defendants' use of the same marks and images, which the Court already determined. *Id.*

**Defendants' Response**:

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

This objection is unfounded. First, as Defendants have proven, there is ample evidence to support a finding that those who reserved RR/BAYC NFTs did so as a protest *against* Yuga and are not attributable to the infringing activity. *See*

Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. As Mr. Ripps testified in his declaration: "I received **hundreds of letters** thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested) (emphasis added). At no point during trial did Yuga dispute this fact. Yuga did not present any rebuttal evidence at trial and did not not cross-examine Mr. Ripps on this issue.

Further, as explain in Defendants' response in *supra* ¶ 9, there is ample evidence of no confusion given (1) Defendants took multiple steps to make clear that RR/BAYC was not related to Yuga, (2) trial evidence did not identify even a single instance of actual confusion, and (3) Defendants' acted on a good faith belief that projects like RR/BAYC were authorized. Moreover, Defendants used modified versions of the asserted mark—the logo states, "This Logo is Based on the SS Totenkopf; 18 Teeth" and the rrbay.com used "RR/BAYC" throughout. JTX-2085.

Second, as explained in Defendants' response to supra ¶ 23, Defendants acted in good faith because NFTs are not eligible for trademark protection.

Third, Yuga is only entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). Yuga incorrectly argues that any sale that uses a BAYC mark is attributable to the infringing activity. "If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol" then they cannot be disgorged as "[t]he plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge*

*Co.*, 316 U.S. 203, 206 (1942). This fundamental principle clearly prevents Yuga from receiving profits that were made for reasons beyond the appeal of its symbol, namely the profits attributable to those who reserved an RR/BAYC NFT as a protest against Yuga or to support Mr. Ripps and his renowned reputation as a conceptual artist. *See* Ripps Decl. ¶ 21 (Dkt. 346) (uncontested); JTX-2333. As discussed above, there is ample evidence shows that RR/BAYC profits were not attributable to infringement..

Further, Yuga cites to Ms. Kindler's conclusory statements to support their assertion that every RR/BAYC NFT sold was attributable to infringement. But Ms. Kindler's opinion does not include any apportionment to determine what profits were attributable to infringement. Trial Tr. [Kindler] 189:16-25. Notably, even Yuga's expert admits that more than 82% of total profits were on rrbayc.com (Kindler Decl. 40 (Dkt. 338)), which included an artists' statement and disclaimer.

Fourth, disgorgement is not an available remedy here. An infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022). Disgorgement is not available because neither Mr. Ripps nor Mr. Cahen is a "conscious wrongdoer." *See* Ripps Decl. ¶¶ 144, 147, 158-176 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131, 145-155 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Disgorgement is also unavailable here for the reasons provided in *supra* ¶ 107—because Yuga has not shown the absence of an adequate remedy at law.

Fifth, the evidence Yuga cites to show confusion is unsupported. the evidence Yuga cites to is not supportive of a finding that there was consumer confusion. For instance, Yuga relies on survey evidence provided by Ms. O'Laughlin. For the reasons provided in Defendants' response in *supra* ¶ 32, Ms.

O'Laughlin's surveys do not show any actual or likely consumer confusion because they (1) used an overly broad population that included people that don't even know what an NFT is, (2) used two contradictory surveys, (3) failed to account for strong priming effects based on the survey format, and (4) applied to market conditions that lasted only a matter of days. Further, this unreliable survey evidence does not show that anyone who actually reserved an RR/BAYC NFT was confused.

Yuga also relies on unsupportive evidence from Twitter. For example, Yuga cites to JTX-1029, which includes a tweet from GemBot, which is an automated software application and not evidence of a real person's confusion. *See* Cahen Decl. ¶¶ 226-227. This evidence provides no support for an argument that this finding of fact is inaccurate. *See also* JTX-1030; JTX-1032; JTX-1031, JTX-1034, JTX-1035.

Yuga also cites to private chats that the RR/BAYC creators used. These exhibits are unsupportive of a finding that there was actual confusion. JTX-109 includes a discussion where Mr. Lehman raises concerns about the design of ApeMarket and Mr. Cahen provides suggestion on how to make it clearer. Further, ApeMarket was never launched and could, therefore, never have caused any consumer confusion. Cahen Decl. ¶¶ 257-262; *see also* JTX-801.185.

Yuga cites to a screenshot, JTX-701, of a Bloomberg newscast. This exhibit does not support a finding of actual confusion. As Mr. Cahen testified, he is not aware of anyone who watched the Bloomberg program and reserved an RR/BAYC NFT believing it to be a Yuga collection. Cahen Decl. ¶ 252.

Additionally, Yuga cites to the Lehman Declaration, JTX-1, the accuracy and credibility of which are tainted by Mr. Lehman's motivations to settle his ongoing case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's case against Mr. Lehman, JTX-621, was entered after Mr. Lehman settled.

Yuga also cites to Mr. Ripps's deposition transcript where he discusses how the LooksRare platform that sold RR/BAYC NFTs looked like at one point in time. Ripps Depo. Designations (Dkt. 396) at 290:4-9. Again, this does nothing to

support a finding of confusion given the ability of any consumer to determine the provenance of an RR/BAYC NFT through Etherscan. Ripps Decl. ¶¶ 88-89 (Dkt. 346) (uncontested). Further, this does support a finding that anyone that reserved an RR/BAYC NFT was confused about its origin.

Yuga also relies on its witnesses' conclusory and unfounded statements about possible confusion. *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22. These statements do not show that all purchasers of RR/BAYC NFTs were confused.

Finally, the $1,375,361.92 figure itself is an incorrect calculation of the profits Mr. Ripps and Mr. Cahen have received from the RR/BAYC project. The evidence presented at trial showed that the RSVP contract also distributed $93,135.62 in automated refunds. Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested). This figure improperly includes in its profits calculation $93,135.62 in automated refunds executed through the RSVP reservation contract. Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested). Also, Mr. Ripps and Mr. Cahen incurred approximately $15,100.00 in miscellaneous expenses associated with wages, a computer, and travel expenses. Ripps Decl. ¶ 136 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 174-176 (Dkt. 344). This figure fails to exclude those expenses.

**Plaintiff's Reply:**

Defendants' response rehashes the same tired arguments without adequately addressing Yuga Labs' arguments. Defendants' response should be rejected because (1) they seek to relitigate issues already adjudicated by the Court (*see id.*), (2) the record shows that Defendants intended to confuse consumers (*see id.*), (3) Defendants' commercial infringement was not protected "art" (*supra* ¶ 10), (4) Defendants intended to profit off of their infringement (*see supra* ¶ 13), (5) Defendants were well aware that their infringement would cause confusion (*see supra* ¶¶ 24, 32), (6) the record shows ample actual confusion and likelihood of

confusion (*see supra* ¶¶ 3, 32), (7) Defendants' "disclaimers" did not dispel likelihood of confusion (*see supra* ¶ 9), (8) the majority of the sales of Defendants' infringing NFTs did not occur on rrbayc.com (*see supra* ¶ 76), (9) Defendants did not take steps to avoid confusion (*see supra* ¶ 9), (10) Yuga Labs did not license Defendants' infringement, and Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks (*see id.*), (11) other alleged infringers do not negate Defendants' infringement (*see supra* ¶ 24), (12) Defendants' unreliable communications with third-parties does not negate the Court's finding that there was a likelihood of confusion (*see supra* ¶ 11); (13) Mr. Ripps' declaration is not credible (*see supra* ¶¶ 3, 7); (14) Mr. Ripps' Declaration is not uncontested (*see supra* ¶ 3); (16) the record shows that Yuga Labs in fact owns the BAYC Marks (*see supra* ¶ 23); (17) disgorgement is available as a remedy (*see supra* ¶ 132); (18) Defendants' additional arguments challenging disgorgement are wrong (*see supra* ¶¶ 131, 132, 135, 136); (19) Ms. O'Laughlin's surveys are valid (*see supra* ¶ 32).

In addition, Defendants' response should be rejected because: (1) Defendants Stipulated to Yuga Labs' Ownership of the BAYC Marks; (2) the Court has already found that NFTs are eligible for trademark protection; (3) Defendants used unmodified versions of the BAYC Marks; (4) all RR/BAYC NFT sales were attributable to Defendants' infringing activity; and (5) Yuga Labs correctly calculated Defendants' profits. *See supra* ¶ 135.

Finally, while the disgorgement reductions Defendants advocate are unwarranted, the Court may increase the disgorgement award in cases such as this where profits alone are inadequate to compensate Yuga Labs for the egregious harm Defendants have caused. *See* 15 U.S.C. § 1117(a); *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015). Indeed, this is exactly the type of case where a profits award is inadequate, justifying an increase to compensate Yuga Labs for the egregious harm Defendants have caused; for

example, the disgorgement award should be adjusted to compensate Yuga Labs for loss of goodwill and business partnerships caused by Defendants' infringement. Muniz Decl. (Dkt. 340) ¶¶ 16-17; Solano Decl. (Dkt. 342) ¶ 27.  Likewise, the disgorgement award should be adjusted to account for the $10 million "impact to Yuga" through secondary sales Defendants caused.  JTX-801.376.