**Defendants' Disputed Post Trial Conclusion of Law No. 150:**

<u>This is not an exceptional case in Yuga's favor. *See supra* ¶¶ 118-127.</u>

<u>**Plaintiff's Basis for Dispute:**</u>

Each of the following bases is sufficient justification for a finding that this is an exceptional case, but taking the totality of these circumstances together, such a finding is undeniable. *See supra* ¶¶ 118-127. (1) Yuga Labs' substantive strength in its litigating position, as evidenced by the Court's Order on Summary Judgment, stands out from the bulk of trademark cases. *See* SJ Order at 22; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'"); *supra* ¶ 121. (2) Ignoring the clear strength of Yuga Labs' case, Defendants litigated in an "unreasonable manner" including a "failure to comply with court rules" and "persistent desire to re-litigate issues already decided." *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x. 674, 676 (9th Cir. 2020); *id.* (3) Defendants relentlessly advanced frivolous legal theories, even after they were rendered moot and irrelevant by multiple orders from the Court. *Id.* (4) Defendants refused reasonable settlement discussions. *Supra* ¶ 123. (5) Defendants used the litigation to "farm" for engagement on social media with the intent to further harm Yuga Labs. *Supra* ¶ 121. (6) Defendants' public disclosure of confidential material violated this Court's Protective Order (Dkt. 51) and intentionally harmed Yuga Labs. *Id.* (7) Defendants engaged in "antagonistic discovery conduct" that was "improperly motivated and sought to drag out or obfuscate proceedings," such as deposition conduct where the defendant's "preparation, recollection and candor appear to have been marginal at best." *Jackson v. Gaspar*, 2022 WL 2155975, at *5; *see supra* ¶ 121. (8) Defendants leveled heinous statements against Yuga Labs and its counsel during litigation. *See Te-Ta-Ma Truth Found.-Family of Uri, Inc. v.*

1 *World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004); *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, 894 (9th Cir. 2002).

Defendants should not be allowed to intentionally infringe on Yuga Labs' marks and then cause further harm to Yuga Labs and the Court by abusing the legal process that enforces these marks.  The Court should find this an exceptional case to compensate Yuga Labs for Defendants' conduct and deter future infringers from pursuing such unreasonable litigation tactics.  *SunEarth*, 839 F.3d at 1181.

**Defendants' Response:**

Defendants expressly reserve and reassert all responses made in the parties' Joint Statement (Dkt. 421).

Yuga is not entitled to any attorneys' fees or an exceptional case finding. The factual allegations underlying this are erroneous or misstated, Yuga has failed to carry its burden that it is entitled to an exceptional case finding.  *See Caiz v. Roberts*, No. 15-cv-09044-RSWL-AGRx, 2017 WL 830386 at *5 (C.D. Cal. 2017) (movant bears burden on exceptional case).   Further, it is rank speculation that Defendants will abuse the legal process used to enforce an injunction.

Even if Yuga's factual contentions are accepted by this Court, it has failed to carry its burden of proof.  An exceptional case is abnormal.  The Supreme Court has defined exceptional to mean, "uncommon," "rare," or "not ordinary." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  In determining whether a case is exceptional, courts consider all of the circumstances in making the equitable determination, including a defendant's intent.  *See Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).  As an equitable determination, the conduct of the party seeking equity must also be considered. *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2021).  Here, Defendants' litigation conduct was justified in light of a corporate opponent bent on making litigation as costly and unreasonable as possible.  Defendants were asked to sign away their constitutional rights.  Trial Tr. [Muniz] 94:5-13.

Yuga's legal contentions also fail. Yuga cites to *Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004) in a strained argument that critical Tweets entitle it to fees. *Te-Ta-Ma* involved a white supremacist making threats. *See id.* at 251. *Te-Ta-Ma* is factually not even close to the First Amendment protected criticism of a large company and cannot serve as the basis of fees. *See* JTX-2096; Ripps Decl. ¶¶ 150-52 (Dkt. 346) (uncontested).

The prevailing party is not, as Yuga suggests, entitled to attorneys' fees in trademark actions without a showing that the opposing party's claims were frivolous. *See Anhing Corp. v. Viet Phu, Inc.*, No 13-CV-04348-BRO-JCGx 2017 WL 11630841 at *4-5. Yuga ignores this exceedingly high burden, and Defendants claims were not objectively meritless. This case did not rise to the level of an "exceptional case" and therefore Yuga is not entitled to attorney's fees.

Yuga's contention about "discovery misconduct" is also unfounded. Yuga made a pattern and practice of seeking sanctions and losing. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. At trial, Mr. Ripps explained that he produced everything. Trial Tr. [Ripps] 269:10-270:18. Further, Yuga alleges that Defendants engaged in antagonistic depositions and cites to *Jackson v. Gaspar*, 2022 WL 2155975, at *5 but in that case the Court had already chastised the defendant for not participating in her depositions. The quoted language is a quote the court pulled from a docket filed earlier in the case. Here by contrast, the Court did not mention anything about Defendants' deposition conduct.

Lastly, Yuga's accusation that Defendants violated the protective order so they could intentionally harm Yuga is not well-taken. Yuga is aware that Defendants worked hard to fully redact their summary judgment response in good faith despite Yuga's exceedingly tardy request to seal. *See* Dkt. 176 (explaining situation). This was despite being given ample time to provide their redaction

requests. *See* 176-1 (explaining Yuga did not act for over one week). There is absolutely no evidence that Defendants did anything to intentionally harm Yuga. To the extent that Yuga was harmed, it was through inadvertence.

Yuga's litigation misconduct likewise precludes an award of costs under the principles of equity. For example, Yuga used this litigation as means to harass Mr. Ripps's 72-year-old father, Rodney Ripps. During this lawsuit, a Yuga employee threatened the life of Mr. Ripps's father. *See* Ripps Depo. 181:15-182:3. Yuga's counsel Yuga initially brushed off the issue, then later conceded that a threat did in fact occur. Dkt. 97 at 4. But Yuga's harassment of Mr. Ripps's father continued, including serving a facially invalid subpoena on him seeking to compel his trial attendance (notwithstanding his complete irrelevance to any issue in the case).

Yuga served more than sixteen subpoenas in this action, nearly all of them facially irrelevant and procuring no useful discovery, apparently to harass anyone that is in any way associated with the Defendants. Yuga targeted people on Twitter whose sole relevance was apparently having "liked" the RR/BAYC project, Defendants' personal accountants, and Mr. Ripps's gallerist. These parties repeatedly commented on Yuga's behavior, including for example Mr. Ripps's part-time, one-week general assistant (whom Yuga insisted on deposing) who called Yuga's conduct "quite predatory, honestly." Garner Depo. at 190:9-17.

Yuga also improperly tried to preclude relevant discovery by making a baseless apex witness argument in an *ex parte* motion for a protective order. The Court rejected Yuga's baseless arguments, finding Yuga's motion "deficient on the merits" because the co-founders were "the only people who have knowledge of the creation of the marks." Dkt. 77 at 2. The Court accordingly ordered that Yuga employees Wylie Aronow and Greg Solano appear for depositions on January 9 and 11 respectively (excusing Mr. Solano only if he had medical complications). *Id*. Yet, despite this Court's order, **neither witness appeared**. Yuga has never identified any medical reason why Mr. Solano could not attend. The Court was

JOINT STMT. RE DEFENDANTS' PROPOSED POST-TRIAL CONCLUSION OF LAW NO. 150   4   Case No. 2:22-cv-04355-JFW-JEM

clear that failing to appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did not show up. Dkt. 77 at *2. Yuga has not done so.

Yuga also flouted this Court's Protective Order by improperly designating the entirety of third-party Ryan Hickman's deposition testimony as HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY to hide Mr. Hickman's testimony from the public. This deposition involved no Yuga confidential information; instead, it was the testimony of a Black Jewish third party that included discussion of racism and antisemitism in Yuga's branding. *See* Dkt. 123-2. Defendants were forced to bring a motion to address Yuga's misuse of the Protective Order, which the Court granted ordering complete de-designation of the transcript and finding that Yuga was wrong to "**hold the transcript hostage**." Dkt. 133 at *2 (emphasis added).

Yuga also baselessly refused to produce materials relating to third-party Thomas Lehman's settlement-procured declaration to run the clock on the discovery schedule. Defendants filed a motion to compel once Yuga disclosed the declaration and sought expedited review of that motion to allow time for its use in a deposition of Mr. Lehman. The Court declined to consider the motion on an expedited basis, stating that Defendants could instead depose Mr. Lehman in "the last week of March before the April 1, 2023 discovery cut-off date." Dkt. 119 at 2. The Court ultimately granted Defendants' motion, holding that Yuga waived any claim to confidentiality due to its "unfettered use of Lehman's declaration[.]" Dkt. 159 at 2. After Yuga belatedly made its court-ordered production, Defendants took Mr. Lehman's deposition in the final week of discovery as suggested by the Court. But because of Yuga's delay, the deposition testimony—which raised disputes of fact regarding Defendants' infringement and Yuga's credibility—was unavailable for consideration in opposition to Yuga's motion for summary judgment. *See* Dkt. 215 at 2.

Throughout the course of this litigation, Yuga also made repeated baseless threats of fees and sanctions. In total, Yuga has unsuccessfully asked the Court to impose sanctions *six times*. See Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. Every request was denied. This kind of scorched-earth litigation strategy is improper in any context, but particularly where Defendants are two individuals attempting to respond to claims brought by an uncompromising multi-billion-dollar corporate plaintiff.

**Plaintiff's Reply:**

As demonstrated above, Defendants engaged in egregious litigation misconduct, warranting a finding of exceptional case in Yuga Labs' favor. *See supra* ¶ 121. Additionally, Defendants' response should be rejected because (1) Defendants' infringement is ongoing; (2) *Te-Ta-Ma* is similar to this case; (3) Defendants engaged in discovery misconduct; and (4) Yuga Labs has not engaged in litigation misconduct.

**Defendants' Infringement Is Ongoing:** It is more than "rank speculation" that Defendants will abuse the legal process used to enforce an injunction; it is a near certainty. Their conduct in this case demonstrates this:

- Defendants needlessly relitigated issues in this case, and to this day refuse to acknowledge the authority of the Court's SJ Order. *See supra* ¶ 121.
- They have ignored Court orders in the past. Even after the Court's Order finding that Defendants infringed on the BAYC Marks and that Yuga Labs was entitled to an injunction, Defendants continued to "purposely infringe" on Yuga Labs' marks. *TE-TA-MA*, 392 F.3d at 264; Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.
- Despite the Court's Order finding that Yuga Labs is entitled to injunctive relief, Defendants refuse to submit a proposed injunction for consideration.
- They are already trying to slip out of the injunction, claiming Mr. Cahen's promotion of RR/BAYC NFT sales is "reporting news." *See supra* ¶ 9.

Yuga Labs must be given the instrumentalities of their infringement so that Defendants cannot ignore the injunction and/or continue to infringe and claim it is criticism, and Yuga Labs could potentially offset future irreparable harm by changing the confusing information shown on secondary marketplaces. *See* Ripps Depo. Designations (Dkt. 396) 289:7-11; Ripps Depo. Designations (Dkt. 396) at 81:3-81:14; *id.* at 81:22-82:7.

**TE-TA-MA Is Instructive:** Like *Te-Ta-Ma*, this case involves, conduct that was "egregious and beyond the pale of acceptable litigation conduct." *See Te-Ta-Ma*, 392 F.3d at 264. Defendants "purposely orchestrated a campaign of harassment throughout the litigation below which targeted [Yuga Labs] and its attorneys." *Id*. Much of this harassment consisted of "explicit threats of violence" (*id.*), such as when they threatened Yuga Labs with images portraying Mr. Cahen next to a grave marked "Yuga Labs," Mr. Ripps and Mr. Cahen holding a gun and a knife up to Yuga Labs, and Mr. Cahen hoisting the severed head of one of the founders' apes over his head. Dkt. 149-50; *supra* ¶ 29. They also accused Yuga Labs and its counsel of supporting "racism, antisemitism, beastiality, pedophilia, and using cartoons to market drugs to young children." Dkt. 149-51. And, like the defendant in *Te-Ta-Ma*, Defendants in effect called one of Yuga Labs' founders a race traitor, accusing him, a man of Jewish ancestry, of being a Nazi. *Te-Ta-Ma*, 392 F.3d at 251. Moreover, they made these accusations at trial despite their promise not to make such accusations. *See, e.g.*, Dkt. 320-1 ¶ 6(A); Dkt. 314; Dkt. 334 at 60:13-14, 61:9-11. And Defendants made these accusations to promote their RR/BAYC NFTs and Ape Market. Notably, this is the same marketplace where they planned to sell Yuga Labs NFTs, which they incredibly claimed were offensive. *See, e.g.*, JTX-696; JTX-806-JTX-809.

**Defendants Engaged In Discovery Misconduct:** Defendants' argument that Yuga Labs made a "pattern and practice of sanctions" ignores the fact that Yuga Labs sought sanctions for discovery motions because it *kept winning* discovery

motions. *See supra* ¶ 125. Yuga Labs was forced to file these motions because Defendants withheld crucial evidence during discovery. Indeed, Mr. Ripps' statement at trial that he "produced everything" is false. Trial Tr. 269:10-270:18. Defendants have no excuse for their repeated improper withholding of material evidence and repeated lies under oath. *See supra* ¶ 18. If Mr. Ripps lied under oath before, his word at trial on the very same subject cannot be trusted.

**Yuga Labs Has Not Engaged In Litigation Misconduct:** Defendants' refusal to take any responsibility for their conduct merely highlights how their tactics have increased the time and expense of this litigation. Yuga Labs' subpoenas in this action were targeted at relevant parties that Yuga Labs reasonably believed had information relevant to the litigation—including parties' like Rodney Ripps or Mr. Ripps' gallerist—that Defendants designated on their initial disclosures as relevant witnesses. Yuga Labs never attempted to preclude depositions of its own witnesses. Yuga Labs asked Defendants to complete a Rule 30(b)(6) deposition before deciding whether it was necessary to depose Mr. Solano and Mr. Aronow, and it sought a protective order when Defendants refused. Dkt. 75. The Court disagreed, and Yuga Labs produced both witnesses for deposition. Yuga Labs was also forced by Defendants' discovery misconduct to file numerous discovery motions, which were overwhelmingly successful, justifying its requests for sanctions. For example, Yuga Labs was forced to obtain repeated sworn declarations from Defendants confirming their compliance with discovery obligations, because Defendants were continually caught concealing additional documents. *See, e.g.,* Dkt. 79 at 2 (Jan. 10, 2023 Order requiring Ripps to verify that he has produced "all relevant non-privileged documents"). None of this is litigation misconduct and should not be weighed against Defendants' misconduct.