Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Finding of Fact No. 1, lines 1:21-24** <br><br> Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM                                    DEFENDANTS' OBJECTIONS

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 1, lines 1:21-24:**

Yuga Labs owns and uses trademarks associated with its BAYC NFT collection, including BORED APE YACHT CLUB, BAYC, BORED APE, the BAYC Logo, the BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo (collectively, the "BAYC Marks"). SJ Order at 6-10; Dkt. 342 ¶3.

**Defendants' Basis for Dispute:**

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Evidence at trial showed that Yuga does not own the marks BORED APE YACHT CLUB, BAYC, BORED APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and the Ape Skull Logo. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt 344); Hickman Decl. ¶¶ 25-26 (Dkt 345); JTX 2672; JTX 2673.[1] That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs. We can agree on that; right? A. Yes. That is covered in the terms.").

As a result, at the time of the RR/BAYC project, there were more than 9,000

---

[1] Citations to paragraphs within witness declarations shall exclude content that is subject to objections sustained at trial. See Dkts. 392, 406.

1  other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346)
2  (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. There were
3  hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht
4  Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz]
5  78:7-21; [Muniz] 80:3-13. And, as Yuga's CEO admitted, there are "literally
6  thousands" of products that use Yuga trademarks without sponsorship or affiliation
7  with Yuga. Trial Tr. [Muniz] 81:18-22. For example, there are published notebooks
8  with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal
9  brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that
10 use Yuga's trademarks. *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

11       Further, Yuga does not own the asserted marks because NFTs are not eligible
12 for trademark protection. The Supreme Court has held that trademarks are limited to
13 "tangible goods that are offered for sale, and not the author of any idea, concept, or
14 communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox
15 Film Corp.*, 539 U.S. 23, 37 (2003) . Misrepresentation of the origins of a
16 ***communicative*** work is a dispute relegated to the confines of copyright law, not
17 trademark. *Id.* at 33-35; *see also Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-
18 SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014) (*Dastar* bars trademark claims
19 based on origin of hologram, as it is "likened to a cartoon animation"). Here, the
20 "goods" for which Yuga claims trademark rights are NFTs, which are comparable to
21 certificates of authenticity/ownership and are not digital goods in themselves. Trial
22 Tr. [Atalay] 127:9-16.

23       Yuga also fails to identify adequate evidentiary support for its proposed finding.
24 First, Yuga incorrectly relies on the law of the case doctrine by citing to this Court's
25 summary judgment order. The "law of the case doctrine does not apply to pretrial
26 rulings ***such as motions for summary judgment***." *Shouse v. Ljunggren*, 792 F.2d
27 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076,
28 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't

1  bind district judges for the remainder of the case.  Given the nature of such motions, it
2  could not be otherwise.").  For example, in *Sienze v Kutz*, the Court held that although
3  ***aspects*** of an issue were decided at summary judgment for one purpose, the summary
4  judgment order did resolve the issue generally or as to other topics.  See No. 1:17-CV-
5  0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that
6  evidence of initial police contact was relevant as background, but not to an already
7  decided issue that initial contact was not excessive force).  This case is just like
8  *Sienze*: the summary judgment ruling on Yuga's ownership for the asserted marks
9  applies to only the issue of infringement and is not adequate support for Yuga's lack
10 of ownership as applied to availability of disgorgement as a remedy (including
11 Defendants' mental state as applied to disgorgement), apportionment, and an
12 exceptional case analysis.
13      Second, Yuga relies on the Declaration of Greg Solano to argue that Yuga owns
14 the asserted marks.  But Mr. Solano's testimony was not credible given the many false
15 and misleading statements contained in his declaration, as well as his repeated
16 impeachment at trial.  For example, Mr. Solano was also forced to concede on cross
17 examination that his sworn declaration included a false statement claiming that
18 "Defendants continue to receive royalties or creator fees from sales on secondary
19 marketplaces."  Trial Tr. [Solano] 48:15-49:4. Mr. Solano also relied on the phrase
20 "business venture" in Mr. Lehman's declaration, without having considered that the
21 phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman
22 would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also
23 relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew
24 he could not settle his case without executing a declaration concerning matters of
25 Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his
26 family at the time he signed his declaration, because Yuga's lawsuit against him
27 would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr.
28 [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated

1  impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't
2  even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A
3  Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a
4  deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same
5  oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up
6  on the screen -- at page 152, starting at line 13 'QUESTION:  Was the Bored Ape V3
7  created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER:  I
8  don't know.' Was that your testimony at your deposition? A Yes." ); *id*. at 34:9-19
9  ("[Q] Do you know whether Ape Market exists? A We have the code for Ape Market
10 from Tom Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through
11 6. 'QUESTION:  Do you know whether Ape Market exists? 'ANSWER:  I don't
12 recall.' Were you asked that question, and did you give that answer? A Yes.").

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.

Defendants' objection should be rejected because, as discussed *infra*, (1) Defendants have stipulated to this fact (*infra* ¶ 3), (2) the objection seeks to relitigate issues already adjudicated by the Court (*infra* ¶ 10), and (3) Defendants fail to impeach Mr. Solano's accurate testimony (*infra* ¶ 1 lines 1:24-2:1).  Additionally, Defendants' objection should be rejected because (1) the record shows that Yuga Labs in fact owns the BAYC Marks, (2) Yuga Labs did not grant Defendants a license to infringe, and (3) other alleged infringers do not negate Defendants' infringement.

**Yuga Labs Owns The BAYC Marks:**  The Court has already decided that Yuga Labs owns its BAYC Marks. *See* Order on Motion for Summary Judgment (Dkt. 225) ("SJ Order") at 6.  "[A]n unregistered trademark can be enforced against would-be infringers . . . ." *Matal v. Tam*, 582 U.S. 218, 225 (2017).  "It is axiomatic in trademark law that the standard test of ownership is priority of use." *Halicki Films*

1  *v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008).  Yuga Labs started using the BAYC Marks long before Defendants began their infringement.  *Compare* Dkt. 193-2 ¶¶4, 6 *with* ¶24.  Since Yuga Labs' first use in April 2021, the BAYC brand has been the cornerstone of its business.  *Id.* ¶¶2, 8-14; *see also* Muniz Decl. (Dkt. 340) at ¶ 7 ("The BAYC brand is the tentpole brand for Yuga Labs. . . .  Yuga Labs' marketing of the BAYC brand includes, among other things, its operation of social media accounts, hosting community events, and its brand collaboration and high-profile partnerships"); Solano Decl. (Dkt. 342) at ¶ 16 ("Part of the reason Yuga Labs was able to reach such a large audience is due to significant effort, time and money we spent promoting the BAYC brand.").  Indeed, Defendants admit that the BAYC Marks identify Yuga Labs.  *Id.* ¶70.

**Yuga Labs Did Not Give Defendants A License To Infringe:**  To the extent that Defendants seek to rehash their argument that the BAYC Terms gave BAYC NFT holders any and all trademark rights, the Court already found on summary judgment that the BAYC Marks are valid trademarks and that Yuga Labs granted BAYC holders a valid copyright license, not a trademark license.  SJ Order (Dkt. 225) at 9-10 ("Yuga has not granted BAYC NFT holders a trademark license.").  Defendants offer no credible evidence to support their claim that the Court should reach a different conclusion at trial.  The BAYC Terms give BAYC NFT holders a copyright license to use their respective Bored Ape image for personal or commercial use, not the marks within the image.  *See* Trial Tr. at 70:1-4, 70:18-23; Solano Decl. ¶ 25.  Yuga Labs explains this not just in the Terms, but in FAQs, and in Discord.  Trial Tr. at 70:18-23.

Additionally, the Court has already held that NFTs are goods, as consumers understand them, that are subject to trademark protection under the Lanham Act.  SJ Order (Dkt. 225) at 6-8; *see also Hermès International v. Rothschild*, 590 F. Supp. 3d 647, 655 (S.D.N.Y. 2022).  Defendants offer no reason for the Court to reconsider or vacate this portion of its prior ruling.

**Other Alleged Infringers Do Not Negate Defendants' Own Infringement:**

Defendants' references to unknown, and alleged, third-party infringers, in an attempt to excuse their intentional infringement of Yuga Labs' trademarks is unavailing. Any alleged third-party use of the BAYC Marks, or similar marks, is immaterial and irrelevant. As this Court has already found, "despite Defendants' attempt to argue abandonment through third party use or failure to police, these arguments are unquestionably meritless." Dkt. No. 225 at 10 (quoting *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865, 2017 WL 4227000, *12 (S.D. Cal. Sept. 22, 2017)). Indeed, the Ninth Circuit, and courts within the Ninth Circuit, have made clear that third-party use of a mark is irrelevant in a suit against a particular infringer. *See, e.g., Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990) (affirming district court's exclusion of evidence of third-party use of plaintiff's mark because "[e]vidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law"); *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1130 (C.D. Cal. 2001) (rejecting extensive third-party use of the allegedly infringed mark as irrelevant and weak in any event); *Elliott v. Google, Inc.*, 860 F.3d 1151, 1159, 1162 (9th Cir. 2017) (a "'sheer quantity' of irrelevant evidence," which is "largely inapposite to the relevant inquiry," is meaningless); *see also F.T.C. v. Neovi, Inc.*, No. 06-CV-1952, 2011 WL 1465590, at *3 (S.D. Cal. Apr. 18, 2011) (precluding Defendants from "introducing into evidence . . . 'thousands of third-party webpages'" because they were irrelevant and thus inadmissible under FRE 401 and 402). Even so, Defendants have failed to demonstrate actual use of these marks in commerce. *See, e.g., Icon Enters. Int'l, Inc. v. Am. Prod. Co.*, No. 04-cv-1240, 2004 WL 5644805, at *30 (C.D. Cal. Oct. 7, 2004) (excluding evidence of third-party marks in an advertisement because "evidence of third-party use is not admissible unless the proponent can provide evidence that the trademarks were *actually used* by third parties, that they were well promoted or that they were recognized by consumers.") (cleaned up)

(emphasis added); *BuzzBallz, LLC v. Buzzbox Beverages, Inc.*, No. ED14CV01725, 2016 WL 7496769, at *3 (excluding evidence of third-party marks because defendants "presented no evidence showing *actual use*.") (emphasis added).

Even if third party infringement were material or relevant (it is not), none of these "projects" caused as much confusion in the marketplace as Defendants' sale of RR/BAYC NFTs. Solano Decl. (Dkt. 342) ¶ 60; Trial Tr. at 61:12-23 ("We've never had someone that we've done a takedown for, then respond and say, oh, here it is on some other website. Come get it here. And also, by the way, we are going to rip off Yuga's other site next. And we're going – you know, I've made a million dollars with this scam, and no one can stop me. We've never had another collection get shown up on Bloomberg News with people confused thinking it's us. I've never had phone calls from–you know, concerned – with my CEO telling me that she's getting calls from investors that are saying you need to do something about this. So, yes, this is especially egregious."); *see also* Trial Tr. 96:19-97:8. Moreover, Yuga Labs took significant steps to protect the BAYC brand and take down infringing content. *See* Muniz Decl. (Dkt. 340) ¶ 8, 19; Trial Tr. at 60:21-23 ("We've done takedowns of an enormous amount of infringing collections. I think we spent something like $600,000 a year doing this."), 82:1-3 ("So, you know, we have a pretty robust process for takedowns. And we spend, at least in my tenure as CEO, a million dollars a year doing it."); *see also* SJ Order (Dkt. 225) at 10 ("Indeed, the filing of this action is strong evidence that Yuga enforces its trademark rights in the BAYC Marks against infringing third-party users.").

**Defendants' Reply**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Defendants reiterate all points made in their objection. To the extent Yuga is relying on a Law of the Case argument, it cannot because it does not apply to Summary Judgment or issues decided for only one purpose. *Shouse v. Ljunggren*, 792

1  F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014); *Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019). Defendants have never stipulated to Yuga's Ownership of the BAYC Marks.  To the extent it is necessary, Defendants bring this objection to preserve for appeal.  Yuga also does not address Defendants' objection

The evidence at trial shows Yuga does not own the BAYC marks because Yuga has either given away its rights in the marks and NFTs are not eligible for trademark protection. Yuga's CEO Nicole Muniz publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt 344); Hickman Decl. ¶¶ 25-26 (Dkt 345); JTX 2672; JTX 2673.  That transfer of rights was made, through the BAYC Terms & Conditions, which were drafted with the intent to allow people to commercialize their NFTs.  Trial Tr. [Solano] 25:1-4.

At the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea.  Trial Tr. [Muniz] 77:19-23; 78:7-21; 80:3-13.  Yuga's CEO admitted, there are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga.  *Id.* at 81:18-22; JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Yuga does not own the asserted marks because NFTs are ineligible for trademark protection because they are intangible non-goods.  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) ;*Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014). Whether Yuga had first use does not impact its surrender of IP or inability to get trademark protection for NFTs.

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ *Louis W. Tompros* |
| 5 | | Louis W. Tompros (*pro hac vice*) louis.tompros@wilmerhale.com |
| | | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 6 | | 60 State Street |
| 7 | | Boston, MA 02109 Telephone: (617) 526-6000 |
| 8 | | Fax: (617) 526-5000 |
| 9 | | Attorneys for Defendants |
| 10 | | RYDER RIPPS and JEREMY CAHEN |
| 11 | | |
| 12 | | |
| 13 | Dated: October 5, 2023 | FENWICK & WEST LLP |
| 14 | | |
| 15 | | By: /s/ *Eric Ball* |
| 16 | | Eric Ball eball@fenwick.com |
| 17 | | **FENWICK & WEST LLP** 801 California Street |
| 18 | | Mountain View, CA  94041 Telephone: (650) 988-8500 |
| 19 | | Fax: (650) 938-5200 |
| 20 | | Attorneys for Plaintiff |
| 21 | | YUGA LABS, INC. |

# ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

> By: /s/ *Louis W. Tompros*
> Louis W. Tompros (*pro hac vice*)
> louis.tompros@wilmerhale.com
> **WILMER CUTLER PICKERING HALE AND DORR LLP**
> 60 State Street
> Boston, MA 02109
> Telephone: (617) 526-6000
> Fax: (617) 526-5000