Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                    Plaintiff,<br><br>     v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                    Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 1, 1:24-2:1**<br><br>Judge: Hon. John F. Walter |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:   310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

**Plaintiff's Disputed Post Trial Finding of Fact No. 1, lines 1:24-2:1:**

Yuga Labs has used the BAYC Marks for advertising, marketing, and promoting its products and services nationwide through multiple platforms, including the BAYC website, NFT marketplaces, and social media. SJ Order at 2; Dkt. 342 ¶¶4-33; JTX-607; JTX-608; JTX-1302; JTX-1306.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial failed to show that Yuga has used in commerce the marks in connection with NFTs. "Use in commerce" requires that a mark be "placed in any manner on the goods or their containers or displays associated therewith." *Social Techs. LLC v. Apple Inc.*, 4 F.4th 811, 817 (9th Cir. 2021). The cited portion of Greg Solano's Declaration does not contain any testimony relating to placing the asserted marks on any BAYC NFTs, BAYC NFT containers (which do not exist), or displays associated with BAYC NFTs. The cited exhibits also fail to show "use in commerce." JTX-607 is a webpage that generally discusses Yuga and does not contain any BAYC NFTs or displays associated with any BAYC NFT. JTX-608 is the webpage for the Bored Ape Yacht Club, which also does not contain BAYC NFTs, has not been used to sell BAYC NFTs since April 30, 2021, and does not show any displays associated with BAYC NFTs that contain any of the asserted marks within the display. JTX-1302 is the Bored Ape Yacht Club Twitter page and JTX-1306 is the Yuga Twitter page, both of which do not contain BAYC NFTs or any display associated with BAYC NFTs that contain the asserted marks within the display.

The evidence at trial also failed to establish "that such use has continued to the present," another condition of "use in commerce." *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005); *see Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d

1    814, 820-21 (9th Cir. 1996) .  If the marks were ever used for NFTs, the usage was not

2    "maintained without interruption" because Yuga has not sold a single BAYC NFT

3    since May 1, 2021.  Berger Decl. ¶ 38; *see Casual Corner Assocs., Inc. v. Casual*

4    *Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974) .

5         Yuga's activities associated with BAYC NFTs also cannot form the basis for a

6    "use in commerce" claim because the sale of BAYC NFTs were illegal under 17

7    U.S.C. § 77e and thus not a lawful use in commerce.  *See Kiva Health Brands v. Kiva*

8    *Brands, Inc.*, 402 F. Supp. 3d 877, 888 (N.D. Cal. 2019) ; *S. Cal. Darts Ass'n v.*

9    *Saffina*, 762 F.3d 921, 931 (9th Cir. 2014) .  BAYC NFTs were unregistered

10   investment vehicles, with a roadmap (created by Yuga) promising purchasers an

11   expectation of future profits by (1) stating that Yuga was "in this for the long haul"

12   and (2) identifying future benchmarks such liquidity polls that would allow BAYC

13   NFT holders to treat their NFTs as investments.  JTX-608.  Yuga also promised

14   purchasers an expectation of future profits by promoting its open-source IP business

15   model, which attracted investors such as Samsung.  *See* Hickman Decl. ¶¶ 23-28, 34-

16   39 (Dkt.345).  These activities make clear that BAYC NFTs, like other collections

17   launched around the same time, were illegal unregistered securities.  *See, e.g., Friel v.*

18   *Dapper Labs, Inc.* -- F. Supp. 3d --, 2023 WL 2162747 at *22 (S.D.N.Y. 2023) .  This

19   is precisely why there are wide reports of an SEC investigation and a securities fraud

20   class action against Yuga.  Cahen Decl. ¶ 75 (Dkt. 344).

21        Yuga also incorrectly relies on the law of the case doctrine by citing to this

22   Court's summary judgment order.  The "law of the case doctrine does not apply to

23   pretrial rulings ***such as motions for summary judgment***."  *Shouse v. Ljunggren*, 792

24   F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d

25   1076, 1088 (9th Cir. 2014).

26        Yuga also relies on the unreliable Declaration of Greg Solano to argue that

27   Yuga owns the asserted marks.  Greg Solano's testimony is not credible given the

28   many false and misleading statements contained in his declaration, as well as his

repeated impeachment at trial. For example, Mr. Solano was also forced to concede on cross examination that his sworn declaration included a false statement claiming that "Defendants continue to receive royalties or creator fees from sales on secondary marketplaces." Trial Tr. [Solano] 48:15-49:4; *see also* Trial Tr. [Solano] 40:3-14; Trial Tr. [Solano] 38:14-16; Trial Tr. [Solano] 38:17-19. Mr. Solano also lacks credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11; *id*. at 34:9-19.

<u>**Plaintiff's Response:**</u>

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.

Defendants' objection should be rejected because, as discussed *infra* ¶ 10, (1) the objection seeks to relitigate issues already adjudicated by the Court. Additionally, Defendants' objection should be rejected because (1) the record shows that Yuga Labs uses the BAYC Marks in commerce, and (2) Defendants failed to impeach Mr. Solano's accurate testimony.

**Yuga Labs Uses Its Marks In Commerce:** The Court has already determined that Yuga Labs used its marks in commerce. SJ Order (Dkt. 225) at 8. Defendants have admitted that Yuga Labs has proven all of the elements of its false designation of origin claim. Dkt. 320-1 at 13. Indeed, Yuga Labs has marketed its products in the exact same marketplaces as Defendants' infringing products. SJ Order (Dkt. 225) at 12 ("Yuga and Defendants promoted and sold their NFTs through the same online NFT marketplaces – OpenSea and x2y2.").

Although not at issue at trial, in her trial declaration, Ms. Muniz confirmed the Court's finding. Muniz Decl. (Dkt. 340) at ¶ 7 ("The BAYC brand is the tentpole brand for Yuga Labs."); *id.* ("Yuga Labs' marketing of the BAYC brand includes, among other things, its operation of social media accounts, hosting community events, and its brand collaboration and high-profile partnerships"). Mr. Solano also testified

to Yuga Labs' use of the BAYC brand in commerce.  Solano Decl. (Dkt. 342) at ¶ 16 ("Part of the reason Yuga Labs was able to reach such a large audience is due to significant effort, time and money we spent promoting the BAYC brand.").  Even a mere cursory scan of the Bored Ape Yacht Club Twitter page shows countless instances of Yuga Labs marketing and promotion using the BAYC Marks and brand. *See* JTX-1233.

Finally, Defendants have already stipulated that Yuga Labs owns the BAYC Marks and the Court has already found that Yuga Labs' owns the BAYC Marks.  SJ Order (Dkt. 225) at 6; Dkt. 320-1 at 2-3.  The Court has also rejected Defendants' unclean hands affirmative defense.  SJ Order (Dkt. 225) at 8 (finding that Defendants' allegations regarding securities violations did not relate to the trademark dispute between the parties.).

**Mr. Solano Is A Credible Witness:**  Mr. Solano's testimony is credible.  The vast majority of Mr. Solano's testimony detailing the harm to Yuga Labs because of Defendants' intentional and repeated use of the BAYC Marks is undisputed and went unchallenged by Defendants.  Indeed, many of Defendants' objections to Mr. Solano's trial declaration based on a purported lack of personal knowledge were overruled at trial, "including JTX-1," Mr. Lehman's declaration.  Trial Tr. 12:10-12.  This is because Mr. Solano was referring to Defendants' own words promoting their infringement.

Nevertheless, the arguments Defendants raise are themselves meritless.  First, Mr. Solano's testimony that Defendants collected royalties off secondary sales was supported by Defendants' own testimony, Ms. Kindler's testimony, and the possibility of further royalties on LooksRare or other new marketplaces if Defendants continued to control the RR/BAYC smart contract.  Ripps Depo. Designations (Dkt. 396) at 89:19-21; Cahen Depo. Designations (Dkt. 395) at 209:2-3; Kindler Decl. (Dkt. 338) at ¶ 23.  Mr. Solano testified truthfully based on the information available to him at the time of his declaration and trial.

1    Apparently Defendants' argument is that Mr. Solano's testimony is correct that

2  Defendants continued to profit from their royalties after February until at least May.

3  See, e.g., Defendants' objection to Plaintiff's Finding of Fact No. 2 in which

4  Defendants admit to earning royalties through at least May 2023 (one year after they

5  began minting the infringing NFTs).  And Mr. Solano's testimony is correct that

6  Defendants can continue to profit from royalties in the future if they hold the

7  RR/BAYC smart contract.  But somehow Mr. Solano's testimony should be

8  discredited because Defendants claim they were not profiting off royalties in June or

9  July of 2023.  Even if Defendants' claim is true, it is immaterial.  Defendants' own

10  admissions highlight their actual and ongoing potential to profit from royalties.

11    Second, Mr. Solano's testimony that Defendants' activities constitute a business

12  venture is amply supported by Defendants' own actions that Mr. Solano personally

13  observed.  It does not matter that Mr. Lehman agreed to call it a business venture.

14  But, he did.  Defendants' attempts to discredit Mr. Solano's reliance on Mr. Lehman's

15  declaration by arguing that Mr. Solano did so without reading his entire deposition are

16  without merit.  Mr. Lehman testified to the accuracy of his declaration, regardless of

17  how he may have felt about the process of being sued for his role in Defendants'

18  scam.  Lehman Depo. Designations (Dkt. 404-2) at 124:5-9.  The veracity of Mr.

19  Lehman's declaration was also corroborated by the consent judgment entered against

20  him.  JTX-621.  The Lehman declaration stands on its own, and Mr. Solano had

21  clearly reviewed the declaration based upon his testimony about its contents in his

22  own trial declaration.  See, e.g., Solano Decl. (Dkt. 342) at ¶ 71 ("In his declaration

23  under oath, Defendants' co-conspirator Mr. Lehman described Mr. Ripps'

24  commercialization and sale of RR/BAYC NFTs as a 'business venture' that 'was

25  expected to make money by selling RR/BAYC NFTs and by potentially generating

26  transaction fees from the sale of NFTs on ApeMarket.'").

27    Third, Defendants fail to impeach Mr. Solano's statement at Trial Tr. 32:19-

28  33:11 regarding Bored Ape V3, because the "Bored Ape V3" referenced in Mr.

1  Solano's deposition is different than the "Bored Ape Yacht Club V3" at issue in the

2  cited line of trial testimony.  Mr. Solano cannot be impeached by reference to

3  deposition testimony covering an entirely different topic.  To be clear, the quoted

4  deposition testimony relates to a Twitter page titled "@BoredApeV3," which Mr.

5  Ripps claims he does not control, and which was not at issue at trial.  Solano Depo.

6  (Dkt. 271) at 151:2-152:24.  But, the cited trial testimony, discusses a section of Mr.

7  Solano's declaration relating to Mr. Ripps naming his NFT collection "Bored Ape

8  Yacht Club V3."  *Cf.* Trial Tr. at 31:6-33:11.

9     Finally, Defendants fail to impeach Mr. Solano's statement at Trial Tr. 34:9-19

10  regarding ApeMarket.com.  As he explained, Mr. Solano "review[ed] [] the webpages

11  generated by running the source code for the planned ApeMarket.com website,"

12  informing his response that Yuga Labs obtained the code from Mr. Lehman.  Solano

13  Decl. ¶ 49.  Mr. Solano cited the referenced source code in connection with this topic

14  and based his knowledge on these exhibits.  *Id.*; JTX-806–JTX-809.  Those webpages

15  were not generated from the source code produced by Mr. Lehman until ***after*** Mr.

16  Solano's deposition.  Mr. Solano gained knowledge of these pages, and he was able to

17  truthfully testify at trial as to that knowledge.  Defendants did not ask Mr. Solano

18  where or how he came to his knowledge, but he attaches the basis for that knowledge

19  to his declaration.  Solano Decl. (Dkt. 342) ¶ 49 (citing JTX-806–JTX-809, to which

20  Defendants did not object).  Defendants fail to impeach Mr. Solano's accurate

21  knowledge.

22           **Defendants' Reply:**

23     Defendants reiterate all points made in their objection.  To the extent Yuga is

24  relying on a Law of the Case argument, it cannot because it does not apply to

25  Summary Judgment or issues decided for only one purpose.  *Shouse v. Ljunggren*, 792

26  F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir.

27  2014); *Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D.

28  Cal. Mar. 25, 2019).  The issue of legal use in commerce was not decided for the trial

1  issues and Defendants never stipulated and also preserve for appeal.  As stated above

2  and shown at trial, the use of the marks was not continuous and for illegal unregistered

3  securities.  *See supra* Objection ¶ 1 Lines 1.24-2.1.

4      Yuga concedes that its factual contentions rely on Mr. Solano's unreliable

5  testimony that should be rejected for being thoroughly impeached and contradicted.

6  Trial Tr. [Solano] 48:15-49:4; 40:3-14; 38:14-16; 38:17-19.  First, Mr. Solano's

7  reliance on Mr. Lehman's declaration should be disregarded because Mr. Solano did

8  not know the circumstances of Mr. Lehman's coerced settlement, and the language

9  relied on was drafted by Yuga's counsel.  *See* Trial Tr. [Solano] 40:3-14; 38:14-19.

10  Likewise, the consent judgment was also drafted by Yuga's counsel and does not

11  support Mr. Solano's misinformed use of a coerced settlement agreement.

12      Mr. Solano was directly impeached on his knowledge of BAYC v3.  Trial Tr.

13  [Solano] 32:19-33:11.  In his declaration he claimed that Defendants used that term to

14  refer to the RR/BAYC collection.  At his deposition he claimed he did not know

15  whether Defendants made "Bayc v3."  These are directly contradictory points and

16  classic impeachment.  In short, both statements could not be true at once.  The Court

17  should weigh that against his credibility.

18      Likewise, Mr. Solano was directly impeached on his knowledge about

19  ApeMarket.  Trial Tr. [Solano] 34:9-19.  Mr. Solano stated that he knew that

20  ApeMarket existed at trial.  At his deposition he admitted he did not know whether

21  ApeMarket existed.  Regardless, the evidence clearly indicates that ApeMarket never

22  existed, never sold a single NFT, and never launched.  Cahen Decl. ¶¶ 258-260 (Dkt.

23  344); Trial Tr. [Hickman] 211:21-22; 217:25-218:1 Trial Tr. [Muniz] 85:11-12; Ripps

24  Decl. ¶ 178, 180 (Dkt. 346) (uncontested).  Given the facts that Defendants introduced

25  about the status of ApeMarket combined with Mr. Solano's direct impeachment on the

26  issue, the Court should find that he is not a credible witness.  Overall, Mr. Solano's

27  performance as a witness should lead the Court to disregard his testimony as a whole.

28

1        Lastly, Yuga does not adequately rebut the fact that its own expert admitted that

2   Yuga has not sold a BAYC NFT since 2021.   Berger Decl. ¶ 38.  This makes any use

3   non-continuous.  *see Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493

4   F.2d 709, 712 (9th Cir. 1974).   It also does not challenge that the sale of BAYC NFTs

5   were illegal under 17 U.S.C. § 77e and thus not a lawful use in commerce beyond a

6   law of the case argument.  *See Kiva Health Brands v. Kiva Brands, Inc.*, 402 F. Supp.

7   3d 877, 888 (N.D. Cal. 2019) ; *S. Cal. Darts Ass'n v. Saffina*, 762 F.3d 921, 931 (9th

8   Cir. 2014).  This Court should rule in favor of Defendants because BAYC NFTs are

9   illegal unregistered securities. JTX-608; Friel v. Dapper Labs, Inc. -- F. Supp. 3d --,

10  2023 WL 2162747 at *22 (S.D.N.Y. 2023).  Defendants further reiterate their

11  arguments related to the use in commerce element for appeal.

12

13

14

15

16

17  Dated:  October 5, 2023         WILMER CUTLER PICKERING HALE

18                             AND DORR LLP

19

20                      By:/s/ *Louis W. Tompros*

21                         Louis W. Tompros (*pro hac vice*)

22                         louis.tompros@wilmerhale.com
                           **WILMER CUTLER PICKERING HALE**

23                         **AND DORR LLP**
                           60 State Street

24                         Boston, MA 02109
                           Telephone: (617) 526-6000

25                         Fax: (617) 526-5000

26                      Attorneys for Defendants

27                      RYDER RIPPS and JEREMY CAHEN

28

1

2    Dated:  October 5, 2023                    FENWICK & WEST LLP

3

4                                              By: /s/ *Eric Ball*

5                                                  Eric Ball
                                                   eball@fenwick.com
6                                                  **FENWICK & WEST LLP**
                                                   801 California Street
7                                                  Mountain View, CA  94041
                                                   Telephone: (650) 988-8500
8                                                  Fax: (650) 938-5200

9                                              Attorneys for Plaintiff
                                               YUGA LABS, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
    Louis W. Tompros (*pro hac vice*)
    louis.tompros@wilmerhale.com
    **WILMER CUTLER PICKERING HALE AND DORR LLP**
    60 State Street
    Boston, MA 02109
    Telephone: (617) 526-6000
    Fax: (617) 526-5000