Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>  Plaintiff,<br><br>  v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>  Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 2, lines 4, 6-7**<br><br>Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM　　　　　　　　　　　　　　　DEFENDANTS' OBJECTIONS

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

### Plaintiff's Disputed Post Trial Finding of Fact No. 2, lines 4, 6-7:

Defendants created an NFT collection known as Ryder Ripps Bored Ape Yacht Club ("RR/BAYC") that uses the BAYC Marks and points to the same online digital images as Yuga Labs' BAYC NFT collection. SJ Order at 2. Defendants promoted and/or sold RR/BAYC NFTs on the same NFT marketplaces where BAYC NFTs are sold, social media, and with their websites rrbayc.com and apemarket.com. *Id.* at 12; JTX-696.

### Defendants' Basis of Dispute:

Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial showed that the RR/BAYC collection involved modified use of marks involving appropriation to make commentary and raise awareness of what Defendants believed were antisemitic or racist imagery. Ripps Decl. ¶¶ 87-94 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 97-103 (Dkt. 344); Hickman Decl. ¶¶ 62-66 (Dkt. 345); Trial Tr. [Hickman] 222:18-21, [Cahen] 229:9-13. The RR/BAYC collection also pointed to digital images which "are public" and "available for anyone to navigate to on the Internet." Trial Tr. [Hickman] 222:15-16. Further, Yuga never presented any evidence at trial showing that Defendants sold RR/BAYC NFTs on the same marketplaces where BAYC NFTs were being sold. More than 80% RR/BAYC NFTs reservations were made through rrbayc.com, which has never sold a BAYC NFT. Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 135, 138, 144 (Dkt. 344). The remaining reservations for RR/BAYC NFTs were made through Defendants' personal Twitter accounts, which also have never been used to sell BAYC NFTs. Ripps Decl. ¶ 111 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344). Defendants also had a Foundation page for RR/BAYC NFTs. Yuga did not. As for remaining marketplaces, Defendants only received limited royalties from

1  LooksRare because the marketplace did not honor Defendants request to shut off
2  royalties for secondary sales until May 2023.  Cahen Decl. ¶¶ 169-171 (Dkt. 344).
3       Finally, there is no evidence in the record that Defendants sold or promoted
4  RR/BAYC NFTs on the apemarket.com.  ApeMarket was never released, and there
5  was no evidence that the webpage apemarket.com was a functioning website that
6  could sell or promote anything.  Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1;
7  Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested).
8       Yuga also fails to cite adequate evidence in support of its allegations.  Yuga
9  incorrectly relies on the law of the case doctrine by citing to this Court's summary
10 judgment order.  The "law of the case doctrine does not apply to pretrial rulings such
11 as motions for summary judgment."  *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir.
12 1986); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).
13      Yuga also cites to JTX-696 to incorrectly argue that apemarket.com was used to
14 promote and sell RR/BAYC NFTs.  JTX-696 is not apemarket.com but is instead the
15 ApeMarket Twitter page (which Yuga has not alleged in this case as infringing any of
16 the asserted marks).  JTX-696 does not show what apemarket.com displayed, what
17 functionalities it had, and whether it has ever promoted or sold RR/BAYC NFTs.  As
18 noted above, ApeMarket was never released (Trial Tr. [Muniz] 85:11-12; [Hickman]
19 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346)
20 (uncontested) and no evidence shows that the website domain apemarket.com was
21 ever used for the promotion or sale of anything.
22                **Plaintiff's Response:**
23      Given that "Defendants expressly reserve and reassert all objections made in its
24 Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and
25 reasserts all of its responses to those objections as stated in Dkt. 420.
26      Defendants' objection should be rejected because, as discussed *infra*, (1) the
27 objection seeks to relitigate issues already adjudicated by the Court (*infra* ¶ 10), (2)
28 rrbayc.com is not where Defendants sold the majority of their NFTs (*infra* ¶ 7(e)), (3)

Ape Market was ready to launch (*infra* ¶ 7(h) lines 4:22-25), (4) the @ApeMarketplace Twitter account and the Ape Market NFT Marketplace were used to promote RR/BAYC (*infra* ¶ 7(h) lines 4:22-25), and (5) the Bored Ape Yacht Club NFTs are not public (*infra* ¶ 7(c)). Additionally, Defendants' objections should be rejected because (1) Defendants intended to confuse consumers, (2) Defendants infringement was not art, and (3) Defendants used the BAYC Marks to sell and advertise their infringing NFTs on the same marketplaces and platforms as BAYC.

**Defendants Intended To Confuse Consumers:** In granting Yuga Labs' motion for summary judgment, this Court held that Defendants intended to deceive consumers:

> When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." . . . In this case, Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks. Because Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks, and in the absence of contrary evidence, the Court concludes that Defendants used the BAYC marks in an effort to confuse consumers. . . . In addition, the Court concludes that Defendants intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding. For example, Defendants listed the RR/BAYC NFTs on rrbayc.com under the very same Ape ID number associated with BAYC NFTs, despite having their very own unique and different ID numbers.

SJ Order at 12 (citations omitted). Similarly, the Court already determined that "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag." *Id.* at 16. Indeed, the accused actions "are all commercial activities designed to sell infringing products, not expressive artistic speech protected by the First Amendment." *Id.* Defendants' infringement is thus not art. Instead, "Defendants' use of the BAYC marks is explicitly misleading." *Id.* at 17. Finally, the Court determined that Defendants' use of the rrbayc.com and apemarket.com domains was "with a bad faith intent to profit." *Id.* at 15. Despite these holdings, Defendants

have continually disregarded this order and compounded this litigation by relitigating these settled issues. Nevertheless, the evidence admitted at trial proves that these settled issues should remain settled—Defendants were not motivated by a desire to create satire, they were motivated by greed.

**Defendants' Infringement Was Not An Art Project:** Defendants' contention that their infringing NFTs were an art project is not supported by the evidence. To the contrary, the relevant evidence demonstrates that Defendants intended to use Yuga Labs' BAYC Marks to profit through their commercial promotion and sale of RR/BAYC NFTs. *See, e.g.*, JTX-1; JTX-1574; JTX-1586; JTX-801.239; JTX-801.192; JTX-801.196; JTX-696.1; JTX-801.371. Indeed, Defendants' infringement could not have been in good faith because, even after the Court found their infringement was likely to cause confusion and was not art protected by Rogers and the First Amendment, Defendants intentionally continued to infringe on Yuga Labs' Marks and promote RR/BAYC NFTs. Solano Decl. (Dkt. 342) ¶ 74. Defendants' @ApeMarketplace Twitter account continues to promote rrbayc.com and link to a marketplace on which RR/BAYC NFTs are still available for sale. Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.

Moreover, Defendants' *Rogers* and First Amendment defenses have already been rejected by the Court. SJ Order (Dkt. 225) at 15-17. Defendants' actions were commercial trademark infringement. *Id*. And, the Court has already decided the issue of Defendants' intent, finding that Defendants intentionally infringed Yuga Labs' BAYC Marks to deceive consumers and acted with a bad-faith intent to profit from their use of the marks. SJ Order (Dkt. 225) at 12-15.

While Defendants publicly claim there was an artistic goal (to ensure they "look really sympathetic to people" if caught, in the words of their partner (JTX-918.00036)), their internal communications overwhelmingly focus on a business venture to sell RR/BAYC NFTs and launch Ape Market, their profit motive, and riding on the coattails of the BAYC brand for their own enrichment. *See, e.g.*, JTX-1

(Lehman Decl.) ¶¶ 10-13 (Defendants "expected the Business Venture to make money"); JTX-801.144 ("One thing we can do to stimulate the rsvp completing is to tease apemarket.com"); JTX-801.185 (Mr. Cahen: "Goal: mint out the remainder of the collection + incentivize people to use the marketplace, specifically the BAYC original side"); *id.* (Mr. Cahen: "More royalties for us . . . More work for sure, but much higher likelihood of generating more royalties and users"); *id.* at 208 (Mr. Cahen: "we need a very delicious value proposition [] to bring in users . . . but not so low that we dont make anything"); *id.* (Mr. Cahen: "priorities: getting RRBAYC to sell out by creating demand + getting BAYC and MAYC users to call our marketplace their new home [] and collecting royalties at a fraction of what the other big dogs are charging [] which will be considerable passive income if we strike the right balance"); JTX-801.237 (Mr. Lehman: "I'm just concerned about launching something with low prospect for recurring revenue"; Mr. Cahen: "I agree"); JTX-803 at 66-67; JTX-1574 (Mr. Cahen to Mr. Ripps: "Ur gonna make so much on this shit LMFAO"; "It will sell out within 48 hours I think [] You'll make like a million dollars [] Straight up"); JTX-1586 (Mr. Cahen to Mr. Ripps: "I t[h]ink you are gonna make millions too man"); Hickman Depo. Designations (Dkt. 394) at 238:12-40 (discussing profit motive and desire to charge royalties). Defendants knew they were stealing from Yuga Labs.

**Defendants Used Yuga Labs' Marks To Market Their Products On The Same Marketplaces As Yuga Labs:** The Court has already found that Defendants' sold their infringing products in the exact same marketplaces as Yuga Labs' NFTs. SJ Order (Dkt. 225) at 12 ("Yuga and Defendants promoted and sold their NFTs through the same online NFT marketplaces – OpenSea and x2y2.").

The evidence in the trial record overwhelmingly supports the finding that Defendants marketed their infringing products on the same marketplaces where official BAYC NFTs were marketed and sold. For example, Defendants actively marketed secondary sales of their infringing NFTs on OpenSea and pushed for such

sales to continue.  *See, e.g.*, JTX-683 (tweet from Mr. Cahen stating "RR/BAYC is officially the highest 24h volume . . . IN THE WORLD!"; JTX-685 (tweet from Mr. Cahen stating "RR/BAYC about to become the first project ever to top both the @foundation and the @opensea charts."); Cahen Decl. (Dkt. 344) ¶ 253 (Mr. Cahen's testimony that he continued to attempt to sell the infringing NFTs even though he believed they were subject to over two dozen takedowns); Dkt. 163-95 (Mr. Ripps' tweet advertising infringing NFTs on OpenSea).  Mr. Ripps had control over a sales page for the sale of RR/BAYC NFTs on OpenSea, *see* Ripps Depo. Designations (Dkt. 396) at 81:3-81:14, and Mr. Cahen directly sold the infringing NFTs on OpenSea.  Trial Tr. at 202:24-25 ("Mr. Cahen has sold through OpenSea, LooksRare, and even Foundation.").

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Defendants reiterate all points made in their objection.  Yuga mostly fails to respond to Defendants' points to discuss other issues in the case such as the fact that RR/BAYC was an art project.  Defendants reiterate their objections and replies about their artistic intent where the issue is actually presented but to the extent they must preserve, they disagree with Yuga.  Further, the fact that Defendants profited does nothing to show intent because, a secondary profit motive does not negate a primary free speech motivation.  To the extent Yuga is relying on a Law of the Case argument, it cannot because it does not apply to Summary Judgment or issues decided for only one purpose.  *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014); *Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019).  Defendants have not relitigated any issues but rather argue in accordance with what issues remain in the case.

Defendants also dispute that rrbayc.com was not where the majority of RRBAYC NFTs were sold. Ripps Decl. ¶ 110 (Dkt. 346) (uncontested). ApeMarket was never released and not at imminent release (Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested). Because it never actually existed, it could not be used promote or sell anything. Lastly, the Bored Ape Yacht Club NFT images are undoubtedly public. Trial Tr. [Hickman] 222:15-16; 222:18-21. Anybody can Google them right now and they are not hidden from view. Yuga's conflation of the images and the NFTs is improper and ironically one of the educational points of the RR/BAYC project which was to dispel this conflation. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

The evidence at trial showed that Defendants did not sell RR/BAYC NFTs on the same marketplaces as Yuga. Over 80% of commissions for RR/BAYC NFTs occurred on rrbayc.com, which has never sold BAYC NFTs at any time. Ripps Decl. Dkt. 346 ¶ 110 (uncontested). The fact that over 80% of sales occurred on rrbayc.com is substantially corroborated by Yuga's own expert who admits that 7,028 out of the total 9,415 RR/BAYC NFTs (more than 74% of sales RR/BAYC reservations) were sold through the RSVP Contract, which was only available and usable through rrbayc.com. Kindler Decl. ¶ 36 (Dkt. 338). Yuga's expert also admits that the RSVP Contract sales amounted to 981 Eth out of 1196 Eth of Defendants' total profits (which is more than 82% of all profits). Kindler Decl. 40 (Dkt. 338). To note, rrbayc.com also allowed reservations for the purchase of RR/BAYC NFTs before the RSVP contract was ever implemented, meaning that the actual sales on rrbayc.com is larger than the sales through the RSVP Contract alone.

The citations to Mr. Cahen's tweets do not support a finding that they promoted in the same markets that Yuga sells BAYC NFTs. Most importantly, as Yuga's own expert concedes, Yuga has not sold any BAYC NFTs in years. Berger Decl. ¶ 38. Regardless, Mr. Cahen has explained he frequently tweets about newsworthy crypto

1  events. Cahen Decl. ¶ 52 (Dkt. 344). These tweets are not "marketing" activities but
2  simply report news/crypto events in relation to the RR/BAYC collection. None of the
3  cited Tweets call for a purchase of an RR/BAYC. The cited Tweet from Mr. Ripps at
4  Dkt.163-95 is about conceptual art, stating "conceptual art FTW." *See* Dkt. 163-95.
5  It also does not call for anybody to purchase an RR/BAYC so, this is best understood
6  as discussing noteworthy events in the cryptocurrency and art spaces.

7  Defendants had an intent to create art and were not intentional infringers.
8  Defendants' communications about the RR/BAYC project confirm their intent was to
9  criticize not confuse. In private group chats among participants in the RR/BAYC
10 project Defendants discussed their intended artistic, critical, and educational intent.
11 Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-
12 801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-
13 30. They also took steps to clarify that RR/BAYC was unrelated to Yuga.
14 Rrbayc.com included an explanation of artistic intent. Ripps Decl. ¶¶ 101-103 (Dkt.
15 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202;
16 JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were
17 also required to acknowledge the artistic purpose of the project before they could
18 commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-
19 2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on this requirement. *See* Dkt.
20 401 at 21 [Lehman Depo. 59:25-60:24].

Dated: October 5, 2023

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

Dated: October 5, 2023

FENWICK & WEST LLP

By: /s/ *Eric Ball*
Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA  94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000