| | |
|---|---|
| Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>Monica Grewal (*pro hac vice*)<br>monica.grewal@wilmerhale.com<br>Scott W. Bertulli (*pro hac vice*)<br>scott.bertulli@wilmerhale.com<br>Tyler Carroll (*pro hac vice*)<br>tyler.carroll@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>   **HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Fax: (617) 526-5000<br><br>Derek Gosma (SBN 274515)<br>derek.gosma@wilmerhale.com<br>Henry Nikogosyan (SBN 326277)<br>henry.nikogosyan@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>   **HALE AND DORR LLP**<br>350 South Grand Ave., Suite 2400<br>Los Angeles, CA 90071<br>Telephone: (213) 443-5300<br>Fax: (213) 443-5400<br><br>Attorneys for Defendants<br>*Ryder Ripps and Jeremy Cahen* | ERIC BALL (CSB No. 241327)<br>eball@fenwick.com<br>KIMBERLY CULP (CSB No. 238839)<br>kculp@fenwick.com<br>FENWICK & WEST LLP<br>801 California Street<br>Mountain View, CA  94041<br>Telephone:  650.988.8500<br>Facsimile:   650.938.5200<br><br>MOLLY R. MELCHER (CSB No. 272950)<br>mmelcher@fenwick.com<br>ANTHONY M. FARES (CSB No. 318065)<br>afares@fenwick.com<br>ETHAN M. THOMAS (CSB No. 338062)<br>ethomas@fenwick.com<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA  94104<br>Telephone:  415.875.2300<br><br>Additional Counsel listed on next page<br><br>Attorneys for Plaintiff<br>YUGA LABS, INC. |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>       Plaintiff,<br><br> v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>       Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 4**<br><br>Judge:  Hon. John F. Walter |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

### Plaintiff's Disputed Post Trial Finding of Fact No. 4:

<u>Defendants used Yuga Labs' BAYC Marks without authorization to falsely suggest that RR/BAYC NFTs relate to Yuga Labs in a way that was likely to cause, and actually caused, confusion.</u> *Id*. at 12-13; Dkts. 342 ¶¶34-35, 63; 392 (Trial Tr. Vol. 1) at 53:14-54:22.

### Defendants' Basis of Dispute:

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial showed that Defendants did not create the RR/BAYC collection to suggest that RR/BAYC was related to Yuga in any way. Mr. Ripps's and Mr. Cahen's contemporaneous communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize rather than to confuse. JTX-801; JTX 803-804; Ripps Decl. ¶¶ 144, 147 (uncontested) (Dkt. 346); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. The rrbayc.com website—through which the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. The rrbayc.com website also required reading and clicking through a disclaimer acknowledging the artistic purpose of the project. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these additional steps so that the artistic purpose of the work would be clear. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

|   |   |
|---|---|
| 1 | Defendants' online discussion, which was nearly the entirety of Defendants' |
| 2 | public activities associated with RR/BAYC, confirms their intent to criticize Yuga and |
| 3 | comment on the nature of NFTs.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); |
| 4 | Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04. |

The evidence at trial also showed that the RR/BAYC collection did not cause any actual confusion and was not likely to confusion.  Defendants received voluminous correspondence confirming that purcahers were not confused and appreciated the RR/BAYC protest.   Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested); Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Neither Defendants nor Mr. Hickman are aware of a single instance of confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19.  Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga.  Trial Tr. [Muniz] 85:3-7.  Mr. Solano, Yuga's President, similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1. This evidence confirms that there was no likelihood of consumer confusion and no actual consumer confusion.

The evidence at trial also shows that Yuga's public activities amounted to authorization of RR/BAYC collection and the other collections that use the asserted marks.  At the time Mr. Ripps and Mr. Cahen launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  Before suing Mr. Ripps and Mr. Cahen over the RR/BAYC project, Yuga had not taken steps to stop these third-party projects from using Yuga's marks.  Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344); Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted that Defendants and Mr. Hickman would have probably seen these collections using the asserted

1 marks when they created the RR/BAYC project. Trial Tr. [Muniz] 77:19-23. 26.
2 There are "literally thousands" of products that use Yuga trademarks without
3 sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22; JTX-2398; JTX-
4 2134; JTX-2410; JTX-2075.

5 Moreover, Ryan Hickman, who collaborated with Mr. Ripps and Mr. Cahen on
6 the RR/BAYC project, owned a BAYC NFT at the time of the project. Hickman
7 Decl. ¶¶ 19-22 (Dkt. 345). BAYC NFTs had Terms & Conditions that allowed people
8 to commercialize their NFTs. Trial Tr. [Solano] 25:1-4. Yuga encouraged the public
9 to be creative with BAYC's intellectual property. For example, Ms. Muniz had
10 publicly represented that BAYC NFT holders received all IP rights and that Yuga has
11 none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344);
12 Hickman Decl. ¶¶ 25-26 (Dkt.345); JTX 2672; JTX 2673. Ms. Muniz confirmed that
13 someone listening to her public statement about Yuga not having any IP rights would
14 not have heard the word copyright. Trial Tr. [Muniz] 72:19-22.

15 Yuga also incorrectly relies on the law of the case doctrine by citing to this
16 Court's summary judgment order. The "law of the case doctrine does not apply to
17 pretrial rulings ***such as motions for summary judgment***." *Shouse v. Ljunggren*, 792
18 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d
19 1076, 1088 (9th Cir. 2014).

20 Yuga also relies on Mr. Solano's unreliable testimony to argue that Yuga owns
21 the asserted marks. Mr. Solano is not credible given the many false and misleading
22 statements contained in his declaration. Trial Tr. [Solano] 48:15-49:4, 40:3-14, 38:14-
23 16, 38:17-19. Mr. Solano also lacks credibility as a result of his repeated
24 impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11, 34:9-19.

25 **Plaintiff's Response:**

26 Given that "Defendants expressly reserve and reassert all objections made in its
27 Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and
28 reasserts all of its responses to those objections as stated in Dkt. 420. Regardless,

Defendants do not dispute that they used Yuga Labs' BAYC Marks.  Instead, they argue either that their use was not confusing or was permitted.  Defendants' objection should be rejected because (1) the record shows that Defendants intended to confuse consumers, and (2) Defendants' unreliable communications with third parties does not negate the Court's finding that there was a likelihood of confusion.

Additionally, the Court should reject Defendants' objection because (1) it seeks to relitigate issues already adjudicated by the Court (*infra* ¶¶ 8, 10), (2) Defendants' commercial infringement was not protected "art" (*infra* ¶ 7 (preamble)), (3) Defendants intended to profit off of their infringement (*infra* ¶ 7(h) lines 5:2-4), (4) Defendants were aware that their infringement would cause confusion (*infra* ¶ 33 line 12:1), (5) the record shows ample actual confusion and likelihood of confusion (*infra* ¶ 11(e)), (6) the majority of the sales of Defendants' infringing NFTs did not occur on rrbayc.com (*infra* ¶ 5 lines 2:16-19), (7) Defendants' "disclaimers" did not dispel likelihood of confusion (*infra* ¶ 7 (preamble)), (8) Defendants did not take steps to avoid confusion (*infra* ¶ 33 line 12:1), (9) Yuga Labs did not license Defendants' infringement, and Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks (*supra* ¶ 1 lines 1:21-24), (10) other alleged infringers do not negate Defendants' infringement (*supra* ¶ 1 lines 1:21-24), (11) Defendants fail to impeach Mr. Solano's credible testimony (*supra* ¶ 1 lines 1:24-2:1).

**Defendants Intended To Confuse Consumers:**  The Court has already held that Defendants intended to deceive consumers:

> In this case, Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks.  Because Defendants knowingly and intentionally used Yuga [Labs'] BAYC marks, and in the absence of contrary evidence, the Court concludes that Defendants used the BAYC marks in an effort to confuse consumers. . . . In addition, the Court concludes that Defendants intentionally designed the RR/BAYC NFTs and sales websites to resemble Yuga's branding.

SJ Order at 12 (citations omitted).  And the evidence proves Defendants' intent.

        Defendants' private communications show they knew they were using the BAYC Marks in a way that was likely to confuse consumers and did so with the intent to profit from their infringement. Defendants discussed making "like a million dollars." JTX-1574; *see also* JTX-1586 (Mr. Cahen to Mr. Ripps: "I t[h]ink you are gonna make millions too man"); JTX-801.239 (Mr. Cahen to Mr. Lehman: "I think we will make alot of money tbh"; "Potentially a lot"). And despite being urged to use different images or overlay some commentary on the images they did use to avoid confusion, Defendants chose not to. *See, e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"); JTX-801.196 (Mr. Lehman demonstrating what an overlay might look like and recommending not to "in the marketing show screenshots like the ones [Mr. Hickman] showed" "[b]ecause it is too confusing to the 'average joe'"); JTX-696.1 (tweet showing screenshot of Ape Market). They also discussed that they knew they were infringing and creating confusion, as they acted contrary to their attorneys' advice. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"). Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. (Dkt. 342) ¶ 70; see also Ripps Decl. (Dkt. 346) ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

        Defendants also knew that what they were doing was likely to lead to a lawsuit. For instance, Mr. Ripps asked for a reference to his limited liability company, Live9000 LLC, to be added to rrbayc.com because he did not "want to get sued personally." JTX-803.57. And, Mr. Lehman was still advocating for a "new logo and branding direction in light of the trademark thing" to Mr. Cahen before they learned of this lawsuit (JTX-918.00035) because "I don't want to get sued, OR, if we do get sued, for us to look really sympathetic to everyone" (JTX-918.0036) and that "now with the logo thing we don't look sympathetic to everyone" (JTX-918.0037), to which

1  Mr. Cahen agreed (*id.*).  But they changed nothing about their use of Yuga Labs'
2  marks to minimize the confusion and their infringement.
3      Privately, Defendants also discussed strategies to "cannibalize" the secondary
4  NFT market with Ape Market, which Defendants used to stimulate sales of RR/BAYC
5  NFTs.  JTX-801.203; JTX-801.144.  Mr. Cahen bragged about being "pretty elite at
6  getting engagement on twitter."  JTX-801.203.  Defendants brainstormed about
7  needing some "controversy," "art press," "law stuff," "some unexpected event," or
8  "yuga dirt" in order to complete the first sale ("mint") of each infringing RR/BAYC
9  NFT.  JTX-801.289-290.  They also agreed that "[r]eleasing [Ape Market] will have
10 an effect" on their ability to "mint out" the RR/BAYC NFTs.  *Id.*  Their internal
11 communications overwhelmingly focus on a business venture to sell RR/BAYC NFTs
12 and launch Ape Market, their profit motive, and riding on the coattails of the BAYC
13 brand for their own enrichment.  *See, e.g.*, JTX-1 (Lehman Decl.) ¶¶ 10-13; JTX-
14 801.144; JTX-801.185 (Mr. Cahen:  "More royalties for us . . . More work for sure,
15 but much higher likelihood of generating more royalties and users"); *id.* at 208; JTX-
16 801.237 (Mr. Lehman:  "I'm just concerned about launching something with low
17 prospect for recurring revenue"; Mr. Cahen:  "I agree"); JTX-803 at 66-67; JTX-1574;
18 JTX-1586; Hickman Depo. Designations (Dkt. 394) at 238:12-40.
19     Publicly, Defendants made false representations about the RR/BAYC NFTs that
20 implied owning one offered equivalent benefits to owning a genuine BAYC NFT.
21 JTX-1037.  Defendants published their promotions from their individual Twitter
22 accounts and from the commercial @ApeMarketplace account advertising their
23 forthcoming NFT marketplace.  These advertisements were also directed at BAYC
24 NFT owners specifically.  Muniz Decl. (Dkt. 340) ¶ 13; Solano Decl. (Dkt. 342)
25 ¶¶ 46, 49.  Defendants were aware of the harm that RR/BAYC NFT sales would have
26 on Yuga Labs.  JTX-42; Trial Tr. at 208:16-209:6.  Through their communications,
27 Defendants revealed their true intent to profit from the infringing use of Yuga Labs'
28 BAYC Marks.

**Defendants' Third-Party, Unreliable Communications Do Not Negate The Court's Findings Or Yuga Labs' Experts' Opinions:** Defendants' cherry-picked communications from a self-selecting group are far from a comprehensive survey of consumer confusion in the market. Defendants have no evidence supporting a claim that a statistically significant number of consumers were not confused. Indeed, by Defendants' own admission it is "not even practically possible" for them to e-mail all RR/BAYC holders. *See infra,* Defendants' Objection to Yuga Labs' proposed Post Trial Conclusion of Law No. IV.2. Furthermore, the hundreds of refunds they provided at consumers' requests suggest that some purchasers were confused. *See, e.g.*, Kindler Decl. (Dkt. 338) ¶ 44. At least some of those hundreds of refund demands could have been from confused consumers who "weren't going to, you know, raise their hand and shout about it." Trial Tr. at 54:10-16.

Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion. Finally, there is no reliable evidence in the record that the individuals identified in the cited emails, or all other purchasers, are "collectors" as Defendants contend.

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Yuga's arguments against Defendants' objection fail as follows:

***First,*** Defendants do not dispute that this Court has entered summary judgment in this case. However, in their summary judgment briefing, Defendants made clear that there are material evidentiary disputes that precluded summary judgment and

1  Defendants reserve the right raise this issue on appeal and in all other proceedings
2  involving the BAYC marks.  And while Defendants' authorization to use the BAYC
3  marks is not an issue relevant to the remedies trial in this case, Yuga has for some
4  reason affirmatively raised the issue and asked the Court to unnecessarily make a
5  finding of fact regarding. Defendants are not asking that this Court reconsider its
6  holding, because under the law of the case doctrine this Court has not made a holding
7  on Yuga's surrender of its IP rights for purposes of determining availability of
8  disgorgement as a remedy (including Defendants' mental state as applied to
9  disgorgement), apportionment, and an exceptional case analysis.  *Shouse v.*
10 *Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v.*
11 *Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

12      ***Second***, Yuga's reliance on experts to make false accusations is not credible.
13 Yuga's citation to Ms. Kindler's declaration does not support their allegations that
14 Defendants provided "hundreds of refunds" or that those alleged refunds indicate
15 confusion.  *See* Kindler Decl. ¶ 44 (Dkt. 338). Furthermore, Ms. O'Laughlin
16 conducted two flawed surveys that failed to measure confusion.  Ms. O'Laughlin
17 acknowledged that she used an overly expansive definition of the market.  Trial Tr.
18 [O'Laughlin] 150:2-151:16; 152:4-10.  This was despite her acknowledgement that
19 choosing the right sample population "matters for the analysis" and choosing an
20 improper sample population would be a mistake.  *Id.* at 146:18-25.

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ *Louis W. Tompros* |
| 5 | | Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com |
| 6 | | **WILMER CUTLER PICKERING HALE AND DORR LLP**<br>60 State Street |
| 7 | | Boston, MA 02109<br>Telephone: (617) 526-6000 |
| 8 | | Fax: (617) 526-5000 |
| 9 | | Attorneys for Defendants |
| 10 | | RYDER RIPPS and JEREMY CAHEN |
| 11 | | |
| 12 | | |
| 13 | Dated: October 5, 2023 | FENWICK & WEST LLP |
| 14 | | |
| 15 | | By: /s/ *Eric Ball* |
| 16 | | Eric Ball<br>eball@fenwick.com |
| 17 | | **FENWICK & WEST LLP**<br>801 California Street |
| 18 | | Mountain View, CA 94041<br>Telephone: (650) 988-8500 |
| 19 | | Fax: (650) 938-5200 |
| 20 | | Attorneys for Plaintiff |
| 21 | | YUGA LABS, INC. |

# ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000