Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 5, lines 2:16-19**<br><br>Judge: Hon. John F. Walter |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

### Plaintiff's Disputed Post Trial Finding of Fact No. 5, lines 2:16-19:

Confusion was likely, in part, because of the "complexity and required sophistication to understand the blockchain and verify provenance." SJ Order at 12. Defendants were also aware of likely confusion resulting from their actions, but they still continued with their infringement. *See, e.g.*, JTX-801.15 (Regarding the use of unaltered BAYC Marks on the RR/BAYC Foundation page, Mr. Lehman, one of the Defendants' partners, wrote, "I mean how do they not shut this down at some point haha."); JTX-801.196 (Mr. Lehman writing, "we should not under-estimate how confusing it is" and Mr. Cahen responding, "yeah."); *see also* Dkt. 392 at 211:17-212:24.

### Defendants' Basis of Dispute:

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial did not show that confusion was likely. Cahen Decl. ¶ 225 (Dkt. 344). Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. Defendants included an artistic disclaimer on rrbayc.com, on which over 80% of reservations occurred, explaining the artistic intent of the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Defendants also required collectors on rrbayc.com to read and click through a disclaimer acknowledging the artistic purpose of the project. *See* Ripps Decl. ¶¶ 106-109 (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Defendants also engaged in extensive online discussion confirming and raising awareness about the satirical nature of the RR/BAYC project. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

1      As a result of Defendants activities, the RR/BAYC collection did not cause any actual confusion and was not likely to lead to confusion. Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested). To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Indeed, neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are aware of a single instance of confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19. Yuga itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7. Mr. Solano, Yuga's President, similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. The fact that there was not a single confused consumer confirms that confusion was not likely nor were Defendants aware of any likelihood of confusion.

      Yuga also fails to cite adequate evidence in support of its allegations. Yuga incorrectly relies on the law of the case doctrine by citing to this Court's summary judgment order. The "law of the case doctrine does not apply to pretrial rulings ***such as motions for summary judgment***." Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also* Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir. 2014).

      Yuga also misleadingly cites to JTX-801. The statement at JTX-801.196 that Yuga relies on to argue that RR/BAYC was likely to cause confusion is actually discussing how to create a design for the never-released ApeMarket that would not be confusing for users of the website. *See* JTX-801-196. The statement at JTX-801.15 that Yuga relies on was a question from Mr. Lehman regarding whether RR/BAYC's

page will be shut down.  Mr. Cahen response shows that he did not believe there was anything wrong with the page, stating "[t]hey can't imo." JTX-801.15.

Yuga also misleadingly cites to the trial testimony of Mr. Hickman.  The portion of the transcript that Yuga relies on (Trial Tr. [Hickman] 211:17-212:24) involves questions regarding Defendants desire to add a "friction step" to the never-released "ApeMarket" to ensure that the design of the website would not cause confusion.  Mr. Hickman explains, "This is our attempt to make it as clear as possible.  We are having discussion on how to make sure it was very clear for users." Trial Tr. [Hickman] 212:22-24.

### Plaintiff's Response:

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.

Defendants do not dispute that they used Yuga Labs' BAYC Marks, nor could they.  Instead, they argue either that their use was not confusing or was permitted.

Defendants' objections should be rejected for the same reasons discussed *supra* ¶ 4; specifically:  (1) the objection seeks to relitigate issues already adjudicated by the Court, (2) the record shows that Defendants intended to confuse consumers, (3) Defendants' commercial infringement was not protected "art," (4) Defendants intended to profit off of their infringement, (5) the record shows ample actual confusion and likelihood of confusion, (6) Defendants' "disclaimers" did not dispel likelihood of confusion, (7) Defendants did not take steps to avoid confusion, (8) Yuga Labs did not license Defendants' infringement, and Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks, (9) Defendants fail to impeach Mr. Solano's credible testimony, and (10) Defendants were well aware that their infringement would cause confusion (*infra* ¶ 33 line 12:1).

Additionally, as described below, Defendants' objection should be rejected because (1) Defendants' anecdotal evidence of purported supporters does not negate

the Court's finding that there was a likelihood of confusion, (2) the majority of the sales of Defendants' infringing NFTs did not occur on rrbayc.com, and (3) the record shows that Defendants promoted their infringing NFTs using Yuga Labs' marks in the same marketplaces as Yuga Labs.

**Defendants' Anecdotal Evidence Of Individuals Stating They Support Defendants' Infringement Are Irrelevant And Immaterial:** A handbag counterfeiter may have allies or distributors, and those allies / distributors may even profess to believe in a cause, but that does not excuse the counterfeiter's wrongdoing or mitigate the likelihood of confusion in the marketplace. *See* SJ Order (Dkt. 225) at 16 ("Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag."). And Defendants do nothing to rebut the likelihood of post-sale confusion. *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one"). Further, confused consumers are unlikely to admit that they have fallen for Defendants' scam. As Mr. Solano explained, being scammed is "super embarrassing" and consumers who were tricked "weren't going to, you know, raise their hand and shout about it." Trial Tr. at 54:10-16. Nonetheless, Defendants' admission that they processed over $90,000 in refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75) undermines Defendants' suggestion that purchasers of their infringing NFTs were universally supportive and that no one was confused.

**rrbayc.com is Not Where Defendants' Sold The Majority Of Their NFTs:** rrbayc.com *is not* where "more than 80% of sales for which Defendants made revenue occurred." Defendants have no support for this figure; even Mr. Ripps' own declaration merely stated that "[o]ver 80% of RR/BAYC NFT *reservations* occurred on" that website. Ripps Decl. (Dkt. 346) ¶ 110 (emphasis added). Contrary to Mr.

Ripps' claims, NFTs reserved on that website were actually minted and sold through the confusing Foundation page that used the BAYC Marks.  Ripps Depo. Designations (Dkt. 396) at 82:8-13 ("Q. How many were sold through Foundation?" / "A. Well, technically, all of them were because it was a Foundation contract, so...").

Further, Ms. Kindler's unrebutted analysis of sales data demonstrates that for Defendants' infringing NFTs, "[t]he majority of the sales are taking place on secondary markets. . . .  [T]he vast majority of them are occurring in secondary markets and not from just the initial sale."  Trial Tr. at 202:4-17; *see also* JTX-723 (Kindler Expert Report) at 49 (discussing Defendants' acknowledgement of harm, e.g., where "Defendants' collaborator Mr. Hickman noted to Defendants that '[w]e're closing in on *$10 million impact to yuga'").

Thus, the vast majority of market activity involving Defendants' infringing NFTs is taking place on the secondary market, including platforms such as Foundation and OpenSea.  These secondary marketplaces are one place where consumer confusion is likely to result from Defendants' actions to flood the market with their infringing products.  These secondary marketplaces are also a prominent source of confusion going forward—especially since they are where Defendants continue to market their infringing NFTs for sale.  Solano Decl. (Dkt. 342) ¶ 78 ("RR/BAYC NFTs continue to be sold on websites like LooksRare and NFTx"); Trial Tr. at 58:23-25 ("the Ape Market Twitter [account], that actually links directly to LooksRare where these NFTs are still selling").  Defendants' contention is therefore incorrect and misleading.

**Defendants Promoted Their Infringing NFTs On The Same Marketplaces As Yuga Labs:** Defendants' infringing NFTs were promoted and sold in the same marketplaces as genuine BAYC NFTs *without* the additional friction steps Defendants allegedly contemplated for Ape Market, highlighting how the likely confusion from Defendants' actions had already pervaded the secondary markets. *See* Solano Decl. (Dkt. 342) ¶ 42 ("In the case of OpenSea and LooksRare NFT marketplaces,

1  Defendants used the BAYC Marks to sell their scam NFTs alongside authentic Yuga
2  Labs BAYC NFTs . . . ."); Kindler Decl. (Dkt. 338) ¶ 61 ("RR/BAYC NFTs were
3  reserved on Mr. Ripps' website, rrbayc; other RR/BAYC NFTs were sold on
4  marketplaces such as OpenSea and Foundation which used the BAYC Marks"); *see*
5  *also* JTX-29; JTX-670.  Mr. Ripps even had control over a sales page for the sale of
6  RR/BAYC NFTs on OpenSea.  *See* Ripps Depo. Designations (Dkt. 396) at 81:3-
7  81:14.  And yet there were no friction steps.

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Yuga's response fails to adequately address Defendants' objections and the trial evidence that supports Defendants' objections.  For reasons provided in *supra* ¶ 4 (both in Defendants' objections and Defendants' reply in support of their objections), the evidence showed that confusion was not likely and in fact there was not a single actual RR/BAYC NFT consumer that was confused regarding the source of origin for the NFTs.  Defendants' objections in *supra* ¶ 4 similarly explains that (1) this Court's summary judgment cannot be used to support a finding of fact a trial, (2) Defendants did not intend to confuse consumers, (3) Defendants' intent was to protest and criticize Yuga, (4) the record shows ample evidence of ***no*** actual confusion, (5) the disclaimer was evidence of Defendants' good faith intent to protest and further decreased any likelihood of confusion, (6) Defendants took many steps to avoid confusion including through the use of an artistic statement, disclaimer, and Twitter activity critical of Yuga, (7) Yuga surrendered to the world "all IP rights" associated with the Bored Ape Yacht Club, and (8) Mr. Solano is not a credible witness given his many false statements and his admission at trial that he testified falsely.

Yuga's additional responses similarly fail to identify evidence showing that Defendants' profits were a result of confused consumers:

***First,*** Yuga effectively admits that there is no evidence of actual confused consumers and tries to explain away this gaping hole in their evidence by arguing that the world is hiding evidence of actual confusion from Yuga because it would be "super embarrassing" to admit being confused. Not only does this response lack merit, but it is also an admission that there is insufficient evidence in the record to support a finding that any sales were a result of actual confusion.

And Defendants' evidence from actual consumers of RR/BAYC NFTs is sweeping, involving hundreds of actual consumers admitting that they were not confused and supported Defendants' protest. Mr. Ripps testified in his declaration: "I received ***hundreds of letters*** thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received. Ripps Decl. ¶¶ 196-207 (uncontested) (emphasis added). At no point during trial did Yuga dispute this fact. Yuga did not present any rebuttal evidence at trial and Yuga elected to not cross-examine Mr. Ripps on this issue. Thus, the uncontested evidence at trial shows that Mr. Ripps received hundreds of letters from RR/BAYC participants expressing support for the project and its criticism.

***Second,*** the evidence at trial showed that Defendants did not sell RR/BAYC NFTs on the same marketplaces as Yuga. Over 80% of commissions for RR/BAYC NFTs occurred on rrbayc.com, which has never sold BAYC NFTs at any time. Ripps Decl. Dkt. 346 ¶ 110 (uncontested). The fact that over 80% of sales occurred on rrbayc.com is substantially corroborated by Yuga's own expert who admits that ***7,028 out of the total 9,415 RR/BAYC NFTs (more than 74% of sales RR/BAYC reservations) were sold through the RSVP Contract***, ***which was only available and usable through rrbayc.com***. Kindler Decl. ¶ 36 (Dkt. 338). Yuga expert also admits that the ***RSVP Contract sales amounted to 981 Eth out of 1196 Eth of Defendants' total profits (which is more than 82% of all profits)***. Kindler Decl. ¶ 40 (Dkt. 338). To note, rrbayc.com also allowed reservations for the purchase of RR/BAYC NFTs

1  *before the RSVP contract was ever implemented*, meaning that the actual sales on rrbayc.com is larger than the sales through the RSVP Contract alone.

The remaining reservations for RR/BAYC NFTs were made through Defendants' personal Twitter accounts, which also have never been used to sell BAYC NFTs.  Ripps Decl. ¶ 111 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344).  Defendants also had a Foundation page for RR/BAYC NFTs, but Yuga did not present any evidence of having a Foundation page for the Bored Ape Yacht Club at the time of the RR/BAYC project because it simply did not have a Foundation page at the time.

**Third,** Yuga also attempts to argue that Defendants sold RR/BAYC NFTs on OpenSea and LooksRare, but Yuga has pointed to absolutely no evidence of Defendants actually making any sales on either platform.  In fact, Mr. Solano was cross-examined on OpenSea sales, to which he admitted that he falsely attributed Defendants with selling RR/BAYC NFTs based on documents showing that some anonymous, third-part was re-selling the NFTs.  Trial Tr. [Solano] 45:12-46:24 (emphasis added).

And as for LooksRare, again, Yuga presented no evidence at trial that Defendants actually made any sales on LooksRare.  Yuga is instead conflating the record regarding Defendants' receipt of limited royalties for sales conducted by third parties on LooksRare.  Notably, Defendants were forced to receive these royalties because LooksRare did not honor Defendants request to shut off royalties for secondary sales until May 2023.  Cahen Decl. ¶¶ 169-171 (Dkt. 344).

Dated: October 5, 2023

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

Dated: October 5, 2023

FENWICK & WEST LLP

By: /s/ *Eric Ball*
Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000