Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>  Plaintiff,<br><br>  v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>  Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(preamble)**<br><br>Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM               DEFENDANTS' OBJECTIONS

| | |
|---|---|
| 1 | MELISSA L. LAWTON (CSB No. 225452) |
| 2 | mlawton@fenwick.com |
| 3 | FENWICK & WEST LLP |
| | 228 Santa Monica Boulevard |
| 4 | Santa Monica, CA 90401 |
| | Telephone: 310.434.4300 |
| 5 | Attorneys for Plaintiff |
| 6 | YUGA LABS, INC. |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

### Plaintiff's Disputed Post Trial Finding of Fact No. 7(preamble):

Defendants' infringement was intentional. The Court's findings on summary judgment, in addition to evidence presented at trial, illustrate Defendants' intent to deceive consumers, including:

### Defendants' Basis of Dispute:

Defendants expressly reserve and reasserts all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial showed that Defendants are not intentional infringers and did not intend to suggest that RR/BAYC was related to Yuga in any way. Mr. Ripps's and Mr. Cahen's contemporaneous communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize rather than to confuse. For example, in private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Mr. Ripps and Mr. Cahen discussed their intended artistic purpose of the project, their intention that it would spread criticism of Yuga, and their intention that social media platforms be used to educate the public about the nature of NFTs and what they saw as Yuga's misconduct. Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Defendants also took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were also required to read and click through a disclaimer

acknowledging the artistic purpose of the project before they were allowed to commission an NFT.  *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.  Mr. Ripps insisted on these requirement and additional steps so that the artistic purpose of the work would be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Defendants' online discussion, which consisted of nearly the entirety of Defendants' public activities associated with RR/BAYC, confirms their intent.  In those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be inappropriate messaging in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Defendants also created the RR/BAYC collection based on a good faith belief that Yuga had given authorization for the creation of projects like RR/BAYC.  At the time Mr. Ripps and Mr. Cahen launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  Before suing Mr. Ripps and Mr. Cahen over the RR/BAYC project, Yuga had not taken steps to stop these third-party projects from using Yuga's marks.  Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344).  Ms. Muniz admitted that Mr. Ripps, Mr. Cahen, and Mr. Hickman would have probably seen hundreds of NFT collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project.  Trial Tr. [Muniz] 77:19-23; Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13.  There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga.  Trial Tr. [Muniz] 81:18-22; *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Moreover, Ryan Hickman, who collaborated with Mr. Ripps and Mr. Cahen on the RR/BAYC project, owned a BAYC NFT at the time of the project.  Hickman Decl. ¶¶ 19-22 (Dkt. 345).  BAYC NFTs had Terms & Conditions, and the intent

behind the Terms & Conditions for BAYC NFTs was to allow people to be able to commercialize their NFTs.  Trial Tr. [Solano] 25:1-4.  Ms. Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt.345); JTX 2672; JTX 2673.  Ms. Muniz confirmed that her statement did not include "copyright."  Trial Tr. [Muniz] 72:19-22.

Yuga, by arguing that the Court's summary judgment order supports a finding of intentional infringement, has also incorrectly relied on the law of the case doctrine. The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**."  *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reasserts [sic] all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless, Defendants' objections should be rejected for the same reasons discussed *supra* ¶ 4; specifically:  (1) the objection seeks to relitigate issues already adjudicated by the Court, (2) the record shows that Defendants intended to cause confusion, (3) Defendants took no steps to avoid confusion in the marketplace, (4) Yuga Labs did not authorize Defendants' infringement and, to the contrary, had implemented a robust enforcement program to shut down infringers like Defendants, Mr. Hickman did not have (or convey to Defendants) the right to infringe Yuga Labs' BAYC Marks, (5) and Defendants intended to profit off of their infringement.

Additionally, Defendants' objection should be rejected because (1) their "disclaimer" did not dispel likelihood of confusion or disprove their intent, and (2) Defendants' commercial infringement was not protected "art."

**Defendants' "Disclaimer" Does Not Negate The Court's Finding That Consumers Were Likely To Be Confused:**  With respect to the supposed disclaimer

on rrbayc.com, "the fact that Defendants concluded it was necessary to include a disclaimer demonstrates their awareness that their use of the BAYC Marks was misleading." SJ Order (Dkt. 225) at 17. Defendants knew they were infringing and creating confusion, as they acted contrary to their attorneys' advice. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"). Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. (Dkt. 342) ¶ 70; see also Ripps Decl. (Dkt. 346) ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

Defendants also knew that what they were doing was likely to lead to a lawsuit. For instance, Mr. Ripps asked for a reference to his limited liability company, Live9000 LLC, to be added to the rrbayc.com because he did not "want to get sued personally." JTX-803.57. And, Mr. Lehman was still advocating for a "new logo and branding direction in light of the trademark thing" to Mr. Cahen before they learned of this lawsuit (JTX-918.00035) because "I don't want to get sued, OR, if get do get sued, for us to look really sympathetic to everyone" (JTX-918.0036). That Defendants took some steps to try to conceal their intent when they were inevitably sued does not make the infringing activity less confusing; it just demonstrates their culpability.

The public was not required to read and click a disclaimer. Indeed, even on rrbayc.com, Defendants could not enforce any requirement that users "read" what Mr. Hickman and Mr. Lehman referred to as a "wall of text" that they agreed "no one" would read (JTX-801.128). And, this wall of text did nothing to dispel confusion amongst the general public when every single RR/BAYC NFT sold (or that ever will sell in the future) uses the trademarks BORED APE YACHT CLUB and BAYC— without any alleged disclaimer. Atalay Decl. (Dkt. 337) at ¶¶ 3-6; Trial Tr. at 133:12-134:20; JTX-600; JTX-1146. Defendants also did not include any similar disclaimer

1 | on Foundation or other secondary marketplaces, nor was there one on Etherscan.  The
2 | majority of the sales of RR/BAYC NFTs have been on secondary marketplaces where
3 | there was no disclaimer.  Kindler Decl. (Dkt. 338) at ¶ 69; JTX-801.376 ($10 million
4 | impact).

5 |     Defendants have no survey, or material consumer evidence, that users of the
6 | infringing rrbayc.com website read any disclaimer.  This is not surprising since the
7 | vast majority of sales occurred outside of the rrbayc.com website.  Indeed, Mr. Ripps
8 | admitted that all sales went through Foundation—where there was no disclaimer.
9 | Ripps Depo. Designations (Dkt. 396) at 82:8-13.

10 |     Finally, every single RR/BAYC NFT sold (or that ever will sell in the future)
11 | uses the trademarks BORED APE YACHT CLUB and BAYC.  Atalay Decl. (Dkt.
12 | 337) at ¶¶ 3-6; Trial Tr. at 133:12-134:20; JTX-600; JTX-1146.  Indeed, a user today
13 | linking to Etherscan will not see Ryders Ripps' Bored Ape Yacht Club, but will see
14 | Bored Ape Yacht Club and will not see RR/BAYC but will see BAYC.  Trial Tr. at
15 | 52:6-21, 53:14-54:22, 138:6-20; JTX-117; Atalay Decl. ¶¶ 3-6; Solano Decl. ¶¶ 46-47,
16 | 78; *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1078 (9th
17 | Cir. 2006) (finding that disclaimers on packaging, but not on infringing product, did
18 | "nothing to dispel post-purchase confusion").  Defendants' claimed disclaimer is non-
19 | existent to ineffective at best.

20 | **Defendants' Infringement Was Not An Art Project:**  Defendants' contention
21 | that their infringing NFTs were an art project is not supported by the evidence.  To the
22 | contrary, the relevant evidence demonstrates that Defendants intended to use Yuga
23 | Labs' BAYC Marks to profit through their commercial promotion and sale of
24 | RR/BAYC NFTs.  *See, e.g.*, JTX-1; JTX-1574; JTX-1586; JTX-801.239; JTX-
25 | 801.192; JTX-801.196; JTX-696.1; JTX-801.371.  Indeed, Defendants' infringement
26 | could not have been in good faith because, even after the Court found their
27 | infringement was likely to cause confusion and was not art protected by Rogers and
28 | the First Amendment, Defendants intentionally continued to infringe on Yuga Labs'

1  Marks and promote RR/BAYC NFTs.  Solano Decl. (Dkt. 342) ¶ 74.  Defendants'
2  @ApeMarketplace Twitter account continues to promote rrbayc.com and link to a
3  marketplace on which RR/BAYC NFTs are still available for sale.  Solano Decl. (Dkt.
4  342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.
5       Moreover, Defendants' *Rogers* and First Amendment defenses have already
6  been rejected by the Court.  SJ Order (Dkt. 225) at 15-17.  Defendants' actions were
7  commercial trademark infringement.  *Id*.  And, the Court has already decided the issue
8  of Defendants' intent, finding that Defendants intentionally infringed Yuga Labs'
9  **Defendants' Reply:**
10       Defendants expressly reserve and reasserts all replies made in the parties' Joint
11  Statement Regarding Objections (Dkt. 420).
12       For reasons provided in *supra* ¶ 4 (both in Defendants' objections and
13  Defendants' reply in support of their objections), the evidence showed that Defendants
14  did not intend to infringe any trademark rights and instead aimed to protest and
15  criticize Yuga.  Defendants' similarly explained that (1) this Court's summary
16  judgment cannot be used to support a finding of fact a trial, (2) Defendants did not
17  intend to confuse consumers, (3) Defendants' intent was to protest and criticize Yuga,
18  (4) the record shows ample evidence of ***no*** actual confusion, (5) Defendants took
19  many steps to avoid confusion including through the use of an artistic statement,
20  disclaimer, and Twitter activity critical of Yuga, and (6) Yuga surrendered to the
21  world "all IP rights" associated with the Bored Ape Yacht Club.
22       Further, Yuga's incorrectly argues that Defendants' use of disclaimer did not
23  show Defendants good faith intent to criticize Yuga and acts taken to avoid any
24  confusion.  First, Yuga incorrectly cites to this Court's summary judgment order to
25  suggest that use of a disclaimer is not a step taken to avoid confusion. But the "law of
26  the case doctrine does not apply to pretrial rulings such as motions for summary
27  judgment." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986). *Peralta v.*
28  *Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).  And Yuga's complaint that Defendants

did not use a disclaimer on Foundation, Etherscan, or any other third-party website is inapposite.  Defendants have no control over third party websites such as Etherscan.  And Mr. Atalay himself has admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or by checking the associated smart contract address.  Trial Tr. [Atalay] 135:2-25; [Atalay] 133:12-23.  Further, the smart contract clearly indicates Mr. Ripps is the creator.  *See* JTX-1146; Ripps Decl. ¶¶ 88-89.   Yuga is also incorrect in stating that every RR/BAYC NFT uses the alleged marks. Defendants used modified versions of the alleged BAYC Marks in their reservations.  The logo used states "This Logo is Based on the SS Totenkopf; 18 Teeth" and rrbayc.com used "RR/BAYC" throughout.  JTX-2085.

Second, Yuga incorrectly argues that the disclaimer "did nothing to dispel confusion."  As Mr. Ripps's testimony makes clear, the rrbayc.com website (which had more than 80% of Defendants' sales) "required collectors to acknowledge and accept a disclaimer before they were able to commission an RR/BAYC NFT."  Ripps Decl. ¶ 105 (Dkt. 346) (uncontested).  That disclaimer stated "By purchasing this Ryder Ripps artwork in the form of an NFT, you understand that this is a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary. You cannot copy an NFT. Please see the RR/BAYC contract here to verify provenance: Etherscan. By reserving your RR/BAYC you are purchasing a hold for an order that will be fulfilled or rejected/refunded by Ryder within 24h (Depending on the vibe of your wallet and the mood of Ryder at the time)." *Id.* at ¶ 106.  This evidence shows that Defendants were trying to ensure that no one was confused about their collection.  *Id.* at ¶¶ 102, 108.  Yuga's assertion that this disclaimer shows the opposite intent is baseless.

Third, Yuga also cites to correspondence among the creators discussing a possible fear of litigation.  These discussions are taken out of a broader context of hundreds of thousands of communications the creators made.  Further, whether the

1  Defendants feared possible litigation from a multi-billion-dollar company does not
2  establish that they intended confuse anyone.
3        Fourth, Yuga misstates the meaning of Mr. Ripps's deposition testimony
4  surrounding the use of Foundation. Mr. Ripps's comment that all of the NFTs were
5  "technically sold" on Foundation is because the contract is a Foundation contract. *See*
6  Ripps Depo. Designations (Dkt. 396) at 82:8-13; Counter designation 82:14-19.  This
7  however is different than the "Foundation page" for Ryder Ripps.  Accordingly, Mr.
8  Ripps was not admitting that all sales went through his Foundation page and his
9  testimony that over 80% of sales by Defendants occurred on rrbayc.com is
10 uncontested. Ripps Decl. ¶¶ 101, 104-106, 110 (Dkt. 346) (uncontested).
11       Fifth, the trial evidence showed that Defendants earned little profit from the
12 sales that occurred on secondary markets.  As Mr. Ripps and Mr. Cahen's testimony
13 make clear, they tried to turn off royalties from the secondary sales of RR/BAYC
14 NFTs, as part of a criticism of Yuga's policy to receive 2.5% of royalties on their
15 secondary sales. *See* Cahen Decl. ¶¶ 166-167 (Dkt. 344); Ripps Decl. ¶¶ 116, 118
16 (Dkt. 346) (uncontested).  Further, their testimony credibly states that they received
17 only a small amount of royalties from Foundation before they shut it off, around
18 $1,000, and some from LooksRare, as that marketplace initially refused to turn off the
19 royalties, around $77,000. *See* Cahen Decl. ¶¶ 168-172 (Dkt. 344).  Accordingly,
20 sales of RR/BAYC NFTs on secondary markets is minimally relevant to the analysis
21 of Defendants' profits and the fact Defendants purposefully shut off royalties from
22 such sales yet again supports a finding that they were motivated by their protest of
23 Yuga not to profit.

Dated: October 5, 2023                WILMER CUTLER PICKERING HALE
                                      AND DORR LLP


                                      By: /s/ *Louis W. Tompros*
                                          Louis W. Tompros (*pro hac vice*)
                                          louis.tompros@wilmerhale.com
                                          **WILMER CUTLER PICKERING HALE
                                          AND DORR LLP**
                                          60 State Street
                                          Boston, MA 02109
                                          Telephone: (617) 526-6000
                                          Fax: (617) 526-5000

                                      Attorneys for Defendants
                                      RYDER RIPPS and JEREMY CAHEN



Dated: October 5, 2023                FENWICK & WEST LLP


                                      By: /s/ *Eric Ball*
                                          Eric Ball
                                          eball@fenwick.com
                                          **FENWICK & WEST LLP**
                                          801 California Street
                                          Mountain View, CA 94041
                                          Telephone: (650) 988-8500
                                          Fax: (650) 938-5200

                                      Attorneys for Plaintiff
                                      YUGA LABS, INC.

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

> By: /s/ *Louis W. Tompros*
> Louis W. Tompros (*pro hac vice*)
> louis.tompros@wilmerhale.com
> **WILMER CUTLER PICKERING HALE AND DORR LLP**
> 60 State Street
> Boston, MA 02109
> Telephone: (617) 526-6000
> Fax: (617) 526-5000