Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                      Plaintiff,<br><br>   v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                      Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(c), lines 3:16-17**<br><br>Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM                          DEFENDANTS' OBJECTIONS

| | |
|---|---|
| 1 | MELISSA L. LAWTON (CSB No. 225452) |
| 2 | mlawton@fenwick.com |
| 3 | FENWICK & WEST LLP |
| | 228 Santa Monica Boulevard |
| 4 | Santa Monica, CA 90401 |
| | Telephone: 310.434.4300 |
| 5 | Attorneys for Plaintiff |
| 6 | YUGA LABS, INC. |

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

### Plaintiff's Disputed Post Trial Finding of Fact No. 7(c), lines 3:16-17:

<u>Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks, which Defendant Ripps intentionally coded into the smart contract, and many of the associated images contained the BAYC Marks.</u> Dkts. 342 ¶36; 337 (Atalay Decl.) ¶¶2-6 (admitted into evidence in Dkt. 392 at 125:22-126:11); JTX-600; JTX-687; JTX-688; JTX-1146.

### Defendants' Basis of Dispute:

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial did not show that Defendants intentionally coded into the RR/BAYC smart contract the asserted marks and the Bored Ape images. Mr. Ripps's uncontested declaration explains that RR/BAYC arose when the NFT community asked Mr. Ripps to mint RR/BAYC NFTs after observing a public exchange between Mr. Ripps and Mr. McNelis where Mr. Ripps used NFTs to demonstrate provenance. Ripps Decl. ¶ 73-81 (Dkt. 346) (uncontested). Further, RR/BAYC NFTs do not have "coded in" digital ape images but instead point to images that "are public" and "available for anyone to navigate to on the Internet." Trial Tr. [Hickman] 222:15-16.

The evidence that Yuga relies on does not show that Defendants coded the RR/BAYC project to intentionally infringe on the asserted marks. For example, Yuga cites to the unreliable Declaration of Greg Solano, specifically pointing to a paragraph contain bare allegations not rooted in any of Mr. Solano's personal knowledge to argue that Defendants engage in activities of intentional infringement. But Mr. Solano's testimony was not credible given the many false and misleading statements contained in his declaration, as well as his repeated impeachment at trial. For example, Mr. Solano was also forced to concede on cross examination that his sworn

1  declaration included a false statement claiming that "Defendants continue to receive
2  royalties or creator fees from sales on secondary marketplaces."  Trial Tr. [Solano]
3  48:15-49:4; *see also* Trial Tr. [Solano] 40:3-14; Trial Tr. [Solano] 38:14-16; Trial Tr.
4  [Solano] 38:17-19.  Mr. Solano also lacks credibility as a result of his repeated
5  impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11; *id*. at 34:9-19.
6       Yuga's citation to the Declaration of Mr. Atalay also fails to show intentional
7  infringement because Mr. Atalay lacks personal knowledge regarding the creation of
8  the RR/BAYC project and of Defendants' intent.  Further, the paragraphs of Mr.
9  Atalay's declaration that Yuga cites discusses how Etherscan (a third-party website)
10 display the RR/BAYC contract on the Ethereum network in part by using a token
11 tracker or token name.  Atalay Decl. ¶¶ 4-6.  But Defendants have no control over the
12 Etherscan website.  And Mr. Atalay admitted that consumers of NFTs do not use
13 Etherscan's token tracker/token name but instead rely on marketplaces or by checking
14 the associated smart contract address.  Trial Tr. [Atalay] 135:2-25.  Mr. Atalay
15 explained that using token names to distinguish NFTs "would be a fairly weak way to
16 do so because often those things are mutable.  They can be changed after the fact.
17 Also, there's no guarantee of uniqueness."  Trial Tr. [Atalay] 133:12-23.
18      The corresponding exhibits that Yuga cited also fail to show any such intent.
19 JTX-600 and JTX-1146 are printouts of "Etherscan" pages that identify "*ryder-
20 ripps.eth" as the creator of the RR/BAYC collection.  Etherscan is a third-party
21 website that Defendants have no control over.  JTX-687 and JTX-688 are merely
22 bored ape images that Yuga does not own and are, in fact, public domain images that
23 anyone one the internet can navigate to and use.
24      **Plaintiff's Response:**
25      Given that "Defendants expressly reserve and reassert all objections made in its
26 Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and
27 reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless,
28

1  Defendants' objection should be rejected for the same reasons discussed *supra* ¶ 7(a);
2  specifically: (1) the objection seeks to relitigate issues already adjudicated by the
3  Court, (2) the record shows that Defendants intended to cause confusion, (3)
4  Defendants' commercial infringement was not protected "art," (4) Defendants'
5  "disclaimer" did not dispel likelihood of confusion, (5) Defendants took no steps to
6  avoid confusion in the marketplace, (6) Yuga Labs did not authorize Defendants'
7  infringement and, to the contrary, had implemented a robust enforcement program to
8  shut down infringers like Defendants, (7) Mr. Hickman did not have (or convey to
9  Defendants) the right to infringe Yuga Labs' BAYC Marks, (8) Defendants' fail to
10 impeach Mr. Solano's credible testimony, and (9) Defendants intended to profit off of
11 their infringement.

12         Additionally, as described below, Defendants' objection should be rejected
13 because (1) Defendants' characterization of the evidence is unpersuasive, (2)
14 Defendants misrepresent Mr. Atalay's testimony, (3) Defendants coded the smart
15 contract to cause Etherscan and other websites to attribute Defendants' NFTs to Yuga
16 Labs, (4) that attribution is immutable, and (5) the Bored Ape Yacht Club images are
17 not public.

18         **Defendants' Characterization Of The Evidence In This Objection Is**
19 **Incorrect:** It is undisputed that Mr. Ripps created the RR/BAYC smart contract, and
20 that the marks "Bored Ape Yacht Club" and "BAYC" are immutably coded into the
21 smart contract. *See* JTX-600; *see also* (Atalay Decl.) ¶¶2-6 (admitted into evidence in
22 Dkt. 392 at 125:22-126:11). Mr. Ripps does not deny this fact. And Defendants'
23 vague, unsupported assertion that someone other than Mr. Ripps put those terms into
24 the smart contract that Mr. Ripps created is contrary to the evidence and is not
25 credible. Indeed, their assertion is contradicted by their own objection, where
26 Defendants admit that JTX-600 "is an Etherscan page recording a transaction between
27 Mr. Ripps and Foundation." *Infra* ¶ 7(e).
28

1    The reason Mr. Ripps is unwilling to directly admit the obvious—that he typed
2 "Bored Ape Yacht Club" and "BAYC"—is because this fact disproves the lie that Mr.
3 Ripps tried to use his name "whenever possible" (*see infra* Defendants' response to ¶
4 7(e)).

5    **Defendants Misrepresent Mr. Atalay's Testimony:** Mr. Atalay's testimony
6 does not say "that consumers of NFTs do not use Etherscan's token tracker/token
7 name" as Defendants attribute to it. What Mr. Atalay actually testified is that "for the
8 average person who is not an expert in blockchain technology," viewing NFTs on a
9 marketplace such as OpenSea "is probably the most straightforward way to
10 distinguish two NFTs." Trial Tr. at 135:5-10. And, Mr. Atalay testified that users on
11 such secondary markets typically refer to the token name to identify NFTs. Trial Tr.
12 at 132:3-5 ("Q And you also agree that the NFT community uses the token name
13 when it's buying on secondary markets; correct?" / "A Yes."); *see also* JTX-1558
14 (tweet from third party stating "If you were curious to see how malicious this scam is,
15 check out the token tracker/ID name that he chose to use on the smart contract. This is
16 a critical piece of data the NFT community uses when they are buying on the
17 secondary market."). Even if a consumer were to view an RR/BAYC on OpenSea
18 they would still be confused because listings for RR/BAYC NFTs were virtual
19 identical to a listing for an authentic Bored Ape Yacht Club NFT. *See* JTX-686.

20    **Defendants Caused Sources Such As Etherscan To Identify Their**
21 **Infringing NFTs With The BAYC Marks:** Defendants say that the evidence at trial
22 shows they were not responsible for token trackers such as Etherscan's identifying
23 Defendants' NFTs with the BAYC Marks. There is no such evidence to support this
24 argument, and Defendants cite none. JTX-600 shows "Bored Ape Yacht Club" and
25 "BAYC" coded into the RR/BAYC smart contract as source identifiers, and
26 Defendants admit that JTX-600 "is an Etherscan page recording a transaction between
27 Mr. Ripps and Foundation." *Infra* ¶ 7(e). In other words, Mr. Ripps admits that he
28

launched the smart contract with the BAYC Marks coded into it, which caused websites such as Etherscan to confusingly display those marks to the public as if the smart contract was created by Yuga Labs. These marks can never be removed from the smart contract, causing hyperlinks and other references to the collection to display the BAYC Marks. Atalay Decl. (Dkt. 337) ¶ 6; Solano Decl. ¶¶ 46-47, 78. And despite Mr. Ripps testimony that he minted the RR/BAYC NFTs to his "personal wallet, ryder-ripps.eth," the "ryder-ripps.eth" name did not appear on Etherscan until *after* minting, most if not all of, the infringing NFTs. *Compare* JTX-25, *with* JTX-36. Defendants therefore caused their infringement of Yuga Labs' marks to be an inherent and unchangeable part of their NFT collection, in turn causing third party systems and observers to confusingly associate the two, resulting in more downstream marketplace confusion. The permanent existence of Yuga Labs' marks in association with the RR/BAYC smart contract is why, like a domain name, the smart contract should be transferred to Yuga Labs so that Yuga Labs can retain some control of the use of its their marks.

**The RR/BAYC Smart Contract Is Immutably Linked To Yuga Labs:** Defendants' assertion regarding mutability of token trackers is immaterial and misleading because the token tracker for Defendants' infringing NFTs is not "mutable." Indeed, in response to the question directly after the response cited in Defendants' objection, Mr. Atalay explained that "[i]n this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance. So this isn't entirely relevant." Trial Tr. at 134:1-8. Mr. Solano testified to the same in his trial declaration. Solano Decl. (Dkt. 342) at ¶ 80 ("My understanding is that Defendants cannot change the name of their Etherscan contract bearing the BAYC Marks, nor can the RR/BAYC smart contract be destroyed."). Thus, the RR/BAYC smart contract will display "Bored Ape Yacht Club" and "BAYC" as the contract

name and the contract symbol, respectively, in perpetuity, and without a transfer of the smart contract to Yuga Labs, confusion from Defendants infringing NFTs will continue. *Id.* ("By transferring the RR/BAYC smart contract to Yuga Labs, the Defendants' association with the BAYC brand will no longer be 'forever' as Mr. Ripps proclaimed it would be."). Therefore, as Mr. Atalay testified, this misleading counterfactual is neither relevant nor material.

**The Bored Ape Yacht Club Images Are Not Public:** Yuga Labs' Bored Ape Yacht Club images are not available for "public" ownership. While anyone may *view* a Bored Ape Yacht Club NFT and the associated image (like any image on the internet), Yuga Labs goes to great lengths to combat the unauthorized use of its marks and images. *See* Trial Tr. at 82:1-2 (Ms. Muniz testifying that Yuga Labs has "a pretty robust process for takedowns. And we spend, at least in my tenure as CEO, a million dollars a year doing it."). Further, this objection is immaterial because this is a case for trademark, not copyright, infringement. And even so, the Court has already held that Defendants' direct appropriation of Yuga Labs' images favored a finding that there was a likelihood of confusion. SJ Order (Dkt. 225) at 11 ("Indeed, Defendants are selling the exact same product – NFTs that point to Yuga's BAYC images – and Defendants marketed their RR/BAYC NFTs using the same corresponding Ape ID number used by Yuga for the BAYC NFTs. Accordingly, the second *Sleekcraft* factor weighs in favor of Yuga."). Thus, regardless of whether the Bored Ape Yacht Club images are viewable by the public, it is impermissible to sell infringing NFTs using Yuga Labs' marks and creating a likelihood of confusion. This objection should be rejected as misleading and immaterial.

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Yuga's reference back to its responses in *supra* ¶ 7(a) do not provide adequate

grounds to accept Yuga's erroneous proposed finding of fact for the reasons provided in Yuga's objection and responses to the same paragraph.

Yuga's additional responses similarly fail because (1) Yuga has misrepresented the trial evidence and (2) that Mr. Atalay's testimony is clear that token trackers do not matter, (3) Defendants did not cause Etherscan and other website to attribute RR/BACY to Yuga, and (4) BAYC images are public.

**First,** Yuga has mischaracterized documents to improperly suggest that Mr. Ripps coded the RR/BAYC smart contract to "intentionally" infringe or cause confusion. The Etherscan pages that Yuga cites (JTX-600 and JTX-1146) clearly identify Mr. Ripps as the creator of the RR/BAYC contract and the Bored Ape images that Yuga cites (JTX-687 and JTX-688) are public images that are not contained in the RR/BAYC contract. Moreover, Mr. Ripps's uncontested declaration explains that the RR/BAYC collection arose when the NFT community asked Mr. Ripps to mint RR/BAYC NFTs after observing a public exchange between Mr. Ripps and Mr. McNelis where Mr. Ripps used NFTs to demonstrate provenance. Ripps Decl. ¶ 73-81 (Dkt. 346) (uncontested). This history does not suggest intentional infringement.

**Second,** Mr. Atalay clearly and unequivocally testified at trial that token trackers/token names are not used to identify NFTs. If there was anything wrong with Mr. Atalay's admission, then Yuga should have rehabilitated the witness on re-direct. Yuga did not. He admitted that using token names/token trackers to distinguish NFTs "would be a fairly weak way to do so because often those things are mutable. They can be changed after the fact. Also, there's no guarantee of uniqueness." Trial Tr. [Atalay] 133:12-23. Mr. Atalay admitted consumers of NFTs rely on marketplaces or check smart contract addresses. Trial Tr. [Atalay] 135:2-25.

**Third,** Defendants did not cause Etherscan and other websites to attribute the RR/BAYC collection to Yuga. Mr. Ripps explained, in his uncontested declaration, that the smart contract was coded so that it would be specifically attributable to him

1  through his personal smart wallet and unique smart contract address.  Ripps Decl. ¶ 89
2  (Dkt. 346).  This information was always coded into the RR/BAYC contract, giving a
3  surefire way to know that RR/BAYC NFTs wascreated by Mr. Ripps.

4        Third party websites, such as Etherscan, always displayed the RR/BAYC
5  collection in a manner that disclosed Mr. Ripps's unique personal wallet (either by
6  name or by alphanumeric code verifiable on Etherscan itself) and also disclosing the
7  unique smart contract address for the RR/BAYC collection.   As Mr. Atalay admitted,
8  it is the unique smart contract address that is critical to identifying NFTs.  Trial Tr.
9  [Atalay] 135:2-25.   Moreover, it is undisputed that Defendants do not own or operate
10 Etherscan or any of the other third-party websites that displayed information about
11 RR/BAYC NFTs.   Defendants cannot be responsible for the alleged actions of third
12 parties, especially when the RR/BAYC code provided a definite source identifier.

13       **Fourth,** The RR/BAYC collection is not immutably linked to Yuga.  In fact, it
14 is not linked to Yuga at all because its code show it was minted from Mr. Ripps's
15 wallet and contains a unique smart contract address.  Ripps Decl. ¶ 89 (Dkt. 346).

16       **Fifth,** the evidence at trial showed that the BAYC digital images are public.
17 Mr. Hickman's unrebutted trail testimony explained that the images are public, which
18 is why it is possible for RR/BAYC and many other NFT collection to point to those
19 digital images.  Trial Tr. [Hickman] 222:10-22.  Yuga elected to not cross-examine
20 Mr. Hickman on this testimony.  Further. Yuga presented no evidence at trial to rebut
21 or contest this testimony—and Yuga's counter-factual arguments after the matter
22 cannot serve a basis for ignoring the clear trial evidence on this issue.  Moreover, as
23 Mr. Hickman clarified to this Court, Defendants are not selling images but instead are
24 selling a record on the blockchain associated with Defendants' and their protest of
25 Yuga and its use of offensive imagery.

| | | |
|---|---|---|
| Dated: October 5, 2023 | | WILMER CUTLER PICKERING HALE AND DORR LLP |

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

Dated: October 5, 2023     FENWICK & WEST LLP

By: /s/ *Eric Ball*
Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

# ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000