Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Finding of Fact No. 7(d), lines 3:20-23** <br><br> Judge: Hon. John F. Walter |

| | |
|---|---|
| 1 | MELISSA L. LAWTON (CSB No. 225452) |
| 2 | mlawton@fenwick.com |
| | FENWICK & WEST LLP |
| 3 | 228 Santa Monica Boulevard |
| | Santa Monica, CA  90401 |
| 4 | Telephone:     310.434.4300 |
| 5 | Attorneys for Plaintiff |
| 6 | YUGA LABS, INC. |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | Case No. 2:22-cv-04355-JFW-JEM                                    DEFENDANTS' OBJECTIONS |

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

**Plaintiff's Disputed Post Trial Finding of Fact No. 7(d), lines 3:20-23:**

"Defendants are selling the exact same product – NFTs that point to Yuga Labs' BAYC images – and Defendants marketed their RR/BAYC NFTs using the same corresponding BAYC Ape ID number used by Yuga Labs for the BAYC NFTs." SJ Order at 11; Dkts. 342 ¶37; 392 at 56:3-10, 221:16-222:24; 396 at 169:4-6, 184:14-186:19; JTX-44.2; JTX-669; JTX-686.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial showed that the RR/BAYC collection is not the "exact same product" as Yuga NFTs and is more accurately described as the opposite of Yuga's NFTs.  The RR/BAYC project a satire intended to protest NFTs linked to what Defendants believed were racist imagery.  Ripps Decl. ¶¶ 87-94 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 97-103 (Dkt. 344); Hickman Decl. ¶¶ 62-66 (Dkt. 345). The RR/BAYC NFTs included verifiably unique NFTs with digital pointers to Bored Ape images, which "are public" and "available for anyone to navigate to on the Internet." Trial Tr. [Hickman] 222:15-16.  The RR/BAYC NFTs were a "receipt that says I committed to this protest that points to the same public [image] that a lot of different collections point to including Yuga Labs." Trial Tr. [Hickman] 222:18-21.

Defendants' internal communications confirm that RR/BAYC NFTs were the opposite products of Yuga's NFTs.  Mr. Ripps pointed out at JTX-801 that RR/BAYC "doesn't impact Yuga" and that "the clients buying rrbaycs are legit the opposite [of clients buying BAYC NFTs]." JTX-801-376; Hickman Decl. ¶ 95(b) (Dkt. 345).  And reserving of RR/BAYC NFT on rrbayc.com, where more than 80% of reservations occurred, required reading a clicking through a disclaimed stating that "By purchasing

1   this Ryder Ripps artwork in the form of an NFT, you understand that this is a new
2   mint of BAYC imagery, recontextualizing it for educational purposes, as protest and
3   satirical commentary." Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086.
4          Yuga also incorrectly relies on the law of the case doctrine by citing to this
5   Court's summary judgment order.  The "law of the case doctrine does not apply to
6   pretrial rulings **such as motions for summary judgment**." *Shouse v. Ljunggren*, 792
7   F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d
8   1076, 1088 (9th Cir. 2014).
9          Yuga also relies on the Declaration of Greg Solano to argue that Yuga owns the
10  asserted marks.  But Mr. Solano's testimony was not credible given the many false
11  and misleading statements contained in his declaration, as well as his repeated
12  impeachment at trial.  For example, Mr. Solano was also forced to concede on cross
13  examination that his sworn declaration included a false statement claiming that
14  "Defendants continue to receive royalties or creator fees from sales on secondary
15  marketplaces."  Trial Tr. [Solano] 48:15-49:4; *see also* Trial Tr. [Solano] 40:3-14;
16  Trial Tr. [Solano] 38:14-16; Trial Tr. [Solano] 38:17-19.  Mr. Solano also lacks
17  credibility as a result of his repeated impeachment at trial. Solano Decl.; Trial Tr.
18  [Solano] 32:19-33:11; *id*. at 34:9-19.
19         Yuga also misleadingly cites to the trial testimony of Mr. Hickman to argue that
20  RR/BAYC NFTs were the same products as Yuga's NFTs because they point to the
21  same digital images.  But Mr. Hickman made clear during trial that (1) RR/BAYC
22  NFTs do not involve the sale of digital images, (2) there are numerous other NFT
23  collections that point to the Bored Ape digital images, and (3) the Bored Ape digital
24  images are public and not owned by Yuga. Trial Tr. [Hickman] 222:10-22.
25         Yuga also cites to Mr. Ripps's deposition designation, but again refers to
26  deposition testimony that does not show the RR/BAYC NFTs are the same product.
27  Yuga cites to Dkt. 396 at 396 at 169:4-6 in which Mr. Ripps testifies about his
28

conversation with someone reserving a RR/BAYC NFT.  In the counter-designation, Mr. Ripps explains that this consumer is reserving an RR/BAYC NFT for the purpose of protesting Yuga.  Dkt. 396 at 169:21-25; *see also* Dkt. 396 at 169:8-17.

The counter-designation to Yuga's citation to Dkt. 396 at 184:14-186:19 makes clear that the two NFT collection are not the same product.  Mr. Ripps testified that "… I feel like I've kind of laid out what the artwork of RR/BAYC is.  It's many things:  It's an NFT; it's a performance; it's a statement.  So it's – it's a lot of things." Dkt. 396 at 193:8-13.  Critically, Yuga's NFTs are not a performance or a statement.

The exhibits to which Yuga cites similarly fail to show that RR/BAYC NFTs are the same as Yuga NFTs.   JTX-44 is an internal communication in which Mr. Hickman discusses how RR/BAYC NFTs have different IDs than Yuga's NFTs.  JTX-669 is a Twitter post from Mr. Ripps saying that he will mint RR/BAYC NFTs for .1 ethereum, which is price that is nearly 1/1,000th of the price Yuga NFTs sold for.  And JTX-686 is a document that Yuga's attorneys created for purposes of this litigation (Trial Tr. [Solano] 46:9-11) and involves cropped images of an unidentified third-party selling an RR/BAYC NFT in manner that labels the sale with "RR/BAYC" (Trial Tr. [Solano] 46:16-24; *see* JTX-686).

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.

Defendants dispute an exact quote from the Court, underscoring their bad-faith efforts to multiply the cost of this litigation by rehashing decided issues.

Defendants' objection should be rejected for the same reasons discussed *supra*, specifically:  (1) the objection seeks to relitigate issues already adjudicated by the Court (¶ 7(a)), (2) Defendants' infringement was not an art project (¶ 7(a)), (3) Yuga Labs' Bored Ape Yacht Club images are not public (¶ 7(c)), (4) Yuga Labs did not

1  authorize Defendants' infringement and, to the contrary, had implemented a robust
2  enforcement program to shut down infringers like Defendants (¶ 7(a)), and (5)
3  Defendants failed to impeach Mr. Solano's accurate testimony (¶ 7(a)).  Additionally,
4  Defendants' cherry-picked communications with alleged consumers does not negate
5  the confusion in the marketplace (*supra* ¶ 4).
6        Additionally, as described below, Defendants' objection should be rejected
7  because (1) Defendants' definition of an NFT is artificially narrow, (2) actual
8  confusion is not necessary and post-sale confusion is actionable, and (3) Defendants
9  sold their NFTs at the same price that Yuga Labs has sold its NFTs.
10        **Defendants' Definition Of An NFT Is Too Narrow:**  An NFT is more than
11  merely a proof of ownership.  The Court has already found as much on Yuga Labs'
12  Motion for Summary Judgment, for example, writing that "viewing the NFTs as
13  ownership receipts treats the NFTs as mere written instructions while ignoring their
14  documented commercial value."  SJ Order (Dkt. 225) at 7.  NFTs are sold
15  "specifically for their connection to a particular brand, creator, or associated creative
16  work."  *Id.* at 8.  Moreover, "'individuals do not purchase NFTs to own a digital deed
17  divorced from any other asset; they buy them precisely so that they can exclusively
18  own the content associated with the NFT.'"  *Id.* (*quoting* *Hermès International v.*
19  *Rothschild*, No. 22-CV-384-JSR, 2023 WL 1458126, at *5 (S.D.N.Y. Feb. 2, 2023))
20  (cleaned up).
21        The evidence introduced at trial also establishes that Defendants' definition of
22  an NFT is too narrow.  Mr. Solano explained that NFTs "are units of data stored on a
23  blockchain that are created to transfer ownership of either physical things or digital
24  media—here digital images of cartoon apes. The term 'NFT' commonly refers to both
25  the token stored on the blockchain and the digital image with which it is associated."
26  Solano Decl. ¶ 2 n 1.  And Mr. Solano further testified that purchasers of BAYC NFTs
27  purchased for different reasons, including how the BAYC NFT image resonated with
28

them, showing that for some people an NFT includes the image associated with it. *Id.* ¶ 12. Mr. Atalay also testified that there is "probably more that you could say than that…" in reference to Defendants' limited definition. Trial Tr. at 127:9-13. Mr. Atalay went on to explain that NFTs include metadata and other data that is not metadata but may be on the blockchain. *Id.* 128:8-24.

**Post-Sale Confusion Supports The Court's Finding That Confusion Is Likely:** There is a clear likelihood of confusion as well, given Defendants' use of the same marks and images, which the Court already determined. SJ Order (Dkt. 225) at 10-13; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'") (citation omitted). In any event, actual confusion is not required; and the Court already found Defendants' use of BAYC Marks to be infringing. SJ Order (Dkt. 225) at 12. Yuga Labs is thus entitled to Defendants' profits due to their infringing activity regardless of whether purchasers were actually confused. See *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one").

**Whether Defendants' Infringing NFTs Often Sell For Less Than Authentic Bored Ape Yacht Club NFTs Re-Sale For Is Immaterial:** The difference in price between re-sales of authentic Bored Ape Yacht Club NFTs and the mint price for Defendants' fakes did not prevent confusion in the marketplace. To begin, the Court has already found a likelihood of confusion. SJ Order (Dkt. 225) at 13 ("Therefore, the Court easily concludes that Defendants' use of Yuga's BAYC Marks was likely to cause confusion."). Nonetheless, as Mr. Solano explained, authentic Bored Ape Yacht

1. Club NFTs were launched at a price similar to the initial price of Defendants'
2. infringing NFTs.  Trial Tr. at 58:9-11 ("The original Bored Apes sold for $200.  And
3. we've done other sales over the past two years that are for lower prices."); *see also*
4. Solano Decl. (Dkt. 342) at 4 ("We initially sold each BAYC NFT for .08 Ether, which
5. was approximately $169 to $236 USD, based on the price of Ether at the time.").
6. Therefore, that some Bored Ape Yacht Club NFTs re-sell for larger sums is
7. immaterial – those consumers who might know the re-sale price of an authentic
8. BAYC also likely know there is a history of these NFTs selling for prices near the
9. initial sales price of Defendants' infringing NFTs.  Consumers could be, and indeed
10. were, confused.

**Defendants' Reply:**

12. Defendants expressly reserve and reassert all replies made in the parties' Joint
13. Statement Regarding Objections (Dkt. 420).
14. Yuga's reference back to its responses in *supra* ¶ 4, 7(a), 7(c) do not provide
15. adequate grounds to accept Yuga's erroneous proposed finding of fact for the reasons
16. provided in Defendants' objections and replies to those respective paragraphs.
17. Yuga's additional responses to this objection similarly fail because (1)
18. Defendants use the definition of NFTs advance by both Mr. Atalay and Mr. Hickman,
19. (2) none of Defendants profits were attributable to confusion, (3) Defendants did not
20. sell RR/BAYC NFTs as the same price as Yuga NFTs, (4) and Defendants did not
21. "cherry-pick" communications from actual RR/BAYC purchasers.
22. ***First,*** Yuga incorrectly argues that an NFT is more than just a certificate of
23. ownership of unique data on a blockchain (which is essentially a digital spreadsheet).
24. Yuga's contention is inconsistent with the trial record.   Yuga's Chief Technical
25. Officer confirmed at trial that an NFT is a certificate of ownership.  Trial Tr. [Atalay]
26. 127:9-16.  Mr. Atalay's testimony, and the fact than an NFT is simply a certificate of
27. ownership of data on the blockchain and does not include associated public images,

1  was further corroborated by Mr. Hickman.  Trial Tr. [Hickman] 222:10-21. Thus, the
2  only two engineers that testified during trial provided the Court with the same
3  substantive testimony.  Yuga attempts to rebut this evidence by citing to the
4  Declaration of Greg Solano.  But Mr. Solano is not credible given the many false and
5  misleading statements contained in his declaration.

6      ***Second,*** the trial evidence showed that there was no confusion or post-sale
7  confusion associated with the RR/BAYC collection, meaning that none of
8  Defendants' profits are attributable to infringement. Defendants received voluminous
9  correspondence from RR/BAYC participants—none of which indicated any confusion
10 from primary sales or secondary sales.  Ripps Decl. ¶¶ 196-207 (Dkt. 346)
11 (uncontested); Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-
12 2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599.  Neither
13 Defendants nor Mr. Hickman are aware of a single instance of confusion.  Ripps Decl.
14 ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224
15 (Dkt. 344); Trial Tr. [Hickman] 219:13-19.  Yuga also could not identify a single
16 person who obtained an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr.
17 [Muniz] 85:3-7.  Mr. Solano also could not identify a single person that ever bought
18 an RR/BAYC NFT believing it was a Yuga NFT.  Trial Tr. [Solano] 18:23-19:1.

19     Defendants also took multiple steps to make clear that the RR/BAYC collection
20 was not related to Yuga in any way including an artists statement on rrbayc.com
21 (Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt.
22 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10) and a
23 disclaimer (Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr.
24 [Muniz] 83:10-13).  Mr. Ripps insisted on these additional steps so that the artistic
25 purpose of the work would be clear.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

26     ***Third,*** RR/BAYC NFTs sold for approximately 1/1000th the price of Yuga's
27 NFTs.  Cahen Decl. ¶ 225 (Dkt. 344).  And while the significant difference in price
28

alone was likely enough to guarantee no confusion, Defendants still took multiple steps noted above to make clear that the RR/BAYC collection was not related to Yuga, including extensive online discussion confirming and raising awareness about the satirical nature of the RR/BAYC project.  Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

*Fourth,* Yuga falsely states that these Defendants relies on "cherry-picked communications" from actual purchasers of RR/BAYC NFTs.  Mr. Ripps testified in his declaration: "I received *hundreds of letters* thanking me for creating the RR/BAYC artwork and for standing up against a corporation that had used hateful references in its brand" and then went on to give eight specific examples of the letters he received.  Ripps Decl. ¶¶ 196-207 (uncontested) (emphasis added).

Yuga has also failed to present evidence disputing the fact that none of these correspondences indicated that commissions or secondary sales were due to confusion.  Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested).

*Fifth*, Yuga's reliance on experts to make false accusations are not credible. Yuga's citation to Ms. Kindler's declaration does not support their allegations that Defendants provided "hundreds of refunds" or that those alleged refunds indicate confusion.  *See* Kindler Decl. ¶ 44 (Dkt. 338) ("When calculating Defendants' profits, transactions that were refunded through Defendants' RSVP smart contract were omitted. Specifically, transactions that were refunded through the RefundIssued and RSVPCanceled functions in the RSVP smart contract were not included in my calculation of profits. To my knowledge, Defendants have not produced any records of other refunds related to the sale of RR/BAYC NFTs.").  Mr. Ripps never received a refund request from anyone stating they were confused or thought that they were reserving a Yuga product.  Ripps Decl. ¶ 122 (Dkt. 346) (uncontested).

*Lastly*, Ms. O'Laughlin's survey evidence is unreliable for the reasons provided in *infra* ¶ 32.

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ *Louis W. Tompros* |
| 5 | | Louis W. Tompros (*pro hac vice*) louis.tompros@wilmerhale.com **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 6 | | 60 State Street |
| 7 | | Boston, MA 02109 Telephone: (617) 526-6000 |
| 8 | | Fax: (617) 526-5000 |
| 9 | | Attorneys for Defendants |
| 10 | | RYDER RIPPS and JEREMY CAHEN |
| 11 | | |
| 12 | | |
| 13 | Dated: October 5, 2023 | FENWICK & WEST LLP |
| 14 | | |
| 15 | | By: /s/ *Eric Ball* |
| 16 | | Eric Ball eball@fenwick.com |
| 17 | | **FENWICK & WEST LLP** 801 California Street |
| 18 | | Mountain View, CA 94041 Telephone: (650) 988-8500 |
| 19 | | Fax: (650) 938-5200 |
| 20 | | Attorneys for Plaintiff |
| 21 | | YUGA LABS, INC. |

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000