| | |
|---|---|
| Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>Monica Grewal (*pro hac vice*)<br>monica.grewal@wilmerhale.com<br>Scott W. Bertulli (*pro hac vice*)<br>scott.bertulli@wilmerhale.com<br>Tyler Carroll (*pro hac vice*)<br>tyler.carroll@wilmerhale.com<br>**WILMER CUTLER PICKERING<br>  HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Fax: (617) 526-5000<br><br>Derek Gosma (SBN 274515)<br>derek.gosma@wilmerhale.com<br>Henry Nikogosyan (SBN 326277)<br>henry.nikogosyan@wilmerhale.com<br>**WILMER CUTLER PICKERING<br>  HALE AND DORR LLP**<br>350 South Grand Ave., Suite 2400<br>Los Angeles, CA 90071<br>Telephone: (213) 443-5300<br>Fax: (213) 443-5400<br><br>Attorneys for Defendants<br>*Ryder Ripps and Jeremy Cahen* | ERIC BALL (CSB No. 241327)<br>eball@fenwick.com<br>KIMBERLY CULP (CSB No. 238839)<br>kculp@fenwick.com<br>FENWICK & WEST LLP<br>801 California Street<br>Mountain View, CA  94041<br>Telephone:  650.988.8500<br>Facsimile:   650.938.5200<br><br>MOLLY R. MELCHER (CSB No. 272950)<br>mmelcher@fenwick.com<br>ANTHONY M. FARES (CSB No. 318065)<br>afares@fenwick.com<br>ETHAN M. THOMAS (CSB No. 338062)<br>ethomas@fenwick.com<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA  94104<br>Telephone:  415.875.2300<br><br>Additional Counsel listed on next page<br><br>Attorneys for Plaintiff<br>YUGA LABS, INC. |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>              Plaintiff,<br><br>     v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>              Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(h), lines 4:22-25**<br><br>Judge:  Hon. John F. Walter |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Case No. 2:22-cv-04355-JFW-JEM                                                  DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

**Plaintiff's Disputed Post Trial Finding of Fact No. 7(h), lines 4:22-25:**

<u>Defendants developed and marketed an NFT marketplace, Ape Market, where consumers could, as Defendants intended, purchase and sell RR/BAYC NFTs alongside BAYC NFTs, and which used BAYC Marks in a manner likely to confuse consumers.</u> *See* Dkts. 337 ¶9; 392 at 136:23-138:5; JTX-696; JTX-806-JTX-809.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The trial evidence did not show that Defendants developed an NFT marketplace that was likely to confuse consumers. ApeMarket was never released, the development of the website was never complete, and there was never a functioning marketplace. Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested). Mr. Ripps had never decided on what he wanted ApeMarket to be. Ripps Decl. ¶ 178 (Dkt. 346) (uncontested). Mr. Cahen and Mr. Hickman confirmed that ApeMarket was in the ideation stage. Cahen Decl. ¶¶ 258-259 (Dkt. 344); Trial Tr. [Hickman] 211:21-22.

Moreover, the ideation process for ApeMarket involved extensive discussion on how to ensure that apemarket.com would not be confusing. Mr. Cahen discussed the idea of using a wrapper on apemarket.com to determine whether it would ensure that website was clear for users. JTX-801.185. Mr. Cahen also discussed with the RR/BAYC team the idea of using labels on apemarket.com. *See* JTX-801-196.

Yuga misleadingly cites to the trial testimony of Mr. Hickman. The portion of the transcript that Yuga relies on (Trial Tr. [Hickman] 211:17-212:24) involves questions regarding Defendants desire to add a friction step to ApeMarket to ensure that the design of the website would not cause confusion. Mr. Hickman explains,

1  "This is our attempt to make it as clear as possible.  We are having discussion on how
2  to make sure it was very clear for users."  Trial Tr. [Hickman] 212:22-24.

3  Yuga also relies on the testimony of Mr. Atalay where he falsely states that the
4  marketplace was ready to be deployed.  Mr. Atalay made this testimony having no
5  personal knowledge about the RR/BAYC team's work in connection with ApeMarket,
6  on how it was still in the ideation stage, on how Mr. Ripps had not even decided what
7  apemarket.com would be, and that Defendants never actually released ApeMarket.

8  Yuga also cites to several exhibits that fail to show that Defendants designed
9  ApeMarket to be confusing to users.  For example, JTX-696 is not apemarket.com but
10 is instead the ApeMarket Twitter page (which Yuga has not alleged in this case as
11 infringing any of the asserted marks).  JTX-696 does not show what apemarket.com
12 displayed, what functionalities it had, and whether it has ever had any content that was
13 confusing in any way.  ApeMarket was never released (Trial Tr. [Muniz] 85:11-12;
14 [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346)
15 (uncontested) and no evidence shows that the website domain apemarket.com
16 displayed anything that would confuse NFT collectors.  JTX-806 is the source code
17 for the unreleased ApeMarket that Mr. Ripps never approved.  And JTX-809 is a
18 screenshot of mock-up of apemarket.com that Mr. Ripps did not approve.

19 **Plaintiff's Response:**

20 Given that "Defendants expressly reserve and reassert all objections made in its
21 Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and
22 reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless,
23 Defendants' objection should be rejected because (1) the record shows that Ape
24 Market was ready to launch, (2) Defendants promoted Ape Market and the RR/BAYC
25 NFTs through the @ApeMarketplace Twitter account, and (3) Defendants' disclaimer
26 demonstrates the likelihood of confusion and did nothing to dispel confusion.

27
28

|   |   |
|---|---|
| 1 | **Evidence Admitted At Trial Confirms That Ape Market Was Ready To** |
| 2 | **Launch:**  Despite Defendants' attempts to argue otherwise, the evidence shows that |
| 3 | Ape Market was ready to launch.  *See* Trial Tr. at 137:23-24 ("The code was in such a |
| 4 | state of completion that it was operational."); *see also* JTX-807; JTX-808; JTX-809. |
| 5 | Indeed, at trial Mr. Cahen confirmed that Ape Market was ready to launch within a |
| 6 | matter of days.  Trial Tr. at 247:10-12 ("Q:  And there was a ready-to-go Ape Market |
| 7 | by February – excuse me – by June 24, 2022? A:  Among other things, yes[.]").  Mr. |
| 8 | Cahen later confirmed that he had "no reason to doubt" that the marketplace could be |
| 9 | launched within a matter of 48 hours.  *Id.* at 248:7-9.  That fact is also supported by |
| 10 | documentary evidence submitted at trial.  See JTX-1027 (post from Ape Market |
| 11 | twitter account advertising that "ApeMarket.com will go live within 24 hours of the |
| 12 | final mint, which we will announce shortly"); *see also* JTX-801.370 (Mr. Lehman |
| 13 | stating "[s]hould finish minting between 8-10 hours from now . . . so per our 24 hour |
| 14 | commitment Friday afternoon would be the release" and Mr. Cahen responding "I |
| 15 | think it makes sense to launch a bit earlier imo if we are comfortable doing so."); |
| 16 | JTX-938 (Tweet from Mr. Cahen stating "[w]e built a marketplace for every |
| 17 | YugaLabs asset . . . [a]nd we got sued for it.").  Ape Market existed as an entity |
| 18 | actively marketing on social media, and the actual online marketplace was ready to |
| 19 | launch. |
| 20 | **The @ApeMarketplace Twitter Account And The Ape Market NFT** |
| 21 | **Marketplace Are Clearly Related And Both Were Used To Promote RR/BAYC:** |
| 22 | Defendants created the @ApeMarketplace Twitter account to promote the Ape Market |
| 23 | marketplace and their infringing RR/BAYC NFTs.  The fact that the Twitter handle |
| 24 | solely controlled by Mr. Cahen contains "ApeMarket" alone demonstrates the |
| 25 | connection between the Twitter account and marketplace, but the Tweets from the |
| 26 | account confirm that Defendants used @ApeMarketplace to promote Ape Market. |
| 27 | Cahen Depo. Designations (Dkt. 395) at 126:5-7 (Q:  And you are the sole operator of |
| 28 |   |

the Ape Marketplace account? A: That is correct, yes."). One such Tweet on June 20 asks, "Are you ready for ApeMarket.com, anon?" and another on June 13 teases the release of Ape Market stating "Get Ready" alongside a screenshot of Ape Market. JTX-696. And Mr. Cahen lied at trial when, under oath, he stated that he did not "plan to stimulate the sales of RR/BAYC NFTs by teasing the future release of ApeMarket." Trial Tr. at 234:15-18. Mr. Cahen tweeted from @ApeMarketplace a link to reserve an RR/BAYC on multiple occasions and on June 2 he tweeted that "[l]isting requires holding RR/BAYC." JTX-696. Defendants' own internal communications confirm the lie. On June 1 Mr. Cahen stated, "my goal for today is to create an announcement that will create hype and volume, we want to mint out the remainder of that collection." JTX-801.221. On that same day Mr. Cahen tweeted from @ApeMarketplace a screenshot of Ape Market with an image of an RR/BAYC and a link to reserve an RR/BAYC. JTX-696. This was a direct attempt to use the prospect of Ape Market to promote Defendants' infringing NFTs. Defendants' claim that Ape Market, @ApeMarketplace, and RR/BAYC are not connected is obviously false. The Tweets in JTX-696 repeatedly show the look, functionality, and intent of Ape Market and the infringing RR/BAYC NFTs within Ape Market.

**Defendants' "Disclaimer" Does Not Negate The Court's Finding That Consumers Were Likely To Be Confused:** With respect to the supposed disclaimer on rrbayc.com, "the fact that Defendants concluded it was necessary to include a disclaimer demonstrates their awareness that their use of the BAYC Marks was misleading." SJ Order (Dkt. 225) at 17. Defendants knew they were infringing and creating confusion, as they acted contrary to their attorneys' advice. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"). Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. (Dkt. 342) ¶ 70; see also Ripps Decl.

(Dkt. 346) ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

Defendants also knew that what they were doing was likely to lead to a lawsuit. For instance, Mr. Ripps asked for a reference to his limited liability company, Live9000 LLC, to be added to the rrbayc.com because he did not "want to get sued personally." JTX-803.57. And, Mr. Lehman was still advocating for a "new logo and branding direction in light of the trademark thing" to Mr. Cahen before they learned of this lawsuit (JTX-918.00035) because "I don't want to get sued, OR, if get do get sued, for us to look really sympathetic to everyone" (JTX-918.0036). That Defendants took some steps to try to conceal their intent when they were inevitably sued does not make the infringing activity less confusing; it just demonstrates their culpability.

The public was not required to read and click a disclaimer. Indeed, even on rrbayc.com, Defendants could not enforce any requirement that users "read" what Mr. Hickman and Mr. Lehman referred to as a "wall of text" that they agreed "no one" would read (JTX-801.128). And, this wall of text did nothing to dispel confusion amongst the general public when every single RR/BAYC NFT sold (or that ever will sell in the future) uses the trademarks BORED APE YACHT CLUB and BAYC— without any alleged disclaimer. Atalay Decl. (Dkt. 337) at ¶¶ 3-6; Trial Tr. at 133:12-134:20; JTX-600; JTX-1146. Defendants also did not include any similar disclaimer on Foundation or other secondary marketplaces, nor was there one on Etherscan. The majority of the sales of RR/BAYC NFTs have been on secondary marketplaces where there was no disclaimer. Kindler Decl. (Dkt. 338) at ¶ 69; JTX-801.376 ($10 million impact).

Defendants have no survey, or material consumer evidence, that users of the infringing rrbayc.com website read any disclaimer. This is not surprising since the vast majority of sales occurred outside of the rrbayc.com website. Indeed, Mr. Ripps

1 admitted that all sales went through Foundation—where there was no disclaimer. Ripps Depo. Designations (Dkt. 396) at 82:8-13.

Finally, every single RR/BAYC NFT sold (or that ever will sell in the future) uses the trademarks BORED APE YACHT CLUB and BAYC. Atalay Decl. (Dkt. 337) at ¶¶ 3-6; Trial Tr. at 133:12-134:20; JTX-600; JTX-1146. Indeed, a user today linking to Etherscan will not see Ryders Ripps' Bored Ape Yacht Club, but will see Bored Ape Yacht Club and will not see RR/BAYC but will see BAYC. Trial Tr. at 52:6-21, 53:14-54:22, 138:6-20; JTX-117; Atalay Decl. ¶¶ 3-6; Solano Decl. ¶¶ 46-47, 78; *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1078 (9th Cir. 2006) (finding that disclaimers on packaging, but not on infringing product, did "nothing to dispel post-purchase confusion). Defendants' claimed disclaimer is non-existent to ineffective at best.

### Defendants' Reply:

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Yuga's responses to Defendants' objection fails because (1) the trial evidence shows that ApeMarket was in the ideation stage, (2) Defendants did not use ApeMarket to pomote the sale of RR/BAYC NFTs, and (3) Defendants' disclaimer shows that Defendants acted in good faith and that they took steps to decrease any likelihood of confusion.

***First,*** Yuga incorrectly argues that ApeMarket was ready to launch. Mr. Cahen repeatedly testified that ApeMarket was in the "ideation phase" (Trial Tr. [Cahen] 231:21-232:3) and that the team "never agreed on what ApeMarket would be" (Cahen Decl. ¶¶ 258-259 (Dkt. 344). Mr. Hickman also corroborated that ApeMarket was in the ideation phase, explaining "This is a discussion, an ideation of different ideas, none of which were actualized." Trial Tr. [Hickman] 211:19-22.

Yuga tries to rebut this clear evidence that ApeMarket was in the ideation stage

1  by mischaracterizing Mr. Cahen's testimony as saying that ApeMarket was "ready to
2  go" by June 24, 2022.  But what Mr. Cahen actually said is that he did not know if
3  ApeMarket was "ready to go" by June 24, 2022.  Mr. Cahen then also stated that
4  "with the quality of engineers that I work with, we could pretty much deploy anything
5  within reason within a 48-hour window" and ApeMarket did not require much work in
6  the first place as it used open-source code.  Trial Tr. [Cahen] 247:1-17.

7  And finally, ApeMarket was never released, and there was no evidence that the
8  webpage apemarket.com was a functioning website.  Trial Tr. [Muniz] 85:11-12;
9  [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346).

10  ***Second,*** the trial evidence showed that Defendants did not use ApeMarket to
11  stimulate sales of RR/BAYC NFTs.  Yuga cross-examined Mr. Cahen about this very
12  topic and was unable to show that Defendant used ApeMarket with the intention to
13  stimulate sales of RR/BAYC NFTs.  Mr. Cahen confirmed that Yuga's allegation is
14  "theoretically impossible because doing that – creating an NFT marketplace would
15  offer absolutely no functionality in terms of minting an already existing NFT contract"
16  and he also testified "no, I did not" in response to Yuga's question on whether he used
17  ApeMarket to stimulate sales. Trial Tr. [Cahen] 231:8-232:6.  Yuga was not able to
18  rebut or impeach Mr. Cahen's testimony at trial.

19  The evidence that Yuga cites does not rebut this trial testimony.  Yuga cites to
20  JTX-696 to incorrectly argue that apemarket.com was used to promote and sell
21  RR/BAYC NFTs. JTX-696 does not show what apemarket.com displayed, what
22  functionalities it had, and whether it has ever promoted or sold RR/BAYC NFTs.  In
23  fact, ApeMarket was never released (Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-
24  218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested) and
25  no evidence shows that the website domain apemarket.com was ever used for the
26  promotion or sale of anything.  The ApeMarket Twitter page was tied, as Mr. Cahen
27  testified at trial, to the criticism of the RR/BAYC project, by posting links to
28

rrbayc.com which contained a length artistic statement and incorporated gordongoner.com, which reveals Yuga use of racist imagery in length.

**Third,** Yuga fails to rebut that Defendants use of disclaimer is evidence of their good faith and was an act that reduced any likelihood of confusion.  Yuga incorrectly cites to this Court's summary judgment order because the "law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment." *Shouse v. Ljunggren,* 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard,* 744 F.3d 1076, 1088 (9th Cir. 2014).

Yuga incorrectly argues that the disclaimer "did nothing to dispel confusion." This is inaccurate and unfounded.  As Mr. Ripps's testimony makes clear, the rrbayc.com website "required collectors to acknowledge and accept a disclaimer before they were able to commission an RR/BAYC NFT."  Ripps Decl. ¶ 105 (Dkt. 346) (uncontested).  That disclaimer stated "By purchasing this Ryder Ripps artwork in the form of an NFT, you understand that this is a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary. You cannot copy an NFT. Please see the RR/BAYC contract here to verify provenance: Etherscan. By reserving your RR/BAYC you are purchasing a hold for an order that will be fulfilled or rejected/refunded by Ryder within 24h (Depending on the vibe of your wallet and the mood of Ryder at the time)." *Id.* at ¶ 106.

Further, it is apparent that NFT collectors read the disclaimer because Defendants successfully prevented any confusion.  As explained in *supra* ¶¶ 4, 7(a), and 7(c), the trial evidence showed that (1) there was not even a single instance of actual confusion, (2) Defendants received voluminous correspondence from actual consumers confirming that they purchased RR/BAYC NFTs to protest Yuga and were not confused, (3) Defendants did not have the ability to put a disclaimer on third-party secondary markets, and (4) Defendants made *de minimis* profits on secondary sales regardless.

| | | |
|---|---|---|
| 1 | Dated:  October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ *Louis W. Tompros* |
| 5 | | Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>**WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 6 | | |
| 7 | | 60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Fax: (617) 526-5000 |
| 8 | | |
| 9 | | Attorneys for Defendants<br>RYDER RIPPS and JEREMY CAHEN |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | Dated:  October 5, 2023 | FENWICK & WEST LLP |
| 14 | | |
| 15 | | By: /s/ *Eric Ball* |
| 16 | | Eric Ball<br>eball@fenwick.com<br>**FENWICK & WEST LLP** |
| 17 | | 801 California Street<br>Mountain View, CA  94041<br>Telephone: (650) 988-8500<br>Fax: (650) 938-5200 |
| 18 | | |
| 19 | | |
| 20 | | Attorneys for Plaintiff<br>YUGA LABS, INC. |
| 21 | | |

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000