Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 7(h), lines 4:26-28**<br><br>Judge:  Hon. John F. Walter |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:      310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

---

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

**Plaintiff's Disputed Post Trial Finding of Fact No. 7(h), lines 4:26-28:**

To stimulate sales of RR/BAYC NFTs, Defendants advertised that consumers were required to purchase one of Defendants' RR/BAYC NFTs to use Ape Market. JTX-696; Dkt. 396 at 46:2-7.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial showed that Defendants did not use ApeMarket to stimulate sales of RR/BAYC NFTs.  Yuga cross-examined Mr. Cahen about this very topic and was unable to show any evidence during that cross-examination showing that Defendant used ApeMarket with the intention to stimulate sales of RR/BAYC NFTs.  Trial Tr. [Cahen] 231:8-232:6.

The evidence that Yuga cites does not rebut this trial testimony.  Yuga cites to JTX-696 to incorrectly argue that apemarket.com was used to promote and sell RR/BAYC NFTs.  JTX-696 is not apemarket.com but is instead the ApeMarket Twitter page (which Yuga has not alleged in this case as infringing any of the asserted marks).  JTX-696 does not show what apemarket.com displayed, what functionalities it had, and whether it has ever promoted or sold RR/BAYC NFTs.  ApeMarket was never released.  (Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested).  The ApeMarket Twitter page was tied, as Mr. Cahen testified at trial, to the criticism of the RR/BAYC project, by posting links to rrbayc.com which contained an artistic statement and incorporated gordongoner.com, which reveals Yuga use of racist imagery.  The deposition testimony of Mr. Ripps that Yuga cites does not address using ApeMarket to stimulate

1  sales of RR/BAYC NFTs but instead merely asked if Mr. Ripps ever made a statement

2  tying the release schedule for ApeMarket to the minting out of RR/BAYC NFTs.

3  **Plaintiff's Response:**

4  Given that "Defendants expressly reserve and reassert all objections made in its

5  Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and

6  reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless, Mr.

7  Cahen's testimony is contradicted by the evidence.  *Supra* ¶ 7(g).  His sworn

8  testimony that Defendants never used the prospect of Ape Market to mint out the

9  remainder of the RR/BAYC NFT collection is a lie.  JTX-801.185 ("Goal:  ***mint out***

10  ***the remainder of the collection*** + incentivize people to use the marketplace,

11  specifically the BAYC original side"); JTX-801.221 ("so basically my goal for today

12  is to create an announcement that will create hype and volume, ***we want to mint out***

13  ***the remainder of that collection*** [] thats our primary goal . . . I really want to tweet an

14  image like this today to create major hype and speculation [followed by image of Ape

15  Market webpage]"); JTX-801.144 ("One thing we can do to stimulate the rsvp

16  completing is to tease apemarket.com").

17  **Mr. Cahen's Testimony Is Not Credible:**  Mr. Cahen's self-serving testimony

18  is not credible, as demonstrated by its contradictions by the evidentiary record, other

19  testimony, and impeachment at trial.  Mr. Cahen's testimony was littered with

20  contradictions and demonstrated an attitude of disrespect towards the Court and these

21  proceedings.  For example, in his trial declaration, Mr. Cahen testified that the

22  ApeMarket marketplace was "just in the ideation phase."  Cahen Decl. (Dkt. 344) ¶

23  263.  However, at trial Mr. Cahen confirmed that there was a "ready-to-go Ape

24  Market by . . . June 24, 2022."  Trial Tr. at 247:10-12.  Mr. Cahen also confirmed that

25  he had "no reason to doubt" that the marketplace could be launched within a matter of

26  48 hours.  *Id.* at 248:7-9.  That fact is also supported by documentary evidence

27  submitted at trial.  *See* JTX-1027 (post from Ape Market twitter account advertising

28

1   that "ApeMarket.com will go live within 24 hours of the final mint, which we will
2   announce shortly").

3   Similarly, Mr. Cahen testified in his trial declaration that he "did not expect the
4   project would result in consumer confusion," Cahen Decl. (Dkt. 344) ¶ 155, however,
5   Mr. Cahen's communications in the Team ApeMarket discord chat demonstrate that
6   he was acutely aware of the likelihood of confusion.  *See* JTX-801.189 (Mr. Hickman
7   informing Mr. Cahen that it was "difficult to make the collections coexist" because
8   "they are the same art" and "same logos"); JTX-801.196 (Mr. Lehman noting, "we
9   should not under-estimate how confusing it is" and Mr. Cahen responding, "yeah.").
10  Not only was Mr. Cahen aware of the likelihood of confusion—he was apathetic to it.
11  His testimony at trial otherwise is not credible.

12  Mr. Cahen's testimony should also be given little weight due to his disrespect
13  for the Court and flagrant disregard of his obligation to be truthful under oath.  Indeed,
14  at trial Mr. Cahen repeatedly offered non-responsive rants in response to unrelated
15  questions.  *See, e.g.*, Trial Tr. at 237:14-238:1.  This approach is consistent with his
16  hostile and obstructive deposition misconduct.  *See, e.g.*, Cahen Depo. Designations
17  (Dkt. 395) at 80:5-7 ("Q:  What is one thing [RR/BAYC] could stand for? A:  It could
18  be Ronald Reagan bought apples yesterday, classy.  I don't know.").  Mr. Cahen's
19  lack of respect for the Court and the litigation process further underscores that he is
20  not credible.

21  Mr. Cahen also contradicted himself by claiming that he purchased a computer
22  to help create the RR/BAYC collection several months prior to the conception of the
23  project.  Cahen Decl. (Dkt. 344) ¶ 174.  Mr. Cahen tried to explain this at trial by
24  stating that the "project" began before May of 2022, Trial Tr. at 229:5-13, but his
25  latest tale contradicts the prior testimony by Defendants that they began working on
26  the RR/BAYC NFTs in May of 2022.  *See* Dkt. 200-3; Dkt. 200-4.  Defendants have
27  no problem changing the date of the conception of the project when convenient for

28

them.  When Defendants sought to skirt their discovery obligations and hide their communications about the real intent of their infringement, they claimed that the project began in May of 2022, but when they tried to claim expenses purportedly related to the project that were incurred months prior, they claim the project began in 2021.  Mr. Cahen either lied at trial or he lied to the Court during discovery.

Finally, in both his declaration and at trial, Mr. Cahen testified that none of the Defendants had ever used the term "BAYC v3" to refer to their infringing NFTs and that the name was used only after Yuga Labs sent DMCA takedown notices to combat the infringement.  Cahen Decl. (Dkt. 344) ¶ 253; Trial Tr. at 252:2-253:8.  This testimony is also false.  Documentary evidence shows Mr. Ripps referring to his infringing NFTs as BAYC V3 before Yuga Labs had sent a single notice.  JTX-689 (Tweet from Mr. Ripps promoting infringing NFTs as "bayc v3").  Indeed, Mr. Ripps tweeted a link to the RR/BAYC page on a secondary marketplace that listed the NFTs under the name "Bored Ape Yacht Club V3" on the same day that Defendants admit that Yuga Labs sent its first notice.  *See* JTX-690; *see also* Dkt. 193-2 ¶ 93 (undisputed fact that the first takedown notice issued against the RR/BAYC NFTs occurred on May 17, 2022).  Given his myriad contradictions, non-responsive and evasive rants, and omissions, the only conclusion is that Mr. Cahen is an unreliable witness.

## **Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Yuga fails to show that Defendants used ApeMarket to stimulate sales of RR/BAYC NFTs.  In fact, Yuga cross-examined Mr. Cahen about this very topic and was unable to show any evidence during that cross-examination showing that Defendant used ApeMarket with the intention to stimulate sales of RR/BAYC NFTs.  That testimony has been quoted above in Defendants' objection, which explains that

the use of ApeMarket to stimulate sales of RR/BAYC NFTs was "theoretically impossible because doing that – creating an NFT marketplace would offer absolutely no functionality in terms of minting an already existing NFT contract." Trial Tr. [Cahen] 231:8-232:6.

Further, Mr. Cahen is credible. Yuga tries to mischaracterize Mr. Cahen's testimony to suggest that he was contradicting himself.   But there is nothing inconsistent about Mr. Cahen testimony.   He testified that ApeMarket was in the ideation phase, which means that anything under development was subject to substantive changes pending Mr. Ripps's review and signoff on the website.  But simply because Mr. Ripps had not reviewed and signed off on anything in connection with ApeMarket did not mean that the RR/BAYC team was not working on the website and exploring different ideas to implement.

Yuga mischaracterized Mr. Cahen as saying that ApeMarket was "ready to go" by June 24, 2022.  But what Mr. Cahen actually said is that he did not know if ApeMarket was "ready to go" by June 24, 2022.  Mr. Cahen then also stated that he works with the high skilled engineers that can implement nearly any project within days and that ApeMarket did not require much work in the first place as it used open-source code:

> Q.     Sure.  By Friday, June 24, ,2022, you and your associates had built a functioning ApeMarket?
>
> A.     I'm not certain to answer that.  But I believe with the quality of engineers that I work with, we could pretty much deploy anything within reason within a 48-hour window.  So I always feel like the people that I work with are ready to go at the drop of a hat.  That's kind of how I look at that.
>
> Q.     And there was a ready-to-go ApeMarket by February – excuse me – by June 24, 2022?

A.   Among other things, yes, because this – a lot of the code used is open source.  And ApeMarket is very similar to other marketplaces.  The only differences that we were discussing that are really worth noting would be that it would be a cheaper source of infrastructure for the public to be able to utilize.

Trial Tr. [Cahen] 247:1-17.  And finally, ApeMarket was never released, and there was no evidence that the webpage apemarket.com was a functioning website.  Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested).

Yuga also accused Mr. Cahen of "disrespect for the Court" by making "non-responsive rants" in response to questions about ApeMarket stimulating sales of RR/BAYC NFTs.  But the trial transcript shows otherwise:

Q.   And in May and June of 2022, one of your goals for that apemarket.com domain was to use it to mint out the remainder of the RR/BAYC NFT collection; correct?

A.   ***No.  That's theoretically impossible because doing that – creating an NFT marketplace would offer absolutely no functionality in terms of minting an already existing NFT contract.***

Q.   You used the prospect of the marketplace to drive sales of RR/BAYC NFTs; correct?

A.   There never existed a marketplace.

Q.   You used the prospect of a marketplace to drive sales of RR/BAYC NFTs; correct?

A.   What I would say I did was use the prospect of a potential marketplace which we were in the ideation phase of, I would say that I absolutely 100 percent used the prospect of that to draw attention to my protest of racism, anti-Semitism, and financial fraud being committed by Yuga Labs and Bored Ape Yacht Club.

Q.    You used the prospect of that marketplace to mint out the remained
      of the RR/BAYC NFT collection; correct?

A.    *No, I did not.*

Trial Tr. [Cahen] 231:8-232:6 (emphasis added).   Yuga's citation to Mr. Cahen's
deposition similarly cherry picks one question from a full-day of deposition
testimony, and even then, the testimony Mr. Cahen gave is responsive to Yuga's
question to give a hypothetical answer to "things" RR/BAYC could stand for.

Yuga also distorts Mr. Cahen's testimony by incorrectly suggesting that he did
not purchase a computer to work on RR/BAYC.  The trial testimony shows otherwise:

Q.    Okay.  So either the RR/BAYC project started in May 2022 or the
      RR/BAYC project started in December 2021, and you bought a
      computer for it; correct?

A.    The RR/BAYC project is a protest project.  And the protest began
      well, well before the RR/BAYC project did.  So if you are asking me
      why I make a connection between earlier dates and that project, it's
      because we spent about a year protesting in different ways before we
      released any sort of nonfungible token and rather, before Ryder did
      and I decided to join and help him expand his vision and protest.

Trial Tr. [Cahen] 227:11-228:1.

Finally, Yuga incorrectly argues that Mr. Cahen is not credible because he
testified that Defendants never used the term "bayc v3" to refer to the RR/BAYC
collection.   But Yuga was unable to impeach this testimony during cross-examination
of Mr. Cahen and Yuga did not even attempt to cross-examine Mr. Ripps on this
issue.  The exhibit that Yuga cites, JTX-689, also confirms that Mr. Cahen's
testimony was true.  JTX-689 is a reply Mr. Ripps made on Twitter on May 13, 2022
to Mr. McNelis's question on what NFTs people are buying.  Mr. Ripps's reply is a
satirical comment that has absolutely nothing to do with the RR/BAYC collection
andt was made *before* Mr. Ripps started taking commissions for RR/BAYC NFTs.

1    Dated:  October 5, 2023              WILMER CUTLER PICKERING HALE
2                                         AND DORR LLP
3
4                                         By: /s/ *Louis W. Tompros*
5                                            Louis W. Tompros (*pro hac vice*)
                                             louis.tompros@wilmerhale.com
6                                            **WILMER CUTLER PICKERING HALE
                                             AND DORR LLP**
                                             60 State Street
7                                            Boston, MA 02109
                                             Telephone: (617) 526-6000
8                                            Fax: (617) 526-5000
9
                                          Attorneys for Defendants
10                                        RYDER RIPPS and JEREMY CAHEN
11
12
13   Dated:  October 5, 2023              FENWICK & WEST LLP
14
15                                        By: /s/ *Eric Ball*
16                                           Eric Ball
                                             eball@fenwick.com
17                                           **FENWICK & WEST LLP**
                                             801 California Street
18                                           Mountain View, CA  94041
                                             Telephone: (650) 988-8500
19                                           Fax: (650) 938-5200
20                                        Attorneys for Plaintiff
21                                        YUGA LABS, INC.
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.


By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000