Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 10**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Finding of Fact No. 10:

And Defendants "acted with a bad faith intent to profit" from Yuga Labs' marks in registering the infringing domains. SJ Order at 14-15.

### Defendants' Basis of Dispute:

Defendants did not intent to infringe Yuga's trademarks. There are hundreds of NFT collections and "literally thousands" of products which use Yuga's marks. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13; Trial Tr. [Muniz] 81:18-22. This vast use of Yuga's marks shaped defendants understanding of Yuga's rights in these marks. Ms. Muniz admitted at trial that Defendants would probably have been aware of these other NFT collections using the Bored Ape Yacht Club marks at the time they created the RR/BAYC project. Trial Tr. [Muniz] 77:19-23. The use of these marks by numerous NFT collections, and numerous other products, that are unaffiliated with Yuga should weigh against a finding of bad intent.

Defendants did not intend to create confusion regarding the origin of RR/BAYC NFTs. Instead, Defendants took steps to make clear the RRBAYC project was intended as a protest art project. Ripps Decl. ¶¶ 158-176 (Dkt. 346) (uncontested); Cahen Decl. (Dkt. 344) ¶¶ 145-155; Dkt. 197-1 ¶ 230. For instance, Defendants included an explanation of their artistic intent on the rrbayc website. Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Additionally, collectors using the rrbayc website were required to read and click through a disclaimer outlining the purpose of the project before they were able to commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-

2086; Trial Tr. [Muniz] 83:10-13. The fact that defendants took several steps to prevent confusion should weigh against a finding of bad intent.

None of the parties are aware of a single instance of consumer confusion. Defendants are not aware of any instances of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344). Mr. Hickman is not aware of any instances of actual confusion. Trial Tr. [Hickman] 219:13-19. And Yuga was unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7; Trial Tr. [Solano] 18:23-19:1. Thus, there is little basis to suggest that Defendants' domain names are confusingly similar to Yuga's domains or that Defendants' domains suggest Yuga's endorsement.

**Plaintiff's Response:**

Defendants dispute an exact quote from the Court, underscoring their bad-faith efforts to multiply the cost of this litigation by rehashing decided issues. **Forcing Yuga Labs to respond to an objection based purely on the fact that Defendants disagree with the Court's binding order is another example of Defendants' oppressive litigation tactics supporting a finding that this is an exceptional case.** This objection should be rejected.

**The Court's Summary Judgment Order and Defendants' Own Stipulations Establish Liability:** The Court has already adjudicated this issue in its Summary Judgment Order (Dkt. 225). In that order, the Court held that Yuga Labs owns its BAYC Marks, that NFTs are goods for the purpose of the Lanham Act, that Yuga Labs used those marks in commerce, and that Yuga Labs has not abandoned its marks. *Id.* at 6-10. The Court also held that "Defendants have admitted that they intentionally used the BAYC Marks in their RR/BAYC NFTs." *Id.* at 11. The Court "easily conclude[d]" that Defendants' use of identical marks, on identical products, in identical markets supported a finding of a likelihood of confusion. *Id.* at 10-13. That

1 order establishes the matters adjudicated therein for purposes of this case.  Fed. R. Civ. P. 56(g) (district courts partially adjudicating case on a summary judgment motion may "enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case"); accord *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011); *Singh v. George Washington Univ. Sch. Of Med. & Health Scis.*, 508 F.3d 1097, 1106 (D.C. Cir. 2007) ("Facts found on partial summary judgment are taken as established at trial.").

Defendants did not move the Court to reconsider its holdings.  Nevertheless, Defendants refuse to accept the Court's order, unnecessarily burdening the Court and Yuga Labs by attempting to relitigate these issues at trial and in post-trial filings as if the Court's order does not exist.  Defendants' tactics are inconsistent with the very purpose of a partial summary judgment order, which is "intended to avoid a ***useless trial of facts and issues over which there was really never any controversy*** and which would tend to confuse and complicate a lawsuit."  *Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131, 1133 (C.D. Cal. 2004) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.1981)) (emphasis added).  Defendants' authorities do not support their position.  *See Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) ("evidence concerning issues resolved at summary judgment is ***generally not relevant and should be excluded***" at trial) (emphasis added); *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (discussing applicability of the law of the case doctrine where a case is assigned to a new judge).

"The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact."  *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 n.9 (9th Cir.

2009) (alteration and citation omitted).  Defendants' repeated attempts to ignore or undo the Court's Order "speeding up litigation" is a dilatory and abusive litigation tactic that has unjustifiably increased the cost of resolving this case.

Defendants' objection contradicts their own stipulations in the proposed pre-trial conference order.  *See* Dkt. 320-1 at 13.  In that stipulation and proposed order, Defendants admitted that Yuga Labs is the creator of the Bored Ape Yacht Club NFT collection and owner of the BAYC Marks.  *Id.* at 2-3.  Defendants further admitted that "[t]he Court has determined that Defendants infringed the BAYC Marks" and "that Defendants' registration and use of the domain names https://rrbayc.com and https://apemarket.com constituted cybersquatting under the Anti-Cybersquatting Consumer Protection Act."  *Id.* at 13.  As such, Defendants have waived their right to now argue that they were not liable for infringing upon Yuga Labs' marks or cybersquatting under the ACPA.  *See U.S. v. First Nat. Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) ("[N]or may a party offer evidence or advance theories at the trial which are not included in the [pre-trial conference] order *or which contradict its terms*.") (emphasis added).  Defendants' attempt to now avoid liability after admitting to it clearly contradict the terms of the pre-trial conference order.  Defendants' sudden refusal to accept a stipulated fact is a dilatory and abusive litigation tactic that unjustifiably increases the cost of resolving this case.  Defendants' actions again make this an exceptional case.  The Court should reject Defendants' objection.

Defendants offer no basis to dispute this finding.  They offer no contradictory facts, nor do they cite to any evidence in the record.  Rather, Defendants are merely expressing their disappointment in the Court's well-reasoned summary judgment order.  This is not a proper basis for objection.  Defendants' various arguments regarding intent, third parties' use of Yuga Labs' marks, Defendants' "disclaimer," and confusion and their knowledge thereof lack merit (*see supra* ¶ 4) and do not change this conclusion.

**Defendants' Reply:**

Defendants have the right to preserve arguments for appeal. Yuga's characterization of Defendants attempting to relitigate resolved issues makes no sense because Yuga has proposed this finding of fact. Defendants have not engaged in any litigation misconduct. *See generally* Dkt. 348 at 11-15. Defendants' defenses were made reasonably and in good faith. *Id*. All of Defendants' efforts to litigate and settle in good faith were impacted by Yuga's unreasonable demands, including Yuga's demand for a non-disparagement clause and Yuga's ever fluctuating assessment of actual damages. *See* Dkt 286 at 2-3 (asserting damages of $1,792,704 on June 7); Dkt. 287-10 at 4 (asserting damages of $797,183,838 on June 8); Dkt. 315-1 at 2 (dropping actual damages on June 15). This Court acknowledged that Yuga's demand for a non-disparagement clause was "a condition that is quite frankly unreasonable." Hearing Transcript June 16, 2023, at 9:9-12. Furthermore, Yuga has failed to present evidence which shows that Defendants lack respect for this Court or the rule of law. To the contrary, both Defendants fully participated in the pre-trial litigation process, appeared for trial, conducted themselves respectfully, and testified truthfully under oath, as any reasonable litigant would.

The evidence at trial showed that Yuga does not own the BAYC marks because (1) Yuga has either given away or abandoned its rights in the marks and (2) NFTs are not eligible for trademark protection. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt 344); Hickman Decl. ¶¶ 25-26 (Dkt 345); JTX 2672; JTX 2673. That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to

commercialize their NFTs.  We can agree on that; right? A. Yes.  That is covered in the terms.").

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea.  Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13.  And, as Yuga's CEO admitted, there are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga.  Trial Tr. [Muniz] 81:18-22.  For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks.  *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.  Further, Yuga does not own the asserted marks because NFTs are not eligible for trademark protection.  The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).  Misrepresentation of the origins of a ***communicative*** work is a dispute relegated to the confines of copyright law, not trademark. *Id.* at 33-35; *see also* Pulse Entm't Corp. v. David, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014) (*Dastar* bars trademark claims based on origin of hologram, as it is "likened to a cartoon animation").  Here, the "goods" for which Yuga claims trademark rights are NFTs, which are comparable to certificates of authenticity/ownership and are not digital goods in themselves.  Trial Tr. [Atalay] 127:9-16.

Defendants have never stipulated to Yuga's Ownership of the BAYC Marks.  Defendants hotly disputed ownership of the BAYC marks at summary

1  judgment.  Dkt. 163 at 2-8.  And while ownership of the marks is not an issue relevant
2  to the remedies trial in this case, Yuga has for some reason affirmatively raised the
3  issue—forcing Defendants to re-articulate their dispute for purposes of preserving
4  their position for appeal and all other proceedings involving the BAYC marks.  Yuga
5  attempts to mischaracterize the Court record by citing to the pre-trial conference
6  order.  But *nowhere* in the pre-trial conference order did Defendants stipulate to
7  ownership of the BAYC marks.  Section 6 of the order contains all stipulated facts and
8  those stipulated facts include only that Yuga released the BAYC collection and
9  various facts about Defendants' activities associated with the RR/BAYC
10 collection.  Dkt. 320-1 at 3-4.  Yuga points to Section 5, which is the admitted facts
11 section, but this section again does not contain any admissions regarding "ownership"
12 of the marks.  Rather it merely identifies the asserted marks at issue for the remedies
13 trial—something that Defendants admitted in light of the scope of the remedies trial
14 and to ease this Court's work in adjudicating the remaining issues.   Dkt. 32-1 at 2-
15 3.  Lastly, Yuga cites to Defendants' statement that the "Court has determined that
16 Defendants infringed the BAYC Marks." Dkt. 320-1 at 13.  But again, this is not an
17 admission of ownership, it is a statement regarding the procedural history in this case
18 that explains that the scope of trial is limited to remedies and does not include
19 infringement.  Had Defendants wanted to stipulate to ownership, they would have
20 clearly and expressly done so—they have not.  Defendants reserve the right to dispute
21 ownership on appeal and in any other proceedings involving the BAYC marks.

22      Yuga improperly relies on the Court's summary judgement order to establish
23 facts at trial.  The "law of the case doctrine does not apply to pretrial rulings such as
24 motions for summary judgment. *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir.
25 1986)* (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir.
26 2014) ("Pretrial rulings, often based on incomplete information, don't bind district
27 judges for the remainder of the case.  Given the nature of such motions, it could not be
28

1 | otherwise."). For example, in *Sienze v Kutz*, the Court held that although aspects of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics. *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force). This case is just like *Sienze*: the summary judgment ruling on Mr. Ripps and Mr. Cahen's intent in using the alleged marks applies to only the issue of likelihood of confusion and cannot be applied more broadly.