Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                                    Plaintiff,<br><br>          v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                                    Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 11(b), Lines 6:5-7**<br><br>Judge: Hon. John F. Walter |

MELISSA L. LAWTON (CSB No.
 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:     310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply:

**Plaintiff's Disputed Post Trial Finding of Fact No. 11(b), lines 6:5-7:**

Removing the "gas" transaction costs and profits accrued to non-defendants, Mr. Lehman and Mr. Hickman, reflects the amount of profits that accrued to Defendants only from the initial sales of RR/BAYC NFTs, totaling $1,366,090. JTX-723 ¶¶75-76; Dkt. 338 ¶¶57-60

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Yuga's $1,366,090 figure fails to exclude several categories of expenses that the evidence presented at trial indicated should be removed to calculate the profits Mr. Ripps and Mr. Cahen received from the initial sales of RR/BAYC NFTs.  First, the $1,366,090 figure removes only $419,733 for profit sharing that was paid to Mr. Lehman and Mr. Hickman and fails to exclude an additional $108,037.08 in profit sharing sent to Mr. Hickman and Mr. Lehman.  *See* Kindler Decl. ¶¶ 59-60 (Dkt. 338); Trial Tr. [Kindler] 196:22-197:2; Ripps Decl. ¶¶ 132-135 (Dkt. 346) (uncontested); Lehman's Depo. 210:16-214:7 (Dkt. 411); JTX-2710; and JTX-2711.  Elsewhere in their Findings of Fact, Yuga even agrees that this figure needs to be reduced by $108,037.08 to determine the accurate amount of profits Mr. Ripps and Mr. Cahen received from the initial sales and they exclude this amount. *See* Yuga's Proposed Finding of Fact 11(b) 8-11 (Dkt. 418-1).

Additionally, the evidence presented at trial showed that the RSVP contract also distributed $93,135.62 in automated refunds.  Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested).  This figure improperly includes in its profits calculation $93,135.62 in automated refunds executed through the RSVP reservation contract.  Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested).

Finally, Mr. Ripps and Mr. Cahen also incurred approximately $15,100.00 in expenses necessary to create the RR/BAYC project, including wages paid to an assistant, a computer, and travel expenses.  Ripps Decl. ¶ 136 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 174-176 (Dkt. 344).  This figure fails to exclude those expenses from the profit calculation.  An accurate calculation of Mr. Ripps and Mr. Cahen's profits from the initial sales of the RR/BAYC NFTs would accordingly be $1,149,817.30.

For support, Yuga cites to portions of Ms. Kindler's expert report and declaration.  JTX-723 ¶¶ 75-76; Kindler Decl. ¶¶ 57-60 (Dkt. 338).  But those segments make clear that the expenses outlined above *have not* been removed from her profit calculation.  Accordingly, the evidence cited by Yuga is flawed and does not accurately support a calculation of the profits Mr. Ripps and Mr. Cahen received from the initial sales of RR/BAYC NFTs. *See* Kindler Decl. ¶ 57 (Dkt. 338); JTX-723, n. 149; *see generally* JTX-723 (the word "refund" is not mentioned once in Ms. Kindler's 91-page report and appendices, providing no support for her later claims that she accounted for refunds).

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless, Defendants' disputes regarding Ms. Kindler's unrebutted expert testimony are baseless.

As to manual payments made to Mr. Lehman and Mr. Hickman beyond the $419,733 transferred through the RSVP contract, Defendants failed to provide evidence of manual profit-sharing payments to Mr. Hickman and Mr. Lehman in discovery.  *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015) (affirming holding that defendant failed to meet burden to prove

a 40% royalty was a proper deduction, where "the documentary evidence leaves uncertainty as to the amount of royalty fees paid" and defendant "did not produce sufficient documentation to prove the specific amounts").  After Defendants identified the purpose of certain payments for the first time in their trial testimony, *see* Ripps Decl. (Dkt. 346) ¶¶ 132-135, Ms. Kindler testified that those figures may be appropriate deductions from a disgorgement judgment.  Trial Tr. at 195:3-7 ("If it is established that that money is, in fact, profit sharing that's tied to the work on this case involving the infringing marks, then I would have no problem deducting that from my ultimate conclusion.  I just have not seen any evidence to suggest that it would be appropriate to do that.").  Unless the Court finds that Defendants' belated, self-serving statements proved their entitlement to these deductions, they should not be disgorged.

As to the refunds processed through the RSVP contract, Ms. Kindler excluded those refunds from her profit analysis.  Specifically, Mr. Kindler testified that "transactions that were refunded through the RefundIssued and RSVPCanceled functions in the RSVP smart contract were not included in my calculation of profits." Kindler Decl. (Dkt. 338) ¶ 44.  Ms. Kindler affirmatively made these deductions, again despite Defendants' failure to disclose them in discovery.  **"Neither Defendant provided information sufficient to identify any refunds issued to RR/BAYC NFT purchasers" despite interrogatory requests to do so.  *Id.* ¶ 43.**  Instead of providing this information during discovery, Defendants original interrogatory responses falsely said they were unaware of any refunds.  Nevertheless, Defendants' insinuation that Ms. Kindler did not deduct refunds from her calculations, as she testified, has already been rejected by the Court.  Trial Tr. at 170:11-13.

As to the alleged expenses incurred in furtherance of profiting from their infringing NFTs, there is no basis to Defendants' objection.  Defendants—not Yuga

1   Labs or Ms. Kindler—bear the burden of proving their deductions, and they have
2   failed to do so.

3       First, Defendants provide no documentary evidence that Mr. Ripps paid Ian
4   Garner "roughly $3,500 for his work" as an "assistant," what that work entailed, or
5   how it was relevant to the revenue generated by Defendants' infringing activities.

6       Second, Defendants offered no documentary evidence of Mr. Cahen's travel
7   expenses or how these alleged travel expenses were necessary to earn revenue from
8   minting infringing NFTs.  There is no basis for this deduction.

9       Third, Defendants failed to offer any evidence of Mr. Cahen's computer
10  purchase or why a several-thousand-dollar computer was necessary to earn revenue
11  from Mr. Ripps' supposed minting of infringing NFTs.  Defendants have claimed that
12  it was all Mr. Ripps (or at least Mr. Ripps' computer), and not Mr. Cahen, who minted
13  the infringing NFTs.  *See, e.g.*, Defendants' Answer and Counterclaim (Dkt. 65) ¶ 49
14  ("Each RR/BAYC NFT was hand-minted by the wallet of Mr. Ripps, and Mr. Ripps
15  sold all RR/BAYC NFTs through only his personal Twitter account, Foundation,
16  private sales, and the website https://rrbayc.com.").  There is no basis for this
17  deduction.  *See Vital Pharmaceuticals v. PhD Marketing, Inc.*, No. CV 20-06745,
18  2022 WL 2952495, *4, 6 (C.D. Cal. 2022) (rejecting deductions where defendant "has
19  produced troublingly little evidence to support that figure. Not a single invoice,
20  receipt, or other original source document has been produced to support the costs and
21  expenses Defendant claims. . . .  Other courts have similarly found that summary
22  financial documents coupled with testimony, absent any documentary evidence, were
23  insufficient to satisfy the defendant's burden to prove costs."); *Brighton Collectibles,*
24  *Inc. v. Marc Chantal USA, Inc.*, No. 06-CV-1584, 2009 WL 10674076, at *10 (S.D.
25  Cal. 2009) (affirming rejection of deductions where defendant "did not submit any
26  documentary evidence such as invoices to substantiate its claimed deductions").
27  Defendants' tacit admission that Mr. Cahen's contribution to the revenue generated

28

from sales of RR/BAYC NFTs was his "stimulat[ion]" of sales (JTX-801.144), such as with his Tweets from @ApeMarketplace, does not obviate the need to prove the cost of purchasing this computer in December 2021 was for Defendants' business venture.  Defendants' admission does however highlight that they are lying when they claimed that accounts, such as the @ApeMarketplace Twitter account, did not support their marketing and infringement.  *See supra* ¶ 14 (lines 7:15, 7:16-18).  Finally, Mr. Cahen admitted at trial that he purchased the computer in December 2021, approximately *five months before the "project" even began*.  Trial Tr. at 227:2-229:21.  Mr. Cahen's sworn testimony that he bought a computer "to use for the project" that would not exist for another five months further belies any possible link between this cost and Defendants' profits attributable to their infringement.

### **Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Yuga's response is unsupported.  First, Yuga's response inaccurately describes the documents in evidence. JTX-2710 and JTX-2711 show that data available on the blockchain show that there were additional payments made from Mr. Ripps to Mr. Lehman and Mr. Hickman.  That blockchain data has always been publicly accessible.

Further, it is inaccurate to say Defendants did not provide evidence of this profit sharing until trial.  Deposition testimony made clear and supported this finding that there were individual transfers made to account for profit-sharing before the RSVP contract was put in place.  *See* Lehman's Depo. 210:16-214:7 (Dkt. 411) (confirming that a payment received by Mr. Ripps for 32.98 ETH was for "the profits [Mr. Ripps] made before [the RSVP contract], and then looking forward.  It's all automatic.").  Defendants also produced spreadsheets of internal reporting and profit splitting, including JTX-103, which shows a 15% split of *all* profits (not just those accrued through the RSVP contract) with both Mr. Lehman and Mr. Hickman.  Finally, even

1    Mr. Lehman's declaration, which Yuga was intimately involved in drafting, that was

2    signed on February 3, 2023, clearly stated that the profit share included profits

3    received before the RSVP contract was put in place.  *See* JTX-001, ¶33 ("In exchange

4    for developing the RSVP Contract and rrbayc.com website for the Business Venture, I

5    was to receive 15% of the combined revenue of the RR/BAYC mints with and without

6    the RSVP Contract.").   Accordingly, Yuga's claim there was not evidence presented

7    to support pre-RSVP contract profit splitting before trial is patently false.  The proof

8    that an additional $108,037.08 in profit sharing needs to be removed from Ms.

9    Kindler's calculations is not based on "belated, self-serving statements" but credible

10    testimony and evidence.

11        Additionally, Yuga's response here is inconsistent with their own Findings of

12    Fact.  Specifically, in their Findings of Fact, Yuga agrees that their calculation of

13    Defendants' profits needs to be reduced by $108,037.08 to determine the accurate

14    amount of profits Mr. Ripps and Mr. Cahen received from the initial sales.  *See* Yuga's

15    Proposed Finding of Fact 11(b) (Dkt. 418-1).  To state in this objection that the

16    transfers made to Mr. Lehman and Mr. Hickman should not be excluded is

17    inconsistent, unfounded, and misleading.

18        Second, Ms. Kindler's trial testimony on refunds was unfounded.  *See* generally

19    JTX-723 (***the word "refund" is not mentioned once in Ms. Kindler's report and***

20    ***appendices***, providing no support for her later claims that she accounted for refunds).

21        Also, it is inaccurate and misleading to state that Defendants tried to withhold

22    this evidence during discovery.  As Mr. Ripps's testimony makes clear, the

23    transactions outlining both the automated refunds offered through the RR/BAYC

24    contract and the refunds Mr. Ripps directly issued are all available and publicly

25    recorded on Etherscan.  Ripps Decl. ¶¶ 172-15 (Dkt. 346) (uncontested).  That

26    information has been available since those transactions occurred.  Further, that

27    information is available on the very source Ms. Kindler states she reviewed and

28

1   extracted information from when forming her opinions.  *See* Kindler Decl. ¶¶ 5-7.

2   ("My calculation of Defendants' profits is based on public Ethereum blockchain data,

3   which contains records of all transactions executed on the network…. In order to

4   calculate Defendants' profits, four datasets were extracted using Etherscan: (1) all

5   transactions associated with Mr. Ripps and Mr. Cahen's wallets, (2) all transactions

6   associated with RR/BAYC NFTs…").  Accordingly, this information has not been

7   withheld from Yuga and to state otherwise is misleading.

8        Additionally, this Court is entitled to accept Mr. Ripps's declaration because the

9   trial transcript shows that Yuga elected to forego any substantive cross-examination of

10  Mr. Ripps on any portion of Mr. Ripps's declaration that Yuga now challenges.  *See*

11  Trial Tr. [Ripps] 267:7-271:9.  As the Supreme Court has explained, "[c]ross-

12  examination is the principal means by which the believability of a witness and truth of

13  his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  This is because

14  purpose of cross-examination is "the direct and personal putting of questions and

15  obtaining immediate answers." *Id.*; *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir.

16  2004).  Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his

17  declaration means that "principle means" of testing Mr. Ripps credibility weighs

18  decisively in favor of accepting Mr. Ripps's declaration.

19       Finally, Yuga's statement that Defendants' attempts to exclude Kindler's

20  testimony were overruled is misleading. Just because the court allowed the testimony

21  to be entered, does not mean that the court finds the testimony credible or that

22  evidence presented that rebuts said testimony is not persuasive.

23       Third, Mr. Ripps's testimony showed that Mr. Garner was his assistant and

24  worked on the RR/BAYC Project for one week and was paid for his work.  Ripps

25  Decl. ¶¶ 124, 127, 136 (Dkt. 346) (uncontested).  Such assistance on the project

26  helped with the creation of reservations of RR/BAYC NFTs.  Second, Mr. Cahen

27  testified that he paid for travel to meet and collaborate with Mr. Ripps for the project.

28

1   Cahen Decl. ¶ 175 (Dkt. 344).  Travel expenses paid so that two of the creators of the

2   project could meet and work with one another, helped with the creation of reservations

3   of RR/BAYC NFTs.  Finally, Mr. Cahen testified about the cost of a computer he

4   used to work on the RR/BAYC project.  Cahen Decl. ¶ 174 (Dkt. 344).  The cost of

5   the materials Mr. Cahen used for creating the RR/BAYC project did help with the

6   creation of reservations of the RR/BAYC NFTs.

7   Further, as Mr. Cahen testified, he used the computer he purchased for the

8   RR/BAYC Project for research about Yuga *that led up to* and helped create the

9   RR/BAYC Project.  Trial Tr. [Cahen] 229:14-21.  Additionally, Yuga's citation to Mr.

10  Cahen's declaration does not support this objection as it affirms that Mr. Cahen

11  purchased a computer that he used for the project.  Cahen Decl. ¶ 174 (Dkt. 344).

12  Accordingly, the fact the computer was purchased in December 2021 and the

13  RR/BAYC NFTs were not minted until later, does not diminish the usefulness of this

14  tool in the RR/BAYC project, warranting including it among appropriate deductions.

15  Finally, as outlined further *infra ¶ 14* ApeMarket never suggested any

16  sponsorship or affiliation with Yuga. ApeMarket was never released, and there was no

17  evidence that the webpage apemarket.com was a functioning website that could sell or

18  promote anything.  Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl.

19  ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested).  And the exhibits Yuga

20  cites do not show otherwise.  For example, JTX-696 does not show what

21  apemarket.com displayed, what functionalities it had, and whether it has ever

22  promoted or sold RR/BAYC NFTs.  As noted above, ApeMarket was never released

23  (Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344);

24  Ripps Decl. ¶ 180 (Dkt. 346) (uncontested)) and no evidence shows that the website

25  domain apemarket.com was ever used for the promotion or sale of anything.   This

26  Response is unfounded.

27

28

1   Dated:  October 5, 2023                WILMER CUTLER PICKERING HALE
2                                          AND DORR LLP
3
4                                          By:/s/ *Louis W. Tompros*
5                                              Louis W. Tompros (*pro hac vice*)
                                               louis.tompros@wilmerhale.com
6                                              **WILMER CUTLER PICKERING HALE
                                               AND DORR LLP**
7                                              60 State Street
                                               Boston, MA 02109
8                                              Telephone: (617) 526-6000
                                               Fax: (617) 526-5000
9
10                                         Attorneys for Defendants
                                           RYDER RIPPS and JEREMY CAHEN
11
12
13  Dated:  October 5, 2023                FENWICK & WEST LLP
14
15                                         By:/s/ *Eric Ball*
16                                             Eric Ball
                                               eball@fenwick.com
17                                             **FENWICK & WEST LLP**
                                               801 California Street
18                                             Mountain View, CA  94041
                                               Telephone: (650) 988-8500
19                                             Fax: (650) 938-5200
20                                         Attorneys for Plaintiff
21                                         YUGA LABS, INC.
22
23
24
25
26
27
28

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.


By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000