Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., | Case No. 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **Defendants' Objections to Disputed Finding of Fact No. 11(d), lines 16-17** |
| v. | Judge:  Hon. John F. Walter |
| Ryder Ripps, Jeremy Cahen, | |
| Defendants. | |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**<u>Plaintiff's Disputed Post Trial Finding of Fact No. 11(d), lines 16-17:</u>**

<u>The value of RR/BAYC NFTs that Defendants hold or did not mint totals $106,055.</u> JTX-723 ¶74; Dkt. 338 ¶¶51-57.

**<u>Defendants' Basis of Dispute:</u>**

This $106,055 figure is not profit, but includes the theoretical value of NFTs that either Mr. Ripps and Mr. Cahen hold but have not sold or, more egregiously, that Mr. Ripps and Mr. Cahen have never actually minted.  *See* Kindler Decl. ¶ 51, 54, 56 (Dkt. 338).  It is improper to include in a determination of the profits Mr. Ripps and Mr. Cahen received an estimated value of theoretical sales and theoretical NFTs that do not exist.

Further, in the course of Ms. Kindler's calculation of the value of these NFTs, she uses the floor price for RR/BAYC NFTs based on the secondary markets for them on January 27, 2023.  Kindler Decl. ¶ 54 (Dkt. 338).  Ms. Kindler opines that the floor price at that time was 0.115 ETH.  *Id.*  As the trial testimony indicated, however, the floor price for RR/BAYC NFTs has gone down and the floor price on June 7, 2023 was only 0.07 ETH.  JTX-1624, Dkt. 287-1, Trial Tr. [Kindler] 182:11-13.  Despite this considerable decrease in value, Ms. Kindler testified that she did not update her calculation to reflect the new floor price.  Trial Tr. [Kindler] 198:2-12. Using the updated floor price of RR/BAYC NFTs the value of the 590 NFTs would be 41.3 ETH or around $82,600. *See* Trial Tr. [Kindler] 182:14-22 (Ms. Kindler agreeing that a current conversion rate of 1 ETH for $2,000 "sounds right.").

1   The portions of Ms. Kindler's report and declaration Yuga cites to for support

2   here clearly indicate that this figure is based on a calculation of profits for NFTs that

3   Mr. Ripps and Mr. Cahen hold but have not sold or those that do not exist.

4   Accordingly, the evidence cited for support is flawed for the reasons outlined above.

5   **Plaintiff's Response:**

6   Defendants object that Ms. Kindler's economic opinion "is improper" without

7   any citation to evidence or authority to dispute rebut her opinion.  Their unsupported,

8   non-expert opinion is not a meritorious objection.  In fact, the unrebutted analysis of

9   Ms. Kindler demonstrates that Defendants did derive certain benefits of determinable

10  value from the NFTs they hold in their own wallets or have yet to mint.  "While these

11  RR/BAYC NFTs may not have directly generated revenue for Defendants, they still

12  have value.  For example, one of the Defendants, Mr. Cahen, testified that the value of

13  the held RR/BAYC NFTs 'is pretty much the same as when they were originally

14  being produced,' which is 'anywhere between .1 Ethereum and .15 Ethereum.'"

15  Kindler Decl. (Dkt. 338) ¶ 52 (quoting Cahen Deposition Tr. at 255:25-256:7).  Ms.

16  Kindler's unrebutted testimony provides a conservative calculation of these NFTs as

17  providing $106,055 in profit to Defendants.  Kindler Decl. (Dkt. 338) ¶¶ 51-57.

18  The floor price of NFTs fluctuates over time, and the change in the floor price

19  of Defendants' infringing NFTs does not render Ms. Kindler's valuation of the

20  unminted and unsold NFTs unreasonable.  Ms. Kindler's estimate is consistent with

21  Mr. Cahen's own estimate of 0.1-0.15 ETH.  Kindler Decl. (Dkt. 338) ¶ 52 (quoting

22  Cahen Deposition Tr. at 255:25-256:7).  Ms. Kindler arrived at this estimate by using

23  the floor price (i.e., the lowest market value of any NFT in the entire collection at a

24  given time) as a low-end valuation of the remaining NFTs in the collection.  Her

25  conservative valuation of 0.115 ETH remains reasonable, even if the floor price of the

26  collection has fluctuated.  As Ms. Kindler testified at trial, "[t]hat data changes on a

27  daily basis.  I think at the time there was testimony from both defendants about the

28

pricing that I used being a reasonable price generally as to how to value their NFTs. So I still think it's a reasonable approximation of value." Trial Tr. 198:8-12.  This 0.115 ETH figure is also significantly lower (by about 23%) than the price charged by the RSVP contract for newly minted NFTs (0.15 ETH).  *See* Kindler Decl. (Dkt. 338) ¶ 36.  Moreover, the evidence shows that Defendants are readily able to drive up the floor price and the transaction volume if they choose to do so.  *See id.* ¶ 73.  The unrebutted evidence shows a conservative estimate of the profit Defendants would reap should they retain the ability to mint and sell.

Should Defendants, however, be ordered to burn the NFTs they currently hold and transfer control of the smart contract for their infringing NFTs to Yuga Labs, it is Yuga Labs' position that Defendants should not be required to disgorge profits, respectively, from their currently held NFTs and their not yet minted NFTs.

**Defendants' Reply:**

First, what Yuga argues here is that there may be some value to these unsold or theoretical NFTs that do not yet exist.  But this does nothing to undermine Defendants' objection that they are not profit.  Not all things that have value have made the holder of them a profit.  Profit is a quantifiable economic calculation that looks at revenue for the sale of a good or service and subtracts associated costs.  An item that has never been made cannot yet provide any profit and nothing in what Yuga cites to undermines this.  Instead, Yuga cites to a portion of Ms. Kindler's declaration where she concedes "these RR/BAYC NFTs may not have directly generated revenue…"  Kindler Decl. ¶ 52 (Dkt. 338).

Second, Yuga's response that the floor price of the RR/BAYC NFTs fluctuates does not undermine the validity of Defendants' objection that the floor price Ms. Kindler used is outdated and providing an overestimation of the profit likely to be received if these theoretical NFTs were minted and sold.  Specifically, Mr. Cahen's rough estimation of the price of RR/BAYC NFTs on January 11, 2023 during his

1   deposition does not change what the current price these NFTs would sell for if they

2   were minted and sold.  Nor does it undermine Defendants' objection here.  Further,

3   the portion of Ms. Kindler's declaration Yuga cites to support an argument that

4   Defendants could drive up the floor price is based on tweets made by users Ms.

5   Kindler did not confirm even own RR/BAYC NFTs and that could have been

6   hyperbolic statements or jokes. *See* Trial Tr. [Kindler] 179:12-14 ("Q Your new

7   opinion was based on Tweets posted by defendants on June 6, 2023, and some

8   responses; correct? A Yes. That was the events that had transpired."); *Id*. at 180:18-

9   21.

10          Finally, even if the Court limits its order to preventing the creation or sale of

11   RR/BAYC NFTs and not the transfer of the smart contract, this figure should be

12   considered outside what Yuga can seek in disgorgement.  *See* Trial Tr. [Kindler]

13   198:18-25 ("Q Now, if the Court orders an injunction prohibiting minting of any new

14   RR/BAYC NFTs, the value of the unminted NFTs is zero; correct? A I don't know

15   that -- maybe. I would agree with you that it would not need to be included in an

16   unjust enrichment monetary compensation to Yuga. Q Yuga doesn't get to double-dip;

17   right? A Yes. Absolutely.").

18

19

20

21

22

23

24

25

26

27

28