Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                              Plaintiff,<br><br>     v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                              Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 11(d), lines 18-20**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 11(d), lines 18-20:**

This amount shall not be disgorged because the Court finds it appropriate to transfer the RR/BAYC smart contract to Yuga Labs and Ms. Kindler agreed that Yuga Labs should not receive this sum if it received the smart contract. Dkt. 392 at 198:18-25.

**Defendants' Basis of Dispute:**

Given the evidence presented at trial, the Court should not find that it is appropriate to transfer the RR/BAYC smart contract to Yuga.[1] "A trademark injunction . . . can raise serious First Amendment concerns because it can interfere with truthful communication between buyers and sellers in the marketplace. Accordingly, we must ensure that the injunction is tailored to eliminate only the specific harm alleged." _Toyota Motor Sales, U.S.A., Inc. v. Tabari_, 610 F.3d 1171, 1176 (9th Cir. 2010) (cleaned up).  Here, a properly tailored injunction must be targeted to eliminate any confusion resulting from the sale of RR/BAYC NFTs, or the use of the "rrbayc.com" and "apemarket.com" domains.  Transferring the RR/BAYC smart contract to Yuga is not tailored to eliminate the harm alleged and could have a stifling effect on Mr. Ripps and Mr. Cahen's First Amendment rights as the minting of the RR/BAYC NFTs is intricately connected to their protest against Yuga.  Ripps Decl. ¶ 87 (Dkt. 346) (uncontested); Cahen Decl. ¶ 97 (Dkt. 344).  Further, as the

---

[1] No injunction should enter in this case, and nothing in this document should be construed to suggest that Defendants believe any injunction is proper or as a waiver of any right to contest on appeal the entry of an injunction.

Case No. 2:22-cv-04355-JFW-JEM              -1-              DEFENDANTS' OBJECTIONS

1    evidence presented at trial indicated, Yuga has not identified even a single person who

2    obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr.

3    Cahen, and Mr. Hickman are not aware of a single instance of actual confusion. Ripps

4    Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶

5    222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1;

6    Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on.

7    Yuga Labs has been unable to identify even[] a single person who purchased an

8    RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").

9    Accordingly, there is no evidence of actual confusion resulting from the sale of

10   RR/BAYC NFTs that an injunction transferring the RR/BAYC smart contract would

11   eliminate.  Finally, the RR/BAYC smart contract already clearly indicates the creator

12   is Mr. Ripps.  Ripps Decl. ¶¶ 88-90 (Dkt. 346).  Transferring the smart contract to

13   Yuga, therefore, would not help eliminate any of the alleged confusion resulting from

14   the sale of RR/BAYC NFTs.

15          Finally, the evidence Yuga cited is misleading.  Ms. Kindler testified if Yuga

16   receives an injunction preventing Mr. Ripps and Mr. Cahen from minting any new

17   RR/BAYC NFTs or selling the ones they currently hold, Yuga is not entitled to the

18   estimated value of these NFTs in disgorgement. Trial Tr. [Kindler] 198:18-25 ("Q

19   Now, if the Court orders an injunction prohibiting minting of any new RR/BAYC

20   NFTs, the value of the unminted NFTs is zero; correct? A I don't know that -- maybe.

21   I would agree with you that it would not need to be included in an unjust enrichment

22   monetary compensation to Yuga. Q Yuga doesn't get to double-dip; right? A Yes.

23   Absolutely.").  Even if the Court limits its order to preventing the creation or sale of

24   RR/BAYC NFTs, this figure should be considered outside what Yuga can seek in

25   disgorgement.

26          **Plaintiff's Response:**

27

28

1   Transferring control of the smart contract to Yuga Labs would allow it to regain

2   control over its brand.  The injunctive relief proposed by Yuga Labs is specifically

3   tailored to accomplish this.  *Infra* Conclusion of Law No. IV.2.  Indeed, although two

4   other courts have entered similar injunctions against Defendants' business partners.

5   *See* Judgment and Order for Permanent Injunction Against Ryan Hickman (Dkt. 30),

6   *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023);

7   JTX-621 (Consent Judgment and Order for Permanent Injunction Against Thomas

8   Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD

9   (N.D.N.Y Feb. 6, 2023)), only this Court can order the transfer of RR/BAYC smart

10  contract to Yuga Labs because only this Court has jurisdiction over Mr. Ripps.  Mr.

11  Lehman has, however, transferred control of the RR/BAYC RSVP smart contract (the

12  contract that interfaced with the RR/BAYC smart contract and rrbayc.com) to Yuga

13  Labs because he controlled that contract.

14  "Unless Yuga Labs has control of the RR/BAYC smart contract, Yuga Labs'

15  brand will be forever tied to Mr. Ripps," Solano Decl. (Dkt. 342) ¶ 47, because he and

16  Mr. Cahen still control the smart contract used to create the infringing NFTs that are

17  permanently embedded with Yuga Labs' brand.  Transfer of the smart contract will

18  mean that "all uses of the BAYC Marks are under the control of the rightful owner of

19  these marks.  As long as Defendants own the RR/BAYC smart contract bearing the

20  BAYC Marks, they will continue to confuse consumers by associating the BAYC

21  Marks with themselves and their copycat NFTs." *Id.* ¶ 79.  "If Yuga Labs had control

22  of the RR/BAYC Smart Contract, it could limit the minting cap to 9,546 RR/BAYC

23  NFTs to ensure that no additional NFTs were minted using the RR/BAYC Smart

24  Contract." Atalay Decl. (Dkt. 337) ¶ 8.  In addition, if Yuga Labs has control of the

25  RR/BAYC smart contract, it will allow Yuga Labs to work with the NFT

26  marketplaces to ensure that the human readable elements of the marketplace clearly

27  indicate that RR/BAYC NFTs are not authentic BAYC NFTs.  *See* Trial Tr. 136:9-18

28

1   ("But if Yuga Labs had control . . . we would have a much greater flexibility in

2   controlling how the collection is displayed in marketplaces, including OpenSea."); *see*

3   *also* Trial Tr. 100:6-14; Trial Tr. 138:6-139:11.  As long as Defendants retain control

4   of the smart contract, "Yuga Labs does not have the ability to exclusively control its

5   BAYC brand."  Muniz Decl. (Dkt. 340) ¶ 22.

6         There is also a concrete risk that Defendants will find ways to continue their

7   infringement if anything less than transfer of the smart contract is ordered by the

8   injunction.  Indeed, in these very objections, Defendant **admit they intend to mint** the

9   remainder of the infringing NFTs in their collection and insist they have a

10  constitutional right to do so.  *Infra* ¶ 11(d), lines 18-20 (arguing that surrendering

11  control of the smart contract to Yuga Labs would "have a stifling effect on Mr. Ripps

12  and Mr. Cahen's First Amendment rights as the minting of the RR/BAYC NFTs is

13  intricately connected to their protest against Yuga").  Defendants should not be able to

14  retain their ill-gotten profits and the means to continue profiting from their

15  infringement.

16        Finally, Defendants' argument that their infringement did not cause "actual

17  confusion" is irrelevant because (1) actual confusion is not a required element under

18  the Lanham Act to obtain equitable relief and (2) even so, there is ample evidence of

19  confusion in the record.  *See supra* ¶ 4.

20        **Defendants' Reply:**

21       Yuga's Response is unsupported.  First, as outlined above, we "must ensure that

22  the injunction is tailored to eliminate only the specific harm alleged." *Toyota Motor*

23  *Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010) (cleaned up).

24  Including a transfer of the smart contract would not be tailored to address the harm

25  alleged here.  Further, Yuga's citations to the decisions other courts have held with

26  regard to cases against Mr. Lehman (who settled with Yuga) and Mr. Hickman (who

27

28

1  had a default judgment entered against him) are dissimilar to the posture in this case,

2  not binding, and irrelevant.

3        Second, the testimony Yuga cites to for support is unconvincing.  Specifically,

4  Yuga cites to Mr. Solano's declaration where he asserts that the smart contract uses

5  the BAYC Marks and that it has caused and will continue to cause confusion.  This is

6  not supported. The smart contract that Yuga seeks to obtain clearly indicates the

7  source of the RR/BAYC NFTs is Mr. Ripps's wallet and not Yuga.  *See* JTX-1146.

8  Therefore, the smart contract does not contribute to the alleged confusion.

9  Additionally, the smart contract is, even according to Yuga's own witness's

10  testimony, immutable and cannot be changed even if transferred to Yuga.  *See* Trial

11  Tr. [Atalay] 133:24-8.  Accordingly, an injunction transferring the contract to Yuga

12  would not be tailored to eliminate the alleged harm of infringement.

13        Additionally, as the evidence presented at trial indicated, Yuga has not

14  identified even a single person who obtained an RR/BAYC NFT believing it was

15  sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a

16  single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial

17  Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman]

18  219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's

19  focus on, I think, what you were focused on. Yuga Labs has been unable to identify

20  even[] a single person who purchased an RR/BAYC believing it to be sponsored by

21  Yuga Labs; right? A Correct.").  Accordingly, there is no evidence of actual confusion

22  resulting from the sale of RR/BAYC NFTs that an injunction transferring the

23  RR/BAYC smart contract would eliminate.

24        Yuga also cites to Mr. Atalay's declaration, which states that Yuga could limit

25  any additional RR/BAYC NFTs that were minted if they had the contract.  This same

26  goal could be reached by less restrictive means, however, such as an injunction that

27  prohibits Mr. Ripps and Mr. Cahen from selling RR/BAYC NFTs.  *See* Dkt. 419-1,

28

1    CL 145.  Accordingly, the injunctive relief Yuga seeks is not tailored to address the

2    harm alleged here.

3          Third, acknowledging that minting RR/BAYC NFTs is intricately connected to

4    Mr. Ripps and Mr. Cahen's protest against Yuga is in no way an admission that

5    Defendants intend to mint more RR/BAYC NFTs and Yuga's assertion that it is, is

6    unfounded and misleading.  That portion of Defendants' objection shows the

7    important First Amendment considerations at play in issuing an injunction that

8    involves the transfer of the smart contract that the court must weigh.

9          Fourth, Mr. Solano's testimony was not credible given the many false and

10   misleading statements contained in his declaration, as well as his repeated

11   impeachment at trial.  For example, Mr. Solano was also forced to concede on cross-

12   examination that his sworn declaration included a false statement claiming that

13   "Defendants continue to receive royalties or creator fees from sales on secondary

14   marketplaces."  Trial Tr. [Solano] 48:15-49:4. Mr. Solano also relied on the phrase

15   "business venture" in Mr. Lehman's declaration, without having considered that the

16   phrase "business venture" was selected by Yuga's counsel, and that Mr. Lehman

17   would have liked to use different words.  Trial Tr. [Solano] 40:3-14.  Mr. Solano also

18   relied on Mr. Lehman's declaration without having considered that Mr. Lehman knew

19   he could not settle his case without executing a declaration concerning matters of

20   Yuga's choosing (Trial Tr. [Solano] 38:14-16) and that Mr. Lehman was afraid for his

21   family at the time he signed his declaration, because Yuga's lawsuit against him

22   would be disastrous to his family and himself, even if Mr. Lehman won (Trial Tr.

23   [Solano] 38:17-19).  Mr. Solano also lacks credibility as a result of his repeated

24   impeachment at trial. Solano Decl.; Trial Tr. [Solano] 32:19-33:11 ("Q You don't

25   even know, sir, whether Bored Ape V3 was created by Ryder Ripps or not, do you? A

26   Yes, I do. Q Let's see what you said at your deposition, if we could. You gave a

27   deposition in this case; right? A Yes. Q And you swore an oath to tell the truth, same

28

1    oath as today; right? A Yes. Q If we look at your deposition -- and we can pull it up

2    on the screen -- at page 152, starting at line 13 'QUESTION: Was the Bored Ape V3

3    created by Ryder Ripps?' There's an objection from your counsel. 'ANSWER: I don't

4    know.' Was that your testimony at your deposition? A Yes."); *id*. at 34:9-19 ("[Q] Do

5    you know whether Ape Market exists? A We have the code for Ape Market from Tom

6    Lehman, yes. Q Take a look at your deposition at page 116, lines 5 through 6.

7    'QUESTION: Do you know whether Ape Market exists? 'ANSWER: I don't recall.'

8    Were you asked that question, and did you give that answer? A Yes.").

9         Finally, *see supra* ¶ 4, for Defendants' fulsome reply to Yuga's unfounded and

10   inaccurate response concerning actual confusion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28