| | |
|---|---|
| Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>Monica Grewal (*pro hac vice*)<br>monica.grewal@wilmerhale.com<br>Scott W. Bertulli (*pro hac vice*)<br>scott.bertulli@wilmerhale.com<br>Tyler Carroll (*pro hac vice*)<br>tyler.carroll@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>   **HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Fax: (617) 526-5000<br><br>Derek Gosma (SBN 274515)<br>derek.gosma@wilmerhale.com<br>Henry Nikogosyan (SBN 326277)<br>henry.nikogosyan@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>   **HALE AND DORR LLP**<br>350 South Grand Ave., Suite 2400<br>Los Angeles, CA 90071<br>Telephone: (213) 443-5300<br>Fax: (213) 443-5400<br><br>Attorneys for Defendants<br>*Ryder Ripps and Jeremy Cahen* | ERIC BALL (CSB No. 241327)<br>eball@fenwick.com<br>KIMBERLY CULP (CSB No. 238839)<br>kculp@fenwick.com<br>FENWICK & WEST LLP<br>801 California Street<br>Mountain View, CA  94041<br>Telephone:  650.988.8500<br>Facsimile:   650.938.5200<br><br>MOLLY R. MELCHER (CSB No. 272950)<br>mmelcher@fenwick.com<br>ANTHONY M. FARES (CSB No. 318065)<br>afares@fenwick.com<br>ETHAN M. THOMAS (CSB No. 338062)<br>ethomas@fenwick.com<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA  94104<br>Telephone:  415.875.2300<br><br>Additional Counsel listed on next page<br><br>Attorneys for Plaintiff<br>YUGA LABS, INC. |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                                Plaintiff,<br><br>          v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                                Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 11(d), lines 20-21**<br><br>Judge:  Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM                                                       DEFENDANTS' OBJECTIONS

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone:     310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

---

Case No. 2:22-cv-04355-JFW-JEM                               DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply:

### Plaintiff's Disputed Post Trial Finding of Fact No. 11(d), lines 20-21:

But for the transfer of the RR/BAYC smart contract, Yuga Labs would be entitled to $106,055 as disgorgement.

### Defendants' Basis of Dispute:

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

First, this $106,055 figure is not profit, but includes the theoretical value of NFTs that either Mr. Ripps and Mr. Cahen hold but have not sold or, more egregiously, that Mr. Ripps and Mr. Cahen have never actually minted. *See* Kindler Decl. ¶ 51, 54, 56 (Dkt. 338). It is improper to include in profits for disgorgement an estimated value of theoretical sales and theoretical NFTs that do not exist.

Second, in the course of Ms. Kindler's calculation of the value of these NFTs, she uses the floor price for RR/BAYC NFTs based on the secondary markets for them on January 27, 2023. Kindler Decl. ¶ 54 (Dkt. 338). Ms. Kindler opines that the floor price at that time was 0.115 ETH. *Id.* As the trial testimony indicated, however, the floor price for RR/BAYC NFTs has gone down and the floor price on June 7, 2023 was only 0.07 ETH. JTX-1624, Dkt. 287-1, Trial Tr. [Kindler] 182:11-13. Despite this considerable decrease in value, Ms. Kindler testified that she did not update her calculation to reflect the new floor price. Trial Tr. [Kindler] 198:2-12. It is inaccurate and outdated, therefore, to state that the value of these theoretical NFTs is $106,055.

Third, disgorgement is inappropriate here. An infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July

29, 2022). Disgorgement is, therefore, not an available remedy here because – as the evidence showed at trial - neither Mr. Ripps nor Mr. Cahen is a "conscious wrongdoer." *See* Ripps Decl. ¶¶ 144, 147, 158-176 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131, 145-155 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Disgorgement is also unavailable here because Yuga has not shown "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Legal remedies were available in this case. Yuga expressly asserted and offered expert testimony in support of legal remedies (including a claim for actual damages that its expert was able to quantify), which it then voluntarily relinquished. Dkt. 315-1 at 2; Trial Tr. [Kindler] 172:14-17, 173:1-8, 174:4-7, 175:17-19. Having abandoned available legal remedies, Yuga cannot obtain disgorgement. *See Hunting World Inc. v. Reboans, Inc.*, No. C 92-1519 (BAC), 1994 WL 763408, at *2-3 (N.D. Cal. Oct. 26, 1994).

Even if disgorgement were available here, Yuga would only be entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.* Here, the $106,055 that Yuga seeks in disgorgement is related to RR/BAYC NFTs that either Mr. Ripps and Mr. Cahen hold themselves or ones that do not yet exist. Mr. Ripps and Mr. Cahen obviously did not reserve the RR/BAYC NFTs they hold mistakenly believing they were sponsored by Yuga. *See* Trial Tr. [Kindler] 198:13-17.

Accordingly, this $106,055 cannot be considered profits attributable to infringement that would appropriately be disgorged.

Finally, the evidence Yuga cited is misleading. Ms. Kindler testified if Yuga receives an injunction preventing Mr. Ripps and Mr. Cahen from minting any new RR/BAYC NFTs or selling the ones they currently hold, Yuga is not entitled to the estimated value of these NFTs in disgorgement. Trial Tr. [Kindler] 198:18-25. Even if the Court limits its order to preventing the creation or sale of RR/BAYC NFTs, this figure should be considered outside what Yuga can seek in disgorgement.

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.

The value of the NFTs Defendants that have yet to sell or mint is a profit that should be disgorged, unless the issue is resolved by an appropriate injunction. *Supra* ¶ 11(d). The fluctuation in floor price of Defendants' infringing NFT collection does not make Ms. Kindler's valuation unreasonable. *Id.* Alternatively, even if Defendants' argument to exclude these quantifiable benefits from their profits calculation was correct, the Lanham Act authorizes the Court to modify the award to Yuga Labs upward to account for shortfalls such as this. *See also* 15 U.S.C. § 1117(a) (authorizing Court to "find that the amount of the recovery based on profits is [] inadequate" and "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

Defendants' additional objections should also be rejected because (1) disgorgement is available as a remedy in this case, and (2) Defendants' profits derived from their infringing NFTs are indeed attributable to their infringement. Additionally, as discussed *infra*, Defendants' objection should be rejected because (3) though it is

not required to obtain disgorgement of Defendants' profits from their infringing NFTs, there is ample evidence of confusion in the record (*infra* ¶ 11(e)).

**Yuga Labs Is Entitled to Disgorgement as a Remedy:** This case arises out of the Lanham Act, which expressly provides for damages ***and*** disgorgement of Defendants' profits. "The Lanham Act itself is no obstacle to a recovery of both plaintiff's damages and defendant's profits." *See* J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 30:73 (5th ed.) ("Plaintiff may be awarded damages in some circumstances in addition to defendant's profits."). Accordingly, the Lanham Act allows for three distinct remedies—(1) defendants' profits, (2) plaintiffs' damages, and (3) the costs of the action. 15 U.S.C. § 1117(a). These remedies are not stated in the disjunctive, and each are separately available under the statute. Moreover, the model jury instructions make clear that actual damages and disgorgement are available in the same case: "*In addition to actual damages*, the plaintiff is entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence." Manual of Model Civil Jury Instructions § 15.29, Trademark Damages—Defendant's Profits (emphasis added). Because the Court has found Defendants liable for intentional infringement (SJ Order (Dkt. 225) at 12), Yuga Labs is entitled to Defendants' profits from their infringing acts. Defendants are not allowed to retain the fruits of unauthorized trademark use. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015).

Additionally, disgorgement is expressly provided as a remedy for false designation of origin under the Lanham Act, regardless of willfulness. 15 U.S.C. § 1117(a) (a plaintiff is entitled to recover a "defendant's profits" for "a violation under section 1125(a)," in contrast to "a willful violation under section 1125(c)"). Indeed, as the Court has already observed, Defendants are incorrect to argue that intent is required for the Court to order disgorgement of their profits. June 9, 2023

Pretrial Conference Tr. at 33:12-16 ("But with respect to the remaining issues that we're going to be trying in this case, the defendants' profits, there is no willfulness requirement for the defendants' profits. It's an equitable remedy. It is a disgorgement. This is my view.").

**Defendants' Profits Are All Attributable To Their Infringement:** Defendants' pervasive use of the BAYC Marks related to every sale of RR/BAYC NFT. The smart contract underlying each of Defendants' infringing NFTs is immutably titled "Bored Ape Yacht Club" and given a contract symbol "BAYC," which is replicated on the Etherscan token tracker and anywhere that systems pull information directly from the blockchain. Kindler Decl. (Dkt. 338) ¶ 61; Atalay Decl. (Dkt. 337) ¶ 4; *see also* Solano Decl. (Dkt. 342) ¶¶ 46-47 (explaining that Defendants caused websites such as Etherscan to "prominently display[] the token as 'Bored Ape Yacht Club'" due to "the way Mr. Ripps created the infringing NFTs and his specific use of the BAYC brand as the NFT Collection's smart contract name and symbol"). Additionally, some of the NFTs that were offered for sale were reserved through the infringing rrbayc.com domain. Kindler Decl. (Dkt. 338) ¶ 61. So again, Defendants were using Yuga Labs' BAYC Marks in the marketing of the infringing RR/BAYC NFTs. More still, "other RR/BAYC NFTs were sold on marketplaces such as OpenSea and Foundation, which used the BAYC Marks." *Id.* (citing JTX-29; JTX-670). Defendants also "used the BAYC Marks to sell and promote their own product." SJ Order (Dkt. 255) at 18. And finally, "[t]he NFTs held by Defendants or not yet minted derive their value from being part of the broader RR/BAYC NFT collection, the value of which has accrued through the sale and promotion of RR/BAYC NFTs that are already in the market." Kindler Decl. (Dkt. 338) ¶ 61. All profits Defendants derived from their RR/BAYC NFTs were ill-gotten from their willful infringement of Yuga Labs' BAYC Marks. Defendants are not allowed to

retain the fruits of unauthorized trademark use.  *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015).

Yuga Labs is entitled to disgorgement of profits that are derived "from the infringement." *Id.* at 1076.  The RR/BAYC NFTs are infringing goods that Defendants created and placed into interstate commerce—the Court has already determined that these goods are likely to confuse consumers, SJ Order (Dkt. 225) at 10-13—and so profits derived from the sale of those goods resulted from Defendants' infringement.  There is no requirement for Yuga Labs to go beyond that and prove that every dollar was attributable to instances of "actual confusion," which is not even a required element of an infringement case.  SJ Order (Dkt. 225) at 10 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

In sum, profits from the sales of Defendants' infringing NFTs, each of which Defendants admit used the BAYC Marks, are necessarily attributable to Defendants' infringement of the BAYC Marks.  In fact, Defendants admit Yuga Labs' portion of the proposed finding of fact in ¶ 7(c) that "Each of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks".

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Yuga's response is unsupported and inaccurate.  First, *see supra* ¶ 11(d) for a fulsome discussion of why the value of RR/BAYC NFTs that do not exist or have not been sold should not be considered profits.  Additionally, see that section for a complete explanation of how the floor price Ms. Kindler uses for her calculations of the value of those RR/BAYC NFTs is outdated and over-estimates the possible profit the sale of these theoretical NFTs could make.

Second, the section of the Lanham Act that Yuga cites to for support for its argument that the court should consider an upward modification of a profit calculation

is inapplicable here and misleading. As the full portion of Section 1117(a) states "[i]f the court shall find that the amount of the recovery based on profits is either inadequate *or excessive* the court may in its discretion enter judgment for such sum as the court shall find to be just, *according to the circumstances of the case. Such sum* in either of the above circumstances *shall constitute compensation and not a penalty*." 15 U.S.C. § 1117(a) (emphasis added). Additional disgorgement would be excessive veer into punishment, impermissible under the statute given Defendants' intent to criticize Yuga, good faith, and steps taken to avoid confusion, and Yuga's authorization of projects like RR/BAYC—all of which are discussed in greater detail in *supra* ¶ 4 and 7(a).

Third, for the reasons provided in *infra* ¶ 13, disgorgement is not available because Yuga has not shown an absence of adequate remedy at law.

Fourth, for the reasons provided in *infra* ¶ 13, disgorgement is not available because Defendants acted in good faith efforts to protest and were not "conscious wrongdoers." Further, Yuga improperly relies on the Court's summary judgment order supports a finding of intentional infringement because the "law of the case doctrine does not apply to pretrial rulings *such as motions for summary judgment*." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

Finally, if Yuga is entitled to disgorgement of Mr. Ripps and Mr. Cahen's profits, which is something Defendants argue they are not, as outlined above, Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). Yuga incorrectly outlines what is required for profit to be considered attributable to the infringing activity. "If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the

1  infringing mark because of the defendant's recommendation or his reputation or for
2  any reason other than a response to the diffused appeal of the plaintiff's symbol" then
3  they cannot be disgorged as "[t]he plaintiff of course is not entitled to profits
4  demonstrably not attributable to the unlawful use of his mark." *Mishawaka Rubber &*
5  *Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942).  This fundamental
6  principle clearly prevents Yuga from receiving profits that were made for reasons
7  beyond the appeal of its symbol, namely the profits attributable to those who reserved
8  an RR/BAYC NFT as a protest against Yuga or to support Mr. Ripps and his
9  renowned reputation as a conceptual artist.  *See* Ripps Decl. ¶ 21 (Dkt. 346)
10 (uncontested); JTX-2333.

11         As explained in *supra* ¶¶ 4 and 7(a), the record in this case is clear that there
12 was no confusion and *many* sales of RR/BAYC NFTs were genuine protest.  Although
13 Ms. Kindler could not deny that some purchasers bought the RR/BAYC NFTs out of
14 genuine protest of Yuga (Trial. Tr. 189:1-10), she nevertheless argued that
15 apportioning out those purchases was unnecessary since *subsequent* purchasers may
16 have been confused (an assertion for which she offered no evidence).  But that
17 explanation makes little sense, and certainly does not justify her failure to apportion.
18 To the contrary, in the hypothetical scenario where an initial purchaser *was not*
19 confused and a subsequent purchaser was, a proper damages analysis would apportion
20 out the profits accrued from the original sale and only count the profits from the sale
21 that was attributable to confusion.  *See Mishawaka Rubber*, 316 U.S. at 206.

22         Further, Ms. O'Laughlin's survey evidence is unreliable for the reasons
23 provided in *infra* ¶ 32.

24         Indeed, none of Yuga's experts addressed Defendants extensive activities to
25 dispel any risk of confusion, including their vocal protest, always identifying Mr.
26 Ripps as the creator of RR/BAYC,  and the verifiable provenance of RR/BAYC
27 NFTs.  *See*, *e.g.*, Ripps Decl. ¶¶ 101-109, 110; JTX-2085; JTX-1146.
28

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ *Louis W. Tompros* |
| 5 | | Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>**WILMER CUTLER PICKERING HALE** |
| 6 | | **AND DORR LLP**<br>60 State Street |
| 7 | | Boston, MA 02109<br>Telephone: (617) 526-6000 |
| 8 | | Fax: (617) 526-5000 |
| 9 | | Attorneys for Defendants |
| 10 | | RYDER RIPPS and JEREMY CAHEN |
| 11 | | |
| 12 | | |
| 13 | Dated: October 5, 2023 | FENWICK & WEST LLP |
| 14 | | |
| 15 | | By: /s/ *Eric Ball* |
| 16 | | Eric Ball<br>eball@fenwick.com |
| 17 | | **FENWICK & WEST LLP**<br>801 California Street |
| 18 | | Mountain View, CA 94041<br>Telephone: (650) 988-8500 |
| 19 | | Fax: (650) 938-5200 |
| 20 | | Attorneys for Plaintiff |
| 21 | | YUGA LABS, INC. |

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000