Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Finding of Fact No. No. 11(e)** <br><br> Judge: Hon. John F. Walter |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:     310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Case No. 2:22-cv-04355-JFW-JEM                                    DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply:

### Plaintiff's Disputed Post Trial Finding of Fact No. 11(e):

The sum of Defendants' profits to be disgorged is $1,375,361.92.

### Defendants' Basis of Dispute:

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

First, disgorgement is not an available remedy here. An infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Disgorgement is only warranted in cases of "conscious wrongdoers." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548-JVS (AGRx), 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022). Disgorgement is, therefore, not an available remedy here because – as the evidence showed at tri–l - neither Mr. Ripps nor Mr. Cahen is a "conscious wrongdoer." *See* Ripps Decl. ¶¶ 144, 147, 158-176 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131, 145-155 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

Disgorgement is also unavailable here because Yuga has not shown "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Legal remedies were available in this case. Yuga expressly asserted and offered expert testimony in support of legal remedies (including a claim for actual damages that its expert was able to quantify), which it then voluntarily relinquished. Dkt. 315-1 at 2; Trial Tr. [Kindler] 172:14-17, 173:1-8, 174:4-7, 175:17-19. Having abandoned available legal remedies, Yuga cannot obtain disgorgement. *See Hunting World Inc. v. Reboans, Inc.*, No. C 92-1519 (BAC), 1994 WL 763408, at *2-3 (N.D. Cal. Oct. 26, 1994).

1  Finally, even if disgorgement were available here, Yuga would only be entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.*

Yuga has failed to show that any portion of this $1,375,361.92 figure is attributable to the infringing activity. As the evidence presented at trial showed, Yuga has not identified even a single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7. Conversely, the evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest *against* Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Given the evidence, Yuga has not shown that they are entitled to any portion of profit from the RR/BAYC project as there was no profit made that was attributable to the infringing activity.

Finally, the $1,375,361.92 figure itself is an incorrect calculation of the profits Mr. Ripps and Mr. Cahen have received from the RR/BAYC project. First, the evidence presented at trial showed that the RSVP contract also distributed $93,135.62 in automated refunds. Ripps Decl. ¶¶ 174-175 (Dkt. 346) (uncontested). This figure improperly includes in its profits calculation $93,135.62 in automated refunds executed through the RSVP reservation contract. Ripps Decl. ¶¶ 174-175 (Dkt. 346)

1  (uncontested).  Also, Mr. Ripps and Mr. Cahen incurred approximately $15,100.00 in
2  miscellaneous expenses associated with wages, a computer, and travel expenses.
3  Ripps Decl. ¶ 136 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 174-176 (Dkt. 344).  This
4  figure fails to exclude those expenses from the profit calculation.

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless, this total figure is correct for all the reasons that the subtotals are correct.  *Supra* ¶ 11(b-d).  Specifically, Ms. Kindler correctly deducted refunds despite Defendants' false claim to the contrary, and Defendants failed to justify their proposed deductions.  *Id.*

Defendants remaining arguments regarding the availability of disgorgement in this case and attributing their profits to their infringement are addressed in the prior section, where Defendants made identical arguments.  *Supra* ¶ 11(d).  Therefore, Defendants' objection should be rejected because (1) disgorgement is available as a remedy in this case, (2) Defendants' profits derived from their infringing NFTs are indeed attributable to their infringement, and (3) though it is not required to obtain disgorgement of Defendants' profits from their infringing NFTs, there is ample evidence of confusion in the record.  In addition to these reasons, Defendants' objection should also be rejected because (4) Defendants' cherry-picked communications from third parties are not a reliable rebuttal to Yuga Labs' experts' findings, and (5) there is ample evidence of actual confusion in the record.

**Defendants' Cherry-Picked Communications With Purported Consumers Do Not Rebut Yuga Labs' Experts' Findings:** Additionally, Defendants' cherry-picked communications from a self-selecting group are far from a comprehensive survey of consumer confusion in the market.  Defendants have no evidence supporting a claim that a statistically significant number of consumers were not confused.

Indeed, the hundreds of refunds they provided at consumers' requests suggest that some purchasers were confused. *See, e.g.*, Kindler Decl. (Dkt. 338) ¶ 44. At least some of those hundreds of refund demands could have been from confused consumers who "weren't going to, you know, raise their hand and shout about it." Trial Tr. at 54:10-16. Moreover, they ignore the ample confusion on Twitter and other sources that Yuga Labs identified. SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Depo. Designations (Dkt. 396) at 290:4-9; JTX-1049; Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7. Moreover, Defendants were aware of the confusion. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"); JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at

59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated. A lot of people don't have the technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker).

Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion. Moreover, there is no reliable evidence in the record that the individuals identified in the cited emails, or all other purchasers, are "collectors" as Defendants contend.

**There Is Ample Evidence That Defendants Knew They Were Confusing Consumers:** Defendants knew they were using the BAYC Marks in a way that was likely to confuse consumers and did so with the intent to profit from their infringement. Defendants discussed making "like a million dollars." JTX-1574; *see also* JTX-1586 (Mr. Cahen to Mr. Ripps: "I t[h]ink you are gonna make millions too man"); JTX-801.239 (Mr. Cahen to Mr. Lehman: "I think we will make alot of money tbh"; "Potentially a lot"). And despite being urged to use different images or overlay some commentary on the images they did use to avoid confusion, Defendants chose not to. *See, e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"); JTX-801.196 (Mr. Lehman demonstrating what an overlay might look like and recommending not to "in the marketing show screenshots like the ones [Mr. Hickman] showed" "[b]ecause it is too confusing to the 'average joe'"); JTX-696.1 (tweet

showing screenshot of Ape Market). Instead, they continued with their infringement, knowing that they were creating confusion. JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated. A lot of people don't have the technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker); Dkt. 416 at ¶ 7.

They also discussed that they knew they were infringing as they acted contrary to their attorneys' advice. JTX-801.371 (Cahen to Ripps: "per our attorney we may just need to change the skull / If we want to fight trademark"). Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

*First*, Defendants' objections and replies from above are incorporated here and show that this figure is an inaccurate calculation of disgorgement and that disgorgement generally is not an available remedy here. *See supra* ¶ 11(b-d).

*Second*, as explained in *supra* ¶ 7(d), lines 3:20-34, Defendants received hundreds of letters from actual consumers expressing support for the RR/BAYC protest and confirm that they were not confused. Defendants did not cherry-pick letters.

*Third*, as explained in *supra* ¶ 7(d), lines 3:20-34, Kindler's declaration does not support that any refunds were a result of confusion—in fact none of them were.

*Fourth*, for the reasons provided in *supra* ¶¶ 4 and 7(a), there is ample evidence showing that there was no actual confusion, that Defendants acted in good faith, reasonably believed that the RR/BAYC collection was authorized, and took many steps to ensure that there was no meaningful risk of confusion.

Indeed, Neither Defendants, Yuga, or Mr. Solano have been able to identify even a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7.

*Fifth*, for the reasons provided in *infra* ¶ 32, O'Laughlin's survey evidence is deeply flawed and unreliable.

*Lastly*, the evidence Yuga cites to is unsupportive. Yuga cites to JTX-1029, which includes a tweet from GemBot, which is an automated software application and not a real person. Cahen Decl. ¶¶ 226-227 (Dkt. 344). The very first comments included on that tweet include users identifying that Mr. Ripps is the source of the NFT. Further, there is no indication that any of the users actually reserved an RR/BAYC NFT. JTX-1030, JTX-1032; JTX-1031, JTX-1034, JTX-1035.

1        Yuga also cites to private chats that the RR/BAYC creators used such as JTX-109 and JTX-801.  But these are discussions about the ongoing design of ApeMarket.  ApeMarket was never launched and could, therefore, never have caused any actual consumer confusion.  Cahen Decl. ¶¶ 257-262 (Dkt. 344); JTX-801.185; Trial Tr. [Hickman] 212:22-24; *see also* JTX-44.00002 (also not about consumer confusion).

         Also, Yuga cites to a screenshot, JTX-701, of a Bloomberg newscast.  This exhibit does not support a finding of actual confusion.  The chart separately lists both "Bored Ape Yacht Club" and "Bored Ape Yacht Club V3" indicating that the anchor understood that these were two different projects.  Additionally, Mr. Cahen is not aware of anyone who watched the Bloomberg program and reserved an RR/BAYC NFT believing it to be a Yuga collection.  Cahen Decl. ¶ 252 (Dkt. 344).

         Additionally, Yuga cites to the Lehman Declaration, JTX-1, the accuracy and credibility of which are tainted by Mr. Lehman's motivations to settle his ongoing case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's case against Mr. Lehman, JTX-621, was entered after Mr. Lehman settled

         Yuga also cites to Mr. Ripps's deposition transcript where he discusses how the LooksRare platform that sold RR/BAYC NFTs looked like at one point in time.  Ripps Depo. Designations (Dkt. 396) at 290:4-9.  Again, this does nothing to support a finding of consumer confusion as any consumer had the ability to determine the provenance of an RR/BAYC NFT through Etherscan.  Ripps Decl. ¶¶ 88-89. Further, this does not undermine the finding of fact as this does not show that anyone who reserved an RR/BAYC NFT was confused about the origin.

         Yuga also cites to witnesses making conclusory and unfounded statements about possible confusion.  *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22.

Dated:  October 5, 2023                               WILMER CUTLER PICKERING HALE

Case No. 2:22-cv-04355-JFW-JEM            -8-                    DEFENDANTS' OBJECTIONS

|  |  |
|---|---|
|  | AND DORR LLP |
|  |  |
|  | By: /s/ *Louis W. Tompros* |
|  | Louis W. Tompros (*pro hac vice*) |
|  | louis.tompros@wilmerhale.com |
|  | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
|  | 60 State Street |
|  | Boston, MA 02109 |
|  | Telephone: (617) 526-6000 |
|  | Fax: (617) 526-5000 |
|  |  |
|  | Attorneys for Defendants |
|  | RYDER RIPPS and JEREMY CAHEN |
|  |  |
| Dated: October 5, 2023 | FENWICK & WEST LLP |
|  |  |
|  | By: /s/ *Eric Ball* |
|  | Eric Ball |
|  | eball@fenwick.com |
|  | **FENWICK & WEST LLP** |
|  | 801 California Street |
|  | Mountain View, CA 94041 |
|  | Telephone: (650) 988-8500 |
|  | Fax: (650) 938-5200 |
|  |  |
|  | Attorneys for Plaintiff |
|  | YUGA LABS, INC. |

# ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000