| | |
|---|---|
| Louis W. Tompros (*pro hac vice*) <br> louis.tompros@wilmerhale.com <br> Monica Grewal (*pro hac vice*) <br> monica.grewal@wilmerhale.com <br> Scott W. Bertulli (*pro hac vice*) <br> scott.bertulli@wilmerhale.com <br> Tyler Carroll (*pro hac vice*) <br> tyler.carroll@wilmerhale.com <br> **WILMER CUTLER PICKERING HALE AND DORR LLP** <br> 60 State Street <br> Boston, MA 02109 <br> Telephone: (617) 526-6000 <br> Fax: (617) 526-5000 <br><br> Derek Gosma (SBN 274515) <br> derek.gosma@wilmerhale.com <br> Henry Nikogosyan (SBN 326277) <br> henry.nikogosyan@wilmerhale.com <br> **WILMER CUTLER PICKERING HALE AND DORR LLP** <br> 350 South Grand Ave., Suite 2400 <br> Los Angeles, CA 90071 <br> Telephone: (213) 443-5300 <br> Fax: (213) 443-5400 <br><br> Attorneys for Defendants <br> *Ryder Ripps and Jeremy Cahen* | ERIC BALL (CSB No. 241327) <br> eball@fenwick.com <br> KIMBERLY CULP (CSB No. 238839) <br> kculp@fenwick.com <br> FENWICK & WEST LLP <br> 801 California Street <br> Mountain View, CA 94041 <br> Telephone: 650.988.8500 <br> Facsimile: 650.938.5200 <br><br> MOLLY R. MELCHER (CSB No. 272950) <br> mmelcher@fenwick.com <br> ANTHONY M. FARES (CSB No. 318065) <br> afares@fenwick.com <br> ETHAN M. THOMAS (CSB No. 338062) <br> ethomas@fenwick.com <br> FENWICK & WEST LLP <br> 555 California Street, 12th Floor <br> San Francisco, CA 94104 <br> Telephone: 415.875.2300 <br><br> Additional Counsel listed on next page <br><br> Attorneys for Plaintiff <br> YUGA LABS, INC. |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Finding of Fact No. 12, lines 6:24-25** <br><br> Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM                    DEFENDANTS' OBJECTIONS

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

**Plaintiff's Disputed Post Trial Finding of Fact No. 12, lines 6:24-25:**

<u>All of Defendants' profits result from their infringing activity because each RR/BAYC NFT used the BAYC Marks</u>. Dkts. 338 ¶61 ("these profits are all traceable to Defendants' uses of Yuga Labs' BAYC Marks"); 342 ¶36; 392 at 188:15-25, 203:1-17.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420).

Yuga has failed to show that any portion of the profits Mr. Ripps and Mr. Cahen received from the RR/BAYC project are attributable to the infringing activity. Yuga has not identified even a single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7. Conversely, the evidence presented at trial shows that many people who reserved RR/BAYC NFTs did so out of a protest *against* Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Given the evidence, Yuga has not shown that they are entitled to any portion of profit from the RR/BAYC project as there was no profit made that was attributable to the infringing activity.

Additionally, evidence at trial showed that Yuga does not own the alleged BAYC Marks. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26

1  (Dkt. 345); JTX 2672; JTX 2673.  That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs.  Trial Tr. [Solano] 25:1-4.

Yuga does not own the asserted marks because NFTs are not eligible for trademark protection as non-tangible communicative work.  The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003); *Id.* at 33-35; *see also Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014).  Here, the "goods" for which Yuga claims trademark rights are NFTs, which are comparable to certificates of authenticity/ownership and are not digital goods in themselves.  Trial Tr. [Atalay] 127:9-16.

Also, Mr. Ripps and Mr. Cahen used modified versions of the alleged BAYC Marks.  For example, the logo used states "This Logo is Based on the SS Totenkopf; 18 Teeth." *See* JTX-2085.  Additionally, the website for the project used the modified "RR/BAYC" throughout. *Id.*

Finally, the evidence Yuga cites to does not support this finding of fact.  Yuga cites to Ms. Kindler's declaration and trial testimony where she includes conclusory statements that she believes the profits she calculated are traceable to Mr. Ripps and Mr. Cahen's use of Yuga's marks.  But, as described above, the evidence shows that Yuga does not own the alleged BAYC marks and Mr. Ripps and Mr. Cahen used modified versions of the alleged BAYC Marks.  Further, Ms. Kindler's opinion does not include any apportionment to determine what profits were attributable to infringement.  Trial Tr. [Kindler] 189:16-25.

Yuga also cites to Mr. Solano's declaration, Dkt. 342, which includes an inaccurate statement that Mr. Ripps and Mr. Cahen used the alleged BAYC Marks in every reservation of RR/BAYC NFTs.  Again, as outlined above, the evidence shows that Yuga does not own the alleged BAYC marks and Mr. Ripps and Mr. Cahen used

1  modified versions of the alleged BAYC Marks.  Mr. Solano also lacks credibility as a
2  result of his repeated impeachment at trial.  Solano Decl. (Dkt. 342); Trial Tr.
3  [Solano] 32:19-33:11; *id.* at 34:9-19.

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless, Defendants' objection should be rejected because (1) Defendants' profits derived from their infringing NFTs are indeed attributable to their infringement, (2) the record shows (and Defendants admit) that Defendants used the BAYC Marks in each RR/BAYC NFT, and (3) Defendants' additional arguments that Yuga Labs does not own the BAYC Marks and regarding actual confusion are meritless.  Additionally, the Court should reject Defendants' objections because (4) the Court has rejected Defendants' arguments that Yuga Labs does not own the BAYC Marks, and the evidence shows that Yuga Labs owns these marks (*infra* ¶ 53 lines 17:8-1, 12-14).

**Defendants' Profits Are All Attributable To Their Infringement:**
Defendants' pervasive use of the BAYC Marks related to every sale of RR/BAYC NFT.  The smart contract underlying each of Defendants' infringing NFTs is immutably titled "Bored Ape Yacht Club" and given a contract symbol "BAYC," which is replicated on the Etherscan token tracker and anywhere that systems pull information directly from the blockchain.  Kindler Decl. (Dkt. 338) ¶ 61; Atalay Decl. (Dkt. 337) ¶ 4; *see also* Solano Decl. (Dkt. 342) ¶¶ 46-47 (explaining that Defendants caused websites such as Etherscan to "prominently display[] the token as 'Bored Ape Yacht Club'" due to "the way Mr. Ripps created the infringing NFTs and his specific use of the BAYC brand as the NFT Collection's smart contract name and symbol").  Additionally, some of the NFTs that were offered for sale were reserved through the infringing rrbayc.com domain.  Kindler Decl. (Dkt. 338) ¶ 61.  So again, Defendants were using Yuga Labs' BAYC Marks in the marketing of the infringing RR/BAYC

NFTs.  "[O]ther RR/BAYC NFTs were sold on marketplaces such as OpenSea and Foundation, which used the BAYC Marks."  *Id.* (citing JTX-29; JTX-670).  Defendants also "used the BAYC Marks to sell and promote their own product."  SJ Order at 18.  And finally, "[t]he NFTs held by Defendants or not yet minted derive their value from being part of the broader RR/BAYC NFT collection, the value of which has accrued through the sale and promotion of RR/BAYC NFTs that are already in the market."  Kindler Decl. (Dkt. 338) ¶ 61.  All profits Defendants derived from their RR/BAYC NFTs were ill-gotten from their willful infringement of Yuga Labs' BAYC Marks.  Defendants are not allowed to retain the fruits of unauthorized trademark use.  *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015).

Yuga Labs is entitled to disgorgement of profits that are derived "from the infringement." *Id.* at 1076.  The RR/BAYC NFTs are infringing goods that Defendants created and placed into interstate commerce—the Court has already determined that these goods are likely to confuse consumers, SJ Order (Dkt. 225) at 10-13—and so profits derived from the sale of those goods resulted from Defendants' infringement.  There is no requirement for Yuga Labs to go beyond that and prove that every dollar was attributable to instances of "actual confusion," which is not even a required element of an infringement case.  SJ Order (Dkt. 225) at 10 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

Ms. Kindler's testimony to this effect is not "conclusory," as Defendants state.  She explained all of these considerations in her trial declaration, assessing NFTs "reserved on Mr. Ripps' website, rrbayc.com"; "sold on marketplaces such as OpenSea and Foundation"; sold "without the use of either rrbayc.com or an NFT marketplace"; and "held by Defendants or not yet minted."  Kindler Decl. (Dkt. 338) ¶ 61.  Indeed, Ms. Kindler testified at trial when asked why she did not apportion less than all of Defendants' profits to their infringement:  "I don't think that would be appropriate because they all were sold using the infringing marks.  And in the first

instance, even if there's not confusion because people might believe or agree with the premise under which the tokens are being sold, that doesn't mean in the second and third and fourth instance that there isn't confusion occurring in the marketplace." Trial Tr. at 189:4-10.  This opinion is further supported by the consumer surveys conducted by Ms. O'Laughlin, which demonstrate a substantial likelihood of confusion on secondary marketplaces.  O'Laughlin Decl. (Dkt. 341) .  Defendants provided no affirmative or rebuttal expert to rebut any of this testimony.

**Defendants' Infringing NFTs All Used BAYC Marks:**  Defendants have no good-faith basis to dispute this fact, where they admit Yuga Labs' proposed finding of fact that "[e]ach of Defendants' 9,546 RR/BAYC NFTs used the BAYC Marks." *Supra* ¶ 7(c) (underlined blue).  And, as discussed *supra* ¶ 7(b), their argument contradicts the Court's prior holding, and it is incorrect based on the trial record.  The fact that Defendants sometimes used "modified" BAYC Marks instead of the exact marks does not change this fact or undo the likelihood of confusion they caused.

**Defendants' Additional Arguments Are Meritless:**  Defendants also reassert objections that Yuga Labs does not own the BAYC Marks and that their infringement did not cause actual confusion.  These arguments have no merit.

The Court has already held, and Defendants have already stipulated, that Yuga Labs owns the BAYC Marks.  *See supra* ¶ 1.  There is no good-faith basis for Defendants to dispute this or to reargue that Yuga Labs granted Defendants a license to infringe.  *Id.*

As to confusion, as discussed above, Yuga Labs is entitled to disgorgement of profits that are derived "from the infringement," *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015)—not only from discrete, provable instances of actual confusion as Defendants seem to propose.  Even so, the record contains ample evidence of actual confusion and likelihood of confusion, notwithstanding Defendants' arguments to the contrary and efforts to relitigate these issues.  *Supra* ¶ 11(e).

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Defendants reiterate all points made in their objection. To the extent Yuga is relying on a Law of the Case argument, it cannot because it does not apply to Summary Judgment or issues decided for only one purpose. *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014); *Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019). No issues, including on apportionment, mark ownership, intent or actual confusion were decided and therefore were not relitigated.

Defendants' profits from the RR/BAYC Project are not attributable to the infringement. Yuga incorrectly outlines when a sale is considered attributable to the infringing activity. Yuga is only entitled to disgorgement of profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). Yuga incorrectly argues that any sale that uses a BAYC mark is attributable to the infringing activity. If it can be shown that purchasers ""bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol" then profits cannot be disgorged *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942). This principle prevents Yuga from receiving profits attributable to those who reserved an RR/BAYC NFT as a protest against Yuga or to support Mr. Ripps's art. *See* Ripps Decl. ¶ 21 (Dkt. 346) (uncontested); JTX-2333. The record in this case is clear that *many* sales of RR/BAYC NFTs were not the result of confusion, but genuine protest. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX-2590; JTX-2592; JTX-2595; JTX-2596; JTX-2599. Although Ms. Kindler could not deny that some purchasers bought the RR/BAYC NFTs out of genuine protest of

1  Yuga (Tria. Tr. 189:1-10), she nevertheless argued that apportioning out those
2  purchases was unnecessary since *subsequent* purchasers may have been confused.  But
3  that explanation makes little sense, and certainly does not justify her failure to
4  apportion. Where an initial purchaser *was not* confused and a subsequent purchaser
5  was, a proper damages analysis would apportion out the profits accrued from the
6  original sale and only count the profits from the sale that was attributable to
7  confusion.  See *Mishawaka Rubber*, 316 U.S. at 206.
8      There is ample evidence in the record that shows that there was no actual
9  confusion, a point that Yuga apparently now concedes and claims they do not need to
10 prove.  This makes sense, because Yuga's own witnesses admitted they were unaware
11 of any actual confusion.  Trial Tr. [Muniz] 85:3-7 ("Q.  Now let's focus on, I think,
12 what you were focused on. Yuga Labs has been unable to identify even[] a single
13 person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs;
14 right? A Correct."); Trial Tr. [Solano] 18:23-19:1.   However, without proving that
15 purchases were made by confused consumers, Yuga fails to properly apportion out the
16 damages.  As such, Ms. Kindler's refusal to apportion was error.
17     Ms. O'Laughlin's flawed surveys cannot support a finding of confusion.  Ms.
18 O'Laughlin conducted two flawed surveys that failed to measure confusion.  She
19 acknowledged that she used an overly expansive definition of the market that included
20 people who did not have any interest in purchasing an NFT, much less knowledge of
21 what an NFT is after running pretests.  Trial Tr. [O'Laughlin] 150:2-151:16; 152:4-
22 10; 144:25-146:7.  Ms. O'Laughlin also acknowledged that she lacked basic
23 knowledge about NFTs, admitting to believing that cryptocurrency was an NFT.  *Id*.
24 at 147:12-14.  The result of her lack of knowledge was an inherently flawed survey
25 that could not show confusion because the market was too broad.  This was despite
26 her acknowledgement that choosing the right sample population "matters for the
27 analysis." *Id*. at 146:18-25.
28

      Ms. O'Laughlin also erred by producing two contradictory surveys. In 2020 she authored an article titled, "Which Method is For You? Not All Surveys Are Made the Same" JTX-314. In that article she discusses choosing between the Squirt and Eveready surveys on the basis of mark strength. Here, she ignored her own advice and operated both surveys. This was despite acknowledging that at her deposition she agreed with her earlier advice that the Eveready survey is most appropriate when the mark is strong, and the Squirt survey when the mark is weak. Trial Tr. [O'Laughlin] 143:9-144:6. All the while, she never discerned mark strength. *Id*. at 144:12-18. She broke with her prior practice as well, as it was the first case she personally testified in where she offered an opinion based on both surveys. *Id.* at 144:19-24.

      Ms. O'Laughlin also could not explain the strong priming effect which influenced her results to her Everready survey. People were split into two groups, one who saw the words "Bored Ape Yacht Club" and one who saw the words "Chill Gorrilla Boat Club." Those in the experiment group who copied the words "Bored Ape Yacht Club" were counted as confused, but those in the control group who copied down the words "Chill Gorilla Boat Crew" were not. Trial Tr. [O'Laughlin] 154:24-157:14. Twenty-seven percent of those in the control group wrote "Chill Gorilla Boat Crew" verbatim and not counted as confused. *Id.* at 157:9:14; 158:20-159:1. Ms. O'Laughlin admitted that she did not account for this effect calling it "not particularly relevant." *Id.* at 158:20-159:1.

      Ms. O'Laughlin acknowledged that she could not attest to how long the versions of the websites that she used existed limiting her analysis. *See* Trial Tr. [O'Laughlin] 161:12-163:10; 163:13-163:20; 165:12-22.

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

Dated: October 5, 2023      FENWICK & WEST LLP

By: /s/ *Eric Ball*
Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

# ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000