Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>             Plaintiff,<br><br>   v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>             Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 14, lines 7:15, 7:16-18**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 14, lines 7:15, 7:16-18:**

<u>Defendants registered and used the infringing rrbayc.com and apemarket.com domains, and created the @ApeMarketplace Twitter account, to market and sell RR/BAYC NFTs by directly incorporating Yuga Labs' BAYC Marks</u>. SJ Order at 14-15; Dkts. 342 ¶48; 346 ¶100; JTX-94; JTX-95; JTX-696.

**Defendants' Basis of Dispute:**

Evidence at trial shows that the rrbayc.com and apemarket.com domains were not "infringing" because Yuga does not own the marks BORED APE YACHT CLUB, BAYC, BORED APE, BAYC Logo, BAYC BORED APE YACHT CLUB Logo, and the Ape Skull Logo. Yuga Labs gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga Labs' CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673. Additionally, Yuga incorrectly states that Defendants directly incorporated references to the marks. Defendants' RR/BAYC project only addressed Yuga's products in order to protest and criticize Yuga's use of problematic imagery.

Furthermore, evidence shows that Defendants created the rrbayc.com website to facilitate reservations related to their protest art project. Ripps Decl. ¶ 100 (Dkt. 346) (uncontested); Cahen Decl. ¶ 135 (Dkt. 344); Hickman Decl. ¶ 69 (Dkt. 345). The

1  rrbayc site helped streamline an artwork reservation process that Mr. Ripps was
2  facilitating himself.  Ripps Decl. ¶ 100 (Dkt. 346) (uncontested).

3        Apemarket.com never launched and was never used to sell anything.  Ripps
4  Decl. ¶ 180 (Dkt. 346) (uncontested); Cahen Decl. ¶ 260 (Dkt. 344).  Therefore,
5  apemarket.com never generated any revenue or profit. Cahen Decl. ¶ 261 (Dkt. 344).

6        Yuga cited a screenshot of the ApeMarket twitter page (JTX-696) in support of
7  their proposed finding of fact.  However, this doesn't establish any of the behaviors or
8  motivations they described. Defendants never released apemarket.com because it was
9  still in the ideation phase and Defendants ultimately decided against it.  Ripps Decl.
10 ¶ 178 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 257-258 (Dkt. 344).

11       **Plaintiff's Response:**

12       Defendants' objections should be rejected for the same reasons discussed *supra*
13 ¶ 4; specifically:  (1) Yuga Labs owns the BAYC Marks, (2) Yuga Labs did not give
14 Defendants a license to infringe the BAYC Marks, and (3) Defendants' infringement
15 is not art.

16       Additionally, as described below, Defendants' objection should be rejected
17 because Defendants used Ape Market to market their infringing NFTs.

18       **The @ApeMarketplace Twitter Account And The Ape Market NFT**
19 **Marketplace Are Clearly Related And Both Were Used To Promote RR/BAYC:**
20 Defendants created the @ApeMarketplace Twitter account to promote the Ape Market
21 marketplace and their infringing RR/BAYC NFTs.  The fact that the Twitter handle
22 solely controlled by Mr. Cahen contains "ApeMarket" alone demonstrates the
23 connection between the Twitter account and marketplace, but the Tweets from the
24 account confirm that Defendants used @ApeMarketplace to promote Ape Market and
25 RR/BAYC NFTs.  Cahen Depo. Designations (Dkt. 395) at 126:5-7 (Q:  And you are
26 the sole operator of the Ape Marketplace account? A:  That is correct, yes.").  One
27 such Tweet on June 20 asks, "Are you ready for ApeMarket.com, anon?" and another
28

Case No. 2:22-cv-04355-JFW-JEM       -2-      DEFENDANTS' OBJECTIONS

on June 13 teases the release of Ape Market stating "Get Ready" alongside a screenshot of Ape Market. JTX-696. And Mr. Cahen lied at trial when, under oath, he stated that he did not "plan to stimulate the sales of RR/BAYC NFTs by teasing the future release of ApeMarket." Trial Tr. at 234:15-18. Mr. Cahen tweeted from @ApeMarketplace a link to reserve an RR/BAYC on multiple occasions and on June 2 he tweeted that "[l]isting requires holding RR/BAYC." JTX-696. Defendants' own internal communications confirm the lie. On June 1 Mr. Cahen stated, "my goal for today is to create an announcement that will create hype and volume, we want to mint out the remainder of that collection." JTX-801.221. On that same day Mr. Cahen tweeted from @ApeMarketplace a screenshot of Ape Market with an image of an RR/BAYC and a link to reserve an RR/BAYC. JTX-696. This was a direct attempt to use the prospect of Ape Market to promote Defendants' infringing NFTs. Defendants' claim that Ape Market, @ApeMarketplace, and RR/BAYC are not connected is obviously false. The Tweets in JTX-696 repeatedly show the look, functionality, and intent of Ape Market using Yuga Labs' BAYC Marks and the infringing RR/BAYC NFTs within Ape Market.

**Defendants' Reply:**

Yuga has failed to cite credible evidence demonstrating the alleged infringement or the alleged marketing mentioned in this finding of fact. Therefore, this finding of fact should be rejected.

*First,* the evidence at trial showed that Yuga does not own the BAYC marks because (1) Yuga has either given away or abandoned its rights in the marks and (2) NFTs are not eligible for trademark protection. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt 344); Hickman Decl. ¶¶ 25-26 (Dkt 345); JTX 2672; JTX 2673. That transfer of

rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs. We can agree on that; right? A. Yes. That is covered in the terms.").

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. And, as Yuga's CEO admitted, there are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22. For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks. *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075. Further, Yuga does not own the asserted marks because NFTs are not eligible for trademark protection. The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). Misrepresentation of the origins of a ***communicative*** work is a dispute relegated to the confines of copyright law, not trademark. *Id.* at 33-35; *see also Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014) (*Dastar* bars trademark claims based on origin of hologram, as it is "likened to a cartoon animation"). Here, the "goods" for which Yuga claims trademark rights are NFTs, which are comparable to

1  certificates of authenticity/ownership and are not digital goods in themselves.  Trial
2  Tr. [Atalay] 127:9-16.
3  　　　　Defendants have never stipulated to Yuga's Ownership of the BAYC
4  Marks.  Defendants hotly disputed ownership of the BAYC marks at summary
5  judgment.  Dkt. 163 at 2-8.  And while ownership of the marks is not an issue relevant
6  to the remedies trial in this case, Yuga has for some reason affirmatively raised the
7  issue—forcing Defendants to re-articulate their dispute for purposes of preserving
8  their position for appeal and all other proceedings involving the BAYC marks.  Yuga
9  attempts to mischaracterize the Court record by citing to the pre-trial conference
10 order.  But ***nowhere*** in the pre-trial conference order did Defendants stipulate to
11 ownership of the BAYC marks.  Section 6 of the order contains all stipulated facts and
12 those stipulated facts include only that Yuga released the BAYC collection and
13 various facts about Defendants' activities associated with the RR/BAYC
14 collection.  Dkt. 320-1 at 3-4.  Yuga points to Section 5, which is the admitted facts
15 section, but this section again does not contain any admissions regarding "ownership"
16 of the marks.  Rather it merely identifies the asserted marks at issue for the remedies
17 trial—something that Defendants admitted in light of the scope of the remedies trial
18 and to ease this Court's work in adjudicating the remaining issues.   Dkt. 32-1 at 2-
19 3.  Lastly, Yuga cites to Defendants' statement that the "Court has determined that
20 Defendants infringed the BAYC Marks."  Dkt. 320-1 at 13.  But again, this is not an
21 admission of ownership, it is a statement regarding the procedural history in this case
22 that explains that the scope of trial is limited to remedies and does not include
23 infringement.  Had Defendants wanted to stipulate to ownership, they would have
24 clearly and expressly done so—they have not.  Defendants reserve the right to dispute
25 ownership on appeal and in any other proceedings involving the BAYC marks.
26 　　　　***Second,*** Yuga ignores that the evidence at trial (including Mr. Ripps's
27 uncontested declaration) confirms that Mr. Ripps has a long history as a successful
28

artist and that the RR/BAYC collection was yet another art project that Mr. Ripps created. Indeed, Yuga admits that Mr. Ripps is an artist and that Mr. Ripps's artistic contributions have been recognized by mainstream media. Dkt. 419-1 at 3.

Despite having admitted that Mr. Ripps is a publicly recognized artist, Yuga now attempt to rebut Mr. Ripps's unchallenged declaration regarding his career, including his work on the RR/BAYC collection, without having any meaning rebuttal evidence and without have cross-examined Mr. Ripps at trial. If Yuga truly believes that Mr. Ripps's declaration contains untrue statements about his career as one of the most recognized digital artists in the world and the RR/BAYC collection as a continuation of his artistic accomplishments, then Yuga could have tested those statements on cross-examination. As the Supreme Court has explained, "[c]ross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). This is because purpose of cross-examination is "the direct and personal putting of questions and obtaining immediate answers." *Id.*; *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004) ("One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information[.]"). Yuga's decision to not cross-examine Mr. Ripps regarding any portion of his declaration means that the "principle means" of testing Mr. Ripps's credibility weighs decisively in favor of accepting Mr. Ripps's declaration.

Thus, Yuga's election to not cross-examine Mr. Ripps has left Mr. Ripps's declaration uncontested, including the following statements:

> 24. My artwork intentionally pushes the boundaries of what is deemed socially or artistically "acceptable," particularly when critiquing internet culture.
>
> 25. One of my most well-known works, *Diventare Schiavo*, involved having people pack boxes through a VR set to demonstrate how the modern internet has reduced us all to "packing boxes."

26. Other works I created that comment on the internet include: *Barbara Lee*, a commentary on the interplay between truth and clickbait online, and *Ho*, an exhibit I created for the Postmasters Gallery which explores how social media uses manipulated images to mediate perception of self.

27. My art is meant to be interactive, and to be discussed and critiqued.

28. Much of my work has been the source of criticism and controversy. I welcome this as new ideas are often controversial or else they would not be new.

Ripps Decl. (Dkt. 346) ¶¶ 24-28.

Further, as discussed above, the RR/BAYC collection was yet another satirical art project as the voluminous emails from collectors show that the NFTs were reserved for the purpose of protesting and criticizing Yuga. Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX-2590; JTX-2592; JTX-2595; JTX-2596; JTX-2599.

***Third,*** Defendants never used ApeMarket to market anything. Yuga fails to present any evidence that ApeMarket was released. Instead, Yuga points to a twitter page which Defendants no longer use and present weak arguments that Defendants promoted a product which never existed. ApeMarket was never released, and there was no evidence that the webpage apemarket.com was a functioning website that could sell or promote anything. Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested). And the exhibits Yuga cites do not show otherwise. For example, JTX-696 does not show what apemarket.com displayed, what functionalities it had, and whether it has ever promoted or sold RR/BAYC NFTs. As noted above, ApeMarket was never released (Trial Tr. [Muniz] 85:11-12; [Hickman] 217:25-218:1; Cahen Decl. ¶ 260 (Dkt. 344); Ripps Decl. ¶ 180 (Dkt. 346) (uncontested)) and no evidence shows that the website

1  domain apemarket.com was ever used for the promotion or sale of anything.  And
2  JTX-801 shows that Defendants were in the ideation process for ApeMarket, the
3  RR/BAYC team discussed extensively how to ensure that apemarket.com would not
4  be confusing.  For example, Mr. Cahen discussed with Mr. Lehman the idea of using a
5  wrapper on apemarket.com to determine whether it would be an effective way to
6  ensure that website was clear for users.  JTX-801.185.  Mr. Cahen also discussed with
7  the RR/BAYC team the idea of using labels on apemarket.com.  *See* JTX-801-196
8  (Mr. Cahen wrote, "I think we could also have a label under the logo that denotes
9  which collection you are viewing or something" and further stating "[b]ecause that's
10 where the real importance lies[,] rrbayc truly is very important conceptual art …").
11 And JTX-809 is a screenshot of mock-up of apemarket.com that Mr. Ripps did not
12 approve and that was still subject to substantial changes from the ongoing ideation
13 process for apemarket.com.