Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>      Plaintiff,<br><br>  v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>      Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 15, lines 7:19-20**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

## Plaintiff's Disputed Post Trial Finding of Fact No. 15, lines 7:19-20:

The token tracker for the RR/BAYC smart contract uses Yuga Labs' BORED APE YACHT CLUB and BAYC marks. JT X-117; JTX-600; JTX-1146; Dkts. 337 ¶¶4, 5; 392 at 130:23-131:2.

## Defendants' Basis of Dispute:

Defendants did not create a token tracker "for" the RR/BAYC smart contract. Token trackers are tools created by third parties, such as Etherscan, which read metadata in smart contracts and digest that information. Yuga's characterization of the token tracker incorrectly attributes the token tracker to the smart contract created by Defendants.

Defendants intended for the RR/BAYC smart contract to be discernable from other smart contracts. The RR/BAYC collection was minted from Mr. Ripps personal wallet, "ryder-ripps.eth," which was displayed on the smart contract. Ripps Decl. ¶ 89 (Dkt. 346) (uncontested). Furthermore, the RR/BAYC smart contract featured a distinct contract address, different dates, and different token IDs than Yuga's Bored Ape Yacht Club NFTs. Ripps Decl. ¶ 89 (Dkt. 346) (uncontested).

With respect to the marks, Defendants dispute that Yuga owns marks for BORED APE YACHT CLUB and BAYC. Yuga Labs gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga Labs' CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673.

1

### Plaintiff's Response:

2    Defendants do not actually dispute this proposed finding of fact.  Their

3    arguments regarding other issues are nonetheless incorrect.

4    Defendants claim they were not responsible for token trackers such as

5    Etherscan's identifying Defendants' NFTs with the BAYC Marks.  There is no such

6    evidence to support this argument, and Defendants cite none.  JTX-600 shows "Bored

7    Ape Yacht Club" and "BAYC" coded into the RR/BAYC smart contract as source

8    identifiers, and Defendants admit that JTX-600 "is an Etherscan page recording a

9    transaction between Mr. Ripps and Foundation."  *Supra* ¶ 7(e).  In other words, Mr.

10   Ripps admits that he launched the smart contract with the BAYC Marks coded into it,

11   which caused websites such as Etherscan to confusingly display those marks to the

12   public as if the smart contract was created by Yuga Labs.  These marks can never be

13   removed from the smart contract, causing hyperlinks and other references to the

14   collection to display the BAYC Marks.  Atalay Decl. (Dkt. 337) ¶ 6; Solano Decl. ¶¶

15   46-47, 78.  And despite Mr. Ripps' testimony that he minted the RR/BAYC NFTs to

16   his "personal wallet, ryder-ripps.eth," the "ryder-ripps.eth" name did not appear on

17   Etherscan until *after* minting, most if not all of, the infringing NFTs.  *Compare* JTX-

18   25, *with* JTX-36.  Defendants therefore caused their infringement of Yuga Labs'

19   marks to be an inherent and unchangeable part of their NFT collection, in turn causing

20   third party systems and observers to confusingly associate the two, resulting in more

21   downstream marketplace confusion.  The permanent existence of Yuga Labs' marks in

22   association with the RR/BAYC smart contract is why, like a domain name, the smart

23   contract should be transferred to Yuga Labs so that Yuga Labs can retain some control

24   of the use of its their marks.  Defendants' wrongful infringement of the BAYC Marks

25   caused this result.

26   Defendants also argue that their infringing NFTs used "different token IDs"

27   than BAYC NFTs, but they fail to acknowledge that they intentionally "marketed their

28

1  RR/BAYC NFTs using the same corresponding BAYC Ape ID number used by Yuga

2  for the BAYC NFTs" even though they minted RR/BAYC NFTs in a different order

3  than BAYC NFTs.  SJ Order (Dkt. 225) at 11.

4       Finally, Defendants' argument that Yuga Labs does not own the BAYC Marks

5  is false, contrary to the Court's Summary Judgment Order, and precluded by their own

6  stipulation.  *Supra* ¶ 1.

7                  **Defendants' Reply:**

8       Defendants did not cause Etherscan and other websites to attribute the

9  RR/BAYC collection to Yuga.  Mr. Ripps explained, in his uncontested declaration,

10  that the smart contract was coded so that it would be specifically attributable to him

11  through his personal smart wallet and identify a unique smart contract address:

12         89.    The RR/BAYC collection was minted from my personal Ethereum
13                 blockchain "wallet," ryder-ripps.eth, was located at a unique
14                 "contract" address, and was minted on different dates and with
15                 different token IDs than Yuga's Bored Ape Yacht Club NFTs.

16  Ripps Decl. ¶ 89 (Dkt. 346).  This information was always coded into the RR/BAYC

17  contract, giving any third party a surefire way to know that RR/BAYC NFTs were

18  created by Mr. Ripps and not by Yuga.

19       Third party websites, such as Etherscan, always displayed the RR/BAYC

20  collection in a manner that disclosed Mr. Ripps's unique personal wallet (either by

21  name or by alphanumeric code verifiable on Etherscan itself) and also disclosing the

22  unique smart contract address for the RR/BAYC collection.  As Mr. Atalay admitted,

23  it is the unique smart contract address that is critical to identifying NFTs.  Trial Tr.

24  [Atalay] 135:2-25.  Moreover, it is undisputed that Defendants do not own or operate

25  Etherscan or any of the other third-party websites that displayed information about

26  RR/BAYC NFTs.  Defendants cannot be responsible for the actions of third parties,

27

28

1 especially when the code for the RR/BAYC collection provided to all third parties a
2 definite source identifier and a verifiably unique smart contract address.

3      Furthermore, Yuga's own witness, Mr. Atalay, himself has admitted that
4 consumers of NFTs do not use Etherscan's token tracker/token name but instead rely
5 on marketplaces or by checking the associated smart contract address.  Trial Tr.
6 [Atalay] 135:2-25.  Mr. Atalay explained that using token names to distinguish NFTs
7 "would be a fairly weak way to do so because often those things are mutable.  They
8 can be changed after the fact.  Also, there's no guarantee of uniqueness."  Trial Tr.
9 [Atalay] 133:12-23.

10      Further, the evidence at trial showed that Yuga does not own the BAYC marks
11 because (1) Yuga has either given away or abandoned its rights in the marks and (2)
12 NFTs are not eligible for trademark protection. Yuga gave away all intellectual
13 property rights associated with the Bored Ape Yacht Club.  Yuga's CEO Nicole
14 Muniz had publicly represented that BAYC NFT holders received all IP rights and
15 that Yuga has none of those rights.  Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189
16 (Dkt 344); Hickman Decl. ¶¶ 25-26 (Dkt 345); JTX 2672; JTX 2673.  That transfer of
17 rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr.
18 Solano drafted with the intent to allow people to commercialize their NFTs.  Trial Tr.
19 [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow
20 people to be able to commercialize their NFTs.  We can agree on that; right? A.
21 Yes.  That is covered in the terms.").

22      As a result, at the time of the RR/BAYC project, there were more than 9,000
23 other third-party projects using Yuga's marks.  Ripps Decl. ¶¶ 187-191 (Dkt. 346)
24 (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244.  There were
25 hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht
26 Club Brand on the NFT marketplace OpenSea.  Trial Tr. [Muniz] 77:19-23; [Muniz]
27 78:7-21; [Muniz] 80:3-13.  And, as Yuga's CEO admitted, there are "literally

28

thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga.  Trial Tr. [Muniz] 81:18-22.  For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks.  *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075.  Further, Yuga does not own the asserted marks because NFTs are not eligible for trademark protection.  The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) .  Misrepresentation of the origins of a *communicative* work is a dispute relegated to the confines of copyright law, not trademark.  *Id.* at 33-35; *see also Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014)  (*Dastar* bars trademark claims based on origin of hologram, as it is "likened to a cartoon animation").  Here, the "goods" for which Yuga claims trademark rights are NFTs, which are comparable to certificates of authenticity/ownership and are not digital goods in themselves.  Trial Tr. [Atalay] 127:9-16.

Defendants have never stipulated to Yuga's Ownership of the BAYC Marks.  Defendants hotly disputed ownership of the BAYC marks at summary judgment.  Dkt. 163 at 2-8.  And while ownership of the marks is not an issue relevant to the remedies trial in this case, Yuga has for some reason affirmatively raised the issue—forcing Defendants to re-articulate their dispute for purposes of preserving their position for appeal and all other proceedings involving the BAYC marks.  Yuga attempts to mischaracterize the Court record by citing to the pre-trial conference order.  But *nowhere* in the pre-trial conference order did Defendants stipulate to ownership of the BAYC marks.  Section 6 of the order contains all stipulated facts and those stipulated facts include only that Yuga released the BAYC collection and

various facts about Defendants' activities associated with the RR/BAYC collection.  Dkt. 320-1 at 3-4.  Yuga points to Section 5, which is the admitted facts section, but this section again does not contain any admissions regarding "ownership" of the marks.  Rather it merely identifies the asserted marks at issue for the remedies trial—something that Defendants admitted in light of the scope of the remedies trial and to ease this Court's work in adjudicating the remaining issues.   Dkt. 32-1 at 2-3.  Lastly, Yuga cites to Defendants' statement that the "Court has determined that Defendants infringed the BAYC Marks."  Dkt. 320-1 at 13.  But again, this is not an admission of ownership, it is a statement regarding the procedural history in this case that explains that the scope of trial is limited to remedies and does not include infringement.  Had Defendants wanted to stipulate to ownership, they would have clearly and expressly done so—they have not.  Defendants reserve the right to dispute ownership on appeal and in any other proceedings involving the BAYC marks.