Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Finding of Fact No. 15, lines 7:21-22** <br><br> Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM                              DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 15, lines 7:21-22:**

<u>Consumers use token trackers to verify the source and authenticity of the digital assets that they are viewing and purchasing.</u> SJ Order at 17; *see also* JTX-721 ¶14; JTX-1558; Dkts. 337 ¶7; 392 at 138:6-20; 395 at 148:10-13.

**Defendants' Basis of Dispute:**

Evidence at trial showed the opposite. An NFT is a representation of ownership of a unique piece of data on an internet blockchain. Trial Tr. [Atalay] 127:9-16. Because of the unique nature of NFTs, consumers employ several methods to distinguish these particular digital assets. Consumers can distinguish between two NFTs by looking at them on NFT marketplaces, such as OpenSea. Trial Tr. [Atalay] 135:5-10. Consumers can also distinguish between NFTs by looking at the smart contract that each NFT is associated with. Trial Tr. [Atalay] 135:11-15. If one NFT is associated with a particular smart contract, and another NFT is associated with a different smart contract, consumers can infer that those two NFTs are distinct. Trial Tr. [Atalay] 135:16-19.

During his trial testimony, Mr. Atalay confirmed that he had previously testified that token names are a "fairly weak" way to distinguish NFTs from each other. Trial Tr. [Atalay] 133:12-23. In his previous testimony, Mr. Atalay confirmed that token names are a poor way for someone to distinguish two NFTs because token names are mutable and can be "changed after the fact." *Id*.

**Plaintiff's Response:**

Mr. Cahen's own testimony on consumers undermines Defendants' position. Cahen Depo. Designations (Dkt. 395) at 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated.  A lot of people don't have the technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."); *id.* at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker).  Mr. Cahen's prior testimony is consistent with the understanding of consumers.  *See* JTX-1558 (tweet stating:  "If you were curious to see how malicious this scam is, check out the token tracker/ID name that he chose to use on the smart contract. This is a critical piece of data the NFT community uses when they are buying on the secondary market.").

While Defendants are correct that some token names may be changed after the fact, they neglect to add that they created the RR/BAYC smart contract in such a way that it *immutably* uses the BAYC Marks.  Defendants could have called their NFT collection something other than "Bored Ape Yacht Club" with the symbol "BAYC" *immutably* in the metadata for the NFT smart contract, but chose not to.  Atalay Decl. ¶¶ 3-6; JTX-600; JTX-1146.  As a consequence, their NFTs will forever be referred to as "Bored Ape Yacht Club" and "BAYC" on the blockchain and anywhere that obtains those data points from the smart contract.  Trial Tr. at 134:1-8 (Mr. Atalay testifying that "[i]n this particular instance, upon inspection of the Foundation smart contract that was used to deploy the RR/BAYC smart contract, it's evident that these are not mutable fields in this particular instance.").

As Mr. Atalay also testified, users on secondary markets typically refer to the token name to identify NFTs.  Trial Tr. at 132:3-5 ("Q  And you also agree that the NFT community uses the token name when it's buying on secondary markets; correct?" / "A  Yes."); *see also* JTX-1558.  And even if a consumer were to view an RR/BAYC on OpenSea, as Defendants suggest, the consumer would still be confused

because Defendants' listing was virtually identical to a listing for an authentic Bored Ape Yacht Club NFT.  *See* JTX-686.

### Defendants' Reply:

The undisputed evidence at trial showed that NFT consumers do not rely on token trackers to verify the authenticity of NFTs.  Mr. Atalay clearly and unequivocally testified at trial that token trackers/token names are not used to identify NFTs.  If there was anything wrong with Mr. Atalay's admission, then Yuga should have rehabilitated the witness on re-direct.  Yuga did not, because Mr. Atalay's admission is clear.  He admitted that using token names or token trackers to distinguish NFTs "would be a fairly weak way to do so because often those things are mutable.  They can be changed after the fact.  Also, there's no guarantee of uniqueness."  Trial Tr. [Atalay] 133:12-23.  Indeed, as Mr. Atalay admitted, consumers of NFTs rely on marketplaces or by checking the associated smart contract address.  Trial Tr. [Atalay] 135:2-25.

Yuga again speculates regarding what would confuse consumers without being able to identify a single consumer who purchased an RR/BAYC NFT thinking it was sponsored by Yuga.  *See* Trial Tr. [Yuga's witnesses] 11:3-203:24.