Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., | Case No. 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **Defendants' Objections to Disputed Finding of Fact No. 20, lines 9:5-9** |
| v. | Judge: Hon. John F. Walter |
| Ryder Ripps, Jeremy Cahen, | |
| Defendants. | |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**<u>Plaintiff's Disputed Post Trial Finding of Fact No. 20, lines 9:5-9:</u>**

<u>This confusion resulted in harm to Yuga Labs. As Ms. Muniz testified, she received reports and concerns about confusion and the BAYC NFT collections' loss of exclusivity caused by Defendants' NFT collection, including because it was misleadingly labeled as the same as the BAYC collection (or at times, a "V3" of BAYC).</u> Dkt. 340 ¶¶11, 16, 17.

**<u>Defendants' Basis of Dispute:</u>**

These reports of harm are unsubstantiated and not credible and Yuga provides no documentary support for them.  Specifically, Yuga used e-mail and instant messaging to communicate for business. Trial Tr. [Muniz] 85:24-86:4.  And yet, Yuga could not identify a single e-mail or text message discussing (1) confusion associated with the RR/BAYC project, Trial Tr. [Muniz] 86:14-87:6, or (2) how RR/BAYC uniquely caused any problems in the day-to-day business operations of Yuga.  Trial Tr. [Muniz] 87:17-88:6.  Yuga was also unable to identify any documentation of any press inquiries related to the RR/BAYC collection.  Trial Tr. [Muniz] 88:7-89:2. Further, Yuga could not identify a single email, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions changes in negotiating dynamics with brand partners as a result of the RR/BAYC collection.  Trial Tr. [Muniz] 101:7-12. ("Q. Did you identify a single e-mail, text message, or any other contemporaneous written communication from any brand partner or repeating any communication from any brand partner that mentions any of these concerns at all? A No, it was phone calls

1    and e–ails -- I mean, phone calls and Zooms."). Ultimately, Yuga did not mention

2    RR/BAYC in any of its quarterly reports to its investors. Trial Tr. [Muniz] 89:18-23.

3         Additionally, the evidence at trial showed that Mr. Ripps, Mr. Cahen, Mr.

4    Hickman, and third-party Mr. Lehman did not use BAYC V3 or Bored Ape Yacht

5    Club V3 to suggest that the RR/BAYC project had any affiliation with Yuga or to

6    confuse any purchaser. Trial Tr. [Cahen] 253:18-21, 254:24-255:3. The term "BAYC

7    V3" was, however, referenced on social media in a sarcastic context and as a joke.

8    Trial Tr. [Cahen] 254:25-255:2. Some third-party resellers also auto-generated the

9    terms "Bored Ape Yacht Club V3" or "BAYC V3," including when generating a new

10   name space after resolution of requests pursuant to the Digital Millennium Copyright

11   Act. Trial Tr. [Cahen] 253:22-254:7. Mr. Ripps and Mr. Cahen had no control over

12   and no affiliation with those third parties who auto-generated "Bored Ape Yacht Club

13   V3" or "BAYC V3." Trial Tr. [Cahen] 254:3-7.

14        Finally, the evidence Yuga cites to is unsupportive as it includes only Ms.

15   Muniz's unsubstantiated reports of concerns raised, none of which appeared in even a

16   single piece of contemporaneous documentation.

17                **Plaintiff's Response:**

18        Likelihood of confusion is an adjudicated issue, which was separately proven

19   again by the evidence at trial. *See also supra* ¶ 4 (ample evidence in the record of

20   likelihood of confusion, as well as actual confusion).

21        Additionally, Yuga Labs' evidence of harm to its brand is overwhelming,

22   credible, and unrebutted. Ms. Muniz's testimony describes how three separate

23   significant business relationships were damaged by Defendants' infringement. Muniz

24   Decl. (Dkt. 340) ¶ 16. It also harmed relationships with investors (*id.* ¶ 17) and

25   community members (*id.* ¶ 15). Mr. Solano testified how Defendants' infringing NFT

26   collection was launched to coincide with ApeFest 2022 and to interfere with Yuga

27   Labs' branding efforts within the NFT community. Solano Decl. (Dkt. 342) ¶¶ 39-40.

28

Defendants are well aware of investors' knowledge of the harm caused by Defendants, as Defendants deposed Yuga Labs' investors during this litigation.

Dr. Berger's unrebutted expert report (JTX-722) and testimony further explain how Defendants' "minting and sales of RR/BAYC NFTs using Yuga Labs' marks harmed the brand equity of BAYC for multiple reasons," including by diminishing the "perceived exclusivity of authentic BAYC NFTs," causing confusion, and damaging "consumer attitudes toward the BAYC brand." JTX-722 ¶ 11; *see also* Berger Decl. (Dkt. 339) ¶¶ 62-92; 340.

Furthermore, it is a red herring that Yuga Labs did not produce emails and texts of internally discussion of confusion—Yuga Labs was not required to do so in discovery, and the absence of such documents at trial proves nothing. The Court previously ruled that given the publicly available evidence of confusion and the evidence within Defendants' possession, it was not proportionate to the needs of the case for Yuga Labs to search its internal communications regarding confusion. Dkt. 87 at 2 (denying motion to compel production of further "documents on lack of consumer confusion"). As the Court found, Yuga Labs' extensive enforcement efforts "related to Defendants' confusing use of Yuga's marks," among other evidence, was sufficient to demonstrate confusion. *Id.* Further, there is abundant evidence of actual confusion in this case unique to Defendants' infringing NFTs. *See, e.g.*, JTX-701 and JTX-1049 (Bloomberg news segment reporting Defendants' infringing NFT collection, under the name "Bored Ape Yacht Club V3"); JTX-705 (Twitter bot misreporting sale of Defendants' infringing NFT as "Bored Ape Yacht Club" NFT); JTX-1029 (noting "confusion in these comments" in response to JTX-705); JTX-1030 (comment indicating confusion). Even Defendants' business partner, Mr. Lehman admitted to confusion, agreed to a consent judgment admitting to this confusion, and warned Defendants about the confusion. JTX 1; JTX 621. That Yuga Labs did not

1  produce further documentation of confusion does not establish that confusion did not

2  exist or undermine the substantial other evidence.

3       Finally, Defendants' argument that Mr. Ripps did not use the V3 reference is

4  false, as proven by his own Tweets.  Mr. Ripps tweeted, in response to a Tweet by

5  @j1mmy.eth asking what NFT collections consumers were purchasing, "bayc v3."

6  JTX-689.  This was the ***same day he created the RR/BAYC smart contract***.  Atalay

7  Decl. (Dkt. 337) ¶ 3; JTX-600.  Four days later, Mr. Ripps tweeted a link to a

8  secondary sales marketplace where his infringing NFTs were listed under the name

9  "Bored Ape Yacht Club V3."  JTX-690.  Defendants have offered no evidence that

10  anyone used the "Bored Ape Yacht Club V3" or "bayc v3" names before they used it

11  to promote their collection; the only evidence on this issue shows that Defendants

12  used this name and that they caused confusion in the market where their products were

13  consistently labeled with the BAYC Marks.  And, Defendants now concede (*supra*

14  ¶ 18) that they *did* use these names in connection with their NFT collection, although

15  they now incredibly claim it was only as a "joke."

16       **Defendants' Reply:**

17       Yuga's response is inaccurate.  As discussed above, the record shows that there

18  was no evidence of confusion presented at trial and that the issue of confusion and its

19  relation to damages was not an adjudicated issue.  *See supra* ¶ 4.

20       Second, evidence of harm to Yuga's brand is certainly not "overwhelming,

21  credible, and unrebutted."  Specifically, Yuga relies on the unsubstantiated testimony

22  of Ms. Muniz about various interactions she had with brands that she has no

23  documentary support for.  *See* Trial Tr. [Muniz] 101:7-12.  Additionally, Yuga cites to

24  Mr. Solano's unfounded assumption about when the RR/BAYC NFT collection was

25  released.  Solano Decl. (Dkt. 342) ¶¶ 39-40.  Further, Ms. Kindler did not quantify this

26  supposed harm.  *See* Kindler Decl. ¶ 64 (Dkt. 338) ("I have not quantified the extent

27  to which the confusion impacted Yuga Labs' business partnerships…"); Kindler Decl.

28

¶ 65 (Dkt. 338) ("I have not quantified the extent to which Defendants' wrongful conduct negatively impacted the value of Yuga Labs' goodwill…");

Third, Yuga incorrectly argues that Dr. Berger's report explains how Yuga's brand was harmed.  The evidence at trial showed that Dr. Berger's limited analysis did not establish that the minting of RR/BAYC NFTs was the source of the alleged brand harm.  Although Dr. Berger acknowledged that several different causes could have impacted Yuga's brand equity, Dr. Berger declined to consider alternative causes of harm in his analysis.  Trial Tr. [Berger] 108:7-109:4; 115:16-25.  He limited his analysis to the period from May 6, 2022, to late June, and completely disregarded events leading up to that period.  Trial Tr. [Berger] 106:1-3.  For instance, Dr. Berger's analysis ignored the Otherside scandal, which occurred mere days before his chosen analysis period.  Trial Tr. [Berger] 113:10-114:2; JTX-2715.  Dr. Berger even ignored events, like the general downturn of the cryptocurrency market, which occurred during his analysis period. Trial Tr. [Berger] 109:5-110:5; JTX-306. At trial, Dr. Berger claimed that the presence of other potential causes of brand harm does not dilute the hypothesis that the minting of RR/BAYC NFTs caused brand harm.  Trial Tr. [Berger] 115:19-25.  However, in ignoring other potential causes of harm, Dr. Berger has not been able to establish which factors caused harm or quantify the harm of any given factor.  Indeed, Dr. Berger failed to quantify any alleged harm to Yuga's brand equity, goodwill, or reputation.  *See generally* Berger Decl.; Dkt. 343 at 15.

Fourth, Yuga's citations to the Court's order on motions to compel document production in this case miss the mark.  Not only did Yuga not produce any documentary evidence to support these claims of brand harm, Ms. Muniz testified that none existed despite the companies use of various platforms of communication.  Trial Tr. [Muniz] 101:7-12. ("Q. Did you identify a single e-mail, text message, or any other contemporaneous written communication from any brand partner or repeating

1    any communication from any brand partner that mentions any of these concerns at all?

2    A No, it was phone calls and e–ails -- I mean, phone calls and Zooms.").

3         Fifth, as explained *supra* ¶ 4, there is extensive evidence that there was no

4    confusion and the exhibits Yuga cites to are unsupportive.  Yuga cites to a screenshot,

5    JTX-701, of a Bloomberg newscast.  This exhibit does not support a finding of actual

6    confusion.  The chart separately lists both "Bored Ape Yacht Club" and "Bored Ape

7    Yacht Club V3" indicating that the anchor understood that these were two different

8    projects.  Additionally, as Mr. Cahen testified, he is not aware of anyone who watched

9    the Bloomberg program and reserved an RR/BAYC NFT believing it to be a Yuga

10   collection.  Cahen Decl. ¶ 252 (Dkt. 344).

11        Additionally, Yuga cites to the Lehman Declaration, JTX-1, the accuracy and

12   credibility of which are tainted by Mr. Lehman's motivations to settle his ongoing

13   case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's

14   case against Mr. Lehman, JTX-621, which is immaterial to this matter and again was

15   entered after Mr. Lehman settled his own case with Yuga.

16         Yuga also cites to JTX-1029, which includes a tweet from GemBot, which is

17   an automated software application and not evidence of a real person's confusion. *See*

18   Cahen Decl. ¶¶ 226-227. The very first comments included on that tweet include users

19   identifying that Mr. Ripps is the source of the NFT not Yuga.  Further, there is no

20   indication that any of the Twitter users commenting actually reserved an RR/BAYC

21   NFT.

22        Finally, as outlined in our objection above, the evidence at trial showed that Mr.

23   Ripps, Mr. Cahen, Mr. Hickman, and third-party Mr. Lehman did not use BAYC V3

24   or Bored Ape Yacht Club V3 to suggest that the RR/BAYC project had any affiliation

25   with Yuga or to confuse any purchaser.  Trial Tr. [Cahen] 253:18-21, 254:24-255:3.

26   The term "BAYC V3" was, however, referenced on social media in a sarcastic context

27   and as a joke.  Trial Tr. [Cahen] 254:25-255:2.  Further, Yuga decided not to cross-

28

examine Mr. Ripps regarding this issue and cannot backdoor said questioning of his correspondence through its response to a finding of fact.