Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                    Plaintiff,<br><br>     v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                    Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 23**<br><br>Judge: Hon. John F. Walter |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

### Plaintiff's Disputed Post Trial Finding of Fact No. 23:

The RR/BAYC smart contract is immutable and will use Yuga Labs' BORED APE YACHT CLUB and BAYC marks in perpetuity, which will continue to cause consumer confusion, unless, at a minimum, Yuga Labs obtains control of the contract. JTX-722 ¶71; JTX-1146; *see also* JTX-1249; Dkts. 337 ¶¶2-6; 342 ¶80; 392 at 133:24-134:20.

### Defendants' Basis of Dispute:

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The evidence at trial showed that the RR/BAYC smart contract is not causing any confusion. Defendants received voluminous correspondence from RR/BAYC participants—none of which indicated any confusion from primary sales or secondary sales. Ripps Decl. ¶¶ 196-207 (Dkt. 346) (uncontested). To the contrary, the correspondence expressed gratitude and support for the criticism of Yuga. Ripps Decl. ¶¶ 198-205 (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2589, JTX-2590, JTX-2591, JTX-2592, JTX-2595, JTX-2596; JTX-2599. Indeed, neither Mr. Ripps, Mr. Cahen, or Mr. Hickman are aware of a single instance of confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19. Yuga Labs itself was also unable to identify a single person who obtained an RR/BAYC NFT believing it to be sponsored by Yuga. Trial Tr. [Muniz] 85:3-7. Mr. Solano, Yuga's President, similarly could not identify a single person that ever bought an RR/BAYC NFT believing it was a Yuga NFT. Trial Tr. [Solano] 18:23-19:1. Given Defendants public discussions, steps taken to clarify the origin and purpose of the RR/BAYC collection, and the fact that there was not even a single confused consumer confirms that there was no likelihood of consumer confusion and no actual consumer confusion.

Further, Yuga cites no evidence that retaining control of the smart contract would in any way remediate the non-existent confusion that it alleges. As Yuga alleges, the RR/BAYC smart contract is immutable, which remains true regardless of who possesses the smart contract. The NFT community will always associate RR/BAYC with a conceptual artwork created by Ryder Ripps and the smart contract will always demonstrate this fact regardless of which digital address the smart contract resides. Thus, Yuga "obtaining control" of the smart contract would accomplish nothing because, as Yuga admits, the smart contract is immutable.

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420. Regardless, Defendants' objection should be rejected because (1) the record shows ample evidence of actual confusion, and (2) Defendants' cherry-picked communications with purported purchasers do not rebut Yuga Labs' experts' findings.

**There Is Ample Evidence of Confusion in the Record:** Defendants' argument that consumers were not confused by their infringement is unavailing. Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion. SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Deposition at 290:4-9; JTX-1049; Berger Declaration (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7. Defendants were aware of the confusion. *See, e.g.*, JTX-801.195 (Mr. Lehman noting that people "making mistakes with apes is already a huge meme" and "Remember the 'average joes'?", and Cahen responding, "I mean that is unavoidable"). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who

1 incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-
2 721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341) ¶¶ 13.a-c, 16, 47, 48, 73, 81, 82.
3 Defendants do not offer any admissible or credible evidence to rebut the evidence that
4 consumers believed, or were likely to believe, RR/BAYC was affiliated with or
5 sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale
6 confusion.

7       There is a clear likelihood of confusion as well, given Defendants' use of the
8 same marks and images, which the Court already determined.  SJ Order (Dkt. 225) at
9 10-13; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir.
10 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly
11 ever find their way into the appellate reports' because liability is 'open and shut.'")
12 (citation omitted).  In any event, actual confusion is not required; and the Court
13 already found Defendants' use of BAYC Marks to be infringing.  SJ Order (Dkt. 225)
14 at 12.  The Court "easily conclude[d]" that Defendants' use of identical marks, on
15 identical products, in identical markets supported a finding of a likelihood of
16 confusion.  *Id.* at 10-13.  Yuga Labs is thus entitled to Defendants' profits due to their
17 infringing activity regardless of whether purchasers were actually confused.  *See*
18 *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012)
19 (granting defendant's profits even where infringement claims premised solely on post-
20 sale confusion where a "potential purchaser, knowing that the public is likely to be
21 confused or deceived by the allegedly infringing product, [] choose[s] to purchase that
22 product instead of a genuine one").

23       **Defendants' Anecdotal Evidence Of Individuals Stating They Support**
24 **Defendants' Infringement Are Irrelevant And Immaterial:**  A handbag
25 counterfeiter may have allies or distributors, and those allies / distributors may even
26 profess to believe in a cause, but that does not excuse the counterfeiter's wrongdoing
27 or mitigate the likelihood of confusion in the marketplace.  *See* SJ Order (Dkt. 225) at
28 16 ("Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a

1  counterfeit handbag."). And Defendants do nothing to rebut the likelihood of post-
2  sale confusion. See *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255
3  (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims
4  premised solely on post-sale confusion where a "potential purchaser, knowing that the
5  public is likely to be confused or deceived by the allegedly infringing product, []
6  choose[s] to purchase that product instead of a genuine one"). Defendants' admission
7  that they processed over $90,000 in refunds (Ripps. Decl. (Dkt. 346) ¶¶ 174-75)
8  undermines Defendants' suggestion that purchasers of their infringing NFTs were
9  universally supportive and that no one was confused.

10  Defendants' objection admits what Mr. Hickman's testimony says: when
11  designing the forthcoming Ape Market to sell their infringing NFTs alongside
12  authentic BAYC NFTs, Defendants knew affirmative "friction step[s]" would be
13  required to prevent the obvious risk of confusion. As Mr. Hickman told Mr. Cahen,
14  "[t]hey are the same art." Trial Tr. at 212:17-24. Thus, Defendants and their partners
15  worried over how to "make it as clear as possible" the two were different. *Id.* This is
16  because selling the same products under the same marks is confusing. And yet,
17  Defendants continued ahead without any changes in their sales and promotion of the
18  RR/BAYC NFTs.

19  It is undisputed that Mr. Ripps created the RR/BAYC smart contract, and that
20  the marks "Bored Ape Yacht Club" and "BAYC" are immutably coded into the smart
21  contract. Every RR/BAYC NFT to ever exist will refer to this smart contract and thus
22  the BAYC Marks. The infringement is inseparable from the product. To remedy this
23  irreparable harm, Yuga Labs should be given control of the smart contract for these
24  infringing NFTs and regain "the ability to exclusively control its BAYC brand."
25  Muniz Decl. (Dkt. 340) ¶ 22.

26  **Defendants' Reply:**
27  Defendants expressly reserve and reassert all replies made in the parties' Joint
28  Statement Regarding Objections (Dkt. 420).

1	Yuga's response fails to provide credible evidence showing that the RR/BAYC
2	smart contract has or will be associated with products originating from Yuga.  Instead,
3	Yuga disregards the significant evidence in the record showing that consumers were
4	not confused.
5	*First,* there is ample evidence that there was *no* consumer confusion. For
6	reasons provided in *supra* ¶ 4 (both in Defendants' objections and Defendants' reply
7	in support of their objections), the evidence showed that confusion was not likely and
8	in fact there was not a single actual RR/BAYC NFT consumer that was confused
9	regarding the source of origin for the NFTs.  Defendants' objections in *supra* ¶ 4
10	similarly explains that (1) this Court's summary judgment cannot be used to support a
11	finding of fact a trial, (2) Defendants did not intend to confuse consumers, (3)
12	Defendants' intent was to protest and criticize Yuga, (4) the record shows ample
13	evidence of *no* actual confusion, (5) the disclaimer was evidence of Defendants' good
14	faith intent to protest and further decreased any likelihood of confusion, (6)
15	Defendants took many steps to avoid confusion including through the use of an artistic
16	statement, disclaimer, and Twitter activity critical of Yuga, (7) Yuga surrendered to
17	the world "all IP rights" associated with the Bored Ape Yacht Club, and (8) Mr.
18	Solano is not a credible witness given his many false statements and his admission at
19	trial that he testified falsely.
20	*Second*, the evidence Yuga cites to is not supportive of a finding that there was
21	consumer confusion.  Specifically, Yuga relies on survey evidence provided by Ms.
22	O'Laughlin.  As demonstrated at trial, however, Ms. O'Laughlin conducted two
23	flawed surveys that failed to measure confusion. *supra* ¶ 19, lines 8:25, 8:27-9:1.
24	Furthermore, the documentary evidence Yuga cites to is unsupportive. For
25	example, Yuga cites to JTX-1029, which includes a tweet from GemBot, which is an
26	automated software application and not evidence of a real person's confusion. *See*
27	Cahen Decl. ¶¶ 226-227 (Dkt. 344).  The very first comments included on that tweet
28	include users identifying that Mr. Ripps is the source of the NFT not Yuga.  Further,

1  there is no indication that any of the Twitter users commenting actually reserved an
2  RR/BAYC NFT.  Therefore, his evidence provides no support for an argument that
3  this finding of fact is inaccurate.  *See also* JTX-1030, JTX-1032; JTX-1031, JTX-
4  1034, JTX-1035.
5        Yuga also cites to private chats that the RR/BAYC creators used.  These
6  exhibits are unsupportive of a finding that there was actual confusion.  For example,
7  JTX-109 includes a discussion where Mr. Lehman raises concerns about how the
8  marketplace is designed and may cause confusion.  Mr. Cahen responds and provides
9  suggestions about what they could do to make it even more clear.  Further, this chat
10 focused on the creation of ApeMarket, which never was launched and could,
11 therefore, never have caused any actual consumer confusion.  Cahen Decl. ¶¶ 257-262
12 (Dkt. 344); *see also* JTX-801.185 (again including a discussion about how to make
13 ApeMarket clearer).
14       Also, Yuga cites to a screenshot, JTX-701, of a Bloomberg newscast.  This
15 exhibit does not support a finding of actual confusion.  The chart separately lists both
16 "Bored Ape Yacht Club" and "Bored Ape Yacht Club V3" indicating that the anchor
17 understood that these were two different projects.  Additionally, as Mr. Cahen
18 testified, he is not aware of anyone who watched the Bloomberg program and reserved
19 an RR/BAYC NFT believing it to be a Yuga collection.  Cahen Decl. ¶ 252 (Dkt.
20 344).
21       Additionally, Yuga cites to the Lehman Declaration, JTX-1, the accuracy and
22 credibility of which are tainted by Mr. Lehman's motivations to settle his ongoing
23 case with Yuga, (Dkt. 411, 97:15-98:8) and the Consent Judgment Order in Yuga's
24 case against Mr. Lehman, JTX-621, which is immaterial to this matter and again was
25 entered after Mr. Lehman settled his own case with Yuga.
26       Yuga also cites to Mr. Ripps's deposition transcript where he discusses how the
27 LooksRare platform that sold RR/BAYC NFTs looked like at one point in time.
28 Ripps Depo. Designations (Dkt. 396) at 290:4-9.  Again, this does nothing to support

a finding of consumer confusion as any consumer had the ability to determine the provenance of an RR/BAYC NFT through Etherscan. Ripps Decl. ¶¶ 88-89. Further, this does not undermine the finding of fact as this does not show that anyone who reserved an RR/BAYC NFT was confused about the origin.

Yuga cites to its own declarations and trial testimony where their witnesses make conclusory and unfounded statements about possible confusion. *See* Berger Decl. (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22. These statements do not support a finding, however, that anyone who bought an RR/BAYC NFT was actually confused.

**Third**, Yuga is not entitled to disgorgement of profits. Yuga's citations to *Gucci* are inapplicable here, given the evidence shows consumers reserved RR/BAYC NFTS as part of a protest against Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. The evidence, therefore, does not support a finding that these reservations were made so that the buyer could then confuse someone else in secondary sales. Also, as mentioned above, there is no evidence that anyone who reserved an RR/BAYC NFT, on either initial or secondary sales, was confused about its origin. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Ripps Decl. ¶ 223 (uncontested) (Dkt. 346); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct."). Finally, the portion of profits attributable to secondary sales of RR/BAYC NFTs according to Yuga's own expert is limited to $117,309. *See* Dkt. 418-1 at 6.

Finally, if Yuga is entitled to disgorgement of Mr. Ripps and Mr. Cahen's profits, which is something Defendants argue they are not, Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from collectors who reserved RR/BAYC NFTs as a protest against Yuga (and were thus not confused about Defendants' use of Yuga's marks) and revenue from purchasers who mistakenly believed they were purchasing Yuga NFTs. *See id.* And as outlined above, there was no evidence presented that a single purchase of RR/BAYC NFTs was made by someone thinking it was sponsored by Yuga.

| | |
|---|---|
| Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP<br><br>By: /s/ *Louis W. Tompros*<br>Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Fax: (617) 526-5000<br><br>Attorneys for Defendants<br>RYDER RIPPS and JEREMY CAHEN |
| Dated: October 5, 2023 | FENWICK & WEST LLP<br><br>By: /s/ *Eric Ball*<br>Eric Ball<br>eball@fenwick.com<br>**FENWICK & WEST LLP**<br>801 California Street<br>Mountain View, CA 94041<br>Telephone: (650) 988-8500<br>Fax: (650) 938-5200<br><br>Attorneys for Plaintiff<br>YUGA LABS, INC. |

# ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000