Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>               Plaintiff,<br><br>     v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>               Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Finding of Fact No. 29**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Finding of Fact No. 29:

<u>Defendants made heinous attacks on Yuga Labs and its counsel throughout litigation.</u> *See*, *e.g.*, Dkts. 149-50; 149-51.

### Defendants' Basis of Dispute:

The documents that Yuga cites to is a collection of Twitter posts that Yuga has taken out of context. As Mr. Cahen explained in his declaration of trial testimony, many of these posts "frequently use terms or context that requires knowledge of contemporary crypto culture to understand." Cahen Decl. ¶ 54 (Dkt. 344). And many of Defendants' posts "involve pushing back forcefully on users that spread inaccurate, misleading, hypocritical, self-serving, or hateful message." Cahen Decl. ¶ 55 (Dkt. 344). To a person not familiar with the context of crypto culture, Mr. Cahen's posts can, "come across as combative or mean-spirited, but they are typical of crypto-related social engagement on Twitter." *Id*.

For example, Yuga cites to Dkt. 149-50, which are crops of Twitter posts. Many of these posts are memes that are commonly used in crypto Twitter culture and on the internet generally. Dkt. 149-50 at 2-5. Defendants made minor modifications to these common memes so that they reference the RR/BAYC project's criticism and protest of Yuga. *Id*. Posting common internet memes on Twitter is not a "heinous attack." Dkt. 149-50 also contains posts from Mr. Ripps criticizing Yuga and its leadership for make false statements to the public and behaving in a manner that Mr. Ripps considers to be bad-hearted and unintelligent. While these posts are critical of Yuga and its leadership, they are voicing Mr. Ripps's honest beliefs.

| Case No. 2:22-cv-04355-JFW-JEM | -1- | DEFENDANTS' OBJECTION |
|---|---|---|

Yuga also cites to Dkt. 149-51 which is also another collection of Twitter posts that Yuga has also mischaracterized and taken out of context. Defendants have engaged in extensive criticism of Yuga and its supporters, including calling out Yuga's content for including what Defendants believe to be references to racism, fraud, pedophilia, and other offensive material. Yuga attempted to use this litigation to silence Defendants by conditioning any settlement on a non-disparagement clause or comparable restrictions, to prevent Defendants from criticizing Yuga's problematic content. Defendants' honest belief is that Yuga's use of litigation in this manner amounts to promotion and support of Yuga's harmful and dangerous messages. Defendants voicing their beliefs on Twitter may come across as alarming, given the nature of the content that they are criticizing. But in context, Defendants' statements are not rightly characterized as "heinous attacks."

**Plaintiff's Response:**

Defendants' objection should be rejected because they underplay the severity of Defendants' conduct. This was not mere "criticism" or "memes" as Defendants contend, it was cruel-hearted harassment to intimidate Yuga Labs and its counsel. *See* Dkt. 334 (When Yuga Labs' counsel raised this issue at the June 9 pretrial conference, claiming that criticism is different that Defendants' attacks against Yuga Labs and its attorneys, the Court responded: "I understand their conduct is absolutely horrible, and you know, I don't disagree."). For example, Mr. Ripps called Yuga Labs "demonic evil liars," comparing the company to Jeffrey Epstein. Dkt. 149-50. Defendants threatened Yuga Labs with images portraying Mr. Cahen next to a grave marked "Yuga Labs," Mr. Ripps and Mr. Cahen holding a gun and a knife up to Yuga Labs, and Mr. Cahen hoisting the severed head of one of the founders' apes over his head. *Id.* Mr. Cahen targeted another Yuga Labs founder by falsely tweeting: "[h]e's named after [a] banned 1971 child porn film."[1] He further tweeted

---

[1] https://twitter.com/Pauly0x/status/1620158732872331264

Case No. 2:22-cv-04355-JFW-JEM         -2-         DEFENDANTS' OBJECTIONS

1 that the founder "REFUSES to change his name,"[2] based on the founder's response
2 to a question from an ongoing Highly Confidential – Attorneys' Eyes Only
3 deposition. *See* Atalay Depo. (Dkt. 271) at 157-160 (showing testimony and break
4 taken 42 minutes prior to Mr. Cahen's Tweet).

5       Defendants targeted Yuga Labs' counsel too, accusing Yuga Labs' lead
6 attorney of supporting "racism, antisemitism, beastiality, pedophilia, and using
7 cartoons to market drugs to young children." Dkt. 149-51. Mr. Ripps likewise sent a
8 "personal message" to the attorney, posting an image stating: "Hey maybe you can
9 suck my d**k." *Id*. (censored). This offensive and harassing conduct is par for the
10 course for Defendants. Mr. Ripps' tumblr account is plastered with racist and
11 offensive content.[3] And near the end of August 2023, Mr. Ripps was permanently
12 suspended from Twitter for sending violent death threats.[4] Whether or not
13 Defendants' conduct is "typical" in their circles (an unsupported proposition that
14 Yuga Labs disputes), in federal court, it is "egregious and beyond the pale of
15 acceptable litigation conduct." *See TE-TA-MA*, 392 F.3d at 264; *see also AANP v.*
16 *Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, 894 (9th Cir. 2002)
17 (affirming exceptional case where "defendant acted deliberately to and intended to
18 harm the plaintiff by using its mark" which was "especially egregious" because
19 defendant "continue[d] to use the mark after notice of violation" and continued to
20 "harass[] the plaintiff"). Their conduct warrants a finding that this is an exceptional
21 case.

22       **Defendants' Reply:**

23       Yuga has spent nearly the entirety of this case name-calling Defendants, to
24 which Defendant have not had an opportunity to respond. This document is the first

---

[2] *Id*.
[3] https://twitter.com/nft_decency/status/1538961466015076352
[4] https://twitter.com/PopPunkOnChain/status/1700226047612977249

Case No. 2:22-cv-04355-JFW-JEM   -3-   DEFENDANTS' OBJECTIONS

1 time the Court is apprised of the context of these materials, which makes clear that
2 Yuga's name calling has been uncalled for, exaggerated, and misleading.
3       As noted in Defendants' objection, the examples in the documents that Yuga
4 cites involve, for example, Twitter posts of *memes* that are commonly used in crypto
5 Twitter culture and on the internet generally.  Dkt. 149-50 at 2-5.  And many of the
6 statements that Defendants made were made based one (1) their honest beliefs that the
7 statement contained in the post are true and (2) are public acts of criticism which are
8 commonplace on Twitter, particularly in the cryptocurrency community.
9       For example, Yuga's response cites to a post to allege that Mr. Ripps compared
10 Yuga to Jeffrey Epstein.  But in reality, the post *contrasts* Yuga by saying "they
11 [Yuga] don't have epstein money."  Moreover, this post expressed Mr. Ripps's honest
12 belief and criticism that Yuga has been dishonest regarding its use of offensive
13 content and harmful business practices—something that Mr. Ripps has a right to
14 criticize and which Yuga has taken out of context in an effort to prejudice Defendants
15 before the Court.
16       Yuga also references a meme that Mr. Cahen posted of a grave for the company
17 Yuga.  Again, this is a common meme that is regularly used on the internet to suggest
18 that a company has failed.  The meme comments on the downfall of Yuga because of
19 the successfully protest and criticism of the RR/BAYC collection.  Using a common,
20 generic meme to point out the success of Defendants' criticism is not a "heinous
21 attack."
22       Yuga then references a meme that Mr. Cahen posted of a scene from the famous
23 film *Inglorious Bastards*, which is a World War II movie involving the pursuit of
24 Nazis.  Some unknown third-party created this meme, which depicts the main
25 characters holding weapons to a suspected Nazi.  Again, it is commonplace to use
26 *Inglorious Bastards* memes when making this type of commentary online.  Mr. Cahen
27 re-posted a meme that already exist, to reference Yuga and its use of subversive
28

Case No. 2:22-cv-04355-JFW-JEM     -4-     DEFENDANTS' OBJECTIONS

1  racism.  Sharing a generic meme from a famous movie is not "cruel-hearted
2  harassment" as Yuga irresponsibly alleges in its response.
3      Yuga then cites a meme of a famous Gustav Dore artwork in which David is
4  hoisting the head of Goliath, modified to reference Yuga as Goliath.  This famous
5  painting is again a common meme that is used to convey success or victory, and in
6  this particular context the meme references the success of the RR/BAYC protest and
7  criticism of Yuga.  There is nothing wrong with Mr. Cahen posting this generic meme
8  as it is ordinary behavior on Twitter, particularly in the cryptocurrency community.
9  Yuga has provided no explanation why it has chosen to take this meme out of context
10 in a misleadingly way.
11     Yuga then cites to a Twitter post where Mr. Cahen criticizes a Yuga member
12 with the name "Emperor Tomato Ketchup" for using the same name as a child
13 pornography film that is also named *Emperor Tomato Ketchup*.  Mr. Cahen was (and
14 is) disgusted that a Yuga executive would choose for his internet persona the name of
15 a film that includes child pornography.  He accordingly raised criticism about it on
16 Twitter.  Again, Mr. Cahen has a right to protest Yuga's executive's reference to
17 pedophilia and moreover Yuga's refusal take any action to change it, even after
18 having been publicly criticized for it.
19     Yuga also falsely states that Mr. Cahen made this tweet "based on the founder's
20 responses" in an ongoing deposition.  This is a baseless assertion for which Yuga
21 provided no supporting evidence.  Mr. Cahen was not present at the deposition and
22 never saw or heard any of the confidential content of the deposition.  Mr. Cahen's
23 statement that "Emperor Tomato Ketchup" continued to refuse to change his
24 problematic name was based on his knowledge that, in fact, he had not changed his
25 name.  Yuga's false accusation that Mr. Cahen somehow obtained information from
26 the deposition is yet another false allegation that Yuga and its counsel have carelessly
27 levied without support.
28

Case No. 2:22-cv-04355-JFW-JEM    -5-    DEFENDANTS' OBJECTIONS

Yuga also exaggerates Defendants' posts in which they express their criticism against Yuga and its harmful activities. For example, Yuga complains that Mr. Cahen has criticized Fenwick & West's involvement with criminal activity that FTX has alleged to have committed and the crimes that he suspects that Yuga has committed. But Mr. Cahen has every right to make posts that express his honest beliefs. His Twitter post about, for example, Yuga's counsel supporting Yuga's atrocious behavior articulates his honest beliefs, given that Yuga's counsel has pretended (and suggested in court documents) that the allegations are untrue and has wrongly (in court documents) accused Mr. Ripps and Mr. Cahen of being liars. The jarring content of Mr. Cahen's comments is result of the vile nature of Yuga's accused activities.

Yuga similarly references a tweet form Mr. Ripps that Yuga alleges was harassing conduct towards Yuga's counsel. Yuga's co-founder, Wylie Aronow, posted on Twitter "Hey maybe you can suck my d**k." Mr. Ripps's post involved taking a picture of what Wylie Aronow had publicly stated when he was still acting as Co-President of Yuga and referencing it to Yuga's counsel. Mr. Ripps's post was aimed at raising awareness of the offensive conduct that Yuga's co-founder was engaging in online. And now, Yuga attempts to twist this post to mean something more than an effort to bring attention to the kind of insulting statement Yuga has been posting on Twitter.

Yuga also falsely accused Mr. Ripps's online history by referencing a tumblr page that is *more than 14 years old* and on which Mr. Ripps used a massive banner at the time stating "***SARCASM***:"



And while the page references offensive content found online, as the banner makes clear, Mr. Ripps was *sarcastically* referencing the offensive content because he found it offensive and did not like it.