Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>              Plaintiff,<br><br>  v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>              Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 33, Lines 12:1**<br><br>Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM                                        DEFENDANTS' OBJECTIONS

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Case No. 2:22-cv-04355-JFW-JEM             DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply:

**Plaintiff's Disputed Post Trial Conclusion of Law No. 33, line 12:1:**

<u>Defendants acted with intent to deceive consumers.</u>[3] *See* SJ Order at 12; *see supra* Section II.B.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420).

Defendants did not act with intent to deceive consumers. Mr. Ripps and Mr. Cahen took steps to make clear to collectors and to the public that RR/BAYC was intended as a protest art project. Ripps Decl. ¶¶ 158-176 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 145-155 (Dkt. 344); Dkt. 197-1 ¶ 230. For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10.

Further, collectors using the rrbayc.com website were required to read and click through a disclaimer acknowledging the artistic purpose of the project before they were allowed to commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Although Mr. Ripps and Mr. Cahen understood that these requirements created additional steps that made it more cumbersome for collectors to commission an NFT piece through the project, Mr. Ripps insisted on them so that the artistic purpose of his work would be clear to participants. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

Additionally, Mr. Ripps and Mr. Cahen's online discussion of the RR/BAYC project confirms their intent. In those discussions, Mr. Ripps and Mr. Cahen discussed what they believed to be inappropriate messaging in Yuga's imagery and

1  how the RR/BAYC project shows that NFTs are not digital images.  Ripps Decl. ¶¶
2  148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-
3  1 ¶¶ 203-04.  Accordingly, this conclusion of law is unfounded based on the evidence
4  presented at trial.
5       Yuga Labs also fails to cite to adequate evidentiary support.  Yuga incorrectly
6  relies on the law of the case doctrine by citing to this Court's summary judgment
7  order.  The "law of the case doctrine does not apply to pretrial rulings **such as**
8  **motions for summary judgment**."  Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir.
9  1986) (emphasis added); see also Peralta v. Dillard, 744 F.3d 1076, 1088 (9th Cir.
10  2014).  For example, in Sienze v Kutz, the Court held that although **aspects** of an issue
11  were decided at summary judgment for one purpose, the summary judgment order did
12  resolve the issue generally or as to other topics.  See No. 1:17-CV-0736-AWI-SAB,
13  2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019).  This case is just like *Sienze*:  the
14  summary judgment ruling on Mr. Ripps and Mr. Cahen's intent in using the alleged
15  marks applies to only the issue of likelihood of confusion and cannot be applied more
16  broadly.
17           **Plaintiff's Response:**
18       Given that "Defendants expressly reserve and reassert all objections made in its
19  Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and
20  reasserts all of its responses to those objections as stated in Dkt. 420.
21       Defendants' objection should be rejected because (1) Defendants knew their
22  infringement would result in confusion; (2) Defendants did not take steps to avoid
23  confusion; and (3) most RR/BAYC NFTs were sold on secondary marketplaces
24  without a disclaimer.  Additionally, Defendants' objection should be rejected because
25  (4) the Court has already found that Defendants intended to deceive consumers (*supra*
26  ¶ 8); (5) the record shows ample actual confusion and likelihood of confusion (*supra* ¶
27  11(e)); (6) Defendants intended to profit off this confusion (*supra* ¶ 7(h) lines 5:2-4);
28  (7) the evidence shows that Defendants intended to confuse consumers (*supra* ¶ 4);

and (8) Defendants' "disclaimer" did not dispel likelihood of confusion (*supra* ¶ 7(h) lines 4:22-25).

**There Is Ample Evidence That Defendants Knew They Were Confusing Consumers:** Defendants knew they were using the BAYC Marks in a way that was likely to confuse consumers and did so with the intent to profit from their infringement. Defendants discussed making "like a million dollars." JTX-1574; *see also* JTX-1586 (Mr. Cahen to Mr. Ripps: "I t[h]ink you are gonna make millions too man"); JTX-801.239 (Mr. Cahen to Mr. Lehman: "I think we will make alot of money tbh"; "Potentially a lot"). And despite being urged to use different images or overlay some commentary on the images they did use to avoid confusion, Defendants chose not to. *See, e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"); JTX-801.196 (Mr. Lehman demonstrating what an overlay might look like and recommending not to "in the marketing show screenshots like the ones [Mr. Hickman] showed" "[b]ecause it is too confusing to the 'average joe'"); JTX-696.1 (tweet showing screenshot of Ape Market). Instead, they continued with their infringement, knowing that they were creating confusion. JTX-801.185 (Mr. Lehman writing, "overall I think we should be very careful about doing this in terms of the confusion it will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name."); JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy definitely some people will buy thinking they are buying originals!"); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the

1 Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the blockchain is complicated.  A lot of people don't have the technical expertise or knowledge to be able to have a conversation about crypto technology and blockchain technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT collections by the token tracker); Dkt. 416 at ¶ 7.

They also discussed that they knew they were infringing as they acted contrary to their attorneys' advice.  JTX-801.371 (Cahen to Ripps:  "per our attorney we may just need to change the skull / If we want to fight trademark").  Instead of making changes, such as those recommended by their lawyer or Mr. Lehman, they continued to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs.  Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

**Defendants Did Not Take Steps To Avoid Confusing Consumers:** Defendants did not attempt to avoid confusion, on the contrary Defendants deliberately designed and marketed their infringing NFTs to confuse consumers. Defendants could have called their NFT collection something other than "Bored Ape Yacht Club" with the symbol "BAYC" *immutably* in the metadata for the NFT smart contract, but they chose not to.  Atalay Decl. ¶¶ 3-6; JTX-600; JTX-1146.  Defendants could have used different images or overlaid some commentary on the images they did use, but they chose not to.  *See, e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or something like Getty images" because "it's just insane to have the same art"); JTX-801.196 (Mr. Lehman demonstrating what an overlay might look like and recommending not to "in the marketing show screenshots like the ones [Mr. Hickman] showed" "[b]ecause it is too confusing to the 'average joe'"); JTX-696.1 (tweet showing screenshot of Ape Market).  Defendants could have attacked Yuga Labs in countless non-infringing ways.  But they did not.  Instead, they used Yuga Labs'

marks, commercially, in the way that would make Defendants the most money by selling counterfeit NFTs that confused consumers.  O'Laughlin Decl. (Dkt. 341).

**Most RR/BAYC NFTs Were Sold On Secondary Marketplaces Without A Disclaimer:**  Defendants acknowledge that their alleged disclaimer was only on rrbayc.com, but Ms. Kindler's unrebutted analysis of sales data demonstrates that for Defendants' infringing NFTs, "[t]he majority of the sales are taking place on secondary markets. . . . [T]he vast majority of them are occurring in secondary markets and not from just the initial sale."  Trial Tr. at 202:4-17; *see also* JTX-723 (Kindler Expert Report) at 49 (discussing Defendants' acknowledgement of harm, e.g., where "Defendants' collaborator Mr. Hickman noted to Defendants that '[w]e're closing in on *$10 million impact to yuga'").  These secondary markets did not involve a disclaimer.

Thus, the vast majority of market activity involving Defendants' infringing NFTs is taking place on the secondary market, including platforms such as Foundation and OpenSea.  These secondary marketplaces are one place where consumer confusion is likely to result from Defendants' actions to flood the market with their infringing products.  These secondary marketplaces are also a prominent source of confusion going forward—especially since they are where Defendants continue to market their infringing NFTs for sale.  Solano Decl. (Dkt. 342) ¶ 78 ("RR/BAYC NFTs continue to be sold on websites like LooksRare and NFTx"); Trial Tr. at 58:23-25 ("the Ape Market Twitter [account], that actually links directly to LooksRare where these NFTs are still selling").  Defendants' contention is therefore incorrect and misleading.

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Defendants reiterate all points made in their objection.  To the extent Yuga is relying on a Law of the Case argument, it cannot because it does not apply to

Summary Judgment or issues decided for only one purpose. *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014); *Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019). Defendants have not relitigated any issues but rather argue in accordance with what issues remain in the case. Further, evidence shows that the disclaimer was meant to dispel confusion. *Supra* ¶ 7(h) lines 4:22-25. The fact that they were sold on secondary marketplaces without a disclaimer was outside Defendants control and does not support intentional infringement.

Defendants took multiple steps to make clear that the RR/BAYC collection was not related to Yuga in any way. For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were required to acknowledge the artistic purpose of the project before they could commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Mr. Ripps insisted on these requirement and additional steps so that the artistic purpose of the work would be clear to participants. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

The evidence that Yuga points to does not demonstrate that Defendants were knowingly confusing consumers. Yuga repeatedly cites to various pages of JTX-801 to argue that Defendants were aware of the Yuga's alleged confusion. But those pages are internal discussion about the design of the ApeMarket website to ensure that users of apemarket.com were not confused by the website design. Yuga even cross-examined Mr. Hickman about these communications and received the same explanation. Trial Tr. [Hickman] 212:22-24. Yuga also cites to correspondence among the creators discussing a possible fear of litigation. These discussions are

taken out of context. Whether Defendants feared possible litigation for criticizing a multi-billion dollar company does not establish that they intended confuse anyone.

Yuga also alleges that Etherscan's creation of a token tracker is evidence of Defendants' intent to cause confusion. But Defendants do not control the Etherscan website or how Etherscan chooses to display the RR/BAYC NFT collection. Moreover, Yuga's own witness, Mr. Atalay, himself has admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or by checking the associated smart contract address. Trial Tr. [Atalay] 135:2-25. Mr. Atalay explained that using token names "would be a fairly weak way to do so because often those things are mutable. They can be changed after the fact. Also, there's no guarantee of uniqueness." Trial Tr. [Atalay] 133:12-23.

The fact that over 80% of sales occurred on rrbayc.com is substantially corroborated by Yuga's own expert who admits that 7,028 out of the total 9,415 RR/BAYC NFTs (more than 74% of sales RR/BAYC reservations) were sold through the RSVP Contract, which was only available and usable through rrbayc.com. Kindler Decl. ¶ 36 (Dkt. 338). Yuga's expert also admits that the RSVP Contract sales amounted to 981 Eth out of 1196 Eth of Defendants' total profits (which is more than 82% of all profits). Kindler Decl. 40 (Dkt. 338).

Lastly, Defendants efforts to prevent confusion were successful. Defendants are not aware of a single instance of actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344). Buttressing this fact, Yuga's founders were also not aware of a single instance of actual confusion. Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q. Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to identify even[] a single person who purchased an RR/BAYC believing it to be sponsored by Yuga Labs; right? A Correct.").

In sum, there is no evidence of actual confusion. Defendants took successful steps to disabuse any confusion, and the evidence demonstrates no intent to confuse.

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ *Louis W. Tompros* |
| 5 | | Louis W. Tompros (*pro hac vice*) louis.tompros@wilmerhale.com **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 6 | | 60 State Street |
| 7 | | Boston, MA 02109 Telephone: (617) 526-6000 |
| 8 | | Fax: (617) 526-5000 |
| 9 | | Attorneys for Defendants |
| 10 | | RYDER RIPPS and JEREMY CAHEN |
| 11 | | |
| 12 | | |
| 13 | Dated: October 5, 2023 | FENWICK & WEST LLP |
| 14 | | |
| 15 | | By: /s/ *Eric Ball* |
| 16 | | Eric Ball eball@fenwick.com **FENWICK & WEST LLP** |
| 17 | | 801 California Street |
| 18 | | Mountain View, CA 94041 Telephone: (650) 988-8500 |
| 19 | | Fax: (650) 938-5200 |
| 20 | | Attorneys for Plaintiff |
| 21 | | YUGA LABS, INC. |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000