1   Louis W. Tompros (*pro hac vice*)
    louis.tompros@wilmerhale.com
2   Monica Grewal (*pro hac vice*)
    monica.grewal@wilmerhale.com
3   Scott W. Bertulli (*pro hac vice*)
    scott.bertulli@wilmerhale.com
4   Tyler Carroll (*pro hac vice*)
    tyler.carroll@wilmerhale.com
5   **WILMER CUTLER PICKERING**
      **HALE AND DORR LLP**
6   60 State Street
    Boston, MA 02109
7   Telephone: (617) 526-6000
    Fax: (617) 526-5000
8
    Derek Gosma (SBN 274515)
9   derek.gosma@wilmerhale.com
    Henry Nikogosyan (SBN 326277)
10  henry.nikogosyan@wilmerhale.com
    **WILMER CUTLER PICKERING**
11    **HALE AND DORR LLP**
    350 South Grand Ave., Suite 2400
12  Los Angeles, CA 90071
    Telephone: (213) 443-5300
13  Fax: (213) 443-5400

14  Attorneys for Defendants
    *Ryder Ripps and Jeremy Cahen*

15

16

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Conclusion of Law No. 33, Lines 12:2-5 and n.3** <br><br> Judge:  Hon. John F. Walter |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA  90401
Telephone:   310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply:

**Plaintiff's Disputed Post Trial Conclusion of Law No. 33, lines 12:2-5 and n.3:**

*Footnote 3*

Mr. Ripps' testimony as to his intent and "good faith" is not credible, as many of the statements in his declaration are contradicted by the documentary evidence. The Court therefore finds Mr. Ripps' characterization of his actions when they do not suit present purposes, to be unavailing. *Cf. supra* Section II.B.

Similarly, the Court finds Mr. Hickman's testimony as to his and Defendants' intent to not be credible. *See* JTX-2723; Dkt. 392 at 206:8–207:20. While Mr. Hickman testified his compensation was tied to his belief in Mr. Ripps' alleged protest art (Dkt. 345 ¶¶75-76; Dkt. 392 at 221:11-15), Mr. Hickman's deposition testimony contradicts that assertion. *See* Dkt. 394 at 129:3-6 ("My financial arrangement for this whole thing is about as a software developer being compensated for making software.")

*Lines 12:2-5*

The Court finds Defendants, and their business partner Ryan Hickman, to be uncredible witnesses. The evidence admitted at trial establishes that Defendants' use of Yuga Labs' BAYC Marks was intentional and was done with the expectation of profiting from such use. *See supra* ¶¶7, 10

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reasserts all objections made in its Joint Statement Regarding Objections (Dkt. 420).

Yuga's request for a finding that Mr. Ripps lacks credibility is baseless given Yuga's election to forego any substantive cross examination of Mr. Ripps on any of the issues that it now challenges. Mr. Ripps's testimony was, as a result, uncontested.

1    Additionally, Mr. Ripps and Mr. Hickman's testimony regarding their intent for

2  creating the RR/BAYC project is credible and supported by documentary evidence.

3  In private group chats (JTX-801, 803-804), Mr. Ripps, Mr. Cahen, and Mr. Hickman

4  discussed their intended artistic purpose of the project, their intention that it would

5  spread criticism of Yuga, and their intention to educate the public about the nature of

6  NFTs and what they saw as Yuga's misconduct.  Ripps Decl. ¶¶ 144, 147 (Dkt. 346)

7  (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240,

8  276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30.

9    Further, Mr. Ripps, Mr. Cahen, and Mr. Hickman took many steps in how the

10  project was created that support the finding that they were motivated by artistic

11  purpose and to spread criticism.  The rrbayc.com website—through which the

12  majority of RR/BAYC commissions occurred and the vast majority of alleged profits

13  accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344))

14  included an explanation of the artistic intent for the project.  Ripps Decl. ¶¶ 101-103

15  (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-

16  202; JTX-2085; Trial Tr. [Solano] 63:1-10.  Collectors using the rrbayc.com website

17  were required to read and click through a disclaimer acknowledging the artistic

18  purpose of the project before they were allowed to commission an NFT.  *See* Ripps

19  Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13.

20  Mr. Ripps insisted on these additional steps so the artistic purpose of his work would

21  be clear to participants.  *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24].

22    Finally, Yuga also fails to cite to adequate evidentiary support.  First, they cite

23  to JTX-2723 and Mr. Hickman's corresponding trial testimony to support a finding

24  that Mr. Hickman's intent in creating the RR/BAYC Project as a protest is not

25  credible.  That exhibit shows that Yuga has sued Mr. Hickman individually for his

26  role in the RR/BAYC Project and that there is a default judgment entered in another

27  case.  Mr. Hickman testified at trial that he was not aware of this judgment.  Trial Tr.

28  [Hickman] 207:2-6.  Whether Mr. Hickman was notified and opposed a lawsuit Yuga

1  has brought against him in another case does not weigh toward a finding of his intent

2  in creating the RR/BAYC Project.

3          Additionally, Yuga asserts that Mr. Hickman's deposition contradicts his

4  testimony that his compensation amount was tied to his desire to help with the protest

5  against Yuga.  For support Yuga cites to a portion of Mr. Hickman's deposition

6  testimony where he states that he was compensated for work as a software developer

7  on the RR/BAYC Project.  Dkt. 394 at 129:3-6.  The fact that Mr. Hickman's role was

8  that of a software developer does not discredit his testimony that he accepted less

9  compensation than he typically charges because he was inspired by the goal of the

10 project.  *See* Hickman Decl. ¶¶ 75-76 (Dkt. 345); Trial Tr. 221:11-15 [Hickman].

11                    **Plaintiff's Response:**

12         Given that "Defendants expressly reserve and reassert [sic] all objections made

13 in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves

14 and reasserts all of its responses to those objections as stated in Dkt. 420.  Defendants'

15 objections should be rejected because Yuga Labs has demonstrated that (1) Mr.

16 Hickman is also not a credible witness; (2) Defendants intended to confuse consumers

17 with the RR/BAYC NFTs; and (3) most RR/BAYC NFTs were sold on secondary

18 marketplaces without a disclaimer.  Additionally, Defendants' objections should be

19 rejected because (1) Mr. Ripps' declaration should be ignored given that he is not a

20 credible witness (*supra* ¶ 62); (2) Mr. Cahen is not a credible witness (*supra* ¶ 7(h)

21 lines 4:26-28).

22         **Mr. Hickman Is Not A Credible Witness:** Mr. Hickman's testimony is not

23 credible, as demonstrated by its contradictions by the evidentiary record, other

24 testimony, and impeachment at trial.  Mr. Hickman testified that ApeMarket was not

25 ready to launch and was merely in the ideation phase.  Trial Tr. at 210:1-2.  This was

26 proven false at trial.  *See* Trial Tr. at 247:10-12 ("Q:  And there was a ready-to-go Ape

27 Market by February – excuse me – by June 24, 2022? A:  Among other things,

28 yes[.]"); JTX-1027 (post from Ape Market twitter account advertising that

"ApeMarket.com will go live within 24 hours of the final mint, which we will announce shortly"). Mr. Hickman testified in his trial declaration that he was unaware of instances of confusion stemming from the infringing NFTs. Hickman Decl. (Dkt. 345) ¶ 92. However, Mr. Hickman discussed with Defendants that consumers were confused by Defendants' misleading use of authentic BAYC NFT token IDs. JTX-44. Further, Mr. Hickman was an active participant in the Team ApeMarket discord chat where Defendants, Mr. Lehman, and Mr. Hickman himself raised the likelihood of confusion many times. *See, e.g.*, JTX-801.195 (Mr. Lehman noting that people "making mistakes with apes is already a huge meme" and "Remember the 'average joes'?", and Cahen responding, "I mean that is unavoidable"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult to make the collections coexist" because "they are the same art" and "same logos"); JTX-44.00002 (Mr. Hickman stating, "people believe the tokenId should match the RR ID. that is where they get confused").

Further, in his trial declaration Mr. Hickman testified about his and a family member's purportedly adverse reactions to the Bored Ape Yacht Club images, Hickman Decl. (Dkt. 345) ¶¶ 41-58, but when questioned by the Court at trial Mr. Hickman testified that he does not have any problem with selling NFTs that point to those exact same images. Trial Tr. at 222:24. Mr. Hickman's testimony that he found Yuga Labs' NFTs problematic is even more difficult to reconcile with the fact that he claimed to purchase a Bored Ape Yacht Club NFT after forming the supposed belief that it was problematic, and continued to purportedly own one up until trial. Hickman Decl. (Dkt. 345) ¶¶ 18-19, 21. Finally, despite Mr. Hickman's testimony at trial that he did not want to profit off the RR/BAYC NFTs, Trial Tr. at 209:21-23, Mr. Hickman testified at deposition that he was financially motivated to develop the software that facilitated Defendants' infringement. Hickman Depo. Designations (Dkt. 394) at 128:25-129:6 ("I make software. I charge to make software. I have a

record, a history, of charging to make software.  My financial arrangement for this whole thing is about a software developer being compensated for making software.").

Defendants' attempts to downplay the importance of citations that show Mr. Hickman's lack of credibility should be ignored.  Mr. Hickman's testimony that he is unaware of a judgment against him in Nevada is contradicted by proper service of that judgment and his attempts to overturn it.  JTX-2723; Dkt. 392 at 206:8–207:20; *see also* Judgment and Order for Permanent Injunction Against Ryan Hickman (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023). Even more, since Mr. Hickman has been sued by Yuga Labs in another proceeding he is biased against Yuga Labs and unlikely to admit the truth of his scam, in a vain attempt to avoid suffering the same fate as Mr. Lehman and Defendants.

Mr. Hickman's recent sworn statements in the related lawsuit against him also demonstrate that he is not a credible witness, and that he is willing to lie under oath where it best serves him.  In Yuga Labs' lawsuit against Mr. Hickman that is currently pending in the District of Nevada, Mr. Hickman makes false representations to the court and disclaims his role as one of the lead developers in the RR/BAYC scam.  Specifically, in an effort to vacate the default judgment entered against him, Mr. Hickman states under oath, "I previously provided testimony in the *Yuga Labs, Inc., v. Ryder Ripps, Jeremy Cahen*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. 2022) case that my only involvement in the websites located at the domain names <rrbayc.com> and <apemarket.com> ('Domain Names') included making some contributions to the 'RSVP Smart Contract.'").  Hickman Decl. ISO Reply to Motion to Vacate Default Judgment (Dkt. 38-1), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Sept. 20, 2023), at ¶ 3.

This statement is demonstrably false and directly contradicted by the record in this case.  In Mr. Hickman's prior testimony before *this* Court, he claimed to be a major contributor to the development and implementation of the RR/BAYC and Ape Market websites.  *See* Hickman Depo. Designations (Dkt. 394) at 42:17-19 ("[T]he

smart contract coders and website developers in that context is myself and Tom."); *see also* Dkt. 271 (notice of lodging Mr. Hickman's marked up deposition transcript) at 211:1-4 ("Q: Technically, as of the 21st of June you're the primary person that's working on Ape Market? / A: That's fair to say. That's fair to say"); Hickman Decl. (Dkt. 345) ¶ 69 ("I also helped Mr. Ripps by working on developing the rrbayc.com website, which was where collectors would be able to use the RSVP program to make reservations."); ¶ 70 ("Mr. Ripps explained what he wanted the rrbayc.com website to look like, and I did my best to implement his creative vision.").  Mr. Hickman's blatant contradictions and willingness to lie for personal gain demonstrate his lack of credibility as a witness and render his declaration unreliable.

**Defendants' Intent To Confuse Consumers In Order To Turn A Profit Is Well-Documented:** That Defendants intended to confuse consumers and their supposed disclaimer is proof of their intent, not the absence of it.  This is thoroughly established.  *See supra* ¶ 33, line 12:1.

**Most RR/BAYC NFTs Were Sold On Secondary Marketplaces Without A Disclaimer:**  Defendants acknowledge that their alleged disclaimer was only on rrbayc.com, but Ms. Kindler's unrebutted analysis of sales data demonstrates that for Defendants' infringing NFTs, "[t]he majority of the sales are taking place on secondary markets. . . .  [T]he vast majority of them are occurring in secondary markets and not from just the initial sale."  Trial Tr. at 202:4-17; *see also* JTX-723 (Kindler Expert Report) at 49 (discussing Defendants' acknowledgement of harm, e.g., where "Defendants' collaborator Mr. Hickman noted to Defendants that '[w]e're closing in on *$10 million impact to yuga'").  These secondary markets did not involve a disclaimer.

Thus, the vast majority of market activity involving Defendants' infringing NFTs is taking place on the secondary market, including platforms such as Foundation and OpenSea.  These secondary marketplaces are one place where consumer confusion is likely to result from Defendants' actions to flood the market with their

infringing products.  These secondary marketplaces are also a prominent source of confusion going forward—especially since they are where Defendants continue to market their infringing NFTs for sale.  Solano Decl. (Dkt. 342) ¶ 78 ("RR/BAYC NFTs continue to be sold on websites like LooksRare and NFTx"); Trial Tr. at 58:23-25 ("the Ape Market Twitter [account], that actually links directly to LooksRare where these NFTs are still selling").  Defendants' contention is therefore incorrect and misleading.

### Defendants' Reply:

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Defendants reiterate all points made in their objection.  For reasons stated in its objection and reply to ¶ 7(f) and 62, 18:19-22.  Mr. Ripps's testimony was not contradicted through cross examination and should be credited.  *See* Trial Tr. [Ripps] 267:7-271:9.  Yuga incorrectly asserts that Mr. Hickman is not credible.  Yuga's basis for this accusation is simply because Mr. Hickman testified that ApeMarket was in the ideation stage.  But, as discussed above, the trial evidence consistently shows that the ApeMarket *was* in the ideation stage and still subject to Mr. Ripps's review and approval.

Yuga argues that Mr. Hickman is not credible because he purportedly "wrongly" testified that he is not aware of any actual instance of confusion.  But the trial record confirmed that no one is aware of a single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344).  Yuga then cites to various documents (JTX-44, JTX-801.195) to argue that Mr. Hickman purportedly believed that consumers would be confused by the RR/BAYC project.  But these documents involve discussion in how to design ApeMarket to ensure that the website design was not confusing to users of the website.  Yuga cross-examined Mr. Hickman about this issue and confirmed that Mr. Hickman and other members of the RR/BAYC project were not discussing confusion

1  regarding the source of RR/BAYC NFTs and were actually taking steps to avoid

2  confusion. Trial Tr. [Hickman] 212:22-24.  Yuga also argues that Mr. Hickman is not

3  credible because he did not have a problem working on an NFT project that points to

4  public digital images that he finds to be offensive.  But Yuga's argument missing the

5  mark.  As Mr. Hickman explained, the whole purpose of his work on the RR/BAYC

6  collection was to protest the offensive imagery that Yuga had been normalizing.  *Id.* at

7  222:10-22 (emphasis added).  Yuga then suggests that Mr. Hickman is not credible

8  because he himself owns a BAYC NFT even though he finds the images offense.  But

9  Mr. Hickman's declaration explains, "When I first saw Bored Ape Yacht Club

10  images, I found the imagery problematic, but I did not originally pay I much

11  attention."  Hickman Decl. ¶ 18.  There is nothing about Mr. Hickman's conversation

12  with his great aunt and how he became part of the RR/BAYC movement that makes

13  him an untrustworthy witness.  Further, Yuga's default judgment against Mr.

14  Hickman is currently stayed for lack of service.

15      The fact that a vast majority of sales were on rrbayc.com is corroborated by Ms.

16  Kindler.  *See* supra ¶ 33 line 12:1.  Further, Defendants intent not to confuse and steps

17  to avoid confusion are well established.  *Id.*

18

19

20

21

22

23

24

25

26

27

28

1   Dated:  October 5, 2023

2

3

4   By: /s/ *Louis W. Tompros*

5

6

7

8

9

10

11

12

13   Dated:  October 5, 2023

14

15   By: /s/ *Eric Ball*

16

17

18

19

20

21

22

23

24

25

26

27

28

WILMER CUTLER PICKERING HALE
AND DORR LLP


Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE
AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN


FENWICK & WEST LLP


Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA  94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000