| | |
|---|---|
| Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>Monica Grewal (*pro hac vice*)<br>monica.grewal@wilmerhale.com<br>Scott W. Bertulli (*pro hac vice*)<br>scott.bertulli@wilmerhale.com<br>Tyler Carroll (*pro hac vice*)<br>tyler.carroll@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>  **HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Fax: (617) 526-5000<br><br>Derek Gosma (SBN 274515)<br>derek.gosma@wilmerhale.com<br>Henry Nikogosyan (SBN 326277)<br>henry.nikogosyan@wilmerhale.com<br>**WILMER CUTLER PICKERING**<br>  **HALE AND DORR LLP**<br>350 South Grand Ave., Suite 2400<br>Los Angeles, CA 90071<br>Telephone: (213) 443-5300<br>Fax: (213) 443-5400<br><br>Attorneys for Defendants<br>*Ryder Ripps and Jeremy Cahen* | ERIC BALL (CSB No. 241327)<br>eball@fenwick.com<br>KIMBERLY CULP (CSB No. 238839)<br>kculp@fenwick.com<br>FENWICK & WEST LLP<br>801 California Street<br>Mountain View, CA  94041<br>Telephone:  650.988.8500<br>Facsimile:   650.938.5200<br><br>MOLLY R. MELCHER (CSB No. 272950)<br>mmelcher@fenwick.com<br>ANTHONY M. FARES (CSB No. 318065)<br>afares@fenwick.com<br>ETHAN M. THOMAS (CSB No. 338062)<br>ethomas@fenwick.com<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA  94104<br>Telephone:  415.875.2300<br><br>Additional Counsel listed on next page<br><br>Attorneys for Plaintiff<br>YUGA LABS, INC. |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 33, Lines 12:5-8**<br><br>Judge:  Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM　　　　　　　　　DEFENDANTS' OBJECTIONS

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

| | |
|---|---|
| Case No. 2:22-cv-04355-JFW-JEM | DEFENDANTS' OBJECTIONS |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Conclusion of Law No. 33, lines 12:5-8:**

The evidence further establishes that Defendants were aware of the likelihood of consumer confusion based on their use of the BAYC Marks and nevertheless proceeded to use them in a manner likely to confuse consumers. *See supra* ¶¶5-6.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The evidence presented at trial shows that Mr. Ripps and Mr. Cahen took many steps to avoid any possible confusion. For example, the rrbayc.com website—through which the majority of RR/BAYC commissions occurred and the vast majority of alleged profits accrued (Ripps Decl. ¶ 110 (Dkt. 346) (uncontested); Cahen Decl. ¶ 144 (Dkt. 344)) included an explanation of the artistic intent for the project. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139, 147 (Dkt. 344); Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Collectors using the rrbayc.com website were required to read and click through a disclaimer acknowledging the artistic purpose of the project before they were allowed to commission an NFT. *See* Ripps Decl. ¶¶ 106-109 (Dkt. 346) (uncontested); JTX-2086; Trial Tr. [Muniz] 83:10-13. Although Mr. Ripps and Mr. Cahen understood that these requirements created additional steps that made it more cumbersome for collectors to commission an NFT piece through the project, Mr. Ripps insisted on them so that the artistic purpose of his work would be clear to participants. *See* Dkt. 401 at 21 [Lehman Depo. 59:25-60:24] ("Q. … Why was the artist statement

1  ultimately included, if it had a negative impact on usability? … A. … Ryder wanted it
2  and so he had the final call.").

3  Further, as the evidence presented at trial indicated, these steps worked and
4  Yuga was not able to identify even a single person who obtained an RR/BAYC NFT
5  believing it was sponsored by Yuga and Mr. Ripps, Mr. Cahen, and Mr. Hickman are
6  not aware of a single instance of actual confusion.  Ripps Decl. ¶ 223 (Dkt. 346)
7  (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial
8  Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7 ("Q.
9  Now let's focus on, I think, what you were focused on. Yuga Labs has been unable to
10 identify even[] a single person who purchased an RR/BAYC believing it to be
11 sponsored by Yuga Labs; right? A. Correct.").

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless, Defendants' objection should be rejected because (1) the record contains ample evidence that Defendants knew they were confusing consumers, and (2) Defendants' disclaimer and other supposed steps do not negate their obvious intent.  Additionally, Defendants' objections should be rejected because (3) the evidence of actual and likely confusion is overwhelming (*supra* ¶ 11(e)).

**There Is Ample Evidence That Defendants Knew They Were Confusing Consumers:** Defendants knew they were using the BAYC Marks in a way that was likely to confuse consumers and did so with the intent to profit from their infringement.  Defendants discussed making "like a million dollars."  JTX-1574; *see also* JTX-1586 (Mr. Cahen to Mr. Ripps:  "I t[h]ink you are gonna make millions too man"); JTX-801.239 (Mr. Cahen to Mr. Lehman:  "I think we will make alot of money tbh"; "Potentially a lot").  And despite being urged to use different images or overlay some commentary on the images they did use to avoid confusion, Defendants

1  chose not to. *See, e.g.*, JTX-801.192 (Mr. Lehman proposing "an overlay or
2  something like Getty images" because "it's just insane to have the same art"); JTX-
3  801.196 (Mr. Lehman demonstrating what an overlay might look like and
4  recommending not to "in the marketing show screenshots like the ones [Mr. Hickman]
5  showed" "[b]ecause it is too confusing to the 'average joe'"); JTX-696.1 (tweet
6  showing screenshot of Ape Market).  Instead, they continued with their infringement,
7  knowing that they were creating confusion.  JTX-801.185 (Mr. Lehman writing,
8  "overall I think we should be very careful about doing this in terms of the confusion it
9  will create"); JTX-801.189 (Mr. Hickman informing Mr. Cahen that it was "difficult
10 to make the collections coexist" because "they are the same art" and "same logos");
11 JTX-801.279 (Mr. Lehman referring to potential customers as "SHEEPLE" and
12 writing, "Ppl will not read the contract"); JTX-801.376 (Mr. Lehman wrote that the
13 RR/BAYC logo "could be considered confusing and our use of the 'BAYC' name.");
14 JTX-631 (third party informing Mr. Lehman that RR/BAYC was "quite crazy
15 definitely some people will buy thinking they are buying originals!"); JTX-44.00002
16 (Mr. Hickman stating, "people believe the tokenId should match the RR ID.  that is
17 where they get confused"); Hickman Depo. Designations (Dkt. 394) at 143:15-144:16
18 (testifying "Bored Ape Yacht Club" and "BAYC" in the token tracker refers to the
19 Bored Ape Yacht Club made by Yuga Labs); Cahen Depo. Designations (Dkt. 395) at
20 59:7-59:16 (claiming not to know what an "RR/BAYC NFT" is and stating "the
21 blockchain is complicated.   A lot of people don't have the technical expertise or
22 knowledge to be able to have a conversation about crypto technology and blockchain
23 technology."), at 148:10-13 (testifying it is "very common" for people to refer to NFT
24 collections by the token tracker); Dkt. 416 at ¶ 7.
25       They also discussed that they knew they were infringing as they acted contrary
26 to their attorneys' advice.  JTX-801.371 (Cahen to Ripps:  "per our attorney we may
27 just need to change the skull / If we want to fight trademark").  Instead of making
28 changes, such as those recommended by their lawyer or Mr. Lehman, they continued

to use Yuga Labs' BAYC Marks to promote and sell the RR/BAYC NFTs. Solano Decl. ¶ 70; *see also* Ripps Decl. ¶ 55 (Dkt. 346) (uncontested) ("In my experience, when designing logos and imagery for brands, every choice is intentional.").

**Defendants' Disclaimer Is Evidence Of Their Culpability:** With respect to the supposed disclaimer on rrbayc.com, "the fact that Defendants concluded it was necessary to include a disclaimer demonstrates their awareness that their use of the BAYC Marks was misleading." SJ Order (Dkt. 225) at 17.

Defendants also knew that what they were doing was likely to lead to a lawsuit. For instance, Mr. Ripps asked for a reference to his limited liability company, Live9000 LLC, to be added to the rrbayc.com because he did not "want to get sued personally." JTX-803.57; *see also* JTX-918.00036 (Mr. Lehman stating to Mr. Cahen the need to "look really sympathetic to people" if sued). And, Mr. Lehman was still advocating for a "new logo and branding direction in light of the trademark thing" to Mr. Cahen before they learned of this lawsuit (JTX-918.00035) because "I don't want to get sued, OR, if get do get sued, for us to look really sympathetic to everyone" (JTX-918.0036). That Defendants took some steps to try to conceal their intent when they were inevitably sued does not make the infringing activity less confusing; it just demonstrates their culpability.

Additionally, the public was not required to read and click a disclaimer. Indeed, even on rrbayc.com, Defendants could not enforce any requirement that users "read" what Mr. Hickman and Mr. Lehman referred to as a "wall of text" that they agreed "no one" would read (JTX-801.128). And, this wall of text did nothing to dispel confusion amongst the general public when every single RR/BAYC NFT sold (or that ever will sell in the future) uses the trademarks BORED APE YACHT CLUB and BAYC—without any alleged disclaimer. Atalay Decl. (Dkt. 337) at ¶¶ 3-6; Trial Tr. at 133:12-134:20; JTX-600; JTX-1146. Defendants also did not include any similar disclaimer on Foundation or other secondary marketplaces, nor was there one on Etherscan. Thus, the majority of the sales of RR/BAYC NFTs have been on

secondary marketplaces where there was no disclaimer. Kindler Decl. (Dkt. 338) at ¶ 69; JTX-801.376 ($10 million impact).

Defendants have no survey, or material consumer evidence, that users of the infringing rrbayc.com website read any disclaimer. This is not surprising since the vast majority of sales occurred outside of the rrbayc.com website. Indeed, Mr. Ripps admitted that all sales went through Foundation—where there was no disclaimer. (Ripps Deposition Designations) at 82:8-13.

Finally, every single RR/BAYC NFT sold (or that ever will sell in the future) uses the trademarks BORED APE YACHT CLUB and BAYC. Atalay Decl. (Dkt. 337) at ¶¶ 3-6; Trial Tr. at 133:12-134:20; JTX-600; JTX-1146. Indeed, a user today linking to Etherscan will not see Ryders Ripps' Bored Ape Yacht Club, but will see Bored Ape Yacht Club and will not see RR/BAYC but will see BAYC. Trial Tr. at 52:6-21, 53:14-54:22, 138:6-20; JTX-117; Atalay Decl. ¶¶ 3-6; Solano Decl. ¶¶ 46-47, 78; *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1078 (9th Cir. 2006) (finding that disclaimers on packaging, but not on infringing product, did "nothing to dispel post-purchase confusion"). Defendants' claimed disclaimer is non-existent to ineffective at best.

**The Evidence Is Overwhelming That There Was Actual And Likely Confusion:** Finally, Yuga Labs produced ample documentary and testimonial evidence demonstrating consumer confusion. SJ Order (Dkt. 225) at 12; JTX-1; JTX-109; JTX 621; JTX-701; JTX-801.185, 376; JTX-1029; JTX-1030; JTX-1031; JTX-1032; JTX-1034; JTX-1035; Ripps Depo. Designations (Dkt. 396) at 290:4-9; JTX-1049; Berger Declaration (Dkt. 339) ¶¶ 71-76; Muniz Decl. (Dkt. 340) ¶¶ 8-18; O'Laughlin Decl. (Dkt. 341) ¶¶ 13-14; Solano Decl. (Dkt. 342) ¶¶ 34-35, 42-55, 63-69; Trial Tr. (Dkt. 392) at 53:14-54:22; Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416) at ¶¶ 4-7. Defendants were aware of the confusion. *See, e.g.*, JTX-801.195 (Mr. Lehman noting that people "making mistakes with apes is already a huge meme" and "Remember the 'average joes'?", and Cahen responding, "I

1. mean that is unavoidable"). And Yuga Labs' survey evidence demonstrated significant confusion among consumers who incorrectly believed RR/BAYC was sponsored by or affiliated with Yuga Labs. JTX-721 ¶¶ 16, 47, 73; O'Laughlin Decl. (Dkt. 341)¶¶ 13.a-c, 16, 47, 48, 73, 81, 82. Defendants do not offer any admissible or credible evidence to rebut the evidence that consumers believed, or were likely to believe, RR/BAYC was affiliated with or sponsored by Yuga Labs, nor do they rebut evidence of initial interest or post-sale confusion.

There is a clear likelihood of confusion as well, given Defendants' use of the same marks and images, which the Court already determined. SJ Order (Dkt. 225) at 10-13; *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is 'open and shut.'") (citation omitted). In any event, actual confusion is not required; and the Court already found Defendants' use of BAYC Marks to be infringing. SJ Order (Dkt. 225) at 12. Yuga Labs is thus entitled to Defendants' profits due to their infringing activity regardless of whether purchasers were actually confused. *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 238, 255 (S.D.N.Y. 2012) (granting defendant's profits even where infringement claims premised solely on post-sale confusion where a "potential purchaser, knowing that the public is likely to be confused or deceived by the allegedly infringing product, [] choose[s] to purchase that product instead of a genuine one").

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Defendants reiterate all points made in their objection and in *supra* ¶ 11(e). Nobody was able to testify to any actual confusion, Yuga's witnesses admitted to not being aware of any. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Solano] 18:23-19:1; Trial

1 | Tr. [Muniz] 85:3-7.

2 |     The evidence that Yuga cites does not rebut that there is no evidence of actual or likely confusion.  None of its record citations involve actual consumers.  Yuga attempts to ameliorate this issue by relying on Ms. O'Laughlin's flawed surveys. These surveys cannot support a finding of likely confusion, much less *actual* confusion.  As explained in detail *supra Objection to ¶ 19 Lines 8:25, 27-9:2*, her surveys should be given no weight.  To the extent Yuga is making a law of the case doctrine argument it should be rejected.  *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

    Defendants' disclaimer is not evidence of their culpability, in fact it demonstrates the opposite.  Yuga's law of the case argument should be rejected on this point as well.  Yuga's complaint that Defendants did not use a disclaimer on Foundation, Etherscan, or any other third-party website is inapposite.  Defendants have no control over third party websites such as Etherscan and do not have the ability to design the pages third-party websites use or how they choose to display the RR/BAYC NFT collection.  Regardless, Mr. Atalay admitted that consumers of NFTs do not use Etherscan's token tracker/token name but instead rely on marketplaces or by checking the associated smart contract address because it is a weak indicator.  Trial Tr. [Atalay] 135:2-25; 133:12-23.  The smart contract clearly indicates Mr. Ripps is the creator and not Yuga and allows consumers to easily establish provenance, which undermines Yuga's assertions about what consumers see when they review the NFT.  *See* JTX-1146; Ripps Decl. ¶¶ 88-89 (Dkt. 346) (uncontested).  Yuga misstates the meaning of Mr. Ripps's deposition testimony surrounding the use of Foundation. Mr. Ripps's comment that all of the NFTs were "technically sold" on Foundation is because the contract is a Foundation contract.  *See* Ripps Depo. Designations (Dkt. 396) at 82:8-13; Counter designation 82:14-19. This however is different than the "Foundation page" for Ryder Ripps.

1        Yuga also incorrectly argues that the disclaimer was ineffective. As Mr. Ripps's testimony makes clear, the rrbayc.com website "required collectors to acknowledge and accept a disclaimer before they were able to commission an RR/BAYC NFT." Ripps Decl. ¶ 105-106 (Dkt. 346) (uncontested). Yuga's assertion that this disclaimer shows the opposite intent is baseless, especially since their expert admits that most sales occurred on rrbayc.com. *See* Kindler Decl. ¶ 36 (Dkt. 338).

       Yuga's evidence that Defendants knew they were confusing consumers is incorrect for reasons cited at *supra* Objection to ¶ *33 Line 12:1*.

       Finally, if Yuga is entitled to disgorgement of Mr. Ripps and Mr. Cahen's profits, which it is not, Yuga can only receive profits "attributable to the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). This requires distinguishing between revenue from unconfused collectors who reserved RR/BAYC NFTs as a protest against and confused consumers. *See id.* There is no evidence of a single confused purchase. Yuga's citations to *Gucci* are inapplicable here, given the evidence shows consumers reserved RR/BAYC NFTS to protest Yuga. *See* Ripps Decl. ¶¶ 198-205 (Dkt. 346) (uncontested); JTX-2033, JTX-2035, JTX-2039, JTX-2590, JTX-2592, JTX-2595, JTX-2596; JTX-2599. The evidence, therefore, does not support a finding that these reservations were made so that the buyer could then confuse someone else in secondary sales. Also, as mentioned above, there is no evidence that anyone who reserved an RR/BAYC NFT, on either initial or secondary sales, was confused about its origin. Ripps Decl. ¶¶ 101-103 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 138-139 (Dkt. 344), 147; Dkt. 197-1 ¶¶ 201-202; JTX-2085; Trial Tr. [Solano] 63:1-10. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen] 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7. Finally, profits attributable to secondary sales of RR/BAYC NFTs according to Yuga's own expert is limited to $117,309. *See* Dkt. 418-1 at 6.

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

Dated: October 5, 2023    FENWICK & WEST LLP

By: /s/ *Eric Ball*
Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

1 **ATTESTATION OF CONCURRENCE IN FILING**

2 Pursuant to the United States District Court for the Central District of

3 California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in

4 the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000