Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Conclusion of Law No. 41** <br><br> Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. 41:

Defendants' cybersquatting was willful and egregious. Defendants intentionally infringed Yuga Labs' BAYC Marks. *See* SJ Order at 12. Moreover, "Defendants acted with a bad faith intent to profit" from Yuga Labs' marks, including by "register[ing] multiple domain names—https://rrbayc.com/, https://apemarket.com/, and pages within OpenSea and Foundation—knowing that they were identical or confusingly similar to the BAYC Marks" and by "register[ing] their domains . . . for commercial gain to divert customers from purchasing BAYC NFTs." *See id*. at 15; JTX-670; JTX-677. These circumstances support Yuga Labs' request for $200,000 in statutory damages. *See Belkins*, 2010 WL 11597623, at *11.

### Defendants' Basis of Dispute:

Yuga waived its right to any claim of willful infringement, and there has been no finding of willfulness. To the contrary, because Yuga gave up all legal remedies, Defendants are entitled to judgment of no willfulness. Furthermore, Yuga points the Court to its summary judgement order and incorrectly suggests that this Court is tied to its previous findings regarding Defendants' intent. That is not the case. Yuga has incorrectly relied on the law of the case doctrine. The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."). For example, in *Sienze*

1  *v Kutz*, the Court held that although ***aspects*** of an issue were decided at summary
2  judgment for one purpose, the summary judgment order did resolve the issue
3  generally or as to other topics.  See No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184
4  at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was
5  relevant as background, but not to the already decided issue that initial contact was not
6  excessive force).
7        Additionally, Yuga relies on a default judgement case where the court
8  determined that the defendant had willfully infringed.  *Bekins Holding Corp. v. BGT
9  Trans, Inc.*, No. CV 09–08982, 2010 WL 11597623, at *9 (C.D. Cal. Nov. 19, 2010).
10  *Bekins* is very distinct from our case and does not impact Defendants' right to have a
11  jury determine the amount of statutory damages.  See *Feltner v. Columbia Pictures
12  Television, Inc.*, 523 U.S. 340, 353 (1998).  Here, the Court has discretion to award
13  statutory minimum damages of $1,000 for each of the two cybersquatting violations
14  that the Court found (Dkt. 225 at 13-15), for a total of $2,000. *See* 15 U.S.C. §
15  1117(d) (permitting "award of statutory damages in the amount of not less than
16  $1,000").
17        **Plaintiff's Response:**
18        Defendants' objection should be rejected because (1) as the Court has already
19  found, Defendants' cybersquatting was willful, (2) Defendants seek to relitigate issues
20  already adjudicated by the Court, and (3) the Court may award more than the
21  minimum statutory damages.
22        **Defendants' Cybersquatting Was Willful And Egregious:**  Here,
23  Defendants' cybersquatting was willful and egregious.  Defendants intentionally
24  infringed the BAYC Marks to deceive consumers.  *See* SJ Order (Dkt. 225) at 12.
25  Moreover, "Defendants acted with a bad faith intent to profit" from Yuga Labs'
26  marks, including by "register[ing] multiple domain names—https://rrbayc.com/,
27  https://apemarket.com/, and pages within OpenSea and Foundation—knowing that

1  they were identical or confusingly similar to the BAYC Marks" and by "register[ing]
2  their domains . . . for commercial gain to divert customers from purchasing BAYC
3  NFTs." *See id.* at 15.  These circumstances alone support Yuga Labs' request for
4  $200,000 in statutory damages.  *See Bekins*, 2010 WL 11597623, at *11 (defendant's
5  willful and bad faith cybersquatting supported maximum amount of statutory
6  damages).  Even more, Defendants concealed their infringing activities by registering
7  the domain names through a proxy registration service.  SJ Order (Dkt. 225) at 15.

8        Defendants also display a clear contempt towards the Court.  Despite the Court
9  finding Defendants liable for cybersquatting (SJ Order (Dkt. 225) at 15), they have
10 continued to use and promote the domains to advertise their infringing RR/BAYC
11 NFTs.  Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19.  Defendants'
12 pattern of abusive and bad-faith litigation conduct and disregard of the authority of
13 this Court and its proceedings warrants a high statutory damages award.  *See St.*
14 *Luke's Cataract and Laser Inst., P.A. v. Sanderson,* 573 F.3d 1186, 1206 (11th Cir.
15 2009) ("We agree and conclude that an ACPA statutory damages award . . . serves as
16 a sanction to deter wrongful conduct"); *Verizon Cal. Inc. v. OnlineNIC, Inc.*, No. C08-
17 2832, 2009 WL 2706393, at *6 (N.D. Cal. Aug. 25, 2009) (awarding $50,000 per-
18 violation award because of "noncompliance with court orders, as well as its
19 systematically deceptive behavior").

20       **Defendants Cannot Relitigate Issues Already Decided on Summary**
21 **Judgment:**  Defendants' objection improperly disputes facts already adjudicated in
22 the Court's Summary Judgment Order (Dkt. 225).  In that order, the Court held that
23 Yuga Labs owns its BAYC Marks, that NFTs are goods for the purpose of the
24 Lanham Act, that Yuga Labs used those marks in commerce, and that Yuga Labs has
25 not abandoned its marks.  *Id.* at 6-10.  The Court also held that "Defendants have
26 admitted that they intentionally used the BAYC Marks in their RR/BAYC NFTs."  *Id.*
27 at 11.  The Court "easily conclude[d]" that Defendants' use of identical marks, on
28

1  identical products, in identical markets supported a finding of a likelihood of
2  confusion. *Id.* at 10-13. That order establishes the matters adjudicated therein for
3  purposes of this case. Fed. R. Civ. P. 56(g) (district courts partially adjudicating case
4  on a summary judgment motion may "enter an order stating any material fact —
5  including an item of damages or other relief — that is not genuinely in dispute and
6  treating the fact as established in the case"); *accord Nat'l Union Fire Ins. Co. of*
7  *Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal.
8  2011); *Singh v. George Washington Univ. Sch. Of Med. & Health Scis.*, 508 F.3d
9  1097, 1106 (D.C. Cir. 2007) ("Facts found on partial summary judgment are taken as
10 established at trial.").

11         Defendants did not move the Court to reconsider its holdings. Nevertheless,
12 Defendants refuse to accept the Court's order, unnecessarily burdening the Court and
13 Yuga Labs by attempting to relitigate these issues at trial and in post-trial filings as if
14 the Court's order does not exist. Defendants' tactics are inconsistent with the very
15 purpose of a partial summary judgment order, which is "intended to avoid a ***useless***
16 ***trial of facts and issues over which there was really never any controversy*** and
17 which would tend to confuse and complicate a lawsuit." *Peliculas Y Videos*
18 *Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d
19 1131, 1133 (C.D. Cal. 2004) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769
20 n.3 (9th Cir.1981)) (emphasis added). Defendants' authorities do not support their
21 position. *See Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3
22 (E.D. Cal. Mar. 25, 2019) ("evidence concerning issues resolved at summary
23 judgment is ***generally not relevant and should be excluded***" at trial) (emphasis
24 added); *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (discussing
25 applicability of the law of the case doctrine where a case is assigned to a new judge).
26         "The partial summary judgment is merely a pretrial adjudication that certain
27 issues shall be deemed established for the trial of the case and likewise serves the
28

purpose of *speeding* up litigation by eliminating before trial matters wherein there is no genuine issue of fact." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 n.9 (9th Cir. 2009) (emphasis added) (alteration and citation omitted).  Defendants' repeated attempts to ignore or undo the Court's Order "speeding up litigation" is a dilatory and abusive litigation tactic that has unjustifiably increased the cost of resolving this case.

**Defendants Are Not Entitled To A Jury Determination, And The Court May Award More Than The Statutory Minimum**.  Defendants' contention that this Court may only award the statutory minimum damages is false, as discussed *supra* ¶ 39.

### Defendants' Reply:

Yuga waived its right to any claim of willful infringement, and there has been no finding of willfulness.  To the contrary, because Yuga gave up all legal remedies, Defendants are entitled to judgment of no willfulness.  Furthermore, Yuga points the Court to its summary judgement order and incorrectly suggests that this Court is tied to its previous findings regarding Defendants' intent.  That is not the case.  Yuga has incorrectly relied on the law of the case doctrine.  The "law of the case doctrine does not apply to pretrial rulings **such as motions for summary judgment**." *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise.").  For example, in *Sienze v Kutz*, the Court held that although **aspects** of an issue were decided at summary judgment for one purpose, the summary judgment order did resolve the issue generally or as to other topics.  *See* No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019) (holding that evidence of initial police contact was relevant as background, but not to the already decided issue that initial contact was not excessive force).

The evidence at trial showed that Yuga does not own the BAYC marks because (1) Yuga has either given away or abandoned its rights in the marks and (2) NFTs are not eligible for trademark protection. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt 344); Hickman Decl. ¶¶ 25-26 (Dkt 345); JTX 2672; JTX 2673. That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4 ("Q. Your intent in writing the terms and conditions was to allow people to be able to commercialize their NFTs. We can agree on that; right? A. Yes. That is covered in the terms.").

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. And, as Yuga's CEO admitted, there are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. Trial Tr. [Muniz] 81:18-22. For example, there are published notebooks with ISBN numbers, commemorative coins, alcohol products, skateboards, cereal brands, restaurants, and CBD/marijuana products that are unaffiliated with Yuga that use Yuga's trademarks. *See, e.g.*, JTX-2398; JTX-2134; JTX-2410; JTX-2075. Further, Yuga does not own the asserted marks because NFTs are not eligible for trademark protection. The Supreme Court has held that trademarks are limited to "tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox*

1 *Film Corp.*, 539 U.S. 23, 37 (2003) .  Misrepresentation of the origins of a
2 ***communicative*** work is a dispute relegated to the confines of copyright law, not
3 trademark.  *Id.* at 33-35; *see also* Pulse Entm't Corp. v. David, No. 2:14-cv-04732-
4 SVW-MRW, Dkt. 19 at 4 (C.D. Cal. Sept. 17, 2014)  (*Dastar* bars trademark claims
5 based on origin of hologram, as it is "likened to a cartoon animation").  Here, the
6 "goods" for which Yuga claims trademark rights are NFTs, which are comparable to
7 certificates of authenticity/ownership and are not digital goods in themselves.  Trial
8 Tr. [Atalay] 127:9-16.
9       Defendants have never stipulated to Yuga's Ownership of the BAYC
10 Marks.  Defendants hotly disputed ownership of the BAYC marks at summary
11 judgment**.**  Dkt. 163 at 2-8.  And while ownership of the marks is not an issue relevant
12 to the remedies trial in this case, Yuga has for some reason affirmatively raised the
13 issue—forcing Defendants to re-articulate their dispute for purposes of preserving
14 their position for appeal and all other proceedings involving the BAYC marks.  Yuga
15 attempts to mischaracterize the Court record by citing to the pre-trial conference
16 order.  But ***nowhere*** in the pre-trial conference order did Defendants stipulate to
17 ownership of the BAYC marks.  Section 6 of the order contains all stipulated facts and
18 those stipulated facts include only that Yuga released the BAYC collection and
19 various facts about Defendants' activities associated with the RR/BAYC
20 collection.  Dkt. 320-1 at 3-4.  Yuga points to Section 5, which is the admitted facts
21 section, but this section again does not contain any admissions regarding "ownership"
22 of the marks.  Rather it merely identifies the asserted marks at issue for the remedies
23 trial—something that Defendants admitted in light of the scope of the remedies trial
24 and to ease this Court's work in adjudicating the remaining issues.   Dkt. 32-1 at 2-
25 3.  Lastly, Yuga cites to Defendants' statement that the "Court has determined that
26 Defendants infringed the BAYC Marks." Dkt. 320-1 at 13.  But again, this is not an
27 admission of ownership, it is a statement regarding the procedural history in this case
28

that explains that the scope of trial is limited to remedies and does not include infringement. Had Defendants wanted to stipulate to ownership, they would have clearly and expressly done so—they have not. Defendants reserve the right to dispute ownership on appeal and in any other proceedings involving the BAYC marks.

Finally, the Court has discretion to award statutory minimum damages of $1,000 for each of the two cybersquatting violations that the Court found (Dkt. 225 at 13-15), for a total of $2,000. *See* 15 U.S.C. § 1117(d) (permitting "award of statutory damages in the amount of not less than $1,000"). Statutory damages can "serve purposes traditionally associated with legal relief, such as compensation and punishment. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998). As such, Yuga cannot be awarded more than the statutory minimum on its cybersquatting claim without violating Defendants' Seventh Amendment rights. *See Daimler AG v. A-Z Wheels LLC*, 498 F. Supp. 3d 1282, 1290 (S.D. Cal. 2020) (holding that award above minimum is a jury issue) (citing *Dream Games of Ariz. Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009)); *Curtis v. Illumination Arts, Inc.*, 957 F. Supp. 2d 1252, 1260 (W.D. Wash. 2013) (holding that statutory damages are a jury issue).