Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 45, Lines 15:8-10**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Finding of Fact No. 45, lines 15:8-10:**

Defendants have presented no persuasive argument or evidence rebutting that presumption. Moreover, Defendants' infringing conduct caused irreparable injury to Yuga Labs by hindering its ability to control its reputation and brand. *See, e.g.*, JTX-722 ¶¶11, 12; Dkts. 392 at 95:17-99:7; 340 ¶16-17; *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir.2001).

**Defendants' Basis of Dispute:**

Defendants have effectively rebutted the presumption of irreparable harm by showing that any harm caused to Yuga was not from the alleged infringement but instead derived from Yuga's own business practices. Yuga's harm theory is that it was losing prospective customers and good will. The harm alleged by Yuga must relate to the Defendants' infringement. See *Stuhlbarg Int'l Sales Co., Inc. v. John Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (explaining that *use* of mark by defendant caused loss of customers for plaintiff). Yuga failed to show that it was Defendants' alleged infringing actions, and not some other action that caused its brand to suffer damage.

Yuga relies exclusively on the opinions of its expert on brand harm, Jonah Berger. Dr. Berger admitted that he did not consider the impact of several scandals, and broad market-wide issues on Yuga's brand, including admitting that he was unaware of some of the scandals at the time he made his analysis. *See* Trial Tr. 109:8-25; 113:11-114:2; 114:8-115:1. Defendants showed that these scandals had a major impact on Yuga and its standing in the market. *See* JTX-306; 307; 2715. Dr. Berger

1  was also unable to ascertain whether Defendants' infringement or their criticisms of
2  Yuga had an impact on brand harm.  Trial Tr. 118:11-119:19 (disclaiming any
3  knowledge of association of Yuga with subject of Defendants' criticism).  If the harm
4  derived from Defendants' criticism of Yuga, then the infringement is not the source of
5  the harm.

6  **Plaintiff's Response:**

7  Defendants' objection should be rejected because (1) Defendants' actions
8  caused irreparable harm to the BAYC brand; (2) Defendants do not rebut the
9  presumption that they caused irreparable harm; and (3) Dr. Berger's report is reliable
10 and discredited Defendants' alternative harms argument.

11 **Defendants' Actions Irreparably Harmed Yuga Labs:**  There is ample
12 evidence in the record that Defendants caused irreparable harm to Yuga Labs.  As Ms.
13 Muniz explained, Defendants' actions "created confusion in the marketplace about
14 whether Yuga Labs had launched a new BAYC collection, whether Yuga Labs would
15 mint more BAYC NFTs, and whether the existing BAYC NFTs were still an
16 exclusive good."  Muniz Decl. (Dkt. 340) ¶ 9.  Likewise, Mr. Solano testified that
17 "Defendants' use of BAYC Marks brought confusion to the marketplace and
18 irreparable harm to Yuga Labs," listing specific examples of consumer confusion that
19 resulted from their use of the BAYC Marks.  Solano Decl. (Dkt. 342) ¶ 63.  And
20 Defendants' "design of Ape Market was an attempt to make people trust their scam
21 marketplace by associating it with Yuga Labs and the consumer trust the BAYC brand
22 has built up through years of work," causing further irreparable harm to Yuga Labs.
23 *Id.* ¶ 51.  This confusion in the market damaged Yuga Labs' relationships with
24 multiple businesses and Yuga Labs investors, and is directly attributable to the
25 confusion Defendants caused.  Muniz Decl. (Dkt. 340) ¶¶ 15-17; Kindler Decl. (Dkt.
26 338) ¶ 62; Trial Tr. at 97:14-98:3.  Ms. Kindler separately testified that Defendants'
27 actions caused harm to Yuga Labs that is "significant, yet more difficult to quantify,"
28

including harm to Yuga Labs' good will, use of RR/BAYC NFTs as replacement goods, and unearned benefits to Defendants such as unjust enrichment. Kindler Decl. (Dkt. 338) ¶¶ 62-71; Trial Tr. at 176:14-22 ("I computed other potential measures of harm, and I also discussed at length in my report other significant areas of harm that would not be easily quantifiable, such as harm to goodwill, harm to brand equity, and things of that nature.").

The harm caused by Defendants' infringement is ongoing through, e.g., Defendants' continued promotion of rrbayc.com on their @ApeMarketplace Twitter page, their continued promotion of RR/BAYC NFTs on secondary marketplaces, continued sales of RR/BAYC NFTs on these marketplaces, ongoing bot tweets and platforms like Etherscan calling RR/BAYC NFT sales "Bored Ape Yacht Club," and use of RR/BAYC NFTs as verified hexagon profile pictures on Twitter. *See Id*. ¶¶ 64, 77-78; Muniz Decl. (Dkt. 340) ¶ 22; Kindler Decl. (Dkt. 338) ¶ 71; Trial Tr. at 57:8-58:6.

Yuga Labs' injunction is designed specifically to mitigate the irreparable harm identified at trial by transferring the RR/BAYC smart contract and other infringing instrumentalities to Yuga Labs. *Id*. ¶ 64, 77-85 ("As long as the RR/BAYC NFTs remain in the market under Defendants' control, people will be confused by their origin, decreasing the perceived exclusivity of authentic BAYC NFTs and harming Yuga Labs."); Muniz Decl. (Dkt. 340) ¶ 22; Kindler Decl. (Dkt. 338) ¶ 75 ("[I]t is my opinion that there is no economically feasible option for removing the RR/BAYC NFTs from the marketplace entirely or ensuring that Yuga Labs receives adequate monetary compensation for the harm it has suffered and will suffer by having RR/BAYC NFTs exist in the marketplace, which supports Yuga Labs' position that the harm caused by Defendants' infringing NFTs is irreparable through economic means alone."); Trial Tr. at 59:24-60:12.

**Defendants Do Not Rebut The Presumption Of Irreparable Harm:** Defendants offer no evidence or even explanation to support their claim that they did not cause harm. They have no expert testimony concerning the fact of alleged harm and that such alleged harm perceived by Dr. Berger was not caused by Defendants. They likewise have no evidence from Yuga Labs that the harm Yuga Labs perceived was caused by sources other than Defendants – Yuga Labs' witnesses were consistent and specific that the harm they identified to the Court was caused by Defendants' creation and marketing of the RR/BAYC scam. Indeed, Defendants have even publicly acknowledged that their RR/BAYC NFTs have caused irreparable harm to Yuga Labs. *See* Kindler Decl. ¶ 71; JTX-1566, JTX-1568. Thus, not only do Defendants *not* have evidence that the irreparable harm discussed at trial was caused by them, there is evidence that they themselves have admitted to causing such harm.

**Dr. Berger's Opinion Is Reliable And Discredited Defendants' Alternate Harms Argument:** Dr. Berger's unrebutted testimony explains that he "conducted a number of analyses, not just one," which helps to rule out the alternative theories that Defendants hypothesize might explain Dr. Berger's findings. Trial Tr. at 107:8-108:1; 114:15-115:25; 121:23-125:1. Defendants offered no expert of their own to support any of their other hypothetical causes of brand harm to Yuga Labs. Without an expert of their own to support their theories and in light of Dr. Berger's reasonable and rational explanation of what he found in the data, Dr. Berger's opinions should be accepted. Moreover, Defendants did not object to the admissibility of Dr. Berger's testimony. Dkt. 366.

Dr. Berger testified that, hypothetically, there could be multiple different causes of harm, but his data revealed that "the only factor that can distribute to that outcome is the minting and publication of RR/BAYCs." Trial Tr. at 115:16-117:10; 121:23-123:8. Dr. Berger specifically considered, and rejected, whether the share of Tweets expressing negative sentiment toward BAYC was increasing between May 6, 2022

and May 12, 2022 (i.e., before the release of RR/BAYC NFTs) and whether the share of positive sentiment was decreasing; he found that the data are inconsistent with that alternate hypothesis, thus ruling out any supposed alternative causes preceding the release of RR/BAYC NFTs.  Berger Decl. (Dkt. 339) at n.55.

In addition, Dr. Berger has not seen any evidence to support Defendants' hypothesis.  Trial. Tr. 119:21-25.  Nevertheless, as the Court has already found this case is about Defendants' commercial infringement.  SJ Order (Dkt. 255) at 16 ("These are all commercial activities designed to sell infringing products, not expressive artistic speech protected by the First Amendment."); *see also* June 9, 2023 Pretrial Conference Tr. at 8–10 (Defense counsel acknowledging "there is a difference between the criticism and the sales of the product.").  Nothing in Defendants' supposed false criticism, nor isolated articles on alleged separate issues, negates that Defendants' creation, marketing, and promotion of RR/BAYC NFTs has caused irreparable harm to Yuga Labs and will continue to cause such harm unless Yuga Labs is able to regain control of its brand and exclusivity over its BAYC brand.

**Defendants' Reply:**

Yuga's reply demonstrates that they have not shown that any harm derived from the infringement and not some other issue.  Their citations to Ms. Muniz's and Mr. Solano's declarations in support show this weakness.  Both Ms. Muniz and Mr. Solano were unable to identify a *single* confused consumer.  *See* Trial Tr. [Muniz] 84:20-85:7 (admitting Yuga was unable to identify a single consumer who bought an RR/BAYC believing it to be a BAYC); Trial Tr. [Solano] 18:18-19:15.  In fact, Yuga could not identify a single document discussing harms from the RR/BAYC project, including from investors, and inside the business.  Trial Tr. [Muniz] 84:14-87:6; 87:17-88:6; 101:7-12.  This was despite admitting that as a multi-billion dollar company, they use email and instant messaging for business.  *Id.* 85:24-86:4.  The paucity of documents from Yuga stands in contrast to Defendants who received

several emails from people who explained that they were buying RR/BAYC NFTs because of the art and the protest message. Ripps Decl. ¶¶ 195-207 (Dkt. 346) (uncontested); JTX-2033; JTX-2035; JTX-2039; JTX2590; JTX-2592; JTX-2595; JTX-2596; JTX-2599.

Citations to Ms. Kindler's declaration fare no better. Ms. Kindler changed her opinion by astonishing amounts across a matter of days. She represented that in a declaration that damages were in the neighborhood of $797 million, but there is no dispute that the $797 million figure was nowhere to be found in Ms. Kindler's original expert report. Trial Tr. [Kindler] 175:17-179:8; *see generally* JTX-308. The $797 million figure, 400 times greater than her original damages estimate, first appeared in Ms. Kindler's amended offer of proof more than four months after her original damages report. Dkt. 287-10 at 4 n.3. It is also undisputed that her estimate increased 400-fold over three days. Trial Tr. [Kindler] 178:8-23. Her reasoning behind this 400-fold increase was a series of three tweets. *See id.* at 179:15:18. Accordingly, her opinion cannot support its finding because it was an unreasonable opinion. Likewise, Yuga's other citations to the record do not support a finding that there is irreparable harm from Defendants as they are either irrelevant to this issue, or are compensable harms.

Yuga still principally relies on Dr. Berger's testimony and report. First, as an initial matter, Yuga's proposed "must have an expert" rule ignores the role of cross examination and would make litigation a playground only available to massive corporations like Yuga. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("Shaky but admissible evidence is to be attacked by **cross examination**") (emphasis added). Defendants rebutted Dr. Berger's analysis because they demonstrated that he ignored several alternative causes of harm to his analysis. Trial Tr. [Berger] 108:7-109:4; 115:16-25 . For example, he ignored the general downturn of the cryptocurrency market, which occurred during his analysis period.

1  Trial Tr. [Berger] 109:5-110:5; JTX-306.  He also claimed no knowledge of the
2  Otherside scandal, which occurred mere days before his chosen analysis period.  Trial
3  Tr. [Berger] 113:10-114:2; JTX-2715.  These scandals caused BAYC holders to lose
4  lots of money.  It stands to reason that this could be another source of harm.  Indeed,
5  Dr. Berger's lack of knowledge about other scandals directly undercuts his assertion
6  that the minting of RR/BAYCs alone, and not Defendants' First Amendment
7  protected criticism, Yuga's own scandals, and the collapse of the cryptocurrency
8  market were other sources of harm.