Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Conclusion of Law No. 46, Lines 15:13-14** <br><br> Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

**Plaintiff's Disputed Post Trial Conclusion of Law No. 46, lines 15:13-14:**

Monetary damages are inadequate to compensate for the irreparable injury.

**Defendants' Basis of Dispute:**

To be eligible for equitable relief, Yuga must prove that there is no adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This principle bars equitable relief where a party is able to name a sum certain for the amount of harm it suffered. *Id.* (denying equitable relief to a party that pled legal damages and "fail[ed] to explain how the same amount of money for the exact same harm is inadequate or incomplete"). Yuga failed to show that their legal remedies were inadequate, and therefore cannot rely on Ms. Kindler's reports—which underlay their legal remedy theory—to support their claim for equitable remedies.

Until shortly before trial, Yuga represented that it ***could*** calculate damages and placed monetary amounts on its damages. *See* JTX-308 (Kindler expert report); Dkt. 268 (offer of proof Ms. Kindler affirming $1.7m damages total); Dkt. 287-I (amending damages figure to $787,183,838). Although these damages figures fluctuated wildly over a span of three days, *See* Dkt. 268 (June 5, 2023) and Dkt. 287-I (June 8, 2023), Yuga was able to place a monetary amount on its damages. In order to avoid a jury trial, Yuga changed its position one week later and argued that it could not discern the monetary amount of damages it suffered despite having recently provided a damages calculation. *See* Dkt. 315-1. In Yuga's own theory of the case, there were adequate monetary damages and Yuga failed to explain what changed between which rendered these damages unavailing.

1 **Plaintiff's Response:**

2 Defendants' objection should be rejected because (1) Yuga Labs does not need to show the absence of an adequate remedy at law to obtain an injunction and, even so, (2) Ms. Kindler's testimony expressly, and correctly, states that monetary damages are not sufficient.

**Yuga Labs Does Not Need To Show The Absence Of An Adequate Remedy At Law To Obtain An Injunction:** Injunctive relief is the "remedy of choice for trademark . . . cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). In addition, "[d]amage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages." *Leadership Studies, Inc. v. ReadyToManage, Inc.*, No. 2:15-cv-09459-CAS, 2017 WL 2408118, at *6 (C.D. Cal. June 2, 2017) (citation omitted). The Court has already found that Defendants infringed Yuga Labs' trademarks, and thus irreparable injury is presumed, and Defendants have presented no persuasive argument or evidence rebutting that presumption. *See supra* ¶ 45 (lines 15:8-10); SJ Order at 13; 15 U.S.C. § 1116(a). It has further proven that Defendants' infringing conduct caused irreparable injury to Yuga Labs by hindering its ability to control its reputation and brand. *Id*. Monetary damages are inadequate in the face of this irreparable harm. Moreover, the Court has found that Yuga Labs is entitled to both "monetary damages *and* injunctive relief" for its trademark claims. SJ Order (Dkt. 225) at 13 (emphasis added). It did not find that Yuga Labs was entitled to *either* monetary damages *or* injunctive relief. Defendants' citation to *Sonner* is inapplicable as it involves state law claims, not Lanham Act claims. And even if it were applicable, the case did not involve a presumption of irreparable harm, as is the case here. *See* 15 U.S.C. § 1116(a) (expressly permitting injunctions and presumption of irreparable harm).

**Ms. Kindler Was Not Able To Quantify All Of The Harm To Yuga Labs:**
There are no adequate monetary damages, and Ms. Kindler stated throughout her testimony that, although she was able to calculate certain profits accrued by Defendants, the extent of harm to Yuga Labs was not practically quantifiable. *See* Kindler Decl. (Dkt. 338) ¶ 62 ("In addition to the measures of harm quantified above, Defendants' wrongful conduct caused (and continues to cause) unjust enrichment to Defendants and harm to Yuga Labs that are significant, yet more difficult to quantify."); *id.* ¶ 63 ("The confusion created by the wrongful conduct caused harm to Yuga Labs' business that I have not attempted to quantify."); *id.* ¶ 64 ("I have not quantified the extent to which the confusion impacted Yuga Labs' business partnerships"); *id.* ¶ 65 ("I have not quantified the extent to which Defendants' wrongful conduct negatively impacted the value of Yuga Labs' goodwill, but directionally, it would decrease the value."); *id.* ¶ 67 ("Defendants also benefited from their conduct in ways that are not quantified by my profit analysis"); *id.* ¶ 75 ("it is my opinion that there is no economically feasible option for removing the RR/BAYC NFTs from the marketplace entirely or ensuring that Yuga Labs receives adequate monetary compensation for the harm it has suffered and will suffer by having RR/BAYC NFTs exist in the marketplace, which supports Yuga Labs' position that the harm caused by Defendants' infringing NFTs is irreparable through economic means alone."); Trial Tr. at 176:14-22 ("I computed other potential measures of harm, and I also discussed at length in my report other significant areas of harm that would not be easily quantifiable, such as harm to goodwill, harm to brand equity, and things of that nature.").

Defendants attack Ms. Kindler's calculations as unreliable, but Ms. Kindler supplemented her damages calculation with new information once it became available; she did not change her prior analysis. *See* Trial Tr. 179:2-5 ("based on

additional events that had transpired and available market data, that I could then update my analysis to show the impact of what I had already identified previously as likely holdouts in the marketplace."). Ms. Kindler initially calculated "a 'floor' for what a buyback would cost <u>at minimum</u>," i.e., "a low-end market price of the RR/BAYC NFT collection." Kindler Decl. (Dkt. 338) ¶ 72. Then, based on new data made available by Defendants' posts to their followers regarding the buyback estimate (which also prompted an increase in the price and trading volume of the infringing NFTs), Ms. Kindler determined that "[t]his new evidence confirmed that the floor value for a hypothetical buyback significantly underestimated the actual cost of such an exercise, as I originally opined." *Id.* ¶¶ 73-74. "Based on these materials and available market data, my assignment was to estimate a 'ceiling' for what a buyback would cost. I determined the cost to purchase and destroy all RR/BAYC NTFs could even be higher than $797,183,838 . . . based on the then-current floor price of authentic BAYC NFTs." *Id.* ¶ 74.

**Defendants' Reply:**

"It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding that failure to show that legal monetary relief was inadequate to entitle it to equitable monetary relief); quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). All of Yuga's cited cases are easily distinguishable because they did not deal with monetary equitable relief, but instead with injunctive relief. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *Leadership Studies, Inc. v. ReadyToManage, Inc.*, No. 2:15-cv-09459-CAS, 2017 WL 2408118, at *5-6 (C.D. Cal. June 2, 2017). As such, Yuga cannot get around the *Sonner* rule as it applies to monetary equitable relief.

1 |       Yuga also cannot escape the fact that Ms. Kindler placed a sum certain on
2 | Yuga's damages.  *See* Trial Tr. [Kindler] 175:17-22 (explaining that $1,792,704
3 | represented her calculation of the cost in February); *see also generally* JTX-308; Dkt.
4 | 287-10 at *4 n.3.  Ms. Kindler's report and offers of proof were served to support
5 | Yuga's attempt to get legal damages.  As a result, Yuga avoids citing to these
6 | documents because they were meant to support a ***legal*** damages claim that was
7 | adequate and that it elected to forego.  It also cannot escape the fact that it believed
8 | legal damages *were available* until days before trial when they withdrew their claim
9 | for legal damages.  Dkt. 315-1.  Nothing changed between the filing of Ms. Kindler's
10 | estimates for legal damages, and Yuga's withdrawal of its claim for legal damages
11 | except for Yuga's willingness to face a jury.