| | |
|---|---|
| Louis W. Tompros (*pro hac vice*) <br> louis.tompros@wilmerhale.com <br> Monica Grewal (*pro hac vice*) <br> monica.grewal@wilmerhale.com <br> Scott W. Bertulli (*pro hac vice*) <br> scott.bertulli@wilmerhale.com <br> Tyler Carroll (*pro hac vice*) <br> tyler.carroll@wilmerhale.com <br> **WILMER CUTLER PICKERING HALE AND DORR LLP** <br> 60 State Street <br> Boston, MA 02109 <br> Telephone: (617) 526-6000 <br> Fax: (617) 526-5000 <br><br> Derek Gosma (SBN 274515) <br> derek.gosma@wilmerhale.com <br> Henry Nikogosyan (SBN 326277) <br> henry.nikogosyan@wilmerhale.com <br> **WILMER CUTLER PICKERING HALE AND DORR LLP** <br> 350 South Grand Ave., Suite 2400 <br> Los Angeles, CA 90071 <br> Telephone: (213) 443-5300 <br> Fax: (213) 443-5400 <br><br> Attorneys for Defendants <br> *Ryder Ripps and Jeremy Cahen* | ERIC BALL (CSB No. 241327) <br> eball@fenwick.com <br> KIMBERLY CULP (CSB No. 238839) <br> kculp@fenwick.com <br> FENWICK & WEST LLP <br> 801 California Street <br> Mountain View, CA 94041 <br> Telephone: 650.988.8500 <br> Facsimile: 650.938.5200 <br><br> MOLLY R. MELCHER (CSB No. 272950) <br> mmelcher@fenwick.com <br> ANTHONY M. FARES (CSB No. 318065) <br> afares@fenwick.com <br> ETHAN M. THOMAS (CSB No. 338062) <br> ethomas@fenwick.com <br> FENWICK & WEST LLP <br> 555 California Street, 12th Floor <br> San Francisco, CA 94104 <br> Telephone: 415.875.2300 <br><br> Additional Counsel listed on next page <br><br> Attorneys for Plaintiff <br> YUGA LABS, INC. |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **Defendants' Objections to Disputed Conclusion of Law No. 53, Lines 17:8-10, 12-14** <br><br> Judge: Hon. John F. Walter |

Case No. 2:22-cv-04355-JFW-JEM     DEFENDANTS' OBJECTIONS

| | |
|---|---|
| 1 | MELISSA L. LAWTON (CSB No. 225452) |
| 2 | mlawton@fenwick.com |
| 3 | FENWICK & WEST LLP |
| | 228 Santa Monica Boulevard |
| 4 | Santa Monica, CA 90401 |
| | Telephone: 310.434.4300 |
| 5 | Attorneys for Plaintiff |
| 6 | YUGA LABS, INC. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 2:22-cv-04355-JFW-JEM                                    DEFENDANTS' OBJECTIONS

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

**Plaintiff's Disputed Post Trial Conclusion of Law No. 53, lines 17:8-10, 12-14:**

Defendants' infringing smart contract is the source of the infringing NFTs and immutably uses Yuga Labs' BORED APE YACHT CLUB and BAYC marks in the manufacture, sale, and promotion of the infringing RR/BAYC NFTs. *See supra* ¶¶7c, 7e, 12, 15, 23; Dkt. 392 at 59:20-60:12, 133:24-134:20, 138:6- 139:11; *see also* Dkt. 337 ¶¶2-6; Dkt. 342 ¶80; JTX-1616. Therefore, the RR/BAYC smart contract harms the perceived exclusivity of genuine BAYC NFTs, and fosters confusion, if left in the control of anyone other than Yuga Labs.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Evidence at trial showed that Yuga does not own the alleged BAYC Marks. Yuga gave away all intellectual property rights associated with the Bored Ape Yacht Club. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt. 345); JTX 2672; JTX 2673. That transfer of rights was made, in part, pursuant to the BAYC Terms & Conditions, which Mr. Solano drafted with the intent to allow people to commercialize their NFTs. Trial Tr. [Solano] 25:1-4.

As a result, at the time of the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz] 77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. And, as Yuga's CEO admitted, there are "literally

1  thousands" of products that use Yuga trademarks without sponsorship or affiliation
2  with Yuga. Trial Tr. [Muniz] 81:18-22; *see, e.g.*, JTX-2398; JTX-2134; JTX-2410;
3  JTX-2075.
4      Further, Yuga does not own the asserted marks because NFTs are not eligible
5  for trademark protection. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539
6  U.S. 23, 37 (2003). Misrepresentation of the origins of a **communicative** work is a
7  dispute relegated to the confines of copyright law, not trademark. *Id.* at 33-35; *see*
8  *also Pulse Entm't Corp. v. David*, No. 2:14-cv-04732-SVW-MRW, Dkt. 19 at 4
9  (C.D. Cal. Sept. 17, 2014). Here, the "goods" for which Yuga claims trademark
10 rights are NFTs, which are comparable to certificates of authenticity/ownership and
11 are not digital goods in themselves. Trial Tr. [Atalay] 127:9-16.
12     Second, Mr. Ripps and Mr. Cahen used modified versions of the alleged BAYC
13 Marks in their reservations. For example, the logo used states: "This Logo is Based
14 on the SS Totenkopf; 18 Teeth." *See* JTX-2085. Also, the website for the project,
15 rrbayc.com, used the modified "RR/BAYC" throughout. *Id.*
16     Third, the smart contract for the RR/BAYC NFTs clearly indicates that the
17 creator is Mr. Ripps's wallet, and not Yuga's. *See* JTX-1146. Accordingly, there is
18 no support for the statement that the smart contract fosters confusion.
19     As the evidence presented at trial indicated, Yuga has not identified even a
20 single person who obtained an RR/BAYC NFT believing it was sponsored by Yuga
21 and Mr. Ripps, Mr. Cahen, and Mr. Hickman are not aware of a single instance of
22 actual confusion. Ripps Decl. ¶ 223 (Dkt. 346) (uncontested); Trial Tr. [Cahen]
23 265:11-18; Cahen Decl. ¶¶ 222, 224 (Dkt. 344); Trial Tr. [Hickman] 219:13-19; Trial
24 Tr. [Solano] 18:23-19:1; Trial Tr. [Muniz] 85:3-7. Accordingly, there is no evidence
25 of actual confusion resulting from the sale of RR/BAYC NFTs that an injunction
26 transferring the RR/BAYC smart contract would eliminate.
27     Finally, the evidence Yuga cites to does not support this conclusion of law as
28 they do not show any consumer was actually confused by the smart contract when

reserving an RR/BAYC NFT nor do they show how the transferring an immutable smart contract to Yuga will help prevent confusion going forward. *See* Dkt. 392 at 59:20-60:12, 133:24-134:20, 138:6- 139:11; *see also* Atalay Decl. ¶¶ 2-6 (Dkt. 337); Solano Decl. ¶ 80 (Dkt. 342); JTX-1616.

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.  Regardless, Defendants' objections should be rejected because (1) the Court has rejected Defendants' arguments that Yuga Labs does not own the BAYC Marks, and the evidence shows that Yuga Labs owns these marks; (2) Defendants used unmodified marks many times; (3) The RR/BAYC contract only showed Mr. Ripps' name after minting; (4) Yuga Labs' proposed injunction is tailored to address the irreparable harm done to Yuga Labs and allow it to regain control of its brand; and (5) Obtaining the RR/BAYC smart contract is an important part of the injunction.  Additionally, as discussed *supra*, Defendants' objection should be rejected because (4) Yuga Labs has provided ample evidence of actual confusion (*supra* ¶ 11(e)).

**Defendants Cannot Relitigate Issues Decided On Summary Judgment:**  The Court has already adjudicated these issues in its Summary Judgment Order (Dkt. 225). In that order, the Court held that Yuga Labs owns its BAYC Marks, that NFTs are goods for the purpose of the Lanham Act, that Yuga Labs used those marks in commerce, and that Yuga Labs has not abandoned its marks. *Id.* at 6-10.  The Court also held that "Defendants have admitted that they intentionally used the BAYC Marks in their RR/BAYC NFTs." *Id.* at 11.  The Court "easily conclude[d]" that Defendants' use of identical marks, on identical products, in identical markets supported a finding of a likelihood of confusion. *Id.* at 10-13.  Additionally, the Court has already held that NFTs are goods that are subject to trademark protection under

1  the Lanham Act.  SJ Order (Dkt. 225) at 6-8; *see also* Hermès International v.
2  Rothschild, 590 F. Supp. 3d 647, 655 (S.D.N.Y. 2022).

3         The SJ Order establishes the matters adjudicated therein for purposes of this
4  case.  Fed. R. Civ. P. 56(g) (district courts partially adjudicating case on a summary
5  judgment motion may "enter an order stating any material fact — including an item of
6  damages or other relief — that is not genuinely in dispute and treating the fact as
7  established in the case"); *accord* Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready
8  Pac Foods, Inc., 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011); Singh v. George
9  Washington Univ. Sch. Of Med. & Health Scis., 508 F.3d 1097, 1106 (D.C. Cir. 2007)
10 ("Facts found on partial summary judgment are taken as established at trial.").

11        Defendants did not move the Court to reconsider its holdings.  Nevertheless,
12 Defendants refuse to accept the Court's order, unnecessarily burdening the Court and
13 Yuga Labs by attempting to relitigate these issues at trial and in post-trial filings as if
14 the Court's order does not exist.  Defendants' tactics are inconsistent with the very
15 purpose of a partial summary judgment order, which is "intended to avoid a ***useless***
16 ***trial of facts and issues over which there was really never any controversy*** and
17 which would tend to confuse and complicate a lawsuit." Peliculas Y Videos
18 Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc., 302 F. Supp. 2d
19 1131, 1133 (C.D. Cal. 2004) (quoting Lies v. Farrell Lines, Inc., 641 F.2d 765, 769
20 n.3 (9th Cir.1981)) (emphasis added).  Defendants' authorities do not support their
21 position.  *See* Sienze v Kutz, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3
22 (E.D. Cal. Mar. 25, 2019) ("evidence concerning issues resolved at summary
23 judgment is ***generally not relevant and should be excluded***" at trial) (emphasis
24 added); Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir. 1986) (discussing
25 applicability of the law of the case doctrine where a case is assigned to a new judge).

26        "The partial summary judgment is merely a pretrial adjudication that certain
27 issues shall be deemed established for the trial of the case and likewise serves the
28 purpose of speeding up litigation by eliminating before trial matters wherein there is

no genuine issue of fact." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 n.9 (9th Cir. 2009) (alteration and citation omitted). Defendants' repeated attempts to ignore or undo the Court's Order "speeding up litigation" is a dilatory and abusive litigation tactic that has unjustifiably increased the cost of resolving this case.

**Defendants Used Unmodified Versions Of Yuga Labs' BAYC Marks:** Defendants contention to the contrary is contradicted by the evidence in the record. *See, e.g.*, JTX-25, JTX-80, JTX-82, JTX-138, JTX-670, JTX-675, JTX-677, JTX-972, JTX-1595. Mr. Ripps even admitted that the "RR/BAYC project . . . displayed unmodified marks, so that the RR/BAYC project would be directly tied to Yuga, BAYC, and specific BAYC NFTs…." Dkt. 149-42 at 9-10.

**The RR/BAYC Contract Only Showed Mr. Ripps' Name After Minting:** Mr. Ripps testified that he minted the RR/BAYC NFTs to his "personal wallet, ryder-ripps.eth", but the "ryder-ripps.eth" name did not appear on Etherscan until *after* minting, most if not all of, the infringing NFTs. *Compare* JTX-25, *with* JTX-36. Thus, Defendants' narrative that customers would not be confused because they could see the NFTs were minted from Mr. Ripps' wallet is belied by the fact that the wallet displayed Mr. Ripps' name *after* the initial mint and customers would not encounter the "ryder-ripps.eth" creator tag had they even tried to look.

**Yuga Labs' Proposed Injunction Is Properly Tailored:** A properly tailored injunction must end the irreparable harm done to Yuga Labs' BAYC brand and allow it to regain control of the brand. This includes putting an end to Defendants' sales, promotion, and marketing of infringing NFTs; preventing Defendants from creating any future confusion by minting new infringing NFTs or improperly using Yuga Labs' Marks; alerting consumers that the RR/BAYC NFTs are a scam; and transferring the smart contract and other infringing domains and instrumentalities to Yuga Labs so it once again has sole control over its marks. It is unrebutted that transferring the smart contract to Yuga Labs would allow it to regain control over its brand. The injunctive relief set forth in Yuga Labs' Proposed Findings of Fact and

Conclusions of Law would accomplish this.  *See* Dkt. 416 at 14-17, 20-23.  Indeed, two other courts have entered similar injunctions against Defendants' business partners.  *See* Judgment and Order for Permanent Injunction Against Ryan Hickman (Dkt. 30), *Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023); JTX-621 (Consent Judgment and Order for Permanent Injunction Against Thomas Lehman (Dkt. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023)).

**Obtaining the RR/BAYC smart contract is an important part of the injunction:**  The immutability of the RR/BAYC NFT contract is a major reason the contract should be transferred to Yuga Labs.  Without transfer of the contract, the Defendants would forever have control over and a connection to Yuga Labs' BAYC Marks.  *See* Solano Decl. (Dkt. 342) ¶ 79.  Defendants have no basis for continuing to hold on to the instrumentalities of their bad faith infringement—namely the RR/BAYC smart contract used to manufacture and sell the infringing NFTs, the cybersquatting domains rrbayc.com and apemarket.com, and the @ApeMarketplace account used exclusively to promote RR/BAYC NFTs and Ape Market.  Each of these instrumentalities should be under the control of Yuga Labs as the rightful owner of the BAYC Marks.

Defendants' contention that the smart contract indicates the source of the RR/BAYC NFTs as Mr. Ripps' wallet is misleading.  As Mr. Atalay testified, the name and symbol of the contract are "the only really salient bit of information and what [consumers] would cling to to identify a particular smart contract."  Trial Tr. at 138:18-20.  And the contract will always say Bored Ape Yacht Club and BAYC – Mr. Ripps has no right to forever associate himself with Yuga Labs' marks.  Rather, Yuga Labs explained at trial how ownership of the smart contract will allow Yuga Labs to work with the NFT marketplaces to ensure that the human readable elements of the marketplace clearly indicate that RR/BAYC NFTs are not authentic BAYC NFTs.  Defendants' conclusory statements fail to rebut any of these basic facts.

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

The Smart contract clearly indicates that it is owned by Ryder Ripps. *See* JTX-1146; Trial Tr. [Atalay] 130:19-131:6. Further, Yuga has not proven that anybody was confused by the smart contract. This is especially pertinent because the Ryder Ripps smart contract is a different smart contract than Yuga's and therefore necessarily implied that the NFTs underlying the contracts had different sources. *Id.* at 135:22-25.

Defendants acknowledge this Court's finding on summary judgment. However, Yuga affirmatively raised some of these issues here, and to the extent anything in Defendants' objection is in disagreement with the Court's legal findings at summary judgment, Defendants are contesting the legal findings to preserve for appeal. However, to the extent Defendants objections implicate issues of intent, Defendants had a good-faith intent to believe that Yuga surrendered its marks to the world generally and to them specifically through Mr. Hickman's ownership of a BAYC. *See* Trial Tr. [Solano] 24:3-11; *id.* at 28:6-9; 76:5-15 [Muniz]. The Court never considered or decided how Mr. Hickman's ownership of a BAYC had any effect on Defendants' intent.

Regardless, Yuga's demand for the smart contract not be technically feasible and it is futile. As such, this term runs a high risk of being set as a "trap" for Defendants to fall into as compliance might not be possible. Further, Yuga has admitted that the contract is immutable, which means that the smart contract cannot be changed or modified in any meaningful way, no matter who owns it. *See* Trial Tr. [Atalay] 134:11-20. An order that prohibits Defendants from minting anymore RR/BAYC NFTs would be sufficient to prevent Defendants from causing Yuga the injury alleged in this case. Likewise, a prohibition from using the rrbayc.com and apemarket.com domains—both of which are inactive—fit the scope of the injury

1  found by the Court at summary judgment (subject to Defendants' right to appeal).
2  Yuga's argument that an injunction that prevents Defendants from using the marks
3  and domain names in commerce would be insufficient without the smart contract is
4  speculative and wrongly assumes that Defendants would not comply with a court
5  order.

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ *Louis W. Tompros* |
| 5 | | Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>**WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 6 | | |
| 7 | | 60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Fax: (617) 526-5000 |
| 8 | | |
| 9 | | Attorneys for Defendants |
| 10 | | RYDER RIPPS and JEREMY CAHEN |
| 11 | | |
| 12 | | |
| 13 | Dated: October 5, 2023 | FENWICK & WEST LLP |
| 14 | | |
| 15 | | By: /s/ *Eric Ball* |
| 16 | | Eric Ball<br>eball@fenwick.com<br>**FENWICK & WEST LLP** |
| 17 | | 801 California Street<br>Mountain View, CA 94041<br>Telephone: (650) 988-8500<br>Fax: (650) 938-5200 |
| 18 | | |
| 19 | | |
| 20 | | Attorneys for Plaintiff |
| 21 | | YUGA LABS, INC. |

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000