Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
    HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
    HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>               Plaintiff,<br><br>   v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>               Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 61**<br><br>Judge: Hon. John F. Walter |

| | |
|---|---|
| 1 | MELISSA L. LAWTON (CSB No. 225452) |
| 2 | mlawton@fenwick.com |
| 3 | FENWICK & WEST LLP |
| | 228 Santa Monica Boulevard |
| 4 | Santa Monica, CA 90401 |
| | Telephone: 310.434.4300 |
| 5 | Attorneys for Plaintiff |
| 6 | YUGA LABS, INC. |

Pursuant to the Court's Order (Dkt. 428) Defendants Ryder Ripps respectfully submit the following objection, response, and reply.

### Plaintiff's Disputed Post Trial Conclusion of Law No. 61:

Based on the totality of the circumstances, the Court concludes that this is an exceptional case.

### Defendants' Basis of Dispute:

Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420).

This is not an exceptional case.  Courts determine if a case is exceptional from the totality of the circumstances, evaluating whether the case is "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc.*, 839 F.3d at 1180 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Exceptional case findings are rare. *Octane Fitness, LLC*, 572 U.S. at 553.  The case must present something "exceptional" to depart from the rule that parties pay their own costs. See *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005).  Plaintiffs bear the burden. *Caiz v. Roberts*, No. 15-CV-09044-RSWL-AGRx, 2017 WL 830386 at *5 (C.D. Cal. Mar. 2, 2017).

This is not an "exceptional case." Defendants put forward reasonable defenses and were justified in defending this litigation, particularly given Yuga's untenable settlement terms.  See *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058-ODW (JPRx), 2021 WL 2414856 at *2 (C.D. Cal. June 14, 2021).  See Hearing Trans June 16, 2023, at 9:9-12.

Defendants advanced good faith arguments in favor of their positions on both liability and damages. See *Caiz*, 2017 WL 830386, at *5.  Defendants made a good-faith argument that they were entitled to a *Rogers* defense on free speech grounds, a common defense in trademark cases involving artists.  Defendants advanced this

1  defense based on relevant evidence.  *See, e.g.*, Dkt. 163; Dkt. 163-17-31; Dkt. 163-80; Dkt. 163-81.

      Defendants' conduct does not support an exceptional case finding.  Defendants are entitled to mount a vigorous defense both on the merits and during discovery.  Yuga brought many unsuccessful motions in discovery.  *See, e.g.*, Dkt. 77; Dkt. 133; Dkt. 159; Dkt. 145.

      Defendants have defended against moving targets.  Within ten days, Yuga claimed roughly $2 and $800 million in legal damages, then dropped legal damages.  *See* Dkt 286 at 2-3; Dkt. 287-10 at 4; Dkt. 315-1 at 2.  Defendants made reasonable offers of settlement and legal arguments in the face of Yuga's shifting claims.

      Yuga's misconduct precludes a finding that this case is exceptional in Yuga's favor.  *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022); *SunEarth, Inc.*, 839 F.3d at 1180-81 .  Yuga used this litigation as means to harass Mr. Ripps's 72-year-old father, Rodney Ripps.  A Yuga employee threatened the life of Rodney forcing him to file a police report.  *See* Ripps Depo. 181:15-182:3.  Yuga eventually conceded that a threat occurred.  Dkt. 97 at 4.  Yuga's harassment of Rodney continued, including serving a facially invalid subpoena seeking to compel his trial attendance.

      Yuga served more than sixteen subpoenas in this action, most of them facially irrelevant, apparently to harass anyone associates with the Defendants.  Yuga targeted people whose sole relevance was apparently having "liked" the RR/BAYC project on Twitter, Defendants' personal accountants, and Mr. Ripps's gallerist.  These parties commented on Yuga's behavior with one calling it "quite predatory, honestly." Garner Depo. At 190:9-17.

      Yuga also improperly tried to preclude relevant discovery by making a baseless apex witness argument in an *ex parte* motion.  The Court rejected Yuga's arguments. Dkt. 77 at 2.  The Court ordered that Yuga employees Mr. Aronow and Mr. Solano appear for depositions on January 9 and 11.  *Id*.  Despite the Court's order, **neither witness appeared**.  Yuga provided no valid excuse.  The Court was

clear that failing to appear was sanctionable and ordered Yuga to pay Defendants' expenses. Dkt. 77 at 2. Yuga has not done so.

Yuga improperly designated the entirety of third-party Mr. Hickman's deposition to hide Mr. Hickman's testimony. This deposition involved no confidential information. Instead, included discussion of racism and antisemitism in Yuga's branding. Dkt. 123-2. The Court ordered complete de-designation because Yuga was wrong to "hold the transcript hostage." Dkt. 133 at *2.

Yuga also baselessly refused to produce materials relating to third-party Thomas Lehman's settlement-procured declaration to run the clock on the discovery schedule. Defendants filed a motion to compel once Yuga disclosed the declaration and sought expedited review of that motion so they could use it to depose Mr. Lehman. The Court refused expedited review. Dkt. 119 at 2. The Court granted Defendants' motion to compel. Dkt. 159 at 2. After Yuga belatedly made its production, Defendants took Mr. Lehman's deposition in the final week of discovery. Because of Yuga's delay, the deposition testimony was unavailable for consideration in opposition to summary judgment. *See* Dkt. 215 at 2.

Yuga made repeated baseless threats of fees and sanctions. Yuga unsuccessfully asked the Court to impose sanctions **six times**. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. This kind of scorched-earth litigation is improper.

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.

Defendants' objection should be rejected because, as discussed *supra* and *infra*, (1) Yuga Labs has not engaged in litigation misconduct (¶ 64), (2) Defendants intentionally and willfully confused consumers (¶ 4), and (2) Ms. Kindler properly

updated her calculations with new information (¶ 46 lines 15:20-16:3). Additionally, Defendants' actions make this an exceptional case.

**This Is An Exceptional Case:** Defendants engaged in egregious litigation misconduct justifying a finding that this is an exceptional case. First, Yuga Labs' case is particularly strong on the merits, as evinced by the Court's Order granting summary judgment on liability. Ignoring the clear strength of Yuga Labs' case, Defendants relentlessly advanced frivolous legal theories (e.g., RR/BAYC NFTs as an "art" project intended to criticize Yuga Labs, Yuga Labs abandoned its rights to the BAYC Marks, a frivolous counterclaim for declaratory judgment of "no defamation") that were rendered moot and irrelevant by multiple orders from the Court. *See, e.g.*, Dkt. 62 (rejecting Defendants' First Amendment arguments), SJ Order (Dkt. 225) (granting summary judgment in favor of Yuga Labs and against Defendants' affirmative defenses).

Second, Defendants refused to engage in reasonable settlement discussions. For instance, Defendants demanded payment in excess of $5 million to cease their infringement, demanded that Yuga Labs pay Defendants' attorneys' fees even after losing the merits of the case on summary judgment, refused to agree to any monetary settlement terms for their infringement even after the Court's Summary Judgment Order, and even demanded that Yuga Labs dismiss claims against their partners in other courts.

Third, Defendants repeatedly sought (and continue to seek) to re-litigate issues already addressed and rejected by the Court, unnecessarily complicating and increasing the cost of litigation. For example, Defendants filed numerous motions to compel documents and information explicitly premised on their rejected First Amendment *Rogers* defense. *See* Dkt. 69-1, Dkt. 103-1. The Court denied these motions and requests as "moot, irrelevant and not proportionate to the needs of the case in view of the District Court's December 16, 2022 ruling." Dkt. 87 at 1; *see also*, Dkt. 144 at 1. Similarly, when Defendants filed a meritless motion to stay

proceedings (Dkt. 118) after nearly three months of unnecessary delay, the Court reiterated that *Rogers* did not apply in this case due to Defendants' commercial conduct. Dkt. 178 at 6. Still, on summary judgment, Defendants maintained that "there is a material dispute whether the RR/BAYC Project is an expressive work that must be resolved at trial" (Dkt. 199-1 at 12-13), despite the Court's orders otherwise. Defendants then indicated they planned to re-litigate, again at trial, the issues decided on summary judgment, necessitating that Yuga Labs file Motions In Limine. *See* Dkts. 232-2, 236-2, 239-2, 241-2 (Culp Declarations in Support of Motions In Limine Nos. 1-3, 5).

Fourth, Defendants and their counsel engaged in a pattern of unreasonable and obstructive discovery conduct. Defendants were obstructive and intentionally evasive throughout their depositions and at trial, wasting time with rehearsed, non-responsive monologues on the same issues the Court already deemed irrelevant. *See, e.g.*, Trial Tr. At 229:3-13, 231:21-232:3, 234:24-235:5, 237:14-238:7; Cahen Depo. Designations (Dkt. 395) at 101:7-102:4, 163:13-23; Ripps Depo. Designations (Dkt. 396) at 35:2-11, 44:19-45:11. Defendants also made false representations to the Court regarding the existence and production of documents during discovery. For example, Mr. Ripps swore under penalty of perjury in a verification dated January 17, 2022 that he had produced all documents responsive to Yuga Labs' discovery requests. Trial Tr. At 267:11-14. This was a lie. Yuga Labs was forced to file numerous motions and obtain repeated sworn declarations from Defendants confirming their compliance with discovery obligations, because Defendants were continually caught concealing additional documents. *See* Dkt. 79 at 2 (Jan. 10, 2023 order requiring Ripps to verify that he has produced "all relevant non-privileged documents"); Dkt. 145 (order requiring Defendants to file a declaration that they have produced relevant documents). Even Defendants' Discord chat (JTX-801)—cited extensively by both parties in the summary judgment and trial record, and even in both parties' proposed findings of fact and conclusions of law—had to be obtained through third-party

discovery before Defendants voluntarily produced it. *See* Dkt. 67 at 77. This misconduct justified Yuga Labs' requests for sanctions.

Fifth, Defendants repeatedly attacked Yuga Labs, its representatives, and its counsel in an egregious and unacceptable manner. Defendants' heinous statements about Yuga Labs and its counsel during litigation, including calling Yuga Labs' counsel "criminals" who support "racism, antisemitism, beastiality, pedophilia and using cartoons to market drugs to young children," *see* Dkt. 149-50, Dkt. 149-51, far exceed the bounds of acceptable conduct. *See Te-Ta-Ma Truth Found.-Family of Uri, Inc. v. World Church of the Creator*, 392 F.3d 248, 263-64 (7th Cir. 2004); *AANP v. Am. Ass'n of Naturopathic Physicians*, 37 F. App'x. 893, 894 (9th Cir. 2002).

Further representative of the lack of control and respect for counsel and the Court, Defendants promised to Yuga Labs and the Court that they would not offer testimony on irrelevant and inflammatory issues at trial. *See* Dkt. 320-1 ¶ 6(A); Dkt. 314; Dkt. 334 at 60:13-14 (representing to Court "We don't want a mini trial on Naziism for sure"); *id*. at 61:9-11. Yet Defendants repeatedly violated their promises. *See* Cahen Decl. (Dkt. 344) ¶¶ 60, 65, 66, 67, 75, 90. 91, 96; Hickman Decl. (Dkt. 345) ¶¶ 55, 58, 59; Ripps Decl. (Dkt. 346) ¶¶ 59, 69, 152; Trial Tr. at 265:17-18 (characterizing logo as a "Nazi log[o]"), 215:2-3 ("Pictures of monkeys represent racism"), 118:18-120:22 (Defendants' counsel referring to "racism," "racist imagery," and "hate speech"); Dkt. 395 at 9-10 (Defendants' designation of testimony from Mr. Cahen accusing Yuga Labs of "Nazism, racism, financial fraud, pedophilia").

Sixth, Defendants used the litigation to "farm" for engagement on social media with the intent to further harm Yuga Labs and profit from their misconduct. *See* JTX-938, JTX-1568, JTX-1617, JTX-1620. For instance, Mr. Cahen tweeted about their subpoena of Paris Hilton and Jimmy Fallon to drum up engagement on Twitter, retweeting it from his @apemarketplace account in order to promote Ape Market.[1]

---

[1] https://twitter.com/Pauly0x/status/1602819954335748098

1  These subpoenas themselves were facially invalid and Defendants only served them in
2  order to get attention from the news media.

3  Finally, Defendants' public disclosure of confidential material violated this
4  Court's Protective Order (Dkt. 51) and intentionally harmed Yuga Labs.  *See* Dkts.
5  180, 183, 194.  Defendants failed to take responsibility for this violation, instead
6  blaming Yuga Labs.  Dkt. 176.  Defendants publicly filed numerous Yuga Labs'
7  Highly Confidential – Attorneys' Eyes Only materials, and immediately and
8  intentionally sent these Highly Confidential materials to prominent news outlets.
9  Defendants' intentional actions caused harm to Yuga Labs when these materials were
10 inaccurately reported in national media such as CNN and falsely cited in other
11 meritless litigation against Yuga Labs.  As another example, Mr. Cahen targeted
12 another Yuga Labs founder by falsely tweeting:  "[h]e's named after [a] banned 1971
13 child porn film." [2]  He further tweeted that the founder "REFUSES to change his
14 name,"[3] based on the founder's response to a question from an ongoing Highly
15 Confidential – Attorneys' Eyes Only deposition.  *See* Atalay Depo. (Dkt. 271) at 157-
16 160 (showing testimony and break taken 42 minutes prior to Mr. Cahen's Tweet).

17 **Defendants' Reply:**

18 Defendants expressly reserve and reassert all replies made in the parties' Joint
19 Statement Regarding Objections (Dkt. 420).

20 Defendants reiterate all points made in their objection.  For reasons *supra* and
21 *infra*, ¶ 61-64, Yuga behaved lamentably and should not be rewarded.  Defendants'
22 litigations positions were all based on reasonable interpretations of law, or as a
23 defense against settlement conditions which this court acknowledged were quite
24 frankly unreasonable.  Dkt. 334 at 9:9-12.  Yuga cannot now be heard to complain that
25 Defendants place a high price on giving up their speech rights. Yuga also ignores the
26 rule that litigating positions must be "objectively meritless" to entitle an exceptional

---

[2] https://twitter.com/Pauly0x/status/1620158732872331264
[3] *Id*.

|   |   |
|---|---|
| 1 | case finding.  *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058-ODW (JPRx), 2021 WL 2414856 at *2 (C.D. Cal. June 14, 2021).  There was also no relitigating in this case, issues were decided for summary judgment, but not as to other issues like intent.  Likewise, Defendants did not breach any agreements about bringing up topics at trial.  Yuga's citations deal with issues of intent, which is still at issue and which Yuga directly asked Defendants questions.  Defendants acted reasonably in both their discovery obligations and in deposition.  Yuga never brought any motion to reopen any deposition and its citations show responsive answers.  Defendants did not fail to produce documents.  Mr. Ripps explained that he produced everything to the best of his ability.  Trial Tr. [Ripps] 269:10-270:18.  Mr. Ripps further testified that Yuga had sought sanctions multiple times based on Yuga's false accusations of discovery misconduct, and that this Court denied all of Yuga's baseless motions.  *Id.* 269:21-270:2.  The fact that Mr. Ripps supplemented his discovery shows nothing and is consistent with his declaration.  *See Dkt.* 109-33.  Yuga makes a baseless claim that Defendants intentionally harmed Yuga through a breach of the protective order.  As Yuga is aware, Defendants tried their best to comply with Yuga's excessively late redaction request and any error was inadvertent.  Dkt. 176.  To the extent Yuga was harmed, it has already been addressed.  Dkt. 194. Yuga's claim about Mr. Cahen's criticism is similarly baseless.  Criticisms of Mr. Atalay's moniker *far* pre-date his deposition.  JTX-2097.  The fact that Mr. Cahen was parroting prior made accusations on a day where they were likely on his mind does not prove that he revealed information that was not publicly known.  In fact, Mr. Atalay and Yuga have both publicly acknowledged his use of the "Emperor Tomato Ketchup" moniker. |

| | | |
|---|---|---|
| 1 | Dated: October 5, 2023 | WILMER CUTLER PICKERING HALE AND DORR LLP |

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

Dated: October 5, 2023      FENWICK & WEST LLP

By: /s/ *Eric Ball*
Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000