Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Additional Counsel listed on next page

Attorneys for Plaintiff
YUGA LABS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>                    Plaintiff,<br><br>     v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>                    Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 62 Lines 18:19-22**<br><br>Judge: Hon. John F. Walter |

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard
Santa Monica, CA 90401
Telephone: 310.434.4300

Attorneys for Plaintiff

YUGA LABS, INC.

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

**Plaintiff's Disputed Post Trial Conclusion of Law No. 62, lines 18:19-22:**

<u>For example, Defendants intentionally infringed Yuga Labs' BAYC Marks to deceive consumers and acted with a bad-faith intent to profit from their use of the marks.</u> SJ Order at 12, 15. <u>This intent is evident throughout their internal communications.</u> *See, e.g.,* JTX-801.155, JTX-801.185, JTX-801.208, JTX801.237, JTX-801.238, JTX-801.239, JTX-1574, JTX-1586.

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420).

Defendants did not infringe on the BAYC marks with the intent to deceive customers or act with a bad-faith intent to profit off of the marks. Defendants were criticizing Yuga and its products. Mr. Ripps explained that he never sold an RR/BAYC NFT to somebody he believed was confused, believed that consumers could not be confused, took steps to avoid confusion, and that he chose to make his project an NFT collection because that was the only way his criticisms would make sense. JTX-2085; JTX-2086; Ripps Decl. ¶¶ 92-94; 102-109; 113-114; 137-53; 159-76 (Dkt. 346) (uncontested). Yuga did not challenge these statements when it elected not to cross-examine Mr. Ripps. The only direct evidence about Mr. Ripps's intent is his unrebutted declaration.

Yuga's citations to the internal chat are misleading. *See* JTX-801.448-49; 801.508; (calling project "education") 801.606-08; 803.005; 803.0029-30; 804.008. Yuga ignores efforts by Defendants to *avoid* being confused with it. *See* JTX-2085; 2086; 2103. Defendants do not like BAYC, Yuga or its activities. Ripps Decl. ¶ 138 (Dkt. 346) (uncontested). They did not want to, and were not, confusing purchasers of RR/BAYC NFTs into believing that they were purchasing a Yuga product. *Id.* Yuga

1  cannot point to a single instance of consumer confusion. Trial Tr: [Solano] 18:18-
2  19:15.

**Plaintiff's Response:**

Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420. Defendants' objection should be rejected because (1) Defendants' infringement was not in "good faith"; and (2) Mr. Ripps' testimony about his supposed intent is not credible and his declaration was contested. Additionally, Defendants' objections should be rejected because (1) Defendants intended to confuse consumers (*supra* ¶ 4); and (2) Yuga Labs has produced ample evidence of confusion (*supra* ¶ 11(e)).

**Defendants' Infringement Was Not In Good Faith:** The relevant evidence demonstrates that Defendants intended to use Yuga Labs' BAYC Marks to profit through their commercial promotion and sale of RR/BAYC NFTs. *See, e.g.*, JTX-1; JTX-1574; JTX-1586; JTX-801.239; JTX-801.192; JTX-801.196; JTX-696.1; JTX-801.371. Indeed, Defendants' infringement could not have been in good faith because, even after the Court found their infringement was likely to cause confusion and was not art protected by Rogers and the First Amendment, Defendants intentionally continued to infringe on Yuga Labs' Marks and promote RR/BAYC NFTs. Solano Decl. (Dkt. 342) ¶ 74. Defendants' @ApeMarketplace Twitter account continues to promote rrbayc.com and link to a marketplace on which RR/BAYC NFTs are still available for sale. Solano Decl. (Dkt. 342) ¶ 77; Trial Tr. at 57:8-58:6, 58:20-59:19; *see also*, *supra* ¶ 4.

Moreover, the Court has already decided the issue of Defendants' intent, finding that Defendants intentionally infringed Yuga Labs' BAYC Marks to deceive consumers and acted with a bad-faith intent to profit from their use of the marks. SJ Order (Dkt. 225) at 12-15.

| | |
|---|---|
| 1 | **Mr. Ripps' Testimony About His Supposed Intent is Not Credible:** |
| 2 | Evidence admitted at trial disproves the core of Mr. Ripps' testimony.  One of the |
| 3 | glaring instances where the evidence contradicts Mr. Ripps' testimony is when, in his |
| 4 | trial declaration, Mr. Ripps testified that he "never reached a conclusion on what |
| 5 | ApeMarket would actually be . . . ."  Ripps Decl. (Dkt. 346) ¶ 178.  However, at trial |
| 6 | Mr. Cahen confirmed that ApeMarket was ready to launch within a matter of days. |
| 7 | Trial Tr. at 247:10-12 ("Q:  And there was a ready-to-go Ape Market by February – |
| 8 | excuse me – by June 24, 2022? A:  Among other things, yes[.]").  Another glaring |
| 9 | contradiction is that Mr. Ripps testified that his "intention in making the RR/BAYC |
| 10 | artwork was not to monetize Yuga Labs' brand."  Ripps Decl. (Dkt. 346) ¶ 182. |
| 11 | However, text messages entered into evidence demonstrated that Defendants intended |
| 12 | to "make like a million dollars" off of their infringement.  JTX-1574.  Evidence |
| 13 | further entered at trial depicted Mr. Ripps publicly bragging about the millions of |
| 14 | dollars he made off of his use of Yuga Labs' marks.  *See* Solano Decl. (Dkt. 342) ¶ 72 |
| 15 | ("Based on my review of public Twitter posts produced in discovery, Mr. Ripps |
| 16 | boasted that he made over $1.2 million on his scam, implying that no one could stop |
| 17 | him from counterfeiting NFTs and harming the goodwill of the BAYC brand.").  Mr. |
| 18 | Ripps' associates also confirmed this financial motive.  JTX-801.208 (Mr. Cahen: |
| 19 | "priorities:  getting RRBAYC to sell out by creating demand + getting BAYC and |
| 20 | MAYC users to call our marketplace their new home [] and collecting royalties at a |
| 21 | fraction of what the other big dogs are charging [] which will be considerable passive |
| 22 | income if we strike the right balance"); Hickman Depo. Designations (Dkt. 394) at |
| 23 | 129:3-6 ("My financial arrangement for this whole thing is about as a software |
| 24 | developer being compensated for making software"); JTX-1 at ¶ 11 ("I understood, |
| 25 | based on more than a few conversations with Defendants, that the Business Venture |
| 26 | was expected to make money by selling RR/BAYC NFTs and by potentially |
| 27 | generating transaction fees from the sale of NFTs on Ape Market.").  Mr. Ripps can |
| 28 | attempt to couch his lies in "sarcasm," but the ultimate result was confusion in the |

1  marketplace and a substantial payday for Defendants. Simply repeating falsehoods
2  and repeatedly rejected immaterial claims, as Mr. Ripps does in his declaration, does
3  not make them true or material to the Court's remaining decisions.
4        Mr. Ripps also testified that his "intention in making the RR/BAYC artwork
5  was not to monetize Yuga Labs' brand." Ripps Decl. (Dkt. 346) ¶ 182. However,
6  documents entered into evidence at trial showed that Defendants intended to "make
7  like a million dollars." JTX-1574; *see also* Solano Decl. (Dkt. 342) at ¶ 72. And, as a
8  further example, Mr. Ripps testified that he minted the RR/BAYC NFTs to his
9  "personal wallet, ryder-ripps.eth" despite the fact that the name did not appear on
10 Etherscan until *after* minting, most if not all of, the infringing NFTs. *Compare* JTX-
11 25, *with* JTX-36. Thus, Defendants' narrative that customers would not be confused
12 because they could see the NFTs were minted from Mr. Ripps' wallet is belied by the
13 fact that the wallet displayed Mr. Ripps' name *after* the initial mint and customers
14 would not encounter the "ryder-ripps.eth" creator tag had they even tried to look.
15       Moreover, at trial, Yuga Labs demonstrated that Mr. Ripps is an unreliable
16 witness. During cross-examination, Mr. Ripps admitted to his dishonesty during
17 discovery and his lies in prior declarations submitted under oath. Trial Tr. at 268:12-
18 25; *see also* JTX-1541 (Jan. 17, 2023 Ripps verification stating under penalty of
19 perjury that he has "produced all responsive documents that I have been able to locate
20 after a reasonable search"); Dkt. 109-42 (Feb. 17, 2023 Ripps declaration stating
21 under penalty of perjury that he has "re-investigated my platforms and taken
22 reasonable efforts to search for additional material for collection" and "[a]ll
23 responsive materials that I have collected during my investigation has been provided
24 to my attorneys and I have given permission to produce those materials with
25 appropriate confidentiality designations"); Dkt. 158 (Mar. 21, 2023 Ripps declaration
26 stating under penalty of perjury that he has "produced all relevant, nonprivileged
27 documents" subject to Court's order compelling production). Despite the repeated,
28 under-oath, and Court-ordered assurances, that they had searched for and produced all

1  relevant documents, Defendants withheld numerous documents (including their text
2  messages with each other) until March 21, 2023 — after Yuga Labs had filed its
3  motion for summary judgment.  The wrongly withheld documents include
4  communications with BAYC NFT holders and communications about Defendants'
5  profit intent.
6    Mr. Ripps' testimony that the text message presented to him at trial did not have
7  anything to do with the RR/BAYC project is another blatant lie.  These documents
8  that Mr. Ripps wrongly withheld until after Yuga Labs' summary judgment
9  submission included text messages discussing airdropping more of Defendants'
10 infringing NFTs to the wallets of those who have already purchased them.  Thus, Mr.
11 Ripps' testimony that he did not "really find it to have anything to do with the
12 RR/BAYC project" is unbelievable.  Trial Tr. at 268:17-21; JTX-1574 (text messages
13 in which Mr. Cahen suggests Mr. Ripps "airdrop like 10 more to each person who
14 already bought one" and that if Mr. Ripps airdropped "20-30" he would "sell out
15 within 48 hours" and "make like a million dollars").  Mr. Ripps' testimony reiterates
16 what is obvious from the record:  Defendants' stories change based on what is
17 convenient for them at the time.  Mr. Ripps, a proven liar, is not a credible witness.
18 His intent to infringe is proven by his own words In the documentary evidence.
19   Yuga Labs' cross-examination demonstrated that Mr. Ripps lacks credibility as
20 a witness.  If Mr. Ripps lied before in multiple declarations under penalty of perjury,
21 to evade his discovery obligations and hide incriminating evidence, it is reasonable to
22 conclude that he lied to avoid the consequences of his infringement.  Therefore, ***his***
23 ***entire declaration*** cannot be relied upon.  Yuga Labs sufficiently challenged Mr.
24 Ripps' declaration, and its contradictions by the evidentiary record show it is
25 unreliable.  It should not be accepted as fact.
26   **Defendants' Reply:**
27   Defendants expressly reserve and reassert all replies made in the parties' Joint
28 Statement Regarding Objections (Dkt. 420).

Defendants reiterate all points made in their objection. To the extent Yuga is relying on a Law of the Case argument, it cannot because it does not apply to Summary Judgment or issues decided for only one purpose. *Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014); *Sienze v Kutz*, No. 1:17-CV-0736-AWI-SAB, 2019 WL 1332184 at *3 (E.D. Cal. Mar. 25, 2019). Defendants acted. The evidence shows that Defendants are not intentional infringers and did not intend to suggest that RR/BAYC was related to Yuga in any way. Defendants' communications about the RR/BAYC project confirm that their intent was to use RR/BAYC to criticize not confuse. In private group chats among participants in the RR/BAYC project (JTX-801, 803-804), Defendants discussed the artistic purpose of the project, their intention to spread criticism of Yuga, and their intention to use social media to educate the public about the nature of NFTs and Yuga's misconduct. Ripps Decl. ¶¶ 144, 147 (Dkt. 346) (uncontested); Cahen Decl. ¶ 131 (Dkt. 344); JTX-801.00010, 012-13, 146, 196, 240, 276, 328-29, 353-354; JTX-803.0003-05, 08, 29-30. Defendants' online discussion confirms their intent. Defendants discussed what they believed to be inappropriate messages in Yuga's imagery and how the RR/BAYC project shows that NFTs are not digital images. Ripps Decl. ¶¶ 148-157 (Dkt. 346) (uncontested); Cahen Decl. ¶¶ 151, 208-209 (Dkt. 344); Dkt. 197-1 ¶¶ 203-04.

Defendants also created the RR/BAYC collection based on a good faith belief that Yuga authorized the creation of projects like RR/BAYC. When Defendants launched the RR/BAYC project, there were more than 9,000 other third-party projects using Yuga's marks. Ripps Decl. ¶¶ 187-191 (Dkt. 346) (uncontested); Hickman Decl. ¶ 33 (Dkt. 345); JTX 2243; JTX 2244. Before suing Defendants over the RR/BAYC project, Yuga had not taken steps to stop these third-party projects from using its marks. Ripps. Decl. ¶ 185 (Dkt. 346) (uncontested); Cahen Decl. ¶ 206 (Dkt. 344). There were hundreds of NFT collections unaffiliated with Yuga that use the Bored Ape Yacht Club Brand on the NFT marketplace OpenSea. Trial Tr. [Muniz]

77:19-23; [Muniz] 78:7-21; [Muniz] 80:3-13. Ms. Muniz admitted that Defendants, and Mr. Hickman would have probably seen these collections using the Bored Ape Yacht Club trademarks at the time they created the RR/BAYC project. Trial Tr. [Muniz] 77:19-23. 26. There are "literally thousands" of products that use Yuga trademarks without sponsorship or affiliation with Yuga. *Id.* at 81:18-22; JTX-2398; JTX-2134; JTX-2410; JTX-2075.

Mr. Hickman, a member of the RR/BAYC project team, holds a BAYC NFT containing the asserted marks and received IP rights associated with the Bored Ape Yacht Club. Hickman Decl. ¶¶ 19-22 (Dkt. 345). BAYC NFTs had Terms & Conditions, and the intent behind them was to allow people to be able to commercialize their NFTs. Trial Tr. [Solano] 25:1-4. Yuga encouraged the public to use the BAYC artwork and intellectual property. Yuga's CEO Nicole Muniz had publicly represented that BAYC NFT holders received all IP rights and that Yuga has none of those rights. Trial Tr. [Muniz] 72:3–73:17; Cahen Decl. ¶ 189 (Dkt. 344); Hickman Decl. ¶¶ 25-26 (Dkt.345); JTX 2672; JTX 2673. Ms. Muniz confirmed that someone listening to her public statement about Yuga not having any IP rights would not have heard the word copyright. Trial Tr. [Muniz] 72:19-22. All of this trial evidence is supported by the record. Even moreso, it is consistent with Mr Ripps's declaration and supports a finding that Mr. Ripps is credible, even outside the fact that Yuga left his declaration unchallenged.

Mr. Ripps was credible and his testimony uncontested because Yuga elected to forego any substantive cross-examination of Mr. Ripps. *See* Trial Tr. [Ripps] 267:7-271:9. "Cross-examination is the principal means by which the believability of a witness and truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).; *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004). Yuga's decision to not cross-examine Mr. Ripps regarding his declaration means weighs decisively in favor of accepting Mr. Ripps's declaration. Yuga incorrectly argues that Mr. Ripps's declaration was challenged by other evidence in the trial record but Yuga never

showed how it undermined Mr. Ripps.  To the extent Yuga tries to make that showing now, it fails because it relies on misleading and cherry picked evidence that does not actually contradict anything in Mr. Ripps's testimony.  This is why Yuga's failure to cross-examine Mr. Ripps is fatal to their new post-trial challenges to his testimony and cannot seek to do so now.

      Yuga argues that it challenged Mr. Ripps's trial declaration through its cross-examination of Mr. Ripps concerning his earlier January 17, 2023, verification.  But Yuga's cross-examination did not result in any impeachment or inconsistency: Trial Tr. [Ripps] 268:5-11.  Mr. Ripps further explained that he produced everything about developing the project. *Id.* at 270:3-18.  Mr. Ripps further testified that Yuga had sought sanctions multiple times based on Yuga's false accusations of discovery misconduct, and that this Court denied all of Yuga's baseless motions.  *Id.* at 269:21-270:2.  Mr. Ripps's trial testimony is no surprise given that the verification reserved the right to correct any possible errors or omissions. Dkt. 109-33   Mr. Ripps fulfilled his discovery obligations.  In short, Yuga did not impeach Mr. Ripps and elected not to cross-examine him.  Its after-the-fact reasoning against accepting his unrebutted declaration are unavailing and this court should accept the declaration in its entirety.

| | | |
|---|---|---|
| Dated: October 5, 2023 | | WILMER CUTLER PICKERING HALE AND DORR LLP |

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

| | | |
|---|---|---|
| Dated: October 5, 2023 | | FENWICK & WEST LLP |

By: /s/ *Eric Ball*
Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000