Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 64**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order (Dkt. 428) Defendants submit the following objection, response, and reply.

**Plaintiff's Disputed Post Trial Conclusion of Law No. 64:**

<u>Additionally, Defendants and their counsel have engaged in a pattern of unreasonable and obstructive litigation conduct that crossed the line from advocacy into bad faith.</u> *See supra* ¶¶27. <u>Such obstructive and antagonistic conduct supports a finding that this is an exceptional case.</u> *See Jackson v. Gaspar*, No. 2:19-CV10450-DOC, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022).

**Defendants' Basis of Dispute:**

Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420).

Defendants, two individuals sued by a large corporation defended this case to the best of their ability. Defendants attended their depositions and gave good faith answers. Yuga's claim that Defendants' answers on the stand were "obstructive" and "rehearsed" is without evidence. The case cited by Yuga in support is different because there, the defendant was previously chastised by the Court for her deposition answers. See *Jackson v. Gaspar*, No. 2:19-cv-10450-DOC-E 2022 WL 2155975 (C.D. Cal. 2022). Defendants have not been sanctioned in this way, nor were they sanctioned for any deposition related misconduct. Yuga committed the only deposition misconduct by skipping its depositions and designating all of Mr. Hickman's testimony. *See* Dkt. 77; Dkt. 133.

Yuga's contentions about Counsel are also without any foundation, and without any support. In contrast, Yuga, has engaged in a pattern of litigation misconduct. For example, Yuga used this litigation to harass Mr. Ripps's 72-year-old father, Rodney Ripps. A Yuga employee threatened the life of Rodney, forcing him father to file a police report. *See* Ripps Depo. 181:15-182:3. Yuga's counsel eventually conceded that a threat occurred. Dkt. 97 at 4. Yuga's harassment of Rodney continued,

1  including serving a facially invalid subpoena seeking to compel his trial attendance.

2  Yuga served more than sixteen subpoenas in this action, nearly all of them
3  facially irrelevant and procuring no useful discovery, apparently to harass anyone that
4  associates with Defendants.  Yuga targeted people on Twitter whose sole relevance
5  was apparently having "liked" the RR/BAYC project, Defendants' personal
6  accountants, and Mr. Ripps's gallerist.  These parties commented on Yuga's behavior
7  as "quite predatory, honestly." Garner Depo. at 190:9-17.

8  Yuga also improperly tried to preclude relevant discovery by making a
9  baseless apex witness argument.  The Court rejected Yuga's argument.  Dkt. 77 at 2.
10 The Court accordingly ordered that Yuga employees Mr. Aronow and Mr. Solano
11 appear for depositions on January 9 and 11 respectively (excusing Mr. Solano only if
12 he had medical complications).  *Id*.  **Neither witness appeared**.  Yuga has not
13 identified any medical reason why Mr. Solano could not attend.  The Court was clear
14 that failing to appear was sanctionable and ordered Yuga to pay Defendants'
15 expenses.  Dkt. 77 at *2.  Yuga has not done so.

16 Yuga also flouted this Court's Protective Order by improperly designating the
17 entirety of third-party Mr. Hickman's deposition to hide his testimony from the
18 public.  This deposition involved no confidential information; instead, it was the
19 testimony including a discussion of racism and antisemitism in Yuga's branding.  *See*
20 Dkt. 123-2.  Defendants moved to de-designate.  The Court granted, ordering
21 complete de-designation of the transcript, finding that Yuga was wrong to "***hold the***
22 ***transcript hostage***." Dkt. 133 at *2 (emphasis added).

23 Yuga also refused to produce materials relating to third-party Thomas
24 Lehman's settlement-procured declaration to run the clock on the discovery schedule.
25 Defendants filed a motion to compel once Yuga disclosed the declaration and sought
26 expedited review of that motion to allow time for its use Mr. Lehman's deposition.
27 The Court declined to consider the motion on an expedited basis.  Dkt. 119 at 2.  The
28

1. Court ultimately granted the motion. Dkt. 159 at 2. After Yuga made its production, Defendants took Mr. Lehman's deposition in the final week of discovery as suggested by the Court. Because of Yuga's delay, the deposition testimony was unavailable for consideration in opposition to Yuga's motion for summary judgment. *See* Dkt. 215 at 2.

   Yuga made repeated baseless threats of fees and sanctions. In total, Yuga asked the Court to impose sanctions ***six times***. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. Every request was denied. This kind of scorched-earth litigation strategy is improper.

   For the reasons stated above, this case is not "exceptional."

   **Plaintiff's Response:**

   Given that "Defendants expressly reserve and reassert all objections made in its Joint Statement Regarding Objections (Dkt. 420)", Yuga Labs expressly reserves and reasserts all of its responses to those objections as stated in Dkt. 420.

   Defendants' objection should be rejected because (1) Yuga Labs has not engaged in litigation misconduct and (2) Defendants' litigation misconduct.

   **Yuga Labs Has Not Engaged In Litigation Misconduct:** Defendants' attempts to evade responsibility for their egregious litigation misconduct by pointing a finger at Yuga Labs has no relevance. The losing party in a Lanham Act case cannot defend against an exceptional case finding by accusing the prevailing party of engaging in similar misconduct. *See Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022). Even so, Defendants' contention that Yuga Labs engaged in misconduct is incorrect.

   During the course of settlement discussions, Yuga Labs initially sought a reasonable non-disparagement clause to protect the company's representatives, their families, and counsel given Defendants' history of making personal, targeted, heinous claims and in the context of foregoing certain other relief to which it would be entitled

1  through litigation, as one proposed compromise.  Non-disparagement clauses are
2  typical in litigation settlements.  Defendants however claimed that a non-
3  disparagement clause was a barrier to them entering into a settlement.  This proved to
4  be another lie by Defendants.  After Yuga Labs ***withdrew its request for a non-***
5  ***disparagement clause,*** Defendants still refused to negotiate a settlement in good faith.
6  In particular, Defendants refused to offer a single dollar in settlement to pay for their
7  profits or statutory damages, even after being held liable.  Defendants likewise refused
8  to agree to stop promoting their infringing NFTs or Ape Market, which promoted
9  sales of RR/BAYC NFTs.  *See* JTX-1048.

10  Yuga Labs never attempted to preclude depositions of its witnesses.  Yuga Labs
11  asked Defendants to complete a Rule 30(b)(6) deposition before deciding whether it
12  was necessary to depose Mr. Solano and Mr. Aronow, and it sought a protective order
13  when Defendants refused.  Dkt. 75.  The Court disagreed, and Yuga Labs produced
14  both witnesses for deposition.

15  Defendants' dubious claim of a threat against Rodney Ripps is not in the record;
16  Yuga Labs disputes it and Defendants' false claim that it has ever been "conceded."
17  *See* Ripps Designated Deposition Testimony (Dkt. 342).  Defendants' claims on this
18  issue were also already dismissed by the Court as lacking any plausibility.  *See* Order
19  on Yuga Labs' Motion to Strike/Dismiss (Dkt. 156) at 6-10 (denying Defendants'
20  intentional and negligent infliction of emotional distress claims, which were based in
21  part on this threat).  And Defendants noticeably do not mention the death threats they
22  and their associates leveled against Yuga Labs, its counsel, and their families.  Even
23  so, it is irrelevant because it did not come from Yuga Labs and was not directed to
24  Defendants.  Defendants cry foul over Yuga Labs' subpoena of Rodney Ripps, when
25  it is they who designated him in their amended initial disclosures as a person with
26  knowledge of "RR/BAYC NFTs."  And the document subpoena Yuga Labs issued for
27  Mr. Rodney Ripps sought relevant information related to his role as an officer of
28

1 LIVE9000, Ryder Ripps' defunct limited liability company to which he tried to hide
2 the ill-gotten profits from the RR/BAYC NFTs when he knew he was being sued.

3       Yuga Labs' other subpoenas in this action were also targeted at relevant parties
4 whom Yuga Labs reasonably believed had information relevant to the litigation.
5 Many of them, including Mr. Ripps' gallerist, were designated in Defendants'
6 amended initial disclosures as individuals with knowledge of the RR/BAYC NFTs.
7 Likewise, Defendants indicated in their depositions that their accountants had relevant
8 information. *See* Cahen Deposition at 24:18-25 ("Like I said, I think that would
9 probably be an easier question for my accountant or someone like that."); Ripps
10 Deposition at 235:1-24. Defendants cannot complain that we subpoenaed their own
11 identified witnesses. Moreover, the vast majority of subpoenas issued by Yuga Labs
12 were document subpoenas, which stands in stark contrast to the sixteen depositions
13 and deposition subpoenas Defendants threatened and issued to Yuga Labs' founders
14 and employees. Finally, Defendants' position that Mr. Garner is relevant to the
15 litigation as Mr. Ripps' assistant for purposes of deducting from their profits
16 contradicts their position that Yuga Labs' deposition of him was irrelevant.

17       Next, with respect to the discovery dispute with Mr. Hickman, the Court
18 observed that "Defendants, not Yuga, designated the documents discussed at Ryan
19 Hickman's deposition as highly confidential ('HC') and attorneys' eyes only
20 ('AEO')." Dkt. 133 at 1. Consistent with Yuga Labs' reading of the Protective Order,
21 Yuga Labs kept the deposition transcript under similar protection "because HC/AEO
22 documents were discussed at the deposition," *id.*, and Defendants refused to specify
23 which portions of those underlying documents they contended were no longer
24 HC/AEO. The Court noted Defendants' indiscriminate confidentiality designations,
25 holding that Yuga Labs was "not wrong that Defendants are obliged by the Protective
26 Order to ensure HC/AEO material is 'clearly so designated.'" *Id.* at 3. Accordingly,
27 the Court ordered the transcript to be made public and ordered Defendants to comply
28

1  with the Protective Order by "reproduc[ing] and redesignat[ing] the HC/AEO
2  documents discussed at the deposition to 'clearly identify the protected portion(s)'" –
3  the "result Yuga recommended if the Motion was granted." *Id*.  In other words, the
4  Court ordered what Yuga Labs had asked the Defendants to do from the start.

5        Yuga Labs contested the discovery of documents reflecting settlement
6  negotiations with Mr. Lehman in good faith.  Mr. Lehman's settlement materials
7  expressly included a confidentiality provision, and Yuga Labs sought to have that
8  bargained-for confidentiality protected.  *See* Dkt. 121-01 at 17-18.  Yuga Labs briefed
9  the issues in good faith and, although the Court ultimately ordered the materials to be
10 produced, there was no finding of bad faith.  *See* Dkt. 159 (ordering Yuga Labs to
11 produce settlement materials without finding bad faith).

12       Yuga Labs was overwhelmingly successful in its own discovery motions.  Yuga
13 Labs was forced to file numerous motions and obtain repeated sworn declarations
14 from Defendants confirming their compliance with discovery obligations, because
15 Defendants were continually caught concealing additional documents.  *See* Dkt. 79 at
16 2 (Jan. 10, 2023 order requiring Ripps to verify that he has produced "all relevant non-
17 privileged documents"); Dkt. 145 (order requiring Defendants to file a declaration that
18 they have produced relevant documents).  Although the Court did not award Yuga
19 Labs fees for these discovery violations, each fee request was nonetheless in response
20 to Defendants' egregious and repetitive discovery violations.  If Defendants took issue
21 with Yuga Labs' discovery strategy, they should have raised it with the Court during
22 discovery, yet they did not, and thus this issue is waived.

23       **Defendants' Litigation Misconduct:**  Defendants ignore their own egregious
24 actions in this case, including Defendants' refusal to engage in reasonable settlement
25 discussions, seeking to re-litigate issues already decided, engaging in a pattern of
26 unreasonable and obstruct discovery, attacks against Yuga Labs and its associates,
27 farming for engagement on social media, and public disclosure of protected material
28

in violation of the protective order.  *See supra* ¶ 61.

**Defendants' Reply:**

Defendants expressly reserve and reassert all replies made in the parties' Joint Statement Regarding Objections (Dkt. 420).

Defendants reiterate all points made in their objection.  Yuga makes a legal error, the case they cite actually says, "[t]he Court also considers the conduct of **both parties** throughout the case." *Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *5 (C.D. Cal. Feb. 24, 2022).  Accordingly, this Court should consider Yuga's misconduct.  Yuga has acknowledged that a Yuga employee threatened Rodney Ripps, but argued that it was nothing more than "blowing off steam."  Dkt. 97 at 4.  Rodney Ripps felt threatened enough to file a police report in response to this action.  As for the other subpoenas served by Yuga they sought documents and information far beyond what the witnesses would know and witnesses such as Ian Garner commented on Yuga's aggression in discovery as "quite predatory."  Garner Depo. at 190:9-17.

Yuga clearly tried to preclude depositions of Mr. Solano and Mr. Aronow.  The Court rejected Yuga's baseless argument.  Dkt. 77.  To argue that they were not trying to avoid deposition is stunning.  Further, Yuga did not simply produce the witnesses, the witnesses blew off their first deposition date.  In its order, the Court made it clear that this action was sanctionable, but Yuga did not respect the Court enough to attend depositions in a case it brought.  *Id.* at *2.

Yuga attempts to flip its effort to wrongfully conceal Ryan Hickman's deposition as Defendants' fault.  A quick glance at the Court's order quickly disabuses that notion.  The Court was clear that Yuga took an untenable position regarding its over-designation of Mr. Hickman's deposition.  *See* Dkt 133 at 2 It clearly held Yuga at fault for its actions, chastising Yuga for "holding the transcript hostage."  *Id.*  The fact that the Court granted relief that Yuga suggested if it lost the

1  motion does not change the fact that Yuga acted wrongfully and lost.

2  Yuga claims that its improper hiding of materials related to Mr. Lehman's settlement was permissible because were not accused of good faith similarly tries to ignore something fundamental about the decision. It in all bold it demands that Yuga produce the withheld documents within three day. Dkt. 159 at *1. The court noted that all of Yuga's arguments against disclosing this evidence was "fatally undermined" by Yuga's "unfettered use of Lehman's declaration" to support its positions. *Id.* at *3. In short, Defendants' motion to compel the Lehman materials was an unmitigated victory for Defendants.

Yuga tries to argue that its pattern and practice of seeking sanctions and failing denotes success and cites to two docket entries. Instead of a hugely successful motion, the Court did not grant Yuga's motion to compel and stated that it "cannot discern what discovery requests remain in dispute" when rejecting Yuga's position. Dkt. 79 at *1. Dkt. 145 also rejects Yuga's spoliation sanctions request as being made "with no direct evidence." Dkt. 145 at *1. Further, as mentioned above, Defendants complied with discovery obligations to the best of their ability and explained as much at trial. Trial Tr. [Ripps] 269:10-270:18. Yuga cannot escape the fact that it used seeking sanctions as a litigating technique and that is wrongful. This court should take that into consideration when considering Yuga's request for relief.

Lastly, Defendants have not engaged in litigation misconduct in this case. While contentious, the examples of alleged litigation misconduct alleged by Yuga show no such thing. For reasons stated above, Defendants never re-litigated a matter, complied with discovery to the best of their ability including attendance at their noticed depositions (unlike Yuga's executives), and their public criticism of Yuga was not impermissible—but Yuga's argument against the criticism betrays that this case was truly about silencing Defendants. Defendants do not "ignore" their own litigation misconduct; and the Court should not ignore Yuga's.

| | | |
|---|---|---|
| Dated: October 5, 2023 | | WILMER CUTLER PICKERING HALE AND DORR LLP |

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

| | | |
|---|---|---|
| Dated: October 5, 2023 | | FENWICK & WEST LLP |

By: /s/ *Eric Ball*
Eric Ball
eball@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Fax: (650) 938-5200

Attorneys for Plaintiff
YUGA LABS, INC.

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Louis W. Tompros attests that concurrence in the filing of this document has been obtained from Eric Ball.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000