Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>               Plaintiff,<br><br>  v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>              Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 67**<br><br>Judge:  Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. 67:

The Copyright Act provides for the award of full costs and reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505.

### Defendants' Basis of Dispute:

Yuga incorrectly describes the Copyright Act's provisions for the ***discretionary*** award of costs and fees. 17 U.S.C. § 505 provides that "the court ***in its discretion may*** allow the recovery of full costs" and "the court ***may*** also award a reasonable attorney's fee to the prevailing party as part of the costs." Court's exercise their discretion by considering non-exclusive factors such as the degree of success in litigation, the conduct of litigants, and the goals of the copyright act. *Glacier Films (USA), Inc. v. Turchin*, 896 F3d 1033, 1038-1044 (9th Cir. 2018).

Courts have exercised this discretion to not award any costs or fees even when a party prevailed at summary judgment. For example, in *Grateful Dead Prods., Inc. v. Auditory Odyssey*, 76 F.3d 386 (9th Cir. 1996), the Ninth Circuit affirmed the district court's denial of attorneys fees because "plaintiffs prevailed by summary judgment on the issue of liability" but "failed to prove the main issue at trial which as whether the defendants acted willfully."

This case is no different. While the Court granted summary judgment on Defendants' claim under the Copyright Act, Yuga conceded the bulk of its claims for trial. Yuga attended this Court's pre-trial conference stating that it hand suffered damages "up to hundreds of millions" (Dkt. 334 at 23:7) and that Yuga would ask the jury to award "north of $10 million" in actual damages (Dkt. 334 at 27:8) in addition

1 to any equitable relief that it seeks. But Yuga pre-emptively abandoned its damages claims when it informed the Court that "Yuga Labs is withdrawing all legal remedies and will proceed to trial solely on its prayer for equitable remedies[.]" Dkt. 315-1 at 2. As a result, similar to *Grateful Dead*, 76 F.3d 386, Defendants prevailed on the main issue for trial because Yuga's actual damages claim that was "up to hundreds of millions" was reduced to $0.

Similarly, the goals of the Copyright Act weigh strongly against the award of any fees. The goal of the Copyright Act is "to promote creativity for the public good." *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994) ("The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public."). Here, Defendants filed a claim based on Yuga's improper use of the Digital Millennium Copyright Act to take down content based on trademarks rather than copyright. Defendants filed these claims because Yuga had improperly leveraged DMCA's "safe harbor" regime, which is intended only for copyrights, to take down content based on allegations of trademark infringement. While this Court may disagree with the merits of Defendants' claim, their exercise of the Copyright Act was intended to pursue what they believed to an abuse of the DMCA statute, which often results in improper suppression of artworks on the internet. An award of fees would deter artists in the future from challenging in Court (which is the only way to meaningfully challenge unlawful DMCA requests) what they perceive to be abusive use of the DMCA statute and the remarkable leverage of the DMCA's safe harbor regime.

Lasty, considering Yuga's misconduct throughout this litigation, an award of costs and fees would be unjust. For example, Yuga used this litigation as means to harass Mr. Ripps's 72-year-old father, Rodney Ripps. During this lawsuit, a Yuga employee threatened the life of Mr. Ripps's father (ultimately forcing Mr. Ripps's

father to file a police report). *See* Ripps Depo. 181:15-182:3 ("He said, 'You and your son should die.' You said that. And my dad is … freaked out, you know … he really is scared, you know … You keep … harassing my family[.]"). Yuga's counsel Yuga initially brushed off the issue, then later conceded that a threat did in fact occur. Dkt. 97 at 4. But Yuga's harassment of Mr. Ripps's father continued, including serving a facially invalid subpoena on him seeking to compel his trial attendance (notwithstanding his complete irrelevance to any issue in the case).

Yuga served more than sixteen subpoenas in this action, nearly all of them facially irrelevant and procuring no useful discovery, apparently to harass anyone that is in any way associated with the Defendants. For example, Yuga targeted people on Twitter whose sole relevance was apparently having "liked" the RR/BAYC project, Defendants' personal accountants, and Mr. Ripps's gallerist. These parties repeatedly commented on how Yuga's behavior in this lawsuit impacted them personally, including for example Mr. Ripps's part-time, one-week general assistant (whom Yuga insisted on deposing) who called Yuga's conduct "quite predatory, honestly." Garner Depo. At 190:9-17.

Yuga also improperly tried to preclude relevant discovery by making a baseless apex witness argument in an *ex parte* motion for a protective order. The Court rejected Yuga's baseless arguments, finding Yuga's motion "deficient on the merits" because the co-founders were "the only people who have knowledge of the creation of the marks." Dkt. 77 at 2. The Court accordingly ordered that Yuga employees Wylie Aronow and Greg Solano appear for depositions on January 9 and 11 respectively (excusing Mr. Solano only if he had medical complications). *Id*. Yet, despite this Court's order, **neither witness appeared**. Yuga has never identified any medical reason why Mr. Solano could not attend. The Court was clear that failing to appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did not show up. Dkt. 77 at *2. Yuga has not done so.

1   Yuga also flouted this Court's Protective Order by improperly designating the
2   entirety of third-party Ryan Hickman's deposition testimony as HIGHLY
3   CONFIDENTIAL-ATTORNEYS EYES ONLY to hide Mr. Hickman's testimony
4   from the public.  This deposition involved no Yuga confidential information; instead,
5   it was the testimony of a Black Jewish third party that included discussion of racism
6   and antisemitism in Yuga's branding.  *See* Dkt. 123-2.  Defendants were forced to
7   bring a motion to address Yuga's misuse of the Protective Order, which the Court
8   granted ordering complete de-designation of the transcript and finding that Yuga was
9   wrong to "**hold the transcript hostage**."  Dkt. 133 at *2 (emphasis added).
10  Yuga also baselessly refused to produce materials relating to third-party
11  Thomas Lehman's settlement-procured declaration to run the clock on the discovery
12  schedule.  Defendants filed a motion to compel once Yuga disclosed the declaration
13  and sought expedited review of that motion to allow time for its use in a deposition of
14  Mr. Lehman.  The Court declined to consider the motion on an expedited basis,
15  stating that Defendants could instead depose Mr. Lehman in "the last week of March
16  before the April 1, 2023 discovery cut-off date."  Dkt. 119 at 2.  The Court ultimately
17  granted Defendants' motion, holding that Yuga waived any claim to confidentiality
18  due to its "unfettered use of Lehman's declaration[.]"  Dkt. 159 at 2.  After Yuga
19  belatedly made its court-ordered production, Defendants took Mr. Lehman's
20  deposition in the final week of discovery as suggested by the Court.  But because of
21  Yuga's delay, the deposition testimony—which raised disputes of fact regarding
22  Defendants' infringement and Yuga's credibility—was unavailable for consideration
23  in opposition to Yuga's motion for summary judgment.  *See* Dkt. 215 at 2.
24  Throughout the course of this litigation, Yuga also made repeated baseless
25  threats of fees and sanctions.  In total, Yuga has unsuccessfully asked the Court to
26  impose sanctions ***six times***. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-
27  8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20.  Every request was denied.  This
28

1  kind of scorched-earth litigation strategy is improper in any context, but particularly
2  problematic where Defendants are two individuals attempting to respond to claims
3  brought by an uncompromising multi-billion-dollar corporate plaintiff.
4      Because Defendants substantially prevailed at trial by entirely eliminating
5  Yuga's actual damages claim that was up to hundreds of millions of dollars, an award
6  of fees would run contrary to the goals of the copyright act, and Yuga's failure to
7  come to the Court with clean hands as a result of its litigation misconduct, a
8  discretionary award of costs attorneys' fees under 17 U.S.C. § 505 is not appropriate.

### Plaintiff's Response:

10      Defendants unequivocally lost each of their three copyright counterclaims –
11  two did not survive Yuga Labs' motion to dismiss and the third failed on summary
12  judgment.  In other words, Defendants' counterclaims were so lacking in merit that
13  not one of them survived to trial.  Moreover, Defendants' counterclaims did not
14  further the purpose of the Copyright Act – creativity – they sought to stifle it by
15  attacking (without any basis in law or fact) the only creative work in this case – the
16  Bored Ape Yacht Club.  Therefore, granting fees to Yuga Labs in the face of
17  Defendants' meritless copyright counterclaims, filed to gain leverage in discovery
18  and not to advance any creative project of theirs, serves the very purpose of the
19  Copyright Act by deterring other would-be bad actors.
20      Defendants' objection should be rejected because (1) Yuga Labs resoundingly
21  won all copyright issues in this case on its motions, entitling it to fees, and (2)
22  Defendants' litigation misconduct objections are irrelevant and nevertheless lack
23  merit.

### Yuga Labs Won All Copyright Issues In This Case, Entitling It To Fees:

25      The copyright act is clear that, in any copyright action, "the court in its
26  discretion may allow the recovery of full costs by or against any party" and "the court
27  may also award a reasonable attorney's fee to the prevailing party as part of the
28

costs." 17 U.S.C. § 505. There were three copyright claims in this case: Defendants' two counterclaims for declaratory relief that Yuga Labs did not own a copyright; and Defendants' counterclaim under 17 U.S.C. § 512(f). The Court dismissed Defendants' two counterclaims for declaratory relief as there was not even a justiciable dispute or subject matter jurisdiction. Order on Yuga Labs' Motion to Dismiss (Dkt. 156) at 13-14. And the Court found that "Yuga is entitled to summary judgment on Defendants' counterclaim alleging a knowing misrepresentation of infringing activity. . ." SJ Order (Dkt. 225) at 21. The copyright counterclaims have been fully adjudicated and the only remaining issue is whether Yuga Labs is entitled to costs and fees, within the Court's discretion.

Defendants' policy argument that enforcing the fees provision of the Copyright Act would somehow go against the "goals of the copyright act" is unpersuasive and unsupported by any legal authority. Their contention that they filed their copyright claim because "Yuga had improperly leveraged DMCA's 'safe harbor' regime" is false. As the Court found, Yuga Labs' behavior was not improper under the DMCA. *See* SJ Order (Dkt. 225) at 19-21. And enforcing the fees provision against Defendants would not deter future artists from challenging fees in court. To the contrary, granting Yuga Labs its fees may deter litigants from pursuing frivolous copyright claims in the future.

Defendants' citation to *Grateful Dead* is unpersuasive. First, Defendants' copyright counterclaims were not at issue at trial – they were all adjudicated on motion practice months before trial in Yuga Labs' favor. Therefore, the question of whether Yuga Labs is the prevailing party on the three copyright claims is a resounding "yes." Second, regardless, willfulness is not "the main issue at trial" or even an issue at all, as the Court has already decided that Defendants acted with the intent to deceive when using Yuga Labs' BAYC Marks. SJ Order (Dkt. 225) at 12. Finally, Yuga Labs did not "concede[] the bulk of its claims for trial." In fact, it won

1  all copyright issues in this case before trial commenced (indeed, Yuga Labs defeated
2  all six of Defendants' counterclaims before trial). Yuga Labs' state law claims were
3  stayed pending resolution of Defendants' appeal to the Ninth Circuit and, therefore,
4  were not at issue at trial. Only Yuga Labs' two remaining federal claims were at
5  issue at trial and, even then, were *not at issue* for purposes of liability because Yuga
6  Labs had already proven those two claims. Only the remedies Yuga Labs sought on
7  those two claims was at issue at trial.
8       Nor did Defendants "substantially prevail" at trial by Yuga Labs electing to
9  defer its actual damages claims. Injunctive relief is the most important remedy in this
10 case for Yuga Labs, followed by disgorgement of Defendants' profits. These
11 remedies ensure that Yuga Labs is able to regain control of its brand, begin to end the
12 irreparable harm by Defendants, and stop Defendants' from benefiting from their
13 infringement.
14      Despite Defendants' policy arguments and citations to inapplicable caselaw,
15 the Court's decision is simple: whether Yuga Labs is entitled to an award of costs
16 and fees. In light of its complete victory on the three copyright claims in this case,
17 Yuga Labs believes the answer is yes.
18      **Defendants' Litigation Misconduct Objections Are Irrelevant And Lack**
19 **Merit:** The remainder of Defendants' objections are irrelevant to this issue and, in
20 any event, lack any merit. *See infra* ¶¶ 61-66.
21      **Defendants' Reply:**
22      Yuga provides no context for its litigation misconduct and fails to rebut that its
23 misconduct bars any award for fees and costs. 17 U.S.C. § 505 provides that "the
24 court ***in its discretion may*** allow the recovery of full costs" and "the court ***may*** also
25 award a reasonable attorney's fee to the prevailing party as part of the costs." Courts
26 exercise their discretion by considering non-exclusive factors such as the degree of
27 success in litigation, the conduct of litigants, and the goals of the copyright act.
28

1  *Glacier Films (USA), Inc. v. Turchin*, 896 F3d 1033, 1038-1044 (9th Cir. 2018). Yuga has engaged in egregious acts in this litigation including (1) threatening to kill Mr. Ripps and his 72-year-old father, (2) harassing sixteen facially irrelevant third parties, (3) improperly holding the deposition transcript of Mr. Hickman "hostage" as this Court has described it, (4) not showing up to deposition despite Court orders requiring them to do so, (5) baselessly refusing to produce materials, (6) Yuga insisting on a non-disparagement clause in an effort to take away Defendants' speech rights, and (7) having made six baseless threats of fee and sanctions, all of which the Court has denied. Given Yuga's numerous instances of litigation misconduct, the use of this Court's equity powers to award fees would be inappropriate.

Yuga similarly fails to contrast *Grateful Dead Prods., Inc. v. Auditory Odyssey*, 76 F.3d 386 (9th Cir. 1996), the Ninth Circuit affirmed the district court's denial of attorneys fees despite the prevailing party winning at summary judgment. The main issue in *Grateful Dead* was that the prevailing party's performance at trial was poor, and that barred any award of fees. The same is true here. Yuga was seeking in excess of $800,000,000.00 in remedies in this action and has now reduced the remedies figure Yuga seeks to approximately $1.5 million, with the actual damages figure reduced to $0. The fact that Yuga has lost so much in the trial process indicates significant success on part of the Defendants and precludes any award of fees or costs.