Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>Ryder Ripps, Jeremy Cahen,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-04355-JFW-JEM<br><br>**Defendants' Objections to Disputed Conclusion of Law No. 68, lines 20:5-7**<br><br>Judge: Hon. John F. Walter |

Pursuant to the Court's Order Regarding the Parties Objections to Post Trial Proposed Findings of Facts and Conclusion of Law (Dkt. 423) Defendant Ryder Ripps and Defendant Jeremy Cahen respectfully submit the following objection, response, and reply to Defendants' objections to Yuga Labs, Inc.'s ("Yuga") Post Trial Proposed Findings of Facts and Conclusion of Law:

### Plaintiff's Disputed Post Trial Conclusion of Law No. 68, lines 20:5-7:

Accordingly, because Yuga Labs is the prevailing party on Defendants' copyright counterclaims, it is entitled to its full costs and fees for those claims.

### Defendants' Basis of Dispute:

As noted earlier, Yuga incorrectly argues that it is entitled to costs and attorneys' fees under the Copyright.  17 U.S.C. § 505 provides that "the court **in its discretion may** allow the recovery of full costs" and "the court **may** also award a reasonable attorney's fee to the prevailing party as part of the costs."  Court's exercise their discretion by considering non-exclusive factors such as the degree of success in litigation, the conduct of litigants, and the goals of the copyright act. *Glacier Films (USA), Inc. v. Turchin*, 896 F3d 1033, 1038-1044 (9th Cir. 2018).

Courts have exercised this discretion to not award any costs or fees even when a party prevailed at summary judgment.  For example, in *Grateful Dead Prods., Inc. v. Auditory Odssey*, 76 F.3d 386 (9th Cir. 1996), the Ninth Circuit affirmed the district court's denial of attorney's fees because "plaintiffs prevailed by summary judgment on the issue of liability" but "failed to prove the main issue at trial which as whether the defendants acted willfully."

This case is no different.  While the Court granted summary judgment on Defendants' claim under the Copyright Act, Yuga has already lost on the main issues remained for trial.  Yuga attended this Court's pre-trial conference stating that it had suffered damages "up to hundreds of millions" (Dkt. 344 at 23:7) and that Yuga would ask the jury to award "north of $10 million" in actual damages (Dkt. 344 at

1  27:8) in addition to any equitable relief that it seeks. But Yuga pre-emptively
2  abandoned its damages claims when it informed the Court that "Yuga Labs is
3  withdrawing all legal remedies and will proceed to trial solely on its prayer for
4  equitable remedies[.]" Dkt. 315-1 at 2. As a result, similar to *Grateful Dead*, 76 F.3d
5  386, Defendants prevailed on the main issue for trial because Yuga's actual damages
6  claim that was "up to hundreds of million" was reduced to $0.

7    Similarly, the goals of the Copyright Act weigh strongly against the award of
8  any fees. The goal of the Copyright Act is "to promote creativity for the public good."
9  *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994); *see also* *Fogerty v. Fantasy, Inc.*,
10  510 U.S. 517, 524 (1994) ("The primary objective of the Copyright Act is to
11  encourage the production of original literary, artistic, and musical expression for the
12  good of the public."). Here, Defendants filed a claim based on Yuga's improper use
13  of the Digital Millennium Copyright Act to take down content based on trademarks
14  rather than copyright. Defendants filed these claims because Yuga had improperly
15  leveraged DMCA's "safe harbor" regime, which is intended only for copyrights, to
16  take down content based on allegations of trademark infringement. While this Court
17  may disagree with the merits of Defendants' claim, their exercise of the Copyright Act
18  was intended to pursue what they believed to an abuse of the DMCA statute, which
19  often results in improper suppression of artworks on the internet. An award of fees
20  would deter artists in the future from challenging in Court (which is the only way to
21  meaningfully challenge unlawful DMCA requests) what they perceive to be abusive
22  use of the DMCA statute and the remarkable leverage of the DMCA's safe harbor
23  regime.

24    Lasty, considering Yuga's misconduct throughout this litigation, an award of
25  costs and fees would be unjust. For example, Yuga used this litigation as means to
26  harass Mr. Ripps's 72-year-old father, Rodney Ripps. During this lawsuit, a Yuga
27  employee threatened the life of Mr. Ripps's father (ultimately forcing Mr. Ripps's

father to file a police report). *See* Ripps Depo. 181:15-182:3 ("He said, 'You and your son should die.' You said that. And my dad is … freaked out, you know … he really is scared, you know … You keep … harassing my family[.]"). Yuga's counsel Yuga initially brushed off the issue, then later conceded that a threat did in fact occur. Dkt. 97 at 4. But Yuga's harassment of Mr. Ripps's father continued, including serving a facially invalid subpoena on him seeking to compel his trial attendance (notwithstanding his complete irrelevance to any issue in the case).

Yuga served more than sixteen subpoenas in this action, nearly all of them facially irrelevant and procuring no useful discovery, apparently to harass anyone that is in any way associated with the Defendants. For example, Yuga targeted people on Twitter whose sole relevance was apparently having "liked" the RR/BAYC project, Defendants' personal accountants, and Mr. Ripps's gallerist. These parties repeatedly commented on how Yuga's behavior in this lawsuit impacted them personally, including for example Mr. Ripps's part-time, one-week general assistant (whom Yuga insisted on deposing) who called Yuga's conduct "quite predatory, honestly." Garner Depo. At 190:9-17.

Yuga also improperly tried to preclude relevant discovery by making a baseless apex witness argument in an *ex parte* motion for a protective order. The Court rejected Yuga's baseless arguments, finding Yuga's motion "deficient on the merits" because the co-founders were "the only people who have knowledge of the creation of the marks." Dkt. 77 at 2. The Court accordingly ordered that Yuga employees Wylie Aronow and Greg Solano appear for depositions on January 9 and 11 respectively (excusing Mr. Solano only if he had medical complications). *Id.* Yet, despite this Court's order, **neither witness appeared**. Yuga has never identified any medical reason why Mr. Solano could not attend. The Court was clear that failing to appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did not show up. Dkt. 77 at *2. Yuga has not done so.

1  Yuga also flouted this Court's Protective Order by improperly designating the entirety of third-party Ryan Hickman's deposition testimony as HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY to hide Mr. Hickman's testimony from the public.  This deposition involved no Yuga confidential information; instead, it was the testimony of a Black Jewish third party that included discussion of racism and antisemitism in Yuga's branding.  *See* Dkt. 123-2.  Defendants were forced to bring a motion to address Yuga's misuse of the Protective Order, which the Court granted ordering complete de-designation of the transcript and finding that Yuga was wrong to "***hold the transcript hostage***."  Dkt. 133 at *2 (emphasis added).

Yuga also baselessly refused to produce materials relating to third-party Thomas Lehman's settlement-procured declaration to run the clock on the discovery schedule.  Defendants filed a motion to compel once Yuga disclosed the declaration and sought expedited review of that motion to allow time for its use in a deposition of Mr. Lehman.  The Court declined to consider the motion on an expedited basis, stating that Defendants could instead depose Mr. Lehman in "the last week of March before the April 1, 2023 discovery cut-off date." Dkt. 119 at 2.  The Court ultimately granted Defendants' motion, holding that Yuga waived any claim to confidentiality due to its "unfettered use of Lehman's declaration[.]" Dkt. 159 at 2.  After Yuga belatedly made its court-ordered production, Defendants took Mr. Lehman's deposition in the final week of discovery as suggested by the Court.  But because of Yuga's delay, the deposition testimony—which raised disputes of fact regarding Defendants' infringement and Yuga's credibility—was unavailable for consideration in opposition to Yuga's motion for summary judgment.  *See* Dkt. 215 at 2.

Throughout the course of this litigation, Yuga also made repeated baseless threats of fees and sanctions.  In total, Yuga has unsuccessfully asked the Court to impose sanctions ***six times***. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20.  Every request was denied.

1  This kind of scorched-earth litigation strategy is improper in any context, but
2  particularly problematic where Defendants are two individuals attempting to respond
3  to claims brought by an uncompromising multi-billion-dollar corporate plaintiff.
4         Because Defendants substantially prevailed at trial by entirely eliminating
5  Yuga's actual damages claim that was up to hundreds of millions of dollars, an award
6  of fees would run contrary to the goals of the copyright act, and Yuga's failure to
7  come to the Court with clean hands as a result of its litigation misconduct, a
8  discretionary award of costs and attorneys' fees under 17 U.S.C. § 505 is not
9  appropriate.

**Plaintiff's Response:**

In light of its complete victory on the three copyright claims in this case, Yuga Labs is entitled to its fees and costs under this statute. *See supra* ¶ 67.

**Defendants' Reply:**

For the reasons stated above in ¶ 67 this court should deny its claim for legal damages.