| | |
|---|---|
| ERIC BALL (CSB No. 241327)<br>eball@fenwick.com<br>KIMBERLY CULP (CSB No. 238839)<br>kculp@fenwick.com<br>FENWICK & WEST LLP<br>801 California Street<br>Mountain View, CA  94041<br>Telephone:   650.988.8500<br>Facsimile:    650.938.5200<br><br>MOLLY R. MELCHER (CSB No. 272950)<br>mmelcher@fenwick.com<br>ANTHONY M. FARES (CSB No. 318065)<br>afares@fenwick.com<br>ETHAN M. THOMAS (CSB No. 338062)<br>ethomas@fenwick.com<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA  94104<br>Telephone:   415.875.2300<br><br>*Additional Counsel listed on next page*<br><br>Attorneys for Plaintiff<br>*Yuga Labs, Inc.* | Louis W. Tompros (*pro hac vice*)<br>louis.tompros@wilmerhale.com<br>Monica Grewal (*pro hac vice*)<br>monica.grewal@wilmerhale.com<br>Scott W. Bertulli (*pro hac vice*)<br>scott.bertulli@wilmerhale.com<br>Tyler Carroll (*pro hac vice*)<br>tyler.carroll@wilmerhale.com<br>**WILMER CUTLER PICKERING<br>  HALE AND DORR LLP**<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Fax: (617) 526-5000<br><br>Derek Gosma (SBN 274515)<br>derek.gosma@wilmerhale.com<br>Henry Nikogosyan (SBN 326277)<br>henry.nikogosyan@wilmerhale.com<br>**WILMER CUTLER PICKERING<br>  HALE AND DORR LLP**<br>350 South Grand Ave., Suite 2400<br>Los Angeles, CA 90071<br>Telephone: (213) 443-5300<br>Fax: (213) 443-5400<br><br>Attorneys for Defendants<br>*Ryder Ripps and Jeremy Cahen* |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| YUGA LABS, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>            Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**JOINT STATEMENT REGARDING YUGA LABS, INC.'S ATTORNEYS' FEES AND COSTS**<br><br>Judge:  Hon. John F. Walter |


1  MELISSA L. LAWTON (CSB No. 225452)
   mlawton@fenwick.com
2  FENWICK & WEST LLP
   228 Santa Monica Boulevard
3  Santa Monica, CA  90401
   Telephone:   310.434.4300
4
5  Attorneys for Plaintiff
   *Yuga Labs, Inc.*
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Yuga Labs, Inc. ("Plaintiff" or "Yuga Labs") and Defendants Ryder Ripps and Jeremy Cahen ("Defendants") (collectively, the "Parties"), through their respective counsel of record, hereby submit this Joint Statement re Yuga Labs' Attorneys' Fees and Costs pursuant to the Court's Order (Dkt. 431).

On November 1, 2023 Yuga Labs served Defendants with billing entries and cost records on which it intends to rely in support of its request for reasonable attorney's fees and costs. Yuga Labs' claimed fees and costs are summarized in **Exhibit 1** and total $12,697,150.22 in attorneys' fees, $409,322.69 in costs, and $95,639.00 in expert witness fees. However, in this joint statement, Yuga Labs requests a total award of **$7,500,000.00** in attorneys' fees, **$200,000.00** in costs and expenses, and **$95,639.00** in expert fees incurred in connection with depositions.

On November 10, 2023, Defendants responded to Yuga Labs' e-mail and indicated that they considered a reasonable total award to be **$455,172.24**. Defendants' figure is calculated by apportioning Yuga's overall request with the amount of work this case reasonably required (see Section I.A.) and further adjusting the figure to be consistent with awards in comparable cases (from $175,433.21 to $464,128.57). See *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, No. 8:22-cv-00462-SB-DFM, 2023 WL 6194276, at *3 (C.D. Cal. Aug. 4, 2023) (awarding $384,525.25 in fees in a trademark case involving a one-day bench trial); *Bellagio Jewelry, Inc. v. Croton Watch Co., Inc.*, No. 06-cv-06672-ODW-RZx, 2008 WL 11339936, at *4 (C.D. Cal. Oct. 15, 2008) (awarding $464,128.57 in a trademark case that involved litigation misconduct, willfulness, and a six-day bench trial); *Jackson v. Gaspar*, No. 2:19-cv-10450-DOC, 2022 WL 2155975, at *2 (C.D. Cal. Feb. 24, 2022) (awarding $114,862.42 in a trademark case that had a two-day bench trial on damages); *Safeworks, LLC v. Teupen America, LLC*, No. 08-cv-12197-TSZ, 2010 WL 3033711, at *7 (W.D. Wash. July 29, 2010) (awarding $175,433.21 in a trademark case involving a three-day bench trial); *American Optometric Soc., Inc. v. American Bd. Of Optometry, Inc.*, No. 10-cv-03983-AHM-FFM, 2012 WL 6012861, at *6 (C.D.

Cal. Dec. 3, 2012) (awarding $462,508 in a trademark case involving a three-day bench trial).

Pursuant to the Court's Order, the Parties met and conferred on November 13, 2023. The Parties were unable to reach a compromise concerning the total amount of reasonable fees and costs to which Yuga Labs is entitled, and their respective statements follow.

## I. DEFENDANTS' OBJECTION TO YUGA'S REQUEST FOR ATTORNEYS' FEES AND COSTS

After initially seeking reimbursement in the amount of $13,204,579.40 for fees and costs, Yuga for the first time on November 17, 2023, reduced its demand to $7,500,000. But that amount, too, is facially unreasonable for the reasons set forth herein. Rather than burden the Court with line-by-line objections,[1] Defendants below identify categories of expenditures that demonstrate that Yuga's request to reimburse 14,455.6 hours for a total of $7,500,000 is riddled with errors and unreasonable.

### A.  Yuga's Counsel Overbilled

Yuga's request is grossly disproportionate to the work that this case (which lasted about a year and involved a half-day bench trial) required. Yuga cannot contend that billing 14,455.6 hours is reasonable—in fact it is **more than 20 times** greater than what was considered reasonable in comparable cases in this district. For example, in *Jepson*, the Court found that 686.3 hours was reasonable for a trademark case that lasted two years and concluded with a half-day bench trial. *Jepson Inc. v. Makita USA Inc.*, 90-cv-04312-GHK, 1994 WL 543226, at*4 (C.D. Cal. May 27, 1994). Likewise, in *MetaQuotes*, the Court found that 745.1 hours was ***unreasonable*** and warranted a 10% discount in a trademark case against five defendants that involved a bench trial and damages in excess of $800,000. *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, No. 8:22-cv-00462-SB-DFM, 2023 WL 6194276, at *3 (C.D. Cal. Aug. 4, 2023) (awarding $384,525.25 in fees).

Yuga's exorbitant request is primarily based on *Moreno v. City of Sacramento*, which is inapplicable given that it is a contingency fee case where "lawyers are not likely to spend unnecessary time." 34. F.3d 1106, 1112 (9th Cir. 2009).

Indeed, a closer look at Yuga's bills reveal that its counsel's billing practices artificially increased hours, resulting in unreasonable fees. For example, Yuga

---

[1] Defendants expressly reserve, and do not waive, their right to appeal the determination that the award of any fees or costs is just or permissible and reserve their objections to each specific item in Yuga's facially unreasonable request.

requests reimbursement for 3,449.2 hours of duplicative time entries. See *Mireskandari v. Daily Mail*, 2014 WL 12586434 at *17 (C.D. Cal. 2014). Reimbursing such fees would incentivize inflating bills in hope for a windfall. See *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd*, 2012 WL 12883819, at *4 (C.D. Cal. June 12, 2012) (decrying "outrageously unreasonable" fee requests).

After removing duplicate bills, there remain another 7,406.7 hours in "block bill" format—including over 1809.8 hours from Yuga's lead counsel. Block billing is the practice of billing multiple discrete tasks in one billing entry. *Campbell v. National Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010). Courts look dimly on block billing because it significantly inflates fee awards. See *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (affirming district court's reduction for block billing).

Yuga also seeks reimbursement for 171.1 hours for travel time. Defendants attempted to avoid these costs by, for example, repeatedly requesting that Yuga consent to remote depositions—which Yuga repeatedly refused (except with its own experts). Courts in this jurisdiction decline to award these kinds of travel expenses where, as here, traveling could have been avoided. See *D'Lil v. Best W. Encina Lodge & Suites*, No. 02-cv-09506-DSF-VBKx, 2010 WL 11655476, at *6 (C.D. Cal. Apr. 13, 2010); *Zuniga v. W. Apartments*, 2014 WL 6655997, at *4 (C.D. Cal. Nov. 24, 2014). Yuga also billed for tasks entirely unrelated to this litigation, such as its lead counsel attending a town hall meeting for "ApeCoin" (a cryptocurrency that Yuga contends has nothing to do with the Bored Ape Yacht Club) as well as time spent researching/discussing other unrelated cryptocurrency matters.

Lastly, Yuga's unreasonable conduct during litigation needlessly added thousands of hours of work. For example, Yuga asked this Court to impose sanctions **six times**. See Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. Every request was denied. Yuga also consistently maintained frivolous positions during discovery only to have their

arguments repeatedly rejected. *See*, *e.g.*, Dkt. 77 (rejecting Yuga's "apex witness" argument); Dkt. 133 (rejecting Yuga's sealing of deposition transcript); Dkt. 159 (ordering production of materials Yuga improperly withheld). Yuga also fully litigated its false advertising claim and its $800 million damages claim without pursuing a trial on those issues. Dkt. 287-10 at 4; Dkt. 309; Dkt. 315-1 at 2. Yuga also used this litigation to harass Mr. Ripps's 72-year-old father by serving a facially invalid subpoena seeking to compel trial attendance. Yuga served more than sixteen subpoenas, nearly all of them facially irrelevant and procuring no useful discovery. Yuga's award should not include recovery for this kind of unwarranted and avoidable work.

### B. Yuga's Request is Not Reasonable Given the Scope of Litigation

Yuga seeks fees and costs that total almost five times the damages awarded in this case. The Supreme Court has explained that "the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensely v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *5, 8 (C.D. Cal. Feb. 24, 2022) (citing *Hensley*, 461 U.S. at 435-36) (holding that the court "may adjust the fee award based on the success of the plaintiff" and ultimately decided to "reduce the lodestar to account for [the plaintiff's] limited success.").

In other trademark cases where there was an injunction and damages totaling around a million dollars, the attorneys' fees and costs awarded were significantly lower. *See Blumenthal Distrib., Inc. v. Comoch Inc.*, No. 521CV00829FWSSHK, 2023 WL 2356713, at *10 (C.D. Cal. Jan. 24, 2023) (awarding $28,541.46 in attorney's fees where there was disgorgement in the amount of $1,247,072); *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, No. 8:22-CV-00462-SB-DFM, 2023 WL 6194276, at *4, 1 (C.D. Cal. Aug. 4, 2023) (awarding $384,352.25 in attorney's fees where the court awarded $836,704.75 in treble profits and actual damages). The damages award is a small fraction of what Yuga is now seeking in attorney's fees and

the Court should, therefore, reduce the award to ensure that it has a reasonable relationship to the result obtained.

### C. Equitable Considerations Warrant a Reduction

Fee awards under § 1117 are commonly limited in equity to account for a party's financial means and the extent of remedies assessed. See *Gopets Ltd. v. Hise*, 2009 WL 412204, at *3 (C.D. Cal. Feb. 13, 2009); *Safeworks, LLC v. Teupen America, LLC*, 2010 WL 3033711, at *7 (W.D. Wash. July 29, 2010). Here, Defendants are two individuals that do not have the same financial resources as Yuga, a self-proclaimed multi-billion-dollar company.

Several courts have considered the nature of the parties when determining which sum would constitute a reasonable and equitable attorneys' fee award. In *GoPets*, the court looked to defendants' "limited means" and "comparative lack of sophistication" when deciding to reduce the fees by 40 percent. *Gopets Ltd. v. Hise*, 2009 WL 412204, at *3 (C.D. Cal. Feb. 13, 2009). Similarly, in *Safeworks,* the court considered that the defendants had "limited means to pay a judgement of fees" and reduced the fees amount. *Safeworks, LLC v. Teupen America, LLC*, 2010 WL 3033711, at *7 (W.D. Wash. July 29, 2010). Here, a multi-billion-dollar company has requested that two individuals be ordered to pay $7,500,000 in attorneys' fees and costs on top of a judgment for $1,575,362.92. Defendants lack the ability to pay such an incredible sum, and their lack of resources would create additional burdens on the Court as Yuga seeks to enforce a judgment including this amount. Equitable considerations, and the positions of the parties, thus counsel a reduction of Yuga's requested fees and costs.

### D. Costs

Yuga's requests for costs is improperly based on numerous categories that are not recoverable under the Lanham Act. Courts have held that the Lanham Act "does not provide explicit statutory authority to award litigation expenses beyond the six categories set forth in the general costs statute, [28 U.S.C. §§ 1821, 1920], Plaintiff[s]

cannot recover any costs that do not fit within those categories." *Hansen Cold Storage Constr. v. Cold Sys., Inc.*, No. 2:19-CV-07617-SB-MAA, 2022 WL 1199271, at *8 (C.D. Cal. Feb. 11, 2022).[2] Yuga impermissibly includes items that are outside of the enumerated categories. For example, Yuga seeks fees associated with videotaping depositions ($18,691.50), delivery fees (at least $4,190.83, but likely more given Yuga's repeated block narrative of "Printing /Assembly/Delivery of Court Copies"), and charges for database use from WestLaw and Lexis ($166,594). These costs cannot be recovered under the Lanham Act. *See Arcona, Inc. v. Farmacy Beauty, LLC*, No. 217CV7058ODWJPRX, 2021 WL 2414856, at *5 (C.D. Cal. June 14, 2021), *aff'd*, No. 21-55678, 2022 WL 1486822 (9th Cir. May 11, 2022) (holding movant cannot recover "computerized research, messenger/delivery services, deposition videography, and travel."); *Hansen Cold Storage Constr. v. Cold Sys., Inc.*, No. 2:19-CV-07617-SB-MAA, 2022 WL 1199271, at *8 (C.D. Cal. Feb. 11, 2022) (holding research and parking fees are not recoverable).

Further, many of the costs that Yuga seeks are not reasonable and should not be passed on to Mr. Ripps and Mr. Cahen. For example, Yuga is seeking $89,346.37 for costs associated with courtesy copies. The invoices Yuga relies on show that their orders often included additional charges for expedited service and other additions that inflated the pricing. Yuga further paid $55,559 to print what appears to be personal copies of various documents. Yuga's invoices for the depositions are also inflated and include charges totaling thousands of dollars for unnecessary add-ons including "Realtime Services," rough drafts, "Video Proceeding," "Parking Expense," and a "Deposition Concierge Tech Support." Yuga chose to pay for additional services beyond those necessary to print courtesy copies, personal copies, and perform depositions and those unreasonable charges should be excluded.

---

[2] Section 1821 provides for costs associated with witness fees. Section 1920 provides for fees of: (1) the clerk and marshal; (2) printed or electronically recorded transcripts necessary for the case; (3) printing and witnesses; (4) exemplification and copies of any materials where the copies are necessary for the case; (5) docket fees; (6) court appointed experts, interpreters, and expenses for special interpretation services.

## II. YUGA LABS' RESPONSES TO DEFENDANTS' OBJECTIONS

Defendants admittedly do not provide "a description of each specific item in dispute" and thus fail to carry their burden. Dkt. 431 at 28.[3] Instead, Defendants' general objections arbitrarily seek to reduce Yuga Labs' total reasonable fees, costs and expenses, and expert fees still owed pursuant to Rule 26(b)(4)(E)(i) to an unreasonable sum of $455,172.24. Defendants' minimization results in a reduction of 96.4% on fees and 100% on everything else. This case involved intensive time and effort from start to finish, requiring Yuga Labs to pay $12,697,150.25 for expert legal counsel. As the Ninth Circuit recognizes, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

While Defendants' obstructive actions contributed significantly to these fees, in an effort to resolve the dispute, Yuga Labs proposes that the Court award Yuga Labs (1) $7.5 million in attorneys' fees, (2) $200,000 in costs and expenses, and (3) $95,639 for expert fees incurred in connection with depositions. The fee compromise accounts for more than the total reasonable deduction represented by ***all of*** Defendants' fee objections, the costs and expenses reduction is less than 50% of the total Yuga Labs spent, and Defendants did not object to, and therefore concede, the amount owed for expert depositions. See Fed. R. Civ. P. 26(b)(4)(E)(i).[4]

Defendants' demands for deductions to unspecified time entries totaling $9,902,286.15 as supposedly "duplicative," "block bill," "travel," and other unquantified categories, are unwarranted. *Fox v. Vice*, 563 U.S. 826, 838 (2011) (The Court "need not, and indeed should not, become green-eyeshade accountants."). As Defendants previously acknowledged, courts reduce block-billed fees, if at all, by

---

[3] Should the Court find it necessary or helpful to review the records Yuga Labs timely provided Defendants, Yuga Labs offers to file them under seal.
[4] Yuga Labs reserves the right to seek all fees, costs, and expenses if Defendants' refusal to negotiate in good faith requires appointment of a special master.

20%, Dkt. 212 at 9, and as explained below Yuga Labs did not block bill.  However, even granting a draconian 50% deduction for those categories, ***$7,746,007.18 remains undisputed***.  Moreover, while courts reduce fees by "eliminating the unnecessary work" where there is alleged duplicative work, Defendants' failure to specify the supposedly offending time entries tacitly admits that their argument is unfounded.  Yuga Labs further responds as follows.

***First,*** Defendants repeatedly rejected Yuga Labs' offers to avoid this filing and compromise on fees, ignoring the Court's admonishment against turning this joint statement into a "second major litigation."  Dkt. 431 at 27.  Defendants instead insist that they should pay only ***3.6%*** of Yuga Labs' attorneys' fees after it received all the remedies it sought.  Defendants provide no explanation for this calculation, asking the Court to trust their arbitrary judgment.  Yet they have long been aware that this case dictated ***no less*** than $5 million of Yuga Labs' attorneys' fees, based on the Court's admonishment: "[I]f there's an exceptional case determination and we're talking about north of $5 million in attorney's fees . . . I hope your client in his artistic endeavors makes a lot of money so he can write a check for $5 million."  June 9, 2023 Pre-Trial Conf. ("PTC") at 46:20-24.  Put another way, Defendants propose that Yuga Labs should have spent $0 on costs/expenses, $0 on experts, and roughly 518 attorney hours.  This corresponds to roughly 32 hours per month, or 1.2 hours per docket entry.  Defendants' position is absurd — they agreed to pay $120,000 in fees for half of a single motion (which is not included in the disputed fees here), Dkt. 227, yet now argue it's wholly unreasonable to pay more than $455,172.24 ***for the entire case***.[5]

***Second***, Yuga Labs' overwhelming success in this matter is undisputable.  Yuga Labs received every remedy it sought at trial — primarily, an injunction that prevents Defendants from further harming Yuga Labs' tentpole BAYC Brand.  The value of that injunction is unquantifiable; it is the best means of stopping and abating

---

[5] Notably, Defendants also demanded over 90% reduction in fees for the Anti-SLAPP motion but ultimately agreed to pay over half of Yuga Labs' fees.

the irreparable harm Defendants caused to a multi-billion-dollar company's core brand. Yuga Labs also obtained disgorgement of ***all*** of Defendants' profits and ***maximum*** statutory damages. Yuga Labs successfully defended itself from Defendants' efforts to seek immaterial, burdensome, and invasive discovery based on unfounded counterclaims, which Yuga Labs defeated with its motions. Defendants' attempt to limit these victories diminishes their importance and value to Yuga Labs.

**Third**, Defendants do not challenge Fenwick's billing rates, which are thus presumptively reasonable.

**Fourth**, Defendants baselessly accuse Yuga Labs of inflating its attorneys' fees through "duplicative time entries" and "block billing," without identifying a single offending entry. In reality, more than 72% of Fenwick's billing narratives list only one task. And, as Defendants were well aware before raising this argument, those entries that contain multiple tasks are separated by time spent on each, eliminating any basis for this objection — e.g., "Prepare complaint against Rider Ripps (2.0); factual and legal research in support of same (1.2)." See *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). If some entries appear to have "duplication, it's *necessary* duplication" to dispose of Defendants' meritless re-litigation of the same arguments. *Moreno*, 534 F.3d at 1112; *see,* Dkt. 431 at 20.

Defendants' dispute of less than $200,000 of travel time is immaterial and they misrepresent their cases. For instance, *D'Lil rejected* Defendants' argument that travel time should be entirely excluded from the lodestar calculation. 2010 WL 11655476, at *6 (reducing travel time award by 50%). Even so, the facts of *D'Lil* are distinguishable: Yuga Labs did not block bill, and Mr. Ball is uniquely qualified to lead this case given his prior experience with NFTs, trademarks, and Yuga Labs.

**Fifth,** Defendants' "comparable" cases are inapposite. Defendants attempt to mislead the Court by comparing this case, stubbornly re-litigated and multiplied by Defendants, with cases ending in default judgment and requiring a minute fraction of the work needed here. See *Blumenthal Distrib., Inc.*, 2023 WL 2356713, at *10

(default judgment case with 367 fewer docket entries); see also MetaQuotes Ltd., 2023 WL 6194276 (255 fewer docket entries); see also, e.g., Jepson, 1994 WL 543226, at *4 (29-year-old case awarding enhanced damages on a single patent counterclaim, not entire case, where parties also stipulated to patent infringement and damages). Defendants cite no case involving a fee award for exceptional conduct following infringement of a multi-billion dollar company's tentpole brand.

**Sixth**, Defendants caused this litigation to be expensive. Dkt. 431 at 20. A litigant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [adversary] in response." Cataphora Inc. v. Parker, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012) (citation omitted). For example, Defendants deposed *ten* witnesses — the maximum allowed under the federal rules and double the five taken by Yuga Labs. Defendants tried everything — securities, fraud, licensing, invalidity — with the hope that some defense or counterclaim would shelter them from their scam. They failed. Indeed, Defendants' continued refusal to accept the reality of their litigation position increased the expense of this case:



**Seventh,** "[i]f a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings." Cabrales v. Cnty. of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991). Although Defendants' position is wrong, Yuga Labs

prevailed almost entirely in the discovery disputes in this case. And Yuga Labs' decision to drop its false advertising claim at the Court's suggestion does not warrant a reduction in fees.[6] See Hensley, 461 U.S. at 434–35 (1983). Indeed, Defendants clung to their affirmative defenses until the eve of trial, requiring Yuga Labs to prepare for them. See Dkt. 320-1 at 1-2; Dkt. 431 at 8 n.6.

**Eighth**, the Lanham Act does not cap attorneys' fees based on the monetary component of remedies obtained. See 15 U.S.C. § 1117(a). There is no evidence that Congress intended "that attorneys' fees be proportionate to the amount of damages" a victorious plaintiff is awarded. City of Riverside v. Rivera, 477 U.S. 561, 562 (1986); see also Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 34 (1st Cir. 2002) ("The cost of enforcing [trademark] rights may well be larger than the lost profits in any particular case.").

**Ninth,** while Defendants now falsely plead poverty (a claim their counsel refuses to substantiate), these irrelevant arguments do not warrant a reduction in fees. Defendants paid their counsel to repeatedly re-litigate rejected issues. Dkt. 431 at 20. It would be inequitable for Defendants' misconduct to deprive Yuga Labs of fees it spent responding to their tactics and would establish a precedent that undermines the deterrent purpose of awarding fees in exceptional cases.

**Finally,** Defendants unreasonably assert that costs recoverable under the Local Rules should not be reimbursed to Yuga Labs. See L.R. 54-3.10(a), (g) (copies, printing, and delivery of courtesy copies), 54-3.2 (research fees in connection with service). Regardless, Yuga Labs' non-taxable expenses are "[p]roperly included in an award of attorneys' fees." Ahanchian v. Xenon Pictures, Inc., 2008 WL 11411621, at *3 (C.D. Cal. Dec. 29, 2008) (Walter, J.) (citation omitted); see also Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 580 (9th Cir. 2010).

---

[6] Even so, Yuga Labs' fees specific to its false advertising claim total approximately $236,000 — an amount easily subsumed within the millions Yuga Labs is willing to forgo if it resolves the fee dispute on this joint submission.

| | | |
|---|---|---|
| 1 | Dated: November 20, 2023 | FENWICK & WEST LLP |
| 2 | | |
| 3 | | By: /s/ Eric Ball |
| 4 | | Eric Ball<br>Attorneys for Plaintiff |
| 5 | | YUGA LABS, INC. |
| 6 | Dated: November 20, 2023 | WILMER CUTLER PICKERING HALE & DORR LLP |
| 7 | | |
| 8 | | |
| 9 | | By: /s/ Louis W. Tompros |
| 10 | | Louis W. Tompros<br>Attorneys for Defendants<br>RYDER RIPPS and JEREMY CAHEN |

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Eric Ball attests that concurrence in the filing of this document has been obtained from Louis W. Tompros.

/s/ Eric Ball
Eric Ball