Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Yuga Labs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ryder Ripps, Jeremy Cahen, <br><br> Defendants. | Case No. 2:22-cv-04355-JFW-JEM <br><br> **MR. RIPPS AND MR. CAHEN'S SPECIFIC OBJECTIONS TO YUGA LABS INC.'S REQUEST FOR REASONABLE FEES AND COST** <br><br> Judge: Hon. John F. Walter |

**TABLE OF CONTENTS**

1.   Introduction ................................................................................................ 2

2.   Yuga Charged Hourly Rates That Exceed What Is Reasonable in
     California ................................................................................................... 4

3.   Yuga Improperly Seeks Reimbursement Of Duplicative Bills ........................... 6

4.   Yuga Improperly Inflated Its Bills By Block Billing ........................................ 8

5.   Yuga Improperly Seeks Reimbursement For Avoidable Travel Time ............... 9

6.   Yuga's Request For Fees And Costs Is Not Reasonable Given The Scope
     Of Litigation ........................................................................................... 10

7.   Yuga's Request For Fees And Costs Is Excessive Considering The
     Equities Of The Parties ............................................................................ 10

8.   Yuga Billed Unreasonable Hours for The Half-Day Trial In This Case .......... 11

9.   Yuga Billed Unreasonable Hours For Summary Judgment ............................. 14

10.  Yuga Billed Unreasonable Hours for Depositions and Took An
     Unreasonable Number of Depositions ........................................................ 14

11.  Yuga Billed Unreasonable Hours for Conducting Written Discovery ............. 15

12.  Yuga Improperly Seeks Reimbursement For Facially Irrelevant
     Subpoenas .............................................................................................. 16

13.  Yuga Improperly Seeks Reimbursement For The Deposition Of Ian
     Garner ................................................................................................... 18

14.  Yuga Improperly Seeks Reimbursement for The Deposition Of Jason
     Cline ...................................................................................................... 20

15.  Yuga Improperly Seeks Reimbursement for Its Frivolous Apex Witness
     Motion .................................................................................................... 21

16.  Yuga Improperly Seeks Reimbursement for Its Frivolous Motion For
     Sanctions ............................................................................................... 23

17.  Yuga Improperly Seeks Reimbursement for Yuga's Wrongful
     Designation of Ryan Hickman's Deposition Testimony As Confidential ......... 24

18.   Yuga Improperly Seeks Reimbursement for Its Improper Refusal to Produce the Lehman Settlement Materials............................................................25

19.   Yuga Requests Costs That Are Not Available for Reimbursement Under The Lanham Act ........................................................................................................26

20.   Yuga's Request for Expert Expenses Is Excessive ...........................................28

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                         **Page(s)**

*United States v. $28,000.00 in U.S. Currency*,
   802 F.3d 1100 (9th Cir. 2015) ............................................................................. 4

*3M Co. v. Kanbar*,
   No. C06-01225-JW-HRL, 2007 WL 2972921 (N.D. Cal. Oct. 10, 2007) .......................................................................................................................... 29

*AK Futures, LLC v. LCF Labs, Inc.*,
   No. 821CV02121JVSADSX, 2023 WL 2561729 (C.D. Cal. Feb. 2, 2023) ............................................................................................................................ 5

*American Optometric Society, Inc. v. American Board Of Optometry, Inc.*,
   No. 10-cv-03983-AHM-FFM, 2012 WL 6012861 (C.D. Cal. Dec. 3, 2012) .......................................................................................................................... 12

*Amusement Art, LLC v. Life is Beautiful, LLC*,
   No. 2:14-cv-08290-DDP-JPR, 2017 WL 2259672 (C.D. Cal. May 23, 2017) .......................................................................................................................... 14

*Arcona, Inc. v. Farmacy Beauty, LLC*,
   No. 217CV7058ODWJPRX, 2021 WL 2414856 (C.D. Cal. June 14, 2021) .......................................................................................................................... 27

*Bellagio Jewelry, Inc. v. Croton Watch Company, Inc.*,
   No. 06-cv-06672-ODW-RZx, 2008 WL 11339936 (C.D. Cal. Oct. 15, 2008) .......................................................................................................................... 12

*Bernal v. Paradigm Talent & Literary Agency*,
   No. 07-06445-SVW-PLAx, 2010 WL 6397561 (C.D. Cal. June 1, 2010) .......................................................................................................................... 15

*S.E.C. v. Berry*,
   No. C07-04431 RMW HRL, 2011 WL 2149088 (N.D. Cal. June 1, 2011) .......................................................................................................................... 28

*Blumenthal Distributing, Inc. v. Comoch Inc.*,
   No. 521CV00829FWSSHK, 2023 WL 2356713 (C.D. Cal. Jan. 24, 2023) .......................................................................................................................... 10

*Butler v. Homeservices Lending LLC*,
 No. 11-cv-02313-L (MDD), 2014 WL 5460447 (S.D. Cal. Oct. 27, 2014) .................................................................................16, 17, 21

*Campbell v. National Passenger Railroad Corp.*,
 718 F. Supp. 2d 1093 (N.D. Cal. 2010) ..............................................8

*Chalmers v. City of Los Angeles*,
 796 F.2d 1205 (9th Cir. 1986) ......................................................8, 18

*Christian Research Inst. v. Alnor*,
 165 Cal. App. 4th 1315 ..........................................................................8

*Cruz ex rel. Cruz v. Alhambra School District*,
 601 F. Supp. 2d 1183 (C.D. Cal. 2009) ......................................*passim*

*D'Lil v. Best W. Encina Lodge & Suites*,
 No. 02-cv-09506-DSF-VBKx, 2010 WL 11655476 (C.D. Cal. Apr. 13, 2010) ...........................................................................................9

*E.S. v. Conejo Valley Unified School District*,
 No. CV 17-2629-SS, 2019 WL 1598756 (C.D. Cal. Mar. 27, 2019)..................6

*Glass v. Sue*,
 No. CV 09-8570-RGK SHX, 2011 WL 561028 (C.D. Cal. Feb. 8, 2011) ...................................................................21, 23, 24, 26

*Gonzales v. Southern Wine & Spirits of America, Inc.*,
 2014 WL 1630674 (C.D. Cal. Apr. 24, 2014)......................................8

*Gonzalez v. City of Maywood*,
 729 F.3d 1196 (9th Cir. 2013) ..............................................................6

*Gopets Ltd. v. Hise*,
 2009 WL 412204 (C.D. Cal. Feb. 13, 2009) ......................................11

*Gutierrez v. City of Carson*,
 No. LA 10-cv-07627-JAK-CWx 2012 WL 13005846 (C.D. Cal. Sep. 14, 2012) .........................................................................................6

*Hansen Cold Storage Constuction v. Cold Systems, Inc.*,
 No. 2:19-CV-07617-SB-MAA, 2022 WL 1199271 (C.D. Cal. Feb. 11, 2022) ...................................................................................................27

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...................................................................................7, 10, 24

*Hicks v. Toys 'R' Us-Delaware, Inc.*,
    No. CV13-1302-DSF, 2014 WL 4670896 (C.D. Cal. Sept. 2, 2014) .................5

*HomeGoods, Inc. v. Papanicolaou*,
    No. CV 19-06912-CJC(PLAx), 2019 WL 7171541 (C.D. Cal. Dec. 4,
    2019) .................................................................................................................12

*Huhmann v. FedEx Corp.*,
    No.13-cv-00787-BAS(NLS), 2015 WL 6127198 (S.D. Cal. Oct. 16,
    2015) ...................................................................................................................8

*Jackson v. Gaspar*,
    No. 2:19-cv-10450-DOC, 2022 WL 2155975 (C.D. Cal. Feb. 24,
    2022) ...........................................................................................................10, 12

*Jadwin v. County of Kern*,
    767 F. Supp. 2d 1069 (E.D. Cal. 2011) ...........................................................14

*Jepson Inc. v. Makita USA Inc.*,
    90-cv-04312-GHK, 1994 WL 543226 (C.D. Cal. May 27, 1994) ...................12

*Langer v. Gozon*,
    No. CV199190PSGMAAX, 2021 WL 5923578 (C.D. Cal. Aug. 25,
    2021) ...................................................................................................................5

*Laub v. Horbaczewski*,
    No. CV 17-6210-JAK (KS), 2020 WL 10817257 (C.D. Cal. Nov. 23,
    2020) ...............................................................................................................4, 6

*MetaQuotes Ltd. v. MetaQuotes Software Corp.*,
    No. 8:22-CV-00462-SB-DFM, 2023 WL 6194276 (C.D. Cal. Aug. 4,
    2023) .........................................................................................................5, 10, 12

*Monaghan v. Telecom Italia Sparkle of North America, Inc.*,
    No. CV 13-00646-ABC-PLAx, 2014 WL 12639268 (C.D. Cal. Oct.
    21, 2014) ...........................................................................................................29

*Pocket Plus, L.L.C. v. Runner's High, LLC*,
    579 F. Supp. 3d 1082 (N.D. Iowa 2022) .........................................................17

*Rock River Communications, Inc. v. Universal Music Group*,
276 F.R.D. 633 (C.D. Cal. 2011)....................................................................28, 29

*Safeworks, LLC v. Teupen America, LLC*,
No. 08-cv-12197-TSZ, 2010 WL 3033711 (W.D. Wash. July 29,
2010) ...........................................................................................................11, 12

*TrafficSchool.com v. eDriver, Inc.*,
No. CV 06-7561 PA (CWX), 2012 WL 12949932 (C.D. Cal. May 3,
2012) ..................................................................................................21, 23, 25

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
619 F. Supp. 3d 970 (N.D. Cal. 2021).................................................................29

*Welch v. Metropolitan Life Insurance Co.*,
480 F.3d 942 (9th Cir. 2007) ...............................................................................8

*Zuniga v. W. Apartments*,
No. CV 13-04637-JFW-JCx, 2014 WL 6655997 (C.D. Cal. Nov. 24,
2014) ...............................................................................................................10

**Federal Statutes**

28 U.S.C. §§ 1821, 1920.............................................................................................26

**Other Authorities**

Fed. R. Civ. P. 26(b)(4)(E) ...............................................................................27, 28

Pursuant to the Special Master's December 15, 2023 Order Re Record Before the Special Master on Motion for Attorneys' Fees (Dkt. 442), Defendant Ryder Ripps and Defendant Jeremy Cahen (collectively, "Defendants") respectfully submit the following specific objections to Yuga Labs, Inc.'s ("Yuga") request for fees and costs.

On November 20, 2023, the parties filed a joint statement that includes Defendants' general objection to Yuga's facially unreasonable request for fees and costs.  Dkt. 435.  Defendants objected that Yuga's request of $7,500,000 in fees, $200,000 in costs, and $95,639 in expert fees for working 14,455.6 hours in a case that lasted one year and concluded with a half-day bench trail was unreasonable due to Yuga's excessive over-billing.  Defendants also objected to the request as being unreasonable as to the scope of litigation, equities between the parties, and improperly seeking reimbursement of cost not available to Yuga.  Defendants hereby incorporate all general objections raised in the November 20, 2023, joint statement and expressly reserve their right to appeal the determination of the award of any fees or costs for any reason raised in the joint statement.

Consistent with the Court's admonition that "a contested request for attorneys' fees 'should not result in a second major litigation'" (Dkt. 431 at 27), and given the extreme disproportionality of Yuga's requested fees ($7,500,000) on a case in which it sought damages of only $1,575,362.92, Defendants made their objections in summary form.  On December 15, 2023, Special Master Margaret M. Morrow issued an order authorizing the parties to augment the record with "any additional evidence" the parties deemed appropriate.  Dkt. 442 at 1.  The Special Master's order noted that "the manner in which the issue was joined in district court perhaps caused the parties to present their positions in somewhat more summary fashion than they would have had a formal attorneys' fees motion been filed" and noted that "more specific objections to the reasonableness of time billed" would be appropriate at this stage.  *Id.* at 1-2.  The Special Master's order also requires Yuga to "state whether it continues to seek $7,500,000 in attorneys' fees or another amount." *Id.* at 2.  To date, Yuga has not

made such a statement or otherwise provided any additional supporting evidence for its claimed fees or costs.  Defendants thus reserve their right to supplement or amend these objections once Yuga complies with the Special Mater's order.

Subject to the foregoing and without prejudice, Defendants raise additional objections as follows:

## 1.    Introduction

What began in earnest as an art project protesting racist and antisemitic imagery in the Bored Ape Yacht Club NFT collection led to this contentious trademark lawsuit.  *See* Dkt. 48 at 1 ("This lawsuit is an attempt to silence an artist who used his craft to call out a multi-billion-dollar company built on racist and neo-Nazi dog whistles.  Ryder Ripps used conceptual art to critique hateful imagery in the popular "Bored Ape Yacht Club" project—a commercially successful collection of "NFTs" sold by the plaintiff, Yuga Labs, Inc. ("Yuga").  When called out on their racism, Yuga sued Mr. Ripps not for defamation, but for trademark infringement.").  As Mr. Ripps explained in his trial testimony, the purpose behind the RR/BAYC project was "to increase awareness of Yuga's misconduct, including the research I had compiled on gordongoner.com, and on the true nature of NFTs which Yuga was misrepresenting to the public."  Dkt. 346 ¶ 71.  Mr. Ripps's message resonated with a large number of people on the internet, and led to a public backlash against Yuga.

Yuga, a four-billion dollar company fueled by its animosity towards Mr. Ripps and Mr. Cahen, retained a huge litigation team at an expensive firm to wage a year-long scorched earth litigation campaign against them.  In addition to aggressively pursuing discovery from Mr. Ripps and Mr. Cahen—which involved more than six requests for sanctions (*See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20), all of which were denied—Yuga also subpoenaed, harassed, and/or deposed many of their friends and acquaintances. As just one of the more egregious examples, Yuga ruthlessly harassed Mr. Ripps's

father, Rodney Ripps, despite his repeated explanations (including a sworn declaration) that he had no additional relevant information.

Although Yuga moved for and ultimately obtained summary judgment, it continued to litigate the case in an unreasonable way.  Most significantly, although Yuga initially submitted expert reports estimating the total damages at less than two million dollars, Yuga increased its damages demand by more than 400 times (to nearly $800 million dollars) just weeks before the jury trial was set to occur.  Dkt. 287-10 at 4 (asserting damages of $797,183,838 on June 8).  Then, only a week later, Yuga withdrew all of its demands for any "legal remedies," and requested a bench trial on equitable issues only.  Dkt. 315-1 at 2 (dropping all legal remedies including actual damages on June 15).  The court conducted a half-day bench trial on July 31, 2023, and rendered its decision resulting in recovery of $1,575,362.92.

If, as Yuga suggested in its motion for summary judgment, this case was "clear and incontrovertible," the massive fees that Yuga racked up during its scorched earth campaign were totally unnecessary and are manifestly unreasonable.  Blinded by its animosity and desire to hurt Mr. Ripps and Mr. Cahen, Yuga never meaningfully sought to resolve the case.  Although the parties discussed settlement and participated in multiple mediations, Yuga prevented any meaningful dialogue because it continually demanded that Mr. Ripps and Mr. Cahen recant their criticisms and agree to a non-disparagement clause—a condition which the Court described as "frankly unreasonable" (Nikogosyan Decl. Ex. 23).  Because of their deeply held beliefs that Yuga and its founders were spreading a message of hatred, Mr. Ripps and Mr. Cahen could not agree to such a condition.

In light of Yuga's aggressive tactics and failure to engage in good faith about settlement, its request for nearly $7.8 million in attorneys' fees and costs should be substantially reduced.

**2.      Yuga Charged Hourly Rates That Exceed What Is Reasonable in California**

The rates that Yuga seeks for the work performed by its attorneys and paralegals are not reasonable and the amount of fees to be awarded should, therefore, be reduced.  The second component of the lodestar analysis requires a determination of a reasonable hourly rate "in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015) (internal quotations omitted) (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.2008)). The burden of establishing the rates requested are reasonable is on the "party seeking attorneys' fees" who "must provide satisfactory evidence ... that the requested rates are in line with those prevailing in the community." *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 10817257, at *4 (C.D. Cal. Nov. 23, 2020) (internal quotations omitted) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)).  Yuga has not met that burden.  Further, "[w]hen applying the lodestar method to determine a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Laub*, 2020 WL 10817257, at *5 (internal quotations omitted) (citing *Camacho*, 523 F.3d at 979 (9th Cir. 2008)).  Here, therefore, the reasonable rate in question is for attorneys working in the Central District of California, or Los Angeles.

The hourly rates that Yuga seeks compensation for here are well beyond those typically sought in Los Angeles and are, therefore, not reasonable.  For example, for 2022, Yuga seeks payments for hourly rates of $1,290 for a partner, $1,135 for a Counsel, $1,030 for an Associate with five years of experience, $780 for an Associate with one year of experience, and $515 for a paralegal.  These rates are incredibly high compared to those charged by other attorneys practicing in the district.  The 2022 Real Rate Report is a trusted source for determining the reasonableness of rates and

provides several data points that are useful for comparison here,[1] including that the median hourly rate for a litigation partner in Los Angeles was $725 (considerably less than the $1,290 sought here) and $615 for an associate.  Nikogosyan Decl. Ex. 2, at 16.  It also includes adjustments for years of experience, finding that an associate with 7 or more years of experience (two more years of experience than Tony Fares had, Dkt. 435-1 at 1), has a median billable rate in Los Angeles of $550 (almost half the $1,030 rate Yuga lists for Mr. Fares).  Additionally, the report states that the median rate for paralegals nationally is $225 (again, more than half as much as Yuga's $515 for Jeremy Ra, Dkt. 435-1 at 1).  Nikogosyan Decl. Ex. 2, at 9.

These rates that Yuga charges are also significantly higher than those deemed reasonable in other similar cases.  *See MetaQuotes Ltd. v. MetaQuotes Software Corp.*, No. 8:22-CV-00462-SB-DFM, 2023 WL 6194276, at *3 (C.D. Cal. Aug. 4, 2023) (trademark case with bench trial where the court found that hourly rates of $700 and $625 for two partners and $450 and $550 for two associates were reasonable); *AK Futures, LLC v. LCF Labs, Inc.*, No. 821CV02121JVSADSX, 2023 WL 2561729, at *4 (C.D. Cal. Feb. 2, 2023) (finding hourly rates of $350 for two partners with twelve and thirty-five years of experience was reasonable "[b]ased on [the] Court's knowledge of the prevailing rates in the community and over similar matters involving copyright and trademark infringement…").

Finally, Yuga has failed to provide sufficient details about the timekeepers they seek fees for.  Their Exhibit 1 includes a chart with only the timekeeper's name and

---

[1] The Real Rate Report is often used "as a useful guidepost to assess the reasonableness of these hourly rates in the Central District" given the report "identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices…" *Langer v. Gozon,* No. CV199190PSGMAAX, 2021 WL 5923578, at *4 (C.D. Cal. Aug. 25, 2021); *see also Hicks v. Toys 'R' Us-Delaware, Inc.,* No. CV13-1302-DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) (stating that the Real Rate Report is "a much better reflection of true market rates than self-reported rates...").

their hourly rate, but does not include information on their position at the time, their years of experience, or any unique skills they have.  Dkt. 435-1.  Defendants had to rely on publicly available information to try to determine positions and years of experience.  But this is not Defendants' burden.  In determining if the rates are reasonable, the court needs to consider specific information about the individuals, including their skill and experience, and it is the moving party's burden to provide such information.  *Laub,* 2020 WL 10817257, at *4 (citing *Blum,* 465 U.S. at 895-96 n. 11 (1984) (holding that the burden is on the moving party); *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1206 (9th Cir. 2013) (requiring consideration of "varied levels of skill, experience, and reputation" of each person).  Yuga here has failed to do so.

Yuga seeks hourly rates that are not reasonable for the Central District of California and they have not met their burden to provide information explaining why they are reasonable.  Accordingly, the rates used should be cut considerably.

**3.     Yuga Improperly Seeks Reimbursement Of Duplicative Bills**

Yuga has drastically inflated its bills by engaging in excessive duplicative billing.  In total, Yuga requests reimbursement for 3,449.2 hours of duplicative time entries (a total of 2,273 duplicate entries).  Nikogosyan Decl. Ex. 1, tab 2, row 2,275.  But Yuga bears the burden to prove that these entries were not improper or unnecessary work.  The record that Yuga has provided, however, provides no details about these entries other than their duplicative descriptions.  As Courts in this district have recognized, Yuga cannot recover fees for engaging in improper, duplicative work.  *See E.S. v. Conejo Valley Unified School Dist.,* No. CV 17-2629-SS, 2019 WL 1598756, at *11 (C.D. Cal. Mar. 27, 2019) (cutting "a third of total fees requested … to approximate fees incurred in collecting improper or duplicative evidence."); *Gutierrez v. City of Carson,* No. LA 10-cv-07627-JAK-CWx, 2012 WL 13005846, at *7 (C.D. Cal. Sep. 14, 2012) (cutting 20% due "work that was duplicative and unnecessary").

A closer look at Yuga's bills reveals how its counsels' billing practices artificially increased hours, resulting in unreasonable fees.  For example, Yuga has 12 duplicate billing entries for "Review and analyze chat messages in defendants' initial document production" that were all submitted from the same attorney, Katie Hauh, and billed a total of 64.8 hours for these duplicate entries.  Nikogosyan Decl. Ex. 1, tab 2, rows 1,073-1,084.[2]  Another attorney, Ethan Thomas, submitted 34 duplicate bills for "research and assess factual developments, including social media and news updates" or "research and assess factual developments" for a total of 16.1 hours.  *Id.* at tab 2, rows 973-1,006.   Mr. Thomas similarly submitted six duplicate bills for "Analyze and revise responses to Defendants' trial exhibit objections" for a total of 25.2 hours.  *Id.* at tab 2, rows 6-11.  Another attorney, Tony Fares, submitted 12 duplicate entries for "Discuss litigation strategy with Fenwick attorneys" for a total of 10.2 hours and another 73 duplicate entries for "Review and analyze documents in preparation for trial" amounting to another 57.8 hours of duplicative work.  *Id.* at tab 2, rows 263-274, 1103-1175.  Mr. Fares and Mr. Thomas similarly submitted 13 duplicate bills for "Draft outline of opposition to motion to dismiss" or "Outline opposition to motion to strike/dismiss" and billed a total of 24.6 hours for these duplicate entries.  *Id.* at tab 2, rows 445-453, 692-695.

These bills are facially improper.  Yuga has provided no justification for why attorneys, for example, should need to "research and assess factual developments" 34 separate times or submit up to 73 duplicate times entries for "analyzing documents in preparation for trial"—entries that all claim to be doing the same task over and over again.  Yuga's attempt to recover for these billing entries is a failure in its obligation to exercise "billing judgment," i.e., to exclude from their fee request "hours that are

---

[2] Since Yuga did not file its time entries with the Court, a copy of Yuga's Attorneys' Fees spreadsheet with tabs outlining topic specific totals, duplicative entries, block billing, and travel hours calculated by Defendants' counsel is Exhibit 1 and has been submitted to the Special Master directly by email.

excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Yuga should not be allowed to recover these improper billing entries because "padding in the form of inefficient or duplicative efforts is not subject to compensation." *Gonzales v. Southern Wine & Spirits of America, Inc.*, 2014 WL 1630674, at *3 (C.D. Cal. Apr. 24, 2014); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("Those hours may be reduced by the court where documentation of the hours … are duplicated; if the hours expended are deemed excessive or otherwise unnecessary."). Accordingly, because Yuga's duplicative entries are approximately 24% of Yuga's total hours billed, a 24% reduction to Yuga's requested award is warranted.

**4.    Yuga Improperly Inflated Its Bills By Block Billing**

After removing duplicate bills, there remain another 7,406.7 hours in "block bill" format that also unnecessarily inflates the fees that Yuga seeks to reimburse. Nikogosyan Decl. Ex. 1, tab 3, row 1,909.

Block billing is the practice of billing multiple discrete tasks in one billing entry. *Campbell v. National Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010). Courts look dimly on block billing because it inflates fee awards by as much as 30%. Both California state courts and courts in the Ninth Circuit often reduce over 20% on block billed hours because of the inflationary aspect of those awards. *See Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (affirming district court's ability to reduce based on block billing, 20% reduction was justified); *Huhmann v. FedEx Corp.*, No.13-cv-00787-BAS(NLS) 2015 WL 6127198 at *8 (S.D. Cal. Oct. 16, 2015) (applying 20% reduction on block billed hours), *Christian Research Inst.*, 165 Cal. App. 4th at 1329 (approving practice of broad reduction for block billing).

Yuga's block billing is endemic, often including up to seven discrete tasks in a single entry and billing up to 16 hours for a single block bill. This practice pervaded throughout the Yuga litigation team. Yuga's lead counsel, Eric Ball, alone block

billed 1809.8 hours and his co-counsel Kimberly Culp block billed another 1272.5 hours.  Nikogosyan Decl. Ex. 1, tab 3.  Nearly every attorney on the Yuga team engaged in this improper billing practice, including Molly Melcher, Todd Gregorian, Jeremy Ra, Ryan Kwock, Katie Hauh, Zack Kalinowski, Keysha Alexander, Mary Griffin, and Sofiya Andreyeva.  *Id.*

As a result of these poor billing practices, Yuga is now seeking reimbursement for its decision to retain an over-sized litigation team that systematically hyper-inflated bills.  Those inflated expenses are improper and should not be passed onto the Defendants, warranting another 20 to 30% across the board reduction for improperly block billing a total of 7,406.7 hours.

## 5.    Yuga Improperly Seeks Reimbursement For Avoidable Travel Time

Yuga seeks reimbursement for 166.2 hours for travel time.[3]  Nikogosyan Decl. Ex. 1, tab 4, row 50.  It would be improper to pass these costs onto Defendants because they were avoidable expenses.  For example, throughout this case, Defendants repeatedly asked Yuga to consent to remote depositions to cut unnecessary costs. Yuga rejected Defendants requests (except with its own experts) and forced the parties to take flights across the state and across the country to attend depositions that did not need to be in person.  This was all an apparent tactic by Yuga, a multi-billion dollar corporation, to raise the costs of litigation for two individual defendants.  Courts in this jurisdiction decline to award these kinds of travel expenses where, as here,

---

[3] To determine how many hours Yuga was billed for various tasks, Defendants engaged in a good faith effort to tally the invoice entries provided by Fenwick and West by subject matter, duplicate entries, block billing, and travel hours. Unfortunately, Fenwick's problematic billing practices (block billing, vague time entries) made this task challenging and a precise tally impossible.  For example, because Fenwick frequently blocked together bills for numerous tasks and used vague descriptions, it was often impossible to know what specific motion, deposition, or other task was being worked on.  For example, one attorney's entries included such vague descriptions as "Review and analyze evidence," "Strategize regarding litigation evidence," or "Strategize re discovery."  Nikogosyan Decl. Ex. 1, tab 1, rows 176, 299, and 476.

traveling could have been avoided.  *See D'Lil v. Best W. Encina Lodge & Suites*, No. 02-cv-09506-DSF-VBKx, 2010 WL 11655476, at *6 (C.D. Cal. Apr. 13, 2010); *Zuniga v. W. Apartments*, No. CV 13-04637-JFW-JCx, 2014 WL 6655997, at *4 (C.D. Cal. Nov. 24, 2014).

**6.      Yuga's Request For Fees And Costs Is Not Reasonable Given The Scope Of Litigation**

Yuga seeks $7,500,000 in fees (plus costs) that total almost five times the awarded remedy in this case ($1,575,362.92) and they are, therefore, unreasonable. The Supreme Court has explained that "the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Jackson v. Gaspar*, No. 2:19-CV-10450-DOC-E, 2022 WL 2155975, at *5, 8 (C.D. Cal. Feb. 24, 2022) (citing *Hensley*, 461 U.S. at 435-36) (holding that the court "may adjust the fee award based on the success of the plaintiff" and ultimately decided to "reduce the lodestar to account for [the plaintiff's] limited success.").

In other trademark cases where there was an injunction and damages totaling around a million dollars, the attorney's fees and costs awarded were significantly lower.  *See Blumenthal Distrib., Inc. v. Comoch Inc.,* No. 521CV00829FWSSHK, 2023 WL 2356713, at *10 (C.D. Cal. Jan. 24, 2023) (awarding $28,541.46 in attorney's fees where there was disgorgement in the amount of $1,247,072); *MetaQuotes Ltd. v. MetaQuotes Software Corp.,* No. 8:22-CV-00462-SB-DFM, 2023 WL 6194276, at *4, 1 (C.D. Cal. Aug. 4, 2023) (awarding $384,352.25 in attorney's fees where the court awarded $836,704.75 in treble profits and actual damages).  The damages awarded here are a small fraction of what Yuga is now seeking in attorney's fees and the Court should, therefore, reduce the award to ensure that it has a reasonable relationship to the result obtained.

**7.      Yuga's Request For Fees And Costs Is Excessive Considering The Equities**

1   **Of The Parties**

2        Fee awards under § 1117 are commonly limited in equity to account for a

3   party's financial means and the extent of remedies assessed.  *See Gopets Ltd. v. Hise,*

4   *2009 WL 412204, at \*3 (C.D. Cal. Feb. 13, 2009); Safeworks, LLC v. Teupen*

5   *America, LLC, 2010 WL 3033711, at \*7 (W.D. Wash. July 29, 2010).*  Here,

6   Defendants are two individuals that do not have the same financial resources as Yuga,

7   a self-proclaimed multi-billion-dollar company.

8        Several courts have considered the nature of the parties when determining

9   which sum would constitute a reasonable and equitable attorneys' fee award.  In

10  *GoPets*, the court looked to defendants' "limited means" and "comparative lack of

11  sophistication" when deciding to reduce the fees by 40 percent.  *Gopets Ltd. v. Hise,*

12  *2009 WL 412204, at \*3 (C.D. Cal. Feb. 13, 2009).*  Similarly, in *Safeworks,* the court

13  considered that the defendants had "limited means to pay a judgement of fees" and

14  reduced the fees amount.  *Safeworks, LLC v. Teupen America, LLC, 2010 WL*

15  *3033711, at \*7 (W.D. Wash. July 29, 2010).*  Here, a multi-billion-dollar company

16  has requested that two individuals be ordered to pay $7,500,000 in attorneys' fees and

17  costs on top of a judgment for $1,575,362.92.  Defendants lack the ability to pay such

18  an incredible sum, and their lack of resources would create additional burdens on the

19  Court as Yuga seeks to enforce a judgment including this amount.  Equitable

20  considerations, and the positions of the parties, thus counsel a reduction of Yuga's

21  requested fees and costs.

22  **8.   Yuga Billed Unreasonable Hours for The Half-Day Trial In This Case**

23       Yuga billed roughly 6,200 hours (and more than $5 million in attorneys' fees)

24  associated with the July 31, 2023, trial, which lasted for half a day.  Nikogosyan Decl.

25  Ex. 1, tab 1, row 2.  These fees include pre-trial motions and preparation, the trial

26

27

28

itself, and post-trial filings.[4]  That enormous number is facially unreasonable in light of the myriad cases finding that a fraction of those hours would be reasonable for *an entire case*, much less a half-day bench trial.  *Jepson Inc. v. Makita USA Inc*., 90-cv-04312-GHK, 1994 WL 543226, at*4 (C.D. Cal. May 27, 1994) (686.3 hours was reasonable for a trademark case that lasted two years and concluded with a half-day bench trial.); *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, No. 8:22-cv-00462-SB-DFM, 2023 WL 6194276, at *3 (C.D. Cal. Aug. 4, 2023) (awarding $384,525.25 in fees for bench trial trademark case).  *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, No. 8:22-cv-00462-SB-DFM, 2023 WL 6194276, at *3 (C.D. Cal. Aug. 4, 2023) (awarding $384,525.25 in fees in a trademark case involving a one-day bench trial); *Bellagio Jewelry, Inc. v. Croton Watch Co., Inc.*, No. 06-cv-06672-ODW-RZx, 2008 WL 11339936, at *4 (C.D. Cal. Oct. 15, 2008) (awarding $464,128.57 in a trademark case that involved litigation misconduct, willfulness, and a six-day bench trial); *Jackson v. Gaspar*, No. 2:19-cv-10450-DOC, 2022 WL 2155975, at *2 (C.D. Cal. Feb. 24, 2022) (awarding $114,862.42 in a trademark case that had a two-day bench trial on damages); *Safeworks, LLC v. Teupen America, LLC*, No. 08-cv-12197-TSZ, 2010 WL 3033711, at *7 (W.D. Wash. July 29, 2010) (awarding $175,433.21 in a trademark case involving a three-day bench trial); *American Optometric Soc., Inc. v. American Bd. Of Optometry, Inc.*, No. 10-cv-03983-AHM-FFM, 2012 WL 6012861, at *6 (C.D. Cal. Dec. 3, 2012) (awarding $462,508 in a trademark case involving a three-day bench trial); *HomeGoods, Inc. v. Papanicolaou*, No. CV 19-06912-CJC(PLAx), 2019 WL 7171541, at *8 (C.D. Cal. Dec. 4, 2019) (holding that is was reasonable for HomeGoods' attorneys to bill a total of 85.4 hours over the five months they spent investigating and litigating this case).

---

[4] By Defendant's count, there are more than 2,100 entries totaling 6,276.6 hours that are associated with trial preparation, the trial itself, and post-trial tasks.  Even if the category is strictly limited to those time entries that include the word trial, the total still comes to 3,431.5 hours.

1    Yuga's requested figure is more unreasonable still in light of Yuga's own
2  course of conduct leading up to the trial.  By way of background, the parties were
3  originally set to conduct a multi-day jury trial on the issue of damages on July 7,
4  2023.  Approximately a month before the trial, on June 8, 2023, Yuga served amended
5  disclosures from its damages expert, suggesting that the total amount of damages had
6  increased from a maximum of $1,792,704 to "up to $797,183,838," a more than 400
7  fold increase.  *See* Dkt. 287-10, at 3-4.  One week later, Yuga inexplicably withdrew
8  its demand for legal damages and for a jury trial, and requested a bench trial as to
9  equitable and statutory damages only.  *See* Dkt. 315-1.  The Court thereafter
10  scheduled a half-day trial for July 31, 2023.  Yuga's last-second decision to drop its
11  legal damages both extended the duration of the case by nearly a month and rendered
12  meaningless countless hours of attorney and expert witness time spent litigating those
13  issues.  For instance, Yuga's bills include more than 400 hours of time entries relating
14  to jury instructions and the verdict form, which, due to Yuga's own actions, were
15  never used.  Likewise, Yuga's time entries reflect that as early as May 8, 2023, Yuga
16  was already preparing testimony outlines and meeting with its experts to prepare for
17  their trial testimony.  Nikogosyan Decl. Ex. 1, *see e.g.,* tab 1, row 5,013.  Given the
18  significant shift in issues following Yuga's late withdrawal of all legal remedies,
19  much of that time and effort was wasted.
20    Yuga's conduct during settlement negotiations also unnecessarily prevented the
21  parties from reaching a resolution of the case.  Up until just days before trial, Yuga's
22  settlement demand included conditions that were unreasonable such as a non-
23  disparagement clause that would prevent Defendants from ever criticizing Yuga.
24  Nikogosyan Decl. Ex. 23 at 10:15-11:13.  In fact, the Court itself noted during the
25  pretrial conference, Yuga's demand for a non-disparagement clause was "a condition
26  that is quite frankly unreasonable."  Nikogosyan Decl. Ex. 23 at 11:11-12.  Had Yuga
27  offered terms that were consistent with the relief it could have obtained at the trial, the
28  parties would likely have been able to resolve the litigation without any trial at all.

**9.    Yuga Billed Unreasonable Hours For Summary Judgment**

Yuga unreasonably seeks reimbursement for work related to its Motion for Summary Judgment.  Starting with 13.1 hours of legal research by a junior associate (Katie Hauh) regarding the basic requirements for summary judgment in November 2022 (*see* Nikogosyan Decl. Ex. 1, tab 1, rows 1262, 1308) and continuing through the filing of its briefs in March and April of 2023, *nine* Fenwick attorneys spent over 1,000 hours working on the 22 page motion (45 hours *per page*).  Nikogosyan Decl. Ex. 1, tab 1, row 1.  Again, that number of hours is facially unreasonable and should be rejected outright under the precedents cited above.

Yuga's motion also raised a number of issues on which Yuga was unsuccessful. For instance, although Yuga's summary judgment motion sought a finding that this was an exceptional case, that aspect of its motion was denied.  Dkt 225 at 13. Likewise, although Yuga sought a summary judgment that it was entitled to the maximum amount of statutory damages, a request that was denied as well.  *Id.* at 15.

**10.   Yuga Billed Unreasonable Hours for Depositions and Took An Unreasonable Number of Depositions**

Yuga seeks reimbursement for more than 1,300 hours (and more than a million dollars) spent preparing for and taking or defending 15 depositions (many of which did not last a full day).  Nikogosyan Decl. Ex. 1, tab 1, row 3.  That figure—which represents more than 85 hours per deposition, is facially unreasonable.  Courts in this district have held that even 46.2 hours for a deposition is unreasonable.  *Amusement Art, LLC v. Life is Beautiful, LLC*, No. 2:14-cv-08290-DDP-JPR, 2017 WL 2259672, at *7 (C.D. Cal. May 23, 2017)* (cutting 26.2 hours from 46.2 hours of bills for a single deposition).  Yuga's total request to reimburse over 1,300 hours is also indefensible.  For example, in *Jadwin*, the court reduced the requested award and held that 317.7 hours was reasonable for ***forty*** depositions (*e.g.* approximately 8 hours per deposition).  *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1112 (E.D. Cal. 2011).

Yuga's documents confirm that its attorneys have been excessively inflating their bills for unnecessary or redundant tasks. For example, three Fenwick lawyers spent more than 100 hours between November 11, 2022 and December 7, 2022 *just preparing* for the deposition of one third party witness, Mr. Ryan Hickman.[5] Nikogosyan Decl. Ex. 1, *see e.g.,* tab 1, rows 1,570 and 1,577. Similarly, six Fenwick lawyers also spent more than 160 hours preparing for the deposition of Mr. Ripps. Nikogosyan Decl. Ex. 1, *see e.g.,* tab 1, rows, 1,631, 1,683, and 1,867. There is simply no justification for multiple lawyers spending nearly twenty times more hours preparing for a deposition than actually taking a deposition. Much of the billed time appears to have been wasteful and duplicative. For instance, Tony Fares billed more than ten hours across four days for "Prepare exhibits for Ripps and Cahen Depositions" as well as six hours "prepar[ing] for and attend[ing]" a meeting to discuss preparation for those depositions. Nikogosyan Decl. Ex. 1 at rows 2337, 2389, 2421, 2446, 2468. Yuga's unreasonable deposition expenditures should be significantly reduced.

## 11.   Yuga Billed Unreasonable Hours for Conducting Written Discovery

Yuga seeks reimbursement for over 3,300 hours and three million dollars in fees relating to written discovery (i.e. not involving depositions). Nikogosyan Decl. Ex. 1, tab 1, row 4. Again, that staggering figure is facially unreasonable in light of other fee awards in similar cases. For example, the *Bernal* case was resolved at summary judgment after the parties had completed "extensive written discovery." *Bernal v. Paradigm Talent & Literary Agency*, No. 07-06445-SVW-PLAx, 2010 WL 6397561, at *7 (C.D. Cal. June 1, 2010). The court held that the lodestar amount for the entire case was $218,252.20 for 612 hours of work. *Id*. Yuga's hours for written

---

[5] Indeed, there are more than 48 hours of time entries that contain the terms "Hickman" and "Outline. Nikogosyan Decl. Ex. 1, *see e.g.,* tab 1, rows 1,455 and 1,490.

discovery only is more than five times greater than the total hours found to be reasonable for the full case in *Bernal*.

A number of Yuga's entries stand out as particularly unreasonable. For instance, attorney Tony Fares billed nearly **two hundred hours** for "strategiz[ing]" on various discovery tasks, including multi-hour entries for tasks as vague as "strategize re discovery" and "strategize re legal claims." *See e.g.,* Nikogosyan Decl. Ex. 1, tab 1, rows 958, 965, 975, 986, 999, 1016, 1027, 1034, 1251, and 1255. Likewise, Yuga seeks reimbursement for nearly *eighty* hours billed by attorney Katie Hauh for reviewing and analyzing chat messages in Defendants' production, including multiple entries of over ten hours per day. *See* Nikogosyan Decl. Ex. 1, tab 1, rows 1487, 1505, 1517, 1521, 1526, 1533, 1538, 1591, 1614, 1636, 1649, 1692, 1716, and 1724.

Yuga also spent hundreds of hours drafting multiple motions to compel and for sanctions. For example, Yuga asked the Court to impose sanctions on Defendants **six times**. *See* Dkt. 98-1 at 4; Dkt. 109; Dkt. 113 at 9; Dkt. 116 at 6-8; Dkt. 122 at 4-5; Dkt. 198 at 4; Dkt. 210 at 18-20. Every request was denied. Defendants should not have to pay for the hundreds of hours Yuga spent needlessly drafting those unsuccessful motions.

**12.    Yuga Improperly Seeks Reimbursement For Facially Irrelevant Subpoenas**

Yuga cannot recover fees associated frivolous subpoenas that Yuga issued in connection with this case. *See Butler v. Homeservices Lending LLC*, No. 11-cv-02313-L (MDD), 2014 WL 5460447, at *4 (S.D. Cal. Oct. 27, 2014) (refusing to award fees associated with two motions that were frivolous). Yuga served at least eighteen facially irrelevant subpoenas in this action (racking up 50.8 hours and $50,120.90 in bills). Nikogosyan Decl. Exs. 5-22. These subpoenas procured no useful discovery and, apparently, were used to harass anyone that was in any way associated with the Defendants.

For example, Yuga subpoenaed Mr. Ripps's 72-year-old father, Rodney Ripps. Nikogosyan Decl. Ex. 22. During the course of this litigation, a Yuga employee

threatened the life of Mr. Ripps's father (ultimately forcing Mr. Ripps's father to file a police report).  *See* Ripps Depo. 181:15-182:3 ("He said, 'You and your son should die.'  You said that.  And my dad is … freaked out, you know … he really is scared, you know … You keep … harassing my family[.]").  Dkt. 348 at 13.  Yuga's counsel initially brushed off the issue, then later conceded that a threat did in fact occur.  Dkt. 97 at 4.  But Yuga's harassment of Mr. Ripps's father continued, including serving a facially invalid subpoena on him seeking to compel his trial attendance (notwithstanding his complete lack of relevance to the case).  Nikogosyan Decl. Ex. 22.  Yuga at no point attempted to cure the defects in the invalid subpoena and never attempted to call Rodney Ripps at trial.

Yuga also lobbed discovery at several people on Twitter whose sole relevance was apparently having "liked" tweets concerning the RR/BAYC project, Defendants' personal accountants, Mr. Ripps's gallerist, Mr. Ripps's general assistant (who was employed for only one-week), and several individuals that Defendants had never met.  This list of bystanders that Yuga targeted includes Rochelle Conroy Booth, Yoram Dor, Lindsay Howard, Jason Williams, Magdalena Sawon, Jason Cline, Raymond Efthimiou, Claudia Krinke, Maxwell John Gail, Mellissa Beth Sconyers, Michael Mathews, and Phillip Krzankowski.  Nikogosyan Decl. Exs. 5-12, 17-21.  Not a single subpoena associated with these third parties procured any evidence that Yuga ever used either at summary judgment or at trial.

The law is clear that Yuga cannot recover fees and costs for frivolous work that was "unreasonably, unnecessarily, or inefficiently devoted to the case."  *Cruz ex rel. Cruz v. Alhambra Sch. Dist.,* 601 F. Supp. 2d 1183, 1191 (C.D. Cal. 2009) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983)); *see also Butler*, 2014 WL 5460447, at *4 (declining recovery for two frivolous motions); *Pocket Plus, L.L.C. v. Runner's High, LLC*, 579 F. Supp. 3d 1082, 1093 (N.D. Iowa 2022), *aff'd sub nom. Pocket Plus, LLC v. Pike Brands, LLC,* 53 F.4th 425 (8th Cir. 2022) (awarding 25% of total requested award due the prevailing party's own misconduct); *Chalmers v. City of*

1  *Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("Those hours may be reduced by
2  the court where … the hours expended are deemed excessive or otherwise
3  unnecessary.").

4      Accordingly, Yuga should bear the fees and costs associated with its decision to
5  serve frivolous subpoenas on over a dozen third parties because those subpoenas
6  served no legitimate purpose in this litigation and were thus unreasonable.

7  **13.  Yuga Improperly Seeks Reimbursement For The Deposition Of Ian**
8  **Garner**

9      Yuga also cannot recover fees associated with the deposition of Ian Garner
10 (totaling $41,973.94) because the deposition was wholly unnecessary for this case and
11 appears to have been taken primarily for the purpose of harming a third party that had
12 a friendly association with the Defendants. *See Chalmers v. City of Los Angeles*, 796
13 F.2d 1205, 1210 (9th Cir. 1986) ("Those hours may be reduced by the court where …
14 the hours expended are deemed excessive or otherwise unnecessary."); *see*
15 Nikogosyan Decl. Ex. 1, tab 1, row 8.

16      Ian Garner was Defendant Ryder Ripps's temporary general assistant for one
17 week and performed tasks such as getting coffee, running errands, and assisting Mr.
18 Ripps with tasks on his computer.  Yuga deposed Mr. Garner for an entire day and
19 procured no useful testimony.  Mr. Garner's limited engagement with the Defendants
20 (which Yuga was aware of before the deposition) meant that he was unable to answer
21 many of the question that Yuga raised.   During the deposition, Yuga repeatedly asked
22 question on topics which Mr. Garner had no knowledge—answering "I don't know"
23 to 183 questions and "I don't recall" to 171 questions.  Moreover, Mr. Garner
24 repeatedly identified during his deposition other people that would be able to answer
25 Yuga's questions, such as Mr. Ripps or the developers of the RR/BAYC NFT project.
26 Despite this, Yuga pressed on hour after hour in what appeared to be an improper
27 intimidation strategy.

28

1   Mr. Garner also explained at his deposition how he was surprised at Yuga's

2   decision to depose him given that he had negligible relevance to the issues in the case.

3   He testified:

4

5   Q.   When did you first find out that you were going to have to testify
         for a deposition?

6

7   A.   I think on – when I was served.  I think it was the 8th.

8   Q.   Were you surprised to discover that you were going to have to sit
         for a deposition?

9

10  A.   Yes.

11  Q.   Why were you surprised?

12

13  A.   **Because I don't feel like I'm that involved in this.**

14  Nikogosyan Decl. Ex. 4 at 188:18-189 (emphasis added).  Mr. Garner then further

15  explained, "I feel like I'm being pulled into a lot into this case that I'm not relevant

16  in" and also confirmed that he found it strange that Yuga would go through all the

17  time and expense to take his deposition.  Nikogosyan Decl. Ex. 4 at 189:23-190:6.

18  Mr. Garner described Yuga's behavior as "a little ridiculous, **quite predatory,**

19  **honestly**" (Nikogosyan Decl. Ex. 4 at 190:16-17 (emphasis added)) and confirmed

20  that he believed Yuga to be harassing him:

21

22  Q.   Do you think it's fair that Yuga has chosen to take your deposition?

23  A.   No.

24  Q.   Why not?

25

26  A.   **I don't think I'm that relevant in this case.**

27  Q.   Do you feel like Yuga is using this deposition to harass you?

28

A. **Yes.**

Garner Tr. 190:18-191:1 (emphasis added).   And Mr. Garner also commented on
Yuga serving him with a subpoena to testify at trial half-way through his deposition,
stating "***I'm in disbelief***."  Nikogosyan Decl. Ex. 4 at 192:8-13 (emphasis added).
Yuga never attempted to get Mr. Garner to testify at trial, corroborating that Yuga was
acting with an improper purpose.

Yuga now seeks reimbursement for 44.30 hours (totaling $41,973.94) for Mr.
Garner's deposition.  Nikogosyan Decl. Ex. 1, tab 1, row 8.  But, as explained above,
there was no need for Yuga to depose a one-week general assistant who was
repeatedly asked questions better suited for the Defendants themselves or other third
parties.  The full-day deposition of Mr. Garner, instead, appears to have been designed
to simply intimidate and burden a third party.  The bills associated with Mr. Garner's
deposition should, accordingly, be deducted for being work that was "unreasonably,
unnecessarily, or inefficiently devoted to the case." *Cruz ex rel. Cruz v. Alhambra
Sch. Dist.,* 601 F. Supp. 2d 1183, 1191 (C.D. Cal. 2009) (citing *Hensley v. Eckerhart,*
461 U.S. 424, 433-34 (1983)).

**14.    Yuga Improperly Seeks Reimbursement for The Deposition Of Jason Cline**

Yuga seeks $35,286.64 in attorney's fees for the deposition of third party, Jason
Cline.  *See* Nikogosyan Decl. Ex. 1, tab 1, row 9.  The time that was spent on that
deposition, however, was unreasonable and unnecessary and should, therefore, be
excluded from any fee award here.  It is well established that the court "must eliminate
from the lodestar time that was unreasonably, unnecessarily, or inefficiently devoted
to the case." *Cruz ex rel. Cruz v. Alhambra Sch. Dist.,* 601 F. Supp. 2d 1183, 1191
(C.D. Cal. 2009) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983)).  This
includes the removal of any time that "has not been reasonably expended." *Glass v.
Sue,* No. CV 09-8570-RGK SHX, 2011 WL 561028, at *6 (C.D. Cal. Feb. 8, 2011).

The deposition of Jason Cline was wholly unnecessary.  Mr. Cline was a third party to this litigation that was a supporter of the Defendants' work.  Nikogosyan Decl. Ex. 3 at 67:17-25.  Mr. Cline, however, was not involved in the creation of the RR/BAYC NFTs at issue in the case (nor was there any indication that he was), and his deposition did not lead to any useful evidence for Yuga.  Nikogosyan Decl. Ex. 3 at 47:1-3.  Indeed, Yuga did not even use his testimony at trial or in their summary judgment briefing.  *See* Dkt. 237; Dkt. 149-1.  Accordingly, Yuga should not receive reimbursement for the over $35,000 in legal fees it incurred to take that deposition.

**15.** **Yuga Improperly Seeks Reimbursement for Its Frivolous Apex Witness Motion**

The expenses associated with Yuga's *ex parte* motion for a protective order, which totaled $20,535.00, should also be deducted because this Court denied Yuga's motion and acknowledged that it was frivolous.  *See* Nikogosyan Decl. Ex. 1, tab 1, row 10.

Courts do not award fees and costs for frivolous motions because it is unreasonable work that unnecessarily increases costs.  *See Butler v. Homeservices Lending LLC*, No. 11-cv-02313-L (MDD), 2014 WL 5460447, at *4 (S.D. Cal. Oct. 27, 2014) ("two of the seven motion *in limine* Butler filed were frivolous and therefore not compensable.").  Similarly, expenses associated with unsuccessful motion are not compensable.  *See TrafficSchool.com v. eDriver, Inc.,* No. CV 06-7561 PA (CWX), 2012 WL 12949932, at *9 (C.D. Cal. May 3, 2012) (holding that "[b]ecause Plaintiffs were unsuccessful on their Contempt Motion, the Court awards them nothing for the time spent on that motion.").

Here, Yuga filed a motion seeking a protective order to block the depositions of Greg Solano and Wylie Aronow under the apex witness doctrine.  The Court rejected Yuga's baseless arguments in its January 8, 2023, order.  The Court explained that Yuga's motion required showing "irreparable injury or prejudice" and that "Yuga's Motion ***does not come close*** to meeting these standards."  Dkt. 77 at 1 (emphasis

added).  The Court noted that Yuga engaged in months-long delay in bringing the motion and also "failed to respond to several requests by Defendants to discuss deposition scheduling" which was "a violation of Local Rule 37-1, itself sufficient to deny the Motion."  *Id*. at 1-2.

The Court further held that Yuga's "Motion is also deficient on the merits" for several reasons.  *Id*. at 2.  First, Yuga provided "no declaration from either of the purported apex witnesses on their availability" and, second, "deposing the witnesses before a 30(b)(6) deposition hardly constitutes irreparable injury, especially here."  *Id*. at 2.  The Court explained that the two alleged apex witnesses were "the only people who have knowledge of the creation of the marks such that exhaustion of other sources is not required."  *Id*.

The Court accordingly ordered that Yuga employees Wylie Aronow and Greg Solano appear for depositions on January 9 and 11 respectively (excusing Mr. Solano only if he had medical complications).  *Id*.  Yet, despite this Court's order, neither witness appeared.  Yuga has never identified any medical reason why Mr. Solano could not attend.  The Court was clear that failing to appear was sanctionable and ordered Yuga to pay Defendants' expenses if they did not show up. Dkt. 77 at *2. Yuga has refused to make court-ordered payment.

In sum, the Court made clear that Yuga's motion was procedurally improper, failed to provide supporting evidence, and also deficient on the merits.  Because this kind of frivolous motion practice in not recoverable, $20,535.00 should be deducted. Moreover, in accordance with the January 8, 2023, order, a second deduction is warranted for Yuga's failure attend the January 9 and January 11 depositions and Yuga's failure to make its court-ordered payment.  Defendants defer to the Special Master's judgment on what would constitute reasonable deduction for the expenses associated with these two failed depositions.

**16.    Yuga Improperly Seeks Reimbursement for Its Frivolous Motion For Sanctions**

Yuga seeks $7,975.28 for work done on its frivolous motion for sanctions (Dkt. 109), which should be removed from any award.  *See* Nikogosyan Decl. Ex. 1, tab 1, row 11.  It is well established that the court "must eliminate from the lodestar time that was unreasonably, unnecessarily, or inefficiently devoted to the case." *Cruz ex rel. Cruz v. Alhambra Sch. Dist.,* 601 F. Supp. 2d 1183, 1191 (C.D. Cal. 2009) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983)).  This includes the removal of any time that "has not been reasonably expended." *Glass v. Sue*, No. CV 09-8570-RGK SHX, 2011 WL 561028, at *6 (C.D. Cal. Feb. 8, 2011).  Further, courts in this district have refused to award fees associated with unsuccessful motions. *See TrafficSchool.com v. eDriver, Inc.,* No. CV 06-7561 PA (CWX), 2012 WL 12949932, at *9 (C.D. Cal. May 3, 2012) (holding that "[b]ecause Plaintiffs were unsuccessful on their Contempt Motion, the Court awards them nothing for the time spent on that motion.").

Here, Yuga filed a motion for sanctions for baseless accusations that Defendants' spoliated evidence.  Dkt. 109.  Prior to the motion, Defendants met and conferred with Yuga repeatedly and asked what documents they thought were missing and were not provided any specific information until Yuga filed its motion.  Dkt. 109-1 at 4.  Unsurprisingly, after reviewing the submissions, the Court denied Yuga's motion for sanctions.  Dkt. 145.  The Court found that "there [was] no direct evidence of any spoliation" and that "Yuga concedes as much…" *Id.* at 2.  Additionally, the Court found that "[t]here [was] no basis for the drastic relief sought by Yuga," which included "default judgment or adverse inference; forensic inspection and expenses." *Id.*  As the Court here found, this motion was based on no direct evidence and sought drastic relief that Yuga provided no basis for.  This motion was unreasonable, unnecessary, inefficient, and unsuccessful.  Accordingly, Yuga should not receive fees for bringing such a frivolous motion.

**17.      Yuga Improperly Seeks Reimbursement for Yuga's Wrongful Designation of Ryan Hickman's Deposition Testimony As Confidential**

Yuga seeks reimbursement of $52,355.30 for 67.8 hours related to their improper designation of Ryan Hickman's deposition testimony and the associated motion practice.  Nikogosyan Decl. Ex. 1, tab 1, row 12.  Mr. Hickman assisted Defendants with creating software for the RR/BAYC project.  Dkt. 345.  Yuga deposed Mr. Hickman on December 7, 2022, and subsequently designated the entire deposition transcript as highly confidential, for attorney's eyes only.  When Mr. Ripps and Mr. Cahen asked to de-designate the transcript, Yuga maintained that the entire transcript had to remain highly confidential because certain portions of the transcript addressed documents which *Mr. Ripps and Mr. Cahen* had designated highly confidential under the protective order.  Dkt. 122; Dkt. 133.  Yuga maintained this stance even after Mr. Ripps and Mr. Cahen expressly waived any claim of confidentiality over the documents referenced during the deposition.

The dispute over Mr. Hickman's deposition testimony was entirely fabricated by Yuga.  Mr. Hickman did not request that his deposition testimony be designated highly confidential, for attorney's eyes only.  In fact, Mr. Hickman maintained that he wanted his testimony to remain public.  Dkt. 98-6; Dkt. 123.  Yet, Yuga improperly designated Mr. Hickman's entire 308-page deposition testimony highly confidential, against his and the Defendants' wishes, and engaged in motion practice to keep Mr. Hickman's testimony highly confidential.  It is well established that the court "must eliminate from the lodestar time that was unreasonably, unnecessarily, or inefficiently devoted to the case." *Cruz ex rel. Cruz v. Alhambra Sch. Dist.,* 601 F. Supp. 2d 1183, 1191 (C.D. Cal. 2009) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983)). This includes the removal of any time that "has not been reasonably expended." *Glass v. Sue*, No. CV 09-8570-RGK SHX, 2011 WL 561028, at *6 (C.D. Cal. Feb. 8, 2011).

Here, Yuga's actions were unreasonable and these hours should be removed from the lodestar.  After Yuga designated Mr. Hickman's entire 308-page deposition

transcript to be highly confidential, Defendants filed a motion seeking de-designation and both parties filed supplemental memoranda on the issue.  On March 9, 2023, the Court ultimately ruled against Yuga regarding the designation of Mr. Hickman's deposition testimony and ordered the testimony remain public.  Dkt. 133.  It its order, the Court noted that "Yuga does not contend that any Yuga confidential information was discussed.  Indeed, Yuga does not even take a position on whether the deposition transcript should be confidential." *Id*. at 2.  The Court also noted that Yuga's actions were improper because it wrongly chose to "***hold the transcript hostage*** over a collateral matter." *Id*. (emphasis added).  Yuga should not be rewarded for its failed "hostage" taking strategies.  *See TrafficSchool.com v. eDriver, Inc.,* No. CV 06-7561 PA (CWX), 2012 WL 12949932, at \*9 (C.D. Cal. May 3, 2012).

### 18. Yuga Improperly Seeks Reimbursement for Its Improper Refusal to Produce the Lehman Settlement Materials

Yuga seeks reimbursement of $49,259.10 for 49.3 hours related to their refusal to produce materials to Defendants that Yuga had received from a third party.  Nikogosyan Decl. Ex. 1, tab 1, row 13.  Specifically, on February 6, 2023, Yuga settled a related matter with a third party named Thomas Lehman.  Among those materials was a declaration that Yuga had drafted and Mr. Lehman had signed.  Yuga relied on that document in multiple court filings, including its motion to dismiss counterclaims, motion for summary judgement, and expert reports.  Dkts. 97, 97-3, 149-1, 149-33, 149-113, 149-115, 149-117.

Despite Yuga's significant reliance on Mr. Lehman's Declaration, Yuga unreasonably refused to produce *other* related documents, such as the settlement agreement and related communications that were necessary for Defendants to assess and challenge the content of the declaration.  Yuga's refusal forced defendants to file a motion to compel (Dkt. 121) and ultimately caused Mr. Lehman's deposition to be delayed (Dkt. 119).

1     On March 21, 2023, the Court ruled on Defendants' motion to compel, ordering

2  Yuga to produce the Lehman materials, noting that the withholding of those materials,

3  without affording Defendants "any opportunity to explore credibility, bias and

4  coercion" would cause "substantial prejudice" to Defendants.  Dkt. 159 at 3.  The

5  Court noted that Defendants had a right "to explore whether the Declaration was

6  coerced or was a condition of settlement as seems likely."  *Id*. at 2.  The Court further

7  explained that "Yuga cannot have it both ways, using a portion of the settlement

8  materials (the Declaration) to its benefit while suppressing other portions of the

9  settlement materials that may demonstrate bias or coercion."  *Id*. at 2.

10    As demonstrated by the Court order, Yuga's refusal to produce the Lehman

11  settlement was unreasonable given its "unfettered" use of some settlement materials

12  during litigation.  Thus, the unnecessary work associated with compelling Yuga's

13  production should be discounted.  *See Cruz ex rel. Cruz v. Alhambra Sch. Dist.,* 601 F.

14  Supp. 2d 1183, 1191 (C.D. Cal. 2009) (holding courts "must eliminate from the

15  lodestar time that was unreasonably, unnecessarily, or inefficiently devoted to the

16  case"); *Glass v. Sue*, No. CV 09-8570-RGK SHX, 2011 WL 561028, at *6 (C.D. Cal.

17  Feb. 8, 2011) (holding courts should deduct time that "has not been reasonably

18  expended").

19  **19.  Yuga Requests Costs That Are Not Available for Reimbursement Under**

20        **The Lanham Act**

21    Yuga's requests for costs is improperly based on numerous categories that are

22  not recoverable under the Lanham Act.  Courts have held that the Lanham Act "does

23  not provide explicit statutory authority to award litigation expenses beyond the six

24  categories set forth in the general costs statute, [28 U.S.C. §§ 1821, 1920], Plaintiff[s]

25  cannot recover any costs that do not fit within those categories."  *Hansen Cold*

26  *Storage Constr. v. Cold Sys., Inc.*, No. 2:19-CV-07617-SB-MAA, 2022 WL 1199271,

27

28

at *8 (C.D. Cal. Feb. 11, 2022).[6]  Yuga impermissibly includes items that are outside of the enumerated categories.  For example, Yuga seeks fees associated with videotaping depositions ($18,691.50), delivery fees (at least $4,190.83, but likely more given Yuga's repeated block narrative of "Printing /Assembly/Delivery of Court Copies"), and charges for database use from WestLaw and Lexis ($166,594).[7]  These costs cannot be recovered under the Lanham Act.  *See Arcona, Inc. v. Farmacy Beauty, LLC*, No. 217CV7058ODWJPRX, 2021 WL 2414856, at *5 (C.D. Cal. June 14, 2021), *aff'd*, No. 21-55678, 2022 WL 1486822 (9th Cir. May 11, 2022) (holding movant cannot recover "computerized research, messenger/delivery services, deposition videography, and travel."); *Hansen Cold Storage Constr. v. Cold Sys., Inc.*, No. 2:19-CV-07617-SB-MAA, 2022 WL 1199271, at *8 (C.D. Cal. Feb. 11, 2022) (holding research and parking fees are not recoverable).

Further, many of the costs that Yuga seeks are not reasonable and should not be passed on to Mr. Ripps and Mr. Cahen.  For example, Yuga is seeking $89,346.37 for costs associated with courtesy copies.[8]  The invoices Yuga relies on show that their orders often included additional charges for expedited service and other additions that inflated the pricing.  Yuga further paid $55,559 to print what appears to be personal copies of various documents.[9]  Yuga's invoices for the depositions are also inflated and include charges totaling thousands of dollars for unnecessary add-ons including "Realtime Services," rough drafts, "Video Proceeding," "Parking

---

[6] Section 1821 provides for costs associated with witness fees. Section 1920 provides for fees of: (1) the clerk and marshal; (2) printed or electronically recorded transcripts necessary for the case; (3) printing and witnesses; (4) exemplification and copies of any materials where the copies are necessary for the case; (5) docket fees; (6) court appointed experts, interpreters, and expenses for special interpretation services.
[7] Yuga served on Defendants and the Special Master a document entitled "CONFIDENTIAL - Yuga Labs v. Ripps Costs."  This document includes the costs outlined above.
[8] *Id*.
[9] *Id.*

Expense," and a "Deposition Concierge Tech Support."[10]  Yuga chose to pay for additional services beyond those necessary to print courtesy copies, personal copies, and perform depositions and those unreasonable charges should be excluded from the fees awarded here.

**20.    Yuga's Request for Expert Expenses Is Excessive**

Yuga seeks reimbursement of $524,075.15 for 561.9 hours related to expert discovery.  Nikogosyan Decl. Ex. 1, tab 1, row 6.  Yuga hired three experts, each with hourly rates that are far above average for their respective disciplines.  Survey expert Laura O'Laughlin billed $795 per hour.  Economic expert Lauren Kindler billed $900 per hour.[11]  And branding expert Jonah Berger billed $1,100 per hour.[12]

Yuga seeks $95,639 for expert fees incurred in connection with their depositions under Rule 26(b)(4)(E)(i).  Dkt. 435 (citing Fed. R. Civ. P. 26(b)(4)(E)(i)). Rule 26 only permits recovery of expenses associated with attending the deposition. *Rock River Comms., Inc. v. Universal Music Group*, 276 F.R.D. 633, 637 (C.D. Cal. 2011).  Further, the party seeking reimbursement for deposition fees under Rule 26(b)(4)(E) bears the burden of proving that the requested award reasonably accounts for the time and costs spent at the deposition. *See S.E.C. v. Berry*, No. C07-04431 RMW HRL, 2011 WL 2149088, at *2 (N.D. Cal. June 1, 2011). In determining whether expert fee requests under Rule 26(b)(4)(E)(i) are reasonable, courts consider several objective factors including (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature,

---

[10] Yuga served on Defendants and the Special Master a document entitled "CONFIDENTIAL - Supporting Materials for Costs."  This document includes the invoices outlined above.

[11] Yuga served on Defendants and the Special Master a document entitled "CONFIDENTIAL - Yuga Labs v. Ripps Expert Fees."  This document includes the rates outlined above.

[12] *Id.*

1   quality, and complexity of the discovery responses provided; (5) the fee actually

2   charged to the party who retained the expert; (6) fees traditionally charged by the

3   expert on related matters; and (7) any other factor likely to assist the court in

4   balancing the interest[s] implicated by Rule 26.  *Vineyard House, LLC v.*

5   *Constellation Brands U.S. Operations, Inc.*, 619 F. Supp. 3d 970, 977 (N.D. Cal.

6   2021).

7           Here, the requested expense for experts is facially unreasonable because Yuga

8   seeks to reimburse expert time that could not have possibly been spent attending

9   depositions.  Yuga seeks to reimburse 41.65 hours for Dr. Berger, 37.2 hours for Dr.

10  O'Laughlin, and 22.5 hours for Dr. Kindler.[13]  This far exceeds the seven-hour limit

11  for depositions.  Further, Yuga has provided no documentation as to what work was

12  performed during these hours despite bearing the burden to demonstrate

13  reasonableness.  At best, these hours were spent either preparing expert reports,

14  preparing for depositions, or reviewing transcripts—none of which are recoverable.

15  *See Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*, No. CV 13-00646-ABC-

16  PLAx, 2014 WL 12639268, at *5 (C.D. Cal. Oct. 21, 2014) ("The expenses incurred

17  to prepare the expert report are not recoverable under Rule 26" and further denying to

18  award expenses spent "preparing for the expert deposition."); *Rock River Comms.*, 276

19  F.R.D. at 637 (holding that the retaining party is "free to have its expert prepare as

20  thoroughly, and review his or her deposition transcript as meticulously, as it wishes,

21  albeit at its own expense."); *3M Co. v. Kanbar*, No. C06-01225-JW-HRL, 2007 WL

22  2972921, *3 (N.D. Cal. Oct. 10, 2007) (noting "persuasive authority which states that

23  ordinarily the deposing party need only pay for time spent in deposition" absent

24  extenuating circumstances).

---

[13] Yuga served on Defendants and the Special Master a document entitled
"CONFIDENTIAL - Yuga Labs v. Ripps Expert Fees."  This document includes the
hours outlined above.

1    Moreover, of the $95,639 sought, Yuga requests $45,815 for Dr. Berger's

2    deposition preparation and attendance (as well as countless attorney hours spent

3    working on his report and preparing him).[14]  This is particularly egregious considering

4    the unnecessary role that Dr. Berger played in this case.  Dr. Berger presented theories

5    of harm, such as brand harm, for which Yuga did not seek any damages.  Dkt. 315-1.

6    Indeed, the irrelevance of Dr. Berger's opinions and testimony is reflected in the

7    Court's Findings of Fact and Conclusions of Law. Dkt. 431. The Court did not rely on

8    Dr. Berger's report, opinions, or testimony at all, and only mentioned Dr. Berger to

9    note that he had served as a witness.  *Id.*

10   Accordingly, nearly the entirety of Yuga's requested expert expenses should be

11   discounted for not being recoverable under Rule 26 and, with respect to Dr. Berger,

12   being wholly unnecessary for this case.

13

14

15

16   Dated: December 22, 2023          By: /s/  *Louis W. Tompros*

          Louis W. Tompros (*pro hac vice*)
17        louis.tompros@wilmerhale.com
          Monica Grewal (*pro hac vice*)
18        monica.grewal@wilmerhale.com
          Scott W. Bertulli (*pro hac vice*)
19        scott.bertulli@wilmerhale.com
          Tyler Carroll (*pro hac vice*)
20        tyler.carroll@wilmerhale.com
          **WILMER CUTLER PICKERING
21          HALE AND DORR LLP**
          60 State Street
22        Boston, MA 02109
          Telephone: (617) 526-6000
23        Fax: (617) 526-5000

24        Derek Gosma (SBN 274515)
          derek.gosma@wilmerhale.com
25        Henry Nikogosyan (SBN 326277)
          henry.nikogosyan@wilmerhale.com
26

27   ---
     [14] Yuga served on Defendants and the Special Master a document entitled
28   "CONFIDENTIAL - Yuga Labs v. Ripps Expert Fees."  This document includes the
     fees outlined above.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's EFC system on December 22, 2023.

By: /s/ *Louis W. Tompros*
Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000