ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Additional Counsel listed on next page*

Attorneys for Plaintiff
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **DECLARATION OF ERIC BALL IN SUPPORT OF SUBMISSION TO SPECIAL MASTER RE ATTORNEYS' FEES AND COSTS** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, | |
| Defendants. | |

I, Eric Ball, declare as follows:

1.     I am an attorney admitted in California and admitted to practice before this Court in this matter.  I am a partner at the law firm of Fenwick & West LLP ("Fenwick"), counsel for Plaintiff Yuga Labs, Inc. ("Plaintiff" or "Yuga Labs") in this matter and for other matters, including as to trademark and copyright issues.

2.     I submit this declaration in support of Yuga Labs' Submission to the Special Master re Attorneys' Fees and Costs.

3.     To the best of my knowledge, information, and belief, the facts stated in this declaration are true and correct.  My declaration is based on a review of Fenwick's time records and invoices sent to Yuga Labs for this case, my personal knowledge and familiarity with the work performed by the professionals at my direction and under my supervision, my discussions with the billing professionals, and my review of the record in this case.  If called as a witness, I could testify competently to the facts set forth here.

**Background**

4.     Fenwick is recognized as a top-tier law firm that specializes in high-stakes intellectual property litigation for innovative, cutting-edge technology companies.  The firm has litigated and won numerous high-profile cases in federal and state court and in arbitrations across the country.  Fenwick has earned a national reputation for the quality of the legal services it provides.  The firm has been honored as a leading law firm for intellectual property litigation by Chambers USA (2023) and Benchmark Litigation (2022) and was recognized as a gold-tier firm for trademark litigation in the United States by World Trademark Review 1000 (2023).  Fenwick was also recognized in the Chambers Global guide (2023), receiving top rankings for its intellectual property services.  The firm has also been ranked among the leading advisors in the nation in the Fintech Legal and Blockchain and Cryptocurrencies practice areas in the Chambers FinTech guide (2023) and by The Legal 500 (2023).  I am not familiar with any available law firms practicing in

FENWICK & WEST LLP
ATTORNEYS AT LAW

California with comparable expertise in the area of trademark litigation for blockchain companies.

5.     As the managing partner overseeing this case and leading the litigation strategy, I reviewed all filings submitted in this case.  I also selected the attorneys who worked on this case and am familiar with their professional qualifications. Below, I set forth a summary of my relevant professional qualifications; those of Fenwick attorneys Molly Melcher, Todd Gregorian, Kimberly Culp, Anthony Fares, Ethan Thomas, Mary Griffin Sims, Ryan Kwock, Katie Hauh, Sofiya Andreyeva, and Zack Kalinowski; and paralegals Jeremy Ra and Keysha Alexander.

6.     I have been a practicing attorney for over 17 years and a partner at Fenwick for over seven years.  After graduating from University of California, Berkeley School of Law with honors in 2005, I began my career at Fenwick in the firm's office in Mountain View, California, where I have been practicing law ever since.  I am the Chair of Fenwick's Trademark Litigation Practice Group and have managed many of the firm's high-profile trademark matters in federal and state courts.  I have also litigated and won multiple precedential decisions before the Trademark Trial and Appeal Board.  Throughout my years of experience, I have cultivated a strong trademark litigation practice and have represented numerous clients at the forefront of technology, including Google, Cisco, Intuit, Uber, as well as leaders in the blockchain and cryptocurrency space.  I received recognition as a leading trademark litigator from the World Trademark Review 1000 from 2017 to 2023 and from The Legal 500 from 2018 to 2023.  In 2020, I was selected from over 1,400 authors to receive JD Supra's Readers' Choice Award for my work and leadership in the trademark space.  Attached hereto as **Exhibit 1** is a true and correct copy of my biography from Fenwick's website.  I regularly practice law in the Central District of California and through that experience I am personally familiar with firms that practice trademark law in this district and am familiar with the rates charged by peer firms.  My rate for 2022 was $1,290.00 per hour.  This

FENWICK & WEST LLP
ATTORNEYS AT LAW

rate increased in 2023 to $1,410.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

7.     Molly Melcher has been a practicing attorney for 13 years and is a partner at Fenwick.  Ms. Melcher is an expert at complex civil litigation with extensive experience in trademark litigation as well as in working with blockchain and NFT clients.  Ms. Melcher's practice is focused on complex commercial and intellectual property litigation for emerging and high technology companies such as Yuga Labs.  Ms. Melcher is an accomplished trial lawyer with experience litigating in federal and state court.  Outside of Fenwick, Ms. Melcher also served as in-house counsel for a cutting-edge startup with a billion-dollar brand.  Her experience was integral in guiding this complex litigation through pre-trial filings, trial, and post-trial briefing.  She is a highly regarded attorney and in 2021 she was recognized as one of Best Lawyers' "Ones to Watch List" for her outstanding work in the commercial litigation space.  Throughout her years of practice, Ms. Melcher has represented a litany of leaders in the high technology space including GoPro, Intuit, and NVIDIA.  Attached hereto as **Exhibit 2** is a true and correct copy of her biography from Fenwick's website.  Ms. Melcher's rate for 2022 was $1,240.00 per hour.  This rate increased in 2023 to $1355.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

8.     Todd Gregorian is a partner in the Fenwick litigation group with nearly 20 years of practice.  He received his Juris Doctorate, *cum laude*, from the University of Michigan Law School in 2004, and served as a law clerk to the Honorable James Ware in the United States District Court for the Northern District of California.  His practice focuses on intellectual property and commercial litigation including trials and appeals.  Mr. Gregorian was recognized among the top 15 Best Performing Patent Litigators and 10 Most Active Patent Litigators in

FENWICK & WEST LLP
ATTORNEYS AT LAW

the United States by Patexia and was consecutively recognized for patent litigation in 2022 and 2023 by IAM Patent 1000.  Mr. Gregorian was also listed on Best Lawyers' "Ones to Watch List" in 2020 and 2021.  Mr. Gregorian has represented leaders in the high technology industry, including arguing appeals for Google and Netflix, among others, and conducting trials for Amazon, ShoreTel, National Products Inc., and in this district for Giganews, Inc.  Mr. Gregorian led the appeal team for this litigation, for which Yuga Labs is not seeking fees in this application, and thus has intimate familiarity with the facts and issues of the case.  He was integral in helping ready the case for trial, such as by preparing key witnesses to testify and advising the trial team on their preservation of issues in the event Defendants appealed the Court's orders (as Defendants regularly threatened to do).  Attached hereto as **Exhibit 3** is a true and correct copy of his biography from Fenwick's website.  Mr. Gregorian's rate for 2023 was $1375.00 per hour.  These rates fall below market for peer firms in the Los Angeles region.

9.     Kimberly Culp has been a practicing attorney for over 17 years and is a counsel at Fenwick.  After graduating from University of California Hastings College of the Law in 2005, Ms. Culp started her practice with Fenwick in the firm's office in Mountain View, California.  Ms. Culp's practice has focused on intellectual property and advertising litigation for emerging technology companies, such as those like Yuga Labs.  Ms. Culp has been to trial in state and federal courts, before state agencies, and conducted dozens of arbitrations, in addition to handling appeals before the Ninth Circuit and D.C. Circuit Courts of Appeal, California Court of Appeal, and Virginia Supreme Court.  Since 2012, she has been recognized by Super Lawyers for her accomplishments as an intellectual property litigator.  She is also an adjunct professor of law at University of California Law San Francisco (formerly University of California Hastings College of the Law), where she teaches on the application of intellectual property laws to emerging technology companies.  Ms. Culp is also an update author on *Internet Law and Practice in California*,

published by CEB, a treatise addressing the law as it applies to the internet, including the application of trademark law to business on the internet.  Attached hereto as **Exhibit 4** is a true and correct copy of her biography from Fenwick's website.  Ms. Culp's rate for 2022 was $1,135.00 per hour.  This rate increased in 2023 to $1,240.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

10.   Anthony Fares is an associate at Fenwick in the firm's San Francisco office.  He graduated from Columbia Law School in 2017, where he was a Harlan Fiske Stone Scholar.  His practice focuses on intellectual property litigation in federal and state courts, and he has represented Yuga Labs since the very beginning of its lawsuits related to the infringing RR/BAYC NFTs.  Mr. Fares' rate for 2022 was $1,030.00 per hour.  This rate increased in 2023 to $1,185.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

11.   Ethan Thomas is an associate at Fenwick in the firm's San Francisco office.  He graduated from Columbia Law School in 2017, where he was a James Kent Scholar and Harlan Fiske Stone Scholar.  His practice focuses on intellectual property and complex litigation in federal and state courts, and he has represented Yuga Labs since the early stages of its lawsuits related to the infringing RR/BAYC NFTs.  Mr. Thomas' rate for 2022 was $1,030.00 per hour.  This rate increased in 2023 to $1,185.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

12.   Mary Griffin Sims is an associate at Fenwick in the firm's San Francisco office.  She graduated from University of California, Berkeley, School of Law in 2018.  Prior to joining Fenwick, Ms. Griffin Sims clerked for the Honorable Yvonne

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

Gonzalez Rogers of the U.S. District Court for the Northern District of California. Ms. Griffin Sims' practice centers around complex commercial litigation for high technology clients.  Her billing rate in 2023 was $1,125.00 per hour.  These rates fall below market for peer firms in the Los Angeles region.

13.     Ryan Kwock is an associate at Fenwick in the firm's San Francisco office.  He graduated from University of California, Berkeley, School of Law, in 2020 where he was the executive editor for the California Law Review.  During law school Mr. Kwock served as a law clerk for the U.S. Copyright Office, highlighting his expertise in intellectual property matters.  His practice focuses on intellectual property and complex litigation in federal court, and he has represented several prominent and emerging leaders in the high technology space.  Mr. Kwock's rate for 2022 was $780.00 per hour.  This rate increased in 2023 to $950.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

14.     Katie Hauh is an associate at Fenwick in the firm's Mountain View office.  She graduated from Santa Clara University School of Law in 2022 with honors and a specialization in intellectual property law.  She is part of the litigation team for Yuga Labs' related trademark disputes.  Ms. Hauh's rate for 2022 was $640.00 per hour.  This rate increased in 2023 to $710.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

15.     Sofiya Andreyeva is a law clerk at Fenwick in the firm's New York office.  Ms. Andreyeva passed the New York bar exam in October of 2022 and her title of law clerk is a reflection only of the arduous nature of the New York bar admission process.  She graduated from New York University School of Law in 2022 and has significant expertise in NFTs and blockchain technology.  She is part of the litigation team for Yuga Labs' related trademark disputes.  Ms. Andreyeva's

rate for 2022 was $640.00 per hour.  This rate increased in 2023 to $710.00 to reflect market trends and the increased rates of competing law firms in the New York Area. Even still, these rates fall below market for peer firms in the Los Angeles region.

16.  Zack Kalinowski is an associate at Fenwick in the firm's San Francisco office.  He graduated from Washington University School of Law in 2022 where he was a primary editor of the Washington University Jurisprudence Review.  He is part of the litigation team for Yuga Labs' related trademark disputes. Mr. Kalinowski's rate for 2022 was $640.00 per hour.  This rate increased in 2023 to $710.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

17.  Keysha Alexander and Jeremy Ra are senior paralegals at Fenwick in the Santa Monica and San Francisco offices, respectively.  Ms. Alexander has been a paralegal for 23 years and Mr. Ra has been a paralegal for ten years.  Both have significant expertise in managing complex intellectual property and commercial litigation matters, including supervising other paralegals and litigation assistants. Yuga Labs is not seeking fees for the staff whom Ms. Alexander and/or Mr. Ra supervised.  Mr. Ra's rate for 2022 was $515.00 per hour.  Ms. Alexander joined the team in 2023 as the pace of the filings increased and additional support was needed and to assist with trial preparation and trial tasks.  Mr. Ra and Ms. Alexander's rates increased in 2023 to $610.00 to reflect market trends and the increased rates of competing law firms in the San Francisco Bay Area.  Even still, these rates fall below market for peer firms in the Los Angeles region.

18.  Because of the complexity of this case, there were times that Fenwick needed to recruit additional attorneys and staff to accommodate the workload.  This work was necessary to the prosecution of the case.  However, to ensure that Yuga Labs is not requesting reimbursement for any "ramp up" time or other inefficiencies,

FENWICK & WEST LLP
ATTORNEYS AT LAW

Yuga Labs is excluding certain timekeepers from its request. These include certain associates, all summer associates, all staff attorneys, and other billing professionals.

19. I also wrote off (i.e., did not bill) significant time worked by members of Fenwick's core team as a discount to Yuga Labs. In addition, Yuga Labs is not seeking fees for significant time spent that was not linked directly to the core issues of this case to ensure the resulting request is reasonable and focused on those core issues.

20. Thus, while Yuga Labs actually accrued roughly $16,000,000 in fees before write offs and discounts, Yuga Labs seeks only a discounted attorneys' fee award of $12,697,150.22 to reflect these significant reductions.

21. I also utilized the services of several clerical personnel to ensure that clerical tasks were not billed to Yuga Labs. This included seven litigation assistants who prepared Word documents for filing and service of litigation documents (e.g., motions, discovery requests, discovery responses, meet and confer letters, etc.), proofread documents, finalized documents for filing, handled filings with the Court, and coordinated preparation of courtesy copies for the Court. I also utilized four practice support personnel who assisted with certain fact research tasks such as the location of various articles and reports to assist in expert preparation and who also provided after-hours support on document preparation and formatting.

**Yuga Labs' Rates Are Reasonable**

22. During the meet and confer for this fee dispute, counsel for Defendants indicated that they were not objecting to the reasonableness of Yuga Labs' rates.

23. Fenwick provides comprehensive legal services to national and international technology and life sciences companies. Fenwick has over 500 attorneys practicing in offices in Mountain View, San Francisco, and Santa Monica, California, in Seattle, Washington, and in New York, New York. As discussed *supra* ¶ 4, Fenwick is nationally-recognized for its handling of, among other things, intellectual property litigation.

FENWICK & WEST LLP
ATTORNEYS AT LAW

24.     Other types of evidence routinely considered by the federal courts in assessing the reasonableness of fees support the conclusion that Fenwick's fees in this matter were reasonable:

a)     Rates comparable to Fenwick's have been found reasonable in courts in California and elsewhere.  *See, e.g., Fleming v. Impax Labs.*, Inc., No. 16-cv-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding hourly rates of $760-$1,325 for partners and $895-$1,150 for counsel reasonable); *AECOM Energy & Constr., Inc. v. Topolewski*, No. 17-cv-5398-RSWL-AGRx, 2022 WL 1469501, at *4 (C.D. Cal. May 9, 2022) (finding hourly rates of $876 for senior associate and $1,116 for partner reasonable); *Joseph S. v. Kijakazi*, No. 20-cv-09138-DFM, 2023 WL 2628243, at *3 (C.D. Cal. Jan. 23, 2023) ("Exercising its discretion, the Court finds reasonable the rate of $1,600 per hour for attorney time.").

b)     Multiple California federal courts have found Fenwick's rates to be reasonable for other IP cases of similar complexity with this proceeding. *See In re Personalweb Tech., LLC Patent Litig.*, No. 5:18-cv-00767, 2021 WL 796356, at *16 (N.D. Cal. Mar. 2, 2021) (finding Fenwick & West's rates reasonable in fee award); *Perfect 10 v. Giganews, Inc.*, No. 11-cv-7098, 2015 WL 1746484, at *20 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (holding rate billed by Fenwick & West "was reasonable and was comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation."); *IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-1708, 2014 WL 5795545, at *7-8 (N.D. Cal. Nov. 6, 2014) (awarding full fees and noting the reasonableness of Fenwick & West rates); *Netbula, LLC v. Chordiant Software, Inc.*, No. 08-cv-19-JW, 2010 WL 11575580, at *5 (N.D. Cal. Dec. 17, 2010) ("[Fenwick's] rates are comparable to other full service firms in the Bay Area and are reasonable.").

c)      Fenwick's rates are in line with peer firms in the Los Angeles market.  As the Ninth Circuit has held, "[t]he prevailing market rate in the community is indicative of a reasonable hourly rate." *Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987)*.  Thompson Reuter's Financial Insights platform calculated a mean billing rate in 2023 of $1,207.00 per hour for partners and $828.00 for associates in the Los Angeles legal market.  Thomson Reuters Financial Insights is a dynamic, live competitive intelligence program that gives law firms access to critical financial performance data any time.  The standard rate for each firm is determined by dividing the total fees worked at the timekeepers' standard rate by the total hours worked during the period for those firms who participate.

d)      The National Law Journal Billing Survey for 2017 provides further confirmation of the reasonableness of the rates for Fenwick's professionals. That survey lists the following billing rates for certain California firms (and highly-regarded firms having substantial presence in California): Cooley LLP ($1,100 average rate for partners, $850-$1065 for counsel, and $595-$835 for associates), Kirkland and Ellis ($1,115-$1,410 for partners, up to $955 for associates), Jones Day ($700-$1,050 for partners, $850 for one counsel, and $300-$800 for associates), King & Spalding LLP ($775-$1,435 for partners and $525-$790 for associates).  The rates reflected in the National Law Journal Billing Survey would be higher now because that survey was taken in 2017, and firms have significantly increased their fees in recent years, including due to inflation.  Attached hereto as **Exhibit 5** is a true and correct copy of the 2017 National Law Journal Billing Survey.

### Lawsuit Against Ryder Ripps and Jeremy Cahen

25.      Fenwick has advised Yuga Labs on a variety of matters since 2021, when the company was founded.  For example, Fenwick has assisted Yuga Labs with the prosecution of its trademark portfolio and global enforcement.  Fenwick's

FENWICK & WEST LLP
ATTORNEYS AT LAW

working relationship with Yuga Labs is further strengthened by the fact that Yuga Labs' current Chief Legal Officer is a former Fenwick attorney who previously worked with many of the attorneys currently working on this matter.

26.     Fenwick has represented Yuga Labs in multiple trademark disputes that are directly related to this action, including those brought against Mr. Ripps' business partners Ryan Hickman in the District of Nevada (*Yuga Labs, Inc. v. Ryan Hickman*, No. 2:23-cv-111-JCM-NJK (D. Nev. Aug. 25, 2023)) and Thomas Lehman in the Northern District of New York (*Yuga Labs, Inc. v. Lehman*, Case No. 1:23-cv-85-MAD-TWD (N.D.N.Y Feb. 6, 2023)).  Through these lawsuits, Fenwick has gained unparalleled knowledge of the facts and issues involved in this litigation.  Fenwick's hourly rates charged to Yuga Labs were the same across these three related lawsuits.

27.     I exercised my discretion to assign lawyers and staff on this matter to roles appropriate for their level of experience and their unique skillset, in an effort to minimize costs.  I worked closely with the partners and counsel on strategy and direction while delegating much of the drafting to more senior attorneys and leveraging the more junior attorneys for research and other appropriate tasks.

28.     Yuga Labs' attorneys at Fenwick kept detailed, contemporaneous time records for all time billed to client matters handled by the firm.  Attorneys record their time to the nearest tenth of an hour in an electronic time record system.  Each timekeeper also includes an explanation of the work performed.  Fenwick's electronic time record system, common among comparable law firms, enables Fenwick to track fees incurred by the firm on behalf of its clients and further allows for the generation of monthly invoices from the electronic records describing the hours worked on a particular matter, the nature of the work performed, and the fees incurred for that work.  The attorneys' fee records supporting this fee request were exported from Fenwick's electronic records.

FENWICK & WEST LLP
ATTORNEYS AT LAW

29.     I reviewed Fenwick's electronic records for work performed in this matter before monthly invoices were generated and sent to Yuga Labs for payment to ensure that they were accurate and reasonable.  During that review, I evaluated the specific work performed by each attorney and paralegal and compared their individual time and the total amount of time and fees the firm billed to Yuga Labs to the services rendered.  If I saw instances in which time entries were unjustified based on my knowledge of the work actually required to be performed, I deleted or reduced the time from the total amount billed to Yuga Labs.

30.     Since June 2022, when Fenwick was preparing to initiate this lawsuit on behalf of Yuga Labs against Defendants, Yuga Labs has timely paid each invoice in full for attorneys' fees for services rendered related to this matter.

31.     On November 1, 2023, Yuga Labs served on Defendants' counsel true and correct copies of Fenwick's billing records from June 2022 through October 30, 2023, including the hours worked, billing rate, and narrative description for each timekeeper's entries during this time period.  On December 11, 2023, Yuga Labs provided the Judge Morrow with the same records it previously served on Defendants' counsel.

32.     For the billing periods prior to December 2022, Fenwick charged Yuga Labs its prevailing market rate.  For the December 2022 billing period, Fenwick offered Yuga Labs a 15% discount on its prevailing market rate.  For the January 2023-May 2023 billing periods, Fenwick offered Yuga Labs a 17.5% discount on its prevailing market rate.  For the June and July billing periods, Fenwick offered Yuga Labs a 15% discount on its prevailing market rate.  For the August to October 2023 billing periods, Fenwick offered Yuga Labs a 12.5% discount on its prevailing market rate.

33.     The charts below summarize the attorneys' fees that Yuga Labs incurred to litigate this case against Defendants and that it seeks to recover by this fee request.

**2022**

| Timekeeper | Rate | Hours | Total | Total, with Monthly Discounts Applied |
|---|---|---|---|---|
| Ball, Eric | $1,290.00 | 470.3 | $606,687.00 | $585,576.15 |
| Melcher, Molly | $1,240.00 | 96.3 | $119,412.00 | $105,313.20 |
| Culp, Kimberly | $1,135.00 | 415.8 | $471,933.00 | $446,191.20 |
| Fares, Tony | $1,030.00 | 817.4 | $841,922.00 | $823,891.85 |
| Thomas, Ethan M. | $1,030.00 | 382.7 | $394,181.00 | $372,581.90 |
| Kwock, Ryan | $780.00 | 322.7 | $251,706.00 | $236,847.00 |
| Hauh, Katie M. | $640.00 | 316.8 | $202,752.00 | $188,956.80 |
| Andreyeva, Sofiya | $640.00 | 74.3 | $47,552.00 | $40,419.20 |
| Ra, Jeremy Y | $515.00 | 322.8 | $166,242.00 | $158,169.38 |

**2023**

| Timekeeper | Rate | Hours | Total | Total, with Monthly Discounts Applied |
|---|---|---|---|---|
| Ball, Eric | $1,410.00 | 1439.8 | $2,030,118.00 | $1,704,111.91 |
| Melcher, Molly | $1,355.00 | 799.2 | $1,082,916.00 | $903,561.43 |
| Gregorian, Todd | $1,375.00 | 57.1 | $78,512.50 | $66,735.63 |
| Culp, Kimberly | $1,240.00 | 1320.8 | $1,637,792.00 | $1,368,603.50 |
| Fares, Tony | $1,185.00 | 1461.1 | $1,731,403.50 | $1,452,173.06 |
| Thomas, Ethan M. | $1,185.00 | 1033.6 | $1,224,816.00 | $1,028,896.99 |
| Sims, Mary Griffin | $1,125.00 | 44.1 | $49,612.50 | $40,930.31 |
| Kwock, Ryan | $950.00 | 1264.3 | $1,201,085.00 | $1,003,542.00 |
| Hauh, Katie M. | $710.00 | 1050.8 | $746,068.00 | $622,558.18 |
| Kalinowski, Zack A. | $710.00 | 688.7 | $488,977.00 | $413,220.00 |
| Andreyeva, Sofiya | $710.00 | 954.3 | $677,553.00 | $563,305.13 |
| Ra, Jeremy Y | $610.00 | 860.7 | $525,027.00 | $438,225.53 |
| Alexander, Keysha | $610.00 | 262 | $159,820.00 | $133,339.90 |

Fenwick & West LLP
Attorneys at Law

### Yuga Labs' Reasonable Discovery Efforts

34.     As evidence of the reasonableness of Yuga Labs' discovery efforts, Yuga Labs hereby submits several demonstrative discovery orders for consideration. Attached hereto as **Exhibit 6** is the Court's Order Denying Defendants' Motion to Compel Inflammatory Material (Dkt. 87).  Attached hereto as **Exhibit 7** is the Court's Order Denying Defendants' Ex Parte Application (Dkt. 119).  Attached hereto as **Exhibit 8** is the Court's Order Denying Defendants' Ex Parte Application to File Sur-Reply (Dkt. 215).  Defendants also sought documents and communications relating to the settlement negotiations with third party Thomas Lehman, which Yuga Labs contested after offering a compromise position where Yuga Labs would provide the settlement agreement to Defendants.  Dkt. 121-1. Mr. Lehman's counsel also opposed the production of these documents and reported to counsel for Yuga Labs that he had communicated to Defendants' counsel that these documents would not help their case.  Undeterred, Defendants pursued the unhelpful documents.

35.     Wylie Aronow, a founder of Yuga Labs, was unable to appear at his originally scheduled deposition due to a serious medical condition.  This deposition was promptly rescheduled and taken by Defendants on March 6, 2023.

36.     Greg Solano, another founder of Yuga Labs, was unable to attend his deposition when noticed because of a scheduling conflict.  The Court ordered the parties to "meet and confer in good faith on the arrangements" for scheduling that deposition.  Dkt. 77 at 2.  The parties met and conferred promptly, and Defendants took Mr. Solano's deposition on January 17, 2023, nine days after the Court's order.

37.     In-house counsel, including the Chief Legal Officer of Yuga Labs, were present for all deposition preparation sessions for Yuga Labs' founders, Chief Executive Officer, Chief Creative Officer, and Board Member.  Because of Defendants' continued introduction of inflammatory questioning and argument,

FENWICK & WEST LLP
ATTORNEYS AT LAW

Yuga Labs had to prepare each of these witnesses to respond to questions about irrelevant topics such as neo-Nazism, pedophilia, and racism.  Yuga Labs' counsel was also substantially involved in strategy throughout the litigation, in particular as it related to what was necessary to achieve to protect the BAYC brand.  They also reviewed the filings and provided substantive edits to many, if not most, of Yuga Labs' filings.  Yuga Labs is not seeking fees for this work done by in-house counsel.

38.     Yuga Labs took five depositions to support its case.  Defendants took ten depositions.

39.     Defendants issued deposition subpoenas for Paris Hilton and Jimmy Fallon, both of whom are celebrities and unrelated to Defendants' trademark infringement.  Defendants withdrew these subpoenas only after counsel for Yuga Labs appeared for Ms. Hilton's deposition to learn for the first time that Defendants had never served the subpoena and were not proceeding with the deposition at all.

40.     In an effort to streamline discovery and reduce costs, Yuga Labs issued document subpoenas to certain parties and sought authentication declarations from those witnesses to authenticate various exhibits for trial and avoid the time and expense of a deposition.

**Yuga Labs' Success In This Litigation**

41.     On October 3, 2022 Defendants filed an Anti-SLAPP Motion to Strike and Motion to Dismiss, alleging, among other things, that their infringement was a First Amendment protected activity.  Dkt. 48.

42.     On December 16, 2022 the Court denied this motion and held that the *Rogers* test does not apply to Defendants' infringement, holding that all of Defendants' infringing activities are "commercial activities designed to sell infringing products, not expressive artistic speech protected by the First Amendment."  Dkt. 62 at 7.  On October 30, 2023 the Ninth Circuit Court of Appeals affirmed this decision.  Dkt. 432.

43.     On March 17, 2023 the Court granted in part Yuga Labs' Motion to Strike and Motion to Dismiss Defendants' Counterclaims.  In this order, the Court dismissed Defendants' counterclaims for declaratory judgments of no copyright infringement.  Dkt. 156 at 14.

44.     On April 21, 2023 the Court granted Yuga Labs summary judgment on all of the claims submitted for summary judgment, and all claims ultimately presented at trial, reserving only the issue of remedies for further adjudication. Dkt. 225.  The Court held that Yuga Labs was entitled to damages for its trademark infringement and cybersquatting claims and that Yuga Labs was entitled to injunctive relief, without deciding upon the amount of remedies or scope of that injunction.  *Id.* at 13-14.  The Court also granted Yuga Labs' summary judgment on Defendants' remaining copyright counterclaim, holding that Yuga Labs did not knowingly misrepresent Defendants' infringing activities when it sent certain notices to Defendants.  *Id.* at 21.  The Court further reaffirmed its prior holding that the *Rogers* test does not apply and that "Defendants' sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag[.]"  *Id.* at 16.  And the Court held that "Defendants used the BAYC marks in an effort to confuse consumers." *Id.* at 12.

45.     Despite these rulings, Defendants continued to re-litigate these issues. Indeed, following the Court's December 16, 2022 order, Defendants raised these rejected arguments in no fewer than twelve filings with the Court. *See, e.g,* Dkt. 96 (Defendants' Opposition to Yuga Labs' Motion to Strike and Dismiss Counterclaims); Dkt. 163 (Defendants' Opposition to Yuga Labs' Motion for Summary Judgment); Dkt. 243 (Defendants' Pretrial Contentions of Facts and Law); Dkt. 274 (Joint Statement on Motion *in Limine* No. 1); Dkt. 275 (Joint Statement on Motion *in Limine* No. 2); Dkt. 344 (Cahen Trial Declaration); Dkt. 345 (Hickman Trial Declaration); Dkt. 346 (Ripps Trial Declaration); Dkt. 350 (Defendants' Initial Proposed Findings of Fact and Conclusions of Law); Dkt. 417-1 (Defendants'

FENWICK & WEST LLP
ATTORNEYS AT LAW

Post-Trial Proposed Findings of Fact and Conclusions of Law); Dkt. 420 (Joint Statement Regarding Objections to Yuga Labs' Post-Trial Findings of Fact and Conclusions of Law); Dkt. 421 (Joint Statement Regarding Objections to Defendants' Post-Trial Findings of Fact and Conclusions of Law).

46.     On October 25, 2023 the Court issued its Findings of Fact and Conclusions of Law and granted Yuga Labs all of the monetary relief that Yuga Labs requested, the exact injunction requested, and found that this was an exceptional case in favor of Yuga Labs.  Dkt. 431.

47.     To my best knowledge, this is the first time that a court has ever ordered the transfer of a smart contract as a remedy for trademark infringement and/or cybersquatting.

48.     At the parties' first mediation, in January 2023 (after the Court had denied Defendants' motion to strike and to dismiss), Defendants' stated settlement position required that Yuga Labs make them "whole" monetarily.  Notwithstanding this failed mediation, Yuga Labs made many repeated attempts throughout this litigation to settle this matter.  I regularly reached out to the parties' mediator, Judge Segal, for assistance and guidance on how to structure Yuga Labs' settlement proposal.  After the Court's order granting Yuga Labs summary judgment on all claims submitted, Dkt. 225, the parties once again explored settlement.  Despite Yuga Labs' overwhelming success at the summary judgment phase, during that conversation Defendants maintained their position that Yuga Labs should make Defendants "whole" as a condition of any settlement, including Yuga Labs paying Defendants millions of dollars.  Defendants also refused to stipulate to a settlement that would have prevented them from continuing to market the RR/BAYC NFTs, among other forms of injunctive relief that Judge Walter ultimately ordered, and again refused to settle even after Yuga Labs' dropped its request for a non-disparagement clause.  Defendants' unreasonable settlement positions are further support for the Court's exceptional case finding. *See Int'l Business Advisors*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Ltd. v. Payless Drug Stores Northwest Inc.*, 27 U.S.P.Q.2d 1053, 1054 (N.D. Cal. Jan. 11, 1993) (granting motion for exceptional case in part because the party "made matters worse by making and maintaining outrageous settlement demands [and] failing to respond to reasonable settlement proposals").

49.     Yuga Labs voluntarily dropped its False Advertising claim at the suggestion of the Court.  Dkt. 309; June 9, 2023 Pretrial Conference Tr. (Dkt. 334) 27:10-12 ("And that – those remedies – actually and the damages are the same for the infringement claim and the false advertising claim.").  Yuga Labs' fees incurred in relation to only this claim amount to approximately $236,000.

50.     Yuga Labs also incurred various costs in the course of obtaining its victory that it now does not seek compensation for in order to discount the request for costs.  These include mediation costs (*see Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. 07-cv-8298-ABC-RZX, 2010 WL 11404472, at *3 (C.D. Cal. June 17, 2010), *aff'd*, 526 F. App'x 761 (9th Cir. 2013) ("mediator fees" are recoverable)), hotel costs (*see Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (affirming award of costs for "hotel bills")), trial graphics costs (*see Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2009 WL 1405208, at *2 (N.D.N.Y. May 15, 2009) (awarding costs of "outside trial graphics vendor")), and costs for data hosting of documents produced in discovery (*see Mauss v. Nuvasive, Inc.*, No. 13cv2005, 2018 WL 6421623, at *9 (S.D. Cal. Dec. 6, 2018) (approving costs for "data hosting")).

51.     Yuga Labs has also not asked for additional fees for time spent on this fees and costs dispute, despite the fact that such fees are ordinarily compensable. *See Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995) (citation omitted) ("Recoverable attorneys' fees may include fees incurred while doing work on the underlying merits of the action ('merits fees') as well as fees incurred while pursuing merits fees ('fees on fees').").

52.   Both before and during the pendency of this litigation, Defendants tweeted frequently about this litigation and the blockchain industry more generally. Attached hereto as **Exhibit 9** is a true and correct copy of and collection of Tweets from Defendant Jeremy Cahen (@Pauly0x).

53.   On June 6, 2023, Mr. Cahen also posted excerpts from Lauren Kindler's (Yuga Labs' damages expert) expert report alerting RR/BAYC holders that Ms. Kindler had proposed a hypothetical buyback as a measure of damages in this litigation.  This caused the floor price, the lowest price that an NFT sells on the secondary market, of the RR/BAYC NFTs to surge, which required Ms. Kindler to update her report based upon this new floor price.  Dkt. 287-10.  Ms. Kindler testified at trial that "subsequent to those Tweets, we did, in fact, see significant evidence of holders of these NFTs stating exactly what I had indicated in my initial report.  And then I subsequently quantified as one example what the impact of that could be to my opinion regarding a purchase and destroy, mitigation of harm approach."  Trial Tr. (Dkt. 393) 179:22-180:2.  In light of Ms. Kindler's opinion that damages would not remedy the harm to Yuga Labs, Yuga Labs dropped its damages claim to focus the trial on its equitable remedies, which was the primary form of relief Yuga Labs had been seeking from the outset of litigation.  Dkt. 309.

I declare under penalty of perjury under the laws of State of California and the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on December 22, 2023

_/s/ Eric Ball_____
Eric Ball