ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Attorneys for Plaintiff
*Yuga Labs, Inc.*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
   *Ryder Ripps and Jeremy Cahen*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>　　　　　Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**JOINT STATEMENT RE PROPOSED FINAL JUDGMENT** |

Plaintiff Yuga Labs, Inc. ("Yuga Labs") and Defendants Ryder Ripps and Jeremy Cahen (collectively, "Defendants") hereby respond to the Court's January 18, 2024 Order (Dkt. 446). The parties met and conferred on January 25, 2024, but were unable to agree to a joint proposed final judgment.

## I. YUGA LABS' STATEMENT

Yuga Labs' has lodged its Proposed Final Judgment, which faithfully applies the Court's post-trial findings.

### A. Terms of the Proposed Final Judgment

***First***, the Proposed Final Judgment consists of a simple tally of the monetary judgment against Defendants, consisting of (1) disgorgement of Defendants' profits as determined in the Court's Findings of Fact and Conclusions of Law (Dkt. 431 at 28); (2) statutory damages as calculated in the same (*id.*); (3) the reasonable attorneys' fees and costs as calculated in the Special Master's Report & Recommendation (Dkt. 445 at 29, adopted by the Court in Dkt. 448); and Yuga Labs' expert witness fees as explained *infra* (Dkt. 448, adopting the Special Master's recommendation regarding certain expert witness fees).

***Second***, the Proposed Final Judgment confirms that Defendants remain liable for $120,000 in stipulated reasonable attorneys' fees incurred in striking Defendants' state-law counterclaims under the California anti-SLAPP statute. *See* Dkts. 156, 227, 228. Defendants have not yet paid that sum, which by stipulation must be paid within two weeks of the Court's entry of final judgment. *Id.*

***Third***, the Proposed Final Judgment orders Defendants to pay all of the Special Master's fees. *See* Dkt. 440 at 2 ("the Court will consider a recommendation, if any, by the Special Master regarding the final allocation of the fees and costs associated with the Special Master's services"); Dkt. 445 at 29 ("The special master recommends that the court order defendants to pay . . . 100% of the cost of preparing this report and recommendation."). Yuga Labs paid $27,875.00 as a retainer and case management fee, for which it is now entitled to

reimbursement.  *See* Dkt. 448 (adopting the Special Master's recommendation).

***Fourth***, the Proposed Final Judgment orders Defendants to pay post-judgment interest on the monetary portion of the judgment.  The interest rate is set at the time of the judgment, but as the rate varies weekly, the percentage will depend on the date the Court enters judgment.  *See* 28 U.S.C. § 1961.

***Fifth***, the Proposed Final Judgment includes verbatim the injunction provided in Yuga Labs' Proposed Findings of Fact and Conclusions of Law (Dkt. 416), which injunction the Court has not yet entered as a judgment.  The terms of this properly tailored injunction are supported by the facts and authorities provided in Yuga Labs' post-trial submissions.  Dkts. 430-101, 102, 103, 104.  Specifically, consistent with the Court's findings, the proposed injunction requires Defendants "to transfer control of rrbayc.com, apemarket.com, rrbayc-v0.netlify.app, the @ApeMarketplace Twitter account, the @ApeMarketBot Twitter account, and the RR/BAYC smart contract to Yuga."  Dkt. 431 at 22 (footnote omitted).  This is necessary to "allow Yuga to regain control over the instrumentalities of commerce that bear its BAYC Marks and allow Yuga to protect its brand and prevent future harm."  *Id.*  The additional provisions of the proposed injunction are necessary to effectuate these goals and necessary to prevent "an endless cycle of actions attempting to compel Defendants to comply with the terms of the injunction" and to prevent Defendants from "easily continu[ing] their infringement of Yuga's BAYC Marks."  *Id.* at 23.  For example, a willful infringer, like Defendants, cannot keep their remaining inventory of the infringing products.  *See* 15 U.S.C. § 1118 (court may order infringing articles to "be delivered up and destroyed").[1]  And the proposed judgment includes the standard requirement from the Lanham Act that

---

[1] Indeed, destruction is a typical remedy in a permanent injunction for trademark infringement.  *See, e.g.*, *Monster Energy Co. v. Integrated Supply Network*, No. 5:17-cv-548-CBM-RAOx (C.D. Cal. June 17, 2021) (Dkt. 634); *The Peonies Shop v. Trading Capital Corp.*, No. 2:23-cv-3054-JFW-AFMx (C.D. Cal. July 5, 2023) (Dkt. 30); *BMW of N.A. v. U.S. Elogistics Servs.*, No. 5:19-cv-789 JFW-RAOx (C.D. Cal. Mar. 3, 2020) (Dkt. 41).

Defendants report their compliance with the injunction to the Court. *See* 15 U.S.C. § 1116(a). The additional provisions are also supported by precedent in the NFT and trademark infringement space. *See* [Order of Permanent Injunction, *Hermès International v. Rothschild*, No. 1:22-cv-384 (S.D.N.Y. June 23, 2023) (Dkt. 190)](#) (ordering defendant to, among other things, "[a]irdrop to all 'MetaBirkins' NFTs holders a copy of this Order"). This injunction is not intended to and would not limit Defendants' free speech rights, including their ability to lawfully criticize Yuga Labs. It would merely enjoin further infringement, return control of Yuga Labs' brand to its rightful owner, end Defendants' association with the BAYC brand, and transfer the instrumentalities of Defendants' infringement to Yuga Labs. Defendants have offered no evidence or plausible explanation as to how mere criticism could land them in contempt under these proposed terms. The injunction also reaches the appropriate parties. Fed. R. Civ. P. 65(d)(2); *see also* Dkt. 431 at 21 ("the Court concludes that Defendants, their agents, employees, attorneys, and anyone acting in concert or participating with them, should be permanently enjoined . . . .").

Defendants did not propose any alternative injunction before or after trial. Defendants also did not object to (and therefore waived any objection to) Sections 1(c), 1(f), and 1(g) (Dkt. 430-100 at 5) and Sections 2(c) and 2(d) (Dkt. 430-101 at 4) of the proposed injunction in their post-trial submission. And, two other federal courts have entered similar injunctions against Defendants' business partners. *See* [*Yuga Labs, Inc. v. Hickman*, No. 2:23-cv-00111-JCM-NJK (D. Nev. Aug. 25, 2023) (Dkt. 30)](#); JTX-621 ([*Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023) (Dkt. 12)](#)). Yuga Labs' reasonable and narrowly tailored proposal should be adopted.

***Finally***, the Proposed Final Judgment dismisses without prejudice the claims that were not tried at the July 31, 2023 Court trial. Yuga Labs consents to such dismissal in order to make this Court's judgment final as to all claims. *See* Fed. R.

Civ. P. 41(a)(2) (the court may dismiss claims without prejudice "on terms that the court considers proper"). If Defendants prevail on their second appeal to the Ninth Circuit and obtain a remand of this case, Yuga Labs should not be precluded from later trying any of its claims that were not adjudicated at trial.[2] To ensure an expeditious and efficient resolution of this matter while preserving all parties' rights, the Court should dismiss these untried claims without prejudice.

Yuga Labs' proposal faithfully, concisely, and non-argumentatively sets forth the Court and Special Master's findings to finally bring closure to this litigation without further dispute. The Court should adopt its Proposed Final Judgment.

### B.   Computation of Expert Witness Fees

Yuga Labs is entitled to $19,255.92 in expert witness fees, which Defendants do not contest. The R&R recommends that the Court "allow Yuga Labs to recover for the experts' time sitting for deposition, for their travel time, and for any time consumed reviewing and correcting their transcripts." Dkt. 445 at 27. Yuga Labs streamlined its request for the convenience of all parties and seeks only the fees incurred by its expert witnesses actually sitting for their depositions.[3]

### C.   Defendants Are Not Entitled to an Automatic Stay of the Monetary Component of the Judgment

Defendants improperly ask the Court to summarily stay enforcement of the monetary component of the judgment, while refusing to post any bond. A stay of execution of the judgment may be accomplished only through an appropriate post-judgment motion. Fed. R. Civ. P. 62(b) (permitting such a motion "[a]t any time *after* judgment is entered" (emphasis added)). Defendants would also be required

---

[2] Jurisdiction over the state law claims was returned to the Court ***after trial***, on November 21, 2023. Dkt. 436 (mandate of the Ninth Circuit Court of Appeals).

[3] The fee total is substantiated by documents already in the record. Laura O'Laughlin attended her deposition for six hours and 49 minutes (Dkt. 265-3) at a rate of $795/hour (Dkt. 267-1), for **$5,419.25** in fees. Jonah Berger attended his deposition for seven hours and 32 minutes (Dkt. 267-3) at a rate of $1,100/hour (Dkt. 267-1), for **$8,286.67** in fees. Lauren Kindler attended her deposition for six hours and 10 minutes (Dkt. 268-3) at a rate of $900/hour, for **$5,550.00** in fees.

to post a sufficient bond or other security to stay the judgment, *id.*, or demonstrate that the Court should waive that requirement.

Defendants attempt to circumvent all of these requirements by prematurely lodging their desired result in a proposed judgment. Yuga Labs will respond to a proper post-judgment motion on this issue if and when Defendants file one, but Yuga Labs expects to oppose a stay until Defendants post a monetary bond of 150% the total monetary component of the judgment.[4]

### D. The Court Need Not Adopt the Superfluous Detail in Defendants' Proposed Final Judgment

Defendants' proposed judgment contains extraneous and cherry-picked characterizations of the proceedings (with which Yuga Labs disagrees), which for simplicity can and should be omitted from the Court's judgment. For example, the Court's prior dispositive orders do not need to be explicitly recounted in the judgment, and Yuga Labs' review of this Court's judgments in previous civil matters suggests it is not this Court's practice to do so. Defendants' counterclaims were not at issue at trial, so they need not be recounted either. And Defendants are certainly not entitled to judgment in their favor on the state law claims that were not tried or adjudicated. Finally, Yuga Labs disputes Defendants' characterization that certain claims and remedies not pursued at trial were "abandoned." Yuga Labs' proposed judgment takes the simpler route of only describing the claims actually tried to the Court and remedies obtained.

---

[4] *See, e.g.*, *Allied Premier Ins. v. United Fin. Cas. Co.*, No. 18-cv-88 JGB (KKX), 2020 WL 1277760, at *1 (C.D. Cal. Feb. 27, 2020) ("a bond of 1.25 to 1.5 times the judgment is typically required[] before a court approves bond under Rule 62(b)"); *Lampkin v. Cnty. of Sacramento*, No. 2:20-cv-1204-JAM-JDP, 2022 WL 17348378, at *1 (E.D. Cal. Nov. 30, 2022) (discussing factors the court must consider before "departing from the usual requirement of a full supersedeas bond," including "the complexity of the collection process" and "whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money"); *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZxX), 2017 WL 11643347, at *2 (C.D. Cal. June 30, 2017) ("Typically, an unsecured stay is disfavored"); *Hermès v. Rothschild*, No. 1:22-cv-384 (S.D.N.Y. Dec. 29, 2023) (Dkt. 212) (declining to stay enforcement of monetary judgment and to waive bond requirement.).

## II. DEFENDANTS' STATEMENT

The judgment in this case should (1) enter judgment on all claims, including Yuga's state law claims, (2) enter the injunction that the Court has already ordered without further modification, and (3) stay enforcement of monetary remedies pending appeal. In submitting their proposed form of judgment, Defendants expressly reserve and do not waive their rights to appeal the final judgment and all underlying judgments.

### A. The Court Should Enter Judgment on Yuga's False Advertising Claim and All State Law Claims Rather Than Dismissing Without Prejudice

Yuga originally asserted eight state law legal claims, before withdrawing all legal remedies. This Court should accordingly enter judgment on these withdrawn claims (not merely dismiss them without prejudice as Yuga's proposed judgment suggests). See Heath v. Google LLC, No. 15-cv-01824-BLF, 2018 WL 398463, at *4 (C.D. Cal. Jan. 12, 2018) (holding that plaintiffs are precluded from reasserting a voluntarily withdrawn claim because "the claim has been waived");

Specifically, on June 15, 2023 (after this case had been pending for a year), Yuga notified the Court that "Yuga Labs is withdrawing all legal remedies and will proceed on its prayer for equitable remedies as to the remaining active claims – Claim 1 and Claim 3." Dkt. No. 315-1 at 2. Yuga thus expressly withdrew all claims other than "the remaining active Claims," namely Claims 1 and 3. Yuga obtained a significant, strategic benefit from this waiver—it deprived Defendants of the opportunity to present their case regarding damages to a jury of their peers. Yuga also confirmed that it had abandoned its second and eighth causes of action in the parties' proposed pretrial order. Dkt. No. 320-1 at 3.

Yuga's second cause of action for false advertising (Claim 2) and Yuga's state law claims (Claims 4-11) are all legal claims and thus subject to Yuga's withdrawal. See, e.g., T&T Enters. LLC v. Aztec Secret Health & Beauty Ltd., No.

CV-18-08231-PCT-DWL, 2018 WL 6727266, at *8 (C.D. Cal. Dec. 21, 2018) ("T&T alleges two perceptible legal claims for tortious interference with business expectancy"); *California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1167 (C.D. Cal. Nov. 5, 2009) ("legal claims for interference with contractual relations"); *James v. J2 Cloud Servs. Inc.*, No. 2:16-cv-05769-CAS(PJWx), 2018 WL 6092461, at *5 (C.D. Cal. Nov. 19, 2018) (noting that "unjust enrichment is a legal claim"); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) (recognizing that "claims for breach of contract and negligence are legal claims"; *see also Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 786 (C.D. Cal. 2011) ("asserting their legal claim for [copyright] infringement in the United States"). Therefore, by expressly withdrawing all legal remedies and electing to proceed on Claims 1 and 3 alone, Yuga waived Claims 2 and 4 through 11. Defendants accordingly are entitled to judgment in their favor on these claims.

### B. The Court Should Enter the Injunction Without Modification

Yuga's proposed judgment improperly seeks to *sub silentio* re-litigate the scope of the Court's injunction. This Court has already determined the scope of the injunction in its October 25, 2023, order. Dkt. No. 431 at 21-23. Yuga's proposed judgment adds additional terms that Yuga previously proposed (Dkt. No. 416 at 20-23) and that this Court already rejected. The judgment should not modify the injunction that the Court already entered.

The Court's prior order limits the scope of the injunction to (1) enjoining Defendants from "marketing, promoting, or selling products or services, including RR/BAYC NFTs and APE Market that use the BAYC Marks," and (2) "transfer control of rrbayc.com, apemarket.com, rrbayc-v0.netlify.app, the @Apemarketplace Twitter account, the @ApeMarketBot Twitter account, and the RR/BAYC smart contract to Yuga." Dkt. No. 431 at 21-22. This is precisely what Defendants' proposed judgment captures.

To the extent that Yuga is implicitly invoking Local Rule 7-18's mechanism

for seeking reconsideration of a prior order, it has not come anywhere near satisfying the rule's demanding requirements.  Yuga identifies no "good cause" for why it waited nearly three months to request reconsideration, nor has it identified any new law or facts that would warrant change this Court's prior decision.  Notably, Defendants have complied with the Court's injunction since its entry.  Defendants have ceased marketing, promotion, and selling activities.  They have also transferred rrbayc.com, apemarket.com, the @Apemarketplace Twitter account, and the RR/BAYC smart contract.  While Defendants have not been able to transfer rrbayc-v0.netlify.app and the @ApeMarketBot Twitter, that is because they do not control them, as they explained to Yuga.  In short, Yuga has articulated no basis for modifying the Court's injunction now to include new terms that the Court previously considered and rightly rejected.

### C. Enforcement Of Monetary Remedies Should Be Stayed Pending Appeal

The circumstances of this case warrant a stay of enforcement of monetary remedies pending appeal.  See *American Color Graphics, Inc. v. Travelers Prop. Cas. Ins. Co.*, No. C 04-3518-SBA, 2007 WL 1520952, at *1 (N.D. Cal. May 23, 2007) ("A court … has discretion to stay execution of judgment pending appeal without requiring a bond.").  In deciding to stay enforcement of a monetary judgment pending appeal, courts consider the *Dillon* factors:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment ... (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Sarver v. Hurt Locker LLC*, No. 2:10-cv-09034-JHN-JCx, 2012 WL 12892147, at *3 (C.D. Cal. Feb. 2, 2012) ("The *Dillon* factors are regularly applied

in the Ninth Circuit courts"); *United States v. Moyer*, No. 07-00510, 2008 WL 3478063, at *12 (N.D. Cal. Aug. 12, 2008) (holding same).  These factors weigh in favor of a stay pending appeal without bond.

There is no indication that the collection process would be unusually complex, and no reason to believe that any time would be lost to obtain a judgment if and when the Ninth Circuit affirms, because the monetary amount of the judgment will have already been decided by this Court without the need for further litigation.

Further, in addition to the disgorgement amount of $1,575,362.92, this Court has ordered attorneys' fees and costs that far exceed the remedy obtained in this case—$6,983,432.62 in fees and $317,295.04 in costs.  Defendants are two individuals who are not able to post a bond of the magnitude required for such a judgment.  Bonding such a judgment thus risks placing Defendants "in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position." *Sarver*, 2012 WL 12892147, at *3; *see also Interactive Health LLC v. King Kong USA*, No. 06-cv-1902-VBF, Dkt. No. 861 at 12 (C.D. Cal. Jan. 5, 2009) (explaining that forcing the party into bankruptcy "would provide less security, not more").  Therefore, a stay without bond—of the monetary portion of the judgment only, not a stay of the injunction—would best serve the interests of all parties.  *See Interactive Health LLC v. King Kong USA*, No. 06-cv-1902-VBF, Dkt. No. 898 at 2 (C.D. Cal. 2008) (granting motion to stay enforcement without bond).

| | |
|---|---|
| Dated: January 26, 2024 | FENWICK & WEST LLP<br><br>By: */s/ Eric Ball*<br>Eric Ball<br>Attorneys for Plaintiff<br>YUGA LABS, INC. |
| Dated: January 26, 2024 | WILMER CUTLER PICKERING HALE & DORR LLP<br><br>By: */s/ Louis W. Tompros*<br>Louis W. Tompros<br>Attorneys for Defendants<br>RYDER RIPPS and JEREMY CAHEN |

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Central District of California's Civil L.R. 5-4.3.4(a)(2)(i), Eric Ball attests that concurrence in the filing of this document has been obtained from Louis W. Tompros.

*/s/ Eric Ball*
Eric Ball