1              UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3           HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

4

5   YUGA LABS, INC.,                )
                                    )
6            PLAINTIFF,             )     CASE NO.
                                    )
7            vs.                    )     CV 22-04355-JFW
                                    )
8   RYDER RIPPS, JEREMY CAHEN,      )
                                    )     PAGES 1 TO 31
9            DEFENDANTS.            )
    _____)

10

11

12

13                   REPORTER'S TRANSCRIPT OF
                   PRETRIAL CONFERENCE VIA ZOOM
14                 WEDNESDAY, JULY 26, 2023
                          8:02 A.M.
15                 LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22

23   _____

24          MIRANDA ALGORRI, CSR 12743, RPR, CRR
               FEDERAL OFFICIAL COURT REPORTER
               350 WEST 1ST STREET, SUITE 4455
25             LOS ANGELES, CALIFORNIA 90012
                  MIRANDAALGORRI@GMAIL.COM

1                       **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4          FENWICK & WEST, LLP
           BY:  ERIC BALL
5          801 California Street
           Mountain View, California 94041
6

7

     **FOR THE DEFENDANTS:**
8
           WILMER CUTLER PICKERING HALE & DORR, LLP
9          BY:  LOUIS W. TOMPROS
           60 State Street
10         Boston, Massachusetts 02109

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, JULY 26, 2023

 2                            8:02 A.M.

 3                              ---

 4

 5              THE CLERK:  Calling CV 22-4355, Yuga Labs, Inc.,

 6   versus Ripps, et al.

 7              Counsel, please state your appearances.

 8              MR. BALL:  Eric Ball for Yuga Labs, Inc., from

 9   Fenwick West.

10              MR. TOMPROS:  Good morning, Your Honor.

11   Louis Tompros from Wilmer Cutler Pickering Hale & Dorr, LLP, on

12   behalf of the defendants.

13              THE COURT:  All right.  Good morning to all.

14              I have reviewed all of the pretrial documents

15   filed by the parties, the last of which were filed yesterday

16   which were the joint statements, docket Nos. 365 through 370.

17   I appreciate all of counsel's hard work in preparing those

18   documents.

19              I set the conference for today because there are

20   several issues that I wanted to discuss with counsel in

21   anticipation of our trial on Monday.  Before I forget, we're

22   going to start Monday at 8:00 o'clock.  We're going to adopt my

23   jury trial schedule which is basically we will begin at 8:00.

24   There won't be a lunch break, but we will take two short breaks

25   during the day.  We can discuss that in more detail at the
```

1   conclusion of the hearing.

2            The trial declarations have been filed.  They

3   were filed -- the plaintiff has filed six trial declarations,

4   and the defense has filed three trial declarations.  The

5   defendant has filed objections to the declarations -- trial

6   declarations of the -- of all but one of the plaintiff's

7   witnesses.  As I indicated, counsel filed yesterday the joint

8   statements, and when I came in this morning, I found the

9   courtesy copies of the joint statements waiting for me.  So I

10  have those to work on today.

11           However, in order to assist the Court in ruling

12  on the defendants' objections, I'm going to ask counsel for the

13  defendant to prepare what I will call a ruling chart which will

14  be in the form of a proposed order, and it will consist of

15  three columns.  The first column will be a citation to the

16  testimony that is objected to.  And I only want -- and this

17  should be fairly easy to do because I only want the objections,

18  the paragraph, line and pages.  And then -- I don't want

19  anything else other than that.

20           Then the middle column I want to have you include

21  a citation to the Federal Rule of Evidence that the objection

22  is based on.  I don't want any argument.  I just want if it's

23  Rule 801, 802 -- just Federal Rule of Evidence 801, 802 in the

24  middle column for each of those.  And then the third column

25  will be a ruling column, and you leave that column blank.  Then

1   when I'm going through the -- and making rulings on these

2   objections, I can use that as a form.

3                And you can file it in the form of a proposed

4   order so we can get it on the docket so everybody will have the

5   benefit of it.  That shouldn't be too terribly difficult

6   because it is a matter of cutting and pasting.  So if you can

7   file that sometime this morning, I would appreciate it.

8                With respect to the plaintiff, I was pleasantly

9   surprised that the plaintiff apparently has wisely adopted a

10  new approach and has not filed any objections to any of the

11  three declarations that were filed by the defense.  And I also

12  noted because -- when I was looking at the final pretrial

13  exhibit stipulation and I went through and confirmed but I want

14  to confirm with the plaintiff that the plaintiff has also

15  withdrawn each of the objections to the exhibits that were

16  attached to the defendants' declarations.

17                Is that correct?

18                MR. BALL:  That's correct, Your Honor.  We don't

19  think those exhibits are credible or, frankly, relevant, but

20  we're not asserting objections at this time.  I don't think it

21  is necessary to burden the Court given the Court's prior

22  rulings.

23                THE COURT:  Well, I appreciate that.  So there is

24  no ruling chart that needs to be prepared by the plaintiff.

25                I have also looked at the final witness list, the

1    plaintiff's final trial witness list which is Docket No. 361.

2    The defense is 363.  And then the joint trial witness estimate

3    form is Docket No. 362.

4                I noted that the plaintiff intends to call the --

5    in person six witnesses identified in Docket No. 361.  And in

6    that Docket No. 361, the plaintiff also indicates that it has

7    at least -- listed the testimony by deposition for three of the

8    defendants' live witnesses.

9                The defense in its -- in their witness list has

10   listed three live or in-person witnesses and then four

11   witnesses by deposition.  Two of those witnesses that are

12   identified by deposition are being called live by the

13   plaintiff, Muniz and Solano.  The other two, Lehman and Aromow,

14   are not going to appear live.

15               The question that I have for counsel is how you

16   intend to put on this deposition testimony.  I have the

17   revised -- the joint notice of revised deposition testimony for

18   several witnesses.  It appears as -- for the three defense

19   witnesses, I have it for the -- the designation for the -- I'm

20   looking here -- the plaintiff's witnesses.

21               Obviously there's work to be done with respect to

22   ruling on the objections that are in the notice of designated

23   testimony, but I don't intend to attempt that until I get a

24   better understanding of how you're going to try to put that on.

25               Let's take the plaintiff first.  What is your

1    intention with respect to this deposition testimony if these --

2    if these individuals -- these three individuals are going to be

3    testifying live, I assume you're going to be using the

4    depositions for impeachment?

5              MR. BALL:  Impeachment and also just statements

6    against interest.  So it's not just pure impeachment, but it's

7    also things that they have said that arrogance or interest I

8    want to make sure are in evidence for the Court.  I was

9    expecting to play it during their cross, or we can play it even

10   before they are up on the stand.

11             THE COURT:  I don't know how long you intend to

12   play it, but I don't think there is much benefit in playing it.

13   I have the deposition transcripts.  I can read it.  I know your

14   time estimate is it looks like about six hours, but I don't

15   know how much of this -- how much time is it going to take to

16   play this stuff?  Quite frankly, this is a court trial.

17   Sitting listening to deposition testimony is not a productive

18   use of our time in connection with the trial.

19             Certainly, if you want to use it for impeachment,

20   that's a different story because then you can play the relevant

21   portions for impeachment.  The witness can then react to the

22   attempt to impeach, and counsel for the opposing party can

23   attempt to address the impeaching testimony.

24             How long do you anticipate the play is going to

25   be?

1      MR. BALL:  I don't think it is expected to be

2  that long.  And there are two or three clips at least that I

3  think the Court should see live.  Live video is different from

4  the record, reading it.  So I think for at least those we want

5  to play them live.

6      THE COURT:  All right.  Well, then what I'm going

7  to -- for any deposition testimony, I'm going to have you

8  prepare a revised notice of deposition testimony in the same

9  format as the earlier designation because, if there is an

10  objection, I need to know what the objection is.  So you need

11  to get those on file immediately today so I can have an

12  opportunity to look at them.

13      Are there objections to the portions that you

14  think that I need to hear live?

15      MR. BALL:  At least for one of them I'm pretty

16  sure -- and my colleagues can let me know -- that there is not

17  an objection to Mr. Hickman's portion that we would be playing

18  live.

19      THE COURT:  All right.  How long do you

20  anticipate in minutes that is going to take?

21      MR. BALL:  That's a two- to three-minute clip.

22      THE COURT:  All right.  All together I'm talking

23  about.

24      MR. BALL:  All together, I'm --

25      THE COURT:  This is not impeachment.  This is now

1    the proposed testimony relating to various admissions.

2              MR. BALL:  Understood.  Okay.  I think that would

3    fall under my relating to admissions category.  So I would say

4    10 to 15 minutes.

5              THE COURT:  Okay.

6              MR. BALL:  And it might be less.

7              THE COURT:  All right.  Well, make sure you --

8    actually, afterwards you can meet and confer, and if you can

9    prepare a joint statement, and that will eliminate the Court

10   having to go back through and look at the deposition

11   transcripts and seeing what the objections are.  I just simply

12   don't have time to do that.

13              What about the defense?

14              MR. TOMPROS:  Your Honor, our sense was the

15   opposite, that because this was a court trial, there wouldn't

16   be a need for there to be any, you know, replaying or rereading

17   or anything like that of the video depositions.  All of the

18   witnesses that the plaintiff has identified are coming live,

19   and you can evaluate them live.  Even for the ones where we

20   have identified someone who is not coming live, our

21   expectation, what we submitted the designated testimony and

22   there are objections, that Your Honor can do it -- can rule on

23   those on the written record and review those depositions to the

24   extent they're useful as part of the written record without the

25   need to take up any court time.  You know, we think that

1    actually makes the most sense.  And that's both for the ones

2    that are not coming live and the ones that we would

3    cross-examine.

4              Like the plaintiff, for both Ms. Muniz and

5    Ms. Solano, they are both corporate -- one is a 30(b)(6)

6    designee and the other is an officer of the company.  So we

7    think under Rule 31 we are allowed to use the depositions as

8    substantive evidence.  But our sense was all of this can be

9    done on the paper without the need to take up any court time

10   doing it, and Your Honor can rule on the objections as you see

11   fit to the extent that any of the evidence that is -- that we

12   have identified there ends up being relevant to your decisions.

13             THE COURT:  All right.  Because the complexion of

14   the case has changed since these designations were filed.  And

15   I know I looked last night at the Lehman deposition, and it

16   was -- it's long, and it has several -- it has many objections

17   to it.

18             So I think the prudent course of action with

19   respect to the deposition testimony that you want me to review

20   is to prepare a revised joint notice of designated testimony

21   for each of the witnesses that you want me to consider their

22   deposition testimony.  In reading Lehman -- and I didn't read

23   the whole thing last night.  It was just too long.  It seemed

24   to me that a lot of what Lehman offered in his deposition is

25   going to come out through the various live witnesses that are

going to testify at the trial.

So I would hope that -- in most instances, what happens is counsel, when they are pressed to file something, want to make sure that it's overly inclusive so they won't be accused of leaving something out.  So I want you to go back and look at each one of these witnesses and prepare a revised designation of deposition testimony.

But I agree with counsel for the defendant that because this is a court trial, other than impeachment and other than maybe a ten-minute slice of agreed-upon deposition testimony that you think is so important that I hear, my intention with respect to this deposition testimony is to review it after all of the testimony has -- after the trial has been completed and when I am preparing the final findings of fact and conclusions of law.

MR. BALL:  Can I clarify one piece -- understanding on the further joint deposition testimony statements that we are going to be preparing here?

THE COURT:  Right.

MR. BALL:  Did you want additionally us to provide you just a list of the ten minutes we intended to play live, or is that folded into the entire joint statement?

THE COURT:  No.  The live is just you will meet and confer and prepare a joint statement and tell me what you are going to play as live, and if there is any objection, I

```
1    will rule on it.  That's for trial.
2              MR. BALL:  Okay.
3              THE COURT:  The other deposition testimony, I'm
4    simply not going to sit here and watch videos of witnesses
5    testifying.  And, again, if there are -- for example, Lehman is
6    not going to appear live, and the defense has designated him to
7    testify by deposition.  So with respect to Lehman I expect that
8    counsel will sit down and do a revised notice of designation of
9    deposition testimony for Mr. Lehman in the same format that is
10   required by the Civil Trial Order that you previously did.
11             Now, if there are no changes, then you can simply
12   indicate there are no changes, and then -- so that deposition
13   testimony, those objections I'm not going to be prepared and
14   will not rule on at trial.  But I will make rulings as
15   necessary post-trial when I'm preparing the final findings of
16   fact and conclusions of law.
17             The same with Aromow who is not going to be live.
18   Then that would also apply to the -- and, then, again, the
19   defense has -- how do you pronounce Nicole's last name?
20             MR. BALL:  Muniz.
21             THE COURT:  Muniz and Solano by deposition.  And
22   those are defense -- on the defense witness list.  So those --
23   that deposition, those portions of deposition are going to be
24   used for impeachment, or are there, again, substantive -- going
25   to be used as substantive evidence that you want me to consider
```

1    post-trial or both?

2                    MR. TOMPROS:  The latter.

3                    THE COURT:  The latter?

4                    MR. TOMPROS:  Both.  There are certainly portions

5    of their deposition that, if they are contradicted, that we may

6    use on cross-examination for impeachment.  But there are for

7    both of them portions that we would ask to be considered as

8    substantive evidence post-trial as well.

9                    THE COURT:  Okay.

10                   MR. TOMPROS:  I don't think there is any of it.

11   But we can definitely with them as with the others re-review in

12   view of where the trial stands now.

13                   The other question I have is does it make

14   sense -- we're happy to do that now.  If you prefer, we could

15   also post-trial, once we know what has come into evidence at

16   trial, then re-review and resubmit them then.

17                   THE COURT:  That makes sense because there's a

18   lot of work to do between now and Monday, and I don't want

19   make-work projects.  It makes sense because, once you know what

20   the evidence is that has come in, I think your point is well

21   taken.  You would be in a better position to, perhaps, reduce

22   some of the testimony.

23                   But I just want to make it clear that I'm not

24   going to on Monday be in a position to rule on any deposition

25   testimony other than that which may be offered for impeachment

1    if it is truly not -- whatever the objection may be.  But I

2    just wanted to clarify that with the exception of the ten

3    minutes that I must see.

4             As I indicated, the witness estimate form

5    estimates a little over six hours.  So we shouldn't have any

6    problem in completing the trial on Monday.

7             The next issue relates to -- let me just tell --

8    advise counsel with respect to -- I may have already done this.

9    If I did, forgive me.

10            The procedure with respect to the witnesses at

11   trial, you will call the witnesses, and when the witness is on

12   the witness stand, you should provide the witness with a copy

13   of the trial declaration so we can authenticate the trial

14   declaration.  And then I will rule on the objections to the

15   declaration, and then counsel will then be permitted to

16   cross-examine the witness.

17            Counsel should provide Shannon and the Court with

18   a list of the trial exhibits that will be used by each witness

19   because Shannon has to make a record of the exhibits that are

20   identified and the exhibits that are received into evidence

21   with respect to each witness.  So make sure that you provide

22   both the Court and Shannon with a copy, both the exhibits for

23   direct examination and the exhibits for cross-examination.

24            With respect to the actual physical exhibits, I

25   think -- I know that the exhibits were attached to the

1   declarations, and the numbers aren't going to change, but I

2   haven't figured out yet what is the best procedure.  I think

3   given that we're now down to -- I counted this morning --

4   probably under 300 exhibits, that perhaps just having the trial

5   exhibit binder on the witness stand with the witness to the

6   extent the witness needs to refer to any exhibits may be an

7   easier way to do it.  Let's hold that until we discuss the

8   exhibits.  As to the --

9             MR. BALL:  Your Honor.

10            THE COURT:  Yes.

11            MR. BALL:  Providing the list of the exhibits to

12  you and Ms. Reilly, is an e-mail to Ms. Reilly and courtesy

13  copy to you in Word form, or do you want it filed?

14            THE COURT:  No.  I want it filed.

15            MR. BALL:  Okay.

16            THE COURT:  Shannon?

17            THE CLERK:  And e-mailed.

18            THE COURT:  And e-mailed.  She can deal with it

19  electronically also.

20            Again, what I want to make sure is that with

21  respect to each witness, we have a clear identification of the

22  exhibits so Shannon can make a clear record and we can all make

23  a record in terms of what exhibits the witness is referring to.

24            As to the trial exhibits, on July 24th,

25  Docket No. 364, the parties filed what was required pursuant to

1    the Civil Trial Order the final pretrial exhibit stipulation.

2    As I indicated, I was pleasantly surprised to see that

3    plaintiff had withdrawn its objections to the exhibits for each

4    of the defendant witnesses.

5                 The defendants had early on, to the credit of the

6    defendants, had previously withdrawn their objections to the

7    trial exhibits except for JTX1 and JTX621.  One was the Lehman

8    declaration, and 621 is the consent judgment.

9                 As a result, it appears that all of the trial

10   exhibits that will be offered, except for the objection raised

11   by the defense as to those exhibits, will be admitted.  My

12   count this morning -- my rough count was that the defendant

13   would be offering approximately 60 exhibits and the plaintiff

14   would be offering approximately 235 or so exhibits.  Does that

15   comport with -- and I don't have any of the exhibits except the

16   ones that are attached to the various trial declarations.  Does

17   that comport with what we can expect in terms of the final

18   trial exhibit list?

19                 MR. BALL:  From plaintiff's perspective I think

20   so, Your Honor.  There's probably a dozen or two dozen maybe --

21                 THE COURT:  Right.  Give or take.  What I'm going

22   to ask counsel to do is to file the final exhibit list.  Not

23   the pretrial exhibit stipulation but just the exhibit list of

24   the trial exhibits because, number one, I can't -- my eyes

25   aren't good enough to read the small print on the pretrial

1    exhibit stipulation, and it's over -- the final is over

2    109 pages.  Obviously, based upon what I just said, many of

3    those exhibits or the majority of those exhibits are not going

4    to be used at trial because we're looking at rough numbers of

5    less than 350 exhibits.

6              So I'm going to ask that counsel prepare their

7    exhibit lists and file the trial exhibit list as well as the

8    exhibits tomorrow and deliver courtesy copies, if you can, by

9    close of business tomorrow but certainly not later than Friday

10   morning so I will have them so I will be able to look at them

11   over the weekend so I don't have to carry home three boxes of

12   binders and I will have all the exhibits in place.

13             MR. TOMPROS:  Your Honor, just a clarifying

14   question on that.

15             THE COURT:  Sure.

16             MR. TOMPROS:  So there are, I think as Mr. Ball

17   indicated as well, there are likely exhibits on the exhibit

18   list that I know we would expect to use in cross-examination

19   that we -- and there hasn't been an exchange of those by the

20   parties yet.  I think Your Honor's order requires it somewhat

21   later.  So how would you like us to handle that?  Do we need to

22   make that disclosure of cross-examination exhibits by tomorrow,

23   or how would you like us to proceed?

24             THE COURT:  Well, I don't think there are many

25   secrets in this case.  The exhibits are the exhibits, and

1  you're all familiar with the exhibits, and they're not going to

2  change.  So I would ask that you include the impeachment or

3  cross-examination exhibits in the list and identify those as

4  such so when I'm looking at this list, I can understand how the

5  list is put together.

6      MR. TOMPROS:  That makes good sense, Your Honor.

7  That's exactly why I asked to make sure we're not in a spot

8  where there was an attempt to do something later or -- that

9  makes perfect sense.  Thank you, Your Honor.

10      THE COURT:  Obviously, to the extent there is an

11  exhibit that was left off unintentionally or it became relevant

12  during the course of cross-examination, I'm not going to

13  preclude someone from using that exhibit to examine that

14  particular witness.  I'm just trying to get a handle on --

15  because there was so much that we started out with, and I'm

16  delighted that as we get closer to trial, we're finally reining

17  in all of these exhibits and -- because it takes me a long time

18  to go through all this stuff.  You guys -- you gentlemen have

19  been with this case for a long time and know these exhibits,

20  but they're all relatively new to me except the ones I looked

21  at for the Summary Judgment Motion.  So I'm going to have to

22  spend the weekend looking at these.  So I want to make sure I

23  have a discrete number and not the 5,000 that are in the

24  pretrial exhibit stipulation.

25      MR. BALL:  Thank you, Your Honor --

```
1              THE COURT:  Go ahead.

2              MR. BALL:  That's especially helpful, your last

3    comments, because I know there are some exhibits probably on

4    both sides where neither one of us objected to, maybe we were

5    going to use them for cross or maybe something comes up with

6    their experts and they need to refer to an article.  But,

7    otherwise, we don't expect to have to use it but just want to

8    have that opportunity, if necessary.  So as long as -- I think

9    you're right to practically reduce this to the amount that's

10   95 percent, 98 percent going to be admitted and not the extra

11   2 percent.

12             THE COURT:  Right.  I certainly will rule on the

13   objections, but my goal is to minimize the number of documents

14   that I have to look at and become familiar with, and that's the

15   whole purpose.

16             I assume that it won't be too difficult to

17   prepare the final exhibit list and file the exhibits by

18   tomorrow.

19             MR. BALL:  The only difficulty I see, Your Honor,

20   is a printing issue with vendors and multiple copies, but we

21   will get right on that after this.

22             THE COURT:  Okay.  All right.  So those -- the

23   trial exhibits -- and I want those trial exhibits actually

24   filed on the docket also.  Everybody understand that?  The

25   exhibit list and the exhibits so they will be on the docket.
```

 1    So they will be filed tomorrow.  And then make sure that I get

 2    courtesy copies at the earliest opportunity.  I'd like to have

 3    them -- well, bright and early Friday morning is fine because

 4    I'm going to use those over the weekend and partially Friday.

 5              I want to go back to the deposition designations.

 6    I was going to ask counsel to prepare a ruling chart similar to

 7    the chart that I asked for before, but in light of the way that

 8    we're going to handle the deposition testimony, I don't think

 9    that is necessary because I can -- when I'm reviewing the

10    transcripts post-trial, I can make my own chart.  So I'm not

11    going to need that.

12              MR. BALL:  Your Honor, if I may, two practical

13    questions for the trial.

14              THE COURT:  Yes.  Before I forget and then I will

15    take whatever questions counsel have.  You raised this issue --

16    Shannon, do you have the picture -- with respect to this

17    potential individual who apparently is mad at somebody, and I

18    just wanted to get a better understanding of what -- who he's

19    mad at and what we need to do to make sure we are all safe and

20    secure.

21              MR. TOMPROS:  It's both sides, Your Honor.  He

22    started out very much as a critic of Yuga Labs, of the

23    plaintiff, and then became, from what we can tell in his public

24    activities, more and more aggressive.  He was essentially on

25    the side of the defendant saying that Yuga Labs were bad people

and wanted to be their friend for a bit, and then as he got

more and more hostile and doing protests and showing up places,

I think he was somewhat upset that the defendants were not as

strident in their views, and so now doesn't like them either.

We agree with Mr. Ball that it would be worth making sure that,

if he does appear, that there are extra eyes on him.

THE COURT:  Okay.  Then what I propose to do is

have a blue coat come up for the first day of -- well, the only

day of trial, but certainly when we start at 8:00 o'clock.

Then, if he shows up, then I will have the blue coat sit next

to him.  Then, I guess, we will play it by ear.  But that's my

intention at the outset, just to have a blue coat come up and

give him a copy of the photograph that you provided, and then

we can keep an eye out for him.

Okay.  Counsel have any questions, I will be glad

to answer them.

MR. BALL:  One, on the exhibits, just from a

practical perspective for the witnesses on the stand, there are

one or two exhibits that, because we printed them and that's

not how they are normally used, they are normally used visually

on a computer screen, they're really long.  Rather than having

that one document repeated in six binders for the witnesses,

I'm wondering if we can just have that -- it is a 300-page

document, just have that one document reused by all the

witnesses.

1                    THE COURT:  Yes.

2                    MR. BALL:  In one binder.

3                    THE COURT:  Yes.  Save the trees.

4                    MR. BALL:  Thank you, Your Honor.

5                    The other one, counsel and I talked the other

6      day.  Are you expecting opening or closing statements?  We're

7      fine not having them.  I think you are well-versed.

8                    THE COURT:  I don't need an opening statement.  I

9      am probably not even going to need a closing argument.  My goal

10     is to get the testimony in, and then I have work for you to do

11     post-trial.  I'm not expecting an opening statement or a

12     closing argument.

13                   MR. BALL:  On allocation of time, it looks like

14     our witness lists are pretty evenly allocated.  I'm assuming

15     that is how we are going to allo -- split it down the middle

16     for the day?

17                   THE COURT:  Right.  The time estimates look fine

18     to me.  I don't care what you do just as long as we're done by

19     Monday.

20                   MR. TOMPROS:  I had a related timing question.

21     You mentioned at the beginning that you would follow your

22     procedure on breaks.  Just so our folks can coordinate to make

23     sure that they know when to drop off water and that kind of

24     thing, is there a specific time that you anticipated roughly

25     for the breaks?

```
 1              THE COURT:  Well, we start at 8:00, and we
 2    usually depending upon -- depending upon -- obviously the
 3    schedule is very taxing to both Shannon and Miranda, so we have
 4    to take breaks.  We usually take a break after about two hours,
 5    maybe two-and-a-half hours, and then we take a short 10-,
 6    15-minute break, and then we come back and do the same.  So
 7    it's probably 10:00 -- in between 10:00 and 10:30, and then we
 8    come back, and then the next break is usually around noon for
 9    10 or 15 minutes, and then we go -- for jury trials we go until
10    2:00.  In this case I would hope we would be done by 2:00.  If
11    we're not done by 2:00, then we're going to continue, and then
12    we may need another break in the afternoon.  So that's
13    basically -- we go for about two hours and then take a 10- or
14    15-minute break.  I try to keep the breaks short.
15              MR. TOMPROS:  Thank you, Your Honor.  My only
16    other question is actually more in the nature of a request.
17    Would it be okay for the remainder of the -- I know we have to
18    meet and confer on various things in connection with
19    Your Honor's orders.  Would it be okay for those to be by Zoom
20    this week through trial so that we can --
21              THE COURT:  Yes.
22              MR. TOMPROS:  I know Mr. Ball and I are both
23    traveling at different times.
24              THE COURT:  That's fine.  Everything from now on
25    can be done by Zoom.
```

```
 1              MR. TOMPROS:  Thank you.

 2              THE COURT:  Let's go back to the exhibits.

 3   What's your preference?  Have the witness have the declaration

 4   binder with all the exhibits attached and use that or to use

 5   the -- I don't want to get -- I want to make sure we have a

 6   clear record in terms of the exhibits.  I think what I

 7   typically do would have the trial exhibit binders on the

 8   witness stand.

 9              Since I don't know how many binders there are

10   going to be, but given the limited number of exhibits that we

11   have narrowed it down to, we can just simply have a witness --

12   let me go back.  As I indicated before, all the original trial

13   exhibits on the first day of trial will be placed on a table

14   over here, and we're not going to use those unless it becomes

15   necessary.  With respect to the examination of witnesses, what

16   I think makes most sense is to have a complete set of trial

17   exhibits, and we will have those on the witness stand.  The

18   witness can then be given his or her declaration, authenticate

19   the declaration.  Then, to the extent the witness needs to use

20   any of the exhibits, the witness will be using the actual trial

21   exhibits from the binders we will have on the witness stand.  I

22   think I have convinced myself that is the way we should do it.

23              MR. TOMPROS:  That makes good sense to us,

24   Your Honor.  Then we also have separate copies of the

25   witnesses' deposition transcripts for purposes of impeachment
```

 1   should that become --

 2            THE COURT:  Right.  I guess -- I think -- I have

 3   to go back into chambers, but I remember being delightfully

 4   surprised one morning when I came in there were three boxes of

 5   deposition transcripts.  So I think all of the -- I opened it,

 6   and I just -- I set it somewhere.  I didn't do anything with

 7   it.  Are the originals in there?

 8            MR. BALL:  They are, Your Honor.

 9            THE COURT:  What I would propose to do is I will

10   bring those boxes out, and I will put them in the courtroom so

11   on Monday morning counsel will have access to those

12   transcripts.

13            I typically would have a copy of a transcript

14   that's being used for impeachment so I can follow along in

15   terms of the impeaching testimony.  It's probably more

16   important in a jury trial than it is in a court trial.  I may

17   ask counsel to give me a set.  I think there were the original

18   and a copy in there.  So I will ask counsel to provide me with

19   a set.

20            On the impeachment, are you going to play -- I

21   don't remember.  Are these all video depositions?  And for

22   impeachment, are you just going to simply read the impeaching

23   testimony, or are you going to play the impeaching testimony?

24            MR. TOMPROS:  They are all video, Your Honor.

25   Our expectation, though, is it is a court trial and it is

1    simpler just to read the testimony.  And it will move things

2    along faster than to try to mess with getting the video queued

3    up and all of that.  But whatever Your Honor's preference is --

4              THE COURT:  Reading it is fine with me.  That

5    actually goes to another question.  You had -- there was

6    some -- somebody is coming tomorrow to put all kinds of

7    electronic gear in here.  I don't know what we're going to be

8    doing with all of that.  In any event, reading it is fine.

9              I will make sure the deposition transcripts are

10   in the courtroom so you can go through them on Monday morning.

11   You're both out of town.  I can make them -- -- I will leave it

12   up to you.  I think leaving it in here -- having them available

13   for Monday will be sufficient time for you to deal with them.

14             The court reporter didn't hear what -- whoever

15   just spoke.

16             MR. TOMPROS:  I think it was me saying it is

17   certainly fine from our perspective, Your Honor, and then I

18   think Mr. Ball said "yes" or something like that.  Sorry about

19   that.

20             THE COURT:  Any other questions?

21             MR. TOMPROS:  No, Your Honor.

22             MR. BALL:  Not from me, Your Honor.

23             THE COURT:  All right.  I have one question.

24   What happened to the settlement conference in front of

25   Judge Segal?

1          MR. TOMPROS:  Your Honor, we spent all day, and

2    we -- I think we actually did make some progress, but there

3    were still some significant issues that made it impossible to

4    resolve the case.  She did suggest to us that after the ruling,

5    to avoid appeal and everything that happens thereafter, she

6    would be willing to talk with us further and see if we can get

7    somewhere there, but there was no ability to resolve.

8          MR. BALL:  Your Honor, yes.  I mean, there were

9    significant gaps, most importantly around the monetary issue,

10   where after a year we still don't have a monetary proposal from

11   the defendants.

12         THE COURT:  Well, my question is whatever the --

13   I don't want to get into the settlement.  But whatever the

14   monetary aspect of the case is, do these gentlemen have the

15   wherewithal to pay it?  That should be a consideration of the

16   plaintiff.  You don't need to comment on it.  Just going

17   through this, it is always the question, even if you have a

18   strong liability case and even though the outcome may be a

19   significant monetary award, you always have to be concerned

20   about whether or not it is collectible.

21         I guess Mr. Ryder Ripps is going to be out

22   there -- in any event, I won't say anything more.  I was

23   curious.  It is one of the documents I kept looking for on the

24   docket was notice of settlement, but I didn't --

25         MR. TOMPROS:  We respectfully disagree that the

```
 1    monetary issue was the most significant.  There were also

 2    pretty significant issues around what they could and couldn't

 3    say and do in the future.  At the end of the day, all of the

 4    gaps were still very real, and I remain hopeful that we will

 5    reach a resolution at some point.  But it just is -- I think

 6    Judge Segal correctly concluded it wasn't possible before this

 7    trial.

 8              THE COURT:  All right.  Well, that's all I have.

 9    Again, I appreciate all your hard work.  There is still some

10    additional work to do.  We should be ready to go on Monday

11    morning and get this case over with.  I have many criminal

12    cases that are waiting.

13              MR. BALL:  Thank you, Your Honor.

14              THE COURT:  We are still trying to get those

15    cases tried.

16              The weather is very warm out here.  So I don't

17    know -- we do have air conditioning, and Shannon keeps the

18    courtroom very cold.

19              All right.  If there is nothing else, we will be

20    in recess.

21              Miranda just advised me and it is accurate that

22    the post-trial work is an additional round of findings of fact

23    and conclusions of law.  For the post-trial findings of fact at

24    least, I require citations to the record, both the declaration

25    testimony and the testimony during the course of trial.
```

```
 1                  So the turnaround time on that is -- you know,
 2    I'm flexible in terms of that, but Miranda's point is you
 3    should be aware that you're going to need a copy of the
 4    transcript of the trial.  And I will leave that up to counsel
 5    and Miranda to figure out when you need it by or the ordering
 6    of it.  It may be that having a daily is the way to deal with
 7    it, but I will let you decide that.
 8                  Anything else, Miranda?
 9                  Anything else, Shannon?
10                  THE CLERK:  No.  When the judge leaves, why don't
11    counsel stay on for just a moment.
12                  THE COURT:  Shannon is going to have her pretrial
13    conference in terms of how to deal with these exhibits.  So I'm
14    going to leave.  Counsel, have a good weekend, and we will see
15    you -- when are you going to be arriving in Los Angeles?
16                  MR. TOMPROS:  For me, the current plan is early
17    Saturday morning, frankly, so I can see my daughter's final
18    performance of a show before I get out the door.
19                  THE COURT:  Final performance where you live.
20                  MR. TOMPROS:  She's in a theater camp.  So I'm
21    trying to catch that on Friday night and then coming out to
22    Los Angeles before.
23                  THE COURT:  As I remember, midweek you have a
24    vacation that you're scheduled for.
25                  MR. TOMPROS:  Yes.  Toward the end of next week.
```

```
 1                    THE COURT:  Okay.

 2                    MR. TOMPROS:  Thank you, Your Honor.

 3                    THE COURT:  All right.  We will see you Monday

 4    morning.

 5                    MR. BALL:  Thank you, Your Honor.

 6                    THE COURT:  Obviously, if there is any issues

 7    that come up, i.e., a settlement, make sure that you

 8    communicate with Shannon so when I'm reviewing all the stuff

 9    over the weekend, if the case -- certainly I don't want to

10    review things if the case isn't going to go to trial.

11                    All right.  Thanks.

12                    (Proceedings concluded at 8:54 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5             I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

 6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

 7   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

 8   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

 9   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15                  DATED THIS  29TH  DAY OF FEBRUARY, 2024.

16

17

18                  /S/ MIRANDA ALGORRI

19                  _____
                    MIRANDA ALGORRI, CSR NO. 12743, CRR
20                  FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25
```