ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – Los Angeles

| | |
|---|---|
| YUGA LABS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>　　　　　Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**PLAINTIFF YUGA LABS, INC.'S RESPONSE TO DEFENDANTS' 15 U.S.C. §1116(A) DECLARATIONS** |

Plaintiff Yuga Labs, Inc. ("Yuga Labs") respectfully submits this response to Defendants' declarations (Dkts. 464, 465), submitted pursuant to this Court's judgment and 15 U.S.C. § 1116(a), to address Defendants' non-compliance with the Court's judgment.[1]

Mr. Ripps' declaration is misleading at best. As laid bare by the timeline of this case and Mr. Ripps' own words, he not only fails to establish compliance with the Court's judgment, but his claimed intentional destruction of "the private keys to any and all cryptocurrency wallets which contains all RR/BAYC NFTs that were formerly in [his] possession" (Dkt. 465 ¶ 2(i)) demonstrates a deliberate and bad-faith effort to thwart the Court's ordered remedies and to further harm Yuga Labs. And, neither Defendant has complied with the Court's orders to pay stipulated attorney's fees in connection with Yuga Labs' successful anti-SLAPP motion or to reimburse Yuga Labs for its portion of the Special Master's fees.

## I. Mr. Ripps' Deleted His Private Keys in Bad Faith to Undermine the Court's Authority and to Further Harm Yuga Labs

### 1. Mr. Ripps' Purportedly Deleted His Private Keys Knowing He Would Be Subject to an Injunction.

On April 21, 2023, the Court determined that Yuga Labs was "entitled to monetary damages and injunctive relief." Dkt. 225 at 13. While the parties disagreed about whether the injunctive relief should require that Defendants burn their RR/BAYC NFTs or transfer them to Yuga Labs (*see, e.g.*, Dkt. 349 at 23; Dkt. 416 at 22; Dkt. 418-1 at 22; Dkt. 430-101 at 3), Mr. Ripps has indisputably known since July 2023 that an injunction was forthcoming and that Yuga Labs' proposed injunction would require him to burn or transfer his RR/BAYC NFTs.[2] The

---

[1] The declarations are not offered under penalty of perjury. *See* 28 U.S.C. § 1746.

[2] For example, on July 17, 2023, Yuga Labs first proposed initial findings of fact and conclusions of law including an injunctive term that "If Defendants own any RR/BAYC NFT, they shall 'burn' (e.g., destroy) that NFT or provide it to Yuga Labs to burn." Dkt. 349 at 23. Then, after trial, on August 28, 2023 Yuga Labs proposed the exact same injunctive term in its post-trial proposed findings of fact

Court's October 25, 2023 findings of fact and conclusions of law again confirmed that the Court would enjoin use of the RR/BAYC NFTs because "the evidence at trial demonstrated that Defendants' infringing conduct has irreparably injured Yuga by hindering its ability to control its reputation and brand." Dkt. 431 at 21. The Court further noted that an injunction would "allow Yuga to regain control over the instrumentalities of commerce that bear its BAYC Marks and allow Yuga to protect its brand and prevent future harm." *Id.* at 21-22. On February 3, 2024, the Court entered a final judgment in favor of Yuga Labs and entered an injunction which required, *inter alia*: "[i]f Defendants own any RR/BAYC NFTs, they shall destroy (e.g., 'burn') the NFTs or provide them to Yuga to burn" within two weeks of the judgment. Dkt. 452 § 2(b).[3]

On February 21, 2024, **after** their compliance with the Court's injunction was due, and **after** agreeing to the stipulation with Plaintiffs, Mr. Ripps revealed for the first time—through counsel—that more than two months earlier on December 9, 2023, he allegedly "destroyed" the private keys for wallets containing RR/BAYC NFTs. Declaration of Eric Ball ("Ball Decl.") Exhibit 1. Mr. Ripps confirmed this in his declaration, by stating that he, as of December 9, 2023, had "destroyed the private keys to any and all cryptocurrency wallets which [sic] contains all RR/BAYC NFTs that were formerly in my possession." Dkt. 465 ¶ 2(i).[4] Mr.

---

and conclusions of law. Dkt. 416 at 22. Defendants were aware of and responded to both of these submissions.

[3] NFTs cannot be erased from the blockchain, so to "burn" an NFT is to transfer it to the null address, 0x0000000000000000000000000000000000000000, effectively making it unowned and unusable.

[4] Importantly, Mr. Ripps did not claim to have destroyed the seed phrase for any of his wallets. A seed phrase is a set of common words that can be used to recover private keys and regain access to a user's wallets at any point. *See* https://www.coinbase.com/learn/crypto-basics/what-is-a-seed-phrase ("The reason [a] recovery phrase is a series of 12 to 24 simple words . . . rather than a numeric password is because long strings of numbers are difficult for humans to remember or even transcribe correctly — think of how hard it can be to input a too-long wifi password. Your recovery phrase unlocks your wallet, along with the private keys associated with all the crypto *in* the wallet.").

Ripps claims he took this action to "permanently ensure that [he] did not inadvertently engage in any activity on any cryptocurrency wallet that could be interpreted as violating the Court's earlier October 25, 2023 injunction." *Id.* Mr. Ripps stated that he has "taken all action possible in compliance" with the injunction, because—by design—he now does not "possess or control" any RR/BAYC NFTs. *Id.* ¶ 2(j).

### 2. Mr. Ripps' Actions Frustrate the Effect of the Court's Judgment

Mr. Ripps' professed compliance provides no assurance of finality to this dispute. Mr. Ripps can recover access to the NFTs in his wallets at any time if he has physical or digital backups of his private keys; if he recalls or accesses a copy of the seed phrase required to regenerate the keys; or if he recovers either the private keys or the seed phrase from a device on which they were stored and purportedly deleted.

Additionally, Mr. Ripps, through counsel, only disclosed to Yuga Labs following the judgment two wallets containing RR/BAYC NFTs[5] and claimed that "[he] is not aware of any other wallet that he ever controlled that included any RR/BAYC" NFTs. Ball Decl. Exhibit 1. However, Mr. Ripps previously admitted under oath that he controls a third wallet, which currently contains 10 RR/BAYC NFTs that have not been transferred or burned in accordance with the Court's judgment.[6] Mr. Ripps' declaration does not specify whether the private keys to this wallet were allegedly destroyed, and Yuga Labs has no way of ascertaining whether Mr. Ripps controls additional, undisclosed wallets.

---

[5] These wallets correspond to addresses 0x592814ff14e030b51f6087032db0f88f4214f254 (*see* Dkt. 320-1 at 3-4 (stipulating to Mr. Ripps' control of this wallet)) and 0xbaf287cb2281841d9f5ba929d7dde87048fcaf1b (*see id.* (same)).

[6] This third wallet corresponds to address 0xaaD263954FA877B370d6E518ed2dC55992FfA47A. *See* Ripps Dep. Tr. at 170-173, 172:16 ("It's my wallet."); *see also* https://etherscan.io/token/0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73691e?a=0xaaD263954FA877B370d6E518ed2dC55992FfA47A#inventory (containing 10 RR/BAYC NFTs).

Mr. Ripps' actions only further harm Yuga Labs by frustrating the purpose of the Court's injunction. To be clear, simply deleting private keys only means that Mr. Ripps can no longer access the infringing NFTs in his wallets—he still owns the NFTs, and they are still associated with him. The effect of Mr. Ripps' actions is to leave the infringing RR/BAYC NFTs forever in his wallets, which undermines Yuga Labs' ability to "regain control over the instrumentalities of commerce that bear its BAYC Marks and allow Yuga to protect its brand and prevent future harm." Dkt. 431 at 21-22. To add insult to injury, certain of those infringing RR/BAYC NFTs are now forever held in *a wallet publicly known as ryder-ripps.eth* and held alongside a genuine Yuga Labs NFT, further damaging Yuga Labs' brand.

### 3. Mr. Ripps Lacks a Good-Faith Excuse for His Actions

It is not credible that Mr. Ripps would delete his private keys to inadvertently avoid violating the order when he continued to use at least one of the wallets for 45 days after the Court's order. Mr. Ripps signed seven transactions involving a wallet containing RR/BAYC NFTs after October 25, 2023—including swapping $23,000 in cryptocurrencies, purchasing a Yuga Labs Mutant Ape Yacht Club NFT, and withdrawing his remaining cryptocurrency to an exchange on December 9, 2023.[7]

Mr. Ripps' technological sophistication undermines any contention that this was the only viable path to compliance or to prevent violation of the Court's orders.[8] A cryptocurrency/NFT wallet must be deliberately used, because wallet transactions must be deliberately signed with a private key. There is no plausible

---

[7] *See* https://etherscan.io/address/0x592814FF14E030B51F6087032DB0f88F4214F254.

[8] Far from a novice, Mr. Ripps claims he has been "mining ETH since 2017," https://web.archive.org/web/20220618155214/https://twitter.com/ryder_ripps/status/1538187794622709761, and his wallet has over 20,000 transactions—nearly 200 of which occurred during the pendency of this case. https://etherscan.io/address/0x592814FF14E030B51F6087032DB0f88F4214F254. At any time, Mr. Ripps could have created a new wallet to use instead of one containing RR/BAYC NFTs that were subject to litigation.

explanation for Mr. Ripps' purported fear of unintentionally interacting with the RR/BAYC NFTs stored in his wallets, nor is there a reasonable basis for permanently destroying his private keys instead of simply abstaining from using the wallet. Mr. Ripps made a deliberate and unnecessary decision to make compliance with an injunction impossible, but only after withdrawing thousands of dollars in cryptocurrency stored in his wallets.

As further evidence of Mr. Ripps' bad faith, the parties entered a stipulation at Defendants' request on February 6, 2024, which the Court approved, specifying that Defendants may comply with the terms of the October 25, 2023 injunction by transferring their RR/BAYC NFTs to Yuga Labs. Dkts. 454, 455. At no time before entry of that stipulation did Defendants disclose to Yuga Labs that Mr. Ripps purportedly relinquished his control of *all* RR/BAYC NFTs he was now ordered to transfer to Yuga Labs.

## II. Separately, Neither Defendant Has Fully Complied with the Judgment

In addition, Mr. Ripps and Mr. Cahen have violated the Court's judgment in two other respects.

First, to resolve the dispute over Yuga Labs' attorneys' fees in connection with its successful anti-SLAPP motion against Defendants' counterclaims, Defendants represented that ***within two weeks*** of the final judgment, they would pay $120,000 in stipulated attorneys' fees. Dkt. 227. Defendants have filed their brief in the appeal of this matter, which does not even challenge the anti-SLAPP Order of Yuga Labs' entitlement to the $120,000 attorneys' fee award. Defendants' specific promise to Yuga Labs, on which Yuga Labs reasonably relied to its detriment by forgo its full attorneys' fees, was "Defendants will of course comply with whatever the court orders. If the court orders payment within a specific timeframe, Defendants will comply." Ball Decl. Exhibit 3. In line with these promises, the Court ordered Defendants to "pay $120,000 to Yuga for attorneys' fees pursuant to the terms of the Court's previous Order (Dkt. No. 227) in

connection with Yuga's anti-SLAPP motion (Dkt. No. 156), for which Defendants shall be jointly and severally liable" within two weeks.  Dkt. 452; *see also* Dkt. 227 ("Defendants will make the payment of $120,000 to Yuga Labs within two weeks of the Court's final judgment").  This order was separate from the monetary judgment for Yuga Labs' claims.  Defendants have refused to make that promised payment and have refused to identify what they have done with those funds since making their promise.  Ball Decl. ¶ 4.

Second, Defendants have not reimbursed Yuga Labs for its portion of fees paid to the Special Master, which they were ordered to do "immediately."  Dkt. 452.  Defendants paid their remaining $69,275 balance to the Special Master but have not explained their failure to pay the $27,875 reimbursement owed to Yuga Labs in the 35 days since final judgment was entered.

Contrary to their prior promises, Defendants claim that they cannot make any payments, but their actions belie their bad faith.  Since the Court's order, Mr. Cahen withdrew $30,000 in cryptocurrency from his known wallet to an exchange,[9] and—on the same day he filed his declaration of purported compliance—he purchased an NFT for $11,200.[10]

### III. The Court Should Sanction Mr. Ripps and Order Defendants to Comply with the Judgment

Yuga Labs has no adequate remedy for Mr. Ripps' intentional destruction of his private keys and malfeasance in refusing to relinquish his ownership of the infringing RR/BAYC NFTs.  These actions were transparently a bad-faith defiance of the Court's authority after the outcome of the case had become clear.

---

[9] https://etherscan.io/tx/0x3b1f7c4bcd24ea18e2406cf945da8d8cbe32d2cf386b6033fbfd56be7c56bc9a; https://etherscan.io/tx/0xaa76299508a06df9bb0dfd94ca8cf35ec00d838e1c39b2f5ee970795aa665c11.

[10] https://etherscan.io/tx/0x78ebe05b26ecc78e739af1957467d3c2555248891133eeebb24f224cdc0b12a3.

District courts have inherent power to sanction "a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). These powers supplement the courts' sanctioning authority under statutes and rules, but also "exist to fill in the interstices" of that body of authority. *Id.* "A specific finding of bad faith, however, must 'precede any sanction under the court's inherent powers.'" *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767(1980)). A court may also punish "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command" as contempt. 18 U.S.C. § 401(3).

Given Mr. Ripps' bad-faith destruction of his private keys, misleading declaration, and continued misrepresentations to Yuga Labs and the Court, the Court should exercise its inherent power and hold Mr. Ripps in contempt. The Court should additionally order Defendants to comply immediately with the judgment as to the transfer of $120,000 in stipulated fees and $27,875 in reimbursements for Special Master fees, or ordered to show cause as to why their non-compliance should not be sanctioned.[11]

## IV.   Conclusion

Yuga Labs respectfully submits that the Court should consider an appropriate sanction for the actions admitted in Mr. Ripps' declaration. Additionally, to further assess the degree of Mr. Ripps' non-compliance, Yuga Labs requests that the Court order Mr. Ripps to declare, under penalty of perjury: (1) the complete address of all wallets under his possession, custody, or control that have ever held RR/BAYC NFTs; (2) whether he has possession, custody or control over those wallets; (3) whether he has private keys, seed phrases, back-ups, or the ability to access each of the wallets. Yuga Labs also requests that the Court order the immediate transfer of the 10 RR/BAYC NFTs held in wallet

---

[11] Defendants also have not paid any portion of the monetary judgment, which Yuga Labs will address through appropriate enforcement proceedings.

0xaaD263954FA877B370d6E518ed2dC55992FfA47A, which Mr. Ripps admits to owning as indicated above, unless he declares under penalty of perjury, and in detail, that he has also destroyed all means of accessing that wallet, including how and when. Finally, Yuga Labs submits that Defendants should be ordered to comply immediately with the judgment as to the transfer of $120,000 in stipulated attorney's fees and $27,875 in reimbursements for Special Master fees, or ordered to show cause as to why their non-compliance should not be sanctioned.

Dated: March 8, 2024						FENWICK & WEST LLP


							By:  */s/ Eric Ball*
								Eric Ball
								Attorneys for Plaintiff
								YUGA LABS, INC.