Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Scott W. Bertulli (*pro hac vice*)
scott.bertulli@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
RYDER RIPPS and JEREMY CAHEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| YUGA LABS, INC.,<br><br>           Plaintiff,<br><br>     v.<br><br>RYDER RIPPS, JEREMY CAHEN,<br><br>           Defendants. | Case No.: 2:22-cv-04355-JFW-JEM<br><br>**DEFENDANTS' REPLY REGARDING DEFENDANTS' DECLARATIONS OF COMPLIANCE**<br><br>Judge: John F. Walter |

## I.   INTRODUCTION

This Court has repeatedly urged the parties to work together to resolve disagreements before burdening this Court with additional briefing.  Plaintiff Yuga Labs, Inc.'s ("Yuga") "response" to Defendants' declarations of compliance ignores that guidance, and instead (without motion, hearing, or conference of counsel) asks this Court to order new and additional relief in the form of a sanction (yet another declaration regarding various cryptocurrency wallets).  No such extraordinary post-judgment relief is warranted here.  To the contrary, if Yuga has genuine questions about the declarations that Mr. Ripps and Mr. Cahen submitted, it should have contacted counsel for Defendants to resolve them.  In fact, Yuga's own exhibit 1 shows that the last communication between the parties on this issue was ***Defendants'*** counsel's offer to conduct additional investigation if Yuga had further questions.  *See* Dkt. 467-2 at 1.  As their declarations make clear, Defendants acted in good faith, complied to the best of their ability with the Court's injunction, and remain ready to provide any additional information that Yuga or the Court needs to confirm that compliance.

Yuga's "response" also urges the Court (again without motion, hearing, or conference) to rule on an issue that has no connection to Defendants' injunction declarations—specific performance of a payment of a portion of the $9 million money judgment in this case.  Yuga originally based this request on the false statement in a declaration from Yuga's counsel that Defendants' counsel had not responded to their email; in fact, Defendants' counsel had and requested a telephone conference (to which Yuga's counsel did not respond).  After Defendants' counsel informed Yuga's counsel that it had no choice but to alert the Court to this misrepresentation, Yuga filed a "notice of erratum" and corrected declaration this morning (which removes the misrepresentation that was the basis for Yuga's request).  But Yuga offers no explanation for the misrepresentation and

1

Case No. 2:22-cv-04355-JFW-JEM                                REPLY ISO DECLARATIONS

1 still asks the Court (now without any factual basis) to commit legal error by using its contempt authority under Federal Rule of Civil Procedure 70 to order specific performance of a money judgment controlled by Federal Rule of Civil Procedure 69. The Ninth Circuit has squarely rejected this approach, noting the Federal Rules contemplate a single remedy for enforcement of a money judgment—a writ of execution. *E.g.*, *Hilao v. Estate of Marcos*, 95 F.3d 848, 854-855 (9th Cir. 1996); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147-1148 (9th Cir. 1983). Yuga has elected not to request a writ of execution. *See* Dkt. 467 ("Resp.") at 7 n.11.

II.  **BACKGROUND**

A.  As this Court is no doubt aware, the parties disputed and briefed the scope of an appropriate permanent injunction in this case for months. Dkt. Nos. 420, 427, 449, 251. While Defendants did not dispute that the Court's injunction was permitted to include a prohibition on marketing and promoting the RR/BAYC NFTs, Defendants repeatedly objected to the several aspects of Yuga's injunction that would violate the First Amendment. For example, Defendants argued that a provision of the proposed injunction that barred them from referencing the RR/BAYC project in *any* way—even just to neutrally recite the facts of this case or to state "I am not selling RR/BAYC NFTs." Dkt. No. 427-100 at 4. Defendants also objected to a provision of the proposed injunction that would require destroying the RR/BAYC NFTs. Dkt. 427-101 at 3.

On October 25, 2023, this Court issued its decision on the scope of the injunction. *See* Dkt. 431 at 21-23. The Court provided a detailed description of what the injunction required, including (1) prohibiting "Defendants … from marketing, promoting, or selling product or services … that use the BAYC marks," (2) "require[ing] Defendants to transfer control of" several websites, Twitter accounts, and the RR/BAYC smart contract. *Id*. The Court's ruling ended with the following statement: "Accordingly, the Court concludes that Yuga is entitled to a permanent

1   injunction against Defendant[s] *as **described herein**.*" *Id.* at 23.[1]  Nothing in this
2   Court's detailed description of the injunction required destruction or transfer of the
3   RR/BAYC NFTs themselves; rather, the Court appeared to have rejected that aspect
4   of Yuga's request (among others).

5   On January 26, 2024, Yuga asked this Court to reconsider the scope of the
6   injunction as part of a short joint filing related to the text of the final judgment. *See*
7   Dkt. 451 at 1-2.  Yuga's portion of the filing acknowledged that its proposed final
8   judgment included "***additional*** provisions" that went beyond this Court's October
9   2023 ruling, including a requirement that Defendants give up "their remaining
10  inventory." *Id.* 2 & n.1; *but see id.* at 7-8 (Defendants' objections to the broader
11  injunction request, including on the ground that Plaintiff was improperly seeking
12  reconsideration without meeting requirements of Local Rule 7-18).  This Court
13  adopted the broader injunction with the new destruction provision in the final
14  judgment entered on February 3, 2024.  *See generally* Dkt. 452.

15  **B.**   In order to avoid burdening this Court with a request for emergency
16  relief to prevent destruction of the NFTs, the parties stipulated to a limited stay—i.e.,
17  that the Defendants would transfer "all RR/BAYC NFTs they control to Yuga" for
18  Yuga to maintain while any appeals are pending.  Dkt. 454, 455.  Yuga does not
19  dispute that Mr. Cahen has transferred all of the remaining RR/BAYC NFTs within
20  his control to Yuga.  *See* Dkt. 464 at 4.

21  On February 21, 2024, Yuga's counsel contacted Defendants' counsel
22  regarding the status of Mr. Ripps' transfer of RR/BAYC NFTs.  *See* Ex. 1 at 3-4.
23  Defendants' counsel responded that same day, informing Yuga's counsel that Mr.
24  Ripps had previously "destroyed the private keys to all cryptocurrency wallets that
25  he previously controlled that contain any RR/BAYC NFTs" and did so to

---

[1] Emphasis added unless noted.

"permanently ensure that he did not inadvertently engage in any activity … that could be interpreted as violating the Court's earlier October 25, 2023 injunction." Dkt. 467-2 at 3.  In response to follow-up questions from Yuga's counsel, Defendant's counsel explained that Mr. Ripps was in compliance with the injunction because (1) "on December 9th 2023, Mr. Ripps destroyed the seed phrase for [two specific wallets] as well as any wallets that were created by the seed phrase," (2) "Mr. Ripps did not ever control any RR/BAYC NFTs except in wallets for which the seed phrase was destroyed, and (3) "Mr. Ripps has not had access to or control over any wallet with an RR/BAYC NFT since December 9th, 2023." Dkt. 467-2 at 2.  On February 29, 2024, Defendants' counsel also confirmed that the "two wallet addresses that we identified were the ones that Mr. Ripps knows corresponding to the destroyed seed phrase," but offered "to investigate" if Yuga believed there were any other affected wallets.  *Id.*  Yuga's counsel did not respond to that email; it also never requested that Mr. Ripps provide a supplemental declaration.

**C.**  In a separate chain of correspondence beginning on February 9, 2024, Yuga's counsel asked Defendants' counsel about the status of payment of portions of the money judgment, including the portion of the judgment reflecting an award of attorney's fees and a reimbursement for the costs of employing a Special Master.  *See generally* Dkt. 467-3.  Defendants' counsel responded the next business day to explain that he "underst[ood] from Mr. Ripps and Mr. Cahen that they are not able to satisfy the monetary award" and that payment would have to proceed through "enforcement proceedings."  Dkt. 467-3 at 2-3.

The parties exchanged several further emails regarding payment of the money judgment, including Yuga's counsel's email on Friday, February 23, 2024—which is the final email that Yuga elected to include in its Exhibit 2.  Yuga's counsel then, in a sworn declaration filed last Friday afternoon, attested that "Counsel for Defendants did not respond to the most recent email."  Dkt. 467 at 1.  But this sworn

4

statement by Yuga's counsel was false: on Monday, February 26, 2024—in an email that is *not* included in Yuga's exhibit—Defendants' counsel responded with the following message: "Eric – I think we are talking past each other and it may be easier to talk through these issues through by phone.  Let me know when would work for you, or feel free to give me a call at your convenience."[2]  Dkt. 468-2 at 1.  Yuga's counsel never called or otherwise responded to the final email.

Counsel for Defendants alerted Yuga's counsel about this false statement, explained that Defendants had no choice to bring the false statement to the Court's attention quickly given the nature of the relief that Yuga was seeking without opportunity for Defendants to respond, and afforded counsel for Yuga an opportunity to explain the statement and withdraw the declaration.  Tompros Decl., Ex. A.  Yuga responded that it would "submit a correct declaration tomorrow morning" (*id.*) and subsequently filed a "Notice of Erratum" admitting that Counsel's sworn statement was incorrect (Dkt. 468).  Surprisingly, Yuga's "Notice of Erratum" offers no explanation for how the false statement got into its Friday afternoon filing in the first place, nor does Yuga in any way account for its failure to respond to communications from Defendants' counsel prior to requesting the extreme relief of contempt sanctions. Dkt. 468 at 1. Instead, Yuga argues—inexplicably—that its "corrections do not affect the substance of the response to which the declaration was attached" (*id.* at 1), despite Yuga's response repeatedly relying on counsel's now withdrawn declaration repeatedly throughout its response (*see* Dkt. 467 at 2, 3, 5, 6).

## II.  ARGUMENT

### A.  Mr. Ripps Fully Complied With The October 2023 Injunction

There is no apparent dispute that Mr. Ripps has fully complied with every aspect of the injunction as it stood in October 2023 and that he has complied with

---

[2] Defendants informed Yuga of this false statement in Eric Ball's sworn declaration and Yuga has filed an amended declaration.

every aspect of the expanded February 2024 injunction except for his inability to transfer RR/BAYC NFTs to Yuga from wallets that he no longer has access to. Accordingly, the only issue raised by Yuga's "response" is whether Mr. Ripps should be sanctioned for his efforts to comply with the Court's injunction as issued in October 2023. He should not be.

*First*, as to the October 2023 injunction: Yuga misleadingly suggests that the destruction of the RR/BAYC NFTs was part of the injunction ordered in October 2023. *See* Dkt. 467 at 2. It unequivocally was not. Nothing in this Court's detailed description of the scope of the injunction required such destruction. The two passages that Yuga quotes come from (1) a section finding irreparable injury to Yuga (i.e., not ruling on the scope of the inunction), Dkt. 431 at 21, and (2) a passage ordering the transfer of **six specific items**, which it described as "instrumentalities of commerce that bear [Yuga's] BAYC Marks." Those specific items were "rrbayc.com, apemarket.com, rrbayc-v0.netifly.app, the @ApeMarketplace Twitter account, the @ApeMarketBot Twitter account, and the RR/BAYC smart contract." Dkt. 431 at 22. (There is no dispute that each of those items that Defendants controlled were transferred to Yuga.) By ruling this narrowly and specifically, the Court necessarily rejected Yuga's pending request for further injunctive relief, including destruction of the RR/BAYC NFTs themselves. This reading of the October 2023 injunction is confirmed by Yuga's own subsequent briefing, which described the destruction provision as an "additional" requirement that did not exist in the October 2023 order. *See supra* p. 3.

*Second*, as to the February 2024 injunction: the new, broader injunction requires Mr. Ripps to surrender those RR/BAYC NFTS that are within his possession and control. Due to his pre-injunction deletion of his private keys and seed phrase to the two relevant wallets by December 9, 2023, Mr. Ripps did not have possession or control over any RR/BAYC NFTs when the injunction entered (and still does not),

6

and therefore has nothing to transfer.  *See* Dkt. 465 at 4.

*Finally*, Yuga speculates that—beyond the two wallets for which Mr. Ripps has already destroyed his private keys and seed phrase—Mr. Ripps controls a *third* wallet that contains RR/BAYC NFTs.  Dkt. 467 at 3.  While Yuga asserts that Mr. Ripps testified under oath that he controlled the wallet, the deposition transcript Yuga cites does not bear that out.  The phrase Yuga excerpts ("It's my wallet") appears to refer to the wallet Mr. Ripps ***used to mint the RR/BAYC NFTs***—and not to the wallet that received 10 specific RR/BAYC NFTs.  *See* Ryder Dep. Tr. 171-173; *see also id.* 173 ("Q: Other than owning possession ***of the wallet from which you claim the RR/BAYC NFTs were minted***, how were the ten that were sent to [the third wallet] … How were they sent to –how did [the RR/BAYC NFTs] get from your wallet to the wallet address we see here.").[3]  Again, as Defendants' counsel informed Yuga weeks ago, the wallet that minted the RR/BAYC NFTs is one of the wallets for which the private keys and seed phrase have been destroyed.  *See* Dkt. 467-2.

### B. Yuga's Tacked-On Request To Enforce A Portion Of The Money Judgment Is Irrelevant To The Injunction And Asks This Court To Commit Legal Error

In a brief section at the end of Yuga's "response" regarding Defendants' ***injunction*** declarations, it asserts that "***separately***, neither Defendant has fully complied with the ***judgment***."  Resp. 5-6.  As Yuga's careful phrasing makes clear, this second request for relief has nothing to do with the injunction and is thus improper in this "response."  In any event, Yuga's assertions are factually inaccurate and legally meritless.

As to the former (the facts), Yuga's assertion that Defendants have "refused" to explain the status of attorney's fees and reimbursement of the Special Master

---

[3] In a passage that Yuga ignores, Mr. Ripps stated that he was not sure about the origins or ownership of the third wallet.  *See* Ripps Dep. Tr. 173 ("[T]hat's a wallet address perhaps I created to reserve some for my dad.").

fees is simply false.  Yuga's own exhibit establishes that Defendants have stated that those sums are part of the money judgment, that Defendants are unable to satisfy that judgment, and that Yuga could, if it chose, seek to a writ of execution to enforce that judgment.  Dkt. 467-3.  And the original sworn statement of Yuga's counsel that Defendants failed to respond to Yuga's February 23, 2024 email is false (as Yuga has now conceded in its "amended" declaration): Defendants' counsel responded on February 26—i.e., nearly two weeks ago—requesting a phone call to resolve these issues.  *See* Dkt. 468-2.  Yuga still has never responded.

As to the latter (the law), Yuga asks this Court to consider contempt sanctions for failure to pay a portion of the overall money judgment without citing a single case that has ever authorized such an approach.  *See* Dkt. 467-2 at 6, 8.  Yuga silence is for a good reason—the Ninth Circuit has made clear that "the proper means … to secure compliance with a money judgment is to seek a writ of execution, not obtain a fine of contempt for the period of non-payment." *Shuffler*, 720 F.2d at 1147 (reversing district court's use of sanctions to force payment of a monetary judgment).  To be sure, the Ninth Circuit has recognized that contempt— or one of the other mechanisms established under Rule 70 for "enforcing a judgment for a specific act"—is appropriate in exceptional circumstances, such as when the non-paying party is a state.  *See Hilao*, 95 F.3d at 855.  But the *Shuffler* Court expressly rejected the notion that contempt was appropriate when its only purpose was to penalize a party for failing to pay a stipulated amount by a specific date set by court order.  720 F.2d at 1143, 1147; *see also Spain v. Mountanos*, 690 F.2d 742, 744 (9th Cir. 1982) (noting, in case involving failure to pay an attorney's fee award, that "ordinarily, the equitable remedies under Federal Rule 70 are not appropriate in enforcing a monetary judgment").

In short, the mere fact that "[t]he subject matter of this case is unusual" does not change the remedies that are available to Yuga.  *Hilao*, 95 F.3d at 855.  To the

8

extent that Yuga seeks to attempt to collect on the money judgment while the appeal is pending in front of the Ninth Circuit, Yuga's recourse is a writ of execution, not piecemeal complaints and requests for sanctions.[4]

## III. CONCLUSION

Defendants respectfully request that this Court deny Yuga's requested relief.

Dated: March 11, 2024　　　　　　　By: /s/ *Louis W. Tompros*

　　　　　　　Louis W. Tompros (*pro hac vice*)
　　　　　　　louis.tompros@wilmerhale.com
　　　　　　　Monica Grewal (*pro hac vice*)
　　　　　　　monica.grewal@wilmerhale.com
　　　　　　　Scott W. Bertulli (*pro hac vice*)
　　　　　　　scott.bertulli@wilmerhale.com
　　　　　　　Tyler Carroll (*pro hac vice*)
　　　　　　　tyler.carroll@wilmerhale.com
　　　　　　　**WILMER CUTLER PICKERING HALE AND DORR LLP**
　　　　　　　60 State Street
　　　　　　　Boston, MA 02109
　　　　　　　Telephone: (617) 526-6000
　　　　　　　Fax: (617) 526-5000

　　　　　　　Derek Gosma (SBN 274515)
　　　　　　　derek.gosma@wilmerhale.com
　　　　　　　Henry Nikogosyan (SBN 326277)
　　　　　　　henry.nikogosyan@wilmerhale.com
　　　　　　　**WILMER CUTLER PICKERING HALE AND DORR LLP**
　　　　　　　350 South Grand Ave., Suite 2400
　　　　　　　Los Angeles, CA 90071
　　　　　　　Telephone: (213) 443-5300
　　　　　　　Fax: (213) 443-5400

　　　　　　　Attorneys for Defendants
　　　　　　　*Ryder Ripps and Jeremy Cahen*

---

[4] Defendants' opening appellate brief was filed on March 1, 2024. *See Yuga Labs, Inc. v. Ripps,* No. 24-879 (9th Cir.), ECF No. 14. One week later, the Ninth Circuit set oral argument for the July 2024 calendar. *Id.*, ECF No. 23.

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on March 11, 2024

By: /s/ *Louis W. Tompros*

Louis W. Tompros

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document is in compliance with the word limit in Local Rule 11-6.1

By: /s/ *Louis W. Tompros*

Louis W. Tompros