Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants and
Counterclaim Plaintiffs
RYDER RIPPS and JEREMY CAHEN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| YUGA LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> RYDER RIPPS, JEREMY CAHEN, <br><br> Defendants. | Case No.: 2:22-cv-04355-JFW-RAO <br><br> **DEFENDANT JEREMY CAHEN'S OPPOSITION TO PLAINTIFF YUGA LABS, INC.'S *EX PARTE* APPLICATION** <br><br> Judge: John F. Walter <br> Magistrate Judge: Rozella A. Oliver |

Defendant Jeremy Cahen respectfully opposes Plaintiff Yuga Labs, Inc's ("Yuga") unsupported and unprecedented request for an *ex parte* order seizing property purportedly belonging to Mr. Cahen (Dkt. No. 506). Yuga's motion does not even engage with—much less satisfy—the high standard for the extraordinary remedy of *ex parte* relief.

## I. FACTUAL BACKGROUND

Final judgment in this matter entered more than a year ago, on February 2, 2024 (Dkt. No. 452). In that judgment, Mr. Cahen and his co-defendant Mr. Ripps were ordered to pay Yuga a total of $8,895,346.50, and were subject to a permanent injunction (with which they have complied (*see* Dkt. Nos. 464, 465)). Mr. Cahen and Mr. Ripps immediately appealed (Dkt. No. 456), and the appeal was promptly placed on an expedited schedule including argument in August 2024 (Dkt. No. 470).

The appeal moved forward on an expedited basis, and Yuga appeared to be taking no meaningful action to enforce the monetary aspect of the judgment. The appeal was fully briefed by June 2024, and argued on August 15, 2024, with no meaningful enforcement action by Yuga before that argument. *See Yuga Labs, Inc. v. Ripps*, No. 24-879, Dkt. Nos. 49 (briefing completed on June 20, 2024), 57 (oral argument on August 15, 2025).

It was only *after* oral argument in the appeal was complete that Yuga—having taken no meaningful action to enforce the judgment for months—began pursuing post-judgment activity. Yuga's on-again, off-again post-argument harassment of Defendants and third parties with various demands, threats, subpoenas, and motions is laid out in detail in Defendant Jeremy Cahen's Opposition to Plaintiff Yuga Labs, Inc.'s Motion To Compel Third-Party Dor, Crisostomo, Dor & Dow Accountancy Corporation To Produce Documents Responsive to Yuga Labs' Post-Judgment Subpoena (Dkt. 488).

1

Yuga's post-judgment activities included two prior requests for Court-ordered additional discovery, neither of which was granted (and both of which remain pending). First, on October 28, 2024, Yuga moved to compel third party Dor, Crisostomo, Dor & Dow Accountancy Corporation to produce various financial records concerning Mr. Cahen. *See* Dkt. 484. The Court ordered that Mr. Cahen be given notice and opportunity to respond (Dkt. 487), which he did, explaining the late-stage status of the expedited appeal and suggesting that burdensome discovery (including third-party discovery) was inappropriate at least until the Court of Appeals ruled (Dkt. 488). The Court has taken no further action on Yuga's motion.

Second, on February 27, 2025, Yuga sought an informal discovery conference with the Court to seek additional post-judgment discovery, including a series of seventeen interrogatories to each defendant, coupled with a new request for multiple post-judgment depositions. The Court has not granted Yuga's request for a discovery conference.

Now, on a Friday afternoon, having sat on its hands throughout the appellate briefing process, and more than a year after entry of the judgment it seeks to enforce, Yuga filed an *ex parte* motion seeking emergency relief in the form of a seizure of property purportedly owned by Mr. Cahen (Dkt. 506).

**II.   ARGUMENT**

  **A.   Yuga Has Not Met the Standard for Emergency *Ex Parte* Relief**

Yuga's motion does not even ***mention***—much less engage with or satisfy—this Court's high standard for emergency *ex parte* relief. As this Court explained when chastising Yuga for filing an earlier baseless *ex parte* application, "*ex parte* motions are nearly always improper." Order RE Plaintiff Yuga Labs, Inc.'s *Ex Parte* Application, Dkt. No. 77 (January 8, 2023) (quoting *In Re Intermagnetics America, Inc.*, 101 Bankr. 191, 192 (C.D. Cal. 1989); *see also Mission Power*

*Engineering Company v. Continental Casual Company*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) ("Lawyers must understand that filing an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire.").

As the *Mission Power Engineering* court explained:

> What showing is necessary to justify *ex parte* relief? First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.

*Id*.

This Court's analysis of Yuga's earlier rejected *ex parte* motion is equally applicable here: "Yuga's Motion does not come close to meeting these standards." Dkt. No. 77, at 1. Yuga does not even mention what purported irreparable prejudice it will suffer if it is denied immediate emergency access to various crypto wallets that it alleges Mr. Cahen controls pending resolution of the appeal in this case. By failing to do so, Yuga has failed to meet its burden to show that there is any "fire" here.

Nor does Yuga establish that "is without fault in creating the crisis" that it claims. *Mission Power*, 883 F. Supp. at 492. As Yuga itself concedes, it could have taken enforcement action on the judgment anytime in the last "416 days." Yuga's *Ex Parte* Motion for Turnover Order, Dkt. 506-1, at 5. It has not explained why it waited until a Friday afternoon a year after the judgment to seek emergency relief. Likewise, even if the unsupported allegations in Yuga's motions were to be believed (which Mr. Cahen certainly does not concede), the assets have purportedly been in Mr. Cahen's possession since October 25, 2024 (*see* Dkt. 506-1 at 4), and

1  Yuga has known about them since at least January 15, 2025 (*see* Dkt. 506-2 at 2
2  (email from "Law Enforcement" to counsel for Yuga dated January 15, 2025)).  In
3  other words, the supposed "emergency" has existed for more than five months, and
4  Yuga has known about it for more than two months.

5       Nor can Yuga cite to its own recent financial troubles as the "emergency"
6  justifying *ex parte* relief.  *See, e.g.*, https://x.com/0x_quelpablo/status/
7  1904260373668409523 (March 24, 2025) (social media post summarizing
8  indications of recent mismanagement and financial turmoil at Yuga).  Yuga has not
9  submitted any sworn evidence suggesting that Mr. Cahen (or anyone other than
10 Yuga itself) is responsible for Yuga's financial issues, and Yuga has thus failed to
11 meet its burden to show that it "is without fault in creating the crisis" necessitating
12 extraordinary *ex parte* relief.  *Mission Power*, 883 F. Supp. at 492.

13      Under these circumstances, Yuga cannot satisfy—nor has it even attempted
14 to satisfy—this Court's high bar for extraordinary *ex parte* relief.

15      **B.    Yuga's *Ex Parte* Application Is Factually Misleading**

16      Because Yuga filed its *ex parte* application on a Friday night, Mr. Cahen has
17 not yet had the opportunity to investigate all of the allegations that Yuga has made
18 in it.  But even a preliminary review shows one glaring misstatement that requires
19 correction: Yuga baselessly, falsely, and defamatorily states that "in [Mr.] Cahen's
20 mind, avoidance of the Final Judgment appears as nothing more than a game."  Dkt.
21 No. 506-1 at 6; *see also* Dkt. 506 at 2 (repeating false statement).  Nothing could be
22 further from the truth: Mr. Cahen has taken the Court's Final Judgment seriously,
23 has complied with the Court's injunction, has exercised his legal right to appeal that
24 judgment, has obtained relief in the form of an expedited appeal schedule from the
25 Court of Appeals, and awaits judgment from that Court at any moment.  *See, e.g.*,
26 Dkt. Nos. 464, 465 (compliance with injunction); Dkt. No. 456 (notice of appeal);
27 Dkt. No. 470 (indicating expedited appeal schedule); *Yuga Labs, Inc. v. Ripps*, No.
28

24-879, Dkt. Nos. 49 (briefing completed on June 20, 2024), 57 (oral argument on August 15, 2025).

Yuga's sole basis for its false statement that "in [Mr.] Cahen's mind, avoidance of the Final Judgment appears as nothing more than a game" is a social media post that Yuga attributes to Mr. Cahen.  *See* Dkt. 506-1 at 6 (citing Dkt. 506-4).  But Yuga does not quote the actual language of that post—***which does not say what Yuga claims***.  In full, the text of the post that Yuga quotes says: "**Reasons** why I don't care about the 9.1 million dollar judgment from @yugalabs: 1) I am @Pauly0x. **2) The judgment will almost certainly get thrown out entirely.** 3) I saved the entire world from being scammed by NFTs."  Dkt. 506-4, at 2 (emphasis added).  The post does not say that Mr. Cahen is treating the judgment as a "game"; to the contrary, it makes clear that Mr. Cahen has exercised his right to appeal the judgment and expresses confidence in the outcome of that appeal.  Notably, the risk of inclusion of false factual claims like Yuga's is one of the many reasons why *ex parte* relief is so disfavored.  *See, e.g.*, *Mission Power*, 883 F. Supp. at 491.

### C. Further Enforcement Should Aawait the Decision on Appeal

In the months during which the appeal was proceeding on an expedited basis, Yuga did not appear to engage in any meaningful enforcement activity.  It is only since oral argument—when judgment from the Court of Appeals is forthcoming any day—that Yuga has stepped up its activity.  In these circumstances, Mr. Cahen respectfully submits that continued post-judgment enforcement risks wasting the time and resources of the parties and the Court (including the needless attention that Mr. Cahen's counsel and the Court were we required to devote to Yuga's *ex parte* motion over a weekend).  Further discovery and enforcement is most appropriately delayed pending the decision from the Court of Appeals, which—assuming it reverses or vacates the underlying judgment in whole or in part—would render such post-judgment activity unnecessary.

## III. CONCLUSION

Mr. Cahen accordingly requests that Yuga's *ex parte* motion be denied.

Dated: March 29, 2025

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (*pro hac vice*)
monica.grewal@wilmerhale.com
Tyler Carroll (*pro hac vice*)
tyler.carroll@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendant
*Jeremy Cahen*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on March 29, 2025

By: /s/ *Louis W. Tompros*
Louis W. Tompros

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Jeremy Cahan, certifies that this brief contains 1,682 words, which:

X  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date]

Dated: March 29, 2025

By: /s/ *Louis W. Tompros*
Louis W. Tompros